UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION, | Court File No. 16-cv-1054 (WMW/TNL) |
| Plaintiff, | |
| v. | **MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS UNDER RULE 12(B)(6)** |
| CHUBB & SON INC., | |
| Defendant. | |

### INTRODUCTION

Plaintiff Fair Isaac Corporation ("FICO") filed this action against Defendant Chubb & Son Inc. ("Chubb & Son"), asserting claims for breach of contract and copyright infringement. FICO's claims rest on the allegation that Chubb & Son's continued use of FICO's software following a merger is a breach of license and a copyright violation. FICO also alleges that Chubb & Son disclosed the software to unidentified third parties.

All of FICO's claims fail as a matter of law. Most claims are based on the incorrect legal assertion that Chubb & Son lost its fully-paid license to use FICO's software after the ultimate parent in the Chubb family of companies was acquired in a stock purchase. Under the plain and unambiguous language of the license, however, Chubb & Son is allowed to use the software without expanding its use. Furthermore, FICO cannot unreasonably withhold its consent to continued use post-merger. Finally,

FICO's remaining claims regarding alleged improper disclosure to unidentified third parties fail to allege sufficient facts to state a viable claim.

Accordingly, the Court should dismiss this action in its entirety.

## BACKGROUND

Chubb & Son offers property and casualty underwriting services, among other services and products. (Dkt. No. 1 ¶ 11.)[1] FICO designs and develops predictive analytics and decision management software. (*Id.* ¶ 8.) One of the software tools offered by FICO is the FICO® Blaze Advisor® ("Blaze Advisor"), a business rules management system used to design, develop, execute, and maintain rules-based business applications. (*Id.* ¶ 9.) FICO maintains copyright registrations for different versions of Blaze Advisor. (*Id.* ¶ 10.)

In June 2006, Chubb & Son and FICO entered into a Software License and Maintenance Agreement (the "License"). (*Id.* ¶ 12.) The License provides that it is governed, and should be construed, in accordance with the laws of the State of New York. (Dkt. No. 1-2 at 9.) It also includes a provision governing assignments of the License:

> Neither party shall, without the prior written consent of the other party, assign or transfer this Agreement, or any part thereof. In the event of a change of control of [Chubb & Son], or if [Chubb & Son] is merged with, acquired by or acquires another entity, or undergoes a reorganization, or otherwise acquires the right to process the business of another entity, each such event shall be deemed to be an assignment subject to this section, and

---

[1] Without making any admissions, for purposes of this motion, Chubb & Son treats FICO's allegations in the Complaint as true.

> [Chubb & Son] shall make no expanded use of the Fair Isaac Products as a result of any such event unless and until Fair Isaac provides such written consent, which will not be unreasonably withheld.  Any attempt to assign or transfer all or any part of this Agreement without first obtaining such written consent will be void and of no force or effect.  Notwithstanding the foregoing, Fair Isaac may perform any or all of its obligations through any subsidiary or affiliated company, and may assign this Agreement by merger, reorganization, consolidation, or sale of all or substantially all its assets.

(*Id.*)

The initial terms of the License were for a perpetual term limited to five "seats" of Blaze Advisor.  (*Id.* at 12.)  On August 1, 2006, the parties increased the License to ten seats.  (*Id.* at 18.)  On December 28, 2006, the parties again amended the license, making it enterprise-wide and without a limited number of seats.  (*Id.* at 20.)  Thus, pursuant to Section 2.1 of the License, in its final form, Chubb & Son was perpetually licensed to use Blaze Advisor without limitation on the number of seats:

> <u>Enterprise-Wide License.</u>  If the "Scope/Quantity" of the license for any Fair Isaac Product is designated in Exhibit A as "Enterprise-Wide," then [Chubb & Son] may use such Fair Isaac Product on an unlimited number of Seats or CPUs, as applicable; provided, however, that such use is for Chubb & Son's use only and not for use by any of [Chubb & Son]'s affiliated, subsidiary, or parent companies.

(*Id.* at 2.)

Chubb & Son was a division of Federal Insurance Company, which until recently was a wholly-owned subsidiary of Chubb Corporation.  On January 15, 2016, ACE INA Holdings, Inc. purchased Chubb Corporation (the "Merger").  (*Id.* ¶ 14.)  FICO does not allege facts that the Merger had any effect on Chubb & Son's business.  (*See id.*)  Rather, FICO admits that the Merger merely changed ownership of Chubb Corporation.  (*See id.*)

Nonetheless, FICO commenced this lawsuit asserting claims for breach of contract and copyright infringement.  FICO asserts that Chubb & Son lost its right to use Blaze Advisor after the Merger, without first obtaining written consent from FICO.  FICO asserts that any continued use was a breach of Section 10.8 and copyright infringement.  FICO also asserts that Chubb & Son breached Section 3.1 and infringed FICO's copyright by disclosing the software to unidentified third parties.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555)).

"In addition to the allegations in the [] complaint, [the Court] also may consider materials that are necessarily embraced by the pleadings."  *Varga v. U.S. Bank Nat'l Ass'n*, 764 F.3d 833, 838 (8th Cir. 2014) (internal quotation marks omitted).  Thus, "[i]n a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss."  *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).  Furthermore, "[b]ecause contract interpretation is generally a question of law, it is suitable for disposition on a motion to dismiss."  *Am. Auto. Ins. Co. v. Rest Assured*

*Alarm Sys., Inc.*, 786 F. Supp. 2d 798, 803 (S.D.N.Y. 2011) (internal quotation marks omitted); *see also Arctic Cat, Inc. v. Polaris Indus. Inc.*, No. CIV. 13-3579 and 13-3595 (JRT/FLN), 2014 WL 5325361, at *17 (D. Minn. Oct. 20, 2014) ("The determination of whether a contract is ambiguous and interpretation of an unambiguous contract are questions of law that the Court may decide at the motion to dismiss stage.").

## ARGUMENT

### I. FICO FAILED TO STATE A CLAIM THAT CHUBB & SON BREACHED SECTION 10.8 OF THE LICENSE.

FICO asserts that as a result of the Merger, Chubb & Son lost its right to use Blaze Advisor under the License, without first obtaining written consent from FICO. It alleges that any continued use is a breach of Section 10.8 (Dkt. No. 1 ¶¶ 15-16.)

As relevant to the claims at issue in this case, Section 10.8 of the License provides:

> In the event of a change of control of [Chubb & Son], or if [Chubb & Son] is merged with, acquired by or acquires another entity, or undergoes a reorganization, or otherwise acquires the right to process the business of another entity, each such event shall be deemed to be an assignment subject to this section, and [Chubb & Son] shall make no expanded use of the Fair Isaac Products as a result of any such event unless and until Fair Isaac provides such written consent, which will not be unreasonably withheld.

(Dkt. No. 1-2 at 9.)

Under the plain and unambiguous language of Section 10.8, FICO's breach of contract claim fails for four reasons: (1) the Merger was not an acquisition or change of control of Chubb & Son such as to be deemed an assignment; (2) Chubb & Son's mere continued use of Blaze Advisor cannot be a breach of the License; (3) FICO has not

pleaded facts regarding any expanded use by Chubb & Son; and (4) FICO has not pleaded facts supporting its contention that it could reasonably withhold its consent to continued use of the software following the Merger.

### A.     The Merger Was Not An Acquisition of Chubb & Son.

FICO alleges in a conclusory manner that the Merger was an acquisition of Chubb & Son or that Chubb & Son underwent a change of control. (Dkt. No. 1 ¶ 16.) In fact, it was a parent corporation that changed ownership. (*Id.* ¶ 14.) While FICO alleges that Chubb & Son's parent corporation ceased to exist, it makes no allegation—nor can it—that Chubb & Son ceased to exist or became a new entity. Nor does FICO allege facts that the Merger had any effect on Chubb & Son's operations or business. (*See id.*) To the contrary, Chubb & Son continued to operate as a subsidiary, just as it did before the Merger. (*See id.*) Similarly, FICO failed to plead any facts that Chubb & Son itself underwent a change of control as a result of the Merger. It is black letter law that a parent and subsidiary corporation are presumed separate and independent corporate entities. *New York State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 224 (2d Cir. 2014) ("It is fundamental that a parent is considered a legally separate entity from its subsidiary.").

Therefore, because FICO failed to plead that Chubb & Son itself was directly "merged with [or] acquired by . . . another entity" or that Chubb & Son underwent a change of control, the Merger is not deemed an assignment under Section 10.8.

### B.    Chubb & Son's Continued Use Is Permitted Under Section 10.8.

Although it is not clear from the Complaint, FICO appears to assert that Chubb & Son's mere "continue[d] [] use" of Blaze Advisor—the software it paid to use under the License—is somehow a breach of Section 10.8.  (Dkt. No. 1 ¶ 16.)  Such a claim must fail.  Even if the Merger could be deemed an assignment, there can be no breach of Section 10.8 without a showing of expanded use.

Under the plain and unambiguous language of Section 10.8, if an "event [is] deemed to be an assignment subject to this section," Chubb & Son is only prohibited from "mak[ing] [] *expanded* use of the Fair Isaac Products," without FICO's written consent.  (Dkt. No. 1-2 at 9) (emphasis added).  Nothing in Section 10.8 prohibits Chubb & Son from continuing to use the licensed software as it did prior to the Merger.

Thus, to the extent FICO asserts that Chubb & Son's mere continued use of the software was a breach of Section 10.8, FICO's claim fails as a matter of law.

### C.    FICO Does Not Allege that Chubb & Son Expanded Its Use After the Merger.

As noted above, Rule 8 requires a plaintiff to plead sufficient facts to state a plausible claim for relief.  Where a plaintiff "fail[s] to set forth any facts to support the legal conclusion" for the breach of an agreement, it fails to state viable a claim.  *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 961 (8th Cir. 2015).  Moreover, "a conclusory allegation that plaintiff breached a section of the Agreement" is insufficient.  *Mr. Elec. Corp. v. Khalil*, No. 06–2414–CM–GLR, 2011 WL 5900810, at *1 (D. Kan. Nov. 23, 2011); *see also Flynn v. CIT Grp.*, 294 F. App'x 152, 154 (5th Cir. 2008)

(affirming dismissal of complaint that alleged "breach[ of] specific provisions" in an agreement but failed to "allege sufficient facts"); *Harbor Distrib. Corp. v. GTE Operations Support Inc.*, No. 15-CV-4123 (JFB)(AYS), 2016 WL 1228615, at *7 (E.D.N.Y. Mar. 28, 2016) (citing numerous cases and explaining that "[c]onclusory allegations that a defendant breached an agreement are insufficient to support a breach of contract claim").

Here, FICO did not plead any facts to support its conclusory assertion that Chubb & Son expanded its use after the Merger. Rather, FICO made a passing statement in its Complaint that "Chubb & Son's expanded use of the FICO Products following the merger . . . has caused FICO [damages]." (Dkt. No. 1 ¶ 21.) During the parties' meet and confer, FICO represented that it was not asserting that Chubb & Son expanded its use, but merely that if there were any expanded use, such use would be relevant to damages.

Therefore, even if the Merger was an assignment, because FICO did not allege any expanded use, it failed to state a claim for breach of Section 10.8.

### D.     FICO Cannot Unreasonably Withhold Consent.

Under Section 10.8, FICO cannot "unreasonably withh[o]ld" its consent for Chubb & Son's continued use of the licensed software post-merger. (Dkt. No. 1-2 at 9.) The License provides that New York law governs. (*Id.*) Even if consent was required as FICO alleges, any alleged failure to seek consent is immaterial if consent could not have been reasonably withheld anyway. *See, e.g.*, *Hess Energy, Inc. v. Lightning Oil Co.*, 276 F.3d 646, 650 (4th Cir. 2002) ("Because consent is required unless there is a legitimate

reason to withhold consent, it follows that, where there is no legitimate reason to withhold consent, skipping the step of asking for consent does not constitute a material breach."); *Walls v. Petrohawk Props., LP*, 812 F.3d 621, 626 (8th Cir. 2015) (affirming holding that failure to obtain consent prior to assignment was not a material breach where licensor failed to offer any reasonable grounds to withhold consent); *Gawenis v. Alta Res., LLC*, No. CV–12–489, 2013 WL 2457288, at *6 (2013) (affirming directed verdict that failure to obtain consent prior to assignment, where licensor could not unreasonably withhold consent, was not material); *R.C. Hobbs Enters., LLC v. J.G.L. Distrib., Inc.*, 104 P.3d 503, 508 (Mont. 2004) (affirming holding that violation of non-assignment provision was not a material breach); *see also Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997) (explaining that under New York law, "[a] party's obligation to perform under a contract is only excused where the other party's breach of the contract is so substantial that it defeats the object of the parties in making the contract").

Furthermore, under New York law, FICO could "not [] act arbitrarily or irrationally in exercising that discretion." *Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995). At the very least, FICO must act in good faith and specifically identify "a legitimate business purpose" as a basis to withhold consent. *See, e.g*, *In re Malease 14FK Corp.*, 351 B.R. 34, 44 (E.D.N.Y. 2006). FICO could not have withheld its consent to expanded use, for example, merely because it hoped to negotiate a higher license fee. *See, e.g.*, *First Nationwide Bank v. Florida Software Servs., Inc.*, 770 F. Supp. 1537, 1542 (M.D. Fla. 1991) (finding no breach of anti-assignment provision in

software licensing agreement, which included similar language regarding unreasonably withholding consent).

Here, FICO has pleaded no facts that would provide a reasonable basis for withholding consent. Accordingly, even if FICO consent was required—an assertion Chubb & Son denies—the failure to obtain consent is immaterial.

## II.  FICO FAILED TO STATE A CLAIM THAT CHUBB & SON BREACHED SECTIONS 3.1, 9.2, OR 9.3 OF THE LICENSE.

FICO asserts that Chubb & Son breached Sections 3.1, 9.2, and 9.3 of the License. (Dkt. No. 1 ¶¶ 22-35). These claims fail as a matter of law.

### A.  Chubb & Son Did Not Breach Section 3.1.

Section 3.1 precludes Chubb & Son from "disclos[ing] the Fair Isaac Products to, or permit[ing] the use or access of the Fair Isaac Products by, any third party or by any individuals other than the employees of [Chubb & Son]." (Dkt. No. 1-2 at 3.)

In support of its claim that Chubb & Son breached this provision, FICO merely asserts, in conclusory fashion, that Chubb & Son disclosed and permitted access and use of "the FICO Products to third parties, including at least third parties located in the United Kingdom, Canada, and Australia." (Dkt. No. 1 ¶ 22.) FICO mentions "third-party entities" but again fails to allege any facts to identify any such third parties. (*Id.* ¶ 24.) In the parties' meet and confer on the motion, Chubb & Son asked FICO to identify the third parties that form the basis for this allegation, but FICO refused.

As already explained above, FICO cannot allege in conclusory fashion that a breach occurred. *See, e.g.*, *Johnson v. Howeownership Pres. Found.*, No. CIV. 09-600

(JRT/JSM), 2009 WL 6067018, at *7 (D. Minn. Dec. 18, 2009) ("Complaint fails to assert sufficient facts as to how HPF breached its alleged contract with her."), *adopted*, 2010 WL 1050333 (D. Minn. Mar. 18, 2010); *European Roasterie, Inc. v. Dale*, No. CIV. 10-53 (DWF/JJG), 2010 WL 1782239, at *5 (D. Minn. May 4, 2010) (dismissing breach of contract claim for failure to allege facts regarding the basis for a breach); *Schlief v. Nu-Source, Inc.*, No. CIV. 10-4477 (DWF/SER), 2011 WL 1560672, at *4 (D. Minn. Apr. 25, 2011) (same).

Because FICO failed to plead sufficient facts regarding the purported basis for a breach of Section 3.1, it failed to state a claim.

### B. Section 9.2 Cannot be the Basis of a Breach Claim.

FICO asserts that Chubb & Son breached Section 9.2(c) of the License. (Dkt. No. 1 ¶¶ 29-31.) However, Section 9.2(c) does not impose any obligations on either party. (*See* Dkt. No. 1-2 at 8.) Rather, Section 9.2(c) identifies remedies that the parties may pursue if other provisions in the License are breached.

"Clearly a breach can only occur when one is under an obligation to perform in the first instance." *Stratton Grp., Ltd. v. Sprayregen*, 458 F. Supp. 1216, 1218 (S.D.N.Y. 1978). Where the contract does not impose an obligation, there cannot be a breach of contract. *See Wolff v. Rare Medium, Inc.*, 65 F. App'x 736, 738 (2d Cir. 2003) (explaining that claim for breach of contract under New York law was "deficient as a matter of law because the plain language of that section imposes no obligations"); *Ferro Corp. v. Solutia Inc.*, 588 F. Supp. 2d 1022, 1027 (E.D. Mo. 2008) (applying New York

law and explaining that "a party is liable for breach of contract only insofar as that party has a contractual obligation to perform").

Section 9.2(c) cannot be the basis for a breach of contract claim.

### C. FICO's Claim for Breach of Section 9.3 Fails.

In the event of a breach and proper termination of the License, Section 9.3 imposes certain obligations upon Chubb & Son, for example, to stop using Blaze Advisor and destroy or return all copies of the software. (Dkt. No. 1-2 at 8.)[2] Because Chubb & Son did not breach any provisions of the License, FICO was not entitled to terminate the License. As such, Chubb & Son was not required to act upon any of the dormant obligations under Section 9.3, and there can be no breach under this section.

## III. FICO FAILED TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT.

Under settled copyright law, "anyone who is authorized by the copyright owner to use the copyrighted work . . . is not an infringer of the copyright with respect to such use." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984). As such, courts have repeatedly held that "[i]f [a party] had a license to make a particular use of a copyrighted work, [it] cannot have committed infringement." *E.g.*, *Quinn v. City of Detroit*, 23 F. Supp. 2d 741, 749 (E.D. Mich. 1998); *see also John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.*, 322 F.3d 26, 40 (1st Cir. 2003); *Peer Int'l Corp. v.*

---

[2] The obligations under Section 9.3 are also triggered if the License expires. (Dkt. No. 1-2 at 8.) However, as amended by the parties on December 28, 2006, the License is perpetual and cannot expire. (Dkt. No 1-2 at 20.)

*Pausa Records, Inc.*, 909 F.2d 1332, 1338-39 (9th Cir. 1990); *Jasper v. Sony Music Entm't, Inc.*, 378 F. Supp. 2d 334, 342 (S.D.N.Y. 2005) ("Sony cannot have infringed Jasper's copyright in the Copyrighted Works because it has a license . . . .").

In its copyright claims, FICO alleges that "Chubb & Son's post-termination use of the FICO Products infringes FICO's copyright interests." (Dkt. No. 1 ¶ 48.) FICO also alleges, in conclusory fashion, that Chubb & Son's unauthorized reproduction, disclosure, and distribution to unidentified third parties infringes on FICO's copyright interests. (*Id.* ¶¶ 41, 43.)

None of these allegations states a claim for copyright infringement. As already explained, Chubb & Son did not breach, and FICO could not terminate, the License. Therefore, FICO's assertion of authorized use, reproduction, disclosure, and distribution of Blaze Advisor under the fully-paid License cannot be the basis for copyright infringement. *See Ariel (UK) Ltd. v. Reuters Grp. PLC*, No. 05 Civ. 9646 (JFK), 2006 WL 3161467, at *5 (S.D.N.Y. Oct. 31, 2006) ("Dismissal of a claim for copyright infringement is proper where a contract underlying the suit clearly and unambiguously demonstrates the existence of the defendant's license . . . ."), *aff'd*, 277 F. App'x 43 (2d Cir. 2008); *Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999) (affirming Rule 12 dismissal of copyright infringement claim after interpreting governing contract and finding a valid license).

To the extent that FICO alleges Chubb & Son infringed FICO's copyrights by disclosing Blaze Advisor to unidentified third parties, FICO failed to plead any facts to state a viable claim. Moreover, such a claim is duplicative of its breach of contract claim.

*See, e.g., Evolution, Inc. v. SunTrust Bank*, 342 F. Supp. 2d 943, 953 (D. Kan. 2004) ("A copyright licensee's remedy against a licensor that violates the terms of the copyright license generally is a claim for breach of contract rather than copyright infringement."); *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998) ("A copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement."); *Murphy v. Lazarev*, 589 F. App'x 757, 764 (6th Cir. 2014) (same).

## CONCLUSION

For the foregoing reasons, the Court should dismiss FICO's Complaint in its entirety.

Respectfully submitted,

Dated:  June 3, 2016

s/ Lora M. Friedemann
Lora M. Friedemann (#0259615)
lfriedemann@fredlaw.com
Nikola L. Datzov (#0392144)
ndatzov@fredlaw.com
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
(612) 492-7000 (tel.)
(612) 492-7077 (fax)

*Attorneys for Defendant*

58849903