# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation, | ) ) ) | Case No. 16-cv-1054 (WMW/TNL) |
| Plaintiff, | ) ) | |
| v. | ) ) | **Jury Trial Demanded** |
| CHUBB & SON INC., a New York corporation, | ) ) | |
| Defendant. | ) ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................... iii

I.  Chubb & Son seeks to impose a pleading standard that far exceeds the
plausibility standard required for notice pleading. .................................... 1

II. The facts alleged in the Complaint must be taken as true. ........................ 1

III. The standard for decision at the pleading stage is plausibility, drawing all
reasonable inferences in FICO's favor. ..................................................... 5

IV. The Complaint plausibly pleads breach of contract claims. ...................... 6

    A.  The Complaint plausibly pleads that Chubb & Son breached
Paragraph 10.8 of the Agreement. .................................................. 6

        (1) Paragraph 10.8 prohibits assignment without written consent. ......... 6

        (2) Chubb & Son breached Paragraph 10.8 by not seeking
FICO's consent upon its acquisition by a new owner and
change of control, events of assignment. ........................................... 8

        (3) Chubb & Son did not seek FICO's consent.  Whether FICO
could have reasonably withheld consent is a fact question
about a hypothetical situation beyond the allegations of the
Complaint and not suitable for decision on a motion to
dismiss. ........................................................................................... 10

        (4) Contract interpretation cannot be decided on a motion to
dismiss. ........................................................................................... 11

    B.  The Complaint plausibly pleads that Chubb & Son breached
Paragraph 3.1 of the Agreement. .................................................. 12

    C.  The Complaint plausibly pleads that Chubb & Son breached
Paragraph 9.2(c) of the Agreement. .............................................. 17

    D.  The Complaint plausibly pleads that Chubb & Son breached
Paragraph 9.3 of the Agreement. .................................................. 19

V.  The Complaint plausibly pleads copyright infringement claims. ........... 20

    A.  The unauthorized copying and distribution of the FICO Products
violated the scope of the license grant, and FICO plausibly pleads a
claim of copyright infringement. ................................................... 20

i

B.      The unauthorized use of the FICO Products after termination of the
        Agreement is an unauthorized copying, and FICO plausibly pleads a
        claim of copyright infringement................................................................. 23

VI.   Conclusion ........................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Arctic Cat, Inc. v. Polaris Industries Inc.*,
  2014 U.S. Dist. LEXIS 149375, at *49 (D. Minn. Oct. 20, 2014)............................11, 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .........................................................................................5, 19, 23

*Aten v. Scottsdale Ins. Co.*,
  511 F.3d 818 (8th Cir. 2008).................................................................................5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...........................................................................................5, 14, 23

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009)................................................................................14

*Dilworth v. Goldberg*,
  914 F. Supp. 2d 433 (S.D.N.Y. 2012)...................................................................13

*Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*,
  No. 91 Civ. 4092 (PKL), 1994 U.S. Dist. Lexis 21372 (S.D.N.Y. Oct. 15,
  1998) ...................................................................................................................23

*European Roasterie, Inc. v. Dale*,
  2010 U.S. Dist. LEXIS 43523 (D. Minn. May 4, 2010)........................................16

*Evolution v. SunTrust Bank*,
  342 F. Supp. 2d 943 (D. Kan. 2004).....................................................................20

*Ferro Corp. v. Solutia Inc.*,
  588 F. Supp. 2d 1022 (E.D. Mo. 2008) ................................................................17

*Five Corners Car Wash, Inc. v. Minrod Realty Corp.*,
  134 A.D. 3d 671 (N.Y. App. Div. 2d Dep't 2015)................................................12

*Gawenis v. Alta Res., LLC*,
  2013 Ark. App. 379 (Ark. Ct. App. 2013) ...........................................................11

*Graham v. James*,
  144 F.3d 229 (2d Cir. 1998)................................................................................23

*GSAA Home Equity Trust 2006-2 v. Wells Fargo Bank, N.A.*,
    133 F. Supp. 3d 1203, 1220 (D.S.D. 2015)...........................................................13, 14, 15

*Hess Energy, Inc. v. Lightning Oil Co.*,
    276 F.3d 646 (4th Cir. 2002)...........................................................................10

*Hoag v. Chancellor*,
    246 A.D.2d 224 (N.Y. App. Div. 1st Dep't 1998) ..........................................11

*In re Malease 14FK Corp.*,
    351 B.R. 34 (E.D.N.Y. 2006) ........................................................................11

*Jacobsen v. Katzer*,
    535 F.3d 1373 (Fed. Cir. 2008) ................................................................21, 22

*Johnson v. Homeownership Pres. Found.*,
    No. 09-cv-600 2009 U.S. Dist. LEXIS 126065 (D. Minn. Dec. 17, 2009) ...............15, 16, 17

*McDonough v. Anoka Cnty.*,
    799 F.3d 931 (8th Cir. 2015).............................................................................5

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
    629 F.3d 928 (9th Cir. 2010)...........................................................................21

*Merchant & Gould P.C. v. Premiere Global Servs.*,
    749 F. Supp. 2d 923 (D. Minn. 2010) .....................................................13, 14, 15

*Motorola Mobility LLC v. ITC*,
    553 Fed. Appx. 971 (Fed. Cir. 2014)................................................................7

*N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*,
    766 F.3d 212 (2d Cir 2014)..............................................................................9

*Niagara Foods, Inc. v. Ferguson Elec. Serv. Co., Inc.*,
    975 N.Y.S. 2d 280 (N.Y. App. Div. 2013)......................................................13

*R.C. Hobbs Enters., LLC v. J.G.L. Distrib.*,
    104 P.3d 503 (Mont. 2004) .............................................................................10

*ResCap Liquidating Trust v. CMG Mortg., Inc.*,
    Nos. 13-cv-3451, 14-cv-3522, -1716, 2015 U.S. Dist. LEXIS 83552 (D. Minn. June
    25, 2015) .........................................................................................................13

*Schlief v. Nu-Source, Inc.*,
    2011 U.S. Dist. LEXIS 44446 (D. Minn. Apr. 25, 2011).................................16

*Smith v. Questar Capital Corp.*,
  No. 12-cv-2669, 2014 U.S. Dist. LEXIS 77183 (D. Minn. June 6, 2014) ............................13

*Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*,
  421 F.3d 1307 (Fed. Cir. 2005)..............................................................................................21

*Stratton Group Ltd. v. Strayregen*,
  415 F. Supp. 1216 (S.D.N.Y. 1978)........................................................................................17

*Unitherm Food Sys. V. Hormel Foods Corp.*,
  No. 14-4034, 2015 U.S. Dist. LEXIS 9107 (D. Minn. Jan. 27, 2015) ...................................19

*Walls v. Petrohawk Props., LP*,
  812 F.3d 621 (8th Cir. 2015)..................................................................................................10

*Westmoreland Coal Co. v. Entech, Inc.*,
  100 N.Y.2d 352 (2003) ...........................................................................................................18

*Wolff v. Rare Medium, Inc.*,
  65 F. App'x 736 (2d Cir. 2003) ..............................................................................................17

## STATUTES

Telephone Consumer Protection Act, 47 U.S.C. § 227 .....................................................14

## OTHER AUTHORITIES

Fed. R. Civ. P. 8 ................................................................................................................1, 13, 23

Fed. R. Civ. P. 11(b)(3) .............................................................................................................5, 6

Fed. R. Civ. P. 12 ....................................................................................................................1, 19

3-10 Nimmer on Copyright § 10.15[A] ......................................................................................21

*Webster's New World Dictionary* 51 (2d college ed. 1970) ....................................................7

I.      **Chubb & Son seeks to impose a pleading standard that far exceeds the plausibility standard required for notice pleading.**

Chubb & Son Inc. ("Chubb & Son") asks the Court to impose a heightened pleading burden on Fair Isaac Corporation ("FICO"), demanding a level of specificity that far exceeds the requirements of notice pleading.  Chubb & Son's argument finds no support from either Rule 8 or 12 of the Federal Rules of Civil Procedure, or the cases interpreting the Rules.  Accepting FICO's allegations as true, and drawing all reasonable inferences in FICO's favor, the Complaint sufficiently states plausible claims for breach of contract and copyright infringement.  The Court should deny Chubb & Son's motion and allow this lawsuit to proceed.

II.     **The facts alleged in the Complaint must be taken as true.**

FICO is a world leader in the design and development of predictive analytics and decision management software.  [Dkt. 1], ¶ 8.  FICO's decision management software tools are used by businesses to improve, automate, and connect decisions in order to enhance business performance.  *Id.*  One of FICO's decision management software tools is the FICO® Blaze Advisor® business rules management system ("FICO Blaze Advisor"), which is used to design, develop, execute, and maintain rules-based business applications.  *Id.* ¶ 9.  FICO maintains federal copyright registrations for its Blaze Advisor software.  *Id.* ¶ 10.

Chubb & Son offers property and casualty underwriting services, among other products and services.  *Id.* ¶ 11.  FICO and Chubb & Son entered into a Software License and Maintenance Agreement ("the Agreement") with an effective date of June 30, 2006.

*Id.* ¶ 12.  As amended, the Agreement grants Chubb & Son a perpetual, non-exclusive, non-transferable, limited license to use FICO Blaze Advisor products and related maintenance services (collectively, the "FICO Products") for internal business purposes only under defined terms and conditions.  *Id.* ¶ 13.

Paragraph 10.8 of the Agreement prohibits the assignment or transfer of the Agreement without the prior written consent of the other party.  *Id.* ¶ 15.  The License Grant under Paragraph 2 is non-transferable.  *Id.* ¶ 13.  Paragraph 10.8 further expressly provides that "a change of control of [Chubb & Son]" or if [Chubb & Son] is "acquired by . . . another entity . . . each such event shall be deemed to be an assignment subject to this section[.]"  [Dkt. 1-2], ¶ 10.8.  Being "subject to this section," an assignment requires written consent, and any attempt to assign without obtaining written consent is void and without force or effect.

On January 16, 2016, Chubb & Son was acquired by ACE INA Holdings, Inc. [Dkt. 1], ¶ 14.  Prior to that date, Chubb & Son's parent corporation was Chubb Corporation.  *Id.*  Effective as of January 16, 2016, in accordance with the terms of an agreement and plan of merger among Chubb Corporation, Ace Limited, and a merger entity, Chubb Corporation merged with and into ACE INA Holdings, Inc., with ACE INA Holdings, Inc., surviving as a wholly owned subsidiary of Chubb Limited (ACE Limited before the merger).  *Id.*  As a result of the merger, Chubb & Son's former parent corporation ceased to exist.  Chubb & Son was acquired by and is now a wholly owned subsidiary under the ownership of ACE INA Holdings, Inc.  *Id.*  Following this

2

acquisition and change in control, Chubb & Son did not seek FICO's written consent to the assignment as required by Paragraph 10.8 of the Agreement. *Id.* ¶¶ 15-16.

Paragraph 3.1 of the Agreement, entitled "License Restrictions," restricts Chubb & Son's use of the FICO Products to its internal business operations. *Id.* ¶ 23. Amendment Two expanded the enterprise-wide use of the FICO Products to include "Affiliates" of Chubb & Son, with the meaning of "Affiliates" specifically defined. An "Affiliate" is only "any other entity directly or indirectly controlled by [Chubb & Son], where 'control' means ownership of more than 50% of the aggregate of all voting interests . . . in the entity." *Id.*

On January 27, 2016, FICO provided Chubb & Son written notice that it was in breach of the non-assignment provision of Paragraph 10.8 of the Agreement and gave it an opportunity to cure. *Id.* ¶ 18. During the parties' pre-suit negotiations regarding Chubb & Son's breach of the non-assignment provision of the Agreement, FICO discovered that Chubb & Son had disclosed and distributed the FICO Products to third parties located, at least, in the United Kingdom, Canada, and Australia. *Id.* ¶¶ 22-24. These third parties are not "Affiliates" within the scope of the license. Chubb & Son's disclosure of the FICO Products to these third parties was a further breach of the Agreement. *Id.* ¶¶ 23-25.

This disclosure to third parties, expressly prohibited by the Agreement, was also an infringement of FICO's exclusive rights to reproduce and distribute the copyrighted FICO Products. *Id.* ¶¶ 39-45. Although FICO is aware of at least the disclosures of the

3

FICO Products to third parties located in the United Kingdom, Canada, and Australia, the precise identities of these third parties is uniquely within Chubb & Son's possession.

On March 30, 2016, after Chubb & Son refused to cure the breaches of continued use of the FICO Products without consent following the event of assignment and the unauthorized disclosure and distribution of the FICO Products to third parties, FICO gave written notice that the Agreement would be terminated effective March 31, 2016, as allowed by Paragraph 9.2(a) of the Agreement. *Id.* ¶ 19. FICO was also entitled to terminate the Agreement under Paragraph 9.2(c) without prior notice because Chubb & Son's unauthorized disclosure and distribution of the FICO Products to third parties was a breach of the license granted by the Agreement. *Id.* ¶¶ 26-27. The Agreement terminated on March 31, 2016. *Id.* ¶ 20.

Following termination of the Agreement, Chubb & Son was obligated to immediately cease use of the FICO Products and remove all copies of the FICO Products and any other FICO intellectual property from its computers and systems. *Id.* ¶ 32. Chubb & Son was also required to destroy all FICO Products and any other FICO intellectual property or return this information to FICO. *Id.* Despite these requirements expressly stated in Paragraph 9.3 of the Agreement, Chubb & Son has continued to use the FICO Products following the March 31, 2016 termination in further breach of the Agreement. *Id.* ¶¶ 33-34. Chubb & Son's post-termination use of the FICO Products is also an infringement of FICO's exclusive right to reproduce those copyrighted products. *Id.* ¶¶ 46-51.

4

**III.    The standard for decision at the pleading stage is plausibility, drawing all reasonable inferences in FICO's favor.**

Chubb & Son's motion attempts to impose a greater burden on FICO than is proper at this stage.  At the pleading stage, a plaintiff need only "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In making this plausibility determination, the court must draw all reasonable inferences in the plaintiff's favor and take the well-pleaded facts as true.  *Iqbal*, 556 U.S. at 678-79; *see also Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008).  "There is no requirement for direct evidence; the factual allegations may be circumstantial and need only be enough to nudge the claim 'across the line from conceivable to plausible.'" *McDonough v. Anoka Cnty.*, 799 F.3d 931, 945 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 556) (other internal quotation marks omitted).  The plaintiff may rely on a "reasonable expectation that discovery will reveal evidence of the alleged activity." *Twombly*, 550 U.S. at 548; *see also* Fed. R. Civ. P. 11(b)(3) (when submitting a pleading to the court, a party need only certify that the factual contentions therein "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery").  FICO's Complaint easily meets this standard.

**IV.     The Complaint plausibly pleads breach of contract claims.**

      **A.     <u>The Complaint plausibly pleads that Chubb & Son breached
Paragraph 10.8 of the Agreement.</u>**

            **(1)     Paragraph 10.8 prohibits assignment without written
consent.**

Paragraph 10.8 of the Agreement prohibits an assignment without the written
consent of FICO.  The first sentence states: "Neither party shall, without the prior written
consent of the other party, assign or transfer this Agreement, or any part thereof."  [Dkt.
1-2], ¶ 10.8.  The third sentence states: "Any attempt to assign or transfer all or any part
of this Agreement without first obtaining such written consent will be void and of no
force or effect."  *Id.*

The second sentence provides that specific events, such as an acquisition or
change of control, are deemed to be an assignment subject to Paragraph 10.8.  It states:
"In the event of a change of control of [Chubb & Son], or if [Chubb & Son] is merged
with, acquired by or acquires another entity, or undergoes a reorganization or otherwise
acquires the right to process the business of another entity, each such event shall be
deemed to be an assignment subject to this section . . . ."  *Id.*  Any assignment, pursuant
to the express provisions of Paragraph 10.8, requires the written consent of FICO and (as
between FICO and Chubb & Son) is void and without force or effect in the absence of
that written consent.

Chubb & Son ignores the body of Paragraph 10.8 and limits its argument to the
remaining part of the second sentence of Paragraph 10.8.  [Dkt. 14], at 7.  That clause
provides: "***and*** [Chubb & Son] shall make no expanded use of the [FICO] Products as a

result of any such event unless and until Fair Isaac provides such written consent, which will not be unreasonably withheld." [Dkt. 1-2], ¶ 10.8 (emphasis added). This prohibition on expanded use, applicable until written consent is granted or the Agreement is terminated for lack of consent, is a separate independent obligation apart from the requirement to obtain consent in the event of an assignment. The use of "and" is significant; the elements in the sentence on either side of "and" are of equal force and effect. The conjunctive "and" joins two elements of equal grammatical value, and each element must be given full force and effect. *Motorola Mobility LLC v. ITC*, 553 Fed. Appx. 971, 975 (Fed. Cir. 2014); *see also Webster's New World Dictionary* 51 (2d college ed. 1970).

The written consent of FICO is required upon an event of assignment because events of assignment are subject to Paragraph 10.8. Any assignment without consent is null and void. Chubb & Son seeks to re-write Paragraph 10.8. It deletes the language that an event of assignment is "subject to this section" and ignores the conjunctive "and" to limit the required consent to when there is expanded use of the FICO Products. That is not the parties' Agreement. The prohibition on expanded use is an additional requirement of Paragraph 10.8. This additional requirement does not nullify the broader prohibition of no assignment without consent. The additional requirement prohibiting expanded use provides that upon an event of assignment the status quo regarding the use of FICO Products shall be maintained pending negotiations for consent. If consent is not requested or is reasonably withheld, FICO has grounds to terminate the Agreement.

7

**(2)** **Chubb & Son breached Paragraph 10.8 by not seeking FICO's consent upon its acquisition by a new owner and change of control, events of assignment.**

FICO alleges Chubb & Son breached Paragraph 10.8 by undergoing an acquisition and change of control without its written consent.  [Dkt. 1], ¶¶ 14-16.  In particular, FICO alleges that through a merger transaction, Chubb & Son was acquired by ACE INA Holdings, Inc., and that its prior parent corporation, Chubb Corporation, ceased to exist. *Id.* ¶ 14.  Under the plain language of Paragraph 10.8, Chubb & Son's acquisition by ACE INA Holdings, Inc. is deemed to be an assignment.  [Dkt. 1-2], ¶ 10.8.  FICO also alleges that Chubb & Son underwent a change of control following the merger transaction.  Chubb & Son has a new owner.  [Dkt. 1], ¶ 14-16.  This is another event deemed an assignment within the plain language of Paragraph 10.8.  [Dkt. 1-2], ¶ 10.8. FICO's allegations of acquisition and change in control must be taken as true.  FICO has alleged sufficient facts that plausibly show that under Paragraph 10.8 Chubb & Son was required to obtain FICO's written consent.

Chubb & Son's contention the merger was not an acquisition or change of control of Chubb & Son is without merit.  It asserts, "FICO admits that the Merger merely changed ownership of Chubb Corporation."  [Dkt. 14], at 3.  Not so.  FICO alleges that Chubb & Son *itself* underwent an acquisition – Chubb & Son was owned by Chubb Corporation before the merger, and it is now owned by ACE INA Holdings, Inc., after the merger.  *Id.* ¶ 14.  This is an acquisition.

Chubb & Son also asserts, "[FICO] makes no allegation . . . that Chubb & Son ceased to exist or became a new entity."  [Dkt. 14], at 6.  This assertion is meaningless.

8

An event of assignment under Paragraph 10.8 does not depend on whether Chubb & Son ceased to exist or became a new entity.  FICO alleges a change of control and the fact Chubb & Son was acquired by another entity, both of which are deemed an assignment under Paragraph 10.8.  Chubb & Son's assertion that FICO did not "allege facts that the Merger had any effect on Chubb & Son's operation or business" is equally unavailing for the same reason.  *Id.*  Any effect on Chubb & Son's operation or business is irrelevant to the consent requirement of Paragraph 10.8.  The events deemed an assignment do not depend on an effect on the operation or business of Chubb & Son.

Lastly, Chubb & Son asserts, "FICO failed to plead facts that Chubb & Son itself underwent a change of control as a result of the Merger."  *Id.*  Not so.  The Complaint pleads that the ownership of Chubb & Son changed because the merger "resulted in an acquisition of and a change in control of Chubb & Son."  [Dkt. 1], ¶ 16.

Chubb & Son seems to argue that a change in control could not have taken place as a matter of law, stating that "it is black letter law that a parent and subsidiary corporations are presumed separate and independent corporate entities."  [Dkt. 14], at 6 (citing *N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 224 (2d Cir 2014)).  There is no quarrel with that proposition.  Relevant to the case here, Chubb & Son now has a different parent-owner than before the merger.  It has been acquired by another and is controlled by another.

The *New York State Electric* case considered whether to pierce the corporate veil and hold a parent liable for a subsidiary's actions.  *See* 766 F.3d at 224-27.  The case is irrelevant.  The operation of Paragraph 10.8 does not depend on piercing the corporate

veil.  The change of ownership of Chubb & Son following the merger was a change of control for purposes of Paragraph 10.8.  [Dkt. 1], ¶ 14-16.  FICO's Complaint plausibly pleads factual grounds showing that Chubb & Son underwent an acquisition and change of control under Paragraph 10.8.  The evidence and proof of that fact awaits trial.  FICO has clearly met its burden to state a claim at this pleading stage.

> **(3)** **Chubb & Son did not seek FICO's consent.  Whether FICO could have reasonably withheld consent is a fact question about a hypothetical situation beyond the allegations of the Complaint and not suitable for decision on a motion to dismiss.**

FICO alleges Chubb & Son breached the non-assignment provision by undergoing an event of assignment without seeking FICO's written consent.  [Dkt. 1], ¶ 16.  Chubb & Son does not dispute it did not seek FICO's written consent.  Instead, it argues a hypothetical – that FICO has pleaded no facts that would have allowed it to reasonably withhold consent, if consent were requested.  This argument fails for multiple reasons.

Assuming the truth of the alleged facts, Chubb & Son was required to but never sought FICO's written consent.  Hence, FICO never withheld consent, reasonably or unreasonably.  Whether FICO could have reasonably withheld consent is a fact question about a hypothetical situation beyond the allegations of the Complaint.  The Court need not, and should not, entertain this question at the motion to dismiss stage.

None of the cases Chubb & Son cites in support of its argument was decided on a motion to dismiss.  *See* [Dkt. 14], at 8-9.  *Walls v. Petrohawk Props., LP*, 812 F.3d 621 (8th Cir. 2015), *Hess Energy, Inc. v. Lightning Oil Co.*, 276 F.3d 646 (4th Cir. 2002), and *R.C. Hobbs Enters., LLC v. J.G.L. Distrib.*, 104 P.3d 503 (Mont. 2004), were summary

10

judgment cases. *Gawenis v. Alta Res., LLC*, 2013 Ark. App. 379 (Ark. Ct. App. 2013),

was an appeal from a directed verdict. *In re Malease 14FK Corp.*, 351 B.R. 34, 44

(E.D.N.Y. 2006), was a bankruptcy appeal analyzing whether the record facts showed "a

legitimate business purpose" for withholding consent. These cases demonstrate that

whether consent is reasonably withheld is a question to be decided on a fully developed

record, including evidence of applicable industry norms. *See Hoag v. Chancellor*, 246

A.D.2d 224, 231 (N.Y. App. Div. 1st Dep't 1998) ("In determining whether conduct is

objectively reasonable, industry norms may be appropriately considered.") (citations

omitted). None stand for the proposition argued by Chubb & Son.

The occasion to assess the reasonable conditions for FICO's consent to the

assignment will be after the record is fully developed, including a full understanding of

the extent Chubb & Son violated the license grant by permitting third parties' use and

access to the FICO Products. It is more than plausible to assume that a licensee in breach

of the license grant of the Agreement is treated differently than one who is not.

### (4)   Contract interpretation cannot be decided on a motion to dismiss.

FICO submits its reading of Paragraph 10.8, above, is the only reasonable one.

Chubb & Son's motion premised on a cramped reading of the same paragraph reveals, in

the best case for Chubb & Son, ambiguity. Contract interpretation cannot be resolved on

a motion to dismiss.

*Arctic Cat, Inc. v. Polaris Industries Inc.*, upon which Chubb & Son relies, states

the rule: "the interpretation of an ambiguous contract is a question of fact for the jury."

11

Nos. 13-3579, -3595 (JRT/FLN), 2014 U.S. Dist. LEXIS 149375, at \*49 (D. Minn. Oct. 20, 2014) (Tunheim, J.) (internal quotation omitted); *see* [Dkt. 14], at 5.  In *Arctic Cat,* the court denied the motion to dismiss Arctic Cat's breach of contract claim, determining that "based on [its] plain language" the "Agreement [at least] is ambiguous"  2014 U.S. Dist. LEXIS 149375, at \*51-52; *see also Five Corners Car Wash, Inc. v. Minrod Realty Corp.,* 134 A.D. 3d 671, 672 (N.Y. App. Div. 2d Dep't 2015) ("When the language of a contract is ambiguous, its construction presents a question of fact that may not be resolved by the court on a motion for summary judgment.")

Whether any reasonable juror could disagree with FICO's interpretation of Paragraph 10.8 is a question for another day.  Today, the Court should deny Chubb & Son's motion to dismiss.

## B.     The Complaint plausibly pleads that Chubb & Son breached Paragraph 3.1 of the Agreement.

Chubb & Son argues FICO has not pleaded sufficient facts to support its breach of contract claim based on the improper disclosure of the FICO Products to third parties. No case law supports its assertion that FICO is required to plead the specific identities of the third parties to whom disclosure was made – information within the sole control of Chubb & Son – in order to state a claim for breach of contract.  The Court should reject Chubb & Son's attempt to impose a heightened pleading standard on FICO.

Under the law of the State of New York, applicable here, a breach of contract claim has four elements: "(1) the existence of a contract, (2) the plaintiff's performance under the contract, (3) the defendant's breach of that contract, and (4) resulting

damages." *Smith v. Questar Capital Corp.*, No. 12-cv-2669 (SRN/TNL), 2014 U.S. Dist. LEXIS 77183, at *43-45 (D. Minn. June 6, 2014) (Nelson, J.) (quoting *Niagara Foods, Inc. v. Ferguson Elec. Serv. Co., Inc.*, 975 N.Y.S. 2d 280, 282 (N.Y. App. Div. 2013)); *see also* [Dkt. 1-2], at ¶ 10.7 (New York law applicable).

At the pleading stage, the plaintiff need not prove each of these elements; indeed, the plaintiff need not provide evidence supporting its claim: "To survive a motion to dismiss a breach of contract claim, a plaintiff need not prove each of the elements of the claim, nor must a plaintiff provide evidence supporting the claim." *ResCap Liquidating Trust v. CMG Mortg., Inc.*, Nos. 13-cv-3451, 14-cv-3522, -1716, 2015 U.S. Dist. LEXIS 83552, at *39-40 (D. Minn. June 25, 2015) (Nelson, J.) (internal citations omitted). A complaint is sufficiently pleaded that identifies the contract provision(s) breached and the acts constituting the breach: "To properly plead a breach of contract claim, a plaintiff must identify the provisions of the contract that were breached and the 'defendant's acts or omissions constituting the breach.'" *GSAA Home Equity Trust 2006-2 v. Wells Fargo Bank, N.A.*, 133 F. Supp. 3d 1203, 1220 (D.S.D. 2015) (quoting *Dilworth v. Goldberg*, 914 F. Supp. 2d 433, 457-58 (S.D.N.Y. 2012)); *Merchant & Gould P.C. v. Premiere Global Servs.*, 749 F. Supp. 2d 923, 930 (D. Minn. 2010) (Mayeron, J.) ("Rule 8 does not . . . require a plaintiff to plead 'specific facts' explaining precisely how the defendant's conduct was unlawful. Rather, it is sufficient for a plaintiff to plead facts indirectly showing unlawful behavior, so long as the facts pled 'give the defendant fair notice of what the claim is and the grounds upon which it rests,' and 'allow [ ] the court to draw

13

the reasonable inference' that the plaintiff is entitled to relief." (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)).

*GSAA Home Equity Trust* illustrates the proper application of the *Twombly* plausibility standard.  In that breach of contract case applying New York law, the plaintiff brought a claim for breach of a Master Servicing and Trust Agreement governing a residential mortgage-backed securities trust.  133 F. Supp. 3d at 1207.  Defendants had various obligations under the Master Servicing agreement, including servicing the mortgage loans entering the trust.  *Id.* at 1208.  The plaintiff alleged the defendant breached the Master Servicing agreement by engaging in "numerous illicit and illegal acts with regard to its servicing of the mortgage loans in the Trust."  *Id.* at 1220.  It offered only generic, not specific, examples of the alleged acts.  The court found the generic examples were sufficient: "These allegations, along with the other factual content pleaded in the Complaint, allow for a reasonable inference that [the defendant] breached its contractual obligations."  *Id.* at 1221.

Likewise, in *Merchant & Gould*, the plaintiff brought a claim under the Telephone Consumer Protection Act, 47 U.S.C. § 227, for "junk faxing" or "fax blasting."  749 F. Supp. 2d at 925-26.  The defendants, which transmitted unsolicited advertising faxes on behalf of their customers, moved to dismiss the complaint because the plaintiff did not plead the identity of any specific customers.  *Id.* at 935.  The complaint only alleged generally that defendants "counseled customers," "advised the customers how to use their electronic fax service," and "assisted the third-party customers," among other similar allegations.  *Id.* at 937.  The court ruled that the alleged "facts, assumed as true and taken

14

together, state a plausible claim for relief." *Id.* As to "the identity of each customer at issue," the court found that that "it would be impossible for M&G to plead this type of information when much of it is in the control of defendants." *Id.* at 938.

Under the holdings of *GSAA Home Equity Trust* and *Merchant & Gould*, FICO's allegations are sufficient to state a claim for breach of contract. FICO alleges Chubb & Son breached the Agreement by disclosing the FICO Products to third parties and by permitting them access to and use of the FICO Products, in violation of Paragraph 3.1. [Dkt. 1], ¶¶ 25, 37; *see also* [Dkt. 1-2], at ¶ 3.1. In particular, it alleges Chubb & Son disclosed the FICO Products to and permitted access and use by third parties located in the United Kingdom, Canada, and Australia. The Complaint further alleges that the entities located in those countries are third parties because they are not "Affiliates" of Chubb & Son as defined by the Agreement. [Dkt. 1], ¶¶ 22-24. This is enough. As explained to the defendant's counsel in a letter dated June 14, 2016, any further facts regarding the identity of the specific third parties to whom Chubb & Son has disclosed the FICO Products is within the unique possession of Chubb & Son.[1]

Chubb & Son's cited case law does not hold to the contrary. [Dkt. 14], at 10-11. In support of its argument that "FICO cannot allege in conclusory fashion that a breach occurred," it cites a case in which the court found there was no contract between the parties. *Id.* (citing *Johnson v. Homeownership Pres. Found.*, No. 09-cv-600 (JRT/JSM)

---

[1] *See* Declaration of Allen W. Hinderaker, attached here as Exhibit 1. This declaration is provided solely to respond to Chubb & Son's discussion of the meet and confer conference regarding the identification of the third parties to whom the FICO Products were disclosed. *See* [Dkt. 14], at 10. FICO acknowledges that all information about the meet and confer conference is outside the pleadings.

2009 U.S. Dist. LEXIS 126065, at *24 (D. Minn. Dec. 17, 2009) (Mayeron, J.)).  *Johnson* is inapposite here, where it is undisputed that an enforceable contract exists.  Chubb & Son's citation of *Johnson* for the general principle that a plaintiff alleging a breach of contract must plead the existence of a contract and a breach offers the Court no substantive guidance.  *See Johnson*, 2009 U.S. Dist. LEXIS 126065, at *21-25.

In *Schlief v. Nu-Source, Inc.*, the court found the complaint alleging breach of a confidentiality provision in an employment agreement inadequate because it did not plead "facts identifying the type of Nu-Source confidential information that it alleges was copied from Schlief's Nu-Source computer."  No. 10-4477 (DWF/SER), 2011 U.S. Dist. LEXIS 44446, at *11-12 (D. Minn. Apr. 25, 2011) (Frank, J.).  In contrast, FICO has alleged the *specific* type of information Chubb & Son has disclosed to third parties – the FICO Products.  [Dkt. 1], ¶¶ 22-24.  *Schlief* is inapposite.

*European Roasterie, Inc. v. Dale* is also unhelpful here.  There, European filled an order for specialty coffee placed by Dale and his corporate entity ("Dale"), who refused to pay because the coffee was nonconforming.  European sued Dale for failure to pay, and Dale counterclaimed for failure to deliver conforming goods.  In granting European's motion to dismiss Dale's counterclaim, the court found that Dale did not adequately plead breach of a supply contract, because it did not identify how the goods at issue "were non-conforming, which particular goods were non-conforming, when they were delivered, and when [Dale] learned that the goods were non-conforming."  No. 10-cv-53 (DWF/JJG), 2010 U.S. Dist. LEXIS 43523, at *13 (D. Minn. May 4, 2010) (Frank, J.).  Unlike FICO, Dale did not give the defendant fair notice of the grounds for the claim

16

when it had knowledge of the additional facts upon which the claim rested. Here, Chubb & Son knows the claim for breach of Paragraph 3.1 of the Agreement rests on the disclosure of FICO Products to third parties in three different countries. The specific identity of those third parties is uniquely within the knowledge of Chubb & Son. The Complaint plausibly pleads a claim for relief.

###   C.      The Complaint plausibly pleads that Chubb & Son breached Paragraph 9.2(c) of the Agreement.

Chubb & Son stumbles badly in its effort to obtain dismissal of FICO's claim based on Paragraph 9.2(c), which it argues imposes no obligations. In support of its argument that "a breach can only occur when one is under an obligation to perform in the first instance," it cites a case in which (unlike here) the defendant had no obligation to perform *because it was not a party to the contract at issue*. [Dkt. 14], at 11 (quoting *Stratton Group Ltd. v. Strayregen*, 458 F. Supp. 1216, 1218 (S.D.N.Y. 1978)). *Stratton* offers no more support for its argument regarding Paragraph 9.2(c) than *Johnson* supported its argument regarding Paragraph 3.1, discussed above. Chubb & Son quotes both cases for unremarkable propositions of contract law, even though both involved fact patterns in which the plaintiff had failed to plead facts sufficient to establish even the existence of a contract. *Stratton* offers nothing to help the Court's decision here.

The other cases cited by Chubb & Son offer no more help. Both involve an allegation of a single contractual provision that did not give rise to an obligation. *Id.* (citing *Wolff v. Rare Medium, Inc.*, 65 F. App'x 736, 738 (2d Cir. 2003) and *Ferro Corp. v. Solutia Inc.*, 588 F. Supp. 2d 1022, 1027 (E.D. Mo. 2008)). Here, by contrast, FICO

17

alleges the breach of multiple provisions giving rise to multiple obligations on the part of Chubb & Son.

Chubb & Son reads Paragraph 9.2(c) in isolation, ignoring the elementary principle of contract construction that contracts must be read as a whole: "A written contract will be read as a whole, and every part will be interpreted with reference to the whole; and if possible it will be so interpreted as to give effect to its general purpose." *Westmoreland Coal Co. v. Entech, Inc.*, 100 N.Y.2d 352, 358 (2003).

Paragraph 9.2(c) must be read in conjunction with the license and contract terms discussed above. The first sentence of the paragraph addresses the violation of the license granted by the Agreement: "[FICO] may immediately terminate this Agreement, without a requirement for prior notice or a cure period, if Client violates any terms of the licenses granted in this Agreement." [Dkt. 1-2], ¶ 9.2(c). This gives FICO a right to terminate if Chubb & Son violates any license term. FICO has alleged that Chubb & Son permitted third parties use and access to the FICO Products, acts that exceeded the scope of the license. *See* [Dkt. 1], ¶ 25.

The second sentence of Paragraph 9.2(c) addresses a material breach of the Agreement: "Either party may immediately terminate this Agreement by written notice to the other party if the other party materially breaches any of the provisions of this Agreement relating to the protection of Confidential Information or Intellectual Property." [Dkt. 1-2], ¶ 9.2(c). This gives either party a right to terminate if the other party violates an obligation to perform in accordance with the terms of the Agreement.

18

FICO has alleged that Chubb & Son has violated the terms of the Agreement. *Id.* ¶¶ 16, 33-34.

FICO has adequately alleged breach of Paragraph 9.2(c).

### D.   The Complaint plausibly pleads that Chubb & Son breached Paragraph 9.3 of the Agreement.

Chubb & Son argues that FICO's claim premised on Paragraph 9.3, which prohibits post-termination use of the FICO Products, should be dismissed because (it claims) FICO improperly terminated the Agreement.  This argument fails of its own weight.  Chubb & Son's contention of improper termination of the Agreement goes to the merits of the dispute.  That is not the proper subject of a Rule 12 motion.  *See Unitherm Food Sys. v. Hormel Foods Corp.,* No. 14-4034 (PAM/LIB), 2015 U.S. Dist. LEXIS 9107, at *6-8 (D. Minn. Jan. 27, 2015) (Magnuson, J.) (denying motion to dismiss contract claim because the question of whether Hormel "improperly terminate[d] the joint development agreement" at issue "is not something that can be resolved on a motion to dismiss").

Under the facts alleged, taken as true, with all reasonable inferences drawn in favor of FICO, Chubb & Son breached a valid and binding Agreement.  That Agreement was properly terminated.  And the continued use by Chubb & Son of the FICO Products is a further breach entitling FICO to damages.  [Dkt. 1], ¶¶ 33-34.  Under the *Iqbal*/*Twombly* standard, FICO's allegations are sufficient.  *Iqbal*, 556 U.S. at 678-79.

19

V.     **The Complaint plausibly pleads copyright infringement claims.**

Contrary to Chubb & Son's arguments, copyright claims based on the continued use of a copyrighted work after the termination of a license agreement are not subsumed into a claim for breach of the license agreement.  Likewise, copyright claims premised on violations of the scope of a license agreement are not subsumed into a claim for breach of the license agreement.  FICO's complaint states claims for copyright infringement.  The Court should deny Chubb's motion to dismiss Counts II and III.

A.     **The unauthorized copying and distribution of the FICO Products violated the scope of the license grant, and FICO plausibly pleads a claim of copyright infringement.**

FICO alleges Chubb & Son's unauthorized reproduction and distribution of the FICO Products to third parties constitutes copyright infringement.  [Dkt. 1], ¶¶ 39-45.  Chubb & Son asserts this claim "is duplicative of its breach of contract claim."  [Dkt. 14], at 13.  Not so.  FICO alleges conduct exceeding the scope of the license grant.  [Dkt. 1], ¶ 23.  Under well-settled law, such conduct gives rise to a claim for copyright infringement.

Chubb & Son cites *Evolution, Inc. v. SunTrust Bank* for a general rule, "A copyright licensee's remedy against a licensor that violates the terms of the copyright license ***generally*** is a claim for breach of contract rather than copyright infringement."  342 F. Supp. 2d 943, 953 (D. Kan. 2004) (emphasis added); *see* [Dkt. 14], at 14.  But it fails to acknowledge the exception to this rule identified by the *Evolution* court in the very next sentence: "However, if the licensee exceeds the ***scope*** of the copyright license, then the copyright owner may bring an action for copyright infringement."  *Id.* (emphasis

original); *see also MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 939-40 (9th Cir. 2010) (same); *Jacobsen v. Katzer*, 535 F.3d 1373, 1380 (Fed. Cir. 2008) (same); 3-10 Nimmer on Copyright § 10.15[A] ("[W]hen a license is limited in scope, exploitation of the copyrighted work outside the specified limits constitutes infringement.").

Whether a complaint states a claim for copyright infringement depends not (as Chubb & Son asserts) on the mere existence of a license agreement, but rather on whether the defendant's actions exceeded the scope of the license.  *See Jacobsen*, 535 F.3d at 1380 (breach of conditions limiting license scope governed by copyright law).

In *Storage Technology Corp. v. Custom Hardware Engineering & Consulting, Inc.*, the Federal Circuit illustrates the rule by way of the following trenchant example:

> [C]onsider a license in which the copyright owner grants a person the right to make one and only one copy of a book with the caveat that the licensee may not read the last ten pages. Obviously, a licensee who made a hundred copies of the book would be liable for copyright infringement because the copying would violate the Copyright Act's prohibition on reproduction and would exceed the scope of the license. Alternatively, if the licensee made a single copy of the book, but read the last ten pages, the only cause of action would be for breach of contract, because reading a work does not violate any right protected by copyright law.

421 F.3d 1307, 1316 (Fed. Cir. 2005) (spelling error corrected).

The application of the rule in *Jacobsen* dictates the result here.  In *Jacobsen*, the Federal Circuit determined that the alleged conduct gave rise to a copyright claim because the breached term defined the scope of the license.  The open source software license at issue allowed users to copy, modify, and distribute the software code, provided they copied and restated the license and attribution information and gave notice of how

21

and when it had made the changes to the code. *Jacobsen*, 535 F.3d at 1379. The plaintiff alleged the defendant infringed his copyright by copying, modifying, and distributing the code without providing notice of its changes. The plaintiff argued the notice requirement was a condition defining the scope of the license. The defendant argued the notice requirement was merely a contractual covenant that did not affect the license scope. The court agreed with the plaintiff, explaining that the notice requirement was an "explicit restriction" governing the defendant's use of the code intended to inform downstream users "about the collaborative effort to improve and expand" the code. *Id.* at 1381. The defendant's conduct, it found, was outside the scope of the license and, therefore, the proper subject of a copyright claim. *Id.* at 1382.

As in *Jacobsen*, Chubb & Son's wrongful copying was outside the scope of the license. The scope of the license is defined by Paragraphs 2 and 3, as amended by Amendment Two. The license grant, Paragraph 2.1, allows Chubb & Son to use the FICO Products only for its "internal business purposes," subject to the terms, conditions, and limitations of the Agreement. [Dkt. 1-2], at ¶ 2.1(c). Likewise, Paragraph 3.1, addressing license restrictions, prohibits disclosure of, use by, and access to the FICO Products by "any third party or by any individuals other than the employees of [Chubb & Son.]" *Id.* ¶ 3.1.

The scope of the license did not allow Chubb & Son to make copies of the FICO Products for third parties or to allow third parties use by or access to the FICO Products. That is exactly what FICO alleges in this lawsuit: Chubb & Son made and distributed

copies of the FICO Products outside the scope of its license grant.  [Dkt. 1], ¶ 41.  As

alleged, Chubb & Son's conduct constitutes copyright infringement.

**B.**      **The unauthorized use of the FICO Products after termination of the Agreement is an unauthorized copying, and FICO plausibly pleads a claim of copyright infringement.**

Chubb & Son also asserts that the copyright infringement claim arising from its

post-termination use of the FICO Products should fail because it is an authorized user.

[Dkt. 14], at 12.  This assertion fails because, as alleged, its post-termination use is

expressly not authorized: Once a license has expired, "the copyright proprietor may hold

his former grantee liable as an infringer for subsequent use of the work."  *Encyclopedia*

*Brown Prods., Ltd. v. Home Box Office, Inc.*, No. 91 Civ. 4092 (PKL), 1994 U.S. Dist.

Lexis 21372, at *21 (S.D.N.Y. Oct. 15, 1998) (collecting cases); *see also* [Dkt. 1], ¶¶ 20,

47-48.  Chubb & Son's material breach of the Agreement removed any immunity from

suit provided by the license: "A material breach of a covenant will allow the licensor to

rescind the license and hold the licensee liable for [copyright] infringement for uses of

the work thereafter."  *Graham v. James*, 144 F.3d 229, 237 (2d Cir. 1998).  The Court

should also deny Chubb & Son's motion as to the copyright claim based on post-

termination use.

**VI.      Conclusion**

FICO has sufficiently pleaded facts of Chubb & Son's wrongful conduct to

plausibly state claims for breach of contract and copyright infringement.  The Complaint

easily satisfies the standards of Rules 8 and 12 as interpreted by *Iqbal*, *Twombly*, and

their progeny.  Accepting FICO's allegations as true, and drawing all reasonable

23

inferences in FICO's favor, as it must, the Court should deny Chubb & Son's motion and allow this lawsuit to proceed.


Dated:  June 24, 2016                          MERCHANT & GOULD, P.C.

                                               /s/ Allen Hinderaker
                                               Allen Hinderaker, MN Bar # 45787
                                               Michael A. Erbele, MN Bar # 393635
                                               MERCHANT & GOULD P.C.
                                               3200 IDS Center
                                               80 South Eighth Street
                                               Minneapolis, MN  55402-2215
                                               Tel:  (612) 332-5300
                                               Fax:  (612) 332-9081
                                               ahinderaker@merchantgould.com
                                               merbele@merchantgould.com

                                               John T. Winemiller, *pro hac vice*
                                               MERCHANT & GOULD P.C.
                                               9719 Cogdill Road, Suite 101
                                               Knoxville, TN  37932-3322
                                               Tel:  (865) 380-5960
                                               Fax:  (865) 380-5999
                                               jwinemiller@merchantgould.com

                                               *Attorneys for Plaintiff FICO*