UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| FAIR ISAAC CORPORATION, | Court File No. 16-cv-1054 (WMW/TNL) |
| Plaintiff, | |
| v. | **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS UNDER RULE 12(B)(6)** |
| CHUBB & SON INC.,[1] | |
| Defendant. | |

---

# INTRODUCTION

In an attempt to avoid dismissal of its breach of contract claims, FICO offers an interpretation of the License which under its unambiguous terms cannot be true. The relevant provisions prohibit use of the licensed software following a "change in control" *only* if use of the license software expands, and *only* if FICO has a reasonable basis for withholding consent. Furthermore, FICO cannot insulate its breach of contract claim based on alleged improper disclosure by avoiding pleading required facts. Finally, FICO's copyright infringement claims also fail as a matter of law.

---

[1] Chubb & Son Inc., the named defendant in this lawsuit, was not a party to the License. The party to the License was "Chubb & Son, a division of Federal Insurance Company." (*See* Dkt. No. 1-2 at 2.)

## ARGUMENT

### I. FICO MISAPPLIES THE PLEADING STANDARD.

FICO asserts that Chubb & Son "ask[ed] the Court to impose a heightened pleading burden." (Dkt. No. 18 at 7.) Chubb & Son did no such thing. In fact, Chubb & Son quoted case law from the Supreme Court and this Court, which correctly set forth the standard for pleading a viable claim for a breach of contract. (*See* Dkt. No. 14 at 4, 7-8, 10-11.)

To survive a motion to dismiss, FICO must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, FICO must allege facts—not legal conclusions—that form the basis for a purported breach. (*See* Dkt. No. 14 at 7-8, 10-11.)

FICO also argues that "[t]here is no requirement for direct evidence" at the pleading stage. (Dkt. No. 18 at 17.) Chubb & Son is not asking FICO to provide evidence, but only to plead facts giving rise to a plausible claim for relief. FICO has not done so.

## II.   FICO'S CLAIM FOR BREACH OF SECTION 10.8 FAILS.

### A.   FICO Misinterprets Section 10.8 of the License.[2]

FICO argues that, when there is a merger, two things happen per the second sentence in Paragraph 10.8 of the License. First, the merger is deemed an assignment and, because it is, the written consent referenced in the first sentence of the Paragraph is needed.[3] Second, because of the "and" in sentence two, something else happens. If there is expanded use following the merger by the newly merged entity, *another* written consent is required.[4] FICO argues that written consent is a two-step process when there is an assignment-by-merger – one consent to any use at all by the merged entity, and another to expand use. FICO calls the second written consent "a separate independent obligation." (Dkt. No. 18 at 13.)

---

[2]   FICO does not dispute that the Court can and should interpret an unambiguous contract at the motion to dismiss stage. (*See* Dkt. No. 18 at 17; *see also, e.g.*, *Kamfar v. New World Rest. Grp., Inc.*, 347 F. Supp. 2d 38, 48–49 (S.D.N.Y. 2004) ("Under New York law, the initial interpretation of a contract is a matter of law for the court to decide." (internal citations and footnotes omitted)). Instead, FICO appears to argue that the Court should not interpret the License at this time because it is ambiguous. For the reasons discussed below, the relevant terms of the License are unambiguous and present a question of law.

[3]   FICO draws this meaning from the clause "each such event shall be deemed to be an assignment subject to this section." Chubb will use the term "assignment-by-merger" to refer to a change of control or other transaction that is treated as an assignment under this language.

[4]   FICO draws this meaning from the clause "and Client shall make no expanded use … as a result of any such event unless and until [FICO] provides such written consent, which will not be unreasonably withheld."

FICO's argument cannot be correct because of the word "such" in the latter portion of the second sentence ("and [Chubb & Son] shall make no expanded use of the Fair Isaac Products as a result of any such event unless and until Fair Isaac provides *such* written consent, which will not be unreasonably withheld"). FICO's contention that Paragraph 10.8 requires two separate consents is inconsistent with that word. The word "such" refers to some written consent *already referenced*. The only written consent already referenced is in the first sentence of the paragraph – the written consent needed upon assignment. The written consent required under the second sentence is the same written consent required under the first sentence. The paragraph unambiguously prohibits FICO's interpretation of two written consents. Only if the word "such" is omitted can FICO's interpretation be right.

But "such" is not omitted. It is there. The only way to give meaning to all of the words in the section is if the first sentence refers to an arms-length assignment. In that situation, written consent from FICO is required to continue the License. The second sentence then defines, and governs, an assignment-by-merger. In an assignment-by-merger situation, the written consent from sentence one ("such" written consent) is modified so that it is only required if there is expanded use and cannot be unreasonably withheld. Unambiguously, the written consent required by sentence two is the same written consent required by sentence one, but modified in a logical manner in the case of an assignment-by-merger.

Such a reading is not only compelled by the language, it is eminently logical. In the case of an arms-length assignment, FICO gets the most protection: it can refuse at its

discretion to allow use by the new entity. When the assignment is not arm's length but only a "deemed" assignment-by-merger, its client stays in some respect the same, and FICO gets less protection: it only has the right to stop "expanded" use and can only do so if reasonable.

FICO's interpretation is not only prohibited by the language, it is illogical in practice. If FICO prohibited Chubb & Son from *any* use of the software after an assignment-by-merger, there would be no need or purpose to also prohibit Chubb & Son from *expanded* use. The former prohibition would entirely cover the latter prohibition and leave the second half of the sentence without meaning. An interpretation that renders a clause meaningless cannot be correct. *Givati v. Air Techniques, Inc.*, 960 N.Y.S.2d 196, 198 (N.Y. App. Div. 2013) ("A court should not read a contract so as to render any term, phrase, or provision meaningless or superfluous."); *see also LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) ("[A]n interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible." (internal quotation marks omitted)).

FICO's proffered interpretation also leads to another strange result. If it were true, FICO would have to agree to reasonable *expanded* use by a merged client, but could in its discretion refuse to allow *non-expanded* use by that merged client. It makes no sense to read the License in a manner that limits consent discretion when use expands, but includes no such limitation when the use remains the same. Under New York law, "[t]he Court must avoid interpreting a contract in a manner that would be absurd, commercially

- 5 -

unreasonable, or contrary to the reasonable expectations of the parties." *Landmark Ventures, Inc. v. Wave Sys. Corp.*, 2012 WL 3822624, at *3 (S.D.N.Y. Sept. 4, 2012), *aff'd*, 513 F. App'x 109 (2d Cir. 2013) (internal quotation marks omitted) (dismissing breach of contract claim on Rule 12(b)(6) motion).

### B. FICO Failed to Sufficiently Allege that Any of The Triggering Events Under Section 10.8 Occurred.

As relevant to FICO's allegations in this lawsuit, Section 10.8 only applies if *Chubb & Son*[5] undergoes a change of control or is acquired by another entity. Undisputedly, neither of these events occurred. Instead, FICO attempts to change the language in the License to cover other entities in the Chubb family of companies.

First, FICO has not pled any facts that Chubb & Son underwent a change of control. As is stated in the opening paragraph of the License, Chubb & Son is a division of Federal Insurance Company. (Dkt. No. 1-2 at 2.) Prior to the merger in issue, Federal Insurance Company was a wholly-owned subsidiary of The Chubb Corporation. As FICO acknowledges in its Complaint, Chubb & Son's parent corporation, The Chubb Corporation, was acquired in the merger, not Chubb & Son. (Dkt. No. 1 ¶ 14.)

Because a parent is presumed not to control a subsidiary, a mere change of ownership in the parent cannot be a change in control of the subsidiary, much less of a

---

[5] Because this action is putatively brought against Chubb & Son (misnamed Chubb & Son, Inc.), the arguments set forth in this section, and in Chubb & Son's original memorandum, are stated with regard to Chubb & Son. However, as noted above, Chubb & Son is a division of Federal Insurance Company. All the arguments here also apply with equal force to Federal Insurance Company and Chubb & Son asserts them with regard to that entity.

division of the subsidiary.  As such, FICO's conclusory allegation that there was a change of control of Chubb & Son finds no support in any alleged facts.  It is an improper conclusory statement based on a false and incorrect legal premise.

Second, Chubb & Son was undisputedly not acquired by another entity.  In its responsive brief, FICO asserts that "Chubb & Son was acquired by ACE INA Holdings, Inc." (*See* Dkt. No. 18 at 8.)  This is a misstatement and improper stretch of the facts alleged in the Complaint.  In fact, FICO does not allege that Chubb & Son was acquired by ACE INA Holdings.  (*See* Dkt. No. 1 ¶ 14.)  Rather, FICO alleges that "*Chubb Corporation* merged with and into ACE INA Holdings, Inc." (*Id.* (emphasis added).)  Again, The Chubb Corporation is a separate and independent legal entity.  ACE INA Holdings could have acquired Chubb & Son—it did not.  Instead, it acquired The Chubb Corporation.  As FICO itself alleges, it was The Chubb Corporation that "ceased to exist"—not Chubb & Son.  (*See id.*)

The language of Section 10.8 unambiguously requires an acquisition of Chubb & Son.  Knowing this did not occur, FICO now attempts to change the language of the License to include a change of control or acquisition of a corporate affiliate.  That is not the language of the agreement.  If FICO wanted broader language triggering Section 10.8 (such as an event involving a corporate parent, child, or subsidiary), it could have used such language.  Indeed, when parties so intend, agreements frequently include such language providing for corporate affiliates, parents, children, subsidiaries, successors, or assigns as part of various provisions.  The absence of such language in the License is dispositive of the intended scope.

Chubb & Son's interpretation of Section 10.8 makes practical sense, particularly under FICO's flawed interpretation of the scope of use. Chubb & Son did not agree—and no party would—to lose its fully-paid, perpetual, seven-figure license any time there is a change in control or acquisition of an entity *somewhere* in the corporate family.

As such, FICO has not pled a viable claim for breach of Section 10.8.

### C.  FICO Failed to Provide Any Reason Under Which It Could Reasonably Withhold Consent.

FICO did not even attempt to provide a reason it could have reasonably withheld consent for Chubb & Son's continued use. (*See* Dkt. No. 18 at 16-17.) Instead, FICO argues that this issue "is a fact question about a hypothetical situation." (Dkt. No. 18 at 16.)

There is nothing hypothetical about FICO's failure. In its opening brief, Chubb & Son cited numerous cases holding that "where there is no legitimate reason to withhold consent, skipping the step of asking for consent does not constitute a material breach." (*See* Dkt. No. 14 at 9.) FICO cited no cases holding to the contrary. (*See* Dkt. No. 18 at 16-17.) Absent an allegation of a legitimate reason to withhold consent, FICO has no legal basis for its claims.

### III.  FICO FAILED TO PLEAD REQUIRED FACTS TO STATE A CLAIM FOR BREACH OF SECTION 3.1.

FICO argues that "[a]t the pleading stage, the plaintiff need not prove each of [the breach] elements [or] . . . provide evidence supporting its claim." (Dkt. No. 18 at 19.) Chubb & Son does not argue to the contrary. However, FICO must allege facts, which if accepted as true would state a viable claim for breach. Indeed, the cases cited by FICO

- 8 -

confirm that "facts pled [must] give the defendant fair notice of what the claim is and the grounds upon which it rests." (*Id.* (quoting *Merchant & Gould P.C. v. Premiere Glob. Servs.*, 749 F. Supp. 2d 923, 930 (D. Minn. 2010).)  Here, FICO failed to do so.

As explained in Chubb & Son's opening brief, identifying a particular contract section and asserting in conclusory fashion that a breach occurred is insufficient. (*See* Dkt. No. 14 at 7-8 (citing cases).)  Chubb & Son cited to numerous cases from this Court that dismissed breach of contract claims that failed to sufficiently plead facts as to *how* the defendant purportedly breached the agreement. (*See id.* at 10-11.)  FICO attempts to distinguish each case on its facts but fails to appreciate the broader holding of all those cases: a party must plead facts as to *how* the defendant allegedly breached the contract. (*See id.*)

Here, the basis for FICO's claim for breach of Section 3.1 is not that mere disclosure occurred, but rather, that disclosure was made to an *unauthorized* party. Indeed, Chubb & Son has an enterprise-wide license permitting disclosure and use of the software by all of Chubb & Son's employees and affiliates. (*See* Dkt. No. 1-2 at 3, 21.) Alleging mere disclosure to an unidentified party is insufficient to demonstrate that disclosure was improper.  Disclosure to those parties may have been authorized if they are considered employees or affiliates under the License.  Thus, the critical question is to *whom* an alleged disclosure was made.

The very case cited by FICO, (*see* Dkt. No. 18 at 11), explains that FICO must plead more: "Courts should consider whether there are lawful, obvious alternative explanations for the alleged conduct, because where a complaint pleads facts that are

merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *McDonough v. Anoka Cty.*, 799 F.3d 931, 946 (8th Cir. 2015) (internal citations and alterations omitted). Thus, under the specific claim for breach asserted here, Rule 8 requires FICO to identify the parties as part of its pleading so that Chubb & Son and the Court can evaluate whether disclosure to any such parties was authorized under the License.

FICO appears to acknowledge this roadblock to its claim and in conclusory fashion asserts that the unidentified parties were not affiliates of Chubb & Son. (*See* Dkt. No. 1 ¶ 24.) Of course, this is not a fact but a legal assertion based on FICO's own interpretation of the License and analysis of the undisclosed identity of any such parties. Notably, FICO does not even allege that the undisclosed parties were not employees. (*See id.*)

Chubb & Son is entitled to know the identity of any such parties and challenge FICO's conclusion that disclosure to them was improper. FICO has already relied on a flawed interpretation of the License to assert one breach of contract claim. FICO cannot insulate itself from a challenge to this claim by refusing to provide the grounds on which disclosure was purportedly improper (*i.e.*, the identity of the parties).

Moreover, to assert a claim that Chubb & Son made a disclosure to unauthorized parties, FICO must know additional facts for why any such disclosure was improper. Indeed, FICO demonstrates that it is aware of additional facts but for some reason refuses to make them part of the pleading. In a supplemental letter, FICO provides additional—

albeit still vague and deficient—details regarding the identity of the undisclosed parties. (*See* Dkt. No. 19 at 3.)

Without alleging sufficient facts to identify the parties to whom a disclosure was allegedly made, neither Chubb & Son nor the Court can determine whether any such disclosure was improper. In other words, FICO failed to plead facts which if accepted as true would show it is entitled to any relief.

## IV.   FICO CANNOT PLEAD A BREACH OF SECTION 9.2(C).

FICO does not dispute the "unremarkable proposition of contract law" that for a breach to occur, there must be an obligation to perform. (*See* Dkt. No. 18 at 23.) FICO also does not dispute that Paragraph 9.2(c) does not impose any obligations on either party. (*See id.* at 23-24.) These two undisputed points demonstrate that there can be no breach of Section 9.2(c). *See, e.g.*, *Wolff v. Rare Medium, Inc.*, 65 F. App'x 736, 738 (2d Cir. 2003) (explaining that claim for breach of contract under New York law was "deficient as a matter of law because the plain language of that section imposes no obligations").

FICO attempts to avoid the fatal flaw in its claim by highlighting that it "alleges the breach of multiple provisions giving rise to multiple obligations on the part of Chubb & Son." (*See* Dkt. No. 18 at 24.) Tellingly, FICO does not argue that Chubb & Son violated Section 9.2 specifically, but generically asserts that it "has alleged that Chubb & Son has violated *the terms of the Agreement*." (*See* Dkt. No. 18 at 25 (emphasis added).) The purported breach of other terms or sections, and any relief resulting from such a

breach, is addressed separately.  Even if FICO could show any such breaches, they do nothing to establish an independent breach of Section 9.2.

The simple fact is that there can be no breach of Section 9.2 because it does not impose any obligations to be breached.  This claim fails as a matter of law.

## V.     FICO CANNOT PLEAD A BREACH OF SECTION 9.3.

FICO does not dispute that its claim for breach of Section 9.3 depends on a showing of a viable claim for breach of another provision.  Undisputedly, Section 9.3 precludes only post-termination use of the software.  Thus, to state a claim under Section 9.3, there must be a separate breach entitling FICO to terminate the agreement.  Because FICO has not pled any such breach, its claim for breach of Section 9.3 must fail.

## VI.    FICO'S COPYRIGHT CLAIMS FAIL AS A MATTER OF LAW.

FICO does not dispute that a party to a license cannot commit copyright infringement for use permitted by the license.  (*See* Dkt. No. 18 at 29; *see also* Dkt. No. 14 at 12-13.)  Because FICO has not pled any breach entitling it to terminate the License, its claim for copyright infringement based on "post-termination" fails for the same reasons as its claim for breach of Section 9.3.

Similarly, FICO's duplicative claim for copyright infringement based on disclosure fails for the same reasons as its claim for breach of Section 3.1.  Furthermore, FICO recognizes that a violation of a copyright license is generally a claim for breach of contract.  (*See* Dkt. No. 18 at 26.)  Although FICO asserts that an exception to this rule exists when the "licensee exceeds the *scope* of the copyright license," it fails to demonstrate that any of Chubb & Son's alleged actions were outside the *scope* of the

License.  *Id.* (emphasis in original) (internal quotation marks omitted).  Indeed, the boundaries for use and disclosure are within the scope of the License.

In making the argument, FICO appears to argue that Chubb & Son's actions were outside the scope of the License merely because they were in violation of terms in the License.  If the Court were to accept FICO's reading of the law, any time a licensee goes beyond the terms of the agreement, there would be copyright infringement.  Under such a reading, the exception impermissibly swallows the rule.  Accordingly, scope of the license cannot simply mean the use permitted by the license.

Here, any violation of the License terms for use or disclosure is within the *scope* of the License and a basis for a breach of contract claim—not copyright infringement.

## CONCLUSION

For the foregoing reasons, the Court should dismiss FICO's Complaint in its entirety.

Respectfully submitted,

Dated:  July 8, 2016

s/ Lora M. Friedemann
Lora M. Friedemann (#0259615)
lfriedemann@fredlaw.com
Nikola L. Datzov (#0392144)
ndatzov@fredlaw.com
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
(612) 492-7000 (tel.)
(612) 492-7077 (fax)

*Attorneys for Defendant*

59148372