UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

------------------------------------------------------------
                              )
Fair Isaac Corporation, a     )   File No. 16-CV-1054
Delaware corporation,         )          (WMW/TNL)
                              )
        Plaintiff,            )
                              )
vs.                           )   St. Paul, Minnesota
                              )   September 7, 2016
Chubb & Son, Inc., a New York )   9:00 a.m.
corporation,                  )
                              )
        Defendant.            )
                              )
------------------------------------------------------------


BEFORE THE HONORABLE WILHELMINA M. WRIGHT
UNITED STATES DISTRICT COURT JUDGE


**(MOTIONS HEARING)**


Proceedings recorded by mechanical stenography;
transcript produced by computer.


LORI A. SIMPSON, RMR-CRR
(651) 848-1225

 1    APPEARANCES

 2     For the Plaintiff:        Merchant & Gould, PC
                                 ALLEN W. HINDERAKER, ESQ.
 3                               MICHAEL A. ERBELE, ESQ.
                                 Suite 3200
 4                               80 South Eighth Street
                                 Minneapolis, Minnesota 55402
 5
                                 Merchant & Gould, PC
 6                               JOHN T. WINEMILLER, ESQ.
                                 Suite 101
 7                               9717 Cogdill Road
                                 Knoxville, Tennessee 37932
 8
       For the Defendant:        Fredrikson & Byron, PA
 9                               LORA MITCHELL FRIEDEMANN, ESQ.
                                 NIKOLA L. DATZOV, ESQ.
10                               Suite 4000
                                 200 South Sixth Street
11                               Minneapolis, Minnesota 55402

12     Court Reporter:           LORI A. SIMPSON, RMR-CRR
                                 Suite 146
13                               316 North Robert Street
                                 St. Paul, Minnesota 55101

14

15

16

17

18

19

20

21

22

23

24

25

1                        **P R O C E E D I N G S**

2                              **IN OPEN COURT**

3              THE COURT:  I see I have several things on the

4     bench with me that weren't here when I was last seated.  At

5     the bench I have plaintiff's bench book for the September 7,

6     2016 motion to dismiss and then I have Chubb & Son's motion

7     to dismiss and this is prepared by Fredrikson and it looks

8     like perhaps a PowerPoint in hard copy.

9              MS. FRIEDEMANN:  Yes, Your Honor.

10             THE COURT:  Have both sides received these

11    documents and reviewed them?

12             MR. HINDERAKER:  Yes, I have.

13             MS. FRIEDEMANN:  Yes, Your Honor.

14             THE COURT:  Okay.  And is there any objection to

15    my receiving these documents?

16             MS. FRIEDEMANN:  No objection from Chubb & Son,

17    Your Honor.

18             MR. HINDERAKER:  And none from the plaintiff.

19             THE COURT:  Okay.  And these are, I assume,

20    illustrative aides and not exhibits; is that correct?

21             MR. HINDERAKER:  That's also correct, at least for

22    me, Your Honor.

23             MS. FRIEDEMANN:  Yes, Your Honor.

24             THE COURT:  Very good.  Thank you.

25             Counsel, I'm ready to proceed when you are.

1          MS. FRIEDEMANN:  Thank you, Your Honor.  I am Lora

2    Friedemann from Fredrickson & Byron representing Chubb &

3    Son, and with me is Nick Datzov.

4          As the Court is aware at this point, what this

5    case is about is that FICO is trying to take away the

6    license that Chubb & Son paid for.  And that claim fails for

7    at least three reasons.

8          First, the relevant clause requires expansion of

9    use and FICO acknowledges that they have not pled that

10   Chubb & Son's use expanded.

11         Second, the deemed assignment language in the

12   contract is triggered only if Chubb & Son, the contracting

13   party, undergoes an assignment event and no such event

14   occurred.

15         And then third, FICO has not pled any facts that

16   would provide a reasonable basis for withholding consent

17   even if consent was required.

18         So I am going to talk --

19         THE COURT:  Why is the last point of significance?

20         MS. FRIEDEMANN:  It is for a couple of reasons,

21   Your Honor, and the fighting point here -- I think the

22   parties agree on the language of the provision at least with

23   respect to that they can't unreasonably withhold consent and

24   the fight is simply whether they can state a claim without

25   pleading facts that would allow them to withhold consent.

1          The reason that we say that they can't plead a

2     claim without that is really twofold.  It boils down to the

3     elements of a breach of contract claim in light of <u>Iqbal</u> and

4     <u>Twombly</u>.

5          So this is sort of elementary stuff, but the

6     elements of breach of contract, there are two that I think

7     are encompassed by this lack of any pleading of a basis for

8     withholding consent.

9          One is that an alleged breach has to be a material

10    breach.  That is black letter law.  So our position would be

11    even if they have alleged that there was a breach here, they

12    have not alleged a material breach because even if we had to

13    seek consent -- of course we say we didn't, but let's assume

14    we did.  If there's no grounds for withholding it anyway,

15    there's no material breach.

16         And then another element of breach of contract,

17    Your Honor, is damages.  In our slide deck, and I'll go over

18    it quickly when we get to that point, I've referenced a

19    case.  It's the <u>US Salt</u> case.  It's representative of this

20    point.  It arises in the summary judgment context, but

21    stands for the proposition that you can't prevail on a

22    breach of contract claim if you haven't suffered damages.

23         Now, in applying that at the pleading stage where

24    we are here, in light of <u>Iqbal</u> and <u>Twombly</u> our position

25    would be that as plaintiff they would have to allege some

1    factual basis that would give rise to a plausible claim for

2    damages.  You can't simply allege we've been damaged, which

3    is what we would say this complaint does.

4         And beyond that I would say the following:  If the

5    alleged breach here is simply a failure to seek consent when

6    they couldn't withhold it anyway, then I don't think they

7    can plead damages.

8         THE COURT:  And so no damages because consent was

9    not necessary or no damages because damages would be so

10   *de minimis* they aren't able to be measured?

11        MS. FRIEDEMANN:  Well, we don't think it was

12   necessary for us to seek consent with respect to the first

13   portion of Your Honor's question.

14        And with respect to the second scenario, if we did

15   have to seek consent, and we acknowledge we did not, it's

16   not just that damages would be *de minimis*.  It's hard to

17   conceive of how there could be any damage absent a basis for

18   withholding that consent.

19        THE COURT:  So what's the point of having a

20   consent requirement if I determine there is one?

21        MS. FRIEDEMANN:  What is the point of having it?

22        THE COURT:  Right.

23        MS. FRIEDEMANN:  Well --

24        THE COURT:  I'm just trying to preserve your

25   argument that there's no requirement, but assume there is.

1          MS. FRIEDEMANN:  Sure.  Well, if there is, I guess

2     my answer to the question is that in order to actually

3     prevail on a claim for breach, they would have to show both

4     materiality and that some damage flowed from the failure to

5     seek consent.  And if there's no grounds for withholding

6     consent, again, it's hard to conceive of any basis for

7     damages.

8          You know, if there is one, I'm sure Mr. Hinderaker

9     will elaborate on it today and then, you know, perhaps --

10     then if there was a ground for it, it should be pled because

11     under Iqbal and Twombly it's pretty clear you can't just say

12     we think there was a breach and we've been damaged.

13          Acknowledge that in most breach of contract cases

14     that is kind of how it has been pled, but I also think this

15     is a bit of a different scenario because in the typical

16     breach of contract case, once you've laid out all the facts

17     of the alleged breach and then allege that it was material

18     and there was damage, that that may flow from the facts

19     pled.  Not so here because if the breach they're really

20     arguing about is a failure to seek consent when it's

21     meaningless because they have to give it to us --

22          THE COURT:  Why do they have to give you consent?

23          MS. FRIEDEMANN:  Because there is -- I think it's

24     undisputed here, at least acknowledged, that there's no

25     expansion of use of the software following the merger in

1    issue.

2              So from the papers I'm sure the Court understands

3    that my client, Chubb & Son, is an operating division within

4    Federal Insurance Company.

5              THE COURT:  Um-hmm.

6              MS. FRIEDEMANN:  And then Federal Insurance

7    Company is a subsidiary, wholly-owned subsidiary, of the

8    Chubb Corporation pre merger and then the Chubb Corporation,

9    the parent, was acquired in a transaction; and that's pled

10   by the plaintiffs in the complaint.

11             We have a number of reasons for saying that

12   consent is not required under those circumstances, but at

13   the end of the day there is no expansion of use by Chubb &

14   Son.  We simply -- or my client simply continued using the

15   software the same way they had been the day before the

16   merger as the day they did after.  There's no allegation --

17             THE COURT:  So no consent is necessary because

18   there's no expansion of use, that's the nub of your

19   argument?

20             MS. FRIEDEMANN:  That is the nub of my argument,

21   Your Honor.

22             THE COURT:  Okay.

23             MS. FRIEDEMANN:  And if we could take just a short

24   step back, one of the things I think is important here by

25   way of background is the price my client paid for the

1     enterprise-wide license in issue here.

2          And the Court probably noted, as did we, that that

3     information was redacted by FICO in their complaint and the

4     copy of the agreements attached to the complaint.  We do

5     take issue with that.  I think if they're going to bring a

6     federal lawsuit, that they don't get to just black out

7     information they don't want part of the public record.  But

8     at least for the Court I've provided that information here.

9          THE COURT:  Can I go back to your other argument.

10    So I'm looking at the no assignment provision, which I think

11    is critical to your argument, about no expansion of use and

12    if I look down -- let's go from -- I'm looking at paragraph

13    10.8, which is No Assignment, and then I'm looking at -- I

14    think it's easiest to count from the bottom of paragraph

15    10.8, which is one, two, three, four lines.  So it says,

16    "Any attempt to assign or transfer all or any part of this

17    Agreement without first obtaining such...consent will be

18    void and of no force or effect."  Why is that not material

19    to the analysis here?

20          MS. FRIEDEMANN:  Well, it's certainly part of the

21    contract language.  We're not saying that the Court ignores

22    it, but you need to read that sentence in conjunction with

23    the prior sentence, which indicates that in a deemed

24    assignment scenario, which is kind of the language we've

25    been using for what we're talking about here to separate --

1    as opposed to an arm's-length assignment, which is dealt

2    with in the first sentence.

3          So in a deemed assignment scenario, in the second

4    sentence it indicates that consent is required only if

5    there's expansion of use and then consent cannot be

6    unreasonably withheld.  I should quote it exactly, Your

7    Honor.  I paraphrased.

8          THE COURT:  That's what -- I'm trying to pair up

9    your paraphrase with the language of the contract because

10   I'll be interpreting the language of the contract.  So if

11   you'll do that and walk me through that, then I'll

12   understand your argument better.

13         MS. FRIEDEMANN:  Right.  So this paragraph breaks

14   down into two different scenarios.

15         THE COURT:  Um-hmm.

16         MS. FRIEDEMANN:  Scenario one, dealt with

17   primarily in the first sentence, is in an arm's-length

18   assignment it says that consent is required, period.

19         But we're dealing with the second scenario that is

20   contemplated here, which is in a change of control or merger

21   situation.  The paragraph then says that that event shall be

22   deemed an assignment subject to this section and then here's

23   the language we think is really critical.  It says, "and

24   Client shall make no expanded use of the Fair Isaac Products

25   as a result of any such event unless and until Fair Isaac

1    provides such written consent, which will not be

2    unreasonably withheld."

3              So that's the language that -- our position is

4    that consent is only required -- that we don't need to seek

5    consent unless there's an expansion of use.

6              THE COURT:  Why does that completely trump the

7    first sentence of the paragraph, "Neither party shall,

8    without the prior written consent of the other party, assign

9    or transfer this Agreement, or any part thereof"?

10             MS. FRIEDEMANN:  We're not saying it trumps, Your

11   Honor, but we are saying that they need to be read in tandem

12   and that to give meaning to the clause I just read, that the

13   only logical and reasonable construction of this paragraph

14   would be that in the deemed assignment scenario that you

15   seek consent only if there's expanded use or no consent is

16   required absent expanded use.  That's our reading of the

17   paragraph.

18             Beyond that, I would point out that --

19             THE COURT:  So the second sentence negates the

20   first?

21             MS. FRIEDEMANN:  No, I don't believe it negates,

22   but they do need to be read in tandem and we are dealing

23   with the scenario in the second sentence, not the scenario

24   in the first sentence.

25             THE COURT:  But we read the whole paragraph --

1          MS. FRIEDEMANN:  We certainly do.

2          THE COURT:  -- correct, and probably the whole

3     contract?

4          MS. FRIEDEMANN:  Yes.

5          THE COURT:  But certainly what's germane to this

6     argument is the entire paragraph and that's why I'm trying

7     to understand, and I think you're explaining it carefully

8     and well, why there is -- how I reconcile the first sentence

9     with the second sentence and the third.

10          MS. FRIEDEMANN:  Yes.  Now, Your Honor, the

11     position taken by Fair Isaac here is that this paragraph

12     actually contemplates two consents.  That reading, we think,

13     is not a reasonable one and that's because primarily of the

14     word "such" in the sixth line down.

15          So what FICO is trying to say is that if there's

16     any assignment here, an arm's-length one or a deemed one,

17     that you need consent, period.  But then if you're also in

18     this deemed assignment world, which we are allegedly in,

19     that you need a second consent.  That reading, we would

20     submit, is very strained.

21          THE COURT:  How do we address the last paragraph?

22     Because it seems the last paragraph gives life to your --

23     I'm sorry.  The last sentence of this paragraph 10.8 seems

24     to give life, breathe life to your argument with the

25     "notwithstanding the foregoing."  Do you see that as helpful

1    language to your analysis or, you know, has no impact on the

2    analysis?

3              MS. FRIEDEMANN:  Your Honor, I'm not sure it has

4    an impact on the analysis.

5              THE COURT:  Okay.

6              MS. FRIEDEMANN:  I'm not arguing that that

7    sentence helps our position here.

8              THE COURT:  Okay.

9              MS. FRIEDEMANN:  The other -- this is probably a

10   good time for me to talk about, since we're looking at this

11   paragraph, the second reason that we say that they haven't

12   pled a claim here and that is because of the word "client,"

13   capital C Client in this paragraph.

14             THE COURT:  Um-hmm.

15             MS. FRIEDEMANN:  So the deemed assignment scenario

16   comes up when there's a change of control event for the

17   Client, capital C.  The parties defined that in the

18   contract.  It's in the first sentence of the contract.

19   "Client" means Chubb & Son, a division of Federal Insurance

20   Company.

21             So under the plain language of this provision,

22   Your Honor, a deemed assignment, if you will, has to be for

23   the client, Chubb & Son, a division of Federal Insurance

24   Company, and not somewhere else in the Chubb family of

25   companies.

1          What FICO seems to be arguing here -- and there is

2     no dispute that the merger, as they have pled in the

3     complaint, was of the Chubb Corporation, the ultimate

4     parent, not of Chubb & Son, a division of Federal Insurance

5     Company.

6          So this paragraph really only applies if the

7     merger or change of control is to the contracting party

8     itself.  Now, if these parties had wanted to draft it more

9     broadly, they clearly could have.  We can all see how that

10     could have happened pretty easily.  But they didn't and so

11     the Court should enforce this clause as written and then

12     there is no triggering event here.  There's no deemed

13     assignment because nothing happened to the client, Chubb &

14     Son, a division of Federal Insurance Company.

15          Now, I took Your Honor a little bit away from the

16     one argument we had been focusing on to a new one.  I don't

17     want to move on if the Court still has questions.

18          THE COURT:  Thank you for asking.  I'm fine with

19     you moving on.

20          MS. FRIEDEMANN:  We talked about this a little

21     bit.  The third reason that we believe that no consent -- or

22     that there hasn't been a claim pled here is that there was

23     no reasonable basis for withholding consent.  You know, now

24     that I look at my notes on this, I think I've covered it.

25     So I will simply --

1          THE COURT:  Okay.

2          MS. FRIEDEMANN:  -- move on.  I think Your Honor

3    has heard my position on this.

4          There are two forms of a copyright infringement

5    claim in this complaint, kind of one relating to each of the

6    alleged wrongs, if you will.

7          So there's a copyright infringement allegation

8    based on the continued use post merger.  I want to address

9    that aspect of the copyright infringement claim now because

10   the reason that claim fails is the same three reasons I

11   talked about with respect to the breach of contract claim.

12         So we would submit that if the Court agrees with

13   us on any one of those three arguments we made, that it also

14   means that that copyright infringement claim based on

15   continued use post merger also fails.

16         All right.  With that I will turn, then, to the

17   other aspect of this complaint, the allegation of

18   inappropriate disclosure to third parties.  Our argument

19   here is a little bit different.  The reason that the

20   complaint fails to state a claim on this ground is just the

21   failure to plead facts required under Iqbal and Twombly.

22         The allegation of disclosure to third parties is

23   conclusory here.  It's paragraph 22.  I put it on our slide

24   and it is this:  "Chubb & Son has disclosed the FICO

25   Products to third parties, including at least third parties

1     located in the United Kingdom, Canada, and Australia...."

2          And so the fight here is about whether that

3     allegation is sufficient to give Chubb & Son fair notice of

4     the claim in issue.  I think everybody agrees that that's

5     the standard, that the allegation needs to give fair notice.

6     It's a question of whether that particular allegation does

7     provide fair notice.

8          And we submit that it does not, that simply

9     providing the countries where these third parties are

10    allegedly located does not tell us exactly what's being

11    alleged here sufficiently to give us notice.  That's

12    especially true in light of the fact that this contract does

13    allow Chubb & Son to provide disclosure to affiliates.

14         So without more information about what it is

15    that's being alleged here, we don't know if the allegation

16    is that a disclosure has been made to someone who is not an

17    affiliate or whether we would be taking the position that

18    the disclosure was made to someone who was an affiliate and

19    therefore allowed under the agreement.

20         I guess at the end of the day it kind of comes

21    down to a practical question, whether -- I mean, we think

22    that they clearly under Iqbal and Twombly should plead more.

23    But if the Court allows this to proceed based on this

24    allegation, we will spend the first couple months of the

25    discovery period just kind of nailing down what it is that's

1    being claimed and we can jump-start that if the Court

2    requires that they replead and identify the third parties so

3    that when the case does get off and running on this

4    particular claim, everybody knows what's being alleged.

5            THE COURT:  Why doesn't a set of interrogatories

6    cure the problem that you have with not understanding the

7    particularity of the claim?

8            MS. FRIEDEMANN:  We certainly could find out from

9    that, Your Honor.  Well, we hope so.  I mean, in my

10   experience, and I doubt Mr. Hinderaker will disagree,

11   interrogatories sometimes don't give you what you're looking

12   for.

13           So we would ask an interrogatory.  We would hope

14   to get that information back.  Ideally we would.  If we

15   didn't, we move to compel.  We'd eventually get it, I

16   acknowledge that, but it takes time and effort that we

17   shouldn't have to spend on this.

18           THE COURT:  And the nature of this motion is what?

19           MS. FRIEDEMANN:  We're seeking dismissal.

20           THE COURT:  Right.

21           MS. FRIEDEMANN:  As to this particular ground,

22   dismissal without prejudice.  I mean, this is not a

23   merits-based argument.

24           THE COURT:  And that is less wasteful than basic

25   interrogatories, which is a basic tool of discovery in a

1   civil action?

2           MS. FRIEDEMANN:  I believe so, Your Honor, because

3   if our opponent here -- well, let's say if they don't know

4   more, they have no idea who these third parties are --

5           THE COURT:  Then they say that in response to an

6   interrogatory, correct?

7           MS. FRIEDEMANN:  They shouldn't be making the

8   claim.

9           THE COURT:  Right, but that's a big if.

10          MS. FRIEDEMANN:  If they do have more, then it

11  should be very easy for them to plead it.  So, you know, we

12  would say that the more efficient and easier way --

13          THE COURT:  But what's the nature of the motion

14  here?  More particularized pleadings?  I don't think so.

15          MS. FRIEDEMANN:  Well, we are seeking dismissal

16  without prejudice --

17          THE COURT:  Right.

18          MS. FRIEDEMANN:  -- with leave to replead,

19  essentially, if they can.

20          THE COURT:  That's a sledgehammer, isn't it?

21          MS. FRIEDEMANN:  No, I don't believe so, Your

22  Honor.  That's --

23          THE COURT:  As opposed to a scalpel?

24          MS. FRIEDEMANN:  No.  When there's leave given to

25  replead, it's simply indicating to the plaintiffs that they

1    need to have more facts in their complaint; and that's a

2    pretty common, under Iqbal and Twombly, a pretty common

3    scenario, that a court would say, look, you're not quite

4    there, so why don't you take another stab at this, put a

5    little more facts in your complaint so that everybody is on

6    fair notice and then we'll be off to the races.

7           So my position is that --

8           THE COURT:  And they do that by virtue of

9    dismissal?

10          MS. FRIEDEMANN:  Without prejudice and with leave

11   to replead, yes, Your Honor.

12          Once again, with respect to the copyright

13   infringement allegation on the alleged disclosure to third

14   parties, the Court should treat that aspect of the copyright

15   infringement claim the same way.  So if you agree with us,

16   that should go the same route.  If the Court decides this

17   pleading is fine, then I guess we're not making a separate

18   argument at this stage with respect to the copyright

19   infringement claim.

20          THE COURT:  And when you say "this pleading is

21   fine," you mean for purposes of an evaluation of whether the

22   case should be dismissed without prejudice?

23          MS. FRIEDEMANN:  Yes, whether it would meet the

24   Iqbal and Twombly standard.

25          THE COURT:  Gotcha.

1          MS. FRIEDEMANN:  Then the final thing I do want to

2     address is the contention that FICO made that the Court

3     should disregard our reply brief, and we submit that the

4     Court ought to consider our brief for two reasons.

5          I do apologize, of course, to the Court that we

6     were not aware of the Court's seven-day deadline for a reply

7     instead of the fourteen-day.  But even with that, that we

8     didn't follow that from the Court's practice pointers, there

9     are two reasons the Court should consider our brief.

10         The first is that the Court's text order on ECF

11     was provided to FICO's counsel, but not to us.  We had not

12     yet appeared in the case.  And second is that there's no

13     prejudice.  And I do want to elaborate a little bit on both

14     of those.

15         So the Court did issue a text order on ECF on

16     April 25, 2016 saying, you know, please take note of these

17     practice pointers, I expect you to follow them.  Well,

18     FICO's lawyers had been admitted in the case and of course

19     received that notice by e-mail.  We had not yet appeared in

20     the case, so no e-mail directing us to that particular entry

21     on the docket and we did not become aware of it.

22         So under those -- I would submit there's kind of a

23     fundamental unfairness in treating that as binding on a

24     party who didn't receive notice of it.

25              THE COURT:  Did you have predecessor counsel or

1    no?

2            MS. FRIEDEMANN:  No.  We were the first.

3            THE COURT:  Okay, you're the first.

4            MS. FRIEDEMANN:  We were the first.  It was before

5    we had entered an appearance in the case.

6            THE COURT:  I'm just exploring it because I am --

7    I find your argument persuasive and I want the practice

8    pointers to be helpful to the Court, but helpful to the

9    parties and so that's why I'm exploring this.  It's not an

10   adverse question at all.  I want to make sure that we aren't

11   creating traps for the unwary --

12           MS. FRIEDEMANN:  Yes.

13           THE COURT:  -- that impede the process of, you

14   know, fair and appropriate litigation.

15           MS. FRIEDEMANN:  Yes, Your Honor.  Well, you might

16   find this next part of my argument helpful, then.  You may

17   be aware that some of your colleagues do modify the local

18   rules themselves, but in a slightly different way.

19           So both Judge Kyle and Judge Doty issue an order

20   at the outset of the case with their modifications to the

21   local rules.  They do it in a way that has one difference

22   from the way that Your Honor did it here and that is that

23   they enter an order that has language in bold, which I've

24   got on our slide here, that says if a defendant enters an

25   appearance after this order was issued, you, the plaintiff,

1     have to give a copy to them so that they're on the same

2     page.

3              THE COURT:  Great.

4              MS. FRIEDEMANN:  So I've provided samples for the

5     Court of the language that Judge Kyle uses, and Judge Doty's

6     is nearly identical, with samples of those orders.

7              So, you know, if that had been the case here, we

8     would have been on the same page, we would have clearly read

9     the Court's practice pointers and would have known about the

10    difference in the deadline.

11             THE COURT:  That's very helpful, Counsel.  Thank

12    you.

13             MS. FRIEDEMANN:  And then I do have some cases

14    talking about the lack of prejudice.  We did -- of course,

15    we take this very seriously, that the Court may not consider

16    our brief, and I did look at the case law in the district.

17             I couldn't find a case where a brief had been

18    disregarded -- a reply brief had been disregarded as

19    untimely, especially when it was given to the other side, as

20    we did here, two months before the hearing.

21             And so there are some examples here on this slide,

22    including one from Judge Doty where the brief was untimely,

23    it was filed one week before the hearing, and the court

24    said, well, it's late, but one week gives the other side

25    plenty of time to prepare, so no prejudice here and I'll

1      allow it.  So in our situation where FICO had our reply

2      brief two months ago, that's more than adequate time to

3      consider our arguments and prepare.

4              So to sum up, Your Honor, at the end of the day

5      the primary claim in this case is based on, in our view, an

6      unreasonable reading of the clause in the paragraph.  We do

7      think it's a question of law.  So if the Court agrees it's

8      unambiguous, it's a question of law, the Court can resolve

9      on a motion to dismiss.

10             And we would submit that there is only one

11     reasonable reading of that provision and it is the one that

12     we are advancing here and so those claims should be

13     dismissed.

14             And then as we talked about, the allegation of

15     inappropriate disclosure to third parties, we should get off

16     the ground in the right direction here with some more detail

17     about that in the pleading.

18             And unless the Court has further questions, that's

19     all I have.

20             THE COURT:  Thank you, Ms. Friedemann.

21             MR. HINDERAKER:  Good morning, Your Honor.

22             THE COURT:  Good morning.

23             MR. HINDERAKER:  Allen Hinderaker on behalf of

24     Fair Isaac and with me at counsel table is kind of a crowd:

25     James Woodward, in-house counsel at Fair Isaac, and my

1    colleagues, John Winemiller and Michael Erbele.

2            THE COURT:  Thank you.

3            MR. HINDERAKER:  So may it please the Court and

4    Counsel.  This is a motion to dismiss based upon the

5    pleadings, based upon the complaint only.

6            THE COURT:  That's a big blunt tool, isn't it?

7            MR. HINDERAKER:  I agree, Your Honor.  And I'd

8    like to start my comments with respect to paragraph 10.8 and

9    I'd like to make also on that same point this observation:

10           I'm standing before you saying that the only

11   reasonable interpretation of paragraph 10.8 is the one I'm

12   going to walk through in a moment.  I just heard counsel say

13   the only reasonable interpretation of paragraph 10.8 is the

14   one she advanced.  I will assert that the interpretation she

15   advances is not a reasonable one.

16           At the best -- at the end of the day from my point

17   of view, Fair Isaac's, the worst that happens is that the

18   provision is ambiguous.  At the end of the argument from the

19   Chubb side of the case, the best that happens is that the

20   argument -- is that the provision is ambiguous and on a

21   motion to dismiss there's no ground to dismiss because that

22   ambiguity is the subject matter of the trial.

23           But with that background, let me, if I may, walk

24   through the -- and I have provided the Court a bench book,

25   which is provisions, selected provisions, of the contract.

1    I had it retyped exactly just so it's easier for me to read

2    and it's in numerical order, so 10.8 is on the page of 10.8.

3           And if I might just walk through it, Your Honor.

4    We have the first sentence, "Neither party shall, without

5    the prior written consent of the other party, assign or

6    transfer this Agreement, or any part thereof."

7           In what I'll call a straightforward, if not

8    typical, scenario, the licensee has the license and goes to

9    someone else.  That licensee wants to sell the license and

10   someone else wants to buy it.  Under that provision the

11   first sentence applies.

12          It's of note that paragraph 2.1 of the contract,

13   and we should read all of this together, includes within its

14   language the fact that the license is nontransferable.

15          As a matter of law, a licensor has the full right

16   to control to whom it licenses.  Fair Isaac has made that

17   decision when it licensed to Chubb & Son.  Should Chubb &

18   Son wish to assign the license to anyone else, Fair Isaac

19   maintains the control to decide whether that is someone that

20   it wants to have a relationship with, someone that it wants

21   its software products to be disclosed to.

22          So that first sentence and paragraph 2.1 align and

23   then it goes on, "In the event of," which acknowledges that

24   we're now dealing with various circumstances which are

25   different in nature.  There are more corporate

1    reorganizations or corporate organizations, so now we're

2    dealing with the change of the corporation, the corporate

3    structures, and such a thing as that applies after the fact

4    of the event, in the event of something happening.

5           Now, what is the something that happens?  It is a

6    change of control, or if the client is merged with, acquired

7    by or acquires another entity, or undergoes a reorganization

8    or otherwise acquires the right to process the business of

9    another entity.

10          Now, relevant to our case, Your Honor, is the fact

11   that a change of control of the client or when the client is

12   acquired by another entity, both of those are deemed

13   assignments.

14          There is the additional phrase "or otherwise

15   acquires the right to process the business of another

16   entity," and I submit that that's a circumstance that

17   relates to the pricing of the license.

18          But when we go back to the fairness behind this

19   provision overall, what we have is the proposition that Fair

20   Isaac and Chubb & Son entered into a license with a certain

21   price and that price is primarily based upon the volume of

22   business and FICO has the complete control to decide to whom

23   it wishes to license in the future; and if there is an

24   acquisition or a change of control of its licensee, it must

25   consent to that because now that licensee may well be

1      someone else -- or is someone else, actually, and if the

2      circumstances are such, maybe the pricing decision needs to

3      be revisited as well to maintain the essential fairness of

4      the license as it was at the outset.

5              "Each such event shall be deemed to be an

6      assignment subject to this section," those words are words

7      that are ignored by Chubb.  And "subject to this section" is

8      that assignments may not occur without written consent.

9      That language has to be given some meaning.

10             And then the provision goes on to say "and."  As

11     you know from our briefing, Your Honor, "and" is a

12     significant word in this paragraph.  Without doubt "and" is

13     conjunctive.  Without doubt when someone uses the word

14     "and," the phrases or the provisions on either side of the

15     "and" are independent undertakings and deserve their each

16     independent acknowledgement.

17             So given the fact that these corporate events

18     which can be deemed assignments are after the fact, there is

19     this "and" which says you shall maintain the status quo

20     regarding the processing of your business until you get that

21     consent.

22             Now, if you don't get the consent, well, then the

23     contract will be terminated because we'll exercise those

24     rights.  If you do get the consent, well, then we've agreed,

25     FICO has agreed that the event of -- the corporate event is

 1    one that it can live with in terms of to whom its software

 2    is now disclosed, as well as the pricing.

 3            And then it goes on to say, "which consent will

 4    not be unreasonably withheld."  And of course this presumes

 5    that consent is requested in the first instance.

 6            Finally, "Any attempt to assign or transfer...any

 7    part of this Agreement without first obtaining such written

 8    consent will be void and of no force or effect," such

 9    consent, again, being such written consent, which refers us

10    to the first sentence of the provision, but it also refers

11    us to the language of the second sentence, which says the

12    deemed assignments are subject to this section.  It doesn't

13    say, "subject to this sentence."  It says, "subject to this

14    section."

15            So, Your Honor, the first time I heard the

16    argument, the first time I heard even the idea that FICO

17    believes that two consents are required was when I read the

18    reply brief of Chubb.  The second time I heard that argument

19    was when I listened here to counsel's presentation to the

20    Court.

21            I re-read our opposition brief and that argument

22    is never made, and it's a silly argument.  There is not a

23    requirement for two consents.  There's a requirement for one

24    consent and that consent in this case is required upon the

25    event that is deemed an assignment.

1          The two-consent requirement, the straw man, if you

2    will, that Chubb puts up so it can beat it down has Chubb

3    arguing that in one instance consent can be unreasonably

4    withheld and in another instance consent cannot be

5    unreasonably withheld.

6          And I really am incapable of making any further

7    understanding of that argument of Chubb, but only to respond

8    this way, that which consent shall not be unreasonably

9    withheld is a provision that qualifies the entire paragraph

10   10.8.

11         So we have pled -- so I was going to go to the

12   point of this being a motion to dismiss based upon the

13   pleadings.  This element of the motion is really not based

14   upon the pleading.  It's based upon whether the contract is

15   ambiguous or not and it's based upon the interpretation of

16   the contract assuming the Court thinks it's not ambiguous.

17   And as I've said, I think the only interpretation favors

18   Fair Isaac.

19         THE COURT:  Meaning it's not ambiguous?

20         MR. HINDERAKER:  Meaning that it's not ambiguous.

21   But that being said, we then move to an argument that is

22   more based upon the pleadings.  And the pleadings set out

23   the factual circumstances in some detail under which the

24   client, Chubb & Son, comes to be owned, completely owned, by

25   somebody else, somebody different, from the time the license

1    was entered into.

2            So we know that in 2006 a thing called Chubb

3    Corporation was the parent and it wholly owned Chubb & Son.

4    We know in 2016, after the event of assignment, that Chubb

5    Corporation ultimately doesn't exist anymore -- there's a

6    name change, but it doesn't exist anymore and Chubb & Son is

7    now completely owned by ACE INA Holdings, Inc.

8            To suggest that when your ownership changes

9    completely, when somebody else owns you, you have not

10    undergone a change of control I think is an argument that

11    falls of its own weight.  Once it's said, it can't be

12    followed up.  To say that when Chubb Corporation is acquired

13    by another that isn't a change of control of the client,

14    Chubb & Son, fails for the same reason.

15            Now, Chubb & Son points the Court to cases about

16    piercing the corporate veil.  Well, those simply miss the

17    mark altogether.  We're not talking about whether the

18    parent, in fact, has disregarded the separate entity of the

19    subsidiary to the point where you say they're the same.

20    We're talking about the fact that the subsidiary now has

21    completely new ownership and there's somebody else called

22    ACE INA Holdings, Inc., that has the power, by way of that

23    ownership, to direct the policies and do everything that an

24    owner can do relative to a subsidiary.

25            Your Honor, a case that's really on point from

1    New York is <u>Cassoli vs. American Med and Life Insurance</u>

2    <u>Company</u>.  It's from 2015, Southern District of New York,

3    215 U.S. District Lexis 71009.

4           When you have new ownership, you have had a change

5    of control.  The business law statutes of New York define

6    "control" as the power to directly or indirectly determine

7    the management and policies of a corporation.

8           ACE INA Holdings, Inc., is not Chubb Corporation.

9    Chubb Corporation no longer exists and the subsidiary is now

10   subject to the directives of a new owner.  That, Your Honor,

11   is a change of control.

12          Now, we hear the argument about expansion of use.

13   That's not a theory that FICO relies upon for breach.  The

14   breach occurred because consent wasn't requested and it was

15   required.

16          The facts of expanded use are completely within

17   the control of Chubb & Son.  There's a wall or there's a

18   curtain, whatever you want to say, but only Chubb & Son

19   knows what it's doing today relative to what it was doing

20   before 2016.  It's not a theory of breach.

21          You go back into 10.8 and what would happen in

22   10.8 during that status quo period where the licensee seeks

23   the consent of the licensor, you would have a conversation,

24   licensor to licensee, and that conversation would include a

25   sharing of knowledge, including how are you using it today

1     and what do you intend to do with it tomorrow.

2               And under all of those facts and circumstances you

3     would then either come to a reasonable consent or not, but

4     those facts and circumstances haven't been developed because

5     only Chubb knows how it has changed use of the product.

6               THE COURT:  Well, I want to understand your

7     argument that expansion of use is not a theory of breach.

8     Can you elaborate on that?

9               MR. HINDERAKER:  Yes.  Let's -- yes.  If the

10    discovery demonstrates an expansion of breach, that's going

11    to relate and bear upon what licensing fee would be a

12    condition for consent.

13              The software is priced on use and if under the new

14    control the software is used, you know, at a ten times

15    higher volume of underwriting policies than it was

16    previously, that's going to bear on the value proposition

17    and on the licensing fee, but that's a damages element.

18              The breach element is the fact that consent is

19    required upon the event of assignment.  Those events that

20    are deemed assignments, consent was required and Chubb & Son

21    didn't ask for that consent and hence it wasn't given.  So

22    that's the breach.

23              We lost control of our ability to decide to whom

24    we will license.  Chubb & Son went through a reorganization

25    event.  It's something that it wasn't before when we

1    licensed with it and we have not had the opportunity to have

2    that discussion to grant or deny consent.

3           And so in the absence of that opportunity for that

4    discussion to grant or deny consent, we have terminated the

5    contract and we have exercised our rights under that

6    different provision.

7           So I have addressed it, but just to label it,

8    Chubb & Son makes the argument that the client, Chubb & Son,

9    has to undergo a change of control; and we have pled the

10   facts and without doubt that is a change of control.

11          Chubb & Son makes the argument that we have to

12   prove a negative, that we did not unreasonably withhold

13   consent.  All of the cases that it cites are cases that

14   arise to the court on a fully-developed record, whether it's

15   summary judgment after discovery or directed verdicts on a

16   fully-developed record.  And whether consent is unreasonably

17   withheld or not unreasonably withheld depends upon all of

18   the facts and circumstances.

19          If Chubb wants to make a defense in this case that

20   consent under any circumstances had to be given, well, that

21   defense is for Chubb to make and it's for Chubb to make and

22   to fail or succeed on based upon a fully-developed record.

23          If I might turn to the question of damages for a

24   moment, Your Honor, in light of counsel's argument.  We have

25   Chubb & Son continuing to use the software to its financial

1     benefit in the course of business post termination and that

2     arises to our harm and we have alleged that we're entitled

3     to the licensing fees for that unauthorized use.

4          We have Chubb & Son distributing, to use the

5     copyright word, disclosing, to use the contract word, this

6     software to entities in the UK, Canada, and Australia.

7     Those usages are licensing fees that Fair Isaac is not

8     receiving.  That loss is a consequence of the actions of

9     Chubb & Son.

10         Before I get to the copyright claims, I'd like to

11    make this point.  Chubb & Son asserts the proposition to the

12    Court that if something is a breach of contract it cannot be

13    a copyright claim, and that simply is not the law.  It isn't

14    even the law of the cases that Chubb & Son cites.

15         The law is simply this.  Under 17 U.S.C.

16    Section 106 there are certain exclusive rights of copyright.

17    One of them is distribution.  One of them is making a copy.

18    So when Chubb & Son is using the software in its business,

19    it's making copies.  When it's sending that software to the

20    UK, Australia, or Canada, it's distributing.  Those are the

21    exclusive rights of the copyright holder.

22         When doing that is a breach of the contract, there

23    is no authority or license to do what was done, it's

24    unauthorized.  So when something is unauthorized under the

25    license, it's outside of the license; and when it falls

1    within the exclusive rights of copyright, it's copyright

2    infringement.

3              There are other cases where something falls

4    outside of the license because it's a breach but it's not

5    copyright infringement because it doesn't fall within one of

6    the exclusive categories of Rule 106, and we cited one of

7    those kind of examples in our brief between conduct that is

8    copyright-directed conduct and conduct that is not.

9              So we have the failure of consent, not even asked

10   for.  We've terminated the contract.  Chubb continues to use

11   the software.  Those are contract damages.

12             We have also the breach of paragraph 9.3.  Chubb

13   is to stop use, return our stuff, or destroy it.  Instead

14   it's continuing to benefit from it.

15             And then we have what I've described as the

16   distribution to third parties.  That's the loss of licensing

17   fees both under the contract as well as under copyright law.

18   And we have also pled under copyright law, relative to both

19   wrongs of distribution and improper use, disgorgement under

20   the copyright statute.

21             So the copyright statute says to the infringer the

22   plaintiff, the copyright holder, is entitled to all of the

23   profits that you are making by way of your copyright

24   infringement that is attributable to the copyright

25   infringement.

1          And so all of the use that Chubb is making of the

2     software, unauthorized use, is resulting in profits and the

3     extent of those profits that are attributable to copyright

4     infringement is something that FICO is entitled to.

5          THE COURT:  So one of the arguments that was

6     advanced by Chubb is that there was no reasonable basis for

7     withholding consent.  Would you address that argument

8     directly?

9          MR. HINDERAKER:  I will, Your Honor.  Whether

10    something is reasonable or unreasonable depends upon knowing

11    the full facts and circumstances.  As I mentioned, what

12    exactly Chubb & Son under the new ownership is doing with

13    this software product is something that Chubb & Son knows,

14    but we cannot know unless they disclose it to us.

15         Also and maybe of equal, if not more, importance,

16    we now know that Chubb & Son is not a trustworthy licensee.

17    Chubb & Son distributes our software products to third

18    parties in the UK, Canada, and Australia.

19         Fair Isaac may not want to do business with a

20    licensee that is untrustworthy in that regard or Fair Isaac

21    may be willing to do business after it understands those

22    third-party uses and the revenues that it is entitled to

23    from them and there is a fair exchange of compensation

24    resulting from this expanded use.

25         And that brings me to a point that I maybe would

1     have fit otherwise, but I think it fits here as well, and

2     that is:  Yes, under paragraph 22 of the complaint we allege

3     not only the provision of the contract and it's not -- we

4     don't allege as a conclusion the contract provision has been

5     breached by distribution.  We allege facts; the contract has

6     been breached by an unlawful distribution to entities in.

7          Now, as the Court knows from the reply memorandum,

8     sometimes when you think you're getting Chubb & Son and the

9     right corporate entity with all of the Chubbs that there

10    are, the other side of the V says you missed.

11         Now, in Minnesota, the Secretary of State when you

12    go who is registered to do business in Minnesota, it's

13    Chubb & Son, Inc.  We've pled a complaint against Chubb &

14    Son, Inc.

15         In the reply brief Chubb says that doesn't exist.

16    You should have sued Federal Insurance Company and Chubb &

17    Son, its division.  Now, what a division is we'll have to

18    find out.  Is a division a subsidiary or is a division an

19    organizational convenience of Federal Insurance Company?

20         Well, we know and I've disclosed to the

21    plaintiff -- or to Chubb disclosed how we know.  We've

22    gotten these support calls in from Canada about our product

23    and from Australia about our product and it's a Chubb

24    something, but to be able to name the exact entity that is

25    making those inquiries is information that only Chubb & Son

1    knows.  It's information that's on the other side of the V.

2    So, Your Honor, we have pled everything that we can plead

3    factually.

4          And then the other provision that relates to this

5    is paragraph 24 and paragraph 24 is about who is an

6    affiliate.  And on the last page of the bench book I've

7    quoted the provision that comes from the second amendment to

8    the license and that identifies who are affiliates.

9    Affiliates are only downstream entities of the client.  The

10   client has to own whoever it is that is the affiliate.

11         So we have pled and we have a belief that to our

12   knowledge Chubb & Son, Inc., doesn't have any downstream

13   entities outside of the United States.  We've pled Canada,

14   Australia, UK, we've pled that those entities outside of the

15   United States are not affiliates within the meaning of the

16   contract because they're not downstream from Chubb & Son,

17   they're not independently owned by Chubb & Son, or

18   controlled by Chubb & Son.

19         So, Your Honor, at this motion to dismiss stage,

20   to the extent there are more facts to develop, that's going

21   to be the subject of discovery.  And frankly, the facts that

22   are at issue here and argued about today are facts that

23   Chubb & Son knows full well.  They are within its control.

24         And whether consent was requested, I guess we both

25   agree that it was not even requested.  Whether at the end of

1    the day consent -- any withholding of consent is

2    unreasonable, I don't know how you get there when it's never

3    requested, but that also is a full set of facts and

4    circumstances that are developed at trial and if Chubb & Son

5    wants to have that as one of its defenses, it's certainly

6    privileged to do so.

7           The rest of Chubb & Son's arguments, Your Honor, I

8    submit are really directed to the merits of this case, which

9    is another subject matter for trial as opposed to what is

10   pled.

11          Thank you for your time.

12          THE COURT:  Thank you, Counsel.

13          Rebuttal?

14          MS. FRIEDEMANN:  Thank you, Your Honor.  I'll be

15   very brief.  I want to make two points.

16          First, I want to go back to the statement that

17   Mr. Hinderaker made that expanded use is not a theory of

18   breach FICO is making.  That goes right to our argument here

19   and right to the critical language from paragraph 10.8.  So

20   if we look at that again, the problem with the argument that

21   Fair Isaac is making is they're trying to read out

22   everything after the "and" in that second sentence.

23          And I apologize for how small this is, Your Honor.

24   If you want to look at the bench book that the plaintiff

25   submitted, it is a little bit clearer there.

1              THE COURT:  And just get me to the page of the

2    bench book.  We're still looking at 10.8, correct?

3              MS. FRIEDEMANN:  Yes.

4              THE COURT:  Okay.  Gotcha.

5              MS. FRIEDEMANN:  It's on the second to the last

6    page.

7              THE COURT:  Okay.

8              MS. FRIEDEMANN:  So what they're trying -- they

9    seem to acknowledge they're not alleging that there has been

10   any expansion of use here, and that's good.  I realize this

11   is outside the pleadings, but my understanding is there has

12   been no expansion of use.

13             But if we look at that language after the "and,"

14   it says, "and Client shall make no expanded use of the Fair

15   Isaac Products as a result of any such event unless and

16   until Fair Isaac provides such written consent...."  It's

17   the expansion of use that is the trigger for the need to

18   seek consent.  I think that's pretty clear from that wording

19   right there in that sentence.

20             Counsel has not provided any explanation that

21   would give meaning to that clause.  As the Court was asking

22   me earlier, of course you have to give meaning to all of the

23   words in the contract and read them all together, but we

24   submit that the argument that Fair Isaac has made here reads

25   out this provision because it clearly says that it's

1     expanded use that is the trigger that needs to seek -- the

2     seeking of consent.

3          There's no allegation that there has been expanded

4     use here, therefore no need to seek consent, that is our

5     argument, Your Honor.  And I think it is interesting that

6     when the Court questioned Mr. Hinderaker about this, he did

7     say that they're not saying that there's any breach here

8     regarding expansion of use.

9          THE COURT:  And just define for me what you would

10    consider expanded use.

11         MS. FRIEDEMANN:  Well, what expanded use means

12    isn't further elaborated upon in the agreement, but clearly

13    if we had, you know, 20 people using the software pre the

14    event and then afterwards there were 40 -- right? -- I think

15    everybody would agree that that would be an expansion of

16    use.  In this case my understanding is absolutely nothing

17    changed and it's not -- there's no allegation or pleading to

18    the contrary.

19         THE COURT:  If there's a use that's by a different

20    entity in a different locale, would that be an expansion of

21    use?

22         MS. FRIEDEMANN:  It could be, Your Honor.  So if

23    I'm thinking of that as sort of a theoretical sort of

24    question, yeah, it could be.

25         THE COURT:  So it's been always used in the United

1    States and now we have some subsidiary in England?

2            MS. FRIEDEMANN:  If that had been alleged, but

3    based on Mr. Hinderaker's arguments, the pleadings, that is

4    not being alleged here.  There's no allegation that there's

5    been an expansion of use post merger and because of that

6    there's no triggering event that requires the seeking of

7    consent.

8            The other point I wanted to make and just to be

9    clear -- it's not relevant really to the merits of the

10   motion at hand, but with respect to the entity named in the

11   complaint, the complaint names Chubb & Son, Inc.  I just

12   want to be clear that that is not the right entity.  Chubb &

13   Son, Inc., my understanding, is an entity, it does exist.

14   We never said it doesn't exist.  It does exist.  It is not

15   the entity they're trying to sue here.

16           We've treated it as if they named Chubb & Son, the

17   division of Federal Insurance Company, and just addressed

18   the merits, but if the case proceeds, we do believe that

19   Fair Isaac ought to clear that up and name the right entity.

20           THE COURT:  So help me understand your version of

21   what "assign or transfer all or any part of this Agreement"

22   means.

23           MS. FRIEDEMANN:  Are you looking at the third

24   sentence, Your Honor?

25           THE COURT:  I am looking at -- let me find my

1    periods -- yes, "Any attempt to assign or transfer all or

2    any part of this Agreement without first obtaining written

3    consent."

4         MS. FRIEDEMANN:  Well, my argument is you do need

5    to read that sentence in connection with the second

6    sentence -- well, with the whole provision and it can't be

7    read to override the fact that in the second sentence it's

8    expansion of use that is the trigger for seeking consent.

9    If you do sort of read that sentence as being the

10   end-all/be-all, then you're not giving any meaning to that

11   second portion of the second sentence, if I'm being clear.

12        THE COURT:  Well, we have that assign or transfer

13   in at least two places, correct, in this one paragraph?  And

14   so I'm just trying to understand -- I mean, maybe it's

15   meaningless or maybe it doesn't matter, but I want to

16   understand why it doesn't matter or if it does have a

17   meaning, which I assume all words in a provision have a

18   meaning, they just may not be germane to this controversy, I

19   want to understand what it means.

20        MS. FRIEDEMANN:  Sure.  And I think the way to

21   read all of that together would be that if there had been an

22   expansion of use which would trigger the obligation to seek

23   consent, then that also would -- then the third sentence

24   would also come into play, that if that consent had not been

25   sought, you know, the deemed assignment would be void and no

44

1      force or effect.

2              THE COURT:  So the topic sentence is broader, the

3      first sentence is broader than the analysis that you're

4      lending and I'm trying to reconcile your analysis with the

5      entire paragraph, so the text in the topic sentence and the

6      text later on.  Help me do that.

7              MS. FRIEDEMANN:  Well, I guess I don't agree with

8      the Court's characterization that it's broader.  I think

9      it's dealing -- the first sentence is dealing with a

10     different scenario.

11             And if we put it in the language Mr. Hinderaker

12     was using, that this is for Fair Isaac's protection and

13     making sure they're getting the value out of their software

14     and doing business with who they want to do business with,

15     if there is an arm's-length assignment, simply, you know,

16     the client says I am assigning this agreement to a different

17     party, there's more protection for them there and that would

18     fall clearly within the first sentence and the third

19     sentence would clearly come into play.

20             But we are not in that scenario.  There was no

21     such event here.  There was simply a change of control of

22     the parent corporation.  No allegation of expanded use

23     following that.  My understanding is there is no expanded

24     use following that.  And so if we give full meaning, then,

25     to the second sentence, even though the third sentence is

1    there, it doesn't come into play unless there is an expanded

2    use.

3            That's my way of reading all three of those

4    sentences together, Your Honor, and I do -- I would submit

5    that Fair Isaac has not provided the Court with an

6    interpretation that gives meaning to this clause that I'm

7    focusing on and that means that that interpretation cannot

8    be correct.

9            THE COURT:  Okay.

10           MS. FRIEDEMANN:  That's all I have.

11           THE COURT:  Thank you.

12           MR. HINDERAKER:  Your Honor, could I have one

13   minute?

14           THE COURT:  Yes, you may.

15           MR. HINDERAKER:  Thank you.  I provided the Court

16   this bench book and we talked about paragraph 10.8, and on

17   that page with 10.8 underneath the second paragraph there is

18   the strikeouts.  I failed to explain that, and it simply is

19   this:

20           As you've heard me argue, the Chubb position

21   reads -- ignores the words "each such event shall be deemed

22   to be an assignment subject to this section and."  And when

23   that phrasing is eliminated, then the first sentence falls

24   away and the sentence beginning, "Any attempt to assign or

25   transfer" falls away and what you're left with is I submit

1    the argument of Chubb and that's what's left after the

2    deletions, which is simply these are events of assignment

3    and no expanded use shall be made until there's consent.

4    But that's not what the contract says.

5              Thank you.

6              THE COURT:  Anything further?

7              MS. FRIEDEMANN:  No, Your Honor.

8              THE COURT:  Okay.  Thank you, Counsel, for your

9    arguments today and we are in recess.  They are taken under

10   advisement.

11       (Court adjourned at 10:08 a.m.)

12                              *     *     *

13

14

15

16       I, Lori A. Simpson, certify that the foregoing is a

17   correct transcript from the record of proceedings in the

18   above-entitled matter.

19

20              Certified by:  *s/ Lori A. Simpson*

21                             Lori A. Simpson, RMR-CRR

22

23

24

25