UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Fair Isaac Corporation, a Delaware corporation, | Case No. 16-cv-1054 (WMW/TNL) |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| Chubb & Son, Inc., a New York corporation, | |
| Defendant. | |

---

This matter is before the Court on Defendant Chubb & Son, Inc.'s motion to dismiss Plaintiff Fair Isaac Corporation's ("FICO") complaint for failure to state a claim for which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons addressed below, the Court grants in part and denies in part Chubb & Son's motion.

## BACKGROUND[1]

Chubb & Son offers property and casualty underwriting services, among other services and products. FICO designs and develops predictive-analytics and decision-management software. One of FICO's decision-management software tools is the FICO® Blaze Advisor® business rules management system ("Blaze Advisor"), which is used to design, develop, execute, and maintain rules-based business applications. As

---

[1] The facts addressed in this background section are taken from FICO's complaint and are undisputed for the purpose of the motion to dismiss at issue here.

detailed in its complaint, FICO maintains federal copyright registrations for multiple versions of Blaze Advisor.

On June 30, 2006, FICO and Chub & Son entered into a software license and maintenance agreement ("License"). The parties subsequently amended the License twice—first on August 1, 2006, and again on December 28, 2006. As amended, the License provides Chubb & Son a perpetual license to use Blaze Advisor enterprise-wide. Section 10.8 of the License governs assignments or transfers of the License and provides, in relevant part:

> Neither party shall, without the prior written consent of the other party, assign or transfer this Agreement, or any part thereof. In the event of a change of control of [Chubb & Son], or if [Chubb & Son] is merged with, acquired by or acquires another entity, or undergoes a reorganization or otherwise acquires the right to process the business of another entity, each such event shall be deemed to be an assignment subject to this section, and [Chubb & Son] shall make no expanded use of the Fair Isaac Products as a result of any such event unless and until Fair Isaac provides such written consent, which will not be unreasonably withheld. Any attempt to assign or transfer all or any part of this Agreement without first obtaining such written consent will be void and of no force or effect.

Before January 15, 2016, Chubb & Son's parent corporation was Chubb Corporation. On January 15, 2016, Chubb Corporation merged with ACE INA Holdings, Inc., and the latter entity survived the merger. As a result, Chubb & Son became a subsidiary of ACE INA Holdings. On January 27, 2016, FICO sent Chubb & Son a written notice stating that Chubb & Son had breached the non-assignment provision in Section 10.8 of the License. FICO alleges that Chubb & Son refused to cure the breach and that, on March 30, 2016, FICO gave Chubb & Son written notice that the License would be terminated effective March 31, 2016.

On April 21, 2016, FICO commenced this lawsuit alleging breach of the License and copyright infringement.  Specifically, FICO's complaint alleges that Chubb & Son violated the following provisions of the License: (1) Section 10.8, by expanding its use of Blaze Advisor after the merger; (2) Sections 3.1 and 9.2(c), by either disclosing Blaze Advisor to unspecified third parties or permitting use of or access to Blaze Advisor by unspecified third parties; and (3) Section 9.3, by making unauthorized use of Blaze Advisor after FICO terminated the License.  FICO's complaint also alleges that Chubb & Son's conduct infringes FICO's copyright interests.  Chubb & Son now moves to dismiss FICO's complaint for failure to state a claim.

## ANALYSIS

A complaint must be dismissed if it fails to state a claim on which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss for failure to state a claim, the complaint must contain sufficient factual matter that, when accepted as true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When determining whether the complaint states a claim, a district court accepts as true all of the factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor.  *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010).  The factual allegations need not be detailed, but they must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  "There is no requirement for direct evidence; the factual allegations may be circumstantial and need only be enough to nudge the claim across the line from conceivable to plausible."

3

*McDonough v. Anoka Cty.*, 799 F.3d 931, 945 (8th Cir. 2015) (internal quotation marks omitted).  The plaintiff may rely on a "reasonable expectation that discovery will reveal evidence" of the alleged activity.  *Twombly*, 550 U.S. at 556.  But the plaintiff must do more than offer "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Id.* at 555.  In its analysis, a district court may disregard legal conclusions that are couched as factual allegations.  *See Iqbal*, 556 U.S. at 678-79.

Ordinarily, when matters outside the pleadings are presented to and considered by the court, a Rule 12(b)(6) motion must be analyzed as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d).  But the court may consider exhibits attached to the complaint and documents that are necessarily embraced by the complaint without converting the motion into one for summary judgment.  *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).  Because the disputed License in this case is attached to and necessarily embraced by the complaint, the Court construes Chubb & Son's motion as a motion to dismiss under Rule 12(b)(6).

### I.     FICO's Breach-of-Contract Claims

Chubb & Son first argues that FICO fails to state a claim with respect to Chubb & Son's alleged breach of various terms of the License.  The License provides that it is governed by, and should be construed in accordance with, the laws of the State of New York.  "Under New York law, the elements of a cause of action to recover damages for breach of contract are the existence of a contract, the plaintiff's performance under the contract, the defendant's breach of the contract, and resulting damages."  *Doe v. Hagar*, 765 F.3d 855, 865 (8th Cir. 2014) (internal quotation marks omitted).  The dispute here is

limited to the third element, whether FICO has sufficiently alleged that Chubb & Son breached the License.  Under New York law, "[t]o properly plead a breach of contract claim, a plaintiff must identify the provisions of the contract that were breached and the 'defendant's acts or omissions constituting the breach.' "  *GSAA Home Equity Trust 2006-2 ex rel. LL Funds LLC v. Wells Fargo Bank, N.A.*, 133 F. Supp. 3d 1203, 1220 (D.S.D. 2015) (quoting *Dilworth v. Goldberg*, 914 F. Supp. 2d 433, 457-58 (S.D.N.Y. 2012)).

In a contract action, a court's general objective is to give effect to the intentions of the parties when they entered into the contract.  *Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990).  If a contract is unambiguous on its face, its proper construction is a question of law.  *Id.*  "By contrast, where the contract's language is ambiguous, its interpretation is a question of fact normally reserved for a jury."  *Well Luck Co. v. F.C. Gerlach & Co.*, 421 F. Supp. 2d 533, 539 (E.D.N.Y. 2005).  Contract language is ambiguous if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business."  *Id.* (internal quotation marks omitted).  Whether contract language is ambiguous is itself a question of law.  *Id.*

FICO's complaint identifies four sections of the License that Chubb & Son allegedly breached—namely, Sections 10.8, 3.1, 9.2(c), and 9.3.  The Court analyzes each of these allegations in turn.

### A. Section 10.8 of the License

Chubb & Son argues that FICO fails to state a claim for breach of Section 10.8 of the License, which governs assignments or transfers of the License. Chubb & Son contends that FICO fails to state a claim for breach of Section 10.8 for three primary reasons: (1) the merger involving Chubb & Son's parent company did not constitute an "assignment" under the License, (2) FICO has not alleged facts sufficient to support a claim that Chubb & Son "continued" or "expanded" its use of Blaze Advisor after the merger, and (3) FICO cannot unreasonably withhold consent.

Chubb & Son's first argument is that the merger involving Chubb & Son's parent company is not an "assignment" or "transfer" under Section 10.8 of the License. The parties agree that, as a general proposition, "a parent is considered a legally separate entity from its subsidiary" under New York law. *N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 224 (2d Cir. 2014). And it is undisputed that the merger in this case involved Chubb & Son's parent company, Chubb Corporation, and did not directly involve Chubb & Son.

In relevant part, Section 10.8 of the License states that if there is "a change of control" of Chubb & Son, or if Chubb & Son "is merged with, acquired by or acquires another entity, or undergoes a reorganization or otherwise acquires the right to process the business of another entity," such an event "shall be deemed to be an assignment subject to this section." The parties advance competing interpretations of this provision. Chubb & Son asserts that this provision unambiguously applies only if Chubb & Son is *directly* acquired or involved in a merger. By contrast, FICO argues that a merger

6

involving Chubb & Son's parent company either is a "change of control" of Chubb & Son or demonstrates that Chubb & Son "merged with, [or was] acquired by" another entity, as contemplated by Section 10.8 of the License.  FICO disputes the reasonableness of Chubb & Son's interpretation but contends that, at best, Chubb & Son has identified an ambiguity that forecloses resolution on a motion to dismiss.

The License does not define "change of control" or expressly address the effect of transactions involving a parent company.  On its face, the phrase "change of control" is broad enough to reasonably encompass a transaction involving a parent company that has a controlling interest in Chubb & Son.  In that circumstance, control over Chubb & Son has technically changed, albeit indirectly.  FICO's interpretation of this aspect of Section 10.8 is reasonable because a merger involving a parent corporation reasonably could be considered a "change of control" of a subsidiary.

As the Court previously observed, however, Section 10.8 does not expressly contemplate a merger involving a parent company.  The License's silence on this point could suggest that transactions involving a parent company are not germane to Section 10.8, and that Chubb & Son, itself, must *directly* merge with another entity or experience a change in control to implicate Section 10.8.  Notably, Section 2.1(c) of the License expressly limits the scope of an enterprise-wide license to exclude Chubb & Son's "parent companies," which suggests that the License is not affected by the acquisition of Chubb & Son's parent company.  Thus, on the existing record, the Court cannot conclude

7

that Chub & Son's alternative interpretation of this aspect of Section 10.8 of the License is unreasonable.[2]

When the terms of a contract are ambiguous, the meaning of the contract is a question of fact and dismissal is not proper. *Olympus Ins. Co. v. AON Benfield, Inc.*, 711 F.3d 894, 898 (8th Cir. 2013). Because each party advances a reasonable interpretation of Section 10.8 of the License, the parties' dispute presents an ambiguity that is not properly resolved on a motion to dismiss. Accordingly, Chubb & Son's motion to dismiss FICO's breach-of-contract claim with respect to Section 10.8 of the License is denied.[3]

### B. Section 3.1 of the License

Chubb & Son next argues that FICO fails to state a claim for breach of Section 3.1 of the License. Section 3.1, in relevant part, prohibits Chubb & Son from "disclos[ing] the Fair Isaac Products to, or permit[ting] the use or access of the Fair Isaac Products by, any third party or by any individuals other than the employees of [Chubb & Son]." FICO's complaint alleges that "Chubb & Son has disclosed the FICO Products to third

---

[2]    FICO argues that Chubb & Son's interpretation is unreasonable because FICO's "allegations of acquisition and change in control must be taken as true." But the Court may disregard a party's asserted legal conclusion that is couched as a factual allegation. *See Iqbal*, 556 U.S. at 678-79. The circumstances of the merger undoubtedly are factual allegations. But whether the language of Section 10.8 of the License should be construed in a manner that encompasses the merger is a legal conclusion that this Court may disregard.

[3]    In light of this conclusion, the Court declines to address Chubb & Son's alternative arguments regarding expanded use and withheld consent because these disputes cannot be resolved without first resolving whether the merger involving Chubb & Son's parent company is an "assignment" under Section 10.8 of the License.

parties, including at least third parties located in the United Kingdom, Canada, and Australia, and has permitted these third parties access to and use of the FICO Products." Chubb & Son contends that this allegation fails to state a claim because it does not identify these "third parties" with specificity.

FICO's factual allegations in the complaint need not be detailed, nor must they be supported by direct evidence, so long as they raise a claim to relief that is plausible rather than merely conceivable. *See Twombly*, 550 U.S. at 555; *McDonough*, 799 F.3d at 945. To properly plead a claim for breach of contract, FICO must identify the provision of the contract that was breached and Chubb & Son's acts or omissions constituting the breach. *See Dilworth*, 914 F. Supp. 2d at 457-58. FICO has identified the provision of the contract that Chubb & Son allegedly breached. It is Section 3.1 of the License, which prohibits Chubb & Son from disclosing Blaze Advisor to third parties or permitting third parties to access or use Blaze Advisor. FICO also has identified the acts constituting the alleged breach—namely, that Chubb & Son disclosed Blaze Advisor to third parties located in the United Kingdom, Canada and Australia and permitted those third parties to access and use Blaze Advisor. These alleged facts state a plausible claim for relief. Requiring FICO to plead the specific identities of these third parties would be difficult or impossible because the details of Chubb & Son's dealings with third parties likely are exclusively in the possession and control of Chubb & Son. The cases Chubb & Son cites in support of its position are factually inapposite, and they do not warrant a contrary conclusion.

At the hearing, Chubb & Son emphasized that it seeks dismissal of this claim *without* prejudice, arguing that it would be more efficient and less wasteful to require FICO to plead its case a second time than to allow the record to develop through the discovery process. But Chubb & Son's position is contrary to the legal standard that applies to a motion to dismiss. Under that legal standard, a plaintiff is not required to provide direct evidence or detailed factual allegations, and it may rely on a "reasonable expectation that discovery will reveal evidence" of the alleged activity. *Twombly*, 550 U.S. at 555, 556; *accord McDonough*, 799 F.3d at 945. Moreover, shifting discovery burdens from Chubb & Son to FICO is not necessarily more efficient or less wasteful. Although Chubb & Son suggested at the hearing that discovery disputes and motions to compel will bog down the discovery process, this Court declines to speculate about disputes and motions that have not—and may never—come to pass. And the Court certainly will not assume that either party will obstruct the discovery process. In summary, the discovery process is the proper means for this record to be developed further.

FICO has stated a claim for breach of Section 3.1 of the License and, therefore, the Court denies Chubb & Son's motion to dismiss this aspect of the complaint.

**C. Section 9.2(c) of the License**

Chubb & Son next argues that FICO fails to state a claim for breach of Section 9.2(c) of the License. Section 9.2(c) of the License provides:

> (c) <u>Violation of License or Confidentiality Obligations</u>. Fair Isaac may immediately terminate this Agreement, without a requirement for prior notice or a cure period, if [Chubb & Son] violates any terms of the licenses

10

> granted in this Agreement. Either party may immediately terminate this Agreement by written notice to the other party if the other party materially breaches any of the provisions of this Agreement relating to the protection of Confidential Information or Intellectual Property.

Chubb & Son argues that it is impossible to breach this provision of the License because it is a remedies provision that does not impose any independent obligation on Chubb & Son that is capable of being breached.

Under New York law, if there is no contractual obligation to perform an act, the failure to perform the act cannot be a breach of the contract. *Stratton Grp., Ltd. v. Sprayregen*, 458 F. Supp. 1216, 1218 (S.D.N.Y. 1978); *accord Wolff v. Rare Medium, Inc.*, 65 F. App'x 736, 738 (2d Cir. 2003) (applying New York law and explaining that plaintiff's identification of a particular contract provision allegedly breached by defendant was "deficient as a matter of law because the plain language of that section imposes no obligations on [defendant]"). Here, Chubb & Son is correct that Section 9.2(c) imposes no obligations on Chubb & Son and, accordingly, FICO has not alleged acts or omissions by Chubb & Son that would be a breach of that provision.

Because FICO fails to state a claim with respect to Section 9.2(c) of the License, Chubb & Son's motion to dismiss this aspect of the complaint is granted.

### D. Section 9.3 of the License

Chubb & Son next argues that FICO fails to state a claim for breach of Section 9.3 of the License. Section 9.3 of the License provides, in relevant part, that if the License expires or terminates for any reason, Chubb & Son:

> shall immediately cease using all Fair Isaac Product(s) and related documentation (including all intellectual property arising from or related to

11

> the foregoing), shall remove all copies of the Fair Isaac Product(s) and related documentation from [Chubb & Son's] computers and systems, and shall either (i) destroy all copies of the Fair Isaac Product(s), related documentation, and other Fair Isaac Confidential Information and intellectual property in [Chubb & Son's] possession; or (ii) return to Fair Isaac all copies of the Fair Isaac Product(s), related documentation, and other Fair Isaac Confidential Information and intellectual property in [Chubb & Son's] possession. [Chubb & Son] shall provide to Fair Isaac a written certification signed by an authorized office of [Chubb & Son] certifying that [Chubb & Son] has complied with the foregoing.

Because it did not breach any other provision of the License, Chubb & Son contends, FICO was not entitled to terminate the License. In other words, the merit of Chubb & Son's argument with respect to Section 9.3 of the License depends on this Court concluding that FICO fails to state a claim with respect to all of FICO's other breach-of-contract claims.

As addressed above, when the Court accepts the facts alleged in the complaint as true, FICO plausibly alleges that Chubb & Son breached Sections 10.8 and 3.1 of the License. FICO also alleges that although it terminated the License on March 31, 2016, Chubb & Son continued to use Blaze Advisor, neither removed all copies of Blaze Advisor from its computers and systems nor destroyed or returned to FICO all copies of Blaze Advisor, and has not certified removal of Blaze Advisor from its computers and systems. When viewing these factual allegations in the light most favorable to FICO, the complaint plausibly alleges that Chubb & Son breached Section 9.3 of the License.

Because FICO has stated a claim for breach of Section 9.3 of the License, the Court denies Chubb & Son's motion to dismiss this aspect of the complaint.

## II.     FICO's Copyright Claims

Chubb & Son next argues that FICO fails to state a claim that Chubb & Son infringed FICO's copyright. FICO's complaint alleges that Chubb & Son has infringed FICO's copyright in two ways: first, through its "unauthorized reproduction and distribution of the FICO Products to third parties," and second, through its unauthorized "post-termination use of the FICO Products." Chubb & Son argues that, because Chubb & Son did not breach the License and FICO's copyright infringement claims are duplicative of its breach-of-contract claims, FICO fails to state a copyright claim.

To state a claim for copyright infringement, a plaintiff must establish both ownership of a valid copyright and that the protectable elements of the copyrighted work have been copied. *Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182, 186 (2d Cir. 2012). A certificate of copyright registration, which FICO has included with its complaint in this case, is prima facie evidence of a valid copyright. *See id.* "[T]hat a party has licensed certain rights to its copyright to another party does not prohibit the licensor from bringing an infringement action where it believes the license is exceeded or the agreement breached." *Tasini v. New York Times Co.*, 206 F.3d 161, 170 (2d Cir. 1999); *accord Microsoft Corp. v. Harmony Computers & Elecs., Inc.*, 846 F. Supp. 208, 214 (E.D.N.Y. 1994) (holding that "plaintiff's allegation that defendants exceeded the scope of the license agreement states a claim for copyright infringement").

Chubb & Son's primary argument—that dismissal is warranted because it did not breach the License—is unavailing for the reasons addressed above in Part I. FICO has plausibly stated claims for breach of Sections 10.8, 3.1 and 9.3 of the License. Accepting

as true the allegations in support of those claims, FICO has plausibly alleged that the conduct of Chubb & Son exceeded the scope of the License by reproducing and distributing Blaze Advisor to unauthorized third parties before the License terminated and by continuing to use Blaze Advisor after FICO terminated the License. These allegations state a claim for copyright infringement.

Chubb & Son relies on inapposite cases. In *Graham v. James*, 144 F.3d 229, 235-36 (2d Cir. 1998), the licensee breached the license agreement by failing to make the required payments, *not* by using, reproducing or distributing the copyrighted work beyond the scope of the license. In *Evolution, Inc. v. SunTrust Bank*, 342 F. Supp. 2d 943, 953 (D. Kan. 2004), the court expressly recognized that "if the licensee exceeds the *scope* of the copyright license, then the copyright owner may bring an action for copyright infringement." (Emphasis in original.) In *Murphy v. Lazarev*, 589 F. App'x 757, 764-67 (6th Cir. 2014), also cited by Chubb & Son, the alleged infringer was acting within the scope of a valid license, which is contrary to the allegations in this case. The cases Chubb & Son cites merely support the proposition that a licensee *acting within the scope of the license* cannot be sued for copyright infringement. These cases do not suggest that a copyright holder cannot state a claim for copyright infringement against a licensee that exceeds the scope of or breaches a license agreement, which are FICO's allegations in this case.

FICO has stated a claim for copyright infringement. The Court, therefore, denies Chubb & Son's motion to dismiss this aspect of the complaint.

### III. Chubb & Son's Untimely Reply Memorandum

On July 12, 2016, FICO filed a letter requesting that the Court disregard Chubb & Son's reply memorandum because it was filed seven days late, in violation of the published Practice Pointers of the undersigned United States District Judge, and it allegedly raises new matter. Chubb & Son's reply undisputedly was filed after the deadline for doing so. But the untimeliness of Chubb & Son's reply neither inconvenienced the Court nor prejudiced FICO. Also, Chubb & Son's reply does not raise new matter of any substance or materiality. For these reasons, the Court denies FICO's request.

### ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Chubb & Son's motion to dismiss for failure to state a claim, (Dkt. 12), is **GRANTED** to the extent that FICO's complaint alleges breach of Section 9.2(c) of the License, and that aspect of FICO's complaint is **DISMISSED**.

2. Chubb & Son's motion to dismiss for failure to state a claim, (Dkt. 12), is **DENIED** in all other respects.

3. FICO's request that the court disregard Chubb & Son's reply memorandum, (Dkt. 21), is **DENIED**.

Dated:  December 22, 2016             s/Wilhelmina M. Wright
                                                              Wilhelmina M. Wright
                                                               United States District Judge