## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

FAIR ISAAC CORPORATION,

          Plaintiff,

v.

FEDERAL INSURANCE COMPANY,
an Indiana corporation,

          Defendant.

Court File No.  16-cv-1054 (WMW/TNL)

**ANSWER AND COUNTERCLAIMS**

**(JURY TRIAL DEMANDED)**

---

Federal Insurance Company ("Federal"), hereby answers the Amended Complaint of Plaintiff Fair Isaac Corporation ("FICO") as follows:

To the extent not expressly admitted, each and every allegation in the Amended Complaint is denied.

### NATURE OF ACTION

1.    This is an action for breach of contract and copyright infringement related to business software owned by FICO and licensed to Chubb & Son, a division of Federal Insurance Company ("Chubb & Son").

**RESPONSE**:  Answering Paragraph 1, Federal admits that FICO asserts claims for breach of contract and copyright infringement.  Federal denies any breach or infringement and states that FICO's claims are without merit.

### THE PARTIES

2.    FICO is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in San Jose, California.

**RESPONSE**:  Federal is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 and therefore denies them.

3.      Federal is a corporation duly organized and existing under the laws of the State of Indiana with its principal place of business at 15 Mountain View Road, Warren, NJ 07059.  Chubb & Son is an unincorporated division of Federal.

**RESPONSE**:  Answering Paragraph 3, Federal admits that Chubb & Son is an unincorporated division of Federal.  Federal further admits that it is incorporated under the laws of the State of Indiana.  The remaining allegations in Paragraph 3 are denied.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 & 1338(a) and supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367(a).

**RESPONSE**:  Paragraph 4 contains legal conclusions that need not be admitted or denied.

5.      This Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because it is an action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**RESPONSE**:  Paragraph 5 contains legal conclusions that need not be admitted or denied.

6.      This Court has personal jurisdiction over Federal, which does business in the State of Minnesota and is an insurance company licensed by the Minnesota Department of Commerce.

**RESPONSE**:  Answering Paragraph 6, Federal does not contest that the Court has specific personal jurisdiction in this action.  Federal denies that it is subject to general jurisdiction in Minnesota.

7.     Venue is proper in this judicial district under 28 U.S.C. § 1391. Federal resides in this District within the meaning of 28 U.S.C. § 1391(c) because it is subject to personal jurisdiction here.

**RESPONSE**:  Federal admits that venue is proper in this District.

## FACTUAL BACKGROUND

8.     FICO is a world leader in the design and development of predictive analytics and decision ·management software. It provides products and services that enable businesses to automate, improve, and connect decisions to enhance business performance. FICO's decision management software tools are used by businesses to build their own tailored decision management applications.

**RESPONSE**:  Federal is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 and therefore denies them.

9.     One of FICO's decision management software tools is the FICO® Blaze Advisor® business rules management system ("FICO Blaze Advisor"), which is used to design, develop, execute, and maintain rules-based business applications.

**RESPONSE**:  Federal is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 and therefore denies them.

10.    FICO maintains federal copyright registrations for multiple versions of FICO Blaze Advisor:

| Blaze Advisor® Version Number | Copyright Registration Number |
|---|---|
| 3.0 | TX0006301747 |
| 4.0 | TX0006301748 |
| 5.0 | TX0006301746 |
| 6.0 | TX0006301745 |
| 6.5 | TX0006595049 |
| 6.5.5 | TX0007622453 |
| 6.6 | TX0007622554 |
| 6.7 | TX0007622555 |
| 6.8.1 | TX0007622557 |
| 6.9 | TX0007622556 |
| 7.0 | TX0007504713 |
| 7.2 | TX0007776962 |

Copies of the Certificates of Registration are part of the Court Record and are incorporated by reference.  *See* [Doc. 1-1].

**RESPONSE**:  Federal is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 and therefore denies them.

11.     Chubb & Son as a division of Federal is an insurance manager for certain United States insurance companies.

**RESPONSE**:  Answering Paragraph 11, Federal admits that it is a manager for several U.S.-based insurers.

12.     FICO and Chubb & Son, a division of Federal, entered into a Software License and Maintenance Agreement, which they amended twice. The original agreement had an effective date of June 30, 2006. The first amendment had an effective date of August 1, 2006. The second amendment had an effective date of December 28, 2006. Copies of the original agreement and the two amendments, with pricing redacted,

(collectively, the "Agreement") are part of the Court Record and are incorporated by reference. *See* [Doc. 1-2].

> **RESPONSE**:  Paragraph 12 refers to documents that speak for themselves.  To the extent the allegations in Paragraph 12 are inconsistent with the Agreement, Federal denies them.

13.     Under the Agreement, Chubb & Son is the Client. The Agreement grants Chubb & Son a perpetual, non-exclusive, non-transferable, limited license to use FICO Blaze Advisor products and related maintenance services (collectively, the "FICO Products") for internal business purposes under defined terms and conditions.

> **RESPONSE**:  Paragraph 13 refers to documents that speak for themselves.  To the extent the allegations in Paragraph 13 are inconsistent with the Agreement, Federal denies them.

### *Alleged Breach of the non-assignment provision, paragraph 10.8 of the Agreement*

14.     Prior to January 15, 2016, Federal's parent corporation was Chubb Corporation.  Effective as of January 15, 2016, in accordance with the terms of an agreement and plan of merger among Chubb Corporation, Ace Limited, and a merger entity, Chubb Corporation merged with and into ACE INA Holdings, Inc., with ACE INA Holdings, Inc. surviving as a wholly owned subsidiary of Chubb Ltd. (ACE Limited before the merger). As a result, Federal's former parent corporation ceased to exist, and Federal is now a subsidiary of ACE INA Holdings, Inc.

> **RESPONSE**:     Answering Paragraph 14, Federal admits that The Chubb Corporation and ACE INA Holdings, Inc. merged effective January 15, 2016.

Federal further admits that it was a wholly-owned subsidiary of The Chubb Corporation on January 15, 2016, and that it is currently a wholly-owned subsidiary of ACE INA Holdings, Inc. The remaining allegations in paragraph 14 are denied.

15. Paragraph 10.8 of the Agreement prohibits the assignment or transfer of the Agreement without the prior written consent of the other party. Under the Agreement, change of control, merger, and acquisition are deemed to be an assignment or transfer. In addition, the Agreement expressly prohibits Chubb & Son from expanding its use of the FICO Products as a result of assignments or transfers unless FICO first gives its written consent.

**RESPONSE**: Paragraph 15 refers to documents that speak for themselves. To the extent the allegations in Paragraph 15 are inconsistent with the Agreement, Federal denies them.

16. The merger, described generally above, resulted in an acquisition of and a change in control of Federal. Federal, through its division Chubb & Son, continues to use the FICO Products despite the fact it has not received FICO's written consent. Federal breached the nonassignment provision of the Agreement.

**RESPONSE**: Answering Paragraph 16, Federal admits that it continued to use the Blaze software following the merger between Chubb Corporation and ACE INA Holdings, and that FICO has not provided written consent. The remaining allegations in Paragraph 16 are denied.

6

17.     Paragraph 9.2(a) of the Agreement entitled FICO to terminate the Agreement within 30 days of Chubb & Son's receipt of written notice of a material breach, in the event it failed to cure as demanded.

**RESPONSE**:  Denied.

18.     On January 27, 2016, FICO provided written notice to Chubb & Son that it was in breach of the non-assignment provision of paragraph 10.8 of the Agreement.

**RESPONSE**:  Answering Paragraph 18, Federal admits that FICO notified Federal of an alleged breach of Paragraph 10.8 of the Agreement on or around January 27, 2016.  Federal denies that it breached the Agreement.  FICO's purported termination of the Agreement was itself a breach.

19.     On March 30, 2016, after Federal refused to cure the breach, FICO gave written notice that the Agreement would be terminated effective March 31, 2016, as allowed by paragraph 9.2 of the Agreement.

**RESPONSE**:  Paragraph 19 refers to a document that speaks for itself.  To the extent the allegations in Paragraph 15 are inconsistent with that document, Federal denies them.  Federal also denies that it breached the Agreement.

20.     On March 31, 2016, the Agreement terminated.

**RESPONSE**:  Denied.

21.     Expanded use of the FICO Products following the merger, in breach of paragraph 10.8 of the Agreement, has caused FICO to lose licensing revenues.

**RESPONSE**:  Denied.

***Alleged breach of the prohibition against disclosing FICO Products to third
parties or permitting use of or access to FICO Products by third parties, paragraph 3.1
of the license granted by the Agreement***

22.     Federal or its division Chubb & Son has disclosed the FICO Products to

third parties, including at least third parties located in the United Kingdom, Canada, and

Australia, and has permitted these third parties access to and use of the FICO Products.

**RESPONSE**:  Denied.

23.     Paragraph 3.1 of the license granted by the Agreement, entitled "License

Restrictions," restricts Chubb & Son's use of the FICO Products to its internal business

operations and the internal business operations of its Affiliates within the scope of the

license. "Affiliates" is defined in Amendment Two to mean "any other entity directly or

indirectly controlled by [Chubb & Son], where 'control' means ownership of more than

50% of the aggregate of all voting interests ... in the entity."

**RESPONSE**:  Paragraph 23 refers to documents that speak for themselves.  To the

extent that the allegations in Paragraph 23 are inconsistent with the Agreement,

Federal denies the allegations.

24.     The third-party entities to which Federal or its division Chubb & Son has

disclosed the FICO Products and which it has permitted access to and use of the FICO

Products are not "Affiliates" of Chubb & Son within the meaning of the license granted

by the Agreement.

**RESPONSE**:  Denied.

25.     Federal breached the license granted by the Agreement by the disclosure of the FICO Products to third parties and by permitting them access to and use of the FICO Products.

**RESPONSE**:  Denied.

26.     Paragraph 9.2(c) of the Agreement entitled FICO to terminate the Agreement immediately, without prior notice or a cure period, in the event of breach of any terms of the license granted in the Agreement.

> **RESPONSE**:   Answering Paragraph 26, Federal denies that it breached the Agreement and denies that FICO had the right to terminate the Agreement. Paragraph 26 refers to documents that speak for themselves.  To the extent that the allegations in Paragraph 26 are inconsistent with the Agreement, Federal denies the allegations.

27.     The disclosure of the FICO Products to third parties and permitting them access to and use of the FICO Products entitled FICO to terminate the Agreement without prior notice or a cure period.

**RESPONSE**:  Denied.

28.     Federal's breach of paragraph 3.1 of the license granted by the Agreement has caused FICO to lose the licensing revenues that third parties should have paid to use the FICO Products.

**RESPONSE**:  Denied.

*Alleged breach of post-termination obligations, paragraph 9.3 of the Agreement*

29.    Under paragraph 9.3 of the Agreement, Chubb & Son is obligated to immediately cease use of all FICO Products and related documentation, including all intellectual property arising from or relating to the FICO Products and related documentation. Chubb & Son is also obligated to remove all copies of the FICO Products and related documentation from its computers and systems and either destroy or return all copies of the FICO Products, related documentation, and any other FICO intellectual property in its possession to FICO.

**RESPONSE**:  Denied.

30.    Chubb & Son continues to use the FICO Products. It has neither removed all copies of the FICO Products from its computers and systems, nor destroyed or returned all copies of the FICO Products.

**RESPONSE**:  Federal admits that it continues to use the FICO Products, and asserts that it has the right to do so under the license granted in the Agreement. Federal denies that it has any obligation to cease using the FICO Products or to destroy or return copies of the Products.

31.    Chubb & Son has not certified its removal of the FICO Products from its computers and systems and its continued use of the FICO Products following termination constitute further violations of the Agreement.

**RESPONSE**:  Federal admits that it has not removed the FICO Products from its computers.  Federal asserts that it has the right to use the software under the license granted in the Agreement.

32.     Federal's unauthorized post-termination use of the FICO Products through its division Chubb & Son, in breach of paragraph 9.3 of the Agreement, has deprived FICO of licensing revenues.

**RESPONSE**:  Denied.


## COUNT I: Alleged Breach of License Agreement

33.     Paragraphs 1 through 33 are incorporated by reference and made a part of this Count.

**RESPONSE**:  Federal incorporates the prior allegations.

34.     Federal is in breach of its obligations under at least paragraphs 10.8, 3.1, and 9.3 of the Agreement.

**RESPONSE**:  Denied.

35.     As a result of Federal's breaches of the Agreement, FICO has suffered damages in an amount to be determined at trial but, in any event, exceeding $75,000, exclusive of costs and interest.

**RESPONSE**:  Denied.


## COUNT II: Alleged Copyright Infringement (17 U.S.C. §§ 101 Et Seq.

36.     Paragraphs 1 through 35 are incorporated by reference and made a part of this Count.

**RESPONSE**:  Federal incorporates the prior allegations.

11

37.     FICO owns the FICO Products, which are the subject of valid Certificates of Copyright Registration issued by the Register of Copyrights.

**RESPONSE**:  Federal is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37 and therefore denies them.

38.     Federal's unauthorized reproduction and distribution of the FICO Products to third parties infringes FICO's copyright interests.

**RESPONSE**:  Federal denies that it reproduced or distributed the software to third parties and denies any infringement of FICO's copyrights.

39.     Federal has knowingly caused, participated in, materially contributed to, induced, and derived economic benefit from the infringement of FICO's copyright interests.

**RESPONSE**:  Denied.

40.     Federal's disclosure of FICO's intellectual property to third parties has caused, and will continue to cause, irreparable harm to FICO, warranting injunctive relief under 17 U.S.C. § 502.

**RESPONSE**:  Denied.

41.     Federal's acts have caused, and will continue to cause, damage to FICO in an amount to be determined at trial. At a minimum, FICO is entitled to its actual damages or statutory damages under 17 U.S.C. § 504.

**RESPONSE**:  Denied.

42.     FICO is entitled to recover its costs and reasonable attorney's fees under 17 U.S.C. § 505.

**RESPONSE**:  Denied.


**COUNT III: Alleged Copyright Infringement (17 U.S.C. §§ 101 Et Seq.)**

43.     Paragraphs 1 through 42 are incorporated by reference and made a part of this Count.

**RESPONSE**:  Federal incorporates the prior allegations.

44.     Federal's post-termination use of the FICO Products constitutes an unauthorized reproduction of registered works.

**RESPONSE**:  Denied.

45.     Federal's post-termination use of the FICO Products infringes FICO's copyright interests.

**RESPONSE**:  Denied.

46.     Federal has knowingly caused, participated in, materially contributed to, induced, and derived economic benefit from the infringement of FICO's copyright interests.

**RESPONSE**:  Denied.

47.     Federal's acts have caused, and will continue to cause, damage to FICO in an amount to be determined at trial. At a minimum, FICO is entitled to its actual damages or statutory damages under 17 U.S.C. § 504.

**RESPONSE**:  Denied.

48.     FICO is entitled to recover its costs and reasonable attorney's fees under 17 U.S.C. § 505.

13

**RESPONSE**:  Denied.


## SEPARATE DEFENSES

49.     The Complaint fails to state a claim upon which relief can be granted.

50.     FICO's claims fail because Federal's use of the FICO Products is licensed under the Agreement.

51.     Federal did not breach the Agreement.

52.     If the fact-finder concludes that Federal breached the agreement, then the breach was not material.

53.     FICO's claims fail because FICO did not suffer damages as a result of the claimed breach.

54.     FICO's claims fail because FICO did not have the right to terminate the Agreement.

55.     FICO's claims fail because FICO itself breached the Agreement.

56.     FICO's claims are barred by waiver and estoppel.

57.     FICO's state law claims are preempted by federal law.


## COUNTERCLAIMS

For its counterclaims against FICO Corporation, Federal asserts as follows:

1.     In June 2006, Chubb & Son, a division of Federal, and FICO entered into a Software License and Maintenance Agreement (the "Agreement").  Initially the license was limited to five "seats" of Blaze Advisor.

2.      On December 28, 2006, the parties amended the Agreement, making it enterprise-wide and without a limit on the number of seats.  Under the amended Agreement, Federal and other Chubb entities were perpetually licensed to use Blaze Advisor without limitation on the number of seats.

3.      The Agreement includes a provision governing assignments as follows:

> Neither party shall, without the prior written consent of the other party, assign or transfer this Agreement, or any part thereof.  In the event of a change of control of Client, or if Client1 is merged with, acquired by or acquires another entity, or undergoes a reorganization, or otherwise acquires the right to process the business of another entity, each such event shall be deemed to be an assignment subject to this section, and Client shall make no expanded use of the Fair Isaac Products as a result of any such event unless and until Fair Isaac provides such written consent, which will not be unreasonably withheld.  Any attempt to assign or transfer all or any part of this Agreement without first obtaining such written consent will be void and of no force or effect.  Notwithstanding the foregoing, Fair Isaac may perform any or all of its obligations through any subsidiary or affiliated company, and may assign this Agreement by merger, reorganization, consolidation, or sale of all or substantially all its assets.

4.      Chubb & Son is a division of Federal Insurance Company, which until recently was a wholly-owned subsidiary of The Chubb Corporation.

5.      On January 15, 2016, ACE INA Holdings, Inc. merged with The Chubb Corporation.  Federal Insurance Company is a wholly-owned subsidiary of The Chubb Corporation.

6.      Federal continued doing business after the merger in the same manner in had done prior to the merger.  Federal did not change the way it uses the Blaze Advisor software as a result of the merger; Federal continued to use the Blaze Advisor software after the merger in the same manner it had used the software before the merger.

7.      Federal did not expand its use of the software following the merger.

8.      Federal's use of the Blaze Advisor software post-merger is covered by the license Federal purchased from FICO in the Agreement.

9.      On January 26, 2016, FICO sent a letter alleging that Federal needed consent from FICO to continue using the Blaze Advisor software post-merger, and stating that FICO "has not and does not consent" to the continued use of the software.

10.     Because Federal did not expand its use of the software after the merger, Federal did not need consent from FICO to continue using the Blaze Advisor software.

11.     FICO claimed that consent was required and refused to consent to continued use of the licensed software even before knowing whether Federal's use of the software had changed.

12.     The Agreement states that consent "will not be unreasonably withheld."

13.     FICO's conduct in refusing to consent to continued use of the software post-merger lacked good faith, constituted unfair dealing, and was arbitrary and irrational.

14.     On information and belief, FICO refused to consent to continued use of the software post-merger in an effort to force Federal to pay additional license fees, and/or to obtain leverage in the ongoing negotiations between the parties.

15.     On or around March 30, 2016, FICO sent a letter purporting to terminate the Agreement.  The purported termination violated the terms of the Agreement and was inoperative.  Furthermore, FICO breached the Agreement by purporting to terminate the Agreement without the right to do so.

## COUNT ONE
## (Breach Of Contract)

16.     Federal incorporates the prior allegations.

17.     FICO and Federal are parties to the Agreement.  In the Agreement, FICO

granted a perpetual, fully-paid, enterprise-wide license to the Blaze Advisor software.

18.     The Agreement may only be terminated if one of the events identified in

Paragraph 9.2 occurs.

19.     None of the events that allows FICO to terminate has occurred.  FICO

nonetheless purported to terminate the Agreement.  FICO did not have the right to

terminate the Agreement, and breached the Agreement by purporting to terminate without

the right to do so.

20.     Federal performed its obligations under the Agreement.

21.     FICO's breach of the Agreement damaged Federal in an amount to be

determined at trial.

## COUNT TWO
## (Breach of Implied Covenant of Good Faith and Fair Dealing)

22.     Federal incorporates the prior allegations.

23.     The Agreement contains an implied covenant of good faith and fair dealing,

including an implied promise that FICO will act in good faith and deal fairly with Federal

in the event of a merger of Federal's parent company with another entity.

24.     FICO breached the implied covenant of good faith and fair dealing by declaring that it would not consent to continued use of the licensed software post-merger without knowing or considering whether Federal used the licensed software any differently after the merger as it had before the merger.

25.     FICO acted arbitrarily and irrationally when it declared that consent would not be given regardless of the facts.

26.     On information and belief, FICO acted in bad faith and with the goal of exacting additional, unearned license fees from Federal when it announced that consent would not be given for Federal to continue using the software post-merger.

27.     Federal has been damaged because of FICO's conduct in an amount to be proven at trial.

## JURY DEMAND

Federal demands a trial by jury of all claims and counterclaims in this action for which there is a right to trial by jury.

WHEREFORE, Federal Insurance Company requests judgement as follows:

A.     That Plaintiff take nothing by its Complaint;

B.     That Plaintiff's claims be dismissed with prejudice;

C.     Enter judgment for Federal on its counterclaims in an amount to be determined at trial;

D.     An Order awarding Federal its costs and attorney's fees under 17 U.S.C. § 505; and

E.      For such other and further relief as the Court deems just and equitable.

Respectfully Submitted,

FREDRIKSON & BYRON, P.A.

Dated:  February 15, 2017            /s/ Lora M. Friedemann
                                     Lora M. Friedemann (#0259615)
                                     lfriedemann@fredlaw.com
                                     Nikola L. Datzov (#0392144)
                                     ndatzov@fredlaw.com
                                     **FREDRIKSON & BYRON, P.A.**
                                     200 South Sixth Street, Suite 4000
                                     Minneapolis, MN  55402-1425
                                     (612) 492-7000 (tel.)
                                     (612) 492-7077 (fax)

                                     ***Attorneys for Defendant***

60409506_1.docx

19