# **EXHIBIT 2**

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation,<br><br>    Plaintiff,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY, an Indiana corporation,<br><br>    Defendant. | Case No. 16-cv-1054 (WMW/TNL)<br><br>**[PROPOSED]<br>E-DISCOVERY ORDER** |

  The parties hereby stipulate to the following guidelines for locating and producing potentially relevant electronically stored information ("ESI") and avoiding unnecessary costs. This stipulation, however, does not prevent the parties from negotiating additional agreements regarding discovery as may be necessary in the course of this case.

  Further, this stipulation is not intended to override the requirements of the Federal Rules of Civil Procedure as they apply to electronic discovery. In the event of conflict, the Federal Rules of Civil Procedure govern.

**A. Definitions**

  The term "ESI" refers to any electronically stored information in the possession, custody, or control of the parties—including, but not limited to, e-mail, calendars, word-processing Documents, spreadsheets, electronic slide presentations, databases, and other reasonably accessible electronically stored information reasonably anticipated to be subject to discovery pursuant to the Federal Rules of Civil Procedure.

  The term "Document(s)" is synonymous and equal in scope to usage of this term in Fed. R. Civ. P. 34(a) and to the terms "[w]ritings and records," "photographs," "original," and "duplicate" defined in Fed. R. Evid. 1001. Document means the original (or an identical duplicate if the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description that are fixed in any medium upon which intelligence or information can be recorded or retrieved—including, but not limited to, documents fixed in tangible media or electronically or digitally stored on disk or tape in native format.

The term "Preserve" or "Preservation" is to be interpreted in accordance with the Federal Rules of Civil Procedure to accomplish the goal of maintaining the integrity of all Documents, ESI, and tangible objects reasonably anticipated to be the subject of discovery in this action. Preservation includes taking reasonable steps to prevent the partial or full destruction, alternation, testing, deletion, shredding, incineration, wiping, relocation, migration, theft, or mutation of such material, as well as negligent or intentional handling that would make material incomplete or inaccessible.

**B.     Preservation Guidelines**

Each party has instituted a process to identify and preserve the potentially relevant ESI of individual employees (or other individuals for whom a party has the right to access ESI) who can reasonably be identified as potentially having information related to the proceeding. To the extent such individuals have individual computers or individual files on company servers or data storage systems, reasonable efforts have been made to preserve ESI for such individuals. In addition, the parties have acted to preserve general corporate electronic documents that are reasonably relevant to this proceeding. Each party has circulated a litigation hold notice designed to ensure the preservation of potentially discoverable electronic and other information to those employees and officers reasonably identified as potentially possessing such information.

**C.     Inaccessible ESI**

Based on the parties' respective representations that reasonable and timely steps were taken to preserve ESI, the circumstances of this case do not currently warrant the review or production of ESI that is not reasonably accessible because it is unlikely that significant relevant information would be located in those sources that are not otherwise available in reasonably accessible sources. Such remote possibility is substantially outweighed by the burden and cost of review and production of ESI from those sources. The parties agree that the following ESI is not reasonably accessible:

1. Backup tapes and systems created for the sole purpose of disaster recovery;

2. Voicemail, except for voicemail that is converted to text and forwarded to the recipient's email account, if any;

3. Instant Messaging, except for instant messaging that has been logged in the ordinary course of business, if any;

4. Legacy Data;

5. Residual, deleted, fragmented, damaged, or temporary data (e.g., data stored in a computer's RAM); and

2

      6.      Encrypted data/password protected files, where the key or password cannot be ascertained after reasonable efforts.

Nothing in this paragraph is intended to preclude a party from requesting production of the above categories of ESI if it becomes apparent that relevant information is likely to be located in these sources and not otherwise available from reasonably accessible sources.  In such a situation, the parties agree to confer and in good faith attempt to reach an agreement about the production of information located in the above categories of ESI.  If the parties are unable to reach an agreement, the requesting party may seek an Order from the Court.

**D.**      **Filtering.**

In effort to control costs and reduce the volume of ESI that is not relevant to the matter, the parties may filter ESI using the following techniques:

      1.      **Custodians**.  Each side may limit its initial collection and review of email to the nine custodians likely to have the most relevant discoverable information in their possession, custody, or control.  The parties agree that, if requested by the receiving party based on a reasonable belief that the inclusion of additional custodians would likely result in the production of additional non-cumulative responsive documents by the producing party, they will negotiate in good faith the inclusion of additional custodians.  If no agreement is reached, either party may submit the matter to the Court.

      2.      **Search Terms**.  The parties may use reasonable search terms to filter for relevancy prior to review and production.

      3.      **Duplicates**.  In an effort to control costs and reduce the volume of ESI that are not relevant to the matter, each party may remove duplicative ESI to reduce unnecessary cost of reviewing and producing duplicative ESI.  The parties must retain metadata for all duplicate documents as described in Section E.3 below.  Each party will accommodate reasonable requests for production of duplicate documents and/or the metadata for duplicate documents.

**E.**      **Form of Production**

Upon production, each page should be branded with a Bates number and Confidentiality designation (if any) on the face of the image.

      1.      **Paper Documents**.  Paper documents will be produced as images.  Each party will produce paper documents in image format in order to reduce copying charges thus controlling costs.  Black and white images must be single page TIFF; Group IV compression format; and imaged at 300 DPI.

Color images must be JPEG; single page; JPEG compression format; and imaged at 300 DPI. This is a popular static format that allows for proper viewing, numbering, endorsement and any necessary redaction and one that will work with most popular litigation software packages. Production by Defendant ("Federal") to Plaintiff ("FICO") will be in single-page TIFF format, and production by FICO to Federal will also be in single-page TIFF format. Each party will accommodate reasonable requests for production of images in color. The parties agree that OCR information will be exchanged for each paper document produced. At the option of the producing party, produced documents may be organized and labeled to correspond to the categories in the document requests, or may be grouped by source of collection. If the latter option is chosen, the producing party will provide a source index upon production.

2. **Electronic Documents.** Electronic documents will be produced in the form most conducive to the type and nature of the specific electronic documents.

   a. *Image and Searchable Text File.* Except as noted below, each party will produce all electronic documents in image format, adhering to the specifications noted above for paper documents. Production by Parties will include Concordance .DAT and Opticon load files. The parties further agree that when possible extracted text (for all documents that have extracted text – e.g. Word documents, Excel spreadsheets, etc.) or OCR information (for those files that do not have extracted text or that have been redacted) will be exchanged for each document produced.

   b. *Email.* In the case of email, the corresponding text file shall include header information including: (1) the individual to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), and (5) the date of the email.

   c. *Spreadsheets.* Excel™ and other types of spreadsheets are often dynamic in nature and may not be conducive to static image; therefore, a party shall produce Excel™ and other spreadsheets in their native application/s if it appears that there is a legitimate need for information that cannot be derived from the static image. To the extent that print-outs or images of all or part of a spreadsheet were also maintained in static form (e.g. as a pdf attachment or a hard copy in a file), those documents will be produced as static images consistent with the specifications for production of paper. Native

4

files will be produced with accompanying slip sheets indicating that the document has been produced as a native file. The file name and slip sheet of any file produced in native format will include the document identification, and may include the confidentiality designation, where applicable.

  d. ***Databases.*** Certain types of databases are dynamic in nature. Furthermore, they will often contain information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. A party may at its option produce relevant information from a database in an alternate form, such as a report or data table. These reports or data tables will be produced in either a static image format or in a popular database application, such as Access™ database, upon a showing of the need for and relevance of having the information in a database application. To the extent that relevant and responsive reports or data tables were also maintained in static form (*e.g.* as a pdf attachment or a hard copy in a file), those documents will be produced as static images consistent with the specifications for production of paper.

  e. ***Conversion Not Practicable.*** Due to the nature or complexity of storage of some ESI (e.g. ESI in proprietary applications), conversion to image and searchable text may be overly burdensome. The parties reserve the right to provide such ESI in a reasonable format or offer it for inspection in a reasonable manner.

  f. ***Image Not Readable.*** Where TIFF images of certain ESI (for example, spreadsheets, Powerpoint™ files, or drawings) are not readable due to processing constraints, the parties may request their production in native or other appropriate format.

3. **Metadata**. The parties will preserve all original ESI, including the associated metadata. However, because the majority of metadata is unusable and of little value and the time required to review the metadata makes its production cost-prohibitive, the parties will not produce metadata in the first instance, with the exceptions of (a) PowerPoint™ notes or the equivalent, (b) Custodian, (c) MD-5 Hash Value, (d) PRODBEGNO, (e) PRODENDNO, (f) ATTACHMNT, (g) BEGATTACH, (h) ENDATTACH, (i) Date created, (j) Date modified, (k) Document extension, (l) Filename for non-email ESI, (m) Parent ID, (n) protective declaration, (o) author, (p) native path, (q) text path, and (r) the e-mail fields noted in Section E.2.b above. Each party will accommodate reasonable requests for production of metadata in connection with a reasonable number of specific document(s)

upon a showing of the need for and relevance of such metadata. Such requests for metadata must be made in writing.

**F.     No Waiver**

By complying with this Stipulated E-Discovery Order, no party waives any objection to the production of the Documents, tangible items or things, and ESI that is preserved. Furthermore, nothing contained herein relieves the parties of their obligations to preserve evidence under other applicable laws, procedures, or regulations.

**G.     Protective Order**

The terms of the Stipulated Protective Order governing inadvertent production of privileged information also govern all production pursuant to this Stipulated Order. The production of ESI is subject to the parties' rights under the Protective Order, the practices of the Court, and the rules to request the return of inadvertently produced ESI.

Dated: March 10, 2017

| | |
|---|---|
| MERCHANT & GOULD, P.C. | FREDRIKSON & BYRON, P.A. |
| /s/ Allen Hinderaker<br>Allen Hinderaker, MN Bar # 45787<br>Michael A. Erbele, MN Bar # 393635<br>MERCHANT & GOULD P.C.<br>3200 IDS Center<br>80 South Eighth Street<br>Minneapolis, MN  55402-2215<br>Tel:  (612) 332-5300<br>Fax:  (612) 332-9081<br>ahinderaker@merchantgould.com<br>merbele@merchantgould.com<br><br>John T. Winemiller pro hac vice<br>9719 Cogdill Road, Suite 101<br>Knoxville, TN  37932-3322<br>Tel:  (865) 380-5960<br>Fax:  (865) 380-5999<br>jwinemiller@merchantgould.com<br><br>*Attorneys for Plaintiff FICO* | /s/ Lora M. Friedemann<br>Lora M. Friedemann (#0259615)<br>lfriedemann@fredlaw.com<br>Nikola L. Datzov (#0392144)<br>ndatzov@fredlaw.com<br>FREDRIKSON & BYRON, P.A.<br>200 South Sixth Street, Suite 4000<br>Minneapolis, MN 55402-1425<br>(612)492-7000 (tel)<br>(612) 492-7077 (fax)<br><br>*Attorneys for Federal Insurance Co* |