UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>FEDERAL INSURANCE COMPANY,<br>an Indiana corporation,<br><br>    Defendant. | Court File No.  16-cv-1054 (WMW/DTS)<br><br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL DISCOVERY** |

## INTRODUCTION

Despite repeated attempts to resolve the present discovery disputes, Fair Isaac Corporation ("FICO") continues to refuse to produce relevant documents and answers responsive to Federal Insurance Company's ("Federal") discovery requests.

For example, although FICO seeks damages for lost licensing revenues, it refuses to produce other licenses and agreements for the same software, which would provide comparative points for the fair market value of the software.  Indeed, FICO appears to have redacted hundreds of pages from responsive documents to withhold such information, not based on privilege, but relevance.  Furthermore, although FICO has identified specific dollar figures for the amount of damages it seeks, FICO refuses to identify how it reached those numbers or under which claims it is pursuing such damages.  All of this information is responsive and highly relevant.  The Court should order its production.

## BACKGROUND

### I. THE PARTIES AND THE LICENSE AT ISSUE

Federal is an insurance company that provides property and casualty insurance products and services. (*See* Dkt. No. 36 ¶ 11.) FICO designs and develops predictive analytics and decision management software. (*Id.* ¶ 8.) One of the software tools offered by FICO is the FICO® Blaze Advisor® ("Blaze Advisor"), a business rules management system used to design, develop, execute, and maintain rules-based business applications. (*Id.* ¶ 9.) FICO asserts that it maintains copyright registrations for different versions of Blaze Advisor. (*Id.* ¶ 10.)

In June 2006, the parties entered into a Software License and Maintenance Agreement (the "License") for the use of Blaze Advisor. (*Id.* ¶ 12; *see also* Dkt. No. 1-2.) The final version of the License provided a perpetual, fully-paid, enterprise-wide license without a limit on the number of seats. (*See* Dkt. No. 1-2 at 12, 20.)

### II. FICO'S ASSERTED CLAIMS

For nearly ten years, Federal used Blaze Advisor software under the License with the support and assistance of FICO. In January 2016, Federal's corporate parent, The Chubb Corporation, merged with and into ACE INA Holdings, Inc., with ACE INA Holdings, Inc. as the surviving entity. (*See* Dkt. No. 36 ¶ 14.) Although FICO does not allege any facts that Federal's use of the software expanded or changed after the merger, it asserts that the merger of Federal's corporate parent was a violation of the non-assignment provision in Paragraph 10.8 of the License. (*See id.* ¶¶ 15-16.) FICO argues that this alleged breach entitled it to terminate the License entirely. (*See id.* ¶¶ 17-20.)

FICO also alleges that Federal disclosed, and permitted access to, the software to third parties in the United Kingdom, Canada, and Australia. (*See id.* ¶ 22.) It asserts that this was a breach of the restrictions in Paragraph 3.1 of the License, which FICO also claims entitled it to terminate the License. (*Id.* ¶¶ 23, 26.) Based on its alleged termination of the License, FICO asserts that Federal breached the obligations of Paragraph 9.3 of the License, relating to post-termination obligations. (*See id.* ¶¶ 29-32.) FICO also asserts that the alleged wrongful disclosure and post-termination use of the software infringed FICO's copyrights. (*See id.* ¶¶ 37-40, 44-47.)

## ARGUMENT

**I.  FICO MUST PRODUCE DOCUMENTS RELATING TO ITS LICENSING OF THE ASSERTED COPYRIGHTED WORKS**

For each breach of contract claim, FICO's Amended Complaint asserts damages for lost licensing revenues based on the asserted copyrighted works. (Dkt. No. 36 ¶¶ 21, 28, 32.) FICO's answers to interrogatories suggest that FICO also seeks lost licensing revenues as part of its copyright infringement claims. (Datzov Declaration dated January 29, 2018 ("Datzov Decl.") Ex. A at 6-7.)

In light of FICO's claims for lost licensing revenue, Federal made several requests for production of documents relating to the value of FICO's licensing of the Blaze Advisor software:

> **REQUEST FOR PRODUCTION NO. 16**: All documents that evidence, refer or relate to licensing revenues you have received for the Works from 2006 to present.
> **REQUEST FOR PRODUCTION NO. 17**: Documents sufficient to show the amount of the licensing fee for each perpetual license to the Works from 2006 to present.

> **REQUEST FOR PRODUCTION NO. 18**: Documents sufficient to show the average amount per seat you have received in licensing revenues for the Works in each year from 2006 to present.
> **REQUEST FOR PRODUCTION NO. 19**: All licensing agreements for the Works from 2006 to present.

(Datzov Decl. Ex. B at 4.)

FICO objected to producing *any* licensing information relating to the asserted copyrighted works:

> **OBJECTION TO REQUEST NO. 16**: The request is overbroad and disproportionate, seeking information that is not relevant to either party's claims or defenses.

(Datzov Decl. Ex. C at 9.)[1]  FICO continued to maintain the same objection throughout the parties' multiple attempts to resolve the dispute.  (*See id.* Ex. D at 3.)

By pursuing damages for lost licensing revenues, FICO has placed the value of a license directly in issue.  Since FICO refuses to identify how it determined the value of its alleged lost license revenue, Federal does not know to what extent FICO is relying on its own knowledge of similar licenses in reaching such a determination.  *See infra* Section IV at 9-10.  Nevertheless, courts have held that "[t]o calculate the fair market value…[in] a copyright case[,]…[the] determination must be tied to the particular work at issue and its marketplace value." *Gaylord v. United States*, 777 F.3d 1363, 1367-68 (Fed. Cir. 2015).  To that end, "past arms-length licensing practices by the copyright owner…may be useful." *Id.*; *see also Raimondi v. Olenicoff*, No. SACV 12-2094 AG (RNBx), 2015

---

[1] FICO lodged the same objection to Request Nos. 17-19 and also objected that they were "cumulative" of other requests.  (*See* Datzov Decl. Ex. C at 9-10.)

- 4 -

WL 9703485, at *2 (C.D. Cal. July 7, 2015) ("Typically, a license price is established through objective evidence of benchmark transactions, such as licenses previously negotiated for comparable use of the infringed work, and benchmark licenses for comparable uses of comparable works." (internal quotation marks omitted)); *Rivera v. Mendez & Compania*, 988 F. Supp. 2d 174, 178 (D.P.R. 2013) ("Benchmark transactions, i.e. comparable licenses of the copyrighted work, are appropriate starting points.").

Here, evidence of other licenses for the same copyrighted works is particularly relevant because FICO's stated calculation for lost licensing fees per year is **more than 30 times** the annual value of the License between the parties. *See infra* Section IV at 11-12. Unless FICO is willing to waive its damages claims for lost licensing revenues, Federal is entitled to discovery of documents relating to the value of other licenses entered into by FICO for the same copyrighted works.

## II. FICO CANNOT REDACT RESPONSIVE DOCUMENTS BASED ON RELEVANCE

FICO has produced two documents that appear to provide summary information relating to FICO's licensing efforts with numerous third parties for the copyrighted works at issue. (*See* Datzov Decl. Exs. E, F.) In the first 140-page document, FICO redacted all but 7 pages. (*See id.* Ex. E.) In the second 251-page document, FICO redacted all but 6 pages. (*See id.* Ex. F.) The redacted information appears to be directly responsive to Federal's requests for licensing revenue and agreements.

During the parties' meet-and-confer, FICO represented that the redactions were made for relevance—not privilege. (*See* Datzov Decl. ¶ 9.) As already explained above, FICO is incorrect—such information is relevant and should be produced.

Moreover, courts have repeatedly held that parties may not redact responsive documents based on relevance or confidentiality. *See, e.g.*, *Bartholomew v. Avalon Capital Grp., Inc.*, 278 F.R.D. 441, 451 (D. Minn. 2011) (citing cases and compelling production of redacted documents because "[r]edaction is an inappropriate tool for excluding alleged irrelevant information from documents that are otherwise responsive to a discovery request," and noting that irrelevant information "may be highly useful to providing context for the relevant information"); *Hageman v. Accenture, LLP*, No. 10-cv-1759, 2011 WL 13136510, at *4 (D. Minn. June 7, 2011) (granting motion to compel the production of documents previously redacted based on relevance); *Burris v. Versa Prods., Inc.*, No. 07-cv-3938, 2013 WL 608742, at *3 (D. Minn. Feb. 19, 2013) ("[T]hese types of redactions find no support in the Rules and are fraught with the potential for abuse, [and] the Court will not permit them unless the circumstances provide an exceedingly persuasive justification to do so.").

The Court should require FICO to produce complete, unredacted copies of these two documents and any other document FICO redacted for reasons other than privilege.

### III.    FICO MUST PRODUCE AGREEMENTS RELATING TO THE ASSERTED COPYRIGHTED WORKS

A central issue in this case is the interpretation and scope of the License between the parties. Indeed, in deciding Defendant's motion to dismiss, the Court found that

- 6 -

Paragraph 10.8 of the License—the basis of FICO's leading breach of contract claim—is ambiguous. (*See* Dkt. No. 28 at 8) ("Because each party advances a reasonable interpretation of Section 10.8 of the License, the parties' dispute presents an ambiguity…."). In light of this ambiguity, and the disputed interpretation of other provisions, Federal sought discovery of similar agreements:

> **REQUEST FOR PRODUCTION NO. 13**: All agreements related to the Works you contend Federal infringed.

(Datzov Decl. Ex. B at 4.)

FICO has objected to producing *any* agreements related to the asserted copyright works:

> **OBJECTION**: This request is overbroad and disproportionate; other than the Agreement that is the subject of this lawsuit, agreements with other parties related to the Works are not relevant to either party's claims or defenses.
>
> **RESPONSE**: Without waiving the objection, FICO states that it has already produced the Agreement that is the subject of this lawsuit. *See* [Dkt. 1-2.]

(Datzov Decl. Ex. C at 8.)

In later correspondence between the parties, FICO asserted that agreements with other parties for the same copyrighted works are not relevant because "[e]very license agreement for the Blaze Advisor® software is negotiated individually and in light of the particular circumstances of each case. These agreements are not standard, interchangeable, or comparable, and other such agreements have no bearing on FICO's damages in this case." (Datzov Decl. Ex. D at 3.)

Contrary to FICO's assertions, and as explained above, agreements with third parties for the same copyrighted works are at least relevant to the issue of FICO's claimed damages. Moreover, the terms of similar agreements for the same copyrighted works are relevant to both the interpretation of disputed terms and the scope of permitted use. *See, e.g.*, *Trilegiant Corp. v. Sitel Corp.*, 272 F.R.D. 360, 364 (S.D.N.Y. 2010) ("[A]nything that might further the interpretation of [the disputed] provision—including information on other contracts, SOWs, and manuals utilized by Trilegiant in other transactions—is relevant and subject to discovery."); *Bridgeport Music Inc. v. UMG Recordings, Inc.*, No. 05 Civ. 6430(VM)(JCF), 2007 WL 4410405, at *3 (S.D.N.Y. Dec. 17, 2007) (holding that "other similar contracts that [were] negotiated around the same time and that contained the [same term] or dealt with [the same subject] are relevant to the construction of the [disputed copyright license] agreement").

FICO's lead breach of contract claim is that the merger of Federal's corporate parent was a breach of Paragraph 10.8 (the non-assignment provision). (*See* Dkt. No. 36 ¶¶ 14-16.) Accordingly, Federal requested documents relating to other parties' requests for consent to Paragraph 10.8 (or similar clauses in other FICO license agreements), FICO's response to such requests, and FICO's other efforts to enforce the asserted copyrighted works. (Datzov Decl. Ex. B at 4.) Yet, FICO appears to have produced no documents for enforcement of similar provisions against any other party. If FICO's agreements with other parties include similar provisions without any related enforcement from FICO, such agreements are highly relevant to the interpretation of the License at hand.

In short, even if FICO's agreements with other parties are not carbon copies of FICO's License with Federal, it belies credulity that a company as large as FICO begins each agreement from a blank slate. Agreements for the same copyrighted works likely contain many, if not all, of the disputed terms. Those agreements are relevant and should be produced.

## IV. FICO MUST IDENTIFY ITS BASIS FOR DAMAGES FOR THE ASSERTED CLAIMS

FICO's Amended Complaint alleges breach of contract and copyright infringement based on alleged improper disclosure and unauthorized use of FICO's software. (Dkt. No. 36 ¶¶ 14-21, 22-28, 41, 44.) Accordingly, Federal asked interrogatories to understand FICO's basis for claiming any damages under these claims and to ensure efficient discovery relating to FICO's claimed damages:

> **INTERROGATORY NO. 6**: Describe and quantify each element of damages being claimed by FICO against Federal, including the basis for each element of damages being claimed.
>
> **INTERROGATORY NO. 7**: Describe and quantify the damages you are seeking based on Federal's continued use of the Blaze Advisor software following the merger between The Chubb Corporation and ACE Limited.
>
> **INTERROGATORY NO. 8**: Describe and quantify the damages you are seeking based on Federal's alleged disclosure of the Blaze Advisor software to third parties, as alleged in Paragraph 28 of the Complaint.
>
> **INTERROGATORY NO. 9**: Describe and quantify the damages you are seeking based on Federal's alleged acts of copyright infringement, as alleged in Paragraph 44 of the Complaint.

(Datzov Decl. Ex. G at 3.)

Although FICO identified specific sums, it refused to explain how it calculated the claimed sums. Obviously, FICO knows how it reached the numbers it provided, and it can provide the underlying basis for its calculation. Yet, its answer to Interrogatory No. 6 fails to do so:

> **OBJECTION TO INTERROGATORY NO. 6:** This Interrogatory is premature. A quantification of FICO's damages necessarily depends on the extent of Federal's improper use of Blaze Advisor® in breach of the Agreement, its improper disclosure of Blaze Advisor® to third parties in further breach of the Agreement and in violation of FICO's copyright rights, and Federal's use of Blaze Advisor® following the termination of the Agreement in breach of the Agreement and in further violation of FICO's copyright rights. This information is uniquely within Federal's possession, and FICO is currently seeking this information in discovery.
>
> **RESPONSE TO INTERROGATORY NO. 6**: Without waiving the objection, and based on the information currently within its possession, FICO states that its damages claim can be grouped into the following categories: (1) the unlicensed use of Blaze Advisor by Chubb & Son, a division of Federal, since March 31, 2016; (2) the unlicensed use by Federal (meaning by any division other than Chubb & Son) since the date that unlicensed use began; (3) the unlicensed use by entities other than Federal (whether or not subsidiaries of Federal) to whom Federal distributed the Works from the date of that unlicensed use. Damages under the first category are (a) the commercially reasonable fees FICO would have received had the use since March 31, 2016, been licensed and (b) all profits derived from goods and services that used Blaze Advisor® from March 31, 2016. The second category damages are of the same kind – lost license fees and disgorgement of profits. The time period will be different, commencing when the unlicensed use began. Damages under the third category are the lost license fees FICO would have received had the use by each third party been licensed. In lieu of its actual damages and disgorgement of profits, FICO may seek statutory damages under 17 U.S.C. § 504 at its election. FICO will supplement its answer to this interrogatory, if appropriate, once it has received discovery from Federal.
>
> **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6**: Without waiving the objection, and based on Federal's supplemental response to FICO's Interrogatory No. 4, the following are the approximate lost license fees related to

>the first and third categories of damages described above. Lost license fees include the fee for annual maintenance.
>
>This supplemental response is without prejudice to further supplementation based on discovery exchanged between the parties, including information received from Federal in discovery. For example, the volume of Federal's transactions/usage related to each application is relevant to pricing and not currently known by FICO. This supplemental response is based on information currently known.
>
>The category one damages are the FICO license fees for each application for which Chubb & Son, a division of Federal, has used the Blaze Advisor® software since March 31, 2016, as well as all profits derived from goods and services that used Blaze Advisor ® from that date. ***The FICO lost license fee for the applications*** identified in the supplemental response to Interrogatory No. 4 (that FICO understands to be used by Chubb & Son, a division of Federal) ***is approximately $4,671,000 per year***. FICO claims damages for that annual fee from March 31, 2016, to the date an injunction is issued against Federal's continued unlicensed use of the software.
>
>The category three damages are the FICO license fees for each application for which a third party has used the Blaze Advisor ® software as a result of Federal's breach of the Agreement. Federal has identified applications being used by third parties in Canada and the U.K. (Whether there are additional category three damages is the subject of further discovery.) Based on Federal's disclosures, FICO believes the applications used in Canada are Adapt-ABL and Evolution. ***The annual FICO license fee for those applications is approximately $378,000***. Based on Federal's disclosures, FICO believes the applications used in the U.K. are EZER and Commercial. ***The annual FICO license fee for those applications is approximately $594,000***.
>
>The quantification of FICO's claim for category two damages, and its claim for all profits derived from goods and services that used Blaze Advisor® software depend on discovery to be received from Federal.

(Datzov Decl. Ex. A at 6-8 (emphasis added).)

FICO does not dispute the relevance of the basis under which it is calculating its alleged lost license revenue. Instead, FICO objects that it cannot provide further information because such information is "uniquely within Federal's possession." (Datzov Decl. Ex. D at 2.) However, FICO fails to explain why it cannot provide further

- 11 -

information regarding the damages determinations it has already provided.  FICO's estimate for a $4,671,000 per year licensing fee is **more than 30 times** the annual value of the existing License between the parties.  Federal is entitled to know how FICO is calculating damages.

It is not premature to require disclosure of such information.  Indeed, Fed. R. Civ. P. 26(a)(1)(A)(iii) required FICO to provide in its initial disclosures "a computation of each category of damages claimed…[and] make available for inspection…the documents…on which each computation is based."  As such, this Court has required parties to disclose the basis of their damages computations, even without a specific interrogatory request.  *See, e.g.*, *Brodkorb v. Minnesota Senate*, No. 12-cv-1958, 2013 WL 12140176, at *4 (D. Minn. Aug. 23, 2013) ("Although the Court understands that discovery is continuing and that Plaintiff may retain an expert to calculate certain aspects of his damages, Plaintiff certainly has the ability to supply some additional information regarding his computation of damages at this time."); *see also Marvin Lumber & Cedar Co. v. Norton Co.*, 113 F.R.D. 588, 593 (D. Minn. 1986) ("While it is clear that plaintiffs in civil actions often are unable to finally calculate their damages until discovery is received from the defendant, they are under some obligation to answer such discovery requests well prior to the discovery deadline.").  Where a party has claimed a specific amount of damages, and "must have relied on some computation of damages to reach that amount[,]…[it] must provide that computation to Defendant."  *Brodkorb*, 2013 WL 12140176, at *4; *see also Stemrich v. Zabiyaka*, No. 1:12-cv-1409, 2013 WL 4080310, at *1-2 (M.D. Pa. Aug. 13, 2013) ("[S]imply reciting a dollar figure clearly is not enough….

[T]he plaintiff needs to provide the defendant with an initial estimate as to his claimed damages, and at least 'some analysis' of how the relevant facts lead to that dollar figure.").

Furthermore, FICO should be ordered to respond to each interrogatory separately. Although Interrogatory Nos. 7-9 call for an answer relating to damages for different claims, FICO's answers merely refer to its response to Interrogatory No. 6. (Datzov Decl. Ex. A at 8-9.) FICO also made the same objection for those interrogatories as it did for Interrogatory No. 6. (*See id.*)

The current answers to Interrogatory Nos. 7-9 do not sufficiently identify the damages FICO is seeking for each of its claims. Federal Rule of Civil Procedure 33(b)(3) provides that "[e]ach interrogatory must…be answered separately and fully." If FICO's answers to Interrogatory Nos. 7-9 are already completely provided in the response to Interrogatory No. 6, it would not be difficult for FICO to simply reiterate the specifically applicable response for each specific claim. Federal should not be required to guess which category of damages relates to which asserted claim.

## **CONCLUSION**

Federal has on multiple occasions attempted to obtain complete responses to the above discovery requests from FICO. FICO's refusal to provide this responsive information is improper, and the Court should order FICO to produce the above requested documents and answers to interrogatories within 30 days of the Court's order.

Respectfully submitted,

Dated: January 29, 2018

s/ Nikola L. Datzov
Lora M. Friedemann (#0259615)
lfriedemann@fredlaw.com
Nikola L. Datzov (#0392144)
ndatzov@fredlaw.com
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
(612) 492-7000 (tel.)
(612) 492-7077 (fax)

*Attorneys for Defendant*

63164560