## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation, | ) ) ) | Case No. 16-cv-1054 (WMW/DTS) |
| Plaintiff, | ) ) | |
| v. | ) ) | **Jury Trial Demanded** |
| FEDERAL INSURANCE COMPANY, an Indiana corporation, | ) ) ) | |
| Defendant. | ) ) | |

## <u>MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL</u>

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................ 1

II.     ARGUMENT ...................................................................................... 3

        A.      Discovery is limited to relevant subject matter that is proportional to
                the needs of the case; irrelevant and disproportionate discovery is
                not permitted by the Federal Rules of Civil Procedure. ............................... 3

        B.      FICO has answered Interrogatory Nos. 6-9 to the fullest extent
                possible prior to expert discovery on damages. ........................................... 5

                1.      FICO has fully responded to these Interrogatories. .......................... 5

                2.      FICO's damages calculation is based on documents already
                        produced and information already known to Federal. ...................... 8

        C.      Federal's Request Nos. 13 and 19 seeking other Blaze Advisor®
                software license agreements are overbroad, irrelevant and unduly
                burdensome. ................................................................................ 11

                1.      FICO has already complied with the plain meaning of
                        Request No. 13; Federal cannot re-write it now. ............................ 11

                2.      It would be unduly burdensome to comply with the Requests
                        as now construed by Federal; FICO has over ███ Blaze
                        Advisor® software license agreements. ........................................ 12

                3.      Third party license agreements are not relevant to determine
                        the parties' intent at the time of contracting. ................................ 13

                4.      Third party license agreements are not relevant to FICO's
                        damages claim for lost license fees. ............................................ 15

        D.      Federal's Request Nos. 16-18 directed to FICO's license revenues
                are irrelevant, overbroad, and disproportionate. ........................................ 17

                1.      Request No. 16 is overbroad, irrelevant, and disproportionate. ........ 17

                2.      Request No. 17 is overbroad and irrelevant. ................................. 19

                3.      Request No. 18 is overbroad and irrelevant. ................................. 20

4.      Federal's arguments are unavailing; the value of FICO's
        damages is not tied to other Blaze Advisor® software license
        agreements.......................................................................................... 21

III.    CONCLUSION ................................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amador v. U.S. Bank Nat'l Ass'n*,
   No. 16-00600, 2017 U.S. Dist. LEXIS 183459 (D. Minn. Nov. 6, 2017) .............. 4, 14

*Archer Daniels Midland Co. v. Aon Risk Servs., Inc.*,
   187 F.R.D. 578 (D. Minn. 1999) .................................................................................... 4

*Bombardier Rec. Prods. v. Arctic Cat, Inc.*,
   No. 12-cv-2706, 2014 U.S. Dist. LEXIS 184986 (D. Minn. Dec. 5,
   2014) ................................................................................................................................ 3

*Bridgeport Music, Inc. v. UMG Recordings, Inc.*,
   No. 05-cv-6430, 2007 U.S. Dist. LEXIS 91957 (S.D.N.Y. Dec. 17,
   2007) .............................................................................................................................. 15

*Cambria Co., LLC v. Pental Granite & Marble, Inc.*,
   No. 12-228, 2013 U.S. Dist. LEXIS 95427 (D. Minn. July 8, 2013) ......................... 12

*Document Sec. Sys. v. Coupons.com, Inc.*,
   55 F. Supp. 3d 485 (W.D.N.Y. 2014) ............................................................. 10, 16, 18

*Eclipse Grp., LLP v. Target Corp.*,
   No. 15-cv-1411, 2017 U.S. Dist. LEXIS 77574 (S.D. Cal. May 19,
   2017) ................................................................................................................................ 4

*Elkharwily v. Mayo Holding Co.*,
   No. 12-3062, 2014 U.S. Dist. LEXIS 53890 (D. Minn. Apr. 18, 2014) ................. 4, 14

*Gaylord v. United States*,
   777 F.3d 1363 (Fed. Cir. 2015) ............................................................................. 16, 18

*Hofer v. Mack Trucks, Inc.*,
   981 F.2d 377 (8th Cir. 1992) ......................................................................................... 3

*McGowan v. Gen. Dynamics Corp.*,
   794 F.2d 361 (8th Cir. 1986) ......................................................................................... 4

*Mooney v. AXA Advisors, L.L.C.*,
   19 F. Supp. 3d 486 (S.D.N.Y. 2014) ..................................................................... 13, 15

*Murray v. Geithner*,
 No. M8-85, 2010 U.S. Dist. LEXIS 33236 (S.D.N.Y. Mar. 25, 2010) ................. 4, 15

*Nat'l Union Fire Ins. Co. v. Donaldson Co.*,
 No. 10-4948, 2014 U.S. Dist. LEXIS 85621 (D. Minn. June 24, 2014)...................... 12

*Prokosch v. Catalina Lighting, Inc.*,
 193 F.R.D. 633 (D. Minn. 2000)............................................................................. 3, 4

*Raimondi v. Olenicoff*,
 No. SACV 12-2094, 2015 U.S. Dist. LEXIS 174961 (C.D. Cal. July 7,
 2015) ............................................................................................................................ 16

*Schering Corp. v. Home Ins. Co.*,
 712 F.2d 4 (2d Cir. 1983)........................................................................................... 14

*WWP, Inc. v. Wounded Warriors Family Support, Inc.*,
 628 F.3d 1032 (8th Cir. 2011) ....................................................................................... 4

## Statutes

17 U.S.C. § 504 ...................................................................................................................... 6

## Other Authorities

Federal Rule of Civil Procedure 1 ................................................................................... 4, 15

Federal Rule of Civil Procedure 26(b)(1)............................................................................ 3

iv

I.   **INTRODUCTION**

The Court should deny Federal Insurance Company's ("Federal") motion to compel. With regard to Interrogatory Nos. 6-9, Plaintiff Fair Isaac Corporation ("FICO") responded by describing each category of its claimed damages and identifying the amount of damages sought—the full extent of the information available to it absent additional documents from Federal. That is precisely the information requested by the interrogatories, and FICO fully responded. Instead of posing new interrogatories or taking a fact deposition asking FICO to disclose the math used to arrive at the damages quantification, Federal asks the Court to do that job. No further supplementation of these interrogatory answers is necessary, and the Court should deny Federal's motion to compel.

Federal also asks the Court to require FICO to produce all documents responsive to Document Request Nos. 13 and 15-19. As an initial matter, FICO has already fully responded to Document Request No. 13. That request sought "[a]ll agreements related to the Works you contend Federal infringed." FICO already gave Federal the contracts between FICO and Federal.

In each other instance, Federal's requests are irrelevant and so overbroad that any theoretical benefit from receiving the requested discovery will be heavily outweighed by the burden on FICO. For example, Federal's Document Request Nos. 13 and 19 seek every Blaze Advisor® software license agreement FICO has ever entered into—more than ███████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████. Setting aside that FICO already fully answered Request No. 13, the work to review and produce these agreements far outweighs any probative value.

Federal contends these agreements are relevant to interpretation of the license at issue here, namely Paragraph 10.8 of the Software License and Maintenance Agreement ("Agreement"). But other third-party license agreements with a provision similar to Paragraph 10.8 have no bearing on the meaning of that provision to the parties here. Any parol evidence directed to the meaning of Paragraph 10.8 can only be derived from the negotiations between FICO and Federal. Indeed, to suggest that other licenses with similar provisions could be relevant opens to discovery the negotiations of more than 1,250 other licenses.

Federal also argues that these agreements are relevant to FICO's damages claim.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

███████ Any potential probative value in reviewing these license agreements and related documents will be disproportionately outweighed by the burden.

Similarly, Federal's Request for Production Nos. 16-18 seek *all* licensing revenues received for the Blaze Advisor® software. These figures have no bearing on the claims or

defenses of either party. Federal's motion turns a blind eye to FICO's damages claim for license fees due from the breach. Charitably it reflects a fundamental misunderstanding of how FICO prices Blaze Advisor® software. Federal's motion to compel documents in response to Request Nos. 16-18 should be denied.[1]

## II.   ARGUMENT

### A.   <u>Discovery is limited to relevant subject matter that is proportional to the needs of the case; irrelevant and disproportionate discovery is not permitted by the Federal Rules of Civil Procedure.</u>

Under Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The standard of discovery-related relevance, while necessarily broad in its scope, is not without bounds. *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 635 (D. Minn. 2000). Though broader in the context of discovery than the context of admissibility, "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). A party "bears no legal obligation to produce non-responsive, irrelevant, outside-of-the-scope-of-Rule-26" discovery. *Bombardier Rec. Prods. v. Arctic Cat, Inc.*, No. 12-cv-2706, 2014 U.S. Dist. LEXIS 184986, at *41-42 (D. Minn. Dec. 5, 2014). Moreover,

---

[1] FICO has agreed to produce un-redacted versions of the documents attached as Exhibit E and Exhibit F to the Declaration of Nikola L. Datzov. (Dkt. Nos. 53, 54.) FICO will be making this production to Federal in advance of the hearing on the present Motion.

3

courts are "reluctant to allow any party to roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." *Prokosch*, 193 F.R.D. at 635 (internal quotation omitted).

Even if requests are deemed relevant, "discovery may be limited when the benefits to be obtained are outweighed by the burdens and expenses involved." *Archer Daniels Midland Co. v. Aon Risk Servs., Inc.*, 187 F.R.D. 578, 589 (D. Minn. 1999); *see also Amador v. U.S. Bank Nat'l Ass'n*, No. 16-00600, 2017 U.S. Dist. LEXIS 183459, at *17 (D. Minn. Nov. 6, 2017) (Allowing a party to "search . . . without any bounds or limitations is overly burdensome and disproportionate to the needs of the case."); *Elkharwily v. Mayo Holding Co.*, No. 12-3062, 2014 U.S. Dist. LEXIS 53890, at *7-8 (D. Minn. Apr. 18, 2014) (Where discovery "stray[s] too far from the claims alleged and lack[s] proper framing," the discovery becomes overbroad and burdensome.).

Where a party's discovery requests exceed the bounds of discovery, courts are not required to rewrite the requests. *Murray v. Geithner*, No. M8-85, 2010 U.S. Dist. LEXIS 33236, at *6 (S.D.N.Y. Mar. 25, 2010) ("Parties seeking discovery have a responsibility to frame their discovery requests with [Fed. R. Civ. P. 1] in mind. This plaintiff did not do so. It is not the Court's task to do his job for him by redrafting his manifestly overbroad discovery requests."). Indeed, failure to narrow the scope of discovery requests is grounds for outright denial of a motion to compel. *WWP, Inc. v. Wounded Warriors Family Support, Inc*., 628 F.3d 1032, 1039 (8th Cir. 2011) (citing *McGowan v. Gen. Dynamics Corp*., 794 F.2d 361, 363-64 (8th Cir. 1986)); *see also Eclipse Grp., LLP v.*

4

*Target Corp.*, No. 15-cv-1411, 2017 U.S. Dist. LEXIS 77574, at *15 (S.D. Cal. May 19, 2017) (denying motion to compel where party "failed to narrow his overbroad requests").

B.   **FICO has answered Interrogatory Nos. 6-9 to the fullest extent possible prior to expert discovery on damages.**

Federal asks the Court to order FICO to provide more information in response to Interrogatory Nos. 6-9. The alleged reason is because Federal is "unaware" of how FICO has calculated its claimed breach of contract damages. But FICO's supplemental answers to Interrogatory Nos. 6-9 fully describe and quantify the damages FICO seeks. A review of the documents already produced in this case and information known to Federal shows Federal should understand how FICO calculated its damages.

1.   **FICO has fully responded to these Interrogatories.**

Interrogatory No. 6 sought the following:

**Interrogatory No. 6:** Describe and quantify each element of damages being claimed by FICO against Federal, including the basis for each element of damages being claimed.

(Dkt. 52-1, Ex. A.)

As stated in FICO's answer, FICO seeks to recover the lost license fees based on Federal's unauthorized use of the Blaze Advisor® software:

**Response:** Without waiving the objection, and based on the information currently within its possession, FICO states that its damages claim can be grouped into the following categories: (1) the unlicensed use of Blaze Advisor by Chubb & Son, a division of Federal, since March 31, 2016; (2) the unlicensed use by Federal (meaning by any division other than Chubb & Son) since the date that unlicensed use began; (3) the unlicensed use by entities other than Federal (whether or not subsidiaries of Federal) to whom Federal distributed the Works from the date of that unlicensed use. Damages under the first category are (a) the commercially reasonable fees FICO would have received had the use since March 31, 2016, been licensed

5

and (b) all profits derived from goods and services that used Blaze
Advisor® from March 31, 2016. The second category damages are of the
same kind – lost license fees and disgorgement of profits. The time period
will be different, commencing when the unlicensed use began. Damages
under the third category are the lost license fees FICO would have received
had the use by each third party been licensed. In lieu of its actual damages
and disgorgement of profits, FICO may seek statutory damages under 17
U.S.C. § 504 at its election. FICO will supplement its answer to this
interrogatory, if appropriate, once it has received discovery from Federal.

(*Id.*)

FICO's supplemental answer explains that the damages claim is an application-

based fee for each of the Federal applications using the Blaze Advisor® software; that it

is an annual fee; and that maintenance fees are included:

**Supplemental Response:** Without waiving the objection, and based on
Federal's supplemental response to FICO's Interrogatory No. 4, the
following are the approximate lost license fees related to the first and third
categories of damages described above. ***Lost license fees include the fee
for annual maintenance.***

This supplemental response is without prejudice to further supplementation
based on discovery exchanged between the parties, including information
received from Federal in discovery. For example, the volume of Federal's
transactions/usage related to each application is relevant to pricing and not
currently known by FICO. This supplemental response is based on
information currently known.

The category one damages are the ***FICO license fees for each application
for which Chubb & Son, a division of Federal, has used the Blaze
Advisor® software since March 31, 2016***, as well as all profits derived
from goods and services that used Blaze Advisor® from that date. The
FICO lost license fee for the ***applications identified in the supplemental
response to Interrogatory No. 4*** (that FICO understands to be used by
Chubb & Son, a division of Federal) is approximately $4,671,000 per year.
FICO claims damages for ***that annual fee*** from March 31, 2016, to the date
an injunction is issued against Federal's continued unlicensed use of the
software.

6

The category three damages are the ***FICO license fees for each application for which a third party has used the Blaze Advisor ® software as a result of Federal's breach of the Agreement***. Federal has identified applications being used by third parties in Canada and the U.K. (Whether there are additional category three damages is the subject of further discovery.) Based on Federal's disclosures, ***FICO believes the applications used in Canada are Adapt-ABL and Evolution***. The annual FICO license fee for those applications is approximately $378,000. Based on Federal's disclosures, ***FICO believes the applications used in the U.K. are EZER and Commercial***. The annual FICO license fee for those applications is approximately $594,000.

The quantification of FICO's claim for category two damages, and its claim for all profits derived from goods and services that used Blaze Advisor® software depend on discovery to be received from Federal.

(*Id.* (emphasis added).)

Despite these extensive responses, prepared prior to expert discovery on damages, Federal complains that FICO "refused to explain how it calculated the claimed sums." (Dkt. 51 at 10.) But Interrogatory No. 6 does not seek such a tutorial. FICO has fully responded to this interrogatory.

FICO's answers to Interrogatory Nos. 7-9 are cumulative of Interrogatory No. 6, which FICO has answered to the best of its ability prior to expert discovery on damages. These interrogatories are:

**Interrogatory No. 7:** Describe and quantify the damages you are seeking based on Federal's continued use of the Blaze Advisor® software following the merger between The Chubb Corporation and ACE Limited.

**Interrogatory No. 8:** Describe and quantify the damages you are seeking based on Federal's alleged disclosure of the Blaze Advisor software to third parties, as alleged in Paragraph 28 of the Complaint.

**Interrogatory No. 9:** Describe and quantify the damages you are seeking based on Federal's alleged acts of copyright infringement, as alleged in Paragraph 44 of the Complaint.

(Dkt. 52-1, Ex. A.)

Interrogatory No. 7 seeks a quantification of FICO's "category one" damages, which FICO already quantified in response to Interrogatory No. 6. Likewise, Interrogatory No. 8 seeks a quantification of FICO's "category three" damages, which have already been quantified in response to Interrogatory No. 6. FICO's supplemental answers to Interrogatory Nos. 7 and 8 incorporated its supplemental answer to Interrogatory No. 6 by reference, which provides the information sought. And as explained below, FICO is unable to quantify its "category two" damages, as sought by Interrogatory No. 9, because such quantification depends on information uniquely within Federal's possession, and Federal has refused to produce this information.

### 2.    FICO's damages calculation is based on documents already produced and information already known to Federal.

To avoid any doubt about the fullness of FICO's response, FICO provides the Court with the pricing tutorial requested by Federal. In the marketplace, FICO prices its licenses for the Blaze Advisor® software in several different ways. (Decl. of William Waid ("Waid Decl.") ¶ 5.) Application-based pricing and enterprise-based pricing are two of those pricing methods. (*Id.*)

Application-based pricing for a Blaze Advisor® software license is calculated

███████████████████████████████████████████████████████

already produced to Federal. (Waid Decl. ¶ 6 and Ex. A.) ███████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████

    ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████ The application-based license fees detailed in the next paragraph cannot be

correlated to an enterprise license fee. (*Id*.)

    Here, FICO based its "category one" damages for its lost license fees ($4,671,000)

on its standard per-application pricing, not enterprise-based pricing. To calculate the

$4,671,000 lost application license fee, FICO started with the list of applications

disclosed in Federal's supplemental answer to FICO's Interrogatory No. 4. (*Id*. at ¶ 9.)

FICO then determined the standard annual application-based fee for each application

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████ and calculated a

total amount of $4,671,000 per year, as follows[2]:

---

[2] This calculation is subject to change based on further information regarding the
applications in use by Federal and the extent of Federal's use of each application.



This pricing is derived from FICO's standard pricing matrix, which has been in Federal's possession since August 2, 2017. (*Id*. at Ex. A.) FICO's damages claim ***is not*** calculated as a reasonable royalty premised on a hypothetical negotiation of willing parties. Federal is in breach; its use is not consensual. And, reasonable royalty damages are not applicable to breach of contract claims under New York law, which governs the Agreement at issue in this case. *See Document Sec. Sys. v. Coupons.com, Inc.*, 55 F. Supp. 3d 485, 496 (W.D.N.Y. 2014) (collecting cases and noting: "New York law does not permit the recovery of such [reasonable royalty] damages for a breach of contract, where the agreement itself did not provide for royalties."). FICO ***has not*** considered a hypothetical negotiation or other license agreements for the Blaze Advisor® software when calculating its contract damages. None are relevant.

FICO performed a similar calculation to determine its "category three" damages for "the FICO license fees for each application for which a third party has used the Blaze

Advisor® software." Federal has disclosed that the Adapt-ABL and Evolution applications are being used in Canada and the EZER and Commercial applications are being used in the U.K. (Waid Decl. ¶ 10.) ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ The standard fee for maintenance and support services was then added to reach the total of $378,000 in lost license fees for the use in Canada and $594,000 for the use in the U.K.[3] (*Id.*)

FICO was unable to quantify its "category two" damages, including its claim for all profits derived from goods and services that used the Blaze Advisor® software, because this quantification depends on Federal's revenues and profits, which Federal has refused to produce and for which FICO has moved to compel. Federal cannot complain that FICO has not quantified this element of damages when it is based solely on information uniquely within Federal's possession.

C.   **Federal's Request Nos. 13 and 19 seeking other Blaze Advisor® software license agreements are overbroad, irrelevant and unduly burdensome.**

1.   **FICO has already complied with the plain meaning of Request No. 13; Federal cannot re-write it now.**

FICO has already complied with the plain meaning of Request No. 13, which seeks the license agreements that are the subject of the present lawsuit:

**Request for Production No. 13:** All agreements related to the Works you contend Federal infringed.

---

[3] These calculations are subject to change based on further information regarding the applications in use in Canada and the U.K. and the extent of use of each application.

11

(Dkt. 52-1, Ex. B.)

FICO complied with the plain meaning of this Request by producing the

Agreement that forms the basis of FICO's contention of infringement. Federal now seeks

to expand this Request, asking for discovery not found within its plain meaning. It seeks

every Blaze Advisor® software agreement FICO has ever entered with third parties.

(Dkt. 51 at 8.) Re-writing the request is not allowed. *See Nat'l Union Fire Ins. Co. v.*

*Donaldson Co.*, No. 10-4948, 2014 U.S. Dist. LEXIS 85621, at *10 n.3 (D. Minn. June

24, 2014) (interpreting requests for production by the language of the request, not as

modified in an accompanying memorandum); *Cambria Co., LLC v. Pental Granite &*

*Marble, Inc.*, No. 12-228, 2013 U.S. Dist. LEXIS 95427, at *8 (D. Minn. July 8, 2013)

(denying motion to compel response to interrogatory where party "appears to be

attempting to extend the language of its request"). Federal's attempt to re-write its

Request at this stage should be rejected.

      **2.**     **It would be unduly burdensome to comply with the Requests as now construed by Federal; FICO has over ▇▇▇ Blaze Advisor® software license agreements.**

Federal now says Request No. 13 asks for every Blaze Advisor® software license

with any third party. Request No. 19 is similarly overbroad and seeks all Blaze Advisor®

software license agreements without limitation:

> **Request for Production No. 19:** All licensing agreements for the Works from 2006 to present.

(Dkt. 52-1, Ex. B.)

It would be unduly burdensome for FICO to comply with these Requests. There

are approximately ███ Blaze Advisor® software license agreements between FICO and

its current and past licensees. (Waid Decl. ¶ 4.) Many of the ████████████████



Dissecting the licensing agreements

from these complex documents would be a significant burden. Doing this work would

disproportionately drive up the cost of discovery without a corresponding benefit.

> ### 3. Third party license agreements are not relevant to determine the parties' intent at the time of contracting.

Federal's contention that other license agreements for the Blaze Advisor®

software are relevant as parol evidence is wrong under the facts and law. (*See* Dkt. 51 at

8.) Parol evidence is only relevant to discern the intention of the contracting parties.

Here, that is the intention of FICO and Chubb & Son, a division of Federal at the time of

contracting. *See Mooney v. AXA Advisors, L.L.C.*, 19 F. Supp. 3d 486, 506 (S.D.N.Y.

2014) (parol evidence "places the court in the position of the parties when they made the

contract" and "enables it to appreciate the force of the words they used in reducing it to writing").

Federal argues that other agreements can help it understand the meaning of Paragraph 10.8 in this case. However, the meaning of Paragraph 10.8 in this case depends only upon the intent *of the parties in this case* at the time of negotiation of the Agreement. Since there is *no evidence* that the parties negotiated Paragraph 10.8, similar or identical provisions in other Blaze Advisor® software license agreements shed no light on the parties' mutual understanding of Paragraph 10.8 when the Agreement was made in this case.

Going down this road opens up the door to a vast amount of collateral, irrelevant subject matter. There are approximately ███ other license agreements for the Blaze Advisor® software. Discovery into ███ tangential matters between FICO and third parties is unreasonable and wholly disproportionate, especially since Federal did not limit Request Nos. 13 and 19 to agreements containing provisions like Paragraph 10.8. *See Amador v. U.S. Bank Nat'l Ass'n*, No. 16-00600, 2017 U.S. Dist. LEXIS 183459, at *17 (D. Minn. Nov. 6, 2017) (allowing a party to "search . . . without any bounds or limitations is overly burdensome and disproportionate to the needs of the case."); *Elkharwily v. Mayo Holding Co.*, No. 12-3062, 2014 U.S. Dist. LEXIS 53890, at *7-8 (D. Minn. Apr. 18, 2014) (where discovery "stray[s] too far from the claims alleged and lack[s] proper framing," the discovery becomes overbroad and burdensome).

Finally, parol evidence is only probative of the parties' intent if it is contemporaneous to the contract in question. *See Schering Corp. v. Home Ins. Co.*, 712

F.2d 4, 9 (2d Cir. 1983) ("[W]here contract language is susceptible of at least two fairly reasonable meanings, the parties have a right to present extrinsic evidence ***of their intent at the time of contracting***.") (emphasis added); *Mooney*, 19 F. Supp. 3d at 506 (same). Federal's case, *Bridgeport Music*, confirms that other agreements are only relevant if they were "negotiated around the same time" and "contained the [same term]" as the contract at issue, a standard that Federal has not even attempted to meet. *See Bridgeport Music, Inc. v. UMG Recordings, Inc.*, No. 05-cv-6430, 2007 U.S. Dist. LEXIS 91957, at *8 (S.D.N.Y. Dec. 17, 2007).

Federal failed to limit Request No. 19 (and its re-writing of Request No. 13) to agreements entered contemporaneously with the Agreement at issue in this lawsuit. The Court should not re-write Federal's deficient requests. *See Murray*, 2010 U.S. Dist. LEXIS 33236, at *6 ("Parties seeking discovery have a responsibility to frame discovery requests with [Fed. R. Civ. P. 1] in mind. This plaintiff did not do so. It is not the Court's task to do his job for him by redrafting his manifestly overbroad discovery requests."). Federal's motion to compel should be denied.

### 4. Third party license agreements are not relevant to FICO's damages claim for lost license fees.

Federal further asserts that all agreements with third parties are relevant to FICO's claimed damages. (*See* Dkt. 51 at 5.) This argument fails. As explained ███████

██████████████████████████████████████████████████████

██████████████████████████████ FICO did not rely on other license agreements in performing this calculation. FICO is not seeking reasonable royalty damages that would

necessitate a hypothetical negotiation, because such damages are not applicable to breach

of contract claims under New York law. *See Document Sec. Sys.*, 55 F. Supp. 3d at 496.

Fees individually negotiated between willing parties have no relevance to FICO's license

fee damages claim for breach.

Even if they were relevant, these Requests are vastly overbroad. They are not

limited to ***comparable*** license agreements governing comparable uses of the Blaze

Advisor® software. Federal's own case law confirms that only comparable license

agreements could be relevant. For example, the Federal Circuit in *Gaylord* determined

that evidence of past agreements is only relevant if the agreements are comparable: "the

use of past licenses as evidence ***must always take account of economically relevant***

***differences between the circumstances of those licenses and the circumstances of the***

***matter in litigation***." *Gaylord v. United States*, 777 F.3d 1363, 1368 (Fed. Cir. 2015)

(emphasis added); *see also Raimondi v. Olenicoff*, No. SACV 12-2094, 2015 U.S. Dist.

LEXIS 174961, at *6 (C.D. Cal. July 7, 2015) ("Typically, a license price is established

through objective evidence of ***benchmark transactions***, such as licenses previously

negotiated ***for comparable use of the infringed work*** . . . .") (emphasis added). Federal's

requests ignore these limitations.

Here, no such third party license agreements for Blaze Advisor® software can be

comparable. FICO licenses the Blaze Advisor® software to a range of licensees from

start-up companies to Fortune 500 companies (Waid Decl. ¶ 3), and these other Blaze

Advisor® software license agreements are not analogous to the Agreement at issue in the

present case. ███████████████████████████████████████

16



(*Id*. at ¶ 11.) Therefore, the licensing revenues received from other

such agreements have no bearing on FICO's damages in this case. The Court should deny

Federal's motion to compel.

D.   **Federal's Request Nos. 16-18 directed to FICO's license revenues are irrelevant, overbroad, and disproportionate.**

Federal's Request Nos. 16-18, directed to FICO's licensing revenues obtained

from the Blaze Advisor® software, are overbroad, disproportionate, and seek irrelevant

information.

1.   **Request No. 16 is overbroad, irrelevant, and disproportionate.**

Request No. 16 seeks the revenues FICO has generated from licenses for the Blaze

Advisor® software:

> **Request for Production No. 16:** All documents that evidence, refer or relate to licensing revenues you have received for the Works from 2006 to the present.

(Dkt. 52-1, Ex. B)

This Request is premised on a false assumption—that revenues received from all

negotiated licenses are comparable—and is therefore overbroad and irrelevant. FICO's

damages claim for breach of contract is not based on a reasonable royalty resulting from

a hypothetical negotiation, which is unavailable under New York law. *See Document Sec. Sys.*, 55 F. Supp. 3d at 496. And, licensing revenue untethered from the scope of use is meaningless. As shown above, no negotiated consensual agreements can be comparable to the damages sought for breach of contract.

This Request is also overbroad. Federal makes no attempt to limit this request to licensing revenues Federal has received from comparable uses of the Blaze Advisor® software. FICO's licenses include, among others, application-based licenses and enterprise licenses. (Waid Decl. ¶ 5.) Revenues obtained from one type of license cannot be analogized to revenues obtained from licenses priced on a different basis. ██████

████████████████████████████████████████████████

██████████████████████

The information sought by this Request is also irrelevant. Bare sums of money, unconnected from a license agreement covering similar uses of the Blaze Advisor® software, have no probative value. A bare sum of money received under a particular license agreement is wholly irrelevant. The bare sums sought by this Requests *cannot* "take account of the economically relevant differences" between the revenues sought and the Agreement in the present case. *See Gaylord*, 777 F.3d at 1368. Moreover, there can be no comparable agreements here because, as described above, ██████████

████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████

18

Finally, it would also be unduly burdensome for FICO to comply with this Request, which seeks "[a]ll documents that evidence, refer or relate to licensing revenues you have received for the Works from 2006 to the present." Every invoice sent to every licensee of the Blaze Advisor® software since 2006, every associated email, and every license payment received in response is responsive to this Request as written, which could number in the hundreds of thousands of documents.

### 2.      Request No. 17 is overbroad and irrelevant.

Request No. 17 is similarly overbroad and irrelevant. That Request seeks the amount of the license fee for each perpetual license to the Blaze Advisor® software:

> **Request for Production No. 17:** Documents sufficient to show the amount of the licensing fee for each perpetual license to the Works from 2006 to the present.

(Dkt. 52-1, Ex. B)

Perpetual license information is irrelevant. FICO is not asking the Court to award FICO fees for a ***perpetual*** license in this case—FICO wants a permanent injunction, not a perpetual license situation. As a result, FICO's breach of contract damages claim is based on an ***annual*** application license (see response to Interrogatory No. 6). Perpetual license fees have no relevance to this case.

This Request is also overbroad because it is not limited to comparable licensing situations. This Request shows a fundamental misunderstanding of FICO's pricing. FICO does not have a single, standard perpetual license. ██████████████████

████████████████████████████████████████████████████

██████████ Federal has not shown how the fees received from ***all*** such perpetual licenses

19

could be comparable to the Agreement at issue in this case. The fees received from other such perpetual licenses are not comparable, because such agreements are negotiated individually based on many factors.

### 3. Request No. 18 is overbroad and irrelevant.

Request No. 18 is also overbroad and irrelevant. That Request seeks an average amount per seat that FICO has received in licensing revenues for the Blaze Advisor® software:

> **Request for Production No. 18:** Documents sufficient to show the average amount per seat you have received in licensing revenues for the Works in each year from 2006 to the present.

(Dkt. 52-1, Ex. B)

As with Request Nos. 16 and 17, Request No. 18 is overbroad because it is not limited to revenues received from comparable license agreements.  The average amount of license revenue received per-seat is wholly irrelevant to that claim.

This Request also shows a fundamental misunderstanding of FICO's pricing.

It is meaningless to calculate an "average amount per seat" when many of the agreements do not even contain seat limitations. An average amount per-seat,

calculated from licenses spanning the entire spectrum of FICO's customers, is not comparable to the license negotiated individually between FICO and Federal.[4]

> ### 4. Federal's arguments are unavailing; the value of FICO's damages is not tied to other Blaze Advisor® software license agreements.

Federal's arguments to support Request Nos. 16-18 are unavailing. It first asserts that this discovery is relevant because FICO "has placed the value of a license directly in issue." (Dkt. 51 at 4.) This is not the case. FICO has placed the value of its Blaze Advisor® software as used by Federal in fifteen identified Federal business applications at issue, and it has calculated that value using its standard pricing model, as more fully described in Section II.B above. Other revenues received from other licenses of the Blaze Advisor® software that are necessarily for different applications are not comparable and are therefore irrelevant.

Federal further asserts that it "does not know to what extent FICO is relying on its own knowledge of similar licenses in reaching such a determination." (Dkt. 51 at 4.) To be clear, FICO is not relying on its knowledge of other agreements to calculate its lost license fees. FICO's breach of contract damages are not based on a hypothetically negotiated license agreement or in comparison to any negotiated agreement with third parties. FICO has produced the documents underlying its calculation, including its standard application pricing matrix, and has further provided supplemental interrogatory

---

[4] Although not central to the argument here, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

answers on how it calculates its damages. FICO has further detailed its damages

calculation in Section II.B above. Federal's motion should be denied.

## III.   CONCLUSION

FICO has fully responded to Interrogatory Nos. 6-9, by describing the damages

sought, and quantifying those damages. Federal's Request for Production Nos. 13, 16-19

(seeking every Blaze Advisor® software license agreement FICO has ever entered and all

licensing revenues) are irrelevant, overbroad, and seek documents whose probative value

is vastly outweighed by the burden in producing those documents. The Court should deny

Federal's motion to compel.


Dated: February 5, 2018                MERCHANT & GOULD P.C.

                                       /s/ Heather Kliebenstein
                                       Allen Hinderaker, MN Bar # 45787
                                       Heather Kliebenstein, MN Bar # 337419
                                       Michael Erbele, MN Bar # 393635
                                       MERCHANT & GOULD P.C.
                                       3200 IDS Center
                                       80 South Eighth Street
                                       Minneapolis, MN 55402-2215
                                       Tel: (612) 332-5300
                                       Fax: (612) 332-9081
                                       ahinderaker@merchantgould.com
                                       hkliebenstein@merchantgould.com
                                       merbele@merchantgould.com


                                       *Attorneys for Plaintiff FICO*