UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION,<br><br>    Plaintiff,<br><br>  v.<br><br>FEDERAL INSURANCE COMPANY,<br>an Indiana corporation,<br><br>    Defendant. | Court File No.  16-cv-1054 (WMW/DTS)<br><br><br>**DEFENDANT'S OBJECTION TO ORDER GRANTING-IN-PART PLAINTIFF'S MOTION TO COMPEL** |

**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 72 and Local Rule 72.2, Federal Insurance Company ("Federal") respectfully objects to the portion of Magistrate Judge Schultz's order compelling production of Federal's revenues and profits.

Fair Isaac Corporation ("FICO") failed to make the legally required showing that would entitle it to discovery of Federal's revenues and profits. The Magistrate Judge correctly held that before FICO would be entitled to discovery of any of Federal's profits or revenues, FICO must demonstrate that the profits and revenues it seeks have a connection to the alleged infringement. The Magistrate Judge erred, however, in (1) requiring only a "connect[ion] in some fashion" rather than a causal connection; and (2) in finding that FICO made the required showing based merely on Federal's internal use of behind-the-scenes software. Because FICO failed to show the necessary causal connection, the Court should deny discovery into such speculative damages.

# BACKGROUND

## I. THE PARTIES AND THE LICENSE AT ISSUE

Federal is an insurance company that provides property and casualty insurance products and services. (*See* Dkt. No. 36 ¶ 11.) FICO designs and develops predictive analytics and decision management software. (*Id.* ¶ 8.) One of FICO's products is FICO® Blaze Advisor® ("Blaze Advisor"), a business rules management system for business applications. (*Id.* ¶ 9.)

In June 2006, the parties entered into a Software License and Maintenance Agreement (the "License") for the use of Blaze Advisor. (*Id.* ¶ 12) The final version of the License provided a perpetual, fully-paid, enterprise-wide license without a limit on the number of seats. (*See* Dkt. No. 1-2 at 12, 20.)

For nearly ten years, Federal used Blaze Advisor software under the License with the support and assistance of FICO. In January 2016, Federal's corporate parent underwent a corporate change. (*See* Dkt. No. 36 ¶ 14.) Based on this upstream change in the corporate family, FICO now demands that Federal pay it $4,671,000 per year—more than 30 times the annual value of the existing License—to use software it already purchased. (*See* Dkt. No. 52-1 at 8-9.) Under its copyright claims, FICO also seeks to disgorge all profits from divisions within Federal that used the licensed software. (*See* Dkt. No. 36 at 9; Dkt. No. 52-1 at 6-8.)

## II. THE MAGISTRATE JUDGE'S ORDER

FICO sought to compel information regarding revenues and profits from every line of business, division, or entity at Federal that used the Blaze Advisor software in any

way.  (*See* Dkt. No. 60 at 5.)  FICO argued that, at the discovery stage, it need not show any relationship between the alleged infringement and the revenues it sought.  (*See* Dkt. No. 60 at 17-19.)  FICO also argued that it had shown a "reasonable relationship" between the infringement and revenues because of its assumption that Federal's internal use of the behind-the-scenes software allowed Federal to operate its business more efficiently.  (*Id.* at 9-12, 15.)  FICO did not argue that Federal used, or referred to, Blaze Advisor in any advertising or solicitation of customers.  (*Id.*)

On February 14, the Magistrate Judge heard argument on the parties' cross-motions to compel discovery.  (*See* Dkt. No. 94.)  At the hearing, the Magistrate Judge issued an oral order compelling Federal to produce "profits and revenues associated with service and products sold by divisions that used the Blaze software" and identify "people who have knowledge of the profits and revenues associated with the divisions or entities that used Blaze software."  (Declaration of Nikola L. Datzov, dated February 28, 2018 ("Datzov Decl.") Ex. A at 62-63; *see also* Dkt. No. 96 at 2-3.)  The Magistrate Judge allowed this discovery because FICO "connect[ed] in some fashion the request with the allegation of infringement"—specifically the mere use of Blaze software.  (Datzov Decl. Ex. A at 62:20-21.)  In doing so, the Magistrate Judge departed from (1) the applicable "causal connection" standard in the Eighth Circuit; and (2) the cases holding that mere use of software is insufficient to demonstrate the required causal connection under the Copyright Act.

**ARGUMENT**

**I.   THE COPYRIGHT ACT ALLOWS RECOVERY ONLY OF PROFITS THAT ARE ATTRIBUTABLE TO THE ALLEGED INFRINGEMENT**

Under the Copyright Act, a copyright owner may recover "profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). The copyright owner must first "present proof [] of the infringer's gross revenue," and then the defendant may present evidence of "deductible expenses and the elements of profit attributable to factors other than the copyrighted work." *Id.* Importantly, though, "a district court must conduct a threshold inquiry into whether there is a legally sufficient causal link between the infringement and subsequent indirect profits." *Mackie v. Rieser*, 296 F.3d 909, 915 (9th Cir. 2002).

"It is not enough to show an infringement and then seek all of the defendant's profits, from whatever source." *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 799 (8th Cir. 2003). Rather, a copyright owner has the "burden of [showing] a causal connection" between the gross revenues it intends to rely on and the alleged infringement. *Id.* This is consistent with other circuits that have addressed the question. *See, e.g.*, *Bell v. Taylor*, 827 F.3d 699, 710 (7th Cir. 2016) ("[A] plaintiff must show a causal nexus between the infringement and the gross revenues."); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004) ("[T]he copyright claimant must first show a causal nexus between the infringement and the gross revenue...."); *Complex Sys., Inc. v. ABN Ambro Bank N.V.*, No. 08 Civ. 7497(KBF), 2013 WL 5970065, at *3

- 4 -

(S.D.N.Y. Nov. 8, 2013) ("A copyright owner bears the initial burden of demonstrating a causal nexus between the infringement and the appropriate gross revenues.").[1]

"When an infringer's profits are only remotely and speculatively attributable to infringement, courts will deny recovery to the copyright owner." *Polar Bear*, 384 F.3d at 711 (internal quotation marks omitted). While the burden of proof in showing the causal connection for direct and indirect profits is statutorily the same, courts have recognized that it is inherently more difficult to show the required connection when seeking indirect profits. *Andreas*, 336 F.3d at 796 ("We agree that in an indirect profits case the profits 'attributable' to the infringement are more difficult to quantify."); *Sullivan v. Flora, Inc.*, No. 15-cv-298-wmc, 2017 WL 1487624, at *1 (W.D. Wis. Apr. 25, 2017) ("[W]here the sales are *not* of the infringing products themselves, like a t-shirt, book cover or poster with the copyrighted work on it, but rather of infringing advertising, plaintiff's burden to prove a casual nexus is admittedly much more challenging…."); *Int'l Bus. Machs. Corp. v. BGC Partners, Inc.*, No. 10 Civ. 128(PAC), 2013 WL 1775437, at *3 (S.D.N.Y. Apr. 25, 2013) (explaining that such damages are "at-best highly speculative").

---

[1] Relying on Sixth Circuit law, FICO argued that the law requires only a "reasonable relationship"—not "a causal connection." (*See* Dkt. No. 60 at 15.) This is not the law in the Eighth Circuit. *See Andreas*, 336 F.3d at 797 ("[I]n order to meet his **burden of a causal connection**…." (emphasis added)). It is also contrary to other Circuits that have addressed the issue.

## II. THE MAGISTRATE JUDGE ERRED IN APPLYING A STANDARD OTHER THAN THE REQUIRED CAUSAL CONNECTION

In its motion to compel, FICO argued that at the discovery stage it need not show any causal connection between the alleged infringement and the revenues it seeks. (*See* Dkt. No. 60 at 17-19.) The Magistrate Judge correctly rejected the argument: "I agree with the defendant[] that [plaintiff] ha[s] to connect in some fashion the request with the allegation of infringement." (Datzov Decl. Ex. A at 62:19-21.) The Magistrate Judge erred, however, in analyzing only whether there existed a "connect[ion] in some fashion," rather than a "causal connection."

Under the governing Eighth Circuit standard, this Court has required a plaintiff to show a "causal connection" even at the discovery stage. *See, e.g.*, *Lucky Break Wishbone Corp. v. Sterling Jewelers Inc.*, No. CV 10-4394 (PAM/JJG), 2011 WL 13233570, at *6 (D. Minn. Aug. 23, 2011) (denying a motion to compel because plaintiff "ha[d] not shown the **_requisite causal connection_** between the use of the [copyrighted work]…and [the defendant]'s total gross sales during that period" (emphasis added)). Indeed, in *Lucky Break*, this Court rejected the argument that "*Andreas* is inapplicable at this stage of the litigation because evidence of a causal nexus is not required to establish a plaintiff's entitlement to discovery." *Id.* at *5. This holding is consistent with other courts to address the issue at the discovery stage. *See, e.g.*, *Bell*, 827 F.3d at 710 (citing cases requiring a "causal nexus" and affirming the denial of motion to compel profits information because the plaintiff "could not establish a nexus between the increased profits and the use of his photo," despite the assertion that "there [was] significant

- 6 -

evidence…[that] *would* establish a causal nexus" (emphasis added)); *Classical Silk v. Dolan Grp.*, No. CV 14-9224 AB, 2015 WL 12914322, at *2 (C.D. Cal. Nov. 4, 2015); *Gray v. Perry*, No. 2:15-cv-05642-CAS, 2017 WL 1240740, at *10 (C.D. Cal. Apr. 3, 2017). The Magistrate Judge distinguished the facts of those cases from the alleged infringement here, (*see* Datzov Decl. Ex. A at 61-62), but such factual distinctions do not undermine the *legal* holding in those cases that a party seeking discovery of revenues and profits must demonstrate a causal connection at the discovery stage.

Courts require a showing of a causal connection, even at the discovery stage because a party is not permitted discovery into damages that it ultimately cannot recover. *See, e.g.*, *Young v. Appalachian Power Co.*, No. 2:07-cv-00479, 2008 WL 11378834, at *1 (S.D. W. Va. May 15, 2008) ("Since royalties are not a recoverable element of damages under the facts of this case, the amount of income derived by the defendant from the transmission of electricity over the plaintiffs' land falls outside the scope of discovery prescribed by the Federal Rules."); *STC.UNM v. Intel Corp.*, No. 10-CV-01077-RB-WDS, 2011 WL 13115859, at *1-2 (D.N.M. May 31, 2011) (denying motion to compel lost profits information based on "accelerated market entry" theory, even though the theory was "a recognized theory of damages in patent litigation," because, "notwithstanding the broad scope of discovery," the court "cannot at this time envision a scenario where Plaintiff could recover lost royalties" under such a theory); *V.I. Water & Power Auth. v. Pub. Servs. Comm'n*, No. Civ. 512/2001, 2002 WL 31309607, at *4 (Terr. V.I. Sept. 24, 2002). In particular, under amended Rule 26, FICO must show that the

information it seeks is relevant (not that it could lead to potentially relevant information). *See* Fed. R. Civ. P. 26(b).

The three cases cited by FICO—which the Magistrate Judge did not rely on—allowing discovery of profits are not binding on this Court and are entirely distinguishable. (*See* Dkt. No. 60 at 20-21.) First, all three cases were decided prior to the December 2015 amendments and apply the former, broader scope of relevance. Second, to the extent they are inconsistent, they are contrary to this Court's earlier case law requiring a causal connection at the discovery stage and the more recent cases applying the current scope of discovery. Finally, the causal connection of profits to the infringing use in those cases is nothing like the tenuous nexus asserted here based on internal use of software. *See Zimnicki v. Gen. Foam Plastics Corp.*, No. 09 C 2132, 2011 WL 833601, at *1 (N.D. Ill. Mar. 3, 2011) (seeking profits based on sales of decorative deer copyrighted by plaintiff and other products marketed together); *Oceans of Images Photography, Inc. v. Foster & Smith, Inc.*, No. 8:11-cv-1160-T-30AEP, 2012 WL 5878092, at *1 (M.D. Fla. Nov. 21, 2012) (seeking profits based on use of plaintiff's photographs in marketing materials); *Burns v. Imagine Films Entm't, Inc.*, 164 F.R.D. 589, 590 (W.D.N.Y. 1996) (seeking profits based on sales from film and screenplay that "used significant portions of Plaintiffs' original screenplays").

Accordingly, the Magistrate Judge erred in applying a standard other than the "causal connection" standard under *Andreas* and *Lucky Break*. FICO is not entitled to discovery of Federal's revenues before it has shown that any such revenues have a causal connection to the alleged infringement.

### III. THE MERE USE OF INTERNAL SOFTWARE IS INSUFFICIENT TO ESTABLISH THE REQUIRED CAUSAL CONNECTION

The Magistrate Judge acknowledged the speculative nature of the damages FICO pursues: "Those profits are certainly hard to prove." (Datzov Decl. Ex. A at 60:24-25.) Nevertheless, he allowed discovery into "profits and revenues associated with service and products sold by divisions that used the Blaze software." (*Id.* at 62:23-24.) Importantly, the Magistrate Judge found that FICO did not submit any other "evidence which would reasonably allow them to say more about causation or reasonably related." (*Id.* at 63:2-3.) As such, the Magistrate Judge's finding of a sufficient connection between the revenues and alleged infringement was based on the mere internal use of software. Respectfully, this was contrary to applicable law.

Courts that have analyzed the issue have consistently held that the mere use of software in a business is insufficient to show the required causal connection. *See, e.g.*, *Complex Sys.*, 2013 WL 5970065, at *5 ("[M]ere connection or usage [of software] alone [is] insufficient—…a copyright owner must meet the statutory requirement of showing attribution.").

For example, in *IBM*, the alleged infringer used infringing software "for its back-office functions, such as administratively processing trades after their execution and generating various reports and invoices." 2013 WL 1775437, at *3. The parties acknowledged that the copyrighted software was "integrally important to the operations of [the defendant] and its ability to service its customers" and that "manually inputting massive volumes of trade data" without the software would be a big detriment. *Id.*

Nevertheless, the court found that there was not a sufficient "'causal link' between the infringement and the revenues." *Id.* at *4.  The defendant "did not market or sell the [copyrighted] software to its customers and there [was] no evidence that its customers cared what software system it used." *Id.*  The defendant's "customers [were] unaware of which software suite [was] used to process their trades and are agnostic as to [the defendant]'s internal operations." *Id.* at *3.  As such, the court reasoned that "[w]hile [the defendant] *may have profited* from using [the copyrighted software] indirectly in that *it enabled [the defendant] to operate more efficiently*, courts often deny recovery if the profits are only remotely or speculatively attributable to the infringement." *Id.* at *4 (emphasis added) (internal quotation marks omitted).

Similarly, in *Complex Systems*, the plaintiff sought profits based on the defendant's continued infringing use of software "used to facilitate certain banking transactions."  2013 WL 5970065, at *1.  The software—similar to Blaze—was a "component-based solution designed to provide end-to-end *automation* of the full range of trade finance processing, and to *streamline* trade processing and other trade finance activities." *Id.* at *5 (emphasis added).  Like FICO, the plaintiff argued that it was entitled to pursue "revenue stemming only from transactions processed through [the software]." *Id.* at *11.  The court rejected the argument on numerous grounds.  First, although "it [was] clear that [the software] [was] related to and support[ed] [the defendant]'s work in the trade finance sector—specifically by processing letters of credit and guarantees for [the defendant]—[the plaintiff] [] failed to identify the ways in which [the defendant]'s profits [were] *attributable specifically* to [the software]." *Id.* at *11

- 10 -

(emphasis added).  Second, even though one of defendant's documents referred to the software as "critical to increasing the company's trade revenues, [the plaintiff] [did] not provide[] evidence that [the software] was itself responsible for any revenue generated by [the defendant] years later."  *Id.* at *12.  Third, the defendant did "not promote its use of [the software] to its customers—[the defendant]'s customers [did] not care what specific software or technology [the defendant] use[d] to deliver a trade finance service or product to them"—and there existed a number of comparable software alternatives.  *Id.* at *11-12.  Moreover, there was no evidence of any instance "in which [the defendant]'s customer or prospective customer hired [the defendant] specifically because of [the defendant]'s utilization of [the software]."  *Id.* at *12.

In yet another software case, the court found that a plaintiff failed "to acknowledge the significant disconnect between the profits of a medical supply business and the internal use of a particular accounting software."  *Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, No. 11 CV 726(CBA)(RLM), 2012 WL 3306575, at *3 (E.D.N.Y. Aug. 13, 2012).  The court explained that the company's "gross profits were not generated through selling the [infringing] software or somehow referring to it in advertisements or promotions, but rather were the end result of [the defendant]'s business of selling medical supplies to customers who apparently had no knowledge of or interest in the brand of internal management software used at the company."  *Id.*  As in *IBM* and *Complex Systems*, "merely showing that the software was an important tool in the *internal* operations of the [the defendant]'s business [did] not establish a sufficient causal connection under the DMCA between [the defendant]'s gross profits and either the acts

of circumvention or the continued use of [the software]." *Id.* at *4 (emphasis added). Even in cases outside the software context, courts have found an insufficient nexus for profits generated based on internal use of a copyrighted work. *See, e.g.*, *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 271 F. Supp. 2d 737, 752 (D. Md. 2003) (finding insufficient nexus between defendant's rampant internal use of a copyrighted market analysis report and revenue generated from decisions made based on the report).[2]

Here, FICO made the same unavailing arguments rejected by the courts above. FICO argued that Federal's use of Blaze Advisor software allowed it to conduct its business more efficiently. (Dkt. No. 60 at 9-10.) FICO did not argue that Federal used or touted Blaze Advisor in any advertising or solicitation of customers or that any customer knew or cared how Federal managed business rules for its automated underwriting software. (*See id.*) In fact, FICO's evidence demonstrated that Federal could incorporate the business rules directly into its software rather than relying on Blaze Advisor. (*See* Dkt. No. 64 at 22 ("BUILD could mean our IT Developers code it or it could mean BUY e.g. Blaze rules engine….").)[3]

---

[2] As FICO acknowledged, the most common claim for profits under the Copyright Act exists when an infringer sells the copyrighted work (i.e., direct profits). (Dkt. No. 60 at 16.) Federal does not sell Blaze Advisor software, and FICO acknowledged that it is not seeking direct profits. (*See id.*) Thus, FICO's reliance on cases allowing recovery of direct profits is misplaced. Similarly, FICO's reliance on cases like *Andreas*, in which a copyrighted work was used, for example in advertising to sell other products (i.e., indirect profits), are likewise inapposite.

[3] FICO also argued that Federal's documents demonstrate a nexus between Blaze and profits. (*See* Dkt. No. 60 at 9-10.) Federal's reliance on such evidence was misplaced because the documents referred to automated underwriting software—which Blaze

The mere fact that Blaze Advisor might allow Federal to operate its business more efficiently does not show a sufficient causal nexus under the Copyright Act to allow disgorgement of profits.  Before FICO can seek discovery of revenues, "a *causal* link between [the software] and [the sought] revenues must be established: profits must be *attributable* to [the software], not just touch the application in some way."  *Complex Sys.*, 2013 WL 5970065, at *6.  Under FICO's theory of the law, Microsoft could seek the revenues of a law firm that used an unlicensed component of Word merely because Word helps the law firm manage its briefs and write briefs faster than relying on typewriters.  This is not the law.  *See, e.g.*, *Int'l Bus. Machs. Corp.*, 2013 WL 1775437, at *4 n.7 ("Defendant could not operate without its toilets either, but that does not mean that all of its profits are attributable to commodes." (internal quotation marks omitted)).  Because FICO has not shown a causal connection between the revenues it seeks and the alleged infringement, it is not entitled to discovery of Federal's revenues or profits.  *See, e.g.*, *Lucky Break*, 2011 WL 13233570, at *6; *Bell*, 827 F.3d at 711.

---

Advisor is not.  (*See* Dkt. No. 81 at 14.)  Thus, the Magistrate Judge correctly found that FICO did not submit any "evidence which would reasonably allow them to say more about causation or reasonably related" beyond mere use of Blaze.  (Datzov Decl. Ex. A at 63:2-3.)

## CONCLUSION

The Magistrate Judge correctly held that FICO must demonstrate a connection between the revenues and profits it seeks and the alleged infringement before it is entitled to discovery of such information. The Magistrate Judge erred, however, in finding that FICO made the required showing. Accordingly, Federal respectfully requests that the Court vacate the portion of the Magistrate Judge's order compelling production of documents and information relating to Federal's revenues and profits.

Respectfully submitted,

Dated:  February 28, 2018

s/ Nikola L. Datzov
Lora M. Friedemann (#0259615)
lfriedemann@fredlaw.com
Nikola L. Datzov (#0392144)
ndatzov@fredlaw.com
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
(612) 492-7000 (tel.)
(612) 492-7077 (fax)

*Attorneys for Defendant*

63382856