# EXHIBIT 3

## FILED UNDER SEAL

JOHN TAYLOR - 08/02/2018

```
 1                    UNITED STATES DISTRICT COURT

 2                    DISTRICT OF MINNESOTA

 3                    CASE NO. 16-CV-1054 (WMW/DTS)

 4      - - - - - - - - - - - - - - - - - - - - - - - -

 5      FAIR ISAAC CORPORATION, a Delaware corporation,

 6              Plaintiff,

 7          vs.

 8      FEDERAL INSURANCE COMPANY, an Indiana corporation,

 9              Defendant.

10      - - - - - - - - - - - - - - - - - - - - - - - -

11

12                    TRANSCRIPT of the stenographic notes of

13      the 30(b)(6) videotaped deposition of John Taylor in

14      the above-entitled matter, as taken by and before

15      LORRAINE B. ABATE, a Certified Court Reporter and

16      Notary Public of the State of New Jersey and

17      Registered Professional Reporter, held at the offices

18      of Regus, 55 Madison Avenue, Morristown, New Jersey,

19      on Thursday, August 2, 2018, commencing at 9:01 a.m.,

20      pursuant to Notice.

21

22

23      Job No. MP-184257

24      Pages: 1 - 116

25
```

Page 2

```
 1   A P P E A R A N C E S :
 2                   MERCHANT & GOULD, ESQS.
                     Attorneys for the Plaintiff
 3                     80 South Eighth Street
                       Minneapolis, Minnesota 55402-2215
 4
                 BY: ALLEN W. HINDERAKER, ESQ.
 5                   (612)371-5292
                     ahinderaker@merchantgould.com
 6
 7               FREDRIKSON & BYRON, P.A.
                 Attorneys for the Defendant
 8                 200 South Sixth Street, Suite 4000
                   Minneapolis, MN 55402-1425
 9
                 BY:   TERRENCE J. FLEMING, ESQ.
10                     (612)492-7496
                       tfleming@fredlaw.com
11
                 -and-
12
                 Chubb Insurance Company
13                 202A Halls Mill Road
                   Whitehouse, NJ  08889
14
                 BY:   KEVIN MURPHY, ESQ.
15                     (908) 903-3726
                       kevinmurphy@chubb.com
16
17   A L S O   P R E S E N T :
18               James Woodward
19               Marcelo Rivera, Videographer
20
21
22
23
24
25
```

Page 3

```
 1                   I N D E X
 2
 3
 4   WITNESS          EXAMINATION BY          PAGE
 5   John Taylor    Mr. Hinderaker            10
 6
 7
 8
 9               E X H I B I T S
10   EXHIBIT                              PAGE
11   17   2014 The Chubb Corporation 10-K    16
12   18   2014 The Chubb Corporation 10-K Excerpt  16
13   19   Amendments, Pacific Indemnity Company
14        and Chubb & Son, a Division of Federal
15        Insurance Company                  49
16   20   Agreement and Addendum Texas Pacific
17        Indemnity Company and Chubb & Son, a
18        Division of Federal Insurance Company  53
19   21   Agreement and Addendums Between Vigilant
20        Insurance Company and Chubb & Son, a
21        Division of Federal Insurance Company  54
22   22   Agreement and Addendums Between Chubb
23        Indemnity Insurance Company and Chubb
24        & Son, a Division of Federal Insurance
25        Company                            56
```

Page 4

```
 1               E X H I B I T S
 2   EXHIBIT                                  PAGE
 3   23   Agreement and Addendum Between
 4        Chubb National Insurance Company and
 5        Chubb & Son, a Division of Federal
 6        Insurance Company                   57
 7   24   Agreement and Addendums Between
 8        Executive Risk Specialty Insurance
 9        Company and Chubb & Son, a Division of
10        Federal Insurance Company           58
11   25   Agreement and Addendums Between
12        Executive Risk Indemnity, Inc. and
13        Chubb & Son, a Division of Federal
14        Insurance Company                   59
15   26   Agreement and Addendum Between Great
16        Northern Insurance Company and Chubb
17        & Son, a Division of Federal Insurance
18        Company                             60
19   27   Agreement and Addendum Between Chubb
20        Insurance Company of New Jersey and
21        Chubb & Son, a Division of Federal
22        Insurance Company                   61
23
24
25
```

Page 5

```
 1               E X H I B I T S
 2   EXHIBIT                                  PAGE
 3   28   Service Agreement Between Chubb &
 4        Son, Inc. of Illinois and Federal
 5        Insurance Company                   62
 6   29   Service Agreement and Addendum Between
 7        Chubb Lloyd's Insurance Company of
 8        Texas and Federal Insurance Company  66
 9   30   Services Agreement and Addendums
10        Between Federal Insurance Company
11        and Chubb Insurance Company of Canada  67
12   31   Service Agreement and Amendments Between
13        Chubb Insurance Company of Australia
14        Limited and Chubb & Son, a Division
15        Of Federal                          69
16   32   Service Agreement and Amendment
17        Between Federal Insurance Company and
18        ACE American Insurance Company      70
19   33   Federal Insurance Company
20        Organizational Chart                78
21   34   2013 Chubb Corporation Year End
22        Statement                           79
23   35   2014 Chubb Corporation Year End
24        Statement                           80
25   36   2016 Chubb Limited 10-K             81
```

Page 6

```
1           E X H I B I T S
2   EXHIBIT                                    PAGE
3   37    2016 Chubb Limited 10-K Excerpt       81
4   38    Multi-Page Document                   83
5   39    2017 Chubb Limited 10-K               87
6   40    2017 Chubb Limited 10-K Excerpt       88
7   41    2015 and 2016 Federal Insurance Company
8         and its U.S. Insurance Subsidiaries
9         Audited Consolidated Financial
10        Statements                        89, 111
11  42    2016 and 2017 Federal Insurance Company
12        Combined Financial Statements     99, 111
13  43    2017 Federal Insurance Company
14        Annual Statement                     102
15  44    2016 Pacific Indemnity Company
16        Annual Statement                     105
17  45    2016 and 2017 and Q1 2018 Chubb
18        Insurance Company of Canada
19        Consolidated Assets Documentation    107
20
21
22
23
24
25
```

Page 7

```
1           MR. HINDERAKER: I just want to note for
2   the record that last night, Federal served about 8:30
3   p.m. last night, central time, Federal served what
4   the e-mail said was a supplemental production of
5   documents.  I understand from counsel that it
6   includes -- I don't know if it's limited to, but it
7   includes U.K. financial information.
8           As a consequence, I'm going to leave the
9   deposition open at the end of the day.  Obviously I
10  haven't had a chance to look at the documents, so the
11  significance of this deposition is unknown, actually.
12  Although, I mean, we'll be talking about the Canadian
13  financial records that were produced and I assume I
14  would have been talking about U.K. as well.
15          I have no more interest in coming back
16  to Morristown and having a continuation of the
17  deposition than anybody else does, but -- so
18  consequently, perhaps the parties can find another
19  way to address the issue.  But until I have a chance
20  to look at that, until we have a chance to see what
21  other ways there are to address the issue, I'm just
22  noting that I won't be closing out my examination
23  today.
24          MR. FLEMING: Okay.  If I can respond
25  real briefly.
```

Page 8

```
1           MR. HINDERAKER: Sure.
2           MR. FLEMING: We have been diligently
3   attempting to produce the documents that had been
4   requested.  In fact, the absence of the U.K.
5   documents were noted in your partner, Heather
6   Kliebenstein's, e-mail, of yesterday.
7           MR. HINDERAKER: Sure.
8           MR. FLEMING: And I knew we had tracked
9   down the documents which had been requested, so I
10  instructed our people to get it to you as quickly as
11  possible, but I understand what you're saying.  We'll
12  attempt to accommodate you.  I don't think there will
13  be any reason to have to come out here again to speak
14  with Mr. Taylor about that, but we can address that
15  at a later time.
16          MR. HINDERAKER: Sure.  At least I know
17  what we are talking about in more detail.  Very good.
18  Let's start the deposition.
19          THE VIDEOGRAPHER: This is the digitized
20  video deposition of Mr. John Taylor in the matter of
21  Fair Isaac Corp., a Delaware corporation versus
22  Federal Insurance Company, an Indiana corporation.
23          This deposition is being held at 55
24  Madison Avenue, suite 400, Morristown, New Jersey on
25  August 2nd, 2018 at approximately 9:03 a.m.
```

Page 9

```
1           My name is Marcelo Rivera from Epiq and
2   I am the video specialist.  The court reporter is
3   Lorraine Abate in association with Epiq.
4           All present counsel, please introduce
5   themselves for the record.
6           MR. HINDERAKER: Allen Hinderaker from
7   Merchant & Gould on behalf of the plaintiff, Fair
8   Isaac Corporation.  And James Woodward of -- in-house
9   counsel from FICO.
10          MR. FLEMING: Terry Fleming of the
11  Frederickson law firm, and Kevin Murphy, general
12  counsel office of Chubb representing Federal.
13          THE VIDEOGRAPHER: Will the court
14  reporter please swear in the witness.
15  J O H N   T A Y L O R,
16      Having been first duly sworn by a Notary
17      Public of the State of New Jersey, was
18      examined and testified as follows:
19          MR. FLEMING: Allen, one final thing.
20  As I did yesterday, I noted we had not designated
21  specifically the topics that each of our Rule 30(b)6
22  deponents would be testifying about.
23          And Mr. Taylor will be testifying on the
24  topics which, under Rule 30(b)6 notice, other than
25  the ones that yesterday's deponent -- Tuesday's
```

Page 10

1  deponent, discussed.  Namely, the topics other than
2  1(e), 1(h), 2(c), 2(f) and 2(i).
3            MR. HINDERAKER:  Thank you.
4  EXAMINATION BY MR. HINDERAKER:
5       Q.    So Mr. Taylor, understand, I think, but
6  tell me this; do you understand that you're here
7  today on behalf of Federal to testify to Federal's
8  knowledge on the topics of the 30(b)(6) notice?
9       A.    Yes.
10      Q.    Okay.  Have you had a chance to -- this
11 is Exhibit 1 from an earlier deposition, an amended
12 deposition notice that includes the topics for you.
13            Have you had a chance to review that?
14      A.    Yes, I have.
15      Q.    Great.  I assume you met with counsel to
16 prepare for the deposition?  That's a yes or no.
17      A.    Yes.
18      Q.    Okay.  And did you do anything to
19 further your own personal knowledge by way of
20 interviews or otherwise, so as to be prepared to
21 testify today on behalf of the corporate knowledge?
22      A.    Yes, I did.  I spoke with Ron Collovano,
23 vice-president of P&C reporting for Chubb, Russ
24 Danson, assistant vice-president, P&C reporting for
25 Chubb, Grant McEwen, Chubb Canada, CFO senior

Page 11

1  vice-president.  Andrea Phillips, controller and
2  vice-president Chubb Canada, Bob Boyle, international
3  accounting.  Don't know his title off the top of my
4  head.  Also, went through various financial
5  documents, U.S. annual statements, things of that
6  nature.
7       Q.    Thank you.
8            Did you review any of the, say,
9  genetically service or management agreements between
10 Chubb & Son and various subsidiaries?
11      A.    Yes.
12      Q.    You did that as well.
13            MR. FLEMING:  Because there is a court
14 reporter here, you're going to have to wait until he
15 is done asking the question, and then respond.
16      Q.    And picking up on that, let me also say
17 that I'm going to try my best to present a question
18 that you understand.  And if you don't, tell me.
19      A.    Sure.
20      Q.    And I'll rephrase.
21            So I think I was -- would you read back
22 what I was asking.
23            (The record was read.)
24      Q.    Correct?
25      A.    Service agreements were between Federal

Page 12

1  Insurance and subsidiaries.
2       Q.    Thank you.  Yes, good correction.  And
3  those -- you had essentially reviewed those
4  documents?
5       A.    Correct.
6       Q.    Sir, would you tell us with whom you are
7  employed today.
8       A.    Chubb.
9       Q.    So Chubb to me has a lot of different --
10 there are a lot of different Chubbs to me.
11            What is the precise name of the entity
12 that employs you?
13      A.    ACE American Insurance Company.
14      Q.    And what's the relationship, if any,
15 between ACE American Insurance Company and Federal
16 Insurance Company?
17      A.    They are affiliate companies.
18      Q.    What do you mean by affiliate companies,
19 what do you mean by an affiliate?
20      A.    They're owned by a common parent.
21      Q.    Okay.  And who is the common parent?
22      A.    Chubb Limited.
23      Q.    Is it correct that ACE American
24 Insurance Company is not a subsidiary of Federal
25 Insurance Company?

Page 13

1       A.    Correct.
2       Q.    And for how long have you been employed
3  by ACE American Insurance Company?
4       A.    14 and a half years.
5       Q.    Can you give us an overview, just give
6  us an overview, if you would, of your history of
7  employment with ACE American Insurance.
8       A.    I was hired in January 2004.  Over the
9  years, my responsibilities have included U.S.
10 statutory reporting -- let's see, statistical
11 reporting, investment accounting, premium tax
12 function, pools and associations, and ACE Bermuda.
13      Q.    And have these responsibilities been for
14 ACE American Insurance Company only?
15      A.    No, no.
16      Q.    Okay.  So what are the other entities
17 for whom those responsibilities were done?
18      A.    Prior to acquisition, it would be all of
19 the U.S. property and casualty insurance companies of
20 ACE Limited.
21      Q.    Prior to the acquisition, we're talking
22 about the acquisition of 2016?
23      A.    Of Chubb in 2016, correct.
24      Q.    Chubb in 2016.
25            I use the -- so in 2016, there was a

JOHN TAYLOR - 08/02/2018          Pages 14..17

Page 14

1  merger between the Chubb Corporation and ACE, one of
2  the ACE companies.
3          Were you legacy ACE or -- are you legacy
4  ACE or legacy Chubb?
5      A.   I am legacy ACE.
6      Q.   Do you have any personal knowledge of
7  the financial reporting of the legacy Chubb -- of
8  legacy Chubb or any of its affiliated companies?
9      A.   Yes.
10     Q.   And how do you have that personal
11 knowledge?
12     A.   From speaking to the folks that I
13 mentioned earlier.
14     Q.   You acquired that personal knowledge as
15 a consequence of preparing for today's deposition?
16     A.   I was also responsible for legacy Chubb
17 financial -- U.S. statutory reporting from date of
18 acquisition to present.
19     Q.   But not for any time period before the
20 date of acquisition?
21     A.   Correct.
22     Q.   And you used the phrase P&C group or
23 P&C -- well, P&C group, what does that mean?
24     A.   Property and casualty insurance.
25     Q.   And by way of group, are you referencing

Page 15

1  various companies that are affiliates that are in the
2  property and casualty insurance business?
3      A.   Correct.
4      Q.   So I'm just trying to get my head around
5  this.  So pre-merger, you had no responsibility --
6  responsibilities, with respect to the P&C group of
7  the Chubb Corporation, correct?
8      A.   Correct.
9      Q.   Post-merger, you have responsibilities
10 for the P&C group of ACE as well as from post-merger
11 forward, responsibilities for what was legacy Chubb?
12     A.   Correct.
13     Q.   Before your employment with ACE American
14 Insurance Company, with whom were you employed?
15     A.   Would you like me to go -- recite my
16 entire history or just immediate?
17     Q.   No, just go back a little bit.
18     A.   Reliance Insurance Company for 13 and a
19 half years.
20     Q.   Okay.  And before that?
21     A.   Colonial Penn Insurance Company.
22     Q.   Has your career been in the insurance
23 business?
24     A.   For the most part.  I started out at
25 Arthur Anderson.

Page 16

1      Q.   And your educational background, please.
2      A.   I graduated from Drexel University in
3  Philadelphia.
4      Q.   In what field of study?
5      A.   Accounting.
6      Q.   Any post graduate degrees?
7      A.   No.
8          (Exhibit 17, 2014 The Chubb Corporation
9  10-K, marked for identification, as of this date.)
10     Q.   Mr. Taylor, do we agree that Exhibit 17
11 is a form 10-K filed by the Chubb Corporation with
12 the SEC for the year ending December 31, 2014?
13     A.   Yes.
14         (Exhibit 18, 2014 The Chubb Corporation
15 Form 10-K Excerpt, marked for identification, as of
16 this date.)
17     Q.   The court reporter has given you
18 Exhibit 18, which I'm representing is the cover page
19 of the same 10-K.  Along with pages 3, 4, and 5 of
20 that 10-K.
21         Part 1, item 1, general heading
22 business.  If you would like to compare Exhibit 18 to
23 that part of Exhibit 17, feel free.  Otherwise, I'll
24 proceed.
25     A.   I'll take your word.

Page 17

1      Q.   Okay.  Fair enough.
2          (Discussion off the record.)
3          Let's go to page 3.  Under property and
4  casualty insurance, the 10-K says that Federal
5  Insurance Company is the largest insurance subsidiary
6  in the P&C group and is the parent of most of the
7  corporation's other insurance subsidiaries.
8          Do you see where I'm reading?  It's
9  right under property and casualty insurance.
10     A.   Okay.  I'm with you, yes.
11     Q.   All right.  So there's no disagreement
12 with that statement, is there?
13     A.   Correct.
14     Q.   And do you know if this statement that
15 Federal Insurance Company is the largest subsidiary
16 in the P&C group is true after the merger,
17 post-merger?
18     A.   At a specific point in time or?
19     Q.   Well, between 2016 and today.
20     A.   By what measure?
21     Q.   Premium revenue.
22     A.   Yes.
23     Q.   What other measures are there?
24     A.   Surplus, asset base.
25     Q.   And then on page 3 of this 2014 10-K,

Page 18

1    you see that insurance companies in the P&C group
2    based in the United States are listed.
3               And so just so we're on the same page,
4    this list of subsidiaries, do we agree is a list of
5    the subsidiaries of the Chubb Corporation at this
6    time?
7        A.     At 12/31/2014?
8        Q.     Yes.
9        A.     Correct.
10       Q.     Because Federal Insurance Company is one
11   of the subsidiaries listed.
12              Do you know that all of the other
13   subsidiaries listed on this page 3 are themselves
14   subsidiaries of Federal Insurance Company as of year
15   end 2014?
16       A.     Correct.
17       Q.     Okay.  Do you know whether it is still
18   true that these various companies other than Federal
19   Insurance Company are subsidiaries of Federal
20   Insurance Company post-merger from 2016 to date?
21              MR. FLEMING:  Objection to foundation as
22   to the time that you're asking about that.
23       Q.     You can answer.
24       A.     They are not.
25       Q.     Some of them are not?

Page 19

1        A.     Correct.
2        Q.     Which ones are not subsidiaries of
3    Federal Insurance Company following -- during the
4    period 2016 to date?
5        A.     Texas Pacific Indemnity.
6        Q.     Let me find --
7        A.     Last one on the right.
8        Q.     Okay.  Got it.  Thank you.
9        A.     Pacific Indemnity and Great Northern.
10       Q.     Any others?
11       A.     No, I believe that is it.
12       Q.     Okay.  Did those companies post-merger
13   become subsidiaries of another corporation?
14       A.     Texas Pacific merged with Pacific
15   Indemnity.
16       Q.     Okay.
17       A.     The other companies became subs of a
18   holding company, are now affiliates of Federal.
19       Q.     Do you know -- so Texas Pacific merged
20   into Pacific Indemnity, Pacific Indemnity is now a
21   sub of a holding company, the name of which is?
22       A.     I forgot off the top of my head.  But it
23   is a sister company of Federal.  They're in the
24   same -- all owned by the same holding company.
25       Q.     Okay.  So Federal and the holding

Page 20

1    company are owned by a common parent?
2        A.     Correct.
3        Q.     And then Great Northern Insurance
4    Company, what happened to that?
5        A.     Same as --
6        Q.     Pacific?
7        A.     It came up, yes.
8        Q.     If we turn to page 4, it reports at the
9    top of the page on the principal insurance companies
10   in the P&C group based outside the United States as
11   of year end 2014.
12              Were -- as of year end 2014, were each
13   of these companies also subsidiaries of Federal?
14       A.     Yes.
15       Q.     Post-merger for the period 2016 to date,
16   are these companies still subsidiaries of Federal?
17              MR. FLEMING:  Same objection, foundation
18   as to timing.
19       Q.     You can answer.
20       A.     To date, meaning as of today?
21       Q.     As of today.
22       A.     Chubb Australia no longer is merged with
23   a legacy ACE company.
24       Q.     No longer is merged with a legacy ACE
25   company?

Page 21

1        A.     It no longer is a subsidiary of Federal.
2        Q.     It's no longer a subsidiary of Federal?
3        A.     Correct.
4        Q.     Okay.  Got it.  Any others?
5        A.     Oh, I'm sorry.  Don't recall off the top
6    of my -- off the top of my head.
7        Q.     All right.  You and I have been using
8    the word subsidiary in the context of Federal and
9    these other companies.
10              And for clarity, do we agree that in
11   each of those instances, Federal owned all of the
12   voting stock of the subsidiary, that is to say, they
13   are all wholly-owned subsidiaries of Federal?
14       A.     Which company -- which subsidiaries?
15       Q.     All right.  So for year end 2014, all of
16   the subsidiaries identified on page 3 of this exhibit
17   are wholly-owned subsidiaries of Federal?
18       A.     There may have been a company -- they
19   were not directly -- they may not be directly owned
20   by Federal.  There might be a stacking.
21       Q.     When you say might be, do you know one
22   way or the other?
23       A.     I know one of them was.  I don't recall
24   which one off the top of my head.
25       Q.     All right.  Other than the one, do you

Page 22

1  know that any others were?
2      A.    No.
3      Q.    So as far as you know, all of the others
4  are wholly-owned by Federal?
5      A.    Right.  Texas Pacific was the one that
6  was stacked.
7      Q.    Okay.  All the rest wholly-owned by
8  Federal?
9      A.    Yes.
10      Q.    And then on page 4, the subsidiaries
11  outside of the United States, all of those year end
12  2014 were wholly-owned by Federal?
13      A.    Yes.
14      Q.    Are these companies outside the United
15  States principal insurance companies in the P&C group
16  currently post-merger?
17            Maybe that's a bad question.
18            Looking at the business outside of the
19  United States, are the companies listed on page 4 the
20  principal ones included in the P&C group?  And by
21  principal, again, I mean by measuring written
22  premium.
23      A.    They are, yes.
24      Q.    Do you know the geographic scope of
25  insurance policies -- let me rephrase the question.

Page 23

1            Do you know the -- do you know of the
2  various -- let me rephrase it again.
3            Do you know the countries in which Chubb
4  Insurance Company of Europe as of 2014 sold
5  insurance?
6      A.    It sold -- I do not know all of them.
7      Q.    Tell me what you do know.
8      A.    U.K. and also, in Europe.
9      Q.    And by Europe, how many other countries
10  in Europe?
11      A.    I don't know all of them.
12      Q.    Do you know some of them?
13      A.    Yes.
14      Q.    Which ones do you know?
15      A.    France.  Other than that, I don't
16  recall.
17      Q.    All right.  And do you know with respect
18  to the Insurance Company of Canada, did it sell
19  insurance policies throughout Canada?
20      A.    Yes.
21      Q.    Insurance Company of Australia, did it
22  sell insurance policies throughout Australia?
23      A.    Yes.
24      Q.    Do you know if Chubb Insurance Company
25  of Europe itself had subsidiaries that sold insurance

Page 24

1  policies in the U.K. or Europe?
2      A.    No.
3      Q.    You don't know or they didn't?
4      A.    I don't know.
5      Q.    Okay.  Maybe a stupid question, but
6  let's get it on the record.
7            Federal Insurance Company sells P&C
8  insurance policies?
9      A.    Correct.
10      Q.    As well as personal lines?
11      A.    Correct.
12      Q.    Okay.  And this is true before the
13  merger and after the merger?
14      A.    Correct.
15      Q.    And the three lines of business that
16  Federal has sold and continues to sell are personal
17  insurance, commercial insurance and specialty
18  insurance?
19      A.    Correct.
20      Q.    Would you tell us, give us a -- your
21  working definition of personal insurance.
22      A.    Personal insurance is sold to cover --
23  to individuals to cover personal property, cars,
24  homes; things like that.
25      Q.    Okay.  Same question for commercial

Page 25

1  insurance.
2      A.    Sold to businesses for again, property,
3  property coverages, liability coverages.
4      Q.    Okay.  Specialty insurance, same
5  question.
6      A.    It is sold to -- it is sold to
7  businesses but for non property-type coverages.
8      Q.    Examples of which are?
9      A.    Directors, D&O coverage, E&O coverage,
10  things like that.
11      Q.    Malpractice coverage, accountants,
12  attorneys, lawyers?
13      A.    Correct.
14      Q.    Medical?  How about surety bonds, that
15  sort of thing?
16      A.    Sureties -- surety bonds are generally
17  sold to cover construction projects.
18      Q.    So is that commercial or surety?
19      A.    It is surety.
20      Q.    Do all the subsidiaries that are listed
21  on page 3 of Exhibit 18, looking at each one of them,
22  do they also sell the same kind of insurance in the
23  United States?
24      A.    The same kind of insurance.
25      Q.    The three lines of business?  They also

JOHN TAYLOR - 08/02/2018                    Pages 26..29

Page 26

1  sell personal insurance, commercial insurance,
2  specialty insurance in the United States?
3       A.    Company -- yes.
4       Q.    And then with respect to the companies
5  outside of the United States that are listed on page
6  4 or on page -- page 4, each of those companies also
7  sells personal lines, commercial lines and specialty
8  lines of insurance?
9       A.    Yes.
10      Q.    I notice that on page 4 of this 10-K,
11  this really is I guess the third paragraph, it
12  reports that 36 percent of the Chubb Corporation net
13  premiums written was for personal lines, and you see
14  it says 43 percent for commercial lines and
15  21 percent for specialty lines.
16           Do you know if those percentages are
17  relatively true post-merger?
18           MR. FLEMING:  Object.  Vague,
19  foundation.
20      A.    I'm not sure I understand your --
21      Q.    Okay.  So this is reporting on -- this
22  10-K is reporting on the Chubb Corporation with
23  respect to ACE Limited.  If ACE Limited was to
24  allocate its net premiums written across these three
25  lines of insurance, would those percentages be

Page 27

1  relatively the same or are they different?
2           MR. FLEMING:  Just further objection, I
3  don't believe that question is within any of the
4  topics raised in your Rule 30(b)6 deposition notice.
5           MR. HINDERAKER:  We can disagree.
6       Q.    Do you have an answer to that question?
7       A.    Post-merger, ACE Limited, not to be a
8  wise guy, but ACE Limited doesn't exist.
9       Q.    Okay.  Post-merger, Chubb Limited.  I'm
10  sorry.
11      A.    Chubb Limited currently does not report
12  using these definitions.
13      Q.    Okay.  What definitions does Chubb
14  Limited use to report?
15      A.    Agriculture, global reinsurance --
16  agriculture, global reinsurance, personal, surety,
17  large, medium and small, each individual commercial.
18      Q.    Okay.  Let me stay with these percentage
19  but rephrase the question.
20           If I was to -- let me focus my question
21  on the year end 2014.  But rather than the
22  percentages of net premium across the three lines of
23  business for the Chubb Corporation, let me ask you if
24  you know the percentages of business across the three
25  lines for Federal and all of its subsidiaries

Page 28

1  wholly-owned.
2       A.    For 2014?
3       Q.    Yes.
4       A.    For Federal it would be -- it would
5  approximate -- it would approximate this.
6       Q.    Is the United States the largest market
7  for specialty lines of insurance after the merger?
8       A.    I don't know.
9       Q.    Okay.  Do you know if after the merger,
10  the insurance companies located outside the United
11  States on page 4 are the principal ones for specialty
12  insurance post-merger?
13      A.    Post-merger, there has been a -- no, I
14  don't know.
15      Q.    At the bottom on page 4, there are
16  reporting of premiums written during the past
17  three years, 2014, '13, and 2012.
18           What is the meaning of direct premiums
19  written?
20      A.    Direct premiums written are premiums
21  that are written directly on a specific legal entity
22  using a policy issued by that legal entity to the
23  insured.
24      Q.    And by legal entity, you're referencing
25  Federal or one of the various subsidiaries, for

Page 29

1  example?
2       A.    Correct.
3       Q.    So in the year 2014, or any -- in any
4  single year, is direct premiums written the premiums
5  on the policies sold in that year?
6       A.    Could you say that again, please.
7       Q.    Sure.  Of course.
8           So in a year, Federal or any of its
9  subsidiaries, what you call legal entities, sells an
10  insurance policy in return for a premium, correct?
11      A.    Correct.
12      Q.    And if I'm measuring direct written
13  premium, am I measuring -- I'm measuring direct
14  premium for a particular year, am I only measuring
15  those insurance policies sold that year?
16      A.    That is one -- that is one measure, yes.
17      Q.    And there is another measure I think
18  we'll run into called earned premium.
19      A.    Correct.
20      Q.    What's the difference between direct
21  written premium and earned premium?
22      A.    Direct written premium covers a specific
23  calendar year.  So for -- direct premium covers
24  calendar year.  Earned premium is brought into the
25  income statement over the exposure period.

Page 30

1      Q.      The exposure period of the policy?
2      A.      Correct.
3      Q.      So is it correct that if I want to
4   measure the direct written premium from insurance
5   policies sold in any particular year, I'll be limited
6   to insurance policies that were sold in that
7   particular year?
8      A.      By -- directly by that company, correct.
9      Q.      Yes.  And what's the qualification, why
10  do you qualify by directly by that company?
11     A.      Because companies can rate assumed, they
12  can assume business from another carrier as well.
13     Q.      Okay.  And there is another column on
14  this page 4 is assumed reinsurance premium.  What is
15  that?
16     A.      That is essentially -- you can think of
17  that as insurance companies assuming a risk from
18  another insurance company.  It's tantamount to an
19  insurance company buying insurance for itself.
20     Q.      For which the insurance company receives
21  a premium or some form of compensation?
22     A.      Correct, yes.
23     Q.      And then ceded reinsurance premiums,
24  what is that?
25     A.      That is business that is -- that is

Page 31

1   ceded -- I hate to use the same word again, but
2   shared -- it's the offset of assumed.  If you were --
3   if you were ceding business to me, I would record it
4   as assumed, you would record it as ceded.  It's a
5   reduction of your written premium.
6      Q.      So the company that is ceding the
7   business pays the premium, pays the compensation?
8      A.      To the other insurance company.
9      Q.      To the other insurance company for the
10  other insurance company being willing to accept that
11  risk?
12     A.      Correct.
13     Q.      And so the net premium written is the
14  combination on page 4 of those various categories?
15     A.      Correct.
16     Q.      Okay.  I notice there is a footnote
17  called intercompany items eliminated.
18             What does that mean, if you know?
19     MR. FLEMING:  What page are you on?
20     MR. HINDERAKER:  Page 4.
21     MR. FLEMING:  So you're saying the
22  footnote at the bottom of the page or what are you
23  focusing on here?
24     MR. HINDERAKER:  I'm focusing on (a)
25  intercompany items eliminated.  I'm asking do we know

Page 32

1   what that means.
2      A.      Yes.  Between legal entities within --
3   that are affiliated, sometimes share premium back and
4   forth.  That note indicates that those are eliminated
5   between assumed and ceded in an attempt to show -- to
6   show the assumed and ceded premium here are from
7   third parties.
8      Q.      And by third parties, you mean insurance
9   companies outside of -- for this time frame, the
10  Chubb Corporation?
11     A.      Correct.
12     MR. FLEMING:  Objection, outside the
13  scope of the categories that you designated for this
14  witness.
15     Q.      And the number -- the dollar amounts
16  that are recorded on page 4 here, what we're looking
17  at, these are numbers in the billions, right?
18     A.      I have to go back and look at the -- how
19  it's defined earlier.
20     Q.      Okay.
21     A.      I'm sorry, in millions.  Under the -- in
22  the middle of the table in parentheses.
23     Q.      So direct written premium for 2014,
24  you're saying is $12,000,976, not $12,976,000,000?
25     A.      The report is saying that it is in

Page 33

1   millions.  So you'd have to add what, six --
2      Q.      You have to add --
3      A.      You have to add six zeroes, so it would
4   be -- so what that works out to be, 12 billion.
5      Q.      So if I add six zeroes, I get to 12
6   billion?
7      A.      Yes.
8      Q.      Okay.  And on page 5, for year end 2014,
9   it reports that -- it's in the second paragraph,
10  quote, "Approximately 78 percent of the P&C group's
11  total direct premiums written were produced in the
12  United States."
13             Is that true for post-merger and ACE
14  Limited?
15     MR. FLEMING:  Objection, foundation.
16     Q.      I'm sorry, Chubb Limited.
17     MR. FLEMING:  Objection, foundation as
18  to time.
19     A.      No.
20     Q.      What -- how much of the direct premiums
21  written of Chubb Limited for post-merger time frames?
22     A.      I don't know.
23     Q.      You don't know one way or the other?
24     A.      Well, I know it's not 78 percent, but I
25  couldn't tell you the exact percent, no.

Page 34

1    Q.    What is the -- tell me the approximate
2  percent that you think it is.
3          MR. FLEMING:  Objection, foundation.
4    A.    I don't know the approximate percent.  I
5  just know it's not 78 percent.
6    Q.    You're just saying it can't be precisely
7  the same number?
8    A.    Correct.
9    Q.    For the time period before the merger,
10 were the insurance policies sold in the name of
11 Federal and its various subsidiaries in the United
12 States sold by independent insurance agencies or
13 independent brokers?
14   A.    Yes.
15   Q.    Yes.  Is that -- was that pre-merger
16 also true for the Europe, Australia, Canada, those
17 three companies?
18   A.    I don't know.
19   Q.    Post-merger, are the insurance policies
20 of Federal and its various subsidiaries sold in the
21 United States still sold through independent agencies
22 and independent brokers?
23         MR. FLEMING:  Objection, foundation as
24 to time.
25   A.    Yes.

Page 35

1    Q.    And then post-merger, do you know if
2  that's also true for the insurance companies in
3  Europe, Australia, and Canada?
4    A.    No.  No, I don't know.
5    Q.    You still don't know?
6    A.    Yes.
7    Q.    Got it.  Pre-merger, did Federal or any
8  of its subsidiaries have a captive sales force?
9    A.    Not that I'm aware of.
10   Q.    And post-merger, does it have -- does
11 Chubb Limited -- I'm sorry, post-merger, does Federal
12 or any of its subsidiaries now have a captive sales
13 force?
14   A.    Not that I'm aware of.
15   Q.    Is there a meaningful difference between
16 the term insurance agent and insurance broker?
17   A.    Yes.
18   Q.    What are the -- what is an insurance
19 agent?
20         MR. FLEMING:  Object.  Foundation and
21 outside the category you have identified in the Rule
22 30(b)(6) notice.
23   Q.    What is the definition of an insurance
24 agent?
25   A.    An agent is generally an individual that

Page 36

1  sells insurance policies.
2    Q.    How do you distinguish that from an
3  insurance broker?
4    A.    A broker -- a broker deals with larger
5  risks and I think of more of a brokerage house as
6  supposed to an individual broker.
7    Q.    So are you seeing an insurance agent as
8  being more of a solo practitioner and an insurance
9  broker as being more of someone who's operating in a
10 group?
11   A.    Correct.
12   Q.    And is it -- was it true post-merger
13 that the insurance agents and insurance brokers
14 through whom Federal and its various subsidiaries
15 sold insurance policies, those agents and brokers
16 also sold insurance from competing companies?
17   A.    I don't know.
18   Q.    Okay.  And anything -- do you know
19 anything that would restrict them from doing that?
20         MR. FLEMING:  Objection, lack of
21 foundation.
22   A.    Can you repeat that question.
23   Q.    Do you know if Federal or any of its
24 subsidiaries limit the business of any insurance
25 agent or broker to be exclusive to Federal?

Page 37

1    A.    I don't know.
2    Q.    And how about post-merger, same
3  questions.
4    A.    Don't know.
5    Q.    Does Federal Insurance Company have any
6  employees outside of the United States pre-merger?
7    A.    I don't believe so.
8    Q.    Does Federal Insurance Company have any
9  employees outside of the United States post-merger?
10   A.    I don't believe so.
11   Q.    We know pre-merger that one of the
12 divisions of Federal Insurance Company is Chubb &
13 Son.
14         Are you aware of that?
15   A.    Yes.
16   Q.    Do you know that?
17   A.    I know that.
18   Q.    All right.
19         Pre-merger, did Federal Insurance
20 Company have any other divisions in addition to Chubb
21 & Son?
22   A.    Not that I'm aware of.
23   Q.    Post-merger, does Federal Insurance
24 Company have any divisions other than Chubb & Son?
25   A.    No, not that I'm aware of.

Page 38

1      Q.     And post-merger, Chubb & Son continues
2  to be a division of Federal?
3      A.     Correct.
4      Q.     Do we agree that Chubb & Son, as a
5  division, is an unincorporated entity?
6          MR. FLEMING:  To the extent it calls for
7  a legal conclusion.
8      A.     As of what -- to the best of my
9  knowledge.
10     Q.     That's what a division is, correct?
11 Agreed?
12     A.     To the best of my knowledge, yes.  To
13 the best of my knowledge, yes.
14     Q.     So is it also accurate to say that Chubb
15 & Son as a division itself does not have any
16 subsidiaries?
17     A.     Correct.
18     Q.     Staying with this Exhibit 18, on page 3,
19 and under property and casualty insurance, again, it
20 tells us that Chubb & Son, a Division of Federal, is
21 the manager of several U.S. subsidiaries in the P&C
22 group.
23          Pre-merger, do you have -- can you give
24 us an overview of the responsibilities of Chubb &
25 Son, a division, as a manager of several U.S.

Page 39

1  subsidiaries in the P&C group.
2          MR. FLEMING:  Objection, multiple
3  questions.
4      Q.     Do you understand what I'm asking?
5      A.     Could you repeat that.
6      Q.     I sure can.
7          My time frame is pre-merger.  My
8  question is an overview of responsibilities of Chubb
9  & Son as a manager of several U.S. subsidiaries in
10 the P&C group.
11     A.     Federal had a number of agreements with
12 subsidiaries to manage the various underwriting
13 activities and other administrative duties of those
14 subsidiaries.
15     Q.     Okay.  Anything further that you would
16 include in that description?  Is that the full scope
17 of the responsibilities?
18     A.     Can you read back my --
19     Q.     That's okay.  We'll get into some
20 documents.  Let's do it through that.
21     A.     Okay.
22     Q.     And then it goes on to say and also
23 provides certain services to other insurance
24 companies.
25          Do you know what -- if there is a

Page 40

1  difference between what Federal, through its division
2  Chubb & Son, did as a manager relative to what it did
3  as a servicer?
4      A.     There were management and service
5  agreements.  I tend to think of them as one and the
6  same, that Federal -- that Federal had with the
7  subsidiaries.  Federal had all the employees.  The
8  subsidiaries did not have employees.  So Federal
9  essentially, through its employees, managed and
10 serviced those subsidiaries.
11     Q.     And is that arrangement of management
12 and service responsibilities provided by Federal
13 through the division to the various subsidiaries, has
14 that continued post-merger?
15     A.     At what -- that's a long time period.
16     Q.     Okay.  Let me rephrase that.
17          From 2016 to date, has the
18 responsibility of Federal through the division Chubb
19 & Son changed when we speak to providing services and
20 management?
21          MR. FLEMING:  Objection, multiple
22 questions.  Also, a foundation issue.
23     A.     Federal still manages the subsidiaries.
24     Q.     It does post-merger as well?
25     A.     Post-merger.

Page 41

1          MR. FLEMING:  We have been going about
2  an hour.  Is this a natural stopping point to take a
3  short break?
4          MR. HINDERAKER:  Yeah, just give me a
5  minute here to look at a couple of things.
6      Q.     I'll be showing you in a little while a
7  service management document or agreement with Chubb
8  Insurance Company of Canada, and I'll show you one
9  from Chubb Insurance Company of Australia.
10          Do you know if pre-merger, Federal
11 provided management service -- management and service
12 for Chubb Insurance Company of Europe SE?
13     A.     I don't -- I don't specifically know
14 that.
15     Q.     Okay.  And then you know, I asked you --
16 I asked you a question that was post-merger.  And let
17 me ask you another question post-merger, but a bit
18 more specifically.  That is to say, post-merger,
19 has -- does Federal provide management and service
20 functions to legal entities that are no longer its
21 wholly-owned subsidiaries?
22     A.     Yes.
23     Q.     Yes.  Okay.  Confirming that
24 post-merger, there has been no change in Federal's
25 functions with respect to providing management and

Page 42

1  services?
2      A.    Correct.  There -- yes.
3            MR. HINDERAKER:  Let's take a break now.
4            THE VIDEOGRAPHER:  The time is 9:59 a.m.
5  and we are going off the record.
6            (Discussion off the record.)
7            THE VIDEOGRAPHER:  The time is 10:10
8  a.m. and we're back on the record.
9            MR. FLEMING:  I just wanted to raise
10 this objection.  We have been going for about an hour
11 and there was a long history of narrowing the topics
12 for this particular designee.  And we spent an hour
13 so far, and most of what the questioning has been so
14 far has not related to the topics that have been
15 agreed upon.  Case in point, captive insurance agents
16 and broker versus agent definitions.
17           I'm going to insist that we stay within
18 the topics that we agreed upon that we prepared the
19 witness for.
20           MR. HINDERAKER:  I understand your
21 position.  I don't think it matters.  Back on the
22 record.
23 BY MR. HINDERAKER:
24     Q.    We've had a break, and anything you
25 would like to change, amend or modify from your

Page 43

1  testimony so far?
2      A.    I'm pretty sure I got the definition of
3  agent and broker right.  But honestly, I wasn't
4  really -- that kind of came out of left field.
5      Q.    Fair enough.
6            With respect to your own testimony,
7  counsel and I can disagree about other things
8  separately.
9            You mentioned before the break that the
10 United States subsidiaries -- I have to do this in
11 time frames again.
12     A.    Sure.
13     Q.    So let me first start off with
14 pre-merger, that the United States subsidiaries of
15 Federal have no employees.
16     A.    Correct.
17     Q.    Okay.  So my question is how do the
18 various -- how did pre-merger, the various
19 subsidiaries of Federal without employees, write,
20 issue, sell insurance policies?
21     A.    Through various management service
22 agreements.
23     Q.    Was the people, the arms and legs and
24 facilities and technology provided by Federal,
25 through Chubb & Son, a Division?

Page 44

1      A.    Through Federal, correct.
2      Q.    And then same question post-merger
3  continues to be true that subsidiaries have no
4  employees?
5      A.    Correct.
6      Q.    And then let's go outside the United
7  States.
8            Pre-merger, did Chubb Insurance Company
9  of Europe, Chubb Insurance Company of Canada, or
10 Chubb -- and Chubb Insurance Company of Australia,
11 with respect to these three companies, did they have
12 employees?
13     A.    I don't know.
14     Q.    Okay.  Post-merger you don't know
15 either?
16     A.    No.
17     Q.    Pre-merger, did Federal provide services
18 and management to any entities that were not
19 wholly-owned subsidiaries of Federal?
20     A.    To the best of my knowledge, no.
21     Q.    Okay.  And then post-merger, Federal
22 does provide management services agreements to
23 entities that are not wholly-owned subsidiaries of
24 Federal?
25     A.    Correct.

Page 45

1      Q.    Do you understand that there is a
2  license agreement between FICO and Chubb & Son, a
3  Division of Federal, for Blaze Advisor software?
4      A.    I'm aware of that.
5      Q.    Are you aware that over time, various
6  what are called applications, were developed that use
7  Blaze Advisor software used in conjunction with the
8  sale of insurance companies?
9            MR. FLEMING:  Again, this is completely
10 outside of any topic as covered by the Rule 30(b)6
11 deposition notice that we negotiated and agreed to.
12           MR. HINDERAKER:  As I said fine, you can
13 have that objection all day long.
14           MR. FLEMING:  Well, I'm making the
15 objection.
16           MR. HINDERAKER:  And repeat it all you
17 would like.  Let's go back to my question.
18     Q.    So my question -- we were talking, you
19 know that there is a license agreement for Blaze
20 Advisor software.  That's the subject matter of this
21 lawsuit, correct?
22     A.    Correct.
23     Q.    And are you aware that various
24 applications were developed using Blaze Advisor
25 software which were employed in connection with the

Page 46

1  sale of insurance policies or the management of
2  claims, but in the business of insurance?
3          MR. FLEMING:  Objection, foundation,
4  outside the scope of the Rule 30(b)6 topics.
5      Q.    Are you aware of that?
6      A.    That is my understanding.
7      Q.    Okay.  Is it your understanding that --
8  is it your understanding that to the extent -- to the
9  same extent that Federal used applications that
10 deployed Blaze Advisor software in the sale of
11 Federal insurance policies, to the same extent,
12 insurance policies sold by -- in the name of other
13 entities, other subsidiaries of Federal, also used
14 Blaze Advisor?
15         MR. FLEMING:  Objection, foundation,
16 outside the scope of the Rule 30(b)6 topics that are
17 designated.
18     A.    Not that I'm --
19     Q.    Do you know one way or the other?
20     A.    No, I don't.
21     Q.    You just don't know?
22     A.    Yes.
23     Q.    Okay.  If you go to -- it's Exhibit 18,
24 please.  And on that, page 3, and then under property
25 and casualty insurance, you'll see where it says, The

Page 47

1  sentence begins, "Acting subject to the supervision
2  and control of the respective boards of directors of
3  the insurance companies included in the P&C group,
4  Chubb & Son provides day-to-day management and
5  operating personnel."
6          Do you see where I read?
7      A.    Yes.
8      Q.    So let me just unpack that a little bit.
9          So as I just said, Chubb & Son acts
10 pursuant to the directions of the board of directors
11 of the subsidiaries.  You with me so far?
12     A.    Correct.
13     Q.    Each of the subsidiaries is wholly-owned
14 by Federal?
15     A.    Correct.
16     Q.    Okay.  So in each of those instances,
17 then, Federal has the authority to control and
18 determine the board of directors of the subsidiaries?
19     A.    Subject to state regulation.
20     Q.    Got it.  Is it fair to say that but for
21 the services and management provided by Federal
22 through Chubb & Son, its division, none of the
23 subsidiaries in the United States, subsidiaries of
24 Federal, would be able to sell insurance policies?
25     A.    Could you say that again, please.  I'm

Page 48

1  sorry.
2      Q.    Isn't it true -- isn't it true that for
3  the various subsidiaries of Federal in the United
4  States to sell insurance policies, the services and
5  management of Federal through Chubb & Son is
6  absolutely necessary?
7          MR. FLEMING:  Objection.  Vague.
8      Q.    Are any of those insurance companies --
9  could any of the legal entities that are subsidiaries
10 of Federal having no employees sell insurance
11 policies without the services and management provided
12 by Federal through Chubb & Son?
13     A.    To the best of my knowledge, employees
14 don't sell insurance for these companies.
15     Q.    All right.  So instead of sell,
16 underwrite, write, issue, present to customers
17 policies.
18         MR. FLEMING:  Objection, multiple
19 questions, and it calls for a hypothetical.
20     Q.    Go ahead.
21     A.    To the best of my knowledge, yeah, to
22 the best of my knowledge, yes.  Agree.
23     Q.    Agree that the services of Federal
24 through Chubb & Son are absolutely necessary for each
25 of those subsidiaries to underwrite, issue, sell --

Page 49

1  underwrite, issue insurance policies for sale?
2      A.    Any -- Chubb & Son or Federal, they
3  operate under management agreement and service
4  agreements with Federal.
5      Q.    Right, right.  And but for those
6  management agreements and service agreements with
7  Federal, could any of those insurance companies issue
8  an insurance policy?
9          MR. FLEMING:  Objection, calls for
10 speculation.
11     A.    Hypothetically they could have a
12 management service agreement with anyone.
13     Q.    Okay.  That's how they would have to do
14 it though; no employees?
15     A.    The companies don't have employees,
16 correct.
17     Q.    Okay.
18         (Exhibit 19, Agreement and Amendments
19 Between Pacific Indemnity Company and Chubb & Son, a
20 Division of Federal Insurance Company, marked for
21 identification, as of this date.)
22     Q.    Mr. Taylor, I'm going to go through -- I
23 have for you a series of documents that are like
24 Exhibit 19.  And they are being presented to you in
25 the form or order in which they were produced to

Page 50

1  FICO. And I mention that only because often times,
2  the most recent document is on top and the base
3  document is on the bottom. Let's see if you can --
4  and I can work this in a way that you're comfortable,
5  and -- but also at the same time, efficient.
6          So do we agree that Exhibit 19 is the
7  service agreement with Pacific Indemnity Company
8  between itself and Chubb & Son, a Division of Federal
9  Insurance Company?
10     A.    Yes.
11     Q.    Okay. And then with the document in
12  hand, if you want to try -- if you want to follow
13  along, great, but let's just -- do we agree that
14  Exhibit 19 includes an agreement on page Bates
15  numbered 4 effective January 1, 1998, Bates No. 3, an
16  amendment dated September 1st, 2003, and then the
17  first page being addendum No. 2 dated December 31,
18  2002?
19     A.    I'm sorry, you said September? I'm
20  sorry.
21     Q.    Did I say December 31? I said 2002, but
22  I should have said 2007.
23     A.    I'm looking for the --
24     Q.    On page 2. Signature.
25     A.    Oh, okay. Yes. Okay.

Page 51

1      Q.    And to your knowledge, is this the
2  complete service agreement between Chubb & Son, a
3  Division of Federal, and Pacific Insurance Company?
4      A.    Yes, to my knowledge.
5      Q.    All right. And you described in general
6  terms the services and management that Chubb & Son, a
7  Division of Federal -- that Federal provides through
8  Chubb & Son, a Division, with respect to the various
9  U.S. subsidiaries. And is this an example of the
10  agreement that you were referencing?
11     A.    Yes.
12     Q.    Okay. So for example, it is by way of
13  Exhibit 19 that -- let me withdraw that.
14          Well, let's just use this as an example.
15  Let me ask you this question; if you go to page Bates
16  numbered 4, paragraph 1.
17          MR. FLEMING: Article I?
18          MR. HINDERAKER: Under article II --
19  thank you.
20     Q.    Under article II, paragraph 1, you see
21  that the manager shall manage the business of
22  insurance by and on behalf of the company.
23     A.    Correct.
24     Q.    All right. And manager is Chubb & Son,
25  a Division of Federal, correct?

Page 52

1      A.    Correct.
2      Q.    Okay. And then if we look at Section A,
3  is it fair to say that -- take your time to review
4  it.
5          MR. FLEMING: Bates stamped 0004?
6          MR. HINDERAKER: 0005. Thanks.
7      Q.    Article 3, it's called Section A, 0005.
8  So is it fair to say that the manager issues all
9  policies and contracts of insurance which the
10  company, Pacific Indemnity, is authorized to issue?
11          MR. FLEMING: Where are you reading
12  from?
13          MR. HINDERAKER: Section A, Bates
14  numbered 5. Primarily, the first sentence.
15          MR. FLEMING: Okay. I'm sorry, the
16  question, then, was?
17          MR. HINDERAKER: Could you read back my
18  question -- well, forget that. I'll just re-ask it
19  again.
20     Q.    So do we agree that Chubb Insurance
21  Company, a Division of Federal, as manager, is
22  empowered to effect, sign, countersign and issue all
23  policies of insurance and reinsurance, which Pacific
24  Indemnity company is authorized to issue?
25     A.    It's actually Federal Insurance Company,

Page 53

1  not -- again, not to be a wise guy, but Federal
2  Insurance -- Chubb & Son, a Division of Federal, not
3  Chubb & Son, a Division -- I think you just had your
4  words messed up, but yes.
5      Q.    Okay. With correcting my question, the
6  answer is yes?
7      A.    Yes.
8      Q.    All right.
9          (Exhibit 20, Agreement and Addendum
10  Between Texas Pacific Indemnity Company and Chubb &
11  Son, a Division of Federal Insurance Company, marked
12  for identification, as of this date.)
13     Q.    With respect to Exhibit 20, Mr. Taylor,
14  I would like to know if we can agree that this
15  document includes the agreement between Texas Pacific
16  Indemnity and Chubb & Son, a Division of Federal
17  Insurance Company, June 1, 2004 as well as an
18  addendum dated December 31, 2007.
19     A.    Yes.
20     Q.    And to the best of your knowledge, this
21  is the complete service agreement with Texas Pacific
22  Indemnity?
23     A.    The word service is scratched and
24  management is written in, so it's either a service or
25  management agreement.

Page 54

1    Q.    Okay.  And earlier in the -- earlier in
2  the examination, you were commenting on how maybe
3  there is no real substantive difference between being
4  a servicer and being a manager, and so from that
5  context, your detail is accurate, but does it change
6  the substance of the arrangement?
7    A.    Not to my knowledge.
8    Q.    And if I was to ask you the questions
9  that I just did with respect to Pacific Indemnity,
10  but apply them to Texas Pacific Indemnity, the
11  answers would be the same?
12    A.    I don't recall your questions.
13    Q.    Fair enough.  Is it correct to say that
14  all the insurance policies issued in the name of
15  Texas Pacific Indemnity Company -- I'm sorry, let me
16  back up.
17          Is it true that Federal, through Chubb &
18  Son, its division, as manager, has the authority to
19  underwrite, effect and issue all of the insurance
20  policies that are in the name of Texas Pacific
21  Indemnity?
22    A.    Correct.
23          (Exhibit 21, Agreement and Addendums
24  Between Vigilant Insurance Company and Chubb & Son, a
25  Division of Federal Insurance Company, marked for

Page 55

1  identification, as of this date.)
2    Q.    I hope to do the same thing that we did
3  with the last two.  While you have the document,
4  Exhibit 21, see if we can agree that Exhibit 21 is an
5  agreement between Vigilant Insurance Company and
6  Chubb & Son, a Division of Federal Insurance Company,
7  dated January 1, 1998 as well as an addendum
8  effective January 1, 2002 as well as addendum No. 2
9  effective January 1, 2005 and addendum No. 3
10  effective January 1, 2008 and addendum No. 3
11  effective December 31, 2007.
12    A.    Only that the earlier two addendums are
13  not numbered.  I'm not sure the numbers you
14  referenced line up with the numbers on here, but yes,
15  agree.
16    Q.    All right.  To your -- best of your
17  knowledge, Exhibit 21 is the complete agreement
18  between Chubb & Son, a Division of Federal Insurance
19  Company, and Vigilant Insurance Company?
20    A.    Yes, to the best of my knowledge.
21    Q.    And as I have asked before, do we agree
22  that the manager, Chubb & Son, a Division of Federal
23  Insurance Company, has the authority to effect, sign,
24  countersign and issue, all policies or contracts of
25  insurance in the name of Vigilant Insurance Company?

Page 56

1    A.    Yes.
2          (Exhibit 22, Agreement and Addendums
3  Between Chubb Indemnity Insurance Company and Chubb &
4  Son, a Division of Federal Insurance Company, marked
5  for identification, as of this date.)
6    Q.    With respect to Exhibit 22, this
7  includes an agreement effective January 1, 1998
8  between Chubb Indemnity Insurance Company and Chubb &
9  Son, a Division of Federal Insurance Company,
10  effective January 1, 1998 as well as addendum No. 2
11  effective January 1, 2005 and -- well, let me back
12  up.  On Bates No. 3, page 3 Bates numbered, we have
13  addendum No. 2 which shall be effective on January 1,
14  2008, and then the signature page on the next page
15  says this addendum shall be effective on the first
16  day of January 2005, agreed?
17    A.    Agreed.
18    Q.    And then Exhibit 21 has an addendum No.
19  3 saying it is effective on the 31st day of December
20  2007, agreed?
21    A.    This is Exhibit 22?
22    Q.    22, yeah.
23    A.    And what was the date again?  I'm sorry.
24    Q.    And then Exhibit 22 includes addendum
25  No. 3, having an effective date of December 31, 2007?

Page 57

1    A.    Agreed.
2    Q.    To the best of your knowledge, is
3  Exhibit 22 the complete agreement between -- service
4  management agreement between Chubb Indemnity
5  Insurance Company and Chubb & Son, a Division of
6  Federal Insurance?
7    A.    Yes, agree, to the best of my knowledge.
8    Q.    And do we agree that Chubb & Son, a
9  Division of Federal, has the authority under this
10  agreement to effect, sign, countersign, issue, all
11  policies or contracts of insurance sold in the name
12  of Chubb Indemnity Insurance Company or issued in the
13  name of Chubb Indemnity Insurance Company?
14    A.    Agreed.
15          (Exhibit 23, Agreement and Addendum
16  Between Chubb National Insurance Company and Chubb &
17  Son, a Division of Federal Insurance Company, marked
18  for identification, as of this date.)
19    Q.    So Exhibit 23 is before you.  Do we
20  agree it includes an agreement with an effective date
21  of January 1, 1998 between Chubb National Insurance
22  Company and Chubb & Son, a Division of Federal
23  Insurance Company, as well as an addendum with an
24  effective date of December 23, 2007?
25    A.    Yes.

Page 58

1    Q.    And to the best of your knowledge, this
2  is a complete management/service agreement between
3  Chubb National Insurance Company and Chubb & Son, a
4  Division of Federal?
5    A.    Yes, to the best of my knowledge.
6    Q.    Okay.  And as I've asked again, under
7  this agreement, Chubb & Son, a Division of Federal,
8  has the authority to effect, sign, countersign,
9  issue, all policies or contracts of insurance issued
10 in the name of Chubb National Insurance Company,
11 agreed?
12   A.    Agreed.
13        (Exhibit 24, Agreement and Addendums
14 Between Executive Risk Specialty Insurance Company
15 and Chubb & Son, a Division of Federal Insurance
16 Company, marked for identification, as of this date.)
17   Q.    Exhibit 24 is before you.  Do we agree
18 it includes or it is an agreement dated or effective
19 January 1, 2000 between Executive Risk Specialty
20 Insurance Company and Chubb & Son, a Division of
21 Federal Insurance, as well as an addendum effective
22 January 1, 2005 and an addendum No. 2 effective
23 January 1, 2008 and an addendum No. 3 effective
24 December 31, 2007, and an addendum 4 effective
25 January 1, 2008?

Page 59

1    A.    Agreed.
2    Q.    And to your knowledge, this is the
3  complete agreement for management or services between
4  Executive Risk Specialty Insurance Company and Chubb
5  & Son, a Division of Federal?
6    A.    Yes, to the best of my knowledge.
7    Q.    And do we agree that pursuant to this
8  agreement, Chubb & Son, a Division of Federal, has
9  the authority to effect, sign, countersign and issue
10 all such policies of insurance issued in the name of
11 Executive Risk Specialty Insurance Company?
12   A.    Yes, agreed.
13        (Exhibit 25, Agreement and Addendums
14 Between Executive Risk Indemnity, Inc. and Chubb &
15 Son, a Division of Federal Insurance Company, marked
16 for identification, as of this date.)
17   Q.    So you now have Exhibit 25 before you.
18        Do you?
19   A.    Yes.  I'm sorry.
20   Q.    So we can do this together again.
21        Exhibit 25 includes an agreement between
22 Executive Risk Indemnity, Inc. and Chubb & Son, a
23 Division of Federal, effective January 1, 2000 and
24 addendum No. 2 effective January 2005, although the
25 first page of addendum No. 2 also says effective the

Page 60

1  first day of January 2008, as well as addendum No. 3
2  effective December 31, 2007.  Agreed?
3    A.    Yes, yes.
4    Q.    And then to the best of your knowledge,
5  this is the complete agreement on this subject matter
6  between Executive Risk Indemnity and Chubb
7  Insurance -- I'm sorry, and Chubb & Son, a Division
8  of Federal?
9    A.    Yes, to the best of my knowledge.
10   Q.    And do we agree that pursuant to this
11 agreement, Chubb & Son, a Division of Federal, is
12 empowered to effect, sign, countersign, issue all
13 polices or contracts of insurance issued in the name
14 of Executive Risk Indemnity?
15   A.    Yes, agreed.
16        (Exhibit 26, Agreement and Addendum
17 Between Great Northern Insurance Company and Chubb &
18 Son, a Division of Federal Insurance Company, marked
19 for identification, as of this date.)
20   Q.    With Exhibit 26 before you, let's go
21 through it.
22        This includes an agreement dated
23 January 1, 1998 between Great Northern Insurance
24 Company and Chubb & Son, a Division of Federal
25 Insurance Company, plus an addendum effective

Page 61

1  December 31, 2007.  Agreed?
2    A.    Agreed.
3    Q.    And to your knowledge, this is the
4  complete agreement on this subject matter between
5  Great Northern Insurance Company and Chubb & Son, a
6  Division of Federal?
7    A.    To the best of my knowledge, yes.
8    Q.    And pursuant to this agreement, Chubb &
9  Son, a Division of Federal, is empowered to effect,
10 sign, countersign, and issue all policies or
11 contracts of insurance and reinsurance issued in the
12 name of Great Northern Insurance Company.  Agreed?
13   A.    Agreed.
14        (Exhibit 27, Agreement and Addendum
15 Between Chubb Insurance Company of New Jersey and
16 Chubb & Son, a Division of Federal Insurance Company,
17 marked for identification, as of this date.)
18   Q.    So Exhibit 27 before you, do we agree
19 that we have a management agreement made this first
20 day of January 1998 as well as an addendum effective
21 December 31, 2007 between Chubb Insurance Company of
22 New Jersey and Chubb & Son, a Division of Federal,
23 agreed?
24   A.    Agreed.
25   Q.    Okay.  And to the best of your

Page 62

1  knowledge, this is the complete agreement for
2  management services between Chubb Insurance Company
3  of New Jersey and Chubb & Son, a Division of Federal?
4      A.    Agreed, yes.  To the best of my
5  knowledge.
6      Q.    And do we agree that pursuant to this
7  agreement, the manager, Chubb & Son, a Division of
8  Federal, has the power to bind, sign, countersign and
9  issue all policies of insurance or contracts issued
10 in the name of Chubb Insurance Company of New Jersey?
11     A.    Agreed.
12           (Exhibit 28, Service Agreement Between
13 Chubb & Son, Inc. of Illinois and Federal Insurance
14 Company, marked for identification, as of this date.)
15     Q.    Do we agree, Mr. Taylor, that Exhibit 28
16 is a service agreement so titled between Chubb and --
17 between Chubb & Son, Inc. of Illinois and Federal
18 Insurance Company effective January 1, 1998?
19     A.    I agree.
20     Q.    Okay.  And then as we go on in the
21 document, Chubb & Son, Inc., do we agree that Chubb &
22 Son, Inc., is not Chubb & Son, a Division of Federal?
23     A.    Agreed.
24     Q.    Okay.  And then we have Chubb & Son,
25 Inc. which is referred to as CCM, and acknowledges in

Page 63

1  the whereas clause that it has a service agreement
2  with Chubb Custom Insurance, agreed?  You see in that
3  first whereas clause?
4      A.    You're talking about the second
5  paragraph on the first page?
6      Q.    I am.
7      A.    I'm sorry, can you repeat the question.
8      Q.    Yeah.  I just want to walk through the
9  document so we both have a similar understanding.
10     A.    Okay.
11     Q.    So you see in the second paragraph --
12 well, in the first paragraph, Chubb & Son, Inc. is
13 hereafter collectively designated as CCM?
14     A.    Okay.  Yes.
15     Q.    All right.  Then in the next paragraph,
16 CCM has a service agreement with Chubb Custom
17 Insurance Company.  And the next paragraph, Federal
18 provides operations services for insurance companies.
19 And the next paragraph, CCM believes the services
20 provided under this agreement will result in greater
21 efficiency and economy of operation for itself and CI
22 and CCIC.
23           Now, therefore, Federal shall provide
24 the facilities and services to CCM, meaning Chubb &
25 Son, Inc., and is it true through this agreement,

Page 64

1  then, that -- so the -- by way of this agreement, the
2  services provided to Chubb Custom Insurance, are
3  provided by Federal under this agreement of Federal
4  with Chubb & Son, Inc.?
5           MR. FLEMING:  That question was unclear.
6  I mean, at some point, I think you started another
7  question and it was unclear when you did that.  You
8  just want him to confirm that you were reading
9  something --
10          MR. HINDERAKER:  I want to -- no.  Let's
11 start over again.
12     Q.    I want to have your understanding of
13 Exhibit 28.
14           Paragraph 1 says that Federal shall
15 provide facilities and services to CCM, agreed?
16     A.    I don't see that in paragraph 1.
17     Q.    1, quote --
18     A.    Oh, I'm sorry.  I'm looking at the very
19 first paragraph.  I apologize.
20     Q.    Paragraph numbered 1, "Federal shall
21 provide facilities and services to CCM."
22     A.    Correct.
23     Q.    Okay.  And under the second paragraph,
24 the first whereas clause, we know that CCM has a
25 service agreement with Chubb Custom Insurance

Page 65

1  Company.
2      A.    I'm sorry, where are you again?  This
3  is --
4      Q.    Right here.
5      A.    This is confusing a little bit.  Oh, the
6  second paragraph.  I'm sorry, correct.
7      Q.    All right.  And is it your understanding
8  that by way of this agreement, 28, Federal provides
9  facilities and services to CCM through which, CCM
10 provides -- through which, CCM meets its service
11 agreement obligations with Chubb Custom Insurance?
12     A.    Correct.
13     Q.    In your preparation for the deposition
14 today, did you see the service agreement between CCM
15 and Chubb Custom Insurance Company?
16     A.    No.
17     Q.    As a practical matter, do you have any
18 reason to suggest that the services provided to Chubb
19 Custom Markka by Federal through CCM are any
20 different than the kind of services provided by Chubb
21 & Son and the various other agreements we've looked
22 at?
23     A.    No, not to the best of my knowledge.
24          MR. HINDERAKER:  I just have to take a
25 couple minute break.  There is a couple of documents

Page 66

1  that I'm not finding or they got lost between here
2  and there.
3              THE VIDEOGRAPHER:  The time is
4  10:50 a.m. and we're going off the record.
5              (Discussion off the record.)
6              (Exhibit 29, Service Agreement and
7  Addendum Between Chubb Lloyd's Insurance Company of
8  Texas and Federal Insurance Company, marked for
9  identification, as of this date.)
10             THE VIDEOGRAPHER:  The time is
11 11:05 a.m. and we're back on the record.
12       Q.     The court reporter has put in front of
13 you, Mr. Taylor, Exhibit 29.  And as we've done with
14 the others, let's identify its components.
15             We have a service agreement between
16 Chubb Lloyd's Insurance Company of Texas and Federal
17 Insurance Company, signed the first day of January,
18 1998, as well as addendum No. 2, on its facing page
19 saying effective first day of January -- I'm sorry,
20 being -- addendum No. 2 being effective December 31,
21 2007; and to your best knowledge, is this the
22 complete agreement between Chubb Lloyd's Insurance
23 Company of Texas and Federal Insurance Company?
24       A.     Yes, to the best of my knowledge.
25       Q.     Okay.  And do we agree that pursuant to

Page 67

1  this Exhibit 29 -- actually, do we agree that
2  paragraph No. 2 on the bottom of the third page and
3  the fourth page, that Federal shall provide all
4  facilities, services and personnel necessary to
5  conduct all the operations of Lloyd's, agreed?
6        A.     Correct, that's what it says.
7        Q.     And that's the authority that this
8  agreement grants to Federal?
9        A.     Correct.
10       Q.     Are you aware -- to your best knowledge,
11 are all of the management and service agreements we
12 just went through effective today as well?
13       A.     Yes, with the exception of Texas Pacific
14 Insurance Company, because that no longer exists.
15       Q.     Okay.  Thank you.
16             And while Texas Pacific Insurance
17 Company no longer exists, were all of its operations
18 brought in to Pacific Indemnity?
19       A.     Correct.  Pacific Indemnity was the
20 surviving company.
21             (Exhibit 30, Services Agreement and
22 Addendums Between Federal Insurance Company and Chubb
23 Insurance Company of Canada, marked for
24 identification, as of this date.)
25       Q.     And let's look at Exhibit 30 together,

Page 68

1  sir.
2              If we -- this time, let's start from the
3  front of the document.
4        A.     Okay.
5        Q.     So we have a services agreement
6  effective January 1, 1998 between Federal Insurance
7  Company and Chubb Insurance Company of Canada as well
8  as an addendum effective December 31, 2007 and an
9  addendum No. 2 effective January 1, 2008, and then on
10 the Bates numbered page 5, there's another addendum
11 effective December 31, 2007.  Agreed?
12       A.     Yes.
13       Q.     And to the best of your knowledge, is
14 this the complete service agreement with Chubb
15 Insurance Company of Canada?
16       A.     To the best of my knowledge, yes.
17       Q.     Did you tell us already, and forgive me
18 if you have, did you tell us that Chubb Insurance
19 Company of Canada as of today, is no longer a
20 wholly-owned subsidiary of Federal?
21       A.     I don't recall if I said that or not, to
22 be honest.
23       Q.     Is it true that Chubb Insurance Company
24 of Canada as of today is no longer -- is not a
25 wholly-owned subsidiary of Federal?

Page 69

1        A.     I don't know.
2        Q.     Okay.  We'll look at some other
3  documents that maybe will help us on that.
4        A.     Okay.
5        Q.     To the best of your knowledge, is this
6  agreement, this agreement, Exhibit 30, in full force
7  and effect today?
8        A.     I don't know.  To the best of my
9  knowledge.
10       Q.     To the best of your knowledge, it is?
11       A.     To the best of my knowledge it is, yes,
12 but I don't know for sure.
13             (Exhibit 31, Service Agreement and
14 Amendments Between Chubb Insurance Company of
15 Australia Limited and Chubb & Son, a Division of
16 Federal, marked for identification, as of this date.)
17       Q.     Well, let's start at the front of this
18 document as well.  That Exhibit 31 includes an
19 amendment No. 3 effective January 1, 2008 and
20 amendment No. 2 effective December 31, 2007 plus
21 amendment No. 1, and that is signed by Chubb & Son, a
22 Division of Federal, on July 31, 2002; and then
23 beginning on Bates numbered page 6, we have a service
24 agreement.  Agreed?
25       A.     Agreed.

Page 70

1    Q.    All right.  And to the best of your
2  knowledge, this is the complete service agreement
3  between Chubb Insurance Company of Australia Limited
4  and Chubb & Son, a Division of Federal Insurance
5  Company?
6    A.    Yes, to the best of my knowledge.
7    Q.    Is it true that as of today, Chubb
8  Insurance Company of Australia is not a wholly-owned
9  subsidiary of Federal Insurance Company?
10   A.    Correct.
11   Q.    Do you know if agreement -- this
12 agreement, Exhibit 31, continues in full force and
13 effect as of today?
14   A.    No, I do not.
15   Q.    You don't know one way or the other?
16   A.    Correct.
17   Q.    You don't know that it's not, either?
18   A.    Correct.
19   Q.    Okay.
20         (Exhibit 32, Service Agreement and
21 Amendment Between Federal Insurance Company and ACE
22 American Insurance Company, marked for
23 identification, as of this date.)
24   Q.    So let's look at Exhibit 32.  So
25 Exhibit 32 includes, if we look at the Bates numbered

Page 71

1  3, a service agreement effective March 14, 2016
2  between Federal Insurance Company and ACE American
3  Insurance Company as well as an amendment that is
4  dated on the second page, February 22, 2018.
5          Have I accurately described Exhibit 32?
6    A.    Yes.  Yes.
7    Q.    And to your knowledge, is this the
8  complete agreement between Federal Insurance Company
9  and ACE American Insurance Company with respect to
10 the subject matter of this services agreement?
11   A.    To the best of my knowledge, yes.
12   Q.    Okay.  Now, for context, we agree that
13 March 14, 2016 is post-merger?
14   A.    Agreed.
15   Q.    So I would like to get your
16 understanding of the service agreement before moving
17 to your understanding of amendment No. 1.  Let's see
18 if we can read it together.
19         The first whereas clause tells us that
20 the parties, Federal Insurance Company and ACE
21 American Insurance Company, provide services to each
22 other under this agreement.  So far, correct?
23   A.    Correct.  That's what it says.
24   Q.    Okay.  And that when services are
25 provided, the agreement calls that entity the service

Page 72

1  provider, and when services are received, the
2  agreement calls that entity service recipient,
3  agreed?
4    A.    Correct.  That's what the document says.
5    Q.    Okay.  So under this agreement, services
6  can be provided between Federal Insurance Company and
7  ACE American Insurance Company; and if they're the
8  recipient, they'll call it service recipient, if
9  they're provider, they'll call it service provider?
10   A.    Correct.  That's what the agreement
11 says.
12   Q.    And then if we go to the back end of the
13 exhibit, there is addendum A, and we agree that --
14        MR. FLEMING:  What Bates stamp are we
15 talking about?
16        MR. HINDERAKER:  I was talking about
17 Bates No. 12.
18        MR. FLEMING:  I don't have 12.
19        MR. HINDERAKER:  You don't?
20        THE WITNESS:  The very last page.
21        MR. FLEMING:  Oh, Bates stamp.  I got
22 it.  Okay.  I was looking at page, not Bates stamp.
23        MR. HINDERAKER:  Okay.  Now you have it?
24        MR. FLEMING:  I do.
25   Q.    So look at the service agreement

Page 73

1  paragraph numbered 1.  It tells us that such services
2  are set forth in addendum A to this agreement.
3    A.    I'm sorry, where are you at?
4    Q.    Paragraph No. 1, performance standards
5  for services.
6    A.    Okay.  Thank you.
7    Q.    And then the agreement includes an
8  addendum A that identifies the services of this
9  agreement, correct?
10   A.    Yes, it does appear to, yes.
11   Q.    And then your Exhibit 32 has an addendum
12 A and a list of services, correct?
13   A.    Correct.
14   Q.    All right.  Then we have amendment No.
15 1, and by the way, have you seen this document
16 before?
17   A.    Not that -- no, not that I recall.
18   Q.    Okay.  Let's see if your understanding
19 is similar to mine.
20        It has some whereas clauses, and then
21 "So now, therefore, the parties agree as follows; the
22 following entities shall be added to the agreement as
23 service recipients of ACE American."  And then it
24 lists a number of entities.  You see that?  And all
25 of the entities that it lists are wholly-owned

Page 74

1   subsidiaries of Federal Insurance, correct?
2       A.      At what time period?
3       Q.      Well, before the merger and after the
4   merger.
5       A.      That is I believe incorrect.
6       Q.      Which one is not -- which one or ones is
7   not a wholly-owned subsidiary of Federal after the
8   merger?
9       A.      I believe we said before Great Northern
10  and Executive Risk.
11      Q.      Well, I hadn't understood -- okay. With
12  those exceptions, all the other entities are
13  wholly-owned subsidiaries of Federal before and after
14  the merger?
15      A.      Technically, Lloyd's is not a
16  subsidiary. It's an affiliated company.
17      Q.      Okay. Any other qualifications to my
18  question?
19      A.      No.
20      Q.      Okay. And the amendment, this amendment
21  No. 1, as we said, is effective January 1st, 2018.
22          So do you have an understanding of how
23  this amendment No. 1 affects the service agreements
24  that we've looked at between Chubb & Son, a Division
25  of Federal, or between Federal and these various

Page 75

1   entities and all of these entities?
2       A.      I'm not sure it would have any impact.
3       Q.      Okay. And why do you say that?
4       A.      The agreements are still -- the other
5   agreements are still in place.
6       Q.      Okay. And do you know one way or the
7   other whether, by way of Exhibit 32, ACE American
8   Insurance Company is providing the services to these
9   other entities that meet Federal's obligations under
10  its contracts?
11      A.      Could you repeat that.
12      Q.      Sure. We just looked at a number of
13  service management agreements between Federal or
14  Chubb & Son, a Division of Federal. You just said
15  that all of those management service agreements to
16  your knowledge still exist.
17          And my question is whether you
18  understand that -- and I'm not saying -- whether you
19  understand one way or another, that pursuant to
20  amendment No. 1 to this service agreement 32, all of
21  the services that Chubb & Son, a Division, or Federal
22  provided to those various entities, is now being --
23  is now being met by ACE American Insurance Company.
24          Do you understand that question?
25      A.      I understand that -- I understand that

Page 76

1   question. I'm not -- I forget the exact date, but
2   now Federal no longer has employees. Employees were
3   moved to ACE American at -- I believe it was 1/1/17.
4       Q.      So as of, let's say, as of today, the
5   services and management obligations that Federal or
6   Chubb & Son, a Division of Federal, provided to these
7   various entities, those management and services are
8   now being provided to these various entities by way
9   of ACE American Insurance providing those services to
10  Federal?
11          I think I could try to make this more
12  simple.
13          ACE American Insurance provides listed
14  services to Federal. And by way of doing that, meets
15  Federal's obligations to the various entities under
16  Federal -- Chubb & Son's, a Division of Federal's,
17  management services agreement?
18          MR. FLEMING: Objection, multiple
19  questions.
20      A.      ACE American -- to the best of my
21  knowledge, yes, I would agree with that. ACE
22  American provides services to Federal.
23      Q.      Okay. Same set of services that Federal
24  was, and is obligated under those contracts, assuming
25  its in full force and effect, to provide to the other

Page 77

1   named insurance entities?
2       A.      The services are listed in --
3       Q.      Addendum A?
4       A.      -- addendum A.
5       Q.      Yeah. Okay.
6           So as you've told us, Federal Insurance
7   Company, effective January 1, 2017, has no employees,
8   today -- well, effective January -- let me back up.
9           Today, does Federal insurance Company
10  own any property, assets?
11          MR. FLEMING: Objection, outside the
12  scope, it's not covered by any of the topics we
13  agreed upon for this witness.
14          MR. HINDERAKER: Understood.
15      A.      Could you repeat that. I'm sorry.
16      Q.      Were all of the -- were all of the --
17  all of the assets, all of the properties of Federal
18  Insurance Company, acquired by American Insurance
19  Company?
20          MR. FLEMING: Same objection.
21      A.      No.
22      Q.      Okay. How did it come to pass that
23  Federal Insurance Company has no employees?
24          MR. FLEMING: Same objection.
25      A.      That was above my pay grade.

Page 78

1      Q.     Okay.  Do you know what -- do you know
2  if there was -- okay.  You just don't know?
3      A.     I don't know.
4      Q.     We were told a couple of days ago that
5  Chubb & Son, a Division of Federal, has pre-merger
6  computer servers that were located in North Carolina,
7  and those services were supported by Federal,
8  employees of Chubb & Son, a Division of Federal,
9  employees.
10            After January 1st, 2017, do you know who
11 owns those servers in North Carolina?
12            MR. FLEMING:  Same objection.  Outside
13 the scope, not conceivably covered by any of these
14 topics.
15     A.     No.
16     Q.     Okay.  And as of January 1st, 2017, did
17 all of the employees of Federal or Chubb & Son, a
18 Division of Federal, become employees of ACE American
19 Insurance Company?
20            MR. FLEMING:  Same objection.
21     A.     To the best of my knowledge.
22            (Exhibit 33, Federal Insurance Company
23 Organizational Chart, marked for identification, as
24 of this date.)
25     Q.     We're going to talk about something else

Page 79

1  now.
2             Exhibit 33 is a blow up of another
3  document that was produced to us in the litigation,
4  Federal 004420_001.  You can look at the original if
5  you want, but I think the bigger blow up is easier,
6  so we agree we're looking at a document where, in the
7  key at the right hand bottom, it says as of
8  December 31, 2008.  With me so far?
9      A.     Yes.
10     Q.     Agreed.  Okay.  And then I would like
11 you to confirm that to the best of your knowledge, as
12 of December 31, 2008, this exhibit is giving us the
13 organizational structure of Federal Insurance
14 Company.
15     A.     To the best of my knowledge.  That's
16 what the document says.
17     Q.     Okay.  And so for context later on, we
18 can -- can we agree that as of the end of December,
19 2008, Chubb Insurance Company of Europe, Chubb
20 Insurance Company of Canada, and Chubb Insurance
21 Company of Australia Limited are all wholly-owned
22 subsidiaries of Federal?
23     A.     That's what the chart indicates, yes.
24            (Exhibit 34, 2013 Chubb Corporation Year
25 End Statement, marked for identification, as of this

Page 80

1  date.)
2      Q.     Okay.  Mr. Taylor, Exhibit 34 is a
3  document that was produced to FICO in the context of
4  litigation as Federal 000060_0001 and 2, and take
5  your time that you would like.  I'll represent that
6  the -- it is an exhibit from -- a year end statement
7  of the Chubb Corporation December 31, 2013.  And I
8  would like you to confirm that it accurately
9  identifies those subsidiaries of -- the wholly-owned
10 subsidiaries of Federal as of its date.
11     A.     Yes, it appears to.
12     Q.     All right.  Exhibit 34 includes as a
13 subsidiary, Chubb Capital Limited, and I'll represent
14 that was not in the December 31, 2008 document.
15            Do you know if Chubb Capital Limited has
16 been -- is in the sale of selling insurance?
17     A.     No, I do not.
18     Q.     Don't know one way or the other?
19     A.     No, I do not.
20     Q.     Okay.
21            (Exhibit 35, 2014 Chubb Corporation Year
22 End Statement, marked for identification, as of this
23 date.)
24     Q.     Mr. Taylor, Exhibit 35 is a very similar
25 agreement only for the time period December 31, 2014.

Page 81

1             And to the best of your knowledge, does
2  this accurately show the wholly-owned subsidiaries of
3  Federal Insurance Company as of this time frame?
4      A.     Yes, it appears to.
5             (Exhibit 36, 2016 Chubb Limited 10-K,
6  marked for identification, as of this date.)
7      Q.     Do we agree that Exhibit 36 is a 10-K
8  submission to the United States Securities and
9  Exchange Commission for the period ending December 31,
10 2016 on behalf of Chubb Limited?
11     A.     Correct, it appears that.
12            (Exhibit 37, 2016 Chubb Limited 10-K
13 Excerpt, marked for identification, as of this date.)
14     Q.     Exhibit 37, you'll see from the first
15 page, says it is a sub document, Exhibit 21.1, and
16 I'll represent that it is from the December 31, 2016
17 10-K that we just identified as Exhibit 36.  If you
18 would like to confirm that, feel free.  If you're
19 willing to -- or are willing to accept my
20 representation, we'll move on.
21     A.     I will accept your representation.
22     Q.     All right.  And so then if we go to the
23 Bates numbered page 6.
24            Do we agree that this states the
25 wholly-owned subsidiaries of Federal Insurance

Page 82

1  Company as of year end 2016?
2      A.    It appears to, yes.
3      Q.    To the best of your knowledge, it does?
4      A.    To the best of my knowledge, it appears
5  to, yes.
6      Q.    Okay.  So do we agree that as of
7  December 31, 2016, Chubb Insurance Company of Europe
8  SE is not a Federal subsidiary?
9      A.    I'm sorry, as of what -- what date?
10     Q.    This document is an SEC report for the
11 year ending December 31, 2016.
12     A.    Okay.
13     Q.    And so my question was to have you
14 confirm that as of the date of this -- as of the time
15 frame for reporting, that is, December 31, 2016,
16 Chubb Insurance Company of Europe is not a Federal
17 subsidiary.
18     A.    Correct.  It appears that way, based on
19 this document.
20     Q.    And why don't we go to the Bates
21 numbered 10.
22           And at the top, do you read this
23 document as telling us that Chubb Insurance Company
24 of Europe SE is, as of this time, a subsidiary of
25 Chubb Insurance Investment Holdings Limited?

Page 83

1      A.    It appears to be based on this document,
2  correct.
3      Q.    And based on this document, Chubb
4  Insurance Investment Holdings Limited is a subsidiary
5  of Chubb INA Overseas Holdings, Inc.?
6      A.    Based upon this document, it appears to
7  be, yes.
8      Q.    Okay.
9           (Exhibit 38, Multi-Page Document, marked
10 for identification, as of this date.)
11     Q.    Have you seen Exhibit 38 before?
12     A.    It looks familiar.
13     Q.    Okay.  In what context do you recall
14 seeing it?
15     A.    Just my normal day-to-day activities.
16     Q.    Got it.  All right.
17           Let us -- if I can direct your attention
18 to the Bates numbered page 13.
19           And keep your finger on 13 and then for
20 context of the question, Exhibit 38 says on its face
21 as of September 30, 2016.  Okay?
22     A.    Agreed.
23     Q.    So can we agree looking at Bates
24 numbered page 13, that as of September 30, 2016,
25 Chubb Insurance Company of Europe SE is a subsidiary

Page 84

1  of Federal?
2      A.    Agreed.  It appears that way in this
3  document, yes.
4      Q.    Okay.  So can we agree that sometime
5  between September 30, 2016 and December 31, 2016,
6  Chubb Insurance Company of Europe was no longer a
7  subsidiary of Federal?
8      A.    Based upon these documents, yes, I would
9  agree.
10     Q.    Okay.  And as of -- and as of today,
11 Chubb Insurance Company of Europe SE is not a
12 subsidiary of Federal?
13     A.    To the best of my knowledge, nothing has
14 changed.
15     Q.    Okay.  Let's go back to Exhibit 37, and
16 if I could put you to Bates numbered page 6.  And
17 again, as a reminder, Exhibit 37 is speaking for the
18 time period ending December 31, 2016.
19           So looking at Bates page numbered 6, do
20 we agree that Chubb Insurance Company of Canada is
21 not a Federal subsidiary?
22     A.    Agreed, based upon this document, yes.
23     Q.    Okay.  And then if we go to Bates
24 numbered page 11 in the same exhibit, do we agree
25 that Chubb Insurance Company of Canada is a

Page 85

1  wholly-owned subsidiary of Chubb Holdings Canada
2  Limited?
3      A.    Agreed, based upon this document, yes.
4      Q.    Okay.  And then based upon this
5  document, do we agree that Chubb Holdings Canada
6  Limited is itself a subsidiary of Chubb Canada
7  Holdings, Inc.?
8      A.    Agreed, based upon this document.
9      Q.    And then let's go back to Exhibit 38.
10 Which, for context, is as of September 30, 2016.  If
11 we go to page Bates numbered 17.
12           Do we agree that Chubb Insurance Company
13 of Canada is not a subsidiary of Federal as of
14 September 30, 2016?
15     A.    Agreed, based upon this document.
16     Q.    And do we agree that Chubb Insurance
17 Company of Canada is not a subsidiary of Federal
18 today?
19     A.    To the best of my knowledge.
20     Q.    Let's return to Exhibit 37.  Go to Bates
21 numbered page 6.
22           Do we agree that Chubb Insurance Company
23 of Australia is not a subsidiary of Federal as of
24 December 31, 2016?
25     A.    Agreed, based upon this document.

Page 86

1      Q.     Okay.  And then let's go to Exhibit 38.
2  Go to Bates numbered page 5.
3            Based on this document, do we agree that
4  Chubb Insurance Company of Australia Limited became a
5  wholly-owned subsidiary of Chubb Holdings Australia
6  PTY effective April 1, 2016?
7      A.     Agreed, based upon this document.
8      Q.     Okay.  So based upon this document, we
9  can say that at least as of April 1st, 2016, Chubb
10 Insurance Company of Australia was not a wholly-owned
11 subsidiary of Federal?
12     A.     Based upon this document, yes.
13     Q.     Okay.  And do you have any reason to
14 disagree with information on the document?
15     A.     None that I'm aware of, no.
16     Q.     Okay.  And speaking of today, Chubb
17 Insurance Company of Australia Limited is not a
18 wholly-owned subsidiary of Federal?
19     A.     Correct, to the best of my knowledge,
20 yes.
21     Q.     Continuing on with this corporate
22 structural organization, if you've told me this, I
23 apologize, but let me confirm that ACE American
24 Insurance Company is not a subsidiary of Federal?
25     A.     That's correct.

Page 87

1      Q.     ACE American Insurance Company is a
2  sister to Federal; is that correct?
3      A.     It's an affiliate.  I'm not sure what
4  you mean by sister.
5      Q.     Okay.  An affiliate?
6      A.     An affiliate.
7      Q.     Federal Insurance Company and ACE
8  American Insurance Company have a common parent?
9      A.     Ultimate common parent, yes.
10     Q.     Ultimate through -- ultimately a common
11 parent called today Chubb Limited?
12     A.     Correct.
13            MR. HINDERAKER:  I'm just going to make
14 this an exhibit.
15            (Exhibit 39, 2017 Chubb Limited 10-K,
16 marked for identification, as of this date.)
17            MR. HINDERAKER:  Exhibit 39, let me
18 represent, is a Chubb Limited 10-K for the period
19 ending December 31, 2017.  I did not bring other
20 copies because I wanted to keep your load light
21 carrying home.
22     Q.     And I don't have any more questions
23 about it, but I just wanted you to authenticate that
24 Exhibit 39 is a 10-K for the year ending 2017.
25     A.     It appears to be, based on the document.

Page 88

1      Q.     Okay.  The whole point of that is this.
2            (Exhibit 40, 2017 Chubb Limited 10-K
3  Excerpt, marked for identification, as of this date.)
4      Q.     I'm going to represent to you that
5  Exhibit 40 is a schedule or an exhibit from the
6  December 31, 2017 10-K that I just showed you.  And
7  if you would like to confirm that, you have the 10-K
8  to do that.  And if you want to take my
9  representation, that will be fine, too.
10     A.     Just as with everything else, all the
11 other documents we reviewed, I'll take your
12 representation.
13     Q.     Okay.  Fair enough.
14            And we agree that Exhibit 40 includes,
15 beginning on -- at page 5 of 19, the identification
16 of the wholly-owned subsidiaries of Federal Insurance
17 Company as of the time period December 31, 2017?
18     A.     It appears to, correct, yes.
19     Q.     Okay.
20            MR. HINDERAKER:  Let's go off the record
21 for a second.
22            THE VIDEOGRAPHER:  The time is
23 11:58 a.m. and we're going off the record.
24            (Discussion off the record.)
25            (Exhibit 41, 2015 and 2016 Federal

Page 89

1  Insurance Company and its U.S. Insurance
2  Subsidiaries' Audited Consolidated Financial
3  Statements, marked for identification, as of this
4  date.)
5            THE VIDEOGRAPHER:  The time is 12:09
6  p.m. and we're back on the record.
7            MR. HINDERAKER:  I've had marked as
8  Exhibit 41 Federal Insurance Company and its U.S.
9  Insurance Subsidiaries' audited consolidated
10 financial statements, years ending December 31, 2016
11 and 2015.
12     Q.     Are you familiar with this document?
13     A.     Yes, I am.
14     Q.     Did you have a role in preparing it?
15     A.     Yes, I did.
16     Q.     And were you one of the responsible
17 people in having it submitted to the NAIC?
18     A.     They fell under my management, yes.
19     Q.     And for the record, would you define the
20 acronym NAIC.
21     A.     National Association of Insurance
22 Commissioners.
23     Q.     So we agree that Exhibit 41 is an
24 audited statement prepared by PWC?
25     A.     It appears to be.

JOHN TAYLOR - 08/02/2018          Pages 90..93

Page 90

1    Q.    Okay.  Would you look at page 8, please,
2    8 of the document.  And you see there is a note No.
3    3.
4    A.    Yes.
5    Q.    And you'll see that the consolidated
6    financial statements have been prepared in accordance
7    with the National Association of Insurance
8    Commissioner accounting practices and procedures
9    manual, with the exception of the permitted practice
10   described below.
11          If you can, can you tell me are there
12   material differences between the accounting practices
13   and procedures required by the NAIC for reporting and
14   Generally Accepted Accounting principles?
15          MR. FLEMING:  Again, outside the scope
16   of the topics that we agreed upon prior to the
17   deposition under Rule 30(b)6 topics.
18          MR. HINDERAKER:  Maybe it is, but that
19   doesn't matter.
20   Q.    Go ahead.
21   A.    There are some differences between U.S.
22   statutory and U.S. GAAP reporting.  Was that your --
23   -- what was your question?
24   Q.    Whether the differences are material.
25   And I mean, are they material to the accuracy of the

Page 91

1    final reporting?
2          MR. FLEMING:  Foundation and beyond the
3    scope.
4    A.    These statements are materially correct
5    as presented in accordance with U.S. statutory
6    reporting.
7    Q.    Okay.  And do you know how -- do you
8    know what differences there are between the U.S.
9    statutory reporting and GAAP as it relates to
10   reporting the financial performance of Federal and
11   its subsidiaries?
12          MR. FLEMING:  Same objection.  It's
13   beyond the scope of topics you identified in your
14   Rule 30(b)6 notice.
15   A.    There are -- I'm trying to think.  There
16   are certain aspects that are treated as not admitted
17   for statutory, but the focus of statutory is the
18   obligations of policy -- the policy holder
19   obligations to pay claims to policy holders.  The
20   objective of GAAP is somewhat different.  It's to
21   present -- it's to present things in a more ongoing
22   operations-type manner.
23   Q.    Thank you.  I appreciate that
24   background.
25          Let me direct you to page 5.

Page 92

1    A.    It goes from 4 to 6.
2    Q.    Okay.
3          MR. HINDERAKER:  Do you have a page 5?
4          (Discussion held off the record.)
5          MR. HINDERAKER:  Well, let's do the best
6    we can.
7          You can use my copy.  We will use my
8    copy if we have to.
9          You know what I'll do is I will
10   supplement the record with making -- I'll get a full
11   copy of Exhibit 41 to the court reporter.  I
12   apologize for that mess up.
13   Q.    On page 5 there is a heading
14   underwriting, and then premiums earned, and it gives
15   me --
16          MR. FLEMING:  Can I see.
17          MR. HINDERAKER:  Yeah, of course.
18   Q.    I would like the definition of premiums
19   earned, that category.
20          MR. FLEMING:  Same objection.  That's
21   not within any of the topics identified in the Rule
22   30(b)6 notice.  It's beyond that.  This witness was
23   not prepared to respond to questions outside of those
24   topics.
25   Q.    Mr. Taylor, can you tell me from your

Page 93

1    knowledge what premium earned means on this report.
2    A.    It is the premium earned to match the
3    risk to -- the premium earned over the year which
4    would coincide with how a policy term runs.
5    Q.    Earlier in the day, you told us what the
6    differences was between earned premium and direct
7    premium.
8          So is this statement premium earned a
9    different way of saying earned premium?
10   A.    Correct.
11   Q.    Okay.  And as reported on page 5, this
12   is reporting in thousands, so one of the numbers
13   would be 8 billion, something, 8 billion 103,000?
14   A.    Correct.
15   Q.    Okay.  Then I have to give you
16   unfortunately another out page, page 7; and it has
17   premiums net of commission and reinsurance.  And so
18   I'll give you the page of it.
19          My question is going to be when it says
20   premiums --
21          MR. FLEMING:  Can I see it first.
22          MR. HINDERAKER:  Sure.
23          MR. FLEMING:  My question is what is
24   your plan with regard to this exhibit?  You're going
25   to make a copy of it and replace it?

Page 94

1         MR. HINDERAKER:  Yeah.
2    Q.   Okay.  I had the question in mind for a
3  lot of it.  One of the descriptors there is premium.
4         So my question is when it says premium
5  on this report, is that the same thing as direct
6  premium that you told us earlier, that you defined
7  for us earlier?
8         MR. FLEMING:  Again, I'm objecting
9  beyond the scope of the topics.
10        MR. HINDERAKER:  You can have a
11 continuing objection.
12        MR. FLEMING:  I know that, but beyond
13 the scope of the topics you identified to this
14 witness was going to testify on.  It's not covered by
15 any one of them.
16        MR. HINDERAKER:  Oh, my goodness.
17   A.   This refers to premiums collected.
18   Q.   Premiums collected.  Does that mean
19 premiums on the policy sold and in that reporting
20 year?
21   A.   No, not necessarily.
22   Q.   Okay.  What does it mean that it's
23 premiums collected?
24   A.   Premiums collected from insurance.
25   Q.   Over what time frame?

Page 95

1    A.   Over the time frame of the financial
2  statements.
3    Q.   Okay.  And so the collecting of the
4  premium may not be coincidental with the sale of the
5  policy?
6    A.   It could, yes, or it could not be, yes.
7         MR. HINDERAKER:  I'm just going to note
8  for the record, without belaboring it, that item No.
9  3 on this list of topics is overview of Federal's
10 financial reportings.  Let's continue on.
11   Q.   And I show you page 32.
12        MR. HINDERAKER:  You have 32.  It's an
13 even number.
14   Q.   Do you have a 32?
15   A.   No.
16   Q.   All right.  Here you are.
17        MR. FLEMING:  So we had -- our firm and
18 your firm has a series of agreements back and forth
19 in which we agreed upon -- narrowed the topics that
20 the Rule 30(b)6 deponent were going to testify on,
21 and it was a narrowing or restriction, and this goes
22 beyond the topics ultimately that were agreed upon.
23 There is not one topic where the question you're
24 asking about the definition of these terms is
25 included within that.

Page 96

1         MR. HINDERAKER:  I've heard you
2  repeatedly.  I'm going to carry on.  The notion that
3  a witness cannot testify to his personal knowledge in
4  a 30(b)(6) deposition is simply wrong.  But you can
5  continue to waste our time with that objection and
6  you can have it as a continuing.
7    Q.   So Mr. Taylor, I've shown you page 32
8  and can I refresh myself about that in a minute.
9    A.   Sure.
10   Q.   So is page 32 in the far right end of
11 the page, page 32 reports the consolidated premiums
12 earned of the various subsidiaries of Federal and
13 consolidated and the Federal premiums earned?
14        MR. FLEMING:  So what's the question?
15   Q.   Is that correct?
16   A.   No.
17   Q.   What does page -- what is the -- where
18 it reports on consolidated premiums, what companies
19 are included in that consolidated number?
20   A.   All the companies that are listed.
21   Q.   That was my question.  We're on the same
22 page.
23        And that page and the companies that are
24 listed are Federal and Federal subsidiaries, agreed?
25   A.   This is as of the end of '16.  I don't

Page 97

1  think any -- yeah, I believe so.  I don't think
2  anyone had moved out at that point.
3    Q.   Right.  Now, I would like you to look at
4  the premium -- what's reported as the premiums earned
5  for Vigilant Insurance Company, Chubb Custom
6  Insurance, Chubb National Insurance, Chubb Indemnity,
7  and Executive Risk Specialty Insurance.
8         Would you look at that.
9    A.   Sure.
10   Q.   So again, you do have them in front of
11 you.  So again, it's Vigilant, Chubb Custom, Chubb
12 National, Chubb Indemnity, Executive Risk, those
13 companies.  And when you -- the premium earned for
14 those companies in each instance is what?
15   A.   It's a little blurry, but --
16        MR. FLEMING:  Are you asking him to read
17 the numbers on the page?
18   Q.   In each instance, is the premium earned
19 reported to be $38,001,851?
20   A.   Correct.  It appears to be, yes.
21   Q.   Can you explain to me how five different
22 insurance companies report exactly the same premium
23 earned for the year 2016?
24   A.   This is a net premium number.
25   Q.   How does a net premium number result in

Page 98

1  the exact same number for each of those five -- each
2  of those five companies?
3       A.    There is a -- the company share premium
4  and losses.
5       Q.    So whatever that number was, it got
6  divided by five, and they all had the same report?
7       A.    For those companies that you mentioned,
8  yes.
9       Q.    All right.  Now, this report to the NAIC
10 is the consolidation of United States subsidiaries as
11 we saw, agreed?
12      A.    Correct.
13      Q.    Okay.  Does Federal report on a
14 consolidated basis with respect to the -- with
15 respect to Chubb Insurance Company of Europe, of
16 Canada, and of Australia?
17      A.    Not -- no.
18      Q.    To your knowledge?
19      A.    To the best of my knowledge, no, they
20 don't.  Could you repeat that question.  I'm not
21 sure.
22      Q.    Sure.  Let me back up a little bit.
23            As we said, this is a report to the
24 NAIC?
25      A.    Correct.

Page 99

1       Q.    NAIC governs the United States?
2       A.    Correct.
3       Q.    This report says on its face that it's a
4  consolidated report of Federal and U.S. subsidiaries
5  of Federal.
6       A.    Correct.
7       Q.    I'm asking if Federal, for other
8  purposes, consolidates revenue -- consolidates
9  reports on a consolidated basis including Chubb of
10 Europe SE, Chubb of Canada and Chubb of Australia.
11      A.    No.
12      Q.    Okay.
13            (Exhibit 42, 2016 and 2017 Federal
14 Insurance Company Combined Financial Statements,
15 marked for identification, as of this date.)
16      MR. HINDERAKER:  I think that Exhibit 42
17 suffers from the same efficiency as Exhibit 41.  That
18 is, when copies were made, either the odd or the even
19 page was not copied.
20            So I'm going to give you -- I'm going to
21 give you my copy.
22            Does your have a page 8?  Is it the odd
23 or the even that we're missing?
24      MR. FLEMING:  No.
25      MR. HINDERAKER:  Okay.

Page 100

1       Q.    I have a couple of questions on page 8.
2  So I pointed you to page 8, but let's first agree
3  that Exhibit 42 is Federal Insurance Company's
4  combined financial statement December 31, 2017 and
5  2016 reported to the NAIC.
6       A.    Correct.
7       Q.    Okay.  Go to page 8.  That page 8 lists,
8  identifies the various subsidiaries of Federal who --
9  for whom, this report reports Federal on a
10 consolidated basis?
11      A.    Correct.  It appears to be, yes.
12      Q.    And then there is a statement on page 8
13 of a quote, Federal pool.  Do you see that?
14      A.    Yes.
15      Q.    My question is simply what does that
16 mean?
17      A.    The Federal pool is -- is an agreement
18 between the companies that shares premiums and
19 losses.
20      Q.    Are all the members of the Federal pool
21 Federal subsidiaries, wholly-owned?
22      A.    As of?
23      Q.    As of the reporting date.
24      A.    Yes.
25      Q.    Okay.  Can I have it for a quick moment.

Page 101

1       A.    Sure.
2       Q.    I'm going to give you page 36.  You'll
3  see that page 36 uses the categories written premium,
4  earned premiums, assumed and ceded; and do those
5  terms carry the same meaning that you described for
6  us earlier in the deposition?
7       A.    Yes, they do.
8       Q.    Okay.  And then is it accurate to read
9  the net premium as a function of the direct premium
10 plus assumed, minus ceded; that's just the math,
11 correct?
12      A.    Correct.  There is a presentation,
13 assuming it's an accurate summation.
14      Q.    I'm going to bring you to an exhibit at
15 the end of the exhibit.  It doesn't bear a page.  We
16 can identify it at the top of the page as
17 underwriting income and then premiums earned.  So I
18 think if we start at the page premiums earned at the
19 top, and then I think you have to go to the next page
20 as well, because the various subsidiaries across the
21 columns go onto the next page, agreed?  And then on
22 that second page, we get the consolidated combined,
23 premiums earned.
24      MR. FLEMING:  Let me see if the second
25 page is missing or not.  Yeah, so we're missing a

Page 102

1  number of pages.
2        MR. HINDERAKER:  Yeah.  I'm sure when
3  they photocopied it, you got every other page messed
4  up.
5        Q.    All right.  So we're on that page at the
6  heading premiums earned, and then the columns listed
7  subsidiaries of Federal, and then you go to the
8  second page, more subsidiaries of Federal?
9        A.    Correct.
10       Q.    And then it appears to report on a
11  consolidated basis for Federal?
12       A.    Yes.
13       Q.    If you would, in this instance as well,
14  if you would look at the premiums earned for the same
15  companies, Vigilant, Chubb Custom, Chubb Indemnity,
16  Executive Risk, Chubb National, I think all of
17  those -- each of those companies reports premiums
18  earned in dollars of each other.
19            Is the explanation the same for this
20  report as it was earlier, they are part of a pool?
21       A.    Yes.
22            (Exhibit 43, 2017 Federal Insurance
23  Company Annual Statement, marked for identification,
24  as of this date.)
25       Q.    Can you identify Exhibit 43.

Page 103

1        A.    It is Federal Insurance Company or
2  appears to be Federal Insurance Company's 12/31/2017
3  annual statement.
4        Q.    Is this report also submitted to the
5  NAIC?
6        A.    Yes, it is.
7        Q.    Okay.  Was it prepared for any other
8  purpose?  That is, reporting to anyone else.
9        A.    Well, there are other regulators that it
10  gets submitted to.
11       Q.    Okay.  Would you go to the Bates
12  numbered 8.
13       A.    Okay.
14       Q.    I just want to make sure I understand.
15            There's a column -- there's a column
16  called line of business, and under that, is -- it's
17  reporting various kinds of lines of business,
18  correct?
19       A.    Correct.
20       Q.    And then the column called direct
21  business reports dollar values for lines of business
22  identified.
23            What does direct business mean?
24       A.    The same as it was -- as we discussed
25  before.

Page 104

1        Q.    I don't -- we talked about direct
2  premium.  I don't believe we talked about direct
3  business.
4        A.    This is -- this says premiums written in
5  the -- if you look at the top.
6        Q.    Okay.  Thank you.
7        A.    Sure.
8        Q.    Can you go to Bates numbered 54.
9            MR. FLEMING:  Page 54, you're saying,
10  not Bates stamped number?
11            MR. HINDERAKER:  Bates No. 54.
12       A.    Oh, sorry.  I went to --
13       Q.    I think it's page No. 17 of the
14  document.
15       A.    Thank you.
16       Q.    So you've told us what premiums written
17  mean, and Bates numbered 54, it's reporting gross
18  written premium -- I'm sorry, it's reporting gross
19  premiums written.  And on line 6, there is a total.
20            Just tell me what the -- what the
21  designators for the lines ahead of that mean.  There
22  is liability lines, property lines, and so forth.
23            What -- describe for us in general what
24  those mean.
25       A.    Liability lines, it's giving you a

Page 105

1  reference back to page 8.  So those particular lines
2  of business are defined as liability.
3        Q.    Okay.
4        A.    Same with the other -- it's referring
5  back to -- I think we looked at page 8 before.
6        Q.    So I could go to that page that had the
7  business lines, with each of the rows numbered, and
8  that would, with the use of this page from Bates 54,
9  organize the business lines into these categories?
10       A.    Correct.
11       Q.    Okay.  Okay.  Mighty fine.
12            Let's go to Bates No. 2 -- 0233 through
13  0246.
14       A.    0233 through?
15       Q.    0246.  I just want to confirm that that
16  is the -- that is an organizational chart relative
17  the Federal Insurance Company.
18       A.    Yes.
19       Q.    Okay.
20            (Exhibit 44, 2016 Pacific Indemnity
21  Company Annual Statement, marked for identification,
22  as of this date.)
23       Q.    So looking at Exhibit 44, can you
24  identify -- what is it?
25       A.    It appears to be the 2016 annual

Page 106

1  statement for Pacific Indemnity Company.
2       Q.    And the purpose of -- we just saw a
3  similar one for Federal Insurance.
4             Do each of the subsidiaries of Federal
5  Insurance make reports like this to the NAIC?
6       A.    Yes.
7       Q.    I'm sorry, the U.S. subsidiaries,
8  anyway.
9       A.    The U.S. property and casualty insurance
10  subsidiaries.
11       Q.    Does Federal have any subsidiaries that
12  are solely personal?
13       A.    I'm sorry, say that again.
14       Q.    I'm trying to understand what the
15  distinction is when you say the U.S. property and
16  casualty insurers.
17       A.    For insurance companies.
18       Q.    Okay.  All of the subsidiaries of
19  Federal are property and casualty insurers?
20       A.    Not all in the U.S.
21       Q.    Not all in the U.S.?
22       A.    What time period are you talking about?
23       Q.    I guess here on December 31, 2016.
24       A.    So this form is completed for all U.S.
25  property and casualty insurance companies.

Page 107

1       Q.    Whether they are subsidiaries of Federal
2  or not?
3       A.    Correct.
4       Q.    Thank you.  All right.  Got it.
5             I notice that -- do you agree with me
6  that the form of reporting for Pacific Indemnity for
7  the year end 2016 is very similar to the form of
8  reporting of Federal?
9       A.    Correct, yes.
10       Q.    And does the NAIC dictate the form of
11  the reporting?
12       A.    Yes, they do.
13       Q.    Okay.
14             (Exhibit 45, 2016 and 2017 and Q1 2018
15  Chubb Insurance Company of Canada Consolidated Assets
16  Documentation, marked for identification, as of this
17  date.)
18       Q.    Can you identify for us Exhibit 45.
19       A.    It appears to be the filing, the first
20  quarter filing, for Chubb Insurance Company of
21  Canada.
22       Q.    The first page says Q1, 2016?
23       A.    Correct.
24       Q.    That's what you're looking at?
25       A.    Yes.

Page 108

1       Q.    I think we will spend a little time on
2  the document and see it includes other quarters, but
3  just to make a note, not to quarrel with you.
4             Reporting to whom?
5       A.    Canadian regulators are known as OSFI.
6       Q.    Exhibit 45 was prepared for the purpose
7  of reporting to Canadian regulators?
8       A.    Yes.
9       Q.    Were you involved in the work leading --
10  resulting in Exhibit 45?
11       A.    No, I was not.
12       Q.    Was this part of -- is this -- was the
13  work leading to Exhibit 45 under your
14  responsibilities?
15       A.    No, it was not.
16       Q.    Okay.  Let's just agree to one detail.
17             On the first page, it reports as of Q1,
18  2016.  If we look at page 9, it reports as of Q2,
19  2016.  And if you look at page 17, it reports as of
20  Q3, 2016, page 17.  And then if you look at page 25,
21  it reports as of Q4, 2016.
22       A.    Okay.
23       Q.    Okay.  So then the report is, as of Q4,
24  2016, is also the reporting for the full year?
25       A.    It appears that way, yes.

Page 109

1       Q.    And then if we carry through the
2  document, page 33 is Q1, 2017, page 41, Q2, 2017,
3  page 49, Q3, 2017, and then page 57, Q4, 2017.  And
4  it appears Q4 is reporting for the full year at that
5  point?
6       A.    It appears that way, yes.
7       Q.    Okay.  And then just to be complete, at
8  page 65, you have Q1, 2018.
9             Do you know if Chubb Insurance Company
10  of Europe makes to some regulatory agency a reporting
11  like we see to the NAIC and we now see to Canada?
12       A.    I believe they do.  I don't -- I
13  couldn't say for sure, no.
14       Q.    Same question with respect to Australia?
15       A.    I believe they do, but I couldn't say
16  for sure.
17       Q.    Thank you.
18       A.    I don't know.  Sorry.
19       Q.    Good enough.
20             MR. HINDERAKER:  Thank you for your
21  time.  No more questions.  Just the comment I made at
22  the outset with respect to keeping the deposition
23  open.
24             MR. FLEMING:  Yeah, and of course, we
25  don't agree with that, but we will read and sign.

JOHN TAYLOR - 08/02/2018          Pages 110..113

Page 110

1          THE VIDEOGRAPHER:  The time is
2    12:54 p.m.  We're going off the record.
3              (Time noted:  12:54 p.m.)
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 111

1
2         POST DEPOSITION REQUEST OF COUNSEL
3              August 8, 2018
4
5         (Exhibit 41, Previously marked at the
6    deposition on August 2, 2018, was remarked for
7    identification, as of this date.)
8         (Exhibit 42, Previously marked at the
9    deposition on August 2, 2018, was remarked for
10    identification, as of this date.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 112

1    Production.mpls (Production.mpls@epiqglobal.com)
2    To:you Details
3    Hi Lorraine,
4    The exhibits attached are for the jobs you covered
5    for us in the above-referenced matter.
6    Thanks,
7    Jessica Carbajales
8    Epiq | Court Reporting
9    Office: +1 (301) 762-8282
10
11    Email: Jessica.carbajales@epiqglobal.com
12    From: Kristin M. Drieman
13    [mailto:KDrieman@merchantgould.com]
14    Sent: Wednesday, August 08, 2018 11:39 AM
15    To: Production.mpls <Production.mpls@epiqglobal.com>
16    Cc: Scheduling.mpls <Scheduling.mpls@epiqglobal.com>;
17    Becerra, Juan <Juan.Becerra@epiqglobal.com>; Allen
18    Hinderaker <AHinderaker@merchantgould.com>; Heather
19    Kliebenstein <HKliebenstein@merchantgould.com>;
20    Michael Erbele <MErbele@MerchantGould.com>; Carol A.
21    Nystrom <CNystrom@merchantgould.com>;
22    cpham@fredlaw.com; ljanus@fredlaw.com;
23    tfleming@fredlaw.com; Friedemann, Lora M.
24    (Lfriedemann@fredlaw.com) <lfriedemann@fredlaw.com>;
25    Datzov, Nikola (ndatzov@fredlaw.com)

Page 113

1    <ndatzov@fredlaw.com>; Anne-Marie Larkin
2    <ALarkin@MerchantGould.com>
3    Subject: RE: Depositions re Fair Isaac v Federal
4    Insurance Company - MP-182592/MP-184257
5
6    CAUTION: This email originated from outside of Epiq.
7    Do not click links or open attachments unless you
8    recognize the sender and know the content is safe.
9
10    Jessica,
11    Attached please find two documents, marked as Exhibit
12    41 and 42 during the depositions in New Jersey last
13    week.
14    The documents marked at the deposition were missing
15    pages, the parties would like to replace the bad
16    copies with the attached.
17    Please let me know if you have any questions.
18    Thank you,
19    Kristin M. Drieman
20    Litigation Paralegal
21    Merchant & Gould P.C.
22    3200 IDS Center
23    80 South 8th Street
24    Minneapolis, MN 55402-2215
25    USA

JOHN TAYLOR - 08/02/2018          Pages 114..116

Page 114

1  Telephone (612) 336-4703

2  Fax (612) 332-9081

3  Merchantgould.com

4

5  GUARDIANS OF GREAT IDEAS®

6

7  Note: This e-mail message is confidential and may be

8  privileged or otherwise protected by law. If you are

9  not the intended recipient, please: (1) reply via

10 e-mail to sender; (2) destroy this communication

11 entirely, including deletion of all associated text

12 files from all individual and network storage

13 devices; and (3) refrain from copying or

14 disseminating this communication by any means

15 whatsoever.

16 Please consider the environment before printing this

17 email. Thank you.

18

19

20

21

22

23

24

25

Page 116

PG.__OF__PGS.

1  STATE OF NEW JERSEY    )

2                         ss.

3  COUNTY OF ESSEX        )

4

5       I wish to make the following changes, for the

6  following reasons:

7  PAGE   LINE

8  ____  ____      CHANGE:_____

9                  REASON:_____

10 PAGE   LINE

11 ____  ____      CHANGE:_____

12                 REASON:_____

13 PAGE   LINE

14 ____  ____      CHANGE:_____

15                 REASON:_____

16 PAGE   LINE

17 ____  ____      CHANGE:_____

18                 REASON:_____

19 PAGE   LINE

20 ____  ____      CHANGE:_____

21                 REASON:_____

22 PAGE   LINE

23 ____  ____      CHANGE:_____

24                 REASON:_____

25

Page 115

1                  CERTIFICATE

2

3       I, LORRAINE B. ABATE, a Certified

4  Court Reporter and Notary Public of the State of New

5  Jersey and Registered Professional Reporter, do

6  hereby certify that prior to the commencement of the

7  examination, JOHN TAYLOR was duly sworn by me to

8  testify the truth, the whole truth and nothing but

9  the truth.

10      I DO FURTHER CERTIFY that the foregoing

11 is a true and accurate transcript of the testimony as

12 taken stenographically by and before me at the time,

13 place and on the date hereinbefore set forth.

14      I DO FURTHER CERTIFY that I am neither a

15 relative nor employee nor attorney nor counsel of any

16 of the parties to this action, and that I am neither

17 a relative nor employee of such attorney or counsel,

18 and that I am not financially interested in the

19 action.

20      _Lorraine B Abate, CCR, RPR_
   _____

21            Certified Court Reporter
            Registered Professional Reporter

22         Notary Public of the State of New Jersey
           My Commission expires December 29, 2019

23            CCR License No. XI01992

24 Dated: August 10, 2018

25

**Exhibits**

**Taylor 41**
  10:11

**Taylor 42**

**Taylor 17**
  16:8,10,23

**Taylor 18**
  16:14,18,22 25:21 38:18
  46:23

**Taylor 19**
  49:18,24 50:6,14 51:13

**Taylor 20**
  53:9,13

**Taylor 21**
  54:23 55:4,17 56:18

**Taylor 22**
  56:2,6,21,24 57:3

**Taylor 23**
  57:15,19

**Taylor 24**
  58:13,17

**Taylor 25**
  59:13,17,21

**Taylor 26**
  60:16,20

**Taylor 27**
  61:14,18

**Taylor 28**
  62:12,15 64:13

**Taylor 29**
  66:6,13 67:1

**Taylor 30**
  67:21,25 69:6

**Taylor 31**
  69:13,18 70:12

**Taylor 32**
  70:20,24,25 71:5 73:11
  75:7

**Taylor 33**
  78:22 79:2

**Taylor 34**
  79:24 80:2,12

**Taylor 35**
  80:21,24

**Taylor 36**
  81:5,7,17

**Taylor 37**
  81:12,14 84:15,17 85:20

**Taylor 38**
  83:9,11,20 85:9 86:1

**Taylor 39**
  87:15,17,24

**Taylor 40**
  88:2,5,14

**Prev Mrkd Exh 41**
  88:25 89:8,23 92:11
  99:17 111:5 113:11,12

**Prev Mrkd Exh 42**
  99:13,16 100:3 111:8
  113:12

**Taylor 43**
  102:22,25

**Taylor 44**
  105:20,23

**Taylor 45**
  107:14,18 108:6,10,13

---

**$**

**$12,000,976**
  32:24

**$12,976,000,000**
  32:24

**$38,001,851**
  97:19

---

**(**

**(1)**
  114:9

**(2)**
  114:10

**(3)**
  114:13

**(a)**
  31:24

---

**+**

**+1**
  112:9

---

**0**

**000060_0001**
  80:4

**0004**
  52:5

**0005**
  52:6,7

**004420_001**
  79:4

**0233**
  105:12,14

**0246**
  105:13,15

**08**
  112:14

---

**1**

**1**
  10:11 16:21 50:15 51:16,
  20 53:17 55:7,8,9,10
  56:7,10,11,13 57:21
  58:19,22,23,25 59:23
  60:23 62:18 64:14,16,17,
  20 68:6,9 69:19,21 71:17
  73:1,4,15 74:21,23 75:20
  77:7 86:6

**1(e)**
  10:2

**1(h)**
  10:2

**1/1/17**
  76:3

**10**
  82:21

**10-K**
  16:9,11,15,19,20 17:4,25
  26:10,22 81:5,7,12,17
  87:15,18,24 88:2,6,7

**103,000**

**93:13**

**10:10**
  42:7

**10:50**
  66:4

**11**
  84:24

**11:05**
  66:11

**11:39**
  112:14

**11:58**
  88:23

**12**
  33:4,5 72:17,18

**12/31/2014**
  18:7

**12/31/2017**
  103:2

**12:09**
  89:5

**12:54**
  110:2,3

**13**
  15:18 28:17 83:18,19,24

**14**
  13:4 71:1,13

**16**
  96:25

**17**
  16:8,10,23 85:11 104:13
  108:19,20

**18**
  16:14,18,22 25:21 38:18
  46:23

**19**
  49:18,24 50:6,14 51:13
  88:15

**1998**
  50:15 55:7 56:7,10 57:21
  60:23 61:20 62:18 66:18
  68:6

**1st**
  50:16 74:21 78:10,16
  86:9

**2**

**2**
  50:17,24 55:8 56:10,13
  58:22 59:24,25 66:18,20
  67:2 68:9 69:20 80:4
  105:12 111:6,9

**2(c)**
  10:2

**2(f)**
  10:2

**2(i)**
  10:2

**20**
  53:9,13

**2000**
  58:19 59:23

**2002**
  50:18,21 55:8 69:22

**2003**
  50:16

**2004**
  13:8 53:17

**2005**
  55:9 56:11,16 58:22
  59:24

**2007**
  50:22 53:18 55:11 56:20,
  25 57:24 58:24 60:2
  61:1,21 66:21 68:8,11
  69:20

**2008**
  55:10 56:14 58:23,25
  60:1 68:9 69:19 79:8,12,
  19 80:14

**2012**
  28:17

**2013**
  79:24 80:7

**2014**
  16:8,12,14 17:25 18:15
  20:11,12 21:15 22:12
  23:4 27:21 28:2,17 29:3
  32:23 33:8 80:21,25

**2015**
  88:25 89:11

**2016**
  13:22,23,24,25 17:19
  18:20 19:4 20:15 40:17
  71:1,13 81:5,10,12,16
  82:1,7,11,15 83:21,24
  84:5,18 85:10,14,24
  86:6,9 88:25 89:10 97:23
  99:13 100:5 105:20,25
  106:23 107:7,14,22
  108:18,19,20,21,24

**2017**
  77:7 78:10,16 87:15,19,
  24 88:2,6,17 99:13 100:4
  102:22 107:14 109:2,3

**2018**
  8:25 71:4 74:21 107:14
  109:8 111:3,6,9 112:14

**21**
  26:15 54:23 55:4,17
  56:18

**21.1**
  81:15

**22**
  56:2,6,21,22,24 57:3
  71:4

**23**
  57:15,19

**24**
  58:13,17

**25**
  59:13,17,21 108:20

**26**
  60:16,20

**27**
  61:14,18

**28**
  62:12,15 64:13 65:8

**29**
  66:6,13 67:1

**2nd**
  8:25

**3**

**3**
  16:19 17:3,25 18:13
  21:16 25:21 38:18 46:24
  50:15 52:7 55:9,10

56:12,19,25 58:23 60:1
69:19 71:1 90:3 95:9

**30**
  67:21,25 69:6 83:21,24
  84:5 85:10,14

**30(b)(6)**
  10:8 35:22 96:4

**30(b)6**
  9:21,24 27:4 45:10 46:4,
  16 90:17 91:14 92:22
  95:20

**301 762-8282**
  112:9

**31**
  16:12 50:17,21 53:18
  55:11 56:25 57:24 58:24
  60:2 61:1,21 66:20 68:8,
  11 69:13,18,20,22 70:12
  79:8,12 80:7,14,25 81:9,
  16 82:7,11,15 84:5,18
  85:24 87:19 88:6,17
  89:10 100:4 106:23

**31st**
  56:19

**32**
  70:20,24,25 71:5 73:11
  75:7,20 95:11,12,14
  96:7,10,11

**3200**
  113:22

**33**
  78:22 79:2 109:2

**34**
  79:24 80:2,12

**35**
  80:21,24

**36**
  26:12 81:5,7,17 101:2,3

**37**
  81:12,14 84:15,17 85:20

**38**
  83:9,11,20 85:9 86:1

**39**
  87:15,17,24

**4**

**4**
  16:19 20:8 22:10,19
  26:6,10 28:11,15 30:14
  31:14,20 32:16 50:15
  51:16 58:24 92:1

**40**
  88:2,5,14

**400**
  8:24

**41**
  88:25 89:8,23 92:11
  99:17 109:2 111:5
  113:12

**42**
  99:13,16 100:3 111:8
  113:12

**43**
  26:14 102:22,25

**44**
  105:20,23

**45**
  107:14,18 108:6,10,13

**49**
  109:3

**5**

**5**
  16:19 33:8 52:14 68:10
  86:2 88:15 91:25 92:3,13
  93:11

**54**
  104:8,9,11,17 105:8

**55**
  8:23

**55402-2215**
  113:24

**57**
  109:3

**6**

**6**
  69:23 81:23 84:16,19

85:21 92:1 104:19

**612 332-9081**
114:2

**612 336-4703**
114:1

**65**
109:8

---

**7**

**7**
93:16

**78**
33:10,24 34:5

---

**8**

**8**
90:1,2 93:13 99:22
100:1,2,7,12 103:12
105:1,5 111:3

**80**
113:23

**8:30**
7:2

**8th**
113:23

---

**9**

**9**
108:18

**9:03**
8:25

**9:59**
42:4

---

**A**

**a.m.**
8:25 42:4,8 66:4,11
88:23

**Abate**
9:3

**above-referenced**
112:5

**absence**
8:4

**absolutely**
48:6,24

**accept**
31:10 81:19,21

**Accepted**
90:14

**accommodate**
8:12

**accordance**
90:6 91:5

**accountants**
25:11

**accounting**
11:3 13:11 16:5 90:8,12,
14

**accuracy**
90:25

**accurate**
38:14 54:5 101:8,13

**accurately**
71:5 80:8 81:2

**ACE**
12:13,15,23 13:3,7,12,
14,20 14:1,2,3,4,5 15:10,
13 20:23,24 26:23 27:7,8
33:13 70:21 71:2,9,20
72:7 73:23 75:7,23 76:3,
9,13,20,21 78:18 86:23
87:1,7

**acknowledges**
62:25

**acquired**
14:14 77:18

**acquisition**
13:18,21,22 14:18,20

**acronym**
89:20

**Acting**
47:1

**activities**
39:13 83:15

**acts**
47:9

**add**
33:1,2,3,5

**added**
73:22

**addendum**
50:17 53:9,18 55:7,8,9,
10 56:10,13,15,18,24
57:15,23 58:21,22,23,24
59:24,25 60:1,16,25
61:14,20 66:7,18,20
68:8,9,10 72:13 73:2,8,
11 77:3,4

**addendums**
54:23 55:12 56:2 58:13
59:13 67:22

**addition**
37:20

**address**
7:19,21 8:14

**administrative**
39:13

**admitted**
91:16

**Advisor**
45:3,7,20,24 46:10,14

**affects**
74:23

**affiliate**
12:17,18,19 87:3,5,6

**affiliated**
14:8 32:3 74:16

**affiliates**
15:1 19:18

**agencies**
34:12,21

**agency**
109:10

**agent**
35:16,19,24,25 36:7,25
42:16 43:3

**agents**
36:13,15 42:15

**agree**
16:10 18:4 21:10 38:4
48:22,23 50:6,13 52:20
53:14 55:4,15,21 57:7,8,

20 58:17 59:7 60:10
61:18 62:6,15,19,21
66:25 67:1 71:12 72:13
73:21 76:21 79:6,18
81:7,24 82:6 83:23 84:4,
9,20,24 85:5,12,16,22
86:3 88:14 89:23 100:2
107:5 108:16 109:25

**agreed**
38:11 42:15,18 45:11
56:16,17,20 57:1,14
58:11,12 59:1,12 60:2,15
61:1,2,12,13,23,24 62:4,
11,23 63:2 64:15 67:5
68:11 69:24,25 71:14
72:3 77:13 79:10 83:22
84:2,22 85:3,8,15,25
86:7 90:16 95:19,22
96:24 98:11 101:21

**agreement**
41:7 45:2,19 49:3,12,18
50:7,14 51:2,10 53:9,15,
21,25 54:23 55:5,17
56:2,7 57:3,4,10,15,20
58:2,7,13,18 59:3,8,13,
21 60:5,11,16,22 61:4,8,
14,19 62:1,7,12,16 63:1,
16,20,25 64:1,3,25 65:8,
11,14 66:6,15,22 67:8,21
68:5,14 69:6,13,24 70:2,
11,12,20 71:1,8,10,16,
22,25 72:2,5,10,25 73:2,
7,9,22 75:20 76:17 80:25
100:17

**agreements**
11:9,25 39:11 40:5 43:22
44:22 49:4,6 65:21 67:11
74:23 75:4,5,13,15 95:18

**agriculture**
27:15,16

**ahead**
48:20 90:20 104:21

**AHINDERAKER@
MERCHANTGOULD.
COM**
112:18

**ALARKIN@
MERCHANTGOULD.
COM**
113:2

**Allen**
9:6,19 112:17

**allocate**
26:24

**amend**
42:25

**amended**
10:11

**amendment**
50:16 69:19,20,21 70:21
71:3,17 73:14 74:20,23
75:20

**Amendments**
49:18 69:14

**American**
12:13,15,23 13:3,7,14
15:13 70:21 71:2,9,21
72:7 73:23 75:7,23 76:3,
9,13,20,22 77:18 78:18
86:23 87:1,8

**amounts**
32:15

**Anderson**
15:25

**Andrea**
11:1

**Anne-marie**
113:1

**annual**
11:5 102:23 103:3
105:21,25

**answers**
54:11

**apologize**
64:19 86:23 92:12

**appears**
80:11 81:4,11 82:2,4,18
83:1,6 84:2 87:25 88:18
89:25 97:20 100:11
102:10 103:2 105:25
107:19 108:25 109:4,6

**applications**
45:6,24 46:9

**apply**
54:10

**approximate**

28:5 34:1,4

**approximately**
8:25 33:10

**April**
86:6,9

**arms**
43:23

**arrangement**
40:11 54:6

**Arthur**
15:25

**article**
51:17,18,20 52:7

**aspects**
91:16

**asset**
17:24

**assets**
77:10,17 107:15

**assistant**
10:24

**association**
9:3 89:21 90:7

**associations**
13:12

**assume**
7:13 10:15 30:12

**assumed**
30:11,14 31:2,4 32:5,6
101:4,10

**assuming**
30:17 76:24 101:13

**attached**
112:4 113:11,16

**attachments**
113:7

**attempt**
8:12 32:5

**attempting**
8:3

**attention**
83:17

**attorneys**
25:12

**audited**
89:2,9,24

**August**
8:25 111:3,6,9 112:14

**Australia**
20:22 23:21,22 34:16
35:3 41:9 44:10 69:15
70:3,8 79:21 85:23 86:4,
5,10,17 98:16 99:10
109:14

**authenticate**
87:23

**authority**
47:17 54:18 55:23 57:9
58:8 59:9 67:7

**authorized**
52:10,24

**Avenue**
8:24

**aware**
35:9,14 37:14,22,25
45:4,5,23 46:5 67:10
86:15

_____

**B**

_____

**back**
7:15 11:21 15:17 32:3,18
39:18 42:8,21 45:17
52:17 54:16 56:11 66:11
72:12 77:8 84:15 85:9
89:6 95:18 98:22 105:1,5

**background**
16:1 91:24

**bad**
22:17 113:15

**base**
17:24 50:2

**based**
18:2 20:10 82:18 83:1,3,
6 84:8,22 85:3,4,8,15,25
86:3,7,8,12 87:25

**basis**
98:14 99:9 100:10
102:11

**Bates**
50:14,15 51:15 52:5,13
56:12 68:10 69:23 70:25

72:14,17,21,22 81:23
82:20 83:18,23 84:16,19,
23 85:11,20 86:2 103:11
104:8,10,11,17 105:8,12

**bear**
101:15

**Becerra**
112:17

**beginning**
69:23 88:15

**begins**
47:1

**behalf**
9:7 10:7,21 51:22 81:10

**belaboring**
95:8

**believes**
63:19

**Bermuda**
13:12

**bigger**
79:5

**billion**
33:4,6 93:13

**billions**
32:17

**bind**
62:8

**bit**
15:17 41:17 47:8 65:5
98:22

**Blaze**
45:3,7,19,24 46:10,14

**blow**
79:2,5

**blurry**
97:15

**board**
47:10,18

**boards**
47:2

**Bob**
11:2

**bonds**
25:14,16

JOHN TAYLOR - 08/02/2018                     i5

**bottom**
28:15 31:22 50:3 67:2
79:7

**Boyle**
11:2

**break**
41:3 42:3,24 43:9 65:25

**briefly**
7:25

**bring**
87:19 101:14

**broker**
35:16 36:3,4,6,9,25
42:16 43:3

**brokerage**
36:5

**brokers**
34:13,22 36:13,15

**brought**
29:24 67:18

**business**
15:2,23 16:22 22:18
24:15 25:25 27:23,24
30:12,25 31:3,7 36:24
46:2 51:21 103:16,17,21,
23 104:3 105:2,7,9

**businesses**
25:2,7

**buying**
30:19

---

**C**

**calendar**
29:23,24

**call**
29:9 72:8,9

**called**
29:18 31:17 45:6 52:7
87:11 103:16,20

**calls**
38:6 48:19 49:9 71:25
72:2

**Canada**
10:25 11:2 23:18,19
34:16 35:3 41:8 44:9
67:23 68:7,15,19,24

79:20 84:20,25 85:1,5,6,
13,17 98:16 99:10
107:15,21 109:11

**Canadian**
7:12 108:5,7

**Capital**
80:13,15

**captive**
35:8,12 42:15

**Carbajales**
112:7

**career**
15:22

**Carol**
112:20

**Carolina**
78:6,11

**carrier**
30:12

**carry**
96:2 101:5 109:1

**carrying**
87:21

**cars**
24:23

**Case**
42:15

**casualty**
13:19 14:24 15:2 17:4,9
38:19 46:25 106:9,16,19,
25

**categories**
31:14 32:13 101:3 105:9

**category**
35:21 92:19

**CAUTION**
113:6

**CCIC**
63:22

**CCM**
62:25 63:13,16,19,24
64:15,21,24 65:9,10,14,
19

**ceded**
30:23 31:1,4 32:5,6

101:4,10

**ceding**
31:3,6

**Center**
113:22

**central**
7:3

**CFO**
10:25

**chance**
7:10,19,20 10:10,13

**change**
41:24 42:25 54:5

**changed**
40:19 84:14

**chart**
78:23 79:23 105:16

**Chubb**
9:12 10:23,25 11:2,10
12:8,9,22 13:23,24 14:1,
4,7,8,16 15:7,11 16:8,11,
14 18:5 20:22 23:3,24
26:12,22 27:9,11,13,23
32:10 33:16,21 35:11
37:12,20,24 38:1,4,14,
20,24 39:8 40:2,18 41:7,
9,12 43:25 44:8,9,10
45:2 47:4,9,22 48:5,12,
24 49:2,19 50:8 51:2,6,8,
24 52:20 53:2,3,10,16
54:17,24 55:6,18,22
56:3,8 57:4,5,8,12,13,16,
21,22 58:3,7,10,15,20
59:4,8,14,22 60:6,7,11,
17,24 61:5,8,15,16,21,22
62:2,3,7,10,13,16,17,21,
22,24 63:2,12,16,24
64:2,4,25 65:11,15,18,20
66:7,16,22 67:22 68:7,
14,18,23 69:14,15,21
70:3,4,7 74:24 75:14,21
76:6,16 78:5,8,17 79:19,
20,24 80:7,13,15,21
81:5,10,12 82:7,16,23,25
83:3,5,25 84:6,11,20,25
85:1,5,6,12,16,22 86:4,5,
9,16 87:11,15,18 88:2
97:5,6,11,12 98:15 99:9,
10 102:15,16 107:15,20
109:9

**Chubbs**
12:10

**CI**
63:21

**claims**
46:2 91:19

**clarity**
21:10

**clause**
63:1,3 64:24 71:19

**clauses**
73:20

**click**
113:7

**closing**
7:22

**CNYSTROM@
MERCHANTGOULD.
COM**
112:21

**coincide**
93:4

**coincidental**
95:4

**collected**
94:17,18,23,24

**collecting**
95:3

**collectively**
63:13

**Collovano**
10:22

**Colonial**
15:21

**column**
30:13 103:15,20

**columns**
101:21 102:6

**combination**
31:14

**combined**
99:14 100:4 101:22

**comfortable**
50:4

comment
109:21

commenting
54:2

commercial
24:17,25 25:18 26:1,7,14
27:17

commission
81:9 93:17

Commissioner
90:8

Commissioners
89:22

common
12:20,21 20:1 87:8,9,10

communication
114:10,14

companies
12:17,18 13:19 14:2,8
15:1 18:1,18 19:12,17
20:9,13,16 21:9 22:14,
15,19 26:4,6 28:10
30:11,17 32:9 34:17 35:2
36:16 39:24 44:11 45:8
47:3 48:8,14 49:7,15
63:18 96:18,20,23 97:13,
14,22 98:2,7 100:18
102:15,17 106:17,25

company
8:22 12:13,15,16,24,25
13:3,14 15:14,18,21
17:5,15 18:10,14,19,20
19:3,18,21,23,24 20:1,4,
23,25 21:14,18 23:4,18,
21,24 24:7 26:3 30:8,10,
18,19,20 31:6,8,9,10
37:5,8,12,20,24 41:8,9,
12 44:8,9,10 49:19,20
50:7,9 51:3,22 52:10,21,
24,25 53:10,11,17 54:15,
24,25 55:5,6,19,23,25
56:3,4,8,9 57:5,12,13,16,
17,22,23 58:3,10,14,16,
20 59:4,11,15 60:17,18,
24,25 61:5,12,15,16,21
62:2,10,14,18 63:17
65:1,15 66:7,8,16,17,23
67:14,17,20,22,23 68:7,
15,19,23 69:14 70:3,5,8,
9,21,22 71:2,3,8,9,20,21
72:6,7 74:16 75:8,23

77:7,9,18,19,23 78:19,22
79:14,19,20,21 81:3
82:1,7,16,23 83:25 84:6,
11,20,25 85:12,17,22
86:4,10,17,24 87:1,7,8
88:17 89:1,8 97:5 98:3,
15 99:14 102:23 103:1
105:17,21 106:1 107:15,
20 109:9 113:4

Company's
100:3 103:2

compare
16:22

compensation
30:21 31:7

competing
36:16

complete
51:2 53:21 55:17 57:3
58:2 59:3 60:5 61:4 62:1
66:22 68:14 70:2 71:8
109:7

completed
106:24

completely
45:9

components
66:14

computer
78:6

conceivably
78:13

conclusion
38:7

conduct
67:5

confidential
114:7

confirm
64:8 79:11 80:8 81:18
82:14 86:23 88:7 105:15

Confirming
41:23

confusing
65:5

conjunction

45:7

connection
45:25

consequence
7:8 14:15

consolidated
89:2,9 90:5 96:11,13,18,
19 98:14 99:4,9 100:10
101:22 102:11 107:15

consolidates
99:8

consolidation
98:10

construction
25:17

content
113:8

context
21:8 54:5 71:12 79:17
80:3 83:13,20 85:10

continuation
7:16

continue
95:10 96:5

continued
40:14

continues
24:16 38:1 44:3 70:12

continuing
86:21 94:11 96:6

contracts
52:9 55:24 57:11 58:9
60:13 61:11 62:9 75:10
76:24

control
47:2,17

controller
11:1

copied
99:19

copies
87:20 99:18 113:16

copy
92:7,8,11 93:25 99:21

copying
114:13

Corp
8:21

corporate
10:21 86:21

corporation
8:21,22 9:8 14:1 15:7
16:8,11,14 18:5 19:13
26:12,22 27:23 32:10
79:24 80:7,21

corporation's
17:7

correct
11:24 12:5,23 13:1,23
14:21 15:3,7,8,12 17:13
18:9,16 19:1 20:2 21:3
24:9,11,14,19 25:13
29:2,10,11,19 30:2,3,8,
22 31:12,15 32:11 34:8
36:11 38:3,10,17 42:2
43:16 44:1,5,25 45:21,22
47:12,15 49:16 51:23,25
52:1 54:13,22 64:22
65:6,12 67:6,9,19 70:10,
16,18 71:22,23 72:4,10
73:9,12,13 74:1 81:11
82:18 83:2 86:19,25
87:2,12 88:18 91:4
93:10,14 96:15 97:20
98:12,25 99:2,6 100:6,11
101:11,12 102:9 103:18,
19 105:10 107:3,9,23

correcting
53:5

correction
12:2

counsel
7:5 9:4,9,12 10:15 43:7
111:2

countersign
52:22 55:24 57:10 58:8
59:9 60:12 61:10 62:8

countries
23:3,9

couple
41:5 65:25 78:4 100:1

court
9:2,13 11:13 16:17 66:12

92:11 112:8

**cover**
16:18 24:22,23 25:17

**coverage**
25:9,11

**coverages**
25:3,7

**covered**
45:10 77:12 78:13 94:14
112:4

**covers**
29:22,23

**cpham@fredlaw.com**
112:22

**Custom**
63:2,16 64:2,25 65:11,
15,19 97:5,11 102:15

**customers**
48:16

**D**

**D&o**
25:9

**Danson**
10:24

**date**
14:17,20 16:9,16 18:20
19:4 20:15,20 40:17
49:21 53:12 55:1 56:5,
23,25 57:18,20,24 58:16
59:16 60:19 61:17 62:14
66:9 67:24 69:16 70:23
76:1 78:24 80:1,10,23
81:6,13 82:9,14 83:10
87:16 88:3 89:4 99:15
100:23 102:24 105:22
107:17 111:7,10

**dated**
50:16,17 53:18 55:7
58:18 60:22 71:4

**Datzov**
112:25

**day**
7:9 45:13 56:16,19 60:1
61:20 66:17,19 93:5

**day-to-day**

47:4 83:15

**days**
78:4

**deals**
36:4

**December**
16:12 50:17,21 53:18
55:11 56:19,25 57:24
58:24 60:2 61:1,21 66:20
68:8,11 69:20 79:8,12,18
80:7,14,25 81:9,16 82:7,
11,15 84:5,18 85:24
87:19 88:6,17 89:10
100:4 106:23

**define**
89:19

**defined**
32:19 94:6 105:2

**definition**
24:21 35:23 43:2 92:18
95:24

**definitions**
27:12,13 42:16

**degrees**
16:6

**Delaware**
8:21

**deletion**
114:11

**deployed**
46:10

**deponent**
9:25 10:1 95:20

**deponents**
9:22

**deposition**
7:9,11,17 8:18,20,23
10:11,12,16 14:15 27:4
45:11 65:13 90:17 96:4
101:6 109:22 111:2,6,9
113:14

**depositions**
113:3,12

**describe**
104:23

**description**

39:16

**descriptors**
94:3

**designated**
9:20 32:13 46:17 63:13

**designators**
104:21

**designee**
42:12

**destroy**
114:10

**detail**
8:17 54:5 108:16

**Details**
112:2

**determine**
47:18

**developed**
45:6,24

**devices**
114:13

**dictate**
107:10

**difference**
29:20 35:15 40:1 54:3

**differences**
90:12,21,24 91:8 93:6

**digitized**
8:19

**diligently**
8:2

**direct**
28:18,20 29:4,12,13,20,
22,23 30:4 32:23 33:11,
20 83:17 91:25 93:6 94:5
101:9 103:20,23 104:1,2

**directions**
47:10

**directly**
21:19 28:21 30:8,10

**directors**
25:9 47:2,10,18

**disagree**
27:5 43:7 86:14

**disagreement**
17:11

**discussed**
10:1 103:24

**discussion**
17:2 42:6 66:5 88:24
92:4

**disseminating**
114:14

**distinction**
106:15

**distinguish**
36:2

**divided**
98:6

**division**
38:2,5,10,15,20,25 40:1,
13,18 43:25 45:3 47:22
49:20 50:8 51:3,7,8,25
52:21 53:2,3,11,16
54:18,25 55:6,18,22
56:4,9 57:5,9,17,22 58:4,
7,15,20 59:5,8,15,23
60:7,11,18,24 61:6,9,16,
22 62:3,7,22 69:15,22
70:4 74:24 75:14,21
76:6,16 78:5,8,18

**divisions**
37:12,20,24

**document**
41:7 50:2,3,11 53:15
55:3 62:21 63:9 68:3
69:18 72:4 73:15 79:3,6,
16 80:3,14 81:15 82:10,
19,23 83:1,3,6,9 84:3,22
85:3,5,8,15,25 86:3,7,8,
12,14 87:25 89:12 90:2
104:14 108:2 109:2

**Documentation**
107:16

**documents**
7:5,10 8:3,5,9 11:5 12:4
39:20 49:23 65:25 69:3
84:8 88:11 113:11,14

**dollar**
32:15 103:21

**dollars**
102:18

**Drexel**
16:2

**Drieman**
112:12 113:19

**duly**
9:16

**duties**
39:13

**E**

**E&o**
25:9

**e-mail**
7:4 8:6 114:7,10

**earlier**
10:11 14:13 32:19 54:1
55:12 93:5 94:6,7 101:6
102:20

**earned**
29:18,21,24 92:14,19
93:1,2,3,6,8,9 96:12,13
97:4,13,18,23 101:4,17,
18,23 102:6,14,18

**easier**
79:5

**economy**
63:21

**educational**
16:1

**effect**
52:22 54:19 55:23 57:10
58:8 59:9 60:12 61:9
69:7 70:13 76:25

**effective**
50:15 55:8,9,10,11 56:7,
10,11,13,15,19,25 57:20,
24 58:18,21,22,23,24
59:23,24,25 60:2,25
61:20 62:18 66:19,20
67:12 68:6,8,9,11 69:19,
20 71:1 74:21 77:7,8
86:6

**efficiency**
63:21 99:17

**efficient**
50:5

**eliminated**
31:17,25 32:4

**email**
112:11 113:6 114:17

**employed**
12:7 13:2 15:14 45:25

**employees**
37:6,9 40:7,8,9 43:15,19
44:4,12 48:10,13 49:14,
15 76:2 77:7,23 78:8,9,
17,18

**employment**
13:7 15:13

**employs**
12:12

**empowered**
52:22 60:12 61:9

**end**
7:9 18:15 20:11,12 21:15
22:11 27:21 33:8 72:12
79:18,25 80:6,22 82:1
96:10,25 101:15 107:7

**ending**
16:12 81:9 82:11 84:18
87:19,24 89:10

**entire**
15:16

**entities**
13:16 29:9 32:2 41:20
44:18,23 46:13 48:9
73:22,24,25 74:12 75:1,
9,22 76:7,8,15 77:1

**entity**
12:11 28:21,22,24 38:5
71:25 72:2

**environment**
114:16

**Epiq**
9:1,3 112:8 113:6

**Erbele**
112:20

**essentially**
12:3 30:16 40:9

**Europe**
23:4,8,9,10,25 24:1
34:16 35:3 41:12 44:9
79:19 82:7,16,24 83:25

84:6,11 98:15 99:10
109:10

**exact**
33:25 76:1 98:1

**examination**
7:22 10:4 54:2

**examined**
9:18

**Examples**
25:8

**exception**
67:13 90:9

**exceptions**
74:12

**Excerpt**
16:15 81:13 88:3

**exclusive**
36:25

**Executive**
58:14,19 59:4,11,14,22
60:6,14 74:10 97:7,12
102:16

**Exhange**
81:9

**exhibit**
10:11 16:8,10,14,18,22,
23 21:16 25:21 38:18
46:23 49:18,24 50:6,14
51:13 53:9,13 54:23
55:4,17 56:2,6,18,21,24
57:3,15,19 58:13,17
59:13,17,21 60:16,20
61:14,18 62:12,15 64:13
66:6,13 67:1,21,25 69:6,
13,18 70:12,20,24,25
71:5 72:13 73:11 75:7
78:22 79:2,12,24 80:2,6,
12,21,24 81:5,7,12,14,
15,17 83:9,11,20 84:15,
17,24 85:9,20 86:1
87:14,15,17,24 88:2,5,
14,25 89:8,23 92:11
93:24 99:13,16,17 100:3
101:14,15 102:22,25
105:20,23 107:14,18
108:6,10,13 111:5,8
113:11

**exhibits**
112:4

**exist**
27:8 75:16

**exists**
67:14,17

**explain**
97:21

**explanation**
102:19

**exposure**
29:25 30:1

**extent**
38:6 46:8,9,11

**F**

**face**
83:20 99:3

**facilities**
43:24 63:24 64:15,21
65:9 67:4

**facing**
66:18

**fact**
8:4

**fair**
8:21 9:7 17:1 43:5 47:20
52:3,8 54:13 88:13 113:3

**familiar**
83:12 89:12

**Fax**
114:2

**February**
71:4

**Federal**
7:2,3 8:22 9:12 10:7
11:25 12:15,24 17:4,15
18:10,14,18,19 19:3,18,
23,25 20:13,16 21:1,2,8,
11,13,17,20 22:4,8,12
24:7,16 27:25 28:4,25
29:8 34:11,20 35:7,11
36:14,23,25 37:5,6,12,
19,23 38:2,20 39:11
40:1,6,7,8,12,18,23
41:10,19 43:15,19,24
44:1,17,19,21,24 45:3
46:9,11,13 47:14,17,21,
24 48:3,5,10,12,23 49:2,

4,7,20 50:8 51:3,7,25
52:21,25 53:1,2,11,16
54:17,25 55:6,18,22
56:4,9 57:6,9,17,22 58:4,
7,15,21 59:5,8,15,23
60:8,11,18,24 61:6,9,16,
22 62:3,8,13,17,22
63:17,23 64:3,14,20
65:8,19 66:8,16,23 67:3,
8,22 68:6,20,25 69:16,22
70:4,9,21 71:2,8,20 72:6
74:1,7,13,25 75:13,14,21
76:2,5,6,10,14,16,22,23
77:6,9,17,23 78:5,7,8,17,
18,22 79:4,13,22 80:4,10
81:3,25 82:8,16 84:1,7,
12,21 85:13,17,23 86:11,
18,24 87:2,7 88:16,25
89:8 91:10 96:12,13,24
98:13 99:4,5,7,13 100:3,
8,9,13,17,20,21 102:7,8,
11,22 103:1,2 105:17
106:3,4,11,19 107:1,8
113:3

**Federal's**
10:7 41:24 75:9 76:15,16
95:9

**feel**
16:23 81:18

**fell**
89:18

**FICO**
9:9 45:2 50:1 80:3

**field**
16:4 43:4

**filed**
16:11

**files**
114:12

**filing**
107:19,20

**final**
9:19 91:1

**financial**
7:7,13 11:4 14:7,17 89:2,
10 90:6 91:10 95:1,10
99:14 100:4

**find**
7:18 19:6 113:11

**finding**
66:1

**fine**
45:12 88:9 105:11

**finger**
83:19

**firm**
9:11 95:17,18

**Fleming**
7:24 8:2,8 9:10,19 11:13
18:21 20:17 26:18 27:2
31:19,21 32:12 33:15,17
34:3,23 35:20 36:20 38:6
39:2 40:21 41:1 42:9
45:9,14 46:3,15 48:7,18
49:9 51:17 52:5,11,15
64:5 72:14,18,21,24
76:18 77:11,20,24 78:12,
20 90:15 91:2,12 92:16,
20 93:21,23 94:8,12
95:17 96:14 97:16 99:24
101:24 104:9 109:24

**focus**
27:20 91:17

**focusing**
31:23,24

**folks**
14:12

**follow**
50:12

**footnote**
31:16,22

**force**
35:8,13 69:6 70:12 76:25

**forget**
52:18 76:1

**forgive**
68:17

**forgot**
19:22

**form**
16:11,15 30:21 49:25
106:24 107:6,7,10

**forward**
15:11

**foundation**
18:21 20:17 26:19 33:15,

17 34:3,23 35:20 36:21
40:22 46:3,15 91:2

**fourth**
67:3

**frame**
32:9 39:7 81:3 82:15
94:25 95:1

**frames**
33:21 43:11

**France**
23:15

**Frederickson**
9:11

**free**
16:23 81:18

**Friedemann**
112:23

**front**
66:12 68:3 69:17 97:10

**full**
39:16 69:6 70:12 76:25
92:10 108:24 109:4

**function**
13:12 101:9

**functions**
41:20,25

_____

**G**

**GAAP**
90:22 91:9,20

**general**
9:11 16:21 51:5 104:23

**generally**
25:16 35:25 90:14

**genetically**
11:9

**geographic**
22:24

**give**
13:5 24:20 38:23 41:4
93:15,18 99:20,21 101:2

**giving**
79:12 104:25

**global**

27:15,16

**good**
8:17 12:2 109:19

**goodness**
94:16

**Gould**
9:7 113:21

**governs**
99:1

**grade**
77:25

**graduate**
16:6

**graduated**
16:2

**Grant**
10:25

**grants**
67:8

**great**
10:15 19:9 20:3 50:13
60:17,23 61:5,12 74:9
114:5

**greater**
63:20

**gross**
104:17,18

**group**
14:22,23,25 15:6,10
17:6,16 18:1 20:10
22:15,20 36:10 38:22
39:1,10 47:3

**group's**
33:10

**GUARDIANS**
114:5

**guess**
26:11 106:23

**guy**
27:8 53:1

_____

**H**

**half**
13:4 15:19

**hand**
  50:12 79:7

**happened**
  20:4

**hate**
  31:1

**head**
  11:4 15:4 19:22 21:6,24

**heading**
  16:21 92:13 102:6

**heard**
  96:1

**Heather**
  8:5 112:18

**held**
  8:23 92:4

**Hinderaker**
  7:1 8:1,7,16 9:6 10:3,4
  27:5 31:20,24 41:4 42:3,
  20,23 45:12,16 51:18
  52:6,13,17 64:10 65:24
  72:16,19,23 77:14 87:13,
  17 88:20 89:7 90:18
  92:3,5,17 93:22 94:1,10,
  16 95:7,12 96:1 99:16,25
  102:2 104:11 109:20
  112:18

**hired**
  13:8

**history**
  13:6 15:16 42:11

**HKLIEBENSTEIN@**
**MERCHANTGOULD.**
**COM**
  112:19

**holder**
  91:18

**holders**
  91:19

**holding**
  19:18,21,24,25

**Holdings**
  82:25 83:4,5 85:1,5,7
  86:5

**home**
  87:21

**homes**
  24:24

**honest**
  68:22

**honestly**
  43:3

**hope**
  55:2

**hour**
  41:2 42:10,12

**house**
  36:5

**hypothetical**
  48:19

**Hypothetically**
  49:11

---

**I**

**IDEAS®**
  114:5

**identification**
  16:9,15 49:21 53:12 55:1
  56:5 57:18 58:16 59:16
  60:19 61:17 62:14 66:9
  67:24 69:16 70:23 78:23
  79:25 80:22 81:6,13
  83:10 87:16 88:3,15 89:3
  99:15 102:23 105:21
  107:16 111:7,10

**identified**
  21:16 35:21 81:17 91:13
  92:21 94:13 103:22

**identifies**
  73:8 80:9 100:8

**identify**
  66:14 101:16 102:25
  105:24 107:18

**IDS**
  113:22

**II**
  51:18,20

**Illinois**
  62:13,17

**impact**
  75:2

**in-house**
  9:8

**INA**
  83:5

**include**
  39:16

**included**
  13:9 22:20 47:3 95:25
  96:19

**includes**
  7:6,7 10:12 50:14 53:15
  56:7,24 57:20 58:18
  59:21 60:22 69:18 70:25
  73:7 80:12 88:14 108:2

**including**
  99:9 114:11

**income**
  29:25 101:17

**incorrect**
  74:5

**Indemnity**
  19:5,9,15,20 49:19 50:7
  52:10,24 53:10,16,22
  54:9,10,15,21 56:3,8
  57:4,12,13 59:14,22
  60:6,14 67:18,19 97:6,12
  102:15 105:20 106:1
  107:6

**independent**
  34:12,13,21,22

**Indiana**
  8:22

**individual**
  27:17 35:25 36:6 114:12

**individuals**
  24:23

**information**
  7:7 86:14

**insist**
  42:17

**instance**
  97:14,18 102:13

**instances**
  21:11 47:16

**instructed**
  8:10

**insurance**
  8:22 12:1,13,15,16,24,25
  13:3,7,14,19 14:24 15:2,
  14,18,21,22 17:4,5,7,9,
  15 18:1,10,14,19,20 19:3
  20:3,9 22:15,25 23:4,5,
  18,19,21,22,24,25 24:7,
  8,17,18,21,22 25:1,4,22,
  24 26:1,2,8,25 28:7,10,
  12 29:10,15 30:4,6,17,
  18,19,20 31:8,9,10 32:8
  34:10,12,19 35:2,16,18,
  23 36:1,3,7,8,13,15,16,
  24 37:5,8,12,19,23 38:19
  39:23 41:8,9,12 42:15
  43:20 44:8,9,10 45:8
  46:1,2,11,12,25 47:3,24
  48:4,8,10,14 49:1,7,8,20
  50:9 51:3,22 52:9,20,23,
  25 53:2,11,17 54:14,19,
  24,25 55:5,6,18,19,23,25
  56:3,4,8,9 57:5,6,11,12,
  13,16,17,21,23 58:3,9,
  10,14,15,20,21 59:4,10,
  11,15 60:7,13,17,18,23,
  25 61:5,11,12,15,16,21
  62:2,9,10,13,18 63:2,17,
  18 64:2,25 65:11,15
  66:7,8,16,17,22,23
  67:14,16,22,23 68:6,7,
  15,18,23 69:14 70:3,4,8,
  9,21,22 71:2,3,8,9,20,21
  72:6,7 74:1 75:8,23 76:9,
  13 77:1,6,9,18,23 78:19,
  22 79:13,19,20 80:16
  81:3,25 82:7,16,23,25
  83:4,25 84:6,11,20,25
  85:12,16,22 86:4,10,17,
  24 87:1,7,8 88:16 89:1,8,
  9,21 90:7 94:24 97:5,6,7,
  22 98:15 99:14 100:3
  102:22 103:1,2 105:17
  106:3,5,9,17,25 107:15,
  20 109:9 113:4

**insured**
  28:23

**insurers**
  106:16,19

**intended**
  114:9

**intercompany**
  31:17,25

**interest**
7:15

**international**
11:2

**interviews**
10:20

**introduce**
9:4

**investment**
13:11 82:25 83:4

**involved**
108:9

**Isaac**
8:21 9:8 113:3

**issue**
7:19,21 40:22 43:20
48:16,25 49:1,7 52:10,
22,24 54:19 55:24 57:10
58:9 59:9 60:12 61:10
62:9

**issued**
28:22 54:14 57:12 58:9
59:10 60:13 61:11 62:9

**issues**
52:8

**item**
16:21 95:8

**items**
31:17,25

___

**J**

**James**
9:8

**January**
13:8 50:15 55:7,8,9,10
56:7,10,11,13,16 57:21
58:19,22,23,25 59:23,24
60:1,23 61:20 62:18
66:17,19 68:6,9 69:19
74:21 77:7,8 78:10,16

**Jersey**
8:24 9:17 61:15,22 62:3,
10 113:12

**Jessica**
112:7 113:10

**Jessica.carbajales@
epiqglobal.com**
112:11

**jobs**
112:4

**John**
8:20

**Juan**
112:17

**Juan.becerra@
epiqglobal.com**
112:17

**July**
69:22

**June**
53:17

___

**K**

**keeping**
109:22

**Kevin**
9:11

**key**
79:7

**kind**
25:22,24 43:4 65:20

**kinds**
103:17

**Kliebenstein**
112:19

**Kliebenstein's**
8:6

**knew**
8:8

**knowledge**
10:8,19,21 14:6,11,14
38:9,12,13 44:20 48:13,
21,22 51:1,4 53:20 54:7
55:17,20 57:2,7 58:1,5
59:2,6 60:4,9 61:3,7
62:1,5 65:23 66:21,24
67:10 68:13,16 69:5,9,
10,11 70:2,6 71:7,11
75:16 76:21 78:21 79:11,
15 81:1 82:3,4 84:13
85:19 86:19 93:1 96:3

98:18,19

**Kristin**
112:12 113:19

___

**L**

**lack**
36:20

**large**
27:17

**larger**
36:4

**largest**
17:5,15 28:6

**Larkin**
113:1

**law**
9:11 114:8

**lawsuit**
45:21

**lawyers**
25:12

**leading**
108:9,13

**leave**
7:8

**left**
43:4

**legacy**
14:3,4,5,7,8,16 15:11
20:23,24

**legal**
28:21,22,24 29:9 32:2
38:7 41:20 48:9

**legs**
43:23

**lfriedemann@fredlaw.
com**
112:24

**liability**
25:3 104:22,25 105:2

**license**
45:2,19

**light**
87:20

**limit**
36:24

**limited**
7:6 12:22 13:20 26:23
27:7,8,9,11,14 30:5
33:14,16,21 35:11 69:15
70:3 79:21 80:13,15
81:5,10,12 82:25 83:4
85:2,6 86:4,17 87:11,15,
18 88:2

**lines**
24:10,15 25:25 26:7,8,
13,14,15,25 27:22,25
28:7 103:17,21 104:21,
22,25 105:1,7,9

**links**
113:7

**list**
18:4 73:12 95:9

**listed**
18:2,11,13 22:19 25:20
26:5 76:13 77:2 96:20,24
102:6

**lists**
73:24,25 100:7

**litigation**
79:3 80:4 113:20

**ljanus@fredlaw.com**
112:22

**Lloyd's**
66:7,16,22 67:5 74:15

**load**
87:20

**located**
28:10 78:6

**long**
13:2 40:15 42:11 45:13

**longer**
20:22,24 21:1,2 41:20
67:14,17 68:19,24 76:2
84:6

**looked**
65:21 74:24 75:12 105:5

**Lora**
112:23

**Lorraine**
9:3 112:3

**losses**
98:4 100:19

**lost**
66:1

**lot**
12:9,10 94:3

**M**

**made**
61:19 99:18 109:21

**Madison**
8:24

**mailto:kdrieman@
merchantgould.com**
112:13

**make**
76:11 87:13 93:25
103:14 106:5 108:3

**makes**
109:10

**making**
45:14 92:10

**Malpractice**
25:11

**manage**
39:12 51:21

**managed**
40:9

**management**
11:9 40:4,11,20 41:7,11,
19,25 43:21 44:18,22
46:1 47:4,21 48:5,11
49:3,6,12 51:6 53:24,25
57:4 59:3 61:19 62:2
67:11 75:13,15 76:5,7,17
89:18

**management/service**
58:2

**manager**
38:21,25 39:9 40:2
51:21,24 52:8,21 54:4,18
55:22 62:7

**manages**
40:23

**manner**
91:22

**manual**
90:9

**Marcelo**
9:1

**March**
71:1,13

**marked**
16:9,15 49:20 53:11
54:25 56:4 57:17 58:16
59:15 60:18 61:17 62:14
66:8 67:23 69:16 70:22
78:23 79:25 80:22 81:6,
13 83:9 87:16 88:3 89:3,
7 99:15 102:23 105:21
107:16 111:5,8 113:11,
14

**market**
28:6

**Markka**
65:19

**match**
93:2

**material**
90:12,24,25

**materially**
91:4

**math**
101:10

**matter**
8:20 45:20 60:5 61:4
65:17 71:10 90:19 112:5

**matters**
42:21

**Mcewen**
10:25

**meaning**
20:20 28:18 63:24 101:5

**meaningful**
35:15

**means**
32:1 93:1 114:14

**measure**
17:20 29:16,17 30:4

**measures**
17:23

**measuring**
22:21 29:12,13,14

**Medical**
25:14

**medium**
27:17

**meet**
75:9

**meets**
65:10 76:14

**members**
100:20

**mention**
50:1

**mentioned**
14:13 43:9 98:7

**MERBELE@
MERCHANTGOULD.
COM**
112:20

**Merchant**
9:7 113:21

**Merchantgould.com**
114:3

**merged**
19:14,19 20:22,24

**merger**
14:1 17:16 24:13 28:7,9
34:9 74:3,4,8,14

**mess**
92:12

**message**
114:7

**messed**
53:4 102:3

**met**
10:15 75:23

**Michael**
112:20

**middle**
32:22

**Mighty**
105:11

**millions**
32:21 33:1

**mind**
94:2

**mine**
73:19

**Minneapolis**
113:24

**minus**
101:10

**minute**
41:5 65:25 96:8

**missing**
99:23 101:25 113:14

**MN**
113:24

**modify**
42:25

**moment**
100:25

**Morristown**
7:16 8:24

**move**
81:20

**moved**
76:3 97:2

**moving**
71:16

**MP-182592/MP-184257**
113:4

**Multi-page**
83:9

**multiple**
39:2 40:21 48:18 76:18

**Murphy**
9:11

**N**

**NAIC**
89:17,20 90:13 98:9,24
99:1 100:5 103:5 106:5
107:10 109:11

**named**
77:1

**narrowed**
95:19

**narrowing**
42:11 95:21

**National**
57:16,21 58:3,10 89:21
90:7 97:6,12 102:16

**natural**
41:2

**nature**
11:6

**ndatzov@fredlaw.com**
112:25 113:1

**necessarily**
94:21

**negotiated**
45:11

**net**
26:12,24 27:22 31:13
93:17 97:24,25 101:9

**network**
114:12

**night**
7:2,3

**Nikola**
112:25

**normal**
83:15

**North**
78:6,11

**Northern**
19:9 20:3 60:17,23 61:5,
12 74:9

**Notary**
9:16

**note**
7:1 32:4 90:2 95:7 108:3
114:7

**noted**
8:5 9:20 110:3

**notice**
9:24 10:8,12 26:10 27:4
31:16 35:22 45:11 91:14
92:22 107:5

**noting**
7:22

**notion**

96:2

**number**
32:15 34:7 39:11 73:24
75:12 95:13 96:19 97:24,
25 98:1,5 102:1 104:10

**numbered**
50:15 51:16 52:14 55:13
56:12 64:20 68:10 69:23
70:25 73:1 81:23 82:21
83:18,24 84:16,19,24
85:11,21 86:2 103:12
104:8,17 105:7

**numbers**
32:17 55:13,14 93:12
97:17

**Nystrom**
112:21

---

**O**

**Object**
26:18 35:20

**objecting**
94:8

**objection**
18:21 20:17 27:2 32:12
33:15,17 34:3,23 36:20
39:2 40:21 42:10 45:13,
15 46:3,15 48:7,18 49:9
76:18 77:11,20,24 78:12,
20 91:12 92:20 94:11
96:5

**objective**
91:20

**obligated**
76:24

**obligations**
65:11 75:9 76:5,15
91:18,19

**odd**
99:18,22

**office**
9:12 112:9

**offset**
31:2

**ongoing**
91:21

**open**
7:9 109:23 113:7

**operate**
49:3

**operating**
36:9 47:5

**operation**
63:21

**operations**
63:18 67:5,17

**operations-type**
91:22

**order**
49:25

**organization**
86:22

**organizational**
78:23 79:13 105:16

**organize**
105:9

**original**
79:4

**originated**
113:6

**OSFI**
108:5

**outset**
109:22

**Overseas**
83:5

**overview**
13:5,6 38:24 39:8 95:9

**owned**
12:20 19:24 20:1 21:11,
19

**owns**
78:11

---

**P**

**P&c**
10:23,24 14:22,23 15:6,
10 17:6,16 18:1 20:10
22:15,20 24:7 33:10
38:21 39:1,10 47:3

**P.C.**
113:21

**p.m.**
7:3 89:6 110:2,3

**Pacific**
19:5,9,14,19,20 20:6
22:5 49:19 50:7 51:3
52:10,23 53:10,15,21
54:9,10,15,20 67:13,16,
18,19 105:20 106:1
107:6

**pages**
16:19 102:1 113:15

**paragraph**
26:11 33:9 51:16,20
63:5,11,12,15,17,19
64:14,16,19,20,23 65:6
67:2 73:1,4

**Paralegal**
113:20

**parent**
12:20,21 17:6 20:1 87:8,
9,11

**parentheses**
32:22

**part**
15:24 16:21,23 102:20
108:12

**parties**
7:18 32:7,8 71:20 73:21
113:15

**partner**
8:5

**pass**
77:22

**past**
28:16

**pay**
77:25 91:19

**pays**
31:7

**Penn**
15:21

**people**
8:10 43:23 89:17

**percent**

26:12,14,15 33:10,24,25
34:2,4,5

**percentage**
27:18

**percentages**
26:16,25 27:22,24

**performance**
73:4 91:10

**period**
14:19 19:4 20:15 29:25
30:1 34:9 40:15 74:2
80:25 81:9 84:18 87:18
88:17 106:22

**permitted**
90:9

**personal**
10:19 14:6,10,14 24:10,
16,21,22,23 26:1,7,13
27:16 96:3 106:12

**personnel**
47:5 67:4

**Philadelphia**
16:3

**Phillips**
11:1

**photocopied**
102:3

**phrase**
14:22

**picking**
11:16

**place**
75:5

**plaintiff**
9:7

**plan**
93:24

**point**
17:18 41:2 42:15 64:6
88:1 97:2 109:5

**pointed**
100:2

**polices**
60:13

**policies**

22:25 23:19,22 24:1,8
29:5,15 30:5,6 34:10,19
36:1,15 43:20 46:1,11,12
47:24 48:4,11,17 49:1
52:9,23 54:14,20 55:24
57:11 58:9 59:10 61:10
62:9

**policy**
28:22 29:10 30:1 49:8
91:18,19 93:4 94:19 95:5

**pool**
100:13,17,20 102:20

**pools**
13:12

**position**
42:21

**post**
16:6 111:2

**post-merger**
15:9,10 17:17 18:20
19:12 20:15 22:16 26:17
27:7,9 28:12,13 33:13,21
34:19 35:1,10,11 36:12
37:2,9,23 38:1 40:14,24,
25 41:16,17,18,24 44:2,
14,21 71:13

**power**
62:8

**practical**
65:17

**practice**
90:9

**practices**
90:8,12

**practitioner**
36:8

**pre-merger**
15:5 34:15 35:7 37:6,11,
19 38:23 39:7 41:10
43:14,18 44:8,17 78:5

**precise**
12:11

**precisely**
34:6

**premium**
13:11 17:21 22:22 27:22
29:10,13,14,18,21,22,23,

24 30:4,14,21 31:5,7,13
32:3,6,23 93:1,2,3,6,7,8,
9 94:3,4,6 95:4 97:4,13,
18,22,24,25 98:3 101:3,9
104:2,18

**premiums**
26:13,24 28:16,18,20
29:4 30:23 33:11,20
92:14,18 93:17,20 94:17,
18,19,23,24 96:11,13,18
97:4 100:18 101:4,17,18,
23 102:6,14,17 104:4,16,
19

**preparation**
65:13

**prepare**
10:16

**prepared**
10:20 42:18 89:24 90:6
92:23 103:7 108:6

**preparing**
14:15 89:14

**present**
9:4 11:17 14:18 48:16
91:21

**presentation**
101:12

**presented**
49:24 91:5

**pretty**
43:2

**Previously**
111:5,8

**Primarily**
52:14

**principal**
20:9 22:15,20,21 28:11

**principles**
90:14

**printing**
114:16

**prior**
13:18,21 90:16

**privileged**
114:8

**procedures**

90:8,13

**proceed**
16:24

**produce**
8:3

**produced**
7:13 33:11 49:25 79:3
80:3

**production**
7:4

**Production.mpls**
112:1,15

**Production.mpls@
epiqglobal.com**
112:1,15

**projects**
25:17

**properties**
77:17

**property**
13:19 14:24 15:2 17:3,9
24:23 25:2,3 38:19 46:24
77:10 104:22 106:9,15,
19,25

**property-type**
25:7

**protected**
114:8

**provide**
41:19 44:17,22 63:23
64:15,21 67:3 71:21
76:25

**provided**
40:12 41:11 43:24 47:21
48:11 63:20 64:2,3
65:18,20 71:25 72:6
75:22 76:6,8

**provider**
72:1,9

**providing**
40:19 41:25 75:8 76:9

**PTY**
86:6

**Public**
9:17

JOHN TAYLOR - 08/02/2018                              i15

**purpose**
103:8 106:2 108:6

**purposes**
99:8

**pursuant**
47:10 59:7 60:10 61:8
62:6 66:25 75:19

**put**
66:12 84:16

**PWC**
89:24

---

**Q**

**Q1**
107:14,22 108:17 109:2,
8

**Q2**
108:18 109:2

**Q3**
108:20 109:3

**Q4**
108:21,23 109:3,4

**qualification**
30:9

**qualifications**
74:17

**qualify**
30:10

**quarrel**
108:3

**quarter**
107:20

**quarters**
108:2

**question**
11:15,17 22:17,25 24:5,
25 25:5 27:3,6,19,20
36:22 39:8 41:16,17
43:17 44:2 45:17,18
51:15 52:16,18 53:5 63:7
64:5,7 74:18 75:17,24
76:1 82:13 83:20 90:23
93:19,23 94:2,4 95:23
96:14,21 98:20 100:15
109:14

**questioning**
42:13

**questions**
37:3 39:3 40:22 48:19
54:8,12 76:19 87:22
92:23 100:1 109:21
113:17

**quick**
100:25

**quickly**
8:10

**quote**
33:10 64:17 100:13

---

**R**

**raise**
42:9

**raised**
27:4

**rate**
30:11

**re-ask**
52:18

**read**
11:21,23 39:18 47:6
52:17 71:18 82:22 97:16
101:8 109:25

**reading**
17:8 52:11 64:8

**real**
7:25 54:3

**reason**
8:13 65:18 86:13

**recall**
21:5,23 23:16 54:12
68:21 73:17 83:13

**received**
72:1

**receives**
30:20

**recent**
50:2

**recipient**
72:2,8 114:9

**recipients**
73:23

**recite**
15:15

**recognize**
113:8

**record**
7:2 9:5 11:23 17:2 24:6
31:3,4 42:5,6,8,22 66:4,
5,11 88:20,23,24 89:6,19
92:4,10 95:8 110:2

**recorded**
32:16

**records**
7:13

**reduction**
31:5

**reference**
105:1

**referenced**
55:14

**referencing**
14:25 28:24 51:10

**referred**
62:25

**referring**
105:4

**refers**
94:17

**refrain**
114:13

**refresh**
96:8

**regard**
93:24

**regulation**
47:19

**regulators**
103:9 108:5,7

**regulatory**
109:10

**reinsurance**
27:15,16 30:14,23 52:23
61:11 93:17

**related**
42:14

**relates**
91:9

**relationship**
12:14

**relative**
40:2 105:16

**Reliance**
15:18

**remarked**
111:6,9

**reminder**
84:17

**repeat**
36:22 39:5 45:16 63:7
75:11 77:15 98:20

**repeatedly**
96:2

**rephrase**
11:20 22:25 23:2 27:19
40:16

**replace**
93:25 113:15

**reply**
114:9

**report**
27:11,14 32:25 82:10
93:1 94:5 97:22 98:6,9,
13,23 99:3,4 100:9
102:10,20 103:4 108:23

**reported**
93:11 97:4,19 100:5

**reporter**
9:2,14 11:14 16:17 66:12
92:11

**reporting**
10:23,24 13:10,11 14:7,
17 26:21,22 28:16 82:15
90:13,22 91:1,6,9,10
93:12 94:19 100:23
103:8,17 104:17,18
107:6,8,11 108:4,7,24
109:4,10 112:8

**reportings**
95:10

reports
20:8 26:12 33:9 96:11,18
99:9 100:9 102:17
103:21 106:5 108:17,18,
19,21

represent
80:5,13 81:16 87:18 88:4

representation
81:20,21 88:9,12

representing
9:12 16:18

REQUEST
111:2

requested
8:4,9

required
90:13

respect
15:6 23:17 26:4,23 41:25
43:6 44:11 51:8 53:13
54:9 56:6 71:9 98:14,15
109:14,22

respective
47:2

respond
7:24 11:15 92:23

responsibilities
13:9,13,17 15:6,9,11
38:24 39:8,17 40:12
108:14

responsibility
15:5 40:18

responsible
14:16 89:16

rest
22:7

restrict
36:19

restriction
95:21

result
63:20 97:25

resulting
108:10

return
29:10 85:20

revenue
17:21 99:8

review
10:13 11:8 52:3

reviewed
12:3 88:11

risk
30:17 31:11 58:14,19
59:4,11,14,22 60:6,14
74:10 93:3 97:7,12
102:16

risks
36:5

Rivera
9:1

role
89:14

Ron
10:22

rows
105:7

Rule
9:21,24 27:4 35:21 45:10
46:4,16 90:17 91:14
92:21 95:20

run
29:18

runs
93:4

Russ
10:23

---

**S**

safe
113:8

sale
45:8 46:1,10 49:1 80:16
95:4

sales
35:8,12

schedule
88:5

Scheduling.mpls
112:16

Scheduling.mpls@
epiqglobal.com
112:16

scope
22:24 32:13 39:16 46:4,
16 77:12 78:13 90:15
91:3,13 94:9,13

scratched
53:23

SEC
16:12 82:10

Section
52:2,7,13

Securities
81:8

sell
23:18,22 24:16 25:22
26:1 43:20 47:24 48:4,
10,14,15,25

selling
80:16

sells
24:7 26:7 29:9 36:1

sender
113:8 114:10

senior
10:25

sentence
47:1 52:14

separately
43:8

September
50:16,19 83:21,24 84:5
85:10,14

series
49:23 95:18

served
7:2,3

servers
78:6,11

service
11:9,25 40:4,12 41:7,11,
19 43:21 49:3,6,12 50:7
51:2 53:21,23,24 57:3
62:12,16 63:1,16 64:25
65:10,14 66:6,15 67:11

68:14 69:13,23 70:2,20
71:1,16,25 72:2,8,9,25
73:23 74:23 75:13,15,20

serviced
40:10

servicer
40:3 54:4

services
39:23 40:19 42:1 44:17,
22 47:21 48:4,11,23 51:6
59:3 62:2 63:18,19,24
64:2,15,21 65:9,18,20
67:4,21 68:5 71:10,21,24
72:1,5 73:1,5,8,12 75:8,
21 76:5,7,9,14,17,22,23
77:2 78:7

set
73:2 76:23

share
32:3 98:3

shared
31:2

shares
100:18

short
41:3

show
32:5,6 41:8 81:2 95:11

showed
88:6

showing
41:6

shown
96:7

sign
52:22 55:23 57:10 58:8
59:9 60:12 61:10 62:8
109:25

signature
50:24 56:14

signed
66:17 69:21

significance
7:11

similar
63:9 73:19 80:24 106:3

107:7

**simple**
76:12

**simply**
96:4 100:15

**single**
29:4

**sir**
12:6 68:1

**sister**
19:23 87:2,4

**small**
27:17

**software**
45:3,7,20,25 46:10

**sold**
23:4,6,25 24:16,22 25:2,
6,17 29:5,15 30:5,6
34:10,12,20,21 36:15,16
46:12 57:11 94:19

**solely**
106:12

**solo**
36:8

**Son**
11:10 37:13,21,24 38:1,
4,15,20,25 39:9 40:2,19
43:25 45:2 47:4,9,22
48:5,12,24 49:2,19 50:8
51:2,6,8,24 53:2,3,11,16
54:18,24 55:6,18,22
56:4,9 57:5,8,17,22 58:3,
7,15,20 59:5,8,15,22
60:7,11,18,24 61:5,9,16,
22 62:3,7,13,17,21,22,24
63:12,25 64:4 65:21
69:15,21 70:4 74:24
75:14,21 76:6 78:5,8,17

**Son's**
76:16

**sort**
25:15

**South**
113:23

**speak**
8:13 40:19

**speaking**
14:12 84:17 86:16

**specialist**
9:2

**specialty**
24:17 25:4 26:2,7,15
28:7,11 58:14,19 59:4,11
97:7

**specific**
17:18 28:21 29:22

**specifically**
9:21 41:13,18

**speculation**
49:10

**spend**
108:1

**spent**
42:12

**spoke**
10:22

**stacked**
22:6

**stacking**
21:20

**stamp**
72:14,21,22

**stamped**
52:5 104:10

**standards**
73:4

**start**
8:18 43:13 64:11 68:2
69:17 101:18

**started**
15:24 64:6

**state**
9:17 47:19

**statement**
17:12,14 29:25 79:25
80:6,22 89:24 93:8
100:4,12 102:23 103:3
105:21 106:1

**statements**
11:5 89:3,10 90:6 91:4
95:2 99:14

**states**
18:2 20:10 22:11,15,19
25:23 26:2,5 28:6,11
33:12 34:12,21 37:6,9
43:10,14 44:7 47:23 48:4
81:8,24 98:10 99:1

**statistical**
13:10

**statutory**
13:10 14:17 90:22 91:5,
9,17

**stay**
27:18 42:17

**Staying**
38:18

**stock**
21:12

**stopping**
41:2

**storage**
114:12

**Street**
113:23

**structural**
86:22

**structure**
79:13

**study**
16:4

**stupid**
24:5

**subject**
45:20 47:1,19 60:5 61:4
71:10 113:3

**submission**
81:8

**submitted**
89:17 103:4,10

**subs**
19:17

**subsidiaries**
11:10 12:1 17:7 18:4,5,
11,13,14,19 19:2,13
20:13,16 21:13,14,16,17
22:10 23:25 25:20 27:25
28:25 29:9 34:11,20

35:8,12 36:14,24 38:16,
21 39:1,9,12,14 40:7,8,
10,13,23 41:21 43:10,14,
19 44:3,19,23 46:13
47:11,13,18,23 48:3,9,25
51:9 74:1,13 79:22 80:9,
10 81:2,25 88:16 91:11
96:12,24 98:10 99:4
100:8,21 101:20 102:7,8
106:4,7,10,11,18 107:1

**Subsidiaries'**
89:2,9

**subsidiary**
12:24 17:5,15 21:1,2,8,
12 68:20,25 70:9 74:7,16
80:13 82:8,17,24 83:4,25
84:7,12,21 85:1,6,13,17,
23 86:5,11,18,24

**substance**
54:6

**substantive**
54:3

**suffers**
99:17

**suggest**
65:18

**suite**
8:24

**summation**
101:13

**supervision**
47:1

**supplement**
92:10

**supplemental**
7:4

**supported**
78:7

**supposed**
36:6

**Sureties**
25:16

**surety**
25:14,16,18,19 27:16

**Surplus**
17:24

**surviving**
67:20

**swear**
9:14

**sworn**
9:16

---

**T**

**table**
32:22

**talk**
78:25

**talked**
104:1,2

**talking**
7:12,14 8:17 13:21 45:18
63:4 72:15,16 106:22

**tantamount**
30:18

**tax**
13:11

**Taylor**
8:14,20 9:23 10:5 16:10
49:22 53:13 62:15 66:13
80:2,24 92:25 96:7

**Technically**
74:15

**technology**
43:24

**Telephone**
114:1

**telling**
82:23

**tells**
38:20 71:19 73:1

**tend**
40:5

**term**
35:16 93:4

**terms**
51:6 95:24 101:5

**Terry**
9:10

**testified**

9:18

**testify**
10:7,21 94:14 95:20 96:3

**testifying**
9:22,23

**testimony**
43:1,6

**Texas**
19:5,14,19 22:5 53:10,
15,21 54:10,15,20 66:8,
16,23 67:13,16

**text**
114:11

**tfleming@fredlaw.com**
112:23

**thing**
9:19 25:15 55:2 94:5

**things**
11:5 24:24 25:10 41:5
43:7 91:21

**thousands**
93:12

**time**
7:3 8:15 14:19 17:18
18:6,22 32:9 33:18,21
34:9,24 39:7 40:15 42:4,
7 43:11 45:5 50:5 52:3
66:3,10 68:2 74:2 80:5,
25 81:3 82:14,24 84:18
88:17,22 89:5 94:25 95:1
96:5 106:22 108:1
109:21 110:1,3

**times**
50:1

**timing**
20:18

**title**
11:3

**titled**
62:16

**To:you**
112:2

**today**
7:23 10:7,12,21 12:7
17:19 20:20,21 65:14
67:12 68:19,24 69:7
70:7,13 76:4 77:8,9

84:10 85:18 86:16 87:11

**today's**
14:15

**told**
77:6 78:4 86:22 93:5
94:6 104:16

**top**
11:3 19:22 20:9 21:5,6,
24 50:2 82:22 101:16,19
104:5

**topic**
45:10 95:23

**topics**
9:21,24 10:1,8,12 27:4
42:11,14,18 46:4,16
77:12 78:14 90:16,17
91:13 92:21,24 94:9,13
95:9,19,22

**total**
33:11 104:19

**tracked**
8:8

**treated**
91:16

**true**
17:16 18:18 24:12 26:17
33:13 34:16 35:2 36:12
44:3 48:2 54:17 63:25
68:23 70:7

**Tuesday's**
9:25

**turn**
20:8

---

**U**

**U.K.**
7:7,14 8:4 23:8 24:1

**U.S.**
11:5 13:9,19 14:17
38:21,25 39:9 51:9 89:1,
8 90:21,22 91:5,8 99:4
106:7,9,15,20,21,24

**Ultimate**
87:9,10

**ultimately**
87:10 95:22

**unclear**
64:5,7

**understand**
7:5 8:11 10:5,6 11:18
26:20 39:4 42:20 45:1
75:18,19,24,25 103:14
106:14

**understanding**
46:6,7,8 63:9 64:12 65:7
71:16,17 73:18 74:22

**understood**
74:11 77:14

**underwrite**
48:16,25 49:1 54:19

**underwriting**
39:12 92:14 101:17

**unincorporated**
38:5

**United**
18:2 20:10 22:11,14,19
25:23 26:2,5 28:6,10
33:12 34:11,21 37:6,9
43:10,14 44:6 47:23 48:3
81:8 98:10 99:1

**University**
16:2

**unknown**
7:11

**unpack**
47:8

**USA**
113:25

---

**V**

**Vague**
26:18 48:7

**values**
103:21

**versus**
8:21 42:16

**vice-president**
10:23,24 11:1,2

**video**
8:20 9:2

**Vigilant**

54:24 55:5,19,25 97:5,11
102:15

**voting**
21:12

---

**W**

---

**wait**
11:14

**walk**
63:8

**wanted**
42:9 87:20,23

**waste**
96:5

**ways**
7:21

**Wednesday**
112:14

**week**
113:13

**whatsoever**
114:15

**wholly-owned**
21:13,17 22:4,7,12 28:1
41:21 44:19,23 47:13
68:20,25 70:8 73:25
74:7,13 79:21 80:9 81:2,
25 85:1 86:5,10,18 88:16
100:21

**wise**
27:8 53:1

**withdraw**
51:13

**Woodward**
9:8

**word**
16:25 21:8 31:1 53:23

**words**
53:4

**work**
50:4 108:9,13

**working**
24:21

**works**
33:4

**write**
43:19 48:16

**written**
22:21 26:13,24 28:16,19,
20,21 29:4,12,21,22 30:4
31:5,13 32:23 33:11,21
53:24 101:3 104:4,16,18,
19

**wrong**
96:4

---

**Y**

---

**year**
16:12 18:14 20:11,12
21:15 22:11 27:21 29:3,
4,5,8,14,15,23,24 30:5,7
33:8 79:24 80:6,21 82:1,
11 87:24 93:3 94:20
97:23 107:7 108:24
109:4

**years**
13:4,9 15:19 28:17 89:10

**yesterday**
8:6 9:20

**yesterday's**
9:25

---

**Z**

---

**zeroes**
33:3,5