# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation, | ) ) ) | Case No. 16-cv-1054(WMW/DTS) |
| Plaintiff, | ) ) | **Jury Trial Demanded** |
| v. | ) ) ) | **<u>REDACTED</u>** |
| FEDERAL INSURANCE COMPANY, an Indiana corporation, and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## <u>MEMORANDUM IN SUPPORT OF PLAINTIFF FAIR ISAAC CORPORATION'S MOTION TO COMPEL</u>

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................. 1

II.  BACKGROUND ................................................................................ 3

    A.  Relevant facts and FICO's claims. ............................................. 3

    B.  FICO's first motion to compel. .................................................. 5

    C.  Federal continued to ignore the Court's Order and FICO's requests........... 6

    D.  Federal's delay warrants sanctions. ............................................ 8

III.  ARGUMENT .................................................................................. 10

    A.  FICO needs full responses to Request for Production Nos. 30-32 to determine the infringer's gross revenue to prove its disgorgement of profits damages claim.................................................................. 11

    B.  FICO needs full responses to Interrogatory Nos. 15-20 to determine the infringer's gross revenue to prove its disgorgement of profits damages claim. ................................................................. 13

    C.  FICO's Request for Production Nos. 55-70 seek the business reasons for implementation of the computer applications utilizing Blaze Advisor® software to show the nexus between Federal's use of the software and revenue................................................................. 20

    D.  FICO's Requests for Admission are proper; Federal may not re-write them. ................................................................................ 27

    E.  Federal's noncompliance with the Court's prior Order warrants sanctions. .......................................................................... 34

        1.  The Court should award attorney fees because Federal's position is not substantially justified................................. 35

        2.  The Court should award evidentiary sanctions for Federal's failure to comply with its prior Order. ............................. 36

IV.  CONCLUSION ............................................................................... 39

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Andreas v. Volkswagen of Am., Inc.*,
336 F.3d 789 (8th Cir. 2003) ........................................................................ 23

*C&C Jewelry Mfg. v. West*,
No. C09-01303 JF (HRL), 2011 U.S. Dist. LEXIS 24699 (N.D. Cal.
Feb. 28, 2011) ............................................................................................. 27

*Card Tech. Corp. v. Datacard Inc.*,
249 F.R.D. 567 (D. Minn. 2008).......................................................... 36, 37, 38

*Cargill, Inc. v. Ron Burge Trucking, Inc.*,
284 F.R.D. 421 (D. Minn. 2012).................................................................... 36

*Cassoli v. Am. Med. & Life Ins. Co.*,
No. 14-cv-9379, 2015 U.S. Dist. LEXIS 71009 (S.D.N.Y. June 2, 2015) ................. 29

*Fulhorst v. United Techs. Auto., Inc.*,
No. CIV. A. 96-577-JJF, 1997 U.S. Dist. LEXIS 22290 (D. Del. Nov.
17, 1997) .................................................................................................... 34

*Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minnesota, LLC*,
No. CV 09-3037, 2011 U.S. Dist. LEXIS 164622 (D. Minn. Mar. 3,
2011) .................................................................................................... 33, 34

*Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*,
No. 15-3183 ADM/LIB, 2017 U.S. Dist. LEXIS 1764 (D. Minn. Jan. 5,
2017) .................................................................................................... 35, 36

*Krueger v. Ameriprise Fin., Inc.*,
No. 11-2781, 2013 U.S. Dist. LEXIS 201753 (D. Minn. Aug. 15, 2013).................. 24

*Murphy v. Piper*,
No. 16-2623, 2018 U.S. Dist. LEXIS 84010 (D. Minn. May 18, 2018) .................... 26

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Donaldson Co., Inc.*,
No. CV 10-4948 JRT/AJB, 2013 U.S. Dist. LEXIS 200272 (D. Minn.
Oct. 1, 2013)............................................................................................... 33

*Reinsdorf v. Skechers U.S.A., Inc.*,
No. CV 10-7181 DDP, 2013 U.S. Dist. LEXIS 200627 (C.D. Cal. Sep. 9, 2013) ................................................................................................. 27

*Select Comfort Corp. v. Arrowood Indem. Co.*,
No. 13-2975, 2014 U.S. Dist. LEXIS 197607 (D. Minn. Oct. 6, 2014) ......... 36, 37, 38

*United States v. Egan*,
No. 13-3640, 2015 U.S. Dist. LEXIS 135124 (D. Minn. Sep. 30, 2015) ............. 37, 38

**Statutes**

17 U.S.C. 504 ................................................................................................. 5, 23

N.Y. Bus. Corp. L. § 717 ............................................................................... 29

**Other Authorities**

Fed. R. Civ. P. 26 ........................................................................................... 14, 15, 26

Fed. R. Civ. P. 30(b)(6) ................................................................................. 34, 35

Fed. R. Civ. P. 36(a)(4) ................................................................................. 27

Fed. R. Civ. P. 37 ........................................................................................... 35

Fed. R. Civ. P. 37(a)(5)(A) ............................................................................ 35, 36

Fed. R. Civ. P. 37(b)(2) ................................................................................. 36, 37, 38

## I.    INTRODUCTION

This Motion to Compel addresses the same issues the parties, Fair Isaac

Corporation ("FICO") and Federal Insurance Company ("Federal"), discussed with the

Court in the August 29 teleconference.  Given the multiple violations of the Court's

February 14 Order and the Court's August 29 telephonic guidance, sanctions are

warranted.

Request for Production Nos. 30-32 and Interrogatory Nos. 15-20: Federal still

refuses to disclose information about its revenue and profit derived from

products/services using Blaze Advisor® software (Req. for Production Nos. 30-32 and

Interrogatory Nos. 15-20).  9 months ago, this Court on February 14, 2018 ordered

Federal to respond to these discovery requests.  The Court's Order was affirmed April 24,

2018.  Yet, months later, FICO has no responses and Federal continues to tell FICO it is

investigating and working to compile the data.

Fact discovery closes 45 days (including the Holidays) from the hearing date of

the present motion, and burden of proof expert reports are due 7 days thereafter.

Regardless of how promptly the Court rules on the present motion, the time for fact

discovery and burden of proof expert reports will expire before a ruling on an appeal of

that motion.  FICO's prejudice can only be remedied under the Case Schedule by

evidentiary sanctions.

FICO requests an Order that sanctions Federal for its contempt of the February 14

Order.  FICO seeks an award of its fees incurred in the preparation of this motion, and

more importantly, a ruling that:

1

1.  The gross written premium (sometimes called direct premium) disclosed in the annual financial reports of Federal and its subsidiaries is deemed to be premium from insurance policies in connection with which Blaze Advisor® software was used.

2.  Federal may not introduce evidence of deductible expenses to reduce gross written premium to determine an amount of profit from that revenue.

<u>Request for Production Nos. 55-70</u>: Federal did not adequately investigate to find documents responsive to Request for Production Nos. 55-70.  These requests seek documents showing the business reasons for adopting the computer applications that use Blaze Advisor® software.  These documents are directly relevant to FICO's burden of proof to show a nexus between Federal's revenues and the infringing use of the Blaze Advisor® software.  Federal asserts it has produced all responsive documents.  But its document search was limited to information technology ("IT") custodians not likely to possess responsive documents.  Asking the wrong people for responsive documents is not a reasonable search under the Federal Rules.

Federal has known these documents are relevant to FICO's disgorgement analysis since the Court's February 14 Order.  Since that time, Federal has been "investigating" the existence of the requested documents.  Federal was reminded of its obligation to conduct a reasonable search in the August 29 teleconference, but maintains none exist.  Given the case schedule, referenced above, there is no time left to produce these documents.  The Court should order an additional evidentiary sanction:

3.  FICO's Blaze Advisor® software is deemed to have contributed to the gross written premium disclosed in the annual financial reports of Federal and its subsidiaries.

Request for Admission Nos. 13-16 and 20-28: Finally, Federal refuses to answer basic admissions on the basis that words with plain and ordinary meanings like "authority" and "distribute" are vague and ambiguous.  Federal refuses to answer admissions of corporate governance that follow when one corporation owns 100% of another.  Federal also refuses to answer admissions directed to the fact it enabled its related foreign companies to acquire and use Blaze Advisor® software.  Federal should be ordered to apply plain meaning to these admissions and answer them without qualification.

## II.    BACKGROUND

### A.    Relevant facts and FICO's claims.

This is an action for breach of contract and copyright infringement related to the unauthorized use of business software owned by FICO, and previously licensed to Chubb & Son, a division of Federal.  As described in the Second Amended Complaint, FICO is a world leader in the design and development of predictive analytics and decision management software.  (Dkt. 132 ¶ 10.)  One of FICO's decision management software tools is the FICO Blaze Advisor® business rules management system, which is used to design, develop, execute, and maintain rules-based business applications.  (*Id.* ¶ 11.)  Blaze Advisor® software is copyrighted, and FICO maintains federal copyright registrations related to it.  (*Id.* ¶ 12.)

Chubb & Son is an unincorporated division of Federal and serves as the manager of several United States insurance company subsidiaries of Federal.  (*Id.* ¶ 13.)  FICO and Chubb & Son entered into a Software License and Maintenance Agreement (the

"Agreement") in 2006.  (*Id.* ¶ 14.)  The Agreement and its subsequent amendments granted Chubb & Son a perpetual, non-exclusive, non-transferable, limited license to use FICO's Blaze Advisor® products and related maintenance services for internal business purposes only under defined terms and conditions.  (*Id.* ¶ 15.)

The present lawsuit seeks damages and injunctive relief arising from Federal's breach of three paragraphs of the Agreement.  Federal breached Paragraph 10.8 because Chubb & Son, a division of Federal, did not seek prior written consent before it underwent an acquisition and change of control (an event deemed to be an assignment), and failed to cure that breach before termination of the Agreement.  (*Id.* ¶¶ 16-23.) Federal breached Paragraph 3.1 by disclosing Blaze Advisor® software to unlicensed third parties, thereby permitting these third parties to access and use FICO's Blaze Advisor® software.  (*Id.* ¶¶ 24-30.)  Federal breached Paragraph 9.3 because it did not cease its use of the Blaze Advisor® software after termination of the Agreement.  (*Id.* ¶¶ 21, 31-34.)  Federal's continuing use and reproduction of FICO's Blaze Advisor software® after the license terminated, and its earlier unauthorized distributions and disclosures to third parties, are also copyright infringement.

As of January 1, 2017, the employees of Federal became employees of ACE American Insurance Company ("ACE American").  ACE American now fulfils Federal's management and services contracts for various subsidiary insurance companies, providing, among other things, Information Technology services.  ACE American is an unlicensed user of the Blaze Advisor® software and Federal is vicariously liable for that infringement.  (*Id.* ¶¶ 21, 35-43.)

4

To compensate FICO for these wrongs, FICO seeks actual damages and disgorgement of all Federal and ACE American profits (including that of their subsidiaries) attributable to their copyright infringement, among other remedies.

**B.      FICO's first motion to compel.**

Obtaining discovery responses from Federal has been continually difficult.  On February 14, the Court heard FICO's first motion to compel.  This motion sought to compel responses to Document Request Nos. 30-32.  These requests sought the revenue and profit from the products and services of each line of business that used the Blaze Advisor® software.  FICO's briefing (Dkt. 60 at 5 n.1) and oral argument (Dkt. 105 at 38-39) also identified Interrogatory Nos. 15-20 as companion discovery to the document requests that must be answered for the same reason the documents must be produced. Interrogatory Nos. 15-20 seek the gross written premium for all insurance policies of Federal and related companies in connection with which the Blaze Advisor® software was used.

The Court ruled that FICO was entitled to this discovery.  Specifically, FICO's discovery requests related to Federal's revenue and profit were relevant and narrowly tailored[1].  (*See* Dkt. 105 (the "Order"), 62:21-63:5.)  The Court understood this discovery was necessary for FICO to prove its entitlement to disgorgement of Federal's profit, a remedy that "is clearly allowed by Statute 17 U.S.C. 504."  (*Id.* at 60:10-18.)  The Court further recognized that Request Nos. 30-32 are narrowly tailored to seek only that

---

[1] Following Federal's appeal, Judge Wright affirmed the award on April 24, 2018.  (*See* Dkt. 108.)

revenue and profit resulting from the infringing activity.  (*Id.* at 62:21-63:1 ("It asked for profits and revenues associated with service[s] and products sold by divisions that used the Blaze software.  And at this stage of the litigation, they can't further tailor that.").)  Interrogatory Nos. 15-20 are similarly tailored.[2]  Federal was ordered to produce the requested documents.  (*Id.*; *see also* Dkt. 96.)

### C.    Federal continued to ignore the Court's Order and FICO's requests.

Federal is in contempt of the Court's Order.  It has not produced the requested documents.  Instead, it produced the following annual financial statements:

- Annual Statements from 2016 and 2017 for Federal and Federal's United States subsidiaries;

- The 2017 Annual Report and Financial Statements for Chubb European Group Limited;

- The 2017 Annual Report for Chubb Holdings Australia Pty Limited; and

- Quarterly Statements from 2016 and 2017 for Federal and Federal's United States based subsidiaries.

Annual financial statements do not reveal revenue and profit associated with the infringing use of the software.  The information is general; not narrowly tailored.  Federal also ignores the specific years of the requests.  An example is attached as Exhibit 1.  (*See* the Declaration of Heather J. Kliebenstein filed concurrently herewith (hereafter "Kliebenstein Decl.") Ex. 1.)

---

[2] In January of 2018, Federal told FICO that it would answer Interrogatory Nos. 15-20 should FICO prevail on its Motion to Compel responses to RFP 30-32.  (Dkt. 60 at 5 n.1.) Federal did not dispute this position at the February 14 hearing.

FICO raised the sufficiency of these responses with the Court on August 20 via the Court's informal discovery dispute procedure.  (Dkt. 129.)  The parties submitted a joint email to the Court on August 20 and held a teleconference on August 29.  During the call, the Court urged Federal to search for fully responsive documents and provide responsive information.

Additional discovery deficiencies were also discussed in that conference.  At issue was Request for Production Nos. 55-70, which seek documents relating to the business reasons behind adoption of the computer applications that use Blaze Advisor® software. These requests are relevant to prove the connection between Blaze Advisor® software and Federal's revenue and profit.  Federal knew from the Court's Order that these Requests were directed to relevant and discoverable information.  Additionally, the parties discussed these Requests with the Court during the teleconference of August 29, 2018, during which the Court instructed Federal to search the proper, non-IT focused custodians for responsive documents.  Federal's assertion it produced all relevant documents is baseless, because it has only collected documents from the wrong custodians—IT professionals—and not from persons in the relevant business groups.

Federal is also stonewalling the discovery process by refusing to give an unqualified response to requests for admission.  Request for Admission Nos. 13-16 seek to simplify the trial through uncontroversial admissions that Federal experienced an acquisition and change of control, because before January 15, 2016, it was wholly owned by one corporation and after that date it was wholly owned by a different corporation. Request for Admission Nos. 20-28 seek admissions that when Federal enabled

downloading of Blaze Advisor® software on servers of other corporate entities it

"disclosed," "distributed" or "permitted [those entities] to access" the software.  Federal

refuses to answer these admissions, claiming it does not understand words like "control"

or "distribute."  The gaming needs to stop.

### D.   Federal's delay warrants sanctions.

FICO has been asking for full responses to the discovery ordered by the Court and

sought in this motion for over seven months.  A timeline of FICO's efforts is as follows:

- <u>April 24, 2018</u>: Judge Wright affirms Magistrate Judge Schultz's Order granting in part FICO's motion to compel.

- <u>May 15, 2018</u>: FICO email to Federal seeking responses to Req. for Production 30-32; 55-70 and Interrogatory Nos. 15-20, and noting that "[t]he Court affirmed the Magistrate Judge's order on April 24—over three weeks ago."

- <u>May 21, 2018</u>: Federal stated it was conferring with its client in response to Request for Production Nos. 30-32 and 55-70.

- <u>May 24, 2018</u>: Federal stated it was working on additional responses.

- <u>May 30, 2018</u>: FICO asked again for responsive documents and information.

- <u>June 7, 2018</u>: Federal responded by serving "supplemental" responses on June 7, 2018. These supplemental responses were wholly inadequate. They did not provide revenue and profit derived from the lines of business that had used the Blaze Advisor® software. The supplemental responses stated that Federal would produce annual statements showing company-wide revenues for itself and various subsidiaries, but these company-wide revenues are not associated to the use of Blaze Advisor® software.

- <u>June 15, 2018</u>: FICO sent another reminder that Federal's production was deficient.

- <u>June 19, 2018</u>: Federal responded that they were producing annual statements for its subsidiaries in response to Req. for Production 30-32 and Interrogatory Nos. 15-20. These annual statements are non-responsive.

- <u>June 28, 2018</u>: Federal provided a document production purportedly responsive to Request for Production Nos. 30-32. This production only included service

agreements between ACE, Federal, and Federal's subsidiaries and was not responsive to the substance of the Requests.

- July 13, 2018: FICO sent an email to Federal seeking responsive documents and information.

- July 19, 2018: FICO sent a follow-up email to Federal because there was no response to its July 13 email.

- July 20, 2018: Federal stated it was not obligated to create new summary reports or documents not already in its current possession, custody or control in response to Request Nos. 30-32; that it was "working to produce financial reports related to the UK and Australia entities;" and that it "continues to search for documents."

- August 1, 2018: FICO sent Federal a draft email summarizing its position and its understanding of Federal's position in order to submit to the Court for informal dispute resolution.

- August 6, 2018: FICO sent a follow-up email to Federal because it had received no response to its email of August 1.

- August 10, 2018: Federal provided its section of the draft email to the Court.

- August 20, 2018: The parties submitted their email to the Court summarizing their position.

- August 29, 2018: The parties had an informal conference with the Court.

- September 7, 2018: Call from FICO to Federal seeking responsive documents and interrogatory responses.

- October 8, 2018: Discovery teleconference between the parties.

- October 22, 2018: Call from FICO to Federal seeking responsive documents and interrogatory responses.

- October 26, 2018: Federal produced partial and unverified supplemental responses to Interrogatory Nos. 17-20 only. These responses were wholly non-responsive to information sought in the interrogatories.

- November 6, 2018: Call from FICO to Federal; Federal stated it continued to work on preparing full responses to Interrogatory Nos. 15-20; that it had no documents in response to Req. for Production 55-70; and it was investigating the existence of documents in response to Req. for Production 30-32.

(Kliebenstein Declaration Exs. 2-17, ¶¶ 19-22, 24.)  As the timeline shows, FICO has

continually sought the discovery and worked with Federal to locate the information to no

avail.

## III.    ARGUMENT

Federal is in contempt of this Court's February 14 Order.  Its laissez faire attitude

about timely compliance with the Court's Order and responding to FICO's fair requests is

indefensible and contemptuous.  FICO asks the Court to sanction Federal by an award of

its attorneys' fees incurred in this motion, and more importantly, by ordering three

evidentiary sanctions:

1.    The gross written premium (sometimes called direct premium) disclosed in the annual financial reports of Federal and its subsidiaries is deemed to be premium from insurance policies in connection with which Blaze Advisor® software was used.

2.    Federal may not introduce evidence of deductible expenses to reduce gross written premium to determine an amount of profit from that revenue.

3.    Blaze Advisor® software is deemed to have contributed to all of the revenue from insurance policies in connection with which Blaze Advisor® software was used.

Federal has denied FICO evidence directed to FICO's burden to prove the gross

revenue in support of disgorgement damages as well as the evidence to defend against

any Federal expert report reducing that gross amount to profit.  Federal also has denied

FICO evidence showing the connection between Federal's use of Blaze Advisor®

software and its revenue.  The prejudice to FICO is clear.  Federal should not gain

evidentiary advantage from stonewalling discovery.

A.     **FICO needs full responses to Request for Production Nos. 30-32 to determine the infringer's gross revenue to prove its disgorgement of profits damages claim.**

Federal is in breach of this Court's February 14 Order, compelling Federal to produce documents in response to FICO's Request for Production Nos. 30-32.  The Order also rejected Federal's relevancy objection to Interrogatory Nos. 15-20.  Requests for Production Nos. 30-32 seek:

> **REQUEST FOR PRODUCTION NO. 30:** Summary reports sufficient to show gross and net revenues, and gross and net profits, derived from the products and services of each line of business of Chubb & Son, a division of Federal, for which the Blaze Advisor® software has been used (including, without limitation, for any underwriting, pricing, premium validation, or claim segmentation function in connection with the products and services of such line of business) for each quarter from January 1, 2016 to the present.

> **REQUEST FOR PRODUCTION NO. 31:** Summary reports sufficient to show gross and net revenues, and gross and net profits, derived from the products and services of each line of business of every division or entity (other than Chubb & Son, a division of Federal) to whom Federal has disclosed and/or permitted to use the Blaze Advisor® software, for which the Blaze Advisor® software has been used (including, without limitation, for any underwriting, pricing, premium validation, or claim segmentation function in connection with the products and services of such line of business), for each quarter from January 1, 2016 to the present.

> **REQUEST FOR PRODUCTION NO. 32:** Without limitation to the scope of Request Nos. 30 and 31, summary reports sufficient to show gross and net revenues, and gross and net profits, derived from each line of business of Chubb & Son, a division of Federal, and of every other division or entity to whom Federal has disclosed and/or permitted to use the Blaze Advisor® software, including the Specialty, Commercial, and Surety Bonds lines of business, for each quarter from January 1, 2016 to the present.

(Kliebenstein Decl. Ex. 18.)  Federal's response and objection to each of Request Nos. 30-32 was identical:

11

> **RESPONSE:** Federal objects to this request because it seeks information that is not relevant. Federal's profits are not reasonably related to the alleged infringement, as is necessary for FICO to obtain an award of the defendant's profits. *See, e.g.*, *Francois v. Ruch,* 2006 WL 3735950, at *3 (C.D. Ill. Dec. 15, 2006).

(*Id.*)  The objection was rejected by the Court in its February 14 Order.  Judge Wright affirmed the Court's Order.  (*See* Dkt. 108.)

Federal's supplemental responses did not answer the entire request:

> **SUPPLEMENTAL RESPONSE:** Subject to, and without waiving this objection, Federal states that it will produce the annual statements for 2016 and 2017 relating to Federal and its subsidiaries. Discovery is continuing. To the extent Federal determines that a subsidiary has not used the Blaze Advisor® software, Federal will update its discovery responses accordingly.

(Kliebenstein Decl. Ex. 19.)  Federal produced "annual statements" on June 19, 2018. These reports are not what FICO sought.  FICO asked for revenue and profit by quarter and received annual data.  More importantly, FICO asked for revenue and profit derived from the products and services of each line of business for which the Blaze Advisor® software has been used, and instead, received company-wide information.

Sanctions are appropriate.  FICO cannot determine the gross revenue attributable to copyright infringement (Federal's revenue derived from the products and services in connection with which Blaze Advisor® software was used) from company-wide information, unless all gross revenue is attributable to infringement.  Additionally, FICO cannot defend against Federal's damages expert report, likely to reduce gross revenue to profit, when none of the documents relating to those deductible expenses are produced. The prejudice to FICO is clear and substantial.

**B.**     **FICO needs full responses to Interrogatory Nos. 15-20 to determine the infringer's gross revenue to prove its disgorgement of profits damages claim.**

Federal is stonewalling discovery responsive to the related Interrogatory Nos. 15-20. These interrogatories, served on December 29, 2017, seek the same type of information as Request Nos. 30-32:

**INTERROGATORY NO. 15:** For all insurance policies in connection with which the Blaze Advisor® software was used, the gross written premium of Federal and the gross written premium of each related company, including the specific identification of each related company, for each year from 2001-2006. For clarity, this Interrogatory is not seeking investment income, other income, or capital and surplus accounts.

**INTERROGATORY NO. 16:** For all insurance policies in connection with which the Blaze Advisor® software was used, the gross written premium of Federal and the gross written premium of each related company, including the specific identification of each related company, for each year from 2007-2012. For clarity, this Interrogatory is not seeking investment income, other income, or capital and surplus accounts.

**INTERROGATORY NO. 17:** For all insurance policies in connection with which the Blaze Advisor® software was used, the gross written premium of Federal and the gross written premium of each related company, including the specific identification of each related company, for each quarter from March 30, 2016 to date. For clarity, this Interrogatory is not seeking investment income, other income, or capital and surplus accounts.

**INTERROGATORY NO. 18:** From the date of first use of the Blaze Advisor® software in the United Kingdom and thereafter by quarter, the gross written premium of each such company, including specific identification of each company, from all insurance policies in connection with which the Software was used.

**INTERROGATORY NO. 19:** From the date of first use of the Blaze Advisor® software in Canada and thereafter by quarter, the gross written premium of each such company, including specific identification of each company, from all insurance policies in connection with which the Software was used.

13

**INTERROGATORY NO. 20:** From the date of first use of the Blaze Advisor® software in any other country other than the United States, the United Kingdom or Canada, and thereafter by quarter, the gross written premium of each such company, including specific identification of each company, from all insurance. policies in connection with which the Software was used.

(Kliebenstein Decl. Ex. 20.)  Federal's initial objections, served January 30, 2018,

asserted the same relevancy objection rejected by the Court at the February 14 hearing:

**RESPONSE [TO NO. 15:]** Federal objects to the request for "all" insurance policies and the request for information more than 17 years old as overbroad, unduly burdensome, and not proportional to the needs of this case. Federal also objects to this Interrogatory as compound and impermissibly constituting multiple interrogatories, which are limited in number under the Federal Rules. Federal also objects to this Interrogatory as vague and ambiguous in failing to identify the relevant "use" and calling for insurance policies "in connection with." Federal further objects to this Interrogatory because "the gross written premium of Federal and the gross written premium of each related company" are not relevant to any claim or defense in this action, including because Federal's profits are not reasonably related to the alleged infringement, as is necessary for FICO to obtain an award of the defendant's profits. *See, e.g.*, *Francois* v. *Ruch*, 2006 WL 3735950, at *3 (C.D. Ill. Dec. 15, 2006). Federal further objects to the extent the Interrogatory seeks information not in the possession, custody, or control of Federal, and thus exceeds the scope of discovery under Federal Rule 26(b)(1).

**RESPONSE [TO NO. 16:]** Federal objects to the request for "all" insurance policies and the request for information more than 10 years old as overbroad, unduly burdensome, and not proportional to the needs of this case. Federal also objects to this Interrogatory as compound and impermissibly constituting multiple interrogatories, which are limited in number under the Federal Rules. Federal also objects to this Interrogatory as vague and ambiguous in failing to identify the relevant "use" and calling for insurance policies "in connection with." Federal further objects to this Interrogatory because "the gross written premium of Federal and the gross written premium of each related company" are not relevant to any claim or defense in this action, including because Federal's profits are not reasonably related to the alleged infringement, as is necessary for FICO to obtain an award of the defendant's profits. *See, e.g.*, *Francois* v. *Ruch*,

2006 WL 3735950, at *3 (C.D. Ill. Dec. 15, 2006). Federal further objects to the extent the Interrogatory seeks information not in the possession, custody, or control of Federal, and thus exceeds the scope of discovery under Federal Rule 26(b)(1).

**RESPONSE [TO NO. 17:]** Federal objects to the request for "all" insurance policies as overbroad, unduly burdensome, and not proportional to the needs of this case. Federal also objects to this Interrogatory as compound and impermissibly constituting multiple interrogatories, which are limited in number under the Federal Rules. Federal also objects to this Interrogatory as ambiguous in failing to identify the relevant "use" and calling for insurance policies "in connection with." Federal further objects to this Interrogatory because "the gross written premium of Federal and the gross written premium of each related company" are not relevant to any claim or defense in this action, including because Federal's profits are not reasonably related to the alleged infringement, as is necessary for FICO to obtain an award of the defendant's profits. *See, e.g.*, *Francois v. Ruch,* 2006 WL 3735950, at *3 (C.D. Ill. Dec. 15, 2006). Federal further objects to the extent the Interrogatory seeks information not in the possession, custody, or control of Federal, and thus exceeds the scope of discovery under Federal Rule 26(b)(l).

**RESPONSE [TO NOS. 18-20:]** Federal objects to the request for "all" insurance policies and the request for information without any time limitation as overbroad, unduly burdensome, and not proportional to the needs of the case. Federal also objects to this Interrogatory as compound and impermissibly constituting multiple interrogatories, which are limited in number under the Federal Rules. Federal also objects to this Interrogatory as vague and ambiguous in referring to "any such company," failing to identify the relevant "use," and calling for insurance policies "in connection with." Federal further objects to this Interrogatory because "the gross written premium of" some unidentified "such" company is not relevant to any claim or defense in this action, including because Federal's profits are not reasonably related to the alleged infringement, as is necessary for FICO to obtain an award of the defendant's profits. *See, e.g.*, *Francois v. Ruch,* 2006 WL 3735950, at *3 (C.D. Ill. Dec. 15, 2006). Federal further objects to the extent the Interrogatory seeks information not in the possession, custody, or control of Federal, and thus exceeds the scope of discovery under Federal Rule 26(b)(l).

(*Id.* Ex. 21.)

Federal agreed to respond to these interrogatories should the Court compel responses to Request for Production Nos. 30-32.  (Dkt. 60 at 5 n.1.)  Six months after FICO served these interrogatories, on June 19, 2018, Federal responded via email, incorporating by reference the annual financial reports produced in response to Request for Production 30-32.  (Kliebenstein Decl. Ex. 8.)  Again, these reports are no more responsive to these interrogatories than they are to the document requests.  All interrogatories sought quarterly information.  FICO asked for the gross written premiums for insurance policies in connection with which Blaze Advisor® software was used—not company-wide revenue.  Federal made no effort to respond to Interrogatory Nos. 15 and 16, which sought data from 2000-2006 and 2007-2012.

The parties informally addressed the Court regarding these deficiencies via email on August 20, and conducted a teleconference with the Court on August 29.  (Dkt. 129; Kliebenstein Decl. Ex. 16.)

Two months later, on October 26, 2018, Federal provided the following supplemental answers to Interrogatory Nos. 17-20 (but not Interrogatory Nos. 15-16):

> **SUPPLEMENTAL ANSWER [TO NO. 17:]** For the Financial lines unit, the following applications use Blaze Advisor® software: CSI eXPRESS (Automated Renewal Process). The 2017 gross written premiums from the issuance of insurance policies that used those applications, in connection with which the Blaze Advisor® software was used, is approximately $863,000,000. The number of policies that were issued using those applications, in connection with which the Blaze Advisor® software was used, is approximately 81,000. Discovery is continuing.

> **SUPPLEMENTAL ANSWER [TO NO. 18:]** For the COG/EUZ business unit, the following application uses Blaze Advisor® software in the United Kingdom: EZER. The 2017 gross written premiums from the issuance of insurance policies that used EZER, in connection with which the Blaze

Advisor® software was used in the United Kingdom, is approximately $45,600,000. The number of policies that were issued using Evolution, in connection with which the Blaze Advisor® software was used in the United Kingdom, is approximately 5,700. Discovery is continuing.

**SUPPLEMENTAL ANSWER [TO NO. 19:]** For the CAH/Canada business unit, the following application uses Blaze Advisor® software in Canada: Evolution. The 2017 gross written premiums from the issuance of insurance policies that used Evolution, in connection with which the Blaze Advisor® software was used in Canada, is approximately $330,000,000. The number of policies that were issued using Evolution, in connection with which the Blaze Advisor® software was used in Canada, is approximately 85,000. Discovery is continuing.

**SUPPLEMENTAL ANSWER [TO NO. 20:]** For the COG/EUZ business unit, the following application uses Blaze Advisor® software in Australia: ADAPT. The 2017 gross written premiums from the issuance of insurance policies that used ADAPT, in connection with which the Blaze Advisor® software was used in Australia, is approximately $7,900,000. The number of policies that were issued using ADAPT, in connection with which the Blaze Advisor® software was used in Australia, is approximately 5,300. Discovery is continuing.

(Kliebenstein Decl. Ex. 22-25.)  The answers for Nos. 17-20 are incomplete.

These interrogatories asked Federal to state the gross written premium for all insurance policies in connection with which Blaze Advisor® software was used. Federal's verified second supplemental response to Interrogatory 4 identified the following applications as using Blaze Advisor® software:

| Business Unit | Application |
|---|---|
| CSI (Chubb Specialty Insurance) | CSI Express (including CIS Claims) Decision Point Automated Renewal Process |
| CCI (Chubb Commercial Insurance) | CUW IRMA (Individual Rate Modification Application) TAPS (Texas Accident Prevention System) |
| CBS (Corporate Business Systems) | Premium Booking |

| Surety | Cornerstone |
|---|---|
| CAH (Canada Accident and Health) | Evolution |
| EUZ (European Zone) | Adapt-ABL |
| | EZER |

(*Id.* Ex. 26.)[3]  Federal's answers should at least address these applications.

But Federal's supplemental answer to Interrogatory No. 17 merely provides the 2017 gross written premiums for an unnamed "Financial lines unit" and a single computer application, CSI EXPRESS.[4]  There is no data for 2016 and 2018.  Federal ignores all other applications that use Blaze Advisor® software and ignores that the interrogatories seek the gross written premiums for <u>all</u> insurance policies in connection with which Blaze Advisor® software was used.

Federal's supplemental answers to Interrogatory Nos. 18-20 are similarly deficient.  None of the supplemental answers provide the quarterly gross written premiums as sought.  Only the year 2017 was included in the responses.

The supplemental answer to Interrogatory No. 18 (EU usage of Blaze Advisor®) ignores premiums associated with the Adapt-ABL application, specifically identified in the response to Interrogatory 4.  (*See id.*)

---

[3] FICO believes this response to Interrogatory No. 4 is incomplete as well, as Federal's documents reveal that additional applications use Blaze Advisor® beyond those identified in this chart.

[4] Federal may contend its response is sufficient for at least the CSI business unit.  It is not.  Federal's documents show the "financial lines unit" is simply a subset of the Chubb Specialty Insurance unit. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Kliebenstein Decl. Ex. 27 at FED009631, Reference #9.)  Chubb's "financial lines" is a subset of the Chubb Specialty Insurance business, offering professional liability, management liability and cyber risk coverage.  (Kliebenstein Decl. Ex. 28 at FED000061_0005.)

The supplemental answer to Interrogatory No. 19 (Canadian usage of Blaze Advisor®) merely provides the gross written premiums for the year 2017 of the CAH/Canada business unit for a single named application, Evolution.  ██████████
█████████████████████████████████████████████████████████████
████████████████████ (*Id.* Ex. 29 at 3.)

Regarding Australia, the supplemental answer to Interrogatory No. 20 only provides the gross written premiums for 2017 for the COG/EUZ business unit using the Blaze Advisor® software in Australia for a single named application, Adapt.  ███████
████████████████████████ (*Id.* Ex. 30 at 4.)

Federal completely ignored Interrogatory Nos. 15 and 16.  Federal produced no financial information between the years of 2001-2006 and 2007-2012.  Federal has the data to answer these interrogatories, because it used this data set to partially answer Interrogatory Nos. 17-20.  This discovery matters because revenues from 2002-2006 and 2007-2012 may show the effect of Federal's adoption of the Blaze Advisor® software.  A comparison of Federal's revenues obtained before it began using the Blaze Advisor® software (sought by Interrogatory No. 15) with the revenues obtained after it began using the Blaze Advisor® software (sought by Interrogatory No. 16) is probative of the effect of Blaze Advisor® software on Federal's revenues.

**C.      FICO's Request for Production Nos. 55-70 seek the business reasons for implementation of the computer applications utilizing Blaze Advisor® software to show the nexus between Federal's use of the software and revenue.**

Federal has not conducted an adequate investigation relating to Request for Production Nos. 55-70, and sanctions are warranted. These requests seek documents showing why and how Federal's computer applications that use Blaze Advisor® software contribute to Federal's business—*i.e.*, the extent to which computer applications containing Blaze Advisor® software contribute to Federal's revenues and profitability. This information is relevant to prove the connection between infringement of the copyrighted works and Federal's revenues. Request for Production Nos. 55-70 are repeated below:

> **REQUEST FOR PRODUCTION NO. 55:** All documents relating to the decision to implement the application known as CSI Express, including all documents relating to the business benefits to be derived from the implementation and the efficiencies to be realized from using the application.

> **REQUEST FOR PRODUCTION NO. 56:** All documents relating to the decision to implement or considerations to implement the application known as CSI/Upsell Simulator, including all documents relating to the business benefits to be derived from the implementation and the efficiencies to be realized from using the application.

> **REQUEST FOR PRODUCTION NO. 57:** All documents relating to the decision to implement the application known as Decision Point, including all documents relating to the business benefits to be derived from the implementation and the efficiencies to be realized from using the application.

> **REQUEST FOR PRODUCTION NO. 58:** All documents relating to the decision to implement the application known as Automated Renewal Process, including all documents relating to the business benefits to be

derived from the implementation and the efficiencies to be realized from using the application.

**REQUEST FOR PRODUCTION NO. 59:** All documents relating to the decision to implement the application known as CUW, including all documents relating to the business benefits to be derived from the implementation and the efficiencies to be realized from using the application.

**REQUEST FOR PRODUCTION NO. 60:** All documents relating to the decision to implement the application known as IRMA, including all documents relating to the business benefits to be derived from the implementation and the efficiencies to be realized from using the application.

**REQUEST FOR PRODUCTION NO. 61:** All documents relating to the decision to implement the application known as TAPS, including all documents relating to the business benefits to be derived from the implementation and the efficiencies to be realized from using the application.

**REQUEST FOR PRODUCTION NO. 62:** All documents relating to the decision to implement the application known as Premium Booking, including all documents relating to the business benefits to be derived from the implementation and the efficiencies to be realized from using the application.

**REQUEST FOR PRODUCTION NO. 63:** All documents relating to the decision to implement the application known as CIS Claims, including all documents relating to the business benefits to be derived from the implementation and the efficiencies to be realized from using the application.

**REQUEST FOR PRODUCTION NO. 64:** All documents relating to the decision to implement the application known as Cornerstone, including all documents relating to the business benefits to be derived from the implementation and the efficiencies to be realized from using the application.

**REQUEST FOR PRODUCTION NO. 65:** All documents relating to the decision to implement the application known as Adapt-ABL, including all documents relating to the business benefits to be derived from the

implementation and the efficiencies to be realized from using the application.

**REQUEST FOR PRODUCTION NO. 66:** All documents relating to the decision to implement the application known as Evolution, including all documents relating to the business benefits to be derived from the implementation and the efficiencies to be realized from using the application.

**REQUEST FOR PRODUCTION NO. 67:** All documents relating to the decision to implement the application known as EZER, including all documents relating to the business benefits to be derived from the implementation and the efficiencies to be realized from using the application.

**REQUEST FOR PRODUCTION NO. 68:** All documents relating to the decision to implement the application known as Commercial PAS in EUZ, including all documents relating to the business benefits to be derived from the implementation and the efficiencies to be realized from using the application.

**REQUEST FOR PRODUCTION NO. 69:** All documents relating to the decision to implement the application known as Claims Connect, including all documents relating to the business benefits to be derived from the implementation and the efficiencies to be realized from using the application.

**REQUEST FOR PRODUCTION NO. 70:** All documents relating to the decision to implement the application known as Small Commercial, including all documents relating to the business benefits to be derived from the implementation and the efficiencies to be realized from using the application.

(Kliebenstein Decl. Ex. 31.)  Federal's response to each of these Requests was identical:

**RESPONSE:** Federal objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks "all" documents and is unlimited in time. Federal also objects to this request as vague and overbroad because it seeks all documents "relating to the business benefits" and "efficiencies to be realized from using the application." Federal also objects to this request as vague and overbroad because it seeks documents that have no bearing on the claims and defenses in this action.

(*Id.*)

Federal knew these Requests were directed to relevant, discoverable information following the Court's February 14 Order.  The Court explained that FICO was allowed to obtain discovery to prove its entitlement to disgorgement of Federal's profits, a remedy that "is clearly allowed by Statute 17 U.S.C. 504."  (Dkt. 105 at 60:10-18.)  As discussed with the Court, although not required at the discovery stage, to be awarded disgorgement at trial FICO will prove "some connection or relationship" between Federal's infringement and the profit sought.  *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 799 (8th Cir. 2003).  Documents showing Federal's business reasons for adopting the applications that use Blaze Advisor® software may prove "some connection or relationship" between Federal's infringing use of Blaze Advisor® software and revenue.

Federal ignored the guidance of the Court's Order and did not fully and expeditiously investigate to find the custodians likely to have documents responsive to these Requests.  During the meet and confer process over the past several months, and during the parties' call with the Court on August 29, Federal agreed to search for and produce documents responsive to Request for Production 55-70.  Based on the parties' correspondence and the call with the Court, Federal was fully aware that it needed to perform a reasonable search of its custodians and produce responsive documents, which it failed to do.

Parties have an obligation to undertake a reasonable search for responsive documents, including a search of custodians likely to possess relevant information.  *See*

*Krueger v. Ameriprise Fin., Inc.*, No. 11-2781 (SRN/JSM), 2013 U.S. Dist. LEXIS

201753, at *24-25 (D. Minn. Aug. 15, 2013) (rejecting defendant's "attempt to limit

discovery" and ordering search of custodians likely to possess relevant documents).

To date, Federal says it searched for information from the following custodians:

- Amy Bell, IT Process Manager/S&O Demand Manager

- David Gibbs, IT Manager Commercial Lines at Chubb EUZ

- Russell Hodey, APZ  IT Program Manager, formerly CAH (Causality Accident & Health) IT Project Manager Chubb EUZ

- Pamela Lopata, Assistant Vice President and Assistant Counsel

- Henry Mirolyuz, Senior Systems Architect

- Carla Owens, Assistant Vice President, Profitability Indicator Project Manager

- Ramesh Pandey, VP, Chief Architect and Enterprise Architect Leader

- Alexander Pavlenko, Development & Architecture Services Supervisor, IT Department, Chubb Insurance Company of Canada

- Tamra Pawloski, VP Software Compliance

- Ewen Setti, Development Manager, Chubb Insurance Company of Europe SE

- Patrick Sullivan, VP-Chief Architect and Enterprise Architecture Practice Leader

- Zorica Todorovic, VP, Business Technology Manager, Chubb Canada

- Hamish Tonkin, VP, Global Technology Lead, Chubb Insurance Company of Europe SE

- Edward Tornick, Technology Manager

(Kliebenstein Decl. Ex. 32 and ¶ 40.)

Federal is asking the wrong people the wrong questions.  The computer

applications that utilize Blaze Advisor® software are not developed to meet the needs of

the IT group.  As Mr. Mirolyuz (an IT application architect) testified, the decision to

create the applications that use Blaze Advisor® software come from the business side of the house—not the IT group.  (Kliebenstein Decl. Ex. 33 at 15:23-16:7.)  The desire or need to develop and implement IT solutions originates with individuals in the business departments, those using the solutions to generate revenue.  Business departments, like underwriting, then interface with Business Analysts to create Business Requirements Documents that identify the functional requirements of the desired project.  A Business Requirements Document is then used by Information Technology (IT) personnel to design and implement the solution requested by the business departments.



This evidence shows that Federal's document investigation and collection efforts have focused on the IT group.  Federal has not asked any underwriters or other business representatives whether they have responsive documents.  A reasonable search would involve pulling each Business Requirements Document for each Blaze Advisor® project and interviewing the business sponsor for the projects.  (*See, e.g*, Kliebenstein Decl. Ex.

26 at 7.)  A search of IT employees' files and a single business person (Ms. Owens) is not

a reasonable search under FRCP 26.

Federal will argue it has searched many custodians' files and doing more is

unreasonable.  But searching the wrong custodians is not a reasonable search.  Federal

has access to the proper custodians and their files in its own databases.  Searching for a

party's own custodians and in a party's own databases is not considered extensive or an

unreasonable research.  *See Murphy v. Piper*, No. 16-2623 (DWF/BRT), 2018 U.S. Dist.

LEXIS 84010, at *17-18 (D. Minn. May 18, 2018).  As the Court noted in the February

14 hearing on the first motion to compel, searching Federal's own documents is not

unreasonable:

> The allegations or the amount in controversy in this case is, depending on
> one's perspective—obviously, the parties disagree—but at least tens of
> millions, if not more than that, that is at stake in the litigation. And that's all
> relevant here because ultimately there is very little, if anything, as we'll go
> through this that I see that is disproportionate considering the needs of the
> case and considering the amount in controversy.

(Dkt 105 at 55:12-19.)  The fact that Federal may have produced what it has from a

narrow, non-responsive collection does not satisfy its obligations under the Federal

Rules.  Sanctions are warranted.  Federal knew in February it needed to produce these

documents, because its "nexus" based objection was overruled by the Court.  The Court

reminded Federal of its duties in the August 29 teleconference.  Producing these

documents now is insufficient relief, given 8 months has passed since the first motion to

compel, depositions have been taken, discovery closes in weeks and expert reports are

due immediately thereafter.  FICO requests an evidentiary sanction ruling that FICO's

Blaze Advisor® software contributed to the gross written premium disclosed in the annual financial reports of Federal and its subsidiaries.

**D.    FICO's Requests for Admission are proper; Federal may not re-write them.**

The Court should order Federal to respond fully to FICO's Requests for Admission Nos. 13-16 and 20-28.  Federal objected to these Requests as vague and ambiguous and refused to answer them as written.  Federal's objections are not proper under the law.

Under Fed. R. Civ. P. 36(a)(4), a party must admit, deny, or "state in detail why the answering party cannot truthfully admit or deny it.  A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest."  *See C&C Jewelry Mfg. v. West*, No. C09-01303 JF (HRL), 2011 U.S. Dist. LEXIS 24699, at *5-6 (N.D. Cal. Feb. 28, 2011) (overruling objections to Requests for Admission on basis of vagueness and ambiguity).  Ambiguity objections are improper where the objected to terms have "ordinary, plain meaning[s], particularly in . . . context." *Reinsdorf v. Skechers U.S.A., Inc.*, No. CV 10-7181 DDP (SSx), 2013 U.S. Dist. LEXIS 200627, at *28 (C.D. Cal. Sep. 9, 2013).

Here, the terms to which Federal objects are common terms to be construed in accordance with their plain and ordinary meaning.  For example, FICO's Request for Admission Nos. 13-16 seek information regarding basic facts resulting from the merger transaction.  In response to Request Nos. 13-16, Federal objected that the terms

27

"authority to direct" (Req. for Admission 13 and 15); "power to direct" (Req. for

Admission 14 and 16); and "cause the direction" (Req. for Admission 13-16) were vague

and ambiguous:

> **REQUEST FOR ADMISSION NO. 13:** Admit that before January 15, 2016, The Chubb Corporation had the authority to direct or cause the directions of the management and policies of Federal Insurance Company.
>
> ***RESPONSE [TO NO. 13]:*** *Admitted that at times prior to January 15, 2016, Federal was a wholly-owned subsidiary of the Chubb Corporation. Federal objects to this request because the phrase "authority to direct or cause the directions" is vague and ambiguous. Federal is without sufficient information to further admit or deny this request as written. Accordingly, to the extent not admitted, Federal denies this request.*
>
> **REQUEST FOR ADMISSION NO. 14:** Admit that before January 15, 2016, The Chubb Corporation had the power to direct or cause the directions of the management and policies of Federal Insurance Company.
>
> ***RESPONSE [TO NO. 14]:*** *Admitted that at times prior to January 15, 2016, Federal was a wholly-owned subsidiary of the Chubb Corporation. Federal objects to this request because the phrase "power to direct or cause the directions" is vague and ambiguous. Federal is without sufficient information to further admit or deny this request as written. Accordingly, to the extent not admitted, Federal denies this request.*
>
> **REQUEST FOR ADMISSION NO. 15:** Admit that after January 15, 2016, Chubb Limited, formerly known as ACE Limited, had the authority to direct or cause the directions of the management and policies of Federal Insurance Company.
>
> ***RESPONSE [TO NO. 15]:*** *Admitted that after January 15, 2016, Federal was a wholly-owned subsidiary of ACE INA Holdings Inc., which changed its name to Chubb INA Holdings Inc. on March 22, 2016. Admitted that after March 22, 2016 Chubb INA Holdings Inc. was 20% held by Chubb Limited and 80% held by Chubb Group Holdings Inc., whose corporate parent is Chubb Limited. Federal objects to this request because the phrase "authority to direct or cause the directions" is vague and ambiguous. Federal is without sufficient information to further admit or deny this request as written. Accordingly, to the extent not admitted, Federal denies this request.*

**REQUEST FOR ADMISSION NO. 16:** Admit that after January 15, 2016, Chubb Limited, formerly known as ACE Limited, had the power to direct or cause the directions of the management and policies of Federal Insurance Company.

*__RESPONSE [TO NO. 16]:__ Admitted that after January 15, 2016, Federal was a wholly-owned subsidiary of ACE INA Holdings Inc., which changed its name to Chubb INA Holdings Inc. on March 22, 2016. Admitted that after March 22, 2016 Chubb INA Holdings Inc. was 20% held by Chubb Limited and 80% held by Chubb Group Holdings Inc., whose corporate parent is Chubb Limited. Federal objects to this request because the phrase "authority to direct or cause the directions" is vague and ambiguous. Federal is without sufficient information to further admit or deny this request as written. Accordingly, to the extent not admitted, Federal denies this request.*

(Kliebenstein Decl. Ex. 35.)

Federal is wrong—the phrases "authority to direct," "power to direct," and "cause the direction" are not vague and ambiguous.  These phrases directly tie to corporate ownership under New York law, which governs the Agreement at issue.  New York law defines "control" as "the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of the corporation, whether through the ownership of voting stock, by contract, or otherwise."  N.Y. Bus. Corp. L. § 717.  Accordingly, courts have explained, "a change in control contemplates – at a minimum – a change in the ownership or management of a corporation such that a new entity has the ability to direct the management and policies of the corporation."  *Cassoli v. Am. Med. & Life Ins. Co.*, No. 14-cv-9379, 2015 U.S. Dist. LEXIS 71009, at *9-10 (S.D.N.Y. June 2, 2015) (applying New York state law and finding that a "change of control" is tied to a change in corporate ownership).

29

The answer to these Requests for Admissions flows directly from the corporate ownership that Federal does admit.  Federal admitted in its conditional responses that Federal (1) was a wholly-owned subsidiary of the Chubb Corporation prior to January 15, 2016; and (2) is a downstream subsidiary of the parent Chubb Limited after January 15, 2016.  There is no dispute Federal is wholly owned by a different company after January 15, 2016.  Chubb Corporation had the authority and power to direct Federal before January 15, 2016, and Chubb Limited thereafter.  Federal's acknowledgement of the facts of the change of control and its refusal to unqualifiedly admit is evasive.  Federal should be ordered to admit Req. for Admission 13-16.

FICO's Request for Admission Nos. 20-28 seek information regarding Federal's disclosure of the Blaze Advisor® software to third parties.  Federal objected that the terms "disclosed" (Req. for Admission 20, 23, and 26); "distributed" (Req. for Admission 21, 24, and 27); and "permitted . . . to access" (Req. for Admission 22, 25, and 28) were vague and ambiguous:

> **REQUEST FOR ADMISSION NO. 20:** Admit that Federal has disclosed the Blaze Advisor® software to Chubb Insurance Company of Europe SE.
>
> ***RESPONSE [TO NO. 20]:*** *Federal objects to this request because the phrase "disclosed the Blaze Advisor® software" is vague and ambiguous. Subject to the above, Federal admits that Chubb Insurance Company of Europe SE made use of Blaze Advisor® software. Federal is without sufficient information to further admit or deny this request as written. Accordingly, to the extent not admitted, Federal denies this request.*
>
> **REQUEST FOR ADMISSION NO. 21:** Admit that Federal has distributed the Blaze Advisor® software to Chubb Insurance Company of Europe SE.

*RESPONSE [TO NO. 21]: Federal objects to this request because the phrase "distributed the Blaze Advisor® software" is vague and ambiguous. Subject to the above, Federal admits that Chubb Insurance Company of Europe SE made use of Blaze Advisor® software. Federal is without sufficient information to further admit or deny this request as written. Accordingly, to the extent not admitted, Federal denies this request.*

**REQUEST FOR ADMISSION NO. 22:** Admit that Federal permitted Chubb Insurance Company of Europe SE to access the Blaze Advisor® software.

*RESPONSE [TO NO. 22]: Federal objects to this request because the phrase "permitted . . . to Access" is vague and ambiguous. Subject to the above, Federal admits that Chubb Insurance Company of Europe SE made use of Blaze Advisor® software. Federal is without sufficient information to further admit or deny this request as written. Accordingly, to the extent not admitted, Federal denies this request.*

**REQUEST FOR ADMISSION NO. 23:** Admit that Federal has disclosed the Blaze Advisor® software to Chubb Insurance Company of Canada.

*RESPONSE [TO NO. 23]: Federal objects to this request because the phrase "disclosed the Blaze Advisor® software" is vague and ambiguous. Subject to the above, Federal admits that Chubb Insurance Company of Canada made use of Blaze Advisor® software. Federal is without sufficient information to further admit or deny this request as written. Accordingly, to the extent not admitted, Federal denies this request.*

**REQUEST FOR ADMISSION NO. 24:** Admit that Federal has distributed the Blaze Advisor® software to Chubb Insurance Company of Canada.

*RESPONSE [TO NO. 24]: Federal objects to this request because the phrase "distributed the Blaze Advisor® software" is vague and ambiguous. Subject to the above, Federal admits that Chubb Insurance Company of Canada made use of Blaze Advisor® software. Federal is without sufficient information to further admit or deny this request as written. Accordingly, to the extent not admitted, Federal denies this request.*

**REQUEST FOR ADMISSION NO. 25:** Admit that Federal permitted Chubb Insurance Company of Canada to access the Blaze Advisor® software.

31

*RESPONSE [TO NO. 25]: Federal objects to this request because the phrase "permitted . . . to Access" is vague and ambiguous. Subject to the above, Federal admits that Chubb Insurance Company of Canada made use of Blaze Advisor® software. Federal is without sufficient information to further admit or deny this request as written. Accordingly, to the extent not admitted; Federal denies this request.*

**REQUEST FOR ADMISSION NO. 26:** Admit that Federal has disclosed the Blaze Advisor® software to Chubb Insurance Company of Australia Ltd.

*RESPONSE [TO NO. 26]: Federal objects to this request because the phrase "disclosed the Blaze Advisor® software" is vague and ambiguous. Subject to the above, Federal admits that Chubb Insurance Company of Australia Ltd. made use of Blaze Advisor® software. Federal is without sufficient information to further admit or deny this request as written. Accordingly, to the extent not admitted, Federal denies this request.*

**REQUEST FOR ADMISSION NO. 27:** Admit that Federal has distributed the Blaze Advisor® software to Chubb Insurance Company of Australia Ltd.

*RESPONSE [TO NO. 27]: Federal objects to this request because the term "distributed" is vague and ambiguous. Subject to the above, Federal admits that Chubb Insurance Company of Australia Ltd. made use of Blaze Advisor® software. Federal is without sufficient information to further admit or deny this request as written. Accordingly, to the extent not admitted, Federal denies this request.*

**REQUEST FOR ADMISSION NO. 28:** Admit that Federal has permitted Chubb Insurance Company of Australia Ltd. to access the Blaze Advisor® software.

*RESPONSE [TO NO. 28]: Federal objects to this request because the phrase "permitted . . . to access" is vague and ambiguous. Subject to the above, Federal admits that Chubb Insurance Company of Australia Ltd. made use of Blaze Advisor® software. Federal is without sufficient information to further admit or deny this request as written. Accordingly, to the extent not admitted, Federal denies this request.*

(Kliebenstein Decl. Ex. 35.)

The phrases "disclosed," "distributed," and "permitted . . . to access," also have a plain and ordinary meaning within the context of the improper use of Blaze Advisor® software. Federal admitted in its verified Second Supplemental Answer to Interrogatory No. 2 that "[d]isclosure" of the Blaze Advisor® software was made to the Chubb Insurance Company of Canada in 2011, was made to Chubb Insurance Company of Europe SE at least by 2011, and was made to Chubb Insurance Company of Australia Limited at least by 2015. (Kliebenstein Decl. Ex. 26 at 3.) Federal admitted its foreign companies used applications containing Blaze Advisor® software abroad, and FICO deserves to know how: by disclosure, distribution or permission to use.

Federal's cases cited in the parties' August 20, 2018 (*id.* Ex. 16), email to the Court are distinguishable and do not permit Federal to avoid its discovery obligations under the Rules. In *Donaldson*, the court denied the motion to compel where the plaintiff improperly used the requests for admission as discovery devices by linking the requests for admission with corresponding interrogatories and requests for production. *Nat'l Union Fire Ins. Co. of Pittsburgh v. Donaldson Co., Inc.*, No. CV 10-4948 JRT/AJB, 2013 U.S. Dist. LEXIS 200272, at *4-8 (D. Minn. Oct. 1, 2013). Here, FICO has not linked its Request for Admissions to corresponding Interrogatories or Requests for Production. Citing *Donaldson*, Federal also argues that requests for admission are not properly used as a means to establish facts that are in dispute. This argument is baseless. These requests for admission are to determine if certain facts are <u>not</u> in dispute. FICO is entitled to an answer or a clear statement of why an answer is not possible. Finally, Federal's citations to *Great Lakes Gas* and *Fullhorst* are wholly irrelevant. *Great Lakes*

*Gas Transmission Ltd. P'ship v. Essar Steel Minnesota, LLC*, No. CV 09-3037 (SRN/LIB), 2011 U.S. Dist. LEXIS 164622, at *33-35 (D. Minn. Mar. 3, 2011); *Fulhorst v. United Techs. Auto., Inc.*, No. CIV. A. 96-577-JJF, 1997 U.S. Dist. LEXIS 22290, at *3-4 (D. Del. Nov. 17, 1997).  The terms "representative" and "associated" are not in dispute.  These cases hold that ambiguity is determined from the context of the Request.  FICO's Requests for Admission are unique from *Great Lakes Gas* and *Fullhorst*; the cases are unpersuasive.  Federal should be ordered to fully respond to Request for Admission Nos. 13-16 and 20-28 as written.

   **E.   Federal's noncompliance with the Court's prior Order warrants sanctions.**

   Monetary and evidentiary sanctions are warranted for Federal's continued violation of the February 14 Order, the Court's direction in the August 29 teleconference and general refusal to participate in damages-related discovery.  The prejudice to FICO is real because Federal has impacted FICO's ability to prepare its case: the train is nearing the end of the tracks.  Fact discovery is nearing its end and is set to close on January 15, 2019.  FICO's damages expert report is due January 22, 2019.  FICO is left without sufficient time to receive the requested discovery and prepare its case.

   FICO has been unable to use the requested information in depositions, which are underway given the impending close of discovery.  FICO already took one 30(b)(6) deposition of Federal.  Mr. Ramesh Pandey is being deposed today, November 13, and Ms. Tamra Pawloski is scheduled for deposition on December 7.  In further frustration of discovery, Federal is refusing to produce Henry Mirolyuz for his individual deposition,

because Federal presented him as a Rule 30(b)(6) representative.  That matter is also before the Court.  FICO is unable to adequately question Federal's witnesses regarding Federal's revenue and profit resulting from the infringement because Federal has refused to produce the requested discovery.  Federal should not gain evidentiary advantage from stonewalling discovery.

### 1.     The Court should award attorney fees because Federal's position is not substantially justified.

Under Rule 37, when a motion to compel is granted, and the opposing party's nondisclosure or objection was not "substantially justified," the court "must" award the moving party its "reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).  The Court also "must" award attorney fees when a party has failed to respond to a discovery order when the failure to respond was not "substantially justified."  Fed. R. Civ. P. 37(b)(2)(C).  A fee award is justified here under either provision.

Federal's refusal to produce documents as ordered on February 14, its failure to answer fully Interrogatory Nos. 15-20 in light of the Court's rejection of its objections, and its failure to make a reasonable search for documents responsive the Document Request Nos. 55-70 is not substantially justified.  As detailed *supra* Section II.D, FICO has been diligent in seeking discovery from Federal following the Court's Order.  In the last nine months, Federal has pointed to no circumstances that could possibly justify its failure to comply with this Court's clear directive.  Federal must pay FICO's reasonable attorney fees incurred in bringing the present motion.  *See Inline Packaging, LLC v.*

*Graphic Packaging Int'l, Inc.*, No. 15-3183 ADM/LIB, 2017 U.S. Dist. LEXIS 1764, at

*8-9 (D. Minn. Jan. 5, 2017) (affirming fee award under Fed. R. Civ. P. 37(a)(5)(A));

*Cargill, Inc. v. Ron Burge Trucking, Inc.*, 284 F.R.D. 421, 430 (D. Minn. 2012) (same);

*Card Tech. Corp. v. Datacard Inc.*, 249 F.R.D. 567, 572 (D. Minn. 2008) (awarding fees

under Fed. R. Civ. P. 37(b)(2)(C)).

### 2.  The Court should award evidentiary sanctions for Federal's failure to comply with its prior Order.

The Court should order evidentiary sanctions, which are the only adequate remedy

at this stage in the case.  Evidentiary sanctions are appropriate in cases where, like here, a

party ignores a court order and fails to timely and fully respond to discovery requests.

FICO request two types of sanctions: judicial admission of certain facts and prohibition

of introducing certain types of evidence.  As to the first evidentiary sanction requested,

under Federal Rule of Civil Procedure 37(b)(2)(A)(i) the Court may issue an order that

certain "facts be taken as established for the purposes of the action."  *See Card Tech.*

*Corp.* 249 F.R.D. at 571 (ordering the "judicial admission of certain facts as established"

for a party's failure to comply with a discovery order); *see also Select Comfort Corp. v.*

*Arrowood Indem. Co.*, No. 13-2975 (JNE/FLN), 2014 U.S. Dist. LEXIS 197607, at *10-

12 (D. Minn. Oct. 6, 2014) (ordering judicial admission of certain facts as established

under Fed. R .Civ. P. 37(b)(2)(A)(i) if party fails to comply with the Court's Order).

As to the second type of evidentiary sanction, under Federal Rule of Civil

Procedure 37(b)(2)(A)(ii), the Court may also award an evidentiary sanction that

prohibits "the disobedient party from supporting or opposing designated claims or

defenses, or from introducing designated matters in evidence" for failure to comply with a Court Order.  *See United States v. Egan*, No. 13-3640 (JNE/TNL), 2015 U.S. Dist. LEXIS 135124, at *2-3 (D. Minn. Sep. 30, 2015) (affirming order precluding defendant from relying on any information that was responsive to the discovery request if the information was not disclosed by a specified date); *Card Tech. Corp.* 249 F.R.D. at 571 (ordering that a party may not introduce testimony on certain issues under Rule 37(b)(2) for its failure to comply with a discovery order).  Here, FICO seeks three evidentiary sanctions from the Court relating to damages.

**#1: The gross written premium (sometimes called direct premium) disclosed in the annual financial reports of Federal and its subsidiaries is deemed to be premium from insurance policies in connection with which Blaze Advisor® software was used.**  This sanction is directly tied to Federal's refusal to comply with the Court's Order and respond to Request for Production Nos. 30-32 and Interrogatory Nos. 15-20. Federal should be bound to its assertion that the gross written premium (or the direct premium) reported in its annual financial reports are attributable to the use of Blaze Advisor® software.  This sanction is within the Court's discretion under Federal Rule of Civil Procedure 37(b)(2)(A)(i).  *See Card Tech. Corp.* 249 F.R.D. at 571; *see also Select Comfort Corp.*, 2014 U.S. Dist. LEXIS 197607, at *10-12.

**#2: Federal may not introduce evidence of deductible expenses to reduce gross written premium to determine an amount of profit from that revenue.**  This sanction is directly tied to Federal's flouting of the February 14 Order and refusal to fully respond to Request for Production Nos. 30-32.  Federal has not produced any documents

of deductible expenses on which profits derived from gross revenue can be determined. Federal should be precluded from reducing its revenue with any deductible expenses to derive profit based on its repeated failure to produce requested documents directed to this issue, despite the Court's Order.  This sanction is within the Court's discretion under Federal Rule of Civil Procedure 37(b)(2)(A)(ii).  *See Egan*, 2015 U.S. Dist. LEXIS 135124; *Card Tech. Corp.* 249 F.R.D. at 571.

**#3: FICO's Blaze Advisor® software is deemed to have contributed to the gross written premium disclosed in the annual financial reports of Federal and its subsidiaries.**  This sanction is tied to Federal's refusal to do the work to fully respond to Req. for Production Nos. 55-70.  Federal disregarded the Court's February 14 Order and the guidance of the Court's August 29 teleconference.  FICO needs these documents in response to Request for Production Nos. 55-70 to prove the contribution of the Blaze Advisor® software to Federal's revenue.  Federal cannot withhold these documents while arguing at the same time that Blaze Advisor® does not contribute to its revenue. Accordingly, the Court should find that FICO's Blaze Advisor® software contributed to the gross written premium disclosed in the annual financial reports of Federal and its subsidiaries.  This sanction is within the Court's discretion under Federal Rule of Civil Procedure 37(b)(2)(A)(i).  *See Card Tech. Corp.* 249 F.R.D. at 571; *see also Select Comfort Corp.*, 2014 U.S. Dist. LEXIS 197607, at *10-12.

## IV.   CONCLUSION

FICO asks the Court to issue an order as follows.  First, FICO asks for an award of its attorneys' fees incurred in this motion to compel.  Second, that the Court should enter the following evidentiary sanctions:

1.    The gross written premium (sometimes called direct premium) disclosed in the annual financial reports of Federal and its subsidiaries is deemed to be premium from insurance policies in connection with which Blaze Advisor® software was used.

2.    Federal may not introduce evidence of deductible expenses to reduce gross written premium to determine an amount of profit from that revenue.

3.    FICO's Blaze Advisor® software is deemed to have contributed to the gross written premium disclosed in the annual financial reports of Federal and its subsidiaries.

Third, Federal must also provide unqualified answers to Admission Nos. 13-16 and 20-28 by December 5.


Dated: November 13, 2018                    MERCHANT & GOULD P.C.

                                            /s/ Heather Kliebenstein
                                            Allen Hinderaker, MN Bar # 45787
                                            Heather Kliebenstein, MN Bar # 337419
                                            Michael Erbele, MN Bar # 393635
                                            MERCHANT & GOULD P.C.
                                            3200 IDS Center
                                            80 South Eighth Street
                                            Minneapolis, MN 55402-2215
                                            Tel: (612) 332-5300
                                            Fax: (612) 332-9081
                                            ahinderaker@merchantgould.com
                                            hkliebenstein@merchantgould.com
                                            merbele@merchantgould.com

                                            *Attorneys for Plaintiff FICO*