## Pham, Christopher

| | |
|---|---|
| **From:** | Heather Kliebenstein <HKliebenstein@merchantgould.com> |
| **Sent:** | Monday, August 20, 2018 5:11 PM |
| **To:** | schultz_chambers@mnd.uscourts.gov |
| **Cc:** | Allen Hinderaker; Pham, Christopher; Janus, Leah; Fleming, Terrence; Michael Erbele; Carol A. Nystrom; Kristin M. Drieman |
| **Subject:** | Discovery Dispute Summary (Fair Isaac Corp. v. Federal Insurance Co., Civil No. 16-1054) |

Dear Judge Schultz,

Pursuant to the Court's June 14, 2018 Second Amended Pretrial Scheduling Order (Doc. No. 111), the parties jointly request an informal conference with the Court regarding the following discovery disputes.

### FICO's Request for Production Nos. 30-32

- **FICO's position:** The Court ordered Federal to respond fully to FICO's Request for Production Nos. 30-32, which seek summary reports showing the revenues and profits derived from the products and services of each line of business for which the Blaze Advisor® software has been used. Federal's response is deficient in two manners. First, Federal has not produced relevant information for the UK and Australia. Second, Federal produced the 2016 and 2017 U.S. and Canadian annual statements of Federal and 11 of Federal's U.S. subsidiaries. Federal's production does not comply with the Court's Order. Each request is tailored to seek not simply "annual statements" as Federal produced, but rather summary reports showing the revenues and profits derived from the products and services of each line of business for which the Blaze Advisor® software has been used. The "annual statements" are also deficient because they do not show quarterly revenues for the various requested time periods as sought by the Requests. Federal has a duty under this Court's Order and the Rules to fully respond. The fact the document requests (quite naturally) do not align with the records Federal keeps in the ordinary course of business is not an excuse. Federal must review the data it keeps as a company and provide it in a way that is responsive to these requests.

- **Federal's position:** Federal's obligation is to produce documents as they are kept in the usual course of business. Federal is not obligated to create new summary reports or documents that are not already in its current possession, custody or control. The 2016 and 2017 annual statements of Federal and 11 of Federal's U.S. subsidiaries, and the 2016 and 2017 financial reports for Canada, are documents that are kept in the usual course of business. Federal has recently produced the 2017 annual statement for the Europe entity. Federal is working to produce financial reports related to Australia entity and anticipate doing so early next week. Federal continues to search for documents in its possession, custody, or control that show revenues and profits derived from the products and services in connection with which Blaze Advisor® is and has been used. Discovery is continuing, and Federal will produce responsive documents that are kept in the usual course of business, to the extent such documents already exist.

Pursuant to the Second Amended Pretrial Scheduling Order, the parties agree to informal dispute resolution regarding this issue.

### FICO's Request for Production Nos. 55-70

- **FICO's position:** These Requests seek documents "relating to the decision to implement" the Blaze-containing applications identified in Federal's Supplemental Answer to Interrogatory No. 4, "including all documents relating to the business benefits to be derived from the implementation and the efficiencies to be realized from us[e of] the application[s]." Federal has not produced documents related to the business benefits derived from

1

**EXHIBIT**

*A*

any Blaze-containing application, let alone every Blaze-containing application.  Federal contends it has produced all responsive documents it has located, but Federal has only searched the files of custodians who are technical, IT focused witnesses in response to this request.  Specifically, Federal has stated that it searched the files of Federal employee Henry Mirolyuz for responsive documents, and found no additional documents. But Mr. Mirolyuz is an IT application architect—a technical witness.  As learned in his July 31 deposition, Mr. Mirolyuz does not make business decisions about what applications to create and does not know whom the business persons are that do; he received project direction from his superior in IT and professed to have no contact with the business decision makers. Federal should conduct an investigation of the files of its employees that focus on business and sales, not simply IT/technical witnesses, but it refuses to do so.  The fact that Federal may have produced what it has from a narrow, non-responsive collection is meaningless.

- **Federal's position:** FICO's contention that Federal's custodian list includes only technical witnesses and counsel is incorrect. Henry Mirolyuz, Federal's 30(b)(6) deposition designee, is more of a project manager than merely a technical witness, which is reflected in his resume providing his background and experience.  FICO requests documents "relating to the decision to implement" the Blaze-containing applications.  These decisions were made long ago, and the personnel involved in that decision-making are no longer employed with Federal.  Mr. Mirolyuz is the only remaining employee who has familiarity with the decision to implement Blaze use with certain applications.  Mr. Mirolyuz has conducted a diligent search for documents responsive to these requests and has been unable to locate any to date.

The parties agree to informal dispute resolution regarding this issue.

## FICO's Interrogatory Nos. 15-20

- **FICO's position:** Interrogatory Nos. 15-17 seek the gross written premium for all insurance policies of Federal and related companies in connection with which the Blaze Advisor® software was used. Interrogatory No. 15 seeks this information for each year from 2001-2006; Interrogatory No. 16 seeks this information for the each year from 2007-2012; and Interrogatory No. 17 seeks this information for each quarter from March 30, 2016 to the present. Federal has not provided sufficient answers to these interrogatories, which seek similar categories of revenue information as Federal was previously ordered to produce. Federal's production of annual statements for 2016 and 2017 are not responsive. As stated in connection with Request for Production Nos. 30-32, annual statements are not responsive to the interrogatories that seek the gross written premium on all insurance policies in connection with which Blaze Advisor® software is and has been used. The interrogatories require Federal not simply to provide off the shelf reports, but to answer the interrogatories through investigating the data and information in Federal's custody, control or possession.  It is not the case that FICO can as readily as Federal determine the information requested by these interrogatories from the reports provided. Further, Interrogatory Nos. 18-20 seek the quarterly gross written premium for companies in the U.K., Canada, and elsewhere in the world that have used the Blaze Advisor® software from the date of first use to the present. The single financial report of Chubb Canada is not responsive to Interrogatory Nos. 18-20 for the reasons stated with respect to Request for Production Nos. 30-32.

- **Federal's position:** *See* Federal's position with respect to Request for Production Nos. 30-32. Federal has produced documents in response to FICO's Request for Production Nos. 30-32. These documents are sufficient to answer Interrogatory Nos. 15-20 because they show "the gross written premium" for Federal and related entities.

The parties agree to informal dispute resolution regarding this issue.

## FICO's Request for Admission Nos. 13-16 and 20-28

- **FICO's position:** Federal objected to these Requests on the basis that the phrases "authority to direct," "cause the direction," "disclose," "distribute," and "permitted to access" used therein are vague and ambiguous. In

response, Federal re-wrote the Requests and gave partial answers in response to the re-written Requests. These partial answers are deficient. Federal should give complete responses to these Requests, and in doing so should give the disputed terms their plain and ordinary meaning. Ambiguity objections are improper where the objected to terms have "ordinary, plain meaning[s]s, particularly in the context of the [Interrogatories]." *Reinsdorf v. Skechers U.S.A., Inc.*, No. CV 10-7181 DDP (SSx), 2013 U.S. Dist. LEXIS 200627, at *28 (C.D. Cal. Sep. 9, 2013). Here, these phrases are defined in the dictionary and in case law, and thus are not ambiguous. Fed. R. Civ. P. 36(a)(1)(A); *see also FTC v. Think All Publ'g L.L.C.*, No. 4:07-cv-011, 2008 U.S. Dist. LEXIS 18561, at *9 (E.D. Tex. Mar. 11, 2008) (overruling objections to Requests for Admission where party claimed legal term was vague and ambiguous).

- **Federal's position:** Federal maintains its objections that the phrases "authority to direct," "cause the direction," "disclose," "distribute," and "permitted to access" are vague and ambiguous. Federal is unable to answer the Requests unless FICO provides further clarification regarding the meaning of these terms. Indeed, "[a] party is not required to respond to a request that contains vague or ambiguous statements." *Cutino v. Untch*, 303 F.R.D. 413, 415–16 (S.D. Fla. 2014) (*citing Fulhorst v. United Tech. Auto., Inc.*, No. 96–577, 1997 WL 873548, at *1 (D. Del. Nov. 17, 1997); *see e.g., Arroyo v. Adams*, No. 1:11–cv–01186–AWI–DLB, 2014 WL 109494, at*5 (E.D.Ca. Jan. 10, 2014) (denying motion to compel where admission request included vague, undefined terms). Requests for admission are not a discovery device, but rather a "procedure for obtaining admissions for the record of facts already known." *Dubin v. E.F. Hutton Grp. Inc.*, 125 F.R.D. 372, 375–76 (S.D.N.Y. 1989) (quoting 8 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2253 (1970)). As such they are not intended to establish facts in dispute or questions of law. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Donaldson Co., Inc.*, No. CV 10-4948 JRT/AJB, 2013 WL 12155269, at *1–2 (D. Minn. Oct. 1, 2013) (citing *Lakehead Pipe Line Co., Inc. v. Am. Home Assurance Co.*, 177 F.R.D. 454, 458 (D. Minn. 1997)). For these reasons, requests for admissions must be simple, clear and direct such that the responding party can admit or deny without explanation. *See Dubin*, 125 F.R.D. at 375, *Henry v. Champlain Enterprises, Inc.*, 212 F.R.D. 73, 77 (N.D.N.Y. 2003). Minnesota courts have similarly found other common words, all readily found in a dictionary, to be ambiguous in the context of the case and the Request propounded. For instance, in *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minnesota, LLC*, this Court found that asking whether an individual was acting as a "representative" of the Defendants was ambiguous, because it could have various meanings in this context. *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minnesota, LLC*, No. CV 09-3037 (SRN/LIB), 2011 WL 13135650, at *9 (D. Minn. Mar. 3, 2011), *aff'd*, No. 09-CV-3037-SRN-LIB, 2011 WL 1486033 (D. Minn. Apr. 19, 2011). Furthermore, this Court found that, as in *Donaldson*, the question was an inappropriate attempt to admit a fact in dispute. *Id.* Elsewhere, courts have found that the word "associated," was impermissibly ambiguous in the context of a Request seeking admission that two car features were different, "even when the system structure and software **associated** with the two features are identical." *Fulhorst v. United Techs. Auto., Inc.*, No. CIV. A. 96-577-JJF, 1997 WL 873548, at *1 (D. Del. Nov. 17, 1997) (finding that Plaintiffs need not respond to the request because it could not be admitted or denied with minimal explanation).

The parties agree to informal dispute resolution regarding this issue.

The parties are available for a joint conference call with the Court at the following times to discuss these issues more fully.
- Tuesday, 8/21 after 2:00 p.m.
- Monday, 8/27 after 2:00 p.m.
- Tuesday, 8/28 after 9:30 a.m.
- Wednesday, 8/29 between 9:30 a.m.-12:00 p.m. or 4:00-5:00 p.m.

Thank you,

Heather

**Heather Kliebenstein**
Partner

Merchant & Gould P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2215
USA

**Telephone** (612) 371-5213
**Fax** (612) 332-9081
**Email** hkliebenstein@merchantgould.com
**merchantgould.com**

GUARDIANS OF GREAT IDEAS®

Note: This e-mail message is confidential and may be privileged or otherwise protected by law. If you are not the intended recipient, please: (1) reply via e-mail to sender; (2) destroy this communication entirely, including deletion of all associated text files from all individual and network storage devices; and (3) refrain from copying or disseminating this communication by any means whatsoever.
Please consider the environment before printing this email. Thank you.

## Pham, Christopher

| | |
|---|---|
| **From:** | Pham, Christopher |
| **Sent:** | Tuesday, September 11, 2018 5:14 PM |
| **To:** | Heather Kliebenstein |
| **Cc:** | Fleming, Terrence; Janus, Leah |
| **Subject:** | FICO v. Federal - Summary of Conference Call on 9/7/2018 |

Heather,

This email serves as a summary of our conference call on Friday, Sept. 7.

**Federal's Depositions:**

- **Russel Schreiber**: During our call, you advised that you would attempt to reach Mr. Schreiber on Friday, Sept. 7, and that if you did not reach him, you would try again on Monday, Sept. 10, and Tuesday, Sept. 11. To date, we have not heard whether you have successfully connected with Mr. Schreiber. In addition, you indicated that you were looking at dates for the week of Sept. 27 in the New York area for Mr. Schreiber's deposition. You further indicated that you were authorized to accept service of the subpoena on behalf of Mr. Schreiber. Please advise whether you have successfully reached Mr. Schreiber to discuss available dates for his deposition.
- **Bill Waid**: You advised that you are confirming with Mr. Waid regarding his deposition taking place in Minneapolis, MN on Oct. 30 and 31. You also explained that given Mr. Waid's travel schedule, Oct. 30/31 were the only consecutive dates that he had available for his deposition. We inquired whether his deposition preparation session and his actual deposition could be broken up for different dates to accommodate his travel schedule and you indicated that you had not inquired about that. Please advise regarding Mr. Waid's deposition taking place in Minneapolis, MN.
- **Mike Sawyer**: You are confirming whether the Foxborough, MA area outside of Boston, MA is the correct suburb for Mr. Sawyer's deposition on Oct. 2. Please advise so we can serve a subpoena and Amended Notice of Deposition, which you have indicated you are authorized to receive service of on behalf of Mr. Sawyer.
- **Thomas Caretta**: We are confirmed for Mr. Caretta's deposition in Minneapolis, MN on Oct. 9.

**FICO's Depositions:**

- You advised that FICO will be noticing the depositions of Ramesh Pandy, Henry Mirolyuz, and Tamra Pawloski. We advised that Ms. Pawloski was no longer employed by Federal. You proposed that Federal reach out to Ms. Pawloski and work to coordinate her deposition in the same manner that FICO reached out to Mr. Sawyer and Mr. Schreiber. You further proposed that the parties pay for their own witness fees for the depositions, i.e. FICO would pay Mr. Sawyer's and Mr. Schreiber's witness fees, and Federal would pay for Ms. Pawloski's witness fee.

**Case Schedule:**

- You proposed a mutual extension of 60 days for discovery to be completed. We will discuss this request with our client and revert back.

**Documents identified during Discovery Conference with Magistrate Schultz:**

- During our Discovery Conference with Magistrate Schultz, you mentioned there were documents that suggested additional custodians may need to be included for data collection in connection with Requests 55-70. Specifically, you stated that documents with Bates labels ending in 6048 ("Solutions Analysis") and 6231

1



(6236 attachment) are documents that reflect that the "solutions analysis" group communicates with the business people or provides them with a memorandum before communicating with the technical personnel to accomplish implementing certain applications. We will review the documents you have directed us to and make a determination as to whether we need to include additional custodians for data collection, and will then circle back to you.

Please let us know if we have inaccurately characterized any aspect of the conference call from last Friday, Sept. 7.

Thanks,

**Fredrikson**
& BYRON, P.A.

**Christopher D. Pham**
**cpham@fredlaw.com**
**200 South Sixth Street**
**Suite 4000**
**Minneapolis, MN 55402**
**612-492-7388 Phone**
**612-492-7077 Fax**

**Brenda Haberman**
**Legal Assistant/Paralegal**
**bhaberman@fredlaw.com**

**\*\*This is a transmission from the law firm of Fredrikson & Byron, P.A. and may contain information which is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately at our telephone number (612) 492-7000. The name and biographical data provided above are for informational purposes only and are not intended to be a signature or other indication of an intent by the sender to authenticate the contents of this electronic message.\*\***

## Pham, Christopher

| | |
|---|---|
| **From:** | Heather Kliebenstein <HKliebenstein@merchantgould.com> |
| **Sent:** | Friday, September 21, 2018 3:15 PM |
| **To:** | Pham, Christopher |
| **Cc:** | Fleming, Terrence; Janus, Leah; Allen Hinderaker; Michael Erbele; 15081.0008USZA.active@ef.merchantgould.com |
| **Subject:** | FICO v. Federal - Discovery |

Chris,

I write to move a few things forward, as follows:

1. I can offer Russ Schreiber in New York on October 24 at Merchant & Gould's office at 767 3rd Avenue, New York.

2. We are withdrawing and tabling our Second 30b6 notice for the time being.

3. Can we set up a call on Monday about discovery responses? I want to know how the search is going for responsive documents as discussed with Judge Schultz. I am free from 11-5.

4. We'll have a draft extension stipulation to you early next week.

Best,

Heather

**Heather Kliebenstein**
Partner
Merchant & Gould P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2215
USA

**Telephone** (612) 371-5213
**Fax** (612) 332-9081
**Email** hkliebenstein@merchantgould.com
**merchantgould.com**

GUARDIANS OF GREAT IDEAS®

Note: This e-mail message is confidential and may be privileged or otherwise protected by law. If you are not the intended recipient, please: (1) reply via e-mail to sender; (2) destroy this communication entirely, including deletion of all associated text files from all individual and network storage devices; and (3) refrain from copying or disseminating this communication by any means whatsoever.
Please consider the environment before printing this email. Thank you.



EXHIBIT

C

1

## Pham, Christopher

| | |
|---|---|
| **From:** | Heather Kliebenstein <HKliebenstein@merchantgould.com> |
| **Sent:** | Tuesday, September 25, 2018 5:03 PM |
| **To:** | Pham, Christopher |
| **Cc:** | Fleming, Terrence; Janus, Leah; Allen Hinderaker; Michael Erbele; 15081.0008USZA.active@ef.merchantgould.com |
| **Subject:** | RE: FICO v. Federal - Discovery |

I am available Friday, October 5.  I have discussed the extension issue with my client, are you amenable to 90 days?

**From:** Pham, Christopher <CPham@fredlaw.com>
**Sent:** Tuesday, September 25, 2018 4:58 PM
**To:** Heather Kliebenstein <HKliebenstein@merchantgould.com>
**Cc:** Fleming, Terrence <TFleming@fredlaw.com>; Janus, Leah <LJanus@fredlaw.com>; Allen Hinderaker <AHinderaker@merchantgould.com>; Michael Erbele <MErbele@MerchantGould.com>; 15081.0008USZA.active@ef.merchantgould.com
**Subject:** RE: FICO v. Federal - Discovery

Heather,

We will get back to you regarding the October 24 date for Russell Schreiber's deposition in New York.

With respect to a phone conference to follow-up on the discovery conference with Magistrate Schultz, are you available on Thursday, October 4?  Other than 3-4 pm, I am open that day.

Thanks,

**Christopher D. Pham**
Fredrikson & Byron, P.A.
612.492.7388
cpham@fredlaw.com
200 South Sixth Street
Suite 4000
Minneapolis, MN 55402-1425

**From:** Heather Kliebenstein [mailto:HKliebenstein@merchantgould.com]
**Sent:** Friday, September 21, 2018 3:15 PM
**To:** Pham, Christopher
**Cc:** Fleming, Terrence; Janus, Leah; Allen Hinderaker; Michael Erbele; 15081.0008USZA.active@ef.merchantgould.com
**Subject:** FICO v. Federal - Discovery

Chris,

I write to move a few things forward, as follows:

1.  I can offer Russ Schreiber in New York on October 24 at Merchant & Gould's office at 767 3rd Avenue, New York.

2.  We are withdrawing and tabling our Second 30b6 notice for the time being.

3.  Can we set up a call on Monday about discovery responses?  I want to know how the search is going for responsive documents as discussed with Judge Schultz.  I am free from 11-5.

1



**EXHIBIT**

D

4.  We'll have a draft extension stipulation to you early next week.

Best,

Heather

**Heather Kliebenstein**
Partner
Merchant & Gould P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2215
USA

**Telephone** (612) 371-5213
**Fax** (612) 332-9081
**Email** hkliebenstein@merchantgould.com
**merchantgould.com**

GUARDIANS OF GREAT IDEAS®

Note: This e-mail message is confidential and may be privileged or otherwise protected by law. If you are not the intended recipient, please: (1) reply via e-mail to sender; (2) destroy this communication entirely, including deletion of all associated text files from all individual and network storage devices; and (3) refrain from copying or disseminating this communication by any means whatsoever.
Please consider the environment before printing this email. Thank you.

## Pham, Christopher

| | |
|---|---|
| **From:** | Pham, Christopher |
| **Sent:** | Friday, October 26, 2018 5:29 PM |
| **To:** | Allen Hinderaker; Heather Kliebenstein; Michael Erbele |
| **Cc:** | Fleming, Terrence; Janus, Leah |
| **Subject:** | FICO v. Federal - Federal's Supplemental Answers to FICO's Interrogatory Nos. 17-20 |
| **Attachments:** | FICO v. Federal - Certificate of Service re Federal's Supplemental Answers to FICO's ROGS 17-20.pdf; FICO v. Federal - Federal's Supplemental Answer to FICO's ROG 17.pdf; FICO v. Federal - Federal's Supplemental Answer to FICO's ROG 18.pdf; FICO v. Federal - Federal's Supplemental Answer to FICO's ROG 19.pdf; FICO v. Federal - Federal's Supplemental Answer to FICO's ROG 20.pdf |

Counsel,

Please find attached and served upon you, Federal's Supplemental Answers to FICO's Interrogatory Nos. 17-20.

Thanks,

**Fredrikson**
**& BYRON, P.A**

**Christopher D. Pham**
cpham@fredlaw.com
**200 South Sixth Street**
**Suite 4000**
**Minneapolis, MN  55402**
**612-492-7388 Phone**
**612-492-7077 Fax**

**Brenda Haberman**
**Legal Assistant/Paralegal**
bhaberman@fredlaw.com

**\*\*This is a transmission from the law firm of Fredrikson & Byron, P.A. and may contain information which is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately at our telephone number (612) 492-7000. The name and biographical data provided above are for informational purposes only and are not intended to be a signature or other indication of an intent by the sender to authenticate the contents of this electronic message.\*\***


EXHIBIT

E

## Pham, Christopher

| | |
|---|---|
| **From:** | Heather Kliebenstein <HKliebenstein@merchantgould.com> |
| **Sent:** | Monday, October 29, 2018 7:08 PM |
| **To:** | Pham, Christopher |
| **Cc:** | Fleming, Terrence; Janus, Leah; Allen Hinderaker; Kristin M. Drieman |
| **Subject:** | Second Motion to Compel Date--November 27 at 1:30 |

Chris,

Thank you. We have contacted the court today regarding a hearing date for a second motion to compel, and received a date of November 27 at 1:30. Please advise if this date and time works for your team.

Best,

Heather

**From:** Pham, Christopher <CPham@fredlaw.com>
**Sent:** Monday, October 29, 2018 3:53 PM
**To:** Heather Kliebenstein <HKliebenstein@merchantgould.com>
**Cc:** Fleming, Terrence <TFleming@fredlaw.com>; Janus, Leah <LJanus@fredlaw.com>; Allen Hinderaker <AHinderaker@merchantgould.com>
**Subject:** RE: FICO v. Federal - Henry Mirolyuz Second Deposition

Heather,

If the Court advises that it will not grant the relief we are requesting during the informal discovery conference, we are unlikely to move forward with the full-motion for protective order. However, that decision will be analyzed and determined based on the Court's communications to the parties during the discovery conference.

In addition, I am confirming with Henry Mirolyuz whether he is still available for the deposition on Wednesday, Nov. 7 and will advise immediately.

Thanks,

**Christopher D. Pham**
Fredrikson & Byron, P.A.
612.492.7388
cpham@fredlaw.com
200 South Sixth Street
Suite 4000
Minneapolis, MN 55402-1425

**From:** Heather Kliebenstein [mailto:HKliebenstein@merchantgould.com]
**Sent:** Monday, October 29, 2018 3:24 PM
**To:** Pham, Christopher
**Cc:** Fleming, Terrence; Janus, Leah; Allen Hinderaker
**Subject:** RE: FICO v. Federal - Henry Mirolyuz Second Deposition



EXHIBIT
F

1

I hope to provide you with our comments for the email to the Court within the next day. Regarding the Nov. 7 deposition, we are ready to depose Mr. Mirolyuz on the 7th. I was under the impression that Mirolyuz was available on November 7 and if the Court told us on the phone that the deposition should go forward, it would be held on Nov. 7. If Mirolyuz is unavailable on Nov. 7, that is a different issue and a different answer. If you intend to file a full motion if the Court does not grant you full relief on the phone, then please advise.

Heather

**From:** Pham, Christopher <CPham@fredlaw.com>
**Sent:** Monday, October 29, 2018 2:25 PM
**To:** Heather Kliebenstein <HKliebenstein@merchantgould.com>
**Cc:** Fleming, Terrence <TFleming@fredlaw.com>; Janus, Leah <LJanus@fredlaw.com>
**Subject:** RE: FICO v. Federal - Henry Mirolyuz Second Deposition

Heather,

Following up on my 10/23 email below regarding the draft joint email to the Court relating to the second deposition of Henry Mirolyuz. While the parties are proceeding with the informal dispute resolution procedure regarding this issue, please confirm that the second deposition noticed for Wednesday, Nov. 7, 2018 will not be proceeding.

Thanks,

**Christopher D. Pham**
Fredrikson & Byron, P.A.
612.492.7388
cpham@fredlaw.com
200 South Sixth Street
Suite 4000
Minneapolis, MN 55402-1425

**From:** Pham, Christopher
**Sent:** Tuesday, October 23, 2018 9:46 PM
**To:** Heather Kliebenstein
**Cc:** Fleming, Terrence; Janus, Leah
**Subject:** FICO v. Federal - Henry Mirolyuz Second Deposition

Heather,

Here is the draft joint email regarding the second deposition of Henry Mirolyuz for the Court. Federal is amenable to the informal dispute resolution procedure regarding this issue. Please advise of any edits or comments.

---

Dear Magistrate Judge Schultz,

Pursuant to the Second Amended Pretrial Scheduling Order, (Dkt. 111 at 3), the parties submit this joint email to chambers regarding the discovery dispute relating to FICO's second noticed deposition of Henry Mirolyuz.

By way of background, on July 31, 2018, FICO noticed a 30(b)(6) deposition for July 31, 2018. Federal identified Henry Mirolyuz as the designee for some of the topics for the 30(b)(6) deposition. In advance of the 30(b)(6) deposition, Federal advised FICO that it should also ask Mr. Mirolyuz "any questions you have with him as an individual fact witness as well." Federal further advised that "[t]he 30(b)(6) and individual examinations substantially overlap, and we believe it

2

is reasonable for [FICO] to conclude both examinations in one day. It is not reasonable under these circumstances to require the witness to sit for a deposition on two separate occasions. Moreover, given the cost and time in travelling to New Jersey, it does not make sense to make two trips."

FICO responded by stating:
"As we have mentioned to you previously, a deposing party has the right to depose an individual in both his or her individual capacity and as a corporate representative. The examination of Federal's chosen representative on some of the topics of a Rule 30(b)(6) deposition does not prejudice FICO's rights to take an individual deposition of that representative in his individual capacity, at a later date. We reserve the right to depose Mr. Mirolyuz again in his individual capacity should we wish to do so."

On July 31, 2018, FICO conducted the 30(b)(6) deposition of Henry Mirolyuz in Whitehouse, New Jersey. At the start of the deposition, Federal's counsel indicated on the record: "[the parties] come here at great expense and it's very inconvenient for the witness to be here also. We have asked that you use the hours allotted to the deposition, not only for the Rule 30(b)6 deposition, but also, for any questions you may have for him as a fact witness; and we do not intend to present him for a second time given that great inconvenience. (Mirolyuz Depo. Transcript 6:9-17). FICO's counsel did not respond to Federal's counsel's comments. During the July 31 deposition, FICO's counsel asked Mr. Mirolyuz questions in his personal capacity as a fact witness as well as in his capacity as a 30(B)(6) designee.

On September 20, 2018, FICO noticed a second deposition of Mr. Mirolyuz. Federal objected and indicated that Mr. Mirolyuz already sat as a 30(B)(6) witness and as an individual fact witness. In an effort to mitigate a potential discovery dispute, Federal then proposed limiting the second deposition to only documents produced by Federal *after* the July 31 deposition, and information related to Mike Sawyer's testimony during his deposition. FICO declined the proposal.

The parties agree to informal dispute resolution regarding this discovery issue.

The parties are available for a joint conference call with the Court at the following times to discuss these issues more fully:

[INSERT THE PARTIES AVAILABILITY]

Thank you,



Christopher D. Pham
cpham@fredlaw.com
200 South Sixth Street
Suite 4000
Minneapolis, MN  55402
612-492-7388 Phone
612-492-7077 Fax

Brenda Haberman
Legal Assistant/Paralegal
bhaberman@fredlaw.com

**This is a transmission from the law firm of Fredrikson & Byron, P.A. and may contain information which is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately at our telephone number (612) 492-7000. The name and biographical data provided above are for informational purposes only and are not intended to be a signature or other indication of an intent by the sender to authenticate the contents of this electronic message.**

## Pham, Christopher

| | |
|---|---|
| **From:** | Pham, Christopher |
| **Sent:** | Tuesday, October 30, 2018 4:18 PM |
| **To:** | Heather Kliebenstein |
| **Cc:** | Fleming, Terrence; Janus, Leah; Allen Hinderaker; Kristin M. Drieman |
| **Subject:** | RE: Second Motion to Compel Date--November 27 at 1:30 |

Heather,

We are available on November 27, 2018 at 1:30 p.m. for the motion hearing.  Please provide us with the subject matter for the motion.

Thanks,

**Christopher D. Pham**
Fredrikson & Byron, P.A.
612.492.7388
cpham@fredlaw.com
200 South Sixth Street
Suite 4000
Minneapolis, MN 55402-1425

**From:** Heather Kliebenstein [mailto:HKliebenstein@merchantgould.com]
**Sent:** Tuesday, October 30, 2018 2:19 PM
**To:** Pham, Christopher
**Cc:** Fleming, Terrence; Janus, Leah; Allen Hinderaker; Kristin M. Drieman
**Subject:** RE: Second Motion to Compel Date--November 27 at 1:30

Chris, please advise as to Federal's availability. We would like to get back to the Court today.

Best,

Heather

**From:** Heather Kliebenstein
**Sent:** Monday, October 29, 2018 7:08 PM
**To:** 'Pham, Christopher' <CPham@fredlaw.com>
**Cc:** Fleming, Terrence <TFleming@fredlaw.com>; Janus, Leah <LJanus@fredlaw.com>; Allen Hinderaker
<AHinderaker@merchantgould.com>; Kristin M. Drieman <KDrieman@merchantgould.com>
**Subject:** Second Motion to Compel Date--November 27 at 1:30

Chris,

Thank you.  We have contacted the court today regarding a hearing date for a second motion to compel, and received a date of November 27 at 1:30.  Please advise if this date and time works for your team.

Best,

Heather

1


EXHIBIT
G

**From:** Pham, Christopher <CPham@fredlaw.com>
**Sent:** Monday, October 29, 2018 3:53 PM
**To:** Heather Kliebenstein <HKliebenstein@merchantgould.com>
**Cc:** Fleming, Terrence <TFleming@fredlaw.com>; Janus, Leah <LJanus@fredlaw.com>; Allen Hinderaker <AHinderaker@merchantgould.com>
**Subject:** RE: FICO v. Federal - Henry Mirolyuz Second Deposition

Heather,

If the Court advises that it will not grant the relief we are requesting during the informal discovery conference, we are unlikely to move forward with the full-motion for protective order. However, that decision will be analyzed and determined based on the Court's communications to the parties during the discovery conference.

In addition, I am confirming with Henry Mirolyuz whether he is still available for the deposition on Wednesday, Nov. 7 and will advise immediately.

Thanks,

**Christopher D. Pham**
Fredrikson & Byron, P.A.
612.492.7388
cpham@fredlaw.com
200 South Sixth Street
Suite 4000
Minneapolis, MN 55402-1425

**From:** Heather Kliebenstein [mailto:HKliebenstein@merchantgould.com]
**Sent:** Monday, October 29, 2018 3:24 PM
**To:** Pham, Christopher
**Cc:** Fleming, Terrence; Janus, Leah; Allen Hinderaker
**Subject:** RE: FICO v. Federal - Henry Mirolyuz Second Deposition

I hope to provide you with our comments for the email to the Court within the next day. Regarding the Nov. 7 deposition, we are ready to depose Mr. Mirolyuz on the 7th. I was under the impression that Mirolyuz was available on November 7 and if the Court told us on the phone that the deposition should go forward, it would be held on Nov. 7. If Mirolyuz is unavailable on Nov. 7, that is a different issue and a different answer. If you intend to file a full motion if the Court does not grant you full relief on the phone, then please advise.

Heather

**From:** Pham, Christopher <CPham@fredlaw.com>
**Sent:** Monday, October 29, 2018 2:25 PM
**To:** Heather Kliebenstein <HKliebenstein@merchantgould.com>
**Cc:** Fleming, Terrence <TFleming@fredlaw.com>; Janus, Leah <LJanus@fredlaw.com>
**Subject:** RE: FICO v. Federal - Henry Mirolyuz Second Deposition

Heather,

Following up on my 10/23 email below regarding the draft joint email to the Court relating to the second deposition of Henry Mirolyuz. While the parties are proceeding with the informal dispute resolution procedure regarding this issue, please confirm that the second deposition noticed for Wednesday, Nov. 7, 2018 will not be proceeding.

Thanks,

**Christopher D. Pham**
Fredrikson & Byron, P.A.
612.492.7388
cpham@fredlaw.com
200 South Sixth Street
Suite 4000
Minneapolis, MN 55402-1425

**From:** Pham, Christopher
**Sent:** Tuesday, October 23, 2018 9:46 PM
**To:** Heather Kliebenstein
**Cc:** Fleming, Terrence; Janus, Leah
**Subject:** FICO v. Federal - Henry Mirolyuz Second Deposition

Heather,

Here is the draft joint email regarding the second deposition of Henry Mirolyuz for the Court. Federal is amenable to the informal dispute resolution procedure regarding this issue. Please advise of any edits or comments.

---

Dear Magistrate Judge Schultz,

Pursuant to the Second Amended Pretrial Scheduling Order, (Dkt. 111 at 3), the parties submit this joint email to chambers regarding the discovery dispute relating to FICO's second noticed deposition of Henry Mirolyuz.

By way of background, on July 31, 2018, FICO noticed a 30(b)(6) deposition for July 31, 2018. Federal identified Henry Mirolyuz as the designee for some of the topics for the 30(b)(6) deposition. In advance of the 30(b)(6) deposition, Federal advised FICO that it should also ask Mr. Mirolyuz "any questions you have with him as an individual fact witness as well." Federal further advised that "[t]he 30(b)(6) and individual examinations substantially overlap, and we believe it is reasonable for [FICO] to conclude both examinations in one day. It is not reasonable under these circumstances to require the witness to sit for a deposition on two separate occasions. Moreover, given the cost and time in travelling to New Jersey, it does not make sense to make two trips."

FICO responded by stating:
"As we have mentioned to you previously, a deposing party has the right to depose an individual in both his or her individual capacity and as a corporate representative. The examination of Federal's chosen representative on some of the topics of a Rule 30(b)(6) deposition does not prejudice FICO's rights to take an individual deposition of that representative in his individual capacity, at a later date. We reserve the right to depose Mr. Mirolyuz again in his individual capacity should we wish to do so."

On July 31, 2018, FICO conducted the 30(b)(6) deposition of Henry Mirolyuz in Whitehouse, New Jersey. At the start of the deposition, Federal's counsel indicated on the record: "[the parties] come here at great expense and it's very inconvenient for the witness to be here also. We have asked that you use the hours allotted to the deposition, not only for the Rule 30(b)6 deposition, but also, for any questions you may have for him as a fact witness; and we do not intend to present him for a second time given that great inconvenience. (Mirolyuz Depo. Transcript 6:9-17). FICO's counsel did not respond to Federal's counsel's comments. During the July 31 deposition, FICO's counsel asked Mr. Mirolyuz questions in his personal capacity as a fact witness as well as in his capacity as a 30(B)(6) designee.

3

On September 20, 2018, FICO noticed a second deposition of Mr. Mirolyuz. Federal objected and indicated that Mr. Mirolyuz already sat as a 30(B)(6) witness and as an individual fact witness. In an effort to mitigate a potential discovery dispute, Federal then proposed limiting the second deposition to only documents produced by Federal *after* the July 31 deposition, and information related to Mike Sawyer's testimony during his deposition. FICO declined the proposal.

The parties agree to informal dispute resolution regarding this discovery issue.

The parties are available for a joint conference call with the Court at the following times to discuss these issues more fully:

[INSERT THE PARTIES AVAILABILITY]

Thank you,



**Christopher D. Pham**
**cpham@fredlaw.com**
**200 South Sixth Street**
**Suite 4000**
**Minneapolis, MN 55402**
**612-492-7388 Phone**
**612-492-7077 Fax**

**Brenda Haberman**
**Legal Assistant/Paralegal**
**bhaberman@fredlaw.com**

**\*\*This is a transmission from the law firm of Fredrikson & Byron, P.A. and may contain information which is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately at our telephone number (612) 492-7000. The name and biographical data provided above are for informational purposes only and are not intended to be a signature or other indication of an intent by the sender to authenticate the contents of this electronic message.\*\***

## Pham, Christopher

| | |
|---|---|
| **From:** | Pham, Christopher |
| **Sent:** | Friday, November 16, 2018 4:52 PM |
| **To:** | Allen Hinderaker; Heather Kliebenstein; Michael Erbele |
| **Cc:** | Fleming, Terrence; Janus, Leah; Carol A. Nystrom; Kristin M. Drieman |
| **Subject:** | FICO v. Federal - Federal's Supplemental Answers to FICO's Interrogatory Nos. 15-20 |
| **Attachments:** | 11.16.2018 Federal's Supplemental Answers to Interrogatory Nos. 15-20.pdf |

Counsel,

Please find attached and served upon you, Federal's Supplemental Answers to FICO's Interrogatory Nos. 15-20.

Thanks,

## Fredrikson
### & BYRON P.A.

**Christopher D. Pham**
cpham@fredlaw.com
**200 South Sixth Street**
**Suite 4000**
**Minneapolis, MN 55402**
**612-492-7388 Phone**
**612-492-7077 Fax**

**Brenda Haberman**
**Legal Assistant/Paralegal**
bhaberman@fredlaw.com

**This is a transmission from the law firm of Fredrikson & Byron, P.A. and may contain information which is privileged, confidential, and protected by the attorney-client or attorney work product privileges. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and notify us immediately at our telephone number (612) 492-7000. The name and biographical data provided above are for informational purposes only and are not intended to be a signature or other indication of an intent by the sender to authenticate the contents of this electronic message.****



EXHIBIT

1    H

## Pham, Christopher

| | |
|---|---|
| **From:** | Heather Kliebenstein <HKliebenstein@merchantgould.com> |
| **Sent:** | Wednesday, May 30, 2018 11:17 AM |
| **To:** | Janus, Leah; Datzov, Nikola |
| **Cc:** | Friedemann, Lora; Kristin M. Drieman; 15081.0008USZA.active@ef.merchantgould.com; Allen Hinderaker; Pham, Christopher; Fleming, Terrence |
| **Subject:** | RE: Fair Isaac v. Federal |

Leah,

We are in receipt of the amended responses for Interrogatory Nos. 2, 3 and 4.   Thank you for those updated responses.  We are reviewing them and will advise if we have any follow up.

A number of discovery requests remain outstanding.  We ask that Federal provide full discovery responses in compliance with the Court's order by June 7.  That includes full responses as ordered to Interrogatory No. 6, RFP 30-32, and updated responses to our second set of discovery.  Please also provide full responses to Document Request 71 and Interrogatory No. 21 by that date.  If we cannot have updated responses by June 7, we will contact the Court to schedule a second motion to compel.

Regarding depositions, June 19 and 20 are not available for our team.  Possible dates are June 5-8 and 11-14, although we are confirming them with our client.  Please advise if these dates work for your witnesses, and also provide a city in New Jersey for the location.

Lastly, the discovery period closes June 29.  Given we have yet to schedule the first round of depositions, please provide your thoughts on amending the case schedule.

Best,

Heather

**From:** Janus, Leah <LJanus@fredlaw.com>
**Sent:** Thursday, May 24, 2018 7:37 AM
**To:** Datzov, Nikola <NDatzov@fredlaw.com>
**Cc:** Heather Kliebenstein <HKliebenstein@merchantgould.com>; Friedemann, Lora <lfriedemann@fredlaw.com>; Kristin M. Drieman <KDrieman@merchantgould.com>; 15081.0008USZA.active@ef.merchantgould.com; Allen Hinderaker <AHinderaker@merchantgould.com>; Pham, Christopher <CPham@fredlaw.com>; Fleming, Terrence <TFleming@fredlaw.com>
**Subject:** Re: Fair Isaac v. Federal

Heather - We are working on getting you the supplemental ROG responses. I will give you a call today to update you on timing.

Thanks,
Leah

Leah C. Janus
**Fredrikson & Byron, P.A.**
612-492-7349

On May 21, 2018, at 6:02 PM, Datzov, Nikola <NDatzov@fredlaw.com> wrote:



**EXHIBIT**
I

1

Heather,

Thank you for your follow-up email.  Regarding deposition dates, the noticed topics that FICO served were impermissibly broad and required that the parties meet and confer to narrow their scope.  Our client has identified two individuals to testify regarding the narrowed topics—Henry Mirolyuz will testify about topics relating to Blaze installations, and John Taylor will testify about topics relating to financial reporting and Federal and Chubb & Son's business and structure.  Both witnesses are available for deposition on June 19 or 20 in New Jersey.

Regarding responses to ROGs 2, 3, and 4, we plan to provide you with verified responses by Wednesday.

As you know, at the outset of discovery, the parties agreed on the search terms to be used with custodian document collection.  This resulted in the production of more than 13,900 documents by Federal compared to FICO's production of less than 1,400 documents, excluding the specific subset of licensing agreements ordered by the Court.  As we discussed during the meet and confer, subject to Federal's stated objections, non-privileged documents responsive to requests Nos. 1 and 52-54 collected through a reasonable search have already been produced to FICO.  Federal has also produced documents responsive to request No. 26 and will produce additional responsive, non-privileged documents with its next production.  As written, Request No. 51 is impermissibly broad and seeks agreements from more than 11 years ago that have no apparent relationship to any Blaze functionality or the claims and defenses in this case.  During the meet and confer you stated that you would provide us with a sample agreement for what you were seeking.  If you are able to provide us with a sample or more specific description of what agreements you are seeking, we may be able to provide you with representative agreements.  Otherwise, Federal stands on its objections.  We are following up with our client regarding FICO's ROGs 6 and 21 and RFPs 30-32, 55-70 (with your limitation below), and 71 to confirm what information is available.  We expect to provide you with updated responses in the next couple of weeks.

Regarding the requests for admission, Federal objected to the requests as including vague and ambiguous terms for which FICO agreed at the meet and confer to provide further clarification and definitions.  Your email below does not provide any additional clarification or definitions but asks us to give them a "fair reading."  If FICO believes there is a plain and ordinary meaning to the words that Federal has objected to as vague and ambiguous, some of which are part of contractual language that may need to be interpreted, it should provide such a definition.  Without additional information, Federal has responded to the best of its ability.

Please let us know when we can expect to hear from you regarding the issue of missing documents from FICO's production noted in the email below.  Please also provide us with available deposition dates for Mike Sawyer, Bill Waid, and Oliver Clark.

Finally, as I will be going on parental leave, please include my colleague, Chris Pham (copied on this email), on further correspondence.  I have also copied Leah Janus and Terry Fleming who will also be working on the case going forward.

Thanks,

Nick

**From:** Heather Kliebenstein [mailto:HKliebenstein@merchantgould.com]
**Sent:** Tuesday, May 15, 2018 10:12 PM
**To:** Friedemann, Lora; Datzov, Nikola

**Cc:** Kristin M. Drieman; 15081.0008USZA.active@ef.merchantgould.com; Allen Hinderaker
**Subject:** RE: Fair Isaac v. Federal

Nick and Lora,

I write in follow up to our call last week.  We discussed receiving deposition dates early this week, but have yet to hear from you.  We would prefer to continue to work with you to schedule dates, but the notice has been outstanding since April 11 (going on 5 weeks) and we have yet to receive a response.  If we do not receive available dates from you by Monday, May 21, we will be forced to set a date unilaterally.

We also need updated responses to Interrogatory Nos. 2, 3 and 4.  Discovery responses have been outstanding since February for Interrogatory No. 4 and 2017 for Interrogatory Nos. 2 and 3.  You mentioned the delay was due to receiving a verification.  We will accept receiving the responses without immediate verification, presuming that verification will come shortly thereafter.  We also discussed updated responses to Interrogatory No. 6, RFP 30-32 and Federal's responses to FICO's second set of interrogatories and document request responses.  The Court affirmed the Magistrate Judge's order on April 24—over three weeks ago.  Thus, Federal has had several weeks to prepare and provide updated responses.  We do not want to bother the Court to prompt responses, but we need more of a timeline than simply Federal is working on the responses.  Please advise when we can expect to receive responses.

To confirm our call, Federal believes it has provided all documents responsive to Document Request Nos. 1 and 26.  Federal is confirming it has produced all responsive documents to Document Request Nos. 52-54 in view of the Court's April 24 ruling.  Regarding Document Request Nos. 55-70, we confirm that we are only interested in versions of the identified applications that utilize/employ Blaze Advisor.  I understand this limitation will eliminate versions of the identified applications that are used abroad that do not use/employ Blaze Advisor.

Regarding Document Request 71 and Interrogatory No. 21, Federal is reviewing its files to determine if responsive documents and information exist regarding modification/derivative works.

We also discussed RFA Nos. 13-16 and 20-28.  Federal maintained its objection that the phrases "authority to direct," "cause the direction," "disclose," "distribute," and "permitted to access" are indefinite.  You asked me to provide a definition for these words.  However, Federal can just as easily look in a dictionary or the case law to understand the ordinary, plain meaning of these words.  You raised a complex example of what might be, or might not be, "disclosure" of Blaze Advisor.  I am unable to tell you how to respond to the admissions based on that example because I am not privy to the conversations with Federal to fully extrapolate the example you gave to this case.  As counsel for Federal, I ask that you give the words their ordinary, plain meaning, review the matter with Federal and then either admit or deny each request based on what is a fair reading of each admission.  Please revise your responses accordingly.

Regarding Document Request 51, our review of the Chubb 10-k documents shows that Chubb & Son is the manager of, and provides services to, other insurance companies in the P&C Group.  Specifically, Chubb & Son provides day today management and operating personnel in order to gain "operational efficiencies through economies of scale and flexibility."  These agreements may address the nature and scope of use of Blaze Advisor.  With that clarification, please provide responsive documents.

Lastly, we are considering the privilege log dates and will provide our thoughts to you on that issue shortly.  Further, we are in receipt of your letter from Friday and are also reviewing your request below. As I mentioned in our call, FICO collected and produced non-privileged documents in response to RFP 6 and 7, and did not withhold any based on objections or date restrictions.

Best,

Heather

**From:** Heather Kliebenstein
**Sent:** Monday, May 7, 2018 2:00 PM
**To:** 'Datzov, Nikola' <NDatzov@fredlaw.com>

**Cc:** Friedemann, Lora <lfriedemann@fredlaw.com>; Allen Hinderaker
<AHinderaker@merchantgould.com>; 15081.0008USZA.active@ef.merchantgould.com
**Subject:** RE: Fair Isaac v. Federal

Nick, 2 pm tomorrow works for me.  I'll give you a call at that time.

Beset,

Heather


**From:** Datzov, Nikola <NDatzov@fredlaw.com>
**Sent:** Monday, May 7, 2018 11:12 AM
**To:** Heather Kliebenstein <HKliebenstein@merchantgould.com>
**Cc:** Friedemann, Lora <lfriedemann@fredlaw.com>; Allen Hinderaker
<AHinderaker@merchantgould.com>; 15081.0008USZA.active@ef.merchantgould.com
**Subject:** RE: Fair Isaac v. Federal

Heather,

Unfortunately, that time no longer works.  We are available at 10 or 2 tomorrow (Tuesday) if that works
for you.  Otherwise let us know a few times you are available this week.

Additionally, your letter below indicates that "FICO is finalizing its remaining document
production."  While we are still reviewing FICO's latest production, it appears that highly relevant and
responsive documents authored by FICO have not been produced by FICO thus far, including for
example the documents produced by Federal at FED000205, FED000112, FED009157, FED004808,
FED001498, FED008759, FED008761, FED009106, FED004896, and FED005149.  From our review of
FICO's productions, it also appears that FICO has produced a very limited number of documents or
emails from 2007 to 2015.  Such documents are certainly responsive to at least Federal's Requests for
Production Nos. 6, 7, and 10.  During our meet and confer on January 23, you stated that FICO had
collected and would produce all non-privileged documents responsive to Requests 6 and 7 and that FICO
was not withholding any documents based on its objections or limitations to the requests.  Please
confirm that FICO has not placed any date restrictions on its collection and production of responsive
documents for these requests so that we can discuss the reason why such documents have not been
produced by FICO.

Best,

Nick

**From:** Heather Kliebenstein [mailto:HKliebenstein@merchantgould.com]
**Sent:** Monday, May 07, 2018 6:48 AM
**To:** Datzov, Nikola
**Cc:** Friedemann, Lora; Allen Hinderaker; 15081.0008USZA.active@ef.merchantgould.com
**Subject:** Re: Fair Isaac v. Federal

Sorry for the late reply.  Are you available at 11 am?

Heather

On May 2, 2018, at 6:52 PM, Datzov, Nikola <NDatzov@fredlaw.com> wrote:

     Heather,

We are available for a call most of Monday morning.  Let us know if that works for you.

Best,

Nick

**From:** Heather Kliebenstein [mailto:HKliebenstein@merchantgould.com]
**Sent:** Tuesday, May 01, 2018 4:30 PM
**To:** Datzov, Nikola; Abigail E. Krueger; Friedemann, Lora
**Cc:** Allen Hinderaker; Carol A. Nystrom; Joe Dubis, Ph.D.; Kristin M. Drieman; Anne-Marie Larkin; Michael Erbele; Marshall, Dawn; Hanson, Katheryn; '15081.0008USZA.active@ef.merchantgould.com'
**Subject:** RE: Fair Isaac v. Federal

Nick, can we schedule a call by the end of this week to discuss the issues?  I propose Friday at 10 am.

Heather

**From:** Datzov, Nikola <NDatzov@fredlaw.com>
**Sent:** Monday, April 30, 2018 5:46 PM
**To:** Heather Kliebenstein <HKliebenstein@merchantgould.com>; Abigail E. Krueger <AKrueger@MerchantGould.com>; Friedemann, Lora <lfriedemann@fredlaw.com>
**Cc:** Allen Hinderaker <AHinderaker@merchantgould.com>; Carol A. Nystrom <CNystrom@merchantgould.com>; Joe Dubis, Ph.D. <JDubis@MerchantGould.com>; Kristin M. Drieman <KDrieman@merchantgould.com>; Anne-Marie Larkin <ALarkin@MerchantGould.com>; Michael Erbele <MErbele@MerchantGould.com>; Marshall, Dawn <dcmarshall@fredlaw.com>; Hanson, Katheryn <KMHanson@fredlaw.com>; '15081.0008USZA.active@ef.merchantgould.com' <15081.0008USZA.active@ef.merchantgould.com>
**Subject:** RE: Fair Isaac v. Federal

Hi Heather,

Lora was in an arbitration last week.  We are following up on the issues raised in your letter and conferring with our client regarding FICO's second set of discovery requests, in light of the Court's order from last week.  We will endeavor to provide you with a response as soon as we can.

Best,

Nick

**From:** Heather Kliebenstein [mailto:HKliebenstein@merchantgould.com]
**Sent:** Monday, April 30, 2018 1:06 PM
**To:** Abigail E. Krueger; Friedemann, Lora; Datzov, Nikola
**Cc:** Allen Hinderaker; Carol A. Nystrom; Joe Dubis, Ph.D.; Kristin M. Drieman; Anne-Marie Larkin; Michael Erbele; Marshall, Dawn; Hanson, Katheryn; '15081.0008USZA.active@ef.merchantgould.com'
**Subject:** RE: Fair Isaac v. Federal

Counsel, following up on this letter.  Please advise when we can meet and confer.

Best,

Heather

**From:** Abigail E. Krueger
**Sent:** Tuesday, April 24, 2018 9:21 AM
**To:** 'lfriedemann@fredlaw.com' <lfriedemann@fredlaw.com>; 'ndatzov@fredlaw.com'
<ndatzov@fredlaw.com>
**Cc:** Allen Hinderaker <AHinderaker@merchantgould.com>; Carol A. Nystrom
<CNystrom@merchantgould.com>; Heather Kliebenstein
<HKliebenstein@merchantgould.com>; Joe Dubis, Ph.D.
<JDubis@MerchantGould.com>; Kristin M. Drieman <KDrieman@merchantgould.com>;
Anne-Marie Larkin <ALarkin@MerchantGould.com>; Michael Erbele
<MErbele@MerchantGould.com>; 'dcmarshall@fredlaw.com'
<dcmarshall@fredlaw.com>; 'KMHanson@fredlaw.com' <KMHanson@fredlaw.com>;
'15081.0008USZA.active@ef.merchantgould.com'
<15081.0008USZA.active@ef.merchantgould.com>
**Subject:** Fair Isaac v. Federal

Counsel,

Please see the attached correspondence.

Thank you,

**Abigail E. Krueger**
Legal Assistant
Merchant & Gould P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2215
USA

**Telephone** (612) 371-5228
**Fax** (612) 332-9081
**www.merchantgould.com**

**GUARDIANS OF GREAT IDEAS** *

Atlanta | Denver | Knoxville | Madison | **Minneapolis** | New York | Silicon Valley* | Washington,
D.C. area

Note: This e-mail message is confidential and may be privileged or otherwise protected by law. If you are not the intended
recipient, please: (1) reply via e-mail to sender; (2) destroy this communication entirely, including deletion of all associated text
files from all individual and network storage devices; and (3) refrain from copying or disseminating this communication by any
means whatsoever. Thank you.
     *Practicing in California as Merchant & Gould LLP

## Pham, Christopher

| | |
|---|---|
| **From:** | Pham, Christopher |
| **Sent:** | Tuesday, June 19, 2018 5:04 PM |
| **To:** | Heather Kliebenstein; Michael Erbele; Allen Hinderaker |
| **Cc:** | Kristin M. Drieman; 15081.0008USZA.active@ef.merchantgould.com; Carol A. Nystrom; 15081.0008USZA.active@ef.merchantgould.com; Joe Dubis, Ph.D.; Janus, Leah; Datzov, Nikola; Friedemann, Lora; Fleming, Terrence |
| **Subject:** | RE: Fair Isaac v. Federal Discovery Issues: Response Needed C.O.B. June 19 |

Counsel,

We write to address the outstanding discovery issues noted in your email correspondence.

With respect to Requests for Production Nos. 30-32, the 2016 and 2017 annual statements for Federal and its U.S. subsidiaries will be produced today.  FICO's requests seek gross and net revenues and gross and net profits for Federal and its subsidiaries that use the Blaze Advisor software.  Federal believes that the statements are responsive to these requests, and the statements are kept in the ordinary course of business.  If, after reviewing the annual statements, FICO takes the position that the documents do not completely respond to these requests, the parties should meet and confer to discuss specifically what additional information FICO seeks.

With respect to Request for Production No. 71 and Interrogatory No. 21, you state that "Federal has not provided a response as to whether it would fully respond to Doc. Req. 71 and Interrogatory No. 21 regarding modification/derivative works."  This is incorrect.  On June 7, 2018, Federal provided a Supplemental Response to Doc. Req. No. 71 and a Supplemental Answer to Interrogatory No. 21.  To the extent FICO takes the position that the supplemental responses are not complete, the parties should meet and confer regarding the basis for FICO's position, as it has not been expressed to Federal.

With respect to Requests for Production Nos. 55-70, Federal believes that responsive documents have been produced.  Nevertheless, Federal is conducting a supplemental inquiry and has yet to locate any additional non-privileged, relevant and responsive documents.  To the extent Federal locates any additional non-privileged, relevant and responsive documents to these requests, it will produce such documents.

With respect to Request for Production No. 51, you state that "Federal refuses to produce documents in response to Request for Production No. 51." That is incorrect.  This request seeks the production of management and service agreements "between Federal through its Chubb & Son division and each company for whom Federal through its Chubb & Son division manages that company's insurance business and provides financial advisory services" going back 11 years.  By email dated May 21, 2018, Federal explained that this request "is impermissibly broad and seeks agreements from more than 11 years ago that have no apparent relationship to any Blaze functionality or the claims and defenses in this case."  In addition, during a meet-and-confer, FICO's counsel that FICO would provide Federal with a sample agreement for what FICO was specifically seeking.  To date, FICO has not provided any sample agreements or additional description of what agreements it is seeking.  However, in an effort to avoid further dispute, Federal will provide documents it has identified as responsive in the near future.

With respect to Interrogatory Nos. 15-20, FICO seeks "the gross written premium" for Federal and related entities.  Without waiving Federal's objections to these interrogatories, the statements that Federal will produce, which are kept in the ordinary course of business, will be responsive to these interrogatories.  If, after reviewing the statements, FICO takes the position that the documents do not completely respond to these interrogatories, the parties should meet and confer to discuss specifically what additional information FICO seeks.



EXHIBIT

J

1

With respect to Requests for Admission Nos. 13-16 and 20-28, you state that "Federal has not fully responded" to these requests. Federal objected to the requests as including vague and ambiguous terms for which FICO agreed at the meet-and-confer to provide further clarification and definitions. However, FICO has not provided any additional clarification or definitions but asks Federal to give the terms a "fair reading." By email dated May 21, 2018, Federal's counsel advised that "if FICO believes there is a plain and ordinary meaning to the words that Federal has objected to as vague and ambiguous, some of which are part of contractual language that may need to be interpreted, it should provide such a definition. Without additional information, Federal has responded to the best of its ability." To date, FICO has not provided any further clarification or definitions.

Regarding FICO's Notice of 30(b)(6) Deposition, in late May, Federal provided the dates of June 19 and 20 for FICO's 30(b)(6) deposition. On May 30, FICO informed Federal that the proposed date did not work for FICO. On June 7, Federal provided additional dates of June 27 for designee Henry Mirolyuz and July 11 for designee John Taylor. During a meet-and-confer on June 8, FICO's counsel advised that they are not available on June 27 to depose designee Henry Mirolyuz, but planned to depose John Taylor on July 11. As a follow-up, Federal states that designee Henry Mirolyuz is available on July 24, 26, 31, or August 2 to be deposed in New Jersey. Please advise as to which of these dates work for FICO.

Regarding verified answers to Interrogatory Nos. 2, 3, 4, 6, and 21, Federal will submit the executed verification pages immediately upon receipt.

Thanks,

**Christopher D. Pham**
Senior Associate
Fredrikson & Byron, P.A.
612.492.7388
cpham@fredlaw.com
200 South Sixth Street
Suite 4000
Minneapolis, MN 55402-1425

**From:** Heather Kliebenstein [mailto:HKliebenstein@merchantgould.com]
**Sent:** Friday, June 15, 2018 12:28 PM
**To:** Janus, Leah; Datzov, Nikola; Friedemann, Lora; Pham, Christopher; Fleming, Terrence
**Cc:** Kristin M. Drieman; 15081.0008USZA.active@ef.merchantgould.com; Allen Hinderaker; Carol A. Nystrom; 15081.0008USZA.active@ef.merchantgould.com; Michael Erbele; Joe Dubis, Ph.D.
**Subject:** Fair Isaac v. Federal Discovery Issues: Response Needed C.O.B. June 19

Counsel, we continue to have a number of discovery issues outstanding. We were told we would receive updates/responses to many of these issues by early this week based on our call Friday, June 8. My reminder on Tuesday, June 12 went unanswered. To summarize, these issues include:

1. Federal has not produced the 2016 and 2017 annual statements it represents will be produced in response to Requests for Production Nos. 30-32; nor has it committed to a date when these documents will be produced.
   a. Further, and without prejudice to receiving the 2016 and 2017 annual statements, we believe Federal's planned production violates the Court order regarding Requests for Production Nos. 30-32. The documents that Federal plans to produce likely are not connected to the alleged infringement and are thus not responsive to the requests. Each request is tailored to seek not simply "annual statements," but summary reports that show the revenues and profits derived from the products and services of each line of business for which the Blaze Advisor® software has been used. Given that Federal states in response to these requests, "To the extent Federal determines that a subsidiary has *not* used the Blaze Advisor® software, Federal will update its discovery responses accordingly[.]," the response is concededly incomplete. Moreover, absent Federal's admission that all revenue of Federal and its subsidiaries is connected to the use of Blaze Advisor®, the responses are non-responsive as overly broad. Each requests also seeks this information reported on a quarterly basis. Without seeing these annual

statements, we cannot say the data is not reported quarterly.  This summary of the non-responsive nature of these responses does not waive all other deficiencies of these responses.

2.   Federal has not provided a response as to whether it would fully respond to Doc. Req. 71 and Interrogatory No. 21 regarding modification/derivative works.

3.   Federal has not produced the responsive documents it represents will be produced in response to Requests for Production Nos. 55-70; nor has it committed to a date when these documents will be produced.

4.   Federal refuses to produce documents in response to Request for Production No. 51.

5.   Federal has not yet responded to Interrogatories 15-20, relying on the objection rejected by Magistrate Judge Schultz on the earlier motion to compel.  Judge Wright affirmed that decision, as you know, on April 24, 2018.

6.   Federal has not fully responded to Requests for Admission Nos. 13-16 and 20-28.

7.   Federal served its objections to FICO's Notice of 30(b)(6) deposition on April 19, 2018.  (The Notice was served April 11, 2018.)  Subsequently, Federal designated Henry Mirolyuz for some of the noticed topics.  We continue to wait for a deposition date that works for both parties, and we continue to wait for the identification of the city in which Federal desires the deposition to be taken.  Federal designated John Taylor for the remaining topics of that Notice.  Mr. Taylor is also identified as the person with knowledge in response to Interrogatory No. 6.  FICO prefers to schedule Mr. Taylor's deposition so the examination in response to the 30(b)(6) notice and the individual examination of Mr. Taylor can occur on the same day, or at worst, consecutive days.  To that end, we are protecting July 11 on our calendars.  But, as we discussed, taking the 30(b)(6) and individual deposition of Mr. Taylor on that date depends on Federal's production of documents.

8.   Federal has not verified its Second Supplemental Answers to Interrogatories Nos. 2, 3, and 4.

9.   Federal has not verified its Second Supplemental Answers to Interrogatories No. 6 and Supplemental Answer to Interrogatory No. 21.

Per the Court's order, prior to filing a motion to compel, the parties must send a joint email to the Court regarding the following:

1) the discovery dispute;
2) whether all parties agree to informal dispute resolution; and
3) any other information that would be helpful to the parties and the Court in resolving the dispute in a just, speedy, and inexpensive way. The Court will then schedule a conference call.

Please advise if any of these areas of disagreement are resolved by the **close of business on Tuesday, June 19**.  After Federal's response, I will prepare a joint email for your review and revisions.

Heather

**From:** Janus, Leah <LJanus@fredlaw.com>
**Sent:** Thursday, May 24, 2018 7:37 AM
**To:** Datzov, Nikola <NDatzov@fredlaw.com>
**Cc:** Heather Kliebenstein <HKliebenstein@merchantgould.com>; Friedemann, Lora <lfriedemann@fredlaw.com>; Kristin M. Drieman <KDrieman@merchantgould.com>; 15081.0008USZA.active@ef.merchantgould.com; Allen Hinderaker <AHinderaker@merchantgould.com>; Pham, Christopher <CPham@fredlaw.com>; Fleming, Terrence <TFleming@fredlaw.com>
**Subject:** Re: Fair Isaac v. Federal

Heather - We are working on getting you the supplemental ROG responses. I will give you a call today to update you on timing.

Thanks,
Leah

Leah C. Janus
**Fredrikson & Byron, P.A.**
612-492-7349

On May 21, 2018, at 6:02 PM, Datzov, Nikola <NDatzov@fredlaw.com> wrote:

3

Heather,

Thank you for your follow-up email.  Regarding deposition dates, the noticed topics that FICO served were impermissibly broad and required that the parties meet and confer to narrow their scope.  Our client has identified two individuals to testify regarding the narrowed topics—Henry Mirolyuz will testify about topics relating to Blaze installations, and John Taylor will testify about topics relating to financial reporting and Federal and Chubb & Son's business and structure.  Both witnesses are available for deposition on June 19 or 20 in New Jersey.

Regarding responses to ROGs 2, 3, and 4, we plan to provide you with verified responses by Wednesday.

As you know, at the outset of discovery, the parties agreed on the search terms to be used with custodian document collection.  This resulted in the production of more than 13,900 documents by Federal compared to FICO's production of less than 1,400 documents, excluding the specific subset of licensing agreements ordered by the Court.  As we discussed during the meet and confer, subject to Federal's stated objections, non-privileged documents responsive to requests Nos. 1 and 52-54 collected through a reasonable search have already been produced to FICO.  Federal has also produced documents responsive to request No. 26 and will produce additional responsive, non-privileged documents with its next production.  As written, Request No. 51 is impermissibly broad and seeks agreements from more than 11 years ago that have no apparent relationship to any Blaze functionality or the claims and defenses in this case.  During the meet and confer you stated that you would provide us with a sample agreement for what you were seeking.  If you are able to provide us with a sample or more specific description of what agreements you are seeking, we may be able to provide you with representative agreements.  Otherwise, Federal stands on its objections.  We are following up with our client regarding FICO's ROGs 6 and 21 and RFPs 30-32, 55-70 (with your limitation below), and 71 to confirm what information is available.  We expect to provide you with updated responses in the next couple of weeks.

Regarding the requests for admission, Federal objected to the requests as including vague and ambiguous terms for which FICO agreed at the meet and confer to provide further clarification and definitions.  Your email below does not provide any additional clarification or definitions but asks us to give them a "fair reading."  If FICO believes there is a plain and ordinary meaning to the words that Federal has objected to as vague and ambiguous, some of which are part of contractual language that may need to be interpreted, it should provide such a definition.  Without additional information, Federal has responded to the best of its ability.

Please let us know when we can expect to hear from you regarding the issue of missing documents from FICO's production noted in the email below.  Please also provide us with available deposition dates for Mike Sawyer, Bill Waid, and Oliver Clark.

Finally, as I will be going on parental leave, please include my colleague, Chris Pham (copied on this email), on further correspondence.  I have also copied Leah Janus and Terry Fleming who will also be working on the case going forward.

Thanks,

Nick

**From:** Heather Kliebenstein [mailto:HKliebenstein@merchantgould.com]
**Sent:** Tuesday, May 15, 2018 10:12 PM
**To:** Friedemann, Lora; Datzov, Nikola

**Cc:** Kristin M. Drieman; 15081.0008USZA.active@ef.merchantgould.com; Allen Hinderaker
**Subject:** RE: Fair Isaac v. Federal

Nick and Lora,

I write in follow up to our call last week.  We discussed receiving deposition dates early this week, but have yet to hear from you.  We would prefer to continue to work with you to schedule dates, but the notice has been outstanding since April 11 (going on 5 weeks) and we have yet to receive a response.  If we do not receive available dates from you by Monday, May 21, we will be forced to set a date unilaterally.

We also need updated responses to Interrogatory Nos. 2, 3 and 4.  Discovery responses have been outstanding since February for Interrogatory No. 4 and 2017 for Interrogatory Nos. 2 and 3.  You mentioned the delay was due to receiving a verification.  We will accept receiving the responses without immediate verification, presuming that verification will come shortly thereafter.  We also discussed updated responses to Interrogatory No. 6, RFP 30-32 and Federal's responses to FICO's second set of interrogatories and document request responses.  The Court affirmed the Magistrate Judge's order on April 24—over three weeks ago.  Thus, Federal has had several weeks to prepare and provide updated responses.  We do not want to bother the Court to prompt responses, but we need more of a timeline than simply Federal is working on the responses.  Please advise when we can expect to receive responses.

To confirm our call, Federal believes it has provided all documents responsive to Document Request Nos. 1 and 26.  Federal is confirming it has produced all responsive documents to Document Request Nos. 52-54 in view of the Court's April 24 ruling.  Regarding Document Request Nos. 55-70, we confirm that we are only interested in versions of the identified applications that utilize/employ Blaze Advisor.  I understand this limitation will eliminate versions of the identified applications that are used abroad that do not use/employ Blaze Advisor.

Regarding Document Request 71 and Interrogatory No. 21, Federal is reviewing its files to determine if responsive documents and information exist regarding modification/derivative works.

We also discussed RFA Nos. 13-16 and 20-28.  Federal maintained its objection that the phrases "authority to direct," "cause the direction," "disclose," "distribute," and "permitted to access" are indefinite.  You asked me to provide a definition for these words.  However, Federal can just as easily look in a dictionary or the case law to understand the ordinary, plain meaning of these words.  You raised a complex example of what might be, or might not be, "disclosure" of Blaze Advisor.  I am unable to tell you how to respond to the admissions based on that example because I am not privy to the conversations with Federal to fully extrapolate the example you gave to this case.  As counsel for Federal, I ask that you give the words their ordinary, plain meaning, review the matter with Federal and then either admit or deny each request based on what is a fair reading of each admission.  Please revise your responses accordingly.

Regarding Document Request 51, our review of the Chubb 10-k documents shows that Chubb & Son is the manager of, and provides services to, other insurance companies in the P&C Group.  Specifically, Chubb & Son provides day today management and operating personnel in order to gain "operational efficiencies through economies of scale and flexibility."  These agreements may address the nature and scope of use of Blaze Advisor.  With that clarification, please provide responsive documents.

Lastly, we are considering the privilege log dates and will provide our thoughts to you on that issue shortly.  Further, we are in receipt of your letter from Friday and are also reviewing your request below. As I mentioned in our call, FICO collected and produced non-privileged documents in response to RFP 6 and 7, and did not withhold any based on objections or date restrictions.

Best,

Heather

**From:** Heather Kliebenstein
**Sent:** Monday, May 7, 2018 2:00 PM
**To:** 'Datzov, Nikola' <NDatzov@fredlaw.com>

Cc: Friedemann, Lora <lfriedemann@fredlaw.com>; Allen Hinderaker
<AHinderaker@merchantgould.com>; 15081.0008USZA.active@ef.merchantgould.com
Subject: RE: Fair Isaac v. Federal

Nick, 2 pm tomorrow works for me.  I'll give you a call at that time.

Beset,

Heather

From: Datzov, Nikola <NDatzov@fredlaw.com>
Sent: Monday, May 7, 2018 11:12 AM
To: Heather Kliebenstein <HKliebenstein@merchantgould.com>
Cc: Friedemann, Lora <lfriedemann@fredlaw.com>; Allen Hinderaker
<AHinderaker@merchantgould.com>; 15081.0008USZA.active@ef.merchantgould.com
Subject: RE: Fair Isaac v. Federal

Heather,

Unfortunately, that time no longer works.  We are available at 10 or 2 tomorrow (Tuesday) if that works
for you.  Otherwise let us know a few times you are available this week.

Additionally, your letter below indicates that "FICO is finalizing its remaining document
production."  While we are still reviewing FICO's latest production, it appears that highly relevant and
responsive documents authored by FICO have not been produced by FICO thus far, including for
example the documents produced by Federal at FED000205, FED000112, FED009157, FED004808,
FED001498, FED008759, FED008761, FED009106, FED004896, and FED005149.  From our review of
FICO's productions, it also appears that FICO has produced a very limited number of documents or
emails from 2007 to 2015.  Such documents are certainly responsive to at least Federal's Requests for
Production Nos. 6, 7, and 10.  During our meet and confer on January 23, you stated that FICO had
collected and would produce all non-privileged documents responsive to Requests 6 and 7 and that FICO
was not withholding any documents based on its objections or limitations to the requests.  Please
confirm that FICO has not placed any date restrictions on its collection and production of responsive
documents for these requests so that we can discuss the reason why such documents have not been
produced by FICO.

Best,

Nick

From: Heather Kliebenstein [mailto:HKliebenstein@merchantgould.com]
Sent: Monday, May 07, 2018 6:48 AM
To: Datzov, Nikola
Cc: Friedemann, Lora; Allen Hinderaker; 15081.0008USZA.active@ef.merchantgould.com
Subject: Re: Fair Isaac v. Federal

Sorry for the late reply.  Are you available at 11 am?

Heather

On May 2, 2018, at 6:52 PM, Datzov, Nikola <NDatzov@fredlaw.com> wrote:

    Heather,

6

We are available for a call most of Monday morning.  Let us know if that works for you.

Best,

Nick

**From:** Heather Kliebenstein [mailto:HKliebenstein@merchantgould.com]
**Sent:** Tuesday, May 01, 2018 4:30 PM
**To:** Datzov, Nikola; Abigail E. Krueger; Friedemann, Lora
**Cc:** Allen Hinderaker; Carol A. Nystrom; Joe Dubis, Ph.D.; Kristin M. Drieman; Anne-Marie Larkin; Michael Erbele; Marshall, Dawn; Hanson, Katheryn; '15081.0008USZA.active@ef.merchantgould.com'
**Subject:** RE: Fair Isaac v. Federal

Nick, can we schedule a call by the end of this week to discuss the issues?  I propose Friday at 10 am.

Heather

**From:** Datzov, Nikola <NDatzov@fredlaw.com>
**Sent:** Monday, April 30, 2018 5:46 PM
**To:** Heather Kliebenstein <HKliebenstein@merchantgould.com>; Abigail E. Krueger <AKrueger@MerchantGould.com>; Friedemann, Lora <lfriedemann@fredlaw.com>
**Cc:** Allen Hinderaker <AHinderaker@merchantgould.com>; Carol A. Nystrom <CNystrom@merchantgould.com>; Joe Dubis, Ph.D. <JDubis@MerchantGould.com>; Kristin M. Drieman <KDrieman@merchantgould.com>; Anne-Marie Larkin <ALarkin@MerchantGould.com>; Michael Erbele <MErbele@MerchantGould.com>; Marshall, Dawn <dcmarshall@fredlaw.com>; Hanson, Katheryn <KMHanson@fredlaw.com>; '15081.0008USZA.active@ef.merchantgould.com' <15081.0008USZA.active@ef.merchantgould.com>
**Subject:** RE: Fair Isaac v. Federal

Hi Heather,

Lora was in an arbitration last week.  We are following up on the issues raised in your letter and conferring with our client regarding FICO's second set of discovery requests, in light of the Court's order from last week.  We will endeavor to provide you with a response as soon as we can.

Best,

Nick

**From:** Heather Kliebenstein [mailto:HKliebenstein@merchantgould.com]
**Sent:** Monday, April 30, 2018 1:06 PM
**To:** Abigail E. Krueger; Friedemann, Lora; Datzov, Nikola
**Cc:** Allen Hinderaker; Carol A. Nystrom; Joe Dubis, Ph.D.; Kristin M. Drieman; Anne-Marie Larkin; Michael Erbele; Marshall, Dawn; Hanson, Katheryn; '15081.0008USZA.active@ef.merchantgould.com'
**Subject:** RE: Fair Isaac v. Federal

Counsel, following up on this letter.  Please advise when we can meet and confer.

Best,

Heather

**From:** Abigail E. Krueger
**Sent:** Tuesday, April 24, 2018 9:21 AM
**To:** 'lfriedemann@fredlaw.com' <lfriedemann@fredlaw.com>; 'ndatzov@fredlaw.com'
<ndatzov@fredlaw.com>
**Cc:** Allen Hinderaker <AHinderaker@merchantgould.com>; Carol A. Nystrom
<CNystrom@merchantgould.com>; Heather Kliebenstein
<HKliebenstein@merchantgould.com>; Joe Dubis, Ph.D.
<JDubis@MerchantGould.com>; Kristin M. Drieman <KDrieman@merchantgould.com>;
Anne-Marie Larkin <ALarkin@MerchantGould.com>; Michael Erbele
<MErbele@MerchantGould.com>; 'dcmarshall@fredlaw.com'
<dcmarshall@fredlaw.com>; 'KMHanson@fredlaw.com' <KMHanson@fredlaw.com>;
'15081.0008USZA.active@ef.merchantgould.com'
<15081.0008USZA.active@ef.merchantgould.com>
**Subject:** Fair Isaac v. Federal

Counsel,

Please see the attached correspondence.

Thank you,

**Abigail E. Krueger**
Legal Assistant
Merchant & Gould P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2215
USA

**Telephone** (612) 371-5228
**Fax** (612) 332-9081
**www.merchantgould.com**

GUARDIANS OF GREAT IDEAS ˚

Atlanta | Denver | Knoxville | Madison | **Minneapolis** | New York | Silicon Valley* | Washington,
D.C. area

Note: This e-mail message is confidential and may be privileged or otherwise protected by law. If you are not the intended
recipient, please: (1) reply via e-mail to sender; (2) destroy this communication entirely, including deletion of all associated text
files from all individual and network storage devices; and (3) refrain from copying or disseminating this communication by any
means whatsoever. Thank you.
   *Practicing in California as Merchant & Gould LLP

## Pham, Christopher

| | |
|---|---|
| **From:** | Heather Kliebenstein <HKliebenstein@merchantgould.com> |
| **Sent:** | Wednesday, August 01, 2018 11:15 AM |
| **To:** | Pham, Christopher |
| **Cc:** | Carol A. Nystrom; 15081.0008USZA.active@ef.merchantgould.com; Janus, Leah; Fleming, Terrence; Michael Erbele; Allen Hinderaker |
| **Subject:** | RE: Discovery Deficiencies |

Chris, here is a draft email regarding the discovery disputes for the Court.  You will note FICO has agreed to the informal dispute resolution procedure.  Thank you for your attention to this matter.

Best,

Heather

*****

Dear Magistrate Judge Schultz,

Pursuant to the Second Amended Pretrial Scheduling Order, Dkt. 111 at 3, the parties submit this joint email to chambers regarding their outstanding discovery disputes.

### FICO's Request for Production Nos. 30-32

- **FICO's position:** The Court ordered Federal to respond fully to FICO's Request for Production Nos. 30-32, which seek summary reports showing the revenues and profits derived from the products and services of each line of business for which the Blaze Advisor® software has been used. Federal's response is deficient in two manners.  First, Federal has produced no information for the UK and Australia.  Second, Federal produced the 2016 and 2017 U.S. and Canadian annual statements of Federal and 11 of Federal's U.S. subsidiaries. Federal's production does not comply with the Court's Order. Each request is tailored to seek not simply "annual statements" as Federal produced, but rather summary reports showing the revenues and profits derived from the products and services of each line of business for which the Blaze Advisor® software has been used. The "annual statements" are also deficient because they do not show quarterly revenues for the various requested time periods as sought by the Requests. Federal has a duty under this Court's Order and the Rules to fully respond.  The fact the document requests (quite naturally) do not align with the records Federal keeps in the ordinary course of business is not an excuse.  Federal must review the data it keeps as a company and provide it in a way that is responsive to these requests.

- **Federal's position:** Federal's obligation is to produce documents as they are kept in the usual course of business. Federal is not obligated to create new summary reports or documents that are not already in its current possession, custody or control. The 2016 and 2017 annual statements of Federal and 11 of Federal's U.S. subsidiaries, and the 2016 and 2017 financial reports for Canada, are documents that are kept in the usual course of business. Federal is working to produce financial reports related to the UK and Australia entities. That said, Federal continues to search for documents in its possession, custody, or control that show revenues and profits derived from the products and services in connection with which Blaze Advisor® is and has been used. Discovery is continuing, and Federal will produce responsive documents that are kept in the usual course of business, to the extent such documents already exist.

Pursuant to the Second Amended Pretrial Scheduling Order, the parties agree to informal dispute resolution regarding this issue.

**EXHIBIT**

1

tabbies®

K

**FICO's Request for Production Nos. 55-70**

- **FICO's position:** These Requests seek documents "relating to the decision to implement" the Blaze-containing applications identified in Federal's Supplemental Answer to Interrogatory No. 4, "including all documents relating to the business benefits to be derived from the implementation and the efficiencies to be realized from us[e of] the application[s]." Federal has not produced documents related to the business benefits derived from any Blaze-containing application, let alone every Blaze-containing application. Federal contends it has produced all responsive documents it has located, but Federal has only searched the files of custodians who are technical, IT focused witnesses in response to this request. Specifically, Federal has stated that it searched the files of Federal employee Henry Mirolyuz for responsive documents, and found no additional documents. But Mr. Mirolyuz is an IT application architect—a technical witness. As learned in his July 31 deposition, Mr. Mirolyuz does not make business decisions about what applications to create and does not know whom the business persons are that do; he received project direction from his superior in IT and professed to have no contact with the business decision makers. Federal should conduct an investigation of the files of its employees that focus on business and sales, not simply IT/technical witnesses, but it refuses to do so. The fact that Federal may have produced what it has from a narrow, non-responsive collection is meaningless.

- **Federal's position:** FICO's contention that Federal's custodian list includes only technical witnesses and counsel is incorrect. Henry Mirolyuz, Federal's 30(b)(6) deposition designee, is more of a project manager than merely a technical witness. Mr. Mirolyuz has conducted a diligent search for documents responsive to these requests and has been unable to locate any to date.

The parties agree to informal dispute resolution regarding this issue.

**FICO's Interrogatory Nos. 15-20**

- **FICO's position:** Interrogatory Nos. 15-17 seek the gross written premium for all insurance policies of Federal and related companies in connection with which the Blaze Advisor® software was used. Interrogatory No. 15 seeks this information for each year from 2001-2006; Interrogatory No. 16 seeks this information for the each year from 2007-2012; and Interrogatory No. 17 seeks this information for each quarter from March 30, 2016 to the present. Federal has not provided sufficient answers to these interrogatories, which seek similar categories of revenue information as Federal was previously ordered to produce. Federal's production of annual statements for 2016 and 2017 are not responsive. As stated in connection with Request for Production Nos. 30-32, annual statements are not responsive to the interrogatories that seek the gross written premium on all insurance policies in connection with which Blaze Advisor® software is and has been used. The interrogatories require Federal not simply to provide off the shelf reports, but to answer the interrogatories through investigating the data and information in Federal's custody, control or possession. It is not the case that FICO can as readily as Federal determine the information requested by these interrogatories from the reports provided. Further, Interrogatory Nos. 18-20 seek the quarterly gross written premium for companies in the U.K., Canada, and elsewhere in the world that have used the Blaze Advisor® software from the date of first use to the present. The single financial report of Chubb Canada is not responsive to Interrogatory Nos. 18-20 for the reasons stated with respect to Request for Production Nos. 30-32.

- **Federal's position:** *See* Federal's position with respect to Request for Production Nos. 30-32. Federal has produced documents in response to FICO's Request for Production Nos. 30-32. These documents are sufficient to answer Interrogatory Nos. 15-20 because they show "the gross written premium" for Federal and related entities.

The parties agree to informal dispute resolution regarding this issue.

**FICO's Request for Admission Nos. 13-16 and 20-28**

- **FICO's position:** Federal objected to these Requests on the basis that the phrases "authority to direct," "cause the direction," "disclose," "distribute," and "permitted to access" used therein are vague and ambiguous. In response, Federal re-wrote the Requests and gave partial answers in response to the re-written Requests. These partial answers are deficient. Federal should give complete responses to these Requests, and in doing so should give the disputed terms their plain and ordinary meaning. Ambiguity objections are improper where the objected to terms have "ordinary, plain meaning[s]s, particularly in the context of the [Interrogatories]." *Reinsdorf v. Skechers U.S.A., Inc.,* No. CV 10-7181 DDP (SSx), 2013 U.S. Dist. LEXIS 200627, at *28 (C.D. Cal. Sep. 9, 2013). Here, these phrases are defined in the dictionary and in case law, and thus are not ambiguous. Fed. R. Civ. P. 36(a)(1)(A); *see also FTC v. Think All Publ'g L.L.C.,* No. 4:07-cv-011, 2008 U.S. Dist. LEXIS 18561, at *9 (E.D. Tex. Mar. 11, 2008) (overruling objections to Requests for Admission where party claimed legal term was vague and ambiguous).

- **Federal's position:** Federal maintains its objections that the phrases "authority to direct," "cause the direction," "disclose," "distribute," and "permitted to access" are vague and ambiguous. Federal is unable to answer the Requests unless FICO provides further clarification regarding the meaning of these terms.

The parties agree to informal dispute resolution regarding this issue.

The parties are available for a joint conference call with the Court on Friday, August 3 to discuss these issues more fully.

**From:** Pham, Christopher <CPham@fredlaw.com>
**Sent:** Friday, July 20, 2018 4:04 PM
**To:** Heather Kliebenstein <HKliebenstein@merchantgould.com>; Michael Erbele <MErbele@MerchantGould.com>; Allen Hinderaker <AHinderaker@merchantgould.com>
**Cc:** Carol A. Nystrom <CNystrom@merchantgould.com>; 15081.0008USZA.active@ef.merchantgould.com; Janus, Leah <LJanus@fredlaw.com>; Fleming, Terrence <TFleming@fredlaw.com>
**Subject:** RE: Discovery Deficiencies

Counsel,

Here is a ShareFile link for a different version of FED013520_0001. Please let me know if there are any formatting issues.

https://fredriksonandbyron.sharefile.com/d-s13430654fb74b498

### FICO's Request for Production Nos. 30-32

Federal's obligation is to produce documents as they are kept in the usual course of business. Federal is not obligated to create new summary reports or documents that are not already in its current possession, custody or control. The 2016 and 2017 annual statements of Federal and 11 of Federal's U.S. subsidiaries, and the 2016 and 2017 financial reports for Canada, are documents that are kept in the usual course of business. Federal is working to produce financial reports related to the UK and Australia entities.

That said, Federal continues to search for documents in its possession, custody, or control that show revenues and profits derived from the products and services in connection with which Blaze Advisor® is and has been used. Discovery is continuing, and Federal will produce responsive documents that are kept in the usual course of business, to the extent such documents already exist.

### FICO's Request for Production No. 51

We have a request out to our client to confirm whether a management/service agreement exists for the Chubb entity in Europe (UK). We will advise immediately once we hear back.

**FICO's Request for Production Nos. 55-70**

You contention that Federal's custodian list includes only technical witnesses and counsel is incorrect. Henry Mirolyuz, Federal's 30(b)(6) deposition designee, is more of a project manager than merely a technical witness. Mr. Mirolyuz has conducted a diligent search for documents responsive to these requests and has been unable to locate any to date.

**FICO's Interrogatory Nos. 15-20**

See Federal's above response regarding FICO's Request for Production Nos. 30-32.

Thanks,

**Christopher D. Pham**
Fredrikson & Byron, P.A.
612.492.7388
cpham@fredlaw.com
200 South Sixth Street
Suite 4000
Minneapolis, MN 55402-1425

**From:** Heather Kliebenstein [mailto:HKliebenstein@merchantgould.com]
**Sent:** Thursday, July 19, 2018 10:31 AM
**To:** Fleming, Terrence; Pham, Christopher; Janus, Leah; Friedemann, Lora; Datzov, Nikola
**Cc:** Michael Erbele; Carol A. Nystrom; 15081.0008USZA.active@ef.merchantgould.com; Allen Hinderaker
**Subject:** RE: Discovery Deficiencies

Counsel, it has been a week with no response. Please advise as to the status of our requests.

Heather

**From:** Heather Kliebenstein
**Sent:** Friday, July 13, 2018 1:55 PM
**To:** 'Fleming, Terrence' <TFleming@fredlaw.com>; 'Pham, Christopher' <CPham@fredlaw.com>; 'Janus, Leah' <LJanus@fredlaw.com>; Friedemann, Lora <lfriedemann@fredlaw.com>; Datzov, Nikola <NDatzov@fredlaw.com>
**Cc:** Michael Erbele <MErbele@MerchantGould.com>; Carol A. Nystrom <CNystrom@merchantgould.com>; '15081.0008USZA.active@ef.merchantgould.com' <15081.0008USZA.active@ef.merchantgould.com>; Allen Hinderaker <AHinderaker@merchantgould.com>
**Subject:** Discovery Deficiencies

Counsel,

I write to finalize the parties' positions regarding the remaining discovery disputes. As an initial matter, there are some formatting issues with FED013520_0001. Can you review that document and produce a different version?

The following summary is not exhaustive, but addresses the points we continue to negotiate.

**FICO's Request for Production Nos. 30-32**

These requests sought summary reports showing the revenues and profits derived from the products and services of each line of business for which the Blaze Advisor® software has been used for each quarter from January 2016 to present. In response, Federal produced the 2016 and 2017 annual statements of Federal and 11 of Federal's U.S. subsidiaries. There are no financials reports related to the UK or Australian uses of Blaze Advisor® software. These

statements do not show quarterly revenues. Significantly, these statements no not show revenues and profits derived from the products and services in connection with which Blaze Advisor® is and has been used. Indeed, Federal concedes these documents do not show revenues and profits from the products and services of all lines of business for which Blaze Advisor® software is and has been used. Federal hedged its response stating "[t]o the extent Federal determines a subsidiary has *not* used the Blaze Advisor® software, Federal will update its discovery responses accordingly."

FICO requires a document production that is responsive to the requests. Federal has a duty not to simply provide reports it has on the shelf, but to review the data it keeps as a company and provide it in a way that is responsive to these requests.

The financial report from Canada suffers from the same deficiencies.

### FICO's Request for Production No. 51

This Request seeks production of management and service agreements "between Federal through its Chubb & Son division and each company for whom Federal through its Chubb & Son division manages that company's insurance business and provides financial advisory services." To date, Federal produced the service or management agreement with each US subsidiary of Federal plus the agreements with Canada and Australia. Please produce the management and service agreement with Chubb Europe (UK) or confirm that one does not exist.

### FICO's Request for Production Nos. 55-70

These Requests seek documents "relating to the decision to implement" the Blaze-containing applications identified in Federal's Supplemental Answer to Interrogatory No. 4, "including all documents relating to the business benefits to be derived from the implementation and the efficiencies to be realized from us[e of] the application[s]." Federal has not produced documents responsive to these Requests. This is self-evident given Federal's custodian list includes only technical witnesses and counsel. None of the custodians against whom Federal collected documents has a product manager or related role directed to sales. Federal's obligation is to collect and produce documents responsive to FICO's requests. The fact that Federal may have produced what it has from a narrow, non-responsive collection is meaningless.

### FICO's Interrogatory Nos. 15-20

Federal has not provided sufficient responses to these interrogatories. Interrogatory Nos. 15-17 seek an identification of the gross written premium for all insurance policies of Federal and related companies in connection with which the Blaze Advisor® software was used. Interrogatory Nos. 15 and 16 request historical information for 2002-2006 and 2007-2012. Federal's production of annual statements for 2016 and 2017 are not responsive.

And, as stated in connection with RFP's 30-32, annual statements are not responsive to these interrogatories that seek the gross written premium on all insurance policies in connection with which Blaze Advisor® is and has been used. The interrogatories require Federal not simply to provide off the shelf reports, but to answer the interrogatories through investigating the data and information in Federal's custody, control or possession. It is not the case that FICO can as readily as Federal determine the information requested by these interrogatories from the reports provided.

Further, Interrogatory Nos. 18-20 seek the gross written premium for all insurance policies in connection with which Blaze Advisor® software has and is used for companies in the U.K., Canada, and elsewhere in the world. The single financial report of Chubb Canada is not responsive for the reasons stated.

We understand the parties disagree on the sufficiency of the responses to FICO's Request for Admission Nos. 13-16 and 20-28.

Heather

**Heather Kliebenstein**
Partner
Merchant & Gould P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2215
USA

**Telephone** (612) 371-5213
**Fax** (612) 332-9081
**Email** hkliebenstein@merchantgould.com
**merchantgould.com**

GUARDIANS OF GREAT IDEAS®

Note: This e-mail message is confidential and may be privileged or otherwise protected by law. If you are not the intended recipient, please: (1) reply via e-mail to sender; (2) destroy this communication entirely, including deletion of all associated text files from all individual and network storage devices; and (3) refrain from copying or disseminating this communication by any means whatsoever.
Please consider the environment before printing this email. Thank you.

2014 WL 109494
Only the Westlaw citation is currently available.
United States District Court,
E.D. California.

Rene ARROYO, Plaintiff,

v.

D. ADAMS et al., Defendants.

No. 1:11–cv–01186–AWI–DLB (PC).
|
Jan. 10, 2014.

**Attorneys and Law Firms**

Rene Arroyo, San Diego, CA, pro se.

Kelli Marie Hammond, Attorney General of the State of
California, Department of Justice, Sacramento, CA, for
Defendants.

ORDER GRANTING IN PART AND DENYING
IN PART PLAINTIFF'S MOTIONS TO COMPEL

ORDER STAYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

DENNIS C. BECK, United States Magistrate Judge.

**I. PROCEDURAL HISTORY**

*1 Plaintiff Rene Arroyo ("Plaintiff") is a prisoner
proceeding pro se and in forma pauperis in this civil rights
action. Plaintiff is proceeding on his original complaint,
filed, July 19, 2011.

Pursuant to the Court's March 5, 2012, order, this action
is proceeding on the following cognizable claims: (1)
violation of the Fourth Amendment against Defendant
Adams; (2) violation of the Fourteenth Amendment
against Defendant Adams; (3) violation of the Eighth
Amendment base on the use of excessive force against
Defendants Schneider, Carter, Matthews and Leon; (4)
violation of the Eighth Amendment based on conditions
of confinement against Defendants Hubach, Matthews
and Leon; (5) violation of the right to privacy under
the California Constitution against Defendant Adams;
(6) unreasonable search in violation of Article I, Section
13 of the California Constitution against Defendant

Adams; and (7) use of excessive force in violation of
Article I, Section 17 of the California Constitution against
Defendants Schneider, Carter, Matthews and Leon. The
discovery cut-off date was May 10, 2013.

On March 1, 2013, Plaintiff filed a motion to compel
further responses to requests for admissions ("RFAs"),
Set 1. (ECF No. 30 .) On March 11, 2013, Plaintiff
filed three separate motions to compel further disclosure
to Plaintiff's demand for the production of documents
("PODs"). (ECF Nos. 32, 33, 34.) On March 12, 2013,
Plaintiff filed a motion to compel further responses to
RFAs, Set 2. Defendants opposed the motions on August
26, 2013.[1] On September 30, 2013, Plaintiff filed a reply.
(ECF No. 50.) The motions are now deemed submitted
pursuant to Local Rule 230(l).

**II. MOTION TO COMPEL LEGAL STANDARD**

"Parties may obtain discovery regarding any matter,
not privileged, that is relevant to the claim or defense
of any party .... Relevant information need not be
admissible at the trial if the discovery appears reasonably
calculated to lead to the discovery of admissible
evidence." Fed.R.Civ.P. 26(b)(1). Defendants are required
to "furnish such information as is available" to him in
responding to Plaintiff's interrogatories, and documents
which are in his "possession, custody or control" in
responding to Plaintiff's request for the production
of documents. Fed.R.Civ.P. 33(a), 34(a). If Defendant
objects to one of Plaintiff's discovery requests, it is
Plaintiff's burden to demonstrate why the objection is not
justified. Plaintiff must inform the court which discovery
requests are the subject of his motion to compel, and,
for each disputed response, inform the Court why the
information sought is relevant and why Defendant's
objections are not justified.

**III. DISCUSSION**

**A. *Plaintiff's Request for Admissions***

**1. Legal Standard**

"A party may serve on any other party a written request to
admit, for purposes of the pending action only, the truth
of any matters within the scope of Rule 26(b)(1) relating
to: (A) facts, the application of law to fact, or opinions
about either; and (B) the genuineness of any described
documents." Fed.R.Civ.P. 36(a) (1).

EXHIBIT

L

**\*2** If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed.R.Civ.P. 36(a)(4).

"The grounds for objecting to a request must be stated," Fed.R.Civ.P. 36(a)(5), and with other forms of discovery, it is well established that boilerplate objections do not suffice, *e.g., Thompson v. Yates,* No. 1:06–cv–00763–RCC, 2011 WL 5975469, at \*2–3 (E.D.Cal. Nov.29, 2011); *Everest Indem. Ins. Co. v. A ventineTramonti Homeowners Assoc.,* No. 2:09–cv–1672–RCJ–RJJ, 2011 WL 3841083, at \*2 (D.Nev. Aug.29, 2011); *Palladini v. City of Milpitas,* No. CV 06–00779 JW (HRL), 2008 WL 1774090, at \*2 (N.D.Cal. Apr.16, 2008); *Medina v. U.P.S.,* No. C–06–791 JW PVT, 2007 WL 2123699, at \*2 (N.D.Cal. Jul.23, 2007); *Eastridge Personnel of Las Vegas, Inc. v. Du–Orpilla,* No. 2:06–cv–00776–KJD–PAL, 2007 WL 1232229, at \*2 (D.Nev. Apr.26, 2007); *A. Farber & Partners, Inc. v. Garber,* 237 F.R.D. 250, 255 (C.D.Cal.2006).

Finally, "[t]he requesting party may move to determine the sufficiency of an answer or objection," Fed.R.Civ.P. 36(a)(6). "Unless the court finds an objection justified, it must order that an answer be served. On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer must be served." *Id.* Efforts to obstruct discovery through objections or evasive responses which lack any good faith basis will not be condoned. *Marchand v. Mercy Med. Cntr.,* 22 F.3d 933, 938 (9th Cir.1994); *In re TFT–LCD (Flat Panel) Antitrust Litigation,* No. M 07–1827

SI, 2011 WL 3566419, at \*5 (N.D.Cal. Aug.12, 2011); *Mitchell,* 2010 WL 3835765, at \*1.

**2 Plaintiff's Request for Admissions—Set 1**
Plaintiff seeks further responses from Defendants Leon to Request for Admissions, Set One, Requests No. 8, 9, 13, 28–44, 46–48, 73–74, 77–83, 85, 89, and 92. Plaintiff seeks further responses from Defendant H ubach, Carter, Schneider, and Mathews as to Requests No. 8, 9, 13, 27–54, 73–74, 77–81, 82, 83, 85, 89, and 92. Plaintiff argues Defendants' objections are not complete and straightforward answers, or that they are not answered in one of three ways. Defendants argue that they properly responded to these requests for admissions by admitting, denying, or objecting, and that Plaintiff fails to state his specific objections to the disputed responses.

**RFA 8:** "Admit or deny on or about March 5, 2008 thru[sic] march 17, 2008 you were familiar with both state and federal law prohibiting unreasonable searches and seizures."

**\*3 Response:** Defendants objected that this request is vague, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further respond that their objections are well taken because there are no such claims against these Defendants.

**Ruling:** Plaintiff's motion to compel an amended answer is granted.

Defendants' contention that that the request is vague immaterial, and not reasonable calculated to lead to the discovery of admi ssi ble evidence lacks merit. Moreover, the fact that there are no such claims for unreasonable searches and seizures against these particular defendants is insignificant. Plaintiff is proceeding against Defendant Adams for both state and federal claims of unreasonable searches and "[p]arties may obtain discovery regarding any party's claim or defense ..." Fed.R.Civ.P.l 26(b)(1).

**RFA 9:** "Admit or deny that you are capable to determine the difference between reasonable and unreasonable searches and seizures being enforced."

**Response:** Defendants' response is identical to that of the RFA 8, above.

**Ruling:** Plaintiff's motion to compel an amended answer is granted.

**RFA 13:** "Admit or deny on or about March 15, 2008 thru[sic] March 17, 2008 you were and still are familiar with the Rules and Regulations of the C.C.R. 15 § 3052(a) (b)(c)(d)(e)(f)(g)(h) Health and Safety Standards."

**Response:** Defendants objected that the request is immaterial to the matters at issue, is irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence as the cited sections refer to kitchens and food handling.

**Ruling:** Plaintiff's motion to compel an amended answer is denied.

Defendants properly objected to this RFA. Plaintiff only claim relating to food is that was denied food on March 15, 2008. Thus, knowledge of prison kitchens and food handlings is immaterial to the matters at issue, is irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence.

**RFAs 28–40:** Plaintiff requests admissions based on defendant' knowledge of the California Penal Code on issues regarding filing false reports, false statements under oath, offering altered or forged documents, falsifying documents to be used as evidence, destroying or concealing evidence, planting, altering or concealing physical evidence, inhumane treatment or oppression of a prisoner, falsely reporting a crime, altering entries in books and records, cruel and unusual punishment under the California Penal Code, civil rights and enumerations of rights, and Article 13 of the California Constitution.

**Response:** Defendants objects to Plaintiff's requests numbered 28 through 40 on the grounds that they are irrelevant to the matters at issue, requests based on claims that were dismissed pursuant to the screening order, and are not reasonably calculated to lead to the discovery of admissible evidence.

**Ruling:** Plaintiff's motion to compel an amended answer is denied.

**\*4** Plaintiff has failed to meet his burden to inform the Court why the information sought is relevant and why Defendant's objections are not justified. Plaintiff's motion

to compel simply states that the requests are relevant and gives no further explanation. Moreover, the Court finds that Plaintiff's requests are irrelevant because the claims for violations of the California Penal Code were dismissed in the Court's screening order.

**RFAs 42–44:** Plaintiff requests admissions regarding whether Defendants' have had previous 602 inmate complaints filed against them for misconduct.

**Response:** Defendants objected on the grounds that they are vague as to time, overly broad, immaterial to the matters at issue, irrelevant, and not reasonably calculated to lead to the discovery of evidence.

**Ruling:** Plaintiff's motion to compel an amended answer is partially granted.

Plaintiff's requests are overbroad in that the fails to state a time period for the admissions requested. However, the information requested would be relevant to Plaintiff's claims. Accordingly, the Court will modify Plaintiff's requests. Defendants are to amend their reponses to reflect 602 inmate complaints filed against them specifically for excessive force against prisoners or unreasonable searches for during the time period of March 1, 2007 to Mach 1, 2009.

**RFAs 46–48:** Plaintiff seeks information regarding any lawsuits filed against defendants for employee misconduct, excessive force against prisoners, and unreasonable unclothed body searches and/or strip searches.

**Reponse:** Defendants objected that these requests are vague as to time and type of alleged lawsuit, are overly broad, are immaterial to the matters at issue, and are not reasonably calculated to lead to the discovery of admissible evidence.

**Ruling:** Plaintiff's request for furher admission is partially granted.

Plaintiff's request for all civil rights causes of action cases is overly broad. Additionally, the Court is aware that a defendant may not be aware that a suit has been filed against them in Federal Court. In a federal prisoner civil rights action, the defendant is not served until after the complaint is screened and cognizable claims are

found. Accordingly, the Court will order that Defendants respond to the request by providing the information requested on all cases alleging excessive force and/or unreasonable searches and seizures in which they have been served as a defendant.

**RFAs 49–54:** Plaintiff seeks to compel Defendants Hubach, Carter, Scheider, and Matthews to give further responses regarding CDCR policy and practice.

**Response:** Defendants reply that they properly resonded to each request and that no further response is indicated.

**Ruling:** Plaintiff's request for further admission is denied. Defendants responded to Plaintiff's requests and he must accept their answers.

**RFAs 73–74:** Plaintiff seeks to compel further responses regarding the custom, practice, or procedure at CSP for conducing an unclothed body search.

**\*5 Response:** Defendants objected that the requests are not a plain statement of fact and that they are compound.

**Ruling:** Plaintiff's request for further admission is granted.

Although Plaintiff's requests are lengthy, they are not compound because they are simply asking whether the described actions reflect CSP's policy regarding unclothed body searches. Defendants may qualify their answer, if necessary, and deny or admit only part of the response. Fed.R.Civ.P. 36(a)(4).

**RFAs 77–81:** Plaintiff seeks to compel further admission regarding CSP policy and procedure on unclothed body searches in the view of female officers.

**Response:** Defendants objected to each request as repetitive, vague, and overlybroad. Without waiving objections, Defendants answered the requests to the extent they could and denied the remainder of the requests.

**Ruling:** Plaintiff's request for further admission is denied. Defendants responded to Plaintiff's requests and he must accept their answers.

**RFAs 82–83:** Plaintiff seeks further admission regarding "female pedestrian civilians" who work in "these facility buildings."

**Response:** Defendants objected on the grounds that tthse two terms are vague and ambiguous, and that without further information, they could not answer the questions as framed.

**Ruling:** Plaintiff's request for further admissions is denied.

Plaintiff's requests are vague as to the terms "female pedestrian civilian" and "these facility buildings." The Court is unable to determine the nature of Plaintiff's request and they are therefore denied as vague.

**RFA 85:** "Admit or nedy that on or prior to March 15, 2008 the 4B yard recreation cages were in plain view of the entire 4B yard facility."

**Response:** Defendants objected that the request was vague as to which recreation modules and then responded that some of the modules rae visible, some are not visible, and that most of the modules are not completely visible.

**Ruling:** Plaintiff's request for further admission is denied. Defendants responded to Plaintiff's requests and he must accept their answers.

**RFA 92:** Plaintiff requests further admission regarding Defendants familiarity with California Penal Code section 5421(b), "designation and compensation of woman to have charge of female prisoners-entry into cell of prisoners and opposite sex."

**Response:** Defendants objected on the grounds that Plaintiff's request is unintelligible and that they could not admit or deny the request because they could not determine what was being asked.

**Ruling:** Plaintiff's request for further admission is denied.

As previously discussed, claims regarding penal code violations were previously dismissed from this action and are not relevant to the claims proceeding.

### B. *Request for Production of Documents*

#### 1. Legal Standard

A party may serve on any other party a request within the scope of Rule 26(b) to produce and permit the requesting party or its representative to inspect, copy, test, or sample

the following items in the responding party's possession, custody or control: any designated documents or tangible things. Fed.R.Civ.P. 34(a)(1) (quotation marks omitted). "Property is deemed within a party's 'possession, custody, or control' if the party has actual possession, custody, or control thereof or the legal right to obtain the property on demand." *Allen v. Woodford,* No. CV–F–05–1104 OWW LJO, 2007 WL 309945, *2 (E.D.Cal. Jan.30, 2007) (citing *In re Bankers Trust Co.,* 61 F.3d 465, 469 (6th Cir.1995)); *accord Bovarie v. Schwarzenegger,* No. 08cv1661 LAB (NLS), 2011 WL 719206, at *4 (S.D.Cal. Feb. 22, 2011); *Evans v. Tilton,* No. 1:07CV01814 DLB PC, 2010 WL 1136216, at *1 (E.D.Cal. Mar.19, 2010).

*6 In responding to discovery requests, a reasonable inquiry must be made, and if no responsive documents or tangible things exist, Fed.R.Civ.P. 26(g)(1), the responding party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence, *Uribe v. McKesson,* No. 08cv1285 DMS (NLS), 2010 WL 892093, at *2–3 (E.D.Cal. Mar. 9, 2010). If responsive documents do exist but the responsive party claims lack of possession, control, or custody, the party must so state with sufficient specificity to allow the Court (1) to conclude that the responses were made after a case-specific evaluation and (2) to evaluate the merit of that response. *Ochotorena v. Adams,* No. 1:05–cv–01525–LJO–DLB (PC), 2010 WL 1035774, at *3–4 (E.D.Cal. Mar. 19, 2010). As with previously discussed forms of discovery, boilerplate objections do not suffice. Fed.R.Civ.P. 34(b)(2)(B), (C); *Burlington N. & Santa Fe Ry. Co.,* 408 F.3d at 1149.

## 2. Set 1

Plaintiff moves to compel Defendants to produce documents responsive to requests 1, 3–8, and 12–15.

**POD 1:** "All documents that refer to allegations of misconduct or other improper conduct by prison staff involving all named defendants, whether such allegations were made by an inmate or by a member of the prison staff, during relevant time period, per Departmental Operations Manual (D.O.M. § 54100.25.5, § 54100.25.6, § 54100.25.7; also pursuant to P.C. 832.5(a); Evidence Code §§ 1043–1046, Fed.R.Civ.P. Rule 34."

**Response:** Defendants objected on the grounds that the request was vague as to what type of misconduct or improper conduct, vague as to relevant time period, overly broad, is irrelevant and not reasonable calculated to lead to the discovery of admissible evidence, unduly burdensome and oppressive because the amount of work required substantially outweights any benefit, and that the request violates California Penal Code of Regulations, title 15, section 3321.

**Ruling:** Plaintiff's motion to compel is granted in part.

Other than the limited exception discussed below, Plaintiff has not demonstrated how this information is relevant. Plaintiff is proceeding on claims for excessive force, in violation of the Eighth Amendment, an unreasonable search, in violation of the Fourth Amendment, and related state law claims. Plaintiff's request is overbroad as to time frame and type of conduct and/or disciplinary action, but notwithstanding those deficiencies, the relevance of Defendants' general conduct and/or disciplinary histories is unclear given the nature of Plaintiff's legal claim. Defendants are ordered to produce documents related to excessive force or unreasonable searches by defendants during the releavant time period of March 1, 2007 to Mach 1, 2009.

**POD 3–4:** Plaintiff requests the "excessive use of force tape conducted by the sergeant" from March 15, 2008 through March 17, 2008 and any videotapes interviews of prisoners that were involved or witnessed the incident.

*7 **Response:** Defendants objected on the grounds that under state law they cannot provide information regarding other inmates to a prisoner. Defendants contend that Plaintiff had an opportunity to view his own extraction video, and that should the matter proceeded to trial, a copy of the video will be available for his use at trial.

**Ruling:** The Court grants Plaintiff's motion to compel, in part.

Plaintiff has not met his burden to show the relevance of other prisoner's extraction videos or prisoner interviews related to other inmates' cell extractions. Defendants are ordered to produce any prisoner video interviews related to witnessing Plaintiff's cell extraction. Plaintiff was able to review his extraction video and should this matter proceed to trial, Defendants must provide Plaintiff with a copy of the video.

**POD 5–6:** Plaintiff requests documents related to CDCR and Corcoran State Prison use of force policy and procedure for the relevant time period of January 2005 through January 2009.

**Response:** Defendants objected on the grounds that the requests are vague as to time and what types of force and on the grounds that the documents are deemed confidential by CDCR because their release would threatened the safety and security of the institution. Without waiving objections, Defendants produced portions of the Caliornia Code of Regulations, title 15, related to security, disorder and emergencies, and operational prodcedure discussing yard recall and the use of force.

**Ruling:** Boiler plate assertions of privilege will not suffice to assert a privilege, however failure to produce a privilege log within the time line required to respond to the request for production does not waive the privilege. *Burlington Northern & Santa Fe Ry. Co.,* 408 F.3d 1142, 1149 (9th Cir.2005). Additionally, the District Court has wide latitude in controlling discovery. *In re State of Arizona,* 528 F.3d 652, 655 (9th Cir.2008); *Burlington Northern,* 408 F.3d at 1147. While Plaintiff argues that the documents requested are clearly not privileged, the Court is mindful of the fact that some of the documents responsive to this request may in fact contain information that, if turned over to an inmate, could seriously jeopardize the safety and security of both inmates and personnel within the institution. Not wanting any untoward consequences to result from procedural ineptitude and, realizing the shared interests that arise since Defendants are CDCR employees, CDCR and Defendants are ordered to work together to locate documents responsive to Plaintiff's request. They shall redact any confidential information. Plaintiff's request is vague and over broad as he fails to specify a relevant time period. Defendants are ordered to produce any responsive documents that were in effect in March 2008.

**POD 7–8:** Plailntiff seeks documents from Plaintiff's 114A1 folder, the isolation segregation record, and 114.A1 folder, the inmate segregation profile.

**\*8 Response:** Defendants objected on the grounds that it was vague as to time, institution, and facility, is overly broad, immaterial to the matters at issue,

and not reasonably calculated to lead to the discovery of admissible evidence. Without waitving objections, Defendants responded that the documents are contained in Plaintiff's central file, which is available for inspection and copying pursuant to institutional policies and procedures.

**Ruling:** These documents appear to be relevant and reasonably calculated to lead to the discovery of admissible evidence. However, Plaintiff's request is overly broad as it goes beyond the time of the alleged deprivations contained in the complaint. Accordingly, the Court will narrow the request. Defendants are ordered to produce any responsive documents, relating to Plaintiff, created from March 1, 2008 to March 31, 2008.

**POD 12–13:** Plaintiff seeks documents and/or photographs that refer or relate to the use of force incident against Plaintiff for the relevant time period of March 15, 2008 through March 17, 2008.

**Response:** Defendants object on the grounds that documents responsive to this request, if they exist, are maintained in Plaintiff's central file and are available to him pursuant to institutional policies and procedures. Defendants also objected on the grounds that information regarding other inmates is prevleged under state law. Without waiving objections, Defendants reiterate that a video of Plaintiff's cell extractin will be made available for Plaintiff to view.

**Ruling:** Plaintiff's request for the production of documents is granted, in part.

As discussed in detail above, Defendants' mere assertion of privledge is not a sufficient objection to Plaintiff's request. Documents and photographs related to the use of force against Plaintiff during the time period of March 15, 2008 to March 17, 2008 are clearly relevant to this action. Defendants are ordered to produce

**POD 14:** Plaintiff requests videotape interivews of prisoners accusing defendants of excessive use of force assault, and/or battery.

**Response:** Defendants objected on the grounds that Plaintiff's request is vague as to what type of force, vague as to time, overly broad, is irrelevant and not reasonable calculated to lead to the discovery of admissible evidence,

unduly burdenson, and violates California Code of Regulations, title 15, section 3321.

**Ruling:** Plaintiff's motion to compel is denied. Videotapes of other prisoners are not relevant to Plaintiff's claims.

**POD 15:** Plaintiff seeks "all recommendation records/ reports by either the Assistant Warden, Warden, or Facility Captain, of all prisoner interviews of excessive uses of force arising from any Defendants' actions, including, but not limited to the 'Report of findings, per to Evidence Codes §§§ 1271, 155.1., 1553, 1562, Fed.R.Civ.P. Rule 34.' "

**Response:** Defendants objected on the grounds that it is vague as to what type of report, what type of force, ast to time, is overly broad, is irrelevant and not reasonable calculated to lead to the discovery of admissible evidence, unduly burdensome and oppressive, and violates California Regulations, title 15, section 3321

**\*9 Ruling:** Plaintiff's motion to compel is granted, in part.

Although Plaintiff's request is overly broad, the Court will narrow Plaintiff's request. Defendants are ordered to produce responsive documents during the relevant time period of March 1, 2007 to March 1, 2009.

### 3. Sets 2 and 3

Plaintiff seeks to compel production of documents to his requests numbers 16–33 and 35–40 from set two. Plaintiff seeks to compel production of documents to his requests numbers 41–63 from set three. Plaintiff states that although Defendants have indicated that the documents requested are not in their possession, custody, or control, they are nonetheless required to obtain the documents and provide them to Plaintiff.

In responding to discovery requests, Defendants must produce documents which are in their "possession, custody or control." Fed.R.Civ.P. 34(a). Actual possession, custody or control is not required, however. "A party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document. *Soto v. City of Concord,* 162 F.R.D. 603, 620 (N.D.Cal.1995). As this Court explained in *Allen v. Woodford,* 2007, U.S.

Dist. LEXIS 11026, \*4–6, 2007 WL 309945, \*2 (E.D.Cal. Jan.30, 2007) (internal citations and quotations omitted):

> Property is deemed within a party's possession, custody, or control if the party has actual possession, custody, or control thereof or the legal right to obtain the property on demand. A party having actual possession of documents must allow discovery even if the documents belong to someone else; legal ownership of the documents is not determinative. Control need not be actual control; courts construe it broadly as the legal right to obtain documents upon demand. Legal right is evaluated in the context of the facts of each case. The determination of control is often fact specific. Central to each case is the relationship between the party and the person or entity having actual possession of the document. The requisite relationship is one where a party can order the person or entity in actual possession of the documents to release them. This position of control is usually the result of statute, affiliation or employment. Control may be established by the existence of a principal—agent relationship.

Here, Defendants attempt to avoid production by contending that they are not in possession, custody or control of the requested documents. The specific facts of this action, however, render such an objection unfounded. By virtue of their employment with non-party CDCR, individual Defendants are represented by the Attorney General's Office. It is this Court's experience that either individual defendants who are employed by CDCR and/or the Attorney General can generally obtain documents, such as the ones at issue here, from CDCR by requesting them. If this is the case, then, based on their relationship with CDCR, they have constructive control over the requested documents and the documents must be produced. *See, eg., Mitchell v. Adams,* 2009 U.S. Dist. LEXIS 24289, \* 24–25, 2009 WL 674348, \*9 (E.D.Cal.

Arroyo v. Adams, Not Reported in F.Supp.3d (2014)

2014 WL 109494

Mar.6, 2009) (even though defendant warden was sued in his individual capacity, he had constructive control over requested documents because he had authority to obtain the requested documents from third party CDCR); *see also Gray v. Faulkner,* 148 F.R.D. 220, 223–224 (N.D.Ind.1992) (requiring certification that responding party "have conducted a search for the information reasonably available to them through their agents, attorneys, or others subject to their control and have determined that the information requested either does not exist or that it has been produced.")

**\*10** If Defendant chooses to stand on this objection, he must provide factual support for the assertion that, in spite of his relationship to CDCR, he does not have possession, custody or control of the requested documents. Defendant should also be mindful of the fact that he will be precluded from using the requested documents, or any documents of this kind, as evidence in support of summary judgment, in opposition to any of Plaintiff's positions, and in any way during trial. Fed.R.Civ.P. 37(c)(1). Should Defendant stand on this objection and subsequently seek to use the requested documents or like documents, he must, at minimum, supplement his responses, and explain the method by which he obtained the documents. Most importantly, he will also be required to demonstrate that the prior objection was taken in good faith given that he now has and seeks to use the requested documents. Fed.R.Civ.P. 26(e)(1).

Accordingly, the Court GRANTS Plaintiff's motion to compel production of documents to Sets two and three. Defendants are ordered to provide either the documents requested or further responses withi ng thirty (30) days from the date of service of this order.

**VI. SANCTIONS**

Plaintiff seeks sanctions for his motions to compel under Federal Rule of Civil Procedure 37. Rule 37(a)(4) permits plaintiff to seek an award of reasonable expenses incurred in filing his motion, if his motion is granted in whole or in part, or if the discovery sought is served after the motion is filed. Fed.R.Civ.P. 37(a) (4). The court may decline to award such expenses where the movant failed to make a good faith effort to resolve the dispute without court intervention, where the opposing party's position was substantially justified, or where other circumstances make the award unjust. *Id.* Rule 37(d) permits plaintiff to seek sanctions for the complete failure to respond

to interrogatories and requests for the production of documents. Fed.R.Civ.P. 37(d). Such a motion must be accompanied by a certification that the movant made a good faith effort to resolve the dispute without court intervention. *Id.*

With respect to Rule 37(a)(4), plaintiff's motion to compel was granted in part but it was also denied in part. As a result, and given that plaintiff is proceeding pro se, the expenses incurred by defendants in opposing the motion undoubtably outweigh the expenses incurred by plaintiff in filing the motions to compel. Accordingly, the Court denies Plaintiff's motions for sanctions.

**V. CONCLUSION AND ORDER**

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's motion to compel further responses to requests for admissions, filed March 1, 2013, is granted in part and denied in part as follows:

a. Plaintiff's RFAs 8, 9, 42–44, 46–48, and 73–74, Set 1, are granted;

b. Plaintiff's RFAs 13, 28–40, 49–54, 77–81, 82–83, 85, and 92 are DENIED;

c. Defendants shall respond further to the RFAs withi ht thirty (30) days from the date of service of this order;

**\*11** 2. Plaintiff's motion to compel production of documents, Set 1, is granted in part, subject to the Court's narrowing of Plaintiff's requests above, and denied in part as follows,:

a. Plaintiff's PODs 1, 3–4, 5–6, 7–8, 12–13, and 15 are GRANTED;

b. Plaintiff's POD 14, is DENIED;

c. Defendants are ordered to provide either the documents requested or further responses withi ng thirty (30) days from the date of service of this order;

3. Plailntiff's motions to compel production of documents, Sets 2 and 3, are GRANTED. Defendants are ordered to provide either the documents requested or further responses withi ng thirty (30) days from the date of service of this order;

Arroyo v. Adams, Not Reported in F.Supp.3d (2014)

2014 WL 109494

4. Plaintiff's motions for sanctions under Federal Rule of Civil Procedure 37 is DENIED;

5. Defendants are ordered to oppose Plaintiff's motion to compel further responses to Plaintiff's request for admissions, Set 2 (ECF No. 36), within twenty-one (21) days from the date of service of this order;

6. Plaintiff's motion to stay the summary judgment proceeding, filed September 30, 2013, is GRANTED.

Defendant's motion for summary judgment is stayed pending the resolution of discovery matters; and

7. Defendants' motion to supplement their motion for summary judgment, filed October 10, 2013, is GRANTED.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 109494

Footnotes

1    Contrary to the Court's previous order, Defendants failed to oppose Plaintiff's motion for further responses to Plaintiff's RFAs, Set 2, filed on March 28, 2013. (ECF No. 36.) As such, the Court will not address this motion and will order Defendants to oppose the motion.

End of Document        © 2018 Thomson Reuters. No claim to original U.S. Government Works.

National Union Fire Insurance Company of Pittsburgh v...., Not Reported in Fed....
2013 WL 12155269

2013 WL 12155269
Only the Westlaw citation is currently available.
United States District Court, D. Minnesota.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, and American
Home Assurance Company, Plaintiffs,

v.

DONALDSON COMPANY, INC., and
Federal Insurance Company, Defendants.

Civil No. 10–4948 JRT/AJB
|
Signed 10/01/2013

**Attorneys and Law Firms**

Cody S. Moon, Kelly L. Stoltz, Pro Hac Vice, Matthew J. Fink, Pro Hac Vice, Nicolaides Fink Thorpe Michaelides Sullivan LLP, Chicago, IL, Nicholas H. Jakobe, Patrick D. Reilly, Erstad & Riemer, P.A., Minneapolis, MN, for Plaintiffs.

David J. F. Gross, Matthew B. Kilby, Rikke A. Dierssen-Morice, Faegre Baker Daniels LLP, Gary J. Haugen, Leora Itman, Margaret S. Brownell, Maslon LLP, Sarah E. Bushnell, Lindsay G. Arthur, Jr., Arthur, Chapman, Kettering, Smetak & Pikala, PA, Minneapolis, MN, Daniel J. Cunningham, Pro Hac Vice, Tressler LLP, Chicago, IL, for Defendants.

## ORDER ON MOTION TO COMPEL
## DISCOVERY BY FEDERAL INSURANCE

Arthur J. Boylan, United States Chief Magistrate Judge

*1 This matter is before the court, Chief Magistrate Judge Arthur J. Boylan, on defendant Federal Insurance Company's ("Federal") Motion to Compel [Docket No. 216]. Hearing was held on August 28, 2013, at the U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415. Federal moves for an order compelling co-defendant Donaldson Company, Inc. ("Donaldson") and plaintiff National Union Fire Insurance Co. ("National Union") to provide individualized responses to requests for admissions concerning notice of insurance claims involving 54 separate vehicles, and to provide responses to interrogatories and document requests

relating to admissions that are denied. Donaldson and National Union oppose the motion, asserting that the admissions requests have been admitted or denied by the respective parties as appropriate and no further response should be required. Lindsay G. Arthur, Esq., appeared on behalf of defendant Federal; Rikke A. Dierssen-Morice, Esq., and Margaret S. Brownell, Esq., appeared on behalf of defendant Donaldson; and Kelly L. Stoltz, Esq., appeared on behalf of plaintiff National Union.

Based upon the file, memorandums, affidavits, and arguments of counsel, **IT IS HEREBY ORDERED** that defendant Federal Insurance Company's Motion to Compel [Docket No. 216] is **denied**.

### MEMORANDUM

Defendant Federal has served a separate Request for Admission regarding each of 54 different trucks as to which insurance claims and alleged damages are at issue in this case. Each admission request includes the appropriate vehicle identification and asks that the responding party "[a]dmit that, with respect to the truck identified in Exhibit D by serial number ..., [the responding party] first received notice of a claim for this specific truck ..." Each Request for Admission has a corresponding Interrogatory and Request for Production of Documents, therein seeking information to support any position other than an unqualified admission, specifically, the actual date that the responding party believes notice of a claim was first received as to a particular truck, along with witnesses and documents to support the belief. In argument in support of the motion to compel, Federal asserts that it is merely seeking admissions or responses regarding receipt of the 'first notice of injury' with respect to each truck and seeks to apply a particular date as the date on which either Donaldson or National Union first received such notice.

Meanwhile, the responding parties contend that there is an important and legally significant distinction between the first notice of injury, i.e. the date on which it was first learned that a particular truck had suffered damage, and first notice of a claim which could have legally operative significance to issues in this case. Donaldson and National Union both denied each of the admissions requests on grounds that the requests contained terms that were vague, ambiguous, or insufficiently defined as to the meaning of 'first notice of claim.' Further explanations

EXHIBIT
M

National Union Fire Insurance Company of Pittsburgh v...., Not Reported in Fed....

2013 WL 12155269

for discovery responses were provided which Federal contends are unresponsive.

**\*2**  It is the court's conclusion that Donaldson's and National Union's objections to the admissions requests seeking dates of first notice of a claim are appropriate and the admissions were therefore properly denied. The operative term, 'notice of first claim,' is not adequately defined so as to establish or preclude critical legal and/or factual implications. In light of such ambiguity in terminology, Federal has not established that the respective responses to the interrogatories and document requests are inadequate.

Admissions requests are not properly used as a means to establish facts that are in dispute or answer questions of law. Lakehead Pipe Line Co., Inc. v. Am. Home Assurance Co., 177 F.R.D. 454, 458 (D. Minn. 1997) (citations omitted). Rather, the purpose of requests for admissions under Fed. R. Civ. P. 36(a) is to "expedite trial by eliminating the necessity of proving undisputed and peripheral issues." Id. (quoting Kosta v. Connolly, 709 F.Supp. 592, 594 (E.D. Pa. 1959). Moreover, admissions requests are not a discovery device and the court is not authorized to determine the accuracy of a denial to an admissions request or to determine the sufficiency of responses provided to corresponding interrogatories and document requests. Id. In this instance the court is persuaded that Federal is inappropriately attempting to compel the responding parties to adopt Federal's position on disputed operative facts and thereby ratify the legal conclusions that Federal attaches to those facts. Lakehead Pipe Line Co., Inc. at 458. Federal's effort to re-characterize the admissions requests as seeking 'notice of injury' is unavailing and the motion to compel is denied.

**All Citations**

Not Reported in Fed. Supp., 2013 WL 12155269

---

End of Document
© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 13135650
Only the Westlaw citation is currently available.
United States District Court,
D. Minnesota.

Great Lakes Gas Transmission Limited
Partnership, Plaintiff and Counterclaim Defendant,

v.

Essar Steel Minnesota, LLC; Essar Steel
Holdings, Ltd.; Essar Steel Limited;
Essar Global Limited; Defendants,

v.

Essar Steel Minnesota, LLC,
Counterclaimant, and Third–party Plaintiff,

v.

TC GL Intermediate Limited Partnership; Tc
Pipelines, LP; Tc Pipelines Gp, Inc.; Transcan
Northern, Ltd.; Transcanada Pipeline USA,
Ltd.; Transcanada Pipelines Ltd.; Transcanada
Corporation; Great Lakes Gas Transmission Co.;
and Transcanada Gl, Inc. Third–Party Defendants.

Civil No. 09–3037 (SRN/LIB)
|
Signed 03/03/2011

**Attorneys and Law Firms**

Barbara L. Wohlrabe, Brian A. Farlow, Hayley Ellison, Worthy W. Walker, Elrod PLLC, David W. Elrod, Gruber Hurst Elrod Johansen Hail Shank, Dallas, TX, Cooper S. Ashley, David T. Schultz, Julian C. Zebot, Maslon LLP, MPLS, MN, for Plaintiff and Counterclaim Defendant.

Douglas H. Flaum, Kevin P. Broughel, Shahzeb Lari, Paul Hastings LLP, New York, NY, Lousene M. Hoppe, Nicole M. Moen, Fredrikson & Byron, PA, MPLS, MN, Ryan Stutzman, Thomas R. Thibodeau, David M. Johnson, Thibodeau, Johnson and Feriancek PLLP, Duluth, MN, for Defendants, Counterclaimant, and Third–party Plaintiff.

**ORDER**

Leo. I. Brisbois, U.S. MAGISTRATE JUDGE

**\*1** The above matter came before the undersigned United States Magistrate Judge upon the Motion for a Protective Order of Plaintiff and Counterclaim Defendant Great Lakes Gas Transmission Limited Partnership and Third Party Defendants TC GL Intermediate Limited Partnership, TC Pipelines, LP, TC Pipelines GP, Inc., TransCan Northern, Ltd., TransCanada Pipeline USA, Ltd., TransCanada Pipelines Ltd., TransCanada Corporation, Great Lakes Gas Transmission Co., and TransCanada GL, Inc. (Dkt. 215); [1] and the Motion to Compel of Plaintiff. (Dkt. 222). A hearing on the Motions was conducted on January 21, 2011, in St. Paul, Minnesota.

**I. INTRODUCTION**

The parties are presently engaged in what was supposed to be limited jurisdictional discovery that was authorized by previous Court orders. (See Dkts. 76, 86, 109, 127 and 186). As pertinent here, the foreign Essar Defendants argue that the Court lacks personal jurisdiction over them; Great Lakes maintains that the foreign Essar Defendants are subject to the Court's jurisdiction either because of their own contacts with Minnesota, or because ESML's contacts with Minnesota should be attributed to the foreign Essar Defendants under a veil piercing, agency, or joint venture theory. Likewise, the Third–Party Defendants have also argued that the Court lacks personal jurisdiction over them. Lastly, the Essar Defendants contend that diversity jurisdiction does not exist because the corporate separateness of the various TransCanada entities should be disregarded. In the present motions, the parties raise several issues regarding the scope of the current jurisdictional discovery and the adequacy of the opposing parties' responses.

Great Lakes served its First Document Requests on each of the Essar Defendants on June 18, 2010. The Essar Defendants served their written responses on July 30, 2010. Thereafter, on August 11, 2010, Great Lakes served its Second Document Requests and First Interrogatories. The Essar Defendants served their responses to the Second Document Requests on October 19, 2010, and their responses to the First Interrogatories on November 5, 2010. By November 15, 2010, the Essar Defendants had produced nearly 39,000 documents, and by December 22, 2010, they had produced nearly 88,000 documents. However, in some respects, their production is apparently ongoing.

**EXHIBIT**
N

## II. STANDARD OF REVIEW

*2 Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Rule 26 "is widely recognized as a discovery rule which is liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence." Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8 th Cir. 1992). The party seeking discovery must satisfy some threshold showing of relevancy before discovery is required. Id. Once that threshold has been met, the resisting party "must show specifically how ... each interrogatory [or request for production] is not relevant or how [the discovery] is overly broad, burdensome or oppressive." St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp., 198 F.R.D. 508, 512 (N.D. Iowa 2000)[citation omitted].

Here, relevancy is determined by the jurisdictional issues that were raised by the parties, and with respect to Great Lakes' discovery, one of the primary issues is whether the corporate separateness of the Essar Defendants should be disregarded. A court may pierce the corporate veil for jurisdictional purposes "where the parent so controlled and dominated the activities of its resident subsidiary that the latter's separate corporate existence was in effect disregarded." Bielicki v. Empire Stevedoring Co., Ltd., 741 F. Supp. 758, 761 (D. Minn. 1990), citing Lakota Girl Scout Council, Inc. v. Havy Fundraising Management, Inc., 519 F.2d 634, 637 (8th Cir. 1975). Courts consider a number of factors in determining whether to pierce the corporate veil for jurisdictional purposes:

1) whether the parent corporation owns all or most of the capital stock of the subsidiary;

2) whether the parent and subsidiary corporations have common directors and officers;

3) whether the parent corporation finances the subsidiary;

4) whether the parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation;

5) whether the subsidiary has grossly inadequate capital;

6) whether the parent corporation pays the salaries and other expenses or losses of the subsidiary;

7) whether the subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation;

8) whether in the papers of the parent corporation or in the statement of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own;

9) whether the parent corporation uses the property of the subsidiary as its own;

10) whether the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest; and

11) whether the formal legal requirements of the subsidiary are not observed.

Bielicki, 741 F.Supp. at 761–62. In addition, an agent's contacts with the forum may be imputed to a party where they were engaged in a joint venture or were agents of each other, which requires a showing that the party had the ability to control the actions of the agent. Curry v. McIntosh, 389 N.W.2d 224, 228 (Minn. App. 1986), rev. denied, (Aug. 20, 1986).

With respect to the form of discovery motions, Local Rules require that "[i]n the case of motions involving interrogatories, document requests or requests for admissions, the moving party's memorandum shall set forth only the particular interrogatories, document requests or requests for admissions which are the subject of the motion, the response thereto, and a concise recitation of why the response or objection is improper." D. Minn. L.R. 37.2. Moreover, the Court advised the parties that their motions would be summarily denied absent "**strict** compliance with local Rule 37.2 and 7.1." (Dkt. 205, at p. 3). The Court further advised the parties that their briefing must be "succinct, specific and concise, devoid of hyperbole and inflammatory rhetoric, and supported by citations to no more than the three most apposite authorities." (Id.) The Court proceeds to a consideration of the specific discovery issues with this in mind.

CASE 0:16-cv-01054-DTS   Doc. 164-1   Filed 11/20/18   Page 52 of 69

Great Lakes Gas Transmission Limited Partnership v...., Not Reported in...

2011 WL 13135650

## III. DISCUSSION

### A. Great Lakes' Motion to Compel [2]

**\*3** As an initial matter, throughout their response in opposition, the Essar Defendants have argued that the motion to compel should be denied because they **intend** to produce the responsive documents, even though they had not yet produced them. The Court does not find the fact that the Essar Defendants **intend** to produce the documents to be a valid basis for denying the motion. Significantly, all of the discovery at issue was served by early August – some five months ago. Accordingly, if the responsive documents or responses have not been produced, Great Lakes is entitled to an order compelling the production of the documents forthwith and in no event any later than 30 days from the date of this Order.

In addition, the Court notes that the Essar Defendants have represented that they have produced the responsive materials with respect to many of the discovery requests raised by Great Lakes' motion. To the extent that Great Lakes nevertheless asserts that the Essar Defendants' production is deficient, the Court cannot accept such assertions without a demonstration that the production is inadequate. "[O]f necessity, the Court must accept, at face value, a party's representation that it has fully produced all materials that are responsive to a specific discovery request." Lumber v. PPG Industries, Inc., 168 F.R.D. 641, 643 n. 1 (D. Minn. 1996). However, the Essar Defendants are specifically forewarned that "the failure to produce evidence ... bears a close relationship to the 'spoliation of evidence,' and [will] be sanctioned accordingly." Id., citing Sylla–Sawdon v. Uniroyal Goodrich Tire Company, 47 F.3d 277, 280 (8th Cir.), cert. denied, 516 U.S. 822 (1995). To the extent that the Essar Defendants' response to any particular interrogatory or request for documents may be that the Essar Defendants have searched for responsive information or documents, and that all the responsive information or documents have been produced or that they could not locate any responsive documents, then the Essar Defendants' formal discovery response shall state as much. It is not sufficient for the Essar Defendants to make such representations informally in conversation with opposing counsel or in general correspondence.

Documents related to business conducted outside of the United States. In its Memorandum, Great Lakes points out that the Essar Defendants have objected to producing documents showing transactions or interactions between the foreign Essar Defendants which relate to their business conducted outside of the United States. (Pl.'s Memo. in Supp., at pp. 6–7). It is unclear whether Great Lakes is attempting to compel the Essar Defendants to produce documents that relate to business occurring outside of the United States with this reference. [3]

To the extent that Great Lakes is attempting to compel production of any documents beyond those related to the Minnesota project or the contract at issue in the present dispute, the Court finds that the motion must be denied. First, Great Lakes has failed to comply with Local Rule 37.2. All Great Lakes has stated is that the Essar Defendants refuse to produce documents related to business conducted outside of the United States, but it has not stated **why** the Essar Defendants' objection is invalid or why they should be compelled to produce these documents. Significantly, at the November 19, 2010 status conference, the Court advised the parties that they had not done enough preliminary work on refining this very issue, and accordingly, that the Court would not decide the issue at that time. (Dkt. 203, at p. 55). Great Lakes has done nothing more than point out what the Court was already aware of at the November 19th status conference. Consequently, the Court finds that Great Lakes has failed to comply with Local Rule 37.2, and the Court's directives from the November 19th status conference and contained in the December 15 Order, and therefore, the motion is summarily denied as to this issue. [4]

**\*4** First Request for Production No. 2: Contracts and Agreements. In this request, Great Lakes seeks the production of documents reflecting all of ESML's contractual and financial undertakings since it acquired Minnesota Steel Industries ("MSI"). (Pl.'s Memo. in Supp., at p. 10). In particular, Great Lakes seeks the production of agreements between ESML and Essar Constructions India Ltd.; agreements between ESML and Export Credit Guarantee Corp.; agreements between ESML and Essar Americas; and the sublease agreement underlying the sublease guaranty ESML entered into on April 27, 2010 for the benefit of Essar Steel Algoma, Inc. U.S.A. (Id.) According to Great Lakes, the Essar Defendants have represented that they intend to produce the responsive agreements with respect to Essar Constructions India Ltd., Export Credit Guarantee Corp, and Essar Americas—to the extent the documents exist. (Id.) At the time the present motion was filed and heard,

the Essar Defendants had not yet produced the responsive documents, and it was not clear when the production would be made. To the extent that the documents have not yet been produced, the Essar Defendants are directed to produce the documents.

Great Lakes argues that the Essar Defendants refuse to produce the sublease agreement that underlies the sublease guaranty that ESML entered into for the benefit of Essar Steel Algoma, Inc. USA. The sublease guaranty has been produced, but the underlying sublease agreement has not been produced, and Great Lakes argues that without the underlying agreement, it is unable to determine the terms of ESML's obligations under the guaranty. Notwithstanding Great Lakes' representations to the contrary, the Essar Defendants do not object to the production of the sublease agreement as they stated in their Memorandum that they "will endeavor to locate and produce the underlying sublease agreement to Great Lakes." (Def.'s Memo. in Opp., at p. 11). As the Essar Defendants do not object to the relevancy of the agreement, the Essar Defendants are also directed to produce the sublease agreement. [5]

First Request for Production No. 3: Directives or Supervision. Here, Great Lakes seeks documents reflecting the foreign Essar Defendants' supervision of the operation and policies of ESML or the other Foreign Essar Entities. (Pl.'s Memo. in Supp., at p. 11). There are five separate subparts to this request, and the Court will address them separately.

### 1. Items (a) and (b).

In Item (a), Great Lakes requests negotiations and directives related to agreements entered into by ESML with the foreign Essar entities. Great Lakes asserts that the documents have not been produced. In their Memorandum, the Essar Defendants state that they have produced the responsive documents, and that they will make an appropriate supplemental production if additional responsive documents are located. (Def.'s Memo. in Opp., at p. 11).

With respect to Item (b), which requests negotiations and directives related to the sublease guaranty entered into by ESML for the benefit of Essar Steel Algoma, Inc. USA., the Essar Defendants represent that they

"have not located any documents responsive to this particular request." (Id.) They represent that they will supplement their production if responsive documents are located, and that they "will complete an appropriate certification that they searched for, but located no responsive documents." (Id.)

**\*5** Great Lakes has not identified any specific responsive documents that exist and have not yet been produced, and the Essar Defendants have indicated that they have produced all of the responsive documents. Accordingly, the Court denies the motion as to Items (a) and (b). [6]

### 2. Item (c).

Item (c) requests documents reflecting negotiations and directives related to the acquisition of MSI, including communications between the Essar Defendants. At the time their responsive memorandum was filed, the Essar Defendants were reviewing email communications received by Messrs. Jahoorkar and Saxena [7] for potentially responsive documents, and they represented that they would subsequently produce any responsive, non-privileged documents. Assuming that the Essar Defendants have stated in their formal discovery response that they have completed their review and have produced all responsive documents, the motion will be denied as to Item (c). However, if by the date of this Order, the Essar Defendants have not yet made such a formal answer/ response or produced any responsive documents located in the interim, the Essar Defendants are directed to so.

### 3. Item (d).

In Item (d), Great Lakes requests communications concerning the decision-making process related to de-listing Essar Steel Ltd. The Essar Defendants represent that they "have produced documents related to the de-listing of Essar Steel Limited" in both their initial production and the supplemental production that was made on December 22, 2010. (Def.'s Memo. in Opp., at p. 12). They also represent that they will supplement their production if any additional responsive documents are located. Great Lakes has not identified a specific deficiency in the response, and therefore, the motion is denied as to Item (d).

Great Lakes Gas Transmission Limited Partnership v...., Not Reported in...

2011 WL 13135050

#### 4. Item (e).

Here, Great Lakes requests from the foreign Essar Defendants any documents which relate to ESML, the Nashwauk project, and any other business conducted in the United States. The Essar Defendants represent they "have produced tens of thousands of pages of documents responsive to this request" and that they have attempted to locate responsive documents in good faith. (Def.'s Memo. in Opp., at pp. 12–13). They also indicate that they will supplement their response if additional responsive documents are located. Great Lakes has not identified a specific deficiency in the response, and accordingly, the Court denies Great Lakes' motion as to Item (e).

First Request for Production Nos. 4, 18 and 19: Corporate Records. Here, Great Lakes seeks an order compelling the complete production for the past 4 years of all meeting minutes and resolutions for officer/director meetings, financial statements, and annual reports for all of the Essar Defendants. (Pl.'s Memo in Supp., at pp. 11-12). Although the Essar Defendants have apparently produced some of the documents, Great Lakes still believes that their production of corporate records is not complete. The Essar Defendants represent that they have located additional responsive documents, which would be subsequently produced. (Def.'s Memo. in Opp., at p. 13). If the Essar Defendants' have not yet made production of this supplementation, the Court grants Great Lakes' motion as to Request for Production Nos. 4, 18, and 19.

**\*6** First Request for Production No. 6: Communications Regarding the Acquisition of MSI. In this request, Great Lakes requests the production of documents reflecting the negotiations for the acquisition of MSI, including any communications with MSI. (Pl.'s Memo. in Supp., at p. 12). Great Lakes asserts that no documents have been produced showing negotiations for the acquisition of MSI. The Essar Defendants claim that they have produced documents related to the acquisition of MSI, and refer Great Lakes to Bates Numbers Def.–0037830–38554 and Def.–0009530–16669. (Def.'s Memo. in Opp., at p. 14). They also indicate that they have located additional responsive documents, which would be produced, along with a privilege log detailing those documents for which they are asserting a claim of privilege. If the Essar Defendants have not yet made production of those

supplemental documents and a properly detailed privilege log, the Court grants Great Lakes' motion as to Request for Production No. 6.

First Request for Production No. 8: Corporate Officers and Directors. Here, Great Lakes requests a listing of all of the officers and directors for each of the Essar Defendants for the last 4 years. (Pl.'s Memo. in Supp., at p. 13). Great Lakes claims that they have only received partial listings, and that the documents produced by the Essar Defendants thus far do not provide enough information to establish the officers and directors for each of the Defendants for the past 4 years. (Id.) Great Lakes has not precisely identified for which entities and years they do not have sufficient information. The Essar Defendants claim that they have produced documents and answered interrogatories reflecting their corporate officers and directors. (See, e.g., Supalla Aff., ¶ 7, Exh. E; Wohlrabe Aff. ¶ 2, Exs. E–1 through E–4). However, the Essar Defendants also indicate that they had recently identified additional responsive documents which would be subsequently produced.

Here, the Court is unable to fully discern from Great Lakes' submissions and the Essar Defendants' Reply whether the Essar Defendants have in fact produced documents that adequately reflect the corporate officers and directors of all of the Essar Defendants for each year in question. Accordingly, the Essar Defendants shall produce sufficient documents to reflect officers and directors for all of the Essar Defendants for all of the applicable years, to the extent they have not already done so.

First Request for Production No. 15 and 8: Documents Related to the New York Office Space. Here, Great Lakes requests documents showing the agreements or understandings concerning each of the Essar Defendants' use of the New York office; their use of the personal property or equipment located therein; and the sharing of any employees therein. Great Lakes contends that none of the requested documents have been produced. (Pl.'s Memo. in Support., at p. 13). The Essar Defendants claim that they "have reviewed tens of thousands of documents and have not uncovered any documents responsive to this request." (Def.'s Memo. in Opp., at p. 15). The Essar Defendants further represent that they are reviewing email communications sent and received by Messrs. Jahoorkar and Saxena for responsive documents.[8] If any responsive

documents were located as a result of that review, the Essar Defendants shall produce them, and if the Essar Defendants do not locate any responsive documents, their formal discovery answer/response hereto should so indicate that they searched for and did not find responsive documents.

First Request for Production No. 1, 6 and 12: Documents Evidencing Financial Arrangements. Great Lakes requests all guaranty agreements, letters of credit, and security agreements entered into by a foreign Essar entity, and which guarantee or secure the performance of ESML or secure the performance of an Essar entity for the benefit ESML. Great Lakes asserts that Essar Defendants have only produced documents reflecting the guarantees provided by Essar Global in connection with the business subsidy from the State of Minnesota, and a letter of credit provided by Essar Holdings to the State of Minnesota. Great Lakes asserts that no other responsive documents have been produced. For their part, the Essar Defendants claim that they have reviewed "tens of thousands of documents and have not uncovered any additional documents responsive to this request." (Def.'s Memo. in Opp., at p. 16). The Essar Defendants further indicate that they were conducting an additional review of emails sent and received by Messrs. Jahoorkar and Saxena, and that they would produce any additional responsive documents. If any responsive documents were located as a result of that review, the Essar Defendants shall produce them, and if the Essar Defendants do not locate any responsive documents, their formal discovery answer/response hereto should so indicate that they searched for and did not find responsive documents.

*7  Waiver of Objections: Second Document Requests and First Interrogatories. Great Lakes argues that the Essar Defendants' objections to its Second Request for the Production of Documents and its First Interrogatories were untimely, and therefore, that they have waived their objections to these discovery requests. (Pl.'s Memo. in Supp., at pp. 19–20).

Great Lakes served its Second Request for the Production of Documents and its First Interrogatories on the Essar Defendants on August 11, 2010. (See Wohlrabe Aff., Exhs. C–1 through C–4; Exhs. D–1 through D–4). The Essar Defendants served their responses to Great Lakes' Second Document Requests on October 19, 2010,

and they served their responses to Great Lakes' First Interrogatories on November 5, 2010. Accordingly, the Essar Defendants did not respond within 30 days, and their responses are therefore untimely. See Fed. R. Civ. P. 33 and 34.

The Court will not however deem the Essar Defendants' objections waived. The Court already addressed the issue of waiver in its October 27, 2010 Order on Great Lakes' motion to compel. (See Dkt. 190, at pp. 4–6). At that time, Great Lakes challenged the timeliness of the Essar Defendants' response to Great Lakes' First Document Requests. Great Lakes did not challenge the timeliness of the Essar Defendants' responses to Great Lakes' Second Document Requests or the First Interrogatories at that time, even though the Essar Defendants' responses were already overdue when Great Lakes filed that motion. Great Lakes could have **and should have** raised the issue either in their earlier motion papers, or at the very least during the hearing on the motion. As such, the Court declines to address the same issue again; by failing to raise it earlier, the Court finds that the issue itself has been waived by Great Lakes.

Second Request for Production Nos. 9, 10, 11, and 12: Documents Related to Schankar Gopalkrishnan. Here, Great Lakes requests documents that relate to Gopalkrishnan's involvement, direction, supervision and management of ESML and the Nashwauk facility, including the decision to involve him in the supervision or management of the facility. In particular, Great Lakes asserts that the Essar Defendants have not produced Gopalkrishnan's email communications leading up to his involvement with the ESML Nashwauk facility; documents reflecting his role or position with the Essar Defendants prior to his work in Minnesota; and his employment file or employment records showing who he worked for and what his job responsibilities were. (Pl.'s Memo. in Supp., at pp. 14–15).

As pertinent here, at the November 19, 2010 status conference, the Court previously directed the Essar Defendants to produce information related to Gopalkrishnan, including communications related to ESML and the Nashwauk facility. (See, Transcript, Dkt. 203, at pp. 38–39). The Essar Defendants produced the responsive documents on December 22, 2010, but Great Lakes did not have a chance to thoroughly review those documents prior to filing its motion. The Essar

Great Lakes Gas Transmission Limited Partnership v...., Not Reported in...

2011 WL 13135650

Defendants oppose the motion, arguing that it should be denied because Great Lakes had not yet reviewed the Essar Defendants' latest production and therefore had not articulated what should be compelled.

The Court finds that a motion to compel in this instance is warranted. Great Lakes has articulated what it is seeking to compel—namely, Gopalkrishnan's employment records and his communications regarding the Nashwauk facility—and the Court **already directed** the Essar Defendants to **fully** produce this information, as noted above. Significantly, the Essar Defendants do not state that they have already fully produced all responsive documents or even that they intend to produce the responsive documents. Indeed, if the Essar Defendants had produced all responsive documents, they probably would have stated as much in their Memorandum in opposition to the motion, as they did with other discovery requests Great Lakes has raised in its motion. As such, it seems likely that the Essar Defendants probably have not yet produced all of the responsive documents by way of their latest production. In addition, Great Lakes represents that their initial review suggests that the documents related to which Essar entity Gopalkrishnan worked for **have still not been produced**. Since the Court has already directed the Essar Defendants to produce documents related to Gopalkrishnan's communications regarding the Nashwauk facility, and his employment records, they have no excuse for not producing the responsive documents. The fact that Great Lakes did not have a chance to preliminarily review all of the Essar Defendants' disclosed documents prior to filing its motion to compel is of no import. Accordingly, this portion of Great Lakes' motion is granted.

**\*8** Second Request for Production No. 13: Correspondence "On the Merits": Great Lakes seeks communications to and from a list of 10 individuals pertaining to ESML and the Nashwauk facility, including the acquisition of MSI, delays in construction of the facility, the TSA, letters of credit, "any interconnect or lateral," [9] financial matters, actual or potential funding of the facility, the FERC proceeding, the economy, and steel demand or prices. (Pl.'s Memo. in Supp., at p. 15).

As pertinent here, at the November 19, 2010 status conference, the Court determined that merits discovery would be stayed pending resolution of the jurisdictional issues. (Transcript, Dkt. 203, at pp. 7–8). Accordingly, the

Essar Defendants have objected to the following topics identified in Great Lakes' Second Request for Production No. 13 on the grounds that they relate to the merits of the contract dispute between the parties: 1) delays in construction of the facility; 2) the TSA; 3) letter of credit; 4) any "interconnect or lateral"; 5) financial matters; 6) actual or potential funding for the facility; 7) the FERC proceeding; 8) the economy; 9) steel demand or prices. (Def.'s Memo. in Opp., at pp. 18–19). In other words, the Essar Defendants object to producing all of the requested communications except for those pertaining to the acquisition of MSI. The Essar Defendants claim that they have produced the responsive communications that are limited to the jurisdictional issues, and that they will subsequently produce any additional communications falling within this category.

As an initial matter, the Court finds that communications regarding financial matters and actual or potential funding **are relevant** to the jurisdictional issues on their face, even if they may also be relevant to the merits. Accordingly, the Court overrules the Essar Defendants' objections as to these topics.

The Court notes that the Essar Defendants also state that they are not obligated to produce documents related to financial matters or the funding of the facility, pursuant to Chief Magistrate Judge Erickson's May 5, 2010 Order granting jurisdictional discovery. (Def.'s Memo. in Opp., at p. 19 n. 8). First, the Court finds unpersuasive the Essar Defendants' argument that Magistrate Judge Erickson's Order relieved them from producing documents regarding the financial matters or actual or potential funding of the facility. Specifically, Magistrate Judge Erickson found only that the Essar Defendants' relationship with Essar Steel Algoma, Inc., is not relevant. (See Dkt. 76 at p. 37–38). This clearly does not relieve them from producing communications regarding financial matters of ESML or the facility or the funding of the facility, and although the Essar Defendants claim that the request is duplicative, they have not established that they have actually as yet produced any responsive documents. As such, to the extent that the request asks for financial matters and actual or potential funding, the Essar Defendants must produce responsive documents if they have not already done so.

The Court agrees that the remainder of the topics identified in Great Lakes' Second Request for Production

No. 13 are not related to the jurisdictional issues, but rather, these topics relate to the merits of the contractual dispute between the parties. As noted, the Court has already determined that the parties should not engage in discovery which goes only to the merits at this time, and it is therefore incumbent upon the parties to establish the relevancy of a particular discovery request where it is not apparent on its face. See Moses v. Halstead, 236 F.R.D. 667, 671 (D. Kan. 2006)("when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request"). The Court is not aware of how delays in construction of the facility; letter of credit; the TSA; any "interconnect or lateral"; the FERC proceeding; the economy; or steel demand or prices would have any bearing on the jurisdictional issues raised by the parties. The Court concludes that the relevancy is not apparent on the face of the request, and therefore, Great Lakes has failed to meet its burden. Accordingly, the Court will not compel the Essar Defendants to respond to the discovery request on these topics.

**\*9** In sum, Great Lakes' motion to compel as to Second Request for Production No. 13 is granted in part and denied in part as described above.

First Interrogatories Nos. 1–3: Inquiries Regarding Mr. Gopalkrishnan. In Interrogatory Nos. 1–3, Great Lakes has asked the Essar Defendants to "[c]onfirm whether Shankar Gopalkrishnan was a representative of any of the defendants in this action other than you as of August 2008"; to "[i]dentify the defendants for whom Gopalkrishnan was a representative and briefly describe his responsibilities or duties"; and to provide contact information for Gopalkrishnan if he is no longer employed by any of the Essar Defendants. (Wohlrabe Aff., Exhs. C–1 through C–4; Pl.'s Memo. in Supp., at p. 16).

First, the Essar Defendants object on the grounds that Interrogatory No. 1 is really a request for an admission, since it asks them to "confirm", or rather admit, that Gopalkrishnan was a representative of one of the Essar Defendants. The Essar Defendants further object to Great Lakes' use of the term "representative", which they assert is vague and ambiguous. The Essar Defendants argue that they cannot confirm whether Gopalkrishnan was acting as a representative until the definition of "representative" has been clarified by Great Lakes. The Essar Defendants

do not object to answering the Interrogatories after the ambiguity is resolved, and as such, there is no dispute regarding the relevancy of the information that is requested. [10]

The Court finds that the Essar Defendants' objections are proper since Interrogatory Nos. 1 and 2 cannot reasonably be answered without clarification. The Court agrees that by asking the Essar Defendants to confirm certain facts, Interrogatory No. 1 inappropriately asks the Essar Defendants to admit those facts. The Court finds that whether Gopalkrishnan was acting as a "representative" of any of the Essar Defendants goes to an issue that is obviously in dispute, and therefore, it would be an inappropriate basis for an admission even if it had been propounded in the proper format. See, Lakehead Pipe Line Co. v. American Home Assur. Co., 177 F.R.D. 454, 458 (D. Minn. 1997) (request for admissions are used to eliminate necessity of proving issues not in dispute, and "are not to be employed as a means to establish facts which are obviously in dispute or to answer questions of law") [citations and quotations omitted]. Moreover, it is not clear what Great Lakes means by "representative," which could imply that Gopalkrishnan was acting in various different capacities. Consequently, the Court also agrees that the use of the term "representative" is ambiguous. Therefore, Great Lakes shall have ten days from the date of this Order to re-propound the disputed Interrogatories. In the event that Great Lakes re-propounds Interrogatory Nos. 1 and 2, the Essar Defendants shall thereafter have ten days to serve their answers.

**\*10** In their briefing, the Essar Defendants did not specifically dispute Interrogatory No. 3, which asks for Gopalkrishnan's contact information if he is no longer employed by the Essar Defendants. To the extent that this Interrogatory is still in dispute, the Court finds this information is undoubtedly relevant since Gopalkrishnan was apparently quite involved in the Nashwauk facility and may have relevant information. As such, if any of the Essar Defendants are in possession of Gopalkrishnan's contact information, they are directed to provide an answer that reflects this information.

In Camera Review of Redacted Documents. According to Great Lakes, the Essar Defendants "have produced some 62 documents that contain redactions." (Pl.'s Memo. in Supp., at p. 21). The Essar Defendants represent that the redactions contain material that is protected either by

Great Lakes Gas Transmission Limited Partnership v...., Not Reported in...

2011 WL 13135650

the work product doctrine or the attorney-client privilege. Counsel for the Essar Defendants has indicated that they will provide a privilege log, but as of the hearing on this motion, they had not done so. Great Lakes contends that the documents do not appear to be privileged on their face, and asks that the Court direct the Essar Defendants to submit the documents for in camera review by the Court.

At this time, the Court will not devote any of its limited resources to engaging in an in camera review of 62 documents without the Essar Defendants first producing and submitting to Plaintiff a proper privilege log. Accordingly, the Court orders the Essar Defendants to produce a privilege log detailing each and every redaction that was made on the basis of the work product doctrine or the attorney-client privilege, which **must provide sufficient information** for Plaintiff to determine if the redactions are actually protected, including the basic subject of the redacted portion of the document, and a concise explanation of why the redacted portion is protected. The Essar Defendants must produce a privilege log **by no later than ten days from the date of this Order.** If the Essar Defendants fail to provide sufficient information to assess their work product or privilege claims or they fail to produce the privilege log in a timely manner, the Court will deem their objections based on claims of privilege waived and in that event are summarily ordered to produce unredacted copies of the documents in question. See, Marx v. Kelly, Hart & Hallman, 929 F.2d 8, 12 (1st Cir.1991) ("The assertion of privilege must be timely and must also be accompanied by sufficient information to allow the court to rule intelligently on the privilege claim"); Atteberry v. Longmont United Hospital, 221 F.R.D. 644, 648–49 (D. Colo. 2004)(holding that privilege is waived where there is no attempt to "provide sufficient information to enable the plaintiffs or the court to determine whether each element of the asserted objection is justified")[quotation and citation omitted]; Burke v. Messerli & Kramer, 2010 WL 2520615 at *3 (D. Minn. Jun 5, 2010)("A blanket claim of privilege that does not specify what information is protected will not suffice."), quoting United States v. White, 970 F.2d 328, 334 (7th Cir. 1992).

Designation of Documents as Confidential. Pursuant to the stipulation of the parties, the Court entered a Protective Order on October 18, 2010, which governs the designation of documents as "Confidential." (See Dkt. 187). Pursuant to the Protective Order, a party may designate information as confidential if "it reasonably and in good faith believes it to be subject to protection." (Id. at p. 2). In addition, "[a]ny Party may object to the designation by any other Party of any material as 'Confidential' or 'Highly Confidential' by giving written notice of such objection" stating the basis of the objection. (Id.)

**\*11** Great Lakes now seeks an order compelling the Essar Defendants to conduct another review of nearly 88,000 documents in order to correct any "improper designations of confidentiality." According to Great Lakes, the Essar Defendants have improperly designated hundreds of documents as confidential. [11] Great Lakes argues that the Essar Defendants have engaged in "widespread misuse of the confidentiality designation," and that it should not have to bear the burden of identifying each of the improperly designated documents. Great Lakes further argues that the relief is necessary because the improper designations burden the Court and the parties because the documents must then be filed under seal.

The Court finds that the relief requested by Great Lakes is not warranted. First, there is simply no evidence that the Essar Defendants have acted in bad faith in designating the documents in question or engaged in widespread intentional misuse of the confidentiality designation. Second, the fact that numerous documents—however many that may actually be—were improperly designated is not surprising, given the volume of documents in question, and the Court does not believe this demonstrates that there is likely to be a substantial amount of improperly designated documents within the nearly 88,000 documents in question. Simply put, Great Lakes has failed to establish that they will truly be prejudiced or burdened by the procedure presently in place, which was stipulated to by the parties, and thereafter adopted by the Court. [12] Accordingly, the Court denies this aspect of Great Lakes' motion.

B. The TransCanada Entities' Motion for a Protective Order

ESML has served the TransCanada entities (in this section, referred to as "Movants") with a total of 29 deposition notices. Twenty of the notices are directed at specific individuals, and 15 of these individuals are representatives and officers of the Movants. Nine notices are for Rule 30(b)(6) depositions and each of the 30(b)(6)

Great Lakes Gas Transmission Limited Partnership v...., Not Reported in...

2011 WL 13135650

notices contains 20 topics of examination. The Movants seek a protective order limiting ESML to 10 jurisdictional depositions and prohibiting ESML from examining the deponents on 6 topics. ESML contends that the motion should be denied in its entirety. First, ESML argues that it has no intention of deposing 29 individuals, but rather, that it was merely seeking to preserve its right to depose the identified individuals after determining who was most likely to have relevant information. In addition, ESML argues that the information regarding the interactions between the Third Party Defendants is relevant to determining subject matter jurisdiction.

Under Rule 26(c)(1), a party may seek an order protecting the party "from annoyance, embarrassment, oppression, or undue burden or expense." A protective order is granted only upon a showing of good cause, and the moving party has the burden of demonstrating good cause for issuance of the order. Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2, 197 F.3d 922, 926 (8th Cir. 1999). In order to show good cause, a party must show that specific prejudice or harm will result if no protective order is granted. See, Frideres v. Schiltz, 150 F.R.D. 153, 156 (S.D. Iowa 1993). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984); Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 362 (8th Cir. 2003).

**\*12** The Court will first address the Movant's request to limit the number of depositions that ESML may take. Pursuant to Rule 30(a)(2)(A)(i), a party may not take more than 10 depositions absent leave of court or stipulation with the other parties. See also, Archer Daniels Midland Co. v. Aon Risk Services, Inc. of Minnesota, 187 F.R.D. 578, 586 (D. Minn. 1999)(Rule 30(a)(2) "presumptively limit[s] the number of depositions that each side may take to ten"). "In practical terms, a party seeking leave to take more depositions, or to serve more Interrogatories, than are contemplated by the Federal Rules or the Court's Scheduling Order, must make a particularized showing of why the discovery is necessary." Id., citing Bell v. Fowler, 99 F.3d 262, 271 (8th Cir. 1996)(affirming denial of leave to take additional depositions where the plaintiff had not established why they were necessary).

Even if ESML does not intend to take all 29 depositions, the Court still believes that a protective order is warranted. Significantly, ESML has not indicated how many depositions it actually intends to take, and all 29 of the depositions have been formally noticed. Consequently, ESML could still attempt to take far more depositions than is permitted by the Federal Rules, given the excessive number of depositions that were actually noticed. Moreover, ESML has failed to provide any particularized explanation that would justify permitting it to take depositions in excess of the limitations imposed by the Federal Rules. As a consequence, the Court grants this aspect of the motion, and ESML shall be limited to no more than 10 depositions. See, Medtronic, Inc. v. Guidant Corp., 2003 WL 23867342 at \*2 (D. Minn. May 9, 2003)(denying leave to take additional depositions even though it was a complex case because the moving party had failed to exhaust available discovery and had failed to develop an "appropriately focused discovery plan" that would allow it to work within the limits already established). We leave it to ESML to decide which 10 depositions it will actually take. [13]

Turning next to the 30(b)(6) depositions, ESML has identified 20 topics of examination. Movants object to the 6 topics of examination that involve transactions and interactions between the Third–Party Defendants that do not relate to Great Lakes. In particular, ESML seeks to inquire as to the following topics related to the relationships and interactions between the Third–Party Defendants during the last four years: shared operations, decision-making, contracting, financial reporting, or marketing; financial and contractual agreements; directives given or supervision by other Third–Party Defendants concerning operations, policies, or selection of employees; shared employees and any employee lease arrangements; jointly pursued business activities and jointly owned or held property or property rights; and each of the Third Party Defendants' business, corporate, or marketing literature.

Movants object to being examined on any of the above transactions or interactions that do not relate to Great Lakes. Movants argue that it would be impossible to prepare a Rule 30(b)(6) deponent for meaningful testimony given the scope of the requested information and interactions involved. The Essar Defendants object to a protective order narrowing the scope of the topics of examination because they believe this would prevent them

Great Lakes Gas Transmission Limited Partnership v...., Not Reported in...

2011 WL 13135650

from obtaining information that is critical to analyzing the factors identified in Bielicki. As previously noted, Courts consider a number of factors in determining whether to pierce the corporate veil for jurisdictional purposes:

*13 1) whether the parent corporation owns all or most of the capital stock of the subsidiary;

2) whether the parent and subsidiary corporations have common directors and officers;

3) whether the parent corporation finances the subsidiary;

4) whether the parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation;

5) whether the subsidiary has grossly inadequate capital;

6) whether the parent corporation pays the salaries and other expenses or losses of the subsidiary;

7) whether the subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation;

8) whether in the papers of the parent corporation or in the statement of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own;

9) whether the parent corporation uses the property of the subsidiary as its own;

10) whether the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest; and

11) whether the formal legal requirements of the subsidiary are not observed.

Beilicki, 741 F.Supp. at 761–762. Moreover, the Minnesota Supreme Court has ruled that disregarding the corporate form in a particular case "requires not only that a number of these factors be present, but also that there be an element of injustice or fundamental unfairness." Victoria Elevator Co. of Minneapolis v. Meriden Grain Co., Inc., 283 N.W.2d 509, 512 (Minn. 1979). The Court recognizes that the Essar Defendants seek to disregard

the corporate form in this case, not because of liability issues, but rather, in order to defeat diversity jurisdiction. However, the Court finds that the inquiry is nevertheless the same.

The Court recognizes that the topics of examination are relevant in a general sense. However, the Court agrees that the Essar Defendants have cast too wide a net. In order for the topics to be relevant they must have some relationship to Great Lakes, the Minnesota project at issue, and the contractual disputes raised in this litigation. The above case law makes clear that in order for the corporate entity to be disregarded, there must be some showing that the corporate form was abused in a manner that resulted in injustice or fundamental unfairness **in that case**. Here, the Essar Defendants have merely argued in a conclusory fashion that the broad scope of information sought is relevant to their veil-piercing and jurisdictional arguments without explaining **why and how** it is relevant. Accordingly, the Court finds that in order for the information to have any relevancy to the jurisdictional issues to be resolved in this case, the information must have some relationship to Great Lakes, or the Minnesota project and the contractual dispute at issue. Without a more specific showing of relevancy, the Court does not believe that all of the TransCanada entities' actions, dealings, and relationships will be relevant to whether the corporate form should be disregarded in this case. Simply put, the Court will not permit the Essar Defendants to depose an individual on the overly broad topics identified in their deposition notices, absent a threshold showing that the relationships among the other Third-Party Defendants are related to Great Lakes or the Minnesota project and the contractual dispute at issue. Great Lakes should be prepared to produce a deponent who can testify on the above-mentioned topics to the extent that these collateral dealings are related to Great Lakes, the contractual dispute, or related to supporting or advancing the performance of the project or contract at issue in the present case.

*14 Therefore, the Court grants Great Lakes' motion for a protective order in part as to the 6 topics of examination identified above, and concludes that Great Lakes will not be required to produce a deponent on those topics, except to the extent described above. This may require the parties to confer in order to isolate the information that qualifies as being related to Great Lakes and the Minnesota project

or the contractual dispute, but the Court leaves it to the parties to resolve these remaining issues.

## IV. CONCLUSION

On a final note, the Court advises the parties that a failure to comply with this Order or any of the previous Orders of the Court will subject them to possible sanctions. However, the Court also notes that a monetary sanction in all practicality would be futile at deterring the noncompliant party in this case, given the extensive resources of all the parties and their demonstrated inclination towards unnecessarily litigious tactics to date. Accordingly, the Court specifically forewarns the parties that a failure to comply with the Court's Orders will narrow consideration of the sanctions available under Rule 37(b)(2)(A) to such measures as, but not limited to, directing certain matters or designated facts to be established for purposes of this action; prohibiting the offending party from supporting or opposing a claim or defense or introducing certain evidence; striking portions of their pleadings; dismissing the action in whole or in part; rendering a default judgment; and finding the party in contempt of court.

Based on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT for the reasons set forth above:

1. Great Lakes' Motion to Compel [Docket No. 222] is GRANTED in part, and the Essar Defendants are directed to comply with the text of this Order within 30 days unless otherwise noted;

2. The TransCanada entities' Motion for a Protective Order [Docket No. 215] is GRANTED in part.

## All Citations

Not Reported in F.Supp.2d, 2011 WL 13135650

Footnotes

1   Due to the numerous parties involved, and in order to ensure clarity, the Court will refer to the parties as follows: Essar Steel Minnesota, LLC will be referred to as ESML; Essar Steel Holdings, Essar Steel Limited, and Essar Global Limited will be referred to collectively as the "foreign Essar Defendants"; and all Essar entities will be referred to collectively as the "Essar Defendants."
    The Court will refer to TC GL Intermediate Limited Partnership, TC Pipelines, LP, TC Pipelines GP, Transcan Northern, Ltd., TransCanada Pipelines Ltd, TransCanada Corporation, Great Lakes Gas Transmission Co, and TransCanada GL, Inc., **and** Plaintiff Great Lakes Gas Transmission Limited Partnership, collectively as the "TransCanada entities" unless noted otherwise. Plaintiff Great Lakes Gas Transmission Limited Partnership will be referred to as Great Lakes.
2   To the extent that Great Lakes' Motion to Compel is granted, this Order shall be read in conjunction with and consistent with this Court's Order ruling on the Essar entities' Motion for a Protective Order.
3   Great Lakes cites to the Essar Defendants' General Objection No. 5, and Objections to Document Request Nos. 1, 3, 4, 5, 8, 10, 14, 15, and 22. (Pl.'s Memo. in Supp., at p. 6).
4   To avoid any confusion, the Essar Defendants are not relieved of any obligation to produce information or documents to discovery requests that are related to the Minnesota project or the underlying contract which are at issue in this dispute, or collateral matters which arise out of or were for the support of either, because the information, documents, or individuals involved in the generation thereof were/are outside the United States.
5   Because the Essar Defendants have agreed to produce the sublease agreement, the Court need not address Great Lakes' argument with respect to the Essar Defendants' refusal to produce documents regarding Essar Steel Algoma Inc. (which is a separate entity from Essar Steel Algoma, Inc. USA). Suffice it to say, Chief Magistrate Judge Erickson ruled that the business relationship between each of the Essar Defendants and Essar Steel Algoma, Inc., is not relevant. (Dkt. 76, at pp. 37–38). Great Lakes has provided no justification for departing from this Order, and the fact that some responsive documents might nonetheless make reference to this entity is not inconsistent with the Essar Defendants' objection to producing documents related to Essar Steel Algoma, Inc. in general. (See, Def.'s Memo. in Opp., at pp. 9–10). The Court also finds that conducting an in camera review of documents that refer to Essar Steel Algoma, Inc. is completely unnecessary and not an efficient use of the Court's limited resources.
6   The Essar Defendants are reminded of their ongoing duty to supplement their discovery responses as provided for in Fed. R. Civ. Pro. 26(c); this reminder applies to the entirety of this Order.

7    The Essar Defendants do not explain why these individuals are likely to have responsive documents, and Great Lakes does not mention them.

8    Again, it is not entirely clear who these individuals are, and why their communications are likely to contain responsive documents.

9    The Court is not sure what Great Lakes means by "any interconnect or lateral," as they have not explained this request in detail.

10   The Essar Defendants raised other objections that they did not address in their Memorandum. The Court finds that they have abandoned these objections and therefore addresses only the objections that have been specifically raised in the Essar Defendants' briefing.

11   Great Lakes has identified a "sampling" of documents that it believes are not confidential. These documents include letters from the Elrod Firm to ESML or its predecessor; agreements entered into with government entities; agreements, work orders, purchase orders, estimates and invoices for construction and services at the Nashwauk facility; emails that do not contain confidential information; and websites. The Essar Defendants indicated that they will now undertake a review of the documents and amend designations where appropriate, since Great Lakes has now followed the protocol identified in the Protective Order as to these documents.

12   To the extent that individual documents which Great Lakes feels may have been incorrectly designated as "confidential" might be submitted or filed with the Court to support future discovery motion practice, whether or not such mis-marked documents should be "sealed" can be resolved by the parties pursuant to Local Rule 37.1.

13   As discussed at the hearing, a new Scheduling Order will be issued that extends the deadlines for completing discovery **already commenced** (i.e., served or noticed) as of the prior February 25, 2011 deposition deadline and the January 21, 2011 written discovery and document production deadline. As such, the Essar Defendants can claim no prejudice as a result of this determination since they will have sufficient time to determine who they need to depose.

---

End of Document                                              © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Fulhorst v. United Technologies Auto., Inc., Not Reported in F.Supp. (1997)

1997 WL 873548

1997 WL 873548
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.

George E. FULHORST, d/b/
a Saf–T–Net, USA, Plaintiff,

v.

UNITED TECHNOLOGIES
AUTOMOTIVE, INC., Defendant.

No. CIV. A. 96–577–JJF.
|
Nov. 17, 1997.

**Attorneys and Law Firms**

Arthur G. Connolly, Jr., Esquire, of Connolly, Bove, Lodge & Hutz, Wilmington, Delaware. Of Counsel: Gregory M. Luck, Esquire of Sankey & Luck, L.L.P., Houston, Texas; James M. McGraw, Esquire, and James L. Reed, Jr., Esquire of Looper, Reed, Mark & McGraw, Houston, Texas; Timothy N. Trop, Esquire of Fish & Richardson, Houston, Texas. Attorneys for Plaintiff.

Donald F. Parsons, Jr., Esquire, and Karen L. Pascale, Esquire of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware. Of Counsel: Timothy J. Haller, Esquire, and Robert P. Greenspoon, Esquire of Niro, Scavone, Haller & Niro, Chicago, Illinois; Lloyd D. Doigan, Esquire, and Ozer Teitelbaum, Esquire of United Technologies Automotive, Inc., Dearborn, Michigan. Attorneys for Defendant.

MEMORANDUM OPINION

FARNAN, Chief J.

I. INTRODUCTION

*1 Presently before the Court is Defendant United Technologies' Motion To Compel Discovery (D.I.70). Plaintiff brought the Complaint in this matter on November 27, 1996 alleging infringement of United States Patent No. 4,523,178 ("the '178 patent"), which was issued for a "Wireless Alarm System in Conjunction with at Least One Vehicle." (D.I.1). Defendant has submitted its Motion To Compel Discovery in response to the Court's Order of September 22, 1997 (D.I.75), which proposed a procedure for resolving certain discovery matters. (D.I. 71 at 1). In its Motion, Defendant seeks an order compelling Plaintiff to respond to Requests for Admission Numbers 18 and 19 made pursuant to Federal Rule of Civil Procedure 36(a). (D.I.70).

II. DISCUSSION

Rule 36(a) permits a party to serve another party with written requests for admission of the truth of matters relevant to the pending action. Fed.R.Civ.P. 36(a). Admissions sought under Rule 36 serve "first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be." Fed.R.Civ.P. 36 (Advisory Committee's Note to 1970 Amendment); *see Coca–Cola Bottling Co. V. Coca–Cola Co.,* 123 F.R.D. 97, 102 (D.Del.1988) (Rule 36 admissions expedite trial by narrowing range of issues). With these purposes in mind, the Court considers Requests 18 and 19 separately below.

Request for Admission No. 18
Defendant's Request for Admission No. 18 reads as follows:

> A "car finder" ("car locator") feature in a radio frequency controlled vehicle entry system is different from a "panic alarm" feature, even when the system structure and software associated with the two features are identical.

(D.I. 71, Ex. B at 8). Plaintiff contends in its response to this request that the words "associated," "car finder" and "system structure and software" are vague and render the request ambiguous. (D.I. 71, Ex. B at 8). Defendant asserts that these terms are clear on their face and require no further explanation. (D.I. 71 at 3).

The Court agrees with Plaintiff that the term "associated" is vague. Requests for admission should be phrased so that they can be admitted or denied with minimal explanation. *United Coal Companies v. Powell Construction Company,* 839 F.2d 958, 967 (3d Cir.1988) (quoting *Havenfield Corp. V. H & R Block, Inc.,* 67 F.R.D. 93, 96 (W.D.Mo.1973). A party is not required to respond to a request that contains vague or ambiguous statements. *Dubin v. E.F. Hutton,* 125

EXHIBIT

1997 WL 873548

F.R.D. 372, 375–76 (S.D.N.Y.1989); 7 James Wm. Moore et al., *Moore's Federal Practice* § 36.10[6] (3d ed.1997). The Court is not convinced that Plaintiff could respond to Request No. 18 with minimal explanation, due to the ambiguity of the term "associated" as used in this context. Therefore, the Court concludes that Plaintiff need not respond to this request.

Request for Admission No. 19

Defendant's Request for Admission No. 19 reads:

> *2 The "panic alarm" components manufactured and sold by UTA for installation in a vehicle by an automotive OEM (which SAF–T–NET accuses of infringing claims of the '178 patent) would not infringe claims 3–5 of the '178 patent if such components were used a part of a "car finder" ("car locator") feature in a vehicle installation having identical structure and software.

(D.I. 71, Ex. B at 8–9). Plaintiff denies this request on the grounds that it is hypothetical and improperly calls for legal opinion. (D.I. 71, Ex. B at 8–9). In response, Defendant contends that the request is based on facts relevant to the case, and that it calls for the application of law to facts, rather than a legal conclusion. (D.I. 71 at 4).

Although requests for admission may relate to statements or opinions of fact or the application of law to fact, requests that seek legal conclusions are not appropriate under Rule 36. 7 James Wm. Moore et al., *Moore's Federal Practice* §§ 36.10[7], 36.10[8] (3d ed.1997); *see Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Company, Inc.,* 130 F.R.D. 92, 96 (N.D.Ind.1990) (improper to seek legal conclusion through Rule 36); *Williams v. Krieger,* 61 F.R.D. 142, 144 (S.D.N.Y.1973) ("pure requests for admissions of law" are prohibited under Rule 36). Further, Rule 36 "does not authorize requests for admissions of law unrelated to the facts of the case." Fed.R.Civ.P. 36 (Advisory Committee Note to 1970 Amendment).

The Court has considered several cases to inform its decision as to whether Request No. 19 should be characterized as a request for a conclusion of law or a request for the application of law to fact. For example, in *First Options of Chicago, Inc. v. Wallenstein,* a case relied upon by Defendant, the United States District Court for the Eastern District of Pennsylvania considered a Rule 36

request that Defendant admit he owed fiduciary duties to certain individuals. C.A. No. 92–5770, 1996 WL 729816, at *3 (E.D.Pa.1996). The court viewed this request as an application of law to facts relevant to the case, and therefore ordered the defendant to answer. *Id.* (citations omitted). [1] Similary, in *Ransom v. United States,* one of the disputed requests asked Defendant to admit that certain actions by particular individuals created privity of contract. 8 Cl.Ct. 646, 647–48 (Cl.Ct.1985). The United States Claims Court found this to be an acceptable conclusion of law related to facts of case. *Id.* However, the court found a request for the admission that jurisdiction was conferred by a certain statute to be an inappropriate conclusion of law. *Id.*

Given the nature of the instant case, the Court has also considered patent cases involving Rule 36. For example, in *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Company, Inc.,* the United States District Court for the Northern District of Indiana considered the propriety of a request to admit the validity of certain patent claims. 130 F.R.D. 92, 96 (N.D.Ind.1990). The court stated that "whether a patent is valid calls for a legal conclusion although its answer may depend upon factual inquiries." *Id.* (citations omitted). Based on this reasoning, the court determined that the defendant's request that the plaintiff admit the validity of a patent claim was inappropriate because it sought a "bald legal conclusion." *Id.*

*3 In another patent case, *Naxon Telesign Corp. v. GTE Information Systems, Inc.,* the defendant requested plaintiff's admission that various elements disclosed in a related patent satisfied quoted language in the plaintiff's patent. 30 Fed. R. Serv.2d 1286, 1287 (N.D.Ill.1980). The United States District Court for the Northern District of Illinois held that the request need not be answered, as it improperly sought "to obtain an admission of the ultimate *legal conclusion* in the case rather than admissions 'of fact or of the application of law to fact." *Id.* (quoting Fed.R.Civ.P. 36(a)) (emphasis in original).

The Court agrees with the reasoning set forth in *Golden Valley* and *Naxon,* and concludes that Request No. 19 improperly seeks the admission of a legal conclusion. In Request No. 19, Defendant asks Plaintiff to assume that the allegedly infringing device is used in a certain manner, and then asks Plaintiff to admit that the device, if used in such a manner, infringes on Plaintiff's patent. Determining whether infringement has occured involves,

Fulhorst v. United Technologies Auto., Inc., Not Reported in F.Supp. (1997)

1997 WL 873548

in the first instance, claim construction, which is a legal conclusion drawn by a court. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 116 S.Ct. 1384, 1393, 134 L.Ed.2d 577 (1996). By asking Plaintiff to admit to infringement in the context of the hypothetical use of its device, Defendant is improperly asking Plaintiff to draw a legal conclusion, which is not permitted by Rule 36. Therefore, Plaintiff will not be required to comply with this request.

## III. CONCLUSION

For the reasons discussed, the Court will deny Defendant's Motion To Compel Discovery (D.I.70).

An appropriate Order will be entered.

**All Citations**

Not Reported in F.Supp., 1997 WL 873548

Footnotes

1    Defendant also cites *Audiotext Communications Network, Inc. v. U.S. Telecom, Inc.,* C.A. No. 94–2395–GTV, 1995 WL 625744, at *6 (D.Kan.1995). However, the text of the requests at issue in that case are not provided in the opinion, and therefore, the opinion does not directly aid this analysis.

End of Document                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 12896526
Only the Westlaw citation is currently available.
United States District Court,
D. Minnesota.

Governor Jesse Ventura, a/k/a James
G. Janos, an individual, Plaintiff,

v.

Chris Kyle, an individual, Defendant.

Civil No. 12–472 (RHK/AJB)
|
Signed 11/06/2012

**Attorneys and Law Firms**

Court J. Anderson, John N. Bisanz, Jr., and David B. Olsen, Henson & Efron, P.A., 220 South Sixth Street, Suite 1800, Minneapolis, MN 55402 for Plaintiff.

John P. Borger and Leita Walker, Faegre Baker Daniels LLP, 90 South Seventh Street, Suite 2200 Wells Fargo Center, Minneapolis, MN 55402 for Defendant.

**ORDER ON MOTIONS TO COMPEL
PRODUCTION OF DOCUMENTS**

Chief Magistrate Judge Arthur J. Boylan, United States District Court

*1 This matter is before the Court, United States Chief Magistrate Judge Arthur J. Boylan, on Plaintiff's Motion to Compel (Docket No. 59) and Defendant's Motion to Compel (Docket No. 54). Oral argument was held on the motions on October 31, 2012 at the U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415. Court J. Anderson and David Olsen appeared on behalf of Plaintiff. John P. Borger and Leita Walker appeared on behalf of Defendant.

**I. DEFENDANT'S MOTION TO COMPEL**

On October 17, 2012, Defendant Chris Kyle filed a Motion to Compel Production of Documents alleging that Plaintiff Governor Jesse Ventura failed to produce certain documents in discovery. (Docket No. 54.) Defendant's Motion to Compel is brought pursuant to Federal Rule of Civil Procedure 37. Rule 37 states that "a party seeking discovery may move for an order compelling an answer,

designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). Defendant motioned this Court for an order compelling Plaintiff to produce documents responsive to certain discovery requests, specifically: (1) Plaintiff's tax returns since tax year 2002 (First Set, Request No. 3), (2) Plaintiff's authorization for release of medical records (First Set, Request No. 13), and (3) all documents confirming the nature and dates of Plaintiffs military service, including without limitation Plaintiffs DD214 form (Second Set, Request No. 1).

**1. Tax Returns Since Tax Year 2002**

Defendant seeks production of Plaintiff's tax returns from the tax years 2002 through 2008 (Request No. 3). According to the Meet and Confer Statement (Docket No. 58) dated October 16, 2012, Plaintiff agreed to produce the tax returns. At oral argument held on October 31, 2012, Defendant indicated he was in receipt of Plaintiff's tax returns since tax year 2002. Defendant's request to compel production of Plaintiff's tax returns since tax year 2002 therefore is **DENIED** as moot.

**2. Authorization for Release of Medical Records**

Defendant seeks production of Plaintiff's medical records (Request No. 13). Defendant argues that the records are relevant because Plaintiff stated in his Memorandum in Opposition to Defendant's Motion for Partial Summary Judgment (Docket No. 39) that he was taking Coumadin on the night of October 12, 2006 when Defendant alleges that the two engaged in a physical altercation. (*Id.* at 17.) Plaintiff maintains that if Defendant had punched him, he would have sustained significant bruising as a result of the blood thinning effects of Coumadin. Defendant contends that Plaintiff has put his medical condition at issue and his medical records are therefore discoverable. Defendant seeks discovery of Plaintiff's medical records to ascertain whether Plaintiff was taking any other medications that could prevent bruising or that may have caused Plaintiff to be aggressive, confused, or forgetful.

Unlimited discovery of Plaintiffs medical records is inappropriate in this case as Plaintiff has not placed the entirety of his physical condition into controversy. Plaintiff has placed a limited aspect of his physical condition at issue by claiming that his taking of the prescription medication Coumadin at the time of alleged altercation supports his version of events. Discovery into Plaintiffs prescription for Coumadin, as well as other

EXHIBIT
ρ

medications that may have interacted with Coumadin, may be relevant to Defendant's case. Limited discovery related to the Coumadin prescription and any other medications which may interact with it to prevent bruising is appropriate. Therefore, Defendant's request is **GRANTED IN PART.** On or before November 16, 2012, Plaintiff shall produce medical records sufficient to show: (1) all prescription medications being taken by Plaintiff on October 12, 2006, (2) the dosage information for all prescription medications being taken by Plaintiff on October 12, 2006, and (3) the length of time Plaintiff had been taking Coumadin as of October 12, 2006.

### 3. Military Service Records

*2 Defendant seeks production of Plaintiff's military service records. Pursuant to the Meet and Confer Statement (Docket No. 58) filed on October 16, 2012, Plaintiff agreed to produce his military service records. At oral argument held on October 31, 2012 Defendant indicated that Plaintiff was in the process of producing the records and asked that Plaintiff's agreement to produce the records be incorporated in the order. Defendant's request to compel production of Plaintiffs military service records is **GRANTED.** On or before November 16, 2012, Plaintiff shall produce the military service records.

## II. PLAINTIFF'S MOTION TO COMPEL

On October 17, 2012, Plaintiff filed a Motion to Compel alleging Defendant failed to produce certain documents in discovery. (Docket No. 59.) Plaintiffs Motion to Compel is brought pursuant to Rule 37. Plaintiff motioned this Court for an order compelling Defendant to answer interrogatories and produce documents responsive to certain discovery requests, specifically: (1) to produce any documents related to the income or financial benefits Defendant received as a result of publishing statements about Plaintiff (Request Nos. 9, 11, and 12), (2) to answer Interrogatory No. 3 detailing the categories and types of relevant documents in his possession, custody or control and produce all documents under his control, (3) to produce a privilege log, and (4) to reimburse Plaintiff for attorneys' fees and costs for this Motion pursuant to Rule 37.

### 1. Financial Benefit Documents

Plaintiff seeks production of documents in Defendant's possession, custody, or control related to any income or

financial benefit Defendant received directly or indirectly from the publication of *American Sniper* (Request Nos. 9, 11, and 12). Plaintiff seeks documents concerning profits both directly through book sales and indirectly through movie rights, increased business for his security company, or any other source. Defendant objects that the request is overly broad and discovery of income and financial benefit should be suspended pending resolution of the partial summary judgment motion on Plaintiff's misappropriation and unjust enrichment claims.

Plaintiff is entitled to discovery regarding income and financial benefit because it directly impacts alleged damages on his claims of unjust enrichment and misappropriation, notwithstanding Defendant's pending motion for summary judgment. However, the scope of discovery sought by Plaintiff is overly broad considering the claims at issue in the case. Discovery of the income or financial information of Defendant's security business, Craft International, amounts to a fishing expedition and will impose too great of a burden on Defendant. Defendant will not be required to produce financial information for Craft International in response to these requests. However, the requests otherwise seek relevant information within the scope of Rule 26. Plaintiff's request for production of documents relating to any income or financial benefit Defendant directly or indirectly received as a result of *American Sniper* is **GRANTED IN PART.** On or before November 16, 2012, Plaintiff shall produce documents responsive to Request No. 9 relating to any income or financial benefit Defendant directly or indirectly received as a result of *American Sniper*, including from movie rights or other ancillary rights but excluding the business of Craft International, and shall produce all documents responsive to Request Nos. 11 and 12.

### 2. Interrogatory No. 3 and Documents Under the Control of Defendant

Interrogatory No. 3 requests a description and category of all documents in Defendant's possession, custody or control which contain discoverable information relevant to Defendant's claims and defenses. In response to this interrogatory, Plaintiff seeks a list of types of relevant documents that are in the possession of third-parties but under Kyle's control. Defendant objected to Interrogatory No. 3 and did not provide a substantive answer. Plaintiff also seeks production of all documents under Kyle's control but in the possession of third parties.

**\*3** Control over documents exists when one party "has the right, authority, or practical ability to obtain the documents from a non-party to the action." *In re Hallmark Capital Corp.*, 534 F.Supp.2d 981,982 (D. Minn. 2008). "Applying the concept of 'control' is often highly fact-specific." *Id.* (quoting 8A Wright, Miller & Marcus, Federal Practice and Procedure § 2210, at p. 397 (2d ed. 1994)). In this case, Defendant argues that he does not have control over documents in the possession of the third parties at issue, specifically HarperCollins and his co-authors James DeFelice and Scott McEwen. The Court limits its discussion and order to HarperCollins, DeFelice, and McEwen, as those are the only third parties identified by either party. Defendant suggests that Rule 45 subpoenas are the appropriate method to obtain any documents possessed by such third parties. (*Id.* at 10.) Plaintiff has in fact served multiple subpoenas and has received documents in response from HarperCollins and DeFelice. Therefore, it appears that Plaintiff's request that Defendant obtain and produce documents from HarperCollins and DeFelice is moot. Further, considering the surrounding factual circumstances, the Court finds that Kyle does not have control over the documents of HarperCollins or his co-authors. Plaintiff should obtain documents from such third-parties by way of Rule 45 subpoena, the course he has already taken.

With respect to Interrogatory No. 3, Plaintiff argues that he needs a detailed answer to the interrogatory in order to serve effectively-targeted subpoenas. Defendant did not set forth any argument in opposition to Plaintiff's motion regarding why he should not be required to provide such a response. To the extent there are third parties that possess relevant documents under Defendant's control, Defendant obviously is in a better position than Plaintiff to identify those third parties and identify the documents they possess. Accordingly, Plaintiff's motion to compel further answer to Interrogatory No. 3 is **GRANTED IN PART.** On or before November 16, 2012, Defendant shall identify any third parties who possess relevant documents under Defendant's control and shall describe the documents possessed by such third parties in response to Interrogatory No. 3. As discussed above, the Court finds that Defendant does not have control over the documents of Harper Collins and Defendant's co-authors. Plaintiffs motion to compel Defendant to obtain and produce documents from HarperCollins and Defendant's co-authors is **DENIED.**

**3. Privilege Log**

The Court has requested additional briefing from the parties regarding the issues raised pertaining to Defendant's privilege and redaction log. Plaintiffs Motion to Compel as related to the privilege log is therefore **RESERVED** pending further briefing to the Court as set out in the Order Regarding Additional Briefing (Docket No. 75).

**4. Reimbursement for Attorneys' Fees and Costs**

Plaintiff seeks an award of attorneys' fees and costs. Minn. R. Civ. P. 37(d)(1) states that a court may deny awarding attorneys' fees and costs without regard to whether a party's motion to compel was granted if "circumstances make an award of expenses unjust." Because the parties filed cross Motions to Compel, each of which is herein granted in part and denied in part, it is unjust to award attorneys' fees and costs to Plaintiff. Therefore, Plaintiffs request for an award of attorneys' fees and costs is **DENIED.**

**III. CONCLUSION**

Based upon the record, memoranda, and oral arguments of counsel, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Compel [Docket No. 54] is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. Request for production of tax returns since tax year 2002 (Request No. 3) is **DENIED** as moot;

   b. Request for production of Plaintiff's authorization for release of medical records (Request No. 13) is **GRANTED IN PART** as provided above; and

   c. Request for production of all documents confirming the nature and dates of Plaintiff's military service, including without limitation Plaintiff's DD214 form is **GRANTED** as provided above.

2. Plaintiffs Motion to Compel [Docket No. 59] is **GRANTED IN PART, RESERVED IN PART**, and **DENIED IN PART** as follows:

   a. Request for documents related to the financial benefits Defendant has received from the book

(Request 9,11, and 12) is **GRANTED IN PART** as provided above;

**\*4** b. Request for a supplemental answer to Interrogatory No. 3 is **GRANTED IN PART** as provided above;

c. Request for production of documents from third parties HarperCollins and co-authors James DeFelice and Scott McEwen is **DENIED;**

d. Request relating to documents on privilege log is **RESERVED** pending further briefing from the parties; and

e. Request for attorneys' fees and costs is **DENIED.**

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 12896526

---

End of Document

© 2018 Thomson Reuters. No claim to original U.S. Government Works.