

3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

Heather J. Kliebenstein
612.371.5213
hkliebenstein@merchantgould.com

January 28, 2019

**VIA ECF**

Honorable David T. Schultz
United States District Court
9E U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

Re:   *Fair Isaac Corp. v. Federal Insurance Co. et al.*,
       No. 16-cv-01054-WMW-DTS (D. Minn. filed April 21, 2016)

Dear Judge Schultz:

Plaintiff Fair Isaac Corporation ("FICO") seeks the Court's assistance to (1) compel full responses to Interrogatory Nos. 16-20; and (2) enter evidentiary sanctions against Defendants Federal Insurance Company and Ace American Insurance Company ("Defendants" or "Federal") due to their failure to provide documents responsive to Document Request Nos. 30-32. In the December 17, 2018 hearing, the Court required Federal to provide full responses to Interrogatory Nos. 16-20 and Document Request Nos. 30-32 by January 18. (Dec. 17, 2019 Tr. at p. 30:5-31:14.) Federal failed to comply with the Order.

**Defendants Failed to Fully Respond to Interrogatory Nos. 16-20**

On Monday, January 21, 2019, at 3:22 p.m. (3 days after the Court's assigned due date), Federal served supplemental responses for Interrogatory Nos. 16-20. These responses were later verified on January 22.[1] Federal's answers remain deficient in a number of important, specific ways. The interrogatories and deficiencies are set forth below.

> **INTERROGATORY NO. 16:** For all insurance policies in connection with which the Blaze Advisor® software was used, the gross written premium of Federal and the gross written premium of each related company, including the specific identification of each related company, for each year from 2007-2012. For clarity, this Interrogatory is not seeking investment income, other income, or capital and surplus accounts.

(Exhibit A at 3.) In response, Federal provided gross written premium data for CSI Express and Premium Booking applications from 2007-2012. (*Id*. at 3-5.) Federal did not identify which premiums came from Federal and which premiums came from its various related companies. (*See id.*) Federal failed to provide any gross written premium figures linked to the applications named Automated Renewal Process, DecisionPoint, Profitability Indicator or CIS Claims. Mr. Henry Mirolyuz, the 30(b)(6) deponent for Federal, testified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Exhibit B at 44:18-19; 57:8-9; 58:13-16; 60:1-2; 63:9-11; 62:1-3; 61:1-2.) For CUW (Commercial Underwriting Workstation), TAPS and IRMA, Federal identified all written premiums issued by those applications as a lump sum for the three applications combined, without separately identifying the written premiums from each application. (Exhibit A at 3-5.)

> **INTERROGATORY NO. 17:** For all insurance policies in connection with which the Blaze Advisor® software was used, the gross written premium of Federal and the gross written premium of each related company, including the specific identification of each related company, for each

---

[1] The undersigned requested the supplemental responses on the evening of Friday, January 18, and again on Saturday, January 19. Federal's counsel did not respond.

> quarter from March 30, 2016 to date. For clarity, this Interrogatory is not seeking investment income, other income, or capital and surplus accounts.

(Exhibit A at 10.)  Federal provided annual gross written premiums for 2016-2017 from the issuance of insurance policies from CSI Express and Premium Booking; no gross written premiums for 2018 were provided.  Federal did not identify which premiums came from Federal and which premiums came from its various related companies.  (*See id.* at 10-11.)  Quarterly information was not provided.  Federal again failed to provide any gross written premium figures linked to the applications named Automated Renewal Process, DecisionPoint, Profitability Indicator, and CIS Claims.  Mr. Henry Mirolyuz, the 30(b)(6) deponent for Federal, testified that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Exhibit B at 44:18-19; 57:8-9; 58:13-16; 60:1-2; 63:9-11; 62:1-3; 61:1-2.)  For CUW, TAPS and IRMA, Federal vaguely identified documents with no specifics:

> For the Chubb Commercial Insurance (CCI) unit for the years identified below (post-merger), Defendant states that the approximate gross written premium from the issuance of insurance policies that used the applications CUW, TAPS, and IRMA, in connection with which the Blaze Advisor® software was used, was produced on January 18, 2019 as business records relating to the North America commercial segment.  Discovery is continuing.

(Exhibit A at 11.)  The "business records" were not identified.  Presumably, Federal is referring to company-wide *net* written premium totals identified on publicly produced 10-K documents that Federal produced on February 18.  (Exhibit D.)  That *net* written premium data, however, is overbroad and not linked in any way to gross written premiums from insurance policies in connection with which Blaze Advisor software was used.  That *net* written premium data does not identify what premiums are connected to CUW, TAPS and IRMA.

> **INTERROGATORY NO. 18:** From the date of first use of the Blaze Advisor® software in the United Kingdom and thereafter by quarter, the gross written premium of each such company, including specific identification of each company, from all insurance policies in connection with which the Software was used.

In response, Federal did not identify which premiums came from Federal and which premiums came from its various related companies.  (Exhibit A at 17-19.)

January 28, 2019
Page **4** of **7**

**INTERROGATORY NO. 19:** From the date of first use of the Blaze Advisor® software in Canada and thereafter by quarter, the gross written premium of each such company, including specific identification of each company, from all insurance policies in connection with which the Software was used.

Federal provided 2015-2017 data for the Evolution application; no data was provided for 2018. Federal did not identify which premiums came from Federal and which premiums came from its various related companies. (*See id.* at 23-24.) Henry Mirolyuz, Defendants' 30(b)(6) deponent regarding what applications use Blaze Advisor throughout Chubb, testified that █████████████████████████████ (Exhibit B at 68:19-20; 69:22-23; 72:5-8.) No written premium information was provided for Broker Site or Adapt, usage of which FICO believes began before 2015.

**INTERROGATORY NO. 20:** From the date of first use of the Blaze Advisor® software in any other country other than the United States, the United Kingdom or Canada, and thereafter by quarter, the gross written premium of each such company, including specific identification of each company, from all insurance policies in connection with which the Software was used.

Federal provided 2010-2017 written premium figures for the Adapt (APZ) application; no data was provided for 2018. Federal did not identify which premiums came from Federal and which premiums came from its various related companies. (Exhibit A at 27-28.) Henry Mirolyuz testified that ███████████████████████████ (Exhibit B at 68:19-20; 69:22-23.) No data was provided for Evolution.

Federal may respond that its responses are complete because the applications omitted either do not generate premium dollars or are "nested" in other applications. If Federal so responds, then it will have assumed the role of deciding what premium dollars are, or are not, counted in the disgorgement analysis. That is improper. At this stage, Federal must simply provide the data requested without filtration. FICO must then take the data and prepare its damages analysis, with an obligation to avoid "double counting" revenues. Federal should not be allowed to hijack the process at this stage by filtering its own data as it sees fit.

**Document Request Nos. 30-32**

FICO requests the following sanction for Federal's continued deficiencies relating to Request for Production Nos. 30-32: that Federal's damages expert opinion cannot rely on any information that is not in the discovery record at this time.  On Friday, January 18, at 7:12 p.m., counsel for Federal produced 3 spreadsheets (Exhibit C) and dozens of excerpts from what appear to be publicly filed documents (Exhibit D) purportedly in response to Document Request Nos. 30-32.  These documents are not responsive to Document Request Nos. 30-32, which sought:

> **REQUEST FOR PRODUCTION NO. 30:** Summary reports sufficient to show gross and net revenues, and gross and net profits, derived from the products and services of each line of business of Chubb & Son, a division of Federal, for which the Blaze Advisor® software has been used (including, without limitation, for any underwriting, pricing, premium validation, or claim segmentation function in connection with the products and services of such line of business) for each quarter from January 1, 2016 to the present.
>
> **REQUEST FOR PRODUCTION NO. 31:** Summary reports sufficient to show gross and net revenues, and gross and net profits, derived from the products and services of each line of business of every division or entity (other than Chubb & Son, a division of Federal) to whom Federal has disclosed and/or permitted to use the Blaze Advisor® software, for which the Blaze Advisor® software has been used (including, without limitation, for any underwriting, pricing, premium validation, or claim segmentation function in connection with the products and services of such line of business), for each quarter from January 1, 2016 to the present.
>
> **REQUEST FOR PRODUCTION NO. 32:** Without limitation to the scope of Request Nos. 30 and 31, summary reports sufficient to show gross and net revenues, and gross and net profits, derived from each line of business of Chubb & Son, a division of Federal, and of every other division or entity to whom Federal has disclosed and/or permitted to use the Blaze Advisor® software, including the Specialty, Commercial, and Surety Bonds lines of business, for each quarter from January 1, 2016 to the present.

Several problems exist with the Excel spreadsheets produced:

1. The spreadsheets produced fail to identify the geographic region covered by each spreadsheet.  FICO does not know if the spreadsheets are geographically comprehensive.  This point is significant because the periods of infringement differ by geographic region.
2. The premiums, losses, and expenses for an unknown number of products and services are merged together, making the information both non-responsive to the requests and useless.  Req. for Production Nos. 30-32 asked for data on an individual product and service basis—not lumped together.
3. The types of "losses" and "expenses" identified throughout are not identified.  FICO must guess as to whether the expenses and losses Federal will use to reduce its gross profit figures are legitimate and properly deductible.
4. The acronyms used on the spreadsheets are undefined.  For example, the phrases ▓▓▓▓▓▓▓ and ▓▓▓▓▓▓▓▓▓▓▓▓▓ are undefined, without any transparent meaning.

Several problems exist with the excerpts from public financial filings produced by Federal in response to Request for Production Nos. 30-32.[2]  The data in these charts is overly broad because the charts report by line of business, not on an application basis or product/service basis.  (Exhibit D.)  For example, pages 354-359 of Exhibit D are excerpts from 10Q and 10K reports for Chubb Limited.  Request for Production Nos. 30-32 asked for revenues and profits derived from *products and services* in connection with which Blaze Advisor software was used.  Not all premiums issued by Federal touch Blaze Advisor software.  FICO cannot easily use data directed at the whole of the company to narrow down the base for its disgorgement analysis.

FICO is prejudiced by Federal's refusal to provide narrowly tailored gross and net revenue and gross and net profit information tied to premiums that touch Blaze Advisor software.  FICO cannot narrow the revenues or the expenses to the dollars that touch Blaze Advisor.  For example, FICO cannot assume that the expense profile for the

---

[2] Federal's production of the pre-existing charts in Exhibit D is further concerning because many of the documents appear to have existed before this lawsuit.  These documents have been in Federal's possession for months, if not years.  Federal did not produce them for a month after the Court's December 17, 2018 hearing and order.  The timing suggests gamesmanship.

January 28, 2019
Page **7** of **7**

premiums that touch Blaze Advisor software is the same as the expense profile for the remainder of Federal's written premiums.

Discovery closes in 13 business days. Federal has had nearly a year since the Court's February 2018 order, and six weeks since the Court's December 17 order. The appropriate remedy at this junction is an order for (1) complete answers to the interrogatories and (2) freezing the factual record for Defendants' experts with a ruling that Defendants' damages expert opinion cannot rely on any information that is not in the discovery record at this time.

FICO's counsel is generally available for a call with the Court regarding these issues for the remainder of this week.

Respectfully,

*[signature]*

Heather J. Kliebenstein

cc:   All Counsel of Record (via ECF)