UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation, | Case No. 16-cv-1054 (WMW/DTS) |
| Plaintiff, | |
| | **Jury Trial Demanded** |
| v. | |
| FEDERAL INSURANCE COMPANY, an Indiana corporation and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation, | |
| Defendants. | |

**PLAINTIFF FAIR ISAAC CORPORATION'S
MEMORANDUM IN SUPPORT OF MOTION TO STRIKE DEFENDANTS'
UNTIMELY DISCLOSED WITNESSES**

## I.  INTRODUCTION

Fair Isaac Corporation ("FICO") respectfully requests the Court strike 16 witnesses Defendants Federal Insurance Company and ACE American Insurance Company (collectively "Federal") disclosed for the first time on March 22, 2019—the last day of fact discovery—as witnesses who may testify in support of its case.  Federal disclosed these 16 witnesses in its Second Supplemental Rule 26(a)(1) Disclosures, served on the afternoon of the last day of fact discovery in violation of Rules 26(a)(1)(A)(i) and 26(e)(1)(A).  The untimely disclosures impose the ultimate prejudice on FICO: the preclusion of discovery.

1

"The purpose of discovery is to 'make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practical extent.'" *US Salt, Inc. v. Broken Arrow, Inc.*, No. 07-1988, 2008 U.S. Dist. LEXIS 43376, at *10-11) (D. Minn. May 30, 2008) (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958)). Defendants' untimely disclosures are the antithesis of fair discovery. FICO respectfully requests an Order striking these witnesses from Federal's disclosure and precluding their testimony, whether on motion, hearing, or at trial in accord with Rule 37(c).

## II.   FACTUAL BACKGROUND

FICO filed this breach of contract and copyright infringement case nearly three years ago, on April 21, 2016. (Dkt. 1.) In accord with the case schedule at that time, Federal served initial disclosures under Rule 26(a)(1) on March 17, 2017. Nearly two years later, and less than two months before the close of fact discovery, Federal served its first supplemental initial disclosures on January 28, 2019. (*See* the Declaration of Heather J. Kliebenstein filed concurrently herewith (hereafter "Kliebenstein Decl.") Ex. 1.)

On the afternoon of March 22, 2019—literally hours before the close of fact discovery—Federal supplemented its initial disclosures again. (Kliebenstein Decl. Ex. 2.) Federal's Rule 26(a)(1) Second Supplemental Disclosures disclosed for the first time 16 more witnesses it may call in support of its defenses to FICO's claims. (*Compare* Kliebenstein Decl. Ex. 1 *with* Kliebenstein Decl. Ex. 2.)

**A.      The subject matter of the 16 witnesses relate to issues in the case since the action commenced.**

Paragraph 1 of the Complaint states: "This is an action for breach of contract and copyright infringement related to business software owned by FICO and licensed to Chubb & Son." Paragraph 9 identifies the software and states its use for rules-based business applications: "One of FICO's decision management software tools is the FICO® Blaze Advisor® business rules management system ("FICO Blaze Advisor"), which is used to design, develop, execute, and maintain rules-based business applications." The Prayer for Relief is clear that FICO seeks contract damages for breach of the license agreement and damages for copyright infringement, including disgorgement of profits:

> "WHEREFORE, FICO requests judgment as follows:
>
> a. That Chubb & Son has breached the Agreement, causing damages to FICO in an amount to be determined at trial, but in excess of $75,000, exclusive of costs and interest;
>
> b. That Chubb & Son has infringed FICO's copyrights in the FICO Products, causing damage to FICO, and awarding FICO damages under 17 U.S.C. § 504 of either its actual damages and all profits derived by Chubb & Son as a result of its copyright infringement, or statutory damages, at its election;

The rules usage of Blaze Advisor (paragraph 9 of the Complaint) is the subject of Mr. Ghislanzoni's expected testimony. Defendants' use of Blaze Advisor and Blaze Advisor applications worldwide (paragraph 9 of the Complaint and the Prayer for Relief) is the subject of the expected testimony from Messrs. Schraer, McCarthy, Setti, Seeley, Fisher, and Hutchinson and Mses. Mencke and Jerd. Ms. Theberge from Defendants' Financial Lines Unit and Mses. Verduin and Garnes from Defendants' Commercial Lines Unit are expected to provide more specific testimony related to the use of Blaze Advisor

3

applications directed to underwriting (Theberge) and managing work flow (Verduin and Garnes). The remainder of the 16 witnesses, Messrs. Johnston, Roy, and Harkin and Ms. Phillips, are expected to testify to Federal's financial operations worldwide in defense of the damages claims, particularly disgorged profits as plead in the Complaint.

**B.    FICO's first set of discovery requests dated April 11, 2017, specifically called out the subject matter of the 16 witnesses.**

The specific discovery sought in FICO's first set of interrogatories and first request for production of documents, both dated April 11, 2017, is directed to the issues of the Complaint and bely any argument these 16 witnesses are to testify to new subject matter. Interrogatories Nos. 6 and 7 state:

> **INTERROGATORY NO.6:** Identify all Persons known to you to have knowledge of Federal's revenues and profits, including the revenues and profits, if any, attributable to the use of the Blaze Advisor® software by Chubb & Son, a division of Federal.
>
> **INTERROGATORY NO.7:** For each line of business of Chubb & Son, a division of Federal, and for each line of business of any division or entity other than Chubb & Son that uses or has used the Blaze Advisor® software, identify all persons known to you to have knowledge of the business reasons for using the Blaze Advisor® software.

None of the 16 witnesses are identified in response to these interrogatories. (Kliebenstein Decl. Ex. 3.) FICO's first requests for documents included the following:

> **REQUEST NO. 24:** Documents sufficient to identify every person or entity in the United Kingdom to whom Federal has disclosed and/or permitted to use the Blaze Advisor® software.
>
> **REQUEST NO. 25:** Documents sufficient to identify every person or entity in Canada to whom Federal has disclosed and/or permitted to use the Blaze Advisor® software.

>**REQUEST NO. 26:** Documents sufficient to identify every person or entity in Australia to whom Federal has disclosed and/or permitted to use the Blaze Advisor® software.
>
>**REQUEST NO. 30:** Summary reports sufficient to show gross and net revenues, and gross and net profits, derived from the products and services of each line of business of Chubb & Son, a division of Federal, for which the Blaze Advisor® software has been used (including, without limitation, for any underwriting, pricing, premium validation, or claim segmentation function in connection with the products and services of such line of business), for each quarter from January 1, 2016 to the present.
>
>**REQUEST NO. 31:** Summary reports sufficient to show gross and net revenues, and gross and net profits, derived from the products and services of each line of business of every division or entity (other than Chubb & Son, a division of Federal) to whom Federal has disclosed and/or permitted to use the Blaze Advisor® software, for which the Blaze Advisor® software has been used (including, without limitation, for any underwriting, pricing, premium validation, or claim segmentation function in connection with the products and services of such line of business), for each quarter from January 1, 2016 to the present.

The subject matter of these 16 witnesses (that Blaze Advisor® is used to develop and maintain rules-based business application; the worldwide use of Blaze Advisor applications by Federal, which includes underwriting and workflow; and Federal's financial operations to defend against disgorgement of Federal's profits), all date to the Complaint.  FICO's first set of discovery requests flushed out these issues in specific detail, nearly two-years ago.

### C. Federal did not make known that these 16 witnesses may testify in defense of FICO's claims before the last day of discovery.

Federal may contend it is excused from its duty under Rule 26(e)(1)(A) to timely supplement Rule 26(a)(1) disclosures because "corrective information [was] otherwise . . . made known" to FICO.  The contention is meritless.

The only "corrective" information that bears on this untimely supplementation of persons who may have knowledge relating to Federal's defenses and may testify at trial is an earlier statement that identified them as possible witnesses. The mention of these names during discovery (which is not true of all 16) is not "corrective."

Federal produced almost 100,000 pages of documents that identify hundreds of people, most having nothing to do with Blaze Advisor® software or this case. The 16 names first disclosed on the last day of discovery are indistinguishable from the hundreds of other persons whose names populate the documents.

Moreover, Federal's documents that relate to these 16 names offer little and often no insight into how any of them relate to the issues of the case. The following contrasts the subject matter to which the witnesses may testify and discovery:

| | |
|---|---|
| Kevin Harkin | Disclosed as having "knowledge regarding the company's financial operations." <br><br> Keyword search for "Harkin" identified 8 documents; none related to Kevin Harkin. |
| Andrea Phillips | Disclosed as having "knowledge regarding the company's financial operations in Canada." <br><br> Keyword search for "Andrea" and "Phillips" identified 23 spreadsheet documents that list hundreds of employees, mostly regarding Chubb's pre-merger contract due diligence. Keyword search "Andrea Phillips" identified 2 spreadsheets. FED009757 is an Information Management spreadsheet that lists Andrea Phillips's name and location (Home Office Canada) amongst 48,937 lines of information. FED009988 is a software maintenance spreadsheet that lists Andrea Phillips's name and location (Home Office Canada) amongst 56,217 lines of information. |
| Mike Hutchinson | Disclosed as having "knowledge regarding the applications that use Blaze Advisor in the United Kingdom and Europe." |

6

|  | |
|---|---|
|  | Keyword search for "Hutchinson" identified 56 documents; 55 were spreadsheets that list hundreds of employees related to Chubb's pre-merger contract due diligence. In FED010034, Mr. Hutchinson is identified with ACE legacy applications (that do not use Blaze Advisor); none of the documents connects him to applications using Blaze Advisor. The one exception is an email from Colin Buchanan produced on the last day of discovery regarding the decision not to deploy Exari; Exari being an application that was developed using Blaze Advisor. |
| Paul Johnston | Disclosed as having "knowledge regarding the company's financial operations in Europe." <br><br> Keyword search for "Paul Johnston" identified 1 document (FED004418). This spreadsheet lists "Paul Johnston" as one of 20,000+ "InsuredName[s]" and does not relate to Blaze Advisor. |
| Runesh Roy | Disclosed as having "knowledge regarding the company's financial operations in Australia." <br><br> Keyword search for "Runesh" identified no documents. |
| Paul Seeley | Disclosed as having "knowledge regarding the applications that use Blaze Advisor in the Chubb Specialty Insurance (CSI) business unit (premerger) and the Financial Lines Unit (post-merger) in the United States." <br><br> Keyword search for "Seeley" identified 17 documents, all spreadsheets that list hundreds of employees related to Chubb's pre-merger contract due diligence. Mr. Seeley is not connected to any application that uses Blaze Advisor. |
| Tracie Jerd | Disclosed as having "knowledge regarding the Premium Booking application." <br><br> Keyword search of "Jerd" identified 18 documents related to Chubb's pre-merger due diligence. Ms. Jerd authored no emails and has no connection to FICO, Blaze Advisor, or Premium Booking in the documents. |
| Helen Mencke | Disclosed as having "knowledge regarding the operations of the Financial Lines Unit, including the CSI Express suite of applications." <br><br> Keyword search for "Mencke" identified 15 documents, all spreadsheets listing hundreds of employees. Ms. Mencke was not associated with any applications using Blaze Advisor. |

7

| | |
|---|---|
| Alissa Theberge | Disclosed as having "knowledge regarding the underwriting service center which underwrites certain risks."<br><br>Keyword search of "Theberge" identifies 12 documents. The first 10 documents are spreadsheets listing hundreds of employees related to Chubb's pre-merger contract due diligence. The final two documents (FED013509, FED013510) are email strings where Ms. Theberge's name does not appear until the fourth page. The emails relate to fiduciary and crime eligibility for law firms using the DecisionPoint application. |
| Ellen Garnes | Disclosed as having "knowledge regarding workflow and use of Blaze Advisor within the Commercial Lines Unit."<br><br>Keyword search for "Garnes" identified 23 documents, all spreadsheets listing hundreds of employees related to Chubb's pre-merger contract due diligence. Ms. Garnes was not associated with any applications using Blaze Advisor. |
| Nancy Verduin | Disclosed as having "knowledge regarding how work was routed prior to use of Blaze Advisor."<br><br>Keyword search for "Verduin" identified 49 documents. The first two documents are the large spreadsheets discussed above (FED009757, FED009988). The remaining 47 documents were produced January 18, 2019. Of this subset, Ms. Verduin sent or was copied on 22 emails, along with numerous other employees, related to Chubb's integration of CUW-IM (Commercial Underwriting Workstation-Inventory Management) to support ACE processing. Ms. Verduin authored only one email, FED017187, having nothing to do with how work was routed prior to use of Blaze Advisor. |
| Ewen Setti | Disclosed as having "knowledge regarding Blaze Advisor use in the United Kingdom."<br><br>The documents indicate Mr. Setti's knowledge regarding Blaze Advisor use in the United Kingdom. |
| Stuart Fisher | Disclosed as having "knowledge regarding the applications that use Blaze Advisor in Australia."<br><br>Keyword search for "Stuart Fisher" identified 271 documents. Most documents relate to operations in the United Kingdom and Chubb's pre-merger contract due diligence. Ninety-one (91) of the documents include the search term "Australia." None of the documents mentions Blaze Advisor software. |

8

| | |
|---|---|
| C. Chase McCarthy | Disclosed as having "knowledge regarding the applications that use Blaze Advisor in the Chubb Commercial Insurance (CCI) business unit in the United States."<br><br>Keyword search for "McCarthy" identified 338 documents. Keyword search for "ccmccarthy," Mr. McCarthy's email username, identified 771 documents. These documents relate to Chubb's Personal Insurance (CPI) and the ACE merger. None of these documents mentions Blaze Advisor software. |
| Claudio Ghislanzoni | Disclosed as having "knowledge regarding Blaze Advisor rules usage."<br><br>Keyword search for "Ghislanzoni" identified 191 documents related to Chubb's tool evaluations and attempts to replace Blaze Advisor. |
| Mike Schraer | Disclosed as having "knowledge regarding the applications that use Blaze Advisor in the Chubb Specialty Insurance (CSI) business unit (premerger) and the Financial Lines Unit (post-merger) in the United States, specifically Decision Point."<br><br>Keyword search for "Schraer" identified 100 documents related to Chubb's pre-merger contract due diligence and related to DecisionPoint, a Blaze Advisor application. Approximately 43 documents relate to the DecisionPoint application, in particular eligibility rules for use of DecisionPoint. |

## III. LEGAL ARGUMENT

### A. A party may not introduce testimony from witnesses not timely disclosed.

Federal Rule of Civil Procedure 26(a)(1)(A)(i) requires each party to provide the other with the name and contact information of "each individual likely to have discoverable information along with the subjects of that information that the disclosing party may use to support its claims or defenses." A party must supplement or correct its disclosure under Rule 26(a)(1) in a timely manner if it is incorrect or incomplete. Fed. R.

9

Civ. P. 26(e)(1)(A).  The "failure to disclose in a timely manner is equivalent to failure to disclose. *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998).

The party that fails to identify its witnesses as required by Rules 26(a)(1) and 26(e)(1)(A) "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Rule 37(c)(1).  Here, Federal bears the burden to show its untimely disclosures are substantially justified or harmless.  *Baird v. Burlington N. Santa Fe*, No. 11-1323 (DWF/LIB), 2013 U.S. Dist. LEXIS 189467, at *39 n.8 (D. Minn. Mar. 1, 2013) (quoting *Braun v. Menard Inc.*, 2013 U.S. Dist. LEXIS 3308, at *15 (D. N.D. Jan. 9, 2013) ("[T]he offending party has the burden to demonstrate their conduct was substantially justified or harmless.")).

Rule 37(c)(1) is "designed to avoid . . . gamesmanship . . . [and] to provide a strong inducement for disclosure of Rule 26(a) material." *Pal v. New York University*, No. 06-Civ. 5892, 2008 U.S. Dist. LEXIS 50902, at *7 (S.D.N.Y. June 30, 2008) (quoting *CSC Holdings, Inc. v. Verube,* No 01 Civ. 1650, 2004 WL 3541331, at *3 (E.D.N.Y. July 7, 2004)).  Application of the Rule including the exclusion of witnesses "'not disclosed in compliance with its discovery and pretrial orders is essential' to the judge's control over the case." *Sellers v. Mineta*, 350 F.3d 706, 711 (8th Cir. 2003).

Federal's failure to timely comply with Rules 26(a)(1)(A)(i) and 26(e)(1)(A) is unarguable.  Federal disclosed 16 witnesses it may call in defense of FICO's claims for the first time hours before the close of fact discovery.  *See Reed v. Washington Area Transit Authority*, No. 1:14cv65, 2014 U.S. Dist. LEXIS 89598 (E.D. Va. July 1, 2014)

(disclosure 2 days before the close of discovery not timely); *Pal*, 2008 U.S. Dist. LEXIS 50902, at *8-10 (disclosure on close of discovery not timely).

> **B.    The fact many of the late-disclosed names are on documents or were mentioned in deposition is irrelevant: FICO is not obliged to guess regarding who Federal may call as witnesses or on the topics to which they may testify.**

Federal may blame the victim of its untimely disclosures, arguing that FICO could find the names of these 16 people in the 96,852 pages of documents it produced or by a mention in a deposition.  The argument turns Rule 26(a)(1) on its head.  The duty is on Federal to identify the persons it may call in support of its claims or defenses.  The duty is on Federal to alert FICO of the need to take discovery from the persons disclosed. *Medpace, Inc. v. Biothera, Inc.*, No. 1:12-cv-179, 2013 U.S. Dist. LEXIS 167196, at *6 (S.D. Ohio Nov. 25, 2013); *Pal*, 2008 U.S. Dist. LEXIS 50902, at *9-10.  The disclosure of 16 witnesses on the last day of discovery ensured none would be deposed.

Faced with similar argument, the court in *Reed v. Washington Area Transit Authority*, No. 1:14cv65, 2014 U.S. Dist. LEXIS 89598 (E.D. Va. July 1, 2014), called it a "nonstarter."  The opposing party's awareness of individuals with knowledge "does not excuse [the late-disclosing party] from discharging its Rule 26 obligations to identify the subjects it will elicit for its own defense." *Id.  Accord*, *Pal*, 2008 U.S. Dist. LEXIS 50902, at *9-10.  ("Rule 26(a)(1) requires the disclosure 'not merely that a person is a potential source of information, but that the party may call upon him to provide it.'"); *see also Medpace*, 2013 U.S. Dist. LEXIS 167196, at *5-6 ("[I]it is not sufficient that . . .

11

individuals' names happen to be buried in hundreds of documents gathered through discovery.").

### 1. Deposing Kevin Harkin in a 30(b)(6) capacity does not cure untimeliness of disclosure.

Federal designated Kevin Harkin as its 30(b)(6) witness in response to FICO's Amended Third Notice of Deposition Under Fed. R. Civ. P. 30(b)(6). As noticed, Mr. Harkin was examined in New Jersey on the Rule 30(b)(6) topics on March 25, 2019 – the Monday after Federal's late witness disclosures of March 22. No documents in Federal's production relate to Kevin Harkin. Federal's counsel objected at least five (5) times to questions she perceived as outside the scope of the Rule 30(b)(6) topics. Any suggestion this deposition of Mr. Harkin as a corporate representative cures the prejudice of Federal's untimely disclosure that he may be a trial witness fails of its own weight. *See Reed*, 2014 U.S. Dist. LEXIS 89598, at *8-10 (Rule 30(b)(6) deposition does not cure late disclosure of deponent as a fact witness for trial).

### 2. FICO had no reason to know Federal may call Ewen Setti as a witness at trial.

Ewen Setti is one of thirty-four (34) persons identified in response to FICO's Interrogatories Nos. 2 and 3. (Kliebenstein Decl. Ex. 4.) Interrogatory No. 2 asked for the identity of persons to whom Federal disclosed Blaze Advisor® software. Interrogatory No. 3 asked for the identity of persons that used Blaze Advisor® software. On the last day of discovery, Mr. Setti was first disclosed as a trial witness knowledgeable "regarding Blaze Advisor use in the United Kingdom."

Interrogatory answers that identify Mr. Setti as one of many with relevant knowledge does not fulfill the affirmative duty under Rules 26(a)(1) and 26(e) to timely identify Mr. Setti as a trial witness.  *Pal*, 2008 U.S. Dist. LEXIS 50902, at *9-10 ("Rule 26(a)(1) requires the disclosure 'not merely that a person is a potential source of information, but that the party may call upon him to provide it.'"); *see also Medpace*, 2013 U.S. Dist. LEXIS 167196, at *2 ("[I]it is not sufficient for the purpose of putting an opposing party on notice to simply 'mention […] a name in a discovery response.'")

Federal's trial witness to testify regarding Blaze Advisor use in the United Kingdom is David Gibbs, as disclosed in Federal Insurance Company's Rule 26(a)(1) Supplemental Disclosures dated January 28, 2019.  The untimely March 22 disclosures make no change in this regard. Again, any suggestion FICO should have known Mr. Setti may be a trial witness fails of its own weight.

    **C.**    **The 16 witnesses should be stricken from Federal's Rule 26(a)(1) disclosures under Rule 37(c).**

        **1.**    **Federal's untimely disclosure was not substantially justified.**

Federal cannot sustain its burden to show substantial justification for the late disclosure of these 16 witnesses.  There is no justification, let alone a substantial one. "[T]here is no excuse . . . for failure to supplement where the information was in the responding party's possession at the time the incomplete response was made." *Steady State Imaging, LLC v. GE*, No. 0:17-cv-01048-JRT-KMM, 2018 U.S. Dist. LEXIS 75119, at *25 (D. Minn. May 2, 2018) (quoting 8A C. Wright & A Miller, *Fed. Prac. & Proc. Civ.* § 2049.1, 1993 Expansion of Duty to Supplement or Correct (3d ed.)).

"Delays in disclosure are not 'substantially justified' when they reasonably could have been avoided." *Certain Underwriters at Lloyd's v. SSDD, LLC*, 301 F.R.D. 391, 395 (E.D. Mo. 2014). Undoubtedly, Federal could have supplemented its disclosures years ago. It was aware or should have been aware of all of these persons and their knowledge bearing on the issues of the case. There is no justification for the late disclosure. *Pal*, 2008 U.S. Dist. LEXIS 50902, at *4 (Untimely disclosure not justified because party had the ability to make timely disclosure); *Chemence Med. Prods. v. Quinn*, No. 1:11-CV-1366-CAP, 2014 U.S. Dist. LEXIS 189872, at *9-10 (N.D. Ga. Dec. 30, 2014) (Late disclosure not justified because party knew or should have known of witness and subject matter).

### 2. Federal's late disclosure is not harmless.

Federal's untimely disclosure of 16 new witnesses is not harmless; it is extremely prejudicial. "To suggest that a party is not prejudiced by the inability to depose . . . witnesses who will purportedly testify in a case about the extent of Plaintiff's damages borders on the frivolous." *Lee v. Kmart Corp.*, Civil Action No. 2014-0079, 2016 U.S. Dist. LEXIS 107372, at *46 (D.V.I. Aug. 15, 2016). The failure to disclose 16 witnesses is not inadvertent. *Id.* at *49. A party's ability to order its discovery and select its witnesses for deposition is prejudiced by another party's failure to make sufficient Rule 26(a)(1) disclosures. *See Sender v. Mann*, 225 F.R.D. 645, 656 (D. Colo. 2004).

### 3. Any contention the testimony of these 16 witnesses is important cannot excuse disregard of Rules 26(a)(1) and 26(e).

FICO sought to identify the persons with knowledge of Federal's revenues and profits attributable to the use of Blaze Advisor® software (Interrogatory No. 6) and the persons with knowledge of the business reasons for using Blaze Advisor® software in in its rules-based business applications (Interrogatory No. 7), almost two-years ago. The Requests for Documents Nos. 24-26 and 30-31, served at the same time, further highlighted the subject matter of these late-disclosed witnesses. If these 16 late-disclosed witnesses were important to Federal's defense of FICO's claims, they would have been (and should have been) disclosed much earlier.

Federal's plea of prejudice from exclusion seeks to shift control of the case schedule to itself. But, "[t]he power of the trial court to exclude . . . witnesses not disclosed in compliance with its discovery and other pretrial orders is essential to the judge's control over the case." *Lloyds*, at 395. It is "inconceivable" that Federal "inadvertently" failed to disclose 16 "important" witnesses sooner. *Lee*, 2016 U.S. Dist. LEXIS 107372, at *48-49. Arguments of the alleged significance of the testimony underscore that the late disclosure is not justified.

Arguments of "importance" also heightens the prejudice to FICO from the late disclosure. "[T]o the extent the proposed witness testimony is important, it accentuates the prejudice to respondent arising from surprise. Thus, the importance of the proposed witness testimony is ultimately a neutral factor." *United States v. English*, No. 5:07-HC-2187-D, 2012 U.S. Dist. LEXIS 28719, at *9 (E.D.N.C. Mar. 1, 2012).

### 4. A continuance is not a proper remedy.

The Court has amended the case schedule six times, the last extension of the discovery period giving Federal more time to produce documents and respond to interrogatories, both long overdue. (Dkt. 205.) The case will be three-years old April 21, 2019. Rule 37(c) empowers the Court to control its docket. FICO's right to resolve its claims through trial, without further delay and escalation of litigation costs, will be prejudiced by a continuance. The appropriate remedy for Federal's untimely disclosures is to strike these 16 names and preclude their testimony. *See Pal*, 2008 U.S. Dist. LEXIS 50902, at *15 (finding continuance would prejudice the moving party).

A continuance will result in a "major infusion of factual data into the case long after the fact-gathering portion was slated to be concluded." *Lee*, 2016 U.S. Dist. LEXIS 107372, at *48. FICO's opening expert reports are due April 19, 2019. FICO's rebuttal reports are due May 31, following receipt of Federal's expert reports May 17. Expert discovery is set to close June 28. Re-opening fact discovery will disrupt the proceedings and delay trial. *See id.* At "'some point, discovery must end . . . in order to prepare for trial.'" *Jerome v. Water Sports Adventure Rentals & Equip., Inc.*, Civil Action No. 2009-092, 2013 U.S. Dist. LEXIS 52931, at *7 (D.V.I. Apr. 12, 2013).

Moreover, "to overlook [Federal's] delay would substantially undermine the letter and spirit of the amendments to the federal rules. Rather than encouraging vigilance and compliance, any remedy short of preclusion would encourage others [*sic*] litigants to flout deadlines, safe in the belief that courts will not enforce their own scheduling orders." *Amoah v. McKinney*, No. 4:14-40181-TSH, 2016 U.S. Dist. LEXIS 191864, at

16

*25-26 (D. Mass. Sep. 2, 2016). "The mandate that the rules should be 'construed, administered, and employed by the court and the parties to secure the just, speedy and inexpensive determination of every action and proceeding,' . . . requires that a court not only set deadlines, but thoughtfully apply the federal rules to enforce deadlines." *Id.* at *26 n.9 (quoting Fed. R. Civ. P. 1). The time for fact discovery has ended. FICO is entitled to have its case proceed to trial without further delay.

## IV. Conclusion

Federal's untimely disclosure of 16 new individuals on the last day of discovery was improper and in violation of Rules 26(a) and (e). Federal's untimely disclosure was not substantially justified and was not harmless. The Court should strike the previously undisclosed 16 witnesses from Federal's Rule 26(a)(1) Second Supplemental Disclosures and preclude Federal from offering testimony in any motion, hearing, or at trial.

Dated:  April 5, 2019

MERCHANT & GOULD P.C.

/s/ Heather Kliebenstein
Allen Hinderaker, MN Bar # 45787
Heather Kliebenstein, MN Bar # 337419
Michael A. Erbele, MN Bar # 393635
MERCHANT & GOULD P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, MN  55402-2215
Tel:  (612) 332-5300
Fax:  (612) 332-9081
ahinderaker@merchantgould.com
hkliebenstein@merchantgould.com
merbele@merchantgould.com

*Attorneys for Plaintiff FICO*