

3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

Heather J. Kliebenstein
612.371.5213
hkliebenstein@merchantgould.com

April 5, 2019

**VIA ECF - Filed Under Seal**

Honorable David T. Schultz
United States District Court
9E U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

Re:   *Fair Isaac Corp. v. Federal Insurance Co. et al.*,
      No. 16-cv-01054-WMW-DTS (D. Minn. filed April 21, 2016)

Dear Judge Schultz:

Plaintiff Fair Isaac Corporation ("FICO") seeks the Court's assistance to compel documents that Defendants Federal Insurance Company and ACE American Insurance Co. ("Federal") have improperly clawed back based on privilege. FICO requests that Federal provide the Court with its response to this letter by April 12 and submit the documents at issue for *in camera* review. The specific documents at issue are: FED006458, FED006460, FED006465, FED006467, FED006469, FED006472, FED006480, FED006482, FED010916, FED010919, FED010924, FED010946, FED010954, and FED010956. These spreadsheets were initially produced to FICO as part of Federal's document production. In the original production, the spreadsheets were attachments to emails between non-attorney Federal employees.

On May 11, 2018, Federal clawed back the spreadsheets. Federal told FICO these documents were privileged, inadvertently produced, and requested that FICO return them subject to Paragraph 11 of the Protective Order (the "claw-back provision"). (Dkt.

44.) Pursuant to the Protective Order, FICO destroyed all originals and copies of the clawed-back documents.  Federal did not request return of the email communications that attached the spreadsheets and shared the spreadsheets between Federal employees.  (*See* Exhibit A.)

FICO reviewed the clawed back documents at the time of production and before the claw back request.  FICO's counsel concluded the spreadsheets are compilations of facts gathered as a matter of routine business, and do not reflect legal advice, legal communications, or legal opinions.  As a result, FICO's counsel explored the sufficiency of the privilege claim surrounding the spreadsheets during the January 28, 2019 deposition of Ms. Tamra Pawloski, Federal's former Vice President of Sourcing.



Following Ms. Pawloski's deposition, FICO wrote Federal on March 1, 2019, requesting that Federal reproduce the GSS Spreadsheets.  Federal responded on March 13, 2019, asserting that the GSS Spreadsheets were created at the direction of legal counsel in order to facilitate the rendering of legal advice and therefore are protected by the attorney-client privilege.  FICO respectfully disagrees. The GSS Spreadsheets are compilations of fact that do not warrant the protection of the attorney-client privilege.

The Federal Rules of Civil Procedure allow a party "to obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). As a general matter and because it is an impediment to truth, the scope of the privilege is "strictly construed." *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1978). "In the Eighth Circuit, attorney-client privilege applies when a communication is: (1) confidential; (2) between an attorney and client; and (3) for the purposes of obtaining legal services or advice." *Ewald v. Royal Norwegian Embassy*, Civ. No. 11-CV-

April 5, 2019
Page **3** of **4**

2116 (SRN/SER), 2014 WL 1309095, at *6 (D. Minn. Apr. 1, 2014) (*citing United States v. Horvath*, 731 F.2d 557, 561 (8th Cir. 1984)). The party asserting privilege has the burden of proving the documents at issue are privileged. *See Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985) (the party invoking privilege bears the burden of proving the factual basis for the assertion).

Documents that only list facts (and not legal advice) are not privileged—the privilege only extends to communications. *Upjohn Co. v. U.S.*, 449 U.S. 383. 395–96 (1981) (citation omitted); *see also PaineWebber Grp., Inc. v. Zinsmeyer Trusts P'ship*, 187 F.3d 988, 994 (8th Cir. 1999). Relatedly, communications that only disclose business information are not privileged. *See Simon v. G.D. Searle & Co.*, 816 F.2d 397, 403 (8th Cir. 1987) (finding that the attorney-client privilege does not protect client communications that relate only to business information); *see also In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 675 (D. Kan. 2005) ("Legal advice must predominate for the communication to be protected. The privilege does not apply where the legal advice is merely incidental to business advice.").

Here, a review of the GSS Spreadsheets combined with the Pawloski testimony proves the GSS Spreadsheets are only compilations of underlying facts and business information.



Federal did not claw back the email communications attaching the spreadsheets. (Exhibit A.) These emails were not redacted or listed on a privilege log. The communications relating to the GSS Spreadsheets are not privileged. The conclusion to draw is that the contents of the GSS Spreadsheets are likewise not privileged. As a result, the GSS Spreadsheets are not protected by attorney-client privilege. *See Simon v. G.D. Searle & Co.*, 816 F.2d 397, 403 (8th Cir. 1987) (finding that the attorney-client privilege does not protect client communications that relate only to business information); *see also In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 675 (D. Kan. 2005)

merchantgould.com

("Legal advice must predominate for the communication to be protected. The privilege does not apply where the legal advice is merely incidental to business advice."). ▮

 In Federal's March 13 letter, Federal asserted that the GSS Spreadsheets are privileged because Federal created the documents at the direction of counsel to facilitate the rendering of legal advice. Federal cited *Williams v. Sprint/United Mgmt. Co.*, 238 F.R.D. 633, 638-40 (D. Kan. 2006) for the proposition that corporate employee populated spreadsheets that compile business information are protected under attorney-client privilege when made at the direction of counsel. The Williams case, however, actually supports FICO's position.

 *Williams* involved an anti-age discrimination case brought by a former employee. *Id.* at 635. A discovery dispute arose over so-called adverse impact documents created by Sprint's HR department. *Id.* at 637. These documents were statistical analyses undertaken by the HR department as directed in a memorandum from the legal department. *Id.* The statistical analyses were not a compilation of existing business information. The court held that these statistical analyses were conducted under the direction of the legal department and therefore protected under the attorney-client privilege. Contrastingly, the court found that the compilations of underlying business information used in the statistical analyses were discoverable because compilations of business information are no more privileged than the business information itself. *See Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL-DJW, 2006 WL 1867478, at *7 (D. Kan. July 1, 2006), *review granted in part, cause remanded*, 238 F.R.D. 633 (D. Kan. 2006).

 Similarly, here, the GSS Spreadsheets only contain business information or, at most, compilations of business. FICO does not seek any communication with counsel or counsel's analysis of the business information. FICO only seeks the data–the business information itself. For these reasons, FICO asks the Court to require the production of the GSS Spreadsheets to FICO.

Respectfully,

*Heather Kliebenstein*

Heather J. Kliebenstein

cc: All Counsel of Record (via ECF)