Thomas Carretta - 3/22/2019
Fair Isaac Corporation vs. Federal Insurance Company, et al.
CASE 0:16-cv-01054-DTS  Doc. 460-9  Filed 08/08/19  Page 1 of 5

```
 1                UNITED STATES DISTRICT COURT
                     DISTRICT OF MINNESOTA
 2     -------------------------------------------------------
       FAIR ISAAC CORPORATION,
 3
                          Plaintiff,
 4

 5        v.             Court File No. 16-cv-1054(WMW/DTS)

 6


 7     FEDERAL INSURANCE COMPANY,
       an Indiana corporation, and ACE
 8     AMERICAN INSURANCE COMPANY,
       a Pennsylvania corporation,
 9
                          Defendants.
10     -------------------------------------------------------

11

12


13                      VIDEO DEPOSITION OF

14                        THOMAS CARRETTA

15                        MARCH 22, 2019

16                           9:31 A.M.

17

18

19

20

21

22

23
                                                    EXHIBIT
24
                                                       9
25
```

**EXHIBIT 9**

Thomas Carretta - 3/22/2019
Fair Isaac Corporation vs. Federal Insurance Company, et al.
CASE 0:16-cv-01054-DTS Doc. 460-9 Filed 08/08/19 Page 2 of 5

```
 1                    VIDEO DEPOSITION of THOMAS CARRETTA,
 2        taken pursuant to Notice and agreement of and
 3        between counsel at the offices of Fredrikson &
 4        Byron, P.A., 200 South Sixth Street, Suite 4000,
 5        Minneapolis, Minnesota, at approximately 9:31
 6        a.m. on March 22, 2019, before Jodi M.
 7        Weisenburger, Notary Public, County of Hennepin,
 8        State of Minnesota, to be used in the
 9        above-entitled cause.
10
11                       A P P E A R A N C E S:
12
13        On behalf of Plaintiff(s):
14            Heather J. Kliebenstein, Esquire
              MERCHANT & GOULD, P.C.
15            3200 IDS Center
              80 South Eighth Street
16            Minneapolis, Minnesota 55402
              612-371-5213
17            Hkliebenstein@merchantgould.com
18
19        On behalf of Defendant(s):
20            Leah Janus, Esquire
              FREDRIKSON & BYRON, P.A.
21            200 South Sixth Street, Suite 4000
              Minneapolis, Minnesota 55402
22            612-492-7000
              Ljanus@fredlaw.com
23
24        ALSO PRESENT: Jim Woodward.
          VIDEOGRAPHER: Kurt Glenn
25
```

Thomas Carretta - 3/22/2019
Fair Isaac Corporation vs. Federal Insurance Company, et al.
CASE 0:16-cv-01054-DTS Doc. 460-9 Filed 08/08/19 Page 3 of 5

**Page 12**

1 Europe too? Does that work for you?
2 A. Well, United Kingdom is a group of countries, but
3 if you want to say it was in Europe broadly, yes,
4 it was in Europe broadly.
5 Q. I just want to make clear because sometimes in the
6 record it's referred to as use in Europe, but
7 you're using United Kingdom, so I just wanted to,
8 I guess, clarify. Are those --
9 A. United Kingdom is part of Europe, yes.
10 Q. Right. And so that is one use that you've
11 identified that FICO contends is outside the scope
12 of the license --
13 A. Yes.
14 Q. -- correct? Okay.
15    You've identified use in Canada as being
16 outside of the scope of the license, correct?
17 A. Yes.
18 Q. And then you've identified use in Australia as
19 being outside the scope of the license, correct?
20 A. Yes.
21 Q. Are there any other uses that FICO alleges --
22    And you've identified use after the
23 merger, correct?
24 A. That's right.
25 Q. Those are -- I would say those are the four

**Page 13**

1 categories that you've identified so far this
2 morning as forming the basis for FICO's claims
3 that there was use outside of the scope of the
4 license.
5    Are there any other uses that FICO
6 alleges in this lawsuit were outside of the scope
7 of the license?
8    MS. KLIEBENSTEIN: Hold on just a second.
9 I'll just pop in with an objection. I think this
10 line of questioning calls for a legal contention.
11    I'll also note that Mr. Carretta is not
12 designated under the protective order to receive
13 Chubb AEO information. So he's here to testify on
14 behalf of what FICO knows generally outside of
15 what's been learned in the lawsuit to the best
16 that he can kind of bridge those two things. You
17 can go ahead.
18    MS. JANUS: Well, that's a choice that you --
19 I mean, he's here to testify to FICO's position in
20 the lawsuit, so if he hasn't been provided with
21 certain information that informs FICO's position,
22 that's on you. I mean, this is the topic and he's
23 here to provide testimony on it. So your
24 objection is on the record, but I don't think you
25 can limit the scope of his testimony by not giving

**Page 14**

1 him certain information.
2    MS. KLIEBENSTEIN: He is here to testify
3 based on FICO's knowledge that's separate and
4 apart from what's been worked up by outside
5 counsel, so that's the distinction that I'm trying
6 to make.
7    It's the same as with the damages topic
8 when the judge said if there's facts that FICO
9 knows pre-complaint outside of working up the case
10 in the lawsuit, you can provide a factual witness
11 on that. So it's the same sort of concept when it
12 comes to questions about the claims or other legal
13 things like that.
14    He's prepared. I just wanted to get it
15 on the record. You can ask your questions and
16 we'll move through it.
17    MS. JANUS: Okay. Well, just so the record
18 is clear, I expect that he's going to be providing
19 the full extent of the factual basis for claims of
20 unlicensed use in this lawsuit which I think is a
21 really basic thing that we're entitled to
22 discover.
23    Back to my question. So I'll start over
24 so that you can recall where we were. You had
25 identified four categories of unlicensed use, or

**Page 15**

1 alleged unlicensed use. One was use after the
2 merger, correct?
3    THE WITNESS: Yes.
4    BY MS. JANUS:
5 Q. One was use in Europe or the United Kingdom,
6 correct?
7 A. Yes.
8 Q. One was use in Canada?
9 A. Yes.
10 Q. And one was use in Australia?
11 A. Yes.
12 Q. Okay. Are there any other alleged uses that FICO
13 asserts in this lawsuit were unlicensed?
14 A. It's -- no, it's what's stated in the complaint,
15 and that includes those four items.
16 Q. Does any use by -- strike that.
17    Does any use in the United States
18 pre-merger form the basis for FICO's claims in
19 this lawsuit?
20 A. In the United States?
21 Q. Correct.
22 A. No, I don't recall.
23 Q. Is the answer no?
24 A. No, I think the answer is I don't recall. The way
25 this came about is we became aware of the merger,

Thomas Carretta - 3/22/2019
Fair Isaac Corporation vs. Federal Insurance Company, et al.
CASE 0:16-cv-01054-DTS Doc. 460-9 Filed 08/08/19 Page 4 of 5

Page 16

1 and the merger has a prohibition against the
2 assignment, and so our knowledge of what people
3 were doing within Chubb & Sons and/or a broader
4 organization affiliated with Chubb Corporation or
5 set of companies, our knowledge was that, okay,
6 the merger occurred, that triggers the
7 anti-assignment clause which says no use may be
8 made because there's no assignment, and then
9 thereafter, we looked at and discovered that there
10 were these other instances -- or I should say -- I
11 don't want to confuse the word instance from a
12 technology standpoint with events -- of somebody
13 using the software outside of the United States,
14 and that's when we came to know that there were
15 these other elements or instances of use, the
16 three that we talked about, Europe, Australia and
17 Canada.
18 Q. Okay. And my question was, does any use within
19 the United States pre-merger form the basis for
20 FICO's claims in the lawsuit?
21 A. The use that we're aware of is -- pre-merger
22 wasn't known. It was only until the merger that
23 we became known of any other misuses or what we
24 characterize as misuse.
25 Q. Okay. And so I'm trying -- you understand the

Page 17

1 reason for my question, right?
2 A. No.
3 Q. I'm trying to understand what FICO is claiming in
4 this lawsuit --
5 A. Uh-huh.
6 Q. -- specifically how FICO claims that the
7 defendants in the lawsuit breached the license
8 agreement. My question I think is pretty
9 straightforward.
10     Does any use within the United States
11 prior to the merger form the basis for FICO's
12 claim in this lawsuit?
13 A. And as I've indicated, the answer is no, we
14 weren't aware of any of that type of use prior to
15 the merger. We thought everything was fine.
16 Q. Okay. So -- well, the way you're phrasing it is
17 in the past tense. I'm asking present tense here.
18 I'm asking, do FICO's claims -- are FICO's claims
19 based in any way on use within the United States
20 prior to the merger?
21 A. No.
22 Q. Okay. So FICO's position is that all of the use
23 within the United States prior to the merger was
24 within the scope of the license agreement?
25 A. That's not what I testified.

Page 18

1 Q. I'm asking the question. I'm not telling you what
2 you testified. I'm asking the question.
3 A. The answer is no.
4 Q. So explain to me how the answer is no.
5 A. Because that knowledge is unique to Chubb & Sons,
6 so there may be things that we never knew about
7 but that we didn't raise in the lawsuit. Only
8 Chubb & Sons would know if they're using all the
9 licenses correctly; in other words, we didn't have
10 any claim that we were aware of prior to that, to
11 the merger, and it's only because of the merger
12 that we got into this.
13 Q. Okay. So do you have any claim that you're aware
14 of now based on use within the United States prior
15 to the merger?
16 A. Just what's stated in the complaint.
17 Q. That's not my question. I'm asking you for an
18 answer to my question.
19 A. Well, I'm referring to a document that explains
20 our claims.
21 Q. Not very well. So I've asked you a question.
22 Could you answer it?
23 A. Well, I don't believe we made a claim for any use
24 prior to the merger for Chubb & Sons in the United
25 States.

Page 19

1 Q. That's not my question. I asked any use. I'm not
2 limiting it to --
3 A. Well, Chubb was using the software in the United
4 States, of course.
5 Q. I'm asking you whether --
6     (The question was read back by the court
7         reporter.)
8     THE WITNESS: In the United States, no.
9 (Exhibit No. 393 was marked for identification.)
10 BY MS. JANUS:
11 Q. Showing you what's been marked as document 393, do
12 you recognize this document?
13 A. Yes.
14 Q. Okay. What is it?
15 A. It is a complaint by Fair Isaac Corporation versus
16 Chubb & Son.
17 Q. And is this the operative complaint in the
18 lawsuit?
19 A. Yes.
20 Q. After you've had a chance to --
21     Are you familiar with the document?
22 A. Generally, yes.
23 Q. Okay. Could you point to me where in this
24 document the conduct or the use that forms the
25 basis of FICO's claims is described?

Thomas Carretta - 3/22/2019
CASE 0:16-cv-01054-DTS Doc. 460-9 Filed 08/08/19 Page 5 of 5
Fair Isaac Corporation vs. Federal Insurance Company, et al.

1 A. Section 14, Section 22, and then -- I should
2 stand -- correct that. Section 14 through Section
3 21, and then Section 22 through Section 28, and
4 then Section 29 through 31, and then Section 32
5 through 35.
6 Q. Okay. So if we go back to Section 14 on page 3 of
7 Exhibit 393, does this section describe the
8 alleged unlicensed use post merger with ACE?
9 A. It describes the transaction with ACE and the
10 Chubb parent, Chubb Corporation, and then it
11 describes the clauses in the agreement that
12 provide for a no assignment or a change in
13 control, and then some additional facts along
14 those lines as stated in the complaint.
15 Q. So this relates to that category of post merger
16 use constituting a violation of the license
17 agreement according to FICO?
18 A. Yes, from the moment of the merger.
19 Q. Okay. Then let's look at Paragraph 22 through 28.
20 A. Okay.
21 Q. What does this section of the complaint relate to?
22 A. This is talking about Chubb & Son having disclosed
23 to third parties -- third parties meaning
24 non-Chubb & Sons -- in the United Kingdom, Canada
25 and Australia, and those folks -- or those persons
Page 20

1 using the software.
2 Q. And --
3 A. Or being disclosed to the software. I should
4 correct myself there.
5 Q. Is it your understanding that these entities in
6 the United Kingdom, Canada and Australia are Chubb
7 entities in those areas?
8     MS. KLIEBENSTEIN: Objection, vague.
9     THE WITNESS: No, that's not my
10 understanding. My understanding is that Chubb &
11 Son is a division of Federal, Federal is a
12 subsidiary of Chubb Corporation in some form or
13 fashion because there's a lot of entities within
14 the Chubb Corporation umbrella, and that the
15 United Kingdom and Canada persons are affiliates
16 of Chubb Corporation, and that the Australian was
17 a third party.
18 BY MS. JANUS:
19 Q. So your understanding is that United Kingdom and
20 Canada --
21 A. No, I'm sorry, unrelated third party.
22 Q. Okay. So your understanding is that United
23 Kingdom and Canada are -- the uses in the United
24 Kingdom and Canada were by entities that were in
25 the Chubb group of corporations. Is the first
Page 21

1 part correct?
2 A. I think maybe the better way to say it is the
3 entities in Canada and the United Kingdom were not
4 Chubb & Sons.
5 Q. Right, but that's not my question even if that's
6 the way you want to say it.
7     My question is, so for the United Kingdom
8 and Canada, the entities that engaged in the use
9 that FICO is complaining about were within the
10 Chubb group of entities?
11 A. Yes.
12 Q. The claim is that those entities were not, quote/
13 unquote, affiliates of Chubb & Son, a division of
14 Federal, correct?
15 A. That is correct.
16 Q. Okay. Australia you said is an -- your
17 understanding is that entity is an unrelated third
18 party?
19 A. Right, our understanding is that it was a
20 consultant that was working with a Chubb entity.
21 Q. Who was that?
22 A. The Chubb entity or the consultant?
23 Q. The consultant.
24 A. It was a third party. I don't recall the name of
25 the affiliate -- or excuse me, of that third
Page 22

1 party, just that it was a third party by its name.
2 It was different.
3 Q. Okay. And is there any other alleged unlicensed
4 use in Australia other than what you've described
5 as being use by a consultant?
6 A. Not that I'm aware of. I don't recall. This is
7 what was in the complaint.
8 Q. Right, I understand this is what's in the
9 complaint, but I'm asking you for additional
10 information about FICO's claims. You're providing
11 testimony that's not in the complaint. You
12 understand that, right?
13 A. Only what may have been learned through the
14 discovery process, so --
15 Q. And you just don't know what that is?
16 A. No.
17 Q. So can you tell me as you sit here today what
18 facts form the basis for FICO's claim that use in
19 Australia was unlicensed?
20 A. Yes. The license agreement clearly states that no
21 third parties may have access to the software, and
22 so in this instance -- there was one exception
23 made in the contract. So the contract is outlined
24 who can touch the software, who can access the
25 software and who can use the software. So there's
Page 23