UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY, an Indiana corporation, and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation,<br><br>    Defendants. | Court File No. 16-cv-1054 (WMW/DTS)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR LEAVE TO FILE AMENDED ANSWER** |

## INTRODUCTION

Defendants Federal Insurance Company and ACE American Insurance Company (collectively, "Federal") seek leave to file an Amended Answer adding applicable statutes of limitations as affirmative defenses. These defenses apply to FICO's breach of contract and copyright claims alleging that Federal and its affiliates used and installed the Blaze Advisor software outside of the United States.

Federal can show "good cause" under Federal Rule of Civil Procedure 16 for this amendment because it was notified on July 26, 2019 in FICO's Motion for Summary Judgment that FICO is seeking damages for claims barred by these statutes of limitations. (Dkt. No. 398.) Additionally, FICO will not be prejudiced by this amendment because it has already taken complete discovery on the facts relevant to these defenses and because it cannot change the relevant facts (installation dates) even with additional discovery. In fact, it is Federal that will be prejudiced if it is not permitted to assert its statutes of

limitations defenses because FICO had every opportunity to clarify that it was asserting these barred claims, but waited until now. Accordingly, this Court should grant Federal leave to file the attached Proposed Amended Answer to FICO's Second Amended Complaint. (Declaration of Terrence J. Fleming, Ex. A.)

## BACKGROUND

**I.  FICO's Motion for Summary Judgment makes clear that it is seeking damages for conduct that is not actionable under the applicable statutes of limitations.**

Prior to filing its Motion for Summary Judgment FICO had not made its position clear regarding the significance of the "Territory" definition found in the 2006 License Agreement that is the subject of this dispute. (Fleming Decl., Ex. 1 at FICO0000208.) In its Motion, however, FICO clarified that it believes this definition only "addressed installation and physical location, *not usage.*" (Dkt. No. 398 at 14) (emphasis added). FICO further elaborated on this position, stating that "[u]nder the Agreement, Chubb & Son (through its employees) could use Blaze Advisor to support business operations outside the United States so long as the installation and physical location of Blaze Advisor was in the United States." (*Id.* at 15.) Based on this, it appears that FICO has settled on an interpretation of the License Agreement that may allow foreign use of the software, but which prohibits foreign installations.

As FICO shifted its focus from alleged unauthorized use to allege unauthorized installation, it also began relying on evidence of conduct that is not actionable under the applicable statutes of limitations. (*See* Dkt. No. 398 at 8, 16-17.) FICO identified emails from May 2009, which appear to show Federal transmitting the "installation instructions"

2

for Blaze to Europe.  (*Id.* at 8.)  It also identified emails from December 2010 that appear to show Federal's Canadian affiliate installing the software.  (*Id.*)  FICO did not identify any such dates for the Australian affiliate that is also the subject of its claims, nonetheless, FICO does argue that based on these emails it has somehow made out a *prima facie* case for breach and is entitled to summary judgment because "installation of Blaze Advisor outside the United States is undisputed."  (*Id.*)

To be clear, FICO is still alleging that use outside of the United States by Federal's foreign affiliates violated the License Agreement, but it is now relying entirely on the term "client" in the License Agreement to do so and not on the Territory definition.  The opening recitals to the License Agreement state:

> This Software License and Maintenance Agreement ("Agreement") is entered into as of June 30, 2006 ("Effective Date") between Fair Isaac Corporation ("Fair Isaac") and Chubb & Son, a division of Federal Insurance Company ("Client") . . .

(Fleming Decl., Ex. 1 at FICO0000208.)  FICO argues based on this opening recital that the true party to the License Agreement was Federal's unincorporated division, Chubb & Son, which has no foreign affiliates.  Indeed, as Federal points out, "Chubb & Son is an unincorporated division of Federal. It is not a legal entity. It is incapable of having 'affiliates.'"  (Dkt. No. 398 at 16.)  FICO thus argues that even though Federal upgraded its license by amendment to an "enterprise-wide" agreement covering all of its "affiliates," that "it is impossible to give the affiliate language of Amendment Two meaning, because Amendment Two is with Chubb & Son, an unincorporated division." (Fleming Decl., Ex. 1 at FICO0000226-228; Dkt. No. 398 at 16.)  Of course, this strained

interpretation is unnecessary if one simply recognizes that Federal is the licensee as well as Chubb & Son because a corporation and its subparts are one in the same, but that is an argument for the Court to resolve on summary judgment.  For present purposes, FICO's logic has potentially shifted the focus of this litigation to foreign acts of installation by Federal, which occurred outside the statutes of limitations periods.

## II.     FICO has consistently alleged that Federal breached the License Agreement by *using* Blaze outside of the United States.

The current deadline for amending pleadings has remained unchanged since the Court issued its first Scheduling Order.  (Dkt. No. 40.)  That deadline is June 1, 2017.  (Dkt. No. 205.)  The deadline for non-dispositive motions in the current Scheduling Order is July 12, 2019.  (*Id.*)

FICO's operative pleading is its Second Amended Complaint, which it filed with the Court's permission on September 11, 2018.  (Dkt. Nos. 131-132.)  Federal did not oppose FICO's Motion to Amend outside of the scheduling order's deadlines and instead filed its operative Amended Answer on October 10, 2018.  (Dkt. No. 137.)

In its Second Amended Complaint, FICO asserts claims for breach of contract and copyright infringement based on allegations that Federal violated the terms of the License Agreement.  (Dkt. No. 132, ¶¶ 44-53.)  A portion of FICO's claims has consistently been based on allegations that Federal violated the License Agreement by using Blaze outside of the United States and by allowing its foreign affiliates to do the same.  (*See* Dkt. No. 1, ¶¶ 22-28; Dkt. No. 36, ¶¶ 22-28; Dkt. No. 132 ¶¶24-30.)  The only reference to a territorial limitation in the License Agreement is a "Territory" definition, which is not

incorporated into the body of the Agreement:  "'Territory', with respect to the installation and physical location of the Fair Isaac Products, means the United States of America." (Fleming Decl., Ex. 1 at FICO0000208.)

Nowhere in FICO's three Complaints did it ever state that it believes the License Agreement authorizes "use" of Blaze outside of the United States as FICO has now stated in its Motion for Summary Judgment.  Nor does FICO mention or explain the significance of any restriction on "installation" of the software in any of its Complaints.

### III. Throughout this litigation FICO has alleged that the Territory definition prohibited Federal from using Blaze outside of the United States.

The first time that FICO made contact with Federal about this dispute in January 2016, one week prior to the merger of Federal's parent, FICO's Michael Sawyer wrote that "Chubb currently has a perpetual Enterprise Wide License . . . for use in the territory of the US." (Fleming Decl., Ex. 2.)  Shortly thereafter, FICO's in-house counsel, Thomas Carretta, wrote to Federal that he felt the negotiations had been "exasperated by finding two non-compliant applications outside the authorized U.S. territory."[1]  (*Id.*, Ex. 3.)  In his final demand letter prior to filing suit, Carretta wrote that "FICO had become aware of a further material breach due to the use of the Software outside the United States." (*Id.*, Ex. 4.)

During discovery in this litigation, FICO also responded to Federal's discovery requests in ways that did not make its position on foreign use and installation clear.

---

[1] Discovery has revealed that Carretta's suggestion that he had just learned of use outside of the United States was a falsehood, likely aimed at exerting additional leverage over Federal during pre-suit negotiations.  (*See* Dkt. No. 316 at 5-6.)

When Federal asked FICO to identify the "third parties" that "received access to [Blaze] in violation of the agreement," Federal identified only foreign entities and "non-compliant applications outside of the United States." (*Id.*, Ex. 5 at 5.) FICO also provided multiple responses to an interrogatory asking it to "[d]escribe and quantify the damages you are seeking based on Federal's alleged disclosure of the Blaze Advisor software to third parties." (*Id.*, Exs. 5 at 6-7; Ex. 6 at 6-8; Ex. 7 at 6-9.) In these responses FICO consistently characterized its damages as being based on "unlicensed use," not unlicensed installation, outside of the United States. (*Id.*)

In depositions as well, the testimony from FICO's witnesses did not make FICO's position clear. Federal's counsel asked Carretta in his first deposition whether "in terms of the territory clause, installation and physical location, in your view, means use?" (*Id.*, Ex. 8 at 105:21-23.) Carretta responded yes, that it was his understanding that the Territory definition required use, installation, and physical location all to occur "[i]n the United States." (*Id.* at 105:24; *see also* 57:24-59:24; 103:22-24 (Q. "Is installation and physical location the same as use, in your view?" A. I view it that way.").) Months later in Carretta's Rule 30(b)(6) deposition, Federal's counsel asked him "are FICO's claims based in any way on use within the United States prior to the merger?" (*Id.*, Ex. 9 at 17:18-20.) Carretta responded "No." (*Id.* at 17:21.) Based on testimony like this, Federal was led to believe that FICO's position was that, in FICO's view, the License Agreement contained some prohibition on *using* the software outside of the United States and that this prohibition was the Territory definition.

FICO's recent expert reports concerning damages continues this trend. FICO's damages expert, Neil Zoltowski, quantified FICO's damages as being $21.3 million in lost licensing fees resulting from "improper usage" of the software and only identified foreign entities as unlicensed users prior to the merger. (*Id.*, Ex. 10 at 38.) Zoltowski also sorted the software applications that FICO alleges were unlicensed into "foreign" and "domestic" categories. (*Id.* at 33-36.) Further, FICO's software industry expert, Brooks Hilliard, testified that if the Territory definition were removed from the License Agreement, that this "would open usage outside of the territory, where the territory limits installation and physical location." (*Id.*, Ex. 11 at 151:7-12.) Hilliard also did not respond to Federal's software industry expert, Dr. Steven Kursh, who wrote in his expert report that "installation and use are the same with respect to Blaze . . . [t]his is consistent with Mr. Carretta's deposition testimony." (*Id.*, Ex. 12 at 22 n.20.)

As recently as last month, FICO relied exclusively on the Territory definition as evidence that "[t]he Agreement contains a territorial limitation" in a discussion that repeatedly referenced foreign "use" of the software. (Dkt. No. 324 at 7-10.) FICO did not make the "installation" or "Client" arguments it made in its summary judgment briefing just a few weeks later. (Dkt. No. 398 at 8, 14-16.)

On top of these shifting positions, FICO's representations made statutes of limitations defenses seem irrelevant to its claims by limiting its damages calculations for "improper usage" to the applicable limitations periods. (Fleming Decl., Ex. 10 at Schedule 5.0 at Note (c).) Indeed, during Zoltowski's deposition FICO produced corrected damages calculations, which Zoltowski explained as being necessary because

he had misapplied the statutes of limitations periods previously.  (*Id.*, Ex. 13; Ex. 14 at 206:5-208:9.)

After all this, FICO's Motion for Summary Judgment reveals that this portion of FICO's contract and copyright claims could rise and fall based on whether discrete acts of installation occurred inside or outside the applicable limitations periods.  FICO should not be able to rely on otherwise non-actionable conduct to support any portion of its claims now and, thus, Federal moves the Court for leave to amend its Answer to assert statutes of limitations as affirmative defenses.

## ARGUMENT

**I.      Legal Standard.**

Rule 15 allows a party to amend its pleadings before, during, and after trial.  Fed. R. Civ. P. 15(a)-(b).  Where a party seeks leave to amend before trial, the court "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a); *Dennis v. Dillard Dep't Stores, Inc.*, 207 F.3d 523, 526 (8th Cir. 2000) (allowing party to amend answer three months before trial where discovery had closed and summary judgment motions were fully briefed).

When a party's motion to amend falls outside of the deadlines set forth in the court's scheduling order, however, Rule 16(b)(4)'s "good cause" standard for altering the scheduling order controls instead.  *Hofmann v. Enter. Leasing Co. of Minnesota, LLC*, No. 13-CV-255 (JNE/SER), 2014 WL 12601038, at *2, *5 n.7 (D. Minn. Oct. 15, 2014) (finding good cause to grant plaintiff leave to amend complaint even after Defendant had filed its summary judgment and *Daubert* motions).  The good cause standard focuses on

the moving party's diligence in attempting to comply with the scheduling order, and whether granting leave to modify the scheduling order would result in prejudice to the non-moving party. *Id.* Additionally, "even where some prejudice to the adverse party would result if the motion to amend were granted, that prejudice must be balanced against the hardship to the moving party if it is denied." *Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 690, 694 (8th Cir. 1981) (granting plaintiff leave to amend complaint two and a half years after filing of initial complaint).

Finally, under District of Minnesota Local Rule 16.3, in addition to establishing good cause, any motion to alter a scheduling order must "explain the proposed modification's effect on any deadlines."

## II.    Federal has good cause for its proposed amendment.

Federal has good cause for seeking to amend its Answer to add statutes of limitations as affirmative defenses. Federal promptly filed this Motion after FICO clarified its interpretation of the territorial scope of the License Agreement in its Motion for Summary Judgment, which FICO filed on July 26, 2019. (Dkt. No. 398 at 14.)

Prior to this filing, a statute of limitations defense seemed inapplicable here because FICO appeared to be arguing that Federal had violated the License Agreement and committed copyright infringement merely by "using" Blaze outside of the United States. FICO focused on "use" in its initial pre-suit negotiations. (Fleming Decl., Exs. 2-4.) FICO has consistently characterized its damages as resulting from "improper usage" of Blaze, not improper installations. (*Id.*, Exs. 5 at 6; Ex. 6 at 6-8; Ex. 7 at 6-9; Ex. 10 at 38.) FICO's in-house counsel testified that he thought that in this case use and

9

installation were synonymous. (*Id.*, Ex. 8 at 103:22-24; 105:21-23.) If FICO's position was that the License Agreement allowed use, as differentiated from installation, outside of the United States, then it never made this clear to Federal despite having numerous opportunities to do so, including in briefing that occurred just last month. (*See* Dkt. No. 324 at 7-10). Because FICO represented that it was not seeking damages from outside the limitations periods, and using software is an ongoing act, Federal did not suspect that the statutes of limitations could serve as a defense to liability for discrete acts like software installations.

As the court recognized in *Hofmann v. Enterprise Leaving Co. of Minn., LLC*, a party has "good cause" to file an amended pleading under Rule 16 when a party makes the significance of a fact clear for the first time, even when this occurs during dispositive briefing. No. 13-CV-255 (JNE/SER), 2014 WL 12601038, at *5 n.7 (D. Minn. Oct. 15, 2014). In *Hofmann*, the Court allowed the plaintiff to amend his complaint to add a new defendant a year after the scheduling order's deadline for doing so when the defendant produced an affidavit from a material witness. *Id.* at *2. The witness clarified that he had examined the truck and its tires, which were involved in the crash that gave rise to the dispute. *Id.* The defendant argued that the plaintiff could not show good cause because there was evidence in the record already that suggested the mechanic had examined the truck and its tires and that plaintiff's counsel should have followed up on this evidence earlier. *Id.* at *4. The Court rejected defendant's argument because even though plaintiff had known about the mechanic previously, the significance of the

mechanic—his work on the vehicle's tires—was not known until the affidavit was produced. *Id.*

Here, as in *Hofmann*, the significance of the relevant evidence did not become clear until now. Federal seeks to preserve its ability to assert a potentially meritorious defense in the, albeit unlikely, event in which the Court sides with FICO and finds that the Territory definition restricts foreign acts of installation. In this scenario, FICO's Motion for Summary Judgment shows that it will try to support its breach of contract and copyright infringement claims by relying on conduct that occurred in 2009 and 2010 – outside of applicable limitations periods. Therefore, these discrete acts of installation have gained newfound significance in this case, just like the mechanic's conduct in *Hofmann*, thereby providing Federal with good cause to assert these defenses outside of the prior deadlines for doing so.

### III. FICO will not be prejudiced by this amendment.

As noted above, in considering whether Federal should be granted leave to amend, the Court should also consider the comparative prejudices that may result from its decision. *Buder*, 644 F.2d at 694. Here, Federal could be significantly prejudiced in the scenario in which Federal is subjected to liability for conduct that would otherwise not be actionable. On the other hand, the prejudice to FICO from allowing amendment is slight.

FICO would not be prejudiced by granting Federal leave to assert statutes of limitations defenses because it cannot change the facts regarding when installation occurred. Any claim by FICO that it would require additional discovery to confront a statute of limitations defense is meritless because it would amount to arguing that FICO

11

can change the facts as to the relevant installation dates, which FICO apparently already knows about and intends to rely on in support of its claims. (*See* Dkt. No. 398 at 8.) If the Court determines that installations were the breaching conduct at issue, then FICO cannot change whether those installations occurred in 2009 or at any other time. Therefore, reopening discovery would serve no purpose if the Court grants Federal leave to file its Amended Answer. This also means Federal can satisfy Local Rule 16.3 because allowing this amendment would not affect the deadlines in the current Scheduling Order.[2]

Additionally, FICO has already taken complete discovery on the issue of Blaze installation. FICO's Rule 30(b)(6) Notice of Deposition issued prior to the beginning of depositions identified multiple topics related to installation, including identification of each entity related to Federal that "installed the Blaze Advisor software on its servers from June 2006 to the date of the deposition, *including the date of each such installation.*" (Fleming Decl., Ex. 15.) (emphasis added) FICO's counsel deposed Federal's Henry Mirolyuz regarding these topics. (*See, e.g.*, *id.*, Ex. 16 at 22:20-22 (FICO's counsel: "Let me turn to a series of questions that are really all around the physical location of servers on which Blaze Advisor is installed…").) FICO did not request additional discovery on the topic of installation following its first deposition of Mirolyuz and it had at least nine months to do so before discovery closed in April. (*See* Dkt. No. 205.) Indeed, FICO has relied on Mirolyuz's testimony in its Motion for

---

[2] The Parties are currently engaged in dispositive briefing. Federal plans to assert statutes of limitations as defenses in that briefing pending the Court's decision on this Motion. Thus, no alteration to the current dispositive briefing schedule is necessary and Federal satisfies Local Rule 16.3 for this reason also.

Summary Judgment as well as other evidence regarding installation dates, which suggests that it has everything it needs on this topic. (Dkt. No. 398 at 8.)

Accordingly, the only prejudice here is to Federal and its ability to assert all applicable defenses to FICO's claims. Finally, FICO's discovery conduct as well as its explicit acknowledgment in its expert reports that these limitations periods apply to its claims means that there would be no "unfair surprise" from granting Federal leave to amend either. *See Interplan Architects, Inc. v. C.L. Thomas, Inc.*, No. 4:08-CV-03181, 2010 WL 4366990, at *38 (S.D. Tex. Oct. 27, 2010) ("If the affirmative defense is raised at a pragmatically sufficient time, and the party opposing the defense is not prejudiced in its ability to respond, a court may hold that the defense is not waived.").

## IV. Federal's statutes of limitations defenses are not futile.

A party opposing a motion to amend has "the burden of establishing that leave to amend would be futile." *Woodmen of the World Life Ins. Soc'y v. U.S. Bank Nat'l Ass'n*, No. 8:09-cv-407, 2012 WL 12884816, at *3 (D. Neb. Sept. 4, 2012) (internal quotations and alterations omitted). Futility is a high bar, which suggests the Court should leave the determination of these defenses on the merits to be decided as part of the Court's summary judgment ruling. *See id.* ("likelihood of success on the new claim or defense is not a consideration for denying leave to amend unless the claim is clearly frivolous or legally insufficient on its face").

In any case, FICO cannot satisfy its burden of showing futility because in the scenario where a statute of limitations defense becomes applicable, Federal would have a meritorious defense under either New York's six year statute of limitations for breach of

13

contract claims or the Copyright Act's three year period for infringement claims. 17 U.S.C. § 507(b); N.Y. C.P.L.R. § 213.

The Copyright Act provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). New York law provides that a breach of contract action "must be commenced within six years" after the claim accrued. N.Y. C.P.L.R. § 213. Here, FICO alleges, in part, that Federal breached the License Agreement through discrete acts of installation. (Dkt. No. 398 at 13.) It has alleged that these installations took place in Europe in May 2009 and in Canada in December 2010. (*Id.* at 8.) Under the applicable statutes of limitations, however, Federal cannot be held liable for breach of contract damages resulting from conduct that occurred prior to April 2010 and it cannot be held liable for copyright damages from conduct that occurred prior to April 2013. Accordingly, any of FICO's infringement claims premised on installations that occurred prior to April 2013—presumably including Europe and Canada—and any breach of contract claims premised on installations that occurred prior to April 2010—presumably including at least Europe—are barred by the relevant statutes of limitations. Therefore, Federal's statutes of limitations defenses are not futile.

## **CONCLUSION**

Federal respectfully requests that the Court grant it leave to file its Amended Answer to FICO's Second Amended Complaint.

14

|  |  |
|---|---|
| Dated:  August 8, 2019 | *s/Terrence J. Fleming* <br> Terrence J. Fleming (#0128983) <br> tfleming@fredlaw.com <br> Leah Janus (#0337365) <br> ljanus@fredlaw.com <br> Christopher D. Pham (#0390165) <br> cpham@fredlaw.com <br> **FREDRIKSON & BYRON, P.A.** <br> 200 South Sixth Street, Suite 4000 <br> Minneapolis, MN 55402-1425 <br> (612) 492-7000 (tel.) <br> (612) 492-7077 (fax) <br> <br> *Attorneys for Defendants* |