# Exhibit 6
## (Filed Under Seal)

Message

**From:** jwblack@chubb.com [jwblack@chubb.com]
**Sent:** 6/26/2006 3:52:21 PM
**To:** Boone, Jandeen M [jandeenboone@fairisaac.com]
**Subject:** Software License w/ Chubb Revisions
**Attachments:** Blaze Form Software License and Maintenance Services Agreement 06 02 06 Chubb Rev.doc

Jandeen,

I have attached the S.L.A. with some Chubb revisions let me know when you would like to schedule a call to review.

Thanks Jim

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

James W. Black
Associate Contract Manager
Vendor Management
908-903-2054
15 Mountain View Road
Warren, NJ 07059
Mail Stop M1-051

This message, including any attachments, contains confidential information intended for a specific individual and purpose, and is protected by law. If you are not the intended recipient, you should delete this message and are hereby notified that any disclosure, copying, or distribution of this message, or the taking of any action based on this message, is strictly prohibited.

PENGAD 800-631-6989
DEPOSITION
EXHIBIT
JFS
309
Boone 2-6-19
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**SOFTWARE LICENSE AND MAINTENANCE AGREEMENT**
**Blaze Advisor**

This Software License and Maintenance Agreement ("**Agreement**") is entered into as of ___________, 2006 ("**Effective Date**") between Fair Isaac Corporation ("**Fair Isaac**") and Chubb & Son, a division of Federal Insurance Company ("**Client**") and describes the terms and conditions under which Fair Isaac shall provide to Client the Blaze Advisor products and related maintenance services described below.

**1. Definitions**

The following terms, as used in this Agreement with initial capital letters, in the singular or the plural, will have the meanings set forth below. Other terms may be defined in context within this Agreement:

**"CPU"** means a single core central processing unit. For multi-core central processing units, each core will count as one "CPU".

**"Documentation"** means the *Blaze Advisor User Guide* provided in either HTML or PDF format.

**"Fair Isaac Products"** means the Blaze Advisor products listed in Section 1 of Exhibit A. The Blaze Advisor Development product allows a developer to utilize design and testing tools and to run a non-production deployment environment for testing use only. The Blaze Advisor Deployment product consists of the Blaze Advisor Rule Server and Engine and allows the software to be run on a system handling production-level processing.

**"Seat"** means an identified individual user on a single personal computer or workstation.

**"Territory"** means ~~the United States of America~~World-wide.

**2. License Grant**

2.1 License Grant to Fair Isaac Products. Subject to the terms, conditions and limitations of this Agreement, Fair Isaac hereby grants to Client a perpetual and irrevocable, nonexclusive, world-wide license to the Intellectual Property Rights of the Licensed Software and Documentation for ~~non-exclusive, non-transferable, limited license to use the Fair Isaac Products during the Term for its internal~~ business purposes, but only within the Territory, and subject to the additional limitations set forth below and/or listed in Exhibit A.

In the event Fair Isaac develops a new generation or variation of the Licensed Software hereunder (a "New Product") during the Term, whether such New Product is intended for use with an operating system not yet developed or with a new release of an operating system specified in the License, upon Licensor's receipt of Licensee's written request and without additional charge, such New Product shall be added to this license for use by Licensee as provided herein, even if Licensor then determines to charge a separate license fee for the New Product to Licensor's other licensees.

(a) Seat/CPU License. If the "Scope/Quantity" of the license for any Fair Isaac Product is designated in Exhibit A as limited to a specified number of "Seats" or "CPUs", then Client's use of such Fair Isaac Product shall not exceed the number of Seats or CPUs, as applicable, that are set forth in Exhibit A for such Fair Isaac Product.

(b) Named Application License. If the "Scope/Quantity" of the license for any Fair Isaac Product is designated in Exhibit A as "Named Application", then, subject to any "Seat" or "CPU"

Formatted: Don't adjust space between Latin and Asian text, Don't adjust space between Asian text and numbers

Formatted: Font: (Default) Times New Roman, 11 pt, Complex Script Font: Times New Roman, 11 pt

Formatted: Complex Script Font: 11 pt

Formatted: Font: (Default) Times New Roman, 11 pt, Complex Script Font: Times New Roman, 11 pt

Formatted: Font: (Default) Times New Roman, 11 pt, Complex Script Font: Times New Roman, 11 pt

Formatted: Complex Script Font: 11 pt

limitation that may also apply, Client may use such Fair Isaac Product only in connection with the particular Named Application of Client that is defined in Exhibit A. Under no circumstances may Client use such Fair Isaac Products on a stand-alone basis or in connection with any other application.

[(c) Enterprise-Wide License. If the "Scope/Quantity" of the license for any Fair Isaac Product is designated in Exhibit A as "Enterprise-Wide", then Client may use such Fair Isaac Product on an unlimited number of Seats or CPUs, as applicable; provided, however, that such use is for Client's use only and not for use by any of Client's affiliated, subsidiary, or parent companies.] *[Delete if not applicable.*

*]*

2.2 **Delivery, Installation and Acceptance Testing**

(a) Delivery. Within Five (5) business days of the Effective Date, Fair Isaac shall deliver the Licensed Software and Documentation to Client as specified in Schedule A ("Delivery Schedule") and shall promptly commence with installation of the Licensed Software.

(b) Acceptance Testing by Client. Client shall have thirty (30) days (the "Acceptance Period") after the installation in which to perform Acceptance Testing in a live environment on Client's systems in order to demonstrate to Client that the Licensed Software functions in accordance with the Documentation and the Acceptance Criteria.

(c) Corrections. Fair Isaac shall promptly correct all errors or Non-Conformities with the Licensed Software and Documentation.

(d) Acceptance. Client will accept the Licensed Software on or prior to the end of the Acceptance Period if the Licensed Software has performed during the last twenty (20) consecutive business days without any "Major Error". Client shall make such acceptance in a signed writing.

(e) Failure of Acceptance Testing. In the event that the Licensed Software fails to operate without Major Error for twenty (20) consecutive business days Client may, at its sole option, continue, or permit Fair Isaac to Continue, Acceptance Testing until such time as the Licensed Software operates for twenty (20) consecutive business days without Major Error. At any time during this period, Client retains the right to terminate this agreement pursuant to Section 3.2.4

(f) Option to Terminate. If Client does not accept by ***Final Acceptance Date***, Fair Isaac may be deemed in material breach of this Agreement. In such an event, Client shall have the right to terminate this Agreement and shall be entitled to reimbursement by Fair Isaac of all fees and amounts actually paid to Fair Isaac hereunder and shall return to Fair Isaac the Licensed Software and Documentation

~~2.2 License to Documentation. Subject to the terms, conditions, and limitations of this Agreement, Fair Isaac grants to Client a non-exclusive, non-transferable, limited license to use the Documentation during the Term for its internal business purposes, but only within the Territory, and only in accordance with Client's license grant of the applicable Fair Isaac Product. Client shall not have the right to modify the Documentation, combine the Documentation with other works, or create derivative works from the Documentation without Fair Isaac's written permission. In the event that Fair Isaac does give permission, such modifications, combinations, or derivatives which include the Documentation shall become Fair Isaac's intellectual property and be used only in support of Client's permitted use of the Fair Isaac Product.~~

**Comment [U1]:** Covered with the changes to 2.1

**Formatted:** Complex Script Font: 11 pt

**Formatted:** Font: (Default) Times New Roman, 11 pt, Complex Script Font: Times New Roman, 11 pt

**Formatted:** Indent: First line: 0.5"

**Formatted:** Font: (Default) Times New Roman, 11 pt, Complex Script Font: Times New Roman, 11 pt

**Formatted:** Font: (Default) Times New Roman, 11 pt, Complex Script Font: Times New Roman, 11 pt

**Formatted:** Font: (Default) Times New Roman, 11 pt, Complex Script Font: Times New Roman, 11 pt

**Formatted:** Font: (Default) Times New Roman, 11 pt, Complex Script Font: Times New Roman, 11 pt

**Formatted:** Font: (Default) Times New Roman, 11 pt, Complex Script Font: Times New Roman, 11 pt

**Formatted:** Indent: First line: 0.5"

**Formatted:** Font: (Default) Times New Roman, 11 pt, Complex Script Font: Times New Roman, 11 pt

**Formatted:** Font: (Default) Times New Roman, 11 pt, Complex Script Font: Times New Roman, 11 pt

**Formatted:** Font: (Default) Times New Roman, 11 pt, Complex Script Font: Times New Roman, 11 pt

**Formatted:** Font: (Default) Times New Roman, 11 pt, Complex Script Font: Times New Roman, 11 pt

**Formatted:** Justified

~~2.3 Platforms/Options. Client obtains the right to use only the version of the Fair Isaac Product for the specific supported platform(s) that are noted in Exhibit A (i.e., Java, COBOL or .NET). If no platform is noted in Exhibit A, Client has the right to use the Fair Isaac Product only for the supported platform(s) that is(are) initially delivered to Client. If Client desires versions of the Fair Isaac Product for additional supported platforms, an additional fee applies. Unless specifically noted as being purchased in the Exhibit A, Client does not obtain any right to options or additional related products (e.g., Compiled Sequential, SmartForms) by virtue of its purchase of a license to the Fair Isaac Product.~~

3. **Rights and Restrictions**

3.1 License Restrictions. Client represents and warrants that it and its employees shall use the product for the purposes of: (1) using, modifying, displaying, and performing the Licensed Software on Client's LANs for information processing and other activities related to the Licensed Software's intended use; (2) using, displaying, and performing the Documentation by any of Client's users of the Licensed Software, (3) using, modifying, displaying, and performing the Licensed Software in connection with backup, failover and disaster recovery procedures in the event of destruction or corruption of the Licensed Software or disasters or emergencies which require Client to initiate disaster recovery procedures; (4) reproducing and distributing a reasonable number of copies of the Licensed Software and Documentation for archival or emergency purposes, and for the purposes necessary to fully utilize the license rights granted in subsections (1) through (3) of this section; (5) sublicense the Licensed Software and Documentation to third parties for the purposes of providing Client with information processing services, subject to the prior approval of the Fair Isaac, which approval shall not be unreasonably withheld.~~not: (i) use the Fair Isaac Products or Documentation for any purpose other than the internal business operations of Client or in any other manner that exceeds the scope of any license granted under this Agreement or that otherwise constitutes a breach of this Agreement; (ii) alter, change, modify, adapt, translate or make derivative works of the Fair Isaac Products; (iii) reverse engineer, decompile, disassemble, or otherwise attempt to reduce the object code of any Fair Isaac Products to human perceivable form or permit others to do so; (iv) disclose the Fair Isaac Products to, or permit the use or access of the Fair Isaac Products by, any third party or by any individuals other than the employees of Client; (v) assign, sublicense, lease, transfer or distribute the Fair Isaac Products, or operate any Fair Isaac Product for timesharing, rental, outsourcing, or service bureau operations (or otherwise for the benefit of any party other than Client), or train persons other than permitted users, (vi) disclose or publish performance benchmark results for any Fair Isaac Product without Fair Isaac's prior written consent; or (vii) (if applicable) use any provided third party software except as solely in conjunction with the Fair Isaac Product.~~

3.2 Reservation Of Rights Not Granted. Fair Isaac reserves all rights not expressly granted to Client under this Agreement. Without limiting the foregoing, Fair Isaac retains and reserves sole and exclusive worldwide right, title and interest in and to the Fair Isaac Products, Documentation, any custom code developed in whole or part by Fair Isaac (if applicable), and any other Fair Isaac software or materials, and in all patents, trademarks, copyrights, trade secrets, and all other intellectual property and proprietary rights therein, and any Fair Isaac know-how related thereto, subject to only the limited, non-exclusive, license rights granted herein. Nothing in this Agreement shall limit in any way Fair Isaac's right to develop, use, license, create derivative works of, or otherwise exploit Fair Isaac intellectual property or to permit third parties to do so.

3.3 Permission for Back-Up Copy. Client may reproduce the object code of the Fair Isaac Product and the Documentation for the purposes of exercising the license rights granted under this Agreement on a backup CPU/Server in the event of a malfunction that renders the primary CPU/Server inoperable. This license shall only be effective for the period of such inoperability or the expiration or termination of the primary license to the Fair Isaac Product, whichever first occurs.

3.4 Notice Reproduction. To the extent Client is provided reproduction rights, Client must reproduce on each copy of the Fair Isaac Product and Documentation any copyright, patent, or trademark notice, and any other proprietary legends that were provided in the originals.

3.5 Verification and Audit Rights. On Fair Isaac's written request, Client shall provide to Fair Isaac a written certification executed by an authorized officer of Client that provides the following information: (i) verification that the Fair Isaac Products are being used in accordance with the provisions of this Agreement; (ii) list of the locations at which the Fair Isaac Products are or have been operated during the preceding twelve (12) month period; and (iii) the number of Seats, CPU's and/or applications accessing or utilizing the Fair Isaac Products (as applicable).

3.6 Fair Isaac acknowledges that Client's information technology infrastructure operations have been outsourced to ACS Commercial Solutions, Inc. ("ACS) and Fair Isaac hereby grants ACS, its affiliates and their respective employees, agents, consultants and subcontractors ("Outsourcer Parties") the right to use the Licensed Software on behalf of Client for the sole and exclusive purpose of fulfilling ACS' obligations to provide information technology services to Client. Client and Outsourcer Parties may remotely access the Licensed Software from worldwide locations where direct sales or export of the Licensed Software is not prohibited by the U.S. Government, and may install and use the Licensed Software on computer equipment located at Client's locations and/or one or more locations owned, leased, operated, controlled or managed by Outsourcer Parties. Notwithstanding the foregoing, Client and Outsourcer Parties shall use the License Software subject to the Grant of License above.

~~Upon not less than ten (10) days prior written notice to Client, Fair Isaac may, at its expense, audit Client's use of the Fair Isaac Products. Any such audit shall be conducted during regular business hours at Client's facilities and shall interfere as little as reasonably possible with Client's business activities. Audits shall be conducted no more than twice annually. If Client is discovered to be using more licenses than the number of licenses Client has purchased, or in the event Fair Isaac learns that Client has materially breached this Agreement as determined by such audit, then Client shall bear the expense of such audit.~~

**4. Services**

4.1 Maintenance Services. Subject to the payment of the applicable Maintenance Fees described in Exhibit A, Fair Isaac shall provide Client with the Maintenance Services described in Exhibit B.

4.2 Other Services. From time to time, Fair Isaac may provide Client with professional services related to the Fair Isaac Product as mutually agreed between the parties. Such professional services shall be performed only upon the execution of a Statement of Work which references the Master Services Agreement, entered into by and between the parties on June 9___, 2006.

**5. Warranties and Limitation of Liability**

~~5.1 Conformity to Specifications. Subject to Client's compliance with the terms and conditions of this Agreement, Fair Isaac warrants that the Fair Isaac Product will conform in all material respects to its Documentation for a period of thirty (30) days from the initial date of delivery. Fair Isaac will, at its own expense and as its sole obligation, and Client's exclusive remedy, for any breach of this warranty, correct any reproducible error in the Fair Isaac Product reported to Fair Isaac by Client in writing (along with all information available to Client that is relevant to verifying, diagnosing, or correcting the error) or replace the Fair Isaac Product during the warranty period.~~

~~5.2 WARRANTY DISCLAIMER. Fair Isaac does not warrant that the Fair Isaac Products, Documentation or Maintenance Services will (i) meet Client's requirements, (ii) operate in combination~~

Formatted: Font: (Default) Times New Roman, 11 pt, Complex Script Font: Times New Roman, 11 pt

Formatted: Font: (Default) Times New Roman, 11 pt, Complex Script Font: Times New Roman, 11 pt

Formatted: Font: (Default) Times New Roman, 11 pt, Complex Script Font: Times New Roman, 11 pt

Formatted: Font: (Default) Times New Roman, 11 pt, Complex Script Font: Times New Roman, 11 pt

Formatted: Font: (Default) Times New Roman, 11 pt, Complex Script Font: Times New Roman, 11 pt

Formatted: Font: (Default) Times New Roman, 11 pt, Complex Script Font: Times New Roman, 11 pt

Formatted: Font: (Default) Times New Roman, Complex Script Font: Times New Roman, 11 pt

Formatted: Font: 11 pt, Complex Script Font: 11 pt

Formatted: Font: 11 pt, Complex Script Font: 11 pt

Formatted: Font: 11 pt, Complex Script Font: 11 pt

Formatted: Complex Script Font: 11 pt

Comment [U2]: We have a 3rd party agreement with ACS to manage our IT infrastructure and it does not permit on-site Audits

with hardware, software, systems or data not expressly specified in writing by Fair Isaac, (iii) meet any performance level, resource utilization, response time, or system overhead requirements, or (iv) operate uninterrupted, free of errors, or without delay. Fair Isaac is not responsible for problems caused by: (a) use of the Fair Isaac Products outside the scope of this Agreement or the Documentation; (b) modification, alteration or changes to the Fair Isaac Products (or tangible copy thereof) not made by Fair Isaac; (c) changes in, or modifications to, the operating characteristics of the Client's system or any component thereof that is inconsistent with the requirements of the Documentation; (d) use of the Fair Isaac Products with hardware or software that is not represented in the Documentation as interoperable with the Fair Isaac Products; or (e) accident, physical, electrical or magnetic stress, unauthorized alterations, failure of electric power, environmental controls, or causes other than ordinary use. EXCEPT FOR THE EXPRESS WARRANTIES SET FORTH IN THIS ARTICLE 5, FAIR ISAAC MAKES NO OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, UNDER THIS AGREEMENT AND HEREBY DISCLAIMS ALL OTHER EXPRESS OR IMPLIED WARRANTIES, INCLUDING ANY WARRANTIES REGARDING MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND ANY WARRANTY ARISING FROM A COURSE OF DEALING, USAGE, OR TRADE PRACTICE. CLIENT IS SOLELY RESPONSIBLE FOR ITS USE OF ANY PRODUCTS, SERVICES, AND DELIVERABLES PROVIDED BY FAIR ISAAC UNDER THIS AGREEMENT AND FOR ANY LIABILITY ARISING OUT OF DATA OR CONTENT SUPPLIED BY CLIENT.

5.4 LIMITATION OF LIABILITY. IN NO EVENT WILL FAIR ISAAC BE LIABLE UNDER ANY THEORY OF RECOVERY (INCLUDING BREACH OF CONTRACT, WARRANTY, NEGLIGENCE, TORT AND STRICT LIABILITY) FOR ANY INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, CONSEQUENTIAL (INCLUDING, BUT NOT LIMITED TO, LOSS OF INCOME, PROFIT OR SAVINGS) OR PUNITIVE DAMAGES ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT OR ANY FAIR ISAAC PRODUCT OR SERVICE, EVEN IF FAIR ISAAC HAD BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND EVEN IF SUCH DAMAGES WERE REASONABLY FORESEEABLE. WITHOUT LIMITING THE FOREGOING, FAIR ISAAC'S AGGREGATE LIABILITY IN CONNECTION WITH THIS AGREEMENT UNDER ANY AND ALL THEORIES OF RECOVERY (INCLUDING BREACH OF CONTRACT, WARRANTY, NEGLIGENCE, TORT AND STRICT LIABILITY) SHALL BE LIMITED TO THE AMOUNT PAID BY CLIENT (EXCLUDING IMPLEMENTATION FEES AND REIMBURSED EXPENSES) FOR THE APPLICABLE FAIR ISAAC PRODUCT OR SERVICE DURING THE 12 MONTHS IMMEDIATELY PRECEDING THE DATE OF THE MOST RECENT CLAIM THAT GAVE RISE TO SUCH LIABILITY. 5.1 Title. Fair Isaac represents and warrants that it has full title to and ownership of the Licensed Software and Documentation and all Intellectual Property Rights embodied in or used in connection therewith, free and clear of liens, claims, and encumbrances, and that it has full power and authority to grant the licenses in Section 2 above.

5.2 System Warranty. Fair Isaac represents and warrants that (i) the Licensed Software shall be free from defects in material and workmanship; (ii) the Licensed Software will operate and perform in accordance with the Documentation and Acceptance Criteria.

5.3 Regulatory Compliance Warranty. Fair Isaac represents and warrants that the Licensed Software and Documentation complies with all applicable federal, state or local rules, regulations or laws.

5.4 Non-Interference Warranty. Fair Isaac represents and warrants that the Licensed Software and each component thereof, does not and will not contain any pre-programmed devices, such as "viruses", "time bombs", "worms", "Trojan horses", "time locks", "drop dead devices" or other such devices, that will cause the Licensed Software, LAN(s), Client's system, or any component thereof, to become damaged, erased, inoperable or incapable of accurately processing or storing information.

5.5 Support Services Warranty. Fair Isaac represents and warrants that it shall provide the Support Services in accordance with Section 5.

5.6 Year 2000 Warranty. Fair Isaac represents and warrants that the Licensed Software shall be capable of storing, retrieving, interfacing and processing completely and accurately all data and information involving dates beyond December 31, 1999.

5.7 Intellectual Property Warranty. Fair Isaac represents and warrants that the Licensed Software and Documentation, or any portions thereof, and Client's use thereof, shall not infringe upon the rights of any third party, including the Intellectual Property Rights of any third party. All title, right, and interest in the Intellectual Property Rights shall remain with Fair Isaac and Client obtains only the license as specified above, except that the Intellectual Property Rights in any modifications made to the Licensed Software by Client or at Client's expense shall remain in Client.

5.8 Most Favored Customer. Fair Isaac represents and warrants that all prices, charges, benefits, warranties and terms granted to Client pursuant to this Agreement are substantially similar to, or more favorable to, Client than the prices, charges, benefits, warranties and terms that Fair Isaac has heretofore offered to any other person or entity for the Licensed Software, Software Upgrades, and Documentation covered by this Agreement. If at any time during the first twelve (12) months after the Effective Date of this Agreement, Fair Isaac shall contract with any other person or entity for prices, charges, benefits, warranties or other terms more favorable to such person or entity, Fair Isaac shall notify Client of such more favorable terms and Client, at its option, may require that such more favorable prices, charges, benefits, warranties or other terms be available to Client under this Agreement, retroactive to the date of any such contract.

5.9 Remedies. In the event that Fair Isaac does not meet the warranties described in this section, Client may elect, at its sole discretion, (i) to have Fair Isaac provide, immediately and at no cost to Client, the necessary hardware, software, products and services required to attain the levels or standards set forth in said warranties, or (ii) to exercise its right, in addition to any other rights and remedies Client may have hereunder, to terminate this Agreement, require Fair Isaac to remove the Licensed Software and refund to Client all amounts paid to Fair Isaac hereunder.

5.10 Disclaimer. EXCEPT FOR THE WARRANTIES IN THIS AGREEMENT, Fair Isaac MAKES NO OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE WITH RESPECT TO THE LICENSED SOFTWARE, SOFTWARE UPGRADES, AND THE DOCUMENTATION.

5.11 EXCLUDED LIABILITY. EXCEPT FOR LOSS OR DAMAGE CAUSED BY TORTIOUS ACTS OR OMISSIONS, NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR CONSEQUENTIAL DAMAGES OF ANY KIND (INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOSS OF BUSINESS PROFITS, BUSINESS INTERRUPTION, OR LOSS OF BUSINESS INFORMATION), REGARDLESS OF WHETHER THE PARTY LIABLE OR ALLEGEDLY LIABLE WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW OF THE POSSIBILITY. **SECTION 5.11 DOES NOT APPLY IF THE LOSS OR DAMAGE IS CAUSED BY A BREACH OF SECTION 5.7.**

**6. Indemnification**

6.1 6.1 (a) Fair Isaac, at its own expense, shall indemnify and hold harmless Client and its directors, officers, employees, agents, successors, assigns, and customers, and defend any action brought against Client, with respect to any claim, demand, cause of action, debt, liability or expense, including attorney's fees and court and settlement costs, due to claims arising from or related to Fair Isaac's violations of any federal, state or local rules, regulations or laws or, related to any allegation by any third party that the Licensed Software or Documentation, the interfaces, or any portion of the system developed by Fair Isaac or Client's

use thereof, violates any Intellectual Property Rights of such third party or breaches any of the Fair Isaac's obligations under any other agreement or relationship.

6.1 (b) Fair Isaac, at its own expense, shall indemnify and hold harmless Client and its directors, officers, employees, agents, successors, assigns, and customers, and defend any action brought against Client, with respect to any claim, demand, cause of action, debt, liability or expense, including attorneys fees and court and settlement costs, due to claims arising from or related to Fair Isaac's breach of any representations, warranties or obligations hereunder.

6.1 (c) Client reserves the right to assign counsel of its own choosing to act as second chair in any action in which Client is or may be a named party.

6.1 (d) Section 6.1 (b) shall survive the expiration or termination of this Agreement.

~~Intellectual Property Indemnification. Fair Isaac will defend at its own expense any action against Client brought by a third party to the extent that the action is based upon a claim that the Fair Isaac Product directly infringes any U.S. registered patent or U.S. registered copyright, or misappropriates any trade secret recognized as such under the Uniform Trade Secrets Act, and Fair Isaac will pay those costs and damages finally awarded against Client in any such action that are specifically attributable to such claim or those costs and damages agreed to in a monetary settlement of such action.~~

6.2 Conditions. Fair Isaac's indemnification obligations under this Article are conditioned upon: (a) Client notifying Fair Isaac promptly in writing of such action; ~~(b) Client giving Fair Isaac sole control of the defense thereof and any related settlement negotiations;~~ (b~~c~~) Client's compliance with the terms and conditions of this Agreement, including without limitation the license(s) granted by Fair Isaac; and (c~~d~~) Client cooperating with Fair Isaac in such defense ~~(including without limitation, by making available to Fair Isaac all documents and information in Client's possession or control that are relevant to the infringement or misappropriation claims, and by making Client's personnel available to testify or consult with Fair Isaac or its attorneys in connection with such defense)~~.

6.3 Fair Isaac's Options. If the Fair Isaac Product becomes, or in Fair Isaac's opinion is likely to become, the subject of an infringement or misappropriation claim, Fair Isaac may, at its option and expense, either: (a) procure for the Client the right to continue to exercise the Fair Isaac Product license; (b) replace or modify the Fair Isaac Product so that it becomes non-infringing; or (c) if neither option (a) or (b) is available, terminate Client's license for the Fair Isaac Product concerned.

6.4 Exclusions. Notwithstanding the foregoing, Fair Isaac will have no obligation with respect to any infringement or misappropriation claim based upon: (a) any violation of the terms of Client's license or any license restrictions, or for use of the Fair Isaac Product for any purpose not intended by Fair Isaac; (b) any combination or use of the Fair Isaac Product with other products, equipment, software, or data not supplied or approved in writing by Fair Isaac; (c) any modification of the Fair Isaac Product pursuant to specifications required by client or any modification made by any entity other than Fair Isaac; or (d) any claim of infringement or misappropriation that would have been avoided had Client upgraded to a new version or release of the Fair Isaac Product.

6.5 ENTIRE LIABILITY. THIS ARTICLE STATES FAIR ISAAC'S ENTIRE LIABILITY AND CLIENT'S SOLE AND EXCLUSIVE REMEDY FOR INFRINGEMENT AND ALL INFRINGEMENT AND MISAPPROPRIATION CLAIMS AND ACTIONS

**7. Confidential Information**

The Terms and Conditions of the Confidentially Agreement between Client and Fair Isaac are on file in the Master Service Agreement at both Companies and shall apply to this License Agreement.

**Formatted:** Justified, Keep with next, Keep lines together

**Formatted:** Underline

**Formatted:** Complex Script Font: 11 pt

**Formatted:** Font: (Default) Times New Roman, Not Bold, No underline, Complex Script Font: Times New Roman, 11 pt

**Formatted:** Indent: First line: 0.5"

**Formatted:** Font: (Default) Times New Roman, Not Bold, No underline, Complex Script Font: Times New Roman, 11 pt

**Formatted:** Font: (Default) Times New Roman, Not Bold, No underline, Complex Script Font: Times New Roman, 11 pt

**Formatted:** Font: (Default) Times New Roman, Not Bold, No underline, Complex Script Font: Times New Roman, 11 pt

**Formatted:** Font: (Default) Times New Roman, Not Bold, No underline, Complex Script Font: Times New Roman, 11 pt

**Formatted:** Font: (Default) Times New Roman, Not Bold, No underline, Complex Script Font: Times New Roman, 11 pt

7.1 Confidential Information. A party receiving Confidential Information under the Agreement is referred to as "Recipient," and a party disclosing Confidential Information is referred to as "Discloser." For the purposes of the Agreement, "Confidential Information" is described as follows and shall include any information which relates to: the financial and/or business operations of the Discloser, including, but not limited to, marketing and product plans, ideas, concepts, business plans, financial condition, employees, inventions, algorithms, decision technology and/or models, processes, designs, specifications, drawings, samples, improvements, developments, applications, engineering, manufacturing and marketing data and plans, software code (object and source), functionality, security procedures and approaches, know-how, customer names and information, experimental work, distribution arrangements and trade secrets, and/or ideas. Such Confidential Information may be produced in a variety of forms, including but not limited to: any and all verbal, electronic, and/or written communications (whether in the form of slides, handouts, letters, memoranda, agreements, facsimile transmissions, meetings, conference and other telephone calls, diskettes, files, tapes, and/or any other mode) and/or related concepts, proposals, data sources, pricing, schedules, development efforts (including source code, object code and/or documentation), numerical data processing algorithms, product and software design specifications. The Fair Isaac Products, Documentation and related materials shall be deemed the Confidential Information of Fair Isaac.

Formatted: No underline

Formatted: Font: Not Bold

Formatted: Font: Not Bold

Formatted: Font: Not Bold

Formatted: Font: Not Bold

7.2 Purpose for Disclosure. Recipient may use Confidential Information of the Discloser only for the purposes of exercising its rights and fulfilling its obligations under the Agreement.

Formatted: No underline

Formatted: Font: Not Bold

7.3 Limitations on Disclosure and Use. Recipient agrees to use the same degree of care, but no less than a reasonable degree of care, to protect against the unauthorized disclosure or use of Discloser's Confidential Information as it uses to protect its own Confidential Information. Recipient agrees to disclose Confidential Information only to its employees who have a need to know for the above stated purpose, and who are bound by obligations of confidentiality no less restrictive than the terms of the Agreement. Recipient shall not remove any proprietary notices of Discloser from Discloser's Confidential Information. During the course of the Agreement, the Recipient may from time to time provide the Discloser with comments, suggestions or other input regarding the Discloser's Confidential Information. The Recipient agrees that the Discloser has an unrestricted, worldwide, royalty-free right to use such comments, suggestions, or other input for any purpose and in any manner, and to authorize others to do so.

Formatted: No underline

Formatted: Font: Not Bold

7.4 Exclusions. Recipient shall have no obligation under the Agreement as to Confidential Information of Discloser which: (a) is known to Recipient at the time of disclosure; (b) is independently developed by Recipient without reference to or use of the Discloser's Confidential Information; (c) is obtained by Recipient without restriction on disclosure or use from another source without a breach of any obligation of confidentiality owed by such source to Discloser; or (d) is or becomes part of the public domain through no wrongful act of Recipient or any party that obtained the information from Recipient. If Recipient is served with any subpoena or other legal process or a court or governmental request or order requiring or purporting to require the disclosure of any of Discloser's Confidential Information, Recipient shall, unless prohibited by law, promptly notify Discloser of such fact and cooperate fully (at Discloser's expense) with the Discloser and its legal counsel in opposing, seeking a protective order, seeking to limit, or appealing any such legal process, request, or order to the extent deemed appropriate by the Discloser.

Formatted: No underline

Formatted: Font: Not Bold

7.5 Injunctive Relief. The parties acknowledge that the remedies at law for breach of any covenant relating to the protection of Confidential Information may be inadequate, and each party shall be entitled to seek injunctive relief for any breach of the provisions of the Agreement relating to the protection of its Confidential Information or intellectual property rights. Nothing contained in this Section shall be construed as limiting the parties' rights to any other remedies at law, including the recovery of damages for breach of the Agreement.

Formatted: No underline

**8. Payment Terms**

8.1 Invoices and Payment. Client will pay within the greater of (a) forty-five (45) days of the invoice date; or (b) thirty (30) days of Client's actual receipt of invoices, for Services rendered and expenses incurred under this Agreement, except for those invoices subject to a good faith dispute by Client. Client shall notify Fair Isaac within twenty (20) days of actual receipt of an invoice that it intends to dispute said invoice. . Client reserves the right to "Quick Pay" any and all invoices, under the following discount plan: 2% 10, or 1.5% 15 net 45.

~~Client shall pay the fees and charges set forth in Exhibit A. All fees, charges, and expenses invoiced under this Agreement will be due and payable by Client in United States Dollars within thirty (30) days of Client's receipt of an invoice. Each unpaid invoice shall bear a late charge of 1.5% per month, or the maximum rate permitted by law, whichever is less. In addition to all other remedies available at law or in equity, if any payment is not received by Fair Isaac within thirty (30) days from the date of the invoice, Fair Isaac shall have the right to terminate the pertinent product license or service after giving Client written notice and thirty (30) days to cure. Client shall reimburse Fair Isaac for all costs related to any proceedings to collect any past due amounts, including without limitation all attorneys' fees and expenses. Except as otherwise expressly provided in this Agreement, no refunds are available.~~

8.2 Expenses. **Outlined in section 3 of the Master Service Agreement**~~Prices do not include reasonable travel and associated out-of-pocket expenses incurred by Fair Isaac, which are billed to Client at cost. Client agrees to reimburse Fair Isaac for all such travel-related expenses Fair Isaac incurs in connection with this Agreement.~~

8.3 Taxes and other Charges. Client shall be solely responsible for, and shall pay or reimburse Fair Isaac for, all Taxes. "**Taxes**" means all present and future taxes, duties, import deposits, assessments, and other governmental charges (and any related penalties and interest), however designated, that are now or hereafter imposed by or under any governmental authority or agency that are: (i) associated with the performance by Fair Isaac of its obligations hereunder; (ii) associated with the payment of any amount by Client to Fair Isaac pursuant to this Agreement; (iii) based on the license or use of any Fair Isaac Product; or (iv) associated with the importation of any Fair Isaac Product into any country other than the United States, excepting only taxes imposed on Fair Isaac's net income by the United States and each state thereof (and their political subdivisions). To the extent Client is required to withhold income taxes on any payment made to Fair Isaac pursuant to applicable tax law, Client may withhold such tax to the extent such tax (a) does not exceed the appropriate withholding amount applicable under relevant tax treaties and (b) qualifies as a creditable foreign tax by the United States government. Client agrees to send the appropriate certified tax receipt to Fair Isaac promptly upon payment of such tax. If a certified tax receipt issued by the taxing authority evidencing such payment and suitable for Fair Isaac to obtain a tax credit in the United States is not received by Fair Isaac within thirty (30) days after the date of the invoice, Client will be responsible for paying the full invoice amount.

~~8.4 Mode of Payment. Client agrees to remit all payments due to Fair Isaac in accordance with the instructions provided in the invoice or other instructions provided by Fair Isaac.~~

9. **Term**

9.1 Term. Unless earlier terminated, this Agreement and the license(s) granted hereunder shall commence upon the Effective Date and shall continue in full force in perpetuity, or, if applicable, for the duration of the applicable license term set forth in Exhibit A if such term is not perpetual ("**Term**").

9.2 Events of Termination. This Agreement may be terminated upon the occurrence of any of the following events:

Formatted: No bullets or numbering, Tab stops: Not at -0.5" + 0"

Formatted: Font: (Default) Times New Roman, Complex Script Font: Times New Roman, 11 pt

Formatted: Font: (Default) Times New Roman, Complex Script Font: Times New Roman, 11 pt

Formatted: Font: (Default) Times New Roman, Complex Script Font: Times New Roman, 11 pt

Formatted: Font: (Default) Times New Roman, Complex Script Font: Times New Roman, 11 pt

Formatted: Font: (Default) Times New Roman, Complex Script Font: Times New Roman, 11 pt

Formatted: Font: (Default) Times New Roman, Complex Script Font: Times New Roman, 11 pt

Formatted: Font: 12 pt

(a) Uncured Breach. Either party may terminate this Agreement for a breach by the other party of any of the material terms of this Agreement, or numerous breaches of duties or obligations hereunder that cumulatively constitute a material breach if the breaching party fails to cure the breach(es) within 30 days from receipt of written notice from the non-breaching party identifying the breach(es) and requiring them to be remedied.

(b) Insolvency. Either party may terminate this Agreement if the other party ceases to conduct business in the ordinary course or is declared insolvent or bankrupt, or makes an assignment of substantially all of its assets for the benefit of creditors, or a receiver is appointed, or any proceeding is demanded by, for or against the other party under any provision of bankruptcy or insolvency legislation.

(c) Violation of License or Confidentiality Obligations. Fair Isaac may immediately terminate this Agreement, without a requirement for prior notice or a cure period, if Client violates any terms of the licenses granted in this Agreement. Either party may immediately terminate this Agreement by written notice to the other party if the other party materially breaches any of the provisions of this Agreement relating to the protection of Confidential Information or Intellectual Property.

(d) Termination for Convenience. Client may, upon written notice, at any time during the term of this Agreement, terminate this Agreement without cause and for any reason whatsoever. Upon such a termination, Client shall pay Fair Isaac the fees due for all Services performed as of the time of termination.

Formatted: Font: (Default) Times New Roman, 11 pt, Complex Script Font: Times New Roman, 11 pt

9.3 Effect of Termination. Upon expiration or termination of this Agreement for any reason, all licenses granted hereunder shall terminate immediately, all support and maintenance obligations shall cease, Client shall immediately cease using all Fair Isaac Product(s) and related documentation (including all intellectual property arising from or related to the foregoing), shall remove all copies of the Fair Isaac Product(s) and related documentation from Client's computers and systems, and shall either (i) destroy all copies of the Fair Isaac Product(s), related documentation, and other Fair Isaac Confidential Information and intellectual property in Client's possession; or (ii) return to Fair Isaac all copies of the Fair Isaac Product(s), related documentation, and other Fair Isaac Confidential Information and intellectual property in Client's possession. ~~Client shall provide to Fair Isaac a written certification signed by an authorized office of Client certifying that Client has complied with the foregoing. Upon termination of this Agreement, all fees and other charges provided for hereunder will become immediately due and payable to Fair Isaac, and Client shall immediately remit all unpaid fees to Fair Isaac.~~

9.4 Survival. Rights to payment and the following rights and obligations under this Agreement will survive any termination or expiration of this Agreement: Article 1 (Definitions), Section 3.1 (License Restrictions), Section 3.2 (Reservation of Rights Not Granted), Section 5.3 (Warranty Disclaimer), Section 5.4 (Limitation of Liability), Article 7 (Confidential Information), Section 9.3 (Effect of Termination), Section 9.4 (Survival), and Article 10 (Provisions of General Applicability).

**10. Provisions of General Applicability**

10.1 Relationship of the Parties. Fair Isaac and Client are independent contractors and will have no power to bind the other party or to create any obligation or responsibility on behalf of the other party. This Agreement shall not be construed as creating any partnership, joint venture, agency, or any other form of legal association that would impose liability upon one party for the act or failure to act of the other party.

10.2 Counterparts. This Agreement may be executed in counterparts, which taken together shall constitute one single agreement between the parties.

10.3 Section Headings. The section and subsection headings used herein are for reference and convenience only, and will not enter into the interpretation hereof.

10.4 No Waiver. No delay or omission by either party to exercise any right or power with respect to any of the terms or conditions of this Agreement will impair any right or power or be construed to be a waiver thereof. A waiver by either party of any of the terms and conditions of this Agreement will not be construed to be a waiver of any other term or condition of this Agreement. No waiver of any rights of a party under this Agreement will be effective unless set forth in a writing signed by such party.

10.5 Entire Agreement. This Agreement constitutes the full and entire understanding and agreement between the parties with regard to the subject matter hereof, and supersedes all prior or contemporaneous proposals and all other oral or written understandings, representations, conditions, and other communications between the parties relating to such subject matter, as well as the terms of all existing or future purchase orders and acknowledgments. Each party represents and warrants to the other party that in entering into this Agreement it has not relied on any representations, promises, or assurances from another party or any employee, officer, director, representative, attorney, or affiliate of another party not expressly contained in this Agreement. Any other terms or conditions or amendments shall not be incorporated herein or be binding upon any party unless expressly agreed to in a writing signed by authorized representatives of Client and Fair Isaac.

10.6 Construction; Severability. This Agreement will not be more strongly construed against either Party, regardless of who is more responsible for its preparation. If any provision of this Agreement is held to be unlawful or invalid under applicable law, then such provision will be ineffective only to the extent of such illegality or invalidity, without invalidating the remainder of such provision or any of the remaining provisions of this Agreement.

10.7 Governing Law. This Agreement will be governed by and construed in accordance with the laws of the State of New York~~California, without regard to principles of conflicts of law or international law, including without limitation the 1980 United Nations Convention on Contracts for the International Sale of Goods, as revised~~.

10.8 No Assignment. Neither party shall, without the prior written consent of the other party, assign or transfer this Agreement, or any part thereof. In the event of a change of control of either party~~Client~~, or if either party~~Client~~ is merged with, acquired by or acquires another entity~~, or undergoes a reorganization,~~ or otherwise acquires the right to process the business of another entity, each such event shall be deemed to be an assignment subject to this section, and Client shall make no expanded use of the Fair Isaac Products as a result of any such event unless and until Fair Isaac provides such written consent which will not be unreasonably withheld.. Any attempt to assign or transfer all or any part of this Agreement without first obtaining such written consent will be void and of no force or effect. Notwithstanding the foregoing,

~~Fair Isaac may perform any or all of its obligations through any subsidiary or affiliated company, and may assign this Agreement by merger, reorganization, consolidation, or sale of all or substantially all its assets.~~

10.9 Force Majeure. Notwithstanding anything to the contrary herein, either party~~Fair Isaac~~ shall not be deemed to be in default of any provision of this Agreement or be liable to Client or to any third party for any delay, error, failure in performance or interruption of performance due to any act of God, terrorism, war, ~~insurrection, riot, boycott, strike, interruption of power service, interruption of communications service, labor or civil disturbance, act of any other person not under the control or direction of either party or other similar cause~~. Fair Isaac shall give Client reasonable written notification of any material or indefinite delay due to such causes.

~~10.10 Press Releases; Publicity. Fair Isaac will be allowed to issue a press release stating factual information regarding the relationship between Fair Isaac and Client at the time this Agreement is signed. Fair Isaac shall first submit to Client such press release for Client's approval, which approval may not be unreasonably withheld or be delayed more than 5 business days. The parties may issue additional press releases or publicity from time to time as mutually agreed by the parties. All press releases or other publicity sought to be issued by either or both parties pursuant to this section must, prior to release, be reviewed and approved by each party, which approval may not be unreasonably withheld or be delayed more than 5 business days. Subject to Client's prior written consent (which must not be unreasonably or arbitrarily withheld), Fair Isaac may include Client's name in its marketing and promotional materials regarding the availability of any of its products or services to other clients.~~

10.10~~1~~ Notices. Any notices required to be given by one party to the other under the Agreement must be in writing, must reference the Fair Isaac Legal Request (LR) number set forth above, and must be sent to the recipient's address or facsimile number for notices set forth on the page of this Agreement titled "Instructions and Contact Information." Such notices will be deemed given upon the earlier of (i) actual delivery, whether personally, by a recognized international overnight delivery carrier, or by facsimile (provided that the facsimile notice is promptly confirmed in writing using another method for giving notice provided in this section), or (ii) five business days after being mailed by certified or registered mail, first class, postage prepaid.. The date a notice sent by facsimile is deemed to have been given will be the date of actual receipt, but no faxed notice will be effective unless promptly confirmed in writing as set forth above. Either party may change its address or facsimile number for notices at any time by giving notice to the other party.

10.11~~2~~ No Third Party Beneficiaries. Nothing in the Agreement is to be deemed to create any right or benefit in any person not a party to this Agreement.

IN WITNESS WHEREOF, Fair Isaac and Client have caused this Agreement to be signed in duplicate and delivered by their duly authorized representatives as of the Effective Date.

| **FAIR ISAAC CORPORATION** | | **CLIENT – CHUBB & SON** | |
|---|---|---|---|
| By: | ______________ | By: | ______________ |
| Name: | ______________ | Name: | ______________ |
| Title: | ______________ | Title: | ______________ |
| Date Signed: | ______________ | Date Signed: | ______________ |

| ***Fair Isaac Use Only:*** | | Created: 2 June 2006 |
|---|---|---|
| Short Name: | Client #: | Acct. Exec.: |
| OE Order #: | System #: | Royal Blue #: |
| Sales Approval: | Notes: | |

**Please complete the information on the following page.**

## INSTRUCTIONS AND CONTACT INFORMATION

***Instructions to Client:***

1. ***Appropriate corporate officer should execute 2 copies of the document.***
2. ***Complete all requested information below:***

**Addresses for Notices:**

| | For Client: | For Fair Isaac: |
|---|---|---|
| **Address:** | ______________________ | Fair Isaac Corporation<br>Attn: Contracts Administrator<br>3661 Valley Centre Drive<br>San Diego, CA 92130<br>Reference FI LR # _______ |
| | ______________________ | |
| **City/State:** | ______________________ | |
| **Zip/Code:** | ______________________ | Fax: 858-523-4450 |
| **Country:** | ______________________ | |
| **Attention :** | ______________________ | |
| **Fax:** | ______________________ | |

***Compete Information below if different from above:***

| | Return executed contract to Client at: | Send Software to: | Client's Billing Information: |
|---|---|---|---|
| **Address:** | __________ | __________ | __________ |
| | __________ | __________ | __________ |
| **City/State:** | __________ | __________ | __________ |
| **Zip/Code:** | __________ | __________ | __________ |
| **Attention :** | __________ | __________ | __________ |
| **Phone:** | __________ | __________ | __________ |
| **Fax (optional):** | __________ | __________ | __________ |
| **Email (optional):** | __________ | __________ | __________ |

3. ***Return 2 completed and executed copies to:***

Fair Isaac Corporation
Attn: Contracts Administration
3661 Valley Centre Drive
San Diego, CA 92130

If time is of the essence, please fax to:

858-523-4450

Questions? Call 858-369-8259

**EXHIBIT A**
**PRICING AND PAYMENT**

## 1. BLAZE ADVISOR LICENSE AND SUPPORT AND MAINTENANCE FEES

| Product | Item # | Initial Term (Perpetual or No. of Years) | Scope/Quantity | Price | Total |
|---|---|---|---|---|---|
| Blaze Advisor Development<br><br>Version: 6.0<br>Platform: [Cobol/.Net/JAVA] | 280-DVLI-03 (Perpetual)<br><br>280-DVST-09 (Dev Seat Recurring)<br><br>280-SELI-03 (Site and Enterprise) | Perpetual | [For use on up to ___ Seats]<br>- or -<br>[Named Application]<br>- or -<br>[Enterprise-Wide] | $ ___ | $ ___ |
| Blaze Advisor Deployment<br><br>Version: 6.0<br>Platform: [Cobol/.Net/JAVA] | 280-DPLI-03 (Perpetual)<br><br>280-DPLY-03 (Annual)<br><br>280-SELI-03 (Site and Enterprise) | Perpetual | [For use on up to ___ CPUs]<br>- or -<br>[Named Application]<br>- or -<br>[Enterprise-Wide] | $ ___ | $ ___ |
| Compiled Sequential for Blaze Advisor Deployment<br><br>Version: 6.0<br>Platform: [Cobol/.Net/JAVA] | 280-SQPL-03 (Perpetual)<br><br>280-SQAL-03 (Annual)<br><br>280-SELI-03 (Site and Enterprise) | Perpetual | [For use on up to ___ CPUs]<br>- or -<br>[Named Application]<br>- or -<br>[Enterprise-Wide] | $ ___ | $ ___ |
| SmartForms for Blaze Advisor<br><br>Version: 6.0<br>Platform: [Cobol/.Net/JAVA] | | Perpetual | [For use on up to ___ CPUs]<br>- or -<br>[Named Application]<br>- or -<br>[Enterprise-Wide] | $ ___ | $ ___ |
| Documentation for Blaze Advisor:<br>• User guide (available in HTML or PDF) | N/A | Perpetual | 1 set | Electronic copy included with software license | $ ___ |

*Fair Isaac Confidential*

| Support and Maintenance Fee for Blaze Advisor Software: | 280-OOMN-08 | Initial Term: One year | 1 | $ ____ Per Year: 18% of Total License Fees | $ ____ Year One (Annual fee thereafter subject to annual adjustment) |
|---|---|---|---|---|---|
| TOTAL LICENSE AND FIRST YEAR SUPPORT AND MAINTENANCE FEES – (US Dollars) | | | | | $ ____ |

**Definition of Named Application:** With respect to any license set forth above with a "Scope/Quantity" of "Named Application", Client's "Named Application" is defined as follows: [ ________________ ].

## 2. TRAINING FEES

| Product | Item # | Quantity | Price | Total |
|---|---|---|---|---|
| Training Classes:<br><br>Fair Isaac to provide the following classes:<br>• [list class name] – X day class.<br>• [list class name] – X day class. | 280-OOTR-06 | [___] Classes to be held at Client's site. Price is per class and includes up to twelve (12) students<br>- or -<br>Classes to be held at Fair Isaac's site. Price is per student. | $ ____ (per class/per student) | $ ____ |
| TOTAL TRAINING FEES (US Dollars) | | | | $ ____ |

## 3. PAYMENT

**3.1 License Fees.** Client agrees to pay the license fees described above upon execution of this Agreement.

**3.2 Maintenance Fees.** Client agrees to pay the support and maintenance fees for the first year upon execution of this Agreement, and annually thereafter in advance while the maintenance term is in effect. Client agrees that the maintenance fee set forth above covers only the licenses to the Fair Isaac Products set forth in this Agreement and does not cover any other licenses to the Fair Isaac Products granted to Client under any other agreement. The total maintenance fee for the Fair Isaac Products for future years shall be calculated based on the total license fees paid by Client for the Fair Isaac Products under this Agreement and all other agreements.

**3.34 Training Fees.** Client agrees to pay the training fees described above upon execution of this Agreement.

**3.45 Expenses.** Prices do not include reasonable travel and associated out-of-pocket expenses incurred by Fair Isaac, which will be billed to Client at cost. Client agrees to reimburse Fair Isaac for all such travel-related expenses Fair Isaac incurs in connection with this Agreement.

| Fair Isaac Software License and Maintenance Agreement – Blaze Advisor | | | Page 17 of 21 |
|---|---|---|---|
| FI Contract Number: | | | FI LR# |

**Unless Client signs this Agreement and returns it to Fair Isaac by [ ], prices and terms are subject to change.**

*Fair Isaac Confidential*

Confidential FICO0000149 0017

**EXHIBIT B**
**FAIR ISAAC SOFTWARE SUPPORT AND MAINTENANCE POLICY**

**1. DEFINITIONS**

**"FIC"** means Fair Isaac Corporation and its subsidiaries.

**"Errors"** means persistent malfunctions, inherent within the Software, that prevent the Software from operating according to its technical documentation.

For software to be installed at locations in North America, Asia, and South America, **"Product Support Hours"** (United States) are 6:00 a.m. to 5:00 p.m. Pacific Time, Monday through Friday, excluding holidays observed by FIC in the United States. Support services will be provided from the United States.

For software to be installed at locations in Europe, Middle East, and Africa, **"Product Support Hours"** (U.K.) are 8:30 a.m. to 5:00 p.m. UK Time, Monday through Friday, excluding holidays observed by FIC in the United States. Support services will be provided from the United States.

**"Software"** means the following software product(s) that are licensed by Client:

The Fair Isaac Products listed on Exhibit A.

**2. SUPPORT AND MAINTENANCE SERVICES GENERALLY**

**2.1.** Subject to payment of the appropriate Maintenance fees by Client, and compliance by Client with the terms of the applicable license agreement, FIC agrees to provide Client with support and maintenance services for the Software as set forth in this policy.

**2.2.** FIC provides support and maintenance services for licensed Software during both implementation and production use when operated on supported platforms installed on designated or approved equipment. Support is currently provided in the English language only.

**2.3.** Subject to Section 5.1.4, maintenance includes any standard Software versions and releases generally made available to FIC's clients that are current on Maintenance fees. Such versions and releases will be provided to Client pursuant to this policy on a when and if available basis.

**3. TECHNICAL SUPPORT**

**3.1.** FIC will make commercially reasonable efforts, during Product Support Hours, to address Client's questions about the Software, to resolve operating problems that are attributable to the Software, and to resolve verified, reproducible Errors in the Software.

**3.2.** Client agrees: (a) to set up primary and secondary liaisons who have been trained on the Software; (b) that all support requests will be centralized through the primary and secondary liaisons; (c) to submit support requests to FIC Product Support; (d) to comply with the attached guidelines for submitting support requests; (e) to use commercially reasonable efforts to diagnose and resolve problems in the operation of the Software prior to contacting FIC for support; and (f) to use commercially reasonable efforts to verify that reported problems are due to a malfunction of the Software, and not due to the operating system, hardware, data, interfaces, or improper use of the Software, prior to contacting FIC for support.

**4. TERM; TERMINATION; REINSTATEMENT**

**4.1.** FIC's support and maintenance obligations under this policy commence upon shipment of the Software and will continue for an initial term of one year. Maintenance fees will be invoiced on an annual basis in advance. For as long as FIC makes maintenance for the Software generally available to all of its customers, the support and maintenance service will automatically renew for consecutive one-year terms unless Client gives FIC 30 days' written notice, prior to the end of the current term, of its intent not to renew. Support and maintenance during renewal terms will be subject to the Support and Maintenance Policy in effect at the time of renewal. Maintenance fees applicable to renewal terms may be increased by FIC, but no such increase may exceed the most recently available annual change in the CPI. **"CPI"** means the Consumer Price Index for All Urban Consumers (CPI-U) for the U.S. City Average for All Items, 1982-84=100, as published by the US Bureau of Labor Statistics or three percent (3%) of the amount charged to the Client for maintenance during the preceding year.

**4.2 Client's Option to Terminate Maintenance**. Client shall have the right at any time during the Maintenance Period to terminate, without penalty, for any reason provided, however, that Client provides Fair Isaac written notice of its intent to terminate the maintenance terms of this Agreement at least thirty (30) days prior to such date of termination. This Section does not affect Client's right to terminate this Agreement pursuant to Section 8.

Formatted: Indent: First line: 0"

**4.32.** FIC may terminate support and maintenance services under this policy upon 30 days' written notice if Client is in breach under this policy or any license agreement relating to the Software and does not cure the breach within such 30-day period. FIC will have no obligation to resume support and maintenance services following such a termination for cause.

**4.43.** FIC willmay, ~~at its sole discretion,~~ reinstate lapsed support and maintenance services, in accordance with its then-current policies, upon payment by Client of the applicable reinstatement fee.

**5. EXCLUSIONS**

**5.1.** Services outside the scope of this policy are subject to availability of resources and will be charged for separately at FIC's then-current rates for such services. The following services are outside the scope of this policy:

**5.1.1.** Support services provided outside of Product Support Hours.

**5.1.2.** Support service that becomes necessary due to failure of computer hardware, equipment or programs not provided by FIC; negligence of Client or any third party; operator error; improper use of hardware or software (including the Software); ~~any problem or loss not solely attributable to the Software;~~ problems stemming from Client not applying all required maintenance releases; or problems due to unauthorized modification or adaptation of the Software by Client.

**5.1.3.** Development, customization, coding, installation, integration, consulting and training.

**5.1.4.** Optional, separately-priced Software features that may, from time to time, be made available by FIC with new versions or releases of the Software.

**5.2** Unless otherwise indicated in the applicable Order Form or license agreement, FIC has no obligation to provide support or maintenance services for other than (a) the current release of the Software and (b) one prior release of the Software, but only for a maximum of one year after release of a subsequent release.

**6. SEVERITY LEVELS AND RESPONSE TIMES.** Upon Client's report of a problem with the Software, an FIC representative will acknowledge such report by issuing a confirmation to Client, either by phone or email, and FIC will assign a Severity Level to the problem based on the type of issue reported, according to the following schedule:

| Severity | Condition | Response Time/Action |
|---|---|---|
| 1 | **Production Down Emergency:** An Error in the production environment that inhibits all or substantially all of the Software from functioning in accordance with its documentation. A severity "one" problem is both severe and mission-critical.: | Provide (a) a phone response within 1 hour during FIC's Product Support Hours and<br><br>(b) an action plan within 4 hours for the development of a patch or a bypass for the Error.<br><br>Following the development of the patch or bypass, FIC will notify the Client of inclusion of the patch or a solution in a revision of the Software.<br><br>Once identified and logged, FIC will provide all necessary services to resolve a Severity-One condition on a diligent-efforts priority basis seven days per week until that condition has been patched or bypassed. |
| 2 | **Production Impaired:** An Error in the production environment where major functionality of the Software is inhibited, but the Error does not materially disrupt the Client's business | Provide (a) a written or phone response within 4 hours during FIC's Product Support Hours and<br><br>(b) an action plan within 2 business days for a bypass for the Error or<br><br>(c) an action plan within 5 business days for developing a patch for the Error.<br><br>Following the development of the patch or bypass, FIC will notify the Client of inclusion of the patch or a solution in a revision of the Software.<br><br>The Error will be worked on during Product Support Hours. |
| 3 | **Production Inhibited:** An Error in the production environment where a feature of the Software is inhibited, but the Error does not materially disrupt the Client's business | Provide (a) a written or phone response within one business day and<br><br>(b) Consider for correction or inclusion in the next revision of the Software. |
| 4 | **General Assistance:** A "how to" question; an Error that is minor or cosmetic in nature; or an enhancement request to be considered for a future revision of the Software | Provide (a) a written or phone response within 2 business days and<br><br>(b) Consider for correction or inclusion in the next revision of the Software. |

**Fair Isaac Product Support**
**Problem Submission Guidelines**

We encourage clients to first consult the appropriate documentation for the product they are using (installation guides, reference manuals, user guides, product release notes, etc.). Release notes will typically include contents of the release, installation/license information, known limitations, product support, and compatibility information. Other reference materials should also be consulted as needed for related components such as database management systems, compilers, operating systems, etc. For Fair Isaac products with web-based self-service, visit the support web site to search for known questions, solutions and technical notes.

If you've completed this initial research and are still unable to resolve your problem, the next step is to contact Product Support. The following information is critical to resolving a problem:

- Your client ID (a 4-digit number communicated to you either by your Engagement Manager or during your first contact with Product Support) or license number (if applicable).
- Your phone number and email address
- The name and version of the Fair Isaac software to which the issue pertains. For incidents submitted via email, please be sure to include the **product name** on the subject line of the email.
- The name and version of the operating system and database.
- The environment in which the error is occurring (development, test or production).
- Both a general statement and a detailed description of the problem, including any relevant error messages.
- Frequency with which the condition occurs and at what intervals.
- Can the problem be replicated, and if so, the steps taken to recreate the problem.
- Any changes that may have been made to the environment (for example, maintenance work that may have been performed or any hardware/software changes made to the server, workstation, operating system, or data feed).
- Any changes to the Fair Isaac application, including new configuration or software upgrades.
- Copies of the Fair Isaac product log files, configuration files, and screen prints of errors.

**Troubleshooting Tips:**

- Isolate the problem as precisely as possible using debugging facilities and error logs as appropriate, and try to find a consistent way to reproduce it.
- Whenever possible, modify a Fair Isaac provided example or test case to cause the same problem.
- If the problem is not consistently reproducible, check whether it may be related to insufficient memory, memory leaks, search paths, or files that may be missing from certain directories or the class path.
- Verify that the versions of the database, compilers, operating system, browser, drivers, etc. that are in use are certified and supported by Fair Isaac.
- Identify any other changes that may have occurred in your environment that may have an impact on the Fair Isaac solution (for example, database maintenance, service pack deployment, upgrade of a system component, operating system patches, etc.)
- Try to reproduce the problem on another platform or test system.
- If applicable, try to isolate various components of your solution to simplify the troubleshooting (for example, pull out a subset of rules or code from the bulk of your application). Support can assist you best if we get a small sample of your application to work with. If possible send us a small test case with instructions, so we can run the test case.