# Exhibit 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation, | ) ) ) | Case No. 16-cv-1054(WMW/DTS) |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **Jury Trial Demanded** |
| FEDERAL INSURANCE COMPANY, an Indiana corporation, | ) ) ) ) | |
| Defendant. | ) | |

**PLAINTIFF FAIR ISAAC CORPORATION'S FIRST SET OF REQUESTS**
**FOR PRODUCTION OF DOCUMENTS TO DEFENDANT**
<u>**FEDERAL INSURANCE COMPANY**</u>

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Fair Isaac Corporation ("FICO") hereby requests that Defendant Federal Insurance Company ("Federal") produce the following documents and things requested below, in accordance with the Instructions and Definitions that follow. The requested documents and things must be produced at the offices of Merchant & Gould, 3200 IDS Center, 80 South 8th Street, Minneapolis, MN 55402, within thirty days of the date of service of these Requests, or at such other time and location as the parties may agree. If Federal withholds from production any of the requested documents or things on any ground (for example, on a claim of attorney-client privilege or work-product immunity), FICO requests that Federal provide, within thirty days of service of these Requests, a schedule identifying the withheld documents and things and the basis for the withholding.

These Requests are continuing, and responses thereto should be supplemented as required by the Federal Rules of Civil Procedure.

## DEFINITIONS

1. "FICO" or "Plaintiff" means Plaintiff Fair Isaac Corporation.

2. "Defendant," "You," and "Your" means Defendant Federal Insurance Company, and all entities or names under which it has done business, any and all other predecessors, parents, subsidiaries, unincorporated divisions, including without limitation its division Chubb & Son, affiliates, and other organizational or operating units of any of the foregoing, and past and present directors, officers, employees, agents and representatives (including attorneys, accountants and consultants), and any other person acting on behalf of such entities.

3. The term "this action" shall refer to *Fair Isaac Corporation v. Federal Insurance Company*, Case No. 16-cv-1054(WMW/DTS), in the United States District Court, District of Minnesota.

4. The terms "Software License and Maintenance Agreement" and "Agreement" shall refer, collectively, to the Software License and Maintenance Agreement entered into between FICO and Chubb & Son, a division of Federal, on June 30, 2006, including the two Amendments thereto, dated August 1, 2006 and December 28, 2006.

5. The terms "FICO Blaze Advisor® software" and "Blaze Advisor® software" shall refer to the decision management software that Chubb & Son, a division of Federal, was licensed to use pursuant to the parties' Software License and Maintenance Agreement.

6. "Person" means any natural person or any business, legal, or governmental entity or association, and any functional division thereof.

7. "Document" or "Documents" means the original and each non-identical copy of any written, printed, typed, recorded, computerized or electronic data, taped, graphic, or other matter, in whatever form, whether in final or draft, including but not limited to all materials that

constitute "writings" or "recordings" within the meaning of Rule 1001 of the Federal Rules of Evidence and all materials that constitute "documents" within the meaning of Rule 34 of the Federal Rules of Civil Procedure.  "Electronic data" includes without limitation all text files (including word processing documents and presentations), spread sheets, electronic mail documents (emails), instant messages including those saved as files and stored on computer systems, databases, calendars, computer system activity logs, audit trails, data used for electronic data interchange, Internet usage files, network access information, voicemail, digitized audio, digital image files, video files (e.g., data stored in MPEG, JPEG, GIF, TIFF, and BMP formats) and any other information stored magnetically, optically or electronically, and data stored on workstations, laptops, network servers, removable media, handheld devices, backup tapes, hard disk drives, diskettes and other computer media such as magnetic tape, floppy disks, memory sticks and recordable optical disks.

8. Any form of the terms "concerning" or "relating" shall mean referring to, describing, evidencing, constituting, or otherwise discussing in any way the subject matter, or any part thereof, identified in a request.

9. The terms "communication" or "communications" shall mean any communication regardless of the manner in which such communication took place, including but not limited to, personal conversations, correspondence, electronic or computer mail (emails), telephone calls, facsimile communications, or telegrams, and shall include both communications internal to Federal and communications between Federal and any other entity.

10. The words "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

11. The terms "all" and "each" shall be considered to include "each and every."

12. The use of the singular form of any word includes the plural, and vice versa.

13. "Date" means the day, month, and year, if ascertainable and if not, the best approximation thereof including in relation to other events.

## INSTRUCTIONS

1. You are required to answer the following document requests separately and fully in writing and under oath, within thirty (30) days from the date of service. When answering the document requests, you are required to furnish such information as is available to you, including but not limited to information known to your officers, employees, agents or anyone acting for or on your behalf.

2. If you object to any of these Requests, then fully state the reasons and every basis for each objection. If you object to any part or aspect of a Request, then specify the part or aspect. Similarly, if you do not object to a particular Request, but are unable to respond fully to that Request, then respond to the fullest extent possible at the time of response and provide an explanation for the lack of a full response. If you do not know exact dates, amounts, or other facts with certainty, but you have information from which you can make an appropriate or estimated answer, do so, and indicate that the answer is appropriate or estimated because you lack more precise information.

3. Documents produced pursuant to Federal Rule of Civil Procedure 34 should be expressly identified by the Request to which they pertain.

4. Except as otherwise expressly directed herein, each paragraph and subparagraph of the Requests should be construed independently and not by reference to any other paragraph or subparagraph herein for the purpose of limiting the scope of the Request being answered.

5. If the original of a document is within your possession, custody or control, produce it; if not, produce such copy of it as is in your possession, custody or control. Any copy of a document on which any notation, addition, alteration or change has been made is to be treated as an additional original document.

6. If you know of the existence, past or present, of any documents or things requested below, but are unable to produce such documents or things because they are not presently in your possession, custody, or control, state this circumstance and identify such documents or things and who has possession, custody, or control of the documents or things. If any of the documents requested have been destroyed, identify each such document, state the date upon which the document was destroyed, and state the reason it was destroyed.

7. Electronic records and computerized information must be produced in an intelligible format or together with a description of the system from which it was derived sufficient to make the materials intelligible.

8. Documents that originate in hard copy format and in electronic format (other than spreadsheets or data collections) should be produced in single page TIFFs, CCITT TIFF Group IV compression with OCR or extracted text as well as with load files for use in connection with the receiving party's industry standard document review software. Color documents should be produced as single page color jpgs.

9. Documents that originate in the form of electronic spreadsheets or data collections should be produced in native form with extracted text. Native files shall be produced with accompanying slip sheets indicating that the document has been produced as a native file. A path to the native should be included in the data file formatted for the document review software. Any passwords or encryption keys required to access the native files should be produced along

with the native form of the document. If the document includes information to be redacted, the document may be produced in .TIF format with OCR or extracted text.

      10.     Standard metadata (as used herein to refer to electronically stored information about the document that does not appear on the face of the original document if emailed or printed) for documents that originate in electronic form should be produced with the following metadata fields: (a) PowerPoint™ notes or the equivalent, (b) Custodian, (c) MD-5 Hash Value, (d) PRODBEGNO, (e) PRODENDNO, (f) ATTACHMNT, (g) BEGATTACH, (h) ENDATTACH, (i) Date created, (j) Date modified, (k) Document extension, (l) Filename for non-email ESI, (m) Parent ID, (n) protective declaration, (o) author, (p) native path, (q) text path. In the case of email, the corresponding text file shall include header information including: (1) the individual to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), and (5) the date of the email.

      11.     If you assert a claim of privilege or work product protection in objection to any Request, identify with respect to each communication, document, or tangible thing the nature and basis of the privilege claimed, and describe the documents, communications, or things not produced or disclosed in a manner that would enable FICO to assess the applicability of the privilege, including the following information:

      (a)     its type;

      (b)     its general subject matter and purpose;

      (c)     the date it was acquired or came into existence;

      (d)     the author, or if the communication was oral, the speaker;

   (e) all addressees, recipients, copyholders and other distributees, or, if the communication was oral, those present when it was made, their relationship to the author or speaker;

   (f) the organization, if any, which each author, speaker, addressee, recipient, copyholder or distributee was then connected to and his or her job title or description;

   (g) if a document, the number of pages; and

   (h) any other information upon which you may rely to support your claim of privilege or other immunity from discovery.

  12. If you contend that a portion of a document contains information which is immune from discovery, then produce the document with the immune portion redacted therefrom and describe the redacted portion in a privilege log pursuant to the instructions in the preceding paragraph.

  13. Selection and numbering of responsive documents shall be performed in such a manner as to enable the source of each document to be determined.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:** All documents and communications referring or relating to the negotiation of the parties' Software License and Maintenance Agreement, including the two Amendments thereto.

**REQUEST NO. 2:** All documents and communications referring or relating to compliance with or performance of the terms of the parties' Software License and Maintenance Agreement, including the two Amendments thereto.

**REQUEST NO. 3:** All documents and communications referring to, relating to, or discussing FICO.

7

**REQUEST NO. 4:**   All documents referring to, relating to, or comprising communications between Federal and any employee, representative, officer, or director of FICO regarding the Blaze Advisor® software.

**REQUEST NO. 5:**   All documents and communications referring or relating to the parties' post-merger negotiations, including without limitation, Federal's non-privileged internal communications referring to, relating to, or discussing any post-merger modification of the parties' Software License and Maintenance Agreement or the creation of a new agreement governing Federal's use of the Blaze Advisor® software.

**REQUEST NO. 6:**   All documents and communications referring or relating to the January 27, 2016 letter from Thomas Carretta to Joseph Wayland.

**REQUEST NO. 7:**   All documents and communications referring or relating to the February 17, 2016 letter from Andrew Hopp to Thomas Carretta.

**REQUEST NO. 8:**   All documents and communications referring or relating to the teleconference between the parties the week of February 21, 2016 during which the parties discussed Federal's post-merger compliance with the Software License and Maintenance Agreement.

**REQUEST NO. 9:**   All documents and communications referring or relating to the February 22, 2016 letter from Thomas Carretta to Andrew Hopp.

**REQUEST NO. 10:**   All documents and communications referring or relating to Federal's February 25, 2016 written counter-proposal to FICO regarding the terms of Federal's post-merger use of the Blaze Advisor® software.

**REQUEST NO. 11:**   All documents and communications referring or relating to the March 1, 2016 meeting between FICO and Federal during which the parties discussed Federal's post-merger compliance with the Software License and Maintenance Agreement.

**REQUEST NO. 12:**   All documents and communications referring or relating to the March 2, 2016 written proposal from FICO to Federal regarding the terms of Federal's post-merger use of the Blaze Advisor® software.

**REQUEST NO. 13:**   All documents and communications referring or relating to the March 6, 2016 letter from Michael Sawyer to Tamra Pawloski.

**REQUEST NO. 14:**   All documents and communications referring or relating to the March 15, 2016 request from Federal to FICO that FICO revise its March 2, 2016 written proposal.

**REQUEST NO. 15:**   All documents and communications referring or relating to the March 17, 2016 revised written proposal from FICO to Federal regarding the terms of Federal's post-merger use of the Blaze Advisor® software.

**REQUEST NO. 16:**   All documents and communications referring or relating to the March 22/23, 2016 revised written proposal from FICO to Federal regarding the terms of Federal's post-merger use of the Blaze Advisor® software.

**REQUEST NO. 17:**   All documents and communications referring or relating to the March 25, 2016 written counter-proposal from Federal to FICO regarding the terms of Federal's post-merger use of the Blaze Advisor® software.

**REQUEST NO. 18:**   All documents and communications referring or relating to FICO's response to Federal's written counter-proposal regarding the terms of Federal's post-merger use of the Blaze Advisor® software.

**REQUEST NO. 19:**   All documents and communications referring or relating to the March 30, 2016 teleconference between William Lansing and Kevin Shearan.

**REQUEST NO. 20:**   All documents and communications referring or relating to the March 30, 2016 letter from Thomas Carretta to Andrew Hopp.

**REQUEST NO. 21:**   Documents sufficient to show the organizational structure of Federal, including documents sufficient to identify each division of Federal, including the Chubb & Son division, and the relationship between the Chubb & Son division and all other divisions of Federal.

**REQUEST NO. 22:**   Documents sufficient to identify each of Federal's subsidiaries and divisions prior to the January 15, 2016 merger transaction.

**REQUEST NO. 23:**   Documents sufficient to identify each of Federal's subsidiaries and divisions after the January 15, 2016 merger transaction.

**REQUEST NO. 24:**   Documents sufficient to identify every person or entity in the United Kingdom to whom Federal has disclosed and/or permitted to use the Blaze Advisor® software.

**REQUEST NO. 25:**   Documents sufficient to identify every person or entity in Canada to whom Federal has disclosed and/or permitted to use the Blaze Advisor® software.

**REQUEST NO. 26:**   Documents sufficient to identify every person or entity in Australia to whom Federal has disclosed and/or permitted to use the Blaze Advisor® software.

**REQUEST NO. 27:**   Documents sufficient to identify every person or entity outside of the United States to whom Federal has disclosed and/or permitted to use the Blaze Advisor® software.

**REQUEST NO. 28:**   Documents sufficient to identify every person or entity within the United States, other than employees of Chubb & Son, a division of Federal, to whom Federal has

disclosed and/or permitted to use the Blaze Advisor® software. For the avoidance of doubt, this request includes all employees of Federal who are not within the division Chubb & Son, as well as all other persons or entities that are not Federal.

**REQUEST NO. 29:**  Documents sufficient to show each person or entity, of which Federal is aware, that has used or downloaded the Blaze Advisor® software other than employees of Chubb & Son, a division of Federal.

**REQUEST NO. 30:**  Summary reports sufficient to show gross and net revenues, and gross and net profits, derived from the products and services of each line of business of Chubb & Son, a division of Federal, for which the Blaze Advisor® software has been used (including, without limitation, for any underwriting, pricing, premium validation, or claim segmentation function in connection with the products and services of such line of business), for each quarter from January 1, 2016 to the present.

**REQUEST NO. 31:**  Summary reports sufficient to show gross and net revenues, and gross and net profits, derived from the products and services of each line of business of every division or entity (other than Chubb & Son, a division of Federal) to whom Federal has disclosed and/or permitted to use the Blaze Advisor® software, for which the Blaze Advisor® software has been used (including, without limitation, for any underwriting, pricing, premium validation, or claim segmentation function in connection with the products and services of such line of business), for each quarter from January 1, 2016 to the present.

**REQUEST NO. 32:**  Without limitation to the scope of Request Nos. 30 and 31, summary reports sufficient to show gross and net revenues, and gross and net profits, derived from each line of business of Chubb & Son, a division of Federal, and of every other division or entity to whom Federal has disclosed and/or permitted to use the Blaze Advisor® software, including the

Specialty, Commercial, and Surety Bonds lines of business, for each quarter from January 1, 2016 to the present.

**REQUEST NO. 33:** All documents relating to Federal's defense in ¶ 50 of its Answer that "FICO's claims fail because Federal's use of the FICO Products is licensed under the Agreement."

**REQUEST NO. 34:** All documents relating to Federal's defense in ¶ 51 of its Answer that "Federal did not breach the Agreement."

**REQUEST NO. 35:** All documents relating to Federal's defense in ¶ 52 of its Answer that "[i]f the fact-finder concludes that Federal breached the agreement, then the breach was not material."

**REQUEST NO. 36:** All documents relating to Federal's defense in ¶ 53 of its Answer that "FICO did not suffer damages as a result of the claimed breach."

**REQUEST NO. 37:** All documents relating to Federal's defense in ¶ 54 of its Answer that "FICO did not have the right to terminate the Agreement."

**REQUEST NO. 38:** All documents relating to Federal's defense in ¶ 55 of its Answer that "FICO itself breached the agreement."

**REQUEST NO. 39:** All documents relating to Federal's defense in ¶ 56 of its Answer that "FICO's claims are barred by waiver and estoppel."

**REQUEST NO. 40:** All documents relating to Federal defense in ¶ 57 of its Answer that "FICO's state law claims are preempted by federal law."

**REQUEST NO. 41:** All documents relating to Federal's contention in ¶ 6 of its Counterclaims that "Federal continued to use the Blaze Advisor software after the merger in the same manner it had used the software before the merger."

**REQUEST NO. 42:**   All documents relating to Federal's contention in ¶ 7 of its Counterclaims that "Federal did not expand its use of the software following the merger."

**REQUEST NO. 43:**   All documents relating to Federal's contention in ¶ 8 of its Counterclaims that "Federal's use of the Blaze Advisor software post-merger is covered by the license Federal purchased from FICO in the Agreement."

**REQUEST NO. 44:**   All documents relating to Federal's contention in ¶ 10 of its Counterclaims that "Federal did not need consent from FICO to continue using the Blaze Advisor software."

**REQUEST NO. 45:**   All documents relating to Federal's contention in ¶ 13 of its Counterclaims that "FICO's conduct in refusing to consent to continued use of the software post-merger lacked good faith, constituted unfair dealing, and was arbitrary and irrational."

**REQUEST NO. 46:**   All documents relating to Federal's contention in ¶ 15 of Federal's Counterclaims that FICO's "purported termination violated the terms of the Agreement and was inoperative . . . . FICO breached the Agreement by purporting to terminate the Agreement without the right to do so."

**REQUEST NO. 47:**   All documents relating to Federal's contention in ¶ 20 of its Counterclaims that "Federal performed its obligations under the Agreement."

**REQUEST NO. 48:**   All documents relating to Federal's contention in ¶ 26 of its Counterclaims that "FICO acted in bad faith and with the goal of exacting additional, unearned license fees from Federal when it announced that consent would not be given for Federal to continue using the software post-merger."

**REQUEST NO. 49:**   All documents relating to Federal's contention in ¶¶ 21 and 27 of its Counterclaims that Federal has been damaged by FICO's alleged breach of the Agreement.

**REQUEST NO. 50:**   Documents sufficient to show Federal's document retention policies.

Dated: April 11, 2017

                                            MERCHANT & GOULD P.C.

                                            /s/Allen Hinderaker
Allen Hinderaker, MN Bar # 45787
Michael A. Erbele, MN Bar # 393635
MERCHANT & GOULD P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, MN  55402-2215
Tel:  (612) 332-5300
Fax:  (612) 332-9081

John T. Winemiller*, TN Bar # 21084
9719 Cogdill Road, Suite 101
Knoxville, TN  37932-3322
Tel:  (865) 380-5960
Fax:  (612) 332-9081
jwinemiller@merchantgould.com

*Attorneys for Plaintiff FICO*

*Admitted pro hac vice

## **CERTIFICATE OF SERVICE**

      I hereby certify that on April 11, 2017, a copy of the foregoing was hand-delivered to the following attorneys of record:

Lora M. Friedemann (#0259615) lfriedemann@fredlaw.com
Nikola L. Datzov (#0392144) ndatzov@fredlaw.com
FREDRIKSON & BYRON, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402-1425

April 11, 2017                                                          s/Allen Hinderaker
                                                                                      Allen Hinderaker