# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION, | Court File No.  16-cv-1054 (WMW/DTS) |
| Plaintiff, | |
| v. | |
| FEDERAL INSURANCE COMPANY, an Indiana corporation, and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation, | **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF RANDOLPH BICKLEY WHITENER** |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 2

I.   FICO IGNORES ITS BURDEN TO ESTABLISH A CAUSAL NEXUS AND, INSTEAD, CREATES ITS OWN "CONNECTION" STANDARD. .............................. 2

   A.   Section 504(b) Requires a Causal Nexus between Infringement and Revenue, which Requires a Showing of Causation. ............................... 2

      1.   FICO's "connection" argument is not supported by 8th Circuit, District of Minnesota, or any other case law nationwide. .......................... 4

         a.   FICO selectively quotes from *Andreas* to manufacture a "connection" standard. ................................................ 4

         b.   FICO's "connection" standard is not supported by District of Minnesota case law. ................................................ 6

         c.   FICO's "connection" standard is not supported by the other case law FICO relies on. ............................................ 10

      2.   Whitener's reliance on the wrong legal standard and failure to conduct *any* causal analysis is basis for exclusion. ................................... 12

   B.   Federal has Identified Numerous Factually Analogous Cases Holding that Attempts to Establish Causal Nexus based on Use of Software in an Otherwise Complex Revenue Stream is Overly Speculative. ............................... 13

      1.   FICO makes no effort to distinguish Federal's numerous on-point cases. .................................................................... 13

      2.   FICO's case law—in stark contrast to Federal's—is completely inapposite. .................................................................. 15

      3.   Whitener's opinions must be excluded as overly speculative. ................. 16

   C.   Federal's Burden of Apportionment Only Arises *After* FICO Establishes a Causal Nexus, Which is a Burden FICO Cannot Meet. ....................................... 17

II.   FICO HAS FAILED TO DEMONSTRATE THAT WHITENER IS QUALIFIED OR UTILIZED A RELIABLE METHODOLOGY, WHICH WARRANTS EXCLUSION. ......................................................................................... 18

A.     Whitener is not Qualified to Opine on Whether there is a Causal Nexus between Use of Blaze and Federal's Profits. ....................................................... 18

     1.     Whitener's generalized experience in the insurance industry does not qualify him to testify regarding causation. ....................................... 199

     2.     Whitener is completely lacking in experience with decision management software, like Blaze. ........................................................... 19

B.     Whitener's Opinions on Causal Nexus are not Premised on a Reliable Methodology. ...................................................................................................... 20

     1.     Whitener's methodology is unreliable because opinions regarding the "quality" or "value" of Blaze have no bearing on causation. ........... 211

     2.     Whitener's "quality" and "value" opinions are mere *ipse dixit*. ............... 22

CONCLUSION ....................................................................................................... 23

## INTRODUCTION

FICO admits its causation expert, Randolph Bickley Whitener, has conducted no causation analysis and that Whitener cannot say, one way or the other, whether Blaze contributed to Federal's profits.  In its response, FICO does not address these failures. Instead, FICO rejects the causal nexus requirement entirely, asserts it is not required to show causation at all, and attempts to create its own standard.

FICO claims it is required to demonstrate a "connection" between Federal's use of Blaze and its profits.  In creating its new standard FICO selectively quotes from an 8th Circuit case (that repeatedly refers to plaintiff's requirement to show a "*causal* connection"), an unpublished District of Minnesota case (that also refers to the requirement to show a "*causal* connection"), and a handful of other cases nationwide (all of which require causation).  FICO argues that, based on its selective quotations, its expert is not required to conduct any causation analysis or provide any causation opinions.  None of these cases create a "connection" standard; all of these cases require the plaintiff establish causation.  Whitener's failure to conduct any causation analysis and his application of the wrong legal standard warrant his exclusion.

Whitener should additionally be excluded because he is unqualified and has no reliable methodology to "opine on the contribution to gross written premium made by [Blaze]."  (Whitener Rep. at 1.)[1]  Although Whitener has generalized experience in the

---

[1] Whitener's report was submitted in connection with Federal's Motion to Exclude Portions of Expert Report and Testimony of R. Whitener.  The report is Exhibit 1 to the Declaration of Terrence J. Fleming, dated July 26, 2019.  (*See* Dkt. 381-382.)  Whitener's report is cited in this memorandum as "Whitener Rep."

insurance industry he has next to no experience with decision management software. Indeed, in FICO's response the only experience FICO could point to is Whitener's selection (not use) of decision management software when he was a manager at an insurance company in 2004, roughly 15 years ago.

In addition, Whitener's methodology is flawed. Whitener's conclusions are based solely on his assessment of the "value" or "quality" of Blaze as a product. Use of a valuable or high quality product does not attribute to profits; the opinion does not show causation, and it is irrelevant to the causal nexus analysis. Whitener also cannot say whether any of his opinions—that use of Blaze "increase[d] the volume and accuracy of transactions" for Federal through increased speed, precision and adequacy of quotes, and ease of use for agents and brokers—is in fact true because he conducted no analysis. His opinions are *ipse dixit*. Federal, therefore, requests the Court exclude the expert report and testimony of FICO's causation expert, Randolph Bickley Whitener.

## ARGUMENT

## I.   FICO IGNORES ITS BURDEN TO ESTABLISH A CAUSAL NEXUS AND, INSTEAD, CREATES ITS OWN "CONNECTION" STANDARD.

### A.   Section 504(b) Requires a Causal Nexus between Infringement and Revenue, which Requires a Showing of Causation.

The policy behind requiring proof of a "causal nexus" between the alleged infringement and a party's profits is well-established. In awarding profits, "[t]he Supreme Court has made very clear that the purpose behind the measure of damages set forth in § 504(b) is 'to provide just compensation for the wrong, not to impose a penalty by giving to the copyright proprietor profits which are not attributable to the

infringement.'" *Gregerson v. Vilana Fin., Inc.*, No. CIV.06-1164 ADM/AJB, 2008 WL

451060, at \*5 (D. Minn. Feb. 15, 2008) quoting *Sheldon v. Metro–Goldwyn Pictures

Corp.*, 309 U.S. 390, 399 (1940); *see also Bucklew v. Hawkins, Ash, Baptie & Co., LLP*,

329 F.3d 923, 931 (7th Cir. 2003) ("the statute contains no provision for punitive

damages"); *Oboler v. Goldin*, 714 F. 2d 211, 213 (2d Cir. 1983) (same).   In order to

avoid imposing a penalty, a party may only recover those profits "attributable to"

copyright infringement.  Making this distinction requires proof of causation because "[a]

plaintiff cannot simply presume that the sales of a defendant's products are due to

copyright infringement."  *Fox Controls, Inc. v. Honeywell, Inc.*, No. 02 C 346, 2005 WL

1705832, at \*8 (N.D. Ill. July 14, 2005) (collecting cases).[2]

FICO attempts to recast its burden under the Copyright Act to recover profits as

requiring a showing of "connection" between use of Blaze and Federal's profits.   (Dkt.

480, at 2.)   In doing so, FICO indiscriminately quotes the most permissive language it

---

[2] FICO and its expert's failure to provide evidence of causation warrants dismissal of the claim at this stage in the litigation.  *See, e.g.*, *Lynch v. Trendwest Resorts Inc.*, 64 F. App'x 44, 45 (9th Cir. 2003) quoting *Mackie v. Rieser*, 296 F.3d 909, 911 (9th Cir. 2002) (plaintiff "was required to 'proffer some evidence to create a triable issue regarding whether the infringement at least partially caused the profits that the infringer generated as a result of the infringement.'"); *Mager v. Brand New Sch.*, No. 03 CIV. 8552 (DC), 2004 WL 2413978, at \*4 (S.D.N.Y. Oct. 28, 2004) ("This claim fails because it is not possible to show the required "causal connection" between the infringement and BNS's profits."); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 159 (2d Cir. 2001) (affirming summary judgment dismissing profits claim where plaintiff "failed to show any causal connection between the infringement and the defendant's profits"); *Straus v. DVC Worldwide, Inc.*, 484 F. Supp. 2d 620, 632 (S.D. Tex. 2007) (granting summary judgment dismissing profits claim where plaintiff provided no evidence of a "causal link"); *Rocking Chair Enterprises, L.L.C. v. Macerich SCG Ltd. P'ship*, 407 F. Supp. 2d 1263, 1273 (W.D. Okla. 2005) ("the court concludes that plaintiff's basis for the recovery of indirect profits is too speculative to create a material fact question . . . the commercial is too attenuated to create the nexus required to show causation").

could find from cases in the 8th Circuit, District of Minnesota and nationwide. But FICO's selective quotations are misleading. The cases which FICO relies upon apply the causal nexus requirement. Whether FICO wants to describe its burden as a matter of connection, contribution, or relationship does not matter—regardless of semantics FICO must show that Blaze, in fact, *caused* Federal's profits. FICO and its expert have not, and cannot, make this showing.

> **1.   FICO's "connection" argument is not supported by 8th Circuit, District of Minnesota, or any other case law nationwide.**

FICO relies, almost exclusively, on *Andreas v. Volkswagen of America, Inc.* to claim that the 8th Circuit does not apply the causal nexus requirement and requires no showing of causation. 336 F.3d 789 (8th Cir. 2003). FICO argues that, instead, *Andreas* requires only a showing of "connection" between the infringement and profits. (Dkt. 480, at 2.) *Andreas* did not reject the causal nexus requirement nor did it establish a more lenient "connection" standard. Additionally, the other cases FICO relies upon do not apply a "connection" standard; each requires a showing of causation. FICO's cases, as outlined below, confirm courts consistently apply the causal nexus requirement.

> **a.   FICO selectively quotes from *Andreas* to manufacture a "connection" standard.**

In support of its "connection" standard FICO selectively quotes from a single sentence at the end of the *Andreas* opinion—which sentence contains no case citation—in which the court stated:

> Although the Copyright Act places the burden on the defendant of apportioning the defendant's profits between the infringement and other factors, the copyright holder must first establish *some*

4

> *connection or relationship* between the infringement and the profits
> he seeks.

*Id.* at 799 (emphasis added).  Ignoring the remainder of the opinion, FICO claims this single sentence represents a rejection of the causal nexus requirement by the 8th Circuit and, according to FICO, indicates the 8th Circuit does not require causation at all.

FICO is wrong.  In *Andreas*, the 8th Circuit stated the well-established principle that a plaintiff must establish a causal nexus in order to recover profits:

> The plaintiff has the burden to demonstrate a nexus between the infringement and the indirect profits before apportionment can occur…  The nexus requirement exists in both direct and indirect profits cases.

336 F.3d at 796 (citations and internal quotations omitted).  The 8th Circuit went on to refer to the nexus requirement—*no less than six times* in its 8 page opinion—as requiring proof of a "*causal* connection."  *Id.* at 790, 792, 795, 796, 797, 798 (emphasis added). FICO ignores this fact.  *Andreas* did not, as FICO argues, establish a different standard; it required a showing of causation.

*Andreas* is also distinguishable on its facts.[3]  In *Andreas* the plaintiff, unlike FICO, presented evidence of causation.  The plaintiff showed that the defendant, Audi, had used his artwork without permission as the "centerpiece" of a commercial that was an

---

[3] Other courts and commentators have recognized that *Andreas* is of limited precedential value because of its unique facts and procedural posture.  6 *Patry on Copyright* § 22:134 ("*Andreas* may be explained by the desire not to interfere with a jury award."); *Niemi v. Am. Axle Mfg. & Holding Inc.*, No. 05-74210, 2008 WL 1837253, at *6 (E.D. Mich. Apr. 23, 2008) ("this Court believes *Andreas* is factually distinguishable from this case"); *Interplan Architects, Inc. v. C.L. Thomas, Inc.*, No. 4:08-CV-03181, 2010 WL 4065465, at *7 (S.D. Tex. Oct. 9, 2010) ("Cases such as [*Andreas*] may be distinguished as the plaintiffs there demonstrated more than 'mere speculation' that defendants' gross revenue was related to the infringing conduct").

"important and integral" part of its launch of the Audi TT coupe in the United States. *Id.* at 797. Surveys established that "consumer recall" of the commercial was high and "sales of the TT coupe during the period that the commercial aired were above Audi's projections." *Id.* In addition, the plaintiff presented evidence of the exact number of TT's that were sold during the commercial's three month lifespan. *Id.* at 798. The Court thus found that there was some evidence to support the jury's verdict awarding plaintiff 10% of the profit on the sale of these 5,146 cars. *Id.* The plaintiff there met the causation requirement by putting forth evidence of causation. In contrast, here, FICO and its expert admit they have conducted no causation analysis and have no evidence demonstrating causation.

### b. FICO's "connection" standard is not supported by District of Minnesota case law.

The single District of Minnesota case which FICO mischaracterizes as "controlling law"— *Honeywell Int'l Inc. v. ICM Controls Corp.*—did not alter FICO's threshold burden to prove causation either. No. 11-CV-569 (JNE/TNL), 2017 WL 374907, at *2 (D. Minn. Jan. 26, 2017). *Honeywell* explicitly states *Andreas* requires a plaintiff prove "a causal nexus between the infringing work and gross revenues from a related product[.]" *Id.* at *6. The court, there, required the plaintiff demonstrate causation.

FICO misrepresents the issues in *Honeywell* by claiming the court was addressing whether causation is required. In *Honeywell*, the issue was not whether causation is required. *Honeywell* addressed a specific and narrow issue—the type of causation that is

required where "infringement is less than a wholesale copying of the entirety of a work."[4]

*Id.* at *4.   There, the defendant was accused of copying portions of a competitor's packaging and user manuals for the sale of HVAC products.   The defendant did not copy the entirety of the work.   The primary issue was whether the plaintiff's burden was to prove a "causal nexus" between profits and the labels and manuals *as a whole* or the more "narrow causal nexus" between the infringing *portions* of the labels and manuals and defendant's profits.   *Id.* at *4, *7 (emphasis added).   As the court explained:

> The parties dispute the relevant standard for causation in copyright damages…   The parties' dispute hinges on the "attributable to" requirement.   If the infringement is less than a wholesale copying of the entirety of a work, as alleged here, must a plaintiff prove that the defendant profited from the infringing work, or must the plaintiff prove more specifically that the defendant profited from the infringing portions of the work?

*Id.* at *4.   The parties did not dispute and the court did not address, as FICO claims, whether causation was required at all.   To the contrary, the court repeatedly described the plaintiff's burden of establishing a "causal nexus" or "causal connection" between use of the copyrighted work and defendant's profits.   *Id.* at *2, *5, *6, *7.   The court determined that the plaintiff only had to show a causal connection between the product as a whole and profits.   *Id.* at *6.   The issue *Honeywell* addressed—the causal nexus required where the alleged infringement is less than wholesale copying—is not relevant to this case; FICO does not allege infringement that is less than wholesale copying.

---

[4] FICO claims the issue in *Honeywell* was "based on a misreading of controlling case law identical to Federal's current position."   (Dkt. 480 at 10.)   The issue in *Honeywell*— the type of causation that is required where "infringement is less than a wholesale copying of the entirety of a work"—has nothing to do with Federal's position that causation is required.

In addition to misrepresenting the issue in *Honeywell*, FICO chooses to ignore portions of the *Honeywell* opinion that are directly applicable to this case.  For example, Judge Erickson admonished that for indirect profits cases courts are "particularly sensitive" and guard against cases in which there is only a "feeble" connection:

> [E]ven though the nexus is required in both direct and indirect cases, courts appear particularly sensitive in indirect cases to testing the link between the infringement and the profits of an affiliated item or product line. In other words, they guard against a plaintiff's claiming the defendant's profits from something only feebly connected to the infringement.

*Id.* at *6 n.5.  The court cited with approval cases dismissing disgorgement claims where "the idea that the infringement contributed to consumer purchases was speculative." *Id.* (citing *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004); *On Davis*, 246 F.3d at 161).  Further, as Judge Ericksen recognized in *Honeywell*, even though the statute does not differentiate between direct and indirect profits, it is inherently more difficult to prove a causal connection in these cases.  *See, e.g.*, *Rocking Chair Enterprises*, 407 F. Supp. 2d at 1271 ("Indirect profit awards are relatively rare because courts have found them too speculative."); *Univ. of Colorado Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1375 (Fed. Cir. 1999) ("plaintiff's claims for indirect profits rarely succeed") quoting *Nimmer on Copyright* § 14.03[A]; *Int'l Bus. Machines Corp. v. BGC Partners, Inc.,* No. 10 CIV. 128 PAC, 2013 WL 1775437, at *3 (S.D.N.Y. Apr. 25, 2013) ("Because of the at-best highly speculative nature of all indirect profits

claims" . . . the decision to "send[ ] such claims to a jury should be extremely rare.")

(quoting *Patry on Copyright* § 22:131 (2010)).[5]

FICO's emphasis on *Honeywell* also ignores other precedent from this District,

which acknowledges that a party must show "but for" causation in order to recover under

§504(b). *Tri-Mktg., Inc. v. Mainstream Mktg. Servs., Inc.*, No. CIV.09-13(DWF/RLE),

2010 WL 1924456 (D. Minn. May 12, 2010). In *Tri-Mktg*, Judge Frank explained that a

party failed to meet its burden when it did not establish but for causation:

> While the Court need not reach this issue, it notes that it agrees with
> Defendants that TRI's evidence is too general to establish the
> required nexus. A prevailing plaintiff "is entitled to recover… any
> profits of the infringer that are attributable to the infringement and
> are not taken into account in computing the actual damages." 17
> U.S.C. § 504(b). As is often true when any competitor enters the
> marketplace, Bolder Calls' presence in the marketplace may have
> negatively impacted TRI's profits in some manner. But TRI has
> produced no evidence of a casual link directly between Bolder Calls'
> alleged infringement and TRI's damages. *In other words, TRI has
> not established that but for Bolder Calls' alleged infringement of
> TRI's website, TRI would not have suffered its losses. Without more,
> TRI's damages claim fails.*

*Id.* at *4 n.4 (emphasis added).

FICO's argument contorts the holding and issues addressed in *Honeywell*.

Contrary to FICO's representations, *Honeywell* required a showing of causation and the

otherwise narrow issue it addressed is not applicable to this case. FICO also ignores

---

[5] FICO claims no "heightened burden" is required in indirect profits cases. FICO ignores
the fact that it is attempting to recover indirect profits. The attenuated nature of indirect
profit claims necessarily requires a greater showing by the plaintiff because of the
speculative nature of these claims.

District of Minnesota precedent describing the burden of proof as "but for" causation. FICO's manufactured standard is not supported by District of Minnesota precedent.

### c.   FICO's "connection" standard is not supported by the other case law FICO relies on.

Aside from *Andreas* and *Honeywell*, FICO directs the Court to two other cases it claims demonstrate the standard is "connection," not causation. *See Dwyer Instruments, Inc. v. Sensocon, Inc.*, 873 F. Supp. 2d 1015, 1041 (N.D. Ind. 2012); *Wood v. Houghton Mifflin Harcourt Pub. Co.*, 589 F. Supp. 2d 1230 (D. Colo. 2008). *Dwyer* and *Wood* contain no such holding. In fact, these cases prove the requirement is *causation*, not connection. In *Dwyer*, for example, the court stated that, in establishing a causal nexus "[m]uch of the heavy lifting in this domain inheres in *sophisticated analysis of causation.*" 873 F. Supp. 2d 1015, 1041 (N.D. Ind. 2012) (citing *Nimmer on Copyright* § 14.03) (emphasis added). The court went on to note that when applying the causation requirement:

> When an infringer's profits are only remotely and speculatively attributable to the infringement, courts will deny recovery to the copyright owner. Analytically, an award should be denied in two distinct types of cases: (1) those in which there existed no conceivable *connection* between the infringement and a given revenue stream; and (2) those in which it is unclear how much, if anything, the defendant earned from the infringement.

*Id.* (emphasis added). Although the case may mention the term "connection" in passing, as highlighted above, it is by no means applying some "connection" standard. *Id.* To the contrary, the court confirmed that in establishing "an infringer's profits… much of the heavy lifting" involves "sophisticated analysis of causation" between the alleged infringing use and the defendant's profits. *Id.* Likewise, in *Wood*, the court repeatedly

10

referred to the burden as establishing a "clear *causal* connection between the infringement and the claimed revenues." 589 F. Supp. 2d at 1248 (emphasis added). FICO's cherry-picking of the term "connection" misrepresents the analysis in these cases.

*Dwyer* and *Wood*, like *Andreas* and *Honeywell*, are also distinguishable on their facts. In *Dwyer* and *Wood* the alleged infringing material was incorporated into the product the defendant sold. *Dwyer*, 873 F. Supp. 2d at 1019 (copying manual used in the manufacture, marketing and sale of differential gauges); *Wood*, 589 F. Supp. 2d at 1247-48 (infringement of copyrighted photographs that were published in language arts textbooks). Under those circumstances, the plaintiff was able to present sufficiently non-speculative evidence of a causal connection between the defendant's use of the copyrighted work and the defendant's profits. In *Dwyer* the plaintiff could, and did, present evidence of the sale of differential gauges in which the infringing manual was included. *Dwyer*, 873 F. Supp. 2d at 1039 &1042. In *Wood* the plaintiff could, and did, present evidence of the sale of language art textbooks in which the infringing photographs were included. *Wood*, 589 F. Supp. 2d at 1247-48. Federal does not sell products that incorporate Blaze.

*Andreas*, *Honeywell*, *Dwyer* and *Wood* do not represent, as FICO argues, cases in which courts applied a more lenient "connection" standard and did not require a showing of causation. *Andreas*, *Honeywell*, *Dwyer* and *Wood* are merely cases in which the plaintiff presented sufficient evidence to prove causation. Here, FICO has not established causation; indeed, its expert admits it has conducted no causation analysis and cannot

11

say, one way or the other, whether Federal's use of Blaze caused any of Federal's profits. This failure requires exclusion of Federal's expert.

### 2. Whitener's reliance on the wrong legal standard and failure to conduct *any* causal analysis is basis for exclusion.

As outlined above, FICO is required to establish causation. The standard is not "connection." Whitener is designated to "opine on the contribution to gross written premium made by the FICO Blaze Advisor decision rules management system[.]" (Whitener Rep. at 1.) In other words, he's designated to opine on the extent to which Blaze caused Federal to generate gross written premium, or revenue. To demonstrate that requires a showing of a causal nexus—it requires causation. Whitener admits he conducted no causation analysis and FICO, in its opposition memorandum, does not dispute this fact. Whitener only intends to opine generally regarding the "value" of Blaze to Federal.

Expert opinions are inadmissible where they rely on incorrect legal standards. *Am. Med. Sys., Inc. v. Laser Peripherals, LLC*, 712 F. Supp. 2d 885, 900-901 (D. Minn. 2010) ("[The expert's] opinions are inadmissible because they are based on incorrect legal standards.") (citing *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996) ("Incorrect statements of law are no more admissible through 'experts' than are falsifiable scientific theories.")). Because Whitener has applied the wrong legal standard his opinions must be excluded.

**B.     Federal has Identified Numerous Factually Analogous Cases Holding that Attempts to Establish Causal Nexus based on Use of Software in an Otherwise Complex Revenue Stream is Overly Speculative.[6]**

Federal has offered numerous on-point factually analogous cases dismissing profit claims before trial where the infringing use involved software. *Complex Systems*, No. 08 CIV. 7497 KBF, 2013 WL 5970065 (S.D.N.Y. Nov. 8, 2013); *Int'l Business Machines*, 2013 WL 1775437; *Granger v. Gill Abstract Corp.*, 566 F. Supp. 2d 323, 331 (S.D.N.Y. 2008); *Real View, LLC. v. 20-20 Techs., Inc.*, 811 F. Supp. 2d 553, 561 (D. Mass. 2011); *cf. Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, 2012 WL 3306575, at *3 (E.D.N.Y. Aug. 13, 2012). In contrast, FICO has not directed the court's attention to a single case allowing a disgorgement claim to proceed to trial based on alleged unlicensed use of software. Tellingly, the cases FICO has provided are entirely inapposite.

**1.     FICO makes no effort to distinguish Federal's numerous on-point cases.**

FICO is wrong to argue that the only reason the courts dismissed the profits claims in Federal's software cases is because the plaintiffs' gross revenue figures were too broad. If these courts only took issue with the undifferentiated nature of the plaintiffs' revenue figures, they could have easily remedied this defect short of dismissal by requiring the plaintiffs' to remit their figures prior to trial. They did not take this route

---

[6] Blaze is just one minor component incorporated into a few of Federal's 1,500 applications. (Dkt. 365, ¶ 88.) Charts depicting how Blaze is incorporated into the overall structure of Federal's CSI Express, CUW, IRMA, TAPS, Premium Booking and Evolution applications demonstrate the attenuated nature of FICO's claim. (Declaration of Terrence J. Fleming dated September 9, 2019 ("Fleming Decl."), Ex. A.)

because the primary reason for dismissing these claims was that the plaintiffs failed to present non-speculative evidence that defendants' use of software caused their profits.

In *Complex Systems*, for example, the court explicitly acknowledged that plaintiff's expert had "proffered reasonable estimates of revenues somehow connected to or touching [the software]." 2013 WL 5970065, at *8. The court's primary basis for dismissing this claim was its recognition that "what is missing is the necessary causation component." *Id.* The court in *Complex Systems* went on to explicitly reject FICO's argument:

> In some of these cases (e.g., *BGC Partners* and *DaimlerChrysler*) the copyright owner—unlike [plaintiff] here, as discussed below— sought disgorgement of all profits of the infringer. That, however, was not the only basis on which the courts rejected the indirect profits claim. A key issue was whether the copyright holders showed a causal tie between the profits and infringement. The missing link was that the profits the copyright owner sought to disgorge were caused—or "attributable"—to the infringement. In these cases, while a connection between use of the infringer's product and the revenues obtained was shown, mere connection or usage alone was insufficient—each case confirmed the general underlying proposition that a copyright owner must meet the statutory requirement of showing *attribution.*

*Id.* at *5 (emphasis original). Various other software cases have adopted similar reasoning in rejecting profits claims based on mere use of software within a complex revenue stream. *See, e.g.*, *Int'l Business Machines*, 2013 WL 1775437, at *4 (rejecting profits claim even where use of software was "integral" to business operations and "sudden removal or failure of the Informix software would have devastating consequences to BCG's operational efficiency."); *Granger*, 566 F. Supp. 2d at 331

(calling plaintiff's claim for $766 million[7] based on plaintiff's unlicensed use of computer program for calculating title insurance "preposterous" and "outlandish"); *Real View*, 811 F. Supp. 2d at 561 (reversing jury award of profits concluding the "attenuated relationship between the initial infringement [of plaintiff's software] and Real View's ultimate profits is not a sufficient basis for a damages award on the basis of infringer's profits"); *cf. Point 4 Data*, 2012 WL 3306575, at *3 (E.D.N.Y. Aug. 13, 2012) (dismissing claim for profits under the Digital Millennium Copyright Act where plaintiff failed "to acknowledge the significant disconnect between the profits of a medical supply business and the internal use of a particular accounting software.").

### 2.      FICO's case law—in stark contrast to Federal's—is completely inapposite.

Instead of offering the court any analogous cases involving software FICO cites to a series of highly distinguishable cases involving infringing advertisements and consumer products. *Andreas*, 336 F.3d at 791 (infringing commercial); *Dwyer*, 873 F. Supp. 2d at 1042 (infringing installation instructions that defendant "explicitly invited potential customers to view" before purchasing); *Wood*, 589 F. Supp. 2d at 1235 (infringing textbook); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, No. CIV.A. MJG-06-2662, 2011 WL 4596043, at *1 (D. Md. Sept. 30, 2011) (defendant stole design for "site furnishings"

---

[7] In *Granger*, the Southern District of New York called plaintiff's profits claim for $766 million based on alleged infringing use of software "preposterous" and "outlandish." In its most recent briefing, FICO claims it "is entitled to 100% of Federal's gross revenues" which, FICO alleges, amount to $30.9 billion.  (Dkt. 480 at 5.)  According to its publically available 10-K filings, FICO's 2018 revenue was $1.03 billion and its 2017 revenue was $932.2 million.  In other words, FICO claims it is entitled to roughly 31 times its annual revenue in damages.  FICO's position, like the plaintiff's position in *Granger*, is preposterous and its damages claim is outlandish.

and sold competing products based on stolen design); *Dayva Int'l, Inc. v. Award Prod.*
*Corp.*, 152 F.3d 943 (Fed. Cir. 1998) (catalog advertising patio furniture covers);
*Fournier v. Erickson*, 242 F. Supp. 2d 318, 326 (S.D.N.Y. 2003) (infringing
advertisement); *Garcia v. Coleman*, No. C-07-2279 EMC, 2009 WL 799393, at *4 (N.D.
Cal. Mar. 24, 2009) (infringing wine label "was not simply contained in an advertisement
for the product; it was an integral part of the product itself").

FICO cites no cases involving the use of software. The single case FICO cites
involving the insurance industry is inapposite. *William A. Graham Co. v. Haughey*, 568
F.3d 425, 429 (3d Cir. 2009) (defendant copied templates for proposals to insurance
consumers that were used in sale of insurance products and tied to commissions).
FICO's failure to cite any on point case law when faced with numerous factually
analogous cases involving use of software demonstrates why its disgorgement of profits
claim must fail and its expert's testimony on these points must be excluded as overly
speculative.

### 3.     Whitener's opinions must be excluded as overly speculative.

As outlined above, courts consistently conclude that indirect profits claims
premised on use of software incorporated into an otherwise complex revenue stream are
overly speculative. *Int'l Business Machines*, 2013 WL 1775437, at *3 (indirect profits
argument "overly speculative"); *Complex Systems*, 2013 WL 5970065, at *14 (same);
*Real View*, 811 F. Supp. 2d at 561 (same).   FICO has failed to distinguish this case law
and its own cases are factually inapposite.

Whitener's opinion that incorporation of Blaze as just one of many components within some of Federal's applications contributed to some portion of a $30.9 billion revenue stream is unduly speculative.   Expert testimony is inadmissible where it is speculative.   *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 981 (8th Cir. 2010) ("Expert testimony is inadmissible where, as here, it is excessively speculative or unsupported by sufficient facts.").   The opinions must be excluded on this basis.

### C.    Federal's Burden of Apportionment Only Arises *After* FICO Establishes a Causal Nexus, Which is a Burden FICO Cannot Meet.

FICO claims Federal's argument relates to apportionment, not causation.   (Dkt. 480 at 9.)   This is a red herring.   FICO argues Federal's position is that Whitener's opinions are inadmissible because he failed to calculate the portion of revenue attributable to Federal's infringement.   (*Id.*)   That is not Federal's position.   Federal's position is that Whitener's opinions are inadmissible because he cannot say one way or the other whether Blaze affected Federal's revenues or profits at all.   He openly admits he's conducted no analysis to provide such an opinion:

> Q.    I take it you don't know whether Blaze Advisor actually contributed to an increase in revenue or profit at Federal, correct?
>
> A.    That would require a quantification. I have done no quantification, no.

(Dkt. 381-82, Ex. 2, Whitener Dep., at 157:24-158:3.)

Federal's position has absolutely nothing to do with apportionment, which is a separate burden that arises only *after* FICO has established a causal nexus.   FICO must establish its entitlement to profit damages by presenting non-speculative evidence of

causation *before* Federal's burden of apportioning profits to other causal factors is implicated. *Straus*, 484 F. Supp. 2d at 632 ("defendants did not have the burden to show that their revenues are attributable to factors other than the alleged infringement until Straus presented evidence of a causal link between the infringing acts and their revenues"); *Phoenix Renovation Corp. v. Rodriguez*, 461 F. Supp. 2d 411, 422 (E.D. Va. 2006), aff'd, 258 F. App'x 526 (4th Cir. 2007) (same).   In addition, to satisfy this threshold burden "in cases where profits cannot be traced only to the infringing work but rather to a complex income stream, courts have required that plaintiff introduce detailed evidence linking gross revenues to the infringement." *Rainey v. Wayne State Univ.*, 26 F. Supp. 2d 963, 972 (E.D. Mich. 1998).   Whitener's opinions are inadmissible because he has not conducted any causation analysis and his opinions are overly speculative, not because he did not conduct an apportionment analysis.

## II.   FICO HAS FAILED TO DEMONSTRATE THAT WHITENER IS QUALIFIED OR UTILIZED A RELIABLE METHODOLOGY, WHICH WARRANTS EXCLUSION.

### A.   Whitener is not Qualified to Opine on Whether there is a Causal Nexus between Use of Blaze and Federal's Profits.

FICO claims Whitener is qualified to testify regarding whether there is causation between use of Blaze and Federal's profits based on his experience in the insurance industry and his experience with decision management software.   (Dkt. 480 at 15-19.) Each argument fails.   Whitener's generalized experience in the insurance does not qualify him to testify regarding the issue here—whether there is causation between use of Blaze and Federal's profits.   Additionally, Whitener's experience with decision management software—which is limited to his selection of software for an insurance company in

18

2004—is insufficient to qualify him to opine on whether use of decision management software effects an insurance company's profits.

### 1. Whitener's generalized experience in the insurance industry does not qualify him to testify regarding causation.

FICO expends substantial briefing space going through Whitener's employment history and work in the insurance industry. (Dkt. 480 at 11-19.) FICO claims Whitener is qualified based on his experience underwriting insurance policies, drafting business rules and implementing policy administration systems. FICO ignores that Whitener has been designated to testify regarding whether use of Blaze by Federal caused Federal's profits. (Whitener Rep. at 1.) Whitener's generalized experience in the insurance may qualify him to testify about the insurance industry generally. However, that is not what Whitener is designated to testify to. He is FICO's causation expert. Whitener's experience does not qualify him to opine on whether Blaze caused Federal's profits. That is especially true where, as here, Whitener has next to no experience with decision management software like Blaze.

### 2. Whitener is completely lacking in experience with decision management software, like Blaze.

Whitener purports to be an expert in "the role of decision management software" in the insurance industry. (Whitener Rep. at 5.) In his deposition, however, Whitener admitted he has never worked with decision management software like Blaze. (Dkt. 381-82, Ex. 2, Whitener Dep., at 119:7-11.) He additionally admitted he has never used Blaze and that his exposure to Blaze was limited to an hour-and-a-half demonstration he received from FICO the day before his deposition, after he submitted his report. (*Id.* at

21:12-18; 104:25-105:5)  Whitener has insufficient experience to opine on whether the use of decision management software generates revenue.

In response, FICO provides a single example of Whitener's *selection* (not use) of decision management software in 2004 for a company he worked for.  (Dkt. 480 at 16.)[8] In his management capacity at an insurance company called American Reliable, Whitener selected decision management software called Duck Creek.   (Dkt. 381-82, Ex. 2, Whitener Dep., at 90:14-92:10.)  Whitener's singular experience in selecting decision management software in a managerial capacity 15 years ago does not qualify him to testify regarding whether use of Blaze caused Federal's profits.  Indeed, that FICO could only put forth this single example speaks volumes—it illustrates Whitener's significant lack of experience.

## B.    Whitener's Opinions on Causal Nexus are not Premised on a Reliable Methodology.

Whitener intends to testify regarding the relative "quality" and "value" of Blaze based on his experience in the insurance industry.  Based on those opinions he will tell the jury Blaze contributed to Federal's revenue.   As set forth in Federal's opening brief, Whitener's "quality" and "value" analysis is unreliable—a product's relative quality does

---

[8] FICO also argues that Whitener was not designated as a technical expert and, therefore, his experience with decision management software is irrelevant.  (Dkt. 480 at 17.)  The argument lacks merit.   Whether Whitener was designated as a technical expert is irrelevant.   The issue is that Whitener lacks sufficient experience (or almost any experience) with decision management software.  FICO's reliance on *Bombardier Rec. Prods. v. Arctic Cat Inc.*, 2017 WL 758335 (D. Minn. Feb. 24, 2017) is misplaced.  (Dkt. 480 at 18.)   The issue here, unlike in *Bombardier*, is not just Whitener's lack of experience with Blaze specifically; it is his lack of experience with decision management software generally.  The lack of experience renders his opinions unreliable.

not demonstrate a nexus between use of the product and profits. In response, FICO ignores that it must show a causal nexus; again, mistakenly arguing the standard is "connection." (Dkt. 480 at 24.)

Whitener's opinions must be excluded because the quality and value of a product is not a reliable basis from which to conclude use of the product affected a company's profits. Further, even if these opinions were relevant, they are Whitener's *ipse dixit*.

### 1. Whitener's methodology is unreliable because opinions regarding the "quality" or "value" of Blaze have no bearing on causation.

FICO argues Whitener's methodology is reliable because he was not required to conduct any causation analysis. (Dkt. 480 at 24.) The basis for this argument is FICO's assertion that it is only required to demonstrate a "connection" between use of Blaze and Federal's profits. As outlined in Section I *supra* "connection" is not the standard. FICO is required to demonstrate causation. FICO and its expert admit they have not done so. Whitener's failure to utilize any methodology to demonstrate causation warrants exclusion.

Further, the methodology Whitener did apply—analysis of the "quality" or "value" of Blaze—is not a reliable methodology from which to opine on causation. Courts have rejected attempts by parties to argue that the value of a product establishes a causal nexus. In *Complex Systems*, for example, the court concluded that a software product that was "integrally important to the operations of [defendant's company] and its ability to service its customers" was insufficient to establish causal nexus. 2013 WL 5970065, at *4. Although the software was "integrally important"—its value to the

21

company undoubtedly high—that fact did not show causation. In *DaimlerChrysler* the court considered and rejected the same argument. There, the defendant admitted the value of the software to the company was high—the defendant admitted it could not function without the software. *DaimlerChrysler Servs. v. Summit Nat'l*, 2006 WL 208787, at *3-4 (E.D. Mich. Jan. 26, 2006). The value, however, was not relevant to causation:

> DCS urges the Court to take a different approach, arguing that although it could not likely have carried on business without ALAS (or some suitable substitute), it does not follow that every cent of profit DCS generated was attributable to ALAS. Its analogy is helpful in this respect: DCS could not operate without its toilets either, but that does not mean that all of its profits are attributable to commodes.

*Id.* The court found the indirect profits claim to be overly speculative because the relative value of software to the company did not show causation. *Id.* at *4.

The same reasoning applies here. The relative value of Blaze to Federal is irrelevant to causation because like in *Complex Systems* and *DaimlerChrysler*, opinions regarding the value of Blaze do not show causation. Whitener's stated methodology— concluding that because, in his opinion, Blaze is valuable to Federal or is a high quality product generally then use of the product must have caused some of Federal's profits—is unreliable.

## 2. Whitener's "quality" and "value" opinions are mere *ipse dixit*.

Whitener's opinions regarding the "quality" or "value" of Blaze are also *ipse dixit*. Whitener intends to opine that use of Blaze "enables an insurance company to increase the volume and accuracy of transactions" by increasing (1) speed, (2) precision and

adequacy of quotes, and (3) ease of use for agents and brokers.  (Whitener Rep. at ¶ 29.)

These opinions, however, are only supported by Whitener's *ipse dixit*.

Whitener openly admits that he cannot say whether Blaze, for any transactions at

Federal (or at any other insurance company), actually increases speed, precision and

adequacy of quotes, or ease of use for agents and brokers:

> Q.   Have you done an analysis of what amount of improvement
>       to speed, ease of doing business, adequacy of pricing is
>       attributable to Blaze –
>
>                       *       *       *
>
> A.   That was outside the scope of my responsibilities.
>
> Q.   So you can't opine as to what improvements, if any, in terms
>       of speed, ease of doing business or adequacy of price are
>       specifically attributable to Blaze, correct?
>
> A.   Quantitatively, no.  Qualitatively, yes, the things I've already
>       articulated.

(Dkt. 381-82, Ex. 2, Whitener Dep., at 100:4-17.)  Indeed, had Federal drafted poor rules

the use of Blaze, quite clearly, would not have increased precision or adequacy of quotes.

Whitener should not be allowed to testify regarding the quality and value of Blaze as a

product based solely on his *ipse dixit* and where, as here, he openly admits he has never

used Blaze.

## CONCLUSION

Whitener is a causation expert who has conducted no causation analysis.  In its

response, FICO admits Whitener conducted no causation analysis—Whitener is unable to

provide any opinion regarding whether use of Blaze led to an increase (or decrease) in

Federal's profits.  FICO's attempts to avoid its burden to establish a causal nexus should

be rejected because its position is not supported by 8th Circuit precedent, nor is it supported by any other case law nationwide.  Additionally, Whitener should be excluded because he is not qualified to opine on whether use of Blaze affected Federal's profits and his opinions on this point are not based on a reliable methodology and are, instead, mere *ipse dixit*.


Dated:  September 9, 2019

s/ Terrence J. Fleming

Terrence J. Fleming  (#0128983)
tfleming@fredlaw.com
Leah C. Janus  (#0337365)
ljanus@fredlaw.com
Christopher D. Pham  (#0390165)
cpham@fredlaw.com
Christian V. Hokans  (#0400377)
chokans@fredlaw.com
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
(612) 492-7000 (tel.)
(612) 492-7077 (fax)

*Attorneys for Defendants*

67844925 v2