UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation, | ) ) ) | Case No. 16-cv-1054(WMW/DTS) |
| Plaintiff, | ) ) ) | **Jury Trial Demanded** |
| v. | ) ) | |
| FEDERAL INSURANCE COMPANY, an Indiana corporation and ACE AMERICAN INSURANCE COMPANY a Pennsylvania corporation, | ) ) ) ) ) | **FILED UNDER SEAL** |
| Defendants. | ) ) | |

# **PLAINTIFF FAIR ISAAC CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE TESTIMONY OF STEVEN KURSH**

# TABLE OF CONTENTS

I. Introduction. ........................................................................................................... 1

II. FICO's statement of the law is correct; expert testimony on commercial reasonableness that is unsupported by objective evidence is inadmissible. ............. 1

III. Dr. Kursh's legal interpretation of the Agreement is inadmissible. ......................... 3

    A. Dr. Kursh's opinions are inadmissible legal opinions because they are unsupported by objective evidence of industry practice. ........................ 3

    B. Dr. Kursh assumed no ambiguity in the Agreement; Federal's attempt to support his opinions on this basis fails. ......................................... 4

    C. Dr. Kursh confirmed the contractual terms at issue do not have industry-specific meanings. ................................................................... 5

IV. Dr. Kursh's opinions on the commercial reasonableness of the parties' conduct are inadmissible. ............................................................................... 6

V. Dr. Kursh's opinions on damages are inadmissible. ............................................... 7

    A. Dr. Kursh's opinion on applications that use Blaze Advisor is inadmissible. ........................................................................................ 7

    B. Dr. Kursh's opinion on application sizing is inadmissible. ........................ 8

    C. Dr. Kursh's opinion the parties would have entered into an enterprise license at a discount is based on the wrong law. .......................................... 9

VI. Dr. Kursh's opinion on audit rights is inadmissible; Federal waived its ability to argue mitigation of damages as an affirmative defense. ......................... 11

VII. Conclusion. .......................................................................................................... 11

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Actuate Corp. v. Aon Corp.*,
   C-10-05750, 2012 U.S. Dist. LEXIS 87185 (N.D. Cal. June 18, 2012) .................... 6, 7

*CitiMortgage v. Just Mortg.*,
   No. 4:09-CV-1909DDN, 2012 U.S. Dist. LEXIS 43522 (E.D. Mo. Mar.
   29, 2012) ................................................................................................................. 3

*Crawford Supply Grp. v. Bank of Am.*,
   No. 09-C-2513, 2011 U.S. Dist. LEXIS 117670 (N.D. Ill. Oct. 12, 2011) ................... 2

*Elorac v. Sanofi-Aventis Can.*,
   No. 14-C-1859, 2017 U.S. Dist. LEXIS 133449 (N.D. Ill. Aug. 21,
   2017) .................................................................................................................. 1, 2

*Minasian v. Standard Chartered Bank*,
   109 F.3d 1212 (7th Cir. 1997) ................................................................................. 2

*Montgomery v. Noga*,
   168 F.3d 1282 (11th Cir. 1999) .......................................................................... 9, 10

*Nucor Corp. v. Nebraska Public Power District*,
   891 F.2d 1343 (8th Cir. 1989) .............................................................................. 5, 6

*Sayre v. Musicland Grp.*,
   850 F.2d 350 (8th Cir. 1988) ................................................................................. 11

*Sunflower Redevelopment v. Ill. Union Ins.*,
   No. 4:15-CV-00577-DGK, 2018 U.S. Dist. LEXIS 52266 (W.D. Mo.
   Mar. 28, 2018) ...................................................................................................... 5, 7

*Travellers Int'l v. Trans World Airlines*,
   41 F.3d 1570 (2d Cir. 1994) .................................................................................. 11

*Vanderbilt Mortg. & Fin. v. Flores*,
   No. C-09-312, 2010 U.S. Dist. LEXIS 116434 (S.D. Tex. Nov. 1, 2010) ............... 2, 4

**Other Authorities**

Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii) ................................................................................ 5, 7

Fed. R. Evid. 702 ........................................................................................................... 6

I.  **Introduction.**

The opinions of Federal's licensing expert, Steven Kursh, are inadmissible.  FICO correctly stated the law: expert testimony regarding commercial reasonableness and industry practice must be grounded in objective evidence and the case-specific facts.  Dr. Kursh's opinions fail to meet this standard.  His interpretation of the Agreement is inadmissible legal opinion based on nothing more than his say-so.  It is unsupported by evidence of industry practice and usurps the role of the Court and jury.

Dr. Kursh's opinions regarding the commercial reasonableness of the parties' conduct are also inadmissible.  Dr. Kursh testifies solely based on his "experience" untethered to evidence of industry practice and case-specific facts.  As a result, Dr. Kursh's use of the term "commercially unreasonable" becomes a proxy to describe any FICO action with which he disagrees.

Dr. Kursh's opinions regarding FICO's damages are inadmissible because they merely summarize facts, are unsupported by sound methodology, and are contrary to law.  The Court should exclude Dr. Kursh's proposed opinions in their entirety.

II.  **FICO's statement of the law is correct; expert testimony on commercial reasonableness that is unsupported by objective evidence is inadmissible.**

Federal argues that FICO misrepresents the law on the admissibility of expert testimony on contract interpretation and commercial reasonableness. (Dkt. 496 at 16-18.) Federal is wrong.  FICO's statement of the law is correct.

Testimony on commercial reasonableness and industry practice is admissible only when it is supported by objective evidence.  *Elorac v. Sanofi-Aventis Can.*, No. 14-C-1859, 2017 U.S. Dist. LEXIS 133449, at *51-55 & n.8 (N.D. Ill. Aug. 21, 2017)

1

(admitting expert testimony on commercial reasonableness that was supported by objective evidence and excluding unsupported testimony on the same topic); *Crawford Supply Grp. v. Bank of Am.*, No. 09-C-2513, 2011 U.S. Dist. LEXIS 117670, at *6, *8 (N.D. Ill. Oct. 12, 2011). When testimony regarding commercial reasonableness and industry practice is based solely on the expert's experience, without supporting objective evidence or case-specific facts, it is inadmissible. *Minasian v. Standard Chartered Bank*, 109 F.3d 1212, 1215-16 (7th Cir. 1997); *Vanderbilt Mortg. & Fin. v. Flores*, No. C-09-312, 2010 U.S. Dist. LEXIS 116434, at *15-16 (S.D. Tex. Nov. 1, 2010).

Federal's attempt to distinguish FICO's cases fails. In *Crawford*, the court determined that testimony regarding commercial reasonableness "*with explanation*" would "assist the jury in understanding the evidence," but excluded the proffered testimony because the expert did not show it was supported by objective evidence and case-specific facts:

> [The expert's] experience-based testimony does not satisfy *Daubert's* reliability standard because [the expert] has not articulated what specific aspects of his banking experience support his conclusions regarding the Bank's conduct…. An expert witness cannot merely present his qualifications alongside his opinion; he must explain why the application of his prior experience to the facts at hand compel his final conclusions.

*Crawford*, 2011 U.S. Dist. LEXIS 117670, at *6-8. Likewise, in *Elorac*, the court excluded testimony of one expert who opined on commercial reasonableness because it was unsupported by "particularized facts." 2017 U.S. Dist. LEXIS 133449, at *51. The *Elorac* court admitted testimony of another expert that *was* supported by objective evidence and the expert's analysis of case-specific facts. *Id.* at *54-55 & n.8. These

2

cases show that expert testimony on commercial reasonableness and industry practice that is properly supported by objective evidence is admissible, and that unsupported expert testimony on the same topic is not.

**III.   Dr. Kursh's legal interpretation of the Agreement is inadmissible.**

Dr. Kursh engages in substantive contract interpretation of Paragraph 2.1 and Paragraph 10.8 of the Agreement, as well as the defined term "Territory."  (*See* Dkt. 371 at 14-18, 24-28.)  These opinions are inadmissible.  An expert witness may not substantively interpret a contract because that is a function reserved for the judge and jury.  *See CitiMortgage v. Just Mortg.*, No. 4:09-CV-1909DDN, 2012 U.S. Dist. LEXIS 43522, at *5 (E.D. Mo. Mar. 29, 2012).

**A.    Dr. Kursh's opinions are inadmissible legal opinions because they are unsupported by objective evidence of industry practice.**

Federal attempts to excuse Dr. Kursh's inadmissible contract interpretation by comparing it to the opinion of FICO's rebuttal expert, Mr. Hilliard.  (Dkt. 496 at 13, 21-22.)  This attempt fails.  There are material differences between Dr. Kursh's opinions and Mr. Hilliard's opinions.  As shown in FICO's opposition to Federal's motion to exclude Mr. Hilliard, his opinions are admissible and will aid the trier of fact because they are grounded in objective evidence and case-specific facts.  (Dkt. 475 at 9-24.)

In contrast, Dr. Kursh's opinions interpreting the Agreement are substantive legal opinions that invade the province of the Court and jury.  Dr. Kursh's opinions are based only on his experience, and he fails to link that experience to objective evidence or case-specific facts.  This is the very definition of inadmissible *ipse dixit* testimony.  Mr. Hilliard, in contrast, references objective evidence of industry practice, which allows the

3

jury to evaluate the Agreement against the background of that practice.  *Vanderbilt*, 2010 U.S. Dist. LEXIS 116434, at *15.

Federal concedes evidence of industry practice is necessary to support expert testimony on contract terms, but its assertion that Dr. Kursh relied on such evidence is belied by Dr. Kursh's own report.  (Dkt. 496 at 15.)  The sources to which Federal refers did not form the basis of Dr. Kursh's opinion, nor did he rely on them.  (Dkt. 374 ("Kursh Rep."), Appx. B.)  Federal's backdoor attempt to support Dr. Kursh's opinions with objective evidence is contrary to the facts and must be rejected.

### B. Dr. Kursh assumed no ambiguity in the Agreement; Federal's attempt to support his opinions on this basis fails.

Federal further asserts Dr. Kursh's legal opinions are relevant to resolve any ambiguity in the Agreement.  (Dkt. 496 at 7-8.)  Federal's argument is contrary to Dr. Kursh's opinions.  Dr. Kursh testified that his opinions were *not* premised on an assumption of ambiguity, and that he was "not dealing with ambiguity at all":

> Q. [A]re your opinions premised on a belief, whether it's supplied by counsel or not, that the terms you discuss in your report are ambiguous?
>
> A. No.
>
> Q. Are your opinions based on an understanding that the terms are not ambiguous?
>
> A. I'm not dealing with ambiguity at all, whether terms are ambiguous or not ambiguous.
>
> Q. So just to recap, looking at your opinions, whether or not a term is ambiguous that is not a … subject of your opinions?
>
> A. Correct.

4

(Dkt. 374-1 ("Kursh Dep."), 10:17-11:10.)  Offering Dr. Kursh's opinions on the topic of ambiguity would be directly contrary to his own opinions.  *See* Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii); *Sunflower Redevelopment v. Ill. Union Ins.*, No. 4:15-CV-00577-DGK, 2018 U.S. Dist. LEXIS 52266, at *5 (W.D. Mo. Mar. 28, 2018) ("[Expert] may not testify about matters outside the scope of his expert report.").  Federal's argument that Dr. Kursh's legal interpretation of the Agreement would be admissible to resolve an ambiguity must fail.

### C. Dr. Kursh confirmed the contractual terms at issue do not have industry-specific meanings.

Federal attempts to support Dr. Kursh's legal interpretation by arguing that courts permit testimony on terms with industry-specific meanings.  (Dkt. 496 at 15.)  While that may be true generally, Federal's argument is contrary to Dr. Kursh's opinion.  He testified that "Territory" was a "common English word" without a specific meaning in the software industry.  (Kursh Dep., 132:1-12.)  Dr. Kursh also testified that "No Assignment" provisions such as Paragraph 10.8 are not exclusive to the software industry, and therefore have no industry-specific meaning.  (*Id.*, 157:24-158:9.)  Dr. Kursh's testimony is not admissible to clarify the meaning of contractual terms because, by his own admission, these terms have no industry-specific meanings.

Federal's reliance on *Nucor* is misplaced.  (Dkt. 496 at 15.)  That case states the general proposition that experts may testify regarding terms that have industry-specific meanings.  *Nucor Corp. v. Nebraska Public Power District*, 891 F.2d 1343, 1350 (8th Cir. 1989).  Here, however, Dr. Kursh testified the contractual terms at issue *do not* have

industry-specific meanings. *Nucor* is inapposite by Dr. Kursh's own admission. Dr. Kursh's opinions interpreting the Agreement are inadmissible.

### IV.    Dr. Kursh's opinions on the commercial reasonableness of the parties' conduct are inadmissible.

Federal misses the entire point of FICO's challenge to Dr. Kursh's opinions on commercial reasonableness. (Dkt. 496 at 15-19, 22-24.) The problem is not that Dr. Kursh opined on commercial reasonableness *per se*. The problem is that Dr. Kursh did not support his opinions with objective evidence and case-specific facts. These opinions amount to nothing more than his own *ipse dixit*.

Dr. Kursh opines that FICO's conduct, including asserting the territorial limitation of the Agreement; terminating the Agreement following Federal's breach; withholding consent to assignment following the merger; and calculating damages based on its standard fees, were not, in his view, commercially reasonable. (Kursh Rep., ¶¶ 70-136.) These opinions are unreliable because they lack sufficient evidence. Fed. R. Evid. 702. As shown in Section II above, an expert may not testify about the commercial reasonableness of the parties' conduct when that testimony is unsupported by objective evidence and case-specific facts. Dr. Kursh fails to meet this standard. He simply uses the term "commercially unreasonable" as a proxy to describe any FICO action with which he disagrees. In the absence of objective evidence, Dr. Kursh's opinions regarding the parties' conduct are inadmissible *ipse dixit*.

Federal's attempt to distinguish *Aon* fails. (Dkt. 496 at 18.) While the court stated Dr. Kursh was *qualified* to testify on the meaning of the term "CPU" (the portion of the

6

case Federal block-quotes), it determined testimony on "the particular contracts and conduct at issue in this action" was problematic because it was not linked to objective evidence of industry custom. *Actuate Corp. v. Aon Corp.*, C-10-05750, 2012 U.S. Dist. LEXIS 87185, at *9 (N.D. Cal. June 18, 2012) ("[E]ven though Dr. Kursh is qualified to testify about industry custom … he will be limited on direct examination about custom and practice in the software industry, and likely be precluded from testimony about the particular contracts and conduct at issue in this action.").

The Court should exclude Dr. Kursh's opinions on commercial reasonableness because they are unsupported and would confuse the jury.

**V.    Dr. Kursh's opinions on damages are inadmissible.**

**A.    Dr. Kursh's opinion on applications that use Blaze Advisor is inadmissible.**

Federal's attempt to support Dr. Kursh's opinion on the Blaze-containing applications fails. (Dkt. 496 at 24-26.)  This is a fact issue, and Dr. Kursh brings no independent expertise to bear on the question.

Dr. Kursh opines that FICO's damages calculation is too high because FICO "mistakenly assumes" six applications use Blaze Advisor. (Kursh Rep., ¶¶102-104.) Federal asserts this opinion is relevant to a calculation of the fair market value of the license.  A review of Dr. Kursh's report shows he never opined on the fair market value of the applications.  (*Id.*)  It is impermissible to offer Dr. Kursh's opinions on issues outside the scope of his report. Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii); *Sunflower Redevelopment*, 2018 U.S. Dist. LEXIS 52266, at *5.

7

Federal also argues that Dr. Kursh states a "technical opinion" on the applications using Blaze Advisor. Again, this argument is outside the scope of Dr. Kursh's report; he stated no technical opinions regarding the substantive integration of Blaze Advisor. (Kursh Rep., ¶¶102-104.) Dr. Kursh admitted he never examined Blaze Advisor and has no independent knowledge of the Blaze-containing applications. (Kursh Dep., 38:11-14.) A technical opinion proffered on this basis would be wholly unsupported and have no bearing on the issue of which applications use Blaze Advisor.

Dr. Kursh's opinion merely restates Federal's view of the evidence without applying any specific expertise. (Dkt. 371 at 31.) Dr. Kursh relied on deposition testimony from Federal's 30(b)(6) witness, Mr. Harkin, who in turn was relying on a conversation with the Federal employee Ramesh Pandey. (Kursh Rep., ¶104.) Dr. Kursh adds no knowledge or industry experience to his summary of Federal's view of the facts. (*Id.*; Kursh Dep., 156:25-157:3.) The Court should exclude this opinion.

**B.     Dr. Kursh's opinion on application sizing is inadmissible.**

Federal's defense of Dr. Kursh's sizing opinion fares no better. Federal attempts to support the *factual* basis for Dr. Kursh's opinion. (Dkt. 496 at 26-27.) But FICO's challenge is to Dr. Kursh's sizing *methodology*, which is unreliable by his own admission. (Kursh Dep., 181-186.) Dr. Kursh fundamentally misunderstood the basis for calculating application size based on FICO's nine-factor matrix. He failed to use applicable data from the damages period (2016-2019) and instead relied on a single unsubstantiated data point from 2006. (Kursh Rep., ¶¶108-124.) Dr. Kursh did not base his analysis on the relevant 2019 data—daily transaction volume—even though it was

available to him.  When pressed, Dr. Kursh admitted he did not perform the sizing calculation correctly.  (Kursh Dep., 181-186.)  While Federal argues there are "other factors utilized in determining sizing," each factor must be correct to determine a reliable outcome.  Dr. Kursh's errors with respect to the transactions at issue infect the entire calculation, no matter how many other factors are considered.

Federal also attempts to support Dr. Kursh's erroneous sizing calculation by stating that sizing "doesn't matter to [his] overall opinion."  (Dkt. 496 at 26.)  If that is true, as Dr. Kursh testified, there should be no problem excluding his sizing opinion, which is admittedly unreliable and will mislead the jury.

> C. **Dr. Kursh's opinion the parties would have entered into an enterprise license at a discount is based on the wrong law.**

Federal attempts to support Dr. Kursh's opinion that FICO's application-based damages calculation is not commercially reasonable because *Federal* would not have agreed to an application-based license fee.  (Dkt. 496 at 27-31.)  These opinions on enterprise licensing and discounting presume the legal standard for calculating actual damages is what Federal would have paid FICO for an ongoing license.  (Kursh Rep., ¶¶125-131.)  It is not.  Dr. Kursh's damages opinion is contrary to law.  It is improper to measure damages according to what the opposing party is willing to pay.  *Montgomery v. Noga*, 168 F.3d 1282, 1295-96 (11th Cir. 1999).

Federal cites the same cases it did in its motion to exclude Mr. Zoltowski. (*Compare* Dkt. 406 at 15-18, *with* Dkt. 496 at 28-30.)  As FICO showed in its opposition to that motion, Federal's cases are inapposite.  They address the different issues of the

9

certainty of proof, improper reliance on non-comparable agreements, and damage claims without any corroborating evidence. (Dkt. 489 at 34-37.)

Federal's attempt to excuse Dr. Kursh's assumption of an arm's length transaction also fails. (Dkt. 496 at 29-30.) The non-breaching party seeking damages from the breaching party in litigation is not an arm's length transaction. Dr. Kursh never considered that Federal has been in breach of the Agreement for nearly four years. Instead, he focused on "Federal's actual use of Blaze" and what amount "Federal would have negotiated" to pay. (Kursh Rep., ¶¶125, 136.) This was error. As *Montgomery* explained, "the defendant cannot expect to pay the same price in damages as it might have paid after freely negotiated bargaining, or there would be no reason scrupulously to obey the copyright law." 168 F.3d at 1296 (citation and internal quotation omitted). Dr. Kursh's attempt to measure damages from Federal's perspective should be excluded.

Even under Federal's view, in which the assessment of comparable transactions is permissible to show actual damages, Dr. Kursh's opinion is inadmissible *ipse dixit*. Federal argues that "courts consider various types of evidence" when determining fair market value and that "[o]ne of the most important pieces of evidence are 'benchmark licenses' that authorize similar uses." (Dkt. 496 at 28.) Dr. Kursh cited no benchmark licenses or other transactions that could support his opinion with objective evidence. He simply opined that FICO's damages calculation is not commercially reasonable based on his view of the parties' conduct. (Kursh Rep., ¶¶125-136.) This *ipse dixit* testimony should be excluded.

## VI. Dr. Kursh's opinion on audit rights is inadmissible; Federal waived its ability to argue mitigation of damages as an affirmative defense.

Federal argues, for the first time, that Dr. Kursh's opinion on audit rights is relevant to FICO's purported failure to mitigate damages. (Dkt. 496 at 31-33.) This argument fails, because Federal did not plead mitigation of damages as an affirmative defense. "Failure to mitigate damages is an affirmative defense and therefore must be pleaded." *Travellers Int'l v. Trans World Airlines*, 41 F.3d 1570, 1580-81 (2d Cir. 1994); *Sayre v. Musicland Grp.*, 850 F.2d 350, 354 (8th Cir. 1988). As the Eighth Circuit held, "failure to plead mitigation of damages as an affirmative defense results in a waiver of that defense and its exclusion from the case." *Sayre*, 850 F.2d at 354. Federal waived any ability to rely on mitigation of damages because it did not plead it. (*See* Dkt. 38, ¶¶49-57; Dkt. 137, ¶¶69-77.) Federal's attempt to support Dr. Kursh's opinion on this basis necessarily fails.

Even absent Federal's waiver, Dr. Kursh's opinions regarding audit rights are inadmissible because they are *ipse dixit* and usurp the role of the jury. Federal concedes this opinion is based simply on Dr. Kursh's "experience," but fails to cite objective evidence supporting the opinion. (Dkt. 496 at 33.) Dr. Kursh brings no independent expertise to bear on the issue, and merely tells the jury which conclusion to draw from the facts. The Court should exclude it.

## VII. Conclusion.

Dr. Kursh's opinions are unreliable and unhelpful to the fact finder. The Court should exercise its gatekeeping role and exclude them.

11

Dated: September 9, 2019

        MERCHANT & GOULD P.C.

        /s/Heather J. Kliebenstein
        Allen Hinderaker, MN Bar # 45787
        Heather Kliebenstein, MN Bar # 337419
        Michael A. Erbele, MN Bar # 393635
        Joseph W. Dubis, MN Bar # 398344
        MERCHANT & GOULD P.C.
        150 South Fifth Street
        Suite 2200
        Minneapolis, MN  55402-2215
        Tel:  (612) 332-5300
        Fax:  (612) 332-9081
        ahinderaker@merchantgould.com
        hkliebenstein@merchantgould.com
        merbele@merchantgould.com
        jdubis@merchantgould.com

        Attorneys for Plaintiff FICO