# EXHIBIT 14

**FILED UNDER SEAL**

Thomas Carretta - CONFIDENTIAL - ATTORNEYS' EYES ONLY - 10/9/2018
Fair Isaac Corporation vs. Federal Insurance Company, et al.

CASE 0:16-cv-01054-DTS   Doc. 561-12   Filed 09/09/19   Page 2 of 4

```
 1                UNITED STATES DISTRICT COURT

 2                    DISTRICT OF MINNESOTA

 3
     ------------------------------------------------------------
 4   FAIR ISAAC CORPORATION, )
                             )
 5            Plaintiff(s),)
                             )
 6        vs.                ) File No. 16-cv-1054(WME/DTS)
                             )
 7   FEDERAL INSURANCE       )
     COMPANY,                )
 8   and ACE AMERICAN        )
     INSURANCE COMPANY,      )
 9                           )
              Defendant(s).)
10   ------------------------------------------------------------

11

12

13                          CONFIDENTIAL

14                       ATTORNEYS' EYES ONLY

15

16                           DEPOSITION

17         The following is the videotaped deposition of

18   THOMAS CARRETTA, taken before Julie A. Brooks, Notary

19   Public, Registered Professional Reporter, pursuant to

20   Notice of Taking Deposition, at Fredrikson & Byron,

21   4000 US Bank Plaza, 200 South Sixth Street,

22   Minneapolis, Minnesota, commencing at 9:09 a.m.,

23   Tuesday, October 9, 2018.

24

25
```

Thomas Carretta - CONFIDENTIAL - ATTORNEYS' EYES ONLY - 10/9/2018
Fair Isaac Corporation vs. Federal Insurance Company, et al.
CASE 0:16-cv-01054-DTS   Doc. 561-12   Filed 09/09/19   Page 3 of 4

**Page 137**

1  objections. I'm entitled to ask my questions, and my
2  questions are fair.
3      MS. KLIEBENSTEIN: I disagree with that.
4  I think, when you are at trial and when you are in a
5  deposition, you have to fairly and accurately
6  characterize the document. Otherwise, the question --
7  the question isn't a fair question.
8      MS. JANUS: It is a fair question. I'm
9  asking the questions.
10     Go ahead.
11     THE WITNESS: Could you read back the
12  question, please?
13     (Record read as follows:
14     "Question: Right. And so what I'm
15     trying to get at is that's what this second
16     sentence is -- so the first sentence is just
17     talking generally what either party -- that
18     neither party can, without prior written
19     consent, assign or transfer the agreement.
20     The second sentence is a little
21     more specific, right? It is dealing
22     specifically with what takes place when you
23     have one of these business changes that's
24     enumerated in the second sentence. Is that
25     fair?")

**Page 138**

1      THE WITNESS: No, that's not fair.
2  BY MS. JANUS:
3   Q.  Okay. Explain to me why not.
4   A.  The first sentence is a prohibition thou
5  shall not do. The second sentence is, if any of these
6  events was to occur, it will be deemed an assignment;
7  and therefore, thou shall not do without consent.
8   Q.  Okay. But what thou shall not do, as
9  you say, is in the second -- or the third clause of the
10 second sentence, right? "And Client shall make no
11 expanded use of the Fair Isaac Products as a result of
12 any such event unless and until Fair Isaac provides
13 such written consent, which will not be unreasonably
14 withheld."
15  A.  Is there a question?
16  Q.  Yeah. That was my question.
17  A.  I don't think that was a question. You
18 want to rephrase it for me, please? I didn't get asked
19 a question by you.
20  Q.  The -- you said that the second sentence
21 is -- in one of these situations it is an assignment
22 and thou shall not do.
23     What I'm saying is, okay, but is it,
24 then, the thou shall not do is in that last or third
25 clause of the second sentence, which says, "and client

**Page 139**

1  shall make no expanded use of the Fair Isaac Products
2  as a result of any such event unless and until Fair
3  Isaac provides such written consent, which will not
4  unreasonably be withheld"?
5   A.  So I said the thou shall not do. The
6  proper reading of this sentence is there is an
7  assignment; therefore, you cannot do that without our
8  consent. And in the interim, before you have our
9  consent and we take some other action, whether a
10 negotiated response or not, you shall not make expanded
11 use. They're two separate covenants.
12  Q.  Okay.
13  A.  Because it goes on to say, any attempt
14 to assign or transfer without written consent is
15 void.
16  Q.  Okay. So based on your reading of 10.8,
17 in the event of a change of control or a merger, is it
18 your view that consent from FICO is necessary
19 regardless of whether use is expanded?
20  A.  Yes.
21  Q.  Okay.
22  A.  You must have consent.
23  Q.  Okay. And so any merger, regardless of
24 the type or the size or the nature of the transaction,
25 requires consent from FICO to transfer the license or

**Page 140**

1  to continue to use the license, I should say?
2      MS. KLIEBENSTEIN: I'm going to object
3  to that as calling for speculation.
4  BY MS. JANUS:
5   Q.  Go ahead.
6   A.  My view is that each party is prohibited
7  from making assignment or transfer without prior
8  written consent. Therefore, if you do engage in one of
9  the enumerated list of items in here, then you are in
10 violation of the license, because you failed to get the
11 consent or written consent.
12     Separately, it then says and client
13 shall not make expanded use of the products as a result
14 of any such event unless and until Fair Isaac provides
15 such written consent, which will not be unreasonably
16 withheld.
17     So both here and in the prior section I
18 referenced, there can't be a transfer or assignment, a
19 legal transfer or assignment, without the prior written
20 consent. There just can't be, because that's what the
21 parties said here.
22  Q.  So how is it, then, that the second
23 sentence specifically makes reference to "expanded use
24 of the Fair Isaac Products as a result of any such
25 event unless and until Fair Isaac provides such written

Thomas Carretta - CONFIDENTIAL - ATTORNEYS' EYES ONLY - 10/9/2018
Fair Isaac Corporation vs. Federal Insurance Company, et al.
CASE 0:16-cv-01054-DTS   Doc. 561-12   Filed 09/09/19   Page 4 of 4

Page 141

1  consent, which will not be unreasonably withheld," and
2  the first sentence does not relate in any way to
3  expanded use, correct?
4       A.  The first sentence is an absolute
5  prohibition.  So when you step on the land mine, you
6  step on the land mine.
7            But the second one is, a lot of clients
8  in that situation may say, wait a minute, I don't want
9  to follow these rules, and they go off and do
10 something.  So we add this additional covenant that
11 says you won't make expanded use of it.
12      Q.  Okay.
13      A.  That's because of the right to cure.
14      Q.  Okay.  So is it a fair reading of this
15 section, Section 10.8, that in the event of a merger or
16 change of control, so long as there's no expanded use,
17 then consent is not required?
18      A.  No, that's completely wrong.
19      Q.  No.  Okay.
20      A.  You've ignored the first sentence.
21 You've ignored the first part of the second sentence.
22 You've ignored the third section, and you've ignored
23 3.1.  That is a completely wrong reading.
24      Q.  What is the point of having the expanded
25 use language in the second sentence if the first

Page 142

1  sentence is an outright prohibition of transfer without
2  written consent?
3       A.  Because the parties had also agreed that
4  a violation of the license provides that Fair Isaac, or
5  the party that's not in violation, has the right to
6  terminate.  In the interim, you want to preserve the
7  status quo.
8       Q.  What were you looking at there?
9       A.  Section 9.2.
10      Q.  Okay.  Which subdivision?
11      A.  Both (a) and (c).
12      Q.  And what does that have to do with the
13 expanded use provision?
14      A.  Well, again, you have to first look at
15 the prohibition against an assignment or transfer.  And
16 then secondarily, when you provide notice to a client
17 that you're in violation of the license agreement, you
18 want to preserve the status quo.  So don't make
19 additional use of it or expanded use of it.  It is a
20 separate covenant.
21      Q.  Where is that, what you are talking
22 about?
23      A.  Where is what?
24      Q.  What you just said.  We're talking about
25 a contract.  What are you referring to?

Page 143

1       A.  I'm referring to Section 10.8.
2       Q.  Oh, I thought you were talking about
3  Section 9.2, (a) and (c).
4       A.  9.2 is termination and rights of the
5  parties relative to the event of a termination.
6       Q.  What does that have to do with 10.8?
7       A.  Not obtaining consent is a terminable
8  right.  It's a breach of the agreement.
9       Q.  Okay.
10      A.  So by the time that you discover the
11 breach and then give notice of what your intent is,
12 there's a period where the client may still be
13 misunderstanding what's going on.  Therefore, you don't
14 want them to make any expanded use of it.  In other
15 words, they have to preserve the status quo.  If they
16 choose not to preserve it, that's an independent
17 breach.
18      Q.  Where is that in the language of 10.8?
19      A.  I'll say it again.  "Neither party
20 shall, without the prior written consent of the other
21 party, assign or transfer this Agreement or any part
22 thereof."
23           The second sentence says, "In the
24 event" --
25      Q.  No.  You don't need to read the second

Page 144

1  sentence.  But I'm asking you, where is it that -- you
2  just testified about --
3       A.  I'm not going to answer this question.
4  I want to finish my first answer.  I'd appreciate if
5  you don't interrupt me.
6       Q.  Okay.
7       A.  So I said, then the second sentence
8  says, in the event of any of these enumerated, it is
9  deemed to be an assignment subject to this section,
10 meaning that you have to get consent.  Until then,
11 you'll make no expanded use of the products.
12      Q.  Until when?
13      A.  Until you obtain consent.  It says,
14 "until Fair Isaac provides such written consent."
15      Q.  "Which will not be unreasonably
16 withheld."
17      A.  Right.
18      Q.  So you can use the product after the
19 merger until you get -- your reading of the second
20 sentence is, okay, if you have a merger or change in
21 control, you can use the product without consent --
22      A.  That is not what I said.
23      Q.  -- so long as --
24      A.  I'm sorry.  I interrupted you.  Please
25 go ahead.