UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION, | Court File No. 16-cv-1054 (WMW/DTS) |
| Plaintiff, | |
| v. | DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF BROOKS HILLIARD |
| FEDERAL INSURANCE COMPANY, an Indiana corporation, and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation, | |
| Defendants. | |

TABLE OF CONTENTS

Page

INTRODUCTION ...............................................................................................................1

ARGUMENT .....................................................................................................................2

  I.  FICO'S ATTEMPT TO DISGUISE HILLIARD AS SOLELY A REBUTTAL EXPERT FALLS FLAT ..................................................................................................2

  II.  FICO IGNORES ITS BURDEN TO ESTABLISH A CAUSAL NEXUS, AND INSTEAD, CREATES ITS OWN "CONNECTION" STANDARD .........6

    A.  Section 504(b) Requires a Causal Nexus between Infringement and Revenue, which is But-For Causation ..............................................6

      1.  FICO's "connection" argument fails .........................................................7

        a)  FICO selectively quotes from *Andreas* to manufacture a "connection" standard ..................................................................8

        b)  FICO's "connection" standard is not supported by the 8th Circuit or U.S. District Court for the District of Minnesota case law ...............9

        c)  FICO's "connection" standard flies in the face of well-established case law nationwide ..........................................................................11

      2.  Federal's burden only arises after FICO establishes a causal nexus, which is a burden it cannot meet ............................................................12

    B.  Federal has Identified Numerous Factually Analogous Cases Holding That Use of Software in an Otherwise Complex Revenue Stream is Insufficient to Meet the Causal Nexus Burden .............................................13

      1.  FICO makes no effort to distinguish Federal's numerous on-point cases .........................................................................................13

      2.  FICO's case law – in stark contrast to Federal's – is completely Inapposite ..................................................................................................15

CONCLUSION .................................................................................................................17

INTRODUCTION

FICO concedes that the expert report of Brooks Hilliard is limited to that of a rebuttal witness. However, Hilliard impermissibly responds to Federal's experts' opening reports by asserting affirmative statements that go beyond the scope of a rebuttal report, which FICO relies upon throughout various memoranda in this matter. FICO's attempt to disguise Hilliard's expert report as solely a *rebuttal* report fails, and therefore, the Court should exclude Hilliard's report as an untimely *opening* expert report under the Court's Scheduling Order. Likewise, FICO should not be permitted to use Hilliard's report or testimony to bolster that of its other experts, nor to oppose Federal's motion for summary judgment or case-in-chief at trial. Because *Daubert* itself was decided on an appeal of summary judgment, the *Daubert* standard applies with full force at the summary-judgment stage.

Further, with regard to Hilliard's Opinion #5 that Blaze "contributed to" Federal's revenues and has "significant business value," FICO admits Hilliard: (1) did not conduct any causation analysis; (2) is not an insurance-industry expert; (3) has no expertise in how insurance companies operate; and (4) failed to examine the entirety of Federal's business operations in preparing his report. FICO does nothing to address these failures. Instead, FICO rejects the causal nexus requirement entirely, claiming it is not required to show causation at all, and attempts to create its own standard to demonstrate a "connection" between Federal's use of Blaze and its profits. FICO selectively quotes a handful of cases nationwide arguing a "connection" standard is the rule of law, however, all of these cases require the plaintiff to establish a "causal nexus." Hilliard's

failure to conduct any causation analysis and FICO's application of the wrong legal standard warrants the exclusion of Hilliard's expert report and testimony.

ARGUMENT

I.   FICO'S ATTEMPT TO DISGUISE HILLIARD AS SOLELY A REBUTTAL EXPERT FALLS FLAT.

As a preliminary matter, it is necessary to correct FICO's contention that *Oracle v. Google* is distinguishable. FICO's argument directing the Court to a comparative analysis of the Scheduling Order in *Oracle v. Google* and the Scheduling Order in this case is a red herring. No. C 10-3561 WHA, 2011 WL 5572835, at *3 (N.D. Cal. Nov. 15, 2011). FICO attempts to distinguish *Oracle* from this case by arguing that *Oracle's* separate "burden-based disclosure requirement" was the reason the court excluded the untimely reply of a second damages expert. (Dkt. No. 475 at 2.) FICO points out that the Scheduling Order in *this case* provides that "'Plaintiff's Rebuttal Reports' were due May 31, 2019, and that '[e]ach side may call up to 3 experts"; therefore, Hilliard's "rebuttal" report is timely. (Dkt. No. 475. at 2-3.) FICO fails to respond to Federal's argument that Hilliard's position is limited to that of a rebuttal expert because FICO chose not to disclose an opening report from him. (Dkt. No. 388 at 4.) The court in *Oracle* also excluded the reply of the second damages expert due to an undue "expansion" on damages. *Id.* at *9. Notably, FICO claims that Hilliard's report "expands…conclusions throughout Opinion #5." (Dkt. No. 475 at 28.)

Even if Hilliard's *rebuttal* expert report had been timely, or was harmless and substantially justified, rebuttal experts are not allowed to exceed the scope of proper

2

rebuttal by introducing affirmative statements or proffering legal conclusions. (Dkt. No. 389, Fleming Decl., Ex. 1, Hilliard Rep., at 6-7, 9 n.9, 9-11, 12-13, 18, 20, 21-23, 26-28, 31-36; Ex. 5, Hilliard Dep., at 151, 175:17-22; *see also* Declaration of Christopher D. Pham, Exhibit A, Hilliard Dep., at 121, filed contemporaneously herewith.) Keeping in mind that FICO has the obligation to prove its case in this matter and cannot succeed by simply responding to Federal's defenses, a quick review of Hilliard's "rebuttal" report provides a clear illustration of deliberate gamesmanship. Hilliard's report, for example, which FICO claims only "directly rebuts Federal's licensing expert, Dr. Steven Kursh, and Federal's insurance industry expert, Mr. William McCarter," reads more like an opening expert report. (Dkt. No. 475 at 2.) The thirty-eight page report contains over twenty affirmative statements and at least five legal conclusions with few actual "rebuttal" opinions. FICO is certainly aware that experts are generally barred from opining on purely legal issues (Dkt. No. 475 at 13.). *See* 29 Fed. Prac. & Proc. Evid. § 6265.2 ("it remains exclusively within the judge's power to decide the law…"); *see also, In re Air Crash Disaster at New* Orleans, 795 F.2d 1230, 1233 (5th Cir. 1986) ("[T]he trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument.").

Additionally, Hilliard offers "rebuttal" opinions on issues not even discussed or contemplated by Federal's experts. For example, Hilliard purports to rebut the opinions of Federal's expert Steven Kursh regarding FICO's damages expert's analysis of lost licensing fees and whether those fees are consistent with industry customs, but Hilliard explicitly states his opinion "does not pertain to the basis Mr. Zoltowski uses for his

3

damages calculations[.]" (Dkt. No., 389, Fleming Decl., Ex. 1, Hilliard Rep., at 26.)  Dr. Kursh's opinions, however, specifically relate to and rebut Zoltowski's damages calculations.  (Dkt. No. 388 at 12.)  Hilliard then opines that it is "normal custom and practice of the industry for providers and commercial software to vary prices they charge for software licenses based on numerous measurable and/or estimable metrics." (*Id*., Ex. 1, Hilliard Rep., at 24.)  Likewise, he opines that there are other factors, such as, whether the license is "perpetual" or an "enterprise license" or whether there is "follow-on service revenue" or the existence of any "discount schedule."  (*Id*.)  *Zoltowski did not consider any of these factors.*  Had FICO wanted to disclose an expert on these issues, it could easily have done so in a timely and proper manner rather than relying on untimely rebuttals to attempt to make its case.  *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996) (rebuttal disclosures "are not intended to provide an extension to the deadline by which a party must deliver the lion's share of its expert information").

Likewise, a closer review shows that Hilliard uses "rebuttal" opinions to improperly bolster FICO's case-in-chief and to supplement the opinions of its other experts' opening reports. (Dkt. No. 389, Fleming Decl., Ex. 1, Hilliard Rep., at 23-24, 26, 27.)  Simply put, Hilliard's "rebuttal" report does not counter any new, unforeseen facts, or solely contradict Federal's experts.  Rather, it transforms Hilliard from a software expert retained to exclusively "review and respond to the reports prepared by Federal/Ace American's experts, Dr. Steven Kursh and Mr. William McCarter," to an expert offering opinions on the customs and practices of the insurance industry, while introducing new

4

arguments as noted above. (Dkt. No. 475 at 1; Dkt. No. 389, Fleming Decl., Ex. 1, Hilliard Rep., at 2.) In short, Hilliard's report greatly exceeds the scope of "rebuttal" and shows that FICO was merely waiting to see Federal's expert reports, so that it could introduce an expert to bolster its other experts' opinions disguised as "rebuttal."

Finally, FICO's contention that "Mr. Hilliard will only be brought to trial if Mr. Kursh and Mr. McCarter testify during Federal's case-in-chief" contradicts what FICO actually did—introduce affirmative supporting opinions through Hilliard's report. (Dkt. No. 475 at 2.) An appropriate course of action in this case is to simply limit Hilliard to the role he purports to fill—rebutting whatever testimony Federal presents at trial from its experts. Because that testimony will not be known until trial, FICO should not be able to use Hilliard's expert opinions, report, and/or testimony to support any of its affirmative claims at the summary-judgment stage or at trial.

II. **FICO IGNORES ITS BURDEN TO ESTABLISH A CAUSAL NEXUS, AND INSTEAD, CREATES ITS OWN "CONNECTION" STANDARD.**

A. Section 504(b) Requires a Causal Nexus between Infringement and Revenue, which is But-For Causation.

FICO's attempt to recast its burden under the Copyright Act to recover profits by selectively quoting the most permissive language it could find from cases at random is disingenuous. (Dkt. No. 475 at 26.) Further, it is an attempt to distract the Court from the key facts that mandate dismissal of this claim.

First, FICO has not directed the Court's attention to a single case allowing a disgorgement claim to proceed to trial based on alleged unlicensed use of software. In comparison, Federal has offered several cases dismissing such claims. Second, in asking

5

the Court to depart from this precedent, FICO ignores the fact that Hilliard's report provided no theory or technique used to conclude that Blaze "contributes" to Federal's revenue.  (Dkt. No., Fleming Decl., Ex. 1, Hilliard Rep., at 31-36.)  Moreover, Hilliard admits he had not conducted *any* causation analysis, and likely as a result, cannot quantify Blaze's contribution to Federal's revenue. (Dkt. No. 389, Fleming Decl., Ex. 5, Hilliard Depo., at 187:22-188:18.) Hilliard's admission makes sense for three reasons: (1) there is no record evidence showing that Federal's use of this minor software component within the IT infrastructure of its servicing operations caused Federal to sell a single insurance policy; (2) Hilliard admits he has no expertise in how insurance companies work, because he is not an insurance industry expert; and (3) Hilliard failed to examine the entirety of Federal's business operations in preparing his report. (*Id*. at 172:5-21.) Thus, whether FICO wants to describe its burden as a matter of connection, contribution, or relationship does not matter because FICO must still show that Blaze, in fact, *caused* Federal to profit.  It has not made this showing.

       1.      FICO's "connection" argument fails.

The policy behind requiring proof of a "*causal* nexus" between the alleged infringement and a party's profits is straightforward.  In awarding profits, "[t]he Supreme Court has made very clear that the purpose behind the measure of damages set forth in § 504(b) is 'to provide just compensation for the wrong, not to impose a penalty by giving to the copyright proprietor profits which are not attributable to the infringement.'" *Gregerson v. Vilana Fin., Inc.*, No. CIV.06-1164 ADM/AJB, 2008 WL 451060, at *5 (D. Minn. Feb. 15, 2008) quoting *Sheldon v. Metro–Goldwyn Pictures*

6

*Corp.*, 309 U.S. 390, 399 (1940); *see also Bucklew v. Hawkins, Ash, Baptie & Co., LLP.*, 329 F.3d 923, 931 (7th Cir. 2003) ("the statute contains no provision for punitive damages"); *Oboler v. Goldin*, 714 F. 2d 211, 213 (2d Cir. 1983) (same). In order to avoid imposing a penalty then, Congress only allowed disgorgement of profits "attributable to" copyright infringement. 17 U.S.C. § 504(b). Distinguishing profits that are attributable to infringement from those that are not necessarily requires proof of causation because "[a] plaintiff cannot simply presume that the sales of a defendant's products are due to copyright infringement." *Fox Controls, Inc. v. Honeywell, Inc.*, No. 02 C 346, 2005 WL 1705832, at *8 (N.D. Ill. July 14, 2005) (collecting cases).

> a)   FICO selectively quotes from *Andreas* to manufacture a "connection" standard.

FICO's cherry picking of its preferred verbiage from the *Andreas* opinion does not change its burden under § 504(b). (Dkt. 475 at 26.) FICO contradicts itself in making this argument by arguing that "*Andreas* does not require 'but for' causation" (Dkt. No. 475 at 26) and in later papers FICO claims that *Andreas* sets forth a "causation" requirement (Dkt. No. 499 at 36). But to show "causation" there must be proof that an act caused some profits. The court recognized this by requiring copyright owners to establish "*the fact* that an infringement contributed to a defendant's profits" and also by describing this requirement as a "causal connection" several times. *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 792, 795-99 (8th Cir. 2003) (emphasis in original). Accordingly, *Andreas* did not alter a copyright owner's threshold burden to prove that an alleged act of infringement caused profits before it may recover the

7

defendant's profits; rather, the court merely recognized that the plaintiff had satisfied this burden in *that* case.

In *Andreas*, the plaintiff, unlike FICO, presented evidence of causation. The plaintiff showed that the defendant, Audi, had used his artwork without permission as the "centerpiece" of a commercial that was an "important and integral" part of its launch of the Audi TT coupe in the United States. *Id.* at 797. Surveys established that "consumer recall" of the commercial was high and "sales of the TT coupe during the period that the commercial aired were above Audi's projections." *Id.* In addition, the plaintiff presented evidence of the exact number of TT's that were sold during the commercial's three month lifespan. *Id.* at 798. The Court thus found that there was some evidence to support the jury's verdict awarding plaintiff 10% of the profit on the sale of these 5,146 cars.[1] *Id.*

> b) FICO's "connection" standard is not supported the 8th Circuit or U.S. District Court for the District of Minnesota case law.

The 8th Circuit has not addressed this issue since *Andreas* and the single District of Minnesota case that FICO mischaracterizes as "controlling law" did not alter FICO's threshold burden to prove causation in any event. The defendant in *Honeywell Int'l Inc.*

---

[1] Other courts and commentators have recognized that *Andreas* is of limited precedential value because of its unique facts and procedural posture. 6 *Patry on Copyright* § 22:134 ("*Andreas* may be explained by the desire not to interfere with a jury award."); *Niemi v. Am. Axle Mfg. & Holding Inc.*, No. 05-74210, 2008 WL 1837253, at *6 (E.D. Mich. Apr. 23, 2008) ("this Court believes *Andreas* is factually distinguishable from this case"); *Interplan Architects, Inc. v. C.L. Thomas, Inc.*, No. 4:08-CV-03181, 2010 WL 4065465, at *7 (S.D. Tex. Oct. 9, 2010) ("Cases such as [*Andreas*] may be distinguished as the plaintiffs there demonstrated more than 'mere speculation' that defendants' gross revenue was related to the infringing conduct").

*v. ICM Controls Corp.* was accused of copying portions of a competitor's packaging and user manuals for HVAC products. No. 11-CV-569 (JNE/TNL), 2017 WL 374907, at *2 (D. Minn. Jan. 26, 2017). The primary issue was whether the plaintiff's burden was to prove a "causal nexus" between profits and the infringing labels and manuals *as a whole* or the more "narrow *causal* nexus" between the infringing *portions* of these items and defendant's profits. *Id.* at *4, *7 (emphasis added). The court determined that the plaintiff only had to satisfy the less narrow view by showing a *causal* connection between the product as a whole and profits. *Id.* at *6. The court then found that the plaintiff had satisfied this burden because its expert examined "what drives contractors' purchasing decisions" and determined "that product manuals and labels are necessary and helpful to the sale of the HVAC-related products at issue." *Id.* at *7.

FICO ignores the direct contrast between the expert's evidence of causation in *Honeywell* and Hilliard's failure to provide anything similar. Overall, Hilliard's *ipse dixit* Opinion #5, even at face value, fails to establish any fact or evidence. FICO also cherry picks *Honeywell* to bolster its "connection" argument under *Andreas*: "[t]his district has found 'connection' to mean the infringement 'contributes to' profits." (Dkt. No. 475 at 26.) Ultimately, FICO ignores Judge Ericksen's admonition in *Honeywell*, which is directly applicable to this case:

> "even though the nexus is *required* in both direct and indirect cases, courts appear particularly sensitive in indirect cases to testing the link between the infringement and the profits of an affiliated item or product line. In other words, they guard against a plaintiff's claiming the defendant's profits from something only feebly connected to the infringement."

9

*Id.* at *6 n.5. The court cited with approval cases dismissing disgorgement claims where "the idea that the infringement contributed to consumer purchases was speculative." *Id.* citing *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004) and *Davis v. The Gap, Inc.*, 246 F.3d 152, 161 (2d Cir. 2001).

FICO's preferred verbiage from *Andreas*, *Honeywell*, and other distinguishable cases ignores this District's precedent, explicitly acknowledging that a party must show "but for" causation in order to recover under §504(b). *Tri-Mktg., Inc. v. Mainstream Mktg. Servs., Inc.*, No. CIV.09-13(DWF/RLE), 2010 WL 1924456, at *4 n.4 (D. Minn. May 12, 2010).

        c)    FICO's "connection" standard flies in the face of well-established case law nationwide.

FICO's rejection of its burden to provide evidence of causation in order for its profits claim to survive at this stage of litigation has also been contradicted by numerous courts nationwide. *See, e.g.*, *Lynch v. Trendwest Resorts Inc.*, 64 F. App'x 44, 45 (9th Cir. 2003) (quoting *Mackie v. Rieser*, 296 F.3d 909, 911 (9th Cir. 2002) (plaintiff "was required to 'proffer some evidence to create a triable issue regarding whether the infringement at least partially caused the profits that the infringer generated as a result of the infringement.'")); *Mager v. Brand New Sch.*, No. 03 CIV. 8552 (DC), 2004 WL 2413978, at *4 (S.D.N.Y. Oct. 28, 2004) ("This claim fails because it is not possible to show the required "causal connection" between the infringement and BNS's profits."); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 159 (2d Cir. 2001) (affirming summary judgment dismissing profits claim where plaintiff "failed to show any causal connection

10

between the infringement and the defendant's profits"); *Rocking Chair Enterprises, L.L.C. v. Macerich SCG Ltd. P'ship*, 407 F. Supp. 2d 1263, 1273 (W.D. Okla. 2005) ("the court concludes that plaintiff's basis for the recovery of indirect profits is too speculative to create a material fact question . . . the commercial is too attenuated to create the nexus required to show causation"); *Straus v. DVC Worldwide, Inc.*, 484 F. Supp. 2d 620, 632 (S.D. Tex. 2007) (granting summary judgment dismissing profits claim where plaintiff provided no evidence of a "causal link").

Further, as Judge Ericksen recognized in *Honeywell*, even though the statute does not differentiate between direct and indirect profits, it is inherently more difficult to prove a causal connection in indirect profits cases. *See, e.g., Rocking Chair Enterprises, L.L.C.* 407 F. Supp. 2d at 1271 ("Indirect profit awards are relatively rare because courts have found them too speculative."); *Rainey v. Wayne State Univ.*, 26 F. Supp. 2d 963, 972 (E.D. Mich. 1998) ("The problem with plaintiff's attempt to rely on the traditional minimal pleading requirement in this case, however, is that courts have not strictly applied that standard where the copyright holder seeks to recover indirect profits."); *Univ. of Colorado Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1375 (Fed. Cir. 1999) ("plaintiff's claims for indirect profits rarely succeed") quoting *Nimmer on Copyright* § 14.03[A]; *Int'l Bus. Machines Corp. v. BGC Partners, Inc.,* No. 10 CIV. 128 PAC, 2013 WL 1775437, at *3 (S.D.N.Y. Apr. 25, 2013) (quoting *Patry on Copyright* § 22:131 (2010) ("Because of the at-best highly speculative nature of all indirect profits claims" . . . the decision to "send[ ] such claims to a jury should be extremely rare.")).

>   2. Federal's burden only arises after FICO establishes a causal nexus, which is a burden it cannot meet.

FICO claims that Federal again "misses the point" of Hilliard's Opinion #5 by focusing on the "burdens of proof" under § 504(b). (Dkt. No. 475 at 27.) FICO, again, directs the Court's attention away from its burden to establish entitlement to profit damages by presenting non-speculative evidence of causation *before* Federal has a burden that is implicated. *Straus*, 484 F. Supp. 2d at 632 ("defendants did not have the burden to show that their revenues are attributable to factors other than the alleged infringement until Straus presented evidence of a causal link between the infringing acts and their revenues"); *Phoenix Renovation Corp. v. Rodriguez*, 461 F. Supp. 2d 411, 422 (E.D. Va. 2006), aff'd, 258 F. App'x 526 (4th Cir. 2007) (same). To satisfy this threshold burden "in cases where profits cannot be traced only to the infringing work but rather to a complex income stream, courts have required that plaintiff introduce detailed evidence linking gross revenues to the infringement." *Rainey,* 26 F. Supp. 2d at 972.

Rather than "solely" rebutting Mr. McCarter's opinion regarding the value of Blaze (Dkt. No. 475 at 27) as FICO claims, or identifying deficiencies in Federal's burden of proof, assuming *arguendo*, FICO met its burden; FICO uses affirmative, expanded conclusions throughout Hilliard's Opinion #5 as a second attempt to satisfy its burden of a "causal connection." (Dkt. No. 389, Fleming Decl., Ex. 1, Hilliard Rep., at 30-36.)

>   B. Federal has Identified Numerous Factually Analogous Cases Holding that Use of Software in an Otherwise Complex Revenue Stream is Insufficient to Meet the Causal Nexus Burden.

12

1. FICO makes no effort to distinguish Federal's numerous on- point cases.

FICO is wrong to argue that "Federal's challenge is based on an incorrect reading of law." (Dkt. No. 475 at 25.) FICO's only effort to distinguish Federal's multiple on-point software cases is to mischaracterize their holdings by arguing that the only reason these courts dismissed disgorgement claims was due to the fact that the plaintiffs' presented gross revenue figures that were too broad. If these courts' only took issue with the undifferentiated nature of the plaintiffs' revenue figures in those cases, they could have easily remedied this defect short of dismissal by requiring the plaintiffs' to remit their figures prior to trial. They did not take this route because the primary reason for dismissing these claims was that the plaintiffs failed to present non-speculative evidence that defendants' use of software caused profits.

In forwarding Hilliard's five affirmative conclusions, guised as rebuttal opinions, FICO replaces the required "causal nexus" component with its manufactured "connection" standard. (Dkt. No. 475 at 27.) Hilliard's conclusions that relate to Federal's use of Blaze and revenues subject to disgorgement, fail. (*Id.*) In *Complex Systems*, the court explicitly acknowledged that plaintiff's expert had "proffered reasonable estimates of revenues somehow connected to or touching [the software]." No. 08 CIV. 7497 KBF, 2013 WL 5970065, at *8 (S.D.N.Y. Nov. 8, 2013). The court's primary basis for dismissing this claim, however, was its recognition that "what is missing is the necessary causation component." *Id.* The court in *Complex Systems* went on to explicitly reject FICO's argument:

13

> In some of these cases (e.g., *BGC Partners* and *DaimlerChrysler* ) the copyright owner—unlike [plaintiff] here, as discussed below—sought disgorgement of all profits of the infringer. That, however, was not the only basis on which the courts rejected the indirect profits claim. A key issue was whether the copyright holders showed a causal tie between the profits and infringement. The missing link was that the profits the copyright owner sought to disgorge were caused—or "attributable"—to the infringement. In these cases, while a connection between use of the infringer's product and the revenues obtained was shown, mere connection or usage alone was insufficient—each case confirmed the general underlying proposition that a copyright owner must meet the statutory requirement of showing *attribution.*

*Id.* at *5 (emphasis original). Various other software cases have adopted similar reasoning in rejecting profits claims based on mere use of software within a complex revenue stream.  *See, e.g.*, *Real View, LLC. v. 20-20 Techs., Inc.*, 811 F. Supp. 2d 553, 561 (D. Mass. 2011); *cf. Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, 2012 WL 3306575, at *3 (E.D.N.Y. Aug. 13, 2012) (dismissing claim for profits under the Digital Millennium Copyright Act where plaintiff failed "to acknowledge the significant disconnect between the profits of a medical supply business and the internal use of a particular accounting software."); *Granger v. Gill Abstract Corp.*, 566 F. Supp. 2d 323, 331 (S.D.N.Y. 2008) (calling plaintiff's claim for $766 million based on plaintiff's unlicensed use of computer program for calculating title insurance "preposterous" and "outlandish").

FICO fails to provide supporting case law for its disgorgement claim, and further fails to distinguish Federal's on-point cases. Hilliard's Opinion #5 is insufficient to support FICO's indirect profit disgorgement claim, in which it seeks to recover an indeterminate amount of a *$30.9 billion revenue stream*.  (Dkt. No. 388 at 17.)

14

        2.      FICO's case law—in stark contrast to Federal's—is completely inapposite.

Instead of offering the court any analogous cases involving software FICO cites to a series of highly distinguishable cases involving infringing advertisements and consumer products. *Andreas*, 336 F.3d at 791 (infringing commercial); *Dwyer Instruments, Inc. v. Sensocon, Inc.*, 873 F. Supp. 2d 1015, 1042 (N.D. Ind. 2012) (infringing installation instructions that defendant "explicitly invited potential customers to view" before purchasing); *Wood v. Houghton Mifflin Harcourt Pub. Co.*, 589 F. Supp. 2d 1230, 1235 (D. Colo. 2008) (infringing textbook); *Honeywell*, 2017 WL 374907, at *4 (D. Minn. Jan. 26, 2017) (infringing labels and product manuals); *Dayva Int'l, Inc. v. Award Prod. Corp.*, 152 F.3d 943 (Fed. Cir. 1998) (catalog advertising patio furniture covers); *Fournier v. Erickson*, 242 F. Supp. 2d 318, 326 (S.D.N.Y. 2003) (infringing advertisement).

The only case that FICO cites involving insurance, in a separate brief (Dkt. 480 at 3.), only demonstrates the reasons why FICO's claim for profits must fail on this issue. In *William A. Graham Co. v. Haughey*, the defendant copied templates for proposals to insurance consumers. 568 F.3d 425, 429 (3d Cir. 2009). The court, in a section of the opinion entitled *"Causation,"* framed the issue of whether the plaintiff could recover profits as requiring proof of "a legally sufficient causal connection between the copyright infringement at issue and the profits of [defendants]." *Id.* at 442. (emphasis added) The court found the plaintiff had presented sufficient proof because the proposals "were an important part of the sales process—in fact, [*the defendant*] even testified that some

15

clients were convinced to purchase insurance . . . on the basis of the proposals." *Id.* at 430.  Thus, the court allowed the plaintiff to seek profits in the form of the "commissions from [defendants'] clients that were provided with infringing proposals."  *Id.* at 442.  Hilliard has provided nothing like this in terms of evidence of causation to support his opinions, accordingly, Hilliard's fifth opinion should be excluded along with his others for the reasons stated herein and in Federal's original Motion.  (Dkt. 388.)

## CONCLUSION

For the foregoing reasons, Federal respectfully requests that the opinions and testimony of Mr. Brooks Hilliard be excluded from these proceedings.

Dated:  September 9, 2019               *s/Terrence J. Fleming*
                                        Terrence J. Fleming (#0128983)
                                        tfleming@fredlaw.com
                                        Leah Janus (#0337365)
                                        ljanus@fredlaw.com
                                        Christopher D. Pham (#0390165)
                                        cpham@fredlaw.com
                                        Christian Hokans (#0400377)
                                        chokans@fredlaw.com
                                        FREDRIKSON & BYRON, P.A.
                                        200 South Sixth Street, Suite 4000
                                        Minneapolis, MN 55402-1425
                                        (612) 492-7000 (tel.)
                                        (612) 492-7077 (fax)

                                        *Attorneys for Defendants*

67892553 v1