# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION, | Court File No.  16-cv-1054 (WMW/DTS) |
| Plaintiff, | |
| v. | **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |
| FEDERAL INSURANCE COMPANY, an Indiana corporation, and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation, | |
| Defendants. | |

# **TABLE OF CONTENTS**

Page

I. FEDERAL IS ENTITLED TO SUMMARY JUDGMENT ON FICO'S FOREIGN USE AND INSTALLATION CLAIMS ..............................................1

II. FEDERAL IS ENTITLED TO SUMMARY JUDGMENT REGARDING § 10.8 ..................................................................................................................2

III. FICO'S COPYRIGHT CLAIM FOR DISTRIBUTION MUST BE DISMISSED ..................................................................................................2

IV. FICO'S §10.8 AND §9.3 CLAIMS DO NOT PROVIDE A BASIS FOR INFRINGEMENT CLAIMS ..................................................................3

V. FICO'S DAMAGES CLAIMS FAIL ...................................................................4

   A. FICO's Damages Lack any Reasonable Foundation .......................................4

VI. FICO'S DISGORGEMENT CLAIM MUST BE DISMISSED ..........................5

   A. FICO's Interpretation of § 504(b) and the Applicable Case Law is Wrong ..5

   B. FICO Did Not Meet its Burden Under § 504(b) ............................................7

## I. FEDERAL IS ENTITLED TO SUMMARY JUDGMENT ON FICO'S FOREIGN USE AND INSTALLATION CLAIMS.

There is no dispute that, in the negotiation of the License Agreement, the term "Territory" was purposely removed from the only clause in which it was actually used. FICO's argument that the unused definition of "Territory" is *itself* an operative "term" ignores the text within the Definitions section providing that defined terms have meaning only "as *used* in this Agreement with initial capital letters." If appearing within the definitions section sufficed for such "use," then that sentence would not exist. FICO has failed to cite to *any* legal authority to support their position that unused defined terms are operative.

FICO tries to explain away the repeated statements of its many employees that the license was global, stating they were made at different times, arguing they do not mean what they say, hiding their obvious import behind privilege claims, and even labeling them "mistaken." However, the fact is that *all* of FICO's key witnesses agreed the license was global and never mentioned an installation restriction, which is consistent with the declarations submitted by Federal.

FICO also argues that "[a]fter-the-fact documents are not admissible extrinsic evidence of the parties' intent." (Dkt. 499 at 8.) New York law is to the contrary. *Stone Key Partners LLC v. Monster Worldwide, Inc.*, 333 F. Supp. 3d 316, 324–25 (S.D.N.Y. 2018) ("[T]he practical interpretation of a contract by the parties manifested by their conduct subsequent to its formation for any considerable length of time before it becomes a subject of controversy, is entitled to great ... weight.").

## II.  FEDERAL IS ENTITLED TO SUMMARY JUDGMENT REGARDING § 10.8.

FICO now argues that the merger *is* the "expanded use" under sentence two of § 10.8.  Therefore, any merger assignment required consent regardless of use.  In so doing, FICO admits that the concept of "expanded use" in clause two of sentence two is meaningless surplusage, stating actual "use is irrelevant."  If "expanded use" means "merger," then § 10.8 says the same thing twice.  According to FICO's argument:

- Sentence one provides that an assignment requires consent.
- Clause one of sentence two says that a merger is an assignment, requiring consent.
- Clause two of sentence two repeats clause one—a merger is an assignment, requiring consent.

FICO's new interpretation also renders meaningless that part of sentence two that says Federal "shall make no expanded use … <u>as a result</u> of any such [merger]."  The expanded use must *result from* the merger to trigger the consent requirement.

## III.  FICO'S COPYRIGHT CLAIM FOR DISTRIBUTION MUST BE DISMISSED.

FICO asserts that it can rely on the domestic "predicate act" of "distribution" for its claim that use outside of the United States violates the Copyright Act.  The only acts of distribution identified by FICO, however, occurred outside the Copyright Act's three year statute of limitations.  On this basis alone, FICO's claims must be dismissed.  17 U.S.C. § 507(b); *see also Goldberg v. Cameron*, No. C-05-03534 RMW, 2009 WL 2051370, at *3 (N.D. Cal. 2009) (plaintiff must show "infringing acts within the three years preceding his filing of the suit").  Nor may FICO rely on time-barred claims of

2

distribution to assert claims based on use by Federal's foreign affiliates within the limitations period. *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 890 (6th Cir. 2004) ("Just as claims against a direct infringer who commits no acts within the three-year limitations period are time barred, claims against a contributory infringer who commits no acts within the limitations period are also time barred.")

The "predicate act doctrine" does not save FICO's claim. (Dkt. 499 at 26-27.) First, the Eighth Circuit has not recognized the doctrine. Second, the cases relied upon by FICO (*Sheldon, Los Angeles News Serv.* and *Tire Eng'g & Distribution LLC)* are distinguishable because the entities that profited from the foreign exploitation were named as defendants. Here, Federal's foreign affiliates are not named defendants and FICO has not shown any domestic enrichment to Federal as a result of its affiliates' use of Blaze.

## IV.   FICO'S § 10.8 AND § 9.3 CLAIMS DO NOT PROVIDE A BASIS FOR INFRINGEMENT CLAIMS.

FICO argues that Federal's continued use of Blaze after the purported license termination pursuant to §§ 10.8 and 9.3 gives rise to a Copyright claim. It does not, because mere allegations of unlicensed use do not implicate any of the "exclusive rights" granted by § 106 of the Copyright Act. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 447 (1984) ("unlicensed use of the copyright is not an infringement unless it conflicts with one of the specific exclusive rights conferred by [17 U.S.C. § 106]"); *Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 432 (8th Cir. 1993) ("a contractual restriction on use of a computer program [is] distinct from the

exclusive copyright rights"). FICO does not cite to *any* applicable legal authority to support its position[1], and Federal's legal authority is directly on point.[2] (Dkt. 445 at 24-25.) This is an independent basis for the dismissal of FICO's Copyright claims.

## V. FICO'S DAMAGES CLAIMS FAIL.

### A. FICO's Damages Lack any Reasonable Foundation.

Under both New York law and the Copyright Act, FICO is required to establish the "fair market value" of Blaze to recover actual damages, and its measure of this value must be based upon a "stable foundation for a reasonable estimate." *Freund v. Washington Square Press, Inc.*, 34 N.Y.2d 379, 383 (1974); *Bell v. Taylor*, 827 F.3d 699, 708 (7th Cir. 2016). FICO has not presented *any* "actual licensing evidence" to support its claim for damages amounting to at least 20 times the market value for a Blaze license, and this is fatal to its claim. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77-81 (Fed. Cir. 2012) (reversing damages award where plaintiff's "theory cannot be reconciled with the actual licensing evidence, which is highly probative of . . . economic value in the marketplace").[3]

---

[1] The only case FICO cites in support of its position *(Encyclopedia Brown Prods.)* is distinguishable because it involved the unlicensed display and distribution of a copyrighted television show which is *explicitly* protected by § 106. 17 U.S.C. § 106(3), (5).

[2] The Court's ruling at the Motion to Dismiss stage merely acknowledged that FICO had plausibly stated a claim based on unlicensed use, it did not relieve FICO of its burden to explain how this use implicates a § 106 right. (Dkt. 33 at 14.)

[3] FICO's cases are inapposite. *United Tel. Co. of Missouri v. Johnson Pub. Co.*, 671 F. Supp. 1514, 1524 (W.D. Mo. 1987) (no dispute that claimed fee approximated fair value); *Montgomery v. Noga*, 168 F.3d 1282, 1294 (11th Cir. 1999) (counsel failed to object to jury instruction).

## VI. FICO'S DISGORGEMENT CLAIM MUST BE DISMISSED.

### A. FICO's Interpretation of § 504(b) and the Applicable Case Law is Wrong.

FICO does not dispute that "[b]ecause of the at-best highly speculative nature of all indirect profits claims," (like this one) "the decision to send such claims to a jury should be extremely rare." *IBM v. BGC Partners, Inc.*, No. 10 CIV. 128 PAC, 2013 WL 1775437, at *3 (S.D.N.Y. Apr. 25, 2013). Nor does it dispute that these claims inherently require "detailed evidence linking gross revenues to the infringement." *DaimlerChrysler Servs. v. Summit Nat.*, No. 02-71871, 2006-WL-208787, at *4 (E.D. Mich. Jan. 26, 2006).

FICO has a threshold burden to provide non-speculative evidence that Blaze *caused* Federal to profit *in fact*. *See, e.g.*, *Lynch v. Trendwest Resorts Inc.*, 64 F. App'x 44, 45 (9th Cir. 2003) (plaintiff "was required to 'proffer some evidence to create a triable issue regarding whether the infringement at least partially caused the profits"); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 159 (2d Cir. 2001) (dismissal on summary judgment affirmed where plaintiff "failed to show any causal connection between the infringement and the defendant's profits").

FICO argues that it has satisfied it burden by relying upon revenue figures connected to various software applications (which FICO refers to as "differentiated revenue"), and it attempts to distinguish *IBM* and *Complex Systems* on the ground that those cases addressed undifferentiated revenue. To the contrary, in both cases, the courts' primary basis for dismissing disgorgement claims was that the evidence did not show a "causal link" between the defendants' profits and their use of a software program

5

within their internal business operations. 2013-WL-1775437, at *4; 2013-WL-5970065, at *4-6. The court in *Complex Systems* expressly noted that its holding was *not* based merely on the plaintiff's "undifferentiated" gross revenue figures. *Complex Sys.* at *5. The "missing link" of "causation" mandated dismissal in these software cases, as it does in this case. *Id.*

Neither *Andreas* nor *Honeywell* support FICO's position. First, neither case suggests that merely proffering differentiated revenue figures suffices to show a causal connection. Rather, plaintiffs must show a causal connection through factual proof. *Andreas*, 336 F.3d 789, 798 (plaintiffs have the burden of "establishing *the fact* that an infringement contributed to a defendant's profits") (emphasis original); *Honeywell*, No. 11-CV-569 (JNE/TNL), 2017-WL-374907, at *6 (characterizing *Andreas* as requiring proof of "a causal nexus between the infringing work and gross revenues from a related product").

Second, the cases are factually distinguishable. They do not involve software, and the infringement was public-facing in both cases. *Andreas* dealt with artwork that was the "centerpiece" of a television commercial that formed an "important and integral" part of the defendants' campaign for a new automobile. 336 F.3d at 797-98. Consumer surveys confirmed the commercial's success. The plaintiff showed a specific number of cars sold during the three month period the commercial aired. *Id.* *Honeywell* dealt with packaging and user manuals that were actually part of the products at issue. 2017-WL-374907 at *4. Again, the infringing material was public-facing, and the plaintiff's expert presented evidence that these aspects of the products influenced customers' purchasing

6

decisions.[4]  *Id.* at *7.  None of the cases cited by FICO contravene the reasoning of the most factually analogous cases cited by the parties—*IBM* and *Complex Systems*.

### B.     FICO Did Not Meet its Burden Under § 504(b).

FICO has failed to produce factual causal evidence such as surveys, increased sales or consumer influence, as in *Honeywell* and *Andreas*.  Instead, FICO merely states the supposed importance of Blaze, an approach insufficient in *IBM*.  2013 WL 1775437, at *4.  Whitener admitted that consumers are "oblivious" to Blaze and that he has *no* evidence establishing "the fact" that Blaze caused profits.  (Dkt. 334, Ex. 8.)  He could not testify regarding a "causal link" despite having reviewed all of the same exhibits that FICO now cites.  *Lowry's Reports, Inc. v. Legg Mason, Inc.,* 271 F. Supp. 2d 737, 752 (D. Md. 2003) (dismissing profits claim on summary judgment where plaintiff's "expert admitted that he could not say whether a causal link connected the infringement to [defendant]'s profits").

Even if it were the law that a plaintiff need only proffer a differentiated revenue figure (it is not), FICO has failed to do so.  Because "a single insurance policy . . . may feed through more than one Blaze Advisor application," FICO's figures actually "exceed Federal's *total* reported gross written premiums."  (Dkt. 424, ¶¶ 179-181.) (emphasis

---

[4] In fact, all of the cases cited by FICO involve infringing products that were sold directly to consumers or infringing advertisements directed at consumers.  (*See* Dkt. 499 at 34-37.)  These case are inapposite because in such cases "the infringement will form such a significant aspect of the product generating the claimed revenues that no further evidence will be required to establish that those revenues were causally linked to the infringement."  *Dash v. Mayweather*, 731 F.3d 303, 332 (4th Cir. 2013).

added) FICO's damages expert copied these figures into his report without performing any independent analysis.

Dated:  September 9, 2019        s/ Terrence J. Fleming
                                        Terrence J. Fleming (#0128983)
tfleming@fredlaw.com
Leah C. Janus (#0337365)
ljanus@fredlaw.com
Christopher D. Pham (#0390165)
cpham@fredlaw.com
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
Telephone:  612.492.7000

*Attorneys for Defendants*

67843485 v1