UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation, | Court File No.  16-cv-01054 (WMW/TNL) |
| Plaintiff, | |
| v. | **AMENDED ANSWER TO SECOND AMENDED COMPLAINT AND COUNTERCLAIMS** |
| FEDERAL INSURANCE COMPANY, an Indiana corporation, and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation, | |
| Defendants. | |

Defendants Federal Insurance Company ("Federal") and ACE American Insurance Company ("ACE American") (collectively, "Defendants"), hereby answer the Second Amended Complaint of Plaintiff Fair Isaac Corporation ("FICO") as follows:

To the extent not expressly admitted, denied or otherwise qualified, Defendants deny each and every allegation in the Second Amended Complaint.

## NATURE OF ACTION

1.      This is an action for breach of contract and copyright infringement related to business software owned by FICO and licensed to Chubb & Son, a division of Federal Insurance Company ("Chubb & Son").

**RESPONSE**:  Answering Paragraph 1, Defendants admit that FICO asserts claims for breach of contract and copyright infringement.  Defendants deny any breach or infringement and states that FICO's claims are without merit.

## THE PARTIES

2.      FICO is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in San Jose, California.

**RESPONSE**:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 and therefore denies them.

3.      Federal is a corporation duly organized and existing under the laws of the State of Indiana with its principal place of business at 15 Mountain View Road, Warren, NJ 07059.  Chubb & Son is an unincorporated division of Federal.

**RESPONSE**:  Answering Paragraph 3, Defendants admit that Chubb & Son is an unincorporated division of Federal.  Defendants further admit that Federal is incorporated under the laws of the State of Indiana.  The remaining allegations in Paragraph 3 are denied.

4.       ACE American is a corporation duly organized and existing under the laws of the State of Pennsylvania with its principal place of business at 436 Walnut Street, Philadelphia, PA 19106.

**RESPONSE**:  Admit.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 & 1338(a) and supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367(a).

**RESPONSE**:  Paragraph 5 contains legal conclusions that need not be admitted or denied.

6.     This Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because it is an action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**RESPONSE**:  Paragraph 6 contains legal conclusions that need not be admitted or denied.

7.     This Court has personal jurisdiction over Federal, which does business in the State of Minnesota and is an insurance company licensed by the Minnesota Department of Commerce.

**RESPONSE**:  Answering Paragraph 7, Defendants do not contest that the Court has specific personal jurisdiction over Federal in this action.  Defendants deny that Federal is subject to general jurisdiction in Minnesota.

8.     This Court has personal jurisdiction over ACE American, which does business in the State of Minnesota and is an insurance company licensed by the Minnesota Department of Commerce.

**RESPONSE**:  Answering Paragraph 8, Defendants do not contest that the Court has specific personal jurisdiction over ACE American in this action.  Defendants deny that ACE American is subject to general jurisdiction in Minnesota.

9.     Venue is proper in this judicial district under 28 U.S.C. § 1391. Federal resides in this District within the meaning of 28 U.S.C. § 1391(c) because it is subject to personal jurisdiction here.

**RESPONSE**:  Defendants admit that venue is proper in this District.

## FACTUAL BACKGROUND

10.    FICO is a world leader in the design and development of predictive analytics and decision ·management software. It provides products and services that enable businesses to automate, improve, and connect decisions to enhance business performance. FICO's decision management software tools are used by businesses to build their own tailored decision management applications.

**RESPONSE**:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 and therefore denies them.

11.    One of FICO's decision management software tools is the FICO® Blaze Advisor® business rules management system ("FICO Blaze Advisor"), which is used to design, develop, execute, and maintain rules-based business applications.

**RESPONSE**:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 and therefore denies them.

12.    FICO maintains federal copyright registrations for multiple versions of FICO Blaze Advisor:

| Blaze Advisor® Version Number | Copyright Registration Number |
|---|---|
| 3.0 | TX0006301747 |
| 4.0 | TX0006301748 |
| 5.0 | TX0006301746 |
| 6.0 | TX0006301745 |
| 6.5 | TX0006595049 |
| 6.5.5 | TX0007622453 |
| 6.6 | TX0007622554 |
| 6.7 | TX0007622555 |
| 6.8.1 | TX0007622557 |
| 6.9 | TX0007622556 |
| 7.0 | TX0007504713 |
| 7.2 | TX0007776962 |

Copies of the Certificates of Registration are part of the Court Record and are incorporated by reference. *See* [Doc. 1-1].

**RESPONSE**:   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 and therefore denies them.

13.     Chubb & Son as a division of Federal is an insurance manager for certain United States insurance companies, including companies that are or were wholly owned subsidiaries of Federal both inside and outside of the United States. Chubb & Son's services as insurance manager include, among other things, Information Technology.

**RESPONSE**:  Denied.

14.     FICO and Chubb & Son, a division of Federal, entered into a Software License and Maintenance Agreement, which they amended twice. The original agreement had an effective date of June 30, 2006. The first amendment had an effective date of August 1, 2006. The second amendment had an effective date of December 28, 2006. Copies of the original agreement and the two amendments, with pricing redacted,

(collectively, the "Agreement") are part of the Court Record and are incorporated by reference. *See* [Doc. 1-2].

> **RESPONSE**: Paragraph 14 refers to documents that speak for themselves. To the extent the allegations in Paragraph 14 are inconsistent with the Agreement, Defendants deny them.

15.     Under the Agreement, Chubb & Son is the Client. The Agreement grants Chubb & Son a perpetual, non-exclusive, non-transferable, limited license to use FICO Blaze Advisor products and related maintenance services (collectively, the "FICO Products") for internal business purposes under defined terms and conditions.

> **RESPONSE**: Paragraph 15 refers to documents that speak for themselves. To the extent the allegations in Paragraph 15 are inconsistent with the Agreement, Defendants deny them.

### *Alleged Breach of the non-assignment provision, paragraph 10.8 of the Agreement*

16.     Prior to January 15, 2016, Federal's parent corporation was Chubb Corporation. Effective as of January 15, 2016, in accordance with the terms of an agreement and plan of merger among Chubb Corporation, Ace Limited, and a merger entity, Chubb Corporation merged with and into ACE INA Holdings, Inc., with ACE INA Holdings, Inc. surviving as a wholly owned subsidiary of Chubb Ltd. (ACE Limited before the merger). As a result, Federal's former parent corporation ceased to exist, and Federal is now a subsidiary of ACE INA Holdings, Inc.

> **RESPONSE**: Answering Paragraph 16, Defendants admit that The Chubb Corporation and ACE INA Holdings, Inc. merged effective January 15, 2016.

Defendants further admit that Federal was a wholly-owned subsidiary of The Chubb Corporation on January 15, 2016, and that it is currently a wholly-owned subsidiary of ACE INA Holdings, Inc.  The remaining allegations in Paragraph 16 are denied.

17.     Paragraph 10.8 of the Agreement prohibits the assignment or transfer of the Agreement without the prior written consent of the other party. Under the Agreement, change of control, merger, and acquisition are deemed to be an assignment or transfer. In addition, the Agreement expressly prohibits Chubb & Son from expanding its use of the FICO Products as a result of assignments or transfers unless FICO first gives its written consent.

**RESPONSE**:  Paragraph 17 refers to documents that speak for themselves.  To the extent the allegations in Paragraph 17 are inconsistent with the Agreement, Defendants deny them.

18.     The merger, described generally above, resulted in an acquisition of and a change in control of Federal. Federal, through its division Chubb & Son, continues to use the FICO Products despite the fact it has not received FICO's written consent. Federal breached the nonassignment provision of the Agreement.

**RESPONSE**:  Answering Paragraph 18, Defendants admit that Federal continued to use the Blaze software following the merger between Chubb Corporation and ACE INA Holdings, and that FICO has not provided written consent.  The remaining allegations in Paragraph 18 are denied.

- 7 -

19.     Paragraph 9.2(a) of the Agreement entitled FICO to terminate the Agreement within 30 days of Chubb & Son's receipt of written notice of a material breach, in the event it failed to cure as demanded.

**RESPONSE**:  Denied.

20.     On January 27, 2016, FICO provided written notice to Chubb & Son that it was in breach of the non-assignment provision of paragraph 10.8 of the Agreement.

**RESPONSE**:  Answering Paragraph 20, Defendants admit that FICO notified Federal of an alleged breach of Paragraph 10.8 of the Agreement on or around January 27, 2016.  Federal denies that it breached the Agreement.  FICO's purported termination of the Agreement was itself a breach.

21.     On March 30, 2016, after Federal refused to cure the breach, FICO gave written notice that the Agreement would be terminated effective March 31, 2016, as allowed by paragraph 9.2 of the Agreement.

**RESPONSE**:  Paragraph 21 refers to a document that speaks for itself.  To the extent the allegations in Paragraph 17 are inconsistent with that document, Defendants deny them.  Federal also denies that it breached the Agreement.

22.     On March 31, 2016, the Agreement terminated. The continued unlicensed use of the FICO Products damages FICO.

**RESPONSE**:  Denied.

23.     Expanded use of the FICO Products following the merger, in breach of paragraph 10.8 of the Agreement, has caused FICO to lose licensing revenues.

**RESPONSE**:  Denied.

***Alleged breach of the prohibition against disclosing FICO Products to third
parties or permitting use of or access to FICO Products by third parties, paragraph 3.1
of the license granted by the Agreement***

24.     Federal or its division Chubb & Son has disclosed the FICO Products to
third parties, including at least third parties located in the United Kingdom, Canada, and
Australia, and has permitted these third parties access to and use of the FICO Products.
These third parties include Chubb Insurance Company of Europe SE; Chubb Insurance
Company of Canada and a consultant AppCentrica; and Chubb Insurance Company of
Australia Limited and a consultant DWS Group.

**RESPONSE**:  Denied.

25.     Paragraph 3.1 of the license granted by the Agreement, entitled "License
Restrictions," restricts Chubb & Son's use of the FICO Products to its internal business
operations and the internal business operations of its Affiliates within the scope of the
license. "Affiliates" is defined in Amendment Two to mean "any other entity directly or
indirectly controlled by [Chubb & Son], where 'control' means ownership of more than
50% of the aggregate of all voting interests ... in the entity." Paragraph 3.1 further
restricts the disclosure, use, or access of FICO Products to the employees of Chubb &
Son.

**RESPONSE**:  Paragraph 25 refers to documents that speak for themselves.  To the
extent that the allegations in Paragraph 25 are inconsistent with the Agreement,
Defendants deny them.

26.     The third-party entities to which Federal or its division Chubb & Son has
disclosed the FICO Products and which it has permitted access to and use of the FICO

Products are not "Affiliates" of Chubb & Son within the meaning of the license granted by the Agreement.

**RESPONSE**:  Denied.

27.    Federal breached the license granted by the Agreement by the disclosure of the FICO Products to third parties and by permitting them access to and use of the FICO Products.

**RESPONSE**:  Denied.

28.    Paragraph 9.2(c) of the Agreement entitled FICO to terminate the Agreement immediately, without prior notice or a cure period, in the event of breach of any terms of the license granted in the Agreement.

> **RESPONSE**:  Answering Paragraph 28, Defendants deny that Federal breached the Agreement and deny that FICO had the right to terminate the Agreement. Paragraph 28 refers to documents that speak for themselves.  To the extent that the allegations in Paragraph 28 are inconsistent with the Agreement, Defendants deny them.

29.    The disclosure of the FICO Products to third parties and permitting them access to and use of the FICO Products entitled FICO to terminate the Agreement without prior notice or a cure period.

**RESPONSE**:  Denied.

30.    Federal's breach of paragraph 3.1 of the license granted by the Agreement has caused FICO to lose the licensing revenues that third parties should have paid to use the FICO Products.

**RESPONSE**:  Denied.

*Alleged breach of post-termination obligations, paragraph 9.3 of the Agreement*

31.     Under paragraph 9.3 of the Agreement, Chubb & Son was obligated to immediately cease use of all FICO Products and related documentation, including all intellectual property arising from or relating to the FICO Products and related documentation. Chubb & Son was also obligated to remove all copies of the FICO Products and related documentation from its computers and systems and either destroy or return all copies of the FICO Products, related documentation, and any other FICO intellectual property in its possession to FICO.

**RESPONSE**:  Denied.

32.     Chubb & Son continued to use the FICO Products. It neither removed all copies of the FICO Products from its computers and systems, nor destroyed or returned all copies of the FICO Products.

**RESPONSE**:  Federal admits that it continues to use the FICO Products, and asserts that it has the right to do so under the license granted in the Agreement. Federal denies that it has any obligation to cease using the FICO Products or to destroy or return copies of the Products.

33.     Chubb & Son did not certify its removal of the FICO Products from its computers and systems and its continued use of the FICO Products following termination constitute further violations of the Agreement.

**RESPONSE**:  Federal admits that it has not removed the FICO Products from its computers.  Federal asserts that it has the right to use the software under the license granted in the Agreement.

34.     Federal's unauthorized post-termination use of the FICO Products through its division Chubb & Son, in breach of paragraph 9.3 of the Agreement, has deprived FICO of licensing revenues.

**RESPONSE**:  Denied.

***Alleged copyright infringement by ACE American for the benefit of itself, Federal, and Federal's wholly owned subsidiaries***

35.     Chubb Limited, indirect parent of Federal following the acquisition and change of control described in paragraph 16 above, is the Swiss-incorporated holding company of the Chubb Group of Companies. The Chubb Group of Companies, being direct and indirect subsidiaries of Chubb Limited, are a global insurance and reinsurance organization.

**RESPONSE**:  Denied.

36.     Federal and ACE American are sister companies in the Chubb Group of Companies; both are indirect wholly owned subsidiaries of Chubb Limited.

**RESPONSE**:  Answering Paragraph 36, Defendants deny that Federal and ACE American are sister companies in the Chubb Group of Companies.  As to the remaining allegations, Defendants admit that Federal and ACE American are both indirect wholly owned subsidiaries of Chubb Limited.

37.     ██████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

**RESPONSE**: ██████████████████████████████████████

████████████████████████████████████████████

██████████████████████████

38.  ██████████████████████████████████████████

██████████████

**RESPONSE**: █████████████████

39.  ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████

**RESPONSE**: ███████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████

40.  ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

███████████████████

**RESPONSE**: ████████████████████████████████

████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

███████

41.   ████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

███████████████████████████████

**RESPONSE**: ████████████████████████████████

████████████████████████████████████████

█████████████████████████████████

42.   ACE American is an unlicensed user of the FICO Products that were the
subject of the now terminated Agreement between Chubb & Son, a division of Federal,
and FICO. That now terminated Agreement by paragraph 2.1 limited the license grant to
use the FICO Products to the internal business purposes of Chubb & Son, and that

Agreement by paragraph 3.1 further restricted use of the FICO Products to employees of Chubb & Son.

**RESPONSE**:  Denied.

43.   ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

**RESPONSE**:  ████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████   ████████████████████

████████

## **COUNT I: Alleged Breach of License Agreement**

44.    Paragraphs 1 through 43 are incorporated by reference and made a part of this Count.

**RESPONSE**:  Defendants incorporate the prior allegations.

45.    Federal is in breach of its obligations under at least paragraphs 10.8, 3.1, and 9.3 of the Agreement.

**RESPONSE**:  Denied.

46.    As a result of Federal's breaches of the Agreement, FICO has suffered damages in an amount to be determined at trial but, in any event, exceeding $75,000, exclusive of costs and interest.

**RESPONSE**:  Denied.

## **COUNT II: Alleged Copyright Infringement (17 U.S.C. §§ 101 Et Seq.)**

47.    Paragraphs 1 through 46 are incorporated by reference and made a part of this Count.

**RESPONSE**:  Defendants incorporate the prior allegations.

48.    FICO owns the FICO Products, which are the subject of valid Certificates of Copyright Registration issued by the Register of Copyrights.

**RESPONSE**:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48 and therefore deny them.

49.    Federal's unauthorized reproduction and distribution of the FICO Products to third parties infringes FICO's copyright interests.

**RESPONSE**:  Defendants deny that they reproduced or distributed the software to third parties and deny any infringement of FICO's copyrights.

50.    Federal has knowingly caused, participated in, materially contributed to, induced, and derived economic benefit from the infringement of FICO's copyright interests.

**RESPONSE**:  Denied.

51.    Federal's disclosure of FICO's intellectual property to third parties has caused, and will continue to cause, irreparable harm to FICO, warranting injunctive relief under 17 U.S.C. § 502.

**RESPONSE**:  Denied.

- 16 -

52.     Federal's acts have caused, and will continue to cause, damage to FICO in an amount to be determined at trial. At a minimum, FICO is entitled to its actual damages and disgorgement of the profits of Federal and its wholly owned subsidiaries or statutory damages under 17 U.S.C. § 504.

**RESPONSE**:  Denied.

53.     FICO is entitled to recover its costs and reasonable attorney's fees under 17 U.S.C. § 505.

**RESPONSE**:  Denied.

**COUNT III: Alleged Copyright Infringement (17 U.S.C. §§ 101 Et Seq.)**

54.     Paragraphs 1 through 42 are incorporated by reference and made a part of this Count.

**RESPONSE**:  Defendants incorporate the prior allegations.

55.     Federal's post-termination use of the FICO Products constitutes an unauthorized reproduction of registered works.

**RESPONSE**:  Denied.

56.     Federal's post-termination use of the FICO Products infringes FICO's copyright interests.

**RESPONSE**:  Denied.

57.     Federal has knowingly caused, participated in, materially contributed to, induced, and derived economic benefit from the infringement of FICO's copyright interests.

**RESPONSE**:  Denied.

58.     Federal's post-termination use of the FICO Products has caused, and will continue to cause, irreparable harm to FICO, warranting injunctive relief under 17 U.S.C. § 502.

**RESPONSE**:  Denied.

59.     Federal's acts have caused, and will continue to cause, damage to FICO in an amount to be determined at trial. At a minimum, FICO is entitled to its actual damages or statutory damages under 17 U.S.C. § 504.

**RESPONSE**:  Denied.

60.     FICO is entitled to recover its costs and reasonable attorney's fees under 17 U.S.C. § 505.

**RESPONSE**:  Denied.

**Count IV: Copyright Infringement Against
ACE American and Federal (17 U.S.C. § 101 *et seq.*)**

61.     Paragraphs 1 through 60 are incorporated by reference and made a part of this Count.

**RESPONSE**:  Defendants incorporate the prior allegations.

62.      FICO owns the FICO Products, which are the subject of valid Certificates of

Copyright Registration issued by the Register of Copyrights.

**RESPONSE**:  Defendants are without knowledge or information sufficient to

form a belief as to the truth of the allegations in Paragraph 62 and therefore deny

them.

63.     ACE American's unlicensed use and reproduction of the FICO Products infringes FICO's copyright interests.

**RESPONSE**:  Denied.

64.     Federal is vicariously liable for ACE American's copyright infringement of the FICO Products.

**RESPONSE**:  Denied.

65.     Federal and ACE American have knowingly caused, participated in, materially contributed to, induced, and derived economic benefit from the infringement of FICO's copyright interests.

**RESPONSE**:  Denied.

66.     ACE American's unlicensed use and reproduction of the FICO Products is done knowingly, and Federal and its wholly owned subsidiaries knowingly benefit from this copyright infringement.

**RESPONSE**:  Denied.

67.     ACE American's unlicensed use and reproduction of the FICO Products has caused, and will continue to cause, irreparable harm to FICO, warranting injunctive relief under 17 U.S.C. § 502.

**RESPONSE**:  Denied.

68.     The acts of ACE American and Federal have caused, and will continue to cause, damage to FICO in an amount to be determined at trial.  At a minimum, FICO is entitled to its actual damages and disgorgement of the profits of ACE American, Federal, and Federal's wholly owned subsidiaries, or statutory damages under 17 U.S.C. § 504.

**RESPONSE**:  Denied.

**SEPARATE DEFENSES**

69.    The Complaint fails to state a claim upon which relief can be granted.

70.    FICO's claims fail because Federal's use of the FICO Products is licensed under the Agreement.

71.    Federal did not breach the Agreement.

72.    If the fact-finder concludes that Federal breached the agreement, then the breach was not material.

73.    FICO's claims fail because FICO did not suffer damages as a result of the claimed breach.

74.    FICO's claims fail because FICO did not have the right to terminate the Agreement.

75.    FICO's claims fail because FICO itself breached the Agreement.

76.    FICO's claims are barred by waiver and estoppel.

77.    FICO's state law claims are preempted by federal law.

78.    FICO's claims are barred, all or in part, by the applicable statutes of limitations, including the three year statutory period for copyright infringement claims under 17 U.S.C. § 507(b) and the six year period for breach of contract claims under New York C.P.L.R. § 213(2).

## <u>COUNTERCLAIMS</u>

For their counterclaims against FICO, Defendants assert as follows:

1.      In June 2006, Chubb & Son, a division of Federal, and FICO entered into a Software License and Maintenance Agreement (the "Agreement").  Initially the license was limited to five "seats" of Blaze Advisor.

2.      On December 28, 2006, the parties amended the Agreement, making it enterprise-wide and without a limit on the number of seats.  Under the amended Agreement, Federal and other Chubb entities were perpetually licensed to use Blaze Advisor without limitation on the number of seats.

3.      The Agreement includes a provision governing assignments as follows:

> Neither party shall, without the prior written consent of the other party, assign or transfer this Agreement, or any part thereof.  In the event of a change of control of Client, or if Client1 is merged with, acquired by or acquires another entity, or undergoes a reorganization, or otherwise acquires the right to process the business of another entity, each such event shall be deemed to be an assignment subject to this section, and Client shall make no expanded use of the Fair Isaac Products as a result of any such event unless and until Fair Isaac provides such written consent, which will not be unreasonably withheld.  Any attempt to assign or transfer all or any part of this Agreement without first obtaining such written consent will be void and of no force or effect.  Notwithstanding the foregoing, Fair Isaac may perform any or all of its obligations through any subsidiary or affiliated company, and may assign this Agreement by merger, reorganization, consolidation, or sale of all or substantially all its assets.

4.      Chubb & Son is a division of Federal Insurance Company, which until recently was a wholly-owned subsidiary of The Chubb Corporation.

5.      On January 15, 2016, ACE INA Holdings, Inc. merged with The Chubb Corporation.  Federal Insurance Company is a wholly-owned subsidiary of The Chubb Corporation.

6.      Federal continued doing business after the merger in the same manner in had done prior to the merger.  Federal did not change the way it uses the Blaze Advisor software as a result of the merger; Federal continued to use the Blaze Advisor software after the merger in the same manner it had used the software before the merger.

7.      Federal did not expand its use of the software following the merger.

8.      Federal's use of the Blaze Advisor software post-merger is covered by the license Federal purchased from FICO in the Agreement.

9.      On January 26, 2016, FICO sent a letter alleging that Federal needed consent from FICO to continue using the Blaze Advisor software post-merger, and stating that FICO "has not and does not consent" to the continued use of the software.

10.     Because Federal did not expand its use of the software after the merger, Federal did not need consent from FICO to continue using the Blaze Advisor software.

11.     FICO claimed that consent was required and refused to consent to continued use of the licensed software even before knowing whether Federal's use of the software had changed.

12.     The Agreement states that consent "will not be unreasonably withheld."

13.     FICO's conduct in refusing to consent to continued use of the software post-merger lacked good faith, constituted unfair dealing, and was arbitrary and irrational.

- 22 -

14.     On information and belief, FICO refused to consent to continued use of the software post-merger in an effort to force Federal to pay additional license fees, and/or to obtain leverage in the ongoing negotiations between the parties.

15.     On or around March 30, 2016, FICO sent a letter purporting to terminate the Agreement.  The purported termination violated the terms of the Agreement and was inoperative.  Furthermore, FICO breached the Agreement by purporting to terminate the Agreement without the right to do so.

## COUNT ONE
## (Breach Of Contract)

16.     Defendants incorporate the prior allegations.

17.     FICO and Federal are parties to the Agreement.  In the Agreement, FICO granted a perpetual, fully-paid, enterprise-wide license to the Blaze Advisor software.

18.     The Agreement may only be terminated if one of the events identified in Paragraph 9.2 occurs.

19.     None of the events that allows FICO to terminate has occurred.  FICO nonetheless purported to terminate the Agreement.  FICO did not have the right to terminate the Agreement, and breached the Agreement by purporting to terminate without the right to do so.

20.     Federal performed its obligations under the Agreement.

21.     FICO's breach of the Agreement damaged Defendants in an amount to be determined at trial.

## COUNT TWO
## (Breach of Implied Covenant of Good Faith and Fair Dealing)

22.     Defendants incorporate the prior allegations.

23.     The Agreement contains an implied covenant of good faith and fair dealing, including an implied promise that FICO will act in good faith and deal fairly with Federal in the event of a merger of Federal's parent company with another entity.

24.     FICO breached the implied covenant of good faith and fair dealing by declaring that it would not consent to continued use of the licensed software post-merger without knowing or considering whether Federal used the licensed software any differently after the merger as it had before the merger.

25.     FICO acted arbitrarily and irrationally when it declared that consent would not be given regardless of the facts.

26.     On information and belief, FICO acted in bad faith and with the goal of exacting additional, unearned license fees from Federal when it announced that consent would not be given for Federal to continue using the software post-merger.

27.     Defendants have been damaged because of FICO's conduct in an amount to be proven at trial.

## JURY DEMAND

Defendants demand a trial by jury of all claims and counterclaims in this action for which there is a right to trial by jury.

WHEREFORE, Defendants request judgement as follows:

A.      That Plaintiff take nothing by its Second Amended Complaint;

B.     That Plaintiff's claims be dismissed with prejudice;

C.     Enter judgment for Defendants on their counterclaims in an amount to be determined at trial;

D.     An Order awarding Defendants their costs and attorney's fees under 17 U.S.C. § 505; and

E.     For such other and further relief as the Court deems just and equitable.

| Dated:  September 9, 2019 | *s/ Terrence J. Fleming* |
|---|---|

Terrence J. Fleming (#0128983)
tfleming@fredlaw.com
Leah C. Janus (#0337365)
ljanus@fredlaw.com
Christopher D. Pham (#0390165)
cpham@fredlaw.com
Christian V. Hokans (#0400377)
chokans@fredlaw.com
FREDRIKSON & BYRON, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
(612) 492-7000 (tel.)
(612) 492-7077 (fax)

**Attorneys for Defendants**

67604450 v1

- 25 -