# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation, | ) ) ) | Case No. 16-cv-1054 (WMW/DTS) |
| Plaintiff, | ) ) | |
| | ) | **Jury Trial Demanded** |
| v. | ) ) | |
| FEDERAL INSURANCE COMPANY, an Indiana corporation and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation, | ) ) ) ) ) | |
| | ) ) | |
| Defendants. | | |

## FAIR ISAAC CORPORATION'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE AMENDED ANSWER

## **TABLE OF CONTENTS**

I.     Failure to plead statute of limitations waives the affirmative defense. .................... 3

II.    Federal relies on a false premise for bringing its motion for leave to amend. ......... 5

     A.     Federal was prohibited from installing and physically locating Blaze
         Advisor outside the United States. ................................................................ 5

     B.     Federal misreads FICO's summary judgment motion and ignores the
         language of the Agreement. .......................................................................... 6

III.   Federal lacks "good cause" to amend its complaint. ................................................. 8

     A.     Federal Rule 16 requires showing "good cause," including diligence,
         to modify a scheduling order. ........................................................................ 9

     B.     Federal has not been diligent in seeking to add a statute of
         limitations affirmative defense; FICO's claims have been consistent
         throughout the litigation, even if Federal failed to recognize the
         significance of FICO's claims. .................................................................... 10

           (1)    FICO has made clear its claims relate to unauthorized
                 disclosure and use by third parties. .................................................. 11

           (2)    FICO has made clear its claims relate to installation and
                 physical location of the Blaze Advisor software .............................. 13

     C.     Federal's efforts to blame FICO for misdirection fail. .............................. 16

IV.    Federal's statute of limitations affirmative defense is futile. ................................. 19

     A.     A motion to amend must be denied if the proposed amendment is
         futile. ........................................................................................................... 19

     B.     Federal has pleaded no facts to support its statute of limitations
         affirmative defense. .................................................................................... 19

     C.     New York recognizes the continuing wrong doctrine.  The statute of
         limitations does not run for continuous breaches of continuing
         contractual obligations. .............................................................................. 20

           (1)    Installations in █████████████ form no basis for a
                 statute of limitations defense.......................................................... 21

(2)   The continued installation and physical location of Blaze Advisor in the United Kingdom is a continuing breach: the statute of limitations is not a defense. ...............................................21

(3)   If Federal's proposed amendment is not futile, FICO will be severely prejudiced by the added defense at this late hour. .............23

D.   The copyright statute of limitations functions as a damages limitation and not a complete bar to copyright damages. ..........................23

(1)   FICO is entitled to the statutory three-year limit on damages flowing from foreign exploitation of Federal's infringing acts. ......23

(2)   Federal's continuing acts of infringement are independently actionable. .......................................................................................25

V.   Conclusion .............................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahle v. Veracity Research Co.*,
    738 F. Supp. 2d 896 (D. Minn. 2010) ..................................................................................20

*Airco Alloys Div., Airco, Inc. v. Niagara Mohawk Power Corp.*,
    430 N.Y.S.2d 179 (N.Y. App. Div. 1980) ......................................................................20, 22

*Blonder-Tongue Labs. v. Univ. of Ill. Found.*,
    402 U.S. 313 (1971) ................................................................................................................19

*Buder v. Merril Lynch, Pierce, Fenner & Smith, Inc.*,
    644 F.2d 690 (8th Cir. 1981) ....................................................................................................4

*Dennis v. Dilliard Dep't Stores, Inc.*,
    207 F.3d 523 (8th Cir. 2000) ....................................................................................................4

*E.E.O.C. v. Hibbing Taconite*,
    266 F.R.D. 260 (D. Minn. 2009)................................................................................10, 11, 19

*Garron v Bristol House, Inc.*,
    79 N.Y.S.3d 265 (N.Y. App. Div. 2018) ......................................................................20, 22

*Hofmann v. Enter. Leasing Co. of Minnesota, LLC*,
    2014 WL 12601038 ..................................................................................................................4

*IBEW Local 98 Pension Fund v. Best Buy Co.*,
    326 F.R.D. 513 (D. Minn. 2018)................................................................................8, 9, 11, 15

*Lanpher v. Metro. Life Ins. Co.*,
    50 F. Supp. 3d 1122 (D. Minn. 2014) ......................................................................................3

*Los Angeles News Serv. v. Reuters TV Int'l.*,
    149 F.3d 987 (9th Cir. 1998) ..................................................................................................24

*Marmo v. Tyson Fresh Meats, Inc.*,
    457 F.3d 748 (8th Cir. 2006) ....................................................................................................9

*Med. Graphics Corp. v. Hartford Fire Ins. Co.*,
    171 F.R.D. 254 (D. Minn. 1997)............................................................................................19

*Negley v. Hallmark Cards, Inc.*,
    2013 U.S. Dist. LEXIS 196584 (W.D. Mo. Mar. 1, 2013 ....................................................25

iii

*Petrella v. MGM*,
    572 U.S. 663 (2014) ..........................................................................................25

*Rahn v. Hawkins*,
    464 F.3d 813 (8th Cir. 2006) ..............................................................................9

*Roe v. Sears, Roebuck & Co.*,
    132 F.2d 829 (7th Cir. 1943) ..............................................................................4

*Sanders v. Clemco Indus.*,
    823 F.2d 214 (8th Cir. 1987) ..............................................................................8

*Scheidecker v. Arvig Enters.*,
    193 F.R.D. 630 (D. Minn. 2000).......................................................................10

*Selective Ins. Co. v. Sela*,
    353 F. Supp. 3d 847 (D. Minn. 2018) ..................................................................3

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
    106 F.2d 45 (2d Cir. 1939)................................................................................23

*Sherman v. Winco Fireworks, Inc.*,
    532 F.3d 709 (8th Cir. 2008) ..............................................................................9

*Swanson v. GMAC Mortg., LLC*,
    2012 U.S. Dist. LEXIS 46939 (D. Minn. Apr. 3, 2012) ........................................19

*Swanson v. Van Otterloo*,
    177 F.R.D. 645 (N.D. Iowa 1998) .....................................................................23

*Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*,
    682 F.3d 292 (4th Cir. 2012) .......................................................................23, 24

*United States v. Big D. Enters.*,
    184 F.3d 924 (8th Cir. 1999) ..............................................................................3

**Statutes**

17 U.S.C. § 507(b) ..................................................................................................19

**Other Authorities**

C.P.L.R. § 213(2)...............................................................................................19, 20

Fed. R. Civ. P. 1 ......................................................................................................9

Fed. R. Civ. P. 8(c)(1)..............................................................................................3

Fed. R. Civ. P. 12(b) .......................................................................................1, 3, 4, 6

iv

Fed. R. Civ. P. 12(b)(6)..................................................................................................19

Fed. R. Civ. P. 15..........................................................................................................4, 8

Fed. R. Civ. P. 16..................................................................................................4, 8, 9, 10

Defendants Federal Insurance Company and ACE American Insurance Company (collectively "Federal") have no basis to amend their Answer at this late date. Over three years into the litigation, and approaching a year since the last operative Answer, Federal now seeks to add a statute of limitations affirmative defense.[1] This is barred under Federal Rules of Civil Procedure Rule 12(b), which requires defenses be pleaded in the responsive pleading.

Federal brings its motion for leave to amend based on a false premise. Federal creates a distinction without a difference. In this case, use follows from and because of the unlawful installation and physical location of Blaze Advisor outside of the United States. Federal contends FICO's summary judgment motion makes clear that FICO's breach of contract claims are based on installation and not usage. (Dkt. 464 at 2.) Federal misreads the Software License and Maintenance Agreement ("the Agreement") (Dkt. 460-1) and FICO's summary judgment brief (Dkt. 398 at 12-14, 24.) FICO contends—and has always contended—Federal breached and continues to breach the territorial restriction of the Agreement because Blaze Advisor is installed and physically located outside the United States (and used from those installations and physical locations outside the United States), and that it breached and continues to breach the restrictions of the Agreement against disclosure to and permitted use of and access to Blaze Advisor by

---

[1] Federal's motion to assert statute of limitations defenses is only directed at the breaches of the Agreement resulting in lost license fees because of the unauthorized use of Blaze Advisor by foreign insurance companies and copyright infringement resulting in wrongful profits from foreign insurance companies. Federal's motion is not directed to the lost license fees and disgorged profits following the March 31, 2016 termination of the Agreement.

individuals who are not employees of Chubb & Son, a division of Federal. (*See* Dkt. 460-1 at 1-2.) FICO seeks lost license fees for these breaches under its contract claims and disgorgement of profits from the use of Blaze Advisor in connection with the sale of insurance outside the United States under its copyright claims. Federal's effort to excuse this late-filed motion fails.

Federal cannot meet the "good cause" standard required to amend its answer. Federal's failure to understand fully the claims against it and its apparent failure to grasp the full implications of the Agreement are not "good cause." Federal has been on notice of FICO's breach of contract and copyright infringement claims since the day the action commenced. The First Amended Complaint substituted parties, and the Second Amended Complaint added ACE American Insurance as an additional defendant. The basis of the breach of contract and copyright infringement claims are the same since the action commenced.

Even if "good cause" existed, Federal's efforts to add a statute of limitations affirmative defense is futile. New York recognizes the continuing wrong doctrine. The statute of limitations does not run to bar a claim where a defendant repeatedly breaches a continuing duty as Federal has here. Breach of the territorial restriction is continuous because Blaze Advisor continues to be installed and physically located outside the United States, and used from those installations and physical locations. Unauthorized third-parties outside the United States continue to use and access Blaze Advisor. Similarly, the Supreme Court has made clear that the statute of limitations for a copyright claim is a limit on damages and not a bar to the entire claim. Federal's motion should be denied.

I.      **Failure to plead statute of limitations waives the affirmative defense.**

Federal's request to amend its answer to add statute of limitation defenses is barred by Federal Rule of Civil Procedure 12(b), which states: "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required." Removing any doubt that statute of limitations is a "defense to a claim for relief" as proscribed in Rule 12(b), Rule 8(c)(1) identifies statute of limitations as a defense "a party must affirmatively state" in "responding to a pleading." Federal failed to plead statute of limitations as an affirmative defense. (*See* Dkt. 137 at 18 (failing to plead statute of limitations as separate defense); *see also* Dkt. 38 at 14 (same).) Its defense is waived.

Courts apply the plain language of the Federal Rules when enforcing waiver of statute of limitations[2]. The Eighth Circuit has held: "A defense based upon the statute of limitations is generally waived if not raised in a responsive pleading." *United States v. Big D. Enters.*, 184 F.3d 924, 935 (8th Cir. 1999) (affirming waiver of statute of limitations where defense was not raised in responsive pleading). This District has found similarly. "When defendant moved for summary judgment it had filed an answer [which did not include a statute of limitations defense], the legal effect of which was a waiver of its defense of the statute of limitations." *Lanpher v. Metro. Life Ins. Co.*, 50 F. Supp. 3d

---

[2] Federal procedural law governs waiver of the defense. *Selective Ins. Co. v. Sela*, 353 F. Supp. 3d 847, 855 (D. Minn. 2018) ("Pleading standards are generally viewed as procedural, and thus federal courts generally apply federal pleading rules regardless of whether a claim arises under federal or state law.")

1122, 1136 (D. Minn. 2014) (quoting *Roe v. Sears, Roebuck & Co.*, 132 F.2d 829, 832 (7th Cir. 1943)) (alteration in original).  Federal has moved for summary judgment (*see* Dkt. 428 (filed July 26, 2019) where its answer failed to include a statute of limitations defense.  Its defense is waived.

Federal cites no case law to the contrary.  *Dennis v. Dilliard Dep't Stores, Inc.*, 207 F.3d 523, 526 (8th Cir. 2000) (Dkt. 464 at 8) dealt with an Equal Pay Act lawsuit.  Applying only the more lenient Rule 15 standard, the Eighth Circuit held defendant should have been permitted to amend the answer to add a "factor other than sex" defense.  Here, the time to amend answers has come and gone.  *Dennis* provides no support for Federal's efforts to amend its answer under Rule 16.

Federal's other cases are equally unsupportive.  *Hofmann v. Enter. Leasing Co. of Minnesota, LLC*, No. 13-CV-255, 2014 WL 12601038 (D. Minn. Oct. 15, 2014 (Dkt. 464 at 8) deals with a motion for leave to amend a *complaint*, not an answer.  *Id.* at *1.  *Buder v. Merril Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 690 (8th Cir. 1981) (Dkt. 464 at 9) also deals with a motion to amend a complaint, not an answer.  Neither Rule 12(b) or 8(c) – and the waiver of affirmative defenses – were relevant to those cases.  Federal provides no legal basis to amend its answer to add a statute of limitations defense—a defense required to be pleaded in its Answer.

4

**II.     Federal relies on a false premise for bringing its motion for leave to amend.**

      **A.     <u>Federal was prohibited from installing and physically locating Blaze
Advisor outside the United States.</u>**

In 2006, FICO entered into the Agreement with Chubb & Son, an unincorporated
division of Federal.  (Dkt. 460-1 at 1.)  Chubb & Son represented and warranted by
Paragraph 3.1(i) that it would not use Blaze Advisor "in any manner that exceeds the
scope of any license granted under this Agreement." It further represented and warranted
that it would not "(iv) disclose the Fair Isaac Products to, or permit the use or access of
the Fair Isaac Products by, any third party or by any individuals other than the employees
of Client", and it would not (v) … transfer or distribute the Fair Isaac Products."  (Dkt.
460-1 at 2.)

The Agreement, as the preamble states, "describes the terms and conditions under
which Fair Isaac shall provide to Client the Blaze Advisor products and related
maintenance services described below." "Territory" is a term in Section 1 Definitions:
"The following terms, as used in this Agreement … will have the meanings set forth
below." "'Territory', with respect to installation and physical location of the Fair Isaac
Products, means the United States." (Dkt. 4601-1 at 1.) The license grant, Paragraph 2.1,
states: "Subject to the terms, conditions and limitations of this Agreement, Fair Isaac
hereby grants to Client … ."  The license grant is subject to the term "Territory": The
installation and physical location of Blaze Advisor must be in the United States. Neither
Amendment changed the territorial restriction. The grant of enterprise-wide rights of

Amendment Two is expressly "subject to and in accordance with all of the provisions of the Agreement." (Dkt. 460-1 at 20.)

The relevant portions of the license grant did two things:

1) Restricted the installation and physical location of Blaze Advisor to the United States, and

2) Prohibited the disclosure to and forbade permitted use by or access to Blaze Advisor by any third party.

(*Id.*) FICO's litigation strategy is based on and is consistent with the terms of the Agreement. FICO accuses Federal of breaching the Agreement with respect to:

1) The installation of Blaze Advisor and the continued physical location of Blaze Advisor outside the United States, and the use of Blaze Advisor from such installations and physical locations;

2) The disclosure of Blaze Advisor to third parties, as defined by the Agreement, which includes subsidiaries of Federal, who under the Agreement, are not Affiliates of Chubb & Son, a division of Federal; and

3) The permitted use and access to Blaze Advisor by third parties, as defined by the Agreement, which includes subsidiaries of Federal, who under the Agreement, are not Affiliates of Chubb & Son, a division of Federal.

(Dkt. 132 ¶¶ 24, 27, 29.)

## B. Federal misreads FICO's summary judgment motion and ignores the language of the Agreement.

The purported basis of Federal's motion is false. Federal contends FICO now asserts that use outside the United States is permitted, as differentiated from installation. (Dkt. 464 at 2.) FICO has never taken this position, including in its recent summary judgment briefing. (*See* Dkt. 398 at 12-14.) FICO's position is—and has always been— that installation and physical location of Blaze Advisor outside the United States is a

breach of the Agreement (and constitutes distribution under the Copyright Act); the use of Blaze Advisor from such installations and physical locations is a breach of the Agreement; the disclosure of Blaze Advisor to non-employees of Chubb & Son (regardless of location) is a breach of the Agreement, although the only disclosure alleged as breach is outside the United States; and the continued permitted use of and access to Blaze Advisor by non-employees of Chubb & Son (regardless of location) is a breach of the Agreement, although the only unpermitted use and access alleged as breach is outside the United States.[3]

FICO's position in its summary judgment brief does not deviate from this position. (Dkt. 398 at 12-14, 24.)  FICO stated: ██████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████  This is not permitted use outside the United States, as Federal wrongly asserts.  This is use in the United States.  Federal ignores that FICO's statement is limited to Chubb & Son and Chubb & Son employees using Blaze Advisor installed and physically located in the United States.  Use of Blaze Advisor installed and physically located outside the United States and use of Blaze Advisor by foreign insurance companies and their employees regardless of location are breaches of the

---

[3]  ACE American Insurance is also an unlicensed user of Blaze Advisor.  The copyright infringement claims against ACE American Insurance are outside the scope of this motion.

Agreement.  (*See* Dkt. 460-1 at 2 ¶ 3.1(iv).)  FICO's summary judgment position is consistent with the Agreement and FICO's litigation positions.  (Dkt. 398 at 22-27.)

FICO's statement in its summary judgment brief simply acknowledges the facts. Federal's Rule 30(b)(6) designated witness testified ███████████████████████
███████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████████
█ ████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████████
██████████████████████

## III.    Federal lacks "good cause" to amend its complaint.

Federal failed to amend its answer to add the statute of limitations prior to June 1, 2017, as required by the operative scheduling order.  (*See* Dkt. 205 at 3.)  Federal must prove "good cause" exists to allow it to modify the scheduling order under Rule 16(b)(4).[4]  No "good cause" exists.

---

[4] Even if this Court applied the more lenient standard under Federal Rule Civil Procedure 15(a), the Court must still deny Federal's motion.  Undue delay and futility of the amendment justify denying the motion to amend under Rule 15.  *IBEW Local 98 Pension Fund v. Best Buy Co.*, 326 F.R.D. 513, 527 (D. Minn. 2018) (quoting *Sanders v. Clemco*

**A.     Federal Rule 16 requires showing "good cause," including diligence, to modify a scheduling order.**

Scheduling orders pursuant to Rule 16(b)(1) "assure[] that at some point both the parties and the pleadings will be fixed . . . ." Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment. "Adherence to [scheduling order] deadlines is critical to achieving the primary goal of the judiciary: 'to serve the just, speedy, and inexpensive determination of every action.'" *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006) (quoting Fed. R. Civ. P. 1).

Federal Rule of Civil Procedure 16(b)(4) states: "A schedule may be modified only for good cause and with the judge's consent." "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Sherman v. Winco Fireworks, Inc*., 532 F.3d 709, 717 (8th Cir. 2008) (quoting *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)).  When the movant has not been diligent in meeting the scheduling order's deadlines, there is no cause to consider prejudice to the non-moving party.  *Id.*  "[T]he 'good cause' standard [of Rule 16(b)] is an exacting one, for it demands a demonstration that the existing schedule cannot reasonably be met despite the diligence of the party seeking the extension." *IBEW Local 98 Pension Fund v. Best Buy Co.*, 326 F.R.D. 513, 522 (D. Minn. 2018) (alteration in original).  "[A] party does not meet the good cause standard under Rule 16(b) if the relevant information on which it

---

*Indus.*, 823 F.2d 214, 216 (8th Cir. 1987)); *see also Sherman v. Winco Fireworks*, Inc., 532 F.3d 709, 715 (8th Cir. 2008).  See Sections III(B) and IV for discussions on undue delay and futility, respectively.

based the amended claim was available to it earlier in the litigation." *Id.* (alteration in original).

"Rule 16(b) focuses on the diligence of the party seeking to modify a Scheduling Order, as opposed to the litany of unpersuasive excuses, inclusive of inadvertence and neglect, which commonly undergird an untimely Motion to Amend." *Scheidecker v. Arvig Enters.*, 193 F.R.D. 630, 632 n. 1 (D. Minn. 2000) (citations omitted). "It hardly bears mentioning . . . that carelessness is not compatible with a finding of diligence and offers no reason for a grant for relief." *E.E.O.C. v. Hibbing Taconite*, 266 F.R.D. 260, 265 (D. Minn. 2009).

B.     **Federal has not been diligent in seeking to add a statute of limitations affirmative defense; FICO's claims have been consistent throughout the litigation, even if Federal failed to recognize the significance of FICO's claims.**

Federal cannot meet Rule 16's "good cause" standard because Federal has not been diligent in bringing this matter before the Court.  Federal has been on notice of the nature of FICO's breach of contract and copyright claims since the beginning of this lawsuit.  *See* Section III(B)(1-2), *infra*.  The installation and physical location of Blaze Advisor outside the United State is a breach of the Agreement.  The disclosure of Blaze Advisor to third parties, non-employees of Chubb & Son, is a breach of the Agreement. The permitted use of and access to Blaze Advisor by third parties, non-employees of Chubb & Son, is a breach of the Agreement.  FICO has alleged each of these breaches in each of its complaints.  (*See* Dkt. 1 ¶¶ 22, 25, 27; Dkt. 36 ¶¶ 22, 25, 27; Dkt. 132 ¶¶ 24,

10

27, 29.)  The good cause standard is not met.  Federal has been on notice of these claims from the outset.  *IBEW Local 98 Pension Fund*, 326 F.R.D. at 522.

FICO's breach of contract claim, and the basis for its copyright infringement allegations, have always been based in the language of the Agreement between FICO and Chubb & Son, a division of Federal.  (Dkt. 460-1 at 1-2.)  FICO's breach of contract claim relates to breaches of the plain language of the Agreement.  *See* Section II(A).  Federal has been on notice of these breaches and FICO's theory of the case.  (*See* Dkt. 1 ¶ 41; Dkt. 36 ¶ 38; Dkt. 132 ¶ 49.)  Federal cannot now plead ignorance so as to establish "good cause."  *See Hibbing Taconite*, 266 F.R.D. at 265.

### (1)   FICO has made clear its claims relate to unauthorized disclosure and use by third parties.

In its initial Complaint filed April 21, 2016, FICO pleaded:

22.     Chubb & Son has ***disclosed*** the FICO Products to third parties, including at least third parties ***located in the United Kingdom, Canada, and Australia***, and has ***permitted*** these third parties access to and use of the FICO Products.

25.     Chubb & Son breached the license granted by the Agreement by ***disclosing*** the FICO Products to third parties and ***by permitting them access to and use*** of the FICO Products.

27.     Chubb & Son's ***disclosure*** of the FICO Products to third parties ***and permitting them access to and use*** of the FICO Products entitled FICO to terminate the Agreement without prior notice or a cure period.

41.     Chubb & Son's ***unauthorized reproduction and distribution*** of the FICO Products to third parties infringes FICO's copyright interests.

(Dkt. 1 ¶¶ 22, 25, 27, 41(emphasis added).)  From the beginning, Federal was on notice that FICO's claims related to disclosure, reproduction, distribution, and permitted

access—terms found in the Agreement.  The Complaint makes clear, disclosure and distribution are unique from use and access.

In its Amended Complaint filed February 2, 2017, FICO pleaded:

22.    Federal or its division Chubb & Son has *disclosed* the FICO Products to third parties, including at least third parties *located in the United Kingdom, Canada, and Australia*, and has *permitted* these third parties access to and use of the FICO Products.

25.    Federal breached the license granted by the Agreement by the *disclosure* of the FICO Products to third parties and by *permitting them access to and use of* the FICO Products.

27.    The *disclosure* of the FICO Products to third parties *and permitting them access to and use of* the FICO Products entitled FICO to terminate the Agreement without prior notice or a cure period.

38.    Federal's unauthorized *reproduction and distribution* of the FICO Products to third parties infringes FICO's copyright interests.

(Dkt. 36 ¶¶ 22, 25, 27, 38 (emphasis added).)   Almost a year after the lawsuit was commenced, Federal was reminded that FICO's claims related to disclosure, reproduction, distribution, and permitted access—terms found in the Agreement.

In its First Supplemental Answers to Defendant's First Set of Interrogatories served on August 16, 2017, FICO stated:

**Response to Interrogatory No. 4:**
. . . FICO states that Federal has *disclosed* the Works to, at least, Chubb-affiliated entities located in the U.K., Canada, and Australia in violation of the license granted by the Agreement. . . . As discussed in the March 11, 2016 email from Thomas Carretta to Andrew Hopp, it was also discovered that there was a second non-compliant application running the Blaze Advisor® software *in the U.K.* during the parties' post-merger licensing negotiations. The non-compliant applications *outside of the United States* running the Blaze Advisor® software are also discussed in the March 3, 2016 email from Michael Sawyer to Tamra Pawloski and the business proposal attached thereto.

(Dkt. 460-5 at 4-5.)  FICO again put Federal on notice that its claims related to the

disclosure of Blaze Advisor and the physical location of the software.

In FICO's Second Amended Complaint filed September 11, 2018, FICO pleaded:

24.     Federal or its division Chubb & Son has **disclosed** the FICO Products
to third parties, including at least third parties **located in the United
Kingdom, Canada, and Australia**, and has **permitted** these third parties
**access to and use** of the FICO Products. These third parties include Chubb
Insurance Company of Europe SE; Chubb Insurance Company of Canada
and a consultant AppCentrica; and Chubb Insurance Company of Australia
Limited and a consultant DWS Group.

27.     Federal breached the license granted by the Agreement by the
**disclosure** of the FICO Products to third parties and by permitting them
access to and use of the FICO Products.

29.     The **disclosure** of the FICO Products to third parties and **permitting
them access to and use** of the FICO Products entitled FICO to terminate the
Agreement without prior notice or a cure period.

49.     Federal's unauthorized **reproduction and distribution** of the FICO
Products to third parties infringes FICO's copyright interests.

(Dkt. 132 ¶¶ 24, 27, 29, 49.)

> **(2)     FICO has made clear its claims relate to installation and
> physical location of the Blaze Advisor software.**

On July 13, 2018, FICO served its Second Amended Notice of Deposition Under

Fed.R.Civ.P. 30(b)(6) of Federal Insurance Company.  (Hinderaker Decl. Ex. 4.)  Federal

designated Henry Mirolyuz to "testify to those topics relating to Blaze installations."  (*Id.*

at 1.) Deposition topics included:

1(e)    Identification of each entity directly or indirectly controlled by
Federal and each subsidiary of Federal that has *installed* the Blaze Advisor®
software on its servers from June 2006 to the date of the deposition,
**including the date of each such installation**;

13

1(h)    Identification of each division of Federal that has *installed* the Blaze Advisor® software on its server from June 2006 to the date of the deposition, ***including the date of each use installation***.

2(c)    Identification of each non-insurance company subsidiary of The Chubb Corporation serviced by Chubb & Son, a division of Federal, that has *installed* the Blaze Advisor® software on its servers and ***the date of each such installation***.

2(f)    Identification of each insurance company subsidiary of The Chubb Corporation managed by Chubb & Son, a division of Federal, that has *installed* the Blaze Advisor® software on its servers and ***the date of each such installation***.

2(i)    Identification of each entity directly or indirectly controlled by Chubb & Son, a division of Federal, both in the United States and internationally, where "control" means the ownership of more than 50% of the aggregate of all voting interests (representing the right to vote for the election of directors or other managing authority), that has ***installed*** the Blaze Advisor® software on its servers from June 2006 to the date of the deposition, ***including the date of each such installation***.

(*Id.* at 4-6 (emphasis added).)  FICO used the documents referencing ████████████ ████████████████████████████████████ as exhibits in this 30(b)(6)

deposition.  (*See id.* Ex. 5-7).)  FICO took Federal's 30(b)(6) deposition on ████████

(*id.* Ex. 8), over a year before Federal brought the instant motion.

FICO followed up on its installation-based claims in its second 30(b)(6) deposition

notice.  On December 31, 2018, FICO served an Amended Second Notice of Deposition

Under Fed.R.Civ.P. 30(b)(6) of Federal Insurance Company and ACE American

Insurance Company.  (*Id.* Ex. 9.)  Deposition Topics included:

2.    The version of Blaze Advisor® software used in connection with each application that deployed or deploys Blaze Advisor® (being specific to each application by name), ***and hosted on servers located in Canada***, from the

14

date of first use to date. If various versions are used, then the date of use of each version. . . .

3.      The version of Blaze Advisor® software used in connection with each application that deployed or deploys Blaze Advisor® (being specific to each application by name), and *hosted on servers located in the United Kingdom*, from the date of first use to date. . . .

4.      The version of Blaze Advisor® software used in connection with each application that deployed or deploys Blaze Advisor® (being specific to each application by name), and *hosted on servers located in Australia*, from the date of first use to date. . . .

5.      The version of Blaze Advisor® software used in connection with each application that deployed or deploys Blaze Advisor® (being specific to each application by name), and *hosted on servers located anywhere other than the United States, Canada, the UK, and Australia*, from the date of first use to date. . . .

(*Id.* at 3-4.)  Based on the 30(b)(6) deposition topics, it is clear that FICO's claims relate to the installation and physical location of the Blaze Advisor software outside the United States —terms found in the Agreement.

FICO's theories of breach and damages have been available to Federal since April 21, 2016.  Federal's failure to plead a statute of limitations defense is of its own doing and not a result of any deception by FICO.  To the contrary, FICO's theories have been readily apparent.  Federal has been on notice of the theories of breach underlying FICO's claims.  Federal cannot meet the "good cause" requirement at the information it bases its motion on was available to it earlier in the litigation.  *IBEW Local 98 Pension Fund*, 326 F.R.D. at 522.

15

### C.   Federal's efforts to blame FICO for misdirection fail.

As previously shown, Federal was on notice of FICO's theory of breach from the beginning of the lawsuit and throughout the discovery process.  Federal's claims to the contrary fail.  Federal's list of litigation documents and testimony (Dkt. 464 at 4-8) does not suggest otherwise.

Federal states it was surprised because the Complaint, Amended Complaint, and Second Amended Complaint did not state "the License Agreement authorizes 'use' of Blaze outside of the United States" (Dkt. 464 at 5).  They do not.  And, neither does FICO's motion for summary judgment.  The territorial restriction of the Agreement requires Blaze Advisor to be installed and physically located in the United States.  It is technically possible for Chubb & Son employees to use Blaze Advisor installed and physically located in the United States to support business operations located outside the United States.  FICO's summary judgment memorandum says ████.  (Dkt. 398, 13, 24.)   And, FICO claims neither breach nor damages for support given to foreign operations from Blaze Advisor installed and physically located in the United States.  (*See* Neil Report)  The use of Blaze Advisor installed and physically located outside the United States does breach the Agreement—and FICO has consistently said so.

Federal's citation to FICO's in-house counsel's demand letter stating ████████ ████████████████████████████ fails to support its argument.  (Dkt. 460-3)  ████████████████ ████████████████████████████ ████████████████

16



Under the facts of this case, the unauthorized use of Blaze Advisor outside the United States follows from the unauthorized installation and physical location of Blaze Advisor outside the United States.

Federal's contentions regarding FICO's interrogatory answers are unavailing. FICO answered the question that was asked: to identify the third parties that received access to Blaze Advisor in violation of the Agreement.  Federal's interrogatories were not directed to these third parties' installation of Blaze Advisor outside the United States. (*See* Dkt. 464 at 6.)  FICO's response, identifying foreign entities (Dkt. 460-5 at 4-5) was fully responsive.  Likewise, FICO's responses to Federal's interrogatories regarding damages (Dkt. 460-5 at 6-7; Dkt. 460-6 at 6-8; Dkt. 460-7 at 6-9) are also unavailing. FICO is entitled to lost license fee damages because of Federal's breach of contract (i.e. installation, physical location, and permitted use) and those damages are calculated based on usage.  FICO's discovery responses were consistent with its theory of the case.

As previously discussed, FICO is entitled to lost license fee damages because of Federal's breach of contract and those damages are calculated based on usage.  FICO's damages expert's job is to focus on calculating FICO's damages, not

17

proving matters of breach. ██████████████████████████████████████████

████████████████████████████

      Federal's reliance on the fact FICO's licensing expert ████████████

████████████████████████████████████████████

█████████████████ is equally off-point. FICO's licensing expert ████████

████████████████████████. The meaning of the Agreement is the

providence of the Court.



      Federal's list of FICO's litigation responses fails to prove FICO in any way

misdirected Federal or that FICO in any way altered its litigation theories. Federal has

been on notice of the significance of the installation and physical location of Blaze

Advisor since the commencement of the lawsuit. Federal's claims of surprise fail.

Federal's claims of diligence also fail.

IV.    **Federal's statute of limitations affirmative defense is futile.**

    A.    <u>**A motion to amend must be denied if the proposed amendment is**</u>
        <u>**futile.**</u>

"[L]eave to amend an Answer should be denied if the proposed defenses are legally insufficient." *Med. Graphics Corp. v. Hartford Fire Ins. Co.*, 171 F.R.D. 254, 257 (D. Minn. 1997). "For a Motion to Amend an Answer, the asserted defenses are futile if they would not survive a Motion to Dismiss under Rule 12(b)(6)." *Hibbing Taconite*, 266 F.R.D. at 266. A motion to amend premised on a faulty interpretation of a contract must also be denied as futile. *Swanson v. GMAC Mortg., LLC*, No. 11-944(DSD/JSM), 2012 U.S. Dist. LEXIS 46939, at *8-10, 17-19 (D. Minn. Apr. 3, 2012).

    B.    <u>**Federal has pleaded no facts to support its statute of limitations**</u>
        <u>**affirmative defense.**</u>

The purpose of pleading affirmative defenses is to give the opposing party notice of the plea so it can show why the affirmative defense is inappropriate. *Blonder-Tongue Labs. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971). Defendants must "plead an adequate factual basis for affirmative defenses, where the basis is not apparent by the defense's bare assertion." *Hibbing Taconite*, 266 F.R.D. at 267.

Federal's proposed amendment fails to plead any factual basis, giving FICO no notice of the basis for the alleged defenses. (*See* Dkt. 465 at 18.) Federal pleads in its entirety:

> 78.    FICO's claims are barred, all or in part, by the applicable statutes of limitations, including the three year statutory period for copyright infringement claims under 17 U.S.C. § 507(b) and the six year period for breach of contract claims under New York C.P.L.R. § 213(2).

(*Id.*)  Federal's pleading is "merely a label, conclusion, or formulaic recitation of an affirmative defense."  *Ahle v. Veracity Research Co*., 738 F. Supp. 2d 896, 925 (D. Minn. 2010) (finding even if heightened pleading standards of *Iqbal* and *Twombly* are not applicable to affirmative defenses, notice pleading is still required).  Federal's bare recital of an affirmative defense is insufficient notice, especially at this late hour.

### C.   New York recognizes the continuing wrong doctrine.  The statute of limitations does not run for continuous breaches of continuing contractual obligations.

Federal's assertion of a statute of limitations defense to FICO's breach of contract claims fails.  New York, whose law governs the breach of contract claims, has a six-year statute of limitations.  N.Y. C.P.L.R. § 213(2).  Because the lawsuit commenced on April 21, 2016, all acts after April 21, 2010 are within the six-year statute of limitations.

New York recognizes the continuing wrong doctrine.  The statute of limitations does not run when the contract imposes a continuing obligation on the breaching party, and the damages recovery is limited to the six-year period immediately preceding filing of the lawsuit.  *Garron v Bristol House, Inc*., 79 N.Y.S.3d 265, 267 (N.Y. App. Div. 2018).  "[W]here a contract provides for continuing performance over a period of time, . . . accrual occurs continuously and plaintiffs may assert claims for damages occurring up to six years prior to filing of the suit." *Airco Alloys Div., Airco, Inc. v. Niagara Mohawk Power Corp*., 430 N.Y.S.2d 179, 186  (N.Y. App. Div. 1980) "[W]here a duty imposed prior to a limitations period is a continuing one, the statute of limitations is not a defense to actions based on breaches of that duty occurring within the limitations period." *Meadowbrook Farms Homeowners Assn., Inc. v JZG Resources*, Inc., 963 N.Y.S.2d 300,

302 (N.Y. App. Div. 2013).  Federal acknowledges the continuing breach doctrine.  (Dkt.

464 at 10.)

> **(1)   Installations in** ████████████████ **form no basis for a statute of limitations defense.**

In its brief,[5] Federal relies on installations ██████████████ as a

basis for its statute of limitations defense.  (Dkt. 464 at 14.)  Assuming all facts in

Federal's favor, this is an insufficient basis for a statute of limitations defense.  █████

████ is after April 2010.

> **(2)   The continued installation and physical location of Blaze Advisor in the United Kingdom is a continuing breach: the statute of limitations is not a defense.**

In its brief, Federal relies on ████████████████████████

████ as a basis for its statute of limitations defense.  (Dkt. 464 at 14.)  Assuming all

facts in Federal's favor, this is an insufficient basis for a statute of limitations defense.

FICO does not claim damages from ████████.  FICO claims damages for the continuing

breach of the obligation to restrict installation and physical location of Blaze Advisor to

the United States from ████████████████████████

████████████████████  The continuing breach of the territorial

restriction, the installation and physical location of Blaze Advisor outside the United

States, also resulted in the breach of the separate continuing obligation to not permit use

of or access to individuals other than employees of Chubb & Son, a division of Federal.

---

[5] As stated above, Federal's proposed amended answer is devoid of any facts in support
of its statute of limitations defense.

Under Paragraph 3.1, Federal represented and warranted that: (i) use would not exceed the scope of any license granted under the Agreement, and (iv) Chubb & Son would not disclose Blaze Advisor or permit the use or access of Blaze Advisor by any individuals other than Chubb & Son employees.  (Dkt. 460-1 at 2.)  The license grant of Paragraph 2.1 restricted the installation and physical location of Blaze Advisor to the United States.  (*Id.* at 1.)  Federal was subject to the terms of the Agreement for the "Term" of the agreement.  (*See* 460-1 at 1 ¶ 2.1.)  The Term of the Agreement was perpetual.  (Dkt. 460-1 at 6 ¶ 9.1; *id.* at 11.)

These provisions created a continuing duty for Federal to (1) not install or physically locate Blaze Advisor outside the United States and (2) not permit use by or access to Blaze Advisor by individuals who were not employees of Chubb & Son, a division of Federal.  (*See id.*)  On and after April 21, 2010, Federal continued to maintain the installation and physical location of Blaze Advisor outside the United States in continuous breach of the Agreement.  On and after April 21, 2010, Federal permitted use by or access to Blaze Advisor by individuals other than employees of Chubb & Son, a division of Federal, in continuous breach of the Agreement.

Federal's continuing breaches of the Agreement are within the six-year statute of limitations.  *Garron*, 79 N.Y.S.3d at 267.  FICO is entitled to recover damages for the six years prior to commencing the lawsuit.  *Id.*  This is what FICO has demanded. (*See* Dkt. 460-10 at 9 (limiting start date of license fees for ADAPT to April 21, 2010).)  The statute of limitations is not a bar to any of the liability or damages FICO seeks.  Federal's proposed amendment is futile.

(3)     **If Federal's proposed amendment is not futile, FICO will be severely prejudiced by the added defense at this late hour.**

Should the Court find Federal's proposed amendment is not futile, FICO is severely prejudiced.  Discovery is closed.  In opposition to the statute of limitations defense, FICO should be entitled to discover additional dates of installation outside the United States, installation of other versions of Blaze Advisor outside the United States at later dates, and repeated installations on other computers and servers outside the United States.  *See Swanson v. Van Otterloo*, 177 F.R.D. 645, 651 (N.D. Iowa 1998) (Defendants' motion to amend answer to assert qualified immunity was properly denied where plaintiff had made strategy decisions based on failure to raise defense).

**D.     The copyright statute of limitations functions as a damages limitation and not a complete bar to copyright damages.**

Federal further claims a statute of limitations defense to FICO's copyright claims.  This is improper.  With respect to copyright actions, the statute of limitations serves as a limitation to damages and not a bar to claims in their entirety.

(1)     **FICO is entitled to the statutory three-year limit on damages flowing from foreign exploitation of Federal's infringing acts.**

FICO is entitled to damages flowing from foreign exploitation of Federal's infringing acts.  *See Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 52 (2d Cir. 1939) (defining predicate act doctrine).  Under the predicate act doctrine, where a copyright owner shows a domestic violation of the Copyright Act, the copyright owner is entitled to all damages flowing from the foreign exploitation of the infringer's infringing act.  *See id.*; *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d

292, 308 (4th Cir. 2012); *Los Angeles News Serv. v. Reuters TV Int'l.*, 149 F.3d 987, 990-92 (9th Cir. 1998).  Where the domestic act of infringement occurs outside the three-year statute of limitations, a copyright owner is entitled to all damages flowing from the foreign exploitation of the infringer's infringing act within the three-year period preceding the lawsuit.  *Tire Eng'g & Distrib.*, 682 F.3d at 308-309; *Los Angeles News Serv.*, 149 F.3d at 990-92.  In *Los Angeles News Service*, the Court held: "A plaintiff's right to damages is limited to those suffered during the statutory period for bringing claims, regardless of where they may have been incurred." 149 F.3d at 992.

Adopting *Los Angeles News Service*, *Tire Engineering and Distribution* rejected the argument that damages are barred if the domestic predicate act is outside the three-year statute of limitations.  682 F.3d at 308-309.  The court held "a plaintiff may collect damages from extraterritorial conduct, even if the statute of limitations bars an award based on domestic infringement."  *Id.* at 309 (citing *Los Angeles News Serv.*, 149 F.3d at 992).  To do otherwise would allow a defendant to "convert a plaintiff's intellectual property in the United States, wait for the Copyright Act's three-year statute of limitations to expire, and then reproduce the property abroad with impunity."  *Id.* at 308.  "Such a result would jeopardize intellectual property rights and subvert Congress's goals as engrafted on to the Copyright Act."

Federal's distributions to ███████████████████████████ breached the Agreement and infringed FICO's copyrights by the unauthorized

████████████████████████████████████████████████████████████

distributions of the Blaze Advisor software.  Under *Los Angeles News Service* and *Tire Engineering and Distribution*, FICO is entitled to the damages flowing from the foreign exploitation of Federal's ██████████ domestic acts of infringement.  Federal's statute of limitations claim fails as a matter of law.

> (2)     **Federal's continuing acts of infringement are independently actionable.**

Moreover, continuing acts of infringement of FICO's copyright rights within the three-year statute of limitations period are independently actionable.  The Supreme Court has made clear that each infringement carries its own statute of limitations:

> It is widely recognized that the separate-accrual rule attends the copyright statute of limitations.  Under that rule, when a defendant commits successive violations, the statute of limitations runs separately from each violation.  Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete claim that accrues at the time the wrong occurs.  In short, each infringing act starts a new limitations period.

*Petrella v. MGM*, 572 U.S. 663, 671 (2014); *see also Negley v. Hallmark Cards, Inc.*, No. 11-00785-CV-W-DW, 2013 U.S. Dist. LEXIS 196584, at *4-5 (W.D. Mo. Mar. 1, 2013) ("However, because Defendant has alleged continuing infringements, the Court finds that Defendant's claim should not be dismissed in its entirety. . . . Defendant is not precluded on statute of limitations grounds from supporting its copyright infringement claim with incidents that occurred during the three-year period prior to February 3, 2012.").

--------

██████████████████████████████████████████████████████

Federal's statute of limitations defense must fail.  FICO may rely on domestic acts of distribution made within the three-year statute of limitations and is entitled to all damages flowing from foreign exploitation of Federal's infringing act.  ██████

███████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████  The statute of limitations does not bar this claim.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██  ████████████████████████████████████████████████████

███████████████████████████████████████████████

## V.      Conclusion

Federal's attempt to add a statute of limitations defense at this late hour is improper and must be rejected.  Federal was required to plead statute of limitations as an affirmative defense.  It did not.  Federal must show "good cause" to modify the scheduling order.  It cannot.  Federal was required to act with diligence.  It did not.  Moreover, Federal's claim is futile.  New York contract law and the Copyright Act both recognize continuing wrongs.  Federal's proposed statute of limitations defense will have no effect on any of the damages FICO seeks.  Federal's motion should be denied.

Dated: August 15, 2019

MERCHANT & GOULD P.C.

/s/ Allen Hinderaker
Allen Hinderaker, MN Bar # 45787
Heather Kliebenstein, MN Bar # 337419
Michael A. Erbele, MN Bar # 393635
Joseph W. Dubis, MN Bar # 398344
MERCHANT & GOULD P.C.
150 South Fifth Street
Suite 2200
Minneapolis, MN  55402
Tel:  (612) 332-5300
Fax:  (612) 332-9081
ahinderaker@merchantgould.com
hkliebenstein@merchantgould.com
merbele@merchantgould.com
jdubis@merchantgould.com

*Attorneys for Plaintiff Fair Isaac
Corporation*