```
 1                   UNITED STATES DISTRICT COURT
                        DISTRICT OF MINNESOTA
 2
     -----------------------------------------------------------
 3                                     )
     Fair Isaac Corporation, a         ) File No. 16-CV-1054
 4   Delaware corporation,             ) (WMW/DTS)
                                       )
 5            Plaintiff,               )
                                       ) Minneapolis, Minnesota
 6   vs.                               ) May 8, 2019
                                       ) 2:05 p.m.
 7   Federal Insurance Company, an     ) Courtroom 9E
     Indiana corporation, and Ace      )
 8   American Insurance Company, a     )
     Pennsylvania corporation,         )
 9                                     )
              Defendants.              )
10   -----------------------------------------------------------

11              BEFORE THE HONORABLE DAVID T. SCHULTZ
          UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
12                        (MOTIONS HEARING)

13   APPEARANCES
      For the Plaintiff:        Merchant & Gould
14                              ALLEN W. HINDERAKER, ESQ.
                                HEATHER J. KLIEBENSTEIN, ESQ.
15                              80 South 8th Street
                                Suite 3200
16                              Minneapolis, MN 55402

17    For the Defendants:       Fredrikson & Byron, PA
                                TERRENCE J. FLEMING, ESQ.
18                              CHRISTOPHER D. PHAM, ESQ.
                                LEAH C. JANUS, ESQ.
19                              200 South 6th Street
                                Suite 4000
20                              Minneapolis, MN 55402-1425

21    Court Reporter:           MARIA V. WEINBECK, RMR-FCRR
                                1005 U.S. Courthouse
22                              300 South Fourth Street
                                Minneapolis, Minnesota 55415
23

24
         Proceedings recorded by mechanical stenography;
25   transcript produced by computer.
```

MARIA V. WEINBECK, RMR-FCRR
(612) 664-5109

**EXHIBIT 15**

1   last day of discovery is timely.  That's argument number
2   one.  The case law is clear that it's not.  An
3   impracticality, it certainly is not.  When those witnesses
4   were added on the afternoon of March 22nd, there was nothing
5   that FICO could have done to prevent or prohibit the
6   unfairness to FICO.  There was nothing left to do on that
7   afternoon.
8              The next argument is that Federal knew of these
9   witnesses, the identity of these witnesses prior to their
10  inclusion on the Rule 26(a) second supplemental disclosures,
11  but that's not the test under Rule 26(a) awareness of the
12  witness.  The test is has the disclosing party identified
13  the witnesses as somebody who may come to trial on a
14  particular subject matter?  Awareness of the witnesses in
15  this case, these 16 people would make them no different than
16  the hundreds of other people who are identified on Federal's
17  documents, in their document production, or their
18  interrogatory responses.  Defendants point to nothing that
19  discloses these people as potential trial witnesses in this
20  case for the subjects on which they were identified.
21             Now, as we move into each of the groups of the
22  witnesses, we can explain how the prejudice and the
23  untimeliness is true.  So the first group of people are
24  employees that verified interrogatory responses number 16
25  through 20:  Hutchinson, Fisher, Jerd, Seeley, and McCarthy.

1  And actually before I get into that, I'd like to
2  note that there are five witnesses that are not brought up
3  in Federal's brief at all.  There are five witnesses that
4  Federal does not make the contention that we knew about them
5  or should have in any way shape or form.  And those are
6  Schraer, Mencke, Theberge, Garnes and Verduin.  And I
7  apologize if I'm butchering all of those names.
8  But back to the verification responses.  Federal
9  says that we knew about these people and, therefore, they
10 didn't have to add them to their initial disclosures in time
11 because they were identified on verification pages for those
12 interrogatories.  Those interrogatories, mind you, were
13 served in 2017.  These people began showing up on the
14 verification pages at the end of 2018, but the verification
15 pages weren't signed until mid to late March.  So there was
16 no knowledge that they were in fact going to be the
17 verifying witnesses.
18 But, again, awareness of a person is not the test.
19 The verifications were not corrective information because
20 the verifications don't establish that the witnesses will
21 come to trial to support Federal's claims and defenses, and
22 the subject matter is broader.  If I could pull up --
23 THE COURT:  Could I ask you a quick question while
24 you're doing that?
25 MS. KLIEBENSTEIN:  Yes, Your Honor.

1    THE COURT: Do you in the course of this
2  litigation, did you keep a list? A lot of times if you get
3  a number of documents produced, you keep a running list of
4  names in the documents. By any chance did you do that in
5  this case?
6    MS. KLIEBENSTEIN: You know what, I have
7  historically not done that in recent years because -- no, I
8  did not because our electronic database does that for us.
9  We have to go in and ask any questions about who is on the
10  to and from line, so we don't keep a list, but we can access
11  a list. I can tell you it would be hundreds of people.
12    THE COURT: That was ultimately what I wanted to
13  know.
14    MS. KLIEBENSTEIN: I can confirm that for you.
15  Another good example of the breadth of people involved in
16  this case, Interrogatories number 2 and 3, some of these
17  witnesses were identified, Mr. Ewen Setti, I believe is his
18  name, he was identified in response to Interrogatory Number
19  2 and 3, along with 34 other people. So there's nothing in
20  those disclosures. There's nothing in the documents that
21  would identify for us this is the guy. This is the one that
22  they're going to bring to trial on a certain subject matter.
23    THE COURT: What about -- maybe you're getting to
24  it, but what about their point that when they identified 15
25  witnesses on their original Rule 26 disclosure, FICO only

1   deposed three of them anyway.
2               MS. KLIEBENSTEIN:  I'm very glad you asked that
3   question.  It's an important issue to get right.  Out of
4   context, that statement is very misleading.  So when you go
5   back through the history of discovery, you can understand
6   our strategy and where we went.
7               Federal's initial disclosures dated March 17th
8   only had four witnesses on it.  So we have Ms. Palowski, and
9   then Henry Mirolyuz, Pamela Lopata, Ramesh Pandey.  Tom
10  Carretta is a FICO gentleman within our custody and control.
11  So we deposed three of those four people.  We did not depose
12  Ms. Pamela Lopata.  She's a lawyer.  And we deemed her
13  testimony to be entirely duplicative of that from
14  Ms. Palowski based on the documents.  So, at this time, we
15  chose to depose three of the four fact witnesses.
16              At the same time in 2017 and 2018, this is all we
17  had, so we developed a litigation strategy to get the
18  testimony that we need through use of 30(b)(6) depositions,
19  and we served three 30(b)(6) notices, 33 topics.  I think
20  maybe 80 include subparts, and that's how we went after the
21  factual information that we needed in this case.
22              And then in January of 2019, they supplemented to
23  add seven new witnesses.  And at that time, we took a look
24  at our strategy, and we took a look at our witnesses, and we
25  decided not to depose those seven people and here's why.

1  Three of those people were from outside of the United
2  States, and their subject matter was use of Blaze Advisor in
3  Canada, Australia and the UK.  Our 30(b)(6) topics have
4  covered that.  We felt like we needed on those subjects such
5  that we didn't need to go to Canada, Australia, and the UK
6  to depose them.
7         The other four witnesses in those January 2019
8  supplements, the other four people related to the 2006
9  contract negotiations.  We were comfortable with our
10 knowledge about that story both from the FICO and Federal
11 perspective, and we were also comfortable relying on
12 cross-examination should those witnesses come to trial.
13        So having committed to a 30(b)(6) deposition
14 testimony strategy, being willing to rely on
15 cross-examination at trial, and given the limited time
16 remaining in fact discovery, we chose to stay with our
17 current plan of deposition approach.
18        That all changed on March 22nd when there were 16
19 new witnesses that are primarily targeted to defense of the
20 damage's case, to possibly apportionment of the profits
21 relating to infringement under disgorgement analysis.  To
22 say that we wouldn't have deposed these people presumes a
23 fiction that if we had to go back and reassess if we had all
24 31 of these witnesses in front of us, what would we do?  We
25 would have a different discovery strategy.  We would attack

1    it differently.  I can assure you of that.
2              Would we depose all 16 of these witnesses?  That
3    would require a lot of analysis and for us to reassess the
4    case in its entirety.  But to say that we wouldn't have
5    deposed any of them any way is not, out of context, it's not
6    true.  So I'm very glad you asked that question.
7              Moving back to the timeliness, with regard to the
8    witnesses identified as having verified responses to the
9    interrogatories, the problem here is that while we may have
10   been able to discover the name of these witnesses, these
11   subjects that are shown in the second amended initial
12   disclosures are broader than simply explaining the
13   verification of those interrogatories.  And keep in mind
14   that 16 through 18 asked for, or 16 through 20 asked for the
15   gross written premium that went through Blaze Advisor
16   software.  So if you look at these subjects, it's much
17   broader.
18             We have the same problem moving into the group of
19   witnesses that helped, allegedly helped gather data in
20   response to requests for production 30 through 32.  While we
21   could have possibly found their name on some document
22   somewhere, that still doesn't disclose the subject matter of
23   the knowledge that's in the second amended initial
24   disclosures.  And mind you, this is much broader than laying
25   foundation for some charts produced in response to requests

1   for production 30 through 32.
2           Moving to Mr. Harkin, Federal contends that we had
3   an awareness of Mr. Harkin.  There was no need to disclose
4   him on the initial disclosures because we deposed him.
5   However, we weren't notified of Mr. Harkin's name until the
6   final week of discovery.  We were notified that he would be
7   the 30(b)(6) deponent on our topics in our last 30(b)(6)
8   notice and that deposition was to take place on March 25th.
9   He was added to the initial disclosures on the afternoon of
10  Friday, March 22nd.  To the extent that we could have
11  somehow ameliorated this prejudice over that weekend is --
12  that's an unfair proposition to put FICO in.
13          Further in that 30(b)(6) deposition, there could
14  not have been exploration of Mr. Harkin's knowledge as a
15  fact witness.  When any questions were asked outside of the
16  subjects of the 30(b)(6) notice, they were shut down by
17  counsel.  There was no exploration beyond his capacity as a
18  30(b)(6) deponent.  So in sum, the deposition of Harkin as a
19  30(b)(6) deponent is not akin to disclosure on the initial
20  disclosures.
21          We've discussed Mr. Setti before.  He's just one
22  individual listed on a number of documents with dozens of
23  other people.  He was identified in response to
24  interrogatories number 2 and 3, along with 34 other people.
25  The trouble with Mr. Setti is his subject matter is

1   knowledge regarding Blaze Advisor use in the United Kingdom.

2   Now, when defendants did their first supplemental

3   disclosures in January, an individual named David Gibbs was

4   identified on the same subject matter, and Mr. Gibbs is also

5   one of these 34 people identified in Interrogatories Number

6   2 or 3.  Clearly, he was the guy that was going to testify

7   on Blaze Advisor use in the United Kingdom.  We would have

8   no ability to guess that Mr. Setti would have been.

9   And, finally, moving on to Claudio, I won't even

10  try his last name because I know I won't get it right.

11  Federal contends it didn't need to add Claudio to the

12  initial disclosures because he was the individual

13  responsible for settlement discussions in this case.

14  However, that is not the same as telling FICO that Claudio

15  has discoverable information that Federal may use to support

16  its claims and defenses in this case.  The description for

17  his testimony is Blaze Advisor rules usage, not settlement

18  discussions.

19  Moving into substantial justification, there isn't

20  much in the response brief about that.  We don't get any

21  explanation as to why these witnesses that FICO should have

22  been aware of, why they weren't added before along with

23  their subject matter.  The contention is that this late

24  disclosure is substantially justified because the majority

25  were identified in discovery.