```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA

    ---------------------------------------------------------
     Fair Isaac Corporation,          )
                                      )   File No. 16-CV-1054
            Plaintiff,                )          (WMW/DTS)
     v.                               )
                                      )
     Federal Insurance Company, an    )   Minneapolis, Minnesota
     Indiana corporation; and ACE     )   August 22, 2019
     American Insurance Company, a    )   1:30 p.m.
     Pennsylvania corporation,        )
                                      )
            Defendants.                )
    ---------------------------------------------------------

            BEFORE THE HONORABLE DAVID T. SCHULTZ
         UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
                      (MOTIONS HEARING)
```

**APPEARANCES**

| | |
|---|---|
| **For the Plaintiff:** | **MERCHANT & GOULD, PC**<br>**ALLEN HINDERAKER, ESQ.**<br>**JOSEPH DUBIS, ESQ.**<br>80 S. 8th St., #3200<br>Minneapolis, Minnesota 55402 |
| **For the Defendants:** | **FREDRIKSON & BYRON, PA**<br>**TERRENCE FLEMING, ESQ.**<br>**LEAH JANUS, ESQ.**<br>**CHRISTIAN HOKANS, ESQ.**<br>200 S. 6th St., #4000<br>Minneapolis, Minnesota 55402 |
| Court reporter: | DEBRA BEAUVAIS, RPR-CRR<br>300 S. 4th St., #1005<br>Minneapolis, Minnesota 55415 |

    Proceedings recorded by mechanical stenography;
transcript produced by computer.

1  had a conversation about if the agreement was
2  enterprisewide, and I think by way of your questions you
3  said what I would have said -- that is, an agreement
4  enterprisewide and for conversation purposes let's say it's
5  with Federal, that doesn't negate a different term in the
6  agreement that says you shall use it in the United States --
7  you shall only have it installed in the United States.
8        Now, the last question the Court asked is, well,
9  why?  What's the story?  Well, during the negotiations for
10 the original License Agreement, FICO sent out its standard
11 terms and it said the use will be in the United States.
12       Chubb & Son -- and the fellow is an employee of
13 Chubb & Son -- responded and said "global."  And what FICO
14 did in response is say to the extent that we can agree to
15 your terms, it is make the installation physically in the
16 United States, and then the language about use didn't have
17 any further restrictions.
18       And the reason for that, Your Honor, is that --
19 and just as I said earlier and we said in our brief -- if
20 the software is installed in the United States, it can be
21 used in support of business operations that happen to be
22 outside of the United States as long as it's Chubb & Son or
23 Federal for our conversation that's using the software to
24 support those other members of the Chubb family.  And there
25 are practical limitations that follow from that.

1          So there are data privacy issues between
2  countries, for example.  There's issues in terms of being
3  able to have applications that operate in realtime if you
4  are trying to support Australia from Raleigh, North
5  Carolina.  And where it boils down to FICO, it was would you
6  like to have global rights?  That will cost $1.1 million
7  more.  And Chubb said, Well, we don't want to pay that much.
8          So the compromise was we had Chubb & Son in the
9  U.S., and we know that Chubb & Son is supporting various
10 writing companies -- various other insurance companies.  And
11 as long as the software is installed in the U.S. and Chubb &
12 Son people are using it, they can support business
13 operations outside the United States.  It's technically
14 possible.  It's not as robust.  And they did not pay the
15 license fee for the more robust solution.
16         THE COURT:  Well, and, as a practical matter,
17 there is no way to police it anyway.  If all they're doing
18 is using it internally to support people across the pond,
19 you're never going to know that.
20         MR. HINDERAKER:  That's probably true about
21 anything in terms of the license until you discover it, you
22 know.  And, like I'm saying, that kind of a usage for the
23 licensee isn't as robust as if they had the right to install
24 it in the U.K., so they didn't pay as much either.
25         Question was put why weren't more questions asked

1  at the 30(b)(6) deposition about the predicate acts?  Why
2  weren't documents produced before that deposition and only
3  afterwards?  I mean, it's really simple to stand at the
4  podium and say that back in 2018 it would have been done
5  perfectly because there was a perfect set of discovery at
6  the time and everything had been produced, but you know how
7  many times we've been before you on discovery not produced.
8       And on the question of the briefing, Your Honor,
9  the affirmative briefs for our affirmative summary judgment,
10 those have been served.  We are going to receive -- the
11 parties are going to on Monday file their responses to what
12 they received.  So I'm hearing that on Monday I'm going to
13 get a whole new -- I mean, depending on your ruling, but
14 counsel would give us a whole new set of issues to respond
15 to, what, within the remaining 2,000 words of the 12,000
16 limitations?
17      So to suggest that this is going to be raised for
18 the first time in an opening summary judgment brief in which
19 case there is an opportunity to respond simply isn't true
20 because the opening summary judgment briefs have been
21 served.
22      Thank you.
23      THE COURT:  Go ahead.
24      MR. FLEMING:  Just briefly, Your Honor.
25      We heard today from Judge Wright that the summary

1   judgment hearing motion date is going to get continued, and
2   I immediately responded and said, Let's have two more weeks
3   for briefing and it was rejected.  And they knew we were
4   going to raise this argument since we've had our meet and
5   confer and we're having this motion today about a statute of
6   limitations defense on this issue.  I mean, there's no
7   surprise.  They know about it.
8           And just two other quick things.  This chronology
9   that was just put forth about the negotiating and refusing a
10  more fulsome license agreement, that never happened.  They
11  paid for an enterprise license.  They paid more for it.  It
12  went from an application to a division to an enterprise
13  license.  I mean, the testimony is pretty clear about that.
14  There is nothing that would support a claim that there was a
15  broader license that was provided or suggested that they
16  wouldn't pay for.
17          Finally, we've made some point of this, is there
18  any way to police this.  They could have audited to find out
19  the actual use at any time.  That was part of the agreement.
20  They just never chose to exercise that.
21          THE COURT:  One observation before you speak,
22  Mr. Hinderaker.  I think it's quite clear in all of this
23  discussion that teasing out the issue of the statute of
24  limitations, distinct from all of the merits that you both
25  talked about, is difficult at best.

1                And one thing I want to make clear I'm not going
2      to do, obviously, is decide the merits of it.  And in that
3      regard, you know, I will forewarn FICO, of all the
4      magistrate judges here, I probably deny amendments on the
5      grounds of futility far more than anyone else.  I think some
6      of the magistrate judges' view is that's not my job.  That's
7      really a dispositive issue.  Obviously, I view it
8      differently.
9                When we're this close to summary judgment and then
10     trial and the issue of the summary judgment -- or of the
11     statute of limitations is so interwoven with the merits, I
12     am unlikely to deny the amendment on grounds of futility,
13     because it seems like the prudent thing to do in all of
14     those circumstances of this case is to defer to Judge Wright
15     on that.  I'm just giving you a forewarning on that.  But,
16     obviously, I'll consider the argument.  So just an
17     observation.
18               Anything further, Mr. Fleming?
19               MR. FLEMING:  No, Your Honor.  Thank you.
20               THE COURT:  All right.  I am going to give
21     Mr. Hinderaker the last word.  All right?
22               MR. FLEMING:  Yes.
23               THE COURT:  All right.
24               MR. HINDERAKER:  If I wasn't clear about those
25     negotiations, let me try to say it again.  During the

1   negotiations, they happened to be in December 2006, for
2   enterprise-wide rights, they chose to amend the agreement to
3   have enterprise-wide rights.
4          What you and I were talking about earlier was
5   whether those enterprise-wide rights would be global or not
6   and we priced them for global.  We gave them a price for
7   global they did not accept.  So, as a consequence, the
8   agreement was not changed and it was not global.  I hope I
9   was clear about that.
10         THE COURT:  I understand it or at least I'm
11  deluding myself into thinking I understand it.
12         Okay.  So here's what I think I will do:
13  Obviously, this is an important issue, and I will give it
14  all the time and attention it merits.  Again, I feel like
15  I'm in that circumstance where if I'm really serving the
16  parties' interests, it would behoove me to decide the motion
17  and then verbally or orally on the record give you the
18  ruling.  That way you know what things -- where you sit and
19  whoever is aggrieved or somehow if you're both aggrieved,
20  you can appeal that to Judge Wright as quickly as possible.
21         I'm not going to do it today, but I will go look
22  at it now.  And I suspect that I'll have my JA call you or
23  email you with a time on Monday, and I'll announce the
24  ruling then with at least sufficient detail that you will
25  understand the ruling and the rationale for it and you can

```
 1    respond accordingly.  Okay?  Okay.
 2               And I know we're sitting on a couple of other
 3    motions on which we're making progress.  That's all I'll say
 4    about that.  Okay?
 5               MR. HINDERAKER:  Very good.
 6               THE COURT:  Thanks, everyone.  We're in recess.
 7               (Court adjourned at 2:50 p.m.)
 8                          *     *     *
 9          I, Debra Beauvais, certify that the foregoing is a
10    correct transcript from the record of proceedings in the
11    above-entitled matter.
12                     Certified by:  s/Debra Beauvais
                                      Debra Beauvais, RPR-CRR
```