# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION,<br><br>　　　　Plaintiff,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY, an Indiana corporation, and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation,<br><br>　　　　Defendants. | Court File No.  16-cv-1054 (WMW/DTS)<br><br>**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S OBJECTION TO ORDER GRANTING DEFENDANTS' MOTION TO AMEND** |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................I

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 1

    I.    FEDERAL'S AFFILIATE INSTALLS BLAZE IN EUROPE WITH FICO'S KNOWLEDGE AND PARTICIPATION. ....................................... 1

    II.    FICO FAILS TO CLARIFY ITS INTERPRETATION OF THE LICENSE AGREEMENT UNTIL ITS SUMMARY JUDGMENT MOTION. ........................................................................................................ 2

ARGUMENT ................................................................................................................... 4

    I.    MAGISTRATE SCHULTZ'S DECISION WAS NOT CLEARLY ERRONEOUS. ........................................................................................... 4

        A.    Magistrate Schultz did not Commit a Legal Error Justifying *De Novo* Review as FICO claims. ........................................................ 4

        B.    Federal had Good Cause to Amend Due to FICO's Shifting Theories of its Case. ............................................................................ 5

        C.    The Current Supplemental Discovery Period Eliminates any Prejudice to FICO. ................................................................................ 7

    II.    FEDERAL'S STATUTE OF LIMITATIONS DEFENSES ARE MERITORIOUS. ............................................................................................ 8

        A.    Magistrate Schultz Considered FICO's Futility Arguments and Rejected Them on the Record. ..................................................... 8

        B.    FICO Cannot Recover Based on Acts of Installation That Occurred Prior to the Statute of Limitations Periods. ........................ 8

            1.    The Copyright Act Bars FICO From Recovering Based on Installations That Occurred Prior to April 2013. .................. 10

            2.    New York Law Bars FICO from Recovering Damages Stemming from Pre-2010 Installations. ............................... 12

CONCLUSION .............................................................................................................. 13

**INTRODUCTION**

FICO's Objection repeats the same arguments that failed to convince Magistrate Judge Schultz. Contrary to FICO's characterization of those proceedings, Magistrate Schultz considered all of these arguments in a round of briefing and at a lengthy hearing before delivering a balanced ruling. This Court should affirm Magistrate Schultz's decision because his finding of good cause based on FICO's vague and shifting descriptions of its claims throughout this litigation was not clearly erroneous. Magistrate Schultz was also right to find that Federal's statute of limitations defense is not futile because FICO cannot recover based on software installations that occurred outside the applicable statute of limitations periods.

**BACKGROUND**

**I.   FEDERAL'S AFFILIATE INSTALLS BLAZE IN EUROPE WITH FICO'S KNOWLEDGE AND PARTICIPATION.**

Under the "Enterprise-Wide License" granted by Amendment Two to the License Agreement at the center of this dispute, "Client [Federal] and its Affiliates may use [the Blaze Advisor software]." (Dkt. 434, Ex. 5.) When Amendment Two was executed Federal had affiliates located in Europe, Canada, and elsewhere and used data centers in various international locations to host software like Blaze. (Dkt. 437 at FICO0002325; Dkt. 514, ¶ 2.) FICO knew about Federal's global operations from the start, knew that Federal's affiliates were installing or using Blaze outside of the United States, and even assisted at least one of those affiliates in deploying Blaze. (Dkt. 445 at 5-10; Dkt. 507 at 4-11.)

Discovery has shown that Blaze was likely installed at a Federal data center in Europe, but FICO has yet to show that Federal installed Blaze in Canada or Australia as it claims. (Dkt. 507 at 35; Dkt. 514, ¶ 3; Declaration of Christopher D. Pham ("Pham Declaration"), Ex. 1 at 35:24-36:18.) These foreign installations are the subject of the current supplemental discovery period ordered by Magistrate Schultz in connection with his August 26, 2019 ruling. More definite information about these installations will be available by the close of that discovery period on November 27, 2019.

## II. FICO FAILS TO CLARIFY ITS INTERPRETATION OF THE LICENSE AGREEMENT UNTIL ITS SUMMARY JUDGMENT MOTION.

The importance of Federal and its affiliates' foreign *installations* of Blaze did not become clear until FICO filed its Summary Judgment Motion on July 26, 2019. (Dkt. 396.) In its Memorandum supporting that Motion FICO took the position that the definition of Territory found in the initial License Agreement "addressed installation and physical location, *not usage.*" (Dkt. 398 at 14 (emphasis added).) FICO's recitation of the facts in its Objection omits the manner in which its position on this Territory definition has shifted throughout this litigation. (*See* Dkt. 464 at 2-8.)

FICO concedes that its Complaint does not reference the Territory definition or foreign installations as a basis for its claim that Federal breached the License Agreement. (Dkt. 530 at 4.) Instead, FICO alleged breach through "disclosure" to "third parties" in violation of § 3.1 of the License Agreement. (Dkt. 132, ¶¶ 24-30, 45.) Moreover, when Federal asked FICO to "describe the basis" for its claims early in discovery, FICO merely referred Federal to these same portions of its Complaint. (Pham Decl., Ex. 2 at Resp. No. 3; *id.* Ex. 3 at Suppl. Resp. No. 3.)

2

FICO makes much of the fact that the Parties took discovery related to installation, but does not acknowledge that testimony from its in-house counsel and a key sales executive, as well as other sources suggested that FICO was taking the position that the Territory definition made no material distinction between use and installation of Blaze. (Dkt. 464 at 4-8.)  In other words, FICO claimed the definition restricted both.  Sawyer testified that "the license was restricted by the territory definition . . . which restricted to *use* in the United States [*sic*]."  (Pham Decl.., Ex. 4 at 199:4-9 (emphasis added).)  Carretta testified that he believed the Territory definition operated as a restriction on Federal's right to use Blaze outside of the United States because he believed the word "installation" within this definition meant the same thing as use. (Dkt. 460-8 at 57:24-59:24, 103:22-24, 105:21-24.)  Carretta made this claim despite the fact that he was the first attorney to allege that Federal had breached the License by using Blaze outside of the United States after falsely claiming he had just discovered this foreign use. (Dkt. 316 at 5-6.)  FICO never corrected the testimony of Sawyer or Carretta, which contradicts its summary judgment position that Territory "addressed installation and physical location, *not usage.*" (Dkt. 398 at 14.)

By conflating use and installation in its prior interpretation of Territory, FICO made a statute of limitations defense appear inapplicable because this defense normally does not apply to continuing acts like using software.  FICO's newly adopted interpretation of Territory, however, makes clear that FICO is not claiming that Federal breached the Territory definition by using Blaze, rather, it is claiming Federal breached it through acts of foreign installation.

3

Federal promptly sought leave to amend its Answer to add its statute of limitations defense after FICO clarified its position on the Territory definition in its Summary Judgment Motion. (Dkt. 456.) Magistrate Schultz addressed the Parties' arguments regarding Federal's Motion to Amend—including futility—at length in briefing and oral argument before delivering a balanced ruling. (Dkts. 473, 498, 501.) Magistrate Schultz allowed Federal to amend its Answer to add the statutes of limitations applicable to FICO's copyright and contract claims, but his ruling was conditioned on Federal providing FICO with the dates and locations of all its foreign installations of Blaze prior to oral argument on the Parties' Summary Judgment Motions in December. (Dkt. 501.)

## ARGUMENT

**I.  MAGISTRATE SCHULTZ'S DECISION WAS NOT CLEARLY ERRONEOUS.**

As this Court has noted previously, "[a] district court applies an 'extremely deferential' standard of review to a magistrate judge's ruling on a nondispositive issue." *United States ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc.*, No. 13-CV-3003 (WMW/DTS), 2019 WL 3245003, at *2 (D. Minn. July 19, 2019) (citation omitted). Overruling a nondispositive decision, as FICO requests here, is only warranted where the ruling is "clearly erroneous or contrary to law." *Id.* A ruling is clearly erroneous where "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.*

**A.  Magistrate Schultz did not Commit a Legal Error Justifying *De Novo* Review as FICO claims.**

FICO attempts to characterize Magistrate Schultz's decision as an error of law. Not so. Magistrate Schultz did not "fail[] to apply or misappl[y] relevant statutes, case

4

law or rules of procedure." *Id.* Magistrate Schultz applied the correct legal standards under Federal Rules of Civil Procedure 15 and 16. Thus, FICO's Objection is reviewed for clear error. *See, e.g.*, Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *Cmty. Voice Line, L.L.C. v. Great Lakes Commc'n Corp.*, No. C 12-4048-MWB, 2014 WL 272646, at *1 (N.D. Iowa Jan. 23, 2014) (applying clearly erroneous standard of review to objection to order granting leave to amend).

FICO invents a rule of law in an attempt to convince this Court to apply a less deferential, *de novo* standard of review. FICO argues that a "[f]ailure to appreciate or recognize the materiality of known facts is not good cause" under Rule 16. (Dkt. 530 at 7-8.) To the contrary, the "good cause" standard under Rule 16 simply examines the diligence of the moving party and the potential for prejudice to the non-moving party. *See, e.g.*, *Hofmann v. Enter. Leasing Co. of Minnesota, LLC*, No. 13-CV-255, 2014 WL 12601038, at *2 (D. Minn. Oct. 15, 2014). Whether a party knew some of the facts related to its motion to amend previously may be a relevant factor in applying this standard, but FICO does not cite any cases in which a court used such prior knowledge to justify applying *de novo* review to a magistrate's finding of good cause. Moreover, in making this argument FICO ignores its own responsibility for Federal's Motion to Amend.

### B. Federal had Good Cause to Amend Due to FICO's Shifting Theories of its Case.

In its Objection, FICO fails to cite a single case in which a party's vague or shifting theories of its case contributed to another party's decision not to assert an affirmative defense. Good cause exists where a party's conduct in litigation contributes

5

to another party's failure to amend its pleadings sooner. *Hoffman*, 2014 WL 12601038, at *2-4, *5 n.7 (allowing plaintiff to amend complaint during dispositive briefing where defendant produced affidavit that made importance of previously known mechanic clear).

FICO's argument that Federal knew that installation was a topic of discovery misses the point. While the Parties took discovery on installation, FICO's failure to clarify its interpretation of the License Agreement meant there was no reason to differentiate foreign installation from foreign use or any of FICO's other descriptions of its foreign-based claims. Indeed, FICO apparently has still not settled on what conduct is at issue here because within its Objection alone it describes Federal's allegedly "breaching activities" variously as installing, using, distributing, disclosing, exploiting, permitting access to, having non-compliant applications, and physically locating. (Dkt. 530.) FICO's consistent inconsistency in describing its claims in addition to its failure to supplement its incomplete interrogatory responses or amend its Complaint further to clarify its position left Federal without complete information.

In delivering his ruling Magistrate Schultz acknowledged that FICO's varying descriptions of its claims "may not fully convey full appreciation of claims going back to the initial installation as 'the triggering event' that both of the parties have referred to." (Dkt. 576-15 at 4.) He was "persuaded that there is some ambiguity in or at least divergence between the parties as to how to understand the testimony and the discovery responses that say installation is use." (*Id.*) Based on this and other factors, Magistrate Schultz found that "there was no lack of due diligence" by Federal in seeking leave to Amend once it received FICO's summary judgment motion. (*Id.* at 5.)

### C. The Current Supplemental Discovery Period Eliminates any Prejudice to FICO.

FICO's Objection does not address whether it is unfairly prejudiced by Federal's amendment. Generally, however, "'federal courts favor resolution of cases on their merits over the imposition of drastic, tactical sanctions.'" *Doe v. Young*, 664 F.3d 727, 734 (8th Cir. 2011) (citation omitted). Thus, "delay alone is insufficient to deny a motion for leave to amend . . . the party opposing the motion must show it will be unfairly prejudiced." *Dennis v. Dillard Dep't Stores, Inc.*, 207 F.3d 523, 525 (8th Cir. 2000). FICO's citation to *Negley v. Hallmark Cards, Inc.* supports this proposition. No. 11-00785-CV-W-DW, 2013 WL 12147737, at *2 (W.D. Mo. 2013). The court in *Negley* allowed the plaintiff to assert a statute of limitations defense during dispositive briefing because, under Eighth Circuit precedent, "technical failure to comply with Rule 8(c) is not fatal where the defense is raised in the trial court in a manner that does not result in unfair surprise or prejudice." *Id.*; *see also First Union Nat. Bank v. Pictet Overseas Tr. Corp.*, 477 F.3d 616, 624 (8th Cir. 2007).

FICO concedes that the current supplemental discovery ordered by Magistrate Schultz was "an effort to fully eliminate prejudice to FICO." (Dkt. 530 at 6.) This discovery will be completed prior to oral argument on the Parties' Summary Judgment Motions in December. As the court noted in *Negley*, prejudice only occurs where the "defense is raised at such a time that the other party is unable to conduct discovery on the issue or address it in a dispositive motion." 2013 WL 12147737. Here FICO will have the ability to do both without any further changes to the Scheduling Order.

7

## II. FEDERAL'S STATUTE OF LIMITATIONS DEFENSES ARE MERITORIOUS.

"A motion to amend an answer can be denied for futility where the amended defenses are legally insufficient so as to invite a motion to strike under Rule 12(f) [because] it would serve no purpose to allow the amendment." *Johnson v. Officer "A"*, No. CV 08-6427 (JMR/JJK), 2009 WL 10666393, at *2 (D. Minn. June 25, 2009). "Likelihood of success on the new claim or defenses is not a consideration for denying leave to amend unless the claim is clearly frivolous." *Id.* Federal's statute of limitations defenses are not clearly frivolous.

### A. Magistrate Schultz Considered FICO's Futility Arguments and Rejected Them on the Record.

As a threshold matter, FICO's contention that "the Magistrate Judge did not address the issue of futility" is demonstrably false. (Dkt. 530 at 9.) FICO presented the same futility arguments it makes again here to Magistrate Schultz in briefing and throughout an 80 minute hearing. (Dkt. 468 at 19-26; Pham Decl., Ex. 5 at 27:7-30:14.) After listening to these arguments, Magistrate Schultz directly addressed FICO's counsel and rejected futility as a basis for denying the amendment. (*Id.* at 40:21-41:17 ("obviously, I'll consider the argument.").)

### B. FICO Cannot Recover Based on Acts of Installation That Occurred Prior to the Statute of Limitations Periods.

FICO's futility argument suffers from two primary flaws. First, it is premised on a rarely applied doctrine that the Eighth Circuit has never endorsed. Second, and much more significantly, FICO's argument fails to account for the fact that its damages are not

8

based on conduct that violates the Territory definition or the Copyright Act. Rather, only FICO's purported "predicate act" of installation could violate the definition or the Act.

First, Federal's statute of limitations defense to FICO's copyright claims cannot "fail as a matter of law" due to a doctrine that the Eighth Circuit has never adopted. *See Johnson*, 2009 WL 10666393, at *3-4 (rejecting argument that statute of limitations defense was futile based on legal theory the Eighth Circuit had not adopted). It does not make sense to deem Federal's statute of limitations futile based on the predicate act doctrine where that doctrine has rarely been applied and has been the subject of criticism. *Extending the Copyright Act Abroad: The Need for Courts to Reevaluate the Predicate-Act Doctrine*, 23 DePaul J. Art, Tech. & Intell. Prop. L. 237 (2012)[1] ("the predicate-act doctrine has a very weak doctrinal foundation").

Some preliminary discussion is required before considering the second flaw in FICO's futility argument because FICO's Objection lumps together a number of legal arguments, thereby obscuring the scenario in which Federal's statute of limitations defenses succeed.

FICO now appears to make two arguments as to why foreign use and installation breached the License Agreement:

> (1) Federal's unincorporated division, Chubb & Son, was the real "Client" under the License Agreement, not Federal itself, and therefore, any use by affiliates, foreign or domestic, was unlicensed because an unincorporated division cannot have affiliates; and

---

[1] Available at: https://via.library.depaul.edu/cgi/viewcontent.cgi?referer=https://www.google.com/&httpsredir=1&article=1049&context=jatip

9

>   (2) The Territory definition prohibits Federal from installing/physically locating Blaze outside of the United States.

(Dkt. 398 at 3-6.)  FICO's first argument is unsupported by the facts of this case or the relevant legal precedent, as outlined in Federal's recent summary judgment filings. (Dkt. 507 at 20-23.)  Assuming the Court rejects FICO's allegation that it intended to contract with the Chubb & Son division in 2006, then FICO is only left with its second argument to support its claims regarding foreign use and installation.  The statute of limitations then becomes viable as a defense to FICO's argument that Federal breached the Territory definition through foreign installation of Blaze.  The Court should not reach this point either because FICO's second argument is also fatally flawed in that a party to a contract cannot breach a definition – the defined term must be used in some operative portion of the parties' agreement and here it is not. (*See* Dkt. 507 at 16-19.)  Nevertheless, if FICO were to prevail with this argument, Federal's statute of limitations defense could bar a significant portion of FICO's damages, which are based on allegedly "improper usage" stemming from acts of foreign installation. (Dkt. 460-10 at 38.)

### 1. The Copyright Act Bars FICO From Recovering Based on Installations That Occurred Prior to April 2013.

The court in *Actuate Corp. v Fidelity National Information Services* addressed where a party to a license agreement may sue for copyright infringement.  No. C 14-02274 RS, 2014 WL 4182093, at *2 (N.D. Cal. Aug. 22, 2014).  The court noted that "'[a]lthough a case for copyright infringement may lie between two parties to a licensing agreement . . . the potential for infringement exists only where the licensee's action (1)

exceeds the license's scope *(2) in a manner that implicates one of the licensor's exclusive rights.'"* *Id.* (emphasis added).

FICO has failed to produce any evidence that shows Federal or ACE American's conduct "implicates one of [FICO's] exclusive rights" under the Copyright Act except for the evidence described above suggesting that Federal "distributed" Blaze by installing it outside the United States. See 17 U.S.C. § 106. For the rest of its claims, FICO has only presented evidence that Federal, its affiliates, and ACE American *used* Blaze. But it is well-established that mere use of a copyrighted work, whether licensed or not, does not implicate any of these exclusive rights, and is thus only actionable as a breach of contract. *See, e.g., Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 447 (1984); *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 154-55 (1975); *Fortnightly Corp. v. United Artists Television, Inc.*, 392 U.S. 390, 393-95 (1968); *Actuate Corp.*, 2014 WL 4182093, at *4; *cf. Netbula, LLC v. Storage Tech. Corp.*, No. C06-07391 MJJ, 2008 WL 228036, at *9 (N.D. Cal. Jan. 18, 2008) (dismissing copyright claim where alleged "distribution" was merely change in users' employer); *Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.,* 991 F.2d 426, 432 (8th Cir. 1993) ("a contractual restriction on use of a computer program [is] distinct from the exclusive copyright rights").

Under 17 U.S.C. § 507(b) FICO cannot recover based on any act of distribution unless it files suit "within three years after [its] claim accrued." The Supreme Court recognized this principle in *Petrella v. MGM* when it noted that "when a defendant has engaged . . . in a series of discrete infringing acts, the copyright holder's suit ordinarily

11

will be timely under § 507(b) with respect to more recent acts of infringement (*i.e.* acts within the three-year window), but untimely with respect to prior acts of the same or similar kind." 572 U.S. 663, 672 (2014). Accordingly, in a scenario where FICO relies on the Territory definition to argue that Federal's foreign installations constitute infringement, it still may not recover based on any of those installations that occurred more than three years prior to its initial complaint.

The fact that the Fourth Circuit allowed the plaintiff in *Tire Engineering & Distribution v. Shandong Linglong Rubber* to recover based on a predicate act that occurred outside the limitations period does not neutralize this principle. 682 F.3d 292, 308 (4th Cir. 2012). This decision is an outlier and it conflicts with the ordinary application of § 507. *See* William F. Patry, Patry on Copyright, § 25:92.50, *The Fourth Circuit goes way, way off the deep end: Tire Engineering & Distribution, LLC v. Shandong Linglong Rubber Company, Ltd.* ("This remarkable passage *creates* a new statute of limitations rather than interprets the existing one in Section 507…"). Indeed, the Supreme Court seemingly rejected the Fourth Circuit's approach in *Petrella* when it noted that a party "may not use an 'independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period.'" *Id.* at 308 n.7 (citation omitted); *see also Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 890 (6th Cir. 2004).

### 2. New York Law Bars FICO from Recovering Damages Stemming from Pre-2010 Installations.

Nor is Federal's statute of limitations defense futile under New York's "continuing wrong doctrine." That rule does not apply to software installations. FICO

12

argues to the contrary but does not cite a single case involving anything like software distribution where the court applied this doctrine. Instead it cites one distinguishable landlord-tenant case, *Garron v. Bristol House, Inc.*, which does not support its characterization of the conduct at issue here. 162 A.D.3d 857 (N.Y. App. Div. 2018). In *Garron*, the landlord breached what was clearly an ongoing contractual duty to maintain a habitable apartment for the plaintiff. *Id.* Calling an installation a breach of a continuing duty like failing to repair an apartment would allow any party to avoid the statute of limitations simply by labelling a past breach a continuing failure to perform. The doctrine was not meant to be so expansive and it does not apply here.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court affirm Magistrate Judge Schultz's decision granting Federal leave to amend its Answer.

Dated:  September 23, 2019

s/ Terrence J. Fleming
Terrence J. Fleming (#0128983)
tfleming@fredlaw.com
Leah C. Janus (#0337365)
ljanus@fredlaw.com
Christopher D. Pham (#0390165)
cpham@fredlaw.com
Christian Hokans (#0400377)
chokans@fredlaw.com
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
Telephone:  612.492.7000

***Attorneys for Defendants***