UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Fair Isaac Corporation,

        Plaintiff,

v.

Federal Insurance Company, *et al.,*

        Defendants.

Case No. 16-cv-1054 (WMW/DTS)

**MEMORIANDUM OPINION
AND ORDER**

---

Allen Hinderaker and Heather Kliebenstein, Merchant & Gould PC, 80 South Eighth Street #3200, Minneapolis, MN 55402, for Plaintiff

Terrence Fleming, Christopher Pham, and Christian Hokans, Fredrikson & Byron, PA, 200 South Sixth Street #4000, Minneapolis, MN 55402, for Defendants

---

## INTRODUCTION

This is a hotly disputed, vigorously litigated copyright infringement case relating to business-rules software. Plaintiff Fair Isaac Corporation (FICO) claims Defendants Federal Insurance Company, et al. (Federal) have breached their license agreement for the software and have infringed FICO's copyright. FICO has asserted damages of $37 million for breach of contract, $34 million for copyright infringement, and has made a claim for recovery of Federal's profits under Section 504(b) of the Copyright Act in an amount between $2.5 billion and $31 billion.[1]

FICO demanded a jury trial on all claims so triable. *See* Compl., Dkt. No. 1. Federal has moved to strike FICO's jury demand as to its claim for disgorgement of

---

[1] According to FICO's expert, Federal's relevant "gross profits" are $31 billion; Federal asserts its relevant net profits are a "modest" $2.5 billion.

profits. The issue is whether FICO has a right to a jury trial on this claim under the Seventh Amendment to the United States Constitution. This question has been squarely addressed by very few courts, none of them within the Eighth Circuit. Therefore, the question whether FICO's claim for recovery of Federal's profits is a legal remedy on which it is entitled to a jury determination, or an equitable remedy on which it is not, is an issue of first impression within this circuit. For the reasons described below, this Court finds FICO does not enjoy a Seventh Amendment right to a jury determination on its claim for recovery of Federal's profits.

## FACTS

FICO filed this action on April 21, 2016, and included in its original Complaint (and every subsequent filing) notice of its jury demand. *See* Compl. Dkt. No. 1. The case has been vigorously litigated over the past three-and-a-half years. The Court's docket includes 587 individual entries. There have been numerous motions, both dispositive and nondispositive. There is much at stake, both as to liability and as to damages. FICO's damages claims are, to say the least, robust. Its claim for breach of contract is valued at $37 million. Decl. of Terrance J. Fleming, Ex. 2, (Zoltkowski Reply Report) at 37, Dkt. No. 408. Its claim for actual copyright infringement damages is $34 million. *Id.* Its claim for recovery of Federal's profits, which seemingly ranges between $2.5 billion and $31 billion, dwarfs FICO's damages figures. *Compare with* Decl. of Heather Kliebenstein, Ex. 1, (Bakewell Report) at 67, Dkt. No. 424. Federal has moved to strike FICO's jury demand as to its claim for recovery of profits. This case is deemed trial ready as of December 9, 2019. Dkt. No. 205.

**ANALYSIS**

Rule 38 of the Federal Rules of Civil Procedure provides that "the right of trial by jury as declared by the Seventh Amendment to the Constitution – or as provided by a federal statute – is preserved to the parties inviolate." Thus, a party has a right to a jury trial when that right is either provided by federal statute or is within the jury trial right preserved by the Seventh Amendment. The Court therefore starts its substantive analysis with the text of the Copyright Act. However, before turning to that issue it is first necessary to address FICO's challenge to this court's authority to hear Federal's motion.

## I.    This Court's Authority

FICO contends that Federal's motion must be heard by the district judge rather than by the magistrate judge. Pl. Br. 2-3, Dkt. No. 345. To the extent FICO's argument is that the Article III judge *must* hear the matter and may not refer it to the magistrate judge, that argument is flatly wrong under both 28 U.S.C. § 636 and Rule 72, as the district judge may refer to the magistrate judge such dispositive and non-dispositive motions as she sees fit.

To the extent FICO's argument is that this motion is dispositive and has not been specifically referred, the Court finds the argument unavailing. The determination whether the present motion is "dispositive" or "non-dispositive" is consequential because it determines the standard under which the district judge will review the matter when the ruling is "appealed" – as it inevitably will be – to her. For the reasons that

follow, it is this Court's view that the instant motion is a non-dispositive one for which an Order rather than a Report and Recommendation is the proper form of ruling. [2]

Section 636(b)(1) of Chapter 28 of the United States Code defines what is properly the subject of a magistrate judge's order, though it does not use the formulation and language of "dispositive" and "non-dispositive" as does Fed. R. Civ. P. 72. The statute provides that, in civil cases, a magistrate judge may "hear and determine any pretrial matter . . . except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to [certify a class action], to dismiss for failure to state a claim upon which relief may be granted, and to involuntarily dismiss an action." 28 U.S.C. § 636(b)(1). Under the statute any "pretrial matter" other than those specifically excepted are the proper subject of an order by a magistrate judge. *Id.* When referred, those motions that are specifically excepted are properly the subject of a Report and Recommendation to the district judge. *Id.* Rule 72 of the Federal Rules of Civil Procedure uses the short-hand descriptions of "dispositive" and "non-dispositive" to convey this same distinction. Rule 72(a) defines "non-dispositive" as any "pretrial matter" that is "not dispositive of a party's claim or defense."

The present motion does not dispose of any party's claim or defense and is not one of the statutorily specified matters which a magistrate judge may not "hear and determine" but must make a Report and Recommendation to the district judge. Therefore, if Federal's motion is properly deemed a "pretrial matter," it is the proper subject of an order from this Court. Though not framed as such, that question seems to

---

[2] As such, the matter was referred when the case was first assigned; "[c]ase assigned to Judge Wilhelmina M. Wright per Master List and referred to Magistrate . . . ." Dkt. No. 2

4

lie at the heart of FICO's objection to the undersigned's authority to hear and decide the matter. That is, FICO seems to imply that Federal's motion is not a "pretrial matter" because it touches an aspect of the trial process.

Rule 39(a) governs motions to strike a jury demand. Rule 39 (and Rule 38, which preserves inviolate the right to a jury trial) is placed within Title V ("Trials") of the Rules of Civil Procedure, thus lending superficial credence to FICO's argument.[3] But a motion to strike a jury demand is in fact a matter resolved – necessarily – before trial and typically, as here, well before trial. It is, by that definition, a "pretrial matter."

More to the point, however, the little authority that directly addresses this issue supports Federal's position, not FICO's. *See United Steelworkers of Am., AFL-CIO v. New Jersey Zinc. Co., Inc.,* 828 F.2d 1001, 1008 (3d Cir. 1987) (magistrate judge's order on motion to strike jury demand is subject to appeal requirements of § 636(b)(1)(A)); *Laurence v. Hanson*, 197 F. Supp. 2d 533, 536 (W.D. Va. 2002) (right to a jury trial is not a dispositive issue); *Smith v. Dickinson Operating Co.,* Case No. 89-4216-S, 1991 U.S. Dist. LEXIS 7950, at *1 (D. Kan. May 29, 1991) (same); *United States v. Carlson*, Case No. 06-cv-00275-WYD-NEH, 2006 WL 2869122, at n.1 (D. Colo. Oct. 6, 2006); *Wagner v. Richards*, Case No. 12-cv-00817-WJ-SMV, 2014 WL 12789099, at *1 (D.N.M. Aug. 26, 2014); *In re Vaughan Co.*, Case No. 12-cv-0817 WJ/SMV, 2014 WL 12789686, at *2 (D.N.M. July 22, 2014).

The Court is aware of one case within this District in which the motion to strike a jury demand was treated as dispositive by the magistrate judge, *Goodbye Vanilla, LLC*

---

[3] As indicated, however, FICO does not expressly raise this argument, or argue that the motion "touches" the trial process.

*v. Aimia Proprietary Loyalty U.S., Inc.*, Case No. 16-cv-0013,[4] 2016 U.S. Dist. LEXIS 152775, at *1 (D. Minn. Sept. 8, 2016). The referral order in that case did not direct the motion be considered under Section 636(b)(1)(B), but rather left that determination to the magistrate judge, Case No. 16-cv-13, Dkt. No. 56, who, without explanation, treated it as requiring a Report and Recommendation rather than an Order. FICO apparently would have the Court infer from this fact that such treatment is the regular practice in this District or that the issue was carefully briefed and considered, neither of which is warranted on the facts presented.[5]

Because Federal's motion is a "pretrial matter" that does not dispose of any party's claims or defenses, this Court will consider the motion as arising under 28 U.S.C. § 636(b)(1)(A) and Rule 72(a). If Judge Wright determines this conclusion is erroneous, she will no doubt construe this Order as a Report and Recommendation and apply the appropriate standard of *de novo* review.

## II.    The Copyright Act

The Copyright Act does not expressly reference the right to a jury trial in an action for infringement, but merely provides that a copyright owner "is entitled . . . to institute an action for any infringement." 17 U.S.C. § 501(b). Nor have the parties cited any decisions holding that the Act contains an express grant of a jury trial right. To the

---

[4] Of note, *Goodbye Vanilla* – which was cited by FICO in its brief – establishes a magistrate judge's authority to hear such a motion, leaving only the question as to the proper form that the magistrate judge's ruling must take.

[5] FICO also cites to several cases from other districts in which an Article III judge decided a motion to strike in the first instance to imply that this Court lacks authority to hear this motion. It may well be the practice in some districts, or the habit of certain district judges to hear such motions, but that does not answer the question posed here. The inference FICO would have the Court draw from these opinions is unwarranted in light of the statutory language and the decisions, which have squarely addressed and resolved the issue against FICO's position.

contrary, opinions cited by FICO in opposition to Federal's motion recognize that there is no statutory right to a jury trial under the Copyright Act. *See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 346 (1998).

FICO argues that the statute implicitly grants a right to a jury trial by its careful parsing of language in the various remedial sections within the statute, §§ 502, 503, 504, and 505. Sections 502, 503, and 505 all specifically require "the court" to decide the remedy: injunction (§ 502), impoundment (§ 503), and costs and attorneys' fees (§ 505). In contrast, FICO argues, § 504 merely states that the copyright owner may "recover" actual damages and non-duplicative profits, but does not require "the court" to determine them. FICO argues that the Act's use of "the court" in §§ 502, 503, and 505 and its exclusion from § 504 indicates Congress' intent to have juries decide all remedies under § 504. As support for this interpretation of the Act, FICO relies upon general rules of statutory construction, citing *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended."), and *FDA v. Brown and Williamson*, 529 U.S. 120, 133 (2000) ("It is a fundamental canon of statutory construction that the words of a statute must be read in . . . their place in the overall statutory scheme.").

FICO's statutory construction argument is unpersuasive for several reasons. First, it ignores the language of §  501 – the section that expressly authorizes an action for infringement, where one might expect to find the express statutory right to a jury trial, if there were one. However, § 501 is simply silent on the question.

Nor can the difference in language between §§ 502, 503, and 505 on the one hand, and § 504 on the other, reasonably carry the meaning FICO ascribes to it. Sections 502, 503, and 505 all relate to what are exclusively equitable remedies. Section 504, by contrast, relates to both the exclusively legal remedy of damages and the sometimes legal, sometimes equitable remedy of disgorgement that is at the heart of this motion.[6] Congress's careful use of language may merely reflect the difference between relief that is unequivocally and exclusively equitable (§§ 502, 503, and 505) and relief that is partly legal and partly equitable (§ 504). In other words, the difference in language between these sections may merely reflect Congress's understanding of what the Seventh Amendment might require as opposed to an affirmative intent to create an express statutory right to a jury trial on all remedies under § 504. It is simply too great a leap from this language to conclude that Congress "expressly" provided a statutory jury right by implication.[7]

Moreover, the legislative history of § 504 would, if anything, support a contrary conclusion. The House Report on the 1976 proposed revisions to the Copyright Act states regarding § 504:

> In allowing the plaintiff to recover 'the actual damages suffered by him or her as a result of the infringement,' plus any of the infringer's profits 'that

---

[6] *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 668 n.1 (2014) (recovery of profits is sometimes legal, sometimes equitable). The Supreme Court in *Feltner*, in dicta, stated that the "term 'court,' [does not appear] in the subsection addressing awards of actual damages and profits, *see* § 504(b), which generally are thought to constitute legal relief," 523 U.S. at 346, but did not determine whether that section granted a statutory right to a jury trial on disgorgement of profits under § 504(b). Indeed, a careful reading of that dicta would imply the opposite because it stated (somewhat erroneously in light of *Petrella*) that such remedy is generally – but not exclusively – legal rather than equitable.

[7] And, to state the obvious, it would be a puzzling way to provide for a statutory jury trial right to do so by implication.

are attributable to the infringement and are not taken into account in computing the actual damages,' § 504(b) recognizes the different purposes served by awards of damages and profits. Damages are awarded to compensate the copyright owner for losses from the infringement, and profits are awarded to prevent the infringer from unfairly benefitting from a wrongful act. Where the defendant's profits are nothing more than a measure of the damages suffered by the copyright owner, it would be inappropriate to award damages and profits cumulatively, since in effect they amount to the same thing. However, in cases where a copyright owner has suffered damages not reflected in the infringer's profits, or where there have been profits attributable to the copyrighted work but not used as a measure of damages, subsection (b) authorizes the award of both. The language of the subsection makes clear that only those profits 'attributable to the infringement' are recoverable; where some of the defendant's profits result from the infringement and other profits are caused by different factors, **it will be necessary for the court to make an apportionment.**

H.R. 94-1476, 1976 U.S.C.C.A.N. 5659, 5777, 1976 WL 14045, at *161 (emphasis added).

FICO argues that this statement does not change the "framework, analysis or result regarding whether calculation of recovery of profits is a jury question" because the "House Report's use of the term 'court' was not codified in 17 U.S.C. § 504(b) . . . . The statute puts no prohibition on the use of jury trials . . . . Indeed, even if § 504(b) had used the term 'the court,' this . . . would not be determinative [because] 'court' could mean both judge & jury." Letter Brief at 2, Dkt. No. 452. On this latter point FICO is undoubtedly correct, as one legal historian has exhaustively detailed. *See* William F. Patry, *The Right to a Jury in Copyright Cases*, 191 J. Copyright Soc'y 139 (1981). But this observation – that the reference to "court" could mean both judge and jury – disproves the very premise of FICO's linguistic argument. The language in § 504(b) (*i.e.*, its non-use of "court") cannot be read as a statutory grant of a right to a jury trial.

Finally, if, as FICO suggests, the Copyright Act provides a statutory right to a jury trial, one might expect that to have caught the attention of a federal court, particularly in recent years when this issue has been a subject of renewed debate and litigation. But FICO cites no cases in which a court has held that the Copyright Act provides for a *statutory* right to a jury trial.

For all these reasons the Court finds there is no statutory right to a jury trial under the Copyright Act. Therefore, the question turns on whether the Seventh Amendment guarantees FICO the right to a jury trial on its claim for recovery of Federal's profits under 17 U.S.C. § 504(b).

## III.   The Seventh Amendment

The Seventh Amendment provides "in suits at common law, where the value in controversy shall exceed $20, the right of trial by jury shall be preserved." The question whether FICO enjoys a right to a jury trial on its claim for recovery of Federal's profits devolves into a question whether such a right existed in 1791 when the Seventh Amendment was adopted.

To make this determination the Court engages in a two-step inquiry. First, it examines the nature of the statutory action to assess whether it is analogous to 18th-century actions brought in the law courts of England prior to the merger of the courts of law and equity. Second, the Court considers the nature of the remedy sought to determine whether it is legal or equitable in nature. *Tull v. United States*, 481 U.S. 412, 417-18 (1987). Of the two inquiries, the second – the nature of the remedy sought – is the "more important." *Id.* at 421. If these two inquiries fail to yield a clear result, the Court also may consider any relevant practical limitations of a jury trial in the particular

10

circumstances. *Id.* at 418. Such practical limitations, however, are not an independent basis for extending the right to a jury trial under the Seventh Amendment. *Id.*

Recently the Federal Circuit identified, as a distinct analysis, an alternative formulation of the second inquiry, also recognized by the Supreme Court in *Tull*:

> [A court] first asks if the 'cause of action' was tried at law in 1791 or is 'analogous to one that was,' and then asks if the particular 'trial decision' – such as the 'remedy' determination after finding 'liability' – must be decided by the jury in order to preserve the jury trial right on the cause of action as it existed in 1791.

*Texas Advanced Optoelectronic Sol., Inc. v Renesas Electr. Am., Inc.*, 895 F.3d 1304, 1319-20 (Fed. Cir. 2018) (citing *Tull*, 481 U.S. at 426 ).

## A.    The Cause of Action Inquiry

Turning to the first question, whether an action for copyright infringement is analogous to cases that were tried in the English law courts in 1791, there is a clear answer:

> Unlike many . . . Seventh Amendment cases, which have involved modern statutory rights unknown to 18th-century England . . . the common law and statutes in England and this country granted copyright owners causes of action for infringement . . . . Copyright suits for monetary damages were tried in courts of law, and thus before juries.

*Feltner*, 523 U.S. at 348-49 (citations omitted); *cf.* H. Tomás Gómez-Arostegui, *Equitable Infringement Remedies Before 1800*, Research Handbook on the History of Copyright Law (2016) (discussing question whether remedy of disgorgement was available at common law in England). It is, in fact, well established – and undisputed by the parties – that copyright infringement *actions* are tried to a jury. *Case Cty. Music Co. v. C.H.L.R. Inc.*, 88 F.3d 635, 642 (8th Cir. 1996) ("We think patent and copyright actions are sufficiently analogous to conclude that as patent infringement is a legal

11

action to be 'tried to a jury, so is copyright infringement.'"). In short, the first factor – the nature of the action – favors FICO. However, as already indicated, the nature-of-the-action inquiry is less important to the Court's determination here than is the remedy inquiry.

###    B.    The Nature of the Remedy Sought

The question here is whether the remedy sought by FICO – recovery of Federal's profits – is legal or equitable in nature in the particular circumstances of this case. Or, alternatively, whether this remedy determination "must be decided by the jury in order to preserve the jury trial right in the cause of action as it existed in 1791." *Texas Advanced*, 895 F.3d at 1319-20.

Since it is well settled that in a copyright infringement action where the recovery sought is monetary damages there is a jury trial right, some courts have first asked whether the disgorgement of profits in the particular case is merely a proxy for actual damages. *Id.* at 1320. When the disgorgement of profits is merely a proxy for actual damages, the remedy is legal rather than equitable in nature:

> In some cases, a plaintiff seeking disgorgement . . . might prove that this measure of relief, though focused on the defendant's gains, is good evidence of damages . . . .

*Id.* at 1320-21. The 1976 House Report regarding § 504(b) quoted above makes a similar point, albeit in a slightly different context, when it observed that "the defendant's profits [can be] nothing more than a measure of the damages suffered by the copyright owner."

FICO's claim for disgorgement of Federal's profits in this case, however, is not offered as a measure of or a proxy for its actual damages. First, FICO's experts have

calculated these separate measures of recovery: (1) damages for breach of contract; (2) damages for infringement of the copyright; and (3) Federal's gross profits from the infringement as measured by the relevant[8] gross written premiums. The recovery of profits measure – by FICO's own assertions – is not a proxy for its actual damages or any measure of compensable harm. *See Texas Advanced*, 895 F.3d at 1320 ("TAOS's expert, when presenting its evidence of appropriate monetary relief, gave very different figures at trial for monetary relief for disgorgement and for reasonable royalty."). This conclusion is buttressed by the language of § 504(b), which provides "a copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are not taken into account in computing the actual damages." FICO has apparently been able to fully compute its alleged actual damages; FICO has not asserted that Federal's profits represent actual damages it has suffered. Therefore, the profits it seeks to disgorge are not actual damages, nor a proxy for them. Moreover, the staggering amount of profits FICO seeks to disgorge vastly outstrips its claim for actual damages. FICO's claim for disgorgement is at least $2.5 billion – and potentially as high as $31 billion – whereas its claim for actual damages is a "mere" $34 million. This disparity itself demonstrates that disgorgement of Federal's profits is unrelated to any actual damages FICO suffered.

Since FICO's request for disgorgement is not a proxy for actual damages, the question becomes "whether disgorgement of [an infringer's] profits, considered on its own terms, without proof that it was a sound measure of [FICO's] harm was available

---

[8] The parties dispute which gross revenues – the starting point for the net profits recovery – are the relevant revenues. Resolving that issue is not necessary to the Court's resolution of this motion.

at law in 1791 for this sort of wrong." *Texas Advanced* 895 F.3d at 1321. On this question the historical record strongly favors Federal. According to one commentator, the historical record establishes that, as a stand-alone remedy for copyright infringement, disgorgement of profits developed in, and was only available from, courts of equity. *Research Handbook on the History of Copyright Law* at 220. The Federal Circuit reached the same conclusion based on its review of the historical evidence. Rejecting the right to a jury trial on disgorgement in trade secret matters the court in *Texas Advanced* stated that after conducting a searching historical analysis, "[a]s for copyright . . . infringement, we have seen no support for concluding that disgorgement of profits was available at law . . . ." 895 F.3d at 1325-26. Moreover, in other seemingly analogous areas of intellectual property – patent and trademark infringement and trade secret misappropriation – judges and scholars have tended to find that disgorgement remedies were the province of equity and not for a jury. *See* Bruce Sperling, *The Right to Jury Trial in a Federal Action for Trademark Infringement or Unfair Competition*, 62 Trademark Rep. 58 (1972); *Kars 4 Kids Inc. v. America Can!*, Case No. 3:16-cv-4232, 2019 WL 2078670, at *3 (D.N.J. May 10, 2019) (granting plaintiff's "Motion to Present Disgorgement Evidence Outside the Presence of the Jury"); *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1065 (9th Cir. 2015) ("The Seventh Amendment does not require that a jury calculate these profits, because juries have not traditionally done so, and a claim for profit disgorgement is equitable in nature."); *O'Reilly Auto. Stores, Inc. v. Bearing Techs., Ltd.*, Case No. 16-3102-CV-S-BP, 2018 WL 4862366, at *1 (W.D. Mo. Oct. 8, 2018); *Arctic Cat, Inc. v. Sabertooth Motor Grp., LLC*, Case No. 13-146, 2016 WL 4212253, at *6 (D. Minn. Aug. 9, 2016); *Koninklijke Philips N.V. v.*

*Hunt Control Sys., Inc.*, Case No. 11-3684, 2016 WL 6892079, at *1 (D.N.J. Nov. 21, 2016); *Minn. Specialty Crops, Inc. v. Minn. Wild Hockey Club, LP*, Case No. 00-2317, 2002 WL 1763999, at *10 (D. Minn. July 26, 2002). FICO distinguishes these decisions, arguing that the language of the Patent Act and of the Lanham Act differs from that of the Copyright Act. In the former two, the award of profits is expressly left to the court; in the latter the statute is silent. But that distinction in statutory language hardly answers the question before this Court, which is whether the remedy of disgorgement of the kind that is at issue here was available in the law courts in 1791.

FICO also cites *Swofford v. B & W, Inc.*, 336 F.2d 406 (5th Cir. 1964). In *Swofford*, the Fifth Circuit summarized patent infringement history to reach the opposite conclusion:

> The profits which were recoverable in equity against an infringer of a patent were compensation for the injury the patentee had sustained from the invasion of his rights. Such profits were considered the measure of the patentee's damages. It was very early recognized that 'though called profits, they are really damages . . . .' *Mowry v. Whitney*, 1871, 81 U.S. (14 Wall.) 620, 653, 20 L.Ed. 860.

> A court of equity awarded compensation in order 'to avoid multiplicity of suits and to do complete justice,' *Root v. Lake Shore & M.S. Rwy. Co.*, 1881, 105 U.S. 189, 207, 26 L.Ed 975, and not because the jury was considered an inappropriate office for compensation. . . . such compensation, and accounting of profits, was only incidental to the equitable ground for the intervention of the equity court, the injunction against continuing infringements. Thus, unless the primary right to injunction existed, the court of equity had no jurisdiction with reference to 'a mere question of damages'; this corollary principle is applied by both English and American courts in patent and copyright infringement cases. *Root v. Lake Shore & M.S. Rwy. Co.*, *supra*, 105 U.S. at 209-10, 215-16.

> Therefore the rule allowing an accounting for profits was adopted, not for the purpose of acquiring jurisdiction, but, for the purpose of awarding a substitute for damages at the option of the complainant in cases where, having jurisdiction to grant equitable relief, the Court was not

15

permitted by the principles in practice in equity to award damages. 105 U.S. at 215.

In summary, an accounting for profits, although a creature of equity, is a rule of administration and not of jurisdiction . . . and should not be invoked so as to deprive the parties of a jury on what is basically a money claim for damages based upon a charge of patent infringement.

The Ninth Circuit, in a copyright case, found this reasoning persuasive and held by extension that there was a Seventh Amendment right to a jury trial on the issue of disgorgement of the copyright infringer's profits. *Sid & Marty Krofft Television Prod., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1175 (9th Cir. 1977). However, close scrutiny of *Swofford* and the 19th-century Supreme Court decisions on which it rests – primarily *Root v. Lake Shore & M.S. Rwy. Co.* – demonstrates that both *Swofford* and *Sid & Marty Krofft* misconstrued or misapplied the precedent on which they purported to rely.[9]

In *Root*, the case on which both *Swofford* and *Sid & Marty Krofft* depend, the issue was not whether there was a Seventh Amendment right to jury trial on disgorgement in a copyright case. Rather, the issue was whether an action could be brought in federal court under the equitable authority granted in the Patent Act of 1880 for disgorgement of an infringer's profits where the patent had expired, and no injunction could therefore issue. Plaintiff argued that since the Patent Act gave the court powers to grant equitable relief to enforce the patent, he could obtain an accounting of profits and disgorgement even though the patent had expired. The Supreme Court conducted a detailed review of English common law and early American legal history to find that the remedy of disgorgement, though ancillary to the court's equity jurisdiction, was not itself sufficient to establish equity jurisdiction.

---

[9] It is telling that, in the more than forty years since the decision in *Sid & Marty Krofft*, no court has cited, much less adopted, its analysis.

In other words, if the equity court had jurisdiction to enforce a still-extant patent (by enjoining its continued infringement), it could also order an accounting and disgorgement of profits. But it could not take jurisdiction solely to make an accounting if there was nothing to enjoin, equity's jurisdiction being its ability to protect the patentee's existing rights. If there was no on-going infringement to enjoin, the patent holder had an adequate remedy at law in a suit for damages. But though equity jurisdiction did not exist solely to award profits, the remedy of an accounting of profits was strictly "a creature of equity."

In the *Root* case itself, since there was no existing patent to enforce by way of injunction, the naked request for an accounting and disgorgement did not create jurisdiction under the court's equity powers under the Patent Act. Since there was no viable claim under the Patent Act, there was no federal question jurisdiction in federal court and the district court had properly dismissed the action. Thus, in *Root*, the Supreme Court found that the request for disgorgement was not a basis on which to find jurisdiction under the Patent Act, even though it was a remedy available under that Act.

The court in *Swofford* twisted the Court's historical analysis, holding that because disgorgement could be, in appropriate cases, a proxy for damages, it was always only a proxy for damages. As such, the *Swofford* court concluded, disgorgement was never truly an equitable remedy, but a legal one subject to a jury trial right. But the fact that it was "a rule of administration, not of jurisdiction" does not mean it was merely – or always – a legal remedy. *Swofford*'s holding ignores the subtlety of the historical analysis in *Root*. Under the divided systems of law and equity

in England a copyright (or patent) holder had to elect his remedy – legal or equitable. And, equity jurisdiction could only exist when there was no adequate remedy at law. Since law courts could not issue injunctions there was no adequate remedy at law if an injunction was necessary to stop an infringement. In that circumstance, the copyright (or patent) holder could sue in equity. Ancillary to his right to an injunction, he could disgorge the infringer's profits – whether or not those profits bore any relation to the damages, if any, he sustained. As the Supreme Court summarized in *Root*:

> When, however, relief was sought which equity alone could give, as by way of injunction to prevent a continuance of the wrong, in order to avoid multiplicity of suits and to do complete justice, the court assumed jurisdiction to award compensation for the past injury, not, however, by assessing damages, which was the peculiar office of a jury, but requiring an account of profits, on the ground that if any had been made, it was equitable to require the wrong-doer to refund them, as it would be inequitable that he should make a profit out of his own wrong.

*Root*, 105 U.S. at 207. Where there was no injunction to be had, however, there was no equity jurisdiction because the copyright holder had an adequate remedy at law – a suit for past damages. In rare cases, a plaintiff could prove his damages by evidence of the infringer's profits. *Id.*, at 196-97. But when those profits were used as the measure of the plaintiff's damages, they were computed not by the jury, but by a master. *Id.* at 199. In short, an award of profits was only available at law when it was a proper measure of damages; it was always available in equity whether or not it was a proxy for damages.

Today, because a unified court can award both equitable and legal relief, the inquiry regarding disgorgement requires this Court to focus on the nature of the profits remedy in the circumstances of the particular case. Where disgorgement is merely a proxy for damages, it is legal in nature; where it is not, it is purely equitable.

18

That this is indeed the question the Court must answer is captured by the Supreme Court's footnote in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014): "Like other restitutional remedies, recovery of profits [under the Copyright Act] 'is not easily characterized as legal or equitable,' for it is an 'amalgamation of rights and remedies drawn from both systems.' . . . Given the 'protean character' of the profits-recovery remedy, . . . we regard as appropriate its treatment as 'equitable' in this case." 572 U.S. at 700 n.1. The Supreme Court's recognition of the "protean" nature of the profits recovery as an amalgamation of rights and remedies drawn from both systems reflects precisely the complicated history described above. It also emphasizes that this Court's inquiry is case-specific: is the disgorgement remedy FICO seeks legal or equitable in nature in the circumstances of this particular case?

As to that question, the Court finds that FICO's claim is equitable in nature. As already indicated, FICO's claim is not a proxy for its actual damages, which FICO has separately analyzed and calculated (and which it has described as its "lost deployment and develop seat license, support and maintenance fees". Dkt. No. 408.). FICO has not alleged it is incapable of computing its actual damages, that Federal's infringement of the copyright has impaired its value, or that it has harmed FICO's business in any manner that is not accounted for in its damages measure. Nor has FICO claimed that Federal's profits somehow measure FICO's lost profits. Federal's profits are derived from gross written insurance premiums, a type and source of income FICO cannot in any sense generate for itself. Finally, FICO has not asserted that the recovery of profits is a form of punitive damages that would normally be considered a legal remedy. *See*, *Feltner*, 523 U.S. at 352.

19

As it is disconnected from and in addition to any actual harm FICO has suffered, FICOs request to disgorge Federal's profits is purely intended to divest Federal of its allegedly ill-gotten gains. It is a purely equitable remedy in this case.

Considering this matter under the alternative formulation of the "remedy test" leads to the same result. In a merged court, allowing a jury to decide the amount of disgorgement of Federal's profits is not necessary to preserve the *substance* of its right to a jury trial in this copyright infringement case. A jury will determine whether there has been an infringement of its copyright and if so, what actual damages are recoverable for that infringement. The Court, however, will determine whether an injunction will issue and whether and how much of its profits Federal will be required to disgorge.

### C.    FICO's Arguments to the Contrary Are Not Persuasive

At oral argument, FICO asserted there is a "wall of precedent" supporting its argument that recovery of profits is a legal remedy for which it has a jury trial right. Hr'g Tr. 16, Dkt. No. 467. A close examination of FICO's authority, however, causes its "wall of precedent" to crumble. First, FICO argues that *Feltner* establishes that *all* monetary recovery under the Copyright Act is legal rather than equitable in nature. But *Feltner* holds no such thing; *Feltner* merely establishes that a claim for statutory (as distinct from "actual") damages under § 504(b) of the Copyright Act is a legal remedy for which a jury trial is required. 523 U.S. at 352. In fact, the entire logic of *Feltner* supports the opposite conclusion in this case. Statutory damages were well known at common law both in England and in the Colonies as a proxy for compensatory actual damages prior to the enactment of the Seventh Amendment. *See generally* Patry, *The Right to a Jury*

*in Copyright Cases*, 191 J. Copyright Soc'y 139 (1981). A suit for recovery of statutory damages at common law proceeded as an action on the debt. *Id.* The statutory damages themselves were intended to be compensatory and/or punitive, both types of relief that were available in the law courts rather than in the courts of equity. *Id.* It was precisely because statutory damages were a measure of actual damages distinct from monetary relief that was equitable, such as disgorgement of improper profits, that the Supreme Court in *Feltner* found a right to a jury trial on a claim for statutory damages:

> We have recognized the 'general rule' that monetary relief is legal, . . . an award of statutory damages may serve purposes traditionally associated with legal relief, such as compensation and punishment. . . . [A] monetary remedy [is not] rendered equitable simply because it is 'not fixed or readily calculable from a fixed formula.' Accordingly, . . . we must conclude that the Seventh Amendment provides a right to a jury trial where the copyright owner elects to recovery statutory damages.

523 U.S. at 349. In other words, statutory damages are damages. As such they were typically recoverable in the courts of law.

This result is reflected in the structure of the Copyright Act itself. Under § 504, statutory damages are offered as an alternative to actual damages and are meant to compensate the plaintiff for the harm actually suffered and/or to punish the infringer. To the extent that FICO relies on the statement in *Feltner* that, as a "general rule" monetary relief is legal, that reliance is misplaced. As the Supreme Court noted in *Petrella*, disgorgement of profits is a unique form of monetary relief; it is protean in nature – sometimes equitable, sometimes legal. When it is equitable in nature, disgorgement is an exception to the "general rule" that monetary relief is legal. *Feltner*, to the extent it provides any guidance at all, supports Federal's position that the request for disgorgement of improper profits in this case is equitable in nature.

Similarly, FICO relies on a host of copyright infringement cases from various district courts. For example, FICO relies on the decision in *Looney Ricks Kiss Architects Inc. v. Bryan*, Case No. 07-0572, 2014 U.S. Dist. Lexis 35562 (W.D. La. Mar. 18, 2019). In *Looney Ricks*, the district judge merely determined that the amount of recoverable profits was in dispute and therefore denied summary judgment to the defendant on that issue. In the course of that denial the judge observed that "the jury 'will determine how much, if any, of the profits are attributable to the alleged infringement if the jury determines infringement occurred.'" 2014 U.S. Dist. LEXIS 35562 at *7. The parties did not argue, and the court did not determine, whether there was a Seventh Amendment right to a jury trial on the issue. The court's casual remark cannot be reasonably read as a thoughtful analysis of the issue.

In *Bergt v. McDougal Littell*, 661 F. Supp. 2d 916 (N.D. Ill. 2009), the district court denied defendant's motion for summary judgment on apportionment of profits attributable to the infringement. In its decision, the court stated that "because apportionment is a highly fact specific inquiry . . . the determination of profits attributable to the alleged infringement should be left to the jury. Accordingly, McDougals' motion for summary judgment on Bergt's request for disgorgement of profits will be denied." 661 F. Supp. 2d at 929. As in *Looney Rick's,* the court in *Bergt* was not asked to address, and did not actually consider, whether there was a Seventh Amendment right to a jury trial on disgorgement of profits. The *Bergt* court's offhand reference to a jury is of no precedential value.

Similarly, FICO relies on *Fahmy v. Jay Z*, Case No. 2:07-cv-05715-CAS(PJWx), 2015 U.S. Dist. Lexis 139298 (C.D. Cal. Oct. 9, 2015). However, the court in *Fahmy* in

fact wrote "[N]onetheless, while the case law does not provide a definite answer, in light of *Petrella*, it appears that the appropriate course is to treat the award of profits as an equitable remedy . . . therefore, the Court will calculate the amount of profits, if any, to be awarded pursuant to Section 504(b). Notwithstanding the foregoing the Court believes that the assistance of a jury may be helpful in determining the appropriate measure of profits to which Plaintiff may be entitled. Accordingly, the Court will have the issue of Plaintiff's recovery of profits presented to the jury and will treat the jury's verdict on this issue as advisory." 2015 U.S. Dist. Lexis 139298, at *4. The discretionary decision to empanel an advisory jury is hardly precedent to support a constitutional right to a jury trial on the issue. To the contrary, it supports the opposite conclusion, as do other decisions on which FICO relies wherein courts have decided to empanel an advisory jury. *See, e.g.*, *Cisco Sys. Inc. v. Arista Networks Inc.*, Case No. 14-cv-5344, Dkt. No. 661 at 12-13 n.2 (N.D. Cal. Nov. 16, 2016); *Oracle America, Inc. v. Google Inc.*, Case No. 10-3561, Dkt. No. 1789 (N.D. Cal. May 3, 2016).

FICO does cite two decisions that squarely resolved the issue in its favor. One is *Sid & Marty Krofft* which, as discussed above, was flawed in its premise and has not been relied on since. The other is *Phoenix Techs. Ltd. v. V.M. Wear, Inc.*, Case No. 15-cv-01414-HSG, 2017 WL 1957042 (N.D. Cal. 2017). In *Phoenix Techs.*, the court simply stated that "it is not persuaded that the award of infringer's profits is an equitable remedy in the copyright context, and will submit this issue to the jury," relying not on the decision in *Sid & Marty Krofft* but instead upon the fact that the Ninth Circuit had affirmed jury awards of infringers' profits in copyright cases. 2017 WL 1957042, at *22. Those decisions did not consider, much less analyze, the copyright owner's

*right* to a jury trial; rather, the Ninth Circuit merely affirmed what the jury had awarded. *See Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir. 2000); *Lucky Break Wishbone Corp. v. Sears Roebuck & Co.*, 373 Fed. App'x 752, 757-58 (9th Cir. 2010); *see also Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 516 (4th Cir. 2003); *Bonnor v. Dawson*, 404 F.3d 290, 295 (4th Cir. 2005); *Polar Bear Prod. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004). These cases *may* indicate the practice followed within the Ninth Circuit, but they shed little light on the issue here. The same may be said of similar decisions within the Eighth Circuit (FICO cites two) affirming jury awards. *See Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 800 (8th Cir. 2003); *Mary Ellen Enters. v. Camex, Inc.*, 68 F.3d 1065, 1068 (8th Cir. 1995). The defect in FICO's argument is that none of these cases addressed the Seventh Amendment issue nor why the profits remedy was given to the jury in the particular case. As a result, these decisions are of little, if any, precedential or probative value.

Finally, FICO relies on the fact that three federal circuits – the Seventh, Ninth, and Eleventh – and the ABA have model jury instructions for recovery of profits in copyright cases. At best, this is merely circumstantial evidence of what this Court has already found (and what *Petrella* observed), namely, that in some cases disgorgement of profits may be a legal remedy rather than an equitable one. If it is, a jury instruction is appropriately given. But this evidence does not establish that it is *always* a legal remedy for which a jury trial is a matter of constitutional imperative.

For all the reasons previously stated, this Court finds FICO's request for disgorgement is equitable in nature and FICO is not entitled to a jury determination of this issue.

## CONCLUSION

The Supreme Court's brief footnote in *Petrella* captures the rich and complicated English legal history of the remedy of disgorgement – it is an "amalgamation of rights and remedies drawn from both systems." Its protean nature requires the Court to examine the remedy in the particular facts and circumstances of each case. That examination leads inexorably to the conclusion that in this case the remedy sought is equitable, not legal.

## ORDER

The Court, being duly advised in the premises, upon all the files, records and proceedings herein, now makes and enters the following Order.

**IT IS HEREBY ORDERED** that Defendants' Motion to Strike Plaintiff's Jury Demand on Disgorgement Remedy [Dkt. No. 329] is **GRANTED**.

Dated: October 9, 2019                s/David T. Schultz_____
                                      DAVID T. SCHULTZ
                                      United States Magistrate Judge