# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation, | ) ) ) | Case No. 16-cv-1054(WMW/DTS) |
| Plaintiff, | ) ) | **Jury Trial Demanded** |
| v. | ) ) | |
| FEDERAL INSURANCE COMPANY, an Indiana corporation and ACE AMERICAN INSURANCE COMPANY a Pennsylvania corporation, | ) ) ) ) | **FILED UNDER SEAL** |
| Defendants. | ) ) | |

## <u>PLAINTIFF FAIR ISAAC CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE TESTIMONY OF W. CHRISTOPHER BAKEWELL</u>

# <u>TABLE OF CONTENTS</u>

I.      Introduction. ..............................................................................................1

II.     Mr. Bakewell's lost license fee opinions are inadmissible. ......................2

        A.      Mr. Bakewell's opinions are legally erroneous; actual damages are
                properly measured according to FICO's loss. ................................2

        B.      Mr. Bakewell's opinions regarding the parties' negotiations and third
                party agreements are inadmissible because he failed to show
                comparability. ................................................................................2

                1.      The parties' 2016 negotiations are not comparable. .........3

                2.      FICO's negotiations with Oracle and Dell are not comparable. ........4

                3.      Mr. Bakewell concedes he did not rely on other third party
                        agreements. ......................................................................5

        C.      Mr. Bakewell's noninfringing alternatives opinion is contrary to law,
                and he has not shown the alleged alternatives had similar
                functionality to Blaze Advisor. ....................................................5

III.    Mr. Bakewell's disgorgement opinions are inadmissible. ........................6

        A.      Mr. Bakewell's revenue opinion is irrelevant and will mislead the
                jury; it is based on sources of revenue unconnected to the
                infringement. ................................................................................6

        B.      Mr. Bakewell's opinion on expense deductions is inadmissible
                because he does not match the claimed deductions to the infringing
                revenue. ........................................................................................7

        C.      Mr. Bakewell's apportionment opinion is speculative and
                inadmissible, because he fails to perform an apportionment
                calculation. ....................................................................................9

IV.     Conclusion. ..............................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Design Ideas v. Things Remembered*,
No. 07-3077, 2009 U.S. Dist. LEXIS 38374 (C.D. Ill. May 6, 2009) ........................... 9

*Gaste v. Kaiserman*,
863 F.2d 1061 (2d Cir. 1988) ........................................................................................ 8

*Hamil Am. v. GFI*,
193 F.3d 92 (2d Cir. 1999) .................................................................................. 7, 8, 9

*Lasercomb Am. v. Reynolds*,
911 F.2d 970 (4th Cir. 1990) ........................................................................................ 4

*Lowry's Reports v. Legg Mason*,
271 F. Supp. 2d 737 (D. Md. 2003) ........................................................................... 10

*M2M Sols. LLC v. Motorola Sols.*,
12-33-RGA, 2016 U.S. Dist. LEXIS 22944 (D. Del. Feb. 25, 2016) ........................... 3

*Montgomery v. Noga*,
168 F.3d 1282 (11th Cir. 1999) .................................................................................... 2

*Oracle Am. v. Google*,
C 10-03561, 2011 U.S. Dist. LEXIS 136172 (N.D. Cal. Nov. 28, 2011) ................... 6

**Statutes**

17 U.S.C. 504(b) ................................................................................................... 1, 6, 7

## I.      Introduction.

The opinions of Federal's damages expert, W. Christopher Bakewell, are inadmissible.[1]  Mr. Bakewell's lost license fee opinions are based on his incorrect view of the law, namely an "intrinsic valuation" of Blaze Advisor from Federal's perspective, not FICO's loss.  Mr. Bakewell's opinions premised on the parties' 2016 negotiations and third party licenses are inadmissible because he has not shown these other negotiations and agreements are comparable to the present case.

Mr. Bakewell's opinions regarding FICO's disgorgement damages under 17 U.S.C. § 504(b) are also inadmissible.  Mr. Bakewell's sources used to calculate gross revenue resulting from Federal's infringement are unconnected to the insurance sold using Blaze Advisor.  Mr. Bakewell's opinions regarding deductible expenses and apportionment are also inadmissible; Federal does not defend them on the merits. Deductible expenses must match the revenue connected to the infringement.  Mr. Bakewell's opinions do not meet this legal requirement.  Apportionment of revenue to non-infringing factors must include an apportionment analysis and cannot be mere speculation.  Mr. Bakewell lists allegedly non-infringing factors but does nothing to apportion the profits attributable to those factors.  The Court should exclude Mr. Bakewell's opinions.

---

[1] Federal devotes a majority of its brief to repeating its challenges to Mr. Zoltowski. They are meritless for the reasons explained in FICO's opposition to that motion. (*See* Dkt. 489.)

II.     **Mr. Bakewell's lost license fee opinions are inadmissible.**

A.     **Mr. Bakewell's opinions are legally erroneous; actual damages are properly measured according to FICO's loss.**

Mr. Bakewell's lost license fee opinions are inadmissible because they are based on an incorrect legal standard, namely, an "intrinsic valuation" of Blaze Advisor from Federal's perspective, not the loss to FICO.  (*See* Dkt. 421 at 14-16.)  Federal casts Mr. Bakewell's opinions as a measure of the "fair market value" of Blaze Advisor, but this reframing fails.  (Dkt. 494 at 16-19.)  Mr. Bakewell's methodology, under any label, is contrary to law.  It is improper to measure damages according to what the opposing party is willing to pay.  *Montgomery v. Noga*, 168 F.3d 1282, 1295-96 (11th Cir. 1999).

Federal cites the same cases it did in its motion to exclude Mr. Zoltowski.  (*Compare* Dkt. 406 at 15-18, *with* Dkt. 494 at 16-19.)  As FICO showed in its opposition to that motion, Federal's cited cases are inapposite.  (Dkt. 489 at 34-37.)  They address the different issues of the certainty of proof, improper reliance on non-comparable agreements, and damage claims without corroborating evidence.  (*Id.*)  The Court should exclude Mr. Bakewell's opinions on FICO's lost license fees (¶¶114-156).

B.     **Mr. Bakewell's opinions regarding the parties' negotiations and third party agreements are inadmissible because he failed to show comparability.**

Federal asserts Mr. Bakewell's consideration of the parties' 2016 negotiations and third party agreements are indicative of fair market value.  (Dkt. 494 at 19-29.)  As shown above, this argument is contrary to law.  But even under Federal's view, these opinions are inadmissible because Mr. Bakewell failed to assess comparability.

Federal concedes non-comparable agreements are irrelevant.  (*Id.* at 24-25.)   An expert relying on other negotiations and agreements must assess comparability to determine relevance; expert opinions based upon non-comparable agreements are inadmissible.  *M2M Sols. LLC v. Motorola Sols.*, 12-33-RGA, 2016 U.S. Dist. LEXIS 22944, at *25-30 (D. Del. Feb. 25, 2016). (excluding damages expert whose opinion "improperly relies on licenses that are not economically comparable").  This issue does not simply go to the weight of an expert opinion.  *Id.*  Mr. Bakewell's opinions are inadmissible because he performed no comparability analysis.

### 1.    The parties' 2016 negotiations are not comparable.

Federal's attempt to support Mr. Bakewell's consideration of the parties' 2016 negotiations fails.  Mr. Bakewell concludes the parties would have negotiated an enterprise license, including discounts, because this was one of the options discussed during their 2016 negotiation.  (Dkt. 424 ("Bakewell Rep."), ¶¶70-71, 135-149.)  Mr. Bakewell conducted no analysis to determine whether the 2016 negotiations for an ongoing business relationship are comparable to the loss to FICO from nearly four years of unauthorized use.

FICO offered favorable license terms, including significant discounts, in a good faith attempt to resolve the dispute and maintain the relationship.  (Declaration of Heather Kliebenstein ("Decl.") Ex. 1 at 150:10-12.)  Federal rejected that offer.  The breach was not cured, and the Agreement terminated March 31, 2016.  In the present case, there is no business relationship.  There is no expectation of future professional services fees, incremental sales, or client referrals that could provide the economic justification for a

discount.  At issue now is the loss to FICO from the unauthorized use of Blaze Advisor on 17 applications for nearly four years.

*Lasercomb* is not to the contrary.  (Dkt. 494 at 22-23.)  That case considered damages for fraud under North Carolina law.  *Lasercomb Am. v. Reynolds*, 911 F.2d 970, 980-81 (4th Cir. 1990).  Based on the plaintiff's representation that all future licenses would be sold for $2000, the court found it inappropriate to increase that amount when calculating actual damages.  *Id.* at 981.  Additional damages were appropriately assessed as punitive.  *Id.*  FICO only seeks the lost license fees resulting from the breach.  The 2016 discounts and offers for an enterprise license do not measure the loss to FICO from nearly four years of unauthorized use on 17 applications.  *No* enterprise license is comparable because each is premised on the value (tangible and intangible) of an ongoing business relationship.  Mr. Bakewell's opinion does not suggest otherwise; he does not assess comparability.

### 2.     FICO's negotiations with Oracle and Dell are not comparable.

Federal's attempt to support Mr. Bakewell's reliance on the Oracle and Dell negotiations fails for the same reason.  (Dkt. 494 at 25-26.)  Mr. Bakewell's opinion that FICO's breach of contract damages should be similar to what those third parties paid FICO is inadmissible.  (Bakewell Rep., ¶¶72-102.)  FICO's negotiations with these third parties are wholly irrelevant because they are not comparable:

- 

- 

Mr. Bakewell's opinions based on FICO's negotiations with Oracle and Dell must be excluded, because he did not assess their comparability to the present case.

### 3. Mr. Bakewell concedes he did not rely on other third party agreements.

Federal's attempt to support Mr. Bakewell's opinion by stating he "relied upon 88 license agreements," is contrary to Mr. Bakewell's own testimony. (Dkt. 494 at 20, 25.) He testified he did not rely upon these agreements in forming his opinion, because it was too difficult to determine a discount percentage from the agreements alone. (Dkt. 424-2 ("Bakewell Dep."), 160:2-19.) His ultimate opinion came from Dr. Kursh, not the other license agreements. (*Id.*)

Separate from a discount analysis, Mr. Bakewell's opinion is inadmissible because he performed no comparability analysis of any of these 88 agreements. Federal attempts to shift the burden to FICO to perform the comparability analysis. (Dkt. 494 at 25.) The argument is an implicit admission that Mr. Bakewell did not meet his burden.

### C. Mr. Bakewell's noninfringing alternatives opinion is contrary to law, and he has not shown the alleged alternatives had similar functionality to Blaze Advisor.

Federal's defense of Mr. Bakewell's non-infringing alternatives opinion also fails. (*Id.* at 27-28.) Mr. Bakewell's opinion is inadmissible because it is premised upon his

erroneous legal standard that damages are measured according to the "intrinsic value" to Federal—not the loss to FICO.[2]

Federal argues the value of "similar substitute products for Blaze" is relevant to determine lost license fees, but Mr. Bakewell did nothing to assess whether alleged alternatives were "similar" or "substitute" products. (Bakewell Rep., ¶¶121-134, 163-166.) He relies on Federal's expert Mr. McCarter, but Mr. McCarter also did nothing to assess whether the alleged alternatives had "similar functionality" to Blaze Advisor. (*See* Dkt. 362 at 30-35; Dkt. 421 at 23.) Absent this necessary determination, Mr. Bakewell's opinion is irrelevant and will mislead the jury. The Court should exclude it.

## III.    Mr. Bakewell's disgorgement opinions are inadmissible.

### A.    Mr. Bakewell's revenue opinion is irrelevant and will mislead the jury; it is based on sources of revenue unconnected to the infringement.

Federal makes the nonsensical argument that Mr. Bakewell's revenue calculation is reliable because he relied on "more sources" than Federal's interrogatory responses, which disclose revenue derived from "all insurance policies in connection with which the Blaze Advisor® software was used." (Dkt. 494 at 33; Decl. Ex. 5-8.) The *number* of sources is irrelevant. The correct question is whether those sources are *relevant* and will aid the trier of fact in determining revenue attributable to the infringement. Mr. Bakewell's calculation fails on both accounts.

---

[2] Mr. Bakewell's noninfringing alternative opinion with respect to copyright damages is also contrary to law and irrelevant. (Bakewell Rep., ¶¶121-134.) "Non-infringing alternatives have nothing to do with [disgorgement]." *Oracle Am. v. Google*, C-10-03561, 2011 U.S. Dist. LEXIS 136172, at *14-17 (N.D. Cal. Nov. 28, 2011) (striking expert opinion that "non-infringing alternatives should in any way affect the calculation of infringer's profits under 17 U.S.C. 504(b).").

Mr. Bakewell's calculation compiles revenue from a variety of (unverified) sources not kept in the ordinary course of business: business unit financial data prepared for this litigation; some of Federal's interrogatory responses (but only when these values were lower than the business unit data); and a spreadsheet of raw data relating to the CUW application. (Bakewell Rep., ¶¶182-184.) According to Federal's Rule 30(b)(6) witness, Mr. Harkin, the data contained in the business unit financial summaries used in Mr. Bakewell's calculation is not specific to policies sold in connection with Blaze Advisor. (Decl., Ex. 9 at 121:4-13, 166:1-7, 210:13-16.) These sources say nothing about the revenue properly subject to disgorgement under Section 504(b). Mr. Bakewell's reliance on data that is not connected to Federal's infringement renders his revenue calculation irrelevant and inadmissible.

**B.    Mr. Bakewell's opinion on expense deductions is inadmissible because he does not match the claimed deductions to the infringing revenue.**

FICO's challenge to Mr. Bakewell's expense deductions is unanswered. Federal cites general principles of law without showing that Mr. Bakewell's opinion applies them. (Dkt. 494 at 35-36.) Mr. Bakewell's opinion on deductible expenses is inadmissible; there is no showing the expenses match the infringing revenue.

Federal does not contest the two-step analysis from *Hamil* governs deduction of costs and expenses. The infringer must *first* show it is entitled to costs by linking the claimed costs to the wrongful revenue from infringement. *See Hamil Am. v. GFI*, 193 F.3d 92, 107 (2d Cir. 1999). Only if this step is met may the defendant proceed to calculate profit. *Id.*

Mr. Bakewell's opinion fails the *Hamil* test. His expense and loss deductions are not matched to the revenue at issue—gross written premium from insurance sold using Blaze Advisor. Instead, he calculated these deductions from general business-unit level data. (Bakewell Rep., ¶¶194-197, 199-201.) He acknowledges the data does not match the revenue. (*Id.* ¶¶188-189, 192, 200.) The expense information he relied upon includes expenses related to policies in connection with which Blaze Advisor was <u>not</u> used. (Bakewell Dep., 123:17-20.) And he conceded he used data that are mere estimates based on lines of business, not individual policies. (Bakewell Rep., ¶197; Bakewell Dep., 127:21-128:25.) This data has no relationship to the revenue from policies sold in connection with the use of Blaze Advisor.

Mr. Bakewell's deduction of "bulk" expenses, including general and administrative expenses, is inadmissible because they are wholly unrelated to the business units that use Blaze Advisor, let alone to the revenue from insurance sold using Blaze Advisor. (Bakewell Rep., ¶¶199, 201.) Mr. Harkin testified these expenses were allocated to the various Chubb business entities as a percentage based on written premium percentages. (Decl., Ex. 9 at 55:25-58:25, 13131:5-134:14.) This allocation has nothing to do with which entity, business unit, or insurance policy generated the expense, let alone any match to infringing revenue. Mr. Bakewell's attempt to reduce Federal's revenue by using expenses that do not match the revenue attributable to the infringement is legally erroneous and should be rejected. *See Gaste v. Kaiserman*, 863 F.2d 1061, 1071 (2d Cir. 1988).

Federal's conclusory assertion that Mr. Bakewell's deduction is admissible "because any weaknesses in this part of his analysis are the result of FICO's attenuated theory of recovery" does not follow from *Hamil* or any case law on deduction of costs and expenses.[3]  (Dkt. 494 at 36.)  Federal, not FICO, bears the burden of proof.  *See Hamil Am.*, 193 F.3d at 107.  Mr. Bakewell's deduction of costs and expenses (¶¶185-205) should be excluded because it is not matched to Federal's infringing revenue.

### C.    Mr. Bakewell's apportionment opinion is speculative and inadmissible, because he fails to perform an apportionment calculation.

Federal's arguments to support Mr. Bakewell's apportionment opinion fare no better.  They are limited to citing inapposite cases applied to conclusory allegations of fact.  (Dkt. 494 at 36-37.)  While Mr. Bakewell offers several factors he contends contribute to Federal's profits, he does not apportion the profits to the identified factors. (Bakewell Rep., ¶¶167-174.)  Mr. Bakewell concedes he could "get out the toolbox" and perform these calculations for apportionment.  (Bakewell Dep., 53:10-63:11.)  But he did not.  He leaves the jury to speculate regarding which so-called noninfringing factors contributed to the revenue and, if so, to what extent.  The opinion is inadmissible.  *Design Ideas v. Things Remembered*, No. 07-3077, 2009 U.S. Dist. LEXIS 38374, at *13-14 (C.D. Ill. May 6, 2009).

---

[3] FICO's proof of gross revenue is specific and compiles the gross written premium from Federal's interrogatory responses, which Federal admits report the revenue from "insurance policies in connection with which the Blaze Advisor® software was used." There is nothing "attenuated" about it.

Instead of responding to FICO's challenge on the merits, Federal cites general case law without applying it to the substance of Mr. Bakewell's opinion. (Dkt. 494 at 36-37.) *Lowry's Reports v. Legg Mason* does not address apportionment of the infringer's revenue. 271 F. Supp. 2d 737, 751-52 (D. Md. 2003). It simply states the unremarkable proposition that a copyright owner must prove some connection or relationship (nexus) between the revenue sought and the infringement. *Id.*

Federal asserts Mr. Bakewell's opinion need not conform with the law on apportionment due to FICO's purportedly "attenuated" damages claim. (Dkt. 494 at 36.) But Mr. Bakewell never said he was "incapable of apportioning profits." (*Id.*) He confirmed he *could* have performed a full apportionment analysis had he been asked to do so. (Bakewell Dep., 63:9-13.) Mr. Bakewell's apportionment opinion (¶¶167-174) is speculative and should be excluded.

## IV. Conclusion.

Mr. Bakewell's opinions are unreliable and unhelpful to the fact finder. The Court should exercise its gatekeeping role and exclude them.

Dated: September 9, 2019

MERCHANT & GOULD P.C.

/s/Heather J. Kliebenstein
Allen Hinderaker, MN Bar # 45787
Heather Kliebenstein, MN Bar # 337419
Michael A. Erbele, MN Bar # 393635
Joseph W. Dubis, MN Bar # 398344
MERCHANT & GOULD P.C.
150 South Fifth Street
Suite 2200

Minneapolis, MN  55402-2215
Tel:  (612) 332-5300
Fax:  (612) 332-9081
ahinderaker@merchantgould.com
hkliebenstein@merchantgould.com
merbele@merchantgould.com
jdubis@merchantgould.com

Attorneys for Plaintiff FICO