# EXHIBIT 4
## (Redacted)

**(Previously Filed Under Seal as DI 541-3)**

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("**Settlement**") is made and entered into as of March 10, 2017 (the "**Effective Date**") by and between Dell USA, L.P. by and on behalf of itself, Dell Inc., and Dell Inc.'s direct and indirect subsidiaries, including but not limited to EMC Corporation (collectively "**Dell**") and Fair Isaac Corporation ("**FICO**"). FICO and Dell are each referred to herein as a "**Party**" or collectively as "**Parties**."

**WHEREAS**, Dell and FICO entered into the following agreements ("**Dell Agreements**"):

- Master Software License Agreement (the "**Dell MSLA**"), effective date June 16, 2005, between Dell and FICO;
- Software License attached as Schedule A to the Dell MSLA, effective date June 16, 2005 ("**Dell MSLA 2005 Schedule**"); and
- Schedule to Dell MSLA, effective date September 21, 2007, as amended by Amendment One to Schedule to Master Software License Agreement, effective date December 20, 2011 ("**Dell MSLA 2007 Schedule**");

**WHEREAS**, EMC Corporation and FICO entered into the following agreements ("**EMC Agreements**"):

- Software License and Services Agreement, effective date September 27, 2006 between FICO and EMC Corporation, as amended by Amendment One effective date June 28, 2010, Amendment Two effective date March 31, 2011, Amendment Three effective date June 28, 2012, Amendment Four effective date April 28, 2014, and Amendment Five effective date October 15, 2015 (as amended, the "**EMC SLSA**"); and
- Software End User License Agreement, effective date May 29, 2001 between Brokat Technologies and EMC Corporation ("**EMC SEULA**");



**NOW THEREFORE**, the Parties wish to resolve the Dispute, and all other disputes between them that were asserted by either Party, or that could be asserted by either Party, or by any other individual or organization on either Party's behalf, arising out of or in any way related to the Dispute, including the Dell Agreements and the EMC Agreements, up to and through the date of the Effective Date of this Settlement.

1. **TERMS OF SETTLEMENT.** In consideration of the mutual promises, covenants, agreements, and understandings contained in this Settlement, and for good and valuable consideration, the receipt of which each Party expressly acknowledges here, the Parties agree as follows:

    1.1. Settlement. 

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1.2. <u>Consideration.</u> FICO agrees that the Settlement Payment and the Amendment as well as the promises and representations made by Dell in this Settlement constitute adequate and complete legal consideration for the promises and representations FICO has made in this Settlement. Dell agrees that the promises and representations made by FICO in this Settlement and the Amendment constitute adequate and complete legal consideration for the promises and representations Dell has made in this Settlement.

2. **MUTUAL RELEASE OF ALL CLAIMS.**

   2.1. Upon receipt of the Settlement Payment contemplated in Section 1 hereof, and signature to the Amendment, FICO and Dell each hereby release and forever discharge the other and respective past and current officers, directors, owners, shareholders, associates, members, partners employees, joint venturers parents, subsidiaries, predecessors, successors, affiliates, assigns, insurers agents, representatives, attorneys, and any and all persons acting by, through, under, or in connection with them, or any of them (the "**Releasees**"), of and from any and all manner of action or actions, cause or causes of action, proceeding or proceedings, in law or equity, arising at common law, by contract, by statute or otherwise, and any and all suits, debts, liens, contracts, agreements, promises, liabilities, claims, and counterclaims of any kind, demands, damages, losses, costs, or expenses, of any nature whatsoever, known or unknown, fixed or contingent, that arise out of or that in any way relate to (1) the Dell Agreements and the EMC Agreements; (2) claims and counterclaims of any kind related to the Dell Agreements and the EMC Agreements, including the Dispute and the FICO Claims; and (3) any and all other matters arising out of the business relationship between the Parties, from the beginning of time through the Effective Date of this Settlement (the "**Released Claims**").

   2.2. FICO expressly represents and warrants that it has authority to enter this Settlement for itself and on behalf of any majority owned direct or indirect subsidiary of FICO or of its corporate parent. Dell represents and warrants that it has authority to enter into this Settlement for itself and on behalf of any of Dell's Releasees. Each Party further represents and warrants that there has been no assignment or other transfer of any interest in its Released Claims which it may have against the other Party's Releasees.

   2.3. Each Party agrees that this Settlement resolves any and all claims for attorneys' fees and other costs and expenses incurred in the Dispute, and that each Party shall bear its own attorneys' fees and costs and all other expenses in connection with this matter.

3. **CONFIDENTIALITY.**

   3.1. Neither Party shall make any public statement about the Dispute other than to say, but only if asked, that the matter has been amicably resolved. Each Party further agrees that this Settlement, and the terms and conditions of this Settlement, including but not limited to the fact and the amount of the Settlement Payment, shall be kept confidential. Thus, each Party agrees not to disclose the terms or conditions of this Settlement or any of the discussions leading up to this Settlement to any third party except as follows:

   3.2. Disclosure is permissible if required by subpoena or valid order from a regulatory agency or court, or as otherwise required by law; provided that, in such case, the Party believing that such legal requirement exists gives the other Party prompt advance notice of such requirement;

   3.3. Disclosure is permissible if otherwise required by law or as needed to enforce this Settlement due to a breach by the other Party; provided that, in such case, the Party believing that such need of requirement exists gives the other Party timely advance notice of such requirement; and

   3.4. Each Party may disclose this Settlement or its contents to its employees, contractors, insurers, accountants and financial advisors who have a need to know such information, provided that such persons are alerted to and agree to be bound by this confidentiality provision.

4. **NON-DISPARAGEMENT.** Dell, on behalf of its officers, employees and agents, agrees to refrain from making disparaging or negative statements of any kind about FICO or FICO's business. FICO, on behalf of its officers, employees and agents, agrees to refrain from making disparaging or negative statements of any kind about Dell or Dell's business.

5. **SETTLEMENT TERMS.** The Parties agree, understand, and expressly acknowledge that this Settlement is a compromise and a settlement of disputed claims, and has been entered into to avoid the uncertainty, time and expense of litigation. Nothing in this Settlement is meant to represent, nor shall it be construed and/or interpreted as, nor shall it be used at any proceeding as, an admission of liability by either Party; such liability having been expressly denied. The Parties declare and represent that they intend this Settlement to be complete and not subject to any claim of mistake, and that the releases herein express a full and complete mutual release, and regardless of the adequacy or inadequacy of the consideration, the Parties intend the releases herein to be final and complete. Accordingly, the Parties execute these releases with the full knowledge that these releases cover all possible claims as set forth above to the fullest extent permitted by law. Each Party warrants and represents that such Party is fully entitled and duly authorized to enter into and deliver this Settlement, and

perform its obligations hereunder, and that this Settlement shall be binding on and inure to the benefit of its successors and/or assigns.

6. **WARRANTY.** Dell represents and warrants that neither Dell nor any of Dell's Releasees are copying, distributing or otherwise exploiting the software subject to the Dell Agreements and EMC Agreements, or otherwise except in strict compliance with the licenses set forth in the Dell MSLA and the Amended and Restated Schedule A.

7. **GENERAL TERMS.**

    7.1. <u>Amendment</u>. No provision of this Settlement can be modified, amended, or supplemented except in a writing signed by an authorized representative of each Party to be bound.

    7.2. <u>Governing Law; Venue</u>. THE SETTLEMENT AND ANY DISPUTES BETWEEN FICO AND DELL (AND THEIR REPRESENTATIVES) SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, U.S. AND WITHOUT REGARD TO ITS PRINCIPLES OF CONFLICTS OF LAW. FICO AND DELL IRREVOCABLY SUBMIT AND CONSENT TO THE EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK OR IF THERE IS NO BASIS FOR FEDERAL JURISDICTION, THEN ANY CLAIMS MUST BE BROUGHT IN THE STATE COURTS OF NEW YORK. THE PARTIES AGREE THAT SUCH COURTS SHALL BE THE EXCLUSIVE PROPER FORUM FOR THE DETERMINATION OF ANY CLAIM OR DISPUTE ARISING OUT OF, OR IN CONNECTION WITH, THE AGREEMENT AND WAIVE ANY OBJECTION TO VENUE OR CONVENIENCE OF FORUM.

    7.3. <u>Section Headings; Strict Construction; Counterparts</u>. The section headings in this Settlement are included for convenience only. This Settlement has been reviewed and negotiated by the parties, and each party has had the opportunity to review this Settlement with counsel of its own choosing; accordingly, this Settlement shall not be construed strictly for or against either party. This Settlement may be executed in two or more counterparts, each of which shall be deemed an original for all purposes and together constitute one and the same document. The parties expressly consent and agree to sign the Settlement through an electronic or digital signature service and that such a signature represents the final and binding signature of the parties and the parties' acceptance and acknowledgement of the terms and conditions set forth in the Settlement.

    7.4. <u>Notices.</u> All notices required or permitted to be given under this Settlement shall be in writing and shall be delivered by hand, or dispatched by overnight mail, postage prepaid, addressed (with a further copy via electronic mail) as follows. Such notices will be deemed to have been served upon hard copy delivery to the addressee.

    | | |
    |---|---|
    | Dell Inc. | Fair Isaac Corporation |
    | Attn: General Counsel | Attn: General Counsel |
    | RR1-33 | 3661 Valley Centre Drive |
    | One Dell Way | San Diego, CA 92130 |
    | Round Rock, TX 78682 | |
    | With a copy to: | With a copy to: |
    | Dell_Legal_Notices@Dell.com | Contracts Administration |
    | | Same Address as above |

    7.5. <u>Entire Agreement</u>. This Settlement constitutes the entire understanding and contract between the Parties with respect to the subject matter referred to herein. Any and all other representations, understandings, or agreements, whether oral, written, or implied, are merged into and superseded by the terms of this Settlement.

The Parties to this Settlement, with the benefit of representation and advice of counsel, acknowledge that they have read the foregoing Settlement and that they fully understand and intend to include each and every provision contained herein.

| DELL USA L.P. | FAIR ISAAC CORPORATION |
|---|---|
| By: *Stephanie Owen* | By: *Chun Luo* |
| Name: Stephanie Owen | Name: Chun Luo |
| Title: Vice President Procurement | Title: Sr. Manager, FP & A |
| Date: Mar 11, 2017 | Date: Mar 10, 2017 |

**EXHIBIT A TO SETTLEMENT AGREEMENT AND RELEASE**

AMENDMENT NO. 1 TO MASTER SOFTWARE LICENSE AGREEMENT AND TERMINATION AGREEMENT

| | |
|---|---|
| "Effective Date" | March 10, 2017 |
| "Dell MSLA" | Master Software License Agreement dated June 16, 2005 between Provider and Dell USA L.P. |
| "Dell" | Dell USA L.P., on behalf of itself, Dell Inc. and Dell Inc.'s direct and indirect subsidiaries. |
| "Dell Notice Address" | Dell USA L.P.<br>Attn: Procurement Director<br>One Dell Way<br>Round Rock, TX 78682 | With a copy to:<br>Dell Inc.<br>Attn: General Counsel<br>RR1-33<br>One Dell Way<br>Round Rock, TX 78682<br><br>With a copy to:<br>Dell_Legal_Notices@Dell.com |
| "FICO" | Fair Isaac Corporation, a Delaware corporation |
| "FICO Notice Address" | Fair Isaac Corporation<br>Attn: Contracts Administrator<br>3661 Valley Centre Drive<br>San Diego, CA 92130 |
| "NDA" | Non-Disclosure Agreement No. 04012203 dated February 1, 2004 between Provider and Dell Inc. |

This Amendment No. 1 to Master Software License Agreement and Termination Agreement is hereby acknowledged and agreed by each party's authorized representative.

DELL USA L.P.

By: *Stephanie Owen (Mar 11, 2017)*
Name: Stephanie Owen
Title: Vice President Procurement
Date: Mar 11, 2017

FAIR ISAAC CORPORATION

By: *Chun Luo (Mar 10, 2017)*
Name: Chun Luo
Title: Sr. Manager, FP & A
Date: Mar 10, 2017

This AMENDMENT NO. 1 TO MASTER SOFTWARE LICENSE AGREEMENT AND TERMINATION AGREEMENT ("**Amendment**") is entered into as of the Effective Date by and between Dell and FICO. FICO and Dell hereby agree to amend the Dell MSLA as set forth below. Except as specifically set forth in this Amendment, all terms and conditions of the Dell MSLA shall remain in full force and effect.

**WHEREAS**, Dell and FICO entered into the following agreements:

- Master Software License Agreement (the "**Dell MSLA**"), effective date June 16, 2005, between Dell and FICO;
- Software License attached as Schedule A to the Dell MSLA, effective date June 16, 2005 ("**Dell MSLA 2005 Schedule**"); and
- Schedule to Dell MSLA, effective date September 21, 2007, as amended by Amendment One to Schedule to Master Software License Agreement, effective date December 20, 2011 ("**Dell MSLA 2007 Schedule**");

**WHEREAS**, EMC Corporation and FICO entered into the following agreements ("**EMC Agreements**"):

- Software License and Services Agreement, effective date September 27, 2006 between FICO and EMC Corporation, as amended by Amendment One effective date June 28, 2010, Amendment Two effective date March 31, 2011, Amendment Three effective date June 28, 2012, Amendment Four effective date April 28, 2014, and Amendment Five effective date October 15, 2015 (as amended, the "**EMC SLSA**"); and
- Software End User License Agreement No. EULA-01263, effective date May 29, 2001 between Fair Isaac Corporation, successor in interest to Brokat Technologies and EMC Corporation ("**EMC SEULA**");

**WHEREAS**, on or about September 7, 2016, Dell acquired EMC (the "**Acquisition**") and EMC Corporation became a subsidiary of Dell; and

**WHEREAS**, on the Effective Date hereof, the parties entered into that certain Settlement and Release Agreement pursuant to which Dell and FICO agreed to enter into this Amendment and Dell agreed to pay FICO the fees set forth herein as the "Settlement Payment" as consideration in full and complete settlement of all matters in Dispute as defined in such Settlement and Release Agreement.

NOW THEREFORE, the parties agree as follows.

1. **EMC LICENSE TRANSFER AND DELL LICENSES.** [REDACTED] this Amendment, Fair Isaac Products and Software shall be "Licensed Software" under the Dell MSLA 2005 Schedule.

2. **TERMINATION**.

   2.1. <u>EMC Agreements.</u> As of the Effective Date, the Parties hereby agree that the following agreements are terminated in their entirety: (1) EMC SEULA; and (2) EMC SLSA; including any amendments thereto, subject to the Parties' respective post-termination rights and obligations under the agreements.

   2.2. <u>Dell MSLA 2007 Schedule.</u> As of the Effective Date, the parties hereby agree that the Dell MSLA 2007 Schedule, including any amendments thereto, is terminated in its entirety, including the licenses therein; subject to the Parties' respective post-termination rights and obligations under the agreements.



5. **ENTITIES**.

   5.1. The Preamble of the Dell MSLA is amended to add "on behalf of itself, Dell Inc. and Dell Inc.'s direct and indirect subsidiaries" after "partnership".

   5.2. Section 1 of the Dell MSLA is amended by deleting the first sentence and replacing it with the following:

   "This Agreement sets forth the terms and conditions under which Dell USA L.P. and Dell Inc.'s worldwide direct and indirect subsidiaries, including, but not limited to EMC Corporation (collectively, "Dell") shall license the software, including Documentation as specified in the applicable Schedules (together with the Documentation, "Licensed Software"), and purchase services from Provider ("Services")."

6. **AUTHORIZED USE**. Section 1 of the Dell MSLA is amended by adding the following as the third paragraph: "Subject to the terms, conditions and limitations of the Agreement, Dell may allow its third party service providers, contractors, consultants, agents, and other business advisors to use the Licensed Software solely for benefit of and for the internal business purposes of Dell. Prior to permitting such use, Dell shall ensure that such third party consultants are under confidentiality restrictions. Dell USA L.P. shall at all times remain liable to Provider for the use of the Licensed Software by such third party service provider.

7. **DEFINITIONS**. Section 1 of the Dell MSLA is amended by adding the following as the last paragraph of Section 1:

   **"Documentation"** means the technical manuals and/or instructions and/or user information and/or training materials, including without limitation the guides and other documentation which accompany the Licensed Software and which contain its technical specifications, as may be amended from time to time (including without limitation by way of upgrade and/or the installation of a new version on a when and if available basis). Documentation shall be deemed Fair Isaac Intellectual Property.

   **"Licensed Software"** means all programs, code (which will be delivered in object code form only) specifications, graphical user interface (GUI), including all media of delivery thereof (CD, Tape or other electronic means) provided to Dell in connection with delivery of the Licensed Software, including all updates, modifications, releases and enhancements and all software listed in Addendum A to Schedule A Software License to Master Software License Agreement.

8. **ENTERPRISE GRANT**. Section 1(c) of the Dell MLSA 2005 Schedule is amended by deleting Section 1(c) and replacing it with the following:

   For purposes of this Amendment only, Section 6 of the Dell MSLA (Acceptance) shall not apply and the Software is deemed delivered and accepted.

   "Enterprise License" means an irrevocable, perpetual, nonexclusive, royalty-free, worldwide, multi-language (to the extent then currently supported within the Licensed Software), license to install, reproduce, deploy, use, perform, execute and run an unlimited number of copies of the Licensed Software, by and on an unlimited number of users, computers, servers and networks, and solely to support Dell's internal business operations. In the event of a reorganization of Dell into another Dell entity, such successor entity shall be permitted to continue to use the Licensed Software. The Enterprise License does not include any restrictions on users, devices, CPUs, database size, sites, documents processed, or transactions. Except as expressly stated herein, Dell agrees that it will not: (i) in any way later, change, modify, adapt, translate or make derivative works of Licensed Software; (ii) reverse engineer, decompile, disassemble, or otherwise attempt to reduce any source code for any Licensed Software or permit others to do so; (iii) sublicense or operate any Licensed Software for timesharing, rental, outsourcing, or service bureau operations, or to train persons other than permitted users; or (iv) distribute to third parties as a part of any Dell product or service, or sell or rent the Licensed Software, use the Licensed Software as part of a commercial time-sharing or service bureau operation, sublicenses or otherwise transfer the Licensed Software to any third party. Dell may allow its third party service providers, contractors, consultants, agents and other business advisors to use the Licensed Software solely for Dell's benefit, and Dell is responsible for each such representatives' compliance with the terms hereof. Dell may use the Licensed Software to provide financing and financing services to end users through Dell or Dell's channel/merchant partners, including, but not limited to, adjudication, account management and order management. Dell, among other things, may provide financing services, service request management, change control automation and connectivity management utilizing the Licensed Software for both Dell and non-Dell products and services, including its channel/merchant partners.

9. **ASSIGNMENT.** Section 12.14 of the Dell MSLA is amended by adding the following as the last sentence:

   "Provider hereby acknowledges, agrees and consents that Dell may assign this Agreement and any Licensed Software, in whole and not in part, including, but not limited to, any other Dell entity, in connection with any merger, consolidation, dissolution, operation of law, sale of assets change in the possession, directly or indirectly, of the power to direct or exercise a controlling influence over the management or policies of such entity, whether through the ownership of voting securities by contract or otherwise. If Dell acquires, merges with, or otherwise obtains a controlling influence over the management or policies of, any entity that is a licensee of Provider (an "**Acquired Licensee**"), Provider hereby consents to the assignment to Dell by the Acquired Licensee of any and all licenses and agreements between the Acquired Licensee and Provider that governs the Acquired Licensee's use of software licensed from Provider."

10. **AMENDMENT TO DELL MSLA 2005 SCHEDULE.**

    10.1. The Dell MSLA 2005 Schedule is amended by adding "on behalf of itself, Dell Inc. and Dell Inc.'s direct and indirect subsidiaries" after "Dell USA L.P."

    10.2. The Dell MSLA 2005 Schedule is amended by modifying Section 1(c) as set forth in section 7 above.

    10.3. The Dell MSLA 2005 Schedule is amended by deleting Section 1(f) in its entirety.

    10.4. The Dell MSLA 2005 Schedule is amended by attaching Addendum A to Schedule A Software License to Master Software License Agreement attached hereto.

    10.5. The Dell MSLA 2005 Schedule is amended by attaching Addendum B to Schedule A Software License to Master Software License Agreement attached hereto.

11. **MISCELLANEOUS**

    11.1. <u>Conflicts; Definitions.</u> To the extent that there is any conflict or inconsistency between this Amendment and the Agreement, this Amendment shall govern and control. All capitalized terms used but not defined herein shall have the meanings assigned to such terms in the Agreement.

    11.2. <u>Waivers; Amendments.</u> No waiver of any term or condition is valid unless in writing and signed by authorized representatives of both parties and shall be limited to the specific situation for which it is given. No amendment or modification to this Amendment shall be valid unless set forth in a writing specifically referencing this Amendment and signed by authorized representatives of both parties.

    11.3. <u>Strict Construction; Counterparts.</u> This Amendment has been reviewed and negotiated by the parties, and each party has had the opportunity to review this Amendment with counsel of its own choosing; accordingly, this Amendment shall not be construed strictly for or against either party. This Amendment may be executed in two or more counterparts, each of which shall be deemed an original for all purposes and together constitute one and the same document. The parties expressly consent and agree to sign the Amendment through an electronic or digital signature service and that such a signature represents the final and binding signature of the parties and the parties' acceptance and acknowledgement of the terms and conditions set forth in the Amendment.

    11.4. <u>Entire Agreement.</u> This Amendment, together with the Agreement, NDA, and any amendments hereto and thereto, constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes and replaces all prior and contemporaneous understandings and agreements, written or oral, regarding such subject matter. In entering into this Amendment, neither party is relying upon any representations or statements of the other that are not fully expressed in this Amendment; rather each party is relying on its own judgment and due diligence and expressly disclaims reliance upon any representations or statements not expressly set forth in this Amendment.

    11.5. DATA PROTECTION AGREEMENT. The parties agree to negotiate in good faith and execute a Data Protection Agreement as soon as possible.

**ADDENDUM A TO SCHEDULE A SOFTWARE LICENSE TO MASTER SOFTWARE LICENSE AGREEMENT**

| Software Name and Version: | <ul><li>Blaze Advisor Software (inclusive of Development and Deployment) Platform: JAVA and .NET<br>**8 Seats**</li><li>Documentation for Blaze Advisor: User guide (HTML or PDF)</li></ul> |
|---|---|
| Software Description: | Software that automates the management and customization of business rules. Dell may use the Licensed Software to provide financing and financing services to end users through Dell or Dell's channel/merchant partners, including, but not limited to, adjudication, account management and order management (aka the "Licensed Application" in the Dell MSLA 2005 Schedule). |
| License Type: | Enterprise, perpetual License for 8 development Seats (individual users that may be transferred from one individual to another individual as business needs dictate) and deployment (instances) of Software for Java and .NET within Dell without regard to number of CPUs, installations of test, backup or production instances, or number of developers or transaction processed |
| Permitted Use: | Dell internal use |
| License Term: | Perpetual. |
| License Fee: | Paid up |
| Development and Test Environment: | Dell is entitled to test and demonstrate the Software in a non-production environment at no additional charge. Such non-production environments shall have the same data storage and processing capacities as the production environment. Provider shall cooperate with Dell's requests in managing the non-production environments, such as refreshing data upon request. |
| Training: | No training provided. |
| Provider Support: | Description of maintenance and support services attached as Addendum B |
| Documentation: | 1 electronic copy |
| Additional Terms: | N/A |

| Software Name and Version: | <ul><li>Intelligent Data Manager</li></ul> |
|---|---|
| Software Description: | Intelligent Data Manager is computer software that acquires credit reports from US credit bureaus. Intelligent Data Manager includes automated interfaces to Equifax USA, TransUnion, Experian (CIS and BIS), Dun and Bradstreet, and Equifax SBFE. Intelligent Data Manager can be executed in a Microsoft Windows environment. For use by Dell Financial Services. |
| License Type: | Enterprise |
| Permitted Use: | ☒ Dell internal use for Dell Financial Services in conjunction with Licensed Application |
| License Term: | Perpetual. |
| License Fee: | Paid up |
| Development and Test Environment: | ☒ Dell is entitled to test and demonstrate the Software in a non-production environment at no additional charge. Such non-production environments shall have the same data storage and processing capacities as the production environment. Provider shall cooperate with Dell's requests in managing the non-production environments, such as refreshing data upon request. |
| Training: | ☒ No training provided.<br>☐ Training provided for the following fees:<br> ☐ Online training: Included in License Fee.<br> ☐ Onsite training: $ _____ per day.<br> ☐ Offsite training: $ _____ per user. |
| Provider Support: | Description of maintenance and support services attached as Addendum B. |
| Documentation: | 1 electronic copy |

| Additional Terms: | N/A |
|---|---|

| | |
|---|---|
| Software Name and Version: | • Blaze Advisor Development - Item # 280-DVLI-03<br>• Platform: JAVA and .NET<br>• 4 Seats For use in connection with up to 3 Named Applications described in this Table<br><br>• Blaze Advisor Deployment Item # 280-DPLI-03<br>• Platform: JAVA and .NET<br>• 8 seats for use in connection with up to 3 Named Applications described in this Table<br>• Blaze Advisor business rules management system Decision Simulator - Development Item # 280-DSDV-03<br>For use in connection with up to 3 Named Applications described in this table<br>• Blaze Advisor business rules management system Decision Simulator Deployment Item # 280-DSDP-03<br>For use in connection with up to 3 Named Applications described in this Table |
| Description Named Applications: | 1. Service Request Management Solution. The Software is used to route service cases and support field dispatch services. The "Blaze" application manages and routes service requests from EMC customers to EMC support teams which enables remote support capability.<br>2. Change Control Automation (Solve application). The Software is used to automate the selection of the correct upgrade and patch software based on deployed systems specific hardware, firmware, OS and application revision levels.<br>3. Connectivity Lifecycle Management (CLM application). Central Software decision solution used to filter files from EMC storage solutions utilizing the product phone home capabilities to report status, need for repair or component replacement. Application centrally manages customers' systems dial homes, configurations, service requests and reporting. |
| License Type: | Enterprise, perpetual License for 4 development Seats (individual users that may be transferred from one individual to another individual as business needs dictate) and 8 deployment Seats (instances) of Software for Java and .NET within Dell without regard to number of CPUs, installations of test, backup or production instances, or number of developers or transactions processed |
| Permitted Use: | ☒ Dell internal use.<br>☐ Dell customer support or access (if this option is checked, the parties must execute a Customer Solutions Rider). |
| License Term: | Perpetual. |
| License Fee: | Paid up |

Confidential - Attorneys' Eyes Only                                                                                             FICO0016277
FICO0016269                                         027037_0148                                                                Fair Isaac

| | |
|---|---|
| **Development and Test Environment:** | ☒ Dell is entitled to test and demonstrate the Software in a non-production environment at no additional charge. Such non-production environments shall have the same data storage and processing capacities as the production environment. Provider shall cooperate with Dell's requests in managing the non-production environments, such as refreshing data upon request. |
| **Training:** | ☒ No training provided.<br>☐ Training provided for the following fees:<br>    ☐ Online training: Included in License Fee.<br>    ☐ Onsite training: $ _____ per day.<br>    ☐ Offsite training: $ _____ per user. |
| **Provider Support:** | Description of maintenance and support services provided attached as Addendum B. |
| **Documentation:** | 1 electronic copy |
| **Additional Terms:** | N/A |

Confidential - Attorneys' Eyes Only

FICO0016269

027037_0148

FICO0016278

Fair Isaac

### EXHIBIT A TO
### AMENDMENT NO. 1 TO MASTER SOFTWARE LICENSE AGREEMENT AND TERMINATION AGREEMENT

#### FAIR ISAAC PRODUCT AND SOFTWARE TRANSFER LIST

- **Blaze Advisor Software - Development—Item # 280-DVLI-03**
  Platform: JAVA and .NET
  4 Seats For use in connection with up to 3 Named Applications

- Blaze Advisor Deployment  Item # 280-DPLI-03

  Platform: JAVA and .NET

  8 seats for use in connection with up to 3 Named Applications

- Documentation for Blaze Advisor: User guide (HTML or PDF)

- **Blaze Advisor business rules management system Decision Simulator - Development —Item # 280-DSDV-03**

- Blaze Advisor business rules management system Decision Simulator Deployment - Item # 280-DSDP-03

Confidential - Attorneys' Eyes Only

FICO0016269

027037_0148

FICO0016279

Fair Isaac

**EXHIBIT B TO**
**AMENDMENT NO. 1 TO MASTER SOFTWARE LICENSE AGREEMENT AND TERMINATION AGREEMENT**

LICENSED SOFTWARE UNDER DELL MSLA 2005 SCHEDULE AS OF AMENDMENT EFFECTIVE DATE

- **Blaze Advisor Software (inclusive of Development and Deployment)**
  Platform: JAVA and .NET
    8 Seats
- **Documentation for Blaze Advisor:**
User guide (HTML or PDF)
- **Provider's "Intelligent Data Manager" ("IDM") software product**

Confidential - Attorneys' Eyes Only                                                                FICO0016280
FICO0016269                            027037_0148                                          Fair Isaac

ADDENDUM B TO SCHEDULE A SOFTWARE LICENSE TO MASTER SOFTWARE LICENSE AGREEMENT

FAIR ISAAC SOFTWARE SUPPORT AND MAINTENANCE POLICY

This Support and Maintenance Policy describes the support and maintenance services Fair Isaac provides for its generally available software products. Clients who have purchased these services from Fair Isaac and are current on support and maintenance fees are eligible for services set forth in this policy.

1. DEFINITIONS

| | |
|---|---|
| Agreement | The agreement under which Client has licensed generally available software from Fair Isaac. |
| Application Software | Software designated by Fair Isaac as an application product on the Support Site. |
| Business Day | A calendar day Monday through Friday, excluding holidays observed by Fair Isaac. |
| Bypass | One or more procedures recommended by Fair Isaac to avoid an Error or to mitigate the impact of an Error on the Client's business operations, including backing out to a previous Release or rebooting systems, SQL scripts, configuration changes and/or implementing a specific release of a third party software product. |
| Client | The Fair Isaac client identified in the Agreement. |
| CPI | The Consumer Price Index for All Urban Consumers (CPI-U) for the U.S. City Average for All Items, 1982-84=100, as published by the US Bureau of Labor Statistics. |
| End of Life (EOL) | The date upon which Fair Isaac no longer generally provides Support and Maintenance of the Software. |
| End of Release (EOR) | The date upon which Fair Isaac no longer generally provides Support and Maintenance of a specific Release of the Software. |
| End of Version (EOV) | The date upon which Fair Isaac no longer generally provides Support and Maintenance of a specific Version of the Software (including all Releases to that Version). |
| Error | A persistent malfunction, inherent within the Software, that prevents the Software from operating according to its standard technical documentation. |
| Extended Support | Entitles Client to Support for a Release that has been designated as EOR or Version that has been designated as EOV. |
| Fair Isaac | Fair Isaac Corporation and its subsidiaries. |
| Maintenance | Entitles Client to standard Versions, Releases and Service Releases in accordance with this policy when and if made generally available by Fair Isaac to its clients that are current on support and maintenance fees. |
| Patch | A programmatic correction to the Software, targeted to address a specific Error that has undergone limited or no regression testing. |
| Release | An update to the Software designated by Fair Isaac as "right of dot" (i.e., X.y.z where y is the Release number). A Release will generally include minor improvements, functionality modifications, or Error corrections developed since the previous Release. |
| Service Release | An update to the Software designated by Fair Isaac as "right of the second decimal" i.e., X.y.z where z is the Service Release number). A Service Release will generally contain one or more fixes for recognized Errors. |
| Severity Level | A number assigned by Fair Isaac in accordance with Section 3.8 to a Client-reported Error with the Software. |

Confidential - Attorneys' Eyes Only
FICO0016269
027037_0148
FICO0016281
Fair Isaac

| Software | The generally available Fair Isaac software product licensed by Client under the Agreement. |
|---|---|
| Support | Entitles Client to submit questions about the Software to Fair Isaac Product Support, in order for Fair Isaac to use commercially reasonable efforts to resolve operating Errors that are attributable to the Software, and to resolve verified and reproducible Errors in the Software. |
| Support and Maintenance Fees | Fees for Support and Maintenance applicable to the Software. |
| Support Hours | Hours Fair Isaac is available to provide Support, as specified in Section 3.7. |
| Support Site | Fair Isaac's public website located at http://www.fico.com, or a successor URL designated by Fair Isaac. |
| Tool Software | Software designated by Fair Isaac as a tool product on the Support Site. |
| Version | An update to the Software designated by Fair Isaac as "left of dot" (i.e., Version X.y.z where X is the Version number). A new Version of the Software will generally include significant additional features, functionality, performance improvements, simplifications or improvements to the operator interfaces, and/or load capacity |

2. MAINTENANCE

   2.1. Subject to payment of the applicable Support and Maintenance Fees and compliance by Client with the terms of this policy and the Agreement, Fair Isaac will provide Maintenance for the Software as set forth in this policy.

   2.2. Service Releases are made available for the most current Release. If a Client Error is discovered on a previous Release and that Error has been resolved in a subsequent Release (or Service Release to that subsequent Release), the Client will be advised to install the most current Release and, if applicable, Service Release.

3. SUPPORT

   3.1. Subject to payment of the applicable Support and Maintenance Fees and compliance by Client with the terms of this policy and the Agreement, Fair Isaac will provide Support for the Software as set forth in this policy from outside Mexico.

   3.2. To receive Support Client must:

   (a) designate primary and secondary liaisons that have been sufficiently trained on the Software, and ensure Client's support requests are centralized through these Client liaisons;

   (b) use reasonable efforts, including consulting Fair Isaac-supplied documentation, to verify that reported Errors are due to a malfunction of the Software, and not due to the operating system, hardware, data, interfaces, or improper use of the Software, prior to contacting Fair Isaac for Support; and

   (c) notify Fair Isaac of any Error with the Software in a timely manner (in no event later than 30 days) after becoming aware of an Error with the Software; and

(d) provide all supporting information as requested by Fair Isaac and available to Client, that is relevant to verifying, diagnosing, or correcting the Error, including but not limited to product log files, configuration files, screen prints and information regarding any changes made to the Software configuration or third-party platforms and components.

3.3. Fair Isaac will only be obligated to provide Support when the Software is operated on or in connection with supported third-party platforms and components installed on designated equipment, as stated in the technical documentation for the Software. If third-party support is retired or discontinued for such third-party platforms or components, Client may be required by Fair Isaac to upgrade to the third-party platforms or components currently supported in order to continue receiving Support.

3.4. Unless otherwise agreed in writing, Support is provided in the English language only.

3.5 As part of its product lifecycle, Fair Isaac may designate on the Support Site:

(a) a Release of Software as EOR, for which Extended Support may be available;

(b) a Version of Software as EOV, for which Extended Support may be available; and

(c) the Software as EOL.

3.6 Unless otherwise designated by Fair Isaac on the Support Site:

(a) For Application Software, Fair Isaac will provide Support for the current Version (which includes, only for purposes of this section 3.6(a), all Releases to that Version) of the Software and the prior Version, but only for a maximum of 12 months after release of the current Version. For example, assuming Versions 7.0 and 8.0 exist, as Fair Isaac announces Version 9.0, Fair Isaac would designate Version 7.0 EOV, at which time Extended Support, if available, would apply to Version 7.0; and

(b) For Tool Software, Fair Isaac will provide Support for the current Release of the Software and the prior Release, but only for a maximum of 12 months after release of the current Release. For example, assuming Releases 5.0 and 5.1 exist, as Fair Isaac announces its latest Release, 5.2, Fair Isaac would designate Release 5.0 as EOR, at which time Extended Support, if available, would apply to Release 5.0.

3.7 Unless otherwise designated by Fair Isaac on the Support Site:

(a) for Software to be installed at locations in North America, Asia, and South America, "Support Hours" are 6:00 a.m. to 5:00 p.m. Pacific Time, Monday through Friday, excluding holidays observed by Fair Isaac in the United States; and

(b) for Software to be installed at locations in Europe, Middle East, and Africa, "Support Hours" are 8:30 a.m. to 5:00 p.m. UK Time, Monday through Friday, excluding holidays observed by Fair Isaac in the United Kingdom.

3.8    Upon Client's report of an Error, a Fair Isaac representative will acknowledge the Error report by issuing a confirmation to Client, either by phone or email, and Fair Isaac will assign a Severity Level to the Error based on the type of issue reported, according to the following schedule

| Severity Level | Condition | Service Hours | Initial Response | Communication /Status Updates | Action Plan |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |



4. TERM,

   4.1. Fair Isaac's Support and Maintenance obligations under this policy begin once the Software is shipped, and will continue for an initial term of one year.

   4.2. Support and Maintenance will automatically renew for consecutive one-year terms unless the Client gives Fair Isaac 30 days' written notice, prior to the end of the current term, of its intent not to renew, or Fair Isaac designates the Software as EOL.

4.3. Support and Maintenance during renewal terms will be subject to Fair Isaac's Support and Maintenance Policy in effect for the Software at the time of such renewal.

4.4. Support and Maintenance Fees applicable to renewal terms may be increased by Fair Isaac, but no increase may exceed the most recently available annual change in CPI.

4.5. Support and Maintenance Fees will be invoiced in advance on an annual basis.

4.6. Fair Isaac may terminate Support and Maintenance under this policy with at least 30 days' written notice if the Client is in breach under this policy or the Agreement and does not cure the breach before the end of the notice period. Fair Isaac will have no obligation to resume Support and Maintenance following a termination for cause.

4.7. Fair Isaac may, at its sole discretion, reinstate lapsed or terminated Support and Maintenance, in accordance with its then-current policies, upon payment by the Client of the applicable reinstatement fee.

## 5. EXCLUSIONS

Services outside the scope of this policy are subject to availability of resources and will be charged for separately at Fair Isaac's then-current rates for those services. The following are outside the scope of this policy:

(a) Support provided outside of the Support Hours;

(b) customization; installation of any software or product, Patch (including for a Bypass), Service Release, Release, or Version; integration; consulting; and training;

(c) optional, separately-priced, or separately licensed Software features made generally available by Fair Isaac to its clients;

(d) any problem resulting from the following: operator error; a problem or loss not attributable to the Software; third-party components no longer supported by the third party; negligence of Client or any third party; or a problem resulting from a use or modification of the Software not authorized or approved by Fair Isaac in writing, or that could have been avoided by the Client applying all required Patches or installing the latest Service Release or Release; and

(e) Support or Maintenance for any software (including any custom software) other than Software.

Confidential - Attorneys' Eyes Only

FICO0016269                                   027037_0148                          FICO0016285
                                                                                     Fair Isaac