# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation, | Case No. 16-cv-1054 (WMW/DTS) |
| Plaintiff, | |
| v. | **Jury Trial Demanded** |
| FEDERAL INSURANCE COMPANY, an Indiana corporation and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation, | **FILED UNDER SEAL** |
| Defendants. | |

## PLAINTIFF FAIR ISAAC CORPORATION'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF FEDERAL'S <u>LIABILITY FOR BREACH OF CONTRACT</u>

# **TABLE OF CONTENTS**

I. Unsupported declarations cannot create genuine issues of material fact; Rule 30(b)(6) testimony is binding. ........................................................................... 1

II. The Agreement undisputedly identifies Chubb & Son, not Federal Insurance Company, as "Client". ................................................................................... 1

III. The license grant is subject to the territorial restriction limiting the installation and physical location of Blaze Advisor to the United States. Federal continuously breached this restriction. ........................................................... 3

    A. Federal ignores the plain reading of the Agreement. ....................... 3

    B. Federal concedes the June 2006 Agreement lacked global rights; the grant of an enterprise license did not amend the Agreement; and Chubb & Son did not pay the fee for global rights. ................................... 3

    C. Blaze Advisor was installed and physically located in Canada. ................... 4

    D. Unsupported, conclusory declarations are irrelevant to Federal's territorial breach. ................................................................................ 4

    E. Federal's statute of limitations defense fails; Federal's foreign installation of Blaze Advisor was continuous. ........................................ 5

IV. The disclosure to and use and access by third party consultants breached the Agreement; FICO's termination was proper. ............................................ 5

    A. Federal's case law is inapposite. .................................................. 6

    B. Breach by disclosure to third-party consultants is independent of the territorial restriction; Federal's contention it was a party to the Agreement is of no moment. ....................................................... 6

V. The commercial purpose of Paragraph 10.8 is to protect the integrity of FICO's pricing of enterprise agreements; the continued use of Blaze Advisor post-acquisition and change of control breached Paragraph 10.8. ......................... 7

VI. Federal's waiver, estoppel, and course of dealing defenses fail. ........................ 9

    A. Legally, Federal's defenses fail. .................................................. 9

    B. Federal's claim that FICO employees had actual or apparent authority to waive FICO's contract rights is factually unsupported and contrary to law. ................................................................................... 10

VII.   Federal's breach of good faith and fair dealing claim must be dismissed. ............ 11

VIII.  Conclusion ................................................................................................................ 11

ii

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Affymax, Inc. v. Johnson & Johnson*,
  420 F. Supp. 2d 876 (N.D. Ill. 2006) ........................................................................... 2

*Alarm Monitoring v. D'Agostino Supermarkets*,
  875 N.Y.S.2d 818 (N.Y. Sup. Ct. 2008) ....................................................................... 9

*Commerce Funding v. Comprehensive Habilitation Servs.*,
  01-CV-3796, 2005 U.S. Dist. LEXIS 2832 (S.D.N.Y. Feb. 24, 2005)........................ 10

*Conolly v. Clark*,
  457 F.3d 872 (8th Cir. 2006) .................................................................................. 1, 2

*Five Star Development Resort Communities v. iStar RC Paradise Valley*,
  09 Civ. 2085, 2010 U.S. Dist. LEXIS 25581 (S.D.N.Y. Mar. 18, 2010) ...................... 9

*Garron v Bristol House*,
  79 N.Y.S.3d 265 (N.Y. App. Div. 2018) ...................................................................... 5

*Gen. Dynamics v. United States*,
  47 Fed. Cl. 514 (Fed. Cl. 2000) .................................................................................... 2

*H-D Mich. v. Hellenic Duty Free Shops*,
  694 F.3d 827 (7th Cir. 2012) ........................................................................................ 5

*Hogan System v. Cybersource International*,
  3:96-CV-2083-H, 1997 WL 311526 (N.D. Tex. June 2, 1997)..................................... 6

*Judson Pacific–Murphy v. Durkee*,
  301 P.2d 97 (Cal. Ct. App. 1956) ................................................................................. 2

*Meadowbrook Farms Homeowners Assn. v. JZG Resources*,
  963 N.Y.S.2d 300 (N.Y. App. Div. 2013) .................................................................... 5

*Minskoff v. Am. Exp. Travel Related Servs.*,
  98 F.3d 703 (2d Cir. 1996)......................................................................................... 10

*Nelson v. Am. Family Mut. Ins.*,
  262 F. Supp. 3d 835 (D. Minn. 2017)...................................................................... 1, 4

*Storage Technology v. Custom Hardware Engineering & Consulting*,
    421 F.3d 1307 (Fed. Cir. 2005) .......................................................................................... 6

*TWA Travellers Int'l v. Trans World Airlines*,
    722 F. Supp. 1087 (S.D.N.Y. 1989) ................................................................................... 9

*W. Va. Pipe Trades Health & Welfare Fund v. Medtronic*,
    13-1686, 2017 U.S. Dist. LEXIS 222471 (D. Minn. Oct. 12, 2017) ......................... 1, 4

*Womack+Hampton Architects v. Metric Holdings*,
    102 F. App'x 374 (5th Cir. 2004) ....................................................................................... 6

**Other Authorities**

Minn. R. Civ. P. 30(b)(6) ................................................................................................ 1

Minn. R. Civ. P. 56(a) ..................................................................................................... 1

"The court shall grant summary judgment" when there is no genuine issue of material fact. Rule 56(a). Argument is not fact. Conclusory declarations do not create genuine issues of material fact. Rule 30(b)(6) testimony is binding. The Court must look only to the admissible relevant evidence. The admissible relevant evidence reveals that Federal is liable for breach of the Agreement as a matter of law.

I. **Unsupported declarations cannot create genuine issues of material fact; Rule 30(b)(6) testimony is binding.**

Federal cannot rely on its declarations to create genuine issues of material fact. "[A] properly supported motion for summary judgment is not defeated by self-serving affidavits." *Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006). A party "must substantiate allegations with sufficient probative evidence that would permit a finding in the [party's] favor. *Id.* Such late-coming declarations may not contradict earlier deposition testimony to create factual disputes. *Nelson v. Am. Family Mut. Ins.*, 262 F. Supp. 3d 835, 852 (D. Minn. 2017). Rule 30(b)(6) testimony is binding on the organization in the face of contradictory or inconsistent evidence. *W. Va. Pipe Trades Health & Welfare Fund v. Medtronic*, 13-1686, 2017 U.S. Dist. LEXIS 222471, at *18 (D. Minn. Oct. 12, 2017).

II. **The Agreement undisputedly identifies Chubb & Son, not Federal Insurance Company, as "Client".**

The Agreement identifies Chubb & Son as the "Client." (Dkt. 401-3 at 2.) The contention Federal is the "Client" is factually meritless. (Dkt. 398 at 11-12; Dkt. 499 at 11-12.)

It is also legally meritless. In *Affymax, Inc. v. Johnson & Johnson*, 420 F. Supp. 2d 876, 879 n.3 (N.D. Ill. 2006), the plaintiff contracted with a division. Acknowledging the division's parent was the legal entity to enforce or be held responsible under the contract, the *Affymax* court ruled the scope of the contract was limited to the rights granted the division. *Affymax* rejects Defendants' argument.[1] The scope of the Agreement here is limited to the rights granted the Client, Chubb & Son.

Federal's related contention that Chubb & Son has no employees (Dkt. 507 at 26) is false (Dkt. 499 at 11; Decl., Ex. 1 at 28-29). The RFI to FICO came from Jim Black, of Chubb & Son's Vendor Management Department. (Dkt. 503-5 at 2.) Being an employee of the division Chubb & Son and an employee of Federal are not mutually exclusive, as the 2006 Chubb Corporation Annual Report shows. (Decl., Ex. 1 at 28-29.) Ms. Lopata's conclusory declaration (Dkt. 513 ¶4) does not create a genuine fact dispute. *Conolly*, 457 F.3d at 876.

Chubb & Son was the "manager" of Chubb Corporation's P&C Group. (Dkt. 400-1 at 5.) Chubb & Son was empowered to "sign, countersign and issue all such policies or contracts of insurance and reinsurance." (Decl., Ex. 2 at 6.) The Management Agreements between Chubb & Son, the division, and other insurance companies are not illusory. (Decl., Ex. 2-9.) FICO's Agreement with Chubb & Son is not illusory. Chubb & Son is the "Client." Federal is liable for the breach of the Agreement by its division.

---

[1] *Gen. Dynamics v. United States*, 47 Fed. Cl. 514, 525 (Fed. Cl. 2000) and *Judson Pacific–Murphy v. Durkee*, 301 P.2d 97, 102 (Cal. Ct. App. 1956), are inapposite. The contracting party was the parent corporation, not the division.

2

**III.    The license grant is subject to the territorial restriction limiting the installation and physical location of Blaze Advisor to the United States. Federal continuously breached this restriction.**

  **A.    <u>Federal ignores the plain reading of the Agreement.</u>**

The License grant of Paragraph 2.1 is "[s]ubject to the terms ... of this Agreement," including the term "Territory". (Dkt. 401-3 at 2.) Federal argues "the defined 'terms' **only** have meaning 'as <u>used</u> in this Agreement with initial capital letters.'" (Dkt. 507 at 20 (emphasis added).) Not so. That is one way to incorporate terms into provisions of the Agreement. Another way is to expressly limit the provision, here the grant of rights, by stating it is "Subject to the terms" as Paragraph 2.1 does.

Federal's cases do not hold otherwise. (Dkt. 499 at 15-16.) As a matter of law, the installation and physical location of Blaze Advisor was limited to the United States.

  **B.    <u>Federal concedes the June 2006 Agreement lacked global rights; the grant of an enterprise license did not amend the Agreement; and Chubb & Son did not pay the fee for global rights.</u>**

The negotiations of the Agreement in June 2006 and in December 2006 are not in genuine dispute. No reasonable jury could find a grant of global rights in June 2006; no reasonable jury could find the Agreement was amended in December 2006 to grant global rights; and it is undisputed Chubb & Son agreed to an incremental price of ▮▮▮▮▮▮▮▮▮▮ for global rights. All extrinsic evidence shows the enterprise-wide license required the installation and physical location of Blaze Advisor in the United States.

Phillip Folz, Federal's 2006 Controller of Information Technology, concedes the June 2006 Agreement did not have global rights. (Dkt. 512 ¶8.) Global rights were not

3

sought until the "final step": the negotiation of Amendment Two in December 2006. (*Id.* ¶¶8-9.) Amendment Two did not amend the territorial term. (Dkt. 401-3 at 21; Dkt. 398 at 13.) Mr. Folz concedes the fee inclusive of global rights was ▉▉▉▉▉ (Dkt. 512 ¶16), more than Chubb & Son paid for Amendment Two. All the extrinsic evidence confirms the territorial restriction of the Agreement.

### C. Blaze Advisor was installed and physically located in Canada.

Federal is bound by its 30(b)(6) testimony that Blaze Advisor was installed in Canada.[2] (Decl., Ex. 10 at 60:17-23.) *Medtronic*, 2017 U.S. Dist. LEXIS 222471, at *18. Federal's Chief Architect for North America admits Blaze was installed on Toronto servers, before a post-merger migration to North Carolina. (*Id.* Ex. 11 at 158:5-10.) Todorovic's declaration to the contrary (Dkt. 514) does not create a factual dispute. *Nelson*, 262 F. Supp. 3d at 852.

### D. Unsupported, conclusory declarations are irrelevant to Federal's territorial breach.

Federal's declarations include self-serving recollections of interactions between FICO and Federal, including purported aid from FICO in installing Blaze in Europe. They are unsupported by and contrary to contemporaneous documents. Federal cites no documents supporting purported workshops or installation assistance from FICO. (Dkt. 515 ¶¶3-4.) The declarations are irrelevant. *Nelson*, 262 F. Supp. 3d at 852. Paragraphs 10.4 (no-waiver) and 10.5 (integration) preclude Federal's waiver, estoppel and course of dealing arguments.

---

[2] Federal concedes Blaze Advisor was installed in Europe. (Dkt. 507 at 14-15.)

4

> E. **Federal's statute of limitations defense fails; Federal's foreign installation of Blaze Advisor was continuous.**

The Agreement prohibits "installation and physical location" of Blaze Advisor outside the United States. Maintaining the installation of Blaze Advisor in a physical location outside the United States is a continuous breach. It is not a "discrete" act.[3] (Dkt. 507 at 37.) New York law recognizes the continuing-wrong doctrine. FICO's claim cannot be time-barred. *Garron v Bristol House*, 79 N.Y.S.3d 265, 267 (N.Y. App. Div. 2018); *Meadowbrook Farms Homeowners Assn. v. JZG Resources*, 963 N.Y.S.2d 300, 302 (N.Y. App. Div. 2013).

IV. **The disclosure to and use and access by third party consultants breached the Agreement; FICO's termination was proper.**

Federal's challenge regarding the extent of disclosure of Blaze Advisor to third parties (Dkt. 507 at 38-41) is meritless. FICO has an absolute right to control the use of its intellectual property. *H-D Mich. v. Hellenic Duty Free Shops*, 694 F.3d 827, 835 (7th Cir. 2012).

Any violation of the license grant is material. (Dkt. 401-3 at 7-8 (*compare* ¶9.2(c) *with* ¶9.2(a)).) Disclosure, use, or access of Blaze Advisor by unauthorized third parties breaches Paragraph 3.1(iv). (*Id.*) Paragraph 3.6 "Use by Third Party" demonstrates the significance. Only one third-party, ACS Commercial Solutions, was permitted use and access. (Dkt. 401-3 at 4.)

---

[3] Federal's allegation that FICO's claim is based solely on "an alleged installation that took place in 2009" (Dkt. 507 at 37) is false. Blaze Advisor was installed in Canada in December 2010 (Dkt. 398 at 17) and 2013 (Decl., Ex. 12) and in Europe in 2013 (Decl., Ex. 13)—all within the respective statute of limitations.

It is undisputed that Blaze Advisor was disclosed to AppCentrica and DWS who each had use and access.[4]  (Dkt. 507 at 39-40; Dkt. 398 at 18.)

### A. Federal's case law is inapposite.

In *Hogan System v. Cybersource International*, 3:96-CV-2083-H, 1997 WL 311526, at *4 (N.D. Tex. June 2, 1997), the license was "essentially silent on the issue of use of third-party software consultants."  Here, the Agreement prohibits third-party consultant use and access, save for one express exception.  In *Womack+Hampton Architects v. Metric Holdings*, 102 F. App'x 374, 382 (5th Cir. 2004), the court found "the reuse provision specifically anticipated that third parties would be involved in the reuse."  The opposite is true here. In *Storage Technology v. Custom Hardware Engineering & Consulting*, 421 F.3d 1307, 1315 (Fed. Cir. 2005), the third party benefited from the licensee's license as a defense to copyright infringement, not breach of contract.  That is not this case.

### B. Breach by disclosure to third-party consultants is independent of the territorial restriction; Federal's contention it was a party to the Agreement is of no moment.

Federal's breach of Paragraph 3.1(iv) for disclosure to third-party consultants is independent of the territorial restriction—breach does not depend on location.  Federal's argument it is a party to the Agreement so enterprise rights can include its affiliates is beside the point: AppCentrica and DWS are not affiliates.

---

[4] Federal's contention FICO knew of AppCentrica's use of Blaze Advisor misstates the evidence.  (Dkt. 507 at 38-39.)  FICO employee Mike Sawyer was on a sales email string for a different product (not Blaze Advisor) on which an AppCentrica employee was carbon copied.  (Dkt. 510-24 to 510-27.)

6

Federal contends FICO cannot prove damages related to the breach of Paragraph of 3.1(iv). (Dkt. 507 at 41). This is false. Disclosure to AppCentrica and DWS was a terminable breach; it is one of the reasons the Agreement was terminated. (Dkt. 401-24.) FICO's damages include its lost licensing fees for the unlicensed use.

V. **The commercial purpose of Paragraph 10.8 is to protect the integrity of FICO's pricing of enterprise agreements; the continued use of Blaze Advisor post-acquisition and change of control breached Paragraph 10.8.**

FICO does not contend Paragraph 10.8 requires two consents. (Dkt. 398 at 28-31; Decl., Ex. 14 at 140:22-141:18.) Federal's argument ignores the real-world context in which the provision operates. Paragraph 10.8 was breached when Federal did not request (let alone receive) FICO's consent prior to the deemed assignment. Because of that breach, FICO gave notice of breach initiating the 30-day cure period. (Dkt. 401-22.)

The contention the deemed assignment was not subject to the prior consent requirement of the first sentence because the deemed assignment was "subject to this section" is illogical. The first sentence is in "this section." So is the third sentence that declares any assignment without prior consent "void and of no force or effect."

Paragraph 10.8's use of the conjunctive "and" maintains the status quo during the cure period when either consent is granted or the Agreement terminated. The second part of the second sentence is not a grant of rights to Federal.

FICO's construction does not read "such," "subject to this section," or the third sentence of 10.8 out of the provision. FICO's construction gives meaning to all words of 10.8 and is consistent with the commercial purpose of 10.8. (Dkt. 398 at 28-31; Dkt. 499 at 28.)

7

The commercial purpose of Paragraph 10.8 is to protect the integrity of FICO's pricing. Post-acquisition and change of control, Federal became part of a much larger organization. Chubb & Son, as manager and servicer of other insurance companies, could use Blaze Advisor to the benefit of the much larger organization. Paragraph 10.8 required FICO's consent for that larger benefit. Whether Blaze Advisor is used in one or many applications is irrelevant to pricing, because the grant of rights is enterprise-wide. (Dkt. 398 at 15, 30.)

The facts have proven the fundamental principle of FICO's enterprise pricing. Post-termination, use of Blaze Advisor has integrated into the new, larger enterprise. Legacy ACE underwriters now use Blaze Advisor and legacy ACE insurance companies now sell insurance using Blaze Advisor. (Dkt. 398 at 31-32.)

FICO conditioned its consent based on the commercial purpose of Paragraph 10.8. Federal's contention FICO unreasonably withheld consent (Dkt. 507 at 45) fails. Federal understood FICO prices enterprise-wide licenses based on the revenue of the entire corporate family. (Dkt. 507 at 27; Decl., Ex. 15 at 177:6-178:5.) Federal admits Chubb & Son was the servicer and manager of other insurance companies. (Dkt. 513 ¶¶3-4; Dkt. 400-1 at 5.) FICO offered substantial discounts from its standard pricing to maintain the relationship. All objective evidence shows FICO's actions were consistent with its standard pricing (Decl., Ex. 15 at 178:1-10) and the commercial purpose of 10.8. FICO did not unreasonably withhold consent as a matter of law.

## VI. Federal's waiver, estoppel, and course of dealing defenses fail.

### A. <u>Legally, Federal's defenses fail.</u>

Paragraph 10.4 of the Agreement prohibits waiver except if in writing. Paragraph 10.5 prohibits amendments except if in writing. (Dkt. 401-3 at 8-9.) Federal's defenses fail as a matter of law.[5] (Dkt. 398 at 33-35; Dkt. 499 at 22-24.)

Federal's "waiver" cases (Dkt. 507 at 28) are inapposite. Only in extreme cases will a court ignore a no-waiver clause. *TWA Travellers Int'l v. Trans World Airlines*, 722 F. Supp. 1087, 1098-1100 (S.D.N.Y. 1989), is such an extreme case; the corporate entity "approv[ed] of the sale with knowledge ...." Federal cannot show FICO knowingly consented to any breach of the Agreement. Federal's other cases are equally unpersuasive. In *Five Star Development Resort Communities v. iStar RC Paradise Valley*, the court did not consider whether the no-waiver provisions were waived. 09 Civ. 2085, 2010 U.S. Dist. LEXIS 25581, at *12 n.3 (S.D.N.Y. Mar. 18, 2010) ("[T]he Court need not consider … whether the no-waiver provisions in the Loan Agreement were waived.") In *Alarm Monitoring v. D'Agostino Supermarkets*, 875 N.Y.S.2d 818, 818 (N.Y. Sup. Ct. 2008), the court made no findings on whether plaintiff waived any contractual rights.

---

[5] Three FICO salespersons were mistaken about the global scope of the Agreement. A mistake is not the intentional relinquishment of a known right. (Dkt. 398 at 35-43; Dkt. 499 at 24-26.)

Federal's "estoppel" cases (Dkt. 507 at 35) are also inapposite. None of them discuss a no-waiver provision.  Because of Paragraphs 10.4 and 10.5, Federal did not have "a right to believe it was intended to rely on plaintiff's conduct."  (Dkt. 507 at 35.)

Federal's "course of dealing" defense was waived.  Federal's cited case supports FICO.  (Dkt 507 at 38.)  "Course of dealing" as a separate defense was rejected.  (*Id.*)

B.  **Federal's claim that FICO employees had actual or apparent authority to waive FICO's contract rights is factually unsupported and contrary to law.**

Persons allegedly waiving contract rights must have actual authority or apparent authority to waive those rights.  *Commerce Funding v. Comprehensive Habilitation Servs.*, 01-CV-3796, 2005 U.S. Dist. LEXIS 2832, at *62-68 (S.D.N.Y. Feb. 24, 2005). FICO's in-house counsel testified that none of FICO's salespeople have authority to bind FICO.  (Decl., Ex. 16 at 42:3-24, 47:15-19, 104:1-3, 109:20-110:8.)  Federal offers no evidence to the contrary.  (Dkt. 507 at 32-34.)

Federal's argument that FICO's salespeople had actual authority because they "manage[d] the day-to-day business relationship" and were responsible for understanding the contracts is entirely off point.  (*Id.* at 33.)  These job duties say nothing about having actual authority to waive FICO's contractual rights.

Apparent authority requires proof the principal FICO, by its words or deeds, caused Federal to reasonably believe authority to waive contract rights was extended to its these salespeople.  *Minskoff v. Am. Exp. Travel Related Servs.*, 98 F.3d 703, 708 (2d Cir. 1996).  There is no evidence FICO held out any of them as having authority to waive

10

contract rights. The Agreement's written-waiver and written-amendment requirements make clear that salespeople cannot waive or amend contractual rights.

## VII. Federal's breach of good faith and fair dealing claim must be dismissed.

Federal concedes it cannot bring simultaneous claims for breach of contract and breach of an implied covenant when they rely on the same facts. (*Id.* at 46.) Federal's two counterclaims rely on the same facts. (Dkt. 137 at 18-22, ¶¶16, 22.) Federal claims FICO's breach of implied covenant is based on "FICO's arbitrary and irrational decision to withhold consent." (Dkt. 507 at 47.) This conduct, found in Counterclaim ¶13, is incorporated into both the breach of contract and breach of implied covenant counts. The two counterclaims rely on the same allegations. The implied covenant counterclaim fails.

## VIII. Conclusion

Federal breached and continues to breach the Agreement. Federal ignores its plain language and attempts to rewrite other provisions as necessary. No genuine issues of material fact exist. Summary judgment is proper.

Dated: September 9, 2019

                          MERCHANT & GOULD P.C.

                          /s/ Heather Kliebenstein
                          Allen Hinderaker, MN Bar # 45787
                          Heather Kliebenstein, MN Bar # 337419
                          Michael A. Erbele, MN Bar # 393635
                          Joseph W. Dubis, MN Bar # 398344
                          MERCHANT & GOULD P.C.
                          150 South Fifth Street
                          Suite 2200
                          Minneapolis, MN  55402
                          Tel:  (612) 332-5300
                          Fax:  (612) 332-9081
                          ahinderaker@merchantgould.com
                          hkliebenstein@merchantgould.com
                          merbele@merchantgould.com
                          jdubis@merchantgould.com

                          *Attorneys for Plaintiff Fair Isaac Corporation*

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation,<br><br>                    Plaintiff,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY, an Indiana corporation, and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation,<br><br>                    Defendants. | Case No. 16-cv-1054 (WMW/DTS) |

## **LOCAL RULE 7.1(f) CERTIFICATION**

I hereby certify that Plaintiff Fair Isaac Corporation's Reply in Support of its Motion for Summary Judgment of Federal's Liability for Breach of Contract, filed electronically on September 9, 2019, complies with the word limit imposed by Local Rule 7.1(f), with a total word count of 2,809 words, including headings, footnotes, and quotations.  The combined word count for the opening and reply brief is 11,992 words.

I further certify that the accompanying document was created in Microsoft® Office Word 2016, and that this word processing program has been applied specifically to include all text, including headings, footnotes, and quotations.

2

Dated:  September 9, 2019	MERCHANT & GOULD P.C.

/s/ Heather Kliebenstein
Allen Hinderaker, MN Bar # 45787
Heather Kliebenstein, MN Bar # 337419
Michael A. Erbele, MN Bar # 393635
Joseph W. Dubis, MN Bar # 398344
MERCHANT & GOULD P.C.
150 South Fifth Street
Suite 2200
Minneapolis, MN  55402
Tel:  (612) 332-5300
Fax:  (612) 332-9081
ahinderaker@merchantgould.com
hkliebenstein@merchantgould.com
merbele@merchantgould.com
jdubis@merchantgould.com

*Attorneys for Plaintiff FICO*