5

# EXHIBIT 15
## (Redacted)
## (Previously Filed Under Seal as Dkt. 392)



Thursday, October 6, 2016

  VIA OVERNIGHT DELIVERY

Attn: IT Contracts





RE: DEMAND FOR DISPUTE RESOLUTION

▉▉▉▉▉▉▉▉▉▉▉ and Fair Isaac Corporation (FICO) entered into the Master Software License Agreement ("MSLA") with an effective date of June 16, 2005, under which ▉▉▉ and ▉▉▉▉▉▉▉▉▉▉ could purchase "Licensed Software and "Services" as specified in a mutually agreed Schedule. ▉▉▉ entered into Schedule A with an effective date of June 16, 2005 (Schedule 2005) for the licensing of Fair Isaac's Blaze Advisor, Intelligent Data Manager and Falcon ID Case Manager to support various financing alternatives, asset management services and other services for ▉▉▉ business and consumer customers ("Licensed Application"), through ▉▉▉▉▉▉▉▉▉▉▉▉▉ and other ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ The Schedule provided for a "snapshot" to be taken of the actual usage / deployment of the Licensed Software at the end of the 5 years following the Effective Date (June 15, 2010, further narrowing the "Licensed Application. On September 21, 2007 ▉▉▉▉ and FICO supplemented these terms extending the Blaze Advisor software and adding 5 seats of Model Builder software (but not extending the Intelligent Data Manager and Falcon ID Case Manager) license to ▉▉▉ and all of its subsidiaries under ▉▉▉▉▉▉▉ with the execution of a second Schedule to the MSLA (Schedule 2007). Schedule 2007 excluded the Licensed Application, which was reserved to ▉▉▉▉. Both Licenses are perpetual.

**EXHIBIT 15**



As noted above, Schedule 2005 license scope was limited by the Licensed Application and actual "snapshot" of use. Schedule 2007 anticipated scenarios of ▓▓ expansion via acquisition or merger and associated license expansions payments due FICO under the terms of Schedule 2007's Section 1h.

As we know, ▓▓ underwent two material transactions, the first being the going private change of control transaction whereby the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ The second material transaction relates to the merger of ▓▓▓▓▓▓▓▓▓▓ Due to the material nature of these transactions, each are well documented in filings with the SEC, and in other public records and reports. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ FICO proactively reached out and engaged with ▓▓▓▓▓ self-identified as having primary responsibility for management of the ▓▓▓▓▓ contractual relationship and merger related issues, and assumed responsibilities on behalf of ▓▓ broadly. FICO proactively engaged in advance of the merger to identify and communicate the required provisions of the Agreements.

It is important to note that the MSLA and Schedule 2005 license rights are considered non-assignable IP licenses under Federal law, but we are most concerned in assuring the right license rights are reflected to facilitate ▓▓ business as rooted in the "snapshot", and as reflected by today's and tomorrow's business needs and addressing license scope shortcomings. As we have discussed, the scope issue needs full vetting to assure compliance and license cover for ▓▓ business, as we dispute any use of the ▓▓ licenses for the benefit of ▓▓▓▓

As to the ▓▓ merger under the terms of Schedule 2007, which anticipated a material merger and consequent requirement of consent, additional licensing fees are required if the ▓▓ licenses are to be extended to ▓▓ and as to ▓▓ license, consent is likewise required. These fees have been outlined and communicated in writing by FICO representative Douglas Kennedy to various ▓▓ representative on numerous occasions and most recently to ▓▓ in detail most recently on Tuesday September 27, 2016.

These communications have failed to resolve the matter of required licensing under the Agreements. Furthermore since the communication was transitioned from ▓▓ representatives, discussion have deteriorated with a stark lack of good faith and engagement as reflected in your comments during one call that FICO simply was not important enough to ▓▓ to warrant obtaining consent despite the obvious requirement for consent. To resolve this dispute we formally request, following Section 12.1 Disputes of MSLA, ▓▓ to designate and make available an officer or other management employee o▓▓▓ith authority to bind the firm to meet to resolve the dispute. I will serve as FICO's designated contact. Should we be unable to resolve the Dispute, we then further exercise our right to mandatory mediation.



We also request the written report due to FICO from ▇ under Schedule 2005 section 1f) which documents Permitted Use Report of the scope of usage of FICO software as of June 15, 2010 including details on the specific business purpose, seats and servers used.

In addition, the license grants of FICO software under the ▇ - FICO 2006 Software License and Services Agreement are non-transferable and without third party beneficiaries; compounding the need to resolve the licensing requirement under the Agreements. If this matter cannot be resolved in good faith over a 10-day period, FICO will be compelled to exercise the full extent of the legal rights under the Agreement and Schedules.

FICO takes it software copyrights, and patents of the Blaze Advisor software seriously given the significant contribution to our business. It is because of this fact that I remain available to engage with the appropriat ▇ representative for this Dispute escalation.

Regards,

Bill Waid
General Manager
Decision Management Solutions

Tom Carretta, Vice President Legal FICO (via email)
Douglas Kennedy, FICO (via email)