**Exhibit 6**
**(Redacted)**
**(Previously Filed Under Seal as Dkt. 409)**

| Fair Isaac Agreement | | | | Page 1 of 37 |
|---|---|---|---|---|
| FI Contract Number: | | | | FI LR#15843 |

## SOFTWARE LICENSE AND SERVICES AGREEMENT

This Software License Agreement ("Agreement") entered into as of February 10, 2005 ("Effective Date") between **Fair Isaac Corporation** ("FIC") and ███████████████████ ("Client") describes the terms and conditions under which FIC shall provide the FIC Products.

### 1.    FIC Product Description

**Development Licenses**
The Development package (see Exhibit A) allows a developer to utilize design and testing tools and to run a non-production deployment environment for testing use only. A Non-Production deployment license allows the software to be run on a system used to process Non-Production data, such as deployments supporting quality assurance, testing, or training. Each license is for a single physical machine of any size. Each server can be used for any or all of the Non-Production activities listed above, but may not be used to support Client's production-level operations.

**Deployment Licenses**
The Deployment package for Blaze Advisor Rule Server and Engine (see Exhibit A) allows the software to be run on a system handling production-level processing. This means working with real data supporting Client's actual business operations, whether Client-facing or internal.

### 2.    Definitions
The following terms, as used in this Agreement with initial capital letters, in the singular or the plural, will have the meanings set forth below. Other terms may be defined in context within this Agreement:

**Affiliate(s)** means with respect to any person or entity, any other person or entity directly or indirectly controlling, controlled by, or under common control with such person or entity. "Control" means the legal, beneficial or equitable ownership, directly or indirectly, of more than 50% of the aggregate of all outstanding voting interests in such entity.

**Agreement** means this Software License and Services Agreement and any exhibits, attachments, addenda or other supplements attached hereto**.**

**Client** means ███████████████ and includes all of its Affiliates except for the ████████████████

**Documentation** means the user guide delivered with the FIC Product provided in either HTML or PDF formats. The Documentation shall be deemed FIC Intellectual Property.

**FIC Products** means the software products described in Section 1 above and Exhibit A and shall be deemed FIC Intellectual Property.

**Intellectual Property** or **Intellectual Property Rights** collectively means all of the following legal rights, title, or interest in or arising under the laws of the United States, any state, any other country or international treaty regime, whether or not filed, perfected, registered or recorded and whether now or hereafter existing, filed, issued or acquired, including all renewals thereof: (i) patents, patent applications and patent rights, including any such rights granted upon any reissue, reexamination, division, extension, provisional, continuation or continuation-in-part applications, and equivalent or similar rights anywhere in the world in inventions and discoveries; (ii) rights associated with works of authorship and literary

*Fair Isaac Confidential*



EXHIBIT
**6**

FICO0043609

| Fair Isaac Agreement | | | Page 2 of 37 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#15843 |

property rights, including but not limited to copyrights, copyright applications and copyright registrations, and moral rights; (iii) rights relating to know-how or trade secrets, including but not limited to ideas, concepts, methods, techniques, inventions and other works, whether or not developed or reduced to practice, rights in industrial property, customer, vendor and prospect lists, and all associated information or databases, and other confidential or proprietary information; (iv) industrial designs, industrial models, utility models, certificates of invention and other indicia of invention ownership; (v) trademarks, service marks, logos, trade dress, Internet addresses (URLs), trade names and service names, whether or not registered, and the goodwill associated therewith; and (vi) any rights analogous to those set forth in the preceding clauses and any other proprietary rights relating to intangible property anywhere in the world.

**Internally** means use by Client and use by or for the benefit of Client by third parties under contract to provide services to Client.

**Non-Production** means utilization of the applicable FIC Product in a test, quality assurance or training environment.

**Permitted User(s)** means Client employees and employees of third parties that are under contract to provide services to Client.

**Seat** means an individual user on a single personal computer or workstation.

**Territory** means the United States of America and Canada.

## 3. License Grant

3.1     <u>License Grant to FIC Product</u>.  Subject to the terms and conditions of this Agreement, FIC hereby grants Client and Client hereby accepts, a non-exclusive, non-transferable, non-sublicensable limited license to use, perform, and display the FIC Products only Internally and only within the Territory and subject to the additional limitations listed in Exhibit A.

3.2     <u>License to Documentation</u>.  Subject to the terms, conditions, and limitations of this Agreement, FIC grants to Client a non-exclusive, non-transferable, non-sublicensable limited license to use, reproduce, perform and display the Documentation only during the term of this Agreement; and only in accordance with Client's license grant of the FIC Product.  Client shall have the right to modify the Documentation, combine the Documentation with other works, or create derivative works from the Documentation without FIC's written permission.  Those portions of the modifications, combinations, or derivatives which are created from and/or include the Documentation shall become FIC's Intellectual Property and may be used only in support of Client's permitted use of the FIC Product.

3.3     <u>Third Party Service Providers</u>.  Client shall have the right to have any third party contractor perform any of the license rights granted under this Agreement provided that Client agrees to the following: (1) Client shall enter into a written contractual relationship with the third party contractor wherein the contract shall provide protections for the software with terms at least as protective as the terms contained in this Agreement; (2) the third party contractor shall only be allowed to use the FIC Product on Client's behalf; and (3) Client shall remain solely liable to Licensor for any breach of this Agreement by the third party contractor.

3.4     <u>License Restrictions.</u>  Except as expressly stated herein or agreed to in writing by FIC, Client warrants that Client and its employees, representatives, and/or agents: (i) shall not in any way alter, change, modify, adapt, translate or make derivative works of FIC Intellectual Property under this

*Fair Isaac Confidential*

| Fair Isaac Agreement | | | Page 3 of 37 |
| --- | --- | --- | --- |
| FI Contract Number: | | | FI LR#15843 |

Agreement; (ii) shall not reverse engineer, decompile, disassemble, or otherwise attempt to reduce any source code to human perceivable form or permit others to do so; provided that if required by applicable law, upon Client's prior written request, FIC shall provide information required for Client to achieve interoperability between the FIC Product and other software for a nominal administrative charge; (iii) shall not sublicense or operate any FIC Product for timesharing, rental, outsourcing, or service bureau operations, or to train persons other than Permitted Users; (iv) shall not disclose or publish, except Internally, performance benchmark results for FIC Product without FIC's prior written consent; and (v) (if applicable) shall not use any provided third party software except as solely in conjunction with the FIC Product.

3.5   Reservation Of Rights Not Granted.  FIC reserves all rights not expressly granted to Client under this Agreement.  Without limiting the foregoing, FIC retains and reserves sole and exclusive worldwide right, title and interest in and to all FIC Intellectual Property, including without limitation, the FIC Product, any custom code developed in whole or part by FIC (if applicable), and any FIC know-how, subject to only the limited, non-exclusive, license rights granted herein.  Except as explicitly provided for herein, nothing in this Agreement shall limit in any way FIC's right to develop, use, license, create derivative works of, or otherwise exploit FIC Intellectual Property or to permit third parties to do so.

**4.0   Services.**

4.1   Maintenance Services.  Subject to the payment of the applicable Maintenance Fees described in Exhibit A, FIC shall provide Client with the Maintenance Services described in Exhibit B.

4.2   Other Services.  From time to time, FIC may provide Client with professional services related to the FIC Product as mutually agreed between the parties ("Other Services").  Such Other Services shall be performed only upon the execution of a Statement of Work which references this Agreement, incorporates these terms and conditions, and which shall describe the services to be performed, the deliverables to be provided, and the fees to be paid all in a form consistent with the attached Exhibit G. Additionally, the Statement of Work shall indicate which party (Client or FIC) owns the deliverables and what the applicable license rights are (if any).

4.3   Client's Cooperation.  In order for FIC to perform its obligations under this Agreement, Client will provide FIC with reasonable cooperation and access to such information as may be required by FIC in order to render the Services, including but not limited to providing correct, accurate and complete data as of the date requested, office accommodations, facilities, equipment, and security access; personnel assistance as may be reasonably requested by FIC from time to time; reasonable cooperation with FIC, making decisions and communicating information in a reasonably timely manner to enable FIC to provide the Services in accordance with this Agreement ("Cooperation").  Further, Client acknowledges and agrees that FIC's performance of Services is both contingent and dependent upon Client's Cooperation.

4.4   Changes in Services.  Client may request a modification to Services upon ten (10) business days written notice to FIC specifying the desired modification(s) with the same degree of specificity as in the original specifications.  If FIC agrees to perform such modifications, it will notify Client of its decision within ten (10) business days following receipt of such notice and will submit to Client an estimate of the time and cost to effect such modifications (the "Estimate").  The performance of any modified services by FIC shall be governed by the terms and conditions of this Agreement.  In investigating and preparing such Estimate, with Client's prior written approval, Client agrees to pay FIC for reasonable costs incurred by FIC in investigating and preparing such Estimate.

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only

| Fair Isaac Agreement | | | Page 4 of 37 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#15843 |

4.5     Performance of Similar Work.  Subject to obligations of confidentiality under Section 6 of this Agreement, FIC shall continue to be free to perform identical services for other customers, including competitors of Client, using the knowledge, skills and experience gained through this Agreement.

4.6     Client's Instructions and Procedures.  FIC shall cause all personnel furnished hereunder to abide by Client's safety and security procedures and Client's policies and procedures governing personal conduct and, if applicable, use of Client equipment, systems and/or other resources of which FIC is made aware; provided however that criminal background investigations and/or drug testing will not be required. Client shall have the right to reject and cause to have replaced any employee of FIC whose performance does not, in Client's reasonable judgment, meet the standards reasonably established by Client as necessary for the performance of services required or needed by Client.  Client acknowledges that delays in the provision of the services may result if any employee of FIC has to be replaced.

**5.     Warranties and Limitation of Liability.**

5.1     Conformity to Specifications. Subject to Client's compliance with the terms and conditions of this Agreement, FIC warrants that FIC Product will conform in all material respects to its Documentation for a period of ninety (90) days from the date of delivery.  FIC will, at its own expense and as its sole obligation, and Client's exclusive remedy, for any breach of this warranty, correct any reproducible error in the FIC Product reported to FIC by Client in writing (along with all information available to Client that is relevant to verifying, diagnosing, or correcting the error) or replace the FIC Product during the warranty period.

5.2     Additional Warranties. Additionally, FIC represents and warrants to Client that:
(i) To the best of its knowledge, FIC has all necessary power and authority to enter into this Agreement and to perform its obligations hereunder;
(ii) this Agreement constitutes a valid and binding agreement of FIC and is enforceable against FIC in accordance with its terms, except as the enforceability thereof may be limited by law; and
(iii) all Maintenance, training and other professional services to be performed hereunder shall be performed by experienced, qualified personnel familiar with the FIC Product and any related software on a "commercially reasonable efforts" basis consistent with industry standards.  To assert a warranty claim under this Section 5.2 (iii), Client must notify FIC in writing of any alleged warranty defect within ninety (90) days after the defective services were performed.

5.3     FIC does not warrant that the FIC Product or the Documentation will (i) meet Client's requirements, or (ii) operate uninterrupted or free of errors. EXCEPT FOR THE EXPRESS WARRANTIES SET FORTH IN THIS SECTION 5 AND EXHIBIT B, FIC MAKES NO OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, UNDER THIS AGREEMENT AND HEREBY DISCLAIMS ALL OTHER EXPRESS OR IMPLIED WARRANTIES, INCLUDING ANY WARRANTIES REGARDING MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

5.4     LIMITED LIABILITY. EXCEPT FOR (A) MATERIAL BREACH OF SECTION 6 "CONFIDENTIAL INFORMATION", (B) BREACH OF EITHER PARTY'S INTELLECTUAL PROPERTY RIGHTS AND/OR INNOVATIONS, AND (C) BODILY INJURY DAMAGES AND DAMAGE TO TANGIBLE PROPERTY, IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR INDIRECT, SPECIAL, CONSEQUENTIAL (INCLUDING, BUT NOT LIMITED TO, LOST PROFITS) OR PUNITIVE DAMAGES ARISING OUT OF OR IN CONNECTION WITH THE AGREEMENT, EVEN IF THE RESPONSIBLE PARTY HAD BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR EVEN IF SUCH DAMAGES WERE REASONABLY FORESEEABLE.

*Fair Isaac Confidential*

| Fair Isaac Agreement | | | Page 5 of 37 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#15843 |

5.5    LIMIT ON MAXIMUM LIABILITY. EXCEPT FOR (A) MATERIAL BREACH OF SECTION 6 "CONFIDENTIAL INFORMATION", (B) BREACH OF EITHER PARTY'S INTELLECTUAL PROPERTY RIGHTS AND/OR INNOVATIONS, (C) BODILY INJURY DAMAGES AND DAMAGE TO TANGIBLE PROPERTY, AND (D) A PARTY'S INDEMNIFICATION OBLIGATIONS HEREUNDER (INCLUDING FOR THIRD PARTY INFRINGEMENT CLAIMS), EACH PARTY'S TOTAL AGGREGATE AND CUMULATIVE LIABILITY DURING ANY CONTRACT YEAR SHALL NOT EXCEED THE AMOUNT PAID BY CLIENT UNDER THIS AGREEMENT DURING THE CORRESPONDING CONTRACT YEAR OF THE CLAIM(S) THAT GAVE RISE TO SUCH LIABILITY.

## 6.    Confidential Information.

6.1    Confidential Information. A party receiving Confidential Information under the Agreement is referred to as "**Recipient**," and a party disclosing Confidential Information is referred to as "**Discloser**." For the purposes of the Agreement, "**Confidential Information**" is described as follows and shall include any information which relates to: the financial and/or business operations of the Discloser, including, but not limited to, any proprietary information, marketing and product plans, ideas, concepts, business plans, financial condition, employees, inventions, algorithms, decision technology and/or models, processes, designs, specifications, drawings, samples, improvements, developments, applications, engineering, manufacturing and marketing data and plans, software code (object and source), functionality, security procedures and approaches, know-how, customer names and information, experimental work, distribution arrangements and trade secrets, and/or ideas. Such Confidential Information may be produced in a variety of forms, including but not limited to: any and all verbal, electronic, and/or written communications (whether in the form of slides, handouts, letters, memoranda, agreements, facsimile transmissions, meetings, conference and other telephone calls, diskettes, files, tapes, and/or any other mode) and/or related concepts, proposals, data sources, pricing, schedules, development efforts (including source code, object code and/or documentation), numerical data processing algorithms, product and software design specifications. In addition to the obligations contained in this Section 6, FIC agrees to the specific confidentiality and non-disclosure-related obligations regarding non-public personal information as provided on Exhibit C to this Agreement.

6.2    Purpose for Disclosure. Recipient may use Confidential Information of the Discloser only for the purposes of exercising its rights and fulfilling its obligations under the Agreement, but only as consistent with applicable state and federal laws.

6.3    Limitations on Disclosure and Use. Recipient agrees to use the same degree of care, but no less than a reasonable degree of care, to protect against the unauthorized disclosure or use of Discloser's Confidential Information as it uses to protect its own Confidential Information. Recipient agrees to disclose Confidential Information only to its employees or independent contractors who have a need to know for the above stated purpose, and who are bound by obligations of confidentiality no less restrictive than the terms of the Agreement. Recipient shall not remove any proprietary notices of Discloser from Discloser's Confidential Information. During the course of the Agreement, the Recipient may from time to time provide the Discloser with comments, suggestions or other input regarding the Discloser's Confidential Information. The Recipient agrees that the Discloser has an unrestricted, worldwide, royalty-free right to use such comments, suggestions, or other input for any purpose and in any manner, and to authorize others to do so.

6.4    Exclusions. Nothing contained herein will be construed to restrict or impair in any way the right of the parties to disclose or communicate any information which: (i) is at the time of its disclosure hereunder generally available to the public; (ii) becomes generally available to the public through no fault

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only

| Fair Isaac Agreement | | | Page 6 of 37 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#15843 |

of the receiving party; (iii) is, prior to its initial disclosure hereunder, in the lawful possession of the receiving party as evidenced in documentary form and not otherwise subject to an obligation of confidentiality; or (iv) is acquired by the receiving party from any third party having an unrestricted right to disclose to the receiving party without breach of any confidentiality obligations. Either party may disclose Proprietary Information as required by applicable law and/or a judicial or other governmental order, including without limitation pursuant to U.S. Federal, State or local tax law, rule or regulation, provided that the receiving party will provide the disclosing party with prompt written notice of such request(s).

6.5     Injunctive Relief. The parties acknowledge that the remedies at law for breach of any covenant relating to the protection of Confidential Information may be inadequate, and each party shall be entitled to seek injunctive relief for any breach of the provisions of the Agreement relating to the protection of its Confidential Information or Intellectual Property Rights. Nothing contained in this Section 6 shall be construed as limiting the parties' rights to any other remedies at law, including the recovery of damages for breach of the Agreement.

## 7.     Payment Terms

7.1     Invoices and Payment.    All fees and expenses invoiced under this Agreement will be due and payable in United States dollars by Client within thirty (30) days of the date of such invoice is received at the billing address designated by Client in Section 10 below.  Each unpaid invoice shall bear a late charge of 1.0% per month, or the maximum rate permitted by law, whichever is less, from the due date until the date paid.  In addition to all other remedies available at law or in equity, payment received by FIC later than sixty (60) days from the due date shall be grounds for termination of the pertinent product or service after written notice and thirty (30) days to cure.  Client reserves the right to dispute the amounts charged hereunder provided FIC is promptly notified of such dispute in writing and the dispute is grounded in good faith and Client's reasonable judgment.  In the event of any such dispute, Client shall pay the undisputed portions of the invoice in accordance with the foregoing and the parties shall seek to resolve the disputed amount as soon as reasonably practicable.

7.2     Expenses. Prices and fees do not include reasonable travel and associated out-of-pocket expenses incurred by FIC, which are billed to Client at cost.  All travel expenses must be pre-approved by Client. Exhibit D describes Client's general travel expenses policy.  Any subsequent changes to the Client's travel policy that would adversely affect FIC or reduce the level of reimbursement of FIC's expenses shall not be applicable unless approved by FIC in writing.

7.3     Taxes and other Charges. Client shall be solely responsible for, and shall pay or reimburse FIC for, all Taxes. "*Taxes*" means all present and future taxes, duties, import deposits, assessments, and other governmental charges (and any related penalties and interest not attributable to the fault or delay of FIC or its agents, as mutually agreed to between the Parties, such agreement not to be unreasonably withheld or delayed), however designated, that are now or hereafter imposed by or under any governmental authority or agency that are: (i) associated with the performance by FIC of its obligations hereunder; (ii) associated with the payment of any amount by Client to FIC pursuant to the Agreement; (iii) based on the license or use of any FIC produce or Service; or (iv) associated with the importation of any FIC product or Service into any country other than the United States, excepting only FIC's corporate franchise taxes and taxes imposed on FIC's income by the United States and each state and covered territory thereof (and their political subdivisions). To the extent Client is required to withhold income taxes on any payment made to FIC pursuant to applicable foreign tax law, Client may withhold such tax to the extent such tax does not exceed the appropriate withholding amount applicable under relevant tax treaties. Client agrees to send the appropriate certified tax receipt or other documentation to FIC promptly upon payment of such tax.  FIC shall promptly remit to the appropriate taxing authority all amounts collected from Client

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only

| Fair Isaac Agreement | | | Page 7 of 37 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#15843 |

on account of Client's tax obligation, if any, and FIC shall indemnify and hold Client harmless from any and all losses, costs and expenses (including reasonable attorneys' fees) which result or arise from FIC's violation of its obligation set forth herein.  In the event FIC receives a refund of any such taxes attributable to amounts paid hereunder by Client, FIC shall pay such amount to Client within thirty (30) days of its receipt of such refund.

7.4     <u>Mode of Payment</u>. Client agrees to remit all payments due to FIC as follows:

| **If payment is made by check:** | **If payment is made by electronic transfer:** |
|---|---|
| Fair Isaac Corporation<br>PO Box 201129<br>Dallas, TX 75320-1129<br>U.S.A. | |

FIC will promptly notify Client if any of the above payment information changes, and Client agrees to remit all amounts due thereafter in accordance with the revised payment information.

7.5     <u>Audit Rights</u>.
Client shall maintain such books, records, and accounting practices and systems that will allow proper calculation, documentation, and reporting of payments due to FIC under this Agreement and that will facilitate auditing of such records and systems. No more than once annually, and upon twenty (20) business days' prior written notice, FIC shall have the right to audit, through its independent auditors, all records of Client relating to this Agreement. Such audits shall be conducted during Client's normal business hours. If Client is discovered to have understated any fees owed to FIC by more than 5%, or if FIC learns that Client has materially breached this Agreement, then Client shall bear the expense of such audit in addition to any fees owed; except as required by law, FIC agrees to maintain the confidentiality of Client's procedures and processes disclosed during the audit.

FIC shall maintain such books, records, and accounting practices and systems that will allow proper calculation, documentation, and reporting of all charges invoiced under this Agreement and that will facilitate auditing of such records and systems. No more than once annually, and upon twenty (20) business days' prior written notice, Client shall have the right to audit, through its independent auditors, all financial records of FIC relating to this Agreement. Such audits shall be conducted during FIC's normal business hours. If FIC is discovered to have overstated any fees owed to Client by more than 5%, then FIC shall bear the expense of such audit in addition to any fees owed; except as required by law, Client agrees to maintain the confidentiality of FIC's procedures and processes disclosed during the audit.

**8.     Term**

8.1     <u>Term</u>. Unless earlier terminated, this Agreement and the license(s) granted hereunder shall commence upon the Effective Date and shall continue in full force in perpetuity ("Term").

8.2     <u>Events of Termination</u>. This Agreement may be terminated upon the occurrence of any of the following events:

          (a)     **Uncured Breach.** Either party may terminate this Agreement for a breach by the other party of any of the material terms of this Agreement, or numerous breaches of duties or

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only

| Fair Isaac Agreement | | | Page 8 of 37 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#15843 |

obligations hereunder that cumulatively constitute a material breach if the breaching party fails to cure the breach(es) within 30 days from receipt of written notice from the non-breaching party identifying the breach(es) and requiring them to be remedied.

(b)     **Insolvency.** Either party may terminate this Agreement if the other party ceases to conduct business in the ordinary course or is declared insolvent or bankrupt, or makes an assignment of substantially all of its assets for the benefit of creditors, or a receiver is appointed, or any proceeding is demanded by, for or against the other party under any provision of bankruptcy or insolvency legislation.

(c)     **Violation of License or Confidentiality Obligations.** FIC may immediately terminate this Agreement, without a requirement for prior notice or a cure period, if Client violates any material terms of the licenses granted in this Agreement. Either party may immediately terminate this Agreement by written notice to the other party if the other party materially breaches any of the provisions of this Agreement relating to the protection of Confidential Information or Intellectual Property.

(d)     **For Convenience.**    Client may terminate this Agreement during the Term for convenience stating in its notice to FIC the business justification for such termination, subject to and only upon the following terms:  (i) Client is not in default of any of the terms and conditions of this Agreement, (ii) Client provides at least thirty (30) days written notice to FIC, (iii) Client satisfies its obligations under Section 8.3, and (iv) Client pays in full no later than the proposed date of termination stated in its written notice to FIC (but otherwise in accordance with Section 7) all unpaid invoices rendered by FIC for products or services provided and other charges incurred through the termination date.

8.3     Effect of Termination. Upon termination or expiration of this Agreement for any reason, all licenses granted hereunder shall terminate immediately, all support and maintenance obligations shall cease, Client shall immediately cease using all FIC Product(s) and related documentation (including all Intellectual Property arising from or related to the foregoing), shall remove all copies of the FIC Product(s) and related documentation from Client's computers and systems, and shall either (i) destroy all copies of the FIC Product(s), related documentation, and other FIC Confidential Information and Intellectual Property in Client's possession; or (ii) return to FIC all copies of the FIC Product(s), related documentation, and other FIC Confidential Information and Intellectual Property in Client's possession. Client shall provide to FIC a written certification signed by an authorized office of Client certifying that Client has complied with the foregoing. Upon termination of this Agreement, all currently due fees and other charges provided for hereunder will become immediately due and payable to FIC, and Client shall immediately remit all unpaid fees to FIC.

In the event of Client's termination due to breach by FIC, Client shall be entitled to a pro rata refund of all prepaid, but unused fees, including any Maintenance Fees, but not including any license fees as measured from the date of termination.

8.4     Survival. Rights to payment and the following rights and obligations under this Agreement will survive any termination or expiration of this Agreement or the Agreement: Section 2 (Definitions), Section 3.5 (Reservation of Rights Not Granted), 5.2 (Warranty), 5.3 (Limits on Types of Damages), 5.4 (Limit on Maximum Liability), 6 (Confidential Information), 8.3 (Effect of Termination), 8.4 (Survival), and 9 (Provisions of General Applicability).

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only

| Fair Isaac Agreement | | | Page 9 of 37 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#15843 |

## 9.      Provisions of General Applicability

9.1      Relationship of the Parties. FIC and Client are independent contractors and will have no power to bind the other party or to create any obligation or responsibility on behalf of the other party. This Agreement shall not be construed as creating any partnership, joint venture, agency, or any other form of legal association that would impose liability upon one party for the act or failure to act of the other party.

9.2      Counterparts. This Agreement may be executed in counterparts, which taken together shall constitute one single agreement between the parties.

9.3      Section Headings. The section and subsection headings used herein are for reference and convenience only, and will not enter into the interpretation hereof.

9.4      No Waiver. No delay or omission by either party to exercise any right or power with respect to any of the terms or conditions of this Agreement will impair any right or power or be construed to be a waiver thereof. A waiver by either party of any of the terms and conditions of this Agreement will not be construed to be a waiver of any other term or condition of this Agreement. No waiver of any rights of a party under this Agreement will be effective unless set forth in a writing signed by such party.

9.5      Entire Agreement. This Agreement constitutes the full and entire understanding and agreement between the parties with regard to the subject matter hereof, and supersedes all prior or contemporaneous proposals and all other oral or written understandings, representations, conditions, and other communications between the parties relating to such subject matter, as well as the terms of all existing or future purchase orders and acknowledgments. Each party represents and warrants to the other party that in entering into this Agreement it has not relied on any representations, promises, or assurances from another party or any employee, officer, director, representative, attorney, or affiliate of another party not expressly contained in this Agreement.  Any other terms or conditions or amendments shall not be incorporated herein or be binding upon any party unless expressly agreed to in a writing signed by authorized representatives of Client and FIC.

9.6      Construction; Severability. This Agreement will not be more strongly construed against either Party, regardless of who is more responsible for its preparation. If any provision of this Agreement is held to be unlawful or invalid under applicable law, then such provision will be ineffective only to the extent of such illegality or invalidity, without invalidating the remainder of such provision or any of the remaining provisions of this Agreement.

9.7      Governing Law. This Agreement will be governed by and construed in accordance with the laws of the State of California, without regard to principles of conflicts of law or international law, including without limitation the 1980 United Nations Convention on Contracts for the International Sale of Goods, as revised.

9.8      No Assignment. Neither party shall, without the prior written consent of the other party, assign or transfer this Agreement, or any part thereof, but such consent shall not be unreasonably withheld or delayed.  Any attempt to assign or transfer all or any part of this Agreement without first obtaining such written consent will be void and of no force or effect. Notwithstanding the foregoing, FIC may perform any or all of its obligations through any subsidiary or affiliated company, and may assign this Agreement by merger, reorganization, consolidation, or sale of all or substantially all its assets provided (i) such assignee has the technical and financial resources necessary to perform FIC's obligations hereunder, and (ii) FIC notifies Client in writing.

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only

| Fair Isaac Agreement | | | Page 10 of 37 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#15843 |

9.9     <u>Force Majeure</u>. Notwithstanding anything to the contrary herein, neither party shall be deemed to be in default of any provision of this Agreement, including any Statement of Work, or be liable to the other party or to any third party for any delay, error, failure in performance or interruption of performance due to any act of God, war, insurrection, acts of terrorism, riot, boycott, strikes, interruption of power service, interruption of communications service, labor or civil disturbance, acts of any other person not under the reasonable control of such party or other similar causes.  The affected party shall give the other party reasonable written notification of any material or indefinite delay due to such causes and the affected party shall be given additional time to perform equal to the delay caused directly by the cause referenced in this paragraph, provided that  either party may terminate the Agreement without penalty in the event such delay continues for more than 45 days.

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only

| Fair Isaac Agreement | | Page 11 of 37 |
|---|---|---|
| FI Contract Number: | | FI LR#15843 |

## 10.    Instructions And Contact Information

*Instructions to Client:*

    *1.*     *Appropriate corporate officer should execute 2 copies of the document.*

    *2.*     *Complete all requested information below:*

**Addresses for Notices:**

| | |
|---|---|
| **Address:** | **For FIC:** |
| | Fair Isaac Corporation |
| | Attn: Contracts Administrator |
| | 3661 Valley Centre Drive |
| **City/State:** | San Diego, CA 92130 |
| **Zip/Code:** | Fax: 858-523-4450 |
| **Country:** | |
| **Attention :** | |
| **Fax:** | |

*Compete Information below if different from above:*

| | **Return executed contract to Client at:** | **Send Software to:** | **Client's Billing Information:** |
|---|---|---|---|
| **Address:** | _____ | _____ | _____ |
| | _____ | _____ | _____ |
| **City/State:** | _____ | _____ | _____ |
| **Zip/Code:** | _____ | _____ | _____ |
| **Attention :** | _____ | _____ | _____ |
| **Phone:** | _____ | _____ | _____ |
| **Fax (optional):** | _____ | _____ | _____ |

    *3.*     *Return 2 completed and executed copies to:*

        Fair Isaac Corporation
        Attn: Contracts Administration
        3661 Valley Centre Drive
        San Diego, CA 92130

        If time is of the essence, please fax to:
        858-523-4450

        Questions? Call 858-369-8484

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only

| Fair Isaac Agreement | | | Page 12 of 37 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#15843 |

## 11.  INDEMNIFICATION.

11.1   <u>Indemnification</u>.  Notwithstanding anything to the contrary in this Agreement, FIC will defend at its own expense any action against Client brought by a third party to the extent that the action is based upon a claim that the FIC Products infringes upon any U.S. registered patent or copyright or misappropriates any trade secret recognized as such under the Uniform Trade Secrets law.  Furthermore, FIC will pay those costs and damages finally awarded against Client in any such action that are specifically attributable to such claim or those costs and damages agreed to in a monetary settlement of such action.

11.2   <u>Conditions</u>.  FIC's indemnification obligations under Section 11.1 above are conditioned upon: (a) Client notifying FIC in writing of such action; (b) Client giving FIC sole control of the defense thereof and any related settlement negotiations; (c) Client's compliance in all material respects with (i) Section 3 and (ii) 4 hereof but only if the failure to so comply with Section 3 or 4 has a bearing on the underlying claim; and (d) Client cooperating with FIC in such defense (including without limitation, by making available to FIC all documents and information in Client's possession or control that are relevant to the infringement or misappropriation claims, and by making Client's personnel reasonably available to testify or consult with FIC or its attorneys in connection with such defense) at FIC's expense.

11.3   <u>FIC's Options</u>.  If the FIC Products become, or in FIC's opinion are likely to become, the subject of an infringement or misappropriation claim, FIC may at its option and expense either: (a) procure for the Client the right to continue to exercise the FIC Products license under Section 3 hereof; (b) replace or modify the FIC Products so that it becomes non-infringing; or (c) if neither option (a) or (b) is available, terminate this Agreement.

11.4   <u>Exclusions</u>.  Notwithstanding the foregoing, FIC shall have no obligation or otherwise with respect to any infringement or misappropriation claim to the extent based upon: (a) any violation of the licenses granted under this Agreement; (b) any combination of the FIC Products, as the case may be with other products, equipment, or software not supplied or approved in writing by FIC; or (c) any modification of the FIC Products, as the case may be made by any entity other than FIC or its duly authorized agents.

## 12.  INSURANCE.

12.1   FIC shall maintain, during the term of this Agreement, workers' compensation coverage in compliance with the laws of each state in which the services or any portion thereof are to be performed. FIC shall additionally maintain, at all relevant times:

    **12.1.1**  Automobile Liability Insurance in the amount of $1,000,000 for each occurrence with respect to all vehicles used in connection with the Services, and

    **12.1.2.**  Commercial General Liability Insurance covering personal injury and property damages in the amount of $2,000,000 for each occurrence, and

    **12.1.3.**  Errors and Omissions coverage during the term of this Agreement with liability limits of not less than $1,000,000 per occurrence.

**12.2**   Client shall be named as an additional insured on the insurance policies required to be carried pursuant hereto (other than worker's compensation and Errors and Omissions).  At Client's request, FIC shall provide Client with certificates of insurance showing the insurance specified herein.

*Fair Isaac Confidential*

| Fair Isaac Agreement | | | | Page 13 of 37 |
|---|---|---|---|---|
| FI Contract Number: | | | | FI LR#15843 |

**12.3**    FIC assumes full and complete responsibility for all injuries to or death of any person and for all damages to property, to the extent that the foregoing are caused by the negligence of employees, agents, representatives or contractors of FIC.

IN WITNESS WHEREOF, FIC and Client have caused this Agreement to be signed in duplicate and delivered by their duly authorized representatives as of the Effective Date.

**FAIR ISAAC CORPORATION**

By:  

Name:    **Daniel S. Chelew**

Title:    Vice President
Financial Planning and Analysis

Date Signed:    2/24/05



| Fair Isaac Use Only: | | Created: 2-NOV-04 | |
|---|---|---|---|
| Short Name: | Client #: | | Acct. Exec.: |
| OE Order #: | System #: | | Royal Blue #: |
| Sales Approval: | Notes: | | |

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only

| Fair Isaac Agreement | Page 14 of 37 |
|---|---|
| FI Contract Number: | FI LR#15843 |

**EXHIBIT A**

| Product | Item Number |
|---|---|
| **FIC Blaze Advisor Development.** Blaze Advisor Builder 3 Pack (3 Seat Licenses). | 280-DVLI-03 |
| **FIC Blaze Advisor Deployment.** Unlimited number of seats/CPU's for the Named Application.<br><br>Named Application: Application License for all Underwriting and Risk Assessment for BOP and Small Business by Client) | 280-DPLI-03 |
| **Documentation -** Electronic copy included with purchase of software license | |
| **Maintenance and Support Services.** 15% of Net License Fees. Paid per annum | 126-MAIN-00 |
| **Training Classes:**<br>• Blaze Advisor Fundamentals – 2 Students<br>• Blaze Advisor Advanced Rule Maintenance Application Development – 2 Students<br><br>Classes to be held at FIC's site. Price is per student and does not include the student's travel expenses to FIC's site. Classes are further described in Exhibit E. | 280-OOTR-06 |
| **Blaze Advisor Professional Services StarterService**<br>Fair Isaac StarterService<br>Includes 4 Seats to training classes of Client's choice at FIC's site or a training class for up to 12 students at Client's site at no additional charge.<br><br>Price does not include reasonable travel fees. Free training must be utilized by June 30, 2005 or FIC shall not be obligated to provide the | 280-OOCN-02 |

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only

| Fair Isaac Agreement | | Page 15 of 37 |
|---|---|---|
| FI Contract Number: | | FI LR#15843 |

| training.  The StarterService is further described in Exhibit F. | | |
|---|---|---|
|  | | |

**Payment of License Fees.**  FIC shall invoice Client for the License Fees upon the Execution of this Agreement.

**Maintenance Fees.**  FIC shall invoice Client for the Support and Maintenance Services fees for the first year upon execution, and annually thereafter while the Maintenance term is in effect.

**Professional Services and Training Fees.**  FIC shall invoice for Professional Services Fees and Training Fees monthly in arrears on a percentage completion basis for the fees and for any related travel expenses.

**Growth of Client Through Acquisition.**  In the event that Client acquires additional BOP or Small Business lines through an acquisition or merger which results in a twenty (20%) increase in the number of applications processed, Client may not use the FIC Product for the acquired BOP or Small Business lines unless additional license fees are paid.  Upon such acquisition or merger, the parties will enter into good faith negotiations to determine the amount of the additional fees.

**Optional Purchase for Professional Services.**  Client shall have the right to purchase additional hours of professional services as follows:



Unless Client signs this Agreement and returns it to FIC by **February 28, 2005** prices and terms are subject to change.

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only

| Fair Isaac Agreement | | | Page 16 of 37 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#15843 |

## EXHIBIT B
## FAIR ISAAC SOFTWARE SUPPORT AND MAINTENANCE POLICY

### 1. DEFINITIONS
**1.1. Errors.** Errors are defined as persistent malfunctions, inherent within the Software, which prevent the Software from operating according to its technical documentation.

### 1.2. Regular Business Hours.
**1.2.1.** For Software delivered for implementation at sites in North America, Asia and South America, Maintenance services will be offered from the United States. Regular Business Hours in the United States are 6:00 a.m. to 5:00 p.m. Pacific Time, Monday through Friday, excluding holidays observed by FIC in the United States.

**1.2.2.** For Software delivered for implementation at sites in Europe, Middle East and Africa, Maintenance services will be offered from the United Kingdom. Regular Business Hours in the United Kingdom are 8:30 a.m. to 5:00 p.m. UK Time, Monday through Friday, excluding holidays observed by FIC in the United Kingdom.

**1.3. Software.** Software means the software products listed in Section 2.1.

### 2. MAINTENANCE.
**2.1.** Upon payment of Maintenance or Subscription fees by Client, FIC agrees to provide Client Maintenance services as set forth in this Maintenance Policy for the following Software products licensed by Client: Blaze Advisor.

**2.2.** FIC maintains licensed Software during both implementation and production use when operated on supported platforms or designated equipment.

**2.3.** Maintenance includes standard Software updates and Technical Support during Regular Business Hours.

### 3. TECHNICAL SUPPORT.
**3.1.** FIC will make commercially reasonable efforts to resolve verified, reproducible Errors in the Software and to resolve Client's questions and operating problems which are attributable to the Software.

**3.2.** Client agrees: (a) to set up primary and secondary liaisons who have been trained on the Software; (b) that all support requests will be centralized through the primary and secondary liaisons; (c) to submit support requests to FIC's Contact Center; (d) to comply with FIC's guidelines for submitting support requests provided to Client in writing; (e) to use commercially reasonable efforts to diagnose and resolve problems in the operation of the Software prior to contacting FIC for support; and (f) to certify that reported problems are due to a malfunction of the Software and not due to the operating system, hardware, data, interfaces, or improper use of the Software.

### 4. MAINTENANCE TERM.
**4.1.** Maintenance commences upon shipment of the Software and shall continue for an initial term of 1 year. Maintenance fees will be invoiced on an annual basis in advance. For as long as FIC makes maintenance for the Software generally available to all of its customers, maintenance will automatically renew for consecutive 1-year terms unless Client gives FIC 30 days' written notice, prior to the end of the

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only

| Fair Isaac Agreement | | | Page 17 of 37 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#15843 |

current term, of its intent not to renew. Maintenance during renewal terms will be subject to the Maintenance Policy in effect at the time of renewal. Maintenance fees applicable to renewal periods may be increased by FIC, but no such increase shall exceed the lesser of the most recently available annual change in the CPI or five percent (5%). **"CPI"** means the Consumer Price Index for All Urban Consumers (CPI-U) for the U.S. City Average for All Items, 1982-84=100, as published by the US Bureau of Labor Statistics.

**4.2.** FIC may terminate Maintenance upon 30 days' written notice if Client is in breach and does not cure said breach within such 30-day period. FIC shall have no obligation to resume Maintenance after termination.  Client may terminate Maintenance upon 30 days' written notice if FIC is in breach and does not cure said breach within such 30-day period.   In the event of such termination, FIC shall return on a pro rata basis all prepaid, but unused Maintenance and Support Services fees measured from the date of termination.

**4.3.** FIC may, at its sole discretion, reinstate lapsed Maintenance services in accordance with its then-current policies upon payment by Client of the applicable reinstatement fee.

**4.4.** Unless otherwise indicated on the applicable Agreement, Error correction and standard Software updates will be limited to (a) the current version of the Software and (b) one prior version of the Software for a maximum of 1 year after release of a subsequent version.

## 5. EXCLUSIONS.
**5.1.** Services outside the scope of Maintenance are subject to availability of resources and will be charged for separately at FIC's then-current rates for such services. The following services are outside the scope of Maintenance:

**5.1.1.** Maintenance services provided outside of Regular Business Hours.

**5.1.2.** Service which becomes necessary due to failure of computer hardware, equipment or programs not provided by FIC; negligence of Client or any third party unauthorized by FIC to provide services; operator error; improper use of hardware or software; any problem or loss not solely attributable to the Software; problems stemming from Client not applying all required maintenance releases; or problems due to unauthorized modification or adaptation of the Software by Client.

**5.1.3.** Development, customization, coding, installation, integration, consulting and training.

**5.1.4.** Optional, separately-priced Software features which may, from time to time, be made available with new versions of the Software.

## 6. INFORMATION SECURITY
Although it is not anticipated that remote access to the Software will be required to provide any of the Services under this Agreement, if any remote access services are to be provided, FIC agrees to take all reasonably necessary steps to ensure the integrity, security and confidentiality of all remote access connections with Client, whether for purposes of support, diagnosis and/or correction or for any other purpose arising in connection with any services to be provided

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only

| Fair Isaac Agreement | | | Page 18 of 37 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#15843 |

**EXHIBIT C**

**Confidentiality of Non-Public Personal Information**

Federal and State laws prohibit Client (which term includes Client's Affiliates) from disclosing non-public personal information to nonaffiliated third parties unless otherwise permitted or required by law. Non-public personal information is generally information that personally identifies an individual and which is not otherwise available to the public.  Non-public personal information includes both financial and health information on such individuals.

By entering into this agreement with Client, FIC (hereinafter in this Exhibit C referred to as "you" or "your") agrees to:

(1) protect the confidentiality of all non-public personal information that you obtain from or on behalf of Client in performing your service obligations to Client, and not disclose such information outside your organization except as permitted by federal and state law;

(2) restrict access to all non-public personal information that you obtain from or on behalf of Client to those individuals in your organization that require such information in order to perform your service obligations to Client;

(3) assume full and complete responsibility for all claims, demands, losses, costs, expenses (including reasonable attorney's fees and court costs), obligations, liabilities, fines, penalties and other damages of any and all kinds (collectively referred to as "Damages") against Client to the extent arising from or related to an actual breach of the foregoing obligations of confidentiality and non-disclosure; and

(4) maintain practices and procedures to protect the confidentiality of all non-public personal information that you obtain from or on behalf of Client and to allow Client, with reasonable notice, to audit your practices and procedures for protecting such information.

You further agree that a breach of the foregoing obligations of confidentiality and non-disclosure set forth in this Exhibit C may give rise to an irreparable injury to Client inadequately compensable in Damages. Accordingly, Client may seek injunctive relief against any such breach, in addition to any other legal and equitable remedies which may be available.

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only

| Fair Isaac Agreement | | | Page 19 of 37 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#15843 |

**EXHIBIT D**

**Client's Corporate Travel Expense Policy**

The hourly billing rate for professional fees is inclusive of charges for labor and all expenses (except travel) that FIC may incur in performance of this Agreement. Expenses that may be incurred as a result of a specific written request by Client may be billed to Client at actual costs, and in conformity with Client's Corporate Travel Expense Policy. Expenses exceeding travel guidelines must be fully justified by vendor and approved in advance by Client. All expenses exceeding those deemed reasonable will be FIC's sole and entire responsibility. The following are the travel guidelines Client will use to evaluate "reasonable expenses" for travel:

·     K class air fare or cheaper will be used if available (no first class airfare)
·     Client-approved Hotel/Motel accommodations
      Daily meal allowance at $47.00/day
·     Entertainment – no reimbursement by Client
·     Laundry - $2.00 per day if trip extends beyond 7 days
·     Personal phone calls not to exceed $5 per week
·     Use of personal vehicle reimbursed at the then-current IRS mileage reimbursement limit.
·     Rental car – mid size rate reimbursed
·     Tips – fair and reasonable rate reimbursed
·     Taxi/airport shuttle – fair and reasonable rate reimbursed

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only

| Fair Isaac Agreement | | | Page 20 of 37 |
| --- | --- | --- | --- |
| FI Contract Number: | | | FI LR#15843 |

**Exhibit E**
**Statement of Work #1**

Statement of Work No. 1

This Statement of Work ("SOW") is executed pursuant to the Software License and Services Agreement by and between ██████████████████ and Fair Isaac Corporation ("FIC") dated as of February 10, 2005 (the "Agreement"), and the terms and provisions of the Agreement are incorporated by this reference and govern the Services specified herein.

1. **Description of Work to be Performed:** FIC shall provide the training classes:
   - Blaze Advisor Fundamentals
   - Blaze Advisor Advanced Rule Maintenance Application Development

   The classes are further described in Attachment 1 to this SOW

2. **Commencement Date:** To Be Determined

3. **Approximate Length of Assignment:** 4 days per class

4. **Location of Assignment:**

   FIC's San Rafael Office or other FIC site.

5. **Key Individual Assigned:** Not Applicable

6. **Rate:** Price as described in Exhibit A.

7. **Ownership of Deliverables:** FIC. Client shall have the right to use the deliverables in support of it license to the FIC Product.



FIC:
Fair Isaac Corporation

By: _____
(Signature)    **Daniel S. Chelew**
Vice President
Financial Planning and Analysis
(Title)_____

REVIEWED BY FAIR ISAAC LEGAL

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only

| Fair Isaac Agreement | | | Page 21 of 37 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#15843 |

**Attachment #1 to Exhibit E**

**Blaze Advisor Fundamentals Syllabus**
**SECTION ONE - ADVISOR OVERVIEW - The Big Picture**
- ❖ Business Rules
  - ○ evolution of software architecture
  - ○ evolution of rules technology
- ❖ Blaze Advisor – the Rules Engine
  - ○ how it works
- ❖ Blaze Advisor Builder
  - ○ a tool for Rules Architecture Highlights
- ❖ Blaze Innovator
  - ○ a tool for Rules Authoring
- ❖ Blaze Advisor Rules Server and the Deployment Manager
  - ○ tools for deploying and managing Rules Applications 24x7 Rules Services

**SECTION TWO - INTRODUCTION TO ADVISOR BUILDER**
- ❖ Advisor Builder and features to:
  - ○ create rulebase
  - ○ test and run rulebases
  - ○ debug rulebases
- ❖ Advisor Builder GUI layout
  - ○ menu bar
  - ○ toolbar
  - ○ project panel
  - ○ editor panel
  - ○ undocking
  - ○ output panel
  - ○ question panel
  - ○ status line
- ❖ Anatomy of an Advisor Project
  - ○ project file
  - ○ rulebase file
  - ○ ruleflow file
  - ○ java class provider file
  - ○ database provider file
- ❖ Introducing the Class Exercise
  - ○ creating an Advisor project
  - ○ saving an Advisor project
- ❖ Advisor Documentation
- ❖ Advisor Tutorial
- ❖ Advisor Examples
- ❖ Creating an Advisor Application

**SECTION THREE – IMPORTING CLASSES**
- ❖ Importing classes
- ❖ Project Attributes
  - ○ classpath
- ❖ Import Wizards
  - ○ Java classes
  - ○ database classes

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only

| Fair Isaac Agreement | | Page 22 of 37 |
|---|---|---|
| FI Contract Number: | | FI LR#15843 |

- o COM
- ❖ Java import wizard
  - o classes
  - o Java Beans
  - o packages
  - o customization

## SECTION FOUR – CLASSES AND OBJECTS

- ❖ Using the Class Editor
  - o introducing the "object" class
  - o defining properties
  - o property datatypes
  - o primitive types
- ❖ -  subobject types
  - o enumerated types
  - o initial values
- ❖ Compiling the Advisor Project
- ❖ Implementing Subobject Datatypes
- ❖ Subclasses
- ❖ Using the Object Editor
  - o defining object datatype
  - o inheritance of properties
  - o initial values
  - o creating objects in a class
- ❖ Project Panel
  - o viewing objects, properties and values
- ❖ Running an Advisor project
- ❖ Special Property Values
  - o unknown, unavailable, inaccessible, null, known and available

## SECTION FIVE – RULEFLOW BASICS

- ❖ Business processes
- ❖ Ruleflow basics
  - o content editor
  - o attributes
  - o name
  - o ruleflow variables
  - o start events
  - o automatically start
  - o elements
- ❖ -  start node
  - o task block
  - o wait block
  - o decision block
  - o subprocess block
  - o loop block
  - o end node
  - o flow transitions
- ❖ Creating a ruleflow

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only

| Fair Isaac Agreement | | | Page 23 of 37 |
| --- | --- | --- | --- |
| FI Contract Number: | | | FI LR#15843 |

○ adding tasks

## SECTION SIX – RULES
❖ Structured language rule syntax
    ○ conditions
    ○ actions
    ○ viewing rules in source view
❖ Referencing values of object properties
    ○ English-like syntax
    ○ possessive syntax
    ○ dot notation
❖ Rulesets & rules
    ○ editor
    ○ local variable
    ○ adding rules
❖ Running the project
    ○ 'main' function
❖ Debug trace & rule
❖ Declarative Rules
❖ Effective dating rules
❖ Rule Engine
❖ RETE-based
    ○ 2-phase cycle
    ○ recognize, action
    ○ agenda
    ○ rule priority
    ○ event-based engine

## SECTION SEVEN – OBJECT VARIABLES AND PATTERNS
❖ Generic rules
❖ Object variables
    ○ editor
    ○ initializing
❖ Pattern variables
    ○ editor
    ○ pattern class
    ○ constraints
    ○ execution

## SECTION EIGHT – RULEBASES
❖ Advisor project organization
    ○ rulebases
    ○ global declarations
    ○ rulesets
    ○ functions
    ○ ruleflows
❖ Rulebases
    ○ file view
    ○ source view
    ○ new

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only

| Fair Isaac Agreement | | | Page 24 of 37 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#15843 |

- o adding
- o multiple
- o removing
- o renaming
- ❖ Rulesets
  - o moving
  - o adding

## SECTION NINE – RULEFLOW AND RULESETS

- ❖ Tasks
  - o creating
  - o associating with rulesets and functions
  - o passing arguments to a ruleset
  - o returning values from a ruleset
- ❖ Starting a ruleflow
- ❖ Ruleflow variables
  - o passing values to rulesets
- ❖ Branching in ruleflows using decision blocks
  - o unconditional
  - o conditional
  - o true / false
- ❖ Event Wait blocks
- ❖ Invoking rulesets
- ❖ Rulesets and the agenda

## SECTION TEN – FUNCTIONS

- ❖ Procedural control in Advisor by
  - o ruleflow
  - o functions

  - o control constructs
- ❖ Rules versus Functions / Methods
- ❖ Control constructs
  - o if…then…else
  - o select case construct
  - o while / until loops
  - o for each loops
  - o quantified expression
- ❖ Prompt Methods
- ❖ Enumerations
- ❖ Functions
  - o editor
  - o rulefow tasks and functions
  - o invoking functions
- ❖ Entering data
  - o prompting
  - o question sets
  - o ask method
- ❖ Starting an Advisor Project
  - o main function

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only

| Fair Isaac Agreement | | | Page 25 of 37 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#15843 |

## SECTION ELEVEN – DYNAMIC OBJECTS

- ❖ Static "Named" Objects
- ❖ Dynamic objects
    - o creating by assignment
    - o deletion

## SECTION TWELVE – COLLECTIONS

- ❖ 1-to-many relationships
- ❖ Collection types
    - o arrays
    - o fixed or dynamic
    - o declaring
    - o initializing
    - o appending
    - o associations
    - o indexed by key
    - o declaring
    - o adding elements
    - o accessing elements
- ❖ Using collections

## SECTION THIRTEEN – DATABASES

- ❖ Defining data source
- ❖ Database import wizard
    - o implementing connection
    - o JDBC driver and database URL
    - o defining database mapping class
    - o selecting table
    - o selecting columns
    - o SQL query statements
- ❖ Database Classes
    - o changing Advisor classes to be database classes
- ❖ Retrieving from databases
    - o database fetch method

## SECTION FOURTEEN – EVENT RULES

- ❖ Event rule types
    - o property events
    - o is needed
    - o is changed
    - o old and new operators
    - o object events
    - o is created
    - o Is initialized
    - o is deleted
    - o custom events
    - o from API
- ❖ Event rule SRL syntax

*Fair Isaac Confidential*

FICO0043633

| Fair Isaac Agreement | | | Page 26 of 37 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#15843 |

- ❖ Event rule
  - ○ editor
  - ○ activation

## SECTION FIFTEEN – BUILDER REVIEW
- ❖ Event rule types
  - ○ property events
  - ○ is needed
  - ○ is changed
  - ○ old and new operators
  - ○ object events
  - ○ is created
  - ○ is initialized
  - ○ is deleted
  - ○ custom events
  - ○ from API
- ❖ Event rule SRL syntax
- ❖ Event rule
  - ○ editor
  - ○ activation

## SECTION SIXTEEN - INTRODUCTION TO ADVISOR INNOVATOR
- ❖ Why Innovator
  - ○ rapid changing business policies
  - ○ control over change
- ❖ Advisor Solutions Suite
- ❖ Advisor Builder - Power Business Analyst
- ❖ Innovator Workbench - Power Business Analyst
- ❖ Innovator Runtime - Business Manager
- ❖ Advisor Rule Server - Deployment
- ❖ Blazing Travel Demo
- ❖ Steps to Innovating
  - ○ define requirements and specifications
  - ○ build Advisor rulebase
  - ○ develop web pages to author changes
  - ○ create templates for web rule authoring
  - ○ link web pages to templates
  - ○ define users, groups and access privileges
  - ○ turn over to business managers
- ❖ Development Environment
- ❖ Advisor Builder
- ❖ Advisor Innovator Workbench
- ❖ Peripheral technologies
- ❖ HTML
- ❖ JSP
- ❖ Putting it all together

## SECTION SEVENTEEN – INNOVATOR WORKBENCH CONCEPTS
- ❖ Class Problem Description
  - ○ description

*Fair Isaac Confidential*

| Fair Isaac Agreement | | Page 27 of 37 |
|---|---|---|
| FI Contract Number: | | FI LR#15843 |

- o demonstration
- o overview
- ❖ Starting Advisor Development Environment
- ❖ Innovator Workbench disabled – Builder
  - o loading rulebase
  - o running project
- ❖ Innovator Workbench enabled
  - o connecting to the Repository
  - o importing the Advisor project
- ❖ Overview of the Workbench GUI
  - o repository explorer panel
  - o detail explorer panel
  - o editor panel
- ❖ Repository
- ❖ Innovator entities
  - o placeholder
  - o value holder
  - o provider
- ❖ Template and Instantiation files

**SECTION EIGHTEEN –THE INNOVATOR BUSINESS RULES TEMPLATE GENERATOR**
- ❖ **(BRTG)** Business Terms
- ❖ Business Conditions
- ❖ Business Actions
- ❖ Business Values
- ❖ Business Rule Templates
- ❖ Business Terms Generator
- ❖ Business Rule Templates Generator

**SECTION NINTEEN - INNOVATOR**
- ❖ **WEB APPLICATIONS**
- ❖ **USING THE**
- ❖ **RULE MAINTENANCE APPLICATION GENERATOR**
- ❖ **(RMAG)**
- ❖ Generating a Rule Maintenance Application
- ❖ Running the Rule Maintenance Application
- ❖ Creating new rules through the Rule Maintenance Application

**SECTION TWENTY – DECISION TABLES**
- ❖ Creating decision tables
  - o creating the decision table template
  - o creating the decision table value holder
  - o choosing the decision table structure
- ❖ Invoking decision tables
- ❖ Editing decision tables
  - o adding rows and columns
  - o changing cell formats

**SECTION TWENTY-ONE – INTRODUCTION TO ADVISOR RULE SERVER DEPLOYMENT**
- ❖ Advisor Server Concepts
  - o Advisor Rule Server

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only

| Fair Isaac Agreement | | | Page 28 of 37 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#15843 |

- o   Advisor Rule Service
- o   Advisor Service Agent
- o   Advisor Server Types
- o   Deployment Environment
- o   The Deployment Manager
- o   Deployment Components
- ❖ The Quick Deployer Wizards
  - o   Generating the Server and Deployment Manager Configuration Files
  - o   Generating Server and Client Class Files
  - o   Use the generated runner file to test the application
  - o   Remote Debugging

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only

| Fair Isaac Agreement | | Page 29 of 37 |
|---|---|---|
| FI Contract Number: | | FI LR#15843 |

**Advanced Rule Maintenance Application Development Syllabus**

**SECTION ONE – WHY INNOVATOR**
- Why Innovator
  - o rapid changing business policies
  - o control over change
- Advisor Solutions Suite
  - o Advisor Builder          - Power Business Analyst
  - o Innovator Workbench   - Power Business Analyst
  - o Innovator Runtime       - Business Manager
  - o Advisor Rule Server      - Deployment
- o Blazon Travel Demo
- o Steps to Innovating
  - ▪ define requirements and specifications
  - ▪ build Advisor rulebase
  - ▪ develop web pages to author changes
  - ▪ create templates for web rule authoring
  - ▪ link web pages to templates
  - ▪ define users, groups and access privileges
  - ▪ turn over to business managers
- o Development Environment
  - ▪ Advisor Builder
  - ▪ Advisor Innovator Workbench
- o Peripheral technologies
  - ▪ HTML
  - ▪ JSP
- o Putting it all together

**SECTION TWO – INNOVATOR WORKBENCH CONCEPTS**
- o Class Problem Description
  - o description
  - o demonstration
  - o overview
- o Starting Advisor Development Environment
  - o Innovator Workbench disabled – Builder
    - o loading rulebase
    - o running project
  - o Innovator Workbench enabled
    - o connecting to the Repository
    - o importing the Advisor project
- o Overview of the Workbench GUI
  - o repository explorer panel
  - o detail explorer panel
  - o editor panel
- o Repository
- o Global and Local Templates
- o Innovator entities
  - o placeholder
  - o value holder

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only

| Fair Isaac Agreement | | | Page 30 of 37 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#15843 |

- o provider
- o creating entities in workbench
- o Template and Instantiation files

## SECTION THREE – THE INNOVATOR BUSINESS RULES TEMPLATE GENERATOR (BRTG)
***NOTE:*** This section may be skipped if BRTG was covered in the Fundamentals Course
In this section you will learn about:
- o Business Terms
    - o Business Conditions
    - o Business Actions
    - o Business Values
- o Business Rule Templates
- o Business Terms Generator
- o Business Rule Templates Generator

## SECTION 4A – VALUE HOLDERS AND VALUE PROVIDERS
- o Exercise One – using built-in providers
    - o placeholder
    - o built-in provider
    - o value holder
    - o generating project instance file
    - o test mode
- o Exercise Two – using value list providers
    - o creating a value list provider
    - o associating with the value holder
    - o generating project Instantiation file
    - o test mode

## SECTION 4B – TEMPLATES
- o Exercise Three – implementing templates
    - o creating code level templates
    - o with value holders
    - o multiple condition code level templates
    - o localizing a value holder to the template
- o Exercise Four – template lists
    - o creating a template list provider
    - o using the template list provider for a value holder
    - o generating project values file
    - o test mode
- o Exercise Five – implementing a ruleset template
    - o loops and joins
    - o creating a rule template
    - o localizing value holders to the rule template
    - o convert ruleset to use the rule template
    - o generating project values file
    - o test mode

## SECTION 5A – INNOVATOR WEB APPLICATIONS USING THE RULE MAINTENANCE APPLICATION GENERATOR (RMAG)
- ➤ How to use the Rule Maintenance Application Generator (RMAG) to automatically generate the web-based user interface for an Innovator application

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only

| Fair Isaac Agreement | | | Page 31 of 37 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#15843 |

## SECTION 5B – CUSTOMIZING RMAG DISPLAY
- ➢ Defining the Template Display Format
- ➢ Creating Tables
- ➢ Adding Information Templates
- ➢ Adding Sort and Filter

## SECTION 5C – INNOVATOR PROJECT FILE
- ➢ Using multiple global templates
- ➢ Importing global templates
- ➢ Creating global templates
- ➢ Creating Innovator project file
- ➢ Assembling multiple instance files

## SECTION 6A – DECISION TABLES
- ➢ Creating Decision Tables using Innovator Workbench

## SECTION 7 – DECISION TABLE CUSTOMIZATION
- ➢ The inner workings of decision tables
- ➢ Creating, Modifying, and Removing condition and action templates
- ➢ Creating scorecards

## SECTION 8 -  PERIPHERAL TECHNOLOGIES
- o Dynamic Web pages
  - o Client-side *vs.* Server-side behavior
- o Web Technologies Overview
  - o Client/Server communication
  - o Protocols
    - ▪ Stateful – ftp
    - ▪ Stateless – http
  - o The Request
    - ▪ Request ParametersØHTML
  - o Forms
- o JSP Review
  - o Syntax

## SECTION 9 – THREE TECHNIQUES FOR CREATING WEB-BASED USER INTERFACES
- o Innovator Web Applications using:
  - o HTML
  - o JSP
- o Generating HTML from:
  - o Innovator templates & instance file + JSP
- o Innovator Tag Library
- o Configuring the *Tomcat* Web Server
  - o virtual host (web server) directory
  - o environment variables
  - o starting server
- o Exercise One – using Innovator Tags
  - o Initialization
  - o JSP page
- o Exercise One – using the Innovator API
  - o Initialization

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only

| Fair Isaac Agreement | | Page 32 of 37 |
|---|---|---|
| FI Contract Number: | | FI LR#15843 |

    o  JSP page
o  Exercise One – using Innovator Beans
    o  Initialization
    o  JSP page

## SECTION 10 – COMPLETING THE APPLICATION  USING THE BLAZE CUSTOM TAG LIBRARY
- Completing the Blazon Travel Application using the Blaze Custom Tag Library
- Handling lists and selections using Choice Boxes, Radio Buttons, and Check Buttons
- Writing conditional HTML for displaying UI components only when a node exists
- Adding and removing optional nodes to the Object Model
- Strategies for handling more complex tasks – adding, deleting, and editing rules

## SECTION 11 – INNOVATOR WEB APPLICATIONS USING JAVA BEANS
- Completing the Pink Palace Application using the Innovator Java Beans
- Handling lists and selections using Choice Boxes, Radio Buttons, and Check Buttons
- Writing conditional HTML for displaying UI components only when a node exists
- Adding and removing optional nodes to the Object Model
- Strategies for handling more complex tasks – adding, deleting, and editing rules

## SECTION 12 – INNOVATOR WEB APPLICATIONS USING API
- Completing the Pink Palace Application using the Innovator API
- Handling lists and selections using Choice Boxes, Radio Buttons, and Check Buttons
- Writing conditional HTML for displaying UI components only when a node exists
- Adding and removing optional nodes to the Object Model
- Strategies for handling more complex tasks – adding, deleting, and editing rules

## SECTION 13 – INNOVATOR APPLICATIONS USING SWING AND JAVA BEANS
- In this section we will learn how to use the Java Swing API and the generated JavaBeans to create a stand-alone Innovator Application

## SECTION 14 -  CUSTOM PROVIDERS
- Introduction
- The Basics
- Optional Interfaces

## SECTION 15 – REPOSITORY LOCKING
- Repository locking
- The RMI repository
- Creating the repository control server
- Control server configuration
- Starting the control server
- Connecting to the RMI repository
- Explicit locking
- Lab

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only

| Fair Isaac Agreement | | | Page 33 of 37 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#15843 |

**OTHER TOPICS:**
Decision Table Customization
Performance Issues
BOMA Topics
Exception Handling
Customizing RMAG Display
Innovator Project File
Performance Tracking
Repository Locking
Testing

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only

FICO0043641

| Fair Isaac Agreement | | | Page 34 of 37 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#15843 |

**Exhibit F**
**Statement of Work #2**

Statement of Work No. 2

This Statement of Work ("SOW") is executed pursuant to the Software License and Services Agreement by and between ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ "Client") and Fair Isaac Corporation ("FIC") dated as of February 10, 2005 (the "Agreement"), and the terms and provisions of the Agreement are incorporated by this reference and govern the Services specified herein.

1.   **Description of Work to be Performed:**
FIC will provide to the Client the following services:
- Blaze Advisor Fundamentals Training –
    - Four day class is taught at the Client's location and may be attended by up to 12 students.
    - Class covers rule service design, basic rule maintenance application development, and basic rule service deployment.
    - Student training manuals
    - Blaze Advisor software for use during the class
- Blaze Advisor Rule Service Deployment
    - Four day class is taught at the Client's location and may be attended by up to 12 students.
    - The class covers deploying Blaze Advisor rule services in a variety of environments such as Java, EJB and .NET.
    - Student training manuals
    - Blaze Advisor software for use during the class
- Client must provide the following:
    - Class room large enough for attendees
    - At least one PC of for every two students (one PC per student is recommended).
    - PC require the following minimum configuration:
        - Pentium IV processor
        - 256 MB RAM
        - 150 MB available disk space
        - NT4.0, 2000, XP Operating System
        - JDK; Version 1.3 or higher
    - Install all software prior to the class.
    - High resolution LCD projector
    - Multi-media projection screen
    - White board with pens, an easel with flip pad, or chalkboard
- Rule Service Review and Analysis –
    - Four weeks of review and analysis by one FIC consultant.  The task is to review customer's documentation of business rules, business object model, rule-flows, business process documentation and Rules related Use Cases.
    - Develop a written report and GAP analysis describing the results of the review and areas for improvement. Document differences between customer's rule documentation methodology (and artifacts) and the Fair Isaac Right Start methodology.
- Deployment Planning –
    - One FIC consultant spends up to 80 hours (2 weeks) working with Client's system architects and developers
    - Service establishes an approach or plans or recommendations for the following:

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only

| Fair Isaac Agreement | | | Page 35 of 37 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#15843 |

- Rule service invocation
- Stateless versus statefull rule services
- Performance considerations
- Exception handling
- Remote debugging
- Deployment Recommendations
- Mentoring –
  - Four weeks (160 hours) of mentoring provided by one FIC consultant
  - Design support and design reviews in areas specific to Blaze Advisor as required by Client's project.  Potential areas included the following:
    - Interface design
    - Decision logic design
    - Rule maintenance templates design
    - Repository organization

## 1.1    Client Responsibilities

Client agrees that the pricing and any FIC resource estimates contained herein are based upon Client's provision of reasonable cooperation and the following:

A.  Client will provide items for on-site training described in Description of Services.
B.  Client will make personnel reasonably available to interact with the FIC consultant for the purposes of delivering the services under this SOW.
C.  Client agrees to provide FIC personnel with safe and reasonable access, working space and facilities, including heat, light, ventilation, electric current and outlets, and local telephone extensions.
D.  Client will provide access to its network(s) and system(s), as necessary, to allow FIC to perform the above described Description of Services.
E.  Client will provide the Client Responsibilities (as set forth herein) in a timely fashion (or as specified) and will use all commercially reasonable efforts to avoid delay.


2.    **Commencement Date:**   To Be Determined

3.    **Approximate Length of Assignment:**  To Be Determined

4.    **Location of Assignment:**

████████████████████████

5.    **Key Individual Assigned:** Not Applicable

6.    **Rate:** Price as described in Exhibit A.

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only

| Fair Isaac Agreement | | | | Page 36 of 37 |
| --- | --- | --- | --- | --- |
| FI Contract Number: | | | | FI LR#15843 |

7.   **Ownership of Deliverables:**  FIC.  Client shall have the right to use the deliverables in support of it license to the FIC Product.



**FIC:**
Fair Isaac Corporation

By: _____

*(Signature)*

Daniel S. Chelew
Vice President
Financial Planning and Analysis

Title:_____

*Fair Isaac Confidential*

FICO0043644

| Fair Isaac Agreement | | | Page 37 of 37 |
| FI Contract Number: | | | FI LR#15843 |

**Exhibit G**
**Statement of Work**

Statement of Work No. _____

This Statement of Work is executed pursuant to the Software License and Services Agreement by and between ███████████████████████████ ("Client") and Fair Isaac Corporation ("FIC") dated as of _____, _____ (the "Agreement"), and the terms and provisions of the Agreement are incorporated by this reference and govern the Services specified herein.

1.   **Description of Work to be Performed:**  Services, as directed by Client.

2.   **Commencement Date:**

3.   **Approximate Length of Assignment:**

4.   **Location of Assignment:**

     ███████████████████████████

5.   **Key Individual Assigned:**

6.   **Rate:**  $_____ per hour for the Key Individual(s) specified herein.

7.   **Ownership of Deliverables:**

**Client:**                                              **FIC:**
Zurich American Insurance Company        Fair Isaac Corporation


By: _____        By: _____

*(Signature)*_____        *(Signature)*_____

*(Title)*_____        *(Title)*_____

*Fair Isaac Confidential*