UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION,<br><br>   Plaintiff,<br>v.<br><br>FEDERAL INSURANCE COMPANY,<br>an Indiana corporation, and ACE<br>AMERICAN INSURANCE COMPANY,<br>a Pennsylvania corporation,<br><br>   Defendants. | Court File No. 16-cv-1054 (WMW/DTS)<br><br>**DECLARATION OF<br>PAMELA LOPATA** |

I, Pamela Lopata, declare as follows:

1. I am currently Senior Counsel, Global Corporate Transactions, North America Office of General Counsel, and in my role I have become familiar with the organizational structure of Federal Insurance Company ("Federal"), Chubb & Son, a division of Federal, and entities known generally to the market as Chubb ("Chubb"). I have also become familiar with certain regular business practices, which I describe in more detail below.

2. Federal is a legal and registered entity with the Indiana Secretary of State. Prior to the ACE-Chubb merger, Federal was the largest subsidiary within Chubb in the United States in terms of number of employees. Federal wrote and issued insurance policies of its own, but it also owned subsidiary entities both inside and outside of the United States. These subsidiaries included, without limitation, Chubb Insurance Company of Canada, Chubb Insurance Company of Europe SE, and Chubb Insurance

1

67614799.1

Company of Australia Ltd. These insurance company subsidiaries existed so that Chubb could, among other things, sell different types of insurance policies to customers with different needs, in different states and various countries.

3. One of Federal's responsibilities was to act as a service provider to these various other insurance company subsidiaries within Chubb.

4. Within Federal was a division called "Chubb & Son." This division was sometimes referred to as the "operating unit." Thus, certain things that Federal did, such as providing services to other insurance subsidiaries, were considered to be carried out by the Chubb & Son division within Federal. But the Chubb & Son division never had any employees. It was never registered as a legal entity with any state office or other government authority. It never made state or governmental corporate filings of its own.

5. One of the reasons, to my understanding, that this division was created was so that the company with the employees, Federal, would still have the founding family name of "Chubb" associated with it.

6. Because Chubb & Son was not a legal entity, it could not employ individuals. The majority of Chubb employees located in the United States were employees of Federal. As such, any actions considered to be taken by the Chubb & Son division were actually taken by employees of Federal (or another legal entity within Chubb). While the Chubb & Son division did have corporate officers, these officers were at all times employees of Federal or another legal entity within Chubb. The Board of Directors of Federal appointed the Chubb & Son corporate officers and empowered these

officers to, among other things, make decisions regarding vendor products and services for which Federal contracted.

7. Federal's Chubb & Son division did not write or sell insurance policies of its own.

8. As stated above, Federal provided various services to other entities within



9. In order to facilitate the provision of these services, Federal often entered into contracts with third party vendors like the Fair Isaac Corporation. In doing so, the default practice was for Federal to sign these contracts as "Chubb & Son, a division of Federal Insurance Company, for itself and as servicer or manager of its affiliates and subsidiaries" or something similar. Additionally, because many third parties wanted to do business with a "Chubb" entity, this signing practice facilitated that desire. However, Federal Insurance Company was, in fact, the legal entity entering into these agreements and it is my understanding that in these instances the parties to these agreements

3

understood that Federal (i) was the actual legal entity that was the party to the contract, and (ii) assumed all of the obligations and liabilities in connection with such contracts.

10. Because the Chubb & Son division was not a legal entity, did not have any employees, and did not write or sell insurance policies, the Chubb & Son division did not, and could not, use the Blaze Advisor software, and therefore, if the Chubb & Son division was the contracting party rather than Federal, the software license agreement at issue in this case would be entirely illusory.

11. The Chubb organization also had three "Strategic Business Units" or "SBU's." The three SBU's were Chubb Personal Insurance ("CPI"), Chubb Specialty Insurance ("CSI"), and Chubb Commercial Insurance ("CCI"). These SBU's, like the Chubb & Son division, were not legal entities and did not have any employees of their own. The employees working in the different SBU's were employees of Federal (or another legal entity within Chubb).

12. The SBU's functioned like departments in other corporations and, among other things, serviced different categories of insurance consumers purchasing different categories of insurance products. For example, employees working in CCI might have been tasked with marketing or developing Chubb insurance products tailored to corporate customers while employees in CPI would have been tasked with performing similar functions for products aimed at individual consumers.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: August 23, 2019                          _Pamela Liputz_