## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY, an Indiana corporation, and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation,<br><br>    Defendants. | Court File No.  16-cv-1054 (WMW/DTS)<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF NEIL ZOLTOWSKI** |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................I
INTRODUCTION ........................................................................................................... 1
ARGUMENT................................................................................................................... 2
    I.    ZOLTOWSKI CANNOT TESTIFY AS TO THE VALUE OF FICO'S LOST LICENSE FEES WHILE IGNORING AVAILABLE EVIDENCE OF MARKET TRANSACTIONS. ......................................... 2
        A.    FICO Mischaracterizes the Law on Lost License Fee Damages. ............................................................................................ 2
        B.    One Biased Witness and a 16 Year Old Price List are Nowhere Near Enough Evidence to Show the "Fair Market Value" of Blaze. ................................................................................ 5
        C.    Selective Quoting and Lawyer Argument does not Demonstrate that Zoltowski Conducted an Independent Analysis as FICO Claims. ................................................................. 7
    II.    ZOLTOWSKI CANNOT TESTIFY ABOUT FICO'S DISGORGEMENT CLAIM WITHOUT HAVING CONDUCTED ANY INDEPENDENT, EXPERT ANALYSIS........................................... 10
        A.    FICO Mischaracterizes the Law on Disgorgement Under the Copyright Act. ................................................................................ 10
        B.    Zoltowski Cannot Rely on Federal's Interrogatory Responses to Establish a Causal Nexus. ............................................. 12
        C.    Zoltowski's Single Economic Unit Theory is Irrelevant and Unreliable. ................................................................................ 14
CONCLUSION .............................................................................................................. 16

## INTRODUCTION

The opinions contained in Mr. Zoltowski's expert report are inadmissible under Rule 702 because they ignore or are contrary to the legal and factual foundations for calculation of damages. FICO's Response provides only unsupported argument that its expert conducted some undisclosed independent analysis and determined that his figures were "standard" and thus "consistent with the law." Zoltowski's damages calculation should be excluded.

*First*, Zoltowski's proposed testimony on FICO's actual damages is inadmissible because the testimony does not comply with the relevant legal precedents. Zoltowski priced FICO's alleged lost license fees based on a license structure that FICO has never sold to anyone. Indeed, the fact that FICO does not cite to a single license agreement to support its arguments despite having produced thousands of them in discovery speaks volumes. Ignoring its license agreements with Federal, its license agreements with other licensees, and its pricing practices in the real market contradicts well-established law, which requires FICO to calculate the "fair market value" of a license based on comparable agreements.

*Second*, Zoltowski's proposed testimony as to the amount of profits that FICO should be able to disgorge from Federal should also be excluded for several reasons. Rule 702 requires an expert to conduct an independent analysis. Rule 702 does not allow an expert to simply read a party's interrogatory answers to the trier of fact, especially where doing so does not satisfy FICO's burdens for profit disgorgement under the Copyright Act.

This Court is not, as FICO claims, "overstep[ping]" its role or requiring FICO "to prove [its] case twice," by excluding Zoltowski's unsupported damages opinions. (Dkt. 489 at 3.) Rather this Court would be adhering to well-reasoned precedent holding that damages opinions must be excluded from trial where they rely on "incorrect factual premises and contain[] speculative calculations." *Cole v. Homier Distributing Co., Inc.*, 599 F.3d 856, 865 (8th Cir. 2010).

## ARGUMENT

**I.  ZOLTOWSKI CANNOT TESTIFY AS TO THE VALUE OF FICO'S LOST LICENSE FEES WHILE IGNORING AVAILABLE EVIDENCE OF MARKET TRANSACTIONS.**

### A.  FICO Mischaracterizes the Law on Lost License Fee Damages.

Despite the fact that Zoltowski spends a considerable amount of space in his Reply Report arguing against the "fair market value" methodology, FICO has now apparently conceded that this well-established methodology is the proper framework for its damages. (Dkt. 408, Ex. 2 at ¶¶ 55-64; Dkt. 489 at 27.) However, FICO continues to mischaracterize the applicable law.

Under well-established precedent, a plaintiff seeking to recover lost license fees as actual damages for copyright infringement must demonstrate the "fair market value" of a license covering the defendant's allegedly unlicensed use. *Bell v. Taylor*, 827 F.3d 699, 709 (7th Cir. 2016); *Dash v. Mayweather*, 731 F.3d 303, 317 (4th Cir. 2013); *MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*, 622 F.3d 361, 366-67, 367 n.2 (5th Cir. 2010); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 172 (2d Cir. 2001); *Nucor Corp. v. Tennessee Forging Steel Serv.*, 513 F.2d 151, 153 n.3 (8th Cir. 1975). To do so a licensor must

present evidence of "what a willing buyer would have been reasonably required to pay a willing seller as a licensing fee for the actual use of the copyrighted material." *MGE UPS Sys., Inc.*, 622 F.3d at 366. New York contract law provides generally that damages for breach must be based upon a "stable foundation for a reasonable estimate." *Freund v. Washington Square Press, Inc.*, 34 N.Y.2d 379, 383 (1974). The fair market value methodology applies to both FICO's contract and copyright claims. FICO makes no distinction between its damages for copyright infringement or breach of contract—the damages in each scenario, FICO admits[1], are its lost license fees.

In order to demonstrate that a proffered "market value" for a hypothetical license is "fair," courts generally require plaintiffs to provide comparable license agreements demonstrating that they have received similar amounts in the past. *See, e.g., Recursion Software, Inc. v. Double-Take Software, Inc.*, No. 4:10-CV-403, 2012 WL 1576252, at *6 (E.D. Tex. May 4, 2012) ("Fair market value may be established where: (1) a plaintiff demonstrates that he previously received compensation for use of the infringed work; or (2) the plaintiff produces evidence of benchmark licenses, that is, what licensors have paid for use of similar work.") (citation omitted); *Country Rd. Music, Inc. v. MP3.com, Inc.*, 279 F. Supp. 2d 325, 331 (S.D.N.Y. 2003) (collecting cases); *Bell*, 827 F.3d at 709 (citing *Dash*, 731 F.3d at 318). Where parties fail to proffer evidence of prior licenses to

---

[1] FICO has affirmatively stated that the lost license fee damages on its breach of contract and copyright infringement claims are the same. (Dkt. 421 at 19) (admitting its "claim for actual damages under 17 U.S.C. § 504(b) is consistent with its breach of contract damages."). Its attempt now to apply a different standard on its breach of contract claim as compared to its copyright infringement claim is disingenuous.

3

prove that their figures approximate fair market value, courts regularly preclude their experts from testifying and grant summary judgment dismissing their claims for actual damages entirely. *See, e.g.*, *Bell*, 827 F.3d at 710; *Dash*, 731 F.3d at 318; *On Davis*, 246 F.3d at 172[2]; *Recursion Software, Inc.*, 2012 WL 1576252, at *9; *Country Rd. Music, Inc.*, 279 F. Supp. 2d at 332; *Iconbazaar, L.L.C. v. Am. Online, Inc.*, 378 F. Supp. 2d 592, 594 (M.D.N.C. 2005).

FICO has presented the court with no legal authority to contradict these principles. Instead, it has cited to a number of New York cases for unremarkable principles of contract law. One of these cases, *Holland Loader Co., LLC v. FLSmidth A/S*, actually lends further support to the idea that parties should be required to corroborate their damages figures with records of prior sales in situations like this. 313 F. Supp. 3d 447, 482 (S.D.N.Y. 2018), *aff'd*, 769 F. App'x 40 (2d Cir. 2019) (finding plaintiff's damages overly speculative where it "produced no evidence of sales of similar products by which a comparison may be made").

FICO cites just two copyright cases in support of its position that Zoltowski may measure fair market value without offering any evidence of real world transactions. Neither case supports this position. In *Montgomery v. Noga* the defendants had stolen the plaintiff's software and used it to produce pornographic CD-ROM's. 168 F.3d 1282,

---

[2] FICO contends that *On Davis* supports its position because the court reversed for an assessment of actual damages. 246 F.3d at 161. FICO is incorrect because it fails to acknowledge that the court affirmed the district court's rejection of the plaintiff's "wildly inflated claim" for license fees. *Id.* The court then remanded for an assessment of damages of approximately $50.00 because this was the license fee the plaintiff had received in the past. *Id.*

1287 (11th Cir. 1999). The plaintiff presented evidence that he had licensed his software in the past on a per-unit royalty basis and also through unlimited use licenses. *Id.* Importantly, there was no dispute that the plaintiff had actually received the amounts evidenced by his past licensing practices and thus the jury "was permitted to find that [plaintiff] would not have offered [an unlimited use] license to the defendants." *Id.* Similarly, in *United Telephone Co. of Missouri v. Johnson Pub. Co.* there was no dispute over whether the plaintiff had actually received its standard licensing fee for phone books in the past. 671 F. Supp. 1514, 1524 (W.D. Mo. 1987). Neither case involved a challenge to expert testimony or any of the other circumstances present here, which expose obvious flaws in Zoltowski's lost license fee figures.

> **B.  One Biased Witness and a 16 Year Old Price List are Nowhere Near Enough Evidence to Show the "Fair Market Value" of Blaze.**

Throughout its Response, FICO fails to direct the Court to any evidence demonstrating that FICO has ever licensed Blaze pursuant to the methodology underlying Zoltowski's $37.4 million lost license fee figure. Instead, FICO refers again and again to the same two sources: (1) William Waid's testimony and (2) two 16 year old pricing documents. (Dkt. 489 at 8-16 (citing Dkt. 408, Ex. 5 and Dkt. 492-1, Ex. 2).)

These limited sources do not provide a "reliable basis" from which to calculate the fair market value of a license covering Federal's use of Blaze for several reasons. *Freund*, 34 N.Y.2d at 383. First, Waid's interpretation of these price lists, which Zoltowski relied upon, did not result in a license structured anything like the one that Federal actually purchased or that FICO regularly sold to companies of Federal's size.

5

(Dkt. 434, Ex. 5; Dkt. 408 at 150, § 3.1; Dkt. 406 at 22.)  Second, both FICO and Zoltowski do not point to a single other license to corroborate that their $37.4 million figure would be accepted as fair in the marketplace.  (Dkt. 406 at 22; Dkt. 77, ¶ 11 (admitting that FICO has "never" sold such a license).)  Third, Waid's objectivity is compromised because he has been intimately involved in this litigation from the start, including participating in FICO's pre-suit demands for fees from Federal.  (*See, e.g.*, Dkt. 77, Decl. of William Waid in Support of FICO's Mtn. to Compel; Dkt. 437, Ex. 20; Dkt. Terrence J. Fleming Decl., Ex. 1.)  FICO has not offered any other employee to corroborate Waid's assertion that these price lists form the "standard" basis for pricing in the marketplace.[3]  Finally, even if FICO had provided corroborating evidence it would not demonstrate that $37.4 million is the fair market value for Blaze because even a cursory review of FICO's many other licenses confirms that this figure is approximately ▮ times higher than the usual fee it receives.  (*See* Dkt. 406 at 22.)

To compensate for these defects, FICO asserts that Zoltowski performed some undisclosed independent analysis to arrive at his conclusion regarding the fair market value of Blaze.  Throughout its Response, FICO makes conclusory statements such as asserting that Zoltowski's work is "supported by the case-specific facts and his expertise" and that it "accounts for the objective value FICO's lost license fees."  (Dkt. 489 at 7,

---

[3] Indeed, the email to which one of FICO's price lists is attached suggests that FICO's other salespeople were not aware of this allegedly "standard" pricing methodology. (Dkt. 492-1.)  In this March 2016 email Waid explains to Michael Sawyer how the documents work despite the fact that Sawyer had been assisting with sales of FICO products for approximately eight years by this date.  (Fleming Decl., Ex. 2 at 10:2-23.)

6

11.) Such statements are irrelevant to proving reliability however, because "[t] he *ipse dixit* of the lawyer is no better than the *ipse dixit* of the expert in establishing the foundation for admissibility of expert testimony." *Jones v. Anderson*, No. 5:17-CV-77, 2018 WL 2717221, at *10 (S.D. Ga. June 6, 2018).

FICO also repeatedly quotes nearly identical statements from Zoltowski's reports and deposition testimony. (*Id.* at 5, 7, 13, 15, 17-19.) These statements also fail to prove reliability because they either cite no supporting evidence or merely refer back to Waid's self-serving testimony and the same 16 year old pricing documents. (*Id.*) Importantly, FICO never explains *how* Zoltowski verified Waid's methodology and determined that these price lists reflect the current fair market value for Blaze or a comparable product. *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998) ("Expert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions.").

    **C.**    **Selective Quoting and Lawyer Argument does not Demonstrate that Zoltowski Conducted an Independent Analysis as FICO Claims.**

The law under Rule 702 is clear that FICO cannot qualify Zoltowski to present a damages theory at trial without explaining how he confirmed that his figures represent the fair market value for a license to use Blaze. *Id.* "A damages theory must be based on sound economic and factual predicates." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77-81 (Fed. Cir. 2012) (citation omitted) (reversing damages award where district court abused discretion by admitting outlier license agreement and where expert's "theory cannot be reconciled with the actual licensing evidence"). FICO has the burden

of proving that its damages theory is reliable under the applicable law by a preponderance of the evidence. *Polski v. Quigley Corp.*, 538 F.3d 836, 838 (8th Cir. 2008). FICO cannot satisfy this burden where its expert has relied entirely on the biased testimony of a single employee and an outdated price list to the exclusion of thousands of readily available records of real world transactions involving Blaze or other potentially comparable products. (Fleming Decl., ¶ 2.)

Even if FICO had disclosed how Zoltowski used his "independent expertise" to verify Waid's conclusions, FICO still fails to explain how it can be true that not a single comparable license agreement exists to corroborate his conclusions. As Federal has noted previously, the fees contained in FICO's licenses for Blaze with comparably sized companies range from ▇▇▇▇wski's $37.4 million figure. (Dkt. 406 at 22.) FICO does not even attempt to explain this discrepancy in its Response, instead relying once again on unsupported statements that Zoltowski "considered each of these factors and provided a reasoned analysis for rejecting them." (Dkt. 489 at 2.) By failing to disclose what this "reasoned analysis" was, however, the Court has nothing to verify that Zoltowski's opinions are more than the "say-so of one fact witness" (i.e. Waid). (Dkt. 489 at 4.)

FICO also appears to argue that inflated licensing fees are justified in the context of litigation. (Dkt. 489 at 17 (arguing inflated figures justified because "Federal has been in breach of the Agreement for over 3 years.").) But this argument assumes liability and uses it as a justification for what can only be described as a penalty. However, "[t]he Supreme Court has made very clear that the purpose behind the measure of damages set

8

forth in § 504(b) is 'to provide just compensation for the wrong, not to impose a penalty." *Gregerson v. Vilana Fin., Inc.*, No. CIV.06-1164 ADM/AJB, 2008 WL 451060, at *5 (D. Minn. Feb. 15, 2008) (citation omitted); *see also Bucklew v. Hawkins, Ash, Baptie & Co.*, LLP., 329 F.3d 923, 931 (7th Cir. 2003) ("the statute contains no provision for punitive damages").

Most importantly, however, all of the cases establishing the fair market value methodology obviously involved parties in the context of litigation and none of them endorse a damages multiplier based on this fact. *See, e.g.*, *DaimlerChrysler Servs. v. Summit Nat.*, No. 02-71871, 2006 WL 208787, at *2 (E.D. Mich. Jan. 26, 2006) ("The Court holds that [plaintiff] may not rely on its own subjective estimate as to the price it would have charged [defendant] given [defendant]'s predicament."). FICO cites no legal authority to the contrary.

This Court should exercise its considerable discretion under Rule 702 to exclude Zoltowski's lost license fee calculation. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Zoltowski's $37.4 million figure is not supported by the law or a proper evidentiary basis in prior licenses. The presentation of such an inflated damages figure at trial "increases the danger of unfair prejudice and confusion" to Federal. *JMJ Enterprises, Inc. v. Via Veneto Italian Ice, Inc.*, No. CIV. A. 97-CV-0652, 1998 WL 175888, at *10 (E.D. Pa. Apr. 15, 1998), aff'd, 178 F.3d 1279 (3d Cir. 1999) (excluding damages expert where his "factual basis was inadequate and his methods were improper"); *see also Laserdyanmics*, 694 F.3d at 77.

9

Nor would FICO's offer of having Waid testify as a fact witness at trial remedy this prejudice. (Dkt. 489 at 15.) Indeed, allowing Waid and Zoltowski to present duplicative testimony would violate well-established precedent and further prejudice Federal by giving Waid's unsupported opinions an expert "mouthpiece." (*See* Dkt. 406 at 9-10); *see also Black & Decker v. Bosch Tools*, No. 04 C 7955, 2006 WL 5156873, at *1 (N.D. Ill. Sept. 8, 2006) ("Federal Rule of Evidence 703 does not allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion.") (citation omitted). FICO cannot carry its burden to prove Zoltowski's lost license fee opinions are admissible where he ignores or contradicts objective licensing evidence of the type relevant precedent deems most important.

## II.   ZOLTOWSKI CANNOT TESTIFY ABOUT FICO'S DISGORGEMENT CLAIM WITHOUT HAVING CONDUCTED ANY INDEPENDENT, EXPERT ANALYSIS.

### A.   FICO Mischaracterizes the Law on Disgorgement Under the Copyright Act.

FICO goes even further in mischaracterizing the law on disgorgement here than it does in its other briefing. It asserts that under 17 U.S.C. § 504(b), "FICO need only present proof of Federal's gross revenue" to recover Federal's profits. (Dkt. 489 at 34.) FICO does not cite to any legal authority holding that its only burden under § 504(b) is to present Federal's gross revenue because every court to have considered this argument has rejected it. *See, e.g., Real View, LLC. v. 20-20 Techs., Inc.*, 811 F. Supp. 2d 553, 560 (D. Mass. 2011) ("Although the statute describes only the plaintiff's burden to establish the

defendant's gross revenue . . . 'a copyright owner is required to do more initially than toss up an undifferentiated gross revenue number; the revenue stream must bear a legally significant relationship to the infringement.'") (citation omitted).

Before FICO may present any evidence of gross revenue at trial, it has the burden of establishing causation, i.e. that Federal's use of Blaze in fact caused Federal to profit. *See, e.g.*, *Lynch v. Trendwest Resorts Inc.*, 64 F. App'x 44, 45 (9th Cir. 2003) (quoting *Mackie v. Rieser*, 296 F.3d 909, 911 (9th Cir. 2002)) (plaintiff "was required to 'proffer some evidence to create a triable issue regarding whether the infringement at least partially caused the profits that the infringer generated as a result of the infringement.'"); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 159 (2d Cir. 2001) (dismissing profits claim where plaintiff "failed to show any causal connection between the infringement and the defendant's profits"); *Straus v. DVC Worldwide, Inc.*, 484 F. Supp. 2d 620, 632 (S.D. Tex. 2007) (dismissing profits claim where plaintiff provided no evidence of a "causal link"); *Rocking Chair Enterprises, L.L.C. v. Macerich SCG Ltd. P'ship*, 407 F. Supp. 2d 1263, 1273 (W.D. Okla. 2005) ("the commercial is too attenuated to create the nexus required to show causation"); *Mager v. Brand New Sch.*, No. 03 CIV. 8552 (DC), 2004 WL 2413978, at *4 (S.D.N.Y. Oct. 28, 2004) ("This claim fails because it is not possible to show the required 'causal connection' between the infringement and BNS's profits."). Further, in cases like this one where a plaintiff seeks to disgorge "indirect profits" based on the use of a copyrighted work within a "complex income stream," proving causation is inherently more difficult and thus "courts have required that plaintiffs introduce detailed

11

evidence linking gross revenues to the infringement." *Rainey v. Wayne State Univ.*, 26 F. Supp. 2d 963, 972 (E.D. Mich. 1998).

It is clear that Zoltowski did not conduct anything like a causation analysis in arriving at his gross revenue figure of $30.9 billion. FICO's only basis for arguing that Zoltowski "conducted his disgorgement opinion in accord with Section 504(b)" is that Zoltowski restated this statutory provision in his report. (Dkt. 489 at 34-35.) However, FICO also admits that Zoltowski "simply **assumed** the gross revenue Federal admits resulted from Federal's infringing use of Blaze Advisor is subject to disgorgement." (*Id.* at 35.) (emphasis added) Federal does not admit anything related to causation in the interrogatory responses that FICO is referring to in this passage, but this statement does reflect an admission *by FICO* that its expert simply copied these responses to arrive at his $30.9 billion figure. Merely copying these responses does not come anywhere close to demonstrating that Zoltowski conducted the type of causation analysis that is FICO's burden under § 504(b). *Fox Controls, Inc. v. Honeywell, Inc.*, No. 02 C 346, 2005 WL 1705832, at *8 (N.D. Ill. July 14, 2005) ("[a] plaintiff cannot simply presume that the sales of a defendant's products are due to copyright infringement.").

### B. Zoltowski Cannot Rely on Federal's Interrogatory Responses to Establish a Causal Nexus.

FICO argues in the final two pages of its brief that Zoltowski may present this $30.9 billion gross revenue figure at trial regardless of whether Mr. Whitener's testimony is excluded because this figure is based on Federal's interrogatory responses. (Dkt. 489 at 42-43.) FICO's only attempt at supporting this argument with a causation analysis is

to once again suggest that Zoltowski performed some undisclosed analysis of "documents and testimony." (*Id.* at 43.) However, this contention contradicts FICO's statement quoted above that conceded Zoltowski simply "assumed" the figures stated in these interrogatories were "subject to disgorgement." (*Id.* at 35.) Conclusory—and contradictory—arguments like these cannot render an expert's testimony reliable enough to be admitted under Rule 702. *Jones*, 2018 WL 2717221, at *10; *Salgado by Salgado*, 150 F.3d at 741 n.6; *Daubert v. Merrell Dow Pharm.*, 43 F.3d 1311, 1316 (9th Cir. 1995) (noting that *Daubert* requires courts "to analyze not what the experts say, but what basis they have for saying it").

Federal's responses to FICO's interrogatories do not somehow satisfy § 504(b)'s causation requirement on their own as FICO's argument necessarily implies. Indeed, the Court's order requiring Federal to respond to FICO's interrogatories noted that "Defendant's response is not to be construed as an admission that the revenues or profits are attributable to Blaze Advisor." (Dkt. 96.) Further, no company keeps revenue figures in the ordinary course of business organized by their connection to a minor software component, which is the data FICO requested with these interrogatories. (*See* Dkt. 492-4, 492-5, 492-6, 492-7.) Thus, the task of gathering this information was difficult and potentially inaccurate. (*See* Dkt. 237 at 22.) For example, Federal's expert has pointed out that because "a single insurance policy . . . may feed through more than one Blaze Advisor application" these revenue figures actually "exceed Federal's *total* reported gross written premiums" – an impossibility if these figures were reliable. (Dkt. 424, ¶¶ 179-181.) A financial expert like Zoltowski likely would have noted flaws like these if he had

13

conducted some independent analysis on these figures as FICO claims he did. These flaws demonstrate that "there is simply too great an analytical gap" between these interrogatories and Zoltowski's conclusions for his testimony to be admissible. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

### C. Zoltowski's Single Economic Unit Theory is Irrelevant and Unreliable.

Zoltowski's opinions on Chubb's corporate structure are irrelevant as a matter of law. It is well-established that liability for profits under the Copyright Act is several, not joint, and that even if this were not the case, parties cannot recover from non-parties as a matter of due process. *See N. Atl. Distribution, Inc. v. Teamsters Local Union No. 430*, 497 F. Supp. 2d 315, 326–27 (D.R.I. 2007) ("the requirements of due process make it impossible for this Court to extend a default judgment to a non-party, regardless of the non-party's relationship to the original party"). Calling the various legal entities whose revenue data is included in Federal's interrogatory responses "a single business" does not change the application of these basic legal principles to the facts of this case. (Dkt. 489 at 32-33.) FICO cannot recover profits from Federal that were earned by non-parties as a matter of law and, accordingly, Zoltowski's testimony in support of any such recovery should be excluded as irrelevant.[4]

In response to these arguments FICO has only cited to one non-binding case from 1939 that arose under an earlier version of the Copyright Act: *Sheldon v. Metro-Goldwyn Pictures*, 106 F.2d 45, 52 (2d Cir. 1939). In allowing the plaintiff to recover profits

---

[4] FICO's correction of the amount of gross revenue connected to non-parties appears to be correct based on Federal's interrogatory responses. (*See* Dkt. 489 at 31 n.4.)

14

earned by the defendants' non-party subsidiaries the court made no mention of the due process limitations on a court's authority to order such recoveries. *Id.* To the contrary, modern authority under the current Copyright Act does not support the holding in *Sheldon*. Indeed, the Second Circuit Court of Appeals seemingly overruled *Sheldon* in *MCA, Inc. v. Wilson* when it held that "[i]nsofar as there is liability for illegal profit, the liability is several; one defendant is not liable for the profit made by another." 677 F.2d 180, 186 (2d Cir. 1981). FICO has not made any attempt to reconcile these contradictory rulings or to explain other more recent precedents that adhere to *Wilson*'s sound reasoning. *See Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 301-02 (E.D. Pa. 2014) (collecting authorities). Moreover, vague references to Chubb's tax returns and organizational structure cannot somehow bring non-parties' profits within the realm of FICO's possible recovery, especially here where the underlying legal argument is only supported by one paragraph in a non-binding opinion from 1939. Zoltowski's testimony regarding non-party revenues is irrelevant as a matter of law.

Even if Zoltowski's single economic unit theory were somehow relevant to the issues in dispute, it would still not satisfy the reliability requirements of Rule 702. Testimony is inadmissible where an expert "simply reads and interprets documents" without drawing on "some special skill, knowledge, or experience" in doing so. *Sullivan v. Alcatel-Lucent USA Inc.*, No. 12 C 07528, 2014 WL 3558690, at *5 (N.D. Ill. July 17, 2014) (citations omitted). FICO argues that Zoltowski has experience "evaluating the corporate and economic structure of companies" but Zoltowski admits that he is not an accounting, tax, or insurance expert. (Dkt. 489 at 41; Dkt. 412, Ex. 18 at 7:10, 28:11-

15

29:6, 115:2-3.) Nor has FICO identified any authority from relevant fields such as insurance, finance, economics, or even law that lends support to his theory of Chubb's corporate structure or his use of terms like "single economic unit." *See In re Air Crash at Little Rock Arkansas, on June 1, 1999*, 291 F.3d 503, 514 (8th Cir. 2002) ("*Daubert* demands an assessment of whether the expert's methodology . . . has been subjected to peer review and publication . . . and has been generally accepted"). Ultimately, FICO has not offered a reliable basis for any of Zoltowski's conclusions in either the law or the facts, which means this Court should preclude him from testifying at trial.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court exclude the expert report and testimony of Neil J. Zoltowski in their entirety.

Dated: September 9, 2019

s/ Terrence J. Fleming
Terrence J. Fleming (#0128983)
tfleming@fredlaw.com
Leah C. Janus (#0337365)
ljanus@fredlaw.com
Christopher D. Pham (#0390165)
cpham@fredlaw.com
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402-1425
Telephone: 612.492.7000

*Attorneys for Defendants*