UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation,<br><br>        Plaintiff,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY, an Indiana corporation and ACE AMERICAN INSURANCE COMPANY a Pennsylvania corporation,<br><br>        Defendants. | Case No. 16-cv-1054 (WMW/DTS)<br><br>**Jury Trial Demanded** |

**PLAINTIFF FAIR ISAAC CORPORATION'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FURTHER CONSIDERATION OF SEALING**

Plaintiff Fair Isaac Corporation ("FICO") respectfully moves this Court under Local Rule 5.6(d)(3) to keep six documents under seal that contain FICO's confidential, proprietary, and commercially-sensitive information. This motion is unopposed.[1]

**I.   Introduction**

FICO respectfully requests that the Court keep under seal six documents—two copies[2] of the parties' Software License and Maintenance Agreement and amendments and two damages calculations disclosing FICO's pricing methods—which contain highly sensitive and proprietary information that FICO keeps strictly confidential. (Dkt. 334

---

[1] The Parties met and conferred on November 4, 2019. Defendants Federal Insurance Company and ACE American Insurance Company (collectively "Defendants" or "Federal") do not oppose this motion.
[2] One copy of the Agreement and two amendments was filed as three separate documents while the other was filed as a single document.

1

(Exhibits 1-3); Dkt. 460-1; Dkt. 460-7; Dkt. 460-10.)  FICO will experience significant economic harm, including competitive harm, if the information in these documents is made public.

FICO designated each of the documents "Confidential" or "Confidential – Attorneys' Eyes Only" pursuant to the Protective Order entered by this Court (Dkt. 44) because these documents contained FICO's proprietary pricing methods.  Defendants filed these documents under seal in support of Defendants' Motion to Strike Plaintiff's Jury Demand on Disgorgement Remedy and Defendants' Motion for Leave to File Amended Answer.  The parties previously agreed that these documents should remain sealed.  (Dkt. 454; Dkt. 529.[3])

All six of these documents contain FICO's confidential and proprietary information.  At most, there is only a minimal public interest in accessing the documents, which must be weighed against the significant risk of competitive harm to FICO if they are made public.  This Court should grant this Motion and order that the six documents continue to be sealed.  This Court should also order redacted copies of these documents be filed to allow the public access to the non-confidential and non-proprietary information found in these documents.

---

[3] The Court has allowed these documents to remain under seal when publicly accessible, redacted versions have been filed.  (Dkt. 665 (allowing Dkt. 390 (Exhibits 2-4 (Software License and Maintenance Agreement and amendments)), Dkt. 412 (Exhibit 21 (FICO's Second Supplemental Interrogatory Answers)), and Dkt. 424-1 (FICO's damages expert's report) to remain sealed).)

**II.     Factual background**

FICO and Chubb & Son, a division of Defendant Federal Insurance Company, entered into the Software License and Maintenance Agreement ("Agreement") in June 2006.  The parties executed amendments to the Agreement in August 2006 and December 2006, respectfully.  Certain terms of the Agreement and amendments, particularly the pricing terms, are highly confidential and proprietary.  As part of the discovery process, FICO provided Federal with its damages calculations, first in its interrogatory answers and then through its damages expert's report.  The interrogatory answers and damages expert's report also contain highly confidential and proprietary information, including the proprietary pricing methods FICO uses to price its Blaze Advisor software when competing in the market.

Defendants filed these documents under seal in support of two motions.  On July 10, 2019, Defendants filed their Motion to Strike Plaintiff's Jury Demand on Disgorgement Remedy.  (Dkt. 329.)  Defendants filed unredacted versions of the Agreement and two amendments under temporary seal in support of their motion.  (Dkt. 334 (Exhibits 1-3).)  On August 8, 2019, Defendants filed their Motion for Leave to File Amended Answer.  (Dkt. 456.)  Defendants filed unredacted versions of the Agreement and two amendments (Dkt. 460-1), an unredacted version of FICO's Second Supplemental Interrogatory Answers (Dkt. 460-7), and an unredacted version of excerpts of FICO's damages expert's report (Dkt. 460-10) under temporary seal in support of their motion.  On August 7, 2019, the parties filed a Joint Motion for Continued Sealing with respect to Defendants' Motion to Strike Plaintiff's Jury Demand on Disgorgement

Remedy.  (Dkt. 454.)  On September 5, 2019, the parties filed a Joint Motion for Continued Sealing with respect to Defendants' Motion for Leave to File Amended Answer.  (Dkt. 529.)  On October 9, 2019, the Court granted the motion in part and denied the motions in part.  (Dkt. 590 at 9.)  Of relevance here, the Court ordered the following documents unsealed: Dkt. 334 (including Exhibits 1-3), Dkt. 460-1, 460-7, and 460-10.

### III.    Legal standard

Local Rule 5.6(d)(3) provides that after decision of a joint motion regarding continued sealing, a party "may file a motion for further consideration by the magistrate judge."[4]  "At this point," the Advisory Committee Note explains, "any party . . . who objects to the unsealing . . . of information will have a full opportunity to brief the issue."  Notwithstanding the Court's previous resolution of a joint motion regarding continued sealing, this Court reviews a motion for further consideration *de novo* rather than deferentially (as would be the case if the motion were a motion for reconsideration), and it decides in the first instance with the benefit of full briefing whether materials filed under seal should remain sealed.

Although court proceedings are generally open to the public, the public is not permitted unfettered access to litigants' highly confidential and proprietary business information.  In *Nixon v. Warner Communications*, the U.S. Supreme Court endorsed the

---

[4] The Advisory Committee Note explains that "[a] motion for further consideration by the magistrate judge is a nondispositive motion governed by LR 7.1(b); it is not a motion for reconsideration under LR 7.1(j)."

sealing of court records that contained confidential business information, the disclosure of which "might harm a litigant's competitive standing."  435 U.S. 589, 598 (1978).  The Eighth Circuit has held similarly: "This right of [public] access is not absolute, but requires a weighing of competing interests." *Webster Groves Sch. Dist. v. Pulitzer Pub. Co.*, 898 F.2d 1371, 1376 (8th Cir. 1990).

"[C]onfidential and competitively sensitive information" may remained sealed. *IDT Corp. v. eBay*, 709 F.3d 1222, 1223-24 (8th Cir. 2013).  In considering whether sealing is proper, courts "must consider the degree to which sealing a judicial record would interfere with the interests served by the common-law right of access and balance that interference against the salutary interests served by maintaining confidentiality of the information sought to be sealed." *Id.* at 1223.  Parties may be required to file redacted versions of documents so as to balance the interests between public disclosure and protecting the confidential and competitively sensitive information.  *Id.* at 1224; *Webster Groves Sch. Dist.*, 898 F.2d at 1377.

**IV.  FICO's six documents contain confidential and commercially sensitive information and should remain sealed.**

    **A.  <u>Documents containing confidential and commercially sensitive information routinely remain sealed.</u>**

Courts routinely hold that confidential and competitively sensitive information may remain sealed.  *See IDT Corp.*, 709 F.3d at 1223-24; *see also China Falcon Flying Ltd. v. Dassault Falcon Jet Corp.*, No. 15-6210, 2017 U.S. Dist. LEXIS 138651, at *6-7 (D.N.J. Aug. 29, 2017) ("[T]here is a legitimate private interest in keeping confidential business agreements and sensitive pricing information confidential.  Public disclosure of

such materials could, in theory, damage the disclosing party's competitive standing in the marketplace."); *Mazzanti v. GE*, No. 3:13-cv-1799 (WWE), 2017 U.S. Dist. LEXIS 32897, at *9 (D. Conn. Mar. 7, 2017) (granting motion to seal "documents or information relevant to pricing, sales and profit"); *Lonesource, Inc. v. United Stationers Supply Co.*, No. 5:11-cv-00033-D, 2013 U.S. Dist. LEXIS 735, at *3-4 (E.D.N.C. Jan. 3, 2013) (granting motion to seal third-party contract that "contains sensitive, commercial business information regarding pricing and sales information unavailable to the general public, the publication of which would damage the business interests of Plaintiff and the third party"); *Stout v. Hartford Life & Accident Ins. C*o., No. CV 11-6186 CW, 2012 U.S. Dist. LEXIS 172088, at *7 (N.D. Cal. Dec. 4, 2012) ("[L]itigants may file under seal their contracts with third parties that contain proprietary and confidential business information.").

Such confidential and competitively sensitive information is routinely sealed to protect a party's information from being disclosed to a competitor. *FTC v. Exxon Corp.*, 636 F.2d 1336, 1349-50 (D.C. Cir. 1980) ("If [one competitor] is able to secure competitively sensitive information of the [other], either intentionally or inadvertently, the ability of the [other party] to compete effectively . . . would be seriously impaired.").

    **B.**    **FICO's documents should be maintained under seal because they contain confidential and commercially sensitive information.**

The six documents at issue—two copies of the parties' Software License and Maintenance Agreement and amendments and two damages calculations disclosing FICO's pricing methods—contain FICO's confidential and competitively sensitive

information.  Disclosure to a competitor or even a client or potential client may cause significant economic harm to FICO.

Docket No. 334 (Exhibits 1-3) and Docket. No. 460-1 contain the Software License and Maintenance Agreement for Blaze Advisor between Fair Isaac Corporation and Chubb & Son as well as the two amendments to the Agreement.  In unredacted form, the Agreement contains confidential and commercially sensitive information related to FICO's licensing practices, including the pricing a particular client received.  As a software company, FICO generates its revenue by licensing its software to customers.  Disclosure of the Agreement and the two amendments in their entirety will divulge the pricing FICO negotiated with a particular client, Chubb & Son.  Such information may be used by FICO's competitors to undercut FICO's pricing or may be used by FICO's customers and potential customers to demand lower pricing.  Either event is potentially detrimental to FICO's business.

Docket No. 460-7 contains FICO's Second Supplemental Answers to Defendant's Interrogatory Nos. 6-9 dated April 23, 2018.  These documents contain the methodology for calculating FICO's lost license fees as part of the damages incurred as a result of Federal's breach of the Agreement.  Importantly, the methodology used to calculate the breach-related damages is the same methodology FICO uses to price Blaze Advisor to its customers and potential customers when competing in the market.  The methodology contains confidential and commercially sensitive information regarding prices for each size of application and a perpetual license conversion factor.  Such information may be used by FICO's competitors to undercut FICO's pricing or may be used by FICO's

customers and potential customers to demand lower pricing. Either event is detrimental to FICO's business.

Docket No. 460-10 contains excerpts from the Expert Report of FICO's Damages Expert Neil Zoltowski. These excerpts include a recitation of the methodology FICO uses to price Blaze Advisor to its customers and potential customers when competing in the market. The methodology contains confidential and commercially sensitive information regarding factors that affect the application sizing, the standard pricing rate, the perpetual license conversion factor, FICO's standard support and maintenance service fee, and FICO's multi-platform uplift rate. Such information may be used by FICO's competitors to undercut FICO's pricing or may be used by FICO's customers and potential customers to demand lower pricing. Either event is detrimental to FICO's business.

The documents FICO seeks to remain sealed contain the type of confidential and competitively sensitive information that courts routinely keep sealed. *See IDT Corp.*, 709 F.3d at 1223-24; *see also China Falcon Flying*, 2017 U.S. Dist. LEXIS 138651, at *6-7; *Lonesource, Inc.*, 2013 U.S. Dist. LEXIS 735, at *3-4; *Stout*, 2012 U.S. Dist. LEXIS 172088, at *7.

### C. The balance of interests favors sealing the documents.

Balanced against this strong interest in sealing the confidential materials is a minimal interest in unsealing them. The right of access to judicial records in civil proceedings exists to "bolster[] public confidence in the judicial system by allowing citizens to evaluate the reasonableness and fairness of judicial proceedings and 'to keep a

watchful eye on the workings of public agencies.'" *IDT Corp.*, 709 F.3d at 1222 (citation omitted). When a document plays a "negligible" role in the court's exercise of its judicial function, the public interest in accessing that document is "minimal." *Id.* at 1224. None of the six documents are critical to the Court's evaluation of the merits of either of Defendants' motions. Indeed, the specific information (i.e. FICO's proprietary pricing information and pricing methodology) that FICO seeks to seal (while simultaneously permitting disclosure in redacted form) plays no part in the Court's decision-making. Where, as here, the records at issue contain confidential and competitively sensitive information and there is no substantial public interest in unsealing the record material, it is proper to keep the records under seal.

### D. The present motion addresses the Court's concerns with continued sealing; the Court should maintain the documents under seal.

The Court should grant FICO's motion as it addresses each of the Court's concerns that supported the denial of the parties' joint motions for continued sealing. The Court denied the parties' joint motion (Dkt. 454) finding the parties failed to identify the information the parties wanted sealed with specificity and failed to explain why the information should be sealed. (Dkt. 590 at 5-6.) The Court further found "no basis in the Joint Motion that warrants an order denying the public access to these documents, and particularly not in their entirety." (*Id.* at 6.) FICO's motion addresses each of these concerns. With respect to Docket 334 (Exhibits 1-3), FICO seeks to have the documents sealed so as to protect the pricing information found in the Agreement and amendments, which would cause severe competitive harm to FICO if competitors or customers gained

9

access (*see* Section IV(B), *supra*).  FICO believes that redactions can be easily applied to provide the public access to the remaining, non-commercially sensitive information.

The Court similarly denied the parties' joint motion (Dkt. 529) finding the parties failed to identify the information the parties wanted sealed with specificity and failed to explain why the information should be sealed.  (Dkt. 590 at 6-7.)  FICO's motion addresses each of these concerns.  With respect to Docket Nos. 460-1, 460-7, and 460-10, FICO seeks to have the documents sealed so as to protect the pricing information found in the Agreement and amendments and to protect the methodology of calculating FICO's pricing found in the interrogatory answers and damages report.  Disclosure of any of this material would cause severe competitive harm to FICO if competitors or customers gained access (*see* Section IV(B), *supra*).  FICO believes that redactions can be easily applied to provide the public access to the remaining, non-commercially sensitive information.

## V. Redacted versions of the exhibits should be filed to make the remaining information available to the public.

FICO seeks to protect only a limited portion of the six documents on which it seeks further consideration of sealing.  FICO does not object to redacted versions of the documents at issue being filed in accord with the parties practice in response to the Court's October 9, 2019 Order.  (Dkt. 589.)  Indeed, in the Joint Motions, FICO (or the parties jointly) stated that it believed some of these documents were amenable to redactions.  (Dkt. 454 at 4; Dkt. 529 at 2-3.)  The Eighth Circuit has repeatedly held that documents may remained sealed while ordering that redacted versions be filed.  *IDT*

*Corp.*, 709 F.3d at 1224; *Webster Groves Sch. Dist.*, 898 F.2d at 1377.  As FICO did not file the documents at issue, it is unable to file the redacted versions.  The Court should direct Defendants to file such redacted versions.

## VI.   Conclusion

For the foregoing reason, FICO respectfully requests that this Court order that six documents (Dkt. 334 (Exhibits 1-3), 460-1, 460-7, and 460-10) remain sealed and that Defendants be ordered to file redacted versions of these documents.

Dated: November 6, 2019

MERCHANT & GOULD P.C.

/s/ Heather J. Kliebenstein
Allen Hinderaker, MN Bar # 45787
Heather Kliebenstein, MN Bar # 337419
Michael A. Erbele, MN Bar # 393635
Joseph W. Dubis, MN Bar # 398344
MERCHANT & GOULD P.C.
150 South Fifth Street
Suite 2200
Minneapolis, MN  55402-2215
Tel:  (612) 332-5300
Fax:  (612) 332-9081
ahinderaker@merchantgould.com
hkliebenstein@merchantgould.com
merbele@merchantgould.com
jdubis@merchantgould.com

Attorneys for Plaintiff FICO
