# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION, | Court File No.  16-cv-1054 (WMW/DTS) |
| Plaintiff, | |
| v. | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S OBJECTION TO MAGISTRATE'S ORDER STRIKING JURY DEMAND ON DISGORGEMENT REMEDY** |
| FEDERAL INSURANCE COMPANY, an Indiana corporation, and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation, | |
| Defendants. | |

# TABLE OF CONTENTS

Page

INTRODUCTION .............................................................................................. 1

ARGUMENT ..................................................................................................... 1

I.     THE STANDARD OF REVIEW IS CLEAR ERROR. ........................................... 1

II.    MAGISTRATE SCHULTZ WAS CORRECT IN FINDING THAT THE COPYRIGHT ACT DOES NOT PROVIDE A STATUTORY JURY RIGHT FOR DISGORGEMENT, A FINDING WHICH FICO DOES NOT OPPOSE. ................................................................................................ 2

III.   THE SEVENTH AMENDMENT ALSO DOES NOT PROVIDE A JURY RIGHT FOR DISGORGEMENT IN THIS CASE. ................................................. 3

    A.    FICO's Objection Ignores the Two-Step Inquiry that Governs. ................... 3

    B.    The First Step is Inconclusive Because Litigants Brought Copyright Claims at Law and in Equity Circa 1791. ..................................................... 3

    C.    The Second Step Demonstrates that FICO's Disgorgement Claim is Equitable. ................................................................................................... 5

        1.    Copyright disgorgement was an equitable remedy in 1791. .............. 5

        2.    Copyright disgorgement is based on the equitable principle of unjust enrichment; it is not a form of punitive damages as FICO claims. ................................................................................... 7

        3.    Disgorgement is considered an equitable remedy in other analogous areas of intellectual property law. .................................... 9

    D.    The relevant "functional considerations" also favor reserving the hypothetical disgorgement calculation in this case for the Court. ............. 10

CONCLUSION ............................................................................................... 12

**INTRODUCTION**

Magistrate Schultz determined that § 504(b) of the Copyright Act does not provide a statutory jury right for disgorgement in this case. In fact, the U.S. Supreme Court recognized that § 504 makes no mention of a right to a jury trial. FICO does not challenge this conclusion. FICO concedes that the only question is whether the Seventh Amendment guarantees FICO the right to a jury trial on this remedy. It does not. As the Magistrate determined, copyright disgorgement was an equitable remedy in 1791. FICO failed to present any evidence to the contrary. Thus, FICO failed to meet the U.S. Supreme Court's analysis of the right to a jury under the Seventh Amendment.

Finally, the Magistrate determined that beyond the historical analysis, the type of disgorgement FICO seeks is based upon the equitable principle of unjust enrichment. FICO offered no case law to support its argument that the disgorgement it seeks is not equitable, but instead serves a punitive purpose. This Court should affirm the Magistrate's Order.

**ARGUMENT**

**I.     THE STANDARD OF REVIEW IS CLEAR ERROR.**

The proper standard of review is clear error, not de novo review as FICO contends. The Magistrate found that a motion to strike a jury demand is a "pretrial matter" under 28 U.S.C. § 636(b)(1)(A) and, correspondingly, a "non-dispositive" motion under Rule 72(a). FICO has identified no authority contradicting the case law the Magistrate cited on this point. (Dkt. 588 at 5-6.) Accordingly, this Court should apply an "'extremely deferential'" standard of review and only overrule if the evidence leaves the

Court with a "'definite and firm conviction that a mistake has been committed.'" *United States ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc.*, No. 13-CV-3003, 2019 WL 3245003, at *2 (D. Minn. July 19, 2019).

## II.    MAGISTRATE SCHULTZ WAS CORRECT IN FINDING THAT THE COPYRIGHT ACT DOES NOT PROVIDE A STATUTORY JURY RIGHT FOR DISGORGEMENT, A FINDING WHICH FICO DOES NOT OPPOSE.

FICO concedes that § 504(b) of the Copyright Act does not provide a statutory jury right for disgorgement by failing to respond to this portion of the Order. In any event, the Magistrate is correct: there is no mention of a jury right in either § 501 of the Copyright Act, authorizing infringement actions, nor in § 504, describing the remedies available in such actions. The Supreme Court recognized as much in *Feltner v.Columbia Pictures Television*, when it stated that § 504 "make[s] no mention of a right to a jury trial or, for that matter, to juries at all." 523 U.S. 340, 346 (1998). In fact, the legislative history of § 504 indicates that its drafters believed the disgorgement calculation under this section would be done by "the court." H.R. 94-1476, 1976 U.S.C.C.A.N. 5659, 5777, 1976 WL 14045, at *161. FICO has been unable to identify any authority indicating that Congress, in enacting § 504(b), intended to upset the long-standing understanding that this type of disgorgement was for courts to adjudicate, not juries. Therefore, as the Magistrate recognized, the resolution of this motion "turns on whether the Seventh Amendment guarantees FICO the right to a jury trial." (Dkt. 588 at 10.)

2

III.   **THE SEVENTH AMENDMENT ALSO DOES NOT PROVIDE A JURY RIGHT FOR DISGORGEMENT IN THIS CASE.**

    A.   **FICO's Objection Ignores the Two-Step Inquiry that Governs.**

The U.S. Supreme Court has established a two-step process to determine Seventh Amendment jury-right questions. Under this test, courts examine the jury right as it "'existed under the English common law when the Amendment was adopted'" because the Amendment only "preserved" the right. *Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am.*, 895 F.3d 1304, 1319 (Fed. Cir. 2018). The court "first asks if the 'cause of action' was tried at law in 1791 or is 'analogous to one that was.'" *Id.* Second, the court "asks if the particular 'trial decision'—such as the 'remedy' determination after finding 'liability'—must be decided by the jury in order to preserve the jury-trial right on the cause of action as it existed in 1791." *Id.* at 1319-1320. While both historical analyses are important, "characterizing the relief sought is 'more important.'" *Tull v. United States*, 481 U.S. 412, 421 (1987).

    B.   **The First Step is Inconclusive Because Litigants Brought Copyright Claims at Law and in Equity Circa 1791.**

The Magistrate determined that this first step favors FICO, but a deeper historical analysis reveals that this step favors Federal, if anyone. There is no need for the Court to search for an analogous cause of action here because a claim for copyright infringement was well-established in England by 1791. It is true that copyright claims could be brought as actions at law. *Feltner*, 523 U.S. at 349. But the historical record reflects that copyright holders could bring infringement claims in equity as well.

3

In fact, the vast majority of infringement cases were adjudicated in equity, rather than at law. Tomás Gómez-Arostegui, *What History Teaches Us about Copyright Injunctions and the Inadequate-Remedy-at-Law Requirement*, 81 S. Cal. L. Rev. 1197, 1250 (2008) (reviewing over 220 infringement cases before 1800 and concluding that the "common-law courts played no significant remedial role"). The very first lawsuit filed under the 1710 Copyright Act was brought in equity, not at law. Tomás Gómez-Arostegui, *The Untold Story of the First Copyright Suit under the Statute of Anne in 1710*, 25 Berkeley Tech. L.J. 1247, 1249 (2010). Copyright holders favored equity because they wanted injunctions, which they could not obtain in a court of law, and after 1737 when disgorgement was first allowed in a copyright suit, litigants often preferred disgorgement to statutory penalties and damages at law. *What History Teaches*, *supra* at 1267–73. This division continues today following the merger of law and equity, with juries determining some issues (damages/penalties) while judges determine others (injunctions/disgorgement). *See, e.g.*, *Soley v. Wasserman*, No. 08 CIV. 9262 KMW FM, 2013 WL 1655989, at *2-3 (S.D.N.Y. Apr. 17, 2013) (striking jury demand on disgorgement remedy); *F.T.C. v. Mazzoni & Son, Inc.*, No. 06-15766, 2007 WL 2413086, at *3 (E.D. Mich. Aug. 14, 2007) (same).

Given that step one cannot conclusively determine the jury right, this Court must move to step two and classify the relief that FICO seeks as equitable or legal.

4

### C. The Second Step Demonstrates that FICO's Disgorgement Claim is Equitable.

#### 1. Copyright disgorgement was an equitable remedy in 1791.

Historical evidence is the most important consideration in classifying the remedy under the second step. *City of Monterey v. Del Monte Dunes at Monterey*, 526 U.S. 687, 718 (1999) ("We determine whether issues are proper for the jury, when possible, 'by using the historical method, much as we do in characterizing the suits and actions within which [the issues] arise.'"); *Texas Advanced*, 895 F.3d at 1320 ("History plays a strong role in the latter inquiry."). The historical record shows that disgorgement in copyright infringement cases was an equitable remedy. FICO has not presented any evidence of a copyright holder seeking disgorgement in a court of law circa 1791.

The historical record is filled with numerous examples of copyright holders seeking disgorgement in equity in an identical fashion to the manner in which FICO seeks it here. *See* Tomás Gómez-Arostegui, *Equitable Infringement Remedies before 1800*, *in* Research Handbook on the History of Copyright Law 195, 220-25. Judges in the Court of Chancery would order a master to take an account of the defendant's "profitts" [*sic*] earned from the sale of the infringing work and would instruct the master to give "all just allowances" to the defendant. *Id.* at 221. The court would then "deduct" these "allowances" from the gross revenues. *Id.*; *see also id.* at 226-27 (showing that accountings focused on gross, minus "Real prime Costs," resulting in "clear profits"). Importantly, historians have found no evidence from this period of litigants ever seeking at law a disgorgement of the kind FICO is seeking. *Id.* at 220.

5

Notably, in 1710, the English Lord Chancellor recognized that there was a difference between monetary relief in a copyright dispute at law versus in equity. In sending a plaintiff to seek damages at law, the Lord Chancellor stated:

> To make the defendant account [in equity] for the proffits of what he has sold, is going too far; for the injury that the plaintiff has susteined ought to be the measure of the damage, & not the proffit, which the defendant has made [*sic*].

*Untold Story, supra* at 1307. In another copyright suit from 1798, the Chancery ordered a plaintiff to file a separate action in the law courts. Notably, when that litigant did so, he sought damages instead of profits, and after obtaining a jury verdict he returned to the Chancery to obtain disgorgement. *Equitable Infringement Remedies*, *supra* at 224-25.

There is no evidence that Congress ever intended to upset this long-standing classification in enacting the various statutory iterations of the Copyright Act in the United States. Indeed, in 1940, the U.S. Supreme Court described the disgorgement remedy under the 1909 Act in similar terms, contrasting it with other, punitive remedies:

> When such an apportionment has been fairly made, the copyright proprietor receives all the profits which have been gained through the use of the infringing material and that is all that the statute authorizes *and equity sanctions.*

*Sheldon v. Metro-Goldwyn Pictures*, 309 U.S. 390, 406 (1940) (emphasis added). This consistent historical understanding of copyright disgorgement is a sufficient basis for the Court to resolve this issue in Federal's favor, because "'where words are employed in a statute which had at the time a well-known meaning at common law . . . they are presumed to have been used in that sense." *Lorillard v. Pons*, 434 U.S. 575, 583 (1978).

2.     **Copyright disgorgement is based on the equitable principle of unjust enrichment; it is not a form of punitive damages as FICO claims.**

Even if an analysis of the principles underlying copyright disgorgement is warranted, it does not favor FICO's position. This is because the type of disgorgement FICO is seeking is based on the equitable principle of unjust enrichment. Contrary to FICO's assertion, there is ample authority supporting the Magistrate's conclusion that "[w]here disgorgement is merely a proxy for damages, it is legal in nature; where it is not, it is purely equitable." (Dkt. 588 at 18.)

Justice Ginsburg's comment on the "protean character" of disgorgement merely reflects the reality that disgorgement is used in many areas of the law and in many different manners, meaning its classification requires a case-specific analysis. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 668 n.1 (2014). As the Justice explicitly noted, however, it was appropriately treated as equitable in *Petrella* where the plaintiff was seeking profits that were not connected in any sense to its actual damages. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, CV-09-72-GW(MANX), 2010 WL 11531222, at *6 (C.D. Cal. Feb. 3, 2010). The Magistrate found that the same is true of FICO's disgorgement claims because the amount FICO seeks "is unrelated to any actual damages FICO suffered." (Dkt. 588 at 13.) An award like this is not meant to compensate, rather it is meant to restore the status quo to prevent a party from being unjustly enriched through the use of another's property. *Sheldon*, 309 U.S. at 405-06.

Congress did not intend for copyright disgorgement to serve a punitive purpose. Congress provided for punitive measures elsewhere in the Act in the form of statutory

penalties, which may be enhanced upon a finding of willfulness and which serve both punitive and compensatory purposes. *Feltner*, 523 U.S. at 352[1]; Tomás Gómez-Arostegui, *What History Teaches Us about US Copyright Law and Statutory Damages*, 5 WIPO Journal, 76, 85 (2013). FICO is wrong to argue that the Copyright Act authorizes such enhancements for disgorgement. *ZZ Top v. Chrysler Corp.*, 70 F. Supp. 2d 1167, 1168 (W.D. Wash. 1999). Furthermore, the legislative history makes no mention of a punitive purpose behind Congress's decision to retain the equitable disgorgement remedy in the statutory scheme. *See* H.R. 94-1476, 1976 WL 14045 at *161 ("Damages are awarded to compensate the copyright owner for losses from the infringement, and profits are awarded to prevent the infringer from unfairly benefiting from a wrongful act.").

FICO has offered no cases holding that copyright disgorgement serves a punitive purpose. Rather, all of FICO's cases classifying relief as punitive deal with other remedies or disgorgement in other contexts. *Tull*, 481 U.S. at 422 (Clean Water Act penalties); *Black & Decker Corp. v. Positec USA Inc.*, 118 F. Supp. 3d 1056, 1063 (N.D. Ill. 2015) (trademark action where plaintiff proposed profits as a measure of its actual damages); *J & J Sports Prods., Inc. v. Orellana*, 08-05468 CW, 2010 WL 1576447, at *3

---

[1] FICO relies on dicta from *Feltner* stating that awards of "actual damages and profits . . . *generally* are thought to constitute legal relief." 523 U.S. at 346 (emphasis added). As the court noted in *Petrella*, however, classifying disgorgement is not susceptible to a general rule; rather, a case specific analysis is required. 572 U.S. at 668 n.1. Further, the only profits case the court cited in *Feltner* was *Dairy Queen*, which the 11th Circuit recently found does not create a blanket rule treating disgorgement as a legal remedy. *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1358 (11th Cir. 2019) ("We do not read *Dairy Queen* as holding that the accounting and disgorgement of profits was a legal remedy…").

(N.D. Cal. Apr. 19, 2010) (statutory penalties for theft of cable television); *Kokesh v. SEC*, 137 S. Ct. 1635, 1644  (2017) (disgorgement for securities violations, which "operates as a penalty"); *Curtis v. Loether*, 415 U.S. 189, 196 (Fair Housing Act violations, which serve as "actual and punitive damages").  Thus, in order to side with FICO and determine that disgorgement in this case is a legal as opposed to an equitable remedy, the Court would have to rely on a series of inapposite cases while rejecting the reasoning of several precedents that are directly on point. *E.g.*, *Petrella*, 572 U.S. at 668 n.1; *Texas Advanced*, 895 F.3d at 1324-1325.[2]

### 3.   Disgorgement is considered an equitable remedy in other analogous areas of intellectual property law.

Contrary to FICO's assertion, disgorgement is considered an equitable remedy in others areas of intellectual property law that are analogous to copyright. (Dkt. 588 at 14-15 (collecting authorities).) As the Federal Circuit recently noted, "[f]or Seventh Amendment purposes, claims for patent, copyright, or trademark infringement are appropriate analogues." *Texas Advanced*, 895 F.3d at 1325.[3] Courts agree that there is no

---

[2] Nor is the Ninth Circuit's decision in *Sid & Marty Krofft TV Prods. v. McDonald's* persuasive. 562 F.2d 1157, 1175 (9th Cir. 1977). The Magistrate was correct in finding that the 19th Century precedent upon which *Sid & Marty* ultimately relies, *Root*, only dealt with the issue of whether a plaintiff could invoke equity jurisdiction based solely on a request for disgorgement under the Patent Act. In holding that a request for disgorgement did not provide an independent jurisdictional basis, however, the court stated that disgorgement remained "the creature of equity." 105 U.S. 189, 215 (1881).

[3] FICO's attempt to distinguish *Texas Advanced* by arguing that it is confined to its facts is not persuasive. (Dkt. 662 at 10.) The Federal Circuit confronted the same situation as the Court does here in *Texas Advanced*: a plaintiff attempting to recover profits as an additional remedy and not as a measure of damages. *Texas Advanced*, 895 F.3d at 1321.

jury right for disgorgement where it has no relation to damages in the context of trademark and trade secret cases. *See, e.g.*, *id.*; *see also Hard Candy*, 921 F.3d at 1359.

FICO also argues that courts have allowed juries to determine the disgorgement remedy under § 289 of the Patent Act for design patent infringements. (Dkt. 588 at 8.) The courts in the only cases FICO relies on for this proposition, however, did not conduct Seventh Amendment inquiries. *See Columbia Sportswear N. Am. v. Seirus Innovative Accessories*, No. 3:17-CV-01781-HZ, 2018 WL 1805101, at *2 (S.D. Cal. Apr. 17, 2018); *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1318 (Fed. Cir. 2013) ("Seventh Amendment issues are immaterial to this inquiry..."); *Ross v. Plastic Playthings, Inc.*, 138 F. Supp. 887, 888 (S.D.N.Y. 1956). Affirming a jury award where the right to a jury was not raised does not instruct this Court where, as here, the existence of the jury right is the question.  Further, it is not at all clear that a jury right exists under § 289. Pamela Samuelson & Mark P. Gergen, *The Disgorgement Remedy of Design Patent Law*, Forthcoming, 108 Calif. L. Rev. __ at 43 (2020) ("the logic of [*Texas Advanced*] suggests that determining the amount of profit to be disgorged is an equitable question for judges to decide" in design patent cases).

> **D.**   **The relevant "functional considerations" also favor reserving the hypothetical disgorgement calculation in this case for the Court.**

Although the Court need not resort to this because the historical record is clear, the Supreme Court has also recognized that courts may consider "functional considerations," such as whether judges are better suited for the task. *City of Monterey*, 526 U.S. at 718. The jury's task will not be "easy" or "straightforward" here as FICO claims; rather, it will

10

likely be impossible given the speculative nature of FICO's disgorgement claim. (Dkt. 662 at 7, 9.) FICO intends to ask the jury to isolate only those profits – if any – that are "attributable to" a minor software component, apart from the innumerable other factors that cause a multinational insurance company to profit from the sale of insurance.

In fact, Congress was faced with a similar dilemma over how complex apportionments had become in utility patent cases and it opted to remove the disgorgement remedy from this section of the Patent Act entirely. *See Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 505-06 (1964). In a committee hearing the American Bar Association stated:

> Now . . . by far the greater number of patents that are in litigation are on special and relatively insignificant parts of complex structures to which the patented feature is so related that it is absolutely impossible to apportion the profits due to the invention, those being the only profits to which the patentee is entitled. **The result is that there is a complete failure of justice in almost every case in which supposed profits are recovered or recoverable.**

Hearing before the Committee on Patents, House of Representatives, 79th Cong., 2d Sess., on H.R. 5231, Jan. 29, 1946, at 3 (emphasis added). If Congress believed that apportionment in utility patent cases had become too complex for either judge or jury by 1946, then there is nothing illogical about the notion that today, in 2019, a jury should not be tasked with apportioning expenses out of a $30.9 billion revenue stream related to a back-end software component used by some employees in a multinational company.

Finally, FICO also argues that the Copyright Act does not authorize "discretion" in calculating disgorgement awards and that this somehow weighs in favor of classifying disgorgement as a legal remedy. The U.S. Supreme Court, however, has explicitly stated

that Courts have discretion to reduce profit awards based on a plaintiff's inequitable conduct. *See Petrella*, 572 U.S. at 668 ("a plaintiff's delay can always be brought to bear at the remedial stage . . . in assessing the 'profits of the infringer ... attributable to the infringement.'"); *see also John G. Danielson v. Winchester-Conant Properties*, 322 F.3d 26, 46 (1st Cir. 2003) (copyright disgorgement is "'ultimately a delicate exercise informed by considerations of fairness and public policy, as well as fact.'"). FICO cites no authority for the proposition that "discretion" is a relevant consideration in assessing jury rights under the Seventh Amendment. Accordingly, this argument fails as well.

## CONCLUSION

A proper application of the two-step inquiry governing Seventh Amendment disputes inexorably leads to the conclusion that FICO does not have a jury right for this remedy.[4] Thus, Federal respectfully requests that the Court affirm the Order.

---

[4] This Court should not empanel an advisory jury either. Empaneling one jury to hear legal issues and another to hear equitable ones would add unnecessary expense and complexity at trial. Further, using one jury to hear both sets of issues would be unfairly prejudicial to Federal because it could mislead the jury into believing that Federal earned billions of dollars from the use of a minor software component. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) ("The disclosure that a company has made $19 billion dollars in revenue . . . cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue.").

Dated:  November 6, 2019

s/ Terrence J. Fleming
_____
Terrence J. Fleming (#0128983)
tfleming@fredlaw.com
Leah C. Janus (#0337365)
ljanus@fredlaw.com
Christopher D. Pham (#0390165)
cpham@fredlaw.com
Christian V. Hokans (#0400377)
chokans@fredlaw.com
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
Telephone:  612.492.7000

*Attorneys for Defendants*