# RECOVERY IN PATENT INFRINGEMENT SUITS

# HEARING

BEFORE THE

## COMMITTEE ON PATENTS

## HOUSE OF REPRESENTATIVES

SEVENTY-NINTH CONGRESS

SECOND SESSION

ON

# H. R. 5231

A BILL TO AMEND REVISED STATUTES, 4921 (U. S. C. A.,
TITLE 35, PATENTS, SEC. 70), PROVIDING THAT
DAMAGES BE ASCERTAINED ON THE BASIS OF
COMPENSATION FOR INFRINGEMENT, AS IN
ACTIONS FOR INFRINGEMENT IN THE
UNITED STATES COURT OF CLAIMS

**(Subsequently amended, reintroduced, and
reported as H. R. 5311)**



JANUARY 29, 1946

Printed for the use of the Committee on Patents



UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1946

82788



## COMMITTEE ON PATENTS

FRANK W. BOYKIN, Alabama, *Chairman*

FRITZ G. LANHAM, Texas
CHARLES A. BUCKLEY, New York
EDWARD J. HART, New Jersey
JOHN S. GIBSON, Georgia
HENRY D. LARCADE, Jr., Louisiana
FRANK E. HOOK, Michigan
HERBERT J. McGLINCHEY, Pennsylvania
LEO F. RAYFIEL, New York
GEORGE H. FALLON, Maryland
CLYDE DOYLE, California
CLEVELAND M. BAILEY, West Virginia

FRED A. HARTLEY, Jr., New Jersey
LESLIE C. ARENDS, Illinois
CHARLES A. WOLVERTON, New Jersey
ROBERT K. HENRY, Wisconsin
GEORGE B. SCHWABE, Oklahoma
HOWARD E. CAMPBELL, Pennsylvania
AUGUSTUS W. BENNET, New York
ROY CLIPPINGER, Illinois

CLATIE ASHLEY, *Clerk*

II

# CONTENTS

|  | Page |
|---|---|
| H. R. 5231, text of bill | 1 |
| H. R. 5311, text of bill | 2 |
| Witnesses: | |
| Hon. Robert K. Henry, a Representative in Congress from the State of Wisconsin | 2, 12, 13 |
| Conder C. Henry, Assistant Commissioner of Patents | 4, 11, 17, 18, 19 |
| George E. Folk, National Association of Manufacturers | 10 |
| Edwin B. H. Tower, Jr., Milwaukee Patent Bar Association | 12, 13 |
| Casper W. Ooms, Commissioner of Patents | 13, 16 |
| Chester L. Davis, American Bar Association, Patent Section | 14 |
| W. F. Weigester, American Patent Law Association | 15 |
| John Stedman, Department of Justice | 15 |

III

# RECOVERY IN PATENT INFRINGEMENT SUITS

## TUESDAY, JANUARY 29, 1946

House of Representatives,
Committee on Patents,
*Washington, D. C.*

The Committee convened at 10:30 a. m., pursuant to notice, in room 416 in the Old House Office Building, the Honorable Frank W. Boykin (chairman) presiding.

Present: Congressmen Boykin, Lanham, Fallon, Bailey, Henry, Schwabe, Campell, Bennett, and Clippinger.

(The bills referred to are as follows:)

[H. R. 5231, 79th Cong., 2d sess.]

A BILL To amend Revised Statutes, 4921 (U. S. C. A., title 35, Patents, sec. 70), providing that damages be ascertained on the basis of compensation for infringement, as in actions for infringement in the United States Court of Claims

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That section 4921 of the Revised Statues of the United States (35 U. S. C. A. 70) is hereby amended to read as follows:

"The several courts vested with jurisdiction of cases arising under the patent laws shall have power to grant injunctions according to the course and principles of courts of equity, to prevent the violation of any right secured by patent, on such terms as the court may deem reasonable; and upon a decree being rendered in any such case for an infringement the complainant shall be entitled to recover general damages which shall be due compensation for making, using, or selling the invention, not les than a reasonable royalty therefor, together with his costs and expenses and interest from the time the infringement began.

"The court is hereby authorized to receive expert or opinion evidence upon which to determine in conjunction with any other evidence in the record, due compensation for making, using, or selling the invention, and such expert or opinion evidence is hereby declared to be competent and admissible subject to the general rules of evidence applicable thereto.

"The courts shall assess said damages, or cause the same to be assessed, under its direction and shall have the same power to increase the assessed damages, in its discretion, as is given to increase the damages found by verdicts in actions in the nature of actions of trespass upon the case; but recovery shall not be had for any infringement committed more than six years prior to the filing of the complaint in the action. And it shall be the duty of the clerks of such courts within one month after the filing of any action, suit, or proceeding arising under the patent laws to give notice thereof in writing to the Commissioner of Patents, setting forth in order so far as known the names and addresses of the litigants, names of the inventors, and the designating number or numbers of the patent or patents upon which the action, suit, or proceeding has been brought, and in the event any other patent or patents be subsequently included in the action, suit, or proceeding by amendment, answer, cross bill, or other pleading, the clerk shall give like notice thereof to the Commissioner of Patents, and within one month after the decision is rendered or a decree issued the clerk of the court shall give notice thereof to the Commissioner of Patents, and it shall be the duty of the Commissioner of Patents on receipt of such notice forthwith to endorse the same upon the file wrapper of the said patent or patents, and to incorporate the

1

2          RECOVERY IN PATENT INFRINGEMENT SUITS

same as a part of the contents of said file or file wrapper; and for each notice required to be furnished to the Commissioner of Patents in compliance herewith a fee of 50 cents shall be taxed by the clerk as costs of suit."

———

[H. R. 5311, 79th Cong., 2d sess.]

A BILL To amend Revised Statutes, 4921 (U. S. C. A., title 35, Patents, sec. 70), providing that damages be ascertained on the basis of compensation for infringement

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That section 4921 of the Revised Statutes of the United States (35 U. S. C. A. 70), is hereby amended to read as follows:

"The several courts vested with jurisdiction of cases arising under the patent laws shall have power to grant injunctions according to the course and principles of courts of equity, to prevent the violation of any right secured by patent, on such terms as the court may deem reasonable; and upon a decree being rendered in any case for an infringement the complainant shall be entitled to recover general damages which shall be due compensation for making, using, or selling the invention, not less than a reasonable royalty therefor, together with his costs and reasonable attorney's fees to be fixed by the court and interest from the time the infringement occurred.

"The court is hereby authorized to receive expert or opinion evidence upon which to determine in conjunction with any other evidence in the record, due compensation for making, using, or selling the invention, and such expert or opinion evidence is hereby declared to be competent and admissible subject to the general rules of evidence applicable thereto.

"The court shall assess said damages, or cause the same to be assessed, under its direction and shall have the same power to increase the assessed damages, in its discretion, as is given to increase the damages found by verdicts in actions in the nature of actions of trespass upon the case; but recovery shall not be had for any infringement committed more than six years prior to the filing of the complaint in the action. And it shall be the duty of the clerks of such courts within one month after the filing of any action, suit, or proceeding arising under the patent laws to give notice thereof in writing to the Commissioner of Patents, setting forth in order so far as known the names and addresses of the litigants, names of the inventors, and the designating number or numbers of the patent or patents upon which the action, suit, or proceeding has been brought, and in the event any other patent or patents be subsequently included in the action, suit, or proceeding by amendment, answer, cross bill, or other pleading, the clerk shall give like notice thereof to the Commissioner of Patents, and within one month after the decision is rendered or a decree issued the clerk of the court shall give notice thereof to the Commissioner of Patents, and it shall be the duty of the Commissioner of Patents on receipt of such notice forthwith to endorse the same upon the file wrapper of the said patent or patents, and to incorporate the same as a part of the contents of said file or file wrapper; and for each noice required to be furnished to the Commissioner of Patents in compliance herewith a fee of 50 cents shall be taxed by the clerk as costs of suit."

This Act shall take effect upon approval and shall apply to pending causes of action in which the taking of the testimony has not been concluded.

The CHAIRMAN. The committee will come to order.
Congressman Henry, you may proceed.

## STATEMENT BY HON. ROBERT K. HENRY, A MEMBER OF CONGRESS FROM THE STATE OF WISCONSIN

Congressman HENRY. Mr. Chairman, this being a rather technical subject, I thought perhaps one of the best ways to lay the picture before you is to read a letter that was addressed to Mr. Howson from Mr. Fish, dated January 4, 1929, which rather completely outlines the problem:

Mr. Huxley writes me that you on behalf of the American Bar Association are considering whether or not the recovery of the profits in patent cases should

be eliminated and the successful patent owner be restricted to the recovery of damages which may or may not be increased in the discretion of the court.

For a long time I have been satisfied that the law should be changed in this regard.

As you know, in the old days patent cases were always tried at law before juries and the patent owner could only recover damages.

In view of the simplicity of the situation in those days this procedure was adequate; but it soon became evident that after all an injunction was the thing which the patent owner needed in order to secure adequate protection.

He could get this injunction only in courts of equity which had no power to award damages.

At first it was the established rule that there should be no injunction in a court of equity unless the patent had previously been sustained at law which meant a duplication of trials.

As conditions developed courts of equity proceeded to try cases first brought in the courts of equity and, to render the duplication of trials unnecessary, adopted the fiction that the infringer was a wrongful trustee and should be held to account for the profits he had made as such wrongful trustee, thus giving the patentee pecuniary redress in the equity court. The right to recover profits as well as damages in an equity case was finally fixed by statute.

This situation worked well enough under the simple conditions characterizing the administration of the patent law in the old days.

Now however it is a complete and absolute failure.

When the practice was established patents were almost always on simple things which were made and sold, and it was possible in such cases to determine the profits wrongfully made by the infringer.

Now, however, by far the greater number of patents that are in litigation are on special and often relatively insignificant parts of complex structures to which the patented feature is so related that it is absolutely impossible to apportion the profits due to the invention, those being the only profits to which the patentee is entitled.

The result is that there is a complete failure of justice in almost every case in which supposed profits are recovered or recoverable.

Absolutely artificial and unsound rules have been invented to solve the impossible problem of how to apportion profits.

The Supreme Court in the Westinghouse-Wagner case made confusion worse confounded. The Court there dealt with a transformer which was permeated with the invention so that the structure as a whole could be considered as the thing upon which profits had been made by the infringer. The Court, having in mind the peculiar facts of the case, held that while the burden was on the plaintiff to apportion profits, if he did all that he could do to solve the problem and was utterly unable to apportion the profits, the burden shifted to the defendant, who was the wrong-doer, and if he was unable to apportion the profits due to the infringement, then the Court said the entire profits on the article were to be awarded.

The conclusion of the Court is utterly inapplicable to the majority of the important patent cases which, as I have said, relate for the most part to special and subsidiary features in a complicated structure.

In the Dowagiac case, the Supreme Court, undoubtedly recognizing that it had not cleared up the situation by the decision in the Westinghouse-Wagner case, introduced a thought that the Court might well determine what was a fair and reasonable compensation to the patentee, on general evidence. This, however, is a matter of damages rather than of profits.

Where, as in many cases, specific damages cannot be proved definitely, the patentee seeks a recovery of profits and at the present time, under the Westinghouse-Wagner doctrine, gets in very many cases enormously more than that to which he is really entitled.

The only solution of the difficulty is to eliminate the recovery of profits which has been allowed purely because of a series of historical accidents.

The only sound principle is to have the plaintiff recover the damages he can prove. This principle should be covered with the grant of power to the Court to increase the damages on the principle laid down in the Dowagiac case if those proved by the plaintiff seem to the Court inadequate.

The situation seems to me absolutely hopeless and I do not think that anything could be accomplished by way of the needed reform.

If you conclude to take the matter up, I should be very glad to help you in any way in my power.

The CHAIRMAN. That is a very interesting letter.

Congressman HENRY. The R. S. 4921, under which the Federal courts are vested with power to grant injunctions to restrain infringements, provides that the profits made from infringements may be recovered, in addition to damages arising from the infringement.

When the court enters a decree finding infringement, the practice is to make reference to a master to take an accounting for the profits derived from the infringement.

The inquiry that then ensues grows into a very intricate prolonged and expensive investigation, in which are included:

(*a*) New issues of infringements on new devices not before the Court for consideration and an accounting thereon, in addition to the accounting of the devices considered by the Court.

(*b*) The apportionment of profits on infringing devices sold in conjunction with noninfringing devices.

(*c*) The apportionment of sales prices of devices sold as a whole and including infringing devices as a part thereof.

Testimony to show a reasonable royalty as a basis for granting damages does not become admissible until a showing is made that profits cannot be ascertained.

Actual damages can only be recovered upon a showing being made that the plaintiff suffered actual loss.

The present bill eliminates an accounting for profits, and makes evidence at once admissible to show reasonable royalty as a basis for general damages.

Mr. LANHAM. Mr. Henry, you introduced on January 24 the bill H. R. 5231, which is a correction of the inaccuracy in the bill H. R. 4143, and I assume we will consider H. R. 5321?

Congressman HENRY. That is right.

Mr. LANHAM. In addition to these friends and distinguished gentlemen from the Patent Office, the Commissioner of Patents, and the Assistant Commissioner, whose advice and suggestions we wish to have on this measure, I am advised that Mr. George Folk, the patent adviser to the National Association of Manufacturers, wishes to testify.

Off the record.

(Discussion off the record.)

Mr. LANHAM. Back on the record.

We will hear first from Mr. Henry, the Assistant Commissioner of Patents.

## STATEMENT OF CONDER C. HENRY, ASSISTANT COMMISSIONER OF PATENTS

Mr. C. HENRY. I am an Assistant Commissioner of Patents, and will be until day after tomorrow, when I retire from the Government service.

In view of the fact I am leaving the Patent Office and of the further fact that what I am about to say has not been cleared with the Bureau of the Budget, or even with the Department with which I am now connected, and also in view of the fact that the Commissioner

RECOVERY IN PATENT INFRINGEMENT SUITS 5

of Patents is here and will speak for the Patent Office, I prefer that what I am about to say be considered as my personal views as a member of the bar.

Mr. LANHAM. May I inquire, Mr. Henry, how long you have been Assistant Commissioner of Patents, and how long you have been connected with the Patent Office?

Mr. C. HENRY. I have been connected with the Patent Office for over 34 years, and I have been an Assistant Commissioner of Patents since February 1941.

Mr. LANHAM. Mr. Henry has been invaluable to us in the consideration of many measures that have come before us, and I think that should be incorporated in the record.

Mr. C. HENRY. Gentlemen, the law is not an exact science. It represents an evolutionary process, but one of its essential characteristics should be that it be made capable of application in such manner as to lead to an approximation of exact justice between parties litigant. For example, a judge should, in my judgment, have a rule of law which can be applied and then he should apply it impartially and free from any preconceived political, social, or economic theories that he may entertain. If he does not do that he is not a judge but a partisan in a high place.

Some of our courts today have departed a long way in their decisions relating to patents from that principle.

As I view this bill, it is designed to provide the courts with a rule of law which is capable of application in infringement suits in a manner in which the present law is not susceptible. It also is a step in the evolutionary process in the development of law in the determination of damages in infringement suits.

If we go back to the beginning of our patent system, the act of 1793, section 5, provided:

That if any person shall make, devise, and use or sell a thing so invented, the exclusive right of which had been secured to any person by patent, without the consent of the patentee * * * the person so offending shall forfeit and pay to the patentee a sum that shall be at least equal to three times the price for which the patentee had usually sold or licensed to other persons the use of said invention.

That was the first act on the subject. In those days the patented articles were simple, and if a patentee did not manufacture the patented invention himself, he usually licensed others to do so, and in the case of willful or innocent infringement, he could recover, according to that act, three times the price for which he usually granted a license.

You will note that, unlike the present law, there was no recovery for profits and there was no injunction.

The next step in the history of the development of the law on this subject was the act of 1836, section 14. That act provided that—

Whenever in an action for damages for making, using, or selling the thing—

patented—

a verdict shall be rendered for the plaintiff, it shall be in the power of the court to render judgment for any sum above the amount found by the verdict as the actual damages sustained by the plaintiff, not exceeding three times the amount thereof.

Here, again, there was no provision for an injunction, and there was a recovery for three times the amount of actual damages, or at least the possibility of making such a recovery.

The next step in the development of the law of this subject was the act of 1870, section 55, which provided that—

All actions, suits, or controversies arising under the patent laws shall be originally cognizable as well in equity as in law by the circuit courts of the United States or any district court, or by the Supreme Court of the District of Columbia—

and—

the court shall have power upon a bill in equity filed by any party aggrieved to grant injunctions according to the course and principles of courts of equity to prevent the violation of any rights secured by patent on such terms as the court may deem reasonable——

Mr. LANHAM. That was the first introduction of the equitable principle?

Mr. C. HENRY. It was. To continue:

And upon a decree being rendered in any such case for an infringement the complainant shall be entitled to recover in addition to the profits to be accounted for by the defendant the damages the complainant has sustained thereby, and the court shall assess the same or cause the same to be assessed under its direction and the court shall have the same power to increase the same in its discretion that are given by this act to increase the damages by verdicts in actions upon the case.

As Mr. Lanham just said, this was the first act which provided for the jurisdiction of equity courts of patent infringement suits and empowered such courts to grant injunctions and to assess profits or to fix profits.

The act which this bill—5321—would amend, is section 4921 of the Revised Statutes as originally enacted. That section is substantially the same as section 55 of the act of 1870. Present section 4921 of the Revised Statutes differs from the prior act in that two subjects have been added. The first is the provision which begins with the words "if on" in the report of the act as it appears in the United States Code, title 35, Patents, at page 3170, in the fifth line, and that addition provides that "the court may, on evidence, receive opinion or expert testimony and use that in adjudging and directing the payment by the defendant to the complainant of a reasonable sum as profits or general damages."

I call that provision to the attention of the committee to emphasize the fact that the law as it now is authorizes the court to assess general damages.

The other addition to the present act begins about the middle of the same page of the code to which I referred, and begins with the words "and it shall be the duty." The reason for that addition was to require the clerks of the courts to notify the Patent Office when suits for infringement are filed and of every order and decree made in any infringement suit. I want to say that the clerks of the court comply with that requirement and when those notices are received by the Office, they are filed in the file wrappers of the cases to which they pertain so that any person examining the record of any patent that has been granted can determine at once whether it has been involved in litigation.

Now, how has this present act been administered and what has been its effect on party litigants?

The relief that a patent owner needs against an infringer to protect his rights in his patent and to compensate him for past infringement is an injunction to prevent future invasion of his right and damages for past infringement. This the law now accords him in addition to the profits made by the infringer which are attributable to the unauthorized use and sale of the infringed invention. It is just at this point, that is, the determination of profits and damages and the manner of proving the same before masters, that difficulties and injustices arise in the adjudication of claims for patent infringements.

Frequently a suit for patent infringement involves the infringement of only an improvement in a complex machine, and it is impossible to apportion profits due to the improvement. In such circumstances the proceedings before masters, which are conducted in accordance with highly technical rules and are always expensive, are often protracted for decades and in many cases result in a complete failure of justice.

I fully agree with Judge Evan A. Evans, senior judge of the Seventh Circuit Court of Appeals, in his speech before the Patent Law Association in Pittsburgh, in 1944, when he said, that the rule holding an infringer liable as a wrongful trustee for the patent owner—

is not workable or practicable and is used by plaintiffs and their counsel to beat and bludgeon a competitor until he, or it, be exterminated. It is not damages that are sought, but the extermination of a competitor.

By making it unnecessary to have proceedings before masters and eliminating the element of profits except as an element of general damages in patent infringement suits and empowering equity courts to assess general damages, the measure represents proposed legislation which in my judgment is long overdue.

I would like to refer to the history of two cases which have arisen under the act as it now stands, and to which Congressman Henry referred.

The first case is *Westinghouse* v. *Wagner*, reported in 225 U. S., 604, decided June 7, 1912. Westinghouse had a patent on a transformer and Wagner infringed. The sole question was the amount of damages to be recovered. The transformers sold by Wagner embodied not only the improvements covered by the patent but also some made by Wagner. The lower court awarded damages of $1 notwithstanding the fact that the master had found that Wagner's profits were $132,000. The reason for this holding was that plaintiff had failed to separate the profits attributable to the improvements covered by its patent from the profits attributable to the improvemens added by Defendant Wagner. The burden is on the plaintiff in such a case to present evidence on which a proper apportionment of the profits may be made.

The Supreme Court, however, said:

The rule as to the burden of proof has, however, been so applied that this statutory right has been often nullified by those infringers who had ingenuity enough to smother the patent with improvements belonging to themselves or to third persons. In such cases, the greater the wrong, the greater the immunity; the greater the number of improvements the greater the difficulty of separating the profits. And if that difficulty could only be converted into an impossibility the

defendant retained all of the gains because the injured patentee could not separate what the guilty infringer had made impossible of separation.

Manifestly, such consequences demonstrate that either the rule or its application is wrong. The rule is sound, for it announces the general proposition that the plaintiff must prove its case and carry the burden imposed by law upon every person seeking to recover money or property from another, But the principle must not be pressed so far as to override others equally important in the administration of justice.

In this case the plaintiff had submitted evidence as to defendant's profits and had demonstrated its right to the whole fund of profits because defendant had inexplicably commingled and confused the parts composing it. In such a case it becomes the duty of defendant to distinguish his own share in the profits or lose it. He is the wrongdoer and if by his own actions he makes it impossible to apportion the profits, he must lose his share in them.

That case simply means this: The Court says that where the infringement is of an improvement in a somewhat complex device, the burden of proof is on the plaintiff to prove the profits made by the infringer which are attributable to the improvement; but if he could not do it, the burden then shifted to the defendant, and if the defendant could not do it, then the complainant is entitled to all of the profits attributed to the device which was sold.

Manifestly, that rule of law is unjust, because today mechanisms and processes are so complex that most patents that we grant are on improvements on something that existed before. I am sure witnesses who will follow me will cite many cases in addition to the one I have just cited, where you could not say how much profits the defendant made out of using an improvement on a complex machine. No one should be able, in my judgment, to capture the profits made on the manufacture of an entire automobile or locomotive, for example, merely because he patented an improvement on either.

The Supreme Court recognized that such principle was unsound in the case *Dowagiac Manufacturing Company* v. *Minnesota Moline Plow Company*, which is reported in 235 U. S. 641, and was decided January 11, 1915.

Dowagiac had a patent covering certain improvements in grain drills. The patent was held by the lower court to be valid and infringed by Minnesota. An injunction was granted and nominal damages awarded after hearing by a master.

The Supreme Court found as follows:

(1) The infringement was not wanton or willful.

(2) The patent was not for a whole new drill but was limited to certain spring pressure means operatively connected with the part of the drill which opens the furrows, guides the seed into them, and then closes the furrows. The drill embodied other complex mechanisms not covered by the patent.

(3) The commercial value of the drills was not entirely attributable to the claimed invention but was due, in substantial degree, to unpatented parts and features.

(4) In such a case the burden was on the plaintiff to show what portion of defendant's profits was attributable to the use of the improvements covered by the patent, and plaintiff's evidence did not justify assessment of substantial damages.

(5) That where damages cannot readily be ascertained, a reasonable royalty may be awarded.

RECOVERY IN PATENT INFRINGEMENT SUITS 9

At this point, gentlemen, I desire to say, and I desire to say it with all the force at my command, if this committee recommends, which I do not believe it will, and Congress adopts any bill that provides for the payment of only a reasonable royalty for an infringement of a patent, whether the infringement is innocent or willful, it would amount to nothing more than a compulsory licensing system. This bill does not do that. For that reason I am in favor of the bill and recommend that it be passed.

This bill retains the power of the courts to grant injunctions, and that is what an inventor needs to prevent future infringement. It retains that provision of the present law.

It also provides for the recovery of general damages "which shall be due compensation for making, using, or selling the invention not less than a reasonable royalty therefor."

What are damages? Damages in a legal sense means the compensation which the law will award for an injury done. Damages in an infringement suit can be proved by any relevant and competent evidence just as they can be proved in an action of tort. This bill, however, does more than that. It provides that the court can increase the damages in its discretion in the same manner as it is given to increase the damages found by verdicts in actions in the nature of actions of trespass upon the case. This, though, is not a new provision, since it is in the present law.

So, it is not only provable damages which the court can award, because the court has the authority to increase the proven damages. Sometimes in actions of tort that is called exemplary damages. If the infringement complained of is wanton or in reckless disregard of complainant's rights, under this bill he may be allowed punitive damages for the infringement, added to the actual damages sustained, sufficient to punish the respondent and to deter others from committing like offenses of infringement.

I feel confident that the courts would adopt that salutary rule in awarding damages and exemplary damages.

Mr. LANHAM. I wonder if in the great majority of cases it is not true that infringement is willful?

Mr. C. HENRY. I do not think anyone could answer that question. I would say this: There may be an honest difference of opinion as to whether a man has the right to infringe. Too many patents are declared invalid, in my judgment. But the mere fact that somebody alleges there is an infringement of his patent does not necessarily mean that the trespasser is willfully and wrongfully infringing. There may be an extravagant claim on the part of the patent owner as to what the patent actually covers.

Mr. LANHAM. If he were infringing and if he were an innocent infringer, he would be protected by the assessment of not more than reasonable royalties; is that correct?

Mr. C. HENRY. No, sir. General damages, not less than reasonable royalties, and an injunction.

I think that the rule that I have outlined and which I hope the courts will follow, would be only in those cases where there is no question about the validity of the patent and there is willful infringement with the deliberate attempt of capturing the market which has been established under the patent. I think the court would

be fully justified in assessing exemplary damages in a case of that kind.

Mr. LANHAM. And the innocent infringer would be duly protected.

Mr. C. HENRY. I doubt if any court would adopt that rule in case there is any serious doubt about the validity of the patent or of the right to infringe.

Mr. CAMPBELL. If we pass this, then it should act as a deterrent to willful violation?

Mr. C. HENRY. It provides for nothing more than the law does now in the respects mentioned. The injunction feature and the right to impose exemplary damages in the law today. The only thing that this bill essentially does is to provide for general damages and to omit mention of the right and the duty of the court to fix profits in cases where profits cannot be fixed. It would enable a patent owner to go into court and not say anything about profits.

The CHAIRMAN. You mean under this bill?

Mr. C. HENRY. Yes, sir. It gives the court the right to hear proof and fix his general damages right then and there, not less than a reasonable royalty. It would greatly simplify procedure in that respect. However, I am not one who believes that this bill would prevent proceedings before masters where profits are claimed as an element of general damages.

The CHAIRMAN. It is a terrible thing for a man to go to all of that expense to make a man pay him only general damages, not less than a reasonable royalty. He ought to have his royalty and all kinds of damages.

Mr. C. HENRY. I agree with the Chairman, and I think this bill would greatly simplify procedure. It would at least enable the patent owner to have his case tried by a court without having an accounting before a master.

There are two suggestions I would like to make in regard to amendments of the bill and then I will have finished.

(1) On page 1, line 3, the word "section" is misspelled.

(2) On page 2, line 6, it is provided there that the court may award due compensation together with his costs and expenses. I think the word "expenses" leaves the field too wide open, and that it should be "reasonable attorneys fees to be fixed by the court."

The CHAIRMAN. What do you think of that, Congressman Henry?

Congressman HENRY. That is all right.

The CHAIRMAN. How are you going to do that?

Mr. C. HENRY. Just cancel the word "expenses" and insert the suggested amendment. That finishes my testimony unless there are further questions.

The CHAIRMAN. That is very good and I agree with you. Mr. George Folk?

## STATEMENT OF GEORGE E. FOLK, PATENT ADVISER TO THE NATIONAL ASSOCIATION OF MANUFACTURERS

Mr. FOLK. My name is George E. Folk. Since my retirement from the active practice of law I have during the last 7 years been patent adviser to the National Association of Manufacturers.

During that period the committee on patents of that association has been very active in studying methods of reforming the patent system to overcome certain of the recognized defects in the system. One of the things they have recognized is the fact that the patent litigation is unduly expensive and one of the principal reasons for that is the delay and cost of accounting proceedings.

While the committee has taken no formal action on this bill, I have been asked by the chairman of the committee, Mr. Dearborn, to appear as favoring the bill, at least in principle. I am quite sure that a bill along this line is a move in the right direction and will ultimately meet the approval of the National Association of Manufacturers.

I have listened to Mr. Henry's statement and Congressman Henry's statement, and I find there is very little that I can add to what they have said. They have stated the problem, stated it clearly, and I think we all realize that something should be done.

Mr. LANHAM. From the standpoint of verbiage and phraseology, have you any suggestion to make?

Mr. FOLK. Mr. Henry has already made the suggestion as to expenses. I was confused about general damages and due compensation. I have not given the bill sufficient study to see exactly what that means. What we are after, of course, is that in a case of this kind the plaintiff shall recover full and adequate compensation for the unlawful manufacture, use, and sale of inventions. If that is clear, and made clear, that is what we want, and nothing more. Otherwise, it seems to me that the bill takes care of the situation fairly, and I am satisfied it will meet with the approval of the National Association of Manufacturers.

If you wish, possibly we may have some statement to make in addition to this after it is given more careful study. My attention was called to this bill only last Saturday and I have not had time to give it very careful attention.

Mr. C. HENRY. May I interpose a remark, Mr. Chairman?

The CHAIRMAN. Yes.

Mr. C. HENRY. Apropos of Mr. Folk's remark about compensation, I anticipated that that question would come up, and for that reason I tried to read into the record awhile ago a statement of what damages really are. Damages, in a legal sense, means the compensation which the law will award for an injury done. Whoever wrote the bill did it cleverly, because it pins right down to the point that the compensation shall be, for what? For making, using, or selling the invention. The author of the bill made the words "damages" and "compensation" almost synonymous—that the damages will be the compensation for infringing the rights inherent in the patent itself. That is what the bill is concerned with, in my judgment.

Mr. LANHAM. How could that be stated more clearly than it is on page 2 beginning with line 3—

shall be entitled to recover general damages which shall be due compensation for making, using, or selling the invention.

I do not see how it could be made any clearer.

Mr. FOLK. What I was concerned with was to be sure it was full and adequate compensation and not merely a reasonable royalty. I do not think it means that.

Mr. LANHAM. I hope you will submit a brief to the committee on the subject.

Mr. FOLK. I am exceedingly busy for various reasons. I will see what I can do.

Mr. LANHAM. Off the record.

(Discussion off the record.)

The CHAIRMAN. Back on the record.

Our next witness is Mr. Edwin B. H. Tower, Jr. Mr. Tower?

## STATEMENT OF EDWIN B. H. TOWER, JR., REPRESENTING THE LEGISLATIVE COMMITTEE OF THE MILWAUKEE PATENT BAR ASSOCIATION

Mr. TOWER. I am a member of the bar and have given considerable study to the subject of accounting and have been in various accounting cases.

I represent the legislative committee of the Milwaukee Patent Bar Association at this hearing.

I am thoroughly in favor of the bill because I think it is a step in the right direction towards simplifying the proceedings in obtaining just compensation to the patentee for infringement. The great evil that has grown up in the patent system in accounting is the apportionment of damages and the apportionment of profits that comes from the devices of a complex nature.

An automobile, we will say, has a clutch on it. The clutch is simply the invention on which the recovery is to be had, but still there is an attempt to obtain a recovery upon the entire machine. Now, to do that, you have to find some basis of apportioning the sales price. An automobile is sold at a lump price and the price has to be apportioned down to find out the selling price of the clutch before you can get out what would be the profit of the clutch. So those proceedings take a very long time and run into great expense.

Then, another thing: After the case goes to the master for an accounting, it is entirely out of the control of the court. In other words, the court lets the master take control of the case and the master has to go on and find out what is infringement and what is not. Of course, motions can be made to the court, but the court usually lets the master go ahead and take accountings upon any devices that may be developed after injunction has been granted and the master has the burden of determining long after the decision is rendered what would be an infringment of the patent as it was originally construed by the court.

In view of those difficulties that arise after the case gets to the master, I am thoroughly in favor of this Bill, as I think it will give a proceeding under which the Court will be more inclined to keep control of the accounting, and will give the court of appeals authority to have more direction over the district court in taking the accounting. In other words, the court of appeals can lay down rules for the district court to follow in taking the accounting. As it is, the appellant court and the district court are not bound by the law which says that the patentee shall have the right to an accounting for the profits made by the infringement.

Congressman HENRY. Could I ask a question?

The CHAIRMAN. Yes.

Congressman HENRY. Mr. Tower, will you describe to us how long some of these cases have been known to continue?

Mr. TOWER. I think everyone here probably knows that many of these run from 10 to 20 years. I have been in some that run as high as 10 years, and others I have known have gone on for 20 years. Some now are running that have been running 20 years and all the people that started in the accounting are dead.

Mr. LANHAM. In point of time, to what extent would that be obviated by the enactment of this bill?

Mr. TOWER. I think, in the first place, it would be conducive to immediate settlement in the case, because you could go right in and show what would be a reasonable royalty. That starts you on a basis for a settlement. Then if there are special damages to which you are entitled you can go in and show the special circumstances attending the case which would entitle you to an increase on some basis. Then, finally comes the exemplary damages.

Mr. LANHAM. But there would be a quick determination?

Mr. TOWER. Yes. It would be a step in that direction and would probably lead to further amendments which would further shorten the accounting. Under the present system you cannot shorten it. In the end, the extent usually exceeds the amount of the recovery.

The CHAIRMAN. Commissioner Ooms, we would like to hear from you.

## STATEMENT OF CASPER W. OOMS, PATENT COMMISSIONER

Mr. OOMS. My name is Casper W. Ooms. I am Commissioner of Patents. Since 1927 I have been occupied practically all of the time with problems of patent litigation; first, for 2½ years as law clerk to the senior judge of the United States Circuit Court of Appeals for the Seventh Circuit which includes the States of Wisconsin, Illinois, and Indiana where there is the most patent litigation in the country, except for the circuit including the State of New York.

From 1930 on I have been occupied as a patent attorney in the trial of patent cases.

What I would like to provide this committee with before it reports is a list of probably a dozen or twenty patent cases showing how long some of them have taken. I was unable to compile that because of the pressure of other things, and I do not have all the records accessible here. But I can point this morning to one with which I was engaged when I first began to practice more than 10 years ago, the case of *Activated Sludge* v. *The Sanitary District of the City of Chicago*, which the New York Times of this morning reports has just resulted in an award of $951,000. That suit was filed in 1924. If an appeal is taken the case can run an additional 2 or 3 years.

There are other cases with which I am familiar which have varying periods of life and I will just name a few of them at the moment: *Zenith* v. *Stromberg Carburetor*, which, when I was with the circuit of appeals around 1930, was still running. It arose out of carburetors made for the first airplanes in the First World War; the case of *Fairbanks-Morse* v. *American Valve and Meter*, which went many years. Many of these cases not only go through a protracted account-

ing, but if there is any error in the application of the principle, may frequently, upon review in the court of appeals, go back to the district court for a new trial upon the principles announced in the appeal. The result has been that because of some obscurity in the applicable principles, which this statute will largely eliminate, and because of the emphasis in the statute as it is now written upon the availability of profits as a measure of damages, we have had these protracted accountings.

I would like to insert the clipping from The New York Times at this place in the record.

I think it is one of the sorest spots in the enforcement of the law in the United States. It should be rectified and this bill will do a great deal toward eliminating, I think, one of the most notorious cases of the denial of justice because of the delay of justice.

Mr. LANHAM. Do you have any amendment to recommend in the verbiage or phraseology?

Mr. OOMS. I have none, but I will give the bill further study and if I have any I will submit them.

Mr. LANHAM. You are in accord with the suggestion which has been recommended with reference to the word "expenses"?

Mr. OOMS. Yes, sir; I am. The allowance of expense in litigation I do not think is found anywhere.

If I may provide a statement later to be provided for the record, I shall do so.

Mr. LANHAM. I move favorable report of the bill with the typographical amendment, spelling properly the word "section" and the amendment on page 2 which Mr. Henry recommends.

Mr. SCHWABE. I second the motion.

The CHAIRMAN. You have heard the motion and the second. All in favor say "Aye"; opposed, "No".

(The motion was unanimously carried.)

Mr. LANHAM. May I suggest that a reasonable time be afforded for those who may wish to supplement the record with statements and that upon the printing of the hearings and the report of the bill that it be placed on the unanimous consent calendar?

The CHAIRMAN. Without objection, so ordered.

## STATEMENT OF CHESTER L. DAVIS, CHAIRMAN OF THE COMMITTEE ON LEGISLATION FOR THE PATENT SECTION OF AMERICAN BAR ASSOCIATION

Mr. DAVIS. My name is Chester L. Davis, chairman of the committee on legislation for the patent section of the American Bar Association.

The American Bar Association, as a body, has not had an opportunity to pass on the particular bill before the committee this morning, but we have in the past taken action on similar type of legislation. I was very pleased to see Congressman Henry start the hearing this morning by reading a letter from Mr. Fish to Mr. Howson, two very capable members of the Patent Bar as of the time the letter as written, and both very active in the American Bar Association.

I find that in 1930, presumably as a result of Mr. Fish's action and his letter to Mr. Howson, the American Bar Association did approve legislation, the effect of which is substantially the same, in my opinion, as that set out by the present bill.

My notes indicate, however, that they did this by suggesting the addition of a short paragraph to the section of the Code to which we had been giving our attention. I will read the language of that paragraph which was approved by the American Bar Association in 1930.

To amend section 4921 R. S., U. S. C., title 35, section 70, by the addition of the following words: "If in any case arising under this section the court shall find that the damages or profits or both as approved are either inadequate or excessive as compensation to the complainant on account of the infringement, the court may in its discretion decree the payment of such sums as the court shall find to be just according to the circumstances of the case, such sum to constitute compensation and not a penalty."

Mr. LANHAM. Do you not think this bill is that, in effect?

Mr. DAVIS. In my opinion, the language of the paragraph and the language of the bill are both seeking the same result. I cannot speak for the association that we approve.

Mr. LANHAM. The paragraph you read was approved by the American Bar Association?

Mr. DAVIS. Yes. In the absence of making a further study, I am inclined to believe it was what was in the mind of Mr. Fish at the time he wrote Mr. Howson.

### STATEMENT OF W. F. WEIGESTER, REPRESENTING THE AMERICAN PATENT LAW ASSOCIATION

Mr. WEIGESTER. The American Patent Law Association would like to have the opportunity to file a statement.

### STATEMENT OF JOHN STEDMAN, REPRESENTING THE DEPARTMENT OF JUSTICE

Mr. STEDMAN. We have prepared a report on the bill which has not yet come out of the Bureau of Budget.

The CHAIRMAN. We have been trying to get it.

Mr. STEDMAN. We have been trying, too.

In the report we support the bill generally with three or four modifications. One modification, in the light of the discussion this morning, may be open to some discussion. That is the suggestion that the recovery of damages be based upon reasonable royalties. The other suggestions you will probably find are noncontroversial.

I did not come up prepared to speak on the bill in view of the fact that our report has not cleared the Bureau of Budget, but I wish to call your attention to the fact that that report will be along.

Mr. LANHAM. In your individual judgment, Mr. Stedman, with the amendment that has been placed in this bill, do you not think that it meets the suggestions and recommendations that have been made through the Department of Justice?

Mr. STEDMAN. Not entirely.

Would you care for me to state briefly what changes we have in mind?

Mr. LANHAM. Yes, I think it would be well.

Mr. STEDMAN. The specific suggestions that we have for changes in phraseology are as follows:

To strike from the title of the bill the words "as in actions for infringement in the United States Court of Claims". The reason for this suggestion is that the Court of Claims uses different phraseology in stating what shall be the amount of recovery. There are certain exceptions to recovery in the Court of Claims, and it would seem that this language in the title of the bill is unnecessary and might have some unfortunate effects. It might affect recovery in the Court of Claims which, I take it, this bill is not intended to do, or conversely, affect recovery in the district court.

Mr. LANHAM. It seems to me that there is some basis for that contention.

What is the judgment of the Patent Office on that?

Mr. OOMS. I do not know what that title came from. There is quite a difference in the procedures applicable respectively in the Court of Claims and the district courts. I do think that unless there is something in the Federal law respecting the titles of legislation that requires that clause in there it should be eliminated.

Mr. LANHAM. Mr. Chairman, I move that we strike out "as in actions for infringement in the United States Court of Claims."

Mr. SCHWABE. I second the motion.

The CHAIRMAN. Gentlemen, you have heard the motion and the second. All in favor of striking say "aye"; opposed, "no."

(The motion was unanimously carried.)

Mr. STEDMAN. If it is not obvious from what I have already said, I wish to emphasize that my statements here have not been cleared with the Bureau of the Budget, and I have no knowledge as to their relationship to the program of the President.

Secondly, in line 5 on page 2—that would be line 2 of page 2 of the new bill—we recommend striking the word "such." The reason for this is that if the word "such" is left in there the section may be subject to the construction that there can be no recovery for damages unless there is also an injunction.

Mr. SCHWABE. I think it strengthens the bill to eliminate that word. I so move.

Mr. LANHAM. What is the reaction of the Patent Office?

Mr. OOMS. I think it would be an improvement.

Mr. LANHAM. I second Mr. Schwabe's motion.

The CHAIRMAN. All in favor say "aye"; opposed, "no."

(The motion was unanimously carried.)

Mr. STEDMAN. Thirdly, the bill contains no reference to its effect upon existing causes of action. As I recall, in earlier amendments to R. S. 4921 there were provisions to the effect that they should apply to existing causes of action. I recommend adding at line 22, following the word "action," "and this provision shall apply to existing causes of action." That is the same language that was used in earlier amendments to 4921, and I recommend its inclusion here.

Mr. OOMS. Introducing the addition at the point just suggested might not be read as applying to both paragraphs.

Mr. STEDMAN. I believe you are right. It probably should go at the end of the bill. I just received a copy of the new bill this morning. I was speaking with reference to R. S. 4143.

Mr. LANHAM. What verbiage do you suggest at the end of the bill?

Mr. STEDMAN. "This bill shall take effect upon approval and shall apply to existing causes of action."

Mr. LANHAM. Is there any reason why it should not apply to existing causes of action? Some of those I assume have been tied up in court from almost time immemorial.

Mr. STEDMAN. If it is clear that it would, the language would be unnecessary. As I say, in an earlier amendment to this statute a good many years ago that provision was in.

Mr. LANHAM. I am just wondering if there would be any injustice in pending cases that have been in the courts, we will say, for a number of years, if the procedure under which they have operated was obviated suddenly and this new provision made. I am not sufficiently familiar with the practice to be able to tell that.

Mr. OOMS. As a trial attorney, it would not require any amendment of pleadings. The pleadings are down to skeleton form now and would certainly embrace the remedies provided for in this statute.

Mr. LANHAM. What objection would there be from the standpoint of the litigants, if this provision were added?

Mr. OOMS. None. You will be in the process of passing this bill for at least a couple of months, and anybody just about to go into accounting can very quickly fall into this. This would be a very good time to make it applicable as there is little patent litigation in the accounting stage at this time.

Mr. LANHAM. There is no objection?

Mr. OOMS. I think it would be desirable. It would eliminate a great deal of argument.

Mr. LANHAM. I move its adoption.

Mr. SCHWABE. I second the motion.

The Chairman. All in favor say "Aye"; opposed, "No."

(The motion was unanimously carried.)

Mr. STEDMAN. My final suggestion, which I gather from the testimony this morning may be open to some discussion, would be to strike the word "general" in line 4, page 2, and substitute the words "reasonable royalties as"; leave the word "damages" in and strike "which shall be due compensation".

Mr. C. HENRY. I oppose that suggestion.

Mr. SCHWABE. It would take the teeth out of it.

Mr. STEDMAN. Would you be interested in my reasons?

The CHAIRMAN. Yes.

Mr. STEDMAN. In essence my view on the provision is this: The provision as it now stands, which reads "general damages which shall be due compensation for making, using, or selling the invention, not less than a reasonable royalty therefor" subjects the statute or the bill to the very objections which we are, in part, trying to get away from, namely, uncertainty as to what shall be the measure of damages. I think that in putting recovery on the basis of a reasonable royalty, the bill would achieve a fair compromise between the infringer and the owner of the patent and provide a measure which would not be subject to all sorts of varying court interpretations.

Mr. LANHAM. Would not that provision foment infringement? It seems to me that you would have a great deal more infringement if you limited to a provision of that kind.

Mr. STEDMAN. I agree you want to get away from infringement. On that score, it seems to me there are several things to be said. First, a license is still definitely desirable because the licensee has protection against an injunction; the infringer has not. He is not likely to infringe if he is faced with the danger of an injunction.

Secondly, as far as he knows, the reasonable royalty which may be determined may be more, rather than less, than the amount that he would be able to obtain a license for.

Third, he is faced with the threat of exemplary or punitive damages in the case of willful infringement which certainly is, or should be, a deterrent.

Fourth, the measure of damages based upon reasonable royalties, is one which the courts have very frequently applied in the cases, one which they have tended increasingly to apply——

Mr. C. HENRY (interposing). I do not agree with that.

Mr. STEDMAN. In other words, it has worked in the past.

Mr. LANHAM. On that basis, would it not be an invitation to infringe if the infringer thought he could do it to his profit?

Mr. STEDMAN. It seems to me the threat of punitive damages and the threat of injunction is a good answer to that.

Mr. LANHAM. An injunction would stop him.

Mr. STEDMAN. Yes. If he had a situation where he has investments tied up, a situation of that sort——

The CHAIRMAN (interposing). He has no business investing if it is somebody else's goods.

Mr. STEDMAN. He does not know for sure that he is infringing.

The CHAIRMAN. Let us give him the mischief and put him in jail and hang him like they used to do for stealing horses. I do not agree with you at all. You are trying to help a crook. We want to help the honest man.

Mr. LANHAM. We have done pretty well about Mr. Stedman. We have accepted three of his four amendments.

Mr. STEDMAN. First of all, it must be borne in mind, when you speak of crooks in the field, that they will be adequately taken care of by the punitive damages provisions. The individual who is involved here is more than likely to be a perfectly innocent infringer.

The CHAIRMAN. The court will be easy with him if he is innocent.

Mr. LANHAM. The payment of the royalties would not be a great punishment. We have got to assume that the court would administer this law in accordance with its intent. We do not want to punish an innocent infringer beyond what we should.

Mr. C. HENRY. Mr. Stedman's argument is based, as I understand it, on the ease of fixing reasonable royalties. Let us take an analogous case. John Doe, riding along in his automobile with his family, has a wreck through no fault of his own. He is injured for life and can no longer work. Maybe one of his children is killed and his wife is made an invalid. It would be very easy for a court to say that the only damages that man could recover are damages to his automobile, if that were the law, and any garage mechanic could supply sufficient evidence to assess the damages. But in the case I have supposed the driver of the car is ruined for life. He can no longer work and he has been put to enormous expense. He is entitled to general damages— for his own and his wife's injuries, the loss of his child, damages to his

automobile, expected future earnings, and for things of that kind.   So it is with patents under which a little fellow is manufacturing.  If you have compulsory licensing under this reasonable royalty theory he may be ruined as a manufacturer because of his inability to compete with well intrenched industries.  I do not agree with Mr. Stedman at all.

The CHAIRMAN. Neither do I.

Mr. STEDMAN. I think the analogy to compulsory licensing is a very questionable one.

Mr. C. HENRY. I do not think so.

The CHAIRMAN. You mean the Department of Justice recommends such a thing?

Mr. STEDMAN. I expect it will.

The CHAIRMAN. We have already voted on this and it suits us.

Mr. LANHAM. That defines it:

General damages which shall be due compensation for making, using, or selling the invention, not less than a reasonable royalty therefor.

Mr. STEDMAN. What elements other than a reasonable royalty are contemplated?

The CHAIRMAN. The trouble and time, and everything else in the world.

What do you think about it, Mr. Ooms?

Mr. OOMS. I would recommend the bill as Congressman Henry has written it.

The CHAIRMAN. That is right.

Mr. DAVIS. I would like to say that the American Bar Association specifically in 1932 had under consideration the language "reasonable royalty" as suggested by Mr. Stedman in exactly the same manner.  The association as a body very emphatically refused to adopt that language as amendment to the statute, and they felt at the time that it was tantamount to compulsory licensing.

Mr. SCHWABE. That is the language Mr. Stedman is using?

The CHAIRMAN. Yes.

Mr. STEDMAN. I want to say that there is all the difference in the world between compulsory licensing and this bill.  As long as you have in a bill provisions for exemplary damages and injunction, it is very difficult for me to see how it can be said, merely because it speaks in terms of reasonable royalties that it has any semblance to a compulsory licensing bill.

Mr. C. HENRY. The difference is tweedledee and tweedledum.  You suggested amendments to the bill which would provide that only reasonable royalties could be collected, even in cases of wanton infringement, regardless of any other damages the patent owner might sustain.  How would such an arrangement work out in cases of trespass to realty?  Suppose we had a law that only a reasonable rental could be collected for any such trespass, wouldn't that amount to compulsory leasing of realty?  Is it unreasonable to suppose that a person intending to trespass upon and occupy the realty would first offer to purchase a lease and, upon refusal, proceed to trespass and occupy anyway knowing full well that he wouldn't be out of pocket any more than if his offer had been accepted in the first place?  The right to injunction in cases of patent infringement does not alter the situation because the granting of an injunction is not mandatory.

Mr. STEDMAN. In essence, the reasonable royalty approach is more consistent with the general doctrine of damages in other cases.

Mr. LANHAM. But it is inconsistent with our general patent law.

Mr. STEDMAN. Finally, I want to point out that as a practical matter, it is my understanding that insofar as courts do base recovery on damages rather than profits, in general the recovery is on a reasonable royalty basis. In other words, I doubt very much whether the suggestion I am making is one that will change very substantially the approach which the courts take. What it will do is to remove from infringement cases complicated matters of evidence which the courts eventually treat as irrelevant anyway.

Mr. C. HENRY. Gentlemen, before we close I would like to make the suggestion that this committee reject every compulsory license proposal regardless of how it is hidden or in whatever disguised form it may be submitted to this committee. It has been rejected by every Congress that has considered the matter for the past 20 years, often after voluminous testimony.

The CHAIRMAN. I would not expect it from the Department of Justice in a disguise.

Mr. STEDMAN. Again, I reiterate that this definitely is not an attempt to introduce compulsory licensing, in disguise or otherwise.

The CHAIRMAN. What is your job over at the Department of Justice?

Mr. STEDMAN. Claims Division.

The CHAIRMAN. How long have you practiced law?

Mr. STEDMAN. Since 1934.

The CHAIRMAN. Where did you practice?

Mr. STEDMAN. Madison, Wis., and Minneapolis; most of the time teaching at the University of Wisconsin.

I have one more suggestion here that I would like to make. Would you like this complete language? If you prefer, you can get this language out of the report which I assume will come up.

Mr. LANHAM. Make the suggestion.

The CHAIRMAN. Excuse me. Who is the head of this Division?

Mr. STEDMAN. Mr. John Sonnett.

The CHAIRMAN. Does he agree with all of these things you are saying?

Mr. STEDMAN. I believe so.

The CHAIRMAN. You do not know?

Mr. STEDMAN. He has approved the recommendation.

Returning to the proposed modification in line 4, on page 2, strike the word "general" and insert the words "reasonable royalties as"; then strike the words "which shall be due compensation"; then in line 5, strike the words "not less than a reasonable royalty therefor"; then in line 7, after the word "interest" insert "at such rate as the court may determine"; leaving in the words "from the time"; strike the words "the infringement began", and insert the words "such damages accrue."

On that last point, may I point out that, as I read the bill, it is subject to the interpretation that if one committed infringement, say, for a period of 5 years, the court would take the total amount representing the damages for infringement and allow interest from the date when the infringement first began, notwithstanding that this was an accrual over a period of years.

Mr. Lanham. Would not a court of equity determine that anyway?

The Chairman. Yes.

Mr. Stedman. The language I am suggesting would make it clear that interest would be recovered on the basis of damages as they accrued rather than on the entire sum right from the beginning.

Mr. Campbell. I move that we reject the amendments.

The Chairman. Do we have a second?

Mr. Schwabe. I second the motion.

The Chairman. All in favor of rejecting everything Mr. Stedman has said with reference to the last amendments, indicate by saying "Aye"; opposed, "No."

(The motion was unanimously carried.)

(Whereupon, at 12:15 p. m., the committee adjourned.)

×