UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FEDERAL INSURANCE COMPANY,<br>an Indiana corporation, and ACE<br>AMERICAN INSURANCE COMPANY,<br>a Pennsylvania corporation,<br><br>　　　　Defendants. | Court File No.  16-cv-1054 (WMW/DTS)<br><br><br>**MEMORANDUM OF LAW IN<br>SUPPORT OF DEFENDANTS'<br>MOTION FOR PROTECTIVE<br>ORDER** |

Defendants Federal Insurance Company and ACE American Insurance Company (collectively, "Federal") submit this memorandum in support of their motion for a protective order to prevent Plaintiff Fair Isaac Corporation's ("FICO") disclosure of confidential, proprietary information to its third-party consulting expert.

## INTRODUCTION

During discovery, FICO never sought the production of the software code for Federal's business rules and internal insurance applications.  On May 2, 2019, FICO, for the very first time and over a month after the close of discovery, requested Federal produce the software code.  Before the Court, in response to Federal's confidentiality concerns in producing the software code, FICO represented that it would be able to use the files internally at Merchant & Gould without referencing the involvement of other FICO personnel or third parties.  The Court ordered the production on June 4, 2019.  The

1

files were produced and designated Attorneys' Eyes Only given their highly sensitive, proprietary nature.

On January 16, 2020, FICO notified Federal of its intent to disclose the confidential business rules code to a third-party consultant named Brian Sacco who is a software developer. As Federal has stated all along, the rules code is perhaps the most confidential, commercially and competitively sensitive information in this case. Federal objects to the further disclosure of the rules code and other confidential information related to Federal's proprietary business rules and applications.

The Court should issue a protective order prohibiting the disclosure for two reasons. First, as stated, the disclosure concerns Federal's competitive and commercially sensitive information that is protected by the Federal Rules of Civil Procedure. Second, the disclosure to a consulting expert will serve no purpose because expert discovery is closed, and FICO may not use the opinions of its consulting expert to educate or alter the opinions of its testifying experts or other witnesses. For these reasons, the Court should prohibit disclosure or, at a minimum, the disclosure should be regulated by the Court by requiring a Federal representative be present for any such disclosure and placing certain restrictions on the time and place of the disclosure.

## BACKGROUND

I.   **THE SUBJECT OF THIS MOTION: FEDERAL'S CONFIDENIAL, PROPRIETARY BUSINESS RULES AND APPLICATIONS.**

Federal seeks to protect proprietary and commercially sensitive information related to its business rules and its internal applications that utilize those business rules.

### A. Federal's Business Rules.

FICO's Blaze Advisor, the software at issue in this litigation, is a business rules management system. (Dkt. 441, ¶ 2.) A business rules management system executes automated decisions based on rules that are drafted by the user of the system. (McCarter Rep.[1], ¶ 70.) These are called "business rules." (*Id.*) Federal alone drafted the business rules in this case and the quality of Federal's business rules is derived from the knowledge and expertise of Federal employees who draft the rules. (*Id.* at ¶ 23.) Those business rules are then integrated into Blaze Advisor. (*Id.* at ¶¶ 72, 75.)

The business rules span a variety of business activities, including pricing and policy decisions, approval or denial of a given insurance policy, and complying with state and federal regulations. (*Id.* at ¶¶ 45-49.)

Access to Federal's internal rules would provide a significant competitive advantage to competing insurance companies who develop their own internal business rules. (Dkt. 310, 20:4-12.) The business rules provide insight into Federal's pricing and policy decisions, approval and denial of policies based on specific criteria, and the terms of its policies, among other things. (McCarter Rep., ¶¶ 46-48.) A competitor seeing the rules Federal wrote could see how Federal routes certain underwriting assignments within its organization and copy that method. FICO serves Federal's competitors, many of whom also use Blaze Advisor software. (Dkt. 310, 20:4-12.) Knowing the rules Federal uses within Blaze allows FICO to gain an advantage over *its* competitors when it assists

---

[1] The Expert Report of William S. McCarter, which is cited to herein as "McCarter Rep.", is attached as Exhibit 2 to the Declaration of Terrence J. Fleming in Support of Defendants' Motion for Summary Judgment dated July 25, 2019. (*See* Dkt. 432.)

its other insurance clients with development of business rules. (*Id.*) Thus, the software code and other documents and information related to Federal's business rules have been designated Attorneys' Eyes Only.

### B. Federal's Internal Applications that Use Blaze.

Federal integrates Blaze Advisor software into some of its internal applications to assist those applications in making automated decisions. (Dkt. 441, ¶ 2.) These applications involve various areas of Federal's business including underwriting, policy renewal, pricing, and regulatory compliance. (McCarter Rep., ¶ 94; Diagram 2.)

## II. AS AN AFTERTHOUGHT, FICO SEEKS PRODUCTION OF THE SOFTWARE CODE UNDERLYING FEDERAL'S APPLICATIONS AND BUSINESS RULES.

During discovery, FICO served overly broad, all-encompassing discovery requests related to Federal's business rules and applications, including the following:

> Specific to each application that uses or used Blaze Advisor software, all documents relating to the business rules of each application.

(Declaration of Christopher Pham, dated February 7, 2020 ("Pham Decl."), Ex. 1; RFP 90.) Federal incurred significant costs responding to FICO's requests. (*See, e.g.*, Dkt. 310 at 4:22-5:3 (explaining review project involving over 100 attorney hours billed and fees in excess of $40,000 to respond to just 15 of FICO's 90 documents requests).)

Discovery closed on March 22, 2019. (Dkt. 205.) During the discovery period, FICO never filed a motion to compel documents responsive to RFP 90 outlined above. Instead, on May 6—over a month after the close of discovery—FICO submitted a letter to the Court seeking production of the software code underlying Federal's business rules

4

and applications. (*See* Dkt. 286.) In later correspondence with the Court, FICO claimed the software code was "important to FICO's proof of a nexus between Federal's revenues and Federal's infringing use of Blaze Advisor." (Dkt. 301.) On May 8, 2019, the Court ordered Federal to determine "whether, when, and how the [software code] can be extracted and produced and at what cost." (Dkt. 288.) In response, Federal proposed two options, one of which was producing the Structured Rules Language ("SRL") code for each ruleset. (Dkt. 299.) The SRL code, Federal explained, is "highly-confidential and commercially and competitively sensitive information." (*Id.*)

On June 4, 2019, the Court held a teleconference to address, among other things, FICO's request for the software code. (*See* Dkt. 310.) During the hearing, the Court expressed doubt regarding the relevance of the business rules' contents to FICO's claim:

> I have to confess Ms. Kliebenstein, I'm a little uncertain as to why knowing the content of the rules themselves is truly necessary for connecting the alleged infringement to the revenues. I'm struggling to see it[.]

(Dkt. 310, 8:12-16.) The Court additionally expressed doubt regarding the evidentiary value of the software code given the file sets are unverified. (*Id.* at 11-12.) Given the liberal nature of discovery, the Court ordered the software code produced.

### III. FICO SEEKS TO DISCLOSE THE SOFTWARE CODE TO A THIRD-PARTY CONSULTING EXPERT WHO WAS FIRST DISCLOSED ON JANUARY 16, 2020.

As contemplated during the briefing and argument about the rules, Federal produced the rules designated "Attorneys' Eyes Only" given their confidential nature. During the entire briefing and argument process, FICO never once mentioned that it wished to show Federal's highly sensitive rules to others, even within FICO and certainly

5

not third parties. In fact, at the June 4, 2019 hearing FICO represented that it would be able to use the files internally at Merchant & Gould without referencing the involvement of other FICO personnel or third parties. (Dkt. 310, 9:7-10.) Apparently, that basic underpinning is no longer true.

FICO appears to have sought approval for the third party "expert" only due to Federal's diligence. Federal became concerned about the security measures taken by FICO regarding the rule files. Federal developed these concerns because of comments in a meet and confer conference among the attorneys. (Pham Decl., ¶ 3.) After Federal raised these concerns on November 21, 2019 FICO for the very first time requested Federal to approve a FICO technician having access to Confidential – Attorneys' Eyes Only information so that the technician could assist FICO's counsel with uploading the rules. (*Id.*) Federal declined FICO's request based on confidentiality concerns. (*Id.*)

Notwithstanding FICO's prior representations, FICO now seeks to disclose the software code, and other confidential documents related to Federal's business rules and applications, to a third-party consulting expert. On January 16, 2020, FICO provided written notice of intent to provide documents designated Confidential and Confidential – Attorneys' Eyes Only, including the software code outlined above, to Brian Sacco. (Pham Decl., Ex. 2.) Mr. Sacco had not been previously identified in discovery in this case. (*Id.* at ¶ 4.) FICO's notice attached Mr. Sacco's resume but did not provide any additional information regarding the purpose of the disclosures to Mr. Sacco. (*Id.* at Ex. 2.) According to his resume, Mr. Sacco is a Decision Management Architect and Software Developer. (*Id.*) Mr. Sacco has served as a Rules Architect and Developer,

Systems Analyst, and Lead Architect, and his resume notes having experience with Blaze Advisor software. (*Id.*)

On January 23, 2020, pursuant to Paragraph 8(c) of the Protective Order in this case, Federal provided written objection to the disclosure to Mr. Sacco. (Pham Decl. Ex. 3; Dkt. 44.) The parties thereafter scheduled a meet and confer for January 30. (*Id.* at ¶ 6.)

During the meet and confer, FICO's counsel did not provide further explanation regarding the purpose of the disclosures to Mr. Sacco except to explain that he was retained as a non-testifying, consulting expert by FICO. (*Id.*) Federal's counsel asked whether FICO would be willing to allow a Federal representative or Federal's counsel to be present when Mr. Sacco viewed the confidential rules information. (*Id.*) FICO refused. (*Id.*) Thereafter, Federal notified FICO of its continuing objection to the disclosure and indicated it would be filing the present motion for a protective order. (*Id.* at Ex. 4.)

## ARGUMENT

This Court may issue a protective order upon a showing of good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" including by forbidding or limiting the disclosure. Fed. R. Civ. P. 26(c)(1). The party seeking the protective order has the burden to establish good cause. *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 2006 WL 6607858, at *2 (D. Minn. Sept. 21, 2006).

I.  **THE COURT SHOULD PROHIBIT THE DISCLOSURE.**

Here, good cause exists for at least two reasons. First, the rules information FICO seeks to disclose to its third-party consulting expert is highly sensitive, proprietary information that is protected by the Federal Rules of Civil Procedure. Second, the disclosure of the rules information to FICO's consulting expert serves no purpose—FICO's experts have submitted their expert reports, expert discovery is closed, and FICO's non-testifying consulting expert cannot be used to educate or alter the opinions of FICO's experts or other witnesses.

### A. A Protective Order is Required to Protect Federal's Highly Sensitive, Proprietary Information.

The Court should issue a protective order prohibiting the disclosure of the software code and other confidential information related to the business rules to Mr. Sacco because the Federal Rules protect confidential and commercially sensitive information of the type at issue here. The Federal Rules of Civil Procedure provide for the protection of "trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 26(c)(1)(G). The Court may protect such information by ordering that it "not be revealed or be revealed only in a specified way." *Id.*

The software code and other confidential documents and information related to Federal's business rules and applications is the type of confidential, commercially and competitively sensitive information courts regularly protect. *Hypro, LLC v. Reser*, 2004 WL 2905321, at *6 (D. Minn. Dec. 10, 2004) (granting motion for protective order protecting confidential and proprietary information, including trade secrets, from discovery); *Northbrook Digital, LLC v. Vendio Servs., Inc.*, 625 F. Supp. 2d 728, 743 (D.

Minn. 2008) (granting protective order as to confidential technical information of defendant software company); *Medtronic, Inc. v. Guidant Corp.*, 2001 WL 34784493, at *5 (D. Minn. Dec. 20, 2001) (granting in part motion for protective order to protect Medtronic's trade secrets and research information).  The business rules are internally developed by Federal employees using their knowledge and expertise, not known to the general public, and the rules are valuable to competitors.  (Dkt. 310, 20:4-12; McCarter Rep., ¶¶ 46-48.)   Competitors access to Federal's business rules would provide a significant competitive advantage by providing them with insight into Federal's pricing and policy decisions, approval and denial of policies based on specific criteria, and the terms of its policies, among other things.  (*Id.*)

Indeed, FICO's counsel admits the information is proprietary and confidential.  At the June 4, 2019 hearing FICO's counsel admitted it does not keep client rule information precisely because that information is proprietary and confidential:

> FICO doesn't keep content – FICO doesn't keep its clients' rules internally for a number of different reasons, one of which is confidentiality[.]

(Dkt. 310, 9:11-13.)   The Court should protect Federal's proprietary and confidential information by prohibiting the disclosure to Mr. Sacco which, as outlined below, is further justified because the disclosure to Mr. Sacco will serve no purpose.

### B. Disclosure of Federal's Proprietary Rules to FICO's Consulting Expert Serves No Purpose.

In addition, the Court should issue a protective order because the disclosure of this highly sensitive information would serve no purpose.  Liberal discovery "is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated

9

disputes." *Hypro*, 2004 WL 2905321, at *6 (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984)). "Because of the potential abuse of the discovery rules, courts have broad discretion to decide when a protective order is necessary." *Id.*

Here, the disclosure should be prohibited because it will not assist in the preparation, trial or settlement of the dispute. *Hypro, LLC*, 2004 WL 2905321, at *6. Mr. Sacco's review and analysis of Federal's rules or applications will serve no purpose because Mr. Sacco is not a testifying expert and expert discovery has closed. The parties designated their experts and submitted their expert reports from April to May 2019. (Dkt. 205.) Expert discovery closed on June 28, 2019. (*Id.*) As such, even if Mr. Sacco were to analyze the software code that analysis could not be utilized by FICO's experts or witnesses at trial. *See In re MTBE*, 293 F.R.D. 568, 577 (S.D.N.Y. 2013) (testifying expert may not rely on opinions furnished by consulting expert without waiving privileges generally afforded to consulting experts). Further, as the Court noted at the June 4, 2019 hearing there is significant doubt regarding the evidentiary value of the software code and whether it (or an analysis relying on it) could be used at trial because the file sets are unverified. (Dkt. 310, 11-12.) In addition, the potential harm to Federal, as outlined above, is significant. Given these considerations, the Court should exercise its discretion and prohibit the disclosure to Mr. Sacco.

## II.   IN THE ALTERNATIVE, THE COURT SHOULD PROTECT FEDERAL BY PLACING APPROPRIATE LIMITATIONS ON THE DISCLOSURE.

In the alternative, the Court should exercise its discretion and only permit the disclosure be made at a specified time, location and in the presence of a designated

representative from Federal. The Court has broad discretion to place limitations on the disclosure. Those limitations include time and place restrictions. Fed. R. Civ. P. 26(c)(1)(B); *see also* Fed. R. Civ. P. 26(c)(1)(G) (court may limit disclosure of "trade secret or other confidential research, development, or commercial information not be revealed **or be revealed only in a specified way**[.]") (emphasis added); *Zimmer, Inc. v. Beamalloy Reconstructive Med. Prod., LLC*, 2019 WL 1318094, at *15 (N.D. Ind. Mar. 22, 2019) (limiting consulting expert's access to documents to the extent necessary for the action and only after submitting an agreement to be bound by the protective order and view documents either at the office of counsel or through a secure data room). The Court may also designate who may be present for the disclosure. Fed. R. Civ. P. 26(c)(1)(E). In the event the Court deems the disclosure necessary, the Court should limit the disclosure to occur only in the presence of a Federal representative, for a limited time, and at a designated place to be agreed on by counsel.

In addition, the software code that was produced is unverified, unreliable and potentially inaccurate. (Dkt. 310, 11-12.) Federal, therefore, will be prejudiced if FICO's consulting expert relies on this data to conduct his own analysis and Federal is never able to review, confirm the accuracy of, or challenge that analysis. As such, to the extent the Court allows the disclosure, FICO should be required to produce any output its consulting expert creates using the software code.

## CONCLUSION

For the reasons outlined above, Federal respectfully requests the Court issue a protective order prohibiting the disclosure of any documents designated Confidential or

Confidential – Attorneys' Eyes Only to Brian Sacco.  In the alternative, Federal requests the Court only permit the disclosure of such documents in the presence of a representative designated by the Defendants, for a limited time, and at a designated place to be agreed on by counsel, to ensure the protection of Federal's confidential and proprietary information.  Finally, if the disclosure is permitted, FICO should be required to produce any output its consulting expert creates using the software code or other confidential documents.

Dated:  February 14, 2020          */s Terrence J. Fleming*
                                   Terrence J. Fleming (#0128983)
                                   tfleming@fredlaw.com
                                   Leah Janus (#0337365)
                                   ljanus@fredlaw.com
                                   Christopher D. Pham (#0390165)
                                   cpham@fredlaw.com
                                   **FREDRIKSON & BYRON, P.A.**
                                   200 South Sixth Street, Suite 4000
                                   Minneapolis, MN  55402-1425
                                   (612) 492-7000 (tel.)
                                   (612) 492-7077 (fax)

                                   ***Attorneys for Defendants***