## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation, | ) ) ) | Case No. 16-cv-1054(WMW/DTS) |
| Plaintiff, | ) ) | **Jury Trial Demanded** |
| v. | ) ) | |
| FEDERAL INSURANCE COMPANY, an Indiana corporation and ACE AMERICAN INSURANCE COMPANY a Pennsylvania corporation, | ) ) ) ) | |
| Defendants. | ) ) ) | |

## PLAINTIFF FAIR ISAAC CORPORATION'S OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Plaintiff Fair Isaac Corporation ("FICO") opposes Defendants Federal Insurance Company's and ACE American Insurance Company's motion for a protective order with respect to the disclosure of Confidential and Confidential – Attorneys' Eyes Only (collectively "Confidential Information") information to FICO's consulting Blaze Advisor® expert, Mr. Brian Sacco. Judge Wright has already ruled the Protective Order governing this case "alleviates any confidentiality concerns" for the business rules. Given that Federal offers no basis to conclude Mr. Sacco will intentionally or inadvertently disclose Defendants' Confidential Information, the Motion for a Protective Order should be denied.

Defendants carry the burden of justifying the prohibition on disclosure. Defendants object that the disclosure serves no purpose, which is not true. Defendants'

delays in timely producing the business rules do not foreclose the various ways FICO

may use this information at trial – all of which require FICO (its lawyers and experts) to

have technical assistance in the operation of Blaze Advisor through a consulting expert.[1]

Defendants' objection is designed to deny FICO its full trial preparation regarding the

business rules.  No justification exists to prohibit FICO from working with its chosen

consulting expert to prepare its case.  Defendants' motion for a protective order must be

denied.

I.    **Relevant Facts**

    A.    **Federal uses Blaze Advisor® to automate decision-making in the sale of insurance.**

       Chubb & Son, a division of Federal, licensed Blaze Advisor® in June 2006 to

increase revenue by expanding in the middle market.  (Declaration of Heather J.

Kliebenstein (hereafter "Kliebenstein Decl."), Exhibit 1.)  By licensing Blaze Advisor®,

Chubb & Son automated decision-making in connection with the sale of insurance.  Blaze

Advisor® executes business rules in different distinct situations in connection with the

sale of insurance to, for example, determine whether to quote a risk and at what price.

Additionally, Blaze Advisor® further contributes to the generation of revenue by

enabling the handling of a greater volume of sales and by making faster, more precise,

and more consistent decisions.

---

[1] Defendants rejected FICO's request to have a FICO employee assist in the operation of Blaze Advisor.

**B.     The Court ordered Federal to produce all business rules used by applications using Blaze Advisor®.**

On April 21, 2016, FICO sued Federal for breach of contract and copyright infringement.  (Dkt. 1.)  As part of FICO's copyright damages remedy, FICO seeks to disgorge profits attributable to Defendants' infringing use of Blaze Advisor®.[2]  Related to FICO's burden to prove that Blaze Advisor® contributes to the sale of insurance and thereby to revenue, FICO sought discovery of the business rules—not the source code[3] of Federal's applications—deployed in the Blaze Advisor® applications to further reveal how the Blaze Advisor® applications generate revenue.

Months before the close of discovery, FICO served the following document request on December 28, 2018:

> **REQUEST NO. 90:** Specific to each application that uses or used Blaze Advisor® software, all documents relating to the business rules of each application.

---

[2] (*See* Dkt. 499 at 43-45.); Under § 504(b) of the Copyright Act, FICO's burden of proof is only to prove Federal's gross revenue connected to or related to infringement. *Andreas v. Volkswagen of Am., Inc*., 336 F.3d 789, 799 (8th Cir. 2003).  This District has found a "connection" to mean the infringement "contributes to" profits. *Honeywell Int'l Inc. v. ICM Controls Corp*., No. 11-cv-569, 2017 U.S. Dist. LEXIS 11692, at *12, 15-16 (D. Minn. Jan. 26, 2017) (rejecting more onerous reading of § 504(b)).

[3] Federal's contention that it produced source code is false.  Source code is "[c]ode written by a programmer in a high-level language and readable by people but not computers."  "Source Code," *Your Dictionary*, https://www.yourdictionary.com/source-code (last accessed Feb. 17, 2020).  The very purpose of Blaze Advisor® is to move the business rules from hard coding to a user/business-friendly mechanism to allow non-technical business people to be able to write and/or modify the business rules.  The business rules produced are simply the rules themselves and are not written in a "high-level language."

(Kliebenstein Decl., Exhibit 2.)  When Federal refused to produce the business rules,

FICO moved to compel on April 12, 2019.[4]  (Dkt. 271.)  When Federal still did not

produce the business rules, FICO again moved to compel on May 6, 2019.  (Dkt. 286,

301.)  Contrary to Federal's assertion (Dkt. 706 at 4), FICO sought production of the

business rules and moved to compel that production well before May 6, 2019.  Indeed,

the docket entry Federal cities to support the contention FICO waited until May 6, 2019

to raise the issue begins: "This letter is in *follow up* to the parties' correspondence with

the Court regarding Request for Production of Documents Nos. 89-90 (Dkt. No. 271, 275,

278)."  (Dkt. 286 at 1 (emphasis added).)

On June 4, 2019, the Court granted FICO's motion to compel and ordered

production of the business rules.  (Dkt. 305.)  The Court's Order was affirmed on

October 21, 2019.  (Dkt. 593.)

### C.   Federal finally produced the business rules, as ordered, on December 17, 2019.

Following Judge Wright's affirmance of the June Order to compel the production

of the business rules, Federal produced static printouts of the business rules for Federal's

domestic applications that use Blaze Advisor® on November 19, 2019.  (Kliebenstein

Decl., Exhibit 3.)  This production failed to comply with the Court's ordered method of

---

[4] As detailed in FICO's letter to the Court, Federal repeatedly claimed it would produce the business rules only to miss the production deadlines and then refused to respond to requests on the topic.  (Dkt. 271 at 2.)

production, namely the Blaze Advisor® rules repositories in .xml files and business object models in .jar files.  (Dkt. 305).[5]

Federal finally produced the rules repositories in the format ordered on December 17, 2019—almost one year after FICO served Request No. 90 and well after the close of discovery, expert discovery, and dispositive motion briefing.  (Kliebenstein Decl., Exhibit 4.)  Federal produced the business rules repositories for loading into Blaze Advisor®; it did not produce "source code" as Federal now contends (*see* Dkt. 706 *passim*).

The prejudice to FICO is real.  Defendants continue to challenge the connection between Blaze Advisor® and Defendants' revenue (*see* Dkt. 445 at 32-38), a position directly refuted by the business rules.  Federal admits in its Motion to Compel that Blaze Advisor® automates the following elements of selling insurance:

- Pricing and policy decisions,
- Policy acceptance or denial, and
- Compliance with federal and state regulations.

Indeed, Federal concedes its "internal rules" provide "significant competitive advantage."

---

[5] When FICO informed Federal that it had failed to comply with the Court's Order and had disclosed the business rules in an improper format, Federal accused FICO of improperly disclosing AEO information to individuals not subject to the Protective Order.  (*See* Dkt. 706 at 6.)  In fact, FICO has taken numerous precautions to ensure the business rules are protected—steps beyond those required by the Protective Order.

(Dkt. 706 at 3.)  Identifying the decisions automated by Blaze Advisor further proves that Federal's profits are attributable to infringement.[6]

### D. FICO retained a Blaze Advisor® expert to facilitate the use of Blaze Advisor®, not critique Defendants' business rules.

Following Defendants' disclosure of the business rules, FICO sought permission to use a FICO-employed Blaze Advisor® expert to assist in loading the business rules into Blaze Advisor®.  Defendants' denied FICO's request.  FICO then proceeded to identify and retain a third-party Blaze Advisor® expert, Mr. Brian Sacco.  Mr. Sacco is a Decision Management Architect for the IT consulting firm TechBlue.  (Kliebenstein Decl., Exhibit 5.)  Mr. Sacco has over 20 years of experience analyzing and applying information technologies to solve business challenges.  Specifically, Mr. Sacco has assisted public and private sector entities to utilize decision management solutions, including Blaze Advisor.  Mr. Sacco does not work for a competitor of Defendants.

FICO retained Mr. Sacco as a *non-testifying expert* because of his ability to operate or run Blaze Advisor®.  Analysis of the content of these business rules is irrelevant to his undertaking.  Mr. Sacco's role will be to run the business rules in Blaze Advisor® at the direction of FICO's lawyers and expert(s).

---

[6] Partial analysis of the business rules 1) shows Defendants were operating applications using Blaze Advisor that Defendants failed to disclose and 2) the business rules identify risk characteristics analyzed by each application in the generation of revenue (i.e. the sale of insurance).

### E.     Defendants objected, without reason, to disclosure of information to Mr. Sacco.

Pursuant to the Protective Order in this case, FICO disclosed Mr. Sacco to Defendants on January 16, 2020.  (Kliebenstein Decl., Exhibit 6).  FICO provided Mr. Sacco's CV and executed written assurances.  On January 23, 2020, Defendants' counsel objected to the disclosure of Confidential or Confidential – Attorneys' Eyes Only information to Mr. Sacco.  (Kliebenstein Decl., Exhibit 7.)  Notably, Defendants' objection letter provided no reason to prevent disclosure of information to Mr. Sacco. (*See id.*)  At most, Defendants' objection was that Mr. Sacco was not previously identified in this case, a universal fact of all experts until they are disclosed.

The parties' met and conferred on January 30, 2019.  Again, Defendants offered no reason to believe Mr. Sacco will intentionally or inadvertently disclose any of the information he receives in this case.  Instead, Defendants objected to the disclosure of Mr. Sacco because Defendants will not know how FICO intends to use the information it learns from its work with Mr. Sacco—again, a universal fact regarding work with consulting experts and in compete disregard of the work product doctrine—going so far as to demand that Defendants' counsel be present during FICO's work with Mr. Sacco. To date, Defendants have not raised any concerns that Mr. Sacco will intentionally or inadvertently disclose Confidential Information to Defendants' competitors.

## II.   Legal Standard

"The party seeking to modify the protective order bears the burden of showing good cause for the modification."  *AGA Med. Corp. v. W.L. Gore & Assocs.*, No. 10-3734 (JNE/JSM), 2011 U.S. Dist. LEXIS 160522, at *33 (D. Minn. Dec. 13, 2011) (quoting

*Guzhagin v. State Farm Mut. Auto. Ins. Co.*, NO. CIV. 07-4650 JRT/FLN, 2009 U.S. Dist. LEXIS 8666, 2009 WL 294305 at *2 (D. Minn. Feb. 05, 2009)).  (*See also* Dkt 44 at 10-11, ¶ 8.)  When disclosure of confidential information to a third-party consultant is opposed by the disclosing party, the court will balance the movant's interest in selecting the consultant most beneficial to its case, considering the specific expertise of this consultant and whether other consultants possess similar expertise, against the disclosing party's interest in protecting confidential commercial information from disclosure to competitors.  *AGA Med. Corp.*, 2011 U.S. Dist. LEXIS 160522, at *34 (quoting *BASF Corp. v. United States*, 321 F. Supp.2d 1373, 1378, 28 Ct. Int'l Trade 414, SLIP OP. 2004-27 (Ct. Int'l Trade 2004).  The party opposing the release of information to an expert bears the burden of demonstrating that the confidential information would be useful to its competitors and, of greater significance here, that the expert is in a position that could allow the information to be used by competitors.  *Id.* at 37 (citing *Saso Golf, Inc. v. Nike, Inc*., NO. 08 C 1110, 2009 U.S. Dist. LEXIS 93027, 2009 WL 3242112 (N.D. Ill. Oct. 5, 2009)).

**III.    Federal fails to allege any threat by Mr. Sacco as to the disclosure of the confidential information; the balance of interests favors FICO's disclosure.**

**A.    Federal has not challenged Mr. Sacco's credentials or provided any proper basis to preclude Mr. Sacco from running the business rules in Blaze Advisor®.**

Federal, who carries the burden, has not and cannot argue that Mr. Sacco is "in a position that could allow the information to be used by competitors."  *See id.*  Mr. Sacco is not an insurance actuary or insurance underwriter.  Mr. Sacco's expertise is in the utilization and optimization of Blaze Advisor, not drafting business rules for insurance

companies.  Mr. Sacco does not work with or for any insurance company.  Mr. Sacco has

signed the written assurances required by the Protective Order of this case (Dkt. 44) and

has agreed to be bound by that Order.  Federal has failed to articulate any specific basis to

believe Mr. Sacco will disclose the Confidential Information. Federal's motion must be

denied.

Courts in this district have rejected efforts to preclude disclosure of confidential

information based on "theoretical" dangers of disclosure.  *AGA Med. Corp.*, 2011 U.S.

Dist. LEXIS 160522, at *39-40.  In *AGA Medical Corporation*, the court overruled

objections to disclosure where the proposed expert was "neither currently employed by a

competitor of [objecting party] nor currently retained by a competitor to perform

consulting services."  *Id.* at *40.  Moreover, the court noted that "fear, without more, is

not sufficient to substantiate a risk of competitive injury to [objecting party] that

outweighs [disclosing party's] need for [proposed expert's] services as an expert witness

in this case."  *Id.* at *43 (quoting *Advanced Semiconductor Materials Am. Inc. v. Applied

Materials Inc*., 43 U.S.P.Q.2d 1381, 1384 (N.D. Cal. 1996)).

This case is no different from *AGA Medical Corporation*.  Mr. Sacco is neither

currently employed by a competitor of Defendants nor currently retained by a competitor

to perform consulting services.  At best, Defendants have propounded a "theoretical"

"fear" of potential disclosure without linking the fear to Mr. Sacco or his employment.

Denial of the motion is required.

**B.      The Protective Order and Written Assurances guard against Federal's fictitious concerns of disclosure by Mr. Sacco.**

At the beginning of this litigation, the Court entered a Protective Order to govern the disclosure of confidential and commercially sensitive information to individuals associated with this litigation.  (Dkt. 44.)  Individuals receiving Confidential Information agree to 1) keep the information in a safe and secure place and allow limited access thereto, 2) not copy or use such Information or Discovery Materials except for the purposes of this Action and pursuant to the terms of the Protective Order, 3) return all materials after termination of this Action, and 4) submit him or herself to the jurisdiction of this Court for enforcement of the Protective Order.  (*Id.* at 19-20.)  By signing the Written Assurances, Mr. Sacco has agreed to each of these provisions.

The parties have utilized this Protective Order to protect confidential and commercially sensitive information while allowing information, including financials, pricing guides, and customer contracts, be disclosed to each party's experts.  Judge Wright has already ruled that the Protective Order in this case "**alleviates any confidentiality concerns**" with respect to the business rules.  (Dkt. 593 at 5 (emphasis added).)  Federal's attempts to litigate this matter for the third time is improper.

Protective orders are routinely utilized in federal litigation and allow for the disclosure of commercially sensitive information.  *Dr. Greens, Inc. v. Spectrum Labs., LLC*, No. 12-MC-226-KHV-GLR, 2012 U.S. Dist. LEXIS 106167, at *7-9 (D. Kan. July 31, 2012) (finding "no absolute privilege for trade secrets and similar confidential information" and finding the case's protective order adequate to protect confidentiality

concerns); *PaR Sys. v. iPhoton Sols., LLC*, No. 4:10-CV-393-Y, 2012 U.S. Dist. LEXIS

193663, at *5-6 (N.D. Tex. Apr. 17, 2012) (finding the case's protective order was

sufficient to protect putative trade secrets because it limited disclosure to the instant

litigation and because the party was not without remedy if inadvertent disclosure

occurred.)

> **C.    The business rules are properly the subject of the discovery phase of this litigation.  Evidentiary issues regarding use of the business rules are for a later date and not the appropriate subject matter for protective orders.**

Defendants' arguments that disclosure to Mr. Sacco is improper because it "serves

no purpose" (Dkt. 706 at 8-10) are misinformed.  Federal attempts to portray FICO as

delinquent in undertaking discovery.  (*Id.* at 4-7.)  Nothing could be further from the

truth.  FICO sought production of the business rules well before the close of discovery.

(Kliebenstein Decl., Exhibit 2.)  FICO then repeatedly asked for the business rules before

seeking relief from the Court.  (*See* Dkt. 286.)  After the Court found in FICO's favor,[7] it

then took another six months for Federal to produce the business rules as ordered.

(Kliebenstein Decl., Exhibit 4.)  Federal's production after the close of discovery, expert

discovery, and dispositive motion briefing has severely prejudiced FICO.  Defendants do

not get to stonewall discovery and then reap the benefit.  FICO is entitled to analyze the

---

[7] Federal's contention that FICO's discovery requests were overly broad and unduly burdensome is unfounded as this Court ordered production of the business rules.  (*See* Dkt. 305.)  Moreover, Federal's reference to $40,000 in expense for 15 of FICO's document requests (Dkt. 706 at 4) is irrelevant to the instant dispute.  This Court has already dismissed this argument with respect to other discovery disputes.  (*See* Dkt. 310 at 5:10-6:8, 24:20-22.)

discovery it was entitled to receive and to supplement any expert opinions if necessary. Fed. R. Civ. P. 26(e)(2); *Bison Advisors LLC v. Kessler*, No. 14-3121 (DSD/SER), 2016 U.S. Dist. LEXIS 88307, at *35, 43-44, 49-50 (D. Minn. Jan. 20, 2016) (permitting supplementation of expert report due to opposing party's production after the initial report was due); *see also Bradley v. Hertz Corp.*, No. 3:15-cv-652-NJR-RJD, 2019 U.S. Dist. LEXIS 54401, at *8-10 (S.D. Ill. Mar. 29, 2019) (same); *Fin. Info. Techs., LLC v. Icontrol Sys., United States, LLC*, No. 8:17-cv-190-T-23SPF, 2019 U.S. Dist. LEXIS 100762, at *2-3 (M.D. Fla. Mar. 18, 2019) (same).

The business rules are relevant to the issues of this case. Specifically, the business rules are relevant to at least FICO's burden to prove a connection to revenue. *See* 17 U.S.C. § 504(b). FICO, through its expert(s), has the right to review this evidence and determine how it informs their opinions and FICO's proof of disgorgement. The technical assistance of Mr. Sacco to run the produced Blaze Advisor applications is necessary to this effort. FICO's expert(s) will supplement their opinions as required under Fed. R. Civ. P. 26(e)(2). *Bison Advisors*, 2016 U.S. Dist. LEXIS 88307, at *35, 43-44, 49-50; *Bradley*, 2019 U.S. Dist. LEXIS 54401, at *8-10; *Fin. Info. Techs.*, 2019 U.S. Dist. LEXIS 100762, at *2-3.

The fact that Mr. Sacco is a non-testifying expert is of no moment. FICO's expert(s) are permitted to direct non-testifying individuals to facilitate their analysis of evidence. Fed. R. Evid. 703, 705; *In re James Wilson Associates*, 965 F.2d 160, 172-73 (7th Cir. 1992) ("[A]n expert may rely on information provided by non-testifying experts,

so long as he does not merely serve as a spokesman for the absent expert, vouching for the truth of his statements.").  Federal cannot impede FICO's trial preparation.

Federal's attempt to use a protective order to impede analysis of the business rules is improper.  This Court has already acknowledged that evidentiary disputes regarding the business rules are left for a later date (i.e. pre-trial matters for Judge Wright).  (Dkt. 310 at 11:22-12:4.)  Defendants now seek to re-litigate the same arguments under the guise of a protective order.  This is improper.  Evidentiary issues with respect to the admissibility of the business rules or opinions related to the business rules remain for Judge Wright.

### D.     FICO is allowed to engage consulting experts to educate FICO's strategy in the case relating to the heart of the dispute: the benefits derived from using Blaze Advisor.

FICO has the right to hire and use a consulting expert witness for these purposes *at any stage of the case.*  *Cf.* Dugas v. Coplan, 428 F.3d 317, 333 (1st Cir. 2005) ("The peril, if any, associated with the state's learning that the defense had hired an expert for pretrial consultation was minimal, approaching trivial….  But, in the context of this case, these 'perils' could not have outweighed the benefits of consulting an expert under any rational calculus.").  FICO is not seeking to add or substitute its designated testifying experts.  Rather, FICO merely seeks to consult with a Blaze Advisor® expert to facilitate FICO's analysis of the business rules—a permissible use of a consulting expert.  Defendants' attempts to impede FICO's case preparation by preventing disclosure to Mr. Sacco is improper.

E.     **Allowing Federal to "Sit In" on FICO's sessions with Mr. Sacco improperly invades FICO's work product.**

Federal asks the Court to allow Federal to sit in on FICO's working sessions with

Mr. Sacco.  FICO is entitled to prepare its case without the obstruction by and disclosure

to its opponents.  Communications with consulting experts is work product that the

Federal Rules protect.  Fed. R. Civ. P. 26(b)(4)(C) (protecting communications between a

party's attorney and expert witnesses for trial preparation); Fed. R. Civ. P. 26(b)(4)(D)

(limiting discovery related to expert employed only for trial preparation); *Unitedhealth*

*Grp. Inc. v. Columbia Cas. Co*., No. 05-1289 (PJS/SRN), 2010 U.S. Dist. LEXIS 153035,

at *43-44 (D. Minn. Aug. 10, 2010) ("The Federal Rules generally permit a range of

discovery surrounding testifying experts, but do not ordinarily permit discovery regarding

non-testifying experts."); *House v. Combined Ins. Co. of Am*., 168 F.R.D. 236, 245 (N.D.

Iowa 1996) ("Parties should be encouraged to consult experts to formulate their own

cases, to discard those experts for any reason, and to place them beyond the reach of an

opposing party, *if* they have never indicated an intention to use the expert at trial…. Such

a consulted-but-never-designated expert might properly be considered to fall under the

work product doctrine that protects matters prepared in anticipation of litigation.")

(emphasis in original) (internal quotation omitted).

FICO is entitled to work with its expert(s) as it sees fit within the bounds of the

Protective Order and the Federal Rules.  Defendants have not cited any case to support

their call for their counsel to attend FICO's meetings with Mr. Sacco.  Case law counsels

to the contrary.  *Murray v. S. Route Mar., S.A*., No. C12-1854RSL, 2014 U.S. Dist.

LEXIS 58852, at *4-5 (W.D. Wash. Apr. 28, 2014) ("The Court finds that the majority rule is persuasive.  The right to keep the opinions of non-testifying experts secret is based on the same concerns that motivate the work product doctrine: counsel must have a safe space in which to investigate, analyze, and prepare his client's case without fear that the opposing party will be able to exploit his efforts."). Federal's demand to sit-in on FICO's communications with Mr. Sacco must be seen for what it is: an attempt to invade FICO's work product.

Moreover, the presence of a Federal "supervisor" will not have any effect on Federal's two alleged concerns:

1.   The disclosure concerns Federal's competitive and commercially sensitive information that is protected by the Federal Rules of Civil Procedure.

2.   The disclosure to a consulting expert will serve no purpose because expert discovery is closed, and FICO may not use the opinions of its consulting expert to educate or alter the opinions of its testifying experts or other witnesses.

(Dkt. 706.)

Defendants' further concern that it will be disadvantaged by FICO's analysis of the business rules in trial preparation is further misplaced.  The work product doctrine is founded on the principle a party cannot prepare its case on the back of its adversary. Defendants have had both the business rules and Blaze Advisor® at their disposal since the commencement of the litigation.  Any failure of Defendants to consider this evidence in the preparation of their case does not preclude FICO from preparing its case as it sees fit.

**IV.    Conclusion**

Defendants cannot sustain their burden to challenge the disclosure of Confidential

Information to Mr. Sacco.  Defendants have not posited any putative concern that Mr.

Sacco is in a position to disclose the business rules to Defendants' competitors.  For this

reason alone, Defendants' motion must be denied.  Moreover, Judge Wright has already

ruled that the Protective Order is sufficient to alleviate confidentiality concerns with

respect to the business rules, and this Court has already ruled that evidentiary issues are

pre-trial matters for Judge Wright.  Defendants' attempts to re-litigate the evidentiary

aspects of the business rules under the guise of a protective order is improper.

Defendants' demands to supervise FICO's work with its expert(s) and invade FICO's

work product is extraordinary.  The Court should deny Defendants' motion and allow

FICO to disclose the business rules to Mr. Sacco.


Dated: February 19, 2020                    MERCHANT & GOULD P.C.

                                            /s/ Heather J. Kliebenstein
                                            Allen Hinderaker, MN Bar # 45787
                                            Heather Kliebenstein, MN Bar # 337419
                                            Michael A. Erbele, MN Bar # 393635
                                            Joseph W. Dubis, MN Bar # 398344
                                            MERCHANT & GOULD P.C.
                                            150 South Fifth Street, Suite 2200
                                            Minneapolis, MN  55402-2215
                                            Tel:  (612) 332-5300
                                            Fax:  (612) 332-9081
                                            ahinderaker@merchantgould.com
                                            hkliebenstein@merchantgould.com
                                            merbele@merchantgould.com
                                            jdubis@merchantgould.com

                                            *Attorneys for Plaintiff FICO*