# EXHIBIT 1

Final

# Chubb and Son,
# a Division of Federal Insurance Company,
for itself and as servicer for the Chubb Corporation and its non-
insurance company~~a~~ subsidiaries, or as manager of its insurance
company subsidiaries.
~~"Chubb"~~

> Formatted: Font: 16 pt, Complex Script Font: 16 pt

# {PRIVATE }

## Maintenance of Renewal Processing Rules

**02/03/2006**

**Deadline**
**Response Required by**
**02/17/06 for documentation**
**03/10/06 for on-site presentations**

Chubb & Son Confidential Information                    Page 1 of 25



EXHIBIT
143
10-24-18 LVMH

Final

**C O N F I D E N T I A L**

### Disclaimer

Your company is to treat the terms of this Request for Information ("RFI") and all other information provided by us in connection with this initiative to review our requirements of services as strictly confidential and proprietary to Chubb.

In submitting information, your company agrees that all materials associated with, attached to, or referenced by your information may be incorporated into a subsequent contractual agreement between your company and Chubb. All costs associated with the preparation of an informational packet are to be borne by the bidder, and the submission of such in no way obligates Chubb to any submitter.

Your response to this RFI indicates your understanding that this is not a contract or offer of business by Chubb.

Confidential                    FICO0057281

Final

# TABLE OF CONTENTS

1.1 Introduction ........................................................................................................................... 5
    Background/Statement of Purpose .......................................................................................... 5
        Current CSI Business Goals ............................................................... 5
        Current CSI IT Environment............................................................................................. 6
        Renewal Processing : Current State ................................................................................... 7

1.2 Confidentiality ...................................................................................................................... 8

1.3 Information Package Guidelines ........................................................................................... 8
    Informational Package Preparation ........................................................................................ 8
    Most Favored Nations ............................................................................................................ 8
    Information Evaluation ........................................................................................................... 9
    Bid Evaluation ....................................................................................................................... 9
    Terms of Negotiation ........................................................................................................... 10

1.4 RFI Process and Timing ..................................................................................................... 10
    Questions.............................................................................................................................. 10
    Submission Deadline ........................................................................................................... 11
    Results Notification.............................................................................................................. 11

2. Technical Contracting Requirements ..................................................................................... 11
    2.1 Scope of Services .......................................................................................................... 11
    Renewal Processing: Future State ................................................ …….....    . 12

2.2 Other Requirements ............................................................................................................ 13
    Authorization and Order Verification .................................................................................. 13
    Responsiveness .................................................................................................................... 13
    Management Reports ........................................................................................................... 13
    Business and Data Confidentiality ....................................................................................... 14
    Subcontracting .................................................................................................................... 14
    Employment Policies and Practices ..................................................................................... 14
    Master Service s Agreement ............................................................................................... 14

3. Instructions for Materials to be Returned .............................................................................. 15
    3.1 Forms: Appendix A........................................................................................................ 15

Confidential

FICO0057282

Final

General Instructions for Appendix A ................................................................................................................ 15
        Appendix A.1: Ordering and Billing Capabilities. ................................................................................. 15
        Appendix A.2: Company Background. ................................................................................................ 15
        Appendix A.3: Key Personnel. ........................................................................................................... 16
        Appendix A.4: Financial Statements and Information. ........................................................................ 16
        Appendix A.5: Customer References. ................................................................................................ 16
        Appendix A.6: Administrative Complaints and Lawsuits. .................................................................. 16
        Appendix A.7: Insurance. ................................................................................................................... 17
        Appendix A.8: Response and Pricing. ................................................................................................ 17
        Appendix A.9: Acceptance/Non-acceptance of the terms and conditions of Chubb's standard
                Master Services Agreement. ......................................................................................................... 17

Exhibit A ........................................................................................................................................................ 18
        MASTER SERVICES AGREEMENT ............................................................................................... 18

Confidential

Final

## 1.1 Introduction

*Background/Statement of Purpose*

Chubb and Son, ("Chubb") is an international Property and Casualty insurance company wholly owned by Federal Insurance Company. Chubb's worldwide headquarters is located in Warren, New Jersey.

Chubb's business is divided into three strategic business units - two commercial units, and one personal P&C unit. Chubb Commercial Insurance ("CCI") and Chubb Specialty Insurance ("CSI") make up the two commercial units. CCI is focused on standard commercial insurance - workers compensation, boiler, cargo, inland marine, etc. CSI writes executive protection, employment practices liability, etc. Chubb Personal Insurance ("CPI") writes homeowners, valuable articles, auto insurance, etc

Chubb Specialty Insurance gets the majority of its revenue, typically achieved via premiums, from a relatively small number of very large accounts. They have approximately 1000 employees in this line of business driving $3.5B in revenue. The key strategic initiative in this area is expanding and growing the business into mid-market and smaller accounts. This is viewed as a good opportunity as it is understood that 85% of the identified and targeted customer set does not currently buy Chubb products. Chubb Specialty does not own a field force and does not do direct sales, but they view people in the field (agents and agencies) at the point of sale as being a key differentiator to their business.

There is an initiative to move work to service centers so CSR's/Underwriters can focus more time on marketing and selling to these agents and agencies.

Movement to mid-market and smaller accounts has proven to be difficult, as this requires the team and systems to handle an increased volume of work (more transactions, policies, claims, etc.) in an environment where Chubb's current "Expense Management Strategy" does not allow for increases in staffing. ~~This is due to a flat budget through 2007. It was noted that these same individuals are handling both Mergers & Acquisitions, along with both retained and new business.~~ Chubb currently has several "support centers", with Simsbury being the largest handling 70% of the work, which support agents working out of agencies in the field. ~~Chubb views themselves as somewhat innovative, not first to market but soon after. They view themselves as "perfectors".~~ There is currently a large portfolio (140) of customized products with a desire, on the part of the Product Managers, to create new products as a good way to sell and to

~~ge~~generate buzz in the marketplace. The Product Management team feels that this is a differentiator in the marketplace. ~~It was also noted that "Price" is key, as Chubb moves into the Mid-Market and Smaller business arena. It is however, important to match competitor's endorsements in a timely manner.~~

| Formatted: Justified |
| --- |

Final

**Current CSI Business Goals**
- Reduce time to market of new products
- Enhance relationship with producers
- Enhance services provided for internal customers
- Quickly adapt to changes in regulations

**Current CSI IT Environment**



From an architectural perspective the CSI environment can be broken out into four distinct silos: Underwriting, Rating, Claims, and Reporting. The thick client Underwriting application is referred to as CSI Express. The CSI Express application is designed as a traditional client/server application. Written in Visual Basic.NET, this application consists of approximately 90 solutions, 20 of which are executables, with the rest being shared DLLs. CSI eXPRESS interacts with the backend "UWS" Informix database using ADO.NET. It also communicates with a mainframe system using IBM MQ Series and a set of MQ "UW Services" provided by the Chubb CCI division. These services act as a layer between CSI Express and the DB2 database in Warren, NJ.

Additionally there is also a standalone thin client application which does the rating of submissions. This application is developed using the IBM Websphere Studio Application Developer. This standalone application has a Web-based front end and interfaces with the VB.NET portion of CSI eXPRESS. The interface between CSI Express and the rating application is based loosely on a repository design style with the Informix based "UWS" database as the central repository. The rating application uses the DuckCreek rating engine to provide screen definition and a black box rating calculation. The DuckCreek engine is based on Microsoft technology and resides on a set of Windows 200 servers. The interaction between the

Confidential                                                    FICO0057285

Final

Java front-end and the DuckCreek back-end utilizes the HTTP protocol passing XML message based data documents.

There is also a thick client Claims application that is based on Centura and is largely out of scope for this engagement. The reporting system is primarily based in the COGNOS suite of tools accessing data from the "IDS" database. The "IDS database is populated by a combination of Informix replication and Informatica ETL jobs.

**Renewal Processing : Current State**
Within CSI, there currently is a batch process that runs on a monthly basis that creates renewal submissions that will be input to the CSI front-end application. This batch application is written in Java and includes the business rules in effect for categorizing renewal business. When requested and prioritized by the business, these rules are modified by a developer based on business requirements. The categories determine which renewal policies must be reviewed by an underwriter and which can be handled by a Specialty Underwriting Assistant (SUA). The more renewal policies that fall into the latter category, the more time the underwriter has to develop and produce additional business. For example, one category has to do with what is called "Section 1" rules within CSI renewal business. Certain renewal policy attributes such as the amount of the limits, the existence of claims, the amount of the deductibles, term length are checked to see if the renewal fits the criteria and would therefore require an underwriter's attention. These categories may vary over time and the solution must include the ability to redefine the categories and the definition of the categories and criteria.

One example of a category structure is as follows:
Section 1 – automatic renewal, no underwriter review necessary.
Section 2 – review by underwriter required
Section 3 – alternate products are recommended. Underwriter involvement required.
Section 4 – do not renew, underwriter involvement requirement.

Parameters that may be used in determining the classification of the renewing policy include, but are not limited to:
- Limits
- Deductibles
- Presence of claims
- Number of employees
- Risk state
- Type of product

Rules are defined and are spread over a multitude of systems. This lack of structure has led to difficulties in updating and/or extending the current rules when required by the business. Business rules are seen as preventing flexibility and reuse. Limited modeling activities are currently being completed.

Confidential                                                                      FICO0057286

Final

## 1.2 Confidentiality

The terms of this RFI, and all other information provided in connection with this review of expenses, are to be treated by your company as strictly confidential and proprietary to Chubb. All data, business information, computer programs and documentation, studies, reports or other documents are to be used solely for the purpose of responding to this inquiry. Access shall not be granted to third parties except upon prior written consent of Chubb and upon the written agreement of the intended recipient to treat the same as confidential. We may request at any time that any of our material be returned or destroyed.

Should your company decide against responding to this Request for Proposal, please remit all materials and any duplicates thereof to:

James W. Black
Vendor Management Department
Chubb & Son, a division of Federal Insurance Company
15 Mountain View Road
Warren, New Jersey 07059

## 1.3 Information Package Guidelines

### Informational Package Preparation

This RFI seeks to establish a common framework within which the Request for Proposal may be reached. It should be noted, however, that any resulting proposal will constitute an offer to do business on the terms stated therein and, should a contract result, Chubb may, at its option, incorporate all or any part of your proposal in the contract.

Your company is responsible for resolving any uncertainty or need for clarification you may have concerning this RFI, Chubb requirements, or the proposal. All expenses related to developing and submitting this Request for Information are entirely the responsibility of your company, and the submission of the information in no way obligates Chubb to you or any other submitter.

Where the words "shall" or "must" are used, it signifies an absolute minimum function or capacity which, if not satisfied in the proposal, may result in disqualification in the final evaluation. Where the words "should," "may," or "is desirable" are used, it signifies desirable but not mandatory functions or capacities. Suppliers who are able to provide these functions or capacities may be evaluated more favorably than those who cannot.

### Most Favored Nations

Not withstanding any other provision of this evaluation, all the prices, warranties, benefits and terms granted by the vendor to Chubb hereunder are hereby warranted by the vendor to be comparable to, or more favorable to, Chubb than the equivalent prices, warranties, benefits, and terms that are being offered by the vendor to any of its other customers for comparable or equal

Confidential                                                                                 FICO0057287

Final

products and services during the term of the proposed agreement. If the vendor, during the term of the proposed agreement, enters into arrangements with any other customer providing greater benefits or more favorable terms, this proposed agreement should thereupon be amended to reflect benefits or terms of similar scope.

### *Information Evaluation*

Informational packages submitted may be reviewed and evaluated by any person at the discretion of Chubb, including non-allied and independent consultants retained by Chubb now, or in the future, for the sole purpose of obtaining evaluations of proposals. Any and all suppliers may be asked to further explain or clarify in writing areas of their submission during the evaluation process.

### *Bid Evaluation*

Chubb will evaluate submissions based on the following factors:

- Cost
    - Initial implementation including software and services
    - Technical support contract
    - Type of licensing
    - Cost for end user support
    - Need for additional hardware
    - Fixed bid is preferred

- The Vendor's financial strength
    - Number of years in business
    - Age of the software/solution. Has it been proven in the marketplace
    - Has the vendor experienced any financial hardships
    - Is the company publicly or privately held
    - Number of employees

- The Vendor's ability to provide reliable services, software, hardware and/or technical support, including the quality of services and/or products
    - Referrals from existing clients (users of both products and services)
    - Examples of customers in similar industry niches and how software solution is utilized
    - Support staff – number, average years of experience
    - Technical support policy – SLA for resolving issues, where is the support staff located (hours of availability)
    - Is there a training program and/or materials for the end user
    - Is there a training program and/or materials for the Chubb technical staff
    - What is the process for supporting end user questions post implementation
    - Documentation for the technical staff and end users will be available, complete and accurate
    - What is the frequency of product releases, and for what reason (upgrade versus fix)

- The Vendor's ability and willingness to aid in configuring the proposed solution to meet Chubb's needs

Confidential                                                                                      FICO0057288

Final

- Availability of onsite consulting services
- Willingness to partner with Chubb technical staff for development and implementation

- The ability to integrate third-party software products and or services
  - How well does the solution fit into Chubb's current architecture
  - Amount of effort required to integrate the solution into Chubb's current architecture
  - What services are included/excluded, e.g., post-implementation support

- The level of complexity of the proposed solution
  - The extent to which Chubb will need to train current IT employees in the support of the solution
  - The extent to which Chubb will need to train current end user employees in the use of the solution
  - The degree and amount of customization required to meet Chubb's business needs
  - The proportion of changes in rules versus code in the post-implementation environment, for example, the conditions and percentage of time that IT would be required to modify and/or add rules or categories

- The Vendor's willingness to accept the terms and conditions of Chubb's standard Master Services Agreement
- The overall quality and presentation of the Vendor's response to this RFI
- Other factors which Chubb considers significant

### Terms of Negotiation

While the information requested in this RFI is fairly comprehensive, Chubb retains the right to request further information from and conduct negotiations with those suppliers it deems qualified. Furthermore, Chubb reserves the right to reject any and all Information submitted and to terminate negotiations at any time without incurring any liability. Chubb reserves the right to select one or more suppliers.

## 1.4 RFI Process and Timing

### Questions

Any and all questions and/or comments associated with this RFI process must be directed to Chubb in writing **via FAX** to James W. Black at **fax # 908-903-2008 or via EMAIL to jwblack@chubb.com by no later than 02/10/06**

Confidential

FICO0057289

Final

**Vendors are to designate, and provide Chubb with, one point of contact for all RFI communications. Each supplier is responsible for notifying Chubb immediately of any change to such point of contact.** We will distribute all relevant questions and answers by return FAX or EMAIL to each prospective supplier.

### *Submission Deadline*

**Seven (7) hard copies of your informational package along with an electronic copy (in Adobe pdf, MS Powerpoint or MS Word format) are to be received by Chubb no later than 5:00PM (ET) on February 17, 2006. One of the copies must be unbound.**

**Send them to:**

James W. Black
Vendor Management Department
Chubb & Son, a division of Federal Insurance Company
15 Mountain View Road
Warren, New Jersey 07059
jwblack@chubb.com

Packages received after the time and date specified above may, at Chubb's discretion, not be considered.

### *Results Notification*

We plan to inform you whether your company has been selected for continued discussions within four (4) weeks after the deadline date. While we welcome procedural questions about this RFI, please refrain from making inquiries about the evaluation of your proposal. Chubb will notify suppliers whether or not further discussions are warranted.

## 2. Technical Contracting Requirements

In this section you will find the high level requirements that we have developed for this RFI. Read this section carefully and prepare your bid based on the information contained herein.

### *2.1 Scope of Services*

**Renewal Processing: Future State**                    ←— Formatted: Left

The goal of this project is to create an application & architecture to allow for a streamlined rules based renewal processing engine. An additional goal is to build the foundation for a future state architecture for rules based processing that can be applied to new projects as we seek to improve the efficiency of our business processing environment.

Confidential

Final

This project should deliver on the specific application functional requirements and also position the CSI IT department to maintain, enhance and develop new applications. The scope of the services should therefore include: development of a turn-key renewal processing system, support for design and configuration of the technical environment, on-the-job training for select CSI IT staff members working in conjunction with the selected external project team, an extended support agreement to supply on-going maintenance if necessary, licensing of any third party software if necessary and any other value-add that the supplier deems necessary to support this undertaking.

Currently, any planned modification to the batch process must follow the Systems Development Life Cycle currently in effect with CSI IT and must be prioritized against other outstanding requests. Also, the current application does not include an approach for determining the impact of planned modifications in a prospective way. For example, the business cannot easily tell the effect of a change to criteria. As a matter of fact, the customer will not totally understand or see the impact until the change is in production. ***

Overall, the requirement is that the rules processing solution is to include:

1. User ability to add renewal processing business rules
2. User ability to modify and delete renewal processing business rules
3. Ability to determine impact of rule changes as a "what if"
   - Automated progression from test through to production environments without IT intervention based on end user approvals
4. Ability to capture the acceptance (sign off) of the impact before new/modified rules are implemented
5. Ability to base rules on a wide variety of criteria. We need the ability to apply the rules on a granular level – coverage as opposed to policy. Therefore, the renewing policy could fall into multiple categories.
6. Security to allow "read-only" access for most users and update access for a few users (nice to have)
   - Ability to apply rules based on user type or location
   - Must be simple to use with user-friendly interface

## 2.2 Other Requirements

Chubb requires all vendors to meet or exceed minimum service requirements, which will be agreed upon before the start of any vendor relationship(s). We have developed the following initial service requirements.

**Requirements of the Professional Environment**

Confidential                                                                    FICO0057291

Final

Vendor staff must have the necessary technical skills to perform the services described above. Chubb reserves the right to interview any/all vendor staff to determine whether such vendor staff is qualified to perform the services. Vendor staff must have demonstrated ability to work under pressure in a fast-paced team environment. They must be comfortable following directions and meeting project deadlines. Professional demeanor is expected at all times. Vendor staff must possess excellent interpersonal and communication skills.

CSI will consider various staffing arrangements, including cosource, offshore, and nearshore.

Vendor staff will be working with CSI staff. It is anticipated that the project team be made up of primarily Chubb employees, including a Project Manager and 3 developers. The vendor staff will be on-site during implementation and for an agreed-upon period of time post-implementation (usually, 4 weeks). All processes will be documented and turned over to Chubb IT staff. Chubb IT follows a documented Systems Development Life Cycle and adherence to this is required. Status meetings will be scheduled on a regular basis. Time tracking will be followed. (DCP: May want to include a statement saying that vendor staff will be working with CSI staff to complete project integration. Do we want the vendor on-site during implementation? Do we want post-implementation support on-site?)

## Authorization and Order Verification

The vendor may accept orders placed by Chubb-designated authorized users only. If the vendor receives a request from any non-authorized individual, the vendor must verify that order with a pre-specified authorized user prior to fulfilling the request. Failure to comply with this authorization policy may result in delayed payment or non-payment for services provided.

## Responsiveness

Chubb requires collaborative working relationships with its vendors. Chubb requires accessibility for placement discussions, project scheduling, and resolution of negative situations.

## Management Reports

Comprehensive management reporting requirements will be agreed upon before the start of any vendor relationship.

Confidential                                                                                          FICO0057292

Final

### Business and Data Confidentiality

Vendors of technical contracting services may have access to information relating to the business and activities of Chubb, its clients, suppliers and other entities with which Chubb conducts business. Vendors must agree to hold such information in trust and confidence for Chubb and to enter into a written confidentiality agreement stating the same. Furthermore, your company must agree to hold its staff, agents, and subcontracted staff to the same standards.

In addition, suppliers must comply fully with Chubb's data and information security policies and procedures, and will be subject to random and scheduled audits to ensure compliance.

### Subcontracting

Chubb defines a subcontractor as a business entity contracting to perform all or part of another supplier's contract. Subcontracting is subject to Chubb's prior written consent. In any and all cases, your company bears responsibility and liability for subcontractors with regard to equal employment regulations, legal and tax liability, unemployment and worker's compensation taxes, and subcontractor's compensation. Moreover, any requirements that we set forth with your company must be adhered to by your subcontractors, including all specifications and definitions set forth in the service (purchasing) agreement between Chubb and your company.

### Employment Policies and Practices

Vendor staff performing services and all referred technical contracting staff will remain, at all times, staff of the vendor and will not be Chubb staff for state and federal tax purposes, or any other purpose whatsoever, and are not entitled to any Chubb staff benefits. The vendor shall be solely responsible for compensation of its staff and the technical contracting workers, including, but not limited to, payment of workers' compensation, disability and other similar benefits, unemployment and other similar insurance and for withholding income and other taxes including social security.

### *Master Services Agreement*

A copy of Chubb's standard Master Services Agreement is enclosed as Exhibit A for your review. In the event that any of the terms listed are unacceptable to you, you are to document such unacceptance in detail in your RFI response as Appendix A.11. If applicable, you are also to include your proposed modifications and/or compromise to the unacceptable term(s) or condition(s). Your unacceptance of any term or condition of Chubb's standard Master Services Agreement will be evaluated/considered by Chubb when making its vendor selection(s).

Confidential

FICO0057293

Final

## 3. Instructions for Materials to be Returned

This section provides instructions on completing the RFI requirements

### 3.1 Forms: Appendix A

## General Instructions for Appendix A

- Forms provided in Appendices A.1 through A.11 should be typewritten.

- When completing the forms, you are required to break out your response into all components requested. Submission of incomplete responses may result in your disqualification from consideration. Please do not deviate from the structure detailed in this RFI. If your company believes additional information is relevant to your particular bid, please include that information on separate attachments.

## Forms to be Created and Included in Appendix A

### Appendix A.1: Ordering and Billing Capabilities.

Create an appendix labeled "Appendix A.1 Ordering and Billing Capabilities" and address the following:

- Please describe how you would fulfill the data requirements (e.g., manage ordering, invoice submission, reporting, etc.) outlined in this RFI and ensure the simplification and streamlining of procedures.
- Also describe any additional service features you may offer, such as on-site service personnel, or a dedicated toll-free number.

### Appendix A.2: Company Background.

Create an appendix labeled "Appendix A.4: Company Background." and provide a description of your company's background. Address each of the following:

- Please describe your form of business organization (*i.e.*, C-corporation, S-corporation, partnership or sole proprietorship), and the state/country of incorporation where applicable. Please give a chronological history of any changes in status of your organization.

Confidential                                                          FICO0057294

Final

- Disclose fully all of your relationships with any and all subcontractors and other related companies. If any affiliates are other than wholly owned, please explain the consequences should such an affiliation be dissolved.

- Outline your strategic direction.

### *Appendix A.3: Key Personnel.*

Create an appendix labeled "Appendix A.5: Key Personnel" and describe your organization's key personnel. Address each of the following:

- The organization(s) within your company, including the manager(s), who will be servicing Chubb's account, the National Accounts Manager, and those officers/principals to whom they report.

- Management profiles for these key personnel.

- The locations of your local/regional offices, along with local organizational charts and names of local office and account managers for geographic locations for which you are bidding

### *Appendix A.4: Financial Statements and Information.*

Create an appendix labeled "Appendix A.6: Financial Statements Information" and provide the following financial data.

- Most recent audited financial statements.

- Indicate any publicly known information regarding any changes in ownership or structure, including pending mergers or acquisitions.

### *Appendix A.5: Customer References.*

Create an appendix labeled "A.7: Customer References" and provide references for both existing and past customers. Provide the name, principal contact, address and telephone number, and annual billings for each of your company's three largest corporate accounts overall, the three largest corporate accounts in the financial services industry, and the three largest corporate accounts with whom you are no longer doing business.

### *Appendix A.6: Administrative Complaints and Lawsuits.*

Create an appendix labeled "Appendix A.8: Administrative Complaints and Lawsuits" and indicate whether your company has been involved as a defendant in any administrative complaint involving employment discrimination, business operations, provision of services and/or any lawsuit in the past three years. If your company has been a defendant in such an

Confidential                                                                                   FICO0057295

Final

action, please furnish the following details, regardless of outcome: date initiated, name of plaintiff(s), description of complaint/lawsuit, and current status of complaint/lawsuit.

Also provide any information relating to any breach of confidentiality or alleged breach of confidentiality by a supplier, independent technical contracting staff, or subcontractor of supplier.

Additionally, provide notification of any criminal action regarding current or former staff within the last three years.

### *Appendix A.7: Insurance.*

Create an appendix labeled "Appendix 9: Insurance" and provide information on your insurance policy limits and attach evidence of coverage."   Please submit your company's insurance information on a Certificate of Insurance form.

### *Appendix A.8: Response and Pricing.*

Create an appendix labeled "Appendix 10: Response and Pricing" and provide your firm's response and pricing to provide the scope of services described herein.  Pricing must include all items Chubb would be invoiced for.

### *Appendix A.9: Acceptance/Non-acceptance of the terms and conditions of Chubb's standard Master Services Agreement.*
Create an appendix labeled "Appendix 11: Acceptance/Non-Acceptance of Chubb's standard Master Services Agreement" and provide your firm's response pursuant to the Section titled "Master Services Agreement" found under Section 2.2 above.

Confidential

Final

# Exhibit A

## *MASTER SERVICES AGREEMENT*

This Master Services Agreement ("Agreement") is made by and between Chubb & Son, a division of Federal Insurance Company, an Indiana corporation, having its principal office at 15 Mountain View Road, Warren, New Jersey, 07059 and Vendor Name. ("Vendor") having an office at Vendor Street, Vendor City, Vendor State Vendor Zip.

In consideration of the mutual promises made by Chubb and Vendor, the parties agree as follows:

**1.**   Definitions

**1.a**   Chubb: "Chubb" shall mean Chubb & Son, a division of Federal Insurance Company, for itself and as servicer for The Chubb Corporation and its non-insurance company subsidiaries, or as manager of its insurance company subsidiaries.

**1.b**   Intellectual Property Rights: "Intellectual Property Rights" shall mean any and all intellectual property rights, however recognized, including, but not limited to, copyright, patent, trademark, trade dress, service mark, trade secret, or any other intellectual property right whether now existing or developed or created during the term of this Agreement.

**1.c**   Invention: "Invention" shall mean any and all inventions, innovations, processes, techniques, works of authorship, developments, derivations, contributions, supplements, enhancements, and modifications, and any copies, adaptations, documentation, algorithms, notes, or records thereof, including, but not limited to, computer programs, including both source and object versions thereof, and attendant specifications and source code listings, authored, made, developed, or conceived of and reduced to practice by, or under the direction of, Vendor during the term and within the scope of this Agreement.

**2.**   Scope of Services

**A.**     Chubb hereby retains the services of Vendor and Vendor hereby agrees to provide services as described in a mutually agreed upon work order(s) (or "proposal" or "statement of work") which may be entered into from time to time and is incorporated herein and attached hereto this Agreement as Appendix A ("Services").  Chubb has entered this Agreement on the basis of the knowledge, experience, abilities, qualifications and representations as presented by Vendor. Vendor shall provide the Services in such a manner as to permit Chubb to have full benefit of Vendor's knowledge, experience, abilities, qualifications and business contacts. Vendor shall use its best efforts to perform the Service in a prompt, diligent and professional manner and in accordance with specifications and performance requirements including, but not limited to, the intermediate and final delivery schedules, set forth therein. Vendor's employees will observe Chubb's working and security rules.

**B.**     The specifications and performance requirements set forth in Appendix A can be modified by Chubb from time to time, provided such modifications do not materially affect the resources being provided by the Vendor or the cost of completing the final product. Vendor shall use its best efforts to perform in accordance with those modifications, unless Vendor, in its good faith business judgment, believes that the modification is commercially impracticable or technologically impossible.  In the event Vendor believes the modification to be commercially impracticable or technologically impossible, Vendor shall immediately notify Chubb in writing explaining the

Confidential                                                                                              FICO0057297

Final

impracticability or impossibility. This notice does not vitiate Chubb's right to terminate these services without cause as set forth in Section 10 Termination of this agreement.

3.    **Service Rates: Expenses**

    **A.**    Chubb agrees to pay Vendor, in exchange for Services rendered, a fee in accordance with Appendix A, attached hereto.

    **B.**    Chubb shall not be liable to Vendor for any expenses paid or incurred by Vendor unless otherwise agreed to in writing signed by a duly authorized representative of Chubb.

    **C.**    Chubb shall only be liable for the pro rata share of any payments owed, equal to the number of days in which Vendor actually provided services, in any month in which this Agreement is terminated.

4.    **Service Payment and Expense Reimbursement**

    **A.**    Chubb will pay within the greater of (a) forty-five (45) days of the invoice date; or (b) thirty (30) days of Chubb's actual receipt of invoices, for Services rendered and expenses incurred under this Agreement, except for those invoices subject to a good faith dispute by Chubb. Chubb shall notify Vendor within twenty (20) days of actual receipt of an invoice that it intends to dispute said invoice.

    **B.**    Chubb may, at its option and without prior notice and during normal business hours, audit Vendor's records reasonably related to the invoices issued pursuant to Section 3.A, above. Vendor shall keep sufficient records at its principal place of business to allow Chubb to audit the invoices, which records will be maintained for twenty-four (24) months from the date of creation. Chubb acknowledges that it and its employees, subcontractors or agents may, in the course of conducting an audit, be exposed to information which is confidential or proprietary to Vendor. Chubb agrees to treat all of Vendor's Confidential Information as confidential information, maintaining such information in strict confidence, using at least the same level of care that Chubb uses to avoid unauthorized use or disclosure of its own most confidential information that it did not wish to become public. For purposes of this Section, "Vendor's Confidential Information" is that information belonging to, or in the possession or control of, Vendor that has been clearly labeled by Vendor as confidential.

5.    **Independent Contractor; Employees**

    **A.**    Neither Vendor nor Vendor's employees are or shall be deemed to be employees of Chubb. Vendor shall be solely responsible for the payment of compensation (including provision for employment taxes, federal, state and local income taxes, workers compensation and any similar taxes) associated with the employment of Vendor's employees. Vendor shall also be solely responsible for obtaining and maintaining all requisite work permits, visas, and any other documentation. Vendor represents that Vendor, its employees, and those parties authorized by Chubb under Section 5(C), are authorized to perform such Services under this Agreement.

    **B.**    Vendor acknowledges that because Vendor is engaged in its own independently established business, neither Vendor, Vendor's employees, nor those parties authorized by Chubb under Section 5(C) are eligible for, nor shall they participate in, any pension, health, or other employee benefit plan of Chubb.

    **C.**    Vendor shall take appropriate measures to ensure that its employees, and those parties authorized by Chubb under this subsection, who perform Services are competent to do so and that they observe the provisions of Section 7, **Confidential Information; Non-Disclosure.** None of

Chubb & Son Confidential Information                                                                          Page 19 of 25

Final

the Services under this Agreement shall be provided by anyone other than Vendor's own employees, unless Vendor first obtains the prior written consent of Chubb.

**D.** Upon verbal or written notice to Vendor that an employee of Vendor is not suitable to Chubb, Vendor shall thereupon immediately remove such employee(s) from the performance of Services and Chubb's responsibility for any further payment or other obligations under this Agreement pertaining to such employee(s) shall immediately cease. Chubb shall be the sole judge as to suitability. Notwithstanding Section 2.B above, Chubb will not be liable for expenses related to the removal of Vendor's employee, or expenses associated with providing a replacement employee.

**E.** During the term of this Agreement and for one (1) year after the termination of this Agreement, Chubb and Vendor agree not to offer employment to or solicit the other party's employees or persuade, encourage or induce any such employee (a) to cease his or her employment with their employer, (b) to become employed by or affiliated in any capacity with any person or firm engaged in providing the same or similar services rendered by the employee when employed by his or her employer, or (c) to contact or communicate with any such employee for any purpose prohibited by this paragraph ("Recruits"; "Recruiting"; "Recruitment"), without the prior written consent of the other party. If either party Recruits an employee of the other party, the Recruiting party shall immediately pay the other party, solely for the violation of this paragraph, an amount equal to one hundred percent (100%) of the total monetary compensation (including without limitation wages, salary, bonuses and commissions) paid to such employee by the other party in the twelve (12) months immediately preceding such Recruitment. The parties agree that the provisions of this paragraph shall not preclude or limit any available actions at law or in equity, including without limitation, any form of damages or any injunctive or equitable relief, for misappropriation of trade secrets, unfair competition, breach of contract or other cause of action arising from or out of the hiring or Recruitment of the other party's employee(s).

**6.** **Ownership and Use of Work Product: WORK FOR HIRE**

Vendor acknowledges that all Services provided under this Agreement including, but not limited to all Inventions, shall be a **work made for hire**. Vendor agrees that all Inventions conceived of, made, or reduced to practice by Vendor or under its direction during the term and within the scope of this Agreement or association with Chubb shall be **work made for hire** and shall be the sole and complete property of Chubb, and that any and all Intellectual Property Rights relating thereto shall vest in Chubb. If for any reason such work is deemed not to be work made for hire, Vendor hereby grants, transfers and assigns all rights, title and interest in such work to Chubb.

Confidential                                                                                    FICO0057299

Final

7.    **Confidential Information; Non-Disclosure**

**A.**    In order that Vendor may perform the Services required under this Agreement, it may be necessary for Chubb to disclose to Vendor or its employees or agents certain information and material which may be considered to be sensitive, confidential and/or proprietary to Chubb, its affiliates, subsidiaries, customers, insureds, agents, directors, officers or employees. Any and all Confidential Information, as defined below in Section 7(C), disclosed to or obtained by Vendor, its employees, subcontractors, or agents, in the performance of Vendor's obligations, shall be deemed confidential and proprietary information belonging to Chubb.  In recognition of the foregoing, Vendor covenants and agrees: (a) that it will maintain all Confidential Information in strict confidence, using appropriate administrative, technical and physical safeguards to protect Confidential Information to avoid its unauthorized use or disclosure; (b) that it will not, directly or indirectly, copy, reproduce, sell, assign, license, market, transfer, or disclose any Confidential Information to any third party without Chubb's prior written consent; (c) that it will not make use of any Confidential Information for its own purposes or the benefit of anyone or any other entity other than Chubb, except as otherwise expressly provided under this Agreement; (d) that at any time Chubb may so request, it will deliver to Chubb or, at Chubb's option, will certify the destruction of, all memoranda, noted, records, reports, media, and other documents, and all copies thereof, regarding or including any Confidential Information which Vendor may then possess or have under its control; and (e) that it will take no action with respect to Confidential Information that is inconsistent with the confidential and proprietary nature of such information.

**B.**    Vendor shall not disclose Confidential Information, except to its employees, or any other party authorized by Chubb pursuant to Section 5(C), having a need to know such information in connection with the performance of its obligations or services. Vendor shall instruct all such employees and authorized parties as to their obligations under this Section, and shall advise them of their obligations to be bound by the terms and conditions of this Section prior to their being given access to Confidential Information. Vendor acknowledges that it shall remain responsible and liable for its employees', and any other party's, compliance with the terms of this Section.

**C.**    For purposes of this Agreement, "Confidential Information" shall include all confidential and proprietary information of Chubb, whether in written, oral, electronic, magnetic, photographic, optical, or any other form now existing or created or developed during the term of this Agreement, including, but not limited to, the following: (a) information relating to Chubb's planned or existing computer systems, system architecture, computer hardware, computer software, source code, object code, documentation, program libraries, program listings, processing methods, technical processes and operational methods; (b) information regarding planned or existing insurance policies, insurance coverage, insurance premiums, insurance endorsements, claims procedures, or other information that describes how insurance activities are administered and managed; (c) customer data, customer lists, sales, profits, pricing, and other financial information; (d) information regarding Chubb's existing or planned sales and marketing activities or strategies; (e) information regarding Chubb's existing or planned organizational restructuring, business affairs, and business initiatives; (f) information regarding Chubb's customers, insureds, employees, directors and officers; (g) confidential information of a third party licensed to, possessed by, or in the control of Chubb, and which Chubb is or may be obligated to treat as confidential or proprietary; and (h) any other information relating to Chubb which is not generally known to the public or within the industries and trades in which Chubb competes or which may otherwise be protected by state trade secret law.

**D.**    Notwithstanding Section 7(C), Confidential Information shall not include information that (a) is or becomes generally known to the public, not as a result of an act, omission, or disclosure by Vendor, (b) is rightfully in the possession of Vendor prior to this Agreement, (c) is independently developed by Vendor without use of Chubb's Confidential Information, (d) is received by Vendor in good faith and without restriction from a third party, not under a confidentiality obligation to either

Confidential                                                                    FICO0057300

Final

party, or (e) is disclosed pursuant to a court or regulatory order, provided that Vendor immediately notifies Chubb upon receipt of such order and cooperates with Chubb in obtaining appropriate protection from the authority issuing the order.

**E.**     This Section shall survive the termination of this Agreement.

**8.**     **Term**

This Agreement shall be deemed effective as of Contract Effective Date, regardless of the date on which it is actually signed by both parties, and shall continue until terminated pursuant to Section 9. Termination.  The terms of this Agreement shall remain in full force and effect both during the continuation of the Services or association of Vendor and after the termination of such Services or association for any reason.

**9.**     **Termination**

**A.**     Services under this Agreement shall terminate:

**(1)**     upon Vendor's receipt of written notice from Chubb          that this Agreement will be terminated, provided Chubb provides at least thirty (30) days prior written notice of such termination.

**(2)**     upon written notice from Chubb if Vendor (i) becomes insolvent or seeks protection under the Federal Bankruptcy Act or any other state laws relating to insolvency; (ii) makes a general assignment for the benefit of creditors; or (iii) suffers or permits the appointment of a receiver or a trustee for its business or assets.

**(3)**     immediately upon written notice from Chubb following Vendor's material breach of Section 7 of this Agreement.

**B.**     Chubb shall be responsible for payment for Services until the effective date of termination.

**C.**     On termination of this Agreement for any reason, Vendor will promptly deliver to Chubb all work product, correspondence, drawings, blueprints, manuals, letters, notes, notebooks, reports, flow-charts, programs, proposals, or any other documents and copies thereof, whether complete or incomplete, that were either produced or obtained by Vendor as the result of this Agreement.

**10.**    **Insurance**

Vendor hereby represents it is adequately insured and it will, upon Chubb's request, promptly provide Chubb with written certification from Vendor's insurance carrier(s) of the amounts and types of insurance carried by Vendor.  If Chubb reasonably determines that the amounts, types of insurance, or insurance carrier is unsatisfactory to Chubb, Chubb may require Vendor to obtain in a timely fashion additional or different insurance that shall be reasonably satisfactory to Chubb.

Confidential

FICO0057301

Final

11. **Indemnity**

    **A.** Vendor, at its own expense, shall indemnify, and hold harmless Chubb and its directors, officers, employees, agents, successors, assigns, and customers, and defend any action brought against Chubb, with respect to any claim, demand, cause of action, debt, liability, or expense, including attorney's and expert witness fees and court and settlement costs, due to claims arising from or related to Vendor's performance under this Agreement, where caused by the fault or negligence of Vendor, its employees, or parties authorized by Chubb under Section 5(C).

    **B.** Vendor, at its own expense, shall indemnify, and hold harmless Chubb, and its directors, officers, employees, agents, successors, assigns, and customers, and defend any action brought against Chubb, with respect to any claim, demand, cause of action, debt, liability, or expense, including attorney's and expert witness fees and court and settlement costs, due to claims arising from or related to any claim of Intellectual Property Rights infringement by a third party, or claims of unfair competition or trade secret violation, and any other claim arising out of Chubb's use or possession of any products, materials, or Services provided by or developed by Vendor under this Agreement.

    **C.** Vendor shall have the option to assume control of such defense, but shall not select counsel or settle any claim without the prior written approval of Chubb, which approval shall not be unreasonably withheld. Vendor shall also allow Chubb the right of free association during such defense, and shall keep Chubb adequately informed of all developments and strategies related to such defense.

12. **Governing Law**

    This agreement shall be governed by, subject to, and, enforced and interpreted in accordance with the laws of the State of New Jersey, including the remedies available for breach hereof, without regard to its conflict of laws principle.

13. **Entire Agreement**

    This Agreement, and the attachments hereto, constitutes the entire agreement and understanding between the parties with respect to the subject matter of this Agreement, and supersedes all prior discussions, understandings, and agreements between the parties. No alteration or modification of this Agreement shall have any force or effect unless such modification is in writing, signed by duly authorized representatives of both parties, and affixed to this Agreement in the form of an addendum.

14. **Severability**

    If any of the provisions contained in this Agreement are held to be illegal, invalid, or unenforceable, the enforceability of the remaining provisions shall not be impaired and the Agreement shall continue as if such illegal, invalid, or unenforceable provisions are not contained in this Agreement.

15. **Assignment**

    This Agreement may not be assigned by either party without the prior written approval of the non-assigning party. Except for the prohibition on assignment contained in the preceding sentence, this Agreement shall be binding upon and inure to the benefit of the heirs, successors and assigns of the parties to this Agreement.

Confidential                                                                                  FICO0057302

Final

**16.**   **Notices**

Notices with regard to this Agreement shall be delivered in person or sent via United States first class postage prepaid, certified or registered mail, or sent via a recognized traceable shipping service (i.e. FEDEX, UPS, etc.) to the persons and addresses listed below:

Chubb:      Dennis Bostedo
            Vendor Management Group
            Chubb & Son, a division of Federal Insurance Company
            15 Mountain View Road
            Warren, New Jersey 07059

Vendor: Vendor Name
            Attn: Vendor Contract
            Vendor Street
            Vendor City, Vendor State Vendor Zip

**17.**   **Publicity.**

Vendor shall not make use of Chubb's name, logo, trademarks or service-marks, or its association with Chubb arising either from discussions leading to this Agreement or from the Agreement itself, for publicity, advertising, marketing or other purposes without the express written consent of Chubb in each instance.

**18.**   **Captions.**

Captions and section headings used in this agreement are for convenience only and are not a part of this agreement and should not be used in construing it.

**19.**   **Limitation of Liability**

**A.**      NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF THIS AGREEMENT.   HOWEVER, THIS LIMITATION SHALL NOT APPLY TO DAMAGES OF ANY KIND RELATED TO CRIMINAL, INTENTIONAL, RECKLESS, OR GROSSLY NEGLIGENT CONDUCT OR OMISSIONS ON THE PART OF Vendor, Vendor'S EMPLOYEES, OR PARTIES AUTHORIZED UNDER SECTION 5(C).

**B.**      With respect to the performance of Chubb under this Agreement, in no event shall Chubb be liable to Vendor, any of its officers, directors, employees, or shareholders, or to any third party, whether a claim be in tort (except for any claim based upon fraud), contract, or otherwise for any amount in excess of the total fees paid by Chubb to Vendor under this Agreement, except that this limitation shall not apply to any claim based upon fraud, intentional misconduct or gross negligence.

Confidential                                                                    FICO0057303

Final

20.   **Force Majeure**.

No delay in or failure of performance by either party under this Agreement will be considered to be a breach hereof if and to the extent that such delay or failure of performance is caused by an occurrence or occurrences beyond the reasonable control of the party affected.

**IN WITNESS WHEREOF, the parties hereto, each acting with due and proper authority and acknowledging that they have read this Agreement, understand it and agree to be bound by its terms, have executed this Agreement, as of the date first set forth above in Section 8:**

| | |
|---|---|
| **CHUBB & SON,** | **Vendor Name** |
| **a division of Federal Insurance Company,** | "Vendor" |
| for itself and as servicer for The Chubb Corp. | |
| and its non-insurance company subsidiaries, or | |
| as manager of its insurance company subsidiaries. | |
| "Chubb" | |

_____        _____
Signature                                Signature

By:_____        By:_____

Title:_____        Title:_____

Date:_____        Date:_____

Confidential