UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY, an Indiana corporation and ACE AMERICAN INSURANCE COMPANY a Pennsylvania corporation,<br><br>Defendants. | Case No. 16-cv-1054 (WMW/DTS)<br><br>**Jury Trial Demanded** |

**PLAINTIFF FAIR ISAAC CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SANCTIONS FOR SPOLIATION AND FAILURE TO COMPLY WITH DISCOVERY ORDER**

Plaintiff Fair Isaac Corporation ("FICO") moves the Court for monetary and evidentiary sanctions against Defendant Federal Insurance Company ("Federal") for failing to comply with the Court's discovery order, and for spoliation of its business rules used in the sale of insurance policies through the EZER application. This Court ordered Federal to produce its business rules used in connection with its business applications using FICO's Blaze Advisor®. When Federal finally produced the business rules, it failed to produce the business rules used with the EZER application, a policy administration system used in connection with the sale of insurance in the United Kingdom and Europe. Federal admits that the EZER application, which Federal used to

1

sell insurance policies during much of the ongoing lawsuit, is now "broken" and "incomplete." An evidentiary sanction, as well as fees for the instant motion, is required.

**I.     Relevant Facts**

    **A.     Federal uses Blaze Advisor® to automate decision-making in the sale of insurance policies.**

Chubb & Son, a division of Federal, licensed Blaze Advisor® in June 2006 to increase revenue by expanding in the middle market. (Declaration of Heather J. Kliebenstein (hereafter "Kliebenstein Decl."), Exhibit 1.) By licensing Blaze Advisor®, Chubb & Son automated decision-making in connection with the sale of insurance. Blaze Advisor® executes business rules in distinct situations in connection with the sale of insurance to, for example, determine whether to quote a risk and at what price. Additionally, Blaze Advisor® further contributes to the generation of revenue by enabling the handling of a greater volume of sales and by making faster, more precise, and more consistent decisions. Over the next decade, Chubb & Son integrated Blaze Advisor® into at least 17 applications used in connection with the sale of insurance. (Kliebenstein Decl. Exhibit 2.)

One of these applications that uses Blaze Advisor® in the United Kingdom and Europe is EZER. EZER, which stands for "European Zone Executive Risk", is an underwriting workstation and policy administration system that supports the complete end-to-end policy life cycle for all Chubb Commercial Insurance and Chubb Specialty Insurance business in Chubb's European Zone (13 European Countries). (Kliebenstein Decl. Exhibit 3.)

**B.    FICO has repeatedly sought discovery related to the use and purpose of each application using Blaze Advisor®, including EZER.**

On April 21, 2016, FICO sued Federal for breach of contract and copyright infringement. (Dkt. 1.) As part of FICO's copyright damages remedy, FICO seeks to disgorge profits attributable to Defendants' infringing use of Blaze Advisor®.[1] Related to FICO's burden to prove that Blaze Advisor® contributes to the sale of insurance and thereby to revenue, FICO has sought discovery related to the use of, purpose for, and revenue earned by each of the applications running Blaze Advisor®.

On December 29, 2017, FICO served its second set of interrogatories. (Kliebenstein Decl. Exhibit 4.) Interrogatory Nos. 15-20 seek the gross written premiums from insurance policies in connection with which Federal used the Blaze Advisor® software. (*See id.*) Interrogatory Nos. 18 sought the gross written premiums from use of Blaze Advisor® in the United Kingdom, and Interrogatory No. 20 sought the gross written premiums from use of Blaze Advisor® anywhere outside of the United States, Canada, United Kingdom, and Australia. (*Id.*) In response, Federal admits that it used EZER in the United Kingdom and Europe beginning in at least 2012 and remained operational through at least 2018.[2] (Kliebenstein Decl. Exhibits 5-6.)

---

[1] (*See* Dkt. 499 at 43-45.); Under § 504(b) of the Copyright Act, FICO's burden of proof is only to prove Federal's gross revenue connected to or related to infringement. *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 799 (8th Cir. 2003). This District has found a "connection" to mean the infringement "contributes to" profits. *Honeywell Int'l Inc. v. ICM Controls Corp.*, No. 11-cv-569, 2017 U.S. Dist. LEXIS 11692, at *12, 15-16 (D. Minn. Jan. 26, 2017) (rejecting more onerous reading of § 504(b)).

[2] FICO has requested supplementation of the interrogatory responses to include gross written premiums for 2019 and for 2020 year-to-date. FICO's requests have gone unanswered.

On December 29, 2017, FICO served its second set of requests for production, which included Request Nos. 55-70. (Kliebenstein Decl. Exhibit 7.) These requests sought: "All documents relating to the decision to implement the application known as [insert application name], including all documents relating to the business benefits to be derived from the implementation and the efficiencies to be realized from using the application." (*Id.*) Request No. 67 relates to the EZER application.

    **C.**    **Court ordered Federal to produce all business rules used by its applications using Blaze Advisor®.**

In further support of its case, FICO sought discovery of the business rules deployed in the Blaze Advisor® applications to further reveal how Blaze Advisor® applications generate revenue through automated decision-making. FICO served the following document request on December 28, 2018:

> **REQUEST NO. 90:** Specific to each application that uses or used Blaze Advisor® software, all documents relating to the business rules of each application.

(Kliebenstein Decl. Exhibit 8.)

Federal refused to produce the business rules, and FICO moved to compel. (Dkt. 271, 275, 286, 301.) The Court granted FICO's motion to compel and ordered production of the business rules. (Dkt. 305.) Judge Wright affirmed the Court's Order on October 21, 2019. (Dkt. 593.)

    **D.**    **Federal failed to produce business rules from EZER applications.**

Following the Court's affirmance of the June Order to compel the production of the business rules, on November 19, 2019, Federal produced static printouts of the business rules for Federal's domestic applications that use Blaze Advisor®.

4

(Kliebenstein Decl. Exhibit 9.)  This production failed to comply with the Court's ordered method of production, namely the Blaze Advisor® rules repositories in .xml files and business object models in .jar files.  (*See* Dkt. 305).  Additionally, Federal's production failed to produce any information for Federal's ADAPT and EZER applications.  (Kliebenstein Decl. Exhibits 10-11.)  When Federal finally produced the rules repositories in the format ordered on December 17, 2019, Federal informed FICO that it no longer possessed the rules from the EZER applications.  (Kliebenstein Decl. Exhibit 12.)  Federal informed FICO that the EZER application is now "broken" and "incomplete" and that Federal is unable to extract the rules.  (*Id.*)

The business rules for the applications that have been produced further reveal how Federal's use of Blaze Advisor® contributes to revenue.  Namely, the produced business rules identify numerous characteristics of risk that Federal uses Blaze Advisor® to analyze so it can rate, price, and quote its insurance to specific customers in an automated manner.  If the customer accepts the quote, the Blaze Advisor® applications also book, bind, and issue the customer's policy.  This proof is not otherwise available in Federal's production.

The produced business rules also show that Federal uses Blaze Advisor® in an application not previously disclosed, for which FICO is entitled to an additional application licensing fee.  Federal's failure to produce EZER's business rules prevents FICO from independently verifying how EZER uses Blaze Advisor® to contribute to revenue and from independently verifying whether Federal used EZER in multiple forms and/or locations to entitle FICO to additional application licensing fees.

5

Despite repeated inquiries from FICO, Federal has refused to explain how or why it destroyed the EZER business rules in the face of Federal's obligation to preserve all relevant evidence. Federal's Interrogatory Nos. 18 and 20 show Federal uses EZER to sell insurance policies after the litigation commenced. Because Federal has refused to explain the circumstances of the destruction, it is unclear whether the Federal destroyed the EZER rules after FICO served Request No. 90 or after the Court entered the production Order on June 4, 2019 (Dkt. 305).

## II.     Legal Standards

### A.     Failure to comply with a discovery order necessitates sanction.

When a party fails to comply with a discovery order, the Court "must" award attorney fees when the failure to respond was not "substantially justified." Fed. R. Civ. P. 37(b)(2)(C). Additional sanctions available under Rule 37(b) include an order directing that certain designated facts be taken as established for purposes of the action, payment of reasonable expenses, and civil contempt of court. *Paisley Park*, 330 F.R.D. at 232.

### B.     Failure to preserve evidence is spoliation.

The Federal Rules of Civil Procedure require that parties take reasonable steps to preserve documents and information relevant to the litigation. Fed. R. Civ. P. 37(e). "A party is obligated to preserve evidence once the party knows or should know that the evidence is relevant to future or current litigation." *Paisley Park Enters. v. Boxill*, 330 F.R.D. 226, 232 (D. Minn. 2019) (citing *E*Trade Secs. LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 588 (D. Minn. 2005); Fed. R. Civ. P. 37(e), advisory committee's note to

2015 amendment (stating that rule requires preservation of evidence when litigation is reasonably foreseeable)).

Sanctions may be imposed for failure to preserve documents and information, provided that the lost documents or information cannot be restored or replaced through additional discovery. Fed. R. Civ. P. 37(e). "Rule 37 sanctions should be crafted to both punish and deter." *Multifeeder Tech., Inc. v. British Confectionery Co.*, No. 09-1090, 2012 U.S. Dist. LEXIS 132619, at *11 (D. Minn. Sep. 18, 2012). Rule 37(e) makes two types of sanctions available to the Court. Under Rule 37(e)(1), if the adverse party has suffered prejudice from the spoliation of evidence, the Court may order whatever sanctions are necessary to cure the prejudice. Prejudice exists when spoliation prohibits a party from presenting evidence that is relevant to its underlying case. *Paisley Park*, 330 F.R.D. at 236. Under Rule 37(e)(2), where a party's conduct is intentional, the Court may order more severe sanctions, including a presumption that the lost information was unfavorable to the party. *See Paisley Park*, 330 F.R.D. at 232. Courts may also rely on their inherent power and sanction any conduct that abuses the judicial process in some manner. *Stevenson v. Union Pac. R.R.*, 354 F.3d 739, 751 (8th Cir. 2004).

Under Rule 37(e)(2), certain sanctions require a finding of bad faith to deprive the opposing party of evidence. "Intent rarely is proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *Paisley Park*, 330 F.R.D. at 236 (quoting *Morris v. Union Pacific R.R.*, 373 F.3d 896, 901 (8th Cir. 2004)). "There need not be a 'smoking gun' to prove intent." *Id.*

(quoting *Auer v. City of Minot*, 896 F.3d 854, 858 (8th Cir. 2018)). Failure to preserve some types of documents and information while preserving others is a reasonable basis to infer that the destroying party acted with bad faith. *Stevenson*, 354 F.3d at 748. Failure to provide an explanation for the deletion weighs against the party and allows a court to infer bad faith. *Malibu Media, LLC v. Tashiro*, No. 1:13-cv-00205-WTL-MJD, 2015 U.S. Dist. LEXIS 64281, at *44-45, 47 (S.D. Ind. May 18, 2015); *see also Ala. Aircraft Indus. v. Boeing Co.*, 319 F.R.D. 730, 746 (N.D. Ala. 2017).

### III.   Federal's discovery misconduct warrants monetary and evidentiary sanctions.

#### A.   Federal's failure to produce EZER's business rules is contempt of the Court's June 4th Order.

This Court ordered Federal to produce the business rules for each of the applications running Blaze Advisor, including EZER. (*See* Dkt. 305.) Judge Wright affirmed that Order. (Dkt. 593.) Federal has not produced the business rules for the EZER application. Federal is in contempt of the Court's Order. The Court should award sanctions.

#### B.   Federal's destruction of EZER's business rules is spoliation.

Federal's destruction of EZER's business rules is spoliation. FICO filed the lawsuit in April 2016. Federal used EZER in connection with the sale of insurance then and through at least 2018.[3] Federal destroyed the EZER business rules during the

---

[3] As stated above, FICO has requested supplementation of gross written premiums connected to the sales of insurance policies using Blaze Advisor® for 2019 and for 2020 year-to-date. Defendants have failed to timely supplement.

8

pendency of the suit, and possibly after FICO served RFP 90 and the Court ordered production.

FICO's discovery, including Document Request Nos. 67 and 90 and Interrogatory Nos. 18 and 20, gave Federal a specific duty to preserve its business rules used in its Blaze Advisor® applications.  *See generally Paisley Park*, 330 F.R.D. at 232.  This Court ordered production.  (Dkt. 305.)  Despite this specific duty to preserve, Federal destroyed EZER's business rules.

### C. Loss of EZER business rules has prejudiced FICO.

The prejudice to FICO is real.  FICO requested the business rules for the EZER application well in advance of the close of discovery.  Federal did not produce them.  Federal challenged and continues to challenge the connection between Blaze Advisor® and Defendants' revenue (*see* Dkt. 445 at 32-38), a position directly refuted by the business rules.  Federal's destruction of EZER's business rules obstructs FICO's ability to present evidence on the role of Blaze Advisor® in the sale of insurance policies in connection with the EZER application.  FICO cannot obtain such evidence through different or additional discovery.  *See* Fed. R. Civ. P. 37(e).  Federal should not gain an evidentiary advantage from stonewalling discovery and its spoliation of relevant evidence.

Federal may argue EZER's business rules are cumulative to other discovery.  They are not—EZER is a different application than the other accused applications.  Federal does not get to "select" what evidence to produce or from what sources.  *See Paisley*

9

*Park*, 330 F.R.D. at 235.  Federal cannot prove the destroyed rules are indeed cumulative to what has already been produced.  *See id.*

### D. Sanctions are required to cure the prejudice.

FICO seeks evidentiary and monetary sanctions for Federal's contempt of court and spoliation.  Both are appropriate.

### 1. Federal's destruction of the EZER business rules was in bad faith.

Federal had an obligation to preserve EZER's business rules.  To date, despite repeated requests from FICO, Federal offered no explanation of when the rules were destroyed, who destroyed them, or what measures were in place to ensure that the rules were preserved.  The lack of any explanation for why some files were deleted but others were not allows the Court to infer that Defendants intentionally targeted the files at issue because they contained adverse information.  *Malibu Media*, 2015 U.S. Dist. LEXIS 64281, at *44-45; *see also Ala. Aircraft Indus.*, 319 F.R.D. at 746; *Stevenson*, 354 F.3d at 748.

Federal's destruction of the EZER business rules is all the more flagrant in light of the parties' e-discovery stipulation filed with the Court on March 10, 2017.  (Dkt. 43-2.)  Federal stipulated:

> In addition, the parties have acted to preserve general corporate electronic documents that are reasonably relevant to this proceeding. Each party has circulated a litigation hold notice designed to ensure the preservation of potentially discoverable electronic and other information to those employees and officers reasonably identified as potentially possessing such information.

(*Id.* at 3.)  Despite claiming to have taken actions that would have preserved the EZER business rules, Federal still destroyed the EZER business rules.

10

Federal's conduct mirrors the sanctionable conduct in the *Paisley Park* decision. 330 F.R.D. at 233-34. Federal used EZER to sell insurance policies into at least 2018 (Kliebenstein Decl. Exhibit 6), well after litigation began in April 2016 and after FICO served Document Request No. 67 (Kliebenstein Decl. Exhibit 7) and Interrogatory Nos. 18 and 20 (Kliebenstein Decl. Exhibit 4) related to Federal's use of Blaze Advisor® in the EZER application. Federal will not tell FICO the date of the destruction, making it possible that the date of destruction is after FICO served Request No. 90 explicitly requesting the business rules and after the Court ordered the production of the rules. Federal's conduct is sanctionable.

### 2. Even if the destruction was not in bad faith, controlling precedent supports sanctions.

The Eighth Circuit's *Stevenson* case is instructive. In *Stevenson*, defendant destroyed track maintenance records after the commencement of litigation and the filing of the request for production of the track records. *Id.* at 749-50. The district court found the records would have been available and the defendant made no effort to preserve them. The district court imposed an adverse inference instruction for the ongoing destruction of records *during litigation and discovery*. The Eighth Circuit held:

> Sanctioning the ongoing destruction of records during litigation and discovery by imposing an adverse inference instruction is supported by either the court's inherent power or Rule 37 of the Federal Rules of Civil Procedure, even absent an explicit bad faith finding, and we conclude that the giving of an adverse inference instruction in these circumstances is not an abuse of discretion.

*Id.* at 750. Here, Federal destroyed the EZER business rules after the commencement of litigation. This litigation is about the applications that use Blaze Advisor (and the rules in

11

Blaze Advisor). Federal destroyed the EZER business rules after multiple discovery requests related to the use of Blaze Advisor® in EZER. The business rules would have been available, and Federal did not preserve them. Federal's counsel has refused to state whether Federal informed the proper personnel of a litigation hold or of Request No. 90. Under Rule 37 and the inherent power of the Court, sanctions, including adverse inference instructions, are proper. *See id.*

> **3.    Adverse inference instructions are proper to cure FICO's prejudice in the face of Federal's bad faith misconduct.**

Sanctions, including adverse inference instructions, are the only means to cure FICO's prejudice. Federal continues to challenge Blaze Advisor®'s contribution to revenue, including by the use of Blaze Advisor® in EZER. (Dkt. 445 at 32-38.) FICO is prejudiced by being unable to present objective evidence of Blaze Advisor®'s functions in EZER. Accordingly, the following adverse inference is proper:

> **EZER, as a policy administration system, contributes to revenue in the same way Defendants' other policy administration systems that deploy Blaze Advisor® contribute to revenue.**

In this way, Defendants are limited in their permissible rebuttal evidence. The sanction precludes Defendants from isolating the EZER applications and arguing that FICO has failed to prove Blaze Advisor®'s contribution to the revenue connected to that application. The spoliation of the business rules in the EZER application should not prejudice FICO. The sanction places EZER, a policy administration system,[4] with the

---

[4] Policy administration systems are systems used in the insurance industry for quoting, booking, binding, and issuing insurance policies, which generate revenue.

12

other policy administration systems in which Federal uses Blaze Advisor®, rendering the proof relevant to the other systems equally applicable to EZER.[5]

### 4. Monetary sanctions are also proper.

This Court should award FICO attorneys' fees because Federal's position is not substantially justified. Federal has provided no justification for why the business rules are now unavailable.[6] Federal must pay FICO's reasonable attorney fees incurred in bringing the present motion. *See* Fed. R. Civ. P. 37(b)(2)(C); *see also Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, No. 15-3183 ADM/LIB, 2017 U.S. Dist. LEXIS 1764, at *8-9 (D. Minn. Jan. 5, 2017); *Cargill, Inc. v. Ron Burge Trucking, Inc.*, 284 F.R.D. 421, 430 (D. Minn. 2012); *Card Tech. Corp. v. Datacard Inc.*, 249 F.R.D. 567, 572 (D. Minn. 2008) (awarding fees under Fed. R. Civ. P. 37(b)(2)(C)).

## IV. Conclusion

The matter before the Court is egregious. Litigation commenced, and EZER's business rules continued to be used in the sale of insurance policies. FICO served pointed discovery requests, and the Court ordered production of the rules. Federal has not produced EZER's business rules. Federal now admits EZER's business rules are unavailable and were destroyed. Sanctions are proper. Precedent in this Circuit and this District support the award of monetary and evidentiary sanctions for Federal's egregious

---

[5] The sanction is narrowly tailored. Application of the sanction depends of FICO's proof relevant to the contribution to revenue made by Federal's policy administration systems, generally. The sanction is well short of deeming facts to be established for the purposes of the action.

[6] To the extent the loss of the business rules is a justification, Federal should then be sanctioned for spoliation.

conduct. This Court should award FICO its attorneys' fees in bringing this motion and impose the two requested adverse inference sanctions.

Dated: February 25, 2020

                MERCHANT & GOULD P.C.

                /s/ Heather J. Kliebenstein
                Allen Hinderaker, MN Bar # 45787
                Heather Kliebenstein, MN Bar # 337419
                Michael A. Erbele, MN Bar # 393635
                Joseph W. Dubis, MN Bar # 398344
                MERCHANT & GOULD P.C.
                150 South Fifth Street
                Suite 2200
                Minneapolis, MN  55402-2215
                Tel:  (612) 332-5300
                Fax:  (612) 332-9081
                ahinderaker@merchantgould.com
                hkliebenstein@merchantgould.com
                merbele@merchantgould.com
                jdubis@merchantgould.com

                *Attorneys for Plaintiff FICO*