UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Fair Isaac Corporation,　　　　　　　　　　　　Case No. 16-cv-1054 (WMW/DTS)

　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　**ORDER**

Federal Insurance Company, et al.,

　　　　Defendants.

## INTRODUCTION

Federal Insurance Company, et al., (Federal) seeks an order prohibiting Fair Isaac Corporation (FICO) from disclosing, in a manner consistent with the Court's Protective Order, the business rules that Federal has already produced in discovery. Specifically, FICO proposes to share Federal's underwriting business rules with its consulting expert so that the expert can analyze them using the Blaze Advisor software at issue in this matter. For the reasons discussed below, Federal's motion for a special protective order [Docket No. 704] is denied.

## FINDINGS OF FACT

This is a breach of contract and copyright infringement matter arising out of a software license agreement. Amended Complaint, Docket No. 132. FICO alleges Federal used its Blaze Advisor software in a manner that violated the parties' agreement and infringed FICO's copyright. *Id.* Blaze Advisor is a business rules management software that executes automated decisions based on business rules drafted by the software user. The software is used across a wide array of industries, including insurance underwriting. Here, Federal used Blaze Advisor to execute the underwriting rules by which Federal

determines whether to underwrite an insurable risk and at what price. The factual allegations of this matter and the procedural history have been well catalogued in prior motions and orders of this Court and will only be reviewed here as directly necessary to the instant dispute.

The gist of the present dispute involves FICO's use of Federal's business rules that were previously ordered produced by the Court. FICO seeks to disgorge Federal's profits arising from the alleged infringement of FICO's software. Amended Complaint, ¶ 59; Docket No. 132. It asserts that Federal's infringing use has directly contributed to the generation of Federal's profits. *Id.* ¶ 57. Federal denies that its use of Blaze Advisor contributes to revenues or profits except to the extent that it contributes to general overhead. As a corollary, Federal asserts that it is the content of its business rules (*i.e.,* the logic by which it makes underwriting decisions) that drives its generation of profits. *See, e.g.*, Docket No. 316. FICO retorts that, by automating the application of Federal's business rules, the Blaze Advisor software provides a unique environment in which the business rules are run and has a synergistic effect that increases revenue production. To test this hypothesis FICO sought—and received—discovery of Federal's business rules with the express intention of running those rules using the Blaze Advisor software. Despite articulating some skepticism regarding whether the discovery would yield admissible evidence, this Court nonetheless found that the discovery was relevant to FICO's claims.

As to the proportionality of this discovery, this Court made careful inquiry. Depending upon the methodology employed, Federal asserted that extracting the business rules could potentially require 20 weeks and cost $500,000. Docket No. 299.

The parties, however, agreed that production of the business rules in repository files (.xml) and business object model files (JAR or Java Archive files) would not be unreasonably burdensome. *Id.* Though Federal objected to this manner of production because it "would not be able to check the accuracy of the business rules [FICO generated from these files]," the Court ordered the files produced. Order, Docket No. 305.

Federal appealed that order to the District Judge, arguing, as it had before the Magistrate Judge, that the business rules should not be produced in any form because they are "highly confidential and commercially and competitively sensitive." Docket No. 316. Judge Wright nonetheless sustained the order, finding *inter alia*, that the Protective Order already entered in the case, Docket No. 44, alleviates these confidentiality concerns. Order, Docket No. 593.

Judge Wright issued her order on October 21, 2019. Federal produced the business rule files on December 19, 2019, designated "Confidential – Attorney's Eyes Only" under the Court's Protective Order. Shortly thereafter, Federal learned that FICO intended, consistent with the Protective Order, to share the business rule files with a consulting expert who had signed the Written Assurance required by the Protective Order. This motion followed.

Federal makes two arguments in opposition to FICO's intended use of the business rules: (1) that the information is so sensitive it cannot be disclosed to FICO's consulting expert; (2) there is no point to allowing the information to be shared with FICO's consulting expert because the period for expert disclosures has passed and, therefore, any information derived by FICO's consulting expert is inadmissible at trial.

3

**CONCLUSIONS OF LAW**

At the outset it is important to understand precisely what Federal asks this Court to do. The information at issue, after lengthy argument and appeal, was ordered produced in discovery—on June 4, 2019. Once produced, the discovery was designated "Confidential - Attorney's Eyes Only" under the Protective Order. The Protective Order expressly permits this information to be disclosed by FICO to a consulting expert (here, Mr. Brian Sacco) if the expert signs the Written Assurance. Docket No. 44, ¶¶ 3, 4. By seeking to prevent that disclosure Federal is asking this Court to modify its Protective Order. Therefore, Federal bears the burden of establishing good cause for the modification. *AGA Med. Corp. v. W.L. Gore & Assoc.*, No. 10-3734, 2011 U.S. Dist. LEXIS 160522, at *33 (D. Minn. Dec. 13, 2011).

**I.     Confidentiality**

Federal's primary argument is that the information FICO seeks to share with its consulting expert is extremely competitively sensitive. It is, in essence, the heart of Federal's business as it comprises the business rules that dictate Federal's underwriting process. The Court is persuaded that the information at issue is highly confidential, proprietary trade secret information. It has economic value to Federal precisely because it is not known by Federal's competitors. Competitive harm to Federal could result if the information were improperly disclosed.

Federal implies that the provisions of the Protective Order are inadequate to protect this information given its sensitivity. But the parties negotiated the Protective Order and did not except from its provisions any category of information that was so sensitive it simply was exempted from the discovery process, or could only be produced

4

to outside counsel. Rather, the Protective Order negotiated by the parties provides that the most sensitive information, designated "Confidential - Attorneys Eyes Only," may be shared with a limited set of designated persons, including a party's consulting expert. As Judge Wright found, the Protective Order is adequate to protect the confidentiality of this information. Order at 5, Docket No. 593.

Moreover, Federal has offered no basis to suggest that Mr. Sacco[1] will intentionally or inadvertently disclose the information he gleans from running Federal's business rules in the Blaze Advisor environment. Mr. Sacco does not work in the insurance industry; there is no indication he has or will consult with any Federal competitor. He has signed the Written Assurance and has agreed to be bound by the terms of the Protective Order. Moreover, the Court has already taken the extra precaution of instructing FICO's counsel to advise Mr. Sacco of the provisions of 18 U.S.C. § 401 regarding the Court's power to sanction willful disobedience to a lawful court order. Finally, as described in Section III below, this Court can (and will) order additional precautions regarding the use of this information. For all these reasons the Court finds that concerns for confidentiality do not justify issuance of an order prohibiting FICO from sharing the information with its consulting (and testifying) experts.

**II.    Futility**

Federal also argues that the Court should prohibit disclosure because such disclosure is, in essence, pointless. There appear to be two strands to Federal's futility argument: first, the disclosure cannot lead to the production of admissible evidence

---

[1] FICO intends to also disclose the information to its testifying experts, who have likewise signed the Written Assurance..

5

because the business rules FICO extracts from the files produced will not be authenticated; and second, any analysis conducted by Mr. Sacco is inadmissible—either through him or through FICO's disclosed testifying experts—because the time for expert disclosure has passed. FICO counters this second futility argument by asserting its intention to supplement its expert reports. Docket No. 711, pp. 11-13.

Federal's futility argument fails for two reasons. First, prohibiting FICO's use of the discovery this Court has already ordered produced because any evidence derived therefrom is ultimately inadmissible is both premature and too late. Assertions of inadmissibility put the cart before the horse—FICO has not attempted to supplement its expert disclosures or offer new expert analyses or admit evidence at trial. The District Judge will decide such issues of admissibility when and if they arise, not before.

The argument is too late in the sense that it is really nothing more than a challenge to the Court's order allowing the discovery itself. Boiled to its essence, Federal's argument is that, even if FICO is entitled to receipt of the discovery, it has no right to use the information produced. The order requiring production of the information necessarily allows FICO to utilize that information consistent with the terms of the Protective Order. Stated otherwise, prohibiting use of the information once discovered would be tantamount to prohibiting the discovery itself—an issue on which this Court and Judge Wright have already ruled.

There is one additional flaw in Federal's futility argument. FICO intends to share the business rules with Mr. Sacco so that it can analyze the interplay between the Blaze Advisor software and Federal's business rules. This analysis will aid FICO's understanding of the business rules and how Blaze Advisor contributes—or fails to

6

contribute—to Federal's profits. Whether or not FICO attempts to introduce such evidence, it is entitled to analyze the discovery produced for whatever strategic value it holds. The admissibility or inadmissibility of the evidence derived from the discovery is not a basis on which to preclude FICO's ability to analyze it. Indeed, to hold otherwise would, again, effectively nullify this Court's order that the information be produced in the first place.

### III.   Other Considerations

Finally, Federal argues that if the Court permits FICO to disclose the information to its consulting expert, Federal should be allowed to be present when the expert analyzes the business rules using Blaze Advisor. Federal makes no showing how its presence during the proposed analysis will safeguard the confidentiality of the information. FICO, however, has persuasively argued that Federal's presence will invade the attorney work product protection. Allowing Federal to observe how FICO and its experts analyze the business rules and assess their interplay with Blaze Advisor is protected work product. Fed. R. Civ. P. 26(b)(4)(C),(D); *United Health Grp. Inc. v. Columbia Cas. Co.*, No. 05-1289, 2010 U.S. Dist. LEXIS 153035, at *43-44. (D. Minn. Aug. 10, 2010). The request to be present during FICO's analysis of the discovery is accordingly denied.

There are, however, additional safeguards that can be imposed that will help ensure the continued confidentiality of the information. Accordingly, the Court hereby orders the following restrictions on FICO's use of Federal's business rules:

1.   FICO's analysis must be performed on a non-networked computer;

2.   Federal's business rules may not be loaded onto a computer that is connected to the internet or a network;

3. No persons other than FICO's outside counsel, Mr. Sacco, and FICO's disclosed experts may attend the analysis;

4. All notes, memoranda or documents reflecting the analysis may not be stored on a networked computer.

**IT IS SO ORDERED.**

Date:  March 5, 2020                                             s/ David T. Schultz
                                                                                 DAVID T. SCHULTZ
                                                                                 United States Magistrate Judge