## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

FAIR ISAAC CORPORATION,

        Plaintiff,

    v.

FEDERAL INSURANCE COMPANY,
an Indiana corporation, and ACE
AMERICAN INSURANCE COMPANY,
a Pennsylvania corporation,

        Defendants.

Court File No.  16-cv-1054 (WMW/DTS)

**MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S
MOTION FOR SANCTIONS**

---

Defendants Federal Insurance Company and ACE American Insurance Company (collectively, "Federal") submit this memorandum in opposition to Plaintiff Fair Isaac Corporation's ("FICO") motion for sanctions filed February 25, 2020.

## INTRODUCTION

The subject of FICO's motion is the repository rule files (i.e., the software code) that contain the contents of the business rules for a single application—the EZER application—that previously used FICO's Blaze Advisor software. At no time during discovery did FICO request the repository rule files for any of Federal's internal applications (let alone EZER) or indicate they were relevant to its claims. Instead, in an apparent afterthought and more than two months after the close of discovery, FICO requested those files. This Court expressed doubt regarding the relevance of any of the repository rule files and whether these files would even be admissible at trial but ordered them produced. (Dkt. 310, 8:12-16; Dkt. 305, ¶ 2.)

In response to the Court's Order, Federal produced the repository rule files for 9 of the 10 applications that have used Blaze Advisor.  However, Federal learned that the rule files associated with the EZER application had been rendered inaccessible as of March 2019—prior to FICO requesting the files and prior to the Court ordering their production. On December 17, 2019, Federal's counsel promptly informed FICO that the EZER repository rule files were inaccessible and could not be obtained or produced.  Instead of attempting to work through possible alternatives and obtain equivalent evidence through other means, FICO responded by seeking sanctions.

FICO's motion is a thinly veiled attempt to seize upon the unavailability of irrelevant and insignificant evidence to obtain an adverse inference instruction at trial that will significantly and unfairly prejudice Federal.  The irrelevance and insignificance of the evidence FICO seeks is illustrated by the fact that, during discovery, Federal produced a document that contains the contents of the EZER business rules, which is what FICO sought through the production of the repository rule files.  Nonetheless, despite having the contents of the EZER business rules, none of FICO's experts relied upon or analyzed the EZER business rules.

FICO's motion is further devoid of evidentiary support.  FICO relies only upon a single email exchange between counsel in which Federal's counsel informed FICO's counsel the rule files for the EZER application were inaccessible.  FICO has not come close to meeting its burden of demonstrating Federal acted in bad faith or intentionally destroyed evidence that has substantially prejudiced FICO, as is required for a spoliation motion.  FICO also does nothing to contradict Federal's consistent efforts throughout

discovery to act in good faith, including use of its best efforts to comply with the Court's

June 4, 2019 Order.  Put simply, just like the other *four* requests for sanctions FICO has

made in this litigation, all of which have been denied, FICO's latest request is without

merit and should be denied.

## BACKGROUND

**I.      THE SUBJECT OF FICO'S MOTION—THE EZER REPOSITORY RULE
         FILES AND THE CONTENTS OF FEDERAL'S BUSINESS RULES
         GENERALLY.**

The subject of FICO's motion is the repository rule file (i.e., the software code)

for a single application developed by Federal called EZER.  The EZER application,

which is one of ten of Federal's applications that used the Blaze Advisor software, was

developed as a commercial policy administration system to support Executive Risk

products for the Chubb Group's operations in certain parts of Europe.  (Declaration of

Mike Hutchinson, dated April 1, 2020 ("Hutchinson Decl."), ¶ 2.)  The EZER application

was decommissioned in or around March 2019 because, in place of EZER, Federal is

creating a new long-term archive solution for policy information to service this claims

requirement in the future.  (*Id.* at ¶ 6.)

After the close of discovery, and as outlined further below, FICO requested the

repository rule files for Federal's applications that used Blaze Advisor software,

including the EZER application, because these files contain the contents of the business

rules that were drafted by Federal employees and loaded into the Blaze Advisor software.

(*See* Dkt. 301.)  FICO argued it needed the repository rule files to see the contents of the

business rules which, it argued, are relevant to its disgorgement of profits claim.[1]  (*Id.*)
Specifically, FICO claimed the contents of the business rules are relevant for establishing
"proof of a nexus between Federal's revenues and Federal's infringing use of Blaze
Advisor."  (*Id.*)

The contents of the business rules are not relevant at all to FICO's disgorgement
claim.  The business rules are drafted by Federal employees and then uploaded to the
Blaze Advisor component within Federal's own proprietary software applications.
(McCarter Rep.[2], ¶¶ 23, 70, 75.)  The contents of those business rules, however, are not
relevant to establishing causal nexus because Blaze Advisor plays no role in the creation
of business rules.  (*Id.*)  Blaze Advisor merely automates decisions based on the business
rules that are drafted and uploaded by the user, which in this case was Federal.  (*Id.*)

Further, FICO has been provided all repository rule files (which contain the
contents of the business rules) for every Federal application that used Blaze, except for
the EZER application.  (*See* Declaration of Christopher Pham ("Pham Decl."), dated
April 1, 2020, ¶ 3.)  Those applications include CSI Express, Decision Point, Automated

---

[1] The attenuated nature of FICO's disgorgement claim is illustrated by the significantly
minor role Blaze Advisor plays at Federal.  Federal is an international organization that
uses over 1,500 internal software applications.  (McCarter Rep., ¶¶ 87-88.)  Blaze
Advisor software is a single software component (among many components) that was
integrated into 10 (or .006%) of those applications.  (Dkt. 441, ¶ 2.)  Further, Blaze
Advisor is just 1 of 45 third-party software technologies used by Federal in its internal
applications and just 1 of 1,545 technologies that are used to build and implement
Federal's internal applications.  (McCarter Rep., ¶¶ 89-90.)

[2] The Expert Report of William S. McCarter, which is cited to herein as "McCarter
Rep.", is attached as Exhibit 2 to the Declaration of Terrence J. Fleming in Support of
Defendants' Motion for Summary Judgment dated July 25, 2019.  (*See* Dkt. 432.)

Renewal Process, CUW, IRMA (Individual Rate Modification Application), TAPS (Texas Accident Prevention System), Premium Booking, Evolution, and ADAPT-ABL. (*Id.*)  In addition, as outlined further below, although the EZER repository rule files have not been produced Federal did produce the contents of the EZER business rules during discovery in another format.  (*Id.*, Ex. A, FED017463_0031.)  FICO ignores these facts when it argues that the repository rule file of a single application is "key" evidence on its disgorgement claim.

## II.   DURING DISCOVERY, FICO DID NOT SEEK PRODUCTION OF THE EZER REPOSITORY RULE FILES.

### A.   FICO served overly broad, all-encompassing discovery requests that do not reasonably encompass the repository rule files.

During discovery, FICO served overly broad, all-encompassing discovery requests related to Federal's business rules and applications, including the following:

> Specific to each application that uses or used Blaze Advisor software, all documents relating to the business rules of each application.

(Pham Decl., Ex. B; RFP 90.)  The request does not reasonably encompass the *software code* associated with business rules.  (*Id.*)  Further, the discovery request does not put Federal on notice that FICO was seeking software code associated with the EZER application.  (*Id.*)  Federal objected to the request as overly broad, unduly burdensome, and not proportional to the needs of the case given it seeks "all" documents and is unlimited in time.  (*Id.* at Ex. C.)

5

**B.      During discovery, Federal produced documents that reflect the EZER business rules.**

Notwithstanding its objections, Federal undertook good-faith efforts to produce all documents related to the business rules of each application.  In doing so, in or around January 28, 2019, Federal produced a document that reflects the contents of the business rules that are used in the EZER application.  (*Id.* at ¶ 6, Ex. A, FED017463_0031.) Despite FICO's position in its current motion that the rules are essential to its disgorgement claim, FICO never relied on this document in depositions or in motion practice, and its experts have not analyzed the EZER business rules.

**C.      After discovery closed, FICO seeks the repository rule files for all applications that use Blaze Advisor.**

Discovery closed on March 22, 2019.  (Dkt. 205.)  During the discovery period, FICO did not file a motion to compel documents responsive to RFP 90 and did not seek production of further documents concerning the contents of the business rules.  Further, FICO had not requested the repository rule files associated with *any* of the applications that use Blaze, let alone the repository rule file for the EZER application, which file is the subject of FICO's current motion.  Instead, on May 6—more than one month after the close of discovery—FICO submitted a letter to the Court seeking production of the software code underlying Federal's business rules and applications.  (*See* Dkt. 286.)

### D.     The Court expresses doubt regarding their relevance but orders the repository rule files produced.

On June 4, 2019, the Court held a teleconference to address, among other things, FICO's request for the software code.  (*See* Dkt. 310.)  During the hearing, the Court expressed doubt regarding the relevance of the business rules' contents to FICO's claim:

> I have to confess Ms. Kliebenstein, I'm a little uncertain as to why knowing the content of the rules themselves is truly necessary for connecting the alleged infringement to the revenues.  I'm struggling to see it[.]

(Dkt. 310, 8:12-16.)  The Court additionally expressed doubt regarding the evidentiary value of the software code given that the file sets are unverified and potentially would be inadmissible at trial.  (*Id.* at 11-12.)  However, the Court ordered that Federal "extract the repository rule files (.xml) and business object model files (JAE (JAVA Archive) files) on or before June 14, 2019."  (Dkt. 305, ¶ 2.)  Thereafter, Federal undertook its best efforts to comply with the Court's Order and produce the repository rule files in the format FICO requested.

### E.     Federal's efforts to comply with the Court's Order in good faith.

On November 19, 2019, Federal produced the business object model files in the JAVA source code format (i.e. human readable format) for all applications, except for ADAPT and EZER, because the source code for these two applications could not be located at that time.  (Pham Decl., ¶ 4.)  The repository rule files for ADAPT presented technical issues but were extracted and produced on December 17, 2019.  (Pham Decl., 5.)  On the same day, Federal's counsel informed FICO's counsel that Federal's

employees had determined that the EZER repository rule files could not be extracted and produced.  (*Id.*)

The EZER repository rule files had been rendered inaccessible in or around March 29, 2019 when the Blaze Advisor component was turned off by Federal technical personnel.  (Hutchinson Decl., ¶ 6.)  At this time, the EZER application stopped using the Blaze Advisor component because Federal is decommissioning the EZER application altogether and creating a new long-term archive solution for policy information to service this claims requirement in the future.  (*Id.*)  As part of this decommissioning, the Blaze Advisor component was turned off.  (*Id.*)  When the Blaze Advisor component was turned off, the development environment containing the repository rule file and BOM files ceased to work rendering the repository rule file inaccessible.  (*Id.*)  At the time Blaze was turned off, FICO had not requested the repository rule files for *any* of the applications that use Blaze, let alone the repository rule file for EZER specifically.  (*See* Dkt. 301.)  In addition, Federal had no way of knowing the files would be requested given the issue had not been raised at any time during discovery by FICO and, by the time FICO did make the request, discovery had already closed.  (*Id.*)

Although the EZER application is still active, it does not use the Blaze Advisor component, and is essentially an artifact that can be reviewed in read-only mode.  (*Id.* at ¶ 7.)  The EZER application was placed in read-only mode in or around May 8, 2019 and has been in that mode ever since.  (*Id.*)  In read-only mode, no transactions can be made. (*Id.*)  The application was placed in read-only mode so Federal employees, specifically

claims adjusters, could see the original policy details associated with policies previously processed through EZER.  (*Id.*)  It cannot be placed back into a different mode.  (*Id.*)

Based on the above, Federal is unable to access and produce the repository rule file associated with the EZER application.  (*Id.* at ¶ 8.)  Contrary to FICO's statement to this Court, the EZER application and its associated rules were never involved in decision support regarding claims processing.  (*Id.*)

It is possible to make a production of the EZER application code in its current state in read-only mode.  (*Id.* at ¶ 9.)  The EZER application is written in the PowerBuilder programming language and the PowerBuilder source code for this application is available.  (*Id.*)  However, the PowerBuilder source code does not contain the contents of the business rules that were incorporated into the Blaze Advisor component of EZER.  (*Id.*)

## III.    THIS IS FICO'S FIFTH REQUEST FOR SANCTIONS, NONE OF WHICH HAVE BEEN GRANTED.

FICO's latest motion for sanctions is all too familiar, being the fifth such motion to be filed by FICO.  (*See* Dkt. 149 at 43 (requesting sanctions in the form of attorneys' fees and costs and significant evidentiary sanctions including adverse inferences and restrictions on Federal's presentation of evidence); Dkt. 184 at 1 (requesting evidentiary sanctions in the form of adverse inferences); Dkt. 353 at 2 (requesting sanction of attorneys' fees and costs); Dkt. 553 at 2-4 (requesting sanction of striking declaration).)  The Court has denied all four of FICO's prior requests for sanctions.

Requests for sanctions are not to be made lightly. *See Ewing v. Empire Capital Funding Grp., Inc.*, 2018 WL 3629923, at *2 (S.D. Cal. July 30, 2018) (admonishing party for filing excessive requests for sanctions). Indeed, this Court denied FICO's last request for discovery sanctions because FICO provided no proof of bad faith:

> The reason for denial of the request for attorney's fees is that I do not believe that the defendant is acting in bad faith, and I certainly don't believe that the lawyers representing the defendant are acting in bad faith.

(Dkt. 310; Tr. 61:24-62:3.) FICO's fifth and latest request similarly lacks merit because, as outlined above, it is completely lacking in the necessary proof.

## ARGUMENT

### I.   IT IS FICO'S BURDEN TO ESTABLISH THAT SANCTIONS ARE APPROPRIATE.

#### A.   Spoliation sanctions require proof of intentional, bad faith destruction of evidence that prejudiced the moving party.

"To establish spoliation, the moving party must show that the adverse party destroyed potential evidence, that the evidence was discoverable, and that the loss of evidence prejudiced the moving party." *Nicollet Cattle Co. v. Un. Food Grp., LLC,* No. CIV 08–5899 JRT/FLN, 2010 WL 3546784, at *4 (D. Minn. Sept. 7, 2010) (citing *Lexis–Nexis v. Beer*, 41 F.Supp.2d 950, 954 (D. Minn. 1999)).

"The ultimate focus for imposing sanctions for spoliation of evidence is the intentional destruction of evidence indicating a desire to suppress the truth[.]" *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007). "The intentionality requirement means that the destruction must have been purposeful." *Insignia Sys., Inc. v. News Am. Mktg. In–Store, Inc*., No. CIV. 04–4213 JRT/AJB, 2009 WL 483850, at *4 (D.

Minn. Feb. 25, 2009).   "Severe spoliation sanctions, such as an adverse inference instruction, are only appropriate upon a showing of bad faith."  *Stepnes v. Ritschel*, 663 F.3d 952, 965 (8th Cir. 2011).

### B.   Sanctions are not appropriate where a party acts in good-faith to comply with the court's discovery orders.

Rule 37(b)(2) "vests courts with broad discretion to issue sanctions for failure to comply with discovery orders." *Ackerman v. PNC Bank, Nat'l Ass'n*, No. 12-CV-42 SRN/JSM, 2014 WL 258565, at *2 (D. Minn. Jan. 23, 2014).   However, FICO's contention that the Court "must" award sanctions under Rule 37(b)(2) (Dkt. 718 at 6) is legally incorrect and is a position that has been specifically rejected by this Court.  *See Ackerman*, 2014 WL 258565 at *2 ("This Court rejects Plaintiff's contention that Fed. R. Civ. P. 37(b)(2)(A) "dictates" that sanctions "must be awarded" against a party who fails to obey a discovery order."); *see also Card Tech. Corp. v. DataCard Inc.,* 249 F.R.D. 567, 571 (D. Minn. 2008).   Indeed, the provision FICO cites to—Fed. R. Civ. P. 37(b)(2)(C)—provides that no such award should be given where a party's conduct is "substantially justified or other circumstances make an award of expenses unjust."   The court's discretion is further "bounded by the requirement of Rule 37(b)(2) that the sanction be 'just' and relate to the claim at issue in the order to provide discovery." *Avionic Co. v. Gen. Dynamics Corp.*, 957 F.2d 555, 558 (8th Cir. 1992).   Further, good-faith efforts to comply with discovery orders counsel against sanctions.  *Robeck v. Ford Motor Co.*, No. CV 04-4858 (PJS/JJG), 2006 WL 8444978, at *5 (D. Minn. Oct. 11, 2006), *report and recommendation adopted*, No. CV 04-4858 (PJS/JJG), 2006 WL

11

8444980 (D. Minn. Dec. 21, 2006) (dismissing motion for sanctions when non-moving party showed substantial effort in complying with a difficult order and moving party greatly overstated resulting prejudice).

## II.    FICO HAS FAILED TO MEET ITS BURDEN.

FICO claims that failure to produce the EZER repository rule files justifies sanctions for two reasons.  First, FICO argues Federal's inability to produce the EZER repository rule files amounts to spoliation.  Second, FICO argues that Federal's inability to produce the EZER repository rule files violates the Court's June 4, 2019 Order.  Both arguments are without merit and the request for sanctions should be denied.

### A.    FICO's spoliation claim is without merit.

FICO's spoliation claim fails for at least four reasons.  First, during this litigation Federal has always acted in good-faith and taken all necessary steps to preserve relevant evidence including the EZER repository rule files.  Second, FICO has failed to set forth *any* evidence of bad faith, intentional destruction of evidence as is required to support a spoliation motion.  Third, FICO will not suffer any prejudice due to the unavailability of the EZER repository rule files given the lack of relevance of the files and that the repository rule files for 9 of the 10 applications[3] that use Blaze have been produced. Fourth, FICO's requested sanction—an adverse inference—is wholly inappropriate

---

[3] In this litigation, FICO has taken the position that an additional 7 applications use Blaze for a total of 17 applications.  In fact, only 10 of Federal's internal applications use Blaze. Nonetheless, Federal has produced the files associated with the additional 7 applications. Federal reserves the right to seek to preclude use of such files at trial.

because FICO has not shown intentional destruction of evidence demonstrating a desire to suppress the truth, as is required to obtain such a remedy.

> **1.      Federal has acted in good faith during discovery and taken all necessary steps to preserve relevant evidence.**

Federal took all necessary steps to preserve relevant evidence.   A sanction for destruction of evidence is only appropriate against a litigant where the litigant knew or should have known of the relevance of the evidence.   *Delgado-O'Neil v. City of Minneapolis*, 745 F. Supp. 2d 894, 905 (D. Minn. 2010), *aff'd*, 435 F. App'x 582 (8th Cir. 2011); *see also Paisley Park Enterprises, Inc. v. Boxill*, 330 F.R.D. 226, 233 (D. Minn. 2019) ("Even when litigation is reasonably foreseeable, a party is under no obligation 'to keep every shred of paper, every e-mail or electronic document and every backup tape.'") (citation omitted); Fed. R. Civ. P. 37(e), advisory committee's note to 2015 amendment (explaining that the scope of information that should be preserved is often uncertain).

Federal has taken all necessary steps to preserve relevant information, including sending regular litigation holds that have been periodically updated throughout the course of litigation.  (Declaration of Kevin Murphy dated April 1, 2020, ¶¶ 1-4.)  In 2016, when this litigation began, there is simply no way Federal and its counsel could have anticipated that FICO would request repository rule files for the EZER application, and that the request would be made after discovery was closed.  By the time FICO had first made the request—in May of 2019—the files in question were already inaccessible. (Hutchinson Decl., ¶ 6.)   Under these circumstances—where Federal has taken all necessary steps to preserve relevant evidence, where Federal had no way of knowing the

EZER repository rule files would be requested (after the close of discovery) and when the files had already been rendered inaccessible—sanctions are improper. *Delgado-O'Neil*, 745 F. Supp. 2d at 905.

> ### 2. FICO has not set forth *any* evidence of bad faith, intentional destruction of evidence to support its spoliation motion.

FICO's motion also fails because it has not submitted any evidence of bad faith, intentional destruction of evidence. The exhibits submitted in support of FICO's motion do not contain any evidence of bad faith. (*See* Dkt. 719.) Indeed, the repository rule files for the EZER application were rendered inaccessible *before* FICO ever requested them indicating a lack of bad faith. (Hutchinson Decl., ¶ 6.)

The evidence submitted in support of the current motion is irrelevant to the spoliation issue or compliance with the Court's June 4, 2019 Order and does not demonstrate bad faith, intentional destruction of evidence. FICO submits a declaration that contains nothing of substance and only attaches 12 exhibits. (Dkt. 719.) None of these 12 exhibits satisfy FICO's burden.

- One exhibit (No. 1) is a draft Request for Proposal from 2006 when Federal was soliciting bids for new technologies. (Dkt. 719, Ex. 1.) FICO submitted this RFP to the Court as its key summary judgment evidence in support of its argument that Blaze caused Federal to profit, even though the RFP pre-dated Federal's use of Blaze and does not mention FICO or Blaze at all. (*Id.*)

- Five additional exhibits (Nos. 4 through 8) are copies of document requests or interrogatories.

- Two more exhibits (Nos. 2 and 3) consist of excerpts from FICO's expert reports that contain generic descriptions of Federal's applications.

- The final four exhibits (Nos. 9 through 12) are copies of various portions of an email string between counsel in which Federal's counsel informed FICO's counsel that the EZER repository rule files were inaccessible and could not be produced.

In other words, aside from discovery requests exchanged during litigation and its own expert reports, the *only* evidence FICO submits related to the unavailability of the EZER files is a single email exchange among counsel. None of FICO's exhibits demonstrate bad faith or intentional destruction of evidence that prejudiced FICO.

Perhaps recognizing the weakness of its evidence, FICO argues that a showing of bad faith is not required. FICO relies in this regard on a single case—*Stevenson v. Un. Pac. R.R.*, 354 F.3d 739 (8th Cir. 2004). (Dkt. 718 at 11.) FICO misunderstands the case. The *Stevenson* court did *not* hold that a showing of bad faith is *never* required. Instead, it noted the bad faith requirement "does not extend to every possible disciplinary exercise of the court's inherent power[.]" *Stevenson*, 354 F.3d at 745. It then affirmed the district court's adverse inference instruction based on the court's inherent power due to the defendant's "ongoing destruction of records during litigation." *Id.* at 750. Here, no such conduct has been alleged, let alone proved.

The bad faith requirement *does* generally extend to requests for adverse inference instructions.   Indeed, Eighth Circuit precedent establishes a showing of bad faith is required where, as here, a party seeks an adverse inference instruction.  *Hallmark Cards, Inc. v. Murley*, 703 F.3d 456, 463-64 (8th Cir. 2013) ("[W]e conclude that a district court must issue explicit findings of bad faith and prejudice prior to delivering an adverse inference instruction"); *Menz v. New Holland N. Am., Inc.*, 440 F.3d 1002, 1006 (8th Cir. 2006) ("[A] finding of bad faith is necessary before giving an adverse inference instruction at trial against a plaintiff for the destruction of evidence."); *see also Stepnes*, 663 F.3d at 965.  Because FICO has presented no evidence of bad faith its motion must be denied.  Further, as outlined below, the motion should also be denied because FICO has not demonstrated prejudice or intentional destruction of evidence.

### 3.     FICO has not suffered and will not suffer prejudice.

FICO's spoliation motion must additionally be denied because it has not demonstrated any prejudice.  Spoliation cases, by their nature, require at least a partial inference of prejudice based on unobtainable (spoiled) evidence.  *BTD Mfg., Inc. v. Textron Fastening Sys., Inc*., No. CV 04-4109 (RLE), 2006 WL 8443276, at *7 (D. Minn. Apr. 24, 2006) (quoting *Foust v. McFarland*, 698 N.W.2d 24, 31 (Minn. App. 2005), *rev. denied* (Minn., August 16, 2005)).  The party seeking the sanction "must demonstrate not only that [the offending party] destroyed relevant evidence as that term is ordinarily understood, but also that the destroyed evidence would have been favorable to [the moving party]." *Id.* (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 221 (S.D.N.Y. 2003)).  "There is no prejudice resulting from destruction of evidence, for

purposes of a spoliation claim, if there is no support for the speculation that the destroyed evidence would have affected the litigation." *Merfeld v. Dometic Corp.*, 306 F. Supp. 3d 1070 (N.D. Iowa 2018), *aff'd*, 940 F.3d 1017 (8th Cir. 2019). "This requirement is even more necessary where the destruction was merely negligent, since in those cases it cannot be inferred from the conduct of the spoliator that the evidence would have been harmful to him." *BTD Mfg., Inc.*, 2006 WL 8443276, at *7.

Here, FICO has failed to establish any prejudice. (Dkt. 718, 9-10.) FICO claims only that the contents of the EZER business rules are somehow relevant to its disgorgement claim in establishing a causal nexus between Federal's revenue and its use of Blaze. As an initial matter, the contents of the EZER business rules were produced during discovery and never used by FICO. (*See* Pham Decl., Ex. A, FED017463_0031.)

The contents of the business rules are also not relevant to FICO's disgorgement claim because Blaze Advisor does not create business rules. The rules *are drafted by Federal employees*. Without the Federal-created business rules, Blaze is useless to Federal. As such, the contents of the business rules do not establish any nexus between use of Blaze and Federal's revenues. Indeed, this Court expressed doubt regarding the relevance of the business rules for establishing causal nexus:

> I have to confess Ms. Kliebenstein, I'm a little uncertain as to why knowing the content of the rules themselves is truly necessary for connecting the alleged infringement to the revenues. I'm struggling to see it[.]

(Dkt. 310, 8:12-16.)

Further, FICO has not shown why it needs the repository rule file for the EZER application—the file that is the subject of FICO's sanctions motion—when it already has

17

the repository rule files for the 9 other applications that used Blaze Advisor.  *See, e.g.*, *Gallagher v. Magner,* 619 F.3d 823, 843-44 (8th Cir. 2010) (upholding denial of Rule 37 sanctions when there was no evidence that the destroyed emails at issue would have supported the moving party's claims because there was "no basis for inferring that the missing emails would be of a different character than the emails already recovered and produced").  Under these circumstances, where FICO has failed to present any evidence of prejudice, its sanctions motion must be denied.  *Arctic Cat Inc. v. Bombardier Recreational Prod., Inc.,* No. CIV. 12-2692 JRT/LIB, 2014 WL 4055362, at *5 (D. Minn. Aug. 14, 2014) (dismissing motion for sanctions after moving party failed to demonstrate "actual prejudice").

### 4.     FICO's request for an adverse inference is wholly inappropriate.

FICO's requested remedy—an adverse inference—is wholly inappropriate.  On a spoliation motion, the standard for giving an adverse inference instruction is "a finding of intentional destruction indicating a desire to suppress the truth."  *Morris v. Un. Pacific R.R.*, 373 F.3d 896, 901 (8th Cir. 2004).  Further, contrary to FICO's assertions (Dkt. 718 at 11-12), an adverse inference instruction is generally inappropriate unless there is a showing of intentional destruction of evidence indicating a desire to suppress the truth *and* bad faith.  *Stepnes*, 663 F.3d at 965 (noting that "[s]evere spoliation sanctions, such as an adverse inference instruction, are only appropriate upon a showing of bad faith").  As an adverse inference instruction, are only appropriate upon a showing of bad faith").  Indeed, the Eighth Circuit requires a finding of bad faith, intentional destruction of evidence because an adverse inference instruction is "strong medicine" that creates "substantial danger of unfair prejudice."  As the Eighth Circuit has explained:

18

> An adverse inference instruction is a powerful tool in a jury trial. When giving such an instruction, a federal judge brands one party as a bad actor, guilty of destroying evidence that it should have retained for use by the jury. It necessarily opens the door to a certain degree of speculation by the jury, which is admonished that it may infer the presence of damaging information in the unknown contents of the [missing evidence].

*Morris*, 373 F.3d at 903; *see also Auer v. City of Minot*, 896 F.3d 854, 858 (8th Cir. 2018) ("Because deciding a case based on hypothesized evidence is strong medicine, an adverse presumption as a sanction for spoliation of electronically stored information requires a finding that the information was lost because one party acted with the intent to deprive another party of the information's use in the litigation.").

FICO has not produced any evidence of bad faith, intentional destruction of evidence. *See supra* at 13-14. FICO's failure of proof alone requires denial of its request. *Stepnes v. Ritschel*, No. CV 08-5296 ADM/JJK, 2010 WL 11646708, at *2 (D. Minn. Jan. 6, 2010) (finding that Plaintiff "failed to present sufficient evidence demonstrating an intentional destruction of evidence or a desire to suppress the truth which would warrant an adverse instruction.") Indeed, the single piece of evidence FICO has submitted—a single email string between counsel—merely advises FICO that Federal was unable to access and produce the repository rule files for EZER. This email exchange does not demonstrate bad faith, intentional destruction of evidence. (*See* Dkt. 719, Exs. 9-12.)

In addition, the Eight Circuit's caution against use of adverse inference instructions is particularly applicable here. *Morris*, 373 F.3d at 903; *Auer*, 896 F.3d at

858.    Without any evidence of intentional destruction of evidence or bad faith, FICO

requests the Court instruct the jury as follows:

> EZER, as a policy administration system, contributes to revenue in the
> same way Defendants' other policy administration systems that deploy
> Blaze Advisor contribute to revenue.

(Dkt. 718, at 12.)   As an initial matter, the requested instruction, as worded, is not an

appropriate adverse inference instruction.    It *directs* the jury to conclude EZER

"contributes to revenue" instead of instructing the jury as to what it *may* infer.    The

instruction also risks confusing and misleading the jury when it instructs the jury "other

policy administration systems… contribute to revenue."   (*Id.*)   FICO has not shown any

connection between the use of Blaze Advisor and contribution to revenue.   The requested

instruction, if granted, would misrepresent evidence, confuse the jury, and severely

prejudice Federal.

FICO has not shown that the unavailability of the EZER repository rule files

justifies the instruction.    Meanwhile, the instruction unfairly prejudices Federal by

essentially giving Court-sponsored credence to FICO's claim that it should be able to

force Federal to disgorge profits from a multi-billion-dollar revenue stream.   FICO has

done nothing to show the contents of the repository rule files—let alone the EZER

repository rule files specifically—have any role in FICO's burden of demonstrating that

Blaze Advisor contributes to revenue.

The irrelevance of the contents of the rules is illustrated by the fact that, during

discovery, FICO never used the contents of the business rules it was provided.    As

outlined above, Federal produced documents during discovery that contain the contents

of the EZER business rules but, despite having the contents of the rules, FICO and its experts have at no time during this litigation utilized them to support their disgorgement claim or any of their other claims. (*See* Pham Decl., Ex. A, FED017463_0031.) FICO also never utilized the contents of the business rules in depositions or in motion practice.

The instruction would, based on the unavailability of irrelevant evidence, inappropriately label Federal the "bad actor" and open the door to speculation by the jury regarding the contents of rules that have nothing to do with whether Blaze Advisor contributes to revenue. Further, the instruction would be improper given FICO has completely failed to present evidence of bad faith and intentional destruction of evidence as outlined above. *See supra* at 13-17. The motion should be denied.

### B.     Federal complied with the Court's June 4, 2019 Order.

FICO argues that Federal violated the Court's June 4, 2019 Order when it failed to produce the EZER repository rule files. However, FICO's "argument" consists of four conclusory and unsupported sentences which state that the Court ordered the production of the repository rule files, the repository rule files were not produced, and therefore sanctions are warranted. (Dkt. 718 at 8.)

According to FICO, any time a party is unable to produce documents in response to a Court Order that party is in contempt of Court. That is incorrect. Indeed, sanctions—including attorneys' fees—may be denied in the court's discretion where a party adequately explains its efforts to comply with the court's order and why compliance is not possible. *Ackerman*, 2014 258565 at *2 (affirming magistrate judge's denial of

sanctions where party "adequately explained their efforts to comply with discovery orders.").

Here, Federal has explained how it attempted in good faith to comply with the Court's Order and produce the repository rule files for each of its applications that have used Blaze.  It has explained why it cannot produce the repository rule files for the EZER application.   Federal has substantially complied with the Order by producing the repository rule files associated with 9 of the 10 applications that have used Blaze.  The *only* repository rule file which could not be produced is the file associated with the EZER application.  However, that particular file was rendered inaccessible as of March 2019 as part of Federal's decommissioning of the EZER application—prior to FICO's request for the repository rule files, which occurred in May 2019, and prior to the Court ordering their production, which occurred in June 2019.  Under these circumstances, sanctions are inappropriate.  *Ackerman*, 2014 258565 at *2

## <u>CONCLUSION</u>

Based on the foregoing, Federal respectfully requests the Court deny FICO's motion for sanctions in its entirety, including its request for attorneys' fees and request for an adverse inference instruction.

Dated:  April 1, 2020                           s/ Terrence J. Fleming
                                                Terrence J. Fleming (#0128983)
                                                tfleming@fredlaw.com
                                                Leah Janus (#0337365)
                                                ljanus@fredlaw.com
                                                Christopher D. Pham (#0390165)
                                                cpham@fredlaw.com
                                                **FREDRIKSON & BYRON, P.A.**
                                                200 South Sixth Street, Suite 4000
                                                Minneapolis, MN  55402-1425
                                                (612) 492-7000 (tel.)
                                                (612) 492-7077 (fax)

                                                *Attorneys for Defendants*