## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

FAIR ISAAC CORPORATION,

      Plaintiff,

  v.

FEDERAL INSURANCE COMPANY,
an Indiana corporation, and ACE
AMERICAN INSURANCE COMPANY,
a Pennsylvania corporation,

      Defendants.

Court File No.  16-cv-1054 (WMW/DTS)

**MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO AMEND
SCHEDULING ORDER**

Defendants Federal Insurance Company and ACE American Insurance Company (collectively, "Federal") submit this memorandum in support of their Motion to Amend the Scheduling Order for the limited purpose of allowing Federal to file a successive summary judgment motion.

## **INTRODUCTION**

FICO has asserted a breach of contract claim against Federal based on Section 3.1 of the License Agreement. In FICO's Motion for Summary Judgment, FICO argued that one basis for its Section 3.1 claim is that Federal's Chubb & Son division—but not Federal—is a party to the License Agreement. Therefore, according to FICO, use of the Blaze Advisor software by Federal's affiliates outside of the United States was not allowed by the License Agreement. In its Order resolving the Parties' cross-motions for summary judgment (hereinafter, the "Order"), the Court noted the weakness of FICO's claim:

> Under FICO's interpretation, multiple aspects of the License Agreement, including the entire December 2006 amendment ["Amendment Two"], would be rendered unreasonable or ineffectual. Such an interpretation is not preferred.

(Dkt. 731 at 44.) The Court further noted that "FICO is suing Federal for breaching the License Agreement, yet argues that Federal is *not* a party to the License Agreement . . . FICO cannot have it both ways." (*Id.* at 43 n.14.) While Federal moved for summary judgment on FICO's Section 3.1 claim generally, arguing that use outside of the United States was allowed by the License Agreement, the Court did not dismiss FICO's claim on the ground that Federal "did not affirmatively move for summary judgment as to this issue." (*Id.* at 44, n.15.)

Federal moves to amend the scheduling order to allow it to file a summary judgment motion on the narrow issue of whether Federal is a party to the License Agreement, meaning its affiliates would be licensed to use Blaze Advisor under Amendment Two (hereinafter, the "Affiliates Issue"). The facts relating to the Affiliates Issue are undisputed and, therefore, this issue is ripe for summary judgment. Federal can show good cause for this amendment because allowing this limited motion for summary judgment would streamline the issues for trial and would not impact the pretrial schedule. Accordingly, Federal's Motion to Amend the Scheduling Order should be granted.

## BACKGROUND

**I.  FICO Moved for Summary Judgment on its 3.1 Claim, Arguing That FICO and Chubb & Son, a Division of Federal, are the Only Parties to the License Agreement.**

In its summary judgment motion, FICO argued that Federal breached Section 3.1 of the License Agreement because "FICO and Chubb & Son, a division of Federal, are the parties to the Agreement." (Dkt. 398 at 1.) According to FICO:

> Chubb & Son is an unincorporated division of Federal. (Dkt. 137, ¶ 3.) It is not a legal entity. It is incapable of having "affiliates." . . . It is impossible to give the affiliate language of Amendment Two meaning, because Amendment Two is with Chubb & Son, an unincorporated division of Federal.

(*Id.* at 16.) Based on this reasoning, FICO alleged that Federal's affiliates were "third parties" and, therefore, any use of FICO's software by them breached Section 3.1. (*Id.*)

**II.  The Facts Relating to the Affiliates Issue are Undisputed**

Federal moved for summary judgment on FICO's Section 3.1 claim in its entirety, arguing that use of Blaze outside of the United States was not a breach of the License Agreement. (Dkt. 445 at 15-20.) Federal responded to the Affiliates Issue in its memorandum opposing FICO's summary judgment motion on the ground that Federal is necessarily a party to the License Agreement because Federal signed the Agreement with FICO. (Dkt. 507 at 3, 20-23.) Federal also set forth the following undisputed facts related to its Chubb & Son division:

- "[Chubb & Son] was not a legal entity."

- "Chubb & Son had no affiliates."

- "The only legal entity mentioned in the Definition of 'Client,' is Federal Insurance Company."

- "FICO's interpretation would render the Affiliates Clause [in Amendment Two] meaningless . . . ."

(Dkt. 507 at 20-23.)

## III.    The Court Rejected FICO's Arguments on the Affiliates Issue.

The Court rejected FICO's arguments on the Affiliates Issue in its Order, noting the

following:

- "The parties' dispute turns on whether the phrase 'Client and its Affiliates' in the December 2006 amendment includes Federal and its affiliates."

- "It is undisputed that Chubb & Son is not a legal entity because it is unincorporated. Under New York law, an unincorporated division or association is not a legal entity and does not have the capacity to be sued."

- "In various contexts, courts in New York and elsewhere have recognized that 'an unincorporated division . . . has no separate legal existence apart from its parent corporation.' *Affymax, Inc. v. Johnson & Johnson,* 420 F. Supp. 2d 876, 879 (N.D. Ill. 2006)"

- "[I]t would make little sense if a non-legal entity could enter a contract yet never be sued on that contract should a dispute arise . . . The absurdity of such a result is not hypothetical, it is demonstrated by this case . . . FICO is suing Federal for breaching the License Agreement, yet argues that Federal is *not* a party to the License Agreement. FICO cannot have it both ways."

- "Under FICO's interpretation, multiple aspects of the License Agreement, including the entire December 2006 amendment, would be rendered unreasonable or ineffectual. Such an interpretation is not preferred."

(Dkt. 731 at 42-44.) The Court, however, declined to grant Federal summary judgment, stating that "[b]ecause Federal did not affirmatively move for summary judgment as to this issue, the Court declines to address whether Federal would be entitled to summary judgment in its favor as to this issue." (*Id.* at 44 n.15.)

## IV.   A Successive Summary Judgment Motion on the Affiliates Issue Will Not Affect the Pretrial Schedule.

The current Scheduling Order set July 26, 2019 as the deadline for the parties to submit summary judgment motions. (Dkt. 205.) However, a trial date has not been set, and the parties are in the process of briefing cross-supplemental summary judgment motions pursuant to the Court's Order. (*See* Dkt. 731 at 52-53; Dkt. 743; Dkt. 750.) Briefing on the supplemental summary judgment motions will be complete on May 27, 2020. In the event this Motion is granted, Federal will be in a position to immediately file its Motion, and briefing would be complete 35 days thereafter. *See* D. Minn. L.R. 7.1(c).

## V.   Resolving the Affiliates Issue now Will Render the Parties' Other Supplemental Briefing Largely Moot and Will Streamline Trial.

A decision in Federal's favor on the Affiliates Issue would render moot most of the Parties' arguments on the two issues that are the subject of their current supplemental summary judgment motions. These supplemental motions focus on whether the applicable statutes of limitations and the territorial limitations of the Copyright Act bar FICO's Section 3.1 claim. (*See generally* Dkt. 744; Dkt. 751.) The basis for FICO's Section 3.1 claim is its argument that Federal breached Section 3.1 and committed copyright infringement by allowing its affiliates and two IT consultants to use Blaze. (Dkt. 132 at ¶ 24.) While the minor aspect of this claim related to IT consultants is unaffected by the

Affiliates Issue, resolution of the Affiliates Issue would largely moot the issues relating to the statutes of limitation and extraterritoriality because a ruling in Federal's favor on the Affiliates Issue would mean that Amendment Two authorizes Federal's affiliates to use Blaze.

Resolving the Affiliates Issue would significantly reduce the length of trial, as the trial would be limited to the issue of whether FICO was justified in terminating the License Agreement in 2016 after Federal's parent corporation merged with another entity. Federal would not need to present evidence establishing any of the undisputed facts relating to the Affiliates Issue.

## LEGAL STANDARD

A party must show "good cause" under Federal Rule of Civil Procedure 16(b)(4) to justify amending the scheduling order to allow for the filing of a successive summary judgment motion. *Benner v. Saint Paul Pub. Sch., I.S.D. #625*, 407 F. Supp. 3d 819, 823-24 (D. Minn. 2019); *Mendoza v. United States*, No. 15CV1528-JAH (BGS), 2018 WL 1898553, at *2 (S.D. Cal. Apr. 20, 2018); *Microsoft Corp. v. Ram Distribution*, LLC, No. 06-CV-1247, 2009 WL 415712, at *1 (E.D. Wis. Feb. 13, 2009).

"'The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements.'" *Benner*, 407 F. Supp. 3d at 824 (D. Minn. 2019) (quoting *Morrison Enterp., LLC v. Dravo Corp.*, 638 F.3d 594, 610 (8th Cir. 2011)). "However, courts may also look to a number of other factors that consider the circumstances of a given case given the absences of a 'clear test for when a party is diligent enough to establish good cause.'" *Id.* (citing *Shank v. Carleton College*, 329 F.R.D. 610, 614 (D. Minn. 2019.)). For

6

instance, "a court may also consider the prejudicial effect of modifying a scheduling order on the non-moving party." *Hofmann v. Enter. Leasing Co. of Minnesota, LLC*, No. 13-CV-255 (JNE/SER), 2014 WL 12601038, at *2 (D. Minn. Oct. 15, 2014).

Additionally, Local Rule 16 requires that the party moving to modify a scheduling order "explain the proposed modification's effect on any deadlines." D. Minn. L. R. 16.3(b)(2).

## <u>ARGUMENT</u>

### I.   Federal has Good Cause to Amend Because Resolving the Affiliates Issue now Will Conserve Judicial Resources by Reducing the Length of Trial.

District Courts regularly find good cause to amend scheduling orders to allow for successive summary judgment motions where doing so may conserve judicial resources at trial. *See, e.g.*, *Hoffman v. Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010) ("allowing a party to file a second motion for summary judgment is logical, and it fosters the 'just, speedy, and inexpensive' resolution of suits.") (quoting Fed. R. Civ. P. 1); *Gordon v. Veneman*, 61 F. App'x 296, 298 (7th Cir. 2003) ("The [district court] concluded that it was better to allow a second summary judgment motion than risk wasting judicial resources on a claim that should never have made it to trial . . . [t]his certainly suffices as a 'good reason'"); *Ibarra v. Snohomish Cty.*, No. C16-0317JLR, 2017 WL 1210061, at *5 (W.D. Wash. Apr. 3, 2017) ("The court will consider Defendants' second motion in the interest of judicial efficiency."); *Henderson v. Wal-Mart Stores, Inc.*, No. 1:14-CV-224, 2015 WL 3901755, at *3 (E.D. Tex. June 23, 2015) (same); *Wells v. Coker*, No. 08-CV-3302, 2014 WL 716518, at *3 (C.D. Ill. Feb. 25, 2014) (same); *Microsoft Corp.*, 2009 WL 415712, at

*1 (same); *Home Depot U.S.A., Inc. v. Nat'l Fire Ins. Co. of Hartford*, No. 3:06 CV 0073 D, 2007 WL 1969752, at *2 (N.D. Tex. June 27, 2007) (same).

The court's decision in *Henderson v. Wal-Mart Stores, Inc.* is instructive. 2015 WL 3901755, at *3. In *Henderson*, the defendant moved for summary judgment on both of the plaintiff's claims. *Id.* at *3. However, the court declined to address whether summary judgment was appropriate on one of the claims, reasoning "that because Wal-Mart did not seek dismissal of Henderson's negligent activity claim until a reply brief, whether judgment on this claim was warranted was not properly before the court." *Id.* The plaintiff later objected to the defendant's attempt to bring a second summary judgment motion, but the court overruled this objection, holding that "[i]t would be a considerable waste of the court's and the parties' resources to have a trial on an issue that could be resolved through motion practice." *Id.*

Like the defendant in *Henderson*, Federal can show good cause because the Affiliates Issue is ripe for decision as a matter of law. The law is clear that a non-legal entity like the Chubb & Son division cannot enter into a contract on its own. The law is also clear that "an unincorporated division . . . has no separate legal existence apart from its parent corporation." *Affymax, Inc. v. Johnson & Johnson,* 420 F. Supp. 2d 876, 879 (N.D. Ill. 2006). It is also undisputed that a non-legal entity cannot have affiliates. Further, contracts must be interpreted wherever possible so as to give meaning to all of their provisions. *Diamond Castle Partners IV PRC, L.P. v. IAC/InterActiveCorp*, 918 N.Y.S.2d 73, 74-75 (N.Y. App. Div. 2011) (refusing to adopt contract interpretation that would render "affiliates" clause meaningless). Finally, and as the Court noted in its Order, "it

8

would make little sense if a non-legal entity could enter a contract yet never be sued on that contract should a dispute arise." (Dkt. 731 at 44.)

Federal's position—that it is the "Client" to the License Agreement—is supported by the undisputed facts and the law, as set forth in Federal's Memorandum in Opposition to FICO's summary judgment motion, and the Court's Order. (Dkt. 507 at 3, 20-23; Dkt. 512; Dkt. 513; Dkt. 516; Dkt. 731 at 42-44.)

Beyond the strength of Federal's factual and legal positions on the Affiliates Issue, Federal can also show good cause because resolving this issue now will reduce the length of trial. If the Court finds in Federal's favor on the Affiliates Issue, there will no longer be any need for Federal to put on witnesses and evidence to demonstrate that its affiliates were licensed during the liability portion of trial. The relevant evidence on FICO's lost license fee damages and claim for an award of Federal's profits would also be correspondingly reduced during the damages portion of trial. Cutting out the Affiliates Issue from trial will streamline the issues and reduce the length of the trial.

Federal has, therefore, shown good cause because it is likely to prevail on a successive motion directed at the Affiliates Issue and, if it does, trial will be shortened, saving the Court and the Parties' considerable resources.

## II.     Federal was Diligent in its Attempt to Move for Summary Judgment on the Affiliates Issue.

The Scheduling Order set July 26, 2019 as the deadline to file dispositive motions in this case. Federal filed its Motion for Summary Judgment prior to the deadline. (Dkt. 428.) In its Motion, Federal sought the dismissal of FICO's Section 3.1 claim generally,

but the Court found that Federal's initial Memorandum in support of its Motion did not specifically address the Affiliates Issue. (Dkt. 731 at 44 n.15.) Federal argued for judgment on the Affiliates Issue in its Opposition to FICO's Motion for Summary Judgment, which Federal filed on August 26, 2019. (Dkt. 507; Dkt. 512; Dkt. 513; Dkt. 516.)

Federal moved for summary judgment on FICO's Section 3.1 claim, generally. Federal did not specifically address the Affiliates Issue in its opening Memorandum because FICO had not articulated its argument prior to its summary judgment motion. FICO's pleadings are not clear on this issue. Indeed, the Court has noted that FICO's pleadings on its Section 3.1 claim are "ambiguous." (Order Affirming Mag. Judge's Order, Dkt. 684 at 3 (noting that FICO's allegations in its complaint as to how Federal breached Section 3.1 are "ambiguous"). Thus, Federal's opening summary judgment Memorandum focused on FICO's contention that the Territory definition found in the License Agreement restricted Federal's foreign affiliates from using Blaze. (Dkt. 445 at 15.)

Moreover, Federal did not anticipate FICO's argument because it is contrary to the undisputed facts and law. As the Court noted in its Order, "FICO is suing Federal for breaching the License Agreement, yet argues that Federal is *not* a party to the License Agreement."  (Dkt. 731 at 43 n.14 (emphasis original).) Accordingly, Federal was diligent in its attempt to comply with the dispositive motion deadline by seeking judgment on the Affiliates Issue in its Opposition to FICO's Motion for Summary Judgment. (Dkt. 507 at 3, 20-23.)

**III.    The Affiliates Issue can be Resolved now Without Affecting the Pretrial Schedule.**

Under Local Rule 16.3, Federal is required to "explain the proposed modification's effect on any deadlines." D. Minn. L.R. 16.3(b)(2). Federal can show good cause to amend the Scheduling Order because allowing it to file a successive summary judgment motion would not affect the upcoming deadlines associated with trial. As demonstrated above, the Parties have already prepared all of their substantive arguments on the Affiliates Issue. (Dkt. 398 at 16; Dkt. 507 at 3, 20-23; Dkt. 558 at 1.) Federal would file its successive motion and supporting memorandum the *same day* the Court grants this Motion to Amend. The motion would be fully briefed within 35 days of the Court's decision to grant this Motion. *See* D. Minn. L.R. 7.1(c).

**IV.    FICO Will not be Prejudiced by the Requested Modification.**

Finally, in determining whether a party has shown good cause, courts "also consider the prejudicial effect of modifying a scheduling order on the non-moving party." *Hofmann*, 2014 WL 12601038, at *2. FICO cannot show any prejudice from being forced to respond to a successive motion on the Affiliates Issue. Accordingly, the modification should be allowed. *See Neal v. Ellis*, No. 1:10-CV-1075, 2017 WL 6805665, at *3 (W.D. Mich. Sept. 27, 2017) ("The Court sees no reason not to consider [defendant's] renewed motion, particularly because there is no discernable prejudice to Plaintiff.").

<u>**CONCLUSION**</u>

For the reasons stated above, Federal respectfully requests that the Court grants its Motion to Amend the Scheduling Order.

11

Dated:  May 1, 2020

*s/ Terrence J. Fleming*
Terrence J. Fleming (#0128983)
tfleming@fredlaw.com
Leah Janus (#0337365)
ljanus@fredlaw.com
Christopher D. Pham (#0390165)
cpham@fredlaw.com
Ryan Young (#0397751)
ryoung@fredlaw.com
Christian V. Hokans (#0400377)
chokans@fredlaw.com
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425

***Attorneys for Federal Insurance Company
and ACE American Insurance Company***