## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation, | ) ) ) | Case No. 16-cv-1054 (WMW/DTS) |
| Plaintiff, | ) ) | |
| v. | ) ) | **Jury Trial Demanded** |
| FEDERAL INSURANCE COMPANY, an Indiana corporation, and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation, | ) ) ) ) ) ) | **Oral Argument Requested** **FILED UNDER SEAL** |
| Defendants. | ) | |

## PLAINTIFF FAIR ISAAC CORPORATION'S
## MEMORANDUM IN OPPOSITION TO DEFENDANTS'
## <u>MOTION TO AMEND THE SCHEDULING ORDER</u>

# **TABLE OF CONTENTS**

I.     Introduction .................................................................................................... 1

II.    The record evidence and New York law shows the "Client" is Chubb & Son,
       an unincorporated division that did not and could not have Affiliates. ................. 4

       A.    The Agreement's plain language, and the parties' pre-suit
             negotiations, show that the "Client" is Chubb & Son, a division of
             Federal. ........................................................................................... 4

             (1)    The Agreement's plain language shows that Chubb & Son, an
                    unincorporated division, is the "Client." ............................................ 4

             (2)    The parties' pre-suit negotiations confirm that Chubb & Son,
                    an unincorporated division, is the "Client." .................................... 7

             (3)    Federal's counterarguments are belied by the evidence. ................... 9

       B.    Federal's contention that Federal must be the client in order to render
             Amendment Two meaningful is wrong under New York law. .................... 11

III.   The Court considered Federal's arguments and identified disputed issues of
       material fact precluding summary judgment. ....................................................... 14

IV.    Federal cannot show "good cause" to amend the scheduling order. ..................... 16

       A.    Federal Rule of Civil Procedure 16 requires showing "good cause" to
             modify a scheduling order. ........................................................................... 16

       B.    There is no "good cause" because Federal could have raised the issue
             prior to the dispositive motion deadline and has not been diligent after
             the dispositive motion deadline. .................................................................. 17

       C.    Federal cannot show that re-arguing the "Affiliates" argument in a
             serial summary judgment motion will streamline the trial .......................... 20

             (1)    Federal's proposed serial summary judgment motion will not
                    streamline the trial. ........................................................................... 21

             (2)    Federal's extra-District cases are inapposite. ................................... 22

       D.    Federal's lack of diligence will prejudice FICO. ........................................ 23

V.     Conclusion .......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Affymax, Inc. v. Johnson & Johnson*,
420 F. Supp. 2d 876 (N.D. Ill. 2006) .......................................................... 12

*Aldaco v. Holder*,
No. 10-590, 2011 U.S. Dist. LEXIS 45531 (D. Minn. Apr. 27, 2011)........................ 15

*Archer Daniels Midland v. Aon Risk Services, Inc.*,
187 F.R.D. 578 (D. Minn. 1999)................................................................. 24

*Copar Pumice Co.*,
No. 09-1201 JP/KBM, 2013 U.S. Dist. LEXIS 197525 (D.N.M. Sep 12,
2013) .................................................................................. 20, 21, 24

*De Castro v. Castro*,
No. 18-cv-1449, 2019 U.S. Dist. LEXIS 178993 (D. Minn. Oct. 16,
2019) ........................................................................................ 15

*Diamond Castle Partners v. IAC/InterActiveCorp,*
82 A.D.3d 421 (N.Y. App. Div. 2011) ..................................................... 12, 13

*E.E.O.C. v. Hibbing Taconite*,
266 F.R.D. 260 (D. Minn. 2009)................................................................. 17

*Gordon v. Veneman*,
61 F. App'x 296 (7th Cir. 2003) ................................................................ 22

*Hagerman v. Yukon Energy Corp.*,
839 F.2d 407 (8th Cir. 1988) ................................................................... 16

*Henderson v. Wal-Mart Stores, Inc.,*
No. 1:14-cv-224, 2015 U.S. Dist. LEXIS 82539 (E.D. Tex. Apr. 17,
2015) ........................................................................................ 22

*Hoffman v. Tonnemacher*,
593 F.3d 908 (9th Cir. 2010) ................................................................... 22

*Home Depot U.S.A., Inc. v. Nat'l Fire Ins. Co.*,
No. 3:06-CV-0073 D, 2007 U.S. Dist. LEXIS 46922 (N.D. Tex. June
27, 2007) ..................................................................................... 23

*Ibarra v. Snohomish County.*,
    No. C16-0317JLR, 2017 U.S. Dist. LEXIS 50644 (W.D. Wash. Apr. 3,
    2017) ................................................................................................... 22

*IBEW Local 98 Pension Fund v. Best Buy Co.*,
    326 F.R.D. 513 (D. Minn. 2018).................................................................. 17

*Maranatha Assocs. v. Titan Grp.*,
    202 A.D.2d 846 (N.Y. App. Div. 1994) ............................................. 11, 12

*Marmo v. Tyson Fresh Meats, Inc.*,
    457 F.3d 748 (8th Cir. 2006) ................................................................... 16

*Mellon Bank, N.A. v. United Bank Corp.*,
    31 F.3d 113 (2d Cir. 1994)....................................................................... 15

*Microsoft Corp. v. Ram Distribution*,
    LLC, No. 06-CV-1247, 2009 U.S. Dist. LEXIS 18233 (E.D. Wis. Feb.
    13, 2009) ................................................................................................. 23

*In re NHL Players' Concussion Injury Litig.*,
    No. 14-2551, 2017 U.S. Dist. LEXIS 115159 (D. Minn. July 24, 2017) ................. 20

*Ortho-Clinical Diagnostics Berm. Co. v. FCM, LLC*,
    2016 U.S. Dist. LEXIS 128344 (S.D.N.Y. Sept. 12, 2016), *aff'd*, 739
    Fed. Appx. 664 (2d Cir. 2018) .................................................................. 13

*Rahn v. Hawkins*,
    464 F.3d 813 (8th Cir. 2006) ............................................................. 16, 17

*Royal Indus. v. Kraft Foods*,
    926 F. Supp. 407 (S.D.N.Y. 1996)............................................................ 11

*Shaw Grp., Inc. v. Triplefine Int'l Corp.*,
    322 F.3d 115 (2d Cir. 2003)..................................................................... 13

*Sherman v. Winco Fireworks, Inc.*,
    532 F.3d 709 (8th Cir. 2008) ...........................................................*passim*

*Shovein v. SGM Grp. USA, Inc.*,
    No. 06-1553 (RLE), 2008 U.S. Dist. LEXIS 112084 (D. Minn. May 13,
    2008) ....................................................................................................... 20

*United States v. Thornton*,
  No. 13-mc-86, 2014 U.S. Dist. LEXIS 119871 (D. Minn. Aug. 28,
  2014) ................................................................................................................ 15

*Warberg Opportunistic Trading Fund, L.P. v. GeoResources, Inc.*,
  112 A.D.3d 78 (N.Y. App. Div. 2013) ................................................. 13, 14

*Wells v. Coker*,
  No. 08-CV-3302, 2014 U.S. Dist. LEXIS 23308 (C.D. Ill. Feb. 25,
  2014) ................................................................................................................ 23

*Whitford v. Boglino*,
  63 F.3d 527 (7th Cir.1995) ................................................................................ 22

**Other Authorities**

Fed. R. Civ. P. 8 ............................................................................................................ 18

Fed. R. Civ. P. 16 ............................................................................................... 3, 16, 17

Fed. R. Civ. P. 56 .............................................................................................. 14, 15

D. Minn. L. R. 7.1 ........................................................................................ 2, 15, 16, 24

D. Minn. L. R. 72.2 ........................................................................................................ 25

## I.    Introduction

Defendants Federal Insurance Company and ACE American Insurance Company (collectively "Federal") have no basis to file an additional summary judgment motion at this late stage.  Over four years into the litigation, and over nine months after the dispositive motion deadline, Federal now seeks leave to bring a serial summary judgment motion on an issue the Court has determined to be a jury question.

Federal brings its motion for leave to amend based on a false premise—that there are no facts in dispute regarding the meaning of "Client and its Affiliates."  FICO has stated from the outset of this litigation that Chubb & Son, a division of Federal, was the "Client" to the 2006 Blaze Advisor Software License and Maintenance Agreement (the "Agreement"), and that Chubb & Son breached Paragraph 3.1 of the Agreement by permitting use of and access to Blaze Advisor by third parties, including foreign subsidiaries of Federal.  Because the Client, Chubb & Son, is unincorporated—it is a division—it has no Affiliates.

Contrary to the Agreement's plain language, Federal contends the "Client" is Federal, not Chubb & Son, and that Federal's affiliates are therefore licensed under the Agreement.  This argument fails.  The trial evidence will include, among other facts, that the Request for Information about Blaze Advisor leading to the Agreement issued from Chubb & Son, the division; the Agreement and both of its two amendments are in the name of and signed by Chubb & Son, the division; and that during the post-breach cure negotiations Federal insisted that any new agreement be in the name of Chubb & Son, the division.

1

Legally, Federal's arguments also fail.  Under New York law, which governs the

Agreement, an unincorporated division, such as Chubb & Son, may enter into contracts in

its own name.  The fact that Federal is responsible for the actions of its division does not

change the legal reality that its division, Chubb & Son, entered into the Agreement, or the

legal reality that the scope of the Agreement is limited to the Client—Chubb & Son, a

division of Federal.

Federal suggests the Court would have decided the "Affiliates" issue in its favor

had it only moved for summary judgment on this issue nine months ago.  Federal is

wrong.  The Court determined that the contractual phrase "Client and its Affiliates" was

ambiguous and identified issues of material fact that precluded summary judgment.  (Dkt.

731 at 44.)  The "Affiliates" issue is one for the jury to resolve.  Federal has failed to

show the "compelling circumstances" required for the Court to reconsider those findings.

*See* D. Minn. L. R. 7.1(f).

Federal claims it failed to move for summary judgment on this so-called

"Affiliates" issue because it was ignorant of FICO's position with respect to the breach of

Paragraph 3.1(iv) prior to the dispositive motion deadline.  In truth, Federal has been on

notice of FICO's breach of Paragraph 3.1 contract claim since the day the action

commenced.  (Dkt. 1; Dkt. 36; Dkt. 132.)  FICO further disclosed the basis of its claim

for breach of Paragraph 3.1(iv) in its response to Federal's discovery seeking the factual

basis for FICO's damages claim.  Federal's counsel expressly acknowledged FICO's

position that Chubb & Son, the division, is the Client in a January 2019 email—over six

months before the summary judgment motion deadline.  Federal's counsel wrote, "FICO

has previously taken the position that Chubb & Son, a division of Federal, is the licensee and, therefore, use by Federal and Federal's subsidiaries and affiliates was outside of the scope of the license."  There is no question that Federal could have raised this issue before the dispositive motion deadline.

This is Federal's second motion to amend the scheduling order.  Federal filed a motion to amend in August 2019, arguing it should be permitted to add a statute of limitations defense because it did not understand FICO's claims until it received FICO's summary judgment motion.  Now, despite its counsel's statements to the contrary, it contends it did not understand FICO's claims relating to the "Affiliates" issue before FICO's summary judgment motion.  Federal's "blame the victim" argument is belied by its lawyers' clear understanding of the claims.  The present motion could have been filed nine months ago.  Federal has not been diligent.

Federal asserts it has shown good cause under Rule 16 because its serial summary judgment motion will streamline the issues for trial.  Federal's argument is unavailing. Good cause cannot be met in the absence of diligence.  *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 717 (8th Cir. 2008).  Streamlining the trial is irrelevant where, as here, Federal has not been diligent.  Furthermore, resolution of the "Affiliates" issue on summary judgment will reduce the case by only one issue, which will have minimal impact on the length of the trial and no impact on the number of witnesses required to testify.  There is no "good cause" to bring a serial summary judgment motion at this late stage.  The Court should deny Federal's motion for leave to amend the scheduling order.

## II.     The record evidence and New York law shows the "Client" is Chubb & Son, an unincorporated division that did not and could not have Affiliates.

### A.     The Agreement's plain language, and the parties' pre-suit negotiations, show that the "Client" is Chubb & Son, a division of Federal.

In 2006, FICO entered into the Agreement which expressly defines the "Client" as Chubb & Son, an unincorporated division of Federal.  (*See* Declaration of Heather Kliebenstein ("Decl."), Ex. 1.)  In Paragraph 3.1, Chubb & Son represented and warranted that it would not "(iv) disclose the Fair Isaac Products to, or permit the use or access of the Fair Isaac Products by, any third party or by any individuals other than the employees of Client."  (*Id.*)  The relevant portions of the Agreement created a continuing duty for Chubb & Son not to permit use by or access to Blaze Advisor by individuals who were not employees of Chubb & Son.  (*Id.*)

#### (1)     The Agreement's plain language shows that Chubb & Son, an unincorporated division, is the "Client."

The Agreement derived from FICO's response to a Request for Information ("RFI") from "Chubb and Son, a Division of Federal Insurance Company, for itself and as servicer for the Chubb Corporation and its non-insurance company subsidiaries, or as manager of its insurance company subsidiaries."  (Decl., Ex. 2.)  Chubb & Son is an unincorporated division of Federal.  (Dkt. 137, ¶ 3.)

The Chubb Corporation was a holding company for several, separately organized property and casualty insurance companies.  (Decl., Ex. 3, at 4.)  Federal was the principal property and casualty insurance company of the Chubb Corporation.  (*Id.*)  The division Chubb & Son was, as stated in the RFI (and as further detailed in the Chubb

Corp. 10-K), a manager of Chubb Corporation insurance company subsidiaries.  (Decl.,

Ex. 2; Ex. 3.)  Chubb & Son provided, among other things, day-to-day management and

operating personnel for various property and casualty insurance companies, including

Federal and its wholly owned subsidiaries.  (Decl., Ex. 3, at 4.)

The parties signed the Agreement on June 30, 2006.  (Decl., Ex. 1.)  "Client" is a

defined term meaning "Chubb & Son, a division of Federal Insurance Company."  (*Id.*)

> This Software License and Maintenance Agreement ("**Agreement**") is entered into as of June 30, 2006 ("**Effective Date**") between Fair Isaac Corporation ("**Fair Isaac**") and Chubb & Son, a division of Federal Insurance Company ("**Client**") and describes the terms and conditions under which Fair Isaac shall provide to Client the Blaze Advisor products and related maintenance services described below.

(*Id.*; *see also* Decl., Ex. 4, 94:20-22.)  The signature page confirms that the "Client" is

"Chubb & Son."

| FAIR ISAAC CORPORATION | CLIENT – CHUBB & SON |
|---|---|
| By: | By: |
| Name: Aaron Jaeger<br>Manager<br>Financial Planning & Analysis | Name: MARK BERTHIAUME |
| Title: | Title: SENIOR VICE PRESIDENT |
| Date Signed: 6-30-06 | Date Signed: 6/30/06 |

(Decl., Ex. 1.)

On August 1, 2006, the parties signed Amendment One.  (*Id.*)  Chubb & Son

exercised its option to convert the Agreement to a Divisional license "for use solely by

the Chubb Specialty Lines Division . . . ."  (*Id.*)  The meaning of "Client" did not change.

"Client" remained a defined term meaning "Chubb & Son[,] a division of Federal

Insurance Company."  (*Id.*)

This Amendment One (the "**Amendment**") is effective as of ~~July~~ August 1, 2006 (the "**Amendment Effective Date**") and amends the Software License and Services Agreement entered into on June 30, 2006 (the "**Agreement**") by and between Fair Isaac Corporation ("**Fair Isaac**") and Chubb and Sons a division of Federal Insurance Company ("**Client**").

(*Id.*)  The signature page of Amendment One confirms the "Client" is "Chubb & Son."

| FAIR ISAAC CORPORATION | | CLIENT – CHUBB & SON | |
|---|---|---|---|
| By: | | By: | |
| Name: | Aaron Jaeger | Name: | Robert O. Cox |
| | Manager | | |
| | Financial Planning & Analysis | | |
| Title: | | Title: | EXECUTIVE VICE PRESIDENT |
| Date Signed: | 8-1-06 | Date Signed: | 7/21/06 |

(*Id.*)

On December 28, 2006, the parties signed Amendment Two, which increased the license scope to "Enterprise-Wide." (*Id.*)  The use rights granted Chubb & Son extended to the Commercial and Personal Lines as well as the Specialty Line. (*Id.*)  Amendment Two states: "Client and its Affiliates may use the Fair Isaac Product for their internal business purposes . . . subject to and in accordance with all of the provisions of the Agreement."  "Affiliates" means another entity "directly or indirectly controlled by Client, where 'control' means the ownership of more than 50% of the aggregate of all voting interests . . . ." (*Id.*)  Again, the "Client" as defined in Amendment Two was "Chubb & Son[], a division of Federal Insurance Company."

This Amendment Two (the "**Amendment Two**") is effective as of December 28 2006 (the "**Amendment Two Effective Date**") and amends the Software License and Services Agreement entered into on June 30, 2006, as amended on August 1, 2006 (collectively the "**Agreement**") by and between Fair Isaac Corporation ("**Fair Isaac**") and Chubb and Sons, a division of Federal Insurance Company ("**Client**").

6

(*Id.*)  The signature page of Amendment Two confirms the "Client" is "Chubb & Son, a division of Federal Insurance Company."



(*Id.*)

### (2)     The parties' pre-suit negotiations confirm that Chubb & Son, an unincorporated division, is the "Client."

The parties' pre-suit negotiations, undertaken after the January 2016 merger between ACE Limited and the Chubb Corporation, confirmed the parties' understanding that the "Client" was Chubb & Son, a division of Federal.  FICO's Associate General Counsel, Thomas Carretta, gave notice of breach on January 27, 2016.  (Decl., Ex. 5.)  Chubb's Deputy General Counsel, Andrew Hopp, responded on February 17, 2016.  (Decl., Ex. 6.)  Mr. Hopp acknowledged that Chubb & Son was the contracting party with FICO.  (*Id.* ("Notwithstanding the acquisition, *Chubb & Son, the contracting party* to the Agreement . . . .") (emphasis added).)  Mr. Hopp explained: "In short, Chubb & Son is still FICO's 'Client' as such term is defined in the Agreement."  (*Id.*)

Following a response from Mr. Carretta, Mr. Hopp replied on February 25, 2016, advising that a commercial proposal would be sent to FICO for review.  (Decl, Ex. 7.)  In that commercial proposal, Federal's business representative, Tamra Pawloski, Vice

President of Software Compliance, suggested a re-negotiation of the Agreement.  (Decl.,

Ex. 8.)  The commercial proposal was clear: "The contracting party to the license

agreement is and remains Chubb & Son, a division of Federal Insurance Company." (*Id.*)

Later in the parties' negotiations, on March 11, 2016, Mr. Carretta sent Mr. Hopp

a draft framework agreement in order to advance the business resolution of the case.

(Decl., Ex. 9.)  That framework agreement, titled "Amendment Three," defined the

"Client" as "Chubb Limited, through its division Chubb & Son." (*Id.*)  In a March 23,

2016, email to Mr. Hopp, Mr. Carretta attached an updated framework agreement.

(Decl., Ex. 10.)  In that draft, the proposed "Client" is still "Chubb Limited, through its

division Chubb & Son." (*Id.*)  Paragraph 4.3 of the updated framework agreement

defined "Affiliates" as that term was defined in Amendment Two of the Agreement: "any

other entity directly or indirectly controlled by Client, where 'control' means the

ownership of more than 50% of the aggregate of all voting interests . . . ." (*Id.*)

Ms. Pawloski responded with a counterproposal on March 25, 2016, and enclosed

a redlined response to the updated framework agreement.  (Decl., Ex. 11.)  Federal

rejected FICO's proposed change to the definition of "Client" in Amendment Three,

maintaining that the "Client" was "Chubb & Son, a division of Federal Insurance

Company."  (Decl., Ex. 12.)  Federal also changed the signature block to conform to the

Client being "Chubb & Son, a division of Federal Insurance Company." (*Id.*)

Implicitly acknowledging that the definition of "Affiliates" in Amendment Two of

the Agreement is meaningless when the Client is the division Chubb & Son, Federal

redlined changes to the definition of "Affiliates" in the proposed Amendment Three.

(*Id.*)  Federal sought to delete all reference to stock ownership in the meaning of

"Affiliates" and expanded the meaning to include upstream entities; Federal proposed

"any other entity that directly or indirectly controls or is controlled by Client, or is under

common control with Client."  (*Id.*)  This change made Federal an "Affiliate," because

Federal controls its division, Chubb & Son.  It also made Federal's subsidiaries

"Affiliates," because they are under common control with Chubb & Son, a division of

Federal.  Federal's proposed change is an implicit acknowledgement that the "Client" as

defined in Amendment Two did *not* include Federal or Federal's affiliates.

### (3)  Federal's counterarguments are belied by the evidence.

Despite the plain language of the Agreement, Federal argues that the "Client" is

Federal Insurance Company, not its division Chubb & Son.  (Dkt. 507 at 20-21.)

Federal's argument is belied by the evidence.  The plain language of the Agreement

shows that Chubb & Son is the Client, as Ms. Pawlowski acknowledged during her

deposition.  (Decl., Ex. 4, 94:20-22 ("Q. And the client was Chubb & Son, a division of

Federal, correct?  A. Yes.").)

Federal's related contention that Chubb & Son has no employees is false.  (Dkt.

507 at 22.)  The RFI to FICO came from Jim Black, of Chubb & Son's Vendor

Management Department.  (Decl., Ex 13, at 2.)  Being an employee of the division Chubb

& Son and an employee of Federal are not mutually exclusive, as the 2006 Chubb

Corporation Annual Report shows.  (Decl., Ex. 14, at 28-29.)  The Annual Report lists

the officers of "Chubb & Son, a division of Federal Insurance Company" separately from

the officers of "Federal Insurance Company."  (*Id.*)  While there is some overlap, the two

employee lists are not mutually inclusive.  Chubb & Son has many officers that are *not* officers of Federal.  (*Id.*)

Chubb & Son was the "manager" of Chubb Corporation's Property & Casualty Group.  (Decl., Ex. 3, at 4.)  Chubb & Son, a division, was empowered to "sign, countersign and issue all such policies or contracts of insurance and reinsurance" on behalf of subsidiary insurance companies of Federal within the Chubb Corporation group of insurance companies.  (Decl., Ex. 15, at 6.)  The sworn declaration of the Senior Vice President and Treasurer of Chubb & Son, a division of Federal, filed in the Northern District of California, confirms the role of Chubb & Son, a division of Federal, as the insurance manager for Federal's subsidiaries.  (Decl., Ex. 16.)  Discovery disclosed various management and service agreements between Chubb & Son, the division, and these other insurance companies. (Decl., Ex. 15; Ex. 17–Ex. 23.)  The party to these management and service agreements is "Chubb & Son, a division of Federal Insurance Company."  (*Id.*)

FICO's claims were originally filed against Chubb & Son, Inc., a New York Corporation and wholly owned subsidiary of the Chubb Corporation.  (Dkt. 1, ¶ 3.)  Subsequently, FICO learned of its mistake.  The corporation Chubb & Son, Inc. had been inactive since January 1, 1998.  (Decl., Ex. 16.)  It also learned that Chubb & Son, a division of Federal, assumed the operations of Chubb & Son, Inc. on that date.  (*Id.*)  Federal is a party to the lawsuit because it is responsible for the actions of its unincorporated division.  Federal's legal liability does not expand the scope of the

Agreement.  The Agreement only grants rights to Chubb & Son, the unincorporated division—the Client.

**B.      Federal's contention that Federal must be the client in order to render Amendment Two meaningful is wrong under New York law.**

Federal's arguments are also wrong on the law.  (*See* Dkt. 760 at 8.)  Consistent with New York law, an unincorporated division, such as Chubb & Son, *may* enter into contracts in its own name.  *See Maranatha Assocs. v. Titan Grp.*, 202 A.D.2d 846, 847 (N.Y. App. Div. 1994); *see also Royal Indus. v. Kraft Foods*, 926 F. Supp. 407, 416 (S.D.N.Y. 1996) (acknowledging potential to contract with an unincorporated division under New York law: "The alleged contract in this case was between Kraft, a Delaware corporation headquartered in Illinois, and Royal, a Marshall Islands corporation headquartered in New Jersey.  However, KF International, an unincorporated division of Kraft headquartered in New York, was responsible for handling the Kraft end of the deal . . . . *Thus, if a contract with Kraft was formed, it was formed with a New York division of that entity*, and if a breach occurred, it occurred in New York.") (emphasis added).

In *Maranatha*, the defendant made the same argument as Federal now makes, namely that an unincorporated division cannot enter into contracts in its own name.  202 A.D.2d at 847 ("The fundamental premise underlying third-party defendants' motion . . . is that third-party plaintiff, having no legal existence independent of Hanover Companies Incorporated . . . cannot enter into contracts or bring legal action.").  The New York court rejected this argument, holding that the unincorporated division could enter contracts and sue in its own name.  *Id.*  If that contract is breached, however, the court confirmed that

the proper party to sue for breach is the corporate entity. *Id.* ("In the case of a breach, [the third-party defendant] would have been free to sue third-party plaintiff *through the legal entity of the corporation*.") (emphasis added).

That is the case here. Chubb & Son entered into various contracts in its own name, both with FICO and insurance companies of the Chubb Corporation, as the insurance manager of Chubb Corporation insurance company subsidiaries. (Decl., Ex. 3, at 4; Ex. 15; Ex. 17–Ex. 23.) If one of those contracts is breached, the appropriate party to sue for the breach is Federal. *Maranatha* shows the concern raised in Footnote 14 of the Summary Judgment Order is misplaced. (*See* Dkt. 731 at 43.) The footnote asks the wrong question. It is immaterial whether FICO is suing Federal for breach; the correct inquiry is whether Chubb & Son may enter into the contract. FICO is not trying to "have it both ways." (*See id.*) The evidence shows that Chubb & Son, a division of Federal, was the "Client" in the Agreement. New York law holds that when an unincorporated division is a party to a contract, the corporate entity of the division is the proper defendant in a breach of contract action.

Federal's cited cases are not to the contrary. (*See* Dkt. 760 at 8.) In *Affymax, Inc. v. Johnson & Johnson*, 420 F. Supp. 2d 876, 879 n.3 (N.D. Ill. 2006), the plaintiff contracted with a division. Acknowledging the division's parent was the legal entity to enforce or be held responsible under the contract, the *Affymax* court ruled the scope of the contract was limited to the rights granted the division. *Id. Affymax* rejects Federal's argument. Federal's other cited case, *Diamond Castle Partners v. IAC/InterActiveCorp*, also supports FICO. 82 A.D.3d 421 (N.Y. App. Div. 2011). The contract at issue in that

case defined "Affiliates" to include the plaintiffs in the case, and the court found that the express contractual definition controlled. *Id.* at 422. ("To construe the purchase agreement in the manner suggested by defendant would be to ignore the clear, specific provisions of the purchase agreement recognizing plaintiffs' rights under the agreement, which we decline to do."). Here, the Agreement, Amendment One, and Amendment Two all expressly define "Client" to be "Chubb & Son, a division of Federal Insurance Company." (Decl., Ex. 1.) The express definition controls.

Because Chubb & Son had no affiliates, Federal contends the "Client" must be Federal in order to give meaning to the entirety of Amendment Two. As shown, this legal argument flies in the face of the facts. The "Client" was Chubb & Son, the division. The "Affiliates" language in Amendment Two *was* meaningless. The parties' pre-suit negotiations show that Federal recognized this truth. (Decl., Ex. 11; Ex. 12.) Federal's proposed changes to the affiliate language in Amendment Three sought to remedy that issue; Federal's changes would make Federal, and Federal's subsidiaries, Affiliates of the Client, Chubb & Son the division. (Decl., Ex. 12.) Federal's proposed changes acknowledge that "Client and its Affiliates" as defined in Amendment Two excluded Federal and Federal's affiliates. (*Id.*) The parties are bound by the Agreement as written. *See Shaw Grp., Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 124 (2d Cir. 2003) ("Nevertheless, in following these principles [of contract construction under New York law] we are not free to alter the plain terms of an agreement . . . ."); *see also Ortho-Clinical Diagnostics Berm. Co. v. FCM, LLC*, 2016 U.S. Dist. LEXIS 128344, at *11-13 (S.D.N.Y. Sept. 12, 2016), *aff'd*, 739 Fed. Appx. 664 (2d Cir. 2018); *Warberg*

*Opportunistic Trading Fund, L.P. v. GeoResources, Inc.*, 112 A.D.3d 78, 83-84 (N.Y. App. Div. 2013).

### III.    The Court considered Federal's arguments and identified disputed issues of material fact precluding summary judgment.

Federal asserts the facts related to this issue are undisputed.  (Dkt. 760 at 3.) Federal is wrong.  In deciding FICO's motion for summary judgment on the breach of Paragraph 3.1(iv), the Court acknowledged Federal's contention that "permitting Federal's subsidiaries to use and access Blaze Advisor does not qualify as impermissible third-party use or access."  (Dkt. 731 at 38.)  But the Court identified fact issues precluding summary judgment, including whether Chubb & Son had any employees.  (*Id.* at 44.)  The Court determined that the definition of "Client and its Affiliates" in Amendment Two was ambiguous and required a trial.  (*Id.*)  With respect, as discussed *supra* at Section II.B, FICO submits the Court did not consider the complete application of New York law relating to the "Affiliates" issue.  But FICO recognizes the Court's statement: "FICO has established that the scope of the phrase 'Client and its Affiliates' in the December 2006 amendment is ambiguous and depends on disputed material facts." (Dkt. 731 at 44.)  The premise of Federal's motion to amend the scheduling order—that the material facts are undisputed such that the issue is ripe for decision—is false.

Federal suggests the only reason the Court did not decide the "Affiliates" issue in its favor is because it did not move for summary judgment on the issue.  (Dkt. 760 at 5.) If Judge Wright had found the "Affiliates" issue to be ripe for decision on summary judgment, she could have decided it under Federal Rule of Civil Procedure 56(f)

regardless of whether Federal affirmatively moved on it.  *See* Fed. R. Civ. P. 56(f)(1)

("Judgment Independent of the Motion.  After giving notice and a reasonable time to

respond, the court may: (1) grant summary judgment for a nonmovant.").  Instead, Judge

Wright identified fact issues precluding summary judgment.  (Dkt. 731 at 44.)  Permitting

Federal to raise an identical argument in a serial summary judgment motion does nothing

to resolve these fact issues.

In essence, Federal's request is a motion for reconsideration.  Any grant of

summary judgment in Federal's favor would necessarily require the Court to reconsider

its finding that the phrase "Client and its Affiliates" was ambiguous and that disputed

issues of fact precluded summary judgment.  *See Mellon Bank, N.A. v. United Bank*

*Corp.*, 31 F.3d 113, 116 (2d Cir. 1994) ("[W]hen a contract is ambiguous, its

interpretation becomes a question of fact and summary judgment is inappropriate.").

Motions for reconsideration "are expressly disfavored."  *United States v.*

*Thornton*, No. 13-mc-86 (SRN/TNL), 2014 U.S. Dist. LEXIS 119871, at *2-3, (D. Minn.

Aug. 28, 2014).  The Local Rules are clear: "Except with the court's prior permission, a

party *must not* file a motion to reconsider."  D. Minn. L. R. 7.1(j) (emphasis added).

Requests to file motions to reconsider are granted "only upon a showing of compelling

circumstances."  (*Id.*)  "Motions for reconsideration serve a limited function: to correct

manifest errors of law or fact or to present newly discovered evidence."  *Aldaco v.*

*Holder*, No. 10-590 (JRT/LIB), 2011 U.S. Dist. LEXIS 45531, at *1-2 (D. Minn. Apr. 27,

2011) (quoting *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 413, 414 (8th Cir.

1988)); *see also De Castro v. Castro*, No. 18-cv-1449 (DWF/ECW), 2019 U.S. Dist.

LEXIS 178993, at *1-2 (D. Minn. Oct. 16, 2019) (A motion to reconsider is properly

employed only to "afford an opportunity for relief in extraordinary circumstances.").

Federal did not receive permission to file the present motion, nor did it even seek

permission, as it was required to do under the Local Rules.  *See* D. Minn. L. R. 7.1(j).

Federal cannot show the "compelling circumstances" necessary to grant its motion.  A

motion to reconsider a summary judgment order is properly denied where, as here, all of

the relevant facts were available at the time the summary judgment motion was filed.  *See*

*Hagerman*, 839 F.2d at 414 & n.9.

## IV.   Federal cannot show "good cause" to amend the scheduling order.

### A.   Federal Rule of Civil Procedure 16 requires showing "good cause" to modify a scheduling order.

Scheduling orders pursuant to Rule 16(b)(1) "assure[] that at some point both the

parties and the pleadings will be fixed . . . ."  Fed. R. Civ. P. 16 advisory committee's

note to 1983 amendment.  "Adherence to [scheduling order] deadlines is critical to

achieving the primary goal of the judiciary: 'to serve the just, speedy, and inexpensive

determination of every action.'"  *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759

(8th Cir. 2006) (quoting Fed. R. Civ. P. 1).

Federal Rule of Civil Procedure 16(b)(4) states: "A schedule may be modified

only for good cause and with the judge's consent."  When the movant has not been

diligent in meeting the scheduling order's deadlines, there is no cause to consider

prejudice to the non-moving party.  *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 717

(8th Cir. 2008); *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006).  "[T]he 'good

cause' standard [of Rule 16(b)] is an exacting one, for it demands a demonstration that the existing schedule cannot reasonably be met despite the diligence of the party seeking the extension." *IBEW Local 98 Pension Fund v. Best Buy Co.*, 326 F.R.D. 513, 522 (D. Minn. 2018) (alteration in original). "[A] party does not meet the good cause standard under Rule 16(b) if the relevant information on which it based the amended claim was available to it earlier in the litigation." *Id.* (alteration in original). "It hardly bears mentioning . . . that carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *E.E.O.C. v. Hibbing Taconite*, 266 F.R.D. 260, 265 (D. Minn. 2009) (internal quotation omitted).

### B. There is no "good cause" because Federal could have raised the issue prior to the dispositive motion deadline and has not been diligent after the dispositive motion deadline.

Federal cannot meet Rule 16's "good cause" standard because Federal has not been diligent in bringing this matter before the Court, either before or after the dispositive motion deadline. *See Sherman*, 532 F.3d at 717; *Rahn*, 464 F.3d at 822.

Federal has been on notice of the nature of FICO's breach of contract claims since the beginning of this lawsuit. The use and access of Blaze Advisor by foreign insurance companies, that is, by persons who are not employees of Chubb & Son, breached the Agreement. FICO alleged this claim in each of its Complaints, including pleading facts that Chubb & Son, a division of Federal, is an insurance manager for Federal's subsidiaries; under the Agreement, Chubb & Son is the Client; Paragraph 3.1 of the Agreement limits use and access of Blaze Advisor to only employees of Chubb & Son; and that Chubb & Son permitted access to and use of Blaze Advisor by parties who are

not "Affiliates" of Chubb & Son within the meaning of the Agreement.  (Dkt. 1, ¶¶ 11, 13, 22, 23, 24, 25, 27; Dkt. 36, ¶¶ 11, 13, 22, 23, 24, 25, 27; Dkt. 132, ¶¶ 13, 15, 24, 25, 26, 27, 29.)  Federal has been on notice of these claims from the outset.  Federal attempts to blame FICO for its lack of diligence, asserting it did not understand FICO's position on the "Affiliates" issue because FICO's pleadings are not clear.  (Dkt. 760 at 10.)  The Complaint and each of the two Amended Complaints are notice pleading—not a detailed factual statement.  *See* Fed. R. Civ. P. 8(a).

Federal requested and FICO detailed its position on the "Affiliates" issue through discovery.  For example, in its Second Supplemental Response to Interrogatory No. 6, which sought the factual basis for FICO's claim of damages, FICO stated:

> Category Two Damages: FICO's category two damages arise from the unlicensed use of the Blaze Advisor® software by Federal (meaning by any division other than Chubb & Son) since the date that unlicensed use began.
> * * *
> Category Three Damages: FICO's category three damages arise from the unlicensed use by entities other than Federal (whether or not subsidiaries of Federal) to whom Federal distributed the Blaze Advisor® software since the date that unlicensed use began. . . . Federal has identified applications being used by third parties in Canada and the U.K. (Whether there are additional category three damages is the subject of further discovery.)

(Decl., Ex. 24.)

Six months prior to filing its motion for summary judgment, in January 2019, Federal acknowledged it understood FICO's position on the "Affiliates" issue.  Federal's counsel wrote the following to FICO's counsel on January 19, 2019:

> . . . *FICO has previously taken the position that Chubb & Son, a division of Federal, is the licensee and, therefore, use by Federal and Federal's subsidiaries and affiliates was outside of the scope of the license*. For example, FICO's Interrogatory Answers state that "the unlicensed use by

18

> Federal (meaning any division other than Chubb & Son)" is an aspect of FICO's claimed damages. FICO refers to this as its "category two" damages. (FICO's Answers to ROGs 6-9.) Similarly, Mr. Carretta testified that the inclusion of an expanded definition of "Affiliates" in Amendment Two of the license agreement did not expand the scope of the license because Chubb & Son could not have affiliates.

(Decl., Ex. 25 (emphasis added).)  Federal's excuse—that it "did not specifically address the Affiliates Issue in its opening Memorandum because FICO had not articulated its argument prior to its summary judgment motion"—fails of its own weight.  (Dkt. 760 at 10.)  Federal could have moved for summary judgment on the breach of Paragraph 3.1(iv) and the related "Affiliates" issue when it filed its summary judgment motion on the dispositive motion deadline of July 26, 2019.  It chose not to.

Federal also failed to exercise diligence regarding the "Affiliates" issue by not including this issue with its motion to amend the scheduling order filed on August 8, 2019, which only sought leave to file an amended answer to assert a statute of limitations defense.  (Dkt. 464.)  As now, Federal excused its failure to assert the defense on failing to understand FICO's claims.  (*Id.* at 1 (Federal arguing "it was notified on July 26, 2019 in FICO's Motion for Summary Judgment that FICO is seeking damages for claims barred by the[] statute[] of limitations").)  Nine months later, Federal uses the same excuse to support its request for a serial summary judgment motion, namely that it learned of FICO's position regarding the "Affiliates" issue in FICO's summary judgment motion.  (Dkt. 760 at 10.)  Ignoring the January 2019 acknowledgement of FICO's claims by Federal's lawyers, Federal could have sought leave to file a summary judgment

motion on the "Affiliates" issue last August in its first motion to amend.  It failed to do so.  Federal cannot show good cause to amend at this late stage.

**C.**     **Federal cannot show that re-arguing the "Affiliates" argument in a serial summary judgment motion will streamline the trial.**

Judge Wright's Practice Pointers state: "Parties shall file dispositive motions before the deadline in the pretrial scheduling order."[1]  Serial summary judgment motions are disfavored, and "federal courts have noted problems with piecemeal consideration of successive motions for summary judgment."  *In re NHL Players' Concussion Injury Litig.*, No. 14-2551 (SRN/BRT), 2017 U.S. Dist. LEXIS 115159, at *7 (D. Minn. July 24, 2017) (collecting cases and quoting *United States. v. Copar Pumice Co.*, Civ. No. 09-1201 JP/KBM, 2013 U.S. Dist. LEXIS 197525, at *9 (D.N.M. Sept. 12, 2013)).  Such motions are especially disfavored in cases that have been pending for years, as this one has.  *See Copar Pumice Co.*, 2013 U.S. Dist. LEXIS 197525, at *14 (denying leave to file serial summary judgment motion; "This is an old case and needs to be tried as scheduled.").  Courts in this District routinely deny leave to file serial summary judgment motions.  *In re NHL Players' Concussion Injury Litig.*, 2017 U.S. Dist. LEXIS 115159, at *7-8; *Shovein v. SGM Grp. USA, Inc.*, No. 06-1553 (RLE), 2008 U.S. Dist. LEXIS 112084, at *14 (D. Minn. May 13, 2008) (denying motion for leave to bring a second summary judgment motion months after the dispositive motion deadline).

---

[1] Judge Wilhelmina M. Wright, *Practice Pointers and Preferences*, https://www.mnd.uscourts.gov/sites/mnd/files/WMW.pdf (last updated Jan., 2019).

### (1)     Federal's proposed serial summary judgment motion will not streamline the trial.

Federal tries to show "good cause" by arguing its serial summary judgment motion will streamline the trial.  (Dkt.  760 at 7-9.)  The argument is unavailing.  The measure of "good cause" in the Eighth Circuit is diligence, not judicial efficiency.  *See Sherman*, 532 F.3d at 716.  Even if Federal could show good cause based on streamlining the trial, Federal ignores one key point.  The issues for trial would *only* be streamlined if Federal prevails on its motion for summary judgment.  As shown *supra* at Section II, the facts and New York law show this is unlikely.  Third, any grant of summary judgment in Federal's favor would necessarily require the Court to reconsider the disputed issues of fact precluding summary judgment.  (Dkt. 731 at 44.)  Federal has not shown the "compelling circumstances" necessary for reconsideration.  *See supra* Section III. Finally, even if Federal prevails, resolution of the "Affiliates" issue on summary judgment will reduce the case by only one issue, which will have minimal impact on the length of the trial and no impact on the number of witnesses required to testify.

There is no judicial efficiency to be gained from permitting Federal to file a serial summary judgment motion at this late stage.  In fact, judicial efficiency is best served by denying Federal's motion.  *See Copar Pumice Co.*, 2013 U.S. Dist. LEXIS 197525, at *13 (D.N.M. Sep. 12, 2013) ("[T]he Court's ruling [prohibiting serial summary judgment motions] will preclude Defendants from raising issues that the Court already resolved in its early summary judgment decisions and will streamline the litigation.").

### (2)      Federal's extra-District cases are inapposite.

Federal's cited cases from outside the District of Minnesota are inapposite;

Federal ignores the factual grounds these courts considered when allowing parties to file

serial summary judgment motions.  (*See* Dkt. 760 at 7.)  Federal's focus on *Henderson v.*

*Wal-Mart Stores, Inc.*, is especially misplaced.  In *Henderson*, the court permitted the

defendant to file a second summary judgment motion because it was filed *months before*

the dispositive motion deadline.  No. 1:14-cv-224, 2015 U.S. Dist. LEXIS 82539, at *5-6

(E.D. Tex. Apr. 17, 2015).  The Court explained that the plaintiff in that case had sought

a continuance and agreed to a joint request to extend the dispositive motion deadline.  *Id.*

at *6 ("Henderson agreed to this scheduling order.  If she did not believe that any further

dispositive motions should be filed, she should not have agreed to an additional deadline

to file such motions.").  This is a far cry from the present case, in which the dispositive

motion deadline passed on July 26, 2019—over nine months ago.

Federal's other cited cases are also readily distinguishable.  In *Hoffman v.*

*Tonnemacher*, 593 F.3d 908 (9th Cir. 2010), the court allowed a second summary

judgment motion following a mistrial.  The court granted the motion based on an

expanded factual record.  Likewise, in *Ibarra v. Snohomish County.*, No. C16-0317JLR,

2017 U.S. Dist. LEXIS 50644 (W.D. Wash. Apr. 3, 2017), the court permitted a second

summary judgment motion after the development of an expanded factual record.  In

*Gordon v. Veneman*, 61 F. App'x 296, 296-98 (7th Cir. 2003)[2], the court permitted a

---

[2] The *Gordon* court relies on *Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir.1995), which
identifies three specific grounds for allowing a renewed or serial summary judgment

serial summary judgment motion on a different issue following additional proceedings. Federal concedes that no expanded record exists here.  (*See* Dkt. 760 at 3-4, 9 ("Federal's position—that it is the 'Client' to the License Agreement—is supported by the undisputed facts and the law, as set forth in Federal's Memorandum in Opposition to FICO's summary judgment motion, and the Court's Order.").)

Federal's other cases are equally unpersuasive.  In *Wells v. Coker*, No. 08-CV-3302, 2014 U.S. Dist. LEXIS 23308 (C.D. Ill. Feb. 25, 2014), the court permitted a serial summary judgment motion on an issue it initially declined to consider when the basis for its original decision was reversed on appeal.  In *Microsoft Corp. v. Ram Distribution, LLC*, No. 06-CV-1247, 2009 U.S. Dist. LEXIS 18233 (E.D. Wis. Feb. 13, 2009), the court permitted a serial summary judgment motion to resolve prior inadequacies of an affidavit struck during the first motion.  In *Home Depot U.S.A., Inc. v. Nat'l Fire Ins. Co.*, No. 3:06-CV-0073 D, 2007 U.S. Dist. LEXIS 46922, at *2 (N.D. Tex. June 27, 2007), the court permitted the second summary judgment motion where it could resolve all remaining issues, including damages and attorneys' fees.  The factual bases the courts relied on are not found here.

### D. <u>Federal's lack of diligence will prejudice FICO.</u>

The question of good cause does not depend on the existence of prejudice to the non-moving party.  *See Sherman*, 532 F.3d at 717 (The court "will not consider prejudice

---

motion: 1) when the controlling law has changed; 2) when new evidence has been discovered; and 3) when allowing such a motion would be necessary to correct a clear error or prevent a manifest injustice.  None are applicable here.

if the movant has not been diligent . . . ."); *Archer Daniels Midland v. Aon Risk Services, Inc.*, 187 F.R.D. 578, 584-85 (D. Minn. 1999) (same).  Nevertheless, FICO will be prejudiced by Federal's motion.  This case is over four years old.  It was filed April 21, 2016.  Delaying a four-year old case to permit Federal to bring a serial summary judgment motion on an issue that has already been determined to by a jury question is the very definition of prejudice.  "If the Court were to permit additional successive summary judgment motions, there is no end in sight.  In that event, not only would justice be delayed, it would be denied." *Copar Pumice Co.*, 2013 U.S. Dist. LEXIS 197525, at *14.

Federal argues that its motion will not impact the trial date because no trial date has been set.  (Dkt. 760 at 5.)  Federal's statement is presumptuous and misleading.  While it is true no trial date has been set, the trial-ready date was December 9, 2019.  (Dkt. 205.)  As this date approached, the parties submitted a joint letter to the Court seeking clarification on the trial date, to which the Court responded it would issue a trial notice and pretrial order six weeks in advance of the trial.  (Dkt. 585; Dkt. 586.)  Federal's serial summary judgment motion will necessarily impact the trial date.

Federal further asserts that the briefing on its serial summary judgment motion will be complete 35 days after any order granting the present motion.  (Dkt. 760 at 11.)  Again, this statement is misleading.  Federal's motion will delay the case far longer than 35 days.  The hearing on Federal's motion to amend is set for June 9, 2020.[3]  (Dkt. 759.)  Even if Federal's motion is decided from the bench on June 9, the losing party has the

---

[3] Federal asked for its motion to be decided on the papers.  (Dkt. 759.)  FICO respectfully requests a hearing on the Motion pursuant to Local Rule 7.1(b).

right to appeal to Judge Wright.  The appeal process involves 28 additional days of briefing—14 days for the opening brief and 14 days for the response—plus the time for Judge Wright to decide the appeal.  *See* D. Minn. L. R. 72.2(a).  If the appeal was decided in Federal's favor, only then would briefing on the serial summary judgment motion begin.  Thereafter, further time will pass to allow Judge Wright to hear and decide the motion.  Dispositive motion practice must end, and the case must be tried.  Federal's request to bring a serial summary judgment motion would significantly delay the time to trial in this already four-year-old case.

## V.   Conclusion

For the reasons stated, the Court should deny Federal's motion to amend the scheduling order.

Dated: May 8, 2020

MERCHANT & GOULD P.C.

/s/ Heather Kliebenstein
Allen Hinderaker, MN Bar # 45787
Heather Kliebenstein, MN Bar # 337419
Michael A. Erbele, MN Bar # 393635
Joseph W. Dubis, MN Bar # 398344
MERCHANT & GOULD P.C.
150 South Fifth Street
Suite 2200
Minneapolis, MN  55402
Tel:  (612) 332-5300
Fax:  (612) 332-9081
ahinderaker@merchantgould.com
hkliebenstein@merchantgould.com
merbele@merchantgould.com
jdubis@merchantgould.com

*Attorneys for Plaintiff Fair Isaac Corporation*