# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation, | ) | Case No. 16-cv-1054 (WMW/DTS) |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Jury Trial Demanded** |
| v. | ) | |
| | ) | **FILED UNDER SEAL** |
| FEDERAL INSURANCE COMPANY, an Indiana corporation and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF FAIR ISAAC CORPORATION'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' <u>SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT</u>

**TABLE OF CONTENTS**

I.   Introduction ................................................................................................ 1

II.  FICO's copyright infringement and breach of contract claims arising from
     pre-termination conduct are distinct. ................................................................. 4

     A.   FICO's copyright infringement claims arising from pre-termination
          conduct ................................................................................................ 4

     B.   FICO's breach of contract claims arising from pre-termination
          conduct ................................................................................................ 5

III. Statement of facts ...................................................................................... 6

IV.  Defendants' statute of limitations defense applied to FICO's copyright
     infringement claims fails as a matter of law .................................................... 8

     A.   FICO's copyright infringement claims are not based on "use";
          Defendants reference FICO's contract claims to mischaracterize its
          copyright claims. ................................................................................... 9

     B.   Defendants concede the discovery rule applies; there is no evidence
          that FICO knew or should have known of Chubb & Son's copyright
          infringement before April 21, 2013 ........................................................ 11

          (1)   There is no evidence showing FICO discovered, or should
                have discovered, the infringing reproduction and distribution
                of Blaze Advisor Version 7.1 .......................................................... 12

          (2)   FICO's knowledge, even if true, of the "use" of Blaze
                Advisor Version 6.7 in the United Kingdom is irrelevant. .............. 13

     C.   Chubb & Son's copyright infringement from the reproduction and
          distribution of Blaze Advisor Version 7.1 within the statute of
          limitations is independently actionable under the separate-accrual
          rule. .................................................................................................... 14

     D.   FICO is entitled to recover foreign revenue attributable to Chubb &
          Son's copyright infringement under the predicate-act doctrine. ................. 16

          (1)   No court has rejected the legal basis of the predicate-act
                doctrine; it has been adopted by courts in twelve Circuits. ............ 16

          (2)   This Court should look to other courts when analyzing
                matters of first impression within this Circuit. ............................... 18

i

(3)     Policy concerns support application of the predicate-act doctrine. ........................................................................ 19

(4)     Defendants' reliance on secondary sources is not persuasive in view of the overwhelming weight of primary authority. ............ 21

(5)     FICO is entitled to recover damages flowing from the foreign exploitation of Chubb & Son's domestic infringement. ................. 22

E.     FICO is entitled to disgorge profits from Federal and ACE American's single enterprise. ....................................................... 24

F.     Defendants' attempt to re-argue the "Affiliates" issue is outside the proper scope of the Court's Order; Defendants' argument is also without merit. ........................................................................... 25

(1)     The Court identified fact issues precluding summary judgment on the "Affiliates" issue. ................................. 26

(2)     The facts show that Chubb & Son, an unincorporated division, is the "Client." ................................................. 26

(3)     With respect, the Court has not considered the full application of New York law relating to the "Affiliates" issue. ........................ 29

V.     Conclusion ........................................................................... 30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anchor Wall Sys. v. Rockwood Retaining Walls, Inc.*,
 610 F. Supp. 2d 998 (D. Minn. 2009) ........................................................................ 24

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) ................................................................................................... 8

*Baden v. Craig-Hallum, Inc.*,
 646 F. Supp. 483 (D. Minn. 1986) ............................................................................ 19

*Bavendam v. Pearson Educ., Inc.*,
 No. 13-3096 (FSH), 2013 U.S. Dist. LEXIS 143587 (D.N.J. Oct. 3,
 2013) ......................................................................................................................... 17

*Comcast of Ill. X v. Multi-Vision Elecs., Inc.*,
 491 F.3d 938 (8th Cir. 2007) ............................................................................... 11, 12

*Dash v. Mayweather*,
 731 F.3d 303 (4th Cir. 2013) ................................................................................... 24

*Design Basics, LLC v. Carhart Lumber Co.*,
 No. 8:13-CV-125, 2016 U.S. Dist. LEXIS 12788 (D. Neb. Feb. 3, 2016) ................. 11

*Geophysical Serv. v. ConocoPhillips Co.*,
 No. H-15-2766, 2016 U.S. Dist. LEXIS 63231 (S.D. Tex. May 13,
 2016) ......................................................................................................................... 17

*Geophysical Serv. v. TGS-NOPEC Geophysical Co.*,
 850 F.3d 785 (5th Cir. 2017) ................................................................................... 18

*Halo Creative & Design, Ltd. v. Comptoir Des Indes, Inc.*,
 816 F.3d 1366 (Fed. Cir. 2016) ................................................................................ 17

*Iconics, Inc. v. Massaro*,
 192 F. Supp. 3d 254 (D. Mass. 2016) ...................................................................... 17

*IMAPizza, LLC v. At Pizza Ltd.*,
 334 F. Supp. 3d 95 (D.D.C. 2018) ........................................................................... 17

*Int'l Acad. of Bus. & Fin. Mgmt. v. Mentz*,
    No. 12-cv-00463-CMA-BNB, 2013 U.S. Dist. LEXIS 100033 (D. Colo.
    July 17, 2013) ............................................................................................. 17

*Iverson v. Grant*,
    Nos. 96-2228, 96-2233, 1998 U.S. App. LEXIS 1431 (8th Cir. Jan. 7,
    1998) ........................................................................................................... 17

*John Wiley & Sons, Inc. v. DRK Photo*,
    998 F. Supp. 2d 262 (S.D.N.Y. 2014) .......................................................... 9

*Lackawanna Chapter of the Ry. & Locomotive Hist. Soc'y, Inc. v. St. Louis
    Cty, Mo.*,
    606 F.3d 886 (8th Cir. 2010) ........................................................................ 8

*Liberty Toy Co. v. Fred Silber Co.*,
    No. 97-3177, 1998 U.S. App. LEXIS 14866 (6th Cir. June 29, 1998) ........ 16

*Los Angeles News Serv. v. Reuters TV Int'l.*,
    149 F.3d 987 (9th Cir. 1998) .......................................................... 16, 17, 18

*Maranatha Assocs. v. Titan Grp.*,
    202 A.D.2d 846 (N.Y. App. Div. 1994) ................................................ 29, 30

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
    629 F.3d 928 (9th Cir. 2010) ........................................................................ 9

*Mellon Bank, N.A. v. United Bank Corp.*,
    31 F.3d 113 (2d Cir. 1994)........................................................................... 26

*Motorola Sols. v. Hytera Communs. Corp.*,
    No. 1:17-cv-1973, 2020 U.S. Dist. LEXIS 35942 (N.D. Ill. Jan. 31,
    2020) ............................................................................................... 17, 20, 21

*Negley v. Hallmark Cards, Inc.*,
    No. 11-00785-CV-W-DW, 2013 U.S. Dist. LEXIS 196584 (W.D. Mo.
    Mar. 1, 2013) ......................................................................................... 14, 15

*Nelson-Salabes, Inc. v. Morningside Dev., LLC*,
    284 F.3d 505 (4th Cir. 2002) ...................................................................... 24

*Palmer v. Braun*,
    376 F.3d 1254 (11th Cir. 2004) .................................................................. 17

*PW Enters. v. N.D. Racing Comm'n*,
   540 F.3d 892 (8th Cir. 2008) ..................................................................... 18

*Robert Stigwood Grp. Ltd. v. O'Reilly*,
   530 F.2d 1096 (2d Cir. 1976) .................................................................... 18

*Royal Indus. v. Kraft Foods*,
   926 F. Supp. 407 (S.D.N.Y. 1996) ............................................................. 29

*Schmidt v. DIRECTV, LLC*,
   No. 14-3000, 2016 U.S. Dist. LEXIS 16410 (D. Minn. Jan. 22, 2016) ......................... 8

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
   106 F.2d 45 (2d Cir. 1939) ................................................................. 16, 20

*Stockfood Am., Inc. v. Pearson Educ., Inc.*,
   No. 2:12-cv-124-JAW, 2012 U.S. Dist. LEXIS 169503 (D. Me. Nov.
   29, 2012) ................................................................................... 17

*Subafilms, Ltd. v. Mgm-Pathe Communs. Co.*,
   24 F.3d 1088 (9th Cir. 1994) ............................................................. 18, 22

*Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*,
   315 F. Supp. 3d 1147 (C.D. Cal. 2018) ...................................................... 9

*Tire Eng'g & Distribution, Ltd. Liab. Co. v. Shandong Linglong Rubber
Co.*,
   682 F.3d 292 (4th Cir. 2012) ............................................................... 16

*Tran v. Farmers Grp., Inc.*,
   104 Cal. App. 4th 1202 (Cal. App. 2002) ................................................. 24, 26

*United States v. Hipenbecker*,
   115 F.3d 581 (8th Cir. 1997) ............................................................... 18

*Update Art, Inc. v. Modiin Publ'g, Ltd.*,
   843 F.2d 67 (2d Cir. 1988) ................................................................. 16

*WesternGeco LLC v. ION Geophysical Corp.*,
   138 S. Ct. 2129 (2018) ............................................................... 19, 20, 21

## Statutes

17 U.S.C. § 106 .................................................................... *passim*

17 U.S.C. § 504(b) ................................................................. 16, 20

17 U.S.C. § 507(b) ................................................................................................ 11

35 U.S.C. § 284 ............................................................................................. 19, 20

**Other Authorities**

3 M. Nimmer & D. Nimmer, Copyright § 10.15 (2020) ...................................... 9

5 M. Nimmer & D. Nimmer, Copyright § 17.02 (2020) ...................................... 9

Brandon Dalling, *Protecting Against International Infringements in the Digital Age Using United States Copyright Law: A Critical Analysis of the Current State of the Law*, 2001 B.Y.U. L. REV. 1279 ........................................... 22

Christopher R. Perry, *Exporting American Copyright Law*, 37 GONZ. L. REV. 451 .......................................................................................................... 22

Graeme W. Austin, *Importing Kazaa – Exporting Grokster*, 22 SANTA CLARA COMPUTER & HIGH TECH. L.J. 577 (Mar. 2006) ........................... 22

Jeff Pettit, *At Sea, Anything Goes? Don't Let Your Copyrights Sail Away, Sail Away, Sail Away*, 93 TEX. L. REV. 743 (Feb. 2015) ........................... 22

## I.      Introduction

Fair Isaac Corporation ("FICO") respectfully requests the Court deny the supplemental motion for summary judgment on the statute of limitations defense filed by Defendants Federal Insurance Company and ACE American Insurance Company (collectively "Defendants").  (Dkt. 750; Dkt. 751.)

Defendants' motion is premised on a mischaracterization of FICO's claims.  FICO does not assert copyright infringement based on "use" of the Blaze Advisor software. FICO's copyright infringement claims are based on the unauthorized reproduction and the unauthorized distribution of Blaze Advisor Version 7.1 by Chubb & Son, a division of Federal.  Reproduction and distribution are two of the enumerated exclusive rights of copyright under Section 106 of the Copyright Act.  *See* 17 U.S.C. § 106(1); § 106(3). When FICO's copyright claims are properly stated, Defendants' motion fails.

Defendants cannot meet their burden to show FICO knew of the unauthorized reproduction or the unauthorized distribution of Blaze Advisor Version 7.1 by Chubb & Son before April 21, 2013—the statute of limitations critical date.  Defendants concede the Copyright Act's three-year statute of limitations is a discovery statute in the Eighth Circuit.  The statute begins to run only when FICO discovered Chubb & Son's copyright infringement, or could have discovered it exercising reasonable diligence.  Defendants present no evidence showing that FICO knew or should have known of the claimed infringement by Chubb & Son before April 21, 2013.

Defendants' contention that FICO's copyright claims are based on an extra-territorial application of the Copyright Act is false.  Chubb & Son's acts of copyright

infringement occurred entirely within the United States.  It is undisputed that within the three-year limitations period, Chubb & Son reproduced (copied) Blaze Advisor 7.1 to a site on its computers, in the United States, for the purpose of enabling use and access of Blaze Advisor Version 7.1 by persons who were not employees of Chubb & Son.  This reproduction was unauthorized, because it violated Paragraph 3.1(iv) of the parties' Software License and Maintenance Agreement (the "Agreement").  This reproduction of Blaze Advisor 7.1 in the United States is infringement under 17 U.S.C. §106(1).

Within the limitations period, Chubb & Son also transmitted the infringing copy of Blaze Advisor Version 7.1, located on a site on its computers in the United States, to persons who were not employees of Chubb & Son, including employees of Chubb Insurance Company of Europe SE and Chubb Insurance Company of Canada.  This transmission of Blaze Advisor 7.1 was also unauthorized under Paragraph 3.1(iv) of the Agreement.  This unauthorized transmission (distribution) of Blaze Advisor 7.1 in the United States is infringement under 17 U.S.C. §106(3).

Chubb & Son also permitted employees of the Chubb Insurance Company of Canada to use Blaze Advisor Version 7.1 in the Evolution application.  Its first use in connection with the sale of insurance by Chubb Insurance Company of Canada was in 2015.  At that time, Evolution was hosted on servers located in North Carolina.  This unauthorized use by Chubb Insurance Company of Canada within the limitations period is also copyright infringement, because use of Evolution requires the creation of a copy of Blaze Advisor 7.1 in random access memory ("RAM") on the server in North Carolina.  This unauthorized copying in the United States infringed 17 U.S.C. §106(1).

2

Under the predicate-act doctrine, FICO seeks the recovery of damages flowing from these domestic acts of infringement.  The predicate-act doctrine has been adopted by the Courts of Appeal for the Second, Fourth, Sixth, Ninth, Eleventh, and Federal Circuits.  District courts in the First, Third, Fifth, Seventh, Tenth, and D.C. Circuits have also adopted the doctrine.  To FICO's knowledge, no court has rejected the legal basis for the doctrine.  Defendants' arguments against the predicate-act doctrine—that it has not yet been adopted in the Eighth Circuit, and that it has been criticized on policy grounds by a minority of secondary sources—fail under this overwhelming weight of legal authority.  When the predicate-act doctrine is properly applied, FICO is entitled to recover gross written premium from the sale of insurance by foreign companies in connection with which Blaze Advisor was used.  These companies, along with Federal and ACE American, generate revenue as part of a single enterprise, and Defendants are jointly liable for the revenue collectively derived from the acts of copyright infringement.

Finally, the Court should reject Defendants' attempt to re-argue the merits of the so-called "Affiliates" issue.  The permitted scope of the present summary judgment motion is "strictly limited" to whether the statute of limitations bars FICO's claims as stated and the related predicate-act doctrine.  (Dkt. 731 at 53.)  Whether Federal's "Affiliates" are licensed—an argument on the merits—is irrelevant.  The Court determined that the "Affiliates" issue was for the jury to decide.  (*Id.* at 44.)

The undisputed facts show that FICO's copyright claims are not barred by the statute of limitations.  The Court should deny Defendants' motion for summary judgment and grant FICO's motion (Dkt. 743; Dkt. 744), and strike the defense.

3

II.     **FICO's copyright infringement and breach of contract claims arising from pre-termination conduct are distinct.**

As applied to FICO's claims, Defendants' statute of limitations defense is only relevant to those claims arising before termination of the Agreement on March 31, 2016. The copyright infringement claims arising out of post-termination conduct cannot be the subject of the defense.  FICO filed this lawsuit less than a month after termination. (Dkt. 1.)  Defendants concede their statute of limitations defense only relates to the pre-termination copyright infringement[1] claims.  (Dkt. 751 at 3 ("Count II of FICO's Second Amended Complaint . . . is the subject of this motion.").)  Count II is limited to pre-termination copyright infringement.  (Dkt. 132, ¶¶ 47-53.)

A.      **FICO's copyright infringement claims arising from pre-termination conduct**

FICO's copyright infringement claims are based on Chubb & Son's unauthorized reproduction (copying) and transmission (distribution) of Blaze Advisor Version 7.1.  As applied to Chubb & Son's pre-termination conduct, FICO asserts the following copyright infringement claims:

1. Chubb & Son infringed FICO's exclusive right of reproduction (copying) in violation of 17 U.S.C. §106(1) by uploading Blaze Advisor Version 7.1 to a site on its computers in the United States for the purpose of permitting use and access of Blaze Advisor Version 7.1 by persons who were not employees of Chubb & Son, including employees of Chubb Insurance Company of Europe SE and Chubb Insurance Company of Canada;

2. Chubb & Son infringed FICO's exclusive right of distribution in violation of 17 U.S.C. §106(3) by transmitting the copy of Blaze Advisor Version

---

[1] Defendants have argued elsewhere that the statute of limitations bars FICO's pre-termination breach of contract claims.  (*See* Dkt. 507 at 33.)  Defendants' present motion, however, is limited to the copyright infringement claims.  (*See* Dkt. 751 at 3.)

7.1, located on a site on its computers in the United States, to persons who were not employees of Chubb & Son, including employees of Chubb Insurance Company of Europe SE and Chubb Insurance Company of Canada; and

3. Chubb & Son infringed FICO's exclusive right of reproduction (copying) in violation of 17 U.S.C. §106(1) by permitting employees of Chubb Insurance Company of Canada to use Blaze Advisor Version 7.1 after it was installed on servers in the United States; the unauthorized reproduction being in the United States.

(*See* Memorandum in Support of FICO's Motion for Summary Judgment on Defendants' Statute of Limitation Defense, Dkt. 744, Section IV.A.)  The question for purposes of the statute of limitations, as applied to these copyright infringement claims, is whether there is any evidence from which the jury could decide that FICO knew, or had reason to know, of Chubb & Son's infringement prior to April 21, 2013.  There is no such evidence.  Indeed, it is admitted that Chubb & Son's copyright infringement from the reproduction and distribution of Blaze Advisor Version 7.1 took place entirely within the three-year limitations period.

### B.    FICO's breach of contract claims arising from pre-termination conduct

As applied to Chubb & Son's pre-termination conduct, FICO states the following claims for breach of contract:

1. Chubb & Son breached Paragraph 3.1(iv) of the Agreement by permitting persons who were not employees of Chubb & Son, including employees of Chubb Insurance Company of Europe SE, Chubb Insurance Company of Canada, and Chubb Insurance Company of Australia Ltd., to access and use Blaze Advisor; and

2. Chubb & Son breached Paragraph 3.1(iv) of the Agreement by permitting persons who were not employees of Chubb & Son, including the third party consultants AppCentrica and DWS Group, to access and use Blaze Advisor.

5

(*See* Dkt. 744, Section IV.B.)  FICO's breach of contract claims are based on

unauthorized use and access of Blaze Advisor in breach of Paragraph 3.1.  Defendants

did not move for summary judgment regarding the application of the statute of limitations

to FICO's breach of contract claims.  (*See* Dkt. 751 at 3.)  This decision was well-taken.

As shown in FICO's motion for summary judgment on the statute of limitations defense,

FICO's pre-termination breach of contract claims are not time-barred.  (*See* Dkt. 744,

Section V.B.)

## III.   Statement of facts[2]

In 2006, FICO entered into a Blaze Advisor Software License and Maintenance

Agreement with the Client Chubb & Son, an unincorporated division of Federal.  (*See*

Declaration of Heather Kliebenstein ("Decl."), Ex. 1, at 1.)  Chubb & Son represented

and warranted in Paragraph 3.1(i) of the Agreement that it would not use Blaze Advisor

"in any other manner that exceeds the scope of any license granted under this

Agreement."  It further represented and warranted that it would not "(iv) disclose the Fair

Isaac Products to, or permit the use or access of the Fair Isaac Products by, any third

party or by any individuals other than the employees of Client."  (*Id.* at 2.)  The relevant

portions of the license grant prohibited the disclosure to and forbade permitted use of, or

---

[2] The Statement of Facts is limited to a statement of FICO's pre-termination
copyright infringement claims, which form the basis of Defendants' supplemental motion
for summary judgment.  A more complete statement of facts, including the facts
underlying FICO's pre-termination breach of contract claims, is found in FICO's motion
for summary judgment on the statute of limitations defense.  (*See* Dkt. 744, Section IV.)

access to, Blaze Advisor by any third party or by any person not an employee of Chubb & Son.  (*Id.* at 20.)

It is undisputed that Chubb & Son transmitted a copy of Blaze Advisor Version 7.1, located on a Wiki site on its computers in North Carolina, to persons not employees of Chubb & Son, including employees of Chubb Insurance Company of Europe SE and Chubb Insurance Company of Canada.  (*See* Dkt. 744, Section IV.A.)  On September 6, 2013, Chubb & Son transmitted Blaze Advisor Version 7.1 to unauthorized persons in the United Kingdom, who were not employees of Chubb & Son, for installation in the United Kingdom.  (Decl., Ex. 2; Decl., Ex. 3, 39:3-21; Decl., Ex. 4, 9:9-10:9.)  The evidence also shows that on June 7, 2013, Chubb & Son transmitted Blaze Advisor Version 7.1 to unauthorized persons in Canada, who were not employees of Chubb & Son, for installation in Toronto.  (Decl., Ex. 3, 27:11-15; Decl., Ex. 5.)  Chubb & Son's unauthorized transmission of Blaze Advisor Version 7.1 infringed 17 U.S.C. §106(3).

Chubb & Son's infringing transmission of Blaze Advisor Version 7.1 was preceded by Chubb & Son's reproduction of Blaze Advisor Version 7.1 on a Wiki site on its servers in Raleigh, North Carolina, for the purpose of enabling the access and use of Blaze Advisor Version 7.1 by persons who were not employees of Chubb & Son.  (*See* Dkt. 744, Section IV.A.)  Chubb & Son's unauthorized transmission of Blaze Advisor took place through the internal Wiki site hosted by Chubb & Son in North Carolina. (Decl., Ex. 3, 39:3-21; *see also id.*, 33:15-34:8, 54:4-24; Decl., Ex. 6, 22:2-17, 33:4-34:17.)  This process was internal to Chubb & Son and did not require the assistance of

7

FICO.  (Decl., Ex. 3, 39:3-21.)  Chubb & Son's unauthorized reproduction (copying) of Blaze Advisor Version 7.1 to the Wiki site infringed 17 U.S.C. §106(1).

Chubb & Son also permitted employees of the Chubb Insurance Company of Canada to use Blaze Advisor Version 7.1 in the Canadian Evolution application.  When the Evolution application was first used in connection with the sale of insurance, it was hosted on servers located in Raleigh, North Carolina.[3]  (Decl., Ex. 3, 30:10-31:1.)  Blaze Advisor Version 7.1 was used by Chubb Insurance Company of Canada to support business applications used in connection with the sale of insurance in Canada.  (*Id.*, 30:2-9, 31:2-14.)  This use required the creation of a RAM copy of Blaze Advisor Version 7.1 on the server in North Carolina.  (Decl., Ex. 7, 78:11-82:9.)  This unauthorized copying infringed 17 U.S.C. § 106(1).

## IV.   Defendants' statute of limitations defense applied to FICO's copyright infringement claims fails as a matter of law.

On summary judgment, all facts and inferences must be drawn in FICO's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The statute of limitations is an affirmative defense.  Defendants bear the burden of proof.  *Lackawanna Chapter of the Ry. & Locomotive Hist. Soc'y, Inc. v. St. Louis Cty, Mo.*, 606 F.3d 886, 888 (8th Cir. 2010); *Schmidt v. DIRECTV, LLC*, No. 14-3000 (JRT/JSM), 2016 U.S. Dist. LEXIS 16410, at *67 (D. Minn. Jan. 22, 2016).

---

[3] As stated above, Blaze Advisor for use by Chubb Insurance Company of Canada was first hosted on servers in Toronto.  Blaze Advisor was later migrated to servers in Raleigh, from which it was deployed for use in the sale of insurance.  (Decl., Ex. 3, 30:2-9, 31:2-14.)

A.    **FICO's copyright infringement claims are not based on "use";**
       **Defendants reference FICO's contract claims to mischaracterize its**
       **copyright claims.**

Defendants' summary judgment motion is premised on a mischaracterization of

FICO's copyright infringement claims.  Defendants assert that FICO's copyright

infringement claims fail as a matter of law because "use of a copyrighted work, whether

licensed or not, does not implicate any of the Copyright Act's exclusive rights and is not

actionable as copyright infringement."  (Dkt. 751 at 6.)  The contention fails.  FICO's

copyright infringement claims arise from acts in violation of Paragraph 3.1 of the

Agreement that infringe exclusive rights of copyright, including reproduction and

distribution.  *See MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 940 (9th Cir.

2010) ("To recover for copyright infringement based on breach of a license agreement,

(1) the copying must exceed the scope of the defendant's license and (2) the copyright

owner's complaint must be grounded in an exclusive right of copyright (*e.g.*, unlawful

reproduction or distribution)."); *Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*, 315 F.

Supp. 3d 1147, 1165 (C.D. Cal. 2018) (same); *John Wiley & Sons, Inc. v. DRK Photo*,

998 F. Supp. 2d 262, 288 (S.D.N.Y. 2014) (same); *see also* 3 M. Nimmer & D. Nimmer,

Copyright § 10.15 (2020) ("[W]hen a license is limited in scope, exploitation of the

copyrighted work outside the specified limits constitutes infringement.").  Chubb &

Son's reproduction and distribution of Blaze Advisor 7.1, undertaken outside the scope of

the Agreement, infringed FICO's exclusive rights under 17 U.S.C. § 106.

Defendants conflate Chubb & Son's infringing reproduction and distribution of

Blaze Advisor with the installation and use of Blaze Advisor by third parties.  (Dkt. 751

9

at 3.)  Paragraph 49 of Count II of the Second Amended Complaint states FICO's pre-termination copyright infringement claim: unauthorized reproduction and distribution *to* third parties.  (Dkt. 132, ¶ 49.)  FICO does not allege installation or use *by* third parties in support of its copyright claim.  (*Id.*, ¶¶ 47-53.)  FICO's copyright infringement claims are based on Chubb & Son's unauthorized reproduction and distribution of Blaze Advisor Version 7.1.  Reproduction and distribution are two of the enumerated exclusive rights of copyright under Section 106 of the Copyright Act.  *See* 17 U.S.C. § 106(1); § 106(3).

Defendants cite FICO's memorandum in support of its motion for summary judgment to mischaracterize FICO's copyright claims.  (Dkt. 751 at 3 (citing Dkt. 398).)  FICO's motion for summary judgment was limited to its breach of contract claims.  (*See* Dkt. 398 at 1 ("Fair Isaac Corporation ('FICO') respectfully moves for summary judgment finding Federal Insurance Company ('Federal') liable for breach of contract.").)  FICO did not move for summary judgment on its copyright infringement claims.  The sections of FICO's memorandum Defendants cite are limited to FICO's breach of contract claims.  (Dkt. 751 at 1, 3 (citing Dkt. 398 at 9, 13-17).)  Defendants cite Section III.B of FICO's memorandum, entitled "Persons not employees of Chubb & Son and third party consultants used and accessed Blaze Advisor," and Section IV.B, entitled "Federal breached Paragraph 3.1 because Blaze Advisor was installed and physically located outside of the United States."  (Dkt. 398 at 9, 13.)  These sections are strictly limited to FICO's breach of contract claims.

Defendants further assert "[i]n its motion for summary judgment, the evidence FICO submitted in support of the distribution claim related to acts that took place in 2009

and 2010." (Dkt. 751 at 3 (citing Dkt. 401, Exs. 14-17).) Again, Defendants are wrong. FICO cited this evidence in support of its breach of contract claim. Chubb & Son's disclosure of Blaze Advisor 6.7 to unauthorized persons in the United Kingdom in 2009 and disclosure of Blaze Advisor 6.9 to unauthorized persons in Canada in 2010 breached the Agreement. FICO does not assert this conduct was copyright infringement.

Defendants also characterize FICO's copyright infringement claim as including a "third-party use claim," based on the unauthorized use and access of Blaze Advisor by third party consultants, including AppCentrica and DWS Group. (Dkt. 751 at 1.) FICO states no such claim. The unauthorized use and access by third-party consultants breached the Agreement; it does not form the basis of FICO's copyright infringement claims.

**B.**     **Defendants concede the discovery rule applies; there is no evidence that FICO knew or should have known of Chubb & Son's copyright infringement before April 21, 2013.**

The Copyright Act provides a three-year limitation on damages. *See* 17 U.S.C. § 507(b). In copyright cases, the Eighth Circuit applies a discovery rule, not an accrual rule, to the statute of limitations. *See Design Basics, LLC v. Carhart Lumber Co.*, No. 8:13-CV-125, 2016 U.S. Dist. LEXIS 12788, at *6-8 (D. Neb. Feb. 3, 2016) (collecting cases; "[C]ourts within the Eighth Circuit have uniformly applied the discovery rule in copyright-infringement cases."); *see also Comcast of Ill. X v. Multi-Vision Elecs., Inc.*, 491 F.3d 938, 944 (8th Cir. 2007) (applying 17 U.S.C. § 507(b) to claim under Cable Communications Policy Act; "In federal question cases, the discovery rule applies in the absence of a contrary directive from Congress.") (internal quotation omitted). Under the

11

discovery rule, "a cause of action accrues and the statute of limitations begins to run when the plaintiff discovers, or with due diligence should have discovered, the injury which is the basis of the litigation." *Comcast of Ill. X*, 491 F.3d at 944. Defendants now concede that the discovery rule applies.[4] (*See* Dkt. 751 at 14.)

> **(1)    There is no evidence showing FICO discovered, or should have discovered, the infringing reproduction and distribution of Blaze Advisor Version 7.1.**

Defendants fail to identify any evidence showing that on or before April 21, 2013, FICO knew, or had reason to know, of Chubb & Son's copyright infringement arising from the unauthorized reproduction and distribution of Blaze Advisor Version 7.1. Indeed, the evidence shows the opposite. Federal's Rule 30(b)(6) designee, Henry Mirolyuz, testified that Chubb & Son's reproduction (copying) of Blaze Advisor to the Wiki site hosted on its servers took place without FICO's knowledge, and that the site on which it was reproduced was completely internal with no external access. (Decl., Ex. 3, 39:3-21, 78:9-15.) In the absence of any evidence showing that FICO knew, or had reason to know, of Chubb & Son's infringement on or before April 21, 2013, Defendants cannot meet their burden to prove the statute of limitations affirmative defense. No reasonable jury could find otherwise.

---

[4] Defendants previously argued that "[t]he initial 2009 installation [of Blaze Advisor] is when FICO's contract claim for breach of the territory definition in the disputed license agreement and its corresponding claim for copyright infringement both accrued." (*See* Dkt. 681.) This argument contradicts the discovery rule.

> **(2)     FICO's knowledge, even if true, of the "use" of Blaze Advisor Version 6.7 in the United Kingdom is irrelevant.**

Defendants assert the statute of limitations began to run because FICO knew of the "use[]" of Blaze Advisor Version 6.7 in the United Kingdom in 2012.  (Dkt. 751 at 15.) Even if true, this knowledge is irrelevant.

FICO's copyright infringement claims are based on the unauthorized reproduction and distribution of Blaze Advisor Version 7.1 in the United States.  They are not based on Blaze Advisor Version 6.7, nor are they based on "use[] outside of the United States" as Defendants assert.  Defendants' argument flows from their mischaracterization of FICO's copyright claim.  Knowledge of use of an earlier version of Blaze Advisor in the United Kingdom, even if true, is not knowledge of the reproduction and distribution of Blaze Advisor Version 7.1.  *See* 17 U.S.C. § 106(1); § 106(3).

Defendants' statement that "FICO . . . relies on evidence of an installation taking place in 2009 in Europe" is wrong and misleading.  (Dkt. 751 at 16 (citing Dkt. 401, Exs. 14-15).)  That evidence supports FICO's breach of contract claim, *not* its copyright infringement claim.  (*See* Dkt. 398, Section III ("Breach of the Agreement is factually undisputed") (citing Dkt. 401, Exs. 14-15).)

Finally, Defendants' waiver and estoppel arguments with respect to the alleged knowledge of FICO's salespersons in the United Kingdom are only relevant to the territorial scope of the Agreement, which has already been decided.  (*See* Dkt. 731 at 38-41.)  As this Court found, "the Court need not address the parties' arguments as to Federal's estoppel and waiver defenses, *which pertain only* to the License Agreement's

purported (but nonexistent) geographic restriction." (Dkt. 731 at 41 n.13 (emphasis added).) Defendants' arguments about the knowledge of FICO salespersons are misplaced.

### C.   Chubb & Son's copyright infringement from the reproduction and distribution of Blaze Advisor Version 7.1 within the statute of limitations is independently actionable under the separate-accrual rule.

As applied to FICO's claim of infringement from the reproduction and distribution of Blaze Advisor Version 7.1, Defendants' statute of limitations defense fails as a matter of law. Acts within the statute of limitations are independently actionable. It is admitted that Chubb & Son's unauthorized reproduction and distribution of Blaze Advisor Version 7.1 to persons in the United Kingdom took place on September 6, 2013. (Decl., Ex. 2.) Defendants' documents show that Chubb & Son's unauthorized reproduction and distribution of Blaze Advisor Version 7.1 to persons in Canada took place on June 7, 2013. (Decl., Ex. 5.) These acts of infringement are *within* the limitations period.

Supreme Court law is clear that the copyright statute of limitations is subject to the separate-accrual rule, under which each infringement is separately actionable:

> It is widely recognized that the separate-accrual rule attends the copyright statute of limitations. *Under that rule, when a defendant commits successive violations, the statute of limitations runs separately from each violation*. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete "claim" that "accrues" at the time the wrong occurs. In short, each infringing act starts a new limitations period.

*Petrella*, 572 U.S. at 671 (emphasis added); *see also Negley v. Hallmark Cards, Inc.*, No. 11-00785-CV-W-DW, 2013 U.S. Dist. LEXIS 196584, at *4-5 (W.D. Mo. Mar. 1, 2013) ("However, because Defendant has alleged continuing infringements, the Court finds that

14

Defendant's claim should not be dismissed in its entirety. . . . Defendant is not precluded on statute of limitations grounds from supporting its copyright infringement claim with incidents that occurred during the three-year period prior to February 3, 2012.").

Defendants cite the *Negley* case and appear to acknowledge the separate-accrual rule. (*See* Dkt. 751 at 15 ("[T]he Copyright Act's three-year statute of limitations limits liability to conduct that occurred after [the critical date]."); *id.* at 16 (citing *Negley*, 2013 U.S. Dist. LEXIS 196584).) But, Defendants' arguments ignore the separate-accrual rule, under which each of Chubb & Son's infringements within the limitations period are independently actionable.

Here, Chubb & Son's unauthorized reproduction and distribution of Blaze Advisor Version 7.1 took place *after* April 21, 2013. These acts of infringement within the limitations period include reproducing Blaze Advisor Version 7.1 on a Wiki site on its computers in Raleigh, North Carolina, for the purpose of enabling the use of Blaze Advisor Version 7.1 by persons who were not employees of Chubb & Son, in violation of 17 U.S.C. §106(1); transmitting the copy of Blaze Advisor Version 7.1, located on the Wiki site on its computers in North Carolina, to persons who were not employees of Chubb & Son, in violation of 17 U.S.C. §106(3); and permitting employees of Chubb Insurance Company of Canada to use Blaze Advisor Version 7.1 installed on servers in North Carolina, which created a RAM copy in violation of 17 U.S.C. § 106(1). (*See supra* Section III.) This lawsuit commenced on April 21, 2016. (*See* Dkt. 1.) All acts of infringement from the unauthorized reproduction and distribution of Blaze Advisor Version 7.1 took place after April 21, 2013 and are within the limitations period.

15

**D.**     **FICO is entitled to recover foreign revenue attributable to Chubb &
Son's copyright infringement under the predicate-act doctrine.**

Chubb & Son's copyright infringement is not an extra-territorial application of the
Copyright Act.  The predicate-act doctrine allows a copyright owner to recover damages
for the "extraterritorial exploitation of an infringing act that occurred in the United
States."  *Los Angeles News Serv. v. Reuters TV Int'l.*, 149 F.3d 987, 992 (9th Cir. 1998).
Contrary to Defendants' assertion, the predicate-act doctrine is not an "exception to the
Copyright Act's territorial restrictions."  (Dkt. 751 at 9.)  Rather, the predicate-act
doctrine is necessary to give full force and effect to 17 U.S.C. § 504(b), which entitles the
copyright owner to "any profits of the infringer that are attributable to the infringement."

**(1)**     **No court has rejected the legal basis of the predicate-act
doctrine; it has been adopted by courts in twelve Circuits.**

The predicate-act doctrine was first established by Judge Learned Hand in *Sheldon
v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 52 (2d Cir. 1939).  There, the court
permitted the copyright owner to recover the profits attributable to infringement "made
from exhibiting the infringing picture outside the United States."  *Id.*  The court reasoned
that because Defendants had made copies of the negatives within the United States, the
situs of the profits was in the United States.

Since *Sheldon* announced the predicate-act doctrine, it has been applied by the
Courts of Appeal for the Second, Fourth, Sixth, Ninth, Eleventh, and Federal Circuits.
*Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988); *Tire Eng'g &
Distribution, Ltd. Liab. Co. v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 306-08 (4th
Cir. 2012); *Liberty Toy Co. v. Fred Silber Co.*, No. 97-3177, 1998 U.S. App. LEXIS

16

14866, at \*10-12 (6th Cir. June 29, 1998); *Los Angeles News Serv.*, 149 F.3d at 990-92;
*Palmer v. Braun*, 376 F.3d 1254, 1258 (11th Cir. 2004); *Halo Creative & Design, Ltd. v. Comptoir Des Indes, Inc.*, 816 F.3d 1366, 1371 (Fed. Cir. 2016).

District courts in the First, Third, Fifth, Seventh, Tenth, and D.C. Circuits have also adopted the predicate-act doctrine.  First Circuit: *Iconics, Inc. v. Massaro*, 192 F. Supp. 3d 254, 263 (D. Mass. 2016); *Stockfood Am., Inc. v. Pearson Educ., Inc.*, No. 2:12-cv-124-JAW, 2012 U.S. Dist. LEXIS 169503, at \*22 (D. Me. Nov. 29, 2012).  Third Circuit: *Bavendam v. Pearson Educ., Inc.*, No. 13-3096 (FSH), 2013 U.S. Dist. LEXIS 143587, at \*15-18 (D.N.J. Oct. 3, 2013).  Fifth Circuit: *Geophysical Serv. v. ConocoPhillips Co.*, No. H-15-2766, 2016 U.S. Dist. LEXIS 63231, at \*17 (S.D. Tex. May 13, 2016).  Seventh Circuit: *Motorola Sols. v. Hytera Communs. Corp.*, No. 1:17-cv-1973, 2020 U.S. Dist. LEXIS 35942, at \*40-42 (N.D. Ill. Jan. 31, 2020).  Tenth Circuit: *Int'l Acad. of Bus. & Fin. Mgmt. v. Mentz*, No. 12-cv-00463-CMA-BNB, 2013 U.S. Dist. LEXIS 100033, at \*13-15 (D. Colo. July 17, 2013).  D.C. Circuit: *IMAPizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 3d 95, 117 (D.D.C. 2018).[5]

To FICO's knowledge, no court—circuit court or district court—has ever rejected the legal basis of the predicate-act doctrine.  Defendants' cited cases are not to the contrary.  (Dkt. 751 at 8-9.)  Cases that "distinguish" the predicate-act doctrine do so on the factual basis that no domestic act of infringement was proven.  *See Iverson v. Grant*,

---

[5] The only circuit not having at least one court consider the predicate-act doctrine is the Eighth Circuit.

Nos. 96-2228, 96-2233, 1998 U.S. App. LEXIS 1431, at *1-2 (8th Cir. Jan. 7, 1998) (holding copyright infringement claim is not shown by acts of infringement taking place entirely outside of the United States); *see also Geophysical Serv. v. TGS-NOPEC Geophysical Co.*, 850 F.3d 785, 792 (5th Cir. 2017) (same); *Subafilms, Ltd. v. Mgm-Pathe Communs. Co.*, 24 F.3d 1088, 1094-95 (9th Cir. 1994) (same)[6]; *Robert Stigwood Grp. Ltd. v. O'Reilly*, 530 F.2d 1096, 1101 (2d Cir. 1976) (same).  Defendants' authority addresses the very different case in which there is no domestic act of infringement.

Where a copyright owner proves a domestic act of infringement, courts have unanimously permitted the copyright owner to recover damages for the "extraterritorial exploitation of an infringing act that occurred in the United States."  *See Los Angeles News Serv.*, 149 F.3d at 990-92.

> **(2)    This Court should look to other courts when analyzing matters of first impression within this Circuit.**

Defendants' contention the predicate-act doctrine must be rejected because no other Eighth Circuit court has applied or interpreted the doctrine is entirely misplaced. (Dkt. 751 at 9-10.)

It is elementary that when courts are faced with matters of first impression, they look to other courts for persuasive reasoning on the matter.  *See PW Enters. v. N.D. Racing Comm'n*, 540 F.3d 892, 901-02 (8th Cir. 2008) (finding persuasive holdings of the Second and Ninth Circuits in a matter of first impression); *United States v.*

---

[6] In adopting the predicate-act doctrine, the Ninth Circuit expressly distinguished the *Subafilms* case.  *See Los Angeles News Serv.*, 149 F.3d at 992 ("The *Subafilms* court's concerns are inapplicable to the present case.").

*Hipenbecker*, 115 F.3d 581, 583 (8th Cir. 1997) (finding persuasive holdings of the

Eleventh Circuit in a matter of first impression); *Baden v. Craig-Hallum, Inc.*, 646 F.

Supp. 483, 489-90 (D. Minn. 1986) (finding persuasive holdings of the Third, Ninth,

Eleventh, and D.C. Circuits in a matter of first impression).  Here, the body of law to

consider is unanimous.  Every court to consider the legal basis of the predicate-act

doctrine has cited it approvingly.  Defendants cite no case to the contrary.  This Court

should consider the persuasive authority of other courts that have analyzed the predicate-

act doctrine and allow FICO to recover revenues attributable—whether domestic or

foreign—to Chubb & Son's domestic acts of infringement.

### (3)    Policy concerns support application of the predicate-act doctrine.

Despite the overwhelming weight of legal authority, Defendants urge the Court to

reject the predicate-act doctrine on policy grounds.  (Dkt. 751 at 10.)  This argument

overlooks the policy arguments supporting the doctrine, namely, the benefit of fully

compensating copyright owners for acts of domestic infringement.

The Supreme Court recently resolved an analogous patent law dispute regarding

the extraterritorial recovery of damages arising from domestic acts of infringement.

*WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129 (2018).  In *WesternGeco*,

the Court held that a patent owner could recover lost profits under § 284 of the Patent Act

for sales lost outside of the United States.  As the Court acknowledged, "[i]f the conduct

relevant to the statute's focus [infringement] occurred in the United States, then the case

involves a permissible domestic application of the statute, even if other conduct occurred

19

abroad." *Id.* (citing *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2101 (2016)) (internal quotation omitted).  The Court justified its holding based on the compensatory purpose of the statute.  *Id.* ("The portion of [35 U.S.C.] § 284 at issue here states that 'the court shall award the claimant damages adequate to compensate for the infringement.' . . . As this Court has explained, the 'overriding purpose' of § 284 is to 'affor[d] patent owners complete compensation' for infringements.") (internal citation omitted).  The Court continued, "the domestic infringement is the object of the statute's solicitude" and "the lost-profits damages that were awarded to WesternGeco were domestic application of § 284." *Id.* at 2138.  The Court concluded that to argue that overseas events that gave rise to lost-profits damages were an extraterritorial application of § 284 "conflates legal injury with the damages arising from that injury." *Id.*

The Supreme Court's *WesternGeco* analysis applies equally to damages under the Copyright Act.  Like 35 U.S.C. § 284, § 504 of the Copyright Act is a general damages remedy.  Section 504(b) seeks to fully compensate the copyright owner for infringement. The legal analysis by the Court in *WesternGeco* is the legal analysis underpinning the predicate-act doctrine since Judge Learned Hand announced the doctrine in 1939.  *See Sheldon*, 106 F.2d at 52.  The purpose of the predicate-act doctrine is to fully compensate the copyright owner for foreign exploitation of the copyrighted work.  As in the *WesternGeco* analysis, the predicate-act doctrine grounds the recovery in attributing the profits to a domestic act of infringement.

The court in *Motorola Sols. v. Hytera Communs. Corp.* recently applied the predicate-act doctrine and allowed the copyright owner to seek "damages flowing from

20

exploitation abroad of the domestic acts of infringement committed by Defendants."  No.

1:17-cv-1973, 2020 U.S. Dist. LEXIS 35942, at *40-42 (N.D. Ill. Jan. 31, 2020).  Noting

that the Seventh Circuit had not yet explicitly adopted the predicate-act doctrine, the

*Motorola* court undertook the *WesternGeco* analysis, acknowledging the "similarities"

between the predicate-act doctrine and the *WesternGeco* analysis.  *Id.* at *6-12, 40-42.

*Motorola* is the latest in the long line of cases that apply the predicate-act doctrine in

accord with the territorial limitations of the Copyright Act.  This Court should do the

same.

> **(4)     Defendants' reliance on secondary sources is not persuasive in view of the overwhelming weight of primary authority.**

Defendants' final contention that the predicate-act doctrine is subject to

"significant criticism" from secondary sources (Dkt. 751 at 10) is unpersuasive.

Defendants' two secondary sources critical of the predicate-act doctrine are not reflective

of the weight of legal authority or the body of scholarly work on the matter.  The leading

copyright treatise recognizes the predicate-act doctrine as consistent with the territorial

limits to the Copyright Act.  5 M. Nimmer & D. Nimmer, Copyright § 17.02 (2020) ("In

the first place, if, and to the extent, a part of an 'act' of infringement occurs within the

United States, then, although the act may be completed in a foreign jurisdiction, those

parties who contributed to the act within the United States may be rendered liable under

American copyright law.")  Numerous law review articles also endorse the application of

21

the predicate-act doctrine.[7]  The predicate-act doctrine is well-established in both case

law and scholarly analysis.  The Court should reject Defendants' unfounded criticisms

and apply the predicate-act doctrine.

> **(5)** **FICO is entitled to recover damages flowing from the foreign exploitation of Chubb & Son's domestic infringement.**

Applying the predicate-act doctrine to the facts of this case, FICO is entitled to

disgorgement resulting from the foreign exploitation of Chubb & Son's infringement.

Chubb & Son's infringements of 17 U.S.C. § 106(1) and 17 U.S.C. § 106(3) are not

extra-territorial applications of the Copyright Act.  Defendants assert that "FICO has not

presented evidence of a domestic act that violates one of the exclusive rights protected

under § 106 of the Copyright Act."  (Dkt. 751 at 12.)  Defendants are is wrong.  FICO's

copyright infringement claim is predicated on Chubb & Son's _domestic_ acts, which

---

[7] _See, e.g._, Jeff Pettit, _At Sea, Anything Goes? Don't Let Your Copyrights Sail Away, Sail Away, Sail Away_, 93 TEX. L. REV. 743, 759-61 (Feb. 2015) (proposing use of predicate-act doctrine to recover for extraterritorial exploitation of copyrights aboard cruise ships where infringing act first occurred domestically); Graeme W. Austin, _Importing Kazaa – Exporting Grokster_, 22 SANTA CLARA COMPUTER & HIGH TECH. L.J. 577, 597-598 (Mar. 2006) ("Courts in the leading copyright circuits distinguish _Subafilms_ where a predicate act of infringement occurring within the United States facilitates infringement abroad. . . . Moreover, because temporary digital storage is considered a legally cognizable copy in U.S. copyright law, the predicate act theory has the potential to catch a significant amount of foreign copying."); Christopher R. Perry, _Exporting American Copyright Law_, 37 GONZ. L. REV. 451, 475 (2001/2002) ("The cases are unanimous, however, in that they affirm that this exception is still a viable option for copyright owners seeking to protect their copyrights with U.S. copyright laws against infringement that takes place beyond the borders of the United States."); Brandon Dalling, _Protecting Against International Infringements in the Digital Age Using United States Copyright Law: A Critical Analysis of the Current State of the Law_, 2001 B.Y.U. L. REV. 1279, 1293 ("Copyright holders can utilize a strong tool in preventing foreign infringements where at least one infringing act occurs in the United States.").

include the unauthorized reproduction and distribution of Blaze Advisor 7.1 from a Wiki site on its computers in North Carolina, as described *supra* at Section III.  Chubb & Son's infringement took place entirely within the United States.  FICO is entitled to all damages flowing from foreign exploitation of Chubb & Son's predicate acts of infringement.

Defendants assert that "FICO's distribution claim with respect to Federal's affiliates in Australia and Canada also fails as a matter of law because the undisputed facts demonstrate there were no distributions to these affiliates."  (Dkt. 751 at 13.)  Once again, Defendants are wrong.  FICO is entitled to recover revenue from Chubb Insurance Company of Australia Ltd., because that revenue flowed from Chubb & Son's infringing distribution of Blaze Advisor Version 7.1 to the United Kingdom.  Defendants concede that "[t]he servers for Australia are in the United Kingdom."  (*Id.* at 5.)  Chubb & Son's infringing reproduction and distribution of Blaze Advisor 7.1 to the United Kingdom enabled Chubb Insurance Company of Australia Ltd. to generate revenue in connection with applications using Blaze Advisor.  FICO is entitled to recover that revenue under the predicate-act doctrine.

With respect to Canada, the evidence shows that on June 7, 2013, Chubb & Son transmitted Blaze Advisor 7.1 to persons in Canada, who were not employees of Chubb & Son, for installation in Toronto.  (Decl., Ex. 3, 27:11-15; Decl., Ex. 5.)  While Defendants contend there was no infringing distribution to Canada, all inferences must be drawn in FICO's favor for purposes of deciding the present motion.  The issue here is whether FICO's claim, as stated, would be barred by the statute of limitations, not whether Defendants' view of the merits is correct.  The evidence supports a claim of

infringement based on Chubb & Son's distribution of Blaze Advisor to Canada in 2013.

(*See supra* Section III.)  FICO is entitled to recover the revenue of Chubb Insurance

Company of Canada flowing from these domestic acts of infringement.

> ### E.   FICO is entitled to disgorge profits from Federal and ACE American's single enterprise.

FICO is entitled to recover from the named defendants, Federal and ACE

American, gross written premium from the sale of insurance by foreign companies (and

other companies in their single enterprise) in connection with which Blaze Advisor was

used.  As this Court found, FICO has the right to prove at trial it is entitled to recover the

revenue derived from the use of Blaze Advisor from the other writing companies who,

along with Federal and ACE American, generate revenue as part of a single enterprise.

(*See* Dkt. 731 at 32 ("Regardless of whether the disputed profits were earned in part by

nonparties, the relevant issue is whether any such profits may fairly be considered profits

of the infringer subject to FICO's disgorgement claim.").)  The Court found that "the law

does not preclude FICO from seeking to disgorge certain profits that, although *earned* by

non-parties, may nonetheless belong to Defendants."  (*Id.* at 33.)

Defendants are jointly liable for profits "collectively derived from the acts of

copyright infringement."  *Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505,

517 (4th Cir. 2002); *see also Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013)

(observing that the Copyright Act "aims . . . to strip the infringer of the profits generated

from infringement"); *cf. Anchor Wall Sys. v. Rockwood Retaining Walls, Inc.*, 610 F.

Supp. 2d 998, 1019-20 (D. Minn. 2009); *Tran v. Farmers Grp., Inc.*, 104 Cal. App. 4th

1202, 1206, 1218-19 (Cal. App. 2002) (permitting recovery of damages from insurance companies acting as a single enterprise).  This recovery includes, but is not limited to,[8] the recovery of revenues from Chubb Insurance Company of Europe SE, Chubb Insurance Company of Canada, and Chubb Insurance Company of Australia Ltd., flowing from Chubb & Son's domestic predicate acts of infringement.  These companies generate revenue as part of a single enterprise, along with the named defendants Federal and ACE American.

F.   **Defendants' attempt to re-argue the "Affiliates" issue is outside the proper scope of the Court's Order; Defendants' argument is also without merit.**

The Court should reject Defendants' attempt to re-argue the merits of the so-called "Affiliates" issue.  (Dkt. 751 at 11-12.)  Defendants contend "[t]he 'Client' under the License Agreement is Federal"; that "any distribution to Federal's affiliates was licensed and cannot form the basis for copyright infringement claims"; and that "Federal is entitled to summary judgment on this issue."  (*Id.* at 12.)  This is an argument on the merits of the "Affiliates" issue that exceeds the "strictly limited" permissible scope of the supplemental summary judgment motions.  (*See* Dkt. 731 at 52-53.)   Whether Federal's affiliates were authorized under the Agreement is an issue for the jury.  The only issue for purposes of the present motion is whether the statute of limitations bars FICO's copyright claims as stated by FICO.

---

[8] FICO also seeks to disgorge profits earned by certain domestic insurance companies that flowed from copyright infringement by the named defendants Federal and ACE American.  This claim does not implicate the predicate-act doctrine.

### (1)   The Court identified fact issues precluding summary judgment on the "Affiliates" issue.

The Court observed Defendants' contention that "permitting Federal's subsidiaries to use and access Blaze Advisor does not qualify as impermissible third-party use or access." (Dkt. 731 at 38.)  The Court then identified fact issues precluding summary judgment, including whether Chubb & Son had any employees.  (*Id.* at 44.)  The Court determined that the definition of "Client and its Affiliates" in Amendment Two was ambiguous and required a trial: "FICO has established that the scope of the phrase 'Client and its Affiliates' in the December 2006 amendment is ambiguous and depends on disputed material facts."  (*Id.*)  In view of these fact issues, Defendants' attempt to re-argue the merits of the "Affiliates" issue must fail.  *See Mellon Bank, N.A. v. United Bank Corp.*, 31 F.3d 113, 116 (2d Cir. 1994) ("[W]hen a contract is ambiguous, its interpretation becomes a question of fact and summary judgment is inappropriate.").

### (2)   The facts show that Chubb & Son, an unincorporated division, is the "Client."

Despite the plain language of the Agreement, Defendants argue that the "Client" is Federal Insurance Company, not its division Chubb & Son.  (Dkt. 751 at 11-12.)  This argument is belied by the evidence.

The Agreement derived from FICO's response to a Request for Information ("RFI") from "Chubb and Son, a Division of Federal Insurance Company, for itself and as servicer for the Chubb Corporation and its non-insurance company subsidiaries, or as manager of its insurance company subsidiaries."  (Decl., Ex. 8, at 1.)  The division Chubb

& Son was, as stated in the RFI (and as further detailed in the Chubb Corp. 10-K), a manager of Chubb Corporation insurance company subsidiaries.  (*Id.*; Decl., Ex. 9.)

The parties signed the Agreement on June 30, 2006.  (Decl., Ex. 1.)  The Agreement was followed by Amendment One, effective June 30, 2006, and Amendment Two, effective December 28, 2006.  (*Id.* at 20.)  In all instances, the "Client" is a defined term meaning "Chubb & Son, a division of Federal Insurance Company," and in all instances the signatory is Chubb & Son, the division.  (*Id.*; *see also* Decl., Ex. 10, 94:20-22 ("Q. And the client was Chubb & Son, a division of Federal, correct?  A. Yes.").)

The parties' pre-suit negotiations, confirmed that the "Client" was Chubb & Son, a division of Federal.  FICO's Associate General Counsel, Thomas Carretta, gave notice of breach on January 27, 2016.  (Decl., Ex. 11.)  Chubb's Deputy General Counsel, Andrew Hopp, responded on February 17, 2016.  (Decl., Ex. 12.)  Mr. Hopp acknowledged that Chubb & Son was the contracting party with FICO.  (*Id.* ("Notwithstanding the acquisition, *Chubb & Son, the contracting party* to the Agreement . . . .") (emphasis added).)  Mr. Hopp explained: "In short, Chubb & Son is still FICO's 'Client' as such term is defined in the Agreement."  (*Id.*)

Following a response from Mr. Carretta, Mr. Hopp replied on February 25, 2016, advising that a commercial proposal would be sent to FICO for review.  (Decl., Ex. 13.)  The commercial proposal was clear: "The contracting party to the license agreement is and remains Chubb & Son, a division of Federal Insurance Company."  (Decl., Ex. 14.)

Later in the parties' negotiations Mr. Carretta sent Mr. Hopp a draft framework agreement followed by an updated framework agreement in order to advance the business

resolution of the case.  (Decl., Ex. 15; Decl., Ex. 16.)  The framework agreements, titled

"Amendment Three," defined the "Client" as "Chubb Limited, through its division

Chubb & Son."  (*Id.*)  Paragraph 4.3 of the updated framework agreement defined

"Affiliates" as that term was defined in Amendment Two of the Agreement: "any other

entity directly or indirectly controlled by Client, where 'control' means the ownership of

more than 50% of the aggregate of all voting interests."  (Decl., Ex. 16.)

Federal's counterproposal enclosed a redlined response to the updated framework

agreement.  (Decl., Ex. 17.)  Federal rejected FICO's proposed change to the definition of

"Client" in Amendment Three, maintaining that the "Client" was "Chubb & Son, a

division of Federal Insurance Company" and changed the signature block accordingly.

(Decl., Ex. 18.)  Implicitly acknowledging that the definition of "Affiliates" in

Amendment Two of the Agreement is ineffectual when the Client is the division Chubb

& Son, Federal redlined changes to the definition of "Affiliates."  (*Id.*)  Federal sought to

delete all reference to stock ownership in the meaning of "Affiliates" and expanded the

meaning to include both upstream and downstream entities; Federal proposed "any other

entity that directly or indirectly controls or is controlled by Client, or is under common

control with Client."  (*Id.*)  This change would make Federal an "Affiliate" because

Federal controls its division, Chubb & Son.  It also would make Federal's subsidiaries

"Affiliates" because they are under common control with Chubb & Son, a division of

Federal.  Federal's proposed change is an implicit acknowledgement that the "Client" as

defined in Amendment Two did *not* include Federal or Federal's affiliates.  Material facts

show that the "Client" is not Federal and support the Court's Order.  Defendants' request

in this motion to grant them summary judgment on the "Affiliates" issue should be rejected.

> **(3)     With respect, the Court has not considered the full application of New York law relating to the "Affiliates" issue.**

Defendants' summary judgment request on the "Affiliates" issue is wrong on New York law.  (*See* Dkt. 751 at 12.)  Consistent with New York law, an unincorporated division, such as Chubb & Son, <u>*may*</u> enter into contracts in its own name.  *See Maranatha Assocs. v. Titan Grp.*, 202 A.D.2d 846, 847 (N.Y. App. Div. 1994); *see also Royal Indus. v. Kraft Foods*, 926 F. Supp. 407, 416 (S.D.N.Y. 1996) (acknowledging potential to contract with an unincorporated division under New York law: "The alleged contract in this case was between Kraft, a Delaware corporation headquartered in Illinois, and Royal, a Marshall Islands corporation headquartered in New Jersey.  However, KF International, an unincorporated division of Kraft headquartered in New York, was responsible for handling the Kraft end of the deal . . . . <u>*Thus, if a contract with Kraft was formed, it was formed with a New York division of that entity*</u>, and if a breach occurred, it occurred in New York.") (emphasis added).

In *Maranatha*, the defendant made the same argument as Defendants now make, namely that an unincorporated division cannot enter into contracts in its own name.  202 A.D.2d at 847 ("The fundamental premise underlying third-party defendants' motion . . . is that third-party plaintiff, having no legal existence independent of Hanover Companies Incorporated . . . cannot enter into contracts or bring legal action.").  The New York court rejected this argument, holding that the unincorporated division could enter contracts and

sue in its own name.  *Id.*  If that contract is breached, however, the court confirmed that the proper party to sue for breach is the corporate entity.  *Id.* ("In the case of a breach, [the third-party defendant] would have been free to sue third-party plaintiff *through the legal entity of the corporation*.") (emphasis added).

That is the case here.  Chubb & Son entered into various contracts in its own name, both with FICO and insurance companies of the Chubb Corporation, as the insurance manager of Chubb Corporation insurance company subsidiaries.  (Decl., Ex. 8; Decl., Ex. 9; Decl., Ex. 19–Ex. 26.)  If one of those contracts is breached, the appropriate party to sue for the breach is Federal.  *Maranatha* shows the concern raised in Footnote 14 of the Summary Judgment Order is misplaced.  (*See* Dkt. 731 at 43.)  The footnote asks the wrong question.  It is immaterial whether FICO is suing Federal for breach; the correct inquiry is whether Chubb & Son may enter into the contract.  FICO is not trying to "have it both ways."  (*See id.*)  The evidence shows that Chubb & Son was the "Client" in the Agreement.  New York law holds that when an unincorporated division is a party to a contract, the corporate entity of the division is the proper defendant in a breach of contract action.

Federal's request for summary judgment on the "Affiliates" issue is outside the proper scope of this motion.  (*See* Dkt. 731 at 52-53.)  Substantively and legally, Federal's contentions are without merit.

## V.  Conclusion

For the reasons stated, the Court should deny Defendants' supplemental motion for summary judgment.  The statute of limitations does not bar any of FICO's claims.

FICO respectfully requests the Court to grant FICO's motion for summary judgment (Dkt. 743; Dkt. 744) and strike Defendants' statute of limitations defense.

Dated: May 13, 2020

MERCHANT & GOULD P.C.

/s/ Heather Kliebenstein
Allen Hinderaker, MN Bar # 45787
Heather Kliebenstein, MN Bar # 337419
Michael A. Erbele, MN Bar # 393635
Joseph W. Dubis, MN Bar # 398344
MERCHANT & GOULD P.C.
150 South Fifth Street
Suite 2200
Minneapolis, MN  55402
Tel: (612) 332-5300
Fax: (612) 332-9081
ahinderaker@merchantgould.com
hkliebenstein@merchantgould.com
merbele@merchantgould.com
jdubis@merchantgould.com

*Attorneys for Plaintiff Fair Isaac Corporation*