# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

FAIR ISAAC CORPORATION,

        Plaintiff,

  v.

FEDERAL INSURANCE COMPANY,
an Indiana corporation, and ACE
AMERICAN INSURANCE COMPANY,
a Pennsylvania corporation,

        Defendants.

Court File No.  16-cv-1054 (WMW/DTS)

**MEMORANDUM IN OPPOSITION
TO FICO'S SUPPLEMENTAL
MOTION FOR SUMMARY
JUDGMENT**

Defendants Federal Insurance Company and ACE American Insurance Company (collectively, "Federal"), in accordance with the Court's March 23, 2020 Order, submit this memorandum in opposition to Plaintiff Fair Isaac Corporation's ("FICO") supplemental motion for summary judgment on Defendants' statute of limitations defense.

## **INTRODUCTION**

Federal asserts defenses that FICO's claims are barred, in whole or in part, under the Copyright Act's three-year statute of limitations.  (Dkt. 569, ¶ 78.)  FICO moves for summary judgment dismissing Federal's statute of limitations defense under the Copyright Act.[1]

In its motion, FICO for the first time asserts entirely new copyright infringement theories premised on alleged unauthorized acts of reproduction and distribution of Blaze

---

[1] As explained further below, Federal does not contest FICO's motion for summary judgment on Federal's statute of limitations defense under New York C.P.L.R. § 213(2).

Advisor Version 7.1 by Chubb & Son, a division of Federal (but not Federal) to Federal's affiliates in Canada and Europe.  (Dkt. 744 at 6 & 9-10.)  FICO previously asserted a copyright infringement claim concerning use of Blaze by Federal's affiliate in Australia, which, based on its current motion, FICO has now abandoned.

FICO's new theories are limited to Blaze Advisor Version 7.1; no other versions are at issue.  Importantly, FICO did not plead copyright infringement related to Blaze Advisor Version 7.1 in its initial Complaint or its operative Second Amended Complaint. (*See* Dkt. 1 & 132.)  A Certificate of Registration for Blaze Advisor Version 7.1 is inexplicably absent from FICO's initial Complaint and searching the Copyright Office's publicly available filings reveals no registration for Blaze Advisor Version 7.1.  (*See* Dkt. 1, ¶ 10, Ex. 1 & Dkt. 132, ¶ 12.)  FICO has not pled or established registration of Blaze Advisor Version 7.1, which is a prerequisite to filing an infringement claim.  *See Fourth Estate Pub. Benefit Corp. v. Wall-Street.com*, 139 S. Ct. 881, 892 (2019); 17 U.S.C. § 411(a).  As such, FICO's theories of infringement related to Blaze Advisor Version 7.1 fail as a matter of law and must be dismissed for lack of registration.

Nonetheless, without proof of registration, FICO alleges Federal violated its copyright for Blaze Advisor Version 7.1 by installing that version on servers located in Raleigh, North Carolina.  FICO claims this installation permitted Federal's affiliates in Canada and Europe to use and access Blaze Advisor Version 7.1, which resulted in unauthorized reproductions of the software.  FICO additionally claims unauthorized distributions of Blaze Advisor Version 7.1 occurred to Federal's affiliate in Canada and Europe relying primarily on email communications.

2

Based on these newly asserted theories related to Blaze Advisor Version 7.1, FICO asserts that it has shown an act of domestic infringement occurring within the Copyright Act's three-year statutory period and, therefore, that Federal's statute of limitations defense should be dismissed.

FICO's motion for summary judgment on Federal's statute of limitations defense should be denied for two principal reasons. First, FICO has not presented evidence of a domestic act of infringement by Federal that occurred within the three-year statutory limitations period. Second, the evidence establishes that FICO knew, or at a minimum should have known, of use outside of the United States long ago and failed to timely bring its copyright infringement claim within the Copyright Act's three-year statutory period.

## **BACKGROUND**

## I.      **THE CLAIMS RELEVANT TO THE PRESENT MOTION.**

Count I and Count II of FICO's Second Amended Complaint concern alleged pre-merger use of Blaze Advisor software occurring outside of the United States and assert, respectively, claims for breach of contract and copyright infringement. (Dkt. 132 at ¶¶ 44-53.) In response, Federal asserts that these two claims are barred, in whole or in part, by the Copyright Act's three-year statute of limitations (17 U.S.C. § 507(b)) and by New York's six-year statute of limitations for breach of contract (C.P.L.R. § 213(2)). (Dkt. 569, ¶ 78.)

Although Federal contends that it is not liable under Count I (breach of contract),[2] it concedes for present purposes that the New York six-year statute of limitations does not bar Count I because Federal does not dispute that its affiliates in Canada and Europe made use of the software within New York's six-year statutory period.  However, the claim in Count II for copyright infringement is time-barred.[3]

### A.    FICO's Copyright Claim Depends Upon the False Assumption that Chubb & Son—an Unincorporated Division of Federal without Any Employees—Is the "Client" under the License Agreement.

FICO argues Chubb & Son, a division of Federal Insurance Company ("Chubb & Son"), but not Federal, infringed FICO's copyrights.  (Dkt. 744 at 6) ("These copyright infringement claims are based exclusively on the unauthorized actions of Chubb & Son…").  The argument is premised on FICO's erroneous position that Chubb & Son, but not Federal, is the "Client" under the License Agreement.  (Dkt. 398 at 1-2.)

In its March 23, 2020 Order, the Court noted that it "would make little sense" to hold that Chubb & Son, a division of Federal, is the client but Federal is not the client, because this would mean "a non-legal entity could enter a contract yet never be sued on

---

[2] Importantly, Federal does dispute liability on Count I of the Second Amended Complaint because, among other reasons, FICO cannot establish an actionable breach of the License Agreement because use and access by Federal's affiliates is licensed.

[3] Federal has moved for summary judgment on Count II of FICO's Second Amended Complaint, and one of the bases of that motion is the Copyright Act's statute of limitations.  (Dkt. 750-753.)

that contract should a dispute arise."  (Dkt. 731 at 43.)[4]  It is undisputed that Chubb & Son is not a legal entity.  (Dkt. 513 ("Lopata Decl."), ¶ 4.)  Rather, Chubb & Son was at all times an unincorporated division of Federal.  (*Id. See also* Dkt. 398 at 16.)  Chubb & Son did not have affiliates or employees, write insurance policies, or otherwise operate as an insurance company.  (Lopata Decl., ¶¶ 4, 7.)  Notwithstanding these undisputed facts, in its current motion, FICO maintains that Chubb & Son—a non-legal entity without any employees—somehow committed unauthorized acts that constitute copyright infringement for which Federal is liable.  (Dkt. 744 at 6.)

If, as Federal maintains, Federal is the "Client" under the License Agreement then FICO's copyright infringement claim fails as a matter of law because it is undisputed the Second Amendment to the License Agreement expanded the scope of the license to include the "Client and its Affiliates."  (*See* Dkt. 434 at FICO0000227 ("Client and its Affiliates may use the Fair Isaac Product for their internal business purposes…").)  Nonetheless, even if Chubb & Son were the "Client" under the License Agreement, FICO's claims would still fail because FICO has not shown an actionable reproduction or distribution of Blaze.

---

[4] The Court declined to grant Federal summary judgment on the client issue, stating that Federal had not moved for summary judgment on this issue.  (Dkt. 731 at 44, n. 15.)  Federal has since moved to amend the scheduling order for the limited purpose of allowing Federal to file a successive summary judgment motion addressing the narrow issue of whether Federal is a party to the License Agreement.  (*See* Dkt. 758-762.)

**B.    FICO's Copyright Infringement Claim Concerns Alleged Reproduction and Distribution of Blaze Outside of the United States by Federal.**

In its motion, FICO argues that Federal violated FICO's exclusive rights of reproduction and distribution when Federal's affiliates in Canada and Europe installed Blaze Advisor Version 7.1.[5] (Dkt. 744 at 6 & 9-11.) The arguments were first asserted in FICO's present motion and are not contained in FICO's pleadings. (*See* Dkt. 1 & 132.) FICO's initial Complaint and the operative Second Amended Complaint do not allege copyright infringement concerning Blaze Advisor Version 7.1. (*Id.*)

In its initial Complaint and Second Amended Complaint, FICO alleged it maintains copyright registrations for 12 versions of Blaze Advisor. (Dkt. 1, ¶ 10 & 132, ¶ 12.) FICO did not allege it maintains copyright registration for Blaze Advisor Version 7.1, the only version at issue in its current motion. (*Id.*) In addition, FICO's Summons and Complaint, which attaches proof of registration for all versions of Blaze Advisor, does not contain *any* proof of registration for Blaze Advisor Version 7.1. (*See* Dkt. 1, Ex. 1 (attaching Certificate of Registration for versions of Blaze Advisor registered with the Copyright Office).) The United States Copyright Office's publicly available website also contains no registration for Blaze Advisor Version 7.1. Nonetheless, the entirety of FICO's motion relates to alleged infringement of Blaze Advisor Version 7.1. FICO's failure to affirmatively plead infringement of Blaze Advisor Version 7.1 and its failure to

---

[5] FICO previously argued that Federal infringed FICO's copyrights through acts of distribution to Federal's affiliates in Australia. (Dkt. 398 at 9 & 13.) FICO makes no such argument in its current motion. (*See* Dkt. 744.) Thus, any argument about Australia has been abandoned.

establish registration, which is a jurisdictional prerequisite to filing a copyright infringement claim, requires dismissal of the claims in their entirety. *See supra* Argument Section I.A.1.

FICO's theories regarding its reproduction claim and distribution claim as it relates to each of Federal's affiliates, and the evidence FICO relies upon in support of those claims, are detailed below.

### 1.    FICO's reproduction claim.

FICO claims Federal violated its exclusive right of reproduction in two ways (the "reproduction claim"). (Dkt. 744 at 6 & 9-11.) First, FICO argues that Federal committed an unauthorized act of reproduction by installing Blaze Advisor on servers in Raleigh, North Carolina. (*Id.* at 10.) FICO argues this installation violated its right of reproduction by enabling Federal's affiliates in Canada and Europe to access and install Blaze Advisor from Federal's Wiki site. (*Id.*) Second, FICO argues that Federal committed an unauthorized act of reproduction when Federal's affiliate in Canada made use of Blaze Advisor from the server in Raleigh, North Carolina. (*Id.* at 11.) FICO claims access by Federal's affiliate in Canada created unauthorized RAM copies of Blaze Advisor on the server located in Raleigh, North Carolina. (*Id.*)

### 2.    FICO's distribution claim.

FICO separately claims Federal violated its exclusive right of distribution in two ways (the "distribution claim"). (Dkt. 744 at 9-10.) First, FICO alleges an unauthorized act of distribution to Federal's affiliate in Canada occurred, relying on five emails dated

from 2010 to 2013.  (Dkt. 746, Exs. 8, 10, 11, 16 & 17.)  Three of these emails are dated

well before April 21, 2013 and thus are outside of the statutory period:

- Exhibit 10 is an email dated September 13, 2012 concerning use of Blaze in Chubb Insurance Company of Canada's Evolution application.

- Exhibits 16 & 17 are emails from December 2010 between Henry Mirolyuz, IT Technical Analyst and Tony Zhang, IT Architect, Chubb Insurance Company of Canada, which concerns an installation file for Blaze Advisor Version 6.9.

(Dkt. 746, Exs. 10, 16 & 17.)   The two remaining emails are dated June 7, 2013 and

October 8, 2013 and discuss an upgrade to Blaze Advisor 7.1.  (Dkt. 746, Exs. 8 & 11.)

However, these two emails do not evidence a distribution of Blaze Advisor Version 7.1.

(*Id.*)  In fact, the undisputed evidence demonstrates Blaze Advisor Version 7.1 was never

installed in Canada.  (Dkt. 752, Ex. A.)  As such, no distribution to Canada ever occurred.

(*Id.*)

Second, FICO alleges an unauthorized distribution occurred when Federal's

affiliate in Europe updated its initial installation of Blaze Advisor Version 6.7 to Blaze

Advisor Version 7.1.  (Dkt. 744 at 9.)  The initial installation occurred on November 6,

2009 and the update to Version 7.1 occurred on September 6, 2013.  (Dkt. 752, Ex. A.)

As outlined further below, FICO was aware of and assisted with the initial installation in

Europe.  *See infra* Background Section II.  As such, FICO was aware or, at a minimum,

should have been aware that Federal's affiliate in Europe would update to Version 7.1.

II.     **FICO WAS AWARE OF FEDERAL'S USE OUTSIDE OF THE UNITED STATES.**

FICO contends that there is not "any record evidence from which the jury could decide that FICO knew, or had reason to know," of use outside of the United States prior to April 21, 2013.  (Dkt. 744 at 7.)  This statement is false.  In fact, FICO has *conceded* that its employees knew about use by Federal's affiliates.  (*See* Dkt. 499.)  Federal submitted substantial evidence of FICO employees' knowledge of use by Federal's affiliates outside of the United States in support of its motion for summary judgment.  (Dkt. 445 at 8-10.)  In response, FICO did not dispute its employees' knowledge of this use.  (*See* Dkt. 499.)  Instead, FICO responded that its employees were operating under a "misunderstanding" regarding the License Agreement's terms and had made a "mistake" in allowing Federal's affiliates to use Blaze outside of the United States.  (*Id.* at 16.)  FICO never contended its employees were not, in fact, aware of that use.  FICO's current position—that there is absolutely "no evidence" that FICO knew or should have known about use outside of the United States—can only be described as misrepresenting the evidence to the Court.  As outlined below, contrary to FICO's representation in its current motion, substantial evidence exists in the record that FICO knew about foreign use by Federal's affiliates.

A.     **FICO First Became Aware of Use Outside of the United States in 2008.**

FICO was aware of Federal's intent to use Blaze outside of the United States in November 2008.  In 2008, the issue of Federal's use of Blaze internationally arose.  On November 14, 2008, FICO's "client partner" in charge of the Federal relationship,

Michael Sawyer, set up a conference call with several FICO employees in the U.S. and London "to discuss the Chubb license agreement and a plan for Chubb Europe." (Dkt. 437, Ex. 14.)

Prior to this meeting with FICO's European employees, Sawyer sent Global Vice President Russell Schreiber, the License Agreement, both Amendments, and a copy of The Chubb Corporation's 2007 Annual Report with a note to "[t]ake a look at page 26 & 27." (Dkt. 510, Ex. 12 at FICO0002101.) These pages of the Annual Report listed the officers for Federal as well as two of its foreign affiliates in Canada. (*Id.* at FICO0002150-2151.)

Lawrence Wachs, who was one of the lead sales executives for FICO in negotiating the license, was then asked whether the final license was global. Wachs responded on November 24, 2008, stating:

> In reviewing my notes and some archived e-mails it's apparent to me that the corporate ELA [Enterprise License Agreement] that was negotiated with Phil Folz and June Drewey *intended to include the Global license*.

(Dkt. 434, Ex. 6.) (emphasis added). In addition, prior to the internal FICO meeting to discuss "a plan for Chubb Europe," at least two emails were exchanged between Richard Hill, a FICO employee in Europe, and Thomas Carretta, FICO's in-house counsel. (Dkt. 437, Ex. 15 at Entries 656 and 662.) On November 12, 2008, Hill emailed Carretta about the License Agreement, and on November 25, 2008, Carretta emailed Hill and Schreiber on the same subject. (*Id.*) Thus, Carretta clearly must have reviewed whether the license was global and advised that it was. There is no other plausible reason for the exchange. After concluding that the License Agreement allowed global use, FICO thereafter went

ahead and assisted with the installation of Blaze Advisor in Europe.  It is undisputed that the initial installation in Europe occurred on November 6, 2009, which is well outside the Copyright Act's three-year statutory period.  (Dkt. 752, Ex. A.)

### B.     FICO Assisted with Blaze's Implementation in Europe in 2009.

Blaze was installed for the first time in Europe on November 6, 2009.  (Dkt. 752, Ex. A.)  FICO assisted with and was aware of the initial installation and the continued use of Blaze in Europe thereafter.  (*See, e.g.,* Dkt. 515 ("Gibbs Decl."), ¶ 4; Dkt. 516 ("Sullivan Decl."), ¶¶ 6-7; Dkt. 510, Ex. 10 at 51:1-7 ("So with respect to Chubb Europe, Henry [Mirolyuz of Chubb] was very open about the use of the software to support Europe . . . .").)  In fact, FICO assisted Federal with its implementation of Blaze in Europe.  Federal's former Vice President of Software Compliance testified that Federal hired FICO to assist with the implementation of Blaze in Europe.  (Dkt. 510, Ex. 14 at 184:1-17; *see also id.* at 233:7-14, 240:7-17.)   In addition, Ewen Setti, the main developer who worked with Blaze at Federal's affiliate in Europe communicated directly with FICO and set up a series of workshops with FICO regarding Blaze.  (Gibbs Decl., ¶ 3; Dkt. 517 ("Setti Decl."), ¶ 2.)  FICO also assisted Federal's affiliate in Europe during the testing phase in the development environment.  (Gibbs Decl., ¶ 5.)  Coincidentally, Federal's affiliate in Europe was in the very same building as FICO, so whenever Federal's affiliate in Europe needed help with Blaze, it contacted FICO directly.  (Gibbs Decl., ¶ 4; Setti Decl., ¶ 3.)  During this time, there was no discussion or negotiation with FICO, and certainly no protest by FICO, regarding the scope of the Blaze license or payment for the license.  This was because it was understood by both Federal's affiliate

in Europe and FICO that the license to install and use Blaze covered Federal as well as its foreign affiliates.  (Gibbs Decl., ¶ 6; Setti Decl., ¶ 4.)

C.   **FICO Continued to be Aware of Use Outside of the United States Throughout the Parties' Relationship, and FICO Referenced the Use in Communications and Marketing Materials.**

In its marketing campaigns, FICO openly cited its *global* business relationship with Federal and its affiliates.  For example, in 2011, FICO prepared a white paper which corroborates that FICO assisted with the installation of Blaze in Europe and was aware of use outside of the United States generally.  The white paper specifically notes that "FICO faced challenges at Chubb in the UK."  (Dkt. 439, Ex. 31 at FED007129_0055.)  FICO's other marketing materials demonstrated its knowledge of the use of Blaze by Federal outside of the United States.  (Dkt. 436, Ex. 12 at FED006784_0003-0004.)  In a presentation from 2011, FICO touted the use of Blaze across the entirety of "The Chubb Group of Insurance Companies."  (*Id.*)  In addition, FICO employees' communications confirmed that FICO was aware of use outside of the United States.  (Dkt. 439, Ex. 13 at FICO0003278 ("They do have a Global ELA [enterprise license agreement] for Blaze and have an automated UW Application running in the UK already.").)

## LEGAL STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56. The moving party "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] which it believes

12

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, Rule 56 requires the non-moving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).   In determining whether summary judgment is appropriate, a district court must look at the record and any inferences to be drawn from it in the light most favorable to the non-moving party.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).  Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Id.* at 248.

Courts routinely deny motions for summary judgment on a party's statute of limitations defense where there are fact disputes regarding the applicability of the statute of limitations to the plaintiff's claims.  *Grant Heilman Photography, Inc. v. McGraw-Hill Companies, Inc.,* 28 F. Supp. 3d 399, 413 (E.D. Pa. 2014) (finding that the Court cannot grant plaintiff summary judgment because there remain questions of fact regarding whether the statute of limitations bars plaintiff's claims); *Home Design Servs., Inc. v. Stewart*, No. 3:09CV140-MCR MD, 2011 WL 796741, at *5 (N.D. Fla. Feb. 28, 2011) (denying plaintiff's motion for summary judgment because defendants presented evidence of a dispute of material fact regarding when plaintiff should have known about the alleged infringements).

## ARGUMENT

**I.   FICO'S MOTION FAILS ON FEDERAL'S COPYRIGHT ACT STATUTE OF LIMITATIONS DEFENSE.**

FICO's motion fails for two basic reasons.  First, FICO's motion fails because the limited evidence FICO relies upon does not present a domestic act of infringement by Federal within the United States that occurred within the three-year statutory period.  If FICO cannot produce undisputed evidence of an actionable infringement by Federal that occurred within the three years prior to its filing suit, then it cannot demonstrate that Federal's statute of limitations defense fails as a matter of law.  On the contrary, that defense is dispositive of the copyright claim.   Second, FICO's motion fails because there can be no genuine dispute that FICO knew, or at a minimum should have known, of use outside of the United States and failed to timely bring its claim.

**A.   FICO's Motion Fails Because It Cannot Establish a Domestic Act of Infringement by Federal Occurring within the Statutory Period.**

FICO argues that Federal's statute of limitations defense must be dismissed because it has established undisputed evidence of a domestic act of infringement occurring within the statutory period.  (Dkt. 744 at 14-22.)   To establish an act of infringement, FICO must satisfy four elements.  First, FICO must demonstrate ownership and registration of a valid copyright.  17 U.S.C. § 411(a); *see also Mulcahy v. Cheetah Learning LLC*, 386 F.3d 849, 852 (8th Cir. 2004).  Second, FICO must demonstrate that Federal violated one of the exclusive rights enumerated under the Copyright Act.  17 U.S.C. § 106; *Mulcahy*, 386 F.3d at 852.  To do so FICO must show that Federal has, without authorization, copied (reproduced), displayed, or distributed protected elements

of the copyrighted work. *Id.* Third, the infringing act must have taken place in the United States. *Iverson v. Grant*, 133 F.3d 922, 925 (8th Cir. 1998) ("United States copyright law has no extraterritorial effect."); *see also IMAPizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 3d 95, 120 (D.D.C. 2018) ("courts have described domestic infringement as a necessary element of a Copyright Act claim"). Fourth, the copyright owner must commence its action within three years from the date on which its infringement claim accrues. 17 U.S.C. § 507(b).

FICO's motion fails because it cannot establish a domestic act of infringement by Federal that occurred within the statutory period. First, FICO has not pled or demonstrated ownership and registration of Blaze Advisor Version 7.1—a prerequisite to bringing an infringement claim. This failure requires dismissal of FICO's claims related to Blaze Advisor Version 7.1. Second, any use or access by Federal's affiliates is licensed and, as such, does not establish a domestic act of infringement. Third, FICO has not demonstrated an unauthorized act of reproduction by Federal. Fourth, for its distribution claim, FICO has not produced evidence of an actionable distribution to Federal's European affiliate and has not produced any evidence at all showing a distribution to Federal's affiliates in Canada.[6]

### 1.     FICO has not pled or established registration of Blaze Advisor Version 7.1.

FICO's motion fails because FICO has not pled or established copyright registration of Blaze Advisor Version 7.1. FICO's failure to plead or otherwise establish

---

[6] As noted previously, FICO has abandoned any claim of infringement by Federal's affiliate in Australia. *See infra* page 4, note 5.

registration requires dismissal of its claims related to Blaze Advisor Version 7.1.  Before pursuing a copyright infringement claim, a copyright claimant must comply with the Copyright Act's registration requirements.  *Fourth Estate*, 139 S. Ct. at 892; 17 U.S.C. § 411(a).   A copyright claimant may not commence an infringement suit until the Copyright Office registers a copyright.  *Id.*  As such, "a plaintiff cannot file a civil action for copyright infringement until it has either (1) obtained registration from the Copyright Office or (2) been denied such registration."  *Asche & Spencer Music, Inc. v. Principato-Young Entertainment, Inc.*, 147 F. Supp. 3d 833, 836 (D. Minn. 2015).  Failure to satisfy the registration requirements warrants dismissal of the claims.  *Action Tapes, Inc. v. Mattson*, 462 F.3d 1010, 1012 (8th Cir. 2006) (affirming dismissal of claims because copyright claimant "failed to prove it applied for registration of the computer program copyrights before commencing this infringement suit."); *Asche & Spencer Music*, 147 F. Supp. 3d at 839 ("Before filing its civil action for infringement, Asche obtained neither registration nor denial of registration from the Copyright Office…  As a result, Asche's claim for copyright infringement must be dismissed.").  Here, FICO has failed to establish registration of Blaze Advisor Version 7.1, which warrants dismissal of its claim.

The entirety of FICO's motion relates to Federal's alleged reproduction and distribution of Blaze Advisor Version 7.1.  (*See* Dkt. 744.)  No other versions are at issue.  (*Id.*)  In its original Complaint and Second Amended Complaint, FICO does not allege ownership of Blaze Advisor Version 7.1.  (Dkt 1, ¶ 10; Dkt. 132, ¶ 12.)  Further, FICO's original Summons and initial Complaint, which attaches Certificates of Registration for each version of Blaze Advisor alleged to be infringed, contains no registration for Blaze

Advisor Version 7.1.  (*See* Dkt. 1.)  In addition, searching the United States Copyright Office's publicly available filings reveals no registration for Blaze Advisor Version 7.1.

Because FICO's motion depends entirely on allegations of reproduction and distribution of Blaze Advisor Version 7.1 and FICO has not established registration of Blaze Advisor Version 7.1, which is a prerequisite to bringing an infringement claim, FICO has failed to establish an act of infringement occurring within the statutory period and its motion fails.  Additionally, FICO's failure to satisfy this prerequisite with respect to Blaze Advisor Version 7.1 means that there are no issues left for trial on this pre-termination copyright claim.  As such, the Court should dismiss FICO's pre-termination copyright claims at this time.[7]

### 2.    FICO cannot establish a domestic act of infringement because use and access by Federal's affiliates is licensed.

FICO cannot establish a domestic act of infringement because use or access by Federal's affiliates is licensed.  It is undisputed that Federal's installation of Blaze on servers in North Carolina was licensed.  Further, in its March 23, 2020 Order, the Court held that the License Agreement does not contain any territorial restrictions.  (Dkt. 731 at 41.)  The Second Amendment actually expanded the scope of the License Agreement to include the "Client and its Affiliates."  (*See* Dkt. 434 at FICO0000227 ("Client and its Affiliates may use the Fair Isaac Product for their internal business purposes…").)  The "Client" under the License Agreement is Federal.  As such, any use or access by

---

[7] Federal Rule of Civil Procedure 56(g) provides the Court with ample authority to issue this order now. The requirement that FICO be given "notice and a reasonable time to respond" is satisfied because FICO has an opportunity to reply to this opposition.

Federal's affiliates, whether in Canada or in Europe, does not give rise to a domestic act of infringement.

### 3.    FICO has not presented any evidence that Federal committed an unlicensed act of "reproduction" on or after April 21, 2013.

FICO identifies two acts by Federal that it alleges violated its exclusive right of "reproduction" in Blaze 7.1 within the three years prior to FICO filing this action on April 21, 2016.   First, FICO alleges that Federal violated its reproduction right by "uploading" Blaze 7.1 to an internal site on June 7, 2013 so that Federal's affiliate in Canada could use the software.   (Dkt. 744 at 9.)   Second, FICO alleges that Federal violated its reproduction right beginning in 2015 because it "permitted" Federal's affiliate in Canada to use an application that was integrated with Blaze 7.1.   (Dkt. 744 at 11.) Beyond its failure to plead these claims in its operative complaint, or to demonstrate the essential element of registration as to Blaze 7.1, FICO's motion must also be denied because these two acts did not violate FICO's reproduction rights.

### a.    Federal's upload of Blaze 7.1 for use by Federal's affiliate in Canada was not an unlicensed reproduction.

Federal did not commit an unauthorized act of reproduction when it uploaded Blaze 7.1 to an internal site on or about June 7, 2013 to enable Federal's affiliate in Canada to upgrade its version of Blaze.   The cases that FICO cites for the proposition that uploading software may constitute an act of reproduction are inapposite.   (Dkt. 744 at 18-19.) Federal does not argue that uploading software cannot be a "reproduction" under the Copyright Act.   Rather, Federal argues that its uploading of Blaze 7.1 for use by Federal's affiliate in Canada was necessarily licensed because Amendment Two

18

authorizes Federal and its Affiliates to "use [Blaze 7.1] for their *internal business purposes, with no limitation."* (Dkt. 746-1 at 21 (emphasis added).)  A copyright owner cannot assert a claim for infringement where the alleged act of infringement is authorized by a license agreement.  *See, e.g.*, *Quinn v. City of Detroit*, 23 F. Supp. 2d 741, 749 (E.D. Mich. 1998); *Keane Dealer Servs., Inc. v. Harts*, 968 F. Supp. 944, 947 (S.D.N.Y. 1997).

There can be no "genuine" dispute over whether Blaze 7.1 was installed on a server in Canada. Fed. R. Civ. P. 56(a).  It was not.  As Federal's Rule 30(b)(6) representative, Ramesh Pandey, has explained in two previous depositions, Blaze was never installed on servers located in Toronto, Canada as FICO claims.  (Declaration of Terrence J. Fleming dated May 13, 2020 ("Fleming Decl."), Ex. A Tr. 51:2-17; Ex. B Tr. 23:13-25:19; 25:3-19 ("No.  Toronto didn't have the servers where you can install this… the only servers were in Raleigh, North Carolina…").  Mr. Pandey explained that the internal links embedded in the exhibits FICO has relied upon to show installation in Canada actually identify servers located in Raleigh, North Carolina.  (Fleming Decl., Ex. B, Tr. 23:13-25:19 ("That's, like, a Raleigh server to Raleigh server . . . [t]his is a wiki link and the file server is in Raleigh…  You see the naming convention here, you see the wiki link here, whole thing in Raleigh, North Carolina.  Nothing Toronto here…").)  Accordingly, FICO misrepresents the record when it states that "[t]he evidence also shows that on June 7, 2013, Chubb & Son transmitted Blaze Advisor Version 7.1 to unauthorized persons in Canada . . . for installation in Toronto."  (Dkt. 744 at 10.)

FICO knows that the purported "evidence" of installation in Toronto is in fact erroneous testimony from the first deposition that took place in this litigation, which has

since been corrected on multiple occasions.  In his July 31, 2018 deposition, a former Federal employee named Henry Mirolyuz testified that Blaze had been installed on servers in Toronto.  (Dkt. 747 at 27:11-15.)  Mr. Mirolyuz, however, did not mention a June 7, 2013 installation in Toronto during this testimony, or any other details, to prove that this installation actually took place.   In his second deposition, Mr. Mirolyuz explained that his initial testimony about a Toronto installation had been a "mistake" and that he had obtained more accurate information from Chubb Canada's Chief Information Officer, Zorica Todorovic.  (Tr. at 36:4-18.)  Ms. Todorovic has explained what she told Mr. Mirolyuz in a summary judgment declaration, in which she stated:

> During my time at Chubb Canada the employees who made use of Blaze did so by accessing it through a virtual desktop environment. The versions of Blaze these users accessed were installed on remote servers located in Raleigh, North Carolina. To the best of my knowledge, Chubb Canada did not install Blaze on servers in Canada.

(Dkt. 514, ¶ 3.)   This conclusion is further supported by Federal's supplemental disclosure of the dates and locations of each of its foreign affiliates' Blaze installation, which disclosures do not include any installations in Canada.  (Dkt. 752, Ex. A.)

Federal's uploading of Blaze 7.1 to a shared site identified by FICO was always licensed because the software remained installed on Federal's servers in Raleigh, North Carolina.   This reproduction was licensed under Amendment Two, which licenses Federal to use Blaze for "their internal business purposes, with no limitation."  (Dkt. 746, Ex.1 at 21.)  There can be no dispute that Federal's uploading of Blaze 7.1 to this shared site in the United States was done for Federal's "internal business purposes" because the software remained installed on Federal's servers.   Further, Amendment Two's broad

provision of rights expressly "supersedes" the more restrictive Section 3.1(iv) of the original License Agreement, which FICO relies upon. (Dkt. 746, Ex. 1 at 22.) Even assuming for the sake of argument only that the Chubb & Son division is the Client under Amendment Two, the June 7, 2013 upload would remain licensed because FICO has never argued that the License Agreement prohibited Chubb & Son from using Federal's servers.

### b. Use by Federal's affiliate in Canada cannot establish a domestic act of infringement within the statutory period.

FICO cites a number of cases in support of its new argument that Federal infringed its copyrights when its servers made RAM copies of Blaze 7.1. (Dkt. 744.) FICO's cases, however, are again inapposite. The parties agree that these RAM copies occurred on Federal's servers in North Carolina. (Dkt. 744 at 1-2.) Because this copying occurred on Federal's servers, it was also part of the "internal business" of Federal or the Chubb & Son division under Amendment Two in the same way that the upload of Blaze 7.1 to the shared site was. Accordingly, there can be no genuine dispute that Amendment Two authorized the RAM copies made by Federal's servers when Federal's affiliate in Canada used Blaze via Federal's servers located in Raleigh, North Carolina.

### 4. FICO has not presented any evidence that Federal "distributed" Blaze 7.1 to Canada or to Europe.

FICO also alleges that Federal infringed its copyright in Blaze 7.1 by violating its exclusive right of "distribution" by transmitting the software to its affiliates in Canada and Europe. FICO's motion fails because Federal did not distribute Blaze 7.1 to Canada or Europe.

First, as noted above, the undisputed evidence shows that Blaze 7.1 was never installed in Canada.  FICO submits five exhibits it alleges demonstrate an unauthorized act of distribution to Federal's affiliate in Canada.  (Dkt. 746, Exs. 8, 10, 11, 16 & 17.) As an initial matter, none of these exhibits establishes an unauthorized act by Federal as they concern employees of Federal's affiliate in Canada.  (*Id.*)  In addition, three of these exhibits relate to alleged distributions occurring in December 2010 and September 2012—well outside of the statute of limitations.  (*Id.*, Exs. 10, 16 & 17.)  The remaining two exhibits are emails that merely discuss an upgrade to Blaze Advisor Version 7.1, but do not evidence a distribution.  (*Id.*, Exs. 8 & 11.)  Federal cannot have "distributed" Blaze 7.1 to Federal's affiliate in Canada if Blaze 7.1 always remained installed on *Federal's* servers in North Carolina.

Second, FICO asserts that "[o]n September 6, 2013, Chubb & Son transmitted Blaze Advisor Version 7.1 to unauthorized persons in the United Kingdom."  (Dkt. 744 at 9.)   But there is no evidence in the record to support this allegation.  FICO cites to Federal's supplemental disclosure of the dates and locations of its foreign affiliates' Blaze installations, but this disclosure says nothing about *Federal's* involvement in these installations.  (*See* Dkt. 746, Ex. 5.)  FICO also cites a deposition excerpt in which Mr. Pandey merely explains the process by which he gathered the information contained in the supplemental disclosure.  (*Id.* at Ex. 7, 9:9-10:9.)  The cited testimony does not demonstrate a transmission by Federal to Europe.  (*Id.*)  Finally, FICO cites an excerpt from Mr. Mirolyuz's first deposition concerning Federal's initial distribution of an earlier version of Blaze to Europe in 2009.  (*Id.* at Ex. 6, 33:15-34:8.)  None of these documents

22

presents any evidence, let alone undisputed evidence, that Federal distributed Blaze 7.1 to Europe on September 6, 2013.

FICO's motion fails as it relates to Federal's affiliate in Europe for the additional reason that FICO's distribution claim is barred by the territorial limits of the Copyright Act.  FICO admits that its distribution claim is premised entirely on this affiliate's use of Blaze 7.1 in Europe.  As demonstrated above, however, the parties have not presented any evidence that Federal did anything more than "permit" its affiliate to use Blaze 7.1. Merely "authorizing" conduct in this manner cannot constitute copyright infringement where that conduct occurs entirely outside of the United States.  *Datacarrier S.A. v. WOCCU Servs. Grp.*, 221 F. Supp. 3d 1078, 1085 (W.D. Wis. 2016).  Without any evidence that Federal did more than "authorize" its European affiliate to upgrade to Blaze 7.1, FICO cannot establish that Federal committed any infringing act within the statutory period.

FICO also cannot rely on evidence of distributions from outside the statutory limitations period to support its motion.  FICO points out that Federal *was* involved in the initial distribution of Blaze Version 6.7 to its European affiliate in 2009.  (Dkt. 744.)  But this 2009 distribution cannot serve as the basis for any recovery for infringing acts that may have occurred *within* the statutory limitations period but without Federal's involvement.  *See Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 889 (6th Cir. 2004) ("plaintiffs may not 'piggy back' Diamond Time's conduct from outside the period onto the alleged direct infringement of another within the period").

### 5.    FICO cannot disgorge profits from affiliates.

FICO's novel attempt to disgorge profits from dozens of unnamed parties by labelling them a "single economic unit" is irrelevant to Federal's statute of limitations defense. Accordingly, FICO's supplementation of its prior briefing on this issue without the court's permission is improper. (Dkt. 731 at 52-53 (directing parties to submit supplemental motions "*strictly limited* to the issue of Defendants' statute-of-limitations defense and the related issue of the predicate-act doctrine.").)

Briefly, however, it is undisputed that "[i]nsofar as there is liability for illegal profit [under the Copyright Act], the liability is several; one defendant is not liable for the profit made by another." *MCA, Inc. v. Wilson*, 677 F.2d 180, 186 (2d Cir. 1981). The Court denied Federal's summary judgment motion on this issue but determined that FICO may only recover profits earned by unnamed parties at trial if it demonstrates that these profits actually "belong to Defendants." (Dkt. 731 at 33, 57 n. 20.) Federal will demonstrate at trial that the profits earned by these nonparties belong to those nonparties. Allowing FICO to disgorge these unnamed parties' profits via a recovery against Federal would, therefore, impose liability jointly, not severally, and would also violate the due process rights of Federal and of the nonparties. *Cf. North Atlantic Distribution, Inc. v. Teamsters Local Un. No. 430*, 497 F. Supp. 2d 315, 325 (holding that plaintiff could not recover from corporation's sole shareholder because doing so would violate shareholder's due process rights as he was not a named defendant).

The new cases FICO submits do not alter the Court's prior decision on this "single economic unit" theory of profit disgorgement. (Dkt. 744 at 21-22.) The issue in *Anchor*

*Wall Systems* was whether the jury's apportionment of actual damages amongst five *named defendants* was proper. *Anchor Wall Sys. v. Rockwood Retaining Walls, Inc.*, 610 F. Supp. 2d 998, 1019 (D. Minn. 2009).   The issue in *Tran v. Farmers Group* was whether a grocery store owner could assert various tort claims against entities involved in an "interinsurance exchange" under California law.  *Tran v. Farmers Grp., Inc*., 104 Cal. App. 4th 1202, 1207, 1210 (2002).   While the *Tran* opinion does include the keyword "single enterprise," neither case negates the legal principles described above.  *Id.* at 1218-1219.

### B.     FICO's Motion Fails Because FICO Knew or Should Have Known of Use Outside of the United States Before April 2013.

FICO argues Federal's statute of limitations defense fails because "[t]here is no evidence showing that on or before April 21, 2013, FICO knew, or had reason to know" of the alleged reproduction and distribution of Blaze outside of the United States.  (Dkt. 744 at 15.)  FICO's motion fails because the evidence establishes FICO knew or should have known of use outside of the United States before April 2013.

The Copyright Act provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b).  The Eighth Circuit applies the discovery rule, which provides "a cause of action accrues and the statute of limitations begins to run when the plaintiff discovers, or with due diligence should have discovered, the injury which is the basis of the litigation."  *Comcast v. Multi-Vision Elecs., Inc.,* 491 F.3d 938, 944 (8th Cir. 2007). Accordingly, FICO's copyright claims accrued on the date that FICO discovered (or

reasonably should have discovered) that its copyright had been infringed.  *See Scott Breuer Const., Inc. v. Koch*, No. 12-CV-3182 PJS/JSM, 2014 WL 2893200, at *1 (D. Minn. June 26, 2014).  Here, the evidence establishes FICO was aware of use outside of the United States.

### 1. The evidence establishes FICO had actual knowledge of use by Federal's affiliate in Europe as of November 2009.

As of November 6, 2009, FICO had actual knowledge of use by Federal's affiliate in Europe.  Where a plaintiff has actual knowledge of alleged copyright infringement, accrual begins when the plaintiff acquired such knowledge.  *See Comcast*, 491 F.3d at 944; *Un. Pacific R.R. Co. v. Beckham*, 138 F.3d 325, 330 (8th Cir.1998).  Once a party discovers its injury, it is required to pursue any copyright claims based on that injury within three years, even if a defendant's role in causing that injury was not discovered until sometime later. *Cf. Goodhand v. United States*, 40 F.3d 209, 212 (7th Cir.1994) (describing the "general principle of limitations law" that "[t]he statute of limitations begins to run upon the discovery of the injury, even if the full extent of the injury is not discovered until much later."); *Fid. Nat'l Title Ins. Co. of N.Y. v. Howard Sav. Bank, No.* 02 C 643, 2004 WL 2106610, at *10 (N.D. Ill. Sep. 20, 2004) ("[T]he limitations period begins to run when the plaintiff knows his injury is wrongfully caused, not when he realizes he has a cause of action against a particular defendant.").

The evidence shows FICO first became aware of Federal's intent to use Blaze in November 2008 when FICO discussed a "plan for Chubb Europe" internally.  (Dkt. 437, Ex. 14.)  FICO assisted Federal with installation of Blaze in Europe, which initial

installation occurred on November 6, 2009.  (*See* Dkt. 752, Ex. A; Gibbs Decl., ¶ 4.)
Thereafter, FICO referred to use of Blaze in Europe in marketing materials and internal
communications.  (Dkt. 436, Ex. 12 at FED006784_0003-0004; Dkt. 439, Ex. 13 at
FICO0003278 & Ex. 31 at FED007129_0055.)  Based on these undisputed facts, FICO
had actual knowledge of use of Blaze in Europe as of November 6, 2009.  FICO's claim
accrued on that date.  17 U.S.C. 507(b).  Therefore, FICO's claim based on use by
Federal's affiliate in Europe is time-barred.

### 2. The evidence establishes that FICO did not exercise reasonable diligence in bringing its claim.

FICO's motion also fails because FICO should have discovered its claims
concerning Federal's affiliate in Europe but failed to exercise reasonable diligence.  The
due diligence standard is an objective standard*.  Ritchey v. Horner*, 244 F.3d 635, 638
(8th Cir., 2000).  It is commonly referred to as "'Inquiry Notice' because the [statute of]
limitations period may be triggered even though the victim is unaware of the [copyright
violation] if, in the exercise of reasonable diligence, he should have discovered [the
violation]."  *Id.* (citing *Great Rivers Coop of S.E.Iowa v. Farmland Indus*., 120 F.3d 893,
896 (8th Cir. 1997)).  "Inquiry notice exists when there are 'storm warnings' that would
alert a reasonable person of the possibility of [the injury], relayed either by an act or by
an admission."  *Id.  See also, Davidson v. Wilson*, 973 F.2d 1931, 1402 (8th Cir. 1992).
Defendants bear the burden of demonstrating such storm warnings and, if they do so, the
burden shifts to Plaintiff to show that it exercised reasonable due diligence and yet was
unable to discover its injuries.  *See William A. Graham Co*., 568 F.3d 425; *Benak ex rel.*

*Alliance Premier Groth Fund v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396 (3rd Cir. 2006); *In Re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314; (3rd Cir. 2002); *Mathews v. Kidder, Peabody & Co. Inc.*, 260 F.3d 239 (3rd Cir. 2001).

Here, the evidence establishes that FICO was aware of Federal's original installation of Blaze on November 6, 2009.  The evidence further demonstrates that FICO referred to use of Blaze in Europe in marketing materials and internal communications. Given its undisputed knowledge of use outside of the United States, FICO cannot claim to be ignorant of the installation of new versions of Blaze Advisor in Europe.  FICO should have known of its copyright infringement claim when Blaze was first installed in Europe on November 6, 2009.  (Dkt. 752, Ex. A.)  Therefore, FICO's infringement claim related to Federal's affiliate in Europe is time-barred and its motion must be denied.

### 3.   The separate accrual rule does not prevent Federal from asserting its statute of limitations defense.

FICO claims that under the separate-accrual rule Federal's statute of limitations defense fails because installations of Blaze Advisor Version 7.1 occurred after April 21, 2013.  (Dkt. 744 at 16-19.)  The separate-accrual rule does not save FICO's copyright infringement claims, nor does it prevent Federal from asserting its statute of limitations defense.

In *Petrella*, the Court cautioned that such "[s]eparately accruing harm should not be confused with harm from past violations that are continuing."  *Petrella v. Metro-Goldwyn-Mayer, Inc.,* 572 U.S. 663, 671 (2014); *Compare Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997) (for separately accruing harm, each new act must cause "harm

[to the plaintiff] over and above the harm that the earlier acts caused") *with Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380–81 (1982) ("[W]here a plaintiff… challenges… an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [the limitations period, measured from] the last asserted occurrence of that practice.").

FICO has not shown that Federal committed a "new wrong" that gave rise to a separately accruing harm within the limitations period. *See Wolf v. Travolta*, 167 F.Supp.3d 1077 (2016) (finding that the allegedly infringing document's continued presence on defendant's website at best constitutes harm from a past violation and not a new wrong); *Chelko v. Does*, No. 3:18-CV-00536-GCM, 2019 WL 3294201, at *5 (W.D.N.C. July 22, 2019) (finding that if each access of a copyright work on a website established a new claim for infringement, the statute of limitations would be obsolete). FICO's claim regarding installation of Blaze Advisor by Federal's affiliate in Europe accrued when Blaze Advisor was initially installed on November 6, 2009.  As such, FICO's motion to dismiss Federal's statute of limitations defense on this point fails.

## CONCLUSION

For the reasons set forth above, Federal respectfully requests the Court deny FICO's motion for summary judgment on Federal's statute of limitations defense as it relates to FICO's Count II for copyright infringement.

Dated:  May 13, 2020                       s/ Terrence J. Fleming
                                          _____
                                          Terrence J. Fleming (#0128983)
                                          tfleming@fredlaw.com
                                          Leah C. Janus (#0337365)
                                          ljanus@fredlaw.com
                                          Christopher D. Pham (#0390165)
                                          cpham@fredlaw.com
                                          Ryan C. Young (#0397751)
                                          ryoung@fredlaw.com
                                          Christian V. Hokans (#0400377)
                                          chokans@fredlaw.com

                                          **FREDRIKSON & BYRON, P.A.**
                                          200 South Sixth Street, Suite 4000
                                          Minneapolis, MN  55402-1425
                                          (612) 492-7000 (tel.)
                                          (612) 492-7077 (fax)

                                          ***Attorneys for Defendants***