## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

FAIR ISAAC CORPORATION,

      Plaintiff,

  v.

FEDERAL INSURANCE COMPANY,
an Indiana corporation, and ACE
AMERICAN INSURANCE COMPANY,
a Pennsylvania corporation,

      Defendants.

Court File No.  16-cv-1054 (WMW/DTS)


**REPLY MEMORANDUM IN
SUPPORT OF FEDERAL'S
SUPPLEMENTAL MOTION FOR
SUMMARY JUDGMENT**

---

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

ADDITIONAL BACKGROUND ........................................................................ 2

I.     FICO'S COPYRIGHT INFRINGEMENT THEORY AND THE CLAIMS
RELEVANT TO THE PRESENT MOTION. ........................................... 2

     A.     FICO's Complaint and Second Amended Complaint Do Not Allege
Infringement of Blaze Advisor Version 7.1. ................................. 2

     B.     FICO's Theories of Reproduction and Distribution of Blaze Advisor
Version 7.1. ................................................................... 5

          1.     FICO's reproduction claim. ............................................. 5

          2.     FICO's distribution claim................................................. 6

          3.     FICO's Copyright Infringement Claim Depends on its Untenable
Position that Chubb & Son, but not Federal, is a Party to the License
Agreement. ............................................................... 9

ARGUMENT.................................................................................................... 9

I.     FICO'S OPPOSITION PROVIDES NO EVIDENCE OF AN ACTIONABLE
REPRODUCTION OR DISTRIBUTION WITHIN THE COPYRIGHT ACT'S
THREE-YEAR LIMITATIONS PERIOD............................................... 9

     A.     FICO Cannot Show an Actionable Reproduction or Distribution of Blaze
Advisor Version 7.1 Taking Place in the United States within the Statutory
Period....................................................................... 10

          1.     FICO cannot add new claims to Count II through briefing and it has
not established registration for Blaze 7.1. ........................... 11

          2.     FICO cannot establish an actionable reproduction or distribution
within the statutory period. ........................................... 12

               a.     FICO has not established an unauthorized reproduction on or
after April 21, 2013. ............................................. 12

               b.     FICO has not established an unlicensed distribution of Blaze
Advisor Version 7.1 to Canada or to Europe. ...................... 14

          3.     FICO's theory that Chubb & Son is the "Client" is without merit. . 15

a.    The law does not support FICO's theory that the Client is
      Chubb & Son. .......................................................................... 15

b.    The evidence does not support FICO's theory that the Client is
      Chubb & Son. .......................................................................... 17

II.    FICO HAD INQUIRY NOTICE PRIOR TO APRIL 21, 2013 THAT
       FEDERAL'S AFFILIATES WERE USING BLAZE 7.1. .................................... 20

III.   THE PREDICATE ACT DOCTRINE DOES NOT SAVE FICO'S CLAIM. ...... 21

       A.   The Predicate Act Doctrine Does Not Apply to Count II Because There is
            No Domestic Infringing Act. ...................................................... 22

       B.   FICO Cannot Rely on the Predicate Act Doctrine to Disgorge Profits
            Earned by Foreign Non-Party Insurance Companies. ................................ 23

            1.   Allowing FICO to recover profits earned by non-parties from
                 Federal violates the Copyright Act. ................................. 24

            2.   An equitable award of profits under these circumstances does not
                 further the predicate act doctrine's compensatory purpose. ............ 25

CONCLUSION ........................................................................................ 29

Defendants Federal Insurance Company and ACE American Insurance Company (collectively, "Federal"), in accordance with the Court's March 23, 2020 Order, submit this reply memorandum in support of Federal's supplemental motion for summary judgment on Count II of Plaintiff Fair Isaac Corporation's ("FICO") Second Amended Complaint.

## INTRODUCTION

As explained in Federal's opening brief in support of its motion for summary judgment (Dkt. 751) and its brief in opposition to FICO's cross-motion (Dkt. 776)[1], Count II of FICO's Second Amended Complaint, a claim for copyright infringement, fails because that claim is barred by the Copyright Act's statute of limitations and FICO has not established an act of infringement occurring in the United States resulting in FICO's claims being barred by the Copyright Act's territorial restrictions.  (Dkt. 750-753.)

In its opposition, FICO argues that it has shown an actionable reproduction or distribution of Blaze Advisor software occurring within the United States during the Copyright Act's three-year statutory period.  To do so, however, FICO relies exclusively on purported acts of reproduction and distribution of Blaze Advisor Version 7.1.  For two principal reasons, this new—and previously unpled—theory is unsupported and must be rejected.

First, FICO has failed to establish an actionable reproduction or distribution occurring within the statutory period.  FICO's claim relates entirely to Blaze Advisor

---

[1] Federal incorporates by reference these two briefs.

Version 7.1.  (*See* Dkt. 773 at 4-5.)  FICO, however, did not plead copyright infringement related to Blaze Advisor Version 7.1 at any time in this litigation, including in the Second Amended Complaint.  (*See* Dkt. 1 & 132.)   In addition, FICO has not established registration for Blaze Advisor Version 7.1, which is a prerequisite to filing an infringement claim.  *See Fourth Estate Pub. Benefit Corp. v. Wall-Street.com*, 139 S. Ct. 881, 892 (2019); 17 U.S.C. § 411(a).  Furthermore, the "evidence" FICO has submitted on this topic does not establish that *Federal* committed an actionable reproduction or distribution to its affiliates.  For all these reasons, Federal is entitled to summary judgment.

Second, the evidence establishes that FICO knew that Federal was upgrading to Version 7.1 in 2012 and had also known since 2009 that Federal's affiliates were using the software.  Accordingly, FICO knew or at a minimum should have known of use of Blaze 7.1 by Federal's affiliates more than three years before suit was filed on April 22, 2016.  FICO did not diligently pursue its claim, and therefore its claim is time-barred.

## ADDITIONAL BACKGROUND

## I.   FICO'S COPYRIGHT INFRINGEMENT THEORY AND THE CLAIMS RELEVANT TO THE PRESENT MOTION.

### A.   FICO's Complaint and Second Amended Complaint Do Not Allege Infringement of Blaze Advisor Version 7.1.

Count II of FICO's Second Amended Complaint concern alleged unauthorized reproduction and distribution of Blaze Advisor software to third parties.  (Dkt. 132 at ¶¶ 44-53.)  Count II is not supported by detailed factual allegations and, instead, is stated in conclusory fashion:

2

> Federal's unauthorized reproduction and distribution of the FICO Products
> to third parties infringes FICO's copyright interests.

(*Id.* at ¶ 49.)   The Second Amended Complaint does not allege an unauthorized reproduction or distribution of Blaze Advisor Version 7.1, the third parties that received the purported reproduction or distribution of Blaze 7.1, or when those purported reproduction or distributions occurred.  (*See* Dkt. 132.)

In its opposition, FICO criticizes Federal for mischaracterizing its copyright infringement claim.  (Dkt. 773 at 1, 9-11.)   As outlined above, FICO's copyright infringement claim is not stated with any detail in its original Complaint or Second Amended Complaint.  (Dkt. 1 & 132.)  Instead, FICO outlined the theory supporting its claim for copyright infringement for the first time in its supplemental motion for summary judgment on Federal's statute of limitations defense, which was filed on April 22, 2020.  (Dkt. 744 at 6-7.)  The same theories are outlined and relied upon in FICO's present opposition to Federal's supplemental motion for summary judgment.  (Dkt. 773 at 4-5.)  Prior to the supplemental briefing, however, FICO had not identified any details such as dates or the manner of the alleged distributions or reproductions that it now cites in support of Count II.

FICO argues that Federal violated its exclusive rights of reproduction and distribution when Federal's affiliates in Canada and Europe installed Blaze Advisor

Version 7.1.[2]  (Dkt. 773 at 4-5.)  FICO's Complaint and Second Amended Complaint allege it maintains copyright registrations for 12 versions of Blaze Advisor.  (Dkt. 1, ¶ 10 & 132, ¶ 12.)  FICO did not allege it maintains copyright registration for Blaze Advisor Version 7.1.  (*Id.*)  In addition, FICO's Summons and Complaint, which attaches proof of registration for all versions of Blaze Advisor, does not contain *any* proof of registration for Blaze Advisor Version 7.1.  (*See* Dkt. 1, Ex. 1 (attaching Certificates of Registration for versions of Blaze Advisor registered with the Copyright Office).)  The United States Copyright Office's publicly available website also contains no registration for Blaze Advisor Version 7.1.[3]

FICO's Opposition relies exclusively on unauthorized acts of reproduction and distribution of Blaze Advisor Version 7.1.  (Dkt. 773 at 4-5; Dkt. 744 at 6-7.)  No other versions of Blaze Advisor are at issue.  (*Id.*)  FICO released Version 7.1 of Blaze Advisor in October 2012.  (Declaration of Terrence Fleming, dated May 27, 2020, Ex. 1.)  On October 3, 2012, FICO's sales executive in charge of Federal's account, Michael Sawyer, instructed FICO's fulfillment department to make Blaze 7.1 available to Federal for download.  (Fleming Decl., Ex. 2 at 11 (FICO customer support log printout).)

---

[2] FICO does not argue Federal committed any unauthorized reproductions or distributions with regard to Federal's affiliate in Australia or the two consultants FICO has identified in the past related to its breach of contract claim.  (*See* Dkt. 773 at 12.)  Rather, FICO claims it may disgorge profits earned by Federal's affiliate in Australia because it accessed Blaze via the European installation of the software and that the consultants are only relevant to FICO's contract claim.  (*Id.* at 10, 23.)  As described herein, FICO has not presented evidence that Federal distributed Blaze 7.1 to Europe, which means FICO's claim for profits earned by Federal's Australian affiliate fails as a matter of law as well.

[3] The Copyright Office's publicly available database, which provides searching for current Certificates of Registration, is available at cocatalog.loc.gov.

B.      **FICO's Theories of Reproduction and Distribution of Blaze Advisor Version 7.1.**

The theories of copyright infringement related to Blaze 7.1 that FICO revealed in its Opposition to Federal's Supplemental Summary Judgment Motion—and which are not pled—are detailed below.[4]

1.      **FICO's reproduction claim.**

In its Opposition, FICO argues Federal violated its exclusive right of reproduction under 17 U.S.C. § 106 in two ways (the "reproduction claim"). (Dkt. 773 at 4-5.) First, FICO argues that Federal committed an unauthorized act of reproduction "by uploading Blaze Advisor to a site on its computers in the United States." (Dkt. 773 at 4; Dkt. 744 at 10.) This upload occurred on October 4, 2012. (Fleming Decl., Ex. 3 at FED004077_0010.) FICO argues this installation violated its right of reproduction by enabling Federal's affiliates in Canada and Europe to download and install Blaze for their own use. (Dkt. 744 at 10.) As detailed below, Federal contends this upload was licensed and, even if it was not, it is not actionable because it occurred outside of the Copyright Act's three-year limitations period.

Second, FICO argues that Federal committed an unauthorized act of reproduction when Federal's Canadian affiliate remotely accessed Blaze while it remained installed on Federal's servers in Raleigh, North Carolina. (*Id.* at 11.) Federal's Canadian affiliate used a software application called Evolution that was integrated with Blaze 7.1. (Dkt. 773 at 2.) But the data center with servers capable of installing Blaze was always

_____

[4] FICO's theories are additionally outlined in FICO's memorandum in support of motion for summary judgment on Defendants' statute of limitations defense. (*See* Dkt. 744.)

Federal's data center in North Carolina, meaning that Blaze 7.1 remained installed on the servers at this data center when Federal's Canadian affiliate used the Evolution application.   (Dkt. 776 at 19-20.)   FICO claims this remote access resulted in infringement because the copy of Blaze 7.1 installed on Federal's servers was temporarily copied into the Random Access Memory ("RAM") in those servers as a result of the use of Evolution as a Blaze 7.1-integrated application.  (Dkt. 773 at 2.)

## 2.   FICO's distribution claim.

FICO further argues in its Opposition that Federal violated its exclusive right of distribution under 17 U.S.C. § 106 in two ways (the "distribution claim").  (Dkt. 773 at 4-5.)  First, FICO argues an unauthorized act of distribution to Federal's Canadian affiliate occurred when an employee of the affiliate downloaded Blaze 7.1 to integrate it with the Evolution application.  (Dkt. 746 at Exs. 8, 10, 11, 16, 17.)  FICO cites various emails concerning the process of integrating Evolution with Blaze 7.1 but fails to mention that when the affiliate's employee downloaded Blaze 7.1, the software remained installed on Federal's servers in North Carolina during and after this process took place.  (*See* Dkt. 773 at 19-20; *see also* Fleming Decl., Ex. 3 at FED004077_0010 (identifying file path for location of Blaze 7.1 on Federal internal site); Fleming Decl., Ex. 4 at Deposition Ex. 8 (identifying same file path for location of Blaze 6.7); Fleming Decl., Ex. 5 at 23:13-24:14 (explaining that this file path identifies location on Federal's servers).)   Instead of acknowledging this dispositive fact, FICO makes the misleading generalization that Federal "transmitted" Blaze 7.1 to Canada.  (Dkt. 773 at 4-5.)

Federal did not "transmit" Blaze 7.1 to servers in Canada. To support its argument that Federal distributed Blaze 7.1 to Canada, FICO mischaracterizes deposition testimony and emails. First, FICO's Opposition relies on erroneous testimony from the first deposition in this litigation. (Dkt. 776 at 19-20.) This testimony has since been corrected on multiple occasions to clarify that Federal's Canadian affiliate's former servers in Toronto never hosted any version of Blaze. (*Id.*)

Second, FICO relies on several emails. However, the emails FICO cites do not show any installations of Blaze 7.1 on servers in Canada:

- FICO's Exhibit 8 (cited at Dkt 773 at 4; Dkt. 744 at 10): As described above, the "installations" mentioned in this email exchange were on Federal's servers at its North Carolina data center. (Fleming Decl., Exs. 3-5.)

- FICO's Exhibit 10 (cited at Dkt. 773 at 4; Dkt. 744 at 11): This email exchange occurred in 2012, which is outside of the Act's three-year limitations period. It also does not reference installations at all.

- FICO's Exhibit 11 (cited at Dkt. 773 at 4: Dkt. 744 at 11): This email *recommends* an installation of Blaze 7.1 but does not demonstrate that any such installation took place. Like Exhibit 8, it does not mention the installation location, but any such installation would have occurred on Federal's servers.

- Exhibits 16 & 17 (cited at Dkt. 773 at 4; Dkt. 744 at 11): The emails contained in both exhibits occurred in 2010, again, outside of the Act's three-year limitations period. These emails demonstrate an employee copying Blaze to a shared site. As noted above, a Federal Rule 30(b)(6) witness explained that the file path name contained in this email describes a location on a Federal server in North Carolina. (Fleming Decl., Ex. 5 at Tr. 23:13-24:14.)

FICO has submitted no evidence showing that Federal distributed Blaze 7.1 to Canada; the copy of Blaze 7.1 that Federal's Canadian affiliate used with its applications remained installed on Federal's servers in North Carolina.

Second, FICO argues Federal distributed Blaze 7.1 to its European affiliate based on FICO's conjecture that this affiliate *may* have downloaded a copy of Blaze 7.1 from Federal's shared site on or about September 6, 2013.  (Dkt. 773 at 4-5; Dkt. 744 at 9-11.) As noted above, the initial uploading of Blaze 7.1 to this shared site is not actionable because it occurred outside of the Act's limitations period on October 4, 2012.  (Fleming Decl., Ex. 3 at FED004077_0010.)   The evidence FICO cites does not support its argument that the European affiliate obtained its copy of Blaze 7.1 from Federal's shared site:

- FICO's Exhibit 5 (cited in Dkt. 773 at 4-5; Dkt. 744 at 9): This document merely discloses that the European affiliate upgraded to Blaze 7.1 on September 6, 2013; it does not describe the source from which the affiliate obtained the software.

- FICO's Exhibit 6 at 39:3-21 (cited in Dkt. 773 at 4-5; Dkt. 744 at 9-10): FICO fails to mention that this deposition testimony describes the process by which the European affiliate downloaded *Blaze 6.7* for installation *in 2009*, not Blaze 7.1 in 2013.  (*See* Dkt. 747 at 32:18-39:21; *see also* Fleming Decl., Ex. 6 (Deposition Ex. 3.).) Again, this conduct took place outside of the three-year limitations period.  Even if it were within the limitations period, referring to the exhibit before him during the deposition, the witness explained "my statement is that based on this-email, we cannot conclude if – the way it was or was not installed . . . [t]his is just a link to the installation files." (Dkt. 747 at 35:3-11.)

- FICO's Exhibit 7 at 9:9-10:9 (cited in Dkt. 773 at 4-5; Dkt. 744 at 9-10): FICO states that this deposition testimony "confirmed this transmission" took place in 2013.  It does not.  The cited portion of

Exhibit 7 simply describes the process by which Mr. Pandey obtained information to help create the disclosure found in Exhibit 5.

### 3. FICO's Copyright Infringement Claim Depends on its Untenable Position that Chubb & Son, but not Federal, is a Party to the License Agreement.

FICO's new arguments in support of Count II depend entirely upon its position that Federal's unincorporated Chubb & Son division, but not Federal, is a party to the License Agreement. Thus, FICO asserts throughout its Opposition that Federal's Chubb & Son division, which has no employees, made these alleged reproductions and distributions of Blaze 7.1. (*See* Dkt. 773 at 2 ("Chubb & Son reproduced (copied) Blaze Advisor 7.1").) Federal is the "Client" under the agreement, meaning Federal's affiliates are licensed to use Blaze under the affiliates provision of Amendment Two. (Dkt. 507 at 20-23; Dkt. 513.) For this and the other reasons explained below, FICO has failed to satisfy its burden of supporting Count II of its Complaint with evidence of an act of infringement within the three-years prior to this litigation, which means Federal is entitled to summary judgment dismissing Count II.

## ARGUMENT

### I. FICO'S OPPOSITION PROVIDES NO EVIDENCE OF AN ACTIONABLE REPRODUCTION OR DISTRIBUTION WITHIN THE COPYRIGHT ACT'S THREE-YEAR LIMITATIONS PERIOD.

Federal's supplemental motion for summary judgment seeks dismissal of Count II of FICO's Second Amended Complaint because the claim is barred by the Copyright Act's three-year statute of limitations and territorial restrictions. (Dkt. 750.) FICO presents two arguments in opposition to Federal's motion for summary judgment. First,

FICO argues that Federal's motion must be denied because FICO has shown an act of infringement occurring after April 21, 2013—the date three-years before FICO filed suit. Second, FICO argues that its claims are not time-barred because it did not know nor should it have known of the reproductions or distributions of Blaze Advisor Version 7.1 and, as such, the statute of limitations did not run, and its claim did not expire.  As outlined below, each argument fails.  The Court should grant Federal's motion and dismiss Count II of FICO's Second Amended Complaint in its entirety.

### A.   FICO Cannot Show an Actionable Reproduction or Distribution of Blaze Advisor Version 7.1 Taking Place in the United States within the Statutory Period.

FICO argues that Federal's motion must be denied because it has shown an act of reproduction or distribution of Blaze Advisor Version 7.1 by Chubb & Son (not Federal) occurring after April 21, 2013.  (Dkt. 773 at 9-16.)  However, FICO fails to establish an infringing act within the statutory period with respect to this version of Blaze Advisor for at least three reasons.  First, FICO has not pled or established registration for Blaze Advisor Version 7.1 and, as such, cannot pursue a claim related to this version of Blaze. Second, FICO has not demonstrated an act of reproduction or distribution occurring within the statutory period.  Third, FICO's allegations of an act of reproduction or distribution depend on Chubb & Son, and not Federal, being the "Client" under the License Agreement, which position is untenable based on the applicable law and evidence.

### 1.   FICO cannot add new claims to Count II through briefing and it has not established registration for Blaze 7.1.

FICO's Opposition focuses entirely on arguments that Federal infringed its copyright in Blaze Advisor Version 7.1. (*See* Dkt. 773 at 13 ("FICO's copyright infringement claims are based on the unauthorized reproduction and distribution of Blaze Advisor Version 7.1 . . . [t]hey are not based on Blaze Advisor 6.7").) FICO's pleadings do not include a claim for infringement of Blaze 7.1. Accordingly, it is appropriate for the Court to enter summary judgment dismissing Count II now that FICO has revealed that Blaze 7.1 is the sole basis for this claim. *See Midland Farms, LLC v. U.S. Dep't of Agric.*, 35 F. Supp. 3d 1056, 1066 (D.S.D. 2014) ("[plaintiff] may not amend its Complaint through an argument raised in a brief") (collecting authorities).

FICO has also not established copyright registration of Blaze Advisor Version 7.1. A copyright claimant may not commence an infringement suit until the Copyright Office registers a copyright. *Fourth Estate*, 139 S. Ct. at 887 ("registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights"); *Asche & Spencer Music, Inc. v. Principato-Young Entertainment, Inc.*, 147 F. Supp. 3d 833, 836 (D. Minn. 2015) (failure to establish registration requires dismissal). Here, the only acts FICO relies upon within the statutory period relate to Blaze Advisor Version 7.1. (*See* Dkt. 773 at 4-5.) FICO, however, has failed to establish registration of Blaze Advisor Version 7.1, which requires dismissal of its claim.

2.    **FICO cannot establish an actionable reproduction or distribution within the statutory period.**

Beyond its failure to plead its reproduction and distribution claims in its operative complaint, or to demonstrate the essential element of registration as to Blaze 7.1, FICO's Opposition is additionally without merit because the evidence does not establish an actionable reproduction or distribution occurring on or after April 21, 2013.

a.    **FICO has not established an unauthorized reproduction on or after April 21, 2013.**

FICO argues that Federal's motion must be denied because Federal, through actions taken by the Chubb & Son division, violated its exclusive right of reproduction in Blaze 7.1 within the three years prior to FICO filing this action on April 21, 2016.  (Dkt. 773 at 4-5.)  FICO argues there are two unauthorized acts of reproduction.  (*Id.*)  First, FICO argues that Federal committed an unauthorized reproduction by "uploading" Blaze 7.1 to an internal shared site so that Federal's affiliate in Canada could use the software. (Dkt. 773 at 4; *see also* Dkt. 744 at 9.)  Second, FICO argues that Federal committed an unauthorized reproduction in 2015 by "permitting" Federal's affiliate in Canada to use an application that was integrated with Blaze 7.1, which temporarily copied the software into the RAM in Federal's servers in North Carolina.  (Dkt. 773 at 5; *see also* Dkt. 744 at 11.)  Because neither of these acts establish an unauthorized reproduction, FICO has not shown an act of infringement occurring within the statutory period with respect to its reproduction claim.

Federal did not commit an unauthorized act of reproduction by uploading Blaze 7.1 to an internal site for use or access by Federal's affiliates.  As an initial matter, this

12

upload is not actionable because it occurred outside of the three-year limitations period, on October 4, 2012.  (Fleming Decl., Ex. 3 at FED004077_0010.)

Further, any use or access by Federal's affiliate in Canada was licensed because the software remained installed on Federal's servers in Raleigh, North Carolina.  (Dkt. 746-1 at 21 (providing that Federal may use Blaze for "their internal business purposes, with no limitation.").

FICO's argument that Blaze 7.1 was installed on servers located in Toronto is without merit.  (Dkt. 773 at 7; *see also* Dkt. 776 at 18-21.)  Indeed, FICO concedes that its reproduction is only supported by evidence that Federal uploaded Blaze 7.1 "to a site on *its* computers *in the United States*."  (Dkt. 773 at 4 (emphasis added).)  As demonstrated above, FICO's evidence does not create a factual dispute; the copy of Blaze 7.1 used by Federal's affiliate in Canada remained installed on Federal's servers in Raleigh, North Carolina.  Federal's disclosures, its Rule 30(b)(6) depositions, and a declaration from the Chief Information Officer of Federal's Canadian affiliate establish that *no versions of Blaze*, let alone version 7.1., were ever installed on servers in Toronto. (Dkt. 514, ¶ 3; 752, Ex. A; 780 at 51:2-17; 780-1 at 23:13-25:19.)

The only evidence FICO submits to the contrary is erroneous testimony from a former Federal employee named Henry Mirolyuz who, in his first deposition, testified that he believed Blaze had been installed on servers in Toronto.  (Dkt. 747 at 27:11-15.) Mr. Mirolyuz provided no details—or dates—regarding the installation.  (*Id.*)  In his second deposition, Mr. Mirolyuz explained that his initial testimony about a Toronto installation had been a "mistake" and that he had obtained more accurate information

13

from the Chief Information Officer of Federal's Canadian affiliate indicating Blaze has never been installed on servers in Toronto.  (Fleming Decl., Ex. 7 at 36:4-18.)  FICO's reliance on this testimony, when it knows the testimony was corrected in Mr. Mirolyuz's second deposition and is belied by all the other evidence in the record, is misleading.

Finally, FICO's argument that use of Blaze by Federal's affiliate in Canada violated its reproduction right by creating unauthorized RAM copies is without merit.  As outlined above, it cannot be disputed that Federal's affiliate in Canada used and accessed all versions of Blaze, including version 7.1, from Federal's servers in North Carolina.  (Dkt. 514, ¶ 3; Dkt. 752, Ex. A.)  As such any RAM copies were made on Federal's servers in North Carolina, which copies were also part of the "internal business" of Federal under both Section 3.1 of the License Agreement and the superseding language of Amendment Two.  (Dkt. 746-1 at 3, 20-21.)

> **b.     FICO has not established an unlicensed distribution of Blaze Advisor Version 7.1 to Canada or to Europe.**

FICO has also not established an unlicensed distribution occurring on or after April 21, 2013.  FICO argues Federal committed unauthorized distributions after April 21, 2013 of Blaze Advisor Version 7.1 to its affiliates in Canada and Europe.  As described above in the Sections I.B.2 and I.B.3, the evidence FICO relies upon does not establish that Federal ever distributed Blaze 7.1 to either affiliate.  Further, FICO's argument that Federal distributed Blaze 7.1 to its affiliate in Canada is belied by the fact that, as outlined above, Federal's disclosures, Rule 30(b)(6) depositions, and a declaration from the Chief Information Officer of Federal's Canadian affiliate establish

14

that *no versions of Blaze*, let alone version 7.1., were ever installed on servers in Toronto. (Dkt. 514, ¶ 3; 752, Ex. A; 780 at 51:2-17; 780-1 at 23:13-25:19.)   And the European affiliate's upgrade to Blaze 7.1 on September 6, 2013 does nothing to support FICO's burden of producing evidence that *Federal* distributed this software to the European affiliate.  (*See supra* Additional Background, I.B.3.)  As such, FICO has not, and cannot, establish a distribution to Federal's affiliates in Canada or Europe occurring on or after April 21, 2013.  (*See also* Dkt. 776 at 21-23.)

### 3. FICO's theory that Chubb & Son is the "Client" is without merit.

FICO argues that Chubb & Son, as opposed to Federal, is the "Client" under the License Agreement.  (Dkt. 773 at 25-30.)  FICO's position lacks merit because the law and evidence do not support the conclusion that Chubb & Son, an unincorporated division without any affiliates or employees, but not Federal, is the "Client" under Amendment Two to the License Agreement.

#### a. The law does not support FICO's theory that the Client is Chubb & Son.

The Court previously addressed FICO's position that Chubb & Son is the Client under the License Agreement in its March 23, 2020 Order.  (Dkt. 731 at 42-44.)  The Court cited New York law which provides that an unincorporated division, like Chubb & Son, is not a legal entity and therefore "has no separate legal existence apart from its parent corporation."  (*Id.* at 43.)  Based on these well-established principles, the Court concluded that FICO's position would "make little sense" and would lead to the absurd result that a division could enter a contract and yet never be sued.  (*Id.*)  The Court did

15

not grant summary judgment on this issue, however, because it determined that Federal had not affirmatively moved on the issue. (*Id.* at 44 n.15.)

FICO now argues that the Court has "not considered the full application of New York law relating to the 'Affiliates' issue." (Dkt. 773 at 29.) As the Court noted in its March 23, 2020 Order, however, there is not "any legal authority addressing whether— under New York law—an unincorporated subdivision may enter a contract *independently* from its parent corporation." (Dkt. 731 at 43 (emphasis in original).) This is the crux of the issue—"an unincorporated division . . . has no separate legal existence apart from its parent corporation." *Affymax, Inc. v. Johnson & Johnson*, 420 F. Supp. 2d 876, 879 (N.D. Ill. 2006).

FICO does not present any authority to the contrary. FICO cites just two cases. (Dkt. 773 at 29.) FICO relies most extensively on *Maranatha Associates Inc. v. Titan Grp, Inc.*, 202 A.D.2d 846 (N.Y. App. Div. 1994), which is a three-paragraph opinion containing little analysis in denying a motion to dismiss. There, the issue was not whether the legal entity was a party to the contract, but instead whether, under agency principles, the unincorporated division could "enter into contracts or bring legal action" on behalf of the legal entity. *Id.* at 847. FICO's second case, for which FICO provides no analysis, simply notes that under agency principles a division can enter into and bind a legal entity to a contract. *See Royal Indus. v. Kraft Foods*, 926 F. Supp. 407, 416 (S.D.N.Y. 1996). Both of these decisions are consistent with Federal's position that when its division, as with any other authorized agent of Federal, enters into contracts like

the License Agreement, that *Federal* is the real party in interest under such contracts. (Dkt. 507 at 20-21.)

FICO's new case law also does not address the fact that FICO's interpretation of the "Client" being Chubb & Son would lead to absurd results.   First, FICO's interpretation means that use of Blaze is restricted to the Client's employees.  But Chubb & Son has no employees.  (Dkt. 513, ¶ 4.)  FICO's interpretation, therefore, leads to an absurd result, which is that no person could ever make use of Blaze under the License Agreement.  (*Id.*, ¶ 10.)  Second, interpreting the "Client" as being Chubb & Son would render Amendment Two meaningless.  *Diamond Castle Partners IV PRC, L.P. v. IAC/InterActiveCorp*, 918 N.Y.S.2d 73, 74–75 (N.Y. App. Div. 2011) (refusing to adopt contract interpretation that would render "affiliates" clause meaningless).   Amendment Two extends the license to "Client *and its affiliates*."  (Dkt. 407.)  There is no dispute that a non-legal entity like the Chubb & Son division cannot have affiliates, meaning FICO is arguing that Federal paid ███████ out of ██████████ in license fees under the Agreement for no purpose whatsoever.   (Dkt. 398 at 16; *see generally* Dkt. 778 (pricing information).)

> **b.**     **The evidence does not support FICO's theory that the Client is Chubb & Son.**

In addition, the evidence does not support FICO's argument.  Chubb & Son does not have any employees that could commit the act of reproduction or distribution FICO argues infringed its copyrights.  (Dkt. 513, ¶ 4.)  It is also undisputed that Blaze was used by the three "Strategic Business Units" within the Chubb Group and not by the Chubb &

Son division.  (*Id.* at ¶ 9; Dkt. 763 at 6.)   Amendments One and Two to the License

Agreement authorized the "Client and its affiliates" to use Blaze within these Strategic

Business Units, which consisted of Commercial Lines, Personal Lines, and Specialty

Lines.  (Dkt. 763 at 6.)  These Strategic Business Units included Federal and its affiliates

and, therefore, refer to multiple entities selling different types of insurance products.

(Fleming Decl., Ex. 8 at FICO0002329-2330.)  If the client were Chubb & Son then

presumably *all* uses of Blaze, including use by the Strategic Business Units, would

violate the License Agreement.  FICO makes no such arguments because it realizes the

absurdity of that result.  *See Greenwich Capital Fin. Prods., Inc. v. Negrin*, 903 N.Y.S.2d

346, 348 (N.Y. App. Div. 2010) ("a contract should not be interpreted to produce a result

that is absurd, commercially unreasonable, or contrary to the reasonable expectations of

the parties").

FICO's evidence does not establish that Chubb & Son is the client.  (Dkt. 775,

Exs, 8-18.)  FICO once again[5] points to a Request for Information with the words "Chubb

& Son, a division of Federal Insurance Company" within it and the Chubb Corporation's

2007 Form 10-K, which identifies Chubb & Son, the division, as a manager of Chubb

Corporation insurance company subsidiaries.  (*Id.* at Exs. 8-9.)  FICO ignores the fact

that elsewhere the Chubb Corporation's 2007 Annual Report describes this manager as

"Federal" and not its Chubb & Son division.  (Fleming Decl., Ex. 8 at FICO00002330.)

---

[5] FICO relied on these same exhibits in its summary judgment briefing.  (*Compare* Dkt.
775-2 and Dkt. 775-3 *with* Dkt. 503 and Dkt. 502-1.)

The passing references that FICO relies upon in these exhibits have nothing to do with whether Federal is a party to the License Agreement as a matter of law.

FICO also selectively quotes from Tamra Pawlowski's deposition who was a Federal employee involved in pre-suit negotiations related to the License Agreement. (Dkt. 775 at Ex. 10.)  FICO's selective quotation ignores that, immediately following this testimony, Ms. Pawlowski notes that the negotiations clearly established the License Agreement was enterprise-wide and that the affiliates clause provided the License Agreement covered "other entities."  (*Id.* at 95:1-17.)  As noted above, this testimony, and the affiliates clause in Amendment Two generally, would have no meaning if Chubb & Son were the client because Chubb & Son has no affiliates.  Ms. Pawloski never testified that Federal was not included as the client under the License Agreement and, to the contrary, her testimony that the License Agreement was enterprise-wide directly contradicts FICO's position.

FICO also relies on pre-suit negotiations, which simply reference the words "Chubb & Son," this time on a proposed Amendment Three to the License Agreement, which was never executed.  (Dkt. 775, Exs. 11-18.)  Again, this evidence does not establish that Federal is not the "Client" under the License Agreement, it merely demonstrates that the Parties, in pre-suit negotiations, were proposing to use the same language from the original Agreement.  (*See* Dkt. 513.)  In any event, pre-suit negotiations of an amendment that was never executed do not demonstrate what the parties intended ten years earlier with respect to the operative License Agreement, the

19

First Amendment, and the Second Amendment.  For all these reasons, Federal's motion should be granted.

## II.   FICO HAD INQUIRY NOTICE PRIOR TO APRIL 21, 2013 THAT FEDERAL'S AFFILIATES WERE USING BLAZE 7.1.

FICO also argues that Federal's statute of limitations defense fails because FICO's knowledge that Federal's affiliates were using Blaze only extended to version 6.7, not version 7.1.  (Dkt. 773 at 11-15.)  FICO claims that because its reproduction and distribution claims concern only version 7.1, its knowledge related to version 6.7 is irrelevant.  (*Id.* at 13.)  FICO's argument fails because FICO had actual knowledge of the upgrade to version 7.1 in 2012.  (Fleming Decl., Ex. 2 at 11; Ex. 9 at FICO0057441.)  FICO admits it was aware of the initial installation of Blaze by Federal's affiliate in 2009 and, further, the evidence demonstrates FICO knew Federal was upgrading to version 7.1 in 2012.  (*Id.*; *see also* Dkt. 773 at 11-15.)  As such, FICO had actual knowledge of the upgrade well before the statute of limitations date of April 21, 2013.  Based on this knowledge combined with FICO's knowledge that Federal's affiliates were using Blaze, FICO knew or, at a minimum should have known, that Federal's Canadian and European affiliates would upgrade to Blaze 7.1.

In its Opposition, FICO does not dispute that it was aware of use by Federal's affiliates.  (Dkt. 773 at 13-14.)[6]  In the Parties' initial summary judgment briefing, FICO

---

[6] The evidence concerning FICO's knowledge of use of Blaze outside of the United States is outlined in detail in Federal's memorandum in opposition to FICO's motion for summary judgment on Federal's statute of limitations defenses and in Federal's initial memorandum in support of its motion for summary judgment.  (*See* Dkt. 776 at 9-12; Dkt. 445 at 8-10; *see also* Fleming Decl., Ex. 2 at 1 (customer service log #00266679).)

conceded that its employees were aware of use outside of the United States, but that they were simply "mistaken" when they concluded that use was licensed.  (Dkt. 499 at 16-17.) In its current opposition memorandum, FICO submits no evidence to the contrary and, again, concedes the point.  (Dkt. 773 at 13.)  Therefore, FICO admits it was aware of use of Blaze outside of the United States by Federal's affiliates as of November 2009.

Given this knowledge, FICO's argument that it was not involved in the installations by Federal's affiliate is not relevant.  (*See, e.g.*, Dkt. 507 at 8-11; Dkt. 515; Dkt. 516; Fleming Decl., Ex. 2.)  Blaze 7.1 was released in October 2012.  (Fleming Decl., Ex. 1.)  The evidence unequivocally establishes that FICO knew that Federal was upgrading to version 7.1 as of 2012.  (*Id.*, Ex. 2.)  This knowledge is demonstrated by FICO's customer service log and a statement of work contract executed between Federal and FICO dated July 26, 2012, which references Federal's plan to upgrade to version 7.1 prior to the version's release.  (*Id.*, Ex. 2; Ex. 9 at FICO0057441.)  Federal email communications further confirm that Federal installed version 7.1 and uploaded it to its internal site in October 2012.  (Fleming Decl., Ex. 3 at FED004077_0003.)  Based on this evidence, FICO had actual knowledge or, at a minimum, inquiry notice, of Federal's upgrade to version 7.1 in 2012, which is outside of the statutory period.

## III.   THE PREDICATE ACT DOCTRINE DOES NOT SAVE FICO'S CLAIM.

Finally, the predicate act doctrine does not apply to save FICO's claim.  There is no dispute that "United States copyright law has no extraterritorial effect."  *Iverson v. Grant*, 133 F.3d 922 (8th Cir. 1998).  Despite FICO's statement to the contrary, the very cases it relies upon characterize the predicate act doctrine as an "exception" to this rule.

21

*E.g.*, *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988); *ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254, 263 (D. Mass. 2016).  Even if FICO had satisfied its burden to produce evidence of a domestic "predicate act" for this exception to apply (it has not), this doctrine would not support FICO's distribution claim with regard to the Canadian and European affiliates and it would certainly not support FICO's novel theory that it may disgorge profits earned by foreign insurance companies that are not parties to this litigation.

### A.     The Predicate Act Doctrine Does Not Apply to Count II Because There is No Domestic Infringing Act.

The predicate act doctrine does not apply to the copyright claims at issue in this motion at all.  Courts have invoked this exception to allow parties to recover "damages" for "the extraterritorial exploitation of *an infringing act* that occurred in the United States."  *Los Angeles News Serv. v. Reuters TV Int'l*, 149 F.3d 987, 992 (9th Cir. 1998) (emphasis added).)  In distinguishing *Los Angeles News* from its earlier precedent in *Subafilms, Ltd. v. Mgm-Pathe Communications*, 24 F.3d 1088 (9th Cir. 1994), however, the Ninth Circuit emphasized that evidence of mere domestic "authorization" is not enough to establish "an infringing act that occurred in the United States."  *Id.*

The doctrine does not apply here because, as described above, FICO has not presented any evidence to show that Federal committed an unlicensed distribution or reproduction after April 21, 2013.  At most, FICO has demonstrated that Federal may have "authorized" its European affiliate to upgrade to Blaze Advisor 7.1.  Even if this upgrade were not already licensed under Amendment Two, it would still not give rise to

an actionable infringement claim because mere "authorization" is not actionable.  *See, e.g.*, *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1094 (9th Cir. 1994) ("there can be no liability for 'authorizing'"); *Datacarrier S.A. v. WOCCU Servs. Grp.*, 221 F. Supp. 3d 1078, 1085 (W.D. Wis. 2016) (dismissing infringement claims where defendant authorized foreign affiliates to use plaintiff's software); *Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, 850 F.3d 785, 799 (5th Cir. 2017) (same).

### B.    FICO Cannot Rely on the Predicate Act Doctrine to Disgorge Profits Earned by Foreign Non-Party Insurance Companies.

In arguing that the Court should apply the predicate act doctrine to save its foreign profit disgorgement claim, FICO, once again, omits discussion of important details related to this portion of its claims.  FICO broadly asserts that "[t]he purpose of the predicate-act doctrine is to fully compensate the copyright owner for foreign exploitation of the copyrighted work."  (Dkt. 773 at 20.)  FICO uses the terms "damages" and "disgorgement" interchangeably in describing the doctrine.  (*Id.* at 16-25.)  But FICO's request that the Court allow it to disgorge profits from foreign entities does not seek "compensation" or "damages."  Rather, FICO seeks an *equitable* award of *profits*, which are distinct from legal damages and bear no relationship to any harm FICO allegedly suffered in the form of lost license fees.  (*See* Dkt. 588 at 13.)  Further, FICO asks for this equitable relief based on profits earned by various foreign entities even though they are not parties to this litigation.  (Dkt. 408 at 76 (Schedule 12.0 identifying foreign non-party insurance companies as sources of profits).)  Even if the predicate act doctrine did apply to save Count II, it would not support such a novel recovery for two reasons.

23

1.      **Allowing FICO to recover profits earned by non-parties from Federal violates the Copyright Act.**

FICO's proposed application of the predicate act doctrine violates the principle of several liability, which underlies the Copyright Act's profit disgorgement remedy. *See, e.g.*, *MCA, Inc. v. Wilson*, 677 F.2d 180, 186 (2d Cir. 1981) ("[joint and several liability] applies only to the defendants' liability for damages. Insofar as there is liability for illegal profit, the liability is several; one defendant is not liable for the profit made by another.").

FICO attempts to avoid the due process concerns that would arise from allowing it to recover profits directly from these foreign entities without naming them as defendants by arguing that it may recover these entities' profits from Federal. (Dkt. 773 at 24.) Whether or not FICO labels the various entities from which it seeks profits a "single enterprise," an "economic unit" or applies any other label, however, there can be no dispute that the profits of these foreign entities belong to these foreign entities because they are separate corporate entities from Federal and ACE American. (*See* Fleming Ex. 10.) Accordingly, FICO asks this Court to apply the predicate act doctrine in a manner that not only holds Federal and ACE American *jointly* liable for profits, but jointly liable for profits from third parties, thus violating the Copyright Act's principle of several liability for profits. *See Quintel Corp., N.V. v. Citibank, N.A.*, 596 F. Supp. 797, 804 (S.D.N.Y. 1984) ("Although joint tortfeasors are jointly liable for actual damages, it is not appropriate to impose windfall damages, the purpose of which is to prevent unjust enrichment, on a defendant who did not receive the windfall profits.").

The only case FICO has found where a court allowed a party to recover profits based on revenues earned by a foreign non-party to the underlying litigation is *Sheldon v. Metro-Goldwyn Pictures Corp.*, a case from the 1930s, but the remedy the court fashioned there is not the same as the remedy FICO seeks here.  106 F.2d 45, 51-52 (2d Cir. 1939).   In *Sheldon* Judge Learned Hand awarded profits when MGM used the plaintiff's play as the basis for a film without permission.  *Id.* at 48.  The court reasoned that it was appropriate to include in this award a certain sum based on profits earned by the defendants' foreign subsidiaries because the named defendants received these profits "in the form of money remitted to the United States, or of increase in the value of shares of foreign companies held by the defendants."  *Id.* at 52.

FICO makes no arguments like the ones found in *Sheldon* regarding the connection between the foreign profits it seeks and Federal's revenues.  FICO does not even explain what the "connection" *is* between the use of this software component by a few of Federal's foreign affiliates and the profits of the dozen or so foreign insurance companies whose profits it also seeks.  (*See* Dkt. 773 at 24 (requesting an award of "premium from the sale of insurance by foreign companies . . . in connection with which Blaze Advisor was used").)  FICO has not provided adequate justification to apply the predicate act doctrine in a manner that violates the principle of several liability.

> ## 2.      An equitable award of profits under these circumstances does not further the predicate act doctrine's compensatory purpose.

As Magistrate Schultz and the courts in *Sheldon* and *Petrella v. MGM*, 572 U.S. 663 (2014) recognized, the type of disgorgement that FICO seeks here is equitable in

nature.  FICO asserts that it "may be entitled to disgorge the profits from written premiums generated by certain foreign entities that used Blaze Advisor in Canada, Australia, the United Kingdom and certain other European countries between April 2013 and March 2019 *of $2.5 billion*."  (Dkt. 408 at 44 (emphasis added).)  Magistrate Schultz concluded that this remedy is equitable because "the staggering[7] amount of profits FICO seeks to disgorge vastly outstrips its claim for actual damages."  (Dkt. 588 at 13.)  Because the predicate act doctrine's purpose is to ensure full *compensation* and not to award windfalls, the Court should not exercise its equitable jurisdiction to allow FICO to recover these foreign profits.

Magistrate's Schultz's order and Federal's briefing on its motion to strike FICO's jury demand already provide ample authority to demonstrate that the type of disgorgement FICO seeks in this case is an equitable remedy.  (Dkt. 588; Dkt. 674.)  The various cases FICO cites to support its argument that the predicate act doctrine should apply to Count II, however, primarily deal with requests for damages as opposed to profits.  Only two of these cases involved profit awards—*Sheldon* and *Tire Eng'g & Distribution, Ltd. Liab. Co. v. Shandong Linglong Rubber*, 682 F.3d 292, 307 (4th Cir. 2012).

---

[7] According to one source, the largest indirect profits recovery in the history of copyright litigation is $30.4 million. *See* The Copyright Society of America, *David Wolhfsohn Named Co-Chair of the ABA IP Litigation Committee*, dated August 12, 2013, *available at* http://www.csusa.org/news/136054/David-Wohlfson-Named-Co-chair-of-the-ABA-IP-Litigation-Committee.html. FICO has at times requested that the Court award it the entirety of Federal's gross revenues at issue in this litigation of $30.9 billion – *i.e.*, more than one thousand times the largest indirect profits award that has ever been obtained.

26

Neither the district court nor the Fourth Circuit in *Tire Engineering* ever addressed the proper characterization of the Copyright Act's disgorgement remedy, meaning it was tried before a jury without question. But Judge Learned Hand explicitly acknowledged that Sheldon's request for an award of MGM's profits was equitable in nature. 106 F.2d at 45 (noting appeal arose from "a final decree *in equity* of the District Court for the Southern District of New York") (emphasis added). Consistent with the exercise of its equitable discretion, the Second Circuit in *Sheldon* examined various factors such as the defendants' willfulness and whether the defendants' profits were attributable to other causes like advertising and "the reputation of the stars and the producing company." *Id.* at 49-51. Based on this equitable balancing, Judge Learned Hand determined that it was appropriate to award the plaintiff one fifth of the film's net profits. *Id.* at 51.

More recently, the U.S. Supreme Court in *Petrella v. MGM* reaffirmed Judge Learned Hand's approach. 572 U.S. at 668. In *Petrella* the plaintiff had delayed for many years before bringing her infringement suit. *Id.* at 674. She sought an award of profits in addition to her actual damages. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, CV-09-72-GW(MANX), 2010 WL 11531222, at *6 (C.D. Cal. Feb. 3, 2010). In holding that this delay did not bar the plaintiff's recovery, Justice Ginsburg noted that the "plaintiff's delay can always be brought to bear at the remedial stage, in determining appropriate injunctive relief, and in assessing the 'profits of the infringer ... attributable to the infringement.'" *Petrella*, 572 U.S. at 668. Justice Ginsburg reasoned that the Court might diminish the plaintiff's profits recovery because this recovery was "equitable in this case." *Id.* at 668 n.1. Subsequent courts, including Magistrate Schultz, have

27

recognized the import of this statement and have characterized copyright disgorgement as an equitable remedy where it is sought in addition to, and not as a proxy for, actual damages. *See, e.g.*, *Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1321 (Fed. Cir. 2018).

Setting aside the other reasons set forth above to deny FICO the recovery of profits from these foreign third parties, the Court would be well within its equitable discretion to refuse to apply the predicate act doctrine in the manner FICO seeks because of the following factors:

- FICO has acknowledged that it knew Federal's affiliates were using Blaze for many years before it filed this action (Dkt. 773 at 13.);

- FICO only changed course and asserted use by Federal's affiliates was a breach of the License Agreement to exert additional leverage over Federal in pre-suit negotiations (Dkt. 507 at 13-14);

- Federal is not a willful infringer, instead, it asserts that its uses were licensed;

- As with the remainder of FICO's disgorgement claim, innumerable other factors contributed to Federal's profits from the sale of insurance;

- Finally, there is considerable evidence that this lawsuit is part of an ongoing pattern by FICO of threatening litigation against its customers to extract additional licensing fees from them.  (Dkt. 237 at 20-21; Dkt. 406 at 19.)

Based on the above, the Court should not exercise its equitable discretion by applying the predicate act doctrine to award FICO the foreign profits it seeks.

28

## **CONCLUSION**

Based on the foregoing, Federal respectfully requests the Court grant its motion for summary judgment dismissing Count II of FICO's Second Amended Complaint in its entirety.

Dated:  May 27, 2020

s/ Terrence J. Fleming
Terrence J. Fleming (#0128983)
tfleming@fredlaw.com
Leah C. Janus (#0337365)
ljanus@fredlaw.com
Christopher D. Pham (#0390165)
cpham@fredlaw.com
Ryan C. Young (#0397751)
ryoung@fredlaw.com
Christian V. Hokans (#0400377)
chokans@fredlaw.com
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
(612) 492-7000 (tel.)
(612) 492-7077 (fax)

*Attorneys for Defendants*