## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation, | ) ) ) | Case No. 16-cv-1054 (WMW/DTS) |
| Plaintiff, | ) ) | |
| v. | ) ) | **Jury Trial Demanded** |
| FEDERAL INSURANCE COMPANY, an Indiana corporation and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation, | ) ) ) ) ) ) | **FILED UNDER SEAL** |
| Defendants. | ) ) | |

### PLAINTIFF FAIR ISAAC CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SANCTIONS FOR UNTIMELY SUPPLEMENTATION OF INTERROGATORY ANSWER

## **TABLE OF CONTENTS**

I.     Introduction ................................................................................ 1

II.    Factual Background ..................................................................... 2

     A.    Defendants' Initial Answer to Interrogatory No. 17 Suggested the Gross Written Premium Associated with the CUW Application was Inflated ................................................................................ 2

     B.    Defendants' Damages Expert Raised the "Double Counting" Issue But Could Not Explain How to Remove Duplicated Gross Written Premium. ................................................................................ 5

     C.    Federal's Main Witness to Explain the "Double Counting" Issue Could Not. ................................................................................ 6

     D.    On the Eve of Trial—September 29, 2020—Defendants Served Amended Responses to Interrogatory No. 17 that Halved Gross Written Premium Associated with the CUW Application. .................. 8

III.    Argument ................................................................................ 10

     A.    Defendants' September 2020 Amended Response to Interrogatory No. 17 is Untimely Supplementation. ......................................... 10

     B.    As a Sanction, Defendants' Belated Interrogatory Responses Cannot Be Used in this Litigation .......................................................... 12

          1.    No Justification Exists for Defendants' Untimely Supplementation. .............................................................. 12

          2.    Defendants' Supplementation Prejudices FICO. ............................. 14

          4.    Sanctions, Not a Continuance, are Necessary. ................................. 16

IV.    Conclusion ................................................................................ 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bresler v. Wilmington Tr. Co.*,
  855 F.3d 178 (4th Cir. 2017) .................................................................... 17

*Dillon v. United States*,
  No. 5:12-cv-09314, 2015 U.S. Dist. LEXIS 31798 (S.D. W. Va. Mar.
  16, 2015) ............................................................................................... 14, 15

*Havenfield Corp. v. H & R Block, Inc.*,
  509 F.2d 1263 (8th Cir. 1975) .................................................................. 14

*Hysitron Inc. v. MTS Sys. Corp.*,
  No. 07-1533, 2010 U.S. Dist. LEXIS 171 (D. Minn. Jan. 4, 2010)............................ 10

*Jones Creek Inv'rs, LLC v. Columbia Cty.*,
  No. CV 111-174, 2014 U.S. Dist. LEXIS 199017 (S.D. Ga. Oct. 29,
  2014) ........................................................................................................ 16

*K&N Eng'g, Inc. v. Spectre Performance*,
  No. EDCV 09-1900VAP, 2011 U.S. Dist. LEXIS 164981 (C.D. Cal.
  May 12, 2011)........................................................................................... 10

*Reid v. Lockheed Martin Aeronautics Co.*,
  205 F.R.D. 655 (N.D. Ga. 2001).............................................................. 14

*Sandata Techs., Inc. v. Infocrossing, Inc.*,
  No. 05 Civ. 09546, 2007 U.S. Dist. LEXIS 85176 (S.D.N.Y. Nov. 16,
  2007) ........................................................................................................ 14

*Wing Enters. v. Tricam Indus.*,
  No. 17-cv-1769, 2018 U.S. Dist. LEXIS 204669 (D. Minn. Dec. 4,
  2018) .................................................................................................... 10, 12

**Other Authorities**

Fed. R. Civ. P. 1.......................................................................................... 14

Fed. R. Civ. P. 26....................................................................................*passim*

Fed. R. Civ. P. 37.................................................................................... 2, 12

## I.     Introduction

This motion seeks to redress Federal's last-minute substantial reduction of the amount of gross written premium that forms the factual basis of Fair Isaac Corporation's ("FICO") disgorgement claim.  Eighteen (18) months after the close of discovery—after expert reports and summary judgment—Defendants Federal Insurance Company ("Federal") and ACE American Insurance Company ("Ace") (collectively "Defendants"), served their Ninth Supplemental Answer to Interrogatory No. 17.[1]  In this answer, Defendants reduced the reported gross written premium connected with the CUW (Commercial Underwriting Workstation) application by over 50%, a reduction of more than $15 billion.

This supplementation is not timely under Rule 26(e).  Defendants have no justification for the untimely supplementation—they admit the facts underlying the calculations are not new and were always within Defendants' control.  Defendants' supplementation is inconsistent with its past, verified interrogatory answers; inconsistent with the deposition testimony of the employee who verified the interrogatory answers; and inconsistent with Defendants' own damages expert's analysis.  Whether or not Defendants' latest supplementation is accurate, Defendants chose not to perform their de-duplication analysis until well after the close of discovery.  Defendants' supplementation

---

[1] Defendants' Ninth Supplemental Answer to Interrogatory No. 17 includes the gross written premium associated with several applications using Blaze Advisor.  For the purposes of this motion, the current dispute only relates to the supplementation of the answer related to the CUW application.

1

on the eve of trial[2] severely prejudices FICO.  FICO should not be prejudiced, and

Defendants should not benefit from the delay.

The responses must be stricken under Rule 37(c)(1). Alternatively, FICO requests

an order allowing FICO to take the following discovery, at Defendants' expense:

1. A second deposition of C. Chase McCarthy, the individual who verified the
   relevant portion of Interrogatory No. 17 in the Sixth, Eighth, and Ninth
   Supplemental Answers.

2. An additional Rule 30(b)(6) deposition of Defendants if Mr. McCarthy is
   unable to explain methodology differences between the Ninth Supplemental
   Answer and the prior answers.

FICO also seeks an Order requiring Defendants to pay all attorneys' fees and costs

associated with preparing for and taking these depositions and bringing this motion.

## II.    Factual Background

### A.    Defendants' Initial Answer to Interrogatory No. 17 Suggested the Gross Written Premium Associated with the CUW Application was Inflated.

FICO served Interrogatories Nos. 17-20 directed to the amount of gross written

premium realized in connection with the use of Blaze Advisor nearly three years ago, on

December 29, 2017. (Declaration of Heather J. Kliebenstein (hereafter "Kliebenstein

Decl."), Exhibit 1 at 2.)  Interrogatory No. 17 states:

INTERROGATORY NO. 17: For all insurance policies in connection with
which the Blaze Advisor® software was used, the gross written premium of
Federal and the gross written premium of each related company, including
the specific identification of each related company, for each quarter from
March 30, 2016 to date. For clarity, this Interrogatory is not seeking
investment income, other income, or capital and surplus accounts.

---

[2] On October 8, 2020—less than 10 days after Defendants served the Ninth Supplemental
Answer to Interrogatory No. 17—Judge Wright's chambers contacted the parties
regarding what the parties see as the duration of the jury trial.

(*Id.*)  The gross written premium identified in response to Interrogatory Nos. 17-20, including Interrogatory No. 17's identification of gross written premium associated with the CUW application, forms the factual basis for the revenue Defendants earned through their infringing use of Blaze Advisor, and is critical to FICO's disgorgement claim under the Copyright Act.

Initially, Federal[3] refused to answer this interrogatory (and Interrogatory Nos. 15-16 and 18-20) absent an order from this Court.  (Dkt. 60 at 9 n.1; *see also* Kliebenstein Decl., Exhibit 2.)  On February 16, 2018, this Court ordered Federal to respond to related Requests for Production and effectively these interrogatories.  (Feb. 16, 2018 Order, Dkt. 96; affirmed April 24, 2018 Decision, Dkt. 108).  Defendants finally served a response on October 26, 2018.  (Kliebenstein Decl., Exhibit 3.)  The response was incomplete, only identifying gross written premium in connection with the use of 2 out of 18 software applications that used Blaze Advisor.  (Kliebenstein Decl., ¶ 6.)

Notably for this motion, the response did not contain gross written premium from policies that touched Blaze Advisor in the CUW application.  Defendants finally provided numbers associated with the CUW application in their February 27, 2019, Fourth Supplemental Response to Interrogatory No. 7: $32.2 billion in gross written premium from 574,688 policies.  (Kliebenstein Decl., Exhibit 4.)

---

[3] Defendant ACE American Insurance Company had not yet been added to the case as a defendant. ACE American was added as a defendant on September 11, 2018. (Dkt. 132.)

In a footnote, Defendants' response suggested some duplication existed in the gross written premium reported for the CUW application:

> We understand that this financial information includes policies that were brought in under a system that includes policies that are renewed using Blaze, but automatically at the same time includes the prior transaction involving the same policy regardless whether it uses Blaze. We are seeking a way to not include the prior policy since it results in the financial information having inflated numbers.

(*Id.*, Exhibit 4 at 11 n.1.)  Defendants included the same footnote in their Fifth through Eighth Supplemental Answers on the timeline below:

| Ans. No. | Date | Comment |
| --- | --- | --- |
| 4th Supp. Ans. | 2/28/2019 | CUW reports $23.2 Billion in premiums and 574,688 policies |
| 5th Supp. Ans. | 3/2/2019 | CUW reports $23.2 Billion in premiums and 574,688 policies |
| 6th Supp. Ans. | 3/21/2019 (At close of discovery) | CUW reports $23.2 Billion in premiums and 574,688 policies |
| 7th Supp. Ans. | 7/16/2019 | CUW reports $23.2 Billion in premiums and 574,688 policies |
| 8th Supp. Ans. | 6/23/2020 | CUW reports $30.2 Billion in premiums and 846,159 policies (completes reporting for 2019 and 2020 YTD) |

(*Id.*, Exhibit 5 at 12 n.1 (Fifth Supp. Ans.); *id.*, Exhibit 6 at 14 n.1 (Sixth Supp. Ans.); *id.*, Exhibit 7 at 6 n.1 (Seventh Supp. Ans.); *id.*, Exhibit 8 at 6 n.1 (Eighth Supp. Ans.).)

Discovery closed on March 22, 2019 (Dkt. 205 at 1) with no further explanation of the "double counting."

**B.     Defendants' Damages Expert Raised the "Double Counting" Issue But Could Not Explain How to Remove Duplicated Gross Written Premium.**

Defendants did not de-duplicate the CUW gross written premium during expert discovery.  Defendants' damages expert, Mr. Christopher Bakewell, issued a report on May 17, 2019.  In that report, Mr. Bakewell opined that FICO's gross written premium calculation for the CUW application was overstated and contained duplicated revenue:

> 182.    Federal also prepared the revised gross written premiums for CUW (a domestic application), an inventory management tool that is often used in conjunction with other applications when writing a single insurance policy. In this revised data [File titled: "Blaze IM Extract-Final"], removed are any policies which ran through both CUW and another application, specifically CSI eXPRESS or Premium Booking and the resulting data shows policies that only ran through the CUW application. The policies (and associated gross written premiums) which ran through both CUW and CSI eXPRESS or Premium Booking would have also been captured in the gross written premiums data relied upon by Mr. Zoltowski for CSI eXPRESS or Premium Booking applications (as discussed in the example above). Using this revised CUW data effectively removes the duplication of certain gross written premiums in the CUW data used by Mr. Zoltowski. For example, in Mr. Zoltowski's analysis, the premiums associated with any single policy which touched each of CUW, CSI eXPRESS and Premium Booking would be counted three times in the total gross written premiums.

(*Id.*, Exhibit 9, ¶¶ 182-184, Exhibit 9.0.)  The Bakewell Report cited to a file titled "Blaze IM Extract-Final" as the document used to prepare "revised CUW data" that reduced the gross written premiums for "double counting."  (*Id.*, ¶¶ 183-184.)  The Bakewell Report presented the following:

|  | **2016** | **2017** | **2018** |
|---|---|---|---|
| **Revised CUW Data in Bakewell Report** | $3.819 billion | $2.526 billion | $2.149 billion |
| **Interrogatory No. 17 Data** | $7.579 billion | $8.533 billion | $6.201 billion |

(*Id.*, ¶ 183.)

FICO examined Mr. Bakewell at his deposition regarding his methodology used to reduce the CUW gross written premium. (*Id.*, Exhibit 10 at 103-112.) Mr. Bakewell testified he sorted a document titled "Blaze IM Extract-Final" by policy number and removed any duplicates. (*Id.*, 106:18-107:15.) The document titled "Blaze IM Extract-Final" was not produced during discovery.

Despite Mr. Bakewell's calculations, Defendants did not amend their interrogatory answers to remove allegedly double counted gross written premium dollars after service of the Bakewell Report. Defendants served their Seventh (July 16, 2019) and Eighth (June 23, 2020) Supplemental Answers to Interrogatory No. 17. (*Id.*, Exhibits 7, 8.) These responses did not adopt Mr. Bakewell's calculations or make any modifications to the reported gross written premium associated with the CUW application.

### C.   Federal's Main Witness to Explain the "Double Counting" Issue Could Not.

A Federal employee named C. Chase McCarthy is an important witness on this topic. Mr. McCarthy verified a number of Federal's responses to Interrogatory No. 17. (*Id.*, Exhibits 12, 13.) The Bakewell Report identified Mr. McCarthy as the individual who explained the "double counting" issue to Mr. Bakewell. (*Id*. at Ex. 9 at fn. 260, 261.) FICO deposed Mr. McCarthy on April 23, 2020[4] about the so-called "double counting." Mr. McCarthy could not explain how to remove duplicated gross written

---

[4] Mr. McCarthy was deposed in April 2020 pursuant to the Court's sanctions against Defendants for untimely adding witnesses to the initial disclosures at the close of discovery. (*See* Dkt. 224, 226, 288 (Order).)

premium from Interrogatory No. 17.  For example, Mr. McCarthy could not recall any

part of his conversation with Mr. Bakewell:

> Q. Do you recall speaking with Chubb's damages expert who's working on this case?
> A. I may have -- through your prompting and by the question, I think I may have had a conversation. I just – it's not a clear memory.  But I can imagine I would have spoken with someone like that.
> Q. Do you recall any parts of that conversation?
> ***
> Q. And then my follow-up was: Do you recall any parts of that conversation?
> A. No. Not really, no.

(*id.*, Exhibit 11, 79:15-81:7 (objection omitted).)  Mr. McCarthy could not identify the

Blaze IM Extract-Final document Mr. Bakewell used:

> Q. … So this was produced to us titled "Blaze IM Extract Final." This is simply one page of possibly a 10,000-page text file.
> A. Mm-hmm.
> Q. Are you familiar with this -- the data in this file?
> A. No, I'm not.
> Q. Chubb's damages expert characterized this document as the gross written premium data that removes policies that ran through both CUW and another application, specifically CSI Express and Premium Booking.  Does that help refresh your recollection?
> A. No.
> ***
> Q. Yes. And it -- when it was produced to us, it was entitled "Blaze IM Extract Final."
> A. Okay. I'm not familiar with this document.
> Q. It was produced to us as a very large text file.
> A. No.
> Q. Does that refresh your recollection?
> A. No. I don't recall this document.

(*Id.*, 77:6-77:19, 79:7-14).  Mr. McCarthy further testified that any overstatement of

CUW's gross written premium would be greater in 2016 than 2017 or later.  (*Id.*, 63:5-

64:23.)  Mr. McCarthy admitted that de-duplication could "[t]echnically" be done but not

7

based on the documentation produced by Defendants "as it is." (*Id.*, 72:15-24.) FICO

received no useful information from Defendants' key witness on the "double counting."

**D.    On the Eve of Trial—September 29, 2020—Defendants Served Amended Responses to Interrogatory No. 17 that Halved Gross Written Premium Associated with the CUW Application.**

On September 29, 2020, Defendants served their Ninth Supplemental Answer to

Interrogatory No. 17. (*Id.*, Exhibit 14.) Defendants significantly and substantially

reduced the reported gross written premium associated with the CUW application by over

50%:

|       | 8th Supp. Ans. | 9th Supp. Ans. | Δ (9th-8th) | % Δ (9th-8th) |
|-------|----------------|----------------|-------------|---------------|
| 2016  | $7,622,963,845.71 | $4,178,036,656.06 | ($3,444,927,189.65) | (45.2%) |
| 2017  | $8,645,035,873.57 | $3,521,674,450.00 | ($5,123,361,423.57) | (59.3%) |
| 2018  | $6,287,184,326.76 | $2,955,939,340.00 | ($3,331,244,986.76) | (53.0%) |
| 2019  | $7,672,769,437.64 | $3,778,743,383.00 | ($3,894,026,054.64) | (50.8%) |
| Total | $30,227,953,483.68 | $14,434,393,829.06 | ($15,793,559,654.62) | (52.2%) |

(*Compare id.*, Exhibit 8 at 6-8 *with id.*, Exhibit 14 at 6-9.) Defendants did not report any

change to the number of policies touching Blaze Advisor for years 2016-2018.

|       | 8th Supp. Ans. | 9th Supp. Ans. | Δ (9th-8th) |
|-------|----------------|----------------|-------------|
| 2016  | 207,429 | 207,429 | 0 |
| 2017  | 229,879 | 229,879 | 0 |
| 2018  | 213,763 | 213,763 | 0 |
| 2019  | 195,088 | 122,541 | (72,547) |
| Total | 846,159 | 773,612 | (72,547) |

(*Compare id.*, Exhibit 8 at 6-8 *with id.*, Exhibit 14 at 6-9.) Defendants provided no

explanation for these new calculations, but included the following footnote:

> This financial information includes policies that were brought in under a
> system that includes policies that are renewed using Blaze, but automatically
> at the same time includes the prior transaction involving the same policy
> regardless whether it uses Blaze. Federal has used reasonable efforts to not

include the prior policy since it results in the financial information having inflated numbers.

(*Id.*, Exhibit 14 at 6 n.1.)  Mr. McCarthy again verified the data.  (*Id.*, Exhibit 15.)

FICO has no information that allows FICO to re-create these figures or test the accuracy.  Mr. Bakewell could not explain in his deposition how he used the CUW-IM Extract file to remove "double counted" premiums.  Mr. McCarthy was unable to describe a methodology for removing alleged duplication in his deposition.  (*Id.*, Exhibit 11, 76:25-77:19, 79:7-81:7).  Notably, the September 29, 2020, answer does not match the amounts presented in the Bakewell Report:

|  | **2016** | **2017** | **2018** |
|---|---|---|---|
| **CUW Data in Bakewell Report** | $3.819 billion | $2.526 billion | $2.149 billion |
| **September 29, 2020 Data** | $4.178 billion | $3.521 billion | $2.995 billion |

(*Compare id.*, Exhibit 9 *with id.*, Exhibit 14.)

In the parties' meet and confer on October 12, 2020, counsel for Defendants explained the supplemental responses were late because it took numerous employee hours to conduct the calculations.  (Kliebenstein Decl., ¶ 19.)  Employees were unable to attend to the calculations due to workloads, absences and turnover.[5]  (*Id.*)  In short, Defendants could have provided this information earlier but chose to allocate resources to other tasks.  Defendants did not dispute the facts were within their possession before

---

[5] Interrogatory No. 17 was served in December 2017.  (Kliebenstein Decl., Exhibit 1.) Discovery closed in March 2019.  (Dkt. 205.) Defendants had substantial amounts of time to perform their de-duplication analysis.  Defendants' analysis should have been conducted well in advance of any concerns or impairments related to Covid-19.

discovery closed and well before expert discovery.  The eve of trial is not the appropriate time for this supplementation.

## III.   Argument

### A.   Defendants' September 2020 Amended Response to Interrogatory No. 17 is Untimely Supplementation.

#### 1.   Rule 26(a) Requires Timely Supplementation.

Defendants' supplementation of Interrogatory No. 17 is improper under the Rules. Rule 26(e)(1) states: "A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response: (A) ***in a timely manner*** if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . ." (emphasis added).

Timeliness under Rule 26(e)(1)(A) is measured from "the date when the facts are discovered, not some nebulous date when counsel first realized that there was some significance to them." *Wing Enters. v. Tricam Indus.*, No. 17-cv-1769 (ECT/ECW), 2018 U.S. Dist. LEXIS 204669, at *33 (D. Minn. Dec. 4, 2018) (quoting *Longlois v. Stratasys, Inc.*, 88 F. Supp. 3d 1058, 1077 (D. Minn. 2015)).  If there is an untimely delay between finding the new facts and disclosing them through supplementation, then supplementation has not been effectuated in a timely manner.  *Hysitron Inc. v. MTS Sys. Corp.*, No. 07-1533 (ADM/AJB), 2010 U.S. Dist. LEXIS 171, at *17 (D. Minn. Jan. 4, 2010); *K&N Eng'g, Inc. v. Spectre Performance*, No. EDCV 09-1900VAP (DTBx), 2011 U.S. Dist. LEXIS 164981, at *35 (C.D. Cal. May 12, 2011) (excluding expert's corrective

advertising recalculation as an additional opinion and not supplementation where
information supporting the opinion was previously in expert's possession).

> **2.     Defendants' September 29, 2020, Supplementation to
> Interrogatory No. 17 is Untimely.**

Here, Defendants' Ninth Supplemental Answer to Interrogatory No. 17 is
untimely.  Defendants' February 2018 response to Interrogatory No. 17 disclosed the
possibility of double counting with respect to the gross written premiums touching the
CUW application.  (*Id.*, Exhibit 4 at 11 n.1.)  Defendants could have and should have
performed the de-duplication analysis then.  Mr. McCarthy admitted it was
"[t]echnically" possible.  (Kliebenstein Decl., Exhibit 11, 72:15-24.)  Defendants chose
not to.

Defendants repeated this theme in the May 2019 Bakewell Report.  The Bakewell
Report contended there was duplication of gross written premium associated with the
CUW application. (*Id.* at Exhibit 9, ¶¶ 182-184; *Id.*, Exhibit 9.0.)  But Defendants did not
adopt the Bakewell Report's calculations.  Instead, Defendants continued to supplement
Interrogatory No. 17 with gross written premiums consistent with those previously
disclosed during discovery:

| Supp. Ans. No. | Date | Comment |
|---|---|---|
| 6th | 3/21/2019 | $23.2 Billion in premiums and 574,688 policies |
| 7th | 7/16/2019 | $23.2 Billion in premiums and 574,688 policies |
| 8th | 6/23/2020 | $30.2 Billion in premiums and 846,159 policies[6] |

---

[6] Included all of 2019 and 2020 YTD, which coincided with Defendants ending use of
Blaze Advisor.

(Kliebenstein Decl., Exhibits 6-8.)  The conclusion to draw is twofold: (1) Defendants were always in possession of the facts necessary to calculate the gross written premium associated with the CUW application; and (2) Defendants chose not to perform the analysis reflected in the September 2020 Ninth Supplemental Answer to Interrogatory No. 17 in a timely manner. Defendants' September 2020 disclosures are untimely under Rule 26(e).

### B.    As a Sanction, Defendants' Belated Interrogatory Responses Cannot Be Used in this Litigation.

The sanction of exclusion of evidence is appropriate where a party fails to comply with Rule 26(e) and timely disclose supplemental evidence.  Under Rule 37, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  When determining whether exclusion of the information contained in an untimely supplement is warranted, the Eighth Circuit balances four factors:

1.  Importance of the evidence;

2.  Justifications for failure to comply with the requirements of Rule 26;

3.  Prejudice to the opposing party if the evidence is allowed to be used; and

4.  Whether a continuance would effectively cure the prejudice.

*Wing Enters.*, 2018 U.S. Dist. LEXIS 204669, at *24.  Here, the factors favor exclusion.

### 1.    No Justification Exists for Defendants' Untimely Supplementation.

There is no justification for the September 2020 fundamental change in the amount of gross written premium associated with the CUW application that used Blaze

Advisor.  Defendants were aware of the possibility of "double counting" at least as early as February 28, 2019—the date on which Defendants' first reported gross written premium associated with the CUW application.  Mr. McCarthy testified Defendants were "[t]echnically" able to calculate the gross written premium associated with the CUW application and perform the analysis now reflected in the September 2020 Ninth Supplemental Answer to Interrogatory No. 17.  (Kliebenstein Decl., Exhibit 11, 72:15-24.)  Defendants did not.

Defendants had other opportunities to cure their lack of disclosure.  The May 2019 Bakewell Report attempted to remove duplicated gross written premium associated with the CUW application.  (*Id.*, Exhibit 9, ¶¶ 182-184, Exhibit 9.0.)  Defendants chose not to update their interrogatory answers, suggesting Bakewell's calculations were wrong.

Defendants had a final opportunity to clarify the record on the alleged double counting in the McCarthy deposition.  FICO deposed Mr. McCarthy—the individual who verified the interrogatory responses and provided information to Mr. Bakewell (Kliebenstein Decl., Exhibits 9, 12-13, 15)—on this issue in April of 2020 (*id.*, Exhibit 11).  Mr. McCarthy had no information bearing on Defendants' de-duplication analysis or the Ninth Supplemental Answer.  He could not recall his conversation with Mr. Bakewell or provide any facts to help FICO understand Federal's duplication argument.  (*Id.*, 77:6-77:19, 79:1-81:7.)

Defendants will argue that running the calculations was difficult to perform and required a significant amount of employee time.  This excuse is irrelevant.  Defendants possessed, at all times, the facts to perform the purported de-duplication calculations.

Defendants should not be permitted to benefit from their untimely supplementation.  The Federal Rules bar supplementation with new theories or to add information that was available at the time of prior disclosures.

Self-serving excuses—such as workload—do not toll the duty to timely supplement.  Rule 26(e) requires supplementation of new facts, not new calculations based upon existing facts.  *Havenfield Corp. v. H & R Block, Inc*., 509 F.2d 1263, 1272 (8th Cir. 1975); *Sandata Techs., Inc. v. Infocrossing, Inc*., No. 05 Civ. 09546, 2007 U.S. Dist. LEXIS 85176, at *21-22 (S.D.N.Y. Nov. 16, 2007) (rejecting untimely supplemental report that benefitted only the party producing the report); *see also Dillon v. United States*, No. 5:12-cv-09314, 2015 U.S. Dist. LEXIS 31798, at *4 (S.D. W. Va. Mar. 16, 2015) ("[T]hat duty to supplement does not create a license to delay making the appropriate disclosures on time when the information is available."); *Reid v. Lockheed Martin Aeronautics Co*., 205 F.R.D. 655, 662 (N.D. Ga. 2001) ("In short, Rule 26 imposes a *duty* on Plaintiffs; it grants them no *right* to produce information in a belated fashion." (emphasis in original)).  Defendants' untimely supplementation on the eve of trial benefits only them.  It does not benefit a just, speedy, and inexpensive determination of the case.  *See* Fed. R. Civ. P. 1.

## 2.   Defendants' Supplementation Prejudices FICO.

Defendants' untimely supplementation severely prejudices FICO at this late stage of the case.  The late disclosure prevents FICO from investigating and understanding Defendants' methodology used to modify the gross written premium in connection with the use of the CUW application.  FICO diligently investigated Defendants' knowledge of

duplicated gross written premium throughout discovery.  FICO deposed Mr. Bakewell and Mr. McCarthy on topics related to the duplication of gross written premium in CUW.  *See* Section II(B)-(C), *supra*.  Mr. Bakewell's report cited exclusively an interview with Mr. McCarthy for the basis of duplication.  (Kliebenstein Decl., Exhibit 9, ¶¶ 182-184.)  But Mr. McCarthy could not recall any part of his conversation with Mr. Bakewell.  (*Id.*, Exhibit 11, 79:15-81:7.)  Mr. McCarthy also could not identify the Blaze IM Extract-Final document Mr. Bakewell used.  (*Id.*, 77:6-77:19, 79:7-14.)

FICO was unable to use this information during the expert discovery phase.  FICO's damages expert Neil Zoltowski prepared his expert report relying on Defendants' Sixth Supplemental Answer to Interrogatory No. 17.  (*See, e.g.*, Kliebenstein Decl., Exhibit 16, Schedule 10.1 footnotes (c), (d).)  Defendants' Ninth Supplemental Answer reduces the infringing revenue from CUW by over $15 billion—without explanation.  FICO's expert is left without facts to understand how Defendants performed the calculations to "de-dupe" the gross written premium.  FICO's expert is unable to verify and test the accuracy of the calculations.

FICO is and has been diligently preparing for trial.  Defendants' untimely supplementation distracts from FICO's preparations.  The time for discovery and analysis has long since passed.  Remedial sanctions are necessary.

### 3.    Defendants' Untimely Supplementation is of Limited Importance at this Stage of the Proceedings.

At first blush, calculations reducing Defendants' damages exposure associated with the CUW application by $15.8 Billion (52.2%) may seem important.  But the

developed record in this case shows the calculations are likely wrong.  In his April 2020

deposition, Mr. McCarthy told FICO that any overstatement of CUW's gross written

premium would be greater in 2016 than 2017 or later.  (*Id.*, Exhibit 11, 63:5-64:23.)

Either Mr. McCarthy or the calculations are wrong.  The new calculations show the

overstatement to be lowest in 2016, not in 2017-2019 as Mr. McCarthy testified.

|  | 8th Supp. Ans. | 9th Supp. Ans. | Δ (9th-8th) | % Δ (9th-8th) |
|---|---|---|---|---|
| 2016 | $7,622,963,845.71 | $4,178,036,656.06 | ($3,444,927,189.65) | (45.2%) |
| 2017 | $8,645,035,873.57 | $3,521,674,450.00 | ($5,123,361,423.57) | (59.3%) |
| 2018 | $6,287,184,326.76 | $2,955,939,340.00 | ($3,331,244,986.76) | (53.0%) |
| 2019 | $7,672,769,437.64 | $3,778,743,383.00 | ($3,894,026,054.64) | (50.8%) |
| Total | $30,227,953,483.68 | $14,434,393,829.06 | ($15,793,559,654.62) | (52.2%) |

Mr. Bakewell allegedly performed a de-duplication analysis.  He, too, arrived at

different numbers:

|  | 2016 | 2017 | 2018 |
|---|---|---|---|
| **CUW Data in Bakewell Report** | $3.819 billion | $2.526 billion | $2.149 billion |
| **September 29, 2020 Data** | $4.178 billion | $3.521 billion | $2.995 billion |

(Kliebenstein Decl., Exhibit 9, ¶¶ 182-184, Exhibit 9.0.)

**4.    Sanctions, Not a Continuance, are Necessary.**

A continuance to ameliorate the prejudice to FICO is not warranted.  The case is

not in its infancy.  Discovery is long closed.  (*See* Dkt. 205.)  The Court has issued an

order on summary judgment.  (Dkt. 731.)  The parties are preparing for trial.  Judge

Wright recently inquired with the parties regarding the foreseeable length of trial.  While

FICO "may have the ability to cure the surprise through diligent effort, it would be an

injustice to make [it] do so."  *Jones Creek Inv'rs, LLC v. Columbia Cty.*, No. CV 111-

174, 2014 U.S. Dist. LEXIS 199017, at *16 (S.D. Ga. Oct. 29, 2014).  FICO should be

permitted to prepare its trial strategy based on the record that was timely developed in this case. *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017) ("The purpose of Rule 26(a) is to allow litigants to adequately prepare their cases for trial and to avoid unfair surprise.") (internal citation omitted)). Delaying trial any further prejudices FICO as this case is approaching 4.5 years in length. The prejudice and harm to FICO are real. Defendants' Ninth Supplemental Answer to Interrogatory No. 17 must be struck.

Alternatively, FICO requests the Court allow FICO to take the following additional discovery:

1. A second deposition of Mr. Chase McCarthy, the individual who verified the relevant portion of Defendants' Interrogatory No. 17 answers.

2. One additional 30(b)(6) deposition if Mr. McCarthy is unable to answer FICO's questions fully.

FICO requests the Court also order that Federal pay all fees and costs relating to the preparation and taking of these depositions and bringing this motion.

## IV.  Conclusion

A fundamental change to the damages base, without explanation, on the eve of trial is unjustified and severely prejudicial to FICO. Remedial sanctions, including striking Defendants' Ninth Supplemental Answer to Interrogatory No. 17 and/or requiring Defendants to present witnesses for deposition, are necessary to cure the prejudice at the late stage of the case.

Dated: October 28, 2020

MERCHANT & GOULD P.C.

/s/ Heather Kliebenstein
Allen Hinderaker, MN Bar # 45787
Heather Kliebenstein, MN Bar # 337419
Michael A. Erbele, MN Bar # 393635
Joseph W. Dubis, MN Bar # 398344
MERCHANT & GOULD P.C.
150 South Fifth Street
Suite 2200
Minneapolis, MN  55402
Tel: (612) 332-5300
Fax: (612) 332-9081
ahinderaker@merchantgould.com
hkliebenstein@merchantgould.com
merbele@merchantgould.com
jdubis@merchantgould.com

*Attorneys for Plaintiff Fair Isaac Corporation*