## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

FAIR ISAAC CORPORATION,

    Plaintiff,

  v.

FEDERAL INSURANCE COMPANY,
an Indiana corporation, and ACE
AMERICAN INSURANCE COMPANY,
a Pennsylvania corporation,

    Defendants.

Court File No.  16-cv-1054 (WMW/DTS)

**MEMORANDUM IN OPPOSITION
TO FICO'S MOTION FOR
SANCTIONS STRIKING
FEDERAL'S NINTH
SUPPLEMENTAL ANSWER TO
INTERROGATORY NO. 17**

---

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................ 4

BACKGROUND ................................................................................................. 6

I.     FEDERAL'S NINTH SUPPLEMENTAL ANSWER TO FICO'S
INTERROGATORY NO. 17. ..................................................................... 6

II.    FEDERAL'S SIGNIFICANT GOOD-FAITH EFFORTS TO ANSWER
FICO'S INTERROGATORY NO. 17. ........................................................ 7

    A.    During Discovery, Federal Provides the Gross Written Premium
Numbers for Years 2016, 2017, and 2018 as Requested by
Interrogatory No. 17. ..................................................................... 8

    B.    Federal's Damages Expert Christopher Bakewell Refines the Gross
Written Premiums for Years 2016, 2017, and 2018. ..................... 10

    C.    Federal's Eighth Supplemental Answer Provides Gross Written
Premiums for CUW-IM for the Year 2019. ................................... 11

    D.    Federal IT Employees Further Refine the 2019 Numbers Which Are
Provided in the 9th Supplemental Answer. ................................... 12

III.    THIS IS FICO'S SIXTH REQUEST FOR SANCTIONS, NONE OF
WHICH HAVE BEEN GRANTED. ........................................................ 14

ARGUMENT ................................................................................................... 15

I.     FEDERAL'S NINTH SUPPLEMENTAL ANSWER IS TIMELY AND
ADMISSIBLE UNDER THE FEDERAL RULES. ................................. 15

    A.    The Ninth Supplemental Answer was Timely. ............................... 15

        1.    Contrary to FICO's Arguments, there was no duty to
supplement the 2016, 2017, and 2018 numbers provided in
the Ninth Supplemental Answer. .......................................... 16

        2.    The new 2019 gross written premiums were timely
supplemented. ...................................................................... 17

    B.    Any Failure to Supplement was Substantially Justified and
Harmless. ..................................................................................... 17

II.    THE SANCTION OF EXCLUSION OF EVIDENCE IS
INAPPROPRIATE. ................................................................................ 18

A.      Exclusion of Evidence is a Drastic Sanction that Should be Used
        Sparingly. ....................................................................................... 18

B.      The Four Factors Weigh Against Exclusion of Evidence. .............. 19

        1.      The Evidence is Important to Federal's Defense of FICO's
                Speculative Disgorgement of Profits Claim. ....................... 19

        2.      Any Failure by Federal to Timely Supplement is Justified and
                There Is No Evidence of Bad Faith or Willfulness. ............. 20

        3.      FICO will not be prejudiced if the information is not
                excluded. ............................................................................ 21

        4.      Continuance is available to permit depositions and cure any
                prejudice to FICO. .............................................................. 21

CONCLUSION .......................................................................................... 22

Defendants Federal Insurance Company and ACE American Insurance Company (collectively, "Federal") submit this Memorandum in Opposition to Plaintiff Fair Isaac Corporation's ("FICO") Motion for Sanctions filed October 28, 2020, which seeks to strike Federal's Ninth Supplemental Answer to Interrogatory No. 17.  (*See* Dkt. Nos. 815-824.)

### INTRODUCTION

On five prior occasions, FICO has moved for sanctions regarding various discovery matters.  This Court denied all five prior motions.  Now FICO has filed a sixth motion for sanctions on a new topic, namely certain data contained in Federal's Ninth Supplemental Answer to Interrogatory No. 17 (the "Ninth Supplemental Answer"), which was served on September 28, 2020.  In the Ninth Supplemental Answer, Federal has supplied updated data regarding premium underwritten by Federal and its affiliates via Federal's own "CUW-IM" software program,[1] which happened to use FICO's rather rudimentary Blaze software.

By providing this data to FICO, Federal complied with its obligation to supplement its discovery responses on an ongoing basis.  As explained in greater detail below, this required a significant undertaking and presented numerous technical hurdles.  Despite this, Federal used its best efforts to obtain and provide accurate information.  The product of these efforts is the Ninth Supplemental Answer, which provides more refined and accurate gross written premium numbers associated with Federal's CUW-IM

---

[1] The Ninth Supplemental Answer provided gross written premiums associated with other Federal applications that used Blaze.  However, FICO's motion only seeks to strike the answers concerning the CUW application.

application for underwriting.    FICO now argues that the CUW-IM gross written premiums should be stricken as untimely.  FICO's motion should be denied.

_First_, Federal previously provided the 2016 through 2018 gross written premium numbers to FICO in the form of the report of Federal's damages expert, which report was supplied to FICO on May 17, 2019.  Therefore, these figures have been readily available to FICO for at least 18 months—and FICO never objected to them.  Moreover, Judge Wright has already decided Federal's damages expert's opinions relying on these figures are admissible.  (Dkt. 731 at 22, n. 5.)   Accordingly, Federal was under no duty to supplement as to the years 2016 through 2018.  _See_ Fed. R. Civ. P. 26(e)(1) (duty to supplement only applies "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing…").[2] FICO's motion with respect to the 2016 through 2018 figures is an improper attempt to strike the underlying data from Federal's damages expert's opinions that Judge Wright has already decided are admissible.

_Second_, the Ninth Supplemental Answer was timely regarding the 2019 CUW-IM gross written premium data.  Federal first provided data on the 2019 CUW-IM gross written premiums in its Eighth Supplemental Answer on June 15, 2020, at which time Federal informed FICO that the numbers were inflated.  FICO has never claimed that the Eighth Supplemental Answer was untimely. After providing these initial numbers,

---

[2] In its memorandum, FICO fails entirely to cite to this portion of the Federal Rules of Civil Procedure which clearly dictates that supplementation is not required where, as here, the additional or corrective information has "otherwise been made known to the other parties during the discovery process or in writing…"  (_See_ Dkt. 817.)

5

Federal undertook the months-long process of reviewing these figures to eliminate redundancies and double-counting of the same data. Federal provided them to FICO as soon as possible on September 28, 2020. Under these circumstances, the supplementation was timely, and any delay was substantially justified and harmless to FICO. *See* Fed. R. Civ. P. 26(e)(1) & Fed. R. Civ. P. 37(c)(1).

*Finally*, even if the Court were to conclude that the supplementation of the 2019 CUW-IM gross written premiums should have come sooner, the extreme remedy FICO seeks—exclusion of the evidence—is not appropriate. Exclusion of evidence is only appropriate on very rare occasions. Here, exclusion is inappropriate because (a) this evidence is crucial to Federal's defense of FICO's speculative "disgorgement of profits" claim; (b) there is no evidence of bad faith on the part of Federal; (c) FICO will not suffer any prejudice; and, given that no trial has been scheduled, (d) the Court can grant limited additional discovery if necessary.

## **BACKGROUND**

## I.   **FEDERAL'S   NINET H   SUPPLEMENTAL   ANSWER   TO   FICO'S INTERROGATORY NO. 17.**

The subject of FICO's motion is Federal's Ninth Supplemental Answer to FICO's Interrogatory No. 17 dated September 28, 2020. (Declaration of Terrence Fleming, dated November 11, 2020 ("Fleming Decl."), Ex. A.) FICO's Interrogatory No. 17 states:

> **INTERROGATORY NO. 17:** For all insurance policies in connection with which the Blaze Advisor software was used, the gross written premium of Federal and the gross written premium of each related company, including the specific identification of each related company, for each quarter from March 30, 2016 to date. For clarity, this Interrogatory is

not seeking investment income, other income, or capital and surplus accounts.

(*Id.*)[3]   In response to this interrogatory Federal has throughout this case used its best efforts to determine the policy counts and associated gross written premiums that have been processed through Federal's own applications that use Blaze.  As explained further below, doing so was a significant undertaking for Federal's employees, experts and counsel.

In its motion, FICO complains that Federal's Ninth Supplemental Answer is untimely, but it only seeks to strike the revised numbers concerning a single Federal application, namely CUW-IM.[4]

## II.    FEDERAL'S SIGNIFICANT GOOD-FAITH EFFORTS TO ANSWER FICO'S INTERROGATORY NO. 17.

Throughout this litigation Federal has engaged significant efforts to provide its good-faith response to each of FICO's interrogatories, including Interrogatory No. 17. Federal has now supplemented its answer on nine separate occasions.  FICO's motion only takes issue with a portion of Federal's last supplementation—the Ninth Supplemental Answer.  As discussed below, Federal has engaged in good-faith efforts to

---

[3] FICO served the exact same interrogatory for the gross written premium for years 2001-2006 (Interrogatory No. 15), 2007-2012 (Interrogatory No. 16), and for companies located outside of the United States including in the United Kingdom (Interrogatory No. 18), Canada (Interrogatory No. 19) and any other countries (Interrogatory No. 20). (Fleming Decl., Ex. B.)   Responding to all of these interrogatories, each of which created significant technical difficulties, was extremely burdensome to Federal.

[4] The Ninth Supplemental Answer also provides gross written premiums for other applications that used Blaze which are not at issue for purposes of this motion.  (*See* Dkt. 817 at 1, n. 1 ("For the purposes of this motion, the current dispute only relates to the supplementation of the answer related to the CUW application.").)

provide an accurate answer to this complex interrogatory that sought information that is not maintained by Federal in the normal course of its business.

A.    **During Discovery, Federal Provides the Gross Written Premium Numbers for Years 2016, 2017, and 2018 as Requested by Interrogatory No. 17.**

During discovery, in January 2019, Federal engaged its internal IT personnel who undertook their best efforts to provide the gross written premium data to respond to Interrogatory No. 17.  (Declaration of C. Chase McCarthy dated November 11, 2020 ("McCarthy Decl."), ¶ 2.)  Federal employees C. Chase McCarthy and Peter Muller were responsible for gathering the policy count and gross written premium numbers associated with the CUW-IM application.  (*Id.*)  Gathering this data was a complicated undertaking that involved significant hours and processing time.  (*Id.*)

The systems that use Blaze, including the CUW-IM application, are not capable of providing simple policy counts and associated premium numbers in response to FICO's interrogatory.  (*Id.*, ¶ 4.)  Instead, pulling a single transaction that was processed through the CUW-IM application may result in pulling premiums from many other years.  (*Id.*) This results in inflated numbers unless the non-relevant premiums associated with other years can be removed.  (*Id.*)  In gathering this data, Federal employees noticed scenarios in which a single transaction counted gross written premium going back many years sometimes a decade or longer.[5]  (*Id.*)  If not removed, the non-relevant premiums result in inflated numbers.  (*Id.*)

---

[5] In its memorandum, FICO refers to this issue as a "duplication" issue, which is not entirely accurate.  (*See* Dkt. 817.)  As explained above, the issue was how to remove for

8

To respond to FICO's interrogatory, during discovery Mr. McCarthy and Mr. Muller collected and provided gross written premiums and policy counts for all writing companies that used the CUW-IM application. (*Id.*, ¶ 4.) This process included gathering historical data for the gross written premiums and policy counts associated with 24 writing companies for North America for the years 2016, 2017 and 2018. (*Id.*)

As they worked with legal counsel to identify Legacy ACE premium and Legacy Chubb premium along with filtering data to not potentially duplicate premium coming from other systems using Blaze that also used CUW-IM, they began to build complex filters into the data queries. (*Id.*, ¶ 5.) The complexity of the queries grew and in February of 2019, Mr. McCarthy and Mr. Muller conducted what is called a mainframe extract to provide the raw data to an outside expert working with legal counsel who was better prepared to deal with the data analysis required. (*Id.*) The mainframe extract pulled historical data associated with the Legacy Chubb writing companies for the years 2016, 2017 and 2018. (*Id.*) The mainframe extraction took significant time to complete and resulted in over a 10,000-page report.[6] (*Id.*)

The mainframe extract resulted in the reported financial information having inflated numbers. (*Id.*, ¶ 6.) This is so because the method in which the data was pulled included policies that were brought in under a system that includes policies that are

---

all non-relevant premiums in the reporting—these premiums are not "duplicates." The relevant numbers were not "deduplicated" but instead, as explained in this memorandum, were refined to remove for non-relevant premiums associated with other years.

[6] The over 10,000-page report is the document with the file name "Blaze IM Extract-Final" that FICO refers to in its motion. The document was produced on May 17, 2019 along with Federal's damages expert's report.

renewed using Blaze, but automatically at the same time includes the prior transaction involving the same policy regardless of whether it uses Blaze.  (*Id.*)  This is the issue explained above which results in the system providing non-relevant premium information.  (*Id.*)

In responding to Interrogatory No. 17, Federal expressly advised FICO that the figures were inflated due to the technical limitations of the systems that use Blaze[7]:

> We understand that this financial information includes policies that were brought in under a system that includes policies that are renewed using Blaze, but automatically at the same time includes the prior transaction involving the same policy regardless whether it uses Blaze.  We are seeking a way to not include the prior policy since it results in the financial information having inflated numbers.[8]

(Fleming Decl., Ex. A.)

### B. Federal's Damages Expert Christopher Bakewell Refines the Gross Written Premiums for Years 2016, 2017, and 2018.

After Federal's employees provided the raw data through the processes outlined above, Federal's damages expert Christopher Bakewell performed a refined analysis of the CUW-IM data.[9]  The analysis was provided as Exhibit 9.0 of Bakewell's Expert Report Regarding Damages dated May 17, 2019.  (Fleming Decl., Ex. C, Excerpts from

---

[7] In its memorandum, FICO makes it appear as if policy counts and associated premiums could simply be pulled for responding to the interrogatory at the push of a button.  This is not accurate.  The process to provide this data was novel, time consuming, and complex.

[8] This explanation was included in Federal's Fourth, Fifth, Sixth, Seventh and Eighth supplemental answers. (*See* Dkt. 819, Exs. 4-8.)  FICO has been aware of this issue since at least February 28, 2019.  (*See* Dkt. 819, Ex. 4.)  Federal repeatedly reminded FICO of this issue in each of Federal's supplemental answers.

[9] Federal employees provided the raw data that was used by Federal's expert in this refinement process.  (McCarthy Decl., ¶ 7.)

Bakewell Report at Ex. 9.0.)  Exhibit 9.0 provided refined gross written premiums for the years 2016, 2017, and 2018.[10]  (*Id.*)

FICO had ample opportunity during expert discovery to address any concerns it had with Bakewell's analysis or the Blaze IM Extract-Final document.  FICO deposed Bakewell on June 28, 2019.  (Fleming Decl., Ex. D.)   During his deposition, Bakewell explained the contents of the Blaze IM Extract-Final document and the process by which he refined the CUW-IM numbers.  (*Id.*)   After Bakewell's deposition, FICO did not follow-up on this issue any further in any manner.

On July 25, 2019, FICO filed a *Daubert* motion seeking to exclude certain portions of Bakewell's report.  (*See* Dkt. 421.)  In that motion, among other things, FICO sought to exclude Bakewell's opinions regarding the CUW-IM gross written premium values.  (Dkt. 421 at 23-25.)   FICO argued that Bakewell's analysis, including his reliance on "a spreadsheet of raw data relating to the CUW-IM application" should be excluded as unsupported and inadmissible.  (*Id.*)   On March 23, 2020, Judge Wright denied FICO's motion on this point and concluded that Bakewell's analysis was admissible.  (Dkt. 731 at 22, n. 5.)

### C.   Federal's Eighth Supplemental Answer Provides Gross Written Premiums for CUW-IM for the Year 2019.

In or around May 2020, Federal IT employees began the process of calculating the 2019 premium and policy count numbers.  (McCarthy Decl., ¶ 8.)  On June 15, 2020, Federal served its Eighth Supplemental Answer, which provided, among other things, the

---

[10] At the time, no numbers had been provided for 2019 because the calendar year had not concluded.

gross written premium numbers for CUW-IM for the year 2019.  (Fleming Decl., Ex. E.)
Federal provided updated numbers for 2019 because, when Federal served its prior
supplemental answers, the 2019 calendar year had not yet ended.  FICO does not allege
that the Eighth Supplemental Answer was untimely or should be struck.  (*See* Dkt. 817.)
As it had done in all its prior answers to Interrogatory No. 17, Federal informed FICO
that the figures in the Eighth Supplemental Answer were inflated due to the issues
explained above.  (Fleming Decl., Ex. E.)

> **D.    Federal IT Employees Further Refine the 2019 Numbers Which Are
> Provided in the 9th Supplemental Answer.**

Shortly thereafter, in or around July 2020, Federal IT employees began the process
of refining the 2019 numbers.  (Declaration of Peter Muller dated November 11, 2020
("Muller Decl."), ¶ 2.)  Mr. Muller was primarily responsible for working on the analysis
of this data.  (*Id.*)  However, his availability to work on the project was limited because in
the summer of 2020 his spouse was admitted to the Cardiac Care Unit at a local hospital
for treatment.  (*Id.*)  As a result of this, Mr. Muller was out on PTO for approximately 10
days from the start of this project through early September 2020 due to his spouse's
medical condition.  (*Id.*)

In addition to these family medical concerns, the project presented significant
challenges.  (*Id.*, ¶ 3.)  To refine the data and make it more accurate, Mr. Muller and his
team had to formulate and run numerous queries in existing databases.  (*Id.*)  These
queries were sizeable and complex, and each one required several hours to process.  (*Id.*)
When Mr. Muller and his team initially began the process, the queries were repeatedly

shut down by infrastructure because processing each query took hours and presented resource conflicts with production batch networks.  (*Id.*)

To resolve these issues, Mr. Muller batched the processing of the data into rows of 25,000 to see if he could complete the queries in blocks.  (*Id.*, ¶ 4.)  Each block ran 3-4 hours and could only be run during off-hours (i.e., between 9pm – 6am weekdays, and Saturday and Sunday afternoon) to prevent impact to transactional processing in production.  (*Id.*)

The initial refinement process was completed in mid-August 2020.  (*Id.*, ¶ 5.) However, after completing this initial process, Mr. Muller and his team determined there were issues with the premium totals that required them to conduct a second analysis. (*Id.*)

In or around September 1, 2020, Mr. Muller and his team began the second data refinement.  (*Id.*, ¶ 6.)  This time, Mr. Muller built an independent environment to run queries so they would not be impaired by running queries on production.  (*Id.*)  However, this process presented infrastructure limitations.  (*Id.*)  The non-production environments have less resource allocations and, as a result, require more time to complete.  (*Id.*)  The second analysis was broken into 10 files each of which took roughly 3.5 hours to process. (*Id.*)

The second analysis was completed in or around September 12, 2020.  (*Id.*, ¶ 7.) Thereafter, on or about September 28, 2020, Federal provided its Ninth Supplemental

Answer to Interrogatory No. 17, which included the refined gross written premiums for CUW-IM for 2019.  (McCarthy Decl., ¶ 9.)[11]

## III.   THIS IS FICO'S SIXTH REQUEST FOR SANCTIONS, NONE OF WHICH HAVE BEEN GRANTED.

FICO's motion for sanctions is all too familiar, being the sixth such motion to be filed by FICO.  (*See* Dkt. 149 at 43 (requesting sanctions in the form of attorneys' fees and costs and significant evidentiary sanctions including adverse inferences and restrictions on Federal's presentation of evidence); Dkt. 184 at 1 (requesting evidentiary sanctions in the form of adverse inferences); Dkt. 353 at 2 (requesting sanction of attorneys' fees and costs); Dkt. 553 at 2-4 (requesting sanction of striking declaration); Dkt. Nos. 716-721 (requesting sanction for alleged spoliation of evidence).)  The Court has denied all five of FICO's prior requests for sanctions.

Requests for sanctions are not to be made lightly.  *See Ewing v. Empire Capital Funding Grp., Inc.*, 2018 WL 3629923, at *2 (S.D. Cal. July 30, 2018) (admonishing party for filing excessive requests for sanctions).  Indeed, this Court has denied FICO's past requests for sanctions because the evidence has consistently demonstrated that, at all times, Federal has acted in good faith during the discovery process.  (*See* Dkt. 310; Tr. 61:24-62:3.)  FICO's sixth and latest request similarly lacks merit because, as outlined above, Federal's supplemental interrogatory answer was a good-faith effort to provide an

---

[11] Providing the Ninth Supplemental Answer was further aggravated by Mr. McCarthy's challenges in finding a notary public during the COVID-19 pandemic.  (McCarthy Decl., ¶ 9.)

accurate answer to an interrogatory that is overly broad, all-encompassing and the response to which posed significant technical issues.

<u>**ARGUMENT**</u>

**I.    FEDERAL'S NINTH SUPPLEMENTAL ANSWER IS TIMELY AND ADMISSIBLE UNDER THE FEDERAL RULES.**

The Federal Rules of Civil Procedure provide that if a party learns that its previous response to an interrogatory is materially incomplete or incorrect, it must supplement or correct that answer in a timely manner.  Fed. R. Civ. P. 26(e)(1).  But supplementation is unnecessary where the additional or corrective information has "otherwise been made known to the other parties during the discovery process or in writing…"  *Id.*  If a party fails to provide information as required by Rule 26(e), that party may not use the undisclosed information "to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

Here, Federal's Ninth Supplemental Answer complied with Federal Rule of Civil Procedure 26(e)(1) for two reasons.  First, it was timely because it was served soon after Federal's Eighth Supplemental Answer which provided the 2019 gross written premium figures without refinement.  Second, any failure to more quickly supplement was justified and reasonable given the complexity of the interrogatory and the technical hurdles Federal employees encountered in refining the 2019 CUW-IM numbers.

**A.    The Ninth Supplemental Answer was Timely.**

The Ninth Supplemental Answer was timely under Rule 26(e)(1).  The timeliness inquiry asks whether there has been an untimely delay between the finding of new facts

and the disclosure of them through supplementation. *Steady State Imaging, LLC v. Gen. Electric Co.*, 2018 WL 2047578, at *3 (D. Minn. May 2, 2018).

FICO makes much of the fact that Federal has supplemented its answer to Interrogatory No. 17 on multiple occasions. (*See* Dkt. 817 at 2-9.) If the prior history of Federal's supplementation of its answer has any relevance, it merely supports Federal's position that it was complying with its duty under Rule 26(e)(1). The only issue here is whether the new information contained in the Ninth Supplemental Answer was timely supplemented. *See* Fed. R. Civ. P. 26(e)(1). It was.

### 1. Contrary to FICO's Arguments, there was no duty to supplement the 2016, 2017, and 2018 numbers provided in the Ninth Supplemental Answer.

It is simply incorrect, as FICO appears to argue, that the 2016, 2017, and 2018 gross written premium numbers are new. As outlined above, supplementation is unnecessary where the additional or corrective information has "otherwise been made known to the other parties during the discovery process or in writing…" Fed. R. Civ. P. 26(e)(1). Federal was not required to supplement the 2016, 2017 or 2018 gross written premium numbers for CUW-IM because they have been available to FICO since May 17, 2019.

The 2016, 2017, and 2018 gross written premium numbers are taken directly from Exhibit 9.0 of Mr. Bakewell's report, which is dated May 17, 2019. (*Compare* Fleming Decl., Ex. A *with* Ex. C.) None of these numbers are new. As such, Federal had no duty to supplement the 2016, 2017 or 2018 numbers.

16

### 2.      The new 2019 gross written premiums were timely supplemented.

The only new information provided in the Ninth Supplemental Answer related to 2019 gross written premiums associated with the CUW-IM application.   The supplementation of these numbers was timely.   The 2019 gross written premiums were first provided for the CUW-IM application in the Eighth Supplemental Answer, which was served on June 15, 2020.   (Fleming Decl., Ex. E.)   FICO does not allege that the Eighth Supplemental Answer was untimely.   (*See* Dkt. 817.)   Within three months, Federal provided the refined 2019 gross written premiums in the Ninth Supplemental Answer.   As explained above, Federal employees undertook the refinement process immediately after the Eighth Supplemental Answer was provided to FICO.   In doing so, Federal employees encountered numerous technical difficulties.   Nonetheless, the supplemental information was provided on September 28, 2020.   Under these circumstances, the period of time between the Eighth Supplemental Answer and the Ninth Supplemental Answer is reasonable, timely and satisfies the requirements of Rule 26(e)(1).

### B.      Any Failure to Supplement was Substantially Justified and Harmless.

In addition, any delay in providing the Ninth Supplemental Answer was substantially justified and harmless.   Fed. R. Civ. P. 37(c)(1).   As explained above, there was no delay in supplementing the 2016, 2017, and 2018, which were provided to FICO in Mr. Bakewell's report on May 17, 2019.   (*See* Fleming Decl., Ex. C.)   This is not new information.   Further, with respect to the 2019 gross written premium numbers, the three

or so months that elapsed between the Eighth Supplemental Answer and the Ninth Supplemental Answer is substantially justified by the difficulties Federal employees encountered in conducting their refinement analysis.  The delay is also harmless because no trial has been scheduled and there is still substantial time to permit additional discovery on this issue if necessary.

## II.    THE SANCTION OF EXCLUSION OF EVIDENCE IS INAPPROPRIATE.

Federal's Ninth Supplemental Answer was timely under Federal Rule of Civil Procedure 26(e)(1).  However, even if the Court were to find that the supplemental response as to 2019 gross written premiums was somehow untimely, the extreme sanction of exclusion of evidence FICO requests is not warranted or justified here. Rather, the Court at most should fashion an alternative remedy short of exclusion of evidence.[12]

### A.    Exclusion of Evidence is a Drastic Sanction that Should be Used Sparingly.

The Court has considerable discretion in fashioning an appropriate sanction for discovery violations under Rule 37(c)(1).  *Wagener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008).  However, the more serious the sanction to be imposed, the more circumscribed that discretion becomes.  *Id.* (explaining that "discretion narrows as the severity of the sanction or remedy [the district court] elects increases").  "[T]he exclusion of evidence is a harsh penalty [that] should be used sparingly[.]"  *Id.*  As such, when considering a request for exclusion courts should consider whether lesser sanctions can

---

[12] An alternative remedy could consist of permitting some limited additional discovery, such as the deposition FICO's motion requests in the alternative.  (*See* Dkt. 817 at 2.)

create an appropriate remedy.  *See Heartland Bank v. Heartland Home Finance, Inc.*, 335 F.3d 810, 817 (8th Cir. 2003).  This is so because "[g]enerally speaking, federal courts favor resolution of cases on their merits over the imposition of drastic, tactical sanctions."  *Byrd v. J Rayl Transp., Inc.*, 2014 WL 12647772, at *2 (D. Minn. Oct. 3, 2014).

### B.    The Four Factors Weigh Against Exclusion of Evidence.

Courts consider four factors in deciding whether to preclude a party from using late-disclosed information or to impose some other sanction pursuant to Rule 37(c)(1), including (1) how important the excluded material is to the case; (2) the proffered reason for the party's failure to provide the information in a timely fashion or any evidence of bad faith or willfulness; (3) the potential that the other party will be prejudiced if the information is not excluded; and (4) whether a continuance can be provided to cure any prejudice.  *Steady State*, 2018 WL 2047578 at *3.  These four factors weigh against the sanction of exclusion of the Ninth Supplemental Answer.

### 1.    The Evidence is Important to Federal's Defense of FICO's Speculative Disgorgement of Profits Claim.

The Ninth Supplemental Answer is relevant to Federal's defense against FICO's disgorgement of profits claim asserted under the Copyright Act.  In that claim, FICO seeks to disgorge an undefined portion of Federal's profits based on the extremely attenuated theory that Federal's use of Blaze as a component of just ten (10) of Federal's more than one thousand five hundred (1,500) internal software applications could somehow entitle FICO to such relief.  Federal should be permitted to present a vigorous

defense against FICO's disgorgement claim, through which FICO seeks a windfall that bears no relationship to any actual loss that may have been sustained.

Exclusion of the Ninth Supplemental Answer would represent an extreme sanction that would hamper Federal's ability to defend against FICO's disgorgement claim.  If FICO's motion is granted and Federal's more accurate CUW-IM numbers (provided in the Ninth Supplemental Answer) are excluded, FICO will be able to argue that the 2019 CUW-IM gross written premiums are nearly twice as high as the actual, accurate figures. (*Compare* Fleming Decl., Ex. A *with* Ex. E.)  Indeed, if the Court excludes the Ninth Supplemental Answer, FICO will be allowed to rely on the inflated numbers despite the fact that, throughout this litigation, Federal has informed FICO of this issue. The importance of this evidence weighs against exclusion.

### 2. Any Failure by Federal to Timely Supplement is Justified and There Is No Evidence of Bad Faith or Willfulness.

As outlined above, Federal's supplementation was timely.  *See supra* Argument Section I.A.   However, even if the Court finds the supplementation was untimely, exclusion of evidence is not warranted because the delay was justified for the reasons outlined in Section I.B.

Moreover, exclusion of evidence is not warranted here because FICO presents no evidence of bad faith or willfulness.  To the contrary, Federal informed FICO of this issue as of February 28, 2019—more than twenty-one (21) months ago.  (Dkt. 819, Ex. 8.)  This is not an issue that has ever been hidden from FICO.  Indeed, Federal's expert previously refined the 2016, 2017 and 2018 gross written premiums, which analysis

FICO sought to exclude.  (Dkt. 421 at 23-25.)  Judge Wright rejected that argument and ruled the Federal's expert's analysis was admissible.  (Dkt. 731 at 22, n. 5.) Federal's Ninth Supplemental Answer merely represents its good-faith effort to provide more accurate gross written premium data for calendar year 2019 in response to FICO's Interrogatory No. 17.

### 3.  FICO will not be prejudiced if the information is not excluded.

FICO is not prejudiced by the Ninth Supplemental Answer.  Throughout this litigation, FICO has been aware that the interrogatory answers represented inflated numbers that required refinement.  Indeed, FICO is well aware that Federal's expert refined the 2016-2018 figures in May 2019.  FICO cannot claim surprise that Federal similarly refined the 2019 figures.

It is Federal, not FICO, who will be prejudiced if the Ninth Supplemental Answer is struck.  The Ninth Supplemental Answer provides more accurate gross written premium information.  FICO should not be permitted to benefit from the use of inflated figures especially where, as here, additional discovery can cure any prejudice that may exist.

### 4.  Continuance is available to permit depositions and cure any prejudice to FICO.

The final factor weighs against exclusion of evidence because there is ample time for a continuance.  Although FICO's motion repeatedly characterizes Federal's Ninth Supplemental Answer as being provided on the "eve of trial" (Dkt. 817 at 2), the trial has not been scheduled, and the District of Minnesota recently continued all civil jury trials

through at least December 31, 2020 due to uncertainties surrounding the COVID-19 pandemic. (*See* COVID-19 General Order No. 20.) Accordingly, the parties have time to conduct any limited additional discovery that the Court may deem appropriate and necessary. In addition, the COVID-19 pandemic should present no obstacle to limited additional discovery, as the parties are familiar with conducting remote depositions and have done so eight (8) times since the pandemic began.

## **CONCLUSION**

Based on the foregoing, Federal respectfully requests the Court deny FICO's motion for sanctions, just as it has denied FICO's prior five requests for sanctions.

Dated:  November 11, 2020

s/ Terrence J. Fleming
Terrence J. Fleming (#0128983)
tfleming@fredlaw.com
Leah C. Janus (#0337365)
ljanus@fredlaw.com
Christopher D. Pham (#0390165)
cpham@fredlaw.com
Ryan C. Young (#0397751)
ryoung@fredlaw.com
Christian V. Hokans (#0400377)
chokans@fredlaw.com

**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
(612) 492-7000 (tel.)
(612) 492-7077 (fax)

***Attorneys for Defendants***