# EXHIBIT C

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 16-cv-1054 (WMW/DTS) |
| FEDERAL INSURANCE COMPANY, an Indiana corporation, and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania Corporation, | ) ) ) ) ) ) |
| Defendant. | ) |

**EXPERT REPORT OF
W. CHRISTOPHER BAKEWELL
REGARDING DAMAGES**

**May 17, 2019**

Respectfully Submitted,

*WCBakewell*

W. Christopher Bakewell



EXHIBIT C

CONFIDENTIAL
ATTORNEY'S EYES ONLY

176. As a result of his inclusion of non-Blaze Advisor related applications, Mr. Zoltowski's calculation (setting aside the issues of nexus discussed above) overstates Federal's total gross written premiums by approximately $1.0 billion (or three percent) (*see* **Exhibit 5**).

*Mr. Zoltowski's Calculation Methodology Is Flawed and Overstates Federal's Gross Written Premiums*

177. In calculating Federal's gross written premiums related to the alleged infringement, Mr. Zoltowski simply aggregates the disclosed "gross written premiums of each company from all insurance policies in connection with which Blaze Advisor was used."[257] Put simply, Mr. Zoltowski just adds up all gross written premiums for each company and for each Blaze Advisor application. He does no substantive analysis of causation "attributable to" the alleged infringement, nor does he meaningfully analyze the financial attributes of the amounts that he tallied.

178. To the extent Mr. Zoltowski has a methodology, it implicitly assumes that the gross written premiums reported for each company and Blaze Advisor application are mutually exclusive and distinct. As the evidence shows, and as I will explain in more detail below, Mr. Zoltowski's inherent assumption is incorrect. As a result, Mr. Zoltowski's methodology is fundamentally flawed and results in an inflated gross written premium amount.

179. I understand that a single insurance policy (and by extension the associated gross written premium) may feed through more than one Blaze Advisor application. The data which Mr. Zoltowski has relied upon captures all of the policies (and associated gross written premiums) which ran through each of the applications, regardless of whether a policy had already been accounted for under another application. For example, if a single policy with $100 of gross

---

the database of gross written premiums that pass through Evolution. Zoltowski Report, Schedule 8.0 and 9.0. Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No. 19, March 2, 2019, p. 3; Deposition of Kevin Harkin, March 25, 2019, pp. 206-207.
[257] Zoltowski Report, p. 42.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

written premiums ran through both the CUW and CSI eXPRESS applications, its associated gross written premiums would appear twice in Mr. Zoltowski's analysis, and he would conclude that Blaze Advisor contributed $200 of gross written premiums. As a result, by simply aggregating the gross written premiums, Mr. Zoltowski may double or triple (or more) count certain gross written premiums, leading to an inflated and inaccurate total gross written premium amount.

180. One way that the magnitude of the overstatement contained in Mr. Zoltowski's calculations can be illustrated is by comparing Mr. Zoltowski's figures to the total (actual) gross written premiums reported on Federal's business segments and lines of business financial statements over the same time period:

**Comparison of Gross Written Premiums Between Federal's Business Segment/Line of Business Financials and Mr. Zoltowski**

*(in US$ millions)*

|  | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|---|
| Business Segment/Line of Busines Financials [1] | $ 167 | $ 223 | $ 332 | $ 7,016 | $ 6,910 | $ 6,353 |
| Mr. Zoltowski | $ 203 | $ 283 | $ 569 | $ 10,775 | $ 11,542 | $ 8,992 |
| *% Greater than Business Segment/Line of Business Financials* | 22% | 27% | 71% | 54% | 67% | 42% |

**Note:**
[1] The UK financials were only for the years 2016 to 2018. The 2013 to 2015 figures reflect the Europe gross written premiums from Mr. Zoltowski's analysis for illustrative purposes.

181. As this shows, Mr. Zoltowski's calculated gross written premiums exceed Federal's *total* reported gross written premiums in Federal's business segments and lines of business profit and loss statements over the same period(s), a conclusion that is not justifiable or reasonable. The profit and loss statements for the business segments and lines of business include all of the gross written premiums earned by the company, including policies connected to Blaze Advisor, as well as policies that did not use Blaze Advisor. By definition, the gross written premiums reported in the business segments and line of business profit and loss statements should be greater than the gross written premiums relied upon by Mr. Zoltowski. But they

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

are not.  And nowhere in his report does Mr. Zoltowski perform any such tests of reasonableness.

182. Federal also prepared the revised gross written premiums for CUW (a domestic application), an inventory management tool that is often used in conjunction with other applications when writing a single insurance policy.[258]  In this revised data, removed are any policies which ran through both CUW and another application, specifically CSI eXPRESS or Premium Booking and the resulting data shows policies that only ran through the CUW application.  The policies (and associated gross written premiums) which ran through both CUW and CSI eXPRESS or Premium Booking would have also been captured in the gross written premiums data relied upon by Mr. Zoltowski for CSI eXPRESS or Premium Booking applications (as discussed in the example above).  Using this revised CUW data effectively removes the duplication of certain gross written premiums in the CUW data used by Mr. Zoltowski.  For example, in Mr. Zoltowski's analysis, the premiums associated with any single policy which touched each of CUW, CSI eXPRESS and Premium Booking would be counted three times in the total gross written premiums.

183. When comparing this revised data to the data used by Mr. Zoltowski, the overstatement of gross written premiums is further illustrated:[259]

**Comparison of the Gross Written Premiums for the CUW Application Between Federal's Revised CUW Data and the Data Used by Mr. Zoltowski**
*(in US$ millions)*

|  | 2016 | 2017 | 2018 |
|---|---|---|---|
| Revised CUW Data | $ 3,819 | $ 2,526 | $ 2,149 |
| Mr. Zoltowski | $ 7,579 | $ 8,533 | $ 6,201 |
| *% Greater than the Revised CUW Data* | *98%* | *238%* | *189%* |

---

[258] File titled: "Blaze IM Extract-Final".
[259] I understand that the premiums from IRMA and TAPS would likely already be included in CUW premiums so the domestic premium are likely still overstated.

Page 56

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

184. The above table shows that the CUW gross written premiums relied upon by Mr. Zoltowski, are greater than the gross written premiums per the revised data prepared by Federal. Again, the CUW gross written premium data relied upon by Mr. Zoltowski included policies (and associated gross written premiums) that were captured multiple times in the data for other applications such as CSI eXPRESS and Premium Bookings.[260] I understand that the revised CUW data eliminates any policies that also ran through CSI eXPRESS and Premium Bookings.[261] This prevents double counting when the totals for each application are added together.

*Mr. Zoltowski Does Not Deduct Any of Federal's Costs That Were Incurred To Earn the Gross Written Premiums*

185. Mr. Zoltowski states that it is his understanding that "the copyright owner is required to present proof of only the infringer's gross revenue."[262] According to Mr. Zoltowski, "as a result, the damages presented related to copyright infringement damages reflect the dollar amounts associated with the gross written premiums through Federal's allegedly infringing use of Blaze Advisor."[263] On only this basis, Mr. Zoltowski calculates his estimate of total gross revenue as represented by gross written premiums only.

186. However, Mr. Zoltowski performed no analysis to determine if any of the revenues he captured had any link (*i.e.*, nexus) to the allegations of this case, or to the value provided by the accused software. I explained at length above why this is problematic. Moreover, compounding his error of having a lack of nexus, Mr. Zoltowski provided no consideration of the costs and expenses that are necessary for Federal to earn such revenue.

187. Instead of engaging in financial analysis, or investigating issues that relate to value (as he claimed he did), Mr. Zoltowski's simply aggregated Federal's gross written premium (*i.e.*,

---

[260] Interview of Mr. McCarthy.
[261] Interview of Mr. McCarthy.
[262] Zoltowski Report, p. 43.
[263] Zoltowski Report, p. 43.

Page 57

**Fair Isaac Corporation v. Federal Insurance Company**  Exhibit 9.0
Summary of the Revised CUW Data Prepared by Federal for the Years 2016 to 2018
(in US$)

| Writing Company Name | Year of Effective Date of Policy [1] | | |
|---|---|---|---|
| | 2016 | 2017 | 2018 |
| ACE AMERICAN INSURANCE COMPANY | $ - | $ - | $ - |
| ACE FIRE UNDERWRITERS INSURANCE COMPANY | - | - | - |
| ACE PROPERTY AND CASUALTY INSURANCE COMPANY | - | - | - |
| ALLIANCE ASSURANCE COMPANY | 1,163 | - | - |
| CHUBB ARGENTINA DE SEGUROS S.A. | 78,726,313 | 23,609,062 | 22,013,565 |
| CHUBB CUSTOM INSURANCE COMPANY | - | - | - |
| CHUBB DE MEXICO | 15,358 | 16,435 | - |
| CHUBB DE MEXICO COMPANIA DE SEGUROS, S.A. | 154,603 | 62,376 | - |
| CHUBB EUROPEAN GROUP SE | 238,730,739 | 182,692,863 | 128,841,814 |
| CHUBB INDEMNITY INSURANCE COMPANY | 58,977 | - | - |
| CHUBB INSURANCE AUSTRALIA LIMITED | 52,541 | 6,136 | - |
| CHUBB INSURANCE COMPANY LIMITED | 125,228 | 6,754 | - |
| CHUBB INSURANCE COMPANY OF CANADA | 44,501,973 | 20,305,777 | 20,310,216 |
| CHUBB INSURANCE COMPANY OF NEW JERSEY | - | - | - |
| CHUBB LLOYDS INSURANCE COMPANY OF TEXAS | 29,181,294 | 29,482,878 | 28,061,704 |
| CHUBB NATIONAL INSURANCE COMPANY | 27,605 | 643 | - |
| CHUBB SEGUROS BRASIL, S.A. | - | - | - |
| CHUBB SEGUROS CHILE S.A. | 2,534,222 | 185,443 | 1,661,561 |
| DIVISIONAL REINSURANCE CEDED | 1,821,133 | 117,904 | 2,928 |
| EXECUTIVE RISK INDEMNITY INC. | 2,567,477,880 | 1,637,912,514 | 1,404,328,456 |
| EXECUTIVE RISK SPECIALTY INSURANCE COMPANY | 492,561,623 | 361,198,461 | 343,254,047 |
| FEDERAL INSURANCE COMPANY | - | - | - |
| GREAT NORTHERN INSURANCE COMPANY | 198,358,535 | 164,186,063 | 116,800,656 |
| NORTHWESTERN PACIFIC INDEMNITY COMPANY | - | - | - |
| PACIFIC INDEMNITY COMPANY | - | - | - |
| SAMSUNG FIRE & MARINE INSURANCE CO., LTD | - | - | - |
| SUN INSURANCE OFFICE OF AMERICA INC. | 164,280,405 | 106,322,827 | 83,645,205 |
| TEXAS PACIFIC INDEMNITY COMPANY | 39,544 | - | - |
| THE SEA INSURANCE COMPANY | | | |
| VIGILANT INSURANCE COMPANY | | | |
| N/A | | | |
| **Total** | **$ 3,818,649,134** | **$ 2,526,106,134** | **$ 2,148,920,154** |

**Source:**
[1] Source: File titled "Blaze IM Extract-Final"

Confidential - For Attorneys' Eyes Only