UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Fair Isaac Corporation, | Case No. 16-cv-1054 (WMW/DTS) |
| Plaintiff, | |
| | **ORDER** |
| v. | |
| Federal Insurance Company and ACE American Insurance Company, | |
| Defendants. | |

This matter is before the Court on the supplemental cross-motions for summary judgment of Plaintiff Fair Isaac Corporation (FICO) and Defendants Federal Insurance Company (Federal) and ACE American Insurance Company (ACE American) (collectively, Defendants). (Dkts. 743, 750.) For the reasons addressed below, FICO's supplemental motion for summary judgment is granted in part and denied in part, and Defendants' supplemental motion for summary judgment is granted.

## BACKGROUND

FICO designs and develops predictive-analytics and decision-management software. One of FICO's decision-management software tools is the FICO® Blaze Advisor® business rules management system (Blaze Advisor), which is used to design, develop, execute, and maintain rules-based business applications. FICO maintains federal copyright registrations for multiple versions of Blaze Advisor.

Chubb & Son, an unincorporated division of Federal, is an insurance manager for multiple insurance companies and offers information technology services. ACE American,

a sister company to Federal, provides insurance-related services to insurance company subsidiaries of Federal.

On June 30, 2006, FICO and Chubb & Son entered into a software license and maintenance agreement (License Agreement). The parties subsequently amended the License Agreement twice—first on August 1, 2006, and again on December 28, 2006. As amended, the License Agreement provides Chubb & Son a perpetual license to use Blaze Advisor enterprise-wide.

Before January 15, 2016, Federal's parent corporation was Chubb Corporation. On January 15, 2016, Chubb Corporation merged with—and Federal became a subsidiary of—ACE INA Holdings, Inc. Approximately two weeks later, FICO sent Federal written notice that FICO believed Federal had breached Section 10.8 of the License Agreement, which governs assignments or transfers of the License Agreement. Thereafter, based on Federal's alleged refusal to cure the purported breach, FICO sent Federal written notice that FICO would terminate the License Agreement effective March 31, 2016.

On April 21, 2016, FICO commenced this lawsuit alleging breach of the License Agreement and copyright infringement. FICO filed a second amended complaint on September 11, 2018, which is the operative complaint in this case. Only the first two claims in the second amended complaint are relevant to the pending motions. Count I alleges that Federal breached the License Agreement and Count II alleges that Federal infringed FICO's copyright interests by reproducing and distributing Blaze Advisor to third parties without authorization prior to the termination of the License Agreement.

In a March 23, 2020 Order, this Court denied FICO's motion for summary judgment and granted in part and denied in part Defendants' motion for summary judgment. But in doing so the Court observed that, because Defendants were permitted to amend their answer to include a statute-of-limitations defense *after* the dispositive-motion deadline, the record had not been adequately developed as to this issue. Therefore, the Court expressly granted the parties "an opportunity to file supplemental motions for summary judgment *strictly limited* to the issue of Defendants' statute-of-limitations defense and the related issue of the predicate-act doctrine." Contrary to the Court's strict limitations, the supplemental motions filed by both FICO and Federal address issues outside of the scope of the statute-of-limitations defense and the predicate-act doctrine. The Court, however, limits its analysis to these two issues.

## ANALYSIS

Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 802–03 (8th Cir. 2014). A genuine dispute as to a material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat a motion for summary judgment, the opposing party must cite with particularity those aspects of the record that support any assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1)(A); *accord Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).

Before the Court are the parties' supplemental cross-motions for summary judgment as to Federal's statute-of-limitations defense. The amended answer to the second amended complaint alleges this defense as follows:

> FICO's claims are barred, all or in part, by the applicable statutes of limitations, including the three year statutory period for copyright infringement claims under 17 U.S.C. § 507(b) and the six year period for breach of contract claims under New York C.P.L.R. § 213(2).

Because a statute of limitations is an affirmative defense on which a defendant has the burden of proof, to obtain summary judgment on such a defense a defendant must show undisputed facts establishing that the plaintiff's claims are time-barred. *Lackawanna Chapter of Ry. & Locomotive Hist. Soc'y, Inc. v. St. Louis County*, 606 F.3d 886, 888 (8th Cir. 2010). By contrast, when a *plaintiff* seeks summary judgment as to an affirmative defense, the plaintiff may satisfy its burden "by showing that there is an absence of evidence to support an essential element of the non-moving party's case." *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (internal quotation marks omitted) (brackets omitted).

Here, FICO moves for summary judgment on Federal's statute-of-limitations defense as it pertains to Count I of the second amended complaint, which is FICO's breach-of-contract claim. And both FICO and Federal seek summary judgment on Federal's statute-of-limitations defense as it pertains to Count II of the second amended complaint, which is FICO's claim that Federal infringed FICO's copyright interests by reproducing and distributing FICO products to third parties without authorization prior to the termination of the License Agreement. The Court addresses each claim in turn.

4

### I. Statute of Limitations as to FICO's Breach-of-Contract Claim

FICO argues that it is entitled to summary judgment that Federal's statute-of-limitations defense fails as a matter of law with respect to FICO's breach-of-contract claim.

Under New York law, which governs the parties' License Agreement, a six-year statute of limitations applies to breach-of-contract claims. N.Y. C.P.L.R. § 213(2). According to FICO, New York law also recognizes the "continuing wrong doctrine," whereby "a series of continuing wrongs . . . serves to toll the running of a period of limitations to the date of the commission of the last wrongful act." *Garron v. Bristol House, Inc.*, 162 A.D.3d 857, 858–59 (N.Y. App. Div. 2018) (internal quotation marks omitted). "In contract actions, the doctrine is applied to extend the statute of limitations when the contract imposes a continuing duty on the breaching party." *Id.* at 859 (internal quotation marks omitted). Here, although Federal maintains that it is not liable for breach of the License Agreement, Federal concedes that FICO's breach-of-contract claim is not barred by New York's statute of limitations. As such, Federal does not oppose FICO's motion for summary judgment as to this issue.

Accordingly, FICO's supplemental motion for summary judgment is granted with respect to Federal's statute-of-limitations defense as it pertains to FICO's breach-of-contract claim.

### II. Statute of Limitations as to FICO's Copyright-Infringement Claim

FICO also argues that it is entitled to summary judgment that Federal's statute-of-limitations defense fails as a matter of law with respect to FICO's copyright-infringement

claim.[1] Federal cross-moves for summary judgment that FICO's copyright-infringement claim is time-barred as a matter of law.

Under the Copyright Act, "[n]o civil action shall be maintained . . . unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). A copyright-infringement claim accrues "when an infringing act occurs," which is "the point when the plaintiff can file suit and obtain relief." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670 (2014) (internal quotation marks omitted). A "separate-accrual rule" applies to the copyright statute of limitations, whereby "when a defendant commits successive violations, the statute of limitations runs separately from each violation." *Id.* at 671. Thus, each time a copyrighted work is reproduced or distributed without authorization, "the infringer commits a new wrong" and "each infringing act starts a new limitations period." *Id.* In addition, a majority of jurisdictions, including the United States Court of Appeals for the Eighth Circuit, "have adopted, as an alternative to the incident of injury rule, a discovery rule, which starts the limitations period when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim." *Id.* at 670 n.4 (internal quotation marks omitted); *Comcast of Ill. X v. Multi-Vision Elecs., Inc.*, 491 F.3d 938, 944 (8th Cir. 2007).

---

[1] Although FICO alleges multiple copyright-infringement claims against Defendants, the pending motions—and Defendants' statute-of-limitations defense—pertain only to the copyright-infringement claim alleged in Count II of the second amended complaint.

### A.     Allegedly Infringing Conduct Before April 21, 2013

FICO commenced this lawsuit on April 21, 2016.  Thus, any alleged infringement that occurred before April 21, 2013, is barred by the Copyright Act's three-year statute of limitations *unless* FICO can prove that it did not *discover* earlier infringement until after the limitations period commenced.  *See Petrella*, 572 U.S. at 671 (observing that an "infringer is insulated from liability for earlier infringements of the same work").  According to Federal, because FICO discovered (or should have discovered) any allegedly infringing conduct that occurred outside the limitations period prior to April 21, 2013, FICO's copyright-infringement claim is time-barred to the extent that it is based on any such earlier conduct.

In its memoranda of law, FICO repeatedly accuses Federal of mischaracterizing FICO's copyright-infringement claim.  FICO insists that its copyright-infringement claim is not based on conduct that occurred before April 21, 2013, and instead is strictly limited to Federal's "unauthorized reproduction (copying) and transmission (distribution) of Blaze Advisor Version 7.1" within the limitations period.  But FICO's attempt to avoid summary judgment by narrowly characterizing the breadth of its copyright-infringement claim is contrary to the record in at least two significant ways.

First, although FICO's second amended complaint does not expressly tether FICO's copyright-infringement claim to a particular timeframe or version of Blaze Advisor, the second amended complaint alleges that "FICO maintains federal copyright registrations for multiple versions of FICO Blaze Advisor" and proceeds to list the copyright registration numbers of twelve different versions of Blaze Advisor.  As such, the second amended

complaint, although ambiguous, strongly implies that FICO is alleging copyright infringement based on conduct that occurred before April 21, 2013, and involved earlier versions of Blaze Advisor.

Second, when opposing Defendants' motion for summary judgment, FICO relied on a May 2009 email that pertains to Blaze Advisor Version 6.7 and a December 2010 email that pertains to Blaze Advisor Version 6.9. FICO now contends that it relied on these exhibits only to support its breach-of-contract claim. But this contention is not true. FICO cited to these exhibits in the portion of its memorandum of law addressing its copyright-infringement claim:

> Federal misstates FICO's claim. FICO claims Federal infringed FICO copyrights by its unauthorized distribution of Blaze Advisor in the United States. Federal is liable for damages stemming from that infringement, including profits from the foreign exploitation of Blaze Advisor.
>
> This claim is not an extra-territorial application of the Copyright Act. It is undisputed that Chubb & Son distributed Blaze Advisor for installation outside the United States. (*Decl., Ex. 15, 32; Section II(A), supra*.) This breached the Agreement, including Paragraph 3.1(v). *Unauthorized distribution is infringement of copyright.*

(Emphasis added.) Despite FICO's persistent accusations that Federal is misstating and mischaracterizing FICO's copyright-infringement claim, FICO's prior statements to this Court contradict the arguments it makes now.

It is unclear whether FICO is genuinely confused about its prior allegations and arguments or FICO is being either intentionally disingenuous or strategically ambiguous. But whichever reason explains these inconsistencies in the record, FICO cannot repeatedly

shift its legal theories to avoid an adverse ruling and, in doing so, misdirect both the Court and Defendants. Indeed, Defendants cannot reasonably defend against a claim when even FICO cannot consistently define the scope of its own claim. Because FICO effectively has conceded that any allegedly infringing conduct that occurred before April 21, 2013, is time-barred and has presented no evidence to the contrary, Federal is entitled to summary judgment on its statute-of-limitations defense pertaining to such allegations.

Accordingly, Federal's supplemental motion for summary judgment is granted with respect to Federal's statute-of-limitations defense as it pertains to any alleged copyright infringement that occurred before April 21, 2013.

B.     **Allegedly Infringing Conduct After April 21, 2013**

FICO argues that its copyright-infringement claim arises from Federal's unauthorized copying and distribution of Blaze Advisor Version 7.1 during the three-year limitations period. Specifically, FICO contends that Federal (1) copied Blaze Advisor Version 7.1 by uploading it to a computer server in the United States for the purpose of permitting unauthorized persons to use and access it; (2) copied Blaze Advisor Version 7.1 by permitting unauthorized persons in Canada to use it remotely, which caused a temporary copy to exist on Federal's computer server in the United States; and (3) distributed Blaze Advisor Version 7.1 by transmitting it from its computer server in the United States to unauthorized persons in Europe and Canada. Federal counters that FICO has not established that an act of *domestic* infringement occurred within the limitations period.

"As a general matter, the Copyright Act is considered to have no extraterritorial reach" beyond the United States. *Tire Eng'g & Distrib., LLC v. Shandong Linglong*

*Rubber Co.*, 682 F.3d 292, 306 (4th Cir. 2012); *accord Iverson v. Grant*, 133 F.3d 922 (8th Cir. 1998) (unpublished table decision). When the alleged infringement is based on acts that occurred abroad, "such allegations do not state a claim for relief under the copyright laws of the United States." *Subafilms, Ltd. v. MGM-Pathe Commc'ns*, 24 F.3d 1088, 1089 (9th Cir. 1994).

FICO contends that, because Federal's alleged copying and distribution of Blaze Advisor *originated* in the United States, Federal may be held liable under the Copyright Act. Some courts have recognized an exception to the territorial limits of the Copyright Act, holding that " 'when the type of infringement permits further reproduction abroad,' a plaintiff may collect damages flowing from the foreign conduct." *Tire Eng'g*, 682 F.3d at 306 (quoting *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988)). Under this "predicate act" doctrine, "if the defendant has committed a domestic act of copyright infringement, and that act has enabled further acts of infringement abroad, then the plaintiff may recover damages for the foreign conduct." *IMAPizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 3d 95, 117 (D.D.C. 2018) (citing *Tire Eng'g*, 682 F.3d at 306–07).

The parties concede that neither the Eighth Circuit, nor any district court within the Eighth Circuit, has adopted the predicate-act doctrine. It is true that the predicate-act doctrine has been adopted or applied by courts in several jurisdictions.[2] It also is the case

---

[2] *See, e.g.*, *Tire Eng'g*, 682 F.3d at 306–08; *Palmer v. Braun*, 376 F.3d 1254, 1258 (11th Cir. 2004); *L.A. News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 990–92 (9th Cir. 1998); *Update Art*, 843 F.2d at 73.

that the predicate-act doctrine is applied only rarely, and its application has been criticized.[3] This Court need not decide whether the predicate-act doctrine should be adopted in this jurisdiction, however. That is because, assuming without deciding that the predicate-act doctrine applies, FICO has failed to establish that Federal committed a predicate act of copyright infringement in the United States within the three-year limitations period.

FICO contends that Federal infringed its copyright during the limitations period "by uploading Blaze Advisor Version 7.1 to a Wiki site on its computers in Raleigh, North Carolina, for the purpose of enabling the use of Blaze Advisor Version 7.1 by persons who were not employees of Chubb & Son" and by "transmitting the copy of Blaze Advisor Version 7.1, located on the Wiki site on its computers in North Carolina, to persons who were not employees of Chubb & Son." This alleged conduct cannot satisfy the predicate-act doctrine for at least four reasons.

First, the record demonstrates that the act of uploading Blaze Advisor Version 7.1 to a computer server in North Carolina occurred on October 4, 2012. Because this conduct occurred outside the three-year limitations period, it cannot establish the requisite predicate act of copyright infringement.

Second, under the License Agreement, Federal and its affiliates were permitted to "use the Fair Isaac Product for their internal business purposes, with no limitation on the

---

[3] *See, e.g.*, 7 William F. Patry, *Patry on Copyright* § 25:92.50 (criticizing Fourth Circuit's application of the predicate-act doctrine); *see also* Gregory Swank, *Extending the Copyright Act Abroad: The Need for Courts to Reevaluate the Predicate-Act Doctrine*, 23 DePaul J. Art, Tech. & Intell. Prop. L. 237, 257 (2012) (observing that "the predicate-act doctrine has a very weak doctrinal foundation" and is inconsistent with principles of international copyright law to which the United States agreed).

number of Seats or CPUs."[4]  As such, Federal did not commit an act of copyright infringement by uploading a copy of Blaze Advisor Version 7.1 to its own computer server because the License Agreement authorized Federal to use Blaze Advisor for internal business purposes on an unlimited number of computers.

Third, to the extent that FICO is asserting that Federal's act of uploading Blaze Advisor Version 7.1 to its computer server was an infringing act because Federal did so "for the purpose of enabling" unauthorized use, this argument also is unavailing.  It is a predicate-*act* doctrine, not a predicate-*purpose* or predicate-*intent* doctrine.  FICO has not established how an otherwise non-infringing act becomes infringement based solely on the actor's alleged motive or intent to permit others to access a copyrighted work.  *Cf. Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899, 904 (8th Cir. 2012) (collecting cases and observing that courts are divided as to "whether making copyrighted works available" to unauthorized persons establishes infringement of the distribution right under the Copyright Act, but declining to resolve the issue); *Capitol Records, Inc. v. Thomas*, 579 F. Supp. 2d 1210, 1221–22 (D. Minn. 2008) (collecting cases and concluding that, "[w]ithout actual distribution, there can be no claim for authorization of distribution" because a contrary conclusion "would undermine settled case law holding that merely inducing or encouraging another to infringe does not, alone, constitute infringement unless the encouraged party

---

[4]  The License Agreement defines "Seat" as "an identified individual user on a single personal computer or workstation" and defines "CPU" as "a single core central processing unit."

12

actually infringes" (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936–37 (2005))).

This third flaw in FICO's argument ties directly into the fourth flaw in FICO's argument. According to FICO, after Federal made Blaze Advisor Version 7.1 available on its computer server in North Carolina, unauthorized individuals in Canada and Europe accessed, installed, and used the software. FICO contends that this subsequent access, installation, and use that occurred during the limitations period demonstrates that Federal "transmitted" Blaze Advisor Version 7.1 to unauthorized persons and the transmission permitted unauthorized copying to occur. The primary flaw in this argument is that it necessarily depends on the extraterritorial conduct of foreign actors, which renders the conduct no longer a predicate act of purely *domestic* infringement—let alone an act attributable to Federal. To invoke the predicate-act doctrine, FICO "is required to show a domestic violation of the Copyright Act." *Tire Eng'g*, 682 F.3d at 308. Crucially, "at least one alleged infringement *must be completed entirely within the United States*." *L.A. News Serv.*, 149 F.3d 987, 990 (internal quotation marks omitted) (emphasis added). But FICO has not demonstrated that an unauthorized act of copying or distributing Blaze Advisor Version 7.1 was *completed entirely* within the United States. As addressed above, Federal's purely domestic conduct was authorized under the License Agreement *and* occurred outside the limitations period. In contrast, the allegedly unauthorized distribution of Blaze Advisor Version 7.1 during the limitations period necessarily involved individuals in Canada and Europe accessing, installing, and using the software from *outside* the United States.

FICO contends that transmitting a copyrighted work from the United States to a foreign country qualifies as a purely domestic act of infringement, relying on *National Football League v. PrimeTime 24 Joint Venture*, 211 F.3d 10, 13 (2d Cir. 2000). At issue in *National Football League* was the transmission of copyrighted recordings of football games to Canadian viewers, which implicated the rights to public performance or display—distinct rights protected under the Copyright Act. *See* 211 F.3d at 13; *see also* 17 U.S.C. § 106(4), (5). The Second Circuit reasoned that a copyrighted audiovisual work is publicly performed or displayed at the point of origin of the transmission and, thus, a completed act of infringement occurs at the domestic point of origin. *Nat'l Football League*, 211 F.3d at 13.

FICO's reliance on *National Football League* is misplaced for at least two reasons. First, FICO does not identify any case in which the Eighth Circuit has adopted the Second Circuit's reasoning as it pertains to transmissions abroad. Notably, other circuits have reached the opposite conclusion, namely, that the transmission of a copyrighted work to a foreign recipient does not become a completed act of infringement until it is received. *See, e.g.*, *IMAPizza, LLC v. At Pizza Ltd.*, 965 F.3d 871, 878–79 (D.C. Cir. 2020) (observing that "allegations concerning pictures downloaded from U.S. servers . . . do not implicate the Copyright Act—even under the predicate act test" because no act of infringement has been completed entirely in United States); *Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 387 (9th Cir. 1995) (holding that transmission of satellite television signals from United States to Canada did not implicate Copyright Act because alleged infringement was incomplete until signals were received and viewed in Canada).

14

Second, unlike *National Football League*, this case does not involve an audiovisual work, nor does it involve the right of public performance or display.  Instead, this case involves software, passively located on a computer server in the United States, that foreign actors allegedly accessed, installed, and used on computers outside the United States.[5]  As such, *National Football League* is neither binding nor applicable here.

In summary, because FICO has not presented evidence of an act of copyright infringement that Federal completed entirely in the United States, FICO's reliance on the predicate-act doctrine is unavailing.  As FICO has presented no evidence of actionable domestic copyright infringement that occurred within the three-year limitations period, FICO's copyright-infringement claim fails as a matter of law.[6]  Accordingly, Federal's supplemental motion for summary judgment is granted with respect to Federal's statute-of-limitations defense as it pertains to FICO's copyright-infringement claim alleged in Count II of the second amended complaint.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Plaintiff Fair Isaac Corporation's supplemental motion for summary judgment, (Dkt. 743), is **GRANTED IN PART AND DENIED IN PART** as follows:

---

[5] As addressed above, the act of uploading the software to the computer server was both outside the three-year limitations period *and* authorized under the parties' License Agreement.

[6] In light of this conclusion, the Court need not address the alternative arguments advanced by the parties.

      a. Plaintiff's motion is granted with respect to Federal's statute-of-limitations defense as it pertains to FICO's breach-of-contract claim (Count I); and

      b. Plaintiff's motion is denied in all other respects.

2.    Defendants Federal Insurance Company and ACE American Insurance Company's supplemental motion for summary judgment as to FICO's copyright-infringement claim (Count II), (Dkt. 750), is **GRANTED**.

Dated: March 23, 2021                              s/Wilhelmina M. Wright
                                                                 Wilhelmina M. Wright
                                                                 United States District Judge