# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION,<br><br>    Plaintiff,<br><br> v.<br><br>FEDERAL INSURANCE COMPANY, an Indiana corporation, and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation,<br><br>    Defendants. | Court File No.  16-cv-1054 (WMW/DTS)<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO AMEND SCHEDULING ORDER** |

# <u>TABLE OF CONTENTS</u>

**Page(s)**

INTRODUCTION .................................................................................................... 1

    I.     Background ........................................................................................... 2

          A.     FICO Fails to Produce the Blaze Source Code or Identify Version 7.1 as the Basis for its Copyright Claims During Discovery. ........................................................................................ 2

          B.     In May 2020, FICO Concedes that it Must Show "Substantial Similarity" Between the Code Comprising Version 7.1 and Earlier Versions of Blaze to Satisfy the First Element of Its Copyright Claims. ............................................................................... 4

          C.     In November 2020, FICO Engages a Software Expert to Produce a Blaze Source Code Analysis Without Informing Federal. ................................................................................................ 6

          D.     In November 2021, FICO Discloses Marce's Expert Analysis on the Issue of Substantial Similarity for the First Time. ................. 7

    II.     Legal Standard........................................................................................ 11

    III.     Argument................................................................................................ 11

          A.     Federal was Diligent in Bringing this Motion After FICO Disclosed its Intent to Rely on Inadmissible Expert Evidence to Save its Copyright Claims........................................................... 12

          B.     Without the Ability to File its Dispositive and Non-Dispositive Motions, Federal Will be Prejudiced by Being Forced to Defend Against FICO's Unmeritorious Copyright Claims in a Lengthy and Complex Jury Trial. ................................................... 14

          C.     Amending the Scheduling Order Will Not Result in Unfair Prejudice to FICO........................................................................... 25

CONCLUSION ..................................................................................................... 26

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Airframe Sys., Inc. v. L-3 Commc'ns Corp.*,
  658 F.3d 100 (1st Cir. 2011) ................................................................ 21, 25

*Antonick v. Elec. Arts, Inc.*,
  841 F.3d 1062 (9th Cir. 2016) ......................................................... 20, 24, 25

*Bridgmon v. Array Sys. Corp.*,
  325 F.3d 572 (5th Cir. 2003) ............................................................... 21, 25

*Ehlers v. Siemens Med. Sols. USA, Inc.*,
  2008 WL 11347695 (D. Minn. Feb. 8, 2008) ............................................ 18

*eScholar, LLC v. Otis Educ. Sys., Inc.*,
  No. 04 Civ. 4051(SCR), 2005 WL 2977569 (S.D.N.Y. 2005) .................... 20

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
  139 S. Ct. 881 (2019) .............................................................................. 5, 19

*Gen. Universal Sys., Inc. v. Lee*,
  379 F.3d 131 (5th Cir. 2004) ........................................................................ 21

*Gordon v. Veneman*,
  61 F. App'x 296 (7th Cir. 2003) ...................................................... 14, 15, 26

*Haddley v. Next Chapter Tech., Inc.*,
  No. CV 16-1960, 2019 WL 979151 (D. Minn. Feb. 28, 2019) ........................*passim*

*Hartman v. Hallmark Cards, Inc.*,
  833 F.2d 117 (8th Cir. 1987) ........................................................... 19, 24, 25

*Hernandez–Loring v. Universidad Metropolitana*,
  233 F.3d 49 (1st Cir.2000) .......................................................................... 13

*Hofmann v. Enter. Leasing Co. of Minnesota, LLC*,
  No. 13-CV-255, 2014 WL 12601038 (D. Minn. Oct. 15, 2014) .................... 11, 12, 13

*i-Sys., Inc. v. Softwares, Inc.*,
  No. CIV. 02-1951 .......................................................................................... 20

*Indyne, Inc. v. Abacus Tech. Corp.*,
  876 F. Supp. 2d 1278 (M.D. Fla. 2012), *aff'd*, 513 F. App'x 858 (11th
  Cir. 2013) ........................................................................................................ 21, 25

*InfoDeli, LLC v. W. Robidoux, Inc.*,
  No. 4:15-CV-00364-BCW, 2017 WL 11517565 (W.D. Mo. Dec. 18,
  2017) ........................................................................................................................ 20

*Laughlin v. Stuart*,
  No. 19-CV-2547, 2021 WL 689502 (D. Minn. Feb. 23, 2021) ................................... 12

*Microsoft Corp. v. Ram Distribution, LLC*,
  No. 06-CV-1247, 2009 WL 415712 (E.D. Wis. Feb. 13, 2009) ..................... 14, 15, 26

*Minnesota Min. and Mfg. Co. v. Signtech, USA, Ltd.*,
  177 F.R.D. 459 (D. Minn. 1998) .............................................................................. 16

*Rodriguez v. Akima Infrastructure Servs.*,
  LLC, 2019 WL 5212968 (N.D. Cal. Oct. 16, 2019) .................................................. 18

*Shank v. Carleton Coll.*,
  329 F.R.D. 610 (D. Minn. 2019) .............................................................................. 11

*St. Clair v. City of Iola*,
  No. 92-4024-SAC, 1994 WL 129993 (D. Kan. Mar. 2, 1994) ................................... 14

*Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*,
  47 F.3d 277 (8th Cir. 1995) ............................................................................... 15, 17

*United States v. Peoples*,
  250 F.3d 630 (8th Cir. 2001) .................................................................................. 15

*Virtual Chart Sols. I, Inc. v. Meredith*,
  No. 4:17CV546, 2019 WL 3806013 (E.D. Tex. June 17, 2019) ........................... 21, 25

## Other Authorities

Federal Rule of Civil Procedure 16 ........................................................... *passim*

Federal Rule of Civil Procedure 26 ........................................................... *passim*

Federal Rule of Civil Procedure 37 ........................................................... *passim*

Federal Rule of Evidence 702 ............................................................................ 15

District of Minnesota Local Rule 16.3 ........................................................... 11, 25

**INTRODUCTION**

On November 11, 2021, more than two years after the relevant deadline, Plaintiff Fair Isaac Corporation ("FICO") disclosed the evidence it intends to rely upon to try to salvage its remaining copyright claims at trial.  FICO made this disclosure through deposition testimony from a new witness, Jean Luc Marce, and the production of a software source code analysis that Marce created.  Prior to Marce's deposition and the disclosure of his analysis, it was unclear what evidence FICO intended to put forth at trial to overcome a fatal defect in its copyright claims.  That defect came to light for the first time a year earlier during supplemental summary judgment briefing, when FICO disclosed that it has no copyright registration for the work upon which its remaining copyright claims are premised—Version 7.1 of Blaze Advisor.

According to Marce's deposition testimony, at trial FICO intends to rely on his previously undisclosed expert opinion that Version 7.1 is "substantially similar" to earlier, registered versions of Blaze.  But FICO cannot sustain its burden to show substantial similarity at trial based on Marce's testimony for three independent reasons: (1) Marce's expert testimony and report come more than two years past the deadline for expert disclosures under the Court's Scheduling Order; (2) FICO failed to produce the content of the copyrighted works that it alleges are "substantially similar" during discovery, *i.e.*, the Blaze source code; and (3) Marce's expert testimony is not sufficient to show substantial similarity as a matter of law.  Accordingly, Defendants Federal Insurance Company and ACE American Insurance Company (collectively, "Federal") have good cause to amend

1

the Scheduling Order to allow them to bring motions to preclude FICO from relying on its untimely expert evidence and for summary judgment dismissing FICO's remaining copyright claims.

## I.    Background

### A.    FICO Fails to Produce the Blaze Source Code or Identify Version 7.1 as the Basis for its Copyright Claims During Discovery.

Count III of FICO's operative Second Amended Complaint alleges that "Federal's post-termination use of the FICO Products constitutes an unauthorized reproduction of registered works."[1]  (Dkt. 132 at ¶ 55 (emphasis added).)  FICO defines "FICO Products" in its pleadings as "FICO Blaze Advisor products and related maintenance services."  (*Id.* at ¶ 15.)  Elsewhere in its Complaint, FICO alleges that it maintains copyright registrations for several versions of Blaze but does not reference a registration for Version 7.1.  (*Id.* at ¶ 12.)  In fact, FICO did not and still does not maintain a copyright registration for Version 7.1.  (Declaration of Terrence J. Fleming ("Fleming Decl."), Ex. 1.)

FICO served its first set of Initial Disclosures under Federal Rule of Civil Procedure 26(a)(1) on March 17, 2017.  (Fleming Decl., Ex. 2.)  As required by Rule 26(a)(1)(A)(ii), FICO disclosed the "categories of documents, electronically stored information, and tangible things that it or its attorneys have in their possession, custody, or control to support

---

[1] FICO also asserts a copyright infringement claim against ACE American and Federal in Count IV of its Second Amended Complaint, alleging that ACE American made infringing use of Blaze and that Federal and ACE American "knowingly caused, participated in, materially contributed to, induced, and derived economic benefit from the infringement of FICO's copyright interests."  (Dkt. 132, ¶ 65.)  Because Count IV is also premised on the alleged unlicensed use of Blaze Version 7.1, FICO is required to provide proof of a valid copyright registration to prevail on this copyright claim as well.

its claims or defenses." (*Id.*)  However, FICO did not disclose the source code for Blaze as a category of documents that it may use "to support its claims or defenses." (*Id.*)  FICO subsequently amended its Initial Disclosures twice, but never added software code to the list of evidence it may use to support its claims or defenses at trial.  (*Id.*, Exs. 3-4.)

Federal served its first set of discovery requests on FICO on April 18, 2017. (Fleming Decl., Exs. 5-6.)  Federal issued the following Interrogatory to FICO:

> Identify each Work you contend Federal used beyond the scope of the license granted in the Agreement and describe the basis for your contention.

(*Id.*, Ex. 5 at Interrogatory No. 3.)  Federal also issued a corresponding document request, asking FICO to produce any documents "identified in, described in, or relied on in preparing your responses to Federal's Interrogatories."  (*Id.*, Ex. 6 at Request No. 1.)  In response, FICO again did not identify or produce the Blaze software code.  (*Id.*, Ex. 7 at Response No. 3; Ex. 8 at Response No. 1.)  Instead, FICO simply reiterated its allegation that Federal used the works "identified in" its pleadings in an infringing manner.[2]  (*Id.* Ex. 7 at Response No. 3.)

Under the operative Sixth Amended Pretrial Scheduling Order, fact discovery closed on March 22, 2019 and the Parties' deadline to disclose their affirmative expert witnesses and expert reports was April 19, 2019.  (Dkt. 205.)  FICO never identified or produced the Blaze source code in its Initial Disclosures or in its discovery responses prior

---

[2] FICO provided similarly evasive answers in response to other discovery requests from Federal, failing to identify Version 7.1 or identifying 7.1 along with several other versions of Blaze.  (*See* Fleming Decl., Ex. 7 at Responses to Interrogatories Nos. 2, 4.)

to the March 22, 2019 deadline for fact discovery.  FICO also did not disclose any expert to testify regarding the Blaze source code or produce any expert report on this topic prior to the April 19, 2019 deadline for expert disclosures.

**B.      In May 2020, FICO Concedes that it Must Show "Substantial Similarity" Between the Code Comprising Version 7.1 and Earlier Versions of Blaze to Satisfy the First Element of Its Copyright Claims.**

The Parties briefed cross-motions for summary judgment and *Daubert* motions during the summer of 2019.  In its briefing on these Motions, FICO represented that it was relying on other, registered versions of Blaze, including Version 6.7, to support its claims. (Dkt. 398 at 8, 31.)  The Court issued an Order on these motions on March 23, 2020. (Dkt. 731.)   In its Order, the Court requested supplemental briefing on the issue of Federal's statute-of-limitations defense and the related topic of the "predicate act doctrine."[3]  (*Id.* at 60.)

At the Court's invitation, the Parties filed their Supplemental Cross-Motions for Summary Judgment on April 22, 2020.  (Dkt. 744, 751.)   In its opening brief, FICO disclosed *for the first time* that Federal's allegedly unauthorized acts of "reproduction and distribution" concerning a single version of Blaze—Version 7.1—are *"the only acts on which FICO's infringement claim is based."* (Dkt. 744 at 1 (emphasis added); *see also id.* at 16 ("FICO does not assert an infringement claim for Blaze Advisor Version 6.7."); *see*

_____

[3] The Court requested this briefing because it had allowed Federal to amend its Answer to assert a statute of limitations defense based on FICO's recharacterization of the specific conduct by Federal that it claimed was infringing in FICO's opening summary judgment brief, filed on July 25, 2019.  (*See* Dkt. 498; Dkt. 684 at 3 ("The amendment is warranted, the magistrate judge reasoned, because FICO's initial complaint was ambiguous.").)

*also* Dkt. 773 at 13 ("FICO's copyright infringement claims are based on the unauthorized reproduction and distribution of Blaze Advisor Version 7.1 in the United States. They are not based on Blaze Advisor Version 6.7 . . .").) This was a complete departure from FICO's pleadings stating that numerous versions of Blaze were the basis for its copyright claims (Dkt. 132, ¶ 12), its discovery responses referring to those pleadings and other versions (Fleming Decl., Exs. 7-8), and FICO's own summary judgment briefing from the year prior in which it asserted that its claims were based on Version 6.7 (Dkt. 398 at 8, 31).

The reason for FICO's sudden recharacterization of its copyright claims to focus on Version 7.1 is clear. Federal had pointed out that FICO's earlier briefing relied on allegations of infringing uses of earlier versions of Blaze that had occurred outside the Copyright Act's three-year statute of limitations period. (*See* Dkt. 567 at 2-3; Dkt. 578 at 8-13.) Federal responded to FICO's new characterization of its claim, however, by pointing out that relying on Version 7.1 created another major problem for FICO's case because *Version 7.1 is not the subject of a valid copyright registration with the United States Copyright Office.* (Dkt. 776 at 2.) As detailed further below, under clear precedent from the United States Supreme Court, a party may not maintain a copyright claim based on an unregistered work. *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019).

FICO, however, responded to this registration deficiency by recharacterizing its copyright claims yet again. FICO argued that its claims were actually based on earlier, registered versions of Blaze and that it could prove Federal had infringed upon these earlier

versions of Blaze by showing that "the source code of Version 7.1 is substantially similar to the source code of the registered versions of Blaze Advisor." (Dkt. 795 at 4.)

Because the Court had limited the issues to be addressed in those motions to Federal's statute of limitations defense and the related issue of the predicate-act doctrine, however, the Court did not address the Parties' arguments regarding the absence of a copyright registration for Version 7.1 in its order on the Parties' Supplemental Motions. (Dkt. 840 at 3.)  The Court did, however, grant summary judgment to Federal dismissing one of FICO's copyright claims, namely Count II of FICO's Second Amended Complaint. (*Id.* at 16.)  The Court also noted the following regarding FICO's shifting descriptions of its copyright claims:

> It is unclear whether FICO is genuinely confused about its prior allegations and arguments or FICO is being either intentionally disingenuous or strategically ambiguous.  But whichever reason explains these inconsistencies in the record, FICO cannot repeatedly shift its legal theories to avoid an adverse ruling and, in doing so, misdirect both the Court and Defendants.  Indeed, Defendants cannot reasonably defend against a claim when FICO cannot consistently define the scope of its own claim.

(Dkt. 840 at 8-9.)  Following the Court's Order, it remained unclear how FICO intended to prove that the source code for Blaze Version 7.1 is "substantially similar" to the code for a registered version of the software.

### C.    In November 2020, FICO Engages a Software Expert to Produce a Blaze Source Code Analysis Without Informing Federal.

After FICO's failure to obtain a copyright registration for Version 7.1 came to light, unbeknownst to Federal, FICO engaged a new in-house "expert" to analyze the Blaze

source code.  FICO engaged Jean Luc Marce, one of its software engineers, to conduct this analysis in November 2020. (Fleming Decl., Ex. 9 at 34:5-35:5; 66:3-6; 68:15-21.)  Marce has worked as a software engineer at FICO for approximately twenty years.  (*Id.* at 25:11-15.)  FICO, however, did not disclose Marce to Federal at the time it engaged him for this case.

On May 19, 2021, well before Federal was aware that FICO had asked Marce to produce an analysis of the Blaze source code, FICO contacted Federal to request permission to replace one of its previously disclosed witnesses on its Initial Disclosures with Marce and another witness, Sean Basemen.  (*Id.*, Ex. 10.)  Federal consented to the replacement on the condition that it be allowed to depose both witnesses.  (*Id.*, Ex. 11.)  Federal requested Marce's deposition on August 12, 2021.  (*Id.*, Ex. 12.)  After several more months of delays, FICO presented Marce for a deposition on November 11, 2021.

### D. In November 2021, FICO Discloses Marce's Expert Analysis on the Issue of Substantial Similarity for the First Time.

On November 10, 2021, the day before Marce's deposition, FICO produced Marce's expert analysis of the Blaze source code.  (*Id.*, Exs. 13-14.)  The following day, just two hours before Marce's deposition, FICO produced a revised version of his analysis.  (*Id.*, Exs. 15-16.)  FICO did not provide any explanation for these productions; it simply produced the documents.  (*Id.*, Exs. 13, 15.)

During his November 11, 2021 deposition, Marce repeatedly described himself as an "expert" in software engineering.  (*See, e.g.*, *id.*, Ex. 9 at 15:11-13 ("Do you have expertise in software programming? Yes, I do."); 17:2-4 ("you're an expert in software

7

programming, you'd say? Yes, I am."); 65:15-66:2; 90:13-15 ("Your expertise is in the area of software engineering, correct? That's correct."); 120:3-8; 135:10-17.)   Marce testified that he used his expertise to analyze the Blaze source code:

> Q.   Would someone who doesn't have expertise in software programs be able to prepare this analysis?
>
> A.   No, they would not be able to do that.
>
> Q.   So you would need to be a software engineer to prepare this analysis, right?
>
> A.   Correct.

(*Id.* at 115:7-13; *see also, e.g.*, *id.* at 112:16-23 ("So this is your expert analysis to Blaze Software code, right? That's correct."); 127:6-9 ("to make any sense of all of those pieces of data, you would have to have expertise in software engineering, right? That's correct.")

During his deposition, Marce also made clear that he had been asked to prepare his analysis by FICO's counsel for the purposes of this litigation.  (*Id.* at 34:5-23; 64:18-20.) This was the first time that Marce had prepared an analysis like this.  (*Id.* at 10:19-23; 64:2-20.)  Marce described the content of his analysis as follows:

> It's a document that compiles the analysis I've mentioned earlier showing [Blaze's] total number lines of JAVA code in each version listed in a Version column and comparing that with [Blaze's] prior version mentioned here as a reference version and it tells not only the total number of lines of code but also how many are common or kept as is from the prior version, how many were added and how many were deleted [*sic*].

(*Id.* at 112:6-15.)  Marce also described his "opinion" based on his analysis:

> So my opinion is that depending on which version you compare, but for the versions I've compared, the content was

> substantially similar from one version to the next for their – at
> least for the versions I was asked about.

(*Id.* at 65:10-14.)[4]

The details that FICO allowed Marce to reveal in his deposition showed that his analysis does not plug the hole in FICO's case caused by its failure to register the work that now forms the basis of its copyright claims. Marce only performed a "quantitative" analysis of lines of code as opposed to a "qualitative" analysis of the functions these lines of code actually perform within the software. (*Id.* at 59:14-61:21; 119:5-21.) Marce admitted that performing a qualitative analysis "would be very long and very expensive to do" and that "[i]t's going to be too complex to do qualitative analysis" of the various Blaze versions. (*Id.* at 60:2-5; 120:9-22.) This is due to the fact that "close to a hundred" employees at FICO are involved in developing a new version of Blaze, and that Marce merely represents one segment of the many teams that develop new versions of this "very complex product." (*Id.* at 51:6-22; 95:15-19.)

Marce's quantitative analysis did not even take into account the exact version of Blaze that Federal used within its business because he only analyzed broader versions that did not include "maintenance" and "patch" versions of the software. (*Id.* at 75:3-76:25.) Marce admitted that the source code may change between these more minor versions as well. (*Id.*) Marce also admitted that beyond the bare percentage of different lines of code,

---

[4] Further confirming that Marce created this analysis for litigation purposes, FICO's counsel repeatedly attempted to obstruct inquiry into the details of his analysis through work product objections during his deposition. (*See, e.g.*, Fleming Decl., Ex. 9 at 34:14-19; 44:6-18; 68:22-70:1.)

his knowledge of the substantive differences between the relevant versions of Blaze is

nonexistent:

> Q.    So do you know what the differences are between
>       version 7 and version 7.1?
>
> A.    Actually, I don't.  I don't recall the differences between
>       those two versions.

(*Id.* at 99:25-100:3.)  In fact, Marce admitted that he has no personal knowledge of how

Federal used Blaze:

> Q.    Did you ever have any knowledge of how the
>       defendants in this case were using the Blaze Software at
>       their company?
>
> A.    No, I do not.

(*Id.* at 70:23-71:8.)

Despite these limitations in Marce's analysis and personal knowledge, his testimony

is the only evidence available to FICO for the purpose of attempting to satisfy the first

element of its copyright infringement claim—registration.  As detailed further below,

Marce's testimony is not admissible at trial and it could not satisfy FICO's burden on this

element even if it were admissible.  Because FICO's remaining copyright claims account

for most, if not all,[5] of the damages that FICO may seek at trial, dismissing them now could

obviate the need for this lengthy and complex jury trial to take place altogether.  For these

---

[5] The Court granted Federal's *Daubert* Motion and excluded Federal's damages expert, Neil Zoltowski, from providing expert testimony regarding FICO's actual damages at trial because FICO attempted to inflate its actual damages figures by tenfold via Zoltowski's testimony.  (Dkt. 731 at 30-34.)  Without an expert to support its alleged breach of contract damages, the Order leaves FICO to rely on its remaining copyright claims for any monetary recovery at trial.

reasons, Federal requests that the Court amend the Scheduling Order to allow it to file a non-dispositive to preclude FICO from relying on Marce's untimely expert evidence under Federal Rule of Civil Procedure 37 and a motion for summary judgment dismissing FICO's remaining copyright claims.

## II.   Legal Standard.

Under Federal Rule of Civil Procedure 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent."   In addition, District of Minnesota Local Rule 16.3 requires that a party moving to amend a scheduling order "explain the proposed modification's effect on any deadlines."   Magistrate Judges are afforded "broad discretion" in determining whether a party has satisfied Rule 16(b)(4)'s good cause standard.  *Shank v. Carleton Coll.*, 329 F.R.D. 610, 614 (D. Minn. 2019).  The good cause standard focuses on the moving party's diligence and whether modifying the scheduling order will result in prejudice to the non-moving party.  *Hofmann v. Enter. Leasing Co. of Minnesota, LLC*, No. 13-CV-255 (JNE/SER), 2014 WL 12601038, at *2 (D. Minn. Oct. 15, 2014).

## III.   Argument.

Federal has "good cause" under Federal Rule of Civil Procedure 16 to amend the Court's Scheduling Order by allowing it to file motions to preclude FICO from relying on Marce's untimely expert evidence and for summary judgment on FICO's remaining copyright claims.  First, Federal was diligent in bringing this Motion soon after FICO's disclosure of Marce's untimely expert opinions and analysis at his November 11, 2021 deposition.  Second, granting Federal leave to file these motions could conserve both the

Court's and the Parties' resources by removing FICO's unmeritorious copyright claims from this case without the need for a lengthy and complex jury trial on those claims. Third, amending the Scheduling Order will not result in unfair prejudice to FICO given that briefing on these motions is unlikely to cause a significant delay of the trial in this matter. *See Laughlin v. Stuart*, 2021 WL 689502, at *5 (D. Minn. Feb. 23, 2021) (finding good cause to amend scheduling order when, due to non-moving party's changing positions, Defendants "lacked clarity on what claims they would need to address in dispositive motion practice").

A.   **Federal was Diligent in Bringing this Motion After FICO Disclosed its Intent to Rely on Inadmissible Expert Evidence to Save its Copyright Claims.**

Federal was "diligent" in bringing this Motion after FICO disclosed that it intends to rely on Marce's untimely expert testimony at his November 11, 2021 deposition. For the purpose of Rule 16's "good cause" standard, diligence focuses on a party's attempts to comply with a scheduling order's relevant deadlines. *Hofmann*, 2014 WL 12601038, at *2. Federal could not have brough a motion based on Marce's testimony or analysis prior to the deadlines found in the Sixth Amended Pretrial Scheduling Order because FICO did not disclose Marce's expert opinions or analysis until *two and a half years* after those deadlines elapsed.

In *Hofman*, the court found that the plaintiff was diligent in bringing a motion to amend the scheduling order "nearly a year" past the relevant deadline based on the defendant's disclosure of a new witness affidavit. 2014 WL 12601038, at *3–*5. The court reasoned that this "newly discovered evidence" justified allowing the plaintiff to file

12

its motion beyond the scheduling order's deadline and that the plaintiff was "diligent" in bringing its motion to amend shortly after receiving the affidavit. *Id.* at *5; *see also Hernandez-Loring v. Universidad Metropolitana*, 233 F.3d 49, 51 (1st Cir. 2000) (affirming district court's finding of good cause to allow Defendant to file untimely summary judgment motion based on plaintiff's late disclosure of relevant evidence).

Federal was also diligent in bringing this Motion once Marce's November 11, 2021 deposition revealed FICO's new strategy. As in *Hofman*, FICO did not disclose the evidence upon which Federal's Motion is based until well after the relevant deadlines in the Court's Scheduling Order. 2014 WL 12601038, at *3–*5. Indeed, as opposed to the one-year delay in *Hofman*, FICO did not disclose Marce's analysis to Federal until well over *two years* past the relevant deadlines for expert discovery, non-dispositive motions, and dispositive motions found in the Court's Scheduling Order. (Dkt. 205.) Moreover, despite the fact that FICO had asked Marce to prepare his analysis back in November 2020, FICO inexplicably did not produce Marce's analysis until November 10, 2021. (Fleming Decl., Ex. 9 at 34:5-35:5; 66:3-6; 68:15-21; Ex. 13.) Adding to the prejudice caused by this untimely production, FICO offered no explanation as to what it was producing. (*Id.*, Exs. 13, 15.) Marce proceeded to testify in his deposition that he is an "expert" in software engineering, that he applied his expertise to prepare his analysis at the request of counsel, and that he had developed an "opinion" based on this analysis. (*Id.*, Ex. 9 at 15:11-13; 17:2-4; 65:10-66:2; 90:13-15; 112:16-18; 115:7-13; 120:6-8; 127:6-9; 135:10-17.) Once Marce's testimony and the production of his report made it clear that FICO intends to present him as an undisclosed expert at trial, Federal promptly brought this Motion.

13

Accordingly, Federal satisfies the diligence requirement to show good cause under Rule 16(b).

> **B.**     **Without the Ability to File its Dispositive and Non-Dispositive Motions, Federal Will be Prejudiced by Being Forced to Defend Against FICO's Unmeritorious Copyright Claims in a Lengthy and Complex Jury Trial.**

In addition to its diligence in bringing this Motion, Federal has good cause for requesting an amendment to the Scheduling Order based on the merits of the motions it will file in response to the untimely disclosure of Marce's expert opinions and analysis. Courts have broad discretion to modify a scheduling order to allow for the filing of additional non-dispositive and dispositive motions. *See, e.g.*, *Microsoft Corp. v. Ram Distribution, LLC*, No. 06-CV-1247, 2009 WL 415712, at *1 (E.D. Wis. Feb. 13, 2009) (allowing plaintiff to file successive summary judgment motion because doing so "may ultimately obviate the need for trial . . . [t]hus, amending the scheduling order potentially conserves judicial resources and reduces overall cost to the parties"); *Gordon v. Veneman*, 61 F. App'x 296, 298 (7th Cir. 2003) (finding that a trial court has board discretion to permit a second summary judgment motion and may decide it is "better to allow a second summary judgment motion than risk wasting judicial resources on a claim that should never have made it to trial"); *St. Clair v. City of Iola*, No. 92-4024-SAC, 1994 WL 129993, at *2 (D. Kan. Mar. 2, 1994) ("The court, in the exercise of its discretion, finds that under the circumstances of this case it is a benefit to both the court and the parties to permit the defendant to file a motion for summary judgment out of time."). Accordingly, the Court should amend the Scheduling Order to allow Federal to file its proposed motions because they are meritorious and will likely save the Court and the Parties considerable resources

by narrowing the issues in dispute and potentially obviating the need for a lengthy and complex jury trial altogether. *See Gordon*, 61 F. App'x at 298; *Microsoft Corp,* 2009 WL 415712 *1.

### 1. Good Cause Exists Because FICO is Precluded from Relying on Marce's Expert Testimony and Analysis Under Rule 37.

If granted leave to amend the Scheduling Order, Federal will file a motion pursuant to Federal Rule of Civil Procedure 37 to preclude FICO from presenting any testimony or analysis from Marce regarding the "substantial similarity" of the various versions of Blaze's software code at trial.  Federal is entitled to this relief under Rule 37(c)(1), which provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  FICO was required to disclose Marce as an expert witness and provide a report from him no later than April 19, 2019 under Rule 26(a) and the Sixth Amended Pretrial Scheduling Order (Dkt. 205), which means his testimony and analysis must be excluded.  *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 283 (8th Cir. 1995).[6]

---

[6] There is no question that Marce is being presented by FICO as an "expert" within the meaning of Federal Rule of Civil Procedure 26(a)(2)(A).  The rule provides that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."  Fed. R. Civ. P. 26(a)(2)(A). Federal Rule of Evidence 702 defines experts as witnesses who will testify in the form of an opinion that is based on "scientific, technical, or other specialized knowledge."  Lay witnesses are precluded from providing opinion testimony based on technical training. *United States v. Peoples*, 250 F.3d 630, 641 (8th Cir. 2001) (stating that lay opinion testimony must not "provide specialized explanations or interpretations that an untrained

FICO has no justification for this eleventh-hour disclosure or its year-long delay in producing Marce's analysis to Federal. Further, this is part of an ongoing pattern by FICO in this case. (*See* Dkt. 840 at 8-9 ("FICO cannot repeatedly shift its legal theories to avoid an adverse ruling and, in doing so, misdirect both the Court and Defendants.").) It is equally clear that FICO's violation of the Scheduling Order could cause significant harm to Federal. Federal has diligently prepared its case, selected expert witnesses, and pursued a dispositive motion strategy based on the expert disclosures and discovery FICO provided in accordance with the Court's deadlines. *See Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 760 (8th Cir. 2006) (affirming district court's order precluding expert from testifying at trial because Defendant "would have suffered significant prejudice if the district court allowed [the expert] to testify as a primary expert witness," where "[Defendant] based its litigation strategy on the initial disclosure of primary experts ... selected its own expert witnesses and developed motion and trial strategies based on that expert witness evidence."). Because FICO's failure is not "substantially justified or harmless," FICO

---

layman could not make if perceiving the same acts or events"). Marce not only described himself as an "expert" in software engineering throughout his deposition, but he also admitted that his opinion is based on his technical expertise. (Fleming Decl., Ex. 9 at 15:2-17:4, 65:5-66:2, 90:13-15, 112:1-18, 115:7-13; 120:3-8, 127:6-9, 135:10-137:6.) Further, because Marce also qualifies as an expert "retained or specially employed to provide expert testimony in this case" within the meaning of Rule 26(a)(2)(B) because FICO's *counsel* asked him to prepare his analysis *for this case* and he has never performed such an analysis before. (Fleming Decl., Ex. 9 at 34:25-36:2; 64:18-20 ("Q. Well, you did this analysis for this case, right? A. That's right.").) Accordingly, under Rule 26(a)(2)(B), FICO was also required to provide an expert report detailing Marce's opinions by April 19, 2019. *Minnesota Min. and Mfg. Co. v. Signtech, USA, Ltd.*, 177 F.R.D. 459, 460–61 (D. Minn. 1998).

cannot rely on Marce as an expert witness at trial. *Id.; see also Sylla-Sawdon*, 47 F.3d at 283 (affirming district court order barring testimony from expert witness where plaintiff "did not abide by the Scheduling Order and Rule 26(a)(B)," reasoning that plaintiff "essentially asks us to ignore her expert's cursory response to the district court's Scheduling Order, and this we decline to do.").

FICO never sought leave to amend the Scheduling Order before identifying Marce and producing his expert report on the Blaze source code. In fact, FICO said nothing about its intention to present expert testimony through Marce for over a year after it asked him to perform his analysis for this case. Even then, FICO opted to disclose him only as a lay witness. FICO's conduct is disingenuous. Marce's deposition testimony and the analysis FICO disclosed the day before his deposition makes clear that FICO intends to present him as an expert witness at trial in violation of Rule 26(a)'s expert disclosure requirements and the deadlines found in the Court's Scheduling Order. Accordingly, Federal has good cause to file a motion seeking an order under Rule 37 that precludes FICO from presenting any testimony or analysis from Marce on the issue of "substantial similarity" at trial. *Sylla-Sawdon*, 47 F.3d at 283.

### 2. Good Cause Also Exists Because Federal is Entitled to Summary Judgment Dismissing FICO's Remaining Copyright Claims.

Even with Marce's untimely expert opinions, FICO would be hard pressed to satisfy its burden of proof on its remaining copyright claims. Without Marce's untimely expert opinions, FICO's remaining copyright claims fail immediately as a matter of law. As such,

good cause exists to amend the Scheduling Order to allow Federal to file a motion for summary judgment directed at FICO's remaining copyright claims.

> **i.   FICO's Remaining Copyright Claims Fail as a Matter of Law Because FICO Failed to Timely Identify and Produce the Source Code Necessary to Support its New Copyright Theory.**

Marce's testimony demonstrates that FICO's strategy to try to save its remaining copyright claims suffers from a fatal flaw: FICO has never produced the source code that Marce alleges is "substantially similar."  FICO failed to even identify, let alone produce, the source code for each version of Blaze during discovery and it is far too late for it to do so now.[7]  Without these works as admissible evidence at trial, FICO cannot show that Blaze Version 7.1 is "substantially similar" to a registered work.  FICO, therefore, cannot carry its burden on an "essential element" of its copyright claims, thereby entitling Federal to summary judgment dismissing these claims.  *Abhe & Svoboda, Inc. v. Hedley*, No. 15-CV-

---

[7] As noted above, Federal issued discovery requests asking FICO to identify all of the works it claimed were infringed and to produce any documents associated with those works.  Even if FICO could argue that it was not required to *disclose* the actual Blaze source code in response to Federal's discovery requests, in order to use the code at trial FICO was surely required to at least *identify* it in its Initial Disclosures as evidence that it "may use to support its claims or defenses" under Federal Rule of Civil Procedure 26(a)(1)(A)(ii).  *See, e.g.*, *Murphy v.* Harpstead, 2019 WL 6650510, at *7 (precluding plaintiffs from relying on evidence at trial when plaintiffs failed to disclose evidence during discovery); *Ehlers v. Siemens Med. Sols. USA, Inc.*, 2008 WL 11347695, at *3 (D. Minn. Feb. 8, 2008) ("Federal Rule of Civil Procedure 26(a)(1)(A)(ii) calls for mandatory disclosure of all documents that a party may use to support its claims or defenses."); *Rodriguez v. Akima Infrastructure Servs.*, LLC, 2019 WL 5212968, at *4 (N.D. Cal. Oct. 16, 2019) (The disclosure not only serves the function of ensuring that all parties possess the same underlying source materials . . . but it also importantly serves to foreclose trial by ambush or surprise.").

1952 (WMW/BRT), 2017 WL 6536587, at *3 (D. Minn. Feb. 2, 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986)).

FICO bears the burden of proof on two elements at trial to show that Federal committed copyright infringement through its use of Blaze Version 7.1.  FICO "must establish (1) ownership of a valid copyright; and (2) copying of original elements of the work."  *Haddley v. Next Chapter Tech., Inc.*, No. CV 16-1960 (DWF/LIB), 2019 WL 979151, at *7 (D. Minn. Feb. 28, 2019).  As a threshold matter, however, FICO cannot demonstrate "ownership of a valid copyright" unless it first establishes that the "work" at issue is the subject of a valid copyright registration with the United States Copyright Office. *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019).  Under the latest iteration of FICO's copyright claims, however, it is relying solely on Federal's use of the *unregistered* Version 7.1.

To show that Federal infringed on FICO's rights in an earlier, registered version of Blaze, FICO acknowledges that it must now present evidence at trial sufficient to prove that "Version 7.1 is substantially similar to the registered versions of Blaze Advisor."  (Dkt. 795 at 5.)  Proving that two works are "substantially similar" for the purposes of a copyright claim requires a "two-step analysis."  *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir. 1987).  The first step is an "extrinsic" analysis "focusing on objective similarities in the details of the works."  *Id.*  If the two works are similar from this extrinsic perspective, then for the second step "similarity of expression is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression." *Id.*  The complexity of this two-step analysis is "exacerbated in the context of computer

software" because courts also employ an "Abstraction-Filtration-Comparison test, which essentially dissects the software down to its varying levels, filters out the nonprotectable elements, and examines the remaining elements." *InfoDeli, LLC v. W. Robidoux, Inc.*, No. 4:15-CV-00364-BCW, 2017 WL 11517565, at *7 (W.D. Mo. Dec. 18, 2017); *see also i-Sys., Inc. v. Softwares, Inc.*, No. CIV. 02-1951 JRTFLN, 2004 WL 742082, at *10 (D. Minn. Mar. 29, 2004) (applying Abstraction-Filtration-Comparison test).

FICO does not have the evidence needed for a trier of fact to even *begin* the complex substantial similarity analysis that its new copyright theory requires it to follow at trial because FICO has failed to produce the content of any of the works at issue in this case— the source code[8] for the various versions of Blaze. Therefore, it is impossible for a trier of fact to make the necessary comparison to determine whether the unregistered version of Blaze that Federal used (Version 7.1) is "substantially similar" to an earlier, registered version. Numerous courts have dismissed copyright claims in this exact situation where a party has alleged an infringing use of its software but has failed to produce the code necessary for the trier of fact to evaluate substantial similarity. *See, e.g.*, *Antonick v. Elec. Arts, Inc.*, 841 F.3d 1062, 1066 (9th Cir. 2016) (affirming judgment as a matter of law

---

[8] A computer program's literal elements, *i.e.*, its "source code and object code," comprise the protected content of the asserted work that FICO's software infringement claim is premised upon. *See eScholar, LLC v. Otis Educ. Sys., Inc.*, No. 04 Civ. 4051(SCR), 2005 WL 2977569, at *8 (S.D.N.Y. 2005). FICO's representations along with its copyright registrations for earlier versions of Blaze confirm that the code is the protectable expression that FICO's copyright claims are premised upon. (*See* Dkt. 795 at 4; Fleming Decl., Ex. 1 (noting that the "Basis of Claim" for FICO's copyright registrations for other versions of Blaze is each version's "programming text").)

dismissing infringement claim because "none of the source code was in evidence . . . The jury therefore could not compare the works to determine substantial similarity"); *Indyne, Inc. v. Abacus Tech. Corp.*, 876 F. Supp. 2d 1278, 1291 (M.D. Fla. 2012), *aff'd*, 513 F. App'x 858 (11th Cir. 2013) (affirming dismissal of infringement claim where plaintiff "failed to present a copyrighted version of the code and cannot prove the contents of the original code"); *Airframe Sys., Inc. v. L-3 Commc'ns Corp.*, 658 F.3d 100, 106 (1st Cir. 2011) (affirming dismissal of infringement claim on summary judgment where plaintiff failed to produce software's source code and reasoning that "before the [substantial similarity] comparison can take place, the plaintiff must necessarily establish the content of the copyrighted work that it contends was infringed"); *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 146 (5th Cir. 2004) (same); *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003) (affirming grant of summary judgment where plaintiff failed to produce copy of software program for comparison, noting that "[plaintiff's] failure to adduce evidence for such a comparison . . . vitiates his claim."); *Virtual Chart Sols. I, Inc. v. Meredith*, No. 4:17CV546, 2019 WL 3806013, at *11 (E.D. Tex. June 17, 2019) (same); *Haddley*, 2019 WL 979151, at *7–*8 (same).

*Haddley v. Next Chapter Technology, Inc.* shows why FICO's remaining copyright claims fail as a matter of law. 2019 WL 979151, at *7–*8. In *Haddley* the plaintiff alleged the defendants had committed copyright infringement by copying the plaintiff's registered 2007 version of a software program to create a derivative work. *Id.* at *6. The plaintiff alleged that the 2007 version and the defendants' program were "substantially similar." *Id.* Judge Donovan Frank noted that "[t]he 2007 source code is relevant because it forms the

basis of Plaintiff's copyright infringement claim." *Id.* at *7.  Judge Frank granted summary

judgment to the defendants dismissing the plaintiff's copyright claims because the plaintiff

had failed to produce the source code, reasoning as follows:

> Here, Plaintiff's copyright claim in Count II is based on 2007
> source code, a complete copy of which Plaintiff has not
> produced.  Without such a copy, there can be no meaningful
> comparison or analysis of the asserted copyrighted work
> against what Plaintiff claims to be infringing work.  Therefore,
> Defendants are entitled to summary judgment on Count II.

*Id.* at *7.  The same result is warranted here because, based on Marce's testimony, FICO

is attempting to show substantial similarity between different versions of Blaze without

ever having produced the content of the copyrighted works necessary to make this claim.

### ii. FICO Cannot Save its Copyright Claims with Expert Testimony on Substantial Similarity as a Matter of Law.

Even if Marce's opinions regarding substantial similarity were admissible at trial

(they are not), they would not be sufficient to satisfy FICO's burden of proof on its

copyright claims for two reasons.  First, Marce conceded throughout his deposition that his

analysis is *not* sufficient to determine whether Version 7.1 is substantially similar to the

other versions of Blaze.  Second, expert testimony is not sufficient to satisfy the two-step

test for substantial similarity as a matter of law.

### a. Marce Conceded He Does Not Know if Version 7.1 is Substantially Similar to Earlier Versions of Blaze.

Marce conceded in his deposition that his analysis is insufficient to show substantial

similarity.  All Marce's analysis consists of is a one-page summary of the quantitative

similarities between the lines of code found in each version of Blaze.  (Fleming Decl., Exs.

14, 16.)   As Marce admitted, his quantitative analysis does not show the substantive differences between the various versions of Blaze.  (*Id.*, Ex. 9 at 59:14-61:12; 119:5-21.) In other words, Marce's analysis simply shows the similarities between lines of code without any explanation as to how these differences impact the functionality of the software.

In fact, Marce conceded that a qualitative analysis showing the substantive differences between the different versions of Blaze would be "too complex," would take a "very long" time to complete and would be "very expensive to do."  (*Id.* at 60:2-5; 120:9-22.)  Marce even admitted that the metric on which he based his opinion that Version 7.1 is "substantially similar" to other versions of Blaze was "pull[ed] out of thin air" and that he does not "recall the differences between those two versions."  (*Id*. at 99:25-100:3; 135:18-136:1.)  Further, Marce conceded that he has no personal knowledge of how the Defendants used Blaze.  (*Id.* at 70:23-71:8.)

Based on Marce's own testimony then, he does not know whether Version 7.1 is substantially similar to another version of Blaze and his analysis does not show this either. Such lacking evidence is not sufficient to oppose the motion for summary judgment that Federal seeks leave to file.

> **b.    Expert Testimony is Insufficient to Show "Substantial Similarity" Under Controlling Precedent.**

Even if Marce's expert testimony were admissible and sufficient to demonstrate the alleged similarities between Version 7.1 and earlier other versions of Blaze (it is not), FICO is precluded by controlling precedent from relying solely on expert testimony to show

substantial similarity in lieu of producing the actual copyrighted works at issue.  The Eight Circuit identified the flaw in FICO's attempt to rely on expert testimony in *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117 (8th Cir. 1987).  In *Hartman*, the plaintiff appealed the district court's grant of summary judgment on the issue of substantial similarity, arguing that it had "ignored the affidavits of literary experts listing similarities" between the two works at issue.  *Id.* at 120.  But the Eight Circuit affirmed, explaining that "[a]lthough expert opinion evidence is admissible in connection with the first of the substantial similarity analysis to show similarity of ideas, analytical dissection and expert opinion are not called for under the second step in which substantial similarity of expression is measured by a different standard—the response of the ordinary, reasonable person.  *Id.* (collecting authorities).  The Eight Circuit affirmed the district court's grant of summary judgment because the plaintiff had failed to introduce the actual copyrighted works.  *Id.*

The same result applies in the context of copyright claims concerning software.  For example, in *Antonick v. Electronic Arts, Inc.*, the Ninth Circuit affirmed the district court's grant of judgment as a matter of law to a video game manufacturer on the issue of substantial similarity.  841 F.3d 1062 (9th Cir. 2016).  In *Antonick*, the plaintiff alleged that later versions of a videogame produced by the defendant infringed his copyrights in earlier versions of the same videogame.  *Id.* at 1065.  But the plaintiff failed to introduce the relevant source code into evidence at trial.  *Id.*  The district court granted judgment as a matter of law and in affirming the decision, the Ninth Circuit reasoned that

> [O]ur law is clear that expert testimony cannot satisfy a
> plaintiff's burden of proof under the intrinsic test, which
> 'depends on the response of the ordinary person.'  [Plaintiff's

> expert's] testimony may have been enough to establish substantial similarity under the extrinsic test, but it cannot satisfy [Plaintiff's] burden of production under the intrinsic test.

*Id.* at 1067; *see also Indyne, Inc.*, 876 F. Supp. 2d at 1291; *Airframe Sys., Inc. v. L-3 Commc'ns Corp.*, 658 F.3d at 106; *Lee*, 379 F.3d at 146; *Bridgmon*, 325 F.3d at 577; *Virtual Chart Sols.* 2019 WL 3806013, at *11; *Haddley*, 2019 WL 979151, at *7–*8.

FICO cannot satisfy its burden of proof based on Marce's expert testimony.  Instead, FICO is required to produce the actual content of the works at issue—the source code for the various versions of Blaze.  A factfinder cannot evaluate substantial similarity without the source code.  *See, e.g.*, *Hartman*, 833 F.2d at 120; *Antonick*, 841 F.3d at 1065.  Because FICO failed to produce this evidence of an essential element of its copyright claims and Marce's analysis cannot make up for this deficiency, FICO's remaining copyright claims must fail as a matter of law.  *Abhe & Svoboda, Inc.*, 2017 WL 6536587, at *3 (noting that summary judgment is appropriate where the moving party "demonstrate[s] to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim").

### C.    Amending the Scheduling Order Will Not Result in Unfair Prejudice to FICO.

Finally, amending the Scheduling Order will not result in unfair prejudice to FICO because it is unlikely that allowing Federal to file the motions it seeks to file would result in any substantial disruptions to this case's upcoming deadlines.  D. Minn. L.R. 16.3.  As of the last notice from the Court on September 8, 2021, trial in this matter is currently scheduled to begin on April 6, 2022.  (Dkt. 844.)  If the Court grants Federal leave to file

the motions described above, it will file them as soon as possible.  Under the Local Rules, briefing on these motions will be completed well over a month prior to the start of trial, meaning it is possible the current trial date could be maintained.  If the trial date cannot be maintained, however, the resolution of Federal's proposed motions would warrant a slight delay of trial because they could simplify the issues for trial and potentially even obviate the need for this lengthy and complex jury trial to take place altogether. *See Microsoft Corp.*, 2009 WL 415712, at *1 ("amending the scheduling order potentially conserves judicial resources and reduces overall cost to the parties"); *Gordon,* 61 F. App'x at 298 (noting that a court may decide it is "better to allow a second summary judgment motion than risk wasting judicial resources on a claim that should never have made it to trial"). Trial could become unnecessary if the Court dismisses FICO's remaining copyright claims because the only monetary recovery available to FICO at trial at present appears to rely entirely on FICO's remaining copyright claims.  This is because the Court previously precluded FICO's damages expert from testifying on its alleged actual damages for breach of contract.  (Dkt. 731 at 30-34.)  Ultimately, given the lack of unfair prejudice to FICO, and the potential for significant prejudice to Federal and the Court from having to proceed with a trial for which FICO lacks the evidence necessary to sustain its burden of proof, Federal has shown "good cause" to amend the Scheduling Order.

## CONCLUSION

For the reasons set forth above, Federal respectfully requests the Court grant its Motion to Amend the Scheduling Order and grant it leave to file a motion for an order

precluding FICO from relying on Marce's testimony or analysis at trial and a motion for

summary judgment seeking the dismissal of FICO's remaining copyright claims.

Dated:  December 28, 2021

*s/ Terrence J. Fleming*

Terrence J. Fleming (#0128983)
tfleming@fredlaw.com
Leah C. Janus (#0337365)
ljanus@fredlaw.com
Christopher D. Pham (#0390165)
cpham@fredlaw.com
Ryan C. Young (#0397751)
ryoung@fredlaw.com
Christian V. Hokans (#0400377)
chokans@fredlaw.com

**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
(612) 492-7000 (tel.)
(612) 492-7077 (fax)

***Attorneys for Defendants***