# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation, | ) ) ) | Case No. 16-cv-1054 (WMW/DTS) |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **<u>REDACTED VERSION</u>** |
| FEDERAL INSURANCE COMPANY, an Indiana corporation, and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

# <u>PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO AMEND SCHEDULING ORDER</u>

## Table of Contents

I.   Introduction ................................................................................................ 1

II.  The Case History and Factual Background. ............................................. 3

     A.   Overview of Copyright Claims Against Federal and ACE American. ......... 3

     B.   Basic Copyright Law and the Role of Source Code. ................................... 6

     C.   FICO's Initial Disclosures in this Copyright Infringement Lawsuit
          Clearly Implicated Source Code. ................................................................ 7

     D.   Defendants Had No Interest in Blaze Advisor Source Code During
          Discovery. ................................................................................................... 9

     E.   Four Years After FICO's First Supplemental Initial Disclosure
          Defendants Deposed Marce. ...................................................................... 11

     F.   FICO Used Discovery to Determine the Versions of Blaze Advisor
          Used After the License Agreement Terminated. ........................................ 14

     G.   Defendants Knew the Time Period of Infringement Alleged in
          Counts III and IV and Should have Known the Version of Blaze
          Advisor They Used During the Infringement Period. ................................. 15

     H.   Defendants Also Should Have Known, Assuming Knowledge of
          Copyright Law, The Extent of Preexisting Material in Later Versions
          of Blaze Advisor Was Relevant Because Blaze Advisor 7.1 Was Not
          Registered .................................................................................................. 17

III. Legal Argument. ...................................................................................... 18

     A.   Defendants' Delay in Bringing this Motion is Egregious. .......................... 19

     B.   Defendants' Motion to Amend is Futile Because the Additional
          Motions it Seeks to Bring will be Denied by the Court. ............................. 21

          (1)   There is no Basis to Strike Marce's Testimony as Expert
                Opinion on "Substantial Similarity." ............................................... 21

          (2)   Good Cause to Move for Summary Judgment on Counts III
                and IV is Entirely Lacking. ............................................................. 26

     C.   Defendants' Alleged Prejudice is Entirely Self-Inflicted. .......................... 40

## Table of Contents

I.    Introduction ................................................................................................... 1

II.   The Case History and Factual Background. ............................................... 3

      A.    Overview of Copyright Claims Against Federal and ACE American. ......... 3

      B.    Basic Copyright Law and the Role of Source Code. ................................... 6

      C.    FICO's Initial Disclosures in this Copyright Infringement Lawsuit
            Clearly Implicated Source Code. ............................................................... 7

      D.    Defendants Had No Interest in Blaze Advisor Source Code During
            Discovery ................................................................................................... 9

      E.    Four Years After FICO's First Supplemental Initial Disclosure
            Defendants Deposed Marce .................................................................... 11

      F.    FICO Used Discovery to Determine the Versions of Blaze Advisor
            Used After the License Agreement Terminated ...................................... 14

      G.    Defendants Knew the Time Period of Infringement Alleged in
            Counts III and IV and Should have Known the Version of Blaze
            Advisor They Used During the Infringement Period. ............................... 15

      H.    Defendants Also Should Have Known, Assuming Knowledge of
            Copyright Law, The Extent of Preexisting Material in Later Versions
            of Blaze Advisor Was Relevant Because Blaze Advisor 7.1 Was Not
            Registered ............................................................................................... 17

III.  Legal Argument. ........................................................................................ 18

      A.    Defendants' Delay in Bringing this Motion is Egregious. ......................... 19

      B.    Defendants' Motion to Amend is Futile Because the Additional
            Motions it Seeks to Bring will be Denied by the Court. ........................... 21

            (1)   There is no Basis to Strike Marce's Testimony as Expert
                  Opinion on "Substantial Similarity." ............................................... 21

            (2)   Good Cause to Move for Summary Judgment on Counts III
                  and IV is Entirely Lacking. ............................................................. 26

      C.    Defendants' Alleged Prejudice is Entirely Self-Inflicted ......................... 40

D.     FICO will be Significantly Prejudiced by Amending the Scheduling Order and Allowing Defendants to Baselessly Attack Marce and FICO's Copyright Claims. .......................................................... 41

IV.    Conclusion ............................................................................................. 43

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Systems, Ltd. v. Teamsters Automobile Transport Chauffeurs et al.*,
   304 F.3d 785 (8th Cir. 2002) ............................................................... 39, 40

*Bergfeld v. Unimin Corp.*,
   319 F.3d 350 (8th Cir. 2003) ....................................................................... 35

*Big Daddy Games, LLC v. Reel Spin Studios, LLC*,
   No. 12-cv-449, 2013 US. Dist. LEXIS 200235 (W.D. Wis. April 10,
   2013) ................................................................................................................ 29

*Burlington Northern R. Co. v. State of Nebraska*,
   802 F.2d 994 (8th Cir. 1986) ....................................................................... 22

*Central Point Software, Inc. v. Nugent*,
   903 F. Supp. 1057 (E.D. Tex. 1995) ........................................................... 26

*Computer Assocs. Int'l, v. Altai, Inc.*,
   982 F.2d 693 (2d Cir. 1992) ................................................................. 30, 31

*CSM Investors, Inc. v. Everest Dev., Ltd.*,
   840 F. Supp. 1304 (D. Minn. 1994) ............................................................ 32

*Doe v. Young*,
   664 F.3d 727 (8th Cir. 2011) ................................................................. 34, 35

*Duluth Lighthouse of the Blind v. C.G. Bretting Mfg. Co.*,
   199 F.R.D. 320 (D. Minn. 2000) . Judge Wright's Summary Judgment
   Order ........................................................................................................ 39, 40

*E.E.O.C. v. Hibbing Taconite*,
   266 F.R.D. 260 (D. Minn. 2009) .................................................................. 18

*Enfield by & Through Enfield v. A. B. Chance Co.*,
   No. 94-1423-JTM, 1997 U.S. Dist. LEXIS 1151 (D. Kan. Jan. 18, 1997) ........... 37, 38

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) ....................... 25, 30

*Gomez v. Rivera Rodriguez*,
   344 F.3d 103 (1st Cir. 2003) ........................................................................ 22

*Haddley v.Next Chptr. Tech, Inc*,
  2019 U.S. Dist. LEXIS 31816, at *17 (D. Minn. Feb. 28, 2019) ................................ 36

*Hartzell Mfg., Inc. v. American Chemical Technologies, Inc.*,
  899 F. Supp. 405 (D. Minn. 1995) ................................................................................. 21

*Heartland Bank v. Heartland Home Fin., Inc.*,
  335 F.3d 810 (8th Cir. 2003.) ........................................................................................ 35

*IBEW Local 98 Pension Fund v. Best Buy Co.*,
  326 F.R.D. 513 (D. Minn. 2018) .................................................................................... 18

*In re Indep. Serv. Orgs. Antitrust Litig.*,
  964 F. Supp. 1469 (D. Kan. 1997) ................................................................................. 29

*MAI Sys. Corp. v. Peak Comput., Inc.*,
  991 F.2d 511 (9th Cir. 1993) .......................................................................................... 31

*Medtronic, Inc. v. Boston Scientific Corp.*
  Case No. 99-1035, 2002 WL 34447587 (D. Minn. Aug. 8, 2002) .............................. 22

*Mitel Inc. v. Iqtel Inc.*,
  124 F.3d 1366 (10th Cir. 1997) ............................................................................... 31, 33

*Montgomery v. Noga*,
  168 F.3d 1282 (11th Cir. 1999) ............................................................................... 26, 27

*Rahn v. Hawkins*,
  464 F.3d 813 (8th Cir. 2006) ......................................................................................... 18

*Salestraq Am., LLC v. Zyskowski*,
  635 F. Supp. 2d 1178 (D. Nev. 2009) ........................................................................... 29

*Sherman v. Winco Fireworks, Inc.*,
  532 F.3d 709 (8th Cir. 2008) .................................................................................... 18, 21

*Titlecraft, Inc. v. NFL*,
  No. 10-758, 2010 U.S. Dist. LEXIS 134367 (D. Minn. Dec. 20, 2010) ............... 31, 32

*U.S. v. Mast*,
  999 F.3d 1107 (8th Cir. 2021) ....................................................................................... 22

*United States v. Espino*,
  317 F.3d 788 (8th Cir. 2003) ......................................................................................... 23

**Statutes**

17 U.S.C. § 101 ............................................................................................... 6

17 U.S.C. §102(a) ....................................................................................... 6, 8

17 U.S.C. § 106(2) ........................................................................................ 36

17 U.S.C. § 411(a) .......................................................................................... 6

**Other Authorities**

2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* §
   7.16[B][2][c] (2021) ................................................................................ 29

2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* §
   7.16[B][5][b](2021) ................................................................................. 17

## I.    Introduction

Trial is set in this case for April 6, 2022—three (3) months from today.  Yet, at this late hour, Federal Insurance Company ("Federal") and ACE American Insurance Company ("ACE American") (collectively "Defendants") seek to stall the case with futile, meritless motion practice.

This is the second time Defendants have sought to amend the schedule to file additional summary judgment motions and to avoid trial.  (*See* Dkt. 758-762.)  In the last instance, on May 19, 2020, this Court summarily denied the same without opinion.  (Dkt. 793.)  The Court should do the same here for the following reasons.

No good cause exists to amend the scheduling order to allow Defendants to move to exclude the testimony of Jean Luc Marce ("Marce") or to file a summary judgment motion on Counts III and IV of the Second Amended Complaint.  Good cause requires diligence, lack of futility, prejudice to the moving party, and a lack of prejudice to the non-moving party.  Here, none of these factors favor Defendants.

Defendants' claims that Marce is an expert witness are baseless.  Marce is a software engineer at FICO.  For nearly 30 years, Marce has written and worked with Blaze Advisor software code.  Marce is not an expert.  He is a fact witness whose testimony will be based on first-hand knowledge and personal experience.  The subject matter of Marce's testimony was disclosed to Defendants on June 6, 2017.  At that time, Jeremy Chen, no longer employed with FICO, was designated to provide the same testimony.  The false notion that FICO is presenting expert testimony in the guise of fact witnesses could have been asserted more than four years ago.  If FICO asks Marce any

1

questions at trial that implicate Rules of Evidence 702, 703 or 705, Defendants are free to object and seek the ruling of the trial court.

Defendants' assertions that FICO's copyright infringement claims (Counts III and IV of the Second Amended Complaint) should be dismissed are likewise faulty. At trial, FICO will prove that substantial portions of the registered Blaze Advisor Version 7.0 software code are included within the unregistered Blaze Advisor Version 7.1 software code, and the unauthorized use infringes Version 7.0. FICO will also prove the registered Blaze Advisor Version 7.2 software code encompasses substantial amounts of the unregistered Blaze Advisor Version 7.1 software code. The unauthorized use of Version 7.1 infringes registered Version 7.2.

Blaze Advisor source code has been a fundamental element of the case from the outset. It was disclosed in FICO's Initial Disclosures, and the relevance of the software code was underscored by FICO's disclosure of discoverable information from its trial witnesses. Defendants' arguments to the contract are hyper-technical. Any contention they were not on notice of the relevance of source code from the pleadings stage forward suggests willful ignorance. Litigation is not a game of "got you."

FICO would be severely prejudiced if this motion to amend were granted. Exclusion of FICO's software code at trial would be an exceptional sanction, not warranted by the facts. FICO will also be prejudiced by lost trial preparation time and a pushed trial date should it be forced to defend against a baseless summary judgment motion. Any change in the case schedule is unduly prejudicial to FICO. Defendants are in a bed of their own making. This motion should be denied.

II.     **The Case History and Factual Background.**

    A.      <u>**Overview of Copyright Claims Against Federal and ACE American.**</u>

FICO commenced its lawsuit in April 2016. (Dkt. 1.) From the beginning—more than five years ago—FICO alleged that Federal breached the Software License and Maintenance Agreement ("License Agreement") between FICO and Chubb & Son, a division of Federal Insurance Company.  (Dkt. 1, ¶¶ 14-35.)  Chubb & Son was the manager of several U.S. insurance company subsidiaries ("writing companies") of the Chubb Corporation.  Chubb & Son used Blaze Advisor in various applications in connection with selling insurance in the name of Federal and in the name of those other writing companies.  Federal admits it continued to use Blaze Advisor, through its division Chubb & Son, in connection with selling insurance after the License Agreement terminated. (Declaration of Heather J. Kliebenstein (henceforth "Kliebenstein Decl."), Exhibit 1.)

FICO alleged in Count III of the First Amended Complaint that Federal's unauthorized use of Blaze Advisor after the License Agreement terminated was copyright infringement.  (Dkt. 33 at ¶¶ 46-51.)  At the time of the Complaint and the First Amended Complaint, FICO did not know the version of Blaze Advisor used by Federal during the infringement period.  That knowledge resided exclusively with Federal.

In an early Rule 30(b)(6) deposition, taken August 2, 2018, FICO learned ██████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

The Rule 30(b)(6) deponent, John Taylor, Senior Vice President of Finance of ACE American also revealed ████████████████████████████████████████████ ████ (*Id*., Exhibit 2, 75:6-77:22.)  ACE American used Blaze Advisor in the same applications to sell insurance in the name of ACE American, in the name of Federal, in the name of the writing companies that were formerly part of the Chubb Corporation, and in the name of writing companies that were formerly part of ACE Limited.  (*Id.*, Exhibit 3 at 7-8.)

FICO's Second Amended Complaint, dated September 11, 2018, added ACE American as a defendant.  Count IV asserts copyright infringement against ACE American and Federal. Knowledge of the version of Blaze Advisor used by Federal and then by ACE American, without any color of a license, was still exclusively known by Defendants.  FICO's discovery efforts had yet to reveal that information.

FICO's copyright claims seek disgorgement of profits from the sale of insurance in connection with the unauthorized use of Blaze Advisor by Federal, and disgorgement of profits from the sale of insurance in connection with the unauthorized use of Blaze Advisor by ACE American.  FICO's disgorgement claim captures all profits from the sale of insurance in the name of Federal and ACE American as well as all profits from the

4

sale of insurance in the name of all writing companies that sold insurance in connection with the use of applications using Blaze Advisor.

FICO's Complaint (and all subsequent Amended Complaints) includes a table identifying the 12 versions[1] of Blaze Advisor for which FICO owns federal copyright registrations.  (*Id.*, ¶ 10.)  FICO identified all its copyright registrations in the pleadings for several reasons:

- To demonstrate that FICO owned copyright registrations protecting Blaze Advisor that pre-dated the License Agreement.

- To demonstrate, by including all earlier registrations, the futility of any defense that the scope of copyright protection over any later version of Blaze Advisor, for example Version 7.0 or Version 7.2, was in any way limited.

- To demonstrate the futility of any challenge to the validity of the registrations or to FICO's ownership of copyrights over Blaze Advisor.

- To ensure FICO's ability to rely on any of the applicable registrations to prove infringement once the version (whether registered or not) used and reproduced by the Defendants without authorization was revealed through discovery.

---

[1] A software "version," which is designated by a change in the number "left of the decimal," is an update to the software that typically includes *significant* additional features, functionality, or performance improvements.  A software "release," which is designated by a change in the number "right of the decimal," typically includes *minor* improvement, functionality modifications, or error corrections developed since the previous release.  Certain releases that are designated "right of the second decimal" are called "service releases" and typically contain only one or more fixes for recognized errors.  To illustrate: for a software program denoted as X.y.z, "X" is the version number, "y" is the release number, and "z" is the service release number.  For convenience, the designation "version" is used in this memorandum, as it was in the pleadings, to identify each Blaze Advisor software program, registered and unregistered, without distinction between "versions" and "releases."  (Kliebenstein Decl., Exhibit 4 (henceforth "Marce Dep."), 74:6-14, 75:9-22.)

Defendants have not alleged any affirmative defense directed to the ownership or validity of FICO's Blaze Advisor copyrights, registered or unregistered. All those defenses have been waived. Defendants have not contended the scope of copyright protection over the Blaze Advisor software covered by these registrations is in any way limited. Defendants never sought production of FICO's copyrighted software code, nor have they taken any other discovery directed to the Blaze Advisor code over which FICO has the exclusive rights granted by the Copyright Act.

> **B.   Basic Copyright Law and the Role of Source Code.**

The Copyright Act of 1976 protects computer programs. 17 U.S.C. §102(a). A "computer program" is defined in the Act as a "set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result." 17 U.S.C. § 101. These instructions in human readable form are called "source code." In machine (computer) readable form they are called "object code." The protections of copyright automatically attach to the expression that constitutes the statements or instructions (i.e., the code directing a computer) at the moment they are written, not when registered with the Copyright Office. 17 U.S.C. § 102(a).

A Certificate of Registration that the owner has registered its copyright-protected expression with the Copyright Office is a jurisdictional or standing prerequisite to bringing an action for infringement. 17 U.S.C. § 411(a). The Certificate of Registration "attests that registration has been made for the work identified" by the Certificate. For source code, the registration process requires deposit with the Copyright Office of one copy of identifying portions of the source code for the version of the program to be

registered.  Compendium of U.S. Copyright Office Practices, Third Edition, § 1509.1(F).
In the cases of all the Blaze Advisor registrations, that identifying material is the
applicable programming text, the software code, for the version registered.

### C.   FICO's Initial Disclosures in this Copyright Infringement Lawsuit Clearly Implicated Source Code.

The Initial Disclosures must be read in context with the operative pleadings and
the law of copyright.  The Amended Complaint dated February 1, 2017, identifies at
paragraph 10 each version of Blaze Advisor covered by copyright registrations.  Exhibit 1
to the Amended Complaint (and the original Complaint) attached a copy of each
Certificate of Registration.

Each of those Certificates identifies the protected material as "programming
text"—in other words, the code to Blaze Advisor.  That is the expression covered by the
registrations, and the deposit copy of that "programming text" identified the code covered
by each registration.  Federal has been on notice from the outset that the software code of
Blaze Advisor is a fundamental part of this lawsuit.

The Initial Disclosures are dated March 17, 2017.  (Dkt. 853-1 at 13.)  FICO
identified categories of documents and electronically stored information in its possession,
custody, or control to support its claims, including:

> Documents sufficient to show FICO's ownership of its federal copyrights in
> multiple versions of its FICO® Blaze Advisor business rules management
> software.

(*Id*. at 12.)

Defendants complain that FICO did not use the words "source code" in its Initial Disclosures. (Dkt. 851 at 7.)  In the context of the pleadings and copyright law, documents "sufficient to show" FICO's "ownership of its federal copyrights" necessarily includes that which is owned—the source code of Blaze Advisor.  There is nothing else to which "federal copyrights in . . . business rules management software" can mean.  It is only the software code (i.e., the "programming text"), the protectable expression, over which FICO has "federal copyrights."  Stated another way, documents that include the code that is the software program of Blaze Advisor are necessary to demonstrate ownership of the intangible intellectual property right called "copyright"[2].  Importantly, the Initial Disclosures did not limit themselves to the "federal copyright registrations" of Paragraph 10 of the Amended Complaint.  The disclosure included the code for all versions of Blaze Advisor, code that enjoyed the protections of copyright from the moment of creation and reduction to written form.

Less than three months later, FICO served its First Supplemental Initial Disclosures dated June 6, 2017.  The First Supplement expanded the subject matter disclosure for Jeremy Chen to include, "knowledge of the extent of preexisting material in later versions of the Blaze Advisor software."  There is no reasonable interpretation of the phrase "preexisting material" other than that it refers to the software code of Blaze Advisor.

---

[2] Copyright protection does not exist until the original expression is fixed in a "tangible medium of expression." 17 U.S.C. § 102(a).

8

FICO disclosed in its Initial Disclosures and First Supplement that it would support its claims with documents or electronically information that are the records of federal copyrights in multiple versions of its business rules management software, and it would also prove the amount of preexisting material from earlier versions in later versions of Blaze Advisor software with witness testimony.  The Blaze Advisor code is the protectable expression that constitutes the "federal copyrights" of business rules management software owned by FICO.  The proof of the amount of preexisting material from earlier versions in later versions of Blaze Advisor is a comparison of software code.

When Jeremy Chen left FICO's employment, FICO issued its Fourth Supplemental Initial Disclosures dated March 15, 2019.  (Kliebenstein Decl., Exhibit 5.) The Fourth Supplement identified Ferando Donati Jorge as the fact witness to testify to, among other things, "the extent of preexisting material in later versions of the Blaze Advisor software."  (*Id*.)  Thereafter, when Mr. Jorge left FICO's employment, FICO issued its Fifth Supplemental Initial Disclosures dated June 15, 2021.  (*Id*., Exhibit 6.) The Fifth Supplement identified Jean-Luc Marce to give fact testimony, regarding among other subjects, the same subject to which Mr. Chen and Mr. Jorge were to testify: "the extent of preexisting material in later versions of the Blaze Advisor software." (*Id*.)

D.    **Defendants Had No Interest in Blaze Advisor Source Code During Discovery.**

Defendants chose not to depose Mr. Chen after he was disclosed in June 2017. They chose not to depose Mr. Jorge after he was disclosed in March 2019.  Because of the lateness of the Fifth Supplemental Initial Disclosure, the parties agreed to the

substitution of witnesses in return for Defendants' deposition of Mr. Marce.  (*See* Dkt.

841, 842.)  Defendants took a November 2021 deposition of Mr. Marce on the identical

subject matter first identified in June 2017.

Defendants have never requested FICO to produce the source code of any version

of Blaze Advisor, registered or unregistered.  Defendants took no discovery, whether by

document requests, depositions, or otherwise, related to the deposit copies of Blaze

Advisor code deposited with the Copyright Office for each registered version of Blaze

Advisor.  They undertook no discovery related to any of FICO's communications with

the Copyright Office regarding Blaze Advisor software.  Defendants made no request for

documents and asked no interrogatories directed to the disclosed testimony of Mr. Chen,

or any of the subsequently disclosed witnesses who would testify on the same subject

matter.  Defendants took no discovery related to what they now claim is a "complex

substantial similarity analysis."  (Dkt. 851 at 24.)

Defendants' contention they took discovery that demanded FICO identify and

produce its source code is false.  (Dkt. 851 at 7.)  Defendants refer the Court to their

Interrogatory No. 3 but fail to inform the Court the interrogatory used a defined term

"Work."  They further fail to inform the Court the interrogatory is dated April 18, 2017,

very early in discovery.  Interrogatory No. 3 states:

> Identify each Work you contend Federal used beyond the scope of the license
> granted in the Agreement and describe the basis for your contention.

(Dkt. 853-1 at 30.)  The Interrogatories specifically defined "Work" as follows:

> 'Work' and 'Works' refer to the copyrighted works identified in Paragraph 10 of
> the Complaint.

(*Id.*)  Paragraph 10 of the Complaint identified the 12 Certificates of Registration issued by the Copyright Office.

FICO's answer to Interrogatory 3 is forthright and accurate: "FICO further states that Federal has used the Works identified in the Amended Complaint outside the scope of the license granted by the Agreement." (Dkt. 853-1 at 43.)  Interrogatory No. 3 did not ask about unregistered versions of Blaze Advisor. It specifically limited itself to registered Works.  The identity of those Works, the subject matter of the Interrogatory, were identified as the registered works in the Amended Complaint.

Defendants argue a document request for documents "identified in, described in, or relied on in preparing your responses to Federal interrogatories" required the production of source code.  (Dkt. 851 at 7.)  Source code was not identified in, described in, or relied on in preparing FICO's response to Interrogatory No. 3.  The argument fails of its own weight. FICO did not produce source code during discovery because Defendants did not request it.

###    E.    <u>Four Years After FICO's First Supplemental Initial Disclosure Defendants Deposed Marce.</u>

FICO's First Supplemental Initial Disclosures dated June 6, 2017, disclosed that FICO would prove authorship of Blaze Advisor software and the extent of preexisting material from earlier versions in later versions.  Defendants took no discovery on those subjects during the discovery period.

Repeating the description of testimony of Mr. Chen, the Fifth Supplemental Initial Disclosure identified Jean-Luc Marce as the fact witness to testify on the following topics:

- Knowledge regarding the authorship of the various versions of Blaze Advisor software.
- Knowledge of the extent of preexisting material in later versions of the Blaze Advisor software.

(Kliebenstein Decl., Exhibit 6.)

Regarding topic 1, as he said in his deposition, ██████████████████████

██████████████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████

Regarding topic 2, █████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████

Marce explained to Defendants' counsel ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

██████████████████

**F.**     **FICO Used Discovery to Determine the Versions of Blaze Advisor Used After the License Agreement Terminated.**

The version or versions of Blaze Advisor software Defendants used at the time the License Agreement terminated in 2016 has always been a relevant fact in this case.  Only Defendants knew this fact prior to discovery.  FICO took discovery to uncover these facts.

To that end, FICO's Second Amended Rule 30(b)(6) Notice had the following category as Topic # 1:

> The version of Blaze Advisor software used in connection with each application that deployed or deploys Blaze Advisor (being specific to each application by name) and hosted on servers located in the United States from and after March 31, 2016, to date. If various versions are used, then the date of use of each version.

(Kliebenstein Decl., Exhibit 8.)

FICO also served document requests.  That process revealed that Defendants maintained various records documenting its use of technology enterprise wide.  These documents revealed that Defendants used Blaze Advisor Version 7.1 on all their applications that used Blaze Advisor in connection with selling insurance when the License Agreement terminated and thereafter.  (*See id.*, Exhibits 9-11.)

14

To confirm Defendants made no derivative works from FICO's Blaze Advisor software FICO inquired whether Defendants had changed the Blaze Advisor code in any way.  FICO's Interrogatory No. 21, dated December 29, 2017, asked:

> From March 30, 2016 to date, identify and describe each instance in which Blaze Advisor software was modified in any way whether by Chubb & Son, a division of Federal, Federal, or any other entity or person.[3]

(Kliebenstein Decl., Exhibit 12.)  They did not.  FICO learned that Federal and ACE American, without authorization, used unregistered Version 7.1 and made no modifications to the software code authored by FICO.  (Kliebenstein Decl., Exhibits 14-15.)

### G.      Defendants Knew the Time Period of Infringement Alleged in Counts III and IV and Should have Known the Version of Blaze Advisor They Used During the Infringement Period.

Count III alleges that Federal's post-termination use of Blaze Advisor was an "unauthorized reproduction of registered works" that infringed FICO's copyright interests.  (Dkt. 132, ¶¶ 55, 56.)  The Factual Background states the Agreement was terminated March 31, 2016.  (*Id.*, ¶ 22.)  Clearly, the post-termination infringement claims against Federal began March 31, 2016.  Count IV alleges that ACE American's unlicensed use and reproduction of Blaze Advisor "infringes FICO's copyright interests."  (*Id.*, ¶ 63.) ████████████████████████████████████████

████████████████████████████████████ (Kliebenstein Decl., Exhibit 2,

---

[3] The Interrogatory had a corresponding document request dated December 29, 2017, Request No. 71: "For each instance in which the Blaze Advisor software was modified from March 30, 2016 to present, the documents sufficient to show each modification." (*Id.*, Exhibit 13.)

78:16-21.)  The total period of infringement under Counts III and IV is from those initial

dates until the use of Blaze Advisor stopped.[4]

The pertinent question presented by Counts III and IV is what version or versions

of Blaze Advisor did Federal use, without authorization, after the License Agreement

terminated, and what version or versions did ACE American use without permission?

The answers resided in Defendants' own records.  As FICO learned through discovery,

Defendants used Blaze Advisor 7.1 throughout the infringement period.  (*Id.*, Exhibits 9-

11.)

Defendants complain they learned from FICO "for the first time" that the

infringement claims of Counts III and IV "concern a single version of Blaze – Version

7.1." (Dkt. 851 at 8.)  Defendants should have understood at the pleadings stage,

following investigation of their own records, that their unauthorized use of Blaze Advisor

during the infringement period was limited to Version 7.1.

Did they not know to review their own documents or interview their own

witnesses to identify the Blaze Advisor versions they used?  Did they not know a basic

copyright question is whether they used a registered version or an unregistered version?

The registered versions of Blaze Advisor are identified in the Complaint, and in the First

and Second Amended Complaints.  Had they investigated their own facts they would

have determined at the pleadings stage the version used during the infringement period

---

[4] According to Defendants, they ceased using Blaze Advisor on all applications by April
2020.  (Kliebenstein Decl., Exhibit 3 at 7-8.)

was the unregistered Version 7.1.  Had they investigated their own facts at the pleadings stage they would have determined that unregistered Version 7.1 was the only version they used without permission during the infringement period.

### H. Defendants Also Should Have Known, Assuming Knowledge of Copyright Law, The Extent of Preexisting Material in Later Versions of Blaze Advisor Was Relevant Because Blaze Advisor 7.1 Was Not Registered

Defendants assert that a "fatal defect in [FICO's] copyright claims" is the fact Version 7.1 is unregistered.[5] (Dkt. 851 at 5.)  Were that true, Defendants should have moved to dismiss FICO's claims years ago.  The assertion is baseless.

A defendant's unauthorized reproduction of software code that is not registered (here, Version 7.1) does not foreclose proof of copyright infringement of registered code (here, Version 7.0).  As 2 Nimmer § 7 explains, where the only registration relates to an underlying work, but its copyright owner has also authorized creation of a derivative work, which was never registered, the underlying registration is sufficient to bring suit for unauthorized reproduction of the derivative work:

> Given that a derivative work by definition consists of matter that would be infringing if it had been derived from the pre-existing work without the copyright proprietor's consent, it follows analytically that the owner of a registered underlying work, in that capacity alone, should be able to maintain such a suit.

2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[B][5][b] (2021).

---

[5] FICO now owns Registration No. TX 9-054-781 for Version 7.1.  FICO registered this work solely to demonstrate the weakness of Defendants' motion.  FICO, however, is not moving to amend the pleadings to add its registration for Version 7.1. FICO does not want to further delay the case to move for permission to add Version 7.1 as one of its registered copyrights.  For those reasons, Version 7.1 is referred to in this memorandum as unregistered.

Similarly, the unauthorized use and reproduction of unregistered software code (here, Version 7.1) can be shown to infringe the registered code of a later version (here, Version 7.2) when the registered version is derived from, that is, it contains substantial parts of, the unregistered version. *Id*. at § 7.16[B][5][c]. The relevance of the extent of preexisting material from one version of Blaze Advisor to the next, subject matter disclosed to Defendants in FICO' First Supplemental Initial Disclosure June 7, 2017, is abundantly clear.

Assuming a basic understanding of copyright law, Defendants would have known after investigation of their own facts that proof unregistered Version 7.1 derived from the registered Version 7.0, or that registered version 7.2 contains substantial parts of unregistered Version 7.1, was necessary. The only surprise is Defendants' willful indifference to basic copyright law and investigation of their own facts.

## III.   Legal Argument.

Federal Rule of Civil Procedure 16(b)(4) states: "A schedule may be modified only for good cause and with the judge's consent." The good cause standard focuses on the moving party's diligence, prejudice to the non-moving party, and the merits of the request. Here, the effect on the pending deadlines—trial on April 6—is alone enough to deny this motion.

When the movant has not been diligent in meeting the scheduling order's deadlines, there is no cause to consider prejudice to the non-moving party. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 717 (8th Cir. 2008); *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006). "[A] party does not meet the good cause standard under Rule

16(b) if the relevant information on which it based the amended claim was available to it earlier in the litigation." *IBEW Local 98 Pension Fund v. Best Buy Co.*, 326 F.R.D. 513, 522 (D. Minn. 2018) (alteration in original). "It hardly bears mentioning . . . that carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *E.E.O.C. v. Hibbing Taconite*, 266 F.R.D. 260, 265 (D. Minn. 2009) (internal quotation omitted).

## A.   <u>Defendants' Delay in Bringing this Motion is Egregious.</u>

Defendants cannot meet Rule 16's "good cause" standard because they have not been diligent in bringing this matter before the Court. *See Sherman*, 532 F.3d at 717; *Rahn*, 464 F.3d at 822. Defendants were not diligent in moving to exclude Marce as an expert witness. The subject of Marce's knowledge—the "extent of preexisting material in later versions of the Blaze Advisor® software"—was known to Defendants in 2017 when Jeremy Chen was designated to testify to that topic. (Kliebenstein Decl., Exhibit 16.) A second FICO witness, Mr. Fernando Jorge, was designated on this topic in January 2019. Had Defendants deemed the subject matter for which Mr. Chen, Mr. Jorge, and ultimately Marce were disclosed as "expert testimony," Defendants should have deposed those witnesses promptly and moved to strike their testimony several years ago.[6]

Defendants claim they could not have filed a motion to exclude Marce as an undisclosed expert until after Marce's deposition. (Dkt. 851 at 16-17.) Defendants argue

---

[6] Instead, Defendants stipulated to the substitution of Mr. Jorge with Marce as factual witnesses with no objection in 2021. (Dkt. 841, 842.)

19

the way in which Marce testified on November 20, 2021 "made it clear that FICO intends to present him as an undisclosed expert at trial." (Dkt. 851 at 17.)  A review of the transcript shows his testimony is purely factual, based on his first-hand knowledge and experience.

█████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

Defendants assert the chart Marce testified about was unknown to them until Marce's deposition.  The chart is simply a table of data that states the number of lines of code in each version of Blaze Advisor that come from a prior version.  Defendants could have sought this data years ago in discovery related to the expected testimony of Chen or Jorge.

Defendants have also not been diligent in seeking to dismiss Counts III and IV on summary judgment.  The purported basis for this motion is that FICO never produced its source code. Defendants have always known that fact.  They could have requested its production at any time during the discovery period. Defendants' arguments directed to FICO's Initial Disclosures could have been raised, at the latest, at the close of discovery.

Defendants seem to suggest, despite the subject matter disclosures for Chen and Jorge, they did not know the source code was relevant to FICO's proof until April 2020. (Dkt. 851 at 8.)  If so, they must look to themselves for fault.  Defendants offer no explanation as to why they never sought discovery of the source code.  Accepting that Defendants first realized the relevance of source code in April 2020, this motion could have been brought 21 months ago.  Defendants' lack of diligence is egregious and justifies denial of this Motion.  Counts III and IV tell a reader the infringement begins March 31, 2016.  (*See* Section II(F), *supra*.)  The version Defendants used on that date was unauthorized.  Defendants' own documents show they were running Version 7.1 after March 31, 2016.  (*See id*.)  Defendants' head-in-the-sand tactics are not diligence.

## B.   Defendants' Motion to Amend is Futile Because the Additional Motions it Seeks to Bring will be Denied by the Court.

Defendants try to show "good cause" by arguing their serial summary judgment motion will streamline the trial.  The argument is unavailing.  The measure of "good cause" in the Eighth Circuit is diligence, not judicial efficiency.  *See Sherman*, 532 F.3d at 716.  Even if Defendants could show good cause based on streamlining the trial, Defendants ignore one key point.  The issues for trial would *only* be streamlined if Defendants prevail on their motion for summary judgment.

### (1)   There is no Basis to Strike Marce's Testimony as Expert Opinion on "Substantial Similarity."

Defendants seek to prevent Marce from testifying at trial based on the false premise he is an undisclosed expert witness.  Marce is a fact witness who will testify about facts based on his first-hand knowledge and personal experience.

21

There are three categories of witness testimony: fact testimony, lay opinion testimony, and expert opinion testimony.  A fact witness is one who testifies about direct knowledge of the facts at issue.  A fact witness's testimony is drawn from his or her own perceptions and his or her own personal experiences (here derived from fulfilling the responsibilities of employment with FICO).  Lay witness opinion testimony is also fact testimony.  A fact witness may give opinion testimony that "relates to the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance and an endless number of items that cannot be described factually in words apart from inferences."  *Hartzell Mfg., Inc. v. American Chemical Technologies, Inc.*, 899 F. Supp. 405, 408 (D. Minn. 1995).  An expert witness, on the other hand, provides opinions or inferences based on a hypothetical set of facts or circumstances, or based on a review of documents outside the personal knowledge of the witness to assist the jury through opinion testimony in understanding the relevance of those underlying facts.

A fact witness can be a person with expertise.  *U.S. v. Mast,* 999 F.3d 1107, 1112 (8th Cir. 2021) (permitting witness with professional training and experience regarding easement maps to testify to the process of creating those maps); *Medtronic, Inc. v. Boston Scientific Corp.* Case No. 99-1035, 2002 WL 34447587, at *22 (D. Minn. Aug. 8, 2002) (Rule 701 distinguishes between expert and lay testimony, not expert and lay witnesses); *Burlington Northern R. Co. v. State of Nebraska,* 802 F.2d 994, 1004-1005 (8th Cir. 1986) (perception acquired through review of records kept in the ordinary course of business and perceptions based on experience is sufficient foundation for lay testimony).

As stated in *Gomez v. Rivera Rodriguez*, 344 F.3d 103, 113 (1st Cir. 2003): "the triggering mechanism for application of Rule 26's expert witness requirements is not the status of the witness, but, rather, the essence of the proffered testimony." Specialized knowledge does not transform a fact witness into an expert witness. The *Gomez* court noted: "[a]ccordingly, a party need not identify a witness as an expert so long as the witness played a personal role in the unfolding of the events at issue and the anticipated questioning seeks only to elicit the witness's knowledge of those events." *Id*. at 113-14.

Under Rule 701, a lay witness with experience in a particular trade may still testify about facts within his or her range of generalized knowledge, experience, and perception. Such personalized testimony is not de facto an analysis of technical or specialized information. *United States v. Espino,* 317 F.3d 788, 797–98 (8th Cir. 2003). In *Espino*, officers with experience in assessing quantities of drugs, and who "either actually weighed the quantities of methamphetamine purchased" or saw the volume of drugs, were able to offer testimony as to the quantity of drugs without being certified as experts. *Id.* ("These lay witnesses testified based upon their experience. They were not attempting to explain any technical or specialized information, and several of them had actually used a scale to weigh the methamphetamine."). *See id.*

Here, Marce's testimony is limited to facts known by him based on his first-hand knowledge and personal experience. His testimony of authorship and the lines of code from earlier versions of Blaze Advisor that make up later versions of Blaze Advisor is informed by his nearly 30 years working with Blaze Advisor software code.

23





Defendants next contend Marce is an expert witness because Marce agreed in his deposition that he is an "expert" in the field of software programming and agreed the Blaze Advisor software code versions are "substantially similar" to one another.  As stated above, possessing expertise does not disqualify factual testimony from a witness.  Expressing a personal opinion, being ignorant of any legal standard, is not an "expert opinion."  Defendants cannot paint Marce as an undisclosed expert because Defendants' counsel planted expert witness trigger words in questions to Marce or asked Marce for his personal opinions in the deposition.

---

[8] In Footnote 6, Defendants state the table and Marce's testimony about it constitutes an expert report because Marce has never run this type of calculation before.  In fact, Marce reviews and analyzes the software code in different versions of Blaze Advisor® as a normal part of his responsibilities at FICO.  He does this regularly using FICO's software code control system.  The fact this table reports on the common, added, and deleted lines of code from Version 6.5 to 7.2.6, is to be responsive to issues of this lawsuit.  The relevance of the data does not transform a statement of facts into an expert report.

████████████████████████████████

██████████████

At trial, none of Marce's testimony will fall within Federal Rules of Evidence 702, 703, or 705.  If Defendants believe a question from FICO seeks "expert testimony," they are free to object for a ruling by the trial court.  The Motion to Amend to seek to strike testimony from Marce should be denied as meritless.

> **(2)** **Good Cause to Move for Summary Judgment on Counts III and IV is Entirely Lacking.**
>
> > *a.* ***FICO's Copyrights Registered for Version 7.0 and Version 7.2 Are Infringed by Defendants' Unauthorized Use of Version 7.1.***

Defendants' assertions that FICO will be unable to prove copyright infringement relies on law that is not applicable to this case.  To establish copyright infringement, a plaintiff must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991).  The Copyright Act requires copyright holders to register their works as a jurisdictional or standing prerequisite before suing for copyright infringement.

Here, FICO owns U.S. Copyright Registration No. TX 7-504-713 for Version 7.0 of Blaze Advisor software code.  (Dkt. 1 at Ex. 1.)  FICO also owns U.S. Copyright Registration No. TX 7-776-962 for Version 7.2 of the Blaze Advisor® software code. (*Id*.)  These registered works, and all underlying preexisting versions, were authored entirely by FICO employees or FICO's predecessors in interest.  (Dkt. 1-1 at 29, 31.)

26

The registration certificates list FICO as the author, and Defendants have not challenged the presumption of validity.  It is undisputed that Defendants made no modifications to the software code in these registrations or in any unregistered versions of Blaze Advisor. (Kliebenstein Decl., Exhibits 14-15.)  As detailed below, the facts at trial will prove FICO's copyrights claimed by both registrations were infringed by Defendants' unauthorized use and reproduction of Version 7.1.

> ### i.      FICO Will Prove Registered Version 7.0 Was Infringed Because Version 7.1 is Derived from Version 7.0.

The unauthorized use and reproduction of Version 7.1 is infringement of FICO's registered Version 7.0, because Version 7.1 is a derivative of the pre-existing registered work.  A plaintiff may use an underlying registered work to pursue an infringement claim against unauthorized use of an unregistered derivative work.  *Montgomery v. Noga*, 168 F.3d 1282, 1292-93 (11th Cir. 1999); 2 Melville B. Nimmer & David Nimmer, Nimmer on Copyrights § 7.16[B][5] (2021).  To constitute a derivative work, the later unregistered work must contain "a substantial amount of material from the copyrighted work."  *Central Point Software, Inc. v. Nugent*, 903 F. Supp. 1057, 1060 n.5 (E.D. Tex. 1995) (unregistered derivative work covered by registration of earlier registered work because 50% of the code overlapped and testimony from employees established both versions provided the same top-level function).[9]

---

[9] Defendants' arguments based on the notion of "substantial similarity" of a "defendant's work" compared to the copyrighted expression should not be confused with the test to determine if one work derives from another, that is, if the later work has a "substantial amount of material" from the other.

For example, in *Montgomery*, the plaintiff authored a computer program called VPIC. Montgomery registered its copyright in VPIC Version 2.9a. 168 F.3d at 1286. The defendant downloaded VPIC Version 4.3 and used Version 4.3 without a license. *Id.* at 1287. The plaintiff did not register VPIC Version 4.3, only VPIC Version 2.9a had a Certificate of Registration. After losing at trial, the defendant moved to set aside the judgment, because the plaintiff did not have a registration that covered VPIC Version 4.3. The defendant argued the scope of Montgomery's registered copyrights in VPIC Version 2.9a did not extend to cover VPIC Version 4.3. *Id.* at 1288.

The 11th Circuit disagreed. The trial evidence showed VPIC Version 4.3 incorporated over 70% of the original source code of VPIC Version 2.9. *Id.* at 1292. The evidence further showed that VPIC Version 4.3 would not function if VPIC Version 2.9a code was removed; VPIC Version 4.3 reproduced, in substantial part, the registered code of VPIC Version 2.9a. *Id.* The unauthorized use of the later version of VPIC infringed the earlier registered version; the later version contained a substantial part of the registered code. *Id.*

Here, FICO will prove at trial the unauthorized use of Version 7.1 infringes its registered code for Version 7.0. ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████



###### ii.      *FICO Will Prove Infringement of Registered Version 7.2 Because it Was Derived from Version 7.1.*

Separately, FICO will prove the unauthorized use and reproduction of Version 7.1 infringed the registered code of Version 7.2 under the "Effective Registration Doctrine." Under that doctrine, a plaintiff may prove the unauthorized use of a preexisting work infringes the expression (the code) of a later registered version when that later registered version was derived from the earlier unregistered one. *See Big Daddy Games, LLC v. Reel Spin Studios, LLC*, No. 12-cv-449, 2013 US. Dist. LEXIS 200235, *44-46 (W.D. Wis. April 10, 2013) (plaintiff owns copyrights to all versions and aspects of the games at issue, registrations of the 2005 versions that incorporate earlier versions are sufficient to permit plaintiff to enforce copyrights in all versions of the games before 2005); *Salestraq Am., LLC v. Zyskowski*, 635 F. Supp. 2d 1178, 1181 (D. Nev. 2009) (holding that a registration of a 2008 version of a compilation of floor plans and locations was sufficient

to maintain an action for infringement of the 2007 unregistered version); *In re Indep. Serv. Orgs. Antitrust Litig.*, 964 F. Supp. 1469, 1473 (D. Kan. 1997) (holding that registration of derivative service manuals and software was sufficient to allow infringement claim based on preexisting works authored by same party; no analysis of source code needed where defendant copied entire version); 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[B][2][c] (2021) ("When the same party owns the derivative or collective work plus the underlying elements incorporated therein, its registration of the former is sufficient to permit an infringement action on the underlying parts, whether they be new or preexisting.") (citation and internal quotation marks omitted)).

Here, FICO owns U.S. Copyright Registration No. TX 7-776-962, which covers Version 7.2 of the Blaze Advisor software code.  (Dkt. 1 at Ex. 1.)  Again, FICO's authorship is not in dispute.  There is also no dispute that Defendants added nothing and changed nothing to Version 7.1; all the code is FICO code.  (Kliebenstein Decl., Exhibits 14-15.)

██████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████  The evidence at trial will show the registered code of Version 7.2 contains a substantial amount of material that is identical to and derived from Version 7.1.  A reasonable jury will conclude that a "substantial amount of material" from Version 7.1 is identical to the registered code of Version 7.2.

### b.    The Intrinsic/Extrinsic Test and Abstraction Filtration Comparison Test Are Not Applicable In this Case.

Defendants assert FICO's copyright infringement claims will be dismissed because FICO cannot prove Version 7.1 is "substantially similar" to Version 7.0.  To recap the law, to establish copyright infringement, a plaintiff must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist*, 499 U.S. at 361.  Here, FICO's ownership of valid copyrights is unchallenged.  Also, the facts showing the unauthorized use and reproduction of Version 7.1 copies substantial parts of the registered code in Versions 7.0 and 7.2 are unchallenged.  Because Defendants' use of Blaze Advisor copies code authored exclusively by FICO, Defendants' use necessarily copies FICO's protected materials.  No further analysis of FICO's source code is required.  *In re Independent Serv. Orgs. Antitrust Litig.*, 964 F. Supp. 1469, 1476 (D. Kan. 1997); *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 825 F. Supp. 340, 355-56 (D. Mass. 1993) (no analysis of the source code to determine copyright validity was necessary where defendant did not rebut the evidence of copyright validity and copied the entire copyrighted work), *aff'd*, 36 F.3d 1147 (1st Cir. 1994).

The legal standard proffered by Defendants is not applicable in this case.  Defendants' "substantial similarity" test is irrelevant here.  Defendants contend there is only one way to prove copying under the second prong of *Feist*.  Defendants' single path requires showing that "(1) the defendant had access to the plaintiff's copyrighted work and (2) that defendant's work is *substantially similar* to the plaintiff's copyrightable

31

material." *Computer Assocs. Int'l, v. Altai, Inc.*, 982 F.2d 693, 701 (2d Cir. 1992) (emphasis added). Defendants ignore that infringement can also be proven by direct evidence of copying, as the *Computer Associates* court acknowledged. *Id.* As Judge Kyle stated, the substantiality test must be met only "in the absence of direct evidence of copying." *Titlecraft, Inc. v. NFL*, No. 10-758 (RHK/JJK), 2010 U.S. Dist. LEXIS 134367, at *5 (D. Minn. Dec. 20, 2010).

The cases relied upon by Defendants arise from different facts. In those cases, there is a "defendant's work." In those cases, the issues are whether defendant had access to plaintiff's copyrighted material (otherwise it could not copy it) and is defendant's work substantially similar to the copyright work. This test is directed at providing circumstantial proof of copying. Here, there is no "defendant's work." Blaze Advisor 7.1 is FICO authorship alone. Defendants admit they made no modifications.

Defendants' direct copying of the protected expression of Versions 7.0 and 7.2 is beyond dispute because the unauthorized use of Version 7.1 copies substantial parts of the code of both registered versions. Where there is evidence of direct copying of the expression covered by a registration, as in this case, the jury does not need to review substantial similarity. *MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 518-19 (9th Cir. 1993); *cf. Mitel Inc. v. Iqtel Inc.*, 124 F.3d 1366, 1373 (10th Cir. 1997) (the abstraction-filtration-comparison analysis need not be carried out where direct actual copying is clear). Proof of "substantial similarity" is one path to proving copyright infringement, but it has no application to this case.

c.     *Defendants' Characterizations of Marce's Testimony Are Misguided.*

Defendants contend FICO's copyright claims fail because Marce's testimony is "*not* sufficient to determine whether Version 7.1 is substantially similar to the other versions of Blaze." (Dkt. 851 at 26.) They base this contention on the irrelevant notion that a "substantial similarity" analysis must show "substantive differences" and how the "differences impact the functionality of the software." (Dkt. 851 at 27.)

FICO will prove infringement by proof of direct copying because the unauthorized use of Blaze Advisor Version 7.1 copies substantial parts of the registered Version 7.0 and Version 7.2 Blaze Advisor. The "two-part" test Defendants argue of (1) access and (2) "substantial similarity" has no relevance to this case.[12]

Marce is not an expert witness, and his factual testimony is relevant to the issues in this case. ███████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████

---

[12] When a substantial similarity test is relevant, the test is one of similarity not differences. *Titlecraft*, 2010 U.S. Dist. LEXIS 134367, at *9; *CSM Investors, Inc. v. Everest Dev., Ltd.*, 840 F. Supp. 1304, 1312 (D. Minn. 1994) ("The existence of differences will not negate infringement unless they so outweigh similarities that the similarities can only be deemed inconsequential within the total context of [the copyrighted] work.") (citation omitted). Moreover, copyrights protect the expression that is the program code, not the functions performed because of that code. Marce did not undertake a qualitative analysis of functional differences between Blaze Advisor versions because it is irrelevant.

For the same reasons, Defendants' reliance on cases noting the jury must undertake an "intrinsic analysis" between a "defendant's work" and copyrighted work are irrelevant.  Defendants' cases stating expert testimony about the so-called "intrinsic test" of substantial similarity are likewise irrelevant.  (Dkt. 851 at 28.)  FICO does not contend Marce is an expert witness.  Because the "substantial similarity" test is irrelevant, equally irrelevant is the notion a jury must undertake the "intrinsic test."

Defendants' references to the Abstraction Filtration Comparison test is yet another approach courts have taken to address "substantial similarly" between a "defendant's work" and the copyrighted work.  The Abstraction Filtration Comparison test is irrelevant in cases where there has been direct actual copying.  *Mitel*, 124 F.3d at 1373 (the abstraction-filtration-comparison analysis need not be carried out where direct actual copying is clear).

   ***d.    Specific Versions of Blaze Advisor Source Code Will be Identified on FICO's Pre-Trial Exhibits List. Preclusion of that Right is Drastic and Unwarranted.***

   ***i.    Defendants Have Been on Notice from the Outset that Source Code is a Fundamental Element of FICO's Copyright Claims.***

Upon service of the Amended Complaint, Federal was informed that its unauthorized use of Blaze Advisor software infringed FICO copyrights.  From the service of the Second Amended Complaint, ACE American was informed that its unauthorized use of Blaze Advisor software, without color of any license, infringed FICO copyrights.  Blaze Advisor source code, being the computer software itself, has always been a fundamental basis of this litigation.

FICO's Initial Disclosures identified categories of documents and electronically stored information that support its case. As detailed above, that disclosure necessarily included that which is owned, the full corresponding source code for each version of Blaze Advisor. (Dkt. 853-1 at 12.) That is the only material over which FICO has copyrights relevant to this case. Defendants advance a hyper-technical reading of the disclosure, arguing "got you."

FICO's First Supplemental Initial Disclosure is less than three months later, dated June 6, 2017. (Kliebenstein Decl., Exhibit 16.) The subject matter of Jeremy Chen's testimony is expanded to include "the extent of preexisting material in later versions of the Blaze Advisor® software." (*Id.*) The Initial Disclosures must be read as a whole and in the context of the pleadings. There is no reasonable interpretation that the phrase "preexisting material" other than its direct reference to Blaze Advisor software.

The fundamental relevance of Blaze Advisor source code was also demonstrated by FICO's discovery. It sought and received Defendants' documents that identify the versions of Blaze Advisor it used over time, including specifically following termination of the License Agreement. (*Id.*, Exhibits 9-11.) Rule 30(b)(6) depositions were taken specifically to inquire and identify, among other things, the specific versions of Blaze Advisor used in connection with selling insurance. (*Id.* Exhibit 8.) And, through interrogatories, FICO discovered that Defendants made no modifications of the Blaze Advisor source code, of any version, authored by FICO.

One purpose of discovery is to eliminate unfair surprise. *Doe v. Young,* 664 F.3d 727, 734 (8th Cir. 2011). Defendants had every opportunity over the years of discovery

to request production of Blaze Advisor source code and to depose identified FICO witness regarding the extent of preexisting material of earlier versions of the source code in later versions of Blaze Advisor software.  They did not.  Willful indifference is not unfair surprise.  *Id.* at 735 ("Any surprise was self-inflicted and not unfair to the appellees.").

The Federal Rules of Evidence favor admitting relevant evidence.  Even in the case of undisclosed witnesses, their testimony "should seldom be barred unless bad faith is involved."  *Bergfeld v. Unimin Corp.*, 319 F.3d 350, 355 (8th Cir. 2003).  In *Bergfeld*, the complaining party had adequate notice during discovery that the undisclosed witness likely had discoverable information. The complaining party chose not to take discovery. The testimony was received.

Defendants seek to preclude FICO from including Blaze Advisor source code on its pre-trial exhibit list, asserting that FICO cannot prove its copyright infringement claims without it.  The preclusion of evidence is "a harsh penalty and should be used sparingly."  *Young*, 664 F.3d at 734 (citing *ELCA Enters. v. Sisco Equip. Rental & Sales, Inc.*, 53 F3d 186, 190 (8th Cir. 1995)).  When the purpose of the motion to preclude evidence is tantamount to a motion to dismiss claims, preclusion of the evidence has been found an abuse of discretion.  *Heartland Bank v. Heartland Home Fin., Inc.*, 335 F.3d 810, 817 (8th Cir. 2003.)

FICO gave notice Blaze Advisor source code was a category of documents that supports in claims, and there is no justified surprise that FICO will include source code on its pretrial exhibit list.  The software code is the subject matter of the copyright claims,

it is the subject matter of FICO's disclosed witness testimony from Mr. Chen, Mr. Jorge, and now Mr. Marce.  It was the subject of FICO discovery against Defendants over these past many years.

And, while FICO will include Blaze Advisor source code on its pretrial exhibit list, Defendants' contention the jury must review Blaze Advisor code to find infringement is wrong.  Again, their contention is based on cases that have no application to the facts of this case.  FICO's proof of copyright infringement is that of direct copying. As discussed above, the registered code of Version 7.0 is infringed by the unauthorized use of Version 7.1 because a substantial part of Version 7.0 code is Version 7.1 code – identical code.  Also, FICO will prove the registered code of Version 7.2 is infringed by the unauthorized use of Version 7.1 because a substantial part of Version 7.1 code is Version 7.2 code – identical code.  FICO will prove infringement because of direct copying.  There is no highly "complex" substantial similarity test to be made, by the jury or anyone else.

Defendants' reliance on Judge Frank's decision *Haddley v. Next Chptr. Tech, Inc.* is telling.  In *Haddley*, the copyright owner asserted infringement of his exclusive copyright to make derivative works, 17 U.S.C. § 106(2). Case No. 16-1960 (DWF/LIB), 2019 U.S. Dist. LEXIS 31816, at *17 (D. Minn. Feb. 28, 2019).  In short, unlike here, there was a "defendant's work." Plaintiff alleged the defendant created a software program by copying from plaintiff's earlier copyrighted work, asserting the defendant's work was substantially similar to his work. Defendant denied copying.  Hence, substantial similarity was at issue.

In *Haddley*, plaintiff's claim the defendant's work was derivative of the plaintiff's was dismissed because plaintiff's source code no longer existed. The jury could not assess the substantial similarity issue because the evidence of plaintiff source code did not exist. There was nothing to compare defendant's work to. Plaintiff's claim failed for lack of proof.

Here, FICO will prove direct copying to prove its infringement claims. There is no reason to compare the source code of the relevant Blaze Advisor versions because the code between them is substantially the same. The various versions of Blaze Advisor are derivative from each other, and all are authored by FICO. There is no "defendant's work" to compare. FICO's pretrial exhibit list will include source code out of an abundance of caution, should its admission into evidence become relevant.

Defendants' additional cases are inapposite. In many of Defendants' other cited cases, the original source code was also missing due to inadequate recordkeeping. *Antonick v. Elec. Arts, Inc.*, 841 F.3d 1062, 1069 n.1 (9th Cir. 2016) ("Barr was only able to examine a partial draft version of the Apple II Madden source code, because the complete final version could not be found."); *Airframe Sys. v. L-3 Communs. Corp.*, 658 F.3d 100, 107 (1st Cir. 2011) ("Having presented no evidence sufficient to prove the content of its registered source code versions, Airframe cannot show that any of its registered works is substantially similar to the allegedly infringing M3 program."); *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir. 2003) ("[Plaintiff] was, however, unable to produce a copy of the ADS software; the only evidence of its content consisted of his oral testimony and a reconstruction of ADS created by Array's expert witness."); *InDyne, Inc. v. Abacus*

*Tech. Corp.*, 876 F. Supp. 2d 1278, 1280, 1286-87 (M.D. Fla. 2012) ("Because InDyne cannot produce PIMS V.1 or the August 2003 PIMS V.2, InDyne is unable to proffer evidence sufficient for a jury to return a verdict in its favor."). Here, FICO *has* the complete source code. FICO can tell the jury how many lines of code from Version 7.1 come—verbatim—from Version 7.0 through first-hand witness testimony from Mr. Marce. The fact that Defendants did not ask for the source code and review it with Mr. Marce during his deposition is not FICO's fault.

Defendants' remaining cases are distinguishable on their facts. In *Gen. Universal Sys. v. Lee*, 379 F.3d 131 (5th Cir. 2004), the plaintiff originally filed suit claiming that the defendant misappropriated nonliteral elements of the software, including its "structure, sequence, and organization." *Id.* at 147. The plaintiff later broadened its claim to assert infringement of the source code, but it failed to "provide evidence of source code copying." *Id.* Likewise, in *Virtual Chart Sols. I, Inc. v. Meredith*, Civil Action No. 4:17cv546, 2019 U.S. Dist. LEXIS 140962, at *29 (E.D. Tex. June 17, 2019), there was "no admission, testimony, or direct evidence that establishes [the defendant's] code is the same as that source code Plaintiff copyrighted." *Id.* at 29. The plaintiff also failed to adduce any evidence of substantial similarity. *Id.* at *34. These cases are inapposite where, as here, there *is* evidence (documents and testimony) of source code copying and substantial similarity, as described above.

Finally, *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117 (8th Cir. 1987) did not involve computer source code at all. There, the Eighth Circuit affirmed the district court's finding that the defendant's "Rainbow Brite" graphics and story lines were not

39

substantially similar to the plaintiff's copyrighted "Rainbow Island" graphics and story lines. *Id.* at 120-21. The court affirmed the finding that "the expression by [defendant] of any similar ideas did not satisfy the intrinsic test for expression." *Id.* Unlike *Hartman*, however, here there is no separate defendant's work—Defendants copied the ***entirety*** of Blaze Advisor® Version 7.1.

### C.   Defendants' Alleged Prejudice is Entirely Self-Inflicted.

Defendants contend they will suffer prejudice if they are not permitted to file their non-dispositive and dispositive motions. (Dkt. 851 at 18.) Defendants waited until the eve of trial to bring the current issues before the Court—issues Defendants could have raised many years ago. The alleged prejudice is entirely self-inflicted. *Enfield by & Through Enfield v. A. B. Chance Co.*, No. 94-1423-JTM, 1997 U.S. Dist. LEXIS 1151, at *17 (D. Kan. Jan. 18, 1997) (denying motion to amend pleadings where perceived prejudiced suffered was "self-inflicted").

Defendants' perception of prejudice arises because of their realization that they took no meaningful discovery directed to FICO's copyrights or to the infringement of those copyrights. Defendants never asked for FICO's source code. Defendants never asked for FICO's copyright deposit copies. Defendants never asked about the "extent of preexisting material in later versions of the Blaze Advisor® software." Indeed, Defendants strategically chose not to take Jeremy Chen's or Fernando Donati Jorge's, FICO's identified witnesses, depositions during discovery.

The false assertion that Marce's testimony is expert testimony could have been made against the same expected testimony of Jeremy Chen, disclosed in 2017. Discovery

directed to the derivative nature of the various versions of Blaze Advisor could have been taken in 2017 when Mr. Chen was disclosed to testify to the preexisting material from version to version of Blaze Advisor software. If Defendants desired Blaze Advisor source code to conduct that examination, they could have requested it.  Any prejudice to Defendants is entirely self-inflicted.  *See Enfield*, 1997 U.S. Dist. LEXIS 1151, at *17. Defendants' motion should be denied.

>     **D.      FICO will be Significantly Prejudiced by Amending the Scheduling**
>              **Order and Allowing Defendants to Baselessly Attack Marce and**
>              **FICO's Copyright Claims.**

FICO will be irreparably prejudiced if Defendants succeed in modifying the scheduling order.  Trial for this matter is currently scheduled to begin in 3 months, on April 6, 2022.  Defendants suggest the parties can brief these motions while preparing for trial.  Double tracking these motions and trial preparation does not save resources—it doubles the expense.  Further, FICO will be forced to move its trial team from trial preparation work to responding to Defendants' baseless motions.  FICO's case preparation will be unduly prejudiced.

Trial will certainly be postponed.  Briefing may be concluded by trial, but oral argument likely cannot be scheduled.  The Court will take several months to rule on the motions.  The parties have been waiting for trial in this case since the Court issued its final summary judgment order in March of 2020.  To put that date in jeopardy to entertain Defendants' last-ditch efforts to stall this case is prejudicial.

Defendants suggest trial will be unnecessary if Defendants' motions succeed. They assert the Court's March 20, 2020 Summary Judgment Order precludes FICO from

seeking lost license fee damages for breach of contract and actual damages under the

Copyright Act. (Dkt. 851 at 30, citing Dkt. 731 at 30-34.) This assertion is false.

FICO's damages expert, Mr. Neil Zoltowski, was precluded from opining of the amount

of FICO's damages. The Court did not dismiss FICO's claim for damages.

FICO will present evidence at trial to enable the jury to find the amount of

damages necessary to compensate FICO. Expert testimony quantifying the amount is not

necessary. A jury can quantify damages without expert testimony. *See, e.g., Allied*

*Systems, Ltd. v. Teamsters Automobile Transport Chauffeurs et al*., 304 F.3d 785, 792

(8th Cir. 2002) (amount of damages proven by VP of Audit testifying based on firsthand

knowledge as to the "value or projected profits and damages to the business."); *Duluth*

*Lighthouse of the Blind v. C.G. Bretting Mfg. Co*., 199 F.R.D. 320, 325-26 (D. Minn.

2000) (discussing an officer's ability to testify as to damages without being designated as

an expert because of his reliance on documents prepared or retained in the ordinary

course and scope of employment").

Here, FICO will call Mr. Bill Waid as a fact witness regarding facts relevant to a

hypothetical negotiation of license fees to enable the jury to determine the lost license

fees damages resulting from Federal's breach of contract and copyright infringement and

ACE American's copyright infringement. Mr. Waid, as the VP & General Manager of

the Decision Management Line of Business of FICO, was disclosed in FICO's original

Initial Disclosure dated March 27, 2017, as a witness having "knowledge of FICO's

damages." (Kliebenstein Decl. Exhibit 16.) Mr. Waid has been deposed in the case two

times (plus additional responses by written question) and was asked a significant number

of questions relating to the quantification of FICO's damages.  Because of his first-hand knowledge and personal experience in pricing Blaze Advisor licenses, Mr. Waid will provide the factual underpinnings for the jury.  *See, e.g.*, *Allied Systems*, 304 F.3d at 792 (VP testifying about evidence relating to the amount of damages); *Duluth Lighthouse*, 199 F.R.D. at 325-26 (officer of plaintiff testifying about damages quantification).

Defendants are wrong saying, in their footnote 5, that FICO cannot prove is damages claim for breach of contract, leaving the copyright claims as the only remedy. (Dkt. 851 at 14.)  Evidence at trial will show contract damages and actual damages under the Copyright Act in the tens of millions of dollars.  The evidence will show FICO is entitled to disgorgement of profits under the Copyright Act in amounts greater than that. The case should be tried.

## IV.  Conclusion

For the foregoing reasons, Defendants' motion should be denied.

Dated:  January 6, 2022

MERCHANT & GOULD P.C.

/s/ Heather Kliebenstein
Allen Hinderaker, MN Bar # 45787
Heather Kliebenstein, MN Bar # 337419
Michael A. Erbele, MN Bar # 393635
Joseph W. Dubis, MN Bar # 398344
MERCHANT & GOULD P.C.
150 South Fifth Street
Suite 2200
Minneapolis, MN  55402
Tel:  (612) 332-5300
Fax:  (612) 332-9081
ahinderaker@merchantgould.com
hkliebenstein@merchantgould.com

merbele@merchantgould.com
jdubis@merchantgould.com

*Attorneys for Plaintiff FICO*