UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY, an Indiana corporation, and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation,<br><br>Defendants. | Court File No. 16-cv-1054 (WMW/DTS)<br><br>OBJECTION TO MAGISTRATE'S ORDER DENYING DEFENDANTS' MOTION TO AMEND SCHEDULING ORDER |

## INTRODUCTION

The Copyright Act requires parties to register their works with the United States Copyright Office before commencing an infringement suit. 17 U.S.C. § 411(a); *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019). However, Plaintiff Fair Isaac Corporation's ("FICO's") remaining copyright claims are based solely on allegedly infringing use of an *unregistered* version of its Blaze software. As FICO concedes, it cannot prove its remaining copyright claims at trial without both the testimony of Jean Luc Marce and the Blaze source code. FICO must present this evidence because its copyright claims rely on its theory that Defendants Federal Insurance and ACE American Insurance (collectively, "Federal") infringed FICO's copyrights in *registered* versions of Blaze when Federal in fact used an *unregistered* version (Version 7.1) that FICO claims is "substantially similar" to its registered versions.

1

On November 11, 2021, Marce, a FICO software engineer, explained in his deposition how FICO intends to try to prove its copyright claims without having a registration for Version 7.1. FICO proposes to rely on Marce's testimony regarding the alleged similarity between the source code found in unregistered Version 7.1 (which was used by Federal) and a registered version of Blaze, 7.0 (which was not used by Federal). FICO will also seek to introduce a late-produced analysis prepared by Marce, which purportedly summarizes these alleged similarities.

Promptly after Marce's deposition, Federal brought the underlying Motion seeking leave to file two related motions (a) to exclude Marce's testimony as untimely disclosed expert testimony and (b) for summary judgment on FICO's remaining copyright claims based on the lack of evidence to prove its infringement theory.

On January 12, 2022, Magistrate Schultz issued an Order denying Federal's Motion. (Dkt. 867.) This decision is both clearly erroneous and contrary to law for the following reasons: (1) Marce's proffered testimony is that of an expert, not of a lay witness, and it was not timely disclosed; (2) FICO failed to properly disclose the Blaze source code during discovery; and (3) without Marce and the Blaze source code, FICO cannot prove that Federal's use of the unregistered Version 7.1 infringed FICO's registered copyrights in Version 7.0. Trial of this case will take place in 2023. Accordingly, an amendment of the Scheduling order to allow Federal's motions would not affect the trial schedule.

## BACKGROUND

**I.    FICO Fails to Disclose its Current Theory of Copyright Infringement Until May 2020.**

In its pleadings, FICO alleged that it "owns the FICO Products, which are the subject of valid Certificates of Copyright Registration issued by the Register of Copyrights," and included a chart identifying the registered versions of Blaze. (Dkt. 132, ¶ 55.) FICO did not mention Version 7.1 anywhere in its pleadings. At the same time, FICO alleged that Federal's use of Blaze "constitutes an unauthorized reproduction of *registered* works." (Dkt. 132, ¶ 55 (emphasis added).)

Early in discovery, FICO obtained documents showing that the *only* version of Blaze used by Federal during the period relevant to FICO's remaining copyright claims was the *unregistered* Version 7.1. (Dkts. 863-3 (Ex. 9) 863-4 (Ex. 10), 863-5 (Ex. 11).) Despite obtaining these documents well before service of its operative Second Amended Complaint, FICO did not suggest in this pleading that Federal had infringed its *registered* copyrights through the use of this *unregistered* work.

Federal also served an interrogatory during discovery asking FICO to "[i]dentify each Work you [FICO] contend Federal used beyond the scope of the license granted in the Agreement *and describe the basis for your contention."* (Dkt. 853-1, Ex. 7, Resp. No. 3.) In response, FICO did not describe its current infringement theory. Rather, FICO referred Federal back to the allegations in its pleadings. (*Id.*)

FICO argues that vague allegations in its pleadings and a few equally vague statements in its Initial Disclosures put Federal "on notice from the outset that the software

3

code of Blaze Advisor is a fundamental part of this lawsuit." (Dkt. 860 at 7.) But Federal had no reason to undertake the onerous task of analyzing millions of lines of software code to determine if different versions of Blaze were substantially similar to each other. After all, FICO's theory was that Federal had improperly used *registered* versions of Blaze, as FICO explicitly stated in its pleadings. (Dkt. 132, ¶ 55.)

Throughout discovery, FICO never amended its pleadings, supplemented its discovery responses or altered its Initial Disclosures to describe its new theory that Federal infringed FICO's registered copyrights by using an unregistered work. It was only in May 2020, during briefing on the parties' supplemental motions for summary judgment, that FICO disclosed this theory. In a reply brief, FICO conceded that Version 7.1 was unregistered and disclosed for the first time its current infringement theory, arguing that it would show at trial that "the source code of Version 7.1 is substantially similar to the source code of the registered versions of Blaze Advisor." (Dkt. 795 at 4.)

**II.   In 2021, FICO Discloses Marce and His Source Code Analysis to Support its Newly Disclosed Infringement Theory.**

A few months after the Court issued its March 23, 2021 Order on the parties' supplemental motions for summary judgment, FICO asked Federal for permission to add Marce to its Initial Disclosures as a witness available for trial. (Dkt. 854, Exs. 10–11.) Federal agreed to the substitution on the condition that it be allowed to depose Marce, which took place on November 11, 2021. (*Id.*)

The day before Marce's deposition, without any explanation, FICO produced two charts summarizing Marce's analysis of millions of lines of Blaze source code. (Dkt. 854,

Ex. 13; Dkt. 856-1, Ex. 14.) ███████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████ Marce also revealed that he had prepared this analysis for FICO a year earlier. (*Id.* at 68:15-21.) FICO has also now admitted that, unbeknownst to Federal, "Marce has been assisting FICO's counsel to analyze the registered and unregistered software code at issue in this lawsuit for several years." (Dkt. 860 at 24 n.7.)

Marce made other key admissions in his deposition. He repeatedly referred to himself as an "expert" in software engineering. (*See, e.g.*, Dkt. 856, Ex. 9 at 15:11-13, 17:2-4, 90:13-15.) He testified that he had utilized this expertise to generate his analysis and agreed that "to make any sense of all those pieces of data, you would have to have expertise in software engineering." (*Id.* at 115:7-13, 127:6-9.) He made clear that he only created his analysis at the request of FICO's counsel for this case and not in the ordinary course of his job duties. (*Id.* at 34:5-23, 64:18-20.)

Marce also admitted to shortcomings in his analysis. He testified that he does not have personal knowledge of the substantive differences between the relevant versions of Blaze. (*Id.* at 99:23-100:3.) ███████████████

███████████████████████████████████

███████████████████████████████████

████████████████████████████████████████

████████████████████████████████

### III. The Magistrate Judge's Decision.

Shortly after Marce's deposition, Federal brought this Motion.[1] At the hearing on Federal's Motion, FICO represented that it only intends to present testimony from Marce on two topics: (1) the "process" by which "FICO develops or writes one version of Blaze Advisor over the other" and (2) the quantitative figures found in Marce's analysis. (Declaration of Christian Hokans ("Hokans Decl."), Ex. 1, 19:1-20:12, 53:10-17.) FICO argued, and the Court agreed, that these two topics are fact testimony and not expert testimony. (*Id.*, 52:2-53:24.) The Court further found that FICO adequately disclosed the Blaze source code in its Initial Disclosures. (*Id.*, 54:1-56:14.)

While the Court held that Federal had been "diligent" in bringing its Motion, the Court determined that Federal had failed to show "good cause" to amend the Scheduling Order. The Court held that the motions Federal sought to file would be "futile" because there is no "basis to say that somehow the Court could find that the copying of Version 7.1 cannot be actionable because 7.1 itself is not registered." (*Id.*, 51:12-13, 54:16-20.)

---

[1] After Federal notified FICO of its intent to bring this Motion, FICO registered Version 7.1. Nonetheless, FICO states that it will only rely on the previously registered Versions 7.0 and 7.2 to prove its claim at trial. (Dkt. 860 at 17 n.5.) In any event, FICO cannot rely on its new registration for Version 7.1 because it was required to obtain it prior to filing suit. 17 U.S.C. § 411(a); *Kernel Recs. Oy v. Mosley*, 694 F.3d 1294, 1312 (11th Cir. 2012).

## LEGAL STANDARD

The district court may modify or set aside a magistrate judge's ruling on a nondispositive issue if the ruling is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). A ruling is clearly erroneous when the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Wells Fargo & Co. v. United States*, 750 F. Supp. 2d 1049, 1050 (D. Minn. 2010). A ruling is contrary to law when a court "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.*

## ARGUMENT

### I. The Magistrate Erred in Finding that Federal Lacks "Good Cause" to Amend the Scheduling Order.

Under Federal Rule of Civil Procedure 16(b)(4), a scheduling order "may be modified only for good cause." "The primary measure of good cause is the movant's diligence in attempting to meet the scheduling order's requirements." *Shank v. Carleton College*, 329 F.R.D. 610, 613–14 (D. Minn. 2019). The Court below correctly found that Federal was "diligent" in bringing this Motion but erred in determining that the motions Federal sought leave to file were "futile." Accordingly, the Court's ruling that Federal lacks "good cause" to amend the Scheduling Order was "clearly erroneous" and "contrary to law."

#### A. Marce is "an Expert in Lay Witness Clothing."

The Court below erred in determining that the testimony FICO plans to present from Marce is lay testimony. Federal Rule of Evidence 701(c) provides that a lay witness may *not* offer testimony "based on scientific, technical, or other specialized knowledge within

7

the scope of Rule 702." FICO plans to present testimony from Marce regarding the "process" by which it creates new versions of the Blaze software and the quantitative figures found in Marce's source code analysis. (Hokans Decl., Ex. 1, 19:1-20:12, 53:10-17.) Both topics require Marce to rely upon "specialized knowledge" in violation of Rule 701.

According to the Advisory Committee notes for Rule 701, the Rule's prohibition on lay witnesses offering testimony based on "specialized knowledge" is meant "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." To determine whether a party is attempting to offer "an expert in lay witness clothing," courts examine the proffered testimony under Rule 702, which states that only "qualified" experts "may testify to 'scientific, technical, or other specialized knowledge' in the form of opinion *or otherwise."* *Medtronic, Inc. v. Bos. Sci. Corp.*, No. CIV 99-1035, 2002 WL 34447587, at *22 (D. Minn. Aug. 8, 2002) (emphasis original). Thus, regardless of whether a lay witness testifies to purported facts or in the form of an opinion, Rule 701 requires that a lay witness's testimony "result from a process of reasoning familiar in everyday life," such as "facts that can be perceived with the five senses." *Id.* at *22; *Automated Irrigation Controls, LLC v. Watt Stopper, Inc.*, 407 F. Supp. 3d 274, 294-95 (S.D.N.Y. 2019); *see also Blandin Paper Co. v. J&J Indus. Sales, Inc.,* No. CIV.02-4858, 2004 WL 1946388, at *3 (D. Minn. Sept. 2, 2004) ("A party's proposed strategy of using lay person testimony will violate Rule 701 if it requires lay people to testify about matters 'beyond the knowledge of average individuals.'").

Marce's testimony and FICO's statements at the hearing below demonstrate that Marce is an undisclosed expert. Marce admitted that only a software engineer would be able to prepare his analysis of the Blaze source code. (Dkt. 856, Ex. 9, 115:7-13.) He further agreed that only a software engineer would be able to *understand* the data in his analysis. (*Id.*, 127:6-9.) ███████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████

FICO argued that Marce will explain to the jury the "process" FICO's engineers use to create each new Blaze version. (Hokans Decl., 53:10-17.) FICO will be asking the jurors to trust Marce's testimony on these topics *because of* his expertise. Such testimony does not "result from a process of reasoning familiar in everyday life," nor does it simply reflect "facts that can be perceived with the five senses." *Medtronic, Inc.*, 2002 WL 34447587, at *22; *Automated Irrigation Controls*, 407 F. Supp. 3d at 294–95. This testimony is a classic example of testimony derived from "specialized knowledge" within the meaning of Rule 702 and, therefore, should be excluded because of FICO's failure to comply with the expert witness disclosure requirements. *See Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 760 (8th Cir. 2006) (affirming district court's exclusion of untimely disclosed expert testimony prior to trial).

### B. FICO's Initial Disclosures Do Not Identify the Blaze Source Code.

The Court below also erred in determining that FICO adequately identified the Blaze source code in its Initial Disclosures such that it may introduce this evidence at trial. Federal Rule of Civil Procedure 26(a)(1)(A)(ii) requires that a party "must" provide "a

9

copy—or a description by category and location–of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." If a party fails to describe a category of documents in its Initial Disclosures and does not otherwise produce the documents during discovery, "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *World Wide Stationery Mfg. v. U.S. Ring Binder, L.P.*, No. 07-CV-1947, 2009 WL 1605866, at *2 (E.D. Mo. June 8, 2009) (barring plaintiff's expert from relying on evidence that was not timely disclosed after plaintiff sought to shift its damages theory late in the case); *Murphy by Murphy v. Harpstead*, No. CV 16-2623, 2019 WL 6650510, at *7 (D. Minn. Dec. 6, 2019) (similar).

FICO did not identify the Blaze source code in its Initial Disclosures and it did not produce these documents during discovery. The Court's decision below erroneously relied on the following language as "describing" the source code:

> Documents sufficient to show FICO's ownership of its federal copyrights in multiple versions of its FICO Blaze Advisor business rules management software.

(Dkt. 853-1, Exs. 2-4.) But this language refers to documents that show FICO's "ownership" of "multiple versions" of Blaze, which are the registration certificates referenced in FICO's pleadings. This description does not reasonably identify software source code. Further, to the extent the Court relied upon FICO's accompanying disclosure of a witness with knowledge of "preexisting material" in versions of the software to shore up the document description found above, this was error because Rule 26(a)(1)(A)(ii)

10

requires the disclosure of documents, not witnesses. Given FICO's failure to identify or produce[2] the source code during discovery, the Court should bar it from introducing this evidence at trial.

### C. Without Marce's Expert Testimony or the Blaze Source Code, FICO's Remaining Copyright Claims Fail as a Matter of Law.

The Court erred when it categorized Marce as a lay witness, which led it to erroneously conclude that FICO could introduce his testimony and analysis regarding the Blaze source code at trial. Without both Marce's testimony and the Blaze source code at trial, FICO cannot satisfy its burden to show "substantial similarity" between versions 7.1 and 7.0 and, therefore, Federal is entitled to summary judgment on FICO's remaining copyright infringement claims.[3]

In opposing this Motion, FICO tried to shift its theories yet again by arguing that a different standard supports its claims based on Version 7.1 than the one it previously offered in its May 2020 briefing. Relying on language cherry-picked from a footnote in a single case, FICO now argues that it need not satisfy the ordinary test for "substantial similarity" in copyright cases, but rather that it must only prove Version 7.1 is a "derivative work" under the Copyright Act using another standard. (Dkt. 860 at 27 (citing *Central*

---

[2] As noted above, FICO also failed to identify the Blaze source code in response to Federal's interrogatory requesting that it "[i]dentify each Work you contend Federal used beyond the scope of the license granted in the Agreement *and describe the basis for your contention."* (Dkt. 853-1, Ex. 7, Resp. No. 3.)

[3] FICO also argues that it may rely on Version 7.2 to prove infringement under the "effective registration doctrine." But FICO cannot rely on this doctrine because it explicitly excluded any "[p]revious version of software" from its registration for Version 7.2. (Hokans Decl., Ex. 2); *AFL Telecommunications LLC v. SurplusEQ.com Inc.*, 946 F. Supp. 2d 928, 941 (D. Ariz. 2013).

11

*Point Software v. Nugent*, 903 F. Supp. 1057 (E.D. Tex. 1995).) FICO is wrong; both tests are the same. Courts apply the same analysis to determine whether one work is "derivative" of another and to determine whether two works are "substantially similar." *See, e.g.*, *Litchfield v. Spielberg*, 736 F. 2d 1352, 1357 (9th Cir. 1984) (holding that to prove infringement based on the production of a derivative work, "one must show substantial similarity"); *Original Appalachian Artworks, Inc. v. Schlaifer Nance & Co.*, 679 F. Supp. 1564, 1574 (N.D. Ga. 1987) (applying substantial similarity test to determine whether work is derivative). It makes no difference whether a plaintiff alleges that a defendant infringed by using the plaintiff's unregistered derivative work or by modifying the plaintiff's registered work. To satisfy the registration requirement in both scenarios the plaintiff must show that the allegedly infringing work is "substantially similar" to a work that is the subject of a valid copyright registration. *Id.*

Here, as in any other infringement suit, FICO will need to show "substantial similarity" between Version 7.1 and 7.0 by applying the two-step test endorsed by the Eight Circuit in *Hartman v. Hallmark Cards, Inc.*, 833. F.2d 117, 120 (8th Cir. 1987). The first step is an "extrinsic" analysis that requires an expert witness like Marce to explain the "objective similarities" between these two versions of Blaze. *Id.* The second step is an "intrinsic" analysis that requires the jury to examine the relevant works and determine if they are similar based "on the response of an ordinary, reasonable person." *Id.* In software cases like this one, there is an added layer of complexity because courts also apply the "Abstraction-Filtration-Comparison test," which involves a threshold step of filtering out

"nonprotectable elements" of the relevant code. *i-Sys., Inc. v. Softwares, Inc.*, No. CIV. 02-1951, 2004 WL 742082, at *10 (D. Minn. 2004).

FICO cannot even begin to satisfy these tests without introducing the Blaze source code and Marce's testimony regarding the alleged similarities between the code for Versions 7.1 and 7.0. Courts have dismissed software-based copyright infringement claims in similar circumstances where the party asserting infringement fails to present a detailed comparison of the actual source code at issue. *See, e.g.*, *Antonick v. Elec. Arts, Inc.*, 841 F.3d 1062, 1066 (9th Cir. 2016); *Indyne, Inc. v. Abacus Tech. Corp.*, 513 F. App'x 858 (11th Cir. 2013); *Airframe Sys., Inc. v. L-3 Commc'ns Corp.*, 658 F.3d 100, 106 (1st Cir. 2011); *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 146 (5th Cir. 2004); *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003); *Haddley v. Next Chapter Tech., Inc.*, No. CV 16-1960, 2019 WL 979151, at *7 (D. Minn. Feb. 28, 2019). The same result is appropriate here, where FICO has long sought to obscure a major deficiency in its claims—its lack of registration for Version 7.1—and, in doing so, failed to support its theory with an appropriately disclosed expert and by identifying the relevant documents during discovery.

## **CONCLUSION**

For the reasons set forth above, Federal respectfully requests the Court overturn the decision below and grant its Motion to Amend the Scheduling Order.

| | |
|---|---|
| Dated:  January 26, 2022 | *s/ Terrence J. Fleming* |
| | Terrence J. Fleming (#0128983) |
| | tfleming@fredlaw.com |
| | Leah C. Janus (#0337365) |
| | ljanus@fredlaw.com |
| | Christopher D. Pham (#0390165) |
| | cpham@fredlaw.com |
| | Ryan C. Young (#0397751) |
| | ryoung@fredlaw.com |
| | Christian V. Hokans (#0400377) |
| | chokans@fredlaw.com |

**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
(612) 492-7000 (tel.)
(612) 492-7077 (fax)

***Attorneys for Defendants***