UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Fair Isaac Corporation, a ) File No. 16-cv-1054
Delaware Corporation, )         (WMW-DTS)
 )
    Plaintiff, )
 ) Minneapolis, Minnesota
vs. ) January 11, 2022
 ) 1:00 p.m.
Federal Insurance Company, an )
Indiana Corporation; and ACE )
American Insurance Company, a )
Pennsylvania Corporation, )
 )
    Defendants. )

---

BEFORE THE HONORABLE DAVID T. SCHULTZ
UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

**(MOTION HEARING)**

<u>APPEARANCES</u>

| | |
|---|---|
| For the Plaintiff: | Merchant & Gould PC<br>ALLEN W. HINDERAKER, ESQ.<br>80 South 8th Street<br>Suite 3200<br>Minneapolis, Minnesota 55402 |
| For the Defendants: | Fredrikson & Byron<br>TERRANCE J. FLEMING, ESQ.<br>CHRISTIAN HOKANS, ESQ.<br>LEAH JANUS, ESQ.<br>200 South 6th Street<br>Suite 4000<br>Minneapolis, Minnesota 55402 |
| Court Reporter: | ERIN D. DROST, RMR-CRR<br>Suite 146<br>316 North Robert Street<br>St. Paul, Minnesota 55101 |

Proceedings recorded by mechanical stenography; transcript produced by computer.

ERIN D. DROST, RMR-CRR
(651) 848-1227

**EXHIBIT 1**

1   use of Version 7.1, and, for that, the question of
2   substantially similar doesn't matter.  For that, the
3   question is was 7.1 derivative of 7.0, which was asserted as
4   an infringed basis, and was 7.2 substantially derived from
5   7.1.  And so the summary judgment motion, at least as I
6   understand it that you want to bring, you could bring that
7   argument, and Mr. Hinderaker is going to stand up in front
8   of Judge Wright and say, We agree.  It's not -- we're not
9   asserting that it's substantially similar.  We're saying it
10  was directly copied.  So what do you say about that?
11              MR. FLEMING:  Well, that is different than what
12  they've represented to Judge Wright in the summary judgment
13  argument, because when we raised this issue about Blaze 7.1
14  being the only software that they are now relying upon, we
15  raised the point that it was unregistered, and their
16  response was, we're relying upon the unregistered Blaze 7.1
17  based on significant similarity.  They use that very phrase
18  repeatedly.  I mean, that was their argument as to why they
19  could use 7.1.  So, I mean, they can say now that they are
20  not relying upon it.  They told the Court they were relying
21  on it.  And even under the direct evidence of copying
22  doctrine -- or the derivative works doctrine, that is a
23  substantial similarity test.  They still have to show that
24  what was copied was substantially similar.
25              THE COURT:  They describe that as not substantial

1   similarity, and maybe it's a distinction without a
2   difference.  They describe it as substantial overlap,
3   similar -- at least as I understand it.  And maybe it's that
4   we're adopting, frankly, words that don't really fit in
5   the -- in the software area, but substantial similarity gets
6   at the notion of the sort of overall impression of the work
7   so that, you know, if you are looking at two paintings, it's
8   an assessment of its qualitative sort of conveyance.  And
9   they are saying, no, for derivative works, all it is is how
10  much of this work is found in the derivative work.  And when
11  we're talking about software code, their position, at least,
12  is, you know, if you have ten lines of code and nine lines
13  are used, we can put in evidence that nine lines are used
14  and the jury can decide whether that is a substantial bit of
15  the work that's used in the derivative work.
16              MR. FLEMING:  Right.  Right, Your Honor.  And
17  that's what they are saying now.  They had been arguing a
18  different analysis was applicable.  And they submitted a
19  brief.  We haven't had a chance, of course, to respond to
20  that.  But I don't believe the tests aren't similar.  I
21  think the tests are similar.  I think they still have to
22  show substantial or significant similarity between the two.
23  So they'd have to produce the source code of each in order
24  to do that, and they have failed to do so.
25              THE COURT:  Until now.  Actually, they probably

1  still haven't produced the actual source code.
2              MR. FLEMING:  They have not produced.
3              THE COURT:  Okay.  Okay.  Thank you, Mr. Fleming.
4              MR. FLEMING:  All right.  Thank you.
5              THE COURT:  Use the hand sanitizer before you
6  leave.  Come on over to the other side.  Thank you.
7              Mr. Hinderaker, before you begin, let me start
8  with what I think are the easy issues.  FICO is not going to
9  elicit testimony from Mr. Marce that says Version 7.1 is
10 substantially similar to Version 7.0 or 7.2.  Am I correct
11 in that assumption?
12             MR. HINDERAKER:  You are correct, Your Honor.  We
13 expect the judge to instruct the jury on the test, and we
14 expect Mr. Marce to provide the jury with facts.
15             THE COURT:  And the facts that he -- you would
16 have him provide are, this has this many lines, 7.1 has this
17 many lines, X number of lines were deleted, X number were
18 added, and here is the percentage of overlap?
19             MR. HINDERAKER:  Can I -- I think I need to -- I
20 know why you are saying it that way, and I'm not saying that
21 you are wrong saying it that way, but that's not the way I
22 would -- that's not my expression of it.
23             THE COURT:  Okay.
24             MR. HINDERAKER:  My expression of it is that I
25 need my glasses.  But Mr. Marce will first testify, as the

|   |   |
|---|---|
| 1 | deposition detailed, about how FICO develops or writes one |
| 2 | version of Blaze Advisor over the other.  So as you |
| 3 | summarized earlier, they are written on top of each other. |
| 4 | The changes are very small, typically, and so forth.  So he |
| 5 | will -- he will testify that -- he will testify to that. |
| 6 | Under the instructions of the Court, under the definition of |
| 7 | a derivative work from the Copyright Act, Section 101, a |
| 8 | derivative work is something that is based on the prior |
| 9 | preexisting work. |
| 10 | So then when we get to the quantification -- |
| 11 | THE COURT:  And the language in the Copyright Act |
| 12 | is based on. |
| 13 | MR. HINDERAKER:  The language of the Copyright Act |
| 14 | is based on. |
| 15 | THE COURT:  So the word "substantial," if one |
| 16 | really wanted to get technical about this, never has to come |
| 17 | out of Marce's mouth? |
| 18 | MR. HINDERAKER:  It never will.  It doesn't have |
| 19 | to be.  And I think, appropriate to this point, if I or any |
| 20 | counsel for FICO was to ask Mr. Marce a question that |
| 21 | implicated Rule 702, 703, or 705, counsel for the defendant |
| 22 | should object, and the judge should make a ruling. |
| 23 | The chart, the table, was given to counsel as a |
| 24 | courtesy to demonstrate how Mr. Marce -- what Mr. Marce -- |
| 25 | what Mr. Marce did.  And so where my expression differs from |

1  yours, Your Honor, is that if -- one, in the context of my
2  claim, depending on the registered Version 7.0, I will have
3  Mr. Marce do the work to tell the jury that version --
4  unregistered Version 7.1 has X lines of code of 7.  Now,
5  that information is on the chart here.  You have to do the
6  math yourself.  You take the code of 7, you look at how
7  much -- how many lines of code were deleted in 7.1, you
8  subtract that from the lines of code of 7, and then you have
9  the lines of Code 7 that are in 7.1.  You would do a similar
10 analysis if my -- when my copyright claim is based upon
11 registered Version 7.2, I'd look at all of the lines of code
12 of 7.1 that are in 7.2.
13         Now, counsel was asked whether that's an opinion
14 when you asked the question, Your Honor, about a percentage.
15 It's not an opinion.  It's simple math.  If I have two lines
16 of code and the registered version has four, the math is
17 that the unregistered version has half of the code of the
18 registered.  So it's not an opinion.  It's math.
19         THE COURT:  What -- imagine you're in Federal's
20 shoes and you are looking at these numbers, and -- well,
21 that's -- I'm not going to ask you that question.  Here's
22 the point, what's the factual refutation of this
23 information?  In other words, you know, there's a quality to
24 the argument they are making, that is, this has been sprung
25 on us.  We were unprepared for it.  And I'm asking what's --

1   if it were never sprung -- I'm not saying it was or it
2   wasn't, but if it were never sprung and somebody had three
3   years to develop a response to that, is there a response to
4   the factual information?
5              MR. HINDERAKER:  If Mr. Marce was inaccurate.
6              THE COURT:  Okay.  Okay.
7              MR. HINDERAKER:  So the -- there were -- there
8   were a few what I'll call errors of fact, misstatements, if
9   you will, and I have to leave the Court to looking at our
10  references to the transcript to test what I'm going to say.
11  But the source code or software control system that
12  Mr. Marce used is a standard business repository of FICO.
13  It wasn't done -- it wasn't created for the purpose of this.
14  It's where the source code for the various versions of Blaze
15  Advisor reside at FICO.  Mr. Marce created for himself a
16  tool that, if you will, I think he called it a script,
17  whereby, he could have the computer -- a computer do the
18  comparison of lines of code.  And that is the extent which
19  that is -- and Mr. Marce was able to do that because he
20  knows how.
21             Counsel was suggesting that these lines of code
22  have something to do with similarity, and he used those
23  words.  They do not.  Mr. Marce, when he identified what
24  lines of code were in common, he identified the lines of
25  code that are identical, exact, same line.  When he

1     identified or -- the lines of code that were added, he just
2     identified every line of code that was either added or an
3     existing line of code that was moved to someplace else in
4     the program.  That was added.  And when he identified lines
5     of code that were deleted, they had exactly what he says,
6     they are deleted.  So there's no similarity analysis in his
7     work in any event, and to suggest that any of this has
8     anything to do with similarity is wrong.
9                Now, let me -- I was going to talk -- let me say a
10    few more things about Mr. Marce and then segue into that.  I
11    have the impression from counsel that for Mr. Marce to
12    testify as a, quote, fact witness, he must not have the
13    qualifications to have the firsthand knowledge and the
14    personal experience to testify to these facts.  I mean, the
15    argument that a person with expertise and because of that
16    expertise has the personal knowledge of facts, and the
17    personal experience working with these facts, because such a
18    person is the only kind of person who can testify factually.
19    But the plaintiff's argument boils down to the
20    proposition -- or the defendants' argument boils down to the
21    proposition because he is -- has expertise in software,
22    somehow he's an expert.  And as the cases that we cited
23    detail, Your Honor, this issue of a fact witness being
24    presented as an expert or challenged as an expert has
25    happened before, and the Courts have said, Is this factual

1    testimony based upon his personal firsthand knowledge?  Is
2    his factual testimony based upon his personal experience?
3    The fact that he has qualifications to have that knowledge
4    and have that experience does not make him into an expert.
5            THE COURT:  So let me illustrate what I think
6    you're saying, and you tell me if this captures it.  Have
7    you seen the movie "Don't Look Up"?
8            MR. HINDERAKER:  Not yet.
9            THE COURT:  Okay.  It doesn't matter.  There --
10   essentially imagine you have a lawsuit in which an
11   astrophysicist's calculations matter, and the calculation is
12   there's a comet, I see the comet.  I run the math.  I
13   calculate this is the path, or I calculate, you know, these
14   things.  Your point is, I can't do that calculation.  Only
15   an astrophysicist can do that calculation, but that he has
16   the knowledge to do the calculation doesn't turn the
17   calculation into expert testimony.
18           MR. HINDERAKER:  Exactly so.
19           THE COURT:  Where it becomes expert testimony is
20   if he or she says, and it's going -- in my opinion, it's
21   going to hit the Earth?
22           MR. HINDERAKER:  Exactly so.  And the person isn't
23   saying, It's my opinion that this is what's going -- it's my
24   opinion of the trajectory.  The person is saying, That's the
25   math.

1   reassembled into Blaze Advisor software on, let's call it, a
2   UK server.  And what we said to her, and I'll say now, is we
3   looked at that and said the predicate act is in the United
4   States of uploading and distributing -- distributing for the
5   purpose of getting it outside the United States.  And Judge
6   Wright said, Well, the predicate act doctrine is a predicate
7   act.  The predicate act doctrine is not a predicate purpose.
8   And so our argument that it was unauthorized because it was
9   for an improper purpose, she did not agree with.
10              Now, I'll get the circuits mixed up, but there's
11  like the Second Circuit had cases that favored us.  The
12  Ninth Circuit had cases that did not favor us or the other
13  way around.  But that was a dispute.  So -- so then
14  defendants' briefs say, following all of this, it remained
15  unclear how FICO intended to prove that the source code for
16  Blaze Advisor 7.1 is substantially similar to the code of a
17  registered version of the software.
18              THE COURT:  What are you quoting?
19              MR. HINDERAKER:  Page 10 of the defendants'
20  memorandum.  Following the Court's order -- they are
21  referring to the statute of limitations -- it remained
22  unclear how FICO intended to prove that the source code for
23  Blaze Advisor 7.1 is substantially similar to the code of a
24  registered version of the software.
25              Well, my first point is that it's a complete non

1  sequitur.  The statute of limitations motion was directed to
2  when did the distributions occur and were those
3  distributions a predicate act.
4              THE COURT:  Hang on, Mr. Hinderaker.  Are you
5  talking about page 10 of your brief?
6              MR. HINDERAKER:  No.  I was talking about
7  defendants' -- the defendants' statement at page 10.
8              THE COURT:  Okay.
9              MR. HINDERAKER:  That's what my notes say.  It's
10 on page 10.  It's page 6 on their -- paginated page 10 of
11 the court filing.
12             THE COURT:  I see, okay.
13             MR. HINDERAKER:  Underneath the quote, Following
14 the Court's order.
15             THE COURT:  Got it.  Okay.
16             MR. HINDERAKER:  And so the claims of Count 2 --
17 yeah, the claims of Count 2 are distribution, 106(3).
18 Distribution claims have nothing to do with reproduction,
19 copying.  Reproduction, copying is 106(1).  So there was a
20 motion to Judge Wright, dealt with Count 2, and dealt with
21 Section 106(3), distribution, and the statute of
22 limitations.  Nothing that dealt with Count 3, nothing that
23 dealt with copying or reproduction.
24             And, you know, just as a footnote to all of this,
25 when FICO has been accounting for the gross written premium

1   of the lost profits of the foreign insurance companies, from
2   the first iteration of that report, the -- we only claim
3   three years of gross written premiums, so there was never a
4   notion of trying to get outside of the statute of
5   limitations.  So that's FICO's procedural history of this
6   so-called they didn't tell us what we should know story.
7           THE COURT:  All right.  Tell you what we're going
8   to do.  It's 20 minutes to 3:00.  Who knew?  We're going to
9   take a break until -- let's give Erin until 3:00, and then
10  I'm going to come back and I'm going to rule here today
11  because I think the parties need a ruling here today.  So
12  make yourselves comfortable, stay socially distanced and
13  masked, and we'll be back on the record at 3:00 on the
14  Court's clock.  Thank you.  We're in recess.
15       (Recess taken at 2:39 p.m.)
16                    *   *   *   *   *
17       (2:57 p.m.)
18                      **IN OPEN COURT**
19
20          THE COURT:  All right.  We're back on the record
21  in the matter of FICO v. Federal, Civil Number 16-1054.
22          I am going to announce my ruling on Docket Number
23  851, which is a motion by Federal to amend the scheduling
24  order such that Federal could then bring a motion to exclude
25  the testimony of the witness Luc Marce and move for summary

1     judgment as a result of that exclusion.
2             I'll have to -- I'll try and make it clear what
3     I'm doing and why.  I will permit questions after I get
4     through it, but the argument is over.
5             I'm going to deny the motion.  I find there is not
6     good cause to amend the scheduling order.  And I'm going to
7     try and explain the reasons for my ruling and the various
8     steps in the analysis.  I'm doing it this way rather than
9     get a written ruling out because you have a trial date in
10    April, and, just candidly, doing it any other way is going
11    to be disruptive to the trial schedule.
12            My analysis is going to focus on diligence,
13    obviously, prejudice, and what I'll call futility.  So
14    starting with the question of diligence, often that element
15    is looked at as how quickly after the basis for the motion
16    does the moving party move to amend the scheduling order?
17    And as to that aspect of diligence, I find that Federal has
18    been reasonably diligent in filing the motion to amend the
19    scheduling order.  For reasons that are not made known to
20    the Court, but I assume are the scheduling of counsels' and
21    witness's convenience, the deposition of Mr. Marce did not
22    occur until November of 2021.  The motion was filed
23    reasonably promptly thereafter.  And the deposition itself
24    occurred within a reasonable timeframe of the substitution
25    of the witness identity, Mr. Marce from Mr. Jorge, I

1       believe.

2              If -- let me say also if I concluded that FICO
3       were, in fact, trying to sneak a new expert into the case
4       despite its initial disclosures and amendments to those
5       disclosures, this motion would be timely inappropriate and,
6       frankly, I would grant it.  But has -- so that's what I'm
7       saying as to diligence, but I don't find that diligence is
8       the heart of the matter.  I think the heart of the matter
9       really goes to the question of whether Mr. Marce is
10      presenting expert testimony.  And as I indicated, if he
11      were, that testimony is clearly late disclosed and would be
12      excludable.  However, I don't find that this is expert
13      testimony.  And I think it becomes -- it comes down to this,
14      Mr. Marce is testifying as to the lines of code that are
15      common to both Versions 7.0, 7.1, and 7.2 of the Blaze
16      Advisor software.  Those, in this Court's view, are factual
17      issues.

18             Now, the -- Federal argues that this is based on
19      an analysis, and by virtue of being an analysis, it is per
20      se expert testimony.  I'm not persuaded by that for a couple
21      of reasons.  First of all, there is the general proposition
22      that an expert -- or that someone with expertise is not
23      necessarily precluded from testifying as a lay witness just
24      because they have expertise.  More importantly, I think the
25      idea that utilizing a computer program to essentially do the

```
 1    calculations that would be extremely time-consuming and
 2    laborious, which is what has happened here, doesn't convert
 3    the factual comparison into an expert analysis.  I think
 4    the -- probably the best analogy is I could do, you know,
 5    fairly straightforward, but, nonetheless, lengthy
 6    mathematical computations using long division or what have
 7    you, or I could use a calculator.  And the use of the
 8    calculator doesn't turn a factual matter into an expert
 9    matter.
10              The question then comes -- comes back to whether
11    Mr. Marce is going to testify or what he can testify to.  As
12    I understand it, Mr. Marce will testify to the general
13    process by which one version of Blaze Advisor software is
14    created from the prior version, and he intends to testify as
15    to the -- the figures that have been presented to this Court
16    in the form of Exhibit 14 and Deposition Exhibit 619, I
17    believe it is.  That testimony is fact testimony, or
18    testimony by a fact witness.  I do not think that Mr. Marce
19    can testify to the conclusion that Blaze Advisor Version 7.1
20    is substantially similar to 7.0 or 7.2.  That would, I
21    think, stray into the province of an expert opinion.  But
22    that -- and really it will stray into the province of the
23    jury which has to decide whether it's substantially similar
24    or based upon the other versions.
25              Whether or not the document itself is admissible
```

1  at trial is not for me to say.  Judge Wright can decide
2  whether that document is a Rule 1006 chart.  She can decide
3  whether it was appropriately disclosed during discovery.
4  She can decide whether, for one reason or another, it is to
5  be excluded.  That is up to her obviously, but I don't
6  believe that she would find that the testimony of Mr. Marce
7  would be excludable as expert testimony.  And if Mr. Marce's
8  testimony on these factual matters is not to be excluded,
9  there would be, at least as I understand it, no reason to --
10 or no basis for a summary judgment motion.
11             There's also, well, two other pieces of rationale
12 here.  First of all, the case law, to my reading, allows the
13 plaintiff to say that the unauthorized copying of Version
14 7.1, the direct copying of Version 7.1, can be an
15 infringement of the two registered versions that are
16 proffered here, 7.0 and 7.2.  So those issues are
17 appropriately presented to a jury at trial, and I don't have
18 any basis to say that somehow the Court could find that the
19 copying of Version 7.1 cannot be actionable because 7.1
20 itself is not registered.
21             A lot of the issue in this motion has been whether
22 or not -- and, again, I'm just paraphrasing here -- but
23 whether or not FICO has been aboveboard or compliant with
24 its obligations under Rule 26 and its discovery obligations.
25 I find that the initial disclosures describing the testimony

1  of Mr. Chen, that he would testify to the extent of -- I
2  don't have the actual language right in front of me, but the
3  extent by which one version of the software is the same as
4  another version of the software, discloses, in fact, the
5  subject matter of Mr. Marce's testimony.  And that was
6  disclosed within three months, I believe, of the case
7  beginning.  It was repeated throughout the initial
8  disclosures when the initial disclosures were updated to
9  change from Mr. Chen to Mr. Jorge.  And then from Mr. Jorge
10 to Mr. Marce, those disclosures were reiterated.  And FICO
11 did agree to a late deposition of Mr. Marce upon
12 substitution of his identity in the initial disclosures for
13 that of the prior identified witness.
14         So I find that all of that has been disclosed.
15 Now, as to the issue of whether the source code was
16 identified as a source of -- or a document at issue in the
17 case, I find two things.  First of all, it seems to this
18 Court self-evident that source code would be a document at
19 issue in the case as it were, but, beyond that,
20 Rule 26(a)(1)(A)(ii) merely requires the disclosure of
21 category of documents and where they are located.  And
22 looking at FICO's disclosure, it first identified, it said,
23 here are the following categories of documents, and we'll
24 just tell you that they are in the possession, custody, or
25 control of its attorneys or of FICO itself.  And then it

1   lists documents sufficient to show FICO's ownership of its
2   federal copyrights in multiple versions of its FICO Blaze
3   Advisor business rules management software.  Certainly, to
4   the lay reader, that may not trigger a subjective awareness
5   of source code, but to lawyers engaged in copyright
6   litigation, that category would, it seems to the Court,
7   naturally include source code.  It might also, frankly, be
8   said to reside within the description, documents sufficient
9   to show Chubb & Sons' continued use of FICO Blaze Advisor
10  software following the termination of the agreement.  But,
11  regardless, I find that these facts have been adequately
12  disclosed in the initial disclosures, and I am not aware of
13  any manner in which this information was requested in
14  discovery and kept from being discovered.
15              So, with that, the motion is denied.  You're going
16  to trial April 6th of 2022.  You, of course, have the right
17  to appeal this ruling to Judge Wright.  If you do, you'll
18  have to order the transcript because not only have I tried
19  to summarize my rationale, there is an awful lot in the
20  transcript upon which the Court has been informed and has
21  based its ruling.
22              With that, any questions for your side,
23  Mr. Fleming?
24              MR. FLEMING:  Your Honor, not about your order.
25  When you are done discussing that, I would like to follow up

```
 1   about information about the trial if there is any.
 2              THE COURT:  Okay.  Hang on one second.
 3              Anything, Mr. Hinderaker, about the order?
 4              MR. HINDERAKER:  No, Your Honor.
 5              THE COURT:  Okay.  I'll just tell you both, I find
 6   it really difficult to hear well through the masks, so go
 7   ahead and take it off, Mr. Fleming, and you can just sit at
 8   counsel table.  Make sure your mic is open.  And do you
 9   think this needs to be -- or should be on the record?
10              MR. FLEMING:  I don't.
11              MR. HINDERAKER:  No, I don't either.
12              THE COURT:  Okay.  We can go off the record.
13              Okay.  Thank you.
14         (Discussion off the record)
15         (Court adjourned at 3:15 p.m.)
16                        *     *     *
17
18
19         I, Erin D. Drost, certify that the foregoing is a
20   correct transcript from the record of proceedings in the
21   above-entitled matter to the best of my ability.
22
23                  Certified by:  *s/ Erin D. Drost*
24                                 Erin D. Drost, RMR-CRR
25
```