**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation, ) ) ) | Case No. 16-cv-1054 (WMW/DTS) |
| Plaintiff, ) ) ) | |
| v. ) ) | |
| FEDERAL INSURANCE COMPANY, an Indiana corporation, and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation, ) ) ) ) ) ) ) | |
| Defendants. ) | |

**PLAINTIFF FAIR ISAAC CORPORATION'S RESPONSE TO DEFENDANTS' OBJECTION TO ORDER DENYING DEFENDANTS' MOTION TO AMEND SCHEDULING ORDER**

**I.   INTRODUCTION**

There is no mistake of law or clear error of fact. Indeed, Defendants implicitly concede as much. They merely assert that Magistrate Judge Schultz erred. There is no legal analysis or fact analysis suggesting either legal error or that factual findings were clearly erroneous. Defendants offer only conclusions: they wish the outcome below was otherwise. The Order should be affirmed.

The testimony of Jean-Luc Marce is factual testimony. The subject matter of his testimony, including the extent of preexisting material in one version of Blaze Advisor compared to another, was first disclosed to Defendants in FICO's First Supplemental

Initial Disclosures dated June 6, 2017. Marce will be the trial witness because the previously disclosed fact witnesses on the same subject matter have left FICO's employ.

Fact witnesses are not disqualified because their personal knowledge and experience is informed by an expertise. The subject matter of Marce's testimony – Blaze Advisor software code – is what he works with daily. His testimony is based on his firsthand knowledge and personal experience. Judge Schultz's factual finding that Marce's testimony is factual and his legal ruling that fact witnesses can have an expertise were correct. The contention Marce is a late-disclosed Rule 702 expert witness is meritless.

Blaze Advisor source code has been a fundamental element of this case from the outset. The claims include copyright infringement of a computer program, of source code. In the words of Judge Schultz, "it seems to this Court self-evident that source code would be a document at issue in this case." (Tr. 55:17-19.) The finding that FICO's Rule 26(a)(1) disclosures "naturally include[d] source code" is not clearly erroneous. (Tr. 56:7.) It is informed by an understanding of copyright law. Defendants concede they never requested discovery of source code or took discovery of the extent of preexisting material in the various versions of Blaze Advisor. (Tr. 12:1-10.)

Because Marce may testify as a fact witness and because Defendants must look to themselves for their failure to take discovery regarding Blaze Advisor source code, their remaining arguments are irrelevant to review of the Order. The time for this Court to rule on the applicable copyright law is at the jury instructions charging conference.

Nevertheless, Defendants advance copyright law arguments that are not applicable to this case and denigrate FICO's good faith in the process. FICO's copyright infringement claims are based on Defendants' direct copying of unregistered Version 7.1, which infringes registered Versions 7.0 and 7.2. The two-step test for infringement, including the "abstraction-filtration-comparison" test, is not applicable here. As the Court below said, Defendants' summary judgment arguments are based on a theory FICO is not advancing. (Tr. 15:22-16:10.)

## II. RELEVANT FACTUAL BACKGROUND

The Complaint and each Amended Complaint lists Blaze Advisor Certificates of Registration. The License Agreement terminated March 31, 2016. FICO alleges copyright infringement from that date forward because of the unauthorized use of Blaze Advisor. The pleadings gave Defendants notice of FICO's claims.

### A. The Fact Testimony of Jean-Luc Marce is Based on Personal Experience.

FICO's First Supplemental Disclosures dated June 6, 2017, served less than three months after the Initial Disclosures, disclosed that FICO intended to call an employee, Jeremy Chen, to testify to the following topics:

- Knowledge regarding the authorship of the various versions of Blaze Advisor software.
- Knowledge of the extent of preexisting material in later versions of the Blaze Advisor software.

(Dkt. 862-10.) When Chen left FICO's employ in 2019, FICO disclosed that employee Fernando Donati Jorge would testify to that subject matter. When Jorge left FICO's

employ in 2021, FICO disclosed that employee Marce would testify to that subject matter, first disclosed June 2017.

Of these three, Marce is the only one Defendants chose to depose. Marce advised Defendants he has worked on Blaze Advisor software as a programmer and software architect since 1991, both for FICO and its predecessors in interest. (Dkt. 863-1, 17:5-16; 18:16-19:4; 19:7-20:25; 21:22-23:24; 25:8-28:6.) He wrote much of the code. (*Id.*, 22:10-20.) Based on personal experience, Marce will testify that every version of Blaze Advisor code is built "on top of and from the previous one by adding and deleting part of the software." (*Id.*, 53:3-17.) Marce compares different versions of Blaze Advisor, one to another, in his regular employment. (*Id.*, 56:9-57:2.)

To illustrate the fact that one version is built "on top of and from the previous one," Marce prepared a table showing those facts. (Dkt. 863-2.) This table lists the total lines of code in each version of Blaze Advisor, the lines of code that are identical (in common) between versions of Blaze Advisor, the lines of code that were deleted from an earlier version to the next one, and the lines of code that were added in creating the next version. (*Id.*) The table states facts, as Defendants concede. (Tr. 5:13-24 ("It is data.").) The table does not express a judgment, make an inference, or otherwise opine on the meaning of the data. The table is a pure statement of facts.[1]

---

[1] FICO gave the table to Defendants as a courtesy before the deposition to show Marce's lines of code comparisons. At trial, FICO will offer a lines of code comparison exhibit focused on the versions relevant to its proof of infringement for the unauthorized use of Blaze Advisor on and after March 31, 2016.

4

Defendants falsely assert that Marce intends to tell the jury about "substantial similarity" and "how FICO intends to try to prove its copyright claims without having a registration of Version 7.1." (Dkt. 874 at 2.) In truth, Marce testified that he does not know what "substantial similarity" means under Copyright law. (Dkt. 863-1 at 29, 134:7-23.) He is not a Rule 702 expert. The Court will instruct the jury on the applicable law, and Marce's testimony will provide the jury facts proving infringement based on direct copying and the unauthorized use of unregistered Version 7.1. *See* Section III(D)-(E), *infra*.

The Court below correctly found that Marce's testimony is factual, based on his personal knowledge and experience. The fact he has an expertise that informs that personal knowledge and experience does not preclude his factual testimony as a lay witness. (Tr. 52:14-53:18.) While Marce will be called upon to explain the script he used to automate the lines of code comparison, that use "doesn't convert the factual comparison into an expert analysis." (Tr. 53:2-3.) The script is not expert testimony. (Tr. 9:9.)

### B. The Initial Disclosures Included Source Code.

FICO's Initial Disclosures dated March 17, 2017, identified categories of documents and electronically stored information in its possession, custody, or control that supported its claims, including:

> Documents sufficient to show FICO's ownership of its federal copyrights in multiple versions of its FICO® Blaze Advisor business rules management software.

(Dkt. 853-1 at 12.)

5

Copyrights do not exist "in the air." Expression – here source code – becomes a copyright when the source code is "fixed in a tangible medium of expression." 17 U.S.C. § 102(a). (S*ee also* Tr. 25:6 ("Reduced to a tangible medium.").) "Documents sufficient to show FICO's ownership" of its copyrights in Blaze Advisor are the electronic records of the source code in its possession. There is nothing else the phrase "federal copyrights in . . . business rules management software" can mean but the source code stored in FICO's systems. The Initial Disclosures identified all of FICO's Blaze Advisor copyrights; there was no limitation to registered versions. Indeed, Defendants conceded at the hearing the protected work is the source code itself, not the certificates of registration. (Tr. 15:9-13.)

The disclosures must be read in their totality. Not only did FICO disclose its claims will be supported by its federal copyrights, it also disclosed it would prove the extent of preexisting material in the various versions of Blaze Advisor through witness testimony. (Dkt. 862-10 at 3.) In the words of the Court below, "it seems to this Court self-evident that source code would be a document at issue in the case." (Tr. 55:17-19.) Yet, Defendants never requested discovery of Blaze Advisor source code.

Judge Schultz's finding that FICO disclosed source code in the description of documents sufficient to show ownership of federal copyrights in business rules management software was not clearly erroneous. (Tr. 56:1-7.) It was correct.

6

### III. ARGUMENT

#### A. The Order May Only Be Set Aside if Contrary to Law or Clearly Erroneous.

A district court's review on a nondispositive matter is "extremely deferential." *Coons v. BNSF Ry. Co.*, 268 F. Supp. 3d 983, 991 (D. Minn. 2017) (Wright, J.). The Court must affirm the Order unless it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *accord* Fed. R. Civ. P. 72(a); D. Minn. LR 72.2(a)(3). A ruling is clearly erroneous when, after examining the entire record, the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Coons*, 268 F. Supp. 3d at 991 (quoting *Wells Fargo & Co. v. United States*, 750 F. Supp. 2d 1049, 1050 (D. Minn. 2010)). "A magistrate judge's ruling is contrary to law when it either fails to apply or misapplies pertinent statutes, case law or rules of procedure." *Id*. Here, Defendants identify no part of the Order that is clearly erroneous or contrary to law.

#### B. Defendants Point to No Mistake of Law or Clear Error in the Conclusion that Marce's Testimony is Fact Testimony.

The Order correctly held that Marce is a fact witness who will testify to matters within his own knowledge. His testimony is not a Rule 702 expert analysis. (Tr. 52:12-24.) Defendants do not challenge Judge Schultz's factual findings that summarize Marce's testimony. There is no basis to find them clearly erroneous. Defendants' quarrel is with the basic legal principle that fact testimony from a witness is not transformed into Rule 702 expert testimony because the witness has an expertise. (Dkt. 860 at 29-30.) The law is clear. Defendants make no effort to distinguish the case law applied by Judge Schultz.

Defendants' contention that Marce's expertise transforms his testimony based on his firsthand knowledge and experience into "expert testimony" was rejected by the Court below:

> I don't find that this is expert testimony. And . . . it comes down to this, Mr. Marce is testifying as to the lines of code that are common to both Versions 7.0, 7.1, and 7.2 of the Blaze Advisor software. Those in this Court's view, are factual issues.
>
> Federal argues that this [Marce's testimony] is based on an analysis, and by virtue of being an analysis, it is per se expert testimony. I'm not persuaded by that for a couple of reasons. First of all, there is the general proposition that an expert – or that someone with expertise is not necessarily precluded from testifying as a lay witness just because they have expertise.
>
> More importantly, I think the idea that utilizing a computer program to essentially do the calculations that would be extremely time-consuming and laborious, which is what has happened here, doesn't convert the factual comparison into an expert analysis.

(Tr. 52:12-53:3.)

Judge Schultz also found the table Marce prepared before the deposition presented factual data known to Marce from his job was not "improper expert analysis." (Tr. 5:14-15; 8:25-9:16.) Defendants concede the table is data that compares lines of code. (Tr. 5:21-24.) The fact Marce created a script to automate the task of comparing lines of code does not transform the factual comparison to a Rule 702 expert analysis. The Court below rejected Defendants' arguments with this analogy:

> I think the -- probably the best analogy is I could do, you know, fairly straightforward, but, nonetheless, lengthy mathematical computations using long division or what have you, or I could use a calculator. And the use of the calculator doesn't turn a factual matter into an expert matter.

(Tr. 53:3-9.)

Judge Schultz's findings of the testimony Marce will offer were not clearly erroneous, and the application of basic legal principles to conclude the testimony was factual and not late-disclosed expert testimony was clearly correct. As noted by the Court below, the subject matter of Marce's testimony was expressly disclosed to Defendants as early as June 6, 2017, and repeated in every supplementation thereafter. (Tr. 54:21-55:14.) There is no reason to reopen the case schedule; the Order should be affirmed.

### C. Judge Schultz Correctly Held FICO's Initial Disclosures Included Source Code.

The Court below aptly noted, "it seems to this Court self-evident that source code would be a document at issue in this case." (Tr. 55:17-19.) This is a copyright infringement case about software. Judge Schultz found that Blaze Advisor source code was included in FICO's Initial Disclosures:

> [L]ooking at FICO's disclosure, it first identified, it said, here are the following categories of documents, and we'll just tell you that they are in the possession, custody, or control of its attorneys or of FICO itself. And then it lists documents sufficient to show FICO's ownership of its federal copyrights in multiple versions of its FICO Blaze Advisor business rules management software. Certainly, to the lay reader, that may not trigger a subjective awareness of source code, but to lawyers engaged in copyright litigation, that category would, it seems to the Court, naturally include source code.

(Tr. 55:22-56:7.) The Court continued:

> It might also, frankly, be said to reside within the description, documents sufficient to show Chubb & Sons' continued use of FICO Blaze Advisor software following the termination of the agreement.

(Tr. 56:7-10.)

Judge Schultz's reading of FICO's Initial Disclosures, understanding copyright law, is clearly correct. Under no measure is it clearly erroneous. *See* Section II(B), s*upra.*

Defendants now argue "ownership" can only refer to registration certificates, not source code. (Dkt. 874 at 10.) It is a basic principle of copyright that "ownership" arises the moment of creation when original expression is fixed in a tangible medium of expression. 17 U.S.C. § 102(a). *Oliver v. Johanson*, 357 F. Supp. 3d 758, 783 (W.D. Ark. 2018). Ownership is not dependent on registration. *Id.* As Defendants conceded at the hearing, source code is the protected expression, not a registration. (Tr. 15:5-13.)

Defendants never requested the production of source code, and nothing kept the source code from being discovered. (Tr. 56:10-14.) The Order should be affirmed.

D. **FICO Will Prove Copyright Infringement with Evidence of Direct Copying.**

To establish copyright infringement, a plaintiff must prove (1) ownership of a valid copyright, and (2) copying of constituent elements of a work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Registration of copyright is a subject matter jurisdictional prerequisite. *See Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 891 (2019). FICO's Blaze Advisor copyright ownership includes Version 7.0, Registration No. TX 7-504-713, and Version 7.2, Registration No. TX 7-776-962. FICO will prove Defendants directly copied elements of those registered works by its unauthorized use of unregistered Version 7.1 after termination of the License Agreement.

The unauthorized use of an unregistered derivative work, here Version 7.1, is infringement of the underlying registered work, here Version 7.0. *Montgomery v. Noga*, 168 F.3d 1282, 1292-93 (11th Cir. 1999); 2 Melville B. Nimmer & David Nimmer, Nimmer on Copyrights § 7.16[B][5] (2021). Proof that Version 7.1 is derivative of Version 7.0 includes showing the later unregistered work contains "a substantial amount of material from the copyrighted work." *Central Point Software, Inc. v. Nugent*, 903 F. Supp. 1057, 1060 n.5 (E.D. Tex. 1995) (unregistered derivative work covered by registration of earlier registered work because 50% of the code overlapped and testimony from employees established both versions provided the same top-level function).

The unauthorized use of unregistered Version 7.1 is also infringement of registered Version 7.2 under the "Effective Registration Doctrine.[2]" Proof under that doctrine includes showing the later registered version was derived from the earlier unregistered one. *See Big Daddy Games*, 2013 US. Dist. LEXIS 200235, *44-46. (Dkt. 860 at 37.)

Defendants' unauthorized use of Version 7.1 resulted in the direct copying of substantial amounts of registered Version 7.0 from which it was derived. The same

---

[2] Defendants' registration disclaimer argument in Footnote 3 of its brief is legally incorrect. (Dkt. 874 at 11 n.3) The fact that prior versions of Blaze Advisor software were listed as "pre-existing works" on the registration certificate for Version 7.2 is irrelevant because the undisputed evidence shows FICO owns both Versions 7.1 and 7.2 and those versions are nearly identical. In such a situation, registration of a later version can be used to stop infringement of a previous unregistered version, regardless of the listing of pre-existing works on the certificate. *See Big Daddy Games v. Reel Spin Studios*, 2013 U.S. Dist. LEXIS 200235, *46-*47 (April 10, 2013 W.D. Wis.)

unauthorized use resulted in the direct copying of substantial amounts of registered Version 7.2, the latter being derived from the former.

Defendants were permitted to amend their answer to assert a statute of limitations defense and brought a supplemental summary judgment motion directed to the copyright claims of Count II. In that context[3], FICO said:

> Here, the proof at trial will show that Blaze Advisor Version 7.1 is substantially similar to the registered versions of Blaze Advisor, of which Version 7.1 *is a derivative work*.

(Dkt. 795 at 9 (emphasis added).) There is no change to FICO's theory of copyright infringement.

### E. **Defendants' Use of the Phrase "Substantial Similarity" is Misdirected and Hopelessly Confused.**

Showing the "substantial similarity" of one work to another is one means to prove the works are derivative of each other. *Designed to Sell, Inc. v. Advanced Aesthetics, Inc.*, No. 04-3173, 2005 U.S. Dist. LEXIS 53154, at *13 (D. Minn. Oct. 25, 2005) ("a derivative work must be substantially similar to the original work in order to qualify as a derivative work"). Defendants cite *Litchfield v. Spielberg*, 736 F. 2d 1352, 1357 (9th Cir. 1984) and *Original Appalachian Artworks, Inc. v. Schlaifer Nance & Co.*, 679 F. Supp. 1564, 1574 (N.D. Ga. 1987), for the proposition proof one work is derivative of another is by showing "substantial similarity." (Dkt. 874 at 12.) FICO does not disagree.

---

[3] FICO's motion for summary judgment was exclusively directed to the contract claims, having a six-year statute of limitations. (Dkt. 396, 309). In response to Defendants' motion directed to the three-year copyright statute of limitations, FICO looked to the infringing acts of distribution of Version 7.1, being within the three-year period.

Defendants' next paragraph discusses the "two-step test" for proving copyright infringement. (Dkt. 874 at 12.) The two-part test is proof of (1) access and (2) substantial similarity. It includes both an extrinsic and an intrinsic analysis, all of which have no application to this case. Defendants fail to acknowledge the fundamentally different issues to which proof of substantial similarity is applied in the two paragraphs: the derivative nature of a work and infringement.

Defendants also fail to acknowledge that copyright infringement can be proven with evidence of direct copying. *Computer Assocs. Int'l v. Altai, Inc.*, 982 F.2d 693, 701 (2d Cir. 1991); *Infogroup, Inc. v. DatabaseLLC*, 956 F.3d 1063, 1066 (8th Cir. 2020) (quoting *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 731 (8th Cir. 2006)). As Judge Schultz observed, Defendants' basis for summary judgment is on a theory FICO is not advancing. (Tr. 15:22-16:24.) The "substantial similarity" test of the two-step infringement proof must be met only "in the absence of direct evidence of copying." *Titlecraft, Inc. v. NFL*, No. 10-758, 2010 U.S. Dist. LEXIS 134367, at *5 (D. Minn. Dec. 20, 2010).

FICO will show the unauthorized use of Version 7.1 directly copied registered Versions 7.0 and 7.2 because the three versions are derivative of each other: the code between them is substantially similar. The purpose of this proof of substantial similarity is fundamentally different from proving infringement. *Designed to Sell*, 2005 U.S. Dist. LEXIS 53154, at *13 ("Therefore, while a derivative work must be substantially similar to the original work in order to qualify as a derivative work, the test for originality, and not the test for copyright infringement, is the appropriate analysis to

13

undertake when determining whether a particular work constitutes a derivative work eligible for copyright protection."); *see also Mulcahy v. Cheetah Learning LLC*, 386 F.3d 849, 853 (8th Cir. 2004) ("While substantial similarity is the test we use in determining copyright infringement, here the issue is whether Mulcahy's book is a derivative work.")

Defendants' fail to understand or acknowledge the different purposes to which proof of "substantial similarity" is put. They fail to understand or acknowledge that infringement can be proven with evidence of direct copying. Judge Schultz was correct:

> First of all, the case law, to my reading, allows the plaintiff to say that the unauthorized copying of Version 7.1, the direct copying of Version 7.1, can be an infringement of the two registered versions that are proffered here, 7.0 and 7.2. So those issues are appropriately presented to a jury at trial ***.

(Tr. 54:12-17.)

### IV.   Conclusion

For the foregoing reasons, the Magistrate's Order should be affirmed.

Dated: February 9, 2022                                    MERCHANT & GOULD P.C.

/s/ Heather Kliebenstein
Allen Hinderaker, MN Bar # 45787
Heather Kliebenstein, MN Bar # 337419
Michael A. Erbele, MN Bar # 393635
Joseph W. Dubis, MN Bar # 398344
MERCHANT & GOULD P.C.
150 South Fifth Street
Suite 2200
Minneapolis, MN 55402
Tel: (612) 332-5300
Fax: (612) 332-9081
ahinderaker@merchantgould.com
hkliebenstein@merchantgould.com

merbele@merchantgould.com
jdubis@merchantgould.com

*Attorneys for Plaintiff FICO*