UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Fair Isaac Corporation, | Case No. 16-cv-1054 (WMW/DTS) |
| Plaintiff, | |
| | **ORDER** |
| v. | |
| Federal Insurance Company and ACE American Insurance Company, | |
| Defendants. | |

---

This matter is before the Court on Defendants Federal Insurance Company and ACE American Insurance Company's (collectively, Federal) appeal of the January 12, 2022 Order of United States Magistrate Judge David T. Schultz, which denied Defendants' motion to amend the pretrial scheduling order in this case. (Dkt. 874.) For the reasons addressed below, the Court affirms the magistrate judge's January 12, 2022 Order on alternative grounds.

## BACKGROUND

Plaintiff Fair Isaac Corporation (FICO) designs and develops predictive-analytics and decision-management software. One of FICO's decision-management software tools is the FICO® Blaze Advisor® business rules management system (Blaze Advisor), which is used to design, develop, execute, and maintain rules-based business applications. Federal used Blaze Advisor pursuant to a software license and maintenance agreement (License Agreement), which FICO terminated in March 2016.

FICO commenced this copyright-infringement action against Federal in April 2016 and filed the now-operative second amended complaint in September 2018. The second amended complaint alleges that FICO maintains federal copyright registrations for multiple versions of Blaze Advisor, and specifically identifies twelve versions of Blaze Advisor that have been registered with the United States Copyright Office. And Count III of the second amended complaint alleges that Federal's continued "use of [Blaze Advisor]" after FICO terminated the License Agreement "constitutes an unauthorized reproduction of registered works."

In its March 17, 2017 initial disclosures, FICO identified categories of documents and information in its possession, custody or control that support its claims, including "[d]ocuments sufficient to show FICO's ownership of its federal copyrights in multiple versions of its FICO® Blaze Advisor® business rules management software." In its June 6, 2017 supplemental initial disclosures, FICO identified individuals likely to have discoverable information that FICO might use to support its claims, including a FICO employee with "knowledge of the extent of preexisting material in later versions of the Blaze Advisor® software." It is undisputed that, during fact discovery, Federal did not request—and FICO did not produce—any Blaze Advisor source code.

Under the now-operative sixth amended pretrial scheduling order, fact discovery concluded in March 2019, expert discovery concluded in June 2019 and all dispositive motions were to be filed on or before July 26, 2019. The parties cross-moved for summary judgment and to exclude expert testimony in July 2019 and, with the Court's

permission, the parties filed supplemental cross-motions for summary judgment in April 2020. The Court granted in part and denied in part those motions in two separate orders dated March 23, 2020, and March 23, 2021.

Subsequently, although discovery had ended, the parties agreed to permit Federal to depose FICO's vice president of software engineering Jean-Luc Marce in November 2021. FICO's amended initial disclosures identified Marce as an individual with "[k]nowledge regarding the authorship of the various versions of Blaze Advisor® software" and "knowledge of the extent of preexisting material in later versions of the Blaze Advisor® software." Federal's deposition of Marce occurred on November 11, 2021. The day before Marce's deposition, FICO produced a chart that Marce prepared. During his deposition, Marce explained that the chart shows the total number of lines of code in each version of Blaze Advisor and indicates how many lines of code were added, deleted or remained the same between a given version of the software and the next version.

Several weeks after deposing Marce, Federal moved to amend the pretrial scheduling order to permit additional dispositive motion practice—namely, a motion to exclude expert testimony from Marce and a supplemental motion for summary judgment as to FICO's remaining copyright-infringement claims. Following a hearing, in a January 12, 2022 Order, the magistrate judge denied Federal's motion to amend the pretrial scheduling order. The magistrate judge concluded that, although Federal had acted diligently, Federal's proposed supplemental dispositive motions would be futile.

3

Specifically, the magistrate judge concluded that Federal's proposed motions would be futile because FICO is seeking to introduce lay testimony from Marce rather than expert testimony and FICO did not fail to identify the Blaze Advisor source code in its initial disclosures. Federal now appeals the magistrate judge's January 12, 2022 Order.

## ANALYSIS

When reviewing an appeal of a magistrate judge's ruling on a nondispositive issue, the standard of review is "extremely deferential." *Scott v. United States*, 552 F. Supp. 2d 917, 919 (D. Minn. 2008). A magistrate judge's nondispositive ruling will be modified or set aside only if it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); LR 72.2(a)(3); *Ferguson v. United States*, 484 F.3d 1068, 1076 (8th Cir. 2007). A ruling is clearly erroneous when the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Wells Fargo & Co. v. United States*, 750 F. Supp. 2d 1049, 1050 (D. Minn. 2010) (internal quotation marks omitted). When a court "fails to apply or misapplies relevant statutes, case law or rules of procedure," its decision is contrary to law. *Id.* (internal quotation marks omitted).

### I. Good Cause Under Federal Rule of Civil Procedure 16(b)(4).

Federal challenges the magistrate judge's denial of Federal's motion to amend the pretrial scheduling order. In most cases, a district court must issue a scheduling order that limits "the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). Adherence to the deadlines in a pretrial scheduling order are "critical to achieving the primary goal of the judiciary: 'to serve the

4

just, speedy, and inexpensive determination of every action.' " *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006) (quoting Fed. R. Civ. P. 1). A "district court has broad discretion in establishing and enforcing the deadlines" in a pretrial scheduling order. *Id.*

A party that seeks to modify a scheduling order must demonstrate good cause to do so. Fed. R. Civ. P. 16(b)(4); LR 16.3(b)(1). "The primary measure of good cause is the movant's diligence in attempting to meet the [scheduling] order's requirements." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) (internal quotation marks omitted). Good cause under Rule 16(b)(4) may be shown by identifying a change in the law, newly discovered facts or another significant change in circumstance. *Ellingsworth v. Vermeer Mfg. Co.*, 949 F.3d 1097, 1100 (8th Cir. 2020). A district court also may consider the existence or degree of prejudice the modification would cause to the nonmoving party. *Marmo*, 457 F.3d at 759. "As a vehicle designed to streamline the flow of litigation through . . . crowded dockets," courts do not treat pretrial scheduling orders lightly "and will enforce them." *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001). As such, even if the moving party makes the requisite good-cause showing, "the district court retains discretion as to whether to grant the motion" to amend the pretrial scheduling order. *Id.*

### A. Futility

The magistrate judge denied Federal's motion to amend the pretrial scheduling order based on the futility of the dispositive motions Federal seeks to file. Federal challenges this determination.

Futility typically is not a factor courts consider when deciding whether a party has demonstrated good cause to amend a pretrial scheduling order. Rather, the analysis under Rule 16(b)(4) of the Federal Rules of Civil Procedure focuses almost exclusively on the moving party's diligence. *See Sherman*, 532 F.3d at 717 ("Our cases reviewing Rule 16(b) rulings focus in the first instance (and usually solely) on the diligence of the party who sought modification of the order."). The United States Court of Appeals for the Eighth Circuit has recognized that the "existence or degree of prejudice to the party opposing the modification *and other factors* may also affect the decision." *Bradford*, 249 F.3d at 809 (emphasis added). But this Court's research has not identified any Eighth Circuit decision articulating the "other factors" that may be considered. Neither the magistrate judge nor the parties have identified any legal authority suggesting that futility is relevant to the Rule 16(b)(4) good-cause analysis. Nor has the Court found a case that relies on futility when denying a motion to amend a pretrial scheduling order under Rule 16(b)(4) outside the context of a motion to amend the pleadings, which is not the circumstance presented here.[1]

---

[1]  Indeed, the magistrate judge appears to have conflated the legal standards that govern Rule 15(a) and Rule 16(b)(4) of the Federal Rules of Civil Procedure. Under Rule 15(a), which governs motions for leave to amend the pleadings, futility is a relevant

6

Because futility is not part of the good-cause analysis under Rule 16(b)(4), Fed. R. Civ. P., the Court cannot affirm the magistrate judge's decision on this basis, *see Wells Fargo*, 750 F. Supp. 2d at 1050 (providing that a nondispositive ruling must be modified or set aside if it misapplies the relevant legal standard). Therefore, the Court must address the relevant good-cause factors under Rule 16(b)(4), Fed. R. Civ. P.

### B.      Diligence

The magistrate judge found that Federal acted diligently when filing the motion to amend the pretrial scheduling order because the motion was filed "reasonably promptly" after Federal deposed Marce and the deposition of Marce occurred "within a reasonable timeframe" after FICO substituted Marce as a potential witness in place of a former FICO employee. The record supports the magistrate judge's findings about the timing of Federal's motion in relation to the identification and deposition of Marce. But the Court does not agree that these findings are sufficient to demonstrate Federal's diligence.

When evaluating a party's diligence under Rule 16(b)(4), a district court may consider the purported necessity for the modification. *See Metro Produce Distribs., Inc. v. City of Minneapolis*, 473 F. Supp. 2d 955, 964 (D. Minn. 2007). Here, Federal seeks to modify the pretrial scheduling order to extend the dispositive motion deadline for the purpose of challenging FICO's evidence comparing the source code between different

---

consideration. *Sherman*, 532 F.3d at 715. But under Rule 16(b)(4), which governs motions to amend a pretrial scheduling order, the moving party's diligence is the primary (and often the only) relevant consideration. *Id.* at 716–17. The Eighth Circuit repeatedly has cautioned courts to treat these standards as distinct. *See, e.g., id.* at 715–17. Here, because Federal does not seek to amend the pleadings, the futility consideration under Rule 15(a) is not implicated.

7

versions of the Blaze Advisor software. Thus, the Court must determine whether Federal could have raised such a challenge earlier had it exercised reasonable diligence.

FICO commenced this action in April 2016 asserting infringement of FICO's federal copyright in multiple versions of Blaze Advisor, and FICO specifically identified twelve versions of Blaze Advisor in its complaint. In March 2017, FICO's initial disclosures identified categories of documents and information in its possession, custody or control that support its claims, including "[d]ocuments sufficient to show FICO's ownership of its federal copyrights in multiple versions of its FICO® Blaze Advisor® business rules management software." Fewer than three months later, in June 2017, FICO supplemented its initial disclosures identifying individuals likely to have discoverable information that FICO might use to support its claims. These disclosures included a FICO employee, Jeremy Chen, who had "knowledge of the extent of preexisting material in later versions of the Blaze Advisor® software." In light of these events, Federal has been on notice for nearly five years, if not longer, that FICO might rely on multiple versions the Blaze Advisor software, the source code of that software, and information about the extent of preexisting material in later versions of the software.

Despite the foregoing notice, it is undisputed that Federal did not request the production or inspection of the Blaze Advisor source code during discovery. Nor did Federal depose FICO's employees about the extent of preexisting material in later

8

versions of the Blaze Advisor software until long after the dispositive motion deadline.[2] When a litigant has a reasonable opportunity to develop an issue within the deadlines established by the pretrial scheduling order, the litigant's failure to do so demonstrates lack of diligence regardless of whether the failure resulted from a tactical decision or neglect. *See, e.g.*, *Albright v. Mountain Home Sch. Dist.*, 926 F.3d 942, 951 (8th Cir. 2019) (observing that the counsel's busy work schedule did not excuse lack of diligence when plaintiff missed dispositive motion filing deadline); *Marmo*, 457 F.3d at 759–60 (observing that plaintiff had "ample opportunity to develop her expert testimony on the causation issue" and her "tactical decision" as to this issue did not demonstrate good cause to amend the pretrial scheduling order). Here, Federal had notice and ample opportunity during discovery to develop issues pertaining to the Blaze Advisor source code and the extent of any differences between the source code in each version of Blaze Advisor. Had Federal diligently done so, these issues could have been addressed prior to the dispositive motion deadline in July 2019. Federal did not do so, however.

Federal contends that it did not have sufficient notice of this issue because FICO did not identify the Blaze Advisor source code as a category of information relevant to FICO's claims. According to Federal, FICO's March 2017 identification of "[d]ocuments sufficient to show FICO's ownership of its federal copyrights in multiple

---

[2]  The Court is mindful that FICO first identified Marce in June 2021 as an employee with knowledge about the extent of preexisting material in later versions of the Blaze Advisor software, substituting a former employee that FICO previously had identified who also had such knowledge. FICO, nonetheless, has consistently since June 2017 identified an employee with knowledge about this precise issue despite the fact that the identity of that individual has changed.

versions of" Blaze Advisor did not reasonably encompass Blaze Advisor source code, but instead referred only to Blaze Advisor copyright registration certificates. Under Federal copyright law, ownership of a copyright in a work arises from *authorship* of the work, not registration with the Copyright Office. *See* 17 U.S.C. § 102(a) (providing that copyright protection "subsists . . . in original works of authorship"); 17 U.S.C. § 201(a) (providing that "[c]opyright in a work protected under this title vests initially in the author or authors of the work"). Such authorship must be "fixed in any tangible medium of expression," 17 U.S.C. § 102(a), which may include the source code of a computer program, *see, e.g.*, *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1355 (Fed. Cir. 2014). Documents sufficient to demonstrate ownership of a federal copyright in software may include both copyright registration certificates *and* source code. As such, Federal's argument that FICO's initial disclosures did not identify Blaze Advisor's source code as a category of information relevant to FICO's claims lacks merit.

Federal also argues that it had no reason to develop this issue earlier because "FICO's theory was that Federal had improperly used *registered* versions of Blaze, as FICO explicitly stated in its pleadings." Federal's argument misrepresents FICO's second amended complaint. FICO's second amended complaint, consistent with FICO's original complaint, alleges that Federal's "post-termination use of the FICO Products constitutes an unauthorized reproduction of registered works." This allegation plainly references "use of the FICO Products," not use of *registered* FICO Products. As such, this allegation encompasses the use of *any* FICO Products—registered or not—in a

manner that constitutes an unauthorized reproduction of a registered work.[3]  The breadth of this allegation includes the theory that FICO intends to advance at trial—namely, that FICO's unregistered version of Blaze Advisor is derivative of FICO's registered versions of Blaze Advisor and, therefore, Federal's use of the former constitutes unauthorized reproduction of the latter.  Consistent with this theory, FICO did not limit its discovery requests to information pertaining only to Federal's use of *registered* versions of Blaze Advisor.  Because Federal's failure to develop this issue during discovery was not for lack of reasonable notice, this argument is unavailing.

In summary, Federal has been on notice since early 2017 that FICO might rely on the arguments and categories of evidence that Federal now seeks to challenge.  Federal had ample opportunity to develop these issues within the deadlines established by the pretrial scheduling order, which notably has been amended *six times*.  Had Federal diligently developed these issues within the established deadlines, these issues could have been addressed prior to the dispositive motion deadline in July 2019.  Because Federal did not do so, Federal has not demonstrated good cause to amend the pretrial scheduling order a seventh time.

---

[3]  FICO's second amended complaint, consistent with its original complaint, specifically identifies only twelve versions of Blaze Advisor, all of which are registered. But FICO's allegations broadly define "FICO Products" and do not limit this phrase to registered versions of Blaze Advisor.

### C. Prejudice

Even if Federal had been diligent, modification of the pretrial scheduling order may be unwarranted if the modification would prejudice FICO. Although the magistrate judge mentioned prejudice in his ruling, he did not substantively address this issue.

When deciding whether a party has demonstrated good cause to modify a pretrial scheduling order, a district court may "consider the existence or degree of prejudice to the party opposing the modification." *Marmo*, 457 F.3d 759. In doing so, a district court should be mindful that adhering to the deadlines in a pretrial scheduling order is "critical to achieving the primary goal of the judiciary: to serve the just, speedy, and inexpensive determination of every action." *Id.* (internal quotation marks omitted). Here, Federal seeks to modify a pretrial scheduling order that the Court has modified *six times*. And the purpose of Federal's proposed modification is to file multiple additional dispositive motions nearly three years after the dispositive motion deadline. The parties have engaged in two rounds of dispositive motion practice. The parties' previous cross-motions for summary judgment and motions to exclude expert testimony resulted in nearly 1,000 pages of briefing submitted to the Court, exclusive of exhibits. Permitting the parties to engage in a third round of dispositive motion practice unquestionably will cause additional delay and expense, thereby inflicting prejudice on FICO.

Federal suggests that a third round of dispositive motion practice will streamline this case by narrowing the issues. But this is true only if Federal's proposed dispositive

motions have merit. The magistrate judge's futility determination is instructive as to this point.

The magistrate judge found that Federal's proposed dispositive motions would be futile in part because FICO's evidentiary disclosures were not untimely. Federal disagrees, arguing that it would not be futile to challenge FICO's Blaze Advisor source code evidence because FICO did not identify this evidence during discovery. But for the reasons addressed in Part I.B. of this Order, the record does not support this argument. Federal had sufficient notice that the Blaze Advisor source code and the extent of any differences between the source code in each version of Blaze Advisor would be relevant evidence to pursue during discovery. Federal's argument to the contrary lacks merit.

The magistrate judge also found that Federal's proposed motion to exclude expert testimony from Marce would be futile because FICO is offering Marce to introduce lay testimony, not expert testimony. "Determining whether a witness is offering an expert or lay opinion requires a case-by-case analysis of both the witness and the witness's opinion." *United States v. STABL, Inc.*, 800 F.3d 476, 486 (8th Cir. 2015). A lay witness's testimony does not become expert testimony merely because the witness's testimony is informed by the witness's professional training and experience. *United States v. Mast*, 999 F.3d 1107, 1112 (8th Cir. 2021) ("The fact that Fischer had professional training and experience preparing . . . easement maps did not, standing alone, render her testimony about the process of creating those maps expert testimony."). Federal contends that Marce is "an expert in lay witness clothing." The Court disagrees.

Marce relied on his professional training and experience to provide testimony about the process by which FICO modifies the Blaze Advisor software between a given version and the next version. This is no different than the witness in *Mast* who relied on her training and experience to provide lay testimony about the process of creating easement maps. *See id.* Marce similarly relied on his professional training and experience to calculate how many lines of identical source code have been retained between each version of Blaze Advisor—essentially, an exercise in addition and subtraction.[4] As the magistrate judge correctly observed, a mathematical calculation involves facts, not opinions. Marce performed mathematical calculations, and he has not offered anything akin to an expert opinion about any technical conclusions or inferences that should be drawn from those calculations. At trial, Federal can challenge the accuracy of Marce's calculations through cross-examination and the presentation of contrary evidence, and Federal can present its own arguments about the proper inferences to be drawn from the facts. But challenging Marce's testimony as improper expert testimony would be futile, as the magistrate judge correctly determined.

Because Federal's evidentiary challenge would be futile, Federal's basis for filing a third motion for summary judgment also would be futile. Federal contends that FICO's

---

[4] Although Marce created and used a computer script to automate this calculation, Federal fails to demonstrate how this fact converts Marce's testimony into expert testimony. As the magistrate judge correctly observed, the use of a calculator would not convert a mathematical calculation into an expert opinion. Similarly, attorneys regularly rely on word-processing programs to calculate the word count of legal memoranda instead of manually counting each word in the document, but this fact does not convert their word-count calculation into an expert opinion.

remaining copyright-infringement claims fail as a matter of law if Marce's testimony and the Blaze Advisor source code are excluded from evidence. But for the reasons addressed herein, Federal has not plausibly established that exclusion of this evidence is warranted. As such, Federal's proposed third motion for summary judgment would be futile.

In summary, granting Federal's motion to modify the pretrial scheduling order would prejudice FICO by imposing unwarranted delay and expense necessary to respond to Federal's meritless proposed dispositive motions. Because Federal has not demonstrated diligence and Federal's requested modification would unduly prejudice FICO, Federal has not established good cause to modify the pretrial scheduling order.

## II.  Discretionary Determination

As addressed above, a "district court has broad discretion in establishing and enforcing the deadlines" in a pretrial scheduling order. *Marmo*, 457 F.3d at 759. As such, even if the moving party makes the requisite good-cause showing under Rule 16(b)(4), "the district court retains discretion as to whether to grant the motion" to amend the pretrial scheduling order. *Bradford*, 249 F.3d at 809. Here, even if Federal could establish good cause under Rule 16(b)(4), Fed. R. Civ. P., the Court would exercise its broad discretion and deny Federal's motion to amend the pretrial scheduling order for the reasons addressed throughout this Order. In the Court's judgment, granting Federal's motion would not advance "the primary goal of the judiciary: to serve the just, speedy,

and inexpensive determination of every action." *Marmo*, 457 F.3d at 759 (internal quotation marks omitted).

### ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that the January 12, 2022 Order of United States Magistrate Judge David T. Schultz, (Dkt. 867), is **AFFIRMED** on alternative grounds as addressed herein.

Dated: May 16, 2022         s/Wilhelmina M. Wright
                            Wilhelmina M. Wright
                            United States District Judge