## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Fair Isaac Corporation,

     Plaintiff,

v.

Federal Ins. Co., et al.,

     Defendants.

Case No. 16-cv-1054 (DTS)

**ORDER**

Defendants Federal Insurance Company (Federal) and ACE American Insurance Company (ACE) (collectively, Defendants) move to bifurcate the upcoming trial in this case, dividing it into two phases: (1) liability and actual damages, to be heard and decided by the jury; and (2) disgorgement under Section 504(b) of the Copyright Act, to be heard and decided only by the Court. Plaintiff Fair Isaac Corporation (FICO) opposes the motion. Because bifurcating the trial would not promote convenience and judicial economy, or avoid unfair prejudice to either party, the Motion to Bifurcate [Dkt. No. 899] is denied.

## BACKGROUND

The Court has recounted the underlying facts of this case in earlier orders, including the Order on Summary Judgment and Exclusion of Expert Witnesses (SJ Order) (Dkt. No. 731) and the Order on Defendant's Motion to Strike Plaintiff's Jury Demand on Disgorgement Remedy (Disgorgement Order) (Dkt. No. 588). The Court incorporates those recitations by reference.

In short, FICO alleges Federal breached a licensing agreement for Federal's use of FICO's Blaze Advisor (Blaze) software. FICO seeks actual damages to remedy the

breach. Additionally, FICO claims Defendants infringed FICO's copyright of that software in various ways. FICO seeks actual damages caused by the infringement and disgorgement of profits Defendants obtained as a result of the infringement, pursuant to 17 U.S.C. § 504(b).

The Court has already determined that disgorgement is an equitable claim for the Court, rather than the jury, to decide. Disgorgement Order; Dkt. No. 588. Thus, the jury will determine the threshold question of liability. If the jury finds Federal liable for breach or Defendants' liable for infringement, the jury will also determine FICO's actual damages. Only if the jury finds infringement will the Court be tasked with determining the amount of profit, if any, Defendants must disgorge to FICO. FICO alleges its actual damages total over $47 million, but the gross revenues attributable to the infringement is up to $35 billion. Pl.'s Mem. in Opposition to Defendants' Mot. to Bifurcate (Pl. Mem.), Sealed Exs. 7, 10; Dkt. Nos. 910, 913-3.

The vast gulf between these figures—$47 million and $35 *billion*—among other factors, has led Defendants to seek bifurcation. Defendants argue that hearing the enormous revenue figures connected to the disgorgement issue will impede the jury's ability to accurately assess liability and will anchor them to dollar figures much higher than FICO's actual damages, leading them to award an improperly inflated actual damages figure. Furthermore, Defendants argue presenting these figures and other evidence regarding the disgorgement issue to the jury will only serve to confuse jurors and distract them from the questions they are tasked with addressing. Def. Mem. in Support of Mot. to Bifurcate (Def. Mem.) at 15; Dkt. No. 900.

In contrast, they argue, bifurcation will ensure fairness and promote judicial economy. Defendants contend the evidence the Court will consider on the disgorgement issue does not overlap with the evidence the jury will hear to decide liability and actual damages. The issues, according to Defendants, "are entirely separable." *Id.* at 18. Moreover, by bifurcating the trial, the Court may avoid hearing disgorgement evidence entirely should the jury determine Defendants are not liable for copyright infringement. *Id.* at 17-20.

FICO opposes bifurcation, arguing that the issues are not nearly so distinct as Defendants claim. Instead, FICO asserts there is substantial overlap in evidence regarding actual damages and disgorgement and that bifurcation is unwarranted, inefficient, and unwise. Pl. Mem. *passim*; Dkt. No. 910.

## CONCLUSIONS OF LAW

Rule 42 of the Federal Rules of Civil Procedure allows the Court to separate trial issues "for convenience, to avoid prejudice, or to expedite and economize" the proceedings. Fed. R. Civ. P. 42. The trial court has broad discretion to bifurcate trial issues. *O'Dell v. Hercules*, *Inc.*, 904 F.2d 1194, 1202 (8th Cir. 1990). However, bifurcation is the exception not the rule, and should not be "routinely ordered." Fed. R. Civ. P. 42, Advisory Comm. Notes, 1966; *see also Transclean Corp. v. Bridgewood Servs. Inc.*, 101 F. Supp. 2d 788, 793 (D. Minn. 2000); § 2388 Separate Trials— Discretion of Court, 9A Fed. Prac. & Proc. Civ. § 2388 (3d ed.) ("The piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issues in severed claims is not to be the usual course."). The party seeking to bifurcate carries a "heavy

burden." *H.B. Fuller Co. v. TSE Indus., Inc.*, 19-cv-2474, 2020 WL 3867551 at *1 (D. Minn. July 9, 2020).

## I.      Actual Damages and Disgorgement of Profits Calculations

The damages for FICO's breach of contract claim and its copyright infringement claim are calculated based on the fair market value (FMV) of a Blaze license. The FMV of the license is determined by looking to a "hypothetical negotiation" that asks what a "willing buyer and willing seller" would have determined to be a reasonable fee for the license. *On Davis v. The Gap, Inc.*, 246 F.3d 152, 167 (2d Cir. 2001). This is an objective inquiry and juries are empowered to assess various data to find the correct value. *Dash v. Mayweather*, 731 F.3d 303, 312 (4th Cir. 2013); *Safka Holdings, LLC v. iPlay, Inc.*, 42 F. Supp. 3d 488, 493 (S.D.N.Y 2013); *see also* SJ Order at 16; Dkt. No. 731. This inquiry asks what "value [] a willing buyer and willing seller would assign to Blaze Advisor—not merely what FICO subjectively would have charged or Defendants subjectively would have paid." SJ Order at 19; Dkt. No. 731; *see also On Davis*, 246 F.3d at 166.

In determining the reasonable license fee, the jury may consider "expert testimony, prior sales history, and evidence of sales of comparable assets," as well as "the value of the infringing use to the infringer." *Safka*, 42 F. Supp. 3d at 493; *see also Bell v. Taylor*, 827 F.3d 699, 709 (7th Cir. 2016); SJ Order at 17, Dkt. No. 731. The FMV will reflect, "to a large extent," the profits expected to be generated by the infringing use. *Safka*, F. Supp. 3d at 493-94 ("Obviously, that value reflects, to a large extent, a buyer's projections of what income he could derive from the asset in the future—i.e., lost profits—but it also factors in discounts for the time value of money and uncertainty."

4

(internal quotation marks and citations omitted)). The Court has already explained that in this case "relevant evidence" of FMV includes "FICO's standard pricing methodology" and "evidence of Defendants' use of Blaze." SJ Order at 55; Dkt. No. 731. Indeed, the parties agree that evidence about Defendants' revenues is relevant to determining FMV in the hypothetical negotiation. Pl. Mem. at 10; Dkt. No. 910; Tr. of Mot. Hrg. at 5:1-2; Dkt. No. 931 ("We absolutely agree that Defendants' total revenue is relevant to FICO's pricing model.").

In a claim for disgorgement, the copyright owner is first tasked with establishing a causal nexus between the infringement and the infringer's gross revenues. 17 U.S.C. § 504(b); *Andreas v. Volkswagen of Am. Inc.*, 336 F.3d 789, 796 (8th Cir. 2003). After that nexus is established, "a rebuttable presumption that the defendant's revenues are entirely attributable to the infringement arises, and the burden then shifts to the defendant to demonstrate what portion of the profits are not traceable to the infringement." *Andreas*, 336 F.3d at 796 (internal quotation marks omitted). Put differently, the copyright holder must prove attribution (the nexus between the infringer's profits and the infringement) and the infringer must prove apportionment (i.e. "the contribution to profits of elements other than the infringe[ment]."). *Id.* (quoting *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 518 (9th Cir. 1985)).

Courts have also clarified that the copyright holder's attribution burden limits what they may introduce in terms of revenues. A copyright holder may not necessarily introduce evidence of an infringer's total gross revenue; instead, the copyright holder may only introduce revenue from the part of the business directly connected to the infringement. *Andreas*, 336 F.3d at 792 ("[T]he district court granted Audi's motion in

5

limine, precluding Andreas from introducing evidence of Audi's gross revenue from sales of any automobile other than the TT coupe depicted in the [infringing] commercial."). Thus, FICO cannot meet its burden with evidence of Defendants' revenue that is completely divorced from Blaze.

## II.   Bifurcation Would Not Promote Judicial Economy or Convenience

### a.   Judicial economy

Bifurcation promotes judicial economy "if it saves considerable time and unnecessary expense and preparation." *Soo Line R.R. Co v. Werner Enters.*, Civil No. 12-1089, 2014 WL 4449642 at *1 (D. Minn. Sept. 10, 2014 (quoting *Keister v. Dow Chem. Co.*, 723 F.Supp. 117, 122 (E.D. Ark. 1989))). The parties have been vigorously litigating this matter for nearly seven years, with frequent involvement of this Court. *See* docket. What little time bifurcation may save in the uncertain event that no liability is found cannot fairly be said to be "considerable" in the grand scheme of this dispute. *See Soo Line*, 2014 WL 4449642 at *2 ("At this point [after years of litigation], separate trials will only slightly impact preparation."). And, as demonstrated below, if the jury finds Defendants liable, bifurcation will result in duplication of effort—the opposite of judicial economy. This Court's judicial economy analysis considers both how much efficiency is to be gained if the bifurcated issue is never tried as well as how much inefficiency is created if the bifurcated issue is tried.

### b.   Evidentiary overlap

Defendants' view that "liability and profit disgorgement are entirely separable" misses the mark for several reasons. *See* Def. Mem. at 18; Dkt. No. 900. First, as explained above, on the question of actual damages itself, the jury may consider

various financial information and other indicia, including Defendants' revenues, in determining such actual damage. *Supra*, Part I. Courts have acknowledged that evidence of an infringer's actual profits "may be relevant to the jury's determination of a damages award." *Fahmy v. Jay-Z et al.*, No. 2:07-cv-5715, 2014 WL 12558782 at *5 (C.D. Cal. July 21, 2014). In addition, Blaze's function affects what a reasonable buyer and seller would exchange for use of Blaze. *See* SJ Order at 55; Dkt. No. 731.

This evidence bears on disgorgement calculations as well. The Court will consider evidence of Defendants' revenue figures, as well as the actual profits Defendants realized. Part I, *supra*; *see also Navarro v. Proctor & Gamble Co. et al.*, 529 F. Supp. 3d 742, 756 (S.D. Ohio 2021). And, just as Blaze's function affects what constitutes a reasonable license fee, its function also allegedly generated revenue and is thus relevant to disgorgement.[1] If the jury and the Court require the same evidence— revenues, lost profits, function of Blaze within Defendants' business—little efficiency or convenience is gained through bifurcation; the jury issues are not greatly streamlined and the evidence related to disgorgement becomes duplicative if that issue is tried.

At oral argument on this motion, FICO's counsel asserted that all but three of FICO's witnesses would testify about both jury issues and disgorgement. Tr. of Mot. Hrg. at 28-29, 29:14-18; Dkt. No. 931. Of the witnesses whose testimony is expected to address both jury issues and disgorgement, FICO estimates that at least 50 percent of all such testimony would constitute overlapping evidence—meaning if the issues were bifurcated as Defendants desire, FICO's witnesses would appear twice and provide at

---

[1] Defendants argue the revenue figures FICO seeks to introduce for its disgorgement claim are untethered to reality because Blaze is just one small component of Federal's applications. But it is Defendants' burden, not FICO's, to apportion profits under the Copyright Act. 17 U.S.C. § 504(b). See Part I, *supra*, and Part III.b, *infra*.

least half of their testimony two separate times. *Id.* at 30:2-22. Defendants' counsel tacitly recognized this overlap at oral argument, explaining that "what's said in phase 1 [of trial] could be deemed admitted into evidence and the Court could consider it in ruling on disgorgement in phase 2. There would not be a need to recall witnesses to say the exact same thing." *Id.* at 32-33:25-4. Given the high level of anticipated witness overlap, bifurcation would not expedite the trial. *See* Fed. R. Civ. P. 42(b).

Moreover, while evidence relating to liability and damages/disgorgement may not overlap, that is not the line Defendants have asked this Court to draw. The cases Defendants rely on in service of its argument largely address bifurcating between liability and damages, not between two types of monetary relief as requested in this motion and therefore are inapposite and do not establish their heavy burden to justify bifurcation. *See H.B. Fuller Co. v. TSE Indus., Inc.*, 19-cv-2474, 2020 WL 3867551 at *1 (D. Minn. July 9, 2020). For example, in *Swofford v. B&W, Inc.*, 336 F.2d 406, 415 (5th Cir. 1964), the district court bifurcated damages from "validity, infringement, and any other issues which relate *to defendant's liability*" (emphasis added), a different line than the one Federal seeks to draw here. The line drawn in *Swofford* was between completely separate issues—liability and damages, whereas damages assessments would occur at both trials if this case were bifurcated.

*Kars 4 Kids* is also inapplicable. *Kars 4 Kids Inc. v. America Can!*, 14-cv-7770, 2019 WL 2078670 at *2 (D.N.J. May 10, 2019). There, the parties disputed the nature of the recovery sought, with one party arguing the recovery constituted actual damages and the other arguing it was disgorgement. *Id.* at *1. Because the court determined the recovery sought was disgorgement and thus an equitable issue for the court to decide,

the trial was bifurcated between liability on the one hand and disgorgement on the other. *Id.* at *2-3. The *Kars 4 Kids* court also noted "that trying disgorgement separately will enhance jury comprehension of the issues to be presented in the case, as the jury will not be presented with evidence that is not *relevant to any issue* it will need to decide." *Id.* at 2 (emphasis added).

The facts in this case diverge from *Kars 4 Kids*, however, because FICO is not seeking *only* disgorged profits. Instead, FICO seeks both disgorged profits *and* actual damages. *See* Second Am. Compl. at 12, Dkt. No. 132. The evidence needed for each of those issues will overlap. That liability and disgorgement are separable in a case like *Kars 4 Kids* does not cure Defendants' problem—the evidence relating to actual damages and disgorgement are *not* separable here. Because of that overlap, bifurcating as Defendants request would not "obviate the need for a trial on damages." *Contra Fahmy v. Jay Z*, No. 07-cv-5715, 2015 WL 5680299, at *24 (C.D. Cal. Sept. 24, 2015) (bifurcating liability from damages where "these issues involve largely different documents and witnesses");[2] *see Beeck v. Aquaslide 'N' Drive Corp.*, 562 F.2d 537, 542 (8th Cir. 1977) (affirming bifurcation for "judicial economy" in a products liability suit with threshold question of whether defendant manufactured the subject product, i.e. product identification).

Here, Defendants have not moved to bifurcate liability from recovery. Instead, they ask the Court to bifurcate jury issues, which includes a damages assessment, from

---

[2] In fact, the defendants in *Fahmy* had earlier requested the court bifurcate the liability and damages determination from that of equitable remedies. *Fahmy v. Jay-Z et al.*, No. 2:07-cv-5715, 2014 WL 12558782 (C.D. Cal. July 21, 2014). The court declined to bifurcate in that fashion because "it would result in substantial duplication of effort by all parties, and would further delay the resolution of this action, which has been pending before this Court for almost seven years." *Id.* at *5.

the equitable issue of disgorgement. Def. Mem. *passim*. Where liability itself is unrelated to a damages assessment, bifurcation between liability and damages may promote efficiency and clarity. But here, disgorgement and actual damages are *not* entirely separable because both involve consideration of Blaze's potential to generate revenue, its function in Federal's business, and Defendants' revenues.

In contrast to the cases Defendants cite, the Court finds the decision in *Navarro v. Procter & Gamble Co.*, 529 F. Supp. 3d 742 (S.D. Ohio, 2021), particularly instructive. In *Navarro*, plaintiff sued defendant for their use of her copyrighted photographs.. She sought actual damages and disgorgement of profits. In *Navarro*, actual damages were a "reasonable royalty," which is what "a hypothetical willing buyer and willing seller would have negotiated for use of the photographs at issue here." *Id.* at 755. As here, the defendants argued the actual damages and profit disgorgement determinations were "entirely separate[] and unrelated." *Id.* at 754-55.

But the court in *Navarro* disagreed, finding that the evidence relevant to actual damages and disgorgement overlapped and declined to bifurcate the trial of these issues. Defendants here contend *Navarro* is inapposite because the actual damages were based on a reasonable royalty rate, rather than a reasonable license fee, as FICO seeks here. Tr. of Mot. Hrg. at 11-12; Dkt. No. 931. Defendants acknowledge that profits are relevant to assessing reasonable royalty rate because, for example, "If you have a 10 percent profit margin, you're not going to give 11 percent royalty rate." *Id.* at 12:3-5. But, they contend, profits are irrelevant to a reasonable license fee, making *Navarro* immaterial to this question. *Id.* at 12-13. Defendants overstate the differences between this case and *Navarro*. While the measure of actual damages differs slightly between

10

the cases, the same types of information and evidence bear on both because both employ the same "hypothetical negotiation" framework—one resulting in a royalty paid over time, the other in a fully paid-up license (which can be understood as a one-time royalty payment). *Navarro*, 529 F. Supp. 3d at 755; SJ Order at 9; Dkt. No. 731.[3] Revenue and expected profit to be derived from use of the copyrighted material by defendant bear on both types of license payments.

While bifurcation may be more convenient and economical when issues truly are separable "and when counsel, witnesses, parties and jurors will not face two trials with repetitious testimony," those circumstances are not present here. *Soo Line*, 2014 WL 4449642 at *1. FICO has demonstrated that much, if not most, of its expected witnesses' testimony relates to both jury issues and disgorgement. Pl. Mem. at 10-11; Dkt. No. 910; Tr. of Mot. Hrg. at 28-30; Dkt. No. 931. Defendants' own brief admits that the parties' experts would likely testify in both phases, though implies the testimony offered in each phase may differ. Def. Mem. at 14; Dkt. No. 900. While paid experts are perhaps less inconvenienced by testifying twice than fact witnesses, even this basic admission undercuts Defendants' efficiency arguments. Whether convenient for the witnesses or not, it is inefficient to call them twice. Because of the anticipated overlap in evidence needed to prove actual damages and disgorgement, bifurcation would not promote judicial economy or convenience.

---

[3] Defendants also attempt to distinguish *Navarro* based on the dollar figure at issue in that case, which was $600 million. Tr. of Mot. Hrg. at 13:13-25; Dkt. No. 931. The risk of unfair prejudice, Defendants argue, is much higher in this case, where the dollar figures at issue are in the tens of billions. For reasons discussed more fully in the section on prejudice, the Court finds this distinction unpersuasive.

III.     **Prejudice**

Defendants claim the admission of disgorgement evidence before the jury will prejudice its case in three ways: (1) by anchoring the jury to outsized dollar figures; (2) by providing evidence of disgorgement when FICO cannot meet its burden for that claim; and (3) by confusing the jury. These arguments fail.

a.     **Anchoring**

Though they admit that evidence of their revenues is relevant to an actual damages calculation, Tr. of Mot. Hrg. at 5:1-2; Dkt. No. 931, Defendants argue nonetheless that introduction of specific revenue figures connected to the alleged infringement will improperly influence the jury on both liability and damages. Def. Mem. at 10-11; Dkt. No. 900. Yet, Defendants acknowledge, as they must, that the jury must hear evidence of Defendants' very high revenue figures. *Id.*

Federal's annual revenue is $13 billion, which Defendants admit is relevant to pricing a Blaze license. *Id.*; *see* Pl. Ex. 3; Dkt. No. 913. While lower than the $35 billion FICO seeks in disgorgement, $13 billion is still orders of magnitude greater than the $47 million FICO seeks in actual damages, let alone the $2.5 million Defendants contend FICO could be owed. Indeed, $13 billion is 276 times greater than FICO's $47 million claim and 5,200 times greater than the $2.5 million Defendants claim marks the outer limits of the potential actual damages. Defendants' concern for the "anchoring" effect of FICO's disgorgement figure ($35 billion) is unpersuasive given the recognition that the jury will inevitably hear other (albeit lower) 11-figure revenue numbers. Moreover, the concern starts from a false premise. This is a litigation between two very large, publicly traded corporations. The jury will not be shocked to hear revenue

numbers in the billions, let alone so shocked that its ability to fairly assess liability will be overwhelmed. *See Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 624-25 (N.D. Ill. 2000). Defendants' concern that this evidence will cause the jury to inflate its actual damage award, likewise underestimates their ability to fairly assess damages. Jurors often encounter chasms between the size of a plaintiff's damage demand and a defendants' assessment of damages. Here, the gulf between the actual damages figures to be argued at trial—$47 million versus $2.5 million—is not uncommonly large in a complex intellectual property or commercial dispute. The mere fact that the Defendants' revenues dwarf the alleged actual damages does not undermine the jury's ability to properly assess the amount of actual damages, if any, FICO has sustained.

Defendants suggest *Uniloc USA, Inc., et al., v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) demonstrates their prejudice argument. *Uniloc* has limited value here because it addressed an issue unique to patent infringement litigation. In *Uniloc*, the Federal Circuit determined that admission of Microsoft's total revenue from its Windows and Office products was improper under the prevailing entire market value (EMV) rule. The EMV rule "allows a patentee to assess damages based on the entire market value of the accused product only where the patented feature creates the basis for customer demand or substantially creates the value of the component parts." *Id.* at 1318 (internal quotation marks and citations omitted). Because the patented feature was not the basis for customer demand of Windows or Office, introduction of the defendants' $19 billion revenue figure was an improper measure of lost profits and thus could not "help but skew the damages horizon for the jury." *Id.* at 1320.

Thus, the *Uniloc* court upheld the district court's grant of a new trial not because of prejudice, but rather because the admission of the evidence was improper. *Id.* at 1320-21. While the court acknowledged that the evidence of $19 billion in revenue could have affected the jury's determination, the new trial was warranted because it was legal error to introduce that figure in the first instance, not because of the alleged unfair prejudice. *Id. Uniloc* is inapposite.

### b. FICO's theory of disgorgement is improper

Defendants also claim that FICO's theory of disgorgement is completely unsupported and therefore presenting it to the jury would harm Defendants' case on the jury issues. Def. Mem. at 1-6, 13; Dkt. No. 900. Defendants claim that FICO cannot meet its attribution burden under 504(b) and so introducing these numbers serves only to prejudice Federal. *Id.* At bottom, however, this argument is a collateral attack on the Court's prior ruling on Summary Judgment. The Court has already denied Defendants' Motion for Summary Judgment relating to disgorgement, finding FICO had presented sufficient evidence of Blaze's contributions to Defendants' revenues to create a fact issue. SJ Order at 57, Dkt. No. 731. The Court will not revisit that finding here.

### c. Juror Confusion

Defendants also argue the disgorgement evidence will confuse the jury. Def. Mem. at 15; Dkt. No. 900. Defendants contend that this risk is especially high because the evidence required for FICO's disgorgement claim is "highly complex." *Id.* In particular, Defendants claim the evidence of revenues for each application that used Blaze will be burdensome for the jury to hear, especially because they are not tasked with deciding the disgorgement question. *Id.* at 16-17. Defendants say they will need to

14

present "voluminous technical evidence" relating to the disgorgement issue, which the jury need not hear deciding liability and actual damages. *Id.* at 17. Yet, included in that "technical evidence" is information which very well may be relevant to the jury's questions, including Defendants' expenses, licensing fees, and other costs, all of which may be relevant to the fair market value of a Blaze license, which the jury must decide. *See supra*, Part I.

Defendants rely on cases that are inapposite to this issue. The cases cited suggest juror confusion may result when a jury is tasked only with deciding liability but hears damages evidence as well. *See* Def. Mem. at 15; Dkt. No. 900 (citing *Alfwear, Inc. v. Icon Health & Fitness, Inc.*, No. 2:17-cv-00476, 2018 WL 652728 (D. Utah, Dec. 14, 2018; *Marchionda v. John Q. Hammons Hotels Mgmt., LLC*, No. 4:15-cv-00479, 2018 WL 8458879 (S.D. Iowa Dec. 31, 2018; *Medtronic Xomed, Inc. v. Gyrus ENT LLC*, 440 F. Supp. 2d 1333 (M.D. Fla. 2006)). These cases are of limited value here because the jury in this case *is* tasked with assessing damages, and the information it needs to perform that assessment overlaps with the evidence relevant to disgorgement.

Defendants' contention that the jury will be unnecessarily bogged down in the disgorgement calculations and lose sight of what is required for their issues ignores that juries must juggle multiple damages and liability theories in many types of cases.[4] E.g.,

---

[4] Federal points to *Oracle Am. Inc v. Google Inc.* in arguing disgorgement presents a "mind-bender" unsuitable for the jury. Def. Mem. at 16 (citing *Oracle Am. Inc. v. Google, Inc.*, No. C 10-03561, 2016 WL 5393938 at *15 (N.D. Cal. Sept. 16, 2016)). *Oracle*'s facts are too dissimilar to this case to be particularly instructive. Blaze and Android (the software at issue in *Oracle*) are positioned very differently for their owners. For instance, FICO licenses Blaze to third parties. Google, on the other hand, allows anyone to use Android without a license, instead earning revenue from ads disseminated through the

*Cortes v. Baltimore Insular Lines*, 287 U.S. 367, 372 (1932) (superseded on other grounds by statute) (acknowledging concurrent tort and contract claims). Often they must do so for claims with overlapping facts. Indeed, in a copyright infringement case where the disgorgement issue is being decided by the jury rather than the court, the jury would be tasked with keeping the issues separate and not letting the complexity of the disgorgement calculation muddle their understanding and decision-making as to actual damages. *See Andreas*, 336 F.3d at 798; *United States v. Davis*, 882 F.2d 1334, 1340 (8th Cir. 1989) ("[A] jury undoubtedly is capable of properly compartmentalizing the evidence."). Just because an inquiry is highly fact-specific does not mean a jury should not be trusted to reach the correct result. *See Andreas*, 336 F.3d at 798. "Any potential confusion can be remedied by good lawyering, cautionary warnings, limiting instruction, or special verdict forms. Indeed, it is the experience of this Court, as well as others, that jurors bring a collective wisdom, common sense, and experience as well as intelligence and dedication to their task." *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 624-25 (N.D. Ill. 2000). Defendants have not demonstrated a substantial risk of juror confusion. Any risk that does exist is surmountable, as the Court presumes the jury will carefully follow the instructions it is given. *Richardson v. Marsh*, 481 U.S. 200, 206 (1987).

Lastly, in an earlier order the Court determined there was no constitutional or statutory right to a jury trial in a copyright case, finding instead it was an equitable issue for the Court to decide. *See* Disgorgement Order; Dkt. No. 588.  The issue is one that

---

Android platform. *Oracle*, 2016 WL 5393938 at *14. The jury there would have been tasked with apportioning between individual lines of code. *Id.* While Blaze may constitute only one small part of Federal's applications, Federal has not demonstrated that the mental gymnastics needed here are the same type of "mind-bender" as seen in *Oracle*.

few courts have addressed, and it is uncertain whether the Eighth Circuit would affirm that ruling. Thus, the Court intends to employ the jury in an advisory capacity on the disgorgement claim, providing the Eighth Circuit the benefit of the jury's determination and protecting the verdict should the Eighth Circuit determine that this Court erred in finding disgorgement was not a jury issue. *Navarro*, 529 F. Supp. 3d at 756; *see* Fed. R. Civ. P. 39(c). Since the jury will be required to hear evidence relating to disgorgement in its advisory capacity, the benefits of bifurcation, if any, are outweighed by its detriments. In this circumstance, bifurcation would be duplicative and unwise. *See Navarro*, 529 F. Supp. 3d at 756 ("[A]dopting that approach will ameliorate any lingering concerns about jury confusion that might otherwise arise if the jury were to hear evidence that may not be directly (or at least strongly) relevant to its other considerations in this case.").

Because Defendants have not demonstrated bifurcation will prevent prejudice or increase efficiency and convenience, the Court denies the motion.

### ORDER

For the reasons set forth above, **IT IS HEREBY ORDRED:** Defendants' Motion to Bifurcate (Dkt. No. 899) is **DENIED**.


Dated: January 11, 2023                    ___s/David T. Schultz_____
                                           DAVID T. SCHULTZ
                                           U.S. Magistrate Judge