# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation, | ) ) ) | Case No. 16-cv-1054 (DTS) |
| Plaintiff, | ) ) ) | **Jury Trial Demanded** |
| v. | ) ) | |
| FEDERAL INSURANCE COMPANY, an Indiana corporation and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF FAIR ISAAC CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION IN LIMINE NO. 4 TO EXCLUDE SPECULATIVE EVIDENCE RELATING TO FACTORS, OTHER THAN INFRINGEMENT, THAT ALLEGEDLY CONTRIBUTE TO DEFENDANTS' GROSS WRITTEN PREMIUM**

# TABLE OF CONTENTS

I. Introduction ................................................................................................. 1

II. Under 17 U.S.C. § 504(b) Defendants bear the burden of rebutting FICO's presumptive entitlement to all revenue attributable to infringement by apportioning the extent that revenue is attributable to other factors. ....................... 1

III. The Court should exclude Defendants' evidence of factors, other than infringement, that allegedly contribute to their revenue. .......................................... 4

    A. FICO will present evidence of Defendants' revenue connected to infringement. ................................................................................................. 4

    B. Defendants fail to quantify the portion of total revenues or profits attributable to factors other than infringement. ............................................. 5

    C. Defendants' generalized evidence is irrelevant and is likely to confuse the jury and prejudice FICO. ........................................................... 7

IV. Conclusion ................................................................................................. 8

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Adler v. United States*,
  270 F.2d 715 (8th Cir. 1959) ........................................................................................ 4, 7

*Andreas v. Volkswagen of Am., Inc.*,
  336 F.3d 789 (8th Cir. 2003) ............................................................................................. 2

*Concord Boat Corp. v. Brunswick Corp.*,
  NO. LR-C-95-781, 1998 U.S. Dist. LEXIS 14569
  (E.D. Ark. Sep. 4, 1998) ................................................................................................. 4, 7

*Design Ideas, Ltd. v. Things Remembered, Inc.*,
  No. 07-cv-3077, 2009 U.S. Dist. LEXIS 38374 (C.D. Ill. May 6, 2009) .............. 3, 5, 7

*FHC Equities, L.L.C. v. MBL Life Assurance Corp.*,
  188 F.3d 678 (6th Cir. 1999) ........................................................................................ 7, 8

*Infogroup, Inc. v. DatabaseLLC*,
  956 F.3d 1063 (8th Cir. 2020) ......................................................................................... 2

*Manning v. Gold Belt Falcon, LLC*,
  No. 08-cv-3427, 2011 U.S. Dist. LEXIS 134241 (D.N.J. Nov. 17, 2011) ................ 7, 8

*NLRB v. RELCO Locomotives, Inc.*,
  734 F.3d 764 (8th Cir. 2013) ........................................................................................ 6, 8

*Ossman v. Diana Corp.*,
  825 F. Supp. 870 (D. Minn. 1993) ............................................................................... 7, 8

*Universal Furniture Int'l, Inc. v. Collezione Europa, USA, Inc.*,
  599 F. Supp. 2d (M.D.N.C. 2009) ................................................................................... 3

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
  No. 06-cv-2662, 2011 U.S. Dist. LEXIS 112846 (D. Md. Sep. 30, 2011) .................... 3

*Whitserve, LLC v. Comput. Packages, Inc.*,
  694 F.3d 10 (Fed. Cir. 2012) ............................................................................................ 3

**Statutes**

17 U.S.C. § 504(b) ................................................................................................. *passim*

**Other Authorities**

Fed. R. . Evid. 402 ................................................................................................... 1, 8

Fed. R. . Evid. 403 ................................................................................................... 1, 8

I.  **Introduction**

Plaintiff Fair Isaac Corporation ("FICO") respectfully requests the Court exclude Federal Insurance Company ("Federal") and ACE American Insurance Company ("ACE American") (collectively, "Defendants") from introducing evidence of factors, other than infringement, they contend contribute to revenue without quantification of the extent of the alleged contribution. Under the Copyright Act, an accused infringer bears the burden of apportionment. That burden requires a showing of the extent factors, other than infringement, contribute to the revenue from selling insurance using Blaze Advisor. In short, the statutory standard requires proof that quantifies the amount of revenue not attributable to the infringement.

Here, Defendants provide no such quantification. Instead, they merely offer generalized testimony that other factors allegedly contribute to generating revenue with no testimony of the extent of that contribution. Defendants ask the advisory jury and Court to speculate as to the extent these factors contribute to revenue. This is improper under the law and should be excluded consistent with 17 U.S.C. § 504(b) and Federal Rules of Evidence 402 and 403.

II.  **Under 17 U.S.C. § 504(b) Defendants bear the burden of rebutting FICO's presumptive entitlement to all revenue attributable to infringement by apportioning the extent that revenue is attributable to other factors.**

FICO asserts claims of copyright infringement against both Federal and ACE American. FICO seeks an award of compensatory damages for Defendants' copyright infringement as well as disgorgement under 17 U.S.C. § 504(b).

Section 504(b) provides:

> **Actual Damages and Profits.**—The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

17 U.S.C. § 504(b) (emphasis in the original). As Judge Wright explained, "[t]o prove such damages, 'the copyright owner is required to present proof only of the infringer's gross revenue . . . [,]'" along with evidence that "the infringing use, at least in part, 'contributed to' the relevant gross revenue." (Dkt. No. 731 at 7, 21.) FICO is presumptively entitled to all gross revenue attributable to the infringement. *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 796 (8th Cir. 2003) (When the copyright owner meets its burden to prove gross revenue connected to infringement, "a rebuttable presumption that the defendant's revenues are entirely attributable to the infringement arises.").

The burden rests with Defendants to rebut that presumption. *Infogroup, Inc. v. DatabaseLLC*, 956 F.3d 1063, 1067-68 (8th Cir. 2020). Defendants bear the burden to prove both deductible expenses (i.e., the amount of profit from the gross written premium) *and* the extent those profits are not attributable to the infringement. (Dkt. 731 at 20 ("The burden to prove attribution is on the plaintiff, whereas the burden to prove apportionment is on the defendant.").) Any reduction of gross revenue to prove profits from the infringement depends on Defendants meeting their two burdens of proof. *See* 17 U.S.C. § 504(b).

With respect to the burden of apportionment, Defendants must do more than offer unquantified observations regarding profit apportionment. Rather, they must establish that factors, other than infringement, actually contributed to the sale of insurance using Blaze Advisor and must provide the "correct percentage of total revenues or profits that would be attributable to" those other factors. *Design Ideas, Ltd. v. Things Remembered, Inc.*, No. 07-cv-3077, 2009 U.S. Dist. LEXIS 38374, at *14 (C.D. Ill. May 6, 2009) (granting motion in limine to exclude an expert witness's apportionment opinion because he did provide an opinion on the percentage of revenue or profit attributable to factors other than infringement); *see also Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 31 (Fed. Cir. 2012) (vacating jury damages award where expert conclusory remarked on impact of various factors on damages calculation leading the jury "to reach a purely speculative judgment" and explaining that "some explanation of both why and generally to what extent the particular factor impacts the royalty calculation is needed"); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, No. 06-cv-2662, 2011 U.S. Dist. LEXIS 112846, at *18-21 (D. Md. Sep. 30, 2011) (explaining that, in the context of establishing deductible expenses, Defendants must prove that the general expenses contributed to the sale of infringing goods); *Universal Furniture Int'l, Inc. v. Collezione Europa, USA, Inc.*, 599 F. Supp. 2d at 660-61 (M.D.N.C. 2009) (same).

This makes sense. To offer evidence regarding factors that allegedly contribute to revenue without proof that those factors are linked to the sale of insurance using Blaze Advisor and without quantification asks the advisory jury and Court to speculate as to the extent those factors contributed to revenue. *Design Ideas, Ltd.*, 2009 U.S. Dist. LEXIS

3

38374, at *13-14 (explaining that expert opinion on factors, other than infringement, contributing to revenue, without quantification of the same, asks jury to speculate); *see also Adler v. United States*, 270 F.2d 715, 717 (8th Cir. 1959) (affirming district court's grant of a motion for judgment notwithstanding the verdict because "the evidence with respect to damages allegedly sustained was wholly inadequate, did not prove the damages with reasonable certainty, and the jury was required to resort to speculation and conjecture in arriving at damages claimed"); *Concord Boat Corp. v. Brunswick Corp.*, NO. LR-C-95-781, 1998 U.S. Dist. LEXIS 14569, at *31 (E.D. Ark. Sep. 4, 1998) (granting judgment as a matter of law on the issue of damages where the damages model presented "required [the jury] to blatantly speculate").

**III.    The Court should exclude Defendants' evidence of factors, other than infringement, that allegedly contribute to their revenue.**

    **A.    <u>FICO will present evidence of Defendants' revenue connected to infringement.</u>**

FICO will prove Defendants' gross revenue connected to infringement. As Judge Wright said: "FICO presents evidence of gross revenue from the sale of insurance in connection with which Blaze Advisor was used. This evidence is not 'undifferentiated,' as it is tied to Defendants' use of Blaze Advisor." (Dkt. No. 731 at 57.)

Defendants admit that $21,202,380,943 in gross written premium was connected to the use of Blaze Advisor. (Declaration of Paige Stradley ("Stradley Decl.") Ex. 1.) Defendants also admit to their continued use in the United States of the Blaze Advisor application called Evolution in connection with the sale of insurance in Canada; this resulted in $154,380,023 of gross written premium connected to the United States use of

4

Blaze Advisor for the sale of insurance in Canada. (*Id.* at Ex. 2.) In total, FICO will establish—through Defendants' own admissions—that the total gross written premium connected to Defendants' infringing use of Blaze Advisor, and subject to disgorgement, is $21,356,760,966.

### B. Defendants fail to quantify the portion of total revenues or profits attributable to factors other than infringement.

There is no dispute that some factors, other than infringement, contribute to selling insurance. But that generalized truth is not the burden of proof Defendants carry. Section 504(b) requires Defendants to quantify the amount of revenue attributable to factors other than infringement. *Design Ideas, Ltd.*, 2009 U.S. Dist. LEXIS 38374, at *13-14. Defendants did not engage experts to make this quantification and present no evidence quantifying the extent to which factors, other than infringement, contributed to their gross written premium generated in connection with using Blaze Advisor. They should not be permitted to offer generalized notions that other factors contribute to revenue only to leave the fact finder to speculate to or guess the extent of contribution.

For example, Defendants' damages expert, Mr. Bakewell, admits he did not analyze the extent to which profits were attributable to factors other than infringement because he was not engaged to do so. He testified that he could "get out the toolbox" and perform these calculations for apportionment. (Stradley Decl. Ex. 3 at 53:10-63:11.) But he did not do so. Rather, Mr. Bakewell, generally opines that "the large majority, if not all" of Federal's profits are attributable to factors other than Federal's infringement, including, but not limited to, "the know-how of its workforce, management abilities,

5

brand recognition, existing customer relationships, pricing, and service quality, all of which are key drivers of Federal's gross written premiums." (*Id.* at Ex. 4 at ¶ 170.) However, Mr. Bakewell does not take the next step: he offers no opinion as to the amount or the extent to which these factors allegedly contribute to the infringing revenue.

Defendants' other witnesses also fail to offer any quantification of the extent other factors may contribute to Defendants' gross written premium connected to the use of Blaze Advisor. For example, Mr. McCarter, Defendants' insurance industry expert, again merely opines in generalities. He opines that Federal's gross written premium was "the result of Federal's insurance knowledge, expertise, and access to insurance markets; its insurance products, business logic, and data; and its complex harmonization of individual technologies and production skills used to conduct insurance business" and that "Federal's revenue and profits are not attributable to its use of a single piece of software like Blaze in a complex system that ultimately drives Federal's financial results." (*Id.* at Ex. 5 at ¶¶ 29-30; *see also*, *id.* at ¶¶ 26, 44-51, 136, 151, 154, 157.) But he, like Mr. Bakewell, does not take the next step. He offers no opinion that establishes the extent to which any of these factors actually contribute to revenue generation connected to the use of Blaze Advisor. Indeed, many of the factors he identifies relate to doing business generally, and he made no analysis that links these other general business factors to contributing to the sale of insurance.

None of Defendants' witnesses offer any quantification of how factors, other than infringement, contribute to revenue. Defendants chose not to engage the experts to do so. Defendants must bear the consequences of their strategic decisions. *See NLRB v. RELCO*

6

*Locomotives, Inc.*, 734 F.3d 764, 796 (8th Cir. 2013); *Ossman v. Diana Corp.*, 825 F. Supp. 870, 879 (D. Minn. 1993); *see also FHC Equities, L.L.C. v. MBL Life Assurance Corp.*, 188 F.3d 678, 687 (6th Cir. 1999); *Manning v. Gold Belt Falcon, LLC*, No. 08-cv-3427, 2011 U.S. Dist. LEXIS 134241, at *7 (D.N.J. Nov. 17, 2011) ("The Court will not utilize equitable principles to undo the results of Plaintiff's tactical decisions."). To allow otherwise asks the advisory jury and Court to guess. *Adler*, 270 F.2d at 717; *Concord Boat Corp.*, 1998 U.S. Dist. LEXIS 14569, at *31.

### C. **Defendants' generalized evidence is irrelevant and is likely to confuse the jury and prejudice FICO.**

Defendants' generalized evidence of factors, other than infringement, allegedly contributing to revenue is irrelevant. It does not meet the legal standard under 17 U.S.C. § 504(b) and improperly asks the advisory jury and Court to speculate. 17 U.S.C. § 504(b); *Design Ideas, Ltd*, 2009 U.S. Dist. LEXIS 38374, at *13-14; *Adler*, 270 F.2d at 717; *Concord Boat Corp.*, 1998 U.S. Dist. LEXIS 14569, at *31.

The error of asking the fact finder to speculate is compounded by the fact this generalized testimony of other factors assumes—without any case-specific factual analysis—that these other factors contribute to revenue from selling insurance using Blaze Advisor. These other factors describe attributes of doing business generally that have nothing specific to do with selling insurance. Without any quantification, and without a showing the factor does contribute to selling insurance using Blaze Advisor, a jury is likely to wonder why the evidence was admitted.

7

Defendants' generalized evidence prejudices FICO. FICO is entitled to a disgorgement award that applies the statutory standards of the Copyright Act and is based on evidence—not guessing. FICO should not be prejudiced by Defendants' strategic decision not to provide the evidence required to meet their burden under Section 504(b). *See NLRB*, 734 F.3d at 796; *Ossman*, 825 F. Supp. at 879; *see also FHC Equities, L.L.C.*, 188 F.3d at 687; *Manning*, 2011 U.S. Dist. LEXIS 134241, at *7.

## IV.     Conclusion

For the above reasons and pursuant to 17 U.S.C. § 504(b) and Federal Rules of Evidence 402 and 403, the Court should exclude evidence regarding factors that allegedly contribute to revenue without showing that each factor contributes to the sale of insurance using Blaze Advisor and without quantification of the extent each factor allegedly contributes to revenue.

Dated: January 13, 2023

                                        MERCHANT & GOULD P.C.

/s/ Heather Kliebenstein
Allen Hinderaker, MN Bar # 45787
Heather Kliebenstein, MN Bar # 337419
Paige S. Stradley, MN Bar # 393432
Michael A. Erbele, MN Bar # 393635
Joseph W. Dubis, MN Bar # 398344
Gabrielle L. Kiefer, MN Bar # 0402364
MERCHANT & GOULD P.C.
150 South Fifth Street
Suite 2200
Minneapolis, MN 55402
Tel: (612) 332-5300
Fax: (612) 332-9081
ahinderaker@merchantgould.com
hkliebenstein@merchantgould.com
pstradley@merchantgould.com
merbele@merchantgould.com
jdubis@merchantgould.com
gkiefer@merchantgould.com

*Attorneys for Plaintiff Fair Isaac Corporation*

9