UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY,<br>an Indiana corporation, and ACE<br>AMERICAN INSURANCE COMPANY,<br>a Pennsylvania corporation,<br><br>Defendants. | Court File No. 16-cv-1054 (WMW/DTS)<br><br>***REDACTED***<br>**DEFENDANTS' MEMORANDUM<br>OF LAW IN SUPPORT OF THEIR<br>MOTION IN LIMINE REGARDING<br>FICO'S PRESENTATION OF<br>EVIDENCE ON ITS ALLEGED<br>ACTUAL DAMAGES** |

Defendants Federal Insurance Company and ACE American Insurance Company submit this memorandum of law in support of their motion *in limine* on Plaintiff Fair Isaac Corporation's ("FICO") claim for actual damages.

## INTRODUCTION

At trial, FICO intends to argue that its actual damages arising from Federal's alleged breach of the perpetual, enterprise-wide license agreement for Blaze Advisor ("Blaze") exceed $47 million. To support this damages figure, certain FICO witnesses will employ what this Court has termed the "application-based" pricing methodology: they will assign a fee for each of Defendants' applications that allegedly used Blaze, multiply that figure by the number of years in which Defendants allegedly used Blaze improperly, and then sum those figures together. But the proper measure of actual damages in this case is the fair market value of the license fee that two willing parties would have agreed to in an arms-length exchange, not the fees that FICO subjectively desired or has now assigned on

an application-by-application basis after the fact. The Court should exclude evidence related to FICO's "application-based" theory for the same reasons it has already precluded FICO's expert from testifying about it: it is "subjective and unreliable" and "inconsistent with the applicable legal standard" because it simply does not measure the market value of a license that FICO could have issued to Defendants for Blaze. Dkt. 731 at 32.

As summary judgment, the Court roundly rejected FICO's previous attempt to quantify its actual damages using the application-based methodology. FICO's damages expert, Neil Zoltowski, purported to assess FICO's actual damages using an application-based analysis substantively identical to the one FICO now seeks to admit at trial. The Court, observing that the appropriate measure of FICO's actual damages is the "objective" calculation of the "reasonable license fee on which a willing buyer and a willing seller would have agreed[,]" found that the application-based methodology, which represented only "what FICO subjectively would have charged[,]" was "irrelevant to th[e] inquiry." Dkt. 731 at 31. It "leads to a subjective and unreliable result that is inconsistent with the applicable legal standard." *Id.* at 32.

Nevertheless, FICO again attempts to admit the *identical* application-based analysis that the Court has already excluded—but this time through the lay testimony of its own employees. This is an improper "collateral attack" on the Court's determination that such an analysis is inadmissible. Dkt. 935 at 14. The Court should exclude this testimony for two independent reasons. First, it is inadmissible under the Court's order excluding Zoltowski's actual damages opinion. Second, because the application-based methodology

requires "technical" and "specialized knowledge[,]" it is not a proper subject of lay testimony under Federal Rule of Evidence 701.

## BACKGROUND

**I. FICO CALCULATED ITS ACTUAL DAMAGES USING AN APPLICATION-BASED METHODOLOGY.**

    **A.    Zoltowski's Expert Report Used an Application-Based Methodology.**

In his initial written report, FICO's damages expert, Neil Zoltowski, claimed FICO's lost license fees from April 2010 to December 2019 were $37,362,272. Declaration of Leah Godesky ("Godesky Decl."), Ex. 1 ("Zoltowski Rep."), ¶ 117 & Schedule 3.0. Zoltowski summed FICO's purported annual license fee for each of Defendants' applications that allegedly used Blaze, arriving at a figure "FICO *would* have charged Defendants." Dkt. 731 at 31 (emphasis added).

But FICO has never sold an application-based license for anything approaching the figure Zoltowski posited. Dkt. 77, ¶ 11. For its part, Federal in 2006 purchased a perpetual, enterprise-wide license for ███████ Godesky Decl., Ex. 2 ("Bakewell Rep."), ¶ 56 n.74. Indeed, between 2005 and 2013, FICO offered enterprise-wide licenses to companies like

███████████████████████████████████████████

███████████████████████ of $37.4 million. Godesky Decl., Exs. 3-

9. ████████████████████████████████ *See* Godesky Decl., Ex. 10 ("Waid Jan. 2019 Dep."), 98-99, 104.

3

**B. Zoltowski's Damages Opinion Derived Entirely from FICO Executive Bill Waid's Application-Based Pricing Analysis.**

Zoltowski calculated his damages figure using a pricing analysis supplied by a FICO employee named Bill Waid. Zoltowski Rep. ¶¶ 113-117 & nn.229-30. In a 2018 declaration, Waid explained that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Dkt. 77, ¶ 5. In addition, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id*. ¶ 6. Although Federal purchased an enterprise-wide license, Waid applied application-based pricing to determine FICO's alleged losses. *Id*. ¶¶ 9-10. Further, although Federal's license was perpetual, Waid calculated fees on an annual basis. *Id*. ¶ 9.

Waid, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ calculated a separate annual license fee for each of the 15 applications FICO alleges Defendants integrated with Blaze without a license. *Id*. ¶ 7-10. Then, Zoltowski, for each application, multiplied this annual figure by the number of years in which Defendants allegedly used Blaze without authorization and summed these subtotals. Zoltowski Rep. Schedules 3.0, 4.0, 5.0.

This application-based fee structure has never been accepted by a FICO customer on the market. As Waid conceded, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Dkt. 77, ¶ 11 (emphasis added); Godesky Decl., Ex. 11 ("Waid Apr. 2019 Dep."), 77 (suggesting that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ A licensee using Blaze with that number of applications would, as Federal did, purchase a perpetual, enterprise-wide

4

license.  Indeed, as Waid testified, FICO generally offers clients an enterprise-wide license when they ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Waid Jan. 2019 Dep. 24.  Moreover, as noted, FICO has offered enterprise-wide licenses to large corporations for fees between ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Godesky Decl., Exs. 3-9—sums that do not even come close to approaching the figures that result from FICO's application-based analysis.

## II. THE COURT FOUND THE APPLICATION-BASED METHODOLOGY TO BE SUBJECTIVE, UNRELIABLE, AND INAPPOSITE.

The Court barred Zoltowski from testifying about FICO's actual damages.  It found that the appropriate "methodology for determining FICO's actual damages—the fair market value of Blaze Advisor—is to calculate … 'the reasonable license fee on which a willing buyer and a willing seller would have agreed.'" Dkt. 731 at 31 (quoting *On Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001)).  "Zoltowski's opinions as to FICO's actual damages[,]" however, "focus primarily on what FICO would have charged Defendants[,]" which is "irrelevant to this inquiry." *Id.*  Consequently, Zoltowski's application-based pricing analysis produced "a subjective and unreliable result that is inconsistent with the applicable legal standard." *Id.* at 31-32.

## III. FICO RESUBMITTED AN "ACTUAL-DAMAGES" CALCULATION THAT AGAIN USED AN APPLICATION-BASED METHODOLOGY.

Nevertheless, several months after the Court's exclusion order, FICO again used the application-based methodology to assess its lost license fees at $47,450,089.  Godesky

5

Decl., Ex. 12 ("3d Supp. Ans. Interr. #6-9"), Exs. A-C.[1] This analysis, like the one that came before it, is a measure of "what FICO subjectively would have charged[,]" not what a willing buyer and willing seller would have negotiated. Dkt. 731 at 31. FICO has since stated that it plans to elicit testimony on this revised actual damages calculation at trial through the testimony of Waid or another FICO employee. Dkt. 910 at 10.

## ARGUMENT

I. **BECAUSE THE COURT HAS PREVIOUSLY HELD THE APPLICATION-BASED METHODOLOGY TO BE SUBJECTIVE, UNRELIABLE, AND INAPPOSITE, TESTIMONY REGARDING FICO'S CLAIMED ACTUAL DAMAGES BASED ON THAT METHODOLOGY SHOULD BE EXCLUDED.**

   A. **Testimony on FICO's Claimed Actual Damages That Relies on Application-Based Methodology Should Be Excluded Under the Court's Order Barring Zoltowski's Actual Damages Opinion.**

FICO's "actual-damages" figure of $47 million, which is based on the application-based methodology, is inadmissible under the Court's prior order. In barring Zoltowski's actual damages opinion, the Court concluded that the application-based methodology does not accurately capture Blaze's fair market value—the appropriate measure of FICO's damages—because it does not reflect "the reasonable license fee on which a willing buyer and a willing seller would have agreed." Dkt. 731 at 31. Instead, the application-based method revealed only "what FICO would subjectively have charged." *Id.* Because "[t]he copyright owner's subjective beliefs … are irrelevant to this inquiry[,]" the Court found

---

[1] FICO's actual damages calculation increased to account for alleged unlicensed use of Blaze in 2019 and 2020. 3d Supp. Ans. Interr. #6-9, Exs. A-C.

6

the application-based methodology to produce "a subjective and unreliable result that is inconsistent with the applicable legal standard." *Id.*

Despite the Court's holding, FICO arrived at its new "actual-damages" figure using the very same application-based method. 3d Supp. Ans. Interr. #6-9, Exs. A-C. That is, FICO has again assigned a license fee for each application purported to have used Blaze, multiplied each fee by the number of years in which Defendants allegedly used Blaze without authorization, and summed those figures together—just as Zoltowski did. *Compare id.*, *with* Zoltowski Rep. Schedules 3.0, 4.0, 5.0. Whether this analysis is introduced through Zoltowski, Waid, or another witness is merely a question of presentation, not substance. A wolf in sheep's clothing is still a wolf. At summary judgment, the Court determined that the substance of this analysis was not supported by the applicable legal standard and thus merited exclusion. FICO may not collaterally attack that conclusion now. *United States v. Carter*, 490 F.3d 641, 644 (8th Cir. 2007) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent states of the same case[.]").

**B.     Testimony on FICO's Claimed Actual Damages Would Be Irrelevant.**

Even setting aside the Court's prior order, an actual-damages figure derived from the application-based method is irrelevant. In a copyright-infringement action, a copyright owner's actual damages are "the reasonable license fee on which a willing buyer and a willing seller would have agreed for the use taken by the infringer." *On Davis*, 246 F.3d

7

at 167; *see also* Dkt. 731 at 31.[2] As the Court observed, "[t]he copyright owner's subjective beliefs"—here, "what FICO subjectively would have charged"—are "irrelevant to this inquiry." Dkt. 731 at 31. FICO's actual damages calculation captures, at best, its subjective view of Blaze's value.[3] But the one thing FICO's methodology does *not* do is demonstrate how a willing buyer and seller would price Blaze in an arms-length transaction, which is the only relevant question under the applicable legal standard. The Court should therefore exclude this analysis as irrelevant. *See* Fed. R. Evid. 402.

### C. FICO May Not Present an Inflated Actual-Damages Figure Based on Its Subjective Belief That It Would Only Sell An Application-Based License Rather Than an Enterprise-Wide License to an Alleged Infringer.

FICO has indicated that its use of the application-based methodology reflects a belief that it would not sell a perpetual, enterprise-wide license to an alleged infringer. Godesky Decl., Ex. 13 ("Zoltowski Reply Rep."), ¶ 60; *see* Godesky Decl., Ex. 14 ("Tr. of Hr'g on Defs.' Mot. to Bifurcate"), 19-20, 35 (FICO counsel asserting that "the proposition … that we would license on a perpetual basis … to someone who has infringed our copyright for four years" is "a non-sequitur"). The Court, however, made clear that "[t]he copyright owner's subjective beliefs or objections to an alleged infringer's conduct are irrelevant to this inquiry." Dkt. 731 at 31. And a pricing model "focus[ing] primarily on

---

[2] As this Court has previously explained, the same standard applies for calculating FICO's damages on its breach of contract claim. *See* Dkt. 731 at 54 (explaining that "[t]he determination of FICO's actual damages for both claims is based on the fair market value of Blaze Advisor[.]" (internal quotation marks omitted)).

[3] It is worth noting that this is not even a good-faith measure of *subjective* value, given that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Dkt. 77, ¶ 11.

8

what FICO would have charged Defendants had FICO known that Defendants were bound to the license for the relevant three-year period, with no prospect of any future business dealings between the parties afterwards . . . does not accurately reflect the legal standard for calculating actual damages[.]" *Id.* FICO's beliefs about Defendants' conduct therefore do not bear on its actual damages.

## II. BECAUSE IT WOULD CONSTITUTE IMPROPER EXPERT TESTIMONY, NO LAY WITNESS SHOULD BE PERMITTED TO TESTIFY TO FICO'S ACTUAL DAMAGES USING THE APPLICATION-BASED METHODOLOGY.

There is a second, independent reason to exclude testimony quantifying FICO's lost license fees with the application-based methodology: only an expert may testify using such a technical, specialized analysis, and neither Waid nor any other FICO witness has been qualified to give such expert testimony.

### A. Testimony Using the Application-Based Methodology to Quantify FICO's Actual Damages Would Be Expert Testimony.

Any testimony that Waid or any other FICO employee might offer on FICO's actual damages using the application-based methodology would be improper expert testimony for two reasons.

First, such testimony would simply recapitulate the application-based pricing methodology Zoltowski presented in his expert report. *Compare* 3d Supp. Ans. Interr. #6-9, Exs. A-C., *with* Zoltowski Rep. Schedules 3.0, 4.0, 5.0. But under Rule 701, a lay witness may not testify to expert opinion. *United States v. Peoples*, 250 F.3d 630, 641 (8th Cir. 2001). Moreover, a lay witness certainly may not smuggle an *excluded* expert opinion before the jury. In *Sapiano v. Millennium Entertainment*, the court excluded an expert

9

opinion and report on damages in a copyright-infringement case. 2013 WL 12122467, at *3 (C.D. Cal. Nov. 20, 2013).  As a result, it also barred a lay witness from offering testimony on actual damages based on the excluded revenue report. *Id.*  The court found that the expert report—like Zoltowski's here—"is a form of specialized knowledge far beyond the scope of lay testimony pursuant to Rule 701" so the lay witness could "not rely on the report when providing testimony at trial." *Id.*  FICO may not present an excluded expert opinion as lay testimony.

Second, to the extent Waid's actual damages opinion is based on his own analysis, it would be inadmissible as the product of "scientific, technical, or other specialized knowledge" rather than his own "perception[.]" Fed. R. Evid. 701.  Waid's assessment of FICO's lost license fees is not based on his experience pricing, negotiating, and executing Blaze licensing agreements.  Indeed, as he admitted, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Dkt. 77, ¶ 11.  To the contrary, FICO has priced enterprise-wide Blaze licenses at far less than $47 million.  Godesky Decl., Exs. 3-9.   Waid's "actual-damages" calculation is an elaborate, hypothetical mathematical exercise that bears little relationship to the way Blaze licenses are normally valued and sold.  That sort of esoteric analysis requires "specialized knowledge[,]" not just "the witness's perception[.]" Fed. R. Evid. 701.

To be sure, a lay witness with personal knowledge may opine as to the value of a business's product. *See Builders Steel Co. v. Comm'r of Internal Revenue*, 179 F.2d 377, 380 (8th Cir. 1950).  But such testimony—as with all lay testimony—is admissible only if it is the product of personal, not technical, knowledge. *Lifewise Master Funding v.*

10

*Telebank*, 374 F.3d 917, 929-30 (10th Cir. 2004).  For instance, a business executive with "personal knowledge and … experience" of company affairs may be able to offer "a straightforward opinion" on damages based on the company's "actual operating history[,]" but, unless qualified as an expert, he cannot offer such an opinion if it is based on a "technical, specialized" methodology that he cannot "recall" using in "any prior instances[.]" *Id*.

Because Waid by his own admission ████████████████████████ ████████████████████████████████████ Waid's testimony could not possibly derive from his own personal knowledge.  Indeed, the fact that FICO engaged an expert to opine on this subject in the first place, despite Waid's availability, shows its own recognition that such testimony is properly within the province of an expert, not a lay witness.  Waid has not been qualified to give such expert testimony.

### B. Waid May Offer Lay Opinions Only.

Even if Waid were otherwise qualified to offer expert testimony on the application-based pricing model, he may not do so at trial because FICO did not disclose him as an expert.  A witness "not testifying as an expert" may offer opinions only that are "rationally based on the witness's perception" and not "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.  As explained, Waid's use of the application-based methodology here reflects specialized knowledge, not his personal experience pricing and selling Blaze licenses.

11

**CONCLUSION**

For the reasons given above, Defendants request the Court grant its motion *in limine* concerning FICO's evidence of "actual damages."

Dated:  January 13, 2023

/s Terrence J. Fleming
Terrence J. Fleming (#0128983)
tfleming@fredlaw.com
Leah C. Janus (#0337365)
ljanus@fredlaw.com
Christopher D. Pham (#0390165)
cpham@fredlaw.com
Ryan C. Young (#0397751)
ryoung@fredlaw.com
Panhia Vang (#399444)
pvang@fredlaw.com

**Fredrikson & Byron, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
(612) 492-7000 (tel.)
(612) 492-7077 (fax)

Leah Godesky (Admitted Pro Hac Vice)

**O'Melveny & Myers LLP**
Times Square Tower
7 Times Square
New York, NY 10036
(212) 326-2000
lgodesky@omm.com

***Attorneys for Federal Insurance Company and ACE American Insurance Company***