# EXHIBIT 2 - REDACTED

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation,<br><br>    Plaintiff,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY, an Indiana corporation, and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania Corporation,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)  Case No. 16-cv-1054 (WMW/DTS)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## EXPERT REPORT OF
## W. CHRISTOPHER BAKEWELL
## REGARDING DAMAGES

### May 17, 2019

Respectfully Submitted,

W. Christopher Bakewell

**EXHIBIT 2**

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

## TABLE OF CONTENTS

1   Introduction……………………………………………………………………..1

  1.1   Qualifications And Experience ........................................................ 1

  1.2   Overview Of Assignment ................................................................ 2

  1.3   Overview Of FICO's Allegations.................................................... 3

  1.4   Facts, Data And Information Considered ........................................ 5

2   Summary of Opinions…………………………………………………………7

3   Background……………………………………………………………………9

  3.1   Overview Of FICO ......................................................................... 9

  3.2   Overview Of Federal ...................................................................... 10

  3.3   Overview Of Blaze Advisor ........................................................... 11

  3.4   Overview Of The Insurance Industry ............................................. 12

  3.5   Overview of FICO's Licenses Involving Blaze .............................. 16

      *2006 SLM Agreement, Amendments And Negotiations ............................. 16*

      *Other Software Negotiations .................................................................. 22*

  3.6   Overview Of The Framework For Copyright Infringement Damages........... 31

4   Analysis………………………………………………………………………32

  4.1   Summary Of Mr. Zoltowski's "Damages Analysis"....................... 32

  4.2   Mr. Zoltowski's Lost Software Licensing, Support And Maintenance Fees

          Calculation Is Flawed And Unsupported ....................................... 33

      *Summary Of Mr. Zoltowski' s "Lost Software Fee" Calculations............. 33*

      *Conceptual Reasons Why Mr. Zoltowski's Estimates Of "Value" Are
      Unsound And Yield Inflated Conclusions ................................................ 35*

      *Mr. Zoltowski Analysis Is Overstated Because He Did Not Factor In Normal
      Industry Practices Of Discounted Pricing................................................ 42*

      *Mr. Zoltowski's Analysis Is Overstated Because He Includes Applications
      That Do Not Use Blaze Advisor.............................................................. 45*

      *Mr. Zoltowski Did Not Explain What Parameters Were Used To Quantify
      His Size Classifications......................................................................... 46*

  4.3   Mr. Zoltowski's Calculation Of Profits From Using And Distributing Blaze

          Advisor Is Incomplete And Contains Errors ................................. 48

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

*Summary Of Mr. Zoltowski's "Disgorgement" Calculation* ...................... 48

*Mr. Zoltowski Does Not Establish an Economic Nexus Between Any Profits Federal Received And the Alleged Infringement* ....................................... 50

*Mr. Zoltowski Disregarded Evidence That Most, If Not All, Of Federal's Gross Written Premiums Are Attributable To Factors Other Than the Alleged Wrongdoings* .................................................................................. 51

*Mr. Zoltowski Includes Gross Written Premiums From Applications That Did Not Use Blaze Advisor* ........................................................................ 53

*Mr. Zoltowski's Calculation Methodology Is Flawed and Overstates Federal's Gross Written Premiums* ........................................................... 54

*Mr. Zoltowski Does Not Deduct Any of Federal's Costs That Were Incurred To Earn the Gross Written Premiums* ....................................... 57

4.4    Summary ....................................................................................... 65

5    Reservation of Rights............................................................................67

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

## 1   INTRODUCTION

### 1.1   Qualifications And Experience

1.   I am a Managing Director of Duff & Phelps, LLC ("D&P"), an international consulting firm founded in 1932 specializing in financial advisory services.[1]  My primary responsibility at D&P is to provide consulting services involving valuation and related issues in connection with technology-rich businesses and intellectual property.  I am the head of the firm's intellectual property disputes and advisory services practice and serve in the role of city leader.  I also serve on the firm's leadership forum, which is a committee of senior firm managers charged with setting the strategic direction of the firm.

2.   Over the course of my career, I have performed valuations of businesses and intangible assets, provided management consulting services related to the commercialization of intellectual property, as well as quantified damages in a variety of intellectual property-related disputes; these areas comprise the focus of my professional practice.  I am recognized as a top economic expert witness in each edition of the *IAM Patent 1000 The World's Leading Patent Practitioners*.  The practice I lead was recently recognized as the leading Intellectual Property Consulting Firm by the *National Law Journal*.

3.   I earned a B.S. degree *magna cum laude* from Bradley University in Peoria, Illinois.  I also earned a MBA degree from the University of Maryland at College Park, where I was a Graduate Fellow.  I am an Accredited Senior Appraiser in Business Valuation, a professional designation of the American Society of Appraisers ("ASA").  Among other things, this designation requires 10,000 hours of documented experience in valuing assets and businesses; I acquired most of this experience through the valuation of intellectual property rights and technology-rich business enterprises.  I served on the Board of Directors of the Houston Chapter of the ASA.

---

[1] D&P's compensation is not contingent upon the outcome of this litigation.  D&P bills at hourly rates for the time incurred by its professional staff on this engagement.  My hourly billing rate is $725.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

4.     I am a Certified Licensing Professional, a professional designation of the Licensing Executives Society intended to distinguish those who have demonstrated experience, proficiency, knowledge, and exposure to licensing and commercialization of intellectual property.   I earned this designation based upon my experience both as a management consultant, and as a real-world manager.   Earlier in my career, I held senior positions for a large industrial enterprise where my responsibilities included, among other things: financial reporting, financial analysis, market analysis, strategic planning, contract negotiation, as well as the general management of businesses.   Prior to and since this time, I have provided management consulting and financial advisory services to a wide range of leading firms. Through these experiences, I gained substantial real-world experience in commercial issues involving technology-rich businesses; licensing and contract negotiation, as well as financial reporting and corporate finance.

5.     An updated copy of my curriculum vitae, including my current and past employment and professional affiliations, is included as **Attachment A**.   Described therein are my publications, which include chapters covering the cost of capital in intellectual property damages, as well as articles published in the professional journals.   I have been an invited speaker on topics involving intellectual property valuation and damages quantification.   An updated list of my trial and deposition testimony is included as **Attachment B**.

### *1.2     Overview Of Assignment*

6.     I am retained as an expert on damages and financial issues by Federal Insurance Company and Ace American Insurance Company ("collectively, "Federal").[2]  I am requested to review and respond to the April 19, 2019 expert report of Neil Zoltowski ("the Zoltowski Report")

---

[2] Prior to January 14, 2016, Chubb Corporation ("Chubb Corp.") was the parent entity of Federal.  Effective January 15, 2016, Chubb Corp. merged with and into ACE INA Holdings, Inc. ("ACE INA"), with ACE INA surviving as a wholly owned subsidiary of Chubb Limited ("Chubb Ltd.") (*i.e.*, formerly ACE Limited before the merger).  As a result, Federal's former parent corporation, Chubb Corp., ceased to exist and Federal is now a subsidiary of ACE INA.  Ace American is currently a wholly-owned subsidiary of INA Holdings Corporation, which is a subsidiary of INA Corporation. INA Corporation is an indirect wholly-owned subsidiary of Chubb INA Holdings, Inc., Federal's parent company (Second Amended Complaint).  For purposes of this report, I refer to Federal and Ace as Federal.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

regarding damages in connection with allegations of breach of contract and copyright infringement made by Fair Isaac Corporation ("FICO") against Federal.

7.    Based upon my independent analysis, including my review of the facts, the documentary evidence produced in this lawsuit, the data and information cited in my report, my understanding of the applicable legal standards and guidance, as well as my business training and experience, I analyzed the Zoltowski Report and its assessment of the amount of damages FICO seeks to recover in this case.  My analysis and response to the Zoltowski Report is based upon, among other things, the application of customary methodologies of financial analysis and damages quantification.  My expert opinions, as well as the bases for these opinions, are explained throughout this report and exhibits.

### *1.3    Overview Of FICO's Allegations*

8.    FICO and Federal entered into a software license and maintenance ("SLM") agreement on June 30, 2006 ("the 2006 SLM Agreement").[3]  FICO granted Federal a license to use Blaze Advisor for its internal business purposes.[4]  I discuss the 2006 SLM Agreement in detail in **Section 3.5**.

9.    FICO alleges that Federal has been breaching the 2006 SLM Agreement by allowing third parties outside of the U.S. to use Blaze Advisor.[5]  FICO alleges that the 2006 SLM Agreement was limited to the U.S. and was restricted to the internal business operations of Federal.[6]

---

[3] FICO0000208-223.
[4] FICO0000208-223, at 208-209.
[5] Mr. Zoltowski identified the following third parties: Chubb Insurance Company of Eurpore SE; Chub Insurance Company of Canada and consultant AppCentrica; and Chubb Insurance Company of Australia Limited and consultant DWS Group (Zoltowski Report, p. 22).
[6] Zoltowski Report, p. 22.

CONFIDENTIAL
ATTORNEY'S EYES ONLY

10. FICO also alleges that Federal was required to obtain FICO's consent after the merger.[7] FICO alleges that it terminated its Blaze Advisor license agreement with Federal on March 31, 2016 for breach of contract, and, as a result, Federal is in breach of the Blaze Advisor software agreement and is also infringing FICO's copyrights.[8]

11. FICO alleges that the following are Federal's unlicensed applications used in breach of the 2006 FICO SLM Agreement and the years for which FICO is entitled to breach of contract damages:[9]

**Summary Of Federal's Applications
Accused By FICO Of Breach Of Contract
And Applicable Damages Period
(Excerpt From the Zoltowski Report)**

**Table 3: Summary of Applications & Damages Years**

| Application | Country | Start | End |
|---|---|---|---|
| ADAPT | Australia | 2010 | |
| ADAPT | U.K. | | |
| EZER | U.K./Europe | 2012 | 2019 |
| Evolution | Canada | 2013 | |
| Broker Site | Canada | | |
| Evolution | Australia | 2017 | |
| Exari | U.K. | 2013 | 2016 |
| CSI eXPRESS | | | |
| Automated Renewal | | | |
| Profitability Indicator | | | |
| Decision Point | | | |
| Premium Booking | U.S. | 2016 | 2019 |
| Cornerstone | | | |
| CUW | | | |
| IRMA | | | |
| TAPS | | | |
| CIS Claims | | | |

---

[7] Second Amended Company, p. 4; Zoltowski Report, p. 23.
[8] Second Amended Company, p. 6-7; Zoltowski Report, p. 23.
[9] Zoltowski Report, p. 23.

CONFIDENTIAL
ATTORNEY'S EYES ONLY

12. FICO also accuses the following of Federals' applications of using Blaze Advisor and infringing FICO's copyrights (the table also includes the years for which FICO is allegedly entitled to copyright damages):[10]

**Summary Of Federal's Applications
Accused By FICO Of Copyright Infringement
And Applicable Damages Period
(Excerpt From the Zoltowski Report)**

**Table 4: Summary of Blaze Advisor Applications Infringing Years**

| Application | Country | Start | End |
|---|---|---|---|
| ADAPT | Australia | | |
| ADAPT | U.K. | | |
| EZER | U.K./Europe | 2013 | |
| Evolution | Canada | | 2019 |
| Broker Site | Canada | | |
| Evolution | Australia | 2017 | |
| Exari | U.K. | 2013 | 2016 |
| CSI eXPRESS | | | |
| Automated Renewal | | | |
| Profitability Indicator | | | |
| Decision Point | | | |
| CIS Claims | U.S. | 2016 | 2019 |
| Premium Booking | | | |
| Cornerstone | | | |
| CUW | | | |
| IRMA | | | |
| TAPS | | | |

13. I am asked to assume that FICO's copyrights are valid, enforceable and infringed and that FICO will prevail on its liability claims against Federal. This is a standard assumption for determining damages. If it is determined that FICO's copyrights are not valid, not enforceable or not infringed, or if Federal prevail on liability in this litigation, there would be no damages.

### 1.4   Facts, Data And Information Considered

14. With professional staff working under my direction and supervision, I have reviewed the information listed in **Attachment C**. I formed my opinions based on my review and analysis

---

[10] Zoltowski Report, p. 25.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

of this information, together with my background, training, education and experience.   In general, the types of information that I considered include the following:

- Legal documents and pleadings;

- Documents produced by FICO and Federal;

- Documents that were independently obtained including, but not limited to, analyst reports, published articles, and SEC filings; and

- The following deposition transcripts:

| Deponent | Title | Date(s) |
|---|---|---|
| Benjamin Baer | Vice President – Product Marketing, FICO | January 29, 2019 |
| Jandeen Boone | Former Attorney, FICO | February 6, 2019 |
| Thomas Carretta | Vice President – Legal and Deputy General Counsel, FICO | October 9, 2018 |
| Oliver Clark | Director – Pre-Sales Consulting, FICO | September 11, 2018 |
| Kevin Harkin | Senior Vice President – North America Finance, Federal | March 25, 2019 |
| Christopher Ivey | Vice President – Product Support, FICO | January 30, 2019 March 14, 2019 |
| Henry Mirolyuz | Former Senior Systems Architect, Federal | July 31, 2018 January 11, 2019 |
| Ramesh Pandey | Chief Architect & Enterprise Architecture Practice Leader, Federal | November 13, 2018; January 22, 2019 |
| Tamra Pawloski | Former Vice President – Vendor Management Hardware and Software, Federal | January 18, 2019 |
| Michael Sawyer | Former Customer Support Manager, FICO | October 2, 2018 |
| Russel Schreiber | Former Vice President – Healthcare and Insurance Global, FICO | October 24, 2018 |
| John Taylor | Senior Vice President – Finance, Federal | August 2, 2018 |
| Lawrence Wachs | Former Sales Executive – Technology, FICO | February 26, 2019 |
| William Waid | General Manager – Decision Management, FICO | January 16, 2019; April 2, 2019 |

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

15.   I interviewed the following Federal employees: Ellen Garnes, Commercial Operations Technical Process Analyst; Nancy Verduin, Business Process Manager Commercial UW Services; Helen Mencke CSI OSD Field Operations and Production Supply Manager; Michael Schraer, Chief Products Officer; Alissa Theberge, Senior Vice President Underwriting; Kevin Harkin, Senior Vice President, North America Finance; Ramesh Pandey, Vice President North America Architecture; Joe Iannuzzi, Chief Information Office, Commercial Insurance and Enterprise Applications, Information Technology; Tracie Jerd, Program Manager; Chase McCarthy, Information Technology Lead; Jennifer Santucci, Vice President Underwriting; Claudio Ghislanzoni, Chief Enterprise Architect.

16.   I also interviewed Steven Kursh and William McCarter, Federal's other experts in this matter.

17.   My opinions are based upon my analysis of the information available to date. I may review and consider additional information that may be produced by the parties to this dispute, and I will supplement my opinions based upon that review if it is appropriate to do so. In particular, I understand that FICO was recently ordered to produce additional documents and information, and that all of these documents have not been provided as of the date of this report. Thus, I also reserve the ability to provide rebuttal opinions and testimony in this matter, to create demonstratives, and to utilize other graphical depictions as aids in the presentation of my findings.

## 2   SUMMARY OF OPINIONS

18.   The Zoltowski Report sets forth unreasonable conclusions that would result in a financial windfall to FICO; there are significant issues with Mr. Zoltowski's damages theories and methodologies that render his opinions unsound and unreliable. Both his "lost license fees" and his "disgorgement" calculations lack nexus to the allegations in this case for various reasons. Moreover, Mr. Zoltowski's disgorgement calculations exclude consideration of applicable costs and associated business activities.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

19. Although Mr. Zoltowski says that he analyzed "value," his overall methodology lacks consideration of valuation principles.  Mr. Zoltowski repeatedly disregarded many important considerations that related to value, including: (i) historical licensing practices between the parties, and as a result overestimated the scope of what would be licensed; (ii) ordinary and customary licensing practices in the field, including discounting; and (iii) evidence of the relatively limited intrinsic value that is provided by Blaze Advisor, and the fact that it is only one part of Federal's overall business.

20. In this case, contemporaneous evidence regarding the intrinsic value associated with the issues in this case is shown in the parties' actual negotiations as I discuss in **Section 3.5**.  In March 2016, FICO proposed three different licensing options to Federal that ranged from ███████████████████.  But Federal rejected this offer because according to Ms. Pawloski, "it was not what [Federal] expected to pay for the license; it was too high."[11]  This shows that, particularly relative to Mr. Zoltowski's estimates, the parties recognized that Blaze Advisor had a much smaller financial footprint.  Moreover, Mr. Zoltowski has not demonstrated any intrinsic value specifically attributable to the use of Blaze Advisor.

21. In **Section 4.2**, I discuss adjustments to Mr. Zoltowski's lost license fee estimates.  Mr. Zoltowski's estimates include numerous conceptual and mechanical errors.  For example, he erroneously included Federal's accused applications that do not use Blaze Advisor and contain errant size classification.  After only certain adjustments, Mr. Zoltowski's U.S. quantification decreases by 61 percent to $6.3 million, and his foreign quantification decreases by 82 percent to $3.9 million (*see* **Exhibits 3.0** and **3.1**).  However, I understand that it is common practice to discount license fees in this field; this is consistent with the evidence in this case, too.  Assuming only a 40 percent discount, Mr. Zoltowski's U.S. calculation would decrease to $3.8 million,[12] and his foreign quantification would decrease to $2.3 million.[13]

---

[11] Deposition of Tamra Pawloski, January 18, 2019, p. 206.
[12] Calculated as: $6.3 million x 60% = $3.8 million.
[13] Calculated as: $3.9 million x 60% = $2.3 million.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

22. In **Section 4.3**, I discuss how unreasonable Mr. Zoltowski's disgorgement calculations are. Mr. Zoltowski did not identify or focus on a revenue stream with a supportable nexus to the alleged wrongdoings. Mr. Zoltowski also disregarded the lack of profitability in the business overall. That Mr. Zoltowski identified no revenues that are reasonably associated with Blaze Advisor is consistent with how Federal operated in the ordinary course of business, where no revenues are assigned to Blaze Advisor.

### 3   BACKGROUND

23. This section provides a brief overview of background information applicable to my damages analyses.

### 3.1   Overview Of FICO

24. FICO, headquartered in San Jose, California, develop predictive analytics and decision-management software.[14]  FICO provides products and services that help businesses automate, various business decisions.[15]

25. FICO's customers include companies in the banking, insurance, retail, healthcare, and public sectors.[16]  FICO's primary competitors in the decision management software segment include International Business Machines Corporation ("IBM"), CA Technologies, Oracle International Corporation ("Oracle"), Pegasystems Inc., Newgen Software, InRule Technology, Inc., Red Hat, Inc. and Fujitsu Ltd. as well as in-house analytic and systems developers.[17]

---

[14] Second Amended Complaint, September 11, 2018, p. 1; Fair Isaac Corporation Form 10-K, for the year ended September 2017, p. 3, 15 and 18.
[15] Second Amended Complaint, September 11, 2018, p. 2; Fair Isaac Corporation Form 10-K, for the year ended September 2017, p. 3.
[16] Fair Isaac Corporation Form 10-K, for the year ended September 2017, p. 11.
[17] Fair Isaac Corporation Form 10-K, for the year ended September 2017, pp. 9 and 11; Global Business Rules Management System (BRMS) Market Forecasts & Opportunities (2014-2024), TechSciResearch.

CONFIDENTIAL
ATTORNEY'S EYES ONLY

26. I understand that FICO owns the following copyrights for its Blaze Advisor software ("FICO's Copyrights"):[18]

**Summary Of FICO's
Blaze Advisor Copyrights**

| Blaze Advisor Version | Copyright Registration Number | Copyright Registration Date |
|---|---|---|
| 3.0 | TX0006301747 | 3/23/2006 |
| 4.0 | TX0006301748 | 3/23/2006 |
| 5.0 | TX0006301746 | 3/23/2006 |
| 6.0 | TX0006301745 | 3/23/2006 |
| 6.5 | TX0006595049 | 8/27/2007 |
| 6.5.5 | TX0007622453 | 1/10/2013 |
| 6.6 | TX0007622554 | 1/10/2013 |
| 6.7 | TX0007622555 | 1/10/2013 |
| 6.8.1 | TX0007622557 | 1/10/2013 |
| 6.9 | TX0007622556 | 1/10/2013 |
| 7.0 | TX0007504713 | 2/14/2012 |
| 7.2 | TX0007776962 | 8/2/2013 |

27. I am asked to assume that FICO's copyrights are valid, enforceable and infringed.

### 3.2   Overview Of Federal

28. Federal sells insurance products for the personal, commercial and specialty lines of business in the U.S. through a series of independent agents and brokers.[19]  Federal serves multinational corporations, mid-size and small businesses with property and casualty ("P&C") insurance and risk engineering services; affluent and high net worth individuals with substantial assets to protect; individuals purchasing life, personal accident, supplemental health, homeowners, automobile, and specialty personal insurance coverage; companies and affinity groups providing or offering accident and health insurance programs and life insurance to their employees or members; and insurers managing exposures with reinsurance coverage.[20]

---

[18] Second Amended Company, p. 3.
[19] Deposition of John Taylor, August 2, 2018, p. 24-25, 34 and 36.
[20] Chubb Limited Form 10-K, for the year ended December 31, 2017, p. 2.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

29.   Federal faces competition on an international and regional basis from major U.S. and other international insurers and reinsurers.[21]  Federal's competitors include other stock companies, mutual companies, alternative risk sharing groups, and other underwriting organizations.[22]

30.   According to industry analysts, Federals' competitive advantage depends on a strong management team, strong brand, ability to maintain strong financial ratings from independent rating agencies, its underwriting expertise, business infrastructure, global presence, and more.[23]

### 3.3   Overview Of Blaze Advisor

31.   Blaze Advisor is a business rules management system for enterprise decision management.[24]

32.   A number of additional products within FICO's decision management suite can be purchased along with Blaze Advisor.[25]  Henry Mirolyuz, Federal's Former Senior Systems Architect, testified that Federal only licensed the core Blaze Advisor product from FICO.[26]

33.   I understand that Blaze Advisor has two components: (i) Advisor Builder, a development tool with visual editors, debugging facilities and wizards to assist in the integration of rule-based applications with databases (*i.e.*, Java objects, CORBA objects and ActiveX objects) and (ii) Advisor Engine, a rule engine that can either be deployed on an application server or executed directly on a client platform. [27]

34.   According to FICO's annual reports, sales of Blaze Advisor have declined in the 2016 through 2018 timeframe.[28]

---

[21] Chubb Limited Form 10-K, for the year ended December 31, 2017, p. 3.
[22] Chubb Limited Form 10-K, for the year ended December 31, 2017, p. 3.
[23] Chubb Limited Form 10-K, for the year ended December 31, 2017, p. 3; Chubb Ltd., Argus Analyst Report, February 26, 2019, p.1.
[24] https://www.fico.com/en/resource-download-file/4124.
[25] Deposition of Henry Mirolyuz, July 31, 2018, p. 42.
[26] Deposition of Henry Mirolyuz, July 31, 2018, p. 42.
[27] http://condor.depaul.edu/jtullis/documents/Blaze_Advisor_Tech.pdf
[28] FICO 2016 Annual Report, p. 43; FICO 2017 Annual Report, p. 42 and FICO 2018 Annual Report, p. 33.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

35.    William McCarter, one of Federal's experts in this matter, explained to me that Blaze Advisor is an "agnostic" business solution.[29]  According to Mr. McCarter, by "agnostic," he means that FICO does not provide the actual rules that are put into Blaze.[30]  As an example, Mr. McCarter explained to me that Blaze Advisor is similar to a blank Excel worksheet.[31]  A user must input data and rules into the software to make it work.[32]  I understand that Federal provides the rules, processes, decisions, and technology to make the entire claims process work.[33]

36.    Mr. McCarter also told me Federal utilizes approximately 1,500 different applications.[34]  Mr. McCarter further explained that only ten of the 1,500 applications actually use Blaze Advisor.[35]

37.    I understand Blaze Advisor is just one of approximately 20 different technologies in the CSI eXPRESS application and just one of approximately 15 to 20 different technologies in the CUW application alone.[36]

38.    Mr. Pandey also told me that Blaze Advisor would be useless without the rules that Federal provide.[37]

### 3.4    Overview Of The Insurance Industry

39.    Insurance is a mechanism to limit exposure to risk or the potential for future loss.[38]  Insurance customers pay a known dollar amount today (referred to as an insurance premium) for

---

[29] Interview of Mr. McCarter.
[30] Interview of Mr. McCarter.
[31] Interview of Mr. McCarter.
[32] Interview of Mr. McCarter.
[33] Interview of Mr. McCarter; Interview of Mr. Pandey.
[34] Interview of Mr. McCarter.
[35] Interview of Mr. McCarter.
[36] Interview of Mr. McCarter.
[37] Interview of Mr. Pandey.
[38] Insurance Industry Overview, Thomvest, 2015, p. 2.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

protection against potential unknown future losses.  Customers can purchase insurance for a variety of reasons including to protect their assets (*e.g*., home, automobile and business), their health (*e.g.,* disability insurance), their life or their exposure to liability or other losses.

40.    The insurance industry can generally be segmented into three major categories: [39]

- *P&C Insurance*.  Property insurance provides protection against risks to physical assets and covers damages when physical objects are lost or damaged (*e.g*., home insurance).  Casualty insurance provides liability protection against events that result from negligent acts or omission (*e.g*., automobile insurance liability coverage).

- *Life Insurance*.  Life insurance protects against the financial risks associated with dying, disablement, illness and retirement.

- *Health Insurance*.  Health insurance provides coverage for health expenses incurred in the event of illness or injury.

41.    Federal operates as a market leader in the global P&C insurance industry.[40]  The P&C insurance industry can be further broken down into two major categories or lines of business based on the underlying nature of the policies written:[41]

- *Commercial Lines*.  Comprises insurance products designed and provided to commercial entities and businesses.  Commercial lines account for approximately 50 percent of total US P&C industry premiums.[42]

- *Personal Lines*.  Comprises insurance products designed, and insurance coverage provided to individuals including personal home and auto insurance policies.  Personal lines account for the remaining approximately 50 percent of total US P&C industry premiums.

---

[39] Insurance Industry Overview, Thomvest, 2015, p. 3; Global Insurance Industry Insights, an in-depth perspective, McKinsey Global Insurance Pools-7th edition, 2017, pp. 7-8; Annual Report on the Insurance Industry, Federal Insurance Office, U.S. Department of Treasury, September 2018, p. 66 (accessed at: https://www.treasury.gov/initiatives/fio/reports-and-notices/Documents/2018_FIO_Annual_Report.pdf).
[40] Chubb Limited form 10-K for the fiscal year ended December 31, 2018, p. 2.
[41] Facts + Statistics: Commercial Lines, Insurance Information Institute (accessed https://www.iii.org/fact-statistic/facts-statistics-commercial-lines)
[42] Facts + Statistics: Commercial Lines, Insurance Information Institute (accessed https://www.iii.org/fact-statistic/facts-statistics-commercial-lines)

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

42.    Commercial specialty insurance comprises a subsegment of the commercial lines of business. Specialty insurance is insurance that is purchased to cover unique risks, assets or asset classes and is necessary for items that are not covered by ordinary insurance policies.[43]  For example, classic car insurance would be a form of specialty insurance.

43.    The P&C insurance industry is highly competitive as a number of insurance companies with well-established national reputations and sales networks compete and market similar products.[44]  Companies compete on a variety of factors, including product offerings, brand recognition, financial strength and ratings, price, scope and type of distribution system, level of customer service, and use of technology.[45]  Proprietary databases of underwriting and pricing experience also enables an insurer to use sophisticated pricing algorithms to more accurately price risks and cross sell products within an existing customer base.[46]

44.    The P&C insurance industry is a mature industry characterized by stable demand as homes, cars, businesses and employees must be insured regardless of general macroeconomic conditions.[47]  Annual sales activity is principally driven by customer renewals of existing policies.[48]

45.    Given the maturity of the business and the homogenous nature of insurance policies, pricing of premiums is highly competitive.[49]  Insurers compete aggressively for market share.[50]  In such an environment, managing of costs and business processes is also important.[51] Insurance is typically sold through two channels: (i) brokers, who represents the client and

---

[43] Business.com, February 22, 2017. (accessed: https://www.business.com/articles/specialty-insurance-basics/)
[44] The Allstate Corporation form 10-K for the fiscal year ended December 31, 2015, p. 20.
[45] The Allstate Corporation form 10-K for the fiscal year ended December 31, 2015, p. 2.
[46] The Allstate Corporation form 10-K for the fiscal year ended December 31, 2015, p. 2.
[47] IBISWorld Industry Report 52412 Property, Casualty and Direct Insurance in the US, December 2018, p. 7.
[48] IBISWorld Industry Report 52412 Property, Casualty and Direct Insurance in the US, December 2018, p. 7.
[49] IBISWorld Industry Report 52412 Property, Casualty and Direct Insurance in the US, December 2018, p. 22.
[50] IBISWorld Industry Report 52412 Property, Casualty and Direct Insurance in the US, December 2018, p. 7.
[51] IBISWorld Industry Report 52412 Property, Casualty and Direct Insurance in the US, December 2018, p. 7.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

sells policies from multiple carriers; or (ii) agents, who collect the data used in the underwriting process and represents one insurance company.[52]

46.  P&C insurance companies generate income from two principal sources:[53]

- *Underwriting income.* Underwriting income is the profit an insurance company earns from its insurance policy writing activities and is calculated as net premiums earned less insurance claims paid out and operating expenses incurred.

- *Investment income.* Investment income comprises the revenue earned from the insurance company's investment float. Insurance companies retain a portion of the premiums received and invest this capital in equity and fixed income securities.  Investment income includes dividends, interest and investment gains/losses.

47.  There were nearly 2,500 individual P&C insurance companies in 2018.[54]  The U.S. P&C insurance industry reported underwriting losses in two of the trailing three years, before posting a relatively narrow 0.4 percent underwriting profit margin in 2018.[55]  During the trailing five-year period, industry underwriting profits (*i.e.* net earned premiums less losses and expenses) averaged 0.3 percent.[56]  Underwriting profit margins have historically been modest, fluctuating between years of gains and losses based on claims activity, with profitability declining in years with a large number of insurable events (*e.g.,* natural disasters, fires, and extreme weather).

48.  To recap, this is a challenging business with very thin profit margins.  Despite growth in total written premiums, the U.S. P&C insurance industry underwriters operated roughly a break-even level over the last five years.  Illustrating this, the combined ratio, which measures the U.S. P&C insurance industry's profitability, averaged 99.6 percent over the last five years.[57]

---

[52] Insurance Industry Overview, Thomvest, 2015, p. 9.
[53] Chubb Limited form 10-K for the fiscal year ended December 31, 2018, p. 39.
[54] Private auto recovery helps US P&C industry back to underwriting profitability, S&P Global Market Intelligence, March 19, 2019.
[55] Private auto recovery helps US P&C industry back to underwriting profitability, S&P Global Market Intelligence, March 19, 2019.
[56] Private auto recovery helps US P&C industry back to underwriting profitability, S&P Global Market Intelligence, March 19, 2019.
[57] Private auto recovery helps US P&C industry back to underwriting profitability, S&P Global Market

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

### 3.5    *Overview of FICO's Licenses Involving Blaze*

49.    FICO produced over 80 Blaze Advisor agreements and amendments in this matter (*see* **Exhibits 12.0** and **12.1**).   It appears that Mr. Zoltowski only analyzed the 2006 SLM Agreement and two amendments with Federal and disregarded all other Blaze Advisor agreements.

50.    In this section, I first consider FICO's and Federal's license agreements and negotiating history.  I then consider FICO's Blaze Advisor license agreements and negotiating history with Oracle and Dell.  While FICO's negotiations with Oracle and Dell are not with Federal, they further illustrate FICO's negotiating practices with licensees of Blaze Advisor that were involved in a merger or acquisition.

51.    The agreements and negotiations illustrate the contemporaneous value FICO and the licensee placed on Blaze Advisor.  This discussion will provide background and begin to illustrate how Mr. Zoltowski's calculations are incomplete, conceptually flawed and overstated.

*2006 SLM Agreement, Amendments And Negotiations*

52.    FICO and Federal entered into the 2006 SLM Agreement on June 30, 2006.[58]  FICO granted Federal a license to use Blaze Advisor for its internal business purposes.[59]

53.    The 2006 SLM Agreement to the Blaze Advisor software was not to exceed five workstations for a one-time development fee of ▇▇▇▇▇ for the Java and .Net platforms and included the Blaze Advisor user guide.[60]  The 2006 SLM Agreement also included a support and maintenance fee of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.[61]

---

Intelligence, March 19, 2019. The combined ratio is calculated as losses and operating expenses divided by net premiums earned and is a measure of the total profitability of the insurer's underwriting business. A combined ratio of greater than 100% indicates that the insurer was unprofitable in the year on its core underwriting business.
[58] FICO0000208-223.
[59] FICO0000208-223, at 208-209.
[60] FICO0000208-223, at 208-209 and 218.
[61] FICO0000208-223, at 218.

CONFIDENTIAL
ATTORNEY'S EYES ONLY

54.   The 2006 SLM Agreement included two options for Federal to expand its license usage as follows:

- *Option One.* The 2006 SLM Agreement included a divisional enterprise license agreement ("ELA") option for use in Federal's specialty lines insurance division permitting it to use Blaze Advisor on up to ten workstations and make unlimited internal use of the product.[62] Option one was to be exercised by July 31, 2006.[63] The license fee for the optional divisional ELA was ██████ and Federal was entitled to a credit ██████ of the license fees previously paid under the June 30, 2006 Agreement.[64] The total annual support and maintenance fees for the optional divisional ELA for the first year would be ██████

- *Option Two.* Federal had the option to purchase an enterprise-wide license (apart from the divisional ELA) within a period of ██████ after the effective date of the 2006 SLM Agreement. If purchased, ██████ of the previously paid license fees would be applied towards such an enterprise license.[66] In addition, if Federal purchased the enterprise-wide license after the ██████ period, but within ██████ after the effective date of the 2006 SLM Agreement, ██████ of the previously paid license fees would be applied towards such an enterprise license.[67] The total maintenance and support fees for future years would be calculated based on the total license fees paid by Federal for Blaze Advisor under the 2006 SLM Agreement and all other agreements.[68]

55.   Federal exercised option one, the divisional ELA, on July 21, 2006 ("Amendment One").[69] Amendment One became effective August 1, 2006 and granted Federal ten development seats and unlimited internal use of Blaze Advisor for the specialty lines insurance division. Federal paid FICO an additional deployment license fee of ██████ support and maintenance fee (*i.e.*, ██████).[70]

---

[62] FICO0000208-223, at 218.
[63] FICO0000208-223, at 218.
[64] FICO0000208-223, at 218.
[65] FICO0000208-223, at 218.
[66] FICO0000208-223, at 219.
[67] FICO0000208-223, at 219.
[68] FICO0000208-223, at 219.
[69] FICO0002118-119.
[70] FICO0002118-119, at 118.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

56. Federal exercised option two, the enterprise-wide license, on December 28, 2006 ("Amendment Two"). The enterprise-wide license allowed Federal as well as its affiliates[71] to use Blaze Advisor for their internal business purposes, with no limitation on the number of workstations.[72] Federal paid FICO an additional deployment licensee fee of ███████ ████████ support and maintenance fee (*i.e.,* ███████).[74]

57. As of today, Federal has paid FICO ████████████████ million in development fees, ████████ in support and maintenance fees and ████████████████ illustrated in the following table:



**Summary Of Development Licensee,**
**Support And Maintenance And Other Fees**
**Federal Paid To FICO**
**(As of May 2019)**

| Agreements And Amendments | Deployment License Fees | Support And Maintenance Fees | Other Fees[75] |
|---|---|---|---|
| 2006 FICO-Federal SLM Agreement | ████ | ████ | █ |
| Amendment One | ████ | ████ | |
| Amendment Two | | ████ | ████ |
| Total | ████ | ████ | ████ |

58. On January 27, 2016, FICO alleged that Federal was in breach of Section 10.8, the "No Assignment" provision of the 2006 FICO-Federal SLM Agreement.[76]

59. On March 2, 2016, Michael Sawyer, Client Partner at FICO, sent an email to Ms. Pawloski, with two license options:

- *Option One.* FICO proposed a Blaze Advisor perpetual enterprise license for Federal's use in the U.S. including up to two existing applications for use outside

---

[71] Affiliates was defined as any other entity directly or indirectly controlled by Federal, where "control" means the ownership of more than 50 percent of the aggregate of all voting interests in an entity (FICO0000226-228, at 227).

[72] FICO0000226-228, at 227.

[73] Excludes ████████ already paid towards the development license fee.

[74] FICO0000226-228. The fee of ████████ was calculated based on the total enterprise license fee of ████████ minus the previously paid ████████, netting ████████ plus support and maintenance fees totaling ████████ of the net amount and 15 percent of the ████████ paid under the agreement.

[75] FED017887_0001-038.

[76] FICO0001702-722, at 709; FICO0000193-194.

CONFIDENTIAL
ATTORNEY'S EYES ONLY

the U.S. and unlimited development seats for a license fee of ▇▇▇▇ and an annual maintenance rate of ▇▇▇▇ of total license fees paid (*i.e.*, ▇▇▇▇).[78]

- *Option Two*. FICO proposed a Blaze Advisor perpetual deployment licenses for up to 15 named applications including up to 100 development seats for a license fee of ▇▇▇▇[79] and an annual maintenance fee of ▇▇▇▇ of total license fees paid (*i.e.* ▇▇▇▇).[80] In addition, FICO would grandfather in two existing applications that it alleged were non-compliant and were operating outside the US territory.[81]

60. Mr. Sawyer stated in the May 2, 2016 email to Ms. Pawloski that "Option 1 has the potential of a great value to [Federal]."[82] Mr. Sawyer also stated that FICO will include a perpetual license for the Blaze Advisor add on module FICO Decision Simulator for use with the exhibits portfolio of Federal's 15 named applications.[83]

61. Ms. Pawloski testified that FICO's options were "extremely high and not what [Federal] expected."[84] Ms. Pawloski further testified she was expecting a proposal that was less because Federal had already made an investment with FICO and that investment should have been taken into consideration.[85] According to Ms. Pawloski, FICO's proposal was "an extreme ask, in [her] opinion."[86]

62. Ms. Pawloski was asked in her deposition which option did she think fit the future business needs of Federal. Ms. Pawloski answered neither, "because option one was what we

---

[77] Calculated as: ▇▇▇▇ (Pawloski Exhibit 257).
[78] Pawloski Exhibit 257.
[79] Calculated as: ▇▇▇▇ (Pawloski Exhibit 257).
[80] Pawloski Exhibit 257.
[81] Pawloski Exhibit 257.
[82] Pawloski Exhibit 257.
[83] Pawloski Exhibit 257.
[84] Deposition of Tamra Pawloski, January 18, 2019, p. 170.
[85] Deposition of Tamra Pawloski, January 18, 2019, p. 170.
[86] Deposition of Tamra Pawloski, January 18, 2019, p. 170-171.

CONFIDENTIAL
ATTORNEY'S EYES ONLY

considered we already had, and option 2 was very…restricted to the 15 named applications…[and] there was no real growth that would happen."[87]

63. On March 6, 2016, Mr. Sawyer emailed Ms. Pawloski with an overview of the calculations, factors and Blaze Advisor pricing elements used to determine the option one.[88]  According to the email, ███████████████████████████████████████████ ███████████████████████████████.[89]  FICO relied upon publicity available financial reports issued by Federal.[90]  Option one also included a ███████████████ on the license fee and a ███████████████████████ maintenance fee.[91]  According to Ms. Pawloski, Federal still rejected this offer because "senior leadership felt that this…license fee was still extremely high in comparison to the investment already made with FICO."[92]

64. Ms. Pawloski responded back to William Waid, General Manager – Decision Management at FICO, on March 15, 2016 regarding Option one for a North America enterprise license.[93] Ms. Pawloski proposed a license fee of ███████.[94]  Ms. Pawloski revised FICO's estimated U.S. revenue for Federal, and applied a ███████████████.[95]

65. On March 17, 2016, Mr. Sawyer sent an email to Ms. Pawloski, Mr. Harlam and Mr. Mirolyuz at Federal with the following three licensing options:[96]



- *Option One.*  US Blaze ELA which included a ███████████████████ ██████ for licensed fees paid resulted in a final net license fee of ███████

[87] Deposition of Tamra Pawloski, January 18, 2019, p. 171-172.
[88] FICO0000003-004.
[89] FICO0000003-004.
[90] FICO0000003-004.
[91] FICO0000003-004.
[92] Deposition of Tamra Pawloski, January 18, 2019, p. 178-179.
[93] FED004635_0001; FED004636_0001; Deposition of Tamra Pawloski, January 18, 2019, p. 186.
[94] FED004635_0001; FED004636_0001; Deposition of Tamra Pawloski, January 18, 2019, p. 191-193.
[95] FED004635_0001; FED004636_0001.
[96] FED004635_0001; FED004636_0001.

CONFIDENTIAL
ATTORNEY'S EYES ONLY

- *Option Two*.  US Blaze ELA + SAS to SRL ELA included a  discount and ███████████ for license fees paid resulted in a final net license fee of ████████; or

- *Option Three*:  Global Blaze ELA + SAS to SRL ELA, which included a ████ ███████ and ██████ credit for license fees paid resulted in a final net license fee of ██████.

66.   On March 23, 2016, Mr. Sawyer sent a follow-up email to Ms. Pawloski, Mr. Harlam and Mr. Mirolyuz with a spreadsheet that according to Mr. Sawyer had "been updated to reflect FICO's best and final offer."  Option one and Option two remained unchanged from what FICO presented on March 17, 2016.  Option three was updated to reflect the ████████ ████ approved by FICO's chief executive officer.[97]

67.   So FICO proposed three different options to Federal that ranged from ████████ ████.[98]  Federal rejected this offer because according to Ms. Pawloski, "it was not what [Federal] expected to pay for the license; it was too high."[99]

68.   On March 25, 2016, Ms. Pawloski responded to Mr. Waid with a counteroffer for Option one of ██████[100] for development fee license and an annual maintenance fee of ██████ of total license fee paid (*i.e.*, ██████) for both legacy companies.[101]

69.   On March 30, 2016, FICO notified Federal that the 2006 FICO-Federal SLM Agreement would be terminated because of Federal's alleged breach of Section 10.8.

70.   In summary, the maximum amount Federal has paid to FICO is approximately ████████ for an enterprise license that included support and maintenance fees, discounts and credits. Based on the 2016 negotiations between FICO and Federal, the highest option FICO offered

---

[97] FED000352_0001-002; FED000353_0001.
[98] FED004537_0001-002; Deposition of Tamra Pawloski, January 18, 2019, p. 195.
[99] Deposition of Tamra Pawloski, January 18, 2019, p. 206.
[100] Calculated as: ████████████████████████████████████████████████████
(FED000360_0001-002).
[101] FED000360_0001-002.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

Federal was an enterprises license for ████████ and Federal rejected this as being too high.[102]  All FICO's offers to Federal included discounts that ranged from ████████ ████.

71.   As I discuss in more detail in **Section 4.2**, Mr. Zoltowski disregarded FICO's and Federal's 2006 SLM Agreement and 2016 negotiations.  FICO and Federal did not discuss a named application type license and instead discussed an enterprise license that included discounts ████████.  FICO and Federal did not discuss the type of license agreement Mr. Zoltowski is proposing.  The actual agreements and negotiations further illustrate how Mr. Zoltowski's lost software licensing, support and maintenance fee calculation is speculative.

*Other Software Negotiations*

72.   In the following paragraphs, I provide an overview of evidence from two other software negotiations.  These discussions provide context for negotiations between FICO and Federal and the value of the allegations in this case, and are informative to industry practices.

73.   FICO and Sun Microsystems, Inc. along with Sun Microsystems Technology, Ltd. (collectively "Sun") entered into a Software License and Services ("SLS") Agreement on December 24, 2004.[103] ████████████████████████████████████

74.   Oracle acquired Sun in January 2010.[105]  On February 15, 2010 Oracle notified FICO that Sun would be reorganizing following its acquisition by Oracle.[106]

---

[102] FED004537_0001-002; Deposition of Tamra Pawloski, January 18, 2019, p. 195; Deposition of Tamra Pawloski, January 18, 2019, p. 206.
[103] ORCL_FICO00000237-263.
[104] ORCL_FICO00000237-263, at 240; FICO0038508-514, at 508.
[105] Oracle and Sun Microsystems (accessed at: https://www.oracle.com/sun/); FICO0038508-514, at 508.
[106] Oracle advised FICO of the name change consistent to the reverse triangular merger with Sun, where Oracle

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

75. On January 23, 2012, FICO notified Sun that its merger with Oracle violates the anti-assignment clause of its Blaze Advisor Development and Deployment license, dated December 24, 2004[107] and that FICO would consider offering an additional license fee to reflect the acquisition of Sun by Oracle offering it maintenance services at a discount of ███ ████████

76. 

77. In a June 26, 2012 email, Thomas Carretta, Assistant General Counsel at FICO, notified Andrew Temkin at Oracle that Oracle was in breach of Section 13.12, the "Anti-Assignment" provision of the 2004 FICO-Sun Microsystems SLS Agreement.[111]  Mr. Carretta, proposed the following licensing options to Oracle:[112]

- *Option One.* ██████████████████████████████ ████████████████ and █
- *Option Two.* ██████████████████████████████ ████████████████████

---

was integrated into Sun and Sun then changed its name to Oracle America, Inc.  Oracle stated that the business of Sun, including any ongoing contracts and liabilities will remain at Oracle America, Inc. (ORCL_FICO00000015; FICO0038508-514, at 508; ORCL_FICO00000012-013, at 012).

[107] ORCL_FICO00000113-139.
[108] ORCL_FICO00000098-099.
[109] Calculated as: ████████████████████.
[110] ORCL-FICO00000004-006, at 006.
[111] ORCL_FICO00000001.
[112] ORCL_FICO00000001.

CONFIDENTIAL
ATTORNEY'S EYES ONLY

78. On September 6, 2012, Mr. Temkin of Oracle proposed the following to resolve the dispute between FICO and Oracle:[113] ███████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████

79. Mr. Temkin stated that Oracle arrived at the aforementioned number and terms after the parties exchanged offers and counteroffers and they represented Oracle's "best offer" to resolve the dispute.[114] Mr. Temkin called the offer "a compromise," stating that it would be in both parties' interest to resolve the matter in a business-like and cooperative manner.[115]

80. On October 25, 2012, Mr. Carretta at FICO advised Oracle that FICO had determined that it would not be able to reach an agreement with Sun and its successor, Oracle.[116] As a result, negotiations were terminated, and FICO reverted to the period remaining for termination as stipulated in the breach notice sent June 27, 2012.[117] FICO demanded that Oracle cease and desist use of the software effective December 24, 2012 and return the software and related materials, as well a certification that Oracle would acknowledge that it will cease use of the software and related materials effective December 24, 2012.[118]

81. On December 21, 2012, Stuart Wells at FICO, referencing a two-year negotiation period, offered the following options to Oracle for resolution:[119]



---

[113] ORCL_FICO00000030-031.
[114] ORCL_FICO00000030-031.
[115] ORCL_FICO00000030-031.
[116] ORCL_FICO00000033-038, at 036.
[117] ORCL_FICO00000033-038, at 036.
[118] ORCL_FICO00000036-038, at 036.
[119] ORCL_FICO00000040-046, at 041

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

- ███████████████████████████

82. On January 14, 2013, Oracle notified FICO that it ceased using Blaze Advisor effective December 24, 2012 and that it was in the process of collecting documentation and copies of the software which it intended to return or destroy by February 15, 2013.[120]

83. On January 23, 2013, FICO notified Oracle that the fees to settle the matter and cure the breach would be ████████ provided that the cessation of use of the software would be finalized on February 15, 2013 and that all installations of the FICO-licensed software would be removed.[121]

84. On January 30, 2013, Oracle reiterated to FICO that the use of FICO software has been discontinued permanently. Blaze was "designed out" for ████████ and the field services organization was instructed to cease use of Blaze with respect to ████████.[122] Consequently, Oracle understood that no additional monies were owed to FICO.[123] Oracle's design out of Blaze Advisor demonstrate that FICO's offers were above what Oracle believed was the value of Blaze Advisor.

85. On March 5, 2013, Doug Kehring at Oracle communicated to Mr. Waid at FICO that Oracle was willing to execute the following immediately.[124] The basis of the term for the settlement should be a 35-month period from February 2010 to December 2012 and not the 36.5-month term proposed by FICO.[125]

---

[120] ORCL_FICO00000040-046, at 043.
[121] ORCL_FICO00000040-046, at 046.
[122] ORCL_FICO00000050.
[123] ORCL_FICO00000050.
[124] ORCL_FICO00000051.
[125] ORCL_FICO00000051.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

86.   Also, despite being accustomed to ████████████████████████████ when licensing third party software, Oracle was willing to compromise and accept ██████ ████████████████████████████████████████████.[126]

87.   In March 2013, Oracle entered into a Settlement Agreement and Release FICO, ("the 2013 FICO-Oracle Agreement")[127] to settle a dispute over Oracle's licensing rights to FICO software programs, including Blaze Advisor.[128]  After negotiations, ███████████ ██████████████████████████████████████.[129]  The parties terminated the software license and mutually released one another from any and all claims arising out of or relating to the software license or the dispute.[130]

88.   In summary, the negotiating evidence between FICO and Oracle illustrate the value FICO and Oracle both placed on Blaze Advisor.  If the license fee is too high so as to be unreasonable—that is, above the intrinsic or market value—one can move in another direction as evidenced by Oracles' decision to design out of Blaze Advisor.  The negotiations also further illustrate how Mr. Zoltowski's lost software licensing, support and maintenance fee calculation is overstated.

89.   Mr. Zoltowski disregarded FICO's and Federal's actual license agreements and 2016 negotiations.  FICO and Dell did not discuss a named application type license and instead discussed an enterprise license that included discounts.  FICO and Federal did not discuss the type of license agreement Mr. Zoltowski is proposing.   The actual agreements and negotiations further illustrate how Mr. Zoltowski's lost software licensing, support and maintenance fee calculation is overstated and unsupported.

---

[126] ORCL_FICO00000051.
[127] FICO0038508-514.
[128] FICO0038508-514, at 508.
[129] FICO0038508-514, at 509.
[130] FICO0038508-514, at 510-511.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

90.  There is a second benchmark case study involving Dell and FICO that was also disregarded by Mr. Zoltowski.  Again, this provides context and insight into the value of the allegations in this case.  I discuss this case study below.

91.  On June 16, 2005, Dell and FICO entered into a Master Software License Agreement (the "2005 FICO-Dell MSLA") for Blaze Advisor, Intelligent Data Manager and Falcon ID Case Manager.[131]  In September 2007 and December 20, 2011, FICO and Dell entered into further amendments extending the Blaze Advisor software and adding five seats of Model Builder software.[132]

92.  On September 7, 2016 Dell acquired EMC Corporation ("EMC"), and EMC became a subsidiary of Dell.[133]  EMC had a software license and service agreement with FICO.[134]  As a result of the merger, FICO claimed additional licensing fees were required if the Dell licenses were to be extended to EMC.[135]

93.  

---

[131] FICO0016269-285, at 269.
[132] FICO0016269-285, at 269.  In September 2007 FICO and Dell entered into the "Dell MSLA 2007 Schedule" which was later amended on December 20, 2011.
[133] FICO0016269-285, at 269.
[134] FICO0016269-285, at 269.  On September 27, 2006 EMC and FICO entered into a Software License and Services Agreement (the "EMC SLSA"), which was amended five times from 2010 to 2015.
[135] FICO0060446-448 at 447.
[136] FICO0060402-404.
[137] FICO0060402-404, at 402.
[138] FICO0060402-404, at 402.
[139] FICO0060402-404.  It appears that a redacted email with no date supports these terms.  See FICO0060423-426.

CONFIDENTIAL
ATTORNEY'S EYES ONLY



94. On October 6, 2016 Mr. Waid sent Dennis Moore, Vice President Legal at Dell, a demand for resolution letter stating that FICO proactively reached out to Dell in July of 2016 as the proposed Dell merger with EMC gained regulatory approvals and proposed additional licensing fees on numerous occasions.[140]  The letter referenced the September 27, 2016 communication from Douglas Kennedy stating that FICO's previous offer was still valid and that the execution of a new agreement in September 2016 would save Dell nearly ▮▮▮▮ .[141]  FICO advised that it would exercise its right to mandatory mediation if the parties did not resolve the dispute.[142]

95. On October 7, 2016 Dennis Moore Legal Vice President at Dell responded to Mr. Waid in an email that Dell disagreed with "a number of points" in FICO's analysis because the software was used in two different legacy business and DFS was not in a position to make decisions for other business units.[143]

---

[140] FICO0060446-448.
[141] FICO0060446-448, at 447; FICO0060478-482.
[142] FICO0060446-448, at 447.
[143] FICO0060409-410.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

96.  Between October 24, 2006 and November 1, 2016, Mr. Kennedy and Faith Dickinson, Director of Software Procurement at Dell, emailed regarding the following licensing fee proposal:



97.  In the November 1, 2016 email, Mr. Kennedy stated that EMC did not have a valid software license agreement as of November 2016 and therefore would fall under Dell's Enterprise Agreement (2007 Schedule) under the fee construct.

98.  Mr. Waid responded to Ms. Dickinson in a November 7, 2016 email warning Dell that FICO was reaching out "one last time" to request a meeting between the parties in the next ten days to resolve the matter."[144]   FICO threatened legal action if Dell did not comply with its request.[145]

99.  On December 30, 2016 Ms. Owen sent an email to Mr. Waid thanking him for meeting with the Dell team today.  According to Ms. Owns, Dell and FICO have aligned on the following points:[146]

---

[144] FICO0060371-376, at 371.
[145] FICO0060371-376, at 371.
[146] FICO0060434-436.

CONFIDENTIAL
ATTORNEY'S EYES ONLY



100. In March 2017, Dell and FICO entered into a Settlement Agreement and Release, (the 2017 FICO-Dell Settlement").[147]  Dell agreed to pay FICO ▮▮▮▮▮.  The two parties executed the amendment one to the master software license agreement and termination agreement.[148]  FICO and Dell also mutually released one another from the Dell and EMC agreements, any and all claims relating to the agreements, and any matters arising out of the business relationship between Dell and FICO prior to the effective date.[149]

101. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

102. In summary, the negotiating evidence between FICO and Dell provides additional context for licensing practices and the value of software.  This evidence—disregarded by Mr. Zoltowski—illustrates how licensing negotiations in this field can occur, as well as provide insight and context into the value FICO and Dell both placed on Blaze Advisor.  In short,

---

[147] FICO0016269-285; FICO0060365.
[148] FICO0016269-285, at 269-270.
[149] FICO0016269-285, at 270.
[150] FICO0016269-285, at 273.
[151] FICO0016269-285, at 273.
[152] FICO0016269-285, at 273.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

FICO and Dell did not at all discuss the type of license agreement or economics Mr. Zoltowski envisions in his discussion and calculations.  Instead, FICO's and Dell's negotiations were based on its past licenses.  FICO and Dell did not negotiate a named application type license and instead discussed an enterprise license that included significant discounts, consistent with industry practices.

### 3.6    Overview Of The Framework For Copyright Infringement Damages

103. I approached my analysis from a financial and economic perspective, based upon my education, experiences and training in business, finance, valuation and damages matters.  At the same time, while I am not an attorney, I inquired about the legal framework that applies to a damages analysis given the allegations in this case.

104. FICO alleges Federal infringed its copyrights.[153]  I understand that the appropriate monetary remedies in instances of copyright infringement are outlined in 17 U.S.C. § 504(b) as follows:[154]

> *The copyright owner is entitled to recover the  actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages.*

105. Thus, I understand that actual damages must be "suffered by him or her as a result of the infringement."[155]  I also understand that any profits of the infringer must be "attributable to the infringement."[156]

106. I further understand that:[157]

> *In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to provide his or*

---

[153] Amended Complaint, p. 24-27.
[154] 17 U.S.C. §504(b).
[155] 17 U.S.C. §504(b).
[156] 17 U.S.C. §504(b).
[157] 17 U.S.C. §504(b).

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

> *her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.*

107. In short, I understand the available damage remedies for copyright infringement include damages that must be attributable to the infringement.[158]

## 4   ANALYSIS

108. I reviewed and analyzed Mr. Zoltowski's opinions. Mr. Zoltowski has pages of irrelevant narratives in his report and only a few pages that discuss his analysis of damages. I first address the errors and flawed assumptions inherent in the analysis of Mr. Zoltowski damages, and then I address the irrelevant narratives.

### 4.1   Summary Of Mr. Zoltowski's "Damages Analysis"

109. The Zoltowski Report includes a relatively lengthy discussion of background considerations (roughly 38 pages) and a relatively short discussion of his damages analysis (roughly four pages).[159] In terms of what he calls his "damages analysis," Mr. Zoltowski provides two categories of damages opinions.

110. *First,* Mr. Zoltowski tries to quantify FICO's alleged lost software licensing, support and maintenance fees. Mr. Zoltowski stated that FICO has lost deployment license, development seat license, support and maintenance fees from April 2010 to December 2019 totaling $16.1 million in the U.S., and $21.3 million in Canada, Australia, the United Kingdom and certain other countries in the European zone.[160]

111. *Second,* Mr. Zoltowski tries to quantify what he characterizes as FICO's alleged profits from using and distributing Blaze Advisor. Mr. Zoltowski stated that FICO may be entitled to "disgorge" the profits of $28.4 billion of gross written premiums in the U.S. between March

---

[158] *Calculating Intellectual Property Infringement Damages,* AICPA Practice Aid, 3rd Ed. (2012); and 17 U.S.C. §504(b).
[159] Zoltowski Report, table of contents.
[160] Zoltowski Report, p. 38.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

31, 2016 and March 2019 and $2.5 billion from outside the U.S. for the time period April 2013 through March 2019.[161]

112. The Zoltowski Report sets forth unreasonable conclusions that would result in a financial windfall to FICO; there are significant issues with Mr. Zoltowski's damages theories and methodologies that render his opinions unsound and unreliable.  For example, the analyses in the Zoltowski Report do not establish any economic or technical nexus between any claimed damages and FICO's allegations of wrongdoing.  The analysis in the Zoltowski Report does not fit the facts of the case and does not provide any assurance of the reasonableness of his conclusions.

113. A discussion follows.  First, I address issues in Mr. Zoltowski's "lost fee" estimates.  Second, I address issues with Mr. Zoltowski's disgorgement calculation.  After doing so, I provide a more reasonable measures of economic activities associated with the alleged wrongdoings.

### 4.2 *Mr. Zoltowski's Lost Software Licensing, Support And Maintenance Fees Calculation Is Flawed And Unsupported*

*Summary Of Mr. Zoltowski' s "Lost Software Fee" Calculations*

114. Mr. Zoltowski stated that the "appropriate measure of FICO's lost domestic license fees for the period from March 31, 2016 (*i.e.*, the alleged SLM termination date) to December 2019 (*i.e.*, estimated date of trial in this matter) is FICO's annual named-application deployment and development seat license fees for the period each Blaze Advisor application is used without FICO's licensed consent."[162]  According to Mr. Zoltowski this "reflects the value of [FICO's] software for each year of unlicensed use in each unlicensed application until that use its enjoined."[163]

---

[161] Zoltowski Report, p. 43.
[162] Zoltowski Report, p. 39.
[163] Zoltowski Report, p. 39.

CONFIDENTIAL
ATTORNEY'S EYES ONLY

115. Mr. Zoltowski relied upon Mr. Waid, to classify each of Federal's applications that are alleged to incorporate Blaze Advisor as "small, medium, large or very large" based on the ███████████████████████.[164]

116. Mr. Zoltowski also relied upon Mr. Waid to identify the number of development seat licenses that Federal would have required, as summarized in the following table:[165]

**Mr. Waid's Estimated Size And Seats Required
For Federal's Applications That Are Alleged To Use Blaze
(Excerpt From the Zoltowski Report)**

| Table 7: Size and Seats Required for Defendants' Applications | | | |
|---|---|---|---|
| **Application** | **Country** | **Size** | **Seats** |
| CSI eXPRESS | U.S. | Large | ███ |
| Automated Renewal Process | | Large | |
| Profitability Indicator | | Large | |
| Decision Point | | Large | |
| Commercial Underwriting Workstation (CUW) | | Very Large | |
| Individual Rate Modification Application (IRMA) | | Medium | |
| Premium Booking | | Medium | |
| Texas Accident Prevention System (TAPS) | | Small | |
| CIS Claims | | Very Large | |
| Cornerstone | | Medium | |
| EZER | U.K. & Europe | Large | |
| Evolution | Canada | Large | |
| Broker Site | Canada | Large | |
| Evolution | Australia | Large | |
| Adapt | Australia | Large | |
| Adapt | U.K. | Large | |
| Exari | U.K. | Large | |

117. Using what I understand to be flawed assumptions from Mr. Waid, Mr. Zoltowski offered declaratory and economically unsupported estimates of U.S. fees. To perform these calculations, Mr. Zoltowski used license fees from FICO's category pricing matrix based on Mr. Waid's speculative size classifications to calculate the lost software license, development seat license and support and maintenance fee license for each separate application. Mr. Zoltowski provided no discussion in the text of his report of the actual steps or the assumptions he made to calculate the lost licensing fees.

---

[164] Zoltowski Report, Schedule 6.1 and 7.1.
[165] Zoltowski Report, p. 40.

CONFIDENTIAL
ATTORNEY'S EYES ONLY

118.  Summarizing the calculations in Mr. Zoltowski's exhibits, the following diagram shows, at a high level, how Mr. Zoltowski's calculations flow:

**Summary Mr. Zoltowski's Calculation Of
U.S. Lost Software License, Support And Maintenance Fees**



119.  Mr. Zoltowski used the same flawed calculation for foreign lost software license, support and maintenance fees, but quantified different years for each of the accused foreign applications.[166]

120.  Mr. Zoltowski's lost license fees theory is overreaching and is not focused on the intrinsic value of the license.  In this section, I address the reasons as to why Mr. Zoltowski's work is fundamentally unreliable.

_Conceptual Reasons Why Mr. Zoltowski's Estimates Of "Value" Are Unsound And Yield Inflated Conclusions_

121.  Mr. Zoltowski describes his training and skills as being related to valuation.[167]  He also states that his calculations are an effort to perform a valuation, saying that his work: "reflects the value of [FICO's] software for each year of unlicensed use in each unlicensed application until that use its enjoined."[168]  But in his calculations, Mr. Zoltowski disregards fundamentals of valuing intellectual property rights and intangible assets, including in the context of

---

[166] Zoltowski Schedule 5.0.
[167] Zoltowski Report, p. 1.
[168] Zoltowski Report, p. 39.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

damages.[169]  In particular, Mr. Zoltowski disregarded that there are alternatives to using the accused functionality.  For instance, in the context of finance, economics and damages, these types of next-best alternatives are often referred to as next-best options, or "non-infringing alternatives."  The idea is that the intrinsic value of an asset is informed by the cost to create and develop that asset.[170]  This is known as the cost approach, and is based upon the principle of substitution.[171]

122.   Also relevant is if the particular solution provides opportunities to create incremental income, or if the substitute products provide the same functionality and benefits.[172]  In the context of damages, it is particularly relevant to engage in such an analysis without engaging in speculation.[173]  This is referred to as the income approach, or sometimes the principle of anticipation.

123.   Together, the idea is to identify any incremental benefits that a particular solution might provide over the substitute products, or next-best alternatives.  These concepts, in turn, will inform the market value of that can be considered software applications.  From a financial, economic and damages perspective, this is known as the market approach, which is based upon the principle of comparison. [174]  These considerations will all affect licensing

---

[169] Litigation Services Handbook: The Role of the Financial Expert, Fourth Edition 2007, p. 20.8-20.10.

[170] For an overview of the cost approach, *see* Gordon V. Smith, Russel L. Parr, Intellectual Property Valuation, Exploration, and Infringement Damages, pp. 156–168; Robert F. Reilly and Robert P. Schweihs, *Valuing Intangible Assets,* McGraw-Hill 1999, p 326.

[171] For an overview of the cost approach, *see* Gordon V. Smith, Russel L. Parr, Intellectual Property Valuation, Exploration, and Infringement Damages, p. 156–168.

[172] Robert F. Reilly and Robert P. Schweihs, *Valuing Intangible Assets,* McGraw-Hill 1999, p 326.

[173] Litigation Services Handbook: The Role of the Financial Expert, Fourth Edition 2007, p. 20.18-20.19.

[174] An agreement to license a software license is similar to most business agreements in that, when evaluating whether such an agreement is economically justified, the parties involved conduct an economic analysis of the expected benefits and costs associated with the transaction.  If both parties expect to benefit from the agreement (*i.e.*, if the expected benefits to each party exceed the anticipated costs), the transaction is likely to occur.  If one or both parties do not expect the benefits to exceed the anticipated costs, a transaction is not likely to occur.  In the context of a hypothetical negotiation for a software license, the licensee would not enter into the license if it could achieve the same benefit at a lower cost by using a non-infringing alternative.  In this way a prospective licensee would not pay more for the software than the cost of a comparable technology (Litigation Services Handbook: The Role of the Financial Expert, Fourth Edition 2007, p. 20-19; Robert F. Reilly and Robert P. Schweihs, *Valuing Intangible Assets,* McGraw-Hill 1999, p. 327).

negotiations, either directly or indirectly. And negotiations and associated values can tend to be understood by applying these financial and economic principles.

124. All of these concepts are interrelated, and when they are each considered as appropriate in each circumstance, they can be reconciled against one another.[175] This reconciliation process provides insight into the value of an intangible asset, including claims of copyright infringement.[176]

125. Mr. Zoltowski did not describe these concepts, despite discussing how his qualifications as an expert include valuation. In fact, Mr. Zoltowski did not provide any meaningful discussion of the overall methodology that he applied to his calculations.

126. Mr. Zoltowski did not attempt to study the alternative products of Blaze Advisor. In fact, he does not even identify any other competitors. I further note that Mr. Zoltowski does not perform any analysis of whether any third-party product would provide suitable substitutes, including being a better technical fit on an overall basis, or what would need to be done to provide the same or similar functionality that Mr. Zoltowski believes to be so important. As I discussed in **Section 3.1**, FICO was by no means the only competitor that offered a rules-based engine.



---

[175] Litigation Services Handbook: The Role of the Financial Expert, Fourth Edition 2007, p. 13.8-13.25.
[176] Robert F. Reilly and Robert P. Schweihs, *Valuing Intangible Assets,* McGraw-Hill 1999, p. 326-328.
Litigation Services Handbook: The Role of the Financial Expert, Fourth Edition 2007, p. 20.88-20.19.
[177] Interview of Mr. Iannuzzi.
[178] Interview of Mr. Iannuzzi.
[179]

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*



130. There are other alternatives that are informative of value that were disregarded by Mr. Zoltowski.  In his report, Mr. Zoltowski did not even investigate or consider this issue at all. As a result, Mr. Zoltowski cannot provide any assurance that his calculations are sufficiently tied to (*i.e.,* have a nexus to) any "actual damages" that are "suffered… as a result of the infringement."[184]



[180] Interview of Mr. Iannuzzi.
[181] Interview of Mr. Iannuzzi.
[182]

[183]   This also helps show that Mr. Zoltowski's calculations are not actual damages that are "suffered… as a result of the infringement." 17 U.S.C. §504(b).
[184] 17 U.S.C. §504(b).

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

131. Mr. McCarter also told me that Federal could have implemented the following alternatives at or leading up to the time it was alleged of infringement:[185]

- *Manual Decisions*.  I understand from Mr. McCarter that Federal could have manually looked up information in underwriting manuals to make the determinations.[186]  Mr. McCarter explained that the manual process would not have been as efficient as Blaze Advisor, but it would have been an alternative to paying the overstated license fee calculated by Mr. Zoltowski.[187]

- *Hard Coding*.  I understand from Mr. McCarter that Federal could have implemented what they did prior to using Blaze Advisor, which was hard coding rules into the applications.[188]  According to Mr. McCarter, hardcoding would not have been as efficient as Blaze Advisor, but it would have been an alternative to paying the license fee calculated by Mr. Zoltowski.[189]

- *Other Products*.  I understand from Mr. McCarter that Federal could have implemented an alternative rules-based software from one of FICO's competitors such as IBM, Oracle or CA Technology.[190]  Mr. McCarter explained that these alternative products would have been commercially and technically acceptable at the time of the alleged infringement.[191]  In early 2006, Federal was considering taking a license to IBM's ODM software because ACE already had the application.[192]  According to Tamra Pawloski, Federal's Former Vice President of Vendor Management Hardware and Software, Federal "had multiple discussions with IBM."[193]

---

[185] I note that just because an alternative or substitute has not been implemented, it does not mean that option is not feasible or not acceptable.  Licensees or alleged infringers do not simply switch to an existing alternative or develop new available alternatives each and every time they are accused of infringement.  To do so any time there is disagreement about permissible use would be unreasonable and disruptive.  The decision not to switch to an alternative is not, by itself, evidence that such a switch was not possible or would not have occurred.

[186] Interview of Mr. McCarter.

[187] Interview of Mr. McCarter.

[188] Interview of Mr. McCarter.

[189] Interview of Mr. McCarter.

[190] Interview of Mr. McCarter; Global Business Rules Management System (BRMS) Market Forecasts & Opportunities (2014-2024), TechSciResearch, p. 122.

[191] Interview of Mr. McCarter; Global Business Rules Management System (BRMS) Market Forecasts & Opportunities (2014-2024), TechSciResearch, p. 122.

[192] Deposition of Tamra Pawloski, January 18, 2019, p. 211; FED001150_0001; FED001151_0001-002.

[193] Deposition of Tamra Pawloski, January 18, 2019, p. 211; FED001150_0001; FED001151_0001-002.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

132. Mr. McCarter told me that each of these alternatives would provide the same or essentially similar functionality as Blaze Advisor.[194]  Mr. McCarter also told me that each of these alternatives were available at or leading up to the time it was alleged of infringement.[195]

133. By not considering Federal's next-best alternatives to Blaze Advisor, or considering the incremental impact over substitute products, Mr. Zoltowski could not have measured the "value" of Blaze Advisor.  Nevertheless, this is what Mr. Zoltowski claims to have done.  This results in Mr. Zoltowski measuring more than the value, if any, of Blaze Advisor, and reaching a "lost licensing fee" measure that is significantly overstated.

134. Moreover, Mr. Zoltowski is assuming that FICO would have negotiated a license with Federal at whatever value FICO requested, without any discounts.  But this does not consider that there is a competitive market with substitute products that are available, and that significant discounting is ordinary as reflected not only in these past negotiations but other negotiations, too (*see* discussion provided in **Section 3.5**).  This is further evidence that Mr. Zoltowski's analysis yields results that are commercially unreasonable and inflated conclusions, including the ▮▮▮▮▮▮▮▮▮▮▮ in discounts.[196]

*Mr. Zoltowski's Analysis Is Also Commercially Unrealistic In That He Calculated A Named Application License Instead Of An Enterprise License*

135. As I discussed in detail in **Section 3.5**, FICO's 2006 amended license agreement and 2016 negotiations with Federal were in the form of an ELA that included discounts.  Mr. Kursh told me that ELAs are common in the software industry.[197]  The reason why is that companies want to have the freedom to operate and grow their businesses, without concern that they would have to go back and renegotiate all of their software licenses after the fact.[198]  This is

---

[194] Interview of Mr. McCarter.
[195] Interview of Mr. McCarter.
[196] FED004635_0001; FED004636_0001; FED000352_0001-002; FED000353_0001; ORCL_FICO00000051; FICO0060402-404; FICO0060423-426; FICO0057386-412; Deposition of William Waid, January 16, 2019, p. 66-67, 134-136.
[197] Interview of Mr. Kursh.
[198] Interview of Mr. Kursh.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

financially and economically reasonable, too.  It is disadvantageous and unreasonable to assume that companies would routinely subject themselves to a form of economic hold up, where it would have to go back and ask permission to extend licenses without any other options. [199]

136.  Mr. Zoltowski disregarded these business realities.  Instead, he calculated a separate license fee for each of the accused named applications.  So instead of calculating one enterprise license fee (that included discounts), Mr. Zoltowski decided to calculate a separate license fee for each the ten U.S. and seven foreign accused applications (without a discount).  I will explain in more detail below, Mr. Zoltowski's assumption in this regard is commercially unrealistic and results in inflated conclusions.

137.  In this way, Mr. Zoltowski's calculations are not a function of the value of Blaze, or reflective of what a reasonable outcome of a negotiation would be.  In terms of damages, this shows why Mr. Zoltowski's calculations are not actual damages that are "suffered… as a result of the infringement." [200]   Mr. Zoltowski also did not justify his inherent assumption that Federal's merger increased the number of times Blaze Advisor was used and therefore would require Federal to license each application individually.

138.  In short, Mr. Zoltowski did not cite to any evidence or documentation to support his theory, which amounts to a license fee based on named applications.  Mr. Zoltowski disregarded Mr. Waid's declaration in this matter stating FICO has never entered into the type of named application license that Mr. Zoltowski is proposing.  Mr. Waid stated the following in his declaration:[201]

> *To my knowledge, a FICO licensee has never entered into a license agreement for the use of Blaze Advisor® software on an application basis with fifteen separate application.*

---

[199] Oliver Hart and John Moore, "Incomplete Contracts and Renegotiation," Econometrica, July 1988.
[200] 17 U.S.C. §504(b).
[201] Declaration of William Waid In Support Of Fair Isaac Corporation's Opposition to Federal Insurance Company's Motion to Compel, p. 5.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

139. I understand that ELAs are effectively agreements to license the entire population of a company accessing a software for a specified period of time for a specified value.[202]  Again, this provides the licensee with the freedom to operate.[203]  This is attainable due to industry practices, and also the existence of substitute products provided into a competitive environment.[204]  This is further shown by the facts that licensors are motivated to provide a discount on the price of the software relative to the traditional pricing.[205]

140. Mr. Kursh told me that based on his experience in the software licensing industry, he is not aware of any licensee that would be willing to enter into the named application type of agreement Mr. Zoltowski is proposing.[206]  Mr. Zoltowski did not point out any examples of other licensees engaging in this type of licensing arrangement.  Mr. Kursh also explained to me that in his experience, FICO and Federal would continue with the ELA type of agreement that was in place in 2006 and discussed in the 2016 negotiations.[207]

141. Mr. Zoltowski also disregarded FICO's license agreements and negotiations with both Oracle and Dell which were all in the form of an ELA.  I discussed these negotiations in detail in **Section 3.5**.  These negotiations provide further context for my above observations, and illustrate why MR. Zoltowski's calculations are not attributable to the infringement.

*Mr. Zoltowski Analysis Is Overstated Because He Did Not Factor In Normal Industry Practices Of Discounted Pricing*

142. Mr. Zoltowski relied upon FICO's category pricing matrix to calculate lost perpetual and annual licensing fees for each of the named applications.[208]  Mr. Zoltowski identified no evidence that FICO achieved the rates contained in the category pricing matrix.  In fact,

---

[202] Interview of Mr. Kursh.
[203] Interview of Mr. Kursh.
[204] Interview of Mr. Kursh.
[205] Interview of Mr. Kursh.
[206] Interview of Mr. Kursh.
[207] Interview of Mr. Kursh
[208] FICO0000830.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

FICO's licenses (discussed in **Section 3.5** and summarized in **Exhibits 12.0** and **12.1**) demonstrate that it achieved much lower rates than shown in the matrix pricing sheet.

143. Mr. Zoltowski disregarded every one of FICO's actual licenses as well as the associated licensing evidence that I discussed above—not even considering this evidence as tests of reasonableness.  As a result, Mr. Mr. Zoltowski failed to consider the discounts that normally apply in software licenses.

144. It is true that Mr. Zoltowski stated that "the process by which FICO prices Blaze Advisor licenses had not changed since November 2003."[209]  But FICO's 2003 global price lists show FICO's standard pricing discounts ranging from ▮▮▮▮▮▮▮▮▮▮▮▮.[210]  Mr. Zoltowski's review of this information is incomplete because he disregarded discounts.

145. During FICO's 2016 negotiations with Federal, FICO proposed discounts ranging up to 60 percent.[211]  I discuss these negotiations in detail in **Section 3.5**.  During FICO's negotiations with Oracle, FICO offered Oracle a ▮▮▮▮▮▮▮▮▮, to which Oracle countered with a ▮▮▮▮▮▮▮▮▮ stating that it usually ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ software for a three-year period.[212]  FICO and Dell also discussed discounted license fees during the negotiations.[213]  Mr. Zoltowski disregarded this evidence, too.

146. Mr. Zoltowski also disregarded the following testimony of Mr. Waid related to FICO's policy on discounts:

   - Mr. Waid testified that it is standard licensing practice to ▮▮▮▮▮▮▮▮ discount to a licensee for an upfront ELA and[214] to provide credits for previous purchases against a stated dollar amount.[215]

---

[209] Zoltowski Report, p. 36.
[210] FICO0057386-412, at 388-389; Deposition of William Waid, January 16, 2019, p. 105-107.
[211] Deposition of William Waid, January 16, 2019, pp. 67, 98 and Exhibit 266.
[212] Deposition of William Waid, January 16, 2019, p. 182; ORCL_FICO00000051.
[213] FICO0060434-436.
[214] Deposition of William Waid, January 16, 2019, p. 134-135.
[215] Deposition of William Waid, January 16, 2019, p. 135.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

- Mr. Waid also testified that with respect to named application licenses, FICO offers ████████████████████████████ based on the price point of the license purchased.[216]



147. Mr. Zoltowski calculated that the lost maintenance fee ████████████████████ fees.[221] Mr. Zoltowski's calculation of lost maintenance and support fees is also overstated since ██████████████████████████████████████

148. Moreover, most all of the Blaze Advisor agreements I reviewed had a license fee that ranged from ████████████████ (*see* **Exhibit 12.0**). Mr. Zoltowski disregarded this evidence, too.

149. In short, the lack of standard discounting is yet another reason why Mr. Zoltowski's estimates are overstated. Including discounts reduces his "value" estimates ████████████████ ██████████████

---

[216] Deposition of William Waid, January 16, 2019, p. 135-136.
[217] Deposition of William Waid, April 2, 2019, p. 25.
[218] Deposition of William Waid, January 16, 2019, p. 136.
[219] Deposition of William Waid, January 16, 2019, p. 66-67.
[220] Deposition of William Waid, January 16, 2019, p. 67.
[221] Zoltowski Schedule 6.0 and 7.0.
[222] FED004635_0001; FED004636_0001; FED000352_0001-002; FED000353_0001; ORCL_FICO00000051; FICO0060402-404; FICO0060423-426; FICO0057386-412; Deposition of William Waid, January 16, 2019, p. 66-67, 134-136.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

*Mr. Zoltowski's Analysis Is Overstated Because He Includes Applications That Do Not Use Blaze Advisor*

150. Mr. Zoltowski attempted to quantify a lost licensee fee for applications that use Blaze Advisor. Mr. Zoltowski's analysis is overstated because he included Federal's applications that do not purport to use Blaze Advisor. Mr. Zoltowski disregarded documents and testimony explaining that the following applications do not use Blaze Advisor:[223]

**Summary Of Federal's Applications Included In
Mr. Zoltowski's Lost Software Licensing Fee Calculation**

| Applications Included<br>By Mr. Zoltowski | "X" Indicates<br>Applications That<br>Do Not Use<br>Blaze Advisor |
|---|:---:|
| **U.S. Applications:** | |
| CSI eXPRESS | -- |
| Automated Renewals Process ("ARP") | -- |
| Profitability Indicator | -- |
| Decision Point | -- |
| Commercial Underwriting Workstation ("CUW") | -- |
| Premium Booking | -- |
| Texas Accident Prevention System ("TAPS") | -- |
| Individual Rate Modification Application ("IRMA") | -- |
| CIS Claims | X[224] |
| Cornerstone | X[225] |
| **Foreign Applications:** | |
| ADAPT (Australia) | -- |
| ADAPT (U.K.) | X[226] |
| Evolution (Australia) | X[227] |
| Evolution (Canada) | -- |

---

[223] Zoltowski Report, Exhibits 4.0 and 5.0.

[224] Deposition of Kevin Harkin, March 25, 2019, p. 31; Deposition of Ramesh Pandey, November 13, 2018, pp. 22, 27.

[225] Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory 16 and Sixth Supplemental Answer to Plaintiff's Interrogatory No. 17, March 21, 2019, p. 9; Deposition of Kevin Harkin, March 25, 2019, p. 32.

[226] There is no indication that ADAPT is used in the U.K. *See* Deposition of Kevin Harkin, March 25, 2019, Exhibit 406 (FED017912_0001) and Exhibit 408; Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory 16 and Sixth Supplemental Answer to Plaintiff's Interrogatory No. 17, March 21, 2019; Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No. 19, March 2, 2019; Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No. 20, March 21, 2019; Federal Insurance Company's Sixth Supplemental Answer to Plaintiff's Interrogatory No. 18, March 21, 2019.

[227] Blaze Advisor was replaced with IBM Operational Decision Management before Blaze Advisor went live in Australia. See Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No. 20, March 21, 2019, p. 3-4; Deposition of Kevin Harkin, March 25, 2019, p. 31.

CONFIDENTIAL
ATTORNEY'S EYES ONLY

| Applications Included By Mr. Zoltowski | "X" Indicates Applications That Do Not Use Blaze Advisor |
|---|---|
| EZER (U.K. and Europe) | -- |
| Exari (U.K.) | X[228] |
| Broker Site (Canada) | X[229] |

151.   There is no basis for Mr. Zoltowski to include applications if they do not use Blaze Advisor. Removing the applications that do not use Blaze Advisor from Mr. Zoltowski's lost software licensing fees calculations reduces Mr. Zoltowski's U.S. quantification by 19 percent and foreign quantification by 44 percent (*see* **Exhibits 1.0** and **1.1**).

*Mr. Zoltowski Did Not Explain What Parameters Were Used To Quantify His Size Classifications*

152.   
[232].

153.   Mr. Zoltowski then used the size classification to try to estimate how many seats he thought would be, in his view, "needed" for each of Federal's accused applications.[233]

---

[228] Federal Insurance Company's Sixth Supplemental Answer to Plaintiff's Interrogatory No. 18, March 21, 2019, p. 4; Deposition of Kevin Harkin, March 25, 2019, p. 32-33.
[229] Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No. 19, March 2, 2019, p. 3; Deposition of Kevin Harkin, March 25, 2019, p. 206-207.
[230] Zoltowski's Report, Schedules 6.1 and 7.1; FICO0000830.
[231] FICO0000830.
[232] Declaration of William Waid In Support of Fair Isaacs Corporation's Opposition to Federal Insurance Company's Motion to Compel.
[233] Zoltowski's Report, Schedules 6.1 and 7.1; FICO0000830.

CONFIDENTIAL
ATTORNEY'S EYES ONLY

154. Mr. Zoltowski did not explain in any detail what parameters Mr. Waid used to classify the size of the applications as "small, medium, large or very large."[234]  I understand that FICO (specifically Mr. Waid) has been inconsistent in explaining how this size classification is determined. [235]   Examples of FICO's inconsistencies between what Mr. Waid told Mr. Zoltowski and what Mr. Waid included in his February 8, 2018 declaration are as follows:

**Inconsistencies In Mr. Waid's**
**Classification Of Accused Application Size**

| Applications Included By Mr. Zoltowski | What Mr. Waid Told Mr. Zoltowski[236] | What Mr. Waid Stated In His Feb. 2018 Declaration[237] | X= Inconsistent[238] |
|---|---|---|---|
| **U.S. Applications:** | | | |
| CSI eXPRESS | | | |
| Automated Renewals Process ("ARP") | | | |
| Profitability Indicator | | | |
| Decision Point | | | |
| Commercial Underwriting Workstation ("CUW") | | | |
| Premium Booking | | | |
| Texas Accident Prevention System ("TAPS") | | | |
| Individual Rate Modification Application ("IRMA") | | | |
| CIS Claims | | | |
| Cornerstone | | | |
| | | | |
| **Foreign Applications:** | | | |
| ADAPT (Australia) | | | |
| ADAPT (U.K.) | | | |
| Evolution (Australia) | | | |
| Evolution (Canada) | | | |
| EZER (U.K. and Europe) | | | |
| Exari (U.K.) | | | |
| Broker Site (Canada) | | | |

---

[234] Interview of Mr. Kursh.
[235] Interview of Mr. Kursh.
[236] Expert Report of Neil Zoltowski, April 19, 2019, p. 40.
[237] Declaration of William Waid in Support of Fair Isaac Corporation's Opposition to Federal Insurance Company's Motion to Compel, February 5, 2018, p. 2 and 4; FICO0000830.
[238] Interview of Mr. Kursh.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

155. Mr. Kursh told me that based on his licensing experience, Federal's accused applications that actually use Blaze Advisor should be classified as small, except for CUW which should be classified as medium.[239]

156. Adjusting Mr. Zoltowski's lost software licensing fees calculations for Mr. Kursh's corrected classification reduces Mr. Zoltowski's U.S. quantification by 54 percent and his foreign quantification by 67 percent (*see* **Exhibits 2.0** and **2.1**). I have also performed a calculation that adjusts for Federal's accused applications that do not use Blaze Advisor and also adjusts for Mr. Kursh's size classification. After making these adjustments, Mr. Zoltowski's U.S. quantification decreased by 61 percent and his foreign quantification decreased by 82 percent (*see* **Exhibits 3.0** and **3.1**).

### *4.3   Mr. Zoltowski's Calculation Of Profits From Using And Distributing Blaze Advisor Is Incomplete And Contains Errors*

<u>*Summary Of Mr. Zoltowski's "Disgorgement" Calculation*</u>

157. Mr. Zoltowski opines that Federal's "use of Blaze Advisor contributes to the generation of gross written premiums."[240] According to Mr. Zoltowski, "consequently, FICO may be entitled to disgorge [Federal's] profits from written premiums generated using Blaze Advisor."[241] Although Mr. Zoltowski says "consequently," he has no real financial or economic analysis to make this connection (*i.e.,* he has shown no nexus).

158. As I will explain in more detail below, Mr. Zoltowski's failure to specify a causal link, or the lack of financial and economic nexus, renders Mr. Zoltowski's "disgorgement" analysis financially unsound and causes his conclusions to be inflated relative to the facts of this case. I understand that any profits of the infringer must be "attributable to the infringement."[242] Mr. Zoltowski has not shown how this is so in his analysis.

---

[239] Interview of Mr. Kursh.
[240] Zoltowski Report, p. 43.
[241] Zoltowski Report, p. 43.
[242] 17 U.S.C. §504(b).

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

159. Mr. Zoltowski opines that FICO may be entitled to disgorge the profits from $30.9 billion of Federal's gross written premiums.[243]  Mr. Zoltowski segments his calculations by geography, categorizing into domestic and foreign.  For domestic gross written premiums, Mr. Zoltowski calculates the associated gross written premiums generated by certain entities that used Blaze Advisor in the United States between March 31, 2016 and March 2019 to be $28.4 billion.[244] For foreign gross written premiums, Mr. Zoltowski quantifies Federal's gross written premiums "generated by certain foreign entities that used Blaze Advisor in Canada, Australia, the United Kingdom and certain other European countries between April 2013 and March 2019"[245] to be $2.5 billion.[246]

160. In calculating the gross written premiums Mr. Zoltowski relies on Federal's disclosure of gross written premiums "of each company from all insurance policies in connection with which Blaze Advisor was used."[247]   Mr. Zoltowski's calculation comprises a simple aggregation of Federal's total gross written premiums (revenue) for business segments and lines of business which may have used, at least according to him, Blaze Advisor applications. But Mr. Zoltowski does not substantiate his calculations insofar as they relate to the specific claims of this case and any identified intangible value.

161. From a financial perspective, Mr. Zoltowski's calculations are analytically deficient in at least five ways: (i) Mr. Zoltowski does not establish an economic nexus between any profits Federal received and the alleged infringement; (ii) Mr. Zoltowski does not differentiate between revenue attributable to the alleged wrongdoings and revenue attributable to other factors unrelated to the alleged infringement; (iii) Mr. Zoltowski includes gross written premiums from applications that did not use Blaze Advisor; (iv) Mr. Zoltowski's methodology is flawed and overstates Federal's gross written premiums; and (v) Mr.

---

[243] Zoltowski Report, p. 39.
[244] Zoltowski Report, p. 43.
[245] Zoltowski Report, p. 39.
[246] Zoltowski Report, p. 39.
[247] Zoltowski Report, p. 42.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

Zoltowski makes no attempt to deduct any of the costs incurred to realize the gross written premiums.

162. As I discuss below, Mr. Zoltowski's calculations are subject to a number of conceptual shortcomings and are substantially incomplete.  This leads to Mr. Zoltowski using a financially irrelevant, inflated and unreasonable starting point for his damages analysis, and compounded with his lack of cost analysis, arriving at a conclusion that is errant, too.

*Mr. Zoltowski Does Not Establish an Economic Nexus Between Any Profits Federal Received And the Alleged Infringement*

163. Mr. Zoltowski does not reliably establish an economic nexus between any profits Federal received and the alleged infringement.  By not establishing any such economic nexus or causal link, Mr. Zoltowski has not provided a reliable financial analysis of Federal's profits attributable to its alleged wrongdoings.

164. The evidence indicates that Federal received little, if any, value specifically attributable to its use of Blaze Advisor.  I discussed in **Section 3.3**, that Blaze is a relatively small piece of Federal's claims process.  Mr. Zoltowski provided no sound methodology to calculate the fraction of revenues or profits attributable to Blaze, and instead offers figures that are clearly overinclusive.  From an economic perspective, a remedy based upon the disgorgement of Federal's profits would be unrelated to, and significantly exceed, the potential value (if any) received by Federal from the alleged infringement and would result in an economic windfall to FICO.

165. Illustrating this, between March 31, 2016 and March 31, 2019, FICO generated total revenue of $2.975 billion and net income of $415.7 million.[248]  Mr. Zoltowski's calculation of Federal's gross written premiums (revenue) of $30.9 billion is more than 10 times FICO's total revenue over a similar period, and over 70 times its net income.  Moreover, as I

---

[248] S&P Capital IQ.

explained above, the economic footprint of Blaze Advisor is much smaller.  As I discussed above, the contemporaneous economic evidence shows that there are available substitutes to Blaze Advisor.  Federal could reasonably discontinue the contracts for Blaze Advisor because it would have options to use other substitute solutions.

166.   At bottom, Mr. Zoltowski's calculations are financially irrelevant and would result in a financial windfall to FICO.  In the following sections, I provide more details regarding why this is.

*Mr. Zoltowski Disregarded Evidence That Most, If Not All, Of Federal's Gross Written Premiums Are Attributable To Factors Other Than the Alleged Wrongdoings*

167.   Mr. Zoltowski's calculations simply aggregate all gross written premiums (*i.e.,* revenue) for business units/segments which may have used Blaze Advisor applications on his alleged basis that "Defendants' use of Blaze Advisor *contributes* to the generation of gross written premiums."[249]  Again, Mr. Zoltowski performs no substantive analysis as to what these contributions are, what their true intrinsic value is, or how they have a nexus to the issues in this case.  To the extent that he claims these amounts are relevant from a financial, economic or valuation perspective, Mr. Zoltowski has provided no basis to do so.

168.   At the outset, Mr. Zoltowski significantly inflates his damages numbers by counting gross written premiums that apparently come from business entities that are not parties to this lawsuit.  Mr. Zoltowski justifies this method by claiming that these various entities are a "single economic unit."[250]  Mr. Zoltowski attempts to support this claim with references to consolidated financial statements, general accounting standards, contracts between these companies, and the benefits these companies derive from working together which is unsupported by the generalized sources he cites.[251]  These are ordinary business relationships and Mr. Zoltowski has provided no financial basis for effectively transforming these separate

---

[249] Zoltowski Report, p. 43. *Emphasis added*.
[250] Zoltowski Report, p. 10-11.
[251] Zoltowski Report, p. 10-11.

entities into one for the purposes of a damages assessment.  It is my understanding that FICO is only entitled to profits from the actual named defendants themselves, and Mr. Zoltowski has provided no financial basis for doing otherwise.  Here again, from a financial perspective, Mr. Zoltowski's claims are not to the evidence and would result in a windfall to FICO.

169.  In his calculations, Mr. Zoltowski just aggregates *all* gross written premiums.  Mr. Zoltowski appears to acknowledge that Blaze Advisor is one component that may *contribute* to the generation of gross written premiums;[252] however, he demonstrates no real attempt to use any type of reliable method to tie Federal's profits or revenue to the use of Blaze Advisor.

170.  Federal operates one of the world's largest international P&C insurance companies with operating roots dating back to 1792.[253]  As I discussed in **Section 3**, the evidence indicates that the large majority, if not all, of Federal's gross written premiums are attributable to factors unrelated to the use of Blaze Advisor applications and that fall outside the scope of any allegedly unlawful conduct in this matter.  And Mr. Zoltowski has not shown otherwise.  These factors include (but are not necessarily limited to), the know-how of its workforce, management abilities, brand recognition, existing customer relationships, pricing, and service quality, all of which are key drivers of Federal's gross written premiums.[254]

171.  Gross written premiums attributable to these other considerations should not be included in any estimate of Federal's profits if they are claimed to somehow be attributable to the alleged wrongdoing, or else there is a windfall to FICO.  In other words, FICO did not develop or take the requisite business risks or make the investments to develop the intangibles that I discussed above, and certainly Mr. Zoltowski has not shown this.  FICO should not benefit from economic activities associated with these other intangibles.

---

[252] Zoltowski Report, p. 42.
[253] Chubb website: Our History. (accessed https://www.chubb.com/us-en/about-chubb/who-we-are.aspx)
[254] Chubb Limited Form 10-K, for the year ended December 31, 2017, p. 3; Chubb Ltd., Argus Analyst Report, February 26, 2019, p.1.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

172. The P&C insurance industry is mature, and "the majority of P&C sales are associated with existing customers, so policy renewals dominate premiums for industry operators." [255] Industry sales are largely driven by strong recurring revenue and pre-existing customer relationships.  Mr. Zoltowski did not factor these considerations.  Mr. Zoltowski did not address the economic realities of the P&C insurance industry; he also did not recognize that existing customer relationships and the recurring nature of Federal's gross written premiums as being the primary driver of revenues, as opposed to any alleged wrongdoings.

173. This is all problematic because Mr. Zoltowski simply took Federal's total gross written premiums from business lines/segments which may have used Blaze Advisor, regardless of whether those gross written premiums were attributable to any alleged infringement. Mr. Zoltowski did not employ any financial or economic methodology to demonstrate a connection between these revenue numbers and Federal's use of Blaze Advisor, other than basic addition that requires little, if any, of his financial and valuation expertise.

174. In short, Mr. Zoltowski has not identified or accounted for those gross written premiums that are unrelated to the allegations in this case, or are driven by considerations that are separate and apart from any alleged wrongdoings. He has not identified any incremental financial benefits (*e.g.* incremental gross written premiums) realized by Federal on account of the alleged infringement.

*Mr. Zoltowski Includes Gross Written Premiums From Applications That Did Not Use Blaze Advisor*

175. Mr. Zoltowski's calculation of Federal's gross written premiums is overstated as it includes gross written premiums associated with a number of applications that do not use Blaze Advisor.  I discussed in **Section 4.2** that the following applications do not use Blaze Advisor: CIS Claims, Cornerstone, ADAPT (U.K.), Evolution (Australia), Exari (U.K) and Broker Site (Canada).[256]

---

[255] IBISWorld Industry Report 52412 Property, Casualty and Direct Insurance in the US, December 2018, p. 7.
[256] Mr. Zoltowski assumes that gross written premiums processed through Broker Site are already included in

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

176. As a result of his inclusion of non-Blaze Advisor related applications, Mr. Zoltowski's calculation (setting aside the issues of nexus discussed above) overstates Federal's total gross written premiums by approximately $1.0 billion (or three percent) (*see* **Exhibit 5**).

*Mr. Zoltowski's Calculation Methodology Is Flawed and Overstates Federal's Gross Written Premiums*

177. In calculating Federal's gross written premiums related to the alleged infringement, Mr. Zoltowski simply aggregates the disclosed "gross written premiums of each company from all insurance policies in connection with which Blaze Advisor was used."[257]  Put simply, Mr. Zoltowski just adds up all gross written premiums for each company and for each Blaze Advisor application.  He does no substantive analysis of causation "attributable to" the alleged infringement, nor does he meaningfully analyze the financial attributes of the amounts that he tallied.

178. To the extent Mr. Zoltowski has a methodology, it implicitly assumes that the gross written premiums reported for each company and Blaze Advisor application are mutually exclusive and distinct.  As the evidence shows, and as I will explain in more detail below, Mr. Zoltowski's inherent assumption is incorrect.  As a result, Mr. Zoltowski's methodology is fundamentally flawed and results in an inflated gross written premium amount.

179. I understand that a single insurance policy (and by extension the associated gross written premium) may feed through more than one Blaze Advisor application.  The data which Mr. Zoltowski has relied upon captures all of the policies (and associated gross written premiums) which ran through each of the applications, regardless of whether a policy had already been accounted for under another application.  For example, if a single policy with $100 of gross

---

the database of gross written premiums that pass through Evolution. Zoltowski Report, Schedule 8.0 and 9.0. Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No. 19, March 2, 2019, p. 3; Deposition of Kevin Harkin, March 25, 2019, pp. 206-207.
[257] Zoltowski Report, p. 42.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

written premiums ran through both the CUW and CSI eXPRESS applications, its associated gross written premiums would appear twice in Mr. Zoltowski's analysis, and he would conclude that Blaze Advisor contributed $200 of gross written premiums. As a result, by simply aggregating the gross written premiums, Mr. Zoltowski may double or triple (or more) count certain gross written premiums, leading to an inflated and inaccurate total gross written premium amount.

180. One way that the magnitude of the overstatement contained in Mr. Zoltowski's calculations can be illustrated is by comparing Mr. Zoltowski's figures to the total (actual) gross written premiums reported on Federal's business segments and lines of business financial statements over the same time period:

**Comparison of Gross Written Premiums Between Federal's Business Segment/Line of Business Financials and Mr. Zoltowski**
*(in US$ millions)*

|  | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|---|
| Business Segment/Line of Busines Financials [1] | $ 167 | $ 223 | $ 332 | $ 7,016 | $ 6,910 | $ 6,353 |
| Mr. Zoltowski | $ 203 | $ 283 | $ 569 | $10,775 | $11,542 | $ 8,992 |
| *% Greater than Business Segment/Line of Business Financials* | *22%* | *27%* | *71%* | *54%* | *67%* | *42%* |

**Note:**
[1] The UK financials were only for the years 2016 to 2018. The 2013 to 2015 figures reflect the Europe gross written premiums from Mr. Zoltowski's analysis for illustrative purposes.

181. As this shows, Mr. Zoltowski's calculated gross written premiums exceed Federal's *total* reported gross written premiums in Federal's business segments and lines of business profit and loss statements over the same period(s), a conclusion that is not justifiable or reasonable. The profit and loss statements for the business segments and lines of business include all of the gross written premiums earned by the company, including policies connected to Blaze Advisor, as well as policies that did not use Blaze Advisor. By definition, the gross written premiums reported in the business segments and line of business profit and loss statements should be greater than the gross written premiums relied upon by Mr. Zoltowski. But they

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

are not.   And nowhere in his report does Mr. Zoltowski perform any such tests of reasonableness.

182. Federal also prepared the revised gross written premiums for CUW (a domestic application), an inventory management tool that is often used in conjunction with other applications when writing a single insurance policy.[258]  In this revised data, removed are any policies which ran through both CUW and another application, specifically CSI eXPRESS or Premium Booking and the resulting data shows policies that only ran through the CUW application.  The policies (and associated gross written premiums) which ran through both CUW and CSI eXPRESS or Premium Booking would have also been captured in the gross written premiums data relied upon by Mr. Zoltowski for CSI eXPRESS or Premium Booking applications (as discussed in the example above).  Using this revised CUW data effectively removes the duplication of certain gross written premiums in the CUW data used by Mr. Zoltowski.  For example, in Mr. Zoltowski's analysis, the premiums associated with any single policy which touched each of CUW, CSI eXPRESS and Premium Booking would be counted three times in the total gross written premiums.

183. When comparing this revised data to the data used by Mr. Zoltowski, the overstatement of gross written premiums is further illustrated:[259]

**Comparison of the Gross Written Premiums for the CUW Application Between Federal's Revised CUW Data and the Data Used by Mr. Zoltowski**
*(in US$ millions)*

|  | 2016 | 2017 | 2018 |
|---|---|---|---|
| Revised CUW Data | $  3,819 | $  2,526 | $  2,149 |
| Mr. Zoltowski | $  7,579 | $  8,533 | $  6,201 |
| *% Greater than the Revised CUW Data* | *98%* | *238%* | *189%* |

---

[258] File titled: "Blaze IM Extract-Final".
[259] I understand that the premiums from IRMA and TAPS would likely already be included in CUW premiums so the domestic premium are likely still overstated.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

184. The above table shows that the CUW gross written premiums relied upon by Mr. Zoltowski, are greater than the gross written premiums per the revised data prepared by Federal.  Again, the CUW gross written premium data relied upon by Mr. Zoltowski included policies (and associated gross written premiums) that were captured multiple times in the data for other applications such as CSI eXPRESS and Premium Bookings.[260]  I understand that the revised CUW data eliminates any policies that also ran through CSI eXPRESS and Premium Bookings.[261]  This prevents double counting when the totals for each application are added together.

### *Mr. Zoltowski Does Not Deduct Any of Federal's Costs That Were Incurred To Earn the Gross Written Premiums*

185. Mr. Zoltowski states that it is his understanding that "the copyright owner is required to present proof of only the infringer's gross revenue."[262]  According to Mr. Zoltowski, "as a result, the damages presented related to copyright infringement damages reflect the dollar amounts associated with the gross written premiums through Federal's allegedly infringing use of Blaze Advisor."[263]  On only this basis, Mr. Zoltowski calculates his estimate of total gross revenue as represented by gross written premiums only.

186. However, Mr. Zoltowski performed no analysis to determine if any of the revenues he captured had any link (*i.e.*, nexus) to the allegations of this case, or to the value provided by the accused software.  I explained at length above why this is problematic.  Moreover, compounding his error of having a lack of nexus, Mr. Zoltowski provided no consideration of the costs and expenses that are necessary for Federal to earn such revenue.

187. Instead of engaging in financial analysis, or investigating issues that relate to value (as he claimed he did), Mr. Zoltowski's simply aggregated Federal's gross written premium (*i.e.,*

---

[260] Interview of Mr. McCarthy.
[261] Interview of Mr. McCarthy.
[262] Zoltowski Report, p. 43.
[263] Zoltowski Report, p. 43.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

gross revenue).  Mr. Zoltowski did not perform any meaningful financial or economic analysis of these revenues.  Exacerbating this issue, he made no attempt to identify the costs Federal incurred to earn such revenue, or the corresponding profit generated from such revenue.  Without studying the economic attributes of what it took to generate the revenues that he identified as relevant, including their requisite costs, Mr. Zoltowski's work is incomplete, and does not provide any relevant measure of value, at least from a financial perspective.[264]

188.   Federal does not track or report financial information by software application in the normal course of business.[265]  I understand that Federal is unable to generate financial reports that report profit and loss information for insurance products that use Blaze Advisor.[266]  This is not unusual at all, because these products are just one of many products and intangibles that are used to run the business.  The lack of such information only helps illustrate why putting a revenue number in place like Mr. Zoltowski has, without further analysis, is not a meaningful measure of financial value.

189.   However, for purposes of this dispute, Federal prepared profit and loss statements for each of the relevant business segments and lines of business that may have used the Blaze Advisor application.[267]  These profit and loss statements reflect an overinclusive (*i.e.,* conservative) approximation of profit and loss for Blaze Advisor related lines of business. [268]

190.   I summarize the business segments and lines of business for which Federal prepared a profit and loss statement (*see* **Exhibit 11**).[269]  The information contained in the business segment

---

[264] Of course, there are significant costs required to support Federal's gross written premiums.  Mr. Zoltowski made no effort to account for these.  In addition to the issue of nexus, by not considering costs and expenses, Mr. Zoltowski does not utilize his financial and valuation expert skillset which shows that he has not studied the economic attributes of the revenues that he erroneously identifies as relevant.
[265] Deposition of Kevin Harkin, March 25, 2019, p. 123-124.
[266] Deposition of Kevin Harkin, March 25, 2019, p. 123-124.
[267] Deposition of Kevin Harkin, March 25, 2019, p. 124.
[268] Deposition of Kevin Harkin, March 25, 2019, p. 119, 123-124.
[269] Deposition of Kevin Harkin, March 25, 2019, p. 126-141.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

and line of business profit and loss statements is pulled from various sources. The process involved in pulling the data varies by line of business and geography, as described below:

- *Chubb Specialty Insurance ("CSI")*. 2016 data was pulled from the legacy general ledger by line of business. The data was then filtered to include only the US and Canada business.[270] 2017 and 2018 was pulled from the general ledger based on unique identifiers for each line of business.[271]

- *Chubb Commercial Insurance ("CCI")*. Federal used the same process as for CSI.

- *Chubb Canada Personal Lines*. The data was gathered from the legacy general ledger system using the unique identifiers for the selected personal lines of business in Canada.[272]

- *Australia ADAPT*. The data represents a pro-forma analysis prepared by Federal to estimate the underwriting income from 2007 to 2019 for accident and health insurance policies that processed through the ADAPT application and used Blaze Advisor.[273] The information used to prepare the pro-forma analysis was pulled from the Prism system, a policy registration system.[274]

- *Chubb European Group*. Financial data represents an attempt by Chubb European Group's CFO (Paul Johnston) to estimate the profit and loss of the European business that ran through the EZER and/or ADAPT applications.[275] The approximation was prepared specifically for purposes of this litigation. The data is sourced from the legacy general ledger similar to CSI and CCI but filtered for Europe.[276]

191. The line of business profit and loss statements report the profitability of each line of business for the relevant time period. The profit and loss statements report both "gross" and "net" amounts. Gross amounts reflect total amounts before deductions for amounts ceded to

---

[270] Deposition of Kevin Harkin, March 25, 2019, p. 119-120.
[271] Deposition of Kevin Harkin, March 25, 2019, p. 122-123.
[272] Deposition of Kevin Harkin, March 25, 2019, p. 210-211.
[273] Deposition of Kevin Harkin, March 25, 2019, p. 194.
[274] Deposition of Kevin Harkin, March 25, 2019, p. 188 and 194.
[275] Deposition of Kevin Harkin, March 25, 2019, p. 164.
[276] Deposition of Kevin Harkin, March 25, 2019, p. 167.

CONFIDENTIAL
ATTORNEY'S EYES ONLY

reinsurers.[277]  Net amounts are reported after deducting reinsurance costs.[278]  The originating insurer's risk exposure and profitability is based on the net amount after deducting reinsurance, as the net amount reflects the revenue and cost retained by the originating insurer.  Federal's underwriting gain/loss reflects Federal's reported profit from its insurance underwriting activities after consideration of all costs incurred to generate such underwriting income.[279]

192.   The line of business profit and loss statements identify the following revenue and expense items:

**Summary Of the Types Of Revenue And Costs**
**Included In the Profit And Loss Statements**

| Line Item | Account Classification | Description |
|---|---|---|
| Written Premium | Revenue | The total revenue expected to be received from the sale of an insurance policy over the term of the policy. Reflects the price paid by the customer on a cash basis.[280] |
| Earned Premium | Revenue | The amount of insurance premium reported as earned for accounting purposes based on U.S. GAAP principles and accrual-based accounting.[281]   Customers typically pay premiums in advance, however for accounting purposes the premium is earned over the term of the insurance coverage. |
| Losses & LAE (Loss Adjustment Expenses) Incurred | Expense | The cost of insurance claims/losses and costs associated with claims handling (*e.g.*, legal fees).[282] |
| Commissions/Acquisition Costs | Expense | Policy level selling commissions and costs paid to insurance brokers and agents.[283]  Reflects a direct cost of sales of an insurance policy. |

---

[277] Deposition of Kevin Harkin, March 25, 2019, p. 136.
[278] Deposition of Kevin Harkin, March 25, 2019, p. 136. Reinsurance is a common insurance industry practice whereby an originating insurance company transfers a portion of its risk exposure to another insurer through a reinsurance agreement.  Investopedia (accessed https://www.investopedia.com/terms/r/reinsurance.asp).
[279] Interview of Mr. Harkin.
[280] Deposition of Kevin Harkin, March 25, 2019, p. 129.
[281] Deposition of Kevin Harkin, March 25, 2019, p. 129.
[282] Deposition of Kevin Harkin, March 25, 2019, p. 130.
[283] Deposition of Kevin Harkin, March 25, 2019, p. 132.

CONFIDENTIAL
ATTORNEY'S EYES ONLY

| Line Item | Account Classification | Description |
|---|---|---|
| G&A (Administrative) and TLF (Taxes, Licenses and Fees) | Expense | General and administrative expenses (*e.g.*, administrative salaries and benefits, IT costs, general office costs).[284] TLF expenses include state premium taxes, licensing fees and other fees.[285] |
| Expenses Incurred | Expense | Equal to the sum of commissions/acquisition costs, G&A and TLF expenses. |
| Dividends Incurred | Expense | Policy holder dividends which are specific to a small number of lines of business (*e.g.*,. surety).[286] |
| Underwriting Gain/Loss | Profit | The profitability of an insurance company's underwriting operations. Calculated as earned premium less losses & LAE expenses and expenses incurred.[287] |
| Combined Ratio | Ratio | A summary financial ratio of an insurance company's underwriting profitability. Calculated as losses and LAE expenses plus expenses and dividends incurred divided by earned premiums. |

193. I understand that in calculating profits, Federal is entitled to deduct the costs it incurs to generate revenue. With this understanding, I performed additional analyses of these costs. Setting aside the issue of nexus discussed above, I calculated Federal's profits following several steps, as I discuss below.

194. *First*, I calculated Federal's gross written premiums (gross revenue) associated with applications that used Blaze Advisor. I adjusted Mr. Zoltowski's analysis to exclude those applications discussed in **Section 4.2** that do not use Blaze Advisor (see above) and to exclude duplicative gross written premiums that were included in Mr. Zoltowski's analysis.

195. *Second*, I deducted Federal's reinsurance costs to determine Federal's net written premium, being the amount of premium retained by Federal. Based on the evidence produced in this matter, including my discussions with Mr. Harkin, reinsurance costs are variable costs that are directly related to the sale of insurance policies. Therefore, these costs are an appropriate

---

[284] Deposition of Kevin Harkin, March 25, 2019, p. 134.
[285] Deposition of Kevin Harkin, March 25, 2019, p. 57-58, 134.
[286] Deposition of Kevin Harkin, March 25, 2019, p. 144.
[287] Deposition of Kevin Harkin, March 25, 2019, p. 135.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

deduction in arriving at Federal's profits.  I estimated Federal's reinsurance costs based on Federal's actual reinsurance costs as reported in the profit and loss statements for the relevant business segments and lines of business.

196.  *Third*, I adjusted the net written premiums to reflect the amount of earned premiums.  The difference between written premium and earned premium is principally timing related and related to differences between cash (written) and accrual (earned) based accounting.  I adjusted the net written premiums to earned premiums based on the actual relationship between net written premiums and earned premiums as reflected in Federal's profit and loss statements for the relevant business segments and lines of business.

197.  *Fourth*, I deducted losses and LAE expenses incurred by Federal associated with the earned premiums.  Losses and LAE expenses are direct variable costs that directly relate to the earned insurance premiums.  Losses and LAE expenses reflect the direct cost of claims associated with the earned insurance premiums and are therefore an appropriate deduction. I estimated the losses and LAE expenses based on Federal's actual loss ratio as reported in the profit and loss statements for the relevant business segments and lines of business.  The loss ratio is a standard industry measure of losses as a percentage of earned premiums.  I adopted the following loss ratios (*see* also **Exhibits 8.0, 8.1, 8.2, 8.3** and **8.4**):

**Comparison of the Loss Ratios Between Business Segment/Line of Business Financials and Comparable Public Companies**

|  | For the Years Ending December 31, | | |
|---|---|---|---|
|  | **2016** | **2017** | **2018** |
| **Business Segment/Line of Business Financials** | 53% | 58% | 56% |
| **Comparable Public Companies [1]** |  |  |  |
| Low | 58% | 63% | 62% |
| **Median** | **61%** | **66%** | **64%** |
| High | 85% | 83% | 76% |
| **Average** | **66%** | **69%** | **66%** |

**Note:**
[1] Includes Chubb Limited; The Travelers Companies, Inc.; The Hanover Insurance Group, Inc.; American International Group, Inc.; and W.R. Berkley Corporation

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

198. As summarized in the above table, Federal's actual loss ratio is generally consistent, albeit lower, than the observed range in industry benchmark loss ratios and the loss ratios of comparable public companies.  Adopting Federal's actual loss ratio is conservative, meaning that if I adopted the higher loss ratios observed in industry benchmarks and comparable public companies, the losses would be higher and the underwriting profit would be smaller.

199. *Fifth,* I deducted commissions expenses incurred by Federal. Commissions expenses comprise the direct selling costs of the insurance policies and are therefore appropriately deducted as a direct variable cost.  I estimated Federal's commissions expenses attributable to the subject earned premiums based on Federal's actual reported commissions expenses as a percentage of earned premiums as reported in the profit and loss statements for the relevant business segments and lines of business.

200. *Sixth*, I deducted general and administrative expenses and taxes, licenses and fees incurred. These expenses represent expenses that are necessary for the operation of Federal's business and sale of insurance policies. General and administrative expenses include underwriter salaries and benefits, professional fees and advertising and marketing costs among other expenses. These costs are necessary to operate Federal's business and sell insurance policies (gross written premium). Taxes, licenses and fees are similarly necessary costs of operating as an insurance company. I understand that these costs cannot be attributed to specific insurance policies, but are allocated to the lines of business.[288]

201. I estimated Federal's general and administrative expenses and taxes, licenses and fees incurred based on Federal's actual reported expenses as a percentage of earned premiums as reported in the profit and loss statements for the relevant business segments and lines of business as follows (*see* also **Exhibits 8.0, 8.1, 8.2, 8.3** and **8.4**):

---

[288] Deposition of Kevin Harkin, March 25, 2019, p. 56-58.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

**Comparison of the Expense Ratios Between Business Segment/Line of Business Financials and Comparable Public Companies**

| | For the Years Ending December 31, | | |
| --- | --- | --- | --- |
| | **2016** | **2017** | **2018** |
| **Business Segment/Line of Business Financials** | 27% | 29% | 28% |
| **Comparable Public Companies [1]** | | | |
| Low | 30% | 29% | 29% |
| **Median** | **33%** | **33%** | **32%** |
| High | 34% | 34% | 36% |
| **Average** | **32%** | **32%** | **32%** |

<u>**Note:**</u>
[1] Includes Chubb Limited; The Travelers Companies, Inc.; The Hanover Insurance Group, Inc.; American International Group, Inc.; and W.R. Berkley Corporation

202.  As summarized in the foregoing table, Federal's actual expense ratio is generally consistent, albeit on the low end, of the observed range in industry benchmark expense ratios and the expense ratios of comparable public companies.[289]

203.  The following table summarizes Federal's underwriting profits from estimated gross written premiums that processed through Blaze Advisor applications and compares them to Mr. Zoltowski's estimate (*see* also **Exhibit 5**):

---

[289] Again, adopting Federal's actual expense ratio is conservative, meaning that I were to adopt the higher expense ratios observed in industry benchmarks and comparable public companies, the expenses would be higher and the underwriting profit would be smaller.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

**Comparison of the Profit and Loss Statements for Gross Written Premiums
Processed Through the Blaze Advisor Applications Between Mr. Zoltowski
and Federal Actual**
*(in US$ millions)*

| | Mr. Zoltowski's Estimate | Federal Actual |
|---|---|---|
| **Gross Written Premiums** | $ 30,876 | $ 16,189 |
| Net Written Premiums | | $ 14,688 |
| **Net Earned Premiums** | | $ 15,364 |
| Less: Losses | | $ (8,560) |
| *Loss Ratio* | *Was not estimated by Mr. Zoltowski* | *56%* |
| Less: Expenses (incl. commissions, G&A, taxes, dividends & other expenses) | | $ (4,348) |
| *Expense Ratio* | | *28%* |
| **Underwriting Profit** | | **$ 2,456** |
| *% of Net Earned Premiums* | | *16%* |
| *Combined Loss Ratio* | | *84%* |

204.  Federal's underwriting profit calculations show a combined ratio of 84%. This combined ratio is consistent with industry benchmarks and comparable public companies (*see* **Exhibit 10**).

205.  To recap, and absent establishing an economic nexus or causal link between any profits Federal received and the alleged infringement, a calculation of Federal's profits is inappropriate in these circumstances. As I discussed above, from a financial perspective my analysis is overinclusive relative to the claims in this case. By this I mean that it does not isolate gross written premiums and associated profits (if any) attributable to the alleged infringement, as opposed to other factors unrelated to any alleged infringement.

### *4.4    Summary*

206.  As I discussed at length above, Mr. Zoltowski's calculations are not tied to the allegations in this case. Both his "lost license fees" calculations and his "disgorgement" calculations lack

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

nexus to the allegations in this case for various reasons. Moreover, Mr. Zoltowski's disgorgement calculations exclude analysis of costs and associated business activities.

207. Although Mr. Zoltowski says that he analyzed "value," his overall methodology lacks consideration of valuation principles. Mr. Zoltowski repeatedly disregarded many important considerations that related to value, including: (i) historical licensing practices between the parties, and as a result overestimated the scope of what would be licensed; (ii) ordinary and customary licensing practices in the field, including discounting; and (iii) evidence of the relatively limited intrinsic value that is provided by Blaze Advisor, and the fact that it is only one part of Federal's overall business.

208. In this case, contemporaneous evidence regarding the intrinsic value associated with the issues in this case is shown in the parties' actual negotiations as I discussed in **Section 3.5**. In March 2016, FICO proposed three different licensing options to Federal that ranged from ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. But Federal rejected this offer because according to Ms. Pawloski, "it was not what [Federal] expected to pay for the license; it was too high."[290] This shows that, particularly relative to Mr. Zoltowski's estimates, the parties recognized that Blaze Advisor had a much smaller financial footprint. Moreover, Mr. Zoltowski has not demonstrated any intrinsic value specifically attributable to the use of Blaze Advisor.

209. In **Section 4.2**, I discussed the adjustments that I made to Mr. Zoltowski's lost license fee estimates. I performed a calculation that adjusts Mr. Zoltowski's calculations for Federal's accused applications that do not use Blaze Advisor and also adjusts for Mr. Kursh's corrected size classification. After making these adjustments, Mr. Zoltowski's U.S. quantification decreases by 61 percent to $6.3 million and his foreign quantification decreases by 82 percent to $3.9 million (*see* **Exhibits 3.0** and **3.1**) before a discount is applied. Assuming only a 40

---

[290] Deposition of Tamra Pawloski, January 18, 2019, p. 206.

CONFIDENTIAL
ATTORNEY'S EYES ONLY

percent discount, Mr. Zoltowski's U.S. calculation would decrease to \$3.8 million,[291] and his foreign quantification would decrease to \$2.4 million.[292]

210. In **Section 4.3**, I discussed how unreasonable Mr. Zoltowski's disgorgement calculations are. In addition to not focusing on a reasonable revenue stream, Mr. Zoltowski disregarded the lack of profitability in the business overall. Mr. Zoltowski identified no revenues that are reasonably associated with Blaze Advisor; this is consistent with how Federal operated in the ordinary course of business, where no revenues are assigned to Blaze Advisor.

## 5   RESERVATION OF RIGHTS

211. My opinions are based upon my analysis of the information available to date. I may review and consider additional information that may be produced by the parties to this dispute. I intend to supplement my opinions based upon that review, if it is appropriate to do so. I also reserve the ability to create demonstratives for use at trial based upon the information contained in this declaration and its attachments, and generally to utilize other graphical depictions as aids in the presentation of my findings.

212. This expert report is highly confidential. It is only to be used for its stated purpose, and is subject to a protective order.

## DUFF&PHELPS



# W. Christopher Bakewell, ASA, CLP

Managing Director and Global Intellectual Property Disputes and Advisory Services Leader

T  +1 (713) 237-5336
M +1 (281) 787-8926
E  chris.bakewell@duffandphelps.com

**Chris Bakewell** is a Managing Director and the leader of the intellectual property advisory services practice.  Chris also serves as city leader in the Houston office of Duff & Phelps.  Chris' client assignments include valuation and strategic management of technology-rich businesses and intellectual property rights, valuation of companies and intangible assets in connection with business transactions, licensing, transaction-related advice and due diligence, as well as audits and investigations.  Chris is consistently recognized as a top economic expert witness, including in the *IAM Patent 1000*.

Chris also has expertise in matters involving patent infringement, breach of contract, theft of trade secrets, diminution of business value, trademark and copyright infringement, injunctive relief (including analyses of irreparable harm and ongoing royalties), international trade issues (including analyses of domestic industry, remedy and bonding) as well as other matters. In addition, Chris has experience in matters involving anti-trust and unfair competition.

Chris has been qualified and testified as an expert witness in various forums, including Federal Court, State Court, Domestic and International Arbitration, and the International Trade Commission.

| Areas of Expertise |
| --- |
| • Damages Analysis |
| • Intangible Asset Valuation |
| • Business Valuation |
| • Licensing |
| • Strategic Business Consulting |
| • Injunctive Relief |
| • International Trade Issues |

### Summary of Experience

*Valuation, Finance and Other Opinion-Related Services.*  In the course of providing financial and valuation analyses, focused on issues related to discounted cash flow, evaluation of market and competitive dynamics, determination of capital structure, transaction and market multiples, control premiums/minority discounts, discounts for lack of liquidity, and other transferability considerations.  Prepared fairness opinions; for example, in connection with a financial transaction involving medical device companies. Performed solvency analyses.  Performed valuations of various businesses including minority and control blocks of closely-held businesses and marketability discounts. These valuations of businesses and assets include manufacturing, distribution, retail and services sectors.  In addition, performed purchase price allocations for financial reporting purposes.  Performed valuations of software and IP assets, including patents, trademarks, copyrights and trade secrets.

*Royalty Analyses and Studies.*  Completed numerous in-depth royalty rate and licensing analyses to assist clients in the development of licensing programs, evaluation of terms in licensing and contract negotiations, determination of fair market value for asset transfers, as well as determination of investment value.  Reviewed and analyzed the terms and conditions of thousands of license agreements, as well as numerous other contracts. Evaluated royalties under various technical standards; studied and analyzed royalty rates in FRAND and RAND licensing contexts.  Evaluated "most favored licensee" and "most favored nations" (i.e., MFN) clauses.  Evaluated royalty rates and other terms between multinational enterprises for tax and transfer pricing purposes.



## W. Christopher Bakewell
Managing Director and Global Intellectual Property Disputes and Advisory Services Leader

*Market Assessments.* Assisted clients in determination of new markets to be developed via licensing, evaluation of potential counterparties and structuring/negotiation of licensing arrangements, and ongoing business analysis. Assisted with the determination of the optimal structure for licensing of technology. Determination of licensing counterparties, structuring of the potential licensing arrangements, evaluation of royalty rates, evaluation of market opportunities, assessment of the economic implications of technical alternatives (*e.g.,* design-arounds, design-outs, and non-infringing alternatives), identification and analysis of potential markets and market segments (including the analysis of injunctive relief), ongoing analysis of "IP rich" investments, surveys, advanced analytical tools (*e.g., statistical and correlation analyses*) as well as IP analytics and data mining.

*Investigations, Royalty Audits and Audits of Contractual Rights.* Conducted royalty audits and other investigations related to contract compliance, including due diligence related to business transactions and fraud.

*Business Leadership and Contract Negotiation Assistance.* Served as business unit financial leader for enterprises engaged in asset ownership, manufacturing, power generation, and construction. Structured, negotiated and evaluated investment opportunities and international trade issues throughout the world. Participated in the negotiation of licenses, joint venture agreements, partnership agreements, buy-sell arrangements, and other contracts.

*Damages and Economic Analysis.* Broad range of experience in business disputes in a variety of litigation settings, including state court, federal court, International Trade Commission, bankruptcy court, arbitration and mediation. Performed various services, analyses and other activities in connection with dispute-related negotiations, both pre- and post-litigation.

Determined and testified regarding economic damages in connection with alleged patent, trademark, and copyright infringement as well as regarding other forms of intellectual property (*e.g.,* trade secrets and know-how) and contractual rights. Determined economic damages related to theft of trade secrets and proprietary information, diminution of business value, and diminution of business value related to alleged wrongful acts.

As a testifying expert, performed analyses of reasonable royalties, ongoing royalties, lost profits damages, price erosion damages and other opinions regarding damages/remedies. Work has included the use of statistics, survey evidence, and other advanced analytical techniques.

### Speeches, Presentations & Publications

"Lessons from the Trenches: Damages Experts," *TexasBarCLE 32nd Annual Course Advanced Intellectual Property Law*, February 2019 (panelist and contributor towards course materials)

"2018 IP Value Summit" *(Duff & Phelps LLC)*, November 2018 (program moderator)

"The Evolving Patent Valuation Landscape," *University of Texas Advanced Patent Law Institute*, November 2017 (panelist)

"Patent Licensing Workshop: Practical Licensing Advice and the Lost Profit Analysis," *National Chiao Tung University, School of Law*, Two-day Seminar, Taipei and Hsinchu, Taiwan, April 2017 (presenter)

"IP Asset Management: Patent Maintenance and Renewal" *(Orrick, Herrington & Sutcliffe, LLP)*, AU Optronics Corp., Hsinchu, Taiwan, April 2017 (panelist)

"2016 IP Value Summit" *(Duff & Phelps LLC)*, December 2016 (program moderator)

**DUFF&PHELPS**

# W. Christopher Bakewell

Managing Director and Global Intellectual Property Disputes and Advisory Services Leader

"Litigation on the Cutting Edge – Protecting and Promoting Your Business in the Evolving Digital Marketplace," *Litigation Symposium*, October 2016 (panelist)

"Hot Topics in IP – International Focus Panel Discussion," 2015 IP Value Summit *(Duff & Phelps LLC)*, December 2015 (moderator)

"Patent Damages Roundtable," *University of Texas Advanced Patent Law Institute*, November 2015 (panelist)

"Patent Values and Litigation: The New Normal?," *Licensing Executives Society,* Silicon Valley Chapter Meeting, February 2015 (moderator)

"IP Hot Topics," *2014 IP Value Summit (Duff & Phelps Corp.),* November 2014 (moderator)

"Global Perspective on the Importance of Patent Rights," Consulate General of France, Houston, March 2014 (presenter)

"Cost of Capital in Intellectual Property Disputes," Section in Chapter "How Courts View Cost of Capital" in *Cost of Capital: Applications and Examples,* 2014 (co-author)

"Cost of Capital in Intellectual Property Disputes," Chapter 14 in *The Lawyer's Guide to Cost of Capital,* August 2014 (co-author)

"Recent Trends in IP Damages Law and International Trade Commission Issues," Continuing Legal Education Program for Duane Morris (Boston), October 2012 (co-presenter)

"Cost of Capital in Intellectual Property Disputes," *Chapter 7 in Cost of Capital In Litigation: Applications and Examples,* 2011 (co-author)

"Recent Developments In Intellectual Property Damages," *16th Annual Intellectual Property Institute: Crucial Insight and Update on Patent, Trademark and Copyright Law,* Washington State Bar Association, March 2011 (panelist)

"Ongoing Royalties," *2010 IP Damages Institute (CalCPA Education Foundation)*, November 2010 (panelist)

"Valuation of Early Stage Intellectual Property," *BVR/Morningstar Summit on Best Practices in Valuing Intellectual Property,* September 2010 (panelist)

"Churchill on Bilski," *Duff & Phelps Client Alert,* July 2010 (co-author)

"Valuation of Patents," *The Value Examiner: Professional Development Journal of the National Association of Certified Valuation Analysts,* May/June 2009 (co-author)

"Negotiating Patent License Agreements," *Kroll Global Fraud Report,* January 2008

"SFAS 157: An Overview of Fair Value and Valuation Standards for Intangibles," *Business Valuation Review: The Quarterly Journal of the Business Valuation Committee of the American Society of Appraisers,* Volume 26 No. 4, Winter 2007 (co-author)

"An Overview of Patent Reform and Recent Cases: Promoting Innovation?" Continuing Education Program for Attorneys, *Houston Bar Association, Corporate Counsel Section*, December 13, 2007 (co-panelist)



## W. Christopher Bakewell

Managing Director and Global Intellectual Property Disputes and Advisory Services Leader

"Selecting an Expert and Getting the Most From Your Relationship," Continuing Education Program for Attorneys, *Association of Corporate Counsel*, October 18, 2007 (co-presenter)

"A Step Forward for the Valuation Community: SFAS 157 And Fair Value Measurements: An Important New Standard In the Valuation Of Assets For Financial Reporting," *les Nouvelles*, July 2007 (co-author)
Journal Referee (editorial review board), *World Patent Information--The International Journal for Industrial Property Documentation, Information, Classification and Statistics, an Elsevier Journal*, Spring 2007

"Working with Your Damages Expert Throughout the Litigation Life Cycle," *Houston Bar Association*, March 22, 2007 (presenter)

Lectured and/or participated in classroom lectures at Baylor University (BEST Honors Business Program), University of Maryland at College Park (Smith School of Business) and the University of Houston (Blakely Advocacy Institute)

Planning committee, *2005 Advanced Patent Law Institute*, Austin, TX

Article regarding innovation in the oil sector, *Oil and Gas Financial Journal*, June 2005

Program advisory committee, *Electric Power 2005*, Chicago, IL

"Economics of Power Applications," *Electric Power 2003*, Houston, TX, March 2003 (co-chair)

"Comparison of US and European Energy Markets," *PowerGen Europe*, Milan, Italy, June 2002

### Education

M.B.A.—Concentration: Finance, Graduate Fellow, Robert H. Smith School of Business, University of Maryland at College Park, 1993.  Internship: US Securities & Exchange Commission.

B.S. *magna cum laude*—Business Management & Administration, Bradley University, Peoria, Illinois, 1990.  Phi Kappa Phi and Beta Gamma Sigma honor societies.

### Professional Affiliations & Certifications

American Society of Appraisers (Accredited Senior Appraiser in Business Valuation; served on the Board of Directors of Houston Chapter)

Licensing Executives Society (Certified Licensing Professional)

Association for Corporate Growth (Member)

American Intellectual Property Law Association (Member)

The Sedona Conference Working Group Series (Member)

University of Texas Advanced Patent Law Institute (Faculty and Planning Member)



# W. Christopher Bakewell

Managing Director and Global Intellectual Property Disputes and Advisory Services Leader

**Professional & Business History**

*Duff & Phelps,* Managing Director and Global Intellectual Property Disputes and Advisory Services Leader (2008-present).

*Kroll,* Senior Director (2008), Director (2007-2008).

*CRA International (formerly InteCap),* Principal (2005-2006), Director (2002-2005).

*KPMG,* Manager, Global Financial Strategies (2001). *Wartsila Corporation* (1995-2002); positions held include: Director, Business Development WDFS (2001-2002); Director of Finance, WDFS (2000-2001); Controller and Treasurer, Wartsila Power Development (1999-2000); Controller, Wartsila Netherlands (1998-1999); Controller and Manager of Finance, Wartsila North America (1995-1998).

*C.W. Amos & Company,* Consulting Supervisor (1995), Senior Consultant (1993-1994).

*Andersen Consulting (now Accenture),* Consultant (1990-1991).



**W. CHRISTOPHER BAKEWELL**
Managing Director

1111 Bagby, Suite 1900
Houston, Texas  77002
 (713) 237-5336
chris.bakewell@duffandphelps.com

**EXPERT TESTIMONY**
**PRIOR FOUR YEARS**

**United States District Court, Southern District of New York**
VR Optics, LLC v. Peloton Interactive, Inc.* (Case No. 1:16-cv-6392)
*Deposition, Report*

**District Court of Harris County, Texas, 189ᵗʰ Judicial District**
FEDD Wireless, LLC, FEDD Holdings, LLC, William C. Daley Trust, et al. v. Flowserve US Inc.*, Flowserve Corporation* (Case No. 2014-54156)
*Trial, Report*

**United States District Court, District of Delaware**
Chanbond, LLC v. Atlantic Broadband Group, LLC*, Bright House Networks, LLC*, Cable One Inc.*, Cablevision Systems Corp*, et al.*, Cequel Communications, LLC*, et al.*, Charter Communications, Inc.*, Comcast Corp.*, et al.*, Cox Communications, Inc.*, et al.*, Mediacom Communications Corp.*, RCN Telecom Services, LLC*, Time Warner Cable Inc.*, et al.*, WaveDivision Holdings, LLC*, WideOpen West Finance, LLC* (Case 1:15-cv-00842 through 1:15-cv-00854)
*Deposition, Report*

**United States District Court, Eastern District of Texas, Marshall Division**
AGIS Software Development LLC v. LG Electronics, Inc.* (Case 2:17-cv-00515)
*Deposition, Report*

**United States District Court, Eastern District of Texas, Marshall Division**
AGIS Software Development LLC v. HTC Corporation* (Case 2:17-cv-00514)
*Deposition, Report*

**United States District Court, Eastern District of Texas, Marshall Division**
Immersion Corp. v. Samsung Electronics Co., Ltd.*, Samsung Electronics America, Inc.* (Case 2:17-cv-00572)
*Deposition, Report*

**United States District Court, Northern District of California, Oakland Division**
Intellectual Ventures II LLC v. Sprint Spectrum L.P.*, Nextel Operations, Inc.*, Ericsson Inc.*, Telefonaktiebolaget LM Ericsson*, Alcatel-Lucent USA Inc.* (Case No. 2:17-cv-00662)
*Deposition, Report*

**United States District Court, Northern District of California, Oakland Division**
Windy City Innovations, LLC v. Facebook, Inc.* (Case 4:16-cv-01730)
*Deposition, Report*

**United States International Trade Commission**
In the Matter of Certain Blow-Molded Bag-In-Container Devices, Associated Components, and End Products Containing or Using Same (Inv. No. 337-TA-1115)
Anheuser-Busch InBev S.A., Anheuser-Busch, LLC (Complainant) v. Heineken International B.V.*, Heineken N.V.*, Heineken Beer Systems B.V.*, Heineken Export Americas B.V.*, Heineken Global Procurement B.V.*, Heineken USA Inc.*, Heineken Holding N.V.* (Respondents)
*Witness Statement, Deposition, Report*



**W. CHRISTOPHER BAKEWELL**
Managing Director

1111 Bagby, Suite 1900
Houston, Texas  77002
 (713) 237-5336
chris.bakewell@duffandphelps.com

**United States District Court, Eastern District of Texas, Tyler Division**
Intellectual Ventures II LLC v. BITCO General Insurance Corp. f/k/a Bituminous Casualty Corp.*, BITCO National Insurance Co.* f/k/a Bituminous Fire and Marine Insurance Co.*, Great West Casualty Company* (Case No. 6:18-cv-298)
*Trial, Deposition, Report*

**United States District Court, Central District of California, Southern Division – Santa Ana**
Nichia Corporation v. Vizio, Inc.* (Case No. 8:16-cv-545)
*Deposition, Report*

**United States District Court, Eastern District of Texas, Marshall Division**
SEVEN Networks, LLC v. Google LLC* (Case No. 2:17-cv-442)
*Deposition, Report*

**United States District Court, Northern District of California, San Franciscio Division**
Free Stream Media Corp. d/b/a Samba TV* v. Alphonso Inc., Ashish Chordia, Raghu Kodige, Lampros Kalampoukas (Case No. 3:17-cv-2107)
*Deposition, Report*

**United States District Court, District of Delaware**
Wi-LAN Inc. v. Sharp Electronics Corporation* (Case No. 1:15-cv-379)
*Deposition, Report*

**United States District Court, Eastern District of Texas, Tyler Division**
Implicit, LLC v. Palo Alto Network, Inc.* (Case No. 6:17-cv-00336)
*Deposition, Report*

**United States International Trade Commission**
In the Matter of Certain Intraoral Scanners and Related Hardware and Software (Inv. No. 337-TA-1090)
Align Technology, Inc.* (Complainant) v. 3Shape A/S, 3Shape Trios A/S, 3Shape, Inc. (Respondents)
*Hearing, Witness Statement, Deposition, Report*

**International Trade Commision**
In the Matter of Certain Color Intraoral Scanners and Related Hardware and Software (Inv. No. 337-TA-1091)
Align Technology, Inc.* (Complainant) v. 3Shape A/S, 3Shape Trios A/S, 3Shape, Inc. (Respondents)
*Hearing, Deposition, Report*

**United States District Court, District of Minnesota**
Polaris Industries, Inc. v. Arctic Cat Inc.*, Arctic Cat Sales Inc.* (Case No. 0:15-cv-04475)
*Depostion, Reports*

**United States District Court, District of Minnesota**
Polaris Industries, Inc. v. Arctic Cat Inc.*, Arctic Cat Sales Inc.* (Case No. 0:15-cv-04129)
*Deposition, Reports*

**German Institution of Arbitration**
Bayer Cropscience AG v. Aventis Agriculture S.A.*, Hoechst GmbH* (Case No. DIS-SV-RM-4106/14)
*Hearing, Reports*



**W. CHRISTOPHER BAKEWELL**
Managing Director

1111 Bagby, Suite 1900
Houston, Texas 77002
(713) 237-5336
chris.bakewell@duffandphelps.com

**United States District Court, Eastern District of Texas, Marshall Division**
Joe Andrew Salazar v. HTC Corporation* (Case No. 2:16-cv-01096)
*Trial, Report*

**United States District Court, Central District of California, Western Division**
McRO, Inc., d.b.a Planet Blue v. Activision Blizzard, Inc.*, Activision Publishing, Inc.*, Blizzard Entertainment, Inc.*, Infinity Ward, Inc.* (Case No. 2:12-cv-10322)
*Deposition, Report*

**United States District Court, Central District of California, Western Division**
McRO, Inc., d.b.a Planet Blue v. Electronic Arts Inc.* (Case No. 2:12-cv-10329)
*Deposition, Report*

**United States District Court, District of Delaware**
Baxalta Incorporated*, Baxalta GMBH* v. Genentech, Inc., Chugai Pharmaceutical Co., Ltd. (Case No. 17-509-GMS)
*Hearing, Deposition, Declaration*

**United States District Court, Eastern District of Texas, Marshall Division**
Oyster Optics, LLC v. Infinera Corporation* (Case No. 2:16-cv-01295)
*Deposition, Report*

**United States District court, Eastern District of Washington**
Daniel Grellner v. Rodney D. Raabe*, Sapheon, Inc.*, Sapheon, LLC*, Covidien Holding, Inc.*, Covidien Sales LLC*, Covidien LP* (Case No. 2:15-cv-00189)
*Deposition, Report*

**International Trade Commission**
In the Matter of Certain Robotic Vacuum Devices and Components Thereof Such as Spare Parts (Inv. No. 337-TA-1057) iRobot Corporation (Complainant) v. Bissell Homecare, Inc.*, Black & Decker (US) Inc.*, Hoover*, Matsutek Enterprises Co., Ltd.*, Royal Appliance Mfg. Co. Inc. d/b/a TTI Floor Care North American, Inc.*, Shenzhen Silver Star Intelligent Technology Co., Ltd.*, Shenzhen Zhiyi Technology Co. Ltd d/b/a iLife*, Suzhou Real Power Electric Appliance Co., Ltd.*, The Black & Decker Corporation*, Bobsweep USA*, Bobsweep, Inc.* (Respondents)
*Deposition, Report*

**United States District Court, District of Delaware**
Bard Peripheral Vascular, Inc. v. Angiodynamics, Inc.* (Case No. 1:15-cv-00218)
*Deposition, Reports*

**International Trade Commission**
In the Matter of Certain Digital Cameras, Software, and Components Thereof (Inv. No. 337-TA-1059)
Carl Zeiss AG, ASML Netherlands B.V. (Complainants) v. Nikon Corporation*, Sendai Nikon Corporation*, Nikon Inc.*, Nikon (Thailand) Co., Ltd.*, Nikon Imaging (China) Co., Ltd.*, PT Nikon Indonesia* (Respondents)
*Hearing, Deposition, Report*

**International Trade Commission**
In the Matter of Certain Non-Volatile Memory Devices and Products Containing Same (Inv. No. 337-TA-1046)
Macronix International Co., Ltd.* (Complainant) v. Toshiba America Electronic Components, Inc., Toshiba America Information Systems, Inc., Toshiba America, Inc., Toshiba Corporation, Toshiba Information Equipment, Inc., Toshiba Memory Corporation (Respondents)
*Hearing, Witness Statement, Deposition, Report*



**W. CHRISTOPHER BAKEWELL**
Managing Director

1111 Bagby, Suite 1900
Houston, Texas  77002
 (713) 237-5336
chris.bakewell@duffandphelps.com

**United States District Court, District of Delaware**
Sound View Innovations, LLC v. Facebook, Inc.* (Case No. 1:16-cv-00116)
*Deposition, Report*

**Arbitration**
Development Specialists, Inc., Solely In Its Capacity as Assignee for the Benefit of Creditors of Idun Pharmaceuticals, Inc.* v. AbbVie, Inc. (Case No. N/A)
*Arbitration, Report*

**United States District Court, Eastern District of Texas, Sherman**
Quintel Technology Ltd. v. Huawei Technologies USA, Inc.*, FutureWei Technologies, Inc.*, Huawei Technologies Co.*, Ltd., Zhengxiang Ma* (Case No. 4:15-cv-00307)
*Deposition, Report*

**United States International Trade Commission**
In the Matter of Certain Carbon and Alloy Steel Products (Inv. No. 337-TA-1002)
United States Steel Corporation* (Complainant) v. Hebei Iron and Steel Group Co., Ltd., Hebei Iron & Steel Group Hengshui Strip Rolling Co., Ltd., Hebei Iron & Steel (Hong Kong) International Trade Co., Ltd., et al. (Respondents)
*Witness Statement, Deposition, Report*

**United States District Court, Harris County, Texas, 190th Judicial District**
NALCO Company*, d/b/a NALCO Champion v. Aegis Chemical Solutions, LLC, Gary Cooper, Christopher Hung, Aegis Intervale Holdings, Inc., Intervale Capital, LLC, IC Aegis Holdings, LLC (Case No. 2015-36885)
*Deposition, Report*

**United States District Court, Central District of California, Southern Division-Santa Ana**
Syneron Medical Ltd. v. Invasix, Inc.*, Inmode MD Ltd.* (Case No. 8:16-cv-00413)
*Deposition, Report*

**United States District Court, Eastern District of Texas, Marshall**
Navico, Inc.*,  Navico Holding AS* v. Garmin International, Inc., Garmin USA, Inc. (Case No. 2:16-cv-00190)
*Trial, Deposition, Report*

**United States District Court, Eastern District of Texas, Marshall**
Customedia Technologies, LLC v. DISH Network Corporation*, DISH Network LLC* (Case No. 2:16-cv-00129)
*Deposition, Report*

**United States District Court, Eastern District of Texas, Tyler Division**
Papst Licensing GmbH & Co., KG v. Apple, Inc., LG Electronics, Inc.*, LG Electronics USA, Inc.*, LG Electronics MobileComm USA, Inc.*, ZTE Corporation, ZTE (USA), Inc., Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Lenovo (United States) Inc., Motorola Mobility LLC, Huawei Technologies Co., Ltd., Huawei Technologies USA, Inc. (Case No. 6:15-cv-01095)
*Deposition, Report*

**United States District Court, District of Maryland**
Intellectual Ventures I LLC, Intellectual Ventures II LLC v. Capital One Financial Corp.*, Capital One Bank (USA), National Association*, Capital One, National Association* (Case No. PWG-14-111)
*Deposition, Report*



**W. CHRISTOPHER BAKEWELL**
Managing Director

1111 Bagby, Suite 1900
Houston, Texas  77002
(713) 237-5336
chris.bakewell@duffandphelps.com

**United States District Court, District of Delaware**
Globeride, Inc. v. Pure Fishing, Inc.* (Case No. 2:15-cv-3000)
*Deposition, Report*

**United States District Court, Eastern District of Texas, Marshall Division**
Elbit Systems Land, C4I Ltd., Elbit Systems of America, LLC v. Hughes Network Systems, LLC*, Black Elk Energy Offshore Operations, LLC, Bluetide Communications, Inc., Country Home Investments, Inc. (Case No. 2:15-cv-00037)
*Deposition, Report*

**United States District Court, District of Delaware**
Intellectual Ventures I  LLC v. United States Cellular Corporation*, Ericsson Inc.*, Telefonaktiebolaget LM Ericsson* (Case No. 1:14-cv-13-1672)
*Deposition, Report*

**United States District Court, District of Delaware**
Intellectual Ventures I  LLC v. T-Mobile USA, Inc., T-Mobile US, Inc.*, Ericsson Inc.*, Telefonaktiebolaget LM Ericsson* (Case No. 1:14-cv-13-1671)
*Deposition, Report*

**United States International Trade Commission**
In the Matter of Certain Semiconductor Devices, Semiconductor Device Packages, and Products Containing Same (Inv. No. 337-TA-1010)
Invensas Corporation, Tessera Technologies, Inc., Tessera, Inc. (Complainants) v. Broadcom Limited*, Broadcom Corporation*, Avago Technologies U.S. Inc.*, Arista Networks, Inc.*, ARRIS International plc*, ARRIS Group, Inc.*, ARRIS Technology, Inc.*, ARRIS Enterprises LLC*, ARRIS Solutions, Inc.*, ASUS Computer International, ASUS Computer International, Inc., ASUSTeK Computer Inc.*, Pace Ltd.*, Pace Americas, LLC*, Pace USA, LLC*, Comcast Cable Communications, LLC*, Comcast Cable Communications Management, LLC*, Comcast Business Communications, LLC*, HTC Corporation*, HTC America, Inc.*, NETGEAR, Inc.*, Technicolor S.A.*, Technicolor Connected Homes USA LLC* (Respondents)
*Hearing, Witness Statement, Deposition, Report*

**United States District Court, Eastern District of Texas, Marshall Division**
511 Innovations, Inc. v. HTC America, Inc.*, HTC Corporation*, Capella Microsystems, Inc.*, Vishay Capella Microsystems (Taiwan) Limited*, Vishay Intertechnology, Inc.* (Case No. 2:15-cv-1524)
*Deposition, Report*

**United States Patent and Trademark Office**
Elekta Inc. v. Varian Medical Systems International AG* (IPR Case No. 2016-00844)
*Declarations*

**United States District Court, District of Oregon, Portland Division**
Smith & Nephew, Inc.*, John O. Hayhurst, M.D.* v. Arthrex, Inc. (Case No. 3:08-cv-00714)
*Deposition, Declaration, Reports*

**Circuit Court, Eighth Judicial Circuit, Alachua County, Florida**
University of Florida Research Foundation, Inc. v. Medtronic PLC* (Case No. 01-16-CA-1366)
*Declaration*

**United States District Court, Eastern District of Texas, Marshall Division**
The Lincoln Electric Company*, Lincoln Global, Inc.* v. The ESAB Group, Inc., ESAB AB (Case No. 2:15-cv-1404)
*Deposition, Reports*



**W. Christopher Bakewell**
Managing Director

1111 Bagby, Suite 1900
Houston, Texas  77002
 (713) 237-5336
chris.bakewell@duffandphelps.com

**United States District Court, Eastern District of Texas, Marshall Division**
Alfonso Cioffi, Melanie Rozman, Megan Rozman, Morgan Rozman v. Google, Inc.* (Case No. 2:13-cv-103)
*Trial, Deposition, Report*

**United States District Court, Eastern District of Texas, Tyler Division**
Chrimar Systems, Inc. v. Accton Technology Corporation*, ADTRAN, Inc.*, Aerohive Networks Incorporated*, Costar Video Systems, LLC*, Dell, Inc.*, D-Link Systems, Inc.*, EnGenius Technologies, Inc.*, TRENDnet International, Inc.*, TRENDware International, Inc.* (Case No.6:15-cv-00618)
*Trial, Deposition, Report*

**United States District Court, Eastern District of Texas, Marshall**
Mylan Institutional LLC, Apicore US LLC  v. Aurobindo Pharma Ltd.*, Aurobindo Pharma USA Inc.*, AuroMedics Pharma LLC* (Case No. 2:16-cv-00491)
*Hearing, Deposition, Declaration*

**United States District Court, District of Delaware, Wilmington**
Intellectual Ventures I LLC, Intellectual Ventures II LLC v. Symantec Corp.* and Veritas Technologies LLC* (Case No. 1:13-cv-440)
*Deposition, Report*

**United States District Court, Northern District of Illinois**
The Chamberlain Group, Inc.* v. Techtronic Industries Co. Ltd., Techtronic Industries North America, Inc., One World Technologies Inc., OWT Industries, Inc., ET Technology (Wuxi) Co. Ltd., Ryobi Technologies, Inc. (Case No. 1:16-cv-06097)
*Hearing, Deposition, Declaration*

**United States District Court, District of New Jersey**
Lifecell Corp.* v. TELA Bio, Inc. (Case No. 1:16-cv-04158)
*Declarations*

**United States Patent and Trademark Office, Before the Patent Trial and Appeal Board**
Arctic Cat, Inc.* v. Polaris Industries, Inc. (Case No. IPR 2015-01783)
*Deposition, Declaration*

**District Court of Travis County, Texas, 98th Judicial District**
Wellbeing Genomics Pty Ltd.* v. PLLG, LLC, Dr. Ruthie Harper, David Urman (Case No. D-1-GN-14-002452)
*Trial, Report*

**Superior Court of New Jersey, Chancery Division: Somerset County**
Lifecell Corp.* v. TELA Bio, Inc., Antony Koblish, Maarten Persenaire (Case No. SOM-C-12013-15)
*Deposition, Report*

**United States District Court, Eastern District of Texas, Tyler Division**
Cellular Communications Equipment LLC v. Apple Inc.*, AT&T Mobility LLC, Cellco Partnership, Sprint Solutions, Inc., Sprint Spectrum LP, Boost Mobile LLC, T-Mobile USA, Inc.*, T-Mobile US, Inc.* (Case No. 6:14-cv-251)
*Trial, Deposition, Reports*



**W. CHRISTOPHER BAKEWELL**
Managing Director

1111 Bagby, Suite 1900
Houston, Texas  77002
(713) 237-5336
chris.bakewell@duffandphelps.com

**United States District Court, District of Delaware**
Vehicle IP, LLC v. AT&T Mobility LLC*, Cellco Partnership, Garmin International, Inc., Garmin USA, Inc., Networks In Motion, Inc., Telecommunication Systems, Inc., Telenav Inc.*, United Parcel Service, Inc., UPS Logistics Technologies, Inc. (Case No. 1:09-cv-01007)
*Deposition, Report*

**United States District Court, Northern District of California**
Rembrandt Patent Innovations, LLC, Rembrandt Secure Computing, LP v. Apple Inc.* (Case No. 3:14-cv-05094)
*Deposition, Report*

**United States International Trade Commission**
In the Matter of Certain Radiotherapy Systems and Treatment Planning Software, and Components Thereof Varian Medical Systems, Inc., Varian Medical Systems International AG (Complaints)* v. Elekta AB, Elekta Ltd., Elekta GmbH, Elekta Inc., IMPAC Medical Systems, Inc., Elekta Instrument (Shanghai) Limited, Elekta Beijing Medical Systems Co. Ltd. (Respondents)
*Hearing, Witness Statement, Deposition, Report*

**United States District Court, Eastern District of Texas, Tyler Division**
Chrimar Systems, Inc. d/b/a CMS Technologies, Chrimar Holding Company v. Alcatel-Lucent S.A.*, Alcatel-Lucent USA Inc.*, Alcatel-Lucent Holdings, Inc.*, Alcatel-Lucent Enterprise USA Inc.*, AMX, LLC* (Case No. 6:15-cv-163)
*Trial, Hearing, Report*

**United States District Court, District of Delaware**
MobileMedia Ideas LLC v. Apple Inc.* (Case No. 1:10-cv-258)
*Deposition, Report*

**United States District Court, Eastern District of Virginia, Norfolk Division**
Vir2us, Inc. v. Invincea, Inc.*, Invincea Labs, LLC* (Case No. 2:15-cv-162)
*Deposition, Report*

**United States District Court, Eastern District of Texas, Tyler Division**
Mirror Worlds Technologies, LLC v. Apple, Inc.*, Best Buy Co. Inc., Dell, Inc., Hewlett Packard Company, Lenovo Group Ltd., Lenovo (United States) Inc., Microsoft Corporation, Samsung Electronics USA, Inc., Samsung Telecommunications America, LLC (Case No. 6:13-cv-00419)
*Deposition, Report*

**United States District Court, Eastern District of Texas, Marshall Division**
Mobile Telecommunications Technologies LLC v. AT&T Mobility LLC* and AT&T, Inc.* (Case No. 2:14-cv-00897)
*Deposition, Report*

**United States District Court, Eastern District of Texas, Marshall Division**
BMC Software, Inc. v. ServiceNow, Inc.* (Civil Action No. 2:14-cv-903)
*Depositions, Report*

**United States District Court, District of Delaware**
Lifeport Sciences LLC v. Endologix, Inc.* (Civil Action No. 1 :12-cv-01791)
*Deposition, Report*



**W. CHRISTOPHER BAKEWELL**
Managing Director

1111 Bagby, Suite 1900
Houston, Texas  77002
(713) 237-5336
chris.bakewell@duffandphelps.com

**United States District Court, District of Delaware, Wilmington**
CallWave Communication LLC v. AT&T Mobility LLC, Google, Inc.* (Case No. 1:12-cv-01701)
*Deposition, Report*

**United States District Court, Eastern District of Texas, Marshall Division**
Metaswitch Networks Ltd. v. Genband US LLC,* Genband Management Services Corp.* (Case No. 2:14-cv-744)
*Trial, Depositions, Reports*

**United States District Court, Eastern District of Texas, Tyler Division**
Equistar Chemicals, LP and MSI Technology LLC v. Westlake Chemical Corp.* (Case No. 6:14-cv-68)
*Trial, Deposition, Report*

**United States Patent and Trademark Office, Before the Patent Trial and Appeal Board**
Arctic Cat, Inc.* v. Polaris Industries, Inc. (Case No. IPR2014-01427 and IPR2014-01428)
*Deposition, Report*

**United States International Trade Commission**
In the Matter of Certain Three-Dimensional Cinema Systems and Components Thereof (Investigation No. 337-TA-939)
RealD Inc. (Complainant)* v. MasterImage 3D, Inc. and MasterImage Asia, LLC (Respondents)
*Hearing, Witness Statement, Report*

**United States District Court, District of Nebraska**
Prism Technologies LLC v. T-Mobile USA, Inc.* (Case No. 8:12-cv-124)
*Deposition, Reports*

**United States International Trade Commission**
In the Matter of Certain Light Emitting Diode Products and Components Thereof (Investigation No. 337-TA-947)
Cree, Inc. (Complainant)* v. Feit Electric Company, Inc., Feit Electric Company, Inc., Unity Opto Technology Co.,
Ltd. and Unity Microelectronics, Inc. (Respondents)
*Hearing, Witness Statement, Deposition, Report*

**Arbitration, American Arbitration Association, Inc.**
Capital One N.A.* v. RSA Security LLC (Case No. 01/14-0000-2003)
*Testimony, Report*

**United States District Court, District of Kansas**
Sprint Communications Co., L.P. v. Cable One, Inc.* (Case No. 2:11-cv-02685)
*Deposition, Report*

**United States District Court, Eastern District of Texas, Marshall Division**
GENBAND US LLC* v. Metaswitch Networks Corp., *et al.* (Case No. 2:14-cv-00033)
*Trial, Depositions, Reports*

**United States District Court, District of Delaware**
Bridgestone Americas Tire Operations LLC v. TRW Automotive Holdings Corp.,* TRW Automotive U.S. LLC,*
TRW Automotive Inc.,* Entire Solutions LLC* (Case No. 1:13-cv-1550)
*Deposition, Report*



**W. CHRISTOPHER BAKEWELL**
Managing Director

1111 Bagby, Suite 1900
Houston, Texas  77002
 (713) 237-5336
chris.bakewell@duffandphelps.com

**United States District Court, District of Delaware**
Semcon Tech LLC v. Micron Technology Inc.* (Case No. 1:12-cv-00532)
*Deposition, Reports*

**United States International Trade Commission**
In the Matter of Certain Formatted Magnetic Data Storage Tapes and Cartridges Containing the Same (Investigation No. 337-TA-931)
Advanced Research Corporation (Complainant) v. International Business Machines Corporation, Oracle Corporation, Fujifilm Holdings Corporation, Fujifilm Corporation, Fujifilm Recording Media USA, Inc. (Respondents)*
*Hearing, Deposition, Report*

**District Court, Tarrant County, Texas, 17th Judicial District**
Cardone Industries, Inc.* v. Joel Farina & BBB Industries, LLC (Case No. 017-271617-14)
*Deposition, Report*

**United States District Court, Eastern District of Texas, Tyler Division**
Commonwealth Scientific and Industrial Research Organisation v. Texas Instruments Inc.,* *et al.* (Case No. 6:12-cv-00578)
*Deposition, Report*

**United States District Court, Eastern District of Texas, Tyler Division**
VirnetX, Inc. and Science Applications International Corporation v. Apple, Inc.* (Case No. 6:12-cv-00855)
*Trials, Depositions, Reports*

**United States District Court, District of Delaware**
Intellectual Ventures I LLC v. Check Point Software Technologies Ltd., Check Point Software Technologies, Inc., McAfee, Inc., Symantec Corp.,* Trend Micro, Inc., Trend Micro, Inc. (USA), USA (Civil Action No. 1:10-cv-1067)
*Trial,[1] Deposition, Reports*

**United States District Court, Eastern District of Texas, Tyler Division**
Invensys Systems, Inc.* v. Emerson Electric Co. and Micro Motion Inc., USA (Civil Action No. 6:12-cv-00799)
*Deposition, Reports*

**United States District Court, Central District of California**
FOX Broadcasting Company, Twentieth Century FOX Film Corporation, and FOX Television Holdings, Inc. v. DISH Network L.L.C.,* DISH Network Corporation,* and EchoStar Technologies L.L.C. (Case No. 1:12-cv-04529)
*Deposition, Report*

**Arbitration, International Chamber of Commerce**
Bayer CropScience AG, Bayer CropScience NV v. Dow AgroSciences LLC, Mycogen Plant Science Inc., Agrigenetics, Inc. d/b/a Mycogen Seeds, LLC And Phyotgen Seed Company, LLC* (ICC Case No. 18892/VRO/AGF)
*Hearing(Arbitration), Declarations*

---



**W. CHRISTOPHER BAKEWELL**
Managing Director

1111 Bagby, Suite 1900
Houston, Texas  77002
 (713) 237-5336
chris.bakewell@duffandphelps.com

**United States District Court, Southern District of Texas, Houston Division**
SuperSpeed, LLC v. Google, Inc.* (Civil Action No. 4:12-cv-01688)
*Deposition, Report*

**United States District Court, Northern District of Illinois, Eastern Division**
Cascades Computer Innovation, LLC v. HTC Corporation,* at al. (Civil Action No. 1:11-cv-06235)
*Deposition, Report*

**United States District Court, Northern District of Michigan, Eastern Division**
Everlight Electronics Co., Ltd.,* and Emcore Corporation* v. Nichia Corporation, and Nichia America Corporation
(Civil Action No. 4:12-cv-11758)
*Deposition, Reports*

**United States District Court, Eastern District of Texas, Tyler Division**
Commonwealth Scientific and Industrial Research Organisation v. Cisco Systems, Inc.* (Civil Action No. 6:11-cv-00343-LED)
*Trial, Deposition, Report*

**Client/party denoted with \***

*Fair Isaac Corporation v. Federal Insurance Company et al.*
*Case No. 16-cv-1054*
Rebuttal Expert Report Of W  Christopher Bakewell

**Attachment C**
Documents Received

| Prefix | Beg | End | Prefix | Beg | End | Prefix | Beg | End | Prefix | Beg | End | Prefix | Beg | End |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FED | 000046_0001 | 000046_0016 | FED | 000420_0001 | 000420_0001 | FED | 004434_0001 | 004434_0003 | FED | 005476_0001 | 005476_0016 | FED | 008753_0001 | 008753_0004 |
| FED | 000049_0001 | 000049_0002 | FED | 000514_0001 | 000514_0001 | FED | 004435_0001 | 004435_0011 | FED | 005942_0001 | 005942_0054 | FED | 008759_0001 | 008759_0001 |
| FED | 000050_0001 | 000050_0002 | FED | 000588_0001 | | FED | 004436_0001 | 004436_0003 | FED | 006068_0001 | 006068_0008 | FED | 008760_0001 | 008760_0003 |
| FED | 000051_0001 | 000051_0022 | FED | 000589_0001 | 000589_0002 | FED | 004437_0001 | 004437_0001 | FED | 006070_0001 | 006070_0008 | FED | 008763_0001 | 008763_0002 |
| FED | 000058_0001 | 000058_0012 | FED | 000594_0001 | 000594_0002 | FED | 004458_0001 | 004458_0003 | FED | 006173_0001 | 006173_0009 | FED | 008837_0001 | 008837_0004 |
| FED | 000059_0001 | 000059_0002 | FED | 000700_0001 | 000700_0003 | FED | 004506_0001 | 004506_0004 | FED | 006228_0001 | 006228_0015 | FED | 008916_0001 | 008916_0026 |
| FED | 000060_0001 | 000060_0002 | FED | 000703_0001 | 000703_0003 | FED | 004524_0001 | 004524_0001 | FED | 006236_0001 | 006236_0013 | FED | 009045_0001 | 009045_0002 |
| FED | 000064_0001 | 000064_0030 | FED | 000713_0001 | 000713_0006 | FED | 004525_0001 | 004525_0016 | FED | 006246_0001 | 006246_0028 | FED | 009046_0001 | 009046_0002 |
| FED | 000068_0001 | 000068_0028 | FED | 000718_0001 | 000718_0001 | FED | 004526_0001 | 004526_0007 | FED | 006248_0001 | 006248_0013 | FED | 009056_0001 | 009056_0033 |
| FED | 000112_0001 | 000112_0068 | FED | 000755_0001 | 000755_0001 | FED | 004527_0001 | 004527_0003 | FED | 006252_0001 | 006252_0108 | FED | 009102_0001 | |
| FED | 000122_0001 | 000122_0029 | FED | 000806_0001 | | FED | 004531_0001 | 004531_0002 | FED | 006288_0001 | 006288_0001 | FED | 009153_0001 | 009153_0004 |
| FED | 000127_0001 | 000127_0004 | FED | 000893_0001 | 000893_0002 | FED | 004533_0001 | 004533_0005 | FED | 006308_0001 | 006308_0004 | FED | 009281_0001 | 009281_0013 |
| FED | 000141_0001 | 000141_0004 | FED | 000894_0001 | 000894_0027 | FED | 004534_0001 | 004534_0001 | FED | 006320_0001 | | FED | 009624_0001 | 009624_0006 |
| FED | 000143_0001 | 000143_0006 | FED | 001083_0001 | 001083_0001 | FED | 004535_0001 | 004535_0010 | FED | 006457_0001 | | FED | 009630_0001 | 009630_0002 |
| FED | 000152_0001 | 000152_0029 | FED | 001084_0001 | 001084_0002 | FED | 004537_0001 | 004537_0002 | FED | 006504_0001 | 006504_0014 | FED | 009644_0001 | 009644_0003 |
| FED | 000171_0001 | 000171_0028 | FED | 001101_0001 | 001101_0002 | FED | 004538_0001 | | FED | 006662_0001 | 006662_0039 | FED | 009664_0001 | 009664_0018 |
| FED | 000180_0001 | 000180_0025 | FED | 001104_0001 | 001104_0018 | FED | 004549_0001 | 004549_0002 | FED | 006668_0001 | 006668_0034 | FED | 009673_0001 | |
| FED | 000185_0001 | 000185_0007 | FED | 001119_0001 | | FED | 004550_0001 | 004550_0003 | FED | 006755_0001 | 006755_0002 | FED | 009674_0001 | 009674_0005 |
| FED | 000190_0001 | 000190_0009 | FED | 001120_0001 | 001120_0002 | FED | 004570_0001 | | FED | 006784_0001 | 006784_0046 | FED | 009679_0001 | 009679_0012 |
| FED | 000195_0001 | 000195_0002 | FED | 001148_0001 | 001148_0004 | FED | 004571_0001 | 004571_0017 | FED | 006837_0001 | 006837_0018 | FED | 009894_0001 | 009894_0004 |
| FED | 000205_0001 | 000205_0259 | FED | 001150_0001 | | FED | 004587_0001 | 004587_0002 | FED | 006863_0001 | | FED | 009949_0001 | 009949_0004 |
| FED | 000243_0001 | 000243_0024 | FED | 001151_0001 | 001151_0002 | FED | 004603_0001 | 004603_0002 | FED | 006876_0001 | 006876_0006 | FED | 009955_0001 | 009955_0005 |
| FED | 000252_0001 | 000252_0015 | FED | 001164_0001 | 001164_0002 | FED | 004604_0001 | | FED | 006877_0001 | 006877_0007 | FED | 010117_0001 | 010117_0017 |
| FED | 000255_0001 | 000255_0034 | FED | 001180_0001 | 001180_0002 | FED | 004617_0001 | 004617_0002 | FED | 006952_0001 | | FED | 010146_0001 | |
| FED | 000259_0001 | 000259_0026 | FED | 001206_0001 | | FED | 004625_0001 | 004625_0001 | FED | 006995_0001 | 006995_0024 | FED | 010205_0001 | 010205_0029 |
| FED | 000270_0001 | 000270_0065 | FED | 001289_0001 | 001289_0004 | FED | 004628_0001 | | FED | 007131_0001 | 007131_0002 | FED | 010205_0001 | 010205_0007 |
| FED | 000275_0001 | 000275_0016 | FED | 001311_0001 | 001311_0028 | FED | 004629_0001 | 004629_0002 | FED | 007235_0001 | 007235_0032 | FED | 010205_0011 | |
| FED | 000278_0001 | 000278_0153 | FED | 001312_0001 | 001312_0021 | FED | 004635_0001 | | FED | 007381_0001 | | FED | 010829_0001 | 010829_0011 |
| FED | 000280_0001 | 000280_0016 | FED | 001314_0001 | 001314_0021 | FED | 004636_0001 | | FED | 007586_0001 | 007586_0011 | FED | 010839_0001 | 010839_0028 |
| FED | 000287_0001 | 000287_0019 | FED | 001320_0001 | 001320_0028 | FED | 004637_0001 | 004637_0001 | FED | 007789_0001 | 007789_0002 | FED | 010842_0001 | 010842_0016 |
| FED | 000289_0001 | 000289_0024 | FED | 001385_0001 | 001385_0004 | FED | 004725_0001 | 004725_0002 | FED | 007820_0001 | | FED | 010861_0001 | 010861_0007 |
| FED | 000294_0001 | 000294_0021 | FED | 002105_0001 | 002105_0003 | FED | 004736_0001 | 004736_0003 | FED | 007821_0001 | 007821_0015 | FED | 010866_0001 | 010866_0010 |
| FED | 000305_0001 | 000305_0042 | FED | 002515_0001 | | FED | 004790_0001 | 004790_0023 | FED | 007858_0001 | 007858_0013 | FED | 010898_0001 | |
| FED | 000340_0001 | 000340_0001 | FED | 003112_0001 | 003112_0009 | FED | 004839_0001 | 004839_0023 | FED | 008095_0001 | 008095_0131 | FED | 010939_0001 | |
| FED | 000342_0001 | 000342_0003 | FED | 003339_0001 | 003339_0002 | FED | 004844_0001 | 004844_0047 | FED | 008145_0001 | 008145_0011 | FED | 011560_0001 | 011560_0042 |
| FED | 000347_0001 | 000347_0001 | FED | 003522_0001 | 003522_0004 | FED | 004896_0001 | 004896_0002 | FED | 008281_0001 | 008281_0048 | FED | 011790_0001 | |
| FED | 000348_0001 | 000348_0001 | FED | 003523_0001 | 003523_0004 | FED | 004946_0001 | 004946_0009 | FED | 008352_0001 | 008352_0002 | FED | 011791_0001 | 011791_0004 |
| FED | 000350_0001 | 000350_0001 | FED | 003989_0001 | 003989_0002 | FED | 005053_0001 | 005053_0002 | FED | 008402_0001 | 008402_0003 | FED | 011885_0001 | |
| FED | 000351_0001 | | FED | 004079_0001 | 004079_0027 | FED | 005090_0001 | 005090_0002 | FED | 008403_0001 | 008403_0027 | FED | 012046_0001 | 011791_0161 |
| FED | 000352_0001 | 000352_0002 | FED | 004100_0001 | 004100_0003 | FED | 005190_0001 | 005190_0011 | FED | 008454_0001 | 008454_0009 | FED | 012128_0001 | 012128_0016 |
| FED | 000353_0001 | | FED | 004208_0001 | | FED | 005204_0001 | 005204_0012 | FED | 008481_0001 | | FED | 012130_0001 | 012130_0021 |
| FED | 000360_0001 | 000360_0002 | FED | 004209_0001 | 004209_0006 | FED | 005214_0001 | 005214_0012 | FED | 008482_0001 | 008482_0002 | FED | 012136_0001 | 012136_0020 |
| FED | 000361_0001 | 000361_0010 | FED | 004420_0001 | | FED | 005221_0001 | 005221_0012 | FED | 008555_0001 | 008555_0006 | FED | 012301_0001 | |
| FED | 000362_0001 | 000362_0004 | FED | 004431_0001 | 004431_0004 | FED | 005307_0001 | 005307_0071 | FED | 008650_0001 | 008650_0018 | FED | 012303_0001 | 012303_0002 |

*Fair Isaac Corporation v. Federal Insurance Company et al.*
Case No. 16-cv-1054
Rebuttal Expert Report Of W Christopher Bakewell

**Attachment C**
Documents Received

| Prefix | Beg | End | Prefix | Beg | End | Prefix | Beg | End | Prefix | Beg | End | Prefix | Beg | End |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FED | 012641_0001 | 012641_0002 | FED | 013839_0001 | 013839_0021 | FED | 017212_0001 | 017212_0006 | FED | 017886_0001 | 017886_0001 | FICO | 0001792 | 0001793 |
| FED | 013479_0001 | 013479_0034 | FED | 013900_0001 | 013900_0004 | FED | 017213_0001 | 017213_0011 | FED | 017912_0001 | 017912_0001 | FICO | 0001799 | 0001802 |
| FED | 013512_0001 | 013512_0015 | FED | 013928_0001 | 013928_0012 | FED | 017214_0001 | 017214_0014 | FED | 017913_0001 | 017913_0002 | FICO | 0001803 | 0001804 |
| FED | 013515_0001 | 013515_0225 | FED | 013929_0001 | 013929_0063 | FED | 017215_0001 | 017215_0011 | FED | 010116_0001 | | FICO | 0001881 | 0000000 |
| FED | 013516_0001 | 013516_0205 | FED | 013936_0001 | | FED | 017216_0001 | 017216_0005 | FED | 001020_0001 | | FICO | 0001882 | 0001883 |
| FED | 013517_0001 | 013517_0206 | FED | 013947_0001 | 013947_0003 | FED | 017217_0001 | 017217_0012 | FED | 003261_0001 | | FICO | 0001895 | 0001898 |
| FED | 013518_0001 | 013518_0205 | FED | 014156_0001 | 014156_0002 | FED | 017218_0001 | 017218_0012 | FED | 007797_0001 | | FICO | 0001903 | 0001909 |
| FED | 013519_0001 | 013519_0131 | FED | 014158_0001 | 014158_0006 | FED | 017219_0001 | 017219_0010 | FICO | 0000003 | 0000004 | FICO | 0001916 | 0001918 |
| FED | 013520_0001 | 013520_0343 | FED | 014223_0001 | 014223_0003 | FED | 017220_0001 | 017220_0005 | FICO | 0000005 | 0000000 | FICO | 0001920 | 0001922 |
| FED | 013521_0001 | 013521_0225 | FED | 014224_0001 | 014224_0027 | FED | 017221_0001 | 017221_0011 | FICO | 0000055 | 0000000 | FICO | 0001923 | 0001924 |
| FED | 013522_0001 | 013522_0232 | FED | 014341_0001 | | FED | 017222_0001 | 017222_0014 | FICO | 0000057 | 0000058 | FICO | 0001943 | 0001945 |
| FED | 013523_0001 | 013523_0202 | FED | 014355_0001 | 014355_0004 | FED | 017223_0001 | 017223_0012 | FICO | 0000060 | 0000061 | FICO | 0002036 | 0002037 |
| FED | 013524_0001 | 013524_0198 | FED | 014390_0001 | 014390_0014 | FED | 017224_0001 | 017224_0005 | FICO | 0000165 | 0000192 | FICO | 0002118 | 0002119 |
| FED | 013525_0001 | 013525_0140 | FED | 014411_0001 | | FED | 017225_0001 | 017225_0014 | FICO | 0000193 | 0000194 | FICO | 0002785 | 0002788 |
| FED | 013526_0001 | 013526_0152 | FED | 014415_0001 | 014415_0004 | FED | 017226_0001 | 017226_0012 | FICO | 0000198 | 0000199 | FICO | 0002804 | 0000000 |
| FED | 013527_0001 | 013527_0318 | FED | 015043_0001 | 015043_0004 | FED | 017227_0001 | 017227_0012 | FICO | 0000208 | 0000223 | FICO | 0002842 | 0002846 |
| FED | 013528_0001 | 013528_0320 | FED | 015545_0001 | 015545_0030 | FED | 017228_0001 | 017228_0006 | FICO | 0000226 | 0000228 | FICO | 0002965 | 0000000 |
| FED | 013529_0001 | 013529_0172 | FED | 016469_0001 | 016469_0046 | FED | 017229_0001 | 017229_0011 | FICO | 0000259 | 0000261 | FICO | 0004427 | 0004435 |
| FED | 013530_0001 | 013530_0249 | FED | 016515_0001 | 016515_0003 | FED | 017230_0001 | 017230_0012 | FICO | 0000275 | 0000278 | FICO | 0004443 | 0004445 |
| FED | 013531_0001 | 013531_0191 | FED | 016527_0001 | 016527_0003 | FED | 017231_0001 | 017231_0012 | FICO | 0000307 | 0000324 | FICO | 0004533 | 0004535 |
| FED | 013532_0001 | 013532_0268 | FED | 016590_0001 | 016590_0002 | FED | 017232_0001 | 017232_0006 | FICO | 0000381 | 0000000 | FICO | 0004656 | 0004658 |
| FED | 013533_0001 | 013533_0366 | FED | 016599_0001 | 016599_0009 | FED | 017233_0001 | 017233_0013 | FICO | 0000461 | 0000462 | FICO | 0005465 | 0005479 |
| FED | 013534_0001 | 013534_0425 | FED | 016602_0001 | 016602_0013 | FED | 017234_0001 | 017234_0011 | FICO | 0000645 | 0000647 | FICO | 0005621 | 0005624 |
| FED | 013535_0001 | 013535_0333 | FED | 016653_0001 | 016653_0017 | FED | 017235_0001 | 017235_0013 | FICO | 0000657 | 0000659 | FICO | 0005981 | 0005992 |
| FED | 013536_0001 | 013536_0285 | FED | 016708_0001 | | FED | 017236_0001 | 017236_0006 | FICO | 0000700 | 0000000 | FICO | 0006682 | 0006702 |
| FED | 013537_0001 | 013537_0314 | FED | 016709_0001 | 016709_0009 | FED | 017237_0001 | 017237_0012 | FICO | 0000734 | 0000000 | FICO | 0006724 | 0006725 |
| FED | 013538_0001 | 013538_0005 | FED | 016737_0001 | 016737_0003 | FED | 017238_0001 | 017238_0010 | FICO | 0000735 | 0000736 | FICO | 0006783 | 0006787 |
| FED | 013541_0001 | 013541_0010 | FED | 016826_0001 | 016826_0008 | FED | 017239_0001 | 017239_0010 | FICO | 0000767 | 0000000 | FICO | 0006792 | 0006798 |
| FED | 013542_0001 | 013542_0008 | FED | 016932_0001 | | FED | 017240_0001 | 017240_0008 | FICO | 0000828 | 0000830 | FICO | 0006843 | 0006849 |
| FED | 013543_0001 | 013543_0008 | FED | 016933_0001 | 016933_0018 | FED | 017241_0001 | 017241_0012 | FICO | 0000834 | 0000836 | FICO | 0006869 | 0006895 |
| FED | 013544_0001 | 013544_0010 | FED | 017081_0001 | 017081_0003 | FED | 017242_0001 | 017242_0013 | FICO | 0000852 | 0000854 | FICO | 0006928 | 0006976 |
| FED | 013545_0001 | 013545_0011 | FED | 017082_0001 | | FED | 017243_0001 | 017243_0013 | FICO | 0000859 | 0000861 | FICO | 0006989 | 0007030 |
| FED | 013546_0001 | 013546_0008 | FED | 017083_0001 | 017083_0004 | FED | 017354_0001 | | FICO | 0000885 | 0000887 | FICO | 0007072 | 0007102 |
| FED | 013547_0001 | 013547_0009 | FED | 017176_0001 | 017176_0011 | FED | 017355_0001 | 017355_0002 | FICO | 0000926 | 0000927 | FICO | 0007109 | 0007116 |
| FED | 013548_0001 | 013548_0008 | FED | 017202_0001 | | FED | 017356_0001 | 017356_0002 | FICO | 0000929 | 0000932 | FICO | 0007131 | 0007133 |
| FED | 013549_0001 | 013549_0011 | FED | 017203_0001 | | FED | 017357_0001 | 017357_0002 | FICO | 0000939 | 0000942 | FICO | 0007145 | 0007146 |
| FED | 013551_0001 | 013551_0012 | FED | 017204_0001 | 017204_0005 | FED | 017358_0001 | | FICO | 0000971 | 0000000 | FICO | 0007152 | 0007153 |
| FED | 013552_0001 | 013552_0013 | FED | 017205_0001 | 017205_0015 | FED | 017471_0001 | | FICO | 0001164 | 0001167 | FICO | 0007155 | 0007191 |
| FED | 013553_0001 | 013553_0004 | FED | 017206_0001 | 017206_0011 | FED | 017472_0001 | | FICO | 0001381 | 0000000 | FICO | 0007227 | 0007231 |
| FED | 013554_0001 | 013554_0002 | FED | 017207_0001 | 017207_0013 | FED | 017473_0001 | | FICO | 0001424 | 0001425 | FICO | 0007254 | 0007258 |
| FED | 013556_0001 | 013556_0073 | FED | 017208_0001 | 017208_0006 | FED | 017882_0001 | 017882_0031 | FICO | 0001576 | 0001577 | FICO | 0007256 | 0007258 |
| FED | 013557_0001 | 013557_0074 | FED | 017209_0001 | 017209_0012 | FED | 017883_0001 | 017883_0004 | FICO | 0001702 | 0001717 | FICO | 0007313 | 0007315 |
| FED | 013739_0001 | | FED | 017210_0001 | 017210_0011 | FED | 017884_0001 | | FICO | 0001718 | 0001720 | FICO | 0007313 | 0007326 |
| FED | 013740_0001 | 013740_0013 | FED | 017211_0001 | 017211_0010 | FED | 017885_0001 | | FICO | 0001721 | 0001722 | FICO | 0007316 | 0007326 |

*Fair Isaac Corporation v. Federal Insurance Company et al.*
Case No. 16-cv-1054
Rebuttal Expert Report Of W Christopher Bakewell

**Attachment C**
Documents Received

| Bates Stamped | | | Bates Stamped | | | Bates Stamped | | | Bates Stamped | | | Bates Stamped | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Prefix | Beg | End | Prefix | Beg | End | Prefix | Beg | End | Prefix | Beg | End | Prefix | Beg | End |
| FICO | 0007337 | 0007348 | FICO | 0008513 | 0008516 | FICO | 0009803 | 0009820 | FICO | 0010945 | 0010976 | FICO | 0011974 | 0011976 |
| FICO | 0007362 | 0007364 | FICO | 0008530 | 0008532 | FICO | 0009829 | 0009833 | FICO | 0010948 | 0010976 | FICO | 0011983 | 0011985 |
| FICO | 0007374 | 0007389 | FICO | 0008571 | 0008575 | FICO | 0009856 | 0009862 | FICO | 0010991 | 0010992 | FICO | 0012000 | 0012002 |
| FICO | 0007402 | 0007405 | FICO | 0008589 | 0008602 | FICO | 0009908 | 0009917 | FICO | 0011010 | 0011024 | FICO | 0012068 | 0012070 |
| FICO | 0007429 | 0007432 | FICO | 0008618 | 0008621 | FICO | 0009908 | 0009923 | FICO | 0011030 | 0011033 | FICO | 0012075 | 0012078 |
| FICO | 0007441 | 0007487 | FICO | 0008635 | 0008665 | FICO | 0009918 | 0009923 | FICO | 0011064 | 0011079 | FICO | 0012112 | 0012114 |
| FICO | 0007456 | 0007460 | FICO | 0008719 | 0008721 | FICO | 0009952 | 0009964 | FICO | 0011090 | 0011121 | FICO | 0012126 | 0012129 |
| FICO | 0007461 | 0007483 | FICO | 0008727 | 0008730 | FICO | 0009980 | 0009988 | FICO | 0011095 | 0011121 | FICO | 0012131 | 0012132 |
| FICO | 0007493 | 0007496 | FICO | 0008776 | 0008779 | FICO | 0009980 | 0009995 | FICO | 0011125 | 0011127 | FICO | 0012196 | 0012209 |
| FICO | 0007493 | 0007543 | FICO | 0008814 | 0008816 | FICO | 0009989 | 0009995 | FICO | 0011142 | 0011145 | FICO | 0012251 | 0012256 |
| FICO | 0007509 | 0007543 | FICO | 0008819 | 0008858 | FICO | 0010028 | 0010031 | FICO | 0011202 | 0011205 | FICO | 0012271 | 0012283 |
| FICO | 0007548 | 0007554 | FICO | 0008823 | 0008858 | FICO | 0010055 | 0010062 | FICO | 0011213 | 0011216 | FICO | 0012322 | 0012329 |
| FICO | 0007562 | 0007564 | FICO | 0008866 | 0008879 | FICO | 0010072 | 0010151 | FICO | 0011232 | 0011235 | FICO | 0012331 | 0012341 |
| FICO | 0007579 | 0007594 | FICO | 0008910 | 0008914 | FICO | 0010158 | 0010169 | FICO | 0011242 | 0011245 | FICO | 0012367 | 0012384 |
| FICO | 0007651 | 0007665 | FICO | 0008917 | 0008919 | FICO | 0010192 | 0010194 | FICO | 0011260 | 0011265 | FICO | 0012456 | 0012457 |
| FICO | 0007673 | 0007674 | FICO | 0008923 | 0008924 | FICO | 0010192 | 0010199 | FICO | 0011290 | 0011292 | FICO | 0012461 | 0012468 |
| FICO | 0007673 | 0007679 | FICO | 0008956 | 0008990 | FICO | 0010195 | 0010199 | FICO | 0011303 | 0011305 | FICO | 0012486 | 0012487 |
| FICO | 0007675 | 0007676 | FICO | 0008998 | 0008999 | FICO | 0010298 | 0000000 | FICO | 0011318 | 0011320 | FICO | 0012500 | 0012503 |
| FICO | 0007713 | 0007717 | FICO | 0009004 | 0009005 | FICO | 0010322 | 0010325 | FICO | 0011364 | 0011367 | FICO | 0012515 | 0012546 |
| FICO | 0007713 | 0007718 | FICO | 0009034 | 0009037 | FICO | 0010335 | 0000000 | FICO | 0011364 | 0011376 | FICO | 0012515 | 0012548 |
| FICO | 0007718 | 0000000 | FICO | 0009044 | 0009049 | FICO | 0010348 | 0010351 | FICO | 0011368 | 0011371 | FICO | 0012547 | 0012548 |
| FICO | 0007740 | 0007742 | FICO | 0009071 | 0009073 | FICO | 0010390 | 0010391 | FICO | 0011380 | 0011382 | FICO | 0012632 | 0012660 |
| FICO | 0007778 | 0007915 | FICO | 0009098 | 0009099 | FICO | 0010394 | 0010400 | FICO | 0011406 | 0011407 | FICO | 0012635 | 0012660 |
| FICO | 0007778 | 0007921 | FICO | 0009112 | 0009113 | FICO | 0010409 | 0010447 | FICO | 0011424 | 0011430 | FICO | 0012693 | 0012701 |
| FICO | 0007916 | 0007917 | FICO | 0009142 | 0009143 | FICO | 0010458 | 0010459 | FICO | 0011439 | 0011440 | FICO | 0012768 | 0012775 |
| FICO | 0007918 | 0007921 | FICO | 0009160 | 0009174 | FICO | 0010561 | 0010564 | FICO | 0011451 | 0011452 | FICO | 0012789 | 0012797 |
| FICO | 0007938 | 0007939 | FICO | 0009177 | 0009195 | FICO | 0010566 | 0010630 | FICO | 0011451 | 0011463 | FICO | 0012813 | 0012820 |
| FICO | 0007938 | 0007945 | FICO | 0009177 | 0009220 | FICO | 0010566 | 0010644 | FICO | 0011531 | 0011578 | FICO | 0012813 | 0012835 |
| FICO | 0007940 | 0007945 | FICO | 0009226 | 0009228 | FICO | 0010631 | 0010644 | FICO | 0011564 | 0011578 | FICO | 0012824 | 0012835 |
| FICO | 0008089 | 0008103 | FICO | 0009248 | 0009250 | FICO | 0010659 | 0010676 | FICO | 0011603 | 0011605 | FICO | 0012842 | 0012876 |
| FICO | 0008145 | 0008147 | FICO | 0009295 | 0009296 | FICO | 0010679 | 0010690 | FICO | 0011654 | 0011660 | FICO | 0012842 | 0012878 |
| FICO | 0008153 | 0008167 | FICO | 0009301 | 0009304 | FICO | 0010679 | 0010700 | FICO | 0011654 | 0011690 | FICO | 0012890 | 0000000 |
| FICO | 0008153 | 0008175 | FICO | 0009363 | 0009366 | FICO | 0010691 | 0010700 | FICO | 0011661 | 0011675 | FICO | 0012933 | 0012938 |
| FICO | 0008168 | 0008175 | FICO | 0009432 | 0009526 | FICO | 0010703 | 0010717 | FICO | 0011677 | 0011683 | FICO | 0012947 | 0012949 |
| FICO | 0008207 | 0008237 | FICO | 0009547 | 0009558 | FICO | 0010722 | 0010738 | FICO | 0011684 | 0011690 | FICO | 0012956 | 0012957 |
| FICO | 0008260 | 0008281 | FICO | 0009562 | 0009563 | FICO | 0010750 | 0010758 | FICO | 0011694 | 0011696 | FICO | 0012969 | 0012986 |
| FICO | 0008266 | 0008281 | FICO | 0009576 | 0009578 | FICO | 0010759 | 0010764 | FICO | 0011719 | 0011730 | FICO | 0012991 | 0013075 |
| FICO | 0008285 | 0008302 | FICO | 0009594 | 0009598 | FICO | 0010759 | 0010764 | FICO | 0011747 | 0011760 | FICO | 0013087 | 0013099 |
| FICO | 0008285 | 0008308 | FICO | 0009621 | 0009622 | FICO | 0010759 | 0010771 | FICO | 0011797 | 0011811 | FICO | 0013112 | 0013129 |
| FICO | 0008303 | 0008305 | FICO | 0009693 | 0009706 | FICO | 0010830 | 0010838 | FICO | 0011797 | 0011873 | FICO | 0013133 | 0013138 |
| FICO | 0008318 | 0008323 | FICO | 0009711 | 0009713 | FICO | 0010890 | 0010898 | FICO | 0011812 | 0011873 | FICO | 0013133 | 0013148 |
| FICO | 0008336 | 0008349 | FICO | 0009711 | 0009727 | FICO | 0010890 | 0010914 | FICO | 0011882 | 0011886 | FICO | 0013139 | 0013148 |
| FICO | 0008488 | 0008512 | FICO | 0009714 | 0009720 | FICO | 0010899 | 0010902 | FICO | 0011913 | 0011914 | FICO | 0013174 | 0013185 |
| FICO | 0008488 | 0008516 | FICO | 0009763 | 0009766 | FICO | 0010903 | 0010914 | FICO | 0011957 | 0011960 | FICO | 0013228 | 0013239 |

*Fair Isaac Corporation v. Federal Insurance Company et al.*
Case No. 16-cv-1054
Rebuttal Expert Report Of W  Christopher Bakewell

**Attachment C**
Documents Received

| Prefix | Beg | End | Prefix | Beg | End | Prefix | Beg | End | Prefix | Beg | End | Prefix | Beg | End |
|--------|-----|-----|--------|-----|-----|--------|-----|-----|--------|-----|-----|--------|-----|-----|
| FICO | 0013277 | 0013298 | FICO | 0014227 | 0014231 | FICO | 0015517 | 0015522 | FICO | 0016441 | 0016458 | FICO | 0017519 | 0017528 |
| FICO | 0013331 | 0013345 | FICO | 0014232 | 0014248 | FICO | 0015524 | 0015530 | FICO | 0016441 | 0016461 | FICO | 0017622 | 0017650 |
| FICO | 0013364 | 0013365 | FICO | 0014270 | 0014274 | FICO | 0015524 | 0015559 | FICO | 0016459 | 0016461 | FICO | 0017668 | 0017669 |
| FICO | 0013382 | 0013400 | FICO | 0014278 | 0014281 | FICO | 0015531 | 0015554 | FICO | 0016507 | 0016512 | FICO | 0017668 | 0017672 |
| FICO | 0013382 | 0013424 | FICO | 0014283 | 0014288 | FICO | 0015555 | 0015559 | FICO | 0016507 | 0016515 | FICO | 0017686 | 0017699 |
| FICO | 0013463 | 0013465 | FICO | 0014291 | 0014303 | FICO | 0015566 | 0015569 | FICO | 0016531 | 0016542 | FICO | 0017721 | 0017749 |
| FICO | 0013472 | 0013479 | FICO | 0014292 | 0014303 | FICO | 0015573 | 0015574 | FICO | 0016537 | 0016539 | FICO | 0017761 | 0017770 |
| FICO | 0013504 | 0013505 | FICO | 0014316 | 0014325 | FICO | 0015597 | 0015599 | FICO | 0016550 | 0016565 | FICO | 0017777 | 0017808 |
| FICO | 0013508 | 0013509 | FICO | 0014319 | 0014325 | FICO | 0015620 | 0015623 | FICO | 0016601 | 0016624 | FICO | 0017777 | 0017809 |
| FICO | 0013539 | 0013540 | FICO | 0014339 | 0014349 | FICO | 0015636 | 0015639 | FICO | 0016645 | 0016659 | FICO | 0017812 | 0017817 |
| FICO | 0013539 | 0013544 | FICO | 0014346 | 0014349 | FICO | 0015677 | 0015679 | FICO | 0016645 | 0016683 | FICO | 0017829 | 0017831 |
| FICO | 0013546 | 0013569 | FICO | 0014354 | 0014358 | FICO | 0015688 | 0015692 | FICO | 0016660 | 0016683 | FICO | 0017918 | 0017927 |
| FICO | 0013589 | 0013591 | FICO | 0014367 | 0014378 | FICO | 0015732 | 0015747 | FICO | 0016689 | 0016692 | FICO | 0018006 | 0018007 |
| FICO | 0013594 | 0013595 | FICO | 0014427 | 0014429 | FICO | 0015762 | 0015765 | FICO | 0016706 | 0016707 | FICO | 0018017 | 0018024 |
| FICO | 0013603 | 0013604 | FICO | 0014443 | 0014454 | FICO | 0015787 | 0015859 | FICO | 0016723 | 0016725 | FICO | 0018017 | 0018040 |
| FICO | 0013607 | 0013610 | FICO | 0014443 | 0014477 | FICO | 0015843 | 0015859 | FICO | 0016729 | 0016732 | FICO | 0018044 | 0018045 |
| FICO | 0013613 | 0013615 | FICO | 0014455 | 0014462 | FICO | 0015869 | 0015884 | FICO | 0016739 | 0016748 | FICO | 0018059 | 0018061 |
| FICO | 0013626 | 0013628 | FICO | 0014463 | 0014477 | FICO | 0015871 | 0015884 | FICO | 0016742 | 0016744 | FICO | 0018122 | 0018191 |
| FICO | 0013637 | 0013665 | FICO | 0014521 | 0014525 | FICO | 0015920 | 0015925 | FICO | 0016753 | 0016756 | FICO | 0018232 | 0018239 |
| FICO | 0013702 | 0013756 | FICO | 0014532 | 0014538 | FICO | 0015959 | 0015961 | FICO | 0016767 | 0016771 | FICO | 0018260 | 0018263 |
| FICO | 0013777 | 0013805 | FICO | 0014587 | 0014589 | FICO | 0015965 | 0015977 | FICO | 0016777 | 0016787 | FICO | 0018288 | 0018291 |
| FICO | 0013791 | 0013805 | FICO | 0014608 | 0014609 | FICO | 0016004 | 0016007 | FICO | 0016816 | 0016818 | FICO | 0018294 | 0018295 |
| FICO | 0013821 | 0013823 | FICO | 0014622 | 0014665 | FICO | 0016013 | 0016045 | FICO | 0016912 | 0016919 | FICO | 0018327 | 0018330 |
| FICO | 0013838 | 0013839 | FICO | 0014672 | 0014675 | FICO | 0016058 | 0000000 | FICO | 0016996 | 0017005 | FICO | 0018358 | 0018364 |
| FICO | 0013846 | 0013848 | FICO | 0014672 | 0014677 | FICO | 0016058 | 0016082 | FICO | 0017019 | 0017021 | FICO | 0018362 | 0018364 |
| FICO | 0013851 | 0013858 | FICO | 0014676 | 0014677 | FICO | 0016059 | 0016079 | FICO | 0017030 | 0017033 | FICO | 0018401 | 0018414 |
| FICO | 0013851 | 0013862 | FICO | 0014708 | 0014717 | FICO | 0016084 | 0016087 | FICO | 0017030 | 0017119 | FICO | 0018428 | 0018439 |
| FICO | 0013864 | 0013873 | FICO | 0014732 | 0014739 | FICO | 0016104 | 0016114 | FICO | 0017130 | 0017197 | FICO | 0018443 | 0018444 |
| FICO | 0013878 | 0013881 | FICO | 0014750 | 0014752 | FICO | 0016113 | 0016114 | FICO | 0017133 | 0017191 | FICO | 0018466 | 0018467 |
| FICO | 0013891 | 0013894 | FICO | 0014806 | 0014809 | FICO | 0016123 | 0016126 | FICO | 0017192 | 0017197 | FICO | 0018483 | 0018486 |
| FICO | 0013953 | 0013960 | FICO | 0014844 | 0014852 | FICO | 0016138 | 0016147 | FICO | 0017219 | 0017221 | FICO | 0018494 | 0018498 |
| FICO | 0013955 | 0013957 | FICO | 0014873 | 0014876 | FICO | 0016157 | 0000000 | FICO | 0017286 | 0017336 | FICO | 0018530 | 0018535 |
| FICO | 0013958 | 0013960 | FICO | 0014909 | 0014914 | FICO | 0016192 | 0016194 | FICO | 0017374 | 0017377 | FICO | 0018541 | 0018558 |
| FICO | 0013963 | 0013977 | FICO | 0014957 | 0014958 | FICO | 0016202 | 0016205 | FICO | 0017380 | 0017406 | FICO | 0018573 | 0018579 |
| FICO | 0013963 | 0013989 | FICO | 0014960 | 0014982 | FICO | 0016214 | 0016220 | FICO | 0017384 | 0017400 | FICO | 0018577 | 0018579 |
| FICO | 0014014 | 0014017 | FICO | 0014975 | 0014982 | FICO | 0016237 | 0016259 | FICO | 0017415 | 0017429 | FICO | 0018614 | 0018627 |
| FICO | 0014045 | 0014047 | FICO | 0014984 | 0014987 | FICO | 0016240 | 0016259 | FICO | 0017437 | 0017439 | FICO | 0018614 | 0018633 |
| FICO | 0014104 | 0014106 | FICO | 0015018 | 0015021 | FICO | 0016261 | 0016264 | FICO | 0017450 | 0017453 | FICO | 0018691 | 0018708 |
| FICO | 0014114 | 0014116 | FICO | 0015027 | 0015034 | FICO | 0016269 | 0016285 | FICO | 0017458 | 0017460 | FICO | 0018714 | 0018744 |
| FICO | 0014173 | 0014175 | FICO | 0015040 | 0015043 | FICO | 0016307 | 0016317 | FICO | 0017467 | 0017476 | FICO | 0018766 | 0018768 |
| FICO | 0014173 | 0014182 | FICO | 0015062 | 0015065 | FICO | 0016323 | 0016326 | FICO | 0017481 | 0017484 | FICO | 0018776 | 0018783 |
| FICO | 0014176 | 0014182 | FICO | 0015062 | 0015070 | FICO | 0016331 | 0016334 | FICO | 0017500 | 0017502 | FICO | 0018785 | 0018790 |
| FICO | 0014193 | 0014210 | FICO | 0015080 | 0015082 | FICO | 0016360 | 0016364 | FICO | 0017509 | 0017518 | FICO | 0018797 | 0018799 |
| FICO | 0014221 | 0014251 | FICO | 0015161 | 0015472 | FICO | 0016360 | 0016372 | FICO | 0017509 | 0017528 | | | |

*Fair Isaac Corporation v. Federal Insurance Company et al.*
Case No. 16-cv-1054
Rebuttal Expert Report Of W Christopher Bakewell

**Attachment C**
Documents Received

| Prefix | Beg | End | Prefix | Beg | End | Prefix | Beg | End | Prefix | Beg | End | Prefix | Beg | End |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **Bates Stamped** | | | **Bates Stamped** | | | **Bates Stamped** | | | **Bates Stamped** | | | **Bates Stamped** | |
| FICO | 0018797 | 0018814 | FICO | 0019421 | 0019422 | FICO | 0020685 | 0020697 | FICO | 0021618 | 0021633 | FICO | 0023123 | 0023134 |
| FICO | 0018800 | | FICO | 0019421 | 0019452 | FICO | 0020685 | 0020733 | FICO | 0021738 | 0021819 | FICO | 0023123 | 0023138 |
| FICO | 0018801 | 0018811 | FICO | 0019421 | 0019427 | FICO | 0020698 | 0020707 | FICO | 0021826 | 0021894 | FICO | 0023135 | 0023137 |
| FICO | 0018812 | 0018814 | FICO | 0019461 | 0019465 | FICO | 0020708 | 0020717 | FICO | 0021942 | 0021944 | FICO | 0023138 | 0000000 |
| FICO | 0018822 | 0018824 | FICO | 0019473 | 0019476 | FICO | 0020718 | 0020725 | FICO | 0021942 | 0021956 | FICO | 0023168 | 0023173 |
| FICO | 0018847 | 0018855 | FICO | 0019488 | 0019499 | FICO | 0020726 | 0020733 | FICO | 0021945 | 0021956 | FICO | 0023180 | 0023186 |
| FICO | 0018871 | 0018872 | FICO | 0019558 | 0019582 | FICO | 0020745 | 0020759 | FICO | 0021986 | 0021993 | FICO | 0023180 | 0023223 |
| FICO | 0018874 | 0018876 | FICO | 0019635 | 0019651 | FICO | 0020745 | 0020782 | FICO | 0021986 | 0022017 | FICO | 0023187 | 0023195 |
| FICO | 0018888 | 0018892 | FICO | 0019654 | 0019669 | FICO | 0020760 | 0020761 | FICO | 0022054 | 0022109 | FICO | 0023199 | 0023205 |
| FICO | 0018894 | 0018949 | FICO | 0019672 | 0019697 | FICO | 0020774 | 0020782 | FICO | 0022070 | 0022098 | FICO | 0023206 | 0023223 |
| FICO | 0018953 | 0018977 | FICO | 0019787 | 0019788 | FICO | 0020808 | 0020819 | FICO | 0022128 | 0022153 | FICO | 0023225 | 0023241 |
| FICO | 0018953 | 0019004 | FICO | 0019880 | 0019882 | FICO | 0020828 | 0020846 | FICO | 0022247 | 0022257 | FICO | 0023225 | 0023273 |
| FICO | 0018978 | 0018994 | FICO | 0019884 | 0019895 | FICO | 0020861 | 0020864 | FICO | 0022259 | 0022268 | FICO | 0023242 | 0023273 |
| FICO | 0019014 | 0019088 | FICO | 0019884 | 0019909 | FICO | 0020879 | 0020889 | FICO | 0022283 | 0022318 | FICO | 0023317 | 0023322 |
| FICO | 0019016 | 0019024 | FICO | 0019922 | 0019956 | FICO | 0020892 | 0020905 | FICO | 0022327 | 0022329 | FICO | 0023346 | 0023554 |
| FICO | 0019056 | 0019057 | FICO | 0019989 | 0019998 | FICO | 0020941 | 0021009 | FICO | 0022336 | 0022347 | FICO | 0023370 | 0023376 |
| FICO | 0019068 | | FICO | 0020006 | 0020045 | FICO | 0020990 | 0020997 | FICO | 0022359 | 0022370 | FICO | 0023382 | 0023393 |
| FICO | 0019071 | 0019088 | FICO | 0020019 | 0020029 | FICO | 0021048 | 0021052 | FICO | 0022373 | 0022375 | FICO | 0023382 | 0023408 |
| FICO | 0019092 | 0019109 | FICO | 0020030 | 0020045 | FICO | 0021048 | 0021145 | FICO | 0022395 | 0022397 | FICO | 0023481 | 0023499 |
| FICO | 0019092 | 0019138 | FICO | 0020055 | 0020059 | FICO | 0021053 | 0021058 | FICO | 0022405 | 0022407 | FICO | 0023509 | 0023552 |
| FICO | 0019110 | | FICO | 0020139 | 0020149 | FICO | 0021059 | 0021145 | FICO | 0022405 | 0022412 | FICO | 0023546 | 0023552 |
| FICO | 0019115 | 0019117 | FICO | 0020139 | 0020173 | FICO | 0021168 | 0021170 | FICO | 0022430 | 0022460 | FICO | 0023578 | 0023601 |
| FICO | 0019122 | 0019124 | FICO | 0020150 | 0020173 | FICO | 0021214 | 0021215 | FICO | 0022475 | 0000000 | FICO | 0023647 | 0023671 |
| FICO | 0019125 | 0019127 | FICO | 0020181 | 0020189 | FICO | 0021217 | 0021243 | FICO | 0022500 | 0022502 | FICO | 0023703 | 0023733 |
| FICO | 0019144 | 0019168 | FICO | 0020181 | 0020204 | FICO | 0021252 | 0021262 | FICO | 0022506 | 0000000 | FICO | 0023781 | 0023784 |
| FICO | 0019193 | 0019201 | FICO | 0020190 | 0020195 | FICO | 0021265 | 0021288 | FICO | 0022506 | 0022524 | FICO | 0023798 | 0023804 |
| FICO | 0019205 | 0019231 | FICO | 0020196 | 0020204 | FICO | 0021346 | 0021356 | FICO | 0022508 | 0022524 | FICO | 0023808 | 0023817 |
| FICO | 0019205 | 0019261 | FICO | 0020206 | 0020217 | FICO | 0021360 | 0021369 | FICO | 0022533 | 0022536 | FICO | 0023823 | 0023853 |
| FICO | 0019232 | 0019261 | FICO | 0020230 | 0020232 | FICO | 0021372 | 0021383 | FICO | 0022555 | 0022563 | FICO | 0023870 | 0023880 |
| FICO | 0019272 | 0019278 | FICO | 0020286 | 0020299 | FICO | 0021372 | 0021398 | FICO | 0022571 | 0022596 | FICO | 0023870 | 0023987 |
| FICO | 0019300 | 0019305 | FICO | 0020302 | 0020310 | FICO | 0021410 | 0021411 | FICO | 0022573 | 0022582 | FICO | 0023885 | 0023987 |
| FICO | 0019323 | 0019324 | FICO | 0020338 | 0020348 | FICO | 0021410 | 0021467 | FICO | 0022696 | 0022700 | FICO | 0024072 | 0024074 |
| FICO | 0019323 | 0019328 | FICO | 0020413 | 0020419 | FICO | 0021412 | 0021441 | FICO | 0022710 | 0022719 | FICO | 0024072 | 0024077 |
| FICO | 0019327 | 0019328 | FICO | 0020413 | 0020429 | FICO | 0021442 | 0021453 | FICO | 0022710 | 0022727 | FICO | 0024119 | 0024139 |
| FICO | 0019339 | 0019341 | FICO | 0020420 | 0020429 | FICO | 0021454 | 0021467 | FICO | 0022720 | 0022727 | FICO | 0024139 | 0000000 |
| FICO | 0019339 | 0019343 | FICO | 0020434 | 0020444 | FICO | 0021470 | 0021480 | FICO | 0022741 | 0022767 | FICO | 0024162 | 0024172 |
| FICO | 0019331 | 0019352 | FICO | 0020467 | 0020474 | FICO | 0021485 | 0021547 | FICO | 0022781 | 0022783 | FICO | 0024162 | 0024226 |
| FICO | 0019362 | 0019370 | FICO | 0020467 | 0020484 | FICO | 0021519 | 0021547 | FICO | 0022803 | 0022830 | FICO | 0024173 | 0024180 |
| FICO | 0019379 | 0019396 | FICO | 0020510 | 0020518 | FICO | 0021549 | 0021551 | FICO | 0022921 | 0022923 | FICO | 0024181 | 0024191 |
| FICO | 0019379 | 0019410 | FICO | 0020535 | 0020539 | FICO | 0021557 | 0021571 | FICO | 0022942 | 0022944 | FICO | 0024192 | 0024198 |
| FICO | 0019397 | 0019399 | FICO | 0020623 | 0020642 | FICO | 0021576 | 0021588 | FICO | 0022993 | 0022995 | FICO | 0024222 | 0024226 |
| FICO | 0019400 | 0019402 | FICO | 0020653 | 0020661 | FICO | 0021576 | 0021612 | FICO | 0023014 | 0023019 | FICO | 0024249 | 0024254 |
| FICO | 0019403 | 0019408 | FICO | 0020653 | 0020671 | FICO | 0021610 | 0021612 | FICO | 0023014 | 0023021 | FICO | 0024249 | 0024259 |
| FICO | 0019409 | 0019410 | FICO | 0020662 | 0020671 | | | | FICO | 0023020 | 0023021 | FICO | 0024255 | 0024259 |

*Fair Isaac Corporation v. Federal Insurance Company et al.*
*Case No. 16-cv-1054*
Rebuttal Expert Report Of W  Christopher Bakewell

**Attachment C**
Documents Received

| Prefix | Beg | End | Prefix | Beg | End | Prefix | Beg | End | Prefix | Beg | End | Prefix | Beg | End |
|--------|-----|-----|--------|-----|-----|--------|-----|-----|--------|-----|-----|--------|-----|-----|
| | Bates Stamped | | | Bates Stamped | | | Bates Stamped | | | Bates Stamped | | | Bates Stamped | |
| FICO | 0024316 | 0024320 | FICO | 0025083 | 0025084 | FICO | 0026318 | 0026324 | FICO | 0027555 | 0027556 | FICO | 0028508 | 0028510 |
| FICO | 0024316 | 0024338 | FICO | 0025086 | 0025092 | FICO | 0026327 | 0026340 | FICO | 0027563 | 0027564 | FICO | 0028511 | 0028513 |
| FICO | 0024321 | 0024326 | FICO | 0025154 | 0025157 | FICO | 0026353 | 0026355 | FICO | 0027563 | 0027612 | FICO | 0028537 | 0028546 |
| FICO | 0024327 | 0024331 | FICO | 0025217 | 0025249 | FICO | 0026417 | 0026418 | FICO | 0027565 | 0027570 | FICO | 0028649 | 0028650 |
| FICO | 0024332 | 0024338 | FICO | 0025219 | 0025249 | FICO | 0026417 | 0026420 | FICO | 0027571 | 0027579 | FICO | 0028706 | 0028709 |
| FICO | 0024345 | 0024349 | FICO | 0025272 | 0025289 | FICO | 0026419 | 0026431 | FICO | 0027627 | 0027633 | FICO | 0028719 | 0028722 |
| FICO | 0024352 | 0024356 | FICO | 0025295 | 0025311 | FICO | 0026472 | 0026475 | FICO | 0027681 | 0027693 | FICO | 0028737 | 0028739 |
| FICO | 0024352 | 0024573 | FICO | 0025329 | 0025344 | FICO | 0026524 | 0026530 | FICO | 0027681 | 0027697 | FICO | 0028737 | 0028741 |
| FICO | 0024357 | 0024361 | FICO | 0025329 | 0025352 | FICO | 0026549 | 0026561 | FICO | 0027694 | 0027697 | FICO | 0028740 | 0028741 |
| FICO | 0024362 | 0024367 | FICO | 0025349 | 0025350 | FICO | 0026667 | 0026669 | FICO | 0027700 | 0027724 | FICO | 0028756 | 0028759 |
| FICO | 0024368 | | FICO | 0025351 | 0025352 | FICO | 0026691 | 0026702 | FICO | 0027740 | 0027755 | FICO | 0028756 | 0028769 |
| FICO | 0024369 | 0024374 | FICO | 0025357 | 0025368 | FICO | 0026711 | 0026713 | FICO | 0027765 | 0027766 | FICO | 0028779 | 0028780 |
| FICO | 0024375 | 0024380 | FICO | 0025447 | 0025462 | FICO | 0026711 | 0026733 | FICO | 0027777 | 0027788 | FICO | 0028786 | 0028789 |
| FICO | 0024381 | 0024386 | FICO | 0025453 | 0025462 | FICO | 0026733 | | FICO | 0027777 | 0027790 | FICO | 0028802 | 0028823 |
| FICO | 0024387 | 0024390 | FICO | 0025498 | 0025532 | FICO | 0026756 | 0026759 | FICO | 0027789 | 0027790 | FICO | 0028852 | 0028863 |
| FICO | 0024391 | 0024395 | FICO | 0025521 | 0025532 | FICO | 0026806 | 0026810 | FICO | 0027801 | 0027804 | FICO | 0028873 | 0028879 |
| FICO | 0024396 | 0024400 | FICO | 0025547 | 0025580 | FICO | 0026809 | 0026810 | FICO | 0027815 | 0027822 | FICO | 0028873 | 0028916 |
| FICO | 0024401 | 0024405 | FICO | 0025667 | 0025679 | FICO | 0026843 | 0026844 | FICO | 0027878 | 0027881 | FICO | 0028919 | 0028923 |
| FICO | 0024406 | 0024409 | FICO | 0025689 | | FICO | 0026849 | 0026850 | FICO | 0027886 | 0027891 | FICO | 0028930 | 0028931 |
| FICO | 0024410 | 0024412 | FICO | 0025702 | 0025721 | FICO | 0026860 | 0026925 | FICO | 0027898 | 0027911 | FICO | 0028947 | 0000000 |
| FICO | 0024413 | 0024417 | FICO | 0025751 | 0025766 | FICO | 0026938 | 0026939 | FICO | 0027918 | 0027939 | FICO | 0028988 | 0028994 |
| FICO | 0024418 | 0024422 | FICO | 0025770 | 0025806 | FICO | 0026955 | 0026962 | FICO | 0027918 | 0027943 | FICO | 0029020 | 0000000 |
| FICO | 0024423 | 0024543 | FICO | 0025770 | 0025838 | FICO | 0026975 | 0026978 | FICO | 0027940 | 0027943 | FICO | 0029072 | 0029075 |
| FICO | 0024544 | 0024548 | FICO | 0025835 | 0025838 | FICO | 0027034 | 0027036 | FICO | 0027980 | 0028001 | FICO | 0029109 | 0029110 |
| FICO | 0024549 | 0024553 | FICO | 0025851 | 0025861 | FICO | 0027098 | 0027108 | FICO | 0027991 | 0028001 | FICO | 0029113 | 0029115 |
| FICO | 0024554 | 0024559 | FICO | 0025865 | 0025884 | FICO | 0027110 | 0027111 | FICO | 0028104 | 0028106 | FICO | 0029113 | 0029117 |
| FICO | 0024560 | 0024564 | FICO | 0025891 | 0025898 | FICO | 0027120 | 0027129 | FICO | 0028104 | 0028113 | FICO | 0029116 | 0029117 |
| FICO | 0024565 | 0024570 | FICO | 0025900 | 0025901 | FICO | 0027132 | 0027138 | FICO | 0028107 | 0028113 | FICO | 0029131 | 0029134 |
| FICO | 0024571 | 0024573 | FICO | 0025916 | 0025920 | FICO | 0027142 | 0027143 | FICO | 0028119 | 0028126 | FICO | 0029131 | 0029136 |
| FICO | 0024681 | 0024682 | FICO | 0025922 | 0025942 | FICO | 0027151 | 0027154 | FICO | 0028167 | 0028170 | FICO | 0029135 | 0029136 |
| FICO | 0024699 | 0024724 | FICO | 0025946 | 0025957 | FICO | 0027188 | 0027191 | FICO | 0028178 | 0028179 | FICO | 0029160 | 0029172 |
| FICO | 0024734 | 0024741 | FICO | 0025979 | 0026016 | FICO | 0027216 | 0027227 | FICO | 0028186 | 0028198 | FICO | 0029189 | 0029192 |
| FICO | 0024734 | 0024754 | FICO | 0026028 | 0026030 | FICO | 0027216 | 0027249 | FICO | 0028239 | 0028267 | FICO | 0029196 | 0029199 |
| FICO | 0024742 | 0024747 | FICO | 0026028 | 0026032 | FICO | 0027228 | 0027249 | FICO | 0028308 | 0028310 | FICO | 0029234 | 0029235 |
| FICO | 0024748 | 0024754 | FICO | 0026031 | 0026052 | FICO | 0027258 | 0027259 | FICO | 0028315 | 0028343 | FICO | 0029234 | 0029253 |
| FICO | 0024816 | 0024820 | FICO | 0026052 | 0026054 | FICO | 0027304 | 0027307 | FICO | 0028416 | 0028417 | FICO | 0029262 | 0029267 |
| FICO | 0024822 | 0024869 | FICO | 0026132 | 0026142 | FICO | 0027321 | 0027339 | FICO | 0028425 | 0028429 | FICO | 0029275 | 0029276 |
| FICO | 0024921 | 0024927 | FICO | 0026132 | 0026144 | FICO | 0027360 | 0027370 | FICO | 0028437 | 0028438 | FICO | 0029309 | 0029347 |
| FICO | 0024963 | 0024964 | FICO | 0026173 | 0026206 | FICO | 0027360 | 0027378 | FICO | 0028465 | 0028467 | FICO | 0029309 | 0029352 |
| FICO | 0024997 | 0025014 | FICO | 0026241 | 0026242 | FICO | 0027371 | | FICO | 0028486 | 0028487 | FICO | 0029355 | 0029356 |
| FICO | 0025020 | 0025034 | FICO | 0026245 | 0026258 | FICO | 0027372 | | FICO | 0028505 | 0028507 | FICO | 0029366 | 0029373 |
| FICO | 0025047 | 0025065 | FICO | 0026245 | 0026264 | FICO | 0027422 | 0027474 | FICO | 0028505 | 0028513 | FICO | 0029406 | 0029444 |
| FICO | 0025075 | 0025076 | FICO | 0026270 | 0026287 | FICO | 0027500 | 0027509 | FICO | 0028508 | 0028510 | FICO | 0029443 | 0029444 |
| FICO | 0025078 | 0025081 | FICO | 0026293 | 0026298 | FICO | 0027524 | 0027531 | FICO | 0028511 | 0028513 | FICO | 0029521 | 0029532 |

*CONFIDENTIAL - ATTORNEYS EYES ONLY*

*Fair Isaac Corporation v. Federal Insurance Company et al.*
*Case No. 16-cv-1054*
Rebuttal Expert Report Of W Christopher Bakewell

**Attachment C**
Documents Received

| Prefix | Beg | End | Prefix | Beg | End | Prefix | Beg | End | Prefix | Beg | End | Prefix | Beg | End |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Bates Stamped | | | Bates Stamped | | | Bates Stamped | | | Bates Stamped | | | Bates Stamped | |
| FICO | 0029536 | 0029555 | FICO | 0030754 | 0030778 | FICO | 0031946 | 0031949 | FICO | 0032876 | 0032891 | FICO | 0034126 | 0034129 |
| FICO | 0029573 | 0029574 | FICO | 0030779 | 0030788 | FICO | 0032005 | 0032009 | FICO | 0032907 | 0032908 | FICO | 0034149 | 0034151 |
| FICO | 0029581 | 0029584 | FICO | 0030789 | 0030814 | FICO | 0032005 | 0032024 | FICO | 0032916 | 0032917 | FICO | 0034156 | 0034157 |
| FICO | 0029613 | 0029630 | FICO | 0030815 | 0030837 | FICO | 0032010 | 0032024 | FICO | 0032918 | 0032919 | FICO | 0034169 | 0034175 |
| FICO | 0029613 | 0029689 | FICO | 0030838 | 0030852 | FICO | 0032037 | 0032057 | FICO | 0032935 | 0032945 | FICO | 0034200 | 0000000 |
| FICO | 0029631 | 0029635 | FICO | 0030857 | 0030878 | FICO | 0032094 | 0032102 | FICO | 0032951 | 0032962 | FICO | 0034232 | 0034247 |
| FICO | 0029636 | 0029638 | FICO | 0030883 | 0030892 | FICO | 0032136 | 0032137 | FICO | 0032964 | 0032968 | FICO | 0034253 | 0034255 |
| FICO | 0029650 | 0029689 | FICO | 0030908 | 0030911 | FICO | 0032141 | 0032142 | FICO | 0033028 | 0033029 | FICO | 0034253 | 0034261 |
| FICO | 0029693 | 0029695 | FICO | 0030923 | 0030924 | FICO | 0032147 | 0032164 | FICO | 0033081 | 0033106 | FICO | 0034293 | 0034296 |
| FICO | 0029730 | 0029732 | FICO | 0030989 | 0030991 | FICO | 0032192 | 0032193 | FICO | 0033125 | 0033140 | FICO | 0034306 | 0000000 |
| FICO | 0029746 | 0029752 | FICO | 0030993 | 0031027 | FICO | 0032197 | 0032262 | FICO | 0033152 | 0033153 | FICO | 0034311 | 0034312 |
| FICO | 0029763 | 0029764 | FICO | 0031042 | 0031043 | FICO | 0032299 | 0032317 | FICO | 0033199 | 0033200 | FICO | 0034317 | 0034320 |
| FICO | 0029782 | 0029786 | FICO | 0031042 | 0031044 | FICO | 0032331 | 0032332 | FICO | 0033208 | 0033211 | FICO | 0034328 | 0034333 |
| FICO | 0029867 | 0029880 | FICO | 0031090 | 0031110 | FICO | 0032357 | 0032361 | FICO | 0033208 | 0033220 | FICO | 0034328 | 0034339 |
| FICO | 0029885 | 0029886 | FICO | 0031113 | | FICO | 0032385 | 0000000 | FICO | 0033224 | 0033259 | FICO | 0034343 | 0034370 |
| FICO | 0029966 | 0029987 | FICO | 0031132 | 0031173 | FICO | 0032385 | 0032444 | FICO | 0033227 | 0033248 | FICO | 0034402 | 0034404 |
| FICO | 0030012 | 0030016 | FICO | 0031158 | 0031171 | FICO | 0032420 | 0032429 | FICO | 0033270 | 0033274 | FICO | 0034422 | 0034434 |
| FICO | 0030055 | | FICO | 0031172 | 0031173 | FICO | 0032430 | 0032444 | FICO | 0033270 | 0033276 | FICO | 0034422 | 0034436 |
| FICO | 0030100 | 0030101 | FICO | 0031184 | 0031201 | FICO | 0032454 | 0032457 | FICO | 0033281 | 0033283 | FICO | 0034442 | 0034466 |
| FICO | 0030100 | 0030105 | FICO | 0031184 | 0031218 | FICO | 0032476 | 0032485 | FICO | 0033281 | 0033300 | FICO | 0034469 | 0034513 |
| FICO | 0030119 | 0030207 | FICO | 0031202 | 0031218 | FICO | 0032476 | 0032496 | FICO | 0033288 | 0033300 | FICO | 0034480 | 0034485 |
| FICO | 0030195 | 0030207 | FICO | 0031304 | 0031329 | FICO | 0032500 | 0032501 | FICO | 0033380 | 0033384 | FICO | 0034514 | 0034519 |
| FICO | 0030254 | 0030264 | FICO | 0031304 | 0031361 | FICO | 0032505 | 0032506 | FICO | 0033481 | 0033528 | FICO | 0034514 | 0034556 |
| FICO | 0030254 | 0030286 | FICO | 0031330 | 0031349 | FICO | 0032505 | 0032513 | FICO | 0033594 | 0033595 | FICO | 0034530 | 0034530 |
| FICO | 0030265 | 0030274 | FICO | 0031350 | 0031361 | FICO | 0032511 | 0032513 | FICO | 0033599 | 0033610 | FICO | 0034531 | 0034544 |
| FICO | 0030275 | 0030286 | FICO | 0031386 | 0031406 | FICO | 0032528 | 0032540 | FICO | 0033664 | 0033681 | FICO | 0034545 | 0034556 |
| FICO | 0030289 | 0030297 | FICO | 0031415 | 0031417 | FICO | 0032539 | 0032540 | FICO | 0033714 | 0033716 | FICO | 0034562 | 0034594 |
| FICO | 0030310 | 0030312 | FICO | 0031415 | 0031429 | FICO | 0032551 | 0032559 | FICO | 0033731 | 0033745 | FICO | 0034601 | 0034604 |
| FICO | 0030352 | | FICO | 0031418 | 0031429 | FICO | 0032569 | 0032573 | FICO | 0033731 | 0033767 | FICO | 0034614 | 0034631 |
| FICO | 0030352 | 0030356 | FICO | 0031449 | 0031462 | FICO | 0032620 | 0032630 | FICO | 0033746 | 0033762 | FICO | 0034634 | 0034637 |
| FICO | 0030364 | 0030376 | FICO | 0031473 | 0031480 | FICO | 0032620 | 0032636 | FICO | 0033763 | 0033767 | FICO | 0034649 | 0034650 |
| FICO | 0030379 | 0030380 | FICO | 0031541 | 0031548 | FICO | 0032648 | 0032649 | FICO | 0033793 | 0033803 | FICO | 0034654 | 0034656 |
| FICO | 0030386 | 0030388 | FICO | 0031555 | 0031629 | FICO | 0032658 | 0032665 | FICO | 0033836 | 0033841 | FICO | 0034663 | 0034666 |
| FICO | 0030392 | 0030401 | FICO | 0031622 | 0031629 | FICO | 0032682 | 0032683 | FICO | 0033843 | 0033851 | FICO | 0034971 | 0034990 |
| FICO | 0030392 | 0030425 | FICO | 0031653 | 0031777 | FICO | 0032690 | 0032691 | FICO | 0033863 | 0033876 | FICO | 0035012 | 0035015 |
| FICO | 0030431 | 0030435 | FICO | 0031758 | 0031777 | FICO | 0032690 | 0032716 | FICO | 0033922 | 0033935 | FICO | 0035017 | 0035022 |
| FICO | 0030445 | 0030469 | FICO | 0031816 | | FICO | 0032724 | 0032746 | FICO | 0033922 | 0033995 | FICO | 0035032 | 0035040 |
| FICO | 0030448 | 0030449 | FICO | 0031855 | 0031864 | FICO | 0032750 | 0032755 | FICO | 0033936 | 0033940 | FICO | 0035043 | 0035053 |
| FICO | 0030571 | 0030589 | FICO | 0031855 | 0031884 | FICO | 0032782 | 0032783 | FICO | 0034001 | 0034006 | FICO | 0035112 | 0035115 |
| FICO | 0030622 | 0030627 | FICO | 0031865 | 0031879 | FICO | 0032805 | 0032815 | FICO | 0034029 | 0034074 | FICO | 0035154 | 0035156 |
| FICO | 0030661 | 0030662 | FICO | 0031880 | 0031882 | FICO | 0032822 | 0032837 | FICO | 0034058 | 0034074 | FICO | 0035160 | 0035167 |
| FICO | 0030674 | 0030678 | FICO | 0031894 | 0031895 | FICO | 0032845 | 0032847 | FICO | 0034084 | 0034092 | FICO | 0035173 | 0035188 |
| FICO | 0030734 | 0030852 | FICO | 0031910 | 0031911 | FICO | 0032845 | 0032859 | FICO | 0034113 | 0034115 | FICO | 0035173 | 0035196 |
| FICO | 0030741 | 0030753 | FICO | 0031919 | 0031928 | FICO | 0032873 | 0032893 | FICO | 0034113 | 0034118 | FICO | 0035228 | 0035229 |

*CONFIDENTIAL - ATTORNEYS EYES ONLY*

*Fair Isaac Corporation v. Federal Insurance Company et al.*
Case No. 16-cv-1054
Rebuttal Expert Report Of W  Christopher Bakewell

**Attachment C**
Documents Received

| | Bates Stamped | | | Bates Stamped | | | Bates Stamped | | | Bates Stamped | | | Bates Stamped | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Prefix | Beg | End | Prefix | Beg | End | Prefix | Beg | End | Prefix | Beg | End | Prefix | Beg | End |
| FICO | 0035236 | 0035262 | FICO | 0036679 | 0036682 | FICO | 0037725 | 0037726 | FICO | 0038642 | 0038671 | FICO | 0040037 | 0040040 |
| FICO | 0035236 | 0035267 | FICO | 0036730 | 0036744 | FICO | 0037729 | 0037733 | FICO | 0038661 | 0038664 | FICO | 0040057 | 0040100 |
| FICO | 0035263 | 0035265 | FICO | 0036755 | 0036757 | FICO | 0037746 | 0037749 | FICO | 0038665 | 0038668 | FICO | 0040057 | 0040133 |
| FICO | 0035266 | 0035267 | FICO | 0036755 | 0036760 | FICO | 0037761 | 0037762 | FICO | 0038677 | 0038690 | FICO | 0040101 | 0040133 |
| FICO | 0035299 | | FICO | 0036931 | 0036932 | FICO | 0037781 | 0037793 | FICO | 0038860 | 0038883 | FICO | 0040160 | 0040161 |
| FICO | 0035299 | 0035302 | FICO | 0036938 | 0036940 | FICO | 0037842 | 0037849 | FICO | 0038863 | 0038883 | FICO | 0040204 | 0040236 |
| FICO | 0035314 | 0035318 | FICO | 0036952 | 0036955 | FICO | 0037865 | 0037867 | FICO | 0038927 | 0038933 | FICO | 0040218 | 0040236 |
| FICO | 0035492 | 0035515 | FICO | 0036958 | 0036978 | FICO | 0037923 | 0037925 | FICO | 0038935 | 0000000 | FICO | 0040286 | 0040290 |
| FICO | 0035496 | 0035515 | FICO | 0036958 | 0036993 | FICO | 0037930 | 0037947 | FICO | 0038941 | 0038946 | FICO | 0040306 | 0040308 |
| FICO | 0035558 | 0035562 | FICO | 0036981 | 0036993 | FICO | 0037934 | 0037939 | FICO | 0039127 | 0039129 | FICO | 0040311 | 0040313 |
| FICO | 0035567 | 0035569 | FICO | 0036998 | 0037018 | FICO | 0037951 | 0037965 | FICO | 0039239 | 0039240 | FICO | 0040319 | 0040322 |
| FICO | 0035600 | | FICO | 0037031 | 0037034 | FICO | 0037968 | 0037985 | FICO | 0039239 | 0039252 | FICO | 0040337 | 0040340 |
| FICO | 0035612 | 0035615 | FICO | 0037044 | 0037047 | FICO | 0037979 | 0037981 | FICO | 0039241 | 0039252 | FICO | 0040348 | 0040372 |
| FICO | 0035676 | 0035699 | FICO | 0037053 | 0037056 | FICO | 0037982 | 0037985 | FICO | 0039277 | 0039283 | FICO | 0040382 | 0040383 |
| FICO | 0035713 | 0035725 | FICO | 0037084 | 0037098 | FICO | 0038015 | 0038061 | FICO | 0039305 | 0039327 | FICO | 0040457 | 0040461 |
| FICO | 0035744 | 0035747 | FICO | 0037121 | 0037123 | FICO | 0038022 | 0038024 | FICO | 0039341 | 0039349 | FICO | 0040475 | 0040478 |
| FICO | 0035756 | 0035770 | FICO | 0037135 | 0037149 | FICO | 0038025 | 0038031 | FICO | 0039364 | 0039367 | FICO | 0040481 | 0040482 |
| FICO | 0035756 | 0035775 | FICO | 0037135 | 0037202 | FICO | 0038034 | 0038038 | FICO | 0039371 | 0039374 | FICO | 0040498 | 0040499 |
| FICO | 0035779 | 0035783 | FICO | 0037150 | 0037172 | FICO | 0038039 | 0038045 | FICO | 0039392 | 0039414 | FICO | 0040506 | 0040507 |
| FICO | 0035779 | 0035787 | FICO | 0037276 | 0037279 | FICO | 0038048 | 0038061 | FICO | 0039437 | 0039441 | FICO | 0040522 | 0040532 |
| FICO | 0035815 | 0035817 | FICO | 0037299 | 0037300 | FICO | 0038111 | 0038112 | FICO | 0039447 | 0039456 | FICO | 0040831 | 0040870 |
| FICO | 0035896 | 0035901 | FICO | 0037299 | 0037310 | FICO | 0038161 | 0038165 | FICO | 0039464 | 0039495 | FICO | 0040918 | 0040968 |
| FICO | 0035910 | 0035917 | FICO | 0037330 | 0037334 | FICO | 0038161 | 0038334 | FICO | 0039468 | 0000000 | FICO | 0040976 | 0040977 |
| FICO | 0035914 | | FICO | 0037332 | 0037334 | FICO | 0038219 | 0038222 | FICO | 0039511 | 0039514 | FICO | 0041000 | 0041030 |
| FICO | 0035919 | 0035941 | FICO | 0037354 | 0037357 | FICO | 0038266 | 0038269 | FICO | 0039511 | 0039516 | FICO | 0041040 | 0041059 |
| FICO | 0036083 | 0036086 | FICO | 0037360 | 0037363 | FICO | 0038294 | 0038295 | FICO | 0039526 | 0039529 | FICO | 0041066 | 0041174 |
| FICO | 0036093 | 0036094 | FICO | 0037386 | 0037394 | FICO | 0038301 | 0038303 | FICO | 0039539 | 0039567 | FICO | 0041176 | 0041204 |
| FICO | 0036097 | 0036099 | FICO | 0037390 | 0037394 | FICO | 0038328 | 0038331 | FICO | 0039539 | 0039583 | FICO | 0041209 | 0041305 |
| FICO | 0036107 | 0036109 | FICO | 0037397 | 0037399 | FICO | 0038343 | 0038346 | FICO | 0039568 | 0039580 | FICO | 0041408 | 0041436 |
| FICO | 0036125 | 0036127 | FICO | 0037408 | 0037433 | FICO | 0038353 | 0038356 | FICO | 0039608 | 0039610 | FICO | 0041438 | 0041673 |
| FICO | 0036163 | 0036166 | FICO | 0037408 | 0037474 | FICO | 0038366 | 0038369 | FICO | 0039629 | 0039631 | FICO | 0041675 | 0041691 |
| FICO | 0036170 | 0036193 | FICO | 0037434 | 0037446 | FICO | 0038388 | 0038390 | FICO | 0039644 | 0039649 | FICO | 0041732 | 0041811 |
| FICO | 0036212 | 0036220 | FICO | 0037451 | 0037474 | FICO | 0038399 | 0038404 | FICO | 0039665 | 0039666 | FICO | 0041830 | 0041992 |
| FICO | 0036231 | 0036234 | FICO | 0037491 | 0037492 | FICO | 0038410 | 0038411 | FICO | 0039717 | 0039728 | FICO | 0042021 | 0042100 |
| FICO | 0036305 | 0036308 | FICO | 0037497 | 0037514 | FICO | 0038412 | 0038423 | FICO | 0039762 | 0039765 | FICO | 0042212 | 0042264 |
| FICO | 0036376 | 0036379 | FICO | 0037497 | 0037520 | FICO | 0038446 | 0038449 | FICO | 0039762 | 0039769 | FICO | 0042267 | 0042284 |
| FICO | 0036510 | 0036527 | FICO | 0037546 | 0037549 | FICO | 0038456 | 0038457 | FICO | 0039766 | 0039769 | FICO | 0042267 | 0042414 |
| FICO | 0036540 | 0036579 | FICO | 0037546 | 0037585 | FICO | 0038482 | 0038489 | FICO | 0039772 | 0039779 | FICO | 0042487 | 0042521 |
| FICO | 0036583 | 0036597 | FICO | 0037550 | 0037567 | FICO | 0038508 | 0038514 | FICO | 0039781 | 0039792 | FICO | 0042571 | 0042604 |
| FICO | 0036583 | 0036611 | FICO | 0037568 | 0037585 | FICO | 0038581 | 0038600 | FICO | 0039844 | 0039846 | FICO | 0042611 | 0042669 |
| FICO | 0036598 | 0036611 | FICO | 0037588 | | FICO | 0038605 | 0038608 | FICO | 0039920 | 0039923 | FICO | 0042675 | 0042705 |
| FICO | 0036618 | 0036638 | FICO | 0037596 | 0037597 | FICO | 0038605 | 0038612 | FICO | 0039944 | 0039946 | FICO | 0042747 | 0042813 |
| FICO | 0036641 | 0036642 | FICO | 0037663 | 0037664 | FICO | 0038609 | 0038612 | FICO | 0039963 | 0039965 | FICO | 0042822 | 0042832 |
| FICO | 0036653 | 0036657 | FICO | 0037675 | 0037678 | FICO | 0038642 | 0038660 | FICO | 0040014 | 0040026 | FICO | 0042840 | 0042848 |

*Fair Isaac Corporation v. Federal Insurance Company et al.*
*Case No. 16-cv-1054*
Rebuttal Expert Report Of W  Christopher Bakewell

**Attachment C**
Documents Received

| Prefix | Beg | End | Prefix | Beg | End | Prefix | Beg | End | Prefix | Beg | End | Prefix | Beg | End |
|--------|-----|-----|--------|-----|-----|--------|-----|-----|--------|-----|-----|--------|-----|-----|
| FICO | 0042852 | 0042864 | FICO | 0044991 | 0045010 | FICO | 0047471 | 0047498 | FICO | 0049436 | 0049451 | FICO | 0052142 | 0052174 |
| FICO | 0042870 | 0042986 | FICO | 0045018 | 0045047 | FICO | 0047517 | 0047529 | FICO | 0049455 | 0049481 | FICO | 0052142 | 0052239 |
| FICO | 0042989 | 0043013 | FICO | 0045053 | 0045106 | FICO | 0047537 | 0047557 | FICO | 0049495 | 0049500 | FICO | 0052175 | 0052239 |
| FICO | 0043016 | 0043129 | FICO | 0045116 | 0045142 | FICO | 0047573 | 0047610 | FICO | 0049549 | 0049612 | FICO | 0052258 | 0052320 |
| FICO | 0043095 | 0043096 | FICO | 0045152 | 0045168 | FICO | 0047613 | 0047615 | FICO | 0049616 | 0049637 | FICO | 0052282 | 0052320 |
| FICO | 0043138 | 0043140 | FICO | 0045172 | 0045184 | FICO | 0047648 | 0047656 | FICO | 0049693 | 0049705 | FICO | 0052329 | 0052364 |
| FICO | 0043142 | 0043247 | FICO | 0045191 | 0045263 | FICO | 0047689 | 0047733 | FICO | 0049718 | 0049743 | FICO | 0052329 | 0052438 |
| FICO | 0043249 | 0043269 | FICO | 0045275 | 0045292 | FICO | 0047738 | 0047766 | FICO | 0049762 | 0049789 | FICO | 0052538 | 0052570 |
| FICO | 0043345 | 0043396 | FICO | 0045313 | 0045394 | FICO | 0047770 | 0047873 | FICO | 0049812 | 0049897 | FICO | 0052649 | 0057179 |
| FICO | 0043408 | 0043446 | FICO | 0045400 | 0045411 | FICO | 0047819 | 0047823 | FICO | 0049905 | 0049911 | FICO | 0057181 | 0057205 |
| FICO | 0043478 | 0043512 | FICO | 0045415 | 0045463 | FICO | 0047876 | 0047877 | FICO | 0049939 | 0049963 | FICO | 0057206 | 0057222 |
| FICO | 0043534 | 0043544 | FICO | 0045509 | 0045658 | FICO | 0047879 | 0047922 | FICO | 0049976 | 0050004 | FICO | 0057207 | 0057260 |
| FICO | 0043534 | 0043645 | FICO | 0045675 | 0045744 | FICO | 0047959 | 0047979 | FICO | 0050006 | 0050026 | FICO | 0057261 | 0057273 |
| FICO | 0043650 | 0043660 | FICO | 0045746 | 0045809 | FICO | 0047981 | 0048106 | FICO | 0050028 | 0050062 | FICO | 0057262 | 0057273 |
| FICO | 0043667 | 0043718 | FICO | 0045826 | 0045887 | FICO | 0048083 | 0048106 | FICO | 0050068 | 0050083 | FICO | 0057274 | 0057275 |
| FICO | 0043742 | 0043761 | FICO | 0045893 | 0045894 | FICO | 0048109 | 0048133 | FICO | 0050087 | 0050089 | FICO | 0057280 | 0057306 |
| FICO | 0043765 | 0043783 | FICO | 0045924 | 0045989 | FICO | 0048137 | 0048164 | FICO | 0050095 | 0050142 | FICO | 0057309 | 0057310 |
| FICO | 0043813 | 0043845 | FICO | 0046003 | 0046044 | FICO | 0048167 | 0048226 | FICO | 0050146 | 0050178 | FICO | 0057386 | 0057412 |
| FICO | 0043861 | 0043890 | FICO | 0046056 | 0046077 | FICO | 0048229 | 0048272 | FICO | 0050177 | 0050178 | FICO | 0057876 | 0057885 |
| FICO | 0043901 | 0043923 | FICO | 0046083 | 0046094 | FICO | 0048284 | 0048297 | FICO | 0050186 | 0050208 | FICO | 0057886 | 0057920 |
| FICO | 0043935 | 0043953 | FICO | 0046103 | 0046137 | FICO | 0048302 | 0048303 | FICO | 0050283 | 0050343 | FICO | 0057921 | 0059475 |
| FICO | 0043978 | 0043995 | FICO | 0046143 | 0046158 | FICO | 0048306 | 0048326 | FICO | 0050347 | 0050373 | FICO | 0059479 | 0059483 |
| FICO | 0044013 | 0044034 | FICO | 0046165 | 0046252 | FICO | 0048334 | 0048364 | FICO | 0050394 | 0050448 | FICO | 0059499 | 0000000 |
| FICO | 0044057 | 0044079 | FICO | 0046281 | 0046323 | FICO | 0048369 | 0048403 | FICO | 0050462 | 0050467 | FICO | 0059600 | 0059619 |
| FICO | 0044084 | 0044151 | FICO | 0046331 | 0046370 | FICO | 0048416 | 0048495 | FICO | 0050470 | 0050513 | FICO | 0059905 | 0059906 |
| FICO | 0044154 | 0044165 | FICO | 0046406 | 0046430 | FICO | 0048444 | 0048495 | FICO | 0050526 | 0050529 | FICO | 0059914 | 0059923 |
| FICO | 0044156 | 0044165 | FICO | 0046438 | 0046539 | FICO | 0048518 | 0048538 | FICO | 0050551 | 0050594 | FICO | 0059964 | 0059965 |
| FICO | 0044178 | 0044192 | FICO | 0046488 | 0046498 | FICO | 0048541 | 0048613 | FICO | 0050620 | 0050729 | FICO | 0060101 | 0060103 |
| FICO | 0044291 | 0044323 | FICO | 0046546 | 0046674 | FICO | 0048622 | 0048633 | FICO | 0050936 | 0050974 | FICO | 0060124 | 0060127 |
| FICO | 0044356 | 0044429 | FICO | 0046687 | 0046713 | FICO | 0048637 | 0048708 | FICO | 0050982 | 0051050 | FICO | 0060154 | 0060188 |
| FICO | 0044433 | 0044463 | FICO | 0046722 | 0046732 | FICO | 0048717 | 0048736 | FICO | 0051064 | 0051360 | FICO | 0060365 | 0000000 |
| FICO | 0044480 | 0044496 | FICO | 0046758 | 0046796 | FICO | 0048738 | 0048779 | FICO | 0051079 | 0051082 | FICO | 0060368 | 0000000 |
| FICO | 0044503 | 0044587 | FICO | 0046844 | 0046889 | FICO | 0048789 | 0048791 | FICO | 0051313 | 0051330 | FICO | 0060371 | 0060377 |
| FICO | 0044604 | 0044624 | FICO | 0046896 | 0046909 | FICO | 0048802 | 0048871 | FICO | 0051331 | 0051360 | FICO | 0060383 | 0060384 |
| FICO | 0044628 | 0044653 | FICO | 0046913 | 0046977 | FICO | 0048954 | 0048992 | FICO | 0051391 | 0051454 | FICO | 0060391 | 0000000 |
| FICO | 0044655 | 0044662 | FICO | 0046929 | 0046958 | FICO | 0048996 | 0048997 | FICO | 0051468 | 0051475 | FICO | 0060402 | 0060404 |
| FICO | 0044690 | 0044726 | FICO | 0046992 | 0046996 | FICO | 0049014 | 0049017 | FICO | 0051526 | 0051566 | FICO | 0060409 | 0060410 |
| FICO | 0044750 | 0044801 | FICO | 0047097 | 0047131 | FICO | 0049020 | 0049159 | FICO | 0051602 | 0051627 | FICO | 0060417 | 0060419 |
| FICO | 0044806 | 0044823 | FICO | 0047133 | 0047190 | FICO | 0049225 | 0049270 | FICO | 0051705 | 0051706 | FICO | 0060421 | 0060426 |
| FICO | 0044832 | 0044879 | FICO | 0047193 | 0047202 | FICO | 0049283 | 0049285 | FICO | 0051737 | 0051749 | FICO | 0060434 | 0060436 |
| FICO | 0044845 | 0044858 | FICO | 0047211 | 0047217 | FICO | 0049288 | 0049293 | FICO | 0051759 | 0051785 | FICO | 0060445 | 0060448 |
| FICO | 0044885 | 0044906 | FICO | 0047220 | 0047297 | FICO | 0049299 | 0049434 | FICO | 0052005 | 0052047 | FICO | 0060477 | 0060482 |
| FICO | 0044919 | 0044948 | FICO | 0047303 | 0047315 | FICO | 0049316 | 0049333 | FICO | 0052062 | 0052063 | FICO | 0060515 | 0060517 |
| FICO | 0044951 | 0044962 | FICO | 0047325 | 0047455 | FICO | 0049363 | 0049429 | FICO | 0052081 | 0052093 | FICO | 0060687 | 0060692 |

*CONFIDENTIAL - ATTORNEYS  EYES ONLY*

*Fair Isaac Corporation v. Federal Insurance Company et al.*
Case No. 16-cv-1054
Rebuttal Expert Report Of W  Christopher Bakewell

**Attachment C**
Documents Received

| Prefix | Beg | End | Prefix | Beg | End | Prefix | Beg | End | Prefix | Beg | End | Prefix | Beg | End |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FICO | 0060699 | 0060701 | FICO | 0053372 | 0053521 | FICO | 0058298 | 0058304 | ORCL_FICO | 00000036 | 00000038 | ORCL_FICO | 00000149 | 00000153 |
| FICO | 0060705 | | FICO | 0053522 | 0053662 | FICO | 0058305 | 0058347 | ORCL_FICO | 00000039 | 00000039 | ORCL_FICO | 00000153 | 00000155 |
| FICO | 0060837 | 0060841 | FICO | 0053663 | 0053811 | FICO | 0058348 | 0058507 | ORCL_FICO | 00000040 | 00000041 | ORCL_FICO | 00000156 | 00000157 |
| FICO | 0060977 | 0060979 | FICO | 0053812 | 0053959 | FICO | 0058508 | 0058515 | ORCL_FICO | 00000042 | 00000042 | ORCL_FICO | 00000158 | 00000159 |
| FICO | 0060990 | 0060992 | FICO | 0053960 | 0054091 | FICO | 0058517 | 0058588 | ORCL_FICO | 00000043 | | ORCL_FICO | 00000160 | |
| FICO | 0061169 | 0061171 | FICO | 0054092 | 0054227 | FICO | 0058589 | 0058764 | ORCL_FICO | 00000044 | 00000046 | ORCL_FICO | 00000161 | 00000161 |
| FICO | 0061244 | 0061246 | FICO | 0054228 | 0054368 | FICO | 0058765 | 0058784 | ORCL_FICO | 00000047 | | ORCL_FICO | 00000162 | 00000166 |
| FICO | 0061274 | 0061296 | FICO | 0054369 | 0054511 | FICO | 0058785 | 0058859 | ORCL_FICO | 00000048 | | ORCL_FICO | 00000167 | |
| FICO | 0061350 | 0061351 | FICO | 0054512 | 0054653 | FICO | 0058860 | 0058927 | ORCL_FICO | 00000049 | | ORCL_FICO | 00000168 | |
| FICO | 0061365 | | FICO | 0054654 | 0054951 | FICO | 0058928 | 0059002 | ORCL_FICO | 00000050 | | ORCL_FICO | 00000169 | 00000170 |
| FICO | 0061367 | | FICO | 0054952 | 0055171 | FICO | 0059003 | 0059085 | ORCL_FICO | 00000051 | | ORCL_FICO | 00000171 | 00000173 |
| FICO | 0061378 | 0061379 | FICO | 0055172 | 0055400 | FICO | 0059086 | 0059163 | ORCL_FICO | 00000052 | 00000053 | ORCL_FICO | 00000174 | 00000176 |
| FICO | 0061389 | 0061394 | FICO | 0055401 | 0055484 | FICO | 0059164 | 0059399 | ORCL_FICO | 00000054 | 00000055 | ORCL_FICO | 00000176 | 00000177 |
| FICO | 0061397 | 0061398 | FICO | 0055485 | 0055611 | FICO | 0059400 | 0059474 | ORCL_FICO | 00000056 | 00000059 | ORCL_FICO | 00000178 | 00000179 |
| FICO | 0061402 | 0061403 | FICO | 0055612 | 0055742 | FICO | 0060154 | 0060185 | ORCL_FICO | 00000059 | 00000063 | ORCL_FICO | 00000180 | 00000182 |
| FICO | 0061434 | 0061439 | FICO | 0055743 | 0055882 | FICO | 0060186 | 0060188 | ORCL_FICO | 00000064 | | ORCL_FICO | 00000183 | |
| FICO | 0061450 | 0061453 | FICO | 0055883 | 0056031 | FICO | 0060371 | 0060376 | ORCL_FICO | 00000065 | 00000067 | ORCL_FICO | 00000184 | |
| FICO | 0061480 | | FICO | 0056032 | 0056182 | FICO | 0060423 | 0060426 | ORCL_FICO | 00000068 | | ORCL_FICO | 00000185 | |
| FICO | 0061513 | 0061516 | FICO | 0056183 | 0056198 | FICO | 0060446 | 0060448 | ORCL_FICO | 00000069 | 00000071 | ORCL_FICO | 00000187 | |
| FICO | 0061561 | 0061564 | FICO | 0056199 | 0056214 | FICO | 0060478 | 0060482 | ORCL_FICO | 00000071 | 00000073 | ORCL_FICO | 00000188 | |
| FICO | 0061594 | 0061595 | FICO | 0056215 | 0056230 | FICO | 0060699 | 0060700 | ORCL_FICO | 00000074 | | ORCL_FICO | 00000189 | |
| FICO | 0061599 | | FICO | 0056231 | 0056246 | FICO | 0061245 | 0061246 | ORCL_FICO | 00000075 | | ORCL_FICO | 00000190 | |
| FICO | 0061618 | | FICO | 0056247 | 0056262 | FICO | 0061452 | 0061453 | ORCL_FICO | 00000076 | | ORCL_FICO | 00000191 | |
| FICO | 0061624 | 0061625 | FICO | 0056263 | 0056278 | FICO | 0061809 | 0061810 | ORCL_FICO | 00000077 | 00000089 | ORCL_FICO | 00000192 | 00000193 |
| FICO | 0061682 | | FICO | 0056279 | 0056294 | FICO | 0061817 | 0061823 | ORCL_FICO | 00000089 | 00000090 | ORCL_FICO | 00000194 | |
| FICO | 0061809 | 0061811 | FICO | 0056295 | 0056556 | FICO | 0061824 | 0061825 | ORCL_FICO | 00000091 | | ORCL_FICO | 00000195 | |
| FICO | 0061817 | 0061825 | FICO | 0056557 | 0056860 | ORCL_FICO | 00000001 | | ORCL_FICO | 00000092 | | ORCL_FICO | 00000196 | |
| FICO | 0061887 | 0061889 | FICO | 0056861 | 0057180 | ORCL_FICO | 00000002 | | ORCL_FICO | 00000093 | | ORCL_FICO | 00000197 | |
| FICO | 0000831 | 0000836 | FICO | 0057181 | | ORCL_FICO | 00000003 | | ORCL_FICO | 00000094 | 00000095 | ORCL_FICO | 00000198 | |
| FICO | 0001883 | | FICO | 0057182 | 0057196 | ORCL_FICO | 00000004 | 00000006 | ORCL_FICO | 00000096 | 00000097 | ORCL_FICO | 00000199 | |
| FICO | 0011372 | 0011376 | FICO | 0057197 | 0057198 | ORCL_FICO | 00000007 | | ORCL_FICO | 00000098 | 00000100 | ORCL_FICO | 00000200 | |
| FICO | 0014316 | 0014318 | FICO | 0057199 | 0057205 | ORCL_FICO | 00000008 | 00000011 | ORCL_FICO | 00000100 | 00000101 | ORCL_FICO | 00000201 | 00000227 |
| FICO | 0017052 | 0017119 | FICO | 0057223 | 0057224 | ORCL_FICO | 00000012 | 00000013 | ORCL_FICO | 00000102 | 00000103 | ORCL_FICO | 00000228 | 00000229 |
| FICO | 0039515 | 0039516 | FICO | 0057225 | 0057227 | ORCL_FICO | 00000014 | | ORCL_FICO | 00000104 | 00000105 | ORCL_FICO | 00000230 | 00000236 |
| FICO | 0042956 | 0042978 | FICO | 0057228 | 0057231 | ORCL_FICO | 00000015 | | ORCL_FICO | 00000106 | 00000106 | ORCL_FICO | 00000237 | 00000264 |
| FICO | 0043097 | 0043108 | FICO | 0057232 | 0057243 | ORCL_FICO | 00000016 | 00000017 | ORCL_FICO | 00000107 | 00000108 | XEROX | 00001_0001 | 00001_0004 |
| FICO | 0044709 | 0044726 | FICO | 0057244 | 0057248 | ORCL_FICO | 00000018 | 00000022 | ORCL_FICO | 00000109 | 00000109 | XEROX | 00002_0001 | 00002_0012 |
| FICO | 0044832 | 0044844 | FICO | 0057249 | 0057260 | ORCL_FICO | 00000023 | | ORCL_FICO | 00000110 | 00000110 | XEROX | 00003_0001 | 00003_0007 |
| FICO | 0048167 | 0048185 | FICO | 0057280 | 0057304 | ORCL_FICO | 00000024 | | ORCL_FICO | 00000111 | 00000112 | XEROX | 00004_0001 | 00004_0015 |
| FICO | 0052649 | 0052796 | FICO | 0057305 | | ORCL_FICO | 00000025 | 00000029 | ORCL_FICO | 00000113 | 00000139 | XEROX | 00005_0001 | 00005_0010 |
| FICO | 0052797 | 0052932 | FICO | 0057921 | 0058166 | ORCL_FICO | 00000030 | 00000031 | ORCL_FICO | 00000140 | | FED | 017915 | |
| FICO | 0052933 | 0053075 | FICO | 0058167 | 0058221 | ORCL_FICO | 00000032 | | ORCL_FICO | 00000141 | | | | |
| FICO | 0053076 | 0053224 | FICO | 0058222 | 0058294 | ORCL_FICO | 00000033 | 00000035 | ORCL_FICO | 00000142 | | | | |
| FICO | 0053225 | 0053371 | FICO | 0058295 | 0058297 | | | | ORCL_FICO | 00000143 | 00000149 | | | |

*CONFIDENTIAL - ATTORNEYS  EYES ONLY*

*Fair Isaac Corporation v. Federal Insurance Company et al.*
*Case No. 16-cv-1054*
Rebuttal Expert Report Of W  Christopher Bakewell

**Attachment C**
Documents Received

| Native Bates Stamped Documents | Native Bates Stamped Documents | Native Bates Stamped Documents | Native Bates Stamped Documents | Native Bates Stamped Documents |
|---|---|---|---|---|
| FED001016_0001 XLSX | | | | |
| FED001020_0001 XLSX | | | | |
| FED003261_0001 XLSX | | | | |
| FED006288_0001 XLSX | | | | |
| FED007797_0001 XLSX | | | | |
| FED009625_0001 XLSX | | | | |
| FED009631_0001 XLSX | | | | |
| FED017884_0001 XLSX | | | | |
| FED017885_0001 XLSX | | | | |
| FICO0001882 XLS | | | | |
| FICO0057306 XLS | | | | |
| FICO0060701 XLSX | | | | |
| FICO0000830 XLSX | | | | |

*Fair Isaac Corporation v. Federal Insurance Company et al.*
*Case No. 16-cv-1054*
Rebuttal Expert Report Of W  Christopher Bakewell

**Attachment C**
Documents Received

---

**Depositions**

Deposition of Benjamin Baer, January 29, 2019 and deposition exhibits thereto, Fair Isaac Corporation v  Federal Insurance Company, et al  (16-cv-1054)
Deposition of Christopher Ivey, January 30, 2019 and deposition exhibits thereto, Fair Isaac Corporation v  Federal Insurance Company, et al  (16-cv-1054)
Deposition of Christopher Ivey, March 14, 2019 and deposition exhibits thereto, Fair Isaac Corporation v  Federal Insurance Company, et al  (16-cv-1054)
Deposition of Henry Mirolyuz, January 11, 2019 and deposition exhibits thereto, Fair Isaac Corporation v  Federal Insurance Company, et al  (16-cv-1054)
Deposition of Henry Mirolyuz, July 31, 2018 and deposition exhibits thereto, Fair Isaac Corporation v  Federal Insurance Company, et al  (16-cv-1054)
Deposition of Jandeen Boone, February 6, 2019 and deposition exhibits thereto, Fair Isaac Corporation v  Federal Insurance Company, et al  (16-cv-1054)
Deposition of John Taylor, August 2, 2018 and deposition exhibits thereto, Fair Isaac Corporation v  Federal Insurance Company, et al  (16-cv-1054)
Deposition of Kevin Harkin, March 25, 2019 and deposition exhibits thereto, Fair Isaac Corporation v  Federal Insurance Company, et al  (16-cv-1054)
Deposition of Lawrence Wachs, February 26, 2019 and deposition exhibits thereto, Fair Isaac Corporation v  Federal Insurance Company, et al  (16-cv-1054)
Deposition of Michael Sawyer, Foctober 2, 2018 and deposition exhibits thereto, Fair Isaac Corporation v  Federal Insurance Company, et al  (16-cv-1054)
Deposition of Oliver Clark, September 11, 2018 and deposition exhibits thereto, Fair Isaac Corporation v  Federal Insurance Company, et al  (16-cv-1054)
Deposition of Ramesh Pandey, January 22, 2019 and deposition exhibits thereto, Fair Isaac Corporation v  Federal Insurance Company, et al  (16-cv-1054)
Deposition of Ramesh Pandey, November 13, 2018 and deposition exhibits thereto, Fair Isaac Corporation v  Federal Insurance Company, et al  (16-cv-1054)
Deposition of Russell Screiber, October 24, 2018 and deposition exhibits thereto, Fair Isaac Corporation v  Federal Insurance Company, et al  (16-cv-1054)
Deposition of Thomas Carretta, October 9, 2018 and deposition exhibits thereto, Fair Isaac Corporation v  Federal Insurance Company, et al  (16-cv-1054)
Deposition of Tamra Pawloski, January 18, 2019 and deposition exhibits thereto, Fair Isaac Corporation v  Federal Insurance Company, et al  (16-cv-1054)
Deposition of William Paul Waid, April 2, 2019 and deposition exhibits thereto, Fair Isaac Corporation v  Federal Insurance Company, et al  (16-cv-1054)
Deposition of William Paul Waid, January 16, 2019 and deposition exhibits thereto, Fair Isaac Corporation v  Federal Insurance Company, et al  (16-cv-1054)

---

**Legal Documents**

Fair Isaac Corporation Summons and Complaint, April 22, 2016 (16-cv-1054)
Amended Complaint, February 1, 2017 (16-cv-1054)
Amended Pretrial Scheduling Order, February 20, 2018 (16-cv-1054)
Answer and Counterclaims, February 15, 2017 (16-cv-1054)
Answer to Second Amended Complaint and Counterclaim, October 10, 2018 (16-cv-1054)
Declaration of William Waid in Support of Fair Isaac Corporation's Opposition to Federal Insurance Compnay's Motion to Compel, February 5, 2018 (16-cv-1054)
Defendant's Answers to Plaintiff's Second Set of Interrogatories (15-21), January 29, 2018 (16-cv-1054)
Defendant's Response to Plaintiff's Second Set of Requests for Admission, January 29, 2018 (16-cv-1054)
Defendant's Response to Plaintiff's Second Set of Requests for Production,  January 29, 2018 (16-cv-1054)
Fair Isaac Corporation v Software AG Complaint Exhibit A, September 8, 2014 (14-cv-7243)
Fair Isaac Corporation v Software AG Complaint, September 8, 2014 (14-cv-7243)
Federal Insurance Company's Answers to Plaintiff's First Set of Interrogatories, May 11, 2017 (16-cv-1054)
Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No  18, February 28, 2019 (16-cv-1054)
Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No  19, March 2, 2019 (16-cv-1054)
Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No  20, March 21, 2019 (16-cv-1054)
Federal Insurance Company's Fourth Supplemental Answer to Plaintiff's Interrogatory 19, February 28, 2019 (16-cv-1054)
Federal Insurance Company's Fourth Supplemental Answer to Plaintiff's Interrogatory No  20, February 28, 2019 (16-cv-1054)
Federal Insurance Company's Fourth Supplemental Answer to Plaintiff's Interrogatory, No  16 and Fifth Supplemental Answer to Plaintiff's Interrogatory No 17, March 2, 2019 (16-cv-1054)
Federal Insurance Company's Fourth Supplemental Answer to Plaintiff's Interrogatory, No  18, January 21, 2019 (16-cv-1054)
Federal Insurance Company's Response to Plaintiff's First Set of Requests for Admission, May 11, 2017 (16-cv-1054)
Federal Insurance Company's Response to Plaintiffs First Set of Requests for Production, May 11, 2017 (16-cv-1054)
Federal Insurance Company's Second Supplemental Answer to Interrogatory No  6 and Supplemental Answer to Interrogatory No  21, June 7, 2018 (16-cv-1054)
Federal Insurance Company's Second Supplemental Answer to Interrogatory Nos  2, 3, and 4, July 30, 2018 (16-cv-1054)
Federal Insurance Company's Second Supplemental Answer to Plaintiff's Interrogatory No  16, January 21, 2019 (16-cv-1054)
Federal Insurance Company's Second Supplemental Answer to Plaintiff's Interrogatory No  17, November 16, 2018 (16-cv-1054)

*Fair Isaac Corporation v. Federal Insurance Company et al.*
Case No. 16-cv-1054
Rebuttal Expert Report Of W. Christopher Bakewell

**Attachment C**
Documents Received

---

Federal Insurance Company's Second Supplemental Answer to Plaintiff's Interrogatory No. 18, November 16, 2018 (16-cv-1054)
Federal Insurance Company's Second Supplemental Answer to Plaintiff's Interrogatory No. 19, November 16, 2018 (16-cv-1054)
Federal Insurance Company's Second Supplemental Answer to Plaintiff's Interrogatory No. 20, November 16, 2018 (16-cv-1054)
Federal Insurance Company's Second Supplemental Answers to Interrogatory NOS. 2, 3, and 4, June 21, 2018 (16-cv-1054)
Federal Insurance Company's Sixth Supplemental Answer to Plaintiff's Interrogatory No. 16 and Sixth Supplemental Answer to Plaintiff's Interrogaotry No. 17, March 21, 2019 (16-cv-1054)
Federal Insurance Company's Supplemental Answer to Plaintiff's Interrogatory No. 18, March 21, 2019 (16-cv-1054)
Federal Insurance Company's Supplemental Answer to Plaintiff's Interrogatory No. 17, October 26, 2018 (16-cv-1054)
Federal Insurance Company's Supplemental Answer to Plaintiff's Interrogatory No. 18, October 26, 2018 (16-cv-1054)
Federal Insurance Company's Supplemental Answer to Plaintiff's Interrogatory No. 19, October 26, 2018 (16-cv-1054)
Federal Insurance Company's Supplemental Answer to Plaintiff's Interrogatory No. 20, October 24, 2018 (16-cv-1054)
Federal Insurance Company's Supplemental Answers to Plaintiff's First Set of Interrogatories, June 15, 2017 (16-cv-1054)
Federal Insurance Company's Supplemental Responses to Plaintiff's Fourth Set of Requests for Production of Documents, March 4, 2019 (16-cv-1054)
Federal Insurance Company's Third Supplemental Answer to Plaintiff's Interrogatory No. 16 and Fourth Supplemetnal Answer to Plaintiff's Interrogatory No. 17, February 28, 2019 (16-cv-1054)
Federal Insurance Company's Third Supplemental Answer to Plaintiff's Interrogatory No. 18, December 14, 2018 (16-cv-1054)
Federal Insurance Company's Third Supplemental Answer to Plaintiff's Interrogatory No. 17, January 21, 2019 (16-cv-1054)
Federal Insurance Company's Third Supplemental Answer to Plaintiff's Interrogatory No. 19, January 21, 2019 (16-cv-1054)
Federal Insurance Company's Third Supplemental Answer to Plaintiff's Interrogatory No. 20, January 21, 2019 (16-cv-1054)
Memorandum in Support of Plaintiff Fair Isaac Corporatin's Motion to Compel, November 13, 2018 (16-cv-1054)
Plaintiff Fair Isaac Corporation's Second Supplemental Answers to Defendant's Interrogatory NOS. 6-9, April 23, 2018 (16-cv-1054)
Plaintiff Fair Isaac Corporation's Answers to Defendant's First Set of Interrogatories, May 18, 2017 (16-cv-1054)
Plaintiff Fair Isaac Corporation's First Set of Interrogatories to Defendant Federal Insurance Company, April 11, 2017 (16-cv-1054)
Plaintiff Fair Isaac Corporation's First Set of Request for Production of Documents to Defendant Federal Insurance Company, April 11, 2017 (16-cv-1054)
Plaintiff Fair Isaac Corporation's First Set of Requests for Admission to Defendant Federal Insurance Company, April 11, 2017 (16-cv-1054)
Plaintiff Fair Isaac Corporation's First Supplemental Answers to Defendant's First Set of Interrogatories, August 16, 2017 (16-cv-1054)
Plaintiff Fair Isaac Corporation's First Supplemetal Answers to Defendant's First Set of Interrogatories, August 16, 2017 (16-cv-1054)
Plaintiff Fair Isaac Corporation's Response to Request for Production of Documents, May 18, 2017 (16-cv-1054)
Plaintiff Fair Isaac Corporation's Second Set of  Requests for Admission to Defendant Federal Insurance Company, December 29, 2017 (16-cv-1054)
Plaintiff Fair Isaac Corporation's Second Set of Interrogatories to Defendant Federal Insurance Company (15-21), December 29, 2017 (16-cv-1054)
Plaintiff Fair Isaac Corporation's Second Set of Requests for Production of Documents to Defendant Federal Insurance Company, December 29, 2017 (16-cv-1054)
Second Amended Complaint, September 11, 2018 (16-cv-1054)
U.S. District Court, U.S. District of Minnesota (DMN) Civil Docket for Case #: 0:16-cv-01054-WMW-DTS (16-cv-1054)
Federal Insurance Company's Second Supplemental Answers to Interrogatory NOS. 2, 3, and 4, May 25, 2018 (16-cv-1054)
Federal Insurance Company's Second Supplemental Answer to Interrogatory No. 6 and Supplemental Answer to Interrogatory No. 21, July 30, 2018 (16-cv-1054)
Letter from Christopher D. Pham, December 31, 2018 (16-cv-1054)
Rule 30(b)(6) Deposition Notice of William Waid, March 26, 2019 (16-cv-1054)

**Expert Reports**

Expert Report of R. Bickley (Bick) Whitener, April 19, 2019
Expert Report with Respect to Damages of Neil Zoltowski, April 19, 2019

**Other Documents**

Chubb ISSO Final Blaze Advisor DMP Sizing.pdf
IBM – Chubb Amended and Restated Software Attachment – Final-c.pdf
Chubb ISSO Final-c.pdf
Chubb FICO BlazeAdvisor DMP Sizing v1 0-c-c.pdf

**Public Documents**

17 U.S.C. §504(b)
ACE Limited Annual Report, August 3, 2015
Ace Limited Form 10-K for the fiscal year ended December 31, 2013

*CONFIDENTIAL - ATTORNEYS' EYES ONLY*

*Fair Isaac Corporation v. Federal Insurance Company et al.*
*Case No. 16-cv-1054*
Rebuttal Expert Report Of W  Christopher Bakewell

**Attachment C**
Documents Received

Ace Limited Form 10-K for the fiscal year ended December 31, 2014
Ace Limited Form S-4 filed August 3, 2015
Allstate Life Insurance Company Form 10-K for the fiscal year ended December 31, 2018
AM Best Affirms Credit Ratings of Chubb Limited and Its Subsidiaries, December 31, 2018
Amended and Restated Software Infringement, December 30, 2016
Calculating Intellectual Property Infringement Damages, AICPA Practice Aid, 3rd Ed  (2012)
Capgemini Top 10 Trends in Property & Casualty Insurance 2018
Chubb Corporation Annual Report, December 31, 2013
Chubb Corporation Annual Report, December 31, 2014
Chubb Corporation Annual Report, December 31, 2015
Chubb Corporation Annual Report, December 31, 2016
Chubb Corporation Annual Report, December 31, 2017
Chubb Corporation Annual Report, December 31, 2018
Chubb European Group Plc (formerly Chubb European Group Ltd ) Solvency and Financial Condition Report, December 31, 2017
Chubb Insurance Company of Europe SE Solvency and Financial Condition Report, December 31, 2016
Chubb Insurance Company of Europe SE Solvency and Financial Condition Report, December 31, 2017
Chubb Limited Argus Analyst Report, February 26, 2019
Chubb Limited Comparable Analysis, S&P Capital IQ
Chubb Limited Financials 2013-2017, S&P Capital IQ
Chubb Limited Form 10-K for the fiscal year ended December 31, 2015
Chubb Limited Form 10-K for the fiscal year ended December 31, 2016
Chubb Limited Form 10-K for the fiscal year ended December 31, 2017
Chubb Limited Form 10-K for the fiscal year ended December 31, 2018
Chubb Limited JP Morgan Equity Research Report, January 26, 2019
Chubb Limited Stock Traders Daily Research, January 29, 2019
Chubb Ltd , Argus Analyst Report, February 26, 2019
Cognizant Duck Creek Policy Upgrade Factory, February 2018
Cognizant Property & Casualty Commercial Lines Underwriting: The New Playbook, July 2016
CSC Product Accelerator
Deloitte 2019 Insurance Outlook
EY Specialty Journal Perspectives on the Specialty Insurance Market, August 2015
Fair Isaac Corporation 2013 Annual Report
Fair Isaac Corporation 2014 Annual Report
Fair Isaac Corporation 2015 Annual Report
Fair Isaac Corporation 2016 Annual Report
Fair Isaac Corporation 2017 Annual Report
Fair Isaac Corporation 2018 Annual Report
Fair Isaac Corporation Comparable Company Analysis, S&P Capital IQ
Fair Isaac Corporation Financials 2013-2018, S&P Capital IQ
Fair Isaac Corporation Form 10-K for the fiscal year ended September 30, 2018
Fair Isaac Corporation Form 10-K, for the year ended September 30, 2017
Federal Insurance Compnay Combined Statutory Financial Statements, December 31, 2017 and 2016
Federal Insurance Office, U S  Department of the Treasury Annual Report on the Insurance Industry, September 2018
FICO and its U S  Insurance Subsidiaries Supplemental Disclosures To Audited Financial Statements, Years Ended December 31, 2016 and 2015
FICO Blaze Advisor Decision Rules Management System, March 2016
Gartner 2019 CIO Agenda: Insurance Industry Insights, October 15, 2018
Gartner Financial Services Digital Business Strategy and Innovation Primer for 2019, February 5, 2019

*CONFIDENTIAL - ATTORNEYS  EYES ONLY*

*Fair Isaac Corporation v. Federal Insurance Company et al.*
*Case No. 16-cv-1054*
Rebuttal Expert Report Of W  Christopher Bakewell

**Attachment C**
Documents Received

---

Gartner Magic Quadrant for P&C Core Platforms, North America, October 9, 2018
Gartner Market Guide for Data and Analytics Service Providers, June 18, 2018
Gartner Market Guide for Data Science and Machine Learning Service Providers, October 31, 2017
Gartner Market Guide for Robotic Process Automation Software, December 5, 2017
Gartner P&C Claims Management and Continuous Customer Engagement Merge With Digital Transformation, January 4, 2019
Global Business Rules Management System (BRMS) Market Forecasts & Opportunities (2014-2024), TechSciResearch
Global Insurance Industry Insights, an in-depth perspective, McKinsey Global Insurance Pools-7th edition, 2017
Gordon V  Smith, Russel L  Parr, Intellectual Property Valuation, Exploration, and Infringement Damages, Wiley & Sons, 2005
IBISWorld Industry Report 52412 Property, Casualty and Direct Insurance in the US, December 2018
International Software and Services Special Option, December 31, 2016
Klein, Robert W , Ph D , A Regulator's Introduction to the Insurance Industry, 2nd Edition, 2005
List of Chubb Subsidiaries as of December 31, 2017
List of Chubb Subsidiaries as of December 31, 2018
Litigation Services Handbook: The Role of the Financial Expert, Fourth Edition, 2007
MarketLine Strategy, SWOT and Corporate Finance Report, The Travelers Companies, Inc , March 2019
McKinsey & Company Global Insurance Industry Insights, 2017
Moorcraft, Bethan, Insurance Business "These are the top 25 property/casualty insurance companies in the US", May 31, 2016
National Association of Insurance Commissioners 2017 Market Share Reports, 2018
National Association of Insurance Commissioners Property and Casualty Insurance Industry 2018 Top 25 Groups and Companies by Countrywide Premium, March 25, 2019
PR Newswire, "Ace Completes Acquisition of Chubb; Adopts Chubb Name and Launches New Chubb Brand", January 14, 2016
Private auto recovery helps US P&C industry back to underwriting profitability, S&P Global Market Intelligence, March 19, 2019
Robert F  Reilly and Robert P  Schweihs, Valuing Intangible Assets, McGraw-Hill, 1999
S&P Capital IQ
TechSci Research 2014-2024 Global Business Rules Management System Data Sheet, May 2019
The Allstate Corporation Form 10-K for the fiscal year ended December 31, 2015
The Chubb Corporation Form 10-K for the fiscal year ended December 31, 2013
The Chubb Corporation Form 10-K for the fiscal year ended December 31, 2014
The Travelers Companies, Inc  Form 10-K for the fiscal year ended December 31, 2018
Thomvest Insurance Industry Overview, 2015
United States International Trade Commission Property and Casualty Insurance Services: Competitive Conditions in Foreign Markets, March 2009
http://condor depaul edu/jtullis/documents/Blaze_Advisor_Tech pdf
https://www business com/articles/specialty-insurance-basics/
https://www chubb com/us-en/about-chubb/who-we-are aspx
https://www fico com/en/resource-download-file/4124
https://www iii org/fact-statistic/facts-statistics-commercial-lines
https://www investopedia com/terms/r/reinsurance asp
https://www marketwatch com/press-release/am-best-affirms-credit-ratings-of-chubb-limited-and-its-subsidiaries-2018-12-13
https://www oracle com/sun/
https://www treasury gov/initiatives/fio/reports-and-notices/Documents/2018_FIO_Annual_Report pdf

***AND ALL DOCUMENTS CITED IN THE EXPERT REPORT AND EXHIBITS THERETO***

**Table of Contents**

**Exhibit 1**

Exhibit 1.0   Adjustment to Mr. Zoltowski's U.S. Lost License Fee Analysis - Removing Applications That Do Not Use Blaze
Exhibit 1.1   Adjustment to Mr. Zoltowski's Foreign Lost License Fee Analysis - Removing Applications That Do Not Use Blaze

**Exhibit 2**

Exhibit 2.0   Adjustment to Mr. Zoltowski's U.S. Lost License Fee Analysis - Changing Size Category
Exhibit 2.1   Adjustment to Mr. Zoltowski's Foreign Lost License Fee Analysis - Changing Size Category

**Exhibit 3**

Exhibit 3.0   Adjustment to Mr. Zoltowski's U.S. Lost License Fee Analysis - Removing Applications That Do Not Use Blaze and Changing Size Category
Exhibit 3.1   Adjustment to Mr. Zoltowski's Foreign Lost License Fee Analysis - Removing Applications That Do Not Use Blaze and Changing Size Category

**Exhibit 4**

Exhibit 4.0   Adjustment to Mr. Zoltowski's U.S. Lost License Fee Analysis - Changing Maintenance Fee to 15%
Exhibit 4.1   Adjustment to Mr. Zoltowski's Foreign Lost License Fee Analysis - Changing Maintenance Fee to 15%
Exhibit 4.2   Adjustment to Mr. Zoltowski's U.S. Lost License Fee Analysis - Removing Applications That Do Not Use Blaze, Changing Size Category and Changing Maintenance Fee to 15%
Exhibit 4.3   Adjustment to Mr. Zoltowski's Foreign Lost License Fee Analysis - Removing Applications That Do Not Use Blaze, Changing Size Category and Changing Maintenance Fee to 15%
Exhibit 4.4   Adjustment to Mr. Zoltowski's U.S. Lost License Fee Analysis - Changing Maintenance Fee to 18%
Exhibit 4.5   Adjustment to Mr. Zoltowski's Foreign Lost License Fee Analysis - Changing Maintenance Fee to 18%
Exhibit 4.6   Adjustment to Mr. Zoltowski's U.S. Lost License Fee Analysis - Removing Applications That Do Not Use Blaze, Changing Size Category and Changing Maintenance Fee to 18%
Exhibit 4.7   Adjustment to Mr. Zoltowski's Foreign Lost License Fee Analysis - Removing Applications That Do Not Use Blaze, Changing Size Category and Changing Maintenance Fee to 18%

**Exhibit 5**

Exhibit 5.0   Summary and Comparison of Underwriting Profit / (Loss) Between Federal Actual and Mr. Zoltowski

**Exhibit 6**

Exhibit 6.0   Summary and Comparison of Underwriting Profit / (Loss) for Domestic Applications Between Federal Actual and Mr. Zoltowski

**Exhibit 7**

Exhibit 7.0   Summary and Comparison of Underwriting Profit / (Loss) for Foreign Applications Between Federal Actual and Mr. Zoltowski
Exhibit 7.1   Summary and Comparison of Underwriting Profit / (Loss) for Australia Applications Between Federal Actual and Mr. Zoltowski
Exhibit 7.2   Summary and Comparison of Underwriting Profit / (Loss) for Europe Applications Between Federal Actual and Mr. Zoltowski
Exhibit 7.3   Summary and Comparison of Underwriting Profit / (Loss) for Canada Applications Between Federal Actual and Mr. Zoltowski

**Exhibit 8**

Exhibit 8.0   Combined Pro-forma Income Statement Summary for Business Segments or Lines of Business Which Had an Income Statement Prepared by Federal
Exhibit 8.1   Income Statement Summary for the Chubb Specialty & Commercial Insurance Segments (North America)
Exhibit 8.2   Pro-forma Income Statement Summary for Insurance Policies in Australia that Used Blaze Software
Exhibit 8.3   Income Statement Summary for Accident & Health and Specialty Insurance Segments (UK)
Exhibit 8.4   Income Statement Summary for the Chubb Personal Lines Products (Canada)

**Exhibit 9**

Exhibit 9.0   Summary of the Revised CUW Data Prepared by Federal for the Years 2016 to 2018

**Exhibit 10**

Exhibit 10.0   Loss & Expense Ratios for Public Comparable Companies

**Exhibit 11**

Exhibit 11.0   Summary of the Business Segments and Lines of Business For Which Federal Prepared a Profit & Loss Statement

**Exhibit 12**

Exhibit 12.0   Summary of Blaze Advisor License Agreements
Exhibit 12.1   Summary of Blaze Advisor Settlement Agreements

**Fair Isaac Corporation v. Federal Insurance Company**　　　　　　　　　　　　　　　　　　　　　　　　**Exhibit 1.0**

Adjustment to Mr. Zoltowski's U.S. Lost License Fee Analysis - Removing Applications That Do Not Use Blaze



Application [1]

CSI eXPRESS
ARP
Profitability Indicator
Decision Point
CUW
Premium Booking
TAPS
IMRA
*CIS Claims [2]*　　　　　　　　　　　　　　　　　*Does not use Blaze software*
*Cornerstone [2]*

| Total | $ 4,900,000 | | $ 5,200,000 | $ 1,262,500 | $ 6,462,500 | $ 2,908,125 | $ 639,788 | $ 3,547,913 | $ 13,103,721 |
| *% Lower than Mr. Zoltowski* | | | | | | | | | *-19%* |

**Mr. Zoltowski [3]**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**$ 16,099,581**

**Notes/Sources:**
[1] Assumes the same inputs and calculations as used by Mr. Zoltowski.
[2] I understand these applications do not use Blaze software.
[3] Source: Schedule 4.0 of the Zoltowski Report.

**Fair Isaac Corporation v. Federal Insurance Company**                                                                                                         **Exhibit 1.1**
Adjustment to Mr. Zoltowski's Foreign Lost License Fee Analysis - Removing Applications That Do Not Use Blaze



| Application [1] | Region | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ADAPT | Australia | | | | | | | | |
| *ADAPT [2]* | *UK* | | | | | | | | |
| *Evolution [2]* | *Australia* | | | | | | | | |
| Evolution | Canada | | | | | | | | |
| EZER | UK & Europe | | | | | | | | |
| *Exari [2]* | *UK* | | | | | | | | |
| *Broker Site [2]* | *Canada* | | | | | | | | |
| **Total** | | $ 2,250,000 | | $ 2,550,000 | $ 232,500 | $ 2,782,500 | $ 1,252,125 | $ 275,468 | $ 1,527,593 | $ 11,831,615 |
| *% Lower than Mr. Zoltowski* | | | | | | | | | | *-44%* |

**Mr. Zoltowski [3]**                                                                                                                                            $ 21,262,691

**Notes/Sources:**
[1] Assumes the same inputs and calculations as used by Mr. Zoltowski.
[2] I understand these applications do not use Blaze software.
[3] Source: Schedule 5.0 of the Zoltowski Report.

**Fair Isaac Corporation v. Federal Insurance Company**                                                              **Exhibit 2.0**
Adjustment to Mr. Zoltowski's U.S. Lost License Fee Analysis - Changing Size Category

| Application [1] | Deployment License Fee [2] | Multi-Platform Uplift | Adjusted Deployment License Fee | Development License Fee | Perpetual License Fee | Annual License Fee | Support & Maintenance Fee | Annual Lost Fees | Loss Period (Years) | Total Lost Fees |
|---|---|---|---|---|---|---|---|---|---|---|
| | A | B | C = A x (1 + B) | D | E = C + D | F = E x 45% | G = F x 22% | H = F + G | I | J = H x I |
| CSI eXPRESS | | | | | | | | | | |
| ARP | | | | | | | | | | |
| Profitability Indicator | | | | | | | | | | |
| Decision Point | | | | | | | | | | |
| CUW | | | | | | | | | | |
| Premium Booking | | | | | | | | | | |
| TAPS | | | | | | | | | | |
| IMRA | | | | | | | | | | |
| CIS Claims | | | | | | | | | | |
| Cornerstone | | | | | | | | | | |
| **Total** | **$ 2,150,000** | | **$ 2,230,000** | **$ 1,390,000** | **$ 3,620,000** | **$ 1,629,000** | **$ 358,380** | **$ 1,987,380** | | **$ 7,340,111** |
| *% Lower than Mr. Zoltowski* | | | | | | | | | | *-54%* |
| **Mr. Zoltowski [3]** | | | | | | | | | | **$ 16,099,581** |

**Notes/Sources:**
[1] Assumes the same inputs and calculations as used by Mr. Zoltowski.
[2] Mr. Kursh told me that he would classify all applications except for CUW as small ($200,000 deployment license fee). Mr. Kursh also told me that he would classify CUW as medium ($350,000 deployment license fee).
[3] Source: Schedule 4.0 of the Zoltowski Report.

Confidential - For Attorneys' Eyes Only                                                                        Page 1 of 1

**Fair Isaac Corporation v. Federal Insurance Company**                                                                                              **Exhibit 2.1**
Adjustment to Mr. Zoltowski's Foreign Lost License Fee Analysis - Changing Size Category

| Application [1] | Region | Deployment License Fee [2] | Multi-Platform Uplift | Adjusted Deployment License Fee | Development License Fee | Perpetual License Fee | Annual License Fee | Support & Maintenance Fee | Annual Lost Fees | Loss Period (Years) | Total Lost Fees |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | *A* | *B* | *C = A x (1 + B)* | *D* | *E = C + D* | *F = E x 45%* | *G = F x 22%* | *H = F + G* | *I* | *J = H x I* |
| ADAPT | Australia | | | | | | | | | | |
| ADAPT | UK | | | | | | | | | | |
| Evolution | Australia | | | | | | | | | | |
| Evolution | Canada | | | | | | | | | | |
| EZER | UK & Europe | | | | | | | | | | |
| Exari | UK | | | | | | | | | | |
| Broker Site | Canada | | | | | | | | | | |
| **Total** | | **$ 1,400,000** | | **$ 1,480,000** | **$ 465,000** | **$ 1,945,000** | **$ 875,250** | **$ 192,555** | **$ 1,067,805** | | **$ 6,927,486** |
| *% Lower than Mr. Zoltowski* | | | | | | | | | | | *-67%* |

**Mr. Zoltowski [3]**                                                                                                                                          **$ 21,262,691**

**Notes/Sources:**
[1] Assumes the same inputs and calculations as used by Mr. Zoltowski.

[2] Mr. Kursh told me that he would classify all applications except for CUW as small ($200,000 deployment license fee).

[3] Source: Schedule 5.0 of the Zoltowski Report.

**Fair Isaac Corporation v. Federal Insurance Company**                                                                                          **Exhibit 3.0**

Adjustment to Mr. Zoltowski's U.S. Lost License Fee Analysis - Removing Applications That Do Not Use Blaze and Changing Size Category

| Application [1] | Deployment License Fee [2] | Multi-Platform Uplift | Adjusted Deployment License Fee | Development License Fee | Perpetual License Fee | Annual License Fee | Support & Maintenance Fee | Annual Lost Fees | Loss Period (Years) | Total Lost Fees |
|---|---|---|---|---|---|---|---|---|---|---|
| | A | B | C = A x (I + B) | D | E = C + D | F = E x 45% | G = F x 22% | H = F + G | I | J = H x I |
| CSI eXPRESS | | | | | | | | | | |
| ARP | | | | | | | | | | |
| Profitability Indicator | | | | | | | | | | |
| Decision Point | | | | | | | | | | |
| CUW | | | | | | | | | | |
| Premium Booking | | | | | | | | | | |
| TAPS | | | | | | | | | | |
| IMRA | | | | | | | | | | |
| *CIS Claims [3]* | | | | | *Does not use Blaze software* | | | | | |
| *Cornerstone [3]* | | | | | | | | | | |
| **Total** | $ 1,750,000 | | $ 1,830,000 | $ 1,262,500 | $ 3,092,500 | $ 1,391,625 | $ 306,158 | $ 1,697,783 | | $ 6,270,523 |
| *% Lower than Mr. Zoltowski* | | | | | | | | | | *-61%* |
| | | | | | | | | | | |
| **Mr. Zoltowski [4]** | | | | | | | | | | **$ 16,099,581** |

**Notes/Sources:**

[1] Assumes the same inputs and calculations as used by Mr. Zoltowski.

[2] Mr. Kursh told me that he would classify all applications except for CUW as small ($200,000 deployment license fee). Mr. Kursh also told me that he would classify CUW as medium ($350,000 deployment license fee).

[3] I understand these applications do not use Blaze software.

[4] Source: Schedule 4.0 of the Zoltowski Report.

**Fair Isaac Corporation v. Federal Insurance Company**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**Exhibit 3.1**

Adjustment to Mr. Zoltowski's Foreign Lost License Fee Analysis - Removing Applications That Do Not Use Blaze and Changing Size Category

| Application [1] | Region | Deployment License Fee [2] | Multi-Platform Uplift | Adjusted Deployment License Fee | Development License Fee | Perpetual License Fee | Annual License Fee | Support & Maintenance Fee | Annual Lost Fees | Loss Period (Years) | Total Lost Fees |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ADAPT | Australia | | | | | | | | | | |
| ADAPT [3] | UK | | | | | | | | | | |
| Evolution [3] | Australia | | | | | | | | | | |
| Evolution | Canada | | | | | | | | | | |
| EZER | UK & Europe | | | | | | | | | | |
| Exari [3] | UK | | | | | | | | | | |
| Broker Site [3] | Canada | | | | | | | | | | |
| **Total** | | $ 600,000 | | $ 680,000 | $ 232,500 | $ 912,500 | $ 410,625 | $ 90,338 | $ 500,963 | | $ 3,878,488 |
| *% Lower than Mr. Zoltowski* | | | | | | | | | | | *-82%* |
| | | | | | | | | | | | |
| **Mr. Zoltowski [4]** | | | | | | | | | | | $ 21,262,691 |

**Notes/Sources:**
[1] Assumes the same inputs and calculations as used by Mr. Zoltowski.
[2] Mr. Kursh told me that he would classify all applications except for CUW as small ($200,000 deployment license fee).
[3] I understand these applications do not use Blaze software.
[4] Source: Schedule 5.0 of the Zoltowski Report.

**Fair Isaac Corporation v. Federal Insurance Company**                                                                                          **Exhibit 4.0**
Adjustment to Mr. Zoltowski's U.S. Lost License Fee Analysis - Changing Maintenance Fee to 15%

| Application [1] | Deployment License Fee | Multi-Platform Uplift | Adjusted Deployment License Fee | Development License Fee | Perpetual License Fee | Annual License Fee | Support & Maintenance Fee [2] | Annual Lost Fees | Loss Period (Years) | Total Lost Fees |
|---|---|---|---|---|---|---|---|---|---|---|
| | A | B | C = A x (1 + B) | D | E = C + D | F = E x 45% | G = F x 15% | H = F + G | I | J = H x I |
| CSI eXPRESS | | | | | | | | | | |
| ARP | | | | | | | | | | |
| Profitability Indicator | | | | | | | | | | |
| Decision Point | | | | | | | | | | |
| CUW | | | | | | | | | | |
| Premium Booking | | | | | | | | | | |
| TAPS | | | | | | | | | | |
| IMRA | | | | | | | | | | |
| CIS Claims | | | | | | | | | | |
| Cornerstone | | | | | | | | | | |
| **Total** | $ 6,250,000 | | $ 6,550,000 | $ 1,390,000 | $ 7,940,000 | $ 3,573,000 | $ 535,950 | $ 4,108,950 | | $ 15,175,835 |
| *% Lower than Mr. Zoltowski* | | | | | | | | | | *-6%* |
| | | | | | | | | | | |
| **Mr. Zoltowski [3]** | | | | | | | | | | $ 16,099,581 |

**Notes/Sources:**
[1] Assumes the same inputs and calculations as used by Mr. Zoltowski.
[2] Assumes a support & maintenance fee of 15%.
[3] Source: Schedule 4.0 of the Zoltowski Report.

**Fair Isaac Corporation v. Federal Insurance Company**                                                                                                    **Exhibit 4.1**

Adjustment to Mr. Zoltowski's Foreign Lost License Fee Analysis - Changing Maintenance Fee to 15%

| Application [1] | Region | Deployment License Fee | Multi-Platform Uplift | Adjusted Deployment License Fee | Development License Fee | Perpetual License Fee | Annual License Fee | Support & Maintenance Fee [2] | Annual Lost Fees | Loss Period (Years) | Total Lost Fees |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | *A* | *B* | *C = A x (1 + B)* | *D* | *E = C + D* | *F = E x 45%* | *G = E x 15%* | *H = F + G* | *I* | *L = H x I* |
| ADAPT | Australia | | | | | | | | | | |
| ADAPT | UK | | | | | | | | | | |
| Evolution | Australia | | | | | | | | | | |
| Evolution | Canada | | | | | | | | | | |
| EZER | UK & Europe | | | | | | | | | | |
| Exari | UK | | | | | | | | | | |
| Broker Site | Canada | | | | | | | | | | |
| **Total** | | $ 5,250,000 | | $ 5,550,000 | $ 465,000 | $ 6,015,000 | $ 2,706,750 | $ 406,013 | $ 3,112,763 | | $ 20,042,701 |
| *% Lower than Mr. Zoltowski* | | | | | | | | | | | *-6%* |
| **Mr. Zoltowski [3]** | | | | | | | | | | | $ 21,262,691 |

**Notes/Sources:**

[1] Assumes the same inputs and calculations as used by Mr. Zoltowski.

[2] Assumes a support & maintenance fee of 15%.

[3] Source: Schedule 5.0 of the Zoltowski Report.

Confidential - For Attorneys' Eyes Only

**Fair Isaac Corporation v. Federal Insurance Company**　　　　　　　　　　　　　　　　　　　　　　　　　**Exhibit 4.2**

Adjustment to Mr. Zoltowski's U.S. Lost License Fee Analysis - Removing Applications That Do Not Use Blaze, Changing Size Category and Changing Maintenance Fee to 15%

| Application [1] | Deployment License Fee [2] | Multi-Platform Uplift | Adjusted Deployment License Fee | Development License Fee | Perpetual License Fee | Annual License Fee | Support & Maintenance Fee [3] | Annual Lost Fees | Loss Period (Years) | Total Lost Fees |
|---|---|---|---|---|---|---|---|---|---|---|
| CSI eXPRESS | | | | | | | | | | |
| ARP | | | | | | | | | | |
| Profitability Indicator | | | | | | | | | | |
| Decision Point | | | | | | | | | | |
| CUW | | | | | | | | | | |
| Premium Booking | | | | | | | | | | |
| TAPS | | | | | | | | | | |
| IMRA | | | | | | | | | | |
| *CIS Claims [4]* | | | | | | | | | | |
| *Cornerstone [4]* | | | | | *Does not use Blaze software* | | | | | |
| **Total** | $ 1,750,000 | | $ 1,830,000 | $ 1,262,500 | $ 3,092,500 | $ 1,391,625 | $ 208,744 | $ 1,600,369 | | $ 5,910,739 |
| *% Lower than Mr. Zoltowski* | | | | | | | | | | *-63%* |
| | | | | | | | | | | |
| **Mr. Zoltowski [5]** | | | | | | | | | | $ 16,099,581 |

**Notes/Sources:**

[1] Assumes the same inputs and calculations as used by Mr. Zoltowski.

[2] Mr. Kursh told me that he would classify all applications except for CUW as small ($200,000 deployment license fee). Mr. Kursh also told me that he would classify CUW as medium ($350,000 deployment license fee).

[3] Assumes a support & maintenance fee of 15%.

[4] I understand these applications do not use Blaze software.

[5] Source: Schedule 4.0 of the Zoltowski Report.

**Fair Isaac Corporation v. Federal Insurance Company**                                                                                                          **Exhibit 4.3**

Adjustment to Mr. Zoltowski's Foreign Lost License Fee Analysis - Removing Applications That Do Not Use Blaze, Changing Size Category and Changing Maintenance Fee to 15%

| Application [1] | Region | Deployment License Fee [2] | Multi-Platform Uplift | Adjusted Deployment License Fee | Development License Fee | Perpetual License Fee | Annual License Fee | Support & Maintenance Fee [3] | Annual Lost Fees | Loss Period (Years) | Total Lost Fees |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ADAPT | Australia | | | | | | | | | | |
| ADAPT [4] | UK | | | | | | | | | | |
| Evolution [4] | Australia | | | | | | | | | | |
| Evolution | Canada | | | | | | | | | | |
| EZER | UK & Europe | | | | | | | | | | |
| Exari [4] | UK | | | | | | | | | | |
| Broker Site [4] | Canada | | | | | | | | | | |
| **Total** | | $ 600,000 | | $ 680,000 | $ 232,500 | $ 912,500 | $ 410,625 | $ 61,594 | $ 472,219 | | $ 3,655,952 |
| *% Lower than Mr. Zoltowski* | | | | | | | | | | | -83% |

**Mr. Zoltowski [5]**                                                                                                                                                                  $ 21,262,691

**Notes/Sources:**
[1] Assumes the same inputs and calculations as used by Mr. Zoltowski.
[2] Mr. Kursh told me that he would classify all applications except for CUW as small ($200,000 deployment license fee).
[3] Assumes a support & maintenance fee of 15%.
[4] I understand these applications do not use Blaze software.
[5] Source: Schedule 5.0 of the Zoltowski Report.

Confidential - For Attorneys' Eyes Only

**Fair Isaac Corporation v. Federal Insurance Company**　　　　　　　　　　　　　　　　　　　　　　　　　　　**Exhibit 4.4**

Adjustment to Mr. Zoltowski's U.S. Lost License Fee Analysis - Changing Maintenance Fee to 18%

| Application [1] | Deployment License Fee | Multi-Platform Uplift | Adjusted Deployment License Fee | Development License Fee | Perpetual License Fee | Annual License Fee | Support & Maintenance Fee [2] | Annual Lost Fees | Loss Period (Years) | Total Lost Fees |
|---|---|---|---|---|---|---|---|---|---|---|
| | A | B | C = A x (1 + B) | D | E = C + D | F = E x 45% | G = F x 18% | H = F + G | I | J = H x I |
| CSI eXPRESS | | | | | | | | | | |
| ARP | | | | | | | | | | |
| Profitability Indicato | | | | | | | | | | |
| Decision Point | | | | | | | | | | |
| CUW | | | | | | | | | | |
| Premium Booking | | | | | | | | | | |
| TAPS | | | | | | | | | | |
| IMRA | | | | | | | | | | |
| CIS Claims | | | | | | | | | | |
| Cornerstone | | | | | | | | | | |
| **Total** | $  6,250,000 | | $  6,550,000 | $  1,390,000 | $  7,940,000 | $  3,573,000 | $    643,140 | $  4,216,140 | | $ 15,571,726 |
| *% Lower than Mr. Zoltowski* | | | | | | | | | | *-3%* |
| **Mr. Zoltowski [3]** | | | | | | | | | | $ 16,099,581 |

**Notes/Sources:**

[1] Assumes the same inputs and calculations as used by Mr. Zoltowski.

[2] Assumes a support & maintenance fee of 18%.

[3] Source: Schedule 4.0 of the Zoltowski Report.

**Fair Isaac Corporation v. Federal Insurance Company**                                                                            **Exhibit 4.5**
Adjustment to Mr. Zoltowski's Foreign Lost License Fee Analysis - Changing Maintenance Fee to 18%

| Application [1] | Region | Deployment License Fee | Multi-Platform Uplift | Adjusted Deployment License Fee | Development License Fee | Perpetual License Fee | Annual License Fee | Support & Maintenance Fee [2] | Annual Lost Fees | Loss Period (Years) | Total Lost Fees |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ADAPT | Australia | | | | | | | | | | |
| ADAPT | UK | | | | | | | | | | |
| Evolution | Australia | | | | | | | | | | |
| Evolution | Canada | | | | | | | | | | |
| EZER | UK & Europe | | | | | | | | | | |
| Exari | UK | | | | | | | | | | |
| Broker Site | Canada | | | | | | | | | | |
| **Total** | | $ 5,250,000 | | $ 5,550,000 | $ 465,000 | $ 6,015,000 | $ 2,706,750 | $ 487,215 | $ 3,193,965 | | $ 20,565,555 |
| *% Lower than Mr. Zoltowski* | | | | | | | | | | | *-3%* |
| **Mr. Zoltowski [3]** | | | | | | | | | | | $ 21,262,691 |

**Notes/Sources:**
[1] Assumes the same inputs and calculations as used by Mr. Zoltowski.
[2] Assumes a support & maintenance fee of 18%.
[3] Source: Schedule 5.0 of the Zoltowski Report.

Confidential - For Attorneys' Eyes Only

**Fair Isaac Corporation v. Federal Insurance Company**  **Exhibit 4.6**

Adjustment to Mr. Zoltowski's U.S. Lost License Fee Analysis - Removing Applications That Do Not Use Blaze, Changing Size Category and Changing Maintenance Fee to 18%

| Application [1] | Deployment License Fee [2] | Multi-Platform Uplift | Adjusted Deployment License Fee | Development License Fee | Perpetual License Fee | Annual License Fee | Support & Maintenance Fee [3] | Annual Lost Fees | Loss Period (Years) | Total Lost Fees |
|---|---|---|---|---|---|---|---|---|---|---|
| | A | B | C = A x (1 + B) | D | E = C + D | F = E x 45% | G = F x 18% | H = F + G | I | J = H x I |
| CSI eXPRESS | | | | | | | | | | |
| ARP | | | | | | | | | | |
| Profitability Indicator | | | | | | | | | | |
| Decision Point | | | | | | | | | | |
| CUW | | | | | | | | | | |
| Premium Booking | | | | | | | | | | |
| TAPS | | | | | | | | | | |
| IMRA | | | | | | | | | | |
| CIS Claims [4] | | | | | *Does not use Blaze software* | | | | | |
| Cornerstone [4] | | | | | | | | | | |
| **Total** | $ 1,750,000 | | $ 1,830,000 | $ 1,262,500 | $ 3,092,500 | $ 1,391,625 | $ 250,493 | $ 1,642,118 | | $ 6,064,932 |
| *% Lower than Mr. Zoltowski* | | | | | | | | | | *-62%* |
| | | | | | | | | | | |
| **Mr. Zoltowski [5]** | | | | | | | | | | $ 16,099,581 |

**Notes/Sources:**

[1] Assumes the same inputs and calculations as used by Mr. Zoltowski.

[2] Mr. Kursh told me that he would classify all applications except for CUW as small ($200,000 deployment license fee). Mr. Kursh also told me that he would classify CUW as medium ($350,000 deployment license fee).

[3] Assumes a support & maintenance fee of 18%.

[4] I understand these applications do not use Blaze software.

[5] Source: Schedule 4.0 of the Zoltowski Report.

**Fair Isaac Corporation v. Federal Insurance Company**                                                                                                                                                                                        **Exhibit 4.7**

Adjustment to Mr. Zoltowski's Foreign Lost License Fee Analysis - Removing Applications That Do Not Use Blaze, Changing Size Category and Changing Maintenance Fee to 18%

| Application [1] | Region | Deployment License Fee [2] | Multi-Platform Uplift | Adjusted Deployment License Fee | Development License Fee | Perpetual License Fee | Annual License Fee | Support & Maintenance Fee [3] | Annual Lost Fees | Loss Period (Years) | Total Lost Fees |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ADAPT | Australia | | | | | | | | | | |
| *ADAPT [4]* | *UK* | | | | | | | | | | |
| *Evolution [4]* | *Australia* | | | | | | | | | | |
| Evolution | Canada | | | | | | | | | | |
| EZER | UK & Europe | | | | | | | | | | |
| *Exari [4]* | *UK* | | | | | | | | | | |
| *Broker Site [4]* | *Canada* | | | | | | | | | | |
| **Total** | | $ 600,000 | | $ 680,000 | $ 232,500 | $ 912,500 | $ 410,625 | $ 73,913 | $ 484,538 | | $ 3,751,324 |
| *% Lower than Mr. Zoltowski* | | | | | | | | | | | *-82%* |
| | | | | | | | | | | | |
| **Mr. Zoltowski [5]** | | | | | | | | | | | $ 21,262,691 |

**Notes/Sources:**
[1] Assumes the same inputs and calculations as used by Mr. Zoltowski.
[2] Mr. Kursh told me that he would classify all applications except for CUW as small ($200,000 deployment license fee).
[3] Assumes a support & maintenance fee of 18%.
[4] I understand these applications do not use Blaze software.
[5] Source: Schedule 5.0 of the Zoltowski Report.

Confidential - For Attorneys' Eyes Only

**Fair Isaac Corporation v. Federal insurance Company**                                    **Exhibit 5.0**

Summary and Comparison of Underwriting Profit / (Loss) Between Federal Actual and Mr. Zoltowski
(in US$ millions)

| | Federal Actual [1] | | Mr. Zoltowski | | Difference | |
|---|---|---|---|---|---|---|
| | $ | | $ | | $ | *% Change* |
| **Gross Written Premiums** | | | | | | |
| Domestic | $ | 14,425 | $ | 28,354 | $ (13,929) | *-49%* |
| Foreign | | 1,764 | | 2,522 | (758) | *-30%* |
| **Total** | **$** | **16,189** | **$** | **30,876** | **$ (14,687)** | **-48%** |
| Net Written Premiums | | | | | | |
| Domestic | $ | 13,132 | | | | |
| Foreign | | 1,556 | | | | |
| Total | $ | 14,688 | | | | |
| *% of Gross Written Premiums* | | *91%* | | | | |
| **Net Earned Premiums** | | | | | | |
| Domestic | $ | 13,647 | | | | |
| Foreign | | 1,718 | | | | |
| **Total** | **$** | **15,364** | | | | |
| *% of Net Written Premiums* | | *105%* | | | | |
| Less: Losses | | | | | | |
| Domestic | $ | (7,571) | | | | |
| Foreign | | (989) | *Was not estimated* | | | |
| Total | $ | (8,560) | *by Mr. Zoltowski* | | | |
| *Loss Ratio* | | *56%* | | | | |
| Less: Expenses | | | | | | |
| Domestic | $ | (3,785) | | | | |
| Foreign | | (563) | | | | |
| Total | $ | (4,348) | | | | |
| *Expense Ratio* | | *28%* | | | | |
| **Underwriting Profit / (Loss)** | | | | | | |
| Domestic | $ | 2,290 | | | | |
| Foreign | | 166 | | | | |
| Total | $ | 2,456 | | | | |
| *% of Net Earned Premiums* | | *16%* | | | | |
| *Combined Loss Ratio* | | *84%* | | | | |

*See notes/sources on accompanying page*

**Fair Isaac Corporation v. Federal insurance Company**                                **Exhibit 5.0**

Summary and Comparison of Underwriting Profit / (Loss) Between Federal Actual and Mr. Zoltowski
(in US$ millions)

**Notes/Sources:**

[1] Sources: Exhibit 6.0 (for Domestic) and Exhibit 7.0 (for Foreign)

[2] Mr. Zoltowski includes non-Blaze advisor related applications and this inclusion overstates Federal's total gross written premiums by approximately $1 billion or 3% as seen below:

| | Excluding Non-Blaze | Mr. Zoltowski | Difference | |
|---|---|---|---|---|
| | $ | $ | $ | % Change |
| **Domestic Applications** | | | | |
| CSI eXPRESS | $    4,325 | $    4,325 | | |
| CIS Claims* | n/a | n/a | | |
| Decision Point | 13 | 13 | | |
| Profitability Indicator* | n/a | n/a | | |
| Automated Renewal Process* | n/a | n/a | | |
| CUW | 21,151 | 21,151 | | |
| IMRA | 272 | 272 | | |
| TAPS | 692 | 692 | | |
| Cornerstone | n/a | 576 | | |
| Premium Booking | 1,324 | 1,324 | | |
| **Total** | $    27,778 | $    28,354 | | |
| **Foreign Applications** | | | | |
| ADAPT (Australia) | $    105 | $    105 | | |
| Evolution (Australia) | n/a | 88 | | |
| Evolution (Canada) | 1,278 | 1,278 | | |
| Broker Site (Canada)** | n/a | n/a | | |
| ADAPT (UK) | n/a | 265 | | |
| EZER (UK) | 0 | 0 | | |
| EZER (Europe) | 786 | 786 | | |
| **Total** | $    2,169 | $    2,522 | | |
| **Total Gross Written Premiums** | $    29,947 | $    30,876 | $    (929) | -3% |

*I understand these applications are included in the CSI eXPRESS total as per the Zoltowski Report*
**I understand Evolution and Broker Site share the same underlying database.*

**Fair Isaac Corporation v. Federal Insurance Company**                                                    **Exhibit 6.0**
Summary and Comparison of Underwriting Profit / (Loss) for Domestic Applications Between Federal Actual and Mr. Zoltowski
(in US$ millions)

| | | | Total | | For the Years Ending December 31, | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | **2016** | | **2017** | | **2018** | | **2019** | |
| | | | | | *9 months* | | *12 months* | | *12 months* | | *3 months* | |
| **Gross Written Premiums per Mr. Zoltowski** | [1] | $ | 28,354 | $ | 7,738 | $ | 11,054 | $ | 8,559 | $ | 1,003 | |
| **Selected Gross Written Premiums** | [2] | **$** | **14,425** | **$** | **4,690** | **$** | **4,788** | **$** | **4,370** | **$** | **576** | |
| *Net Written as a % of Gross Written* | [3] | | *91%* | | *91%* | | *91%* | | *91%* | | *91%* | |
| Net Written Premiums | | $ | 13,132 | $ | 4,281 | $ | 4,345 | $ | 3,981 | $ | 525 | |
| *Net Earned as a % of Gross Written* | [3] | | *95%* | | *104%* | | *105%* | | *102%* | | *104%* | |
| **Net Earned Premiums** | | **$** | **13,647** | **$** | **4,471** | **$** | **4,567** | **$** | **4,063** | **$** | **545** | |
| *Loss Ratio* | [3] | | *55%* | | *53%* | | *58%* | | *55%* | | *55%* | |
| Less: Losses | | $ | (7,571) | $ | (2,376) | $ | (2,652) | $ | (2,241) | $ | (302) | |
| *Expense Ratio* | [3] | | *28%* | | *27%* | | *29%* | | *28%* | | *28%* | |
| Less: Expenses (incl. commissions, G&A, taxes, dividends & other expenses) | | $ | (3,785) | $ | (1,193) | $ | (1,304) | $ | (1,137) | $ | (151) | |
| **Underwriting Profit / (Loss)** | | **$** | **2,290** | **$** | **902** | **$** | **611** | **$** | **686** | **$** | **92** | |
| *% Difference from Mr. Zoltowski* | | | *-92%* | | *-88%* | | *-94%* | | *-92%* | | *-91%* | |
| *% of Net Earned Premiums* | | | *17%* | | *20%* | | *13%* | | *17%* | | *17%* | |
| *Combined Loss Ratio* | | | *83%* | | *80%* | | *87%* | | *83%* | | *83%* | |

*See notes/sources on accompanying page*

Confidential - For Attorneys' Eyes Only

**Fair Isaac Corporation v. Federal Insurance Company**                                                 **Exhibit 6.0**
Summary and Comparison of Underwriting Profit / (Loss) for Domestic Applications Between Federal Actual and Mr. Zoltowski
(in US$ millions)

**Notes/Sources:**

[1] Source: Schedule 10.2 of the Zoltowski Report.

[2] The selected gross written premiums were estimated as follows:

The policies and associated gross written premiums provided in Federal's Responses to the Plaintiff Interrogatories ("Interrogatory Responses") included multiple copies of the same policy which overstated the gross written premiums used in Mr. Zoltowski's analysis for the Domestic applications. For example, if one policy ran through CSI eXPRESS and CUW, its associated gross written premium would have appeared twice in the Interrogatory Responses (i.e. once for CSI eXPRESS and once for CUW). These gross written premiums exceed Federal's total reported gross written premiums from Federal's business segment income statements, a conclusion that is not justifiable or reasonable as seen below (and discussed in Section 4.3 of my report).

|  | 2016 | | 2017 | | 2018 | | 2019 | |
|---|---|---|---|---|---|---|---|---|
|  | *12 months* | | *12 months* | | *12 months* | | *3 months* | |
| **Gross Written Premiums per Interrogatory Responses** | | | | | | | | |
| CUW | $ | 7,579 | $ | 8,533 | $ | 6,201 | $ | 691 |
| CSI eXPRESS | | 1,527 | | 1,463 | | 1,406 | | 303 |
| Premium Booking | | 503 | | 443 | | 501 | | - |
| TAPS | | 285 | | 252 | | 216 | | 8 |
| Cornerstone | | 237 | | 260 | | 137 | | - |
| IRMA | | 105 | | 100 | | 93 | | - |
| Decision Point | | 4 | | 4 | | 5 | | 1 |
| Total | $ | 10,240 | $ | 11,054 | $ | 8,559 | $ | 1,003 |
| **Gross Written Premiums per Federal's Business Segment Income Statement** | $ | 6,524 | $ | 6,507 | $ | 6,058 | | |
| *% Lower than Interrogatory Responses* | | *-36%* | | *-41%* | | *-29%* | | |

*Notes/sources continue on accompanying page*

**Fair Isaac Corporation v. Federal Insurance Company**                                                                **Exhibit 6.0**
Summary and Comparison of Underwriting Profit / (Loss) for Domestic Applications Between Federal Actual and Mr. Zoltowski
(in US$ millions)

**Notes/Sources (continued):**

I was provided with additional gross written premiums data from Federal in a filed titled "Blaze IM Extract-Final" ("Revised CUW Data") relating to the CUW application whereby Federal removed any policies which ran through both CUW and another application,specifically CSI eXPRESS or Premium Bookings (see Section 4.3 of my report for further discussion). I used the Revised CUW Data and the gross written premiums data from the Interrogatory Responses for all other Domestic applications to estimate the Domestic gross written premiums which were processed through Blaze software. I also excluded any gross written premiums which were processed through the Cornerstone application as I understand it does not use Blaze software.

The Revised CUW Data did not contain policies effective in 2019, as such I have taken the gross written premiums for CUW from the Interrogatory Responses (which had multiple copies of the same policy) and adjusted it by applying the 3 year average (2016 to 2018) ratio (i.e. gross written premiums from Revised CUW Data to gross written premiums from the Interrogatory Responses) to the 2019 gross written premiums as seen below.

| | | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|---|
| **CUW Gross Written Premiums** | | *12 months* | *12 months* | *12 months* | *3 months* |
| Per Interrogatory Responses | | $ 7,579 | $ 8,533 | $ 6,201 | $ 691 |
| Per Blaze IM Extract-Final (See Exhibit 9.0)   Average | | $ 3,819 | $ 2,526 | $ 2,149 | |
| *% of Interrogatory Responses*   *38%* | | *50%* | *30%* | *35%* | |
| **Selected CUW Gross Written Premiums** | | **$ 3,819** | **$ 2,526** | **$ 2,149** | **$ 264** |
| **Revised Domestic Gross Written Premiums** | | | | | |
| CUW per Blaze IM Extract-Final | | $ 3,819 | $ 2,526 | $ 2,149 | $ 264 |
| CSI eXPRESS | | 1,527 | 1,463 | 1,406 | 303 |
| Premium Booking | | 503 | 443 | 501 | - |
| TAPS | | 285 | 252 | 216 | 8 |
| *Cornerstone* | | | *Does not use Blaze* | | |
| IRMA | | 105 | 100 | 93 | - |
| Decision Point | | 4 | 4 | 5 | 1 |
| **Total** | | **$ 6,242** | **$ 4,788** | **$ 4,370** | **$ 576** |

I adjusted the gross written premiums in 2016 as I understand that the copyright remedies start at March 31, 2016:

| | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|
| | *9 months* | *12 months* | *12 months* | *3 months* |
| **Revised Gross Written Premiums in 2016** | $ 6,242 | | | |
| *% Portion of the Year (Mar 31, 2016 to Dec 31, 2016)* | *75%* | | | |
| **Selected Gross Written Premiums for 2016 (9 months)** | **$ 4,690** | | | |
| **Selected Gross Written Premiums** | **$ 4,690** | **$ 4,788** | **$ 4,370** | **$ 576** |

[3] Source: Exhibit 8.1, the ratios for 2019 are the 3 year average (2016 to 2018).

**Fair Isaac Corporation v. Federal Insurance Company**                              **Exhibit 7.0**

Summary and Comparison of Underwriting Profit / (Loss) for Foreign Applications Between Federal Actual and Mr. Zoltowski
(in US$ millions)

| Application | Region | Total | | For the Years Ending December 31, | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 |
| | | | | 9.7 months | 12 months | 12 months | 12 months | 12 months | 12 months | 3 months |
| **Foreign Gross Written Premiums per Mr. Zoltowski [1]** | | | | | | | | | | |
| ADAPT | Australia | $ 105 | $ | 19 | $ 27 | $ 25 | $ 22 | $ 8 | $ 4 | $ 0 |
| ADAPT | UK | 265 | | 44 | 60 | 61 | 48 | 40 | 11 | - |
| Evolution | Australia | 88 | | - | - | - | - | 1 | 77 | 10 |
| Evolution | Canada | 1,278 | | - | - | 303 | 308 | 330 | 337 | - |
| EZER | Europe | 786 | | 140 | 196 | 179 | 157 | 109 | 4 | - |
| EZER | UK | 0 | | - | 0 | 0 | 0 | - | - | - |
| Broker Site | Canada | - | | - | - | - | - | - | - | - |
| **Total** | | $ 2,522 | $ | 203 | $ 283 | $ 569 | $ 535 | $ 488 | $ 434 | $ 10 |
| **Gross Written Premiums** | | | | | | | | | | |
| Australia [2] | | $ 105 | $ | 19 | $ 27 | $ 25 | $ 22 | $ 8 | $ 4 | $ 0 |
| Europe [3] | | 786 | | 140 | 196 | 179 | 157 | 109 | 4 | - |
| Canada [4] | | 873 | | - | - | 127 | 235 | 247 | 264 | - |
| **Total** | | $ 1,764 | $ | 159 | $ 223 | $ 332 | $ 414 | $ 364 | $ 272 | $ 0 |
| Net Written Premiums | | | | | | | | | | |
| Australia [2] | | $ 105 | $ | 19 | $ 27 | $ 25 | $ 22 | $ 8 | $ 4 | $ 0 |
| Europe [3] | | 604 | | 107 | 151 | 138 | 122 | 83 | 3 | - |
| Canada [4] | | 848 | | - | - | 120 | 229 | 241 | 258 | - |
| Total | | $ 1,556 | $ | 126 | $ 177 | $ 283 | $ 373 | $ 332 | $ 265 | $ 0 |
| **Net Earned Premiums** | | | | | | | | | | |
| Australia [2] | | $ 118 | $ | 19 | $ 27 | $ 26 | $ 24 | $ 15 | $ 6 | $ 2 |
| Europe [3] | | 772 | | 137 | 193 | 176 | 143 | 115 | 8 | - |
| Canada [4] | | 828 | | - | - | 114 | 227 | 235 | 251 | - |
| **Total** | | $ 1,718 | $ | 156 | $ 219 | $ 316 | $ 394 | $ 365 | $ 265 | $ 2 |
| Less: Losses | | | | | | | | | | |
| Australia [2] | | $ (73) | $ | (9) | $ (13) | $ (16) | $ (13) | $ (12) | $ (9) | $ (1) |
| Europe [3] | | (431) | | (77) | (107) | (98) | (75) | (68) | (7) | - |
| Canada [4] | | (484) | | - | - | (73) | (129) | (130) | (153) | - |
| Total | | $ (989) | $ | (86) | $ (120) | $ (187) | $ (217) | $ (210) | $ (168) | $ (1) |
| *Loss Ratio* | | *58%* | | *55%* | *55%* | *59%* | *55%* | *57%* | *64%* | *53%* |

**Fair Isaac Corporation v. Federal Insurance Company**　　　　　　　　　　　　　　　　　　　　　　　　　**Exhibit 7.0**

Summary and Comparison of Underwriting Profit / (Loss) for Foreign Applications Between Federal Actual and Mr. Zoltowski
(in US$ millions)

| Application | Region | | Total | | | For the Years Ending December 31, | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | **2013** | | | **2014** | | | **2015** | | | **2016** | | **2017** | | **2018** | | **2019** |
| | | | | | *9.7 months* | | | *12 months* | | | *12 months* | | | *12 months* | | *12 months* | | *12 months* | | *3 months* |
| Less: Expenses | | | | | | | | | | | | | | | | | | | | |
| Australia [2] | | $ | (66) | $ | (11) | $ | | (16) | $ | | (15) | $ | | (14) | $ | (8) | $ | (3) | $ | (1) |
| Europe [3] | | | (211) | | (38) | | | (53) | | | (48) | | | (42) | | (29) | | (1) | | - |
| Canada [4] | | | (285) | | - | | | - | | | (43) | | | (81) | | (80) | | (82) | | - |
| Total | | $ | (563) | $ | (48) | $ | | (68) | $ | | (106) | $ | | (137) | $ | (117) | $ | (86) | $ | (1) |
| *Expense Ratio* | | | *33%* | | *31%* | | | *31%* | | | *33%* | | | *35%* | | *32%* | | *33%* | | *43%* |
| **Underwriting Profit / (Loss)** | | | | | | | | | | | | | | | | | | | | |
| Australia [2] | | $ | (22) | $ | (1) | $ | | (2) | $ | | (5) | $ | | (3) | $ | (4) | $ | (6) | $ | 0 |
| Europe [3] | | | 130 | | 23 | | | 33 | | | 30 | | | 27 | | 18 | | 0 | | - |
| Canada [4] | | | 58 | | - | | | - | | | (1) | | | 17 | | 26 | | 17 | | - |
| **Total** | | **$** | **166** | **$** | **22** | **$** | | **31** | **$** | | **23** | **$** | | **40** | **$** | **39** | **$** | **11** | **$** | **0** |
| *% Difference from Mr. Zoltowski* | | | *-93%* | | *-89%* | | | *-89%* | | | *-96%* | | | *-92%* | | *-92%* | | *-98%* | | *-99%* |
| *% of Net Earned Premiums* | | | *10%* | | *14%* | | | *14%* | | | *7%* | | | *10%* | | *11%* | | *4%* | | *3%* |
| *Combined Loss Ratio* | | | *90%* | | *86%* | | | *86%* | | | *93%* | | | *90%* | | *89%* | | *96%* | | *97%* |

**Sources:**

[1] Source: Schedule 11.1 of the Zoltowski Report.

[2] Source: Exhibit 7.1

[3] Source: Exhibit 7.2

[4] Source: Exhibit 7.3

**Fair Isaac Corporation v. Federal Insurance Company**                                                                          **Exhibit 7.1**
Summary and Comparison of Underwriting Profit / (Loss) for Australia Applications Between Federal Actual and Mr. Zoltowski
(in US$ millions)

| | **For the Years Ending December 31, [1]** | | | | | | |
|---|---|---|---|---|---|---|---|
| | **2013 [2]** | **2014** | **2015** | **2016** | **2017** | **2018** | **2019** |
| | *9.7 months* | *12 months* | *12 months* | *12 months* | *12 months* | *12 months* | *3 months* |
| **Gross Written Premiums per Mr. Zoltowski** | $ 19 | $ 27 | $ 25 | $ 22 | $ 8 | $ 4 | $ 0 |
| **Selected Gross Written Premiums [3]** | **$ 19** | **$ 27** | **$ 25** | **$ 22** | **$ 8** | **$ 4** | **$ 0** |
| *% of Gross Written Premiums* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |
| Net Written Premiums | $ 19 | $ 27 | $ 25 | $ 22 | $ 8 | $ 4 | $ 0 |
| *% of Net Written Premiums* | *100%* | *100%* | *102%* | *107%* | *199%* | *143%* | *1085%* |
| **Net Earned Premiums** | **$ 19** | **$ 27** | **$ 26** | **$ 24** | **$ 15** | **$ 6** | **$ 2** |
| *Loss Ratio* | *49%* | *48%* | *63%* | *56%* | *78%* | *155%* | *53%* |
| Less: Losses Incurred | $ (9) | $ (13) | $ (16) | $ (13) | $ (12) | $ (9) | $ (1) |
| *Expense Ratio* | *58%* | *59%* | *57%* | *57%* | *50%* | *56%* | *43%* |
| Less: Expenses | $ (11) | $ (16) | $ (15) | $ (14) | $ (8) | $ (3) | $ (1) |
| **Underwriting Profit / (Loss)** | **$ (1)** | **$ (2)** | **$ (5)** | **$ (3)** | **$ (4)** | **$ (6)** | **$ 0** |
| *% Difference from Mr. Zoltowski* | *-106%* | *-107%* | *-121%* | *-113%* | *-157%* | *-259%* | *-64%* |
| *% of Net Earned Premiums* | *-6%* | *-7%* | *-21%* | *-13%* | *-29%* | *-111%* | *3%* |
| *Combined Loss Ratio* | *106%* | *107%* | *121%* | *113%* | *129%* | *211%* | *97%* |

**Notes/Sources:**

[1] I have used the gross written premiums and expense assumptions from FED017884_001 (also seen in Exhibit 8.2), a pro-forma income statement prepared by Federal for all of the policies that used the Blaze software in Australia, in my calculation of the underwriting profit / (loss) for the Australia applications except for what is noted below.

[2] I adjusted the gross written premiums in 2013 as seen below as I understand that the copyright remedies start at 3 years before the filing of a complaint:

| | | |
|---|---|---|
| Underwriting Profit / (Loss) (12 months) | $ | 27 |
| *% Portion of the Year (Apr 21, 2013 to Dec 31, 2013)* | | *70%* |
| **Selected Underwriting Profit / (Loss) (9.7 months)** | **$** | **19** |

[3] I understand that the Evolution application in Australia does not use Blaze software. As such I have excluded its associated gross written premiums from my calculation.

**Fair Isaac Corporation v. Federal Insurance Company**                                                              **Exhibit 7.2**

Summary and Comparison of Underwriting Profit / (Loss) for Europe Applications Between Federal Actual and Mr. Zoltowski
(in US$ millions)

| | For the Years Ending December 31, | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **2013** | | **2014** | | **2015** | | **2016** | | **2017** | | **2018** | | **2019** | |
| | *9.7 months* | | *12 months* | | *12 months* | | *12 months* | | *12 months* | | *12 months* | | *3 months* | |
| **Gross Written Premiums per Mr. Zoltowski [1]** | | | | | | | | | | | | | |
| ADAPT (UK) [2] | $ | 44 | $ | 60 | $ | 61 | $ | 48 | $ | 40 | $ | 11 | $ | - |
| EZER (Europe) | | 140 | | 196 | | 179 | | 157 | | 109 | | 4 | | - |
| EZER (UK) | | - | | 0 | | 0 | | 0 | | - | | - | | - |
| Total | $ | 184 | $ | 256 | $ | 241 | $ | 205 | $ | 150 | $ | 16 | $ | - |
| **Selected Gross Written Premiums [3]** | $ | **140** | $ | **196** | $ | **179** | $ | **157** | $ | **109** | $ | **4** | $ | **-** |
| *% of Gross Written Premiums [4]* | | *77%* | | *77%* | | *77%* | | *77%* | | *76%* | | *74%* | | *0%* |
| Net Written Premiums | $ | 107 | $ | 151 | $ | 138 | $ | 122 | $ | 83 | $ | 3 | $ | - |
| *% of Net Written Premiums [4]* | | *128%* | | *128%* | | *128%* | | *118%* | | *138%* | | *246%* | | *0%* |
| **Net Earned Premiums** | $ | **137** | $ | **193** | $ | **176** | $ | **143** | $ | **115** | $ | **8** | $ | **-** |
| *Loss Ratio [4]* | | *56%* | | *56%* | | *56%* | | *52%* | | *59%* | | *83%* | | *0%* |
| Less: Losses Incurred | $ | (77) | $ | (107) | $ | (98) | $ | (75) | $ | (68) | $ | (7) | $ | - |
| *Expense Ratio [4]* | | *27%* | | *27%* | | *27%* | | *29%* | | *26%* | | *16%* | | *0%* |
| Less: Expenses | $ | (38) | $ | (53) | $ | (48) | $ | (42) | $ | (29) | $ | (1) | $ | - |
| **Underwriting Profit / (Loss)** | $ | **23** | $ | **33** | $ | **30** | $ | **27** | $ | **18** | $ | **0** | $ | **-** |
| *% Difference from Mr. Zoltowski* | | *-87%* | | *-87%* | | *-88%* | | *-87%* | | *-88%* | | *-100%* | | |
| *% of Net Earned Premiums* | | *17%* | | *17%* | | *17%* | | *19%* | | *15%* | | *1%* | | |
| *Combined Loss Ratio* | | *83%* | | *83%* | | *83%* | | *81%* | | *85%* | | *99%* | | |

*See notes/sources on accompanying page*

Confidential - For Attorneys' Eyes Only

**Fair Isaac Corporation v. Federal Insurance Company**                                    **Exhibit 7.2**
Summary and Comparison of Underwriting Profit / (Loss) for Europe Applications Between Federal Actual and Mr. Zoltowski
(in US$ millions)

**Notes/Sources:**

[1] Source: Schedule 11.1 of the Zoltowski Report.

[2] I understand that the ADAPT application in the UK does not use Blaze software. As such I have excluded its associated gross written premiums from my calculation.

[3] I have used the gross written premiums from the Interrogatory Responses for the years 2013 to 2019. Federal prepared a business segment income statement for the Chubb Accident & Health and Specialty Products in the UK which spans 2016 to 2018 (FED017885_0001). Per Federal, these products have historically run through the EZER and/or ADAPT applications however these business segment financials also include policies that did not use Blaze software. Since the gross written premiums from the business segment financials are greater than or similar to the gross written premiums in the Interrogatory Responses, I have used the gross written premiums from the Interrogatory Responses for the years 2016 to 2018. I was not provided with business segment financials for the years 2013 to 2015, as such I have used the gross written premiums from the Interrogatory Responses for those years.

| **Annual Gross Written Premiums** | | **2013** | | **2014** | | **2015** | | **2016** | | **2017** | | **2018** | | **2019** |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Per the Interrogatory Responses | $ | 140 | $ | 196 | $ | 179 | $ | 157 | $ | 109 | $ | 4 | $ | - |
| *% Greater / (Smaller) than FED017885_0001* | | | | | | | | *-33%* | | *-26%* | | *-83%* | | |
| Per FED017885_0001 | | | | | | | | | | | | | | |
| Accident & Health | $ | - | $ | - | $ | - | $ | 103 | $ | 57 | $ | 20 | $ | - |
| Specialty | | - | | - | | - | | 131 | | 91 | | 7 | | - |
| Total | $ | - | $ | - | $ | - | $ | 234 | $ | 148 | $ | 27 | $ | - |
| **Selected Gross Written Premiums** | **$** | **140** | **$** | **196** | **$** | **179** | **$** | **157** | **$** | **109** | **$** | **4** | **$** | **-** |

[4] For 2016 to 2018, I have used ratios from FED017885_0001 (also seen in Exhibit 8.3). I was not provided with business segment financials for the years 2013 to 2015, as such I have used the 2 year average ratio from 2016 to 2017. I did not use a 3-year average (i.e. include 2018) as policies in the UK were being transitioned to ACE systems following the merger between Chubb and ACE. As such, 2018 does not have many policies and represents a declining business which is why it was not included in the average ratio to apply to the years 2013 to 2015.

**Fair Isaac Corporation v. Federal Insurance Company**  **Exhibit 7.3**

Summary and Comparison of Underwriting Profit / (Loss) for Canada Applications Between Federal Actual and Mr. Zoltowski

(in US$ millions)

| | For the Years Ending December 31, | | | | | | |
|---|---|---|---|---|---|---|---|
| | **2013** | **2014** | **2015** | **2016** | **2017** | **2018** | **2019** |
| | *9.7 months* | *12 months* | *12 months* | *12 months* | *12 months* | *12 months* | *3 months* |
| **Gross Written Premiums per Mr. Zoltowski [1]** | $       - | $       - | $    303 | $    308 | $    330 | $    337 | $       - |
| **Selected Gross Written Premiums [2]** | $       - | $       - | $    127 | $    235 | $    247 | $    264 | $       - |
| *Net Written as a % of Gross Written [3]* | *0%* | *0%* | *94%* | *97%* | *98%* | *98%* | *0%* |
| Net Written Premiums | $       - | $       - | $    120 | $    229 | $    241 | $    258 | $       - |
| *Net Earned as a % of Net Written [3]* | *0%* | *0%* | *95%* | *99%* | *98%* | *97%* | *0%* |
| **Net Earned Premiums** | $       - | $       - | $    114 | $    227 | $    235 | $    251 | $       - |
| *Loss Ratio [3]* | *0%* | *0%* | *64%* | *57%* | *55%* | *61%* | *0%* |
| Less: Losses | $       - | $       - | $    (73) | $   (129) | $   (130) | $   (153) | $       - |
| *Expense Ratio [3]* | *0%* | *0%* | *37%* | *36%* | *34%* | *33%* | *0%* |
| Less: Expenses | $       - | $       - | $    (43) | $    (81) | $    (80) | $    (82) | $       - |
| **Underwriting Profit / (Loss)** | $       - | $       - | $     (1) | $     17 | $     26 | $     17 | $       - |
| *% Difference from Mr. Zoltowski* | | | *-100%* | *-95%* | *-92%* | *-95%* | |
| *% of Net Earned Premiums* | | | *-1%* | *7%* | *11%* | *7%* | |
| *Combined Loss Ratio* | | | *101%* | *93%* | *89%* | *93%* | |

*See notes/sources on accompanying page*

Confidential - For Attorneys' Eyes Only

**Fair Isaac Corporation v. Federal Insurance Company**   **Exhibit 7.3**

Summary and Comparison of Underwriting Profit / (Loss) for Canada Applications Between Federal Actual and Mr. Zoltowski

(in US$ millions)

**Notes/Sources:**

[1] Source: Schedule 11.1 of the Zoltowski Report.

[2] The policies and associated gross written premiums provided in the Interrogatory Responses included multiple copies of the same policy which overstated the gross written premiums used in Mr. Zoltowski's analysis for the Evolution application in Canada. For my calculation of underwriting profit / (loss) for the Evolution application in Canada, I used the annual gross written premiums from FED017883_0001 which was a business segment income statement prepared by Federal for all of the Chubb Personal Lines products in Canada. All of the policies run through the Evolution application in Canada would be included in this business segment income statement, however the gross written premiums in the Interrogatory Responses are around 30% greater than those in the business segment financials which do not contain any duplication of policies and include policies that did not use Blaze software, suggesting there is some duplication in the data from the Interrogatory Responses. Federal has not been able to prepare a pro-forma income statement for policies that used Blaze software, as such I have used FED017883_0001 in our calculation of underwriting profit / (loss).

| Annual Gross Written Premiums | 2013 | | 2014 | | 2015 | | 2016 | | 2017 | | 2018 | | 2019 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Per Interrogatory Responses (12 months) | $ | - | $ | - | $ | 303 | $ | 308 | $ | 330 | $ | 337 | $ | - |
| *% Greater than FED017883_0001* | | | | | | *138%* | | *31%* | | *34%* | | *28%* | | |
| Per FED017883_0001 (12 months) | $ | - | $ | - | $ | 127 | $ | 235 | $ | 247 | $ | 264 | $ | - |
| *% of Interrogatory Responses* | | | | | | *42%* | | *76%* | | *75%* | | *78%* | | |
| **Selected Gross Written Premiums** | **$** | **-** | **$** | **-** | **$** | **127** | **$** | **235** | **$** | **247** | **$** | **264** | **$** | **-** |

[3] Source: Exhibit 8.4

Confidential - For Attorneys' Eyes Only

**Fair Isaac Corporation v. Federal Insurance Company**  **Exhibit 8.0**

Combined Pro-forma Income Statement Summary for Business Segments or Lines of Business Which Had an Income Statement Prepared by Federal
(in US$ millions)

| | For the Years Ending December 31, [1] | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | **2013** | **2014** | **2015** | **2016** | **2017** | **2018** |
| **Gross Written Premiums** | $ 27 | $ 27 | $ 153 | $ 7,016 | $ 6,910 | $ 6,353 |
| Net Written Premiums | $ 27 | $ 27 | $ 145 | $ 6,387 | $ 6,266 | $ 5,802 |
| *Net Written as a % of Gross Written* | *100%* | *100%* | *95%* | *91%* | *91%* | *91%* |
| **Net Earned Premiums** | $ 27 | $ 27 | $ 140 | $ 6,683 | $ 6,613 | $ 5,939 |
| *Net Earned as a % of Net Written* | *100%* | *100%* | *96%* | *105%* | *106%* | *102%* |
| Less: Losses | $ (13) | $ (13) | $ (89) | $ (3,559) | $ (3,838) | $ (3,309) |
| *Loss Ratio* | *49%* | *48%* | *64%* | *53%* | *58%* | *56%* |
| Less: Expenses | $ (15) | $ (16) | $ (57) | $ (1,816) | $ (1,900) | $ (1,669) |
| *Expense Ratio* | *58%* | *59%* | *41%* | *27%* | *29%* | *28%* |
| **Underwriting Profit / (Loss)** | $ (2) | $ (2) | $ (7) | $ 1,308 | $ 876 | $ 961 |
| *% of Net Earned Premiums* | *-6%* | *-7%* | *-5%* | *20%* | *13%* | *16%* |
| *Combined Loss Ratio* | *106%* | *107%* | *105%* | *80%* | *87%* | *84%* |

**Note/Source:**

[1] This is the combined income statement for all of the business segments and lines of business which had a profit and loss statement prepared by Federal. The individual profit and loss statements for each of the business segments or lines of business can be seen in Exhibits 8.1 to 8.4.

**Fair Isaac Corporation v. Federal Insurance Company**                                          **Exhibit 8.1**
Income Statement Summary for the Chubb Specialty & Commercial Insurance Segments (North America)
(in US$ millions)

| | 3 Year Average | For the Years Ending December 31, [1] | | |
| --- | --- | --- | --- | --- |
| | | 2016 | 2017 | 2018 |
| **Specialty Insurance** | | | | |
| **Gross Written Premiums** | | $  1,898 | $  1,919 | $  1,612 |
| Net Written Premiums | | $  1,852 | $  1,851 | $  1,540 |
| *% of Gross Written Premiums* | *97%* | *98%* | *96%* | *96%* |
| **Net Earned Premiums** | | $  1,887 | $  1,902 | $  1,588 |
| *% of Net Written Premiums* | *103%* | *102%* | *103%* | *103%* |
| Less: Losses & LAE Incurred | | $  (876) | $  (951) | $  (767) |
| *Loss Ratio* | *48%* | *46%* | *50%* | *48%* |
| Commissions | | $  (264) | $  (263) | $  (214) |
| G&A and TLF | | (257) | (275) | (202) |
| Dividends Incurred | | (5) | - | - |
| Less: Expenses | | $  (526) | $  (538) | $  (416) |
| *Expense Ratio* | *27%* | *28%* | *28%* | *26%* |
| **Underwriting Profit / (Loss)** | | $  485 | $  412 | $  405 |
| *% of Net Earned Premiums* | *24%* | *26%* | *22%* | *25%* |
| *Combined Loss Ratio* | *76%* | *74%* | *78%* | *75%* |

**Fair Isaac Corporation v. Federal Insurance Company**                                      **Exhibit 8.1**
Income Statement Summary for the Chubb Specialty & Commercial Insurance Segments (North America)
(in US$ millions)

| | 3 Year Average | For the Years Ending December 31, [1] | | |
| --- | --- | --- | --- | --- |
| | | 2016 | 2017 | 2018 |
| **Commercial Insurance** | | | | |
| **Gross Written Premiums** | | $ 4,626 | $ 4,588 | $ 4,446 |
| Net Written Premiums | | $ 4,102 | $ 4,054 | $ 3,980 |
| *% of Gross Written Premiums* | *89%* | *89%* | *88%* | *90%* |
| **Net Earned Premiums** | | $ 4,332 | $ 4,305 | $ 4,045 |
| *% of Net Written Premiums* | *104%* | *106%* | *106%* | *102%* |
| Less: Losses & LAE Incurred | | $ (2,429) | $ (2,653) | (2,340) |
| *Loss Ratio* | *59%* | *56%* | *62%* | *58%* |
| Commissions | | $ (567) | $ (667) | (647) |
| G&A and TLF | | (524) | (521) | (470) |
| Dividends Incurred | | (42) | (46) | (43) |
| Less: Expenses | | $ (1,133) | $ (1,234) | (1,160) |
| *Expense Ratio* | *28%* | *26%* | *29%* | *29%* |
| **Underwriting Profit / (Loss)** | | $ 770 | $ 418 | $ 546 |
| *% of Net Earned Premiums* | *14%* | *18%* | *10%* | *13%* |
| *Combined Loss Ratio* | *86%* | *82%* | *90%* | *87%* |

**Fair Isaac Corporation v. Federal Insurance Company**                                                **Exhibit 8.1**

Income Statement Summary for the Chubb Specialty & Commercial Insurance Segments (North America)

(in US$ millions)

| | 3 Year Average | For the Years Ending December 31, [1] | | |
| --- | --- | --- | --- | --- |
| | | 2016 | 2017 | 2018 |
| **Commercial & Specialty Insurance** | | | | |
| **Gross Written Premiums** | | $    6,524 | $    6,507 | $    6,058 |
| Net Written Premiums | | $    5,954 | $    5,905 | $    5,520 |
| *% of Gross Written Premiums* | *91%* | *91%* | *91%* | *91%* |
| **Net Earned Premiums** | | $    6,219 | $    6,207 | $    5,633 |
| *% of Net Written Premiums* | *104%* | *104%* | *105%* | *102%* |
| Less: Losses & LAE Incurred | | $    (3,305) | $    (3,604) | $    (3,107) |
| *Loss Ratio* | *55%* | *53%* | *58%* | *55%* |
| Commissions | | $    (831) | $    (931) | $    (861) |
| G&A and TLF | | (782) | (796) | (672) |
| Dividends Incurred | | (46) | (46) | (43) |
| Less: Expenses | | $    (1,659) | $    (1,772) | $    (1,576) |
| *Expense Ratio* | *28%* | *27%* | *29%* | *28%* |
| **Underwriting Profit / (Loss)** | | $    1,255 | $    830 | $    950 |
| *% of Net Earned Premiums* | *17%* | *20%* | *13%* | *17%* |
| *Combined Loss Ratio* | *83%* | *80%* | *87%* | *83%* |

**Source:**

[1] Source: FED017882_0001

**Fair Isaac Corporation v. Federal Insurance Company**                                                         **Exhibit 8.2**
Pro-forma Income Statement Summary for Insurance Policies in Australia that Used Blaze Software
(in US$ millions)

| | For the Years Ending December 31, [1] | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | **2013** | **2014** | **2015** | **2016** | **2017** | **2018** | **2019** |
| | *12 months* | *12 months* | *12 months* | *12 months* | *12 months* | *12 months* | *3 months* |
| **Gross Written Premiums** | $ 27 | $ 27 | $ 25 | $ 22 | $ 8 | $ 4 | $ 0 |
| Net Written Premiums | $ 27 | $ 27 | $ 25 | $ 22 | $ 8 | $ 4 | $ 0 |
| *% of Gross Written Premiums* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* | *100%* |
| **Net Earned Premiums** | $ 27 | $ 27 | $ 26 | $ 24 | $ 15 | $ 6 | $ 2 |
| *% of Net Written Premiums* | *100%* | *100%* | *102%* | *107%* | *199%* | *143%* | *1085%* |
| Less: Losses Incurred | $ (13) | $ (13) | $ (16) | $ (13) | $ (12) | $ (9) | $ (1) |
| *Loss Ratio* | *49%* | *48%* | *63%* | *56%* | *78%* | *155%* | *53%* |
| Acquisition Costs | $ (4) | $ (4) | $ (4) | $ (4) | $ (1) | $ (1) | $ (0) |
| Administrative Expenses | (11) | (11) | (11) | (10) | (6) | (2) | (1) |
| Less: Expenses | $ (15) | $ (16) | $ (15) | $ (14) | $ (8) | $ (3) | $ (1) |
| *Expense Ratio* | *58%* | *59%* | *57%* | *57%* | *50%* | *56%* | *43%* |
| **Underwriting Profit / (Loss)** | $ (2) | $ (2) | $ (5) | $ (3) | $ (4) | $ (6) | $ 0 |
| *% of Net Earned Premiums* | *-6%* | *-7%* | *-21%* | *-13%* | *-29%* | *-111%* | *3%* |
| *Combined Loss Ratio* | *106%* | *107%* | *121%* | *113%* | *129%* | *211%* | *97%* |

**Source:**
[1] Source: FED017884_001

**Fair Isaac Corporation v. Federal Insurance Company**                                                                **Exhibit 8.3**

Income Statement Summary for Accident & Health and Specialty Insurance Segments (UK)
(in US$ millions)

| | For the Years Ending December 31, [1] | | |
| --- | --- | --- | --- |
| | 2016 | 2017 | 2018 |
| **Accident & Health Insurance** | | | |
| **Gross Written Premiums** | $ 103 | $ 57 | $ 20 |
| Net Written Premiums | $ 76 | $ 42 | $ 14 |
| *% of Gross Written Premiums* | *73%* | *73%* | *73%* |
| **Net Earned Premiums** | $ 95 | $ 54 | $ 20 |
| *% of Net Written Premiums* | *125%* | *129%* | *139%* |
| Less: Losses Incurred | $ (50) | $ (30) | $ (18) |
| *Loss Ratio* | *53%* | *56%* | *90%* |
| Less: Expenses | $ (27) | $ (13) | $ (6) |
| *Expense Ratio* | *28%* | *25%* | *30%* |
| **Underwriting Profit / (Loss)** | $ 18 | $ 10 | $ (4) |
| *% of Earned Premiums* | *19%* | *19%* | *-19%* |
| *Combined Expense & Loss Ratio* | *81%* | *81%* | *119%* |
| **Specialty Insurance** | | | |
| **Gross Written Premiums** | $ 131 | $ 91 | $ 7 |
| Net Written Premiums | $ 106 | $ 71 | $ 6 |
| *% of Gross Written Premiums* | *81%* | *78%* | *78%* |
| **Net Earned Premiums** | $ 119 | $ 102 | $ 29 |
| *% of Net Written Premiums* | *112%* | *144%* | *522%* |
| Less: Losses Incurred | $ (61) | $ (62) | $ (23) |
| *Loss Ratio* | *52%* | *61%* | *79%* |
| Less: Expenses | $ (35) | $ (26) | $ (2) |
| *Expense Ratio* | *30%* | *26%* | *7%* |
| **Underwriting Profit / (Loss)** | $ 22 | $ 13 | $ 4 |
| *% of Earned Premiums* | *19%* | *13%* | *14%* |
| *Combined Expense & Loss Ratio* | *81%* | *87%* | *86%* |

**Fair Isaac Corporation v. Federal Insurance Company**                                                      **Exhibit 8.3**

Income Statement Summary for Accident & Health and Specialty Insurance Segments (UK)

(in US$ millions)

| | For the Years Ending December 31, [1] | | |
| --- | --- | --- | --- |
| | 2016 | 2017 | 2018 |
| **Accident & Health and Specialty Insurance** | | | |
| **Gross Written Premiums** | $ 234 | $ 148 | $ 27 |
| Net Written Premiums | $ 181 | $ 112 | $ 20 |
| *% of Gross Written Premiums* | *77%* | *76%* | *74%* |
| **Net Earned Premiums** | $ 213 | $ 156 | $ 49 |
| *% of Net Written Premiums* | *118%* | *138%* | *246%* |
| Less: Losses Incurred | $ (111) | $ (92) | $ (41) |
| *Loss Ratio* | *52%* | *59%* | *83%* |
| Less: Expenses | $ (62) | $ (40) | $ (8) |
| *Expense Ratio* | *29%* | *26%* | *16%* |
| **Underwriting Profit / (Loss)** | $ 40 | $ 24 | $ 0 |
| *% of Earned Premiums* | *19%* | *15%* | *1%* |
| *Combined Expense & Loss Ratio* | *81%* | *85%* | *99%* |

**Source:**

[1] Source: FED017885_0001

**Fair Isaac Corporation v. Federal Insurance Company**                                    **Exhibit 8.4**

Income Statement Summary for the Chubb Personal Lines Products (Canada)

(in US$ millions)

| | For the Years Ending December 31, [1] | | | |
| --- | --- | --- | --- | --- |
| | **2015** | **2016** | **2017** | **2018** |
| | *6 months* | *12 months* | *12 months* | *12 months* |
| **Gross Written Premiums** | $      127 | $      235 | $      247 | $      264 |
| Net Written Premiums | $      120 | $      229 | $      241 | $      258 |
| *% of Gross Written Premiums* | *94%* | *97%* | *98%* | *98%* |
| **Net Earned Premiums** | $      114 | $      227 | $      235 | $      251 |
| *% of Net Written Premiums* | *95%* | *99%* | *98%* | *97%* |
| Less: Losses & LAE Incurred | $      (73) | $     (129) | $     (130) | $     (153) |
| *Loss Ratio* | *64%* | *57%* | *55%* | *61%* |
| Less: Expenses Incurred | $      (43) | $      (81) | $      (80) | $      (82) |
| *Expense Ratio* | *37%* | *36%* | *34%* | *33%* |
| **Underwriting Profit / (Loss)** | $       (1) | $       17 | $       26 | $       17 |
| *% of Earned Premiums* | *-1%* | *7%* | *11%* | *7%* |
| *Combined Expense & Loss Ratio* | *101%* | *93%* | *89%* | *93%* |

<u>**Source:**</u>

[1] Source: FED017883_0001

**Fair Isaac Corporation v. Federal Insurance Company**                                          **Exhibit 9.0**
Summary of the Revised CUW Data Prepared by Federal for the Years 2016 to 2018
(in US$)

| Writing Company Name | Year of Effective Date of Policy [1] | | |
|---|---|---|---|
| | 2016 | 2017 | 2018 |
| ACE AMERICAN INSURANCE COMPANY | $           - | $           - | $           - |
| ACE FIRE UNDERWRITERS INSURANCE COMPANY | - | - | - |
| ACE PROPERTY AND CASUALTY INSURANCE COMPANY | - | - | - |
| ALLIANCE ASSURANCE COMPANY | - | - | - |
| CHUBB ARGENTINA DE SEGUROS S.A. | 1,163 | - | - |
| CHUBB CUSTOM INSURANCE COMPANY | 78,726,313 | 23,609,062 | 22,013,565 |
| CHUBB DE MEXICO | - | - | - |
| CHUBB DE MEXICO COMPANIA DE SEGUROS, S.A. | 15,358 | 16,435 | - |
| CHUBB EUROPEAN GROUP SE | 154,603 | 62,376 | - |
| CHUBB INDEMNITY INSURANCE COMPANY | 238,730,739 | 182,692,863 | 128,841,814 |
| CHUBB INSURANCE AUSTRALIA LIMITED | 58,977 | - | - |
| CHUBB INSURANCE COMPANY LIMITED | 52,541 | 6,136 | - |
| CHUBB INSURANCE COMPANY OF CANADA | 125,228 | 6,754 | - |
| CHUBB INSURANCE COMPANY OF NEW JERSEY | 44,501,973 | 20,305,777 | 20,310,216 |
| CHUBB LLOYDS INSURANCE COMPANY OF TEXAS | - | - | - |
| CHUBB NATIONAL INSURANCE COMPANY | 29,181,294 | 29,482,878 | 28,061,704 |
| CHUBB SEGUROS BRASIL, S.A. | 27,605 | 643 | - |
| CHUBB SEGUROS CHILE S.A. | - | - | - |
| DIVISIONAL REINSURANCE CEDED | - | - | - |
| EXECUTIVE RISK INDEMNITY INC. | 2,534,222 | 185,443 | 1,661,561 |
| EXECUTIVE RISK SPECIALTY INSURANCE COMPANY | 1,821,133 | 117,904 | 2,928 |
| FEDERAL INSURANCE COMPANY | 2,567,477,880 | 1,637,912,514 | 1,404,328,456 |
| GREAT NORTHERN INSURANCE COMPANY | 492,561,623 | 361,198,461 | 343,254,047 |
| NORTHWESTERN PACIFIC INDEMNITY COMPANY | - | - | - |
| PACIFIC INDEMNITY COMPANY | 198,358,535 | 164,186,063 | 116,800,656 |
| SAMSUNG FIRE & MARINE INSURANCE CO., LTD | - | - | - |
| SUN INSURANCE OFFICE OF AMERICA INC. | - | - | - |
| TEXAS PACIFIC INDEMNITY COMPANY | - | - | - |
| THE SEA INSURANCE COMPANY | - | - | - |
| VIGILANT INSURANCE COMPANY | 164,280,405 | 106,322,827 | 83,645,205 |
| N/A | 39,544 | - | - |
| **Total** | **$ 3,818,649,134** | **$ 2,526,106,134** | **$ 2,148,920,154** |

**Source:**
[1] Source: File titled "Blaze IM Extract-Final"

Confidential - For Attorneys' Eyes Only

**Fair Isaac Corporation v. Federal Insurance Company**                                                                                                                                  **Exhibit 10.0**
Loss & Expense Ratios for Public Comparable Companies
For the Years Ending December 31,

| Company Name [1] | Ticker | Consolidated Loss Ratio | | | | | | Consolidated Expense Ratio | | | | | | Consolidated Combined Ratio | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 |
| Chubb Limited | NYSE: CB | 54% | 57% | 58% | 58% | 66% | 62% | 32% | 31% | 29% | 31% | 29% | 29% | 88% | 88% | 87% | 88% | 95% | 91% |
| The Travelers Companies, Inc | NYSE: TRV | 58% | 58% | 57% | 61% | 67% | 67% | 32% | 31% | 32% | 30% | 31% | 32% | 90% | 89% | 88% | 92% | 98% | 97% |
| The Hanover Insurance Group, Inc | NYSE: THG | 62% | 62% | 61% | 67% | 65% | 64% | 35% | 35% | 34% | 33% | 33% | 32% | 97% | 97% | 96% | 100% | 97% | 96% |
| The Hartford Financial Services Group, Inc | NYSE: HIG | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a | 92% | 97% | 100% | 100% | 98% |
| American International Group, Inc | NYSE: AIG | 65% | 70% | 74% | 85% | 83% | 76% | 30% | 30% | 36% | 34% | 34% | 36% | 102% | 100% | 110% | 119% | 117% | 111% |
| W R Berkley Corporation | NYSE: WRB | 61% | 61% | 61% | 61% | 63% | 62% | 34% | 33% | 33% | 33% | 33% | 33% | 95% | 94% | 94% | 94% | 97% | 95% |
| **Summary Statistics** | | | | | | | | | | | | | | | | | | | |
| Low | | 54% | 57% | 57% | 58% | 63% | 62% | 30% | 30% | 29% | 30% | 29% | 29% | 88% | 88% | 87% | 88% | 95% | 91% |
| **Median** | | **61%** | **61%** | **61%** | **61%** | **66%** | **64%** | **32%** | **31%** | **33%** | **33%** | **33%** | **32%** | **95%** | **93%** | **95%** | **97%** | **98%** | **97%** |
| High | | 65% | 70% | 74% | 85% | 83% | 76% | 35% | 35% | 36% | 34% | 34% | 36% | 102% | 100% | 110% | 119% | 117% | 111% |
| **Average** | | **60%** | **61%** | **62%** | **66%** | **69%** | **66%** | **32%** | **32%** | **33%** | **32%** | **32%** | **32%** | **94%** | **93%** | **95%** | **99%** | **101%** | **98%** |
| *Federal's Business Segment/Line of Business Financials Over Loss Period* | | *56%* | | | | | | *28%* | | | | | | *84%* | | | | | |

**Source:**
[1] Source: CapitalIQ & company public filings

**Fair Isaac Corporation v. Federal Insurance Company** **Exhibit 11.0**

Summary of the Business Segments and Lines of Business For Which Federal Prepared a Profit & Loss Statement

| Business Segment | Line of Business | | Year | Geography | Document ID |
|---|---|---|---|---|---|
| Chubb Specialty Insurance (CSI) | i) | D&O (Directors and Officers) | 2016 | United States & Canada | FED017882_0001 |
| | ii) | Total FI (Financial Institutions) D&O | | | |
| | iii) | E&O (Errors & Omissions) | | | |
| | iv) | Total FI E&O | | | |
| | v) | Total EPL (Employment Practices Liability) | | | |
| | vi) | Total Kidnap Ransom – Registered Mail | | | |
| | vii) | EHC (Executive Healthcare) Medical | | | |
| | viii) | CFS (Chubb Financial Security) | | | |
| | ix) | Total Fiduciary | | | |
| | x) | Total Crime | | | |
| | xi) | Total Kidnap Ransom | | | |
| | xii) | Surety/Credit Risk | | | |
| | i) | CHB (Chubb) MdMkt (Middle Market) D&O | 2017 to 2018 | United States & Canada | FED017882_0001 |
| | ii) | CHB MdMkt Management Liability | | | |
| | iii) | CHB MdMkt EPL | | | |
| | iv) | CHB MdMkt Professional Liability | | | |
| | v) | CHB MdMkt Fiduciary | | | |
| | vi) | CHB MdMkt Financial Institutions | | | |
| | vii) | MdMkt Cyber | | | |
| | viii) | MdMkt Canada Professional Liab | | | |
| | ix) | CHB MdMkt Canada D&O | | | |
| | x) | CHB MdMkt Can A&O Prof | | | |
| | xi) | MdMkt Can Private Company – NFP | | | |
| | xii) | MdMkt Can Mgmt Liability | | | |
| | xiii) | MdMkt Canada Cyber | | | |
| | xiv) | CHB Major Professional Liability | | | |
| | xv) | CHB Major E&O Financial Insurance | | | |
| | xvi) | CHB Major Private – NFP | | | |
| | xvii) | CHB Major Financial Institutions | | | |
| | xviii) | CHB Major Management Liability | | | |
| | xix) | CHB Major Fidelity | | | |
| | xx) | CHB Major EPL | | | |
| | xxi) | CHB Major Fiduciary | | | |
| | xxii) | Major Cyber | | | |

**Fair Isaac Corporation v. Federal Insurance Company**                                                     **Exhibit 11.0**

Summary of the Business Segments and Lines of Business For Which Federal Prepared a Profit & Loss Statement

| Business Segment | Line of Business | | Year | Geography | Document ID |
|---|---|---|---|---|---|
| Chubb Specialty Insurance (CSI) | xxiii) | Canada Major Professional Liability | 2017 to 2018 | United States & Canada | FED017882_0001 |
| | xxiv) | CHB Can D&O | | | |
| | xxv) | CHB Can E&O | | | |
| | xxvi) | CHB Can A&O Professional | | | |
| | xxvii) | Canada Major Fin Institutions | | | |
| | xxviii) | Canada Major Priv Company – NFP (Not for Profit) | | | |
| | xxix) | Canada Major Public Mgmt Liab | | | |
| | xxx) | Canada Major Cyber | | | |
| | xxxi) | CHB SmCom Private-NFP (Sm = Small) | | | |
| | xxxii) | CHB SMCom Management Liability | | | |
| | xxxiii) | CHB SmCom EPL | | | |
| | xxxiv) | CHB SmCom Professional Liability | | | |
| | xxxv) | CHB SmCom Fiduciary | | | |
| | xxxvi) | CHB SmCom Fidelity | | | |
| | xxxvii) | SmCom Cyber | | | |
| | xxxviii) | SaCom Canada Professional Liability | | | |
| | xxxix) | CHB SmCom Can Professional | | | |
| | xl) | SmCan Private – NFP | | | |
| | xli) | Sm Can Cyber | | | |
| | xlii) | CHB WhSal Mgmt Liability | | | |
| | xliii) | CHB WhSal D&O | | | |
| | xliv) | CHB WhSal Professional Liability | | | |
| | xlv) | CHB WhSal E&O | | | |
| | xlvi) | CHB WhSal A&O | | | |
| | xlvii) | CHB WhSal Private – NFP | | | |
| | xlviii) | CHB WhSal Fin Insitutions | | | |
| | xlix) | Cyber Brokerage | | | |
| | l) | CHB WhSal Prgms D&O | | | |
| | li) | CHB WhSal Prgms A&O Prof. | | | |
| | lii) | Surety | | | |
| Chubb Commercial Insurance (CCI) | i) | CMP Liab. (Commercial Multi-peril Liability) | 2016 | United States & Canada | FED017882_0001 |
| | ii) | CMP Liability E&O | | | |
| | iii) | CMP Property | | | |
| | iv) | Commercial Auto Liability | | | |
| | v) | Commercial GL (General Liability) | | | |

**Fair Isaac Corporation v. Federal Insurance Company**                                              **Exhibit 11.0**

Summary of the Business Segments and Lines of Business For Which Federal Prepared a Profit & Loss Statement

| Business Segment | Line of Business | | Year | Geography | Document ID |
|---|---|---|---|---|---|
| Chubb Commercial Insurance (CCI) | vi) | Program Casualty Excluding Auto | 2016 | United States & Canada | FED017882_0001 |
| | vii) | Commercial Excess Umbrella | | | |
| | viii) | Program Casualty Excluding Auto Exc | | | |
| | ix) | Commercial Workers' Compensation | | | |
| | x) | Program Workers' Compensation | | | |
| | xi) | Total Cargo | | | |
| | xii) | Total Commercial Inland Marine | | | |
| | xiii) | Machinery Breakdown | | | |
| | xiv) | Monoline Property | | | |
| | xv) | Program Property | | | |
| | i) | CHB MdMkt Accident and Health | 2017 to 2018 | United States & Canada | FED017882_0001 |
| | ii) | CHB Employee Benefits Group | | | |
| | iii) | CHB Special Risk Group | | | |
| | iv) | CHB MdMkt Commercial Auto Liability | | | |
| | v) | CHB MdMkt Commercial Auto Physical Damage | | | |
| | vi) | CHB MdMkt Commercial GL | | | |
| | vii) | CHB MdMkt Commercial WC | | | |
| | viii) | CHB MdMkt Comm Excess-Umbrella | | | |
| | ix) | CHB MdMkt Can Cas ex Commercial Auto | | | |
| | x) | CHB MdMkt Can Commercial Auto | | | |
| | xi) | CHB MdMkt CMP Property | | | |
| | xii) | CHB MdMkt CMP Liability | | | |
| | xiii) | CHB MdMkt Can CMP | | | |
| | xiv) | CHB MdMkt Marine | | | |
| | xv) | CHB MdMkt Monoline Property | | | |
| | xvi) | CHB MdMkt Can Marine | | | |
| | xvii) | CHB MdMkt Can Monoline Property | | | |
| | xviii) | CHB Major Other Affinity | | | |
| | xix) | CHB Major Affinion | | | |
| | xx) | CHB Major Non-Affinion | | | |
| | xxi) | Global Benefits | | | |
| | xxii) | CHB Major Can Marine | | | |
| | xxiii) | CHB Major Can Monoline Property | | | |
| | xxiv) | CHB Major Comm GL Environ | | | |

**Fair Isaac Corporation v. Federal Insurance Company**                                          **Exhibit 11.0**

Summary of the Business Segments and Lines of Business For Which Federal Prepared a Profit & Loss Statement

| Business Segment | | Line of Business | Year | Geography | Document ID |
|---|---|---|---|---|---|
| Chubb Commercial | xxv) | Med-life Science Risk Transfer | 2017 to 2018 | United States & | FED017882_0001 |
| Insurance (CCI) | xxvi) | CHB Major Comm Excess-Umbrella | | Canada | |
| | xxvii) | CHB Major Monoline Property | | | |
| | xxviii) | CHB Major Machinery Breakdown | | | |
| | xxix) | CHB Major Comm inlnd Mrm (CIM) | | | |
| | xxx) | CHB Major Cargo | | | |
| | xxxi) | Real Estate | | | |
| | xxxii) | Major Accounts Guaranteed Costs | | | |
| | xxxiii) | CHB Major Comm Auto Liability | | | |
| | xxxiv) | CHB Major Comm Auto Phys Dmg | | | |
| | xxxv) | CHB Major Comm GL ex Environ | | | |
| | xxxvi) | CHB Major Comm WC | | | |
| | xxxvii) | CHB Major Can Cas ex Coml Auto | | | |
| | xxxviii) | CHB Major Can Comm Auto | | | |
| | xxxix) | CHB SmCom Comm Auto | | | |
| | xl) | CHB SmCom Comm GL | | | |
| | xli) | CHB SmCom Comm WC | | | |
| | xlii) | CHB SmCom Comm Excess-Umbrella | | | |
| | xliii) | CHB SmCom Can Casualty | | | |
| | xliv) | CHB SmCom CMP Property | | | |
| | xlv) | CHB SmCom Liability | | | |
| | xlvi) | CHB SmCom Can CMP | | | |
| | xlvii) | CHB SmCom Marine | | | |
| | xlviii) | CHB SmCom Monoline Property | | | |
| | xlix) | CHB SmCom Can Property | | | |
| | l) | HiExcess-Xcluding Westchester A&E | | | |
| | li) | CHB WhSal Comm Excess-Umbrella | | | |
| | lii) | CHB WhSal Primary Casualty | | | |
| | liii) | CHB WhSal Auto | | | |
| | liv) | Specialty Transportation | | | |
| | lv) | CHB WhSal WC | | | |
| | lvi) | WS Mdeical Life Sciences | | | |
| | lvii) | CHB WhSal Property | | | |
| | lviii) | CHB WhSal Environ | | | |
| | lix) | CHB WhSal Prgms WC | | | |

**Fair Isaac Corporation v. Federal Insurance Company**                                          **Exhibit 11.0**

Summary of the Business Segments and Lines of Business For Which Federal Prepared a Profit & Loss Statement

| Business Segment | Line of Business | | Year | Geography | Document ID |
|---|---|---|---|---|---|
| Chubb Commercial Insurance (CCI) | lx) | CHB WhSal Inland Marine | 2017 to 2018 | United States & Canada | FED017882_0001 |
| | lxi) | CHB WhSal Prgms Property | | | |
| | lxii) | CHB WhSal Prgms Auto | | | |
| | lxiii) | CHB WhSal Prgms Primary Cas | | | |
| | lxiv) | CHB WhSal Prgms Comm Excs-Ubm | | | |
| | lxv) | CHB WhSal StarrAgn Property | | | |
| | lxvi) | CHB WhSal StarrAgn Casualty | | | |
| | lxvii) | CHB WhSal StarrAgn WC | | | |
| | lxviii) | CHB WhSal Prgms WC | | | |
| Chubb Insurance Company of Canada: Personal Lines | i) | Home Owners | H2 2015 to 2018 | Canada | FED017883_0001 |
| | ii) | Personal Auto | | | |
| | iii) | Personal Floater | | | |
| | iv) | Personal Excess | | | |
| | v) | Yacht | | | |
| | vi) | Accident | | | |
| | vii) | Personal All Other | | | |
| Australia ADAPT | i) | Accident and Health | 2007 to 2019 | Australia | FED017884_0001 |
| Chubb European Group | i) | A&H (Accident and Health) | 2016 to 2018 | United Kingdom | FED017885_0001 |
| | ii) | CSI (Chubb Specialty Insurance) | | | |

Confidential - For Attorneys' Eyes Only

**Fair Isaac Corporation v. Federal Insurance Company**                                               **Exhibit 12.0**
Summary of Blaze Advisor License Agreements

| | Title of Agreement | Licensor | Licensee | Effective Date | Bates |
|---|---|---|---|---|---|
| 1 | Head of Agreement (Distribution) | Blaze Software | Ness AT Ltd. | 9/29/2000 | FICO0046248-252 |
| 2 | Master Customer Agreement | HNC Software, Inc. | Discover Financial Services, Inc. | 10/23/2000 | FICO0019016-024 |
| 3 | Schedule PHX-111500-RKC-02 | Blaze Software | American Express Travel Related Services | 11/20/2000 | FICO0043345-370 |
| 4 | License and Service Agreement | HNC Software Inc. | The Government of the Republic of Singapore | 3/27/2002 | FICO0043097-108 |
| 5 | Software License Agreement | HNC Software Inc. | Wells Fargo Bank N.A. | 7/18/2002 | FICO0045430-463 |
| 6 | License Agreement | Fair Isaac International Corporation | American Express Services Europe Ltd. | 11/21/2002 | FICO0046083-094 |
| 7 | Amendment 1 to Product License and Services Agreement: Attachment to Master Customer Agreement | Fair Isaac Corporation | Discover Financial Services, Inc. | 4/23/2003 | FICO0019110 |
| 8 | Order Form | Fair Isaac Corporation | Citibank N.A. | 9/3/2003 | FICO0021945-956 |
| 9 | Confidential Agreement | Fair Isaac Corporation | Siemens Medical Solutions U.S.A. | 12/31/2003 | FICO0060154-185 |
| 10 | Order Form Blaze Advisor | Fair Isaac International Corporation | CSS Versicherung | 2/20/2004 | FICO0020413-419 |

**Fair Isaac Corporation v. Federal Insurance Company**                                                                      **Exhibit 12.0**
Summary of Blaze Advisor License Agreements

| | Title of Agreement | Licensor | Licensee | Effective Date | Bates |
|---|---|---|---|---|---|
| 11 | Order Form Blaze Decision System | Fair Isaac International Corporation | Consolidated Stores Limited | 3/31/2004 | FICO0023187-195 |
| 12 | Software License Agreement | Fair Isaac International Corporation | British Telecommunications Limited Plc | 6/30/2004 | FICO0042956-976 |
| 13 | Amendment Software License and Service Agreement | Fair Isaac International Corporation | The Government of the Republic of Singapore | 9/21/2004 | FICO0043095-096 |
| 14 | Product License and Services Agreement Enterprise Decision Manager (EDMgr) | Fair Isaac Corporation | Discover Financial Services, Inc. | 9/30/2004 | FICO0019144-19168 |
| 15 | Addendum to Order Form | Fair Isaac Corporation | Citibank N.A. | 11/19/2004 | FICO0021942-944 |
| 16 | Sun Microsystems Software License and Services Agreement | Fair Isaac Corporation | Sun Microsystems, Inc. | 12/24/2004 | ORCL_FICO000002 37-263 |
| 17 | Amendment Number 1 to Software License and Maintenance Agreement | Fair Isaac Corporation | Bank of America N.A. | 3/15/2005 | FICO0019426-427 and FICO0032918-919 and |
| 18 | Amendment Two to the Software License and Services Agreement | Fair Isaac ASPAC Pte. Ltd. | The Government of the Republic of Singapore | 3/21/2005 | FICO0043109-111 |
| 19 | Software License Agreement | Fair Isaac Corporation | American Express Travel Related Services Company, Inc. | 3/31/2005 | FICO0043371-396 |
| 20 | Amendment Number 1 to Sun Microsystems Software License and Services Agreement | Fair Isaac Corporation | Sun Microsystems, Inc. | 5/11/2005 | FICO0022395-397 |

Confidential - For Attorneys' Eyes Only

**Fair Isaac Corporation v. Federal Insurance Company**                                                  **Exhibit 12.0**
Summary of Blaze Advisor License Agreements

| | Title of Agreement | Licensor | Licensee | Effective Date | Bates |
|---|---|---|---|---|---|
| 21 | Restatement of Software License Agreement Blaze Advisor | Fair Isaac International Corporation and Fair Isaac Services Limited | British Telecommunications Limited Plc | 6/27/2005 | FICO0018888-892 |
| 22 | Addendum to Sun Microsystems Software License and Services Agreement | Fair Isaac Corporation | Sun Microsystems, Inc. | 9/14/2005 | FICO0022405-407 |
| 23 | Exhibit A Statement of Work | Fair Isaac Corporation | Sun Microsystems, Inc. | 9/14/2005 | FICO0022408-412 |
| 24 | Independent Software Vendor (ISV) Agreement (Blaze Advisor) | Fair Isaac Corporation | CareKey, Inc. | 9/22/2005 | FICO0044057-079 |
| 25 | Amendment Number One to Agreement | Fair Isaac Corporation | Siemens Medical Solutions U.S.A. | 9/29/2005 | FICO0060186-188 |
| 26 | Standalone License Agreement (Blaze Advisor) | Fair Isaac Corporation | American Express Travel Related Services Company, Inc. | 9/30/2005 | FICO0043142-171 |
| 27 | Software License and Services Agreement Blaze Advisor | Fair Isaac Corporation | National City Corporation | 9/30/2005 | FICO0044709-726 |
| 28 | Software License and Services Agreement Blaze Advisor | Fair Isaac Services Limited | Ness AT Ltd. And Bank Hapoalim B M | 12/21/2005 | FICO0043048-065 |
| 29 | Fair Isaac Order Form Blaze Advisor | Fair Isaac Corporation | Affiliated Computer Services, Inc. | 4/21/2006 | XEROX000002_0001-0012 |
| 30 | Software License and Services Agreement Blaze Advisor | Fair Isaac International Corporation | DMR Consulting, a division of Fujitsu Consulting Inc. | 5/24/2006 | FICO0042747-770 |

**Fair Isaac Corporation v. Federal Insurance Company**                                                                      **Exhibit 12.0**
Summary of Blaze Advisor License Agreements

| | Title of Agreement | Licensor | Licensee | Effective Date | Bates |
|---|---|---|---|---|---|
| 31 | Amendment Three to License Agreement | Fair Isaac International Corporation | The Government of the Republic of Singapore - Ministry of Manpower | 7/26/2006 | FICO0043091-094 |
| 32 | Fair Isaac Software License and Services Agreement | Fair Isaac Corporation | EMC Corporation | 9/27/2006 | FICO0025272-289 |
| 33 | Fair Isaac Order Form Blaze Advisor | Fair Isaac Corporation | Swiss-One Ltd. | 9/30/2006 | FICO0044845-858 |
| 34 | Amendment 4 to License and Service Agreement | Fair Isaac International Corporation | The Government of the Republic of Singapore | 3/3/2008 | FICO0026975-978 |
| 35 | Reseller Agreement | Fair Isaac Services Limited | Amdocs Software Systems Limited | 3/28/2008 | FICO0047471-498 |
| 36 | Fair Isaac Software License and Services Agreement Blaze Advisor | Fair Isaac Corporation | La Regie de l'Assurance Maladie du Quebec | 4/11/2008 | FICO0048167-185 |
| 37 | Fair Isaac Order Form | Fair Isaac Corporation | PNC Bank, National Association | 6/30/2008 | FICO0047747-763 |
| 38 | Amendment Number One to Reseller Agreement | Fair Isaac Services Limited | Amdocs Software Systems Limited | 8/15/2008 | FICO0047816-818 |
| 39 | Fair Isaac Order Form | Fair Isaac Corporation | Paymentech, LLC | 9/16/2008 | FICO0047859-869 |
| 40 | Fair Isaac Order Form Blaze Advisor and Fair Isaac Case Manager Implementation Services | Fair Isaac Corporation | Paymentech, LLC | 9/16/2008 | FICO0027980-990 |

**Fair Isaac Corporation v. Federal Insurance Company**                                                     **Exhibit 12.0**
Summary of Blaze Advisor License Agreements

| | Title of Agreement | Licensor | Licensee | Effective Date | Bates |
|---|---|---|---|---|---|
| 41 | Fair Isaac Software License and Services Agreement | Fair Isaac Corporation | CVS Pharmacy, Inc. | 12/31/2008 | FICO0048229-272 |
| 42 | Amendment Number One to Standalone License Agreement (Blaze Advisor) | Fair Isaac Corporation | American Express Travel Related Services Company, Inc. | 3/4/2009 | FICO0028756-759 |
| 43 | Amendment Number One to Software License and Maintenance Agreement | Fair Isaac Corporation | Safeco Insurance Company of America | 4/6/2009 | FICO0028919-923 |
| 44 | Preferred Beneficiary Acceptance Form | Fair Isaac Corporation | Iron Mountain Intellectual Property Management, Inc. | 5/26/2009 | FICO0029275-276 |
| 45 | Assignment and Assumption Agreement | Fair Isaac Corporation | U.S. Bank National Association | 7/15/2009 | FICO0029309-347 |
| 46 | Training Agreement | Fair Isaac Corporation | American Express Travel Related Services Company, Inc. | 9/14/2009 | FICO0029641-649 |
| 47 | Software License and Services Agreement Blaze Advisor | Fair Isaac Corporation | PD Financial Corporation | 9/30/2009 | FICO0048573-592 |
| 48 | Professional Services Statement of Work | Fair Isaac Corporation | American Express Travel Related Services Company, Inc. | 11/3/2009 | FICO0029966-987 |
| 49 | Limited One-time Reseller Order Form | Fair Isaac Corporation | Software AG | 12/22/2009 | FICO0030353-356 |
| 50 | Limited One-time Reseller Order Form | Fair Isaac Services Limited | Software AG | 12/23/2009 | FICO0048789-791 |

**Fair Isaac Corporation v. Federal Insurance Company**                                   **Exhibit 12.0**
Summary of Blaze Advisor License Agreements

| | Title of Agreement | Licensor | Licensee | Effective Date | Bates |
|---|---|---|---|---|---|
| 51 | Amendment to Reseller Agreement | Fair Isaac Corporation | Amdocs Software Systems Limited | 12/31/2009 | FICO0030386-388 |
| 52 | Technology License and Distribution Agreement | Fair Isaac Corporation | Software AG | 3/16/2010 | FICO0048954-992 |
| 53 | Amendment One to Software License and Services Agreement Blaze Advisor | Fair Isaac Corporation | EMC Corporation | 6/28/2010 | FICO0049291-293 |
| 54 | Amendment to Software License and Services Agreement (Blaze Advisor) | Fair Isaac Corporation | PNC Bank, National Association | 10/1/2010 | FICO0032539-540 |
| 55 | Software License Agreement | Fair Isaac Corporation | Expedia, Inc. | 11/11/2010 | FICO0061274-296 |
| 56 | Master Services Agreement | Fair Isaac Corporation | Expedia, Inc. | 11/11/2010 | FICO0032299-317 |
| 57 | Amendment One | Fair Isaac Corporation | Dell USA L.P. | 11/15/2010 | FICO0032331-332 |
| 58 | Reseller Agreement | Fair Isaac Services Limited | Ness AT Ltd. | 12/30/2010 | FICO0044832-844 |
| 59 | Order Form Model Builder (Blaze Advisor) | Fair Isaac Services Limited | Ness AT Ltd. | 12/30/2010 | FICO0032690-691 |
| 60 | Amendment Number 1 to Fair Isaac Software License and Services Agreement | Fair Isaac International Corporation | La Regie de l'Assurance Maladie du Quebec | 3/25/2011 | FICO0033199-200 |

**Fair Isaac Corporation v. Federal Insurance Company**                                                    **Exhibit 12.0**
Summary of Blaze Advisor License Agreements

| | Title of Agreement | Licensor | Licensee | Effective Date | Bates |
|---|---|---|---|---|---|
| 61 | Attachment A Professional Services Statement of Work | Fair Isaac International Corporation | La Regie de l'Assurance Maladie du Quebec | 3/25/2011 | FICO0033215-220 |
| 62 | Amendment Two to Fair Isaac Order Form - Model Builder | Fair Isaac Corporation | EMC Corporation | 3/31/2011 | FICO0033286-287 |
| 63 | Amendment One to Amendment One to Software License and Services Agreement | Fair Isaac Corporation | EMC Corporation | 8/23/2011 | FICO0034240-247 |
| 64 | Order Form Model Builder (Blaze Advisor) | Fair Isaac Services Limited | Decisive a.s. | 9/30/2011 | FICO0034514-519 |
| 65 | Amendment One to Schedule to Master Software License Agreement | Fair Isaac Corporation | Dell USA L.P. | 12/20/2011 | FICO0035195-196 |
| 66 | Amendment One to Fair Isaac Software License Agreement | Fair Isaac International Corporation | Bridgewater Systems Corporation | 6/8/2012 | FICO0037053-056 |
| 67 | Amendment Three to Software License and Services Agreement | Fair Isaac Corporation | EMC Corporation | 6/29/2012 | FICO0036561-564 |
| 68 | Professional Services Statement of Work | Fair Isaac Corporation | EMC Corporation | 7/16/2012 | FICO0036679-682 |
| 69 | Amendment to Software License and Services Agreement | Fair Isaac Services Limited | E-Commerce Center, LLP | 8/23/2012 | FICO0037096-098 |
| 70 | Independent Software Vendor Agreement | Fair Isaac Corporation | Korea Expert Inc. | 9/14/2012 | FICO0051313-330 |

**Fair Isaac Corporation v. Federal Insurance Company**                                                                                **Exhibit 12.0**
Summary of Blaze Advisor License Agreements

| | Title of Agreement | Licensor | Licensee | Effective Date | Bates |
|---|---|---|---|---|---|
| 71 | Amendment to Fair Isaac Order Form Blaze Advisor business rules management system and Fair Isaac Case | Fair Isaac Corporation | Paymentech, LLC | 9/21/2012 | FICO0040160-161 |
| 72 | Amendment to Credit Bureau Distributor Agreement Blaze Advisor License | Fair Isaac Services Limited | The National Bureau of Credit Histories | 3/7/2013 | FICO0051737-749 |
| 73 | Fair Isaac Order Form Blaze Advisor | Fair Isaac Services Limited | ING Direct N.V. Sucursal Espana | 6/26/2013 | FICO0052142-174 |
| 74 | Additional Agreement | Fair Isaac Corporation | E-Commerce Center, LLP | 6/28/2013 | FICO0039515-516 |
| 75 | Independent Software Vendor Agreement FICO Blaze Advisor Business Rules Management | Fair Isaac Corporation | Trizetto Corporation | 6/29/2013 | FICO0052282-320 |
| 76 | Amendment #3 to Software License Agreement | Fair Isaac Corporation | Express Scripts Inc. | 6/30/2013 | FICO0039526-529 |
| 77 | Statement of Work | Fair Isaac International Corporation | La Regie de l'Assurance Maladie du Quebec | 7/8/2013 | FICO0039644-649 |
| 78 | Amendment Number 3 to Fair Isaac Software License and Services Agreement Blaze Advisor | Fair Isaac Corporation | La Regie de l'Assurance Maladie du Quebec | 12/9/2013 | FICO0006798 |
| 79 | Fair Isaac Order Form Blaze Advisor | Fair Isaac Corporation | Xerox Business Services, LLC | 4/1/2014 | FICO0011010-024 |
| 80 | Amendment Four Fair Isaac Software License and Services Agreement | Fair Isaac Corporation | EMC Corporation | 4/28/2014 | FICO0007740-743 |

**Fair Isaac Corporation v. Federal Insurance Company**                                                                    **Exhibit 12.0**
Summary of Blaze Advisor License Agreements

| | Title of Agreement | Licensor | Licensee | Effective Date | Bates |
|---|---|---|---|---|---|
| 81 | Maintenance Purchase Order Form Blaze Advisor & Model Builder | Fair Isaac Corporation | E-Commerce Center, LLP | 7/25/2014 | FICO0008589-602 |
| 82 | Assignment and Assumption Agreement | Fair Isaac Corporation | Aetna Life Insurance Company and Aetna Health Management LLC | 9/23/2014 | FICO0009711-713 |
| 83 | Amendment Two to License Agreement | Fair Isaac Corporation | Assurant, Inc. | 9/30/2014 | FICO0009142-143 |
| 84 | Amendment Number 1 to the Purchase Order Form for Support and Services for Blaze Advisor & Model Builder | Fair Isaac Corporation | E-Commerce Center, LLP | 9/10/2015 | FICO0012821-823 |
| 85 | Statement of Work | Fair Isaac Corporation | La Regie de l'Assurance Maladie du Quebec | 5/31/2016 | FICO0014354-358 |
| 86 | Product License and Services Agreement: FICO Decision Management Platform | Fair Isaac Corporation | DFS Corporate Services LLC | 6/30/2016 | FICO0042267-284 |
| 87 | Amendment No. 2 to the Agreement | Fair Isaac Corporation | Cerner Health Services, Inc. | 9/30/2016 | FICO0059914-923; FICO0057876-885 |
| 88 | Amendment to Product License and Services Agreement: FICO Decision Management Platform | Fair Isaac Corporation | Discover Financial Services, Inc. | 12/15/2017 | FICO0018443-444 |

**Fair Isaac Corporation v. Federal Insurance Company**                                                                      **Exhibit 12.1**
Summary of Blaze Advisor Settlement Agreements

| | Title of Agreement | Licensor | Licensee | Effective Date | Bates |
|---|---|---|---|---|---|
| 1 | Settlement and Release Agreement | Fair Isaac Corporation | Electronic Data Systmens Corporation | 6/21/2006 | FICO0022942-944 |
| 2 | Confidential Settlement Agreement and Release | Fair Isaac Corporation | Oracle America, Inc. | 3/26/2013 | FICO0038508-514 |
| 3 | Settlement Agreement | Fair Isaac Services Limited | National Bureau of Credit Histories | 1/19/2015 | FICO0011439-440 |
| 4 | Termination and Restatement of Blaze Advisor Business Rules Management System Order Forms | Fair Isaac Corporation | Xerox Business Services, LLC | 71/2016 | FICO0015531-554 |
| 5 | Confidential Settlement Agreement and Release | Fair Isaac Corporation | Xerox Business Services, LLC | 11/4/2016 | FICO0015524-530 |
| 6 | Settlement Agreement and Release | Fair Isaac Corporation | Software AG | 3/6/2017 | FICO0016441-458 FICO0016771 |
| 7 | Settlement Agreement and Release | Fair Isaac Corporation | Dell USA L.P., Dell Inc., EMC Corporation | 3/10/2017 | FICO0016269-285 |