# EXHIBIT 14

```
 1                 UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
 2   ---------------------------------------------------------
     Fair Isaac Corporation, a       )
 3   Delaware corporation,           )  File No. 16-cv-1054
                                     )          (DTS)
 4          Plaintiff,                )
                                     )
 5   vs.                             )  Minneapolis, Minnesota
                                     )  December 13, 2022
 6   Federal Insurance Company, an   )  3:56 p.m.
     Indiana corporation, and ACE    )
 7   American Insurance Company, a   )
     Pennsylvania corporation,       )
 8                                   )
            Defendants.              )
 9   ---------------------------------------------------------

10           BEFORE THE HONORABLE DAVID T. SCHULTZ
         UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
11                     (MOTION HEARING)
     APPEARANCES:
12   For the Plaintiff:         Merchant & Gould, PC
                                ALLEN W. HINDERAKER, ESQ.
13                              MICHAEL A. ERBELE, ESQ.
                                PAIGE S. STRADLEY, ESQ.
14                              HEATHER J. KLIEBENSTEIN, ESQ.
                                150 South Fifth Street
15                              Suite 2200
                                Minneapolis, Minnesota 55402
16
     For the Defendants:        O'Melveny & Myers, LLP
17                              LEAH GODESKY, ESQ.
                                7 Times Square
18                              New York, New York 10036

19                              Fredrikson & Byron
                                TERRENCE J. FLEMING, ESQ.
20                              RYAN C. YOUNG, ESQ.
                                200 South Sixth Street
21                              Suite 4000
                                Minneapolis, Minnesota 55402
22
     Court Reporter:            PAULA K. RICHTER, RMR-CRR-CRC
23                              300 South Fourth Street
                                Minneapolis, Minnesota 55415
24
         Proceedings reported by certified stenographer;
25   transcript produced with computer.
```

**EXHIBIT 14**

1    to the perpetual license fee that was negotiated in 2006
2    with a very different organization.
3             In 2016, when we had the assignment event, when
4    the Chubb Corporation was acquired by a much larger
5    insurance company, there were negotiations for a perpetual
6    license that FICO premised off of a $30 billion enterprise,
7    which was at the time of 2016.  That number is in.  That
8    number relates to our commercial purpose and our
9    understanding of the breach of paragraph 10.8.  It also
10   relates to the license fee that we sought at that time,
11   which was also a perpetual one.
12            THE COURT:  Which was what, if I might ask?
13            MR. HINDERAKER:  About 3.5 million.
14            And our witnesses are going to have to answer the
15   question, why are you seeking $47 million now for four years
16   of use, of unauthorized use, when you were willing to
17   negotiate a perpetual license for three and a half million?
18   And we will answer that.  We will answer that to the -- we
19   will answer that on the primary proposition that when we
20   priced that perpetual at 3.5 million, we had a lot of other
21   value in place that we felt deserved recognition, and we
22   priced 3.5 to get that perpetual business relationship for
23   all of the reasons that will be described at the trial.  In
24   terms of our theory of the case being honored, our witnesses
25   will explain how $47 million for four years of unauthorized

1       use is reasonable in light of that perpetual negotiation.
2       They're very different.
3               Now, Judge Wright has a nice quote that also is
4       part of the answer to the question, which is not
5       acknowledged, but it is this:  She was discussing the
6       evidence that's relevant to our lost license fee claim, and
7       she says, quote, at page 55 of the summary judgment order,
8       "This includes evidence of FICO's standard pricing
9       methodology and together with evidence of defendants' use of
10      Blaze Advisor."
11              So we will put in our evidence of our standard
12      pricing methodology.  And we price annual license fees on a
13      standard basis much, much different than we do a perpetual,
14      for all the reasons we'll describe.  And then when we put on
15      the evidence of the annual license fee per our standard
16      practices, we will, according to -- and we have to.  Judge
17      Wright didn't like how we were doing it before and she says,
18      you have to look at the objective evidence of how the
19      defendants are using the software.  And we will do that for
20      the lost license fee.  And one thing I do agree with is that
21      our lost license fees are application by application by
22      application.
23              So, for example, we have -- the largest annual
24      license fee that we seek for the largest application is
25      about $630,000 for one year.  The jury should hear why

1   evidence, that is, alternative products, is relevant to two
2   different legal propositions.  Mr. Bakewell can testify to
3   the fact that there are products alternative to Blaze
4   Advisor as part of his lost license fee negotiation,
5   downward factor hypothetical, and it also bears on the
6   proposition of disgorgement and any contribution to revenue.
7            The other point -- another point, the law of
8   damages for infringement is it's a bit backward-looking, but
9   it's the lost -- it's the hypothetical negotiation at the
10  time of infringement for the unauthorized use.  As I hear
11  counsel's argument, the proposition is that we would license
12  on a perpetual basis, ongoing business relationship basis,
13  to someone who has infringed our copyrights for four years.
14  It's a non sequitur.  It's not how it works.  At the time of
15  infringement, what's the value of the fee -- of the software
16  that you're using without authority.
17           And then finally, as I hear the argument, FICO
18  would be -- would not be permitted to tell the jury that its
19  lost license fee numbers are very reasonable because
20  automated decision-making with Blaze Advisor brought, in the
21  aggregate over four years, $35 billion worth of value
22  through this company -- or these companies.  That's fair
23  that we be able to do that.  $47 million is not a huge
24  percentage of that number, but it aligns with how we license
25  and the value that the software gives.