## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

FAIR ISAAC CORPORATION,

       Plaintiff,

   v.

FEDERAL INSURANCE COMPANY,
an Indiana corporation, and ACE
AMERICAN INSURANCE COMPANY,
a Pennsylvania corporation,

       Defendants.

Court File No. 16-cv-1054
(WMW/DTS)

***REDACTED***
**DEFENDANTS' MEMORANDUM
OF LAW IN SUPPORT OF THEIR
MOTION IN LIMINE REGARDING
NEIL ZOLTOWSKI'S TESTIMONY
ON FICO'S ALLEGED ACTUAL
DAMAGES**

Defendants Federal Insurance Company and ACE American Insurance Company submit this memorandum of law in support of their motion *in limine* to exclude testimony from Plaintiff Fair Isaac Corporation's ("FICO") expert, Neil Zoltowski, regarding FICO's alleged actual damages.

## INTRODUCTION

On the eve of trial, FICO announced that it intends for its damages expert, Neil Zoltowski, to offer wide-ranging opinions on how FICO's alleged actual damages—lost license fees reflecting Blaze Advisor's fair market value—should be measured. This is improper for two reasons. First, the Court has already excluded Zoltowski's opinions on FICO's actual damages as unreliable, subjective, and inconsistent with the applicable legal standard. As such, Zoltowski's opinions on these issues would be nothing short of a collateral attack on a prior ruling of the Court. Second, to the extent Zoltowski will attempt to adhere to the appropriate legal standard by offering a brand-new actual damages

calculation, that analysis was not included in Zoltowski's written report and should therefore be excluded under Federal Rules of Civil Procedure 26(a)(2) and 37(c)(1).

## BACKGROUND

**A.     Zoltowski Calculated FICO's Actual Damages According to an Application-Based Methodology.**

In his expert report, FICO's damages expert, Neil Zoltowski, claimed FICO's lost license fees from April 2010 to December 2019 were $37,362,272.  Declaration of Leah Godesky ("Godesky Decl."), Ex. 1 ("Zoltowski Rep."), ¶ 117 & Schedule 3.0.  He derived that figure by assigning an annual fee to each of Defendants' applications that allegedly used Blaze Advisor, multiplying that amount by the number of years in which Defendants were alleged to have used Blaze Advisor without a license, and summing the resulting subtotals.  *Id.*  Schedules 3.0, 4.0, 5.0.

This application-based fee structure has no relation to the fair market value of a Blaze license.  As FICO employee Bill Waid conceded, ██████████████████

████████████████████████████████████████████████████████████████

███████████████  Dkt. 77, ¶ 11; *see also* Godesky Decl., Ex. 2 ("Waid Apr. 2019 Dep."), 77 (suggesting that ██████████████████████████████

█████████████████████████  A licensee using Blaze with that number of applications would, as Federal did, purchase an enterprise-wide license.  Indeed, as Waid testified, FICO generally offers clients enterprise-wide licenses when they █████████

████████████████████████████████████  Godesky Decl.,  Ex. 3 ("Waid Jan. 2019 Dep."), 24.  Moreover, FICO has offered enterprise-wide licenses to

large corporations for fees between ████████████████ Godesky Decl., Exs. 4-10—sums that do not approach the $47 million figure that results from FICO's application-based analysis.[1]

## B.  The Court Excluded Zoltowski's Actual-Damages Calculation as Subjective, Unreliable, and Inapposite.

In its March 2020 order, the Court barred Zoltowski from offering his opinions about FICO's actual damages.  The Court found that the appropriate "methodology for determining FICO's actual damages—the fair market value of Blaze Advisor—is to calculate a hypothetical lost license fee based on 'the reasonable license fee on which a willing buyer and a willing seller would have agreed.'"  Dkt. 731 at 31 (quoting *On Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001)).  "Zoltowski's opinions as to FICO's actual damages[,]" however, "do not consider what a willing seller and a willing buyer would have contemplated.  Instead, his opinions focus primarily on what FICO would have charged Defendants had FICO known that Defendants were bound to the license … with no prospect of any future business dealing between the parties thereafter." *Id.*  Such a pricing analysis, which is based on "what FICO subjectively would have charged[,]" after-the-fact is "irrelevant to [the actual damages] inquiry."  *Id.*  In sum, Zoltowski's application-based pricing analysis produced "a subjective and unreliable result that is inconsistent with the applicable legal standard." *Id.* at 32.  The Court allowed that "some of the facts underlying Zoltowski's opinion may be relevant to the calculation of a

---

[1] Defendants have separately moved *in limine* to exclude testimony and evidence purporting to calculate FICO's actual damages according to the "subjective and unreliable" application-based methodology.  Dkt. 731 at 32.

hypothetical lost license fee," but held that "Zoltowski's opinions are unreliable and would not be helpful to a jury[.]"  *Id.* at 31-32.

**C.    FICO Intends for Zoltowski to Offer Testimony on FICO's Actual Damages Using a New, Undefined Analysis.**

Despite this Court's ruling, FICO has made clear it nevertheless plans to elicit Zoltowski's opinions as to actual damages at trial.  In its witness list, FICO stated that it will offer Zoltowski's testimony on "[t]he hypothetical negotiation relating to actual damages under copyright law and lost license fee damages under breach of contract law[.]" Dkt. 929 at 2.  FICO offered more specifics in its opposition to Defendants' motion to bifurcate the trial, announcing that Zoltowski will testify "that the fact the unauthorized use was connected to the issuance of insurance in the names of all the subsidiary insurance companies managed by Chubb & Son and then by ACE American must be considered in the hypothetical negotiation to determine fair market value."  Dkt. 910 at 12.  FICO also represented that "Zoltowski will explain that the intrinsic value of Blaze Advisor to determine fair market value must be judged considering the economic realities of its use." *Id.*  In support of its plan to offer this testimony, FICO cited a portion of Zoltowski's expert report in which he opined that "[t]he economic reality is that the Defendants, their subsidiaries, and their pooling entities are a single economic unit rather than independent businesses."  Zoltowski Rep. ¶¶ 30-50; *see* Dkt. 910 at 12.

## ARGUMENT

The testimony FICO intends for Zoltowski to offer about Blaze Advisor's fair market value is inadmissible for two reasons.  First, the Court has barred Zoltowski from

opining about FICO's actual damages—it concluded all of Zoltowski's opinions concerning actual damages were unreliable and accordingly excluded those opinions in their entirety.[2]  Second, to the extent FICO intends for Zoltowski to testify based on a damages analysis different from the one the Court excluded, that testimony was not disclosed in Zoltowski's written report and is therefore inadmissible.

I.    **UNDER THE COURT'S ORDER, ZOLTOWSKI MAY NOT OPINE AS TO FICO'S ACTUAL DAMAGES.**

Zoltowski may not offer opinions regarding FICO's alleged actual damages.  The Court held, in no uncertain terms, that because Zoltowski's "opinions as to actual damages are unreliable and would not be helpful to a jury, these opinions are excluded."  Dkt. 731, at 31-32.  But in a blatant "collateral attack" on that decision, Dkt. 935 at 14, FICO plans to elicit Zoltowski's testimony as to how "economic realities" and Blaze Advisor's "intrinsic value" "must be considered in the hypothetical negotiation to determine fair market value[,]" Dkt. 910 at 12; Dkt. 929 at 2.  In other words, Zoltowski plans to provide opinions about actual damages.   Indeed, FICO has been clear that Zoltowski's new opinions are relevant to both its claims for disgorgement and actual damages.  *See* Dkt. 910 at 10-13, 17.

FICO appears to assert that Zoltowski may testify as to Blaze Advisor's fair market value because the Court's Order noted that "some of the facts underlying Zoltowski's opinion may be relevant to the calculation of a hypothetical lost license fee[.]"  Dkt. 731 at

---

[2]  The Court noted that "some of the *facts* underlying Zoltowski's opinion may be relevant[,]" it excluded all of Zoltowski's *opinions* concerning actual damages without limitation.  Dkt. 731 at 31-32 (emphasis added).

31-32.  To that end, FICO asserts that "Zoltowski may testify to relevant facts speaking to fair market value[.]"  Dkt. 910 at 12 n.11.  That, however, is not the sort of testimony FICO intends for Zoltowski to give.  Rather, FICO intends to elicit Zoltowski's opinion about what factors the jury should consider in assessing Blaze Advisor's fair market value.  First, he will opine on "[t]he hypothetical negotiation relating to actual damages under copyright law and lost license fee damages under breach of contract law[.]"  Dkt. 929 at 2.  In doing so, he will testify "that the fact the unauthorized use was connected to the issuance of insurance in the names of all the subsidiary insurance companies managed by Chubb & Son and then by ACE American must be considered[.]"  Dkt. 910 at 12.  Next, he "will explain that the intrinsic value of Blaze Advisor to determine fair market value must be judged considering the economic realities of its use."  *Id.*  Neither of these proposed lines of testimony solely concerns "the facts underlying Zoltowski's opinion[.]"  Dkt. 731 at 31.  Instead, both reflect his apparent opinion as to how the jury should calculate FICO's actual damages.  Dkt. 929 at 2.  But because Zoltowski's "opinions as to actual damages are unreliable and would not be helpful to a jury, these opinions are excluded."  *Id.* at 32.

In any event, Zoltowski cannot testify to the facts that would underlie a hypothetical negotiation because, as a retained expert, he lacks personal knowledge of how FICO has approached Blaze licensing negotiations—with Federal or any other licensee.  *See* Fed. R. Evid. 602.  Moreover, it is especially inappropriate for an *expert* to testify to facts of which he lacks personal knowledge because "the witness's aura of credibility as an expert may inflate the credibility of [his] perception as a fact witness in the eyes of the jury[.]"  *United*

*States v. Overton*, 971 F.3d 756, 763 (8th Cir. 2020).  For these reasons, Zoltowski cannot testify to the facts underlying a hypothetical negotiation.[3]

## II.     ANY NEW OPINIONS FICO INTENDS FOR ZOLTOWSKI TO OFFER ARE BEYOND THE SCOPE OF HIS REPORT AND THEREFORE INADMISSIBLE.

To the extent FICO intends for Zoltowski to offer a wholly new computation of FICO's actual damages—one based on Blaze Advisor's fair market value rather than "what FICO subjectively would have charged[,]" Dkt. 731 at 31—such analysis is also inadmissible because it was not part of Zoltowski's written report, and the failure to disclose these opinions was not substantially justified or harmless.  Federal Rule of Civil Procedure 26(a) requires an expert witness to prepare a written report containing "a complete statement of all opinions the witness will express and the basis and reasons for them" as well as "the facts or data considered by the witness in forming them[.]"  Fed. R. Civ. P. 26(a)(2)(B)(i), (ii).  "Rule 37(c)(1) provides that when a party fails to comply with the disclosure requirements in Rule 26(a), 'the party is not allowed to use [undisclosed] information … to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless.'"  *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 702 (8th Cir. 2018).

---

[3] FICO intends to present fact witnesses to "establish the fair market value of Blaze Advisor[,]" including Bill Waid, who "has personally been involved in hundreds of Blaze Advisor licensing negotiations."  Dkt. 910 at 10.  There is no reason for Zoltowski to opine to these facts other than to present factual evidence in the guise of expert testimony, which is improper.  *Overton*, 971 F.3d at 763.

### A. Zoltowski Never Disclosed Opinions regarding a Hypothetical Negotiation or the Fair Market Value of Blaze.

The testimony FICO intends for Zoltowski to give was not part of his report. Faced with the reality of the Court's ruling, FICO now seeks to have Zoltowski testify to Blaze Advisor's fair market value. *See* Dkt. 929 at 2; Dkt. 910 at 12. But in his report, Zoltowski's only analysis of FICO's actual damages used the application-based methodology the Court has excluded. Zoltowski's report does not include the testimony FICO now wants him to give: that FICO's actual damages should be determined according to a hypothetical negotiation, Dkt. 929 at 2, and that Defendants' corporate structure and Blaze Advisor's intrinsic value are relevant to that analysis, Dkt. 910 at 12.

The testimony FICO intends to elicit from Zoltowski thus represents a wholly new mode of analysis that he has never offered before—and that Defendants have not had the opportunity to analyze or rebut. *See Cardiac Pacemakers, Inc. v. Aspen II Holding Co., Inc.*, 2006 WL 5159512, at *4 (D. Minn. May 8, 2006) (excluding an "untimely" supplemental expert report "contain[ing] new materials, such as an alternative damages calculation" because it would prejudice the other party "if the report were admitted on such short notice before trial is scheduled to begin").

In fact, FICO did not even raise the prospect of this new testimony until it filed its opposition to Defendants' motion to bifurcate just one month ago. In its opposition, FICO cites twenty paragraphs of Zoltowski's report, apparently to suggest that the "opinions[,]" "facts or data" contained in his proposed testimony can be found there. Fed. R. Civ. P. 26(a)(2)(B)(i), (ii); *see* Dkt. 910 at 12 (repeatedly citing Zoltowski Rep. ¶¶ 30-50). They

cannot.  In those paragraphs, Zoltowski describes the corporate structure of Defendants and how the merger between Chubb and ACE affected that structure.  *Id.*  The cited paragraphs culminate with the opinion that "Defendants, their subsidiaries, and their pooling entities are a single economic unit rather than independent businesses."  *Id.* ¶ 50. These passages bear no relevance to a hypothetical negotiation between the parties. Nowhere in his report does Zoltowski suggest that "the fact the unauthorized use was connected to the issuance of insurance in the names of all the subsidiary insurance companies managed by Chubb & Son and then by ACE American must be considered in the hypothetical negotiation to determine fair market value."  Dkt. 910 at 12.  Nor does he opine that "the intrinsic value of Blaze Advisor to determine fair market value must be judged considering the economic realities of its use."  *Id.*  Rather, his report merely expresses a view about Defendants' corporate structure, with no accompanying analysis of that structure's effect on Blaze Advisor's fair market value.

Indeed, the terms "intrinsic value" and "fair market value" do not appear once in Zoltowski's initial report.  And what's more, in his reply report, Zoltowski expressly dismissed the "hypothetical negotiation framework" and consideration of Blaze Advisor's "intrinsic value" as legally irrelevant.  Godesky Decl., Ex. 11 ("Zoltowski Reply Rep."), ¶¶ 55-60.  He opined that "reconstruction of a hypothetical negotiation to determine FICO's damages is wholly incorrect and unsupported[,]" and dismissed a "hypothetical negotiation dictated by the so-called 'intrinsic value' of Blaze Advisor as no more than a red herring." *Id.* ¶¶ 55, 57.  This about-face by FICO's damages expert should be seen for what it is: a

self-serving collateral attack on the Court's ruling by attempting to reintroduce a baseless

damages theory that has been previously excluded.

### B.   FICO's Failure to Disclose Zoltowski's New Opinions is Not Substantially Justified or Harmless.

FICO's failure to include Zoltowski's new testimony in his expert report is not

"substantially justified or … harmless." Fed. R. Civ. P. 37(c)(1). FICO offers no reason

for the change in the analysis it intends for Zoltowski to use in calculating actual damages.

And it would prejudice Defendants to permit Zoltowski to opine based on a wholly new,

undisclosed analysis of FICO's actual damages. Defendants cannot adequately prepare to

rebut his new testimony.[4]

The failure to timely disclose expert testimony may be harmless if the other party

had "sufficient notice" of the testimony, *United States v. Ameren Missouri*, 9 F.4th 989,

1007 (8th Cir. 2021)—for instance, if the testimony was included in substance in the

written report, *see id.*, if the other party had sufficient time to review a formal supplement

to the written report, *see United States v. STABL, Inc.*, 800 F.3d 476, 488 (8th Cir. 2015),

or if the other party had actual notice of the expert's methods and conclusions, *see Crump*

---

[4] Courts in this district disagree on the correct legal standard for determining whether a violation of Rule 26(a) is substantially justified or harmless. Some courts balance four factors: "the importance of the excluded material, the party's explanation for failing to comply with the required disclosure, the potential prejudice that would arise from permitting the material to be used …, and the availability of a continuance to cure such prejudice." *Eng'g & Constr. Innovations, Inc. v. Bradshaw Constr. Corp.*, 2022 WL 3585153, at *2 (D. Minn. Aug. 22, 2022). Others have concluded that "there is no such four-factor test" in determining whether exclusion under Rule 37(c)(1) is appropriate. *Niazi Licensing Corp. v. St. Jude Medical S.C., Inc*, 2020 WL 1617879, at *2 (D. Minn. Apr. 2, 2020) (Wright, J.). Either way, however, the Court should exclude Zoltowski's testimony. Expert testimony on actual damages is likely to be of central importance in this case. FICO has furnished no explanation for the late change in the analysis it will elicit from Zoltowski. Rebutting a wholly new line of expert analysis—that even now has not been fully disclosed—would prejudice Defendants. And with trial looming, a curative continuance is impractical.

*v. Vista Prods., Inc.*, 400 F.3d 1104, 1110 (8th Cir. 2005). None of those circumstances is present here. Zoltowski's written report does not contain any analysis of the hypothetical negotiation from which Blaze Advisor's fair market value is deduced, *see* Zoltowski Rep. ¶¶ 113-21—indeed, as noted above, he expressly disclaimed "the hypothetical negotiation framework[,]" Zoltowski Reply Rep. ¶¶ 55. He has not supplemented the actual damages analysis in his written report. *See* Godesky Decl., Exs. 12-13. Nor has FICO otherwise communicated to Defendants the substance of Zoltowski's new analysis. All FICO has said is that Zoltowski will opine that Blaze Advisor's "intrinsic value" and "economic realities" should factor into the assessment of FICO's actual damages. Dkt. 910 at 12; Dkt. 929 at 2. That is not enough to excuse a violation of Rule 26(a)'s disclosure requirement.

This litigation is nearly seven years old. FICO is represented by sophisticated counsel that has disclosed hundreds of pages of initial and supplemental reports prepared by three experts across three years. FICO's surreptitious attempt to rewrite its key expert's testimony on the eve of trial is inappropriate and unfair. The Court should not allow it.

## <u>CONCLUSION</u>

The Court should preclude Zoltowski from offering any testimony regarding FICO's alleged actual damages.

Dated: January 13, 2023                    */s Terrence J. Fleming*

Terrence J. Fleming (#0128983)
tfleming@fredlaw.com
Leah C. Janus (#0337365)
ljanus@fredlaw.com
Christopher D. Pham (#0390165)
cpham@fredlaw.com
Ryan C. Young (#0397751)
ryoung@fredlaw.com
Panhia Vang (#399444)
pvang@fredlaw.com

**Fredrikson & Byron, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
(612) 492-7000 (tel.)
(612) 492-7077 (fax)

Leah Godesky (Admitted Pro Hac Vice)

**O'Melveny & Myers LLP**
Times Square Tower
7 Times Square
New York, NY 10036
(212) 326-2000
lgodesky@omm.com

*Attorneys for Federal Insurance Company and ACE American Insurance Company*