# EXHIBIT 1 - REDACTED

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

FAIR ISAAC CORPORATION,

     Plaintiff,

v.

FEDERAL INSURANCE COMPANY, and
ACE AMERICAN INSURANCE COMPANY

     Defendants.

Case No. 16-CV-1054(WMW/DTS)

**EXPERT REPORT OF
NEIL J. ZOLTOWSKI
WITH RESPECT TO DAMAGES**

Respectfully submitted this 19th day of April, 2019

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

EXHIBIT
1

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................ 1

II.   ASSIGNMENT ................................................................... 2

III.  INFORMATION CONSIDERED ....................................... 2

IV.  BACKGROUND ................................................................ 3

    A. Parties ...................................................................... 3

        i.    FICO .................................................................. 3

            a)  Blaze Advisor Software ............................. 3

            b)  Copyrights for Blaze Advisor ................... 4

        ii.   Chubb Corporation – Pre-Acquisition ............... 5

            a)  Federal ...................................................... 6

            b)  Chubb & Son ............................................. 6

        iii.  Chubb Limited – Post-Acquisition .................... 7

            a)  Federal ...................................................... 8

            b)  ACE American .......................................... 8

        iv.  Change of Federal Ownership – Post Acquisition ..................... 9

        v.   A Single Economic Unit .................................. 10

            a)  Consolidation of Federal and ACE American Financial Statements .................. 10

            b)  Parent and Subsidiary Relationships ......... 11

            c)  Pooling Agreements ................................... 12

            d)  Consolidated Income Tax Returns – Post Acquisition .......... 16

            e)  Economic Benefits of Single Economic Unit ......... 16

    B. Software License and Maintenance Agreement ......... 17

        i.    Original Agreement .......................................... 17

        ii.   Amendments ..................................................... 18

        iii.  FICO Professional Services Provided to Federal ......... 19

    C. Defendants' Pervasive Use of Blaze Advisor ........... 20

        i.    Federal/Chubb – Pre-Acquisition .................... 20

        ii.   Federal/ACE American – Post-Acquisition ..... 21

    D. Termination of Agreement ....................................... 21

V.   SUMMARY OF FICO'S ALLEGATIONS ...................... 22

    A. Breach of SLM Agreement ...................................... 22

        i.    Pre-Acquisition Distribution of Blaze Advisor ......... 22

        ii.   Post-Termination Use of Blaze Advisor ........... 23

    B. Copyright Infringement ........................................... 24

        i.    Pre-Acquisition Unlicensed Distribution of Blaze Advisor ......... 24

        ii.   Post-Termination Use of Blaze Advisor ........... 24

i

C. Defendants' Applications Incorporating Blaze Advisor ....................................................25
    *i.* Domestic Applications............................................................................................25
      a) Policy Administration Applications.............................................................25
      b) Compliance-Related Applications Using Blaze Advisor............................26
      c) Other Applications Using Blaze Advisor ...................................................28
    *ii.* Foreign Applications..............................................................................................33
      a) European Zone Executive Risk ("EZER") .................................................33
      b) Evolution....................................................................................................34
      c) Broker Site ..................................................................................................35
      d) Adapt ...........................................................................................................35
      e) Exari ...........................................................................................................35
D. FICO's Pricing for Blaze Software ...............................................................................36
    *i.* Named Application Standard Deployment License Fees ....................................36
    *ii.* Support and Maintenance Fees ...........................................................................37
    *iii.* Development Seat Fees.........................................................................................38
    *iv.* iv. Multi-Platform Uplift .......................................................................................38

VI. SUMMARY OF OPINIONS ...................................................................................................38
A. Lost Software Licensing, Support and Maintenance Fees........................................38
B. Profits from Using and Distributing Blaze Advisor ................................................39

VII. ANALYSIS OF DAMAGES ...................................................................................................39
A. Lost FICO Software License, Support, and Maintenance Fees ...........................39
    *i.* Nature of Defendants' License Agreements ........................................................39
    *ii.* Size and Development Seats for Defendants' Applications ....................................40
    *iii.* License, Development, Support, and Maintenance Fees .......................................40
B. Understanding of Damages Related to Copyright Infringement .........................41
    *i.* Available Damages Remedies (Copyright Infringement)....................................41
C. FICO's Actual Damages .............................................................................................42
D. Disgorgement/Defendants' Profits...............................................................................42
    *i.* Defendants Use of Blaze Advisor Contributes to Insurance Premiums ..................42
E. Disgorgement/Defendants' Profits..............................................................................43
    *i.* Accused Domestic Infringement.............................................................................43
    *ii.* Accused Foreign Infringement .............................................................................43

## LIST OF SCHEDULES

| Schedule Number | Description |
| --- | --- |
| 1.0 | Curriculum Vitae of Neil J. Zoltowski |
| 2.0 | Documents Considered |
| 3.0 | Summary of Opinions |
| 4.0 | Summary of Lost Fees for Domestic Applications |
| 5.0 | Summary of Lost Fees for Foreign Applications |
| 6.0 | Domestic Named Application Annual Fees |
| 6.1 | Domestic Application Perpetual License Fee Calculation |
| 7.0 | Foreign Named Application Annual Fees |
| 7.1 | Foreign Application Perpetual License Fee Calculation |
| 8.0 | Summary of Defendants' Domestic Gross Written Premiums |
| 9.0 | Summary of Defendants' Foreign Gross Written Premiums |
| 10.1 | Summary of Domestic Gross Written Premiums by Application - All Writing Companies |
| 10.2 | Summary of Domestic Gross Written Premiums by Application - Chubb INA Holdings, Inc. Subsidiaries |
| 10.3 | Summary of Domestic Gross Written Premiums by Application - Defendants, Subsidiaries and Pooling Entities |
| 11.1 | Summary of Foreign Gross Written Premiums by Application - All Writing Companies |
| 11.2 | Summary of Foreign Gross Written Premiums by Application - Chubb Corporation and Chubb INA Holdings, Inc. Subsidiaries |

iii

| Schedule Number | Description |
|---|---|
| 11.3 | Summary of Foreign Gross Written Premiums by Application - Federal and Subsidiaries and Pooling Entities |
| 12.0 | Consolidated Gross Written Premium Detail |
| 13.1 | Writing Company Categorization - Chubb Corporation and Chubb INA Holdings, Inc. Subsidiaries |
| 13.2 | Writing Company Categorization - Defendants, Subsidiaries and Pooling Entities |
| 14.1 | Summary of Pre-Acquisition Federal Subsidiaries as of December 31, 2013 |
| 14.2 | Summary of Pre-Acquisition Federal Subsidiaries as of December 31, 2014 |
| 14.3 | Summary of Post-Acquisition Federal Subsidiaries as of December 31, 2016 |
| 14.4 | Summary of Post-Acquisition Federal Subsidiaries as of December 31, 2017 |
| 14.5 | Summary of Post-Acquisition Federal Subsidiaries as of December 31, 2018 |
| 15.1 | Summary of Post-Acquisition ACE American Subsidiaries as of December 31, 2016 |
| 15.2 | Summary of Post-Acquisition ACE American Subsidiaries as of December 31, 2017 |
| 15.3 | Summary of Post-Acquisition ACE American Subsidiaries as of December 31, 2018 |
| 16.0 | Summary of Defendants' Intercompany Pooling Arrangements |
| 17.0 | Defendants' Board Members Pre- and Post-Acquisition Analysis |
| 18.1 | Chubb Corporation Business Units and Lines of Business |
| 18.2 | Chubb Limited Business Segments and Lines of Business |

## I.        INTRODUCTION

1.        I, Neil J. Zoltowski, am a Partner in the San Francisco, California office of StoneTurn Group, LLP ("StoneTurn"). I have provided financial and economic consulting services – including economic valuation of intellectual property such as patents, trade secrets, trademarks and copyrights – to counsel and client companies for more than 20 years. I have been involved with, and/or managed, hundreds of financial consulting engagements with the majority of these projects concerning economic damages, including numerous engagements on behalf of Fortune 500 companies.

2.        In conjunction with my project experience, I have also gained expertise through certifications and trainings. I have earned the Certified Valuation Analyst ("CVA") and Master Analyst in Financial Forensics ("MAFF") designations granted by the National Association of Certified Valuators and Analysts ("NACVA").[1]   Additionally, I have earned the Certified Licensing Professional ("CLP") designation from the Licensing Executives Society USA and Canada, Inc. ("LES")[2] and the Certified Patent Valuation Analyst ("CPVA") designation from The Business Development Academy ("BDA").[3]

---

[1] NACVA, an organization comprised of more than 7,000 CPAs and other valuation and consulting professionals, supports the users of business and intangible asset valuation services and financial forensic services, including damages determinations of all kinds and fraud detection and prevention, by training and certifying financial professionals in these disciplines. NACVA trains and certifies CVAs to perform business valuations as a service to both the consulting community and the users of their services. Through training and rigorous testing, CVAs demonstrate they are qualified to provide capable and professionally executed valuation services. NACVA's valuation designations, including the CVA designation, are the only valuation credentials accredited by the National Commission for Certifying Agencies. NACVA's MAFF credential is designed to provide assurance to the legal and business communities – the primary users of financial forensics services – that the designee possesses a level of experience and knowledge deemed acceptable by NACVA to provide competent and professional financial forensic support services. (www.nacva.com.)

[2] The CLP program is a professional designation intended to distinguish those who have demonstrated experience, proficiency, knowledge and exposure to licensing and commercialization of intellectual property through involvement in patenting, marketing, valuation, intellectual property law, negotiation, and intellectual asset management. (www.licensingcertification.org.)

Established in 1965, the LES is a professional society compromised of members engaged in the transfer, use, development, manufacture and marketing of intellectual property. LES is a member society of the Licensing Executives Society International, Inc., with a worldwide membership of over 9,000 members in 32 national societies, representing over 90 countries. (www.licensingcertification.org; and www.lesusacanada.org.)

[3] The CPVA program curriculum "is designed to prepare financial analysts, technology transfer professionals, intellectual property managers, licensing managers, inventors, patent lawyers and other business development

1

3.      A copy of my current curriculum vitae, which summarizes my qualifications and professional experience and includes a listing of my testimony over the preceding four years and publications over the preceding ten years, is attached as **Schedule 1.0**.

4.      StoneTurn charges $495 per hour for time I spend consulting, assessing damages and time that may be spent testifying related to my damages analysis. Neither my, nor my staff's, nor StoneTurn's compensation is affected in any way by either the conclusions I have reached or the outcome of this lawsuit.

## II.      ASSIGNMENT

5.      I have been retained as a damages expert in this matter by Merchant & Gould P.C., counsel for Plaintiff Fair Isaac Corporation ("FICO" or "Plaintiff"), to assess and quantify the economic damages sustained by FICO and the economic benefits received by Defendants Federal Insurance Company ("Federal") and ACE American Insurance Company ("ACE American") (collectively, the "Defendants") assuming Defendants are found liable for the alleged wrongful acts described in, among other things, FICO's Second Amended Complaint, including claims for breach of contract and copyright infringement.[4]

6.      The opinions I am rendering in this matter are based on consideration of case-specific facts and circumstances, as well as on my education, training, and experience. I am not offering any opinion regarding liability. This report summarizes my current opinions given the information available at the time of this report submission.

## III.      INFORMATION CONSIDERED

7.      The information that was considered in forming the opinions rendered is listed in **Schedule 2.0** to this report and in the footnotes and/or other citations to this report. I have considered information from a variety of sources, including information related to this litigation (including

---

executives with the skill set necessary to value patents."  The BDA "is committed to providing unparalleled educational opportunities to the business community."  Its courses and certifications "are designed to provide our clients with practical and implementable skills that will yield them competitive advantages in the marketplace." (www.cpva.info; www.bdacademy.com.)

[4] Second Amended Complaint, dated September 11, 2018.

2

legal filings and documents provided by the parties) and information from independent research (including information from the parties' websites and other publicly available sources).

8.      Additionally, I have considered information obtained from interviews of individuals with knowledge relevant to this case, including:

- o   Bick Whitener – Insurance Industry Expert on behalf of FICO; and

- o   William P. Waid – Vice President and General Manager of the Decision Management Line of Business at FICO.

9.      I plan to consider any additional information that may become available in this proceeding following the submission of this report and will modify or supplement my analysis and opinions accordingly. In connection with my anticipated testimony in this matter, I may create demonstrative exhibits and/or schedules that refer, or relate, to the subjects discussed in this report, or in any deposition testimony that I may be requested to provide. I have not yet created any such demonstratives as of the date of this report submission.

## IV.   BACKGROUND

### A.     Parties

#### i.     FICO

10.     With its principal place of business in San Jose, California, FICO is a "world leader in the design and development of predictive analytics and decision management software."[5] FICO provides products and services focused on "automat[ing], improv[ing], and connect[ing] decisions to enhance business performance" for businesses throughout the world in various industries including financial services, healthcare, insurance, and pharmaceuticals.[6]

#### a)     *Blaze Advisor Software*

11.     One of FICO's decision management software tools is the FICO® Blaze Advisor product ("Blaze Advisor").[7] Blaze Advisor is compatible with third-party applications, has been deployed in large enterprise applications, and I understand can be programmed to manage the "complexity

---

[5] Second Amended Complaint, dated September 11, 2018.

[6] Second Amended Complaint, dated September 11, 2018; https://www.fico.com/en/about-us#our-company.

[7] https://www.fico.com/en/products/fico-blaze-advisor-decision-rules-management-system.

needed in multi-step processes."[8] Blaze Advisor is a "business rules management solution" focused on "automat[ing] operational business decisions," which results in more "agility, consistency and precision" in companies' customer interactions.[9] I understand the process of "automating decisions" can be described as an automated way of "consistently applying the same business practices under the same cond[itions]."[10] Blaze Advisor users are able to "change [business] rule logic at any time" and to automatically deploy rule changes in all running systems" without interruption.[11]

12.     I understand some of the key benefits of deploying Blaze Advisor in the insurance industry include the following:[12]

- Provides flexible decisions and processes, which enable faster responses to changes in customer behavior, economic drivers, competition, [and] regulations;

- Allows for consistent and real-time decision making across the underwriting decision lifecycle, and;

- Enables companies to scale their businesses without the cost of hiring additional underwriting staff.

b)     *Copyrights for Blaze Advisor*

13.     I understand that FICO owns the following federal copyright registrations for the successive versions of Blaze Advisor.[13]

---

[8] Deposition of Henry Mirolyuz, dated January 11, 2019 ("Mirolyuz 1/11/19 Deposition") at Exhibit 193 (FED000270_0001-065 at 049-051).

[9] Mirolyuz 1/11/19 Deposition at Exhibit 195 (FED000275-0001-016 at 015).

[10] Mirolyuz 1/11/19 Deposition at Exhibit 193 (FED000270_0001-065 at 024).

[11] Mirolyuz 1/11/19 Deposition at Exhibit 193 (FED000270_0001-065 at 049-051).

[12] Mirolyuz 1/11/19 Deposition at 102 and Exhibit 193 (FED000270_0001-065 at 012, 016).

[13] Second Amended Complaint, dated September 11, 2018.

**EXPERT REPORT OF N. ZOLTOWSKI**
**CASE NO. 16-CV-1054 (WMW/DTS)**                    **CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**Table 1: Summary of FICO Copyrights on Blaze Advisor**

| Version | Registration Number | Registration Date |
|---------|---------------------|-------------------|
| 3.0 | TX0006301747 | 3/23/2006 |
| 4.0 | TX0006301748 | 3/23/2006 |
| 5.0 | TX0006301746 | 3/23/2006 |
| 6.0 | TX0006301745 | 3/23/2006 |
| 6.5 | TX0006595049 | 8/27/2007 |
| 6.5.5 | TX0007622453 | 1/10/2013 |
| 6.6 | TX0007622554 | 1/10/2013 |
| 6.7 | TX0007622555 | 1/10/2013 |
| 6.8.1 | TX0007622557 | 1/10/2013 |
| 6.9 | TX0007622556 | 1/10/2013 |
| 7.0 | TX0007504713 | 2/14/2012 |
| 7.2 | TX0007776962 | 8/2/2013 |

*ii.*    Chubb Corporation – Pre-Acquisition

14.    With principal executive offices in Warren, New Jersey, Chubb Corporation ("Chubb Corp") was an international "holding company for several, separately organized, property and casualty insurance companies," generally referred to as the Chubb Group of Insurance Companies ("Chubb P&C Group").[14]   The Chubb P&C Group provided property and casualty ("P&C") insurance to individuals and businesses, and as of 2013, was the largest P&C group, collectively, in the U.S. based on net premiums written.[15]

15.    The Chubb P&C Group was organized into three business units, comprising of (i) Chubb Personal Insurance (36% of net premiums written) (ii) Chubb Commercial Insurance (43%), and (iii) Chubb Specialty Insurance (21%).[16]  (See **Schedule 18.1**). Chubb Personal Insurance offered insurance products for homes and valuables, especially for high net worth individuals, yachts and fine automobiles as well as personal liability insurance.[17]  Chubb Commercial Insurance offered a variety of products but specialized in certain industry segments and niches and had a customer

---

[14] Deposition of John Taylor, dated August 2, 2019 ("Taylor Deposition") at Exhibit 17 (The Chubb Corporation 2014 Form 10-K at 3).
[15] Taylor Deposition at Exhibit 17 (The Chubb Corporation 2014 Form 10-K at 3).
[16] Taylor Deposition at Exhibit 17 (The Chubb Corporation 2014 Form 10-K at 4).
[17] Taylor Deposition at Exhibit 17 (The Chubb Corporation 2014 Form 10-K at 4).

base largely of mid-sized businesses.[18]   Chubb Specialty Insurance primarily consisted of "directors and officers liability insurance, errors and omissions liability insurance, employment practices liability insurance, fiduciary liability insurance and commercial and financial fidelity insurance."[19]

16.     The Chubb P&C Group offers its products primarily through independent insurance agencies and "accepts business on a regular basis from insurance brokers."[20]   These agents and brokers typically also offered insurance products from Chubb Corp competitors.[21]

a)     *Federal*

17.     Before ACE Limited acquired Chubb Corp, Federal was "the largest insurance subsidiary in the Chubb P&C Group and was the parent of most of [Chubb Corp's] other insurance subsidiaries."[22]   **Schedules 14.1** and **14.2** are summaries of the Federal wholly-owned subsidiaries as they were organized by Chubb Corp.

18.     Through its division, Chubb & Son, Federal had, and still has, the authority to underwrite, effect and issue all the insurance policies that are in the names of Federal's wholly-owned subsidiaries in the U.S and certain other countries.[23]

b)     *Chubb & Son*

19.     Chubb & Son was the "manager of several U.S. subsidiaries in the [Chubb P&C Group] …[but] also provid[ed] certain services to other insurance companies" in the same group.[24]   Chubb

---

[18] Taylor Deposition at Exhibit 17 (The Chubb Corporation 2014 Form 10-K at 4).

[19] Taylor Deposition at 24-25 and Exhibit 17 (The Chubb Corporation 2014 Form 10-K at 4). Specialty insurance also includes coverage for professionals such as malpractice for accountants, attorneys and lawyers.

[20] Taylor Deposition at Exhibit 17 (The Chubb Corporation 2014 Form 10-K at 5).

[21] Taylor Deposition at Exhibit 17 (The Chubb Corporation 2014 Form 10-K at 5).

[22] Taylor Deposition at 17 and Exhibit 18 (The Chubb Corporation 2014 Form 10-K at 3).

[23] Taylor Deposition at 54-67 and Exhibit 20 (Texas Pacific Indemnity, FED013548_0001-008), Exhibit 21 (Vigilant, FED013549_001-011), Exhibit 22 (Chubb Indemnity, FED013541_0001-010), Exhibit 23 (Chubb National, FED013542_0001-008), Exhibit 24 (Executive Risk Specialty, FED013545_0001-011), Exhibit 25 (Executive Risk Indemnity, FED013544_0001-010), Exhibit 26 (Great Northern, FED013546_0001-008), Exhibit 27 (Chubb New Jersey, FED013543_0001-008), Exhibit 28 (Chubb Illinois and Chubb Custom, FED013554_0001-002) and Exhibit 29 (Chubb Lloyds, FED013553_0001-004). Texas Pacific Indemnity has not existed since Chubb Corp was acquired by ACE Limited. As a result, Chubb & Son no longer services it. All of Texas Pacific Indemnity is now under Pacific Indemnity.

[24] Taylor Deposition at 17, 37, 44 and Exhibit 18 (The Chubb Corporation 2014 Form 10-K at 3). After Chub Corp was acquired by ACE Limited, Chubb & Son remained the only division of Federal.

6

& Son managed the day-to-day operations as well as the operating personnel for these subsidiaries.[25]   In connection with these services, Chubb & Son had management and service agreements with Federal's subsidiaries that described the services it would provide.[26]  All of the personnel that provided these services were employed by Federal, so "Federal, through its employees, managed and serviced those subsidiaries."[27]

20.     Chubb & Son had administrative offices in New Jersey as well as local offices across the United States that helped to produce and service Chubb P&C Group businesses.[28]   This organizational structure was designed to be more efficient by taking advantage of economies of scale and offering more flexibility than alternative structures.[29]

*iii.*   Chubb Limited – Post-Acquisition

21.     On January 14, 2016, ACE Limited completed the acquisition of Chubb Corp for approximately $29.8 billion in cash, stock and equity awards (the "Acquisition").[30]  Prior to the Acquisition, ACE Limited formed a "wholly-owned subsidiary called ACE INA Holdings, Inc. for the purpose of effectuating the merger transactions with The Chubb Corporation."[31]  ACE Limited also changed its named to Chubb Limited and "plann[ed] to adopt the Chubb name globally, although some subsidiaries may continue to use ACE as part of their names."[32] Chubb Corp ceased to exist, and was "merged with a newly-formed subsidiary of Chubb Limited [ACE INA Holdings, Inc.], and the combined company is operating under the Chubb name globally."[33]

---

[25] Taylor Deposition at 17 and Exhibit 18 (The Chubb Corporation 2014 Form 10-K at 3).

[26] Taylor Deposition at 40.

[27] Taylor Deposition at 40, 43-44, 76.  Post-acquisition, Federal continues to service all its subsidiaries, but no longer employs any of the personnel.

[28] Taylor Deposition at Exhibit 17 (The Chubb Corporation 2014 Form 10-K at 5).

[29] Taylor Deposition at 17 and Exhibit 18 (The Chubb Corporation 2014 Form 10-K at 3). Chubb & Son is a division and not a legal entity, so it cannot have any subsidiaries.

[30] FICO0056295-556 at 342.

[31] Federal Insurance Company's Response to Plaintiff's First Set of Requests for Admission, Response No. 2, dated May 11, 2017.

[32] FICO0056295-556 at 461; Federal Insurance Company's Response to Plaintiff's First Set of Requests for Admission, Response No. 4, dated May 11, 2017.

[33] FICO0056295-556 at 461; Federal Insurance Company's Response to Plaintiff's First Set of Requests for Admission, Response Nos. 3, 5, dated May 11, 2017.

22.     Chubb Limited changed its business lines reporting structure to the following categories: agriculture; global insurance; personal; surety; large, medium and small commercial.[34] (See **Schedule 18.2**).

### a)    *Federal*

23.     Federal is now a wholly-owned subsidiary of Chubb INA Holdings, Inc. (f/k/a ACE INA Holdings, Inc.).[35] Chubb Limited also partially reorganized the subsidiaries reported under Federal in the Chubb Limited public financial statements. Since the Acquisition in 2016, Federal has been Chubb Limited's largest insurance subsidiary in terms of premium revenue.[36] Federal has sold and continues to sell insurance products for the personal, commercial and specialty lines of business in the U.S. through a series of independent agencies and brokers.[37] **Schedules 14.3**, **14.4** and **14.5** are summaries of Federal's subsidiaries after the Acquisition, and all of them sell personal, commercial and specialty insurance in the United States.[38]

### b)    *ACE American*

24.     ACE American is now a wholly-owned subsidiary of INA Holdings Corporation, which is a subsidiary of INA Corporation.[39] INA Corporation is an indirect wholly-owned subsidiary of Chubb INA Holdings, Inc., Federal's parent company.[40]

25.     On March 14, 2016, ACE American and Federal entered into a services agreement under which ACE American was to provide services to Federal, Federal subsidiaries and certain affiliates that were previously performed by Chubb & Son ("ACE Services Agreement").[41] Federal and ACE American amended the ACE Services Agreement on February 22, 2018, so ACE American could

---

[34] Taylor Deposition at 27.

[35] Defendant's Response to Plaintiff's Second Set of Requests for Admission, Response No. 15, dated January 29, 2018.

[36] Taylor Deposition at 17.

[37] Taylor Deposition at 24-25, 34, 36.  These lines of business are synonymous with Chubb Corp personal, commercial and specialty insurance.

[38] Taylor Deposition at 25-26.

[39] Taylor Deposition at Exhibit 37 (FED000058_0001-12 at 007).

[40] FED000058_0001-0012 at 0004, 0006-7.

[41] Taylor Deposition at 70-78 and Exhibit 32 (FED013551_001-012 at 001-003, 012). Chubb Lloyd's is an affiliate rather than a subsidiary of Federal. The agreement also stated that ACE American would provide services for Great Northern and Executive Risk Indemnity even though both were no longer Federal subsidiaries.

"provide such services directly" to nine (9) "other insurance companies as a subcontractor of Federal."[42]

26.    All the Federal pre-acquisition employees became ACE American employees after the Acquisition, and Federal "no longer has employees" as of January 1, 2017.[43] **Schedules 15.1**, **15.2** and **15.3** are summaries of ACE American's subsidiaries after the Acquisition.

<em>iv.</em>    Change of Federal Ownership – Post Acquisition

27.    In connection with the Acquisition, Federal changed owners from Chubb Corp to Chubb Limited (f/k/a ACE Limited) and is wholly-owned by Chubb INA Holdings, Inc. (f/k/a ACE INA Holdings, Inc.), a subsidiary of Chubb Limited into which Chubb Corp was merged.[44] As previously explained, Chubb Corp ceased to exist when it was merged with and into ACE INA Holdings, Inc.[45]  Federal also became an indirect subsidiary of Chubb Limited and is now its largest insurance subsidiary in terms of premium revenue.[46]

28.    Also, as previously explained, by January 1, 2017, all of Federal's pre-acquisition employees became ACE American employees.[47]  Under the terms of the ACE Services Agreement and subsequent amendments, ACE American (rather than Chubb & Son) now provides services to Federal, Federal's subsidiaries and members of Federal's pool (defined hereafter).[48]

29.    This change in ownership is also reflected in the boards of directors for Chubb Corp (pre-acquisition) and Chubb Limited (post-acquisition). Specifically, the Chubb Corp board of directors

---

[42] Taylor Deposition at Exhibit 32 (FED013551_001-012 at 001-002).

[43] Taylor Deposition at 76. Although the management and services agreements between Chubb & Son and Federal's subsidiaries are still in effect, by January 2017, Federal no longer had any employees and Addendum A to Exhibit 32 (FED013551_001-012 at 012) lists substantially the same services that Chubb & Son was providing.

[44] Federal Insurance Company's Response to Plaintiff's First Set of Requests for Admission, Response Nos. 3,5-7, dated May 11, 2017.

[45] Federal Insurance Company's Response to Plaintiff's First Set of Requests for Admission, Response No. 3, 5, dated May 11, 2017.

[46] Taylor Deposition at 17.

[47] Taylor Deposition at 76. Although the management and services agreements between Chubb & Son and Federal's subsidiaries are still in effect, by January 2017, Federal no longer had any employees and Addendum A to Exhibit 32 (FED013551_001-012 at 012) lists substantially the same services that Chubb & Son was providing.

[48] Taylor Deposition at 70-78 and Exhibit 32 (FED013551_001-012 at 001-003 and 012). Chubb Lloyd's is an affiliate rather than a subsidiary of Federal. The agreement also stated that ACE American would provide services for Great Northern and Executive Risk Indemnity even though both were no longer Federal subsidiaries.

was comprised of fourteen (14) directors as of December 2014.[49] After the Acquisition in January 2016, only three (3) of these fourteen (14) legacy Chubb Corp directors joined the Chubb Limited board, which increased from seventeen (17) in December 2015 to sixteen (16) members in December 2016.[50] All of the remaining thirteen are legacy ACE Limited directors.[51] (See **Schedule 17.0**).

    *v.*  A Single Economic Unit

    a)  *Consolidation of Federal and ACE American Financial Statements*

30.  The financial results of Defendants, the corresponding subsidiaries of both, and the related Chubb entities are consolidated with Chubb INA Holdings, Inc. and Chubb Limited (i.e., the ultimate parent) to reflect that the combinations of parents plus subsidiaries are, in fact, a single economic unit. The Financial Accounting Standards Board ("FASB"), the authoritative accounting organization in the United States, requires that subsidiaries are consolidated with parent companies because financial statements are intended to reflect the economic realities of businesses. These economic relationships are defined by the parent's corporate structure and financial interest (e.g., percent ownership) in each subsidiary.[52] With respect to Defendants, both Federal and ACE American are currently direct (Federal) and indirect (ACE American) subsidiaries of Chubb INA Holdings, Inc., and both are also parents of several subsidiaries, all of which roll up and are reported in total with Chubb Limited.[53]

31.  The FASB guidance on consolidation states that a controlling financial interest is a "condition pointing toward consolidation" of the financial results of a parent and subsidiary.[54] One reason is that consolidated financial statements disclose information about the assets and liabilities

---

[49] FICO0056279-294 at 292 (Chubb Corporation Annual Report 2014).

[50] FICO0056295-556 at 317, 336 (Chubb Limited Annual Report 2015); FICO0056279-294 at 292 (Chubb Corporation Annual Report 2014); ACE Limited Annual Report 2014 at 22; FICO0056861-7120 at 6910 (Chubb Limited Annual Report 2017). Sheila Burke, James Cash and James Zimmerman were the legacy Chubb Corp members.

[51] ACE Limited Annual Report 2014 at 22; FICO0056861-7120 at 6910 (Chubb Limited Annual Report 2017).

[52] FASB Accounting Standards Codification 810 – Consolidated Financial Statement Scope and Scope Exceptions 810-10-15-8. According to FASB, a subsidiary is an entity in which the parent company has a controlling financial interest (e.g., either through voting rights or other means such as variable interests).

[53] *See,* generally, Taylor Deposition at Exhibit 40 (Chubb Limited 2017 Form 10-K Exhibit 21.1).

[54] FASB Accounting Standards Codification 810 – Consolidated Financial Statement Scope and Scope Exceptions 810-10-15-8.

(e.g., investments, cash, revenue and debt) of a parent and its subsidiaries. This allows the parent company to present a holistic view of its financial position and operational results. According to FASB, consolidated, as opposed to individual, financial statements are necessary to provide owners and creditors a more meaningful and fair representation of the parent company.[55]

32.     In addition to the reporting requirements promulgated by FASB, the National Association of Insurance Commissioners ("NAIC") also requires reporting entities to disclose their subsidiaries on at least a quarterly basis. Specifically, I understand an entity's NAIC annual statement identifies the reporting entity's parent, subsidiaries and affiliates. The NAIC annual statement also summarizes the financial performance and operational results (e.g., premiums, cash flow, losses) of the reported entity in a consolidated manner with its subsidiaries and affiliates.[56]   This consolidation of financial results is similar to the accounting reporting requirements promulgated by FASB, which suggests that they serve similar purposes to consolidation for external financial reporting.

b)      *Parent and Subsidiary Relationships*

33.     Before the Acquisition, Federal had eleven (11) domestic and eight (8) foreign subsidiaries that Chubb Corp reported on a consolidated basis in 2014.[57] All except one (1) were wholly-owned by Federal, and of these nineteen (19) subsidiaries, I understand several wrote and issued insurance policies with applications using Blaze Advisor between 2013 and 2019. (See **Schedules 12.0**, **14.1** and **14.2**).

34.     Since the Acquisition, Chubb Limited's financial statements have included the financial results of both Federal and ACE American.[58] Federal has seven (7) domestic and five (5) foreign subsidiaries that Chubb Limited reports on a consolidated basis in 2018.[59] All except one (1) are

---

[55] FASB Accounting Standards Codification 810 – Consolidated Financial Statement, Overall General 810-10-10-1 and 810-10-45-1.

[56] *See,* generally, 2016 Federal NAIC Annual Statement at 14.5-14.7.

[57] Taylor Deposition at 18, 74 and Exhibit 18 (The Chubb Corporation 2014 Form 10-K at 3 and 4) and Exhibit 35 (FED000059_001-002 at 001).

[58] *See,* generally, FICO0056861-7179 at 6950, 6954 and 7049.

[59] Federal Insurance Company Combined Statutory Financial Statements, December 31, 2017 and December 31, 2016 at 8; Taylor Deposition at 18-19, 74, 81-85, Exhibit 32 (FED013551_001-012 at 001-002), Exhibits 18 (The Chubb Corporation 2014 Form 10-K at 3 and 4) and Exhibit 37 (FED000058_0001-12 at 006).

wholly-owned by Federal, and of these twelve (12) subsidiaries, several wrote and issued insurance policies with applications using Blaze Advisor between 2016 and 2019. (See **Schedules 12.0**, **14.3**, **14.4** and **14.5**).

35.     Similarly, ACE American has fourteen (14) domestic and two (2) foreign entities that Chubb Limited reports on a consolidated basis in 2018.[60] All are wholly-owned by ACE American, and of these sixteen (16) subsidiaries, several wrote and issued insurance policies with applications using Blaze Advisor between 2016 and 2019. (See **Schedules 12.0**, **15.1**, **15.2** and **15.3**).

### c)     *Pooling Agreements*

36.     The pooling arrangements between Defendants and the members of their pools also demonstrate that these groups of entities are a single economic unit rather than independent businesses. Pooling arrangements are characterized by the sharing of premiums, losses and expenses among a group of participant companies, and I understand that the terms are typically memorialized by an intercompany agreement describing the pool.[61]  In fact, most of the pool members for both ACE American and Federal are also their wholly-owned subsidiaries. (See **Schedule 16.0**).

37.     I understand from Bick Whitener, FICO's industry expert, that insurance companies operating under a pooling agreement function as a single business with the insurance company identified as the pool leader at the head. According to Mr. Whitener, the lead company (e.g., Federal) is typically responsible for staffing, planning, executing, and monitoring of the business model of the member companies, aggregating the financials of each individual pool member into a consolidated set of financials and then allocating the elements of the consolidated financials back to the pool members based on the agreed allocations per the pooling agreement.

38.     Pooling agreements are used within a group of insurance companies to allow shared services (e.g., IT, HR, finance/accounting, underwriting) to be staffed and managed by the pool leader but paid for by the pool members in concert with the previously mentioned allocation method defined in the pooling agreement. Further, the pooling agreement allows individual

---

[60] See **Schedule 15.3**.

[61] A.M. Best Methodology, "Rating Members of Insurance Groups," December 15, 2014, at 7; INA Holdings, Combined Statutory Financial Statements, December 31, 2017 and December 31, 2016 at 30; Interview of Bick Whitener.

companies to satisfy, among other requirements, the regulatory requirements of each state where it wants to do business (e.g., filing of product definitions such as rates, rules, and forms with a state's Department of Insurance) and to allow the members of the pool to offer specific insurance products. I understand that each state where the lead wants to offer insurance requires a state-specific Certificate of Authorization for which the entity must satisfy certain criteria (e.g., surplus requirements, solvency ratios). I understand that the aggregated financial assets of the pool are allocated back to the pool member in order to satisfy these requirements, including the "premium to surplus" ratio, an indicator of the company's ability to pay policy-holder claims and remain solvent.[62]

39.     According to Mr. Whitener, even though each insurance policy is underwritten by an individual writing company and displays that individual writing company's name on the policy Declarations page, the policy is ultimately managed, serviced and insured by the pool's lead company's assets (e.g., human capital, financial assets and otherwise) rather than any individual insurance company within the pool. In this way, the pool lead and members function as a single business unit despite the number of individual writing companies that comprise the pool.[63]

(1)     Pre-Acquisition Pools

40.     Before the Acquisition, Chubb Corp participated in intercompany pooling arrangements involving Federal and ten Federal subsidiaries.[64] I understand all but one (1) of Federal's eleven (11) domestic subsidiaries in 2014 participated in this intercompany pool or were "fully reinsured by pool members."[65] A.M. Best described these eleven (11) subsidiaries plus three (3) foreign

---

[62] Interview of Bick Whitener.

[63] Interview of Bick Whitener

[64] A.M. Best, "YE 2015 Federal Insurance Company (002084) Best's Credit Report Archive, Business Profile for Chubb Corp; Audited Consolidated Financial Statements – Statutory Basis Consolidated Information – Statutory Basis Supplemental Disclosures, The Chubb Corporation U.S. Property and Casualty Insurance Group, Years Ended December 31, 2014 and December 31, 2013 at 25.

[65] FED000059_0001-0002 at 0002; A.M. Best, "YE 2015 Federal Insurance Company (002084) Best's Credit Report Archive, Business Profile for Chubb Corp. Only Chubb Investment Holding, Inc. did not participate in the pooling arrangement. The three companies reinsured by pool members included Chubb Insurance Company of New Jersey, Texas Pacific Indemnity Company, and Chubb Lloyds Insurance Company of Texas (i.e., domestic Federal affiliate).

13

Federal subsidiaries as "strategic to the overall [Chubb] group strategy."[66] (See **Schedules 14.2** and **16.0**).

41.     Consistent with these pooling arrangements, Federal, through its division Chubb & Son, provided services to Federal and other members of the pool. These services were memorialized in a series of service agreements, and I understand Chubb & Son and certain Federal subsidiaries shared expenses and liabilities involved in writing and issuing insurance policies.[67]

42.     ACE American also participated in pooling arrangements with several ACE Limited subsidiaries.[68] All of the ACE Limited's subsidiaries domiciled in Pennsylvania (including ACE American) participated in the "ACE USA underwriting pool," and the remaining subsidiaries outside of Pennsylvania ceded "essentially all of their underwriting results" to the pool through "quota share agreements."[69] INA Holdings' (ACE Limited's parent) financial position, results of operations and cash flows were represented by the combined results of these subsidiaries.[70]

### (2)     Post-Acquisition Pools

43.     Federal continued to participate in the "Federal Pool," which included Federal plus eight (8) of its subsidiaries.[71] Two (2) more Federal subsidiaries participated in a reinsurance agreement in which each ceded "100% of its business to Federal" or Great Northern, a Federal subsidiary that participates in the Federal Pool.[72] (See **Schedule 16.0**).

---

[66] The Federal foreign subsidiaries included: Chubb Insurance Company of Europe SE, Chubb Insurance Company of Canada and Chubb Insurance Company of Australia Limited.

[67] Taylor Deposition at Exhibit 28 (FED013554_0001-002 at 001); Taylor Deposition at Exhibit 29 (FED013553_0001-004 at 001 and 003); Taylor Deposition at Exhibit 30 (FED013538_0001-0005 at 001 and 004); Taylor Deposition at Exhibit 31 (FED013552_0001-013 at 001-002, 004, 006); Taylor Deposition at Exhibit 32 (FED013551_0001-012 at 001 and 003).

[68] INA Holdings, Combined Statutory Financial Statements, December 31, 2015 and December 31, 2014 at 7.

[69] INA Holdings, Combined Statutory Financial Statements, December 31, 2015 and December 31, 2014 at 7. A quota share agreement is a "prorata reinsurance contract in which the insurer and reinsurer share premiums and losses according to a fixed percentage. (https://www.investopedia.com/terms/q/quota-share-treaty.asp).

[70] INA Holdings, Combined Statutory Financial Statements, December 31, 2015 and December 31, 2014 at 7.

[71] Federal Insurance Company Combined Statutory Financial Statements, December 31, 2017 and December 31, 2016 at 26-27.

[72] Federal Insurance Company Combined Statutory Financial Statements, December 31, 2017 and December 31, 2016 at 26-27.

44.     The Federal Pool was terminated as of January 1, 2018 but was "replaced by [a] new Chubb Intercompany Pool and Quota Share reinsurance agreements" (the "Chubb INA Pool").[73] Consistent with its ratings methodology, A.M. Best gave all of Chubb Limited's U.S. subsidiaries, including Federal and ACE American, the same "Rating," "Outlook," and "Action" effective December 2018.[74]

45.     ACE American continued to participate in the "ACE USA underwriting pool" after the Acquisition and kept the same general relationships with the pool members domiciled inside and outside of Pennsylvania.[75]   The ACE USA underwriting pool was ultimately terminated and replaced by new the Chubb INA Pool.[76] These companies' combined results of operations and cash flows continued to represent the financial position of INA Holdings, and all of these companies were indirect wholly-owned subsidiaries of Chubb INA Holdings and/or Chubb Limited as of year-end 2017.[77] (See **Schedule 16.0**).

46.     ACE American also replaced Chubb & Son and now provides the same services to Federal, Federal's subsidiaries and members of the Chubb INA Pool (formerly Federal and ACE American underwriting pools) as described in the new service agreements.[78]

---

[73] Federal Insurance Company Combined Statutory Financial Statements, December 31, 2017 and December 31, 2016 at 26-27; Federal Insurance Company Annual Statement, December 31, 2018 at 14.33; ACE American Insurance Company Annual Statement, December 31, 2018 at 14.38.

[74] Best's Credit Ratings for Group Members, Chubb U.S. Group of Ins Cos (000012); A.M. Best Methodology, "Rating Members of Insurance Groups," December 15, 2014, p. 7. A.M. Best typically assigns "the same rating and Financial Size Category, based on their consolidation."

[75] INA Holdings, Combined Statutory Financial Statements, December 31, 2017 and December 31, 2016 at 7. The list of subsidiaries in 2017 excluded Bank Standard Fire and Marine Company, which merged with Bankers Standard Insurance Company.

[76] Federal Insurance Company Combined Statutory Financial Statements, December 31, 2017 and December 31, 2016 at 26-27; Federal Insurance Company Annual Statement, December 31, 2018 at 14.33; ACE American Insurance Company Annual Statement, December 31, 2018 at 14.38.

[77] INA Holdings, Combined Statutory Financial Statements, December 31, 2017 and December 31, 2016 at 7,11; Taylor Deposition at Exhibit 40 (Chubb Limited 2017 Form 10-K Exhibit 21.1). Texas Pacific Indemnity merged with Pacific Indemnity reducing the number of pool members. Northwestern Pacific Indemnity was sold effective February 12, 2014, which also reduced the number of pool members post-acquisition.

[78] Taylor Deposition at Exhibit 28 (FED013554_0001-002 at 001); Taylor Deposition at Exhibit 29 (FED013553_0001-004 at 001 and 003); Taylor Deposition at Exhibit 30 (FED013538_0001-0005 at 001 and 004); Taylor Deposition at Exhibit 31 (FED013552_0001-013 at 001-002, 004, 006); Taylor Deposition at Exhibit 32 (FED013551_0001-012 at 001 and 003).

d)    *Consolidated Income Tax Returns – Post Acquisition*

47.    Consistent with Defendants' subsidiary and pooling relationships, since January 1, 2017, Federal and ACE American's federal income tax returns are consolidated with each other, Chubb INA Holdings, Inc., and INA Holdings, Inc., among others.[79]  This consolidated U.S. tax return is inclusive of the direct and indirect subsidiaries of Chubb Group Holdings, Inc., a wholly-owned subsidiary of Chubb Limited.[80]

48.    I understand that the Internal Revenue Service allows, but does not require, corporations to file a consolidated tax return with their subsidiaries.[81] The choice to file in a consolidated manner is similar to the accounting reporting requirements promulgated by FASB, which suggests that a corporation and its legal entities are to be viewed in singularity, even if the corporation achieves its business objectives through multiple entities. Additionally, corporations can file a consolidated tax return only if certain stock ownership and voting requirements are satisfied and each subsidiary has consented and authorized its inclusion in the consolidated return.[82]

49.    A consolidated federal corporate tax return (i.e., Form 1120) combines the financial operations of each entity together to arrive at a single taxable income figure.[83] I understand there are several advantages to a consolidated tax return, including the ability to offset the losses of one entity with the profits of another entity.[84]

e)    *Economic Benefits of Single Economic Unit*

50.    Defendants benefit economically from the operations of their writing company subsidiaries and writing company entities in their pooling arrangements. The economic reality is that the Defendants, their subsidiaries, and their pooling entities are a single economic unit rather than

---

[79] ACE American Insurance Company, Annual Statement, December 31, 2017 at 14.8-14.9.

[80] ACE American Insurance Company, Annual Statement, December 31, 2017 at 14.9-14.10; FED000058_0001-0012 at 0002, 0004.

[81] *See,* generally, 26 U.S. Code Subchapter A – IRC § 1501 Privilege to File Consolidated Returns (https://www.law.cornell.edu/uscode/text/26/1501).

[82] *See,* generally, 26 U.S. Code Subchapter A – IRC § 1501 Privilege to File Consolidated Returns (https://www.law.cornell.edu/uscode/text/26/1501); 26 U.S. Code Subchapter A – IRC § 1504 Definition (https://www.law.cornell.edu/uscode/text/26/1504).

[83] *See,* generally, 26 U.S. Code Subchapter A – IRC § 1503 Computation and Payment of Tax (https://www.law.cornell.edu/uscode/text/26/1503).

[84] *See,* generally, 26 U.S. Code Subchapter A – IRC § 1552 Earnings and Profits (https://www.law.cornell.edu/uscode/text/26/1552).

**EXPERT REPORT OF N. ZOLTOWSKI**
**CASE NO. 16-CV-1054 (WMW/DTS)**                    **CONFIDENTIAL – ATTORNEYS' EYES ONLY**

independent businesses. Specifically, Defendants acknowledge this economic reality by reporting to the NAIC on a consolidated basis and by filing consolidated federal income tax returns. Accordingly, Defendants, their subsidiaries, and their pooling entities are, in turn, part of a larger single economic unit consolidated with Chubb INA Holdings, Inc.

### B.    Software License and Maintenance Agreement

#### i.    Original Agreement

51.    On June 30, 2006, FICO and Chubb & Son, a division of Federal, entered into a non-exclusive, perpetual software license and maintenance agreement granting rights to use Blaze Advisor ("SLM Agreement") in conjunction with CSI eXPRESS (defined below) in the United States.[85]   The SLM Agreement granted Chubb & Son a Blaze Advisor "Named Application" license for the "CSI Express application (which is Chubb's Specialty Insurance's underwriting and automated policy renewal application) and its supporting systems, applications…" for a one-time fee of ███████.[86]

52.    The SLM Agreement also included annual support and maintenance fees of ███████ ████████████████████████████████ in exchange for certain services involving Blaze Advisor.[87]  The SLM Agreement also contemplated that FICO would continue to support Chubb & Son and maintain Blaze Advisor going forward for the same amount per year.[88]

53.    In addition, the SLM Agreement included two options for Chubb & Son to expand its licensed usage. One option was a one-month option to expand the scope from a "Named Application" to a "Divisional ELA" license for "use within [Chubb & Son'] Specialty Lines insurance division" for an additional deployment license fee of ████████████████████ Under the terms of the Divisional ELA, FICO granted Chubb & Son ten (10) development seats

---

[85] Deposition of Russel Schreiber, dated October 24, 2018 ("Schreiber Deposition") at Exhibit 110 (FICO0001702-722 at 702, 712, 714). Territory as defined in the SLM Agreement is "with respect to the installation and physical location" of FICO's products.

[86] Schreiber Deposition at Exhibit 110 (FICO0001702-722 at 702, 712); Deposition of William Paul Waid, dated January 16, 2019 ("Waid 1/16/19 Deposition") at 87.

[87] Schreiber Deposition at Exhibit 110 (FICO0001702-722 at 702, 704, 712).

[88] Schreiber Deposition at Exhibit 110 (FICO0001702-722 at 712-715).

[89] Schreiber Deposition at Exhibit 110 (FICO0001702-722 at 712). I understand that ELA is acronym for Enterprise License Agreement.

and "unlimited internal use of the Fair Isaac Blaze Advisor® Deployment Product" but only for the "Specialty Lines insurance division."[90]   Divisional licenses as the term is used by FICO typically cover a small function within a line of business and does not include a far reaching scope.[91]   The option also doubled the support and maintenance fees payable under the SLM Agreement.[92]

54.     The second alternative involved a one-year option to convert the SLM Agreement into an enterprise-wide license that would grant Chubb & Son rights to "an unlimited number of Seats or CPU's" for internal use of Blaze Advisor.[93]   The option did not specify a licensee fee, but instead, allowed Chubb & Son to apply amounts already paid towards the price of a new enterprise license.[94]

       *ii.*    <u>Amendments</u>

55.     On August 1, 2006, Chubb & Son exercised its option to convert the SLM Agreement to a Divisional ELA for a total deployment license fee of █████████████████████████ and maintenance fees.[95]   Amendment No. 1 to the SLM Agreement granted Chubb & Son a perpetual license to Blaze Advisor "for use solely by the Chubb Specialty Lines Divisions" but with "no other limitation."[96]

56.     Chubb & Son exercised the option to convert the SLM Agreement to an enterprise-wide license on December 28, 2006.[97]   Amendment No. 2 to the SLM Agreement granted Chubb & Son an unlimited (i.e., in terms of Seats or CPUs), perpetual license to Blaze Advisor for a net or incremental deployment license fee of ███████████████████████████████████ ████████████████████████████

---

[90] Schreiber Deposition at Exhibit 110 (FICO0001702-722 at 712).

[91] Waid 1/16/19 Deposition at 31, 37-38. "Line of business" is an insurance industry term that generally refers to a group of products that are managed as a whole.

[92] Schreiber Deposition at Exhibit 110 (FICO0001702-722 at 712).

[93] Schreiber Deposition at Exhibit 110 (FICO0001702-722 at 702, 712).

[94] Schreiber Deposition at Exhibit 110 (FICO0001702-722 at 713).

[95] Schreiber Deposition at Exhibit 110 (FICO0001702-722 at 721); Waid 1/16/19 Deposition at 88. FICO applied the ██████ already paid towards the deployment license fee.

[96] Schreiber Deposition at Exhibit 110 (FICO0001702-722 at 721).

[97] Schreiber Deposition at Exhibit 110 (FICO0001702-722 at 718).

[98] Schreiber Deposition at Exhibit 110 (FICO0001702-722 at 718); Waid 1/16/19 Deposition at 88-89. FICO applied the ██████ already paid towards the deployment license fee.

**EXPERT REPORT OF N. ZOLTOWSKI**
**CASE NO. 16-CV-1054 (WMW/DTS)**                 **CONFIDENTIAL – ATTORNEYS' EYES ONLY**

57.     **Table 2** below summarizes key terms of the original SLM Agreement and the subsequent amendments.

**Table 2: Summary of FICO and Chubb & Son SLM Agreements + Amendments[99]**

|  | **SLM Agreement** | **Amendment 1** | **Amendment 2** |
|---|---|---|---|
| **Effective Date** | June 30, 2006 | August 1, 2006 | December 28, 2006 |
| **License Type** | Named Application | Divisional Enterprise | Enterprise-Wide |
| **Territory (Blaze Advisor location)[100]** | United States | | |
| **License Term** | Perpetual | | |
| **Deployment license fee** | ███████ | | |
| **Support and Maintenance Fees** | ███████ | | |
| **License + 1st Year Support and Maintenance Fees** | ███████ | | |

> ### iii.     FICO Professional Services Provided to Federal

58.     In connection with the SLM Agreement, the FICO Professional Services Group also provided $6.7 million in professional services to Chubb & Son between 2006 and 2016.[102] The Professional Services Group is the department within FICO that "implements solutions for customers.[103] Blaze Advisor must be customized to a customer's needs, so FICO is typically hired to help "implement the software and all the things associated with that."[104] This work consisted of several statements of work and thousands of hours of professional services to determine Chubb &

---

[99] *See*, generally, Schreiber Deposition at Exhibit 110 (FICO0001702-722).

[100] Schreiber Deposition at Exhibit 110 (FICO0001702-722 at 702). Under the terms of the agreement, territory is the United States "with respect to the installation and physical location of the Fair Isaac Products" (e.g., Blaze Advisor server location).

[101] Excludes ████ credit already paid towards the deployment license fee.

[102] Deposition of Chris Ivey, March 14, 2019 ("Ivey 3/14/19 Deposition") at 8,10,140-141 and Exhibit 380 (Detailed Payment History). Mr. Ivey is FICO's Vice President of Product Support but ran FICO's Professional Services Group prior to assuming his current position. FICO's Product Support Group is responsible for ongoing support after Blaze Advisor has been implemented by Professional Services, and this department typically handles issues like temporary outages or other malfunctions in the software.

[103] Ivey 3/14/19 Deposition at 10.

[104] Ivey 3/14/19 Deposition at 14.

Son's requirements, to integrate Blaze Advisor with existing applications and to train Chubb & Son personnel, among other services.[105]

59.     I understand these professional services fees are incremental to FICO's licensing, support and maintenance fees.[106] Consequently, when FICO licenses Blaze Advisor, it expects to generate additional professional services fees over and above the amounts for the license and associated support and maintenance.[107]  These professional services fees also serve as incentives for FICO to discount the corresponding deployment license fees in light of the total fees that may be generated in connection with Blaze Advisor.[108]

### C.     Defendants' Pervasive Use of Blaze Advisor

*i.*     Federal/Chubb – Pre-Acquisition[109]

60.     Between 2006 and 2016, Federal, through its division Chubb & Son, incorporated Blaze Advisor into no fewer than ten (10) applications deployed to support the Chubb Specialty and Chubb Commercial business units. Federal used these applications to analyze, price, book, bind, quote, issue, renew, and comply with regulatory requirements, among other things, for several insurance products written by Federal and its domestic subsidiaries (e.g., Chubb Insurance Company of New Jersey) and pool members.[110]  Using Blaze Advisor, Federal has issued policies with premiums totaling billions of dollars since 2006.

61.     Federal also distributed Blaze Advisor for installation outside of the United States by foreign entities in at least Canada, Australia, and the United Kingdom in support of insurance products sold in those countries and several European countries. Like the domestic applications, these foreign applications helped Federal, its foreign subsidiaries and pool members price, quote book, and bind new and renewal insurance policies with premiums totaling billions of dollars.

---

[105] Ivey 3/14/19 Deposition at 10-14,141. The Professional Service Group assists customers with learning the Blaze Advisor product and implanting it at a customer or client.

[106] Interview of William Waid.

[107] Interview of William Waid.

[108] Interview of William Waid.

[109] *See,* generally, Section V.C – Defendants' Applications Incorporating Blaze Advisor unless noted otherwise.

[110] Deposition of Kevin Harkin, dated March 25, 2019 ("Harkin Deposition") at 70-71.

ii.   Federal/ACE American – Post-Acquisition[111]

62.   Subsequent to the Acquisition, Defendants and certain foreign entities have continued to use Blaze Advisor applications both domestically and internationally to price, quote, and issue insurance products worth billions of dollars in premiums sold by Federal and ACE American, their subsidiaries and their pool members.

### D.   Termination of Agreement

63.   I understand Federal did not request FICO's consent for continued use of the software before ACE Limited acquired Chubb Corp and, by extension, Federal. Further, I understand the Acquisition represents a change of control and is deemed to be an assignment under the SLM Agreement.[112]   As a result, on January 27, 2016, FICO notified Federal that it was in breach of Section 10.8, the "No Assignment" provision of the SLM Agreement, which reads:[113]

> Neither party shall, without the prior written consent of the other party, assign or transfer this [SLM] Agreement…In the event of a change of control…or merg[er]… acquired by or acquires another entity, or undergoes a reorganization or otherwise acquires the right to process the business of another entity, each such event shall be deemed to be an assignment subject to this section…

64.   This "No Assignment" provision is a standard provision in FICO license agreements for Blaze Advisor because it helps protect FICO against improper acquisition of the software through a series of acquisitions or merger events.[114]   I understand the provision is core to FICO's right to control the value-based pricing of Blaze Advisor and its right to choose with whom it licenses.[115] Some FICO licensees that previously underwent a merger or acquisition event have paid an incremental fee for a new license that involved the new, larger company.[116]

65.   I understand that after FICO notified Federal of the breach, the parties unsuccessfully attempted to re-negotiate a new enterprise-wide license to replace the SLM Agreement.[117]

---

[111] *See,* generally, Section VI.C Defendants' Applications Incorporating Blaze Advisor unless noted otherwise.

[112] Second Amended Complaint, dated September 11, 2018 at 4.

[113] Schreiber Deposition at Exhibit 110 (FICO0001702-722 at 709); Second Amended Complaint, dated September 11, 2018 at 4-5; FICO0000193-194.

[114] Waid 1/16/19 Deposition at 9, 140-141.

[115] Waid 1/16/19 Deposition at 140-142, 155.

[116] Waid 1/16/19 Deposition at 143-145; Deposition of Michael Sawyer, dated October 2, 2018 ("Sawyer Deposition") at 183-184. Examples include Dell/EMC and Toronto-Dominion.

[117] *See,* generally, FED000352_0001-002; FED000353_0001; FED000360_0001-002.

66.     On March 30, 2016, FICO provided written notice to Federal stating that the SLM Agreement would be terminated effective March 31, 2016.[118] FICO terminated the SLM Agreement because, among other reasons, Federal's "attempt to assign the [SLM Agreement] to [Chubb Limited]" was a breach of Section 10.8.[119] During negotiations with Defendants to grant consent to continued use of Blaze Advisor following the acquisition and change of control, FICO also discovered that Blaze Advisor was used in Canada and the UK and was disclosed to an unauthorized third party consultant in Australia in further material breach of the SLM Agreement.[120]  The SLM Agreement terminated March 31, 2016.[121]

## V.     SUMMARY OF FICO'S ALLEGATIONS

### A.     Breach of SLM Agreement

#### i.     Pre-Acquisition Distribution of Blaze Advisor

67.     FICO accuses Federal of breaching the SLM Agreement before the Acquisition by distributing Blaze Advisor to third parties outside of the United States and permitting the use or access of Blaze Advisor by third parties.[122]  FICO alleges that under the terms of the SLM Agreement, the authorized territory where Blaze Advisor could be installed and physically located was limited to the United States, and the disclosure, use or access of FICO products (i.e., Blaze Advisor) was restricted to the internal business operations of Chubb & Son, a division of Federal, by Chubb & Son employees.[123]

---

[118] Schreiber Deposition at Exhibit 110 (FICO0001702-722 at 707-708); Second Amended Complaint, dated September 11, 2018 at 5; FED004437_0001.

[119] FED004437_0001.

[120] FED004437_0001.

[121] FED004437_0001.

[122] The third parties include, but are not necessarily limited to, Chubb Insurance Company of Europe SE, Chubb Insurance Company of Canada and a consultant (AppCentrica), and Chubb Insurance Company of Australia Limited and a consultant (DWS Group). I understand that AppCentrica provided services to Chubb Canada for the design and development of Evolution (FED006837_0001-0018 at 0003). I understand that DWS is an IT consulting company similar to Accenture. Second Amended Complaint, dated September 11, 2018 at 5; Plaintiff Fair Isaac Corporation's First Supplemental Answers to Defendant's First Set of Interrogatories No. 4, dated August 16, 2017; FICO0000767; Schreiber Deposition at Exhibit 110 (FICO0001702-722 at 702-703).

[123] I understand Affiliates is defined in the SLM Agreement to be "any other entity directly or indirectly controlled by Client (Chubb & Son), where "control" means ownership of more than 50% of the aggregate of all voting interests in an entity." (Schreiber Deposition at Exhibit 110 (FICO0001702-722 at 719); Second Amended Complaint, dated September 11, 2018 at 6.)

ii.    Post-Termination Use of Blaze Advisor

68.    Plaintiff also accuses Defendants of breaching the SLM Agreement by continuing to use Blaze Advisor after FICO terminated the agreement on March 31, 2016. I understand that based on Section 9.3 of the SLM Agreement, Defendants were required to, among other things, "cease using Fair Isaac Product(s) and related documentation."[124]

69.    **Table 3** below is a summary of the unlicensed applications used in breach of the SLM Agreement and the years for which FICO is entitled to damages for each unlicensed use.[125]

### Table 3: Summary of Applications & Damages Years

| Application | Country | Start | End |
|---|---|---|---|
| ADAPT | Australia | 2010 | 2019 |
| ADAPT | U.K. | | |
| EZER | U.K./ Europe | 2012 | |
| Evolution | Canada | 2013 | |
| Broker Site | Canada | | |
| Evolution | Australia | 2017 | |
| Exari | U.K. | 2013 | 2016 |
| CSI eXPRESS | U.S. | 2016 | 2019 |
| Automated Renewal | | | |
| Profitability Indicator | | | |
| Decision Point | | | |
| Premium Booking | | | |
| Cornerstone | | | |
| CUW | | | |
| IRMA | | | |
| TAPS | | | |
| CIS Claims | | | |

---

[124] Schreiber Deposition at Exhibit 110 (FICO0001702-722 at 708).

[125] I understand that breach of contract damages are limited to six years before the filing of a complaint. Plaintiff's complaint in this matter was filed on April 21, 2016.

23

### B.      Copyright Infringement

#### i.      Pre-Acquisition Unlicensed Distribution of Blaze Advisor

70.      FICO accuses Federal of infringing one or more copyrights by distributing Blaze Advisor for installation on servers physically located outside of the United States.[126]   This unlicensed distribution breached Section 3.1 of the SLM Agreement and the Territorial restriction of the license grant.[127]

#### ii.      Post-Termination Use of Blaze Advisor

71.      FICO  also accuses Defendants of infringing FICO's copyrights by using Blaze Advisor after FICO terminated the SLM Agreement on March 31, 2016.[128]   I understand that once FICO terminated the SLM Agreement, every use of Blaze Advisor was unlicensed and, therefore, infringing upon FICO's copyrights. **Table 4** below is a summary of the applications that use Blaze Advisor that Plaintiff alleges infringe FICO's copyrights and the years for which FICO is seeking damages related to the alleged infringement.[129]

---

[126] Schreiber Deposition at Exhibit 110 (FICO0001702-722 at 702-703).

[127] Schreiber Deposition at Exhibit 110 (FICO0001702-722 at 702).

[128] Second Amended Complaint, dated September 11, 2018 at 10.

[129] I understand that copyright damages are limited to three years before the filing of a complaint. Plaintiff's complaint in this matter was filed on April 21, 2016.

**Table 4: Summary of Blaze Advisor Applications Infringing Years**

| Application | Country | Start | End |
|---|---|---|---|
| ADAPT | Australia | 2013 | 2019 |
| ADAPT | U.K. | | |
| EZER | U.K./Europe | | |
| Evolution | Canada | | |
| Broker Site | Canada | | |
| Evolution | Australia | 2017 | |
| Exari | U.K. | 2013 | 2016 |
| CSI eXPRESS | U.S. | 2016 | 2019 |
| Automated Renewal | | | |
| Profitability Indicator | | | |
| Decision Point | | | |
| CIS Claims | | | |
| Premium Booking | | | |
| Cornerstone | | | |
| CUW | | | |
| IRMA | | | |
| TAPS | | | |

**C.      Defendants' Applications Incorporating Blaze Advisor**

    *i.*      <u>Domestic Applications</u>

       a)      *Policy Administration Applications*

72.      Policy administration applications are used to book, bind and issue insurance policies and to maintain those policies.[130]   These applications are used to create and administer new policies and to renew existing policies. Although I understand that "policy administration application" has a specific connotation in insurance software parlance, I have used the term broadly to describe applications that are used to acquire, assess, price, process, administer and renew insurance policies. Defendants use at least five policy administration applications in the U.S., Australia, Canada, United Kingdom and Europe.

---

[130] Mirolyuz 1/11/19 Deposition at 76.

**EXPERT REPORT OF N. ZOLTOWSKI**
**CASE NO. 16-CV-1054 (WMW/DTS)**                              **CONFIDENTIAL – ATTORNEYS' EYES ONLY**

(1)    CSI eXPRESS

73.    CSI eXPRESS is a policy administration application used for Defendants'
Financial/Specialty Line of business in the United States and Canada.[131]  Defendants use the CSI
eXPRESS application to process new and renewal insurance policies for roughly 113 CSI
products.[132] Federal uses CSI eXPRESS to book, bind and issue new policies and to renew existing
policies.[133]  Blaze Advisor software is used within the CSI eXPRESS policy administration system
to quote, bind, book, issue and process policies.[134]

(2)    Cornerstone

74.    Cornerstone is a solution used for surety bond issuance and maintenance.[135] Cornerstone
was designed to make it easy for customers to work with Chubb Surety by enhancing underwriting
excellence, increasing bond processing efficiency, and improving internal controls and
compliance.[136]

b)    *Compliance-Related Applications Using Blaze Advisor*

(1)    Premium Booking

75.    Premium Booking uses Blaze Advisor to ensure that insurance premiums for issued
policies comply with Defendants' rules and regulations.[137]  Once a policy is issued, information
from CSI eXPRESS is sent to Premium Booking, a process called sending the premium
"downstream" for recording and additional processing.[138]  Premium Booking ensures that issued
premiums are processed and recorded properly.[139] Over one billion dollars in premiums have been

---

[131] Mirolyuz 1/11/19 Deposition at 76; FED_004571 at "Application Summary" worksheet.

[132] Mirolyuz 1/11/19 Deposition at 76; FED009631_001 at "Schedule for Valuation" worksheet.

[133] Mirolyuz 1/11/19 Deposition at 76.

[134] FED011560_0001-0042 at 0027.

[135] FED004571.

[136] FED007858_0003; FED011560_0029.

[137] Mirolyuz 1/11/19 Deposition at 63-64, 80-81.

[138] Mirolyuz 1/11/19 Deposition at 80-81. Premium booking does not, in turn, send information back upstream to CSI eXPRESS.

[139] Mirolyuz 1/11/19 Deposition at 64.

**EXPERT REPORT OF N. ZOLTOWSKI**
**CASE NO. 16-CV-1054 (WMW/DTS)**                                    **CONFIDENTIAL – ATTORNEYS' EYES ONLY**

processed through this application since the Premium Booking application began utilizing Blaze Advisor in 2012.[140]

### (2)   Individual Rate Modification Application ("IRMA")

76.    IRMA is a compliance solution used within CCI's Applied Technology Department to ensure individual rate modifications are applied consistently and that they meet state requirements for justification of the modifications.[141]   IRMA uses Blaze Advisor to calculate premiums on a specific book of commercial policies and is used just prior to sending a policy to Premium Booking to implement the final compliance check.[142]

### (3)   Texas Accident Prevention System ("TAPS")

77.    TAPS is a compliance application for workers' compensation policies sold in the state of Texas.[143] The state of Texas mandates that insurance companies maintain or provide accident prevention facilities/services for policies that meet certain criteria for premiums, claims, and other factors.[144] These service requirements typically take the form of a letter offering services or "a visit from a member of Loss Control."[145]   TAPS ensures that a letter is generated for these workers' compensation policies after they are issued.[146]   Absent compliance with Texas' requirements, relevant insurance policies could not be issued in the state of Texas.[147]

---

[140] Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No. 16 and Sixth Supplemental Answer to Plaintiff's Interrogatory No. 17, dated March 21, 2019 at 5-6.

[141] FED_004571 at "Application Summary" worksheet.

[142] Mirolyuz 1/11/19 Deposition at 61; FED016653_0001-0015 at 0004.

[143] Mirolyuz 1/11/19 Deposition at 62; FED_004571 at "Application Summary" worksheet. TAPS is used to comply with certain regulations in Texas.

[144] https://www.tdi.texas.gov/wc/safety/aps html; FED_004571 at "Application Summary" worksheet. These facilities/services include, for example, surveys, recommendations, training programs, etc.

[145] FED_004571 at "Application Summary" worksheet.

[146] Mirolyuz 1/11/19 Deposition at 62; FED_004571 at "Application Summary" worksheet. TAPS is used to comply with certain regulations in Texas.

[147] Mirolyuz 1/11/19 Deposition at 62.

27

c)  *Other Applications Using Blaze Advisor*

(1)  <u>Commercial Underwriting Workstation (CUW)</u>

78.     The Commercial Underwriting Workstation (CUW) is a workstation used by Defendants to maintain records of interactions with customers. The platform "supports commercial underwriting and processing throughout the underwriting lifecycle."[148] When an underwriter communicates with a customer, the conversations and documents are recorded and stored in the CUW.[149] For example, Defendants' underwriters use CUW to write notes regarding customer conversations and to store significant customer documents.[150]  The purpose of CUW is to serve as "a single point of interface to [Defendants'] most frequently used commercial systems" and tracks requests (e.g. rate/book/issue) between branches and processing centers.[151] By June 2009, CUW had over 6,000 users in the United States and Canada.[152]

79.     CUW uses Blaze Advisor in its Inventory Management tool.[153]  Inventory Management regulates the flow of applications between agents/brokers and underwriters to increase the speed with which applications are underwritten and returned to applicants.[154]  The purpose is to eliminate the peaks and valleys of work in Defendants' processing centers and to distribute the work more evenly.[155]  Inventory Management is "critical" to Defendants' underwriting operations because if the system goes down, "work orders cannot be created or viewed," so little processing can occur (e.g., rate/book/issue policies), quoting and issuance services are hamstrung and responses to producers are delayed.[156]

---

[148] Mirolyuz 1/11/19 Deposition at 58-59; FED_004571 at "Application Summary" worksheet; FED016602_0001-0013 at 003.

[149] Mirolyuz 1/11/19 Deposition at 58.

[150] Mirolyuz 1/11/19 Deposition at 58-59.

[151] FED016590_0001-0001 at 0001.

[152] FED004571; FED016602_0001-0013 at 004.

[153] Mirolyuz 1/11/19 Deposition at 58; FED016602_0001-0013 at 003.

[154] Mirolyuz 1/11/19 Deposition at 58-59.

[155] FED016599_0001-0008 at 0001.

[156] FED016602_0001-0013 at 003.

(2)     Automated Renewals

80.     The Automated Renewals application automatically books, binds and issues renewal policies for existing customers and flags potential problems that underwriters need to address with a customer.[157]  The process within the Automated Renewals application ("ARP") generally follows two paths categorized as ARPI and ARPII.[158]   ARPI determines whether an existing policy is eligible for automatic renewal.[159]  If a customer is not eligible for an automatic renewal, then the policy goes to a human underwriter to address the issues highlighted in the ARPI process.[160]  If the policy is eligible for automatic renewal, ARPII is used to automatically book, bind and issue the policy.[161]  Every issued policy that is entered into CSI eXPRESS is also engaged by the Automated Renewals application.[162]

81.     The Automated Renewals application utilizes Blaze Advisor to "increase the percentage of automated renewal submissions."[163]  By directing more policies to renew automatically, Defendants' underwriters are able to "develop and produce additional business or handle additional business" rather than process policy renewals.[164]

82.     Defendants also use Blaze Advisor to decrease the time and expense of changing renewal rules in the Automated Renewals application. Specifically, the ARPI pathway reduces the "cost of changing renewal rules" from 3-6 months to 2-3 days of IT work.[165]

---

[157] Mirolyuz 1/11/19 Deposition at 48-49.

[158] Mirolyuz 1/11/19 Deposition at 52.

[159] Mirolyuz 1/11/19 Deposition at 52-53.

[160] Mirolyuz 1/11/19 Deposition at 53.

[161] Mirolyuz 1/11/19 Deposition at 53 and Exhibit 188 (FED000588_0001, FED000589_0001).

[162] Mirolyuz 1/11/19 Deposition at 75-76.

[163] Mirolyuz 1/11/19 Deposition at Exhibit 192 (FICO0057206-222 at 210, 219). In a presentation titled "Creating & Managing a Business Rules Center of Excellence", dated September 17, 2009, I understand Automated Renewals application utilized version Blaze IDE 6.1.5.

[164] Mirolyuz 1/11/19 Deposition at 96 and Exhibit 192 (FICO0057206-222 at 210).

[165] Mirolyuz 1/11/19 Deposition at Exhibit 192 (FICO0057206-222 at 210).

EXPERT REPORT OF N. ZOLTOWSKI
CASE NO. 16-CV-1054 (WMW/DTS)                                    CONFIDENTIAL – ATTORNEYS' EYES ONLY

83.     Taken together, the Automated Renewals application using Blaze Advisor creates additional revenue opportunities and reduces costs by (i) automating the renewals processes for existing customers, and (ii) increasing the efficiency of changing renewal rules, which increases revenue by freeing up underwriters to produce and handle new business.[166]

### (3)     Profitability Indicator

84.     Formerly called "Predictive Modeling," the Profitability Indicator application functions to ensure that the price of an insurance policy aligns with the underlying risk of the policy.[167]   It is a "statistical model to assist underwriters in predicting the future behavior of our [Defendants'] current and potential customers," and it uses Blaze Advisor to make decisions more precisely and consistently.[168] Profitability Indicator calculates a risk score used by underwriters to "assess the severity of the risk" and "to make an objective decision about the potential profitability of a risk based on internal and external factors."[169]   The risk score informs the premium, or price, among other things, that Federal will charge a customer for an insurance policy.[170]   It is used to assess the risk of both new and existing policies.[171]   Profitability Indicator is used with the Financial lines of business (f/k/a Chubb Specialty).[172]

85.     The results generated from Profitability Indicator also inform the Automated Renewals application, and for some functions, human intervention is not necessary.[173]   If the Automated Renewals application determines that human intervention is necessary for a renewal, the Profitability Indicator application then identifies issues for human underwriters to review and address.[174]

---

[166] Mirolyuz 1/11/19 Deposition 48-49 and Exhibit 192 (FICO0057206-222 at 210).
[167] Mirolyuz 1/11/19 Deposition at 50, 52.
[168] FED000275_001-016 at 013.
[169] Mirolyuz 1/11/19 Deposition at 50; FED000275_001-016 at 013.
[170] Mirolyuz 1/11/19 Deposition at 50.
[171] Mirolyuz 1/11/19 Deposition at 76-77.
[172] Mirolyuz 1/11/19 Deposition at 50, 78-79; FED_004571 at "Application Summary" worksheet.
[173] Mirolyuz 1/11/19 Deposition at 51.
[174] Mirolyuz 1/11/19 Deposition at 51.

**EXPERT REPORT OF N. ZOLTOWSKI**
**CASE NO. 16-CV-1054 (WMW/DTS)**                                    **CONFIDENTAL – ATTORNEYS' EYES ONLY**

86.    Blaze Advisor enables Profitability Indicator to make "accurate predictions [which] permits accurate actions and treatments allowing for better management of risk, costs, [and] losses."[175] In addition to improving Defendants' ability to analyze and price insurance products, I understand that Defendants have realized, and continue to enjoy, the following additional benefits:[176]

- Move more existing policies into automated renewal submissions;

- "Increas[ed] retention of best accounts and more readily identify less profitable accounts;"

- "Greater efficiency for underwriters and continued efficiency for agents, who will have fewer policies to handle and fewer questions to address;" and

- More easily updated underwriting rules.

87.    Based on the foregoing, not only do Defendants use Blaze Advisor within Profitability Indicator to price insurance policies but their use of Blaze Advisor also increases the precision and consistency in decision-making about the potential profitability of risk based on internal and external factors. [177]

(4)    Decision Point

88.    Decision Point is an application "devoted to new business" for "profitable growth" and used by Defendants' producers/agents to generate quotes for new customers in certain Financial lines of business (f/k/a Chubb Specialty Insurance).[178]   Decision Point is a "web quoting" application accessed by agents through a website (i.e., @chubb) that is used to support "on-line new business submission creation and quotes generation" for certain Financial lines of business including Directors & Officers ("D&O"), Employment Practices Liability ("EPL"), and Crime and Fiduciary.[179] I understand that Decision Point provides "functionality related to Clearance,

---

[175] Mirolyuz 1/11/19 Deposition at 50; FED000275_001-016 at 013.

[176] Mirolyuz 1/11/19 Deposition at 50; FED000275_001-016 at 013.

[177] Mirolyuz 1/11/19 Deposition at 104 and Exhibit 194 (FICO0057261-273 at 271).

[178] Mirolyuz 1/11/19 Deposition at 54, 77-78; Harkin Deposition at 70-71, 102-103; FED_004571 at "Application Summary" worksheet; FED000294_001-021 at 003; FED000275_001-016 at 014. According to Mr. Harkin, the products previously reported under the Chubb Specialty Insurance unit are now reported under the Chubb Limited Financial line.

[179] FED000294_001-021 at 003.

Eligibility, Pricing, etc." including determining customer eligibility, pricing the policy, normalizing data and reserving the policy risk.[180]  I also understand that Decision Point uses Blaze Advisor software to perform these functions.[181]

89.     After customers' applications are evaluated and processed, Decision Point generates a quote letter for Defendants' producers/agents working with a potential policy holder.[182]  Quote letters are generated in email format with embedded links and include the price to sell and bind an insurance policy for that customer.[183]  If the quotes issued in Decision Point are accepted by customers, the resulting policies are entered into the CSI eXPRESS application where the policy is administered.[184]

90.     In simplistic terms, I understand that Decision Point streamlines and improves the business processes and communications between Defendants' underwriters and the producers/agents that sell its insurance products. Specifically, I understand that Defendants' use of Decision Point:[185]

- Allows producers to obtain real-time quotes and a bind-able quote letter;

- Improves producer's client service and productivity;

- Enhances underwriter's responsiveness to producers; and

- "Allows underwriters to concentrate on other business that requires true underwriting expertise."

(5)    CIS Claims

91.     CIS Claims is an actuarial application used by the Specialty/Financial line. Similar to Profitability Indicator, it uses claims data to generate a severity score based on a set of business rules.[186]  However, this score is generated after a claim is processed rather than when analyzing a

---

[180] FED000294_001-021 at 002-003; Mirolyuz 1/11/19 Deposition at Exhibit 194 (FICO0057261-273 at 272).

[181] FED000294_001-021 at 003, 010.

[182] Mirolyuz 1/11/19 Deposition at 56-57, 93.

[183] Mirolyuz 1/11/19 Deposition at 57; FED000294_001-021 at 002.

[184] Mirolyuz 1/11/19 Deposition at 53-54, 77-78.

[185] Mirolyuz 1/11/19 Deposition at 105 and Exhibit 194 (FICO0057261-273 at 272).

[186] Mirolyuz 1/11/19 Deposition at 60.

**EXPERT REPORT OF N. ZOLTOWSKI**
**CASE NO. 16-CV-1054 (WMW/DTS)**                    **CONFIDENTIAL – ATTORNEYS' EYES ONLY**

prospective policy.[187]   Once a claim is processed and paid, the actuarial department uses CIS Claims to determine the severity of the claim.[188]

92.     **Table 5** below is a summary that includes a description of each domestic application and how it is used by Defendants.

**Table 5: Summary of Defendants' Domestic Blaze Advisor Applications**

| Application | Function |
|---|---|
| CSI eXPRESS | Policy administration application for the Specialty line of business in the U.S. and Canada. |
| Automated Renewal Process | Application used to automatically book, bind and issue renewal policies. |
| Profitability Indicator | Application used to assess the risk associated with an insurance policy to precisely price. |
| Decision Point | Application used by agents/producers to generate quotes for new insurance policies. |
| Commercial Underwriting Workstation (CUW) | Application that "supports commercial underwriting and processing throughout the underwriting lifecycle." |
| Premium Booking | Ensures that insurance premiums for issued policies comply with Chubb rules and regulations. |
| Individual Rate Modification Application (IRMA) | Ensures individual rate modifications are applied consistently and meet state requirements. |
| Texas Accident Prevention System (TAPS) | Generates letters related to issued worker's compensation policies that are required by the State of Texas. |
| CIS Claims | Assesses the severity of a policy claim. |
| Cornerstone | Used for surety bond issuance and maintenance. |

    *ii.*    <u>Foreign Applications</u>

        *a)*    *European Zone Executive Risk ("EZER")[189]*

93.     EZER is the European zone policy administration application and workstation used by Defendants in the UK and thirteen (13) countries within the European Group to "support [the] complete end to end policy life-cycle for all CCI and CSI business."[190]   It is used during the underwriting process to quote, bind, renew, endorse cancel, and reinstate policies and generate reports and documents for underwriters.[191]   For example, EZER uses Blaze Advisor for ARPI

---

[187] Mirolyuz 1/11/19 Deposition at 60.

[188] Mirolyuz 1/11/19 Deposition at 59.

[189] FED016469_0001-0046 at 0004.

[190] Mirolyuz 1/11/19 Deposition at 66-67; FED04571 at "Application Summary" worksheet; FED016469_0001-0046 at 0005.

[191] FED016469_0001-0046 at 0005, 0032.

automated renewal analyses similar to the process carried out by Automated Renewals in the United States.[192]

94.     Defendants use EZER in the Chubb Commercial Insurance (CCI) and Chubb Specialty Insurance (CSI) businesses in Chubb's European zone (EUZ).[193] According to Defendants, EZER was first used in the United Kingdom in 2012.[194]

<b>b)</b>     <i>Evolution</i>

95.     Evolution is a policy administration application used by Defendants in Canada and Australia to "support[] the entire policy administration life cycle."[195] Unique from other Defendant policy administration applications, Evolution in Canada supported all Chubb Corp business units and products including CPI, CCI, and CSI prior to the Acquisition.[196] For example, Evolution uses Blaze Advisor for underwriting guidance, and "it has its own service developed for that particular application."[197] It supports both internal and external users and the user interface "doubles as a market facing portal."[198]

96.     Evolution was developed to, among other things, (i) improve underwriting productivity and increase capacity for growth (ii) automate tasks, so certain resources could be redeployed (iii) improve service to brokers and clients by speeding policy delivery (iv) "improve risk management," and (v) decrease maintenance costs.[199]

---

[192] Mirolyuz 1/11/19 Deposition at 67.
[193] Federal Insurance Company's Sixth Supplemental Answer to Plaintiff's Interrogatory No. 18, dated March 21, 2019 at 3.
[194] Federal Insurance Company's Sixth Supplemental Answer to Plaintiff's Interrogatory No. 18, dated March 21, 2019 at 3.
[195] FED003989_0001-0020 at 004.
[196] FED003989_0001-0020 at 004.
[197] Mirolyuz 1/11/19 Deposition at 73, 81.
[198] FED003989_0001-0020 at 004.
[199] FED003989_0001-0020 at 004.

c) *Broker Site*

97. Broker Site is "a front-end quoting system" integrated with Evolution in Canada.[200] It also allows brokers to access information and documents such as billing and claims information and reference libraries of contract guides, rates and rules, product highlights, training and webcasts.[201] It is used in Defendants' Personal and Commercial lines to help brokers manage their clients. Broker Site interfaces with and draws information from the Evolution policy administration system.[202]

d) *Adapt*

98. Adapt is the policy administration application used in the United Kingdom, Australia, and other European Countries.[203] It is broker-facing and allows for real-time binding and issuing of policies and is used for, among other things, back-end administration, automation, document generation and electronic filing.[204] Adapt also enables a broker to view and manage his or her own portfolio.[205] Adapt has been used in Australia since 2007 for the A&H business unit and applies business rules in Blaze Advisor for underwriting guidance.[206]

e) *Exari*

99. Exari functions as an additional data collection source following EZER's initial data collection.[207] This iterative data collection reduces the underwriter's time and effort.[208] Chubb canceled the Exari project at or around January 27, 2016, the time that ACE Limited acquired Chubb Corp.[209]

---

[200] Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No. 19, dated March 2, 2019 at 3.

[201] FED04571 at "Application Summary" worksheet.

[202] Mirolyuz 1/11/19 Deposition at 72-73.

[203] FED014390_0006 and 010.

[204] FED014390_0006.

[205] FED014390_0006.

[206] Mirolyuz 1/11/19 Deposition at 69; Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No. 20, dated March 21, 2019 at 3.

[207] FED008352_0001.

[208] FED008352_0001.

[209] FED017913_0001-002.

**EXPERT REPORT OF N. ZOLTOWSKI**
**CASE NO. 16-CV-1054 (WMW/DTS)**                    **CONFIDENTAL – ATTORNEYS' EYES ONLY**

100.    **Table 6** below is a summary of Defendants' foreign applications that use Blaze Advisor software.

#### Table 6: Summary of Defendants' Foreign Applications

| Application | Function |
|---|---|
| EZER | Policy administration system used for Specialty/Financial and Commercial Insurance and A & H business units in the United Kingdom and European Zone. |
| Evolution | Policy administration application for all lines of business in Canada and certain business lines in Australia. |
| Broker Site | A front-end quoting system integrated with Evolution in Canada. |
| Adapt | Policy administration application for the A & H line of business in the European Zone and Australia. |
| Exari | Application used to collect data. |

### D.    FICO's Pricing for Blaze Software

101.    The process by which FICO prices Blaze Advisor licenses has not changed since November 2003.[210]  FICO has used two different pricing grids for both named application and enterprise-wide licenses and has done so since these two pricing grids were created.[211] The prices in these grids reflect amounts for perpetual licenses.[212]  However, FICO also offers Blaze Advisor for named applications on an annual basis.[213]

### i.    Named Application Standard Deployment License Fees

102.    FICO's customers typically license Blaze Advisor on a "named application" basis.[214]  To price these licenses, FICO has used a nine-factor "Application Sizing Matrix" ("ASM") and a "Category Pricing Matrix" ("CSM") rate table that corresponds to the size of the application derived from the ASM.[215]

---

[210] Waid 1/16/19 Deposition at 89, 97-99, 108, 110.

[211] I understand these pricing grids were used to determine the pricing for the SLM Agreement in 2006 executed by FICO and Chubb & Son.

[212] Waid 1/16/19 Deposition at 89, 97-99, 108, 110.

[213] Waid 1/16/19 Deposition at 89, 97-99, 108, 110.

[214] Waid 1/16/19 Deposition at 24.

[215] Waid 1/16/19 Deposition at 39-40, 104, 108, 110, 131; Declaration of William Waid in Support of Fair Isaac Corporation's Opposition to Federal Insurance Company's Motion to Compel ("Waid Declaration") Exhibit A (FICO0000830). The ASM plus CPM are called the "Blaze Advisor Price List from 2003."

103. 

104.

105.

*ii.* <u>Support and Maintenance Fees</u>

106.    Further, Blaze Advisor licenses are packaged with support and maintenance services that ████████████████████████████████████████████████████ The support and maintenance services commence upon shipment of the software.[225]

---

[216] Waid 1/16/19 Deposition at 99-100.

[217] Waid Declaration at Exhibit A (FICO0000830).

[218] Waid Declaration at Exhibit A (FICO0000830).

[219] Waid 1/16/19 Declaration at 39-40; Waid Declaration at Exhibit A (FICO0000830).

[220] Waid 1/16/19 Deposition at 108; Waid Declaration at Exhibit A (FICO0000830).

[221] Waid Declaration at Exhibit A (FICO0000830).

[222] Waid 1/16/19 Deposition at 129 and Exhibit 229 (Plaintiff Fair Isaac Corporation's Second Supplemental Answers to Defendant's Interrogatory Nos. 6-9, dated April 23, 2018).

[223] Waid 1/16/19 Deposition at 129 and Exhibit 229 (Plaintiff Fair Isaac Corporation's Second Supplemental Answers to Defendant's Interrogatory Nos. 6-9, dated April 23, 2018).

[224] Deposition of William Waid, dated April 2, 2019 ("Waid 4/2/19 Deposition") at 72-74.

[225] *See*, generally, Schreiber Deposition at Exhibit 110 (FICO0001702-722 at 713-717).

       *iii.*      Development Seat Fees[226]

107.    I understand that FICO requires licensees to maintain development seat licenses to sustain existing and/or develop new applications incorporating Blaze Advisor. These seats are separately priced from software licenses and are necessary to support and maintain the software. The number of development seats varies by the size of the corresponding application using Blaze Advisor. The seats are licensed in packs of three (3) to thirty (30), and packs may be combined to satisfy the licensee's requirements.

       *iv.*      iv. Multi-Platform Uplift[227]

108.    Further, I understand an additional fee is required if an application utilizes Blaze Advisor on more than one platform. Specifically, of the Defendants' applications incorporating Blaze Advisor, I understand the Evolution application in Canada and CSI eXPRESS in the United States use two different platforms, and accordingly results in an ▮▮▮▮▮▮▮▮▮ This incremental "multi-platform uplift" is calculated by multiplying ▮▮▮▮ the deployment license fee derived from the CSM rate table previously described.

## VI.    SUMMARY OF OPINIONS

109.    My opinions are based on careful consideration of the case-specific facts and circumstances, as well as my education, training and experience. As further discussed within this report, I also considered various factors and considerations as set forth in relevant case law. Based on the documents produced to date, I have reached the following opinions.

### A.    Lost Software Licensing, Support and Maintenance Fees

110.    FICO has lost deployment license, development seat license, support and maintenance fees totaling $37.4 million from Defendants' unlicensed and unauthorized use of Blaze Advisor between April 2010 and December 2019. These fees include improper usage in the United States of $16.1 million and $21.3 million in Canada, Australia, the United Kingdom and certain other countries in the European zone. (See **Schedule 3.0**).

---

[226] Interview of William Waid; Waid Declaration at Exhibit A (FICO0000830).
[227] Interview of William Waid; Waid 4/2/19 Deposition at 96-97, 228-229 and Exhibit 42; FED001020_0001; FED001311_0001-028 at 020.

### B.        Profits from Using and Distributing Blaze Advisor

111.    FICO may be entitled to disgorge Defendants' profits from written premiums generated using Blaze Advisor.[228] Between March 31, 2016 and March 2019, Defendants generated gross written premiums in the United States of $28.4 billion. (See **Schedules 3.0** and **8.0**.)  FICO may also be entitled to disgorge the profits from written premiums generated by certain foreign entities that used Blaze Advisor in Canada, Australia, the United Kingdom and certain other European countries between April 2013 and March 2019 of $2.5 billion. (See **Schedules 3.0** and **9.0**). In total, FICO may be entitled to disgorge the profits from written premiums generated using Blaze Advisor of $30.9 billion. (See **Schedule 3.0**).


## VII.    ANALYSIS OF DAMAGES

112.    For purposes of my damages analysis, I have assumed that Defendants Federal and ACE American are liable for the causes of action asserted by FICO and as a result of Defendants' actions, FICO has suffered economic harm, and/or Defendants have realized improper economic benefits.

### A.        Lost FICO Software License, Support, and Maintenance Fees

#### i.        Nature of Defendants' License Agreements

113.    The appropriate measure of FICO's lost domestic license fees for the period from March 31, 2016 (i.e., the termination date) to December 2019 (i.e., the trial ready date in this matter) is FICO's annual named-application deployment and development seat license fees for the period each Blaze Advisor application is used without FICO's licensed consent. This is the appropriate measure of loss to FICO because it reflects the value of its software for each year of unlicensed use in each unlicensed application until that use is enjoined.

---

[228] I understand based on the Copyright Act (17 U.S.C. § 504(b)) that: "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."  As a result, the damages presented related to copyright infringement damages reflect the dollar amounts associated with the gross written premiums through Defendants' allegedly infringing use of Blaze Advisor.

ii.   Size and Development Seats for Defendants' Applications

114. ███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████

**Table 7: Size and Seats Required for Defendants' Applications**



| Application | Country | |
|---|---|---|
| CSI eXPRESS | | |
| Automated Renewal Process | | |
| Profitability Indicator | | |
| Decision Point | | |
| Commercial Underwriting Workstation (CUW) | U.S. | |
| Individual Rate Modification Application (IRMA) | | |
| Premium Booking | | |
| Texas Accident Prevention System (TAPS) | | |
| CIS Claims | | |
| Cornerstone | | |
| EZER | U.K. & Europe | |
| Evolution | Canada | |
| Broker Site | Canada | |
| Evolution | Australia | |
| Adapt | Australia | |
| Adapt | U.K. | |
| Exari | U.K. | |

iii.   License, Development, Support, and Maintenance Fees

115.   Based on the sizes and number of development seats required for Defendants' named applications in **Table 7** above and FICO's standard rate table, FICO has lost $16.1 million in

---

[229] Waid 1/16/19 Deposition at 39-40, 98, 104, 108, 110, 131; Waid Declaration at Exhibit A (FICO0000830).

[230] Waid 1/16/19 Deposition at 39-40, 98, 104, 108, 110, 131; Waid Declaration at Exhibit A (FICO0000830).

EXPERT REPORT OF N. ZOLTOWSKI
CASE NO. 16-CV-1054 (WMW/DTS)                              CONFIDENTIAL – ATTORNEYS' EYES ONLY

domestic software license, development seat, support and maintenance fees between March 31, 2016 and December 2019. (See **Schedule 4.0**).

116.   FICO has also lost $21.3 million in unpaid foreign deployment license, development seat license, support and maintenance fees between April 21, 2010 and December 2019. (See **Schedule 5.0**).

117.   In total, FICO lost license, support and maintenance fees of $37.4 million between April 2010 and December 2019. (See **Schedule 3.0**).

### B.   Understanding of Damages Related to Copyright Infringement

118.   To assess the damages suffered by FICO as a result of Defendants' alleged copyright infringement in this instance, I have made the following assumptions: (1) the Copyrights-in-Suit are enforceable; (2) the Copyrights-in-Suit are valid; (3) the Copyrights-in-Suit are owned and controlled by FICO; and (4) Defendants are found liable for the wrongful acts asserted in the causes of action brought by FICO in this matter.

### i.   Available Damages Remedies (Copyright Infringement)

119.   I understand that the appropriate monetary remedies in instances of copyright infringement are outlined in 17 U.S.C. § 504(b):

> Actual Damages and Profits. —
>
> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

120.   I understand the available damage remedies for copyright infringement include actual damages sustained by the plaintiff and profits of the infringer attributable to the infringement.[231]

---

[231] *Calculating Intellectual Property Infringement Damages*, AICPA Practice Aid, 3rd Ed. (2012); and 17 U.S.C § 504(b).

### C.      FICO's Actual Damages

121.    The Copyright Act permits recovery of actual damages suffered as a result of the infringement.  As discussed above in Section VII(A), FICO has lost deployment and develop seat license, support, and maintenance fees.

### D.      Disgorgement/Defendants' Profits[232]

#### i.      Defendants Use of Blaze Advisor Contributes to Insurance Premiums

122.    Defendants disclosed the gross written premiums of each company from all insurance policies in connection with which Blaze Advisor was used.[233]  I understand that these Blaze Advisor applications have contributed to the generation of billions of dollars in premiums.

123.    **Table 8** below is a summary of Defendants' domestic business units/segments and the corresponding Blaze Advisor applications that each uses.

**Table 8: Summary of Domestic Business Units/Segments and Blaze Advisor Applications**[234]

| Business Unit/Segment[235] | Blaze Advisor Application |
|---|---|
| Chubb Specialty Insurance/ Financial Lines | CSI eXPRESS |
| | CIS Claims |
| | Decision Point |
| | Profitability Indicator |
| | Automated Renewal Process |
| Chubb Commercial Insurance | CUW |
| | Individual Rate Modification Application (IRMA) |
| | Texas Accident Prevention System (TAPS) |
| Surety | Cornerstone |
| Commercial Business Systems | Premium Booking |

---

[232] I understand based on the Copyright Act (17 U.S.C. § 504(b)) that: "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."  As a result, the damages presented related to copyright infringement damages reflect the dollar amounts associated with the gross written premiums through Defendants' allegedly infringing use of Blaze Advisor.

[233] Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No. 16 and Sixth Supplemental Answer to Plaintiff's Interrogatory No. 17, dated March 21, 2019 at 3-19; Federal Insurance Company's Sixth Supplemental Answer to Plaintiff's Interrogatory No. 18, dated March 21, 2019 at 3; Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No. 20, dated March 21, 2019 at 3-5.

[234] Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No. 16 and Sixth Supplemental Answer to Plaintiff's Interrogatory No. 17, dated March 21, 2019 at 3-19; Federal Insurance Company's Sixth Supplemental Answer to Plaintiff's Interrogatory No. 18, dated March 21, 2019 at 3; Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No. 20, dated March 21, 2019 at 3-5.

[235] Mirolyuz 1/11/19 Deposition at 25.

E.    **Disgorgement/Defendants' Profits**[236]

i.    Accused Domestic Infringement

124.    Based on my review of the documents produced and testimony given in this matter as well as my discussions with Bick Whitener, Defendants' use of Blaze Advisor contributes to the generation of gross written premiums. Consequently, FICO may be entitled to disgorge Defendants' profits from written premiums generated using Blaze Advisor. Between March 31, 2016 and March 2019, Defendants generated gross written premiums totaling $28.4 billion. (See **Schedules 3.0** and **8.0**).

125.    My computations of Federal's and ACE American's gross written premiums are limited to only those reported by Defendants as involving domestic Blaze Advisor applications.

ii.    Accused Foreign Infringement

126.    FICO may also be entitled to disgorge Defendants' profits derived from the gross written premiums generated using Blaze Advisor in foreign applications. Again, my computations of gross written premiums are limited to only those reported by Defendants as involving Blaze Advisor foreign applications. Between April 21, 2013 and March 2019, Defendants reported written premiums totaling $2.5 billion. (See **Schedules 3.0** and **9.0**).

---

[236] I understand based on the Copyright Act (17 U.S.C. § 504(b)) that: "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." As a result, the damages presented related to copyright infringement damages reflect the dollar amounts associated with the gross written premiums through Defendants' allegedly infringing use of Blaze Advisor.

# SCHEDULES



# Neil Zoltowski

## CLP, CPVA, CVA, MAFF

Partner

T:  +1 415 848 7603
E: nzoltowski@stoneturn.com

**San Francisco**
One Sansome Street
Suite 700
San Francisco, CA 94104

Neil Zoltowski serves as a consulting and testifying financial expert in complex business disputes, intellectual property litigation, and business and intellectual property valuation matters.

He has more than 20 years of experience in the evaluation and quantification of economic damages in intellectual property disputes, including patent, copyright and trademark infringement, trade secret misappropriation, and false advertising and deceptive trade practices under the Lanham Act, as well as commercial disputes such as breach of contract, breach of fiduciary duty, unfair competition, stock valuation / shareholder disputes and diminution of business value claims.

Neil also brings experience in IP and business valuation matters; has designed and executed compliance inspection programs and royalty audits; and has consulted with clients on licensing issues across a broad range of industries, including biotechnology, computer hardware and software, construction, consumer products and services, Internet and e-Commerce, electronics, insurance, life sciences, manufacturing, medical devices, and telecommunications, among others.

Neil's prior consulting experience includes several years at Deloitte, NERA Economic Consulting, and FTI Consulting.

Neil holds the Certified Valuation Analyst and Master Analyst in Financial Forensics designations from the National Association of Certified Valuation Analysts, the Certified Licensing Professional designation from the Licensing Executives Society, and the Certified Patent Valuation Analyst from the Business Development Academy.

**Education**

B.A., Economics,
Trinity College (Phi Beta
Kappa, Pi Gamma Mu)

**Practice Areas**

Intellectual Property

Litigation



**Neil Zoltowski, CLP, CPVA, CVA, MAFF**                                                    **Partner**

| REPRESENTATIVE INDUSTRY EXPERIENCE | | |
| --- | --- | --- |
| Biotechnology / Life Sciences | E-Commerce / Internet | Mobile Devices |
| Computer Hardware | Electronics | Professional Services |
| Computer Software | Insurance | Semiconductor / Memory Devices |
| Construction | Manufacturing | Telecommunications |
| Consumer Products / Services | Medical Devices | Video Games |

## PREVIOUS EXPERIENCE

- FTI Consulting, Inc., San Francisco, CA (2011-2012)
- StoneTurn Group LLP, San Francisco, CA (2004-2006) / Boston, MA (2006-2011)
- Deloitte & Touche LLP, San Francisco, CA (2001-2004)
- Tucker Alan, Inc. (acquired by Navigant Consulting), San Francisco, CA (2000-2001)
- NERA Economic Consulting, Boston, MA (1996-1999)

## PROFESSIONAL AFFILIATIONS / OTHER

- Member – National Association of Certified Valuation Analysts
- Member – Licensing Executives Society
- Member – Intellectual Property Owners Association
- Future Leaders Program – Greater Boston Chamber of Commerce

## DESIGNATIONS AND CERTIFICATIONS

- Certified Valuation Analyst (CVA) – National Association of Certified Valuation Analysts
- Master Analyst in Financial Forensics (MAFF), Business and Intellectual Property Damages – National Association of Certified Valuation Analysts
- Certified Licensing Professional (CLP) – Licensing Executives Society
- Certified Patent Valuation Analyst (CPVA) – Business Development Academy

## PUBLICATIONS

- "Implications of Recent Court Decisions on the Application of the 'Entire Market Value Rule' to Patent Damages Analysis," ABA Section of Litigation – Intellectual Property Roundtable Outline, November 2010.
- "Supreme Court Paves the Way for Changes to Expert Discovery," Forensic Expert Witness Association Newsletter, Fall 2010.
- "An Estimate of Current Universal Service Obligations and the Likely Impact of Federal and State Universal Service Plans," International Communications Forecasting Conference, June 1998.



**Neil Zoltowski, CLP, CPVA, CVA, MAFF**          **Partner**

## SELECT PROFESSIONAL EXPERIENCE

### Expert Designations and Testimony

- Great American Insurance Co. of New York and Novartis Pharmaceutical Corp. v. <u>TA Operating Corp., et al.</u>, 2008 (S.D.N.Y., Case No. 06-cv-13230 (WHP)(JCF)) – Report and testifying expert at deposition for travel center defendant in breach of contract dispute involving stolen truckload of pharmaceuticals. Case settled.

- DBEST Products, Inc., et al. v. <u>Staples, Inc., et al.</u>, 2008 (C.D. Cal., Case No. 2:07-cv-04895 (ODW) (MANx)) – Report and testifying expert at deposition for office supply defendant in patent infringement dispute involving wheeled storage carts. Case settled.

- Competitive Edge, Inc., et al. v. <u>Staples, Inc., et al.</u> 2009 (N.D. Ill., Case No. 1:08-cv-00956) – Report and testifying expert at deposition for office supply defendant in design patent and trade dress infringement dispute involving novelty and promotional consumer products. Case dismissed.

- <u>Personnel Department, Inc.</u> v. CareerBuilder, LLC, 2009 (D. Vt., Case No. 2:08-cv-59) – Report and testifying expert at deposition for staffing services plaintiff in trade secret misappropriation dispute involving web-based computer software architecture for the creation of résumés. Case settled.

- Lon Sherman, et al. v. <u>Mark G. Shub, et al.</u>, 2009 (Mass. Superior Court, Case No. 07-2547-BLS) – Expert disclosure for attorney defendant in professional malpractice dispute concerning estate and gift taxes. Case dismissed.

- <u>EMC Corporation</u> v. Proview Technology (Shenzhen) Co., Ltd., et al., 2009 (D. Mass., Case No. 09-40062-FDS) – Report for computer storage hardware plaintiff in tortious interference and unfair competition dispute involving the wrongful use of the plaintiff's trade name. Case settled.

- <u>HTC Sweden AB</u> v. Innovatech Products and Equipment Co., 2009 (E.D. Tenn., Case No. No. 3:07-cv-232 (VARLAN/SHIRLEY)) – Reports for plaintiff in patent infringement dispute involving floor grinding technology and products. Case settled.

- The Associated Press v. <u>One 3 Two, Inc. (d/b/a Obey Clothing)</u>, Shepard Fairey, et al., 2010 (S.D.N.Y., Case No. 1:09-cv-01123 (AKH)) – Report and testifying expert at deposition for co-defendant in copyright infringement involving use of a photograph to create a derivative work for apparel and promotional materials/merchandise. Case settled.

- <u>Fitness Gaming Corporation</u> v. ICON Health & Fitness, Inc., 2011 (E.D. Va., Case No. 1:11-cv-00200 (CMH/IDD)) – Report and testifying expert at deposition for plaintiff in patent infringement dispute involving gaming entertainment and exercise equipment. Case dismissed.



**Neil Zoltowski, CLP, CPVA, CVA, MAFF**                                    **Partner**

---

- Achates Reference Publishing, Inc. v. **Symantec Corporation**, et al., 2013 (E.D. Tex., Case No. 2:11-cv-00294 (JRG-RSP)) – Report for defendant in patent infringement dispute involving software activation technology. Case settled.

- Digital Reg of Texas, LLC v. **Symantec Corporation**, et al., 2014 (N.D. Cal., Case No. 12-cv-01971-CW) – Report and testifying expert at deposition for defendant in patent infringement dispute involving software activation technology. Case settled.

- **Minitab, Inc.** v. EngineRoom, LLC, 2014 (M.D. Pa., Case No. 4:12-cv-02170-JEJ) – Report and testifying expert at deposition on behalf of counterclaim defendant in patent infringement dispute involving statistical analysis software. Case dismissed.

- English & Sons, Inc., et al. v. **Straw Hat Restaurants, Inc., et al.**, 2016 (N.D. Cal., Case No. 3:15-cv-01382-LB) – Report on behalf of counterclaim defendant in Lanham Act dispute involving pizza franchises. Case settled.

- **Top Agent Network, Inc.** v. Zillow, Inc., 2016 (N.D. Cal., Case No. 3:14-cv-04769-RS) – Report on behalf of plaintiff in trade secret misappropriation dispute involving online real estate marketplaces. Case settled.

- Adobe Systems, Incorporated v. **A & S Electronics, Inc., et al.**, 2016 (N.D. Cal., Case No. 4:15-cv-02288 SBA (EDL)) – Report on behalf of defendant in trademark and copyright infringement dispute involving the resale of Adobe software products. Case settled.

- Fusilamp, LLC, et al. v. **Littelfuse, Inc.**, 2017 (American Arbitration Association, Case No. 13-20-1200-2324) – Report and testifying expert at arbitration on behalf of defendant in patent infringement dispute involving blade fuses used in automotive applications. Case adjudicated.

- **Smartling, Inc.** v. Easyling LLC and Skawa Innovation Ltd., 2017 (D. Mass., Case No. 1:14-cv-13106-ADB) – Report on behalf of plaintiff in Lanham Act and unfair competition dispute involving language translation software solutions and services. Case pending.

- **Brooks Automation, Inc.** v. PTB Sales, Inc., 2018 (C.D. Cal., Case No. 2:17-cv-03880-PA-AFM) – Reports on behalf of plaintiff in copyright infringement, trademark infringement, unfair competition, misappropriation of trade secrets, and conversion dispute involving cryogenic technology in the semiconductor manufacturing industry. Case settled.

- Kangaroo Manufacturing, Inc. v. **Amazon.com, Inc.**, 2018 (D. Ariz., Case No. 2:17-cv-01806-SPL) – Report and testifying expert at deposition on behalf of defendant in copyright and trademark infringement dispute related to online retail. Case pending.



SCHEDULE 1.0

## Neil Zoltowski, CLP, CPVA, CVA, MAFF                    Partner

- <u>Positron Systems, Inc.</u> v. Wyle Laboratories, Inc., 2018 (Cal. Super., Case No. BC595462) – Report and testifying expert at deposition and trial on behalf of plaintiff in unfair competition, misappropriation of trade secrets, and breach of contract dispute involving non-destructive testing technology. Case pending.

- Pennies2Platinum, Inc., f/k/a Yagoozon, Inc. v. <u>Amazon, Inc., Amazon Services, LLC, and Amazon Payments, Inc.</u>, 2018 (American Arbitration Association, Case No. 01-17-6003-2625) – Report on behalf of defendant in copyright and trademark infringement dispute related to online retail. Case pending.

- <u>Gavrieli Brands, LLC</u> v. Soto Massini (USA) Corp., et al., 2019 (D. Del., Case No. 18-462-GMS) – Report on behalf of plaintiff in design patent infringement, trade dress infringement, false advertising, and unfair competition dispute involving ballet flat footwear.  Case pending.



*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

SCHEDULE 2.0: Documents Considered

| Bates | Begin | End | Bates | Begin | End |
|-------|-------|-----|-------|-------|-----|
| FED | 000046_0001 | 000046_0016 | FED | 001016_0001 | 001016_0001 |
| FED | 000049_0001 | 000049_0002 | FED | 001020_0001 | 001020_0001 |
| FED | 000050_0001 | 000050_0002 | FED | 001083_0001 | 001083_0001 |
| FED | 000051_0001 | 000051_0022 | FED | 001084_0001 | 001084_0002 |
| FED | 000058_0001 | 000058_0012 | FED | 001101_0001 | 001101_0002 |
| FED | 000059_0001 | 000059_0002 | FED | 001104_0001 | 001104_0018 |
| FED | 000060_0001 | 000060_0002 | FED | 001148_0001 | 001148_0002 |
| FED | 000064_0001 | 000064_0030 | FED | 001150_0001 | 001150_0001 |
| FED | 000068_0001 | 000068_0028 | FED | 001151_0001 | 001151_0002 |
| FED | 000112_0001 | 000112_0068 | FED | 001164_0001 | 001164_0002 |
| FED | 000122_0001 | 000122_0029 | FED | 001180_0001 | 001180_0002 |
| FED | 000127_0001 | 000127_0004 | FED | 001289_0001 | 001289_0004 |
| FED | 000141_0001 | 000141_0004 | FED | 001311_0001 | 001311_0028 |
| FED | 000143_0001 | 000143_0006 | FED | 001312_0001 | 001312_0021 |
| FED | 000152_0001 | 000152_0009 | FED | 001314_0001 | 001314_0021 |
| FED | 000171_0001 | 000171_0028 | FED | 001320_0001 | 001320_0028 |
| FED | 000185_0001 | 000185_0007 | FED | 003112_0001 | 003112_0009 |
| FED | 000190_0001 | 000190_0009 | FED | 003261_0001 | 003261_0001 |
| FED | 000195_0001 | 000195_0002 | FED | 003339_0001 | 003339_0001 |
| FED | 000205_0001 | 000205_0259 | FED | 003989_0001 | 003989_0020 |
| FED | 000243_0001 | 000243_0024 | FED | 004079_0001 | 004079_0027 |
| FED | 000252_0001 | 000252_0015 | FED | 004100_0001 | 004100_0003 |
| FED | 000255_0001 | 000255_0034 | FED | 004431_0001 | 004431_0003 |
| FED | 000259_0001 | 000259_0026 | FED | 004434_0001 | 004434_0003 |
| FED | 000270_0001 | 000270_0065 | FED | 004435_0001 | 004435_0009 |
| FED | 000270-0001 | 000270-0065 | FED | 004436_0001 | 004436_0003 |
| FED | 000275_0001 | 000275_0016 | FED | 004437_0001 | 004437_0001 |
| FED | 000278_0001 | 000278_0153 | FED | 004458_0001 | 004458_0002 |
| FED | 000280_0001 | 000280_0016 | FED | 004506_0001 | 004506_0004 |
| FED | 000287_0001 | 000287_0019 | FED | 004524_0001 | 004524_0001 |
| FED | 000289_0001 | 000289_0024 | FED | 004525_0001 | 004525_0016 |
| FED | 000294_0001 | 000294_0021 | FED | 004526_0001 | 004526_0007 |
| FED | 000305_0001 | 000305_0042 | FED | 004527_0001 | 004527_0003 |
| FED | 000305-0001 | 000305-0042 | FED | 004531_0001 | 004531_0002 |
| FED | 000340_0001 | 000340_0001 | FED | 004533_0001 | 004533_0004 |
| FED | 000342_0001 | 000342_0003 | FED | 004534_0001 | 004534_0001 |
| FED | 000347_0001 | 000347_0001 | FED | 004535_0001 | 004535_0010 |
| FED | 000348_0001 | 000348_0001 | FED | 004537_0001 | 004537_0002 |
| FED | 000350_0001 | 000350_0001 | FED | 004538_0001 | 004538_0001 |
| FED | 000351_0001 | 000351_0001 | FED | 004549_0001 | 004549_0002 |
| FED | 000352_0001 | 000352_0002 | FED | 004550_0001 | 004550_0003 |
| FED | 000353_0001 | 000353_0001 | FED | 004571_0001 | 004571_0001 |
| FED | 000360_0001 | 000360_0002 | FED | 004587_0001 | 004587_0002 |
| FED | 000361_0001 | 000361_0010 | FED | 004603_0001 | 004603_0002 |
| FED | 000362_0001 | 000362_0004 | FED | 004604_0001 | 004604_0001 |
| FED | 000420_0001 | 000420_0001 | FED | 004617_0001 | 004617_0001 |
| FED | 000514_0001 | 000514_0001 | FED | 004625_0001 | 004625_0001 |
| FED | 000588_0001 | 000588_0001 | FED | 004628_0001 | 004628_0001 |
| FED | 000589_0001 | 000589_0001 | FED | 004629_0001 | 004629_0002 |
| FED | 000594_0001 | 000594_0002 | FED | 004635_0001 | 004635_0001 |
| FED | 000700_0001 | 000700_0003 | FED | 004636_0001 | 004636_0001 |
| FED | 000703_0001 | 000703_0003 | FED | 004637_0001 | 004637_0001 |
| FED | 000713_0001 | 000713_0005 | FED | 004736_0001 | 004736_0003 |
| FED | 000718_0001 | 000718_0001 | FED | 004790_0001 | 004790_0021 |
| FED | 000755_0001 | 000755_0001 | FED | 004839_0001 | 004839_0022 |

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 2.0: Documents Considered**

| Bates | Begin | End | Bates | Begin | End |
|-------|-------|-----|-------|-------|-----|
| FED | 004844_0001 | 004844_0040 | FED | 013517_0001 | 013517_0195 |
| FED | 004896_0001 | 004896_0002 | FED | 013518_0001 | 013518_0194 |
| FED | 004946_0001 | 004946_0007 | FED | 013519_0001 | 013519_0124 |
| FED | 005053_0001 | 005053_0002 | FED | 013520_0001 | 013520_0343 |
| FED | 005090_0001 | 005090_0002 | FED | 013521_0001 | 013521_0225 |
| FED | 005190_0001 | 005190_0011 | FED | 013522_0001 | 013522_0214 |
| FED | 005204_0001 | 005204_0012 | FED | 013523_0001 | 013523_0193 |
| FED | 005214_0001 | 005214_0012 | FED | 013524_0001 | 013524_0190 |
| FED | 005221_0001 | 005221_0012 | FED | 013525_0001 | 013525_0133 |
| FED | 005307_0001 | 005307_0056 | FED | 013526_0001 | 013526_0147 |
| FED | 005476_0001 | 005476_0016 | FED | 013527_0001 | 013527_0296 |
| FED | 005942_0001 | 005942_0050 | FED | 013528_0001 | 013528_0289 |
| FED | 006068_0001 | 006068_0006 | FED | 013529_0001 | 013529_0153 |
| FED | 006173_0001 | 006173_0009 | FED | 013530_0001 | 013530_0224 |
| FED | 006228_0001 | 006228_0013 | FED | 013531_0001 | 013531_0173 |
| FED | 006246_0001 | 006246_0027 | FED | 013532_0001 | 013532_0247 |
| FED | 006248_0001 | 006248_0013 | FED | 013533_0001 | 013533_0330 |
| FED | 006252_0001 | 006252_0108 | FED | 013534_0001 | 013534_0425 |
| FED | 006288_0001 | 006288_0001 | FED | 013535_0001 | 013535_0313 |
| FED | 006504_0001 | 006504_0013 | FED | 013536_0001 | 013536_0260 |
| FED | 006662_0001 | 006662_0032 | FED | 013537_0001 | 013537_0292 |
| FED | 006784_0001 | 006784_0038 | FED | 013557_0001 | 013557_0065 |
| FED | 006837_0001 | 006837_0018 | FED | 013558_0001 | 013558_0062 |
| FED | 006995_0001 | 006995_0024 | FED | 013839_0001 | 013839_0018 |
| FED | 007235_0001 | 007235_0032 | FED | 014390_0001 | 014390_0014 |
| FED | 007789_0001 | 007789_0002 | FED | 014415_0001 | 014415_0003 |
| FED | 007797_0001 | 007797_0001 | FED | 015545_0001 | 015545_0028 |
| FED | 007821_0001 | 007821_0015 | FED | 016469_0001 | 016469_0046 |
| FED | 007858_0001 | 007858_0013 | FED | 016590_0001 | 016590_0002 |
| FED | 008095_0001 | 008095_0131 | FED | 016599_0001 | 016599_0008 |
| FED | 008145_0001 | 008145_0011 | FED | 016602_0001 | 016602_0013 |
| FED | 008281_0001 | 008281_0042 | FED | 016653_0001 | 016653_0015 |
| FED | 008352_0001 | 008352_0002 | FED | 016737_0001 | 016737_0003 |
| FED | 008403_0001 | 008403_0027 | FED | 017176_0001 | 017176_0011 |
| FED | 008454_0001 | 008454_0009 | FED | 017202_0001 | 017202_0001 |
| FED | 008555_0001 | 008555_0005 | FED | 017203_0001 | 017203_0001 |
| FED | 008650_0001 | 008650_0014 | FED | 017204_0001 | 017204_0005 |
| FED | 008759_0001 | 008759_0001 | FED | 017205_0001 | 017205_0010 |
| FED | 008760_0001 | 008760_0003 | FED | 017206_0001 | 017206_0010 |
| FED | 009056_0001 | 009056_0033 | FED | 017207_0001 | 017207_0012 |
| FED | 009281_0001 | 009281_0013 | FED | 017208_0001 | 017208_0005 |
| FED | 009624_0001 | 009624_0006 | FED | 017209_0001 | 017209_0010 |
| FED | 009625_0001 | 009625_0001 | FED | 017210_0001 | 017210_0010 |
| FED | 009630_0001 | 009630_0002 | FED | 017211_0001 | 017211_0010 |
| FED | 009631_0001 | 009631_0001 | FED | 017212_0001 | 017212_0005 |
| FED | 009894_0001 | 009894_0004 | FED | 017213_0001 | 017213_0010 |
| FED | 010117_0001 | 010117_0017 | FED | 017214_0001 | 017214_0010 |
| FED | 010839_0001 | 010839_0026 | FED | 017215_0001 | 017215_0010 |
| FED | 010861_0001 | 010861_0007 | FED | 017216_0001 | 017216_0005 |
| FED | 011560_0001 | 011560_0042 | FED | 017217_0001 | 017217_0010 |
| FED | 012128_0001 | 012128_0014 | FED | 017218_0001 | 017218_0010 |
| FED | 012130_0001 | 012130_0021 | FED | 017219_0001 | 017219_0010 |
| FED | 013479_0001 | 013479_0034 | FED | 017220_0001 | 017220_0005 |
| FED | 013515_0001 | 013515_0213 | FED | 017221_0001 | 017221_0010 |
| FED | 013516_0001 | 013516_0199 | FED | 017222_0001 | 017222_0010 |

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

SCHEDULE 2.0: Documents Considered

| Bates | Begin | End | Bates | Begin | End |
|-------|-------|-----|-------|-------|-----|
| FED | 017223_0001 | 017223_0010 | FICO | 0000700 | 0000700 |
| FED | 017224_0001 | 017224_0005 | FICO | 0000734 | 0000734 |
| FED | 017225_0001 | 017225_0010 | FICO | 0000735 | 0000736 |
| FED | 017226_0001 | 017226_0010 | FICO | 0000767 | 0000767 |
| FED | 017227_0001 | 017227_0010 | FICO | 0000828 | 0000829 |
| FED | 017228_0001 | 017228_0005 | FICO | 0000831 | 0000836 |
| FED | 017229_0001 | 017229_0010 | FICO | 0000852 | 0000854 |
| FED | 017230_0001 | 017230_0010 | FICO | 0000859 | 0000861 |
| FED | 017231_0001 | 017231_0010 | FICO | 0000885 | 0000887 |
| FED | 017232_0001 | 017232_0005 | FICO | 0000926 | 0000927 |
| FED | 017233_0001 | 017233_0010 | FICO | 0000929 | 0000932 |
| FED | 017234_0001 | 017234_0010 | FICO | 0000939 | 0000942 |
| FED | 017235_0001 | 017235_0010 | FICO | 0000971 | 0000971 |
| FED | 017236_0001 | 017236_0005 | FICO | 0001381 | 0001381 |
| FED | 017237_0001 | 017237_0010 | FICO | 0001424 | 0001425 |
| FED | 017238_0001 | 017238_0010 | FICO | 0001576 | 0001577 |
| FED | 017239_0001 | 017239_0010 | FICO | 0001792 | 0001793 |
| FED | 017240_0001 | 017240_0005 | FICO | 0001882 | 0001882 |
| FED | 017241_0001 | 017241_0010 | FICO | 0001883 | 0001883 |
| FED | 017242_0001 | 017242_0010 | FICO | 0001895 | 0001898 |
| FED | 017243_0001 | 017243_0010 | FICO | 0001903 | 0001909 |
| FED | 017354_0001 | 017354_0001 | FICO | 0001916 | 0001918 |
| FED | 017355_0001 | 017355_0002 | FICO | 0001923 | 0001924 |
| FED | 017356_0001 | 017356_0002 | FICO | 0002036 | 0002057 |
| FED | 017357_0001 | 017357_0002 | FICO | 0002804 | 0002804 |
| FED | 017358_0001 | 017358_0001 | FICO | 0002842 | 0002846 |
| FED | 017471_0001 | 017471_0001 | FICO | 0002965 | 0002965 |
| FED | 017472_0001 | 017472_0001 | FICO | 0004443 | 0004445 |
| FED | 017473_0001 | 017473_0001 | FICO | 0004656 | 0004658 |
| FED | 017882_0001 | 017882_0021 | FICO | 0005981 | 0005982 |
| FED | 017883_0001 | 017883_0004 | FICO | 0052649 | 0052796 |
| FED | 017884_0001 | 017884_0003 | FICO | 0052797 | 0052932 |
| FED | 017885_0001 | 017885_0001 | FICO | 0052933 | 0053075 |
| FED | 017886_0001 | 017886_0001 | FICO | 0053076 | 0053224 |
| FED | 017912_0001 | 017912_0001 | FICO | 0053225 | 0053371 |
| FED | 017913_0001 | 017913_0002 | FICO | 0053372 | 0053521 |
| FED | 17882_0001 | 17882_0021 | FICO | 0053522 | 0053662 |
| FED | 17883_0001 | 17883_0004 | FICO | 0053663 | 0053811 |
| FED | 17884_0001 | 17884_0001 | FICO | 0053812 | 0053959 |
| FED | 17885_0001 | 17885_0001 | FICO | 0053960 | 0054091 |
| FED | 17886_0001 | 17886_0002 | FICO | 0054092 | 0054227 |
| FICO | 0000003 | 0000004 | FICO | 0054228 | 0054368 |
| FICO | 0000005 | 0000005 | FICO | 0054369 | 0054511 |
| FICO | 0000055 | 0000055 | FICO | 0054512 | 0054653 |
| FICO | 0000057 | 0000058 | FICO | 0054654 | 0054951 |
| FICO | 0000060 | 0000061 | FICO | 0054952 | 0055171 |
| FICO | 0000193 | 0000194 | FICO | 0055172 | 0055400 |
| FICO | 0000198 | 0000199 | FICO | 0055401 | 0055484 |
| FICO | 0000259 | 0000261 | FICO | 0055485 | 0055611 |
| FICO | 0000275 | 0000278 | FICO | 0055612 | 0055742 |
| FICO | 0000307 | 0000324 | FICO | 0055743 | 0055882 |
| FICO | 0000381 | 0000381 | FICO | 0055883 | 0056031 |
| FICO | 0000461 | 0000462 | FICO | 0056032 | 0056182 |
| FICO | 0000645 | 0000647 | FICO | 0056183 | 0056198 |
| FICO | 0000657 | 0000659 | FICO | 0056199 | 0056214 |

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 2.0: Documents Considered**

| Bates | Begin | End |
|-------|-------|-----|
| FICO | 0056215 | 0056230 |
| FICO | 0056231 | 0056246 |
| FICO | 0056247 | 0056262 |
| FICO | 0056263 | 0056278 |
| FICO | 0056279 | 0056294 |
| FICO | 0056295 | 0056556 |
| FICO | 0056557 | 0056860 |
| FICO | 0056861 | 0057179 |
| FICO | 0057181 | 0057181 |
| FICO | 0057182 | 0057196 |
| FICO | 0057197 | 0057198 |
| FICO | 0057199 | 0057205 |
| FICO | 0057206 | 0057206 |
| FICO | 0057207 | 0057222 |
| FICO | 0057223 | 0057224 |
| FICO | 0057225 | 0057227 |
| FICO | 0057228 | 0057231 |
| FICO | 0057232 | 0057243 |
| FICO | 0057244 | 0057248 |
| FICO | 0057249 | 0057260 |
| FICO | 0057261 | 0057261 |
| FICO | 0057262 | 0057273 |
| FICO | 0057280 | 0057304 |
| FICO | 0057305 | 0057305 |
| FICO | 0057306 | 0057306 |
| FICO | 0057309 | 0057310 |

**Legal Filings**

Complaint Jury Trial Demanded and Related Exhibits, dated April 21, 2016

Amended Complaint Jury Trial Demanded, dated February 1, 2017

Second Amended Complaint Jury Trial Demanded, dated September 11, 2018

Plaintiff Fair Isaac Corporation's First Set of Requests for Production of Documents to Defendant Federal Insurance Company, dated April 11, 2017

Plaintiff Fair Isaac Corporation's First Set of Interrogatories to Defendant Federal Insurance Company, dated April 11, 2017

Plaintiff Fair Isaac Corporation's First Set of Requests for Admission to Defendant Federal Insurance Company, dated April 11, 2017

Plaintiff Fair Isaac Corporation's Responses to Defendant's Requests for Production of Documents, dated May 18, 2017

Plaintiff Fair Isaac Corporation's Answers to Defendant's First Set of Interrogatories, dated May 19, 2017

Plaintiff Fair Isaac Corporation's Answers to Defendant's First Set of Interrogatories, dated August 16, 2017

Plaintiff Fair Isaac Corporation's Second Set of Requests for Admission to Defendant Federal Insurance Company, dated December 29, 2017

Plaintiff Fair Isaac Corporation's Second Set of Requests for Production of Documents to Defendant Federal Insurance Company, dated December 29, 2017

Plaintiff Fair Isaac Corporation's Second Set of Interrogatories to Defendant Federal Insurance Company (15-21), dated December 29, 2017

Declaration of William Waid in Support of Fair Isaac Corporation's Opposition to Federal Insurance Company's Motion to Compel, dated February 5, 2018

Defendants' Response to Plaintiff's Second Set of Requests for Admission, dated January 29, 2018

Defendant's Answers to Plaintiff's Second Set of Interrogatories (15-21), dated January 29, 2018

Defendant's Response to Plaintiff's Second Set of Requests for Admission, dated January 29, 2018

Defendant's Response to Plaintiff's Second Set of Requests for Production of Documents, dated January 29, 2018

Defendants' Supplemental Responses to Plaintiff's Fourth Set of Requests for Production of Documents, dated March 4, 2019

Federal Insurance Company's Response to Plaintiff's First Set of Requests for Admission, dated May 11, 2017

Federal Insurance Company's Answers to Plaintiff's First Set of Interrogatories, dated May 11, 2017

Federal Insurance Company's Response to Plaintiff's First Set of Requests for Production of Documents, dated May 11, 2017

Federal Insurance Company's Supplemental Answers to Plaintiff's First Set of Interrogatories, dated June 15, 2017

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 2.0: Documents Considered**

**Legal Filings** (*Continued*)

Federal Insurance Company's Second Supplemental Answer to Interrogatory No. 6 and Supplemental Answer to Interrogatory No. 21, dated June 7, 2018

Federal Insurance Company's Second Supplemental Answers to Interrogatory Nos. 2, 3, and 4, dated June 21, 2018

Federal Insurance Company's Second Supplemental Answer to Interrogatory No. 6 and Supplemental Answer to Interrogatory No. 21, dated July 30, 2018

Federal Insurance Company's Supplemental Answer to Interrogatory No. 20, dated October 24, 2018

Federal Insurance Company's Supplemental Answer to Interrogatory No. 17, dated October 26, 2018

Federal Insurance Company's Supplemental Answer to Interrogatory No. 18, dated October 26, 2018

Federal Insurance Company's Supplemental Answer to Interrogatory No. 19, dated October 26, 2018

Federal Insurance Company's Third Supplemental Answer to Plaintiff's Interrogatory No. 18, dated December 14, 2018

Federal Insurance Company's Second Supplemental Answer to Plaintiff's Interrogatory No. 16, dated January 21, 2019

Federal Insurance Company's Third Supplemental Answer to Plaintiff's Interrogatory No. 17, dated January 21, 2019

Federal Insurance Company's Fourth Supplemental Answer to Plaintiff's Interrogatory No. 18, dated January 21, 2019

Federal Insurance Company's Third Supplemental Answer to Plaintiff's Interrogatory No. 19, dated January 21, 2019

Federal Insurance Company's Third Supplemental Answer to Plaintiff's Interrogatory No. 20, dated January 21, 2019

Federal Insurance Company's Third Supplemental Answer to Plaintiff's Interrogatory No. 16 and Fourth Supplemental Answer to Plaintiff's Interrogatory No. 17, dated February 28, 2019

Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No. 18, dated February 28, 2019

Federal Insurance Company's Fourth Supplemental Answer to Plaintiff's Interrogatory No. 19, dated February 28, 2019

Federal Insurance Company's Fourth Supplemental Answer to Plaintiff's Interrogatory No. 20, dated February 28, 2019

Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No. 19, dated March 2, 2019

Federal Insurance Company's Fourth Supplemental Answer to Plaintiff's Interrogatory No. 16 and Fifth Supplemental Answer to Plaintiff's Interrogatory No. 17, dated March 2, 2019

Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No. 16 and Sixth Supplemental Answer to Plaintiff's Interrogatory No. 17, dated March 21, 2019

Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No. 20, dated March 21, 2019

Federal Insurance Company's Sixth Supplemental Answer to Plaintiff's Interrogatory No. 18, dated March 21, 2019

Letter from Christopher D. Pham, dated December 31, 2018

**Depositions**

*Chubb Personnel*

Deposition of Henry Mirolyuz and Related Exhibits, dated July 31, 2018

Deposition of John Taylor and Related Exhibits, dated August 2, 2018

Deposition of Ramesh Pandey and Related Exhibits, dated November 13, 2018

Deposition of Henry Mirolyuz and Related Exhibits, dated January 11, 2019

Deposition of Tamra Pawloski and Related Exhibits, dated January 18, 2019

Deposition of Ramesh Pandey and Related Exhibits, dated January 22, 2019

Deposition of Kevin Harkin and Related Exhibits, dated March 25, 2019

*FICO Personnel*

Deposition of Oliver Clark and Related Exhibits, dated September 11, 2018

Deposition of Michael Sawyer and Related Exhibits, dated October 2, 2018

Deposition of Thomas Caretta and Related Exhibits, dated October 9, 2018

Deposition of Russell Schreiber and Related Exhibits, dated October 24, 2018

Deposition of William Waid and Related Exhibits, dated January 16, 2019

Deposition of Benjamin Baer and Related Exhibits, dated January 29, 2019

Deposition of Chris Ivey and Related Exhibits, dated January 30, 2019

Deposition of Jandeen Boone and Related Exhibits, dated February 6, 2019

Deposition of Lawrence Wachs and Related Exhibits, dated February 26, 2019

Deposition of Chris Ivey and Related Exhibits, dated March 14, 2019

Deposition of William Waid and Related Exhibits, dated April 2, 2019

**Financial Filings**

2016 Federal NAIC Annual Statement, dated December 31, 2016

Accountants' Letter of Qualifications, dated May 30, 2017

SCHEDULE 2.0

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

SCHEDULE 2.0: Documents Considered

**Financial Filings** *(Continued)*

ACE Limited Annual Report, dated December 31, 2013

ACE Limited Annual Report, dated December 31, 2014

ACE American Insurance Company Annual Statement, dated December 31, 2018

The Chubb Corporation U.S. Property and Casualty Insurance Group Audited Consolidated Financial Statements, dated May 21, 2015

Chubb Insurance Company of Europe SE Solvency and Financial Condition Report, dated December 31, 2016

Chubb U.S. Group of Insurance Company Best's Credit Ratings for Group Members, dated December 13, 2018

Federal Insurance Company and its U.S. Subsidiaries Management's Discussion & Analysis Statutory Basis, dated December 31, 2016

Federal Insurance Company Reinsurance Attestation Supplement for the Year 2016, dated December 31, 2016

Federal Insurance Company Investment Annual Statement, dated February 28, 2017

Federal Insurance Company and its U.S. Insurance Subsidiaries Audited Consolidated Financial Statements, dated May 30, 2017

Federal Insurance Company Combined Statutory Financial Statements, dated June 1, 2018

Federal Insurance Company Annual Statement, dated December 31, 2018

INA Holdings Combined Statutory Financial Statements, dated May 23, 2016

INA Holdings Combined Statutory Financial Statements, dated May 25, 2017

INA Holdings Combined Statutory Financial Statements, dated May 24, 2018

Statement of Actuarial Opinion, dated February 27, 2017

**Other**

26 U.S. Code Subchapter A – IRC § 1501 Privilege to File Consolidated Returns

26 U.S. Code Subchapter A – IRC § 1503 Computation and Payment of Tax

26 U.S. Code Subchapter A – IRC § 1504 Definition

26 U.S. Code Subchapter A – IRC § 1552 Earnings and Profits

Copyright Act (17 U.S.C. § 504(b))

FASB Accounting Standards Codification 810 – Consolidated Financial Statement Scope and Scope Exceptions 810-10-15-8

A.M. Best Methodology, "Rating Members of Insurance Groups," December 15, 2014

A.M. Best, "YE 2015 Federal Insurance Company (002084) Best's Credit Report Archive, Business Profile for Chubb Corp

Best's Credit Ratings for Group Members, Chubb U.S. Group of Ins Cos (000012)

*Calculating Intellectual Property Infringement Damages*, AICPA Practice Aid, 3rd Ed. (2012); and 17 U.S.C § 504(b).

https://www.fico.com

https://www.investopedia.com

https://www.tdi.texas.gov

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 3.0: Summary of Opinions**

| Lost Software License, Support and Maintenance Fees | | | |
|---|---|---|---|
| Domestic | *Schedule 4.0* | $ | 16,099,581 |
| Foreign | *Schedule 5.0* | | 21,262,691 |
| **TOTAL** | | **$** | **37,362,272** |

| Premiums from Copyright Infringement | | | |
|---|---|---|---|
| Domestic | *Schedule 8.0* | $ | 28,354,140,400 |
| Foreign | *Schedule 9.0* | | 2,521,900,482 |
| **TOTAL** | | **$** | **30,876,040,881** |

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 4.0: Summary of Lost Fees for Domestic Applications**



| Domestic Application | License, Support, and Maintenance (a) | Damages Period | | | Total Lost Fees |
| | | Start Date (b) | End Date (c) | Years | |
| --- | --- | --- | --- | --- | --- |
| CSI eXPRESS | | | | | |
| Automated Renewals Process (ARP) | | | | | |
| Profitability Indicator | | | | | |
| Decision Point | | | | | |
| Commercial Underwriting Workstation (CUW) | | | | | |
| Premium Booking | | | | | |
| Texas Accident Prevention System (TAPS) | | | | | |
| Individual Rate Modification Application (IRMA) | | | | | |
| CIS Claims | | | | | |
| Cornerstone | | | | | |
| **Total** | $ 4,359,060 | | | | $ 16,099,581 |

*Note/Source(s):*

(a)  See **Schedule 6.0**.

(b)  I understand the damages period starts at the date of termination of the SLM Agreement (i.e., March 31, 2016). (FED004437_0001.)

(c)  I understand the trial ready date is December 9, 2019.

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 5.0: Summary of Lost Fees for Foreign Applications**



| Foreign Application | Region | License, Support, and Maintenance (a) | *Damages Period* | | | Total Lost Fees |
| | | | Start Date | End Date (b) | Years | |
|---|---|---|---|---|---|---|
| ADAPT | Australia | | | | | |
| ADAPT | U.K. | | | | | |
| Evolution | Australia | | | | | |
| Evolution | Canada | | | | | |
| EZER | U.K. and Europe | | | | | |
| Exari | U.K. | | | | | |
| Broker Site | Canada | | | | | |
| **Total** | | $ 3,302,235 | | | | $ 21,262,691 |

*Note/Source(s):*

(a) See **Schedule 7.0**.

(b) I understand the trial ready date is December 9, 2019.

(c) I understand the damages period starts at the latter of the first year of gross written premiums reported per interrogatory responses or 6 years before the filing date of April 21, 2016 (i.e., April 21, 2010). See **Schedule 12.0**.

(d) I understand FICO asserts that ADAPT (Europe) was used in 2009. (FED014415_0001-0003.)

(e) I understand FICO asserts that Evolution (Canada) was used in 2013. Further, I understand the Broker Site application is integrated with the Evolution (Canada) application. (Mirolyuz 1/11/2019 Deposition at Exhibit 186 (FED008481_0001-FED008482_0001); Harkin Deposition at 206-209.)

(f) I understand the development of the Exari application started in 2013 and was abandoned in 2016. (Mirolyuz 1/11/2019 Deposition at Exhibit 187 (FED12301_0001; FED12303-0001); FED017913_0001-0002.)

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 6.0: Domestic Named Application Annual Fees**



| Domestic Application (a) | Perpetual License (a) | Annual License (b) | Support and Maintenance (c) | License, Support, and Maintenance (d) |
|---|---|---|---|---|
| CSI eXPRESS | | | | |
| Automated Renewals Process (ARP) | | | | |
| Profitability Indicator | | | | |
| Decision Point | | | | |
| Commercial Underwriting Workstation (CUW) | | | | |
| Premium Booking | | | | |
| Texas Accident Prevention System (TAPS) | | | | |
| Individual Rate Modification Application (IRMA) | | | | |
| CIS Claims | | | | |
| Cornerstone | | | | |
| **Total** | $ 7,940,000 | $ 3,573,000 | $  786,060 | $  4,359,060 |

*Note/Source(s):*

(a)  Perpetual License includes a Deployment License fee and Development Seat License fee. See **Schedule 6.1.**

(b)  I understand the Annual License Fee is calculated as the Perpetual License Fee multiplied by a ███████████ (Waid 1/16/2019 Deposition at 128-129; Plaintiff Fair Isaac Corporation's Second Supplemental Answers to Defendant's Interrogatory Nos. 6-9, dated April 23, 2018 at 6-7; Waid 4/2/2019 Deposition at 26-27.)

(c)  I understand the Support and Maintenance Fee is calculated as ███ (i.e., current rate) of the Annual License Fee. (Plaintiff Fair Isaac Corporation's Second Supplemental Answers to Defendants' Interrogatory Nos. 6-9 dated, April 23, 2018 at 6-7; Waid 4/2/2019 Deposition at 73-74.)

(d)  Calculated as the sum of the Annual License and Support and Maintenance.

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 6.1: Domestic Application Perpetual License Fee Calculation**



| | | | | | *Fees* | | | | |
| | | | | | | | *Development Seat* | | |
| **Domestic Application** (a) | | **Size** (b) | **Deployment License** (c) | **Multi-Platform Uplift** (d) | **Adjusted Deployment License** (e) | | **Pack** (b) | **License** (f) | **Perpetual License** (g) |
|---|---|---|---|---|---|---|---|---|---|
| CSI eXPRESS | | | | | | | | | |
| Automated Renewals Process (ARP) | | | | | | | | | |
| Profitability Indicator | | | | | | | | | |
| Decision Point | | | | | | | | | |
| Commercial Underwriting Workstation (CUW) | | | | | | | | | |
| Premium Booking | | | | | | | | | |
| Texas Accident Prevention System (TAPS) | | | | | | | | | |
| Individual Rate Modification Application (IRMA) | | | | | | | | | |
| CIS Claims | | | | | | | | | |
| Cornerstone | | | | | | | | | |
| **Total** | | | **$ 6,250,000** | | **$ 6,550,000** | | | **$ 1,390,000** | **$ 7,940,000** |

*Note/Source(s):*

(a)  Fair Isaac Corporation's Second Supplemental Answers to Interrogatory Nos. 2, 3, and 4, dated June 21, 2018 at 8; Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No. 16 and Sixth Supplemental Answer to Plaintiff's Interrogatory No. 17, dated March 21, 2019 at 3-19.

(b)  Per discussions with William Waid, I understand the Size of the application is determined based on the nine-factor Application Sizing Matrix. Additionally, I understand a Development Seat, which is priced in Packs, is a required annual cost to help maintain the software. (Plaintiff Fair Isaac Corporation's Second Supplemental Answers to Defendant's Interrogatory Nos. 6-9, dated April 23, 2018 at 6-7; Waid 4/2/2019 Deposition at 17-21.)

(c)  Per discussions with William Waid, I understand the Deployment License fee is determined based on applying the application Size to the Category Matrix Pricing. (Plaintiff Fair Isaac Corporation's Second Supplemental Answers to Defendant's Interrogatory Nos. 6-9, dated April 23, 2018 at 6-7; Waid Declaration at Exhibit A (FICO0000830); Waid 4/2/2019 Deposition at 17-21.)

(d)  Per discussions with William Waid, I understand CSI eXPRESS application uses more than one platform and accordingly, a Multi-Platform Uplift fee of ▆ is applied to the Deployment License fee. Additionally, I understand the Packs of Development Seats for CSI eXPRESS (i.e., 3-Pack) is required separately for each platform (i.e., two 3-Packs). All other domestic applications only use one platform. (Waid 4/2/2019 Deposition at 96-97; FED001020_0001.)

(e)  Calculated as the sum of the Deployment License fee and the Multi-Platform Uplift fee.

(f)  Per discussions with William Waid, I understand the Development Seat License fee is determined based on the Category Pricing Matrix. (Plaintiff Fair Isaac Corporation's Second Supplemental Answers to Defendant's Interrogatory Nos. 6-9, dated April 23, 2018 at 6-7; Waid Declaration at Exhibit A (FICO0000830).)

(g)  Calculated as the sum of the Adjusted Deployment License fee and Development Seat License fee.

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 7.0: Foreign Named Application Annual Fees**



| Application (a) | Region (a) | Perpetual License (a) | Annual License (b) | Support and Maintenance (c) | License, Support, and Maintenance (d) |
|---|---|---|---|---|---|
| ADAPT | Australia | | | | |
| ADAPT | U.K. | | | | |
| Evolution | Australia | | | | |
| Evolution | Canada | | | | |
| EZER | U.K. and Europe | | | | |
| Exari | U.K. | | | | |
| Broker Site | Canada | | | | |
| **Total** | | $ 6,015,000 | $ 2,706,750 | $ 595,485 | $ 3,302,235 |

*Note/Source(s):*

(a) Perpetual License Includes a Deployment License Fee and Development Seat License Fee. See **Schedule 6.1.**

(b) I understand the Annual License Fee is calculated as the Perpetual License Fee multiplied by a ▮▮▮▮▮▮▮▮ (Waid 1/16/2019 Deposition at 128-129; Plaintiff Fair Isaac Corporation's Second Supplemental Answers to Defendant's Interrogatory Nos. 6-9, dated April 23, 2018 at 6-7; Waid 4/2/2019 Deposition at 26-27.)

(c) I understand the Support and Maintenance Fee is calculated as ▮▮ (i.e., current rate) of the Annual License Fee. (Plaintiff Fair Isaac Corporation's Second Supplemental Answers to Defendants' Interrogatory Nos. 6-9, dated April 23, 2018 at 6-7; Waid 4/2/2019 Deposition at 73-74.)

(d) Calculated as the sum of the Annual License and Support and Maintenance.

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 7.1: Foreign Application Perpetual License Fee Calculation**



| Application (a) | Region (a) | Size (b) | Deployment License (c) | Multi-Platform Uplift (d) | Adjusted Deployment License (e) | Development Seat Pack (b) | Development Seat License (f) | Perpetual License (g) |
|---|---|---|---|---|---|---|---|---|
| ADAPT | Australia | | | | | | | |
| ADAPT | U.K. | | | | | | | |
| Evolution | Australia | | | | | | | |
| Evolution | Canada | | | | | | | |
| EZER | U.K. and Europe | | | | | | | |
| Exari | U.K. | | | | | | | |
| Broker Site | Canada | | | | | | | |
| **Total** | | | **$ 5,250,000** | | **$ 5,550,000** | | **$ 465,000** | **$ 6,015,000** |

*Note/Source(s):*

(a) Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No. 18, dated March 21, 2019 at 3; Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No. 19, dated March 2, 2019 at 3; Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No. 20, dated March 21, 2019 at 3-5.

(b) Per discussions with William Waid, I understand the Size of the application is determined based on the nine-factor Application Sizing Matrix. Additionally, I understand a Development Seat, which is priced in Packs, is a required annual cost to help maintain the software. (Plaintiff Fair Isaac Corporation's Second Supplemental Answers to Defendant's Interrogatory Nos. 6-9, dated April 23, 2018 at 6-7; Waid 4/2/2019 Deposition at 17-21.)

(c) Per discussions with William Waid, I understand the Deployment License fee is determined based on applying the application Size to the Category Matrix Pricing. (Plaintiff Fair Isaac Corporation's Second Supplemental Answers to Defendant's Interrogatory Nos. 6-9, dated April 23, 2018 at 6-7; Waid Declaration at Exhibit A (FICO0000830); Waid 4/2/2019 Deposition at 17-21.)

(d) Per discussions with William Waid, I understand Evolution (Canada) application uses more than one platform and accordingly, a Multi-Platform Uplift fee of ▮ is applied to the Deployment License fee. Additionally, I understand the Packs of Development Seats for Evolution (Canada) (i.e., 3-Pack) is required separately for each platform (i.e., two 3-Packs). All other foreign applications only use one platform. (Waid 4/2/2019 Deposition at 96-97; FED001311_0001-028 at 020; FED001020_0001.)

(e) Calculated as the sum of the Deployment License fee and the Multi-Platform Uplift fee.

(f) Per discussions with William Waid, I understand the Development Seat License fee is determined based on the Category Pricing Matrix. (Plaintiff Fair Isaac Corporation's Second Supplemental Answers to Defendant's Interrogatory Nos. 6-9, dated April 23, 2018 at 6-7; Waid Declaration at Exhibit A (FICO0000830).)

(g) Calculated as the sum of the Adjusted Deployment License fee and Development Seat License fee.

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 8.0: Summary of Defendants' Domestic Gross Written Premiums**

| Domestic Applications | *March 31, 2016 to March 2019* | | | |
| --- | --- | --- | --- | --- |
| | All Writing Companies (a) | Chubb INA Holdings, Inc. Subsidiaries (b) | Defendants, Subsidiaries and Pooling Entities (c) | Non-Subsidiaries and Non-Pooling Entities (d) |
| Commercial Underwriting Workstation (CUW) | $ 21,383,446,632 | $ 21,151,270,694 | $ 21,109,818,196 | $ 41,452,498 |
| CSI eXPRESS (e) | 4,325,229,977 | 4,325,229,977 | 4,009,182,762 | 316,047,214 |
| Premium Booking | 1,324,107,605 | 1,324,107,605 | 1,324,107,605 | - |
| Texas Accident Prevention System (TAPS) | 692,382,681 | 692,382,681 | 692,382,681 | - |
| Cornerstone | 576,117,660 | 576,117,660 | 548,732,926 | 27,384,734 |
| Individual Rate Modification Application (IRMA) | 271,875,166 | 271,869,120 | 248,022,035 | 23,847,085 |
| Decision Point | 13,162,664 | 13,162,664 | 13,113,632 | 49,032 |
| **TOTAL** | $ 28,586,322,385 (f) | $ 28,354,140,400 (f) | $ 27,945,359,837 | $ 408,780,563 |

*Note/Source(s):*

(a)  See **Schedule 10.1**.

(b)  See **Schedule 10.2**.

(c)  See **Schedule 10.3**.

(d)  Calculated as the difference between (b) and (c).

(e)  I understand the gross written premiums reported for CSI eXPRESS includes premiums related to the Automated Renewals Process and Profitability Indicator applications. Further, CSI eXPRESS, Automated Renewals Process and Profitability Indicator are all used in connnection with the same gross written premium policies. (Harkin Deposition at 72-74; Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No. 16 and Sixth Supplemental Answer to Plaintiff's Interrogatory No. 17, dated March 21, 2019 at 3-5, 11-13.)

(f)  I understand the difference between All Writing Companies and Chubb INA Holdings, Inc. Subsidiaries primarily relate to gross written premiums reported by Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company for the CUW application. Both Westchester entities are not subsidiaries of Chubb INA Holdings, Inc., however I understand Westchester Fire Insurance Company participated in a pool together with the Defendants in 2018. See **Schedules 13.1** and **16.0**.

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 9.0: Summary of Defendants' Foreign Gross Written Premiums**

| Foreign Applications | Region | All Writing Companies (a) | Chubb Corporation and Chubb INA Holdings, Inc. Subsidiaries (b) | Federal, Subsidiaries and Pooling Entities (c) | Non-Subsidiaries and Non-Pooling Entities (d) |
|---|---|---|---|---|---|
| | | *April 21, 2013 to March 2019* | | | |
| ADAPT | Australia | $ 104,643,020 | $ 104,643,020 | $ 76,090,876 | $ 28,552,143 |
| ADAPT | U.K. | 265,034,167 | 265,034,167 | 213,529,232 | 51,504,935 |
| Evolution | Australia | 87,984,461 | 87,984,461 | - | 87,984,461 |
| Evolution (e) | Canada | 1,278,000,000 | 1,278,000,000 | 534,000,000 | 744,000,000 |
| EZER | Europe | 786,223,356 | 786,223,356 | 672,408,758 | 113,814,598 |
| EZER | U.K. | 15,477 | 15,477 | 15,477 | |
| Broker Site (e) | Canada | *n/a* | *n/a* | *n/a* | *n/a* |
| **TOTAL** | | **$ 2,521,900,482** | **$ 2,521,900,482** | **$ 1,496,044,344** | **$ 1,025,856,138** |

*Note/Source(s):*

(a) See **Schedule 11.1**.

(b) See **Schedule 11.2**.

(c) See **Schedule 11.3**.

(d) Calculated as the difference between (b) and (c).

(e) I understand the Evolution (Canada) and Broker Site (Canada) applications share the same underlying database and therefore report the same gross written premiums. (Harkin Deposition at 206-209.)

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 10.1: Summary of Domestic Gross Written Premiums by Application - All Writing Companies** (a)

| Application | Mar 31 - Dec 31 2016 (b) | 2017 | 2018 | Jan - Mar 2019 (c) | Total |
|---|---|---|---|---|---|
| Commercial Underwriting Workstation (CUW) | $ 5,760,264,882 | $ 8,644,996,927 | $ 6,286,537,639 | $ 691,647,184 | $ 21,383,446,632 |
| CSI eXPRESS (d) | 1,153,503,582 | 1,462,910,856 | 1,406,041,568 | 302,773,970 | 4,325,229,977 |
| Premium Booking | 380,416,844 | 442,839,932 | 500,850,829 | - | 1,324,107,605 |
| Texas Accident Prevention System (TAPS) | 215,420,480 | 252,219,200 | 216,490,943 | 8,252,058 | 692,382,681 |
| Cornerstone | 179,418,382 | 259,641,112 | 137,058,166 | - | 576,117,660 |
| Individual Rate Modification Application (IRMA) | 79,544,410 | 99,688,772 | 92,641,984 | - | 271,875,166 |
| Decision Point | 2,680,739 | 4,319,856 | 4,814,338 | 1,347,731 | 13,162,664 |
| **TOTAL** | **$ 7,771,249,319** | **$ 11,166,616,655** | **$ 8,644,435,467** | **$ 1,004,020,943** | **$ 28,586,322,385** |

*Note/Source(s):*

(a) This schedule includes gross written premiums from all writing companies reported per Defendants' interrogatory responses. See **Schedule 12.0**.

(b) I understand that copyright remedies start at the termination date of the SLM Agreement (i.e., March 31, 2016) for the domestic applications. I have adjusted the gross written premiums accordingly. (FED004437_0001.)

(c) The Defendant's most recent responses to Interrogatory Nos. 16-20 were dated March 2, 2019 and March 21, 2019.

(d) I understand the gross written premiums reported for CSI eXPRESS includes premiums related to the Automated Renewals Process and Profitability Indicator applications. Further, CSI eXPRESS, Automated Renewals Process and Profitability Indicator are all used in connection with the same gross written premium policies. (Harkin Deposition at 72-74; Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No. 16 and Sixth Supplemental Answer to Plaintiff's Interrogatory No. 17, dated March 21, 2019 at 3-5, 11-13.)

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 10.2: Summary of Domestic Gross Written Premiums by Application - Chubb INA Holdings, Inc. Subsidiaries** (a)

| Application | Mar 31 - Dec 31 2016 (b) | 2017 | 2018 | Jan - Mar 2019 (c) | Total |
|---|---|---|---|---|---|
| Commercial Underwriting Workstation (CUW) | $ 5,726,926,492 | $ 8,532,519,435 | $ 6,200,890,435 | $ 690,934,332 | $ 21,151,270,694 |
| CSI eXPRESS (d) | 1,153,503,582 | 1,462,910,856 | 1,406,041,568 | 302,773,970 | 4,325,229,977 |
| Premium Booking | 380,416,844 | 442,839,932 | 500,850,829 | - | 1,324,107,605 |
| Texas Accident Prevention System (TAPS) | 215,420,480 | 252,219,200 | 216,490,943 | 8,252,058 | 692,382,681 |
| Cornerstone | 179,418,382 | 259,641,112 | 137,058,166 | - | 576,117,660 |
| Individual Rate Modification Application (IRMA) | 79,538,364 | 99,688,772 | 92,641,984 | - | 271,869,120 |
| Decision Point | 2,680,739 | 4,319,856 | 4,814,338 | 1,347,731 | 13,162,664 |
| **TOTAL** | **$ 7,737,904,883** | **$ 11,054,139,163** | **$ 8,558,788,263** | **$ 1,003,308,091** | **$ 28,354,140,400** |

*Note/Source(s):*

(a) This schedule includes gross written premiums from all writing companies reported per Defendants' interrogatory responses that are subsidiaries of Chubb INA Holdings, Inc. See **Schedules 12.0** and **13.1**.

(b) I understand that copyright remedies start at the termination date of the SLM Agreement (i.e., March 31, 2016) for the domestic applications. I have adjusted the gross written premiums accordingly. (FED004437_0001.)

(c) The Defendant's most recent responses to Interrogatory Nos. 16-20 were dated March 2, 2019 and March 21, 2019.

(d) I understand the gross written premiums reported for CSI eXPRESS includes premiums related to the Automated Renewals Process and Profitability Indicator applications. Further, CSI eXPRESS, Automated Renewals Process and Profitability Indicator are all used in connnection with the same gross written premium policies. (Harkin Deposition at 72-74; Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No. 16 and Sixth Supplemental Answer to Plaintiff's Interrogatory No. 17, dated March 21, 2019 at 3-5, 11-13.)

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 10.3: Summary of Domestic Gross Written Premiums by Application - Defendants, Subsidiaries and Pooling Entities** (a)

| Application (b) | Mar 31 - Dec 31 2016 (c) | | 2017 | 2018 | Jan - Mar 2019 (d) | Total | |
|---|---|---|---|---|---|---|---|
| Commercial Underwriting Workstation (CUW) | | | | | | | |
| Federal, Subsidiaries and Pooling Entities | $ 5,488,262,112 | (f) $ | 7,649,011,220 | *n/a* | *n/a* | $ | 13,137,273,332 |
| ACE American, Subsidiaries and Pooling Entities | 238,462,381 | | 883,090,822 | *n/a* | *n/a* | | 1,121,553,203 |
| Defendants, Subsidiaries and Pooling Entities | *n/a* | | *n/a* | 6,166,576,426 | 684,415,235 | | 6,850,991,661 |
| Total | $ 5,726,724,493 | $ | 8,532,102,042 | $ 6,166,576,426 | $ 684,415,235 | $ | 21,109,818,196 |
| | | | | | | | |
| CSI eXPRESS (e) | $ 1,134,349,574 | (f) $ | 1,358,180,203 | $ 1,241,993,390 | $ 274,659,595 | $ | 4,009,182,762 |
| Premium Booking | 380,416,844 | | 442,839,932 | 500,850,829 | - | | 1,324,107,605 |
| Texas Accident Prevention System (TAPS) | 215,420,480 | | 252,219,200 | 216,490,943 | 8,252,058 | | 692,382,681 |
| Cornerstone | 178,018,904 | (f) | 248,313,042 | 122,400,980 | - | | 548,732,926 |
| Individual Rate Modification Application (IRMA) | 77,615,294 | (f) | 89,437,785 | 80,968,955 | - | | 248,022,035 |
| Decision Point | 2,680,739 | | 4,319,856 | 4,779,439 | 1,333,598 | | 13,113,632 |
| **TOTAL** | $ 7,715,226,328 | $ | 10,927,412,060 | $ 8,334,060,963 | $ 968,660,486 | $ | 27,945,359,837 |

*Note/Source(s):*

(a) This schedule includes gross written premiums from all writing companies reported per Defendants' interrogatory responses that are the Defendants, subsidiaries of the Defendants and/or participate in a pooling arrangement with the Defendants. I understand the Defendants participated in the same intercompany pool in 2018. See **Schedules 12.0** and **13.2**.

(b) The CUW application is the only application for which Defendants reported gross written premiums from ACE American subsidiaries. All other domestic applications only report gross written premiums from Federal and subsidiaries. (Harkin Deposition at 19-20.)

(c) I understand that copyright remedies start at the termination date of the SLM Agreement (i.e., March 31, 2016) for the domestic applications. I have adjusted the gross written premiums accordingly. (FED004437_0001.)

(d) The Defendant's most recent responses to Interrogatory Nos. 16-20 were dated March 2, 2019 and March 21, 2019.

(e) I understand the gross written premiums reported for CSI eXPRESS includes premiums related to the Automated Renewals Process and Profitability Indicator applications. Further, CSI eXPRESS, Automated Renewals Process and Profitability Indicator are all used in connnection with the same gross written premium policies. (Harkin Deposition at 72-74; Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No. 16 and Sixth Supplemental Answer to Plaintiff's Interrogatory No. 17, dated March 21, 2019 at 3-5, 11-13.)

(f) I understand Chubb Insurance Company of Canada was no longer a subsidiary of Federal by September 30, 2016 and accordingly, 3/4 of the gross written premiums reported for year 2016 were included in this analysis. (Taylor Deposition at 85.)

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 11.1: Summary of Foreign Gross Written Premiums by Application - All Writing Companies** (a)

| Application | Region | Apr 21 - Dec 31 2013 (b) | 2014 | 2015 | 2016 | 2017 | 2018 | Jan - Mar 2019 (c) | Total |
|---|---|---|---|---|---|---|---|---|---|
| ADAPT | Australia | $ 18,563,675 | $ 26,580,572 | $ 25,345,604 | $ 22,404,103 | $ 7,512,511 | $ 4,049,851 | $ 186,704 | $ 104,643,020 |
| ADAPT | U.K. | 44,264,795 | 60,130,370 | 61,438,935 | 47,695,132 | 40,226,219 | 11,278,716 | - | 265,034,167 |
| Evolution | Australia | - | - | - | - | 992,514 | 76,787,952 | 10,203,995 | 87,984,461 |
| Evolution (d) | Canada | - | - | 303,000,000 | 308,000,000 | 330,000,000 | 337,000,000 | - | 1,278,000,000 |
| EZER | Europe | 140,017,446 | 196,353,338 | 179,188,308 | 156,849,666 | 109,376,325 | 4,438,273 | - | 786,223,356 |
| EZER | U.K. | - | 7,833 | 3,515 | 4,130 | - | - | - | 15,477 |
| Broker Site (d) | Canada | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| **TOTAL** | | **$ 202,845,915** | **$ 283,072,112** | **$ 568,976,362** | **$ 534,953,031** | **$ 488,107,569** | **$ 433,554,792** | **$ 10,390,699** | **$ 2,521,900,482** |

*Note/Source(s):*

(a) This schedule includes gross written premiums from all writing companies reported per Defendants' interrogatory responses. See **Schedule 12.0**.

(b) I understand that copyright remedies are limited to three years before the filing of a complaint (i.e., April 21, 2016). I have adjusted the gross written premiums accordingly.

(c) The Defendant's most recent responses to Interrogatory Nos. 16-20 were dated March 2, 2019 and March 21, 2019.

(d) Defendants reported that the Evolution (Canada) and Broker Site (Canada) applications share the same underlying database and therefore report the same gross written premiums. (Harkin Deposition at 206-209.)

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 11.2: Summary of Foreign Gross Written Premiums by Application - Chubb Corporation and Chubb INA Holdings, Inc. Subsidiaries** (a)

| Application | Region | Apr 21 - Dec 31 2013 (b) | 2014 | 2015 | 2016 | 2017 | 2018 | Jan - Mar 2019 (c) | Total |
|---|---|---|---|---|---|---|---|---|---|
| ADAPT | Australia | $ 18,563,675 | $ 26,580,572 | $ 25,345,604 | $ 22,404,103 | $ 7,512,511 | $ 4,049,851 | $ 186,704 | $ 104,643,020 |
| ADAPT | U.K. | 44,264,795 | 60,130,370 | 61,438,935 | 47,695,132 | 40,226,219 | 11,278,716 | - | 265,034,167 |
| Evolution | Australia | - | - | - | - | 992,514 | 76,787,952 | 10,203,995 | 87,984,461 |
| Evolution (d) | Canada | - | - | 303,000,000 | 308,000,000 | 330,000,000 | 337,000,000 | - | 1,278,000,000 |
| EZER | Europe | 140,017,446 | 196,353,338 | 179,188,308 | 156,849,666 | 109,376,325 | 4,438,273 | - | 786,223,356 |
| EZER | U.K. | - | 7,833 | 3,515 | 4,130 | - | - | - | 15,477 |
| Broker Site (d) | Canada | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| **TOTAL** | | $ 202,845,915 | $ 283,072,112 | $ 568,976,362 | $ 534,953,031 | $ 488,107,569 | $ 433,554,792 | $ 10,390,699 | $ 2,521,900,482 |

*Note/Source(s):*

(a)  This schedule includes gross written premiums from all writing companies reported per Defendants' interrogatory responses that are subsidiaries of Chubb Corporation and Chubb INA Holdings, Inc. See **Schedules 12.0** and **13.1**.

(b)  I understand that copyright remedies are limited to three years before the filing of a complaint (i.e., April 21, 2016). I have adjusted the gross written premiums accordingly.

(c)  The Defendant's most recent responses to Interrogatory Nos. 16-20 were dated March 2, 2019 and March 21, 2019.

(d)  Defendants reported that the Evolution (Canada) and Broker Site (Canada) applications share the same underlying database and therefore report the same gross written premiums. (Harkin Deposition at 206-209.)

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 11.3: Summary of Foreign Gross Written Premiums by Application - Federal and Subsidiaries and Pooling Entities** (a)

| Application | Region | Apr 21 - Dec 31 2013 (b) | 2014 | 2015 | 2016 | 2017 | 2018 | Jan - Mar 2019 (c) | Total |
|---|---|---|---|---|---|---|---|---|---|
| ADAPT | Australia | $  18,563,675 | $  26,580,572 | $  25,345,604 | $  5,601,026 (e) | $  - | $  - | $  - | $  76,090,876 |
| ADAPT | U.K. | 44,264,795 | 60,130,370 | 61,438,935 | 47,695,132 | - | - | - | 213,529,232 |
| Evolution | Australia | - | - | - | - | - | - | - | - |
| Evolution (d) | Canada | - | - | 303,000,000 | 231,000,000 (f) | - | - | - | 534,000,000 |
| EZER | Europe | 140,017,446 | 196,353,338 | 179,188,308 | 156,849,666 | - | - | - | 672,408,758 |
| EZER | U.K. | - | 7,833 | 3,515 | 4,130 | - | - | - | 15,477 |
| Broker Site (d) | Canada | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| **TOTAL** | | $  202,845,915 | $  283,072,112 | $  568,976,362 | $  441,149,954 | $  - | $  - | $  - | $  1,496,044,344 |

*Note/Source(s):*

(a)   This schedule includes gross written premiums from all writing companies reported per Defendants' interrogatory responses that is Federal, subsidiaries of Federal and/or participate
    in a pooling arrangement with Federal. Further, I understand ACE American and subsidiaries do not report gross written premiums for foreign applications. (Harkin Deposition at 19-20;
    **Schedules 12.0** and **13.2.**)

(b)   I understand that copyright remedies are limited to three years before the filing of a complaint (i.e., April 21, 2016). I have adjusted the gross written premiums accordingly.

(c)   The Defendant's most recent responses to Interrogatory Nos. 16-20 were dated March 2, 2019 and March 21, 2019.

(d)   Defendants reported that the Evolution (Canada) and Broker Site (Canada) applications share the same underlying database and therefore report the same gross written premiums. (Harkin
    Deposition at 206-209.)

(e)   I understand Chubb Insurance Company of Australia Ltd. was no longer a subsidiary of Federal by April 1, 2016 and accordingly, 1/4 of the gross written premiums reported for year 2016
    were included in this analysis. (Taylor Deposition at 85-86.)

(f)   I understand Chubb Insurance Company of Canada was no longer a subsidiary of Federal by September 30, 2016 and accordingly, 3/4 of the gross written premiums reported for year 2016
    were included in this analysis. (Taylor Deposition at 85.)

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 12.0: Consolidated Gross Written Premium Detail** (a)

| Application | Foreign/ Domestic | Year | Gross Written Premium | StoneTurn Writing Company (b) | |
|---|---|---|---|---|---|
| ADAPT (Australia) | Foreign | 2013 | $ 26,589,734 | Chubb Insurance Company of Australia Ltd. | |
| ADAPT (Australia) | Foreign | 2014 | $ 26,580,572 | Chubb Insurance Company of Australia Ltd. | |
| ADAPT (Australia) | Foreign | 2015 | $ 25,345,604 | Chubb Insurance Company of Australia Ltd. | |
| ADAPT (Australia) | Foreign | 2016 | $ 22,404,103 | Chubb Insurance Company of Australia Ltd. | |
| ADAPT (Australia) | Foreign | 2017 | $ 7,512,511 | Chubb Insurance Company of Australia Ltd. | |
| ADAPT (Australia) | Foreign | 2018 | $ 4,049,851 | Chubb Insurance Company of Australia Ltd. | |
| ADAPT (Australia) | Foreign | 2019 | $ 186,704 | Chubb Insurance Company of Australia Ltd. | |
| ADAPT (UK) | Foreign | 2013 | $ 63,402,809 | Chubb Insurance Company of Europe SE | (c) |
| ADAPT (UK) | Foreign | 2014 | $ 60,130,370 | Chubb Insurance Company of Europe SE | (c) |
| ADAPT (UK) | Foreign | 2015 | $ 61,438,935 | Chubb Insurance Company of Europe SE | (c) |
| ADAPT (UK) | Foreign | 2016 | $ 47,695,132 | Chubb Insurance Company of Europe SE | (c) |
| ADAPT (UK) | Foreign | 2017 | $ 40,226,219 | Chubb European Group, SE | (c) |
| ADAPT (UK) | Foreign | 2018 | $ 11,278,716 | Chubb European Group, SE | (c) |
| Broker Site (Canada) | Foreign | 2015 | $ 303,000,000 | Chubb Insurance Company of Canada | |
| Broker Site (Canada) | Foreign | 2016 | $ 308,000,000 | Chubb Insurance Company of Canada | |
| Broker Site (Canada) | Foreign | 2017 | $ 330,000,000 | Chubb Insurance Company of Canada | |
| Broker Site (Canada) | Foreign | 2018 | $ 337,000,000 | Chubb Insurance Company of Canada | |
| Cornerstone | Domestic | 2016 | $ 7,408,108 | Chubb Insurance Company of Canada | |
| Cornerstone | Domestic | 2016 | $ - | Federal Insurance Company | |
| Cornerstone | Domestic | 2016 | $ 220,608,093 | Federal Insurance Company | |
| Cornerstone | Domestic | 2016 | $ - | Great Northern Insurance Company | |
| Cornerstone | Domestic | 2016 | $ 5,000,954 | Pacific Indemnity Company | |
| Cornerstone | Domestic | 2016 | $ 4,419,671 | Vigilant Insurance Company | |
| Cornerstone | Domestic | 2017 | $ 11,328,070 | Chubb Insurance Company of Canada | |
| Cornerstone | Domestic | 2017 | $ 235,297,734 | Federal Insurance Company | |
| Cornerstone | Domestic | 2017 | $ 670 | Great Northern Insurance Company | |
| Cornerstone | Domestic | 2017 | $ 9,784,435 | Pacific Indemnity Company | |
| Cornerstone | Domestic | 2017 | $ 3,230,203 | Vigilant Insurance Company | |
| Cornerstone | Domestic | 2018 | $ 14,657,186 | Chubb Insurance Company of Canada | |
| Cornerstone | Domestic | 2018 | $ 116,145,727 | Federal Insurance Company | |
| Cornerstone | Domestic | 2018 | $ 1,205 | Great Northern Insurance Company | |
| Cornerstone | Domestic | 2018 | $ 4,497,351 | Pacific Indemnity Company | |
| Cornerstone | Domestic | 2018 | $ 1,756,697 | Vigilant Insurance Company | |
| CSI eXPRESS | Domestic | 2016 | $ 98,911,117 | Chubb Insurance Company of Canada | |
| CSI eXPRESS | Domestic | 2016 | $ 2,480,212 | Chubb Insurance Company of Canada | |
| CSI eXPRESS | Domestic | 2016 | $ 21,543,943 | Chubb Insurance Company of New Jersey | |

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 12.0: Consolidated Gross Written Premium Detail** (a)

| Application | Foreign/ Domestic | Year | Gross Written Premium | StoneTurn Writing Company (b) |
|---|---|---|---|---|
| CSI eXPRESS | Domestic | 2016 | $ 2,212,095 | Chubb Insurance Company of New Jersey |
| CSI eXPRESS | Domestic | 2016 | $ 74,655,072 | Executive Risk Indemnity Inc. |
| CSI eXPRESS | Domestic | 2016 | $ 492,570 | Executive Risk Indemnity Inc. |
| CSI eXPRESS | Domestic | 2016 | $ 31,403,417 | Executive Risk Specialty Insurance Company |
| CSI eXPRESS | Domestic | 2016 | $ 1,026,440 | Executive Risk Specialty Insurance Company |
| CSI eXPRESS | Domestic | 2016 | $ 1,210,424,579 | Federal Insurance Company |
| CSI eXPRESS | Domestic | 2016 | $ 75,579,124 | Federal Insurance Company |
| CSI eXPRESS | Domestic | 2016 | $ 150,747 | Pacific Indemnity Company |
| CSI eXPRESS | Domestic | 2016 | $ 206,637 | Pacific Indemnity Company |
| CSI eXPRESS | Domestic | 2016 | $ 7,425,581 | Vigilant Insurance Company |
| CSI eXPRESS | Domestic | 2017 | $ 99,877,332 | Chubb Insurance Company of Canada |
| CSI eXPRESS | Domestic | 2017 | $ 4,853,321 | Chubb Insurance Company of Canada |
| CSI eXPRESS | Domestic | 2017 | $ 20,940,256 | Chubb Insurance Company of New Jersey |
| CSI eXPRESS | Domestic | 2017 | $ 2,916,920 | Chubb Insurance Company of New Jersey |
| CSI eXPRESS | Domestic | 2017 | $ 62,459,327 | Executive Risk Indemnity Inc. |
| CSI eXPRESS | Domestic | 2017 | $ 441,481 | Executive Risk Indemnity Inc. |
| CSI eXPRESS | Domestic | 2017 | $ 28,856,329 | Executive Risk Specialty Insurance Company |
| CSI eXPRESS | Domestic | 2017 | $ 1,256,713 | Executive Risk Specialty Insurance Company |
| CSI eXPRESS | Domestic | 2017 | $ 1,132,709,568 | Federal Insurance Company |
| CSI eXPRESS | Domestic | 2017 | $ 101,305,051 | Federal Insurance Company |
| CSI eXPRESS | Domestic | 2017 | $ 331,853 | Pacific Indemnity Company |
| CSI eXPRESS | Domestic | 2017 | $ 262,033 | Pacific Indemnity Company |
| CSI eXPRESS | Domestic | 2017 | $ 6,697,327 | Vigilant Insurance Company |
| CSI eXPRESS | Domestic | 2017 | $ 3,346 | Vigilant Insurance Company |
| CSI eXPRESS | Domestic | 2018 | $ 3,309,818 | Chubb Custom Insurance Company |
| CSI eXPRESS | Domestic | 2018 | $ 1,210,985 | Chubb Custom Insurance Company |
| CSI eXPRESS | Domestic | 2018 | $ 92,730,755 | Chubb Insurance Company of Canada |
| CSI eXPRESS | Domestic | 2018 | $ 4,879,760 | Chubb Insurance Company of Canada |
| CSI eXPRESS | Domestic | 2018 | $ 22,833,376 | Chubb Insurance Company of New Jersey |
| CSI eXPRESS | Domestic | 2018 | $ 3,180,349 | Chubb Insurance Company of New Jersey |
| CSI eXPRESS | Domestic | 2018 | $ 49,158,127 | Executive Risk Indemnity Inc. |
| CSI eXPRESS | Domestic | 2018 | $ 10,429 | Executive Risk Indemnity Inc. |
| CSI eXPRESS | Domestic | 2018 | $ 11,370,649 | Executive Risk Specialty Insurance Company |
| CSI eXPRESS | Domestic | 2018 | $ 1,377,654 | Executive Risk Specialty Insurance Company |
| CSI eXPRESS | Domestic | 2018 | $ 1,084,053,467 | Federal Insurance Company |
| CSI eXPRESS | Domestic | 2018 | $ 126,368,942 | Federal Insurance Company |

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 12.0: Consolidated Gross Written Premium Detail** (a)

| Application | Foreign/ Domestic | Year | Gross Written Premium | StoneTurn Writing Company (b) |
|---|---|---|---|---|
| CSI eXPRESS | Domestic | 2018 | $ 384,509 | Pacific Indemnity Company |
| CSI eXPRESS | Domestic | 2018 | $ 101,678 | Pacific Indemnity Company |
| CSI eXPRESS | Domestic | 2018 | $ 5,071,070 | Vigilant Insurance Company |
| CSI eXPRESS | Domestic | 2019 | $ 2,618,203 | Chubb Custom Insurance Company |
| CSI eXPRESS | Domestic | 2019 | $ 209,354 | Chubb Custom Insurance Company |
| CSI eXPRESS | Domestic | 2019 | $ 13,006,700 | Chubb Insurance Company of Canada |
| CSI eXPRESS | Domestic | 2019 | $ 686,641 | Chubb Insurance Company of Canada |
| CSI eXPRESS | Domestic | 2019 | $ 6,335,054 | Chubb Insurance Company of New Jersey |
| CSI eXPRESS | Domestic | 2019 | $ 588,605 | Chubb Insurance Company of New Jersey |
| CSI eXPRESS | Domestic | 2019 | $ 11,593,477 | Executive Risk Indemnity Inc. |
| CSI eXPRESS | Domestic | 2019 | $ 241,187,027 | Federal Insurance Company |
| CSI eXPRESS | Domestic | 2019 | $ 26,215,624 | Federal Insurance Company |
| CSI eXPRESS | Domestic | 2019 | $ 105,626 | Pacific Indemnity Company |
| CSI eXPRESS | Domestic | 2019 | $ 5,075 | Pacific Indemnity Company |
| CSI eXPRESS | Domestic | 2019 | $ 220,288 | Vigilant Insurance Company |
| CSI eXPRESS | Domestic | 2019 | $ 2,296 | Vigilant Insurance Company |
| CUW | Domestic | 2016 | $ 108,983,074 | ACE American Insurance Company |
| CUW | Domestic | 2016 | $ 1,092,991 | ACE Fire Underwriters Insurance Company |
| CUW | Domestic | 2016 | $ 106,304,730 | ACE Property and Casualty Insurance Company |
| CUW | Domestic | 2016 | $ 217,444,131 | Chubb Custom Insurance Company |
| CUW | Domestic | 2016 | $ 41,810 | Chubb de Mexico Compania de Seguros, S.A. de C.V. |
| CUW | Domestic | 2016 | $ 515,778,122 | Chubb Indemnity Insurance Company |
| CUW | Domestic | 2016 | $ 223,981 | Chubb Insurance Australia Limited |
| CUW | Domestic | 2016 | $ 10,686 | Chubb Insurance Company Limited |
| CUW | Domestic | 2016 | $ 173,352 | Chubb Insurance Company of Canada |
| CUW | Domestic | 2016 | $ 260,360 | Chubb European Group, SE |
| CUW | Domestic | 2016 | $ 69,278,561 | Chubb Insurance Company of New Jersey |
| CUW | Domestic | 2016 | $ 50,975,438 | Chubb National Insurance Company |
| CUW | Domestic | 2016 | $ 4,281 | Chubb Seguros Brasil S.A. |
| CUW | Domestic | 2016 | $ 2,167,006 | Executive Risk Indemnity Inc. |
| CUW | Domestic | 2016 | $ 4,528,627 | Executive Risk Specialty Insurance Company |
| CUW | Domestic | 2016 | $ 4,800,540,559 | Federal Insurance Company |
| CUW | Domestic | 2016 | $ 868,809,231 | Great Northern Insurance Company |
| CUW | Domestic | 2016 | $ 81,709,115 | Illinois Union Insurance Company |
| CUW | Domestic | 2016 | $ 17,014,247 | Indemnity Insurance Company of North America |
| CUW | Domestic | 2016 | $ 469,700 | Pacific Employers Insurance Company |

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 12.0: Consolidated Gross Written Premium Detail** (a)

| Application | Foreign/ Domestic | Year | Gross Written Premium | StoneTurn Writing Company (b) |
|---|---|---|---|---|
| CUW | Domestic | 2016 | $ 426,214,814 | Pacific Indemnity Company |
| CUW | Domestic | 2016 | $ 307,080,046 | Vigilant Insurance Company |
| CUW | Domestic | 2016 | $ 31,266,954 | Westchester Fire Insurance Company |
| CUW | Domestic | 2016 | $ 12,587,416 | Westchester Surplus Lines Insurance Company |
| CUW | Domestic | 2017 | $ 354,885,927 | ACE American Insurance Company |
| CUW | Domestic | 2017 | $ 1,722,590 | ACE Fire Underwriters Insurance Company |
| CUW | Domestic | 2017 | $ 248,919,844 | ACE Property and Casualty Insurance Company |
| CUW | Domestic | 2017 | $ 125,046,576 | Chubb Custom Insurance Company |
| CUW | Domestic | 2017 | $ 12,403 | Chubb de Mexico Compania de Seguros, S.A. de C.V. |
| CUW | Domestic | 2017 | $ 368,955 | Chubb European Group, SE |
| CUW | Domestic | 2017 | $ 581,425,852 | Chubb Indemnity Insurance Company |
| CUW | Domestic | 2017 | $ 5,554 | Chubb Insurance Australia Limited |
| CUW | Domestic | 2017 | $ 7,913 | Chubb Insurance Company Limited |
| CUW | Domestic | 2017 | $ 14,184 | Chubb Insurance Company of Canada |
| CUW | Domestic | 2017 | $ 65,809,698 | Chubb Insurance Company of New Jersey |
| CUW | Domestic | 2017 | $ 68,554,767 | Chubb National Insurance Company |
| CUW | Domestic | 2017 | $ 16,297 | Chubb Seguros Brasil S.A. |
| CUW | Domestic | 2017 | $ 2,732,882 | Executive Risk Indemnity Inc. |
| CUW | Domestic | 2017 | $ 1,102,030 | Executive Risk Specialty Insurance Company |
| CUW | Domestic | 2017 | $ 5,098,798,285 | Federal Insurance Company |
| CUW | Domestic | 2017 | $ 912,720,319 | Great Northern Insurance Company |
| CUW | Domestic | 2017 | $ 255,341,641 | Illinois Union Insurance Company |
| CUW | Domestic | 2017 | $ 21,351,439 | Indemnity Insurance Company of North America |
| CUW | Domestic | 2017 | $ 869,381 | Pacific Employers Insurance Company |
| CUW | Domestic | 2017 | $ 468,474,693 | Pacific Indemnity Company |
| CUW | Domestic | 2017 | $ 324,338,205 | Vigilant Insurance Company |
| CUW | Domestic | 2017 | $ 67,191,783 | Westchester Fire Insurance Company |
| CUW | Domestic | 2017 | $ 45,285,709 | Westchester Surplus Lines Insurance Company |
| CUW | Domestic | 2018 | $ 274,751,661 | ACE American Insurance Company |
| CUW | Domestic | 2018 | $ 1,498,240 | ACE Fire Underwriters Insurance Company |
| CUW | Domestic | 2018 | $ 191,070,156 | ACE Property and Casualty Insurance Company |
| CUW | Domestic | 2018 | $ 68,563,377 | Chubb Custom Insurance Company |
| CUW | Domestic | 2018 | $ 16,435 | Chubb de Mexico Compania de Seguros, S.A. de C.V. |
| CUW | Domestic | 2018 | $ 85,623 | Chubb European Group, SE |
| CUW | Domestic | 2018 | $ 443,033,892 | Chubb Indemnity Insurance Company |
| CUW | Domestic | 2018 | $ 25,208 | Chubb Insurance Australia Limited |

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 12.0: Consolidated Gross Written Premium Detail** (a)

| Application | Foreign/ Domestic | Year | Gross Written Premium | StoneTurn Writing Company (b) |
|---|---|---|---|---|
| CUW | Domestic | 2018 | $ 6,135 | Chubb Insurance Company Limited |
| CUW | Domestic | 2018 | $ 6,754 | Chubb Insurance Company of Canada |
| CUW | Domestic | 2018 | $ 32,946,513 | Chubb Insurance Company of New Jersey |
| CUW | Domestic | 2018 | $ 66,309,955 | Chubb National Insurance Company |
| CUW | Domestic | 2018 | $ 642 | Chubb Seguros Brasil S.A. |
| CUW | Domestic | 2018 | $ 1,661,561 | Executive Risk Indemnity Inc. |
| CUW | Domestic | 2018 | $ 213,165 | Executive Risk Specialty Insurance Company |
| CUW | Domestic | 2018 | $ 3,558,748,157 | Federal Insurance Company |
| CUW | Domestic | 2018 | $ 710,266,687 | Great Northern Insurance Company |
| CUW | Domestic | 2018 | $ 240,820,970 | Illinois Union Insurance Company |
| CUW | Domestic | 2018 | $ 13,196,308 | Indemnity Insurance Company of North America |
| CUW | Domestic | 2018 | $ 51,084 | Pacific Employers Insurance Company |
| CUW | Domestic | 2018 | $ 369,995,206 | Pacific Indemnity Company |
| CUW | Domestic | 2018 | $ 227,639,141 | Vigilant Insurance Company |
| CUW | Domestic | 2018 | $ 36,242,321 | Westchester Fire Insurance Company |
| CUW | Domestic | 2018 | $ 49,388,448 | Westchester Surplus Lines Insurance Company |
| CUW | Domestic | 2019 | $ 13,255,599 | ACE American Insurance Company |
| CUW | Domestic | 2019 | $ 185,620 | ACE Fire Underwriters Insurance Company |
| CUW | Domestic | 2019 | $ 7,502,715 | ACE Property and Casualty Insurance Company |
| CUW | Domestic | 2019 | $ 6,693,927 | Chubb Custom Insurance Company |
| CUW | Domestic | 2019 | $ 50,083,542 | Chubb Indemnity Insurance Company |
| CUW | Domestic | 2019 | $ 2,469,028 | Chubb Insurance Company of New Jersey |
| CUW | Domestic | 2019 | $ 6,526,910 | Chubb National Insurance Company |
| CUW | Domestic | 2019 | $ 417,370,954 | Federal Insurance Company |
| CUW | Domestic | 2019 | $ 97,044,347 | Great Northern Insurance Company |
| CUW | Domestic | 2019 | $ 24,843,797 | Illinois Union Insurance Company |
| CUW | Domestic | 2019 | $ 66,049 | Indemnity Insurance Company of North America |
| CUW | Domestic | 2019 | $ 39,736,490 | Pacific Indemnity Company |
| CUW | Domestic | 2019 | $ 25,155,354 | Vigilant Insurance Company |
| CUW | Domestic | 2019 | $ 174,830 | Westchester Fire Insurance Company |
| CUW | Domestic | 2019 | $ 538,022 | Westchester Surplus Lines Insurance Company |
| Decision Point | Domestic | 2016 | $ 182,250 | Chubb Insurance Company of New Jersey |
| Decision Point | Domestic | 2016 | $ 5,465 | Executive Risk Indemnity Inc. |
| Decision Point | Domestic | 2016 | $ 3,359,894 | Federal Insurance Company |
| Decision Point | Domestic | 2017 | $ 319,437 | Chubb Insurance Company of New Jersey |
| Decision Point | Domestic | 2017 | $ 34,636 | Executive Risk Indemnity Inc. |

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 12.0: Consolidated Gross Written Premium Detail** (a)

| Application | Foreign/ Domestic | Year | Gross Written Premium | StoneTurn Writing Company (b) | |
|---|---|---|---|---|---|
| Decision Point | Domestic | 2017 | $ 3,965,783 | Federal Insurance Company | |
| Decision Point | Domestic | 2018 | $ 236,749 | Chubb Insurance Company of New Jersey | |
| Decision Point | Domestic | 2018 | $ 34,899 | Executive Risk Indemnity Inc. | |
| Decision Point | Domestic | 2018 | $ 4,542,690 | Federal Insurance Company | |
| Decision Point | Domestic | 2019 | $ 80,257 | Chubb Insurance Company of New Jersey | |
| Decision Point | Domestic | 2019 | $ 14,133 | Executive Risk Indemnity Inc. | |
| Decision Point | Domestic | 2019 | $ 1,253,341 | Federal Insurance Company | |
| Evolution (Australia) | Foreign | 2017 | $ 992,514 | Chubb Insurance Company of Australia Ltd. | |
| Evolution (Australia) | Foreign | 2018 | $ 76,787,952 | Chubb Insurance Company of Australia Ltd. | |
| Evolution (Australia) | Foreign | 2019 | $ 10,203,995 | Chubb Insurance Company of Australia Ltd. | |
| Evolution (Canada) | Foreign | 2015 | $ 303,000,000 | Chubb Insurance Company of Canada | |
| Evolution (Canada) | Foreign | 2016 | $ 308,000,000 | Chubb Insurance Company of Canada | |
| Evolution (Canada) | Foreign | 2017 | $ 330,000,000 | Chubb Insurance Company of Canada | |
| Evolution (Canada) | Foreign | 2018 | $ 337,000,000 | Chubb Insurance Company of Canada | |
| EZER (Europe) | Foreign | 2013 | $ 200,554,401 | Chubb Insurance Company of Europe SE | (c) |
| EZER (Europe) | Foreign | 2014 | $ 196,353,338 | Chubb Insurance Company of Europe SE | (c) |
| EZER (Europe) | Foreign | 2015 | $ 179,188,308 | Chubb Insurance Company of Europe SE | (c) |
| EZER (Europe) | Foreign | 2016 | $ 156,849,666 | Chubb Insurance Company of Europe SE | (c) |
| EZER (Europe) | Foreign | 2017 | $ 109,376,325 | Chubb European Group, SE | (c) |
| EZER (Europe) | Foreign | 2018 | $ 4,438,273 | Chubb European Group, SE | (c) |
| EZER (UK) | Foreign | 2013 | $ - | Federal Insurance Company | (d) |
| EZER (UK) | Foreign | 2014 | $ 7,833 | Federal Insurance Company | (d) |
| EZER (UK) | Foreign | 2015 | $ 3,515 | Federal Insurance Company | (d) |
| EZER (UK) | Foreign | 2016 | $ 4,130 | Federal Insurance Company | (d) |
| EZER (UK) | Foreign | 2017 | $ - | Federal Insurance Company | (d) |
| EZER (UK) | Foreign | 2018 | $ - | Federal Insurance Company | (d) |
| IRMA | Domestic | 2016 | $ 7,252 | Albany Insurance Company | |
| IRMA | Domestic | 2016 | $ 615,040 | Chubb Custom Insurance Company | |
| IRMA | Domestic | 2016 | $ 19,420 | Chubb de Mexico Compania Afianzadora, S.A. de C.V. | (e) |
| IRMA | Domestic | 2016 | $ 5,451 | Chubb de Mexico Compania de Seguros, S.A. de C.V. | |
| IRMA | Domestic | 2016 | $ 33,637 | Chubb Insurance Australia Limited | |
| IRMA | Domestic | 2016 | $ 3,758 | Chubb Insurance Company Limited | |
| IRMA | Domestic | 2016 | $ 10,045,179 | Chubb Insurance Company of Canada | |
| IRMA | Domestic | 2016 | $ 1,108,829 | Chubb Insurance Company of New Jersey | |
| IRMA | Domestic | 2016 | $ 68,744,411 | Federal Insurance Company | |
| IRMA | Domestic | 2016 | $ 17,031,473 | Great Northern Insurance Company | |

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 12.0: Consolidated Gross Written Premium Detail** (a)

| Application | Foreign/ Domestic | Year | Gross Written Premium | StoneTurn Writing Company (b) | |
|---|---|---|---|---|---|
| IRMA | Domestic | 2016 | $ 3,894,125 | Pacific Indemnity Company | |
| IRMA | Domestic | 2016 | $ 750 | Self-Insured Retention | |
| IRMA | Domestic | 2016 | $ 3,757,327 | Vigilant Insurance Company | |
| IRMA | Domestic | 2017 | $ 13,803 | Chubb Custom Insurance Company | |
| IRMA | Domestic | 2017 | $ 7,175 | Chubb de Mexico Compania Afianzadora, S.A. de C.V. | (e) |
| IRMA | Domestic | 2017 | $ 4,582 | Chubb de Mexico Compania de Seguros, S.A. de C.V. | |
| IRMA | Domestic | 2017 | $ 32,575 | Chubb European Group, SE | |
| IRMA | Domestic | 2017 | $ 10,500 | Chubb Insurance Australia Limited | |
| IRMA | Domestic | 2017 | $ 15,068 | Chubb Insurance Company Limited | |
| IRMA | Domestic | 2017 | $ 10,196,153 | Chubb Insurance Company of Canada | |
| IRMA | Domestic | 2017 | $ 889,740 | Chubb Insurance Company of New Jersey | |
| IRMA | Domestic | 2017 | $ 66,294,343 | Federal Insurance Company | |
| IRMA | Domestic | 2017 | $ 16,015,552 | Great Northern Insurance Company | |
| IRMA | Domestic | 2017 | $ 2,860,463 | Pacific Indemnity Company | |
| IRMA | Domestic | 2017 | $ 3,348,817 | Vigilant Insurance Company | |
| IRMA | Domestic | 2018 | $ 4,782 | Chubb Custom Insurance Company | |
| IRMA | Domestic | 2018 | $ 11,668,247 | Chubb Insurance Company of Canada | |
| IRMA | Domestic | 2018 | $ 966,870 | Chubb Insurance Company of New Jersey | |
| IRMA | Domestic | 2018 | $ 59,180,524 | Federal Insurance Company | |
| IRMA | Domestic | 2018 | $ 15,149,788 | Great Northern Insurance Company | |
| IRMA | Domestic | 2018 | $ 2,586,050 | Pacific Indemnity Company | |
| IRMA | Domestic | 2018 | $ 3,085,724 | Vigilant Insurance Company | |
| Premium Booking | Domestic | 2016 | $ 503,432,073 | Federal Insurance Company | (f) |
| Premium Booking | Domestic | 2017 | $ 442,839,932 | Federal Insurance Company | (f) |
| Premium Booking | Domestic | 2018 | $ 500,850,829 | Federal Insurance Company | (f) |
| TAPS | Domestic | 2016 | $ 73,264,109 | Chubb Indemnity Insurance Company | |
| TAPS | Domestic | 2016 | $ 561,041 | Chubb National Insurance Company | |
| TAPS | Domestic | 2016 | $ 143,625,269 | Federal Insurance Company | |
| TAPS | Domestic | 2016 | $ 8,309,789 | Great Northern Insurance Company | |
| TAPS | Domestic | 2016 | $ 42,217,710 | Pacific Indemnity Company | |
| TAPS | Domestic | 2016 | $ 17,102,989 | Vigilant Insurance Company | |
| TAPS | Domestic | 2017 | $ 45,571,577 | Chubb Indemnity Insurance Company | |
| TAPS | Domestic | 2017 | $ 1,864,828 | Chubb National Insurance Company | |
| TAPS | Domestic | 2017 | $ 144,179,732 | Federal Insurance Company | |
| TAPS | Domestic | 2017 | $ 5,976,054 | Great Northern Insurance Company | |
| TAPS | Domestic | 2017 | $ 45,768,063 | Pacific Indemnity Company | |

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 12.0: Consolidated Gross Written Premium Detail** (a)

| Application | Foreign/ Domestic | Year | Gross Written Premium | StoneTurn Writing Company (b) |
|---|---|---|---|---|
| TAPS | Domestic | 2017 | $ 8,858,947 | Vigilant Insurance Company |
| TAPS | Domestic | 2018 | $ 39,388,714 | Chubb Indemnity Insurance Company |
| TAPS | Domestic | 2018 | $ 5,073,844 | Chubb National Insurance Company |
| TAPS | Domestic | 2018 | $ 123,103,492 | Federal Insurance Company |
| TAPS | Domestic | 2018 | $ 5,192,985 | Great Northern Insurance Company |
| TAPS | Domestic | 2018 | $ 37,960,159 | Pacific Indemnity Company |
| TAPS | Domestic | 2018 | $ 5,771,749 | Vigilant Insurance Company |
| TAPS | Domestic | 2019 | $ 428,683 | Chubb Indemnity Insurance Company |
| TAPS | Domestic | 2019 | $ 27,056 | Chubb National Insurance Company |
| TAPS | Domestic | 2019 | $ 5,438,248 | Federal Insurance Company |
| TAPS | Domestic | 2019 | $ 1,779,809 | Pacific Indemnity Company |
| TAPS | Domestic | 2019 | $ 578,262 | Vigilant Insurance Company |

*Note/Source(s):*

(a)  Gross Written Premiums were excluded for years prior to 2016 for domestic applications. Additionally, Gross Written Premiums were excluded for years prior to 2013 for foreign applications. (Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No. 16 and Sixth Supplemental Answer to Plaintiff's Interrogatory No. 17, dated March 21, 2019 at 3-19; Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No. 18, dated March 21, 2019 at 3; Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No. 19, dated March 2, 2019 at 3; Federal Insurance Company's Fifth Supplemental Answer to Plaintiff's Interrogatory No. 20, dated March 21, 2019 at 3-5.)

(b)  The Writing Company entities were reported inconsistently between the interrogatory responses, and accordingly, the entities have been standardized for purposes of this schedule.

(c)  I understand the writing companies for years 2012-2016 and 2017-2018 was Chubb Insurance Company of Europe SE and Chubb European Group SE, respectively. (Harkin Deposition at 177-178.)

(d)  I understand U.K. Federal Writing Company is the U.K. branch of Federal. (Harkin Deposition at 153-155.)

(e)  Defendants did not provide enough information to identify the writing company. The Writing Company is assumed to be Chubb de Mexico Compania Afianzadora, S.A. de C.V.

(f)  Defendants did not identify a unique writing company for the gross written premiums reported by the Premium Booking application. I understand that Premium Booking application was used by most of the writing companies that are subsidiaries of Federal. (Mirolyuz 1/11/2019 Deposition at 63-64, 80-81.)

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

SCHEDULE 13.1: Writing Company Categorization - Chubb Corporation and Chubb INA Holdings, Inc. Subsidiaries (a)

| ST Writing Company (b) | *Chubb Corporation Subsidiaries* (b) | | | *Chubb INA Holdings, Inc. Subsidiaries* (c) | | | |
|---|---|---|---|---|---|---|---|
| | 2013 | 2014 | 2015 (c) | 2016 | 2017 | 2018 | 2019 (d) |
| ACE American Insurance Company | | | | X | X | X | X |
| ACE Fire Underwriters Insurance Company | | | | X | X | X | X |
| ACE Property and Casualty Insurance Company | | | | X | X | X | X |
| Albany Insurance Company | | | | | | | |
| Chubb Custom Insurance Company | X | X | X | X | X | X | X |
| Chubb de Mexico Compania Afianzadora, S.A. de C.V. | | | | X | X | | |
| Chubb de Mexico Compania de Seguros, S.A. de C.V. | | | | X | X | | |
| Chubb European Group, SE (e) | | | | | X | X | X |
| Chubb Indemnity Insurance Company | X | X | X | X | X | X | X |
| Chubb Insurance Australia Limited | | | | X | X | X | X |
| Chubb Insurance Company Limited | | | | X | X | X | X |
| Chubb Insurance Company of Australia Ltd. | X | X | X | X | X | X | X |
| Chubb Insurance Company of Canada | X | X | X | X | X | X | X |
| Chubb Insurance Company of Europe SE | X | X | X | X | | | |
| Chubb Insurance Company of New Jersey | X | X | X | X | X | X | X |
| Chubb National Insurance Company | X | X | X | X | X | X | X |
| Chubb Seguros Brasil S.A. | | | | | X | X | X |
| Executive Risk Indemnity Inc. | X | X | X | X | X | X | X |
| Executive Risk Specialty Insurance Company | X | X | X | X | X | X | X |
| Federal Insurance Company | X | X | X | X | X | X | X |
| Great Northern Insurance Company | X | X | X | X | X | X | X |
| Illinois Union Insurance Company | | | | X | X | X | X |
| Indemnity Insurance Company of North America | | | | X | X | X | X |
| Pacific Employers Insurance Company | | | | X | X | X | X |
| Pacific Indemnity Company | X | X | X | X | X | X | X |
| Self-Insured Retention | | | | | | | |
| Vigilant Insurance Company | X | X | X | X | X | X | X |
| Westchester Fire Insurance Company | | | | | | | |
| Westchester Surplus Lines Insurance Company | | | | | | | |

Note/Source(s)

(a)  Identifies whether Writing Company is a subsidiary of Chubb Corporation or Chubb INA Holdings, Inc. (FED000060_0001-0002 at 002; FED000059_0001-0002 at 002; FED000058_0001-0012 at 0004-0012; Taylor Deposition at Exhibit 40 (Chubb Limited 2017 Form 10-K Exhibit 21.1); Chubb Limited 2018 Form 10-K Exhibit 21.1).

(b)  See **Schedule 12.0**.

(c)  The Chubb Corporation subsidiary list for 2015 is not available, and accordingly, I have relied on the 2014 list.

(d)  The Chubb Limited subsidiary list for 2019 is not available, and accordingly, I have relied on the 2018 list.

(e)  I understand Chubb European Group Limited changed its name Chubb European Group Plc on April 9, 2018, which then changed its name to Chubb European Group SE on July 19, 2018. Additionally, I understand Chubb European Group Limited has ceased to exist. (Harkin Deposition at 177-178; Federal Insurance Company Annual Statement, December 31, 2018 at 14.9.)

CONFIDENTIAL-ATTORNEYS' EYES ONLY

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 13.2: Writing Company Categorization - Defendants, Subsidiaries and Pooling Entities** (a)

| ST Writing Company (b) | | *Federal* | | | | | *ACE American* | | *Defendants* (c) | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | 2013 | 2014 | 2015 (d) | 2016 | 2017 | 2016 | 2017 | 2018 | 2019 (e) |
| ACE American Insurance Company | | | | | | | X | X | X | X |
| ACE Fire Underwriters Insurance Company | | | | | | | X | X | X | X |
| ACE Property and Casualty Insurance Company | | | | | | | X | X | X | X |
| Albany Insurance Company | | | | | | | | | | |
| Chubb Custom Insurance Company | | X | X | X | X | X | | | | |
| Chubb de Mexico Compania Afianzadora, S.A. de C.V. | | | | | X | | | | | |
| Chubb de Mexico Compania de Seguros, S.A. de C.V. | | | | | X | | | | | |
| Chubb European Group, SE | | | | | | | | | | |
| Chubb Indemnity Insurance Company | | X | X | X | X | X | | | X | X |
| Chubb Insurance Australia Limited | | | | | | | | | | |
| Chubb Insurance Company Limited | | | | | X | X | | | X | X |
| Chubb Insurance Company of Australia Ltd. | (f) | X | X | X | 1/4 X | | | | | |
| Chubb Insurance Company of Canada | (g) | X | X | X | 3/4 X | | | | | |
| Chubb Insurance Company of Europe SE | (h) | X | X | X | X | | | | | |
| Chubb Insurance Company of New Jersey | | X | X | X | X | X | | | X | X |
| Chubb National Insurance Company | | X | X | X | X | X | | | X | X |
| Chubb Seguros Brasil S.A. | | | | | | | | | | |
| Executive Risk Indemnity Inc. | | X | X | X | X | X | | | | |
| Executive Risk Specialty Insurance Company | | X | X | X | X | X | | | | |
| Federal Insurance Company | | X | X | X | X | X | | | X | X |
| Great Northern Insurance Company | | X | X | X | X | X | | | X | X |
| Illinois Union Insurance Company | | | | | | | X | X | X | X |
| Indemnity Insurance Company of North America | | | | | | | X | X | X | X |
| Pacific Employers Insurance Company | | | | | | | X | X | X | X |
| Pacific Indemnity Company | | X | X | X | X | X | | | X | X |
| Self-Insured Retention | | | | | | | | | | |
| Vigilant Insurance Company | | X | X | X | X | X | | | X | X |
| Westchester Fire Insurance Company | | | | | | | | | X | X |
| Westchester Surplus Lines Insurance Company | | | | | | | | | | |

*Note/Source(s):*

(a)  Identifies whether the Writing Company is a Defendant, subsidiary of the Defendants, and/or participates in a pooling arrangement with the Defendants. See **Schedules 14.1-14.4**, **15.1-15.3**, and **16.0**.

(b)  See **Schedule 12.0**.

(c)  I understand the Defendants participated in the same intercompany pool in 2018. See **Schedule 16.0**.

(d)  The Chubb Corporation subsidiary list for 2015 is not available, and accordingly, I have relied on the 2014 list.

(e)  The Chubb Limited subsidiary list for 2019 is not available, and accordingly, I have relied on the 2018 list.

(f)  I understand Chubb Insurance Company of Australia Ltd. was no longer a subsidiary of Federal by April 1, 2016. (Taylor Deposition at 85-86.)

(g)  I understand Chubb Insurance Company of Canada was no longer a subsidiary of Federal by September 30, 2016. (Taylor Deposition at 85.)

(h)  I understand Chubb Insurance Company of Europe SE was no longer a subsidiary of Federal sometime in Q4 2016. (Taylor Deposition at 84-85.)

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 14.1: Summary of Pre-Acquisition Federal Subsidiaries as of December 31, 2013**

| Entity (a) | Category | Jurisdiction of Organization | Percentage Ownership | Writing Company (b) |
|---|---|---|---|---|
| Federal Insurance Company | Domestic | U.S. (Indiana) | 100% | *Yes* |
| Pacific Indemnity Company | Domestic | U.S. (Wisconsin) | 100% | No |
| Northwestern Pacific Indemnity Company | Domestic | U.S. (Oregon) | 100% | No |
| Texas Pacific Indemnity Company | Domestic | U.S. (Texas) | 100% | No |
| Executive Risk Indemnity Inc. | Domestic | U.S. (Delaware) | 100% | No |
| Executive Risk Specialty Insurance Company | Domestic | U.S. (Connecticut) | 100% | No |
| Great Northern Insurance Company | Domestic | U.S. (Indiana) | 100% | No |
| Vigilant Insurance Company | Domestic | U.S. (New York) | 100% | No |
| Chubb Indemnity Insurance Company | Domestic | U.S. (New York) | 100% | No |
| Chubb Custom Insurance Company | Domestic | U.S. (New Jersey) | 100% | No |
| Chubb National Insurance Company | Domestic | U.S. (Indiana) | 100% | No |
| Chubb Insurance Company of New Jersey | Domestic | U.S. (New Jersey) | 100% | No |
| Chubb Investment Holdings Inc. | Domestic | U.S. (New Jersey) | 100% | No |
| Chubb Insurance Investment Holdings Ltd | Foreign | U.K. | 100% | No |
| Chubb Insurance Company of Europe SE | Foreign | U.K. | 100% | *Yes* |
| Chubb Capital Ltd | Foreign | U.K. | 100% | No |
| CC Canada Holdings Ltd. | Foreign | Canada | 100% | No |
| Chubb Insurance Company of Canada | Foreign | Canada | 100% | No |
| Chubb Insurance Company of Australia Ltd. | Foreign | Australia | 100% | *Yes* |
| Chubb Argentina de Seguros, S.A. | Foreign | Argentina | 100% | No |
| Chubb Insurance (China) Company Limited | Foreign | China | 100% | No |

*Note/Source(s):*

(a)  FED000060_0001-0002 at 002 (The Chubb Corporation 2013 Form 10-K Exhibit at 21.1).

(b)  Writing Company identifies whether or not Defendants reported that Blaze Adviser was used to generate gross written premiums for the parent or subsidiary. I understand Defendants reported gross written premiums for certain Writing Companies in its interrogatory responses. See **Schedule 12.0**.

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 14.2: Summary of Pre-Acquisition Federal Subsidiaries as of December 31, 2014**

| Entity (a) | Category | Jurisdiction of Organization | Percentage Ownership | Writing Company (b) |
|---|---|---|---|---|
| Federal Insurance Company | Domestic | U.S. (Indiana) | 100% | *Yes* |
| CC Canada Holdings Ltd. | Foreign | Canada | 100% | No |
| Chubb Insurance Company of Canada | Foreign | Canada | 100% | No |
| Chubb Argentina de Seguros, S.A. | Foreign | Argentina | 99.99% | No |
| Chubb Custom Insurance Company | Domestic | U.S. (New Jersey) | 100% | No |
| Chubb Indemnity Insurance Company | Domestic | U.S. (New York) | 100% | No |
| Chubb Insurance Company of Australia Ltd. | Foreign | Australia | 100% | *Yes* |
| Chubb Insurance Company of New Jersey | Domestic | U.S. (New Jersey) | 100% | No |
| Chubb Insurance Investment Holdings Ltd. | Foreign | U.K. | 100% | No |
| Chubb Insurance Company of Europe SE | Foreign | U.K. | 100% | *Yes* |
| Chubb Capital Ltd. | Foreign | U.K. | 100% | No |
| Chubb Insurance (China) Company Limited | Foreign | China | 100% | No |
| Chubb Investment Holdings Inc. | Domestic | U.S. (New Jersey) | 100% | No |
| Chubb National Insurance Company | Domestic | U.S. (Indiana) | 100% | No |
| Executive Risk Indemnity Inc. | Domestic | U.S. (Delaware) | 100% | No |
| Executive Risk Specialty Insurance Company | Domestic | U.S. (Connecticut) | 100% | No |
| Great Northern Insurance Company | Domestic | U.S. (Indiana) | 100% | No |
| Pacific Indemnity Company | Domestic | U.S. (Wisconsin) | 100% | No |
| Texas Pacific Indemnity Company | Domestic | U.S. (Texas) | 100% | No |
| Vigilant Insurance Company | Domestic | U.S. (New York) | 100% | No |

*Note/Source(s):*

(a) Taylor Deposition at Exhibit 35 (FED000059_0001-0002 at 002).

(b) Writing Company identifies whether or not Defendants reported that Blaze Adviser was used to generate gross written premiums for the parent or subsidiary. I understand Defendants reported gross written premiums for certain Writing Companies in its interrogatory responses. See **Schedule 12.0**.

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 14.3: Summary of Post-Acquisition Federal Subsidiaries as of December 31, 2016**

| Entity (a) | Category | Jurisdiction of Organization | Percentage Ownership | Writing Company (b) |
|---|---|---|---|---|
| Federal Insurance Company | Domestic | U.S. (Indiana) | 100% | *Yes* |
| Chubb Argentina de Seguros, S.A. | Foreign | Argentina | 99.99% | No |
| Chubb Custom Insurance Company | Domestic | U.S. (New Jersey) | 100% | *Yes* |
| Chubb de Chile Compania de Seguros Generales, S.A. | Foreign | Chile | 99.97% | No |
| Chubb de Mexico Compania Afianzadora, S.A. de C.V. | Foreign | Mexico | 99.99% | *Yes* |
| Chubb de Mexico Compania de Seguros, S.A. de C.V. | Foreign | Mexico | 99.94% | *Yes* |
| Chubb European Investment Holdings, SLP | Foreign | U.K. | 100% | No |
| Chubb Europe Finance Ltd. | Foreign | U.K. | 100% | No |
| Chubb Fianzas Holdings Inc. | Domestic | U.S. (Delaware) | 100% | No |
| Chubb Financial Solutions (Bermuda) Ltd. | Foreign | Bermuda | 100% | No |
| Chubb Lloyds Insurance Company of Texas | Domestic | U.S. (Texas) | 100% | No |
| Chubb Indemnity Insurance Company | Domestic | U.S. (New York) | 100% | *Yes* |
| Chubb Insurance Company Limited | Foreign | China | 100% | *Yes* |
| Chubb Insurance Company of New Jersey | Domestic | U.S. (New Jersey) | 100% | *Yes* |
| Chubb Investment Holdings Inc. | Domestic | U.S. (New Jersey) | 100% | No |
| Chubb National Insurance Company | Domestic | U.S. (Indiana) | 100% | *Yes* |
| Chubb Seguros Mexico Holdings Inc. | Domestic | U.S. (Delaware) | 100% | No |
| Executive Risk Indemnity Inc. | Domestic | U.S. (Delaware) | 100% | *Yes* |
| Executive Risk Specialty Insurance Company | Domestic | U.S. (Connecticut) | 100% | *Yes* |
| Federal Insurance Company Escritorio de Representacao No Brasil Ltd. | Foreign | Brazil | 99.99% | No |
| Great Northern Insurance Company | Domestic | U.S. (Indiana) | 100% | *Yes* |
| Pacific Indemnity Company | Domestic | U.S. (Wisconsin) | 100% | *Yes* |
| Texas Pacific Indemnity Company | Domestic | U.S. (Texas) | 100% | No |
| PT Asuransi Chubb Indonesia | Foreign | Indonesia | 80% | No |
| Vigilant Insurance Company | Domestic | U.S. (New York) | 100% | *Yes* |

*Note/Source(s):*

(a) Taylor Deposition at Exhibit 37 (FED000058_0001-0012 at 0006).

(b) Writing Company identifies whether or not Defendants reported that Blaze Adviser was used to generate gross written premiums for the parent or subsidiary. I understand Defendants reported gross written premiums for certain Writing Companies in its interrogatory responses. See **Schedule 12.0**.

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 14.4: Summary of Post-Acquisition Federal Subsidiaries as of December 31, 2017**

| Entity (a) | Category | Jurisdiction of Organization | Percentage Ownership | Writing Company (b) |
|---|---|---|---|---|
| Federal Insurance Company | Domestic | U.S. (Indiana) | 100% | *Yes* |
| Chubb European Investment Holdings, SLP | Foreign | U.K. | 100% | No |
| Chubb Europe Finance Ltd. | Foreign | U.K. | 100% | No |
| Chubb Indemnity Insurance Company | Domestic | U.S. (New York) | 100% | *Yes* |
| Chubb Insurance Company of New Jersey | Domestic | U.S. (New Jersey) | 100% | *Yes* |
| Chubb Insurance Company Limited | Foreign | China | 100% | *Yes* |
| Chubb Investment Holdings Inc. | Domestic | U.S. (New Jersey) | 100% | No |
| Chubb Financial Solutions (Bermuda) Ltd. | Foreign | Bermuda | 100% | No |
| Chubb Lloyds Insurance Company of Texas | Domestic | U.S. (Texas) | 100% | No |
| Chubb National Insurance Company | Domestic | U.S. (Indiana) | 100% | *Yes* |
| Chubb Seguros Holdings Chile Inc. | Domestic | U.S. (Delaware) | 100% | No |
| Chubb Seguros Holdings Chile Inc., Agencia en Chile | Foreign | Chile | 100% | No |
| Chubb de Chile Compania de Seguros Generales, S.A. | Foreign | Chile | 99.97% | No |
| Federal Insurance Company Escritorio de Representacao No Brasil Ltd. | Foreign | Brazil | 99.99% | No |
| Great Northern Insurance Company | Domestic | U.S. (Indiana) | 100% | *Yes* |
| Vigilant Insurance Company | Domestic | U.S. (New York) | 100% | *Yes* |

*Note/Source(s):*

(a)  Taylor Deposition at Exhibit 40 (Chubb Limited 2017 Form 10-K Exhibit 21.1 at 5).

(b)  Writing Company identifies whether or not Defendants reported that Blaze Adviser was used to generate gross written premiums for the parent or subsidiary. I understand Defendants reported gross written premiums for certain Writing Companies in its interrogatory responses. See **Schedule 12.0**.

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 14.5: Summary of Post-Acquisition Federal Subsidiaries as of December 31, 2018**

| Entity (a) | Category | Jurisdiction of Organization | Percentage Ownership | Writing Company (b) |
|---|---|---|---|---|
| Federal Insurance Company | Domestic | U.S. (Indiana) | 100% | *Yes* |
| Chubb European Investment Holdings, SLP | Foreign | U.K. | 100% | No |
| Chubb Europe Finance Ltd. | Foreign | U.K. | 100% | No |
| Chubb Financial Solutions (Bermuda) Ltd. | Foreign | Bermuda | 100% | No |
| Chubb Lloyds Insurance Company of Texas | Domestic | U.S. (Texas) | 100% | No |
| Chubb Indemnity Insurance Company | Domestic | U.S. (New York) | 100% | *Yes* |
| Chubb Insurance Company Limited | Foreign | China | 100% | *Yes* |
| Chubb Insurance Company of New Jersey | Domestic | U.S. (New Jersey) | 100% | *Yes* |
| Chubb Investment Holdings Inc. | Domestic | U.S. (New Jersey) | 100% | No |
| Chubb National Insurance Company | Domestic | U.S. (Indiana) | 100% | *Yes* |
| Federal Insurance Company Escritorio de Representacao No Brasil Ltd. | Foreign | Brazil | 99.99% | No |
| Great Northern Insurance Company | Domestic | U.S. (Indiana) | 100% | *Yes* |
| Vigilant Insurance Company | Domestic | U.S. (New York) | 100% | *Yes* |

*Note/Source(s):*

(a) Chubb Limited 2018 Form 10-K Exhibit 21.1 at 4-5.

(b) Writing Company identifies whether or not Defendants reported that Blaze Adviser was used to generate gross written premiums for the parent or subsidiary. I understand Defendants reported gross written premiums for certain Writing Companies in its interrogatory responses. See **Schedule 12.0**.

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 15.1: Summary of Post-Acquisition ACE American Subsidiaries as of December 31, 2016**

| Entity (a) | Category | Jurisdiction of Organization | Percentage Ownership | Writing Company (b) |
|---|---|---|---|---|
| ACE American Insurance Company | Domestic | U.S. (Pennsylvania) | 100% | *Yes* |
| Pacific Employers Insurance Company | Domestic | U.S. (Pennsylvania) | 100% | *Yes* |
| Illinois Union Insurance Company | Domestic | U.S. (Illinois) | 100% | *Yes* |
| Penn Millers Holding Corporation | Domestic | U.S. (Pennsylvania) | 100% | No |
| PMMHC Corp. | Domestic | U.S. (Pennsylvania) | 100% | No |
| Penn Millers Insurance Company | Domestic | U.S. (Pennsylvania) | 100% | No |
| Penn Millers Agency, Inc. | Domestic | U.S. (Pennsylvania) | 100% | No |
| Rain and Hail Insurance Service Incorporated | Domestic | U.S. (Iowa) | 100% | No |
| Agri General Insurance Company | Domestic | U.S. (Iowa) | 100% | No |
| Rain and Hail L.L.C. | Domestic | U.S. (Iowa) | 100% | No |
| Agri General Insurance Service, Inc. | Domestic | U.S. (Iowa) | 100% | No |
| Rain and Hail Financial Inc. | Domestic | U.S. (Iowa) | 100% | No |
| Rain and Hail Insurance Service International, Inc. | Domestic | U.S. (Iowa) | 100% | No |
| Rain and Hail Insurance Service, Ltd. | Foreign | Canada | 100% | No |
| Rain and Hail Insurance Service de Mexico, S.A. de C.V. | Foreign | Mexico | 100% | No |

*Note/Source(s):*

(a)  Taylor Deposition at Exhibit 37 (FED000058_0001-0012 at 0007-0008).

(b)  Writing Company identifies whether or not Defendants reported that Blaze Adviser was used to generate gross written premiums for the parent or subsidiary.
I understand Defendants reported gross written premiums for certain Writing Companies in its interrogatory responses. See **Schedule 12.0**.

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 15.2: Summary of Post-Acquisition ACE American Subsidiaries as of December 31, 2017**

| Entity (a) | Category | Jurisdiction of Organization | Percentage Ownership | Writing Company (b) |
|---|---|---|---|---|
| ACE American Insurance Company | Domestic | U.S. (Pennsylvania) | 100% | *Yes* |
| Bankers Standard Insurance Company | Domestic | U.S. (Pennsylvania) | 100% | No |
| Indemnity Insurance Company of North America | Domestic | U.S. (Pennsylvania) | 100% | *Yes* |
| Pacific Employers Insurance Company | Domestic | U.S. (Pennsylvania) | 100% | *Yes* |
| Illinois Union Insurance Company | Domestic | U.S. (Illinois) | 100% | *Yes* |
| Penn Millers Holding Corporation | Domestic | U.S. (Pennsylvania) | 100% | No |
| PMMHC Corp. | Domestic | U.S. (Pennsylvania) | 100% | No |
| Penn Millers Insurance Company | Domestic | U.S. (Pennsylvania) | 100% | No |
| Penn Millers Agency, Inc. | Domestic | U.S. (Pennsylvania) | 100% | No |
| Rain and Hail Insurance Service, Inc. | Domestic | U.S. (Iowa) | 100% | No |
| Agri General Insurance Company | Domestic | U.S. (Iowa) | 100% | No |
| Rain and Hail L.L.C. | Domestic | U.S. (Iowa) | 100% | No |
| Agri General Insurance Service, Inc. | Domestic | U.S. (Iowa) | 100% | No |
| Rain and Hail Financial Inc. | Domestic | U.S. (Iowa) | 100% | No |
| Rain and Hail Insurance Service International, Inc. | Domestic | U.S. (Iowa) | 100% | No |
| Rain and Hail Insurance Service, Ltd. | Foreign | Canada | 100% | No |
| Rain and Hail Insurance Service de Mexico, S.A. de C.V. | Foreign | Mexico | 100% | No |

*Note/Source(s):*

(a)  Taylor Deposition at Exhibit 40 (Chubb Limited 2017 Form 10-K Exhibit 21.1 at 7).

(b)  Writing Company identifies whether or not Defendants reported that Blaze Adviser was used to generate gross written premiums for the parent or subsidiary. I understand Defendants reported gross written premiums for certain Writing Companies in its interrogatory responses. See **Schedule 12.0**.

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 15.3: Summary of Post-Acquisition ACE American Subsidiaries as of December 31, 2018**

| Entity (a) | Category | Jurisdiction of Organization | Percentage Ownership | Writing Company (b) |
|---|---|---|---|---|
| ACE American Insurance Company | Domestic | U.S. (Pennsylvania) | 100% | *Yes* |
| Bankers Standard Insurance Company | Domestic | U.S. (Pennsylvania) | 100% | No |
| Indemnity Insurance Company of North America | Domestic | U.S. (Pennsylvania) | 100% | *Yes* |
| Pacific Employers Insurance Company | Domestic | U.S. (Pennsylvania) | 100% | *Yes* |
| Illinois Union Insurance Company | Domestic | U.S. (Illinois) | 100% | *Yes* |
| Penn Millers Holding Corporation | Domestic | U.S. (Pennsylvania) | 100% | No |
| PMMHC Corp. | Domestic | U.S. (Pennsylvania) | 100% | No |
| Penn Millers Insurance Company | Domestic | U.S. (Pennsylvania) | 100% | No |
| Penn Millers Agency, Inc. | Domestic | U.S. (Pennsylvania) | 100% | No |
| Rain and Hail Insurance Services, Inc. | Domestic | U.S. (Iowa) | 100% | No |
| Agri General Insurance Company | Domestic | U.S. (Iowa) | 100% | No |
| Rain and Hail L.L.C. | Domestic | U.S. (Iowa) | 100% | No |
| Agri General Insurance Service, Inc. | Domestic | U.S. (Iowa) | 100% | No |
| Rain and Hail Financial Inc. | Domestic | U.S. (Iowa) | 100% | No |
| Rain and Hail Insurance Service International, Inc. | Domestic | U.S. (Iowa) | 100% | No |
| Rain and Hail Insurance Service, Ltd. | Foreign | Canada | 100% | No |
| Rain and Hail Insurance Service de Mexico, S.A. de C.V. | Foreign | Mexico | 100% | No |

*Note/Source(s):*

(a) Chubb Limited 2018 Form 10-K Exhibit 21.1 at 7.

(b) Writing Company identifies whether or not Defendants reported that Blaze Adviser was used to generate gross written premiums for the parent or subsidiary. I understand Defendants reported gross written premiums for certain Writing Companies in its interrogatory responses. See **Schedule 12.0**.

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 16.0: Summary of Defendants' Intercompany Pooling Arrangements**

| **Federal Pool Entities** (a) | **ACE American Underwriting Pool Entities** (b) | **Chubb INA Pool Entities** (c) |
|---|---|---|
| *Years 2014 - 2017* | *Years 2016 - 2017* | *Year 2018* |
| Chubb Custom Insurance Company | ACE American Insurance Company | ACE American Insurance Company |
| Chubb Indemnity Insurance Company | ACE Fire Underwriters Insurance Company | ACE Fire Underwriters Insurance Company |
| Chubb National Insurance Company | ACE Property & Casualty Insurance Company | ACE Insurance Company of the Midwest |
| Executive Risk Indemnity Inc. | Bankers Standard Insurance Company | ACE Property & Casualty Insurance Company |
| Executive Risk Specialty Insurance Company | Indemnity Insurance Company of North America | Atlantic Employers Insurance Company |
| Federal Insurance Company | Insurance Company of North America | Bankers Standard Insurance Company |
| Great Northern Insurance Company | Pacific Employers Insurance Company | Chubb Insurance Company of New Jersey |
| Pacific Indemnity Company | | Chubb National Insurance Company |
| Vigilant Insurance Company | | Executive Risk Indemnity Company |
| | | Federal Insurance Company |
| | | Great Northern Insurance Company |
| | | Indemnity Insurance Company of North America |
| | | Insurance Company of North America |
| | | Pacific Employers Insurance Company |
| | | Pacific Indemnity Company |
| | | Penn Millers Insurance Company |
| | | Westchester Fire Insurance Company |

*Note/Source(s):*

(a)  The Chubb Corporation U.S. Property and Casualty Insurance Group Audited Consolidated Financial Statement, December 31, 2014 and December 31, 2013 at 25; Taylor Deposition Exhibit 41 (Federal Insurance Company Audited Consolidated Financial Statement, December 31, 2016 and December 31, 2015 at 22); Taylor Deposition at Exhibit 42 (Federal Insurance Company Combined Statutory Financial Statements, December 31, 2017 and December 31, 2016 at 27).

(b)  INA Holdings Combined Statutory Financial Statements, December 31, 2016 and December 31, 2015 at 30; INA Holdings Combined Statutory Financial Statements, December 31, 2017 and December 31, 2016 at 30; ACE American Insurance Company Annual Statement, December 31, 2017 at 14.34.

(c)  Federal Insurance Company Annual Statement,  December 31, 2018 at 14.33; ACE American Insurance Company Annual Statement, December 31, 2018 at 14.38.

**CONFIDENTIAL-ATTORNEYS' EYES ONLY**

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 17.0: Defendants' Board Members Pre- and Post-Acquisition Analysis**

| Board Members | ACE Limited (a) Year 2014 | Chubb Corporation (b) Year 2014 | Chubb Limited (c) Year 2015 | Chubb Limited (d) Year 2017 |
|---|---|---|---|---|
| Alfred W. Zollar | | X | | |
| Daniel E. Somers | | X | | |
| David H. Sidwell | X | | X | X |
| Eugene B. Shanks, Jr. | X | | X | X |
| Evan G. Greenberg | X | | X | X |
| James I. Cash | | X | X | X |
| James M. Zimmerman | | X | X | X |
| Jess Soderberg | | X | | |
| John A. Edwardson | X | | X | X |
| John D. Finnegan | | X | | |
| Karen M. Hoguet | | X | | |
| Kimberly A. Ross | X | | X | X |
| Lawrence M. Small | | X | | |
| Lawrence W. Kellner | | X | X | |
| Leo F. Mullin | X | | X | X |
| Martin G. McGuinn | | X | | |
| Mary Cirillo | X | | X | X |
| Michael G. Atieh | X | | X | X |
| Michael P. Connors | X | | X | X |
| Olivier Steimer | X | | X | X |
| Peter Menikoff | X | | | |
| Robert M. Hernandez | X | | X | X |
| Robert Ripp | | | | |
| Robert W. Scully | X | | X | X |
| Sheila P. Burke | | X | X | X |
| Theodore E. Shasta | X | | X | X |
| Thomas J. Neff | | | | |
| Timothy P. Flynn | | X | | |
| William C. Weldon | | X | | |
| Zoe Baird Budinger | | X | | |

*Note/Source(s):*
(a)  ACE Limited Annual Report 2014 at 22.
(b)  FICO0056279-294 at 292 (Chubb Corporation Annual Report 2014).
(c)  FICO0056295-556 at 336 (Chubb Limited Annual Report 2015).
(d)  FICO0056861-7120 at 6910 (Chubb Limited Annual Report 2017).

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 18.1: Chubb Corporation Business Units and Lines of Business** (a)



*Note/Source(s):*
(a)  FICO0054512-653 at 514-515 (The Chubb Corporation 2014 Form 10-K).

**CONFIDENTIAL-ATTORNEYS' EYES ONLY**

**SCHEDULE 18.2**

*Fair Isaac Corporation v. Federal Insurance Company and ACE American Insurance Company*

**SCHEDULE 18.2: Chubb Limited Business Segments and Lines of Business** (a)



*Note/Source(s):*

(a)  FICO0054952-5171 at 955-961 (Chubb Limited 2016 Form-K).

**CONFIDENTIAL-ATTORNEYS' EYES ONLY**