UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY, an Indiana corporation, and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation,<br><br>Defendants. | Court File No. 16-cv-1054 (WMW/DTS)<br><br>DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE CERTAIN TESTIMONY OF THOMAS CARRETTA |

Defendants Federal Insurance Company and ACE American Insurance Company submit this memorandum of law in support of their motion *in limine* to exclude testimony of Plaintiff Fair Isaac Corporation's ("FICO") Vice President of Legal and Deputy General Counsel, Thomas Carretta, regarding his interpretation the License Agreement and his view that FICO employees Michael Sawyer and Russell Schreiber lacked authority to bind FICO.

## INTRODUCTION

At his deposition, FICO's Deputy General Counsel, Thomas Carretta, testified to his construction of key provisions of the License Agreement. That testimony is inadmissible for three reasons. First, a lay witness may not testify to legal conclusions. Second, under New York law, one party's subjective, after-the-fact interpretation of a contract is not probative of the contract's meaning. And third, Carretta invoked the attorney-client privilege and work-product doctrine to avoid sharing his interpretation of

another contractual provision, and a party may not selectively invoke the attorney-client privilege and work-product doctrine, using it alternatingly as a sword and shield.

Carretta also testified that certain FICO employees—Michael Sawyer and Russell Schreiber—lacked the authority to bind FICO. This testimony is also an impermissible legal conclusion.

For these reasons, Defendants move *in limine* to preclude Carretta from testifying to his understanding of the terms of the License Agreement or to Sawyer and Schreiber's authority to bind FICO.

## **BACKGROUND**

Defendants and FICO dispute the meaning of the License Agreement. FICO claims that under Section 10.8 of the License Agreement, Defendants needed FICO's consent to continue any use of Blaze Advisor after the merger of Chubb and ACE. Dkt. 398 at 18-23. Defendants disagree. As Defendants argued at summary judgment and will prove at trial, Section 10.8 only required Defendants to obtain FICO's consent for "expanded use" of Blaze Advisor after the merger. Dkt. 445 at 21-22. FICO also contends that the Chubb & Son division of Federal is the "Client" under the License Agreement such that the proper use of Blaze Advisor was limited to the Chubb & Son division's employees and affiliates. Dkt. 398 at 17-18. Defendants will prove that Federal, not the Chubb & Son division, is the Client, meaning the License Agreement permitted all of Federal's employees and affiliates to use Blaze Advisor. Dkt. 507 at 20-21.

During discovery, Thomas Carretta, FICO's Vice President of Legal and Deputy General Counsel, testified to his understanding of the License Agreement's meaning.

2

Carretta did not participate in the drafting of the License Agreement. Decl. of Leah Godesky ("Godesky Decl."), Ex. 1 ("Carretta Dep."), 34, 57. Nevertheless, he asserted that the License Agreement barred "anybody other than Chubb & Son's employees to use" Blaze Advisor. *Id.* at 64; *see id.* at 111-12. And he testified at length that under his interpretation of Section 10.8, Federal was required to seek FICO's consent for any continued use of Blaze Advisor after the merger. *See id.* at 45-46, 49-50, 131-32, 134-35, 138-39, 140-43, 148, 158-60, 223, 225-26. But when pressed on his interpretation of another key portion of Section 10.8—the meaning of "expanded use"—Carretta refused to answer, invoking the attorney-client privilege and the work-product doctrine. *See id.* at 151 (Q: "[H]ow would you measure expanded use under [an] enterprise-wide, unlimited seat, no-limit-as-to-application license?" A: "[Y]ou don't even have the right to get to that question until you get consent."); *id.* at 150-151 (Q: "How would you measure expanded use under that enterprise-wide license?" A: "I mean, I think, number one, you are calling for some of my work product.").[1]

Additionally, in his capacity as FICO's Rule 30(b)(6) witness, Carretta opined that FICO employees Michael Sawyer and Russell Schreiber—Defendants' points of contact at FICO—lacked the authority to bind FICO in their communications with Federal regarding the use of Blaze Advisor. *See, e.g.*, Godesky Decl., Ex. 2 ("Carretta 30(b)(6) Dep."), 42 ("They're not authorized to bind us."); *id.* 42-43 (Q: "What about conversations about uses

---

[1] FICO's counsel also repeatedly objected to questioning on the basis of privilege, and instructed Carretta not to answer if doing so would reveal privileged communications or work product. *See* Carretta Dep. at 151, 153.

3

outside the United States being within the scope of the license, are those binding?"  A: "No, the only things that are binding are what's in the contracts[.]").

## ARGUMENT

**I. CARRETTA'S TESTIMONY ABOUT HIS CONSTRUCTION OF THE LICENSE AGREEMENT IS INADMISSIBLE.**

**A. Carretta's Legal Conclusions About the Meaning of the Licensing Agreement Are Inadmissible.**

A witness may not testify to legal conclusions.  *Cameron v. City of New York*, 598 F.3d 50, 62 (2d Cir. 2010).  Witnesses may only offer testimony that is "helpful" to the jury.  Fed. R. Evid. 701.  A legal conclusion, however, "merely tells the jury what result to reach [and] is not sufficiently helpful to the trier of fact to be admissible."  *Kostelecky v. NL Acme Tool/NL Indus., Inc.*, 837 F.2d 828, 830 (8th Cir. 1988); *accord United States v. Ness*, 665 F.2d 248, 250 (8th Cir. 1981).  "Matters of law are for the trial judge, and it is the judge's job to instruct the jury on them."  *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003); *see also Grant v. Brown*, 2015 WL 3843994, at *2 (E.D. Mo. Jun. 22, 2015).

Carretta's views that Section 10.8 required Federal to obtain FICO's consent for any post-merger use of Blaze Advisor and that the License Agreement only permitted the Chubb & Son division's employees and affiliates to use Blaze Advisor are inadmissible legal conclusions.  They are indeed little more than FICO's own interpretation of the License Agreement.  And a lay witness may not testify to "the correct interpretation of a contract."  *United States v. Crawford*, 239 F.3d 1086, 1090 (9th Cir. 2001).  Such testimony "merely tells the jury what result to reach" and so "is not sufficiently helpful to the trier of

fact to be admissible." *Kostelecky*, 837 F.2d at 830. Carretta's testimony would not convey facts that would aid the jury in interpreting the Licensing Agreement's ambiguities. Indeed, Carretta's testimony *cannot* convey facts relevant to interpreting the License Agreement because Carretta was not involved in negotiating or drafting it. Instead, Carretta's testimony presents a conclusory view of how the jury should decide one of the key issues in the case. Such a "bare legal conclusion[]" is inadmissible. *United States ex rel. Johnson v. Golden Gate Nat'l Senior Care, LLC*, 223 F. Supp. 3d 882, 906 (D. Minn. 2016).

**B.   Carretta's After-the-Fact Testimony About His Personal Understanding of the Licensing Agreement Is Inadmissible.**

Under New York law, "a unilateral expression of one party's postcontractual subjective understanding of the terms of [an] agreement" is "not probative as an aid to the interpretation of the contract[.]" *Murray Walter, Inc. v. Sarkisian Bros.*, 183 A.D.2d 140, 146 (3d Dep't 1992); *accord DiGiulio v. City of Buffalo*, 237 A.D.2d 938, 939 (4th Dep't 1997). That is because one party's after-the-fact construction cannot "establish that [both parties] had such intent and understanding when they entered into the . . . contract." *Ingersoll Milling Mach. Co. v. M/V Bodena*, 619 F. Supp. 493, 506 (S.D.N.Y. 1985). Consequently, "*post hoc* interpretations" of contract provisions by employees who did not "participate[] in drafting or negotiating" them, *Faulkner v. Nat. Geo. Soc.*, 452 F. Supp. 2d 369, 379 (S.D.N.Y. 2006), are "not admissible as extrinsic evidence of the parties' mutual intent[,]" 22 N.Y. Jur. 2d Contracts § 216 (2d ed. Nov. 2022 update); *see also LaSalle Bank N.A. v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 207 n.10 (2d Cir. 2005).

5

It is undisputed that Carretta did not "participate[] in drafting or negotiating" the License Agreement. *Faulkner*, 452 F. Supp. 2d at 379; Carretta Dep. 34 (Q: "You were not involved in the original negotiation of the License Agreement in June of 2005?" A: "No."). Indeed, he did not even review the agreement until the time of the merger, a decade after it was executed. *Id.* at 31; *see also id.* at 34. At best, Carretta's view of the License Agreement's meaning is "a unilateral expression of [FICO's] postcontractual subjective understanding of the terms[.]" *Murray Walter*, 183 A.D.2d at 146. The Court should therefore preclude him from testifying at trial to his view of the License Agreement's meaning.

### C. Carretta's Testimony Regarding the Meaning of the License Agreement Is Inadmissible Because of His Selective Invocation of the Attorney-Client Privilege and Work-Product Doctrine.

"The attorney client privilege cannot be used as both a shield and a sword[.]" *United States v. Workman*, 138 F.3d 1261, 1264 (8th Cir. 1998). That is, a party "may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991); *see also UnitedHealth Grp. Inc. v. Columbia Cas. Co.*, 47 F. Supp. 3d 863, 876 (D. Minn. 2014) (same for work-product doctrine). Under this rule, a party cannot elicit helpful testimony and then "selectively assert the privilege to block the introduction of information harmful to his case[.]" *Workman*, 138 F.3d at 1263. For instance, a party may not "rely on the opinions, knowledge, and advice of its . . . counsel" as evidence "while simultaneously seeking to maintain privilege as to other opinions and evaluations[.]"

*Union Pacific RR Co. v. Colony Nat. Ins. Co.*, 2016 WL 4734377, at *3 (D. Neb. Sept. 9, 2016).

But that is exactly what FICO seeks to do through Carretta's testimony. At his deposition, Carretta invoked the attorney client privilege and work product doctrine and refused to offer his interpretation of a key provision of Section 10.8—the bar on FICO "unreasonably withh[olding]" consent to "expanded use" of Blaze Advisor. Carretta Dep. 150-51. But he testified repeatedly and at great length to his interpretation that the rest of Section 10.8 prevented Defendants from using Blaze Advisor at all after the merger without FICO's consent. *See id.* at 45-46, 49-50, 131-32, 134-35, 138-39, 140-43, 148, 158-60, 223, 225-26. When a party invokes the attorney-client privilege or work-product doctrine to block its attorneys' "opinions and evaluations" of a claim, it is "barred from introducing any evidence of how its attorneys evaluated the . . . claims[.]" *Union Pacific*, 2016 WL 4734377, at *3. Consequently, the Court should preclude Carretta from testifying to his understanding of the meaning of the License Agreement.

## II. CARRETTA'S TESTIMONY ABOUT SAWYER'S AND SCHREIBER'S AUTHORITY TO BIND FICO IS AN INADMISSIBLE LEGAL CONCLUSION.

The Court should preclude Carretta from testifying to the legal conclusion that Sawyer and Schreiber lacked the legal authority to bind FICO through their conduct and communications with Defendants. Whether a party's agents have actual or apparent authority to bind it is a fact-intensive question under New York law. *See, e.g.*, 2A N.Y. Jur. Agency § 100 (2d ed. Nov. 2022 update). Carretta's testimony on this point, however, offers no actual facts, and would do little more than simply instruct the jury on this issue,

7

telling them "what result to reach[.]" *Kostelekcy*, 837 F.3d at 830. This is especially prejudicial here because Carretta is an attorney and his judgments will therefore have the imprimatur of a legal expert. It is therefore inadmissible.

## CONCLUSION

The Court should preclude Carretta from testifying to his understanding of the meaning of the License Agreement and Sawyer and Schreiber's authority to bind FICO.

Dated:  January 13, 2023

*/s Terrence J. Fleming*
Terrence J. Fleming (#0128983)
tfleming@fredlaw.com
Leah C. Janus (#0337365)
ljanus@fredlaw.com
Christopher D. Pham (#0390165)
cpham@fredlaw.com
Ryan C. Young (#0397751)
ryoung@fredlaw.com
Panhia Vang (#399444)
pvang@fredlaw.com

**Fredrikson & Byron, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
(612) 492-7000 (tel.)
(612) 492-7077 (fax)

Leah Godesky (Admitted Pro Hac Vice)

**O'Melveny & Myers LLP**
Times Square Tower
7 Times Square
New York, NY 10036
(212) 326-2000
lgodesky@omm.com

***Attorneys for Federal Insurance Company and ACE American Insurance Company***