# EXHIBIT 2

Thomas Carretta   -   3/22/2019
Fair Isaac Corporation vs. Federal Insurance Company, et al.
CASE 0:16-cv-01054-DTS   Doc. 983-2   Filed 01/13/23   Page 2 of 3

```
 1                  UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
 2    ---------------------------------------------------------
      FAIR ISAAC CORPORATION,
 3
                            Plaintiff,
 4

 5       v.            Court File No. 16-cv-1054(WMW/DTS)

 6


 7    FEDERAL INSURANCE COMPANY,
      an Indiana corporation, and ACE
 8    AMERICAN INSURANCE COMPANY,
      a Pennsylvania corporation,
 9
                            Defendants.
10    ---------------------------------------------------------

11

12


13                       VIDEO DEPOSITION OF

14                         THOMAS CARRETTA

15                         MARCH 22, 2019

16                            9:31 A.M.

17

18

19

20

21

22

23                                                      EXHIBIT
                                                           2
24

25
```

EXHIBIT 2

Thomas Carretta - 3/22/2019
Fair Isaac Corporation vs. Federal Insurance Company, et al.
CASE 0:16-cv-01054-DTS   Doc. 983-2   Filed 01/13/23   Page 3 of 3

**Page 40**

1  A. It depends on the context.
2  Q. Do you know whether that was the case in this
3     situation?
4  A. There was a salesperson definitely who was
5     contacting various elements of the Chubb
6     Corporation. There were several people actually,
7     and depends on what part of the world they're in,
8     but there may be other people that are interacting
9     that might be considered primary. Depends on what
10    part of the organization.
11        So if there was an engineer of Chubb &
12    Sons in the United States entering a log ticket,
13    he might have a conversation with somebody in the
14    maintenance organization and that person would be
15    the primary contact. So it depends on the
16    purpose, and you haven't defined the purpose.
17 Q. Okay. Mike Sawyer was the client partner for much
18    of the Chubb/FICO relationship, correct?
19 A. He was the client partner for the United States
20    elements of Chubb & Sons, and then if there were
21    opportunities outside of Chubb & Sons, he would
22    probably be the person that would contact them,
23    yes.
24 Q. And he was -- do you understand that he was sort
25    of the primary point person at FICO for Chubb?

**Page 41**

1  A. For the United States.
2  Q. So Chubb in Europe may have had other point
3     people, but for the United States, Mike Sawyer?
4  A. Yeah, it's just a matter of geographic
5     convenience.
6  Q. Okay. What about Russ Schreiber, is he a
7     lower-level person?
8  A. Russ was Mike Sawyer's boss, so he's up a level.
9  Q. Okay. And would you characterize him as a
10    lower-level person?
11 A. No.
12 Q. What was his position?
13 A. He was the manager for the insurance group.
14 Q. Now, you said there could be chatter between
15    lower-level people or low-level people. What is
16    the significance of that to you? Why did you say
17    that?
18 A. Because our agreement with Chubb was if we're
19    going to do work for you it has to be in a
20    Statement of Work, and that's for everybody's
21    benefit because, you know, we want to make sure
22    we're operating within the agreement of what we're
23    going to provide; and Chubb doesn't want us to do
24    any work that isn't authorized because it can
25    create problems, and so that's why they have a

**Page 42**

1     clause that says we only do it if we have a
2     written Statement of Work.
3  Q. And so the significance of that statement, I take
4     it, is that you don't believe that chatter between
5     low-level people should bind FICO?
6        MS. KLIEBENSTEIN: Objection, calls for a
7     legal conclusion.
8        THE WITNESS: They're not authorized to bind
9     us.
10    BY MS. JANUS:
11 Q. Okay. So statements made by FICO to Chubb by the
12    salespeople are not binding on FICO?
13 A. Well, by the agreement of the parties, it has to
14    be written. And so they'll have conversations and
15    say, I have this problem, do you have a solution;
16    well, we might be able to do it like this. So
17    there's engagement going on, but it's not work.
18    In that sense, it's trying to identify problems,
19    potential solutions.
20        If they find a solution that the client,
21    in this case Chubb & Sons, wants to pursue, they
22    would enter into a written Statement of Work. So
23    no, that conversation is not binding. It's just
24    normal conversation.
25 Q. What about conversations about uses outside of the

**Page 43**

1     United States being within the scope of the
2     license, are those binding?
3  A. No, the only things that are binding are what's in
4     the contracts because that's part of the deal that
5     Chubb wanted, is they said, we don't want to be
6     responsible and FICO doesn't want to be
7     responsible, it must be in a written agreement.
8  Q. So as far as you're concerned, Mike Sawyer or Russ
9     Schreiber could have had as many conversations as
10    they wanted with Chubb people saying, go ahead,
11    use it in Europe, use it in Canada, we'll help you
12    use it in Europe, we'll help you use it in Canada,
13    but those aren't binding on FICO. Is that your
14    position?
15       MS. KLIEBENSTEIN: Objection, calls for
16    speculation and I think we're way outside of the
17    30(b)(6) topic with this line of questioning. You
18    can answer that if you can.
19       THE WITNESS: Well, it really is speculating.
20    BY MS. JANUS:
21 Q. I'm asking the question.
22 A. Our people know that they have to have written
23    Statements of Work or they have to have license
24    agreements, and we have a policy that says that;
25    and then we follow the client's policy which --