# EXHIBIT H

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 16-cv-1054 (WMW/DTS) |
| FEDERAL INSURANCE COMPANY, an Indiana corporation, and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania Corporation, | ) ) ) ) ) ) |
| Defendant. | ) |

**EXPERT REPORT OF
W. CHRISTOPHER BAKEWELL
REGARDING DAMAGES**

**May 17, 2019**

Respectfully Submitted,

_____

W. Christopher Bakewell

explained above, the economic footprint of Blaze Advisor is much smaller. As I discussed above, the contemporaneous economic evidence shows that there are available substitutes to Blaze Advisor. Federal could reasonably discontinue the contracts for Blaze Advisor because it would have options to use other substitute solutions.

166. At bottom, Mr. Zoltowski's calculations are financially irrelevant and would result in a financial windfall to FICO. In the following sections, I provide more details regarding why this is.

*Mr. Zoltowski Disregarded Evidence That Most, If Not All, Of Federal's Gross Written Premiums Are Attributable To Factors Other Than the Alleged Wrongdoings*

167. Mr. Zoltowski's calculations simply aggregate all gross written premiums (*i.e.,* revenue) for business units/segments which may have used Blaze Advisor applications on his alleged basis that "Defendants' use of Blaze Advisor *contributes* to the generation of gross written premiums."[249] Again, Mr. Zoltowski performs no substantive analysis as to what these contributions are, what their true intrinsic value is, or how they have a nexus to the issues in this case. To the extent that he claims these amounts are relevant from a financial, economic or valuation perspective, Mr. Zoltowski has provided no basis to do so.

168. At the outset, Mr. Zoltowski significantly inflates his damages numbers by counting gross written premiums that apparently come from business entities that are not parties to this lawsuit. Mr. Zoltowski justifies this method by claiming that these various entities are a "single economic unit."[250] Mr. Zoltowski attempts to support this claim with references to consolidated financial statements, general accounting standards, contracts between these companies, and the benefits these companies derive from working together which is unsupported by the generalized sources he cites.[251] These are ordinary business relationships and Mr. Zoltowski has provided no financial basis for effectively transforming these separate

---

[249] Zoltowski Report, p. 43. *Emphasis added*.
[250] Zoltowski Report, p. 10-11.
[251] Zoltowski Report, p. 10-11.

*CONFIDENTIAL*
*ATTORNEY'S EYES ONLY*

entities into one for the purposes of a damages assessment. It is my understanding that FICO is only entitled to profits from the actual named defendants themselves, and Mr. Zoltowski has provided no financial basis for doing otherwise. Here again, from a financial perspective, Mr. Zoltowski's claims are not to the evidence and would result in a windfall to FICO.

169. In his calculations, Mr. Zoltowski just aggregates *all* gross written premiums. Mr. Zoltowski appears to acknowledge that Blaze Advisor is one component that may *contribute* to the generation of gross written premiums;[252] however, he demonstrates no real attempt to use any type of reliable method to tie Federal's profits or revenue to the use of Blaze Advisor.

170. Federal operates one of the world's largest international P&C insurance companies with operating roots dating back to 1792.[253] As I discussed in **Section 3**, the evidence indicates that the large majority, if not all, of Federal's gross written premiums are attributable to factors unrelated to the use of Blaze Advisor applications and that fall outside the scope of any allegedly unlawful conduct in this matter. And Mr. Zoltowski has not shown otherwise. These factors include (but are not necessarily limited to), the know-how of its workforce, management abilities, brand recognition, existing customer relationships, pricing, and service quality, all of which are key drivers of Federal's gross written premiums.[254]

171. Gross written premiums attributable to these other considerations should not be included in any estimate of Federal's profits if they are claimed to somehow be attributable to the alleged wrongdoing, or else there is a windfall to FICO. In other words, FICO did not develop or take the requisite business risks or make the investments to develop the intangibles that I discussed above, and certainly Mr. Zoltowski has not shown this. FICO should not benefit from economic activities associated with these other intangibles.

---

[252] Zoltowski Report, p. 42.
[253] Chubb website: Our History. (accessed https://www.chubb.com/us-en/about-chubb/who-we-are.aspx)
[254] Chubb Limited Form 10-K, for the year ended December 31, 2017, p. 3; Chubb Ltd., Argus Analyst Report, February 26, 2019, p.1.

172. The P&C insurance industry is mature, and "the majority of P&C sales are associated with existing customers, so policy renewals dominate premiums for industry operators."[255] Industry sales are largely driven by strong recurring revenue and pre-existing customer relationships. Mr. Zoltowski did not factor these considerations. Mr. Zoltowski did not address the economic realities of the P&C insurance industry; he also did not recognize that existing customer relationships and the recurring nature of Federal's gross written premiums as being the primary driver of revenues, as opposed to any alleged wrongdoings.

173. This is all problematic because Mr. Zoltowski simply took Federal's total gross written premiums from business lines/segments which may have used Blaze Advisor, regardless of whether those gross written premiums were attributable to any alleged infringement. Mr. Zoltowski did not employ any financial or economic methodology to demonstrate a connection between these revenue numbers and Federal's use of Blaze Advisor, other than basic addition that requires little, if any, of his financial and valuation expertise.

174. In short, Mr. Zoltowski has not identified or accounted for those gross written premiums that are unrelated to the allegations in this case, or are driven by considerations that are separate and apart from any alleged wrongdoings. He has not identified any incremental financial benefits (*e.g.* incremental gross written premiums) realized by Federal on account of the alleged infringement.

*Mr. Zoltowski Includes Gross Written Premiums From Applications That Did Not Use Blaze Advisor*

175. Mr. Zoltowski's calculation of Federal's gross written premiums is overstated as it includes gross written premiums associated with a number of applications that do not use Blaze Advisor. I discussed in **Section 4.2** that the following applications do not use Blaze Advisor: CIS Claims, Cornerstone, ADAPT (U.K.), Evolution (Australia), Exari (U.K) and Broker Site (Canada).[256]

---

[255] IBISWorld Industry Report 52412 Property, Casualty and Direct Insurance in the US, December 2018, p. 7.
[256] Mr. Zoltowski assumes that gross written premiums processed through Broker Site are already included in