**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Fair Isaac Corporation,

      Plaintiff,

v.

Federal Insurance Company,
ACE American Insurance Company,

      Defendants, Counter Claimants,

v.

Fair Isaac Corporation,

      Counter Defendant.

Case No. 16-cv-1054 (DTS)

**Parties' Jury Instruction Submission**

---

## Contents

PRELIMINARY STATEMENT ................................................................................ 6

PART 1: INSTRUCTIONS BEFORE VOIR DIRE ................................................... 7

   Instruction No. 1................................................................................................ 8

PART II: PRELIMINARY INSTRUCTIONS BEFORE TRIAL .................................. 9

   Summary of the Case ..................................................................................... 10

      Plaintiff's proposal ...................................................................................... 10

      Defendants' proposal ................................................................................. 12

   Instruction No. 2: Preliminary Instructions ..................................................... 15

      Plaintiff's proposal ...................................................................................... 15

      Defendants' proposal ................................................................................. 16

   Instruction No. 3: Evidence; Direct and Circumstantial ................................. 17

   Instruction No. 4: Burden of Proof.................................................................. 18

   Instruction No. 5: Credibility of the Witnesses .............................................. 19

   Instruction No. 6: Impeachment..................................................................... 20

   Instruction No. 7: Opinion .............................................................................. 21

      Plaintiff's proposal ...................................................................................... 21

      Defendants' proposal ................................................................................. 21

Instruction No. 8: Deposition Testimony ..................................................................... 22

Instruction No. 9: Bench Conferences and Recesses................................................. 23

Instruction No. 10: Attention and Notes ..................................................................... 24

Instruction No. 11: Conduct of the Jury...................................................................... 25

Instruction No. 12: Outline of Trial ............................................................................. 27

Instruction No. 13: Questions ..................................................................................... 28

Instruction No. 14: Schedule ...................................................................................... 29

Instruction No. 15: Recesses ..................................................................................... 30

Instruction No. 16: Concluding Note .......................................................................... 31

PART III: JURY INSTRUCTIONS AT END OF TRIAL .................................................. 32

Instruction No. 17: Preliminary Note .......................................................................... 33

Instruction No. 18: Burden of Proof............................................................................ 34

Instruction No. 19: Credibility of the Witnesses ........................................................ 35

Instruction No. 20: Impeachment ............................................................................... 36

Instruction No. 21: Opinion ........................................................................................ 37

Instruction No. 22: Deposition Testimony .................................................................. 38

Instruction No. 23: Demonstratives ............................................................................ 39

Instruction No. 24: Judge's Opinion ........................................................................... 40

Instruction No. 25: Breach of Contract ....................................................................... 41

    Plaintiff's proposal ................................................................................................. 41

        Plaintiff's proposed Instruction No. 25(a): Existence of Contract ...................... 41

        Plaintiff's position on proposed Instruction No. 25(a)........................................... 41

        Plaintiff's proposed Instruction No. 25(b)(1): Paragraph 10.8 — Assignment
        Defined ................................................................................................................ 42

        Plaintiff's position on proposed Instruction No. 25(b)(1) ..................................... 42

        Plaintiff's proposed Instruction No. 25(b)(2) — Breach of Paragraph 10.8 ........ 43

        Plaintiff's position on proposed Instruction No. 25(b)(2) ..................................... 44

        Plaintiff's proposed Instruction No. 25(b)(3) — Extrinsic Evidence.................... 45

        Plaintiff's position on proposed Instruction No. 25(b)(3) ..................................... 45

        Plaintiff's proposed Instruction No. 25(c)(1) — Foreign Insurance Companies .. 46

        Plaintiff's position on proposed Instruction No. 25(c)(1) ..................................... 47

        Plaintiff's proposed Instruction No. 25(c)(2) — Extrinsic Evidence .................... 48

        Plaintiff's position on proposed Instruction No. 25(c)(2) ..................................... 48

        Plaintiff's proposed Instruction No. 25(c)(3) — Reasonable Construction .......... 50

        Plaintiff's position on proposed Instruction No. 25(c)(3) ..................................... 50

Plaintiff's proposed Instruction No. 25(d) — Third-Party Consultants ................ 51

Plaintiff's position on proposed Instruction No. 25(d) ............................................. 51

Plaintiff's proposed Instruction No. 25(e) — Breach of Paragraph 9.3 .............. 53

Plaintiff's position on proposed Instruction No. 25(e) ............................................. 53

Plaintiff's proposed Instruction No. 25(f)(1) — Defendants' Counterclaims — Improper Termination ........................................................................................... 54

Plaintiff's position on proposed Instruction No. 25(f)(1) ........................................ 54

Plaintiff's proposed Instruction No. 25(f)(2) — Defendants' Counterclaims — Covenant of Good Faith and Fair Dealing ............................................................. 55

Plaintiff's position on proposed Instruction No. 25(f)(2) ........................................ 55

Plaintiff's proposed Instruction No. 25(g)(1) — Contract Damages .................... 56

Plaintiff's position on proposed Instruction No. 25(g)(1) ....................................... 56

Plaintiff's proposed Instruction No. 25(g)(2) — Expectation Damages .............. 57

Plaintiff's position on proposed Instruction No. 25(g)(2) ....................................... 57

Plaintiff's proposed Instruction No. 25(g)(3) — Hypothetical Negotiation .......... 58

Plaintiff's position on proposed Instruction No. 25(g)(3) ....................................... 58

Plaintiff's proposed Instruction No. 25(g)(4) — Objective Factors ...................... 59

Plaintiff's position on proposed Instruction No. 25(g)(4) ....................................... 61

Plaintiff's proposed Instruction No. 25(g)(5) — Comparable Agreements .......... 62

Plaintiff's position on proposed Instruction No. 25(g)(5) ....................................... 62

Defendants' proposal .................................................................................................. 63

Defendants' proposed Instruction No. 25(a) — Breach of Contract .................... 63

Defendants' position on proposed Instruction No. 25(a) ........................................ 63

Defendants' proposed Instruction No. 25(b) — Interpreting a Contract ............. 64

Defendants' position on proposed Instruction No. 25(b) ........................................ 64

Defendants' proposed Instruction No. 25(c) — Agency ....................................... 65

Defendants' position on proposed Instruction No. 25(c) ........................................ 65

Defendants' proposed Instruction No. 25(d) — Excuse ....................................... 66

Defendants' position on proposed Instruction No. 25(d) ........................................ 66

Defendants' proposed Instruction No. 25(e) — Material Breach ......................... 67

Defendants' position on proposed Instruction No. 25(e) ........................................ 67

Defendants' proposed Instruction No. 25(f) — Covenant of Good Faith and Fair Dealing ................................................................................................................... 68

Defendants' position on proposed Instruction No. 25(f) ........................................ 68

Instruction No. 26: Copyright Infringement ................................................................. 69

Plaintiff's proposal ................................................................................. 69

Plaintiff's proposed Instruction No. 26(a) — Copyright Ownership ..................... 69

Plaintiff's position on proposed Instruction No. 26(a)................................. 69

Plaintiff's proposed Instruction No. 26(b) — Unauthorized Reproduction........... 70

Plaintiff's position on proposed Instruction No. 26(b)................................. 70

Plaintiff's proposed Instruction No. 26(c) — Infringement of Registered
Copyrights ........................................................................................ 72

Plaintiff's position on proposed Instruction No. 26(c)................................. 72

Plaintiff's proposed Instruction No. 26(d) — Derivative Work ............................ 73

Plaintiff's position on proposed Instruction No. 26(d)................................. 73

Plaintiff's proposed Instruction No. 26(e) — Willful Infringement ...................... 75

Plaintiff's position on proposed Instruction No. 26(e)................................. 75

Plaintiff's proposed Instruction No. 26(f)(1) — Vicarious Liability — ACE
American ........................................................................................... 76

Plaintiff's position on proposed Instruction No. 26(f)(1) ............................ 76

Plaintiff's proposed Instruction No. 21(f)(2) — Vicarious Liability — Federal...... 77

Plaintiff's position on proposed Instruction No. 26(f)(2) ............................ 77

Defendants' proposal ........................................................................... 78

Defendant's proposed Instruction No. 26(a) — Copyright Infringement ............. 78

Defendants' position on proposed Instruction No. 26(a)................................. 78

Defendant's proposed Instruction No. 26(b) — Subject Matter ......................... 79

Defendants' position on proposed Instruction No. 26(b)................................. 79

Instruction No. 27: Damages ................................................................... 80

Plaintiff's proposal ................................................................................. 80

Plaintiff's proposed Instruction No. 27(a) — Actual Damages ........................... 80

Plaintiff's position on proposed Instruction No. 27(a)................................. 80

Plaintiff's proposed Instruction No. 27(b)(1) — Disgorgement........................... 81

Plaintiff's position on proposed Instruction No. 27(b)(1) ............................ 81

Plaintiff's proposed Instruction No. 27(b)(2) — FICO's Burden of Proof — Gross
Revenue ........................................................................................... 82

Plaintiff's position on proposed Instruction No. 27(b)(2) ............................ 82

Plaintiff's proposed Instruction No. 27(b)(3) — The Scope of Disgorgement —
Revenue from the Single Enterprise.................................................... 84

Plaintiff's position on proposed Instruction No. 27(b)(3) ............................ 85

Plaintiff's proposed Instruction No. 27(b)(4) — Defendants' Burden of Proof —
Deduction of Expenses from Revenue ............................................... 86

Plaintiff's position on proposed Instruction No. 27(b)(4) ..................................... 87

Plaintiff's proposed Instruction No. 27(b)(5) — Defendants' Burden of Proof — Apportionment ............................................................................................................. 88

Plaintiff's position on proposed Instruction No. 27(b)(5) ..................................... 88

Defendants' proposal ..................................................................................................... 89

Defendants' proposed Instruction No. 27(a) — Actual Damages ...................... 89

Defendants' position on proposed Instruction No. 27(a).................................... 89

Defendants' proposed Instruction No. 27(b) — Defendants' Profits .................. 90

Defendants' position on proposed Instruction No. 27(b).................................... 90

Instruction No. 28: Deliberations and Special Verdict Forms...................... 91

## <u>PRELIMINARY STATEMENT</u>

Pursuant to the Court's Trial Notice and Final Pretrial Order, the parties submit the following proposed summaries of the case and proposed jury instructions.  The parties have met and conferred in good faith and have not come to agreement on a joint summary of the case.  The parties present their proposed instructions in the form of redline revisions from the proposed instructions provided by the Court at the November 8 pretrial conference.  Blue text represents additions to the Court's instructions.  Red text indicates deletions.  Where parties have wholly replaced an instruction proposed by the Court, blue text only is included.  Where the parties disagree, the party proposing an instruction has provided a "brief description of the party's position and the primary legal authority on which the party relies."  (Dkt. 923 at 5.)

Plaintiff generally object to Defendants' proposed jury instructions as incomplete and contrary to the law and facts of this case.  Plaintiff has conveyed additional specific objections to Defendants.

Defendants generally object to Plaintiff's proposed jury instructions as an improper attempt to obtain a directed verdict on disputed claims.  Defendants have conveyed additional specific objections to Plaintiff.

## PART 1: INSTRUCTIONS BEFORE VOIR DIRE

**Instruction No. 1**

Members of the Jury Panel, we are about to begin the process of selecting which of you will be the jury that tries this case. In that process you will be asked questions by me and by the attorneys that touch on your qualifications to sit as jurors in this case. You will be placed under oath or asked to affirm that you will truthfully and completely answer these questions put to you.

Your undivided attention to this process is very important. So, if you have a cell phone or other communication device, please take it out now and turn it off. Do not turn it to vibration or silent; please power it down or off. During this jury selection process, you must leave it off. (Pause for 30 seconds to allow them to comply, then tell them the following.)

During this jury selection process and during the trial, it is important that all the information you receive about the case comes from the courtroom. So, from now on until you are discharged from the case you may not discuss this case with anyone and that includes the other potential jurors, except during deliberations if you are selected as a juror. However, you may tell your family, close friends, and other people about your participation in this trial, but only so they will know when you are required to be in court. If you do that, please warn them not to ask you about this case or try to tell you anything they know or think they know about it or discuss this case in your presence.

Also, just as importantly, you must not communicate any information at all about the case to anyone by any means, directly or indirectly, in face-to-face conversation or by any digital media.

If you discuss the case with someone other than the other jurors during deliberations, you may be influenced in your verdict by the opinions of people other than the other jurors. That would not be fair to the parties and it would result in a verdict that is not based entirely on the evidence in court and the law the court gives you.

It is very important that you abide by these rules. Failure to follow these instructions, and indeed any instructions the court gives you during the trial could result in the case having to be retried. And failure to follow these and the court's other instructions could result in you being held in contempt of court and punished accordingly.

Those of you who are selected to try this case will receive similar instructions as we go through the trial.

Are there any of you who cannot or will not abide by these rules concerning communication with others during trial?  (Then continue with voir dire.)

## PART II: PRELIMINARY INSTRUCTIONS BEFORE TRIAL

## Summary of the Case

### *Plaintiff's proposal*

#### FICO's Statement of Claims

Plaintiff Fair Isaac Corporation ("FICO") brings this action against Defendant Federal Insurance Company ("Federal") for breach of contract and copyright infringement, and against Defendant ACE American Insurance Company ("ACE American") for copyright infringement.

##### FICO's Statement of Claims against Federal for breach of contract and copyright infringement

In 2006, FICO and Chubb & Son, a division of Federal, entered into a Software License and Maintenance Agreement (the "License Agreement"). The License Agreement gave the division Chubb & Son the limited right to use FICO's Blaze Advisor software under defined terms and conditions. Chubb & Son is an unincorporated division of Federal which was part of the group of insurance companies known as the Chubb Corporation. Chubb & Son served as the manager of several United States insurance company subsidiaries of the Chubb Corporation.

As manager, Chubb & Son managed the business of insurance of these other companies and took all necessary actions in the name of and on behalf of these insurance companies so that policies of insurance could be sold in their names. Chubb & Son used Blaze Advisor in connection with selling insurance policies issued in the name of Federal and in the name of these other insurance companies.

Blaze Advisor software is a business rules management system. Blaze Advisor applications automate human decisioning. In this case, Chubb & Son used several Blaze Advisor applications to automate human decision making in connection with selling insurance.

Federal is one of the defendants to the lawsuit because Federal is responsible for the actions of its division, Chubb & Son. FICO contends that Chubb & Son breached three promises it made in the License Agreement for which Federal is responsible.

First, FICO contends that Paragraph 10.8, entitled "No Assignment," was breached. Federal and its division Chubb & Son were acquired by another company, called ACE INA Holdings, Inc. and underwent a change of control in 2016. This acquisition and change of control was the consequence of the acquisition of the Chubb Corporation, of which Chubb & Son and Federal were a part, by ACE Limited, of which ACE INA Holdings, Inc. was a part. The acquisition and change of control of the division Chubb & Son and Federal was an event "deemed to be an assignment" under Paragraph 10.8 of the License Agreement. Paragraph 10.8 required Chubb & Son to obtain FICO's written consent before the assignment event to continue the use of Blaze Advisor. Chubb & Son did not request FICO's prior written consent.

Second, FICO contends that Paragraph 3.1(iv) of the License Agreement, entitled "License Restrictions," was breached in two ways: (1) by permitting employees of foreign insurance companies to access and use Blaze Advisor and (2) by permitting third-party consultants to access and use Blaze Advisor without FICO's consent.

Because the License Agreement was breached, FICO gave written notice terminating the License Agreement in accordance with its termination provisions. The effective date of termination was March 31, 2016.

Third, FICO contends that Paragraph 9.3 of the License Agreement, entitled "Effect of Termination," was breached because Chubb & Son did not stop using Blaze Advisor after the License Agreement terminated. Blaze Advisor continued to be used by Federal in connection with selling insurance.

FICO contends that Chubb & Son used Blaze Advisor after termination of the License Agreement in connection with selling insurance for and on behalf of Federal, several wholly owned insurance company subsidiaries of Federal, and on behalf of several insurance company members of a pooling arrangement led by Federal. A "pooling arrangement" is an agreement amongst insurance companies to share their revenue and expenses. FICO contends these insurance companies were a single enterprise in the business of selling insurance.

FICO also contends that after the License Agreement terminated Chubb & Son also used Blaze Advisor in connection with selling insurance in the name of ACE American and insurance company subsidiaries of ACE American. ACE American and its subsidiary insurance companies were part of ACE Limited, the insurance company that acquired the Chubb Corporation.

Further, FICO contends the continued use of Blaze Advisor after the License Agreement terminated was copyright infringement. FICO contends this infringement of its copyrights was willful.

Federal denies that it breached the License Agreement or infringed FICO's copyrights.

### FICO's Statement of Claims against ACE American for copyright infringement

ACE American was a subsidiary of ACE Limited when ACE Limited acquired the Chubb Corporation. After the acquisition ACE Limited changed its name to Chubb Limited. Defendant ACE American and Federal became sister companies within the group of insurance companies known as Chubb Limited.

FICO contends that without its knowledge, ACE American took over the role of Federal and its division Chubb & Son as the manager of other insurance companies in connection with selling insurance. ACE American did so on January 1, 2017. As Chubb & Son had done before it, ACE American used Blaze Advisor in connection with selling insurance for and on behalf of Federal, several wholly owned insurance company

subsidiaries of Federal, ACE American, several wholly owned insurance company subsidiaries of ACE American, and on behalf of several insurance company members of the Federal led pooling arrangement and an ACE American led pooling arrangement.

FICO contends that ACE American was an unlicensed user of Blaze Advisor. ACE American is not a party to the License Agreement and has no rights under the License Agreement. FICO contends that ACE American's unlicensed use of Blaze Advisor is copyright infringement. FICO also contends this infringement of its copyrights by ACE American was willful.

FICO contends that ACE American also led a single enterprise of insurance companies. The ACE American single enterprise included wholly owned insurance company subsidiaries of ACE American, and the insurance company members of the pooling arrangement led by ACE American. ACE American used Blaze Advisor for the benefit of all the insurance companies in the ACE American single enterprise. ACE American also used Blaze Advisor in connection with selling insurance for the benefit of the Federal single enterprise.

ACE American denies that it infringed FICO's copyrights.

**Defendants' Statement of Counterclaims Against FICO**

Counterclaims are asserted against FICO "by Defendants." Yet, the counterclaims concede that ACE American was not a party to the License Agreement. It is alleged that FICO breached the License Agreement by improper termination.[1] The counterclaims also assert that FICO breached the covenant of good faith and fair dealing because it enforced Paragraph 10.8 of the License Agreement.[2]

FICO denies that termination of the License Agreement was improper and denies that it breached the covenant of good faith and fair dealing. FICO also denies that either Federal or ACE American were parties to the License Agreement.

*Defendants' proposal*

Ladies and gentlemen of the jury:  We are about to begin the trial of this case. We will start with the parties' opening statements. Before we do that, though, I must give you some preliminary instructions.

I am sorry that I have to read most of this to you. I know that it is not very exciting to sit and listen to someone read aloud. But there is a reason why I will be reading. Some of what I will be telling you has been agreed on by the parties, and I want to honor their agreement. Most of the rest of what I will be telling you has been recommended by the court of appeals, and I want to be careful to follow that court's recommendations closely.

---

[1] Dkt. 569, ¶¶ 17-21.

[2] *Id.*, ¶¶ 23-27.

Let me start by telling you a little more about this case:

Fair Isaac Corporation (which I will refer to by its familiar nickname FICO) owns a copyrighted software called Blaze Advisor. ~~Businesses can use Blaze Advisor software to build their own tailored business decision management applications, such as helping an insurance company determine what premium it should quote to a potential customer for a specific type of insurance.~~ Companies may use a set of rules to execute business decisions.  These rules can be implemented manually, by writing code, or by using a software such as Blaze Advisor.

In 2006 Federal Insurance Company, through its division Chubb and Son, entered into a ~~contract~~ License Agreement with FICO to license from FICO its Blaze Advisor software, which Federal used for internal business purposes. At the time of the License Agreement, Federal's parent company was Chubb Corporation (not to be confused with the division called Chubb and Son). In January, 2016, Federal's parent company Chubb Corporation ~~merged into~~was acquired by a company called ACE INA Holdings, Incorporated.  After the acquisition, the new company was called Chubb.

In this lawsuit FICO claims that this ~~merger~~acquisition constituted a prohibited assignment of the License Agreement and ~~that~~ as a result~~,~~ ~~that~~ Federal breached the License Agreement. ~~FICO also claims that because it breached~~ On March 31, 2016, FICO purported to terminate the License Agreement based on Federal's ~~and ACE's use of~~alleged breach.  FICO claims that  Federal and its affiliates continued to use Blaze Advisor after ~~the merger~~FICO validly terminated the License Agreement and that such use infringed FICO's copyright on Blaze Advisor. FICO ~~terminated the License Agreement on March 31, 2016. FICO says the License Agreement allowed it to end the contract. FICO~~ claims that Federal's and ~~Ace's~~ACE's conduct caused damage to FICO.

Federal and ACE deny FICO's claims. Federal says that it did not breach the License Agreement and that, FICO, by improperly terminating the Agreement and unreasonably withholding consent to use of Blaze after the ACE acquisition, was the one who breached the contract. Federal also argues that FICO's conduct violated ~~something called~~ the covenant of good faith and fair dealing. ~~Federal claims it was damaged by FICO's breach of the Agreement and of the covenant.~~The covenant of good faith a fair dealing is implied in all contracts and requires a party to act in good faith and deal fairly with the other party in fulfilling its contractual obligations.  Federal claims that FICO's conduct caused damage to Federal.

Finally, Federal and ACE claim that ~~their use of~~ neither improperly used Blaze Advisor after the ~~merger~~acquisition ~~was proper under the License Agreement~~ and therefore they have not infringed FICO's copyrights.

These are the issues you will have to decide in this trial: Did Federal breach the contract? ~~If it breached the contract did that breach cause damage to FICO and if so, how much?~~ Did either Federal or ACE infringe FICO's copyrights in Blaze Advisor ~~and if~~?  If so, ~~how much~~what actual damage, if any, did FICO sustain as a result?  You will also

have to decide whether FICO beached the License Agreement or the covenant of good faith and fair dealing, and, if so, how much damage, if any, did Federal sustain as a result.

~~Finally, I may ask your advice on something called disgorgement of profit. If you find Federal or ACE infringed FICO's copyrights, FICO may be entitled to recover the profits that Federal or ACE made from its infringing use. I said I may ask your advice on the amount of profits because I have decided that under the law that issue is for the court rather than the jury to decide. It is not unusual in such a circumstance for a judge to ask the jury for advice because you will have heard the evidence and I want the benefit of your wisdom.~~

**Instruction No. 2: Preliminary Instructions**

***Plaintiff's proposal***

I will now take a few moments to give you some initial instructions about this case and about your duties as jurors. At the end of the trial, I will give you further instructions. I may also give you instructions during the trial. Unless I tell you otherwise, all of my instructions—both those I give you now and those I give you later—are equally binding and must be followed.

As I have just described, this is a civil case brought by FICO against Federal for breach of the License Agreement and copyright infringement and against ACE American for copyright infringement. There is also a claim by Federal against FICO for breach of the License~~ing~~ Agreement and ~~unfair dealing~~ the covenant of good faith and fair dealing. It will be your duty to decide from the evidence whether either party is liable to the other on any of these claims.

From the evidence you will decide what the facts are. You are entitled to consider the evidence in the light of your own observations and experiences in the affairs of life. You may use reason and common sense to draw deductions or conclusions from the facts that have been established by the evidence. You will then apply those facts to the law that I give you in these and in my other instructions, and in that way reach your verdict. You are the sole judges of the facts, but you must follow the law as stated in my instructions, whether you agree with it or not.

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness said, or only part of it, or none of it.

In deciding what testimony to believe, consider the witnesses' intelligence, their opportunity to have seen or heard the things they testify about, their memories, any motives they may have for testifying a certain way, their manner while testifying, whether they said something different at an earlier time, the general reasonableness of their testimony, and the extent to which their testimony is consistent with other evidence that you believe.

Do not allow sympathy or prejudice to influence you. The law demands of you a just verdict, unaffected by anything except the evidence, your common sense, and the law as I give it to you.

You should not take anything that I may say or do during the trial as indicating what I think of the evidence or what I think your verdict should be. I may for example ask a question of a witness. If I do, it is only to make certain that I understand the witness's testimony. It is not to imply that I believe or do not believe the witness, or that I think particular testimony is or is not important, or that I have any view whatsoever about the case. If at any time I slip and make a comment about the facts, you should disregard it. I

15

decide all questions of law that arise during trial, but you jurors decide all questions of fact.

***Defendants' proposal***

Defendants would adopt the Court's proposed instruction.

**Instruction No. 3: Evidence; Direct and Circumstantial**

I have mentioned the word "evidence." "Evidence" includes the testimony of witnesses; documents and other things received as exhibits; any facts that have been stipulated—that is, formally agreed to by the parties; and any facts that have been judicially noticed—that is, facts that I say you may, but are not required to, accept as true, even without evidence.

Certain things are not evidence. I will list those things for you now:

(1)    Statements, arguments, questions, and comments by a lawyer are not evidence.

(2)    Objections are not evidence. The parties have a right and sometimes an obligation to object when they believe something is improper. You should not be influenced by the objection; you should not, for example, be prejudiced in any way against an attorney who makes an objection or the party whom he or she represents. If I sustain an objection to a question or an exhibit, you must ignore the question or the exhibit and must not try to guess what the information might have been.

(3)    Testimony and exhibits that I strike from the record, or tell you to disregard, are not evidence and must not be considered.

(4)    Exhibits that are identified by a party but are not received in evidence are not evidence.

(5)    Anything you see or hear about this case outside the courtroom is not evidence.

Furthermore, a particular item of evidence is sometimes received for a limited purpose only. That is, it can be used by you only for one particular purpose, and not for any other purpose. I will tell you when that occurs and instruct you on the purposes for which the item can and cannot be used. You should pay particularly close attention to such an instruction, because, unlike the final instructions that I will give to you at the end of the case, an instruction about a particular piece of evidence may not be available to you in writing later in the jury room.

Finally, some of you may have heard the terms "direct evidence" and "circumstantial evidence." You are instructed that you should not be concerned with those terms. The law makes no distinction between direct and circumstantial evidence. You should give all evidence the weight and value you believe it is entitled to receive.

**Instruction No. 4: Burden of Proof**

Your verdict will depend on whether you find that certain facts have been proved by the greater weight of the evidence. To prove something by the greater weight of the evidence is to prove that it is more likely true than not true.

To determine whether a fact is more likely true than not true, you must consider all of the evidence and decide which evidence is more believable. If, on any issue in the case, the evidence is equally balanced, you cannot find that the fact has been proved.

You may have heard the phrase "proof beyond a reasonable doubt." That is a stricter standard and applies only in criminal cases. It does not apply in civil cases such as this one. You should, therefore, put it out of your minds.

**Instruction No. 5: Credibility of the Witnesses**

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness said, or only part of it, or none of it.

You may consider a witness's intelligence; the opportunity the witness had to see or hear the things testified about; a witness's memory, knowledge, education, and experience; any reasons a witness might have for testifying a certain way; how a witness acted while testifying; whether a witness said something different at another time; whether a witness's testimony sounded reasonable; and whether or to what extent a witness's testimony is consistent with other evidence you believe.

In deciding whether to believe a witness, remember that people sometimes hear or see things differently and sometimes forget things. You will have to decide whether a contradiction is an innocent mis-recollection, or a lapse of memory, or an intentional falsehood; that may depend on whether it has to do with an important fact or only a small detail.

[Note: The instruction repeats the Credibility of the Witnesses instruction from the Jury Instruction at End of Trial. The parties would also present the instruction before the jury hears the evidence.]

**Instruction No. 6: Impeachment**

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something or has failed to say or do something that is inconsistent with the witness's present testimony.

If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness's other testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.[3]

---

[3] O'Malley, Grenig & Lee, 3 Fed. Jury Prac. & Instr. § 105:04 (6th ed. 2022).

**Instruction No. 7: Opinion**

***Plaintiff's proposal***

~~You have heard testimony from several expert witnesses in this case William McCarter, Dr. Steven Kursh, W. Christopher Bakewall, R. Bickley Whitener, Brooks Hilliard and Neil Zoltkowski—all of whom testified to their opinions and the reasons for those opinions. This opinion testimony is allowed because of the education or experience of this witness.~~

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions. An exception to this rule exists as to those whom we call "expert witnesses." Witnesses who, by education and experience, have become expert in some art, science, profession, or calling, may state their opinions as to relevant and material matters, in which they profess to be expert, and may also state their reasons for the opinion.

You should judge this opinion testimony just as you would any other testimony. You may accept it or reject it and give it the weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all other evidence in this case.[4]

[Note: The instruction is substantially similar as the Opinion instruction from the Jury Instruction at End of Trial. Plaintiff would also present the instruction before the jury hears the evidence.]

***Defendants' proposal***

You have heard testimony from several expert witnesses in this case—William McCarter, Dr. Steven Kursh, W. Christopher ~~Bakewall~~Bakewell, R. Bickley Whitener, Brooks Hilliard and Neil Zoltkowski—all of whom testified to their opinions and the reasons for those opinions. This opinion testimony is allowed because of the education or experience of ~~this witness~~these witnesses.

You should judge this opinion testimony just as you would any other testimony. You may accept it or reject it and give it the weight you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all other evidence in this case.

---

[4] 8th Cir. Civ. Jury Instr. § 3.05 (2021).

**Instruction No. 8: Deposition Testimony**

Testimony may be presented to you in the form of a deposition. A deposition is the recorded answers a witness made under oath to questions asked by lawyers before trial. The deposition testimony to be offered may be recorded in writing and read to you or electronically videotaped and that recording played for you. You should consider the deposition testimony, and judge its credibility, as you would that of any witness who testifies here in person. You should not place any significance on the manner or tone of voice used to read the witness's answers to you.[5]

---

[5] 8th Cir. Civ. Jury Instr. § 2.14 (2021).

**Instruction No. 9: Bench Conferences and Recesses**

During the trial, it may be necessary for me to talk with the attorneys out of your hearing, either by having a bench conference here while you are present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is to decide how certain evidence is to be treated under the rules of evidence, and to avoid confusion and error. We will, of course, do what we can to keep the number and length of these conferences to a minimum.

**Instruction No. 10: Attention and Notes**

At the end of the trial, you must make your decision based on what you recall of the evidence. You will not have a written transcript to consult, and it may not be practical for the court reporter to read back lengthy testimony. You must pay close attention to the testimony as it is given.

If you wish, however, you may take notes to help you remember what witnesses said. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. And do not let note-taking distract you so that you do not hear other answers by the witnesses.

We have provided each of you with a notebook and a pen or pencil. Please write your name on the first page of the notebook and begin taking notes on the second page. At each recess, leave the notebooks on your chairs. When you leave at night, your notes will be locked in my chambers and not read by anyone.

## Instruction No. 11: Conduct of the Jury

To ensure fairness, you must obey the following rules:

First, do not talk among yourselves about this case, or about anyone involved with it, until the end of the case when you go to the jury room to decide on your verdict.

Second, do not talk with anyone else about this case or about anyone involved with it until the trial has ended and you have been discharged as jurors. This includes family members and friends. You may tell people that you are serving as a juror, but do not tell them anything else about the case.

I know that many of you use cell phones, smart phones, tablets, laptop computers, and other tools of technology. You must not use these or any other devices to communicate with anyone about this case, including your family and friends. That means that you must not call or text or email anyone about this case and you must not communicate about this case on Facebook, or Twitter, Snapchat, Instagram, TikTok, or any other social media. Please let me know immediately if you become aware that any juror has violated these instructions.

Third, when you are outside the courtroom, do not let anyone tell you anything about the case or about anyone involved with it until the trial has ended and your verdict has been accepted. If someone should try to talk to you about the case during the trial, please report it to me immediately.

Fourth, during the trial you should not talk with or speak to any of the parties, lawyers, or witnesses involved in this case. You should not even pass the time of day with any of them. It is important not only that you *do* justice in this case, but that you also give the *appearance* of doing justice. If a person from one side of the case sees you talking to a person from the other side—even if it is simply to comment on the weather—an unwarranted and unnecessary suspicion about your fairness might be aroused. If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to speak to you either.

Fifth, do not read any news stories or articles—whether in print or on the Internet—about the case or about anyone involved with it, or listen to any radio or television reports about the case or about anyone involved with it.

Sixth, do not do any research or make any investigation on your own about any matter involved in this case. You must decide this case based solely on the evidence presented here within the four walls of this courtroom. This means that, during the trial, you must not conduct any independent research about this case, the subject matter of this case, or the individuals or entities involved in this case. For example, you must not consult dictionaries or other reference materials, search the Internet, or use any electronic devices to obtain information about this case or to help you decide this case. You must learn about this case only from the evidence that you receive here at the trial and from the law as I give it to you.

25

Seventh, during the trial, the lawyers and I will often be discussing legal and evidentiary matters before trial resumes in the morning, during the breaks, and after trial adjourns in the evening. You are not permitted to hear these discussions. Therefore, you should never enter the courtroom, except when I or a member of my staff bring you in a group. And you should not talk to anyone who was present in the courtroom about what he or she may have seen or heard in the courtroom while you were absent.

Eighth, you may use cell phones in the jury room until you retire to deliberate on your verdict but please leave your cell phones in the jury room or power them off before bringing them into the courtroom. Cell phones are not permitted in the jury room during deliberation.

Finally, do not make up your mind during the trial about what the verdict should be. Keep an open mind until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence.

**Instruction No. 12: Outline of Trial**

First, FICO's attorney will make an opening statement. Next, ~~Federal's~~Federal and ACE's attorney may make an opening statement. An opening statement is not evidence but is simply a summary of what the attorney expects the evidence to be.

FICO will then present evidence and call witnesses during their case-in-chief, and counsel for Federal may cross-examine those witnesses. Following FICO's case-in-chief, Federal may present evidence and call witnesses during its case-in-chief, and FICO's counsel may cross-examine those witnesses. Each party may call witnesses to testify live, or play portions of testimony they have previously given in depositions. After Federal is done presenting its case-in-chief, first FICO and then Federal may be given a limited opportunity to present rebuttal evidence or call rebuttal witnesses.

After presentation of evidence is completed, the parties will make their closing arguments to summarize and interpret the evidence for you. As with opening statements, closing arguments are not evidence. I will then instruct you further on the law, and I will give you written copies of my instructions to take back to the jury room with you. After that, you will retire to deliberate on your verdict.

27

**Instruction No. 13: Questions**

Jurors are not permitted to ask questions of witnesses or lawyers. That is true, as a general matter, in the federal courts, and the United States Court of Appeals for the Eighth Circuit-which hears appeals from this Court-has strongly discouraged the practice. So please do not interrupt the trial by attempting to ask a question of a lawyer or witness.

I should note, though, that at the end of the trial, after you have returned your verdict and been discharged as jurors, I will meet with you privately in the jury room. At that time, I will be happy to answer any questions that you might have. Thus, if you are curious about something that happens during trial, you might want to make a note about it, so that you can remember to ask me about it after the trial is concluded.

If, during the trial, you are unable to hear a witness or lawyer-or you are unable to see an exhibit-please raise your hand immediately and I will see that this is corrected.

**Instruction No. 14: Schedule**

It is difficult for me to tell you exactly what our schedule will be over the next three weeks. The parties try to present their cases in an orderly manner, but not everything is within their control. For example, sometimes particular witnesses can only be scheduled for certain days or certain times. Also, my own schedule is unpredictable. I have about 300 other cases assigned to me, and I cannot ignore my other cases while I am trying this case. Sometimes I will have to handle motions and other matters that arise in my other cases.

With that in mind, I can tell you that, generally speaking, we will convene each day at about 8:45 am, and we will recess each evening at about 4:30 pm. We will generally take a lunch break from about 12:00 noon to about 1:15 pm. We will also generally take a 15-minute break in the morning and a 15-minute break in the afternoon. We will meet every day until the trial is finished, with the exception of Monday, February 20, which is President's Day.

Now, in telling you about our schedule, I have used the word "generally." There may be days when we will start an hour or so late, or end an hour or so early, because something has arisen in one of my other cases. Also, if, for example, a witness is almost finished with her testimony, we may go a few minutes into the lunch break. Or if a witness finishes testifying at, say, 4:20 pm, we may just adjourn for the night.

Every time we take a break or we adjourn for the night, I will tell you exactly when you need to be back in the jury room. It is extremely important that you follow my instructions. We cannot start trial until all of you are here-so, if you are late, the judge, and the other jurors, and the attorneys, and the parties, and the witnesses, and the court staff, and everyone else will have to wait for you. Please do not let that happen.

**Instruction No. 15: Recesses**

Let me give you an important instruction about these recesses, and then I will be done. During any recess, you must not discuss this case with anyone, including the other jurors, members of your family, people involved in the trial, or anyone else. If anyone tries to talk to you about the case, please let me know about it immediately. Do not read, watch, or listen to any news reports of the trial. Finally, keep an open mind until all the evidence has been received and you have heard the views of your fellow jurors.

I may not repeat these things to you before every recess, but you must follow these instructions throughout the trial.

**Instruction No. 16: Concluding Note**

That concludes my preliminary instructions. I just want to add one thing: If, at any time during this trial, you have any questions or there is anything we can do to make you more comfortable, please let me or a member of the court staff know.

**PART III: JURY INSTRUCTIONS AT END OF TRIAL**

**Instruction No. 17: Preliminary Note**

Members of the jury, the instructions I gave at the beginning of the trial and during the trial are still in effect. Now I am going to give you additional instructions.

You have to follow all of my instructions – the ones I gave you earlier, as well as those I give you now. Do not single out some instructions and ignore others, because they are all important. This is true even though I am not going to repeat some of the instructions I gave you at the beginning of or during the trial.

You will have copies of the instructions I am about to give you now in the jury room. Remember, you have to follow all instructions, no matter when I give them, whether or not you have written copies.

**Instruction No. 18: Burden of Proof**

You must decide whether certain facts have been proved by the greater weight of the evidence. A fact has been proved by the greater weight of the evidence, if you find that it is more likely true than not true. You decide that by considering all of the evidence and deciding what evidence is more believable.

You have probably heard the phrase "proof beyond a reasonable doubt." That is a stricter standard than "more likely true than not true." It applies in criminal cases, but not in this civil case; so put it out of your mind.

**Instruction No. 19: Credibility of the Witnesses**

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness said, or only part of it, or none of it.

You may consider a witness's intelligence; the opportunity the witness had to see or hear the things testified about; a witness's memory, knowledge, education, and experience; any reasons a witness might have for testifying a certain way; how a witness acted while testifying; whether a witness said something different at another time; whether a witness's testimony sounded reasonable; and whether or to what extent a witness's testimony is consistent with other evidence you believe.

In deciding whether to believe a witness, remember that people sometimes hear or see things differently and sometimes forget things. You will have to decide whether a contradiction is an innocent mis-recollection, or a lapse of memory, or an intentional falsehood; that may depend on whether it has to do with an important fact or only a small detail.

**Instruction No. 20: Impeachment**

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something or has failed to say or do something that is inconsistent with the witness's present testimony.

If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness's other testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.[6]

---

[6] O'Malley, Grenig & Lee, 3 Fed. Jury Prac. & Instr. § 105:04 (6th ed. 2022).

**Instruction No. 21: Opinion**

You have heard testimony from several expert witnesses in this case—William McCarter, Dr. Steven Kursh, W. Christopher ~~Bakewall~~Bakewell, R. Bickley ("Bick") Whitener, Brooks Hilliard and Neil ~~Zoltkowski~~Zoltowski—all of whom testified to their opinions and the reasons for those opinions. This opinion testimony is allowed because of the education or experience of ~~this witness~~these witnesses.

You should judge this opinion testimony just as you would any other testimony. You may accept it or reject it and give it the weight you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all other evidence in this case.

**Instruction No. 22: Deposition Testimony**

Testimony may be presented to you in the form of a deposition. A deposition is the recorded answers a witness made under oath to questions asked by lawyers before trial. The deposition testimony to be offered may be recorded in writing and read to you or electronically videotaped and that recording played for you. You should consider the deposition testimony, and judge its credibility, as you would that of any witness who testifies here in person. You should not place any significance on the manner or tone of voice used to read the witness's answers to you.[7]

---

[7] 8th Cir. Civ. Jury Instr. § 2.14 (2021).

**Instruction No. 23: Demonstratives**

Certain charts and summaries have been shown to you in order to help explain the facts disclosed by the books, records, or other underlying evidence in the case. Those charts or summaries are used for convenience. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts shown by the evidence in the case, you should disregard these charts and summaries and decide the facts from the books, records, or other underlying evidence.

**Instruction No. 24: Judge's Opinion**

I have not intended to suggest what I think your verdict[s] should be by any of my rulings or comments during the trial.

[During this trial I have asked some questions of witnesses. Do not try to guess my opinion about any issues in the case based on the questions I asked.]

**Instruction No. 25: Breach of Contract**

***Plaintiff's proposal***

    <u>Plaintiff's proposed Instruction No. 25(a): Existence of Contract</u>

    <u>The evidence in this case includes Exhibit \_\_, which is the License Agreement and its Amendments One and Two. Collectively, these will be referred to as the License Agreement. You are instructed that the License Agreement is a valid and enforceable contract. [8]</u>

    <u>Plaintiff's position on proposed Instruction No. 25(a)</u>

    FICO's proposed instruction necessarily sets the scene for the jury, explaining the existence of the License Agreement and that there is no dispute that the contract is valid and enforceable.

---

[8] <u>N.Y Pattern Jury Instr. – Civil 4:1 (3d ed. 2022); *JP Morgan Chase v. J.H. Elec. of N.Y., Inc.*, 893 N.Y.S.2d 237, 239 (App. Div. 2nd Dept. 2010); *Furia v. Furia*, 498 N.Y.S.2d 12, 13 (App. Div. 1986).</u>

Plaintiff's proposed Instruction No. 25(b)(1): Paragraph 10.8 — Assignment Defined

Paragraph 10.8 of the License Agreement is entitled "No Assignment." An "assignment" is the transfer of the rights and obligations of the License Agreement from one entity to another entity.[9]

Plaintiff's position on proposed Instruction No. 25(b)(1)

FICO's proposed instruction directs the jury to Paragraph 10.8, one of the provisions FICO alleges is breached, which is necessary to focus the jury's attention on the disputed issues. The proposed instruction is in accordance with the Court's ruling and articulation of Paragraph 10.8. (Dkt. 731 at 46 ("Under the plain language of the first sentence, Federal was not permitted to "assign or transfer" the License Agreement without the prior written consent of FICO. And any attempt to do so without FICO's written consent would be "void and of no force or effect" under the plain language of the third sentence of Section 10.8.").

---

[9] Restatement (Second) of Contracts § 317 (1981); 29 Williston on Contracts § 74:1 (4th ed.); *see also, e.g.*, *Weisenthal v. United Health Care Ins. Co.*, 2007 U.S. Dist. LEXIS 91447, at *13 (S.D.N.Y. Nov. 29, 2007) (applying New York law; "Generally speaking, an assignment is a contractual agreement that transfers to an assignee the assignor/obligee's right to demand performance from the obligor.").

Plaintiff's proposed Instruction No. 25(b)(2) — Breach of Paragraph 10.8

I have determined as a matter of law that under the first sentence of Paragraph 10.8, Chubb & Son was not permitted to "assign or transfer" the License Agreement without the prior written consent of FICO.[10] I have also determined as a matter of law that any attempt to "assign or transfer" without FICO's prior written consent would be "void and of no force or effect" under the third sentence of Paragraph 10.8.[11]

As a result of the acquisition of the Chubb Corporation, Federal and its division Chubb & Son were acquired by another company and underwent a change of control. I have determined that this was an event "deemed to be an assignment" under Paragraph 10.8.[12]

There is no dispute that before the assignment event the Chubb Corporation was a $12 billion group of insurance companies. There is also no dispute that after the assignment event Chubb Limited was a $30+ group of insurance companies.

It is also undisputed that Chubb & Son did not request (or receive) FICO's prior consent to the use of Blaze Advisor before the assignment event under Paragraph 10.8.

The dispute centers on the meaning of the phrase "expanded use" in the second part of the second sentence of Paragraph 10.8. FICO contends that Paragraph 10.8 was breached when its prior written consent was not requested before the assignment event. FICO contends the phrase "and shall make no expanded use of the Fair Isaac Products as a result of any such event unless and until Fair Isaac provides such written consent" means that during negotiations to cure the breach, the use of Blaze Advisor must be no different than it was before the assignment event; the status quo must be maintained.

FICO also contends that the use of Blaze Advisor in fact expanded after the assignment because Blaze Advisor was used in connection with selling insurance in the name of more companies than before; the additional insurance companies being ones that formerly were part of ACE Limited.

Federal contends that Paragraph 10.8 was not breached because FICO's prior written consent was required only if use expanded. And, Federal contends the use of Blaze Advisor did not expand after the assignment event.[13]

---

[10] Dkt. 731 at 46.

[11] *Id.*

[12] *Id.*

[13] Dkt. 445 at 13; Dkt. 507 at 14-15; FICO0000055-56, Federal Commercial Proposal dated Feb. 25, 2016 ("Under the above proposal, Chubb shall have the right to change the applications utilizing the Blaze Advisor software at any time in its sole discretion without FICO's consent so long as the named applications do not exceed an amount of fifteen (15).").

You must determine what the parties intended by the phrase "and shall make no expanded use of the Fair Isaac Products as a result of any such event unless and until Fair Isaac provides such written consent" at the time the License Agreement was signed.

Separately, you must also determine if the use of Blaze Advisor in fact expanded after the assignment event.[14]

I will instruct you now on the factors you may consider in determining the meaning of "and shall make no expansion of use."

Plaintiff's position on proposed Instruction No. 25(b)(2)

FICO's proposed instruction is in accordance with the Court's ruling regarding Paragraph 10.8 (Dkt. 731), relevant facts that are not in dispute, and the issues the jury needs to consider. The instruction limits the issue for consideration to the breach of Paragraph 10.8, leaving breaches of Paragraph 3.1(iv) and Paragraph 9.3 to other instructions.

The instruction is in accordance with the Court's finding that the "Client" is "Chubb & Son, a division of Federal Insurance Company." (Dkt. 731 at 42.) The instruction properly states the breach as acts of Chubb & Son and not of Federal. There is no evidence supporting any contention that Chubb & Son ever requested FICO's consent before the assignment event to the continued use Blaze Advisor.

---

[14] Dkt. 731 at 45.

Plaintiff's proposed Instruction No. 25(b)(3) — Extrinsic Evidence

When the parties' intent at the time of contracting is disputed, you must decide the meaning the parties intended when they entered into the License Agreement.[15]

You should consider the plain meaning of the words used in the License Agreement itself. In addition, you should also consider:

- The meaning of the words as used in the full context of Paragraph 10.8;

- Paragraph 10.8 in its full context within the License Agreement;

- The commercial purpose of Paragraph 10.8 overall; and

- The parties' negotiations related to Paragraph 10.8.[16]

Plaintiff's position on proposed Instruction No. 25(b)(3)

FICO's proposed instruction addresses the controlling law regarding contract interpretation and the consideration of extrinsic evidence as applied to the breach of Paragraph 10.8. This law is reflected in the cited footnotes.

---

[15] Dkt. 731 at 48-49. *See also* N.Y. Pattern Jury Instr.—Civil 4:1 (3d ed. 2022); *Brown Bros. Elec. Contractors, Inc. v. Beam Constr. Corp.*, 41 N.Y.2d 397, 399-400, 393 N.Y.S.2d 350, 352, 361 N.E.2d 999, 1001 (1977) ("In determining whether the parties entered into a contractual agreement and what were its terms, it is necessary to look, rather, to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds. In doing so, disproportionate emphasis is not to be put on any single act, phrase or other expression, but, instead, on the totality of all of these, given the attendant circumstances, the situation of the parties, and the objectives they were striving to attain.") (citations omitted); *United States Naval Inst. v. Charter Commc'ns, Inc.*, 875 F.2d 1044, 1048 (2d Cir. 1989) ("In determining the meaning of an ambiguous contract term, the finder of fact seeks to fathom the parties' intent.").

[16] N.Y. Pattern Jury Instr.—Civil 4:1; *United States Naval Inst.*, 875 F.2d at 1048–49 (2d Cir.1989); *Space Imaging Europe, Ltd. v. Space Imaging L.P.*, 38 F.Supp.2d 326, 334 (S.D.N.Y.1999); *Wolfson v. Faraci Lange, LLP*, 959 N.Y.S.2d 792, 794 (App. Div. 2013); *T.L.C. W., LLC v. Fashion Outlets of Niagara, LLC*, 875 N.Y.S.2d 367, 368-69 (App. Div. 2009); *Waverly Corp. v. New York*, 851 N.Y.S.2d 176, 179 (App. Div. 2008); *Federal Ins. Co. v. Am. Ins. Co.*, 691 N.Y.S.2d 508, 511-13 (App. Div. 1999).

45

Plaintiff's proposed Instruction No. 25(c)(1) — Foreign Insurance Companies

Paragraph 3.1(iv) of the License Agreement prohibited making Blaze Advisor available to persons not employees of Chubb & Son.[17] It is undisputed that foreign insurance companies and their employees accessed and used Blaze Advisor in connection with selling insurance.[18]

The parties dispute whether these foreign insurance companies and their employees were licensed to use Blaze Advisor. Amendment Two to the License Agreement provides that "Client and its Affiliates" are licensed to use Blaze Advisor.

I have determined as a matter of law that the License Agreement defines the "Client" as "Chubb and Son, a division of Federal Insurance Company."[19] Chubb & Son is not a legal entity because it is unincorporated.[20] The parties agree that Chubb & Son, a division, does not have any "Affiliates."[21]

Because the License Agreement defines the "Client" as "Chubb and Son, a division of Federal Insurance Company,"[22] and because Chubb & Son has no "Affiliates" as defined by the License Agreement,[23] FICO contends the phrase "Client and its Affiliates" in Amendment Two has no application to the facts of this case. Consequently, FICO contends that these foreign insurance companies and their employees were not licensed to use Blaze Advisor under Paragraph 3.1(iv).

Federal contends that "Client and its Affiliates" should include Federal and its affiliates because otherwise Amendment Two, which expanded the scope of the license to "enterprise wide," would have had no purpose.[24] Federal and FICO agree the foreign

[17] Dkt. 731 at 37-38, 41-42.

[18] Federal's Second Supp. Resp. to Interrogatory No. 3, June 21, 2018 (identifying entities that used Blaze Advisor: "(2) Chubb Insurance Company of Canada, including through its relationship with AppCentrica, and (3) Chubb Insurance Company of Australia Limited, including through its relationship with the DWS Group.").

[19] Dkt. 731 at 42 ("The License Agreement defines 'Client' as 'Chubb & Son, a division of Federal Insurance Company.'").

[20] Dkt. 731 at 42-43 ("It is undisputed that Chubb & Son is not a legal entity because it is unincorporated.").

[21] Dkt. 731 at 44; Taylor Dep., 38:1-17.

[22] Dkt. 731 at 42.

[23] Id. at 44.

[24] Dkt. 731 at 42 ("And Defendants contend that, because the December 2006 amendment to the License Agreement expanded the Blaze Advisor license to be 'enterprise-wide'—namely, to include Chubb & Son and its affiliates—the parties intended the enterprise-wide license to include *Federal's* affiliates given that Chubb & Son has no affiliates.") (emphasis in original).

insurance companies and their employees who used Blaze Advisor in connection with selling insurance were "Affiliates" of Federal.

FICO contends Amendment Two expanded the scope of rights of the Client, Chubb & Son, a division of Federal, to include "enterprise-wide" rights. Amendment Two expanded the scope of the Client's use from a divisional use, the rights granted by Amendment One, to "enterprise-wide."

If you find that the term "Client and its Affiliates" in Amendment Two has no application to the facts of this case, then I instruct you that Paragraph 3.1(iv) was breached, and that FICO properly terminated the License Agreement. If you find the term includes Federal and its affiliates, then I instruct you that Paragraph 3.1(iv) was not breached.

I will instruct you now regarding the factors you may consider in determining the parties' intent regarding "Client and its Affiliates."

Plaintiff's position on proposed Instruction No. 25(c)(1)

FICO's proposed instruction is in accordance with the Court's finding that the "Client" of the License Agreement is "Chubb & Son, a division of Federal Insurance Company (Dkt. 731 at 42), and Chubb & Son's admitted disclosures of Blaze Advisor to foreign entities. The instruction also acknowledges the unambiguous language of Paragraph 3.1(iv) of the License Agreement, which prohibited making Blaze Advisor available to persons not employees of the named "Client," Chubb & Son. The instruction states the breach as acts of Chubb & Son and not of Federal. These facts are reflected in the cited footnotes.

The instruction properly instructs the jury that the term "Affiliates" in Amendment Two has no application to the facts of the case. The License Agreement can only be read one way, and the provision is not ambiguous. *See Fiore v. Fiore*, 415 N.Y.S.2d 826, 826 (1979); *see also Brown v. Bldg. Engines, Inc.*, No. 1:21-cv-10893, 2022 U.S. Dist. LEXIS 71112, at *18 (S.D.N.Y. Apr. 15, 2022); *Ran First Assocs. v. 363 E. 76th St. Corp.*, 747 N.Y.S.2d 13, 15 (App. Div. 1st Dept. 2002). Neither the Court nor the jury may by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing. *Vermont Teddy Bear Co. v. 538 Madison Realty Co.*, 775 N.Y.S.2d 765, 768, 807 N.E.2d 876, 879-80 (2004); *Reiss v. Fin. Performance Corp.*, 738 N.Y.S.2d 658, 661, 764 N.E.2d 958, 961 (2001).

The instruction also limits the issues to those of Paragraph 3.1(iv), leaving breaches of Paragraph 10.8 and Paragraph 9.3 to other instructions.

Plaintiff's proposed Instruction No. 25(c)(2) — Extrinsic Evidence

In determining whether the phrase "Client and its Affiliates" has any application to the facts of the case, you should consider:[25]

- Amendment Two in its full context within the License Agreement, meaning the original application license and the divisional license of Amendment One;

- The commercial purpose of Amendment Two;

- Any negotiations by the parties of Amendment Two and the term "Client and its Affiliates" at the time Amendment Two was made; and

- Any negotiation by the parties relating to the term "Client and its Affiliates" in Amendment Two during their efforts to resolve the dispute.[26]

After considering this evidence, you may conclude that the phrase "Clients and its Affiliates" has no application to the facts of this case.[27]

Plaintiff's position on proposed Instruction No. 25(c)(2)

FICO's proposed instruction properly addresses controlling law regarding contract interpretation and the consideration of extrinsic evidence with respect to the breach of Paragraph 3.1(iv). This law is reflected in the cited footnotes.

---

[25] N.Y. Pattern Jury Instr.—Civil 4:1 (3d ed. 2022); *Brown Bros. Elec. Contractors, Inc. v. Beam Constr. Corp.*, 393 N.Y.S.2d 350, 352, 361 N.E.2d 999, 1001 (1977) ("In determining whether the parties entered into a contractual agreement and what were its terms, it is necessary to look, rather, to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds. In doing so, disproportionate emphasis is not to be put on any single act, phrase or other expression, but, instead, on the totality of all of these, given the attendant circumstances, the situation of the parties, and the objectives they were striving to attain.") (citations omitted); *United States Naval Inst. v. Charter Commc'ns, Inc.*, 875 F.2d 1044, 1048 (2d Cir. 1989) ("In determining the meaning of an ambiguous contract term, the finder of fact seeks to fathom the parties' intent.").

[26] N.Y. Pattern Jury Instr.—Civil 4:1; *United States Naval Inst.*, 875 F.2d at 1048-49; *Space Imaging Europe, Ltd. v. Space Imaging L.P.*, 38 F.Supp.2d 326, 334 (S.D.N.Y.1999); *Wolfson v. Faraci Lange, LLP*, 959 N.Y.S.2d 792, 794 (App. Div. 2013); *T.L.C. W., LLC v. Fashion Outlets of Niagara, LLC*, 875 N.Y.S.2d 367, 368-69 (App. Div. 2009); *Waverly Corp. v. New York*, 851 N.Y.S.2d 176, 179 (App. Div. 2008); *Federal Ins. Co. v. Am. Ins. Co.*, 691 N.Y.S.2d 508, 511-13 (App. Div. 1999).

[27] Dkt. 731 at 41 n.12 (citing *Ajdler v. Province of Mendoza*, 890 F.3d 95, 100 (2d Cir. 2018)).

FICO's proposed instruction is in accordance with the Court's finding that the "Client" of the License Agreement is "Chubb & Son, a division of Federal Insurance Company" (Dkt. 731 at 42), and Chubb & Son's admitted disclosures of Blaze Advisor to foreign entities. The instruction also acknowledges the unambiguous language of Paragraph 3.1(iv) of the License Agreement, which prohibited making Blaze Advisor available to persons not employees of the named client, Chubb & Son. These facts are reflected in the cited footnotes.

The instruction properly instructs the jury that the term "Affiliates" in Amendment Two has no application to the facts of the case. The License Agreement can only be read one way, and the provision is not ambiguous. *See Fiore v. Fiore*, 415 N.Y.S.2d 826, 826 (1979); *see also Brown v. Bldg. Engines, Inc.*, No. 1:21-cv-10893, 2022 U.S. Dist. LEXIS 71112, at *18 (S.D.N.Y. Apr. 15, 2022); *Ran First Assocs. v. 363 E. 76th St. Corp.*, 747 N.Y.S.2d 13, 15 (App. Div. 1st Dept. 2002). Neither the Court nor the jury may by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing. *Vermont Teddy Bear Co. v. 538 Madison Realty Co.*, 775 N.Y.S.2d 765, 768, 807 N.E.2d 876, 879-80 (2004); *Reiss v. Fin. Performance Corp.*, 738 N.Y.S.2d 658, 661, 764 N.E.2d 958, 961 (2001).

<u>Plaintiff's proposed Instruction No. 25(c)(3) — Reasonable Construction</u>

<u>The parties are bound by the terms of the License Agreement as written. In construing the term "Client and its Affiliates," you may not distort the meaning of the words used to add a provision the parties neglected to include.</u>[28]

<u>Plaintiff's position on proposed Instruction No. 25(c)(3)</u>

FICO's proposed instruction properly addresses controlling law regarding contract interpretation, namely that the parties are bound by the terms of the License Agreement as written. This law is reflected in the cited footnote.

The instruction properly acknowledges that the expressed words of the contract provide an objective meaning. *Brown Bros. Elec. Contractors, Inc. v. Beam Constr. Corp.*, 41 N.Y.2d 397, 399-400, 393 N.Y.S.2d 350, 352, 361 N.E.2d 999, 1001 (1977). While having a meaningless provision may be disfavored, it is not incorrect if it is the only way to read the express words of the contract. If the express words of the contract leave only one meaning, there is nothing ambiguous about the provision. *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 98 F. Supp. 2d 498, 506 (S.D.N.Y. 2000); *Quantum Chem. Corp. v. Reliance Grp.*, 580 N.Y.S.2d 275, 276 (App. Div. 1st Dept. 1992). Here, the plain words of "Client" and "Affiliates" are unambiguous. That the interpretation of License Agreement renders "Affiliates" meaningless does not make the provision ambiguous.

---

[28] *Vermont Teddy Bear Co. v. 538 Madison Realty Co.*, 775 N.Y.S.2d 765, 768, 807 N.E.2d 876, 879-80 (2004) (quoting *Reiss v. Fin. Performance Corp.*, 738 N.Y.S.2d 658, 661, 764 N.E.2d 958, 961 (2001)) ("[C]ourts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing."); *see also Reiss*, 738 N.Y.S.2d at 661; *Matter of Wallace v. 600 Partners Co.*, 634 N.Y.S.2d 669, 671, 658 N.E.2d 715, 717 (1995); *W.W.W. Assoc. v. Giancontieri*, 565 N.Y.S.2d 440, 443-44, 566 N.E.2d 639, 642-43 (1990); *Rowe v. Great Atl. & Pac. Tea Co.*, 412 N.Y.S.2d 827, 833, 385 N.E.2d 566, 572 (1978).

Plaintiff's proposed Instruction No. 25(d) — Third-Party Consultants

I have determined as a matter of law that Paragraph 3.1(iv) of the License Agreement prohibited making Blaze Advisor available to unlicensed third-party consultants without FICO's consent.[29] It is undisputed that third-party consultants AppCentrica and DWS Group had access to and used Blaze Advisor.[30]

I instruct you that access and use of Blaze Advisor by AppCentrica and DWS Group violated the license grant of Paragraph 3.1(iv).[31]

I further instruct you that Paragraph 9.2(c) of the License Agreement permitted FICO to terminate the License Agreement due to unauthorized use and access of Blaze Advisor by third-party consultants.[32] I instruct you that Paragraph 3.1(iv) was breached, and that FICO properly terminated the License Agreement.

Plaintiff's position on proposed Instruction No. 25(d)

FICO's proposed instruction incorporates relevant facts that are not in dispute, including disclosure to third party consultants and the unambiguous provision of Paragraph 9.2(c) that permitted FICO's immediate termination.

The instruction reflects Federal's admission that Blaze Advisor was disclosed to third-party consultants AppCentrica and DWS Group, which was a breach of Paragraph 3.1(iv). The instruction also properly informs the jury that the parties contracted around the materiality requirement to the benefit of FICO. Paragraph 9.2(c) of the License Agreement permitted FICO to immediately terminate the License Agreement for violation of any term of the license grant, regardless of materiality. The unauthorized use and access by third-party consultants violated the license restriction of Paragraph 3.1(iv). Termination for breach of the license grant is not limited by materiality, as reflected in the cited footnotes.

---

[29] Dkt. 731 at 42.

[30] Federal's Second Supp. Resp. to Interrogatory No. 3, June 21, 2018 (identifying entities that used Blaze Advisor: "(2) Chubb Insurance Company of Canada, including through its relationship with AppCentrica, and (3) Chubb Insurance Company of Australia Limited, including through its relationship with the DWS Group.").

[31] Dkt. 731 at 45.

[32] *Peter J. Solomon Co., L.P. v. ADC Prods. (UK)*, No. 14CV4086-LTS, 2016 U.S. Dist. LEXIS 42537, at *12 (S.D.N.Y. Mar. 30, 2016) ("While it is true that a material breach, if established, would typically relieve the non-breaching party of its obligation to perform and enable automatic termination, . . . the parties here have specifically contracted around this general rule."); *In Touch Concepts v. Cellco P'ship*, 949 F. Supp. 2d 447, 468 (S.D.N.Y. 2013) (enforcing, as written, a termination clause that did not require cause); *Southland Corp. v. Froelich*, 41 F. Supp. 2d 227, 246 (E.D.N.Y. 1999) (explaining that termination for a "material breach" is a remedy that is cumulative to the termination reasons provided in a contract's termination provision).

To the extent the Court determines a "materiality" instruction is necessary, FICO will propose one in accordance with the law. Namely, a "material breach" is one that deprives FICO of a benefit it reasonably expected under the License Agreement, in determining whether the breach was material, the jury may consider the commercial purpose of Paragraph 3.1(iv) in the context of the full License Agreement. *See Frank Felix Assocs. v. Austin Drugs*, No. 96-7604, 1997 U.S. App. LEXIS 19795, at *14 (2d Cir. Apr. 10, 1997); *VFS Fin., Inc. v. Falcon Fifty LLC*, 17 F. Supp. 3d 372, 379–80 (S.D.N.Y. 2014); *accord* Restatement (Second) of Contracts § 241 (1981).

Plaintiff's proposed Instruction No. 25(e) — Breach of Paragraph 9.3

It is undisputed that the use of Blaze Advisor continued after FICO terminated the License Agreement.

Because FICO proved breach of Paragraph 3.1(iv) due to the unauthorized use and access of Blaze Advisor by third-party consultants, I instruct you that Paragraph 9.3 was also breached because the use of Blaze Advisor continued after the License Agreement was properly terminated.

Additionally, if you find that FICO proved breach of Paragraph 10.8, or that FICO proved breach of Paragraph 3.1(iv) because foreign insurance companies and their employees were permitted to use Blaze Advisor, then I instruct that the License Agreement was properly terminated for those reasons as well. In all events, Paragraph 9.3 was also breached because the use of Blaze Advisor continued after the License Agreement was properly terminated.

Plaintiff's position on proposed Instruction No. 25(e)

FICO's proposed instruction properly instructs the jury as to the facts of the case. The instruction properly addresses the undisputed facts while properly orienting the issues the jury must resolve.

It is undisputed that Defendants continued to use Blaze Advisor after termination of the License Agreement. As a result of the admitted breach of Paragraph 3.1(iv) due to the unauthorized use and access of Blaze Advisor by third-party consultants, FICO was permitted to terminate the License Agreement. The admitted use of Blaze Advisor after termination was a breach of Paragraph 9.3.

The instruction additionally informs the jury that if FICO was permitted to terminate the License Agreement due to the breach of any of the other applicable provisions, including the breach of Paragraph 10.8 because FICO's prior written consent before the assignment event was not requested, and/or the breach of Paragraph 3.1(iv) because foreign insurance companies and their employees accessed and used Blaze Advisor, then the continued post-termination use of Blaze Advisor was a breach of Paragraph 9.3.

The instruction also limits the issues to those of Paragraph 9.3, leaving breaches of Paragraph 10.8 and Paragraph 3.1(iv) to other instructions.

Plaintiff's proposed Instruction No. 25(f)(1) — Defendants' Counterclaims — Improper Termination

Defendants contend that FICO's termination of the License Agreement was improper because the License Agreement was not breached.

I instruct you that FICO's termination was proper. FICO proved breach of Paragraph 3.1(iv) due to the unauthorized access and use of Blaze Advisor by third-party consultants.

Additionally, if you find that FICO proved breach of Paragraph 10.8 because FICO's prior written consent before the assignment event was not requested, or if you find that FICO proved breach of Paragraph 3.1(iv) because foreign insurance companies and their employees accessed and used Blaze Advisor, then I also instruct you that FICO's termination of the License Agreement was proper for those reasons as well.

I instruct you that FICO's termination of the License Agreement was not a breach.

Plaintiff's position on proposed Instruction No. 25(f)(1)

FICO's proposed instruction properly instructs the jury as to the facts of the case. FICO's termination was proper at least because Blaze Advisor was disclosed to third-party consultants AppCentrica and DWS Group, which was a breach of Paragraph 3.1(iv).

The parties contracted around the materiality requirement to the benefit of FICO. Paragraph 9.2(c) of the License Agreement permitted FICO to immediately terminate the License Agreement for violation of any term of the license grant, regardless of materiality. *See Peter J. Solomon Co., L.P. v. ADC Prods. (UK)*, No. 14CV4086-LTS, 2016 U.S. Dist. LEXIS 42537, at *12 (S.D.N.Y. Mar. 30, 2016); *In Touch Concepts v. Cellco P'ship*, 949 F. Supp. 2d 447, 468 (S.D.N.Y. 2013); *Southland Corp. v. Froelich*, 41 F. Supp. 2d 227, 246 (E.D.N.Y. 1999). Unauthorized use and access by third-party consultants violated the license restriction of Paragraph 3.1(iv). The jury is properly instructed that FICO was permitted to terminate the License Agreement.

The instruction additionally informs the jury that FICO was permitted to terminate the License Agreement due to the breach of any of the other applicable provisions, including the breach of Paragraph 10.8 because FICO's prior written consent before the assignment event was not requested, and/or the breach of Paragraph 3.1(iv) because foreign insurance companies and their employees accessed and used Blaze Advisor.

Plaintiff's proposed Instruction No. 25(f)(2) — Defendants' Counterclaims — Covenant of Good Faith and Fair Dealing

Defendants also contend that FICO breached the covenant of good faith and fair dealing[33] because FICO enforced Paragraph 10.8 without sufficient information regarding the scope of use of Blaze Advisor after assignment event.[34]

To succeed on this claim, Defendants must prove that FICO's enforcement of Paragraph 10.8 was objectively unreasonable when judged in the light of the commercial purpose of Paragraph 10.8.[35] You may not consider subjective factors such as the parties' intent or motivations.[36]

Plaintiff's position on proposed Instruction No. 25(f)(2)

FICO's proposed instruction instructs the jury on the controlling law and the admitted facts of the case. The instruction informs the jury that the breach of the covenant of good faith and fair dealing is assessed according to an objective reasonableness standard, and that subjective factors are irrelevant, as reflected in the law in the cited footnotes.

---

[33] Dkt. 731 at 58-59.

[34] *Id.*

[35] *Sharkey v. Zimmer USA, Inc.*, 2021 U.S. Dist. LEXIS 149120, at *15 (S.D.N.Y. Aug. 9, 2021) ("A duty arising from the implied covenant must be one which the parties could reasonably expect to arise from their contractual relationship."); *Singh v. City of N.Y.*, 2020 NY Slip Op 08123, ¶¶ 2-3, 189 A.D.3d 1697, 1700, 139 N.Y.S.3d 307, 311 (App. Div. 2nd Dept.); *Hoag v. Chancellor, Inc.*, 677 N.Y.S.2d 531, 535 (N.Y. App. Div. 1998); *Astoria Bedding v. Northside P'ship.*, 657 N.Y.S.2d 796, 797 (N.Y. App. Div. 1997).

[36] *See* cases cited *supra* note 35.

<u>Plaintiff's proposed Instruction No. 25(g)(1) — Contract Damages</u>

<u>If you find that FICO proved breach of one or more of the promises of the License Agreement, then you must decide how much money will fully compensate FICO.[37] This compensation is called "damages."</u>

- <u>Pre-termination Foreign Use: If you found FICO proved breach of Paragraph 3.1(iv) because Chubb & Son permitted employees of foreign insurance companies to access and use Blaze Advisor, you must determine FICO's damages resulting from the use of each Blaze Advisor application by each of those foreign insurance companies from the date of first use to March 31, 2016 (the date the License Agreement was terminated).</u>

- <u>Post-termination Use (Foreign and Domestic): I instruct you that FICO properly terminated the License Agreement for at least the reason that access and use of Blaze Advisor by unauthorized third-party consultants breached Paragraph 3.1(iv). Because the License Agreement was properly terminated, you must determine FICO's damages resulting from the use of Blaze Advisor by Chubb Insurance Company of Canada, Chubb Insurance Company of Europe, and Chubb Insurance Company of Australia from March 31, 2016 (the date the License Agreement was terminated), to the date this use stopped. You must also determine FICO's damages resulting from the domestic use of Blaze Advisor from March 31, 2016, (the date the License Agreement was terminated) until December 31, 2016, before ACE American began its use of Blaze Advisor.</u>

<u>Plaintiff's position on proposed Instruction No. 25(g)(1)</u>

FICO's proposed instruction instructs the jury on the facts of the case, including the facts which inform the calculation of lost license fee damages. FICO's instruction also aides the jury by indicating that there are distinct categories of license fees that FICO seeks: lost license fee damages for pre-termination foreign use and post-termination foreign and domestic use from the date of termination to December 31, 2016.

FICO's proposed instructions provide separate lost license fee instructions for breach of contract and for actual damages under the copyright claim. They should not be merged.

---

[37] <u>N.Y Pattern Jury Instr. – Civil 4:20 (3d ed. 2022).</u>

Plaintiff's proposed Instruction No. 25(g)(2) — Expectation Damages

As a measure of its damages, FICO is entitled to full compensation for the loss that is the natural and probable consequence of the breach.[38] FICO is entitled to recover the fair market value for all the unauthorized use of Blaze Advisor.[39]

FICO does not have to prove the exact amount of damages.[40] You must not speculate or guess in awarding damages, but you may award damages even if the amount is uncertain.[41]

Plaintiff's position on proposed Instruction No. 25(g)(2)

FICO's proposed instruction properly instructs the jury on the law of expectation damages, which is reflected in the cited footnotes.

---

[38] *Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 856 N.Y.S.2d 505, 508, 886 N.E.2d 127, 130 (2008) ("It is well settled that in breach of contract actions the nonbreaching party may recover general damages which are the natural and probable consequence of the breach") (quotations omitted).

[39] *Id.*; *Gusmao v. GMT Grp., Inc.*, No. 06 CIV. 5113, 2008 U.S. Dist. LEXIS 58462, at *37 (S.D.N.Y. Aug. 1, 2008) (quoting *Kenford Co. v. Cty. of Erie*, 540 N.Y.S.2d 1, 3, 537 N.E.2d 176, 178 (1989)) (explaining that expectation damages are "the natural and probable consequence of the breach."); *Mackie v. Rieser*, 296 F.3d 909, 917 (9th Cir. 2002); *On Davis v. Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001).

[40] In assessing the amount of damages to remedy the breach, New York courts do not require "scientific rigor in the calculation of damages." *Lexington Prods. Ltd. v. B.D. Commc'ns, Inc.*, 677 F.2d 251, 253 (2d Cir. 1982). Instead, "where a wrong has been done, the courts will endeavor to make a reasonable estimate of damages," and the complaining party need only provide a "rational basis for computation of damages." *Id.* (vacating lower court judgment and remanding to award damages); *see also Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.*, 487 F.3d 89, 110-11 (2d Cir. 2007) (quotations omitted) (holding that a "plaintiff need only show a stable foundation for a reasonable estimate of the damage incurred as a result of a breach").

[41] Under New York law, the "rule which proscribes the recovery of uncertain and speculative damages applies where the fact of damages is uncertain, not where the amount is uncertain. Where the fact of damages is certain, the uncertainty of the amount will not prevent their being addressed." *Matarese v. Moore–McCormack Lines*, 158 F.2d 631, 637 (2d Cir. 1946); *see also Toporoff Engineers, P.C. v. Fireman's Fund Ins. Co.*, 371 F.3d 105, 109 (2d Cir. 2004); *Washington v. Kellwood Co.*, No. 05CV10034 MHD, 2015 U.S. Dist. LEXIS 144343, at *42-44 (S.D.N.Y. Oct. 14, 2015).

Plaintiff's proposed Instruction No. 25(g)(3) — Hypothetical Negotiation

The fair market value for the unauthorized use of Blaze Advisor may be determined by a hypothetical negotiation between FICO, on the one hand, and the unauthorized user of Blaze Advisor, on the other hand.[42] The hypothetically negotiated fair market value is the license fee that FICO as a willing licensor and the unauthorized user as a willing licensee would have agreed upon under the circumstances at time of the unauthorized use of Blaze Advisor.[43]

Your consideration of a hypothetically negotiated fair market value is based on objective factors. Fair market value is not based on the subjective wishes of either party.[44]

Plaintiff's position on proposed Instruction No. 25(g)(3)

FICO's proposed instruction properly instructs the jury on the hypothetical negotiation used to determine the fair market value under the circumstances at the time of the unauthorized use of Blaze Advisor. This law is reflected in the cited footnotes.

---

[42] *On Davis v. Gap, Inc.*, 246 F.3d 152, 166-67 (2d Cir. 2001); *Gaylord v. United States*, 777 F.3d 1363, 1367-68 (Fed. Cir. 2015).

[43] *Schonfeld v. Hilliard*, 218 F.3d 164, 178 (2d Cir. 2000); *Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 375-76 (S.D.N.Y. 2019); *Mackie v. Rieser*, 296 F.3d 909, 917 (9th Cir. 2002); *On Davis*, 246 F.3d at 166.

[44] *On Davis*, 246 F.3d at 166; *Safka Holdings LLC v. iPlay, Inc.*, 42 F. Supp. 3d 488, 493 (S.D.N.Y. 2013); *Mackie*, 296 F.3d at 916-17 (affirming the district court's award of damages and explaining that "[t]he district court did not error in declining to factor in Mackie's subjective view" when calculating the market value).

Plaintiff's proposed Instruction No. 25(g)(4) — Objective Factors

In determining the fair market value of Blaze Advisor, you may consider the following factors:

- FICO's established licensing practices and pricing standards for Blaze Advisor;[45]

- The acceptance of FICO's pricing standards in the marketplace by other licensees;[46]

- The number of years FICO's pricing standards have been used and accepted in the marketplace;[47]

- The extent of the unauthorized commercial use;[48]

- The purpose of the unauthorized commercial use;[49]

---

[45] *On Davis v. Gap, Inc.*, 246 F.3d 152, 167 (2d Cir. 2001) (explaining that "established rates that are regularly paid by licensees" can be used to calculate fair market value); *W. Elec. Co. v. Stewart-Warner Corp.*, 631 F.2d 333, 340 (4th Cir. 1980) ("[W]e recognize[] the well accepted rule that if a royalty has been established for the patented product, that royalty rate is the best measure of damages."); *Pitcairn v. United States*, No. 50328, 1975 U.S. Claims LEXIS 4, at *5 (Ct. Cl. Nov. 13, 1975) (finding evidence of "a comprehensive 16-year licensing program" was an established royalty).

[46] *W. Elec. Co.*, 631 F.2d at 340*; Oracle Am., Inc. v. Google Inc.*, 847 F. Supp. 2d 1178, 1184 (N.D. Cal. 2012) ("The Federal Circuit has upheld a hypothetical royalty based on a contemporaneously created business plan projecting revenue."); *Gaylord v. United States*, 777 F.3d 1363, 1368 (Fed. Cir. 2015) ("'benchmark' licenses by others in the industry may be useful"). *See also Audio MPEG, Inc. v. Dell, Inc.*, Civil Action No. 2:15cv73, 2017 U.S. Dist. LEXIS 166459, at *17 (E.D. Va. Oct. 6, 2017) ("A comparability analysis of individual licenses is not necessary where witnesses have testified to an established licensing program covering the patents-in-suit.").

[47] *See generally, W. Elec. Co.*, 631 F.2d at 340; *Pitcairn*, No. 50328, 1975 U.S. Claims LEXIS 4, at *5 (finding evidence of "comprehensive 16-year licensing program"); *Williams v. Gaye*, 895 F.3d 1106, 1129 (9th Cir. 2018) (accepting an expert's hypothetical royalty rate based "industry standard").

[48] *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) ("A reasonable royalty may be a lump-sum payment not calculated on a per unit basis, but it may also be, and often is, a running payment that varies with the number of infringing units. In that event, it generally has two prongs: a royalty base and a royalty rate.").

[49] *Gaylord*, 777 F.3d at 1368 ("The hypothetical-negotiation determination must be tied to the particular work at issue and its marketplace value—much as, in patent law, the

- The criticality of the business purpose served by the unauthorized commercial use;[50]

- The connection between the unauthorized commercial use and the generation of revenue by selling insurance;[51]

- The extent the total revenue of the punitive licensee is connected to the unauthorized use of Blaze Advisor;[52]

- All other business benefits derived from the unauthorized use in connection with selling insurance;[53]

- The cost of and feasibility of use of alternative products as well as the time to change over to alternative products;[54]

- The cost of developing the technology in-house and the time required to do so;[55]

---

determination must be tied to the particular patented technology and its footprint in the market.")

[50] *Id.*

[51] *See Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1385 (Fed. Cir. 2001) (explaining that "an actual infringer's profit margin can be relevant to the determination of a royalty rate in a hypothetical negotiation" but "does not require that estimates of sales revenues, as referenced in a hypothetical negotiation at the time infringement began, must later bear a close relation to actual sales revenue"); *Probatter Sports, LLC v. Sports Tutor, Inc.*, 586 F. Supp. 3d 80, 91 (D. Conn. 2022) ("In applying this principal, the court affirmed a jury verdict based on projected future sales versus actual future sales where, at the time of the hypothetical negotiation, there was evidence, or elements of value, supporting the projected future sales.").

[52] *Pinn, Inc. v. Apple, Inc.*, No. 8:19-CV-01805-DOC-(JDEx), 2021 U.S. Dist. LEXIS 200942, at *122 (C.D. Cal. Mar. 9, 2021) ("*Pre*-hypothetical-negotiation revenue and profits are thus relevant to the hypothetical negotiation circumstances, and *post*-hypothetical-negotiation revenue and profits are also relevant") (emphasis in original).

[53] *Id.*

[54] *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1376 (Fed. Cir. 2017) ("A price for a hypothetical license may appropriately be based on consideration of the costs and availability of non-infringing alternatives and the potential infringer's cost savings.") (quotations omitted).

[55] *Audio MPEG, Inc. v. Dell, Inc.*, Civil Action No. 2:15cv73, 2017 U.S. Dist. LEXIS 166459, at *10 (E.D. Va. Oct. 6, 2017) ("The reasonable royalty is determined based on a hypothetical negotiation, occurring between the parties at the time that infringement began.") (quotations omitted); *Oracle*, 847 F. Supp. 2d at 1182 ("In the context

- The presence or absence of an ongoing business relationship or the prospect of a future business relationship;[56]

- The presence or absence of justification to discount standard pricing; and

- All the economic factors a reasonably prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.[57]

Plaintiff's position on proposed Instruction No. 25(g)(4)

FICO's proposed instruction instructs the jury with respect to specific factors relevant to the hypothetical negotiation. The law supporting each factor is reflected in the cited footnotes.

The instruction is also in accordance with the Court's ruling that established licensing practices are relevant to the hypothetical negotiation. (Dkt. 731 at 31-32.)

---

of copyright infringement, the hypothetical lost license fee can be based on the fair market value of the copyright at the time of infringement.").

[56] *Epic Sys. Corp. v. Attachmate Corp.*, No. 15-cv-179-bbc, 2016 U.S. Dist. LEXIS 88572, at *9 (W.D. Wis. July 8, 2016) ("[P]ast negotiations are relevant to what the parties would have agreed to"); *Gaylord*, 777 F.3d at 1368 ("For example, past arms-length licensing practices by the copyright owner or the infringer for similar uses and 'benchmark' licenses by others in the industry may be useful. But the use of past licenses as evidence must always take account of economically relevant differences between the circumstances of those licenses and the circumstances of the matter in litigation—as we have said in the related patent-law context.") (citations omitted).

[57] *See generally, FloodBreak, LLC v. Art Metal Indus., LLC*, No. 3:18-cv-503 (SRU), 2020 U.S. Dist. LEXIS 189680, at *13 n.5 (D. Conn. Oct. 13, 2020) ("The Federal Circuit has applied the non-exhaustive factors outlined in Georgia-Pacific to ascertain a reasonable royalty through a hypothetical negotiation."). *See also Safka Holdings LLC v. iPlay, Inc.*, 42 F. Supp. 3d 488, 493 (S.D.N.Y. 2013) (quoting *Schonfeld v. Hilliard*, 218 F.3d 164, 178 (2d Cir. 2000)) ("New York courts have embraced the hypothetical market standard established by the Supreme Court, which looks to such factors as expert testimony, prior sales history, and evidence of sales of comparable assets to determine the fair market value at which the property would change hands between a willing buyer and a willing seller.").

Plaintiff's proposed Instruction No. 25(g)(5) — Comparable Agreements

In determining the fair market value for the unauthorized use of Blaze Advisor, you may consider evidence of other license agreements[58] only if they are comparable to the circumstances of the unauthorized use of Blaze Advisor in this case. "Comparability of the circumstances" means that you must consider the economic circumstances of other license agreements in comparison to the economic circumstances of the hypothetical negotiation in this case before giving any weight to other license agreements.[59]

Plaintiff's position on proposed Instruction No. 25(g)(5)

FICO's proposed instruction properly instructs the jury regarding the law applicable to comparable license agreements. This law is reflected in the cited footnotes.

FICO's instruction presumes that the Court has not otherwise excluded non-comparable license agreements, as the Court is required to make a threshold determination of comparability to determine whether the license agreements are admissible. *See M2M Sols. LLC v. Motorola Sols., Inc.*, No. 12-cv-33, 2016 U.S. Dist. LEXIS 22944, at *26-27 (D. Del. Feb. 25, 2016); *M2M Sols. LLC v. Enfora, Inc.*, 167 F. Supp. 3d 665, 678 (D. Del. 2016).

---

[58] *Safka Holdings LLC v. iPlay, Inc.*, 42 F. Supp. 3d 488, 493 (S.D.N.Y. 2013) (quoting *Schonfeld v. Hilliard*, 218 F.3d 164, 178 (2d Cir. 2000)) ("New York courts have embraced the hypothetical market standard established by the Supreme Court, which looks to such factors as expert testimony, prior sales history, and evidence of sales of comparable assets to determine 'the fair market value at which the property would change hands between a willing buyer and a willing seller.'").

[59] *Gaylord v. United States*, 777 F.3d 1363, 1368 (Fed. Cir. 2015) ("[T]he use of past licenses as evidence must always take account of economically relevant differences between the circumstances of those licenses and the circumstances of the matter in litigation."); *Raimondi v. Olenicoff*, No. SACV 12-2094, 2015 U.S. Dist. LEXIS 174961, at *6-8 (C.D. Cal. July 7, 2015). *Cf. Ford Motor Co. v. Versata Software, Inc.*, No. 15-cv-10628, 2018 U.S. Dist. LEXIS 236571, at *23 (E.D. Mich. July 9, 2018) (quoting *Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys.*, 809 F.3d 1295, 1303 (Fed. Cir. 2015)) ("[A] royalty rate may be based on a comparable license so long as (1) 'the licenses employed are sufficiently comparable' and (2) the valuation analysis 'accounts for the differences in the technologies and the economic circumstances of the parties.'"); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227-28 (Fed. Cir. 2014); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330-31 (Fed. Cir. 2014); *Apple Inc. v. Motorola Inc.*, 757 F.3d 1286, 1325-26 (Fed. Cir. 2014); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77-81 (Fed. Cir. 2012); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869-70 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1329, 1336 (Fed. Cir. 2009).

***Defendants' proposal***

Defendants' proposed Instruction No. 25(a) — Breach of Contract

As you have heard, FICO seeks to recover damages for breach of contract. FICO claims it had a contract with Federal that set the terms under which Federal could use FICO's Blaze Advisor software, and that Federal breached the contract by allowing unauthorized persons to use the software, by improperly assigning to ACE ~~American~~ the License Agreement through the ~~merger into ACE American~~acquisition and/or by continuing to use Blaze Advisor after FICO terminated the Agreement. Federal claims that it did not breach the Agreement. It claims the ~~merger~~acquisition did not violate the assignment provision of the Agreement, that Federal did not allow unauthorized persons or entities to use the software and that FICO's purported termination of the Agreement was therefore ~~ineffective~~invalid.

Federal has made a counterclaim against FICO for breach of contract. It claims that FICO's termination of the License Agreement was itself a breach of the License Agreement, and that FICO unreasonably withheld consent to the use of Blaze after the acquisition.

The party who claims breach of contract has the burden of proving, by a preponderance of the evidence, that it had a contract with the other party, that it did what it was required to do under the contract, that the other party breached the contract by not doing what it was required to do under the contract, and that the non-breaching party sustained damages because of the other's breach.

If you decide that Federal breached the License Agreement in any of the ways FICO has alleged, you will find for FICO on its breach of contract claim and you will go on to consider FICO's damages. If you decide that Federal did not breach the License Agreement, you will find for Federal on FICO's breach of contract claim.

If you decide that FICO breached the License Agreement as Federal has alleged, you will find for Federal on its breach of contract counterclaim and you will go on to consider Federal's damages. If you decide that FICO did not breach the License Agreement, you will find for FICO on Federal's breach of contract counterclaim.

In this case the parties agree that the License Agreement was a contract. ~~It is for~~ I have determined that the contract is ambiguous as to the claims made in this case. The phrase "Client and its Affiliates" as used in the Blaze Advisor License Agreement is ambiguous. Additionally, Section 10.8 of the License Agreement is ambiguous. You as a jury are asked to decide what the contract required of both parties and whether either party or both of them failed to do what they promised in their contract.

Defendants' position on proposed Instruction No. 25(a)

Defendants' position is that the Court's instruction as modified accurately and succinctly describes the law applicable to this claim.

Defendants' proposed Instruction No. 25(b) — Interpreting a Contract

To determine what the contract required of each party, you should consider the plain meaning of the words of the License Agreement, how a reasonable businessperson in this situation would have understood their meaning, and what the parties here actually intended them to mean, based on the evidence you heard.  **[*GEICO Marine Ins. Co. v. Great N. Ins. Co.,* 2017 WL 4286394, at \*5 (S.D.N.Y. Sept. 11, 2017).]**

You should interpret the License Agreement so as to give full meaning and effect to all of its provisions.  You should avoid interpreting the License Agreement in a way that would leave one of its provisions without meaning or effect.   **[N.Y. Pattern Jury Instructions § 4.A.1.VI.A.3.]**

You may use extrinsic evidence—that is, evidence other than the words of the License Agreement—to determine what the parties intended ambiguous provisions of the License Agreement to mean.  **[*Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London,* 136 F.3d 82, 86 (2d Cir. 1998).]**  You may consider evidence of customs, practices, usages, and terminology as generally understood in this trade or business.  **[*Park Electrochem. Corp. v. Cont. Cas. Co.,* 2011 WL 703945, at \*3 (E.D.N.Y. Feb. 18, 2011).]**  You may consider evidence of the parties' prior negotiations and the circumstances surrounding the formation of the License Agreement.  **[*Roberts v. Consol. Rail Corp.,* 893 F.2d 21, 25 (2d Cir. 1989).]**  You may interpret the License Agreement by comparing it to other, similar contracts.   **[*Quadrant Structured Prods. Co., Ltd. v. Vertin,* 16 N.E.3d 1165, 1172 (N.Y. 2014).]**

You may also look to how the parties conducted themselves after the License Agreement was executed.  That is, if one party has expressly or impliedly claimed a right to act a certain way under an ambiguous contract provision and the other party has knowledge of that conduct and acquiesces in it, that is persuasive evidence of the ambiguous contract provision's meaning.  **[*Cont. Cas. Co. v. Rapid-American Corp.,* 609 N.E.2d 506, 511 (N.Y. 1993).]**

Defendants' position on proposed Instruction No. 25(b)

Defendants' position is that this instruction accurately and succinctly describes how extrinsic evidence is to be used to interpret ambiguous provisions of a contract. Defendants rely on the legal authority cited in their proposal.

Defendants' proposed Instruction No. 25(c) — Agency

The law presumes that the knowledge an employee acquires while acting within the scope of his or her employment is also possessed by his or her employer. **[*Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 465 (2010).]** A corporation is responsible for the acts of its agents. **[*Id.*]**

Defendants' position on proposed Instruction No. 25(c)

Defendants' position is that this instruction accurately and succinctly describes an important aspect of the agency relationship between employer and employee. Defendants rely on the legal authority cited in their proposal.

Defendants' proposed Instruction No. 25(d) — Excuse

Federal defends against FICO's breach of contract claim by arguing that it was excused from performing under the contract because FICO breached the contract first by unreasonably withholding consent to the continued use of Blaze Advisor and improperly terminating the contract.

When a party has breached a contract, that breach may excuse the other party from further performance under the contract if the breach is material. **[*New Windsor Volunteer Ambulance Corps., Inc. v. Meyers*, 442 F.3d 101, 117 (2d Cir. 2006).]** A material breach occurs when one party has substantially failed to perform its side of the bargain in a way that goes to the root of the agreement between the parties. A slight or technical breach is not a material breach. Whether a failure to live up to a contract's terms constitutes a material breach depends on several factors. These factors include: (1) the absolute and relative magnitude of the failure to meet the contract's terms; (2) the effect of that failure on the contract's overall purpose; (3) whether the failure was willful; and (4) the degree to which the injured party has benefited under the contract. **[*Process America, Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 136 (2d Cir. 2016).]**

Here, Federal asserts that FICO materially breached the License Agreement in two ways. First, by unreasonably withholding consent to the continued use of Blaze Advisor after the acquisition. Second, by terminating the contract without sufficient cause.

Defendants' position on proposed Instruction No. 25(d)

Defendants' position is that this instruction accurately and succinctly describes the rule that one party's material breach excuses the other party from further performance. Defendants rely on the legal authority cited in their proposal.

Defendants' proposed Instruction No. 25(e) — Material Breach

Federal has counterclaimed against FICO, and argues that FICO breached the License Agreement by purporting to terminate the License Agreement without sufficient cause.  Under the License Agreement, FICO could only cancel the License Agreement if Federal committed a breach "of any of the material terms of th[e] Agreement, or numerous breaches of duties or obligations . . . that cumulative constitute a material breach[.]" **[License Agreement § 9.2.]**  As I have explained, A material breach occurs when one party has substantially failed to perform its side of the bargain in a way that goes to the root of the agreement between the parties.  If you find in favor of Federal on FICO's breach of contract claims, you will find in favor of Federal on this counterclaim.   Federal has the burden of proof in this claim.

Defendants' position on proposed Instruction No. 25(e)

Defendants' position is that this instruction accurately and succinctly describes the rule that one party's material breach excuses the other party from further performance.  Defendants rely on the legal authority cited in their proposal and in proposed Instruction No. 25(d).

Defendants' proposed Instruction No. 25(f) — Covenant of Good Faith and Fair Dealing

Every contract includes an implied covenant of good faith and fair dealing. Under this covenant, the parties promise not to do anything that will injure the other party, including not doing anything that will prevent the other party's performance.

In this case Federal has also counterclaimed against FICO that FICO breached the implied covenant of good faith and fair dealing by withholding consent to Federal's continued use of Blaze Advisor after the ~~merger~~acquisition. Where a contract grants a party the right to make a discretionary decision—such as FICO's right under the License Agreement to consent to the expanded use of Blaze Advisor after the ACE acquisition—the implied covenant of good faith and fair dealing includes a promise not to act arbitrarily or in bad faith in exercising that discretion. **[N.Y. Pattern Jury Instructions § 4.A.1.VII.Z.]** So a party violates the covenant of good faith and fair dealing when it exercises a contractual right in an effort to realize a gain that the contract implicitly denies **[*Elmhurst Dairy, Inc. v. Bartlett Dairy, Inc.*, 97 A.D.3d 781, 784 (2d Dep't 2012)]** or to deprive the other party of the benefits it is due under the contract **[*Guidance Enhanced Green Terrain, LLC v. Bank of Am. Merrill Lynch*, 146 A.D.3d 431, 434 (1st Dep't 2017)]**.  Federal has the burden of proof in this claim.

Defendants' position on proposed Instruction No. 25(f)

Defendants' position is that the Court's instruction, as modified, accurately and succinctly describes the rule that one party's material breach excuses the other party from further performance.  Defendants rely on the legal authority cited in their proposal.

## Instruction No. 26: Copyright Infringement

***Plaintiff's proposal***

Plaintiff's proposed Instruction No. 26(a) — Copyright Ownership

I instruct you that FICO is the owner of valid registered copyrights in Blaze Advisor which include Version 7.0, Registration No. TX 7-504-713, and Version 7.2, Registration No. TX 7-776-962.[60]

Plaintiff's position on proposed Instruction No. 26(a)

FICO's proposed instruction properly orients the jury to the necessary undisputed facts of FICO's copyright infringement claims.

---

[60] 17 U.S.C. § 401(c); *Rottlund Co. v. Pinnacle Corp*., No. 01-1980 (DSD/SRN), 2004 U.S. Dist. LEXIS 16723, at *24 (D. Minn. Aug. 20, 2004) (citing 17 U.S.C. § 410(c)) ("A certificate of registration constitutes prima facie evidence of ownership of a valid copyright."); *Taylor Corp. v. Four Seasons Greetings LLC*, 171 F. Supp. 2d 970, 972-73 (D. Minn. 2001) ("These certificates are prima facie evidence of the validity of plaintiff's copyrights and the facts stated in the certificates, including ownership."); *Tonka Corp. v. Tsaisun, Inc*., No. 3-85-1885, 1986 U.S. Dist. LEXIS 18009, at *39 (D. Minn. Nov. 6, 1986) ("A certificate of registration constitutes prima facie evidence of the validity of the copyright and of the facts, including ownership and existence, stated in the certificates."); *Animal Fair, Inc. v. AMFESCO Indus*., 620 F. Supp. 175, 185 (D. Minn. 1985) ("This registration is prima facie evidence of the validity of the copyright and the facts stated in the certificate, including ownership."); *see also Latin Am. Music Co. v. Media Power Grp., Inc*., 705 F.3d 34, 38 (1st Cir. 2013) ("Provided that a copyright claim is registered with the Copyright Office within five years of first publication of the work, the certificate of registration is prima facie evidence of ownership and the validity of the copyright.").

Plaintiff's proposed Instruction No. 26(b) — Unauthorized Reproduction

The unauthorized use of copyrighted software is an unauthorized reproduction and is copyright infringement.[61]

I instruct you that FICO properly terminated the License Agreement because FICO proved breach of Paragraph 3.1(iv) due to the unauthorized access and use of Blaze Advisor by third-party consultants. I instruct you that the use of Blaze Advisor after the License Agreement terminated was copyright infringement.

Additionally, if you find that FICO proved breach of Paragraph 10.8 because FICO's prior written consent to the use of Blaze Advisor was not requested before the assignment event, or if you find that FICO proved breach of Paragraph 3.1(iv) because foreign insurance companies and their employees accessed and used Blaze Advisor, then I also instruct you that the use of Blaze Advisor after the License Agreement terminated was copyright infringement for those reasons as well.

I further instruct you that the use of Blaze Advisor by ACE American was unauthorized and was copyright infringement.

Plaintiff's position on proposed Instruction No. 26(b)

FICO's proposed instruction properly states the act of infringement under 17 U.S.C. § 106(1). This law is reflected in the cited footnote.

The instruction is also in accordance with the facts of the case. Federal admitted that Blaze Advisor was disclosed to foreign entities and third-party consultants in breach of the unambiguous language of Paragraph 3.1(iv). As discussed above, because Paragraph 3.1(iv) was breached and the License Agreement was properly terminated, the continued use of Blaze Advisor was copyright infringement.

Because ACE American was not a party to the License Agreement and because ACE American is not an Affiliate of either Chubb & Son, or even Federal, as "Affiliate" is

---

[61] Use of a software program on a computer requires the program to be copied from a storage device, such as a hard disk, into the computer's random access memory ("RAM"). The unauthorized use of a computer program requires an unauthorized loading of the software program onto the RAM of a computer, which is a reproduction and copying of the copyrighted work and an act of copyright infringement. *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518-19 (9th Cir. 1993); *Soc'y of the Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 55 (1st Cir. 2012); *Quantum Sys. Integrators, Inc. v. Sprint Nextel Corp.*, 338 F. App'x 329, 336-37 (4th Cir. 2009) ("Numerous district courts and at least two of our sister circuits have followed *MAI Systems* in holding that the loading of copyrighted software into RAM creates an infringing copy."); *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1149 (N.D. Cal. 2010) ("[T]he unauthorized loading of a software program onto the RAM of a computer constitutes an act of copying, and thus of copyright infringement.").

defined in the License Agreement, ACE American has no rights under the License Agreement. ACE American was a naked (unlicensed) user of Blaze Advisor. It is proper to instruct the jury that the unauthorized reproduction by ACE American was copyright infringement

<u>Plaintiff's proposed Instruction No. 26(c) — Infringement of Registered Copyrights</u>

<u>FICO contends the unauthorized use of Blaze Advisor Version 7.1 by Federal, through its division Chubb & Son, and the unauthorized use by ACE American infringed its Registered Copyright in Version 7.0 because Version 7.1 is derived from Registered Version 7.0.</u>

<u>FICO also contends the unauthorized use of Blaze Advisor Version 7.1 by Federal, through its division Chubb & Son, and the unauthorized use by ACE American infringed Registered Version 7.2, which is derived from Version 7.1.</u>

<u>Plaintiff's position on proposed Instruction No. 26(c)</u>

FICO's proposed instruction properly orients the jury to the facts of the case, namely the copyright registrations that FICO alleges were infringed through Defendants' unauthorized reproduction of Blaze Advisor Version 7.1.

Plaintiff's proposed Instruction No. 26(d) — Derivative Work

One version of Blaze Advisor is derivative from another version when substantial portions of the source code of each version are substantially the same.[62] If FICO proves that Version 7.1 includes a substantial portion of the source code contained within the source code of Version 7.0 of Blaze Advisor, then I instruct you Version 7.1 of Blaze Advisor is a derivative work of Blaze Advisor Version 7.0.[63] If FICO proves that Version 7.2 includes a substantial portion of the source code contained within the source code of Version 7.1 of Blaze Advisor, then I instruct you Version 7.2 of Blaze Advisor is a derivative work of Blaze Advisor Version 7.1.[64]

Plaintiff's position on proposed Instruction No. 26(d)

FICO's proposed instruction properly orients the jury to the facts of the case, namely the copyright registrations that FICO alleges were infringed through Defendants' unauthorized reproduction of Blaze Advisor Version 7.1. It also properly instructs the jury

---

[62] Infringement of a registered software program occurs when a later version of the program is reproduced or copied, if the evidence shows that the source code from the subsequent version is a derivative work of the registered software program. 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[B][5][b] (2021); *see also Montgomery v. Noga*, 168 F.3d 1282, 1292-93 (11th Cir. 1999) (quoting *Nimmer on Copyright* § 7.16[B][5][b]) ("[T]he owner of a registered underlying work that is part of an unregistered derivative work should be able to maintain a copyright infringement suit against a defendant who reproduces the derivative work - and thus the underlying work contained therein - without authorization."); *Central Point Software, Inc. v. Nugent*, 903 F. Supp. 1057, 1060, n.5 (E.D. Tex. 1995) (granting summary judgment on plaintiffs' copyright infringement claim where plaintiffs registered their copyrights in certain versions of computer programs and defendants copied subsequent versions that incorporated portions of the registered works).

[63] *See* cases cited *supra* note 62.

[64] *Big Daddy Games v. Reel Spin Studios*, No. 12-cv-449, 2013 U.S. Dist. LEXIS 200235, at *45-47 (April 10, 2013 W.D. Wis.) (explaining that because plaintiff owns copyrights to all versions and aspects of the games at issue, registrations of the 2005 versions that incorporate earlier versions are sufficient to permit plaintiff to enforce copyrights in all versions of the games before 2005); *Salestraq Am., LLC v. Zyskowski*, 635 F. Supp. 2d 1178, 1181 (D. Nev. 2009) (holding that a registration of a 2008 version of a compilation of floor plans and locations was sufficient to maintain an action for infringement of the 2007 unregistered version); *In re Indep. Serv. Orgs. Antitrust Litig.*, 964 F. Supp. 1469, 1473-74 (D. Kan. 1997) (holding that registration of derivative service manuals and software was sufficient to allow infringement claim based on preexisting works authored by same party and explaining that no analysis of source code needed where defendant copied entire version); *see also Nimmer on Copyright* § 7.16[B][5][c] ("When the same party owns the derivative or collective work plus the underlying elements incorporated therein, its registration of the former is sufficient to permit an infringement action on the underlying parts, whether they be new or preexisting.") (quotations omitted)).

regarding the law applicable to proof of a derivative work. This law is reflected in the cited footnotes.

Plaintiff's proposed Instruction No. 26(e) — Willful Infringement

You must determine whether copyright infringement was willful.[65]

You may find willful infringement against Federal if FICO proves that Federal knowingly chose to use Blaze Advisor after termination of the License Agreement or acted in reckless disregard of whether its use of Blaze Advisor after termination of the License Agreement infringed FICO's copyrights.[66]

You may find willful infringement against ACE American if FICO proves that ACE American knowingly chose to use Blaze Advisor without a license or acted in reckless disregard of whether its use of Blaze Advisor without a license infringed FICO's copyrights.[67]

Plaintiff's position on proposed Instruction No. 26(e)

FICO's proposed instruction properly instructs the jury regarding the legal standard for willful infringement, and specifically, that "knowing" infringement, and infringement in reckless disregard of FICO's rights, is equivalent to willful infringement. This law is reflected in the cited footnotes.

---

[65] 9th Cir. Model Civ. Jury Instr. § 17.37 (2017); *RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co.*, 845 F.2d 773, 779 (8th Cir. 1988) (stating elements); *Adventure Creative Grp., Inc. v. CVSL, Inc.*, 412 F. Supp. 3d 1065, 1073 (D. Minn. Sep. 12, 2019) ("A copyright holder seeking to establish willful infringement must show that the infringer had knowledge that its conduct constituted infringement or that it recklessly disregarded that possibility.") (collecting cases).

[66] *Adventure Creative*, 412 F. Supp. 3d at 1073 ("Courts have found willful infringement when, for example, a defendant engages in infringing activity after receiving warning that the activity constitutes infringement . . . .") (collecting cases); *Philpot v. Music Times LLC*, No. 16-cv-1277 (DLC) (DF), 2017 U.S. Dist. LEXIS 48454, at *16 (S.D.N.Y. Mar. 29, 2017) ("Courts will infer willful infringement from the fact that a defendant engages in infringing activity after receiving warning that the activity constitutes infringement."); *see also Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1227-28 (7th Cir. 1991) (finding unlicensed use to be willful).

[67] *Chi-Boy Music*, 930 F.2d at 1227-28; *see also Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1272 (11th Cir. 2015) (affirming willfulness finding based on reckless disregard where defendant failed to seek authorization or a license for its infringing use).

Plaintiff's proposed Instruction No. 26(f)(1) — Vicarious Liability — ACE American

FICO contends that ACE American is vicariously liable for Federal's infringement on ACE American's behalf between March 31, 2016, and December 31, 2016. ACE American is vicariously liable for Federal's infringing use of Blaze Advisor if you find:

- ACE American had the right to supervise Federal's infringing activity; and

- ACE American benefitted financially from Federal's infringement.[68]

The evidence in this case includes a reciprocal Service Agreement between Federal and ACE American, effective March 14, 2016. You are instructed that this Service Agreement establishes ACE American's right to supervise Federal's infringing activity performed on ACE American's behalf between March 14, 2016, and December 31, 2016.

Plaintiff's position on proposed Instruction No. 26(f)(1)

FICO's proposed instruction properly instructs the jury regarding the facts applicable to a determination of vicarious liability and the legal standard for the same. This law is reflected in the cited footnote.

The instruction also acknowledges the distinction between the infringing party (*e.g.*, the servicer and manager) and the writing company recognizing the revenue from the infringement. A determination of vicarious liability is relevant to the recovery of disgorged revenue from the named Defendants.

---

[68] *RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co.*, 845 F.2d 773, 781-82 (8th Cir. 1988); *Shapiro Bernstein and Co. v. H. L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963).

<u>Plaintiff's proposed Instruction No. 21(f)(2) — Vicarious Liability — Federal</u>

FICO contends that Federal is vicariously liable for ACE American's infringement performed on Federal's behalf from January 1, 2017, to the date infringement ceased. Federal is vicariously liable for ACE American's infringing use of Blaze Advisor if you find:

- Federal had the right to supervise ACE American's infringing activity; and

- Federal benefitted financially from ACE American's infringement.[69]

The evidence in this case includes a reciprocal Service Agreement between Federal and ACE American, effective March 14, 2016, and Amendment 1 to the Service Agreement, effective February 22, 2018. You are instructed that this Service Agreement and Amendment 1 establishes ACE American's direct infringement on Federal's behalf and that Federal had the right to supervise ACE American's infringing activity performed on Federal's behalf from January 1, 2017, to the date infringement ceased.

<u>Plaintiff's position on proposed Instruction No. 26(f)(2)</u>

FICO's proposed instruction properly instructs the jury regarding the facts applicable to a determination of vicarious liability and the legal standard for the same. This law is reflected in the cited footnote.

The instruction also acknowledges the distinction between the infringing party (*e.g.*, the servicer and manager) and the writing company recognizing the revenue from the infringement. A determination of vicarious liability is relevant to the recovery of disgorged revenue from the named Defendants.

---

[69] *RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co.*, 845 F.2d 773, 781-82 (8th Cir. 1988); *Shapiro Bernstein and Co. v. H. L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963).

***Defendants' proposal***

<u>Defendant's proposed Instruction No. 26(a) — Copyright Infringement</u>

On FICO's claim for copyright infringement, FICO has the burden of proving by a preponderance of the evidence that:

1.     FICO is the owner of a valid copyright (as I have said this element is established) and

2.     Defendants used the copyrighted work without permission.

<u>Defendant Federal is alleged to have infringed FICO's copyright by using Blaze Advisor after FICO purported to terminate the License Agreement.   **[Count III.]** Defendant ACE is alleged to have infringed FICO's copyright.   **[Count IV.]**   While Defendant Federal is alleged to have breached its contract with FICO by allowing its affiliates to use Blaze Advisor before the ACE acquisition, you may not consider any such conduct as copyright infringement.  **[Supp. S.J. Order 9.]**</u>

<u>Defendants' position on proposed Instruction No. 26(a)</u>

Defendants' position is that the Court's instruction, as modified, accurately and succinctly describes the copyright infringement cause of action.  Defendants rely on the legal authority cited in their proposal.

<u>Defendant's proposed Instruction No. 26(b) — Subject Matter</u>

FICO owns U.S. Copyright Registrations for various versions of Blaze Advisor software. Blaze Advisor is a computer program—or sets of statements or instructions to be used directly or indirectly in a computer to bring about a certain result. Copyright law can protect computer programs. The parties to this lawsuit all agree that FICO has a registered copyright in the versions of Blaze Advisor that are at issue in this lawsuit.

<u>Defendants' position on proposed Instruction No. 26(b)</u>

Defendants' position is that the Court's instruction accurately and succinctly describes Plaintiff's ownership of copyright in Blaze Advisor.

**Instruction No. 27: Damages**

***Plaintiff's proposal***

    <u>Plaintiff's proposed Instruction No. 27(a) — Actual Damages</u>

    <u>If you find that FICO's Blaze Advisor copyrights were infringed, you must determine FICO's actual damages resulting from that infringement. FICO's actual damages are the fair market value for the unauthorized use of Blaze Advisor to the full extent of the infringing use.[70] Fair market value for copyright actual damages is determined by means of a hypothetical negotiation in the same manner as I previously instructed regarding contract damages. (Instruction Nos. 25(g)(1)-(5) above.)</u>

    <u>Plaintiff's position on proposed Instruction No. 27(a)</u>

    FICO's proposed instruction orients the jury to the determination of actual damages related to copyright infringement. As described with respect to Instruction Nos. 25(g)(1)-(5) above, FICO's proposed instructions related to expectation damages, fair market value, hypothetical negotiation, and objective factors properly instruct the jury.

---

[70] *On Davis v. Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001); *see also Schonfeld v. Hilliard*, 218 F.3d 164, 178 (2d Cir. 2000) (cited in *Safka Holdings LLC v. iPlay, Inc.*, 42 F. Supp. 3d 488, 493 (S.D.N.Y. 2013))

Plaintiff's proposed Instruction No. 27(b)(1) — Disgorgement

The Copyright Act entitles the copyright holder to disgorgement from the infringer as a deterrent to infringement.[71] Because FICO contends that both Federal and ACE American infringed its copyrights, FICO seeks disgorgement from each of them. If you find that Federal and/or ACE American infringed FICO's copyrights, you must determine the amount of to be disgorged from each or both of them.

Plaintiff's position on proposed Instruction No. 27(b)(1)

FICO's proposed instruction orients the jury to the determination of disgorgement resulting from Defendants' copyright infringement. The legal standard is reflected in the cited footnote.

---

[71] 17 U.S.C. § 504(b); *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 795 (8th Cir. 2003) (quoting H.R. Rep. No. 94-1476, § 504, at 161 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5777) ("The infringer's profits are awarded to the copyright holder 'to prevent the infringer from unfairly benefiting from a wrongful act.'"); *Stehrenberger v. R.J. Reynolds Tobacco Holdings*, 335 F. Supp. 2d 466, 468 (S.D.N.Y. 2004) ("The copyright law punishes and deters in other ways: by statutory (enhanced) damages for willful infringements, disgorgement of profits, and imposition of costs and attorneys fees.").

Plaintiff's proposed Instruction No. 27(b)(2) — FICO's Burden of Proof — Gross Revenue

To determine disgorgement, it is FICO's burden to prove[72]:

- The amount of gross revenue in connection with which Blaze Advisor was used; and

- That the use of Blaze Advisor contributed to some extent to the generation of that gross revenue.

FICO does not have to prove Blaze Advisor was the only or exclusive factor that contributed to this revenue. FICO must prove that Blaze Advisor made some contribution or had some effect on the sale of insurance in connection with which it was used.[73]

If FICO proves that Blaze Advisor contributed to some extent to the sale of insurance in connection with which Blaze Advisor was used, the law presumes FICO is entitled to all the revenue from the sale of insurance in connection with which Blaze Advisor was used.[74]

Plaintiff's position on proposed Instruction No. 27(b)(2)

FICO's proposed instruction states the applicable burdens of proof under 17 U.S.C. § 504(b), including the articulation of FICO's burden to prove the amount of gross revenue in connection with which Blaze Advisor was used and that the use of Blaze Advisor contributed to some extent to the generation of that gross revenue.

FICO is not required to prove a "but-for" or causal relationship between the revenues and infringement. FICO need only prove that Blaze Advisor made some

---

[72] *Andreas v. Volkswagen of Am., Inc*., 336 F.3d 789, 799 (8th Cir. 2003); *Honeywell Int'l Inc. v. ICM Controls Corp*., No. 11-cv-569, 2017 U.S. Dist. LEXIS 11692, at *12, 15-16 (D. Minn. Jan. 26, 2017); *Dwyer Instruments v. Sensocon, Inc*., 873 F. Supp. 2d 1015, 1041-42 (N.D. Ind. 2012); *Victor Stanley, Inc. v. Creative Pipe, Inc*., No. MJG-06-2662, 2011 U.S. Dist. LEXIS 112846, at *13-14 (D. Md. Sep. 30, 2011); *Wood v. Houghton Mifflin Harcourt Publ'g Co*., 589 F. Supp. 2d 1230, 1248 (D. Colo. 2008).

[73] *William A. Graham Co. v. Haughey*, 568 F.3d 425, 443 (3d Cir. 2009); *Polar Bear Prods. v. Timex Corp*., 384 F.3d 700, 711-12 (9th Cir. 2004); *Dayva Int'l v. Award Prods. Corp*., 97-1397, 1998 U.S. App. LEXIS 4386 at *6-7 (Fed. Cir. Mar. 11, 1998); *Dwyer Instruments*, 873 F. Supp. 2d at 1041-42; *Garcia v. Coleman*, No. C-07-2279, 2009 U.S. Dist. LEXIS 29458, at *11-12 (N.D. Cal. Mar. 24, 2009); *Fournier v. McCann Erickson*, 242 F. Supp. 2d 318, 327 (S.D.N.Y. 2003).

[74] 17 U.S.C. § 504(b); *Andreas*, 336 F.3d at 795 (quoting *Frank Music Corp. v. MGM, Inc.*, 772 F.2d 505, 514 (9th Cir. 1985) ("Any doubt as to the computation of costs or profits is to be resolved in favor of the plaintiff. If the infringing defendant does not meet its burden of proving costs, the gross figure stands as the defendant's profits.").

contribution or had some effect on the sale of insurance in connection with which it was used. The Court acknowledged that FICO's proof of revenue is differentiated, *e.g.*, the revenue in connection with which Blaze Advisor was used. (Dkt. 731 at 57 ("Here, FICO presents evidence of gross revenue from the sale of insurance in connection with which Blaze Advisor was used. This evidence is not 'undifferentiated,' as it is tied to Defendants' use of Blaze Advisor.").)

The instruction acknowledges that if FICO meets this burden, a presumption that FICO receives all attributable revenue attaches. The applicable law is reflected in the cited footnotes.

Plaintiff's proposed Instruction No. 27(b)(3) — The Scope of Disgorgement — Revenue from the Single Enterprise

FICO contends that Federal and ACE American each led a single enterprise in the business of selling insurance.

FICO seeks disgorgement of all the revenue from the sale of insurance in connection with which Blaze Advisor was used that was sold in Federal's name, in the name of Federal's subsidiaries, and in the name of various other insurance company subsidiaries who were part of pooling arrangements led by Federal.

FICO also seeks disgorgement of all the revenue from the sale of insurance in connection with which Blaze Advisor was used that was sold in ACE American's name, in the name of ACE American's subsidiaries, and in the name of the various other insurance company subsidiaries who were part of pooling arrangements led by ACE American.

FICO contends that Federal and its subsidiaries and pooling members and that ACE American and its subsidiaries and pooling members were each a single enterprise.[75]

To find that Federal and its subsidiaries and pooling members and that ACE American and its subsidiaries and pooling members are each a single enterprise, FICO must prove:

---

[75] *Anchor Wall Sys. v. Rockwood Retaining Walls, Inc.*, 610 F. Supp. 2d 998, 1019-20 (D. Minn. 2009); *see also Kingston Dry Dock Co. v. Lake Champlain Transportation Co.*, 31 F.2d 265, 267 (2nd Cir. 1929); *Pacific Can. Co. v. Hewes*, 95 F.2d 42, 45-46 (9th Cir. 1938); *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1341-42 (2009) ("Factors for the trial court to consider include the commingling of funds and assets of the two entities, identical equitable ownership in the two entities, use of the same offices and employees, disregard of corporate formalities, identical directors and officers, and use of one as a mere shell or conduit for the affairs of the other."); *Tran v. Farmers Group, Inc.* 104 Cal. App. 4th 1202, 1220 (2002) ("When a reciprocal insurer functions as a mere instrumentality of an attorney-in-fact in the conduct of a unified insurance business, it would be inequitable to permit the attorney-in-fact to escape liability for breach of the covenant of good faith and fair dealing"); *S. Capitol Enters. v. Conseco Servs., L.L.C.*, 476 F. Supp. 2d 589, 596 (M.D. La. 2007) ("The evidence shows that Conseco Services, Conseco Health, and Conseco Senior are all owned by, and under the control of, Conseco, Inc. Conseco Inc.'s 10-K report lumps all three entities under the umbrella of 'Conseco Insurance Group.' Conseco, Inc. lumps all of its insurance subsidiaries in its formal filings as 'Conseco,' 'the Company,' 'we,' and 'us.'); *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1249-50 (1991); *Cf. Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1235-38 (10th Cir. 2017); *Frank Music Corp. v. MGM, Inc.*, 772 F.2d 505, 520 (9th Cir. 1985); *Geelan v. Mark Travel, Inc.*, No. 03-6322(DSD/JSM), 2006 U.S. Dist. LEXIS 89863, at *7-8 (D. Minn. Dec. 11, 2006); *Scheidecker v. Arvig Enters.*, 122 F. Supp. 2d 1031, 1037-38 (D. Minn. 2000).

- The companies in the single enterprise have a common purpose: to sell insurance;

- The companies in the single enterprise are under common control or have agreed to share their revenue and expenses; and

- The companies in the single enterprise sold insurance in connection with which Blaze Advisor was used.[76]

Plaintiff's position on proposed Instruction No. 27(b)(3)

FICO's proposed instruction states the controlling law of disgorgement under 17 U.S.C. § 504(b), including identifying that FICO may seek revenue attributable to the infringement even if a policy was written in the name of some entity other than the Defendants. (Dkt. 731at 32 ("Regardless of whether the disputed profits were earned in part by nonparties, the relevant issue is whether any such profits may fairly be considered profits of the infringer subject to FICO's disgorgement claim."). Any attempt to limit attributable revenue to only that of Federal and ACE American is contrary to law (as provided in the cited footnotes) and the law of the case (Dkt. 731 at 32-33.) The jury must be properly instructed on the full scope of disgorged revenue.

---

[76] *See* cases cited *supra* note 75.

Plaintiff's proposed Instruction No. 27(b)(4) — Defendants' Burden of Proof — Deduction of Expenses from Revenue

Federal and ACE American have the burden to prove deductible expenses.[77] Expenses take two forms: direct and general.  I will address each one in turn.

Direct expenses are those expenses that the evidence shows are directly traceable or linked to an insurance policy sold in connection with the use of Blaze Advisor. Direct expenses are deductible if Defendants prove those expenses are directly traceable or linked to an insurance policy sold in connection with the use of Blaze Advisor.[78]

General expenses are administrative expenses related to the operation of the business generally and are not directly tied to the sale of an insurance policy.[79] Not all general expenses can be deducted from the gross revenue generated in connection with the use of Blaze Advisor.

To deduct general expenses, the evidence must show two things: first, the general expense is connected to the sale of insurance using Blaze Advisor and contributed to the sale of those insurance policies,[80] and second, that any method of allocation used to match the general expenses connected to the sale of insurance generally to the insurance sold in connection with the use of Blaze Advisor is a fair and accurate one.

Any uncertainty as to in the proof of deductible expenses attributable to the failure to keep adequate records of costs is resolved in favor of FICO.[81]

---

[77] Dkt. 731 at 7 (quoting 17 U.S.C. § 504(b)) ("[T]he infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."); *see also* Dkt. 731 at 20 ("The burden to prove attribution is on the plaintiff, whereas the burden to prove apportionment is on the defendant.").

[78] 17 U.S.C. § 504(b); *Hamil Am., Inc. v. GFI, Inc.*, 193 F.3d 92, 104 (2d Cir. 1999); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, No. MJG-06-2662, 2011 U.S. Dist. LEXIS 112846, at *15-21 (D. Md. Sep. 30, 2011); *In Design v. Lauren Knitwear Corp.*, 782 F. Supp. 824, 832-34 (S.D.N.Y. 1991).

[79] *Hamil Am*, 193 F.3d at 105 (quoting 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.03[B] (1996)); *In Design*, 782 F. Supp. at 832-34; *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1329 (9th Cir. 1984) (Defendant "had not proven its claimed overhead was actually attributable to sales of the infringing items.").

[80] *Victor Stanley*, 2011 U.S. Dist. LEXIS 112846, at *18-21; *In Design*, 782 F. Supp. at 832-33 ("Defendant's overhead is also deductible, but only if the defendant can show what portion of overhead contributed to the production and sale of the infringing products."); *Universal Furniture Int'l, Inc. v. Collezione Europa, USA, Inc.*, 599 F. Supp. 2d 648, 660-61 (M.D.N.C. 2009);

[81] *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 795 (8th Cir. 2003) (quoting *Frank Music Corp. v. MGM, Inc.*, 772 F.2d 505, 514 (9th Cir. 1985)) ("Any doubt as to the

<u>Plaintiff's position on proposed Instruction No. 27(b)(4)</u>

FICO's proposed instruction states the applicable burdens of proof under 17 U.S.C. § 504(b), including the articulation of Defendants' burden to prove deductible expenses. FICO's instruction additionally instructs the jury on the difference between direct expenses and general expenses and the applicable burden of proof for each category of expense. FICO's proposed instruction properly informs the jury that any uncertainty in calculating expenses is to be resolved in favor of FICO. These legal standards are reflected in the cited footnotes.

---

computation of costs or profits is to be resolved in favor of the plaintiff. If the infringing defendant does not meet its burden of proving costs, the gross figure stands as the defendant's profits."); *Victor Stanley*, 2011 U.S. Dist. LEXIS 112846, at *16-21; *Universal Furniture*, 599 F. Supp. 2d at 660-61; *In Design*, 782 F. Supp. at 832.

Plaintiff's proposed Instruction No. 27(b)(5) — Defendants' Burden of Proof — Apportionment

Federal and ACE American also have the burden to prove the extent to which their revenue was attributable to factors other the infringement of Blaze Advisor.[82] Any apportionment of revenue to factors other than infringement must be based on evidence; you may not substitute your own feelings or judgment for evidence.[83] You may not speculate. Any uncertainty in the evidence must be resolved in favor of FICO.[84] The law presumes FICO is entitled to all the revenue from the sale of insurance in connection with the infringing use of Blaze Advisor, unless Federal and ACE American rebut that presumption with evidence.[85]

Plaintiff's position on proposed Instruction No. 27(b)(5)

FICO's proposed instruction states the applicable burdens of proof under 17 U.S.C. § 504(b), including the articulation of Defendants' burden to prove apportionment. FICO's proposed instruction properly informs the jury that any uncertainty in calculating expenses or apportionment is to be resolved in favor of FICO, and that the law presumes FICO is entitled to all the revenue from the sale of insurance in connection with the infringing use of Blaze Advisor, unless Federal and ACE American rebut that presumption with evidence. These legal standards are reflected in the cited footnotes.

---

[82] 17 U.S.C. § 504(b); *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 567 (1985) (quoting *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 406 (1940)); *Blackman v. Hustler Magazine, Inc.*, 800 F.2d 1160, 1163-64 (D.C. Cir. 1986); *Capital, Inc. v. Charter Asset Mgmt. Fund, LP*, No. CV 14-3385-GW(PLAx), 2017 U.S. Dist. LEXIS 220748 at *32-35 (C.D. Cal. Jan. 12, 2017).

[83] *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 797-98 (8th Cir. 2003) ("The district court's error was in placing the detriment of any speculation on Andreas rather than on Audi. The question of allocating an infringer's profits between the infringement and other factors, for which the defendant infringer carries the burden . . . ."); *Balsley v. LFP, Inc.*, 691 F.3d 747, 769 (6th Cir. 2012) ("When applied to the infringer as outlined in the statute, however, 'attributable to' means apportionment."); *Design Ideas v. Things Remembered*, No. 07-3077, 2009 U.S. Dist. LEXIS 38374, at *13-14 (C.D. Ill. May 6, 2009).

[84] *Andreas*, 336 F.3d at 797-98 ("The district court's error was in placing the detriment of any speculation on Andreas rather than on Audi. The question of allocating an infringer's profits between the infringement and other factors, for which the defendant infringer carries the burden . . ."); *Design Ideas*, 2009 U.S. Dist. LEXIS 38374, at *13-14.

[85] 17 U.S.C. § 504(b); *Andreas*, 336 F.3d at 795 (quoting *Frank Music Corp. v. MGM, Inc.*, 772 F.2d 505, 514 (9th Cir. 1985)) ("Any doubt as to the computation of costs or profits is to be resolved in favor of the plaintiff. If the infringing defendant does not meet its burden of proving costs, the gross figure stands as the defendant's profits.").

**Defendants' proposal**

Defendants' proposed Instruction No. 27(a) — Actual Damages

On both its breach of contract claim and its copyright infringement claim, FICO seeks actual damages to compensate it for its losses. For both claims, FICO has asserted that its damages are the value of the license fees it lost from Defendants. **[FICO Third Supplemental Response to Interrogatory No. 6-9]** The fair market value of lost license fees is the "the reasonable license fee on which a willing buyer and a willing seller would have agreed." **[S.J. Order 9; *On Davis v. The Gap, Inc.*, 246 F.3d 156, 166 (2d Cir. 2001).]** You may not consider the copyright owner's subjective beliefs about the value of its product or what it would have charged. **[S.J. Order 31 (finding such considerations "irrelevant").]** For that reason, the value of a reasonable license fee is not affected by one party's view that the other party has acted wrongfully. **[Id.]** You may not award duplicate actual damages for both FICO's breach of contract claim and its copyright infringement claim because FICO is not entitled to recover two sets of license fees. You may award actual damages only once. **[Federal law: *Bowers v. Baystate Techs., Inc.*, 320 F.3d 1317, 1328 (Fed. Cir. 2003); *First Nat'l Bank of Omaha v. Three Dimension Sys. Prods., Inc.*, 130 F. Supp. 2d 1102, 1107 (D. Neb. 2001). New York law: *Hauser v. Fort Hudson Nursing Ctr., Inc.*, 202 A.D. 45, 53 (2d Dep't 2021).]**

Defendants' position on proposed Instruction No. 27(a)

Defendants' position is that this instruction accurately and succinctly describes the law governing Plaintiff's claim of actual damages. Defendants rely on the legal authority cited in their proposal. Moreover, because actual damages may be awarded only once, Defendants propose to instruct the jury on actual damages only once after liability instructions are complete.

<u>Defendants' proposed Instruction No. 27(b) — Defendants' Profits</u>

In addition to recovering its actual losses, FICO ~~is~~ <u>may also be</u> entitled to recover the profits that Federal and/or ACE American made because of the infringement. Defendant's profits are recoverable, however, only to the extent that you have not taken them into account in determining FICO's actual ~~losses~~ <u>damages</u>.

Defendant~~'s~~<u>'s'</u> profits are revenues that Defendant made because of the infringement, minus Defendant's expenses in using the Blaze Advisor software. FICO need only prove Defendant's revenues. <u>However, it is not enough for FICO to show the gross revenues from everything Defendants sold.  FICO must prove gross revenues from the sale of products or services that have an actual connection to the infringing use.  **[S.J. Order 56–57.]**</u>  Defendant<u>s</u> must prove ~~his~~ <u>their</u> own expenses and any portion of ~~his~~ <u>their</u> profits that resulted from factors other than ~~infringement of Plaintiff's copyright~~ <u>the use of Blaze Advisor.</u>

<u>You may consider the existence of market alternatives to Blaze Advisor as part of deciding the extent to which Blaze Advisor actually contributed to Defendants' profits. **[*Complex Systems, Inc. v. ABN Ambro Bank N.V.*, 2013 WL 5970065, at \*11 (S.D.N.Y. Nov. 8, 2013); *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1157, 1175 (1st Cir. 1994).]**</u>

<u>Defendants' position on proposed Instruction No. 27(b)</u>

Defendants' position is that the Court's instruction, as modified, accurately and succinctly describes the law governing Plaintiff's claim for profits.  Defendants rely on the legal authority cited in their proposal.  Defendants preserve their objection to an advisory jury finding on profits disgorgement.

**Instruction No. 28: Deliberations and Special Verdict Forms**

There are rules you must follow when you go to the jury room to deliberate and return with your verdict.

First, you will select a foreperson. That person will preside over your discussions and speak for you here in court.

Second, your verdict must be the unanimous decision of all jurors. Therefore, it is your duty, as jurors, to discuss this case with one another in the jury room. You should try to reach agreement, if you can do this without going against what you believe to be true.

Each of you must come to your own decision, but only after you have considered all the evidence, discussed the evidence fully with your fellow jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your mind if the discussion persuades you that you should. But, do not come to a decision just because other jurors think it is right, or just to reach a unanimous verdict. Remember you are not for or against any party. You are judges—judges of the facts. Your only job is to study the evidence and decide what it true.

Third, during your deliberations, including during any recess taken during deliberations, you must not, directly or indirectly, communicate with or provide any information to anyone by any means or by any medium, about anything relating to this case, until I accept your verdict and discharge you from further service in this case.

Fourth, as stated in my instructions at the beginning of the trial, you may not in any manner seek out or receive any information about the case from any source other than the evidence received by the court and the law of the case I have provided to you. You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence you have. In our judicial system, it is important that you are not influenced by anything or anyone outside of this courtroom. Otherwise, your decision may be based on information known only by you and not your fellow jurors or the parties in the case. This would unfairly and adversely impact the judicial process.

Fifth, if you need to communicate with me during your deliberations, send me a note signed by the foreperson. Give the note to the court security office and I will answer you as soon as I can, either in writing or here in court. While you are deliberating, do not tell anyone—including me—how many jurors are voting for any side.

Sixth, nothing I have said or done was meant to suggest what I think your verdict should be. The verdict is entirely up to you.

Finally, the verdict form is your written decision in this case. The form reads: (read form).

You will take this form to the jury room and when you have all agreed on the verdict[s], your foreperson will fill in the form, sign and date it, and tell the court security officer that you are ready to return to the courtroom.

Dated:  January 25, 2023

/s/ Heather Kliebenstein
Allen Hinderaker, MN Bar # 45787
Heather Kliebenstein, MN Bar # 337419
Paige S. Stradley, MN #393432
Michael A. Erbele, MN Bar # 393635
Joseph Dubis, MN Bar # 0398344
Gabrielle L. Kiefer, MN Bar # 0402364
MERCHANT & GOULD P.C.
150 South Fifth Street
Suite 2200
Minneapolis, MN 55402
Tel: (612) 332-5300
Fax: (612) 332-9081
ahinderaker@merchantgould.com
hkliebenstein@merchantgould.com
pstradley@merchantgould.com
merbele@merchantgould.com
jdubis@merchantgould.com
gkiefer@merchantgould.com

*Attorneys for Plaintiff FICO*

/s/ Leah Godesky
Terrence J. Fleming (#0128983)
tfleming@fredlaw.com
Leah C. Janus (#0337365)
ljanus@fredlaw.com
Christopher D. Pham (#0390165)
cpham@fredlaw.com
Ryan C. Young (#0397751)
ryoung@fredlaw.com
Panhia Vang (#399444)
pvang@fredlaw.com

Fredrikson & Byron, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
(612) 492-7000 (tel.)
(612) 492-7077 (fax)

Leah Godesky (Admitted Pro Hac Vice)
lgodesky@omm.com
Anton Metlitsky (Admitted Pro Hac Vice)
ametlitsky@omm.com
Daryn Rush (Admitted Pro Hac Vice)
drush@omm.com

Roxana Guidero (Admitted Pro Hac Vice)
rguidero@omm.com

O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036
(212) 326-2000

*Attorneys for Federal Insurance Company and
ACE American Insurance Company*