# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation, | ) Case No. 16-cv-1054 (DTS) ) ) |
| Plaintiff, | ) **Jury Trial Demanded** ) |
| v. | ) ) |
| FEDERAL INSURANCE COMPANY, an Indiana corporation and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation, | ) ) ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF FAIR ISAAC CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE REGARDING FICO'S PRESENTATION OF EVIDENCE ON ITS ALLEGED ACTUAL DAMAGES**

# **TABLE OF CONTENTS**

I. Introduction ................................................................................................... 1

II. The Court's summary judgment Order found FICO can present evidence relevant to its actual damages, including its application-based pricing methodology. ................................................................................................. 2

III. Mr. Waid is a lay witness and will properly offer testimony based on his personal knowledge and experience stemming from years of negotiating and pricing license agreements for FICO. .................................................. 5

    A. Fact witnesses may offer testimony that is technical in nature. .................... 5

    B. Mr. Waid's testimony is based on his personal knowledge and experience. ................................................................................................. 6

IV. Conclusion .................................................................................................... 8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allied Sys., Ltd. v. Teamsters Auto. Transp. Chauffeurs, Demonstrators & Helpers, Local 604*,
  304 F.3d 785 (8th Cir. 2002) .................................................................................... 5

*Duluth Lighthouse of the Blind v. C.G. Bretting Mfg. Co.*,
  199 F.R.D. 320 (D. Minn. 2000) ............................................................................... 5

*Gaylord v. United States*,
  777 F.3d 1363 (Fed. Cir. 2015) ................................................................................. 7

*M2M Sols. LLC v. Enfora, Inc.*,
  167 F. Supp. 3d 665 (D. Del. 2016) .......................................................................... 7

*M2M Sols. LLC v. Motorola Sols., Inc.*,
  No. 12-cv-33, 2016 U.S. Dist. LEXIS 22944 (D. Del. Feb. 25, 2016) ...................... 7

*Medtronic, Inc. v. Bos. Sci. Corp.*,
  No. 99-cv-1035, 2002 U.S. Dist. LEXIS 28355 (D. Minn. Aug. 8, 2002) ................ 5

*Raimondi v. Olenicoff*,
  No. 12-cv-2094, 2015 U.S. Dist. LEXIS 174961
  (C.D. Cal. July 7, 2015) ............................................................................................ 7

*United States v. Mast*,
  999 F.3d 1107 (8th Cir. 2021) ................................................................................... 5

**Other Authorities**

Fed. R. Evid. 701 ............................................................................................................ 5

I.      Introduction

Plaintiff Fair Isaac Corporation ("FICO") respectfully requests the Court deny Defendants Federal Insurance Company's ("Federal") and ACE American Insurance Company's ("ACE American") (collectively, "Defendants") motion to preclude FICO from presenting evidence of its actual damages. Defendants' motion asks this Court to preclude FICO from presenting admissible evidence that this Court has already twice held is relevant to the jury's determination of FICO's actual damages.

Defendants falsely assert the Court has precluded FICO from presenting evidence of fair market value based on an "'application-based' theory." (Dkt. No. 969 at 2.) Nothing in this Court's summary judgment Order supports that assertion. True, FICO's damages expert Mr. Zoltowski cannot testify to the amount of FICO's lost license fees. (Dkt. No. 731 at 31-32.) The Court, however, denied Defendants' motion for summary judgment on FICO's claim for actual damages, ruling "there remains relevant evidence *underlying* those opinions [Mr. Zoltowski's actual damages opinion] that has *not* been excluded. This includes evidence of FICO's standard pricing methodology" and "evidence of Defendants' use of Blaze Advisor . . . ." (*Id.* at 55 (emphasis in the original); *see also* Dkt. No. 935 at 5 (reiterating the relevance of FICO's standard pricing to actual damages in Order denying Defendants' motion to bifurcate).)

Defendants' current motion ignores this Court's prior rulings and also directly contradicts representations made by Defendants' counsel a month and a half ago at the hearing on Defendants' motion to bifurcate. There, counsel for Defendants stated, "Number one, we agree they have every right to try their case on actual damages. They

1

can put out their $47 million figure and the evidence they say supports it. No one is talking about limiting the evidence on that front." (Declaration of Paige Stradley ("Stradley Decl.") Ex. 1 at 31:7-11.) FICO's $47 million claim is supported by FICO's standard pricing methodology from which its application-based pricing stems.

FICO is entitled to present its evidence relevant to the hypothetical negotiation. Assuming Defendants can meet their burden to show third-party agreements are comparable to the circumstances of the hypothetical negotiation, they can present their evidence. The jury should receive testimony and documents relating to **all** factors bearing on its determination of fair market value, what a willing licensee and a willing licensor would have agreed to under the circumstances. Defendants' motion should be denied.

**II.     The Court's summary judgment Order found FICO can present evidence relevant to its actual damages, including its application-based pricing methodology.**

Defendants mischaracterize the Court's summary judgment Order and its findings with respect to FICO's claim for actual damages. Nowhere did the Court (1) exclude FICO's claim for actual damages or (2) suggest that FICO could not present facts to support its actual damages claim, including its "application-based theory." Indeed, the Court's summary judgment Order expressly held otherwise.

Defendants moved to exclude the opinions of FICO's damages expert, Mr. Zoltowski, on actual damages. In support of their motion, Defendants contended, *inter alia*, that Mr. Zoltowski utilized the wrong legal standard in reaching his conclusion as to the amount of actual damages to which FICO was entitled, namely that he did not consider the fair market value of Blaze Advisor for Federal's unauthorized use. (Dkt. No.

2

406 at § II(A)(2).) Defendants also argued that the application-based methodology utilized by Mr. Zoltowski was improper and that he should have structured the license as a perpetual, enterprise-wide license. (*See, e.g.*, *id.* at 18, 22.)

The Court agreed with Defendants that the proper legal standard for determining actual damages is the fair market value of Blaze Advisor based on a hypothetical negotiation calculated as "the reasonable license fee on which a willing buyer and a willing seller would have agreed." (Dkt. No. 731 at 54.) Accordingly, the Court excluded Mr. Zoltowski's ultimate conclusion as to the amount of actual damages to which FICO was entitled. (*Id.* at 32.)

The Court did not, however, find the application-based methodology utilized by Mr. Zoltowski and discussed and explained by Mr. William (Bill) Waid irrelevant. The application-based methodology is based on FICO's standard pricing methodology. The Court ruled that consideration of ***only*** FICO's standard pricing methodology, without consideration of other factors also pertinent to a hypothetical negotiation, was improper. (*Id.* at 30-32, 54-55.) But the Court denied Defendants' motion seeking summary judgment on FICO's actual damages claim, explaining that, although it had excluded the opinion of Mr. Zoltowski, "there remains relevant evidence *underlying* those opinions that has *not* been excluded. This includes evidence of FICO's standard pricing methodology that, together with evidence of Defendants' use of Blaze Advisor, creates a genuine dispute of material fact as to actual damages." (*Id.* at 55 (emphasis in the original).)

3

The Court again recognized the relevance of FICO's standard pricing methodology in denying Defendants' motion to bifurcate: "The Court has already explained that in this case 'relevant evidence' of FMV includes 'FICO's standard pricing methodology' and 'evidence of Defendants' use of Blaze.' Indeed, the parties agree that evidence about Defendants' revenues is relevant to determining FMV in the hypothetical negotiation." (Dkt. No. 935 at 5.) The Court is correct; Defendants did agree that their revenues are relevant to determining the fair market value of Blaze Advisor because such revenues are relevant to FICO's standard pricing model: "We absolutely agree that defendants' total revenue is relevant to FICO's pricing model, and so that will be considered if the jury is evaluating fair market value, actual damages." (Stradley Decl. Ex. 1 at 5:1-4.) Defendants also admit they "agree they [FICO] have every right to try their case on actual damages. They can put out their $47 million figure and the evidence that they say supports it. No one is talking about limiting the evidence on that front." (*Id.* at 31:7-11.) FICO's case of actual damages includes the application-based pricing called for by FICO's standard pricing methodology.

The Court's prior rulings on summary judgment and Defendants' admissions warrant denial of Defendants' motion in limine. The Court has already found FICO's application-based methodology based on its standard pricing relevant to the jury's assessment of the fair market value of Blaze Advisor. Defendants are, of course, welcome to present evidence that challenges FICO's evidence and to cross examine FICO's witnesses on the same.

4

### III. Mr. Waid is a lay witness and will properly offer testimony based on his personal knowledge and experience stemming from years of negotiating and pricing license agreements for FICO.

FICO's evidence of lost license fees will include its standard pricing methodology, the evidence of Defendants' use of Blaze Advisor, and other evidence that bears on the hypothetical negotiation. FICO's evidence will conform to the Court's summary judgment Order.

FICO's principal witness will be Mr. Waid, currently FICO's Chief Product & Technology Officer. He has decades of personal experience negotiating and pricing license agreements, including the pricing of Blaze Advisor license agreements. Defendants contend that Mr. Waid is offering expert testimony. Defendants are wrong. Mr. Waid will offer lay testimony based on his personal knowledge and experience.

#### A.  Fact witnesses may offer testimony that is technical in nature.

Fact witnesses may testify regarding facts within their personal knowledge, even if those facts are of a technical nature. *Allied Sys., Ltd. v. Teamsters Auto. Transp. Chauffeurs, Demonstrators & Helpers, Local 604*, 304 F.3d 785, 792 (8th Cir. 2002); *Duluth Lighthouse of the Blind v. C.G. Bretting Mfg. Co.*, 199 F.R.D. 320, 325-26 (D. Minn. 2000). A fact witness may be a person with expertise. *United States v. Mast*, 999 F.3d 1107, 1112 (8th Cir. 2021); *Medtronic, Inc. v. Bos. Sci. Corp.*, 99-cv-1035, 2002 U.S. Dist. LEXIS 28355, at *74-75 (D. Minn. Aug. 8, 2002) (explaining that Rule 701 distinguishes between expert and lay testimony, not expert and lay witnesses).

The Court previously addressed this very issue in connection with a different FICO witness, Jean-Luc Marce. In assessing Mr. Marce's testimony, the Court disagreed

5

with Defendants' contention that Mr. Marce was "an expert in lay witness clothing," explaining that Mr. Marce had relied upon his professional training and experience to, among other things, calculate how many lines of identical source code have been retained between each version of Blaze Advisor. (Dkt. No. 880 at 13-14.) The Court further explained that "a mathematical calculation involves facts, not opinions" and noted that Federal could challenge the accuracy of those calculations through cross-examination and the presentation of contrary evidence. (*Id.* at 14.)

Like Mr. Marce, Mr. Waid's testimony is factual in nature and stems from his professional training and experience—it is not expert testimony. Defendants' contentions otherwise are meritless. Indeed, Defendants admit that "a lay witness with personal knowledge may opine as to the value of a business's product." (Dkt. No. 969 at 10.)[1]

### B. Mr. Waid's testimony is based on his personal knowledge and experience.

Defendants assert that Mr. Waid does not have the requisite personal knowledge to testify to the fair market value of FICO's lost license fees. They do so without any basis.

Mr. Waid has over a decade of experience negotiating Blaze Advisor license agreements and the fees to be paid under those agreements. In this case, the facts will show he was the ultimate authority for pricing the 2006 License Agreement with Chubb & Son, the division of Federal, and led the cure negotiations in 2016 when that License Agreement was breached. (*See, e.g.*, Stradley Decl. Ex. 2 at 13:15-14:4, 16:17-22, 22:12-

---

[1] Separately, in seeking to compel another deposition of Mr. Waid, Defendants characterized Mr. Waid's testimony relevant to damages, including how he calculated lost license fees, as factual. (Dkt. No. 237 at 2, 15-16.)

6

20, 24:4-15, 146:3-147:22, 148:2-150:19.) His job was to approve prices for FICO's decision management software licenses, including Blaze Advisor licenses. (*See, e.g.*, *id.* at 10:19-11:18, 12:18-14:4, 142:18-144:20, 145:9-22.) He is intimately familiar with FICO's pricing methodologies, discounts and other adjustments offered by FICO, perpetual versus annual licenses, and the circumstance and factors that are considered in connection with the same. (*See, e.g.*, *id.* at 10:16-13:7, 13:15-14:4, 128:23-129:9; *id.* at Ex. 3 at 14:9-18:6; *see also*, *id.* at Ex. 4 at 16:19-18:17, 73:16-74:5.)

At its core, Defendants' argument is really that Mr. Waid has not negotiated an annual, application-based license (rather than a perpetual license) for $47 million and that FICO license agreements with other Clients are allegedly inconsistent with FICO's position in this case. Defendants are free to pursue those arguments on cross-examination. And, assuming Defendants meet the foundational requirement of showing comparability of third-party license agreements, Defendants are free to question Mr. Waid regarding those agreements.[2] He will explain why those other agreements are

---

[2] To be relevant a third-party agreement must be economically comparable to the circumstances of the hypothetical negotiation. *Gaylord v. United States*, 777 F.3d 1363, 1368 (Fed. Cir. 2015) ("[T]he use of past licenses as evidence must always take account of economically relevant differences between the circumstances of those licenses and the circumstances of the matter in litigation."); *Raimondi v. Olenicoff*, No. 12-cv-2094, 2015 U.S. Dist. LEXIS 174961, at *6 (C.D. Cal. July 7, 2015). Defendants bear the initial burden of proving that any third-party agreements they seek to introduce are economically comparable. *See M2M Sols. LLC v. Motorola Sols., Inc.*, No. 12-cv-33, 2016 U.S. Dist. LEXIS 22944, at *26-27 (D. Del. Feb. 25, 2016) ("Defendant must show that the prior licenses . . . are actually comparable to the license that the parties would have negotiated . . . before introducing this evidence to the jury."); *M2M Sols. LLC v. Enfora, Inc.*, 167 F. Supp. 3d 665, 678 (D. Del. 2016).

7

not comparable to the hypothetical negotiation in this case. That Defendants have a different perspective than Mr. Waid does not make Mr. Waid's direct testimony expert testimony or improper in any way.

Because Mr. Waid's testimony will be based on his personal knowledge, it is not expert testimony even if some of it is technical in nature. (*See supra* § III(A).) Defendants' argument that Mr. Waid is offering an expert opinion because he may perform some mathematical exercises is belied by this Court's prior finding that "a mathematical calculation involves facts, not opinions" and Defendants' own briefing. On the one hand, Defendants argued that Mr. Zoltowski was merely a mouthpiece for Mr. Waid and offered no actual expertise (Dkt. No. 406 at 14); on the other hand, Defendants now argue that Mr. Waid's testimony is technical and too advanced to be lay testimony (Dkt. No. 969 at 9-10). These internally inconsistent statements cannot be squared. The simple truth is that Mr. Waid has the personal knowledge and experience to offer testimony on pricing and to do math, just as he has in numerous other instances throughout his career. That does not transform testimony based on his own personal knowledge and experience into expert testimony.

## IV.   Conclusion

The Court has already denied Defendants' motion for summary judgment as to FICO's claim for actual damages, has already held that FICO can present evidence to support its claim for actual damages, and has already found that FICO's standard pricing methodology is relevant to the fair market value of Blaze Advisor. FICO will present such evidence through documents and witness testimony, including that of Mr. Waid. Mr.

8

Waid's testimony will be based on his personal knowledge and experience—it is not expert testimony. Defendants' motion in limine to exclude FICO's presentation of evidence in support of its actual damages claim should be denied.

Dated: January 27, 2023

                                        MERCHANT & GOULD P.C.

                                        /s/ Heather Kliebenstein
Allen Hinderaker, MN Bar # 45787
Heather Kliebenstein, MN Bar # 337419
Paige S. Stradley, MN Bar # 393432
Michael A. Erbele, MN Bar # 393635
Joseph W. Dubis, MN Bar # 398344
Gabrielle L. Kiefer, MN Bar # 0402364
MERCHANT & GOULD P.C.
150 South Fifth Street
Suite 2200
Minneapolis, MN 55402
Tel: (612) 332-5300
Fax: (612) 332-9081
ahinderaker@merchantgould.com
hkliebenstein@merchantgould.com
pstradley@merchantgould.com
merbele@merchantgould.com
jdubis@merchantgould.com
gkiefer@merchantgould.com

*Attorneys for Plaintiff Fair Isaac Corporation*

9