# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation, | Case No. 16-cv-1054 (DTS) |
| Plaintiff, | **Jury Trial Demanded** |
| v. | |
| FEDERAL INSURANCE COMPANY, an Indiana corporation and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation, | |
| Defendants. | |

**PLAINTIFF FAIR ISAAC CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE REGARDING NEIL ZOLTOWSKI'S TESTIMONY ON FICO'S ALLEGED ACTUAL DAMAGES**

# TABLE OF CONTENTS

I. Introduction ................................................................................................. 1

II. The Court's summary judgment Order found facts underlying Mr. Zoltowski's actual damages opinion relevant. ....................................................... 2

III. The scope of Mr. Zoltowski's testimony is consistent with the Court's Order and is not new ................................................................................. 4

    A. Mr. Zoltowski will offer testimony that is relevant to the jury's analysis of actual damages. ............................................................. 4

    B. Mr. Zoltowski will not offer testimony outside of the scope of his reports. .................................................................................................. 5

IV. Conclusion ................................................................................................. 8

# TABLE OF AUTHORITIES

Page(s)

**Statutes**

17 U.S.C. § 504 ................................................................................................. 1, 4, 8

**Other Authorities**

Fed. R. Evid. 702 ....................................................................................................... 7

I.  **Introduction**

Plaintiff Fair Isaac Corporation ("FICO") respectfully requests the Court deny Defendants Federal Insurance Company's ("Federal") and ACE American Insurance Company's ("ACE American") (collectively, "Defendants") motion to preclude FICO from having its damages expert Neil Zoltowski provide testimony relevant to actual damages. Defendants' motion relies on two faulty premises that this Court should reject.

First, Defendants claim that FICO "intends for its damages expert, Neil Zoltowski, to offer wide-ranging opinions on how FICO's alleged actual damages—lost license fees reflecting Blaze Advisor's fair market value—should be measured." (Dkt. No. 976 at 1.) Defendants conflate the role of Mr. Zoltowski and the role of the Court. The Court will provide the jury with instructions on the law relating to the hypothetical negotiation and factors to be considered as part of that negotiation. Mr. Zoltowski will provide facts and his analysis of certain facts relevant to the jury's assessment of the hypothetical negotiation. The jury will consider and assess those and other facts to reach an ultimate determination as to the amount of actual damages to which FICO is entitled. This is consistent with the Court's summary judgment Order which expressly stated that "there remains relevant evidence *underlying* those [Mr. Zoltowski's] opinions that has *not* been excluded. This includes evidence of FICO's standard pricing methodology [], together with evidence of Defendants' use of Blaze Advisor . . . ." (Dkt. No. 731 at 55 (emphasis in original).) The Court also expressly found that Mr. Zoltowski could testify regarding the corporate structure and economic relationships of the corporate entities at issue. (*Id.* at 32-34.) Such testimony is relevant to both actual damages and disgorgement under 17

1

U.S.C. § 504(b). (*Id.* at 10 n.1 (recognizing that expert opinions may be relevant to multiple legal issues).)

Second, Defendants assume that Mr. Zoltowski will testify to new opinions that have not been disclosed in his expert reports. Not so. Mr. Zoltowski will only present facts and opinions that have been disclosed in his expert reports. Consistent with the Court's Order, Mr. Zoltowksi also will not offer any opinion as to the ultimate amount of actual damages that FICO should receive. That is for the jury.

Mr. Zoltowksi will offer facts and his analysis of certain facts (as disclosed in his expert reports) that the jury will consider in determining actual damages based on the Court's instructions. Defendants' motion should be denied.

**II.     The Court's summary judgment Order found facts underlying Mr. Zoltowski's actual damages opinion relevant.**

Defendants argue that the Court's summary judgment Order precludes FICO from offering any testimony from its expert Mr. Zoltowski regarding actual damages. It is true that the Court excluded Mr. Zoltowski's ultimate opinion regarding the amount of FICO's actual damages, but the Court also expressly held that facts underlying Mr. Zoltowski's actual damages opinion are relevant and are properly considered by the jury: "[T]here remains relevant evidence *underlying* those [Mr. Zoltowski's] opinions that has *not* been excluded. This includes evidence of FICO's standard pricing methodology" and

2

"evidence of Defendants' use of Blaze Advisor . . . ." (Dkt. No. 731 at 30-32, 55 (emphasis original).)[1]

Although Defendants admit that the Court found facts underlying Mr. Zoltowski's opinions relevant to actual damages (Dkt. No. 976 at 3-4), they effectively ignore this portion of the Court's Order and argue that Mr. Zoltowski cannot offer any testimony or opinions regarding actual damages. Defendants' position fails to give effect to the Court's express ruling and, separately, fails to recognize the distinction between presenting testimony and opinions relevant to actual damages versus providing an opinion on actual damages. As the Court explained in the context of Defendants' expert Mr. McCarter:

> FICO argues that McCarter cannot opine on matters outside the scope of his report, which does not expressly address actual damages. But Defendants contend only that McCarter's opinions are *relevant* to actual damages, not that he will directly *opine* about actual damages. Instead, McCarter will opine about market alternatives—a subject that *is* within the scope of his report. That such opinions also may be relevant to other legal issues does not render the opinions inadmissible. Nothing in the Federal Rules of Civil Procedure requires an expert report to precisely link the expert's opinions to specific legal issues. *See* Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii) (requiring an expert report to include "a complete statement of all opinions the witness will express and the basis and reasons for them" as well as "the facts or data considered by the witness in forming them").

(Dkt. No. 731 at 10 n.1.) Like Mr. McCarter, Mr. Zoltowksi will present testimony relevant to actual damages but will not opine on an amount of actual damages.

---

[1] Defendants' statement that the "application-based fee structure has no relation to the fair market value of a Blaze license" (Dkt. No. 976 at 2) is directly contradicted by the Court's ruling on summary judgment. The Court held that FICO's standard pricing methodology (on which the application-based pricing method is based) was relevant to the hypothetical negotiation. (Dkt. No. 731 at 55; *see also* Dkt. No. 935 at 5.)

3

**III.    The scope of Mr. Zoltowski's testimony is consistent with the Court's Order and is not new.**

### A.    Mr. Zoltowski will offer testimony that is relevant to the jury's analysis of actual damages.

The Court found that facts underlying Mr. Zoltowski's actual damages opinion were relevant. Those relevant facts and his analysis of them include:

- the business benefits of Blaze Advisor measured by the amount of annual revenue generated in connection with the unauthorized use of Blaze Advisor;

- the percentage that revenue generated in connection with unauthorized use of Blaze Advisor represents with respect to the total annual revenue of the Chubb Limited enterprise;

- the gross written premium per application and the total gross written premium for all applications per year and for the total period of unauthorized use;

- the corporate structure of Defendants, their subsidiaries, and pooling entities; and

- the use of Blaze Advisor in the single enterprises led by Federal and ACE American that benefited many other insurance companies.

Each of these topics is relevant to both disgorgement under Section 504(b) and the parties' hypothetical negotiation, namely Defendants' use of Blaze Advisor and the intrinsic value of Blaze Advisor. (Dkt. No. 731 at 34 (explaining that in the context of disgorgement, Mr. Zoltowksi is qualified to provide opinions "pertain[ing] to the 'corporate structure' and 'economic relationships' of the corporate entities at issue"), 18 (explaining that intrinsic value of Blaze Advisor is relevant to actual damages), 54-55 (explaining that Defendants' use of Blaze Advisor is relevant to actual damages).) Mr. Zoltowksi should be permitted to testify regarding these facts and his analysis of them.

4

### B. Mr. Zoltowski will not offer testimony outside of the scope of his reports.

Defendants wrongly presume Mr. Zoltowksi will testify on FICO's actual damages using a new, undefined analysis. (Dkt. No. 976 at 4.) Mr. Zoltowksi will not use "a new, undefined analysis" nor will he testify as to the amount owed to FICO or the dynamics of the hypothetical negotiation, e.g., that a particular factor puts upward pressure on the negotiation.[2] He, like any expert, will testify to facts and his analysis of facts within the scope of his reports. If Defendants believe Mr. Zoltowksi testifies beyond the scope of his reports, the proper course of action is to object at trial.

Defendants' primary complaint is with FICO's intention to offer testimony from Mr. Zoltowski to support its position that Defendants, their subsidiaries, and their pooling entities are a single economic unit rather than independent businesses. But, such testimony is a fundamental component of Mr. Zoltowski's report. To suggest otherwise is baseless.

Section IV(A)(v) of Mr. Zoltowski's expert report is entitled "A Single Economic Unit." That section explains the basis for Mr. Zoltowski's opinions regarding the structure of Defendants' businesses and addresses five overarching subjects: (a) Consolidation of Federal and ACE American Financial Statements; (b) Parent and Subsidiary Relationship; (c) Pooling Agreements; (d) Consolidated Income Tax Returns - Post Acquisition; and (e) Economic Benefits of a Single Economic Unit. For

---

[2] To the extent FICO's prior briefing (Dkt. No. 910) could be interpreted otherwise, FICO agrees it is not the role of Mr. Zoltowski to instruct the jury on the law to be applied in assessing the hypothetical negotiation.

example, Mr. Zoltowski testified that "the authoritative accounting organization in the United States, requires that subsidiaries are consolidated with parent companies because financial statements are intended to reflect the economic realities of businesses"; "economic relationships are defined by the parent's corporate structure and financial interest (e.g., percent ownership) in each subsidiary"; and "both Federal and ACE American are currently direct (Federal) and indirect (ACE American) subsidiaries of Chubb INA Holdings, Inc., and both are also parents of several subsidiaries, all of which roll up and are reported in total with Chubb Limited." (Declaration of Paige Stradley ("Stradley Decl.") Ex. 1 at ¶ 30.) He further testified regarding the pooling arrangements between Defendants and members of their pool and why they operate as a single unit:

> [T]he pooling agreement allows individual companies to satisfy, among other requirements, the regulatory requirements of each state where it wants to do business (e.g., filing of product definitions such as rates, rules, and forms with a state's Department of Insurance) and to allow the members of the pool to offer specific insurance products . . . .
>
> Even though each insurance policy is underwritten by an individual writing company and displays that individual writing company's name on the policy Declarations page, the policy is ultimately managed, serviced and insured by the pool's lead company's assets (e.g., human capital, financial assets and otherwise) rather than any individual insurance company within the pool. In this way, the pool lead and members function as a single business unit despite the number of individual writing companies that comprise the pool.

(*Id.* at ¶¶ 38-39.)

Mr. Zoltowski also testified regarding his opinion that Defendants' tax filings and NAIC reporting reflect the economic reality that the Defendants, their subsidiaries, and their pooling entities are a single economic unit rather than independent businesses. (*Id.* at ¶¶ 47-50.) The above are illustrative but confirm the subject of Defendants' operations

6

as a single enterprise was clearly disclosed in Mr. Zoltowski's reports—there is no surprise or prejudice to Defendants. (*See id.* at ¶¶ 30-50.) Defendants' motion is a backdoor attempt to circumvent the Court's finding that FICO may present evidence of Defendants' operations as a single economic unit, which relates to the scope of Defendants' use of Blaze Advisor and is relevant to actual damages and the total amount of revenue to be disgorged. (Dkt. No. 731 at 31-34.)

Defendants also contend that Mr. Zoltowski lacks personal knowledge as to how FICO has approached Blaze Advisor licensing negotiations. (Dkt. No. 976 at 6.) That is not the standard for admissibility of expert testimony. Fed. R. Evid. 702. In any event, Mr. William (Bill) Waid, FICO's current Chief Product & Technology Officer, has over a decade of personal experience negotiating and pricing license agreements, including the pricing of Blaze Advisor license agreements. He, not Mr. Zoltowski, will testify regarding the dynamics of the hypothetical negotiation. Mr. Zoltowski does, however, have the knowledge and expertise to discuss Defendants' revenue and provide his breakdowns relating to Defendants' gross written premium. Separately, the Court already found Mr. Zoltowski qualified to opine on Defendants' corporate structure and the economic relationships of the entities at issue in the lawsuit. (Dkt. No. 731 at 33-34.)

Mr. Zoltowksi should be permitted to present his opinions on the corporate structure, economic relationships, and economic realities of Defendants' use of Blaze Advisor as well as his breakdowns regarding gross written premiums generated by Blaze Advisor and total revenue. The jury can then consider the facts and testimony offered by

7

Mr. Zoltowski in analyzing and determining actual damages and advising on disgorgement under Section 504(b).

## IV.  Conclusion

Mr. Zoltowski will not opine on the amount of actual damages to be awarded to FICO, but he will provide facts and his analysis of certain facts that are relevant to the jury's determination of actual damages. The jury will consider those facts and apply the instructions provided by the Court. This is consistent with the Court's summary judgment Order. Further, all of the subject matter about which Mr. Zoltowski will testify is disclosed in his expert reports. Defendants' motion should be denied.

Dated: January 27, 2023

MERCHANT & GOULD P.C.

/s/ Heather Kliebenstein
Allen Hinderaker, MN Bar # 45787
Heather Kliebenstein, MN Bar # 337419
Paige S. Stradley, MN Bar # 393432
Michael A. Erbele, MN Bar # 393635
Joseph W. Dubis, MN Bar # 398344
Gabrielle L. Kiefer, MN Bar # 0402364
MERCHANT & GOULD P.C.
150 South Fifth Street
Suite 2200
Minneapolis, MN 55402
Tel: (612) 332-5300
Fax: (612) 332-9081
ahinderaker@merchantgould.com
hkliebenstein@merchantgould.com
pstradley@merchantgould.com
merbele@merchantgould.com
jdubis@merchantgould.com
gkiefer@merchantgould.com

*Attorneys for Plaintiff Fair Isaac Corporation*