UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation, | ) ) ) | Case No. 16-cv-1054 (DTS) |
| Plaintiff, | ) ) ) | **Jury Trial Demanded** |
| v. | ) ) | |
| FEDERAL INSURANCE COMPANY, an Indiana corporation and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF FAIR ISAAC CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE CERTAIN TESTIMONY OF THOMAS CARRETTA**

# **TABLE OF CONTENTS**

I. Introduction ........................................................................................................... 1

II. Mr. Carretta's understanding of key provisions of the Agreement should
not be excluded. .................................................................................................... 2

    A.     Mr. Carretta will offer relevant and admissible testimony regarding
his and FICO's understanding of the Agreement. .......................................... 2

    B.     FICO is not using privilege or work product as a sword and a shield. ......... 4

III. Mr. Carretta will offer testimony regarding the authority of Mr. Sawyer and
Mr. Schreiber to bind FICO that is helpful to the jury. ........................................... 7

IV. Conclusion ........................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*EEOC v. Prod. Fabricators, Inc.*,
   285 F.R.D. 418 (D. Minn. 2012) .................................................................................. 9

*Marco Techs. v. Midkiff*,
   No. 19-cv-2323, 2020 U.S. Dist. LEXIS 259978
   (D. Minn. Dec. 7, 2020) ................................................................................................ 9

*S&S Textiles Int'l v. Steve Weave, Inc.*,
   00 CIV. 8391 (DLC), 2002 U.S. Dist. LEXIS 14742
   (S.D.N.Y. Aug. 12, 2002) ............................................................................................. 8

*Sharkey v. Zimmer USA, Inc.*,
   No. 20-cv-8258, 2021 U.S. Dist. LEXIS 149120
   (S.D.N.Y. Aug. 9, 2021) ............................................................................................... 3

I.      **Introduction**

Plaintiff Fair Isaac Corporation ("FICO") respectfully requests the Court deny Defendants Federal Insurance Company's ("Federal") and ACE American Insurance Company's ("ACE American") (collectively, "Defendants") motion to exclude certain testimony of Thomas Carretta. Mr. Carretta was Vice President of Legal and Deputy General Counsel of FICO and is now retired.

There are two categories of testimony at issue. First, Defendants seek to exclude the testimony of Mr. Carretta regarding his and FICO's understanding of certain provisions of the software license agreement entered into between FICO and Chubb & Son, a division of Federal (hereinafter, the "Agreement"). Mr. Carretta's testimony is directly relevant to refuting Federal's own counterclaim for breach of the implied covenant of good faith and fair dealing. In short, his and FICO's understanding of the agreement confirm that FICO's conduct was objectively reasonable when judged in the light of the commercial purpose of Paragraph 10.8. Federal's own intent to rely on other witnesses' interpretation of the Agreement to support its claims or defenses defeats Defendants' motion.

Second, Mr. Carretta's testimony that two FICO employees, Michael Sawyer and Russell Schreiber, lacked the authority to bind FICO is also proper. As Defendants' own brief states, "[w]hether a party's agents have actual or apparent authority to bind it is a fact-intensive question under New York law." (Dkt. No. 982 at 7.) Mr. Carretta offers testimony that is relevant to that very inquiry and to which the jury is entitled to consider.

1

Defendants' motion to exclude Mr. Carretta's testimony regarding his and FICO's understanding of certain provisions of the contract and regarding Mr. Sawyer's and Mr. Schreiber's lack of authority to bind FICO should be denied.

**II.     Mr. Carretta's understanding of key provisions of the Agreement should not be excluded.**

> **A.      Mr. Carretta will offer relevant and admissible testimony regarding his and FICO's understanding of the Agreement.**

FICO does not dispute that, generally speaking, legal conclusions are not admissible. But the testimony that Mr. Carretta will offer is not a legal conclusion. He will testify as to his and FICO's understanding of certain terms of the Agreement. That understanding is pertinent not to establish what, in fact, the license means, but, instead, to provide the necessary context for the jury to understand why Mr. Carretta and FICO took certain actions in the 2016 time frame (i.e., after the parties entered the Agreement).

Federal has asserted two counterclaims against FICO: (1) breach of contract and (2) breach of the implied covenant of good faith and fair dealing. (Dkt. No. 569 at Counterclaims.) Federal's breach of contract counterclaim alleges that FICO did not have a basis to terminate the Agreement because none of the events that allow termination had occurred. (*Id.* at Counterclaims ¶¶ 16-21.) Federal's counterclaim for breach of good faith and fair dealing alleges that, in connection with Paragraph 10.8 of the Agreement, FICO improperly withheld consent for Federal's continued use of Blaze Advisor with the goal of extracting additional, unearned license fees. (*Id.* at ¶¶ 22-27.) Federal's counterclaim for breach of good faith and fair dealing directly puts at issue FICO's actions and the reasons for its actions.

2

To establish breach of the covenant of good faith and fair dealing, Defendants must prove that FICO's enforcement of Paragraph 10.8 was objectively unreasonable when judged in the light of the commercial purpose of Paragraph 10.8. *Sharkey v. Zimmer USA, Inc.*, No. 20-cv-8258, 2021 U.S. Dist. LEXIS 149120, at *15 (S.D.N.Y. Aug. 9, 2021). FICO's understanding of the Agreement and the purpose of each provision forms a key basis for why it acted the way it acted and why its actions were not objectively unreasonable. FICO must be able to provide the jury with that necessary context to show that its actions were not part of an alleged nefarious scheme or money grab as Defendants contend, but rather, that it had an objectively reasonable basis for why it withheld consent and terminated the Agreement.

Further, the Court has already ruled that "the testimony and emails of FICO employees reflecting their understanding of the scope of Section 10.8" constitute extrinsic evidence relevant to the parties' actual intent. (Dkt. No. 731 at 48-49.) Defendants' arguments are inconsistent with this ruling and are belied by their own intention to introduce testimony from other FICO witnesses regarding their understanding and interpretation of the Agreement. On the one hand, Defendants seek to exclude the testimony of Mr. Carretta regarding his and FICO's understanding of the Agreement (because it is unfavorable to their legal theories) while Defendants simultaneously plan to introduce testimony from other FICO witnesses regarding their understanding of the Agreement (because it is presumably favorable to their legal theories). (Declaration of Paige Stradley ("Stradley Decl.") Ex. 1 at, *e.g.*, 35:8-37:6, 37:13-24, 38:6-40:2, 53:6-11, 75:6-76:8, 76:12-78:24, 80:7-24; Ex. 2 at, *e.g.*, 149:4-24, 151:13-21, 152:6-13, 152:20-

3

153:18, 156:20-158:7, 172:8-174:8, 176:3-22.) Indeed, Defendants have designated deposition testimony from FICO witnesses Mr. Sawyer and Mr. Schreiber regarding their understanding of the Agreement, despite those employees not being involved in the drafting of the agreement and despite those individual's understanding being (as Defendants' characterize things) "*post hoc* interpretations" of contract provisions by employees who did not "participate[] in drafting or negotiating." (Dkt. No. 982 at 5; Stradley Decl. Ex. 1 at, *e.g.*, 35:8-37:6, 37:13-24, 38:6-40:2, 53:6-11, 75:6-76:8, 76:12-78:24, 80:7-24; Ex. 2 at, *e.g.*, 149:4-24, 151:13-21, 152:6-13, 152:20-153:18, 156:20-158:7, 172:8-174:8, 176:3-22.) Defendants cannot have it both ways. Their inconsistent positions confirm that this motion is nothing more than a litigation-driven strategy to present the jury with a one-sided and incomplete view of facts.

Mr. Carretta's testimony is relevant to Federal's counterclaim and the parties' intent. Defendants are free to object should any question/answer truly reflect a legal conclusion.

### B.  **FICO is not using privilege or work product as a sword and a shield.**

Defendants separately argue that Mr. Carretta's testimony as to his understanding of the Agreement should be excluded because FICO selectively asserted privilege and work product. (Dkt. No. 982 at 1-2, 6-7.) Defendants identify only two alleged, selective invocations in which they claim Mr. Carretta "refused to offer his interpretation of a key provision of Section 10.8—the bar on FICO 'unreasonably withholding' consent to 'expanded use' of Blaze Advisor." They cite to pages 150-151 and 153 of Mr. Carretta's deposition. (*Id.* at 3.) Defendants are wrong.

4

As pages 150-151 of Mr. Carretta's deposition show, Mr. Carretta noted that the question may call for work product information, but, importantly, he answered the question. He was asked "[h]ow would you measure expanded use under that enterprisewide [sic] license?" and responded that "[t]he answer says obtain consent before you make any expanded use." (Stradley Decl. Ex. 3 at 150:19-151:8.) In response to follow up questions, he again provided answers (and did not invoke privilege or work product) and explained that consent is required regardless of whether there is expanded use. (*Id.* at 151:9-152:2.) At page 153, FICO counsel objected based on privilege and work product but instructed Mr. Carretta that, if he could answer without revealing work product, to do so. Again, Mr. Carretta answered the question, explaining that assessment of whether it is reasonable to withhold consent includes a lot of factors, many of which are not known to FICO because a merger/acquisition is a private transaction. (*Id.* at 153:4-154:4.) Here and elsewhere Mr. Carretta answered questions regarding Section 10.8 and the interplay between consent and expanded use.

For instance, Mr. Carretta was asked and fully responded to the following extensive set of questions, which all relate to Section 10.8 and the interplay between consent and expanded use:

> Q. What I'm saying is, okay, but is it, then, the thou shall not do is in that last or third clause of the second sentence, which says, "and client shall make no expanded use of the Fair Isaac Products as a result of any such event unless and until Fair Isaac provides such written consent, which will not unreasonably be withheld"?
>
> A. So I said the thou shall not do. The proper reading of this sentence is there is an assignment; therefore, you cannot do that without our consent. And in the interim, before you have our consent and we take some other action,

whether a negotiated response or not, you shall not make expanded use. They're two separate covenants.

Q. Okay.

A. Because it goes on to say, any attempt to assign or transfer without written consent is void.

Q. Okay. So based on your reading of 10.8, in the event of a change of control or a merger, is it your view that consent from FICO is necessary regardless of whether use is expanded?

A. Yes.

Q. Okay.

A. You must have consent.

Q. Okay. And so any merger, regardless of the type or the size or the nature of the transaction, requires consent from FICO to transfer the license or to continue to use the license, I should say?

MS. KLIEBENSTEIN: I'm going to object to that as calling for speculation.

BY MS. JANUS:
Q. Go ahead.

A. My view is that each party is prohibited from making assignment or transfer without prior written consent. Therefore, if you do engage in one of the enumerated list of items in here, then you are in violation of the license, because you failed to get the consent or written consent.

Separately, it then says and client shall not make expanded use of the products as a result of any such event unless and until Fair Isaac provides such written consent, which will not be unreasonably withheld.

So both here and in the prior section I referenced, there can't be a transfer or assignment, a legal transfer or assignment, without the prior written consent. There just can't be, because that's what the parties said here.

Q. So how is it, then, that the second sentence specifically makes reference to "expanded use of the Fair Isaac Products as a result of any such event unless and until Fair Isaac provides such written consent, which will not be

6

unreasonably withheld," and the first sentence does not relate in any way to expanded use, correct?

A. The first sentence is an absolute prohibition. So when you step on the land mine, you step on the land mine.

But the second one is, a lot of clients in that situation may say, wait a minute, I don't want to follow these rules, and they go off and do something. So we add this additional covenant that says you won't make expanded use of it.

Q. Okay.

A. That's because of the right to cure.

Q. Okay. So is it a fair reading of this section, Section 10.8, that in the event of a merger or change of control, so long as there's no expanded use, then consent is not required?

A. No, that's completely wrong.

Q. No. Okay.

A. You've ignored the first sentence.

You've ignored the first part of the second sentence.

You've ignored the third section, and you've ignored 3.1. That is a completely wrong reading.

(*Id.* at 138:1-141:23; *see also*, *id.* at 141:24-146:17, 223:2-24, 225:1-226:24.) While Defendants may not like Mr. Carretta's answers, Defendants' suggestion that Mr. Carretta selectively invoked privileged/work product and did not answer questions or explain his interpretation regarding Section 10.8 is meritless.

### III. Mr. Carretta will offer testimony regarding the authority of Mr. Sawyer and Mr. Schreiber to bind FICO that is helpful to the jury.

Defendants contend that Mr. Carretta will offer a legal conclusion that Mr. Sawyer and Mr. Schreiber lacked authority to bind FICO and will offer no facts to support Mr.

7

Sawyer's and Mr. Schreiber's lack of authority. (Dkt. No. 982 at 7-8.) This mischaracterizes the testimony provided by Mr. Carretta in his deposition and what will be offered a trial.

True, it is Mr. Carretta's and FICO's understanding that Mr. Sawyer and Mr. Schreiber did not have the authority to bind FICO, and Mr. Carretta testified to this fact. A party's understanding and policies as to who has authority to bind it are relevant facts to determining whether a party's agent does, in fact, have the legal authority to bind the party. *See S&S Textiles Int'l v. Steve Weave, Inc.*, 00 CIV. 8391 (DLC), 2002 U.S. Dist. LEXIS 14742, at *22 (S.D.N.Y. Aug. 12, 2002) ("Evidence of both actual and apparent authority must originate with the principal, not the agent."). Mr. Carretta's answers to several of Defendants' questions also provide support for Mr. Carretta's and FICO's understanding. For example, Mr. Carretta was asked "[s]o statements made by FICO to Chubb by the salespeople are not binding on FICO?" He answered and explained that the parties' agreement requires that agreements between the parties have to be written and that, if after discussions between salespersons and Chubb & Son, they find a solution that Chubb & Son wants to pursue "they would enter into a written Statement of Work. So no, that conversation is not binding. It's just normal conversation." (Stradley Decl. Ex. 4 at 42:11-24.) Similarly, he explained that the reason that Mr. Sawyer and other salespeople do not "have authority to say go run off and do something different" is due to FICO's policies as well as because the client "Chubb needs to sign off before they want to be responsible for anything." (*Id.* at 47:2-13.) By way of another example, Mr. Carretta also explained the approval process that must occur to bind FICO:

8

> Q. Okay. Now, who would have needed to approve this position relating to Chubb's use of Blaze in Europe for it to be binding on FICO?
>
> A. Like I said, it would go through a process and then be incorporated into an agreement and then a number of people would have to approve it, so the finance people would have to approve it, the product person has to approve it, the legal folks have to approve it; and that would be in general. At a minimum, those folks would have to approve it.

(*Id.* at 110:9-19; *see also id.* at 46:15-22 (Mr. Sawyer knows that he cannot authorize distribution of software without a contract).)

Moreover, Defendants fail to recognize that Mr. Carretta was only answering the questions asked by Defendants. Defendants have themselves to blame for failing to ask questions to fully understand the factual support for Mr. Carretta's and FICO's understanding as to the authority of Mr. Sawyer and Mr. Schreiber to bind FICO. *See, e.g.*, *Marco Techs. v. Midkiff*, No. 19-cv-2323 (PJS/LIB), 2020 U.S. Dist. LEXIS 259978, at *21-23 (D. Minn. Dec. 7, 2020) (denying motion for leave to take a second deposition where the "[p]laintiff made a strategic decision about what to ask and what not to ask [the witness] during his deposition. Although Plaintiff could have inquired further into the initial contacts with at-issue customers during the . . . deposition, Plaintiff made the strategic decisions not to do so"); *EEOC v. Prod. Fabricators, Inc.*, 285 F.R.D. 418, 422 (D. Minn. 2012) (denying motion to re-open discovery because "[u]ltimately Defendants made [a] strategic decision about what to ask Mr. Breauz during his deposition, and about when to depose him")

At trial, Mr. Carretta will testify regarding his and FICO's understanding that Mr. Sawyer and Mr. Schreiber did not have the authority to bind FICO and the factual basis

9

for that understanding, including the facts identified by Mr. Carretta in his deposition. Such information is relevant to rebutting arguments that Defendants are likely to make with respect to Section 3.1(iv) of the Agreement. Among other restrictions, Section 3.1(iv) restricts the use of Blaze Advisor to employees of Chubb & Son (a division of Federal). Defendants may argue that FICO salespersons' knowledge regarding the interest in (and potential use of) Blaze Advisor in Europe is a waiver of Section 3.1(iv) and estops FICO from enforcing that restriction.[1] None of these salespersons testified they knew or were aware that the persons interested in or using Blaze Advisor in Europe were not Chubb & Son employees.[2] And pertinent to this motion, Mr. Carretta's factual testimony that salespersons such as Mr. Sawyer and Mr. Schreiber lacked the authority to bind FICO is relevant. Mr. Carretta should be able to provide testimony to rebut Defendants' arguments if raised.

## IV.   Conclusion

For the reasons described above, Defendants' motion in limine to exclude certain testimony of Mr. Carretta should be denied.

---

[1] Defendants' deposition examination of these witnesses was directed to whether the Agreement had a geographical restriction limiting the use of Blaze Advisor to the United States. The Court later ruled on summary judgment that the definition "Territory" was not operative. (Dkt. No. 731 at 41.) The testimony of these witnesses directed to the use of Blaze Advisor outside the United States is not relevant to any remaining issue in the case.
[2] The Court noted that Federal's arguments of waiver and estoppel pertained only to the issue of geographical restriction. (*Id.* at 41 n.13.)

Dated: January 27, 2023

        MERCHANT & GOULD P.C.

        /s/ Heather Kliebenstein
        Allen Hinderaker, MN Bar # 45787
        Heather Kliebenstein, MN Bar # 337419
        Paige S. Stradley, MN Bar # 393432
        Michael A. Erbele, MN Bar # 393635
        Joseph W. Dubis, MN Bar # 398344
        Gabrielle L. Kiefer, MN Bar # 0402364
        MERCHANT & GOULD P.C.
        150 South Fifth Street
        Suite 2200
        Minneapolis, MN 55402
        Tel: (612) 332-5300
        Fax: (612) 332-9081
        ahinderaker@merchantgould.com
        hkliebenstein@merchantgould.com
        pstradley@merchantgould.com
        merbele@merchantgould.com
        jdubis@merchantgould.com
        gkiefer@merchantgould.com

        *Attorneys for Plaintiff Fair Isaac Corporation*