UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| FAIR ISAAC CORPORATION, | Court File No. 16-cv-1054 (DTS) |
| Plaintiff, | |
| v. | |
| FEDERAL INSURANCE COMPANY, an Indiana corporation, and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation, | DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 4 |
| Defendants. | |

---

Defendants Federal Insurance Company and ACE American Insurance Company submit this memorandum of law in opposition to Fair Isaac Corporation's ("FICO") Motion *in Limine* No. 4 (Dkt. 956).

## INTRODUCTION

FICO asks the Court to exclude evidence of factors other than alleged copyright infringement that contributed to Defendants' profits because, in its view, "Defendants fail to quantify the portion of total revenues or profits attributable to factors other than infringement." Dkt. 958 at 5.  The Court should deny FICO's motion for two independent reasons.  First, FICO misstates the legal standard.  Because of the "difficulty of making an exact apportionment[,]" the Supreme Court has long held that a defendant is required only to present a "reasonable approximation" of the share of its profits caused by factors other than infringement.  *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 404 (1940) (internal quotation marks omitted).  Second, FICO litigated this exact claim in its *Daubert*

motion and the Court properly rejected it. FICO moved to exclude apportionment testimony of both Christopher Bakewell and William McCarter—the same testimony it moves to exclude now—on the ground that they "offer[] no calculations, quantifications, or percentages that would assist the trier of fact[,]" "leav[ing] the jury to speculate on the impact of [non-infringing] factors." Dkt. 421 at 31 (Bakewell); *see also* Dkt. 362 at 20 (same for McCarter). The Court squarely rejected that argument, holding that FICO's arguments "pertain to the weight" of Defendants' evidence, "not [its] admissibility[.]" Dkt. 731 at 9; *see also id.* at 22 n.5. "[V]igorous cross-examination and contrary evidence are the appropriate means by which FICO may challenge this evidence." *Id.* FICO's renewed attempt to exclude Defendants' evidence is an improper collateral attack on that ruling in what has become a general theme in FICO's litigation of this case as of late. The Court should reject it.

## BACKGROUND

To demonstrate entitlement to an alleged infringer's profits under the Copyright Act, "the copyright owner is required to present proof only of the infringer's gross revenue[.]" 17 U.S.C. § 504(b). Then, the burden shifts to the defendant to "prove [its] deductible expenses" and to apportion "the elements of profit attributable to factors other than the copyrighted work." *Id.* At trial, Defendants will show through fact and expert testimony that their profits were earned independently of Blaze Advisor, and are attributable to a host of factors in a complex, multinational business—not use of a single, minor software component.

FICO's motion seeks to prevent Defendants from offering evidence to satisfy their burden. It accuses Defendants of "offer[ing] generalized testimony that other factors allegedly contribute to generating revenue with no testimony of the extent of that contribution" and "ask[ing] the advisory jury and Court to speculate as to the extent these factors contribute to revenue." Dkt. 958 at 1. Specifically, FICO moves to exclude the apportionment testimony of two of Defendants' expert witnesses: Christopher Bakewell (Defendants' damages expert) and William McCarter (Defendants' insurance industry expert).[1]

Bakewell will testify—based on his experience quantifying intellectual property damages, his analysis of the factual record in this case, and his interviews of 12 Federal employees—that "the large majority, if not all, of Federal's gross written premiums are attributable to factors unrelated to the use of Blaze Advisor applications and that fall outside the scope of any allegedly unlawful conduct in this matter." Declaration of Leah Godesky ("Godesky Decl.") Ex. 1 ("Bakewell Rep.") ¶ 170. "These factors include (but are not necessarily limited to), the know-how of its workforce, management abilities, brand recognition, existing customer relationships, pricing, and service quality, all of which are key drivers of Federal's gross written premiums." *Id.* He will also testify to errors that FICO's damages expert, Neil Zoltowski, made in calculating Defendants' revenue, *id.* ¶¶ 175-184, and Defendants' costs and overhead, *id.* ¶¶ 185-205.

---

[1] Although FICO purports to challenge the admission of all of Defendants' apportionment evidence, *see* Dkt. 958 at 1, it only argues for the exclusion of the expert testimony of Bakewell and McCarter, *see id.* at 5-6.

McCarter will testify, based on his decades of experience in the insurance industry, that "Federal's gross written premium revenue and profits are the result of Federal's insurance knowledge, expertise, and access to insurance markets; its insurance products, business logic, and data; and its complex harmonization of individual technologies and production skills used to conduct insurance business." Godesky Decl., Ex. 2 ("McCarter Rep.") ¶ 120. He will explain to the court that "Federal did not profit from the use of Blaze." *Id.* ¶ 121.

## ARGUMENT

In moving to exclude the testimony of Bakewell and McCarter, FICO misstates the law and improperly attempts to relitigate this Court's *Daubert* ruling.

## I. THE COPYRIGHT ACT DOES NOT REQUIRE A DEFENDANT TO APPORTION PROFITS WITH MATHEMATICAL PRECISION

FICO contends that Bakewell's and McCarter's testimony must be excluded as "unquantified observations regarding profit apportionment" based on its assertion that the Copyright Act "requires Defendants to quantify the amount of revenue attributable to factors other than infringement[.]" Dkt. 958 at 3, 5. That is not the law. More than eight decades ago, the Supreme Court "referred to the difficulty of making an exact apportionment and observed that mathematical exactness" is not always possible. *Sheldon*, 309 U.S. at 404. Consequently, it held that apportionment requires "only reasonable approximation which usually may be attained through the testimony of experts and persons informed by observation and experience." *Id.* (internal quotation marks omitted). "The result to be accomplished is a rational separation of the net profits so that neither party may

4

have what rightfully belongs to the other." *Id.* (internal quotation marks omitted); *see also Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 520 (4th Cir. 2003) ("Although § 504(b) places the burden on the infringer to demonstrate that certain portions of its revenues were due to factors other than the infringement, the infringer need not provide these amounts with mathematical precision.").

Bakewell's and McCarter's testimony easily clears this bar. Based on their "observation and experience[,]" they will offer a "reasonable approximation" of the portion of Defendants' revenues attributable to their alleged infringement: zero. *Sheldon*, 309 U.S. at 404 (internal quotation marks omitted); *see* Bakewell Rep. ¶ 170; McCarter Rep. ¶ 121. Moreover, Bakewell and McCarter will offer exhaustive and thorough qualitative analyses of the many factors that cause Defendants' business success. This testimony, by showing that all of Defendants' revenue is attributable to factors other than alleged copyright infringement, is more than sufficient to "reasonab[ly] approximat[e]" the apportionment of Defendants' revenue and will allow the court and the advisory jury to make "a rational separation of the net profits so that neither party may have what rightly belongs to the other." *Sheldon*, 309 U.S. at 404 (internal quotation marks omitted). Indeed, "given the high degree of uncertainty involved in apportionment analyses[,]" such a qualitative apportionment analysis is preferable to artificially precise quantification. *Fahmy v. Jay Z*, 2015 WL 5680299, at *5 (C.D. Cal. Sept. 24, 2015) (observing that "given the complexity of apportioning profits in a copyright infringement case," an expert could only testify "regarding the factors that contribute" to profits and "the relative importance of these factors[,]" not "precise calculations" to which a jury would "attach undue weight").

The Eight Circuit's leading profits-disgorgement case, *Andreas v. Volkswagen of America, Inc.*, shows that a qualitative apportionment analysis is sufficient to allow the trier of fact to determine the share (if any) of a defendant's profits attributable to infringement.  There, the Court observed that Audi, accused of using an author's words without authorization in a car commercial, carried its apportionment burden by identifying "factors other than the infringing words" that contributed to its profits: "the other two commercials that did not contain the infringed words, other parts of the [accused] commercial, customer loyalty, brand recognition, etc."  336 F.3d 789, 797 (8th Cir. 2003).  That evidence did not purport to separate the profit attributable to infringement with mathematical precision, but it was nevertheless admissible because it "provide[d] a nonspeculative basis for the jury's award[.]" *Id.* at 798.  This is precisely what Defendants will do through Bakewell's and McCarter's testimony—provide the court and the advisory jury with a complete picture of the factors driving Defendants' profits.

FICO relies on an out-of-circuit district court case, *Design Ideas, Ltd. v. Things Remembered, Inc.* for the proposition that in apportionment, a defendant must articulate the "correct percentage of total revenues or profits that would be attributable" to factors other than alleged infringement.  2009 WL 1259035, at *5 (C.D. Ill. May 6, 2009).  This Court has already rejected *Design Ideas*'s application to this case.  FICO previously relied on *Design Ideas* in its *Daubert* papers to argue that Bakewell's and McCarter's apportionment opinions should be excluded for lack of quantification.  Dkt. 421 at 30; Dkt. 362 at 18.  The Court rejected that argument as to both experts.  Dkt. 731 at 8-9, 22 n.5.

It is easy to see why: *Design Ideas* did not hold that defendants must be mathematically precise about the portion of profit attributable to infringement. Rather, *Design Ideas* concerned the admissibility of an expert's "general observations" that the defendant's profits were attributable to the plaintiff's trademark, as opposed to the alleged infringement. 2009 WL 1259035, at *5. Although the court excluded the expert's opinions based on the specific facts of that case, nowhere does the opinion state that apportionment requires calculation of the "correct percentage of total revenue or profits[,]" as FICO argues. Unsurprisingly, no court has applied *Design Ideas* to bar qualitative disgorgement evidence.

The reason that neither *Design Ideas* nor any other case has required calculation of the "correct percentage of total revenue or profits" attributable to factors other than infringement is that such a holding would fly in the face of Supreme Court precedent. Again, the Supreme Court has held that "rational separation" and "reasonable approximation[,]" not "mathematical exactness[,]" is the standard. *Sheldon*, 309 U.S. at 404; *see also Fahmy*, 2015 WL 5680299, at *5. Other courts have followed that instruction. *United Fabrics Int'l., Inc. v. Lane Bryant, Inc.*, 462 Fed. App'x 703, 705 (9th Cir. 2011) ("Although this evidence did not provide a mathematically precise method of determining what portion of [defendant's] profits were attributable to non-infringing aspects of the garment, such precision is not required."); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 518 (9th Cir. 1985) ("The district court was correct that mathematical exactness is not required."). This Court should reject FICO's invitation to depart from that well-established governing standard.

7

## II. THE COURT HAS ALREADY REJECTED THIS EXACT CHALLENGE TO DEFENDANTS' APPORTIONMENT EVIDENCE

The Court has already rejected the precise argument FICO raises here. In moving to exclude Bakewell's and McCarter's testimony under *Daubert*, FICO made the exact argument it presses in this motion—that Bakewell and McCarter improperly failed to quantify their apportionment analyses. The Court rejected it. FICO may not take a second bite at the apple. *United States v. Carter*¸ 490 F.3d 641, 644 (8th Cir. 2007) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").

In its *Daubert* briefing, FICO asserted that "Bakewell opines, generally, that Federal's profits are due to factors such as product offerings, brand recognition, financial strength, price, distribution system, customer service, technology, insurance renewals, and existing customer relationships" and argued that these "apportionment opinions are too general to have value" because "they do not identify a portion of the profits attributable to any of these factors." Dkt. 421 at 30. "Whether and to what degree any of these factors contributes to profits is speculation, nothing more. When it comes to a defendant's burden under Section 504(b), an expert must provide more than unquantified observations regarding profit apportionment." *Id.* "Bakewell offers no calculations, quantifications, or percentages that would assist the trier of fact. Instead, he leaves the jury to speculate on the impact of such factors. This is improper." *Id.* at 31.

The Court rejected this argument out of hand: "FICO's challenges to the factual bases underlying Bakewell's disgorgement opinions pertain to the weight and credibility

8

of Bakewell's opinions, not the admissibility of those opinions. As such, vigorous cross-examination and contrary evidence are the appropriate means by which FICO may challenge this evidence." Dkt. 731 at 22 n.5.

FICO likewise challenged McCarter's testimony on the ground that "[h]is listing of various non-infringing factors that could contribute to profits [is] offered without any quantification or actual apportionment. There is no case-specific factual analysis. The opinions are speculation." Dkt. 362 at 19-20. FICO further complained that McCarter "offers no opinion on the *portion* of profits that were attributable to such other factors. He offers no calculations, quantifications, or percentages that would assist the trier of fact. Instead, he offers general observations and leaves the jury to speculate on the impact of such factors." *Id.* at 20 (internal quotation marks omitted).

Again, the Court was wholly unpersuaded. "[T]he record shows that McCarter observed the relevant evidence of Defendants' business operations and means of using Blaze Advisor, applied his specialized industry knowledge to those observations, and reached conclusions about the causal connection between Defendants' profits and Defendants' use of Blaze Advisor relative to other factors." Dkt. 731 at 8. Consequently, the Court held that "FICO's disagreements with McCarter's disgorgement opinions pertain to the weight and credibility of his opinions, not their admissibility[.]" *Id.* at 8-9.

The Court could not have been clearer that any purported lack of quantification in Bakewell's or McCarter's testimony was not grounds for exclusion. Presented with the same argument on the same record, the Court should adhere to that conclusion and deny FICO's motion *in limine.*

9

**CONCLUSION**

The Court should deny FICO's Motion *in Limine* No. 4.

Dated:  January 27, 2023                     *s/ Terrence J. Fleming*
                                             Terrence J. Fleming (#0128983)
                                             tfleming@fredlaw.com
                                             Leah C. Janus (#0337365)
                                             ljanus@fredlaw.com
                                             Christopher D. Pham (#0390165)
                                             cpham@fredlaw.com
                                             Ryan C. Young (#0397751)
                                             ryoung@fredlaw.com
                                             Panhia Vang (#399444)
                                             pvang@fredlaw.com

                                             **Fredrikson & Byron, P.A.**
                                             200 South Sixth Street, Suite 4000
                                             Minneapolis, MN  55402-1425
                                             (612) 492-7000 (tel.)
                                             (612) 492-7077 (fax)

                                             Leah Godesky (Admitted Pro Hac Vice)
                                             lgodesky@omm.com
                                             Anton Metlitsky (Admitted Pro Hac Vice)
                                             ametlitsky@omm.com
                                             Daryn Rush (Admitted Pro Hac Vice)
                                             drush@omm.com
                                             Roxana Guidero (Admitted Pro Hac Vice)
                                             rguidero@omm.com

                                             **O'Melveny & Myers LLP**
                                             Times Square Tower
                                             7 Times Square
                                             New York, NY 10036
                                             (212) 326-2000

                                             *Attorneys for Federal Insurance Company and ACE American Insurance Company*