UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION, | Court File No. 16-cv-1054 (DTS) |
| Plaintiff, | |
| v. | |
| FEDERAL INSURANCE COMPANY, an Indiana corporation, and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation, | DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 6 |
| Defendants. | |

Defendants Federal Insurance Company and ACE American Insurance Company submit this memorandum of law in opposition to Fair Isaac Corporation's ("FICO") Motion *in Limine* No. 6 (Dkt. 1046).

FICO seeks to exclude its Complaint, Amended Complaint, and Second Amended Complaint. This request should be rejected. First, FICO's pleadings are relevant evidence that Defendants will use to prove their counterclaims for breach of contract and breach of the covenant of good faith and fair dealing. And, as admissions of a party-opponent, they are admissible. Second, FICO cannot move to exclude its pleadings while simultaneously reserving the right to rely on "any pleading" in this case. Dkt. 1009 at 1.

**I.   THAT FICO KNOWINGLY PURSUED A BASELESS CLAIM IS RELEVANT TO THE CLAIMS IN THIS CASE.**

Defendants have counterclaimed against FICO for breach of contract and breach of the covenant of good faith and fair dealing. As part of these claims, Defendants will show

that FICO pursued a breach-of-contract theory it knew to be meritless: that the License Agreement prohibited the global use of Blaze Advisor. *See* Dkt. 731 at 41 (dismissing this claim "[b]ecause the License Agreement unambiguously lacks a geographic restriction on the installation or physical location of Blaze Advisor"). This evidence supports Defendants' breach-of-contract counterclaim by showing that one of FICO's asserted bases for terminating the License Agreement was meritless. And it supports Defendants' bad-faith counterclaim by showing that FICO spent years litigating a breach of contract claim it knew to be baseless.

Defendants will prove at trial that "FICO did not have the right to terminate the Agreement, and breached the Agreement by purporting to terminate without the right to do so." Dkt. 137 ¶ 19. One of the grounds FICO provided for its purported termination of the Agreement was the use of Blaze Advisor in "applications outside the authorized U.S. territory[.]" Dkt. 775 Ex. 15. FICO's pursuit of this claim despite the License Agreement's "unambiguous[]" lack of a geographic restriction, Dkt. 731 at 41, is plainly relevant to Defendant's breach-of-contract counterclaim. That FICO lacked the right to terminate the License Agreement based on its territorial restriction theory tends to show that FICO lacked the right to terminate the agreement at all. *See* Fed. R. Evid. 401.

FICO's pursuit of a claim it knew to be baseless is also relevant to Defendant's counterclaim for breach of the covenant of good faith and fair dealing. FICO, in an attempt to pressure Defendants into acceding to its demand for additional license fees, pursued a breach-of-contract claim it knew lacked merit. That bad-faith conduct tends to show that FICO intended to "destroy[] or injur[e] the right of [Defendants] to receive the fruits of the

contract[.]" *Guidance Enhanced Green Terrain, LLC v. Bank of Am. Merrill Lynch*, 146 A.D.3d 431, 434 (1st Dep't 2017).

FICO contends that Defendants may not prove their longstanding claim for breach of the covenant of good faith and fair dealing by showing that FICO brought a breach-of-contract claim it knew to be meritless. Dkt. 1046 at 3-7, 9-10. That is incorrect. From the beginning of this litigation, Defendants have maintained that FICO breached the covenant of good faith and fair dealing by purporting to terminate the License Agreement without basis in law or fact. And from the time it filed its complaint until the Court's summary judgment order, FICO claimed that Defendants breached the License Agreement by using Blaze Advisor outside of the United States. Defendants vigorously and successfully defended against that claim on the merits. *See* Dkt. 731 at 41. But it was not until the Court concluded that the "License Agreement unambiguously lacks a geographic restriction" that a key element of Defendants' bad faith case—the territorial restriction claim's lack of merit—was established. Dkt. 731 at 41. Defendants could not have fully expounded this theory before that ruling.

In any event, FICO has long been on notice of this theory. At summary judgment, Defendants argued at length that FICO knew its territorial-restriction claim was meritless. It explained that during pre-suit negotiations, FICO "sought to gain additional leverage by asserting that Federal breached the License Agreement by using Blaze outside the United States." Dkt. 507 at 14. To do so, FICO "misrepresented to Federal's representatives that they had just learned about Federal's use of Blaze outside the United States" when, in fact, "FICO had known about this use for years and had even participated in that use with

3

Federal and its affiliates on multiple occasions." Dkt. 507 at 14. And Defendants made clear they believed the evidence showed FICO's territorial-restriction claim was "a complete fabrication[,]" *id.*, as (1) the parties negotiated to remove the reference to "Territory" in the license grant; (2) internal communications revealed FICO employees knew the License Agreement permitted global use of Blaze Advisor; (3) FICO knew of and facilitated Federal's global use of Blaze Advisor over the parties' decade-long relationship; and (4) FICO never contended the License Agreement did not allow use outside of the United States until it attempted to leverage the merger in a bad faith effort to extract additional fees from Defendants. Dkt. 445 at 13-14, 17; Dkt. 507 at 15-20, 23-33.

This is plainly an accusation of bad-faith behavior and FICO was on ample notice that Defendants would likely make this very same argument at trial. The parties have taken lengthy discovery and traded voluminous briefing on the theory and facts underlying Defendants' claim for breach of the covenant of good faith and fair dealing. Deposition after deposition focused at length on the alleged territorial restriction and the fact that FICO had known—for years prior to filing its complaint—that there was no territorial restriction in the agreement. FICO has long been on notice of the contentions underlying Defendants' counterclaim and did not claim otherwise at the summary judgment stage of the case, or at any other point in the years that followed. FICO's repeated baseless assertions in its pleadings, the Court's summary judgment ruling, and all the years of litigation in between before the territorial-restriction claim was dismissed are critical elements of Defendants' claim that FICO breached the covenant of good faith and fair dealing.

4

Moreover, FICO is incorrect to suggest that Defendants' position would render any dismissal of a breach-of-contract claim a basis for a counterclaim for breach of the covenant of good faith and fair dealing. In this case, discovery revealed overwhelming evidence—discussed in the summary judgment papers, *see* Dkt. 445 at 13-14, 17; Dkt. 507 at 15-20, 23-33—that FICO *knew* its territorial-restriction claim was meritless but pursued it anyway. That—not merely the Court's dismissal—is what renders FICO's pursuit of the territorial-restriction claim a breach of the covenant of good faith and fair dealing.

## II.     THE PLEADINGS ARE RELEVANT AND ADMISSIBLE.

The pleadings are relevant to show (1) that FICO asserted this "wrong territory" claim, and (2) the amount of time it was litigated. *See* Fed. R. Evid. 401; *see* Dkt. 132 ("Second Amended Complaint") ¶¶ 25-30 (alleging that Federal breached Section 3.1 of the License Agreement).

The pleadings are admissible as statements of a party-opponent. Fed. R. Evid. 801(d)(2)(A). Pleadings are, "for evidentiary purposes, admissions by a party opponent under Federal Rule of Evidence 801(d)(2)(A)." *Arnold v. Groose*, 109 F.3d 1292, 1296-97 (8th Cir. 1997); *see also United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984) ("The law is quite clear that [superseded] pleadings constitute the admission of a party-opponent and are admissible in the case in which they were originally filed[.]").

FICO asserts that pleadings are not evidence. Dkt. 1046 at 7-8. That is incorrect. FICO cites cases holding that factual allegations themselves are not substantive evidence. *Id.* at 7; *see, e.g.*, *Moldex Metric, Inc. v. 3M Co.*, 2015 WL 9861796, at *3 (D. Minn. Sept. 4, 2015). That proposition has nothing to do with the equally "clear" rule that the fact a

party *made* certain allegations is admissible to prove a claim. *McKeon*, 738 F.2d at 31. Defendants do not rely on the content of FICO's allegations as evidence. *See Moldex*, 2015 WL 9861796, at *3. Instead, they rely on the existence of the allegations to show that FICO advanced a claim it knew lacked merit.

**III.   ADMISSION OF THE PLEADINGS WILL NOT CONFUSE THE JURY.**

Admitting the pleadings will not confuse the jury. FICO contends that jurors will be confused by the existence of multiple iterations of the complaint. Dkt. 1046 at 10-11. They will not. The relevant portions of the pleadings have not materially changed through amendment. FICO also fears that jurors will be confused by the pleadings' "legalese" and will not understand the relevant legal doctrines. *Id.* at 11. That fear is misplaced. The parties will quickly be able to explain that the pleadings show that FICO advanced an allegation it knew to be meritless. No knowledge of civil procedure is required to appreciate that claim. Moreover, Defendants suggested stipulating to the relevant facts from the pleadings to avoid the need to introduce the documents themselves—and FICO declined. Finally, FICO asserts that no witness may lay foundation for the pleadings' admission. *Id.* That argument misses the mark because there can be no serious dispute that these are true and accurate copies of pleadings filed in this litigation. The argument is also wrong. Multiple witnesses who will testify at trial have personal knowledge of the course of this litigation and may be able to testify about the pleadings. More generally, FICO underestimates the jury's capacity to appropriately weigh evidence. "Any potential confusion can be remedied by good lawyering, cautionary warnings, [or] limiting instruction[.]" Dkt. 945 at 16.

## IV. FICO'S MOTION IS INCONSISTENT WITH ITS OWN POSITIONS IN THIS LITIGATION.

FICO has repeatedly indicated—and still maintains—that it may rely on the pleadings at trial. It may not move to exclude them at the same time. What is sauce for the goose is sauce for the gander. First, FICO initially included the pleadings on its voluminous exhibit list. *See* Dkt. 1012 Attachment 1 (P-391, P-398, and P-399). Indeed, while FICO insinuates that Defendants' inclusion of the pleadings on its supplemental exhibit list was unfairly surprising, Dkt. 1010 at 1-2, the pleadings were included *on FICO's list* at the time Defendants' served their supplemental list. FICO only removed the pleadings from its exhibit list after Defendants pointed out this fact. Dkt. 1012. FICO cannot maintain in good faith that Defendants acted inappropriately in identifying the same exhibits it did. Second, notwithstanding its late reversal, FICO *still* reserves the right to "rely on . . . any pleading . . . filed with the Court in this case[.]" Dkt. 1009 at 1. And to that end, its exhibit list still includes the Court's two summary judgment orders—which FICO has also separately moved to exclude. *See* Dkt. 1009 at 25; Dkt. 944. FICO may not move to exclude its pleadings while simultaneously keeping its option to rely on those very same documents open.

## **CONCLUSION**

The Court should deny FICO's Motion *in Limine* No. 6.

Dated:  February 1, 2023

*/s Terrence J. Fleming*
Terrence J. Fleming (#0128983)
tfleming@fredlaw.com
Leah C. Janus (#0337365)
ljanus@fredlaw.com
Christopher D. Pham (#0390165)
cpham@fredlaw.com
Ryan C. Young (#0397751)
ryoung@fredlaw.com
Panhia Vang (#399444)
pvang@fredlaw.com

**Fredrikson & Byron, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
(612) 492-7000 (tel.)
(612) 492-7077 (fax)

Leah Godesky (Admitted Pro Hac Vice)
lgodesky@omm.com
Anton Metlitsky (Admitted Pro Hac Vice)
ametlitsky@omm.com
Daryn Rush (Admitted Pro Hac Vice)
drush@omm.com
Roxana Guidero (Admitted Pro Hac Vice)
rguidero@omm.com

**O'Melveny & Myers LLP**
Times Square Tower
7 Times Square
New York, NY 10036
(212) 326-2000

***Attorneys for Federal Insurance Company and ACE American Insurance Company***