# EXHIBIT A

```
 1                UNITED STATES DISTRICT COURT

 2                         FOR THE

 3                   DISTRICT OF MINNESOTA

 4

 5            C.A. No. 16-cv-1054 (WMW/DTS)

 6   ----------------------------------------------

 7     FAIR ISAAC CORPORATION,                      )

 8                            Plaintiff        )

 9     v.                                           )

10     FEDERAL INSURANCE COMPANY AND ACE            )

11     AMERICAN INSURANCE COMPANY,                  )

12                            Defendants       )

13   ----------------------------------------------

14                 CONFIDENTIAL TRANSCRIPT

15                  ATTORNEYS' EYES ONLY

16

17            DEPOSITION OF MICHAEL SAWYER

18                    October 2, 2018

19                   Courtyard Marriott

20                35 Foxborough Boulevard

21                Foxborough, Massachusetts

22

23                      *********

24             Court Reporter:  Amie D. Rumbo
```

**Page 117**

2015, it would be impossible to make the assertion that Chubb has violated the license agreement. The transaction had not occurred yet.

So our concern was that the proposed transaction may impact that provision and wanted to engage the client in dialogue to get a better understanding of the process that they were going through around the acquisition and whether or not they felt like this provision in their contract was going to be impacted by the proposed transaction.

Q. All right. All right. Showing you what's been marked as Exhibit 79.

(Exhibit 79 marked for identification.)

Q. Do you recognize these e-mails?

A. Yes. Upon seeing it, I can recall these messages.

Q. Looking at the bottom of the page, it looks like it's an e-mail from Lamont Boyd to Russ Schreiber. Who is Lamont Boyd?

A. Lamont Boyd is a director or senior director in FICO's scoring business unit.

Q. Was this -- you were copied. Russ Schreiber forwarded this e-mail to you. Was this

**Page 118**

the first that you had heard about the ACE merger?

A. Proposed merger, yes, I believe so.

Q. What was your understanding of what Lamont Boyd meant by, quote, "This could be another backdoor win for FICO, CBIS"?

A. CBIS relates to a FICO product called Credit Based Insurance Scores, which are leveraged by a significant number of personal lines insurance carriers to assess the risk posed by an applicant for insurance. What Lamont is saying here is that Chubb historically, in their personal lines division, had not used Credit Based Insurance Scores, but ACE had, and so Lamont is suggesting that upon completion of the merger, the ACE folks who are in charge of their risk department may influence Chubb to use the Credit Based Insurance Scoring solutions in their book of business.

Q. And why did you respond in the middle of the page an e-mail, it looks like, to Russ dated July 1st, 2015, "Wow, not good"?

A. Sure. So as best I can recall, you know, my concern would be that because Chubb was getting acquired by ACE, that you know, our

**Page 119**

relationships with, you know, decision makers at Chubb may -- we may lose some relationships because ACE being the acquirer, may, you know, take a stronger role in deciding future direction of the company, and Chubb was a significantly more significant client than ACE was for FICO at the time.

MR. FLEMING: Mark this as Exhibit 80.

(Exhibit 80 marked for identification.)

Q. So do you recall this e-mail chain which begins with an e-mail from you dated October 7th to Russ Schreiber and ends with a -- that's dated October 7th, 2015, and ends with an e-mail from you to Russ Schreiber dated later that same day?

A. I don't recall this e-mail exchange, but I don't contest it's accuracy.

Q. Okay. Let's look at the first e-mail, which is on the third page, Bates stamped number FICO 1700 and that's an e-mail from you to Russ Schreiber dated October 7th, 2015, and you say, quote, "I think we're in a good spot. See below. The first excerpt is from the original

**Page 120**

MSLA and states they have no assignment rights. The second results from the MLSA and defines Enterprise License. It's pretty restrictive and excludes Parent Company which is what I think ACE would be. The third is from the amendment when they picked up the ELA option. It provides some more flexibility as it relates to subsidiaries and affiliates, but not parent company," end quote.

Now, you testified before when we first started here after lunch, you talked about in late 2015, your actions after learning of the proposed ACE acquisition of Chubb. And is this what you were -- does this reflect what you were talking about in terms of reviewing the license agreement so far as it relates to the assignment?

A. Yes, I believe so. As I testified and as you can see here, my initial note is to Russ Schreiber. You previously asked me who would have directed me to do the analysis of the contract, and I answered Russ Schreiber. So based on Russ' request, this would have been my review of the contract to provide him with the information that I saw in the contract for him to interpret.