# P-0101

# Redacted

U.S. DIST COURT – MN
PLAINTIFF EXHIBIT
**P-0101**
Case No. 16-cv-1054-DTS



FICO0000437

# Redacted

**From:** "Pawloski, Tamra A" <tpawloski@chubb.com>

**Date:** March 25, 2016 at 5:04:57 PM EDT

**To:** Bill Waid <BillWaid@fico.com>

**Cc:** "Harlam, William" <Bill.Harlam@chubb.com>, Russ Schreiber <RussSchreiber@fico.com>, Mike Sawyer <MikeSawyer@fico.com>

**Subject: FICO**

Bill,

Thank you for sending over your proposal. We have been working on this internally all week. Please find below Chubb's counter offer that has been approved by our Executives. If this is acceptable to FICO, we have also included the redline to the Amendment. For purposes of time, we are having Chubb individuals simultaneously look at it so the documents( Amendment 3 and Settlement Document) remain subject to their review and further comment.

| | | | Chubb's Counter To FICO Proposal |
|---|---|---|---|
| | | | |
| | $18.7 Billion | | US Premium Revenue |
| | | | |
| | | | |
| | | | |
| | | | |
| Deployment | $ | 4,800,000 | Price based on US Premium |
| Development | $ | 1,750,000 | Price based on US Premium |
| Multiple Deploy Platforms | $ | - | Part of the base license. |
| 2 Non US deployment | $ | - | Amendment 3 Enterprise |
| SAS to SRL | $ | - | Not applicable |
| | $ | 6,550,000 | Total License Fees |
| | | | |
| | | 65.0% | **Discount** |
| | $ | 2,292,500 | Discounted Price |
| | $ | (1,473,750) | Credit for License Fees Paid |
| | $ | 818,750 | Net License Fees |
| | | | |
| | **$** | **818,750** | **Final Net License Fees** |
| | | 15% | Maintenance percentage |

| | $  343,875.00 | Total Annual Maintenance Due by Chubb |
| --- | --- | --- |

The total annual maintenance due by Chubb includes current maintenance for both legacy companies. Our edits on the amendment reflect that.

Please note the foregoing proposal is provided as a confidential settlement proposal and protected communication under Rule 408 of the federal Rules of civil procedure in accordance with the non-disclosure agreement; and is not to be construed as a waiver of any rights or remedies.

I am on vacation next week but will remain fully engaged in this negotiation and remain your primary contact.

Thank you,



**Tamra Pawloski**
VP of Software Compliance and Optimization, Global Vendor Services Organization

15 Mountain View Road, Warren, NJ 07059, USA
O 908.903.2054   M 908.307.7480   F 908.903.2008
E tpawloski@chubb.com

ACE and Chubb are now one.

This email (including any attachments) is intended for the designated recipient(s) only, and may be confidential, non-public, proprietary, and/or protected by the attorney-client or other privilege. Unauthorized reading, distribution, copying or other use of this communication is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) should not be deemed a waiver of any privilege or protection. If you are not the intended recipient or if you believe that you have received this email in error, please notify the sender immediately and delete all copies from your computer system without reading, saving, printing or using it in any manner. Although it has been checked for viruses and other malicious software ("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects. All liability for any actual or alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or use of this email is expressly disclaimed.
<FICO Amendment 3.doc>
<Settlement Document.docx>

# P-0261

| | |
|---|---|
| **From:** | Pawloski, Tamra A <tpawloski@chubb.com> |
| **Sent:** | Tuesday, March 15, 2016 12:48 PM |
| **To:** | Bill Waid <BillWaid@fico.com> |
| **Cc:** | Harlam, William <Bill.Harlam@chubb.com> |
| **Subject:** | FICO Software license |
| **Attach:** | FICO Cost allocation.xls |

Bill,

In advance of our call, we would like to share the attached spreadsheet.  We feel it is critical for us to walk through our methodology in order for you to understand how we arrived at our numbers.

Please note that the attached and our conversation today is provided as a confidential settlement proposal and protected communication under Rule 408 of the federal rules of civil procedure in accordance with the non-disclosure agreement; and is not to be construed as a waiver of any rights or remedies.

CHUBB

**Tamra Pawloski**
VP of Software Compliance and Optimization, Global Vendor Services Organization

15 Mountain View Road, Warren, NJ 07059, USA
O 908.903.2054   M 908.307.7480   F 908.903.2008
E tpawloski@chubb.com

ACE and Chubb are now one.





DOCUMENT PRODUCED AS NATIVE

Confidential
P-0261-002

| | 2006 | % | REVISED Numbers | | 2016 | % | REVISED Numbers |
|---|---|---|---|---|---|---|---|
| Legacy Chubb | $ 14,030,000,000 | | $ 11,958,000,000 | $ 14,100,000,000 | | | $ 12,328,000,000 |
| Legacy ACE | | | | $ 19,170,000,000 | | | $ 17,426,000,000 |
| Estimated US Revnue | $ 11,200,000,000 | 80.000% | $ 9,566,400,000 | $ 20,960,000,000 | | 63% | $ 18,745,020,000 |
| | | | | | | | |
| | | | | | | | |
| Blaza ELA List Price (in Millions) | | | | | | | |
| Deployment | $ 2,400,000 | 0.021% | $ 2,049,943 | $ 5,800,000 | | 0.028% | |
| Development | $ 400,000 | 0.004% | $ 341,657 | $ 2,125,000 | | 0.010% | |
| Multiple Deploy. Platforms | incl. | | | $ 1,160,000 | | 0.006% | |
| 2 Non US deployment | nc | | | $ 700,000 | | 0.003% | |
| | | | | | | | |
| Take 2006 costing for 2016 | | | | | | | |
| Deployment | | | | $ 4,491,429 | | | $ 4,016,790 |
| Development | | | | $ 748,571 | | | $ 669,465 |
| Multiple Deploy. Platforms | Incl | | | | | | |
| 2 Non US deployment ( I would argue this number) | | | | $ 700,000 | | | |
| Total | $ 2,800,000 | | $ 2,391,600 | $ 5,940,000 | | | $ 4,686,255 |
| .47 Discount | $ 1,326,250 | | $ 1,132,807 | $ 2,791,800 | | .56 Discount | $ 2,624,303 |
| Total | $ 1,473,750 | | $ 1,258,793 | $ 3,148,200 | | | $ 2,061,952 |
| Overpayment of Original License | | | $ (214,957) | | | | $ (214,957) |
| Overpayment of Maintenance for ten years | | | $ (48,678) | | | | $ (48,678) |
| Credit for 2006 ELA | | | | $ (1,473,750) | | | $ (1,473,750) |
| | | | | $ 1,674,450 | | | $ 324,567 |

**P-0262**

| **From:** | Mike Sawyer <MikeSawyer@fico.com> |
|---|---|
| **Sent:** | Thursday, March 17, 2016 10:53 AM |
| **To:** | Pawloski, Tamra A <tpawloski@chubb.com>; Russ Schreiber <RussSchreiber@fico.com>; Bill Waid <BillWaid@fico.com>; Harlam, William <Bill.Harlam@chubb.com>; Mirolyuz, Henry <hmirolyuz@chubb.com> |
| **Cc:** | Thomas, Benku <bethomas@chubb.com> |
| **Subject:** | RE: FICO License discussion contin |
| **Attach:** | FICO Pricing 03-17-16.xls |

All –

Please see columns K thru Q in the attached spreadsheet for today's discussion at Noon ET.

Best regards,

Mike Sawyer
Client Partner, Insurance & Healthcare

**FICO**
Boston, MA

T  508 530 3116
C  617 401 1380
mikesawyer@fico.com
www.fico.com


-----Original Appointment-----
**From:** Pawloski, Tamra A [mailto:tpawloski@chubb.com]
**Sent:** Thursday, March 17, 2016 6:33 AM
**To:** Pawloski, Tamra A; Russ Schreiber; Mike Sawyer; Bill Waid; Harlam, William; Mirolyuz, Henry
**Cc:** Thomas, Benku
**Subject:** Fwd: FICO License discussion contin
**When:** Thursday, March 17, 2016 12:00 PM-12:30 PM (UTC-05:00) Eastern Time (US & Canada).
**Where:** 1-877-243-8506 pin 9032054



Begin forwarded message:



U.S. DIST COURT – MN
PLAINTIFF EXHIBIT
**P-0262**
Case No. 16-cv-1054-DTS

**From:** "Pawloski, Tamra A" <tpawloski@chubb.com>
**To:** "Bill Waid" <BillWaid@fico.com>, "Harlam, William" <Bill.Harlam@chubb.com>, "Mirolyuz, Henry" <hmirolyuz@chubb.com>
**Cc:** "Thomas, Benku" <bethomas@chubb.com>
**Subject: FICO License discussion continued**

EXHIBIT
262
PENGAD 800-631-6989

Confidential                                    FED004537_0001

This email (including any attachments) is intended for the designated recipient(s) only, and may be confidential, non-public, proprietary, and/or protected by the attorney-client or other privilege. Unauthorized reading, distribution, copying or other use of this communication is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) should not be deemed a waiver of any privilege or protection. If you are not the intended recipient or if you believe that you have received this email in error, please notify the sender immediately and delete all copies from your computer system without reading, saving, printing or using it in any manner. Although it has been checked for viruses and other malicious software ("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects. All liability for any actual or alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or use of this email is expressly disclaimed.

<< File: ATT00001.htm >>

This email and any files transmitted with it are confidential, proprietary and intended solely for the individual or entity to whom they are addressed. If you have received this email in error please delete it immediately.

FED004537_0002

DOCUMENT PRODUCED AS NATIVE

Confidential

P-0262-003

FED004538_0001

| | 2006 | % | REVISED Numbers | 2016 | % | REVISED Numbers | | Option 1: US Blaze ELA | | Option 2: US Blaze ELA + SAS to SRL ELA | | Option 3: Global Blaze ELA + SAS TO SRL ELA | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Legacy Chubb | $ 14,030,000,000 | | $ 11,958,000,000 | $ 14,100,000,000 | | $ 12,328,000,000 | | | | | | | |
| Legacy ACE | | | | $ 19,170,000,000 | | $ 17,426,000,000 | | | | | | | |
| Estimated US Revnue | $ 11,200,000,000 | 80.000% | $ 9,566,400,000 | $ 20,960,000,000 | 63% | 18,745,020,000 | | $18.7 Billion | US Premium Revenue | $18.7 Billion | US Premium Revenue | $30B to $40B | Global Premium Revenue |
| | | | | | | | | | | | | | |
| Blaza ELA List Price (in Millions) | | | | | | | | | | | | | |
| Deployment | $ 2,400,000 | 0.021% | $ 2,049,943 | $ 5,800,000 | 0.028% | | Deployment | $ 4,800,000 | Price based on US Premium | $ 4,800,000 | Price based on US Premium | $ 6,800,000 | Price based on Global Premium |
| Development | $ 400,000 | 0.004% | $ 341,657 | $ 2,125,000 | 0.010% | | Development | $ 1,750,000 | Price based on US Premium | $ 1,750,000 | Price based on US Premium | $ 2,475,000 | Price based on Global Premium |
| Multiple Deploy. Platforms | incl. | | | $ 1,160,000 | 0.006% | | Multiple Deploy Platforms | $ 960,000 | | $ - | Able to waive for bundled purchase | $ - | Able to waive for bundled purchase |
| 2 Non US deployment | nc | | | $ 700,000 | 0.003% | | 2 Non US deployment | $ - | Waived if sunset by 06/30/16 | $ - | Waived if sunset by 06/30/16 | $ - | Grandfathered with Global ELA |
| Take 2006 costing for 2016 | | | | | | | SAS to SRL | $ - | Not applicable | $ 2,250,000 | SAS to SRL ELA License Fees | $ 2,750,000 | SAS to SRL ELA License Fees |
| Deployment | | | | $ 4,491,429 | | $ 4,016,790 | | $ 7,510,000 | Total License Fees | $ 8,800,000 | Total License Fees | $ 12,025,000 | Total License Fees |
| Development | | | | $ 748,571 | | $ 669,465 | | | | | | | |
| Multiple Deploy. Platforms | Incl | | | | | | | 47.0% | Discount | 50.0% | Discount | 60.0% | Discount |
| 2 Non US deployment ( I would argue this number) | | | | $ 700,000 | | | | $ 3,980,300 | Discounted Price | $ 4,400,000 | Discounted Price | $ 4,810,000 | Discounted Price |
| Total | $ 2,800,000 | | $ 2,391,600 | $ 5,940,000 | | $ 4,686,255 | | $ (1,473,750) | Credit for License Fees Paid | $ (1,473,750) | Credit for License Fees Paid | $ (1,473,750) | Credit for License Fees Paid |
| .47 Discount | $ 1,326,250 | | $ 1,132,807 | $ 2,791,800 | .56 Discount | $ 2,624,303 | | $ 2,506,550 | Net License Fees | $ 2,926,250 | Net License Fees | $ 3,336,250 | Net License Fees |
| Total | $ 1,473,750 | | $ 1,258,793 | $ 3,148,200 | | $ 2,061,952 | | $ 2,506,550 | Final Net License Fees | $ 2,926,250 | Final Net License Fees | $ 3,336,250 | Final Net License Fees |
| Overpayment of Original License | | | $ (214,957) | | | $ (214,957) | | | | | | | |
| Overpayment of Maintenance for ten years | | | $ (48,678) | | | $ (48,678) | | | | | | | |
| Credit for 2006 ELA | | | $ (1,473,750) | $ (1,473,750) | | $ (1,473,750) | | | | | | | |
| | | | | $ 1,674,450 | | $ 324,567 | | | | | | | |

**P-0263**

| **From:** | Pawloski, Tamra A <tpawloski@chubb.com> |
|---|---|
| **Sent:** | Friday, March 25, 2016 4:05 PM |
| **To:** | Bill Waid <BillWaid@fico.com> |
| **Cc:** | Harlam, William <Bill.Harlam@chubb.com>; Russ Schreiber <RussSchreiber@fico.com>; Mike Sawyer <MikeSawyer@fico.com> |
| **Subject:** | FICO |
| **Attach:** | FICO Amendment 3.doc; Settlement Document.docx |

Bill,

Thank you for sending over your proposal. We have been working on this internally all week. Please find below Chubb's counter offer that has been approved by our Executives. If this is acceptable to FICO, we have also included the redline to the Amendment. For purposes of time, we are having Chubb individuals simultaneously look at it so the documents ( Amendment 3 and Settlement Document) remain subject to their review and further comment.

| | **Chubb's Counter To FICO Proposal** | |
|---|---|---|
| | $18.7 Billion | US Premium Revenue |
| | | |
| | | |
| | | |
| | | |
| Deployment | $ 4,800,000 | Price based on US Premium |
| Development | $ 1,750,000 | Price based on US Premium |
| Multiple Deploy Platforms | $ - | Part of the base license. |
| 2 Non US deployment | $ - | Amendment 3 Enterprise |
| SAS to SRL | $ - | Not applicable |
| | $ 6,550,000 | Total License Fees |
| | | |
| | 65.0% | **Discount** |
| | $ 2,292,500 | Discounted Price |
| | $ (1,473,750) | Credit for License Fees Paid |
| | $ 818,750 | Net License Fees |
| | | |
| | $ 818,750 | Final Net License Fees |
| | 15% | Maintenance percentage |
| | $ 343,875.00 | Total Annual Maintenance Due by Chubb |



U.S. DIST COURT – MN
PLAINTIFF EXHIBIT
**P-0263**
Case No. 16-cv-1054-DTS



EXHIBIT
263

FED000360_0001

The total annual maintenance due by Chubb includes current maintenance for both legacy companies. Our edits on the amendment reflect that.

Please note the foregoing proposal is provided as a confidential settlement proposal and protected communication under Rule 408 of the federal Rules of civil procedure in accordance with the non-disclosure agreement; and is not to be construed as a waiver of any rights or remedies.

I am on vacation next week but will remain fully engaged in this negotiation and remain your primary contact.

Thank you,

CHUBB

**Tamra Pawloski**
VP of Software Compliance and Optimization, Global Vendor Services Organization

15 Mountain View Road, Warren, NJ 07059, USA
O 908.903.2054   M 908.307.7480   F 908.903.2008
E tpawloski@chubb.com

ACE and Chubb are now one.

**P-0419**

| | 2006 | % | REVISED Numbers | 2016 | % | REVISED Numbers | | Option 1: US Blaze ELA | | Option 2: US Blaze ELA + SAS to SRL ELA | | Option 3: Global Blaze ELA + SAS TO SRL ELA | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Legacy Chubb | $ 14,030,000,000 | | $ 11,958,000,000 | 14,100,000,000 | | $ 12,328,000,000 | | | | | | | |
| Legacy ACE | | | | 19,170,000,000 | | $ 17,426,000,000 | | $18.7 Billion | US Premium Revenue | $18.7 Billion | US Premium Revenue | $30B to $40B | Global Premium Revenue |
| Estimated US Revnue | $ 11,200,000,000 | 80.000% | $ 9,566,400,000 | $ 20,960,000,000 | 63% | $ 18,745,020,000 | | | | | | | |
| | | | | | | | | | | | | | |
| Blaze ELA List Price (in Millions) | | | | | | | | | | | | | |
| Deployment | $ 2,400,000 | 0.021% | 2,049,943 | $ 5,800,000 | 0.028% | | Deployment | $ 4,800,000 | Price based on US Premium | $ 4,800,000 | Price based on US Premium | $ 6,800,000 | Price based on Global Premium |
| Development | $ 400,000 | 0.004% | 341,657 | $ 2,125,000 | 0.010% | | Development | $ 1,750,000 | Price based on US Premium | $ 1,750,000 | Price based on US Premium | $ 2,475,000 | Price based on Global Premium |
| | | | | | | | Multiple Deploy Platforms | | | | | | |
| Multiple Deploy. Platforms | incl. | | | $ 1,160,000 | 0.006% | | | $ 960,000 | | $ - | Able to waive for bundled purchase | $ - | Able to waive for bundled purchase |
| | | | | | | | 2 Non US deployment | | | | | | |
| 2 Non US deployment | nc | | | $ 700,000 | 0.003% | | | $ - | Waived if sunset by 06/30/16 | $ - | Waived if sunset by 06/30/16 | $ - | Grandfathered with Global ELA |
| | | | | | | | SAS to SRL | $ - | Not applicable | $ 2,250,000 | SAS to SRL ELA License Fees | $ 2,750,000 | SAS to SRL ELA License Fees |
| Take 2006 costing for 2016 | | | | | | | | $ 7,510,000 | Total License Fees | $ 8,800,000 | Total License Fees | $ 12,025,000 | Total License Fees |
| Deployment | | | | $ 4,491,429 | | 4,016,790 | | | | | | | |
| Development | | | | $ 748,571 | | 669,465 | | 47.0% | Discount | 50.0% | Discount | 60.0% | Discount |
| Multiple Deploy. Platforms | Incl | | | | | | | $ 3,980,300 | Discounted Price | $ 4,400,000 | Discounted Price | $ 4,810,000 | Discounted Price |
| 2 Non US deployment ( I would argue this number) | | | | $ 700,000 | | | | $ (1,473,750) | Credit for License Fees Paid | $ (1,473,750) | Credit for License Fees Paid | $ (1,473,750) | Credit for License Fees Paid |
| Total | $ 2,800,000 | | 2,391,600 | $ 5,940,000 | | 4,686,255 | | $ 2,506,550 | Net License Fees | $ 2,926,250 | Net License Fees | $ 3,336,250 | Net License Fees |
| .47 Discount | $ 1,326,250 | | 1,132,807 | $ 2,791,800 | .56 Discount | 2,624,303 | | | | | | | |
| Total | $ 1,473,750 | | 1,258,793 | $ 3,148,200 | | 2,061,952 | | $ 2,506,550 | Final Net License Fees | $ 2,926,250 | Final Net License Fees | $ 3,336,250 | Final Net License Fees |
| Overpayment of Original License | | | $ (214,957) | | | (214,957) | | | | | | | |
| Overpayment of Maintenance for ten years | | | $ (48,678) | | | (48,678) | | | | | | | |
| Credit for 2006 ELA | | | | $ (1,473,750) | | (1,473,750) | | | | | | | |
| | | | | $ 1,674,450 | | 324,567 | | | | | | | |



U.S. DIST COURT – MN
PLAINTIFF EXHIBIT
**P-0419**
Case No. 16-cv-1054-DTS



EXHIBIT
422
FICO  4-2-19

**P-0852**

CHUBB DRAFT 3-25-16

**Amendment Three and License Transfer to**
**Software License and Services Agreement**

This Amendment Three ("**Amendment Three**") is dated March ___, 2016 ("**Amendment Three Effective Date**") and is between Fair Isaac Corporation ("**Fair Isaac**") and Chubb Limited, through its division Chubb & Son, a division of Federal Insurance Company ("**Client**").

WHEREAS, Fair Isaac and Client entered into the Software License and Services Maintenance Agreement dated June 30, 2006 (LR30073) whereby Client licensed certain Fair Isaac Products known as Blaze Advisor on a Named Application basis (the "Agreement"); and.

WHEREAS, Fair Isaac and Client entered into Amendment One on August 01, 2006 whereby the Named Application license was expanded to a Divisional Enterprise License as more fully described therein; and.

WHEREAS, Fair Isaac and Client entered into Amendment Two on December 28, 2006 whereby the Divisional Enterprise License was expended to an Enterprise License, which extended to Affiliates of Client, as more fully described therein; and

WHEREAS, the parties now desire to further amend the Agreement to address changes to Client's Enterprise License as agreed to by the parties..

Ace Limited, now known as Chubb Ltd., acquired The Chubb Corporation on January 14, 2016 effecting a change of control requiring consent to assign the Agreement from Chubb and Son, a division of Federal Insurance Company, which itself is a wholly-owned and controlled subsidiary of the Chubb Corporation. The Agreement requires Fair Isaac consent to transfer and assign the Agreement to Chubb Limited.

Additionally, Chubb & Son is utilizing three Named Applications outside the authorized Territory under the Agreement.

A.      The parties desire to have the Blaze Advisor Enterprise license provided under the Agreement transferred to Chubb Limited and to otherwise modify and rectify the Agreement to reflect current and future use as described herein, and to otherwise compromise, settle and resolve any disputes related to the foregoing.

NOW, THEREFORE, Iin consideration of the foregoing, and other consideration, the receipt and sufficiency of which is acknowledged by the parties, the parties hereby agree as follows:

1.      Replacement License.  The parties agree the license to use the Fair Isaac Products set forth in the Agreement and Amendment One and Amendment Two is hereby terminated and of no further force and effect; and that in lieu thereof, Fair Isaac hereby grants Client a license to use the Fair Isaac Products listed on Exhibit A attached hereto on the terms and conditions listed in the Agreement, as amended hereby and as set forth in Exhibit A.

2.      General.   Unless otherwise indicated, capitalized terms used in this Amendment Three have the meanings given them in the Agreement.   Except as expressly amended by this Amendment Three, the provisions of the Agreement continue in full force and effect. If there is a conflict between the Agreement and this Amendment Three, the terms of this

U.S. DIST COURT – MN
PLAINTIFF EXHIBIT
**P-0852**
Case No. 16-cv-1054-DTS

CHUBB DRAFT 3-25-16

Amendment Three control. This Amendment Three, together with the terms of the Agreement, constitute the full and entire understanding and agreement between the parties with regard to the subject matter hereof, and supersedes all prior or contemporaneous proposals and all other oral or written understandings, representations, conditions, and other communications between the parties relating to such subject matter, as well as the terms of all existing or future purchase orders and acknowledgements.

Fair Isaac and Client are signing this Amendment Three as of the Amendment Three Effective Date, notwithstanding the date of the parties' actual signatures.

**Fair Isaac Corporation**

**Chubb & Son, a division of Federal Insurance Company Limited**

By: _____

By: _____

Name: _____

Name: _____

Title: _____

Title: _____

Date Signed: _____

Date Signed: _____

CHUBB DRAFT 3-25-16

Instructions to Client:

**1.** *Appropriate corporate officer should execute 2 copies of the document.*

**2.** *Complete all requested information below:*

| Information For Notices: | For Client: | For Fair Isaac: |
|---|---|---|
| **Address:** | | 3661 Valley Centre Drive, Suite 500 |
| | | Reference LR 1810755 |
| **City/State:** | | San Diego, CA |
| **Zip/Code:** | | 92130 |
| **Country:** | | USA |
| **Attention:** | | Contracts Administrator |
| **Fax:** | | 858-523-4450 |

**3.** *Complete information below if different from above:*

| | Return executed contract to Client at: | Client's billing information: | Deliver Software to: |
|---|---|---|---|
| **Address:** | | | |
| | | | |
| **City/State:** | | | |
| **Zip/Code:** | | | |
| **Country:** | | | |
| **Attention:** | | | |
| **Phone:** | | | |
| **Fax (optional):** | | | |
| **Email:** | | | |

Confidential
P-0852-003

CHUBB DRAFT 3-25-16

**EXHIBIT** A **- PRODUCTS, FEES, PAYMENTS, AND ADDITIONAL TERMS**

**Blaze Advisor**

1.    **FAIR ISAAC PRODUCT DESCRIPTION**

1.1.    "**Fair Isaac Product(s)**" means the Blaze Advisor products ~~and Model Translator for SPLM (SRL)~~ product listed below. The Blaze Advisor Development product allows a developer to utilize design and testing tools and to run a non-production deployment environment for testing use only. The Blaze Advisor Deployment product consists of the Blaze Advisor Rule Server and Engine and allows the software to be run on a system handling production-level processing. ~~The Model Translator for SPLM products allows a developer to translate SAS code to Blaze Advisor's native programming language (SRL) for deployment.~~

2.    **LICENSE AND SUPPORT AND MAINTENANCE FEES**

| Product | Item # | Term | Scope/Quantity | Price | Total |
|---|---|---|---|---|---|
| Blaze Advisor Development Platform: JAVA and .Net | 280-DVLI-03 | Perpetual | Enterprise-~~Wide~~ use within the Territory | $~~612,500~~990,00 0 | $~~612,500~~990,00 0 |
| Blaze Advisor Deployment Platform: JAVA and .Net | 280-DPLI-03 | Perpetual | Enterprise-~~Wide~~ use within the Territory | $~~1,680,000~~2,720 ,000 | $~~1,680,000~~2,720 ,000 |
| Documentation for Blaze Advisor and Decision Simulator: User guide (available in HTML or PDF) | N/A | Perpetual | 1 set | Electronic copy included with software license | Included in license fees above |
| ~~Model Translator for SPLM (SRL)~~ | ~~280-MTSL-PL~~ | ~~Perpetual~~ | ~~Enterprise-use within the Territory~~ | ~~$1,300,000~~ | ~~$1,300,000~~ |
| ~~Documentation for Model Translator for SPLM (SRL)~~ | ~~N/A~~ | ~~Perpetual~~ | ~~1 set~~ | ~~Electronic copy included with software license~~ | ~~Included in license fees above~~ |
| | | | | Gross License Fees | $2,292,500 |
| 100% Credit for All Previous Blaze Advisor License Fees Paid Under the Agreement | | | | | ~~$1,473,750~~ |
| | | | | Total Net License Fees | $818,750 |
| | | | | ~~Gross License Fees~~ | ~~$4,810,000~~ |
| ~~100% Credit for All Previous Blaze Advisor License Fees Paid Under the Agreement~~ | | | | | ~~$1,473,750~~ |
| | | | | ~~Total Net License Fees~~ | ~~$3,336,250~~ |
| Support and Maintenance Fee for Blaze Advisor ~~and Model Translator for SPLM (SRL)~~ | 280-OOMN-08 280-MTSM-MN | Initial Term: One year | 1 | $~~343,875~~962,00 0 Per Year: 20~~1~~5% of Total Gross License Fees | $~~962,000~~343,87 5* Year One (Annual fee thereafter - subject to annual adjustment in accordance with Section 3.3 below) |
| **TOTAL NET LICENSE AND FIRST YEAR SUPPORT AND MAINTENANCE FEES – ($USD)** | | | | | **$~~1,162,625~~4,298,250** |

| Amendment ~~One~~ Three to Fair Isaac Software License and ~~Services~~ Maintenance Agreement | Page 5 of 10 |
|---|---|
| FI Contract Number: | FI LR |

\* If Client has paid any support and maintenance fees under the Agreement, those amounts received by Fair Isaac and applicable to periods after the date of this Amendment ~~Three~~3 shall be applied to the first year support and maintenance fees listed above. The Client's anniversary date for support and maintenance renewals shall be the Amendment ~~Three~~3 Effective Date.

**3.   PAYMENT OF FEES AND EXPENSES**

3.1   <u>License Fees</u>. Client owes the license fees described above once this Amendment Three has been executed by both parties. Notwithstanding any otherwise applicable payment terms, Client shall pay the license fees according to the following schedule:

| Payment Number | Payment Amount | Payment Due Date* |
|---|---|---|
| 1 | $ 409,375~~1,668,125~~ | Upon execution of this Amendment Three |
| 2 | $ 409,385~~1,668,125~~ | January 02, 2017 |

\* Amounts are due and payable on this date regardless of the invoice date or any otherwise applicable payment terms.

3.2   <u>Support and Maintenance Fees</u>. Client will be invoiced for the ~~the~~ Support and Maintenance Fees in the amount of $343,875~~962,000~~ for the first year once this Amendment Three has been executed by both parties. Client shall pay Support and Maintenance Fees annually thereafter <u>in accordance with Section 3.3 below</u> in advance while support and maintenance is in effect. The Support and Maintenance Fees set forth above cover only the licenses to the Fair Isaac Products set forth in ~~this document~~ the Agreement as amended hereby <u>and in the Software License and Services Agreement by and between Fair Isaac Corporation and ACE American Insurance Company dated June 29, 2006, as may be amended from time to time (the "FICO-ACE SLA")</u> and do not cover any other licenses to the Fair Isaac Products granted to Client under any other agreement. The total Support and Maintenance Fees for the Fair Isaac Products for future years will be calculated <u>in accordance with Section 3.3 below</u> based on the total license fees paid by Client for the Fair Isaac Products under ~~this document and all other agreements~~ the Agreement as amended hereby. <u>For the avoidance of doubt, the aforementioned total Support and Maintenance Fees shall include, cover and apply to all software licenses granted under the FICO-ACE SLA and no additional support and maintenance fees shall be calculated or applied thereunder.</u>

3.3   <u>Ongoing Fees</u>. All ongoing fees specified in this Order Form will be reviewed approximately each anniversary of the Effective Date and may be increased by Fair Isaac. Any increase in fees resulting from that review will not exceed the <u>lesser of (i) the</u> most recently available annual change in the United States CPI <u>and (ii) 3%</u>. "**CPI**" means the Consumer Price Index for All Urban Consumers (CPI-U) for the U.S. City Average for All Items, 1982-84=100, as published by the US Bureau of Labor Statistics.

**4.   ADDITIONAL TERMS**

4.1   Client's licenses to the Fair Isaac Product(s) are limited as follows:

(a)   **Territory:** Worldwide except those countries to which exports are prohibited by the laws of the United States.

| Amendment ~~One~~ Three to Fair Isaac Software License and ~~Services~~ Maintenance Agreement | Page 6 of 10 |
|---|---|
| FI Contract Number: | FI LR |

     (b)     **License Scope:** Enterprise-Wide as defined in Section 4.3

     (c)     **Additional Limitations:** .NET and JAVA platforms only

    4.2    <u>Platforms/Options</u>. Client's license to the Fair Isaac Product includes the right to use only the Java and .NET version of the Fair Isaac Product If Client desires versions of the Fair Isaac Product for additional supported platforms, an additional fee applies. Unless specifically noted as being purchased in this Exhibit A, Client does not obtain any right to options or additional related products (e.g., Compiled Sequential,) by virtue of its purchase of a license to the Fair Isaac Product.

    4.3    <u>Enterprise-Wide License.</u>   For purposes of this Amendment Three, the Enterprise-Wide License shall mean that the Client and its Affiliates may use the Fair Isaac Product within the Territory for <u>its and </u>their internal business purposes, with no limitation on the number of Seats or CPUs <u>or applications on which the software is installed</u>, subject to and in accordance with all of the provisions of the Agreement<u>, as amended hereby</u>.  "Affiliates" shall mean any other entity <u>that</u> directly or indirectly <u>controls or is</u> controlled by Client, <u>or is under common control with Client</u>~~where "control" means the ownership of more than 50% of the aggregate of all voting interests (representing the right to vote for the election of directors or other managing authority) in an entity~~.  Such other entity is an Affiliate only during the period that such "control"<u>:</u> exists.  Client shall at all times be responsible for its Affiliates' use of the Fair Isaac Product.

FED000361_0006

| Amendment ~~One~~ Three to Fair Isaac Software License and ~~Services~~ Maintenance Agreement | Page 7 of 10 |
|---|---|
| FI Contract Number: | FI LR |

### EXHIBIT C - FAIR ISAAC SOFTWARE SUPPORT AND MAINTENANCE POLICY

**1.    DEFINITIONS**

"**Client**" means Chubb & Son, a division of Federal Insurance Company ~~Limited~~

"**Fair Isaac**" means Fair Isaac Corporation and its subsidiaries.

"**Fair Isaac Product(s)**" means ~~FICO~~ the Blaze Advisor ~~and FICO Model Translator for SPLM (SRL)~~ products listed on Exhibit A.

"**Errors**" means persistent malfunctions, inherent within the Software, that prevent the Software from operating according to its technical documentation.

"**Maintenance Fees**" means the support and maintenance fees applicable to the Software licensed by Client. In the case of software licensed on a subscription basis, the Maintenance Fees are included in the applicable subscription fees.

"**Product Support Hours**" are 6:00 a.m. to 5:00 p.m. Pacific Time, Monday through Friday, excluding holidays observed by Fair Isaac in the United States.

"**Software**" means the ~~following~~ Fair Isaac software product(s) licensed by Client under the Agreement as amended by Amendment Three.~~:~~

**2.    SUPPORT AND MAINTENANCE SERVICES GENERALLY**

2.1.    Subject to payment of the appropriate Maintenance Fees by Client, and compliance by Client with the terms of this policy and the applicable license agreement, Fair Isaac shall provide Client with support and maintenance services for the Software as set forth in this policy.

2.2.    Fair Isaac provides support and maintenance services for licensed Software during both implementation and production use when operated on supported platforms installed on designated or approved equipment, as set forth in the technical documentation for the Software. Support is currently provided in the English language only.

2.3.    Subject to Article 5 (Exclusions), maintenance includes any standard Software versions and releases generally made available to Fair Isaac's customers that are current on Maintenance Fees. Those versions and releases will be provided to Client under this policy on an if-and-when-available basis.

**3.    TECHNICAL SUPPORT**

~~3.1.~~    Fair Isaac will make commercially reasonable efforts, during Product Support Hours, to address Client's questions about the Software, to resolve operating problems that are attributable to the Software, and to resolve verified, reproducible Errors in the Software.

~~3.2.    Client agrees: (i) to set up primary and secondary liaisons who have been trained on the Software; (ii) that all support requests will be centralized through the primary and secondary liaisons; (iii) to use commercially reasonable efforts to diagnose and resolve~~

> **Formatted:** Indent: Left: 0.5", No bullets or numbering

| Amendment ~~One~~ Three to Fair Isaac Software License and ~~Services~~ Maintenance Agreement | Page 8 of 10 |
|---|---|
| FI Contract Number: | FI LR |

~~problems in the operation of the Software prior to contacting Fair Isaac for support; (iv) to use commercially reasonable efforts to verify that reported problems are due to a malfunction of the Software, and not due to the operating system, data, interfaces, or improper use of the Software, prior to contacting Fair Isaac for support; and (v) and to submit support requests to Fair Isaac Product Support through the designated contacts or other methods that Fair Isaac may provide.~~

## 4.   TERM; TERMINATION; REINSTATEMENT

4.1.   Fair Isaac's support and maintenance obligations under this policy commence upon shipment of the Software and will continue for an initial term of one year. Maintenance Fees will be invoiced on an annual basis in advance. For as long as Fair Isaac makes maintenance for the Software generally available to all of its customers, the support and maintenance service will automatically renew for consecutive one-year terms unless Fair Isaac gives Client 30 days' written notice, prior to the end of the current term, of its intent not to renew. Support and maintenance during renewal terms will be subject to the Support and Maintenance Policy in effect for the Software at the time of renewal. Maintenance Fees applicable to renewal terms may be increased by Fair Isaac, but no increase may exceed the lesser of (i) the most recently available annual change in the CPI; and (ii) 3%. "CPI" means the Consumer Price Index for All Urban Consumers (CPI-U) for the U.S. City Average for All Items, 1982-84=100, as published by the US Bureau of Labor Statistics.

4.2.   Fair Isaac may terminate support and maintenance services under this policy upon at least 30 days' written notice if Client is in breach under this policy or ~~any license agreement relating to the Software~~ the Agreement, as amended and does not cure the breach before the end of the notice period. Fair Isaac will have no obligation to resume support and maintenance services following a termination for cause under this section.

4.3.   Fair Isaac may, at its sole discretion, reinstate lapsed or terminated support and maintenance services, in accordance with its then-current policies, upon payment by Client of the applicable reinstatement fee.

## 5.   EXCLUSIONS

5.1.   Services outside the scope of this policy are subject to availability of resources and will be charged for separately at Fair Isaac's then-current rates for those services. The following are outside the scope of this policy:

(a)   Support services provided outside of Product Support Hours or any other hours as are provided for in Section 6 (Severity Levels and Response Times).

(b)   Support service that becomes necessary due to failure of computer hardware, equipment or programs not provided by Fair Isaac; negligence of Client or any third party; operator error; improper use of hardware or software (including the Software); any problem or loss not solely attributable to the Software; problems stemming from Client not applying all required maintenance releases; or problems due to unauthorized modification or adaptation of the Software by Client.

(c)   Development, customization, coding, installation, integration, consulting and training.

FED000361_0008

| Amendment ~~One~~ Three to Fair Isaac Software License and ~~Services~~ Maintenance Agreement | Page 9 of 10 |
|---|---|
| FI Contract Number: | FI LR |

(d)     Optional, separately-priced Software features that may be made available by Fair Isaac with new versions or releases of the Software.

5.2.     Unless otherwise indicated in the applicable Order Form or license agreement, Fair Isaac has no obligation to provide support or maintenance services for other than (i) the current release of the Software and (ii) one prior release of the Software, but only for a maximum of one year after release of a subsequent release.

6.     **SEVERITY LEVELS AND RESPONSE TIMES**. Upon Client's report of a problem with the Software, a Fair Isaac representative will acknowledge the report by issuing a confirmation to Client, either by phone or email, and Fair Isaac will assign a Severity Level to the problem based on the type of issue reported, according to the following schedule:

| Severity | Condition | Response Time/Action |
|---|---|---|
| 1 | **Production Down Emergency: An Error in the production environment that inhibits all or substantially all of the Software from functioning in accordance with its documentation. A severity "one" problem is both severe and mission-critical.:** | Provide:<br>(a) a phone response within 1 hour during Fair Isaac's Product Support Hours and |
| | | (b) an action plan within 4 hours for the development of a patch or a bypass for the Error. |
| | | Following the development of the patch or bypass, Fair Isaac will notify Client of inclusion of the patch or a solution in a revision of the Software. |
| | | Once identified and logged, Fair Isaac will provide all necessary services to resolve a Severity-One condition on a diligent-efforts priority basis seven days per week until that condition has been patched or bypassed. |
| 2 | **Production Impaired: An Error in the production environment where major functionality of the Software is inhibited, but the Error does not materially disrupt Client's business** | Provide:<br>(a) a written or phone response within 4 hours during Fair Isaac's Product Support Hours and |
| | | (b) an action plan within 2 business days for a bypass for the Error or |
| | | (c) an action plan within 5 business days for developing a patch for the Error. |
| | | Following the development of the patch or bypass, Fair Isaac will notify Client of inclusion of the patch or a solution in a revision of the Software. |
| | | Fair Isaac will work on the Error during Product Support Hours. |
| 3 | **Production Inhibited: An Error in the production environment where a feature of the Software is inhibited, but the Error does not materially disrupt Client's business** | Provide:<br>(a) a written or phone response within one business day and |
| | | (b) Consider for correction or inclusion in the next revision of the Software. |
| 4 | **General Assistance: A "how to" question; an Error that is minor or cosmetic in nature; or an enhancement request to be considered for a future revision of the Software** | Provide:<br>(a) a written or phone response within 2 business days and |
| | | (b) Consider for correction or inclusion in the next revision of the Software. |

FED000361_0009

| Amendment ~~One~~ Three to Fair Isaac Software License and ~~Services~~ Maintenance Agreement | Page 10 of 10 |
|---|---|
| FI Contract Number: | | | FI LR |

FED000361_0010

P-0854

CHUBB DRAFT 3-25-16

**Amendment Three to**
**Software License and Services Agreement**

This Amendment Three ("**Amendment Three**") is dated March__, 2016 ("**Amendment Three Effective Date**") and is between Fair Isaac Corporation ("**Fair Isaac**") and Chubb & Son, a division of Federal Insurance Company ("**Client**").

WHEREAS, Fair Isaac and Client entered into the Software License and Maintenance Agreement dated June 30, 2006 (LR30073) whereby Client licensed certain Fair Isaac Products known as Blaze Advisor on a Named Application basis (the "Agreement"); and

WHEREAS, Fair Isaac and Client entered into Amendment One on August 01, 2006 whereby the Named Application license was expanded to a Divisional Enterprise License as more fully described therein; and

WHEREAS, Fair Isaac and Client entered into Amendment Two on December 28, 2006 whereby the Divisional Enterprise License was expanded to an Enterprise License, which extended to Affiliates of Client, as more fully described therein; and

WHEREAS, the parties now desire to further amend the Agreement to address changes to Client's Enterprise License as agreed to by the parties.

NOW, THEREFORE, in consideration of the foregoing, and other consideration, the receipt and sufficiency of which is acknowledged by the parties, the parties hereby agree as follows:

1.    <u>Replacement License</u>.  The parties agree the license to use the Fair Isaac Products set forth in the Agreement and Amendment One and Amendment Two is hereby terminated and of no further force and effect; and that in lieu thereof, Fair Isaac hereby grants Client a license to use the Fair Isaac Products listed on Exhibit A attached hereto on the terms and conditions listed in the Agreement, as amended hereby and as set forth in Exhibit A.

2.    <u>General.</u>  Unless otherwise indicated, capitalized terms used in this Amendment Three have the meanings given them in the Agreement.   Except as expressly amended by this Amendment Three, the provisions of the Agreement continue in full force and effect. If there is a conflict between the Agreement and this Amendment Three, the terms of this Amendment Three control. This Amendment Three, together with the terms of the Agreement, constitute the full and entire understanding and agreement between the parties with regard to the subject matter hereof, and supersedes all prior or contemporaneous proposals and all other oral or written understandings, representations, conditions, and other communications between the parties relating to such subject matter, as well as the terms of all existing or future purchase orders and acknowledgements.

Fair Isaac and Client are signing this Amendment Three as of the Amendment Three Effective Date, notwithstanding the date of the parties' actual signatures.

U.S. DIST COURT – MN
PLAINTIFF EXHIBIT
**P-0854**
Case No. 16-cv-1054-DTS

FICO0000463

CHUBB DRAFT 3-25-16

| **Fair Isaac Corporation** | **Chubb & Son, a division of Federal Insurance Company** |
|---|---|

By: _____    By: _____

Name: _____    Name: _____

Title: _____    Title: _____

Date Signed: _____    Date Signed: _____

CHUBB DRAFT 3-25-16

Instructions to Client:

**1.** *Appropriate corporate officer should execute 2 copies of the document.*

**2.** *Complete all requested information below:*

| Information For Notices: | For Client: | For Fair Isaac: |
|---|---|---|
| **Address:** | | 3661 Valley Centre Drive, Suite 500 |
| | | Reference LR 1810755 |
| **City/State:** | | San Diego, CA |
| **Zip/Code:** | | 92130 |
| **Country:** | | USA |
| **Attention:** | | Contracts Administrator |
| **Fax:** | | 858-523-4450 |

**3.** *Complete information below if different from above:*

| | Return executed contract to Client at: | Client's billing information: | Deliver Software to: |
|---|---|---|---|
| **Address:** | | | |
| | | | |
| **City/State:** | | | |
| **Zip/Code:** | | | |
| **Country:** | | | |
| **Attention:** | | | |
| **Phone:** | | | |
| **Fax (optional):** | | | |
| **Email:** | | | |

CHUBB DRAFT 3-25-16

## EXHIBIT A - PRODUCTS, FEES, PAYMENTS, AND ADDITIONAL TERMS

### Blaze Advisor

**1.     FAIR ISAAC PRODUCT DESCRIPTION**

1.1.   "**Fair Isaac Product(s)**" means the Blaze Advisor products listed below. The Blaze Advisor Development product allows a developer to utilize design and testing tools and to run a non-production deployment environment for testing use only. The Blaze Advisor Deployment product consists of the Blaze Advisor Rule Server and Engine and allows the software to be run on a system handling production-level processing.

**2.     LICENSE AND SUPPORT AND MAINTENANCE FEES**

| Product | Item # | Term | Scope/Quantity | Price | Total |
|---|---|---|---|---|---|
| Blaze Advisor Development Platform: JAVA and .Net | 280-DVLI-03 | Perpetual | Enterprise-Wide use within the Territory | $612,500 | $612,500 |
| Blaze Advisor Deployment Platform: JAVA and .Net | 280-DPLI-03 | Perpetual | Enterprise-Wide use within the Territory | $1,680,000 | $1,680,000 |
| Documentation for Blaze Advisor and Decision Simulator: User guide (available in HTML or PDF) | N/A | Perpetual | 1 set | Electronic copy included with software license | Included in license fees above |
| | | | | Gross License Fees | $2,292,500 |
| | | 100% Credit for All Previous Blaze Advisor License Fees Paid Under the Agreement | | | <$1,473,750> |
| | | | | Total Net License Fees | $818,750 |
| Support and Maintenance Fee for Blaze Advisor | 280-OOMN-08 280-MTSM-MN | Initial Term: One year | 1 | $343,875 Per Year: 15% of Total Gross License Fees | $343,875* Year One (Annual fee thereafter - subject to annual adjustment in accordance with Section 3.3 below) |
| **TOTAL NET LICENSE AND FIRST YEAR SUPPORT AND MAINTENANCE FEES – ($USD)** | | | | | **$1,162,625** |

| Amendment Three to Fair Isaac Software License and Maintenance Agreement | Page 5 of 9 |
|---|---|
| FI Contract Number: | FI LR |

\* If Client has paid any support and maintenance fees under the Agreement, those amounts received by Fair Isaac and applicable to periods after the date of this Amendment Three shall be applied to the first year support and maintenance fees listed above. The Client's anniversary date for support and maintenance renewals shall be the Amendment Three Effective Date.

## 3.   PAYMENT OF FEES AND EXPENSES

3.1   <u>License Fees</u>. Client owes the license fees described above once this Amendment Three has been executed by both parties. Notwithstanding any otherwise applicable payment terms, Client shall pay the license fees according to the following schedule:

| Payment Number | Payment Amount | Payment Due Date* |
|---|---|---|
| 1 | $ 409,375 | Upon execution of this Amendment Three |
| 2 | $ 409,385 | January 02, 2017 |

\* Amounts are due and payable on this date regardless of the invoice date or any otherwise applicable payment terms.

3.2   <u>Support and Maintenance Fees</u>. Client will be invoiced for the Support and Maintenance Fees in the amount of $343,875 for the first year once this Amendment Three has been executed by both parties. Client shall pay Support and Maintenance Fees annually thereafter in accordance with Section 3.3 below in advance while support and maintenance is in effect. The Support and Maintenance Fees set forth above cover only the licenses to the Fair Isaac Products set forth in the Agreement as amended hereby and in the Software License and Services Agreement by and between Fair Isaac Corporation and ACE American Insurance Company dated June 29, 2006, as may be amended from time to time (the "FICO-ACE SLA") and do not cover any other licenses to the Fair Isaac Products granted to Client under any other agreement. The total Support and Maintenance Fees for the Fair Isaac Products for future years will be calculated in accordance with Section 3.3 below based on the total license fees paid by Client for the Fair Isaac Products under the Agreement as amended hereby.  For the avoidance of doubt, the aforementioned total Support and Maintenance Fees shall include, cover and apply to all software licenses granted under the FICO-ACE SLA and no additional support and maintenance fees shall be calculated or applied thereunder.

3.3   <u>Ongoing Fees</u>. All ongoing fees specified in this Order Form will be reviewed approximately each anniversary of the Effective Date and may be increased by Fair Isaac. Any increase in fees resulting from that review will not exceed the lesser of (i) the most recently available annual change in the United States CPI and (ii) 3%. "CPI" means the Consumer Price Index for All Urban Consumers (CPI-U) for the U.S. City Average for All Items, 1982-84=100, as published by the US Bureau of Labor Statistics.

## 4.   ADDITIONAL TERMS

4.1   Client's licenses to the Fair Isaac Product(s) are limited as follows:

<u>(a)</u>   **Territory:** Worldwide except those countries to which exports are prohibited by the laws of the United States.

| Amendment Three to Fair Isaac Software License and Maintenance Agreement | | Page 6 of 9 |
|---|---|---|
| FI Contract Number: | | FI LR |

(b)    **License Scope:** Enterprise-Wide as defined in Section 4.3

(c)    **Additional Limitations:** .NET and JAVA platforms only

    4.2    <u>Platforms/Options</u>. Client's license to the Fair Isaac Product includes the right to use only the Java and .NET version of the Fair Isaac Product If Client desires versions of the Fair Isaac Product for additional supported platforms, an additional fee applies. Unless specifically noted as being purchased in this Exhibit A, Client does not obtain any right to options or additional related products (e.g., Compiled Sequential,) by virtue of its purchase of a license to the Fair Isaac Product.

    4.3    <u>Enterprise-Wide License.</u>    For purposes of this Amendment Three, the Enterprise-Wide License shall mean that the Client and its Affiliates may use the Fair Isaac Product within the Territory for its and their business purposes, with no limitation on the number of Seats or CPUs or applications on which the software is installed, subject to and in accordance with all of the provisions of the Agreement, as amended hereby. "Affiliates" shall mean any other entity that directly or indirectly controls or is controlled by Client, or is under common control with Client. Such other entity is an Affiliate only during the period that such "control" exists. Client shall at all times be responsible for its Affiliates' use of the Fair Isaac Product.

Confidential

FICO0000468

| Amendment Three to Fair Isaac Software License and Maintenance Agreement | Page 7 of 9 |
|---|---|
| FI Contract Number: | | | FI LR |

## EXHIBIT C - FAIR ISAAC SOFTWARE SUPPORT AND MAINTENANCE POLICY

### 1.      DEFINITIONS

"**Client**" means Chubb & Son, a division of Federal Insurance Company

"**Fair Isaac**" means Fair Isaac Corporation and its subsidiaries.

"**Fair Isaac Product(s)**" means the Blaze Advisor products listed on Exhibit A.

"**Errors**" means persistent malfunctions, inherent within the Software, that prevent the Software from operating according to its technical documentation.

"**Maintenance Fees**" means the support and maintenance fees applicable to the Software licensed by Client. In the case of software licensed on a subscription basis, the Maintenance Fees are included in the applicable subscription fees.

"**Product Support Hours**" are 6:00 a.m. to 5:00 p.m. Pacific Time, Monday through Friday, excluding holidays observed by Fair Isaac in the United States.

"**Software**" means the Fair Isaac software product(s) licensed by Client under the Agreement as amended by Amendment Three.

### 2.      SUPPORT AND MAINTENANCE SERVICES GENERALLY

2.1.     Subject to payment of the appropriate Maintenance Fees by Client, and compliance by Client with the terms of this policy and the applicable license agreement, Fair Isaac shall provide Client with support and maintenance services for the Software as set forth in this policy.

2.2.     Fair Isaac provides support and maintenance services for licensed Software during both implementation and production use when operated on supported platforms installed on designated or approved equipment, as set forth in the technical documentation for the Software. Support is currently provided in the English language only.

2.3.     Subject to Article 5 (Exclusions), maintenance includes any standard Software versions and releases generally made available to Fair Isaac's customers that are current on Maintenance Fees. Those versions and releases will be provided to Client under this policy on an if-and-when-available basis.

### 3.      TECHNICAL SUPPORT

Fair Isaac will make commercially reasonable efforts, during Product Support Hours, to address Client's questions about the Software, to resolve operating problems that are attributable to the Software, and to resolve verified, reproducible Errors in the Software.

### 4.      TERM; TERMINATION; REINSTATEMENT

4.1.     Fair Isaac's support and maintenance obligations under this policy commence upon shipment of the Software and will continue for an initial term of one year. Maintenance Fees will be invoiced on an annual basis in advance. For as long as Fair Isaac makes maintenance

| Amendment Three to Fair Isaac Software License and Maintenance Agreement | | Page 8 of 9 |
|---|---|---|
| FI Contract Number: | | FI LR |

for the Software generally available to all of its customers, the support and maintenance service will automatically renew for consecutive one-year terms unless Client gives Fair Isaac 30 days' written notice, prior to the end of the current term, of its intent not to renew. Support and maintenance during renewal terms will be subject to the Support and Maintenance Policy in effect for the Software at the time of renewal. Maintenance Fees applicable to renewal terms may be increased by Fair Isaac, but no increase may exceed the lesser of (i) the most recently available annual change in the CPI; and (ii) 3%. "CPI" means the Consumer Price Index for All Urban Consumers (CPI-U) for the U.S. City Average for All Items, 1982-84=100, as published by the US Bureau of Labor Statistics.

4.2.    Fair Isaac may terminate support and maintenance services under this policy upon at least 30 days' written notice if Client is in breach under this policy or the Agreement, as amended and does not cure the breach before the end of the notice period. Fair Isaac will have no obligation to resume support and maintenance services following a termination for cause under this section.

4.3.    Fair Isaac may, at its sole discretion, reinstate lapsed or terminated support and maintenance services, in accordance with its then-current policies, upon payment by Client of the applicable reinstatement fee.

5.    **EXCLUSIONS**

5.1.    Services outside the scope of this policy are subject to availability of resources and will be charged for separately at Fair Isaac's then-current rates for those services. The following are outside the scope of this policy:

(a)    Support services provided outside of Product Support Hours or any other hours as are provided for in Section 6 (Severity Levels and Response Times).

(b)    Support service that becomes necessary due to failure of computer hardware, equipment or programs not provided by Fair Isaac; negligence of Client or any third party; operator error; improper use of hardware or software (including the Software); any problem or loss not solely attributable to the Software; problems stemming from Client not applying all required maintenance releases; or problems due to unauthorized modification or adaptation of the Software by Client.

(c)    Development, customization, coding, installation, integration, consulting and training.

(d)    Optional, separately-priced Software features that may be made available by Fair Isaac with new versions or releases of the Software.

5.2.    Unless otherwise indicated in the applicable Order Form or license agreement, Fair Isaac has no obligation to provide support or maintenance services for other than (i) the current release of the Software and (ii) one prior release of the Software, but only for a maximum of one year after release of a subsequent release.

6.    **SEVERITY LEVELS AND RESPONSE TIMES.** Upon Client's report of a problem with the Software, a Fair Isaac representative will acknowledge the report by issuing a confirmation to Client, either by phone or email, and Fair Isaac will assign a Severity

| Amendment Three to Fair Isaac Software License and Maintenance Agreement | | Page 9 of 9 |
|---|---|---|
| FI Contract Number: | | FI LR |

Level to the problem based on the type of issue reported, according to the following schedule:

| Severity | Condition | Response Time/Action |
|---|---|---|
| 1 | **Production Down Emergency: An Error in the production environment that inhibits all or substantially all of the Software from functioning in accordance with its documentation. A severity "one" problem is both severe and mission-critical.:** | Provide:<br>(a) a phone response within 1 hour during Fair Isaac's Product Support Hours and |
| | | (b) an action plan within 4 hours for the development of a patch or a bypass for the Error. |
| | | Following the development of the patch or bypass, Fair Isaac will notify Client of inclusion of the patch or a solution in a revision of the Software. |
| | | Once identified and logged, Fair Isaac will provide all necessary services to resolve a Severity-One condition on a diligent-efforts priority basis seven days per week until that condition has been patched or bypassed. |
| 2 | **Production Impaired: An Error in the production environment where major functionality of the Software is inhibited, but the Error does not materially disrupt Client's business** | Provide:<br>(a) a written or phone response within 4 hours during Fair Isaac's Product Support Hours and |
| | | (b) an action plan within 2 business days for a bypass for the Error or |
| | | (c) an action plan within 5 business days for developing a patch for the Error. |
| | | Following the development of the patch or bypass, Fair Isaac will notify Client of inclusion of the patch or a solution in a revision of the Software. |
| | | Fair Isaac will work on the Error during Product Support Hours. |
| 3 | **Production Inhibited: An Error in the production environment where a feature of the Software is inhibited, but the Error does not materially disrupt Client's business** | Provide:<br>(a) a written or phone response within one business day and |
| | | (b) Consider for correction or inclusion in the next revision of the Software. |
| 4 | **General Assistance: A "how to" question; an Error that is minor or cosmetic in nature; or an enhancement request to be considered for a future revision of the Software** | Provide:<br>(a) a written or phone response within 2 business days and |
| | | (b) Consider for correction or inclusion in the next revision of the Software. |

# P-0855

**CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE**

This Confidential Settlement Agreement and General Release (the "Settlement Agreement") is entered into as of March __, 2016 (the "Effective Date") by and between Fair Isaac Corporation with principal offices at _____ ("FICO") and Chubb and Son, a division of Federal Insurance Company with principal offices at 15 Mountain View Road, Warren, New Jersey 07059 ("Chubb"). FICO and Chubb are referred to herein collectively as the "Parties" and individually as a "Party".

WHEREAS, Chubb and FICO entered into a Software License and Maintenance Agreement as of June 30, 2006, Amendment One to Software License and Services Agreement as of August 1, 2006, and Amendment Two to Software License and Services Agreement as of December 28, 2006 (collectively, the "Original Agreement"), which set forth the terms and conditions of, among other things, Chubb's license of software products developed by FICO (the "FICO Licenses"); and

WHEREAS, during the first quarter of 2016 a dispute arose between the Parties concerning Chubb's use of the FICO Licenses, including the proper scope and use of the FICO Licenses given a recent merger transaction involving The Chubb Corporation (the parent entity of Chubb) and ACE INA Holdings, Inc., and the propriety of deployments of the FICO products outside if the United States (collectively, the "Dispute"); and

WHEREAS, without either admitting any liability, fault or wrongdoing on the part of either Party, the Parties wish to settle and resolve fully and finally all differences and disputes between them concerning all matters including the Original Agreement, the FICO Licenses and the Dispute.

NOW, THEREFORE, for the consideration stated herein, including but not limited to, the mutual covenants and undertakings set forth herein, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **Amendment Three.** The Parties will execute, contemporaneously with the execution of this Settlement Agreement, Amendment Three to Software License and Services Agreement ("Amendment Three"), a copy of which is attached hereto as Exhibit A (the Original Agreement, as amended by Amendment Three, is now referred to herein as the "New Agreement"). As of the Effective Date, the licenses and business relationship between the Parties shall be solely governed by the New Agreement. The licenses granted pursuant to the Prior Agreement are, as of the Effective Date, terminated and of no future effect.

2. **Consideration.** In exchange for complete resolution of the Dispute, Chubb shall pay or cause to be paid to FICO the sum of eight hundred eighteen thousand seven hundred and fifty dollars ($818,750) (the "Settlement Amount"). The Settlement Amount shall be paid in two instalments. The first instalment of four hundred and nine thousand three hundred and seventy five dollars ($409,375) shall be paid upon execution of Amendment Three. The second instalment of four hundred and nine thousand three hundred and seventy five dollars ($409,375) shall be paid on or before January 2, 2017.

3. **Release.**

A. In consideration of and in reliance on the foregoing, FICO, its predecessors, successors, subsidiaries, affiliates, officers, directors, employees, agents, representatives, successors and assigns, (the "FICO Releasors") hereby releases and forever discharges Chubb, its predecessors, successors, parents, subsidiaries, affiliates, related entities, officers, directors, employees, attorneys, insurers, customers, agents, representatives,

U.S. DIST COURT – MN
PLAINTIFF EXHIBIT
**P-0855**
Case No. 16-cv-1054-DTS

FICO0000472

successors and assigns, past, present or future, (the "Chubb Releasees") from any and all claims, losses, liabilities, obligations, suits, debts, liens, contracts, agreements, promises, demands and damages, of any nature whatsoever, known or unknown, suspected, unsuspected or hereafter discovered, fixed or contingent, that FICO, the FICO Releasors or any of them, ever had, may have had, now have, or hereafter may have, including arising under   any and all possible state or federal statutory, constitutional, and/or common law, against Chubb, the Chubb Releasees, or any of them, from the beginning of the world, including those related to or arising out of, in any way, directly or indirectly, the Dispute, the Original Agreement, and any license and/or maintenance and/or support fees relating to the FICO Licenses (collectively, the "Claims").

     B.  FICO acknowledges and agrees that it may hereafter discover facts different from or in addition to those it now knows or believes to be true in respect to the Claims released by this Settlement Agreement, and hereby agrees that the releases contained herein shall be and remain in effect in all respects as a complete, general release, notwithstanding any such different or additional facts.

**4. Confidentiality.**  The terms and conditions of this Settlement Agreement, the existence of this Settlement Agreement, and the discussions and negotiations that preceded its making are absolutely confidential between the Parties and shall not be disclosed to any other party, except as follows, in which cases the Parties will nevertheless use their best efforts to seek confidential treatment by any receiving party: (i) as is necessary to effectuate any term or provision of the settlement, including any subsequent litigation to enforce the settlement, except that both Parties shall take all reasonable steps to maintain the confidentiality of this information including filing documents under seal and entry of appropriate protective orders; (ii) to a Party's accountants or attorneys; (iii) as is reasonably necessary to comply with the Securities and Exchange Commission's disclosure requirements, if applicable; and (iv) as required by law or court order upon notice to the other Party sufficiently in advance of such disclosure to permit it to seek a protective order.  Any disclosure in violation of this section shall be deemed a material breach of this Settlement Agreement.

**5.  Interpretation of Agreement**.  This Settlement Agreement, and each of its provisions, has been reached as the result of negotiations between the Parties.  Each of the Parties expressly acknowledges and agrees that this Settlement Agreement shall not be deemed to have been prepared by, or drafted by, any particular Party or Parties hereto, and that the normal rule of construction, to the effect that any ambiguities are to be resolved against the drafting party or parties, shall not be employed in the interpretation of this Settlement Agreement.

**6. Governing Law.**  This Settlement Agreement shall be construed in accordance with, and governed by, the laws of the State of New Jersey, without regard to conflicts of law principles.

**7. Binding Agreement.** This Settlement Agreement shall be binding on, and shall inure to the benefit of, each of the Parties and their respective past, present and future predecessors, successors, subsidiaries, affiliates, related entities, officers, directors, employees, attorneys, insurers, agents, representatives and assigns.

**8. Counterparts.** This Settlement Agreement may be executed simultaneously or in any number of counterparts, each of which shall be deemed an original, equally admissible in evidence against any Party who has signed it, all of which together shall constitute one and the same agreement.  Signatures delivered by facsimile or .pdf shall be deemed original signatures.

**9. Integrated Agreement; Modification.** This writing is an integrated agreement and represents the entire understanding of the Parties relative to the subject matter described herein. No prior or contemporaneous agreements shall be enforceable if they materially alter, vary, or add to the terms of this Agreement.  This Settlement Agreement may not be modified except by a writing executed by each Party. This Settlement Agreement and the New Agreement constitute the parties' entire agreement with regard to the subject matter contained herein, and supersedes all other prior agreements, understandings, conditions, representations or warranties, whether oral or written, including the Original Agreement.

Page **2** of **4**

**10. Authority.** The persons executing this Settlement Agreement warrant that they have full authority to sign this Settlement Agreement on behalf of the Parties for which are acting and that said Parties will thereby be fully bound by the terms of this Settlement Agreement.

**11. Severability.** Each provision of this Settlement Agreement shall be interpreted in such a manner as to be valid, legal and enforceable. A determination that any provision of this Settlement Agreement is for any reason invalid, illegal, or unenforceable shall not affect the validity of this Settlement Agreement and any other provisions herein, and this Settlement Agreement shall be interpreted and construed as if such invalid, illegal, or unenforceable provisions were not contained herein.

**12. No Admission.** This Settlement Agreement represents a compromise of a disputed matter and is not intended to be, and is not, an admission of liability or fault by any Party.

**13. No Assignment**. The Parties represent and warrant that they have not sold, assigned, transferred, conveyed or otherwise disposed of any of the rights, claims, demands, obligations, or causes of action which have been released in this Settlement Agreement.

**14. No Reliance**. The Parties represent that this Settlement Agreement is knowing and voluntary and is signed by the Parties without reliance on any statement or representation by any Party, nor their respective representatives, agents, or assigns, including their respective attorneys, and that the Parties consulted with such attorneys, accountants, financial advisers and other advisers as they have deemed necessary and appropriate in connection with the negotiation and execution of this Settlement Agreement, and are fully aware of the legal and financial consequences of this Settlement Agreement.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as of the Effective Date, as follows:

Fair Isaac Corporation

By: _____

Name: _____

Title: _____

Date: _____

Chubb & Son, a division of Federal Insurance Company

By: _____

Name: _____

Title: _____

Date: _____

Confidential

P-0855-003

FICO0000474

**Exhibit A**

**Amendment Three to Software License and Services Agreement**

Confidential

P-0855-004

FICO0000475

# P-0933

CHUBB DRAFT 3-25-16

## Amendment Three ~~and License Transfer~~ to
## Software License and Services Agreement

This Amendment Three ("**Amendment Three**") is dated March__, 2016 ("**Amendment Three Effective Date**") and is between Fair Isaac Corporation ("**Fair Isaac**") and ~~Chubb Limited, through its division~~ Chubb & Son, a division of Federal Insurance Company ("**Client**").

WHEREAS, Fair Isaac and Client entered into the Software License and ~~Services~~ Maintenance Agreement dated June 30, 2006 (LR30073) whereby Client licensed certain Fair Isaac Products known as Blaze Advisor on a Named Application basis (the "Agreement"); and:

WHEREAS, Fair Isaac and Client entered into Amendment One on August 01, 2006 whereby the Named Application license was expanded to a Divisional Enterprise License as more fully described therein; and.

WHEREAS, Fair Isaac and Client entered into Amendment Two on December 28, 2006 whereby the Divisional Enterprise License was expended to an Enterprise License, which extended to Affiliates of Client, as more fully described therein; and

WHEREAS, the parties now desire to further amend the Agreement to address changes to Client's Enterprise License as agreed to by the parties.;

~~Ace Limited, now known as Chubb Ltd., acquired The Chubb Corporation on January 14, 2016 effecting a change of control requiring consent to assign the Agreement from Chubb and Son, a division of Federal Insurance Company, which itself is a wholly owned and controlled subsidiary of the Chubb Corporation. The Agreement requires Fair Isaac consent to transfer and assign the Agreement to Chubb Limited.~~

~~Additionally, Chubb & Son is utilizing three Named Applications outside the authorized Territory under the Agreement.~~

~~A.~~     ~~The parties desire to have the Blaze Advisor Enterprise license provided under the Agreement transferred to Chubb Limited and to otherwise modify and rectify the Agreement to reflect current and future use as described herein, and to otherwise compromise, settle and resolve any disputes related to the foregoing.~~

NOW, THEREFORE, Iin consideration of the foregoing, and other consideration, the receipt and sufficiency of which is acknowledged by the parties, the parties hereby agree as follows:

1.     Replacement License.  The parties agree the license to use the Fair Isaac Products set forth in the Agreement and Amendment One and Amendment Two is hereby terminated and of no further force and effect; and that in lieu thereof, Fair Isaac hereby grants Client a license to use the Fair Isaac Products listed on Exhibit A attached hereto on the terms and conditions listed in the Agreement, as amended hereby and as set forth in Exhibit A.

2.     General.  Unless otherwise indicated, capitalized terms used in this Amendment Three have the meanings given them in the Agreement.  Except as expressly amended by this Amendment Three, the provisions of the Agreement continue in full force and effect. If there is a conflict between the Agreement and this Amendment Three, the terms of this



U.S. DIST COURT – MN
PLAINTIFF EXHIBIT
**P-0933**
Case No. 16-cv-1054-DTS

CHUBB DRAFT 3-25-16

Amendment Three control. This Amendment Three, together with the terms of the Agreement, constitute the full and entire understanding and agreement between the parties with regard to the subject matter hereof, and supersedes all prior or contemporaneous proposals and all other oral or written understandings, representations, conditions, and other communications between the parties relating to such subject matter, as well as the terms of all existing or future purchase orders and acknowledgements.

Fair Isaac and Client are signing this Amendment Three as of the Amendment Three Effective Date, notwithstanding the date of the parties' actual signatures.

| **Fair Isaac Corporation** | **Chubb & Son, a division of Federal Insurance Company Limited** |
|---|---|
| By: _____ | By: _____ |
| Name: _____ | Name: _____ |
| Title: _____ | Title: _____ |
| Date Signed: _____ | Date Signed: _____ |

CHUBB DRAFT 3-25-16

Instructions to Client:

**1. *Appropriate corporate officer should execute 2 copies of the document.***

**2. *Complete all requested information below:***

| Information For Notices: | For Client: | For Fair Isaac: |
|---|---|---|
| Address: | | 3661 Valley Centre Drive, Suite 500 |
| | | Reference LR 1810755 |
| City/State: | | San Diego, CA |
| Zip/Code: | | 92130 |
| Country: | | USA |
| Attention: | | Contracts Administrator |
| Fax: | | 858-523-4450 |

**3. *Complete information below if different from above:***

| | Return executed contract to Client at: | Client's billing information: | Deliver Software to: |
|---|---|---|---|
| Address: | | | |
| | | | |
| City/State: | | | |
| Zip/Code: | | | |
| Country: | | | |
| Attention: | | | |
| Phone: | | | |
| Fax (optional): | | | |
| Email: | | | |

CHUBB DRAFT 3-25-16

**EXHIBIT A - PRODUCTS, FEES, PAYMENTS, AND ADDITIONAL TERMS**

**Blaze Advisor**

1.  **FAIR ISAAC PRODUCT DESCRIPTION**

   1.1.   "**Fair Isaac Product(s)**" means the Blaze Advisor products ~~and Model Translator for SPLM (SRL) product~~ listed below. The Blaze Advisor Development product allows a developer to utilize design and testing tools and to run a non-production deployment environment for testing use only. The Blaze Advisor Deployment product consists of the Blaze Advisor Rule Server and Engine and allows the software to be run on a system handling production-level processing. ~~The Model Translator for SPLM products allows a developer to translate SAS code to Blaze Advisor's native programming language (SRL) for deployment~~.

2.  **LICENSE AND SUPPORT AND MAINTENANCE FEES**

| Product | Item # | Term | Scope/Quantity | Price | Total |
|---|---|---|---|---|---|
| Blaze Advisor Development Platform: JAVA and .Net | 280-DVLI-03 | Perpetual | Enterprise-Wide use within the Territory | $612,500~~990,00 0~~ | $612,500~~990,00 0~~ |
| Blaze Advisor Deployment Platform: JAVA and .Net | 280-DPLI-03 | Perpetual | Enterprise-Wide use within the Territory | $1,680,000~~2,720 ,000~~ | $1,680,000~~2,720 ,000~~ |
| Documentation for Blaze Advisor and Decision Simulator: User guide (available in HTML or PDF) | N/A | Perpetual | 1 set | Electronic copy included with software license | Included in license fees above |
| ~~Model Translator for SPLM (SRL)~~ | ~~280-MTSL-PL~~ | ~~Perpetual~~ | ~~Enterprise use within the Territory~~ | ~~$1,100,000~~ | ~~$1,100,000~~ |
| ~~Documentation for Model Translator for SPLM (SRL)~~ | ~~N/A~~ | ~~Perpetual~~ | ~~1 set~~ | ~~Electronic copy included with software license~~ | ~~Included in license fees above~~ |
| | | | | Gross License Fees | $2,292,500 |
| 100% Credit for All Previous Blaze Advisor License Fees Paid Under the Agreement | | | | | <$1,473,750> |
| | | | | Total Net License Fees | $818,750 |
| | | | | ~~Gross License Fees~~ | ~~$4,810,000~~ |
| ~~100% Credit for All Previous Blaze Advisor License Fees Paid Under the Agreement~~ | | | | | ~~<$1,473,750>~~ |
| | | | | ~~Total Net License Fees~~ | ~~$3,336,250~~ |
| Support and Maintenance Fee for Blaze Advisor ~~and Model Translator for SPLM (SRL)~~ | 280-OOMN-08 280-MTSM-MN | Initial Term: One year | 1 | $343,875~~962,00 0~~ Per Year: 20~~15~~% of Total Gross License Fees | $962,000~~343,87 5~~* Year One (Annual fee thereafter - subject to annual adjustment in accordance with Section 3.3 below) |
| **TOTAL NET LICENSE AND FIRST YEAR SUPPORT AND MAINTENANCE FEES – ($USD)** | | | | | $1,162,625~~4,298,250~~ |

| Amendment ~~One~~ Three to Fair Isaac Software License and ~~Services~~ Maintenance Agreement | Page 5 of 10 |
|---|---|
| FI Contract Number: | FI LR |

\* If Client has paid any support and maintenance fees under the Agreement, those amounts received by Fair Isaac and applicable to periods after the date of this Amendment Three~~3~~ shall be applied to the first year support and maintenance fees listed above. The Client's anniversary date for support and maintenance renewals shall be the Amendment Three~~3~~ Effective Date.

**3.      PAYMENT OF FEES AND EXPENSES**

3.1      <u>License Fees</u>. Client owes the license fees described above once this Amendment Three has been executed by both parties. Notwithstanding any otherwise applicable payment terms, Client shall pay the license fees according to the following schedule:

| Payment Number | Payment Amount | Payment Due Date\* |
|---|---|---|
| 1 | $ 409,375~~1,668,125~~ | Upon execution of this Amendment Three |
| 2 | $ 409,385~~1,668,125~~ | January 02, 2017 |

\* Amounts are due and payable on this date regardless of the invoice date or any otherwise applicable payment terms.

3.2      <u>Support and Maintenance Fees</u>. Client will be invoiced for the ~~the~~ Support and Maintenance Fees in the amount of $343,875~~962,000~~ for the first year once this Amendment Three has been executed by both parties. Client shall pay Support and Maintenance Fees annually thereafter in accordance with Section 3.3 below in advance while support and maintenance is in effect. The Support and Maintenance Fees set forth above cover only the licenses to the Fair Isaac Products set forth in ~~this document~~the Agreement as amended hereby and in the Software License and Services Agreement by and between Fair Isaac Corporation and ACE American Insurance Company dated June 29, 2006, as may be amended from time to time (the "FICO-ACE SLA") and do not cover any other licenses to the Fair Isaac Products granted to Client under any other agreement. The total Support and Maintenance Fees for the Fair Isaac Products for future years will be calculated in accordance with Section 3.3 below based on the total license fees paid by Client for the Fair Isaac Products under ~~this document and all other agreements~~the Agreement as amended hereby.  For the avoidance of doubt, the aforementioned total Support and Maintenance Fees shall include, cover and apply to all software licenses granted under the FICO-ACE SLA and no additional support and maintenance fees shall be calculated or applied thereunder.

3.3      <u>Ongoing Fees</u>. All ongoing fees specified in this Order Form will be reviewed approximately each anniversary of the Effective Date and may be increased by Fair Isaac. Any increase in fees resulting from that review will not exceed the lesser of (i) the most recently available annual change in the United States CPI and (ii) 3%. "**CPI**" means the Consumer Price Index for All Urban Consumers (CPI-U) for the U.S. City Average for All Items, 1982-84=100, as published by the US Bureau of Labor Statistics.

**4.      ADDITIONAL TERMS**

4.1      Client's licenses to the Fair Isaac Product(s) are limited as follows:

(a)      **Territory:** Worldwide except those countries to which exports are prohibited by the laws of the United States.

| Amendment ~~One~~ Three to Fair Isaac Software License and ~~Services~~ Maintenance Agreement | Page 6 of 10 |
|---|---|
| FI Contract Number: | | FI LR |

(b)     **License Scope:** Enterprise-Wide as defined in Section 4.3

(c)     **Additional Limitations:**  .NET and JAVA platforms only

4.2     Platforms/Options. Client's license to the Fair Isaac Product includes the right to use only the Java and .NET version of the Fair Isaac Product If Client desires versions of the Fair Isaac Product for additional supported platforms, an additional fee applies. Unless specifically noted as being purchased in this Exhibit A, Client does not obtain any right to options or additional related products (e.g., Compiled Sequential,) by virtue of its purchase of a license to the Fair Isaac Product.

4.3     Enterprise-Wide License.     For purposes of this Amendment Three, the Enterprise-Wide License shall mean that the Client and its Affiliates may use the Fair Isaac Product within the Territory for its and their ~~internal~~ business purposes, with no limitation on the number of Seats or CPUs or applications on which the software is installed, subject to and in accordance with all of the provisions of the Agreement, as amended hereby. "Affiliates" shall mean any other entity that directly or indirectly controls or is controlled by Client, or is under common control with Client ~~where "control" means the ownership of more than 50% of the aggregate of all voting interests (representing the right to vote for the election of directors or other managing authority) in an entity~~. Such other entity is an Affiliate only during the period that such "control"~~:~~ exists. Client shall at all times be responsible for its Affiliates' use of the Fair Isaac Product.

| Amendment ~~One~~ Three to Fair Isaac Software License and ~~Services~~ Maintenance Agreement | Page 7 of 10 |
|---|---|
| FI Contract Number: | FI LR |

### EXHIBIT C - FAIR ISAAC SOFTWARE SUPPORT AND MAINTENANCE POLICY

**1.    DEFINITIONS**

"**Client**" means Chubb & Son, a division of Federal Insurance Company ~~Limited~~

"**Fair Isaac**" means Fair Isaac Corporation and its subsidiaries.

"**Fair Isaac Product(s)**" means ~~FICO~~ the Blaze Advisor ~~and FICO Model Translator for SPLM (SRL)~~ products listed on Exhibit A.

"**Errors**" means persistent malfunctions, inherent within the Software, that prevent the Software from operating according to its technical documentation.

"**Maintenance Fees**" means the support and maintenance fees applicable to the Software licensed by Client. In the case of software licensed on a subscription basis, the Maintenance Fees are included in the applicable subscription fees.

"**Product Support Hours**" are 6:00 a.m. to 5:00 p.m. Pacific Time, Monday through Friday, excluding holidays observed by Fair Isaac in the United States.

"**Software**" means the ~~following~~ Fair Isaac software product(s) licensed by Client under the Agreement as amended by Amendment Three.~~:~~

2.    **SUPPORT AND MAINTENANCE SERVICES GENERALLY**

2.1.    Subject to payment of the appropriate Maintenance Fees by Client, and compliance by Client with the terms of this policy and the applicable license agreement, Fair Isaac shall provide Client with support and maintenance services for the Software as set forth in this policy.

2.2.    Fair Isaac provides support and maintenance services for licensed Software during both implementation and production use when operated on supported platforms installed on designated or approved equipment, as set forth in the technical documentation for the Software. Support is currently provided in the English language only.

2.3.    Subject to Article 5 (Exclusions), maintenance includes any standard Software versions and releases generally made available to Fair Isaac's customers that are current on Maintenance Fees. Those versions and releases will be provided to Client under this policy on an if-and-when-available basis.

**3.    TECHNICAL SUPPORT**

~~3.1.~~    Fair Isaac will make commercially reasonable efforts, during Product Support Hours, to address Client's questions about the Software, to resolve operating problems that are attributable to the Software, and to resolve verified, reproducible Errors in the Software.

~~3.2.    Client agrees: (i) to set up primary and secondary liaisons who have been trained on the Software; (ii) that all support requests will be centralized through the primary and secondary liaisons; (iii) to use commercially reasonable efforts to diagnose and resolve~~

| Amendment ~~One~~ Three to Fair Isaac Software License and ~~Services~~ Maintenance Agreement | Page 8 of 10 |
|---|---|
| FI Contract Number: | FI LR |

~~problems in the operation of the Software prior to contacting Fair Isaac for support; (iv)~~
~~to use commercially reasonable efforts to verify that reported problems are due to a~~
~~malfunction of the Software, and not due to the operating system, hardware, data,~~
~~interfaces, or improper use of the Software, prior to contacting Fair Isaac for support; and~~
~~(v) and to submit support requests to Fair Isaac Product Support through the designated~~
~~contacts or other methods that Fair Isaac may provide.~~

## 4. TERM; TERMINATION; REINSTATEMENT

4.1. Fair Isaac's support and maintenance obligations under this policy commence upon shipment of the Software and will continue for an initial term of one year. Maintenance Fees will be invoiced on an annual basis in advance. For as long as Fair Isaac makes maintenance for the Software generally available to all of its customers, the support and maintenance service will automatically renew for consecutive one-year terms unless Client gives Fair Isaac 30 days' written notice, prior to the end of the current term, of its intent not to renew. Support and maintenance during renewal terms will be subject to the Support and Maintenance Policy in effect for the Software at the time of renewal. Maintenance Fees applicable to renewal terms may be increased by Fair Isaac, but no increase may exceed the lesser of (i) the most recently available annual change in the CPI; and (ii) 3%. "CPI" means the Consumer Price Index for All Urban Consumers (CPI-U) for the U.S. City Average for All Items, 1982-84=100, as published by the US Bureau of Labor Statistics.

4.2. Fair Isaac may terminate support and maintenance services under this policy upon at least 30 days' written notice if Client is in breach under this policy or ~~any license~~ ~~agreement relating to the Software~~ the Agreement, as amended and does not cure the breach before the end of the notice period. Fair Isaac will have no obligation to resume support and maintenance services following a termination for cause under this section.

4.3. Fair Isaac may, at its sole discretion, reinstate lapsed or terminated support and maintenance services, in accordance with its then-current policies, upon payment by Client of the applicable reinstatement fee.

## 5. EXCLUSIONS

5.1. Services outside the scope of this policy are subject to availability of resources and will be charged for separately at Fair Isaac's then-current rates for those services. The following are outside the scope of this policy:

(a) Support services provided outside of Product Support Hours or any other hours as are provided for in Section 6 (Severity Levels and Response Times).

(b) Support service that becomes necessary due to failure of computer hardware, equipment or programs not provided by Fair Isaac; negligence of Client or any third party; operator error; improper use of hardware or software (including the Software); any problem or loss not solely attributable to the Software; problems stemming from Client not applying all required maintenance releases; or problems due to unauthorized modification or adaptation of the Software by Client.

(c) Development, customization, coding, installation, integration, consulting and training.

| Amendment ~~One~~ Three to Fair Isaac Software License and ~~Services~~ Maintenance Agreement | Page 9 of 10 |
|---|---|
| FI Contract Number: | FI LR |

(d)     Optional, separately-priced Software features that may be made available by Fair Isaac with new versions or releases of the Software.

5.2.     Unless otherwise indicated in the applicable Order Form or license agreement, Fair Isaac has no obligation to provide support or maintenance services for other than (i) the current release of the Software and (ii) one prior release of the Software, but only for a maximum of one year after release of a subsequent release.

6.     **SEVERITY LEVELS AND RESPONSE TIMES**. Upon Client's report of a problem with the Software, a Fair Isaac representative will acknowledge the report by issuing a confirmation to Client, either by phone or email, and Fair Isaac will assign a Severity Level to the problem based on the type of issue reported, according to the following schedule:

| Severity | Condition | Response Time/Action |
|---|---|---|
| 1 | **Production Down Emergency: An Error in the production environment that inhibits all or substantially all of the Software from functioning in accordance with its documentation. A severity "one" problem is both severe and mission-critical.:** | Provide:<br>(a) a phone response within 1 hour during Fair Isaac's Product Support Hours and |
| | | (b) an action plan within 4 hours for the development of a patch or a bypass for the Error. |
| | | Following the development of the patch or bypass, Fair Isaac will notify Client of inclusion of the patch or a solution in a revision of the Software. |
| | | Once identified and logged, Fair Isaac will provide all necessary services to resolve a Severity-One condition on a diligent-efforts priority basis seven days per week until that condition has been patched or bypassed. |
| 2 | **Production Impaired: An Error in the production environment where major functionality of the Software is inhibited, but the Error does not materially disrupt Client's business** | Provide:<br>(a) a written or phone response within 4 hours during Fair Isaac's Product Support Hours and |
| | | (b) an action plan within 2 business days for a bypass for the Error or |
| | | (c) an action plan within 5 business days for developing a patch for the Error. |
| | | Following the development of the patch or bypass, Fair Isaac will notify Client of inclusion of the patch or a solution in a revision of the Software. |
| | | Fair Isaac will work on the Error during Product Support Hours. |
| 3 | **Production Inhibited: An Error in the production environment where a feature of the Software is inhibited, but the Error does not materially disrupt Client's business** | Provide:<br>(a) a written or phone response within one business day and |
| | | (b) Consider for correction or inclusion in the next revision of the Software. |
| 4 | **General Assistance: A "how to" question; an Error that is minor or cosmetic in nature; or an enhancement request to be considered for a future revision of the Software** | Provide:<br>(a) a written or phone response within 2 business days and |
| | | (b) Consider for correction or inclusion in the next revision of the Software. |

| Amendment ~~One~~ Three to Fair Isaac Software License and ~~Services~~ Maintenance Agreement | Page 10 of 10 |
|---|---|
| FI Contract Number: | FI LR |