

O'Melveny & Myers LLP  
1999 Avenue of the Stars  
8th Floor  
Los Angeles, CA 90067-6035

T: +1 310 553 6700  
F: +1 310 246 6779  
omm.com

February 14, 2023

**Leah Godesky**  
D: +1 310 246 8501  
lgodesky@omm.com

<u>BY ECF</u>

Honorable David T. Schultz  
United States District Court  
300 South Fourth Street  
Minneapolis, MN 55415

Re:   *Fair Isaac Corp. v. Federal Insurance Co. et al.*, 16-cv-1054

Dear Judge Schultz:

Extensive evidence shows that FICO employees understood that the License Agreement allowed Federal's Affiliates in Canada, Europe, and Australia to use Blaze Advisor. Although FICO has not yet specifically articulated its concerns to Defendants, our understanding is that FICO will now contend that this evidence is relevant only to the issue of whether Blaze Advisor could be used globally—by Federal's Affiliates in Canada, Europe, and Australia—and not to the issue of whether Blaze Advisor could be used by Federal's Affiliates in Canada, Europe, and Australia. That is plainly wrong.

The question for the jury is whether the phrase "Client and its Affiliates" encompassed Federal's foreign Affiliates in Canada, Europe, and Australia. The Court has held that, "[a]t best, the scope of the phrase 'Client and its Affiliates' . . . is ambiguous[.]" Dkt. 731 at 44. Under New York law, extrinsic evidence is admissible to prove the meaning of an ambiguous contract provision. *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London*, 136 F.3d 82, 86 (2d Cir. 1998). Such evidence may include what the parties understood the ambiguous provision to mean, *id.*, and their course of conduct under the contract, *Cont. Cas. Co. v. Rapid-American Corp.*, 609 N.E. 506, 511 (N.Y. 1993). The long trail of internal emails memorializing FICO's understanding that the License Agreement permitted Federal's Affiliates in Canada, Europe, and Australia to use Blaze Advisor is self-evidently relevant to the question whether the License Agreement's ambiguous "Client and its Affiliates" provision permitted such use. It shows that both parties understood that it did—and acted on that understanding for many years. *See* Fed. R. Evid. 401.

This evidence is also relevant to Defendants' counterclaims. Based in part on the use of Blaze Advisor by Federal's Affiliates outside of the United States, FICO demanded more license fees from Federal under threat of termination, and then purported to terminate the License Agreement. That these threats and statements were contrary to FICO's knowledge of Federal Affiliates' use and FICO's previous interpretation of the License Agreement is directly relevant to Federal's claims.

O'Melveny

To the extent FICO argues that it lacked notice that Defendants would use this evidence to defend against the Affiliates claim, that is off-base and wrong.  Defendants relied on this evidence at summary judgment to argue that the License Agreement permitted Federal's Affiliates in Canada, Europe, and Australia to use Blaze Advisor.  *See* Dkt. 445 at 17–19 (describing FICO's "knowledge, acquiescence, and active participation in Federal's use of Blaze at its foreign affiliates."),  20–21; Dkt. 507 at 14 ("Sawyer, Carretta, and others at FICO had known about this use for years and had even participated in that use with Federal and its affiliates on multiple occasions.").  It may use that same evidence for that same purpose at trial.  And, in any event, FICO identifies no requirement that a party notify its opponent—outside of court-ordered trial disclosure and preparation procedures—of the evidence it will use to prove a live claim.

Respectfully submitted,

/s/ Leah Godesky

Leah Godesky

cc:     Counsel of Record