UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation, | ) Case No. 16-cv-1054 (DTS) </br> ) </br> ) |
| Plaintiff, | ) </br> ) |
| v. | ) **BENCH MEMORANDUM ON** </br> ) **COMPARABILITY OF THIRD-** |
| FEDERAL INSURANCE COMPANY, an Indiana corporation and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation, | ) **PARTY LICENSE AGREEMENTS** </br> ) **AS A PREREQUISITE TO** </br> ) **ADMISSIBILITY** </br> ) </br> ) </br> ) |
| Defendants. | ) |

Plaintiff Fair Isaac Corporation ("FICO") brings this instant motion as a follow-up to Defendants Federal Insurance Company's and ACE American Insurance Company's ("Defendants") motion to exclude FICO's settlement agreements with third parties (Dkt. 1086). Defendants contend the settlement agreements are irrelevant, confusing, and unfairly prejudicial. (*Id.*) FICO does not disagree. Defendants' analysis and reasoning as it relates to the settlement agreements, however, applies at least equally, if not more fully, to FICO's licenses with other third parties. FICO respectfully requests the Court to refuse to admit Trial Exhibits Nos. D-0004,[1] D-0017,[2] D-0068, D-0077, D-0172, D-0274, D-0275, D-0276, D-0277, D-0278, D-0279, D-0280, D-0281, D-0282, D-0283, D-0284, D-0291, D-0293, D-0303, D-0304 ("Third-Party License Agreements").

---

[1] Trial Exhibit D-004 corresponds to Trial Exhibit P-749. P-749 is withdrawn.
[2] Trial Exhibit D-017 corresponds to Trial Exhibit P-089. P-089 is withdrawn.

1

In addition, FICO requests that the Annual 10-K filings of the third-party companies who are parties to the Third-Party License Agreements be excluded. This includes D-0309, D-0310, D-0311, D-0312, and D-0313 ("Third Party Filings"). Exclusion of the Third-Party Licenses renders the Third-Party Filings of no relevance.

**I.     Defendants' motion to exclude FICO's settlement agreements confirms that FICO's Third-Party Licenses are irrelevant.**

On February 16, 2023, Defendants filed a letter with the Court seeking to exclude the following FICO settlement agreements:

> P-424 (settlement agreement with Dell), P-425 (Oracle), P-437 (Xerox), P-439 (Software AG), P-812 (National Bureau of Credit Histories), P-810 (EDS), P-430 (US Bank NA/New Stone Ventures, LLC), P-767 (same), P-427 (Aetna Health Management/Aetna Life Insurance Co.), and P-803 (same).

(Dkt. 1086 at 1.) Within these exhibits that Defendants collectively refer to as "settlement agreements," there are three distinct types of settlement agreements in the set that Defendants have moved to exclude:

1. Agreements where the prior license agreement terminated (P-425 (Oracle), P-437 (Xerox));

2. Agreements where FICO and the third-party entered into a new agreement to continue a long-term relationship (P-424 (Dell), P-439 (Software AG), P-430/P-767 (US Bank NA/New Stone Ventures, LLC), (P-427/P-803 (Aetna Health Management/Aetna Life Insurance Co.), P-810 (EDS)); and

3. One agreement where FICO and the third-party entered into a transition agreement to remove Blaze Advisor (P-812 (National Bureau of Credit Histories)).

FICO does not dispute that agreements of the first category are inapposite to the hypothetical negotiation. FICO does not dispute that agreements to continue a long-term

2

relationship are inapposite to the hypothetical negotiation. The transition license with National Bureau of Credit Histories (P-812) is the most comparable to this case. FICO and National Bureau of Credit Histories agreed to a runoff period to permit National Bureau of Credit Histories to transition away from and remove Blaze Advisor. Defendants' motion to exclude includes this agreement.

The logical extension of Defendants contention that the transition license "has no bearing on any issue in this case" (*id.* at 1) is that initial purchase licenses similarly have no bearing on the hypothetical negotiation. By Defendants' own argument, the Third-Party License Agreements must be excluded.

**II.     Comparability of the Third-Party License Agreements is a prerequisite to admissibility; Defendants cannot make their prerequisite showing of comparability.**

### A.     *Legal Standard*

FICO's actual damages for Defendants' unauthorized use of Blaze Advisor is the fair market value of Blaze Advisor. *On Davis v. Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001); *Safka Holdings LLC v. iPlay, Inc.*, 42 F. Supp. 3d 488, 493 (S.D.N.Y. 2013); *Gusmao v. GMT Grp., Inc.*, No. 06-cv-5113, 2008 U.S. Dist. LEXIS 58462, at *36-38 (S.D.N.Y. Aug. 1, 2008). (*See also* Dkt. 731 at 18 ("An asset's fair market value is the proper measure of actual damages for both copyright infringement and breach of contract.").) When third party license agreements are relied on to determine the fair market value of a work, such agreements must be economically comparable to the circumstances of the hypothetical negotiation. *Gaylord v. United States*, 777 F.3d 1363, 1368 (Fed. Cir. 2015) ("[T]he use of past licenses as evidence must always take account

of economically relevant differences between the circumstances of those licenses and the circumstances of the matter in litigation."); *Raimondi v. Olenicoff*, No. 12-cv-2094, 2015 U.S. Dist. LEXIS 174961, at *6 (C.D. Cal. July 7, 2015).

Defendants, as the parties seeking to rely on the Third-Party License Agreements, bear the burden of demonstrating that the Third-Party License Agreements are economically comparable. *See M2M Sols. LLC v. Motorola Sols., Inc.*, No. 12-cv-33, 2016 U.S. Dist. LEXIS 22944, at *26-27 (D. Del. Feb. 25, 2016) ("Defendant must show that the prior licenses . . . are actually comparable to the license that the parties would have negotiated . . . before introducing this evidence to the jury."); *M2M Sols. LLC v. Enfora, Inc.*, 167 F. Supp. 3d 665, 678 (D. Del. 2016). "[L]oose and vague" assertions of comparability are insufficient. *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012). No testimony about Third-Party License Agreements is admissible until Defendants meet this burden. *See 360Heros, Inc. v. GoPro, Inc.*, No. 17-cv-1302, 2022 U.S. Dist. LEXIS 96453, at *29-30 (D. Del. May 31, 2022); *Audio MPEG, Inc. v. Dell, Inc.*, Civil Action No. 2:15cv73, 2017 U.S. Dist. LEXIS 166459, at *17 (E.D. Va. Oct. 6, 2017) ("Before admitting evidence of a third-party license, the Court must determine whether the license meets a minimum threshold of comparability, that is, whether the license is sufficiently related to the case at hand.") (quotations omitted.)

  **B.**  ***Defendants cannot show that the Third-Party License Agreements are comparable.***

Defendants cannot demonstrate that the Third-Party License Agreements are economically comparable. Comparability requires that Defendants tie the Third-Party

4

License Agreements to the relevant facts and circumstances of this case, specifically the hypothetical negotiation. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011). (*Cf.* February 3, 2023 Pre-Trial Conference Tr. 73:19-21 ("Who, for lack of a better way of putting it, in essence, have come to the end of the contract period and now they're negotiating a license going forward.").) As a gating issue, such facts do not exist. Transition licenses and initial purchase licenses are fundamentally different and not comparable. With transition licenses there is no expectation of an ongoing relationship between the parties. Not so with initial purchase licenses. With transition licenses there is no opportunity for FICO to license additional software and services to the client. Not so with initial purchase licenses. Transition licenses and initial purchase licenses are fundamentally different and not comparable.

Defendants have not established, and indeed cannot establish, that the Third-Party License Agreements are comparable to a hypothetical negotiation to transition away from Blaze Advisor after a license ends. Defendants provide no analysis on *how* the license agreements on which they intend to rely are comparable to the unique set of circumstances between FICO and Defendants. Indeed, they argue the opposite. (*See* Defendants' Opening Statement, 02/16/2023 Trial Trans. 44:19-20 ("Every license, every licensee, every circumstance has its own uniqueness to it.").)

Defendants do not have a witness that can testify to such facts. Defendants' expert, W. Christopher Bakewell ("Bakewell"), provides no comparability analysis to <u>any</u> of the Third-Party License Agreements (i.e. initial purchase agreements) Defendants now seek to admit. (*See* P-457 (Bakewell Report), P-817 (Bakewell Supplemental Report).) <u>None</u>.

No comparability analysis to the initial purchase agreements of the Third-Party License Agreements exists.

Because Defendants have not made the requisite showing of comparability, the Court should not admit into evidence the Third-Party License Agreements and should preclude Defendants from presenting any testimony related to the Third-Party License Agreements.

### III. Bakewell's analysis of settlement agreements provides no basis to admit the Third-Party License Agreements as "comparable" to the hypothetical negotiation.

Bakewell's analysis on FICO settlement agreements provides no basis to consider the comparability of the Third-Party Licenses to the hypothetical negotiation. Bakewell opined on three settlement agreements—Sun Microsystems Technology, Ltd./Oracle and Dell/EMC Corporation (see P-457, ¶¶ 50, 72-102)[3] and Symantec Corporation/Broadcom Inc./Accenture (see P-817, ¶¶ 5-8). But these settlement agreements are fundamentally different than the initial purchase agreements of the Third-Party License Agreements. Bakewell offers no analysis to bridge the gap.

Even if Bakewell's commentary on the settlement agreements is considered, it is insufficient to establish the comparability of the licenses to the hypothetical negotiation. Bakewell's analysis was limited to stating: "I provide an overview of evidence from two other software negotiations. These discussions provide context for negotiations between FICO and Federal and the value of the allegations in this case and are informative to

---

[3] Defendants moved to exclude the Dell settlement agreement (P-424) and Oracle settlement agreement (P-425). (Dkt. 1086.)

industry practices." (P-457, ¶ 72.) This is not enough. His conclusion is devoid of facts by which to allow the Court to make any comparison between the settlement agreements and the circumstances of the hypothetical negotiation in this case. And he makes no comparison between any initial purchase licenses and the hypothetical negotiation for a transition license in this case.

**IV.     The Third-Party License Agreements are not otherwise admissible.**

The Third-Party License Agreements and related testimony are not otherwise admissible because they are not relevant and are likely to confuse the jury. Because the Third-Party License Agreements are not comparable, they are not relevant to calculating FICO's actual damages because they do not have any tendency to make any fact of consequence more or less probable. Fed. R. Evid. 401; *LaserDynamics, Inc.*, 694 F.3d at 80 (finding licenses that were not comparable irrelevant). The Third-Party License Agreements have no comparison to—and thus no relevance to—how a willing licensor and a willing licensee would derive a price for a transition license to move away from Blaze Advisor.

Moreover, because the Third-Party License Agreements are not comparable, they are also likely to confuse the jury. Fed. R. Evid. 403; *Utah Med. Prods., Inc. v. Graphic Controls Corp.*, 350 F.3d 1376, 1385-86 (Fed. Cir. 2003) (affirming a district court's exclusion of opinions based on a license that was not comparable because they would mislead and confuse the jury). The fee for license agreements negotiated with customers in the context of ongoing relationships arise from fundamentally different circumstances than this case.

## V.  The Third-Party Filings are irrelevant.

The Third-Party filings provide corporate revenue information on the licensees to the Third-Party License Agreements. To the extent the Court excludes the Third-Party License Agreements due to Defendants' failure to show the requisite comparability, the Court should also exclude the Third-Party Filings as irrelevant. The only conceivable basis on which the Third-Party Filings are relevant is to show the corporate revenue information of the licensees to the Third-Party License Agreements. Absent the Third-Party License Agreements, the Third-Party Filings do not make any fact more or less probable and are thus irrelevant. Fed. R. Evid. 401. The Third-Party Filings should also be excluded.

## CONCLUSION

The Court should exclude the Third-Party License Agreements because Defendants have failed to make the requisite showing of comparability making the Third-Party License Agreements irrelevant and likely to confuse the jury. Defendants' motion to exclude (Dkt. 1086) and Opening Statement remarks regarding the uniqueness of each license confirm that there is no comparability and no relevance. Similarly, the Court should exclude the Third-Party Filings as irrelevant. The Third-Party License Agreements and Third-Party Filings should be excluded.

                                        MERCHANT & GOULD P.C.

DATE: February 21, 2023                 /s/ Heather Kliebenstein
                                        Allen Hinderaker, MN Bar # 45787
                                        Heather Kliebenstein, MN Bar # 337419
                                        Paige S. Stradley, MN Bar #393432


Michael A. Erbele, MN Bar # 393635
Joseph Dubis, MN Bar # 0398344
Gabrielle L. Kiefer, MN Bar # 0402364
MERCHANT & GOULD P.C.
150 South Fifth Street
Suite 2200
Minneapolis, MN 55402
Tel: (612) 332-5300
Fax: (612) 332-9081
ahinderaker@merchantgould.com
hkliebenstein@merchantgould.com
pstradley@merchantgould.com
merbele@merchantgould.com
jdubis@merchantgould.com
gkiefer@merchantgould.com