

150 South Fifth Street
Suite 2200
Minneapolis, MN 55402

Heather J. Kliebenstein
612.371.5381
hkliebenstein@merchantgould.com

February 22, 2023

Honorable David T. Schultz  **VIA ECF**
United States District Court
300 South Fourth Street
Minneapolis, MN 55415

Re:   *Fair Isaac Corp. v. Federal Insurance Co. et al.,* No. 16-cv-01054-DTS

Dear Judge Schultz:

    I write on behalf of Plaintiff Fair Isaac Corporation ("FICO") in response to Defendants Federal Insurance Company's ("Federal") and ACE American Insurance Company's ("ACE American") (collectively, "Defendants") February 20, 2023, letter regarding actual damages. Defendants' latest attempt to limit FICO's damages claim and supporting evidence merely rehashes the arguments raised in Defendants' motion in limine and at oral argument on the same. This Court rejected those arguments and provided clear guidance regarding FICO's presentation of evidence relevant to actual damages. FICO has and will follow the Court's guidance.

    FICO is entitled to present its evidence relevant to the hypothetical negotiation within the bounds provided by the Court.[1] Defendants can present their evidence. The jury should receive testimony and documents relating to **all** factors bearing on its determination of fair market value based on a hypothetical negotiation between a willing licensor and a willing licensee. Defendants' motion should, once again, be denied.

---

[1] In conformance with the Court's Order, neither FICO nor Mr. Waid will "use the phrase 'hypothetical negotiation'" when addressing the evidence and the factors relevant to the determination of actual damages. (*See, infra*.) The jury will be instructed by the Court on the law of a hypothetical negotiation and the factors that may be considered.

**I.    Defendants recycle arguments raised in their motion in limine and rejected by this Court.**

    **A.    The Court held that evidence of the economic circumstances of the negotiation, including extent of use and length of use, is relevant to the hypothetical negotiation.**

In their motion in limine related to FICO's presentation of evidence on its actual damages (Dkt. 968; Dkt. 969), Defendants argued that FICO was barred from introducing evidence of its application-based pricing model. The Court rejected this argument and ruled that FICO, including Mr. Waid, could present evidence of the application-based pricing so long as FICO and Mr. Waid do not "make any statement about what FICO's actual damages are," "use the phrase 'hypothetical negotiation,'" or "opine about what FICO would have charged in such a hypothetical negotiation." (Dkt.1065 at 5-6.)

The February 3, 2023, pretrial conference provided additional guidance as to the type and scope of permissible evidence. In particular, Defendants' counsel argued that the hypothetical negotiation should not take into "account the economic circumstances of this case and defendants' use in this case." (Ex. 1 (PreTrial Tr.) at 69:22-70:3.) This was rejected. The Court explained:

> What is relevant is you have a software provider, for lack of a better, more accurate description, and an insurance company, and the insurance company uses it for these processes and how often it's used and all that stuff, and this is how this software manufacturer engages in pricing. And if you assume then you have a hypothetical willing seller and a hypothetical willing buyer, the jury has to arrive at a figure. And the economic circumstances, as I'm using that phrase, would include the extent of use of the buyer and things like that.
>
> And so when you, when you talked about point two [economic circumstances] and point three [Defendants' use] that Mr. Hinderaker raised, my reaction is those are fair.

(*Id.* at 70:24-71:11; *see also id.* at 71:12-19.)

The Court also made clear that the circumstances of the negotiation take into account how long the licensee is going to use the software. (*Id.* at 73:2-11 (relevant factors include "how much are they [the licensee] going to use, for how long, what have they historically used" and "it does I think include, We know that they intend to use it only for the next three years or whatever. Those circumstances are all part of the negotiation"); *see also* Dkt. 731 at 55 (evidence of Defendants' use of Blaze Advisor relevant to hypothetical negotiation).)

2

In short, the Court held that the hypothetical negotiation looks at:

Given that the parties find themselves at this moment in time and they are negotiating a license with these characteristics, what would that negotiation result in. That's how I understand it.

* * * *

Who, for lack of a better way of putting it, in essence, have come to the end of the contract period and now they're negotiating a license going forward.

(Ex. 1 at 71:16-19, 73:19-21.)

FICO's Opening Statement was, and its presentation of evidence is and will be, consistent with the Court's Order (Dkt. 1065) and the Court's guidance provided at the pretrial conference.

### B. Defendants' motion to preclude evidence is inconsistent with the Court's Order and its guidance regarding the same.

Defendants' attempt to exclude consideration of the circumstances of a transition license is improper and seeks to preclude the jury from considering relevant evidence. A transition license—a license entered into where the parties "have come to the end of the contract period and now they're negotiating a license going forward" (Ex. 1 at 73:19-21)—recognizes that Defendants' use will be for a limited period of time. Contrary to Defendants' contention, considering the term of the license is not basing the damages on Defendants' infringement nor is it punitive in any fashion. Rather, it merely reflects the unsurprising reality that how long Blaze Advisor will be used—perpetual versus for a defined term—is relevant to the pricing of a license. Nothing more.

The portion of the hearing quoted by Defendants does not support Defendants' position. (Dkt. 1094 at 3 (citing pages 55-56 of pretrial conference transcript).) There, the Court explained that, while FICO cannot argue the amount that FICO would have charged or what FICO's actual damages are, FICO can provide the jury with underlying facts of how it prices. The jury is then free to use those facts as part of its analysis of a hypothetical negotiation to determine FICO's actual damages. In accordance with the Court's prior guidance, FICO has not and will not argue what the amount of its actual damages are or state what FICO would have charged. FICO will present evidence of facts that a willing licensor and willing licensee would have considered as part of the hypothetical negotiation through at least Mr. Waid. He will rely on his experience in countless negotiations and will testify that a willing licensor would have considered, as a starting place, FICO's standard pricing methodology and guidelines, as well as length of use (i.e., term v. perpetual), total lifetime value of the relationship, and the extent and

value of Defendants' use. FICO expects the evidence will also address countervailing considerations licensees pose in these negotiations and FICO's response considering the unique circumstances of each negotiation.

Mr. Waid may add up the total price for the applications used by Defendants based on FICO's application-based pricing methodology. He will not comment on FICO's actual damages, what FICO would have charged, or use the phrase "hypothetical negotiation." (Dkt. 1065 at 5-6.) Defendants are free to cross examine Mr. Waid and to present admissible evidence as to other factors that Mr. Waid is allegedly overlooking or that would be considered by a willing licensor and a willing licensee, e.g., testimony regarding the alleged unimportance of Blaze Advisor to Defendants. The jury then weighs the evidence presented and reaches its determination of FICO's actual damages based on the Court's instructions.[2] This approach is entirely consistent with the Court's Order (Dkt. 1065 at 5-6), the guidance provided at the pretrial conference (Ex. 1 at 70:24-71:19, 73:2-21), and Judge Wright's ruling. (Dkt. 731 at 30-32, 54-55; *see also*, *infra*, at Section II.)

There is no dispute that the construct for determining FICO's actual damages is the fair market value of Blaze Advisor based on a hypothetical negotiation between a willing licensor and a willing licensee, contemplating the use the infringer made. (*E.g.*, Dkt. 731 at 9, 16, 54-55); *Dash v. Mayweather*, 731 F.3d 303, 313 (4th Cir. 2013). The negotiation occurs when the parties "have come to the end of the contract period and now they're negotiating a license going forward." (Ex. 1 at 73:2-21.) Defendants wish to ignore this fact and argue the hypothetical negotiation takes place under circumstances completely untethered from the facts of this case. Worse, they wish to force FICO to adapt that same counterfactual negotiation construct. Defendants would have the jury, for example, consider the economic circumstances of a long-term relationship, the fee for a perpetual license when the use case is limited, and the prospect for significant future business. (*See* Dkt. 1094 at 2-3.)

Defendants' arguments directly conflict with the Court's guidance. Additionally, they seek to confuse the jury by introducing evidence that does not satisfy the foundational prerequisite of being comparable to the hypothetical negotiation in this case. FICO's discussion of a transition license is consistent with the Court's guidance that the parties "have come to the end of the contract period and now they're negotiating a license going forward" and is also consistent with the Court's guidance that how long

---

[2] As FICO said in its opening statement: "So how do we determine the dollar value to compensate FICO? That, ladies and gentlemen, is your job." (Ex. 2 (Opening Statement Tr.) at 44:7-9.)

the licensee will use the software is properly considered as part of the hypothetical negotiation.

## II. FICO's presentation of evidence is consistent with Judge Wright's summary judgment Order.

Defendants contend that FICO's intention to offer the above-described evidence is contrary to Judge Wright's summary judgment Order. This is wrong. As FICO previously explained in opposing Defendants' motion in limine on Mr. Zoltowski and actual damages, Mr. Zoltowski was excluded because he did not consider a hypothetical negotiation between a willing licensor and a willing licensee. He only considered FICO's standard pricing methodology, rather than considering additional factors relevant to both the willing licensor and the willing licensee. The Court found the failure to consider both perspectives rendered his opinions unreliable, but the Court also expressly held that evidence underlying Mr. Zoltowski's actual damages opinion are relevant and are properly considered by the jury: "[T]here remains relevant evidence *underlying* those [Mr. Zoltowski's] opinions that has *not* been excluded. This includes evidence of FICO's standard pricing methodology" and "evidence of Defendants' use of Blaze Advisor . . . ." (Dkt. 731 at 30-32, 54-55.)[3]

Accordingly, while Mr. Zoltowski can offer no opinions as to what FICO's actual damages are (except he can testify to facts supporting his original opinion if they were disclosed as part of his disgorgement opinion and are also relevant to actual damages) (Dkt. 1065 at 6), this limitation does not preclude FICO from presenting the jury with

---

[3] In the context of Defendants' expert Mr. McCarter, the Court also explained:
> FICO argues that McCarter cannot opine on matters outside the scope of his report, which does not expressly address actual damages. But Defendants contend only that McCarter's opinions are relevant to actual damages, not that he will directly opine about actual damages. Instead, McCarter will opine about market alternatives—a subject that is within the scope of his report. That such opinions also may be relevant to other legal issues does not render the opinions inadmissible. Nothing in the Federal Rules of Civil Procedure requires an expert report to precisely link the expert's opinions to specific legal issues. *See* Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii) (requiring an expert report to include "a complete statement of all opinions the witness will express and the basis and reasons for them" as well as "the facts or data considered by the witness in forming them").

(Dkt. No. 731 at 10 n.1.) Likewise, FICO will present testimony relevant to actual damages but will not state an amount of actual damages to which it is entitled.

facts relevant to the considerations a willing licensor and a willing licensee would raise during the hypothetical negotiation. Those facts will be provided through Mr. Waid in conformance with the Court's Order and guidance from the pretrial conference, as described above. (*Id.* at 5-6; *see also*, Ex. 1 at 69:22-74:9.) Nothing in Judge Wright's summary judgment Order suggests that length of time of use and extent of use are irrelevant; rather, the Court expressly held extent of use, as well as FICO's standard pricing methodology (which distinguishes between perpetual versus term licenses) was pertinent to the hypothetical negotiation. (Dkt. 731 at 55.)

## III.   Conclusion

FICO's presentation of evidence, as described above, conforms with the Court's Order and guidance and Judge Wright's summary judgment Order. Defendants' request to preclude such evidence should be denied.

Sincerely,

*Heather Kliebenstein*

Heather J. Kliebenstein