

150 South Fifth Street
Suite 2200
Minneapolis, MN 55402

Heather J. Kliebenstein
612.371.5381
hkliebenstein@merchantgould.com

February 23, 2023

Honorable David T. Schultz                                   **VIA ECF**
United States District Court
300 South Fourth Street
Minneapolis, MN 55415

Re:   *Fair Isaac Corp. v. Federal Insurance Co. et al.,* No. 16-cv-01054-DTS

Dear Judge Schultz:

      I write on behalf of Plaintiff Fair Isaac Corporation ("FICO") in response to Defendants Federal Insurance Company's ("Federal") and ACE American Insurance Company's ("ACE American") (collectively, "Defendants") letter dated February 22, 2023 ("Letter") regarding agreements between FICO and third parties ("Third-Party License Agreements")[1]. Defendants' arguments presented in the Letter contradict their entire premise to-date—that everything about the license agreement between FICO and Chubb & Son, a division of Federal (the "License Agreement"), is different. This was the very premise of their opening argument: "Every license, every licensee, every circumstance has its own uniqueness to it." (Defendants' Opening Statement, 02/16/2023 Trial Trans. 44:19-20.) It was also the premise of their motion to exclude introduction of agreements between FICO and third parties resolving disputes. (Dkt. 1086 ("These settlement agreements are irrelevant: that a different business, under

---

[1] The Third-Party License Agreements include Trial Exhibit Nos. D-0004,1 D-0017,2 D-0068, D-0077, D-0172, D-0274, D-0275, D-0276, D-0277, D-0278, D-0279, D-0280, D-0281, D-0282, D-0283, D-0284, D-0291, D-0293, D-0303, and D-0304. Additionally, Defendants should be barred from relying on any other FICO agreements that they failed to put on their exhibit list as they did in the cross examination of Jandeen Boone (530:11-531:11).

different circumstances, chose to avoid litigation by settling with FICO has no bearing on any issue in this case.").) Now, to keep in irrelevant evidence that may benefit them, Defendants have changed course arguing everything is the same. Defendants' arguments are unavailing.

In the Letter, Defendants assert that the Third-Party License Agreements are "relevant and admissible for at least two reasons. First, they provide extrinsic evidence of the meaning of Section 10.8 . . . Second, they are probative of Blaze Advisor's fair market value." (Dkt. 1103 at 1.) Both reasons are insufficient and conflict with Defendants' own statements.  The fact that different businesses, under different circumstances, in their negotiations with FICO reached terms that included or excluded certain language tells the jury nothing about the meaning of the contract agreed to by FICO and Chubb & Son. The Third-Party License Agreements and related Third-Party Filings[2] should be excluded. And Defendants should be barred from relying on any other FICO agreements that they failed to put on their exhibit list, including in the cross examination of FICO witnesses.

I.  **The Third-Party License agreements are not relevant to the interpretation of Section 10.8 of the License Agreement—an agreement between FICO and Chubb & Son.**

   A.  *Terms in the Third-Party License Agreements are not relevant to the interpretation of the negotiated terms of the License Agreement.*

The only agreements relevant in this litigation are agreements between FICO and Chubb and Son. New York law consistently holds that third-party agreements are irrelevant for contract interpretation, such that they do not even meet the threshold for discovery. *See Palumbo v. Shulman*, 97 Civ. 4314 (JGK)(KNF), 1998 U.S. Dist. LEXIS 11467, at *12 (S.D.N.Y. July 24, 1998) ("Accordingly, it cannot be said that disclosure of the defendants' non-party agreements will be at all relevant to interpreting the contractual language that the parties to this action elected to adopt for their contract."); *World Wrestling Fed. Entm't, Inc. v. William Morris Agency, Inc.*, 204 F.R.D. 263, 265 (S.D.N.Y. 2001) (affirming the magistrate's denial of a motion to compel where the magistrate reasoned that "Ordinarily, contractual agreements between one of the contracting parties and third parties is irrelevant" and the "treatment of one contracting party . . . does not really illuminate and is not really relevant to how another party . . . is treated."); *see also RLI Ins. Co. v. Westfield*, 2018 U.S. Dist. LEXIS 97296, at *13.

---

[2] The Third-Party Filings are Annual 10-K filings of the third-party companies who are parties to the Third-Party License Agreements and include Trial Exhibit Nos. D-0309, D-0310, D-0311, D-0312, and D-0313.

The Third-Party License Agreements are not relevant to the interpretation of Paragraph 10.8 of the License Agreement negotiated between FICO and Chubb & Son. *Palumbo v. Shulman*, 97 Civ. 4314 (JGK)(KNF), 1998 U.S. Dist. LEXIS 11467, at *12; *World Wrestling Fed. Entm't, Inc. v. William Morris Agency, Inc.*, 204 F.R.D. at 265; *see also RLI Ins. Co. v. Westfield*, 2018 U.S. Dist. LEXIS 97296 at *13. The Third-Party License Agreements are the result of differently situated third parties with different intent and different objectives. *See Palumbo*, 1998 U.S. Dist. LEXIS 11467, at *14 (denying discovery on a party's agreements with third parties and explaining that "[p]ersons, even those who are similarly situated, may have vastly different investment objectives and may pursue starkly contrasted investment strategies"). Defendants said so themselves. (Defendants' Opening Statement, 02/16/2023 Trial Trans. 44:19-20. ("Every license, every licensee, every circumstance has its own uniqueness to it.").) Moreover, the negotiated terms with third parties have no bearing on the negotiated terms between FICO and Chubb & Son. *Pandora Media, Inc. v. Am. Soc'y of Composers, Authors Authors, & Publrs.*, 2013 U.S. Dist. LEXIS 133133 at *29-30.

Furthermore, the cases cited by Defendants do not support their assertion that the Third-Party License Agreements are relevant to the interpretation of Paragraph 10.8. (Dkt. 1103 at 1-2.) In *Quadrant Structured Products Company v. Vertin*, the court was addressing an omitted provision and looked to other agreements to determine if that was a provision that was "readily found in other similar contracts." The court was not using other contracts to construe a term—precisely because in the absence of the omitted term, there was nothing to be construed." 23 N.Y.3d 549, 560 (N.Y. 2014). In *Securiforce Int'l Am., LLC v. United States*, the court ultimately held that contracts between Defendant DLA Energy and nonparties were not relevant to the contract specifications contained in the contract between Plaintiff Securiforce and Defendant DLA Energy. 127 Fed. Cl. 386, 397-98 (2016) ("neither the conduct of other contractors, nor the terms of other contracts between different contactors and defendant are relevant when considering this plaintiff's breach of contract claim")[3]. In *Starter Corp. v.*

---

[3] The Court of Federal Claims did state in passing that "[w]here there is ambiguity in the language of a contract evidence of conduct under other, similar contracts may be admissible to prove breach." 127 Fed. Cl. at 397. However, the case cited for that proposition, *Miller Elevator Co., Inc. v. United States*, and other cases cited and relied upon by the Court of Federal Claims actually hold that the court may consider evidence

3

*Converse, Inc.*, the court permitted evidence of other agreements *between the parties* to the litigation, not between one party and a third party. 170 F.3d 286, 295 (2d Cir. 1999). Finally, in *Wade Park Land Holdings, LLC v. Kalikow*, the court did not consider *any* other license agreements. 589 F. Supp. 3d 335, 393-94 (S.D.N.Y. 2022). Each of these cases is distinguishable, and not a single case stands for the proposition that the Third-Party License Agreements involving different factual circumstances and negotiations, are relevant to the interpretation of a contract provision between FICO and Chubb & Son. The Third-Party License Agreements should be excluded.

### B. *The Third-Party License Agreements are not proper parol evidence.*

To the extent Defendants argue that the Third-Party License Agreements are admissible as parol evidence, the argument is without merit. Parol evidence is limited to evidence of the parties' conduct. *See Nuance Communs., Inc. v. IBM*, 544 F. Supp. 3d 353, 369-70 (S.D.N.Y. 2021) ("Extrinsic evidence includes (1) the acts and circumstances surrounding execution of the ambiguous term, (2) conversations, negotiations and agreements made prior to or contemporaneous with the execution of a written agreement, and (3) the parties' course of conduct throughout the life of the contract.") (quotations omitted); *see also RLI Ins. Co. v. Westfield*, No. 1:17-cv-491, 2018 U.S. Dist. LEXIS 97296, at *13 (S.D. Ohio June 11, 2018) ("The indemnification provisions set forth in Property Management Agreement – an agreement between Cassidy Turley Ohio and *non-party* Cincy Office Properties—is not only irrelevant to the insurance contract interpretation question before the Court, but also amounts to impermissible parol evidence.") (emphasis in original). Extrinsic evidence of trade usage only may be considered if a party "shows either that the other party was actually aware of the trade usage, or that the usage was so notorious in the industry that a person of ordinary prudence in the exercise of reasonable care would be aware of it." *Last Time Beverage Corp. v. F &V Distribution Co.*, LLC, 2012 NY Slip Op 6127, ¶ 3, 98 A.D.3d 947, 951-52, 951 N.Y.S.2d 77, 81-82 (App. Div. 2nd Dept.).

Here, if the Court permits parol evidence, the Third-Party License Agreements do not constitute proper parol evidence that may be considered. The Third-Party License Agreements are not related to the "conversations, negotiations and agreements" or

---

of prior conduct or contracts between the parties involved in the contract dispute in certain circumstances. 127 Fed. Cl. at 397. Here, the Third-Party License Agreements Defendants seek to introduce are not prior contracts between FICO and Defendants and do not reflect FICO and Defendants' prior course of dealings. Furthermore, the Third-Party License Agreements are unique and not similar (different businesses, different intent, different objectives, and different overall contracts).

"acts and circumstances" of the parties, but rather are evidence of FICO's relationship with third parties. Furthermore, Defendants have not established that the Third-Party License Agreements constitute "trade usage." Therefore, even if the Court considers parol evidence, the Third-Party License Agreements are not the type of extrinsic evidence that Courts consider. The Third-Party License Agreements should be excluded.

II. **The Third-Party License Agreements are irrelevant in determining the fair market value of Blaze Advisor because the License Agreements are not comparable.**

As detailed in FICO's Bench Memorandum on Comparability of Third-Party License Agreements as Prerequisite to Admissibility (Dkt. 1098), the Third-Party License Agreements are not comparable. This is demonstrated by Defendants' letter to the court seeking to exclude as irrelevant a transition license agreement between FICO and National Bureau of Credit Histories—the only agreement that conceivably *could have been* comparable to the hypothetical negotiation between FICO and Defendants. (Dkt. 1086 at 1; *see also* Dkt. 1098 at 2-3.) Yet by Defendants' own accord, that transition license is irrelevant. (Dkt. 1086 at 1.)

Furthermore, comparability is a prerequisite to admissibility. Defendants have failed to show how Third-Party License Agreements, which were specifically negotiated between FICO and a third party for use of Blaze Advisor in the first instance, are comparable to a hypothetical license agreement between FICO and Defendants when the parties "have come to the end of the contract period and now they're negotiating a license going forward." (Dkt. 1098 at 3-7; *see also* Dkt. 1101-1 (Pretrial Conf. Tr.) at 73:19-21.) *See M2M Sols. LLC v. Motorola Sols., Inc.*, No. 12-cv-33, 2016 U.S. Dist. LEXIS 22944, at *26-27 (D. Del. Feb. 25, 2016) ("Defendant must show that the prior licenses . . . are actually comparable to the license that the parties would have negotiated . . . before introducing this evidence to the jury."). Defendants have failed, and indeed are incapable of, tying the Third-Party License Agreements to the facts and circumstances of this case. (*Id.* at 4-5.) *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011). The Third-Party License Agreements are not comparable and should be excluded.

III. **The prejudice to FICO resulting from the Third-Party License Agreements substantially outweighs any probative value.**

As described above and in Dkt. 1089, the Third-Party License Agreements are not relevant to interpreting Section 10.8 of the License Agreement or determining the fair market value of Blaze Advisor. Fed. R. Evid. 401; *LaserDynamics, Inc.*, 694 F.3d at 80

(finding licenses that were not comparable irrelevant). This alone warrants exclusion. Fed. R. Evid. 402.

Rule 403 further warrants exclusion. Here, the probative value, if any, of the Third-Party License Agreements is low, and the prejudice is high. The Third-Party License Agreements are likely to confuse the jury and to create an unnecessary and time-consuming side-show. *Utah Med. Prods., Inc. v. Graphic Controls Corp.*, 350 F.3d 1376, 1385-86 (Fed. Cir. 2003) (affirming a district court's exclusion of opinions based on a license that was not comparable because they would mislead and confuse the jury). The Third-Party License Agreements are likely to confuse the jury in at least two ways. First, the jury is likely to confuse the negotiated terms of the Third-Party License Agreements with the terms of the agreement at issue in *this* case, including Section 10.8 of the License Agreement. Second, the Third-Party License Agreements are likely to confuse the jury regarding the circumstances and facts of *this* case by comparing the License Agreement to the Third-Party License Agreements which resulted from FICO's negotiations with third parties under different sets of circumstances. The jury will have no context or guidance to interpret complex, fully negotiated terms from agreements with third parties much less be able to use those terms to somehow interpret the meaning of the License Agreement. This likely confusion and prejudice is exacerbated because the underlying motives and intent of the third parties is unknown. Defendants will not be calling any witnesses from the third parties, will not be presenting documents evidencing the negotiations that led to provisions, and will not be presenting communications between FICO and these third parties evidencing the meaning of various assignment provisions. Rather, Defendants wish to put forth their attorney argument as to the meaning of provisions in third-party contracts, but they have **_no_** foundation to do so.

Second, the Third-Party License Agreements are also prejudicial because they are likely to create a side-show, wasting the Court's, the jury's, and the parties' time and causing undue delay. Fed. R. Evid. 403; *See e.g.*, *Kelley v. BMO Harris Bank N.A.*, No. 19-cv-1756 (WMW), 2022 U.S. Dist. LEXIS 184524, at *7 (D. Minn. Oct. 9, 2022) ("Moreover, any minimal probative value of this evidence is substantially outweighed by the danger that such evidence will unfairly prejudice the [plaintiff], confuse the issues, mislead the jury and waste time."). This case is already complex enough. Introducing contracts that are not at issue in the litigation will only make things more complex. To rebut Defendants' attorney argument, FICO will be forced to address various other provisions within these Third-Party License Agreements to disprove Defendants' ipse dixit. For example, Defendants selectively focused on Section 10.8 of the Healthways contract when cross examining Ms. Boone (D-280-008.) But Section 10.7 of the Healthways contract also relates to assignments and makes clear that the Healthways contract is

significantly different from the License Agreement between FICO and Chubb & Son. In particular, Section 10.7 expressly **allows** for assignments after a merger or acquisition, unlike the disputed provision in the License Agreement which contains no such express allowance. As appropriate with witnesses, FICO will have to walk through Section 10.7 of the Healthways contract to dispel Defendants' erroneous arguments. The same is true for the other Third-Party License Agreements. Independent provisions or sentences from the Third-Party License Agreements cannot be looked at in a vacuum. Allowing introduction of the Third-Party License Agreements makes little sense given the confusion and side-show likely to be created and when the language of the License Agreement between FICO and Chubb & Son governs, not language in other contracts.

Under Rule 403's balancing, the Third-Party License Agreements should be excluded. Moreover, the Third-Party Filings should also be excluded as irrelevant. (*See* Dkt. 1098 at 8.)

## IV. Conclusion

The Third-Party License Agreements are not relevant to any purpose, including Defendants' asserted relevance of interpretation of Section 10.8 of the License Agreement and the fair market value of Blaze Advisor. Furthermore, any probative value of the Third-Party License Agreements is substantially outweighed by the prejudice to FICO. The Third-Party License Agreements and related Third-Party Filings should be excluded. And Defendants should be barred from relying on any other FICO agreements that they failed to put on their exhibit list, including in the cross examination of FICO witnesses.

Sincerely,

Heather J. Kliebenstein