

O'Melveny & Myers LLP  
1999 Avenue of the Stars  
8th Floor  
Los Angeles, CA 90067-6035

T: +1 310 553 6700  
F: +1 310 246 6779  
omm.com

February 26, 2023

Leah Godesky  
D: +1 310 246 8501  
lgodesky@omm.com

**BY ECF**

Honorable David T. Schultz  
United States District Court  
300 South Fourth Street  
Minneapolis, MN 55415

Re:   *Fair Isaac Corp. v. Federal Insurance Co. et al.*, 16-cv-1054

Dear Judge Schultz:

I write on behalf of Defendants Federal Insurance Company and ACE American Insurance Company. Defendants agree with the Court that in light of Thomas Carretta's testimony, a curative instruction must be given. Defendants respectfully request that the Court specifically instruct the jury that it is to disregard Carretta's interpretation of the License Agreement, and that it do so on Monday, rather than after the close of evidence.

Defendants anticipated this issue before trial. That is why Defendants moved *in limine* to bar Carretta from testifying to his interpretation of the License Agreement or otherwise offering testimony regarding topics on which he had repeatedly claimed privilege at his deposition. Dkt. 982. Indeed, the Court agreed, and granted Defendants' motion, making "clear" that "Carretta may not testify about the meaning of any of the contract provisions." Dkt. 1065 at 8.

Nevertheless, FICO repeatedly elicited, and Carretta repeatedly offered, his interpretation of the contract's terms. *See* Trial Tr. 863 ("[B]ecause of [the acquisition] having happened, the prior clause 10.8 became operative."); *id.* at 923 ("It's a clause that says you [cannot] assign, right, is the first sentence, and I'm paraphrasing. And you need to acquire consent before you make one of the assignments or a transfer as defined or undefined."); *id.* at 941 ("Even the slightest infraction is a breach. That it effectively defines materiality. Lawyers sometimes call it strict liability."); *id.* at 951 ("[T]his is a whole new deal, and that looks like expanded use to me."). As the Court observed after Carretta was excused, FICO's questions regarding whether Federal's February 2016 business proposal amounted to expanded use under the License Agreement "went into interpretation of the contract." *Id.* at 955; *see also id.* at 954 ("That question and answer were concerning to me as well."). For that matter, Jandeen Boone likewise strayed well beyond testimony about the "business purpose" of the License Agreement's provision into improper interpretation. *See, e.g.*, *id.* at 484 ("[I]n the event the client undergoes one of these entity or structure related events, the client, in this case Chubb & Son, cannot expand its use of the products outside of the license grant unless Fair Isaac provides written consent for it to do so."); *id.* at 487 ("[T]he parties agree that . . . neither of them is waiving their right to bring an action



against the other party . . . even if [the breach] has gone on for some time."). Indeed, the Court noted similar concerns regarding Boone's testimony as Carretta's. *Id.* at 513-14 ("I'll tell you I think this witness was . . . skirting the line on a couple of answers[.]").

A curative instruction is plainly appropriate to inform the jury that this testimony was improper and should be disregarded. The Court should deliver the instruction on Monday, not after the close of evidence, to (1) ensure that Boone's and Carretta's testimony is still fresh in the jury's mind, and (2) avoid the implication that any of Defendants' witnesses have offered improper testimony. *See Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 727 (7th Cir. 1999) ("[T]he district court can certainly correct any error by issuing a limiting or curative instruction while the testimony is still fresh in the mind of the jurors."). They have not, and Defendants do not intend to call in-house Chubb and ACE attorneys to offer after-the-fact, self-serving interpretations of the License Agreement.

FICO's argument that Defendants opened the door to Carretta's improper testimony is incorrect. Defendants worked diligently to keep this door shut by moving *in limine*. Dkt. 982. And, as the record reflects, FICO repeatedly crossed the line in eliciting Carretta's testimony regarding the contract in direct examination; *i.e.*, *before* the exchange cited in FICO's letter took place. Trial Tr. 853 (objection sustained); *id.* at 854-55 (same); *id.* at 855 (same); *id.* at 863 (same); *id.* at 879 (same); *see also id.* at 482 (Court agreeing at sidebar that FICO's questioning of Boone, as phrased, elicited improper interpretation); *id.* at 513-14 (Court observing that Boone's testimony "skirt[ed] the line").

In any event, in the first exchange FICO cites in its letter, Defendants' counsel was asking Carretta to read "the words on the page." Trial Tr. 925. The follow-up question was, again, asking what "this agreement says[.]" *Id.* The question did not elicit an interpretation of the License Agreement, only a recitation of the plain language as a foundation for further questioning. The second exchange between counsel and Carretta likewise did not put Carretta's interpretation of the contract at issue. It is different to ask, in the context of proving Defendants' bad-faith claim, how Carretta would have characterized Chubb's business proposal—which is what counsel did with no objection from FICO's counsel, *id.* at 932—and eliciting testimony about Carretta's understanding of whether use was expanding under the License Agreement—which is what counsel for FICO did, *id.* at 951, and to what Defendants objected and tried to keep from happening in the first place with *their* motion *in limine*.

Defendants respectfully request that the Court issue a curative instruction regarding Carretta's (and Boone's) testimony on Monday.

Respectfully submitted,

/s/ Leah Godesky

Leah Godesky

cc:   Counsel of Record