

150 South Fifth Street
Suite 2200
Minneapolis, MN 55402

Heather J. Kliebenstein
612.371.5381
hkliebenstein@merchantgould.com

February 28, 2023

Honorable David T. Schultz                                            **VIA ECF**
United States District Court
300 South Fourth Street
Minneapolis, MN 55415

Re:     *Fair Isaac Corp. v. Federal Insurance Co. et al.,* No. 16-cv-01054-DTS

Dear Judge Schultz:

      I write on behalf of Plaintiff Fair Isaac Corporation ("FICO") in response to Defendants Federal Insurance Company's ("Federal") and ACE American Insurance Company's ("ACE American") (collectively, "Defendants") letter dated February 26, 2023 (Dkt. 1113, hereinafter the "Letter") regarding agreements between FICO and third parties ("Third-Party License Agreements")[1]. Defendants' Letter attempts to reargue an issue that has already been fully briefed and on which the Court has already deliberated and reached a decision. The Court only offered to revisit the issue if Defendants were to find cases supporting their initial proposition—that the Third-Party License Agreements were proper parol evidence—but Defendants Letter fails to cite a single case supporting this proposition. (*See* Vol. 5 Trial Tr. ("Vol. 5"), 841:11 ("So you're welcome, if you find cases in which extrinsic evidence of this nature, by all means, call them to the Court's attention.")). Instead, finding no cases and recognizing their losing hand from the first time around,[2] Defendants' Letter now tries an alternative approach, arguing this time

---

[1] The Third-Party License Agreements include Trial Exhibit Nos. D-0004,1 D-0017,2 D-0068, D-0077, D-0172, D-0274, D-0275, D-0276, D-0277, D-0278, D-0279, D-0280, D-0281, D-0282, D-0283, D-0284, D-0291, D-0293, D-0303, and D-0304.
[2] The Court expressly found the cases cited by Defendants distinguishable: "I've reviewed the cases by Federal. They fall into two categories, I would say. Most of them

that the maxim *expression unius est exclusion alterrius* renders the Third-Party License Agreements admissible for the purpose of interpretting Section 10.8. This argument also fails and changes nothing. The argument also gives short shrift to the confusion, waste of time, and prejudice to FICO that the Court found outweighed any probative value under Rule 403. FICO asks that the Court maintain its decision on the admissibility of the Third-Party License Agreements.

I.      **The Court made clear that there was only a "thin exception" to the Court's exclusion of the Third-Party License Agreements.**

On February 24, 2023, after reviewing the parties' letters to the Court (*see* Dkt. 1103; Dkt. 1106), the Court addressed Defendants' assertion that the Third-Party License Agreements are admissible to prove the meaning of Section 10.8. The Court expressly held that the Third-Party License Agreements could not be introduced as evidence of the meaning of any term of the License Agreement. (Vol. 5, 824:16-19 ("So let me turn to the last issue about whether those license agreements may also be introduced as evidence of the meaning of the FICO Federal licenses, and I find that they cannot be.").) The Court made a "thin distinction," stating that the Third-Party License Agreements could be introduced solely to "challenge the notion that [Section 10.8] is standard language." (*Id.* at 829:12-20; *see also id.* at 833:11-17 ("You're talking about cross-examination, and if the witness . . . said this is standard language, the business reason behind this says this, it is fair cross-examination to say, you know, other language might express this business purpose in a different way or a clearer way, and in fact such language has been used in FICO contracts. That's fair.".) The Court later reaffirmed its position on this issue, explaining that "I think I've got it right." (*Id.* at 841:1.) FICO agrees, and none of Defendants' cases and rehashed arguments warrant finding otherwise.

---

involve evidence that or contracts between the two parties involved in the ligation. The other case, which is the Quadrant case, really involves a different circumstance . . . So I find that Federal's cases are inapposite, and FICO's cases generally established the point that I think it is accurate so I find that Federal's cases are inapposite, and FICO's cases generally establish the point that I think is accurate that parol evidence is, if not exclusively, then virtually exclusively, evidence of course of dealings between the two parties at issue in the litigation, which is not the case with the license agreements between FICO and third parties, and I would exclude those licenses or limit their admission to not prove the meaning of this contract." (*Id.* at 824:20-825:17; *see also id.* at 841:22-841:10.)

## II. The maxim Defendants cite is inapposite.

The Court found that the *Quadrant* case "involves a different circumstance" because there "the Court was applying interpretations of other Courts as a matter of law." (*Id.* at 824:24 – 825:9.) Despite this, Defendants still base the premise of their Letter on the *Quadrant* case, using it as a segway into a wholly inapplicable argument. (Dkt. 1113 at 1.) As an initial matter, *Quadrant* remains inapposite for all the reasons this Court and FICO already explained.

Furthermore, the issue is not *whether* certain language was or was not included in Section 10.8, or whether FICO intended to intentionally omit or include language. Rather, the issue is *what the parties intended* by the language they negotiated to be included in Section 10.8—an issue on which the Third-Party License Agreements have no bearing. *See Palumbo v. Shulman*, 97 Civ. 4314 (JGK)(KNF), 1998 WL 436367, at *12 (S.D.N.Y. July 27, 1998) ("Accordingly, it cannot be said that disclosure of the defendants' non-party agreements will be at all relevant to interpreting the contractual language that the parties to this action elected to adopt for their contract."); *World Wrestling Fed. Entm't, Inc. v. William Morris Agency, Inc.*, 204 F.R.D. 263, 265 (S.D.N.Y. 2001); *RLI Ins. Co. v. Westfield*, No. 1:17-CV-491, 2018 WL 2844101, at *5 (S.D. Ohio June 11, 2018). (*See also* Dkt. 1106 at 2-5.) Defendants' cases are off point and provide no further guidance on what can be properly considered in interpreting Section 10.8. Accordingly, the cases cited by Defendants do not, and should not, change the Court's analysis.

Other than *Quadrant*, Defendants' Letter cites six cases, all of which are distinguishable. First, like *Quadrant*, the courts in *Intelligent Digital Systems, LLC v. Beazley Insurance Company, Inc.* and *MeehanCombs Global Credit Opportunity Fund, LP v. Caesars Entertainment Corporation*, looked to other courts' interpretations of a provision or statutory term, not other agreements. 207 F. Supp. 3d 242 (S.D.N.Y. 2016); 80 F. Supp. 3d 507 (S.D.N.Y. 2016). As this Court acknowledged, cases considering other courts' interpretation of contract language are not analogous to considering the Third-Party License Agreements in this case. (Vol. 5, 824:24-825:9 ("[T]he Quadrant case, really involves a different circumstance where the Court was construing the meaning of a provision in a contract that had very discrete language and looked to how two other decisions by a court had interpreted very similar language that just omitted one word, and so this was not a circumstance where the jury was considering how do I interpret an ambiguous contract based on a whole variety of agreements, but rather the Court was applying interpretations of other courts as a matter of law to a very discrete set of or very discrete bit of language in a contract before it.").)

The remaining four cases relied on by Defendants are similar and merely support the proposition that a party's decision to omit or include common-place provisions or terms may be relevant—not that provisions in agreements negotiated with third parties shed light on the meaning of the terms of an agreement between two parties. For example, *El Education, Inc. v. Public Consulting Group, Inc.*, is distinguishable from the case at hand for similar reasons to those this Court described in connection with the *Quadrant* case. In *El Education*, the court essentially noted that the exclusion of language that is commonplace in agreements or in a particular industry can be assumed to be intentionally omitted. No. 15-CV-9060 (DAB), 2016 WL 5816994, at *4-5 (S.D.N.Y. Sept. 23, 2016); *see also Colfin Bulls Funding A, LLC v. DH Mortage Holder, LLC*, No. 15 C 11065, 2016 WL 1660543 (N.D. Ill. Apr. 26, 2016). In the context of FICO and Chubb & Son's License Agreement, this would be applicable if, for example, the parties to the License Agreement had not included an integration clause. In such circumstances, the exclusion of a commonplace provision such as an integration clause might indicate an intentional exclusion. But that maxim has no application here because FICO and Chubb & Son did include a No Assignment Provision—the dispute is over the meaning of that particular provision, not its existence. The *El Education* and *Colfin* courts did not look to agreements with other third parties to interpret the meaning of a provision found in a contract. *Pan American World Airways, Inc. v. Aetna Casualty & Surety Company* also falls in a similar bucket to *Quadrant* and *El Education*. 505 F.2d 989 (2d Cir. 1974). There, the court found relevant that other insurers in the same industry had used certain common terminology to describe a particular type of coverage. *Id.* at 999-1000. The exclusion of that common terminology indicated an intent not to address that particular type of coverage. Here, industry terminology is not at issue.

In *Mohr-Lercara v. Oxford Health Insurance, Inc.*, is also inapplicable. The *Mohr* court was comparing two separate provisions *within the same agreement* (a Drug Rider); the court merely found that inclusion of language in one provision offering a particular payment option, which was not found in a second provision, evidenced an intent not to offer that payment option in the second provision. No. 18 CV 1427 (VB), 2022 WL 524059, at *7 (S.D.N.Y. Feb. 22, 2022). There was no comparison to other third-party agreements.

These cases—addressing inclusions or omissions of commonplace provisions or industry terms—have no application to this case. As the Court recognized, the only evidence relevant to determining the meaning of Section 10.8 is conduct between the parties. (Vol. 5, at 825:10-17 ("[P]arol evidence is, if not exclusively, then virtually exclusively, evidence of course of dealings *between the two parties* at issue in the

litigation") (emphasis added).) The cases cited by Defendants do nothing to change this. The Court's decision with respect to the Third-Party License Agreements should stand.

### III.     As the Court explained, the Third-Party License Agreements are properly excluded under Rule 403.

The Third-Party License Agreements are confusing; likely to waste the Parties', Court's, and jury's time; and prejudicial to FICO. (Vol. 5, 825:18-21 ("And I would also say that that is based not only on what I have just said, but also on Rule 403 and the danger that this might confuse the jury or waste time or unfairly prejudice FICO."); *see also* Dkt. 1106 at 5-7.) Defendants' new arguments do not change the confusing and prejudicial nature of the Third-Party License Agreements nor do they change the side-show that is likely to be created by allowing in the Third-Party License Agreements for the purpose of interpreting the meaning of Paragraph 10.8. (Dkt. 1106 at 5-7.) The Court's decision excluding the Third-Party License Agreements for purposes of determining the parties' intended meaning of Section 10.8 should stand as it strikes an appropriate balance between allowing some limited questioning relating to FICO's standard language while minimizing the risk of confusion that FICO previously articulated (Dkt. 1106) and that this Court agreed was a real risk (Vol. 5, 825:18-21.)

### IV.     Conclusion

Defendants' new arguments do not change the Court's original analysis. The Court's decision with respect to the admissibility of the Third-Party License Agreements should stand. Defendants' cross examination of any of FICO's remaining witnesses should be limited to the "thin exception" outlined by the Court and should not be directed to the interpretation or meaning of Section 10.8.

Sincerely,

Heather J. Kliebenstein