# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Fair Isaac Corp., | Case No. 16-cv-1054 (DTS) |
| Plaintiff, | |
| v. | **ORDER** |
| Federal Insurance Company et al., | |
| Defendant. | |

## INTRODUCTION

Defendants Federal Insurance Company and ACE American Insurance Company (collectively, Defendants) objected to admission into evidence of settlement agreements[1] Plaintiff Fair Isaac Corporation (FICO) reached with third parties. Dkt. No. 1086. For its part, FICO objected to admission into evidence of perpetual license agreements it entered with third parties.[2] Dkt. No. 1098. For the reasons explained below, FICO's settlement agreements are inadmissible. The third-party perpetual license agreements are admissible for limited purposes, consistent with this Order.

## CONCLUSIONS OF LAW

### I. Settlement Agreements

FICO's settlement agreements with third parties are inadmissible under Federal Rule of Evidence 408. Where the agreement is offered to prove the value of a claim, it is inadmissible, since the settlement may have been motivated by a desire for peace, rather

---

[1] Plaintiff's Exhibits 424, 425, 427, 430, 437, 439, 767, 803, 810, and 812.
[2] Defendants' Exhibits 4, 17, 68, 77, 172, 274, 275, 276, 277, 278, 279, 280, 281, 282, 283, 284, 291, 283, 303, 304.

1

than any acknowledgement of liability. In addition to being irrelevant to this case, they are also unfairly prejudicial, because they may improperly suggest to the jury the value of a claim. Courts routinely exclude these types of agreements, and the Court finds them inadmissible here. *See LaserDynamics, Inc.*, 694 F.3d 51 (Fed. Cir. 2012); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011). Defendant's objection is sustained and Plaintiff's Exhibits 424, 425, 430, 437, 439, 803, 810, and 812 will not be admitted into evidence.

The Court reserves ruling on the admissibility of P-427, and P-767, as those do not indicate on their face that they are settlements. If FICO can lay proper foundation that they were the result of an arm's length negotiation that occurred without threat of litigation or a claim of breach or infringement, they are admissible.

## II.     Third Party License Agreements

FICO objects to the admission of license agreements it entered into with third parties. Defendants argue these agreements are probative of Blaze's fair market value. *See* Dkt. No. 1103. Further, Defendants argue these agreements are admissible to prove the meaning of Section 10.8 of the parties' license agreement. *Id.*

### A.     The Agreements are Admissible to Prove Fair Market Value

Generally, in determining the fair market value of a reasonable license fee, the jury may hear "expert testimony, prior sales history, and evidence of sales of comparable assets," which includes reasonably similar license agreements. *Safka Holdings, LLC, v. iPlay, Inc.*, 42 F. Supp. 3d 488, 493 (S.D.N.Y. 2013); *see also Gaylord v. United States*, 777 F.3d 1363, 1368 (Fed. Cir. 2015); *On Davis v. The Gap, Inc.*, 246 F.3d 152 (2d Cir. 2001); *M2M Sols. LLC v. Motorola Sols., Inc.*, No. 12-cv-33, 2016 U.S. Dist. LEXIS 22944

(D. Del. Feb. 25, 2016); *Audio MPEG, Inc. v. Dell, Inc.*, Civil Action No. 2:15cv73, 2017 U.S. Dist. LEXIS 166459, (E.D. Va. Oct. 6, 2017). FICO objects to the inclusion of perpetual license agreements it entered with third parties, claiming they are not economically comparable to the hypothetical license at issue here. While the agreements must be sufficiently comparable to be admitted, that bar is not especially high. Cases in the somewhat analogous patent infringement context demonstrate that where a license involves the same or similar technology and where the economics of the agreement are *generally* comparable, the threshold is met. That is the case here, where the third-party license agreements are with FICO for use of Blaze Advisor. The third-party license agreements are admissible to determine actual damages and FICO's objection is overruled in part.

### B. The Agreements are Inadmissible to Prove the Meaning of Section 10.8

FICO argues those same agreements should not be admitted as evidence of what the ambiguous language in Section 10.8 of the license means. Defendants argue that because the language is ambiguous, extrinsic evidence is allowed, including evidence of FICO's agreements with third parties.

In general, parol evidence is limited to evidence of the course of dealing between the two parties involved in the litigation. *See, e.g., Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 295 (2d Cir. 1999); *Securiforce Int'l Am., LLC v. United States*, 127 Fed.Cl. 286, 397 (Fed.Cl. 2016). It would not include extrinsic evidence of one party's conduct that did not involve the opposing party. Furthermore, evidence of one party's conduct used to explain both parties' intent may confuse the jury, waste time, and/or unfairly prejudice

FICO. Thus, the agreements are inadmissible to prove the meaning of Section 10.8 or to prove the parties' intent as to its meaning.

Defendants contend the canon of contract and statutory interpretation *expressio unius est exclusio alterius* applies here. That canon provides that the expression of one thing is the exclusion of the other; where a contract includes some language, the correct understanding is that any omissions from that language are intentional. *See Quadrant Structured Prods. Co. Ltd. V.* Vertin, 23 N.Y. 3d 549, 550 (Ct. App. N.Y. 2014). Thus, Defendants claim they should be able to present evidence of the language found in other license agreements, but not found in the license agreement at issue in this case. Those other agreements' language is illuminating of the parties' intent here because of their absence, they contend. But the *expressio unius* canon generally, if not exclusively, applies to interpret lists found in statutes or contracts. *N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 302 (2017) (defining the canon as "expressing one item of an associated group or series excludes another left unmentioned"); *Jones v. Pepsi-Cola Co.*, 233 F.Supp. 650, 657 (D. Neb. 1963) ("The expression in a contract of one or more things of a class implies the exclusion of all not expressed, even though all would have been implied had none been expressed.")

The cases Defendants rely on demonstrate this principle. For example, in *Pan. Am. World Airways, Inc v. Aetna Cas. and Sur. Co.*, 505 F.2d 989 (2d Cir. 1974), a dispute arose about whether a certain type of loss was covered by a war risk insurance policy based on a list of excluded events. This is not what Defendants intend to use the third-party license agreements for. The language at issue is not a list, nor does it include a class or associated group or series. Furthermore, the provisions in other license

4

agreements also do not include lists. Because this agreement and the third-party agreements do not include lists, the canon simply does not apply.

That said, the agreements are a fair subject of impeachment and Defendants may introduce the agreements to contest FICO's averment that the language in this case's license agreement was FICO's standard language. Defendants may cross examine witnesses with the agreements and may argue in closing what the license agreement *could have* said but does not say. FICO's objection is, thus, sustained in part and overruled in part.

For the reasons set forth above, **IT IS HEREBY ORDRED:**

1. Plaintiff's Exhibits 424, 425, 430, 437, 439, 803, 810, and 812 are inadmissible and Defendants' objection is **SUSTAINED IN PART.** If FICO can lay proper foundation for Plaintiff's Exhibits 427 and 767, they will be deemed admissible.

2. Defendants' Exhibits 4, 17, 68, 77, 172, 274, 275, 276, 277, 278, 279, 280, 281, 282, 283, 284, 291, 283, 303, 304 are admissible to prove the fair market value of a Blaze License and Plaintiff's objection is **OVERRULED IN PART**. Those same exhibits are not admissible to prove the meaning of Section 10.8 of the license agreement and the Plaintiff's objection is **SUSTAINED IN PART.**

Dated: March 1, 2023  _____
DAVID T. SCHULTZ
U.S. Magistrate Judge