## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

FAIR ISAAC CORPORATION,

          Plaintiff,

   v.

FEDERAL INSURANCE COMPANY,
an Indiana corporation, and ACE
AMERICAN INSURANCE COMPANY,
a Pennsylvania corporation,

          Defendants.

Court File No.  16-cv-1054 (DTS)

**DEFENDANTS' MEMORANDUM
IN SUPPORT OF THEIR MOTION
FOR JUDGMENT AS A MATTER
OF LAW**

(REDACTED)

---

Pursuant to Federal Rule of Civil Procedure 50(a), Defendants Federal Insurance Company and ACE American Insurance Company submit this memorandum of law in support of their motion for judgment as a matter of law on Plaintiff Fair Isaac Corporation's ("FICO") claim that use of Blaze Advisor by Federal's foreign Affiliates and third-party consultants was a breach of the License Agreement.

## INTRODUCTION

FICO advances a breach-of-contract theory that, according to the Court, is "absurd[]" and "make[s] little sense":  according to FICO, although the License Agreement permits the "Client and its Affiliates" to use Blaze Advisor, the use of Blaze Advisor by Federal's foreign Affiliates is a breach of the License Agreement because Federal's unincorporated Chubb & Son division—not Federal itself—is the Client.  Dkt. 731 at 43 & n.14.  This claim ignores the well-established legal rule that an unincorporated division has no legal identity apart from its corporate parent and so may not sue, be sued, or contract

on its own behalf.  It would also, as FICO now acknowledges, render meaningless the key provision of the December 2006 amendment to the License Agreement—which extended Federal's Blaze Advisor license to the "Client and its Affiliates"—because it is undisputed that the Chubb & Son division does not have (and, as an unincorporated division, could not have) Affiliates.  The very caption of this lawsuit makes clear the "absurdity" of FICO's position.  *Id.* at n.14.  It is not accusing the Chubb & Son division of breaching the License Agreement.  Rather, "FICO is suing Federal for breaching the License Agreement, but argues that Federal is *not* a party to the License Agreement."  *Id.*  As the Court previously noted, "FICO cannot have it both ways."  *Id.*

Indeed, it appears that the only reason the Court did not grant summary judgment on this issue is that it believed Defendants did not request it.  *Id.* at 44 n.15.  But Defendants are nevertheless entitled to judgment as a matter of law on this issue, and a Rule 50 motion provides the Court with an appropriate vehicle to confirm that point.  The Court should find as a matter of law that Federal is the "Client" under the License Agreement and, therefore, grant Defendants judgment as a matter of law that "under the License Agreement, Federal and its affiliates were permitted" to use Blaze Advisor.  Dkt. 840 at 11.

FICO also claims that incidental usage of Blaze Advisor by third-party consultants retained by Chubb justified its purported termination of the License Agreement.  But under New York law and the law of the case, only a material breach permits the termination of a contract.  FICO has offered no evidence that could permit a reasonable jury to find that the isolated, incidental use of Blaze Advisor by third-party consultants was a material breach

2

of the perpetual, global, enterprise-wide License Agreement for which Federal paid FICO

██████████

## BACKGROUND

**1.** In 2006, FICO and Federal—acting through its unincorporated division, Chubb & Son: A Division of Federal[1]—entered into a License Agreement for the use of Blaze Advisor, which was amended twice. J-001-001. In the second amendment, executed in December 2006, Federal paid FICO an additional ██████ to acquire the right to enterprise-wide use of Blaze Advisor by the "Client and its Affiliates[.]" J-001-020. Federal's Affiliates—defined under the second amendment as direct or indirect subsidiaries, *id.*—in Canada, Europe, and Australia subsequently used Blaze Advisor. FICO contends that this breached the License Agreement because the "Client" in the second amendment was the Chubb & Son division and not Federal. Therefore, according to FICO, the foreign subsidiaries' use of Blaze Advisor violated Section 3.1 of the License Agreement, because those Federal's foreign subsidiaries are Affiliates of Federal but not of the Chubb & Son division (which has no "Affiliates"). The parties do not dispute that Chubb & Son is an unincorporated division of Federal, Dkt. 731 at 42-43, or that it has no Affiliates, Dkt. 1003 at 12; *see also* Trial Tr. 900 (testimony of Thomas Carretta) (Q: "Chubb & Son doesn't have affiliates because it's not a legal entity, right?" A: "That is correct.").

---

[1] Although FICO's attorneys and witnesses are fond of referring to the division as "Chubb & Son," the full name of the division, "Chubb & Son: A Division of Federal" drives home the absurdity of FICO's argument. The very name of the division makes clear that "Chubb & Son" is a part of Federal, the "Client" under the License Agreement.

3

FICO moved for summary judgment on its claim that the use of Blaze Advisor by Federal's foreign Affiliates was a breach of Section 3.1 of the License Agreement. The Court roundly denied that motion. It held that the Chubb & Son division "is not a legal entity and does not have the capacity to be sued" and found "it would make little sense if a non-legal entity could enter into a contract yet never be sued on that contract should a dispute arise." Dkt. 731 at 42-43. The Court observed that "[t]he absurdity of such a result is not hypothetical"—"FICO is suing Federal for breaching the License Agreement, yet argues that Federal is *not* a party to the License Agreement. FICO cannot have it both ways." *Id.* at 43 n.14.

The Court also found that if the Chubb & Son division were the Client, the expansion of the License Agreement to the "Client and its Affiliates" would "be rendered unreasonable or ineffectual" because the evidence indicated that the Chubb & Son has no Affiliates. *Id.* at 43-44. Such a reading would violate the New York contract-law rule that "an interpretation that gives a reasonable and effective meaning to all the terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect." *Id.* (quoting *Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir. 1985)). It would also defy common sense. To take FICO's argument at face value, in December 2006, the Chubb & Son division knowingly paid FICO nearly ▮▮▮▮ to expand its existing Blaze License Agreement to affiliates it did not have—in other words, to no one at all.

In its initial summary-judgment order, the Court did not "address whether Federal would be entitled to summary judgment in its favor as to this issue," because the Court

believed that Defendants had not sought such relief. *Id.* at 44 n.15. Thus, even though the Court's decision strongly suggested that Defendants were entitled to judgment as a matter of law on this issue, the Court allowed the question to go to trial, and stated that, "[a]t best, FICO has established that the scope of the phrase 'Client and its Affiliates' in the December 2006 amendment is ambiguous and depends on disputed material facts, which forecloses summary judgment in FICO's favor." *Id.* at 44. But the Court's supplemental summary-judgment opinion confirmed that "under the License Agreement, *Federal and its affiliates* were permitted to use the Fair Isaac Product for their internal business purposes, with no limitation on the number of Seats or CPUs." Dkt. 840 at 11-12 (emphasis added; internal quotation marks omitted).

**2.**   FICO also claims that certain third-party consultants retained by Chubb for internal business purposes—AppCentrica and DWS—improperly used Blaze Advisor, and that this incidental use was a breach of Section 3.1 of the License Agreement that justified its purported termination. FICO moved for summary judgment on this claim, which the Court denied. Dkt. 731 at 44-45. The Court noted "evidence that DWS did *not* use or access Blaze Advisor, and that AppCentrica's use of Blaze Advisor was not a material breach because it was de minimis, isolated, and performed with FICO's knowledge." *Id.* at 44. Consequently, the Court, relying on well-established New York law, held that FICO was not entitled to summary judgment because it had not shown that "the alleged use of Blaze Advisor by DWS and AppCentrica was a material breach of the License Agreement[.]" *Id.* at 45.

## LEGAL STANDARD

"If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may resolve the issue against the party[.]"  Fed. R. Civ. P. 50(a)(1)(A).[2]  "Like the summary judgment inquiry, the district court must determine whether the evidence presents 'sufficient disagreement to require submission to a jury,' or is 'so one-sided that one party must prevail as a matter of law.'" *Adeli v. Silverstar Automotive, Inc.*, 960 F.3d 452, 458 (8th Cir. 2020) (quoting *White v. Union Pac. R.R. Co.*, 867 F.3d 997, 1000 (8th Cir. 2017)).  Rule 50(a) "requires the trial judge to direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Bd. of Regents of Univ. of Minn. v. Chief Indus.. Inc.*, 907 F. Supp. 1298, 1299-1300 (D. Minn. 1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986)).

## ARGUMENT

**I.    The undisputed facts show that Federal is the Client as a matter of law.**

**A.    Federal is the Client under New York law.**

**1.    Federal is the Client because its unincorporated Chubb & Son division cannot enter into a contract on its own behalf.**

It is both blackletter New York law and the law of the case that Chubb & Son, as an unincorporated division of Federal, could not enter into a contract on its own behalf.

---

[2] "[A] party has been fully heard when [it] rests [its] case." *Echeverria v. Chevron USA Inc.*, 391 F.3d 607, 610 (5th Cir. 2004); *accord McSherry v. City of Long Beach*, 423 F.3d 1015, 1021 (9th Cir. 2005); *Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1149 (D.C. Cir. 2004); *Jackson v. Quanex Corp.*, 191 F.3d 647, 657 (6th Cir. 1999); *Jaasma v. Shell Oil Co.*, 412 F.3d 501, 506 (3d Cir. 2005).

Therefore, because "Chubb & Son, a division of Federal Insurance Company" entered into the License Agreement, J-001-001, the undisputed facts show that the party-in-interest— and hence the License Agreement's "Client"—is Federal.

"It is undisputed that Chubb & Son is not a legal entity because it is unincorporated." Dkt. 731 at 42-43.  Under New York law, an unincorporated division or association is "not an entity with capacity to be sued[.]"  *Id.* at 43 (quoting *La Russo v. St. George's Univ. Sch. of Med.*, 747 F.3d 90, 95 (2d Cir. 2014)).   That is also the law in many other jurisdictions.  *See Affymax, Inc. v. Johnson & Johnson*, 420 F. Supp. 2d 876, 879 (N.D. Ill. 2006) ("[A]n unincorporated division . . . has no separate legal existence apart from its parent corporation."); *United States v. ITT Blackburn Co., a Division of ITT*, 824 F.2d 628, 631 (8th Cir. 1987) ("[A]n unincorporated division cannot be sued or indicted, as it is not a legal entity."); *Spearing v. Nat'l Iron Co.*, 770 F.2d 87, 89 (7th Cir. 1985) ("[A]n unincorporated division . . . is not suable in its own right."); *Western Beef, Inc. v. Compton Inv. Co.*, 611 F.2d 587, 591 (5th Cir. 1980) ("A division of a corporation is not a separate legal entity but is the corporation itself."); *In re Sugar Indus. Antitrust Litig.*, 579 F.2d 13, 18-19 (3d Cir. 1978) ("A division of a corporation is not a separate legal entity but is the corporation itself. . . .  [T]he subsidiary should be treated as the alter ego of the parent."); *Greenbaum v. SveNska Handelsbanken*, 26 F. Supp. 2d 649, 654 (S.D.N.Y. 1998) ("[A]n unincorporated division of a corporation cannot be sued or indicted[.]" (citing *United States v. BCCI Holdings (Luxembourg), S.A.*, 833 F. Supp. 32, 38-39 (D.D.C. 1993))).

Because the Chubb & Son division "is not a legal entity[,]" Dkt. 731 at 42, but rather, "the alter ego of the parent[,]" *In re Sugar Indus. Antitrust Litig.*, 579 F.2d at 19,

CASE 0:16-cv-01054-DTS   Doc. 1130   Filed 03/02/23   Page 8 of 19

the License Agreement's designation of "Chubb & Son, a division of Federal Insurance Company" as the Client, J-001-001, is the legal equivalent of designating the Client as "Federal Insurance Company." Indeed, the division's name alone—"Chubb & Son, *a division of Federal Insurance Company*[,]" J-001-001 (emphasis added)—makes clear the absurdity of FICO's claim that it did not contract with Federal. Federal is the Client.

Moreover, in denying FICO's motion for summary judgment on this issue, the Court held that "[i]t would make little sense if a non-legal entity could enter a contract yet never be sued on that contract should a dispute arise." Dkt. 731 at 43. In such a case, a plaintiff could seek, as FICO does here, to "have it both ways" by suing a division's parent for allegedly breaching a contract while maintaining that the parent was not a party to the contract. Dkt. 731 at n.14. Such a result is self-evidently "absurd[]"—and "it is demonstrated by this case." *Id.* The Court was clear that FICO, having "agreed that the correct defendants were Federal and ACE American because Chubb & Son is not a legal entity and does not have the capacity to be sued[,]" cannot now argue both that Federal breached the License Agreement *and* that Federal was not party to it. *Id.*[3]

In its trial brief, FICO attempts to resist this overwhelming legal authority—and the law of the case—by identifying two cases: *Maranatha Associates. v. Titan Group.*, 202 A.D.2d 846 (3d Dep't 1994), and *Royal Industries Ltd. v. Kraft Foods, Inc.*, 926 F. Supp.

---

[3] FICO protests that it is "not trying to 'have it both ways[,]'" Dkt. 1003 at 15—but it has actually doubled down. Not only is it suing Federal for breaching a contract that it argues Federal was not party to, but it contends that Federal, as a non-party, lacks Article III standing to counterclaim. *Id.* at 16. FICO does not explain what novel doctrine imposes contractual obligations on Federal while simultaneously denying it contractual rights.

407 (S.D.N.Y. 1996).  *See* Dkt. 1003 at 13-14.  But each of these cases supports Federal, not FICO.

*Maranatha* holds merely that "an unincorporated division of a corporation can sue on behalf of the jural entity of the corporation of which it is a part[.]"  *Id.* at 847.  Exactly right.  When an unincorporated division acts, it does so "on behalf of the jural entity of the corporation[,]" *id.*, just as the Chubb & Son division signed the License Agreement *on behalf of*—*i.e.*, in the name of—the jural entity, Federal.  *See Behalf*, Black's Law Dictionary (11th ed. 2019) ("[*O*]*n behalf of* means 'in the name of, on the part of, as the agent or representative of.'").  Moreover, *Maranatha* reinforces two further points:  (i) that an unincorporated division is *not* a jural entity, "having no legal existence independent of" its parent, and (ii) that it "may not properly be joined as a defendant in an action against the parent corporation[.]"  *Id.*

*Royal Industries* likewise undermines FICO's position.  The portion of that opinion on which FICO relies is irrelevant—the court, in conducting a choice-of-law analysis, found that "if a breach occurred, it occurred in New York" because "if a contract with Kraft was formed, it was formed with a New York division of that entity[.]"  926 F. Supp. at 416.  But the court's conclusion in *Royal Industries* has nothing to do with the question presented here—namely, who is the party-in-interest when an unincorporated division signs a contract.  The part of the opinion that is relevant, though, is the court's repeated characterization of the contract at issue:  the agreement, according to the court, was between "Royal, a Marshall Islands corporation headquartered in New Jersey" and "Kraft, *a Delaware corporation* headquartered in Illinois[.]"  *Id.* (emphasis added); *id.* ("[I]f a

contract *with Kraft* was formed, it was formed with a New York division *of that entity*[.]" (emphasis added)).  Thus, *Royal Industries* stands for the unexceptional proposition that a party may contract with a corporation through that corporation's unincorporated division. That is exactly what happened here:  FICO contracted *with Federal* by countersigning with Federal's Chubb & Son division.

> **2.      If Chubb & Son were the Client, the December 2006 amendment to the License Agreement would make no sense.**

That conclusion is compelled as a matter of law for a second, independent reason: if Chubb & Son were the Client, the expansion of the License Agreement to the "Client and its Affiliates" would have been "unreasonable or ineffectual[.]"  Dkt. 731 at 44.  A substantial portion of the short second amendment was devoted to adding the term "and its Affiliates" to the agreement and then defining "Affiliates."  J-001-019-020.  But it is undisputed that Chubb & Son has no Affiliates.  Dkt. 1003 at 12.  And indeed, Chubb could never have Affiliates, because Affiliates are defined in the License Agreement as entities directly or indirectly controlled by the Client, and an unincorporated division cannot have (let alone control) subsidiaries.  Trial Tr. 900 (testimony of Thomas Carretta) (Q:  "Chubb & Son doesn't have affiliates because it's not a legal entity, right?"  A:  "That is correct.").

FICO's reading of the contract would thus contradict the foundational New York contract-law principle that "an interpretation that gives a reasonable and effective meaning to all the terms of the contract is generally preferred to one that leaves a part unreasonable or of no effect."  *Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir. 1985); *accord Greenwich Cap. Fin. Prods, Inc. v. Negrin*, 74 A.D.3d 413, 415 (1st Dep't

10

2010) ("[A] contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties."). Here, the only way to "give reasonable and effective meaning[,]" *Rothenberg*, 755 F.2d at 1019, to the phrase "Client and its Affiliates" in the December 2006 amendment is to hold that Federal is the Client.  Federal has numerous Affiliates, whereas Chubb & Son never had, does not have, and could never have Affiliates.  If applied to Chubb & Son, the term "and its Affiliates" (and the definition of Affiliates) would have no meaning.  *See Diamond Castle Partners IV PRC, L.P. v. IAC/InterActivecorp*, 82 A.D.3d 421, 421-22 (1st Dep't 2021) (refusing to adopt contract interpretation that would render meaningless a provision granting rights to "Affiliates").  Indeed, FICO admits that its theory depends on the absurd view that the Chubb & Son had no reason to expand its rights under the License Agreement to the Client and its Affiliates and gained nothing by doing so.  *See* Trial Tr. 901 (Carretta: Q:  And your view is that Chubb paid all this extra money for this new reference to affiliates because one day down the road the Chubb & Son division of Federal might, one, turn itself into a legal entity; and, two, acquire affiliates that might need to use Blaze. A:  "I don't agree with that. I don't know why Chubb would want that language."); Trial Tr. 1682 (Waid:  "From your point of view, was the commercial purpose of the license agreement as signed, with the license agreement as signed, if there is, if there are no affiliates of the client, does that change anything in your view regarding the license agreement?  A:  No. Q:  Why not?  A:  Still with the client.").  In light of New York law's command against construing ambiguous language absurdly, the Court should not credit that view.

11

FICO argues that the Court may not apply these longstanding canons of construction because they apply only in the case of ambiguity, and the "Client" in the agreement is (according to FICO) unambiguously the Chubb & Son division. Dkt. 1003 at 14. This ignores the Court's ruling at summary judgment that the phrase "Client and its Affiliates" was "[*a*]*t best*" (for FICO) ambiguous. Dkt. 731 at 44 (emphasis added). The obvious implication is that either "Client and its Affiliates" is ambiguous—in which case, it should be construed (i) to avoid rendering portions of the agreement meaningless, and (ii) in a commercially reasonable way, which would require judgment against FICO. Or "Client and its Affiliates" unambiguously refers to Federal and its Affiliates, in which case FICO also loses.

**B.     The License Agreement permits the Client's—Federal's—Affiliates to use Blaze Advisor.**

The License Agreement permits the "Client and its Affiliates" to use Blaze Advisor. J-001-020. It is undisputed that Chubb Canada, Chubb Europe, and Chubb Australia are Federal's Affiliates, as that term is defined in the License Agreement. Dkt. 1003 at 12. Because Federal was the Client under the License Agreement, the use of Blaze Advisor by Chubb Canada, Chubb Europe, and Chubb Australia was not a breach of the License Agreement.

**C.     No fact question precludes judgment as a matter of law on this issue.**

No jury question precludes a finding that Federal is the Client under the License Agreement.[4]  Contrary to FICO's view that this issue "present[s] a question for the jury[,]" Dkt. 1003 at 13, the Court, based only on its view that Defendants had not moved for summary judgment on this issue, did not decide whether Defendants were entitled to judgment as a matter of law, Dkt. 731 at 44 n.15 ("[T]he Court declines to address whether Federal would be entitled to summary judgment in its favor as to this issue.").  All it decided was that *FICO* was *not* entitled to summary judgment because, "[a]t best, FICO has established that the scope of the phrase 'Client and its Affiliates' in the December 2006 amendment and depends on disputed material facts, which forecloses summary judgment in FICO's favor."  Dkt. 731 at 44.  Moreover, the dispute of fact that the Court suggested could exist have now been resolved.  The Court noted two potential disputes, both of which would have to go in FICO's favor to demonstrate even a potential ambiguity—whether Chubb & Son had employees, and whether it had Affiliates.  Dkt. 731 at 44.  But it is now entirely undisputed that Chubb & Son has no affiliates.  Dkt. 1003 at 12 (FICO trial brief); Trial Tr. 900 (testimony of Thomas Carretta).  As explained above, that concession provides one of several independent bases to reject FICO's Affiliates claim.

---

[4] To be clear, undisputed evidence admitted during FICO's case confirmed over and over that FICO understood it was not contracting with the Chubb & Son division.  For instance, an April 2006 price quote for the License Agreement shows that FICO understood its counterparty to be the entire "Chubb Insurance Group of Companies[.]"  P-0330-003.  Likewise, Wachs declared on November 26, 2008 "it's apparent to me that the corporate ELA that was negotiated with Phil Folz and June Drewey intended to include the Global License."  P-0116-001.  This undisputed evidence demonstrates that FICO in fact understood what the law makes clear—it was doing business with Federal and Chubb writ large, not the unincorporated Chubb & Son division.

13

The question whether the use of Blaze Advisor by Federal's Affiliates violated the License Agreement is now squarely presented. The Court should take the step that it signaled it would have taken at summary judgment, and grant Defendants judgment as a matter of law on this issue.

## II.  FICO has not adduced evidence sufficient for a jury to find that any use of Blaze Advisor by third-party consultants was a material breach of the License Agreement.

FICO has failed to introduce sufficient evidence for a jury to find that FICO satisfied its burden to show that any use of Blaze Advisor by third-party consultants was a material breach of Section 3.1 of the License Agreement that would justify termination of the entire agreement. FICO moved for summary judgment on the consultants claim, which the Court denied. The Court held that to justify its termination, FICO was required to prove that the purported breach of the License Agreement was material—that it went "to the root of the agreement between the parties and is so substantial that it defeats the object of the parties in making the contract." Dkt. 731 at 44-45 (quoting *VFS Fin., Inc. v. Falcon Fifty LLC*, 17 F. Supp. 3d 372, 379-80 (S.D.N.Y. 2014) (alteration omitted)). And it further held that "[h]ere, whether the alleged use of Blaze Advisor by DWS and AppCentrica was a material breach of the License Agreement involves dispute of material fact that preclude summary judgment." *Id.*[5]

---

[5] In its summary-judgment briefing, FICO argued that it was entitled to terminate the License Agreement based on a non-material breach of Section 3.1. Dkt. 387 at 23; Dkt. 558 at 5 ("Any violation of the license grant is material."). The Court squarely rejected that argument, holding that termination was allowed only for a material breach under New York's materiality standard, and that "whether the alleged use of Blaze Advisor by DWS and AppCentrica was a material breach of the License Agreement involves disputes of material fact that preclude summary

FICO has not adduced evidence from which a reasonable jury could conclude that any use of Blaze Advisor by third-party consultants was a material breach of the License Agreement.  "Whether a failure to perform constitutes a 'material breach' turns on several factors, such as the absolute and relative magnitude of default, its effect on the contract's purpose, willfulness, and the degree to which the injured party has benefitted under the contract." *Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 136 (2d Cir. 2016).  That is because, "[a]s an extraordinary remedy, rescission is appropriate only when a breach may be said to go to the root of the agreement between the parties." *Septembertide Pub., B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 678 (2d Cir. 1989).  "Recission is not permitted for a slight, casual, or technical breach, but, as a general rule, only for such as are material or willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract." *Process Am.*, 839 F.3d at 136 (alteration omitted) (quoting *Callanan v. Powers*, 199 N.Y. 268, 284 (1910)).  Here, FICO has introduced no evidence from which a jury could conclude that any use of Blaze Advisor by third-party consultants—which, even as alleged, was *de minimis*, incidental, and brief—went "to the root of the agreement[,]" *Septembertide*, 884 F.2d at 678, or was a "substantial and fundamental" breach, *Callanan*, 199 N.Y. at 284.

---

judgment."  Dkt. 731 at 45.  Yet FICO not only reiterated its rejected argument in its trial brief, Dkt. 1003 at 10, but solicited testimony from Carretta to the same effect, Trial Tr. 941.  The Court should grant Federal judgment as a matter of law under the standard established as the law of the case.  But at the very least, the Court should admonish the jury that Caretta's testimony was incorrect as a matter of law.

15

FICO's only evidence regarding the consultants came from:

- A series of communications regarding a DWS employee who encountered technical problems using a publicly available "trial license" that "can be had from the FICO web site[,]" P-1114-008; *see also* P-1113 (exchange between this employee and FICO support); P-1116 (public post on a FICO message board by this employee);

- An internal FICO maintenance-support log containing an entry describing "an issue faced" by that very same consultant, Trial Tr. 596 (quoting P-1112);

- And an interrogatory in which Defendants stated that Blaze Advisor was disclosed to and used by "Chubb Insurance Company of Canada, including through its relationship with AppCentrica" with "FICO's knowledge and participation[,]" "and Chubb Insurance Company of Australia Limited, including through its relationship with the DWS Group[.]" P-147A-002-005. Any use or disclosure occurred on "internal Chubb organization shared space"— *i.e.*, a virtual desktop within Chubb's control. *Id.*

- Thomas Carretta, who likewise learned about the issue from "the maintenance logs." *Id.* at 887. On cross-examination, however, Carretta admitted that, even as he accused Federal of materially breaching the License Agreement in his termination letter, *id.* at 911-12, he (i) did nothing "to investigate the magnitude" of the consultants issue, (ii) had "no evidence that AppCentrica or DWS accessed Blaze for any purpose other than to assist Chubb in its computer application work[,]" and (iii) was not "aware of any evidence that anyone at

16

AppCentrica or DWS shared Blaze with any third party outside Chubb[,]" *id.* at
912-13;

This is, at most, evidence only of a technical breach.  Certainly, it is not evidence
of materiality.  No reasonable jury could conclude that this evidence establishes a breach
of such "absolute and relative magnitude" as to undermine the "purpose" of the License
Agreement, a perpetual, enterprise-wide, global license that cost more than a million
dollars and had been in effect for a decade when FICO first asserted breach—in other
words, a contract under which FICO "has benefitted" for many years.  *Process Am.*, 839
F.3d at 136.  At most, it establishes a "slight, casual, or technical breach," which, under
New York law, *Callanan*, 199 N.Y. at 284, and the law of this case, Dkt. 731 at 44-45,
cannot justify rescission.

To be sure, materiality "should only be decided as a matter of law where the
inferences are certain."  Dkt. 731 at 45 (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289,
298 (2d Cir. 2015).  But New York courts routinely decide materiality as a matter of law
when there is no dispute of fact on the question.  *See, e.g.*, *Frank Felix Assocs., Ltd. v.
Austin Drugs, Inc.*, 111 F.3d 284, 288 (2d Cir. 1997) (deciding materiality as a matter of
law); *Jafari v. Wally Findlay Galleries*, 741 F. Supp. 64, 67 (S.D.N.Y. 1990) (same);
*Alberts v. CSTV Networks, Inc.*, 945 N.Y.S.2d 555 (1st Dep't 2012); *WILJEFF, LLC v.
United Realty Mgmt. Corp.*, 920 N.Y.S.2d 495 (4th Dep't 2011) (same); *Robert Cohn
Assocs., Inc. v. Kosich*, 881 N.Y.S.2d 235 (3d Dep't 2009) (same).  Here, FICO's
materiality case suffers from a complete lack of proof.  At best, FICO has proved isolated

and incidental use of Blaze Advisor by a third-party consultant. But it has not given the jury enough to conclude that any such use was a material breach of the License Agreement.

## CONCLUSION

The Court should grant Defendants judgment as a matter of law on FICO's claim that the use of Blaze Advisor by Federal's foreign Affiliates and third-party consultants violated the License Agreement.

Dated:  March 2, 2023

*/s/ Terrence J. Fleming*
Terrence J. Fleming (#0128983)
tfleming@fredlaw.com
Leah C. Janus (#0337365)
ljanus@fredlaw.com
Christopher D. Pham (#0390165)
cpham@fredlaw.com
Ryan C. Young (#0397751)
ryoung@fredlaw.com
Panhia Vang (#399444)
pvang@fredlaw.com

**Fredrikson & Byron, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
(612) 492-7000 (tel.)
(612) 492-7077 (fax)

Leah Godesky (Admitted Pro Hac Vice)
lgodesky@omm.com
Anton Metlitsky (Admitted Pro Hac Vice)
ametlitsky@omm.com
Daryn Rush (Admitted Pro Hac Vice)
drush@omm.com
Roxana Guidero (Admitted Pro Hac Vice)
rguidero@omm.com

**O'Melveny & Myers LLP**
Times Square Tower
7 Times Square
New York, NY 10036
(212) 326-2000

***Attorneys for Federal Insurance Company
and ACE American Insurance Company***