

Fredrikson & Byron, P.A.
Attorneys and Advisors

200 South Sixth Street, Suite 4000
Minneapolis, MN 55402-1425
Main: 612.492.7000
fredlaw.com

March 2, 2023

**VIA ECF**

MAGISTRATE JUDGE DAVID T. SCHULTZ
UNITED STATES DISTRICT COURT
9E U.S. COURTHOUSE
300 SOUTH FOURTH STREET
Minneapolis, MN 55415

Re:   Fair Isaac Corp. v. Federal Insurance Co., et al.
       No. 16-cv-01054-DTS

Dear Judge Schultz:

I write on behalf of Defendants Federal Insurance Company and ACE American Insurance Company. Chris Bakewell's testimony regarding the deduction of expenses and overhead from Neil Zoltowski's gross written premium calculation for the years 2019 and 2020 is appropriate.

Bakewell's testimony will remain entirely within the bounds of the methodology, analysis, and conclusions expressed in his reports. He will apply the approach exhaustively outlined in his reports and deposition to the revenue figure FICO has offered. To the extent FICO feels that he has not adequately responded to Zoltowski's $21 billion revenue calculation, it is free to cross examine him on that point.

FICO retained Zoltowski to, among other things, analyze Defendants' gross written premium generated by insurance policies processed through applications incorporating Blaze Advisor. See Zoltowski Rep. ¶ 122-25. In response, Defendants engaged Bakewell. Bakewell, in his initial report, reduced the gross premium to net premium and deducted losses and expenses form the total revenue figures Mr. Zoltowski identified in his initial reports which were taken from Defendants' answers to interrogatories. Bakewell Rep. ¶ 185-205. In his report, Bakewell deducted losses and expenses through a commonly accepted methodology in the insurance industry for determining profits—he calculated a "combined ratio." *See id.* at ¶ 197 ("The loss ratio is a standard industry measure of losses as a percentage of earned premiums."). To do so, Bakewell used Defendants' financial data capturing Defendants' profit margin for the lines of business that used Blaze Advisor. *See id.* ¶ 204. He could have simply used the Defendants' overall combined ratio but instead sought to utilize data closely tied to the lines of business that used Blaze Advisor. He also compared the combined ratio he used in his analysis to relevant industry competitors. *See id.*, Ex. 10.0. To arrive at a profit figure, he applied the combined ratio—which he acknowledged to be conservative in FICO's favor, *id.* at ¶ 189—to Zoltowski's revenue calculations for 2016, 2017, 2018, and part of 2019, id. at Ex. 8.0. He did so using an 84% combined ratio for all years and included an analysis of the losses and expenses comprising that combined ratio. The methodology

Magistrate Judge David T. Schultz
March 2, 2023
Page 2



was clearly disclosed in his report and that methodology will be helpful to the jury in understanding how to allocate costs.

Zoltowski subsequently supplemented his written report to account for gross written premium from policies processed through applications incorporating Blaze Advisor from the complete 2019 year and from 2020. *See* Zoltowski 2d Supp. Rep. Sch. 8.0. In response, Bakewell also submitted a supplemental report, reaffirming his initial responses to Zoltowski's analysis. Bakewell Supp. Rep. ¶ 4.

In his testimony, Bakewell will describe the analysis by which he converted Zoltowski's revenue figures to profits using the combined ratio method. He will apply the same proportional reduction to arrive a net premium amount and the same (conservative) 84% combined ratio to calculate profit. In other words, Bakewell will be providing the exact testimony and methodology offered in his report, but applying it to a new starting point—Zoltowski's $21 billion figure offered at trial. Bakewell's methodology for doing so is disclosed in his report and involves applying the same factors.

Consequently, Bakewell has satisfied his duty to disclose in his written report "a complete statement of all opinions [he] will express[,]" the "basis and reasons for them[,]" and "the facts or data considered by the witness in forming them[.]" Fed. R. Civ. P. 26(a)(2)(B)(i), (ii). Bakewell also supplemented his report pursuant to Rule 26(a)(2)(B), making clear that his response to Zoltowski's 2019 and 2020 revenue calculations was the same as for the prior years. *See* Bakewell Supp. Rep. ¶ 4.

In any event, that Bakewell did not apply his combined ratio analysis to Zoltowski's complete 2019 and 2020 revenue figures is "harmless" under Fed. R. Civ. P. 37(c)(1) and therefore is not a basis to exclude any of his testimony. Any failure to disclose expert testimony is harmless if the other party had "sufficient notice" of the contents of the testimony. *United States v. Ameren Missouri*, 9 F.4th 989, 1007 (8th Cir. 2021). Here, FICO has known since 2019 exactly the methodology Bakewell will apply to convert Zoltowski's revenue figures to profit, and, since the supplemental round of expert reports, it has known exactly the revenue numbers to which Bakewell will apply that methodology. FICO can "show no prejudice" from Bakewell applying the same analysis in his report to a new number. *Crump v. Versa Prods., Inc.*, 400 F.3d 1104, 1110 (8th Cir. 2005). To the extent FICO sees any flaws in Bakewell's analysis the proper method to address those issues is through cross-examination, not the extraordinary remedy of exclusion.

Magistrate Judge David T. Schultz
March 2, 2023
Page 3



Sincerely,

FREDRIKSON & BYRON, P.A.

*s/ Terrence J. Fleming*

Terrence J. Fleming
**Direct Dial:**  612.492.7496
**Email:**  tfleming@fredlaw.com

Enclosure