**EXHIBIT 6**

EXHIBIT 19

8/2/18   L. ABATE, CCR, RPR

## ADDENDUM NUMBER 2

ADDENDUM to be attached and form a part of the Service Agreement ("the Agreement"), effective the 1st day of January, 1998, between Pacific Indemnity Company (the "Company") and CHUBB & SON a division of FEDERAL INSURANCE CO. (the "Manager").

Paragraph 2 of section B of Article III is amended and replaced in its entirety by the following text:

2.  As soon as practicable after the close of each quarter, the Manager shall submit to the Company a statement setting forth:

    (a) The aggregate of advances received by the Manager from the Company during the year pursuant to paragraph 1 of this Section B.

    (b) The total of all expenses of the Manager (other than those charged directly to the Company as hereinafter provided) applicable to the business of the Company during the year.

Paragraph 4 of Section B of Article III is amended and replaced in its entirety by the following text:

4.  Except as otherwise expressly provided herein, all accounts between the Manager and the Company relating to transactions under this Agreement shall be settled quarterly. All payments shall be made within sixty (60) days after the close of each calendar quarter.

All other provisions of the Agreement remain unchanged.



U.S. DIST COURT – MN
PLAINTIFF EXHIBIT
P-0019
Case No. 16-cv-1054-DTS

This Addendum will be effective on the 31st day of December 2007

| PACIFIC INDEMNITY COMPANY | CHUBB & SON a division of FEDERAL INSURANCE CO. |
|---|---|
| By: *[signature]* Amelia C. Lynch | By: *[signature]* W. Andrew Macan |
| Title: Vice President | Title: Vice President & Secretary |

AMENDMENT to be attached to and form part of the Agreement effective on the 1st day of January, 1998 between Pacific Indemnity Company, a corporation organized under the laws of Wisconsin (the "Company") and Federal Insurance Company, a corporation organized under the laws of Indiana (the "Manager").

Effective on the 1st day of September, 2003, Section A of Article III is deleted and replaced by the following:

"SECTION A.

The Manager is hereby empowered, for, in the name and on behalf of the Company, to effect, sign, countersign and issue all such policies or contracts of insurance and reinsurance which the Company is authorized to issue as said Manager shall deem advisable; to fix the rates of premium thereon and to collect such premiums therefor; to settle, adjust, arbitrate and pay any accounts or claims whatsoever to which the Company shall be a party, and to prosecute suits in the courts and to collect for and for the benefit of the Company such sums as may be due it, and to defend the Company in suits against it and to appoint and fix the compensation of attorneys; to establish in the name of the Manager one or more joint bank accounts on behalf of the Company and other companies managed by it, to deposit funds of the Company in such bank accounts, to withdraw monies from such bank accounts for the payment of losses, reinsurance, expenses and other disbursements arising with respect to business of the companies managed by it, and to account monthly to the Company for all such deposits and withdrawals made on its behalf; to appoint and fix and pay the remuneration of agents and sub-agents of the Company in the United States and elsewhere in the world, with the authority to such agents and sub-agents to countersign policies of insurance, and generally by itself and by its agents and sub-agents to manage the business of insurance by and on behalf of the Company and to take all necessary measures for the Company's protection in respect of such insurance, and generally to do all other acts and things incidental to such management, including signing, executing, acknowledging, verifying and certifying bonds, pleadings, guarantees, indemnities, releases and other instruments (whether specifically enumerated herein or not) in the name and on behalf of the Company; provided that the powers so granted and action by the Manager hereunder shall be subject to the supervision and control of the Board of Directors of the Company, and further provided that, as respects its duties as manager, the Manager shall at all times act as a fiduciary of the Company and all funds held shall be as a fiduciary."

All other terms and conditions of the Agreement remain unchanged.

| PACIFIC INDEMNITY COMPANY | FEDERAL INSURANCE COMPANY |
|---|---|
| By: *Amelia E. Lynch* | By: *Amelia E. Lynch* |

111244



AGREEMENT effective the 1st of January, 1998 between Pacific Indemnity Company, a corporation organized under the laws of Wisconsin, hereinafter referred to as the Company, and CHUBB & SON, a division of FEDERAL INSURANCE COMPANY, a corporation organized under the laws of Indiana, hereinafter referred to as the Manager,

WITNESSETH:

## ARTICLE I.

1. The Company has nominated and appointed, and by this Agreement does nominate and appoint, the Manager as manager of the Company.

## ARTICLE II.

It is the intent of this Agreement:

1. That subject to supervision and control by the Board of Directors of the Company, which shall retain ultimate control and responsibility for the functions delegated to the Manager by this Agreement, notwithstanding such delegation, the Manager shall manage the business of insurance by and on behalf of the Company.

2. That the Manager may in its discretion act in a similar capacity on behalf of other insurance companies.



3   That the Manager shall not be responsible for the investment of the Company's funds or for corporate functions but that personnel employed by the Manager shall perform certain related duties under direction of the Company's Board of Directors and Officers

4.  That the Company shall bear its proportionate share of all expenses and liabilities incurred by the Manager in the management of the companies managed by it and through the payment of periodic advances shall put the Manager in funds to meet the Company's proportionate share of those expenses and liabilities which are not charged directly to the Company.

## ARTICLE III.

In order to give effect to the foregoing intent, it is specifically agreed as follows:

SECTION A.

The Manager is hereby empowered, for, in the name and on behalf of the said Company, to effect, sign, countersign and issue all such policies or contracts of insurance and reinsurance which the Company is authorized to issue as said Manager shall deem advisable; to fix the rates of premium thereon and to collect such premiums therefor; to settle, adjust, arbitrate and pay any accounts or claims whatsoever to which the Company shall be a party, and to prosecute suits in the courts and to collect for and for the benefit of the Company such sums as may be due it, and to defend the Company in suits against it and to appoint and fix and pay the compensation of attorneys; to establish in the name of the Manager one or more joint bank accounts on behalf of the Company and other companies managed by it, to deposit funds of the Company in such bank accounts, to withdraw monies from such bank accounts for the payment of losses, reinsurance, expenses and other disbursements arising with respect to business of the companies managed by it, and to account monthly to the Company for all such deposits and withdrawals made on its behalf; to appoint and fix and pay the remuneration of agents and sub-agents of the Company in the United States and elsewhere in the world, with authority to such agents and sub-agents to countersign policies of insurance, and generally by itself and by its agents and sub-agents to manage the business of insurance by and on behalf of the



# 37955v2

Confidential

FED013547_0005

Company and to take all necessary measures for the Company's protection in respect of such insurance, and generally to do all other acts and things incidental to such management, including the right to sign, execute, acknowledge, verify and certify bonds, pleadings, guarantees, indemnities, releases and other instruments (whether specifically enumerated herein or not) in the name and on behalf of the Company; provided that the powers so granted and action by the Manager thereunder shall be subject to supervision and control by the Board of Directors of the Company.

SECTION B.

Reimbursement of the Manager for expenses (other than those charged directly to the Company as hereinafter provided) shall be computed and paid as follows:

1. The Manager shall be entitled to receive from the Company periodic advances of reasonable amounts.

2. As soon as practicable after the close of each calendar year, the Manager shall submit to the Company a statement setting forth:

    (a) The aggregate of advances received by the Manager from the Company during the year pursuant to paragraph 1 of this Section B.

    (b) The total of all expenses of the Manager (other than those charged directly to the Company as hereinafter provided) applicable to the business of the Company during the year.

3. If the aggregate of advances received by the Manager from the Company referred to in 2 (a) above shall exceed the Company's share of the Manager's expenses referred to in 2 (b) above, such excess

# 37955v2

Confidential

shall be paid by the Manager to the Company. If the Company's share of the Manager's expenses exceeds the aggregate of such advances, such excess shall be paid by the Company to the Manager.

4.  The statement referred to in paragraph 2 above shall be certified by the Company's auditors after such examination of the records of the Manager and the Company as such auditors consider necessary. Such statement shall be established generally in accordance with accepted principles of accounting with the proviso, however, that the Uniform Classification of Expenses prescribed by the State of New York shall be used as a guide.

SECTION C.

1.  The Manager shall initially bear the expenses of its offices, including rent and rental items, employees' compensation, contributions to any employee benefit plan, pension contributions and supplements, postage, telegraph, telephone and stationery, and in general the expense of the maintenance and the operation of such offices. Such expenses shall be taken into account in the statements prepared pursuant to the provisions of ARTICLE III, Section B, paragraph 2 (b).

2.  With respect to all other expenses, the Company shall be charged directly with and pay for expenditures applicable solely to it or its proportionate share of expenditures for the account of itself and other managed companies incurred in connection with the business in which the Company participates.

3.  With respect to any expenses of which, by the terms of this Agreement, the Company shall bear the full amount or a proportionate share, the Manager shall have complete discretion and power to determine what the Company's obligation shall be, subject, however, to review by the Company's



# 37955v2

independent auditors to determine compliance with this Agreement. Such review to determine the amount of any expenses which are to be charged to the Company, either in whole or in part, shall include a statement from the Company's independent auditors addressed to the Board of Directors, that the amount of expenses chargeable to the Company, with such changes if any as are found appropriate, represents fairly the Company's share of the total of such expenses. The word "proportionate" as used in this Agreement shall mean the percentage of expenses incurred by the Manager, in handling various classes of business on behalf of the Company and other participants, equivalent to the percentage the Company has in each class of business in connection with which the expenses were incurred.

SECTION D.

This Agreement may be terminated as of the close of any calendar year by either party upon not less than 9 months prior written notice to the other. This Agreement is not assignable by either party without the prior written consent of the other.

SECTION E.

Any controversy or claim arising out of or relating to this Agreement or any breach or claimed breach thereof shall be settled by arbitration (upon the initiative of either party on written notice to the other party) in accordance with the following rules:

The controversy or claim shall be submitted to three arbitrators, one to be appointed by each party hereto with the two arbitrators so appointed to appoint a third arbitrator; except that if either party fails to appoint an arbitrator within thirty (30) days of the above mentioned notice, the controversy or claim shall be

\# 37955v2



submitted to a single arbitrator appointed by the other party. If, within thirty (30) days after the appointment of both the arbitrators to be appointed by the parties hereto, they fail to appoint a third arbitrator, such third arbitrator shall be appointed by the American Arbitration Association. If any arbitrator resigns or fails for any reason to act, a substitute arbitrator may be appointed by the same method as his predecessor. Such arbitration shall be held at 15 Mountain View Road Warren, New Jersey, unless the parties agree otherwise, and conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The award rendered by the arbitrators or arbitrator shall be final and conclusive upon the parties hereto, and judgment thereon may be entered in any court having jurisdiction thereof. The cost of arbitration shall be shared equally by both parties.

| PACIFIC INDEMNITY COMPANY | FEDERAL INSURANCE COMPANY |
|---|---|
| By: *Amelia C. Lynch* | By: *Amelia C. Lynch* |
| Amelia C. Lynch | Amelia C. Lynch |
| Vice President | Vice President |

37955



# 37955v2

Confidential    FED013547_0009