**EXHIBIT 13**

# *MASTER SERVICES AGREEMENT*

This Master Services Agreement ("Agreement") is made by and between Chubb & Son, a division of Federal Insurance Company, an Indiana corporation, having its principal office at 15 Mountain View Road, Warren, New Jersey, 07059 and Fair Isaac Corporation ("Vendor") having an office at 901 Marquette Avenue, Suite 3200, Minneapolis, MN 55402.  This Agreement shall be effective as of June ___, 2006 (the "Effective Date").  The purpose of this Agreement is to set forth the terms and conditions that are acceptable to the parties for the performance of certain professional services by Vendor for Chubb in connection with its renewal processing rules maintenance project.

In consideration of the mutual promises made by Chubb and Vendor, the parties agree as follows:

## 1. **Definitions**

**1.a** Chubb:  "Chubb" shall mean Chubb & Son, a division of Federal Insurance Company, for itself and as servicer for The Chubb Corporation and its non-insurance company subsidiaries, or as manager of its insurance company subsidiaries.

**1.b** Cooperation:  "Cooperation" shall mean Chubb's general cooperation and provision of access to such information as may be reasonably required by Vendor in order to perform its obligations under this Agreement, including without limitation: (a) providing data and materials in the format and according to the specifications required by Vendor, (b) for onsite services, providing Vendor with full access to office accommodations, facilities, equipment, security access information, and software interfaces to Chubb's other business applications; (c) providing personnel assistance as may be reasonably requested by Vendor from time to time; (d) complying with all terms, conditions, and requirements set forth in this Agreement; and (e) cooperating with Vendor to make decisions and communicate information in a timely manner.

**1.c** Intellectual Property Rights: "Intellectual Property Rights" shall mean any and all intellectual property rights, however recognized, including, but not limited to, copyright, patent, trademark, trade dress, service mark, trade secret, or any other intellectual property right whether now existing or developed or created during the term of this Agreement.

**1.d** Invention: "Invention" shall mean any and all inventions, innovations, processes, techniques, works of authorship, developments, derivations, contributions, supplements, enhancements, and modifications, and any copies, adaptations, documentation, algorithms, notes, or records thereof, including, but not limited to, computer programs, including both source and object versions thereof, and attendant specifications and source code listings, authored, made, developed, or conceived of and reduced to practice by, or under the direction of, Vendor during the term and within the scope of this Agreement.

**1.e** Taxes: "Taxes" shall mean all present and future taxes, duties, import deposits, assessments, and other governmental charges (and any related penalties and interest not attributable to the fault or delay of Vendor), however designated, that are now or hereafter imposed by or under any governmental authority or agency that are: (i) associated with the performance by Vendor of its obligations under this Agreement; (ii) associated with the payment of any amount by Chubb to Vendor pursuant to this Agreement; (iii) based on the license or use of any Vendor-provided product or service; or (iv) associated with the importation of any Vendor-provided product into or use of any Vendor-provided service within a country other than the United States, excepting only (v) Vendor's corporate franchise Taxes and Taxes imposed on Vendor's net income by the governmental authorities or agencies in such jurisdictions as Vendor is required to pay such taxes; (vi) withholding, employment, and payroll taxes relating to Vendor's employees; and (vii) personal property taxes on Vendor property.



U.S. DIST COURT – MN
PLAINTIFF EXHIBIT
**P-0336**
Case No. 16-cv-1054-DTS



EXHIBIT

338

LR# 24161

Confidential - Attorneys' Eyes Only                                        FICO0021678

2. **Scope of Services**

**A.**     Chubb hereby retains the services of Vendor and Vendor hereby agrees to provide services as described in a mutually agreed upon work order(s) (or "statement of work") which may be entered into from time to time and is incorporated herein and attached hereto this Agreement as Appendix A ("Services").  Vendor's employees will observe Chubb's working and security rules.

**B.**     The specifications and performance requirements set forth in Appendix A can be modified only upon the mutual written agreement of the parties.

**C.**     Appendix A sets forth any material assumptions and Chubb responsibilities (collectively, the "Assumptions") upon which Vendor has relied in agreeing to perform the Services. Vendor shall use  commercially reasonable efforts to adhere to the schedule set forth in Appendix A. Any deviations from, or failure of Chubb to meet its obligations with respect to, the Assumptions may result in additional fees and expenses and/or changes to schedules or Deliverables. In addition, Chubb acknowledges that the Assumptions also include Chubb's Cooperation.

3. **Service Rates; Expenses**

**A.**     Chubb agrees to pay Vendor, in exchange for Services rendered, a fee in accordance with Appendix A, attached hereto.

**B.**     Prices do not include reasonable travel and associated out-of-pocket expenses incurred by Vendor in connection with this Agreement, which Chubb agrees to reimburse at Vendor's actual cost. Expenses shall be subject to Chubb's travel and expense policy, which is attached hereto as Exhibit 1. Chubb shall not be liable to Vendor for any other expenses paid or incurred by Vendor unless otherwise agreed to in writing signed by a duly authorized representative of Chubb.

**C.**  Chubb shall only be liable for the pro rata share of any payments owed, equal to the number of days in which Vendor actually provided services, in any month in which this Agreement is terminated.

**D.**  Charges under this Agreement are stated exclusive of any applicable Taxes, and Chubb will be solely responsible for, and shall pay or reimburse Vendor for, all Taxes. Vendor shall promptly remit to the appropriate tax authority all Taxes collected from Chubb on account of Chubb's tax obligations, if any, and Vendor shall indemnify Chubb against any and all losses, costs, and expenses (including reasonable attorneys' fees) which result from Vendor's violations of its obligations under this section. If Vendor receives a refund of any such Taxes attributable to amounts paid under this Agreement by Chubb, Vendor shall pay such refunded amount to Chubb within 30 days of its receipt.

4. **Service Payment and Expense Reimbursement**

**A.**     Chubb will pay within the greater of (a) forty-five (45) days of the invoice date; or (b) thirty (30) days of Chubb's actual receipt of invoices, for Services rendered and expenses incurred under this Agreement.  All amounts are payable in US Dollars in accordance with the instructions provided in the invoice or other instructions provided by Vendor.

**B.**     Chubb may, at its option and without prior notice and during normal business hours, audit Vendor's records reasonably related to the invoices issued pursuant to Section 3.A, above. Vendor shall keep sufficient records at its principal place of business to allow Chubb to audit the invoices, which records will be maintained for twenty-four (24) months from the date of creation. Chubb acknowledges that it and its employees, subcontractors or agents may, in the course of

FICO0021679

conducting an audit, be exposed to information which is confidential or proprietary to Vendor. Chubb agrees to treat all of Vendor's Confidential Information as confidential information, maintaining such information in strict confidence, using at least the same level of care that Chubb uses to avoid unauthorized use or disclosure of its own most confidential information that it did not wish to become public.   For purposes of this Section, "Vendor's Confidential Information" is that information belonging to, or in the possession or control of, Vendor that has been clearly labeled by Vendor as confidential or that under the circumstances ought to be reasonably identifiable as confidential.

5.      **Independent Contractor; Employees**

**A.**      Neither Vendor nor Vendor's employees are or shall be deemed to be employees of Chubb. Vendor shall be solely responsible for the payment of compensation (including provision for employment taxes, federal, state and local income taxes, workers compensation and any similar taxes) associated with the employment of Vendor's employees. Vendor shall also be solely responsible for obtaining and maintaining all requisite work permits, visas, and any other documentation. Vendor represents that Vendor, its employees, and those parties authorized by Chubb under Section 5(C), are authorized to perform such Services under this Agreement.

**B.**      Vendor acknowledges that because Vendor is engaged in its own independently established business, neither Vendor, Vendor's employees, nor those parties authorized by Chubb under Section 5(C) are eligible for, nor shall they participate in, any pension, health, or other employee benefit plan of Chubb.

**C.**      Vendor shall take appropriate measures to ensure that its employees, and those parties authorized by Chubb under this subsection, who perform Services are competent to do so and that they observe the provisions of Section 7, **Confidential Information; Non-Disclosure.** None of the Services under this Agreement shall be provided by anyone other than Vendor's own employees, unless Vendor first obtains the prior written consent of Chubb.

**D.**      Vendor reserves the right to determine which of its personnel will be assigned to perform the Services and to replace or reassign such personnel during the term hereof. However, should Chubb have a concern about any Vendor personnel performing the Services, those concerns should be brought to the attention of the Vendor Project Manager, and Vendor will make commercially reasonable efforts to remedy the situation to Chubb's satisfaction.

6.      **Ownership and Use of Work Product; License to Deliverables**

Ownership of deliverables shall be as stated in  each statement of work.    In the event ownership of deliverables is vested in Vendor, then, upon final payment of all amounts due to Vendor under this Agreement, Vendor grants to Chubb a perpetual, non-transferable, non-sublicensable, non-exclusive license to use, copy, and modify those deliverables that are specifically identified in  a statement of work as being created for use by Chubb as part of the Services ("Deliverables") solely for Chubb's internal business purposes, subject to the terms and conditions of this Agreement. Chubb agrees that it will use such Deliverables only within the scope of the foregoing license. This Agreement does not grant any right or license to any Vendor products other than the Deliverables, it being understood that all rights in the technology and methods used in creating the Deliverables and all other rights are retained by and will remain with Vendor. In no event will Vendor be precluded from providing services for others that are similar to the services or from developing, for itself or for others, materials that are similar to or competitive with the Deliverables. In addition, Vendor will be free to use its general knowledge, skills, and experience, and any ideas, concepts, know-how, and techniques developed by Vendor in connection with the performance of the Services.

Confidential - Attorneys' Eyes Only

FICO0021680

JUN-22-2006  10:27AM  FROM-CHUBB & SON  EXECUTIVE RISK 860 403 2139        TO:860 408 2139        NO.927    P.6/11
                                                                                                            P.5/11
08/21/2006 11:06 FAX 8558888988        FAIR, ISAAC & CO.                                                    ☒005

Also, the underlying and pre-existing intellectual property that went into creation of the deliverables under this Agreement, including all techniques, know-how and other proprietary information shall remain the sole and exclusive intellectual property of VENDOR. Any reference or use of the VENDOR name (and associated marks) shall be prohibited without the express written consent of the Head of the Corporate Communications Department at VENDOR.

In addition, the VENDOR names and service marks, any questionnaire(s) developed and/or used in connection with the Services (the "Questionnaire") are and shall remain the property of VENDOR, and Chubb will not obtain any ownership interest in the underlying ideas, concepts, know-how and techniques used by VENDOR to develop or generate the Study, the Questionnaire and any reports.

Chubb may use the results of the Study(s) or Services, any Reports, and the data contained therein for internal purposes. Chubb may also disclose the information in the Study(s) or Services, and any Reports to third parties provided neither the VENDOR name nor service marks are disclosed in connection therewith, but may not disclose copies of the Study(s) or Reports, in whole or in part, to third parties unless such disclosure is approved pursuant to Section below.

Chubb will retain all intellectual property and licensing rights to its pre-existing intellectual property, including any rules, conditions, and custom components provided to the Vendor.

No portion of the Study(s) or Services bearing VENDOR Marks may be disclosed, and no other disclosure of the VENDOR Marks may be made, unless the entire text of such proposed disclosure is first submitted to VENDOR for review, along with a statement of the parties to whom Chubb proposes to make the disclosure, and samples which are accurate and true representations of the final form of the proposed disclosure, ~~and the disclosure is first "Approved" as to form on the written form that O Power then uses for such purposes.~~ If any changes of any kind whatsoever are made to the content of the disclosure or the parties to whom Chubb proposes to make the disclosure, the proposed disclosure must again be submitted to VENDOR for review and approval.

7.    **Confidential Information; Non-Disclosure**

      A.    In order that each party may perform its obligations under this Agreement, it may be necessary for the other party ("Discloser") to disclose to such party ("Recipient") or its employees or agents certain information and material which may be considered to be sensitive, confidential and/or proprietary to the Discloser, its affiliates, subsidiaries, customers, insureds, agents, directors, officers or employees. Any and all Confidential Information, as defined below in Section 7(C), disclosed to or obtained by the Recipient, its employees, subcontractors, or agents, in the performance of the Recipient's obligations, shall be deemed confidential and proprietary information belonging to the Discloser. In recognition of the foregoing, the Recipient covenants and agrees: (a) that it will maintain all Confidential Information of the Discloser in strict confidence, using appropriate administrative, technical and physical safeguards to protect Confidential Information to avoid its unauthorized use or disclosure; (b) that it will not, directly or indirectly, copy, reproduce, sell, assign, license, market, transfer, or disclose any Confidential Information of the Discloser to any third party without the Discloser's prior written consent; (c) that it will not make use of any Confidential Information of the Discloser for its own purposes or the benefit of anyone or any other entity other than the Discloser, except as otherwise expressly provided under this Agreement (d) that at any time the Discloser may so request, it will deliver to the Discloser or, at of the Discloser's option, will certify the destruction of, all memoranda, notes, records, reports, media, and other documents, and all copies thereof, regarding or including any Confidential Information of the Discloser which the Recipient may then possess or have under its control; and (e) that it will take no action with respect to Confidential Information of the Discloser that is inconsistent with the confidential and proprietary nature of such information.

RECEIVED TIME    JUN. 22.   10:25AM

Confidential - Attorneys' Eyes Only

FICO0021681

JUN.22.2006  10:28AM  FROM CHUBB & SUN   EXECUTIVE RISK  860 408 2139                    NO.927    P.7/11
06/21/2006 11:05 FAX 8583894988               FAIR, ISAAC & CO.                                     图401

**B.**    The Recipient shall not disclose Confidential Information of the Discloser, except to its employees, or any other party authorized by the Discloser pursuant to Section 5(C), having a need to know such Information in connection with the performance of its obligations or services. The Recipient shall instruct all such employees and authorized parties as to their obligations under this Section, and shall advise them of their obligations to be bound by the terms and conditions of this Section prior to their being given access to Confidential Information of the Discloser. The Recipient acknowledges that it shall remain responsible and liable for its employees' compliance with the terms of this Section.

**C.**    For purposes of this Agreement, "Confidential Information" shall include all confidential and proprietary Information of the Discloser, whether in written, oral, electronic, magnetic, photographic, optical, or any other form now existing or created or developed during the term of this Agreement, including, but not limited to, the following: (a) information relating to the Discloser's planned or existing computer systems, system architecture, computer hardware, computer software, source code, object code, documentation, program libraries, program listings, processing methods, technical processes and operational methods; (b) information regarding planned or existing insurance policies, insurance coverage, insurance premiums, insurance endorsements, claims procedures, or other information that describes how insurance activities are administered and managed; (c) customer data, customer lists, sales, profits, pricing, and other financial information; (d) information regarding the Discloser's existing or planned sales and marketing activities or strategies; (e) information regarding the Discloser's existing or planned organizational restructuring, business affairs, and business initiatives; (f) confidential information regarding the Discloser's customers, insureds, employees, directors and officers; (g) confidential information of a third party licensed to, possessed by, or in the control of the Discloser, and which the Discloser is or may be obligated to treat as confidential; or proprietary; and (h) any other information relating to the Discloser which is not generally known to the public or within the industries and trades in which the Discloser competes or which may otherwise be protected by state trade secret law.

**D.**    Notwithstanding Section 7(C), Confidential Information shall not include information that (a) is or becomes generally known to the public, not as a result of an act, omission, or disclosure by the Recipient, (b) is rightfully in the possession of the Recipient prior to this Agreement, (c) is independently developed by the Recipient without use of the Discloser's Confidential Information, (d) is received by the Recipient in good faith and without restriction from a third party, not under a confidentiality obligation to either party, or (e) is disclosed pursuant to a court or regulatory order, provided that the Recipient immediately notifies the Discloser upon receipt of such order and cooperates with the Discloser in obtaining appropriate protection from the authority issuing the order.

**E.**    This Section shall survive the termination of this Agreement.

**8.**    <u>Warranty</u>

Vendor warrants that (i) it will perform the Services as described in each statement of work in a professional and workmanlike manner in accordance with generally acceptable industry practices; and (ii) it has the resources necessary to provide the Services. Chubb's sole remedy and Vendor's sole obligation pursuant to this warranty shall be for Chubb to notify Vendor in writing of any alleged warranty defect within thirty (30) days after the defective services were performed, and Vendor shall correct the defects promptly.

**9.**    <u>Term</u>

This Agreement shall be deemed effective as of Contract Effective Date, regardless of the date on which it is actually signed by both parties, and shall continue until terminated pursuant to Section X, § Termination!

M.b

RECEIVED TIME    JUN.22.   10:05AM

Confidential - Attorneys' Eyes Only

FICO0021682

10. **Termination**

    **A.**    This Agreement shall terminate:

        (1)  if a party has committed a material breach of this Agreement and has failed to remedy such breach within 30 days after receipt of written notice from the non-breaching party identifying the breach and requiring it to be remedied.

        (2)  upon written notice from either party if the other party (i) becomes insolvent or seeks protection under the Federal Bankruptcy Act or any other state laws relating to insolvency; (ii) makes a general assignment for the benefit of creditors; or (iii) suffers or permits the appointment of a receiver or a trustee for its business or assets.

    **B.**    Chubb shall be responsible for payment for Services until the effective date of termination.

    **C.**    On termination of this Agreement for any reason, each party will promptly deliver to the other party or destroy all Confidential Information of such other party that is in its possession.

11. **Insurance**

Vendor shall maintain, during the term of this Agreement, workers' compensation coverage in compliance with the laws of each state in which the Services or any portion thereof are to be performed. Vendor shall additionally maintain, at all relevant times:

    A.    Automobile Liability Insurance in the amount of $1,000,000 for each occurrence with respect to all vehicles used in connection with the Services, and

    B.    Commercial General Liability Insurance covering personal injury and property damages in the amount of $2,000,000 for each occurrence, and

    C.    Errors and Omissions coverage during the term of this Agreement with liability limits of not less than $1,000,000 per occurrence.

12. **Indemnity**

    **A.**    Each party, at its own expense, shall indemnify, and hold harmless the other party and its directors, officers, employees, agents, successors and assigns and defend any action brought against such other party, with respect to any claim, demand, cause of action, debt, liability, or expense, including attorney's and expert witness fees and court and settlement costs, due to third party claims for bodily injury or damage to tangible personal property to the extent caused by the fault or negligence of the indemnifying party in its performance of its obligations under this Agreement.

    **B.**    Vendor will, at its own expense, indemnify and hold harmless Chubb and its directors, officers, employees, agents, successors and assigns and defend any action against Chubb brought by a third party to the extent that the action is based upon a claim that a Vendor Deliverable provided in this Agreement directly infringes any U.S. registered copyright, or misappropriates any trade secret recognized as such under the Uniform Trade Secrets Act, and Vendor will pay those costs and damages finally awarded against Chubb in any such action that are specifically attributable to such claim or those costs and damages agreed to in a monetary settlement of such action. Notwithstanding the foregoing, Vendor shall have no obligation with

respect to any infringement or misappropriation claim to the extent a claim is caused by any deliverables or other materials provided by Chubb, or any adherence by Vendor to any directions, specifications, suggestions or other input provided by Chubb.

C.      The indemnifying party shall have the option to assume control of such defense. In addition, the indemnified party agrees to: (a) promptly notify the indemnifying party in writing of each claim for which indemnification is sought hereunder, and (b) cooperate with the indemnifying party at the indemnifying party's expense in connection with the defense or settlement of each such claim. The indemnifying party shall also allow the indemnified party the right of free association during such defense, and shall keep the indemnified party adequately informed of all developments and strategies related to such defense.

### 13.     Governing Law

This agreement shall be governed by, subject to, and, enforced and interpreted in accordance with the laws of the State of New York, including the remedies available for breach hereof, without regard to its conflict of laws principle.

### 14.     Entire Agreement

This Agreement, and the attachments hereto, constitutes the entire agreement and understanding between the parties with respect to the subject matter of this Agreement, and supersedes all prior discussions, understandings, and agreements between the parties.  No alteration or modification of this Agreement shall have any force or effect unless such modification is in writing, signed by duly authorized representatives of both parties, and affixed to this Agreement in the form of an addendum.

### 15.     Severability

If any of the provisions contained in this Agreement are held to be illegal, invalid, or unenforceable, the enforceability of the remaining provisions shall not be impaired and the Agreement shall continue as if such illegal, invalid, or unenforceable provisions are not contained in this Agreement.

### 16.     Assignment

This Agreement may not be assigned by either party without the prior written approval of the non-assigning party.  Except for the prohibition on assignment contained in the preceding sentence, this Agreement shall be binding upon and inure to the benefit of the heirs, successors and assigns of the parties to this Agreement.

### 17.     Notices

Notices with regard to this Agreement shall be delivered in person or sent via United States first class postage prepaid, certified or registered mail, or sent via a recognized traceable shipping service (i.e. FEDEX, UPS, etc.) to the persons and addresses listed below:

Chubb:      James Black
            Vendor Management Group
            Chubb & Son, a division of Federal Insurance Company
            15 Mountain View Road
            Warren, New Jersey  07059

Vendor:     Fair Isaac Corporation
            Attn: Contracts Administrator
            3661 Valley Centre Drive
            San Diego, CA 92130

Confidential - Attorneys' Eyes Only     FICO0021684

18.     **Publicity**.

Vendor shall not make use of Chubb's name, logo, trademarks or service-marks, or its association with Chubb arising either from discussions leading to this Agreement or from the Agreement itself, for publicity, advertising, marketing or other purposes without the express written consent of Chubb in each instance.

19.     **Captions.**

Captions and section headings used in this agreement are for convenience only and are not a part of this agreement and should not be used in construing it.

20.     **Limitation of Liability**

**A.**     NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES ARISING OUT OF THIS AGREEMENT OR ANY PRODUCT, SERVICE, OR DELIVERABLE PROVIDED BY VENDOR UNDER THIS AGREEMENT, EVEN IF THE RESPONSIBLE PARTY HAD BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR EVEN IF SUCH DAMAGES WERE REASONABLY FORESEEABLE.  HOWEVER, THIS LIMITATION SHALL NOT APPLY TO DAMAGES OF ANY KIND RELATED TO (1) MATERIAL BREACH OF THE PROVISIONS OF THIS AGREEMENT RELATING TO PROTECTION OF CONFIDENTIAL INFORMATION, AND (2) VIOLATIONS OF EITHER PARTY'S INTELLECTUAL PROPERTY RIGHTS (INCLUDING UNAUTHORIZED USE).

**B.**     With respect to the performance of each party under this Agreement, in no event shall either party be liable to the other party, any of its officers, directors, employees, or shareholders, or to any third party, whether a claim be in tort (except for any claim based upon fraud), contract, or otherwise for any amount in excess of the total fees paid by Chubb to Vendor under this Agreement during the 12 months immediately preceding the date of the most recent claim that gave rise to such liability, except that this limitation shall not apply to any claim based upon (1) material breach of the provisions of this Agreement relating to protection of Confidential Information, or (2) violations of either party's intellectual property rights (including unauthorized use).  In addition, notwithstanding the foregoing, Chubb's obligation to pay amounts owed to Vendor under this agreement for products and services provided by Vendor under this Agreement (including costs of collection of unpaid amounts) is independent of and not subject to the foregoing limitation.

**C.**     Vendor does not warrant that any product, service, or deliverable provided by Vendor will (i) meet Chubb's requirements, (ii) operate in combination with hardware, software, systems or data not expressly specified in writing by Vendor, (iii) meet any performance level, resource utilization, response time, or system overhead requirements, or (iv) operate uninterrupted, free of errors, or without delay. WITHOUT LIMITING THE FOREGOING, VENDOR MAKES NO WARRANTIES, EITHER EXPRESS OR IMPLIED, AND HEREBY DISCLAIMS ALL IMPLIED WARRANTIES, INCLUDING ANY WARRANTIES REGARDING MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND ANY WARRANTY ARISING FROM A COURSE OF DEALING, USAGE, OR TRADE PRACTICE. CHUBB IS SOLELY RESPONSIBLE FOR ITS USE OF ANY PRODUCTS, SERVICES, AND DELIVERABLES PROVIDED BY VENDOR UNDER THIS AGREEMENT AND FOR ANY LIABILITY ARISING OUT OF DATA OR CONTENT SUPPLIED BY CHUBB.

Confidential - Attorneys' Eyes Only

FICO0021685

21.   **Force Majeure**.

No delay in or failure of performance by either party under this Agreement will be considered to be a breach hereof if and to the extent that such delay or failure of performance is caused by an occurrence or occurrences beyond the reasonable control of the party affected.

**IN WITNESS WHEREOF, the parties hereto, each acting with due and proper authority and acknowledging that they have read this Agreement, understand it and agree to be bound by its terms, have executed this Agreement, as of the date first set forth above in Section 8:**

**CHUBB & SON,**
**a division of Federal Insurance Company,**
for itself and as servicer for The Chubb Corp.
and its non-insurance company subsidiaries, or
as manager of its insurance company subsidiaries.
"Chubb"

Signature

By: _MARK BERTHIAUME_

Title: _SENIOR VICE PRESIDENT_

Date: _6/9/06_

**Fair Isaac Corporation**
"Vendor"

Signature

By: _Daniel S. Chelew_

Title: Vice President
Financial Planning & Analysis

Date: _June 19, 2006_

Confidential - Attorneys' Eyes Only

FICO0021686