# EXHIBIT 30

| Fair Isaac Statement of Work | Page 1 of 5 |
|---|---|
| Fair Isaac Contract Number: | FI LR# 1319435 |

# Appendix A-1
# STATEMENT OF WORK

This Statement of Work ("**SOW**") is effective as of September 22, 2009 and is issued pursuant to and is subject to the Master Services Agreement ("**Agreement**") between Fair Isaac Corporation ("**Fair Isaac**") and Chubb & Son, a division of Federal Insurance Company ("**Chubb or Client**") with an effective date of August 17, 2009.
Capitalized terms used herein that are defined in the Agreement will have the meanings given to such terms in the Agreement.

**Project Overview**
Chubb is partnering with Fair Isaac to develop a Policy Validation Decision Service ("**PVDS**"). The project will be developed in multiple phases, including PVDS Rule Services, PVDS Support Services and a Test Bed Application. Each phase will encompass a full software development lifecycle and the extension or enhancement of the services and testing tools from the preceding phase. Fair Isaac will provide updates on key checkpoints to align with the Chubb project governance dashboard during each phase. The description of Services for phase 1 is set forth Attachment 1 to this SOW and the description of services for subsequent phases and any applicable deliverables will be set forth in additional attachments.

1. **Description of Services**
Fair Isaac will provide Chubb with guidance, mentoring, and general assistance ("**Assistance**") in the implementation of Chubb's Premium Booking Validation Services ("**PVDS**"). Such Assistance may include the following:

   (a) Decision analysis, definition, and specification of PVDS business rules, and the authoring of decision definition and requirement harvesting documents.
   (b) Analysis, design, and specification of the PVDS business rule repository ("**Repository**"), and the authoring of Repository design documentation.
   (c) Analysis, design, and specification of the PVDS business rule maintenance application ("**RMA**").
   (d) Analysis, design, and specification for the deployments of the PVDS decision services ("**Deployments**"), and the authoring of technical design documentation.
   (e) Analysis, design, and specification of a brUnit test environment, and the definition of unit testing requirements documentation.
   (f) Analysis, design, and specification of an assembly testing framework using Fair Isaac's black box tester ("**BBTester**") framework.
   (g) Knowledge and insight into how the Blaze Advisor® components of PVDS will integrate with Chubb's enterprise Services Oriented Architecture ("**SOA**").
   (h) Implementation of the above described designs and specifications.
   (i) Unit Testing.
   (j) Implementation and knowledge transfer associated with applicable BRMS Industry and Blaze Advisor® product best practices.
   (k) Early exposure to and experience with full SDLC for BRMS development for Chubb PVDS team members.
   (l) Rapid development of v1.0 rule service and RMA.
   (m) Definition of extensible BRMS design based upon Chubb's representative requirements ("**Policy Rules**").
   (n) Establishment of foundation for a test early, test often methodology.

2. **Deliverables**
Fair Isaac will provide weekly status reports in a MS Word format which will include key tasks completed during the week, key tasks for the upcoming week, billable hours used, and project related risks/issues.

3. **Out of Scope Services**

U.S. DIST COURT – MN
PLAINTIFF EXHIBIT
**P-0882**
Case No. 16-cv-1054-DTS

| Fair Isaac Statement of Work | Page 2 of 5 |
|---|---|
| Fair Isaac Contract Number: | FI LR# 1319435 |

Any service not specifically itemized in Section 1 (Description of Services), are not within the scope of Services provided by Fair Isaac pursuant to this SOW.

4. **Assumptions and Client Responsibilities**

The following are Fair Isaac's assumptions and Client's responsibilities upon which Fair Isaac has relied in agreeing to perform the Services. Any deviation from these assumptions, or Client's failure to meet any of the responsibilities itemized below, may result in additional fees and expenses and/or changes to schedules or Deliverables:

(a) Scope and Tool Assumptions
  (i) Any network infrastructure requirements for this solution will be the responsibility of Client. This includes additional network equipments, network bandwidths and setup services. Any additional hardware/software licenses as required will be at Client's cost.
  (ii) Client acknowledges that any custom code created hereunder ("**Custom Code**") will be maintained by the Client and is outside the standard Fair Isaac Support and Maintenance Policy.
  (iii) Due to the part time nature of some resources and to facilitate proper resource scheduling, Fair Isaac and Client will mutually agree to a resource plan during the first week of the project. Changes to the resource plan must be mutually agreeable and Fair Isaac requires a minimum of two weeks notice to increase or decrease utilization of a resource.

(b) Client Responsibility
  (i) Integration, system, and user testing will be performed by Client with assistance from Fair Isaac.
  (ii) Client will not hold Fair Isaac invoice payments, due to schedule delays as a result of Client delays in resolving problems identified as Client owned.
  (iii) Client's request for any change in Services must be in writing. This requirement pertains to all such requests including but not limited to requests for changes to scope, duration, and schedule. Fair Isaac will not be obligated to perform tasks described in Client's request until both of the parties agree in writing to the proposed change.
  (iv) Client will meet the responsibilities set forth in this section and will use all reasonable efforts to avoid delay.
  (v) Client will complete any facility modifications required at the implementation site at lest two weeks prior to the scheduled installation.

(c) Fair Isaac Responsibility
  (i) Provide Fair Isaac resources with suitable knowledge and experience to perform the Services specified herein.
  (i) Fair Isaac will provide weekly status and the numbers of hours expended on the project to Chubb management.
  (ii) Fair Isaac will meet the responsibilities set forth in this section and will use all reasonable efforts to avoid delay.

(d) Fair Isaac Availability
  (i) Fair Isaac will make personnel sufficiently available to interact with the Chubb. team in order to develop expertise in the product.
  (ii) Fair Isaac architect and development leads will be available to meet with the Chubb project management members as needed or on a weekly basis.
  (iii) During the term of this Sow and subject to the hours estimated herein, key Fair Isaac personnel will be available as needed to: answer key questions regarding business requirements of the application functionality, application architecture and design and attend status meetings as required by Chubb.

(e) Client Availability

    (iv)  Client will make personnel sufficiently available to interact with the Fair Isaac consultant team members for the purposes of delivering the services under this SOW.
    (v)  Client project management members will be available on a weekly basis to meet with Fair Isaac project management.
    (vi)  Client's key users or business analysts will be available as needed to: answer key questions regarding supplied data; participate in joint application design ("**JAD**") sessions; and attend status meetings as requested by Fair Isaac. This availability is especially critical during the inception of the engagement described in this SOW.
    (vii)  Client personnel who can authoritatively speak to the goals, scope and business requirements of the application functionality required must be available throughout the entire first week of the project. Fair Isaac will schedule meetings and JAD sessions for subsequent weeks during the course of the project and will provide as much advance notice to Client as possible.

(f) Working Conditions and Accommodations
    (i)  Client will provide general cooperation and make available to Fair Isaac under this SOW, access to information that is reasonably required to allow Fair Isaac to perform its obligations under this SOW, including without limitation: (i) providing data and materials in the format and according to the specifications required by Fair Isaac, (ii) for onsite services, providing Fair Isaac with necessary access to office accommodations (including personal workspace with local telephone extensions and broadband Internet access for Fair Isaac consultants using Fair Isaac laptop computers), facilities, equipment (including workstations for each Fair Isaac consultant), complete and accurate information and data from its officers, agents, and employees, and suitably configured computer products, software interfaces to Client's other business applications; (iii) providing personnel assistance as is reasonably requested by Fair Isaac; (iv) complying with all terms, conditions, and requirements set forth in this SOW and the Agreement; and (v) cooperating with Fair Isaac to make decisions and communicate information in a timely manner (collectively, "**Cooperation**" or "**Cooperate**"). Client acknowledges that these are essential to performance of any Services, and that Fair Isaac will not be liable for any deficiency in performing the Services if the deficiency results from Client's failure to provide full Cooperation.
    (ii)  Fair Isaac staff will design, develop, and test decision management ("DM") solutions using Fair Isaac laptops.
    (iii)  Fair Isaac personnel will work remotely from Fair Isaac offices, and travel as necessary to ensure project success.
    (iv)  While on site at Client's location, Fair Isaac's performance of Services will be during standard local business hours except on national holidays, bank holidays, Fair Isaac corporate holidays or other holidays as mutually agreed otherwise.

5. **Fees and Payment Terms**

Fair Isaac will provide Client the Fair Isaac professional service estimated to complete phases 1 through 4 of the project on a time and material basis. The hourly rates set forth below are based on total volume and provided that the hours are utilized prior to the expiration date, Fair Isaac shall provide the services at the costs specified herein. In the event that Client does not utilize the hours by the expiration date, the parties agree that the pricing shall be renegotiated based on Fair Isaac's then current professional services rates. The table below set forth in the table below does not include reasonable travel and living expenses, which will be billed to Client at cost. Client agrees to reimburse Fair Isaac for all such travel-related expenses Fair Isaac incurs in connection with this SOW as specified in the Agreement. Fair Isaac will invoice for the Services and related expenses on a monthly basis as Services are performed and the expenses incurred, and Client will pay each invoice in accordance with the payment terms specified in the Agreement.

**Chubb Volume Purchase Table:**

| Service Description | Product # | Estimated Hours | Hourly Rate** | Expiration Date |
|---|---|---|---|---|
| Professional Services as described above | 280-OOCN-02 | 1-1500 hours | USD$200 | Mar 31, 2010 |
| Professional Services as described above | 280-OOCN-02 | 1501-3000 | USD$190 | Sep 30, 2010 |
| Professional Services as described above | 280-OOCN-02 | 3001-4500 | USD$160 | Mar 31, 2011 |
| Professional Services as described above | 280-OOCN-02 | 4501-6000 | USD $150 | June 30, 2011 |
| | | | | |

**The discounted hourly rate is a one-time offer and does not establish precedence for hourly rates on future engagements.

6. **Term and Termination**
This SOW becomes effective on the date when Services are commenced hereunder and will continue until June 30, 2011 or hours expended, hereunder, whichever is the earliest to occur. Client may terminate this SOW for cause if Fair Isaac ceases doing business, or otherwise terminates its business operations, or if Fair Isaac materially breaches any material provision of this SOW or the Agreement and fails to cure such breach within 30 days of written notice describing the breach. Fair Isaac may suspend its performance under and/or terminate this SOW for cause if Client ceases doing business, or otherwise terminates its business operations, or materially breaches any material provision of this SOW or the Agreement (including with respect to payment obligations) and fails to cure such breach within 30 days of written notice describing the breach. In the event that the Services specified in this SOW are delayed for a period of 90 days or more, Fair Isaac may terminate this SOW for convenience with no further liability or performance obligations. If this SOW is not signed by September 30, 2009 the offer extended in this SOW will expire. Terms of this agreement will apply to all phases of the project.

7. **Client Special Requirements**
Prior to the commencement of the Services, Client will notify Fair Isaac in writing if Client has any special policies or requirements regarding the following: (a) facility access or security; (b) Fair Isaac's access to Client's network and other software programs;

8. **Scope Management / Change Control**
Any proposed alterations to the project are to be submitted pursuant to the Change Control Process. Client and Fair Isaac will seek in good faith (not to exceed 7 business days) to reach agreement on the proposed change. If agreement is reached, the change will be reflected in a Change Order to this SOW signed by both parties, which will specify the modifications and the work called for, including but not limited to any changes to the scope, fees and schedule. Any terms and conditions included on the quote, purchase order, or other purchasing documentation have no effect and all services provided under such will be governed by the terms and conditions of the Agreement.

9. **General**
This SOW, together with the applicable provisions of the Agreement, constitutes the entire agreement of the parties with respect to the subject matter of this SOW and supersedes any prior oral or written proposals, representations, promises or agreements. This SOW is subject to the terms and conditions of the Agreement, but in the case of any conflict between the terms of this SOW and the terms of the Agreement, the terms of this SOW will control.

| Fair Isaac Statement of Work | Page 5 of 5 |
|---|---|
| Fair Isaac Contract Number: | FI LR# 1319435 |

### 9. General

This SOW, together with the applicable provisions of the Agreement, constitutes the entire agreement of the parties with respect to the subject matter of this SOW and supersedes any prior oral or written proposals, representations, promises or agreements. This SOW is subject to the terms and conditions of the Agreement, but in the case of any conflict between the terms of this SOW and the terms of the Agreement, the terms of this SOW will control.

IN WITNESS WHEREOF, Fair Isaac and Client have caused this SOW to be signed in duplicate and delivered by their duly authorized representatives as of the date first set forth above.

**FAIR ISAAC CORPORATION**

By: _____

Name: Aaron Jaeger

Title: Director, Financial Planning & Analysis

Date Signed: 9/22/09

**CHUBB & SON, A DIVISION OF FEDERAL INSURANCE COMPANY**

By: Robert T. Dadd

Name: ROBERT DADD

Title: SVP

Date Signed: 9/22/2009


REVIEWED BY FAIR ISAAC LEGAL per C. Anderson

Confidential