# EXHIBIT 33

Cited
As of: March 5, 2023 8:25 PM Z

# Derr v. Footlocker, Inc.

United States District Court for the Central District of California

March 9, 2006, Decided ; March 9, 2006, Filed

04-9523 FMC (Ex)

**Reporter**
2006 U.S. Dist. LEXIS 15317 *

ROBERT DERR, Plaintiff, vs. FOOTLOCKER, INC., et al., Defendants.

## Core Terms

shrink, Regional, termination, prima facie case, summary judgment, ratings, termination decision, replaced, disability, younger, discriminatory, employees, promotion, numbers, sales, anxiety disorder, genuine issue, circumstances, causation, comments, Retail, adverse employment action, material fact, good cause, conversation, appraisal, indicates, parties, triable, ranked

**Counsel:** **[*1]** For Robert Derr, an individual, Plaintiff: Denise Placencio, John R DaCorsi, Dacorsi & Placencio, Woodland Hills, CA.

For Foot Locker Inc, a New York corporation, Champs Sports, an unincorporated operating division of Foot Locker Retail Inc, Foot Locker Retail Inc, a New York corporation, Foot Locker Specialty Inc, a New York corporation, Defendants: Eric W Smith, Kevin M Smith, Kristen A Page, Nancy J Gonzalez, William C Martucci, Shook Hardy & Bacon, Kansas City, MO; Thomas A Woods, Shook Hardy and Bacon, Irvine, CA.

**Judges:** FLORENCE-MARIE COOPER, Judge.

**Opinion by:** FLORENCE-MARIE COOPER.

## Opinion

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendants' Motion for Summary Judgment pursuant to *Fed. R. Civ. P. 56* (docket no. 30), filed December 15, 2005. The Court has read and considered the moving, opposition, and reply documents submitted in connection with this motion. The matter was heard on March 6, 2006, at which time the parties were in receipt of the Court's Tentative Order. For the reasons and in the manner set forth below, the Court hereby **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary **[*2]** Judgment.

### I. BACKGROUND

This case arises from the termination of Plaintiff Robert Derr's employment relationship with Defendant Champs Sports.

The chronology of Plaintiff's employment history is not the subject of significant dispute in this litigation. Plaintiff Robert Derr was an employee of Champs Sports, an unincorporated operating division of Defendant Foot Locker Retail, Inc., for approximately 18 years. In 1989, he was promoted to the position of District Manager for the Western Region. (Derr Decl. P2.) In 1994, Champs Sports promoted Plaintiff to the position of Regional Vice President. From 1999 to 2004, Plaintiff served as Regional Vice President for the company's Western Region. In that role, Plaintiff's responsibilities included management of sales, "shrink," [1] **[*3]** and employee hours. [2] Regional Vice Presidents received weekly, monthly, and quarterly reports that detailed their performance in these areas. In addition to providing performance data, the reports ranked each of the four Regional Vice Presidents in each of these performance areas.

On May 10, 2004, in a meeting in Bradenton, Florida

---

[1] In the retail industry, "shrink" or "shrinkage" refers to the loss of inventory, primarily due to internal or external theft.

[2] Plaintiff purports to dispute this fact but offers no explanation or evidence to controvert the fact. (Pl's Stmt. of Genuine Issues in Opp'n 15.)

with Ron Halls, President and CEO of Champs Sports, and Rebecca Kreitsek, Vice President of Human Resources, Plaintiff was informed of the decision to terminate his employment. Halls made the termination decision. Defendants maintain that the termination decision was based on Plaintiff's poor work performance, particularly with respect to his ability to control shrink in his region.

At the time his employment was terminated, Plaintiff was 48 years old. The next employee to hold the position of Regional Vice President, Western Region was 46 years old.

**A. Terms of Employment**

Defendant Champs Sports' employee orientation materials expressly state that employees are hired "at will," which "means employment can be terminated with or without cause or notice at any time, at the option of either you or the company." (Smith Decl., Ex. E.) However, Plaintiff maintains that he had a conversation **[*4]** with Jerry Wolfer, a Divisional Vice President of Champs Sports, in connection with Plaintiff's promotion to the position of District Manger in May 1989. According to Plaintiff, during that conversation, Wolfer stated: "With a company like Foot Locker, you'll never be fired except for sexual harassment, embezzlement, or fraud." Plaintiff claims that he accepted the promotion because of Wolfer's statement. (Derr Decl. PP2-6.)

Additionally, at some later date, Rick Mina ("Mina"), a senior manager with Foot Locker, Inc., told Plaintiff and the other three Regional Vice Presidents that they were his "go forward team." (Derr Decl. P13; Placencio Decl. Ex. 2: Berry Depo. 87:24-89:1.) [3]

**[*5] B. Age-Based Comments**

Plaintiff maintains that he kept a record of age-related comments that various managerial and supervisory individuals directed at him during the course of his employment as Regional Vice President, Western Region. (Palencio Decl. Ex. 1: Derr Depo. at 97:2-98:99:24.) Those include a comment by Ron Halls in summer 2003 that Plaintiff could "be replaced with somebody younger" (Frighetti Decl. P13) and another comment by Halls, later in 2003, that Plaintiff "would not have any idea what youth looks for." (Derr Decl. PP10-11.) Other comments made to Plaintiff include Rick Mina telling Plaintiff in January 2000 that he was "greying as well somewhat," John Chittenden telling Plaintiff that he should get new glasses because it would make him look younger, Rebecca Krietsek telling plaintiff that he should stop wearing button down dress shirts and should wear more t-shirts and ribbed shirts because they made him look younger, and Mina telling a store manager that "Bob is old. He's been around for a long time. He's ancient." (Derr Depo., Ex. 3.)

**C. Plaintiff's Anxiety Disorder**

Plaintiff maintains that he began experiencing a sense of panic and **[*6]** related physical symptoms that caused him concern as of November 2003. He sought medical advice in January 2004, and the doctor he saw wrote Plaintiff prescriptions for two medications to help control his panic attacks. (Derr Depo. 58:25-60:1, 75:11-77:25.)

Plaintiff maintains that he informed Kreitsek of his anxiety disorder and possible need for time off or other accommodations in a telephone conversation on May 5, 2004, and he characterizes her response to this information as one of alarm. (Derr Depo. 46:4-48:20.)

After Plaintiff was informed of the termination decision on May 10, 2005, he read aloud an e-mail to Ron Halls and Rebecca Kreitsek, detailing the nature of his anxiety disorder.

There is no evidence that Plaintiff sent the e-mail message to Halls, Kreitsek, or any other employee prior to the May 10 meeting (Derr Depo. 113:8-116:13.), nor is there any other evidence in the record of Plaintiff's diagnosis or treatment for his anxiety disorder, any communication by him to Defendants about the disorder, or comments or actions by Defendants in connection with the disorder.

**D. Performance, Performance Appraisals, and**

[3] At Oral Argument, Plaintiff's Counsel advanced Kreitsek's deposition testimony as evidence of the creation or existence of an employment contract. That testimony includes the following statements: "I couldn't disagree that we would not terminate someone unless we felt there was a good reason" (Placencio Decl. Ex. 3: Kreitsek Depo. 118:14-19),"I would want us always to have a good reason to terminate anyone" *(Id.* at 118:23-119:1), and "I would want it to be our practice to have a good reason to terminate anyone in the Champs' company" *(Id.* at 119:2-8.)

**Related Issues**

Halls concedes that Plaintiff's **[*7]** sales performance was strong. (Halls Depo. 76:17-21, 77:12-14.) Plaintiff received bonuses for the years 1999 to 2003, and he received a merit increase in his rate of pay 18 days prior to his termination. (Derr Decl. P8.) He received an acceptable performance appraisal for fiscal year 2003, and he won the "Big Trip" nationwide sales contest in 2003. (Chittenden Decl. PP18, 19.)

Plaintiff was informed that his termination was due to his "shrink numbers." Defendants maintain, but do not establish as uncontroverted fact, that Regional Vice Presidents knew that shrink results greater than 2% were regarded as unacceptable or grounds for termination. Plaintiff maintains that he was never informed, verbally or in writing, that he would be terminated if his shrink numbers did not improve. Defendants indicate that two Regional Vice Presidents were terminated for poor performance in the area of shrink in the five years prior to 2004. [4]

**[*8]** Plaintiff was aware of his employer's concerns about shrink on a company-wide basis. (Frighetti Decl. P12.) According to the ranking system in place for Champs Sports' Regional Vice Presidents immediately prior to the termination of Plaintiff's employment, shrink was weighted as 10% of a Regional Vice President's yearly appraisal. (Halls Depo. 151:11-153:18.)

Plaintiff's performance appraisal for 2001 indicated Plaintiff's region experienced shrink of 1.67% and noted that "the biggest area of concern for 2001 and improvement for 2002 is SHRINK ... the Region must come in at 1.3% or better this year." In Plaintiff's performance appraisal for fiscal year 2002, his shrink percentage was listed as 1.91% of sales. Plaintiff's performance review of fiscal year 2003 indicated that his actual shrink was at 2.18% of sales. He was given an "unsatisfactory" rating, and the review indicated that he needed to "most of all ... reduce shrink to at least 1.51%." (Martucci Decl., Ex. A: Kreitsek Depo. at Ex. A.) For the first quarter of fiscal year 2004, Plaintiff's shrink percentage was noted at 2.47%, and he was ranked fourth, the lowest of the four Regional Vice Presidents, for shrink. (Martucci **[*9]** Decl., Ex. B.: Derr Depo. at Ex. 8.)

Plaintiff does not dispute the shrink figures reported for his region. Rather, he points to the fluctuations in the shrink numbers and rankings of the four Regional Vice Presidents over time, and he notes discrepancies between Defendants' responses to his shrink numbers and their responses to the shrink numbers reported for other Regional Vice Presidents. For example, Plaintiff received the rating of "unsatisfactory" for 2.18% shrink in 2002 and 2003, but another Regional Vice President received a "needs improvement" rating for shrink of 2.31% in the same two years. (Halls Depo. 102:14-104:11, 107:4-18 and Exs. F, M. and O.) Halls was able to explain only that a strong sales performance does not obviate the need to address shrink problems. (Halls Depo. 75:3-77:19.)

Additionally, Plaintiff introduced evidence that shrink increased because Defendant Champs Sports, Inc. reduced the number of employees available to monitor the floors of retail stores and began the practice of "over inventory" [5] in an effort to increase profitability and drive shareholder value. (Chittenden Decl. PP10-15.)

**[*10] E. Litigation**

In July 2004, Plaintiff filed a complaint with the California Department of Fair Employment and Housing, and a Right to Sue Letter was issued to Plaintiff on August 25, 2004.

On October 22, 2004, Plaintiff filed suit in state court, asserting claims of age discrimination, disability discrimination, wrongful termination, breach of contract, intentional infliction of emotional distress, and negligent infliction of emotional distress. Defendants filed their Notice of Removal in this case on November 19, 2004.

On December 15, 2005, Defendants filed the instant Motion for Summary judgment seeking summary adjudication of all Plaintiff's claims against all Defendants.

**II. LEGAL STANDARD**

Summary judgment is proper only where "the pleadings,

[4] The Court received Plaintiff's February 28, 2005 Objection to Defendants' Reply to Plaintiff's Statement of Genuine Issues and Related Evidence. The Court did not rely on Defendants' Reply to Plaintiff's Statement of Genuine Issues or the new evidence submitted therewith.

[5] "Over inventory" refers to the practice of sending more product to stores than can be safely and securely stored on site. (Chittenden Decl. P13.)

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*; *see also* *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)*.

The moving party bears **[*11]** the initial burden of demonstrating the absence of a genuine issue of material fact. *See* *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 258, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*. Whether a fact is material is determined by looking to the governing substantive law; if the fact may affect the outcome, it is material. *Id. at 248*.

If the moving party meets its initial burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse parry's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Fed. R. Civ. P. 56(e)*. Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude the use of summary judgment. *See* *Harper v. Wallingford, 877 F.2d 728 (9th Cir. 1989)*.

The Court construes all evidence and reasonable inferences drawn therefrom in favor of the non-moving party. *See* *Anderson, 477 U.S. at 261*; *Brookside Assocs. v. Rifkin, 49 F.3d 490, 492-93 (9th Cir. 1995)*.

## III. DISCUSSION

### A. Liability [*12] of Defendants Foot Locker, Inc. and Foot Locker Specialty, Inc.

The parties agree that Plaintiff was employed by Champs Sports, an unincorporated operating division of Footlocker Retail, Inc. Plaintiff does not dispute that named defendants Foot Locker, Inc. and Foot Locker Specialty, Inc. are separate corporate entities, and he neither alleges nor submits evidence in support of claims against Foot Locker, Inc. and Foot Locker Specialty, Inc. Therefore, no genuine issue of material fact exists regarding these two entities, and Defendants' Motion for Summary Judgment is granted as a matter of law as to these two entities.

### B. Age Discrimination in Violation of California Government Code

California's Fair Employment and Housing Act ("FEHA.") protects employees against adverse employment decisions on the basis of membership in a protected class by virtue of age. *Cal. Gov't Code § 12940(h)*.

In analyzing whether summary judgment should be granted as to Plaintiff's FEHA claim, the Court is required to look to the test formulated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973),* **[*13]** and *Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)*, for evaluating claims under Title VII. *See* *Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042, 32 Cal. Rptr. 3d 436, 116 P.3d 1123 (2005)*.

Under this standard, a plaintiff must first establish a prima facie case of discrimination or retaliation. *McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. 1817*. Once a plaintiff has established his prima facie case, the burden of production, but not persuasion, shifts to the employer to articulate some legitimate, non-retaliatory reason for the challenged action. *Id.* If the employer does so, the plaintiff must show that the articulated reason is pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)*; *accord* *Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 148, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)* (holding that a plaintiff's prima **[*14]** facie case, combined with evidence that defendant's proffered reason is unworthy of belief, may permit a fact finder to conclude that the employer unlawfully discriminated).

*1. Plaintiff's Prima Facie Case:*

Plaintiff's prima facie case requires "evidence adequate to create an inference that an employment decision was based on an [illegal] discriminatory criterion." *O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312-13, 116 S. Ct. 1307, 1310, 134 L. Ed. 2d 433 (1996)* (quoting *Teamsters v. United States, 431 U.S. 324, 358, 97 S. Ct. 1843, 1866, 52 L. Ed. 2d 396 (1977))*. To establish a prima facie case of discrimination, a plaintiff must "at least show actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a [prohibited] discriminatory criterion." *Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 355, 100 Cal. Rptr. 2d 352, 8 P.3d 1089*

*(2000)* (internal citations and quotations omitted). As the Supreme Court of California has explained:

> The specific elements of a prima facie case may vary depending on the particular facts. [citations] Generally, **[*15]** the plaintiff must provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive. [citations]

*Id.*

Here, Plaintiff was 48 years old when his employment was terminated, and he was replaced by a 46-year-old employee. Defendants argue that Plaintiff is not able to establish a prima facie case of age-based discrimination because a showing of replacement by a substantially younger person is a necessary element of Plaintiff's prima facie case.

Although the Supreme Court did not discount replacement by a substantially younger worker as a consideration in ADEA claims, the Court only stated that such replacement "is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." *O'Connor, 517 U.S. at 312-13*. California and federal case law also address the issue of replacement by a substantially younger worker. **[*16]** *See e.g., Mundy v. Household Finance Corp., 885 F.2d 542 (9th Cir. 1989)*; *Hersant v. Cal. Depart. of Social Svcs., 57 Cal. App. 4th 997, 1003, 67 Cal. Rptr. 2d 483 (1997)*. However, such cases "only support the proposition that, if a plaintiff is relying upon the *McDonnell Douglas* burden-shifting framework, to establish a prima facie case, evidence that an employee is replaced by a substantially younger person, together with certain other facts . . ., permits the inference that the termination was based upon age…" *Begnal v. Canfield & Associates, Inc., 78 Cal.App.4th 66, 73-74, 92 Cal. Rptr. 2d 611 (2000)*.

Therefore, Defendants cannot prevail at summary judgment on the theory that replacement by a substantially younger worker is a necessary element of Plaintiff's prima facie case.

Defendants also argue that Plaintiff is not able to establish that he was performing his job in a satisfactory manner prior to his termination. Defendants cite to Plaintiff's performance and ratings in the area of controlling shrink. However, the record also indicates that Plaintiff's performance in the area of sales ranged from satisfactory to strong, and shrink accounted for only 10% of **[*17]** Regional Vice Presidents' performance ratings. Therefore, Plaintiff has demonstrated the existence of a genuine issue of triable fact regarding whether his job performance was satisfactory.

*2. Employer's Burden and Pretext:*

The record reflects and the parties do not dispute that Defendants identify Plaintiff's performance and ratings in the area of shrink control as the legitimate, non-retaliatory reason for the termination decision. Defendants have rebutted the presumption of discrimination by producing evidence sufficient to raise a genuine issue of triable fact as to whether the adverse employment action in this case was taken for a legitimate, nondiscriminatory reason. Accordingly, the remaining question before the Court is whether Plaintiff has made a sufficient showing that Defendants' articulated reason for the termination decision is pretextual. *Guz, 24 Cal.4th at 356* (explaining that plaintiff's evidence of pretext or discriminatory motive may include "in an appropriate case, evidence of dishonest reasons, considered together with the elements of the prima facie case, [which] may permit a finding of prohibited bias"). "The ultimate burden of persuasion **[*18]** on the issue of actual discrimination remains with the plaintiff." *Id.*

Defendants contend that Plaintiff cannot show that the stated reason for the termination decision in this case was pretextual. Defendants maintain that Plaintiff was terminated for failing to adequately control shrink in his region. Plaintiff acknowledges he was aware of concerns about shrink numbers and ratings, but Plaintiff has introduced evidence that a reasonable trier of fact could find undermines the credibility of Defendants' proffered reasons for the termination decision. For example, Plaintiff maintains that supervisors and upper-management directed age-based comments at him in the years prior to the termination decision. These comments included direct references to Plaintiff's age, less direct comments about his greying hair and "older" appearance or image, and one comment about the fact that he could be replaced by someone younger.

Additionally, Plaintiff points out that, with sales performance accounting for 50% of a Regional Vice President's performance review, Defendants' characterization of Plaintiff's performance in the area of

shrink (which accounted for 10% of the performance rating) **[*19]** fails to acknowledge or account for the effect of his top ratings and rankings in sales. Plaintiff has also introduced evidence that the increase in shrink numbers was experienced nationwide and was not unique to his stores or region, and the record indicates that other regions had shrink ratings that were worse than Plaintiff's during the period of 2001 to 2004. Finally, plaintiff points to the fact that he received "unsatisfactory" ratings for shrink of 2.18% in 2002 and 2003, while another Regional Vice President was given the higher "needs improvement" rating for shrink of 2.31% in the same years.

The evidence as a whole could permit a rational inference that the facts belie Defendants' age-neutral reason for the termination decision in this case such that Defendants' actual motive was discriminatory. Therefore, summary judgment is denied as to Plaintiff's age discrimination claim against Champs Sports and Foot Locker Retail, Inc.

**C. Disability Discrimination in Violation of California Government Code**

FEHA prohibits employment discrimination on the basis of mental disability. *Cal. Gov't Code § 12940(a)*. The three-step *McDonnell Douglas* burden-shifting test **[*20]** also applies to disability discrimination claims. *E.g., Brundage v. Hahn, 57 Cal. App. 4th 228, 236, 66 Cal. Rptr. 2d 830 (1997)*.

In order to establish a prima facie case under FEHA, Plaintiff must establish that he: (1) suffered from a disability, (2) was otherwise qualified to do his job, and (3) was subjected to adverse employment action because of his disability. *Finegan v. County of Los Angeles, 91 Cal. App. 4th 1, 7, 109 Cal. Rptr. 2d 762 (2001)*.

Plaintiff points out that it is undisputed that Defendant Champs Sports is a covered employer, Plaintiff was subject to an adverse employment action. Plaintiff's own testimony is the only evidence of his diagnosis of or treatment for a covered medical condition. He maintains that he began experiencing anxiety attacks and sought medical treatment as early as November 2003. However, the record indicates that he never disclosed anything about his anxiety disorder to anyone in a supervisory or decision-making position until May 5, 2004, five days before he was informed of the termination decision. Plaintiff states that he informed Krietsek of his medical condition and requested medical leave during a telephone conversation on May 5, 2004. Therefore, **[*21]** the key disputed aspect of Plaintiff's prima facie case is whether a genuine issue of material fact exists regarding the causal link between Plaintiff's disclosure about his anxiety disorder and the termination decision, *i.e.,* was his employment terminated *because of* his disability.

Defendants argue, inter alia, that Plaintiff has not made a sufficient showing of causation. *See cf. Mixon v. Fair Employment & Hous. Comm'n, 192 Cal. App. 3d 1306, 1317, 237 Cal. Rptr. 884 (1987)* (explaining that an employee must show that the employer "harbored a discriminatory intent" to prevail on a disparate treatment theory under FEHA). However, Plaintiff maintains that the temporal proximity of his May 5 conversation with Kreitsek and the May 10 termination of his employment presents a triable issue of fact. The Court agrees. *See cf. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002)* (Title VII retaliation claim explaining that "in some cases, causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity"); *Passantino v. Johnson & Johnson Consumer Products, Inc., 212 F.3d 493, 507 (9th Cir. 2000)* **[*22]** (Title VII retaliation case stating: "causation may be established based on the timing of the relevant actions. Specifically, when adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred. [citations omitted] Moreover, we have held that evidence based on timing can be sufficient to let the issue go to the jury, even in the face of alternative reasons proffered by the defendant."); *Yartzoff v. Thomas, 809 F.2d 1371,1376 (9th Cir. 1987)* ("Causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence, such as ... the proximity in time between the protected action and the allegedly retaliatory employment decision."); *Love v. RE/MAX of America, Inc., 738 F.2d 383, 386 (9th Cir. 1984)* ("The causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." (internal quotations and citation omitted)).

Here, Plaintiff has set forth sufficient evidence to establish a genuine issue regarding **[*23]** the causation element of his prima facie case.

Additionally, the above discussion regarding the

employer's burden and Plaintiff's showing of pretext also applies here. Defendants' legitimate, non-discriminatory reason for termination is sufficient to rebut a presumption of discrimination. However, Plaintiff's evidence of causation is also sufficient to establish a triable issue regarding pretext.

Accordingly, Defendants' motion for summary adjudication of Plaintiff's second claim for disability discrimination is denied.

**D. Breach of Contract**

Under California law, an employment relationship with no specified term is presumed to be "at will," meaning that the employee and the employer are both free to terminate the relationship at any time, with or without cause. *Cal. Lab. Code § 2922*; *Hawkins v. Home Depot, 294 F. Supp. 2d 1119, 1123 (N.D. Cal. 2003)*, *aff'd without published opinion* *127 Fed. Appx. 305 (9th Cir. 2005)*. To overcome this presumption, a discharged employee must prove the existence of a contract providing otherwise. *Hawkins, 294 F. Supp.2d at 1123*; *Nelson v. United Technologies, 74 Cal. App. 4th 597, 615, 88 Cal. Rptr. 2d 239 (1999)* **[*24]** ("The presumption may be overcome if there is an implied-in-fact contract requiring cause to terminate the employee.").

The existence of an implied-in-fact employment contract limiting an employer's right to terminate an employee generally presents a question of fact, and the fact finder may consider the employer's course of conduct and oral representations in deciding the issue. *Id.; See also* *Guz v. Bechtel Nat. Inc., 24 Cal.4th 317, 336, 100 Cal. Rptr. 2d 352, 8 P.3d 1089 (2000)* (explaining that courts look to the totality of the circumstances and consider such factors as "the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged."). However, the proper analysis will look to the totality of the circumstances:

> … We did not suggest, however, that every vague combination of [the listed] factors, shaken together in a bag, necessarily allows a finding that the employee had a right to be discharged only for good cause, as determined in court.
>
> On the contrary, 'courts seek to enforce the actual understanding' **[*25]** of the parties to an employment agreement ….
>
> Every case thus turns on its own facts. Where there is no express agreement, the issue is whether other evidence of the parties' conduct has a 'tendency in reason' to demonstrate the existence of an *actual mutual understanding on particular terms and conditions of employment….* But where the undisputed facts negate the existence or the breach of the contract claimed, summary judgment is proper.

*Guz, 24 Cal.4th at 337* (emphasis altered from original).

As the California Supreme Court went on to explain in *Guz,* "long duration of service, regular promotions, favorable performance reviews, praise from supervisors, and salary increases do not, without more, imply an employer's contractual intent to relinquish its at-will rights." *Id. at 341*.

Additionally, the understanding and pronouncements of employees regarding an *unwritten* company policy or practice to terminate only "for cause" generally are not sufficient to rebut the statutory presumption of at-will employment. *Id. at 345*. In *Guz,* the court explained that a general statement by a division president regarding **[*26]** his perception that the company sought to avoid arbitrary firings was "insufficient as a matter of law to permit a finding that the company, by an unwritten practice or policy on which employees reasonably relied, had contracted away its right to discharge [plaintiff] at will." *Id.* However, in another fairly recent decision, the court of appeal noted that, in reviewing a plaintiff's claim under the "totality of the circumstances" standard, the court below should have considered deposition testimony by the plaintiff's supervisor regarding his belief that the good cause was required for termination. *Dee v. Vintage Petroleum, Inc., 106 Cal. App. 4th 30, 37, 129 Cal. Rptr. 2d 923 (2003)* ("[Plaintiff's] counsel asked him, '[Employer] can't just fire you for no reason. They have to have good cause to fire you; is that right?' [Supervisor] responded 'That's my belief.'").

Here, viewing the totality of the circumstances, it is clear that Plaintiff was rewarded for his sales performance over the course of his many years of employment with Defendants. He received awards for his achievements in sales, and the parties do not dispute that he received promotions and salary increases or bonuses **[*27]** throughout the course of his employment. However, as*Guz* points out, these things do not, *without more,*

impliedly create an employment contract.

Plaintiff maintains that a Divisional Vice President's statement in 1989 constituted a specific oral assurance or promise that Plaintiff's employment would not be terminated except for good cause, which included conduct resulting in sexual harassment, embezzlement, or fraud. The only evidence of this statement is Plaintiff's testimony that he accepted the 1989 promotion to District Manager for the Western Region in reliance on that statement: "With a company like Foot Locker, you'll never be fired except for sexual harassment, embezzlement, or fraud … essentially class A type felonies." Neither this statement nor Plaintiff's testimony that Mina told all the Regional Vice Presidents that they were his "go forward team," raises a triable issue of fact with respect to the formation of an employment contract that would rebut the statutory presumption of at-will employment in this case.

Neither these statements, nor any reliance on them by Plaintiff, have a "tendency in reason" to demonstrate what was characterized in *Guz* as the **[*28]** requisite "actual mutual understanding on particular terms and conditions of employment." The Divisional Vice President's statement conveyed a general description or characterization of Foot Locker as an employer, and neither statement is reasonably susceptible to interpretation as a specific promise or guarantee extended to Plaintiff such that his acceptance thereof, or reliance thereon, would give rise to a contractual obligation.

Further, Kreitsek's deposition testimony that she would like to think the company would not fire employees without good cause fails to raise a genuine issue with respect to whether the company had contracted away its right to terminate employees at will.

In light of all the circumstances, nothing about the parties' conduct indicates that they intended or reached an actual understanding regarding an employment contract. Therefore, although Plaintiff's long history of employment with Champs Sports is a factor that weighs in Plaintiff's favor, it is outweighed by the absence of any evidence of express or implied assurances of continued employment. Construing all evidence and reasonable inferences therefrom in Plaintiff's favor, the record does not support **[*29]** a finding of the existence of a binding limitation on Defendant's ability to terminate Plaintiff's employment without cause. Therefore, summary judgment is granted in favor of Defendants on Plaintiff's breach of contract claim.

**E. Remaining Counts of Plaintiff's Complaint**

Defendants argue that summary judgment should be granted as to Plaintiff's remaining claims because those claims are dependent on Plaintiff's age- and disability-discrimination claims. Defendants advance no further legal authority or argument in support of this proposition. Therefore, because Plaintiff's age- and disability-discrimination claims survived Defendants' motion for summary adjudication, Defendants request for summary adjudication of Plaintiff's remaining claims is also denied.

## IV. CONCLUSION

Defendants' Motion for Summary Judgment is **GRANTED** with prejudice in favor of Defendants Foot Locker, Inc. and Foot Locker Specialty, Inc. as to all claims. Additionally, Defendants' Motion is **GRANTED** with prejudice in favor of Defendants Champs Sports and Foot Locker Retail, Inc. as to Plaintiff's fourth claim (breach of contract), and Defendants' Motion is **DENIED** as to Plaintiff's **[*30]** first claim (age discrimination), second claim (disability discrimination), and all other remaining claims against Defendants Champs Sports and Foot Locker Retail, Inc.

March 9, 2006

/s/

FLORENCE-MARIE COOPER, Judge

UNITED STATES DISTRICT COURT

---

End of Document