# **EXHIBIT 36**

 Cited
As of: March 5, 2023 8:28 PM Z

# Paris Partners, L.P. v. Russo

United States District Court for the Southern District of New York

December 14, 1995, Decided ; December 14, 1995, FILED

94 Civ. 5684 (PKL)

**Reporter**
1995 U.S. Dist. LEXIS 18648 *

PARIS PARTNERS, L.P., Plaintiff, - against - ANTHONY RUSSO and ABEL RUSSO, Defendants.

## Core Terms

subsidiaries, sanctions, entities, derivative, misrepresentations, motion to dismiss, Defendants', shareholder, insolvent

## Case Summary

**Procedural Posture**

Plaintiff limited partnership filed an action against defendant owners of a debtor company charging violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), *18 U.S.C.S. §§ 1961-1968*. Plaintiff argued that it was directly injured by the owners' alleged looting of the debtor company. Pending before the court were the owners' motions to dismiss and for sanctions.

**Overview**

The limited partnership was the primary shareholder of a holding company that owned subsidiaries that contracted with the owners' debtor company. The limited partnership asserted that the owners made fraudulent representations that caused the subsidiaries to refrain from enforcing contracts against, or collecting debts from, the debtor company. Also, the limited partnership contended that the alleged misrepresentations caused the holding company or its subsidiaries to purchase the debtor company's assets. The limited partnership claimed that it was injured because it advanced money to the holding company, which was rendered virtually worthless when the debtor company became insolvent. In ruling on the owners' motion to dismiss, the court held that the debtor company was the party that was directly injured by the owners' alleged looting of it. The court ruled that the attenuated, derivative nature of the limited partnership's alleged injury meant that it did not have standing to assert a RICO claim against the owners. The court rejected the limited partnership's argument that it suffered direct injury, noting the several layers of limited liability the partnership had erected.

**Outcome**

The court granted the owners' motion to dismiss the limited partnership's complaint, but granted the limited partnership leave to replead. The court denied the owners' motion for the imposition of sanctions against the limited partnership.

## LexisNexis® Headnotes

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

**HN1[ ]  Motions to Dismiss, Failure to State Claim**

In deciding defendants' *Fed. R. Civ. P. 12(b)(6)* motion to dismiss, the court accepts as true the material facts alleged in the complaint and draws all reasonable inferences in plaintiff's favor. A motion to dismiss must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Civil Procedure > ... > Justiciability > Standing > General Overview

Criminal Law & Procedure > ... > Racketeering > Racketeer Influenced & Corrupt Organizations Act > General

Overview

Securities Law > RICO Actions > Standing

Antitrust & Trade Law > ... > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview

[HN2][] **Justiciability, Standing**

18 U.S.C.S. §1964(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.S. §§ 1961-1968, grants standing to sue to any person injured in his business or property by reason of a violation of § 1962. The statute limits standing to plaintiffs whose injuries were both factually and proximately caused by the alleged RICO violation.

Business & Corporate Law > ... > Corporate Governance > Shareholders > General Overview

Civil Procedure > ... > Class Actions > Derivative Actions > General Overview

Antitrust & Trade Law > ... > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview

Civil Procedure > ... > Justiciability > Standing > General Overview

Criminal Law & Procedure > ... > Racketeering > Racketeer Influenced & Corrupt Organizations Act > General Overview

[HN3][] **Corporate Governance, Shareholders**

Where a claimed injury is derivative of another person's primary injury, the claimed injury is not proximately caused by the violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.S. §§ 1961-1968, violation and therefore there is no standing under the statute. For example, where a corporation is injured by a RICO violation, and therefore loses value, the corporation's shareholders lack standing to sue. A shareholder -- even the sole shareholder -- does not have standing to assert claims alleging wrongs to the corporation. Similarly, where a corporation is rendered insolvent due to a RICO violation, the corporation's creditors generally lack standing to sue because their claimed quo minus injury is derivative of the corporation's claims against the alleged RICO violations.

Business & Corporate Law > ... > Shareholder Actions > Actions Against Corporations > General Overview

[HN4][] **Shareholder Actions, Actions Against Corporations**

The less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors. Second, quite apart from problems of proving factual causation, recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries. And, finally, the need to grapple with these problems is simply unjustified by the general interest in deterring injurious conduct, since directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely.

Business & Corporate Law > Limited Liability Companies > General Overview

[HN5][] **Business & Corporate Law, Limited Liability Companies**

The structure of limited liability cannot lightly be disregarded at the behest of the beneficiaries of limited liability protection where it suits their interests, but then strongly asserted where it does not.

Civil Procedure > Sanctions > Baseless Filings > General Overview

Civil Procedure > Sanctions > General Overview

[HN6][] **Sanctions, Baseless Filings**

Under Fed. R. Civ. P. 11(c)(1)(A) a motion for sanctions must be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b).

Civil Procedure > Sanctions > Baseless Filings > General Overview

Civil Procedure > Sanctions > General Overview

<u>HN7</u>[ ]  **Sanctions, Baseless Filings**

<u>Fed. R. Civ. P. 11</u> sanctions should be imposed with caution.

**Counsel:** [*1] For PARIS PARTNERS, L.P., plaintiff: Robert A. Zito, Tanner Propp & Farber, New York, NY.

For ANTHONY RUSSO aka "Tony", ABEL RUSSO, defendants: Joel J. Spector, Spector, Scher & Feldman, New York, NY.

**Judges:** Peter K. Leisure, U.S.D.J.

**Opinion by:** Peter K. Leisure

## Opinion

### MEMORANDUM ORDER

LEISURE, *District Judge:*

This is a civil action for alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), <u>18 U.S.C. §§ 1961-1968</u>. Before the Court is defendants' motion to dismiss pursuant to <u>Fed. R. Civ. P. 12(b)(6)</u> and for sanctions. For the reasons stated below, the motion to dismiss is granted and the motion for sanctions is denied.

### BACKGROUND

Plaintiff Paris Partners, L.P., is a Delaware limited partnership which is the primary shareholder of Recovery Corporation of America, Inc. ("RCA"). RCA is a holding company of wholly-owned subsidiaries which contracted with Medical & Hazardous Waste Management Corporation ("MHW"). Defendants were officers and directors of MHW. Plaintiff's claim, in substance, is that defendants made fraudulent misrepresentations by mail and wire to certain persons, which caused RCA's subsidiaries to refrain from enforcing their contracts or collecting debts owed by MHW. In addition, these alleged misrepresentations caused some entity (RCA or one or more of its subsidiaries) [1] to negotiate to purchase MHW's assets, which led [*2] the entity or entities to believe that the debt of MHW would be satisfied by a setoff against the sales price. The causal chain linking the plaintiff to any fraudulent misrepresentations by the defendants is as follows: based on these misrepresentations, plaintiff advanced money to RCA, both in equity investment and loans; MHW was rendered insolvent and thus unable to pay its debts to RCA or any of RCA's subsidiaries; and therefore RCA subsidiaries were diminished in value, RCA was rendered virtually valueless, and plaintiff eventually sold its interest in RCA for a nominal amount. In separate actions in separate courts, RCA has sued MHW and recovered a judgment which it cannot enforce due to MHW's insolvency, and RCA subsidiaries have sued defendants based on the same alleged fraudulent misrepresentations as in the case at bar.

[*3] DISCUSSION

I. *Standard for a Motion to Dismiss*

<u>HN1</u>[ ] In deciding defendants' <u>Rule 12(b)(6)</u> motion to dismiss, the Court accepts as true the material facts alleged in the complaint and draws all reasonable inferences in plaintiff's favor. *See* <u>Kaluczky v. City of White Plains, 57 F.3d 202, 206 (2d Cir. 1995)</u>. A motion to dismiss must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974)</u>.

II. *RICO Standing*

<u>HN2</u>[ ] "RICO grants standing to sue to 'any person injured in his business or property *by reason of* a violation of section 1962 of this chapter.'" <u>In re American Express Co. Shareholder Litig., 39 F.3d 395, 399 (2d Cir. 1994)</u> (emphasis and alteration in original) (quoting

---

[1] The complaint and plaintiff's papers submitted in opposition to the motion refer to RCA and its subsidiaries collectively as "RCA." *See* Complaint P 3; Plaintiff's Memorandum of Law in Opposition at 4; Affidavit of David Tohir P 2. Thus it is impossible to determine from these documents precisely which entities contracted with MHW, which entities forbore from enforcing which of their rights, and which entities' agents were the targets of defendants' alleged fraudulent misrepresentations.

18 U.S.C. § 1964(c)). "This language limits standing to plaintiffs whose injuries were both factually and proximately caused by the alleged RICO violation." *Id.* (citing Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 265-68, 117 L. Ed. 2d 532, 112 S. Ct. 1311 (1992)). **HN3**[↑] Where a claimed injury is derivative [*4] of another person's primary injury, the claimed injury is not proximately caused by the RICO violation and therefore there is no standing under the statute. *See* Manson v. Stacescu, 11 F.3d 1127, 1133 (2d Cir. 1993) ("He does not have standing in his capacity as a creditor, shareholder, or employee of a corporation to assert a RICO claim for injuries that are derivative of those sustained by that corporation."), *cert. denied,* 130 L. Ed. 2d 206, 115 S. Ct. 292 (1994). For example, where a corporation is injured by a RICO violation, and therefore loses value, the corporation's shareholders lack standing to sue. *See* Rand v. Anaconda-Ericsson, Inc., 794 F.2d 843, 849 (2d Cir.), *cert. denied,* 479 U.S. 987, 93 L. Ed. 2d 582, 107 S. Ct. 579 (1986); *cf.* Jones v. Niagara Frontier Transp. Auth., 836 F.2d 731, 736 (2d Cir. 1987) ("A shareholder -- even the sole shareholder -- does not have standing to assert claims alleging wrongs to the corporation."), *cert. denied,* 488 U.S. 825, 102 L. Ed. 2d 50, 109 S. Ct. 74 (1988). Similarly, where a corporation is rendered insolvent due to a RICO violation, the corporation's creditors generally lack standing to sue because their claimed [*5] *quo minus* [2] injury is derivative of the corporation's claims against the alleged RICO violations. *See* Manson, 11 F.3d at 1130. *But cf.* Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1100-01 (2d Cir. 1988) (creditor had standing where directly injured in having to defend against frivolous suits), *cert. denied,* 490 U.S. 1007, 104 L. Ed. 2d 158, 109 S. Ct. 1642 (1989). [3]

[*6] The rationale for barring derivative plaintiffs is sound:

> First, **HN4**[↑] the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors. Second, quite apart from problems of proving factual causation, recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries. And, finally, the need to grapple with these problems is simply unjustified by the general interest in deterring injurious conduct, since directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely.

Holmes, 503 U.S. 258, 269-70, 117 L. Ed. 2d 532, 112 S. Ct. 1311 (citations omitted). Where the claim is derived from a RICO violation allegedly causing a person's insolvency, there is the added problem that the derivative suit might "be an attempt to circumvent the relative priority its claim would [*7] have in the directly injured victim's liquidation proceedings." Id. at 274. In addition, this Court notes that where the RICO violation is predicated on mail or wire fraud, the derivatively injured party seldom can allege reliance on the fraud and seldom is privy to the facts required to plead fraud with particularity. Therefore, objections to a complaint on the grounds that reliance on the fraud cannot be shown or that the plaintiff has failed to plead fraud with

---

[2] The fiction of *quo minus* was used to give jurisdiction to the court of exchequer as follows: the plaintiff claimed that he was a debtor of the king, and that the defendant has done him injury or damage by which he is less able to pay his debt to the king. Therefore, he alleges that the action concerns the king's debt and is properly heard in the court of exchequer. *See* Black's Law Dictionary 1130 (5th ed. 1979). Similarly, the creditor suing for RICO violations primarily doing injury to the corporate debtor suggests that the RICO violation concerns the creditor's debt, and therefore the creditor is a proper party to deter the defendant who has rendered the corporate debtor less able to pay his debt.

[3] In light of the Supreme Court's decision in *Holmes,* the continued vitality of *Bankers Trust* as a precedent for allowing creditor suits against those who have affected their debtor's insolvency is questionable. The Supreme Court, in discussing

the issue of creditors suing because the defendant's actions had left the debtor less able to pay, quoted Justice Holmes for the proposition that "the general tendency of the law, in regard to damages at least, is not to go beyond the first step." Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 271, 117 L. Ed. 2d 532, 112 S. Ct. 1311 (1992) (quoting Southern Pacific Co. v. Darnell-Taenzer Lumber Co., 245 U.S. 531, 533, 62 L. Ed. 451, 38 S. Ct. 186 (1918)). The Court then stated, "[plaintiff] tries to avoid foundering on the rule that creditors generally may not sue for injury affecting their debtors' solvency by arguing . . .," 503 U.S. at 272 n.19, which demonstrates that the general rule applies, and in *Holmes* itself caused the plaintiffs to founder. It is possible, although not certain, that the rule might have caused the creditor in *Bankers Trust* to founder as well. In any event, the doubt exhibited by the Supreme Court militates against a finding of RICO standing for creditors derivatively injured by the injury to their debtor absent extraordinary circumstances.

particularity may be alternate forms of objections to suit by a derivatively injured party, and vice versa.

The case at bar is an extraordinary attempt to turn a derivative injury into a RICO claim. RCA or its subsidiaries are injured because the debtor MHW was rendered insolvent by alleged looting by defendants. MHW is the primary injured party. Derivative of that injury is the injury to RCA or its subsidiaries for inability to collect on the debt. If this injury flows directly to the subsidiaries, then RCA's injury is derivative of this injury. In turn, plaintiff's injury is derived from the devaluation of its investment in RCA, yet another step removed from the primary injured party. Plaintiff's attempts to cast its **[*8]** injuries as direct and distinct from those suffered by RCA border on the frivolous. Cf. *Pappas v. Passias, 887 F. Supp. 465, 472 (E.D.N.Y. 1995)* ("The plaintiff's conclusory allegations of injury to pecuniary interest are clearly contrary to the detailed factual allegations that he pleads, which omit any reference to injury to business or property that he has sustained in his own right.")

Admittedly the natural persons whose money is at stake, and who are the ultimate decisionmakers for the various entities, may participate in the corporate structure solely as partners of plaintiff, but those who choose to erect these several tiers of limited liability entities cannot be heard to complain when the Court treats the entities each as distinct for purposes of determining whether they have standing to sue to protect the investment of the natural persons behind the structure. **HN5**[ ] The structure of limited liability cannot lightly be disregarded at the behest of the beneficiaries of limited liability protection where it suits their interests, but then strongly asserted where it does not. See *Manson, 11 F.3d at 1133 (2d Cir. 1993)* ("David Manson, however, chose to operate his business **[*9]** as a corporation to gain certain advantages. He cannot now avoid the consequences of the corporate structure.").

Based on the remote relationship of plaintiff's injuries to defendants, the Court finds that plaintiff lacks standing to assert a RICO claim and has therefore failed to state a claim upon which relief can be granted. The Court also notes that the complaint is defective in other respects, in that it fails to allege which subsection of section 1962 defendants have violated, as required, see *Atlantic Gypsum Co. v. Lloyds Int'l Corp., 753 F. Supp. 505, 511 (S.D.N.Y. 1990)*; it may have failed to allege legal reliance by plaintiff on any misrepresentations, see Defendants' Memorandum of Law in Further Support at 4, as required to state a RICO claim based on fraud, see *Metromedia Co. v. Fugazy, 983 F.2d 350, 368 (2d Cir. 1992)* (Kearse, J.), cert. denied, 124 L. Ed. 2d 662, 113 S. Ct. 2445 (1993); *County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1311 (2d Cir. 1990)*; *Red Ball Interior Demolition Corp. v. Palmadessa, 874 F. Supp. 576, 586-87 (S.D.N.Y. 1995)*; *Moeller v. Zaccaria, 831 F. Supp. 1046, 1054 (S.D.N.Y. 1993)*; it has obfuscated which **[*10]** entities were involved in which transactions by referring to RCA and its subsidiaries collectively as RCA, see *Fed. R. Civ. P. 8(a)(2)* (complaint shall contain "a short and *plain* statement of the claim" (emphasis added)); and it has failed to allege predicate acts of fraud with particularity as required by *Fed. R. Civ. P. 9(b)*, see *Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d Cir. 1993)*; *Naso v. Park, 850 F. Supp. 264, 274 (S.D.N.Y. 1994)*; *Wellington Int'l Commerce Corp. v. Retelny, 727 F. Supp. 843, 846 (S.D.N.Y. 1989)* (contents of the mailings must be pleaded to satisfy requirements of 9(b)). Because the complaint must be dismissed for lack of standing, these defects need not be exhaustively considered by the Court.

III. *Defendants' Motion for Sanctions*

**HN6**[ ] Under *Fed. R. Civ. P. 11*, a motion for sanctions must be made "separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b)." *Fed. R. Civ. P. 11(c)(1)(A)*. Defendants have not complied with these requirements and their request for sanctions is therefore denied. Even if defendants had complied, the Court would exercise its discretion not **[*11]** to impose sanctions because, although plaintiff's complaint is without merit under the law, the Court does not find it sufficiently frivolous to impose sanctions. See *Knipe v. Skinner, 19 F.3d 72, 78 (2d Cir. 1994)* **HN7**[ ] ("*Rule 11* sanctions should be imposed with caution.").

**CONCLUSION**

Plaintiff's complaint is HEREBY DISMISSED for failure to state a claim upon which relief can be granted. Defendants' motion for sanctions is HEREBY DENIED. Plaintiff is GRANTED leave to replead. The Court notes that the leave given is personal to plaintiff, Paris Partners, L.P., and does not extend to other distinct entities who may be potential claimants against defendants and who are not parties to the lawsuit. *But cf.* Plaintiff's Memorandum of Law in Opposition at 14 ("Plaintiff's counsel is authorized to substitute RCA as the plaintiff in this action in the event the Court

determines that Paris Partners, L.P. is insufficient to support standing in this action.").

**SO ORDERED**

New York, New York

December 14, 1995

Peter K. Leisure

U.S.D.J.

---

**End of Document**

Abigail Krueger