UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation, | Case No. 16-cv-1054 (DTS) |
| Plaintiff, | **Jury Trial Demanded** |
| v. | |
| FEDERAL INSURANCE COMPANY, an Indiana corporation and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation, | |
| Defendants. | |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW THAT ACE AMERICAN HAS INFRINGED FICO'S COPYRIGHTS

Pursuant to Federal Rule of Civil Procedure 50, Plaintiff Fair Isaac Corporation ("FICO") is entitled to judgment as a matter of law that Defendant ACE American Insurance Company ("ACE American") infringed FICO's copyrights.

Since 2016 Defendants have asserted that the acquisition event did not change the identity of the "Client" for purposes of interpreting Section 10.8 of the License Agreement. Prior to the litigation, Defendants contended the Client always had been and remained Chubb & Son:

- "Notwithstanding the acquisition, Chubb & Son, the contracting party to the Agreement, remains a viable legal entity within the Chubb Group of Insurance Companies' corporate structure and the contracting party to the Agreement. In short, ***Chubb & Son is still FICO's 'Client' as such term is defined in the Agreement and it is our position that no transfer and assignment of the Agreement has***

1

> *occurred."* (Declaration of Paige Stradley Ex. 1 at 1 (emphasis added).)[1]

- ***"The contracting party to the license agreement is and remains Chubb & Son, a division of Federal Insurance Company."*** (Ex. 2 at P-0094-002 (emphasis added).)

After litigation ensued, Defendants contended that the Client always had been and remained Federal. Indeed, in its summary judgment opposition brief Defendants stated:

> [T]he merger occurred at a level removed from Federal—the parent corporation of Federal changed from The Chubb Corporation (a holding company) to Chubb INA Holdings (a holding company). Federal itself remained the same following the merger. Thus ***there was no change to the identity of FICO's "Client."*** (Dkt. 507 at 42 (internal citations omitted and emphasis added).)

At all times leading up to trial, Defendants were steadfast that the Client to the License Agreement remained the same before and after the acquisition.

During opening statements, however, Defendants revealed a new theory—one that is foreclosed by their own prior admissions and one that no reasonable jury could accept. Despite having defended this case for seven years on the premise that the "Client" was and remained Federal before and after the acquisition, Defendants now assert that the post-acquisition Client should be viewed as ACE Limited later renamed Chubb Limited (hereinafter, "ACE Limited"):

> We know that Federal was acquired by ACE Limited. And you heard, FICO agrees, that acquisition was a deemed assignment. And the evidence will show it's an automatic assignment, not something you deem to paper. Who was the assignment to? Well, it was to the acquiring company, ACE

---

[1] Unless otherwise noted, all exhibits referenced herein are attached to the Declaration of Paige Stradley.

2

> Limited, which then became Chubb Limited because of the brand recognition.
>
> . . .
>
> As I showed you earlier, ACE limited, which quickly became Chubb Limited, stepped into Federal's shoes into the contract and became the client. Then, just like my sister obtains all the rights under my apartment lease if I assign it to her, ACE Limited, then Chubb Limited, had all the rights that Federal used to have under the Blaze license.
>
> And as we discussed earlier, the evidence will show that under the Blaze license agreement, the client, now ACE Limited and Chubb Limited, and its affiliates, could use Blaze. And if you go back to that organization chart we looked at before, you know that the evidence will show ACE American was an affiliate of ACE Limited and then Chubb Limited.

(Ex. 3 at 75:23-76:5, 80:22-81:10.)

As explained herein, this new theory is foreclosed by Defendants' binding judicial admission that the "Client" was and remained Federal. (Dkt. 507 at 42.) It is also foreclosed by the plain language of the License Agreement, including the language of Section 10.8—the "No Assignment" clause. No reasonable jury could find that ACE Limited became the Client following the acquisition. As Defendants previously admitted, the "Client" never changed. And whether the Client was Chubb & Son (a division of Federal) or Federal itself, it was never ACE Limited.

As such, ACE American had no rights under the License Agreement to use FICO's copyrighted Blaze Advisor software. It was not the "Client," and there is no dispute that it was not an "Affiliate" of Chubb & Son or Federal. There is also no dispute that the copyrighted software was used by ACE American from January 1, 2017 until the spring of 2020 when the last Blaze Advisor component was removed. Accordingly, there

3

is no fact issue for the jury on the issue of ACE American's liability for copyright infringement. FICO respectfully requests that the Court enter judgment as a matter of law that ACE American infringed FICO's copyrights.

**I.     FICO has valid copyright registrations covering Blaze Advisor, and ACE American copied the Blaze Advisor software.**

There is no dispute that FICO is the owner of valid copyright registrations covering its Blaze Advisor software, which include Version 7.0 (Registration No. TX 7-504-713) and Version 7.2 (Registration No. TX 7-776-962). FICO's copyright registrations in Version 7.0 and Version 7.2 of Blaze Advisor were admitted into evidence as P-1149 and P-1171, respectively. Further, Defendants stipulated that:

- FICO owns a valid copyright for Blaze Advisor Versions 7.0, 7.1, and 7.2;

- Blaze Advisor Version 7.1 was derived from FICO's Registered Copyright in Version 7.0; and

- Blaze Advisor Version 7.2 is derived from Blaze Advisor Version 7.1.

(Dkt. 1072 ¶¶ 41-43.)

It is also undisputed that ACE American used Blaze Advisor Version 7.1 for approximately three years without permission. (Ex. 4 at P-1007A-003, P-1007A-005, P-1007A-006, P-1007-009, P-1007-010 (identifying the removal of the last Blaze Advisor component as occurring on April 17, 2020); Dkt. 1072 at ¶¶ 31-40.) To use Blaze Advisor Version 7.1 ACE American necessarily copied Blaze Advisor Version 7.1 into ACE American's computer servers' random access memory (RAM). FICO employee Mr. Sean Baseman testified that Blaze Advisor resides in the RAM memory of the relevant customers' server (here, ACE American's) and that each time Blaze Advisor is accessed,

4

it is copied in the customers' (here, ACE American's) RAM. (Ex. 3 at 146:4-148:11.) Mr. Ramesh Pandey, ACE American Chief Architect for North America, confirmed the same and further testified that those servers are located in Raleigh, North Carolina. (*Id.* at 635:9-19; *see also*, *id.* at 635:22-636:18. Defendants have not presented any evidence to rebut Mr. Baseman's or Mr. Pandey's testimony.

The unauthorized loading of a copyrighted software program onto the RAM of a computer is an act of copyright infringement. *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518-19 (9th Cir. 1993); *Soc'y of the Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 55 (1st Cir. 2012); *Quantum Sys. Integrators, Inc. v. Sprint Nextel Corp.*, 338 F. App'x 329, 336-37 (4th Cir. 2009) ("Numerous district courts and at least two of our sister circuits have followed *MAI Systems* in holding that the loading of copyrighted software into RAM creates an infringing copy."); *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1149 (N.D. Cal. 2010) ("[T]he unauthorized loading of a software program onto the RAM of a computer constitutes an act of copying, and thus of copyright infringement.").

ACE American had no right to use the Blaze Advisor software under the License Agreement (Ex. 5), and its unauthorized use of FICO's copyrighted software is an unauthorized reproduction under the Copyright Act and constitutes copyright infringement.

## II. Defendants are bound by their prior judicial admission that, following the acquisition, Federal remained the Client under the License Agreement.

### A. Defendants' summary judgment brief unequivocally stated that the Client had not changed.

From the date of notice of breach until Opening Statement at trial, Defendants' position has always been that the acquisition of the Chubb Corporation did not change the identity of the Client of the License Agreement. On January 27, 2016, FICO's Associate General Counsel Thomas Carretta wrote to Chubb & Son providing them with notice of breach of the 2006 License Agreement. (Ex. 6 at P-090-001.) Among other things, Mr. Carretta cited Chubb & Son's breach of Paragraph 10.8 stemming from the acquisition of the Chubb Corporation by ACE Limited. (*Id.*) He further explained that FICO had granted a license to Chubb & Son, the defined "Client" in the License Agreement. (*Id.*)

On February 17, 2016, Chubb Deputy General Counsel Mr. Hopp took the position that the Client had not changed following the acquisition and no transfer and assignment had occurred:

> We are in receipt of your letter dated January 27, 2016, which alleges that a transfer and assignment of the above-referenced Agreement occurred as a result of the acquisition of The Chubb Corporation (the former parent entity of Chubb & Son) by ACE Limited, and that The Chubb Corporation failed to obtain FICO's consent to such alleged transfer and assignment in contravention of Section 10.8 of the Agreement. ==Notwithstanding the acquisition==, Chubb & Son, the contracting party to the Agreement, remains a viable legal entity within the Chubb Group of Insurance Companies' corporate structure and the contracting party to the Agreement. In short, ==Chubb & Son is still FICO's "Client" as such term is defined in the Agreement and it is our position that no transfer and assignment of the Agreement has occurred.==

(Ex. 1 at P-0091-001 (highlighting added).) That same position was re-articulated in a commercial proposal provided by Chubb to FICO on February 25, 2016:

6

> Although Chubb strongly disagrees with FICO's stated position, in a good faith effort to move the relationship forward, Chubb proposes that the parties renegotiate Chubb's current perpetual, unlimited, application-based enterprise license to downgrade and limit use of Blaze Advisor Development and Deployment to reflect Chubb's actual usage of fifteen (15) named applications of Blaze Advisor Deployment and one-hundred (100) seats of Blaze Advisor Development at no additional cost to Chubb (credit being given for all prior fees paid). All usage now and going forward does not and will not change from that permitted under the current license agreement and all usage remains with the same named applications. ==The contracting party to the license agreement is and remains Chubb & Son, a division of Federal Insurance Company.== Under this proposal, Chubb will continue to pay for maintenance at the current cost of $237,028 per year in accordance with the terms of the parties' current agreement.

(Ex. 2 at P-0094-002 (highlighting added).)

After FICO filed suit, Defendants took the position that the Client was Federal, not Chubb & Son, but remained consistent in their position that, upon the acquisition of the Chubb Corporation, the Client remained unchanged. In their opposition to FICO's motion for summary judgment, Defendants made their position crystal clear:

> [T]he merger occurred at a level removed from Federal—the parent corporation of Federal changed from The Chubb Corporation (a holding company) to Chubb INA Holdings (a holding company). Federal itself remained the same following the merger. Thus ***there was no change to the identity of FICO's "Client."***

(Dkt. 507 at 42 (internal citations omitted and emphasis added); *see also*, *id.* at 39-40 ("Clause two says that without 'such consent,' **Federal** cannot make expanded use of Blaze. . . . Clause two of sentence two thus says that without the consent for assignment in sentence one, **Federal** cannot expand use. The obvious implication is that without that consent **Federal** *can* still make the *same* or *less* use.") (bold added; italics and underlining in the original)).)

7

In its summary judgment Order, the Court also recognized, regardless of the acquisition event, that under Defendants' construction of Section 10.8, it was Chubb & Son or Federal, not some other entity, that would remain subject to the expanded use covenant and therefore the Client:

> These distinct obligations that are unique to deemed assignments, Federal contends, are reflected in the second clause of the second sentence of Section 10.8, which provides that "**[Chubb & Son]** shall make *no expanded use* of the Fair Isaac Products as a result of *any such event* unless and until Fair Isaac provides such written consent, which will not be unreasonably withheld." The plain language of this clause reflects that after a deemed assignment occurs—such as Chubb Corporation's merger—**Federal** is prohibited from making "expanded use" of Blaze Advisor without first obtaining FICO's written consent."

(Dkt. 731 at 47-48 (bold added; italics in the original).) The Court goes on to say: "Moreover, if Federal's interpretation were accepted, material fact disputes exist as to whether **Federal** expanded its use of Blaze Advisor after the Chubb Corporation merger." (Dkt. 739 at 49 (emphasis added).) The Court recognized that Chubb & Son or Federal remained the Client to the License Agreement following the acquisition event.

Following the Court's summary judgment Order, Defendants sought leave to Amend the Scheduling Order to file an additional motion for summary judgment. There, the Defendants repeatedly and emphatically asserted that the Client to the License Agreement is Federal: "**Federal's position—that it is the "Client" to the License Agreement** . . . ." (Dkt. 760 at 9 (emphasis added); *see also*, *generally*, *id.*) Similarly, Defendants Reply Memorandum in Support of its Supplemental Motion for Summary Judgment again stated that "**Federal is the 'Client' under the agreement** . . . ." (Dkt.

8

796 at 9.) Before Opening Statement, nowhere in the record did Defendants ever contend that ACE Limited became the Client after the acquisition.

Defendants' clear and unequivocal statement in its opposition to FICO's summary judgment motion is a binding judicial admission. *Holman v. Kemna*, 212 F.3d 413, 417 (8th Cir. 2000); *Postscript Enter. v. City of Bridgeton,* 905 F.2d 223, 227-28 (8th Cir. 1990); *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994); see also *Boogaerts v. Bank of Bradley*, 961 F.2d 765, 768 (8th Cir. 1992) ("It is a well-established principle that a party is responsible for the actions and conduct of his counsel") (quotations omitted). This judicial admission is conclusive and "acts as a substitute for evidence in that it does away with the need for evidence with regard to the subject matter of the judicial admission." *State Farm Mut. Auto. Ins. Co. v. Worthington*, 405 F.2d 683, 686 (8th Cir. 1968); *see also*, *Gonzalez v. Barr*, 929 F.3d 595, 598 (8th Cir. 2019) (judicial admission binding and conclusive and explaining that, absent a showing of "egregious circumstances," a litigant must establish ineffective assistance of counsel to negate counsel's binding act).[2]

---

[2] Retention of new counsel does not permit a party to assert new, undisclosed theories and take positions inconsistent with those previously taken by old counsel. *See Garrett v. Albright*, No. 4:06-CV-4137-NKL, 2008 U.S. Dist. LEXIS 142196, at *5 (W.D. Mo. Feb. 11, 2008) ("Although Albright's current counsel only appeared in August, 2007, the retention of new counsel cannot be permitted to excuse delay where the party previously knew of the claims it seeks to add.") (Ex. 8); *Garcia v. Monument Mgmt. Grp., L.L.C.*, No. 4:05 CV 3139, 2006 U.S. Dist. LEXIS 48532, at *4 (D. Neb. July 17, 2006) (denying leave to file amended answer to include new defense and explaining that "[a]though defendant seems to argue that the fact that its new counsel were not involved at those times, I find that argument unavailing") (Ex. 9).

B. **At trial Defendants offer a new theory, inconsistent with their prior judicial admission.**

Despite taking the position that Federal always had been and remained the Client for seven years of litigation, Defendants did an about face at trial. In Opening Statements Counsel for Defendants, for the first time, argued that Federal did not remain the Client and, instead, the acquisition caused ACE Limited to become the Client to the License Agreement:



(Ex. 3 at 75:23-76:5, 80:22-81:10.) Counsel told the jury that "the evidence will show it's an automatic assignment" and that ACE Limited "stepped into Federal's shoes and became the Client." (*Id.* at 75:23-76:5, 80:22-81:10.)

Defendants take this new and inconsistent position because they know they have a serious problem. If Federal was the Client and remained the Client following the acquisition as Defendants had espoused for years, ACE American would have no rights under the License Agreement because it is not an Affiliate of Federal as the term is defined in Amendment Two of the License Agreement. (Ex. 5 at J-001-019; *see infra*,

10

Section IV(A).) Only if ACE Limited is the Client could ACE American have rights (because it is an Affiliate of ACE Limited). That is exactly why Counsel for Defendants told the jury "now ACE Limited and Chubb Limited, and its affiliates, could use Blaze. And if you go back to that organization chart we looked at before, you know that the evidence will show ACE American was an affiliate of ACE Limited and then Chubb Limited." (*Id.* at 80:22-81:10.)

It is understandable why Defendants want to push this new theory, but that does not mean they can do so. Defendants' new theory is inconsistent with their prior positions taken throughout this litigation and is foreclosed by Defendants' binding judicial admission that the "Client" was and remained Federal. *Holman*, 212 F.3d at 417; *Postscript Enter.*, 905 F.2d at 227-28; *Purgess*, 33 F.3d at 144; *see also Boogaerts*, 961 F.2d at 768. Defendants should not be able to concoct a brand-new theory at trial, contradicted by their prior admission and inconsistent with the prior positions taken for seven years of litigation (and which FICO planned its case around), in an attempt to avoid what is undeniably infringement. Defendants are bound by their prior judicial admission and theory of the case.

**III. Defendants' new theory is inconsistent with the plain language of the License Agreement—ACE Limited did not become the Client to the License Agreement following its acquisition of the Chubb Corporation.**

Not only is Defendants' new theory foreclosed based on their binding judicial admission, but it also fails based on the plain language of the License Agreement. Under New York law, unambiguous contract language is interpreted by the Court. (Dkt. 731 at 11, 36-37 (explaining that ambiguity exists if the terms of the contract could suggest

11

more than one meaning when viewed objectively in the context of the entire agreement).) Here, Section 10.8 is unambiguous in its reference to the "Client"—a defined term that does not include ACE Limited.

### A. No actual assignment to ACE Limited occurred.

Counsel for Defendants told the jury "an automatic assignment" occurred. To the extent Defendants are arguing an actual assignment occurred, this cannot be. Section 10.8 prohibits an actual assignment or transfer of the License Agreement without the prior written consent of FICO. (Ex. 5 at ¶ 10.8.) Any such transfer or assignment, without first obtaining FICO's consent, is void and of no force or effect. (*Id.*) No actual assignment or transfer occurred.

### B. The License Agreement did not automatically assign rights to ACE Limited.

Because Section 10.8 prohibits an actual assignment or transfer of the License Agreement without prior written consent, Defendants claim that ACE Limited allegedly stepped into Federal's shoes via an automatic assignment. But this interpretation cannot be squared with the plain language of Section 10.8.

Section 10.8 addresses situations in which the Client undergoes a significant change in circumstances, including a merger or acquisition. In the event of a merger or acquisition, like the acquisition of the Chubb Corporation, the "event shall be deemed to be an assignment subject to this section . . . ." (Ex. 5 at ¶ 10.8.) In other words, such an event should be considered to be an assignment for purposes of applying the consent requirement of the "No Assignment" clause. Deeming such an event an assignment for

purposes of applying that clause is not the same as changing the identity of the "Client." Defendants' theory ignores and reads out the event is "deemed to be an assignment **subject to this section.**" (Ex. 5 at ¶ 10.8 (emphasis added).) The rights granted in other parts of the License Agreement are not "assigned" and the definition of "Client" remains unchanged.

This makes sense and is consistent with other related provisions in the License Agreement that clearly prohibit an automatic assignment or transfer of the License Agreement absent a mutually agreed amendment to the License Agreement. (*See* Ex. 5 at ¶¶ 2.1 (entitled License Grant to Fair Isaac Products, which makes the license itself "non-transferable"),  3.1 (entitled License Restrictions, which includes a representation and warranty that the Client shall not "assign, sublicense, lease, transfer or distribute" the software), 10.12 (entitled No Third Party Beneficiaries, which states that "Nothing in the Agreement is to be deemed to create any right or benefit in any person not a party to this Agreement").) A construction of Paragraph 10.8 that results in a complete and automatic conveyance of the entire License Agreement, without FICO's consent or knowledge to a party that is a stranger to the License Agreement, would render these provisions meaningless.

Taken to its logical conclusion, Defendants' argument would also result in ridiculous outcomes. For example, every time the Client, here Chubb & Son (FICO's position) or Federal (Defendants' position), "acquired" another entity, the License Agreement would automatically be assigned to that newly acquired entity—thereby depriving the Chubb & Son (FICO's position) or Federal (Defendants' position) of its

13

license rights. Section 10.8 and the rest of the License Agreement contemplate no such automatic transfers of title nor would such a proposition make any sense.

Nothing about Section 10.8 supports that an automatic assignment occurs upon acquisitions, mergers, reorganizations, or acquisition of business processes. Defendants' new theory must be rejected based on the plain language of Section 10.8. ACE Limited never became the Client under the License Agreement.

## IV.     ACE American infringed FICO's copyrights.

### A.     ACE American has no rights under the License Agreement.

The only path by which ACE American could have rights under the License Agreement is if ACE Limited became the Client following the acquisition. Because, as described above, ACE Limited did not become the Client to the License Agreement, ACE American has no rights under the License Agreement. No other paths give ACE American rights.

First, although the Parties dispute who the Client to the License Agreement is, no one contends that ACE American was ever the Client. (*See generally* Dkt. 1129.)

Second, ACE American is not an Affiliate of Chubb & Son or Federal. Amendment Two to the License Agreement allows use by the "Client and its Affiliates." (Ex. 5 at J-001-020.) Amendment Two defines the term "Affiliates" to mean "any other entity directly or indirectly controlled by Client, where 'control' means the ownership of more than 50% of the aggregate of all voting interests … in an entity." (*Id.*)

The parties agree that Chubb & Son has no "Affiliates" as defined in Amendment Two. (Dkt. 1072 at ¶ 5.) And, ACE American is not an "Affiliate" of Federal as defined

14

by Amendment Two. (Ex. 7 at P-0038-13; *see also id.* at P-038-009, P-038-010.) Neither party contends otherwise.

### B. ACE American used Blaze Advisor for approximately three years.

It is undisputed that ACE American used FICO's Blaze Advisor software for approximately three years. ACE American began using Blaze Advisor on January 1, 2017, and it continued using Blaze Advisor software until the last Blaze Advisor component was removed on April 17, 2020. (Ex. 3 at 1231:23-1232:1; Dkt. 1072 at ¶¶ 31-40; *see also*, Ex.) Because ACE American had no rights under the License Agreement during this three-year period, its use was unauthorized. Each use of the Blaze Advisor software resulted in copies of the software being made and constituted copyright infringement of FICO's registered copyrights. (*Supra*, Section I.)

## V. Conclusion

Defendants admitted to the Court that the acquisition event did not change the identity of the Client. They cannot now change course in a last-ditch attempt to avoid a finding liability. Their prior statement is a binding judicial admission. Moreover, Defendants' new theory is inconsistent with the plain meaning of Section 10.8. No reasonable juror could find that ACE Limited became the Client following the acquisition event.

Because ACE Limited never became the Client to the License Agreement and had no rights under the License Agreement, neither did its Affiliates including ACE American. ACE American had no rights under the License Agreement to use Blaze Advisor and is a naked infringer with no defense to FICO's claims of copyright

infringement. The Court should grant FICO's motion for judgment as a matter of law that ACE American has infringed FICO's copyrights.

Dated: March 6, 2023

        MERCHANT & GOULD P.C.

        /s/ Heather Kliebenstein
        Allen Hinderaker, MN Bar # 45787
        Heather Kliebenstein, MN Bar # 337419
        Paige S. Stradley, MN Bar # 393432
        Michael A. Erbele, MN Bar # 393635
        Joseph W. Dubis, MN Bar # 398344
        Gabrielle L. Kiefer, MN Bar # 0402364
        MERCHANT & GOULD P.C.
        150 South Fifth Street
        Suite 2200
        Minneapolis, MN 55402
        Tel: (612) 332-5300
        Fax: (612) 332-9081
        ahinderaker@merchantgould.com
        hkliebenstein@merchantgould.com
        pstradley@merchantgould.com
        merbele@merchantgould.com
        jdubis@merchantgould.com
        gkiefer@merchantgould.com

        *Attorneys for Plaintiff Fair Isaac Corporation*