# Exhibit 12


Positive
As of: March 6, 2023 8:44 PM Z

# Geelan v. Mark Travel, Inc.

United States District Court for the District of Minnesota

December 11, 2006, Decided

Civil No. 03-6322(DSD/JSM)

**Reporter**
2006 U.S. Dist. LEXIS 89863 *; 25 I.E.R. Cas. (BNA) 809

Steven Geelan, on behalf of himself and all others similarly situated, Michael Gray, on behalf of himself and all others similarly situated, Judith Chapman, on behalf of herself and all others similarly situated, Plaintiffs, v. Mark Travel, Inc., a corporation, Defendant.

**Prior History:** *Geelan v. Mark Travel, Inc., 319 F. Supp. 2d 950, 2004 U.S. Dist. LEXIS 9743 (D. Minn., May 24, 2004)*

## Core Terms

Travel, summary judgment, layoffs, employees, Airlines, affiliated, defendant argues, alter ego, hired, common ownership, personnel, affirmative defense, circumstances, vacation, factors, genuine, notice, summary judgment motion, tortious interference, defense motion, wage statute, de facto, unforeseeable, enterprise, policies, wages

**Counsel: [*1]** For Steven Geelan, on behalf of himself and all others similarly situated, Michael Gray, on behalf of himself and all others similarly situated, Judith Chapman, on behalf of herself and all others similarly situated, Plaintiffs: Brian F Leonard, Matthew R Burton, Thomas C Atmore, LEAD ATTORNEYS, Leonard O'Brien Spencer Gale & Sayre, Ltd, Mpls, MN; Scott A Johnson, Todd Maurice Johnson, LEAD ATTORNEYS, Johnson Law Group LLP, Minnetonka, MN; Kerry A Trapp, Leonard O'Brien Spencer Gale & Sayre, Ltd, Mpls, MN.

For Mark Travel, Inc., a corporation, Defendant: Charles F Webber, LEAD ATTORNEY, Faegre & Benson LLP, Minneapolis, MN; Dennis M Ryan, LEAD ATTORNEY, Faegre & Benson, Mpls, MN.

**Judges:** David S. Doty, Judge.

**Opinion by:** David S. Doty

## Opinion

### ORDER

This matter is before the court on defendant's motion for summary judgment pursuant to *Federal Rule of Civil Procedure 56*. Based upon a review of the file, record and proceedings herein, defendant's motion is granted in part.

### BACKGROUND

Sun Country Airlines, Inc. ("Sun Country") was a Minnesota-based carrier owned solely by William LaMacchia, Sr., ("LaMacchia") from 1997 to early 2002. On December 7, 2001, Sun **[*2]** Country laid off more than eight hundred employees. One month later, investors forced Sun Country into Chapter 7 involuntary bankruptcy, and in mid-March 2002, MN Airlines, LLC ("MN Airlines") purchased the "Sun Country Airlines" trade name and the majority of its tangible assets.

Among the employees laid off on December 7, 2001, were class plaintiffs Steven Geelan, a pilot, Judith Chapman, a flight attendant, and Michael Gray, a nonunion member. According to plaintiffs, Sun Country issued the layoffs without paying its employees earned vacation or severance benefits and without prior notice as required by the Workers Adjustment and Retraining Notification Act, *29 U.S.C. §§ 2101-2109* ("WARN Act"). In November 2003, Geelan and the subclass of pilots, Chapman and the subclass of flight attendants and Gray and the subclass of nonunion workers filed this class-action lawsuit against defendant Mark Travel, Inc. ("Mark Travel"), asserting that Mark Travel is responsible as an affiliated corporation for the Sun Country layoffs.

Mark Travel is a Milwaukee-based corporation that operates and plans travel tours and vacation packages. It is owned [*3] by LaMacchia's holding company, LaMacchia Enterprises, which purchased Mark Travel in May 2000. Between May 2000 and December 2001, Mark Travel worked extensively with Sun Country, buying seats on Sun Country flights as part of its vacation packages and eventually becoming the airline's biggest customer. For the majority of this period, until November 2001, three members of Mark Travel's board of directors sat on Sun Country's board. Mark Travel performed marketing services and handled reservation line calls for Sun Country, and the airline transferred its "Vacations by Sun Country" unit to Mark Travel. Mark Travel also assigned several of its employees to work at Sun Country, including vice president David Wade.

In spring of 2001, LaMacchia's son stepped down as Sun Country president. Sun Country hired David Banmiller to replace him. Banmiller later became Sun Country's CEO. By June 2001, Sun Country was not paying its vendors on a timely basis, and, at the direction of LaMacchia, Sun Country hired consultant Seabury Advisors ("Seabury") for financial advice. By August 2001, Sun Country was planning for bankruptcy and retained counsel to prepare a Chapter 11 filing.

The terrorist [*4] attacks of September 11, 2001, worsened Sun Country's financial outlook. Within weeks of September 11, Seabury prepared an action plan for Sun Country that recommended grounding nine of its aircraft by December. Officials at both Sun Country and Mark Travel anticipated Sun Country layoffs. Sun Country expected that Air Transportation Stabilization Board ("ATSB") funds from Congress could keep business going, but the eight million dollar payment it received in October 2001 was not enough. Instead, Sun Country relied on loans from LaMacchia and advance payments by Mark Travel to continue operations after September 11. By November 1, Mark Travel began booking seats on other airlines as a result of Sun Country's financial position. Just over a month later and without advance notice to its employees, Sun Country laid off over eight hundred workers.

Plaintiffs commenced this action against Mark Travel as a result of the layoffs, alleging Mark Travel is liable as an affiliated corporation for Sun Country's violations of the WARN Act. In addition, plaintiff Gray and the subclass of nonunion workers also bring state-law claims for alter ego, creditor control, tortious interference with contract [*5] and unpaid wages under Minnesota Statutes § 181.13. The court previously dismissed these claims as to plaintiffs Geelan and Chapman for jurisdictional reasons but reserved judgment as to Gray because he was not a union member. See Geelan v. Mark Travel, Inc., 319 F. Supp. 2d 950 (D. Minn. 2004). Defendant moves the court for summary judgment on all claims.

## DISCUSSION

### I. Summary Judgment Standard

The moving party in a motion for summary judgment will prevail if it demonstrates to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citing Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to [*6] be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a nonmoving party cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

### II. WARN Act Claims

Defendant argues that it is not the employer under the WARN Act responsible for the Sun Country layoffs. Alternatively, defendant asserts that even if it is subject to liability under the WARN Act, plaintiffs' WARN Act claims are barred by the Act's "unforeseeable circumstances" affirmative defense. In addition, defendant argues that plaintiff Geelan did not experience "employment loss" as defined by the WARN Act.

## A. Affiliated Corporate Liability

Congress passed the WARN Act to ease the impact of job loss by giving workers advance notice of layoffs to allow for transition to **[*7]** new employment. See *Vogt v. Greenmarine Holding, LLC, 318 F. Supp. 2d 136, 140 (S.D.N.Y. 2004)*. To achieve this goal, the Act mandates that employers give workers sixty days notice prior to a mass layoff. *29 U.S.C. § 2102*. The WARN Act defines an employer as "any business enterprise" that employs 100 or more employees. *Id. § 2101(a)*. Because such layoffs are often linked to a corporation's demise and leave workers with no recourse against their employer, in certain cases affiliated corporations can also be liable under the Act. See *Pearson v. Component Tech. Corp., 247 F.3d 471, 477 (3d Cir. 2001)*. To impose affiliated corporate liability, a plaintiff must establish that the two corporations are a "single business enterprise." *Id. at 482* (quotations omitted).

In evaluating affiliated corporate liability under the WARN Act, the court considers whether the two corporate entities "operated at arm's length." *Id. at 495*. The Department of Labor (DOL) issued regulations to guide the court's resolution of this question. See *20 C.F.R. § 639.3(a)(2)*; see also *Pearson, 247 F.3d at 483, 489-91* **[*8]** ("[T]he DOL factors are the best method for determining WARN Act liability because they were created with the WARN Act policies in mind."). Under the DOL regulations, the court evaluates five factors: (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source and (v) dependency of operations. *20 C.F.R. § 639.3(a)(2)*. No single factor is controlling, and all factors "need not be present" for liability to attach. *Vogt, 318 F. Supp. 2d at 142*. The court considers each of the five DOL factors in turn.

### 1. Common Ownership

Regardless of corporate formalities, common ownership is evident when a sole shareholder owns both entities. See *Local 2-1971 of PACE Intl Union v. Cooper, 364 F. Supp. 2d 546, 564 (W.D.N.C. 2005)*; *Vogt, 318 F. Supp. 2d at 142*. Although courts have accorded common ownership varying degrees of importance in determining the existence of a single enterprise, evidence of a common owner "count[s] in favor of liability." *Vogt, 318 F. Supp. 2d at 142*; *cf. Childress v. Darby Lumber, Inc., 357 F.3d 1000, 1006 (9th Cir. 2004)*. **[*9]**

Defendant argues that there is no common ownership in this case because it has never held stock in Sun Country and vice versa. Mark Travel's stock ownership, however, is not determinative. At the time of the terminations, LaMacchia, individually and as owner of LaMacchia Enterprises, was the sole shareholder of Mark Travel and Sun Country. (LaMacchia Dep. at 10-15.) Therefore, plaintiffs have established common ownership of the two corporations.

### 2. Common Directors and Officers

Under the common directors and officers factor, the court considers whether the two corporations "actually have the same people occupying officer or director positions," repeatedly transfer "management-level personnel" or have officers or directors of one company in "formal management" positions at the other company. *Pearson, 247 F.3d at 498*. In other words, this factor looks to whether certain individuals comprised the formal management team of each company at some point. *Id.*

In this case, three Mark Travel directors - LaMacchia, his wife Sharon LaMacchia and Peter Sommerhauser - were also Sun Country directors until November 1, 2001. During that time, LaMacchia served as president **[*10]** of Mark Travel and chairman of the board of Sun Country, and Peter Sommerhauser served as secretary of both corporations. Further, the LaMacchias and Sommerhauser comprised the entire board of directors of Mark Travel and held three of the five board of directors positions at Sun Country. (Def. App. at 157; Def. Ex. at 415, 413.) Thus, plaintiffs have established the two corporations had the same people as directors and officers.

### 3. De Facto Exercise of Control

The de facto exercise of control factor is met if the affiliated corporation was the "decisionmaker responsible for the employment practice giving rise to the litigation." *Pearson, 247 F.3d at 503-04*. This factor is often established where a business has "disregarded the separate legal personality" of an affiliated entity by directing the entity to act. *Vogt, 318 F. Supp. 2d at 144*. Evidence of such direction "alone might be strong enough to warrant liability." *Pearson, 247 F.3d at 496*. Other indications of de facto control are frequent reporting of one company's activities to management of the other and movement of employees between the

companies. *Childress, 357 F.3d at 1006*. **[*11]**

Defendant argues that it had no involvement in the layoffs at Sun Country because Sun Country CEO David Banmiller claims sole responsibility for the decision to furlough employees. (*See* Banmiller Dep. at 108: 9-11.) Plaintiffs, however, argue that Mark Travel made the decision to shut down Sun Country. To support this argument, plaintiffs cite Sun Country strategy reports that Seabury sent to Mark Travel officials, not Banmiller, an email exchanges in which Mark Travel personnel discuss "shutting down" Sun Country. (*See* Pls. Ex. at 236, 241, 328, 302.) Plaintiffs also point to the fact that Mark Travel employees, including Vice President for Strategic Planning David Wade, were assigned to Sun Country affairs while being kept on the Mark Travel payroll. (*See id.* Ex. at 525, 475.) Based on the foregoing, the court finds that questions of fact exist as to whether Mark Travel exercised de facto control over Sun Country.

**4. Unity of Personnel Policies From a Common Source**

The unity of personnel policies factor is concerned with the "centralized control of labor operations," including hiring and firing, paying wages, maintaining personnel records, benefits and participating **[*12]** in collective bargaining. *Vogt, 318 F. Supp. 2d at 142-43* (internal quotation omitted). Although plaintiffs offer no proof that Mark Travel and Sun Country shared daily labor operations or the same process for forming labor policies, they have raised, as discussed above, a genuine issue of material fact as to who made the decision to effect a mass layoff. Because this decision is the "single most important" personnel policy, *id. at 143*, the lack of other policy unity does not weigh decisively in defendant's favor.

**5. Dependency of Operations**

Under the final DOL factor, the court looks to the "daily functioning" of the two companies, focusing on aspects such as the sharing of administrative or purchasing services, interchanges of employees or equipment, or commingled finances. *See Pearson, 247 F.3d at 500*; *Vogt, 318 F. Supp. 2d at 143*. Dependency of operations may also be evident where a company derives a large percentage of activities and revenues from an affiliated company. *See Childress, 357 F.3d at 1006-07*.

Defendant argues that it did not have control over day-to-day operations at Sun **[*13]** Country. However, defendant assigned employees to Sun Country while keeping them on the Mark Travel payroll, suggesting an interchange of employees. (*See* Pls. Mem. Ex. at 525, 475.) Further, LaMacchia caused Mark Travel to loan him millions of dollars which he in turn loaned to Sun Country, suggesting commingling of finances. (Kleinberger Rep. 6.) Finally, by December 2001, defendant was responsible for over eighty percent of Sun Country's business. (Banmiller Dep. at 116:23-117:1.) Taken together, the court finds that questions of fact exist as to the dependency of operations between Mark Travel and Sun Country.

For all these reasons, following a consideration of the DOL factors set forth in *20 C.F.R. § 639.3(a)(2)*, the court finds that genuine issues of material fact exist as to whether Mark Travel and Sun Country operated at arm's length. Therefore, defendant is not entitled to summary judgment on the issue of affiliated corporate liability under the WARN Act.

**B. WARN Act Unforeseeable Circumstances Defense**

Defendant also moves for summary judgment based on the WARN Act's affirmative defense of unforeseeable business circumstances. This defense **[*14]** precludes liability if the layoff was prompted by business circumstances "not reasonably foreseeable" at the time that notice would have been required under the WARN Act. *See 29 U.S.C. § 2102(b)(2)(A)*; *Loehrer v. McDonnell Douglas Corp., 98 F.3d 1056, 1060 (8th Cir. 1996)*.

Pursuant to *Federal Rule of Civil Procedure 8(c)*, an affirmative defense must be set forth in the responsive pleading to give the opposing party notice and a chance to "develop evidence and offer arguments to controvert the defense." *Wolf v. Reliance Std. Life Ins. Co., 71 F.3d 444, 449 (1st Cir. 1995)*. A party "generally waives an affirmative defense" if it fails to assert that defense in the responsive pleading. *Clark v. Martinez, 295 F.3d 809, 815 (8th Cir. 2002)*. The court may nonetheless allow the affirmative defense to be pleaded at the summary judgment stage upon a finding that the delay would not prejudice the nonmoving party. *See Agarwal v. Sandy Dalal, Ltd., No. 8:03CV56, 2006 U.S. Dist. LEXIS 68871, 2006 WL 2621048, at *6 (D. Neb. Sept. 12, 2006)*.

Defendant did not raise the unforeseeable business **[*15]** circumstances defense in its February 2004 answer. Rather, it waited until its May 2006 summary judgment motion to first assert the defense. Accordingly, it waived the defense. Given the length of time defendant proceeded in this litigation without raising the defense and the fact that discovery has been completed, the court finds that allowing defendant to assert the defense at this stage in the proceeding would prejudice plaintiffs. Therefore, defendant's motion for summary judgment based on the affirmative defense of unforeseeable business circumstances is denied.

### C. Plaintiff Geelan's "Employment Loss"

Defendant also moves for summary judgment against plaintiff Steven Geelan, alleging that he did not experience "employment loss" as defined by the WARN Act. The Act gives a cause of action to any "aggrieved employee who suffers an employment loss as a result of [a mass] layoff." *29 U.S.C. § 2104(a)(1)*. Under the Act "employment loss" means, among other things, "a layoff exceeding 6 months." *Id.* *§ 2101(a)(6)*. Employees rehired by the terminating employer within six months are not eligible for WARN Act protection. *See Rifkin v. McDonnell Douglas Corp., 78 F.3d 1277, 1282 (8th Cir. 1996)*. **[*16]** The Act applies, however, to workers who lose their job but are hired by a new employer within the six-month period. *See* DOL Comments on *20 C.F.R. § 639.3*, *54 Fed. Reg. 16048*.

Defendant argues that because Sun Country Airlines hired Geelan in early March 2002, three months after he was terminated, he did not experience a layoff exceeding six months. Plaintiff maintains that Sun Country was not sold as a going concern, that MN Airlines merely purchased the rights to the "Sun Country" name and that MN Airlines was the company that hired Geelan on or before March 1, 2002. MN Airlines, however, had not purchased the Sun Country name at the time Geelan was hired. (Moratzka Aff. PP 4-5.) It was not a new employer that hired Geelan but rather Sun Country that rehired him within six-months of his December 2001 termination. Therefore, he did not experience "employment loss" as defined by the WARN Act, and the court grants defendant's summary judgment motion on Geelan's WARN Act claim.

### III. Plaintiff Gray's State-law Claims

Defendant moves for summary judgment on plaintiff Michael Gray's state law claims of alter ego, creditor control, tortious **[*17]** interference with contract and failure to pay wages under *Minnesota Statutes Section 181.13*.

### A. Alter Ego and Creditor Control Claims

Defendant argues that "alter ego" and "creditor control" are not cognizable causes of action in Minnesota, and plaintiff has offered no legal authority to the contrary. Alter ego and creditor control are theories of vicarious liability that require an independent underlying cause of action. *Geelan v. Mark Travel, Inc., No. A05-348, 2005 Minn. App. Unpub. LEXIS 583, WL 3372709, at *3 (Minn. Ct. App. Dec. 13, 2005)*; *see also Spartan Tube & Steel v. Himmelspach (In re RCS Engineered Prods. Co.), 102 F.3d 223, 226 (6th Cir. 1996)*; *Victoria Elevator Co. v. Meridian Grain Co., 283 N.W.2d 509, 512 (Minn. 1979)* (alter ego); *Lewis v. St. Cloud State Univ., 693 N.W.2d 466, 471 (Minn. Ct. App. 2005)* (creditor control). Plaintiff Gray has not pleaded an independent cause of action against defendant in conjunction with these claims. Therefore, the court grants defendant's motion for summary judgment on plaintiff Gray's claims of alter ego and creditor control.

### B. Tortious Interference with Contract

Defendant argues that plaintiff cannot establish **[*18]** a tortious interference with contract claim. In Minnesota, a tortious interference claim is based on five factors: "(1) the existence of a contract; (2) knowledge of the contract by the alleged wrongdoer; (3) intentional procurement of the contract's breach; (4) absence of justification; and (5) damages caused by the breach." *Metge v. Cent. Neighborhood Improvement Ass'n, 649 N.W.2d 488, 500 (Minn. Ct. App. 2002)*. A successful claim requires proof of all five elements. *Id.* The court finds that questions of fact exist as to whether Mark Travel tortiously interfered with plaintiff's employment contract. Therefore, summary judgment is not warranted.

### C. Minnesota Wage Statute

Defendant argues that because it is not plaintiff's employer it cannot be liable under *Minnesota Statutes § 181.13*. Pursuant to Minnesota law, an employer who discharges an employee is required to pay the discharged employee any wages he or she has actually

earned. *Minn. Stat. § 181.13(a)*; *Lee v. Fresenius Med. Care, Inc., 719 N.W.2d 222, 224 (Minn. Ct. App. 2006)*. Although the governing statute does not define "wages, [*19] " the term has been interpreted to include vacation time and other benefits accumulated under the terms of an employment contract and unpaid at the time of discharge. See *Lee, 719 N.W.2d at 224* (vacation benefits); *Kvidera v. Rotation Eng'g & Mfg. Co., 705 N.W.2d 416, 423-24 (Minn. Ct. App. 2005)* (bonuses).

Plaintiff's wage statute claims are based on his allegations that defendant controlled Sun Country. Defendant acknowledges that the DOL regulations guide resolution of plaintiff's wage statute claims to the extent the claims are derived from common law theories of vicarious liability. For the reasons previously stated regarding plaintiffs' WARN Act claims, the court finds that genuine issues of material fact exist concerning defendant's liability under the Minnesota wage statute. Therefore, defendant's motion for summary judgment on plaintiff Gray's wage statute claim is denied.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that:

1. Mark Travel's motion for summary judgment [Doc. No. 59] is granted in part;

2. Summary judgment is granted in favor of Mark Travel on Steven Geelan's WARN Act claim;

3. Summary judgment is granted in **[*20]** favor of Mark Travel on Michael Gray's alter ego and creditor control claims;

4. Summary judgment is denied on all other remaining claims.

Dated: December 11, 2006

s/ David S. Doty, Judge

United States District Court

**End of Document**

Abigail Krueger