

O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036-6537

T: +1 212 326 2000
F: +1 212 326 2061
omm.com

March 7, 2023

**Anton Metlitsky**
D: +1 212 326 2291
ametlitsky@omm.com

<u>BY ECF</u>

Honorable David T. Schultz
United States District Court
300 South Fourth Street
Minneapolis, MN 55415

Re:   *Fair Isaac Corp. v. Federal Insurance Co. et al.*, 16-cv-1054

Dear Judge Schultz:

I write on behalf of Defendants Federal Insurance Company and ACE American Insurance Company to respond to FICO's cross-motions for judgment as a matter of law as to the third-party consultant issue. Those motions should be denied.

**1.** FICO's first motion seeks a judgment that Federal breached Section 3.1(iv) of the License Agreement based on the use of Blaze Advisor by two third-party consultants. But as FICO recognizes, one of the elements it must prove to prevail on its breach of contract claim is that it was harmed by any breach by Federal. Dkt. 1144 at 34-36. And a reasonable jury could find that FICO suffered no harm here.

FICO's primary argument for harm suffered from third-party use of Blaze Advisor is that FICO terminated the License Agreement on this ground, yet Defendants continued to use Blaze Advisor for several years. *Id.* at 35-36. That argument makes no sense for two reasons. First, whether FICO's termination was proper is itself a question for the jury. And second, *Defendants'* use of Blaze Advisor after FICO's purported termination does not constitute harm from the *third-party consultants'* use of Blaze Advisor. To demonstrate that it was harmed by third-party-consultant use of Blaze Advisor, FICO must show some harm from that use itself.

FICO attempts to make the latter showing by asserting that it "lost the ability to understand and control who was accessing and using its software and ensure that such access was in accordance with the license grant and restrictions contained therein." *Id.* at 36. But while FICO's witnesses testified that preventing such harm was the purpose of Section 3.1(iv), FICO has offered no evidence that it actually suffered harm in this case. To the contrary, the only evidence in the record of the extent of third-party consultants' use of Blaze Advisor was that one DWS employee accessed a trial version of Blaze Advisor available on FICO's website and sought guidance from FICO on how to use it. P-1114-008; *see also* P-1113 (exchange between this employee and FICO support); P-1116 (public post on a FICO message board by this employee). And Mr. Waid admitted that when he learned of DWS's use of Blaze Advisor, he was "fine" with FICO



"continu[ing] to be responsive" to the DWS consultant, so long as FICO did "not make any statements regarding Chubb's rights to use the software." Tr. 1771-72. Presumably, Mr. Waid would not be "fine" with a continuing breach that was causing FICO harm, and a jury would be entitled to conclude that FICO suffered no harm at all from third-party consultant use of Blaze Advisor.

**2.** FICO also argues that it is entitled to judgment that it properly terminated the License Agreement based on third-party consultant use. But FICO's termination is proper only if any breach based on use by third-party consultants was material. Dkt. 731 at 44-45. FICO's entire argument for judgment on this ground is that, under Section 9.2(c) of the License Agreement, it could terminate for even a non-material breach of Section 3.1—*i.e.*, even if the breach does not go "to the root of the agreement between the parties [and] is so substantial that it defeats the object of the parties in making the contract.'" Dkt. 731 at 44-45 (quoting *VFS Fin., Inc. v. Falcon Fifty LLC*, 17 F. Supp. 3d 372, 379-80 (S.D.N.Y. 2014) (internal quotation marks omitted)).

FICO is wrong under the law of the case, *id.*, and for the reasons explained in Defendants' letter of March 5, Dkt. 1141. FICO is also wrong, moreover, for an additional reason made clear by its own opposition. As FICO's brief explains, Section 9.2(c)'s second sentence provides that "[e]ither party may terminate this Agreement by written notice to the other if the other party *materially* breaches any of the provisions of this Agreement relating to the protection of Confidential Information[.]" License Agreement § 9.2(c). And Mr. Waid himself testified at trial that a principal purpose of Section 3.1(iv) is, in fact, to protect confidential information: it is meant to keep the software out of third-party hands so as to prevent the third party from "leaking confidential information about the use of our software to a competitor." Dkt. 1144 at 31 (quoting Tr. 1367-38 (Waid)). So under FICO's own theory, and by the admission of the very FICO employee who has been negotiating, pricing, and setting the terms of Blaze licenses for the entirety of that product's existence, Section 3.1(iv) is a provision "relating to the protection of Confidential Information," and can thus only support termination if Federal "materially breache[d]" it.

As Defendants have argued, FICO has failed to offer any proof of materiality under the New York standard, so the Court should grant Defendants judgment as a matter of law that FICO's termination was improper on the ground that third-party-consultant use breached Section 3.1. Dkt. 1129 at 14-18. But even if Defendants were wrong about that, even FICO does not contend that any breach of Section 3.1 was material as a matter of law. So FICO's motion for judgment as a matter of law that it properly terminated the License Agreement on this ground must be denied.

Respectfully submitted,

/s/ Anton Metlitsky

Anton Metlitsky

cc:     Counsel of Record