

O'Melveny & Myers LLP  
Times Square Tower  
7 Times Square  
New York, NY 10036-6537  

T: +1 212 326 2000  
F: +1 212 326 2061  
omm.com  

March 7, 2023

**Anton Metlitsky**  
D: +1 212 326 2291  
ametlitsky@omm.com

**BY ECF**

Honorable David T. Schultz  
United States District Court  
300 South Fourth Street  
Minneapolis, MN 55415

Re:   *Fair Isaac Corp. v. Federal Insurance Co. et al.*, 16-cv-1054

Dear Judge Schultz:

I write on behalf of Defendants Federal Insurance Company and ACE American Insurance Company in opposition to FICO's motions for judgment as a matter of law under Rule 50(a).

1. **FICO is not entitled to judgment as a matter of law on its copyright infringement claim against ACE American.**

FICO is not entitled to judgment as a matter of law on its copyright infringement claim against ACE American because there is sufficient evidence for the jury to find that ACE American did not infringe FICO's copyright. If the jury agrees with Defendants' construction of Section 10.8, it could also find that ACE American did not violate FICO's copyright. FICO's contrary argument is wrong for several reasons.

**a.** A finding that Federal did not breach the License Agreement could support a finding that ACE American possessed a valid license to use Blaze Advisor. Section 10.8 of the License Agreement provides, in relevant part, that

> In the event of a change in control of Client, or if Client is merged with, acquired by or acquires another entity, or undergoes a reorganization or otherwise acquires the right to process the business of another entity, *each such event shall be deemed to be an assignment* subject to this section, and the Client shall make no expanded use of the Fair Isaac Products unless and until Fair Isaac provides such written consent, which will not be unreasonably withheld.

J-001 (emphasis added). Under this provision, the Chubb Corporation's—and hence Federal's—acquisition by ACE Limited (renamed Chubb Limited after the acquisition) resulted in a deemed assignment of rights (*i.e.*, assignment as a matter of law) under the License Agreement to ACE



Limited, the acquiring entity.[1]  *See* Dkt. 1072 ¶¶ 9-19.  The jury could conclude that ACE Limited thus became the Client under the License Agreement and gained the right to use Blaze Advisor without FICO's prior consent, so long as that use did not expand.  That necessarily means that ACE Limited's "Affiliates"—*i.e.*, its direct or indirect subsidiaries, including ACE American, Dkt. 1072 ¶ 17—also gained the right to use Blaze Advisor.  *See* J-001-020 (granting "Client and its Affiliates" the right to use Blaze Advisor and defining "Affiliates" as "any other entity directly or indirectly controlled by Client").

Consequently, if the jury finds in Defendants' favor on FICO's contract claims, it could also find that the deemed assignment of rights to ACE Limited upon its acquisition of Chubb Group (and thus Federal) did not require FICO's consent, and that FICO therefore lacked a valid basis to terminate the License Agreement.  It would thus follow that ACE Limited was assigned Federal's rights under the original agreement, and ACE American, as an Affiliate of ACE Limited, possessed a right to use Blaze Advisor.  The copyright infringement claims against both Federal and ACE American would fail.

FICO argues that the first sentence of Section 10.8—"Neither party shall, without the prior written consent of the other party, assign or transfer this Agreement, or any part thereof"—means that no assignment of rights under the License Agreement was possible without FICO's prior written consent.  Dkt. 1149 at 12-13.  But that is FICO's theory.  If FICO persuades the jury of that theory, then the jury will not likely find in Federal's favor on the contract claims, and, in that event, it can consider whether Federal and ACE American are liable for copyright infringement.  On the other hand, if Defendants persuade the jury that the acquisition did not cause a violation of Section 10.8, then the jury could conclude there has been a deemed assignment—meaning a transfer of rights from Federal to the acquiring entity that took over control of Federal (*i.e.*, ACE Limited).  *See* P-0090 (asserting that the assignment at issue was to Chubb Limited).

FICO's main argument to the contrary is that Defendants are foreclosed from making this argument because, in their summary judgment opposition, Defendants argued that Federal did not undergo a change of control following the merger—and thus that Federal remained the "Client" under the Agreement—as part of a broader argument that the ACE American acquisition did not trigger Section 10.8.  Dkt. 507 at 38-42; *see* Dkt. 1196 at 9.  FICO calls this a "binding judicial admission."  *Id.*  But legal arguments made in a summary judgment brief are not judicial admissions.  *In re Motors Liquidation Co.*, 957 F.3d 357, 360 (2d Cir. 2020) (judicial admissions are "formal statement[s] of fact[,]" not "legal arguments made to a court").  It is true that a party could be estopped from making a later, inconsistent arguments if a court accepted the earlier argument.  *See United States v. Hamed*, 976 F.3d 825, 829 (8th Cir. 2020) (party estopped from making an argument inconsistent with a prior argument only when the "party has succeeded in persuading a court to accept that party's earlier position").  But here, not only did the Court not accept Defendants' legal argument, but it found that the acquisition *did* trigger Section 10.8.  Dkt. 731 at 46, 48-49.  Nor is there any inconsistency between Defendants' arguments here and at summary judgment.  Defendants argument at summary judgment was that Federal remained the

---

[1] As Thomas Carretta testified at trial, "Chubb & Son is a division of Federal, which is a corporation owned by Chubb Corporation; and as a result of the merger, it was now owned by Chubb Limited."  Trial Tr. 878.



"Client" *because there was no change of control*. This implies that had there been a change in control (as the Court held there had been), then Federal would no longer have been the "Client" under Defendants' earlier position. In any event, Defendants are not estopped from pursuing their current theory, since the Court did not adopt their argument at summary judgment. What's more, the parties have *stipulated* to all the facts underlying Defendants' argument that rights under the contract were deemed assigned to ACE American after the acquisition, highlighting the absurdity of the claim that Defendants are bound by their prior view of whether Federal underwent a change in control. *See* Dkt. 1072 at 9-19.[2]

Indeed, FICO even appears to *agree* with Defendants' argument in its trial brief, explaining that the acquisition was "an event deemed to be an assignment." Dkt. 1003 at 1.[3] But an assignment must be from one party to another, and an assignment upon a change of control could only be from the acquisition target to the acquiror. Thus, FICO's position does not appear to be any different than Defendants'. And it is implausible that Defendants are foreclosed from making an argument that aligns with FICO's.

**b.** Even if Defendants were somehow foreclosed from arguing that a change of control occurred when ACE Limited acquired Chubb Corporation, FICO's copyright claim would fail for two additional reasons.

First, ACE American's takeover of Federal's operations in January 2017, Trial Tr. 1231-32 (testimony of John Taylor describing the changeover from Federal to ACE American), would certainly count as a "reorganization" under the License Agreement, again triggering the "deemed assignment" provision. J-001 § 10.8. The jury could find, again, that the effect would be to pass Federal's rights under the contract to ACE American.

Second, and in the alternative, when ACE American took control of Federal's operations in January 2017, it assumed Federal's rights under the contract. Trial Tr. 1231-32. Even if this transfer of contractual rights was not a "deemed assignment" but a breach of Section 10.8's first sentence, a jury could easily conclude that it was not a material breach—Federal's operations stayed the same; the only change was that all of Federal's employees became ACE American

---

[2] The other purported "judicial admissions" FICO identifies are equally unpersuasive. First, Andrew Hopp's and Tamra Pawloski's view that the identity of the Client did not change after the acquisition, Dkt. 1149 at 6-7, are, as statements made before litigation, plainly not judicial admissions. And to the extent they have any bearing on how rights were assigned after a change of control under Section 10.8, that is a question for the jury. Second, Defendants' statements in their supplemental summary judgment papers, *id.* at 8, plainly refer to Defendants' position that Federal was the Client at the time it entered into the License Agreement. And third, it goes without saying that the Court's statements about the identity of the Client, *id.*, are not attributable to Defendants.

[3] It would not change the analysis if the assignee under Section 10.8 were ACE INA Holdings, Inc., not Ace Ltd. ACE American is a subsidiary of ACE INA Holdings, Inc., and ACE Ltd. (now Chubb Ltd.). *See* Dkt. 1072 at 9-19.



employees.  *Id.*  That sort of paper reorganization worked no material change to the parties' relationship and would not have furnished a basis for terminating the License Agreement.

For these reasons, FICO's motion for judgment as to its copyright claim against ACE American should be denied.

**2.     FICO is not entitled to judgment as a matter of law on the ground that Defendants insufficiently alleged the damages FICO's breach of contract caused them.**

FICO is likewise not entitled to judgment as a matter of law on the ground that Defendants insufficiently alleged their damages in connection with their counterclaims.

In their operative counterclaims, Defendants alleged that "FICO's breach of the Agreement damaged Defendants in an amount to be determined at trial[,]" Dkt. 137 ¶ 21, and that FICO's breach of the covenant of good faith and fair dealing damaged Defendants "in an amount to be proven at trial[,]" *id.* ¶ 27.  Defendants have done exactly that.  First, there is sufficient evidence for the jury to find that Federal suffered a quintessential contract harm—it was deprived of the benefit of its bargain by FICO's improper termination.  Federal purchased a perpetual, global, enterprise-wide Blaze Advisor license for $1.3 million dollars.  FICO improperly purported to terminate that contract less than a decade into its existence.  The jury has sufficient evidence to make a non-speculative award of damages to make Federal whole for that breach.  *Haulage Enters. Corp. v. Hempstead Res. Recovery Corp.*, 426 N.Y.S.2d 52, 54 (N.Y. App. Div. 1980) ("improper termination" causes "damages [that] are readily cognizable").  The evidence also shows that FICO's unjustified termination harmed Federal by placing it in immediate legal jeopardy under the copyright laws.  *Cf. White River Amusement Pub, Inc. v. Town of Hartford*, 481 F.3d 163, 168 (2d Cir. 2007) (recognizing that the threat of legal jeopardy is legally cognizable harm).

To the extent FICO argues that Defendants have insufficiently quantified their damages, that is wrong.  The jury can reasonably determine the value of the remainder of a $1.3 million perpetual license that was improperly terminated.  And, in any event, judgment as a matter of law would still be inappropriate even if damages on this claim could not be quantified.  That is because under New York law, "[n]ominal damages are always available[.]"  *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 95 (1993).  Consequently, it is a "familiar rule" that a breach of contract complaint failing sufficiently to allege damages is "not demurrable."  *Gause v. Commonwealth Tr. Co.*, 97 N.Y.S. 1091, 1094 (N.Y. App. Div. 1906); *accord Brian E. Weiss, DDS, PC v. Miller*, 166 A.D.2d 283, 283 (1st Dep't 1990) ("[I]t is . . . well settled that nominal damages will be awarded to a plaintiff where the law recognizes a technical invasion of his right or a breach of defendant's duty, but where the plaintiff has failed to prove actual damages or a substantial loss or injury to be compensated."); *Quik Park West LLC v. Bridgewater Operating Corp.*, 189 A.D.3d 488, 489 (1st Dep't 2020) ("The trial court correctly concluded that plaintiffs failed to prove actual damages and were entitled to nominal damages only."); 36 N.Y. Jur. 2d Damages § 4 ("[I]f the plaintiff establishes the making of a contract and a breach thereof, he or she is entitled to at least nominal damages, even though his or her complaint fails to allege damages or states an erroneous



measure of damages or the breach of contract caused no loss or the amount of the loss cannot be proven with sufficient certainty.").

FICO makes two arguments to the contrary. One is that the only evidence of harm in the trial record was ACE American's and not Federal's, but that is wrong. At least between the termination and ACE American's takeover of Federal in January 2017, Federal suffered harm for the reasons explained above. Also, FICO points to an interrogatory response in which Defendants described their damages as attorneys' fees and costs and argues that this requires dismissal. But that argument is wrong for three reasons.

*First*, as just explained, a plaintiff need not quantify the amount of damages at all to be entitled to nominal damages, so it is irrelevant that an interrogatory response stated a measure of damages that is not recoverable. Again, Defendants pleaded and offered proof at trial that they suffered harm from FICO's breaches, so Defendants they are entitled at the very least to nominal damages.

*Second*, and in any event, FICO's motion comes far too late. FICO's interrogatory-based argument is not based on a failure of proof, so it is not an appropriate motion under Rule 50(a)—that rule only allows for judgment if a "reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," Fed. R. Civ. P. 50(a), and Defendants offered more than sufficient evidence that Federal was harmed by FICO's breach, *see supra* at 3-4. And FICO does not identify any other basis on which it would be entitled to judgment—or why it waited until the day before the close of evidence at trial, when it has had Defendants' interrogatory response for nearly six years. A motion at the end of trial is far too late to raise a ground for dismissal other than the insufficiency of the trial evidence.

*Third*, and relatedly, when an issue is "tried by the parties' . . . implied consent, it must be treated in all respects as if raised in the pleadings." Fed. R. Civ. P. 15(b)(2). Here, as noted, FICO waited to raise this objection until Defendants' counterclaims were all-but fully tried—and, as noted, nearly six years after the basis for this motion was clear. But by failing to object to evidence and testimony regarding Defendants' damages, FICO has consented to this question's entry into the case. Moreover, the Rule permits a party to "move—at any time, even after entry of judgment—to amend the pleadings to conform them to the evidence and raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue." *Id.*; *see Kim v. Nash Finch Co.*, 123 F.3d 1046, 1062 (8th Cir. 1997). To the extent the Court finds it necessary, Defendants reserve the right to file such a motion but it is unnecessary for the reasons stated above.

Respectfully submitted,

/s/ Anton Metlitsky

Anton Metlitsky

cc:   Counsel of Record