**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Fair Isaac Corporation,                                   Case No. 16-cv-1054 (DTS)

      Plaintiff,

                                         **JURY INSTRUCTIONS AT**
v.                                                        **END OF TRIAL**

Federal Insurance Company,
ACE American Insurance Company,

      Defendants, Counter Claimants,

v.

Fair Isaac Corporation,

      Counter Defendant.

Members of the jury, the instructions I gave at the beginning of the trial and during the trial are still in effect. Now I am going to give you additional instructions.

You have to follow all of my instructions—the ones I gave you earlier, as well as those I give you now. Do not single out some instructions and ignore others, because they are all important. This is true even though I am not going to repeat some of the instructions I gave you at the beginning of or during the trial.

You will have copies of the instructions I am about to give you now in the jury room. Remember, you have to follow all instructions, no matter when I give them, whether or not you have written copies.

**BURDEN OF PROOF**

You must decide whether certain facts have been proved by the greater weight or preponderance of the evidence. A fact has been proved by the greater weight of the evidence, if you find that it is more likely true than not true. You decide that by considering all of the evidence and deciding what evidence is more believable.

You have probably heard the phrase "proof beyond a reasonable doubt." That is a stricter standard than "more likely true than not true." It applies in criminal cases, but not in this civil case; so put it out of your mind.

Eighth Circuit Civil Jury Instructions, 3.04.

## CREDIBILITY OF WITNESSES

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness said, or only part of it, or none of it.

You may consider a witness's intelligence; the opportunity the witness had to see or hear the things testified about; a witness's memory, knowledge, education, and experience; any reasons a witness might have for testifying a certain way; how a witness acted while testifying; whether a witness said something different at another time; whether a witness's testimony sounded reasonable; and whether or to what extent a witness's testimony is consistent with other evidence you believe.

In deciding whether to believe a witness, remember that people sometimes hear or see things differently and sometimes forget things. You will have to decide whether a contradiction is an innocent mis-recollection, or a lapse of memory, or an intentional falsehood. That may depend on whether it has to do with an important fact or only a small detail.

Eighth Circuit Civil Jury Instructions, 3.03.

3

**IMPEACHMENT**

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something or has failed to say or do something that is inconsistent with the witness's present testimony.

If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness's other testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

O'Malley, Grenig & Lee, 3 Fed. Jury Prac. & Instr. § 105:04 (6th ed. 2022)

**EXPERT OPINION**

You have heard testimony from several expert witnesses in this case—Neil Zoltowski, R. Bickley ("Bick") Whitener, William McCarter, and W. Christopher ("Chris") Bakewell—all of whom testified to their opinions and the reasons for those opinions.

You should judge this opinion testimony just as you would any other testimony. You may accept it or reject it and give it the weight you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all other evidence in this case.

Eighth Circuit Civil Jury Instructions, 3.05.

**DEPOSITION TESTIMONY**

Testimony has been presented to you in the form of a deposition. A deposition is the recorded answers a witness made under oath to questions asked by lawyers before trial. The deposition testimony you have seen has been electronically videotaped and that recording played for you. You should consider the deposition testimony and judge its credibility as you would that of any witness who testifies here in person.

Eighth Circuit Civil Jury Instructions, § 2.14 (2021)

**CORPORATE REPRESENTATIVE TESTIMONY**

During the trial you heard testimony from witnesses who appeared in their capacity as the parties' corporate designee. Those witnesses were authorized to speak on behalf of the organization about information known to the organization. Those witnesses were standing in the shoes of the organization and were not testifying as individual persons. The following witnesses were designated to testify as their corporate representatives:

- Claudio Ghislanzoni

- Henry Mirolyuz

- John Taylor

- William Waid

Fed. R. Civ. P. 30(b)(6).

**LIMITING INSTRUCTION: EXHIBIT P-1116**

Exhibit P-1116 was introduced for a limited purpose. It is to be used only as evidence of when and how Mr. Waid learned of DWS's access to Blaze Advisor. You may only consider Exhibit P-1116 for that purpose.

**OTHER SOFTWARE LICENSE AGREEMENTS**

Some of the exhibits introduced during trial are software licensing agreements between FICO and companies other than Federal. These agreements have been introduced for a limited purpose. You may consider the agreements for whatever value they may have in your decisions about the hypothetical license negotiation (which you will hear about shortly). The agreements may also be used to illustrate other language that the parties might have used in their agreement. The agreements however are not evidence of the parties' mutual intent as to the meaning of the Software License Agreement.

**DEMONSTRATIVE SUMMARIES NOT RECEIVED AS EVIDENCE**

Certain charts and summaries have been shown to you in order to help explain the facts disclosed by the books, records, or other underlying evidence in the case. Those charts or summaries are used for convenience. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts shown by the evidence in the case, you should disregard these charts and summaries and decide the facts from the books, records, or other underlying evidence.

Eighth Circuit Civil Jury Instructions, 2.11.

## BREACH OF CONTRACT

As you have heard, FICO seeks to recover damages for breach of contract. FICO had a contract with Federal (the License Agreement) that set the terms under which Federal could use FICO's Blaze Advisor software. FICO claims that Federal breached the contract by allowing unauthorized persons or entities to use the software, by failing to obtain consent for the continued use of Blaze Advisor after the merger, or by continuing to use Blaze Advisor after FICO terminated the Agreement. Federal claims that it did not breach the Agreement. It claims the merger did not violate Section 10.8 of the Agreement, that any use by unauthorized persons or entities was not a breach, and that FICO's termination of the Agreement was ineffective and was itself a breach of the License Agreement by FICO.

The party who claims breach of contract has the burden of proving, by a preponderance of the evidence, that it had a contract with the other party, that it did what it was required to do under the contract, that the other party breached the contract by not doing what it was required to do under the contract, and that the non-breaching party sustained damages because of the other's breach.

If you decide that Federal breached the License Agreement in any of the ways FICO has alleged, you will find for FICO on its breach of contract claim and you will go on to consider FICO's damages against Federal. If you decide that Federal did not breach the License Agreement, you will find for Federal on FICO's breach of contract claim.

If you decide that FICO breached the License Agreement as Federal has alleged, you will find for Federal on its breach of contract counterclaim and you will go on to

consider Federal's damages. If you decide that FICO did not breach the License Agreement, you will find for FICO on Federal's breach of contract counterclaim.

In this case the parties agree that the License Agreement was a contract. It is for you to decide what the contract required of both parties, whether either party or both of them failed to do what they promised in their contract, and the extent of damages suffered due to any breach that you find.

New York Pattern Jury Instructions 4:1; *see also Fischer v. Mandell, LLP v. Citibank, N.C.*, 632 F.3d 793, 799 (2d Cir. 2011); *Guzman v. Ramos*, 191 A.D.3d 644 (2d Dept. 2021).

**BREACH OF CONTRACT: MATERIALITY**

A breach is material if it substantially defeats the purpose of the agreement or where a party fails to perform a substantial part of the agreement, the performance of which was the initial inducement for entering the agreement. A material breach is one that goes to the root of the agreement between the parties. Performance by the non-breaching party is excused only if the breach is material, or if the contract provides otherwise. Where a breach is material, the non-breaching party is justified in terminating the contract. Where a breach is not material, the non-breaching party may be entitled to damages but is not entitled to terminate the contract, unless the contract specifically allows for termination without a material breach.  "Both parties may be guilty of breaches, each having a right to damages."

If you find that Federal breached the license agreement, FICO was allowed to terminate the License Agreement if that breach was material or was expressly permitted by the contract. For Federal's counterclaim, if you find that FICO breached the License Agreement, Federal was only excused from performing under contract if that breach was material.


*In re Buffalo Schools Renovation Prog.*, 50 N.Y.S.3d 24 (Sup. Ct. Erie Cnty. 2016); *Awards.com v. Kinko's, Inc.*, No. 603105/03, 2006 WL 6544391, at *5 (Sup. Ct. NY Cnty. 2006); *Frank Felix Assocs. V. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997); *United Air Lines, Inc. v. Austin Travel Corp.*, 867 F.2d 737, 741 (2d Cir. 1989); *Lanvin Inc v. Colonia, Inc.,* 739 F.Supp 182, 195 (S.D.N.Y. 1990); *Process Am. Inc, v. Cynergy Holdings, LLC*, 839 F.3d 125 (2d Cir. 2016); 4 Corbin on Contracts § 946, at 911 (1951).

**TERMINATION**

Federal contends FICO breached the license agreement when it terminated the agreement without justification. If a party terminates an agreement without justification, that termination constitutes a material breach. FICO contends it properly terminated the Agreement.

*Lanvin Inc v. Colonia, Inc.,* 739 F.Supp 182, 195 (S.D.N.Y. 1990).

## CONSTRUCTION OF THE LICENSE AGREEMENT

You will see references in the documents to a claim by FICO that the License Agreement at issue in this case was limited to the territory of the United States. The Court has previously determined that "the [Blaze Advisor] License Agreement unambiguously lacks a geographic restriction on the installation or physical location of Blaze Advisor." Accordingly, this "territory claim" is not a valid legal basis upon which FICO could terminate the license agreement.

Docket No. 731.

## CONSTRUCTION OF THE LICENSE AGREEMENT

As I have previously instructed you, interpreting the License Agreement is for you to decide. This is true except when the Court has found that the agreement must be interpreted as a matter of law. The Court has made two such findings in this case.

First, you will see references in the documents to a claim by FICO that the License Agreement at issue in this case was limited to the territory of the United States. The Court has previously determined that "the [Blaze Advisor] License Agreement unambiguously lacks a geographic restriction on the installation or physical location of Blaze Advisor." Accordingly, this "territory claim" is not a valid legal basis upon which FICO could terminate the license agreement.

Second, you have heard testimony regarding the definition of "Client" in the License Agreement. The Court has determined that as a matter of law the client "Chubb and Sons, a division of Federal Insurance Company" means that the "Client" is Federal Insurance Company.

Docket No. 731.

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

Every contract includes an implied covenant of good faith and fair dealing. This means that, even though it is not specifically written in the contract, it is understood that each party must act in good faith and deal fairly with the other party in performing under the contract. Under this covenant, the parties promise not to do anything that will injure the other party, including not doing anything that will prevent the other party's performance. In this case Federal has alleged that FICO breached the implied covenant of good faith and fair dealing by withholding consent to Federal's continued use of Blaze Advisor after the merger. Federal has the burden of proof on this claim.

*511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496 (2002); *Rooney v. Slomowitz*, 11 A.D.3d 862 (3d Dept. 2004). *Tompkins Fin. Corp. v. John M. Floyd & Assocs., Inc.*, 144 A.D.3d 1252 (3d Dept. 2016); *Wieder v. Skala*, 609 N.E.2d 105 (1992).

**COPYRIGHT INFRINGEMENT**

On FICO's claim for copyright infringement, FICO has the burden of proving by a preponderance of the evidence that:

1.    FICO is the owner of a valid copyright (this element is established) and

2.    Defendants used the copyrighted work without permission.

3B Fed. Jury Prac. & Instr. § 160:69 (6th ed.)

**PROOF OF DAMAGES**

The party seeking damages must prove those damages were caused by the other party's wrongdoing. For example, in FICO's breach of contract claim, FICO must prove its damages were caused by Federal's breach. In Federal's breach of contract claim, Federal must prove its damages were caused by FICO's breach. A party asking for damages must prove the nature, extent, duration and consequences of the alleged harm.

Damages must be proven with reasonable certainty. You may not award damages that are speculative—that is, damages that might be possible but are based solely on guesswork. The party seeking damages is not required to prove the exact amount of its damages, but must show sufficient facts and circumstances to permit you to make a reasonable estimate of the damages. If you find any party entitled to a verdict on more than one of its counts, you should take care to avoid awarding duplicative damages.

*Franconero v. UMG Recordings, Inc.*, 542 Fed.Appx. 14 (2d Cir. 2013); *Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720 (2d Cir. 1992).

**BREACH OF CONTRACT/BREACH OF IMPLIED COVENANT DAMAGES**

If you find that either FICO or Federal are owed damages for breach of contract, or breach of the implied covenant of good faith and fair dealing you should award that party damages in the amount that is required to make them whole. Damages on a breach claim are intended to replace the loss caused by the breach and place the party in as good a position as it would have been in had the other party not breached the contract or the implied covenant.

*N.Y. Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308 (1995).

**INFRINGEMENT DAMAGES**

If you find that Plaintiff has proved that Defendant has infringed Plaintiff's copyright, then you must determine the amount of damages, if any, Plaintiff is entitled to recover. If you find that Plaintiff has failed to prove the claim, then you will not consider the question of damages.

Plaintiff must prove damages by a preponderance of the evidence.

Plaintiff may recover for any actual losses it suffered because of the infringement, plus any profits that Defendant made from the infringement, I will define these terms in the following instructions.

Seventh Circuit Pattern Jury Instructions; 12.8.1

## DETERMINATION OF ACTUAL DAMAGES

The measure of actual damages for FICO's breach of contract claim and its copyright infringement claim is the fair market value of a license to use Blaze Advisor. The fair market value is the license fee that a willing buyer and willing seller would have negotiated for the allegedly improper or infringing use that was made.

The license fee is the amount that the licensor and the licensee would have agreed to in a hypothetical negotiation for a license covering the allegedly infringing use that was made. In considering this hypothetical negotiation, you should focus on what the expectations of the Licensor and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties were willing to enter into an agreement. The license fee you determine must be a fee that would have resulted from the hypothetical negotiation, not simply a fee either party would have preferred.

*On Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001). Federal Circuit Pattern Jury Instruction No. 5.6

**PROFITS**

In addition to recovering its actual damages, if you find Defendants infringed FICO's copyright, FICO may recover the profits that Defendant received because of the infringement. Defendant's profits are recoverable, however, only to the extent that you have not taken them into account in determining Actual Damages.

The following three instructions all relate to your calculation of profits of the infringer.

*Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 404 (1940).

**PROFITS: INDIRECT PROFITS**

The profits at issue in this case are referred to as "indirect profits" because the Defendants did not sell the copyrighted work but used the copyrighted work to sell another product (insurance policies). The parties' burdens in an indirect profits case are the same as their burdens in a direct profits case.

*Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 796 (8th Cir. 2003).

**PROFITS: PLAINTIFF'S BURDEN**

To meet its burden under the Copyright Act's disgorgement of profits provision (17 U.S.C. § 504(b)), FICO's burden is to prove a causal nexus between the revenues Defendants received and the unauthorized use of Blaze Advisor. This is referred to as "attribution:" FICO must identify Defendants' revenues that are attributable to the alleged infringement. A party cannot meet its burden to establish the causal nexus by identifying revenue that is only remotely and speculatively attributable to the infringement. That is, FICO must show that the use of Blaze Advisor contributed to the generation of the revenue.

In determining attribution, you should only consider revenue FICO has proven is directly connected to the alleged infringement. In other words, if Defendants earned revenue through programs or products that did not involve use of Blaze Advisor, those revenues are not attributable to the infringement and you should discount them in your calculation of profits of the infringer. If you find profits were earned by companies under the control of the defendants through their use of Blaze Advisor, you may award those damages if you find they are attributable to the infringement.

*Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 796 (8th Cir. 2003); *Mackie v. Reiser*, 295 F.3d 909, 915 (9th Cir. 2002); *Polar Bear Prods. Inc, v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004); 4 Nimmer on Copyright § 14.03(B)(2)(a).

**PROFITS: DEFENDANTS' BURDEN**

If FICO establishes attribution as I have just instructed you, the burden to allocate profits shifts to the Defendants. That is, it is Defendants' burden to prove those profits (as distinct from revenues). Defendants must prove those costs associated with infringing revenue that may be deducted to arrive at profits and must prove the portion, if any, of profits that arise from the infringement by identifying the contribution to the profits of elements other than the infringement. Mathematical exactness is not required, but the apportionment must be reasonable and cannot be speculative.

*Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 796 (8th Cir. 2003); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 518 (9th Cir. 1985).

**VIEW OF DAMAGES**

The fact I have instructed you as to the proper measure of damages should not be considered as indicating my view as to which party is entitled to your verdict in this case.

**ELECTION OF FOREPERSON; DUTY TO DELIBERATE; COMMUNICATIONS WITH COURT; CAUTIONARY; UNANIMOUS VERDICT; VERDICT FORM**

There are rules you must follow when you go to the jury room to deliberate and return with your verdict.

First, you will select a foreperson. That person will preside over your discussions and speak for you here in court.

Second, your verdict must be the unanimous decision of all jurors. Therefore, it is your duty, as jurors, to discuss this case with one another in the jury room. You should try to reach agreement, if you can do this without going against what you believe to be true.

Each of you must come to your own decision, but only after you have considered all the evidence, discussed the evidence fully with your fellow jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your mind if the discussion persuades you that you should. But, do not come to a decision just because other jurors think it is right, or just to reach a unanimous verdict. Remember you are not for or against any party. You are judges—judges of the facts. Your only job is to study the evidence and decide what it true.

Third, during your deliberations, including during any recess taken during deliberations, you must not, directly or indirectly, communicate with or provide any information to anyone by any means or by any medium, about anything relating to this case, until I accept your verdict and discharge you from further service in this case.

Fourth, as stated in my instructions at the beginning of the trial, you may not in any manner seek out or receive any information about the case from any source other than

28

the evidence received by the court and the law of the case I have provided to you. You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence you have. In our judicial system, it is important that you are not influenced by anything or anyone outside of this courtroom. Otherwise, your decision may be based on information known only by you and not your fellow jurors or the parties in the case. This would unfairly and adversely impact the judicial process.

Fifth, if you need to communicate with me during your deliberations, send me a note signed by the foreperson. Give the note to the court security office and I will answer you as soon as I can, either in writing or here in court. While you are deliberating, do not tell anyone—including me—how many jurors are voting for any side.

Sixth, nothing I have said or done was meant to suggest what I think your verdict should be. The verdict is entirely up to you.

Finally, the verdict form is your written decision in this case. The form reads: (read form).

You will take this form to the jury room and when you have all agreed on the verdict[s], your foreperson will fill in the form, sign and date it, and tell the court security officer that you are ready to return to the courtroom.


Eight Circuit Civil Jury Instructions; 3.07