```
                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MINNESOTA

-----------------------------------------------------------
                                  )
 Fair Isaac Corporation,          ) File No. 16-cv-1054(DTS)
 a Delaware Corporation,          )
                                  )
         Plaintiff,               )
                                  )
 v.                               )
                                  )
 Federal Insurance Company,       ) Courtroom 14W
 an Indiana corporation,          ) Minneapolis, Minnesota
 and ACE American Insurance       ) Wednesday February 15 2023
 Company, a Pennsylvania          ) 9:00 a.m.
 Corporation,                     )
                                  )
         Defendants.              )
                                  )
-----------------------------------------------------------
```

              BEFORE THE HONORABLE DAVID T. SCHULTZ
         UNITED STATES DISTRICT COURT MAGISTRATE JUDGE


                **(JURY TRIAL PROCEEDINGS - VOLUME I)**


     Proceedings recorded by mechanical stenography;
  transcript produced by computer.

                         *   *   *


                  MARIA V. WEINBECK, RMR-FCRR
                       (612) 664-5109

```
 1    APPEARANCES:

 2      For Plaintiff:          MERCHANT & GOULD P.C.
                                BY:  ALLEN W. HINDERAKER
 3                                   HEATHER J. KLIEBENSTEIN
                                     PAIGE S. STRADLEY
 4                                   MICHAEL A. ERBELE
                                     JOSEPH W. DUBIS
 5                                   GABRIELLE L. KIEFER
                                150 South Fifth Street, #2200
 6                              Minneapolis, Minnesota 55402

 7      For Defendants:         FREDRIKSON & BYRON
                                BY:  TERRENCE J. FLEMING
 8                                   LEAH C. JANUS
                                     CHRISTOPHER D. PHAM
 9                                   RYAN C. YOUNG
                                     PANHIA VANG
10                              200 South Sixth Street, #4000
                                Minneapolis, Minnesota 55402
11
                                O'MELVENY & MYERS LLP
12                              BY:  LEAH GODESKY
                                     ANTON METLITSKY
13                                   DARYN E. RUSH
                                     ROXANA GUIDERO
14                              Times Square Tower
                                7 Times Square
15                              New York, New York 10036

16      Court Reporters:        RENEE A. ROGGE, RMR-CRR
                                KRISTINE MOUSSEAU, CRR-RPR
17                              MARIA V. WEINBECK, RMR-FCRR
                                PAULA RICHTER, RMR-CRR-CRC
18                              United States District Courthouse
                                300 South Fourth Street, Box 1005
19                              Minneapolis, Minnesota 55415

20
                                    *   *   *
21

22

23

24

25
```

1          (IN OPEN COURT WITHOUT JURY PANEL PRESENT)

2                         (9:04 a.m.)

3          THE COURT.  There are issues, the first three of

4   which concern Section 10.8 of the license agreement.  I

5   don't need argument on this.  I can see what the issue is,

6   and I know how I want to resolve it.

7          With respect to the first three slides on 10.8,

8   Ms. Godesky, I am assuming that you will say -- and if you

9   weren't planning on it, you will say -- you make it clear

10  this is not the language of the agreement but that you

11  are -- you believe that the evidence will show that that

12  language, as applied to the facts of this case, will show

13  that 10.8 means this.

14         MS. GODESKY:  That's right, Your Honor.

15         THE COURT:  Okay.  On the other three slides that

16  begins -- the first one begins with "FICO's baseless

17  litigation price," it's a little argumentative for my taste

18  in opening.  It would be appropriate for closing.  I am not

19  concerned about -- you can use the graphic.  Nobody is going

20  to confuse the graphic itself with evidence.  The phrase I

21  think that I'd like you to use, or something like it, is

22  "FICO's actual profit" or "actual damages claim" or -- I'm

23  assuming that's what you mean in this first slide by

24  "litigation price."

25         MS. GODESKY:  That's correct.

1          THE COURT:  So use a very generic description,
2    "FICO's claim" or "actual damages claim."
3          The second, again, the banner is argumentative for
4    openings, so we use a banner that says "FICO's lost profits
5    claim."  And you can say, you know, the lost profits claim
6    is even higher than whatever.  You just have to fairly
7    describe their claim.  Okay?
8          MS. GODESKY:  So I may title it, "FICO's revenue
9    disgorgement claim"?
10         THE COURT:  Yes, you may.
11         On the third --
12         MS. GODESKY:  Your Honor, I can actually make it
13   easier.  I'm taking that slide out.
14         THE COURT:  Okay.  All right.  So anything else we
15   need to deal with before we bring the jury in?
16         Mr. Hinderaker?
17         MR. HINDERAKER:  Only to clarify, what will be the
18   disposition of slide 40, some rewriting per slide 37?
19         THE COURT:  Are you talking about the last -- oh,
20   the very first one?
21         MR. HINDERAKER:  Well, I'm talking about the --
22   it's "No customer has paid FICO's litigation price."
23         THE COURT:  I believe Ms. Godesky is taking that
24   out of her presentation.
25         MS. GODESKY:  Correct, yes.

1          MR. HINDERAKER:  And also taking out slide 39 with
2     the bigger graphic?
3          THE COURT:  No, they're going to re-banner that to
4     say "FICO's revenue disgorgement claim."
5          MR. HINDERAKER:  I wasn't tracking on the slides.
6     Thank you.
7          THE COURT:  All right.  Anything else
8     Mr. Hinderaker?
9          MR. HINDERAKER:  On this issue, no, Your Honor.
10         THE COURT:  Okay.  Ms. Godesky, anything before we
11    bring in the jury?
12         MS. GODESKY:  May I ask a question about process
13    for jury selection?
14         THE COURT:  Yes, you may.
15         MS. GODESKY:  What is Your Honor's preference in
16    terms of the portion of jury selection where the attorneys
17    are questioning the venire?  I would request that if we're
18    questioning a juror and there are strong signs of an
19    inability to be impartial, that we could invite the juror up
20    to the sidebar or speak to them individually so that we're
21    not having that discussion in front of the whole venire, but
22    I wanted to see if that's acceptable to the Court so we have
23    the guardrails for how to handle that.
24         THE COURT:  I appreciate you raising that.  I
25    think that is the way to handle it.  Just say, "Your Honor,

1   may we approach?"  And then I'll ask the juror to approach
2   as well.  I'm assuming that when you say "May we approach,"
3   that's what the issue is, so I'll call the juror up and
4   we'll do it as a sidebar.
5           When you question, you can move -- that podium is
6   on wheels, so why don't you just take it now, move it up and
7   pivot it so that it's facing the jury.
8           MS. GODESKY:  Okay.  May I ask one other process
9   question?
10          THE COURT:  Absolutely.
11          MS. GODESKY:  Does Your Honor intend to deal with
12  hardship issues first so that we clear out anyone who has a
13  pre-booked vacation or some, you know, ill family member?
14          THE COURT:  Yes and no.  Go ahead and be seated.
15          Here's how I'm planning to do the voir dire.  Once
16  we get to -- it's going to seem clunky at first, but it will
17  actually be a lot quicker and it makes the court reporters'
18  lives easier. What I will do is first give them the
19  preliminary things I give them, and then we have literally
20  40 questions that have been submitted by the parties or that
21  I want to ask.  I will ask the panel each question, question
22  number 1, and have them raise their hand, and I'm taking a
23  note down here as to who has raised their hand for what
24  question.  Get through all 40 questions without discussion.
25          Then I will start with Juror Number 1, which is

1  Lena Paul -- or Peal, rather, and she has marked the
2  hardship question.  I will first with each juror go through
3  whatever I have marked on their juror sheet, which will
4  include the hardship questions, but anything else that I
5  think requires follow-up.  Then I will follow up with that
6  juror about any questions they have already raised their
7  hand to.
8          So it will take a while to get to the actual
9  questioning, but once it does, it will be quick and it will
10 be organized.  And we won't be jumping from juror to juror
11 so you know that when we're on Juror 1, you're writing in
12 box number 1.
13         MS. GODESKY:  So by the time we get to the
14 lawyer's chance to ask a few questions, the group that's
15 sitting here should be the group that's available.
16         THE COURT:  Well, certainly if there's a hardship
17 issue or if there's a cause thing that comes up prior to the
18 lawyers' questioning, we will deal with it then.  All you
19 have to do is say, "Can can we approach?"  But if it by some
20 reason arises when you two are questioning, we'll deal with
21 it then.  But in all likelihood, yes, by the time you guys
22 get up to question the jurors, it will be these 18, in all
23 likelihood.  Okay?
24         MS. GODESKY:  Okay.  One more question.
25         THE COURT:  Yep.

1             MS. GODESKY:  The parties have said to the Court
2    several times that we expect the trial to last about three
3    weeks.  I think our suggestion from the defense side is that
4    we say to the jurors that we would like for them to plan to
5    be available through Friday, March 10, which is three weeks
6    and a couple days since we've got President's Day weekend in
7    there.  I have not discussed this with plaintiff, but that's
8    our proposal in terms of what to set out for expectations.
9             THE COURT:  What I have told them, and I can
10   certainly amend that -- I haven't sought your approval of
11   this, but here's what I've written:  Before we begin the
12   selection process, I'm going to tell you something about the
13   case.  This is a civil trial between the plaintiff, Fair
14   Isaac Corporation, and the defendants, Federal Insurance
15   Company and ACE American Insurance Company.  This case is
16   about a software license agreement.  The trial is expected
17   to last three to four weeks.
18            Is that acceptable?
19            MR. HINDERAKER:  Yes, it is.
20            MS. GODESKY:  That's fine, Your Honor.  Yes, thank
21   you.
22            THE COURT:  All right.  Last call, anything else
23   we need to deal with before we bring in the jurors?
24            MR. HINDERAKER:  Clarification.  So if a juror has
25   a hardship, will you excuse the juror at that moment and

```
 1      then we'll reset the 18?
 2                  THE COURT:  That would be my plan.  I may -- I
 3      will ask if either of you have an objection.  I wouldn't
 4      object if I think it's a hardship.  You're not likely to be
 5      successful in your objection, all right?
 6                  MR. HINDERAKER:  There's a women who doesn't
 7      drive, for example.
 8                  THE COURT:  Right, exactly.
 9                  And the list that you have is winnowed from the
10      people with hardships that were absolutely no-brainers.
11      Some of these claimed hardships that I'd like to know a
12      little bit more about.  Okay?
13                  All right.  Let's bring in the jury.
14                  And you're all going to want to rise as they're
15      coming in.
16                  (Jury panel brought in.)
17                  (VOIR DIRE PROCEEDINGS HELD IN SEPARATE SEALED
18      TRANSCRIPT).
19
20
21
22
23
24
25
```

**REPORTER'S CERTIFICATE**

    I, MARIA V. WEINBECK and PAULA RICHTER, certify that the foregoing is a true and accurate transcript of my stenographic notes, and is a full, true, and complete transcript from the proceedings produced to the best of our ability.

    Certified by:  *Maria V. Weinbeck, RMR, FCRR*
                   *Paula Richter, RMR, CRR, CRC*