## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation, | ) ) ) | Case No. 16-cv-1054 (DTS) |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| FEDERAL INSURANCE COMPANY, an Indiana corporation and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFF FAIR ISAAC CORPORATION'S MEMORANDUM IN SUPPORT OF ITS RULE 52(b) MOTION FOR ADDITIONAL FINDINGS AND CONCLUSIONS

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     Introduction ...................................................................................... 1

II.    Rule 52(b) allows a Court to make additional findings. ...................... 2

III.   Additional findings and conclusions are warranted here to facilitate
       appellate review........................................................................... 4

       A.    The Court accepted the advisory jury's verdict and determined
             FICO was not entitled to disgorgement under Section 504(b)................. 4

       B.    Additional findings and conclusions are necessary to understand
             the bases for the Court's determination of no disgorgement. ................... 6

       C.    Additional findings and conclusions on three specific issues are
             necessary in light of evidence presented at trial......................................... 7

             (1)   Clarifications and additional findings and conclusions
                   regarding FICO's proof of Defendants' revenues connected
                   to infringement are warranted. ........................................................ 8

             (2)   Clarification regarding FICO's burden of establishing
                   contribution is warranted................................................................. 9

             (3)   Clarification and additional findings and conclusions
                   regarding benefits realized by Defendants is warranted. .............. 10

IV.    Conclusion ...................................................................................... 11

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Baranski v. United States*,
    2016 WL 3903211 (E.D. Mo. July 19, 2016) ................................................................ 3

*Boatmen's First Nat'l Bank v. Kansas Pub. Emples. Retirement Sys.*,
    57 F.3d 638 (8th Cir. 1995) ...................................................................... 3, 7

*Christoforou v. Cadman Plaza North, Inc.*,
    No. 04 CV 08403, 2009 WL 723003 (S.D.N.Y. March 13, 2009) ............................... 3

*Falcon Equipment Corp. v. Courtesy Lincoln Mercury, Inc.*,
    536 F.2d 806 (8th Cir. 1976) ...................................................................... 7

*Kuzminskas v. Patterson*,
    No. 03-916 (DSD/JGL), 2005 U.S. Dist. LEXIS 55308 (D. Minn. Oct.
    6, 2005) ...................................................................... 3

*Parada v. Anoka Cty.*,
    555 F. Supp. 3d 663 (D. Minn. 2021) ...................................................................... 3

**Statutes**

17 U.S.C. § 504(b) ...................................................................... 1, 3, 4

**Other Authorities**

Fed. R. Civ. P. 39 ...................................................................... 4

Fed. R. Civ. P. 52(a) ...................................................................... 1, 4

Fed. R. Civ. P. 52(b) ...................................................................... *passim*

Fed. R. Civ. P. 58 ...................................................................... 6

9 Moore's Federal Practice, § 52.30 ...................................................................... 3

## I.      Introduction

Pursuant to Federal Rule of Civil Procedure 52(b), Plaintiff Fair Isaac Corporation ("FICO") respectfully requests the Court make additional findings and conclusions relating to its determination that FICO is not entitled to disgorge the profits of Defendants Federal Insurance Company ("Federal") and ACE American Insurance Company ("ACE American") (collectively, "Defendants") under 17 U.S.C. § 504(b) ("Section 504(b)"). Defendants do not oppose this motion.

Federal Rule of Civil Procedure 52(a) requires that, in actions tried with an advisory jury, "the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a) (noting that such findings and conclusions may be stated on the record after the close of evidence or in an opinion or memorandum decision). The Court stated on the record its decision to accept the advisory jury's verdict on disgorgement and noted that it was persuaded based on the law and the evidence at trial that a finding of no disgorgement was the proper result. (Declaration of Paige Stradley, Ex. 3 at 2749:22-2750:18.)[1] The Court, however, provided no additional findings or conclusions in connection with its determination.

Rule 52(b) allows a party to request clarification or supplemental findings to ensure the appellate court understands the factual issues determined at trial. Here, while the Court stated that it was persuaded based on the law and evidence that a finding of no

---

[1] Unless otherwise noted, all exhibits are attached to the Declaration of Paige Stradley filed concurrently herewith.

disgorgement was proper, it did not identify the evidence to which it was referring nor did it explain its application of law to fact. In general, it remains unclear, e.g., what evidence the Court found supported a finding of no disgorgement, what evidence it rejected or believed insufficient, and why.

Providing additional findings and conclusions regarding the factual and legal bases for the Court's determination of no disgorgement is proper. Without additional findings and conclusions, an appeal of this Court's determination of no disgorgement is likely to result in a remand as the appellate court will have no understanding of the bases underlying the Court's ultimate determination of no disgorgement. The Court should make additional findings and conclusions under Rule 52(b) to facilitate review by the appellate court and so that FICO may properly tailor its appeal.

## II.     Rule 52(b) allows a Court to make additional findings.

Rule 52 governs findings and conclusions by the Court. Rule 52(a) and Rule 52(b) work in tandem. Rule 52(a) requires that

> [i]n an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court. Judgment must be entered under Rule 58.

Fed. R. Civ. P. 52(a). Rule 52(b) then provides that "[o]n a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings—**or make additional findings**—and may amend the judgment accordingly." Fed. R. Civ. P. 52(b) (emphasis added).

Rule 52(b) is not a vehicle by which a party may introduce new evidence, new legal theories, or new arguments that could have been raised at trial. *Parada v. Anoka Cty.*, 555 F. Supp. 3d 663, 681 (D. Minn. 2021). Rather, "Rule 52(b) is primarily intended to permit a party to move the trial court to clarify or supplement factfindings to enable the appellate court to understand the factual issues determined at trial." *Baranski v. United States*, 2016 WL 3903211, at *1 (E.D. Mo. July 19, 2016) (quotations omitted); *see also*, *Kuzminskas v. Patterson*, No. 03-916 (DSD/JGL), 2005 U.S. Dist. LEXIS 55308, at *4 (D. Minn. Oct. 6, 2005) (granting motion for additional findings and conclusions) (Ex. 9); 9 Moore's Federal Practice, § 52.30 (Matthew Bender 3d ed.).

The purpose of Rule 52(b) makes sense. Without a sufficient understanding of the district court's findings and analysis, the appellate court cannot make an informed decision and will remand back to the district court for additional findings. *See Boatmen's First Nat'l Bank v. Kansas Pub. Emples. Retirement Sys.*, 57 F.3d 638, 640-42 (8th Cir. 1995); *Christoforou v. Cadman Plaza North, Inc.*, No. 04 CV 08403, 2009 WL 723003, at *9 (S.D.N.Y. March 13, 2009) (granting motion under Rule 52(b) and noting that failure to properly comply with Rule 52(a) can be a cause for remand separate from the merits of the decision). Rule 52(b) provides a mechanism that improves judicial efficiencies by giving the district court an opportunity to clarify or provide additional findings and conclusions to facilitate appellate review and avoid an unnecessary remand.

## III.   Additional findings and conclusions are warranted here to facilitate appellate review.

### A.   The Court accepted the advisory jury's verdict and determined FICO was not entitled to disgorgement under Section 504(b).

The issue of disgorgement of profits under Section 504(b) has been addressed at various stages throughout this case. (Dkt. 445; Dkt. 499; Dkt. 567; Dkt. 588; Dkt. 731.) Defendants moved for summary judgment on FICO's claim for disgorgement of profits, arguing the claim was speculative and that FICO could not prove that Blaze Advisor "caused" any of Defendants' profits. (Dkt. 445 at 28-35.) The Court rejected Defendants' arguments, explaining that under Section 504(b), "'the copyright owner is required to present proof only of the infringer's gross revenue . . . .'" (Dkt. 731 at 7.) This proof includes evidence of "attribution," meaning proof that "the infringing use, at least in part, 'contributed to' the relevant gross revenue." (*Id.* at 7, 21.) The Court held that FICO had put forth evidence of gross revenue from the sale of insurance in connection with which Blaze Advisor was used and that FICO had put forth evidence of how Blaze Advisor contributed to Defendants' gross revenue from the sale of insurance, creating a fact issue. (*Id.* at 55-57 ("Here, FICO presents evidence of gross revenue from the sale of insurance in connection with which Blaze Advisor was used. This evidence is not 'undifferentiated,' as it is tied to Defendants' use of Blaze Advisor.").)

The Court also previously ruled that disgorgement of profits was an equitable issue for the Court's determination. (Dkt. 588.) It denied Defendants' request for bifurcation of liability and actual damages from disgorgement and exercised its discretion under Rule 39 to empanel an advisory jury on disgorgement. (Dkt. 935 at 16-17.)

4

During trial, FICO put forth evidence of Defendants' revenues connected to their infringing use of Blaze Advisor, namely Defendants' own verified interrogatory response in which they admitted the gross written premium for insurance policies in connection with which the Blaze Advisor software was used. (Ex. 1 at No. 17; Ex. 2 at No. 17; *see also* Ex. 3 at 1893:25-1898:16 (testimony of CFO for Chubb's North America operations confirming that the gross written premiums identified in Interrogatory No. 17 was the gross written premium that ran through various applications and used Blaze Advisor).) This evidence was unrebutted, and there was no genuine dispute that FICO met its burden of presenting Defendants' revenues connected to the infringing use of Blaze Advisor, i.e., FICO presented differentiated revenues. The only disputed issue with respect to disgorgement was contribution—whether FICO presented sufficient evidence to establish that Blaze Advisor contributed to Defendants' revenue.

On March 8, 2023, the Court charged the jury. The jury verdict form included a Part III entitled "Profits" which was only to be answered if the jury found either Defendant infringed FICO's copyrights. Question No. 9, the first question relevant to profits, stated "[i]f you have found that either defendant infringed FICO's copyright did FICO prove that this infringing use contributed to the ***revenues*** of the infringer?" (Dkt. 1173 at No. 9 (emphasis in the original).) The jury found both Federal and ACE American infringed FICO's copyrights but found that FICO had not proved that this infringing use contributed to the revenues of the infringer, i.e., the jury answered "No" to Question No. 9 on the verdict form. (*Id.* at Nos. 5, 7, 9.) Accordingly, the jury answered

"N/A" to Question No. 10 (the amount of revenue to which the use of Blaze Advisor

contributed) and found that FICO was entitled to $0 in profits. (*Id.* at Nos. 10, 11.)

Following receipt of the jury verdict, the Court informed the parties that it would

be accepting the verdict on disgorgement. (Ex. 3 at 2749:22-25.) In doing so, the Court

stated:

> I told you that I would exercise my own independent judgment on the issue
> disgorgement, and I have. I have been considering the issue, well, simply
> stated, since the motion to strike the jury, but then more intensively since the
> motion to bifurcate and certainly with the JMOL and hearing the evidence.
> I, nonetheless, wanted the jury's input so that I could certainly reexamine my
> own decision, should that be necessary; but I'm persuaded and I was
> persuaded based on the law and the evidence at trial that this is not only a
> proper result, I am persuaded that it is the proper result. So that's what I'm
> going to do. I don't want to spend time and resources of the parties having
> you extensively brief an issue that I know how I will rule on it anyway. So
> that's why I called you in here this morning. That's what I'm going to do.

(*Id.* at 2750:2-17.)[2] The Court did not provide any further findings or conclusions.

### B.      Additional findings and conclusions are necessary to understand the bases for the Court's determination of no disgorgement.

The Court's ultimate determination—FICO is not entitled to disgorgement—is

clear, but its findings that support that ultimate determination, as well as its application of

law to fact, are not clear. The Court did not identify what evidence or testimony it found

---

[2] Although the Court stated on March 10, 2023, that it was entering judgment, the Court
did not enter judgment under Rule 58 and later emailed the parties to clarify that
judgment would not be entered until after motions for judgment notwithstanding the
verdict were filed and decided. (Ex. 4.) Accordingly, judgment under Rule 58 has not
been entered, and FICO's Rule 52(b) motion is timely. Even if the Court's March 10,
2023 ruling were viewed as a judgment, FICO's Rule 52(b) motion is timely because
FICO filed it within twenty-eight days of the Court's March 10, 2023 ruling. Fed. R. Civ.
P. 52(b).

persuasive.  The Court did not identify what evidence or testimony it awarded little weight or rejected. The Court did not provide the operative case law. The Court did not apply that law to the evidence or testimony it found persuasive. In short, the law, evidence, and testimony underlying the Court's ultimate determination of no disgorgement are unknown.

FICO recognizes the Court is not required to make a finding on every single fact raised during trial (*see Falcon Equipment Corp. v. Courtesy Lincoln Mercury, Inc.*, 536 F.2d 806, 808 (8th Cir. 1976)), and FICO does not ask it to do so. But this trial was lengthy with a significant amount of evidence put forward by both sides relevant to the issue of disgorgement. It is not possible to look at the record and discern the bases for the Court's determination of no disgorgement. An order from the Court identifying the basic nature of the law and factual support underpinning the Court's analysis is necessary to give FICO and the appellate court a clear understanding of the bases of the trial court's decision. *Boatmen's First Nat'l Bank*, 57 F.3d at 640. FICO requests the Court provide additional findings and conclusions so that the appellate court can understand the factual underpinnings and application of law to fact supporting the Court's determination of no disgorgement and can properly and fully assess the same and so that an unnecessary remand may be avoided.

### C.      Additional findings and conclusions on three specific issues are necessary in light of evidence presented at trial.

In addition to general findings and conclusions on the issue of disgorgement, FICO requests the Court provide three specific findings and conclusions.  First, FICO

asks the Court to confirm FICO put forth sufficient evidence to establish Defendants'

revenues connected to the infringement, i.e., differentiated revenues.  Second, the Court

accepted the jury's finding that FICO did not establish Blaze Advisor contributed to

Defendants' revenues. FICO requests the Court clarify and confirm that it finds FICO did

not establish that Blaze Advisor contributed, ***in any way***, to Defendants' revenues. Third,

FICO put forth evidence of certain benefits realized by Defendants from their use of

Blaze Advisor. It is unclear from the Court's ruling whether the Court found FICO

established that Defendants realized certain benefits from use of Blaze Advisor but that

such benefits did not contribute to revenue or whether the Court found that FICO did not

establish that Defendants realized certain benefits from use of Blaze Advisor.  These

three points are discussed in further detail below.

> **(1)     Clarifications and additional findings and conclusions regarding
> FICO's proof of Defendants' revenues connected to
> infringement are warranted.**

The unrebutted evidence FICO put forth at trial established Defendants' revenues

connected to infringement, i.e., that FICO presented differentiated revenues. (Ex. 1 at No.

17; Ex. 2 at No. 17; *see also* Ex. 3 1893:25-1898:16.)  This evidence is consistent with

the Court's Summary Judgment Order. (Dkt. 731 at 20-23, 57 (finding FICO's evidence

of gross revenue from sale of insurance in connection with which Blaze Advisor was

used is not undifferentiated as it is tied to Defendants' use of Blaze Advisor).) The

Court's March 10, 2023, oral ruling, however, did not address this issue. The verdict

form was directed only to contribution. FICO asks the Court to make the following

additional findings or conclusions:

(1) FICO put forth evidence of Defendants' differentiated revenues connected to infringement;

(2) FICO's evidence of Defendants' differentiated revenues was sufficient to meet FICO's burden of establishing Defendants' revenues connected to infringement; and

(3) FICO met its burden of establishing Defendants' revenues connected to infringement.

Making these additional findings or conclusions will help the parties understand where and how, in the Court's view, FICO fell short of proving its right to disgorgement. Such a finding will help focus the issues for appeal.

### (2) Clarification regarding FICO's burden of establishing contribution is warranted.

The Court's Summary Judgment Order described FICO's burden of proving attribution as requiring "proof that the infringing use, at least in part, 'contributed to' the relevant gross revenues." (Dkt. 731 at 20-21.) The Court's jury instruction did not include the language "at least in part contributed to the relevant gross revenues." (Dkt. 1167 at 25.) The jury found that FICO did not prove Defendants' "infringing use contributed to" their revenues. (Dkt. 1173 at No. 9.) The Court "accept[ed] the verdict on disgorgement." (Ex. 3 at 2749:24.) Based on this, it appears that the Court found that FICO did not establish that Blaze Advisor contributed, *in any way*, to Defendants' revenues. FICO requests the Court clarify and confirm that it found FICO did not establish that Blaze Advisor contributed, *in any way*, to Defendants' revenues. Further, FICO requests the Court outline the law and facts supporting this conclusion.

9

**(3)     Clarification and additional findings and conclusions regarding benefits realized by Defendants is warranted.**

FICO also specifically asks the Court to clarify its application of the law to facts with respect to contribution and make additional findings relating to the same. In particular, FICO put forth evidence that Defendants realized certain business benefits from their use of Blaze Advisor that improved Defendants' process of selling insurance:

- Increased speed of response to customers;
- Increased speed of getting new products to market;
- Precision in pricing;
- Consistency in decision making;
- Agility to respond more quickly to changes in competitive requirements or customer opportunities;
- Scale to handle a greater volume of applications with the same underwriting staff;
- Compliance; and
- Making it easier for independent agents and brokers to do business with Defendants.

(*E.g.*, Ex. 3 at 1020:23-1024:11, 1028:15-25, 1031:6-1033:17 (Defendants' Senior Systems Architect Mr. Mirolyuz testifying that by using Blaze Advisor Defendants brought products to market faster, increased the percentage of renewals, and better responded to changing market conditions and further testifying that the benefits of precision, consistency, agility, speed, and cost and various benefits identified in case studies were, in fact, achieved); Ex. 5 at P-0192-005; Ex. 6 at P-0195-013 (identifying benefits, including increased retention on best accounts and more readily identifying potentially less profitable accounts, and stating "[t]he defined business benefit was realized"), P-0195-014 (identifying benefits and stating "[t]he defined business benefit

10

was realized"); Ex. 7 at P-0193-012; *see also* Ex. 8 at P-0518 (identifying Blaze Advisor rule capability applications utilizing Blaze Advisor).)

From the Court's oral ruling, it is unclear whether (a) the Court agrees that FICO established that Defendants realized certain business benefits from their use of Blaze Advisor that improved Defendants' process of selling insurance but found that such improvement to the selling process was insufficient to establish Blaze Advisor contributed to revenue, or (b) whether the Court believed that FICO did not establish that Blaze Advisor provided Defendants with benefits that improved Defendants' process for selling insurance in any manner. Additional findings and conclusions with respect to this issue will clarify the basis for the Court's determination, help the parties understand where and how, in the Court's view, FICO fell short of proving Blaze Advisor contributed to Defendants' revenue, and help focus the issues for appeal.

## IV.   Conclusion

For the above reasons, pursuant to Rule 52(b) the Court should make additional findings and conclusions relating to its determination of no disgorgement. FICO respectfully requests the Court lay out the Court's findings and conclusions underlying its determination of no disgorgement as well as specifically: (1) whether FICO met its burden to identify Defendants' revenues connected to infringement; (2) confirm the Court found FICO did not establish that Blaze Advisor contributed, ***in any way***, to Defendants' revenues; and (3) clarify and make findings with respect to Defendants' realization of certain benefits and the interplay between those benefits and contribution to revenue.

11

Dated: April 7, 2023

MERCHANT & GOULD P.C.

/s/ Heather Kliebenstein
Allen Hinderaker, MN Bar # 45787
Heather Kliebenstein, MN Bar # 337419
Paige S. Stradley MN #393432
Michael A. Erbele, MN Bar # 393635
Joseph Dubis, MN Bar # 398344
Gabrielle L. Kiefer, MN Bar # 402364

MERCHANT & GOULD P.C.
150 South Fifth Street
Suite 2200
Minneapolis, MN 55402
Tel: (612) 332-5300
Fax: (612) 332-9081
ahinderaker@merchantgould.com
hkliebenstein@merchantgould.com
pstradley@merchantgould.com
merbele@merchantgould.com
jdubis@merchantgould.com
gkiefer@merchantgould.com

*Attorneys for Plaintiff Fair Isaac Corporation*