# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation, | ) | Case No. 16-cv-1054 (DTS) |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Jury Trial Demanded** |
| v. | ) | |
| | ) | |
| FEDERAL INSURANCE COMPANY, an Indiana corporation and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF FAIR ISAAC CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR ENTITLEMENT TO ATTORNEYS' FEES

# TABLE OF CONTENTS

I.      Introduction ........................................................................................... 1

II.     FICO is entitled to attorneys' fees under 17 U.S.C. § 505 ...................... 2

    A.      FICO is the prevailing party. ........................................................ 2

    B.      An award of FICO's attorneys' fees under Section 505 is proper under *Fogerty* and *Kirtsaeng*. ............................................... 5

        (1)     Awarding FICO its attorneys' fees will further the goals of the Copyright Act. ................................................................... 6

        (2)     Defendants willfully infringed FICO's copyrights. ......................... 8

            a.      Federal willfully infringed FICO's copyrights. ........... 8

            b.      ACE American willfully infringed FICO's copyrights. ................................................................ 10

        (3)     Defendants' positions were objectively unreasonable. .................... 13

        (4)     An award of attorneys' fees is needed to deter infringement and compensate FICO. ........................................................ 15

    C.      FICO is entitled to an award of all its attorneys' fees because FICO's breach of contract claim is related to its copyright infringement claims. ... 20

III.    FICO will submit additional briefing and documentation supporting its requested attorneys' fees. ........................................................... 24

IV.     Conclusion ........................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adventure Creative Grp., Inc. v. CVSL, Inc.*,
   412 F. Supp. 3d 1065 (D. Minn. 2019) ................................................................. 9, 10

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human
   Res.*, 532 U.S. 598 (2001) ................................................................................... 3, 4

*Cadkin v. Loose*,
   569 F.3d 1142 (9th Cir. 2009) ................................................................................. 3

*Capitol Recs., LLC v. ReDigi Inc.*,
   No. 1:12-cv-95 (RJS), 2022 WL 1046463 (S.D.N.Y. Apr. 7, 2022) ......................... 19

*Cognex Corp. v. Microscan Sys., Inc.*,
   No. 13-CV-2027 (JSR), 2014 WL 2989975 (S.D.N.Y. June 30, 2014) ..................... 19

*CRST Van Expedited, Inc. v. EEOC*,
   578 U.S. 419 (2016) ................................................................................................. 3

*Doe v. Nixon*,
   716 F.3d 1041 (8th Cir. 2013) ................................................................................. 4

*Farmers Ins. Co. of Ore. v. Trutanich*,
   858 P.2d 1332 (Ore. Ct. App. 1993) ....................................................................... 13

*Floe Int'l, Inc. v. Newmans' Mfg. Inc.*,
   No. 04-5120, 2006 WL 2472112 (D. Minn. Aug. 23, 2006) ..................................... 19

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994) ....................................................................................... 5, 6, 15

*Getaped.com, Inc. v. Cangemi*,
   188 F. Supp. 2d 398 (S.D.N.Y. 2002) ...................................................................... 8

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ..................................................................................... 3, 22, 23

*Hydreon Corp. v. JC Bros., Inc.*,
   No. 15-cv-01917, 2016 WL 6826158 (D. Minn. Nov. 18, 2016) ............................. 24

*I-Sys., Inc. v. Softwares, Inc.*,
  No. 02-1951, 2005 WL 1430323 (D. Minn. Mar. 7, 2005) .................................. 20, 21

*Int'l Korwin Corp. v. Kowalczyk*,
  855 F.2d 375 (7th Cir. 1988) ........................................................................... 8

*Kepner-Tregoe, Inc. v. Vroom*,
  186 F.3d 283 (2d Cir. 1999).............................................................................. 8

*Kirtsaeng v. John Wiley & Sons, Inc.*,
  579 U.S. 197 (2016)......................................................................................... 5, 6

*Mattel, Inc. v. MGA Entm't, Inc.*,
  No. 2011 WL 3420603 (C.D. Cal. August 4, 2011) ..................................... 13

*Mendocino Game Co., Inc. v. Warren Indus., Inc.*,
  No. 1:02-CV-289-TS, 2006 WL 8451808 (N.D. Ind. June 1, 2006).......................... 21

*Moffat v. Academy of Geriatric Physical Therapy*,
  No. 15-cv-626-jdp, 2017 WL 4217174 (W.D. Wisc. Sept. 20, 2017)...................... 13

*Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*,
  No. 17-cv-5096, 2021 WL 4947712 (D. Minn. Oct. 25, 2021).................................. 24

*Pinkham v. Camex, Inc.*,
  84 F.3d 292 (8th Cir. 1996) ............................................................................ 5, 13

*Planned Parenthood Great Plains v. Williams*,
  863 F.3d 1008 (8th Cir. 2017) ......................................................................... 3

*Premier Dealer Servs., Inc. v. Allegiance Adm'rs, LLC*,
  No. 2:18-cv-735, 2023 WL 2664411 (S.D. Ohio Mar. 28, 2023) .............................. 15

*Rodriguez v. Pompeo*,
  No. 19-cv-02860, 2021 WL 1207909 (D. Minn. Mar. 31, 2021) ................................ 4

*Rogers Grp., Inc. v. City of Fayetteville*,
  683 F.3d 903 (8th Cir. 2012) ........................................................................... 4

*Rolland v. Celluci*,
  106 F. Supp. 2d 128 (D. Mass. 2000) ............................................................ 13

*Shame on You Prods. v. Banks*,
  893 F.3d 661 (9th Cir. 2018) ........................................................................... 20, 21

*Tempest Publ'g, Inc. v. Hacienda Recs. & Recording Studio, Inc.*,
    141 F. Supp. 3d 712 (S.D. Tex. 2015) ............................................................... 3

*Thomas v. City of Tacoma*,
    410 F.3d 644 (9th Cir. 2005) ............................................................... 20, 21

*U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*,
    No. CV 09-4609-JFW, 2010 WL 11597438 (C.D. Cal. July 30, 2010) ..................... 24

*Wal-Mart Stores, Inc. v. Barton*,
    223 F.3d 770 (8th Cir. 2000) ............................................................... 20, 21

**Statutes**

17 U.S.C. § 505 ............................................................... 1, 2, 6, 26

**Other Authorities**

Federal Rule of Civil Procedure 54 ............................................................... 1, 25

4 MELVILLE B. NIMMER & DAVID NIMMER,
    NIMMER ON COPYRIGHT (2022) ............................................................... 4, 8

iv

## I.   Introduction

Pursuant to Federal Rule of Civil Procedure 54(d), Plaintiff Fair Isaac Corporation ("FICO") respectfully requests the Court award FICO its attorneys' fees incurred in connection with this lawsuit. An award of attorneys' fees is proper under 17 U.S.C. § 505 of the Copyright Act (hereinafter, "Section 505"), which provides that a Court may award attorney's fees to the prevailing party. Here, FICO undoubtedly prevailed at trial. The jury found that Federal breached the License Agreement and infringed FICO's copyrights. Federal was well-aware of FICO's copyrights and knew its use of Blaze Advisor after termination of the License Agreement was willful infringement. Federal kept using Blaze Advisor anyway. Similarly, the jury found that ACE American infringed FICO's copyrights. It was undisputed that ACE American was not a party to the License Agreement. It was a naked and willful infringer. ACE American's only defense to infringement was convoluted and unsupported attorney argument that the jury rejected.

FICO spent nearly seven years litigating to protect its creative works. An award of fees under Section 505 will serve the purposes of the Copyright Act. It will encourage authors like FICO to create, and the award will not impede but, rather, encourage the public's access to creative works. It will also serve to deter Defendants and others from engaging in copyright infringement, while also compensating FICO for fees incurred to protect decades of continuous investment in writing software code to enhance the performance of Blaze Advisor—the creative effort copyright protects—and to defeat Defendants' baseless and unnecessary motions.

Because FICO's copyright infringement claims and FICO's breach of contract claim were related (i.e., they were interdependent legal claims with a common core of facts), there is no basis to apportion or adjust FICO's attorneys' fees to exclude fees related to its breach of contract claim. FICO was required to establish Federal's breach to establish copyright infringement by Federal, and proof of that breach also showed the meritlessness of both Federal's and ACE American's alleged defenses to copyright infringement. FICO is entitled to an award of all its attorneys' fees under Section 505.

FICO estimates its attorneys' fees to be $8,077,349.63 through March 31, 2023. FICO has incurred, and expects to continue to incur, additional attorneys' fees.

## II.     FICO is entitled to attorneys' fees under 17 U.S.C. § 505.

Under the Copyright Act, "the court may . . . award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. FICO requested its attorneys' fees pursuant to Section 505 in its Second Amended Complaint (Dkt. 132), and it ultimately prevailed in this Action—it succeeded on its breach of contract and copyright infringement claims. An award of attorneys' fees is proper.

### A.     FICO is the prevailing party.

FICO asserted claims of breach of contract and copyright infringement against Federal and a claim of copyright infringement against ACE American. (*See* Dkt. 132 at Counts I-IV.) The jury returned a verdict in FICO's favor, finding Federal breached its contract with FICO and finding both Federal and ACE American infringed FICO's copyrights. (Dkt. 1173 at Nos. 2, 5, 7; *see also id.* at Nos. 12-14 (finding in favor of FICO on Defendants' counterclaims).) An entry of judgment consistent with the jury's

2

verdict (i.e., finding infringement by Defendants and breach by Federal) will materially alter the legal relationship between the parties, making FICO the prevailing party. *CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419, 422 (2016) ("Congress has included the term 'prevailing party' in various fee-shifting statutes, and it has been the Court's approach to interpret the term in a consistent manner. The Court has said that the touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties.") (citations and quotations omitted); *Planned Parenthood Great Plains v. Williams*, 863 F.3d 1008, 1011 (8th Cir. 2017) (in context of Section 1988 claim for attorneys' fees, stating a party prevails when relief on the merits materially alters the legal relationship between the parties and explaining that an enforceable judgment on the merits creates the material alteration to achieve prevailing party status); *Tempest Publ'g, Inc. v. Hacienda Recs. & Recording Studio, Inc.*, 141 F. Supp. 3d 712, 719 (S.D. Tex. 2015) (finding party was prevailing party where judgment was entered on one of its copyright infringement claims because that materially altered the legal relationship between the parties).[1]

---

[1] The material alteration test was laid out in, among others, the Supreme Court's decision in *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001) addressing the Fair Housing Amendments Act. *Cadkin v. Loose*, 569 F.3d 1142, 1144-45, 1149 (9th Cir. 2009) (noting that every circuit court that has considered whether *Buckhannon* governs prevailing party status under the Copyright Act has found that it does). To the extent the standard articulated in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) applies—asking if the plaintiff "succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit"—FICO is also a prevailing party under that standard. FICO's success on its copyright infringement and breach of contract claims achieved a benefit for FICO that it had sought when bringing the Action, namely, to prove infringement by Defendants and

3

Any argument from Defendants that FICO is not the prevailing party based on the fact the jury did not award the remedy of disgorgement is unavailing. The proper analysis asks if the relief FICO did (or will) obtain—a judgment of liability for copyright infringement (and breach of contract) and the award of actual damages—materially altered the legal relationship of the parties. The answer to that question is yes. FICO prevailed on its breach of contract claim against Federal, and, as a consequence, prevailed on its copyright infringement claim against Federal. (Dkt. 1173 at Nos. 4-6.) FICO also prevailed on its copyright infringement claim against ACE American. (*Id.* at Nos. 7-8.) That FICO did not obtain all its requested relief (i.e., the remedy of disgorgement) is irrelevant to a determination of FICO's status as a prevailing party. *E.g.*, *Rodriguez v. Pompeo*, No. 19-cv-02860 (SRN/KMM), 2021 WL 1207909, at *2-3 (D. Minn. Mar. 31, 2021) ("The Eighth Circuit has cited with approval the D.C. Circuit's distillation of three core principles from *Buckhannon*: . . . a prevailing party is a party in whose favor a judgment is rendered, regardless of the amount of damages awarded."); *Doe v. Nixon*, 716 F.3d 1041, 1048 (8th Cir. 2013) (same); *Rogers Grp., Inc. v. City of Fayetteville*, 683 F.3d 903, 911 (8th Cir. 2012) (same); 4 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 14.10 (2022) (hereinafter, "NIMMER ON COPYRIGHT") ("Ordinarily, plaintiff should be considered the prevailing party if he succeeds at trial in establishing defendant's liability, even if the damages awarded are nominal or nothing.").

---

protect its intellectual property rights. FICO also obtained actual damages to compensate it for the harm it incurred based on Federal's breach and Federal's and ACE American's copyright infringement, another benefit it sought in bringing this Action.

4

**B.      An award of FICO's attorneys' fees under Section 505 is proper under *Fogerty* and *Kirtsaeng*.**

This Court has broad discretion to award FICO its attorneys' fees under Section 505. Although Section 505 itself does not specify a standard, the Supreme Court's decisions in *Fogerty v. Fantasy* and *Kirtsaeng v. John Wiley & Sons* offer the Court guideposts for determining the award of attorneys' fees. First, *Fogerty* places two restrictions on the Court's discretion under Section 505: (1) the court may not award attorney's fees as a matter of course; and (2) the court may not treat prevailing plaintiffs and defendants differently. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527, 533 (1994). *Fogerty* also approved the following non-exclusive factors to inform the exercise of discretion by district courts: frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance consideration of compensation and deterrence. *Id.* at 534 n.19; *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294 (8th Cir. 1996).

*Kirtsaeng* provided additional guidance, confirming that substantial weight should be given to the objective reasonableness of the losing party's position while further stating that the court "must also give due consideration to all other circumstances relevant to granting fees." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 199-200 (2016). In other words, objective reasonableness is "an important factor in assessing fee applications—not the controlling one." *Id.* at 208-09 (explaining that "in any given case a court may award fees even though the losing party offered reasonable arguments (or, conversely, deny fees even though the losing party made unreasonable ones)").

Both *Fogerty* and *Kirtsaeng* make clear that fee awards under Section 505 should encourage the types of lawsuits that promote the goals of the Copyright Act. *Kirtsaeng*, 579 U.S. at 204; *Fogerty*, 510 U.S. at 526-527, 534 n.19. Here, the factors outlined in *Fogerty* and *Kirtsaeng* support awarding FICO its attorneys' fee under Section 505, and such an award will further the goals of the Copyright Act.

> **(1)   Awarding FICO its attorneys' fees will further the goals of the Copyright Act.**

The Copyright Act seeks to "enrich[] the general public through access to creative works." *Kirtsaeng*, 579 U.S. at 204. It does so "by striking a balance between two subsidiary aims: encouraging and rewarding authors' creations while also enabling others to build on that work. Accordingly, fee awards under § 505 should encourage the types of lawsuits that promote those purposes." *Id.* (citation omitted).

FICO's copyrighted Blaze Advisor is a creative work. Jean Luc Marce and others have dedicated their professional careers to creating and continuously further creating improvements to the source code of Blaze Advisor, including developing a new language to represent business logic. (Declaration of Paige Stradley ("Stradley Decl.") Ex. 1 at 194:5-17, 195:16-196:11, 197:14-20, 198:16-201:12.) This creative effort and the results of that effort were possible because of decades of investment resulting in an industry-leading business rules management system that improves decision making across many industries, not just the insurance industry.

When Blaze Advisor was used without authorization, because Defendants acted as if they owned Blaze Advisor, the beneficial purposes of the Copyright Act were denied to

both FICO and the public. FICO brought this lawsuit to protect its intellectual property and the investment it made and continues to make in this creative work called Blaze Advisor. The Copyright Act protects FICO's creative effort and its investment in the same, and an award of attorneys' fees here aligns with the purposes of the Act.

Defendants' actions, on the other hand, did nothing to "enabl[e] others to build on [FICO's] work" or to "enrich[] the general public through access to creative works." It is undisputed that Defendants did not seek to build upon or otherwise improve FICO's Blaze Advisor. (Dkt. No. 1072 at No. 42 (stipulating that "[a]fter March 31, 2016, the Blaze Advisor software code was not modified in any way by Chubb & Son, a division of Federal, Federal, or any other associated entity of person").)[2] Moreover, this is not a case where Defendants challenged the originality of FICO's work or asserted a defense of fair use, or raised any other public policy concern to justify the infringing use. In fact, Defendants stipulated to the validity of FICO's copyrights in Blaze Advisor. (*Id.* at No. 41 ("FICO owns a valid copyright for Blaze Advisor versions . . . 7.0, 7.1, and 7.2.").)

FICO's lawsuit to protect its creative work is exactly the type of lawsuit that the Copyright Act and fee awards under Section 505 wish to encourage. Defendants' actions and defenses in this Action do nothing to further the goals of the Copyright Act.

---

[2] Indeed, Federal could not have improved the source code because the License Agreement prohibits Federal from altering, changing, modifying, adapting, translating, or making derivative works of Blaze Advisor. (Stradley Decl. Ex. 2 at J-001-002 ¶ 3.1(ii); *see also id.* at ¶ 3.1(iii).)

### (2) **Defendants willfully infringed FICO's copyrights.**

"One of the most common circumstances warranting an award of attorney's fees is deliberate infringement." NIMMER ON COPYRIGHT at § 14.10. While willful infringement is not a prerequisite to the recovery of attorneys' fees under the Copyright Act, it is one consideration. *See, e.g.*, *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 289 (2d Cir. 1999) (finding award of attorneys' fees under Section 505 were justified based on, among other things, district court's finding of willfulness); *Int'l Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 384 (7th Cir. 1988) (noting willfulness is not required to award fees but finding that defendant's willfulness supported district court's award of attorneys' fees); *Getaped.com, Inc. v. Cangemi*, 188 F. Supp. 2d 398, 406 (S.D.N.Y. 2002) (awarding attorneys' fees under Section 505 and explaining attorneys' fees were warranted where infringement is willful). Here, Defendants are willful infringers.

### a. *Federal willfully infringed FICO's copyrights.*

FICO first learned of the acquisition of the Chubb Corporation by ACE Limited in approximately July of 2015 from public sources. (Stradley Decl. Ex. 3 at P-0121-001.) After months of not hearing from Federal regarding the acquisition, FICO reached out to Federal contacts regarding the fact that FICO's consent was required for any continued use of Blaze Advisor after the acquisition closed. (*Id.* Ex. 4 at P-0090-001.) After the acquisition closed, FICO's January 27, 2016, Notice of Breach letter expressly warned that "making use, after this notice by FICO of the requirement for consent, constituted Chubb and Chubb Ltd. as intentional infringers under applicable copyright . . . laws, in addition to being a breach of the Agreement." (*Id.* at P-0090-002.) This warning was

8

reiterated in FICO's March 30, 2023, termination letter: "FICO considers New Chubb's current use, and any future use, of the software as a breach of the Agreement and willful infringement of all applicable intellectual property rights, including but not limited to FICO's underlying copyrights . . . ." (*Id.* Ex. 5 at P-0103-001.) Despite FICO's termination of the License Agreement, despite being expressly informed of FICO's underlying copyright rights, and despite the express notice that continued use of Blaze Advisor was willful copyright infringement, Federal chose to keep using Blaze Advisor. That was a deliberate decision to infringe copyrights: willfulness. *Adventure Creative Grp., Inc. v. CVSL, Inc.*, 412 F. Supp. 3d 1065, 1073 (D. Minn. 2019) (explaining that willfulness requires "show[ing] that the infringer had knowledge that its conduct constituted infringement or that it recklessly disregarded that possibility" and further noting that "Courts have found willful infringement when, for example, a defendant engages in infringing activity after receiving warning that the activity constitutes infringement").

Even after FICO initiated this lawsuit, Federal continued using Blaze Advisor for approximately nine months until ACE American absorbed Federal's employees and began its unauthorized use of Blaze Advisor. (Stradley Decl. Ex. 1 at 1231:23-1232:1 (all employees of Federal became employees of ACE American on January 1, 2017).) During this nine-month period there was no urgency to cease use of Blaze Advisor. Federal never approached FICO and requested a migration plan or a limited license to cover its use of Blaze Advisor while it transitioned to a new technology. In fact, Federal never decided to

stop infringing; it ceased being an infringer only when it no longer had employees. (*Id.*) There was no regard for FICO copyrights.

Federal's willful infringement supports awarding FICO its attorneys' fees.

### b. *ACE American willfully infringed FICO's copyrights.*

ACE American willfully infringed FICO copyrights; at a minimum, it recklessly disregarded that possibility. *Adventure Creative Grp., Inc.*, 412 F. Supp. 3d at 1073. ACE American undisputedly was never a party to or the "Client" under the License Agreement. (Stradley Decl. Ex. 2 at J-001-001, J-001-009, J-001-0018, J-001-020.) The License Agreement was with Federal. (*Id.*; Dkt. 1167 at 16 (finding as a matter of law the "Client" was Federal).) The only alleged defense offered by ACE American was a conclusory assertion that the acquisition of the Chubb Corporation by ACE Limited somehow inexplicably made ACE Limited the "Client" to the License Agreement, and then somehow that resulted in ACE American having the right to use Blaze Advisor. Defendants offered no evidence to support this sleight of hand. Defendants only argued from PowerPoint slides of their own creation.

The evidence directly contradicted ACE American's position. Before the License Agreement was terminated, Defendants repeatedly asserted that "the Client" under the License Agreement was unchanged and there was no assignment of rights. (*Id.* Ex. 6 at P-0091-001 ("Chubb & Son is still FICO's 'Client' as such term is defined in the Agreement and it is our position that no transfer and assignment of the Agreement has occurred."); Ex. 7 at P-0094-002 ("The contracting party to the license agreement is and remains Chubb & Son, a division of Federal Insurance Company.").)

10

ACE American's attorney argument made little sense. ACE American argued that from the language "deemed to be an assignment" the "jury could conclude ACE Limited thus became the Client" but never explained how the language of Paragraph 10.8 conformed to this assertion (because it could not). (Dkt. 1160 at 1-2.) At times, it even seemed ACE American was arguing an actual assignment occurred (*id.* at 2), despite having conceded in its opening statement that was not true. (Stradley Decl. Ex. 1 at 73:14-74:5 (discussing actual assignments and stating "everyone agrees that type of assignment didn't happen").)[3] The meritless trial argument is also completely inconsistent with the Court's summary judgment order. (Dkt. 731 at 46 (noting the Parties agree that the merger is an event "deemed to be an assignment" not an actual assignment); *see also id.* at 47-48.) There was no evidence to support any of ACE American's attorney argument; ACE American was a naked, willful infringer. The jury squarely rejected ACE American's unsupported argument. (Dkt. 1173 at Nos. 7-8.)

Moreover, ACE American first began using Blaze Advisor approximately nine months after FICO had terminated the License Agreement with Federal. (Stradley Decl. Ex. 5 P-0103-001 (termination effective March 31, 2016); Ex. 1 at 1231:23-1232:1 (testifying Federal employees became ACE American employees January 1, 2017).) And, after it was added as a defendant in 2018, ACE American made the deliberate decision to continue using Blaze Advisor for approximately one and a half years as this litigation

---

[3] Any argument that there was an actual assignment is meritless. Section 10.8 states "[n]either party shall, without the prior written consent of the other party, assign or transfer this Agreement, or any part thereof." (Stradley Decl. Ex. 2 at J-001-008 ¶ 10.8.)

ensued—all the while knowing that doing so was infringement and all the while having no legitimate defense for its use.

Again, there was no urgency to cease the use of Blaze Advisor by ACE American, and ACE American's decision to stop using Blaze Advisor was not because of its infringement. It was because of a decision made at an enterprise level (global) to adopt an open-source technology strategy. (*Id.* Ex. 1 at 1050:10-17.) Once ACE American adopted this open-source technology strategy and finally choose to stop using Blaze Advisor, it only took ACE American nine months to transition to the open-source technology of Drools. (*Id.* at 1050:10-1051:17.) As Mr. Ghislanzoni testified, he knew in 2016 there was a dispute between FICO and Chubb, knew in 2016 the relationship with FICO had severely deteriorated, did not start migrating off Blaze Advisor until 2019 (for reasons unrelated to infringing FICO copyrights), and completed migration nine months later by April of 2020. (*Id.* at 1130:7-18, 1168:4-19.)

Like Federal, ACE American could have approached FICO and requested a migration plan or a limited license to cover its use of Blaze Advisor while it transitioned to a new technology, but it did not. Why? Because ACE American did not care about FICO's copyrights. ACE American's actions throughout the period of infringement show that it simply did what it wanted without any regard for FICO's copyrights. ACE American acted like it owned Blaze Advisor. ACE American's willful infringement warrants an award of FICO's attorneys' fees.[4]

---

[4] Should the Court determine that FICO is entitled to its attorneys' fees in connection with its claim against ACE American, but not Federal, FICO should still be awarded its

### (3)    Defendants' positions were objectively unreasonable.

The objective reasonableness of a party's positions considers both the "factual and . . . legal components of the case." *Pinkham*, 84 F.3d at 294. Federal's interpretation of Section 10.8 was unsupported by any evidence at trial. It was objectively unreasonable.

During summary judgment, Federal contended that Section 10.8 should be interpreted to mean that so long as Federal did not expand use of Blaze Advisor, it was not required to obtain consent from FICO. (Dkt. 507 at 38-40.) Judge Wright accepted Federal's legal position that Section 10.8 could reasonably be read as Federal described. (Dkt. 731 at 48.) While Federal's legal position on summary judgment may have been defensible, trial demonstrated that Federal's legal argument lacked any evidentiary

---

full attorneys' fees. For the reasons described below, the facts and legal issues relevant to establishing Federal's breach of contract and copyright infringement were also relevant to uncovering and defeating ACE American's infringement defense. (*See*, *infra*, Part III(C).) Accordingly, it is not proper to further adjust or apportion fees between claims asserted against Federal and ACE American. (*Id.*) This is true even though ACE American was not added to as a defendant until September 18, 2018. *See*, *e.g.*, *Moffat v. Academy of Geriatric Physical Therapy*, No. 15-cv-626-jdp, 2017 WL 4217174, at *6 (W.D. Wisc. Sept. 20, 2017) (finding the Copyright Act permits recovery of attorneys' fees incurred before filing a lawsuit) (citing *Brownmark Films LLC v. Comedy Partners*, No. 10-cv-1013, 2011 WL 6002961, at *8 (E.D. Wis. Nov. 30, 2011)); *Mattel, Inc. v. MGA Entm't, Inc.,* No. 2011 WL 3420603, at *8 (C.D. Cal. August 4, 2011) (awarding attorneys' fees under the Copyright Act for activities that took place before addition of copyright infringement claim); *Rolland v. Celluci*, 106 F. Supp. 2d 128, 137-138 (D. Mass. 2000) (awarding attorneys' fees for pre-suit activities in civil rights action); *Farmers Ins. Co. of Ore. v. Trutanich*, 858 P.2d 1332, 1339 (Ore. Ct. App. 1993) (in the context of an insurance dispute, awarding attorneys' fees that were reasonably related to the action). However, should the Court nevertheless determine that FICO is entitled to its attorneys' fees incurred only after ACE American was added as a defendant, FICO's fees incurred on or after on or after September 18, 2018, through March 31, 2023, are estimated to be $6,919,147.48.

support—the factual component of its defense presented at trial was objectively unreasonable.

FICO put forth parole evidence of the intent and commercial purpose of Section 10.8 through at least the testimony of Mr. Schreiber, Ms. Boone, Mr. Caretta, and Mr. Waid. (*E.g.*, Stradley Decl. Ex. 1 at 401:12-402:4, 403:1-24, 404:9-13, 406:2-15, 407:14-409:25, 410:5-412:15 (Mr. Schreiber testifying that the expanded use language was a safety net and that the License Agreement required Federal "lock it down until we [FICO] either terminate it or we renegotiate something"); 476:17-481:7, 483:9-484:1, 484:16-486:4; 853:25-854:21, 855:8-16, 861:15-23, 866:1-867:19, 877:19-879:6, 879:12-879:22, 881:1-883:25, 886:15-22, 923:24-924:10, 925:1-9, 926:22-927:25, 948:22-949:11; 1652:15-1657:15, 1666:13-1667:7 (Mr. Waid testifying as to the business purpose of Section 10.8 and explaining FICO wants to know about merger and acquisition events so that it could assess the event and consent to it and testifying that the "no expanded use" language is an additional constraint to "lock it down" until consent is given).). FICO witnesses' testimony was wholly consistent with FICO's legal position as to the proper interpretation of Section 10.8. Federal, on the other hand, offered no evidence to support its interpretation of Section 10.8, only its attorneys' own say so. There is no evidence of record that renders Federal's attorneys' interpretation of Section 10.8 objectively reasonable. While a legal argument may be reasonable *in theory*, such an argument is not reasonable when no evidence is offered at trial to support it. That is the case with Federal's interpretation of Section 10.8.

ACE American also took objectively unreasonable positions, from both a legal and factual standpoint. As shown above and in FICO's Memorandum in Support of its Motion for Judgment as Matter of Law that ACE American has Infringed FICO's Copyrights (Dkt. 1149), fully incorporated herein, ACE American had no legitimate defense to its infringement. ACE American was never a party or the "Client" to the License Agreement, and the only alleged "defense" offered by ACE American was attorney argument unsupported by any evidence in the record. (*See*, *supra*, Part III(B)(2)(b); Dkt. 1149.) Indeed, the evidence of record directly contradicted ACE American's position. (*See*, *supra*, Part III(B)(2)(b).) The jury agreed and rejected ACE American's unsupported arguments. ACE American's only alleged "defense" was objectively unreasonable.

### (4)   An award of attorneys' fees is needed to deter infringement and compensate FICO.

Among other things, the Copyright Act, including Section 505, aims to deter infringement. *Fogerty,* 510 U.S. at 527, 533 (deterrence to be considered in awarding attorneys' fees); *Premier Dealer Servs., Inc. v. Allegiance Adm'rs, LLC*, No. 2:18-cv-735, 2023 WL 2664411, at *8 (S.D. Ohio Mar. 28, 2023) (awarding fees where it would "promote[] the Copyright Act's purpose to 'deter unauthorized exploitation of someone else's creative expressions'"). Here, an award of attorneys' fees is necessary to deter Defendants and other similarly situated parties from future infringement.

Defendants' use of Blaze Advisor was deliberate, showing a complete indifference to FICO's rights. Defendants only acted for their own benefit. (*See*, *supra*, Part III(B)(2).)

15

An award of attorneys' fees is appropriate to deter Defendants and others from engaging in such infringement. This is particularly true here because, while FICO's award of $40 million in actual damages may seem large, it amounts to an insignificant sum to Federal and ACE American—certainly not enough to deter infringement. In 2016 alone, Federal had revenue in the billions, and, in each year from 2017-2019, ACE American similarly had revenue in the billions. (Stradley Decl. Ex. 8 at Schedule 8.0, 8.1, 8.2; *see also id.* Ex. 1 at 1330:20-1334:6.)[5] FICO's actual damages award merely compensates FICO for what it was lawfully entitled. It does nothing to deter Defendants.

It is also appropriate to award FICO its attorneys' fees to deter the use of tactics that unnecessarily drive-up litigation costs and to compensate FICO for those unnecessary expenses. FICO had to engage in approximately seven years of litigation to finally vindicate its copyright rights. During this seven-year period, FICO was forced, on numerous occasions, to respond to baseless motions and engage in other activities that unnecessarily drove up FICO's attorneys' fees.

The Court is familiar with the extensive procedural history of this case, but the following examples are illustrative:

---

[5] Second Supplemental Schedule 8.0 shows that from March 31, 2016 to May 2020, Defendants generated approximately $15.4 billion in connection with applications that utilized Blaze Advisor and that with their subsidiaries and pooling entities they generated $21.2 billion in connection with applications that utilized Blaze Advisor. The revenues in Second Supplemental Schedules 8.0 and 8.1 only identify revenue that was generated in connection with use of Blaze Advisor. Accordingly, the total revenues earned by Defendants were significantly higher than the revenues identified in Second Supplemental Schedules 8.0-8.2. In any event, even the limited revenues identified in Second Supplemental Schedules 8.0-8.2 show that Defendants' revenues are so large as to render an award of actual damages of $40 million immaterial in comparison.

- Defendants refused and repeatedly delayed providing financial information relevant to disgorgement in response to document requests and interrogatories. FICO was forced to file its first motion to compel on January 1, 2018, and the Court granted that motion. (Dkt. 60 at 5-8 & 5 n.1; Dkt. 96.) FICO was then forced to respond and defeat an objection to the Magistrate's Order granting FICO's motion to compel. (Dkt. 102; Dkt. 107; Dkt. 108.) Even after the Magistrate Judge's Order was affirmed, Federal still did not provide the complete financial information requested. FICO was forced to seek an informal dispute hearing with the Magistrate Judge regarding Defendants' production and interrogatory responses. (Stradley Decl. Ex. 9 at 1-3.) And by December of 2019, nearly a year after its initial motion to compel, FICO still did not have the financial information that the Court had already ruled it was entitled to, and FICO was forced to file another motion to compel. (Dkt. 150.) The Court again granted FICO's motion. (Dkt. 168; Stradley Decl. Ex. 10 at 29:19-31:11.)

- Defendants moved to amend their Answer during summary judgment briefing and after the close of discovery. (Dkt. 456, 458.) This required FICO to take a second Rule 30(b)(6) deposition after the close of discovery. (*See* Dkt. 501.)

- Defendants' experts had various damages data in May of 2019 that called into question the accuracy of verified interrogatory answers. Thereafter, Defendants thrice supplemented their answer to Interrogatory No. 17, but

17

never updated that response in light of this inconsistent damages data. In September of 2020, however, Defendants served their Ninth Supplemental Answer to Interrogatory No. 17, now relying on that damages data which had been available since at least May 2019. (*See* Dkt. 839 at 4.) This forced FICO to take a second deposition of Chase McCarthy long after the close of fact discovery and expert discovery. (*See id.* at 19.) It also forced FICO to supplement its expert report to address this new financial data, resulting in additional expert costs.[6] This is particularly egregious given that the information underlying the Ninth Supplemental Response is Defendants' own data, the underlying data itself should not have changed, and the data was available over a year prior to supplementation.

- Defendants amended their Rule 26(a)(1) disclosures on the afternoon of the last day of fact discovery to list an additional 16 fact witnesses. (*See* Dkt. 226 at 1.) FICO was forced to depose these witnesses after fact discovery had closed. (*See id.*) The Court has already found this late disclosure to be improper and ordered Defendants to pay 50% of FICO's attorneys' fees for the late depositions. (*See* Dkt. 288 at 1.)[7]

---

[6] FICO's damages expert had already been forced to supplement his expert report in light of Defendants' Eighth Supplemental Answer to Interrogatory No. 17. The Eighth Supplemental Answer to Interrogatory No. 17 was served in June of 2020, approximately one year after FICO's damages expert had served his initial and reply reports.

[7] FICO's total fee request in this motion does not include the 50% already paid by Defendants, but the other 50% is properly recoverable here.

- Defendants twice filed motions to amend the Scheduling Order to permit them to file additional summary judgment motions long after the July 26, 2019, dispositive motion deadline. (*See* Dkt. 758 (filed May 1, 2020); Dkt. 845 (filed December 14, 2021).) FICO was forced to oppose both motions. Both motions were denied. (*See* Dkt. 793; Dkt. 867.)

- Defendants filed a motion for leave to take trial depositions and FICO was forced to respond. (*See* Dkt. 885; Dkt. 893.) After the motion was granted (*see* Dkt. 898), Defendants never took the trial depositions of either Mr. Berthiume or Ms. Todorovic.

Defendants' own strategic litigation decisions significantly contributed to FICO's attorneys' fees, and an award of fees is appropriate to deter such litigation tactics and to compensate FICO for the expenses it incurred in responding to these baseless or unnecessary filings. *See*, *e.g.*, *Capitol Recs., LLC v. ReDigi Inc.*, No. 1:12-cv-95 (RJS), 2022 WL 1046463, at *7 (S.D.N.Y. Apr. 7, 2022) (finding litigation tactics, including filing of meritless pleadings, supported award of attorneys' fees under Section 505); *see also Floe Int'l, Inc. v. Newmans' Mfg. Inc.*, No. 04-5120 (DWF/RLE), 2006 WL 2472112, at *7 (D. Minn. Aug. 23, 2006) (in patent case, finding award of attorneys' fees proper where defendant brought unnecessary motions and refused to concede unsupported claims and defenses which unnecessarily increased Plaintiff's attorneys' fees); *Cognex Corp. v. Microscan Sys., Inc.*, No. 13-CV-2027 (JSR), 2014 WL 2989975, at *4 (S.D.N.Y. June 30, 2014) ("Defendants should be required to cover at least the

19

portion of plaintiffs' attorneys' fees related to litigation tactics taken by defendants that have contributed unnecessarily to plaintiffs' expenses in defending its patent.");

Attorneys' fees are appropriate to deter Defendants and others from infringing FICO's and others' copyrights in the future, to deter Defendants' litigation tactics, and to compensate FICO.

**C.   FICO is entitled to an award of all its attorneys' fees because FICO's breach of contract claim is related to its copyright infringement claims.**

FICO is entitled to its attorneys' fees in connection with pursuing not only its copyright claims but also its breach of contract claims. It is well-settled that where multiple claims are asserted a party may recover its attorneys' fees for work on all claims (even those that standing alone may not permit recovery) when the claims are related. *Wal-Mart Stores, Inc. v. Barton*, 223 F.3d 770, 773-74 (8th Cir. 2000) (affirming recovery of attorneys' fees for state law claims that "shared a common core of facts" despite attorney fees not being recoverable under state law); *Shame on You Prods. v. Banks*, 893 F.3d 661, 669-70 (9th Cir. 2018); *Thomas v. City of Tacoma*, 410 F.3d 644, 649 (9th Cir. 2005) (quoting *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003)); *I-Sys., Inc. v. Softwares*, *Inc.*, No. 02-1951 (JRT/FLN), 2005 WL 1430323, at *11-12 (D. Minn. Mar. 7, 2005).

*I-Systems, Inc. v. Softwares*, *Inc.* is instructive. There, the Plaintiff had asserted a breach of contract claim and claims under the Copyright Act, Uniform Trade Secret Act, and Deceptive Trade Practices Act. 2005 WL 1430323, at *11. Plaintiff was entitled to fees based on its breach of contract claim, and Defendants requested the Court reduce the

award to exclude hours spent on Plaintiff's other, allegedly noncompensable claims. *Id.*
The Court refused, finding Plaintiff's claims were based on the same nucleus of facts and
that Plaintiff had prevailed on all claims at trial. The Court refused "to attempt to parse
the requested attorneys' fees by claim in order to discount fees spent pursuing claims that
may not, standing alone, permit recovery." *Id.* at *12.

Here, FICO's copyright infringement claims against Federal and ACE American
are related to FICO's breach of contract claim against Federal. They share a common
core of facts and/or were based on related legal theories. *Wal-Mart Stores, Inc.*, 223 F.3d
at 773-74; *Shame on You Prods.*, 893 F.3d at 669-70; *Thomas*, 410 F.3d at 649; *I-Sys.,
Inc.*, 2005 WL 1430323, at *11-12. To establish copyright infringement by Federal,
FICO was required to first establish that Federal breached the License Agreement. *E.g.*,
*Mendocino Game Co., Inc. v. Warren Indus., Inc.*, No. 1:02-CV-289-TS, 2006 WL
8451808, at *5 (N.D. Ind. June 1, 2006) (finding breach of sales agreement and licensing
agreement claims related to the copyright infringement claim and refusing to reduce fee
award because "[t]he Plaintiff could have established the copyright infringement claim
only by first demonstrating that the parties had a sales agreement, which was related to
the licensing agreement and which terminated once the sales agreement was breached.
Had the Plaintiff sued the Defendant only for the copyright claim, it still would have had
to prove the facts related to the sales agreement and the licensing agreement"). Only after
FICO proved Federal's breach and FICO's proper termination of the License Agreement
did Federal's continued use constitute copyright infringement. FICO's success on its
copyright infringement claim against Federal depended on FICO succeeding on its breach

of contract claim. All the time and energy spent proving Federal's breach was necessary to establish copyright infringement by Federal.

FICO also had to defend against Defendants' theories that both Federal and ACE American had rights under the License Agreement to prove its copyright claims. Defendants' defense intertwined their contention that Federal did not breach the License Agreement with their defense of ACE American's infringement. (Dkt. 1160 at 1-2 (arguing, for example, "[a] finding that Federal did not breach the License Agreement could support a finding that ACE American possessed a valid license to use Blaze Advisor").) For the reasons stated above in Parts III(B)(2)(b) and III(B)(3), the argument was factually and legally meritless. Yet, it was Defendants who intertwined proof of breach by Federal and proof of ACE American's infringement, forcing FICO to address and rebut the same. They cannot now argue that those claims are unrelated.

Defendants may also argue that FICO is not entitled to fees relating to its theories of breach of contract based on a geographic restriction (which the Court disposed of on summary judgment) (Dkt. 731 at 41), based on use by foreign entities who were not affiliates of Chubb & Son (which the Court disposed of during trial on Defendants' motion for judgment as a matter of law) (Dkt. 1196), and based on disclosure to third-party consultants (which the jury found did not constitute a breach) (Dkt. 1173 at No. 1). Such an argument fails.

First, in *Hensley v. Eckerhart* the Supreme Court addressed the propriety of reducing fee awards in cases where a party was not successful on all claims. While the

Court acknowledged it may be appropriate to reduce a fee award where a successful claim is entirely distinct from the unsuccessful claim, it explained:

> In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
>
> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. . . . In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.

*Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (also explaining that "[a] request for attorney's fees should not result in a second major litigation"). FICO asserted a single claim for breach of contract. (Dkt. 132 at Count I.) Each of the above are grounds for proving that single claim of breach of contract. Where a party ultimately succeeds on a claim, like FICO did here, or efforts are directed to the litigation as a whole, it is irrelevant whether each ground resulted in breach. FICO obtained excellent results—it won both its copyright infringement claims, its related breach of contract claim, and was awarded $40 million in actual damages. There is no basis to reduce FICO's attorney fee award for its failure to succeed on all asserted grounds of breach.

Second, these grounds for breach of contract involve common facts and/or related legal theories and were part and parcel to FICO's litigation as a whole. Each ground relates to the same License Agreement between the same parties and to Federal's use of Blaze Advisor, and each ground would have constituted a breach that resulted in

copyright infringement by Federal. *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, No. CV 09-4609-JFW (RZx), 2010 WL 11597438, at *5 n.6 (C.D. Cal. July 30, 2010) (where various claims were all predicated on improper use of Plaintiff's program and/or data, court found claims were intertwined and held that "even if . . . Defendants were not entitled to attorneys' fees and costs based on each and every independent ground state above, they would still not be required to apportion their fees and costs among the various claims").

FICO is entitled to an award of all its attorneys' fees under Section 505.

### III.   FICO will submit additional briefing and documentation supporting its requested attorneys' fees.

This district permits a party to engage in a two-phased approach to motions seeking attorneys' fees: (1) a motion seeking entitlement to attorneys' fees and (2) if the Court determines a party is entitled to attorneys' fees, submission of a brief, declaration, and/or supporting documentation to establish the reasonableness of that party's requested attorneys' fees. *Hydreon Corp. v. JC Bros., Inc.*, No. 15-cv-01917 (SRN/JSM), 2016 WL 6826158, at *9–11 (D. Minn. Nov. 18, 2016) (finding case exceptional and directing the plaintiff to file application for attorneys' fees supported by an affidavit and time records); *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, No. 17-cv-5096 (WMV/BRT), 2021 WL 4947712, at *5-6 (D. Minn. Oct. 25, 2021) (granting defendant's motion for attorneys' fees and costs and directing defendant to file supporting documentation to support request for reasonable fees and costs). This approach makes sense because it is more efficient for both parties. If the Court declines to award attorneys' fees, FICO saves

24

time by avoiding reviewing rates, hours, time entries, etc. and showing the reasonableness of the same; Defendants avoid reviewing the same to show the alleged unreasonableness of FICO's requested attorneys' fees. Further, this two-phase approach also allows FICO to avoid the significant burden of reviewing and redacting time entry descriptions for privilege and avoids the Court having to engage in potential privilege analyses.

Of course, in the event the Court finds FICO is entitled to an award of attorneys' fees, FICO will provide the necessary documentation to establish the reasonableness of the attorneys' fees it seeks, and Defendants retain the ability to challenge the reasonableness of those fees. This also affords the Court an opportunity to provide guidance regarding submission of invoices and redaction of time entries for privilege and the best approach for the same should it wish to do so.

Here, FICO seeks an award of all its attorneys' fees pursuant to Section 505. Pursuant to Rule 54(d), FICO provides a reasonable estimate of its attorneys' fees: through March 31, 2023, FICO estimates its attorneys' fees to be $8,077,349.63. FICO has incurred additional attorneys' fees since March 31, 2023, e.g., in connection with preparing post-trial briefing, and expects to continue to incur additional attorneys' fees in connection with post-trial briefing and appeals. Should this Court find that FICO is entitled to an award of attorneys' fees, FICO requests that it submit briefing and documentation to support the reasonableness of its requested attorneys' fees and that the Court provide a briefing schedule for the parties associated with the same.

**IV.    Conclusion**

The Court should grant FICO's motion for attorneys' fees. Doing so is proper under 17 U.S.C. § 505; it fulfills the purposes of the Copyright Act. Defendants' conduct was egregious and amounted to willful infringement. Indeed, Federal was aware of FICO's copyrights, ignored FICO's termination of the License Agreement, and disregarded FICO's warnings of willful infringement. ACE American never possessed any rights under the License Agreement. The Court should find that FICO is entitled to an award of its attorneys' fees. FICO will submit additional briefing and documentation to support the reasonableness of its requested attorneys' fees at a time to be determined by the Court.

Dated: April 21, 2023

<div style="margin-left:40%">

MERCHANT & GOULD P.C.

/s/ Heather Kliebenstein
Allen Hinderaker, MN Bar # 45787
Heather Kliebenstein, MN Bar # 337419
Paige S. Stradley MN #393432
Michael A. Erbele, MN Bar # 393635
Joseph Dubis, MN Bar # 398344
Gabrielle L. Kiefer, MN Bar # 402364

MERCHANT & GOULD P.C.
150 South Fifth Street
Suite 2200
Minneapolis, MN 55402
Tel: (612) 332-5300
Fax: (612) 332-9081
ahinderaker@merchantgould.com
hkliebenstein@merchantgould.com
pstradley@merchantgould.com

</div>

26

merbele@merchantgould.com
jdubis@merchantgould.com
gkiefer@merchantgould.com

*Attorneys for Plaintiff Fair Isaac
Corporation*