# EXHIBIT 2

# EXCERPT OF THE MAY 31, 2019, REPLY EXPERT REPORT OF NEIL J. ZOLTOWSKI WITH RESPECT TO DAMAGES

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY, and<br>ACE AMERICAN INSURANCE COMPANY<br><br>    Defendants. | Case No. 16-CV-1054(WMW/DTS)<br><br>**REPLY EXPERT REPORT OF<br>NEIL J. ZOLTOWSKI<br>WITH RESPECT TO DAMAGES** |

Respectfully submitted this 31st day of May, 2019

_____

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

> *iv.* <u>Named Application is the Correct License Structure</u>

65. I disagree with Mr. Bakewell and Dr. Kursh that FICO should be allowed to recover only the "commercially reasonable" amount or the "intrinsic value" of the Blaze Advisor software license Federal and FICO "would have" negotiated in 2016. As previously explained, a hypothetical negotiation culminating in a perpetual ELA is the wrong lens through which to evaluate FICO's lost license fees in this matter. Based on the facts of this case as I understand them, FICO's lost license fees should be evaluated only in light of Defendants' unauthorized exploitation of Blaze Advisor both before and after FICO terminated the SLM Agreement in 2016.

66. There is no other objective measure of FICO's lost license fees than its list prices for each application that Defendants are accused of wrongfully using. Based upon its anticipated future use and the scheduled trial date in this matter, Defendants will have improperly used Blaze Advisor for close to four (4) years in the United States, and even longer in foreign locations, by the end of 2019.[108]

67. As a general premise, FICO's history of licensing Blaze Advisor to different customers has no bearing on the fees it has lost as a result of Defendants' wrongful and continued use. Nonetheless, I am also not aware of documents or testimony describing a situation between FICO and another customer that parallels the circumstances in this case or that suggests FICO discounted license fees for objectively unauthorized and unlicensed use of Blaze Advisor software.

68. Mr. Bakewell's suggestion that FICO's agreement with ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ merger is somehow indicative of FICO's lost license fees lacks credulity.[109] Unlike this matter and as explained in the Bakewell Report, ▉▉▉ stopped using Blaze Advisor in accordance with the terms of FICO's customary license agreement.[110] Not surprisingly, the parties negotiated a relatively low final payment commensurate with ▉▉▉ discontinued use.[111] If, like ▉▉▉

---

[108] Bakewell Report at 37, Footnote 179. According to Mr. Bakewell, Defendants are in the process of developing an alternative solution that is "expected to be completed, tested and implemented by December 31, 2019."
[109] Bakewell Report at 26, par. 88.
[110] Bakewell Report at 25, par. 82.
[111] Bakewell Report at 26, par. 87.

21