# EXHIBIT 7

**957**

```
 1              UNITED STATES DISTRICT COURT
                  DISTRICT OF MINNESOTA
 2
    ------------------------------------------------------
 3                                   )
    Fair Isaac Corporation,          )  File No. 16-cv-1054(DTS)
 4   a Delaware Corporation,         )
                                     )
 5         Plaintiff,                )
                                     )
 6   v.                              )
                                     )
 7  Federal Insurance Company,       )  Courtroom 14W
     an Indiana corporation,         )  Minneapolis, Minnesota
 8   and ACE American Insurance      )  Monday, February 27, 2023
     Company, a Pennsylvania         )  9:00 a.m.
 9   Corporation,                    )
                                     )
10         Defendants.               )
                                     )
11  ------------------------------------------------------
12
13
14           BEFORE THE HONORABLE DAVID T. SCHULTZ
           UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
15
16            (JURY TRIAL PROCEEDINGS - VOLUME VI)
17
18
19
20
21
22     Proceedings recorded by mechanical stenography;
    transcript produced by computer.
23                         * * *
24
25
```

**958**

```
 1  APPEARANCES:
 2   For Plaintiff:    MERCHANT & GOULD P.C.
                       BY:  ALLEN W. HINDERAKER
 3                          HEATHER J. KLIEBENSTEIN
                            PAIGE S. STRADLEY
 4                          MICHAEL A. ERBELE
                            JOSEPH W. DUBIS
 5                          GABRIELLE L. KIEFER
                       150 South Fifth Street, #2200
 6                     Minneapolis, Minnesota 55402
 7   For Defendants:   FREDRIKSON & BYRON
                       BY:  TERRENCE J. FLEMING
 8                          LEAH C. JANUS
                            CHRISTOPHER D. PHAM
 9                          RYAN C. YOUNG
                            PANHIA VANG
10                     200 South Sixth Street, #4000
                       Minneapolis, Minnesota 55402
11
                       O'MELVENY & MYERS LLP
12                     BY:  LEAH GODESKY
                            ANTON METLITSKY
13                          DARYN E. RUSH
                            ROXANA GUIDERO
14                     Times Square Tower
                       7 Times Square
15                     New York, New York 10036
16   Court Reporters:  RENEE A. ROGGE, RMR-CRR
                       KRISTINE MOUSSEAU, CRR-RPR
17                     MARIA V. WEINBECK, RMR-FCRR
                       PAULA RICHTER, RMR-CRR-CRC
18                     United States District Courthouse
                       300 South Fourth Street, Box 1005
19                     Minneapolis, Minnesota 55415
20
                              * * *
21
22
23
24
25
```

**959**

```
 1                      I N D E X
                                              PAGE
 2
    HENRY MIROLYUZ
 3    Examination By Mr. Hinderaker           971

    CLAUDIO GHISLANZONI
 4    Cross-Examination By Mr. Hinderaker    1046
      Direct Examination By Ms. Godesky      1131
 5    Recross-Examination By Mr. Hinderaker  1161
      Redirect Examination By Ms. Godesky    1170
 6    Recross-Examination By Mr. Hinderaker  1171

 7  JOHN TAYLOR
      Examination By Mr. Hinderaker          1174
 8


10  DEFENDANTS' EXHIBITS                     REC'D
11   517                                      1080
     518                                      1082
12   526                                      1096
     1002                                     1088
13   1005                                     1088
     1007                                     1088
14   1008                                     1088

15
    PLAINTIFF'S EXHIBITS                     REC'D
16   39                                       1140
```

**960**

```
 1                          9:00 A.M.
 2
 3          (In open court without the Jury present.)
 4          THE COURT:  Please be seated.  Good morning,
 5  everyone.
 6          The record should reflect that we are in the
 7  courtroom outside the presence of the jury.  As I understand
 8  it, there is a couple of issues, at least one, that we need
 9  to take up now before we begin with testimony and that I
10  think is the interrogatory answer.
11          Is that correct, Mr. Hinderaker?
12          MR. HINDERAKER:  Yes, Your Honor.
13          THE COURT:  Okay.  And tell me what it is you plan
14  to put in and, if it's not obvious, why it's relevant.
15          MR. HINDERAKER:  This is a copy of it.
16          THE COURT:  Yeah, I've looked at it.  Go ahead and
17  bring it up.  Well, what are you proposing to do with this
18  exactly?
19          MR. HINDERAKER:  Well, mister -- well, I guess it
20  comes up in Mirolyuz's deposition because Mr. Mirolyuz is
21  the one who verified it.
22          THE COURT:  Right.
23          MR. HINDERAKER:  During the course of the
24  deposition we had an unsigned copy, and during the
25  deposition I asked Mr. Mirolyuz, and he did verify it in the
```

**1049**

1  Advisor?
2  A.  So at the beginning of 2016, in February, around
3  February time, we commenced the activity of analysis of all
4  the software products, and we formed the working group
5  called a cross divisional TDA, and I believe one of the
6  evidence that you have seen today carried that name.
7  Q.  Yes.  And I think we will look at that in a little
8  while.
9  A.  Yes.
10 Q.  And so now to go from this time in 2016, and is it
11 accurate also to say that it was in the beginning of 2018
12 that a new IT strategy for the whole enterprise was being
13 formulated?
14 A.  Yes.  It was at the beginning of that year, 2018, we
15 formulated a new IT strategy for the enterprise.
16 Q.  And between the date of March 16th -- date of March 2016
17 and this time frame in 2018, you started to look at a new IT
18 strategy for the whole enterprise, Blaze Advisor continued
19 to be used for applications in connection with selling
20 insurance?
21 A.  Blaze Advisor continued to be used in those applications
22 that had Blaze Advisor as a component that came from legacy
23 Chubb and one application legacy ACE.
24 Q.  We'll talk about that one application in a bit, but that
25 one application from legacy ACE, you're speaking of a legacy

**1050**

1  ACE license agreement with Blaze Advisor?
2  A.  That is correct.
3  Q.  And we can -- and with respect to that license
4  agreement, Blaze Advisor was not used by legacy ACE in
5  connection with selling insurance?
6  A.  It was a set of rules called common rules.
7  Q.  Right.  A set of rules for a different purpose than
8  selling insurance?
9  A.  Yes.
10 Q.  And then as you progressed into 2018 with your IT
11 strategy for the whole enterprise, at a certain point, you
12 reached a decision to adapt an open source technology
13 strategy.  Agreed?
14 A.  As part of the or embedded in the IT strategy that we
15 formulated in 2018, one important decision we made at the
16 time is to expand, increase adaption of open source
17 software.
18 Q.  So now this brings us from March 2016 through 2017
19 through 2018, and it becomes later in the beginning of 2019
20 that you made a decision to replace Blaze Advisor with
21 Drools, the open source solution?
22 A.  That is correct statement.
23 Q.  And then in approximately -- it's approximate, but once
24 you made the decision in the beginning of 2019 to replace
25 Blaze Advisor with Drools, it took about nine months after

**1051**

1  that for some -- for some, many of the applications to
2  actually accomplish the replacement of Blaze Advisor with
3  Drools, correct?
4  A.  Yeah.  We completed an entire migration from Blaze
5  Advisor to Drools in April 2020.
6  Q.  That was going to be my next question, just to follow
7  up.  The whole project of replacing Blaze Advisor was not
8  completed until April 2020.  Agreed?
9  A.  That's when the last application was replaced, the rules
10 were replaced.
11 Q.  Understood.  So from March 2016, '17, '18, '19 to
12 probably March/April of 2020, that was a time frame that was
13 consumed to fully replace Blaze Advisor and all the
14 applications that Chubb & Son had them in?
15 A.  I would correct that statement in terms of, we commenced
16 the activities of migration away from Blaze Advisor at the
17 beginning of 2019, and we completed them in April 2020.
18 Q.  I think we just said the same thing.  All right.  Fine.
19      When you were in the process of considering what
20 technology to use enterprise-wide instead of Blaze Advisor,
21 my understanding is that you looked at only two other
22 technologies, one of them was ODM.  You agree?  Yes?
23 A.  Yes.
24 Q.  And the other one was Drools, correct?
25 A.  Yes.

**1052**

1  Q.  And ODM is a product from IBM?
2  A.  Yes.
3  Q.  And Drools is an open source technology, correct?
4  A.  Yes.
5  Q.  Meaning anybody can use it, but if you want maintenance
6  service, you get that, you pay a fee for maintenance service
7  from a provider?
8  A.  That is correct.
9  Q.  All right.  And if we haven't already said so, Drools
10 is, Drools is open source.
11 A.  Correct.  Drools is open source.
12 Q.  All right.  All right.  Maybe we said that.  So now I
13 would like to turn to that time frame before Blaze Advisor
14 was replaced, and in your binder is a document that you have
15 a tab for 517.  Could you put that in front of you, please?
16 A.  517, did you say?
17 Q.  Yes.
18 A.  Found it.
19      MS. GODESKY:  Your Honor, is this published to the
20 jury?
21      THE COURT:  Not now.
22      MS. GODESKY:  Thank you.
23      MR. HINDERAKER:  Your Honor, this exhibit and the
24 other one are in the same category.  We will do them one at
25 a time.

**1198**

```
UNITED STATES DISTRICT COURT
    DISTRICT OF MINNESOTA

-----------------------------------------------------
                                 )
Fair Isaac Corporation,          ) File No. 16-cv-1054(DTS)
a Delaware Corporation,          )
                                 )
        Plaintiff,               )
                                 )
v.                               )
                                 )
Federal Insurance Company,       ) Courtroom 14W
an Indiana corporation,          ) Minneapolis, Minnesota
and ACE American Insurance       ) Tuesday, February 28, 2023
Company, a Pennsylvania          ) 8:50 a.m.
Corporation,                     )
                                 )
        Defendants.              )
                                 )
-----------------------------------------------------


           BEFORE THE HONORABLE DAVID T. SCHULTZ
        UNITED STATES DISTRICT COURT MAGISTRATE JUDGE


             (JURY TRIAL PROCEEDINGS - VOLUME VII)






    Proceedings recorded by mechanical stenography; transcript
produced by computer.
                           * * *
```

**1199**

```
APPEARANCES:

For Plaintiff:     MERCHANT & GOULD P.C.
                   BY: ALLEN W. HINDERAKER
                       HEATHER J. KLIEBENSTEIN
                       PAIGE S. STRADLEY
                       MICHAEL A. ERBELE
                       JOSEPH W. DUBIS
                       GABRIELLE L. KIEFER
                   150 South Fifth Street, #2200
                   Minneapolis, Minnesota 55402

For Defendants:    FREDRIKSON & BYRON
                   BY: TERRENCE J. FLEMING
                       LEAH C. JANUS
                       CHRISTOPHER D. PHAM
                       RYAN C. YOUNG
                       PANHIA VANG
                   200 South Sixth Street, #4000
                   Minneapolis, Minnesota 55402

                   O'MELVENY & MYERS LLP
                   BY: LEAH GODESKY
                       ANTON METLITSKY
                       DARYN E. RUSH
                       ROXANA GUIDERO
                   Times Square Tower
                   7 Times Square
                   New York, New York 10036

Court Reporters:   RENEE A. ROGGE, RMR-CRR
                   KRISTINE MOUSSEAU, CRR-RPR
                   MARIA V. WEINBECK, RMR-FCRR
                   PAULA RICHTER, RMR-CRR-CRC
                   United States District Courthouse
                   300 South Fourth Street, Box 1005
                   Minneapolis, Minnesota 55415

                           * * *
```

**1200**

I N D E X
                                                    PAGE

JOHN TAYLOR
  Via Deposition By Mr. Hinderaker                  1219


NEIL J. ZOLTOWSKI
  DIRECT EXAMINATION BY MS. KLIEBENSTEIN            1246
  CROSS-EXAMINATION BY MS. GODESKY                  1334
  REDIRECT EXAMINATION BY MS. KLIEBENSTEIN          1350
  RECROSS-EXAMINATION BY MS. GODESKY                1351

RANDOLPH BICKLEY WHITENER
  DIRECT EXAMINATION BY MR. HINDERAKER              1353


PLAINTIFF'S                                         REC'D
 857                                                1361

**1201**

```
                       February 28, 2023
                         8:50 A.M.


         (In open court without the Jury present.)
         THE COURT:  Good morning.  Please be seated.
         All right.  Good morning, everyone.  We're on the
record outside the presence of the jury.  I understand the
parties have an issue with respect to some of the
interrogatory answers that are intended to come in -- into
evidence today.
         So, Ms. Kliebenstein, or whomever on that side,
come on up.
         MS. KLIEBENSTEIN:  Thank you.  Good morning, Your
Honor.
         We have, we have three -- two and a half issues,
if you will.  So one of them is the interrogatories, but I
think I'll start with something else first.  The defendants
have objected to our inclusion in Mr. Zoltowski's
demonstrative of revenues associated with the Chubb
Insurance Company Canada.  And as we -- they say that
it's -- it was decided on summary judgment, that it's not in
the case anymore.  But as we heard from Mr. Pandey and
Mr. Mirolyuz, that application -- the application running in
that entity in Canada is running out of Raleigh, North
Carolina, and we have outlined the case for infringement in
```

1230

1  Q. Okay. All right. Let's see if your understanding is
2  similar to mine. We've got some whereas clauses, and then
3  "So now, therefore, the parties agree as follows: The
4  following entities shall be added to the agreement as
5  service recipients of ACE American," and then it lists a
6  number of entities.
7       Do you see that? And all of the entities that it
8  lists are wholly-owned subsidiaries of Federal Insurance,
9  correct?
10 A. At what time period?
11 Q. Well, before the merger and after the merger.
12 A. That is, I believe, incorrect.
13 Q. And the amendment, this amendment number one, as we
14 said, is effective January 1st, 2008. So do you have an
15 understanding of how this amendment number one affects the
16 service agreements that we've looked at between Chubb & Son,
17 a Division of Federal, or between Federal and these various
18 entities -- and all of these entities?
19 A. I'm not sure it would have any impact.
20 Q. Okay. And why do you say that?
21 A. The agreements are still -- the other agreements are
22 still in place.
23 Q. We just looked at a number of service management
24 agreements between Federal or Chubb & Son, a Division of
25 Federal.

1231

1  A. Mm-hmm (Yes).
2  Q. You just said that all of those managements service
3  agreements, to your knowledge, still exist?
4  A. Mm-hmm (Yes).
5  Q. And my question is whether you understand that, and I'm
6  not saying -- whether you understand one way or another that
7  pursuant to amendment number one to this service agreement
8  32, all of the services that Chubb & Son, a Division of
9  Federal provided to those various entities is now being --
10 is now being met by ACE American Insurance Company.
11      Do you understand that question?
12 A. I understand that -- I understand that question. I'm
13 not -- at the exact date, now Federal no longer has
14 employees. Employees were moved to ACE American at, I
15 believe -- I believe it was 1/1/17.
16 Q. ACE American Insurance provided listed services to
17 Federal, and by way of doing that, meets Federal's
18 obligations to the various entities under Federal or Chubb &
19 Son, a Division of Federal's, management services agreement?
20 A. ACE American -- to the best of my knowledge, yes, I
21 would agree with that. ACE American provides services to
22 Federal.
23 Q. And as of January 1, 2017, did all of the employees of
24 Federal or Chubb & Son, a Division of Federal, become
25 employees of ACE American Insurance Company?

1232

1  A. To the best of my knowledge.
2  Q. Exhibit 33 is a blowup of another document that was
3  produced to us in the litigation, Federal 004420_001. You
4  can look at the original if you want, but I think the bigger
5  blowup is easier.
6       So we agree we're looking at a document where, in
7  the key at the right-hand bottom, it says, "As of December
8  31, 2008." With me so far?
9  A. Yes.
10 Q. Agreed? Okay. And then I would like you to confirm
11 that to the best of your knowledge as of December 31, 2008,
12 this exhibit is giving us the organizational structure of
13 Federal Insurance Company?
14 A. To the best of my knowledge, that's what the document
15 says.
16 Q. Okay. And so for context later on, can we agree that as
17 of the end of December 2008, Chubb Insurance Company of
18 Europe, Chubb Insurance Company of Canada and Chubb
19 Insurance Company of Australia Limited are all wholly-owned
20 subsidiaries of Federal?
21 A. That's what the chart indicates, yes.
22 Q. Mr. Taylor, Exhibit Number 34 is a document produced to
23 FICO in the context of litigation as Federal 000060_001 and
24 2. And take the time that you would like. I will represent
25 that it is an exhibit from -- a year-end statement of the

1233

1  Chubb Corporation December 31, 2013. And I would like you
2  to confirm that it accurately identifies those subsidiaries,
3  the wholly-owned subsidiaries of Federal as of its date?
4  A. Yes, it appears to.
5  Q. Mr. Taylor, Exhibit 35 is a very similar agreement, only
6  for the time period December 31, 2014. And to the best of
7  your knowledge, does this accurately show the wholly-owned
8  subsidiaries of Federal Insurance Company as of this time
9  frame?
10 A. Yes, it appears to.
11 Q. Do we agree that Exhibit 36 is a 10-K submission to the
12 United States Securities and Exchange Commission for the
13 period ending December 31, 2016, on behalf Chubb Limited?
14 A. Correct. It appears that.
15 Q. Exhibit 37, you will see from the first page, it says it
16 is a sub document, Exhibit 21.1, and I'll represent that it
17 is from the December 31, 2016 10-K that we just identified
18 as Exhibit 36. If you would like to confirm, feel free. If
19 you are willing to accept my representation, we will move
20 on.
21 A. I will accept your representation.
22 Q. And so then if we go to the Bates numbered page 6, do we
23 agree that this states the wholly-owned subsidiaries of
24 Federal Insurance Company as of year end 2016?
25 A. It appears to, yes.