# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| FAIR ISAAC CORPORATION, a Delaware corporation, | ) ) ) | Case No. 16-cv-1054 (DTS) |
| Plaintiff, | ) ) | **Jury Trial Demanded** |
| v. | ) ) | |
| FEDERAL INSURANCE COMPANY, an Indiana corporation and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## PLAINTIFF FAIR ISAAC CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

## Table of Contents

I.      Introduction ......................................................................................................... 1

II.     Legal Standard .................................................................................................... 2

III.    Federal breached Paragraph 3.1(iv) of the License Agreement by disclosing
        and permitting use and access to Blaze Advisor by third-party consultants. ........... 3

        A.      The License Agreement is a valid and enforceable contract ........................ 4

        B.      FICO performed under the License Agreement. ............................................ 4

        C.      Federal breached Paragraph 3.1(iv) by disclosing, or permitting use
                of or access to, Blaze Advisor by third parties. .......................................... 5

        D.      FICO has been harmed by Federal's breach of Paragraph 3.1(iv). .............. 7

IV.     FICO properly terminated the License Agreement. ............................................... 11

        (1)     Paragraph 9.2(c) first sentence governs termination for breach
                of Paragraph 3.1(iv). ................................................................................ 12

        (2)     Paragraph 9.2(c) excludes a materiality requirement. ...................... 14

V.      Conclusion .......................................................................................................... 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*100 Queens Boulevard Assocs., LLC v. G&C Coffee Shop,*
15 Misc. 3d 141(A) (N.Y. App. Term. May 24, 2007)................................................. 16

*Andreas v. Volkswagen of Am., Inc.,*
336 F.3d 789 (8th Cir. 2003) ...................................................................................... 3

*Bombardier Rec. Prods. v. Arctic Cat Inc.,*
331 F. Supp. 3d 902 (D. Minn. 2018) ........................................................................ 3

*CMAX/Cleveland, Inc. v. UCR, Inc.,*
804 F. Supp. 337 (M.D. Ga. 1992) ............................................................................ 10

*Golub Cap. LLC v. NB Alts. Advisers LLC,*
No. 21-cv-3991 (LJL), 2022 WL 540653 (S.D.N.Y. Feb. 22, 2022) ........................... 3

*Hirschfeld v. Stone,*
193 F.R.D. 175 (S.D.N.Y. 2000) ............................................................................... 10

*Hunt ex rel. Hunt v. Lincoln Cnty. Mem'l Hosp.,*
317 F.3d 891 (8th Cir. 2003) ...................................................................................... 2

*Joseph Victori Wines, Inc. v. Vina Santa Carolina S.A.,*
933 F. Supp. 347 (S.D.N.Y. 1996).............................................................................. 17

*Korpak, Ltd. v. Williams Lea Inc.,*
No. 20 Civ. 6880 (KPF), 2022 WL 375543 (S.D.N.Y. Feb. 7, 2022) .......................... 9

*Kronos, Inc. v. AVX Corp.,*
612 N.E.2d 289 (N.Y. 1993)....................................................................................... 3

*McCoy Assocs., Inc. v. Nulux, Inc.,*
218 F. Supp. 2d 286 (E.D.N.Y. 2002) ................................................................... 3, 11

*MVP Health Plan, Inc. v. OptumInsight, Inc.,*
No. 1:13-CV-1578, 2016 WL 6638190 (N.D.N.Y. Sept. 30, 2016)........................... 11

*Orlander v. Staples, Inc.,*
802 F.3d 289 (2d. Cir. 2015)....................................................................................... 9

*Peter J. Solomon Co., L.P. v. ADC Prods. (UK) Ltd.*,
    No. 14CV4086-LTS, 2016 WL 1261136 (S.D.N.Y. Mar. 30, 2016) ......................... 17

*Taylor Precision Prods., Inc. v. Larimer Grp., Inc.*,
    No. 1:15-cv-4428 (ALC), 2018 WL 4278286 (S.D.N.Y. Mar. 26, 2018).................... 9

*Versata Software, Inc. v. Internet Brands, Inc.*,
    902 F. Supp. 2d 841 (E.D. Tex. 2012)................................................................. 10, 11

*Weeks Marine, Inc. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n*,
    No. 08 Civ 9878 (NRB), 2011 WL 3796331 (S.D.N.Y. Aug. 25, 2011) .................. 11

*ZBD Constructors, Inc. v. Billings Generation, Inc.*,
    No. 09 Civ. 6667 (NRB), 2011 WL 1327144 (S.D.N.Y. Mar. 25, 2011) .................. 11

**Other Authorities**

Fed. R. Civ. P. 50...........................................................................................*passim*

iii

## I.     Introduction

Pursuant to Federal Rule of Civil Procedure 50(b), Plaintiff Fair Isaac Corporation ("FICO") seeks judgment as a matter of law that Defendant Federal Insurance Company ("Federal") breached Paragraph 3.1(iv) of the 2006 License Agreement and, separately, that FICO properly terminated the License Agreement based on that same breach.[1]

Paragraph 3.1(iv) prohibits Federal from disclosing, permitting use of, or access to Blaze Advisor by third parties. Federal admittedly disclosed and permitted use of and access to Blaze Advisor by third-party consultants DWS Group and AppCentrica. These third-party consultants had no right to use or access Blaze Advisor under the License Agreement. And this disclosure and use by third-party consultants harmed FICO: FICO lost the ability to control the access and use of its copyrighted Blaze Advisor software and to protect its intellectual property, the very purpose of Paragraph 3.1(iv). All the evidence presented at trial supports that Federal breached Paragraph 3.1(iv).

Because Federal breached Paragraph 3.1(iv), FICO was permitted to terminate the License Agreement. This is true regardless of whether Federal's breach was material because the parties contracted around a materiality requirement. Paragraph 2 and Paragraph 3 of the License Agreement (including Paragraph 3.1 at issue here) are the license granted under the License Agreement; they express the rights and the restrictions on those rights that are the license grant. The remedy for violation of "the licenses

---

[1] After the close of the evidence, but before the case was submitted to the jury, FICO filed a motion for judgment as a matter of law on this issue under Federal Rule of Civil Procedure 50(a). (Dkt. 1144.) The Court denied the motion. (Declaration of Paige Stradley Ex. 1 at 2521:14.)

granted" is governed by the first sentence of Paragraph 9.2(c). That first sentence of Paragraph 9.2(c) permits immediate termination of the License Agreement for violations of "any terms of the licenses granted in this Agreement."

Paragraph 9.2(c)'s language is unambiguous; it expressly omits a materiality requirement. This omission stands in stark contrast to other language in the License Agreement that expressly requires that a breach be material to allow for termination. Paragraph 9.2(c), first sentence, gave FICO the right to immediately terminate the License Agreement without a finding of materiality when, as here, Paragraph 3.1(iv) of the license grant was violated.

FICO put forth unrebutted evidence of disclosure and use by third-party consultants, and no reasonable jury could have found in favor of Federal. FICO is entitled to judgment as a matter of law that Federal breached Paragraph 3.1(iv). Fed. R. Civ. P. 50; *Hunt ex rel. Hunt v. Lincoln Cnty. Mem'l Hosp.*, 317 F.3d 891, 893 (8th Cir. 2003) ("A motion for judgment as a matter of law should be granted when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party.") (quoting *Neely v. Am. Family Mut. Ins. Co.*, 123 F.3d 1127, 1129 (8th Cir. 1997)). The Court should also find as a matter of law that FICO properly terminated the License Agreement under Paragraph 9.2(c) first sentence based on Federal's breach of Paragraph 3.1(iv).

## II.    Legal Standard

A Rule 50(b) motion is a renewal of a prior Rule 50(a) motion made at the close of the evidence and as such is limited to those issues raised in the previous motion. *See* Fed.

R. Civ. P. 50(b); *see also Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 794 (8th Cir. 2003) (citing *Midamar Corp. v. Nat'l-Ben Franklin Ins. Co. of Ill.*, 898 F.2d 1333, 1337 (8th Cir. 1990) ("[A] party cannot assert a ground in a [Rule 50(b)] motion for judgment notwithstanding the verdict that was not previously asserted in the party's [Rule 50(a)] motion for a directed verdict." (alterations in original)). "A motion for judgment as a matter of law should be granted when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party." *Bombardier Rec. Prods. v. Arctic Cat Inc.*, 331 F. Supp. 3d 902, 906-07 (D. Minn. 2018) (citing *Hunt*, 317 F.3d at 893).

## III. Federal breached Paragraph 3.1(iv) of the License Agreement by disclosing and permitting use and access to Blaze Advisor by third-party consultants.

To establish breach of contract, FICO must show (1) existence of a contract; (2) performance by FICO; (3) breach by Federal; and (4) FICO sustained damages. *Golub Cap. LLC v. NB Alts. Advisers LLC*, No. 21-cv-3991 (LJL), 2022 WL 540653, at *7 (S.D.N.Y. Feb. 22, 2022). FICO's damages may be in the form of nonmonetary harm resulting in nominal damages. *See Kronos, Inc. v. AVX Corp.*, 612 N.E.2d 289, 292-93 (N.Y. 1993) (explaining that "[n]ominal damages are always available in breach of contract actions" because "a party's rights in contract arise from the parties' promises and exist independent of any breach" and "[n]ominal damages allow vindication of those rights"); *McCoy Assocs., Inc. v. Nulux, Inc.*, 218 F. Supp. 2d 286, 294 (E.D.N.Y. 2002). Here, the License Agreement is a valid and enforceable contract and Federal breached that contract by disclosing and permitting use of and access to Blaze Advisor by DWS

Group and AppCentrica. FICO performed under the contract, and FICO was harmed by the breach. Judgment as a matter of law is required.

### A.   The License Agreement is a valid and enforceable contract.

There is no dispute that the License Agreement (Ex. 2)[2] is a valid and enforceable contract. (Dkt. 1072 (The Parties' Amended Joint Statement of Uncontested Facts), ¶ 1 ("Ex. J-1 is the Software License and Maintenance Agreement, including Amendment One and Amendment Two ("License Agreement").") , ¶ 2 ("The License Agreement is a valid and enforceable contract.").)  This element is met.

### B.   FICO performed under the License Agreement.

Federal did not contend that FICO failed to perform its obligations under the License Agreement. Under the License Agreement FICO was to provide Federal with the Blaze Advisor products and related maintenance services. (Ex. 2 at J-001-001.) The evidence introduced at trial showed that Federal received FICO's Blaze Advisor and used it in multiple applications. (*See, e.g.*, Exs. 3-5.) The evidence also shows that FICO provided maintenance and support to Federal over the years. (*See, e.g.*, Exs. 6-8.) Witnesses offered by both sides testified regarding the good and mutually beneficial relationship that FICO and Federal enjoyed over the years. (*See* Ex. 1 at 306:24-307:5 (Schreiber), 973:2-7 (Mirolyuz), 1662:9-17 (Waid).) FICO performed its obligations under the License Agreement.

---

[2] Unless otherwise noted, all exhibits are attached to the Declaration of Paige Stradley.

**C.**     **Federal breached Paragraph 3.1(iv) by disclosing, or permitting use of or access to, Blaze Advisor by third parties.**

Paragraph 3.1 placed restrictions on Federal's use of Blaze Advisor: "Client represents and warrants that it and its employees shall not: . . . (iv) disclose the Fair Isaac Products to, or permit the use or access of the Fair Isaac Products by, any third party or by any individuals other than the employees of Client . . . ." (Ex. 2 at J-001-002 ¶ 3.1.) This prohibition is clear and absolute. Federal breached the License Agreement.

Federal did not dispute that third party consultants accessed and used Blaze Advisor. As this Court properly noted, "[i]t doesn't strike me, to be honest with both of you, that the question of whether AppCentrica had Blaze or had access to Blaze and used it as a consulting tool [for] Chubb Canada is terribly in dispute." (Ex. 1 at 1109:13-16.) The Court is correct. AppCentrica had access to and used Blaze Advisor. The same is true of DWS Group. This is breach, and no reasonable jury could conclude otherwise.

FICO's Interrogatory No. 3 asked Federal to "[i]dentify every person, division, or entity, other than employees of the division Chubb & Son, of which Federal is aware, that has used the FICO Blaze Advisor® software after June 30, 2006 . . . ." (Ex. 9 at No. 3.) Federal, in its verified answer dated June 21, 2018, admitted that at least the following entities had used the Blaze Advisor software: "Chubb Insurance Company of Canada, including through its relationship with AppCentrica" and "Chubb Insurance Company of Australia Limited, including through its relationship with DWS Group." (*Id.*)

Furthermore, Counsel for Defendants, Ms. Godesky, admitted during her Opening Statement that an employee of AppCentrica gave a DWS Group employee a

demonstration of how Blaze Advisor worked. (Ex. 1 at 72:6-14.) All the evidence at trial conformed to the admission. Both DWS Group and AppCentrica had access to or used Blaze Advisor (and, accordingly Blaze Advisor was disclosed to them).

For example, Mr. Ghislanzoni testified that Chubb Canada was working with AppCentrica consultants on a project aimed at "creating the Australia Evolution application from the Canadian Evolution application." (*Id.* at 1095:1-14; *see also id.* at 1092:10-23 (testifying that Evolution in Canada used Blaze Advisor and that the decision was made to take a copy of the Canadian Evolution application and use it as a base to create an Australian application).) He further explained that AppCentrica was working with Chubb Canada on transferring that copy of Evolution to DWS Group while DWS Group was working with Chubb Australia on that transfer. (*Id.* at 1117:23-1118:13.)

By way of another example, P-1112 is a FICO support log which includes an inquiry from an employee of DWS Group to FICO. The specifics of that inquiry illustrate that DWS Group had access to and was using Blaze Advisor:

> The problem is, I am experiencing all the project files in read only mode after importing them in Blaze Advisor 7.3. Below are the steps: I have checked out an old Blaze Advisor 7.1 project from svn repo and saved it somewhere on my C drive. Say it xyz folder. Later on after having import instructions from Jeremy, I imported the project by selecting Rule project from the import wizard, creating a new connection by pointing it to that xyz folder, and importing the Blaze project from that xyz location.

(Ex. 10 at row 2; *see also* Ex. 1 at 913:10-914:13 (Mr. Carretta testifying that DWS Group and AppCentrica showed up on FICO's maintenance logs).) Email communications and posts in a FICO chat community further show DWS was working in Blaze Advisor to support Chubb Australia. (Exs. 11-13.) Indeed, DWS Group project

manager Martin Sill was communicating with Russell Hodey of Chubb Australia and had done a significant enough amount of work in Blaze Advisor to provide Chubb Australia with notes "on how rules are implemented in Blaze currently . . . ." (Ex. 14 at P-0526-002.) None of Federal's employees denied that DWS Group or AppCentrica used and accessed Blaze Advisor.

Disclosure to, and use and access by, DWS Group and AppCentrica was proven.

**D.** **FICO has been harmed by Federal's breach of Paragraph 3.1(iv).**

The unrebutted evidence at trial showed that Paragraph 3.1 provides FICO with significant protections that are important to FICO. This is inherent in the very purpose of Section 3.1: to ensure the software is used in accordance with the specific constraints or limitations found in the license grant and to protect FICO's valuable intellectual property (Blaze Advisor). (Ex. 1 at 1637:10-20.) There are two primary business reasons why it is important to FICO that Blaze Advisor software not be disclosed, used, or accessed by third parties:

> We like to know who is using our software at all times. That third party could be a competitor or that third party could be leaking confidential information about the use of our software to a competitor. It has happened in the past, so we want very tight controls on who actually gets access to that software.
>
> Another business reason is also, there is a bit of an integrity issue in the business here. Third parties purport themselves to be Blaze experts all the time, and we do not want third parties getting access to Blaze software unless we've at least had a conversation with the client about that third party and any representations that they've made.

(*Id.* at 1637:21-1638:20.)

The negotiations that ultimately led to execution of the License Agreement confirm the import of the protections offered by Paragraph 3.1. FICO attorney Jandeen Boone and James Black of the Vendor Management Group of Chubb & Son exchanged drafts with redlines showing proposed changes to the standard FICO agreement originally provided by Ms. Boone. (Exs. 15-18.) As these redlines and Ms. Boone's testimony illustrate, Federal sought to change the license agreement with respect to Paragraph 3.1. Indeed, Federal essentially completely deleted FICO's standard language and replaced that with its own language, which, on its face, would have offered FICO significantly less protection. (Ex. 15 at P-0307-004; Ex. 1 at 452:23-453:3.) FICO rejected these proposed changes outright and reinserted its standard language for Paragraph 3.1. (Ex. 17 at P-0310-003; Ex. 18 at P-0311-003; Ex. 1 at 455:12-456:14, 461:21-25.) Only a single, minor change to Paragraph 3.1 was ultimately included in the License Agreement, and all other aspects of Paragraph 3.1, including 3.1(iv), remained unchanged with standard FICO language. (Ex. 18 at P-0311-003; Ex. 1 at 463:19-464:14 (allowing addition to Paragraph 3.1(ii) that clarified that the restriction relating to altering, changing, etc. derivative works did not apply to alterations, changes, etc. in connection with rules).)

Federal also sought to change the agreement to give permission to the consultant ACS Commercial Solutions to use Blaze Advisor. (Ex. 1 at 453:7-454:5.) FICO did not blindly allow that addition either. Rather, it revised Federal's proposed language to add protections for FICO, namely, to ensure that ACS's use was subject to the terms and conditions of the agreement and would not exceed the limitations on use and other restrictions found in the agreement. (*Compare* Ex. 16 at P-0309-004 *with* Ex. 17 at

P-0310-004; *see also*, Ex. 1 at 462:1-17, 464:15-23.) As Mr. Waid explained, if FICO is going to allow third parties such as consultants to access and use Blaze Advisor, FICO ensures that the third-party consultant is utilizing the software consistent with the license grant, requires that Federal ensure compliance by the third-party consultant, and makes Federal responsible should the third-party consultant breach the terms of the agreement. (Ex. 1 at 1638:21-1639:24; *see also id.* at 943:11-15 (explaining that if a third-party consultant were to use FICO's Blaze Advisor without permission, the third-party consultant is not subject to any of the restrictions of the license agreement); *compare* Ex. 16 at P-0309-004 *with* Ex. 17 at P-0310-004.)

The very protections that Paragraph 3.1 were meant to afford FICO were violated by Federal's breach of Paragraph 3.1(iv). Federal's breach deprived FICO of its ability to control the access and use of Blaze Advisor and to ensure its intellectual property was protected. Federal attempted to characterize its breach as "technical" (Dkt. 1129 at 17) and harmless (Dkt. 1157). All evidence points to the contrary.[3]

---

[3] Separately, Federal's characterization of its breach as "technical"—meaning immaterial—is not a defense to breach. Under New York law materiality is not required to prove breach of contract; rather, it is relevant only to the quantum of damages and/or the type of remedy that may be allowed. *Taylor Precision Prods., Inc. v. Larimer Grp., Inc.*, No. 1:15-cv-4428 (ALC), 2018 WL 4278286, at *15 (S.D.N.Y. Mar. 26, 2018); *see also*, *e.g.*, *Orlander v. Staples, Inc.*, 802 F.3d 289, 298 (2d. Cir. 2015) ("The New York courts routinely allow a nonbreaching party to seek damages, not only for a material breach, but also for a minor, or immaterial, breach as well. . . . The materiality or non-materiality of a breach of contract only goes to the question of the type of remedy that may be allowed, not to the issue of liability." (alteration in original)); *Korpak, Ltd. v. Williams Lea Inc.*, No. 20 Civ. 6880 (KPF), 2022 WL 375543, at *5 (S.D.N.Y. Feb. 7, 2022) ("However, the materiality *vel non* of a breach of contract goes only to the question of the type of remedy that may be allowed, not to the issue of liability.").

Mr. Ghislanzoni testified that these third-party consultants were helping Chubb Canada and Chubb Australia copy Chubb Canada's application containing Blaze Advisor to give it to Chubb Australia for Chubb Australia's use. (*See*, *supra*, Part III(C).)[4] This implicates the exact concerns mentioned by Mr. Waid, i.e., wanting to protect FICO's valuable intellectual property, wanting to understand who is using the software, and wanting to ensure control over the same. In short, permitting unauthorized consultants to access and use Blaze Advisor is not a "technical" or harmless breach: it is a direct, fulsome breach of exactly what Federal represented and warranted that it would not do. *See CMAX/Cleveland, Inc. v. UCR, Inc.*, 804 F. Supp. 337, 359 (M.D. Ga. 1992) (holding that defendants breached the license agreement as a matter of law by providing unlicensed third-parties access to the software). The loss of control of the access and use of Blaze Advisor and the ability to ensure that such access and use was in accordance with the license grant and restrictions contained therein is harm to FICO. *Cf. Hirschfeld v. Stone*, 193 F.R.D. 175, 187 (S.D.N.Y. 2000); *Versata Software, Inc. v. Internet Brands, Inc.*, 902 F. Supp. 2d 841, 860 (E.D. Tex. 2012) (although harm is an element of proof of breach of contract, finding such harm may be nonmonetary in nature and further finding that evidence that a party was deprived of control over its trade secrets was sufficient to establish harm).

---

[4] Accordingly, although Federal contends that DWS accessed a "trial version" of Blaze Advisor (Dkt. 1157), the testimony of Mr. Ghislanzoni shows third-party consultants were copying applications containing Blaze Advisor. Such applications would not contain "trial versions" of Blaze Advisor. Federal never refuted Mr. Ghislanzoni's testimony and the related evidence showing third-party consultants were engaged to help create copies of an application containing Blaze Advisor.

FICO need not offer a monetary calculation to prove it was harmed. *See McCoy Assocs., Inc.*, 218 F. Supp. 2d at 294; *Versata Software, Inc.*, 902 F. Supp. 2d at 860. The evidence all points to the conclusion that disclosure to the third-party consultants forfeited FICO's negotiated rights to protect FICO's copyrighted software.[5]

## IV.    FICO properly terminated the License Agreement.

As shown above in Section III, Federal breached Paragraph 3.1(iv) by permitting disclosure, use, and access to Blaze Advisor by DWS Group and AppCentrica. The first sentence of Paragraph 9.2(c) governed violations of Paragraph 3.1 and gave FICO the right to immediately terminate for any violation of that Paragraph, without any materiality requirement. Because FICO had the right to terminate the License Agreement, regardless of materiality, FICO is entitled to judgment as a matter of law that it properly terminated the License Agreement rendering Federal a copyright infringer.

---

[5] In denying FICO's JMOL brought under Rule 50(a), this Court stated that the jury could find that the use by third-party consultants was "known" or "consented to" and, therefore, not a breach. (Ex. 1 at 2520:8-12.) However, these two grounds could not be the basis for the jury's finding of no breach. The jury was not instructed on waiver, estoppel, or any other defense in which knowledge or consent could negate a breach. (*See generally*, Dkt. 1167.) For good reason: the License Agreement expressly precluded a finding of waiver or estoppel based on alleged consent or knowledge. FICO and Federal specifically agreed to a "No Waiver" provision as well as an integration clause, and FICO and Federal never agreed to any change in the scope of the License Agreement in writing. (Ex. 2 at J-001-007 ¶¶ 10.4, 10.5); *see also Weeks Marine, Inc. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n*, No. 08 Civ. 9878 (NRB), 2011 WL 3796331, at *12-13 (S.D.N.Y. Aug. 25, 2011); *ZBD Constructors, Inc. v. Billings Generation, Inc.*, No. 09 Civ. 6667 (NRB), 2011 WL 1327144, at *9, *12 (S.D.N.Y. Mar. 25, 2011); *MVP Health Plan, Inc. v. OptumInsight, Inc.*, No. 1:13-CV-1578 (BKS-CFH), 2016 WL 6638190, at *9 (N.D.N.Y. Sept. 30, 2016). Moreover, the Court previously ruled that Federal's estoppel and waiver defenses only pertained to the License Agreement's purported (but nonexistent) geographic restriction. (Dkt. 731 at 41 n.13.)

### (1) Paragraph 9.2(c) first sentence governs termination for breach of Paragraph 3.1(iv).

Paragraph 9 governs termination of the License Agreement. It includes three separate sub-provisions. Each sub-provision of Paragraph 9 applies to a specific set of circumstances or type of breach. The first sentence of Paragraph 9.2(c) applies to violations of "any terms of the licenses granted in this Agreement." (Ex. 2 at J-001-007 ¶ 9.2(c).) The terms of the licenses granted include both affirmative rights and negative restrictions.

In the License Agreement, Paragraph 2 entitled "License Grant" includes an affirmative grant of rights from FICO to Federal and describes the scope of the same, and Paragraph 3 entitled "Rights and Restrictions" include additional affirmative rights as well as negative restrictions. Paragraph 3.1(iv), at issue here, is entitled "License Restrictions" and identifies numerous restrictions placed upon Federal. These "License Restrictions" are part of the terms of the licenses granted in the License Agreement. Indeed, Paragraph 9.2(c) is not mutual; it only gives FICO the right to terminate. This necessarily means that Paragraph 9.2(c) is only directed to violations of restrictions (not FICO's affirmative grant of rights), which supports that the restrictions in Paragraph 2 and 3 are included in the license grant. Accordingly, Paragraph 9.2(c), directed to violations of "any terms of the licenses granted," applies to violations of Paragraph 3.1(iv).

Federal has previously argued that that the "terms of the licenses granted" was limited to the terms found in Paragraph 2 of the License Agreement. (Dkt. 1141 at 4.)

This is wrong. The license grant includes both Paragraph 2 and Paragraph 3 as Paragraph 3 explicitly limits the Client's use of the licensed products and, indeed, is entitled "License Restrictions."

Contrary to Federal's suggestions, FICO does not contend that all the terms of the License Agreement are terms of the licenses granted. (Dkt. 1141 at 4.) FICO agrees the terms of the licenses granted is a subset of the rights, restrictions, and obligations in the License Agreement. For example, FICO agreed that Paragraph 10.8 is a term of the License Agreement but is not part of the licenses granted (and termination of Paragraph 10.8 is, therefore, governed by Paragraph 9.2(a)). (*See* Dkt. 1141 at 6; Ex. 1 at 1838:15-24.) That is not the case, however, for, the aptly named "License Restrictions" of Paragraph 3.1 which does fall within the subset of restrictions of the license granted. Violations of Paragraph 3.1(iv) are violations of the terms of the license granted.

Federal also previously argued that Paragraph 9.2(c)'s second sentence, not its first sentence, applies to violations of Paragraph 3.1(iv) because Paragraph 3.1(iv) is a provision "relating to the protection of Confidential Information." (Dkt. 1157 at 2.) This argument also fails. True, one purpose of Paragraph 3.1(iv) is to protect FICO's confidential information, but Paragraph 3.1(iv) is not directed to "Confidential Information" as that term is used in the License Agreement. While the protection or handling of Confidential Information appears in various provisions in the License Agreement, notably Paragraph 3.1 is not one of them. (*See* Ex. 2 at J-001-002 ¶ 3.1 (including no mention of Confidential Information).) "Confidential Information," as that term is used in the License Agreement, is addressed in Paragraph 7 which further refers

13

to the confidentiality provisions set forth in the Master Services Agreement. (*Id.* at J-001-005 ¶ 7.)  Nothing in the express language of Paragraphs 3 and 9 supports the contention that violations of Paragraph 3.1 are governed by the second sentence of Paragraph 9.2(c). The License Agreement can be read no other way: violations of Paragraph 3.1 are governed by the first sentence of 9.2(c).

### (2)     Paragraph 9.2(c) excludes a materiality requirement.

The first sentence of Paragraph 9.2(c) states "Fair Isaac may immediately terminate this Agreement without a requirement for prior notice or a cure period, if Client violates any terms of the licenses granted in this Agreement." (Ex. 2 at J-001-007 ¶ 9.2(c).) The plain language of this sentence is unambiguous. It includes no materiality requirement. Paragraph 9.2(c) gives FICO the right to terminate the License Agreement, regardless of materiality and without any prior notice or a cure period, for violation of any terms of the license grant, like the violation of Paragraph 3.1(iv) at issue here. (*Id.*)[6]

This lack of a materiality requirement to terminate the License Agreement for violations of the license grant is also readily apparent when comparing the language within Paragraph 9.2(c):

---

[6] At summary judgment (Dkt. 731), the Court was not presented with and did not address the issues now being raised—whether Paragraph 9.2(c) permits termination based on breach of Paragraph 3.1(iv) regardless of materiality. Similarly, although FICO raised this issue in its JMOL brought under Rule 50(a), the Court did not decide the issue. It found the evidence may support that Federal had not breached the License Agreement and further found that FICO's reading of 9.2(c) was reasonable, but it did not ultimately decide the question of whether 9.2(c) permits termination based on breach of Paragraph 3.1(iv) regardless of materiality because the initial question of breach was given to the jury. (Ex. 1 at 2519:25-2521:10.)

> (c) <u>Violation of License or Confidentiality Obligations.</u> Fair Isaac may immediately terminate this Agreement ·without a requirement for prior notice or a cure period, if Client violates any terms of the licenses granted in this Agreement. Either party may immediately terminate this Agreement by written notice to the other party if the other party materially breaches any of the provisions of this Agreement relating to the protection of Confidential Information or Intellectual Property.

(*Compare id.* at ¶ 9.2(c) first sentence *with* ¶ 9.2(c) second sentence.) The first sentence allows termination, regardless of materiality, for violations of the license grant, while the second sentence allows termination when there is a material breach relating to Confidential Information or Intellectual Property. The lack of a materiality requirement for violation of the license grant is further confirmed by comparing the language of Paragraph 9.2(c) to the language of Paragraph 9.2(a). Paragraph 9.2(a) expressly provides that to terminate the License Agreement for breach of a term of the License, the breach must be of "the material terms of this Agreement" or reflect numerous breaches that "cumulatively constitute a material breach." (*Id.* at J-001-006 ¶ 9.2(a).) Unlike Paragraph 9.2(a) and unlike the second sentence of Paragraph 9.2(c), the first sentence of Paragraph 9.2(c), directed to violation of the license grant, expressly excludes a materiality requirement to justify termination. Furthermore, Paragraph 9.2(a) and the second sentence of Paragraph 9.2(c) both include materiality requirements and discuss the same in terms of a party's "breach" or "breaches." (*Id.* at J-001-006 ¶ 9.2(a), J-001-007 ¶ 9.2(c) second sentence.) The first sentence of Paragraph 9.2(c) does not use the term "breach"; rather, it uses the term "violat[ion]" (*Id.* at J-001-007 ¶ 9.2(c) first sentence), further supporting that any violation of the license grant, regardless of materiality, permits FICO to terminate.

Federal has previously argued that the consequences that flow from applying Paragraph 9.2(c) as written are unfair because it allows FICO to immediately terminate for allegedly technical breaches without a notice and cure period.[7] (Dkt. 1141 at 3.) But a straightforward application of Paragraph 9.2(c) aligns with the purposes of Paragraph 3.1—it ensures FICO has the immediate ability to terminate if needed to control who accesses and uses Blaze Advisor and protect FICO's intellectual property. In other words, Paragraph 9.2(c) enables FICO to terminate before things go from bad to worse; FICO does not have to wait until the harm it suffers is substantial. It can protect itself immediately to prevent further and future harm when its software is being disclosed to and used by third parties and its intellectual property is at risk.

FICO and Federal specifically and purposefully contracted to give FICO the unfettered right to terminate for any violation of the license grant regardless of materiality. *100 Queens Boulevard Assocs., LLC v. G&C Coffee Shop*, 15 Misc. 3d 141(A), 141(A) (N.Y. App. Term. May 24, 2007) (where "the parties had specifically agreed that any breach would be deemed material . . . . the court is required to enforce the

_____

[7] Federal has also argued that because termination for breaches of Paragraph 10.8 are governed by Paragraph 9.2(a), termination for breaches of Paragraph 3.1 must also be governed by Paragraph 9.2(a). (Dkt. 1141 at 6 (arguing that Paragraph 10.8 and Paragraph 3.1(v) preclude much of the same thing).) While Paragraph 10.8 and 3.1(v) include some similarities, they are not identical provisions. Paragraph 3.1(v) precludes certain events with respect to the Fair Isaac Products, not all of which are encompassed by Paragraph 10.8. Similarly, Paragraph 10.8 encompasses certain events that are not included within the scope of Paragraph 3.1(v). That one particular sub-provision of Paragraph 3.1 may have some degree of overlap with another provision of the License Agreement is not unsurprising and does not support ignoring the clear and express termination right under Paragraph 9.2(c) for violations of Paragraph 3.1.

negotiated terms of the agreement and may not substitute its own judgment for that of the parties"); *Joseph Victori Wines, Inc. v. Vina Santa Carolina S.A.*, 933 F. Supp. 347, 352 (S.D.N.Y. 1996) ("Under New York law, where the parties to a contract have agreed to a written termination clause, it must be enforced as written. Furthermore, where a contract containing a written termination clause is silent as to whether cause is required for termination, the contract is terminable without cause." (citations omitted)); *Peter J. Solomon Co., L.P. v. ADC Prods. (UK) Ltd.*, No. 14CV4086-LTS, 2016 WL 1261136, at *4 (S.D.N.Y. Mar. 30, 2016) ("While [sic] is true that a material breach, if established, would typically relieve the non-breaching party of its obligation to perform and enable automatic termination, the parties here have specifically contracted around this general rule." (citation omitted)). This is consistent with the purpose of Section 3.1. The Court should find that FICO had the right to terminate the License Agreement for violations of Paragraph 3.1(iv), regardless of materiality, and that FICO properly terminated the License Agreement.

## V.    Conclusion

Federal breached the License Agreement. It admittedly disclosed and permitted access to and use of Blaze Advisor by DWS Group and AppCentrica in violation of Paragraph 3.1(iv). FICO terminated the License Agreement based, in part, on breach of Paragraph 3.1(iv) as it was permitted to do under Paragraph 9.2(c), regardless of materiality. FICO's termination based on a violation of Paragraph 3.1(iv) was proper.

FICO is entitled to judgment as a matter of law that Federal breached Paragraph

3.1(iv) and judgment as a matter of law that FICO properly terminated the License

Agreement.

Dated: April 21, 2023

MERCHANT & GOULD P.C.

/s/ Heather Kliebenstein
Allen Hinderaker, MN Bar # 45787
Heather Kliebenstein, MN Bar # 337419
Paige S. Stradley, MN Bar # 393432
Michael A. Erbele, MN Bar # 393635
Joseph W. Dubis, MN Bar # 398344
Gabrielle L. Kiefer, MN Bar # 0402364
MERCHANT & GOULD P.C.
150 South Fifth Street
Suite 2200
Minneapolis, MN 55402
Tel: (612) 332-5300
Fax: (612) 332-9081
ahinderaker@merchantgould.com
hkliebenstein@merchantgould.com
pstradley@merchantgould.com
merbele@merchantgould.com
jdubis@merchantgould.com
gkiefer@merchantgould.com

*Attorneys for Plaintiff Fair Isaac*
*Corporation*