UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| FAIR ISAAC CORPORATION, | No. 16-cv-1054 (DTS) |
| Plaintiff, | |
| v. | |
| FEDERAL INSURANCE COMPANY, an Indiana corporation, and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation, | DEFENDANTS' MEMORANDUM IN RESPONSE TO FICO'S MOTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 52(B) |
| Defendants. | |

Defendants Federal Insurance Company and ACE American Insurance Company submit this memorandum in response to Fair Isaac Corporation's ("FICO") motion under Federal Rule of Civil Procedure 52(b). FICO has moved the Court to make findings of fact and conclusions of law in support of the Court's (and the jury's) finding that FICO failed to carry its burden of proving that Blaze Advisor contributed to Defendants' revenue. As FICO correctly states, Defendants do not oppose that aspect of its motion. While Defendants do not object to the Court issuing findings on the topics that FICO has identified, FICO's request is substantially underinclusive. Defendants offer additional suggestions—which are by no means comprehensive—of areas in which the Court's findings and conclusions would be warranted.

1. FICO relied on Bick Whitener's testimony to satisfy its nexus burden. *See* Trial Tr. 2720-21; Dkt. 1189 (counsel for FICO arguing in closing that "Mr. Whitener said [that] Blaze Advisor added significant value to the defendants' process"); *see id.* 2718 (counsel

conceding in summation that Mr. Whitener, and not FICO's fact witnesses, was FICO's principal witness to prove the requisite nexus to revenue); *see also* Dkt. 1136 at 5–6 (as explained in Defendants' motion for judgment, neither Mr. Baseman, Mr. Baer, Mr. Marce, Mr. Ivey, Mr. Mirolyuz, nor Mr. Zoltowski could identify a causal connection between the use of Blaze and any revenue).

The Court should make findings concerning (i) whether Mr. Whitener was qualified to testify as an expert about whether Blaze contributed to revenue, *see, e.g.*, Trial Tr. 1531-46, Dkt. 1184 (Mr. Whitener's concessions that he never used Blaze or other business rules management software, never communicated about Blaze with anyone in the insurance industry or FICO's customers, and was first introduced to Blaze the day before his deposition through a 90-minute demonstration of its application to the college admissions process); *see also* Trial Tr. 1378, Dkt. 1183 (the Court: "[W]e'll cross that bridge [*i.e.*, Mr. Whitener's qualifications] here when we get to it."); (ii) whether, if Mr. Whitener was qualified to testify as an expert, his extensive concessions on cross-examination revealed that he could not, in fact, provide an opinion that Blaze contributed to Defendants' revenue, *see, e.g.*, Trial Tr. 1599, Dkt. 1184 (admitting, when asked point-blank, that he did not measure whether "Blaze actually contributed to any increase in revenue or profit at Chubb"); *id.* at 1565 (same); *id.* at 1558 (same); *see generally id.* 1554-60 (admitting that he could not say whether Blaze contributed at all to key aspects of Defendants' business); and (iii) whether Mr. Whitener's testimony purporting to connect Blaze to Defendants' revenue was credible.

Defendants submit that the evidence introduced at trial established that Mr. Whitener was not qualified to opine on whether Blaze contributed to Defendants' revenue; that his trial testimony failed to make a connection between Blaze and Defendants' revenue; and that to the extent his testimony could be construed as asserting such a connection, it is not credible.

2. FICO relied heavily at trial on Defendants' response to Interrogatory 17, which showed Blaze "touched" policies representing $21 billion in gross written premium. *See* Trial Tr. 2717-18; Dkt. 1189 (counsel in summation arguing FICO proved attribution "through the mechanisms of the litigation. We asked the defendants to swear under oath to us the number of polices and the dollar value of those policies that . . . used Blaze Advisor"). The Court should make findings about whether this interrogatory was relevant to whether Blaze contributed to Defendants' revenue, or whether it instead showed only the amount of revenue generated by policies that ran through applications that "used Blaze Advisor[,]" *id.*, without demonstrating one way or the other whether Blaze actually contributed to that revenue.

Defendants submit that the evidence introduced at trial showed that Interrogatory 17 established only the amount of revenue generated by policies that in some way "used Blaze Advisor," but did not establish that Blaze Advisor actually contributed to any of that revenue, which is the critical question with respect to disgorgement of profits in this case.

3. FICO relied extensively on testimony that Blaze was generally good and useful software and that technology is important. *See, e.g.*, Trial Tr. 2719; Dkt. 1189 (counsel in summation arguing that "Blaze Advisor is bringing . . . value to the process of selling

insurance"); Trial Tr. 1530, Dkt. 1184 (Mr. Whitener: "[M]y conclusion is that Blaze Advisor deployed by agents in some places, not all, added significant value to the defendants' business of selling insurance."); *id.* at 1531 ("I don't need a tape measure or stopwatch to know that computers executing transactions is faster than humans[.]"). The Court should make findings and conclusions about whether that sort of generalized testimony can prove that software contributed to revenue where that software is (i) not customer-facing, (ii) interchangeable with substantively identical products, and (iii) a small piece of a massive technology infrastructure.

Defendants submit that, both as a matter of fact and as a matter of law, testimony that Blaze was generally useful software cannot establish a nexus between Blaze and Defendants' revenues, especially when (as the evidence showed here) Blaze's functions could have been—and in the vast majority of cases, were—executed through other technologies or by manually coding the rules. *See Int'l Bus. Machines Corp. v. BGC Partners, Inc.*, 2013 WL 1775437, at *3-4 (S.D.N.Y. Apr. 25, 2013) ("[S]imply saying that copyrighted material may have played an 'important,' 'significant,' or 'meaningful' role' is insufficient" to satisfy the plaintiff's nexus burden, "particularly where": (i) "as part of [the defendant's] information technology infrastructure, it comprises only a portion of what enabled [the defendant] to conduct its business profitably"; (ii) defendant "did not market or sell the . . . software to its customers and there is no evidence that its customers cared what software system it used"; and (iii) "migration to another software system . . . would have little to no effect[.]" (internal quotation marks omitted)); *Complex Sys., Inc. v. ABN Ambro Bank N.V.*, 2013 WL 5970065, at *11 (S.D.N.Y. Nov. 8, 2013) (no nexus where

4

"services provided by [a defendant] are the result of a number of other factors" apart from a single software component, like "a number of [other] software applications and other technologies, in addition to skilled . . . personnel"); *Bayoh v. Afropunk LLC*, 2020 WL 6269300, at *6 (S.D.N.Y. Oct. 26, 2020).

| | |
|---|---|
| Dated:  May 1, 2023 | /s/ *Leah Godesky* |
| | Terrence J. Fleming (#0128983) |
| | tfleming@fredlaw.com |
| | Leah C. Janus (#0337365) |
| | ljanus@fredlaw.com |
| | Christopher D. Pham (#0390165) |
| | cpham@fredlaw.com |
| | Ryan C. Young (#0397751) |
| | ryoung@fredlaw.com |
| | Panhia Vang (#399444) |
| | pvang@fredlaw.com |
| | |
| | **Fredrikson & Byron, P.A.** |
| | 200 South Sixth Street, Suite 4000 |
| | Minneapolis, MN  55402-1425 |
| | (612) 492-7000 (tel.) |
| | (612) 492-7077 (fax) |
| | |
| | Leah Godesky (Admitted Pro Hac Vice) |
| | lgodesky@omm.com |
| | Anton Metlitsky (Admitted Pro Hac Vice) |
| | ametlitsky@omm.com |
| | Daryn Rush (Admitted Pro Hac Vice) |
| | drush@omm.com |
| | Roxana Guidero (Admitted Pro Hac Vice) |
| | rguidero@omm.com |
| | |
| | **O'Melveny & Myers LLP** |
| | Times Square Tower |
| | 7 Times Square |
| | New York, NY 10036 |
| | (212) 326-2000 |
| | |
| | ***Attorneys for Federal Insurance Company and ACE American Insurance Company*** |