## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

FAIR ISAAC CORPORATION,                    No. 16-cv-1054 (DTS)

        Plaintiff,

    v.

FEDERAL INSURANCE COMPANY,          **DEFENDANTS' MEMORANDUM**
an Indiana corporation, and ACE          **IN OPPOSITION TO FICO'S**
AMERICAN INSURANCE COMPANY,     **MOTION FOR ATTORNEYS' FEES**
a Pennsylvania corporation,

        Defendants.

Defendants Federal Insurance Company and ACE American Insurance Company submit this memorandum of law in opposition to FICO's motion for attorneys' fees.

## INTRODUCTION

FICO is not entitled to attorneys' fees. An award of fees turns, in large part, on the "objective reasonableness" of a losing party's position. *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 201 (2016). And Defendants' defense against FICO's copyright-infringement claim was objectively reasonable. Indeed, it was more than reasonable—FICO's infringement claim was derivative of four contract claims, and FICO lost three of them: one at summary judgment, another on a motion for judgment as a matter of law granted during trial, and a third before the jury. As for the fourth—the Section 10.8 claim—the Court expressly held that Defendants' position was reasonable both as to Federal, Dkt. 731 at 48 ("Federal's interpretation of Section 10.8 is reasonable."), and ACE American, Trial Tr. 2522, Dkt. 1188 ("[T]he testimony at trial would permit a reasonable

jury to find either way on the issue of ACE American's alleged infringement."). Defendants' positions in this case were thus objectively reasonable throughout; if any party took unreasonable positions, it was FICO, which lost two of its main arguments as a matter of law.

Nor do any other considerations favor a fee award. FICO claims Defendants willfully infringed. But, as a matter of law, a licensee with a reasonable defense is not a willful infringer. And FICO has *no* evidence that Defendants acted with subjective bad faith. FICO also claims that Defendants litigated this case improperly, but those complaints are both wrong and, in any event, have already been heard and adjudicated in the disposition of FICO's many—too many, in this Court's estimation—sanctions motions. Finally, FICO generally invokes the purposes of the Copyright Act. But the Supreme Court has made clear that the Copyright Act encourages parties with objectively reasonable infringement defenses to stand on their rights, as Defendants did, and it would undermine the purpose of the Copyright Act to punish Defendants for doing what the Act is meant to encourage. The Court should deny FICO's motion for attorneys' fees.

## ARGUMENT

## I. ATTORNEYS' FEES ARE NEVER AWARDED AS MATTER OF COURSE, AND THE OBJECTIVE REASONABLENESS OF DEFENDANTS' POSITION IS THE MOST IMPORTANT CONSIDERATION.

Under the Copyright Act, "the court may . . . award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. But "[a] district court may not award attorneys' fees as a matter of course[.]" *Kirtsaeng*, 579 U.S. at 202 (internal quotation marks and citations omitted). Instead, a court exercises its "equitable discretion"

2

in deciding a fee motion. *Fogerty v. Fantasy, Inc.*, 510 U.S. 518, 534 (1994); *Killer Joe Nev., LLC v. Does 1-20*, 807 F.3d 908, 911 (8th Cir. 2015).

In making that decision, the court "should give substantial weight to the objective reasonableness of the losing party's position." *Kirtsaeng*, 579 U.S. at 199. In assessing objective reasonableness, "courts consider whether the losing party had serious or colorable arguments in support of its position[,]" *Live Face on Web, LLC v. Renters Warehouse LLC*, 2019 WL 1097493, at *3 (D. Minn. Mar. 8, 2019), or, instead, whether its position was "so clearly untenable as to be utterly without merit[,]" *John v. MainGate, Inc.*, 2014 WL 3805662, at *5 (D. Minn. Aug. 1, 2014) (citing *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 123 (8th Cir. 1987)); *accord Am. Inst. of Physics v. Schwegman Lundberg & Woessner, P.A.*, 2013 WL 12329050, at *3 (D. Minn. Dec. 16, 2013) (an objectively unreasonable claim is one "wholly without merit") (quoting *Bar-Meir v. N. Am. Die Cast Ass'n*, 176 F. Supp. 2d 944, 947-50 (D. Minn. 2001)). "[A] good faith, colorable claim weighs heavily against a discretionary grant of fees." *Aamot v. Peterson*, 2020 WL 4926598, at *2 (D. Minn. Aug. 21, 2020). And, of course, "the mere fact that a [party] has prevailed does not necessarily equate with an objectively unreasonable claim." *Schwegman*, 2013 WL 12329050, at *2; *see Kirtsaeng*, 579 U.S. at 208 (court must not "conflate[] two separate questions: whether a defendant in fact infringed a copyright and whether he made serious arguments in defense of his conduct" because "[c]ourts every day see reasonable defenses that ultimately fail").

Focusing on objective reasonableness is important for two reasons. First, it "'further[s] the policies of the copyright act'" by "encourag[ing] parties with strong legal

3

positions to stand on their rights[.]" *Kirtsaeng*, 579 U.S. at 204-05 (quoting *Fogerty*, 510 U.S. at 527). Second, it is "administrable" because "[a] district court that has ruled on the merits of a copyright case can easily assess whether the losing party advanced an unreasonable claim or defense." *Id.* at 207.

Courts may also consider other "non-exclusive factors" such as "frivolousness, motivation, . . . and the need in particular circumstances to advance considerations of compensation and deterrence." *Kirtsaeng*, 579 U.S. at 202 (quoting *Fogerty*, 510 U.S. at 534 n.19).

## II. DEFENDANTS' DEFENSES TO INFRINGEMENT WERE OBJECTIVELY REASONABLE.

Defendants' defenses to FICO's copyright-infringement claim were objectively reasonable. FICO's infringement claim turned on its contention that it had a legal basis to terminate the License Agreement. It advanced four breach-of-contract theories that, in its view, entitled it to do so. First, FICO argued that Defendants improperly used Blaze abroad. Second, it argued that Defendants impermissibly allowed Federal's foreign Affiliates to use Blaze. Third, it contended that Defendants wrongfully permitted certain third-party consultants to access Blaze. And fourth, it alleged that Defendants violated the License Agreement's anti-assignment provision.

Defendants' positions on those first three theories were not only objectively reasonable; they were undeniably correct. If anything, it was *FICO's* position on at least two of these theories that was unreasonable. After all, the Court granted *Defendants* summary judgment on the claim that the License Agreement permitted the overseas use of

4

Blaze because the Agreement foreclosed that claim "unambiguously." Dkt. 731 at 38-41; *see id.* at 41 ("[T]he License Agreement unambiguously lacks a geographic restriction on the installation or physical location of Blaze Advisor[.]"). And in that same order, the Court recognized the "absurdity" of FICO's argument that the use of Blaze by Federal's foreign Affiliates violated the License Agreement, *id.* at 43 n.14; indeed the Court subsequently granted Defendants' motion for judgment as a matter of law on that issue before the case was submitted to the jury, *see* Trial Tr. 2518-19, Dkt. 1188. And even if FICO's contention that Defendants violated the Agreement by allowing the use of Blaze by third-party consultants was not unreasonable, it was nevertheless wrong, which is why the jury rejected it. *See* Trial Tr. 2741, Dkt. 1190.

That leaves the argument that Defendants infringed by continuing to use Blaze after FICO terminated the License Agreement for Defendants' violation of the anti-assignment provision, Section 10.8. While the jury disagreed with Defendants' position on the Section 10.8 claim, that does not render that position objectively unreasonable. *See Kirtsaeng*, 579 U.S. at 208; *see also Thomsen v. Famous Dave's of Am., Inc.*, 2009 WL 1514515, at *4 (D. Minn. June 1, 2009) ("While the Court ultimately disagreed with Thomsen's interpretation of the Agreement, the Court does not find that Thomsen's copyright claims are frivolous[.]").

Defendants' position was that the License Agreement permitted the continued use of Blaze after an acquisition event without prior written consent from FICO so long as usage of Blaze did not expand. At summary judgment, the Court *expressly held* that this theory was reasonable:

> Under Federal's interpretation of Section 10.8, *any* continued use of Blaze Advisor following an *actual* assignment of the License Agreement requires written consent; but after a *deemed* assignment, only *expanded* use of Blaze Advisor requires written consent. ***Federal's interpretation of Section 10.8 is reasonable.*** Section 10.8 plainly differentiates between an actual assignment and a 'deemed' assignment and imposes distinct restrictions on the latter. Restricting 'expanded' use of Blaze Advisor following a deemed assignment reasonably suggests that *non*-expanded use following a deemed assignment is permissible.

Dkt. 731 at 48 (some emphasis added). The Court's conclusion at summary judgment that Defendants' position on Section 10.8 was reasonable forecloses a finding now that it was objectively *unreasonable*. *See MPAY Inc. v. Erie Custom Comput. Apps., Inc.*, 2022 WL 17829712, at *7 (D. Minn. Dec. 21, 2022) (denying attorneys' fees motion because "[m]any of MPAY's claims survived summary judgment and the defendants' motion for judgment as a matter of law at the close of evidence, demonstrating that genuine issues of fact required resolution on those claims").

FICO's argument that ACE American's infringement position was objectively unreasonable likewise fails. FICO has maintained throughout this litigation that ACE was what it has termed a "naked" infringer with no defense. Dkt. 1222 at 1. Defendants have explained why that was wrong: under Section 10.8, the acquisition triggered a deemed assignment of rights under the License Agreement to ACE Limited, and then Chubb Limited. This deemed assignment permitted the jury to find that ACE Limited became the "Client" under the License Agreement and gained the right to use Blaze without FICO's prior consent, a right that encompassed Chubb Limited's Affiliate, ACE American—as long as it did not expand use. *See* Dkt. 1160 at 2; *see also* Trial Tr. 76, Dkt. 1178 (Defendants' counsel in opening: under Section 10.8, "the parties intended that if Federal

6

were acquired by another company, rights under the contract are assigned to the new company.  They're deemed assigned.  In this case, to ACE Limited and then Chubb Limited.  And Blaze use can continue so long as there is no expanded use").[1]  The Court recognized that this position was reasonable when it denied FICO's motion for judgment as a matter of law that ACE American infringed.  It held that "the testimony at trial would permit a reasonable jury to find either way on the issue of ACE American's alleged infringement."  Trial Tr. 2522, Dkt. 1188.  That holding—that the evidence permitted a reasonable jury to find in Defendants' favor—precludes a finding that Defendants' lacked an objectively reasonable position on FICO's infringement claim.  *See MPAY*, 2022 WL 17829712, at *7; *see also John*, 2014 WL 3805662, at *5 ("While the court ultimately disagrees with John's interpretation of the terms of the Settlement Agreement, John's arguments are not so clearly untenable as to be utterly without merit."); *Famous Dave's*, 2009 WL 1514515, at *4 ("While the Court ultimately disagreed with Thomsen's interpretation of the Agreement, the Court does not find that Thomsen's copyright claims are frivolous[.]").[2]

FICO essentially concedes—as it must—that Defendants' legal position was reasonable.  Dkt. 1222 at 13 ("Judge Wright accepted Federal's legal position that Section

[1] To the extent FICO asserts that Defendants were inconsistent about whether a "deemed" or "actual" assignment to ACE American occurred, Dkt. 1222 at 11, that is incorrect.  Under Defendants' reading of Section 10.8, after the merger, Federal's rights were assigned by operation of law—*i.e.*, deemed assigned—to ACE Limited.

[2] Indeed, while the jury found against Defendants' on the Section 10.8 claim, it did not necessarily reject their reading of the License Agreement.  The jury may have, instead, found that Defendants' use of Blaze expanded.

10.8 could reasonably be read as Federal described."). It contends, however, that Defendants' *factual* position was not. *Id.* at 13-14. That is a meaningless distinction. FICO's Section 10.8 claim turned on the meaning of the License Agreement and Defendants' interpretation of that section which Judge Wright found to be reasonable. As such, the legal *and* factual basis for Defendants' defense was the text of Section 10.8 itself. After all, "the objective of contract interpretation is to give effect to the *expressed* intentions of the parties[.]" *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (emphasis in original, internal quotation marks and citations omitted). FICO faults Defendants for failing to adduce evidence that Section 10.8's "commercial purpose" favored their reading of its language. Dkt. 1222 at 14. That is both wrong and irrelevant to the question whether Defendants' position was objectively reasonable. It is wrong because Defendants, in rebutting FICO's claim that Section 10.8 employed standard language, showed the jury examples of *other* Blaze anti-assignment provisions that advanced FICO's asserted "commercial purpose" far more clearly than Section 10.8 did. *See, e.g.*, Trial Tr. 530-31, Dkt. 1180 (testimony of Jandeen Boone that an agreement between FICO and Raytheon did not contain Section 10.8's second sentence deeming corporate reorganizations and changes in control to be assignments); Ex. D-0077 (agreement between FICO and Seabright expressly barring any further use of Blaze without consent after an acquisition event). And, in any event, FICO's point is irrelevant because a party's failure to introduce a particular type of extrinsic evidence would not render objectively unreasonable that party's interpretation of a contract's plain terms. *See Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (N.Y. 2002) ("The best evidence

8

of what parties to a written agreement intend is what they say in their writing[.]" (quoting *Slamow v. Del Col*, 79 N.Y.2d 1016, 1018 (N.Y. 1992))).

Moreover, to the extent Defendants' entitlement to continued use of Blaze depended on their not having expanded their usage of Blaze, they introduced ample evidence that use did not expand. Defendants began by introducing evidence from which the jury could conclude that the proper metric of expanded use is the number of applications into which Blaze was incorporated. *See, e.g.*, Trial. Tr. 1148, Dkt. 1182 (testimony of Claudio Ghislanzoni) ("Typically an expansion of user software product is when you use the same software to create new applications."). Defendants then introduced evidence that use did not expand before FICO terminated the License Agreement. *See, e.g.*, P-0091 (Feb. 17, 2016, letter from Andrew Hopp stating that "[o]ur initial findings indicate that the applications that have been using the Blaze Advisor software since 2006 are currently running in exactly the same fashion as prior to the merger transaction"); Trial Tr. 1762, Dkt. 1185 (testimony of William Waid) (Q: "But you had no evidence as of February 17th, 2016, suggesting that this statement from Mr. Hopp was false?" A: "Absolutely not."); P-0094 (Feb. 25, 2016, proposal from Tamra Pawloski stating that "[a]ll usage now and going forward will not change from that permitted under the current license agreement"). Nor did it expand after. *See, e.g.*, Trial Tr. 692, Dkt. 1180 (testimony of Ramesh Pandey) (Q: "Did Chubb put Blaze into more computer applications after the ACE acquisition, or was Blaze limited to the existing applications that had always used the software?" A: "It was limited to the existing software. We never expanded to any new applications of software."); Trial. Tr. 1148, Dkt. 1182 (Ghislanzoni) ("[T]he direction given, the direct

9

given was not to expand.   Continue to maintain the applications that are using Blaze Advisor.").   Again, if Defendants' position on this issue was objectively unreasonable, the Court would have granted FICO summary judgment.   The fact that the Court instead *denied* FICO summary judgment forecloses any finding of objective unreasonableness.

Finally, as noted, the Court has already concluded that Defendants had a reasonable factual basis for their claim that ACE American did not infringe, holding that "the testimony at trial would permit a reasonable jury to find either way on the issue of ACE American's alleged infringement."  Trial Tr. 2522, Dkt. 1188.

By contrast, the Eighth Circuit and this Court have made clear the level of frivolousness and misconduct required to render a litigating position objectively unreasonable. For instance:  failing to address dispositive arguments, *Designworks Homes, Inc. v. Thomson Sailors Homes, LLC*, 9 F.4th 961, 964-65 (8th Cir. 2021), running up costs to create settlement leverage, *see id.*, or maintaining a claim that had already been preliminarily rejected as a matter of law, *MPAY Inc.*, 2022 WL 17829712, at *7-8.[3]  On the other hand, courts have emphasized time and again that colorable, even if losing, arguments are not objectively unreasonable.  *See, e.g., Hartman*, 833 F.2d at 122 ("[A] losing [party's] good faith in bringing a colorable claim will justify a district court's denial of fees."); *Live Face on Web*, 2019 WL 1097493, at *3 ("[C]ourts consider whether the losing party had serious or colorable arguments in support of its position."); *Aamot*, 2020

---

[3] FICO, for instance, maintained its claim that use of Blaze by Federal's foreign Affiliates violated the License Agreement even though the Court described its reasoning as "absurd[]" at summary judgment.  Dkt. 731 at 43 n.14.

WL 4926598, at *2 ("A good faith, colorable claim weighs heavily against a discretionary grant of fees."); *John*, 2014 WL 3805662, at *5 ("John's claim was not brought . . . without some grounding in reasonableness, and attorney's fees would be unjustified as a result."); *Schwegman*, 2013 WL 12329050, at *3 ("a colorable basis" for a claim defeats an unreasonableness argument); *Famous Dave's*, 2009 WL 1514515, at *4 ("While the Court ultimately disagreed with Thomsen's interpretation of the Agreement, the Court does not find that Thomsen's copyright claims are frivolous[.]"); *Schoolhouse, Inc. v. Anderson*, 2002 WL 32653751, at *2 (D. Minn. July 12, 2002) (position objectively unreasonable only where "reasonable minds could not find" it to be correct).

These cases dictate the outcome here. Defendants' positions throughout this case have been reasonable—legally and factually. Indeed, Defendants prevailed on three of them. On the fourth, the Court has repeatedly—and expressly—confirmed the reasonableness of Defendants' position. That is a far cry from arguments "so clearly untenable as to be utterly without merit." *John*, 2014 WL 3805662, at *5.

## III.  THE OTHER FACTORS GUIDING THE COURT'S DISCRETION DO NOT FAVOR A FEE AWARD.

In the attorneys' fees analysis, courts "give substantial weight to the objective reasonableness of the losing party's position[,]" *Kirtsaeng*, 579 U.S. at 199, but consider other (related) factors, too, such as "the losing litigant's motivations, the need in a particular case to compensate or deter, and the purposes of the Copyright Act[,]" *Killer Joe*, 807 F.3d at 911 (quoting *Action Tapes, Inc. v. Mattson*, 462 F.3d 1010, 1014 (8th Cir. 2006)). Each of these factors weighs decisively against an award of attorneys' fees in this

case.

**A. Subjective motivation.**

Defendants' subjective motivations do not justify a fee award. FICO accuses Defendants of "willful" infringement, pointing out that Defendants did not immediately accede to its demand that they stop using Blaze. Dkt. 1222 at 8-12 ("[D]espite the express notice that continued use of Blaze Advisor was willful copyright infringement, Federal chose to keep using Blaze Advisor."). FICO's willfulness claim is baseless as a matter of law and fact. As a matter of law, "that one who has been notified that his conduct constitutes copyright infringement, but who reasonably and in good faith believes the contrary, is not 'willful' for these purposes." *RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co.*, 845 F.2d 773, 779 (8th Cir. 1988) (quoting 3 Nimmer on Copyright § 14.04[B][3] (1987)). Here, as just explained, Defendants reasonably believed that their continued use of Blaze was not copyright infringement, as this Court expressly held. *Supra* 1-11.

FICO's repeated table-thumping about Defendants' lack of "urgency" in migrating away from Blaze does not advance the ball. *See* Dkt. 1222 at 8-12. As the Court has confirmed, Dkt. 731 at 47; Trial Tr. 2522, Dkt. 1188, Defendants reasonably believed they had a legal right to use Blaze, meaning their decision not to submit to FICO's threats has no bearing on whether they acted willfully under the Copyright Act. *See RCA/Ariola Int'l, Inc.*, 845 F.2d at 779.

Apart from Defendants' reasonable disagreement with FICO about the meaning of the License Agreement, FICO has nothing other than speculation to support an inference that Defendants acted with subjective bad faith. Mere surmise about bad intent is not

enough to warrant a showing of "illicit motivation[.]" *Rottlund Co., Inc. v. Pinnacle Corp.*, 2005 WL 2105549, at *2 (D. Minn. Aug. 31, 2005). FICO's "scant evidence of improper motivation does not support a fee award." *Id.*

### B. Compensation and deterrence.

Considerations of compensation and deterrence likewise weigh against a fee award. As the Eighth Circuit has made clear, a court considering compensation and deterrence looks to the circumstances of "a particular case[.]" *Killer Joe*, 807 F.3d at 911. In this particular case, no additional award is necessary to compensate FICO or to deter. That is because FICO has already obtained a windfall, as Defendants comprehensively explained in their motion for a new damages trial. *See* Dkt. 1228. Here, the jury's actual damages award—an order of magnitude larger than the fair market value of FICO's claim—has more than compensated FICO for its damages. Indeed, this case has afforded compensation and deterrence completely out of proportion to the actual harm. FICO, for its part, contends that a $40 million damages award matters little to a large corporation like Chubb. Dkt. 1222 at 16. Such a naked appeal to an opponent's means is plainly improper. *See* 4 Nimmer on Copyright § 14.10[D][5][a][v] ("Another factor that should typically *not* enter into the fee calculus is to advert to which side is richer." (emphasis in original)).

On deterrence, FICO's principal argument is that Defendants should be punished for their litigation tactics. Dkt. 1222 at 15-20. For a number of reasons, that contention does not justify a fee award.

*First*, much of the conduct to which FICO points was well within the bounds of reasonable, zealous advocacy. For instance, FICO takes issue with Defendants' motion to

amend their Answer. *Id.* at 17. Defendants made that motion to raise a statute-of-limitations defense that only became apparent from FICO's summary-judgment briefing. Dkt. 464 at 2-4. Not only did the Court *grant* that motion, Dkt. 501, but Defendants' statute-of-limitations argument ultimately resulted in the dismissal of a portion of FICO's claims, Dkt. 840 at 9. It is absurd to argue, as FICO does, that a party's successful effort to cull meritless claims is "litigation misconduct[.]" *Kirtsaeng*, 579 U.S. at 209. Likewise, while FICO points out that Defendants' motions for leave to file supplemental summary-judgment motions were denied, it makes no effort to explain why those motions lacked a good-faith basis. Dkt. 1222 at 19 (citing Dkt. 758 and Dkt. 845). FICO also complains about Defendants' motion to take trial depositions. *Id.* Although Defendants ultimately did not take those depositions, it defies logic to assert that a party should have to pay fees in connection with a motion it *won*—much less a motion to which FICO was asked to, but did not, consent. "The central purpose of the Copyright Act's fee shifting provision is not to deter a litigant who has an objectively reasonable [position] . . . from litigating it forcefully. It would not serve the purposes of compensation and deterrence to require a [party] with an objectively reasonable claim, but who ultimately fails to prevail, to reimburse a prevailing defendant for the costs of vigorous advocacy." *See Schwegman*, 2013 WL 12329050 at *4. That "FICO had to engage in approximately seven years of litigation to fully vindicate its copyright rights[,]" Dkt. 1222 at 16, is not by itself a basis for a fee award.

*Second*, FICO's complaints about Defendants' allegedly improper litigation tactics have been adequately heard and resolved through the Court's disposition of FICO's *seven*

sanctions motions, all of which were denied. *See* Dkt. 839 at 20 & n.8. For instance, FICO complains of Defendants' delay in producing a final response to Interrogatory 17, Dkt. 1222 at 17-18—a response that required Defendants to conduct novel and complex financial analyses, *see* Dkt. 829; Dkt. 830. The Court has *already* denied a sanctions motion pressing that very complaint, holding that Defendants' continued supplementation of its response was timely and furnished accurate information. Dkt. 839 at 12-13, 17. FICO likewise objects to Defendants' disclosure of additional percipient witnesses at the close of fact discovery. Dkt. 1222 at 18. The Court has already heard this objection and ordered additional discovery and a partial fee award. Dkt. 294 at 82-83. FICO may not relitigate the many discovery battles the parties have already fought. *See Schwegman*, 2013 WL 12329050, at *4 ("[T]he time for Schwegman to ask for an award of fees and costs relating to discovery issues ended when the deadline for filing non-dispositive motions expired."). It should neither recover (i) fees for conduct the Court has already held not to be sanctionable nor (ii) *additional* fees for conduct already adjudicated and compensated. *See* Dkt. 1222 at 18 n.7 (arguing entitlement to *more* fees for conduct in connection with which the Court *already* concluded that only a partial fee award was appropriate).

    *Third*, FICO, too, has litigated this case with sharp elbows. The Court, in recounting FICO's many sanctions motions, made that clear, admonishing the parties that the Federal Rules of Civil Procedure "are not an open invitation for counsel to 'litigate the litigation.' This case has been plagued by the parties' mutual distrust and recrimination and by submission to the temptation to engage in needless, unproductive, and destructive litigation of the litigation. FICO has *too often* moved for sanctions for perceived discovery abuses."

15

Dkt. 839 at 20 (emphasis added); *see also Rottlund*, 2005 WL 2105549, at *2 ("[I]t makes little sense to compensate defendants for the effect of conduct in which they equally participated.").

Even more important, FICO forced Defendants for years to defend against claims that bordered on the frivolous. For instance, FICO forced Defendants to defend against the "absurd[]" claim, Dkt. 731 at 43 n.14—ultimately rejected as a matter of law, Trial Tr. 2518-19, Dkt. 1188—that the use of Blaze by Federal's foreign Affiliates violated the License Agreement. Likewise, the Court, in rejecting FICO's statute-of-limitations arguments at summary judgment, chastised FICO for being "intentionally disingenuous" or, at best, "strategically ambiguous" in continuing to "shift its legal theories to avoid an adverse ruling and, in doing so, misdirect both the Court and Defendants." Dkt. 840 at 8-9. The Court should not exercise its equitable discretion to award fees to FICO when a significant portion of the parties' efforts were directed at litigating legally and factually baseless claims that FICO pressed.

**C. Statutory purpose.**

The Copyright Act's purposes do not favor a fee award. The inquiry into the objective reasonableness of the losing party's litigating position upholds the Act's purposes because, by "encourag[ing] parties with strong legal positions to stand on their rights and deter[ring] those with weak ones from proceeding with litigation[,]" the "objective-reasonableness approach" will "predictably encourage . . . useful copyright litigation." *Kirtsaeng*, 579 U.S. at 205. Here, because Defendants' positions were objectively reasonable, a fee award would not serve the Act's purposes. It is easy to see

16

why. "The immediate effect of our copyright law is to secure a fair return for an author's creative labor." *Fogerty*, 510 U.S. at 526 (internal quotation marks omitted) (quoting *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975)). It does so by "encouraging the proper use of [copyrighted] works." *MPAY Inc.*, 2022 WL 17829712, at *7 (citing *Kirtsaeng*, 579 U.S. at 204). Consistent with that purpose, parties should be encouraged to license copyrighted work. That practice can only be encouraged, however, if licensees are not punished for standing on good-faith, reasonable interpretations of their licenses—even ones that turn out to be erroneous. Because Defendants' litigating positions were objectively reasonable, an award of fees would be inconsistent with the Act's purposes. *See Kirtsaeng*, 579 U.S. at 205.

## IV.   ANY FEES AWARDED TO FICO MUST BE REASONABLE.

FICO has declined to detail the fees it is seeking, except to assert with no support that their amount is greater than $8 million. Dkt. 1222 at 2. On its face, that amount is almost certainly not "reasonable[.]" 17 U.S.C. § 505. Defendants reserve the right to challenge this request when—and if—FICO explains the basis for it.

At this stage, however, one thing is clear: FICO may not recover fees incurred litigating the many claims it lost. "Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claim[]"—as the claim that Defendants violated Section 3.1 of the License Agreement is from the Section 10.8 claim—"the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). That is because "where the plaintiff achieved only limited success, the district court should award only that amount

of fees that is reasonable in relation to the results obtained." *Id.* Here, FICO brought four claims for why it was justified in terminating the License Agreement—and, consequently, why Defendants were liable for infringement—and lost on two as a matter of law, with a third being rejected by the jury. Any fee award should reflect that "limited success[.]" *Id.*; *see also Ford Motor Co. v. B&H Supply, Inc.*, 1987 WL 59519, at *4 (D. Minn. Apr. 13, 1987) ("Ford succeeded on two of its three claims . . . . The court concludes that such limited success is relevant in determining an amount of reasonable attorneys' fees."). FICO's choice to style its four breach-of-contract theories as one count in its complaint, *see* Dkt. 1222 at 23, does not change that the Section 3.1 claims were "distinct" from the Section 10.8 claim, *see Hensley*, 461 U.S. at 440. It is undisputed that they turned on entirely different contractual provisions and conduct. For the purposes of this fee motion, FICO's damages windfall on Section 10.8 should not distract from the fact that its substantive breach of contract claims—from which its copyright-infringement claims derived—largely failed.

## CONCLUSION

The Court should deny FICO's motion for attorneys' fees.

Dated: May 19, 2023

*/s/ Leah Godesky*

Terrence J. Fleming (#0128983)
tfleming@fredlaw.com
Leah C. Janus (#0337365)
ljanus@fredlaw.com
Christopher D. Pham (#0390165)
cpham@fredlaw.com
Ryan C. Young (#0397751)
ryoung@fredlaw.com
Panhia Vang (#399444)
pvang@fredlaw.com

18

**Fredrikson & Byron, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
(612) 492-7000 (tel.)
(612) 492-7077 (fax)

Leah Godesky (Admitted Pro Hac Vice)
lgodesky@omm.com
Anton Metlitsky (Admitted Pro Hac Vice)
ametlitsky@omm.com
Daryn Rush (Admitted Pro Hac Vice)
drush@omm.com
Roxana Guidero (Admitted Pro Hac Vice)
rguidero@omm.com

**O'Melveny & Myers LLP**
Times Square Tower
7 Times Square
New York, NY 10036
(212) 326-2000

*Attorneys for Federal Insurance Company
and ACE American Insurance Company*