# EXHIBIT 20
# [REDACTED]

| Fair Isaac Order Form | | Page 1 of 29 |
|---|---|---|
| FI Contract Number: | | FI LR#18313 |

## SOFTWARE LICENSE AND SERVICES AGREEMENT
### Blaze Advisor

This Software License and Services Agreement ("Agreement") entered into as of May 12, 2005 ("Effective Date") between **Fair Isaac Corporation** ("FIC") and **Avnet, Inc.** ("Client") describes the terms and conditions under which FIC shall provide the FIC Products and related services.

### 1.    FIC Product Description

#### FIC Blaze Advisor 5.5 Development

The development package allows a developer to utilize design and testing tools and to run a non-production deployment environment. A Non-Production deployment license allows the software to be run on a system used to process Non-Production data. Each license is for a single physical machine of any size. Each server can be used for any or all of the Non-Production activities listed above, and in any testing scenario, but may not be used to support production-level operations of the company.

#### FIC Blaze Advisor 5.5 Deployment.

A deployment license for Blaze Advisor Rule Server and Engine allows the software to be run on a system handling production-level processing. This means working with real data supporting actual business operations of the company, whether Client-facing or internal.

### 2.    Definitions

The following terms, as used in this Agreement with initial capital letters, in the singular or the plural, will have the meanings set forth below. Other terms may be defined in context within this Agreement:

**"Documentation"** means the *Blaze Advisor User Guide* provided in either HTML or PDF formats. The Documentation shall be deemed FIC Intellectual Property.

**"FIC Products"** means the software product described in Section 1 above and Exhibit A, and shall be deemed FIC Intellectual Property.

**"Intellectual Property"** or **"Intellectual Property Rights"** collectively means all of the following legal rights, title, or interest in or arising under the laws of the United States, any state, any other country or international treaty regime, whether or not filed, perfected, registered or recorded and whether now or hereafter existing, filed, issued or acquired, including all renewals thereof: (i) patents, patent applications and patent rights, including any such rights granted upon any reissue, reexamination, division, extension, provisional, continuation or continuation-in-part applications, and equivalent or similar rights anywhere in the world in inventions and discoveries; (ii) rights associated with works of authorship and literary property rights, including but not limited to copyrights, copyright applications and copyright registrations, and moral rights; (iii) rights relating to know-how or trade secrets, including but not limited to ideas, concepts, methods, techniques, inventions and other works, whether or not developed or reduced to practice, rights in industrial property, customer, vendor and prospect lists, and all associated information or databases, and other confidential or proprietary information; (iv) industrial designs, industrial models, utility models, certificates of invention and other indicia of invention ownership; (v) trademarks, service marks, logos, trade dress, Internet addresses (URLs), trade names and service names, whether or not registered, and the goodwill associated therewith; and (vi) any rights analogous to those set forth in the preceding clauses and any other proprietary rights relating to intangible property anywhere in the world.

**"Non-Production"** means utilization of the applicable FIC Product in anything other than production.

*Fair Isaac Confidential*



Confidential - Attorneys' Eyes Only          D-0283-001          FICO0041645

| Fair Isaac Order Form | Page 2 of 29 |
|---|---|
| FI Contract Number: | FI LR#18313 |

**"Seat"** means an identified individual user on a single personal computer or workstation.

**"Services"** means the Maintenance Services and Other Services as further described in Section 5 below.

**"Territory"** means the United States of America.

**3.     License Grant**

3.1     <u>License Grant to FIC Product</u>.  Subject to the terms and conditions of this Agreement, FIC hereby grants Client and Client hereby accepts, a non-exclusive, non-transferable, non-sublicensable limited license to use, perform, and display the FIC Products only internally and only within the Territory and subject to the additional limitations listed in Exhibit A. For the avoidance of doubt, Client shall have the right to use the FIC Product to process transactional data that originates from software applications of Client that are located outside the Territory, provided that the server on which the FIC Product is installed is at all times located within the Territory.

3.2     <u>License to Documentation</u>.  Subject to the terms, conditions, and limitations of this Agreement, FIC grants to Client a non-exclusive, non-transferable, non-sublicensable limited license to use, reproduce, perform and display the Documentation only during the term of this Agreement; and only in accordance with Client's license grant of the FIC Product.  Client shall not have the right to modify the Documentation, combine the Documentation with other works, or create derivative works from the Documentation without FIC's written permission.  In the event that FIC does give permission, such modifications, combinations, or derivatives which include the Documentation shall become FIC's Intellectual Property and be used only in support of Client's permitted use of the FIC Product.

**4.     Source Code Escrow.**

4.1     FIC maintains and will continue to maintain during the term of this Agreement a source code escrow deposit agreement ("Escrow Deposit Agreement") for its FIC Products with one or more commercial software escrow companies. As of the Effective Date, the Escrow Deposit Agreement is with Data Securities International, Inc.  FIC will provide a copy of the then-current Escrow Deposit Agreement to Client upon Client's written request.

4.2     FIC will add Client as a beneficiary of the Escrow Deposit Agreement within 30 days after Client's request and Client's payment of the escrow agent's fees to be added and maintained as a beneficiary.  If Client discontinues paying for Technical Support and Maintenance for a FIC Product, or fails to pay the annual fee to the escrow agent to be maintained as an escrow beneficiary, Client will immediately be removed as a beneficiary of the Escrow Deposit Agreement for such FIC Products. The source code will be released to Client from escrow according to the procedure described in the Escrow Deposit Agreement if FIC: (a) voluntarily/involuntarily ceases doing business in the ordinary course and/or enters into the conditions set forth in 10.2(b) herein, or (b) discontinues offering or otherwise no longer provides reasonable technical support for the FIC Products as described in Exhibit B.

4.3     If the source code is released from escrow, Client will be licensed to use the source code only for providing technical support to existing internal licensed copies of the FIC Products. The source code may not be released or disclosed to any third party, except to Client's third party service providers.  If the FIC Products includes any commercially available FIC Products licensed from a third party, then no source code escrow deposit will be required for such third-party portion, however, the third party software object code will be deposited into escrow.

**5.     Rights and Restrictions**

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only          **D-0283-002**                                    FICO0041646

| Fair Isaac Order Form | | | Page 3 of 29 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#18313 |

5.1 <u>License Restrictions.</u>  Except as expressly stated herein, Client warrants that Client and its employees, representatives, and/or agents: (i) shall not in any way alter, change, modify, adapt, translate or make derivative works of FIC Intellectual Property under this Agreement; (ii) shall not reverse engineer, decompile, disassemble, or otherwise attempt to reduce any source code to human perceivable form or permit others to do so; provided that if required by applicable law, upon Client's prior written request, FIC shall provide information required for Client to achieve interoperability between the FIC Product and other software for a nominal administrative charge; (iii) shall not sublicense or operate any FIC Product for timesharing, rental, outsourcing, or service bureau operations, or to train persons other than permitted users; (iv) shall not disclose or publish performance benchmark results for FIC Product without FIC's prior written consent; and (v) (if applicable) shall not use any provided third party software except as solely in conjunction with the FIC Product.

5.2 <u>Reservation Of Rights Not Granted.</u>  FIC reserves all rights not expressly granted to Client under this Agreement.  Without limiting the foregoing, FIC retains and reserves sole and exclusive worldwide right, title and interest in and to all FIC Intellectual Property, including without limitation, the FIC Product, any custom code developed in whole or part by FIC (if applicable), and any FIC know-how, subject to only the limited, non-exclusive, license rights granted herein.  Nothing in this agreement shall limit in any way FIC's right to develop, use, license, create derivative works of, or otherwise exploit FIC Intellectual Property or to permit third parties to do so.

5.3 <u>Permission for Back-Up Copy.</u> Client may reproduce the object code of the FIC Product and the Documentation for the purposes of exercising the license rights granted under this Agreement on up to three (3) backup CPUs for use in the event of a malfunction that renders the primary CPU inoperable.

5.4 <u>Notice Reproduction.</u> To the extent Client is provided reproduction rights, Client must reproduce on each copy of the FIC Product and Documentation any copyright, patent, or trademark notice, and any other proprietary legends that were provided in the originals.

**6.    Services.**

6.1 <u>Maintenance Services.</u>  Subject to the payment of the applicable Maintenance Fees described in Exhibit A, FIC shall provide Client with the Maintenance Services described in Exhibit B.  FIC agrees to continue to offer its Maintenance Services on the FIC Products for a period of three years from the Effective Date, provided Client continues to pay the required Maintenance fees.

6.2 <u>Other Services.</u>  From time to time, FIC may provide Client with professional services related to the FIC Product as mutually agreed between the parties ("Other Services").  Such Other Services shall be performed only upon the execution of a Statement of Work and Purchase Order which references this Agreement, incorporates these terms and conditions, and which shall describe the services to be performed, the deliverables to be provided, and the fees to be paid.  Additionally, the Statement of Work shall indicate which party (Client or FIC) owns the deliverables and what the applicable license rights are (if any).

6.3 <u>Use of Client Data.</u> In the event that FIC needs to access Client's data to perform the Other Services, the following provisions shall apply:  If Client provides personally identifiable consumer data, Client authorizes FIC to perform services to de-identify such data.  Client may elect to transmit any such records to FIC with the identification fields deleted so long as a match key exists on all data files provided to FIC.  All such information shall be transmitted to FIC in certifiably depersonalized format if necessary to comply with applicable governmental authorities' laws and regulations.  FIC shall only process personal data of Client's customers for the purposes of performing the Other Services.  Client represents

*Fair Isaac Confidential*

| Fair Isaac Order Form | | | Page 4 of 29 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#18313 |

and warrants to FIC, to any person claiming through FIC, but to no other person, that it (i) has sufficient ownership rights in the data Client shall provide to FIC to hold said data, deliver it to FIC, cause the Other Services to be rendered with respect to it for the purposes set forth in the Agreement, receive the processed data from FIC, and make its intended use of the data; and (ii) has obtained from individuals all consents and has provided all notices necessary with respect to the intended disclosure and use(s) of the data Client shall provide to FIC, that are required under applicable laws. Client hereby indemnifies and holds harmless FIC from and against any and all losses, liabilities, costs, and expenses (including reasonable attorneys' fees) incurred by FIC arising from or in connection with a breach of these representations and warranties.

6.4     Client's Cooperation.  In order for FIC to perform its obligations under this Agreement, Client must provide FIC with full, good faith cooperation and access to such information as may be required by FIC in order to render the Services, including but not limited to that cooperation as described in Exhibit C and any other document mutually agreed upon by the parties; personnel assistance as may be reasonably requested by FIC from time to time; cooperation with FIC, making decisions and communicating information in a timely manner to enable FIC to provide the Services in accordance with this Agreement ("Cooperation"). Further, Client acknowledges and agrees that FIC's performance of Services is both contingent and dependent upon Client's Cooperation.

6.5     Changes in Services.  Client may request a modification to Services using the procedures defined under Exhibit C, Sections 1.4 (b) and 1.4 (c). If FIC agrees to perform such modifications, it will notify Client of its decision within ten (10) business days following receipt of such notice and will submit to Client an estimate of the time and cost to effect such modifications (the "Estimate"). The performance of any modified services by FIC shall be governed by the terms and conditions of this Agreement. Whether or not FIC accepts the Estimate, Client will pay FIC for reasonable costs incurred by FIC in investigating and preparing such Estimate, provided payment of such costs have been agreed to in advance by Client.

6.6     Performance of Similar Work.  Subject to obligations of confidentiality under this Agreement, FIC shall continue to be free to perform identical services for other customers, including competitors of Client, using the knowledge, skills and experience gained through this Agreement.

**7.        Warranties and Limitation of Liability.**

7.1     Conformity to Specifications. Subject to Client's compliance with the terms and conditions of this Agreement, FIC warrants that FIC Product will conform in all material respects to its Documentation for a period of thirty (30) days from the date of delivery.  FIC will, at its own expense and as its sole obligation, and Client's exclusive remedy, for any breach of this warranty, correct any reproducible error in the FIC Product reported to FIC by Client in writing (along with all information available to Client that is relevant to verifying, diagnosing, or correcting the error) or replace the FIC Product during the warranty period.

7.2     Warranty for Professional Services. FIC warrants that it will perform the Services described in Section 2 in a professional and workmanlike manner in accordance with generally acceptable industry practices. Client's sole remedy and FIC's sole obligation pursuant to this warranty shall be for Client to notify FIC in writing of any alleged warranty defect within sixty (60) days after the defective services were performed, and FIC shall correct the defects promptly.

7.3     WARRANTY DISCLAIMER. FIC does not warrant that the FIC Product or the Documentation will (i) meet Client's requirements, or (ii) operate uninterrupted or free of errors. EXCEPT FOR THE EXPRESS WARRANTIES SET FORTH IN THIS SECTION 7, FIC MAKES NO OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, UNDER THIS AGREEMENT AND HEREBY

*Fair Isaac Confidential*

| Fair Isaac Order Form | | | Page 5 of 29 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#18313 |

DISCLAIMS ALL OTHER EXPRESS OR IMPLIED WARRANTIES, INCLUDING ANY WARRANTIES REGARDING MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

7.4     LIMITATION ON TYPES OF DAMAGES. EXCEPT FOR MATERIAL BREACH OF THE PROVISIONS OF THIS AGREEMENT RELATING TO THE PROTECTION OF CONFIDENTIAL INFORMATION, AND BREACH BY CLIENT OF FIC'S INTELLECTUAL PROPERTY RIGHTS, TO THE EXTENT ALLOWED BY LAW, IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR INDIRECT, SPECIAL, CONSEQUENTIAL (INCLUDING, BUT NOT LIMITED TO, LOST PROFITS) OR PUNITIVE DAMAGES ARISING OUT OF OR IN CONNECTION WITH THE AGREEMENT, EVEN IF THE RESPONSIBLE PARTY HAD BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR EVEN IF SUCH DAMAGES WERE REASONABLY FORESEEABLE.

7.5     LIMIT ON MAXIMUM LIABILITY. EXCEPT FOR MATERIAL BREACH BY EITHER PARTY OF THE PROVISIONS OF THIS AGREEMENT RELATING TO THE PROTECTION OF CONFIDENTIAL INFORMATION, FIC's OBLIGATION TO INDEMNIFY CLIENT FOR THIRD PARTY IP CLAIMS, PURSUANT TO SECTION 7.6 AND CLIENT'S BREACH OF FIC'S INTELLECTUAL PROPERTY RIGHTS, AND TO THE EXTENT ALLOWED BY LAW, NEITHER PARTY'S LIABILITY UNDER THIS AGREEMENT SHALL EXCEED THE AMOUNT PAID BY CLIENT FOR THE FIC PRODUCT UNDER THIS AGREEMENT.

7.6     INTELLECTUAL PROPERTY INDEMNITY. FIC will defend at its own expense any action against Client brought by a third party to the extent that the action is based upon a claim that any FIC Product infringes any U.S. patent or U.S. copyright, or misappropriates any trade secret, and FIC will pay those costs and damages finally awarded against Client in any such action that are specifically attributable to such claim or those costs and damages agreed to in a monetary settlement of such action.

Conditions. FIC's indemnification obligations under this Article are conditioned upon: (a) Client notifying FIC promptly in writing of such action; (b) Client giving FIC sole control of the defense thereof and any related settlement negotiations; (c) Client's compliance with the terms and conditions of the Agreement, including without limitation the license(s) granted by FIC; and (d) Client cooperating with FIC in such defense (including without limitation, by making available to FIC all documents and information in Client's possession or control that are relevant to the infringement or misappropriation claims, and by making Client's personnel available to testify or consult with FIC or its attorneys in connection with such defense).

FIC's Options. If any FIC Product becomes, or in FIC's opinion is likely to become, the subject of an infringement or misappropriation claim, FIC may, at its option and expense, either: (a) procure for Client the right to continue to exercise the FIC Product license; (b) replace or modify the FIC Product so that it becomes non-infringing; or (c) if neither option (a) or (b) is available, terminate Client's license for the FIC Product concerned and Client shall promptly receive a pro-rata refund the fees paid by Client in respect thereof based on five year depreciation schedule beginning on the date of delivery of the applicable FIC Product.

Exclusions. Notwithstanding the foregoing, FIC shall have no obligation with respect to any infringement or misappropriation claim based upon: (a) any violation of the terms of Client's license or any license restrictions; (b) any combination or use of any FIC Product with other products, equipment, software, or data not supplied or approved in writing by FIC; or (c) any modification of a FIC Product made by any entity other than FIC and not approved by FIC.

*Fair Isaac Confidential*

| Fair Isaac Order Form | Page 6 of 29 |
| FI Contract Number: | FI LR#18313 |

ENTIRE LIABILITY. THIS ARTICLE STATES FIC'S ENTIRE LIABILITY AND CLIENT'S SOLE AND EXCLUSIVE REMEDY FOR INFRINGEMENT AND ALL INFRINGEMENT AND MISAPPROPRIATION CLAIMS AND ACTIONS.

**8.     Confidential Information.  The parties hereby agree that the confidentiality rights and obligations listed below and covered under the Mutual Confidentiality Agreement between the parties, dated October 7, 2004, shall prevail conterminously.**

**8.1     Confidential Information.** A party receiving Confidential Information under the Agreement is referred to as "**Recipient,**" and a party disclosing Confidential Information is referred to as "**Discloser.**" For the purposes of the Agreement, "**Confidential Information**" is described as follows and shall include any information which relates to: the financial and/or business operations of the Discloser, including, but not limited to, marketing and product plans, ideas, concepts, business plans, financial condition, employees, inventions, algorithms, decision technology and/or models, processes, designs, specifications, drawings, samples, improvements, developments, applications, engineering, manufacturing and marketing data and plans, software code (object and source), functionality, security procedures and approaches, know-how, customer names and information, experimental work, distribution arrangements and trade secrets, and/or ideas. Such Confidential Information may be produced in a variety of forms, including but not limited to: any and all verbal, electronic, and/or written communications (whether in the form of slides, handouts, letters, memoranda, agreements, facsimile transmissions, meetings, conference and other telephone calls, diskettes, files, tapes, and/or any other mode) and/or related concepts, proposals, data sources, pricing, schedules, development efforts (including source code, object code and/or documentation), numerical data processing algorithms, product and software design specifications.

**8.2     Purpose for Disclosure.** Recipient may use Confidential Information of the Discloser only for the purposes of exercising its rights and fulfilling its obligations under the Agreement.

**8.3     Limitations on Disclosure and Use.** Recipient agrees to use the same degree of care, but no less than a reasonable degree of care, to protect against the unauthorized disclosure or use of Discloser's Confidential Information as it uses to protect its own Confidential Information. Recipient agrees to disclose Confidential Information only to its employees or independent contractors who have a need to know for the above stated purpose, and who are bound by obligations of confidentiality no less restrictive than the terms of the Agreement. Recipient shall not remove any proprietary notices of Discloser from Discloser's Confidential Information. During the course of the Agreement, the Recipient may from time to time provide the Discloser with comments, suggestions or other input regarding the Discloser's Confidential Information. The Recipient agrees that the Discloser has an unrestricted, worldwide, royalty-free right to use such comments, suggestions, or other input for any purpose and in any manner, and to authorize others to do so.

**8.4     Exclusions.** Recipient shall have no obligation under the Agreement as to Confidential Information of Discloser which: (a) is known to Recipient at the time of disclosure; (b) is independently developed by Recipient without reference to or use of the Discloser's Confidential Information; (c) is obtained by Recipient without restriction on disclosure or use from another source without a breach of any obligation of confidentiality owed by such source to Discloser; or (d) is or becomes part of the public domain through no wrongful act of Recipient or any party that obtained the information from Recipient. If Recipient is served with any subpoena or other legal process or a court or governmental request or order requiring or purporting to require the disclosure of any of Discloser's Confidential Information, Recipient shall, unless prohibited by law, promptly notify Discloser of such fact and cooperate fully (at Discloser's expense) with the Discloser and its legal counsel in opposing, seeking a protective order, seeking to limit, or appealing any such legal process, request, or order to the extent deemed appropriate by the Discloser.

*Fair Isaac Confidential*

| Fair Isaac Order Form | | | Page 7 of 29 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#18313 |

**8.5    Injunctive Relief.** The parties acknowledge that the remedies at law for breach of any covenant relating to the protection of Confidential Information may be inadequate, and each party shall be entitled to seek injunctive relief for any breach of the provisions of the Agreement relating to the protection of its Confidential Information or Intellectual Property Rights. Nothing contained in this Section shall be construed as limiting the parties' rights to any other remedies at law, including the recovery of damages for breach of the Agreement.

## 9.    Payment Terms

9.1    Invoices and Payment. All fees, charges, and expenses invoiced under this Agreement will be due and payable by Client in United States Dollars within thirty (30) days of Client's receipt of an invoice. Each unpaid, undisputed invoice may bear a late charge of 1.5% per month, or the maximum rate permitted by law, whichever is less. Client shall reimburse FIC for all costs related to any proceedings to collect any past-due amounts, including without limitation all reasonable attorneys' fees and expenses; except as otherwise provided, refunds are not available.

9.2    Expenses. Prices do not include reasonable travel and associated out-of-pocket expenses incurred by FIC, which are billed to Client at cost. Based on its prior written approval, Client agrees to reimburse FIC for all such travel-related expenses FIC incurs in connection with this Agreement. Client agrees that such written approval shall not be unreasonably withheld.

9.3    Taxes and other Charges. Client shall be solely responsible for, and shall pay or reimburse FIC for, all Taxes. **"Taxes"** means all present and future taxes, duties, import deposits, assessments, and other governmental charges (and any related penalties and interest), however designated, that are now or hereafter imposed by or under any governmental authority or agency that are: (i) associated with the performance by FIC of its obligations hereunder; (ii) associated with the payment of any amount by Client to FIC pursuant to this Agreement; (iii) based on the license or use of any FIC Product; or (iv) associated with the importation of any FIC Product into any country other than the United States, excepting only taxes imposed on FIC's net income by the United States and each state thereof (and their political subdivisions). To the extent Client is required to withhold income taxes on any payment made to FIC pursuant to applicable tax law, Client may withhold such tax to the extent such tax (a) does not exceed the appropriate withholding amount applicable under relevant tax treaties and (b) qualifies as a creditable foreign tax by the United States government. Client agrees to send the appropriate certified tax receipt to FIC promptly upon payment of such tax. If a certified tax receipt issued by the taxing authority evidencing such payment and suitable for FIC to obtain a tax credit in the United States is not received by FIC within thirty (30) days after the date of the invoice, Client will be responsible for paying the full invoice amount.

9.4    Mode of Payment. Client agrees to remit all payments due to FIC as follows:

| If payment is made by check: | If payment is made by electronic transfer: |
|---|---|
| Fair Isaac Corporation | Wells Fargo Bank San Francisco |
| PO Box 201129 | ABA/Routing |
| Dallas, TX 75320-1129 | Acct# |
| U.S.A. | Acct Name: Fair Isaac Corp. |

FIC will promptly notify Client if any of the above payment information changes, and Client agrees to remit all amounts due thereafter in accordance with the revised payment information.

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only                    **D-0283-007**                    FICO0041651

| Fair Isaac Order Form | | | Page 8 of 29 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#18313 |

9.5    Audit Rights. Client shall maintain such books, records, and accounting practices and systems consistent with industry standards that will allow proper calculation, documentation, and reporting of payments due to FIC under this Agreement and that will facilitate auditing of such records and systems. No more than twice annually, and upon 10 days' prior written notice, FIC shall have the right to audit, through its independent auditors, all records of Client relating to this Agreement. Such audits shall be conducted during Client's normal business hours. If Client is discovered to have understated any fees owed to FIC by more than 5%, or if FIC learns that Client has materially breached this Agreement, then Client shall bear the expense of such audit in addition to any fees owed; except as required by law, FIC agrees to maintain the confidentiality of Client's procedures and processes disclosed during the audit.

**10.    Term**

10.1    Term. Unless earlier terminated, this Agreement and the license(s) granted hereunder shall commence upon the Effective Date and shall continue in full force in perpetuity ("Term").

10.2    Events of Termination. This Agreement may be terminated upon the occurrence of any of the following events:

(a)    **Uncured Breach.** Either party may terminate this Agreement for a breach by the other party of any of the material terms of this Agreement, or numerous breaches of duties or obligations hereunder that cumulatively constitute a material breach if the breaching party fails to cure the breach(es) within 30 days from receipt of written notice from the non-breaching party identifying the breach(es) and requiring them to be remedied.

(b)    **Insolvency.** Either party may terminate this Agreement if the other party ceases to conduct business in the ordinary course or is declared insolvent or bankrupt, or makes an assignment of substantially all of its assets for the benefit of creditors, or a receiver is appointed, or any proceeding is demanded by, for or against the other party under any provision of bankruptcy or insolvency legislation.

10.3    Effect of Termination. Upon termination of this Agreement for any reason, all licenses granted hereunder shall terminate immediately, all support and maintenance obligations shall cease, Client shall immediately cease using all FIC Product(s) and related documentation (including all Intellectual Property arising from or related to the foregoing), shall remove all copies of the FIC Product(s) and related documentation from Client's computers and systems, and shall either (i) destroy all copies of the FIC Product(s), related documentation, and other FIC Confidential Information and Intellectual Property in Client's possession; or (ii) return to FIC all copies of the FIC Product(s), related documentation, and other FIC Confidential Information and Intellectual Property in Client's possession. Client shall provide to FIC a written certification signed by an authorized officer of Client certifying that Client has complied with the foregoing. Upon termination of this Agreement, all fees and other charges provided for hereunder will become immediately due and payable to FIC, and Client shall immediately remit all unpaid fees to FIC.

10.4    Survival. Rights to payment and the following rights and obligations under this Agreement will survive any termination or expiration of this Agreement or the Agreement: Section 2 (Definitions), Section 5 (Rights and Restrictions), 7.3 (Warranty Disclaimer), 7.4 (Limits on Types of Damages), 7.5 (Limit on Maximum Liability), 8 (Confidential Information), 10.3 (Effect of Termination), 10.4 (Survival), and 11 (Provisions of General Applicability).

**11.    Provisions of General Applicability**

*Fair Isaac Confidential*

| Fair Isaac Order Form | | Page 9 of 29 |
|---|---|---|
| FI Contract Number: | | FI LR#18313 |

11.1    Relationship of the Parties. FIC and Client are independent contractors and will have no power to bind the other party or to create any obligation or responsibility on behalf of the other party. This Agreement shall not be construed as creating any partnership, joint venture, agency, or any other form of legal association that would impose liability upon one party for the act or failure to act of the other party.

11.2    Counterparts. This Agreement may be executed in counterparts, which taken together shall constitute one single agreement between the parties.

11.3    Section Headings. The section and subsection headings used herein are for reference and convenience only, and will not enter into the interpretation hereof.

11.4    No Waiver. No delay or omission by either party to exercise any right or power with respect to any of the terms or conditions of this Agreement will impair any right or power or be construed to be a waiver thereof. A waiver by either party of any of the terms and conditions of this Agreement will not be construed to be a waiver of any other term or condition of this Agreement. No waiver of any rights of a party under this Agreement will be effective unless set forth in a writing signed by such party.

11.5    Entire Agreement. This Agreement and all Exhibits attached herein, constitute the full and entire understanding and agreement between the parties with regard to the subject matter hereof, and supersedes all prior or contemporaneous proposals and all other oral or written understandings, representations, conditions, and other communications between the parties relating to such subject matter, as well as the terms of all existing or future purchase orders and acknowledgments. Each party represents and warrants to the other party that in entering into this Agreement it has not relied on any representations, promises, or assurances from another party or any employee, officer, director, representative, attorney, or affiliate of another party not expressly contained in this Agreement. Any other terms or conditions or amendments shall not be incorporated herein or be binding upon any party unless expressly agreed to in a writing signed by authorized representatives of Client and FIC.

11.6    Construction: Severability. This Agreement will not be more strongly construed against either Party, regardless of who is more responsible for its preparation. If any provision of this Agreement is held to be unlawful or invalid under applicable law, then such provision will be ineffective only to the extent of such illegality or invalidity, without invalidating the remainder of such provision or any of the remaining provisions of this Agreement.

11.7    Governing Law. This Agreement will be governed by and construed in accordance with the laws of the State of California, without regard to principles of conflicts of law or international law, including without limitation the 1980 United Nations Convention on Contracts for the International Sale of Goods, as revised.

11.8    No Assignment. Neither party shall, without the prior written consent of the other party, assign or transfer this Agreement, or any part thereof, but such consent shall not be unreasonably withheld or delayed. A change of control of Client shall be deemed an assignment subject to this section. Any attempt to assign or transfer all or any part of this Agreement without first obtaining such written consent will be void and of no force or effect. Notwithstanding the foregoing, FIC may perform any or all of its obligations through any subsidiary or affiliated company, and may assign this Agreement by merger, reorganization, consolidation, or sale of all or substantially all its assets.

11.9    Force Majeure. Notwithstanding anything to the contrary herein, FIC shall not be deemed to be in default of any provision of this Agreement or be liable to Client or to any third party for any delay, error, failure in performance or interruption of performance due to any act of God,

*Fair Isaac Confidential*

| Fair Isaac Order Form | | | Page 10 of 29 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#18313 |

terrorism, war, insurrection, riot, boycott, strike, interruption of power service, interruption of communications service, labor or civil disturbance, act of any other person not under the control or direction of either party or other similar cause. FIC shall give Client reasonable written notification of any material or indefinite delay due to such causes.

11.10 <u>Notices</u>. Any notices required to be given by one party to the other under the Agreement must be in writing and must be sent to the recipient's address for notices set forth on the page of this Agreement titled "Instructions and Contact Information." Such notices will be deemed given upon the earlier of (i) actual delivery, whether personally, by a recognized international overnight delivery carrier, or (ii) five business days after being mailed by certified or registered mail, first class, postage prepaid. A copy of any notice to Client shall be given concurrently to Avnet, Inc. 2211 S. 47th St., Phoenix, AZ 85034, Attn: Legal Department. Either party may change its address for notices at any time by giving notice to the other party.

IN WITNESS WHEREOF, FIC and Client have caused this Agreement to be signed in duplicate and delivered by their duly authorized representatives as of the Effective Date.

**FAIR ISAAC CORPORATION**                    **CLIENT: AVNET, INC.**

By: _____              By: _____

Name: Keven Baxter                        Name: Edward Kamins

Title: Vice President                     Title: CIO
Legal Intellectual Property

Date Signed: 5/12/05                      Date Signed: May 10, 2005

| Fair Isaac Use Only: | | | Created: 10-May-05 |
|---|---|---|---|
| Short Name: | Client #: | | Acct. Exec.: |
| OE Order #: | System #: | | Royal Blue #: |
| Sales Approval: | Notes: | | |

**Please complete the information on the following page.**



APPROVED FOR AVNET LEGAL BY

*Fair Isaac Confidential*

| Fair Isaac Order Form | Page 11 of 29 |
|---|---|
| FI Contract Number: | FI LR#18313 |

## INSTRUCTIONS AND CONTACT INFORMATION

*Instructions to Client:*

    *1.*    *Appropriate corporate officer should execute 2 copies of the document.*

    *2.*    *Complete all requested information below:*

**Addresses for Notices:**

|  | **For Client:** | **For FIC:** |
|---|---|---|
| **Address:** | Avnet, Inc.<br>2211 S. 47th St.<br>Phoenix, AZ 85034<br>Attn: C.I.O. | Fair Isaac Corporation<br>Attn: Contracts Administrator<br>3661 Valley Centre Drive<br>San Diego, CA 92130<br>Reference FIC LR #18313 |
| **City/State:** | | |
| **Zip/Code:** | | Fax: 858-523-4450 |
| **Country:** | | |
| **Attention :** | | |
| **Fax:** | | |

*Compete Information below if different from above:*

| | **Return executed contract to Client at:** | **Send Software to:** | **Client's Billing Information:** |
|---|---|---|---|
| **Address:** | Same as above except | Same as above except | Same as above except |
| **City/State:** | | | |
| **Zip/Code:** | | | |
| **Attention :** | Attn: Grant Mills | Attn: David M. Allen | Attn: Puchasing Department |
| **Phone:** | | | |
| **Fax (optional):** | | | |
| **Email (optional):** | | | |

    *3.*    *Return 2 completed and executed copies to:*

        Fair Isaac Corporation
        Attn: Contracts Administration
        3661 Valley Centre Drive
        San Diego, CA 92130

        If time is of the essence, please fax to:

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only

FICO0041655

| Fair Isaac Order Form | | | Page 12 of 29 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#18313 |

858-523-4450

Questions? Call 858-369-8259

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only          **D-0283-012**                    FICO0041656

| Fair Isaac Order Form | | | Page 13 of 29 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#18313 |

## EXHIBIT A
### PRODUCTS, PRICING AND PAYMENT

The FIC Products include the Blaze Advisor 5.5 Development product and the Blaze Advisor 5.5 Deployment as more fully described below, in Section 1 of the Agreement.

Descriptive Components of Blaze Advisor 5.5 Development include:
- Integrated Development Environment – Allows users to write, edit, and test rules
- Rule Repository – Stores rules and manages rule changes
- Rule Maintenance Applications – Allow individuals to review and update rules.

Descriptive Components of Blaze Advisor 5.5 Deployment include:
- Rule Engine and Server – Deploys and executes rules
- Deployment Manager – Introduces new rules to production systems

| Product | Item Number | Total |
|---|---|---|
| **FIC Blaze Advisor 5.5 Development** For use on two (2) Development Seats only | 280-DVLI-03 | **License Fees:** ▮) **One Time Fee** |
| **FIC Blaze Advisor 5.5 Deployment** For use on up to two (2) CPU's only  -Unlimited, non-production Deployment  Platform: IBM AIX | 280-DPLI-03 | **Included in the License Fees** |
| **Documentation** - Electronic copy included with purchase of software license | | **Included in the License Fees** |
| **Maintenance and Support Services.** ▮% of Net License Fees. Paid per annum | 126-MAIN-00 | $▮ **per annum** |
| **Professional Services\*** As described in Exhibit C. Development Services to be performed at an hourly rate of \$235/hr. for an estimated 224 hours. | | **Fee:** ▮ |

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only      **D-0283-013**      FICO0041657

| Fair Isaac Order Form | Page 14 of 29 |
| --- | --- |
| FI Contract Number: | FI LR#18313 |



**\*Fee does not include reasonable travel expenses; FIC shall obtain Client's prior approval for travel expenses.**

**Total License Fees:** ▮

**Total Maintenance Fees:** ▮

**Total Professional Services Fees:** $▮

**Grand Total:** $▮

**Payment of License Fees.** License fees shall be invoiced by FIC upon execution of the Agreement. Client shall pay said invoice upon the terms outlined in Section 9.1 of the Agreement.

**Maintenance Fees.** Support and Maintenance Services fees for the first year are due upon execution and payable upon terms outlined in Section 9.1 of the Agreement. Support and Maintenance Services fees for subsequent years will be payable annually upon terms outlined in Section 9.1 of the Agreement while the Maintenance term is in effect.

**Payment of Professional Services Fees.** Payment due upon terms outlined in Section 9.1 of the Agreement.

**Option to Purchase Additional Development and Deployment.** Client shall have the option to purchase additional Development and Deployment for the Blaze Advisor Product under the following set pricing:

$▮ ) per additional Development seat
$▮ ) per additional Deployment CPU

This option shall expire twelve (12) months from the Effective Date of Agreement.

**Option to Purchase Additional Licenses.** Client shall have the option to purchase additional licenses for the Blaze Advisor Product based upon the Cumulative Net License Purchase Volume Discount Schedule below, provided that Client will be entitled to cumulate the license fees paid under this Agreement for purposes of qualifying for any volume discounts that may apply to such subsequent license.

Cumulative Net License Purchase Volume Discount Schedule:



Unless earlier terminated in accordance to Section 10.2 of the Agreement, this option shall continue in perpetuity.

*Fair Isaac Confidential*

| Fair Isaac Order Form | Page 15 of 29 |
|---|---|
| FI Contract Number: | FI LR#18313 |

**Platform Transfer.**   Client may transfer all or any part of its licenses to a different platform (i.e., from one vendor to another [e.g., HP to Sun] and/or from one operating system to another [e.g., HP UNIX to Solaris]) at no additional charge, provided all the following applies:

1) Client must transfer to a platform that FIC then supports.  Notwithstanding the foregoing, Client may not transfer to a Microsoft *.Net* platform without payments of additional fees.

2) Client must complete transfer (e.g., migrate from HP to SUN) of applicable licenses to the new platform within a six (6) month timeframe.   With the exception of the period when Client is transferring from one platform to another, Client may not use the same licenses on more than one platform at a time (e.g., Client cannot operate the same licenses for FIC Product on both HP and Sun platforms at the same time, except during migration efforts).

3) Client must be currently on Maintenance at the time of the transfer.

Except as specified above, this provision has no effect on the number of servers, CPUs, and/or seats used by the client and relates solely to the number/types of platform that can be employed.

4) After platform transfer has occurred, Client shall certify in writing to FIC the licenses that have been removed from the previous platform and  transferred to the new platform.

Unless Client signs this Agreement and returns it to FIC by May 12, 2005, prices and terms are subject to change.

*Fair Isaac Confidential*

| Fair Isaac Order Form | Page 16 of 29 |
|---|---|
| FI Contract Number: | FI LR#18313 |

**EXHIBIT B**
**FAIR ISAAC SOFTWARE SUPPORT AND MAINTENANCE POLICY**

## 1. DEFINITIONS

**"Errors"** Errors are defined as reproducible malfunctions, inherent within the Software, that prevent the Software from operating according to its technical documentation.

**"Regular Business Hours"**

For Software delivered for implementation at sites in North America, Asia and South America, support services will be offered from the United States. Regular Business Hours in the United States are 6:00 a.m. to 5:00 p.m. Pacific Time, Monday through Friday, excluding holidays observed by FIC in the United States.

For Software delivered for implementation at sites in Europe, Middle East and Africa, support services will be offered from the United Kingdom. Regular Business Hours in the United Kingdom are 8:30 a.m. to 5:00 p.m. UK Time, Monday through Friday, excluding holidays observed by FIC in the United Kingdom.

**"Software"** Software means the software products listed in Section 2.1 that are licensed by Client.

## 2. SUPPORT AND MAINTENANCE SERVICES GENERALLY

**2.1.** Subject to payment of the appropriate Maintenance or Subscription fees by Client, FIC agrees to provide Client with support and maintenance services as set forth in this policy for the following Software products when licensed by Client: Blaze Advisor.

**2.2.** FIC provides support and maintenance services for licensed Software during both implementation and production use when operated on supported platforms installed on designated or approved equipment.

**2.3.** Subject to Section 5.1.4 of this Exhibit B, maintenance includes any standard Software versions and releases generally made available to FIC's clients that are current on Maintenance fees. Such versions and releases will be provided to Client pursuant to this policy on a when and if available basis.

**2.4. Updates and Upgrades.** Client will be entitled to receive, free of additional charges, all Error Corrections, Updates, and Upgrades when and if made available by FIC. Updates mean a minor feature addition/enhancement to the FIC Product(s), and includes feature and Error Corrections to the FIC Product(s) from the preceding level. It is indicated by a change in the release number of the product one or two positions to the right of the decimal. For example, release 2.02 to 2.10. Updates do not include custom software. Upgrades mean the addition of major functional improvements and/or architectural changes to the FIC Product(s), and includes previous release features and bug fixes to the FIC Product(s). It is indicated by a change in the release number to the left of the decimal point, such as 2.10 to 3.00. Upgrades do not include custom software.

*Fair Isaac Confidential*

| Fair Isaac Order Form | Page 17 of 29 |
|---|---|
| FI Contract Number: | FI LR#18313 |

## 3. TECHNICAL SUPPORT

**3.1.**   Subject to Section 3.3 below, FIC will make commercially reasonable efforts, during Regular Business Hours, to address Client's questions about the Software, to resolve operating problems that are attributable to the Software, and to resolve verified, reproducible Errors in the Software.

**3.2.**   Client agrees: (a) to set up liaisons who have been trained on the Software; (b) that all support requests will be centralized through these liaisons; (c) to submit support requests to FIC's Contact Center; (d) to comply with FIC's guidelines for submitting support requests as defined under Exhibit D; (e) to use commercially reasonable efforts to diagnose and resolve problems in the operation of the Software prior to contacting FIC for support; and (f) to use commercially reasonable efforts to verify that reported problems are due to a malfunction of the Software, and not due to the operating system, hardware, data, interfaces, or improper use of the Software, prior to contacting FIC for support.

3.3. FIC will  respond to reported Errors in accordance with the following procedure:

| Severity | Condition / Criteria | Response Time/Action |
|---|---|---|
| 1 | **Mission Critical (7x24):** An Error which inhibits all or substantially all of the FIC software from functioning in accordance with its documentation.   A "Severity One" problem is both severe and mission-critical. | **Mission Critical (7x24):** (a)  Provide a phone response within 20 minutes during FIC's Regular Business Hours or within 30 minutes on nights, weekends and holidays; and (b)  an action plan within 4 hours  for the development of a patch or a bypass for the Error. Once identified and logged, FIC will provide all necessary services to resolve a "Severity One" condition on a diligent efforts priority basis 7 days per week, 24 hours per day until that condition has been patched or bypassed. Following the development of the patch or bypass, FIC will promptly deliver same to Client. |

*Fair Isaac Confidential*

| Fair Isaac Order Form | Page 18 of 29 |
|---|---|
| FI Contract Number: | FI LR#18313 |

| Severity | Condition / Criteria | Response Time/Action |
|---|---|---|
| 2 | An Error where a major functionality of the software is inhibited, but this Error does not materially disrupt the Client's business. | **Development:**<br>(a) Provide a written or phone response within 2 hours during FIC's Regular Business Hours and<br>(b) an action plan within 2 business days for a bypass for the Error <u>or</u><br>(c) an action plan within 5 business days for developing a patch for the Error.<br><br>**Production: Impaired**<br>(a) Provide a written or phone response within 4 hours during FIC's Regular Business Hours and<br>(b) an action plan within 2 business days for a bypass for the Error or<br>(c) an action plan within 5 business days for developing a patch for the Error.<br><br>Following the development of the patch or bypass, FIC will promptly deliver same to Client. |
| 3 | An Error where a feature of the software is inhibited, but this Error does not materially disrupt the Client's business. | **Development:**<br>(a) Provide a written or phone response within 4 hours during FIC's Regular Business Hours <u>and</u><br>(b) Consider for correction in the next revision of the FIC software.<br><br>**Production: Inhibited**<br>(a) Provide a written or phone response within one business day <u>and</u><br>(b) Consider for correction in the next revision of the FIC software. |

*Fair Isaac Confidential*

| Fair Isaac Order Form | | | Page 19 of 29 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#18313 |

| Severity | Condition / Criteria | Response Time/Action |
|---|---|---|
| 4 | A "how to" question; an Error which is minor or cosmetic in nature; or an enhancement request to be considered for a future revision of the software. | **Development: General Assistance**<br>(a) Provide a written or phone response within 1 business day <u>and</u><br>(b) Considered for Correction or inclusion in the next revision of the FIC software.<br><br>**Production: General Assistance**<br>(a) Provide a written or phone response within 2 business days <u>and</u><br>(b) Consider for correction or inclusion in the next revision of the FIC software. |

## 4. TERM; TERMINATION; REINSTATEMENT

**4.1.** FIC's support and maintenance obligations under this policy ("Maintenance Policy"), commence upon delivery of the Software and will continue for an initial term of one year. Maintenance fees will be invoiced on an annual basis in advance. For as long as FIC makes maintenance for the Software generally available to all of its customers, the support and maintenance service will automatically renew for consecutive one-year terms unless Client gives FIC 30 days' written notice, prior to the end of the current term, of its intent not to renew. As a matter of clarity, Client's election not to renew Maintenance shall not effect Client's underlying license rights to continue to use the FIC Products in accordance with the terms of this Agreement. Support and maintenance during renewal terms will be subject to the Support and Maintenance Policy in effect at the time of renewal. In the event of any changes to FIC's Maintenance Policy prior to Clients upcoming annual renewal period, FIC shall provide Client with ninety (90) days prior written notice of such change. Maintenance fees applicable to renewal terms may be increased by FIC, but no such increase may exceed four percent (4%) or the most recently available annual change in the CPI, whichever is less. **"CPI"** means the Consumer Price Index for All Urban Consumers (CPI-U) for the U.S. City Average for All Items, 1982-84=100, as published by the US Bureau of Labor Statistics.

**4.2.** FIC may terminate support and maintenance services under this policy upon 30 days' written notice if Client is in breach under this policy or any license agreement relating to the Software and does not cure the breach within such 30-day period. FIC will have no obligation to resume support and maintenance services following such a termination for cause.

**4.3.** FIC may, at its sole discretion, reinstate lapsed support and maintenance services, in accordance with its then-current policies, upon payment by Client of the applicable then-current reinstatement fee. Such fee is subject to reinstatement of support and maintenance by Client and shall not exceed the total amount of maintenance fees accumulated during the delinquent period.

## 5. EXCLUSIONS

*Fair Isaac Confidential*

| Fair Isaac Order Form | | | Page 20 of 29 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#18313 |

**5.1.** Services outside the scope of this policy are subject to availability of resources and will be charged for separately at FIC's then-current rates for such services. The following services are outside the scope of this policy:

    **5.1.1.** Support services provided outside of Regular Business Hours, except as otherwise indicated herein.

    **5.1.2.** Support service that becomes necessary due to failure of computer hardware, equipment or programs not provided by FIC; negligence of Client or any third party; operator error; improper use of hardware or software (including the Software); any problem or loss not solely attributable to the Software; problems stemming from Client not applying all required maintenance releases; or problems due to unauthorized modification or adaptation of the Software by Client.

    **5.1.3.** Development, customization, coding, installation, integration, consulting and training.

**5.2** FIC has no obligation to provide support or maintenance services for other than (a) the current version of the Software and (b) one prior version of the Software, but only for a maximum of one year after release of a subsequent version.

*Fair Isaac Confidential*

| Fair Isaac Order Form | | | Page 21 of 29 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#18313 |

# EXHIBIT C
# STATEMENT OF WORK

## 1.1 FIC Understanding

Client is creating a system to increase their effectiveness at managing the rebates and incentives. This system, called the Avnet Rebate Management System (ARMS) will provide a flexible and standard mechanism to calculate targets and provide real-time access to attainment data.

The ARMS system will support the QCC, the Small Medium Business (SMB) rebate program, the FastStart program, as well as providing reporting.

ARMS will provide sales executives with a decision making support system enabling them to see near real-time attainment data. This information will lead to better decision making, focused order processing and realization of additional rebates and incentives.

## 1.2 Objectives

Client has requested assistance to implement approximately 10 business rules concerning rebate and incentive programs. This assistance will both recommend best practices for using Blaze Advisor and mentor Client staff in the use and set up of the Blaze Advisor software.

FIC will:

1) Perform discovery on approximately 90 business rules covering 3 rebate programs. Design a rules service that optimizes performance and minimizes maintenance for these rules.
2) Create a functional sub-set rule service capable of applying limited rebate and incentive logic to raw sales data, producing summarized data for reporting. The rule service will consist of 1-2 rule flows, approximately 5 rule set skeletons (no more than 2 rules), and 10 rules. The rule service will connect with the sales database as required. Client will complete development of this rule base as required to support their incentive programs after the developed rule service has been deployed.
3) Deploy this rule service into the production java container (to be defined during the design sessions) and verify connectivity & interactivity with the ARMS system components. Performance specifications will be defined during the 3 week design & development process.
4) Perform 2 or 3 - 8 hr code reviews on the repository and provide feedback and suggestions. Prior to release into system testing, Client will provide FIC with a copy of the repository.
5) Provide a FIC resource to be on-site for up to 2 weeks of performance testing. FIC will attempt to fix and recommend solutions to any performance bottlenecks that arise during this phase of testing.
6) Mentor and involve Client resources on the design decisions of the rule service to ensure knowledge transfer. FIC consultant will mentor and involve Client resources where applicable in rule writing activities to facilitate knowledge transfer.
7) Provide documentation on repository design, rule flow logic and other major rule components.

## 1.3 Assumptions- FIC makes the following assumptions regarding this proposal:

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only     **D-0283-021**     FICO0041665

| Fair Isaac Order Form | | | Page 22 of 29 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#18313 |

1) Client subject matter experts shall be available to provide Client requirement information to FIC, full time during the first two weeks of the project and as needed thereafter.
2) Client personnel will be responsible for the set up and tuning of the run-time and development infrastructure components including code control, security, data access, and other system integration.
3) Client will construct a business object model, in Java used to present information to the Blaze Advisor rule engine for processing.
4) Client personnel will create all report views of sales and program data for ARMS.
5) Client personnel will create all ARMS application maintenance screens. For example, the parts matrix screens.
6) Client personnel will provide all required support software, including any required drivers for database and/or LDAP connectivity.
7) Client will be responsible for testing design, providing test data, and/or programming and configuration of any automated testing tools.
8) Client is responsible for designing and implementing all version control, deployment policies and procedures.
9) Client will provide currency conversion framework in ARMS.
10) Client will design, create and provide database schema used by the ARMS system. Database schemas specific to the internal operations of Blaze Advisor software will be provided by FIC.
11) Client will provide end-user training, and create and/or provide any training materials necessary.

## 1.4 Scope Management

During the course of this SOW, either party may request a change to this SOW. A Project Change Request (PCR) will be the vehicle for communicating change. The PCR must describe the change; the rationale for the change and the effect the change will have on the project. All such requests will be submitted in writing. Any change to a SOW may result in a change in the estimated schedule, deliverable items or charges. Any change in the charges will require the issuance of a Purchase Order covering such charge.

Reasonable effort will be made by both parties to evaluate, approve or reject all Project Change Requests in a timely manner.

Depending on the extent and complexity of the requested change FIC may charge for the effort required to analyze a requested change.

The changes will be in effect when both parties sign a written change authorization. The change authorization will modify and take precedence over any inconsistent terms of the applicable SOW or any previous change authorization.

The following provides a detailed process to follow if a change to this SOW is required.

## A. Part I Investigation of Change Request

a. The designated Project Manager of the requesting party will review the proposed change and determine whether to submit the request to the other party.
b. Both the Project Managers review the PCR and either reject it or authorize further investigation to estimate and price the effort. Such rejection or authorization will be documented on the PCR and signed by both parties.
c. If authorization for further investigation is granted, it will be assigned to the appropriate FIC individual for estimation. Upon completion of this effort, the PCR will then be returned to the Project Managers for their review. If the investigation is authorized then both the Project Managers will sign the PCR, which will constitute approval for the investigation charges. The

*Fair Isaac Confidential*

| Fair Isaac Order Form | | Page 23 of 29 |
| --- | --- | --- |
| FI Contract Number: | | FI LR#18313 |

investigation will determine the effect that the implementation of the PCR will have on Scope, Schedule, and Resource requirements.

d.   The results of the investigation will be documented, and the PCR will be provided to the Vendor Project Manager for review and authorization for implementation.

**B.  Part II Change Implementation**

a.   The Project Managers will review the PCR and either reject or approve it for implementation by having authorized representatives (Project Sponsor for Client, and appropriate Executive for FIC) of both parties sign the PCR.

b.   Appropriate funding documentation must be issued prior to the implementation of any change

To authorize implementation of the investigated changes, a written change authorization, or this PCR again in the space indicated, must be signed by both parties.

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only              **D-0283-023**              FICO0041667

| Fair Isaac Order Form | | Page 24 of 29 |
|---|---|---|
| FI Contract Number: | | FI LR#18313 |

## C.  Change Request Form

The following Project Change Request form is to be used as described in the SOW.

| Project Change Request | | Contract (SOW) Ref: | |
|---|---|---|---|
| | | PCR Number: [TBD by PM] | |
| Subject | | | |
| Submitted By | | Date | |
| Description of Proposed Change and Reason for the Request: (Add attachments, if necessary) | | | |
| Part I: Investigation of Change Request | | | |
| Hours to investigate change | Estimates | | Actual |
| ( ) Accept for Investigation ( ) Reject for Investigation | Signed:_____ Vendor Representative | | Date |
| Reason for Rejection: (Add attachment if necessary) | | | |
| The above estimate will be withdrawn if not accepted by :      /      / | | | |
| Part II: Change Implementation | | | |
| Project Plan Change Required? ( ) No ( ) Yes   ____Amended Project Plan attached            ____To be included with future changes | | | |
| Description and Impact of Change to Implementation: (Add attachment if necessary.  This description to include additional tasks, deliverables, completion criteria, Vendor responsibilities, etc. in the applicable SOW section format.) | | | |
| Estimated additional days to Implement Change: | Estimate will be withdrawn by (DD/MTH/YYYY) if not extended in writing. | | |
| ( ) Accept for implementation ( ) Reject for implementation | Signed:_____ Vendor Representative | | Date |

*Fair Isaac Confidential*

FICO0041668

| Fair Isaac Order Form | Page 25 of 29 |
|---|---|
| FI Contract Number: | FI LR#18313 |

| ( ) **Accept for implementation**<br><br>( ) **Reject for implementation** | Signed:_____<br>                Avnet Representative | **Date** | |

*Fair Isaac Confidential*

Confidential - Attorneys' Eyes Only                **D-0283-025**                FICO0041669

| Fair Isaac Order Form | | Page 26 of 29 |
|---|---|---|
| FI Contract Number: | | FI LR#18313 |

### 1.5  Risk Management

FIC and Client will establish sound project management to identify risks and mitigating options before the success of the project is impacted.  Additionally, throughout the project life cycle, FIC may provide independent Quality & Risk Management reviews on a periodic basis.  These reviews will be conducted by Senior Management and are designed to review project controls and processes set in place for the engagement and address potential, new or stated project risks and provide mitigating recommendations. Additionally, these reviews may offer guidance by which quality can be assessed and improved.

FIC recommends formal Blaze Advisor product training. Specifically, we recommend both the *Blaze Advisor Fundamentals* and the *Advanced Rules Maintenance Application Development* classes.

*Fair Isaac Confidential*

### 1.6 Fees, Timing and Payment Terms

We estimate the project duration is approximately ▮ hrs billable at $▮ an hour, (▮ hours of design & development / 2 to 3 - 8 hour code review / 80 hours of performance tuning). FIC will provide the Services on a time and materials basis. The schedule of estimated hours and rates are as described below.

**Estimated Fees:**

| Service Description | Product # | Estimated Hours | Hourly Rate | Total |
|---|---|---|---|---|
| Blaze Advisor Professional Services | 280-OOCN-02 | 224 | $▮ | $▮ |

*Fair Isaac Confidential*

| Fair Isaac Order Form | | | Page 28 of 29 |
|---|---|---|---|
| FI Contract Number: | | | FI LR#18313 |

**EXHIBIT D**
**FIC GUIDELINES FOR SUBMITTING SUPPORT REQUESTS**

The following guidelines are not prerequisites to FIC's obligations to provide support and maintenance under the Support and Maintenance Policy.

FIC encourages you to first consult the appropriate documentation for the product you are using (installation guides, reference manuals, user guides, product release notes, etc.). Release notes will typically include contents of the release, installation/license information, known limitations, product support, and compatibility information. Other reference materials should also be consulted as needed for related components such as database management systems, compilers, operating systems, etc. For FIC products with web-based self-service (Blaze is such a product), visit the support web site to search for known questions, solutions and technical notes.

FIC recommends that the Client gather as much relevant information as possible prior to contacting the Product Support team per the suggested list below:

---

**Troubleshooting Tips:**

- Isolate the problem as precisely as possible using debugging facilities and error logs as appropriate, and try to find a consistent way to reproduce it.
- Whenever possible, modify a FIC provided example or test case to cause the same problem.
- If the problem is not consistently reproducible, check whether it may be related to insufficient memory, memory leaks, search paths, or files that may be missing from certain directories or the class path.
- Verify that the versions of the database, compilers, operating system, browser, drivers, etc. that are in use are certified and supported by FIC.
- Identify any other changes that may have occurred in your environment that may have an impact on the FIC solution (for example, database maintenance, service pack deployment, upgrade of a system component, operating system patches, etc.)
- Try to reproduce the problem on another platform or test system.
- If applicable, try to isolate various components of your solution to simplify the troubleshooting (for example, pull out a subset of rules or code from the bulk of your application). Support can assist you best if we get a small sample of your application to work with. If possible send us a small test case with instructions, so we can run the test case.

---

FIC recommends that if you've completed the foregoing and are still unable to resolve your problem, the next step will be to contact Product Support. The following information is critical to resolving a problem:

- Your client ID or license number (if applicable).
- Your phone number and a fax number or email address.

*Fair Isaac Confidential*

| Fair Isaac Order Form | | | Page 29 of 29 |
| --- | --- | --- | --- |
| FI Contract Number: | | | FI LR#18313 |

- The name and version of the FIC software to which the issue pertains. For incidents submitted via email, please be sure to include the **product name** on the subject line of the email.
- The name and version of the operating system and database.
- The environment in which the error is occurring (development, test or production).
- Both a general statement and a detailed description of the problem, including any relevant error messages.
- Frequency with which the condition occurs and at what intervals.
- Can the problem be replicated, and if so, the steps taken to recreate the problem.
- Any changes that may have been made to the environment (for example, maintenance work that may have been performed or any hardware/software changes made to the server, workstation, operating system, or data feed).
- Any changes to the FIC application, including new configuration or software upgrades.

Copies of the FIC product log files, configuration files, and screen prints of errors.

*Fair Isaac Confidential*

| Fair Isaac Agreement | Page 1 of 2 |
|---|---|
| FI Contract Number: | FI LR# 24496 |

## Addendum Number 1 to Software License and Services Agreement

This Addendum Number 1 to Software License and Services Agreement ("Addendum") is dated September 30, 2005 ("Addendum Effective Date") and is between **Avnet, Inc.** ("Client") and **Fair Isaac Corporation** ("FIC").

### RECITALS

A. FIC and Client entered into a Software License and Services Agreement dated May 12, 2005 (the "Agreement").

B. FIC and Client wish to supplement the Agreement to provide for additional product licenses and maintenance services to be purchased by Client.

**The Parties Agree as Follows:**

1. **Additional Product Licenses and Maintenance Services.**

Client agrees to purchase the additional Blaze Advisor product licenses and maintenance services set forth in the table below. The additional Blaze Advisor product licenses and maintenance service set forth in the table below, and Client's use thereof, shall be subject to the terms and conditions of the Agreement. The additional Blaze Advisor software products shall be deemed "FIC Products" within the meaning of the Agreement.

| Product | Item Number | Total |
|---|---|---|
| **FIC Blaze Advisor Development, Version 6.0 – Additional 5 Seats** <br><br> Platform: Java | 280-DVLI-03 | $■■ <br> **One Time License Fee** |
| **FIC Blaze Advisor Deployment, Version 6.0 - Additional 4 CPUs** <br><br> Platform: Java (IBM AIX) | 280-DPLI-03 | $■■■ <br> **One Time License Fee** |
| **Documentation** - Electronic copy included with purchase of software license. | N/A | **Included in the License Fees** |
| **TOTAL LICENSE FEES:** <br> **DISCOUNT (35%):** <br> **NET LICENSE FEES:** | | $■■ <br> (■■■ <br> $■■■ |
| **Maintenance and Support Services for Additional Licenses** <br><br> To commence April 1, 2006, and to run for an initial pro-rated term through May 10, 2006. The first regular annual term thereafter will commence on May 11, 2006, to be coterminous with Client's existing maintenance program. <br><br> Described in Exhibit B to the Agreement. | 280-OOMN-08 | $■■■ <br> per annum <br><br> ■ of Net License Fees) <br><br> Initial prorated term = <br> $■■■ 5 |
| **TOTAL LICENSE AND MAINTENANCE FEES:** | | $■■■ |

Confidential - Attorneys' Eyes Only FICO0041637

| Fair Isaac Agreement | Page 2 of 2 |
|---|---|
| FI Contract Number: | FI LR# 24496 |

## 2.    PAYMENT

**2.1    License Fees.** Client agrees to pay the license fees described above thirty (30) days from receipt of FIC's invoice.

**2.2    Maintenance Fees.** Client agrees to pay the support and maintenance fees for the initial pro-rated period shown above thirty (30) days from receipt of FIC's invoice. Client agrees to pay the support and maintenance fees for each subsequent annual term thereafter in advance for so long as the maintenance term is in effect. Client agrees that the maintenance fee set forth above covers only the additional licenses to the FIC Products set forth in this Addendum and does not cover the initial licenses purchased by Client under the Agreement. The total maintenance fee for the FIC Products for future years shall be calculated based on the total license fees paid by Client for the FIC Products under this Addendum and under the Agreement.

**3.    Entire Agreement; Construction; Amendment.** This Addendum is subject to the terms and conditions of the Agreement, and this Addendum, together with the terms and conditions of the Agreement, shall constitute the entire understanding of the parties with respect to the subject matter hereof, and supersedes and terminates all prior agreements and understandings between the parties with respect to the subject matter hereof. The parties expressly agree that the terms of any purchase order shall NOT alter, in any way, the terms of this Addendum. In the event of any conflict between the terms of this Addendum and the Agreement, the terms of this Addendum shall control.

IN WITNESS WHEREOF, FIC and Client have caused this Addendum to be signed in duplicate and delivered by their duly authorized representatives as of the Addendum Effective Date.

**FAIR ISAAC CORPORATION**

By: _____
Name: Robert Ron
        Director
Title: Financial Planning & Analysis
Date Signed: 9/30/05

**AVNET, INC.**

By: _____
Name: Pat Jewett
Title: Sr. V.P.
Date Signed: 09/30/2005

| *Fair Isaac Use Only:* | | | Created: 28-Sep-05 | |
|---|---|---|---|---|
| Short Name: | | Client #: | Acct. Exec.: | |
| OE Order #: | | System #: | Royal Blue #: | |
| Sales Approval: | | Notes: | | |

Unless Client signs this Agreement and returns it to FIC by September 30, 2005, prices and terms are subject to change.

Confidential - Attorneys' Eyes Only                                                FICO0041638

D-0283-031

| Amendment Number 1 to Software License and Services Agreement | | Page 1 of 2 |
| --- | --- | --- |
| FI Contract Number: | | FI LR# 28525 |

### Amendment Number 1 to Software License and Services Agreement

This Amendment Number 1 ("Amendment") is entered into the 12th day of May, 2006 (the "Effective Date") by and between Fair Isaac Corporation ("FIC") and Avnet, Inc. ("Client"), and describes the terms and conditions under which Client shall be allowed to give a third party access to certain software previously licensed by Client from FIC.

WHEREAS, FIC and Client entered into a Software License and Services Agreement dated May 12, 2005 (the "Agreement"); and

WHEREAS, pursuant to the Agreement Client was granted licenses to the FIC software known as Blaze Advisor; and

WHEREAS, Client wishes to provide IBM, including IBM Global Services India Private Limited, a subsidiary of IBM ("IGSI") (collectively "IBM"), access to an instance of (i.e. 1 CPU) Blaze Advisor Deployment for the purpose of testing same in a non-production development environment and FIC consents to such access based on the terms and conditions outlined herein.

NOW THEREFORE, the parties agree as follows:

1.      Authorized Third Party Use.  The Agreement is hereby amended to permit Client to provide IBM with access to an instance of Blaze Advisor Deployment for the purpose of testing same in a non-production development environment pursuant to the terms and conditions set forth in this Amendment and the Agreement.  This Amendment only permits IBM to use an instance of Blaze Advisor Deployment for the purpose of testing same in a non-production development environment and does not increase the total number of CPUs licensed under the Agreement.  Client represents and warrants that it has entered into a written agreement with IBM that includes confidentiality, non-use and other provisions with respect to Blaze Advisor Deployment that are at least as protective to FIC as the terms and conditions of this Amendment and the Agreement.  Client shall be and remain liable to FIC for IBM's use of Blaze Advisor Deployment, including IBM's compliance with the terms and conditions of this Amendment and the Agreement.  Except as provided herein, Client agrees that it shall not grant access to the FIC Products to any other third party without the prior written consent of FIC.

2.      Location and Purpose of Authorized Use.  Client agrees that IBM is only permitted to use an instance of Blaze Advisor Deployment as permitted in the Agreement and on servers leased by Client from IBM at the following location: the IGSI facility in Kolkata, India.  Client further agrees that IBM is only permitted to use an instance of Blaze Advisor Deployment on behalf of Client in a non-production development environment to test the Quote Management Solution for Client's Electronics Marketing Group (the "Project").

3.      Term of Authorized Use.  The term of third party authorized use granted under this Amendment shall commence on the Effective Date of this Amendment and shall expire upon the earlier of (i) the completion or termination of the Project, or the expiration or termination of the professional services agreement between Client and IBM for the Project; or (ii) one (1) year from the Effective Date of this Amendment, unless otherwise extended in writing by FIC.  FIC shall have the right to terminate IBM's use of Blaze Advisor Deployment at any time if it has a reasonable basis to believe that IBM is in breach or has breached any term of this Amendment or the Agreement.  Upon the expiration or termination of the third party authorized use granted under this Amendment, Client shall cause IBM to cease all use of the instance of Blaze Advisor Deployment permitted hereunder and to return or destroy its copy of the Blaze Advisor in accordance with the terms of the Agreement.

4.      Effect of Amendment.  Except as amended herein the terms and conditions of the Agreement remain in full force and effect.

Confidential - Attorneys' Eyes Only                                                                              FICO0010991

| Amendment Number 1 to Software License and Services Agreement | | Page 2 of 2 |
| --- | --- | --- |
| FI Contract Number: | | FI LR# 28525 |

IN WITNESS WHEREOF, FIC and Client have caused this Amendment to be signed in duplicate and delivered by their duly authorized representatives as of the Effective Date.

**FAIR ISAAC CORPORATION**                    **AVNET, INC.**

By: _____          By: _____

Name: _Daniel S. Chelew_____          Name: _Pat Jewett_____

Title: _Vice President_____          Title: _Sr. VP_____
       _Financial Planning & Analysis_

Date Signed: _May 16 2006_____          Date Signed: _5/12/06_____



Confidential - Attorneys' Eyes Only                    FICO0010992

| Addendum Two to Fair Isaac Software License and Maintenance Agreement – Blaze Advisor | Page 1 of 6 |
|---|---|
| FI Contract Number: | FI LR# 33983 |

## ADDENDUM TWO TO
## SOFTWARE LICENSE AND SERVICES AGREEMENT

This Addendum Number 2 (the "**Addendum Two**") to the Software License and Services Agreement is dated March 29 2007 ("**Addendum Two Effective Date**") and is between Fair Isaac Corporation ("**FIC**") and Avnet, Inc. ("**Client**").

### RECITALS

A. FIC and Client entered into a Software License and Services Agreement dated May 12, 2005 and an Addendum Number 1 to such agreement dated September 30, 2005 (collectively the "**Agreement**").

1. As of the Addendum Two Effective Date, FIC grants to Client the license outlined herein. All previous licenses granted to Client under the Agreement shall be terminated and superseded by the license granted herein.

| Product | Item # | Initial Term | Scope/Quantity | Price | Total |
|---|---|---|---|---|---|
| Blaze Advisor Development Platform: JAVA | 280-SELI-03 | Perpetual | Enterprise-Wide | $ ▇ | $ ▇ |
| Blaze Advisor Deployment Platform: JAVA | 280-SELI-03 | Perpetual | Enterprise-Wide | Included in license fees above | Included in license fees above |
| Documentation for Blaze Advisor:<br>• User guide (available in HTML or PDF) | N/A | Perpetual | 1 set | Electronic copy included with license | Included in license fees above |
| **Total Gross Enterprise-Wide License Fees:** | | | | | $ ▇ |
| **Less License Fees Paid for Previous Licenses:** | | | | | ($ ▇ |
| **Total Net Enterprise-Wide License Fees:** | | | | | $ ▇ |
| Support and Maintenance Fee for Blaze Advisor Software: | 280-OOMN-08 | Initial Term: One year | Set forth in Exhibit A attached hereto | ▇ of Total Gross Enterprise-Wide License Fees | $ ▇ Year One (Annual fee thereafter subject to annual adjustment) |
| TOTAL LICENSE AND FIRST YEAR SUPPORT AND MAINTENANCE FEES: | | | | | $ ▇ |
| Less Balance of Unused Maintenance Fees Paid for the period 5/12/06-5/12/07: | | | | | <$ ▇ |
| NET TOTAL LICENSE AND FIRST YEAR SUPPORT AND MAINTENANCE FEES DUE: | | | | | $ ▇ |

| Addendum Two to Fair Isaac Software License and Maintenance Agreement – Blaze Advisor | Page 2 of 6 |
|---|---|
| FI Contract Number: | FI LR# 33983 |

## 2. PAYMENT

**2.1 License Fees.** Client agrees to pay the license fees described above thirty (30) days from receipt of FIC's invoice.

**2.2 Maintenance Fees.** Client agrees to pay the support and maintenance fees for the first year thirty (30) days from receipt of FIC's invoice and annually thereafter in advance while the maintenance term is in effect. Client's maintenance term for the license granted herein shall run April 1 through March 31 of each year while the maintenance is in effect. Client agrees that the maintenance fee set forth above covers only the Blaze Advisor Enterprise-Wide license and does not cover any other licenses granted to Client under any other agreement.

## 3. MISCELLANEOUS.
Unless otherwise indicated, capitalized terms used in this Addendum Two have the meanings given them in the Agreement. Except as expressly amended herein, the provisions of the Agreement continue in full force and effect. If there is a conflict between the Agreement and this Addendum Two, the terms of this Addendum Two control. This Addendum Two, together with the terms of the Agreement, constitute the full and entire understanding and agreement between the parties with regard to the subject matter hereof, and supersedes all prior or contemporaneous proposals and all other oral or written understandings, representations, conditions, and other communications between the parties relating to such subject matter, as well as the terms of all existing or future purchase orders and acknowledgements.

Fair Isaac and Client are signing this Addendum Two as of the Addendum Two Effective Date, notwithstanding the date of the parties' actual signatures.

**FAIR ISAAC CORPORATION**

By: _____

Name: Aaron Jaeger

Title: Manager, Financial Planning & Analysis

Date Signed: 3/30/07

**AVNET, INC.**

By: _____

Name: Pat Jewett

Title: Sr. V.P

Date Signed: 03/27/2007

Purchase Order #: K028051b

**Unless Client signs this Addendum Two and returns it to Fair Isaac by March 30, 2007 prices and terms are subject to change.**



| Addendum Two to Fair Isaac Software License and Maintenance Agreement – Blaze Advisor | Page 3 of 6 |
|---|---|
| FI Contract Number: | FI LR# 33983 |

## EXHIBIT A - FAIR ISAAC SOFTWARE SUPPORT AND MAINTENANCE POLICY

### 1.  DEFINITIONS

"**Client**" means Avnet, Inc.

"**Fair Isaac**" means Fair Isaac Corporation and its subsidiaries.

"**Errors**" means persistent malfunctions, inherent within the Software, that prevent the Software from operating according to its technical documentation.

"**Maintenance Fees**" means the support and maintenance fees applicable to the Software licensed by Client. In the case of software licensed on a subscription basis, the Maintenance Fees are included in the applicable subscription fees.

"**Product Support Hours**" – are 6:00 a.m. to 5:00 p.m. Pacific Time, Monday through Friday, excluding holidays observed by Fair Isaac in the United States. Support services will be provided from the United States.

"**Software**" means the following Fair Isaac software product(s) licensed by Client: Blaze Advisor

### 2.  SUPPORT AND MAINTENANCE SERVICES GENERALLY

2.1     Subject to payment of the appropriate Maintenance Fees by Client, and compliance by Client with the terms of this policy and the applicable license agreement, Fair Isaac shall provide Client with support and maintenance services for the Software as set forth in this policy.

2.2     Fair Isaac provides support and maintenance services for licensed Software during both implementation and production use when operated on supported platforms installed on designated or approved equipment, as set forth in the technical documentation for the Software. Support is currently provided in the English language only.

2.3     Subject to Article 5 (Exclusions), maintenance includes any standard Software versions and releases generally made available to Fair Isaac's customers that are current on Maintenance Fees. Those versions and releases will be provided to Client under this policy on a when-and-if-available basis.

### 3.  TECHNICAL SUPPORT

3.1     Fair Isaac will make commercially reasonable efforts, during Product Support Hours, to address Client's questions about the Software, to resolve operating problems that are attributable to the Software, and to resolve verified, reproducible Errors in the Software.

3.2     Client agrees: (a) to set up primary and secondary liaisons who have been trained on the Software; (b) that all support requests will be centralized through the primary and secondary liaisons; (c) to submit support requests to Fair Isaac Product Support; (d) to comply with the attached guidelines for submitting support requests; (e) to use commercially reasonable efforts to diagnose and resolve problems in the operation of the Software prior to contacting Fair Isaac for support; and (f) to use commercially reasonable efforts to verify that reported problems are due to a malfunction of the Software, and not due to the operating system, hardware, data, interfaces, or improper use of the Software, prior to contacting Fair Isaac for support.

Confidential - Attorneys' Eyes Only
FICO0041641

| Addendum Two to Fair Isaac Software License and Maintenance Agreement – Blaze Advisor | | | Page 4 of 6 |
|---|---|---|---|
| FI Contract Number: | | | FI LR# 33983 |

## 4.   TERM; TERMINATION; REINSTATEMENT

4.1      Fair Isaac's support and maintenance obligations under this policy commence upon shipment of the Software and will continue for an initial term of one year. Maintenance Fees will be invoiced on an annual basis in advance. For as long as Fair Isaac makes maintenance for the Software generally available to all of its customers, the support and maintenance service will automatically renew for consecutive one-year terms unless Client gives Fair Isaac 30 days' written notice, prior to the end of the current term, of its intent not to renew. Support and maintenance during renewal terms will be subject to the Support and Maintenance Policy in effect for the Software at the time of renewal. Maintenance Fees applicable to renewal terms may be increased by Fair Isaac, but no increase may exceed four percent (4%) or the most recently available annual change in the CPI, whichever is less. "CPI" means the Consumer Price Index for All Urban Consumers (CPI-U) for the U.S. City Average for All Items, 1982-84=100, as published by the US Bureau of Labor Statistics.

4.2      Fair Isaac may terminate support and maintenance services under this policy upon at least 30 days' written notice if Client is in breach under this policy or any license agreement relating to the Software and does not cure the breach before the end of the notice period. Fair Isaac will have no obligation to resume support and maintenance services following a termination for cause under this section.

4.3      Fair Isaac may, at its sole discretion, reinstate lapsed or terminated support and maintenance services, in accordance with its then-current policies, upon payment by Client of the applicable reinstatement fee.

## 5.   EXCLUSIONS

5.1      Services outside the scope of this policy are subject to availability of resources and will be charged for separately at Fair Isaac's then-current rates for those services. The following are outside the scope of this policy:

> (a)      Support services provided outside of Product Support Hours or any other hours as are provided for in Section 6 (Severity Levels and Response Times).

> (b)      Support service that becomes necessary due to failure of computer hardware, equipment or programs not provided by Fair Isaac; negligence of Client or any third party; operator error; improper use of hardware or software (including the Software); any problem or loss not solely attributable to the Software; problems stemming from Client not applying all required maintenance releases; or problems due to unauthorized modification or adaptation of the Software by Client.

> (c)      Development, customization, coding, installation, integration, consulting and training.

> (d)      Optional, separately-priced Software features that may, from time to time, be made available by Fair Isaac with new versions or releases of the Software.

5.2      Unless otherwise indicated in the applicable Order Form or license agreement, Fair Isaac has no obligation to provide support or maintenance services for other than (a) the current release of the Software and (b) one prior release of the Software, but only for a maximum of one year after release of a subsequent release.

| Addendum Two to Fair Isaac Software License and Maintenance Agreement – Blaze Advisor | Page 5 of 6 |
|---|---|
| FI Contract Number: | FI LR# 33983 |

6. **SEVERITY LEVELS AND RESPONSE TIMES**. Upon Client's report of a problem with the Software, a Fair Isaac representative will acknowledge the report by issuing a confirmation to Client, either by phone or email, and Fair Isaac will assign a Severity Level to the problem based on the type of issue reported, according to the following schedule:

| Severity | Condition | Response Time/Action |
|---|---|---|
| 1 | **Production Down Emergency: An Error in the production environment that inhibits all or substantially all of the Software from functioning in accordance with its documentation. A severity "one" problem is both severe and mission-critical.:** | Provide:<br>(a) a phone response within 1 hour during Fair Isaac's Product Support Hours and |
| | | (b) an action plan within 4 hours for the development of a patch or a bypass for the Error. |
| | | Following the development of the patch or bypass, Fair Isaac will notify Client of inclusion of the patch or a solution in a revision of the Software. |
| | | Once identified and logged, Fair Isaac will provide all necessary services to resolve a Severity-One condition on a diligent-efforts priority basis seven days per week until that condition has been patched or bypassed. |
| 2 | **Production Impaired: An Error in the production environment where major functionality of the Software is inhibited, but the Error does not materially disrupt Client's business** | Provide:<br>(a) a written or phone response within 4 hours during Fair Isaac's Product Support Hours and |
| | | (b) an action plan within 2 business days for a bypass for the Error or |
| | | (c) an action plan within 5 business days for developing a patch for the Error. |
| | | Following the development of the patch or bypass, Fair Isaac will notify Client of inclusion of the patch or a solution in a revision of the Software. |
| | | Fair Isaac will work on the Error during Product Support Hours. |
| 3 | **Production Inhibited: An Error in the production environment where a feature of the Software is inhibited, but the Error does not materially disrupt Client's business** | Provide:<br>(a) a written or phone response within one business day and |
| | | (b) Consider for correction or inclusion in the next revision of the Software. |
| 4 | **General Assistance: A "how to" question; an Error that is minor or cosmetic in nature; or an enhancement request to be considered for a future revision of the Software** | Provide:<br>(a) a written or phone response within 2 business days and |
| | | (b) Consider for correction or inclusion in the next revision of the Software. |

| Addendum Two to Fair Isaac Software License and Maintenance Agreement – Blaze Advisor | | Page 6 of 6 |
|---|---|---|
| FI Contract Number: | | |
| | | FI LR# 33983 |

## Fair Isaac Product Support

## Problem Submission Guidelines

We encourage customers to first consult the appropriate documentation for the product they are using (installation guides, reference manuals, user guides, product release notes, etc.). Release notes will typically include contents of the release, installation/license information, known limitations, product support, and compatibility information. Other reference materials should also be consulted as needed for related components such as database management systems, compilers, operating systems, etc. For Fair Isaac products with web-based self-service, visit the support web site to search for known questions, solutions and technical notes.

If you've completed this initial research and are still unable to resolve your problem, the next step is to contact Product Support. The following information is critical to resolving a problem:

• Your Customer ID (a 4-digit number communicated to you either by your Engagement Manager or during your first contact with Product Support) or license number (if applicable).
• Your phone number and email address
• The name and version of the Fair Isaac software to which the issue pertains. For incidents submitted via email, please be sure to include the product name on the subject line of the email.
• The name and version of the operating system and database.
• The environment in which the error is occurring (development, test or production).
• Both a general statement and a detailed description of the problem, including any relevant error messages.
• Frequency with which the condition occurs and at what intervals.
• Can the problem be replicated, and if so, the steps taken to recreate the problem.
• Any changes to the Fair Isaac application, including new configuration or software upgrades.
• Copies of the Fair Isaac product log files, configuration files, and screen prints of errors.

### Troubleshooting Tips:

• Isolate the problem as precisely as possible using debugging facilities and error logs as appropriate, and try to find a consistent way to reproduce it.
• Whenever possible, modify a Fair Isaac provided example or test case to cause the same problem.
• If the problem is not consistently reproducible, check whether it may be related to insufficient memory, memory leaks, search paths, or files that may be missing from certain directories or the class path.
• Verify that the versions of the database, compilers, operating system, browser, drivers, etc. that are in use are certified and supported by Fair Isaac.
• Identify any other changes that may have occurred in your environment that may have an impact on the Fair Isaac solution (for example, database maintenance, service pack deployment, upgrade of a system component, operating system patches, etc.)
• Try to reproduce the problem on another platform or test system.
• If applicable, try to isolate various components of your solution to simplify the troubleshooting (for example, pull out a subset of rules or code from the bulk of your application). Support can assist you best if we get a small sample of your application to work with. If possible send us a small test case with instructions, so we can run the test case.
• Any changes that may have been made to the environment (for example, maintenance work that may have been performed or any hardware/software changes made to the server, workstation, operating system, or data feed).

Confidential - Attorneys' Eyes Only

FICO0041644