# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Fair Isaac Corporation, | Case No. 16-cv-1054 (DTS) |
| Plaintiff, | |
| v. | **ORDER** |
| Federal Ins. Company, et al., | |
| Defendants. | |

## INTRODUCTION

Plaintiff Fair Isaac Corporation (FICO) sued Federal Insurance Company (Federal) and ACE American Insurance Company (ACE) (collectively, Defendants) alleging breach of contract and copyright infringement. A jury returned a $40 million actual damages verdict for FICO. Finding that the evidence in the trial record did not support the jury's damages award and certain evidence was inadmissible, this Court granted Defendants' motion for a new trial on actual damages. FICO rejected the Court's remittitur, and the new trial on actual damages is set to begin on June 10, 2024. The parties moved in *limine*, seeking to exclude certain evidence from their upcoming trial.

**I.     FICO's Motions in Limine**

   **A.     FICO's MIL No. 1: Preclude Introduction of Evidence Concerning the FICO-ACE American License Agreement [Dkt. No. 1367]**

FICO moves to exclude evidence of a 2006 license agreement between FICO and ACE American, arguing the license is irrelevant to Defendants' infringing use and its probative value is outweighed by the risk of jury confusion and prejudice to FICO. Dkt. Nos. 1367, 1369. Defendants argue the FICO-ACE American agreement is relevant to

show that (1) "ACE was not interested in expanding Federal's use of Blaze Advisor after the acquisition," thereby undermining FICO's anticipated argument that Blaze is critical to the business of insurance, and (2) numerous alternatives to Blaze exist, thereby showing that "Blaze and, by extension, a license to use Blaze, is not as valuable as FICO claims." Dkt. No. 1413 at 3-4.

FICO's motion is denied. The FICO-ACE American license agreement may be admitted, subject to the following constraint: Defendants may not argue that the license agreement is representative of the value of a Blaze license. Rather, the prior agreement is one piece of evidence among many that is probative of FICO's prior licensing practices.

**B.    FICO's MIL No. 2: Preclude Introduction of and Reference to Exhibits D-0160 and DTC-0434 [Dkt. No. 1375]**

FICO seeks to preclude Defendants from introducing and referring to Exhibits D-0160 and DTC-0434. Dkt. Nos. 1375, 1377. Exhibit D-0160 is an email exchange in which FICO employee Michael Sawyer told Chubb employee Henry Mirolyuz that maintenance is optional after the first year of a license. Exhibit DTC-0434 is an email exchange in which FICO employee Bill Waid attaches FICO's standard criteria for sizing Blaze applications and tells Michael Sawyer that an enterprise-wide license allows companies to use Blaze in multiple applications. FICO argues that both exhibits are part of the parties' settlement negotiations and should be excluded under Rule 408. Defendants contend that the exhibits are necessary to respond to arguments they anticipate FICO will make regarding maintenance and support fees (D-0160) and application-based pricing (D-0434). Dkt. No. 1417.

The motion is granted, but not for the reasons FICO provides. Defendants may not introduce D-0160 because it is irrelevant to the determination of actual damages. Support and maintenance fees are not recoverable as actual damages because they were not part of Defendants' infringing use of Blaze. *See* Dkt. No. 1335 at 52. Accordingly, evidence related to support and maintenance fees is irrelevant under Rule 401 and any probative value it may have is outweighed by its tendency to confuse or mislead the jury and is therefore excluded under Rules 402 and 403. As a result, D-0160 is not relevant and is excluded. Similarly, Defendants may not introduce Exhibit DTC-0434. Having determined that evidence regarding application-based pricing is excluded, DTC-0434 will be excluded under Rules 402 and 403.

### C.   FICO's MIL No. 3: Preclude Defendants' Statements that They Already Paid for a License to Blaze Advisor [Dkt. No. 1380]

The parties have resolved this motion through joint stipulation. Defendants represented to the Court that they do not intend to argue that the $1.3 million Chubb paid for a Blaze license in 2006 fully compensated FICO for the fair market value of a Blaze license for the combined Chubb-ACE entity after March 31, 2016. *See* Dkt. No. 1444 at 91. Because the Court has ruled that the 2006 license agreement is admissible, and Defendants have agreed not to make the argument FICO challenges here, the motion is denied as moot.

### D.   FICO's MIL No. 4: Preclude Reference to FICO's Dismissed Grounds [Dkt. No. 1385]

FICO seeks to preclude reference to the various breach-of-contract grounds previously dismissed or decided at the first trial, arguing that such evidence or argument

will unfairly prejudice FICO and confuse and mislead the jury. Dkt. Nos. 1385, 1387. Defendants contend that FICO intends to introduce evidence regarding accusations of breach that is irrelevant to the question of damages; if FICO does so, Defendants argue, they should be allowed to contextualize that evidence with evidence of their own. Dkt. No. 1419.

FICO's motion is granted. The parties and the Court agree that evidence related to liability and the previously dismissed claims exceeds the scope of this trial. This trial concerns only the actual damages to which FICO is entitled for Defendants' infringing use of Blaze Advisor. Neither party may introduce evidence or elicit testimony regarding issues of liability that have been previously decided. Documents introduced at trial that refer to these disputes must be redacted in accordance with this Order.

E. **FICO's MIL No. 5: Exclude Exhibit D-153 and Testimony Regarding the Same [Dkt. No. 1390]**

FICO moves to exclude Exhibit D-153, a February 2016 email chain in which former FICO employees discuss the potential license fee FICO could charge for the perceived expanded use of Blaze following the ACE/Chubb merger. Dkt. Nos. 1390, 1392. In the emails, Michael Sawyer (the FICO client partner responsible for FICO's relationship with Chubb) stated that FICO was "going to be asking for $3+M." Def. Ex. 153. This evidence was introduced at the prior trial without objection from FICO. *See* Tr. Vol. III at 424-26.

FICO now argues that the email is irrelevant under Rule 401 and prejudicial under Rule 403. Specifically, FICO claims that the email was written before Sawyer had full knowledge of the facts surrounding Federal's breach and use of Blaze, rendering it

4

irrelevant to the hypothetical negotiation underlying the determination of a license's fair market value. Similarly, FICO argues the email is unfairly prejudicial because the jury will assume Sawyer knew all the relevant facts and will thus be led to believe $3 million represents the fee FICO would have charged for a Blaze license. Defendants counter that the email is relevant to the fair market value determination because it reflects FICO's standard pricing practices and how FICO valued its own product at the time. Moreover, Defendants argue, any foundational weaknesses in the evidence go to its weight, not its admissibility. Dkt. No. 1420.

FICO's motion is denied. Defendants may introduce Exhibit D-153. The question presented at this trial is the fair market value of the infringing use Defendants made of Blaze. The email is relevant to this question because it bears on FICO's internal valuation of a new license with the merged ACE/Chubb entity in 2016. Whether Sawyer had full knowledge of the relevant facts goes to the weight of the evidence, not its admissibility. *See United States v. Page*, 544 F.2d 982, 987 (8th Cir. 1976) ("[A]n attack upon the probative sufficiency of evidence relates not to admissibility but to the weight of the evidence and is a matter for the trier of fact to resolve.").

### F.     FICO's MIL No. 6: Exclude Testimony from Steve Kursh [Dkt. No. 1395]

Defendants intend to call their expert witness Dr. Steven Kursh to testify about the opinions disclosed in a report he prepared in advance of the last trial. FICO argues that Dr. Kursh's report focuses primarily on (1) the reasonableness of FICO's breach-of-contract claims, and (2) rebutting the actual damages opinions of FICO's witness, Neil Zoltowski. Dkt. No. 1397. Arguing that liability is no longer at issue and Zoltowski will not be testifying about actual damages this time around, FICO moves to exclude Dr. Kursh's

testimony as irrelevant under Rules 402 and 403. Dkt. Nos. 1395, 1397. Defendants counter that Dr. Kursh will testify as to his independent opinions on custom and sales practices but will not offer rebuttal opinions about damages models. Dkt. No. 1421.

FICO's motion is denied. Dr. Kursh's report includes independent opinions regarding the customary sales practices in the software industry, information which is relevant and admissible in determining the fair market value of a Blaze license. The opinions disclosed in the following paragraphs of the report are admissible in evidence: ¶¶ 55-68, 126, 134 (first sentence only), 135, 136. Opinions disclosed in the report that are tied to Zoltowski's opinions on subject matter that will not be presented in the upcoming trial are excluded. The Court finds that the opinions disclosed in the following paragraphs of Dr. Kursh's report are tied to Zoltowski's opinions and are therefore excluded: ¶¶ 125, 127, 128, 129, 130, 131.

## II.     Defendants' Motions in Limine

### A.     Defendants' MIL No. 1: Preclude FICO from Requesting Actual License-Fee Damages or Support and Maintenance Fees [Dkt. No. 1346]

At the hearing on these motions, the Court ordered FICO to provide Defendants with a damages computation. *See* Dkt. No. 1444 at 137-40. In light of that Order and FICO's subsequent disclosure, Dkt. No. 1445, the Court will rule on this motion in a separate Order.

### B.     Defendants' MIL No. 2: Preclude Reference to $21 Billion in Revenue that "Touched" Blaze [Dkt. No. 1354]

Defendants move to preclude FICO from referencing the $21 billion in revenue that "touched" Blaze, arguing that the figure is irrelevant to actual damages, will cause unfair

6

prejudice, and will confuse the jury. Dkt. Nos. 1354, 1356. FICO counters that the $21 billion figure is relevant to show the scope of Defendants' use of Blaze and counter Defendants' anticipated assertion that Blaze played a minor role in the company's business. Dkt. No. 1429.

Defendants' motion is granted. FICO may not introduce evidence or testimony referencing the $21 billion figure. While the evidence may have some relevance to the scope of Defendants' use of Blaze, its probative value is vastly outweighed by its prejudicial impact under Rule 403. FICO characterizes the figure as "[e]vidence that $21 billion of Defendants' revenue had a connection to its use of Blaze Advisor during the damages period." Dkt. No. 1429 at 6. The clear implication is that Blaze helped Defendants generate $21 billion in revenue. FICO thus intends to use this figure to suggest a *causal* connection between Defendants' infringement and the billions of dollars they earned during the infringing period. *See id.* (quoting an earlier memorandum in which FICO argued that "Defendants generated billions of dollars in gross revenue from the unauthorized use of Blaze Advisor"). Not only is this not probative of the fair market value of a Blaze license, but the advisory jury and the Court already determined that FICO could not meet its burden to show this same causal connection. *See* Redacted Jury Verdict, Dkt. No. 1173 (Question 9: "[D]id FICO prove that [Defendants'] infringing use contributed to the revenues of the infringer?" Answer: "No."); Disgorgement Order, Dkt. No. 1282 at 36 (concluding that "[t]he differentiated revenues FICO identified—the $21.2 billion earned through policies that 'touched' Blaze . . . do not on their own establish a *causal* connection").

The $21 billion figure was prepared as part of FICO's case for disgorgement of profits, an issue that has already been decided. This evidence and its attendant implications far exceed the scope of this trial on actual damages. Even if FICO does not intend to imply a causal connection between the infringement and the $21 billion figure, the evidence is likely to confuse and mislead the jury. See *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011) ("The disclosure that a company has made $19 billion dollars in revenue from an infringing product cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue."). FICO may not present evidence or elicit testimony relating to the $21 billion in revenue that "touched" Blaze Advisor.

**C.     Defendants' MIL No. 3: Preclude Reference to Defendants' Liability [Dkt. No. 1359]**

Defendants claim that FICO attempted to inflame the jury in the first trial and encourage it to award inflated damages to punish them for their alleged infringement. Dkt. No. 1361. Arguing that FICO is planning a repeat performance, Defendants seek to exclude all testimony and evidence referencing breach, infringement, or wrongdoing of any kind. Dkt. Nos. 1359, 1361. FICO argues that it cannot present its case for actual damages without establishing the relevant background, which includes, at a minimum, evidence related to the license agreement, the parties' prior relationship, and pre-termination communication between the parties. Dkt. No. 1430.

Defendants' motion is granted in part and denied in part. To make its finding as to actual damages, the jury needs to understand the background of the case. The Court does not find that Defendants will be prejudiced by the jury's mere knowledge of their

8

liability; indeed, in an ordinary trial, the same jury would determine both liability and damages and would necessarily have knowledge of the former when it decided the latter. However, the Court, not the parties, will provide the jury with the necessary background. Thus, Defendants' motion is denied to the extent that the Court will reference liability and infringement in a summary of the case it will present to the jury. The motion is granted to the extent that FICO may not elicit testimony or introduce evidence relating to Defendants' liability.

## ORDER

For the reasons set forth above, **IT IS HEREBY ORDERED:**

1. FICO's Motion in Limine No. 1 to Preclude Introduction of Evidence Concerning the FICO-ACE American License Agreement [Dkt. No. 1367] is **DENIED**.

2. FICO's Motion in Limine No. 2 to Preclude Introduction of and Reference to Exhibits D-0160 and DTC-0434 [Dkt. No. 1375] is **GRANTED**.

3. FICO's Motion in Limine No. 3 to Preclude Defendants' Statements that They Already Paid for a License to Blaze Advisor [Dkt. No. 1380] is **DENIED AS MOOT**.

4. FICO's Motion in Limine No. 4 to Preclude Reference to FICO's Dismissed Grounds [Dkt. No. 1385] is **GRANTED**.

5. FICO's Motion in Limine No. 5 to Exclude Exhibit D-153 and Testimony Regarding the Same [Dkt. No. 1390] is **DENIED**.

6. FICO's Motion in Limine No. 6 to Exclude Testimony from Steve Kursh [Dkt. No. 1395] is **DENIED**.

7. Defendants' Motion in Limine No. 2 to Preclude Reference to $21 Billion in Revenue that "Touched" Blaze [Dkt. No. 1354] is **GRANTED**.

8. Defendants' Motion in Limine No. 3 to Preclude Reference to Defendants' Liability [Dkt. No. 1359] is **GRANTED IN PART AND DENIED IN PART**.


Dated:  May 21, 2024                                       __s/David T. Schultz_____
                                                          DAVID T. SCHULTZ
                                                          U.S. Magistrate Judge